IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-028
Category III
Claimant: Frank Sanchez, Jr., #33151
Address of Claimant: 2404 9th Ave., Greeley, CO 80631

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Tuesday, June 14, 2005 at 1:00p.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: Frank Sanchez, Jr., Claimant; Eric Freund, from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant[1]. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been

---

[1] Defendants, on the record, noted the open order concerning Defendants' Objection to Witness list which could not be resolved prior to the hearing. Since Claimant had no additional witnesses nor desired to call any other witnesses, Defendants' objection is mooted.

1

reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted a claim which was assigned claim number 03-028 and the basis of his claim is a mobility impairment.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant has provided the Special Master with the following updated contact information:

2

2404 9th Ave.
Greeley, CO 80631
Phone: 970-388-1342

4. Proper notice of the hearing was given and Claimant along with Defendants appeared.

5. Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) from April 2001 through September 2003.

6. Claimant testified that he was incarcerated in the Sterling Correctional Facility (SCF) for the duration of his incarceration and was classified as a "minimal risk" allowing him to work off premises.

7. Claimant testified that he suffered from injury to his right knee since about 2000 and before coming under the jurisdiction of CDOC. The knee was originally injured while Claimant was an employee of City Market in Durango, Colorado.

8. Claimant testified that while at SCF, he had a doctor prescribed cane to use at all times unless the cane had to be removed from an environment in which another inmate could take the cane and use it as a weapon. Claimant also had use of crutches, which he used on occasion.

9. Claimant testified that while in SCF he worked in the library, and later was assigned to labor crews. While on labor crews, Claimant was assigned tasks that were consistent his disability, such as painting, carrying light objects and various other tasks which did not require heavy lifting or that would strain his leg.

10. Claimant was a member of the baseball team but that his role was limited to that of a base coach, helping with the lineups some light hitting during warm-up.

11. Claimant stated that during his time in SCF, he had no problems moving about the facility and that Dr. Philbin, the medical doctor at SCF, provided him a "short line" pass allowing him to go to the head of the line at the chow hall and then promptly to his table so that he would not suffer undue stress on his knee.

12. Claimant testified that he received good care from Dr. Philbin and, on one occasion, another doctor but that he received substandard medical care from SCF as an institution. In essence, Claimant asserts that the SCF failed to follow through on the recommendations and orders written by Dr. Philbin such as a knee brace and possibly surgery.

13. Claimant provided the Special Master copies of his grievances filed while in SCF, copies of his "sick calls" from SCF, and a copy a letter dated May 26, 2004 from Michael R. Hajeck, MD with an estimate of the costs for a "surgical intervention" of a

3

lateral meniscus tear. The documents were entered into evidence without objection from Defendants.

14. Claimant's grievances related to the alleged failure of the SCF to provide the medical treatment recommended or ordered by Dr. Philbin. Claimant testified that he received no response to his grievances.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities. The Special Master finds and concludes that Claimant Sanchez is a disabled individual who is a member of the class. Mr. Sanchez has a permanent physical mobility impairment that substantially limits the major life activities of walking, working, and perhaps performing manual tasks.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the DOC. A

4

prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

4. The key issue is whether Claimant was discriminated against because of his disability. Claimant's contentions in this regard relate only to the alleged failure of the DOC to properly treat the medical condition causing his disability. The United States Court of Appeals for the Tenth Circuit has held substandard medical care or failure to properly treat a disability do not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation,* 403 F.3d 1134, 1144 (10th Cir. 2005)[2]. As a result, the Special Master finds and concludes that controlling Tenth Circuit precedent precludes Sanchez' claim as a matter of law.

## IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his Claim in this matter is DENIED.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before August 4, 2005** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 30th day of June, 2005.

> Bruce D. Pringle
> Special Master

---

[2] A copy of the *Fitzgerald* decision highlighting the appropriate sections of the decision was given to Claimant and to Defendants by the Special Master.

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 20th day of June, 2005 to the following:

Mr. Frank Sanchez, Jr. #88151
2404 9th Ave.
Greeley, CO 80631

Ms. Paula Greisen
Mr. David H. Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. Eric Freund
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra