IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-029
Category III
Claimant: David Paul Wolf, #112819; #468145-TX
Address of Claimant: 2400 Wallace Pack Road, Navasota, TX 77869

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Monday, June 6, 2005 at 9:00a.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: David Paul Wolf, Claimant, by telephone; James X. Quinn, from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant, by telephone; Cary Shames, D.O.; Daryl Vigil, by telephone. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

1

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.     General inconvenience or nominal damages;
    II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
    III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
    IV.   Damages due to severe physical injuries; and
    V.    Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted a claim which was assigned claim number 03-029 and the basis of his claim is a mobility impairment.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant is presently incarcerated in a facility in Texas and his last known address is:

                2400 Wallace Pack Road
                Navasota, TX 77869

4. Proper notice of the hearing was given and Claimant along with Defendants appeared.

5. Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) from 1998 through his release on December 23, 2002.

6. Claimant suffered polio as a child and now suffers from "post-polio syndrome" which impedes his mobility.

7. During his incarceration, the Denver Reception and Diagnostic Center (DRDC) which is the intake facility initially classified Claimant as "level 3, medium custody" and initially assigned Claimant to the Buena Vista Correctional Facility (BVCC).

8. One week after being assigned to BVCC, Claimant states that he was placed in solitary because of a lack of a wheelchair accessible room. He was quickly moved to the Fremont Correctional Facility (FCF) approximately a week after his arrival at BVCC once BVCC determined that the facility could not handle Claimant's needs and to better accommodate his disability.

9. Claimant was housed at the Colorado Territorial Correctional Facility (CTFC or Territorial) for part of his incarceration.

10. Some of the programs at Territorial were not eligible to Claimant because of his disciplinary write-ups and not due to inaccessibility.

11. A disputed issue of fact over access to free weights at Territorial is resolved against Claimant based upon a lack of evidence to show that a request was made by Claimant to make the free weights available.

12. Territorial had a gym that was accessible to Plaintiff.

13. At Territorial, Claimant was assigned a pusher to assist him in accessing the available programs, services, and facilities.

14. Testimony was received that Claimant worked for approximately one week in the kitchen while at FCF for a wage rate of $0.11 per hour. Claimant testified that the dining area where he was employed did not have a wheelchair accessible bathroom. As a result, if he needed to use the bathroom, he had to return to his housing space, and was not allowed to return to work for the remainder of the day. Claimant testified that he quit work because he could not earn enough money as a result of the prohibition against returning to work after using the bathroom in his housing unit.

17. Un-rebutted medical evidence was presented by Defendants showing the extensive treatment Claimant received while under CDOC jurisdiction.

3

18. Claimant testified that on one occasion he was unable to attend religious services but that, in general, though he testified that the chapel was small, he was able to attend religious services.

19. Claimant testified that on occasion he had to wait for a pusher to assist him in obtaining access to the cafeteria.

20. Claimant testified that Territorial had a small area of the recreation yard that was wheelchair accessible.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

4

The Special Master finds and concludes that Claimant Wolf is a disabled individual who is a member of the class. Wolf has a permanent physical mobility impairment that substantially limits the major life activities of walking, working, and perhaps performing manual tasks.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the DOC. A prisoner may not be "qualified" under the ADA to participate in various servies, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). The Defendants have pointed out that Claimant was not qualified or eligible to participate in some of the programs offered by the DOC because of his disciplinary record. However, the only specific program identified by DOC witnesses as not being available to Claimant for disciplinary reasons was the music program in the auditorium at the Territorial Prison. Claimant does not appear to be asserting that he was denied access to this program because of his disability. Consequently, as to those programs, benefits, and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

