IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN 30 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-081
Category III
Claimant: Fred F. Franzone, #96944
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for a hearing on June 17, 2005. This hearing was held at the Arrowhead Correctional Center (ACC) in Canon City, Colorado. Present were the following: Fred F. Franzone(Claimant); and Eric Freund, attorney for Defendants.

Testimony was received from Claimant. Claimant's Exhibits 1 through 10 were admitted into evidence. Defendants' Exhibits A through CC were admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual member of the designated class. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or other relief available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony of the witnesses, exhibits and documents previously made part of the file, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody in May, 1998. He was initially evaluated at the Denver Regional Diagnostic Center (DRDC). He then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was transferred to the San Carlos Correctional Facility (SCCF) in Pueblo. He was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City. He again was returned to San Carlos, and then released on parole.

Claimant's parole was revoked. He was re-evaluated at DRDC and then placed into ACC. He held a job as a gardener at ACC. He was regressed and transferred to the Arkansas Valley Correctional Facility (AVCF) at Crowley, Colorado. A few days before his scheduled hearing, he was transferred back to ACC. The hearing was held at ACC on June 17, 2005.

Claimant was diagnosed as a diabetic in 1998. It was noted at DRDC that he had adult onset diabetes. At times, Claimant's diabetes has been out of control. In 1999, Claimant was involved in an altercation with a CDOC staff member at FCF. Claimant testified that he was beaten by this staff member, though why that occurred is unclear. Claimant testified that he believed it was because he was diabetic, but that was not supported by any other evidence. Claimant lost his dentures when they were thrown away after the incident.

By his own testimony, Claimant has been confrontational at times with staff and other inmates. In the last few months, he was assaulted by another inmate for no apparent reason. He has had COPD convictions. He has confronted medical staff over his treatment, particularly over the reclassification as an M-4. He also was upset over the lack of educational resources for diabetics.

Claimant testified that he always had a job until he came to AVCF. He requested a job, but was not able to find one until June, 2005. There was no evidence that he was denied a job because he was diabetic.

Claimant's diabetic condition has stabilized since he has been on insulin. He started receiving medication after Dr. Beecroft arrived at AVCF. Claimant testified that he felt neglected and abused by staff because he did not receive proper medical care.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004, as well as applicable case law. Each criteria will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Defendants concede that Claimant is diabetic and is, therefore, a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** No evidence was presented that Claimant could not have participated in any program or activity while in CDOC custody. There was evidence that Claimant had some disciplinary problems. He was transferred to AVCF for what appears to be have been confrontations and disciplinary issues. There was no evidence that this transfer occurred in whole or part because of his diabetes. There was no evidence presented that Claimant was not denied access to any program or service at CDOC because of his diabetes.

**3. Was the Claimant discriminated against by DOC because of his disability?** The answer to this question is no. The reasons for this answer will require a discussion of the Settlement Agreement.

The Settlement Agreement mirrors the basic statutory provisions of the ADA and Rehabilitation Act. An individual who has diabetes or another disability must establish by a preponderance of the evidence that he or she was treated differently than someone without a disability. The nature and quality of medical care poses a problem for any claimant in light of recent case law.

The United States Court of Appeals for the Tenth Circuit issued on April 11, 2005 its opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005). In that case, the plaintiff was incarcerated in a private prison in Oklahoma. He complained about the medical care

that he received after a fall. The plaintiff was an insulin-dependent diabetic with a history of low blood sugars and seizures. He fell during a seizure or diabetic coma and fractured his upper femur. He alleged in his complaint that he should have received surgery, but the private prison did nothing. The evidence submitted in support of defendants' motion for summary judgment indicated that the prison had been advised that surgery was the best option, but that doing nothing was also an appropriate medical option.

