IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN 3 0 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-015
Category III
Claimant: Frederique Klooster, #113706
Address of Claimant: FLCF, P.O. Box 1000, Fort Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 9, 2005 at the Fort Lyon Correctional Facility (FLCF), Fort Lyon, Colorado. Present were the following: Frederique Klooster (Claimant) and Jess Dance, attorney for Defendants.

Testimony was given by Claimant and Major Philip DeFelice. The Special Master received the affidavit of Dr. Cary Shames, D.O., Chief Medical Officer of the Colorado Department of Corrections. The Special Master also received Claimant's Exhibits 1 through 15, as well as Defendants' Exhibits A through R. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual class member. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section stated, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provided the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further went on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments were limited to

"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judges Nottingham and Kane stated as follows:

> All claims are to be evaluated based solely upon the criteria in paragraph #1. The claims are limited to those that encompass a disability within the meaning of the Rehabilitation Act, provided, however, that a claimant need not prove intentional discrimination, an issue which was resolved by execution of the Remedial Plan. The Remedial Plan and, if necessary, case law concerning disabilities under the Rehabilitation Act and Americans with Disabilities Act may be reviewed for assistance in applying the criteria.

Thus, the Special Masters must look to the Settlement Agreement first to determine if a claimant has proven each of the four criteria set forth above.

The recent decision of the United States Court of Appeals for the Tenth Circuit in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005) has impact on all claims filed pursuant to the Settlement Agreement. In that case, the plaintiff was incarcerated at a private correctional facility run by defendant. The plaintiff filed suit alleging that he had received improper medical treatment from the prison doctors. The plaintiff sued under the ADA and Rehabilitation Act, alleging that he had received substandard medical care. The Tenth Circuit held that these two federal statutes do not provide remedies for alleged medical negligence.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master has reviewed the testimony presented and documents received into evidence. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody in July, 2002. He was 67 years old at the time. He was sent initially to the Denver Regional Diagnostic Center (DRDC) for evaluation. Claimant then was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado. He then was transferred to the Arkansas Valley Correctional Facility in Crowley, Colorado in March, 2003. He was placed finally at FLCF in December, 2004. Claimant was at FLCF on the date when the hearing was held.

Claimant developed heart problems after he entered into CDOC custody. Claimant had three heart attacks after being incarcerated with CDOC. After the third attack, he had heart surgery. Claimant developed gout after the heart surgery. The gout seriously has affected Claimant's mobility. As result, he has been confined to a wheelchair since being placed at SCF. He also has developed diabetes which was diagnosed initially by CDOC medical personnel. As the result of his health problems, Claimant has had a number of restrictions issued as to work and living conditions.

While at SCF, Claimant received care from the prison physician, Dr. Singh. After a period of time at SCF, Dr. Singh advised Claimant that he believed an amputation of one foot was appropriate. Claimant was opposed to this course of treatment and requested a second opinion. Dr. McDonald did an examination of Claimant and believed that amputation was not appropriate.

Claimant requested a pusher at SCF for his wheelchair. Pushers are inmates assigned as their job to assist other inmates who are confined to wheelchairs. Claimant had no pusher for a period of time and could not get up the hills at SCF. Claimant described his life at SCF as miserable and painful.

While at SCF, Claimant received low cut shoes on the recommendation of medical staff. These shoes were provided by SCF and allowed his feet to feel better because of the gout.

When Claimant was transferred to AVCF, staff at that facility threw out the low cut shoes, despite the fact that they had been prescribed by medical staff at SCF. Claimant went for three months at AVCF with no shoes. Claimant described medical treatment at AVCF as not very good, as Dr. Werner, the prison physician, "was a drunk."

Claimant has been living primarily in the clinic at FLCF because of his health problems. His heart has only 45% of its normal capacity, and he is receiving insulin by shot twice per day. He has expressed concern about his living arrangement in the event of a fire, because everyone in the clinic has serious medical problems that limit mobility.

Claimant is on a diabetic and heart diet. He described the problems with these diets, as they

sometimes are no different from the food provided to healthy inmates.

