IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN 3 0 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-092
Category III
Claimant: Kevin G. Woodley, #102075
Address of Claimant: FLCF, P.O. Box 1000, Fort Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 10, 2005 at the Fort Lyon Correctional Facility, Fort Lyon, Colorado. Present were the following: Kevin G. Woodley(Claimant); and Jess Dance, attorney for Defendants.

Claimant was the only witness to testify. The Special Master received the affidavit of Dr. Cary Shames, D.O., Chief Medical Officer for the Colorado Department of Corrections. The Special Master also received Claimant's Exhibits 1 and 2, as well as Defendants Exhibits A through R. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual member of the class. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to

2

"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must answer affirmatively each of the four criteria by a preponderance of evidence.

In addition, Judges Nottingham and Kane stated as follows:

> All claims are to be evaluated based solely upon the criteria in paragraph #1. The claims are limited to those that encompass a disability within the meaning of the Rehabilitation Act, provided, however, that a claimant need not prove intentional discrimination, an issue which was resolved by execution of the Remedial Plan. The Remedial Plan and, if necessary, case law concerning disabilities under the Rehabilitation Act and Americans with Disabilities Act may be reviewed for assistance in applying the criteria.

Thus, the Special Masters must look to the Settlement Agreement first to determine if a claimant has proven each of the four criteria set forth above.

The recent decision of the United States Court of Appeals for the Tenth Circuit in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005) has impact on all claims filed pursuant to the Settlement Agreement. In that case, the plaintiff was incarcerated at a private correctional facility run by defendant. The plaintiff filed suit alleging that he had received improper medical treatment from the prison doctors. The plaintiff sued under the ADA and Rehabilitation Act, alleging that he had received substandard medical care. The Tenth Circuit held that these two federal statutes do not provide remedies for alleged medical negligence.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master has reviewed the testimony presented and documents received into evidence. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody on September 8, 1999. He was sent initially to the Denver Regional Diagnostic Center (DRDC) for evaluation. Claimant then was placed at the Fremont Correctional Facility (FCF) in Canon City. He was there for one year, and then was placed at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. He was at that facility for approximately one year.

Claimant then returned to FCF and was there until he paroled in early 2004. Claimant's parole was not successful, and he was returned to CDOC custody after a few weeks. He was placed then at the Fort Lyon Correctional Facility (FLCF) in Fort Lyon, Colorado. Claimant was at that facility when his hearing was held.

Claimant has diabetes. He has described his diabetic condition as being out of control. Claimant testified that his diabetes has led to neuropathy in his legs and feet. Claimant described in detail his concerns and fears as a diabetic in CDOC. He indicated that he has not received adequate medical care while in CDOC custody. His condition has required insulin for some period of time.

While at CCCF, Claimant began to have swelling in his feet. He was kept initially in prison boots. He finally was approved for tennis shoes to help with his foot condition, but those were delayed for a period of time. Claimant was required to use a wheelchair because no shoes were available for him. The tennis shoes were provided finally. They did not stop the swelling, but the condition of his feet improved.

While on parole, Claimant experienced problems related to his diabetes. He ran out of insulin, and his parole agent would not assist him in obtaining medical care. As a result of his medical condition, Claimant was hospitalized for a period of time. He then was regressed, with his parole being revoked.

When his parole was revoked, Claimant returned to DRDC. He was examined and provided medical shoes. These shoes were soft soled and similar to tennis shoes. When Claimant arrived at FLCF, the soft soled shoes were taken from him. He received boots which he testified hurt his feet. Claimant has received medical care at FLCF, which has included daily insulin shots and glucophage.

Claimant testified that he had trouble doing things because of his physical condition. He used to walk for exercise but has not been able to do so because of the boots that he has been issued to wear. Claimant indicated that he can have tennis shoes, but only if he buys them through the Canteen at FLCF.

