IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 92–cv–00870–EWN–OES
  [Consolidated for all purposes with Civil Action No. 96–cv–00343]

JESSE (JESUS) MONTEZ, *et al.,*

    Plaintiffs, as representatives of themselves and all others similarly situated in this class action,

v.

BILL OWENS, *et al.,*

    Defendants.

---

**ORDER CONCERNING PENDING MATTER (DOCKET NO. 882)**

---

A trial was set to commence in this expansive, eleven-year litigation in the Fall of 2003. Shortly before trial, however, the parties executed and presented to the court a proposed Remedial Plan. They asked the court to approve the Remedial Plan, pursuant to Fed. R. Civ. P. 23. On August 27, 2003, the court approved the Remedial Plan and the case was closed.

The Remedial Plan resolved critical issues in the litigation and set forth a timetable and procedure for resolving others. Foremost among the unresolved issues were (1) attorney fees for class counsel (which has since been resolved) and (2) damages and other remedies for individual class members. As to the latter issue, the Remedial Plan describes a procedure allowing individual class members to submit claims to special masters (identified in the Remedial Plan) and to seek limited review of the special masters' decisions concerning the claims to Senior

United States District Judge John L. Kane, who theretofore had consented to act as a mediator facilitating settlement of the litigation.

The matter now before the court is defendants' objection (#882) to an order entered by one of the special masters. The order at issue held that prisoners wanting to submit claims to the special masters need not have exhausted available administrative remedies as a condition to submitting the claim. Since the special master's recommendation goes to the heart of the lawsuit and settlement thereof, rather than "abuse of discretion" review under the Remedial Plan, Judge Kane and I have agreed that I should rule on defendant's objections.

Defendants contend that exhaustion of administrative remedies is required by a provision of the Prison Litigation Reform Act of 1996 (PLRA) codified at 42 U.S.C.A. § 1997e(a). Section 1997e(a) provides:

> No action ***shall be brought*** with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

(Emphasis supplied.) Defendants rely on numerous cases interpreting the PLRA, but fail to focus on a single one interpreting the critical emphasized language.

The emphasized plain language of the statute demonstrates that it does not apply here and that defendant's argument must be rejected. While courts have varied somewhat on certain fine points — such as whether an action is "brought" when a prisoner mails his complaint, *e.g., Ford v. Johnson*, 362 F.3d 395 (7th Cir. 2004) (prisoner "brought suit" when he mailed complaint to court, even though complaint was not filed until it had been reviewed by district court, and filing

fee was paid, or prisoner was permitted to proceed in forma pauperis) — they appear to be unanimous in holding that bringing the action relates to commencement or filing a lawsuit. In *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001), the Eleventh Circuit declared:

> The decisions we have laid out show that for more than a century before the enactment of the PLRA, it was well established that "brought" and "bring" refer to the filing or commencement of a lawsuit, not to its continuation. This long history of established meaning is important, because we readily presume that Congress knows the settled legal definition of the words it uses, and uses them in the settled sense.

A corollary of this principle, already settled law in this circuit, is that the PLRA does not apply retroactively to cases pending on the date of its enactment, April 26, 1996. *See Craig v. Eberly,* 164 F.3d 490 (10th Cir. 1998). The court's reasoning is instructive here:

> We find[] . . . that the question of § 1997e(e)'s temporal scope can be resolved through normal principles of statutory construction. The plain language of § 1997e(e) compels its prospective application. The language "may be brought" clearly indicates that § 1997e(e) applies only to cases commenced after its enactment, not to those pending at the time.

164 F.3d at 494.

This case was commenced as a class action on May 5, 1992, was certified as a class action on January 15, 1996, and was settled as a class action on August 27, 2003. The Second Amended Complaint, the last operative complaint defining class members and class representatives, was filed January 25, 1996. The class action in its final form was thus pending on April 26, 1996, the PLRA-effective date, and it was ready for trial in that form on August 27, 2003. Contrary to defendants' last-ditch argument in their reply that any class members who

commenced incarceration after April 26, 1996, should be required to exhaust, there is no principled basis for distinguishing between class members based on the dates of their claims. If a prisoner was already a member of the class defined on January 15, 1996, and was thus pursuing his claim through the class action procedure, it is senseless to impose a requirement that he exhaust administrative remedies as a prerequisite to pursuing an individual claim for damages. Had the case gone all the way to trial, defendants could not have asserted, consistent with *Craig*, that the PLRA applied to defeat the damage claims of class members. As this court has previously stated, the Remedial Plan essentially resolved issues of liability and set up a procedure for resolving damage claims. The PLRA simply does not apply, any more than it would have applied had the case been tried.

According to defendants, the Remedial Plan demonstrates that the parties intended for the exhaustion requirement to apply to damage claims. First, they cite Remedial Plan § XII. Second, they observe that supplemental claim forms, drafted by the parties, ask claimants to attach to their claims copies of all grievances. In the court's view, the former argument proves the opposite of defendants' position, while the latter is simply inconclusive.

Although Remedial Plan § XII describes a *permissive* grievance procedure, the procedure applies to *in futuro* issues such as facility placement, requested accommodation, or job placement. It does not encompass damage claims for past injury, and it is far removed from the damage provisions in Remedial Plan § XXXII. It is apparent that the parties were capable of outlining a grievance procedure where one was intended, albeit a permissive one, and it is equally apparent that the parties did not outline a mandatory grievance exhaustion requirement

4

for damages claims or state anywhere in Remedial Plan § XXXII that the detailed damages process outlined in that section somehow incorporated the grievance process of § XII.  The reasonable inference is that the parties did not intend for the exhaustion of remedies doctrine to apply to damages claims — the opposite of the inference defendants would have the court draw.

The supplemental claims forms asking claimants to attach copies of grievances is simply too inconclusive in these circumstances to create an inference that exhaustion is mandatory.  The request may merely have been an attempt to give the special masters additional information about the circumstances and background of the claim.  It may have been an attempt to ferret out whether there had been a (1) request by the prisoner for reasonable accommodation and/or (2) an unreasonable failure to accommodate by defendants.  Or there may have been other reasons for asking that grievances be attached.  This is just too thin a reed on which to base a mandatory exhaustion requirement.

For the reasons stated herein, it is

**ORDERED** that defendants objections (#882) to the special master's orders concerning Claim Number 03–107 (Daniel Hullett) and Claim Number 01–012 (Anthony L. Lee),[*] denying defendants motion to dismiss those claims for failure to exhaust administrative remedies under 42 U.S.C. § 1997e, are OVERRULED.  The special master's rulings shall stand as the order of this court.

---

[*]The court notes that neither defendants' motions to dismiss the Hullett and Lee claims nor the special master's ruling on those motions have been filed or docketed in the court records. Defendants did attach the special master's written rulings to their objections.

Dated this  8  day of July, 2005.

           BY THE COURT:

           s/Edward W. Nottingham
           EDWARD W. NOTTINGHAM
           United States District Judge