IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COURT
_____ ___, COLORADO

AUG – 1 2005

GRE____ ___ _____HAM
CLERK
_____

---

Claim Number 03-046
Category III
Claimant: George L. Leslie IV, #43666
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 15, 2005. This hearing was held at the Colorado State Penitentiary (CSP) in Canon City, Colorado. Present were the following: George L. Leslie IV(Claimant); and Vincent Morscher, attorney for Defendants.

Testimony was received from the following witness: Claimant. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 thru 11. All were admitted. Defendants offered Exhibits A and B. Both were accepted. After final closing arguments, the Special Master reviewed the medical records of Claimant. The case then was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or a remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant has filed his claim and requested that the Special Master award appropriate relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

As noted previously, the Settlement Agreement provided that all claims assigned to Category III were to receive a hearing. Claimant was the only witness called by either side at the hearing.

Claimant came into the custody of the CDOC on March 28, 1988. He initially was placed at

the Shadow Mountain Correctional Facility in Canon City, Colorado, but subsequently was transferred to a number of correctional institutions.

In 2002, Claimant was transferred to the Limon Correction Facility in Limon, Colorado. In 2003, Claimant was placed at the Fremont Correctional Facility in Canon City. After a period of approximately one year, Claimant was transferred to CSP. Claimant forthrightly stated that he had done something that warranted his transfer to CSP. No mention was made as to what required his transferred, as it was irrelevant to the issues before the Special Master.

In 1996, Claimant was diagnosed with non-Hodgkins lymphoma. As a result, he underwent surgery and chemotherapy. As a result of the chemotherapy, Claimant believed that he suffered nerve damage to his lower extremities. He also believed that the chemicals had affected other parts of his body, including vision and hearing.

When he made his initial filing, Claimant checked the boxes for mobility, vision, hearing, and diabetes. He also attempted to make three additional boxes for the following conditions: non-Hodgkins lymphoma; hepatitis C; and hemachromatosis. Claimant notes that he is a cancer survivor. He also testified that his cancer is in remission. He has continuing health issues that are significant. Claimant is concerned about his health and testified that he exercises as often as he can each day.

Claimant was very concerned with his hemachromatosis, which is a condition of excessive iron in the blood system. Prior to his transfer to CSP, Claimant was receiving quarterly bloodlettings to control this condition. He has had no such a treatment since coming to CSP.

Claimant was diagnosed with diabetes while at Fremont. He was and is classified as a class II diabetic. He controls his diabetes with exercise, diet and glucophage.

Claimant testified that it had become difficult for him to obtain work as a result of his health conditions. In turn, this led to an inability to make additional money during the month. He had been at a print shop, and he testified that this the best paying job in the system. While at Fremont, he was able to find work as a janitor.

In 1997, Claimant received a cane to help with his mobility. That was taken away from him when he transferred to a different correctional facility. He indicated that a cane would be of help to him in getting around. He testified that he was on a "medical 4" status which made obtaining work difficult. He acknowledged that at CSP is there virtually no work due to the custody restrictions.

Claimant would like to have a hearing aid or something that would allow him to listen to his television while not disturbing others in his pod. He is not deaf, but must turn up his television in order to hear it.

Claimant's medical records reflected that he had received bloodlettings in the past. The entry of May 9, 2005 reflected that an inquiry was being made to see if a phlebotomist would come to the

4

facility. The medical records further reflected that Claimant has had an on-going problem with depression. From what Claimant has gone through with the cancer, it is certainly understandable that he might be depressed.

Claimant advised the Special Master that he wanted to withdraw any monetary claim for damages. He wished only to pursue non-monetary relief. The Special Master asked Claimant if he had been forced or coerced by anyone to withdraw his monetary claim, and he said no. The Special Master found at the hearing that no coercion had been placed upon Claimant, and the withdrawal of that part of his claim was being done voluntarily.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The Settlement Agreement provides relatively narrow definitions. The Special Master must base his decision solely on evidence presented at the hearing or in documents submitted prior to the hearing. The testimony of Claimant was believable and is accepted by the Special Master.

*Vision Impairment:* Claimant testified that his vision had been affected by his diabetes, as well as by the chemotherapy for his cancer. Though there was a dispute as to when he received his last eye exam and what problems may have been found, there was no dispute that Claimant is not blind and has correctable vision.

