IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG - 1 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-085
Category III
Claimant: Joseph P. Lovato, #60329
Address of Claimant: 1010 Jamaica, Aurora, CO 80010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Monday, July 11, 2005 at 1:00p.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: Joseph P. Lovato, Claimant; Ms. Rose Lewis, sister of Claimant as well as Claimant's girlfriend who was present as a wheelchair pusher for Claimant; Skippere S. Spear, from the Office of the Attorney General, for Defendants; Cary Shames, D.O., witness for the Defendants, by telephone.

Testimony was received from the following witnesses: Claimant; Cary Shames, D.O., by telephone. Defendants provided the Special Master and Claimant a 65-page summary of documents marked Exhibit "A". Claimant was also provided a copy of his Diagnostic Narrative Summary by Defendants at the conclusion of the hearing. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation

1

Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.   General inconvenience or nominal damages;
II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.  Damages due to severe physical injuries; and
V.   Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.   Claimant submitted a claim which was assigned claim number 03-085.

2.   Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

2

3. Claimant is currently residing at 1010 Jamaica Street, Aurora, CO. 80010[1].

4. Proper notice of the hearing was given, and both Claimant and the Defendants appeared for the evidentiary hearing.

5. Claimant was in the custody of the Colorado Department of Corrections (CDOC) from approximately 1989 to 2002.

6. Claimant suffers from some vision impairment and hearing problems that predated his incarceration. Claimant also suffered an injury to his wrist before entering CDOC custody. Claimant suffers from spina bifida, which affects his mobility and makes him prone to falling. His mobility was also adversely affected by injuries to his hip that predated his entry into CDOC custody.

7. Claimant's vision is correctible with glasses or contact lenses. When Claimant entered CDOC custody, he had contact lenses. He asserts that while in the custody of the CDOC, he was unable to obtain new contacts even though the existing contacts were old and irritated his eyes. Ultimately his contact lenses were taken away and replaced with glasses. Claimant asserts that he was unable to wear the glasses because they irritated his nose and caused him to have nose bleeds.

8. Claimant asserts that the CDOC failed properly to treat his hearing loss.

9. Claimant asserts that the CDOC failed to provide proper medical treatment and physical therapy for his wrist.

10. While in CDOC custody, Claimant's mobility problems became worse and he suffered numerous falls. He was unable to utilize normal crutches because of his wrist injury. Ultimately, the CDOC provided him with a wheelchair and assigned pushers to assist him. Claimant asserts that on occasion, his pusher was unable or unwilling to help him and, as a result, he was unable to get to church or to the cafeteria. Claimant testified that he missed a few church gatherings because of this, and on a couple of occasions did not receive lunch.

11. Claimant testified that he was placed on medically unassigned status due to his wrist injury. He stated that he applied for many jobs; but was never provided with a job due to his disability. Claimant indicated that he was able to attend school. Claimant's medical reports show that he was placed on medically unassigned status pursuant to his own request, and that he declined available jobs because he felt that his wrist problems precluded him from performing the job duties.

12. Claimant testified that there was one wheelchair accessible shower in the area where he was housed. He indicated that the shower had a chair so that handicapped inmates could be seated while taking their showers. However, it was necessary to

---

[1] The Special Master notes that this is a change of address from the previous address on file of 3818 Madison St., Denver, CO 80205.

ambulate from the wheelchair to the shower seat, and then return to the wheelchair after showering. Claimant testified that he could not accomplish this without risk of falling. He requested that the facility install hand rails to assist him in ambulating between his wheelchair and the shower seat, but this request was refused. Subsequently, Claimant fell while attempting to utilize the shower.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Lovato is a disabled individual who is a member of the class. Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working, and perhaps performing manual tasks. Claimant also testified that while in the custody of the

4

CDOC, he had permanent disabilities in the form of vision impairment and hearing impairment. The Special Master finds and concludes that Claimant's vision and hearing problems did not rise to the level of permanent physical or mental impairments that substantially limited one or more of his major life activities. Finally, Claimant testified that his has limited use of his wrist. The Special Master finds and concludes that this condition is outside the scope of the Remedial Plan.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. There is nothing in the evidentiary record suggesting that Claimant Lovato was otherwise unqualified to participate in any program or to receive any benefit or services. As a result, the Special Master finds and concludes that Claimant Lovato has met this requirement of the ADA, the Rehabilitation Act and the Remedial Plan.

