IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

**DEFENDANTS' RESPONSE TO CLAIMANT WOLF'S "RESPONSE TO FINAL ORDER OF SPECIAL MASTER"**

---

Defendants, through the Colorado Attorney General respectfully submit the following Response to Claimant Wolf's "Response to Final Order of Special Master."

**FACTS RELATING TO WOLF'S DAMAGE CLAIM**

Pursuant to the Terms of the Remedial Plan entered and approved by the Court, Claimant, David Paul Wolf, filed a claim for damages with the Special Master.

Claimant is currently incarcerated in Texas. He was incarcerated in the CDOC from 1999 to 2002.

At his hearing, Wolf maintained that he was denied a wheel chair accessible room and placed in solitary for approximately one week at Buena Vista Correctional Center ("BVCC"). However, once BVCC realized that the facility could not accommodate Wolf's needs, he was moved to Fremont Correctional Facility ("FCF"). He was later moved to Territorial Correctional Facility ("CTCF") and maintains that he was denied access to the free weights at CTCF, on occasion he had to wait for his pusher to escort him to the cafeteria, on one occasion was unable

to attend religious services, was denied access to some programs at CTCF, and had to quit his inmate job in the CTCF kitchen because if he had to use the restroom, he had to return to his living unit.[1]

It is undisputed that Wolf scored a minimum security rating and was always housed in a minimum facility.  Moreover, the evidence demonstrated that Wolf was not eligible for a number of programs at CTCF due to disciplinary write ups.  Additionally, both the free weights and the gym at CTCF were accessible to Wolf.  It is also undisputed that Wolf was assigned a pusher to assist him around CTCF.

Wolf's claim was heard by Special Master Bruce Pringle on June 6, 2005.   On June 14, 2005, the Special Master issued a Final Order with respect to Wolf's claim. The Special Master concluded that Wolf failed to meet his burden of proving his claim by a preponderance of the evidence.

On July 8, 2005, pursuant to the Remedial Plan, Wolf filed his "Response to Final Order of Special Master" seeking review of the Order with this Court.

## STANDARD OF REVIEW

Pursuant to the terms of the Remedial Plan, the Order of the Special Master "may be appealed on an abuse of discretion review to the Honorable Judge Kane."  (See Remedial Plan at p. 29).

An abuse of discretion occurs when there is no legal or factual support for the decision. *See* Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995) ("A court has abused its discretion when it based its decision on an erroneous conclusion of law or where there is no rational basis in

---

[1] A number of the claims Wolf raised at his hearing such as access to religious services and prison yard accessibility were not included in Wolf's damage Claim Forms.  Despite this fact, the Special Master denied Wolfs claims with respect to these issues.

evidence for the ruling"); <u>Shaw v. AAA Engineering & Drafting, Inc.</u>, 213 F.3d 538, 542 (10th Cir. 2000) (same). "An abuse of discretion occurs when a judicial determination is arbitrary, capricious, or whimsical. It is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment, or the result of impartiality, prejudice, bias or ill will as shown by evidence or the record of proceedings." <u>United States v. Wright</u>, 826 F.2d 938, 943 (10th Cir. 1987). An abuse of discretion can also be found if the district court's ruling is "significantly premised on an incorrect understanding" of the applicable law. <u>United States v. Vargas</u>, 925 F.2d 1260, 1263 (10th Cir. 1991); <u>See also</u> <u>Mann v. Reynolds</u>, 46 F.3d 1055, 1062 (10th Cir. 1995) ("A court has abused its discretion when it based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling").

**ARGUMENT**

**A.     A review of the transcript and the questions posed to the witnesses clearly indicates that Claimant heard all testimony.**

A review of the transcript and the recording of the hearing unequivocally dictate that Wolf was able to hear all testimony, respond to questions and ask questions based upon the testimony presented.[2] While he initially indicated that there was some difficulty hearing, the record in its entirety indicates that Wolf could hear everything that was presented. (See Transcript at pp. 1-5; 26-28). Mr. Wolf responded to direct questions and questioned witnesses and otherwise was able to present his claims. If he had difficulty understanding or hearing evidence, he alerted the Special Master on that fact, and the testimony was repeated. (See e.g. Transcript p. 29, ll 4-15). Accordingly, his objection based upon the alleged inability to hear the evidence is completely unsupported and without merit.

---

[2] Defendants have prepared an unofficial transcript and attached it hereto.

**B.      The Special Master properly evaluated Wolf's claim pursuant to the Remedial Plan and applicable law.**

In accordance with this Court's Order dated November 23, 2004, individual claimants are required to prove the following elements to recover damages.

    1.   Is the claimant a disabled individual who is a member of the class?

    2.   Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

    3.   Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)

    4.   Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

(November 23, 2004 Order at ¶2).

A review of the Special Masters Final Order, as well as the transcript of the hearing and applicable law, dictates that the Special Master properly evaluated and decided Wolf's claim.  The decision of the Special master is both legally and factually supported.  It is not arbitrary, capricious, or whimsical, and thus should be affirmed.

**1.   Defendants concede that Wolf is a disabled individual who is a member of the class.**

The Special Master concluded that Wolf was a disabled individual who is a member of the class.  Neither Wolf nor the Defendants claim that this finding was in error.

**2.   Wolf was not otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.**

To get relief under the ADA or the Rehabilitation Act, a claimant must be "disabled" (or "handicapped") *and* otherwise qualified.  School Bd. of Nassau County v. Arline, 480 U.S. 273, 285 (1987).  "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Community College v. Davis, 442 U.S. 397,

406 (1979); <u>Arline</u>, 480 U.S. at 287 n.17; <u>Pushkin v. Regents of Univ. of Colorado</u>, 658 F.2d 1372, 1387 (10th Cir. 1981).  As noted by the Special Master, an inmate may not be qualified to participate in various services, programs or activities because of disciplinary, health, or other valid penal justifications.  <u>Miller v. King</u>, 384 F. 3d 1248, 1266 (11th Cir. 2004).

Wolf presented no evidence that he was qualified to participate in the programs such as free weights, and auditorium.  Indeed, the evidence presented indicated that he was not qualified or eligible due to the numerous Code of Penal Discipline ("COPD") violations Wolf incurred during his incarceration.  (Transcript at p 36, ll 21-22; p. 37, l.1; p. 50, ll 2-12).

**3.  Wolf was not discriminated against by DOC because of his or her disability.  (*e.g.*, accommodations were not requested and denied because of the disability.)**

Both the ADA and the Rehabilitation Act require a claimant to show that the defendant's allegedly improper conduct was done *because of* claimant's disability.  <u>See</u> 29 U.S.C. § 794 ("solely by reason of her or his disability"); 42 U.S.C. § 12132 ("by reason of such disability"). "The duty to provide 'reasonable accommodations' under the ADA and the Rehabilitation Act arises only when a policy discriminates <u>on the basis of disability</u>." <u>Weinreich v. Los Angeles County Metro. Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis in original). "A plaintiff proceeding under Title II of the ADA must, similar to a Section 504 plaintiff, prove that the exclusion from participation in the program was 'solely by reason of disability." <u>Weinreich v. Lost Angeles County Metro. Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997); <u>Sandison v. Michigan High Sch. Athletic Ass'n</u>, 64 F.3d 1026, 1036-37 (6th Cir. 1995).

To establish that defendant's alleged discrimination was "based on [claimant's] disability . . . the plaintiff must 'present some affirmative evidence that disability was a determining factor in [defendant's] decision.'" <u>Selenke v. Medical Imaging of Colorado</u>, 248 F.3d 1249, 1259 (10th Cir. 2001) (quoting <u>Morgan v. Hitli, Inc.</u>, 108 F.3d 1319, 1323 (10th Cir. 1997).

The Special Master concluded that Wolf failed to prove that he suffered any discrimination by reason of his disability.  This determination is aptly supported by the record.  In denying Wolf's claim, the Special Master analyzed each of Wolf's contentions in detail.  Specifically, Wolf maintained that: (a) He was placed in solitary at BVCC because his initial housing assignment was to a room that was too small for his wheel chair; (b) He was not able to continue his job a FCF because the dining hall restroom was not accessible; (c)While at CTCF he was not able to get his wheel chair to the free weights area; (d) The recreation area at CTCF for wheel chair was too small; (e) on occasion he had to wait for his pusher to take him to the cafeteria; (f) He could not access a game area above the CTCF cafeteria; (g)  The cells at CTCF were too small; and (h) He was unable to attend a religious service because he could not get to the area it was held.

> **(a) Wolf's claims that he was placed in solitary at BVCC because his initial housing assignment was to a room that was too small for his wheel chair, and his housing assignments at FCF and CTCF were properly denied.**

When Wolf entered the CDOC system he did not have a wheel chair or even a cane. (Transcript at p. 28, ll 19-23; p. 29 ll1-8; p. 60 ll4-10). Thus he was assigned to BVCC. (Transcript p. 46, ll12-17).  Upon arriving there, the facility realized that Wolf would be better accommodated at another facility.  Thus, he was moved within one week to FCF, a more accessible facility. (Transcript p. 46, ll 19-23; p. 47 ll 1-11; p. 61 ll 8-13; p. 65 ll 12-18). After arrival at FCF, Wolf was given a direct order by the Associate Warden of FCF to move into a medical, accessible cell.  Wolf refused to obey the order and was convicted of violating the Code of Penal Discipline for failing to obey an order.  Thus his claim as it related to accessible housing was specious at best. (Transcript p. 53, ll 16-23; p. 54 ll 1-3).

He was later transferred to CTCF to better accommodate his disability and to provide him with easier access to medical treatment and was housed in and accessible cell.  Wolf's claim is that the accessible cell was a two person cell and that his wheel chair took up space in the cell which led to altercations with his cellmate.  He failed to present evidence as to the actual size of the cell or that he filed any grievances with respect to this issue or otherwise requested an accommodation. (Transcript p. 34, ll 6-15).  Moreover, he failed to present any evidence that he was treated differently than other prisoners because of his disability.

> **(b) Wolf's claim that he was not able to continue his job a FCF because the dining hall restroom was not accessible was properly denied.**

Wolf claimed that he could not fully perform his inmate job because of a lack of an accessible restroom in the kitchen area.  He testified that when at work, if he needed to use the restroom, he was required to return to his cell house and the prison ruled prohibited him from returning to the kitchen.  However, as indicated by the Special Master, he presented no evidence that he requested any sort of accommodation of prison officials.

> **(c) Wolf's claims relating to the free weights area and the recreation area at CTCF were properly denied.**

Wolf presented no evidence that the wheel chair area in the CTCF recreation yard was not accessible. Indeed, the evidence presented indicates that the areas were wheel chair accessible. Transcript p. 48, ll 12-23; p. 49, ll1-23; p. 50, ll 1-5).  While he indicated that the area was small, he did not testify that this deprived him of access.  Like all prisons, a large number of inmates are confined in a small area.  Thus all inmates, able bodied and disabled, there are times when an inmate must simply wait his turn.  Finally, even if the area was not accessible, Wolf never requested an accommodation.  (Transcript p. 36, ll 6-9).

**(d) Wolf's claim that occasion he had to wait for his pusher to take him to the cafeteria was properly denied.**

As the special master noted in his order, the fact that Wolf had to wait on occasion to use the ramp to the cafeteria until his pusher arrived, does not constitute discrimination based upon disability. The central inquiry is whether the cafeteria "when viewed in its entirety" is accessible. A public entity may comply with the requirements of the ADA through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, and delivery of services at alternate accessible sites. 28 CFR § 35.150. The CDOC accommodated Wolf and provided him a pusher. (Transcript p. 37, l 22; p. 38, ll 1-2; p. 66, ll 12-14). Wolf testified that he was able to access the cafeteria with his pusher.

**(e) Wolf's claim that he was discriminated against because he could not access a game area above the CTCF cafeteria was properly denied.**

Wolf failed to demonstrate that he was qualified for these programs. Transcript p. 35, ll 12-15, 19-22). Even if he were qualified, he failed to present any evidence that he requested and was denied access to these programs. Finally, the evidence presented that if otherwise qualified disabled individuals requested access to these programs, accommodations were made. (Transcript, pp. 52-53).

**(f) Wolf's claim that he was unable to attend a single religious service because he could not get to the area it was held was properly denied.**

Wolf testified that he was able to access religious programs. When asked, he indicated that he registered as a Jewish offender, and that on <u>one</u> occasion, was unable to access a Ramadan service.[3] (Transcript p. 22, ll 6-13). He testified that he was at all other times able to access religious services. The gravamen of his claim is that the chapel at CTCF where services were held was too small. (Transcript at p. 20, ll 20-23; p. 38 l 23; p. 39 ll 1-7). This, does not state a claim

for disability discrimination.  Moreover, the evidence indicated, and Wolf admitted, that when viewed in the entirety, religious services were accessible.

**4.   Did this conduct cause the claimant harm and if so, what is an appropriate remedy?**

As noted in the Final Order, the gravamen of Wolf's claims relate to the quality of medical care he received.  He never maintained that he was denied access to medical services because of his disability.  Thus his claim with respect to medical treatment is not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan.  Indeed, the Tenth Circuit and numerous other circuits have already addressed this issue.  See Rashad v. Doughty, 4 Fed.Appx. 558, Slip Copy, 2001 WL 68708;  Fitzgerald v. Corrections Corp. of America, 403 F. 3d 1134 (10th Cir. 2005);  see also Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996); Moore v. Prison Health Services, Inc., 24 F. Supp. 2d 1164, 1168 (D. Kan. 1998), aff'd, 201 F.3d 448 (10th Cir. 1999); cf. McNally v. Prison Health Services, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (only the denial of services and programs, not the denial of medical treatment, gives rise to a claim under the ADA).

Moreover, Wolf presented no evidence of any injury or damages. If no injury is proven, no damages can be awarded.  Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308, 106 S. Ct. 2537, 2543, 91 L. Ed. 2d 249 (1986).

---

[3] The fact that Ramadan is a Muslim fast and not a Jewish activity, indicates that Wolf was not sincere in his assertion that he was denied access to this service.  (Transcript p. 21, ll 7-12).

JOHN W. SUTHERS
Attorney General

S/ James X. Quinn
_____
JAMES X. QUINN, 21729*
Assistant Attorney General
Civil Litigation and Employment Law Section
Attorney for Defendants
*Counsel of Record

1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone: (303) 866-4307
FAX: (303) 866-5443

## CERTIFICATE OF SERVICE

I certify that on August 5, 2005, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system which will send notification of such filing to the following e-mail

addresses:

Paula Greisen, Esq.                     Honorable Richard M. Borchers
David Miller, Esq.                      dborchers@legalres.com
DavidMiller@KingGreisen.com             Legal Resolution Center
Counsel for the Class                   707 Zenobia Street
King & Greisen, LLP                     Westminister, Colorado 80030
1670 York Street
Denver, CO  80206


I further certify that I have mailed or served the foregoing Motion for Enlargement of

Time upon the following party by depositing copies of same in the United States mail, first-class

postage prepaid, at Denver, Colorado, this 5 th day of August, 2005 addressed as follows:

David Paul Wolf, #112819; #468145-TX
2400 Wallace Pack Road
Navasota, TX 77869

S/ Michelle DeVivo