IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

---

Claim Number 03-056
Category III
Claimant: David Navarro, #81213
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81217-2017

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 25, 2005. This hearing was held at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Present were the following: David Navarro (Claimant); and Jane Christman, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Dr. Orville Neufeld, D.O. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 4, and all were admitted. Defendant offered into evidence Exhibits A through C. All were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant was received into the custody of the Colorado Department of Corrections (CDOC) in 1993. He has been placed at various facilities of CDOC since being incarcerated. He has been at BVCF for one year.

In 1994, Claimant broke his right ankle and leg in three places during a softball game. This break required surgery in 1995 that included metal instrumentation to stabilize the ankle. The injury was significant. The bones did heal, but they were not the same as before the accident. Claimant requested soft-sided shoes to wear but received CDOC boots. He was told to purchase soft-sided shoes from the Canteen.

Over the years since the accident, Claimant has had problems with his right leg and ankle. He asked on numerous occasions for soft-sided shoes but was told to buy such shoes through the Canteen. He filed grievances trying to get shoes that properly fit. Claimant was unsuccessful in getting soft-sided shoes. For a period of time, he wore flip-flops.

At a prior placement, Claimant requested new boots that fit and did not hurt his feet. Initially, there was no response or help. Finally, the facility warden purchased boots for Claimant from his own funds. Claimant was wearing the boots at his hearing, but he noted that they were getting old. He has received from CDOC medical socks which he wears each day.

The medical instrumentation in Claimant's ankle began to work its way through the skin, causing inflamation and significant pain to Claimant. As a result, he decided to get the instrumentation removed. In 2003, he had surgery on the ankle and the instrumentation was removed. It took seven months for the ankle and wound to heal. As a result of the surgery, the inflamation caused by the instrumentation has eased. Claimant cannot stand for long periods of time and has continuous swelling in the ankle. Although it is somewhat unclear, it appears that Claimant has had a total of three surgeries on the ankle.

After his first surgery in the 1990's, Claimant was provided braces for his leg and ankle. As he transferred from facility to facility, these braces were taken from him. He has been told recently to buy braces from the Canteen. He does not see this as appropriate, as he was provided braces right after the accident. Claimant indicated that he needed a brace for his ankle and a brace for his knee. His knee has developed problems as the result of the change in his gait.

Claimant noticed that he had a problem with his vision after he left the Colorado State Penitentiary (CSP). CSP is the maximum security facility in which inmates do not go outside. Rather, they obtain a maximum of one hour per day outside of their cells. Claimant testified that he was blinded by the sun light. He asked for but did not receive tinted glasses. He was told to buy sun glasses from the Canteen. He testified that he has cluster headaches as the result of his eye problems.

Claimant indicated that braces and proper eyeglasses are expensive. He believes that CDOC should provide those to him without cost. His ankle is still sore and needs the support of a brace.

On cross-examination, Claimant indicated that tinted glasses were ordered by the optometrist when he was incarcerated at the Colorado Territorial Correctional Facility (CTCF). That order was rejected by someone in the CDOC chain of command. He indicated that his vision with glasses was 20/20 in acuity.

Claimant testified further that he worked as a laundry clerk. He was able to do the job but had some problems walking. He received a limitation on standing from medical. He has had difficulty in climbing steps. He further indicated that the wound where the surgery was done to remove the metal instrumentation took many months to heal.

Claimant also has a thyroid condition. He takes medication for the problem. Claimant had a bad reaction when taken off the thyroid medication.

Dr. Neufeld was called as a witness for Defendants. He testified that Claimant's eyesight was 20/20 when corrected. The request for tinted eye glasses was for personal comfort.

He testified further that Claimant's softball accident did lead to a significant injury. The ankle will give him problems throughout his life. The metal instrumentation was necessary initially to stabilize the ankle. Removal of the of the instrumentation was appropriate. Dr. Neufeld testified that he did not believe that Claimant fell into the category of mobility impaired.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems. Claimant's own testimony indicates that he does not fall under this definition. He has some vision problems, but those have been rectified by use of glasses. He has 20/20 acuity with the glasses.

Claimant's request for tinted glass does not appear to be unreasonable, especially since he had received such glasses in the past. The problem is that the Special Masters have no power to direct anything unless a claimant meets a definition set forth in the Settlement Agreement. Claimant

5

does not fall into the category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant is able to walk and carry on major life activities. On cross-examination, he acknowledged that he played handball until 2002.

Claimant had a terrible accident and resulting injury. It is true that his right ankle and leg will continue to give him problems for the rest of his life. The problem is that he does not meet the criteria for mobility impairment.

**Other Health Conditions:** Claimant has other health problems unrelated to the Settlement Agreement in this case. To the extent that another, uncovered condition has led to problems under the ADA and Rehabilitation Act, Claimant retains the right to bring a separate lawsuit on such a condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Claimant admitted that he had numerous disciplinary convictions under the Code of Penal Discipline (COPD). It is not clear that Claimant was qualified for all programs and services. He has been working at the laundry, and it appears that he been able to remain qualified for such program and services.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. There is insufficient evidence to find that CDOC or its staff discriminated against Claimant on the basis of a disability.

Claimant received medical and vision care. It was not the care that he believed was appropriate. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

Even if Claimant's evidence met the mobility disability standard, there was no evidence of any violation of the ADA or Rehabilitation Act. The claim of Claimant cannot proceed.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Claimant has failed to establish by a preponderance of the evidence the criteria in Questions #1 and #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of David Navarro is denied, as he has not established by a preponderance of the evidence the criteria set forth in the four question;

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 12, 2005.**

SIGNED this 5th day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of August, 2005 to the following:

Mr. David Navarro
#81213
BVCF
P.O. Box 2017
Buena Vista, CO 81211-2017

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra