IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG - 9 2005

GREGORY C. LANGHAM
CLERK

_____

Claim Number 03-099
Category III
Claimant: Tino Roybal, #94962
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER came before the Special Master for hearing on July 28, 2005. The hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Tino Roybal (Claimant); and Adams Wiens, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A through H, and all were admitted. All documentation previously submitted by both sides was accepted. Both sides were allowed to present closing arguments. The case then was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provided that all claims assigned to Category III were to receive a hearing. The Special Master reviewed the testimony presented, along with all documentation submitted and exhibits received at the hearing. The following are the facts necessary for resolution of this claim.

Claimant came into the custody of the Colorado Department of Corrections (CDOC) in October, 1997. After being screened at the Denver Regional Diagnostic Center, he was placed at CTCF. He then was transferred to the Arkansas Valley Correctional Facility (AVCF) at Crowley, Colorado. The bulk of Claimant's concerns arose from his stay at AVCF.

In 1998 while at AVCF, Claimant was diagnosed with diabetes. He had experienced a sudden loss of weight and had problems with his vision. When a check was made of his blood sugar levels, it was clear that he was diabetic. He was treated initially with oral medications and diet. After approximately three months, the medical staff placed Claimant on insulin. He has been taking insulin ever since, with one shot in the morning and one shot in the evening.

One day Claimant started to feel weak. He was pale and dizzy. He went back to his cell house, and one of the staff commented to Claimant that he appeared to be ill. That staff member set an appointment for Claimant with medical staff. After that appointment, Claimant was transported to the Colorado Mental Health Institute (CMHI) in Pueblo. This facility handles medical issues other than mental health matters. It was discovered that Claimant was bleeding internally in his esophagus.

3

He received several pints of blood while being treated. He was at the CMHI for one month. He then was returned to a CTCF. He had further complications and returned to CMHI for an additional ten days. He has not been hospitalized further.

Claimant testified that he has been involved in educational programs since he arrived at CTCF the first time. By his admission, he had a lot of educational catching up to do. As a result, he has worked full time on his goal of obtaining a GED certificate. He is within two classes of being able to take the test for his GED.

When asked about his diabetes, Claimant indicated that he had developed neuropathy in his feet. He has pain in his feet and occasionally has trouble climbing stairs. He stated that his treatment at the present time is appropriate at CTCF.

On cross-examination, Claimant acknowledged that he has Hepatitis C. He has been prescribed medications for this condition.

Dr. Neufeld reviewed the medical records and stated that Claimant also had cirrhosis of the liver which is a condition that often accompanies Hepatitis C. There is no question that Claimant had a serious bleeding problem, but Dr. Neufeld testified that this condition was not related to the diabetes. This testimony was not refuted by Claimant. The Special Master finds that the bleeding incident was not caused by diabetes, but rather by Hepatitis C.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no question that Claimant is diabetic. He has been dependent upon insulin to control the disease. Defendants dispute that he is covered by this part of the Settlement Plan. For purposes of this order, the Special Master will find that Claimant is covered by the definition for diabetes.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** The answer to this question is yes. No evidence was presented that Claimant was barred from any program or service for any reason.

**3. Was the Claimant discriminated against DOC because of his or her disability?** The answer to this question is no. Claimant provided no evidence that he had been discriminated against because of his diabetes. Programs, work, and services were available to Claimant.

Claimant's concerns about his health are not ill-founded. He has Hepatitis C and diabetes. The medical care provided to him for the internal bleeding does not appear to be deficient. More importantly, the bleeding was not related to his diabetes.

4

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit issued its opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005). In that case, the court held that the ADA and Rehabilitation Act cannot be used to contest the quality of medical care that may have been provided in a prison setting. Such a claim requires that a complaint be brought under the Eighth Amendment where there is a showing of a deliberate indifference to a known medical condition. Judge Nottingham dismissed all Eighth Amendment claims earlier in the case. *Montez v. Romer*, 32 F.Supp.2d 1235 (D.Colo. 1999).

Claimant has not met his burden to show he was discriminated against under the ADA and Rehabilitation Act because of his condition of diabetes. He has participated in programs and has received services.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant was not the victim of discrimination that is prohibited by the ADA and Rehabilitation Act. As a result, he did not suffer a harm that is cognizable under the Settlement Agreement.

IT IS HEREBY ORDERED that the claim of Tino Roybal is denied, as he has not established by a preponderance of the evidence each of the criteria set forth in the four questions; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 29, 2005.**

SIGNED this /s/ day of August, 2005.

BY THE COURT:

_____
Richard M. Borchers
Special Master

5

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this /s/ day of August, 2005 to the following:

Mr. Tino Roybal
#94962
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. Adam Wiens
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Margie Dykstra