IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-003
Category III
Claimant: Normand P. Roy, #82657
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

___

## FINAL ORDER OF SPECIAL MASTER

___

THIS MATTER came before the Special Master for hearing on July 22, 2005. This hearing was held at the Colorado State Penitentiary (CSP) in Canon City, Colorado. Present were the following: Normand P. Roy (Claimant); and Kathleen Spalding, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A and B, and both were admitted. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.*

2

The Settlement Agreement further provides, in part, as follows:

>   2. <u>Permanent Hearing Impairments</u>
>   Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>   3. <u>Permanent Vision Impairment</u>
>   Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>   4. <u>Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic</u>
>   Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>      1. Is the claimant a disabled individual who is a member of the class?
>      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony of the witnesses, exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant was received into the custody of the Colorado Department of Corrections (CDOC) on October 25, 1993. He has been placed at various facilities of CDOC since that date. He has been

at the CSP for slightly in excess of one year.

In the mid-1990's while incarcerated at the Arkansas Valley Correctional Facility (AVCF), Claimant was diagnosed as diabetic. Initially, medical staff attempted to control his diabetes through medicine, including glucophage, and diet. This did not control the blood sugars of Claimant, and a decision was made to begin giving Claimant insulin shots. Claimant began taking one shot in the morning and another in the evening. He continues to take insulin by shot in this fashion.

Claimant testified that he had difficulties initially with staff concerning his diabetes. He felt that CDOC staff treated all diabetics as if they had committed a crime. This was true particularly with non-medical staff. He had been threatened and belittled. On occasion, he had protested his treatment and ended up in a multiple restraint in a strip cell. He was fearful of his shots because he did not know if someone would give him too much insulin. Getting finger sticks to check blood sugar level was difficult and not without problems.

Claimant also described a reduction in his eyesight. He believed that this was the result of his diabetes.

He acknowledged that the atmosphere has changed and things are much better now. Medical issues are left to medical personnel. He is able to check his own blood sugar levels.

On cross-examination, Claimant testified that he has refused his insulin on occasion. He claims also that he has done better not eating the diabetic diet, and he does not eat sweet items that are on the regular diet.

Dr. Neufeld testified for Defendants. He acknowledged that Claimant is diabetic. This disease can be controlled, but cannot be cured. Dr. Neufeld testified that Claimant's belief that he could regulate his blood sugar levels based on his own subjective feelings was misplaced. Finger sticks are the only way to check such levels on a daily basis.

Dr. Neufeld testified further that the diabetic diet was important for Claimant to eat on a daily basis. Such diet is part of the overall treatment by medical staff. The diet must be consumed in its entirety, which precludes selective consumption of some, but not all, items on the tray. A review of medical records by Dr. Neufeld indicated that Claimant has vision that can be corrected to 20/20 visual acuity.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no dispute that Claimant is diabetic. Although Defendants dispute that he meets the criteria for diabetes, the Special Master does find that he is diabetic and that his condition has affected some aspects of

4

his life. This question will be answer with a yes.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** No evidence was presented that Claimant could not have participated in programs offered through CDOC. The evidence was clear that few programs exist for inmates at CSP because of the close security status that exists at the institution.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. Claimant's concerns have been with the quality of medical care that he has received. He acknowledges that he has received care, but disputes its effectiveness.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Merely having diabetes is insufficient under the Settlement Agreement to obtain damages. In this case, there has not been a showing that discriminatory conduct occurred toward Claimant that led to damages. Although he testified that he felt belittled in the past by CDOC staff because he had diabetes, there is no indication that this led to any damages. The present situation with treatment is completely different and better.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to the previous question was no, this question does not need to be reached.

IT IS HEREBY ORDERED that the claim of Normand P. Roy is denied, as he has not established by a preponderance of the evidence the criteria set forth in each of the four questions: and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 12, 2005.**

SIGNED this 5th day of August, 2005.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of August, 2005 to the following:

Mr. Normand P. Roy
#82657
CSP
P.O. Box 777
Canon City, CO 82125-0777

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_/s/ Marsje Dykstra_