IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-080
Category III
Claimant: O.D. Woolsey, #44114
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 28, 2005. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: O.D. Woolsey(Claimant); and Jess Dance, attorney for Defendants.

Claimant testified on his own behalf. Defendants presented the following witnesses: Dr. Orville Neufeld, D.O. and Thomas Mallory. Defendants offered into evidence Exhibits A through D, and all were admitted. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

As noted previously, the Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony of witnesses, exhibits and documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the custody of CDOC in 1975. He has been placed at various facilities over the past three decades but has been at CTCF since 1989. In 1983, Claimant had a cataract removed from his left eye. In 1993, Claimant received an implant for the left eye. This surgery was done by a Dr. Greenlee in Pueblo. This physician is not an employee of CDOC but rather does contract work. According to Claimant, Dr. Greenlee never checked the eye pressure in the left eye. As a result, glaucoma developed and the eyesight was lost in the left eye.

Claimant indicated that he had problems with the eye implant almost immediately. This included loss of eyesight in the left eye when he would bend over. He later saw a different eye specialist who indicated that the left eye had been traumatized by the lense implant surgery and was irreparably damaged. Claimant indicated that he cannot see anything through his left eye except whether there is bright light.

Claimant testified that his mobility problems arose after a fall in a kitchen while working for CDOC. He had five vertebrae fused in a surgery at Parkview Medical Center in Pueblo. He indicated that he was experiencing for a period numbness in his legs. The incision for the back surgery became infected and he spent several months in the hospital and then CTCF infirmary recovering. Claimant believed that the infection was the result of improper bandage changes by staff at CTCF. As a result of the surgery and subsequent infections, Claimant has lost two inches in height and has some difficulty in moving. He is able to walk, though much more slowly than in the past.

In addition to lower leg numbness, Claimant has a shoulder problem. He has seen Dr. Eskestrand, an orthopedic specialist. Claimant indicates that this physician has recommended a shoulder replacement. That recommendation has not been followed by CDOC medical staff. Claimant also has a condition called "hammer toes" which means that his toes have curled up on his feet. He requested surgery, but that was turned down.

Claimant had a mild heart attack in early 2005. He testified that he has received only cursory care for his heart issues.

Claimant also indicated that he has fluid in his left eye that creates problems for him. That fluid has diminished his ability to hear from that ear. He testified that he did not remember having a hearing test for several years.

In addition to the conditions noted, Claimant also has Hepatitis C. He has been experiencing problems with his blood, but he is unaware as to why this is the case.

At the present time, Claimant has no job at his facility. He is in the category of being "medically unassigned." He testified that he has attempted in the past to find a job. He does go the yard to exercise.

Claimant testified on cross-examination that he could see out of his right eye. He has restrictions on stairs, but is able to walk for some distance.

Claimant also testified that he has received a recent disciplinary conviction under the Code of Penal Discipline (COPD). He pled guilty to the charge because he had been promised probation.

In his testimony, Dr. Neufeld acknowledged that Claimant lost sight in the left eye. This was the result of "low pressure glaucoma" which is difficult to test for and treat. He testified that the 1993 lens implant surgery did not have a good result. Dr. Neufeld also testified that Claimant's present blood disorder appears related to the immune system. He described the condition as one where Claimant's body simply eats his blood. So far, no one has figured out what needs to be done to rectify the condition.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each question will be examined individually.

**1. Is the Claimant a disabled individual who is a member of the class?** Each condition checked on the claim form will need to be taken separately. The Special Masters are bound by the definitions set forth in the Settlement Agreement. Further, the named conditions are the only ones that can be adjudicated through the claim process.

**Hearing Impairment:** Claimant testified that he has fluid in his left ear. That has led to a diminished ability to hear from that ear.

The Settlement Agreement defines hearing impairment as follows:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

Claimant is not permanently deaf. He does not have hearing aids. He does not have a hearing condition so severe that he must rely on written communication, lip reading or signing.

Claimant has fluid in his ear, but it is not severe enough to fall under the parameters of what must be shown to establish a hearing impairment. Claimant does not fall within the provisions of the Settlement Agreement for hearing loss.

**Mobility Disability:** Claimant has had fusion surgery on his back. There is some residual numbness and pain, although he indicated that the surgery had gone well.

In order to establish a mobility disability, a claimant must show that he is either wheelchair

bound or that he has a lower extremity disability that affects a major life activity, such as walking. Claimant is not wheelchair bound. By his own testimony, he is able to walk and no major life activity has been affected. Under the definition of the Settlement Agreement, Claimant has not established that he is mobility disabled.

**Vision Impairment:** There is no dispute that Claimant has lost the sight in his left eye. He only is able to see bright lights from that eye, but he cannot see anything further. By his own testimony, the vision in his right eye can be corrected to close to 20/20 acuity.

The Settlement Agreement provides as to vision impairment as follows:

> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

Defendants argue that Claimant has one good eye and, therefore, he does not meet the criteria of Settlement Agreement. The Special Master would note that the cited provision does not state that both eyes must be affected. Claimant is permanently blind in his left eye. No amount of correction will change the vision in the left eye. The Special Master will find that Claimant meets the criteria for vision impairment.

**Other Conditions:** Claimant has a bad shoulder and injured hand. He would like a shoulder replacement. The Settlement Agreement deals with lower extremity conditions. The shoulder and hand are not covered by the Settlement Agreement. Therefore, Claimant is not precluded from commencing a separate lawsuit for these conditions.

Th same is also true for his heart condition. The Settlement Agreement is limited to the four conditions noted, and heart problems are not covered. Claimant may pursue any issues related to his heart and treatment he has received through a separate lawsuit.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** The answer to this questions is yes, but with a caveat. Claimant did have a COPD conviction that led to a loss of privileges. The claim in this case goes back to the time of filing of the case in 1992. Generally, Claimant has been qualified to participate in programs and services offered by CDOC.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. The definitions in the Settlement Agreement control the adjudication of the claim. Claimant does not fall within the definition of having a hearing impairment or mobility disability. Thus, he must show that he was discriminated against by CDOC on the basis of his vision impairment.

Claimant's real concern is the quality of medical care he received from Dr. Greenlee in 1993. He believes that his eyesight was lost as the result of medical negligence. Even assuming that to be

true, Claimant cannot adjudicate that issue as part of this case. The United States Court of Appeals for the Tenth Circuit issued its opinion on April 11, 2005 in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005). In that case, the court held that claims of medical negligence and malpractice cannot be pursue under the ADA and Rehabilitation Act. Such claims must proceed in federal court under the Eighth Amendment. The claims filed originally in this case under the Eighth Amendment have been dismissed by Judge Nottingham.

Claimant must proceed solely under the ADA and Rehabilitation Act. Both are discrimination statutes. The testimony of Claimant is that he received the implant surgery in 1993. There was not a good result, and that is acknowledged by Defendants. He is legally blind in his left eye. Under the ADA and Rehabilitation Act, Claimant must show that he has been discriminated against as the result of his vision impairment. There was no evidence presented that any such discrimination occurred over the years since 1993.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered, as there has been no evidence to substantiate any discrimination by CDOC on the basis of Claimant's vision impairment.

IT IS HEREBY ORDERED that the claim of O.D. Woolsey is denied, as he has not established each of the four questions by a preponderance of the evidence.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 29, 2005.**

SIGNED this 1st day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this /s/ day of August, 2005 to the following:

Mr. O.D. Woolsey
#44114
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____