IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-066
Category III
Claimant: Alejandro Valdez, #76532
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 22, 2005. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Alejandro Valdez (Claimant) and Kathleen Spalding, attorney for Defendants.

Testimony was received from the following witnesses: Claimant; Pete Pierce; and Rick Buford. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibit 1, and it was admitted. Defendants offered into evidence Exhibit A, and that was admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the custody of the Colorado Department of Corrections (CDOC) on March 13, 1986. After initial processing, Claimant was assigned to a facility then-known as the Shadow Mountain Correctional Facility (SMCF). In August, 1986, Claimant attempted to escape from SMCF. He was shot by a guard, and the bullet hit him in the spine. It severed his spinal cord at C6-C7. Claimant is a quadrapelegic, although he has some use of both hands. He is able to breathe on his own.

Claimant has been confined to a wheelchair since his spinal injury in 1986. He has been at CTCF since shortly after his injury. He cannot feed or clothe himself. He must rely on someone else to do virtually everything for him. Over the years, CDOC has hired other inmates to care from Claimant. The turnover in care givers has been significant. Some have discharged their sentences or been paroled. Others have found it difficult to work with Claimant. Others simply have not worked out.

Claimant indicated that some of his care givers took advantage of him. They would steal his canteen items or sexually abuse him. Due to the structure of the inmate prison society, Claimant was

3

never able to report someone who had abused him. He always feared retaliation and was without any way to defend himself due to his injuries.

Claimant was unable to utilize many of the programs at CTCF. Access was a constant issue, especially since Claimant was not able to maneuver himself. He was able to find a job as an inmate representative who provided representation for inmates at disciplinary hearings. Other work was unavailable, since few locations initially were accessible for wheelchairs. This included the Tab Plant which was one of the better paying jobs at CTCF.

Access issues were present over the years at CTCF at the auditorium and hobby shop. The auditorium was the location for concerts and holiday programs. Until the auditorium was closed in 2002, Claimant was unable to attend any such functions. The auditorium also was the location for video and other games. Claimant was able to play video games with the residual use left in his hands. The hobby shop was a place where Claimant could spend time with other inmates.

In 1997, Claimant sent a grievance to CDOC staff concerning lack of access to the auditorium. On January 17, Claimant received a reply to his grievance. It is unclear who signed the answer section to the grievance, but it read as follows:

> You are correct that at the present time there is no access for handicapped individuals to the upstairs auditorium. There are indeed liability issues with carrying wheelchairs up the stairs that we cannot ignore. There is no solution to providing access to the present area. In July, 1997, CTCF will begin construction of a large addition to the present academic building. Half of the present academic building will become an all purpose activity room with complete handicapped access. I am unable to offer a more timely solution, but can note that CTCF is moving forward with a correction to the present problem situation.

The auditorium never became wheelchair accessible. It was simply closed in 2002, with all activities being transferred to the gymnasium on the first floor.

Claimant also testified that the hobby shop and visiting area were not originally accessible for inmates in wheelchairs. The evidence presented by both sides establishes that both areas were not easily accessible for a quadrapelegic in a wheelchair.

On cross-examination, Claimant acknowledged that he had not been the easiest guy to get along with. He hoped that care givers could be better screened. He acknowledged that he had not filed grievances about individual inmates who were assigned to help him, because of security issues. He was fearful of retaliation. Claimant's case manager, Rick Buford, corroborated his concern about being labeled a "snitch."

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Defendants stipulated that Claimant is mobility disabled and a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** There was no evidence that Claimant was not qualified for programs and services for other reasons, such as disciplinary problems.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The evidence in this case established that Claimant was discriminated against by CDOC for access to areas at CTCF that were available to those who were not confined to a wheelchair. The response to Claimant's grievance acknowledged that he had no access to the auditorium. The plans detailed for an all purpose room did not end the lack of access, since the auditorium remained the central location for recreation. Only when it was closed in 2002 and video games were moved downstairs to the gymnasium did Claimant and others who were wheelchair bound have access to video games.

The United States Supreme Court ruled clearly and forcefully on June 15, 1998 that the ADA was applicable to jails and prisons. *Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206 (1998). Yet, CDOC did not undertake any steps to make the auditorium accessible to Claimant and others in wheelchairs. As Claimant stated clearly, a Christmas program, musical concert or inmate theater production were major occurrences for him because of his injury. Yet, for the time period of 1990 through 2002, Claimant was denied opportunities to participate in events at the auditorium or even to play video games, because there was no safe way to get there.

In cross-examination, Claimant testified that many things had changed for the better over the last four years. Accessibility was better, and he had access to programs and video games. Life was better for him at CTCF because of changes made to allow greater and better accessibility to him and others in wheelchairs.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has a life sentence to do. Further, he is trapped inside an injured body that does not work. He is serving the toughest of time. He asked for an accommodation in 1997 to allow changes in the facility so he could use the auditorium and hobby shop. Instead, he was told that CDOC staff were aware of the problem but were not willing to do anything about the situation in the short run.

The auditorium and hobby shop were two places where Claimant had the right to access, but was not able to do so because of the lack of accommodations for him. Claimant is entitled to the sum of $2,500.00 for the losses he incurred due to the denial of access to the auditorium and hobby shop

from 1990 to 2002.[1]

IT IS HEREBY ORDERED that the claim of Alejandro Valdez is granted as to denial of access to the auditorium and hobby shop, as he established by a preponderance of the evidence the criteria in each of the four questions; and

IT IS FURTHER ORDERED that Alejandro Valdez is awarded damages for the time period of 1990 to 2002 in the amount of $2,500.00 for the lack of access to the auditorium and hobby shop; and

IT IS FURTHER ORDERED that the remainder of Claimant's claim is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 12, 2005.**

SIGNED this 5th day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

---

[1] The Special Masters do not have jurisdiction to direct service of a sentence at a nursing home or transfer to a different facility. As a practical matter, CTCF may be better able now to handle his health needs than other facilities in CDOC. In addition, Claimant is limited by the statute of limitations as to how far back he may seek damages.

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of August, 2005 to the following:

Mr. Alejandro Valdez
#76532
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra