IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG - 9 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-030
Category III
Claimant: L.R. Moore, #47702
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 15, 2005. This hearing was held at the Colorado State Penitentiary (CSP) in Canon City, Colorado. Present were the following: L.R. Moore (Claimant) ; and Vincent Morscher, attorney for Defendants.

Claimant called the following witnesses at the hearing: Major Angel Medina; Cathie Holst; Lynn Erickson; Dennis Burbank; Sergeant Roberta Camper; and Claimant. Claimant offered into evidence Exhibit 1 which was accepted. Defendants presented the following witness: Cathie Holst. Defendants offered into evidence Exhibits A through D. All were admitted. Closing arguments were received from both sides. The claim then was taken under advisement.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or a remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant has filed his claim and requested that the Special Master award monetary damages and other relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>    1. Is the claimant a disabled individual who is a member of the class?
>    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provided that all claims assigned to Category III were to receive a hearing. The hearing on this claim lasted over four hours. It was almost impossible to keep Claimant focused on the four questions that had to be dealt with under the Order of November 23, 2004. Claimant repeatedly digressed into issues that had nothing to do with the ADA or Rehabilitation Act.

Claimant has spent most of the last thirty years incarcerated in state facilities in Colorado. In 1975, Claimant was stabbed in the back with a knife. As a result, he became a paraplegic. Since 1975, Claimant has been confined to a wheelchair. Although there was some evidence that Claimant may have some control over his lower extremities, Defendants stipulated that he met the criteria for mobility disability.

At the time Claimant was stabbed, correctional institutions in Colorado were under the jurisdiction of the Colorado Department of Institutions. At some point after his injury, Claimant was released from custody. He then returned to correctional custody in August, 1981. CDOC had been created as a state department by that point by the Colorado General Assembly. Claimant has been in CDOC custody since that date. He has been housed at a number of CDOC facilities in the state.

Claimant testified that he was housed at the Limon Correctional Facility (LCF) in 1993. This facility had just been constructed. Claimant indicated that a portion of the cement sidewalk had heaved and had created a barrier for inmates in wheelchairs. He and others were required to go

3

around this impediment on the grass, but that was forbidden by the then-warden at the facility. Claimant testified that he found it difficult to get to the chow hall because of this sidewalk problem, complicated by the warden's directive not to go onto the grass. He was able to obtain some help from other inmates in getting over this barrier. Sometimes, he and others would simply go on the grass.

Claimant was transferred to the Fremont Correctional Facility, San Carlos Correctional Facility, and then to the Arkansas Valley Correctional Facility (AVCF).[1] Claimant remained at AVCF until 2001, when he was transferred to CSP.

Over the years, Claimant has been convicted in over one hundred prison disciplinary proceedings brought under the Code of Penal Discipline (COPD). When specifically asked by the Special Master, Claimant indicated that he could not remember the exact number of convictions, but he agreed that there were over one hundred. The evidence presented by both sides indicated that Claimant is a management problem. Claimant does not want to be bound by the rules established for CDOC facilities.

While at AVCF, Claimant sent a "kite" to a supervisor asking for a new case manager.[2] Claimant testified that he had put in a rhetorical question to that supervisor. The Special Master asked what had been put into the kite, and Claimant stated that he had basically asked what he had to do to get a new case manager and whether he had to shoot his old case manager. This kite was treated as a threat, and Claimant was moved to CSP in 2001.

Since arriving at CSP, Claimant has continued to be a management problem. He has been convicted of various COPD violations. He admitted that he had ripped off a piece of metal welded to his wheelchair and then used it to bang on his cell door. He objected to being convicted of a COPD violation for damaging the wheelchair.

Claimant testified that he has always wanted to work in a facility library. He complained that he had not been able to obtain work as a librarian. He did acknowledge that he had not been denied any program since coming to CSP, although there are few programs at CSP due to its close custody requirements.

Claimant testified that he had been pulled out of his wheelchair by a correctional officer who did not believe that he was disabled. He was vague about the details of this incident, but did acknowledge that he had been convicted of a COPD violation for an altercation with that correctional

---

[1] The chronology of all facilities in which Claimant has been housed is not relevant to the case. The Special Master will set forth only those incidents that have bearing on the ultimate resolution of the claim.

[2] A kite is a written document from an inmate to prison officials requesting something. As an example, an inmate who desires non-emergency medical treatment would send a kite to the medical department requesting an appointment.

4

officer during the incident.

Claimant objected to his present wheelchair at CSP, but other testimony indicated that a new wheelchair has been received for him. He objected to shower facilities and shaving arrangements at CSP, but had no similar complaints concerning facilities he had been in prior to coming to CSP. Whatever complaints Claimant may have about CSP, he is the one who earned his way to the facility. Defendants' decision to place Claimant at CSP is one that is supported by uncontroverted evidence.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Defendants stipulated that Claimant is mobility disabled and was in CDOC custody on or before August 27, 2003. Claimant is clearly mobility disabled due to his injury in 1975.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** The answer to this question is no. Claimant's actions and management problems have precluded him from progressing to a lower security level facility. By his own testimony, it is clear that Claimant wants to set his own rules and have CDOC officials abide by those. No correctional system works that way, and the ADA and Rehabilitation Act do not require prison officials to make special rules for inmates who are management problems.

The one exception to this was the situation at LCF with the sidewalk. Claimant's testimony concerning this problem was believable and is accepted. Claimant, as well as other wheelchair bound inmates at that facility at that time, were qualified to participate in the normal daily program of eating at the chow hall. Claimant was not accommodated due to the sidewalk problem.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no, except for the incident at LCF. Claimant has received special attention because of his outrageous actions, such as ripping the metal piece from his wheelchair. He has only himself to blame for his present situation.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** With the exception of the incident at LCF, Claimant has not suffered any harm based upon any discrimination under the ADA and Rehabilitation Act. Although the incident at LCF was years ago, it had an impact on Claimant. That incident reflects exactly why the ADA and Rehabilitation Act were enacted. *See, e.g. Tennessee v. Lane*, 541 U.S. 509 (2004) (right to access to court house for those who are disabled). Claimant is entitled to compensation in the amount of $50.00.

IT IS HEREBY ORDERED that the claim of L.R. Moore is granted only to the extent that he was not accommodated while at the Limon Correctional Facility in 1993 when he was unable to

5

travel to the chow hall because of sidewalk heaving and is awarded $50.00 for that period of time; and

IT IS FURTHER ORDERED that the claim of L.R. Moore is denied in all other aspects, as the evidence established that conduct toward him has been the result of his own actions and not the result of any discrimination prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 15, 2005.**

SIGNED this 25th day of July, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 25th day of July, 2005 to the following:

Mr. L.R. Moore
#47702
CSP
P.O. Box 777
Canon City, CO 81215-0777

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. Vincent Morscher
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra