IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG - 9 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-019
Category III
Claimant: Robert E. Hamilton, Jr., #118006
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on July 22, 2005. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Robert E. Hamilton, Jr. (Claimant); and Kathleen Spalding, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Nona O'Malley. All documentation previously submitted by both sides was accepted. Defendants offered Exhibit A, and it was accepted into evidence. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Special Master has reviewed all exhibits and evaluated all the testimony given by both witnesses. The following are the facts necessary for resolution of this claim.

Claimant came into the custody of CDOC on July 7, 2003. He had been incarcerated at the Adams County Jail before his transfer to CDOC. Claimant testified that he had been seriously injured in the criminal episode that led to his incarceration.[1] As the result of his injuries, Claimant lost his right leg at the hip. All that remains is the hip socket. Claimant also had a colostomy due to injuries that affected his abdomen.

Claimant came into CDOC custody at the Denver Regional Diagnostic Center (DRDC). This facility is the intake program for all CDOC inmates. Claimant received testing and evaluation while at DRDC. He then was placed at CTCF. Although not specifically stated by any witness, his placement at CTCF was the result of his medical issues. CTCF has an infirmary for inmates who have health problems that cannot be handled through regular medical clinics in CDOC institutions.

When Claimant initially arrived at CTCF, he was placed in a single cell in Cell House 3. This placement was the result of the colostomy bag that Claimant had to use because of his injuries. He was transferred for one night to Cell House 7. He was using a wheelchair at that time, and he could

---

[1] The Special Master would not allow Claimant to discuss the facts of the criminal episode that led to his conviction. Such information is irrelevant to the claim process.

3

not get the wheelchair into the double cell. The next day, Claimant was transferred back to Cell House 3 due to the colostomy bag.

Claimant then transferred back to DRDC. He underwent multiple surgeries. He had complications as the result of the surgeries, including infections. The colostomy was reversed during the course of this treatment. He finally healed enough to return to CTCF.

Claimant began the process of learning to live with one leg. He had used a wheelchair but decided that he must use his crutches in order to improve his life. He enrolled in a GED education program and received his certificate after successfully completing the tests.

Claimant filed his claim on April 9, 2004. He testified that he was depressed at the time, as he had just completed all surgeries and was trying to adapt to prison life. He was worried that he would not be able to find a prison job or program. He felt at the time that he was being singled out as disabled.

The testimony of Claimant reflected that much had changed since he filed his claim. He had completed the educational program and received his GED. He obtained work as a porter, although he had to do this job from a wheelchair for a period of time. He then found a job working in the tab plant. This is the factory where tabs are made for license plates. Claimant lost this job when he received a write up for an infraction. Claimant did not discuss what had occurred, but accepted responsibility for it. Claimant then found the job that continues to the present time. He was hired to work in the K-9 program where inmates provide obedience training to dogs. Claimant's case manager, Nona O'Malley, testified that his work in the K-9 program has been outstanding. Claimant testified that he enjoyed the work.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this questions is yes. Defendants stipulated that Claimant is a member of the class and has a mobility disability.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** The answer to this question is yes. Claimant had no impediments, such as disciplinary convictions, that would prevent him from applying for or being accepted into a program. Claimant availed himself of the education program to obtain his GED.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has been able to enroll in programs and obtain work. His medical care has been extensive due to the injuries that he had when he came into CDOC custody.

Claimant related the incident of the one night in Cell House 7 when he was placed into a double cell and his wheelchair would not fit through the door of the cell. He was moved back to Cell House 3 the next day. The incident was unfortunate, but reflected a mistake. That mistake was rectified the next day.

There was no evidence presented that a discriminatory act under the ADA or Rehabilitation Act had taken place. On the contrary, the testimony of Claimant reflected that he has had full opportunities equal to others who do not have a mobility disability.[2]

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Defendants did not violate the ADA or Rehabilitation Act. As a result, there was no harm that Claimant suffered that is actionable as to this claim.

IT IS HEREBY ORDERED that the claim of Robert E. Hamilton, Jr. is denied, as he has not established by a preponderance of the evidence each of the four criteria set forth in the four questions.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 29, 2005.**

SIGNED this 1st day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

---

[2] Claimant is an articulate, bright young man. He appears focused on the future. Hopefully, he will be able to receive and complete parole, never looking back and never returning to CDOC.

## CERTIFICATE OF MAILING

    I hereby certify that I have mailed a copy of the foregoing Order of Special Master this /s/ day of August, 2005 to the following:

Mr. Robert E. Hamilton, Jr.
#118006
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Ms. Kathleen Spalding
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

            _____
            Margie Dykstra