IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2005 AUG -9   AM 11: 22

GREGORY C. LANGHAM
CLERK

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

BY_____DEP. CLK

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 03-087
Category III
Claimant: Duncan Leach, #76849
Address of Claimant: c/o Earl Moyer, Attorney, 1401 Saulsbury Street, #204, Lakewood, Colorado 80214

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on Tuesday, June 7, 2005 at 9:00a.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Due to the length of the testimony and the number of witnesses, the hearing was continued to Monday, July 25, 2005 at which time the hearing was completed.

Present were the following: Duncan F. Leach[1], Claimant by telephone; H. Earl Moyer, Esq., attorney for Claimant, James X. Quinn, Esq. from the Office of the Attorney General, for Defendants; Timothy A. Bennett, Fire Marshall Safety Office, Fremont Correctional Facility, witness for Claimant under the rule for cross-examination; Steven R. Snowden, Ph.D., ATEP Director, Texas Christian University, witness for Claimant, by telephone; Cary Shames, D.O., Colorado Department of Corrections chief medical officer, witness for Defendants, by telephone; Cathie Holst, Colorado Department of Corrections ADA Inmate Coordinator, witness for Defendants, by telephone; Daryl Vigil, Colorado Department of Corrections Classification Supervisor, witness for Defendants, by telephone.

_____

[1] Claimant is presently incarcerated at Texas Correctional Facility.

Testimony was received from the following witnesses: Claimant, Steven Snowden, Timothy Bennett, Cary Shames, Cathie Holst and Daryl Vigil. An Appendix of Exhibits is attached to this Order setting forth all of the documents presented to the Special Master for consideration. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.      Claimant Duncan Leach was in the custody of the Colorado Department of Corrections (CDOC) from 1989 to 1998.  He was housed at the Colorado Territorial Correctional Facility (CTCF) from February of 1989 to approximately 1991.  From 1992 through 1998, he was generally housed at the Freemont Correctional Facility (FCF).

2.      Claimant suffers from cerebral palsy.  He was also diagnosed with scoliosis prior to being under CDOC jurisdiction.

3.      At the time Claimant was placed in the custody of the CDOC, he walked using Canadian crutches[2] but did not use a wheelchair.

4.      While in the custody of the CDOC, his medical condition became progressively worse.  Shortly after entering the custody of the CDOC, he began using a wheelchair that was provided to him by the facility.  Although he continued to use his lower extremities to ambulate to some extent with the help of crutches, the wheelchair provided his primary means of mobility.

5.      In November of 1989, a nurse at the CDOC noted Claimant's need for an inmate helper.  The purpose of the inmate helper, among other things, was to push Claimant's wheelchair.  Claimant testified that he was never provided with an inmate helper.  Cathie Holst, CDOC AIC, testified for Defendants that while she was working as a librarian at the FCF law library, she frequently observed Claimant being brought to the law library by another inmate.  She was unsure whether the inmate was assigned to Claimant as a pusher or was simply a volunteer.

6.      In August of 1995, Claimant was diagnosed with bilateral spondylolysis at L5.  Claimant was diagnosed with a herniated disk in July of 1996.

7.      Leach's claim asserts that maneuvering his wheelchair up and down ramps and opening large heavy doors without the assistance of an inmate helper caused him to hyperextend his back, predisposing him to injury.  He states that over time, this repetitive stress on his back was the proximate cause of his scoliosis, spondylolysis and herniated disk.  Ultimately, in July of 1997, Claimant underwent a L5 – S1 interbody fusion.  In support of his medical claim, Claimant presented the testimony of Steven Snowden, a clinical associate professor at Texas Christian University with a Ph.D. in physical education and biomechanics.  The only testimony from a medical doctor was presented by Claimant through cross-examination of Cary Shames, D.O., the chief medical officer

---

[2] The testimony indicated that a Canadian crutch is a straight crutch which has a bracelet of sorts around the top part of the crutch that wraps around the wrist.  A hand grab protrudes perpendicular to the rest of the crutch and is seated just below the bracelet cuff enabling the user to use his arms and hands to walk with the crutch or crutches.

for the CDOC. Dr. Shames testified that in his opinion, Claimant's spondylolysis and herniated disk would not have been caused by physical stresses resulting from Claimant's use of a wheelchair. Dr. Shames also noted that Claimant had been diagnosed with scoliosis long before entering the CDOC.

8.      Leach also claims that the lack of an inmate helper prevented him from accessing the gymnasium because the gymnasium doors were difficult to open and because the route to the gymnasium was rough and difficult to traverse in a wheelchair.

9.      In addition to his claims based on failure to provide an inmate helper, Claimant asserts the following discrimination based upon his disability:

a.      For several years, the FCF had only one wheelchair accessible table in the cafeteria. Claimant contends that he missed approximately one meal every day because there was no room available at the one accessible table. Claimant states that he personally requested that another table be made available, but no action was taken on his request. Claimant also asserts that after a new cafeteria with more wheelchair accessible tables was built, the buffet cart for salads was typically placed in an area that prevented him from getting to the wheelchair accessible tables.

b.      Claimant was unable to obtain work at tag and tab plants at FCF because the work locations were not wheelchair accessible. Claimant also asserts that he had a job in the kitchen wrapping plastic silverware but was forced to quit because the inmate bathroom in the kitchen area did not have grab bars and was smaller than a handicapped accessible bathroom.

c.      Finally, Leach contends that the shower at the FCF did not have grab bars and did not have a seat.

## CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the

average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that throughout the time that he was in the custody of the Department of Corrections, Claimant was a disabled individual. Claimant had and continues to have a permanent physical mobility impairment that substantially limits the major life activities of walking, working, and perhaps performing manual tasks. The Special Master further finds and concludes that Claimant is a member of the plaintiff class.

3.    The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. The Defendants have suggested that Claimant was not qualified or eligible to participate in some of the programs offered by the CDOC because of his disciplinary record. However, no evidence was presented as to how or to what extent Claimant was disqualified from participating in programs or receiving services as a result of his disciplinary problems. Consequently, as to those programs, benefits and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

4.    In order to establish discrimination in the context of the Remedial Plan, Leach must demonstrate that he requested accommodation for his disability and that reasonable accommodation was denied. The Special Master finds and concludes that Leach has sustained his burden of establishing by a preponderance of the evidence that (a) he requested the CDOC to assign an inmate assistant to push his wheelchair; (b) medical personnel at the CDOC agreed that Claimant should be provided with an inmate assistant; and (c) the CDOC never made such an assignment. The evidence presented by Leach supports his contention that the lack of an inmate assistant prevented him for accessing certain areas of the FCF, including some areas where he might have been able to obtain jobs. The evidence also establishes that without the assistance of an inmate

helper, Leach's utilization of his wheelchair was difficult, exhausting and sometimes painful.

Ms. Holst testified that on occasion, she saw an inmate assisting Leach in utilizing his wheelchair in the law library. There is no indication whether the inmate assisting him was doing so voluntarily at Claimant's request or was assigned by the CDOC. In any event, Ms. Holst's testimony is insufficient to rebut Claimant's testimony that he was never assigned an inmate assistant by the Department of Corrections. There is no indication in any of the CDOC records that such an inmate in fact was assigned.

5.    The Special Master finds and concludes that Leach has failed to sustain his burden of proving that the lack of an inmate assistant was a causative factor of his scoliosis, spondylolysis or herniated disk. The Special Master also finds and concludes that Claimant has not sustained his burden of proving by a preponderance of the evidence that the lack of an inmate assistant aggravated any of these medical conditions. During the hearing, Leach attempted to assert that his herniated disk was caused by falls in his cell due to the lack of grab bars. However, this contention was not presented in the claim[3] filed by Leach. The Special Master ruled on the record that Claimant's attempt to change his theory to one which is inconsistent with the theory presented in his claim was untimely.

6.    The Special Master rejects Claimant's claim that he was not able to access the cafeteria because of a lack of wheelchair accessible tables and/or impediments in the cafeteria area. The evidence establishes that the facility made accommodation for the lack of wheelchair accessible tables by allowing Claimant to have meals in his cell. Additionally, Claimant testified that he did not request an accommodation that would allow him to remain in the cafeteria until such time as space was available at the wheelchair accessible table.

7.    The Special Master also finds and concludes that Leach has failed to establish his claim of discrimination based upon the lack of a wheelchair accessible bathroom in the kitchen where he worked. There is no evidence in the record as to what reasonable accommodation was available. Although Claimant testified that he requested to be allowed to use the staff bathroom, there is insufficient evidence to establish that the staff bathroom was wheelchair accessible or that it would have afforded a reasonable accommodation.

8.    There is evidence in the record that Leach requested that grab bars and a seat be installed in the shower and that this accommodation was declined. However, there is no evidence in the record indicating that Leach suffered any injury or damage as a result of this lack of accommodation.

9.    As noted in paragraph 4 above, Leach has proved by a preponderance of the evidence that he was denied access to facilities and jobs as a result of his disability and incurred pain and suffering as a result of the CDOC's failure to accommodate his

---

[3] The Special Master notes that a Supplemental Claim was not filed.

mobility disability by assigning him an inmate assistant. There is no showing of monetary damages nor is there any medical testimony supportive of Claimant's testimony regarding the pain and fatigue he suffered by having to operate his wheelchair without the assistance of an assigned pusher. The Special Master finds and concludes that evidentiary record is insufficient to support an award of substantial monetary damages. Accordingly, the Special Master finds and concludes that Leach should be awarded the sum of $500.00 to compensate him for the inconvenience, pain and inability to access programs and facilities as a result of not having assigned inmate assistance. While non-economic loss is not recoverable under the Rehabilitation Act or the ADA absent proof of intentional discrimination (*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999)), the issue of intentional discrimination was resolved through the settlement of the litigation and the creation of the Remedial Plan. In any event, the evidentiary record contains a sufficient showing of intent to sustain a claim for non-monetary loss under the Rehabilitation Act and the ADA.

## IV. ORDER

Bassed upon the above Findings of Fact and Conclusions of Law, IT IS ORDERED that judgment be entered on this claim in favor of Claimant and against Defendants in the sum of $500.00.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 16, 2005** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 1st day of August, 2005.

Bruce D. Pringle,
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this *21* day of August, 2005 to the following:

Mr. H. Earl Moyer
Attorney at Law
1401 Saulsbury, #204
Lakewood, CO 80214

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Margie Dykstra

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-087
Category III
Claimant: Duncan Leach
Address of Claimant: c/o Earl Moyer, Attorney, 1401 Saulsbury Street, #204, Lakewood, Colorado 80214

---

## APPENDIX OF EXHIBITS

---

The following is a list of Exhibits[1] ACCEPTED into the record in the above referenced claim:

EXHIBIT 1A: 4 pages:    State of Colorado – Department of Corrections Medical
                        History for Duncan Leach

EXHIBIT 1B: 1 page:     Colorado Department of Corrections/Ambulatory Health
                        Record for Duncan Leach

EXHIBIT 1C: 1 page:     Colorado Department of Corrections/Ambulatory Health
                        Record for Duncan Leach

EXHIBIT 1D: 1 page:     Colorado Department of Corrections X-Ray
                        Request/Report for Duncan Leach

EXHIBIT 1E: 1 page:     Colorado Department of Corrections/Ambulatory Health
                        Record for Duncan Leach

---

[1] At the direction of the Special Master, all Exhibits are numbered sequentially regardless of which party introduced the exhibits.

EXHIBIT 1F: 1 page:      Request for Consultation for Duncan F. Leach

EXHIBIT 1G: 1 page:      Department of Radiology, St. Thomas More Hospital
                         Report for Duncan Leach

EXHIBIT 1I:  2 pages:    Colorado Department of Corrections/Ambulatory Health
                         Record for Duncan Leach

EXHIBIT 1J:  1 page:     Colorado Department of Corrections/Ambulatory Health
                         Record for Duncan Leach

EXHIBIT 1K: 1 page:      Colorado Department of Corrections/Ambulatory Health
                         Record for Duncan Leach

EXHIBIT 1L: 1 page:      Colorado Department of Corrections/Ambulatory Health
                         Record for Duncan Leach

EXHIBIT 1M:2 pages:      Parkview Episcopal Medical Center Operative Report for
                         Duncan Leach

EXHIBIT 1N: 1 page:      Parkview Episcopal Medical Center Department of
                         Corrections Routine Transfer Order for Duncan Leach to
                         C.T.C.F. Infirmary

EXHIBIT 1O[2]:1 page:    Colorado Department of Corrections/Ambulatory Health
                         Record for Duncan Leach

EXHIBIT 2:    4 pages:   Spalding Rehabilitation Hospital Initial
                         Evaluation/Discharge Summary for Duncan Leach

EXHIBIT 3:    4 pages:   Spalding Rehabilitation Hospital Occupational Therapy
                         Initial/Discharge Summary for Duncan Leach

EXHIBIT 4:    125 pages: Department of Corrections Fremont Correctional Facility
                         ADA 1992 Survey

EXHIBIT 6:    3 pages:   Freemont Correctional Facility Table 1 Safety Issues

EXHIBIT 7:    14 pages:  Freemont Correctional Facility Table 2 Access Issues

EXHIBIT 8:    1 page:    Memorandum to Larry Embry from Duncan Leach, dated
                         April 12, 1995

EXHIBIT 12: 29 pages:    Deposition of Duncan Leach, November 19, 1999

---

[2] This is Exhibit 1O as in "Oscar" and not Exhibit 10.

EXHIBIT 13:  9 pages:    Colorado Department of Corrections Office of Offender Services, Memorandum to Jess Dance from Christine Moschetti, dated January 20, 2005

EXHIBIT 14:  3 pages:    Curriculum Vitae of Cary B. Shames, D.O., Chief Medical Officer, Colorado Department of Corrections

EXHIBIT 15[3]: 1 page:    Colorado Department of Corrections/Ambulatory Health Record for Duncan Leach

EXHIBIT 16[4]: 1 page:    Memorandum to Timothy Bennett, from Duncan Leach, dated January 18, 1995

---

The following is a list of Exhibits offered into evidence but NOT ACCEPTED into the record in the above referenced claim:

EXHIBIT 1H[5]: 1 page:    Colorado Department of Corrections/Ambulatory Health Record for Duncan Leach

---

The following is a list of Exhibits provided to the Special Master prior to the hearing, discussed by several witnesses but not offered into evidence:

EXHIBIT 5[6]:  1 page:    TCU Department of Kinesiology letter from Steven Snowden

---

The following is a list of Exhibits provided to the Special Master prior to the hearing, not discussed and not offered into evidence on the record for the above referenced claim:

EXHIBIT 9:   2 pages:    Letter to Paula Greison, Class Counsel, from Duncan Leach, dated July 25, 1995

EXHIBIT 10:  1 page:    Letter to Paula Greison, Class Counsel, from Duncan Leach, dated March 12, 1996

---

[3] Introduced by Defendants.

[4] Introduced by Defendants.

[5] Introduced by Claimant but objected to by Defendants due to a previous ruling of the Special Master that testimony concerning a fall was beyond the scope of the claim. Defendants' Objection to the document was SUSTAINED.

[6] The staff attorney for the Special Master does not have a record of this Exhibit being offered and accepted into the record and counsel for both the Claimant and the Defendants are unsure of whether or not this Exhibit was properly offered into evidence. Only a complete review of the 12 hours of testimony will clarify the confusion.

- 3 -

EXHIBIT 11:  3 pages:        Letter to Paula Greison, Class Counsel, from Duncan
                             Leach, dated March 22, 1996

---

     The following is a list of stray documents which were mingled into the file for the Court and do not appear to be a part of any exhibit introduced by either party[7] or provided to the Special Master prior to the hearing and are not part of the record in the above referenced claim:

ERR 1:        1 page:        Letter to Dr. McGarry, M.D., Steve Quackenbush, P.A.
                             from Duncan Leach, dated April 8, 1992

ERR 2:        1 page:        Colorado Department of Corrections/Ambulatory Health
                             Record for Duncan Leach

---

[7] Counsel for both parties agree that these documents were not introduced into evidence and are not part of the record.  To the extent that they were mingled in the file, the staff attorney for the Special Master has designated them as "ERRATA" and marked them accordingly.