IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-061
Category III
Claimant: David Montoya, #55220
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211-2017

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 25, 2005. This hearing was held at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Present were the following: David Montoya (Claimant); and Jane Christman, attorney for Defendants.

Claimant testified in his own behalf and offered Exhibit 1 into evidence. It was admitted. Defendants presented the following witness: Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibit A which was admitted. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. <u>Permanent Hearing Impairments</u>
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. <u>Permanent Vision Impairment</u>
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. <u>Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic</u>
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony of the witnesses, exhibits and documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant came into CDOC initially in 1986 and was released in 1991. He returned to CDOC custody in 1993 and has remained incarcerated since that date. He has been incarcerated at several CDOC institutions over the years.

Claimant was diagnosed with diabetes in 1997. He has controlled his diet since that diagnosis with shots of insulin. Claimant has had several other health issues that have arisen, and he believes that some or all are related to his diabetes. He has had lazar surgery on his eyes because of retinal hemorrhages that developed. Claimant indicated that he believed that he had early signs of glaucoma.

Claimant has lost his teeth. He indicated that a CDOC dentist recommended that his teeth be pulled, but he never received appropriate dentures. He testified that he received the dentures of another inmate, but has been without dentures for some period of time. He now takes Zantac for his stomach problems which have arisen since the teeth were pulled.

His legs have started to develop a neuropathy as the result of the diabetes. His legs swell and become painful. He requested various pain medications but has not been able to obtain anything except over the counter medications that would be available through the Canteen. Claimant described all of the medications that he is taking and indicated that he has been advised that these will be necessary for the rest of his life.

Claimant described two incidents when he arrived at different institutions and he was denied his insulin. He indicated that no one would believe that he was diabetic and that he went several days without his medicine. One incident occurred when he was transferred to the Fort Lyon Correctional Facility (FLCF). Dr. Neufeld testified that Claimant's medical records reflected that he had not received his insulin for approximately one week when he first arrived. A problem arose with the transport of his medical records.

On cross-examination, Claimant testified that he had a job at BVCF. He was able to walk and go to the yard to exercise. The yard is over one hundred and fifty yards from his cell house. He admitted that he has refused insulin on some occasions. He stated that his eyes are 20/20 for acuity when he wears his glasses. Claimant expressed concern about the quality of medical care that he has received at CDOC facilities.

In his testimony, Dr. Neufeld indicated that he had reviewed all medical records of Claimant. There is no question that he has diabetes. There are other problems that have evolved as a result of the diabetes, include mild vascular breakdown and some neuropathy. Dr. Neufeld also verified that the incident at Fort Lyon did take place in 2003 with insulin not being given to Claimant for several days. The lack of insulin led to medical problems at that time.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** This question cannot be answered with a simple yes or no. Each of the claimed disabilities will need to be examined separately.

The remaining claims in this case at the time of approval of the Settlement Agreement were under the ADA and Rehabilitation Act. All claims under the Eighth Amendment were dismissed by Judge Nottingham. *Montez v. Romer*, 32 F.Supp.2d 1235 (D.Colo. 1999). Examination of all claims must be limited to the ADA and Rehabilitation Act.

The United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Much of Claimant's cases involves concerns about the quality of medical care that he has received and is receiving. The *Fitzgerald* case, when coupled with the order of Judges Nottingham and Kane of November 23, 2004, means that the Special Masters do not have jurisdiction over Eighth Amendment claims. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care may rise to the level of an Eighth Amendment claim, but not under the ADA and Rehabilitation Act.

**Vision**: The Settlement Agreement controls the jurisdiction of the Special Masters. There have been claims filed by other individuals that stated valid ADA allegations, but for conditions not covered by the specific wording of the Settlement Agreement. As an example, a number of claimants have filed on shoulder problems and have alleged discrimination in jobs because of their conditions. A shoulder or upper extremity condition is not covered by the Settlement Agreement. In such a case, an individual with a shoulder condition would have the right to bring a separate lawsuit under the ADA and Rehabilitation Act. That individual would not have the right to pursue a claim in this case.

As to vision disability, the Settlement Agreement applies to "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." Claimant's own testimony establishes that he does not meet this criteria. His vision is correctable with glasses.

Claimant has health issues with his eyes. He is legitimately concerned about the long-range prognosis for his eyes, as his diabetes is starting to affect his body. Under the *specific* language of the Settlement Agreement, Claimant does not fall into the vision category. As a result, his vision claim must be dismissed.

**Mobility:** Mobility disability is defined as inmates who use wheelchairs full or part-time or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The application of this definition was as of August 27, 2003, the date the class was set.

Claimant's own testimony established that he was not using a wheelchair full or part-time

5

for a permanent disability on August 27, 2003. He also has not established that he has a lower extremity condition that affects a major life activity. Claimant is able to walk and climb stairs. He has pain in his legs but has continued to carry on life activities. Under the *specific* definitions of the Settlement Agreement, Claimant has not proven that he has a mobility disability.

**Diabetes:** There is no question that Claimant is diabetic. The question is whether he falls under the provisions of the Settlement Agreement.

The definition related to diabetes is that "[i]nmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." This definition is not clear and the term "require accessible housing" may mean several things. The Special Master finds that the definition means that a diabetic inmate may have a severe enough condition to require placement in a facility with specific medical programs. For example, an individual who is insulin dependent could not be placed at a facility that did not have the ability to provide insulin once or twice per day by shot.

The Special Master further finds that "accessible housing" also relates to basic programs that might be needed by a diabetic inmate. Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich. 1996). A diabetic who requires special bedding would have to be placed at a facility that had such bedding.

The Special Master determines that Claimant has established that he is diabetic. The evidence presented by both sides establishes that he falls within the provisions of the Settlement Agreement and the claim may proceed as to diabetes only.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** The answer to this questions is yes. Nothing has been presented that would indicate that Claimant was disqualified for any other reason.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no, with one major exception. Generally speaking, there is no evidence that Claimant was discriminated against by CDOC because of his diabetes.

The exception relates to his transfer to FLCF and the lack of insulin for seven days.[1] FLCF is a facility in southeastern Colorado where inmates with special health needs are placed. The transfer of Claimant to this facility would have been premised upon a special health need. Diabetes and related issues would fall into the category of conditions that would warrant a transfer to that

---

[1] Claimant testified that there was another time when he did not receive his insulin. The details of this incident were vague and were not corroborated by his medical records. The Special Master does not find that this incident was established by a preponderance of the evidence.

facility.

For reasons that are inexplicable, Claimant's medical records did not arrive at FLCF with him. As a result, medical staff there were unwilling to accept his statements that he was dependent upon insulin. He did not receive his shots and became ill. Finally, he received his insulin. Claimant testified that he was fearful for his life at that time, while trying to get insulin. His fear was legitimate and not without a foundation. It is not inconceivable that Claimant could have died waiting for someone to give him insulin.

Programs for inmates may be very basic, including medical care. The program established for Claimant prior to his transfer to FLCF required insulin by shot. That program was disrupted by the actions of various employees at CDOC. There is nothing in the documents submitted for this hearing that indicated that Claimant could do without insulin. It is true that Claimant had refused insulin on in the past, but that predated the transfer to FLCF. In fact, the last refusal was on June 20, 2002. Such refusals cannot be used now for justification for the lack of care provided in 2003.

A non-diabetic inmate at FLCF did not need to worry about insulin shots. Claimant did, and the only way those shots could be provided was through CDOC staff. Claimant had no ability to seek medical care on his own. His testimony that he told staff at FLCF that he was diabetic and dependent on insulin is believable and accepted as true.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** The Settlement Agreement provides in Category III for "non-nominal emotional injuries (such as the fear of death)." Claimant has not established that he has suffered any physical injury as the result of not receiving insulin. He did suffer emotional injury, including fear of death. Claimant is entitled to receive $750.00 for his emotional injury.

IT IS HEREBY ORDERED that the claim of David Montoya is granted to the extent that he has established a non-nominal emotional injury because of the lack of insulin for a period of time at FLCF and he is awarded $750.00 as damages; and

IT IS FURTHER ORDERED that the claim of David Montoya is denied in all other aspects and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 29, 2005.**

SIGNED this _1st_ day of August, 2005.

7

BY THE COURT:

Richard M. Borchers
Special Master

8

## CERTIFICATE OF MAILING

   I hereby certify that I have mailed a copy of the foregoing Order of Special Master this /s/ day of August, 2005 to the following:

Mr. David Montoya
#55220
BVCF
P.O. Box 2017
Buena Vista, CO 81211-2017

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____