IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER

AUG - 9 2005

GREGORY　　　　HAM
　　　　　　　　CLERK

---

Claim Number 03-115
Category III
Claimant: Michael McCann, #112458
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 29, 2005. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Michael McCann (Claimant); and Kathleen Spalding, attorney for Defendants.

Testimony was received from the following witnesses: Claimant; Richard LaLonde; and Dr. Orville Neufeld, D.O. All documentation previously submitted by both sides was accepted. No exhibits were offered at the hearing. The Special Master also accepted an offer of proof as to what Cynthia Hahn, a friend of Claimant, would testify about if called at the hearing. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to

2

"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>    1. Is the claimant a disabled individual who is a member of the class?
>    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant lived in the Colorado Springs' area for many years. He was by trade a tree trimmer, having been in the business for over twenty years. His work was very physical. He would climb trees on a daily basis. He also had a part-time firewood business.

Prior to being incarcerated, Claimant suffered a back injury. The disk between L4-5 in his back had been obliterated. This was a very painful condition and made it difficult for him to do his work as a tree trimmer. Claimant also had additional health problems, having been diagnosed with heart problems and Hepatitis C.

Claimant was convicted of a felony.[1] He was sentenced to serve a term of imprisonment in the Colorado Department of Corrections (CDOC). He was turned over the CDOC custody on March 7, 2002. He was placed at the Denver Regional Diagnostic Center (DRDC) for testing and

---

[1] The exact nature of Claimant's conviction is unknown and is irrelevant for purposes of resolution of his claim.

evaluation.

Claimant's criminal defense attorney sent a letter to DRDC on March 27, 2002. In that letter, counsel indicated that Claimant had significant health issues that needed to be dealt with immediately. Counsel noted the following problems: a torn micro valve in the heart; a severe disk problem in the back; and psychological problems, particularly depression.

After a couple of weeks at DRDC, Claimant was transferred to CTCF. He has been at that facility since late March, 2002. On April 5, 2002, Claimant suffered a stroke. He was placed in the infirmary at CTCF for three days. He then was transferred to a hospital in Pueblo. A CAT scan was taken and verified that he had suffered a stroke. After a few days, Claimant was transferred back to the infirmary at CTCF. A clot was found on the CAT scan, with a second stroke then worsening Claimant's condition.

As a result of the strokes, Claimant has suffered physical damage to his body. Claimant believes that the delay in taking him to the hospital worsened his condition and led to the problems that he is now experiencing. Claimant testified that he was advised that he would not be able to walk, but he has been able to do so. He still uses a wheelchair at times. He has problems with his balance. The strokes have affected the way that he is able to walk.

Claimant also has begun to suffer from arthritis. This causes significant pain in his back. Claimant testified that he has had great difficulty in finding a job within the institution. He finally found work in the Tab Plant. This program makes the tabs for automobile license plates. Claimant has a job stuffing envelopes. This is a job where he is able to sit and work. He believes that the job was offered to him just before the hearing in order to make the Defendants look good.

During the course of his presentation, Claimant volunteered that he had filed a lawsuit in the Fremont County District Court concerning the delays and negligence in medical treatment in April, 2002. He has been represented by counsel in that proceeding, although he claimed that he had written to the state court asking for the case to be dismissed.[2] The case number and exact heading are unknown.

Claimant believed that the lack of jobs available to him was reflective of discrimination by CDOC and its staff. He has enrolled in many educational classes at CTCF and has completed those classes. He also testified that he did not believe that he was receiving appropriate medical care, as his heart was not being monitored. The same was true for his liver.

On cross-examination, Claimant responded that he used walking sticks to assist him in

---

[2] Claimant is advised that he should consult with counsel before he does anything with his state court lawsuit. The claim process cannot deal with medical malpractice issues, which forms the basis for the state action. Dismissal of the state court action may lead to the lack of any court to hear his case concerning medical negligence.

walking at the facility. He walks around a track in the yard for exercise. He cannot use free weights because of the loss of muscular control on the left side of his body.

On cross-examination, Claimant acknowledged that there is a detainer on him from the State of California. The detainer, plus disciplinary convictions, elevated his custody level and made some jobs unavailable to him. He further acknowledged that he cannot work around machines because of his physical limitations. He also indicated that he has been placed on a chronic care medical list because of his medical conditions.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. He had reviewed all of Claimant's medical records. There is no question that Claimant suffered a stroke in April, 2002. He has made a good recovery. There is information in the records from the specialists that surgery on his heart valve may not be helpful. Further, a biopsy is not needed at this time to determine that condition of the liver.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant checked only the mobility impairment on his claim form. This impairment requires a showing of one of two things: (1) inmates must use a wheelchair full or part-time on a permanent basis; or (2) "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

There is nothing in the Settlement Agreement that details how a lower extremity condition must arise. In this case, the evidence reflects that the strokes caused permanent problems for Claimant on his left side. The evidence does substantiate that Claimant has a mobility disability condition. This question will be answered yes.

The Special Master would note that the heart valve problem and Hepatitis C are not covered by the Settlement Agreement. This will not be discussed, as they are beyond the jurisdiction of the Special Master.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** The answer to this question is a qualified yes. The testimony from Claimant and Mr. LaLonde reflected that Claimant has an outstanding detainer and has had disciplinary convictions. Some work positions were not available to him due to his elevated custody level. On the other hand, he was able to undertake several educational classes. For purposes of this order, this question will be deemed established by Claimant.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**

The answer to this question is no. Claimant's concern is the quality of care that he received in 2002 when he was placed into CDOC custody. He has commenced litigation in the Fremont County District Court concerning this care. His claims concerning the negligence that occurred in 2002 should be resolved through that case.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. In addition, all Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement.

Claimant has not established that he was subjected to discriminatory conduct by CDOC or its staff. He suffered strokes in April, 2002. Those led to the disability that he is now experiencing. The care he received prior to, during, and after the strokes may not have been proper. The Special Master will make no findings concerning that care. That issue will need to be resolved by the state court. Claimant has continued to receive care and was able to enroll in and complete several educational classes. In light of his custody rating based on the detainer and disciplinary convictions, it is clear that he was not able to obtain certain jobs, including the Tab Plant. At first, he was only able to work at the Tab Plant after six months without any disciplinary problems.

The ADA and Rehabilitation Act are discrimination statutes. Claimant has not established that he was subjected to any conduct prohibited by those statutes. His medical care claim will need to be resolved by the state court in light of the *Fitzgerald* decision.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
In light of the Claimant's inability to prove discrimination under the ADA and Rehabilitation Act, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Michael McCann is denied, as he has not established by a preponderance of the evidence each of the criteria of the four questions; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 5, 2005.**

SIGNED this 5th day of August, 2005.

BY THE COURT:

_____
Richard M. Borchers
Special Master

Claim 03-115

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of August, 2005 to the following:

Mr. Michael McCann
#112458
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_Marjie Dykstra_