UNITED STATES
DISTRICT COURT: FOR ~~_____~~, COLORADO
Claim No. 03-030

J Montez, et al
Plaintiff,

v.

Gov. Bill Owens, et al.

Defendant.

Appearing Pro Se L R Moore 47702
Box 777 CSP E3U
Canon 81215-0777
No Phone

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
AUG 15 2005
GREGORY C. LANGHAM
CLERK

▲COURT USE ONLY▲

Case No. 92 N 870

Div./Ct.Rm. LRC

Motion to Suppress Testimony for Perjury

Claimant moves this Honorable Court to polish away the stain of perjury that Defense witnesses have besmirched it. He respectfully requests suppression, ~~but~~ not erasure, of their testimony immediately before and during his 15 July 2005 evidenciary hearing. Such often premeditated perjury mocks the purpose of such hearings as well as this court's honor.

History

Claimant had complained of denial of both Records and return of ~~his~~ items seized 22 May 05. Letter included letters detailing his complete claims, including what documentation he had copied. Being lengthy, he had to prove it copied by

perjury — 2 —

Holst/Jason Rules — i.e., in pieces over time. And claims were ongoing as new information or new abuses occurred. Due to expectation of shakedown, he kept this ready to mail, complete with taped on postage withdrawal form, all completed and addressed, but unsealed in accordance with AR 300-27 Mail. Thus he would turn it in at start of shakedown as it complete rather than suffer delay of months as occurred in previous full-scale shakedown, as he did not have months before 15 July hearing.

He turned it in. Staff (c/o Mendez, et al) declared it, and all other items currently being used (versus not being used but in Legal Box or TV shelf Files) to be "lousy". This included ALL canteen except pens he secreted as he knew he would need these, that he could get a bit of paper and a few envelopes from Law Library but Ø pens. That he could use postal withdrawals instead of stamps — but all required hodding pens. He succeeded keeping pens, but Ø else in desk and coat hook adjacent areas.

Perjury —3—

Everything on desk, on desk seat (being paraplegic, this used as a shelf for letters) under desk, on coat shelf and even in shower (shampoo and conditioner; one new, one used of each — paras have in cell showers with benches, thus keep them there) were seized as "lousy". This claim was false, made solely to harass by destroying seized items. He was charged $5.00 for "lice inspection" that found no lice (cost another $2.40 for this 2 p. report) but failed to state what happened to files, letters, canteen, and religious bag (Nat Am herb) seized and not returned.

He also was trying to get Record copies per order. He was denied, then given 3 only. The legal and other materials never returned.

Earlier Maj. Medina seized legal mail incoming that he refused to either release or return to sender. This also was complained of. At hearing, Medina admitted seizure of incoming and destroying it, without logging. That is, he personally told Claimant he had seized and destroy this, then affirmed this at hearing, that this was oral only. He

_perjury_

also had told Dr Hubbell who was at hearing in case Medina's memory needed "refreshing".

On 28 June 05, Atty Jess Dance, for Defense, falsely claimed that Moore only asked for 3 records. Also falsely stated was that seized "legal materials" were returned ("Defendants believe that Mr Moore is referring to legal boxes that were removed from his cell during a shake down" — note plural, "boxes", while limit in one box and Moore really lacked even this due to staff breaking it — thus he uses shelves) This despite statements re legal mail seizures — thus clearly mail at least never in Legal Box. Box returned in pieces, apparently with full contents of old stuff. Not items he uses as too hard. The shelf files were returned, but not the desk ones.

Thus 28 June Response, which did not specify who or source and written without courtesy of checking with complaintant, was false, especially in concluding "this issue has already been resolved" unless Dance refers to actual "resolution" of staff destroying

Perjury — 5 —

mail and files.

that is Dance perjured.

Claimant immediately posted an objection to this Response.

On 1 July, long before objection could be received, Special Master issued order mooting complaints and based it on ~~Report~~ the false Response, stating "absent further request by Claimant for specific relief."

Again Claimant posted an immediate objection.

Neither objection has yet been addressed, as of 4 August, altho he was given 7 more record copies. The legal, ~~items~~ religious, and canteen items remain unaccounted for formally except in lice check record.

At hearing, Defence Attorney Mauscher complained of not having received seized claim letter while defending seizure, and thus presumably its assumed destruction by his client.

Prior to hearing, Dance moved for postponement, claiming that C. Holst was an essential defense

perjury — 6 —

witness and would be unavailable 19 July. Ms Holst has a lengthy record of libeling and perjuring against prisoners, thus Claimant moved that she be barred and hearing proceed as scheduled. Defence had previously gotten years of delays. Claimant pointed out that she was unfamiliar with his prison, that he had listed its administration as witnesses, thus sole purpose of Holst was premeditated perjury so as to uniformly deny all claims here and elsewhere as she was to be at all hearings. He was correct.

The motion to delay was denied. The rest of objection to delay went unresponded (sent 9 May, viz pp 8-13 on Holst). At hearing, she swore that she tracks grievance blanks, that this is reason she bans copying blanks and having them sent in from outside. She was unable to explain how anyone could possibly track unnumbered blanks. That is, her true purpose is her bans is to obstruct relief ~~by~~ via filing of grievances by making ~~the~~ sufficient blanks almost impossible to obtain as at least 9 blanks needed to exhaust each detail of each incident grieved — i.e., around 50

Perjury - 7

needed to ensure exhaustion of administrative remedy for just one incident, due to the plethora of reasons to refuse to answer while claiming prisoner has not exhausted admin remy, per Grievance AR 850-4.

Likewise she stated she banned copying submitted griever for prisoners altho 850-4 requires xerox be attached to appellate steps, that if not attached, admin rems not exhausted. How she can track unanswered grievers when all other say this can't be done, escapes even her. Again real reason is to deny relief without addressing issue raised, deny on procedural grounds.

Then she bans copying these for courts, to further her obstruction of relief attempts, but again she cites "tracking" necessitates ban.

She testified further on some of Claimants APA Accomodation Requests (she has denied everything he ever requested). She mentioned his demand she limit her demanded unlimited Medical and Mental Health Records Releases, his request that paraplegics be allowed to shave more than 2/mth, exercise equipment mods for same, and a useable protocol to replace wornout wheelchair parts, even if he has to buy them now

Perjury - 8

mail order catalog.

She said shaving more often required checking Mental Health Records, thus an MH Release as well as one to verify paralyzis. She could not say why. She said she'd send one limited to one year with 4 copies as she controls prisoner xerox access rules and has forbidden prisoner copying of Releases, admitting Claimant needed copy for own files, etc. She refused to drop ban.

She said exercise equipment was "currently" being altered for paras. She implied this was done starting 4 December 03 in attached letter from her that date. She admitted had been done, that she could name, but insisted something had been, that I'd see so "soon".

She said there was, at CSP, a new wheelchair to replace one with worn out parts, that it would be delivered "immediately". She felt parts issue thus moot, noting current one has split back and worn thru arm pad.

As of Aug 5, she has not sent redacted Release copies. Replacing a whole chair rather than a worn-out piece of screw in upholstry is absurdly costly (unless staff are given "scrapped" chairs having little wrong, for their home use), and fails to address the

Perjury - 9 -

parts issued as parts will always be wearing out. Previously I was allowed to buy from a catalog - sometimes state paid, sometime I paid. But she banned this. There is no new chair at CSP.

Likewise no exercise mods, as of 5 Aug 05.

Altho razor has been made much more available since hearing, this fails to formally address problem. Such requires AR/IA status: it will be issued at least 2/wk to every CSP para wishing to shave. Others get at CSP get to shave 5/wk, so 2/wk is far less than equal, is just barely sufficient. "no excuses acceptable" is part of IA. She has power to effect this via Memo. She has not.

Then she read the 2nd paragraph of her 4 Dec 2003 (libel)(attached) and falsely blamed Climent's Ad Seg Review as source (also attached). She now admits Sgt McCall would never have repaired the chair, nor any chair, after testimony of CSP staff to this effect. That is, she made up 2nd paragraph from whole cloth,

—10—

then tried to blame Clementi due to first paragraph.

Note how she lied in 3rd paragraph.

She then said she did not get Claimant's Refutation altho she later cited this in Memo as to wanting to be AIC. He said she must hate being AIC due to her libels, hate cripples. She has proven him right.

Further she had K Cooper write him up and convict him for correctly labeling her in Refutation, a "habitually, gratuitously libellously lying obstructionist bitch". He stands by his label. She now swears she never got this letter.

Claimant has repeatedly requested that she allow, at regular prisoner rate (5¢/p) copying of letters to and from her. She refuses every time, and to return copy with reply (of what sent as she has xerox) despite this requested.

That is, she fears being quoted by prisoners, fears having letters sent her compared to her reply, when any.

Perjury — 11 —

Another perjury was that of Sgt Robert ~~Campbell~~ Camper who investigated claims of torture. She says she cannot recall investigating despite her name on report which states "not proven" as it CSP allowed prisoners to take Abu Gharib type photos. CSP, and her, refuse to supply copy of Special Controls (aka torture) Log. And Special Master claims he lacks power to subpoena it.

She did state she saw him repeatedly use his feet to propel wheelchair, altho she has not seen him since she investigated torture claim, that is, her memory is very selective. And this despite all of Defendants' Experts ~~testif~~ statements (viz CSH report of 1983) that this is physically impossible due to missing chunk of spinal cord. She swears she has not confused him with less disabled cripples.

Her testimony reflects a widespread staff belief that Claimant can walk, thus should be abused to make him stop faking,

Perjury #2 —

to make him do the physically impossible (viz Ad Seg Report attached — there he was pulled out of chair by CO to make him "walk" — when he fell to floor, write up done to protect CO)

Neither Holst nor ~~Campbell~~ Camper had else to say of significance. The perjury was repeated as if true by Special Master in Final Order.

## Summary

Claimant does not want to erase the perjury but to suppress it as evidence except as to staff attitudes towards him and truth at hearing. Holst's primary purpose there was to perjure. While not so with Camper, she took cue from Holst. Other defense witnesses did also, thru repitition or worse, embellishment. Holst poisoned the hearing.

Claimant doubts that Special Master can divide what was influenced from what was not, thus total suppression of all defense testimony merited, and either a de novo Final Order or a hearing at which Holst is banned,

-13-

just as requested 9 May. Far too often public officials have correctly felt they can perjure with impunity, as courts take no action, especially when other party is a criminal defendant or a prisoner. Even when courts grant party relief due to perjury, officials are immune, and often relief is insultingly minor as courts adopt the attitude of the perjurer, that ends justify means against such scam.

Such is obvious thru'out Final Order. Special Master adds a few embellishments himself.

THEREFORE, Claimant prays that this Court will uphold its honor, regardless of how it feels about him, and suppress all the defense testimony of his 15 July 2005 hearing as lacking credibility.

Further that Final Order then be issued de novo or a new hearing held with Holst and Camper barred based on their 15 July perjury.

Claimant avows this would do wonders in uplifting this Court's Honor in the eyes of all, especially Defendants.

Perjury —14—

Respectfully submitted this 9 day of August 2005 without copy to Defense or their attorney, Vincent Mouscher, stated at hearing that he preferred prisoners not send him copy as he could get it when needed from the court.

C R Moore

Att
Letter from Holst to 4 Dec 03
Ad Seg Review of 1/12/04