IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-051
Category III
Claimant: Steven Paul Walker
Address of Claimant: FLCF, Unit 4, P.O. Box 1000, Fort Lyon, CO 81038

---

**DEFENDANTS' APPEAL DIRECTED TO THE HONORABLE JUDGE JOHN KANE REGARDING DAMAGES AWARD**

---

Defendants, through the Colorado Attorney General, respectfully submit the following "Appeal Directed to the Honorable Judge John Kane Regarding Damages Award."

**STATEMENT OF THE CASE**

Claimant Steven Paul Walker filed a claim for damages. Special Master Borchers conducted a hearing on his claim on May 24, 2005. In early 2002, prior to entering the custody of the Colorado Department of Corrections ("CDOC"), Walker had his right leg amputated below his knee as a result of a gunshot wound. Walker entered CDOC custody in August 2002. He did not have a prosthesis at that time. (Transcript, p. 3, lines 12-14).[1]

---

[1] Defendants have prepared a transcript and attached it hereto as Exhibit A.

CDOC immediately accommodated Walker with a wheelchair. (Transcript, p. 15, lines 5-7).  While at the Denver Reception & Diagnostic Center ("DRDC") Walker was evaluated for a prosthesis.  Colorado Access, the medical management provider for CDOC, did not approve the initial prosthesis design.  Following a second evaluation, a new proposal was submitted to Colorado Access and was approved.  Walker received his prosthesis in May or June 2003.  Dr. Cary Shames, CDOC's Chief Medical Officer, testified that the time it took to make and deliver the prosthesis was "not unusual." (Transcript, p. 38, line 11).

Walker was housed at the Limon Correctional Facility ("LCF") from September 11, 2002, until March 12, 2003, prior to receiving the prosthesis.  He had a wheelchair the whole time he was at LCF.  Walker testified that he feared he would get hurt at LCF because there were no handicap rails in the shower and he could not roll his wheelchair into the shower.  CDOC gave Walker a shower chair.  Walker also claimed that he was unable to access the exercise yard at LCF because he was never given a wheelchair pusher.  In addition, he alleged that he could not access the music room at LCF, which was on the second floor.  Finally, he asserted he was unable to obtain full-time job.

Walker admitted during his hearing that he never requested nor applied for any job, (Transcript, p. 14, lines 13-21), never requested a wheelchair pusher or access to the exercise yard, (Transcript, p. 6, lines 16-19), and never sought access to LCF's music program, (Transcript, p. 21, lines 17-19).  In addition, Walker never mentioned any specific job during his hearing.

In March 2003, Walker was transferred to the Fort Lyon Correctional Facility ("FLCF").  Walker "testified that he did not have any complaints concerning his treatment at FLCF.  He had been treated fairly by staff.  It was at FLCF that he received his prosthesis." (Final Order, p. 4-5; see also Transcript, p. 7, lines 7-8).

Walker's main complaint is that he wants a different prosthesis than the one given to him. Walker testified that he wants the "best prosthesis I can [get]," (Transcript, p. 8, lines 8-9), a Flex-Foot Modular 3, Carbon X Active Heel prosthesis. Walker stated that he believes this other prosthesis will allow him to work a full eight-hour day at a strenuous job and play softball and baseball. (See Transcript, p. 23, lines 9-10, 22-23). According to Walker, the cost of upgrading him to this prosthesis is $4000-$4300. (Transcript, p. 22, line 4).

According to expert medical testimony by Dr. Shames, Walker's current prosthesis meets his medical and programming needs.

> [T]he prosthesis that was fitted was appropriate for the issues that we deal with which is medical necessity, safety, ability to do programs and . . . he was in fact able to do that . . . there's numerous times where uh an exam was done of the patient and observations of the patient in which he was functioning well, walking well, no limp, no complaints as it related to the prosthesis.

(Transcript, p. 26, line 23 – p. 27, line 5; see also Transcript, p. 28, lines 4-10 ("patient walks without limp, sits and rises without apparent difficult . . . no problem with activities of daily living . . . no problems at all as it relates to the prosthesis, his ability to function normally . . . without a limp")).

The more expensive prosthesis, on the other hand, is not medically necessary. (Final Order, p. 6; Dr. Shames, Transcript, p. 27, lines 19-22). That prosthesis "is more for athletics than anything else," (Transcript, p. 34, line 17-19), and would not give Walker the ability to work a full day of a strenuous job. (Transcript, p. 34, lines 5-8; p. 28, lines 18-21). According to Dr. Shames, Walker's current prosthesis, which meets his medical needs, is like a "car[] that get[s] you from place to place"—a "Ford Focus" prosthesis in Special Master Borchers' words—while the more expensive prosthesis is

3

like a "Bentley." (Transcript, p. 31, lines 18-20; Transcript, p. 37, line 5-6). "For everyday type of living and getting around, being able to function, uh, with jobs, getting back and forth to education, safety issues where you need to move from an emergency situation . . . uh, I do not believe [the more expensive prosthesis] would provide a lot more as it related to, uh, the ability to be able to perform those functions." (Transcript, p. 37, lines 10-14).

In June 2004, Walker filed a grievance requesting the Flex-Foot Modular 3, Carbon X Active Heel prosthesis. CDOC initially treated Walker's request as an ADA request and forwarded his grievance to the ADA Inmate Coordinator. Walker responded by informing CDOC that his request for a new prosthesis "is not an ADA grievance" but is "a medical grievance." (Transcript, p. 19, line 19; see Step 1 Grievance dated 8/24/04, attached hereto a Exhibit B, admitted at hearing as Defendants' Exhibit B ("I never stated this was an ADA issue")).

> SPW: [T]his [grievance requesting a Flex-Foot Modular 3 Carbon X Active Heel prosthesis] started off as a medical grievance and they chose to channel it off to ADA, while I'm filing a medical grievance. Obviously, I want it to be a medical grievance. They channeled it off to the ADA on their own and I object to that completely because I did not file an ADA grievance . . . this was a medical grievance.

(Transcript, p. 21, lines 2-6).

CDOC provided Walker with a wheelchair or a prosthesis at all times. (See Transcript, p. 15, lines 5-7). The record established that "Mr. Walker has strong upper body, he has no issues as it relates to arm strength as per the medical records and uh no . . . neurologic or other problems which would interfere with his ability to be able to use the wheelchair independently without the need for a pusher." (Dr. Shames, Transcript, p. 29, lines 15-18). CDOC staff observed Walker using his wheelchair effectively. (Transcript,

4

p. 35, lines 17-20). Walker admitted that whenever his wheelchair or prosthesis had problems CDOC would repair or replace it. (Transcript, p. 15, lines 8-15; p. 30, lines 5-16).

Special Master Borchers issued a Final Order regarding Walker's claim on June 13, 2005. The Special Master held that Walker was discriminated against because of the time it took to provide Walker with a prosthesis and because at LCF Walker could not work a job, exercise the way he wanted to, or participate in the music program. (Final Order, p. 5, 6). In addition, the Special Master found LCF's shower situation to be an ADA/Rehab Act violation. (Final Order, p. 5). The Special Master found that "[n]o evidence was presented that Claimant could not have participated in work, outside exercise, and a music program at LCF, but for his disability." (Final Order, p. 5). The Final Order never discussed what, if any, evidence showed that Walker was qualified for any job at LCF or for access to the music program or exercise yard.

Special Master Borchers ordered CDOC to give Walker a Flex-Foot Modular 3 Carbon X Active Heel prosthesis for free and provide future maintenance "as the remedy for what occurred at the Limon Correctional Facility." (Final Order, p. 7). The Special Master dismissed all claims "concerning anything that occurred at FLCF" because "Claimant has stated that he has no complaints concerning his treatment at FLCF." (Final Order, p. 6).

**STANDARD OF REVIEW**

The Special Masters' award of damages "may be appealed on an abuse of discretion review to the Honorable Judge Kane." (See Remedial Plan, § XXXII). "A court has abused its discretion when it based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Mann v. Reynolds, 46

5

F.3d 1055, 1062 (10th Cir. 1995).  "A district court by definition abuses its discretion when it makes an error of law." Koon v. United States, 518 U.S. 81, 100 (1996).  See also Cooter & Gall v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (abuse of discretion to base "ruling on an erroneous view of the law").  In addition, an abuse of discretion occurs when the Special Master's decision is "arbitrary, capricious, or whimsical" or results in a "manifestly unreasonable judgment." Moothart v. Bell, 21 F.3d 1499, 1504-05 (10th Cir. 1994) (quotation omitted).

## ARGUMENT

### I. THE SPECIAL MASTER APPLIED THE WRONG LEGAL STANDARD IN EVALUATING WALKER'S CLAIM.

The Special Master erroneously placed the burden of proof upon the Defendants. In evaluating the four required elements of a Montez damages claim,[2] ADA and Rehab Act case law is to be applied. (November 23, 2004 Order by Judges Kane and Nottingham, ¶ 3).  Under the ADA and Rehab Act, the claimant bears the burden of "establish[ing] he or she is a qualified individual with a disability." Lanham v. Johnson County, 393 F.3d 1151, 1156 (10th Cir. 2004).  The Special Master, however, erred by placing the burden of proof upon Defendants regarding the second and third criteria.

Instead of requiring Walker to prove he was qualified for a specific job, program, or benefit, the Special Master erroneously required Defendants to prove that Walker was not qualified for any of these things.  Concerning the "otherwise qualified" element, the Final Order stated in full:

---

[2] The four criteria are: "1. Is the claimant a disabled individual who is a member of the class? 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC? 3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied

6

> No evidence was presented that Claimant could not have participated in work, outside exercise, and a music program at LCF, but for his disability.  No evidence was presented that Claimant was a security risk or that he had disciplinary problems that prevented him from participating in programs.

(Final Order, p. 5).  Nowhere does the Special Master discuss what evidence proves that Walker was qualified to work a specific job, use the exercise yard, or participate in the music program.

Whether a claimant is "otherwise qualified" for a job, program, or service is "an individualized inquiry," School Bd. Of Nassau County v. Arline, 480 U.S. 273, 287 (1987), that turns on whether the claimant "can perform the essential functions of the job in question," id. at 287 n.17, or "meet all of a program's requirements in spite of his handicap. Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979).  "Eligibility to participate in any program depends upon the inmate's ability to perform the essential functions and to meet the eligibility criteria of the assignment with or without reasonable accommodations." (Remedial Plan, § XIII(B)).

The Special Master never discusses, and Walker never offered evidence regarding, the essential functions of any job or the eligibility criteria for any program or benefit.  Consequently, Walker failed to meet his burden of proving he was qualified for any job, program, or service.  Therefore, it was a reversible abuse of discretion premised on a legal error for the Special Master to find an ADA/Rehab Act violation.

By placing the burden of proof upon Defendants, the Special Master is essentially forcing Defendants to show that the claimant fails to meet the requirements for every job, program, and service offered by CDOC.  This is unduly burdensome, time consuming,

---

because of the disability?)  4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?" (November 23, 2004 Order, ¶ 2).

7

and unworkable. There are dozens of different jobs and programs potentially available to inmates throughout CDOC. Each job, class, and program has its own unique qualifications and requirements. It is far more fair and efficient to require the claimant to identify what specific jobs, programs, or services he is interested in and then evaluate whether the claimant has proven that he meets the requirements for those specific jobs, programs, and services. Furthermore, this is what precedent requires.

The Special Master also made a legal and factual error in concluding that CDOC discriminated against Walker by denying him the ability to work, exercise, and use the music room. (See Final Order, p. 5). In determining whether "the claimant was discriminated against by DOC because of his or her disability," the Special Masters must ask "were accommodations requested and denied because of the disability?" (November 23, 2004 Order, ¶ 2). Walker claims he was denied jobs, a wheelchair pusher (to help him access LCF's exercise yard), and participation in LCF's music program. Walker, however, never requested nor applied for any job, (Transcript, p. 14, lines 13-21), never requested a wheelchair pusher or access to the exercise yard, (Transcript, p. 6, lines 16-19), and never sought access to LCF's music program, (Transcript, p. 21, lines 17-19).[3]

In order to state an ADA/Rehab Act claim, a plaintiff must show that he "requested [an] accommodation" or a specific job or program. Hall v. Claussen, 6 Fed.Appx. 665, 666 (10th Cir. 2001) (unpublished opinion). Because Walker never requested a job, access to the music program, or a wheelchair, his claims regarding those

---

[3] With regard to LCF's music room, the Remedial Plan states that "[t]he music room will not permanently be relocated to an accessible location unless an inmate with a disability requests to participate in the program(s) held at that location. In the event there is such a request, the music room at Limon will be relocated to an accessible location during the duration of time that the inmate with a disability participates in that program." (Remedial Plan, § VII(A)(5)).

8

things must fail. It was a legal error to hold that CDOC denied Walker a job, access to the music program, or a wheelchair pusher when Walker never requested any of those things. Without a request there can be no denial. Furthermore, Walker's failure to request these things denied CDOC the opportunity to determine whether he was qualified for them. Therefore, it was a reversible abuse of discretion to find that CDOC discriminated against Walker because he never requested any job, wheelchair pusher, or access to the music program.

## II. IT WAS AN ABUSE OF DISCRETION TO ORDER PROSPECTIVE INJUNCTIVE RELIEF WHERE ONLY PAST HARM WAS FOUND.

The Special Master abused his discretion by ordering CDOC to give Walker a Flex-Foot Modular 3, Carbon X Active Heel prosthesis for free and provide future maintenance "as the remedy for what occurred at the Limon Correctional Facility." (Final Order, p. 7). Such a remedy is prospective injunctive relief, which is inappropriate here because the Special Master did not find any current or imminent future violations.

"The Special Masters may consider and grant future damages and/or injunctive relief in individual cases but <u>only with respect to an individual claimant's situation</u>." (November 23, 2004 Order, ¶ 6) (emphasis added). Regarding Walker's individual situation, the Special Master only found past, non-ongoing harms. "Claimant has established his claim by a preponderance of the evidence as to the <u>time period when he was at LCF</u> [and] as to the issue of lack of a prosthesis for almost ten months." (Final Order, p. 6). Walker was transferred out of LCF in March 2003 and he received a prosthesis in May or June 2003; therefore, the Special Master only found past ADA/Rehab Act violations. All "allegations concerning anything that occurred at FLCF"

9

were dismissed because Walker "has no complaints concerning his treatment at FLCF." (Final Order, p. 6).  The Special Master found no ongoing ADA/Rehab Act violations.

Because the Special Master found no ongoing violations, it was an abuse of discretion to order prospective injunctive relief.  The purpose of injunctive relief is to stop current harm and prevent future harms.  "In order to secure injunctive relief . . . plaintiffs had to show that they were 'realistically threatened by a repetition' of the past alleged conduct."  Harris v. Champion, 51 F.3d 901, 905 (10th Cir. 1995) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)).  Past injury, by itself, does not establish a real and immediate threat of harm in the future.  Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-11 (1995).  To warrant prospective injunctive relief, a threat of future harm must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Id. at 211.

Walker has been given a prosthesis that meets his needs.  Even if conditions at LCF did violate the ADA and Rehab Act, Walker has been transferred from LCF to FLCF, a facility which he is "not complaining about." (Transcript, p. 7, line 8).  Walker has failed to establish that he faces any risk of future harm.  The Special Master ordered Defendants to provide the more expensive prosthesis to "allow [Walker] to work at a job at FLCF or elsewhere." (Final Order, p. 6).  The Special Master, however, dismissed all claims regarding FLCF.  There is no suggestion, let alone proof, that CDOC is currently discriminating against Walker regarding employment.  Walker's situation does not merit prospective injunctive relief because he is not subject to any current ADA/Rehab Act violation and there is no threat of future harm.  Therefore, it was an abuse of discretion for the Special Master to order injunctive relief in this case.

### III. CDOC CONSISTENTLY PROVIDED WALKER WITH REASONABLE ACCOMMODATIONS; THE MORE EXPENSIVE PROSTHESIS IS AN UNREASONABLE ACCOMMODATION.

Walker requested "the best prosthesis I can [get]," (Transcript, p. 8, line 8-9), a Flex-Foot Modular 3 Carbon X Active Heel, and Special Master Borchers ordered Defendants to provide it. The ADA and Rehab Act, however, only require defendants to provide a <u>reasonable</u> accommodation, not the best possible accommodation. "[T]he accommodation provided need not be the 'best accommodation possible,' so long as it is sufficient to meet the job related needs of the individual being accommodated." <u>Hall v. Claussen</u>, 6 Fed.Appx. 655, 668 (10th Cir. 2001) (unpublished opinion). A plaintiff does not get anything and everything he requests, as long as the accommodation he gets is reasonable. Walker's current prosthesis is a reasonable accommodation because it meets his needs. The Special Master abused his discretion by ordering Defendants to provide the "best prosthesis."

CDOC has already given Walker a prosthesis that meets his medical needs. (<u>See</u> Transcript, p. 27, lines 19-20). With the current prosthesis,

> patient walks without limp, sits and rises without apparent difficult, . . . no problem with activities of daily living . . . providers, physicians, and nurse practitioners have been able to observe the patient with no problems, not even significant, but <u>no problems at all as it relates to the prosthesis</u>, his <u>ability to function normally</u> . . . <u>without a limp</u>.

(Dr. Shames, Transcript, p. 28, lines 4-10) (emphasis added). According to expert medical testimony, "the prosthesis that was fitted was appropriate for issues that we deal with, which is medical necessity, safety, ability to do programs, and . . . he was in fact able to do that . . . he was functioning well, walking well, no limp, no complaints as it

11

related to the prosthesis." (Transcript, p. 26, line 23 – p. 27, line 5).  The more expensive prosthesis is not medically necessary. (Transcript, p. 27, lines 21-22).

The more expensive prosthesis will not allow Walker to work a strenuous job. According to Dr. Shames, the more expensive prosthesis "is more for athletics than anything else." (Transcript, p. 34, lines 18-19).

> CS:   For everyday type of living and getting around, being able to function, uh, with jobs, getting back and forth to education, safety issues where you need to move from an emergency situation . . . I do not believe it [the more expensive prosthesis] would provide a lot more as it related to, uh, the ability to be able to perform those functions.

(Transcript, p. 37, lines 10-14).  Walker testified that he wanted to be able to work a full eight-hour day.  The record shows that the more expensive prosthesis, however, would <u>not</u> improve Walker's ability to do a strenuous job.

> [SPW:][W]ouldn't this prosthesis help me to uh be able to work . . . do a strenuous eight [hour] work day[?]
> CS:   No.

(Transcript, p. 34, lines 5-8; <u>see also</u> Transcript, p. 28, lines 20-21 ("CS: Uh, I don't believe that there would be any difference in terms of the amount of work")).  In addition, because Walker never requested any job, it is impossible to determine whether he met, with or without additional accommodations, the requirements for the hypothetical job.

In <u>White v. York International Corp.</u>, 45 F.3d 357, 362 (10th Cir. 1995), the Tenth Circuit rejected a plaintiff's ADA claim because he "offered nothing beyond his own subjective opinion that he could perform various . . . jobs" while the defendants "offered affirmative evidence" that the plaintiff could not perform the essential functions of any available jobs.  Similarly, here Walker merely offered his subjective belief that he could work a full day if given a more expensive prosthesis while Defendants presented expert

12

medical testimony showing that the more expensive prosthesis will not significantly improve Walker's day-to-day functionality.

Finally, CDOC provided and continues to provide Walker a wheelchair whenever his prosthesis is unavailable. (Transcript, p. 30, lines 13-16; see Transcript, p. 15, lines 5-7). He is able to use his wheelchair to move throughout the facilities. (See Transcript, p. 35, lines 17-20). According to Dr. Shames, Walker's upper body is strong enough to move his wheelchair without the need for a pusher. (Transcript, p. 29, lines 15-18). If Walker ever had a problem with either his wheelchair or prosthesis, CDOC promptly repaired or replaced it. (Transcript, p. 15, lines, 8-15; p. 30, lines 5-16). Therefore, CDOC reasonably accommodated Walker at all times.

It was an abuse of discretion for Special Master Borchers to order Defendants to provide Walker the more expensive prosthesis when Defendants had already given him reasonable accommodations—a prosthesis that met his needs and a wheelchair when necessary—and when the more expensive prosthesis would not improve Walker's overall functionality.

### IV. WALKER'S CLAIM ABOUT HIS PROSTHESIS IS A MEDICAL ISSUE THAT IS BEYOND THE SCOPE OF THIS DISCRIMINATION CASE.

Whether an inmate receives a prosthesis and if so what kind is a medical decision based on "what is medically necessary." (Transcript, p. 26, lines 2-3). Walker claims that CDOC has not provided him a proper prosthesis. This is really a claim about the quality of his medical care. The Tenth Circuit has expressly held that inmates cannot use the ADA and Rehab Acts to challenge the quality of their medical care in a correctional facility. Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134 (10th Cir. 2005). Such claims fall under the Eighth Amendment, not the ADA and Rehab Act. This Court

13

previously held that "[u]nless they meet the criteria established in paragraph #[2], individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." (November 23, 2005 Order, ¶ 5).

Walker himself repeatedly emphasized during his hearing that his request for a Flex-Foot Modular 3 Carbon X Active Heel prosthesis is a medical issue, not an ADA issue. After CDOC forwarded the grievance to the ADA Inmate Coordinator, Walker responded that "I never stated this was an ADA issue at any time." (Step 1 Grievance dated 8/24/04, attached hereto as and admitted during hearing as Exhibit B). For him, it was and is a medical issue to be dealt with by Medical. (Id.; Transcript, p. 19, line 19 (request for new prosthesis "is not an ADA grievance" but is "a medical grievance")).

> SPW: [T]his [grievance requesting a Flex-Foot Modular 3 Carbon X Active Heel prosthesis] started off as a medical grievance and they chose to channel it off to ADA, while I'm filing a medical grievance. <u>Obviously, I want it to be a medical grievance</u>. They channeled it off to the ADA on their own and I object to that completely because <u>I did not file an ADA grievance</u> . . . <u>this was a medical grievance</u>.

(Transcript, p. 21, lines 2-6) (emphasis added). Because Walker admits that his request for a Flex-Foot Modular 3 Carbon X Active Heel prosthesis is not an ADA issue, this request is beyond the scope of this ADA/Rehab Act case. It was a clear abuse of discretion for the Special Master to order CDOC to give Walker the more expensive prosthesis for free as ADA/Rehab Act damages when Walker repeatedly stated that his request for the more expensive prosthesis was not an ADA issue.

Furthermore, Walker's medical request for the more expensive prosthesis does not meet the four criteria listed in the November 23, 2004 Order. Indeed, Special Master Borchers never analyzed the four criteria as they relate to Walker's request for a different prosthesis. Inmates are "qualified" to receive free medical devices that are medically

14

necessary. Because the more expensive prosthesis is not medically necessary for Walker, (Transcript, p. 27, lines 19-22), he is not "otherwise qualified" to receive it for free. He already has a prosthesis that meets his needs. This is why CDOC has not given Walker the more expensive prosthesis for free, not because of discrimination against his disability. As Walker cannot prove the four required criteria concerning his request for a different prosthesis, it was an abuse of discretion for the Special Master to order CDOC to provide the more expensive prosthesis for free.

Finally, while Walker is not qualified to receive a free Flex-Foot Modular 3 Carbon X Active Heel prosthesis, he is entitled to purchase the more expensive prosthesis on his own. Under CDOC policy, CDOC will provide inmates with medically necessary medical devices. An inmate can obtain an upgraded device beyond what is medically necessary if the inmate is willing to pay for the upgrade and future maintenance and no security or safety issues exist. (See Transcript, p. 27, lines 8-9 (Dr. Shames discussing Administrative Regulation ("AR") 700-21)). Walker testified that he is aware of AR 700-21 and that his family is willing to purchase the more expensive prosthesis for him. (Transcript, p. 16, line 22 – p. 17, line 1). The only reason Walker has not yet received the upgrade as allowed by AR 700-21 is because his family has not submitted the required paperwork. (Transcript, p. 27, lines 14-18).

## CONCLUSION

Walker's damages award should be overturned for several, independent reasons based on multiple legal errors by the Special Master. First, under the ADA and Rehab Act, a plaintiff bears the burden of proving all elements of his claim, including that he is otherwise qualified for specific jobs, programs, or services. The Special Master made a reversible legal error by erroneously placing the burden of proof upon Defendants to

15

show that Walker was "not qualified" for jobs, programs, and services.  Similarly, it was an error of law to find that CDOC discriminated against Walker regarding jobs, a wheelchair pusher, and access to the music program when Walker never requested any of these things.

Even if the Special Master did properly find an ADA/Rehab Act violation due to Walker's time at LCF and any delay in getting him a prosthesis, it was improper to order CDOC to give Walker a free Flex-Foot Modular 3 Carbon X Active Heel prosthesis for free.  The only violations found by the Special Master occurred in 2003 or before.  Because the Special Master found no current violations and no realistic threat of future violations, it was a reversible legal error to order prospective injunctive relief in this case.

Furthermore, Defendants only have a duty to provide <u>reasonable</u> accommodations, not the best possible accommodations.  CDOC has already given Walker a prosthesis that meets his medical and programming needs.  In addition, Walker has received a wheelchair to use whenever his prosthesis is unavailable.  These are reasonable accommodations that satisfy the requirements of the ADA and Rehab Act.

Finally, Walker admits that his request for a different prosthesis is a medical issue, not an ADA issue.  <u>Montez</u> is an ADA/Rehab Act cases and is limited to disability discrimination claims.  Claims regarding the quality of an inmate's medical care are beyond the scope of this case.  Because Walker admits that his request for the more expensive prosthesis is not an ADA issue, it was an abuse of discretion for the Special Master to order Defendants to give Walker the more expensive prosthesis for free.

Respectfully submitted this 18th day of August 2005.

        JOHN W. SUTHERS
        Attorney General

        S/Jess A. Dance
        JESS A. DANCE, 35803*
        Attorney
        Corrections Unit
        Civil Litigation and Employment Law Section
        Attorney for Defendants
        *Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on August 18, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Paula Greisen, Esq. | Honorable Richard M. Borchers |
| David Miller, Esq. | dborchers@legalres.com |
| DavidMiller@KingGreisen.com | Legal Resolution Center |
| Counsel for the Class | 707 Zenobia Street |
| King & Greisen, LLP | Westminister, Colorado 80030 |
| 1670 York Street | |
| Denver, CO  80206 | |

I further certify that I have mailed or served DEFENDANTS' APPEAL DIRECTED TO THE HONORABLE JUDGE JOHN KANE REGARDING DAMAGES AWARD upon all parties herein by depositing copies of same in the United States mail, postage prepaid, at Denver, Colorado, this 18th day of August, 2005 addressed as follows:

Steven Paul Walker, # 114350
Fort Lyon Correctional Facility, Unit 4
P.O. Box 1000
Fort Lyon, CO 81038

*Courtesy Copy To:*

Cathie Holst

        S/ Darlene Hill

17