IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 8 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-050
Category III
Claimant: John Montoya, #116258
Address of Claimant: 8204 W. 10th Ave. #1, Lakewood, CO 80215

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on Tuesday, July 26, 2005 at 9:00a.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: John Montoya, Claimant; James X. Quinn, from the Office of the Attorney General, for Defendants; Cary Shames, D.O., Colorado Department of Corrections chief medical officer, for Defendants; Daryl Vigil, Colorado Department of Corrections Classification Supervisor, for Defendants by telephone.

Testimony was received from the following witnesses: Claimant, Cary Shames and Daryl Vigil. Four exhibits were entered into the record by Defendants: a DVD, marked as Exhibit 1; a printout of earned time for Claimant marked as Exhibit 2; a printout of offender programs for Claimant marked as Exhibit 3; a Canteen Sales Summary for Claimant marked as Exhibit 4. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was

1

brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant on April 7, 2004, submitted an initial claim which was assigned claim number 03-050. The basis of the claim is a mobility impairment and diabetes. A supplemental claim was filed on June 4, 2004.

2. Claimant's claim was assigned to Category III based upon the Remedial Plan as set forth above.

2

3.  Claimant's current address and telephone number is:

> 8204 W. 10th Ave. #1
> Lakewood, CO 80215
> 303-462-0208

4.  Proper notice of the hearing was given and Claimant appeared along with Defendants.

5.  Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) from January 23, 2003 until his release in May of 2005.

6.  During his incarceration, Claimant was housed at the Four Mile Correctional Center (FMCC) in Cañon City and the Fort Lyon Correctional Facility (FLCF) in Fort Lyon. Claimant also testified that he spent approximately three weeks at the Skyline Correctional Facility (SCC) in Cañon City.

7.  Claimant testified that on August 13, 1997, while in the employ of the City and County of Denver, he was injured in an on-the-job accident. He suffers from verrous malalignment in his right knee. His meniscus was taken. The result is that his leg curves and, when walking, it rubs "bone-to-bone." Prior to incarceration, he wore a leg brace to pull back the knee. He also, on occasion, uses a cane.

8.  Claimant also testified that he suffers from carpal tunnel syndrome in his arms and that he had a shoulder reconstructed as a result of the shoulder shattering during his accident.

9.  Claimant testified that while under CDOC jurisdiction, he was not allowed to use his brace. He also testified that upon transfer from the Jefferson County jail when he was sentenced, he had to surrender his brace. The testimony of Cary B. Shames, D.O., CDOC Chief Medical Officer indicates that Claimant's record does not include a disclosure of the Durable Medical Equipment upon entry to CDOC. Additionally, Dr. Shames indicated that from a review of the record, Claimant has stated that he disabled based upon a Social Security determination.

10. Claimant additionally testified that in March or April of 1998, he was diagnosed with Type II Diabetes. He also suffers from high blood pressure and has suffered two cardiac infarctions. On one occasion while under CDOC jurisdiction, Claimant indicated his blood pressure rose to 218/146, causing headaches and dizziness.

11. Claimant testified that while he was housed at FMCC, he was tested daily for his diabetes but when he was transferred to FLCF he was tested maybe three times. He indicated that he did what he could to monitor his blood sugar. He indicated that access to medicines was problematic and caused a recurring problem of no medicines available. Frequently, he went 10 days to two or three weeks without medication.

3

12.  Claimant testified that upon release, one is supposed to receive a 30-day supply of medicine but he did not receive his supply for 34 days.

13.  Defendants presented evidence (Exhibit 4) of Canteen Sales[1] from 1/1/2004 through 5/23/2005 that revealed numerous purchases of candy bars which are not part of a diabetic diet. Defendants also presented evidence from Dr. Shames that on occasion, Claimant's blood sugar was known to drop. Claimant, in rebuttal reaffirmed that by purchasing candy he was doing what his body told him to do to keep his blood sugar controlled.

14.  Claimant testified that while housed at FMCC which is a working camp, his disability limited him to the janitorial class. He testified that even with his brace and his cane that he would not have been able to participate in other classes. While at FLCF, he participated in Anger Management Class. Claimant admits that he would have been unable to participate in many programs that would be available to non-disabled such as the wild horse, dairy and maintenance programs, even with accommodation.

15.  Claimant testified that he received no therapy or programs to help with his injuries.

16.  Defendants presented a video (Exhibit 1) of what they allege was Claimant walking a lengthy distance through the FLCF facility. Claimant disputes the length of the distance traveled and that the person in the video is necessarily him due to the dark nature of the video. Claimant also asserted that he, like others, has good days and bad days.

17.  Testimony was received from Daryl Vigil, CDOC Classifications Supervisor, that Claimant did not have earned time withheld due to a lack of programs available to Claimant but lost earned time due to Code of Penal Discipline (COPD) issues.

18.  Claimant testified that he was of the belief that he was classified as "first tier, lower bunk restricted" but was housed in a lower bunk on the second tier at FLCF where he had to walk up and down approximately forty steps regularly. Additionally, he testified that steps were also involved in reaching the chow hall and the medical facility. Elevators exist but are restricted from inmate use. Mr. Vigil testified in rebuttal that Claimant was classified as lower bunk restricted, but not first tier restricted.

19.  Claimant testified that exercise was limited to walking around the yard. He spent much of his time in his cell since he could not use the weight pile or do activities in the gymnasium.

---

[1] The facility on the summary is listed as Ark Valley which does not correlate to the testimony of where Claimant was housed.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities. The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class based on his diabetes.

3. It is highly questionable whether Claimant has established a permanent lower mobility impairment. Although he testified that he walked with a limp and used a cane, the evidence strongly indicates that he was able to walk efficiently without either a cane or a knee brace. Nevertheless, the Special Master will assume for purposes of discussion that Claimant has established that he is mobility impaired.

4. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other

5

valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the CDOC.

5.   The key issue is whether Claimant was discriminated against because of his disability. All of Claimant's contentions regarding his diabetes relate only to the alleged failure of the CDOC to provide proper medical treatment. The United States Court of Appeals for the Tenth Circuit has held substandard medical care or failure to properly treat a disability do not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation*, 403 F.3d 1134, 1144 (10th Cir. 2005)[2]. As a result, the Special Master finds and concludes that controlling Tenth Circuit precedent precludes Claimant's diabetes disability claim as a matter of law.

6.   With respect to Claimant's alleged mobility disability, he has failed to establish by a preponderance of the evidence that he was denied accommodation that would have allowed him to participate in programs or services. He testified that even with accommodation, he would not have been able to participate in many of the programs. He did participate in various programs and jobs, including an anger management program, a computer program, and a vocational education janitorial program. Although Claimant was required to go up and down stairs to get his medications and to get to the yard, he was never given a medical restriction for first tier housing. There is no indication that his lower extremity problem made it difficult for him to use the stairs or otherwise access programs, services, or facilities within the institution. Accordingly, the Special Master finds and concludes that Claimant suffered no discrimination because of his disability that is cognizable under the Rehabilitation Act, the ADA or the Remedial Plan.

## IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his Claim in this matter is DENIED.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 18, 2005** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

---

[2] A copy of the *Fitzgerald* decision highlighting the appropriate sections of the decision was given to Claimant by the Special Master.

SIGNED this 2nd day of August, 2005.

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of August, 2005 to the following:

Mr. John Montoya, #116258
8204 W. 10th Ave. #1
Lakewood, CO 80215

Ms. Paula Greisen
Mr. David H. Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra