DISTRICT COURT: FOR ~~DENVER~~, COLORADO
U.S. Courthouse Denver

Plaintiffs: J. Montez, L.R. Moore, et al

v.

Defendants: Gov. Bill Owens, et al

Appearing Pro Se Claimant 03030
L R Moore 44902
Box 777 CSP E311
Cañon 81215-0777
No Phone

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
AUG 24 2005
GREGORY C. LANGHAM
CLERK

▲COURT USE ONLY▲

Case No. 92 N 870
Div./Ct.Rm. ___

Motion To Dismiss & Stop Payment To Special Master

Claimant moves this Court to immediately stop payments to Special Master Richard Borchers, and to dismiss him for egregious bias against Claimants, as shown in his many fictions in his Final Order (FO). Claimant believes most other claimants feel likewise due to similar FOs.[1]

Former prosecutor Borchers was approved by Defendants only as actual plaintiffs were never consulted.[2] If

---

[1] Defendants have banned mail relating to suit between claimants, especially FO copy. Despite being a public document, Master refuses Claimant copy of other FOs.

[2] Defendant Holst has removed Martindale Hubble from all prison law libraries, thus 1 and 2 are based solely in grapevine.


Stop Pay  —2—

latter had been, they would have said Borchers unacceptable for lack of experience in barriers and other fruits of antichair bias, besides being suspicious of his endorsement by Defense. This class action was brought by wheelchair users such as Montez and expanded to include others in Colo DOC. The originators would have insisted on either a chair user or a proven access advocate, not some lawyer-come-lately. They had hoped that for once there would be nontrivial relief. They are disappointed. Trivial relief, in the words of Borchers, is "exactly why ADA enacted".[3] They disagree.

Further, in Claimant's case, Borchers dismisses the theft of his personal wheelchair by CSP's McCall[4] as ~~not~~

---

[3] Borchers writes in FO of "a cement sidewalk that heaved". There was only one such while Claimant was at LCF, outside the chow hall in a staff only area. Claimant never mentioned this. The Warden replaced this purely for cosmetic reasons (it posed Ø hazard) and was officially questioned re needless expense. This was replaced ≈ 1993. There remains at LCF a deliberately erected

stop pay — 3 —

being "an issue that had nothing to do with ADA or Rehabilitation Act", agreeing with Defense that theft by staff in itself shows no discrimination against disabled prisoners versus ablebodied ones. As if ablebodied ones arrived at CSP with their own wheelchairs. If ADA can't be used to curb prison guards who wrongly seize prisoner's personal medical property, such as a custom chair, then it is quite different than "reasonable accomodation".

3. ~~Can't~~ antichair barriers, one during opening phase, the other later. Both of these were mentioned as deliberately erected antichair barriers in sidewalks, one at the opposite end (of the inner yard) from Chow Hall, one at the tennis courts. Both once locked the barriers. Both resulted in penalizing Montez and Moore for protesting. Neither were ordered removed by Boncher, nor does he even admit these existed. Nor does he decry penalizing protests. Instead he cites

Stop per -4-

Further Borchers has refused requests for hearing records[5] and other FOIs[6].

Further he stated he was not appointed to supervise negotiations nor mediations, nor to try to resolve ongoing problems. That his function was to examine old claims only, and apparently only very trivial ones of his own invention.

3. con't against Moore. He does order $50.00 be paid Moore for the "sidewalk that heaved", apparently to aid justifying the cosmetic repair bill.

4. Defendants produced one of the disanswered grievances on this, thus proving they have been aware of theft for years and condoned it at top level GP II Burbank was Defendant co present.

5. Borchers refused Dr Hubbell permission to record hearing, stating he would make CDs available to Moore/Hubbell. Now he refuses. Dr Hubbell was present as Moore's Community Observer.

6. Defendants have barred Claimants from

Pg stop — 5 —

Almost every sentence Borcher wrote in F.O. is fictitious, especially those in which he pretends to quote Claimant. To refute the F.O. line by line would be far beyond the length of this pleading. Suffice to say, Borchers' fictions are all biased against Claimant.

Plaintiff attorneys did not appear at hearing nor have they been heard from in over a year. The presumption is, having been paid to bring class action to point where it became such, and having settled the claims of deceased Montez (plus perhaps a few others, apparently all no longer incarcerated), they felt they had done what they had been paid for and thus need not pursue more, not even checking out Borchers.⁷

⁷ Con't mailing copies of F.O.s to each other for comparison.

Borchers, at hearing, denied Claimant's earlier motion to order ban dropped. To Claimant, being unable to get help from these attorneys, has long been filing his own motions, largely for relief

PAYSTOP —6—

Claimant is unaware of whether these attorneys are still being paid. He is aware they aided in none of his claims, thus should not be. Defense attorneys have appeared against Claimant, and have filed motions based on his motions and otherwise directly to him. That is, it is as if Plaintiff attorneys are former only. Further Defendant Holst has banned xeroxing of copy for Plaintiff attorneys on basis they are no longer active.

Therefore ~~the~~ Claimant is ~~finally~~ fully pro se and needed to be consulted about choice of Special Master, was not, but now has right and duty to ask for dismissal. He does not suggest he be unilaterally allowed to replace Borchers, but that this Court announce to all pro se Claimants its criteria so they may nominate. And that it ~~give~~ issue a list of a half dozen candidates to see if there is any strong opposition from Claimants before appointing a replace-

Stoppor   —7—

ment.

Having so stated what he feels should have occurred and should thus now occur re appointment of Special Master whom he asks be much like in Madrid v. Gomez which was a similar prison case, at least as far as CSP/Super Max. That is, someone who understands chairs and prisons. Defendants once employed such and he would nominate several as Special Master if allowed to.

Regardless, the current Special Master is worse than none at all, turning hearings into "Who's on First" confusions with his fictitious summaries in FOR, as if he is striving for obfuscation of fact while denying all real relief. A complete waste of time and money by all sides.

I can't of current problems at CSP related to either ADA or filing his motions — Defendants refusing to release his Montez files they seized 22 May 05. There are

Preston -8-

Having refused to stick to the facts, having refused to even try to provide any meaningful relief for which ADA was enacted, having libeled Claimants to excuse his refusals, having ~~replaced facts~~ continuously replaced fact with fiction, and having declared that the intent of enacting ADA was to provide only trivial relief, the Special Master has proven himself unworthy of his appointment. Claimant goes further by stating he feels this Master has profitted by his refusals, much like a professional fundraiser who keeps the majority of donations.[9]

THEREFOR, Claimant respectfully requests this Court to immediately stop paying the Special

---

[7] Con't. previous problems with both filing and ADA, such as theft of chair, that he has submitted motions regarding to Borchers or Plaintiff attorneys never replied.

[8] Cathie Holst is head of Offender Legal Services, thus controls all prison Law Libraries. She is also A.I.C. A.I.C. is

Master. ~~a~~ Further that he be ordered to complete his duties for which he has been paid, including providing all Claimants who request ~~copies~~ free copies of their hearing CPs and, at Xerox cost, copies of all FOs to any who request. That both of these be immediately announced by ~~mail~~ to all Claimants.

8. Con't ADA Inmate Coordinator, a position Claimant has always opposed for her due to her bias that ADA seldom, if ever applies to prisoners versus creating AIC jobs for staff. That is, AIC will "study" and write a report on a protested antichair barrier but it won't be removed. Instead funds will be used for cosmetic repairs in staff areas. And protesters will be blamed and penalized for exposing existance of barrier, much like AIC and Master did at hearing and FO.

9. As a ~~paraplegic~~ nonincarcerated paraplegic, Claimant sees too many such first hand. He calls such the "Jerry Lewis Disease".

FURTHER, Claimant requests that Claimants be allowed to have input into any replacement Special Master, and thus Settlement including AIC.[10]

Respectfully submitted 21 August 2005 by Claimant pro se. L R Moore

_____

10. First priority, replace Holst as AIC with someone from State vocational rehab service that has experience in disabilities. AIC answers Montez/ABA Grievances which, so far, Holst has refused to, rejecting all without addressing problems protested. Second priority is to reunite Grievance systems as were formerly by removing the total dependancy status of Grievance Officers ("pleasure of Executive Director, Dept of Cor") and using tenured Admin Law Judges instead, thus ending the Terry Lewis Disease in CoDOC.