IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
COLORADO

SEP - 6 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-024
Category III
Claimant: LaVern D. Carrigan, Jr., #113545
Address of Claimant: 801 Glen Barr, Dacono, CO 80514

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Tuesday, August 2, 2005 at 9:00a.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado.

Present were the following: LaVern D. Carrigan, Claimant; Robin Williams, friend of Claimant; Christine K. Wilkinson, Esq. from the Office of the Attorney General, for Defendants; Cary Shames, D.O., Colorado Department of Corrections chief medical officer, witness for Defendants.

Testimony was received from the following witnesses: Claimant and Cary Shames. The following exhibits were introduced by Defendants:

| | |
|---|---|
| Exhibit A: | C.V. of Cary B. Shames, D.O. |
| Exhibit B: | Colorado Department of Corrections/Ambulatory Health Record for Claimant, dated 7/1/2002. |
| Exhibit C: | Colorado Department of Corrections/Ambulatory Health Record for Claimant dated 1/19/2004. |
| Exhibit D: | Printout of Canteen Items Issued to Claimant from 4/23/2002 - 7/22/2005. |

1

At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

   I.   General inconvenience or nominal damages;
   II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
   III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
   IV.  Damages due to severe physical injuries; and
   V.   Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

2

1. Claimant Lavern D. Carrigan was in the custody of the Colorado Department of Corrections (CDOC) from June 2, 2002 through January 11, 2005. Virtually all of Claimant's incarceration was at the Sterling Correctional Facility.

2. Shortly after arriving at Sterling, Claimant slipped and fell in the kitchen, injuring his leg. He was given crutches. Approximately two months later, an x-ray was taken, which revealed that a pin or screw that had been placed in the leg as a result of a previous injury had broken. Claimant underwent surgery in October of 2002. His leg was placed in a cast and he was provided with a wheelchair for approximately three days. Thereafter, Claimant was provided with crutches and was given a medical restriction for lower bunk, lower tier. After approximately four weeks, the cast was removed and Claimant was provided with a walking boot and a cane. The lower tier, lower bunk restriction appears to have remained in place.

3. It is uncontroverted that from the time of Claimant's surgery forward, he was always housed on the third tier, despite medical orders restricting him to lower tier. The CDOC medical records indicate that on April 22, 2004, some 18 months after the surgery, the medical order restricting him to lower tier was still in place. At that time, the facility attempted to accommodate his lower tier restriction but Claimant refused the accommodation.

4. Because Claimant was housed on the third tier, he was required to utilize the stairs to get to the cafeteria, med line, classes and other programs and services offered by the institution. Utilizing the stairs was difficult and painful; and often Claimant did not go to the cafeteria and missed his classes because of the problems he had negotiating the stairs. On two occasions, Claimant fell while attempting to negotiate the stairs.

5. Claimant also contends that he did not receive proper and/or timely medical treatment for the injuries sustained from his slip and fall. Claimant presented no medical evidence in support of this contention.

6. Claimant is a diabetic. He contends that he was denied insulin during his incarceration at Sterling and otherwise did not receive proper medical treatment for his diabetes. The evidence indicates that Claimant was placed on a diabetic diet after informing personnel at DRDC in July of 2002 that his diabetes was sufficiently controlled by diet. No medical orders for insulin were issued at that time. Claimant did not comply with diabetic diet and in early 2004, he was placed on medication because of elevated blood sugar levels. He was placed on insulin in April of 2004. Claimant's diabetic diet was discontinued in August of 2004 due to noncompliance.

## CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

3

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

There is a significant question as to whether Claimant's leg injury constitutes a permanent physical mobility impairment. Most courts have concluded that limitations on major life activities during periods of recuperation from surgery do not qualify as permanent disabilities under the Rehabilitation Act or the ADA. *See, e.g., Barnes v. Northwest Iowa Health Center*, 238 F. Supp. 2d 1053, 1072 (N.D. Iowa 2002). However, the record here indicates that Claimant's mobility difficulties arising from his slip and fall and subsequent surgery continued for well over a year. Eighteen months after his surgery, Claimant was still under a medical restriction for lower tier living quarters. The Special Master finds that Claimant's long term inability to safely and efficiently negotiate stairs, as a result of the injury to his leg constitutes a permanent mobility disability under the Rehabilitation Act, the ADA and the Remedial Plan. Additionally, Claimant suffers from a permanent disability in the form of diabetes. The Special Master further finds and concludes that Claimant is a member of the plaintiff class.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. The record is devoid of any evidence suggesting that Claimant was not eligible for any of the programs, benefits or services offered by the Sterling facility or was disqualified from these programs, benefits or services for reasons other than his disabilities. Consequently, as to those programs, benefits and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

4. The key question is whether Claimant was discriminated against because of his disabilities. The evidence establishes that with respect to his mobility impairment, medical orders were issued to accommodate his disability by restricting him to lower tier living quarters. The evidence further establishes that the Sterling facility did not attempt to comply with this accommodative order from October of 2002 through April of 2004. It is apodictic that Claimant is estopped from claiming discrimination after April of 2004, when he refused the accommodation. However, the Special Master finds and concludes that for the approximately 18-month time period between Claimant's surgery and the date that he declined the ordered but unimplemented lower tier accommodation, Claimant was unable to take full advantage of the programs, benefits, services, and facilities at Sterling due to a failure to accommodate his disability.

5. There is no showing of monetary damages incurred by Claimant as a result of the failure to accommodate discussed in paragraph 5 above. The evidence does indicate that Claimant fell on the stairs on two occasions, but no medical testimony was presented concerning the nature and scope of injuries, if any, resulting from these falls. The evidence further establishes that Claimant missed meals, classes and, on occasion, receiving his medications because of his inability to safely and efficiently negotiate the stairs. While non-economic loss is not recoverable under the Rehabilitation Act or the ADA absent proof of intentional discrimination (*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999)), the issue of intentional discrimination was resolved through the settlement and Remedial Plan. In any event, the evidentiary record contains a sufficient showing of intent to sustain a claim for non-monetary loss under the Rehabilitation Act and the ADA. Considering the totality of the evidence, the Special Master finds and concludes that the sum of $750.00 adequately compensates Claimant for CDOC's failure to accommodate his mobility disability from October of 2002 through April of 2004.

6. Many of Claimant's complaints relate to an alleged failure of the CDOC to provide reasonable medical care and treatment for his disability or to an alleged deliberative indifference of the CDOC to Claimant's medical needs. This is true both with respect to his mobility disability and diabetes claims. Indeed, the diabetes claim is based solely upon the alleged failure of the CDOC to provide proper treatment. While these may constitute legitimate claims under other statutes or constitutional provisions, they are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

## IV. ORDER

   IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant's claim be sustained in part, as set forth more fully above and that Claimant be awarded the sum of $750.00.

   IT IS FURTHER ORDERED that judgment be entered on this claim in favor of Claimant and against Defendant in the sum of $750.00.

   IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 26, 2005** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 11th day of August, 2005.

*/s/ Bruce D. Pringle*
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _11th_ day of August, 2005 to the following:

Mr. LaVern D. Carrigan, Jr. #113545
801 Glen Barr
Dacono, 80514

Ms. Christine K. Wilkinson
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra