IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENV~ ~~ ~ ~~O

SEP – 6 2005

GREGORY ᴗ. ᴅᴀᴵᴺᴳHAM
CLERK

---

Claim Number 03-109
Category III
Claimant: Sharon L. Colbert, #54597
Address of Claimant:  c/o Comcor, 3808 N. Nevada Ave., Colorado Springs, CO 80907

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Tuesday, July 26, 2005 at 1:00p.m. at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: Sharon L. Colbert, Claimant; Alison Faryl Kyles, from the Office of the Attorney General, for Defendants; Cary Shames, D.O., Colorado Department of Corrections chief medical officer, for Defendants.

Testimony was received from the following witnesses: Claimant and Cary Shames. Two exhibits were entered into the record by Defendants:

Exhibit 1:      C.V. of Cary B. Shames, D.O.
Exhibit 2A-M: Thirteen Colorado Department of Corrections/Ambulatory Health
              Records introduced collectively and dated as follows:
              A:     April 7, 1997
              B:     April 29, 1997
              C:     August 25, 1997
              D:     September 12, 1997
              E:     October 16, 1997
              F:     October 27, 1998
              G:     February 10, 1999

1

H:      May 15, 2000
I:      August 18, 2000
J:      September 5, 2000
K:      February 12, 2004
L:      March 12, 2004
M:      April 16, 2004

At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;
II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.     Damages due to severe physical injuries; and
V.      Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

2

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.      Claimant on April 20, 2004, submitted an initial claim which was assigned claim number 03-050.  The basis of the claim is a mobility impairment.  No supplemental claim was filed.

2.      Claimant's claim was assigned to Category III based upon the Remedial Plan as set forth above.

3.      Claimant's current address and telephone number is:

> c/o Comcor
> 3808 N. Nevada Ave.
> Colorado Springs, CO 80907
> 1-719-636-5200 x3

4.      Proper notice of the hearing was given and Claimant appeared along with Defendants.

5.      Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) at various times in 1993, 1995-1998, 1999, 2000, 2003 and 2004 and is presently at the Comcor halfway house in Colorado Springs.

6.      During her incarceration, Claimant was housed at the Denver Reception & Diagnostic Center (DRDC), the Denver Women's Correctional Facility (DWCF) and the Pueblo Minimum Center (PMC).

7.      Claimant testified that in 1995 while under CDOC jurisdiction, she was diagnosed with Disc Degenerative Disease in her neck.  She was placed on immediate restrictions including no more than 4 hours of work per week, no more than two pounds of lifting, no climbing and no extreme use of shoulders.  She had to cease her jobs.  She suffered from loss of density in her left arm and left hand, and pain in her neck and left hand.

8.      Claimant testified that she was sent to the PMC work camp.  She was prescribed HCTZ (water pills) for swelling in her feet, put in wooden shoes and given a top bunk.  When at DWCF, she was lower bunk restricted but the order did not follow to PMC.  Claimant slipped fell on two occasions and hurt her hip, presumably because of the inability to use her shoulder to climb to the top bunk.  For the hip injury, Claimant

3

testified that she was prescribed tolphene and endomethene as well as anti-inflammatories.

9.     Claimant's testimony indicated that she was forced to work in spite of her disabilities.  She testified that she was threatened with write-ups if she didn't work. Between January and June of 2005, and still on occasion, she used a cane.

10.     According to Claimant's testimony, a recent doctor informed her that the hip injury did not heal correctly and is causing chest pains because of pushing on the lungs.  Claimant can't lay on the left side of her body too long or her hip goes numb. While under the jurisdiction of CDOC, she took Vicodin.  At Comcor, she takes Flexoril. She was put on psychotic drugs for the pain caused by the hip and now sees multiple doctors.

11.     On cross examination, Claimant testified that she had been in a motor vehicle accident in 1994 and that CDOC showed her how to do physical therapy exercises for this.

12.     Testimony from Defendants' witness indicated that a read of the Claimant's medical file revealed no problems getting around the facility, no complaints of hip and back pain and no complaint of falling out of the bunk bed.

### III. CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing,

vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. The Special Master finds and concludes that Claimant does not suffer from a permanent mobility disability, within the meaning of the Remedial Plan. Under the terms of the Remedial Plan, Permanent Mobility Impairments are defined as follows:

a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.

b) Permanent Mobility Impairment (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.*, an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, or walker, or other assistive devices.

*Remedial Plan* ¶ V(A)(1).

Claimant's neck, arm and back problems do not meet the lower extremity permanent mobility impairment requirement of the Plan. Likewise, while Claimant did suffer a hip injury, she did not present evidence that she uses a wheelchair, or that the hip injury substantially limited her ability to walk in excess of 100 yards or to climb a flight of stairs without pause.

4. Since Claimant cannot prove that she suffers from a permanent mobility impairment that fits the criteria of the Remedial Plan, the analysis need not go further. Nevertheless, the Special Master notes that even if Claimant's alleged disabilities fall within the scope of the Remedial Plan, her contentions are primarily based upon the alleged failure of the CDOC to provide proper medical treatment and/or the alleged deliberate indifference of the CDOC to her condition. While these may constitute legitimate claims under other statutes or constitutional provisions, they are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

## IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met her burden of proving her claim by a preponderance of the evidence and, therefore, her Claim in this matter is DENIED.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 29, 2005** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 16th day of August, 2005.

Bruce D. Pringle,
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _16th_ day of August, 2005 to the following:

Ms. Sharon L. Colbert, #54597
c/o Comcor
3808 N. Nevada Ave.
Colorado Springs, CO 80907

Ms. Paula Greisen
Mr. David H. Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Ms. Alison Faryl Kyles
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra