IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

　　　　Plaintiffs,

-vs.-

BILL OWENS, et al.

　　　　Defendants.

FILED
UNITED STATES DISTRICT COURT

SEP - 6 2005

GREGORY C. LANGHAM
              CLERK

---

Claim Number 03-041
Category III
Claimant: Brendan Brewer, #115179
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on August 19, 2005. The hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Brendan Brewer (Claimant); and Matthew Grove, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 and 2, and both were admitted. Defendants offered Exhibit A and its attachments. That exhibit was admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>   3. <u>Permanent Vision Impairment</u>
>   Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant was placed into the custody of the Colorado Department of Corrections (CDOC) on October 2, 2002. He was taken initially to the Denver Regional Diagnostic Center (DRDC) in Denver. Claimant had a cursory eye examination at DRDC.

After initial evaluation, he was placed at FCF. Claimant experienced blurred vision and headaches. He was having difficulty in seeing. This created problems for Claimant in the prison environment. Claimant would bump into people, and this led to some fights in the prison yard. As

3

the result of his vision problems, Claimant quit going to the yard. Claimant also had to ask other inmates to read letters for him, as he was unable to decipher the words.

In April, 2004, Claimant had an eye examination. Medical staff believed that Claimant might have cataracts. As a result, he was referred to an ophthalmologist, Dr. Lynn Greenlee, M.D. Dr. Greenlee found that Claimant did have cataracts and scheduled surgery on his eyes.

In July, 2004, Claimant had surgery on his left eye. An implant was placed into the eye. In October, 2004, the same surgery took place on the right eye. Claimant went back for a check up with Dr. Greenlee and was given a prescription for glasses. Dr. Greenlee indicated that the surgery had gone well.

Claimant testified that his eyesight is better, though one eye still has a light coating. His long range vision has dramatically improved.

Claimant finally received glasses after some delay. The prescription did not seem to be correct. After some checking, it was determined that Claimant had received the wrong prescription. When it was brought to the attention of staff at FCF that Claimant had the wrong prescription, Claimant was told that he could only get new glasses every three years. The present prescription gives Claimant headaches and hurt his eyes.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems.

The testimony of Claimant reflected that he did not meet the narrow definition of vision impairment. He did not have visual acuity of 20/200 after correction. The medical records from Dr. Greenlee's office indicate that visual acuity was 20/40 with correction. There is no question that Claimant had cataracts. These affected Claimant's ability to see, but not to the level required by the Settlement Agreement. To meet the definition, an individual would have to be legally blind. Claimant does not fall into that category.

Claimant does have a legitimate problem with the glasses provided to him. During the

4

hearing, counsel for Defendants examined the prescription from Dr. Greenlee. *Exhibit #1*. He conceded that prescription was different from the prescription used by Institutional Eye Care to make the glasses for Claimant. *Exhibit #2*. It is clear that a mistake was made, and it was not the fault of Claimant. It is unconscionable that Claimant will be stuck with the wrong prescription for up to three years because of someone else's mistake. Claimant should receive the proper prescription eyeglasses immediately.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided, the answer to this question is yes.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant received medical and vision care. He had concerns initially when he filed his claim about the lack of care. He subsequently received two surgeries and implants. He testified that his vision had improved.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

There is no evidence that Claimant was denied any programs or services because of his vision condition. Claimant received medical care, and there was no evidence of discrimination based upon the vision problems that Claimant was experiencing.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached because of a negative answer to #3.

IT IS HEREBY ORDERED that the claim of Brendan Brewer is denied, as he has failed to establish by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294

**on or before October 19, 2005.**

SIGNED this 25th day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 25th day of August, 2005 to the following:

Mr. Brendan Brewer
#115179
FCF
P.O. Box 999
Canon City, CO 81215-0999

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____