IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

---

Claim Number 01-003
Category I
Claimant: Paul Inman, #89591
Address of Claimant: LCF, P.O. Box 10,000, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.*

> *1. Permanent Mobility Impairments*
> a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.
> b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level

2

surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.
*2. Permanent Hearing Impairments*
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
*3. Permanent Vision Impairment*
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
*4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category I are to be resolved without a hearing. The Special Master has re-examined the claim and all supporting documents and has determined that placement of this claim into Category I is appropriate.

The Special Master has reviewed the claim, supplemental forms, and other documents submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants by July 11, 2005. On May 27,

3

2005, Claimant filed a Notice of Intent to Sue under C.R.S. §24-10-109, alleging medical negligence on the part of LCF staff. Claimant filed two additional documents, with attachments, on June 7 and June 13, 2005. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial and supplemental claims in April, 2004.[1] The initial claim alleged mobility, vision and diabetes impairments. The supplemental claims were for mobility and diabetes only. Many of the documents submitted by Claimant are in support of claims that are not covered by the Settlement Agreement. The Special Master will address each of these claims.

### III.

The pertinent parts of the Settlement Agreement that control adjudication of all claims have been set forth in Section I. Claimant has filed a large number of documents that the Special Master cannot consider as part of the claims process that was set forth by the Settlement Agreement. Any claims by Claimant for events that occurred *after* the class was formed on August 27, 2003 cannot be considered, unless related to something that occurred before this date. Therefore, Claimant's "Notice of Intent to Sue," and the accompanying documents filed on May 27, 2005 will not be considered by the Special Master.

Claimant came into CDOC in 1995. He has been placed at a number of institutions. He came to the Limon Correctional Facility (LCF) in February, 2004.

On June 13, 2005, Claimant filed a document entitled "Response." In the document, Claimant states that he has both learning disabilities and a mental illness. While the Special Master agrees that both are serious disabilities, neither one of them is a covered disability under the Settlement Agreement. Therefore, the Special Master cannot consider these claims.

Claimant cannot claim discrimination based upon impairments due to diabetes because he is not diabetic. Claimant states that he is "hypoglycemic." Hypoglycemia is not diabetes. The Special Master can find nothing in the large number of documents filed by Claimant that substantiates that he has ever been diagnosed with diabetes. In addition, Claimant has submitted his own documents that show that DOC accommodated Claimant's hypoglycemic condition by providing him a kosher diet and snacks.

Claimant's final claim is for damages due to a lower extremity mobility impairment. Claimant alleges that his right and left knees "hurt and pop". Although Claimant agrees that he has a "bottom bunk restriction," he claims that it is difficult and painful for him to walk up and down the three flights of stairs required to get to and from his cell. *(See, Claimant's June 7, 2005*

---

[1] Defendants apparently did not receive the supplemental form for mobility disability. However in their response, Defendants addressed the issue sufficiently to allow a resolution of the issue by the Special Master.

4

*Response).* Claimant provided the Special Master with a stack of "kites" for the years 2002 and 2003. Over the space of two years, Claimant submitted a total of eight "kites" requesting medical attention for the pain in his knees. Claimant saw an orthopedic surgeon in early August, 2003. The orthopedic surgeon recommended a series of exercises for Claimant to do to strengthen his knees. *(Defendants Response to Claim and Supporting Documents, Exhibit B).*

A mobility screening for Claimant performed on February 8, 2005 indicates that Claimant fits the definition of permanent mobility impairment for inmates who do not require a wheelchair. *(Defendants Response to Claim and Supporting Documents, Exhibit A).* However, Defendants assert that Claimant can "ambulate the requisite distance" with a cane. The Special Master assumes that the "requisite distance" is walking "100 yards on a level surface" or climbing "a flight of stairs without pause." Claimant states that he has not been given a cane to use, but even if he had, he would have trouble using the cane because of nerve damage in his right hand.

On June 13, 2005, Claimant filed additional documents with the Special Master including a "Progress Assessment Summary" dated June 9, 2005. The following entry appears under the section entitled "Medical/Dental":

> Inman states he is hypoglycemic. He has several work and housing restrictions. These include no intensive labor, no squatting, no heavy lifting. Lower bunk and a handsplint. He is also alloed (sic) a cane under the ADA resolution accommodation. He knows how to contact medical for routine care should the need arise.

Under Defendants' own evaluation, Claimant meets the definition of a mobility impairment that does not involve a wheelchair. Defendants acknowledge that Claimant needs a cane. There is a dispute within the documents submitted whether Claimant has received a cane from DOC.

The Special Master determines that Claimant is entitled to a cane. If one has been provided, then an affidavit may be filed detailing that is the case. If a cane has not been provided to Claimant, then that will be done within fifteen days. Claimant is not to be charged for an appointment to obtain his cane. The Special Master further finds that no further award of damages or relief is appropriate as to this claim.

IT IS HEREBY ORDERED that the claim of Paul E. Inman is granted as to mobility impairment and he is to be provided a cane, if not already provided to him: and

IT IS FURTHER ORDERED that all other aspects of the claim of Paul Inman are dismissed; and

IT IS FURTHER ORDERED that Defendants are to file an affidavit within fifteen days if Paul Inman has already been provided a cane or to provide a cane to him within that period of time; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 12, 2005.**

SIGNED this 5th day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of August, 2005 to the following:

Mr. Paul Inman
#89591
LCF
P.O. Box 10,000
Limon, CO 80826

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Marnie Dykstra