IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

   Plaintiffs,

-vs.-

BILL OWENS, et al.

   Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 8 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-002
Category III
Claimant: Joe Eubanks, #64033
Address of Claimant: BVMC, P.O. Box 2005, Buena Vista, CO 81211-2005

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on July 25, 2005. This hearing was held at the Buena Vista Minimum Center (BVMC) in Buena Vista, Colorado. Present were the following: Joe Eubanks (Claimant); and Jane Christman, attorney for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Timothy Creny, M.D.; and Cathie Holst. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 3, and all were admitted. Defendant did not present any witnesses. Defendants offered into evidence Exhibits A through H, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to

2

"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the custody of the Colorado Department of Corrections (CDOC) in October, 1990. He has been placed at various institutions over the intervening period of time. He has been at BVMC since late February, 2005. Before that he was at the Trinidad Correctional Facility (TCF) for approximately seven months. Prior to TCF, he was at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

In 1999, Claimant developed a foot condition called plantar faciitis (PF). This condition affects the faciitis which is a sheath of muscle on the bottom of the foot. It is a painful condition that can affect walking and other daily activities. Since being diagnosed with PF, Claimant has had three surgeries on his right foot and one on his left foot. Surgical intervention has not rectified the problem, and Claimant continues to be in pain and have limitations on what he can do.

Claimant has seen a number of podiatrists secured by CDOC medical staff. He has been prescribed orthotics for his shoes. While at FCF, Claimant applied for work at the furniture shop. He was told that he could not secure work there because of the type of boots that he had to wear. A

3

similar problem arose when he applied for work in the boiler house. He ultimately found work as a welding clerk which was a sit down job. When transferred to TCF, Claimant found a janitorial job.

Claimant arrived at BVMC in late February, 2005. He began the search for a job, but was limited in what he could do. Because of the PF and the condition of his feet, he could not secure any heavy labor job. He finally found a position as a para-professional for the life skills class.

Claimant testified that the furniture shop paid inmates much better than other jobs. An inmate holding a position at the furniture shop could make as much as $250-300 per month. Not having a job at all would limit an inmate to sixty cents per day.

In his testimony, Claimant described his physical problems with his feet. He has sought custom orthotics since being diagnosed with PF. Instead, he has been told to make do with orthotics available from the Canteen. This upset the podiatrist who had done the last surgery.

Claimant continues to have problems with his feet. He is developing bunions and is beginning to experience knee problems, a result of the change in gait due to the PF. He has requested a knee brace, but was told to purchase a brace from the Canteen.

In his testimony, Claimant stated that he could not work in the K-9 program because of his feet. He had complained about work availability and was threatened at one point by a CDOC staff member that his "M" rating would be raised. The higher the medical or M rating is, the less an inmate is permitted to do.

Claimant believes that he has been the victim of discrimination due to his problems with his feet. He believes that he has been denied certain types of work because of his physical disability.

On cross-examination, Claimant acknowledged that he is presently wearing soft-sided New Balance Shoes. He further testified that he is able to work and to walk around a track in the yard.

Claimant called Dr. Timothy Creny, M.D. as a witness. Dr. Creny is assigned to FCF and had helped treat Claimant. Dr. Creny did not believe that the major life activities of Claimant were affected by his foot condition. Dr. Creny did not believe that Claimant was or is disabled.

Cathie Holst testified that Claimant has been screened by CDOC medical staff. Staff did not find that he had a disability. Based upon that screening, Claimant did not need any accommodations.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

It is important to note that the Settlement Agreement approved by Judge Nottingham on

4

August 27, 2003 provides the only basis upon which the Special Masters may proceed. The Settlement Agreement provides four types of conditions that may be adjudicated. For instance, a number of claims have been filed by individuals who indicated that they had Hepatitis C. That condition is not one that is covered by the Settlement Agreement. An individual having Hepatitis C cannot file a claim and have it adjudicated solely on the basis of that condition. Such an individual would not be part of the class as set on August 27, 2003. That individual would be able to bring a separate lawsuit in state or federal court.

The Settlement Agreement provides definitions for the four areas of disability in narrow and specific language. As an example, vision impairment is limited to "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." It would be fair say that an individual who falls into the vision impairment category has a significant loss of vision. The ADA and Rehabilitation Act may be subject to interpretation for a given condition that allows relief under the statutes, but not under the Settlement Agreement. The Special Masters are bound by the Settlement Agreement, even if it is more restrictive than would be the case under the statutes. The terms of the Settlement Agreement must be applied as of August 27, 2003, the day the class was set.

Claimant has received medical care for PF since 1999. In his closing argument, he stated that he believed that some of the care had been negligently provided. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statute. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him by CDOC medical staff or others, that is beyond the jurisdiction of the Special Masters.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no question that Claimant has PF. He has had four surgeries. This condition is painful and one that can limit the ability of an individual to walk or work.

The Settlement Agreement limits mobility disability to those "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The Settlement Agreement further requires that an inmate have "a permanent disability/impairment which substantially limits his or her ability to perform a major life activity."

The testimony of Claimant established that he is able to walk. He testified that he will walk around the track in the yard for exercise. He sometimes does not walk when his feet hurt. He is limited in the work that he can do, with no heavy physical labor. There is no evidence that Claimant

5

meets the requirement of having a limitation on a major life activity.

The United States Supreme Court examined the concept of a "major life activity" in *Toyota Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). In that case, an employee of Toyota developed carpal tunnel syndrome as the result of repetitive assembly line work. She claimed that the ADA applied to her because she had suffered a limitation on a major life activity. The Court disagreed. The Court held, in part, as follows:

> We therefore hold that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term. (Citation omitted).
> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."

*Id. at 198.* Under this standard, Claimant has not proven that PF has affected a major life activity.

Claimant has not met the standard required by the Settlement Agreement. As a result, he cannot pursue his claim.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** This question does not need to be reached, as Claimant does not fall under the category of being mobility impaired.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** This question does not need to be reached, as Claimant does not fall under the category of being mobility impaired.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the negative answer to Question #1, this question need not be answered.

IT IS HEREBY ORDERED that the claim of Joe Eubanks is denied, as he has not proven by a preponderance of the evidence each of the criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 12, 2005.**

SIGNED this 9th day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _9th_ day of August, 2005 to the following:

Mr. Joe Eubanks
#64033
BVMC
P.O. Box 2005
Buena Vista, CO 81211-2005

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra