IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-013
Category III
Claimant: Johnnie Ramirez, #112327
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 29, 2005. This hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Johnnie Ramirez (Claimant); and Kathleen Spalding, attorney for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Timothy Creny, M.D.; and Jackie Jones. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 and 2, and both were admitted. Defendants did not offer any exhibits. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Prior to being incarcerated, Claimant had experienced several medical and health issues. He had been approved for and was receiving Supplemental Security Income (SSI) due to his health conditions. Claimant had been diagnosed with diabetes. Further, he had undergone back surgery that required him to use a wheelchair for a period of time.

Claimant was convicted of a felony and sentenced to the Colorado Department of Corrections (CDOC) in 2001.[1] He was placed at the Denver Regional Diagnostic Center (DRDC) for evaluation and testing. Claimant testified that he was advised that he might have liver damage. He also was advised that he tested positive for TB.

Blood sugar levels for Claimant at DRDC were elevated. He advised medical staff of his health conditions, including diabetes. Prior to being placed into CDOC, Claimant had controlled his diabetes with diet and oral medicine. At DRDC, it was difficult to get the blood sugar levels down to an acceptable level. Insulin was started in order to control the levels. He began receiving insulin for his diabetes while at DRDC.

Claimant testified that he has experienced additional problems since arriving at FCF. His vision has deteriorated. He believes that this is due to the diabetes. He has to wear glasses in order to see. When his blood sugar levels are higher, his vision gets fuzzy.

Claimant was disabled as of 1995 after back surgery. Claimant has used a cane for support in walking since his surgery. His ability to walk is limited. He has had an infection in a toe which was painful. He also has used a wheelchair in the past.

Claimant indicated that he has had difficulty in finding work at FCF. He wanted to work at the furniture shop at the facility but was told there were no positions. He finally found work in the kitchen. His job is to roll up plastic wear in napkins for use by the other inmates for meals. Claimant had not applied for any educational programs or classes while at FCF.

In his testimony, Claimant indicated that for a brief period of time he did not receive insulin from the nurses at FCF. This was when he arrived at the facility. Claimant was unclear as to exact period of time, but it appears to have been a few days. The medical information from DRDC apparently did not arrive at the same time, and that information reflected that Claimant had started taking insulin. Claimant started receiving his shots again, and that has continued until the present time.

Claimant began experiencing falls two months ago. Claimant testified that he will fall and not know it until he wakes up on the floor. Claimant does not know what has caused him to fall.

On cross-examination, Claimant acknowledge that he began using the cane when he had a

---

[1] The exact nature of Claimant's criminal conviction is unknown and is irrelevant to resolution of his claim.

sore on his foot. The cane helped with balance and support.

Defendants called Dr. Creny as a witness. He is the physician assigned to provide care at FCF. He has treated Claimant and is familiar with the care provided to him. Dr. Creny testified that Claimant does have diabetes. The diabetes has been controlled, but there have been some problems with diet. Claimant did have a sore on his foot, but that has healed. Dr. Creny testified that Claimant has been having falls, and there is no diagnosis yet on why that is happening. He also stated that Claimant has low blood pressure and probably cannot do certain jobs because of diabetes.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems. Claimant's own testimony indicates that he does not fall under this definition. He has some vision problems, but those have been rectified by use of glasses. He has 20/20 acuity with the glasses. Claimant does not fall into the category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant has had back problems that predated his entrance into CDOC. The back surgery has affected his ability to walk. He does walk with a cane at this point. For purposes of this order, the Special Master will find that Claimant meets the definition for mobility impairment.

**Diabetes:** There is no question that Claimant is diabetic. That is acknowledged by Defendants. There is a dispute as to whether he meets the definition under the remedial plan.

The Settlement Agreement provides that diabetes relates to those "[i]nmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." The evidence is unrefuted that Claimant is dependent upon insulin, receiving two shots per day. The Settlement Agreement does not define further the term "accessible housing." This Special Master has found previously that the term "accessible housing" means access

5

to those things that are needed to live. This would include health care. Claimant has testified that he was denied insulin by medical staff for a period of time. The Special Master would note that inmates do not have options for medical care. For a very short period of time, Claimant was at FCF without access to insulin.

**Other Health Conditions:** Claimant has been diagnosed with asthma. This disease is not covered by the Settlement Agreement. To the extent that another, uncovered condition has led to problems under the ADA and Rehabilitation Act, Claimant retains the right to bring a separate lawsuit on such a condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this questions is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for unrelated, non-health reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** With one minor exception, the answer to this question is no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant received medical and vision care. He has had concerns about that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant has established that for a brief time at FCF medical staff refused to provide him insulin. This was the result of negligence on the part of CDOC medical staff. He was told by a nurse during this brief period that CDOC did not have a responsibility to provide him care. He understood this to mean that no one cared about his health or well-being. That comment concerned Claimant immensely, as lack of insulin would cause major problems for a diabetic. Claimant was not in a position to do anything about the denial of insulin. He had to wait until later to obtain his insulin. The program of general life in prison means that an inmate must be provided those things absolutely necessary for him to continue living. Claimant was the victim of discrimination because of his diabetes on this one occasion.[2]

---

[2] The Special Master will acknowledge that Claimant did not provide the greatest detail as to whom the persons were who failed to provide him insulin. The Special Master has listened

6

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has established his claim only to the extent of the denial of diabetes for a limited period of time while he was placed at FCF. The Special Master determines that damages in the amount of $100.00 would be appropriate.

IT IS HEREBY ORDERED that the claim of Johnnie Ramirez is granted, but only as to the time when insulin was withheld from him; and

IT IS FURTHER ORDERED that the remainder of the claim of Johnnie Ramirez is dismissed, because he has failed to prove by a preponderance of the evidence each of the criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant is award damages of $100.00 for the denial of insulin;

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 12, 2005.**

SIGNED this 5th day of August, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

---

to Claimant's testimony. It is believable and accepted.

## CERTIFICATE OF MAILING

    I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of August, 2005 to the following:

Mr. Johnnie Ramirez
#112327
FCF
P.O. Box 999
Canon City, CO 81215-0999

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____