1        MS. GREISEN:   It's on page 29, I think the third full

2    paragraph.

3        JUDGE NOTTINGHAM:   I see.   These awards may be

4    appealed on an abuse of discretion review to the Honorable

5    Judge Kane.

6        MS. GREISEN:   Right.

7        JUDGE NOTTINGHAM:   But you both agree that in the

8    process -- in this process, the Special Master makes an initial

9    determination concerning who is a class member, who is disabled

10   and the other things that you think should have been

11   determined.

12       Ms. Greisen, in your submission -- your response filed

13   October 22, you say there is some other things that should be

14   determined.   But those go initially to the Special Master, and

15   then to Judge Kane.

16       MS. GREISEN:   Right.

17       JUDGE NOTTINGHAM:   So my question to you -- I'm trying

18   to figure it out for future disputes -- is there anything left

19   for this judge, me, to resolve?

20       MS. GREISEN:   I believe it was anticipated that we

21   would not be before this court on any issues during this

22   special -- during the damage claim process.

23       JUDGE NOTTINGHAM:   Okay.   Now, to complicate it just a

24   little bit further, I have a welter of motions filed by people

25   who may or may not be class members.   We have an internal

1    problem because the clerk's office doesn't know whether to

2    refer things to Judge Kane or to me, but I think we can resolve

3    that internally.  For example -- and you're not getting copies

4    on all of these.

5              MS. GREISEN:  No.

6              JUDGE NOTTINGHAM:  But the Attorney General is on some

7    of them.

8              I have on June 15, 2004, a motion for judgment on

9    motion for injunctive relief filed by Mr. Robert Wirtz.  I have

10   no idea whether this man is a member of your class.  I don't

11   know all the people who are members of your class.  And my

12   inclination is to say, if they are members of the class, then

13   they should contact you.  And if you say you are not

14   representing them on their individual damages claim, they can

15   get another attorney, such as Mr. Moyer, or they can proceed

16   pro se before the Special Masters.  If they are not members of

17   your class, then all file a separate action.

18             Because my sense is the same as yours, we're getting a

19   lot of people who have medical needs of one sort or another,

20   and they may think they have a claim under the Eighth

21   Amendment, but they think they can short-circuit the liability

22   part of that by sliding in as members of this class and get

23   damages for their condition.  And I would wonder what your

24   position is on these kinds of pleadings.  I know you haven't

25   seen all of them, but you have seen some of them.

1          MS. GREISEN:   Sure.

2          JUDGE NOTTINGHAM:   Because some of them get sent to

3    you.   Here is a motion for discovery, and I assume that those

4    all go before the Special Master.

5          MS. GREISEN:   They are.   And some of this is just

6    simply a lack of understanding by the class members or

7    potential class members as to what procedure to follow.

8    Sometimes, in some cases, the Special Master has dismissed some

9    of these claims already.   I know that there was a claim for

10   injunctive relief that was filed with the Special Master that

11   he already denied.   And I think that there may simply be a

12   misunderstanding as to what they're supposed to do next.   And

13   I'm not sure whether or not we need to send out more

14   instructions to people.

15          I think, actually, the Special Master has been very

16   good about when he -- when he gets copied on these and shows

17   that they're sent or filed in the Court, he will send some sort

18   of notification to them saying, you need to file the appeal

19   process, which is appealing to Judge Kane.

20          JUDGE NOTTINGHAM:   So when we get a motion that's

21   filed in this case and served on neither party or on one party,

22   it seems to me a proper response would be to have the Clerk as

23   a matter of course send both you and the Attorney General's

24   Office, the two counsel of record, and give you ten days to

25   resolve it with the person who is filing the motion.

1          MS. GREISEN:  Well, that would be very difficult.

2          JUDGE NOTTINGHAM:   Why?

3          MS. GREISEN:  Well, number one, because of -- I don't

4    know how many filings you've gotten, but I get so much mail on

5    a weekly basis from individuals.  And, you know, at this point

6    in time, we're not allowed to call people at DOC unless there

7    is a pending court date.  And we have to prove -- Kathy Holtz

8    is here from the DOC.  She can answer to these issues.  But we

9    can't just get on the phone and talk to people anymore like we

10   used to be able to.  So that would be -- that would be very

11   difficult for us to try to resolve.

12          And some of these -- some of them actually probably

13   are class members, and they have a right to go through the

14   appeal process.  Some of them I don't think are class members,

15   and then I'm -- that is putting a tremendous burden to address

16   the non-class members who aren't -- aren't going to be

17   satisfied by what myself or Mr. -- Ms. McCann say, frankly,

18   because they're upset because they've been either denied as

19   class members or they have a grievance that this case -- for

20   instance, a lot of mental health inmates have complained

21   because mental health is not a part of this case, is not a

22   class member --

23          JUDGE NOTTINGHAM:  Well, so maybe there is no answer

24   but to go through each of these -- I must have 20 of them.

25          MS. McCANN:  Your Honor, could I suggest that

1   perhaps -- I haven't seen all of them, but perhaps you

2   should -- the Court could just refer them to the Special

3   Master, and the Special Master can then make a determination

4   as --

5          JUDGE NOTTINGHAM:  As to whether they're members of

6   the class?

7          MS. McCANN:  Right.  Whether he needs a response by

8   either of the counsel or, you know -- because they do have a

9   separate file on every single claim that's been filed.  And I

10  think it might be smoother -- I mean, there may be some that

11  would have to come back through you, but it might work

12  better --

13         JUDGE NOTTINGHAM:  That's what I'm trying to figure

14  out.  You know, a motion for injunctive relief, I think the

15  Special Master is going to handle that one like a hot potato,

16  and -- I mean, that's a possible suggestion.  But the Special

17  Master appeals go on Judge Kane.

18         It seems to me both of you are telling me, I don't

19  have anything to do with this case, that you have agreed

20  that -- that your agreement is that -- I don't know whether

21  Judge Kane welcomes that or not, but that your agreement is

22  that these things go to Judge Kane.

23         MS. McCANN:  I -- I think that for the vast majority

24  of that is true.  I think there is some issues here today that

25  at least we think you should resolve.

1          JUDGE NOTTINGHAM:  All right.

2          MS. McCANN:  Those have to do with interpretation of

3     the agreement and what -- what can be handled by the Special

4     Master.  So I think there is a -- we would suggest that perhaps

5     there are some issues in -- today that you could resolve.

6          JUDGE NOTTINGHAM:  All right.  Well, we'll hear from

7     you eventually.

8          In an anticipatory manner, then, considering what

9     Ms. McCann has said, Ms. Greisen, would you agree with what

10    your position is on Section 36A, resolution of disputes.

11         MS. GREISEN:  Talking about Section 36A of the

12    Settlement Agreement?

13         JUDGE NOTTINGHAM:  Yes.

14         JUDGE KANE:  On page 30.

15         JUDGE NOTTINGHAM:  On page 30, yeah.

16         MS. GREISEN:  I'm sorry.  What was your question, as

17    to whether or not --

18         JUDGE NOTTINGHAM:  My question was, I'm anticipating

19    something Ms. McCann said.  She says there are fundamental

20    things that still remain -- that appeals to common sense, at

21    least to my common sense.  But I'm wondering what effect this

22    language has on that.

23         MS. GREISEN:  Well, I believe it was the -- certainly

24    my position during settlement process, and I believe it was a

25    meeting of the minds, that if we had disagreements on any

1    issues that gave rise during the settlement process, those

2    issues would first be brought to Judge Kane.

3              JUDGE NOTTINGHAM:  All right.

4              MS. GREISEN:  And I think that's what that clause

5    says.

6              JUDGE NOTTINGHAM:  Okay.

7              MS. GREISEN:  Judge, with respect to the bevy of

8    motions that you have, I don't have a problem with the

9    suggestion that Ms. McCann has of sending those initially to

10   the Special Master.  I guess my concern is if they're

11   determined not to be class members, that those -- there is not

12   any issue about whether or not they then get filed with this

13   court or they're told -- I don't want people to run out of

14   statute of limitation issues and those kinds of things because

15   they get sidetracked over the Special Master.

16             JUDGE NOTTINGHAM:  Right.  That's why initially I

17   suggested before Ms. McCann made her suggestion that either

18   they're members of the class or they're not.  If they're

19   members of the class, then they ought to be proceeding

20   according to the agreement and not filing things with the

21   Court.  Some of them may think they're presenting to the

22   Special Master by filing with the Court.  But if they are not

23   class members, then they should be told, you're not class

24   members, you're going to have to file a special action.

25             And I don't know how I make that determination, except

22

1    by doing the things the Special Master is supposed to do.

2            MS. GREISEN:   I would agree, that question would be

3    referred to the Special Master.

4            JUDGE NOTTINGHAM:   Okay.

5            We'll hear from whoever is speaking for the other

6    side.

7            MS. McCANN:   Good morning.

8            JUDGE KANE:   Good morning.

9            MS. McCANN:   I think that what has happened, as we've

10   gotten actual claims, we've realized that there is some areas

11   that aren't entirely clear as to how much can be presented to

12   the Special Master and what kinds of claims can be presented.

13           We agree with the class counsel, with regard to the

14   questions that she listed in her response, which I think are on

15   page 5, that we anticipated that the Special Master would make

16   a determination, number one, as to whether or not an individual

17   is a member of the class, and that means, are they disabled to

18   the extent that it substantially limits their ability to

19   perform a major life activity.

20           The second question is, if they are disabled within

21   the meaning of the agreement and the class, was that person

22   discriminated against by DOC because -- specifically because of

23   the disability?  And encompassed in that question is whether or

24   not there was an accommodation and whether that was an adequate

25   accommodation.

1          And then the third question is, if that's the case,

2    what are the damages?

3          I guess the way we envisioned it, however, was that

4    these are Rehabilitation Act damage claims.  We do not think

5    that these individuals can bring ADA damage claims based on the

6    law as it is currently.

7          I don't know that that really matters, because the

8    same questions would be asked under the Rehabilitation Act.  So

9    the argument about Eleventh Amendment immunity -- Eleventh

10   Amendment immunity is not, really, I don't think important.  I

11   think if we can limit the claims to Rehab Act damage claims,

12   that's what we envisioned.

13         JUDGE KANE:  You mean -- you didn't mean, limit them

14   to Rehab Act.

15         MS. McCANN:  To the Rehab Act, to damage claims

16   brought under the Rehabilitation Act.  Because I think we've

17   conceded DOC did get federal funds.  Therefore, damage

18   claims -- the Eleventh Amendment immunity is waived as to Rehab

19   Act damage claims.

20         JUDGE KANE:  Isn't the Eleventh --

21         I'm sorry.

22         JUDGE NOTTINGHAM:  No.

23         JUDGE KANE:  Isn't immunity waived anyway by the

24   settlement?

25         MS. McCANN:  Well, to the extent -- I guess this is --

24

1    this is where it gets into, do we really need to get into this

2    question?  Because we did not -- we did not feel that we were

3    waiving legal defenses, many of which actually had already been

4    ruled on by Judge Nottingham and some of these claims

5    dismissed, but we didn't feel that we were waiving immunity

6    defenses in this agreement that would -- that we would be

7    legally entitled to.  But we did concede that under the status

8    of the law now, these individuals can bring legitimate damage

9    claims under the Rehabilitation Act.

10             JUDGE KANE:  You're saying it doesn't really make any

11   difference as to the kind of damages awarded by a Special

12   Master anyway?

13             MS. McCANN:  I don't think it really does, as long as

14   we are agreeing that these questions are ones that the Special

15   Master can consider.  Because we have conceded that if these

16   individuals are able to prove these questions -- answers to

17   these questions, that they are entitled to some damage claim.

18             One of the issues that still remains, I think, is,

19   under the Rehab Act, the claimants need to prove intentional

20   discrimination.  And we still believe that that is something

21   that they must prove, that the Department of Corrections

22   intentionally discriminated against them because of their

23   disability.  And so it's our position that in these hearings,

24   that's something that would still be considered by the Special

25   Master.

1          All right.  That said, what -- I guess our biggest

2     concern is some of these Eighth Amendment claims.  And the

3     judge has -- the Court has already referenced that a bit.  What

4     we're finding in some of these claims that are coming in are

5     basically medical malpractice actions, and they are claiming

6     that -- like a diabetic did not get the proper dosage of

7     insulin early enough.

8          We do not believe that those strict medical

9     malpractice claims are what were contemplated in this

10    agreement.  We were -- those are the kinds of claims that are

11    subject to defenses such as individual responsibility,

12    individual personal responsibility, deliberate indifference,

13    qualified immunity.

14         And if we are to be -- if the Special Master is to be

15    conducting full-fledged medical malpractice claims, then we're

16    going to be looking at expert witnesses, we're going to be

17    looking at extensive discovery.  That is not what we

18    contemplated when we agreed or -- made this agreement.

19         And I think that what we would suggest is that the

20    Court today give some direction to the Special Master that

21    those medical malpractice claims need to be brought as separate

22    actions.  They are not -- they are not Rehabilitation Act

23    claims based on a disability.

24         For example, anyone with a medical condition can say,

25    I wasn't treated adequately by the doctor at DOC.  It's not

1  based on the disability.  It's not because the person has

2  diabetes that they weren't treated adequately.  It's because of

3  negligence by the doctor, if you believe them.  So to --

4          JUDGE NOTTINGHAM:  I'm sorry to interrupt.  But isn't

5  that subsumed in the process that you have evidently agreed to,

6  and that's the one noted at page 5 of Ms. Greisen's recent

7  submission, they have to have -- they have to prove they have a

8  disability within the meaning of the case.  That ought to weed

9  out the medical malpractice cases if that's determined.

10          MS. McCANN:  It --

11          JUDGE NOTTINGHAM:  Then they have to prove that

12  they've --

13          MS. McCANN:  -- been discriminated against.

14          JUDGE NOTTINGHAM:  -- been discriminated against

15  because of that.

16          MS. McCANN:  I agree.  But I don't think that's what

17  is happening.  And I'm not sure that the Special Master

18  understands that.  And I guess -- I think that's why he

19  referred it here, because he wasn't clear on the extent to

20  which these kinds of claims can continue to be brought.

21          And I --

22          JUDGE NOTTINGHAM:  How much advocacy has occurred

23  before the Special Master?  The Attorney General, I assume, is

24  representing the claimants before the Special Master.  But the

25  claimants are by and large pro se, correct?

27

1           MS. McCANN:  Yes.  There have been a couple of

2      hearings by phone and one in person with the Special Master.

3      So -- where some of these issues have been discussed.  And

4      another issue is the discovery issue, which I'd like to talk

5      about in a few minutes.

6           But I'm not sure that the Special Master is clear on

7      what to do with these kinds of medical claims, is my

8      understanding.

9           JUDGE NOTTINGHAM:  Well, let me interrupt you and ask

10     Ms. Greisen a question.

11          Ms. Greisen, do you understandably try to limit your

12     involvement somewhat?  But for this kind of issue, where there

13     is a fundamental question, at least according to the Attorney

14     General, of whether you have to show a true disability, it

15     sounds like to me the Special Master had advocacy from one

16     side, and then he's got prisoner advocacy from the other side,

17     which is very usually no advocacy at all.  Why can't you be

18     involved in that?

19          MS. GREISEN:  You know, I have been involved in issues

20     that affected across the board.  There haven't been any

21     determinations made yet by the Special Master.  The only thing

22     the Special Master has done so far, which is determine which

23     category of claimants, taking the pleadings as true, would go

24     into, Categories 1 through 5.  Some of the claimants have

25     submitted supplemental claim forms.  There has been no

1    substantive hearings, nothing at all.  The only conferences

2    we've had are on the claim forms, what they're going to look

3    like.  And we had a couple of discovery issues, the breadth of

4    discovery that's going to be and who is going to pay for it.

5    So there haven't been any determinations --

6         JUDGE NOTTINGHAM:  Well, my point is this:  There is a

7    broad area of grievance, as you predicted on some of these

8    things.  Both sides seem to have a procedure in mind which if

9    applied, and if applied correctly, will weed out what you've

10   characterized as the medical malpractice claims or the Eighth

11   Amendment claims, because these are -- these are disability

12   claims, not Eighth Amendment claims.

13        And if the Special Master had heard what we're hearing

14   today, they, and I think it was both of them, might not have

15   sought clarification.

16        MS. GREISEN:  I think that's true, Judge.  We -- we --

17   he asked us to brief these issues.  And before we had a

18   briefing on it or hearing on it, he just referred it over.  And

19   I agree that I think some of these issues could have been

20   cleared up if we had sat down and had a hearing with him.  I

21   think it's premature to anticipate what some of the future

22   difficulties may or may not be.

23        I will agree that I think that there is a

24   misunderstanding -- maybe there is a disagreement between the

25   parties as to whether Eighth Amendment claims can be heard.  We