1   MS. GREISEN: No.

2   JUDGE NOTTINGHAM: You know, you have two classes
3   here, there are -- there are a group of people who are
4   suffering from various kinds of disabilities. A lesser class
5   subsumed, I think entirely, if I'm thinking correctly, in the
6   entire group -- in the larger group is the people whose
7   disabilities -- whose maladies give them an Eighth -- a
8   disability claim. Right?

9   MS. GREISEN: I'm not sure I'm tracking what you're
10  saying, but -- I think I agree. It's the -- it's -- sometimes
11  it is the disability that gives rise -- for instance, somebody
12  who has multiple sclerosis and does not believe that the
13  disability is being treated correctly, and then they have other
14  accommodations. They may have a whole host of claims, but one
15  of them would be the lack of maybe physical therapy for the MS.

16  JUDGE KANE: But that's still a question of
17  accommodation.

18  MS. GREISEN: Well, I -- you know, I suppose you could
19  phrase it like that. I mean, I -- whether or not the lack of
20  medical treatment or appropriate medical treatment might -- I
21  anticipate that the defense would argue that that's not a lack
22  of accommodation, that that's a medical treatment issue, and
23  that that can't be brought.

24  JUDGE KANE: Well, that's -- I think the question is
25  whether it's an accommodation or not. It could obviously be

1   both.  But when you try to put in the Eighth Amendment matter,
2   it -- you're getting different tests.  And you've got a large
3   class, and it's impossible to administer it on that basis.
4           MS. GREISEN:  It's a different test for liability;
5   it's not a different test for damages.
6           JUDGE KANE:  It is.  Let me suggest something to you.
7   For example, let's say that you have a diabetic who has, A,
8   mobility problems and, B, skin ulcers.  And that -- that class
9   member is left in a cell for those skin ulcers to be festered
10  and not treated.
11          MS. GREISEN:  Right.
12          JUDGE KANE:  Now, as an individual claimant, then he
13  files -- that's cruel and unusual punishment.  It's also
14  malpractice, and it's also a failure to accommodate under the
15  Americans with Disabilities Act.  So it fits all three.  But
16  what difference does it make?
17          We get back to this same question of, what do we
18  really care, in terms of implementing a settlement, whether
19  this comes under the Rehabilitation Act or not?  Except for all
20  of these other questions that complicate the issue.
21          Can you give me a scenario in which someone is going
22  to be a disabled person under this class and is going to
23  receive some kind of treatment which is not a failure to
24  accommodate and which does constitute cruel and unusual
25  punishment?  What sort of thing are you -- case, instance, are

1  you looking for?

2  MS. GREISEN: And you're right, Judge, I can't think
3  of one right now where the failure to give a medical treatment
4  couldn't also be argued as a failure to accommodate. You know,
5  off the top of my head, I can't think of one.

6  What I guess I'm anticipating is that they'll come
7  back and they'll say, well, the diabetics who weren't treated
8  properly, that's really an Eighth Amendment issue, and that's a
9  medical treatment issue, a medical malpractice issue, and
10 therefore, they shouldn't be allowed to bring those. But if
11 you can -- if they are able to be argued as an accommodation, I
12 would agree, there is probably --

13 JUDGE NOTTINGHAM: I don't think he's saying they can
14 be. But that's the issue. That's the issue the Special Master
15 will have to decide, and that's the issue that the reviewing
16 judge will have to review, is whether that is an accommodation
17 within the meaning of the Rehabilitation Act.

18 MS. GREISEN: Well, I understand that point. I don't
19 believe -- I understand what the Court is saying. I don't
20 believe that there was ever a time in this case where we gave
21 up Eighth Amendment claims. The class -- if they had an
22 argument at the beginning of this case that you shouldn't
23 bring -- you shouldn't allow the class certification to proceed
24 because you have this Eighth Amendment claim, and that didn't
25 jive with class certification, they could have raised that

1   defense.

2   JUDGE NOTTINGHAM: Maybe I spoke imprecisely when I
3   said a moment ago that you were correct. I think that you were
4   partly correct, maybe largely correct. But when this class was
5   certified, the representatives were disabled persons. And I
6   think you purported to represent a class of disabled persons,
7   although that class of disabled persons was pursuing multiple
8   claims, including ADA claims, Rehabilitation Act claims and
9   Eighth Amendment claims. But that doesn't change the nature of
10  the class. You did not purport to represent all persons in the
11  penal system who had an Eighth Amendment claim.

12  MS. GREISEN: That's correct. That's absolutely
13  correct. And I agree that they have to be a class member to
14  bring the Eighth Amendment claim, and the Eighth Amendment
15  claim has to be related to the disability.

16  JUDGE NOTTINGHAM: But I -- what I hear Judge Kane
17  suggesting, and all I suggest explicitly -- you don't need to
18  fight over this, because they have to be disabled to be members
19  of the class. And they're disabled, and then the question
20  becomes whether there is a reasonable accommodation. And if
21  they're disabled and there is no reasonable accommodation, and
22  they meet the other tests that you've got, then they get
23  damages.

24  MS. GREISEN: That's right. I agree fundamentally. I
25  don't know that it makes a difference if we have ADA or Rehab

1   Act or Eighth Amendment claim.  I think it comes down to
2   whether they can prove those three factors, and then we move on
3   from there.
4             JUDGE NOTTINGHAM:  Okay.  So my suggestion is going to
5   be, and -- unless Judge Kane has a different one, that you take
6   the next ten days to put an order together.  And at the end of
7   the ten days, you submit a proposed order for both of us to
8   sign.  And if you can't agree on the proposed order, then --
9   and can identify specific terms, then one or both of us will
10  try to resolve that, either with or without a hearing.
11            Now, do you have any questions about what goes in the
12  order?
13            MS. McCANN:  I think we'll try -- we'll try to come up
14  with something.  I think you've given us some guidance, which
15  will be helpful.
16            I do want to return for a moment, however, to the
17  discovery issue, because we do want to pursue with one or both
18  of you the -- some of these issues, because there is -- there
19  are a couple of other things that haven't been resolved.  And
20  that is, who pays for discovery, the extent of discovery that's
21  allowable, and -- I guess those are the two issues.
22            JUDGE NOTTINGHAM:  Do you want that resolved today in
23  this hearing?  Because I frankly, I don't -- I haven't studied
24  that.
25            MS. McCANN:  It doesn't matter.  If you would

1  prefer -- Ms. Greisen hasn't had an opportunity to file a
2  written response.
3            JUDGE NOTTINGHAM:  Okay.
4            MS. McCANN:  So I don't know if she wants to do that
5  or she wants to argue today.
6            JUDGE KANE:  I don't want to decide it today.  But I
7  will give you my initial impression, and that is that issues
8  such as discovery should be included in your order directing or
9  clarifying for the Special Masters that this is not a brand
10 new -- each claim is not -- does not constitute a brand new
11 civil action.  And that if under the special circumstances or
12 exigent circumstances of the individual claim some discovery is
13 needed, the Special Master can order it and determine the best
14 things to do under the circumstances.  That -- that grounds us
15 in fact.
16           You know, unlike the Congress of the United States,
17 the Third Branch is supposed to be dealing in fact.  And so
18 if -- if they do that, then we can look at it, see whether or
19 not the Special Master abused his discretion.
20           JUDGE NOTTINGHAM:  And until that, it's premature.
21 You know, I'm inclined to say your objection will start over
22 after you come up with this proposed order.
23           MS. McCANN:  Okay.
24           MS. GREISEN:  It --
25           JUDGE NOTTINGHAM:  Because I think a lot of what is

1   happening, it appears to me, is that there has been
2   insufficient communication with the Special Master on what they
3   are to do, and -- masters of what they are to do, and that
4   everyone has contributed to that.
5              MS. GREISEN:  Well, Judge, if I can add.  I mean, the
6   remedial plan says that class members are entitled to
7   discovery.  I mean, it's --
8              JUDGE KANE:  They are, but that doesn't mean they're
9   entitled to the full panoply of discovery.
10             MS. GREISEN:  I don't think --
11             JUDGE KANE:  It doesn't raise the question of who pays
12  for it.
13             MS. GREISEN:  Well, that issue is up on appeal to you.
14  As the process is outlined in the plan, I think that's
15  appropriate that it be appealed to you.  I don't disagree with
16  that.
17             With respect to discovery, I don't think there has
18  been any discovery abuses so far.  So to order the Special
19  Master not to abuse it --
20             JUDGE KANE:  I don't know that there have been.  I
21  have no knowledge of the individual claims that have been filed
22  so far, but I do think -- I can understand that Ms. McCann's
23  personnel in the Department of Corrections are sitting there
24  thinking, we're going to get notices of depositions from all of
25  these different people, and then have some prisoner sit there

1    and try to do something that he doesn't know how to do and take
2    up an enormous amount of staff time.  And I think that would be
3    unreasonable.
4           MS. GREISEN:  Absolutely.
5           JUDGE KANE:  On the other hand, if there is a clear
6    dispute as to a discrete circumstance or a set of facts that
7    requires something, the Special Master could order a deposition
8    by written interrogatories to take care of that, without having
9    court reporters.
10          I think that the problem is, as lawyers, you look at
11   these things, and you -- you tend to -- we all do, as judges
12   too.  I'm not trying to be snobbish about that.  We tend to
13   look at every single case as being the United States Steel
14   case, and that we're going to be flying all over the place and
15   taking depositions and making a federal case out of it.  And I
16   don't think that that's necessary.
17          But on the other hand, I don't want to deprive members
18   of the class that have a claim that might have legitimate need
19   for additional information.  And I think that a Special Master
20   can handle almost all of that informally, with some degree of
21   cooperation.  And if not, and he needs to have some form of
22   discovery, then it ought to be looked at in terms of review of
23   whether there has been abuse of discretion.  I think you can
24   handle it with a lot more common sense and less paranoia to the
25   extent to which you think we're talking about.

1          MS. McCANN: All right.

2          JUDGE NOTTINGHAM: Anything further on behalf of the

3    plaintiffs?

4          Mr. Moyer?

5          MR. MOYER: Your Honor, I've been listening to this

6    for quite some time, and I'm quite impressed by the logic and

7    reasoning of both parties. And I'm particularly impressed by

8    the very quick dissection of the problem by yourself, Judge.

9    Because I was about to make a very thorough argument that this

10   argument of intentional discrimination should not apply to the

11   people who are actually disabled.

12         I happen to represent one party who -- with whom there

13   is no question about his disability. But I represent an estate

14   of two people who have died, either in prison or were released

15   from prison to die two weeks later. And there is a question as

16   to whether or not those people's condition, which was not that

17   of diabetes, was so disabling as to constitute a failure to

18   accommodate their medical condition and thereby prevent proper

19   medical treatment.

20         I'm referring to people who were dying of the

21   consequences of hepatitis or renal kidney failure. And, of

22   course, part of consequences of those acts is that the parties

23   became very heavily distorted and ballooned up, they couldn't

24   get in and out of their bunks, they couldn't get to medical

25   treatment.

52

 1      Now, the question then arises, does that become a
 2 question of lack of accommodation, which would allow them
 3 benefits under this Act?  And that's the reason I'm here today,
 4 with those two issues, one, the requirement of intentional
 5 discrimination and the qualified immunity claim by the State,
 6 and, secondly, the bigger issue -- and I realize, I'm opening a
 7 can of worms here -- but the bigger issue of whether or not
 8 people whose physical condition has caused them to have lack of
 9 accommodation to receive proper medical treatment, and does
10 that fall within the category of this case.
11      JUDGE NOTTINGHAM:  Well, I thought Judge Kane
12 suggested that the issue would be in the courts of claims
13 presentation whether there was a failure to accommodate.
14      MR. MOYER:  That's what I'm thinking.  If so, that
15 would include all of these people who have other diseases than
16 specifically diabetes.  Apparently everybody with diabetes was
17 considered to be qualified originally, when they started this
18 plan.
19      JUDGE NOTTINGHAM:  Well, not necessarily.
20      MR. MOYER:  I realize that after your discussion.
21      JUDGE NOTTINGHAM:  It is true, there is more than
22 diabetes involved.  We tend to pick on that, because I see a
23 lot of those claims of im proper treatment.
24      MR. MOYER:  Well, I have two men who are now deceased
25 as a result thereof, and I want to not be precluded from

53

1  bringing their claims.

2           JUDGE NOTTINGHAM:  Well, nothing we've said here today

3  does that.

4           JUDGE KANE:  No.

5           MR. MOYER:  Thank you.

6           JUDGE NOTTINGHAM:  Court will be in recess.

7           (Hearing concluded at 10:16 a.m.)

8                         REPORTER'S CERTIFICATE

9

10      I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
11

12      Dated at Denver, Colorado, this 3rd day of November,

13  2004.

14

15                                    _____
                                      Therese Lindblom, CSR, RMR, CRR
16

17

18

19

20

21

22

23

24

25