IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

   Plaintiffs,

-vs.-

BILL OWENS, et al.

   Defendants.

---

Claim Number 03-042
Category III
Claimant: Albert Gonzales, #105076
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on August 26, 2005. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado. Present were the following: Albert Gonzales (Claimant); and Adams Wiens, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Claimant did not offer any exhibits. Defendants offered Exhibits A through K, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that

2

substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. *Permanent Hearing Impairments*
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>
> 3. *Permanent Vision Impairment*
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>
> 4. *Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic*
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>    1. Is the claimant a disabled individual who is a member of the class?
>    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witness, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant was diagnosed as diabetic in 1998 while he was in the Larimer County Jail. He began treatment of this condition through use of insulin by injection and an oral medication called glucophage.

Claimant came into the custody of CDOC in May, 2000. He was placed initially at the Denver Regional Diagnostic Center (DRDC). He advised staff at DRDC that he was diabetic and that he had suffered a traumatic brain injury in the mid-1990's. Claimant also received medical shoes from DRDC which he continued to use until they were worn out.

After approximately three weeks at DRDC, Claimant was transferred to LCF. He has been at this facility ever since. Medical staff at LCF were advised of the diabetic condition. A decision was made to treat the diabetes with oral medications and a diabetic diet. The insulin by injection was discontinued. When he arrived at LCF, Claimant was able to do daily finger sticks.

Claimant testified that he has begun to experience neuropathy in his left leg and arms. He has sought care, but nothing has been done by medical personnel at LCF. Claimant believes that the neuropathy is related to his diabetes and the care that he has received while in CDOC. His feet are getting worse, particularly with his heels.

Finger sticks are no longer available on a daily basis at LCF. These are available only on Tuesday and Fridays. Claimant has testified that there were few ADA jobs available at LCF. He had worked at the laundry for an extended period. At the present time, Claimant testified that he is taking an instructional class. Inmates who take classes are compensated as if they were holding down a job, though not necessarily at the same rate of pay.

Claimant testified in cross-examination that he has been employed or in a class for most of the time he has been at LCF. He walks for exercise as part of his regimen to keep his diabetes under control. During periods when he was not employed or taking a class, Claimant was placed into an unassigned status. As a result of such placement, he lost some available time in the recreational yard.

Claimant admitted that he had missed some meals. He did not think it was that many. He further responded that he had missed some finger sticks.

In redirect, Claimant testified that he needed new medical shoes and heel cups. He had been advised to purchase heel cups from the canteen. He indicated that heel cups are not available through the canteen.

Claimant also testified that he had been taken off a special diabetic diet for missing some meals. Claimant testified that it made no sense to him that he would be removed from a diet that he needed, even if he had missed some meals. He would be placed back onto a regular diet and then had to go through medical to get back on the special diabetic diet.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant checked the box on the claim form for diabetes. He also created a category called "traumatic brain injury" (TBI). Claimant was advised at the hearing that there is no category for TBI. He may pursue any rights he may have concerning this condition through separate litigation. The Special Masters are limited to the four categories that are part of the Settlement Agreement.

Defendants acknowledge that Claimant is diabetic but argue that he is not part of the class because a major life activity has not been affected by this condition. The definition in the Settlement Agreement for diabetes limits the class to "[i]nmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." The Settlement Agreement does not provide a further definition as to "accessible housing."

There is no question that Claimant is diabetic. The Special Master will find that Claimant does qualify as part of the class of diabetics.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Although Claimant has some disciplinary convictions, there do not appear to be any non-health reasons why he could not participate in programs and receive services.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant has received medical care during his custody in CDOC. He has concerns about that care, including the inability to have daily finger sticks. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters.

The evidence reflected that Claimant was concerned about the quality and extent of medical care that he was receiving from CDOC. There was a difference of opinion as to the necessity for

5

daily finger sticks and medical shoes. Differences of opinion as to medical care or appliances cannot be resolved under the ADA and Rehabilitation Act in light of the *Fitzgerald* decision.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be reached in light of the answer to the previous question.

IT IS HEREBY ORDERED that the claim of Albert Gonzales is denied, as his claim relates to the quality of medical care provided to him and such inquiry is precluded by the *Fitzgerald* decision; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 18, 2005.**

SIGNED this 6th day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 6th day of September, 2005 to the following:

Mr. Albert Gonzales
#105076
LCF
49030 State Highway 71
Limon, CO 80826

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adams Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Maroje Dykstra