IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-121
Category III
Claimant: Ronald R. Costa, #95668
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on September 2, 2005. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado. Present were the following: Ronald R. Costa (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Dr. Cary Shames, D.O. (by telephone). All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 thru 4, and all were admitted. Defendants offered Exhibits A and B, and both were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who

2

do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. *Permanent Hearing Impairments*
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. *Permanent Vision Impairment*
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. *Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic*
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant was diagnosed with diabetes in 1987. Claimant was able to control his diabetes with oral medications and diet. He frequently consulted with his physician and monitored his blood sugar levels.

Claimant originally came into the custody of CDOC in January, 1998. He was placed for evaluation at the Denver Regional Diagnostic Center (DRDC) in Denver. While at DRDC, Claimant advised staff that he was diabetic. Medical staff decided to control the blood sugar levels through use of oral medications, although those medications were slightly different from the ones he had been prescribed by his private physician.

Claimant then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was continued on his oral medications and also received a 2400 calorie diet. This diet was described as "low calorie." Claimant testified that he is a member of the American Diabetic Association (Association). The Association's recommendation is for a high protein and low carbohydrate diet, and that is not what was offered to him at FCF.

During the late 1990's while at FCF, Claimant testified that he found his name and medical condition posted on a bulletin board open to inspection by other inmates. He was not alone on the board, as others with diabetes also were listed. Although he did not receive any retribution or harm from other inmates, he was fearful of such treatment. Claimant testified that he was outraged by this practice. There was no testimony that this practice was followed at other correctional facilities.

Exhibits offered and admitted detailed Claimant's blood sugar levels over the period of time that he was initially in CDOC. The evidence reflected that these levels were out of control on many occasions.

In February, 2000, Claimant was transferred to the Arrowhead Correctional Facility (ACC) in Canon City, Colorado. For a period of time, Claimant had to go without a diabetic diet until medical personnel noted that he was a diabetic and again authorized the 2400 calorie diet. As Claimant put it, "the diets do not transfer with you." At ACC, Claimant had very high blood sugar levels. He sought medical help to get his condition under control.

Claimant then regressed in mid-year 2000 and was placed at the Huerfano County Correctional Facility (HCCC) in Walsenberg, Colorado. The facility is operated by Corrections Corporation of America (CCA). He was at HCCC until December, 2002.

Claimant testified that the medical care he received at HCCC was outstanding and better than at CDOC facilities. He indicated that medical staff at HCCC tried to be proactive with diabetics, including having instructional meetings. At HCCC, Claimant began taking insulin by syringe. He testified that he is insulin resistant. His own body did produce insulin, but it did not break down sugar. Thus, he needed insulin from an outside source. Claimant also began to exercise more and watch his diet.

4

The use of insulin was reduced and then ended. Claimant was able to control his diabetes again with oral medications and diet. Claimant noted that some of the medications he received at HCCC were and are not carried as formulary drugs by CDOC.

In December, 2002, Claimant was transferred to the Arkansas Valley Correctional Facility (AVCF). He was treated by oral medications for the last few months of his sentence. He discharged his initial sentence in July, 2003.

Claimant returned to CDOC custody in January, 2005. This was the result of a new conviction and sentence.[1] Claimant returned briefly to DRDC. After a couple of weeks, Claimant was transferred to LCF.

Claimant testified that CDOC had reduced the rate of pay for all inmates and had started charging co-pays for medical visits. These changes occurred during the time period when Claimant was not in custody. Claimant testified that it is not possible to get daily finger sticks to monitor his blood sugar levels. At LCF, finger sticks are allowed only on Tuesdays and Fridays.

Claimant testified that he suffers from a number of medical conditions. He relates most of these to his diabetes. He presently takes nine pills every morning and evening. He has developed neuropathy in his feet, which has created pain and some numbness. Claimant indicated that he needs help walking at times.

Claimant also testified that he has vision problems. He is farsighted now and has trifocals. He believes that his vision condition is related to his diabetes.

On cross-examination, Claimant testified that he believed that he suffered improper medical treatment and that has led to his mobility and vision problems. He further believed that he was discriminated against by CDOC when his name and medical condition were posted on the bulletin board at FCF.

Claimant further testified that he had a job at the garment factory. He acknowledged that he has purchased sweets from the canteen list. He stated further than he is able to see with glasses and that he receives a vision check yearly.

Defendants presented as a witness Dr. Cary Shames, D.O. Dr. Shames is the Chief Medical Officer for CDOC. He testified that he had one of his staff call all CDOC facilities, as well as the CCA private facilities, to determine if names of inmates and times for medical appointments are posted on bulletin boards. He testified that such postings occur, but that the reason for the appointment does not. It would be improper to so note the inmate's condition. On cross-examination, he indicated that he could not testify as to what occurred at FCF in the late 1990's.

---

[1] The Special Master does not know the basis of either conviction of Claimant. Such information is irrelevant to this claim.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems.

Claimant's own testimony indicates that he does not meet the definition for vision disability. To qualify for the definition, an individual essentially must be legally blind. Claimant is able to see with glasses and does not fall within this category.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. The Settlement Agreement further provides that an individual must not be able to walk more than one hundred yards.

Claimant has some neuropathy and foot pain. He is not permanently wheelchair bound. He is not limited in walking. Claimant does not meet the narrow definition for mobility impairment.

**Diabetes:** Defendants acknowledged that Claimant was and is diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for non-health reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** With one exception, the answer to this question is no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

6

Claimant received medical and vision care during both of his periods of confinement in CDOC. He has concerns about that care, including the inability to have daily finger sticks. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant's testimony concerning the posting of his name and diabetic condition at FCF was credible. Under the ADA and Rehabilitation Act, services, programs and activities in the correctional setting can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952 F.Supp. 520 (W.D.Mich.1996). Claimant's medical condition was noted on a public board. This certainly would not have occurred in a non-prison setting. Claimant's testimony indicated that those who were diabetic were treated differently. This treatment was discriminatory and prohibited under the ADA and Rehabilitation Act.

Dr. Shames correctly noted that such a posting today would violate federal and state law. He could not testify as to what occurred in the late 1990's at FCF. The Special Master finds that Claimant was the victim of discrimination prohibited by the ADA in that his medical condition was listed on a bulletin board that could be viewed by other inmates. He was fortunate that he was not subjected to any harmful act, but Claimant was concerned about such an occurrence.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
The Special Master finds that Claimant was harmed emotionally by the posting of his medical condition at FCF. He shall receive compensation in the amount of $200.00.[2]

IT IS HEREBY ORDERED that the claim of Ronald R. Costa is granted, but only as to the period of time at FCF when his medical condition of diabetes was listed on the bulletin board; and

IT IS FURTHER ORDERED that the remainder of the claim of Ronald R. Costa is dismissed, as it relates to the quality of medical care and is precluded by the *Fitzgerald* decision; and

IT IS FURTHER ORDERED that Claimant is awarded damages of $200.00 for the posting of his medical condition on the bulletin board at FCF; and

---

[2] Claimant indicated in his closing argument that he desired to have any award sent to another person. Claimant will need to provide this information to the Office of the Colorado Attorney General.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 18, 2005.**

SIGNED this 6th day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 6¾ day of September, 2005 to the following:

Mr. Ronald R. Costa
#95668
LCF
49030 State Highway 71
Limon, CO 80826

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adams Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____