IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-022
Category III
Claimant: Lorne D. Pick, #83632
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on September 8, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Lorne D. Pick (Claimant); and Adams Wiens, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Jeff Peterson. All documentation previously submitted by both sides was accepted. Claimant did not offer into evidence any exhibits. Defendants offered into evidence Exhibits A through H, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant is a Canadian citizen who was incarcerated in CDOC in June, 1994. He is nearing the end of his imprisonment, as he will discharge his sentence in December, 2005. Claimant is the subject of an immediate deportation order.

Claimant was placed in various CDOC facilities over the years. He was at the Fremont Correctional Facility (FCF) for an extended period of time. He was transferred to SCF in April, 2003. He expects to be at SCF until the day that he discharges his sentence.

In his testimony, Claimant indicated that he had been diagnosed as having glaucoma. This occurred prior to his entry into the custody of CDOC. While at FCF, medical staff provided optic drops that Claimant could put into his eyes. Claimant was advised that these drops would help treat his glaucoma. He received drops for two years at FCF. Medical staff also had Claimant see eye specialists.

Late in the year 1997, medical staff at FCF terminated the optic drops provided to Claimant. Claimant was advised that he been "cured" of glaucoma. Claimant objected to this course of action but did not receive his eye drops. In the fall of 2002, Claimant saw Dr. Greenlee, an eye specialist. This physician immediately put Claimant back on the optic drops. Further, he did a complete vision field test, as well as a general eye examination.

Claimant testified further that he had two spinal surgeries while in CDOC custody. Claimant had received a back injury before being placed into CDOC custody. After the surgeries in 1996 and 1997, the attending physician directed that Claimant receive physical therapy. That therapy was never provided. Claimant continued to experience pain long after the surgeries. That chronic pain continues to the present time.

As a result of his surgeries, Claimant requested the use of a cane, pain pills and button down shirts. He was denied each of these and was told to buy pain pills from the canteen. He has experienced numbness as the result of what he believed to be nerve damage from his surgeries. He has not been able to do any physical job, but has been working in graphic design for the last one and one-half years.

Claimant testified that he believed that he had been the victim of medical incompetence. He attempted for some period of time to obtain a transfer of his incarceration to Canada. The process

is available in certain instances pursuant to treaty. He was particularly vocal concerning the claim that he had been cured of glaucoma.

On cross-examination, Claimant testified that he had been medically unassigned for about 90% of time he was at FCF. He acknowledged that he had been terminated from one job at that facility.

Claimant further acknowledged that he wears glasses. He does not have a hearing aid, although he testified that he has a hearing problem. He testified further that he is able to walk from his cell house to his place of employment.

In response to a general question, Claimant testified that his main concern is the incompetence and malpractice in the care provided to him by CDOC medical staff.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement in the same way that they are bound by a statute. The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and includes only claimants suffering extreme eyesight problems.

Claimant's own testimony indicates that he does not fall under this definition. He has vision problems, but those have been rectified by use of glasses. Claimant does not fall into the category of vision impairment as defined by the Settlement Agreement.

From the documents submitted by both sides, Claimant does have glaucoma. It is difficult to fathom that someone would argue that this condition had been cured. Claimant may wish to discuss with an attorney what rights he may have concerning the care of his eyes while in CDOC. The problem is that this condition does not meet the definition of having a disability due to a vision impairment as set forth in the Settlement Agreement that was negotiated between counsel for the Class and counsel for Defendants.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant had back problems that predated his entrance into CDOC. The two spinal surgeries were significant, but

5

did not lead to a condition that meets the definition of the Settlement Agreement. Claimant is able to walk more than one hundred yards. The narrow definition of mobility impairment has not been met.

**Hearing Impairment:** The definition in the Settlement Agreement for hearing impairment is as follows:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, a claimant can only meet this definition if he is totally deaf.

Claimant's own testimony indicates that he has some hearing loss. He does not meet the definition of being disabled due to a hearing impairment, as he is able to communicate and is able to hear emergency warnings.

**Conclusion:** The definitions of the Settlement Agreement are extremely narrow. Claimant has established that he has significant health issues, but those issues do not fall within the parameters of the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Even if Claimant met one or more of the definitions for an impairment, the answer to this question would be no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant is upset about the medical care that he has received while incarcerated in CDOC. His concern about that medical care is legitimate. Certainly, the glaucoma treatment over a several year period is puzzling.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by

6

Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answers to Questions #1 and #3 are in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Lorne D. Pick is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 5, 2005.**

SIGNED this 27th day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 27th day of September, 2005 to the following:

Mr. Lorne D. Pick
#83632
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____