IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 0 5 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-026
Category III
Claimant: Roy J. Main, #48337
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on September 9, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Roy J. Main (Claimant) and Adam Wiens, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Defendants offered into evidence Exhibits A through E, and all were admitted. After closing arguments, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that

2

substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant came into CDOC custody in 1990. He was incarcerated at a number of institutions over the years. He was placed at the Fremont Correctional Facility (FCF) in 2000 and remained there until 2004. He was placed then at SCF and has remained at this correctional facility.

When Claimant filed his claim, he listed hearing and vision disabilities. He testified that he has had eye problems since 1995 with a condition called diplopia that leads to double vision. Claimant testified that this eye condition has led in the past to migraine headaches two to three times per week.

Claimant testified that he understood his condition to be one where the muscles of one eye are working while those of the other eye are not. He had sought treatment for several years, but nothing that was tried work. Claimant stated that he had several tests over a period of several years. An MRI was done on January 10, 2003, but the results were within normal limits. At one point, medical staff requested that Claimant wear a black eye patch to see if that would help. It did not.

Discussion over the years with medical personnel also included the possibility of surgery on one or both eyes. Claimant testified at one point while at FCF, surgery was scheduled. Shortly thereafter, he was transferred to SCF. Claimant believed the transfer was a direct result of an effort to deny him surgery.

In early 2005, Claimant met with Dr. Sands in Denver. A decision was made to do eye surgery. The surgery took place on February 18, 2005 in Denver. The surgery was only on the left eye and involved the cutting and then reattaching of the eye muscles. Prior to the surgery, Claimant indicated that his left eye had a forty-five degree diplopia. The surgery reduced it to twenty-five degrees. Claimant stated that he has had only six migraine headaches since the surgery in February. Claimant testified that an additional surgery on the left eye has been recommended, but it is unclear when that will occur. The first surgery has not resolved fully the double or blurred vision, but it has helped.

Claimant also testified that he has a hearing disability. As with his vision impairment, numerous tests have been performed over the years. Claimant has lost significant hearing in his left ear. He has difficulty hearing announcements made by prison staff. Claimant has had to adjust his life since the loss of hearing began. Claimant took a job as a porter because it would not involve significant noise and distractions. Claimant requested a hearing aid, but was turned down. According to Claimant, the reason given was that he had one good ear. Claimant described how difficult it was to hear certain people and sounds. He further testified that an inmate has a duty to respond to announcements made over an intercom or orders given by a correctional officer.

On cross-examination, Claimant stated that he can hear out of his right ear. He indicated that he does not have to use sign language for communication. He is concerned that he will not be able to hear a major announcement.

In response to questions from the Special Master, Claimant indicated that he used to stay in

4

bed in his cell in 2-3 times per week before his eye surgery in February, 2005. Headaches made it impossible for him to work. Although his vision remains blurred and double, it is better. Claimant believed that the additional surgery recommended by the opthomologist would help further, but there will be some remaining vision issues.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately. The Special Masters must abide by the provisions of the Settlement Agreement. The Special Masters were not involved when the Settlement Agreement was being negotiated and then approved by the Court. In the same way that a judge is bound by a statute, the Special Masters are bound by the Settlement Agreement.

**Hearing Impairment:** There is no dispute by Defendants that Claimant has a hearing loss. His left ear is limited in what it can hear. The right ear is better. Claimant is not required to communicate with others by sign language or written communication.

In order for a claimant to be part of the class for a hearing impairment, the following definition must met:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning

Claimant's own testimony indicates that he does not meet this definition. He can hear and communicate, despite having lost all of his hearing in the left ear. Claimant does not have to rely on written documents, lip reading or sign language to communicate. Although he has hearing loss, it does not meet the narrow and restrictive criteria of the Settlement Agreement. To be blunt, an individual claimant would have to be totally deaf, even with hearing aids, before that individual could be considered part of the class for hearing impairment.

**Vision Impairment:** There is no dispute by Defendants that Claimant has had eye problems. The medical records submitted by both sides reflect that this condition has been present for several years. The recent surgery has helped ease the headaches that Claimant faced.

In order for a claimant to be part of the class for vision impairment, the following definition must be met:

> Inmates who are permanently blind or who have a vision impairment not

5

correctable to central vision acuity of 20/200 or better, even with corrective lenses.

Claimant's own testimony indicates that he does not meet this definition. A claimant must be legally blind before that individual falls within the parameters of this provision of the settlement agreement.

Claimant has significant eye problems. His testimony reflected the frustrations that he has experienced over the years in seeking medical help for his eye problem while in prison. The surgery helped but did not fully alleviate the double vision and blurring problems.

The testimony of Claimant was straight forward, credible and accepted. The Special Master is bound by the Settlement Agreement and cannot revise the agreement. Claimant does not meet the definition for vision impairment included in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this questions is yes. There was no evidence that he was disqualified from programs or services as the result of some other issue, such as disciplinary problems.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since Claimant does not meet the definition of either hearing impairment or vision impairment, this question need not be answered. Claimant is not part of the class as constituted on August 27, 2003.[1]

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be reached in light of the answer to Question #2.

IT IS HEREBY ORDERED that the claim of Roy J. Main is denied, as he has failed to prove by a preponderance of the evidence each of the criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 15, 2005.**

SIGNED this 19th day of September, 2005.

---

[1] Whether Claimant could pursue legal remedies other than the ADA and Rehabilitation Act is not a question that the Special Master can comment on. Claimant may want to consult with an attorney to determine what his rights are now that it has been determined that he is not part of the class.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

   I hereby certify that I have mailed a copy of the foregoing Order of Special Master this $\underline{19th}$ day of September, 2005 to the following:

Mr. Roy J. Main
#48337
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adams Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                /s/ Margie Dykstra