IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92—870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT - 5 2005

GREGORY C. LANGHAM
CLERK

_____

Claim Number 03-034
Category III
Claimant: William Gilmore, #63549
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on September 9, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: William Gilmore (Claimant); and Adam Wiens, attorney for Defendants.

Testimony was received from the following witnesses called by Claimant: Dr. Cary Shames, D.O.; Katherine Rittenhouse, R.N; Dr. Gangadeep Singh, M.D.; and Claimant. All documentation previously submitted by both sides was accepted. Defendants offered into evidence Exhibits A through L, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody in February, 1995. He was placed at the Denver Regional Diagnostic Center (DRDC) for evaluation. He was transferred then to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He then was placed at the Centennial Correctional Facility (CCF) in Canon City, Colorado and remained there for two years. He then was transferred to the Arkansas Valley Correctional Facility in Crowley County. He was there for six years before being transferred to SCF. He has been at SCF for the last three years.

Claimant testified that he was in good health when he came into CDOC custody. He had ankle surgery in 1986, but was active and not having problems. While at CCF, he injured his right ankle while playing basketball. He had another surgery on the ankle. After the surgery, he received soft soled shoes. Claimant made a request for a wider shoe and one that had a high top. He was advised that the recommendation of the medical department was overridden. He was advised that he could purchase soft soled shoes off the canteen list with his own money. When Claimant arrived at AVCF, he was told that no soft soled shoes would be allowed. He has had two additional surgeries on his ankles. After each surgery, the recommendation has been to use soft soled shoes. He testified that such shoes would slow the degenerative conditions that have are taking place in the ankles. None of the recent recommendations for soft soled shoes have been followed. Claimant indicated that both feet continue to deteriorate and "look terrible."

Claimant testified that he has requested a permanent bottom bunk restriction in the past, but that has been denied. He has fallen while trying to get out of an upper bunk. He had a single cell at AVCF, but there are no single cells outside of segregation units at SCF. On cross-examination, Claimant indicated that surgeries on his ankles occurred in 1986, 1996, 1999, and 2001.

All of the other witnesses at the hearing were requested by Claimant. Dr. Singh used to be a physician at SCF, but has recently transferred to DRDC. Dr. Singh testified that he had examined Claimant on several occasions. He testified that he had examined both knees but found  no tenderness. He stated that Claimant had chronic problems dating back to 1986. Dr. Singh testified that he understood that Claimant was still jogging. If he was still jogging, then that would be alright.

Ms. Rittenhouse testified as Claimant's witness. She was asked if she had examined Claimant's feet on August, 2004. She did not recall anything that indicated that Claimant had bad feet. She testified that heel and arch supports are available off of the Canteen list. She further noted that specialists can only make recommendations, and often those recommendations are overridden

if there are security issues.

Dr. Cary Shames, D.O. testified that he is chief medical director for CDOC. Dr. Shames had reviewed Claimant's medical records and believed that he had received appropriate care. Claimant was allowed the opportunity to see a specialist, Dr. Pohlman. Claimant received an ADA screening and no major problems were found. The medical record reflected that Claimant could walk more than one hundred yards without stopping. Claimant has an M 2 code, but this is because of an infectious disease.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The evidence presented by both sides indicates that Claimant has had significant problems over the years with both ankles. There have been four surgeries since 1986. Based upon the testimony presented, the Special Master will find that Claimant had a mobility disability on August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant's concern is the quality of medical care that he has received over the years.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

In order to prevail under the ADA and Rehabilitation Act, a claimant must show that he

received treatment that was different because of his disability. An example would be a disabled individual being told that he would never be considered for a position of employment, even though otherwise qualified. In this case, Claimant has received medical care throughout his time in CDOC. He has some concerns about that care. Since his claim does not fall under the provisions of the Settlement Agreement, Claimant may pursue separate litigation if he believes that he was the victim of improper or negligent medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of William Gilmore is denied, as he had failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 5, 2005.**

SIGNED this 27th day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 27th day of September, 2005 to the following:

Mr. William Gilmore
#63549
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203