IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

OCT - 5 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-076
Category III
Claimant: Steven Wilson, #61564
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on September 22, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Steven Wilson (Claimant); and Kathleen Spalding, attorney for Defendants.

Testimony was received from the following witnesses called by Claimant: Cathie Holst; Dr. Joseph Fortunate, D.O.; Dr. Gangandeep Singh, M.D.; and Claimant. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 24, and all were admitted. Defendants offered into evidenced Exhibit A, and that was admitted.

At the beginning of the hearing, Claimant moved to withdraw his hearing disability claim. He indicated that he believed that he could not establish this part of his claim. The Special Master allowed the dismissal of the hearing impairment claim after determining that Claimant's request was voluntarily.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

3

           3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

           4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master will detail briefly the testimony elicited from the witnesses called by Claimant.

Ms. Cathie Holst testified by telephone that she is responsible for overseeing the implementation of the Settlement Agreement and in handling requests for accommodation. Claimant made a request for an evaluation earlier this year. Based upon the evaluation made by medical staff, Ms. Holst concluded that Claimant was not disabled within the provisions of the Settlement Agreement. As a result, he did not need any accommodations. Ms. Holst testified that Claimant has issues with the clinical evaluations made as to his health condition, and that is beyond her control.

Dr. Joseph Fortunato, D.O. testified that he is now a physician at SCF. He commenced work at SCF in March, 2005. Claimant was seen by him for a physical on June 1, 2005. This was the only time that Dr. Fortunato has seen Claimant. Dr. Fortunato testified that Claimant was able to walk one hundred yards without stopping, even though he claimed to have plantar fasciitis in both feet. Claimant had indicated that he had trouble standing, but Dr. Fortunato observed Claimant walking and standing. When the feet were examined, there was no pain on palpation. Based upon his examination, Dr. Fortunato testified that he did not believe that Claimant had plantar fasciitis at the time he examined him.

On cross-examination, Dr. Fortunato testified that he found no objective signs of plantar fasciitis. There was no muscle wasting or deformity in the feet. He noted that the course of treatment if the condition were present would be to provide anti-inflammatory medication.

Dr. Gangandeep Singh, M.D. was called by Claimant. Dr. Singh had been a physician at SCF, but has transferred to the Denver Regional Diagnostic Center. He recalled meeting with Claimant in October, 2002 to discuss the problems with his feet. Dr. Singh testified that he was advised by Claimant that he had plantar fasciitis. They discussed various ways to treat the condition. Dr. Singh took x-rays of the feet, but they were negative. Dr. Singh recommended injections into the bottom of the foot, but Claimant refused to go through with that treatment. Dr. Singh recalled that Claimant desired a referral to an outside specialist in 2002. Dr. Singh thought he could treat the condition. Dr. Singh noted that Claimant was referred to Dr. Pohlman, an orthopedic surgeon, in 2003, and surgery

was performed on Claimant's ankle. Dr. Singh last saw Claimant on December 6, 2003 and prescribed motrin for his pain. Claimant was wearing tennis shoes at the time.

Claimant testified that he came into DOC custody in October, 1989. He returned to California for several months to resolve a detainer that was pending. He returned to Colorado in 1991. He has been at a number of facilities over the years. He came to SCF in April, 2001.

Claimant stated that he is a student in a computer vocational education class. This class is considered a one-half time program.

In 2003, Claimant was referred to Dr. Pohlman for an evaluation. That physician indicated that there was a tear in a ligament in the ankle. Further, the ligaments had stretched. Surgery was performed to correct these problems. Claimant testified that his feet felt better for only a short period of time after the surgery.

Claimant testified that he had seen a podiatrist, Dr. Gremillion, in 1994 who diagnosed his problems with his feet as related to high arches that were collapsing. He recommended orthotics which were then provided to him. He maintained orthotics until he arrived at SCF. They were taken from him at that time. Claimant did receive tennis shows at one point, but those did not help make his feet better. Claimant acknowledged that he had been offered injections by Dr. Singh but did not want to have them.

In September, 2004, an MRI was done of Claimant's feet. Apparently, the MRI did not show any major problem in the feet of Claimant. Shortly thereafter, Claimant received shoe inserts, but Claimant indicated that these have not worked as well as he had hoped. Claimant's requests for orthotics at SCF have been denied. Dr. Pohlman had recommended after the surgery and when no relief was obtained from it that Claimant see a podiatrist, but that has not occurred.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant maintains that he has a mobility impairment as the result of his plantar fasciitis and other foot problems. The Settlement Agreement provides that mobility impairment is limited who use a wheelchair or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The evidence presented by Claimant through his witnesses indicates that he can walk more than 100 yards without stopping. Walking is painful, but Claimant is able to walk to and from his cell house. Based upon what has been presented, the Special Master finds that Claimant does not qualify as being mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Even if Claimant met the definition of mobility impairment under the Settlement Agreement, there is no evidence of discrimination under the ADA and Rehabilitation Act. Claimant's complaint is the quality of medical care provided to him over the years while in DOC custody.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant's case is the classic one that the *Fitzgerald* court discusses. From the medical records, Claimant has seen four medical care providers over the years for the problems with his feet. Each has had a different view of Claimant's condition and each proposed a different means of treatment. At SCF, there has been a wide difference of opinion as to how to rectify the problem, if there is a problem at all. Claimant was referred to a specialist, Dr. Pohlman, who performed surgery. Claimant wanted a referral to an outside specialist and he received that. The surgery was not an unqualified success, and Claimant still remains in pain. Further, he questions the quality of care he has received, even from Dr. Pohlman.

Claimant has questions and concerns about the medical care he has received. He does not feel better now that he did before the surgery in 2003. The fact remains that Claimant has received medical care during his time in DOC. No evidence was presented that conclusively indicated that some or all of the care was improper. What Claimant has established is that he was not discriminated against under the ADA and Rehabilitation Act on the basis of the condition of his feet. He has received continuing medical care because of his feet. No discrimination has been established by a preponderance of the evidence.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answers to Questions #1 and #3 are in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Steven Wilson is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 5, 2005.**

SIGNED this 29th day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _29th_ day of September, 2005 to the following:

Mr. Steven Wilson
#61564
SCF
P.O. Box 6000
Sterling, CO 90751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_/s/ Margie Dykstra_