4. The third, and probably key issue before the Special Master is whether Claimant was discriminated against by DOC because of his or her disability. In order to establish discrimination in the context of the Remedial Plan, Claimant must demonstrate that he requested accommodation for his disability and that reasonable accommodation was denied. Claimant asserts that he was denied reasonable accommodation in following respects: (a) he was placed in solitary at the Buena Vista Correctional Facility because the room in which he was originally placed was too small for his wheelchair; (b) he was unable to continue his job in the Freemont dining hall because the bathroom was not wheelchair accessible; (c) while at the Territorial Prison, he could not get his wheelchair into the area to the workout area where weights were kept; (d) the recreation area at the Territorial Prison provided only a small area for wheelchair-bound inmates; (e) on occasion he had to wait to use the ramp into the cafeteria area at the Territorial Prison because his assigned pusher was not available; (f) he was unable to access the game and recreational area that was located upstairs in the Territorial Prison; (g) the cell rooms at the Territorial Prison were too small; and (h) he was unable to attend a religious service because he could not get to the location where it was held.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffered discrimination by reason of his disability. The fact that, on occasion, Claimant had to wait to use the ramp to the cafeteria until his assignment pusher was available does not constitute discrimination based upon his disability. The central inquiry is whether "when viewed in its entirety," the cafeteria was readily accessible to and usable by Claimant. *Bird v. Lewis & Clark College,* 303 F.3d 1015, 1021 (9th Cir. 2002). The DOC reasonably accommodated Claimant's disability by providing an assigned pusher. Generally, with the assistance of the pusher, Claimant was able to negotiate the ramp and access the cafeteria. The fact that on some isolated

occasions he was required to wait until his pusher was available does not render the accommodation provided to Claimant unreasonable or insufficient.

The evidence also fails to establish that Claimant was denied access to religious services as a result of his disability in violation of the ADA. Although Claimant testified that he was unable to attend one religious activity because it was held in a location that was not wheelchair accessible, he acknowledged that, in general, religious services and activities were held in wheelchair accessible locations, and that he was able to attend. Thus, the evidence fails to demonstrate that "when viewed in their entirety," the religious programs at Territorial Prison were not readily accessible by persons with disabilities such as Claimant's. *See* 28 C.F.R. § 35.150(a).

Likewise, the DOC provided a wheelchair accessible area in the recreation yard at the Territorial Prison. While Claimant testified that wheelchair area was small, he presented no evidence that the size of the wheelchair area in the recreation yard deprived him of the ability to participate in any service, program, or activity offered by the facility.

Claimant's contentions premised on the size of the cells in which he was housed also fail. Claimant asserts that he was placed in the correctional facility in Buena Vista where he had to remain in solitary confinement due to the lack of wheelchair accessible cells. The evidence establishes that although initially assigned to the Buena Vista facility, he was reassigned after a week to Freemont in order to accommodate his disability and provide him with a wheelchair accessible cell. Later he was transferred to the Territorial Prison, where he again was housed in a wheelchair accessible room. This transfer again was to better accommodate his disability and provide treatment for his medical needs. He asserts that he was housed in a two-person cell at Territorial, leading to altercations with his cellmate over the lack of space due to Claimant's wheelchair. However, no evidence was provided regarding the actual size of the cell; what, if any, accommodation was sought by Claimant and denied by the DOC; or how Claimant was treated differently than other prisoners due to his disability.

Although Claimant testified that there was no wheelchair access available at the Territorial Prison to the area in which exercise weights were kept, DOC presented credible evidence to the contrary. The Special Master resolves this credibility dispute in favor of the DOC.

Claimant asserts that he could not fully perform his assigned job because of a lack of wheelchair accessible restrooms in the kitchen area. He indicates that when he needed to use the restroom, he was required to return to his cell house to use, and that the prison rules prohibited him from returning to the kitchen to perform his job. As a result, Claimant quit his job because he could not work sufficient hours. However, Claimant failed to establish that he ever made the prison officials aware of the fact that he desired reasonable accommodation to allow him to work more hours. As a result, this portion of his claim has not been proved by a preponderance of the evidence. *See Woodman v. Runyon*, 132 F.3d 1330, 1345 (10th Cir. 1997). *See also Loulseged v. Akzonobel, Inc.*, 178 F.3d 734, 741 fn. 4 (5th Cir. 1999). Similarly, there is no evidence that Wolf

requested an accommodation with respect to his inability to access the upstairs game and recreation room.

     5. It should be noted that a large portion of Claimant's complaints relate to the alleged failure of the DOC to provide reasonable medical care. These claims, however, are not cognizable under the Rehabilitation Act or the ADA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Moore v. Prison Health Services*, 24 F. Supp. 2d 1164, 1167 (D. Kan. 1998).

## IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his Claim in this matter is DENIED.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 29, 2005** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

SIGNED this 14th day of June, 2005.

_____
Bruce D. Pringle,
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 16th day of June, 2005 to the following:

Mr. David Paul Wolf
#468145-TX
2400 Wallace Pack Road
Navasota, TX 77869

Ms. Paula Greisen
Mr. David H. Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra

8