The Tenth Circuit held, in part, as follows:

> Fitzgerald's ADA and Rehabilitation Act claims are also on tenuous grounds. In addition to ruling that Fitzgerald did not receive substandard medical care, the District Court further held, with respect to Fitzgerald's ADA claim: "it is well settled that the ADA does not provide a private right of action for substandard medical treatment." The District Court did not comment on the Rehabilitation Act, but for practical purposes the requirements to state a claim under either statute are identical here. Under either the ADA or the Rehabilitation Act, Fitzgerald is obligated to show that he was "otherwise qualified" for the benefits he sought and that he was denied those "solely by reason of disability." *See, e.g., Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). Further, we have held that "the term otherwise qualified cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.' " *Johnson*, 971 F.2d at 1493-94. As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say ... that a particular decision was 'discriminatory.' " *United States v. University Hospital*, 729 F.2d 144, 157 (2nd Cir.1984) (Rehabilitation Act).
>
> Several circuits have expressly concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("ADA does not create remedy for medical malpractice"); *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 121, 123 (7th Cir.1997) (affirming district court's dismissal under Fed.R.Civ.P. 12(b)(6) of plaintiff's section 504 claim because "section 504 [which 'is materially identical to the ADA'] does not provide a federal malpractice tort remedy" and allegations of discriminatory medical treatment do not fit into the four-element framework required by Section 504.).
>
> In the instant case, the principal basis for Fitzgerald's claim against Dr. Josephson is the doctor's recommendation that the prison may "do nothing" as an acceptable course of treatment for Fitzgerald's injuries. Dr. Josephson suggested the non-treatment option as one option, but also recommended surgery as another option. He did not make the final decision to deny treatment. Even if Dr. Josephson had been

5

the final decision-maker, Fitzgerald would not have been "otherwise qualified" for such treatment in the absence of his alleged disability--his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act. Fitzgerald's claims against Dr. Josephson under the ADA and Rehabilitation Acts were therefore properly rejected on the merits under § 1997e(c)(2).

*Id. at 1143-44.* This decision means that the ADA and Rehabilitation Act are not available to prisoners or other potential plaintiffs who are claiming medical negligence on the part of prison doctors or medical staff.

Claimant expressed concern about the medical care that he and others received. He testified that he did not believe that the Settlement Agreement had been complied with by CDOC. He believed that the food was not healthy. Claimant's main argument was that he had not received appropriate medical care and that this has created problems for him.

His testimony indicated further that he questioned some of the medical judgments made by CDOC medical staff. In light of the *Fitzgerald* decision, Claimant must revert back to utilization of other legal bases to challenge medical care. That means using the Eighth Amendment or state law claims for medical negligence. In the order of November 23, 2004, Judges Nottingham and Kane indicated that Eighth Amendment claims of medical negligence could not be considered by the Special Masters unless the four criteria were met under the ADA and Rehabilitation Act.

An Eighth Amendment claim requires a showing of deliberate indifference to a known medical condition of an inmate. *Farmer v. Brennan,* 511 U.S. 825 (1994); *Handy v. Price,* 996 F.2d 1064(10th Cir. 1993). To meet this standard will require expert testimony in virtually every case. Claimant, as well as others similarly situated, has not met this standard and may never be able to do so. *Id.*

The evidence presented substantiated that Claimant has significant health problems. He is concerned about his diabetes and for good reason. He has received medical care, but he is not convinced that such care has been appropriate. The *Fitzgerald* decision precludes use of the ADA and Rehabilitation Act as bases for challenging medical treatment decisions, provided some treatment has been given. In light of *Fitzgerald* and the order of November 23, 2004, there is no basis for finding that Claimant has been discriminated against by CDOC or its staff in violation of the ADA and Rehabilitation Act.

Claimant did not substantiate that the 1999 altercation with the CDOC staff member was based upon his diabetic condition. There was no evidence that he was the recipient of any discriminatory conduct by CDOC or its staff as the result of his diabetes. Finally, there was no evidence that Claimant had been retaliated against for his testimony by video at the fairness hearing in August, 2003.

6

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

This question does not need to be answered, as the preceding question has been answered in the negative.

### IV.

Claimant expressed concern that the Settlement Agreement was not be followed by CDOC and its staff members. The jurisdiction of the Special Masters is extremely limited under the Settlement Agreement. The Special Masters only have the power to deal with individual claims. Under the order of November 23, 2004 from Judges Nottingham and Kane, the Special Masters have no power to grant relief that affects the CDOC system or one of its institutions.

Claimant may have legitimate complaints concerning the implementation of the Settlement Agreement. Those complaints must be directed to counsel for the class or Judge Nottingham. The Special Masters have no jurisdiction over any such issue.

IT IS HEREBY ORDERED that the claim of Fred F. Franzone is denied for the reasons set forth herein; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 22, 2005.**

SIGNED this 27th day of June, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 27th day of June, 2005 to the following:

Mr. Fred F. Franzone
#96944
ACC
P.O. Box 300
Canon City, CO 81215-0300

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____