On cross-examination, Claimant testified that his health was good when he entered into CDOC custody. He had been a soccer referee well into his 60's. He testified further that he has received medical care while in CDOC custody, including heart surgery. Claimant indicated that he has received a job as an inmate representative, a position that he held at SCF for a period of time.[1]

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant was in CDOC custody on August 27, 2003. Defendants concede that he was and is disabled and a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** There was no evidence that Claimant was disqualified from any program or benefits as the result of violent behavior, COPD convictions, or the like.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** With one exception, the answer to this question is no. Claimant has expressed grave concern about the quality of medical care that he has received in CDOC custody. He has received medical care. There was no evidence that he was completely denied care, only that there were questions concerning the medical care. There was no evidence of any discrimination toward Claimant because he has health problems. There was no evidence that the quality of care was different for Claimant from another inmate in CDOC. In fact, Claimant's reservations about care extend to the entire CDOC system. In light of *Fitzgerald v. Corrections Corporation of America*, examination of the quality of care must be done under the standard of the Eighth Amendment. The ADA and Rehabilitation Act cannot be used to examine claims of medical negligence. The Special Masters do not have the jurisdiction to resolve Eighth Amendment claims. *Order of November 23, 2004* ("Unless they meet the criteria established in Paragraph #1, individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan").

The one part of the claim that has been proven by a preponderance deals with the loss of the shoes at AVCF. The testimony presented by Claimant is accepted and found to be true. Claimant had been issued soft shoes for his feet at SCF. This was based upon a medical department recommendation. The shoes were thrown away when Claimant arrived at AVCF. He was without any shoes for a period of three months. During this period, Claimant had only socks to cover his feet. Nothing has been presented that would justify the lack of shoes for this period of time. Claimant was

---

[1] Inmate representatives assist other inmates who are facing charges under the Code of Penal Discipline.

without shoes due to his health conditions.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant suffered stress and inconvenience as the result of having no shoes for a three-month period. These have been established by Claimant as the harm that he suffered.

## IV.

The question next is what is an appropriate remedy. The evidence from the hearing reflects that Claimant has received medical care. Claimant does not believe that such care has been appropriate. The quality of medical care is not the subject of an examination under the ADA and Rehabilitation Act. *Fitzgerald v. Corrections Corporation of America, supra*. Claimant's medical care has been the direct result of his health conditions.

Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952 F.Supp. 520 (W.D.Mich.1996). In the context of prison life, basic programs are food, shelter and clothing. Claimant was not able to provide these on his own, as his liberty has been curtailed. The lack of shoes for the period discussed by Claimant was the result of his health problems, including gout.

The Special Master determines that the appropriate remedy for a period of three months with no shoes is a cash payment of $150.00. Claimant has established only general inconvenience as the result of this three-month period.

With the exception of the three-month period with no shoes at AVCF, Claimant has not established the four criteria that are required by the order of November 23, 2004. The remainder of the claim is dismissed for the reasons set forth in this order.

## V.

Claimant was one of a number of inmates at FLCF who sought an injunction concerning their safety in buildings at the facility. The primary concern was fire, as a number of disabled inmates on the third floor are unable to navigate stairs in the event of a fire.

Defendants presented the testimony of Major Philip DeFelice who was the facilities director at FLCF. He described training for evacuation of disabled inmates. This testimony did not alleviate Claimant's concerns. In many respects, the testimony raised concerns for the Special Master.

Evacuation and emergency procedures were presented to the Court as Article XX of the Settlement Agreement. Whether this part of the Settlement Agreement has been implemented at FLCF is unclear. In the order of November 23, 2004, Judges Nottingham and Kane stated as follows:

However, the Special Masters may not order injunctive relief on a facility wide or system wide basis. All of those matters were resolved in the Remedial Plan.

As a result, the Special Masters have no jurisdiction to determine if there has been compliance with the Settlement Agreement. The issue of evacuation for various FLCF buildings must be directed to Judge Nottingham. The motion cannot be ruled upon by the Special Masters in light of the November 23, 2004 order.

IT IS HEREBY ORDERED that the claim of Frederique Klooster has been proven only as to the three-month time period at AVCF when he was without shoes and was placed into a wheelchair; and

IT IS FURTHER ORDERED that the claim of Frederique Klooster is dismissed as to all other aspects; and

IT IS FURTHER ORDERED that Claimant's motion for injunctive relief concerning evacuation issues is denied, as the Special Masters have no jurisdiction to deal with the issue in light of the order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant Frederique Klooster is to receive $150.00 as full and complete compensation on his claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 15, 2005.**

SIGNED this 20th day of June, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 20th day of June, 2005 to the following:

Mr. Frederique Klooster
#113706
FLCF
P.O. Box 1000
Fort Lyon, CO 81038-1000

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

*Margie Dykstra* (signature)