On cross-examination, Claimant testified that he has a job at FLCF cleaning the day room. He has never been denied access to a program that he requested. He has been on a diabetic diet, but was taken off of that diet for a period of time due to non-compliance. Claimant acknowledged missing some insulin shots because of long waiting lines. He also was issued slippers in February, 2005, but those were taken back by FLCF staff. Claimant is overweight and has purchased sweets from the Canteen. He has had a difficult time keeping his weight under control. Claimant's diabetes has been better controlled since arriving at FLCF.

Review of the medical records admitted into evidence substantiate Claimant's diabetic condition. These records reflect a constant request by medical staff that Claimant lose weight and get more exercise. Defendants do not dispute that Claimant has diabetes and is part of the class that was defined on August 27, 2003.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?**  Claimant was in CDOC custody on August 27, 2003 and had diabetes on that date. Defendants concede that he was and is disabled and is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** There was no evidence that Claimant was disqualified from any program or benefits as the result of violent behavior, COPD convictions, or the like.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** With one minor exception, the answer to this question is no. Claimant has not been denied medical care for his diabetes. He questions the quality of care that he has received, but that is an issue beyond the scope of the ADA and Rehabilitation Act.

Claimant did establish by a preponderance of the evidence that while he was at CCCF he was provided no shoes and was required to utilize a wheelchair. He was without shoes for some period of time, but Claimant was not specific concerning this length of time. No evidence was presented that it was medically necessary for Claimant to be in a wheelchair. The testimony of Claimant indicated that he was placed into the wheelchair solely because of his diabetes and because shoes were not available for him.

It should be noted that CCCF is a private prison operated by the Corrections Corporation of America. This facility accepts CDOC inmates on a contract basis. CDOC was and is responsible for the conditions that exist at CCCF. The Settlement Agreement applies to all private facilities used by CDOC.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant testified that he was and is fearful concerning his diabetes. This fear extended to his feet, as he has had continuing problems with swelling and pain. The period of time at CCCF while in a wheelchair added to his stress and provided inconvenience to Claimant.

## IV.

The question next is what is an appropriate remedy. The evidence in this case reflects that Claimant has not aided the treatment of his diabetes. He has not lost weight and does eat inappropriate foods at times.

The evidence from the hearing reflects that Claimant has received medical care. Claimant does not believe that such care has been appropriate. The quality of medical care is not the subject of an examination under the ADA and Rehabilitation Act. *Fitzgerald v. Corrections Corporation of America, supra.* Claimant's medical care has been the direct result of his diabetic condition. It is beyond the scope of this claim whether that care has been medically appropriate.

Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996). In the context of prison life, basic programs are food, shelter and clothing. Claimant was and is unable to undertake these three basics on his own, as his liberty has been curtailed. Claimant had to rely on CCCF staff to provide him shoes. The lack of shoes for the period discussed by Claimant was the result of his diabetes and resulting physical condition. He was treated differently than an inmate who did not have diabetes and neuropathy.

The Special Master determines that the appropriate remedy for the period of no shoes at CCCF is a cash payment of $100.00. Claimant has established nothing more than general inconvenience as the result of this period of time without shoes.

As to the remainder of his claim, Claimant has not established the four criteria that are required by the order of November 23, 2004. Except for the lack of shoes at CCCF, the remainder of the claim is dismissed for the reasons set forth in this order.

IT IS HEREBY ORDERED that the claim of Kevin G. Woodley has been proven only as to the time period at CCCF when he was without shoes and was placed into a wheelchair; and

IT IS FURTHER ORDERED that the claim of Kevin G. Woodley is dismissed as to all other aspects of his claim; and

IT IS FURTHER ORDERED that Claimant Kevin G. Woodley is to receive $100.00 as full and complete compensation on his claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 15, 2005.**

SIGNED this *20th* day of June, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this *20th* day of June, 2005 to the following:

Mr. Kevin Woodley
#102075
FLCF
P.O. Box 1000
Fort Lyon, CO 81038-1000

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203