Under the definition set forth in the Settlement Agreement, a claimant must show that he is permanently blind or has a vision impairment that is not correctable to central vision acuity of 20/200 or better. Accepting completely the testimony of Claimant, his vision condition does not meet this criteria.

**Hearing Impairment:** In order to prevail under the Settlement Agreement, a claimant must be permanently deaf or have a hearing impairment so severe that he must rely on written communication, lip reading, or signing. Accepting completely the testimony of Claimant, he does not meet this criteria. He has some hearing loss, but not to the level required by the Settlement Agreement. Though it might make sense for ear buds or headphones to be made available for those with some hearing loss, it is not something that can be ordered by the Special Master because Claimant does not the threshold requirements for a hearing impairment.

**Mobility Disability:** In order to qualify as mobility disabled, a claimant must be permanently wheelchair bound or have a lower extremity disability that substantially limits walking. The Settlement Agreement provides that examples of lower extremity problems would include being unable to walk for more than 100 yards on a level surface or being unable to climb stairs without stopping.

Accepting completely the testimony of Claimant, he does not meet the criteria for being mobility disabled. He is not bound to a wheelchair and can walk. Claimant does not meet the specifically defined criteria for mobility disabled.

**Diabetes:** There is no dispute that Claimant is a diabetic. He presently controls this disease with diet, glucophage, and exercise. Claimant is worried about his diabetes, and that is fully understandable.

In order to meet the criteria under the Settlement Agreement, a claimant must be diabetic and this condition must affect a major life activity or activities. The evidence reflects that Claimant was at Fremont Correction Facility when diagnosed with diabetes. Hethen was transferred to CSP. There was no evidence presented in the case that Claimant must have special housing at this time, though that may occur in the future. Looking at other major life activities, there is no indication that those activities have been significantly impaired at this point.

Claimant does have a significant and legitimate complaint concerning items available to diabetic inmates from the CSP canteen list. The list provided by Claimant (Exhibit #1) provides nothing for a diabetic. Claimant has complained about the lack of items to CSP medical staff. A notation in a medical record for May 5, 2005 from Dr. Wermers speaks for itself: "upset no diabetic foods available per canteen; I agree with him."

Defendants offered a canteen purchase list from May through July, 2005 of Claimant. Apparently, this was offered to show that Claimant does not follow his diabetic diet. The Special Master was not persuaded by this, because there was a lack of items that a diabetic could purchase from canteen. Claimant is incarcerated twenty-three hours per day at CSP. One of the few privileges that he has is to be able to purchase canteen items. Following the logic of Defendants, he should purchase no food from canteen because he is diabetic. That logic will lead to another lawsuit in which Claimant and others will prevail. There has been no accommodation by Defendants to provide appropriate items for a diabetic inmate at CSP, while non-diabetic inmates are able to purchase and consume food items.

**Conclusion:** Claimant does not meet the criteria set forth in the Settlement Agreement as to any of the four categories. If Claimant met the diabetic criteria, the Special Master would order the appropriate items for diabetics be made available at CSP through the canteen. Hopefully, that will occur without further litigation in another case.

***2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?*** There was no evidence presented that Claimant was not otherwise qualified to participate in programs or receive benefits and services at CSP. As a practical matter, there are almost no programs available at CSP due to the level of confinement.

***3. Was the Claimant discriminated against by DOC because of his or her disability?*** The answer to this question is no. Claimant does not meet the criteria for diabetes or any of the other

three conditions. Further, there is no evidence that he was treated differently from other non-disabled inmates, with the exception that the Special Master agrees that non-diabetic items should be available for canteen purchase.

   ***4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy***? This question cannot be reached as Claimant has not met the criteria of any of the four covered disabilities.

## IV.

   The Settlement Agreement provides the only jurisdiction for the Special Masters. As agreed upon by counsel for the class and Defendants, the Settlement Agreement defines the disabilities. Merely having a condition, such as diabetes, is insufficient, unless the totality of the definition for the condition is met and a major life activity is affected. Claimant is diabetic but his condition is not to the extreme as required by the Settlement Agreement.

   IT IS HEREBY ORDERED that the claim of George L. Leslie IV is denied, as he has not established each of the four questions by a preponderance of the evidence.

   IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 15, 2005.**

   SIGNED this 31st day of July, 2005.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _21st_ day of July, 2005 to the following:

Mr. George L. Leslie IV
#43666
CSP
P.O. Box 777
Canon City, CO 81215-0777

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. Vincent Morscher
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203