4. The third, and probably key issue before the Special Master is whether Claimant was discriminated against by CDOC because of his or her disability. In order to establish discrimination in the context of the Remedial Plan, Claimant must demonstrate that he requested accommodation for his disability and that reasonable accommodation was denied. Claimant asserts that he was denied reasonable accommodation in the following respects: (a) for a period of approximately one year, Claimant sought prison jobs, but was denied any job because of his disability; (b) the facility refused to provide him with a substitute pusher or make other accommodation when his wheelchair pusher was unavailable or unwilling to assist him; (c) prison officials refused to accommodate his repeated requests to install hand rails in the wheelchair accessible shower; (d) he received no medical attention or inadequate medical attention for his injured wrist, lower extremities, vision problem and hearing problem.

5. Although Claimant testified during the hearing regarding failures to accommodate his request for jobs and failures to make substitute pushers available when his normal wheelchair pusher could not assist him, neither of these contentions was contained in the his initial Claim or Supplemental Claims. Furthermore, neither of these contentions is sustained by the evidence. Although Claimant asserts that he was placed on medically unassigned status and denied jobs because of his injured wrist, the evidentiary record indicated that that he requested to be placed on medically unassigned status and declined jobs that were available to him. In any event, the Special Master finds and concludes that Claimant's injured wrist was not the type of permanent impairment covered by the terms of the Remedial Plan. The evidence reflects that when Mr. Lovato became wheelchair-bound, he was assigned a pusher. While their may have been isolated occasions when his assigned pusher was not available to assist him, the central inquiry is whether "when viewed in its entirety," Claimant's disability was reasonably accommodated. *Bird v. Lewis & Clark College,* 303 F.3d 1015, 1021 (9th Cir. 2002). When viewed in its entirety, the Special Master finds and concludes that Claimant's need for assistance with respect to his wheelchair was reasonably accommodated by the CDOC.

6.  Claimant asserts that he fell in the shower and sustained injuries as a result of the CDOC's refusal to accommodate his mobility disability by installing hand rails in the wheelchair accessible shower. Claimant's testimony is uncontroverted that (a) the shower that was available for his use did not have hand rails; (b) that he discussed with prison officials the fact that he could not safely lift himself out of his wheelchair or get back into his wheelchair without hand rails; and (c) the facility refused to install hand rails or provide other assistance that would allow Claimant to get in and out of his wheelchair to utilize the shower. No evidence was presented by Defendants that the installation of hand rails or some other form of accommodation was infeasible or was contrary to the legitimate needs or operation of the prison. The evidence establishes that Claimant fell while utilizing the shower, sustaining injuries. There is no evidence as to nature, scope or extent of his injuries.

The Special Master finds and concludes that Claimant has sustained his claim that Defendants failed to provide reasonable accommodation for Claimant's mobility disability in connection with his use of the shower; and that the failure was a proximate cause of injuries sustained by Claimant. Obviously, Claimant's fall and ensuing injuries resulted in pain and suffering. However, the sparse evidentiary record regarding damages would not support a substantial monetary award. Accordingly, the Special Master finds and concludes that Claimant is entitled to an award of $500.00 to compensate him for the injuries sustained in connection with his fall. While non-economic loss is not recoverable under the Rehabilitation Act or the ADA absent proof of intentional discrimination (*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999)), the issue of intentional discrimination was resolved through the settlement and Remedial Plan. In any event, the evidentiary record contains a sufficient showing of intent to sustain a claim for non-monetary loss under the Rehabilitation Act and the ADA.

7.  It should be noted that many of Claimant's complaints relate to an alleged failure of the CDOC to provide reasonable medical care and treatment for his disability or to an alleged deliberative indifference of the CDOC to Claimant's medical needs. These claims are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

### IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant's claim be sustained in part, as set forth more fully above, and that Claimant has partially met his burden to prove his claim by a preponderance of the evidence and Claimant's claim for relief in this matter is hereby GRANTED.

IT IS FURTHER ORDERED that judgment be entered on this claim in favor of Claimant and against Defendants in the sum of $500.00.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

6

Civil Procedure 53(g)(2), but said objection must be filed **on or before September 2, 2005** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 18th day of July, 2005.

_____
Bruce D. Pringle,
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 18th day of July, 2005 to the following:

Mr. Joseph P. Lovato, #60329
1010 Jamaica St.
Aurora, CO 80010

Ms. Paula Greisen
Mr. David H. Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. Skippere S. Spear
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra