IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

OCT – 5 2005

---

Claim Number 03-098
Category III
Claimant: Anthony Vaughn, #116051
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on August 25, 2005. This hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Anthony Vaughn (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Defendants offered into evidence A through D, and all were admitted. After final closing arguments, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that

2

substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant was diagnosed with diabetes several years before his incarceration. With medical assistance, Claimant was able to control his diabetes with medication by pill and diet.

Claimant was placed into CDOC custody on August 16, 2002. He initially was evaluated at the Denver Regional Diagnostic Center (DRDC). He advised medical personnel at that facility that he was diabetic.

After the period of evaluation at DRDC, Claimant was placed at the Buena Vista Correctional Facility (BVCF). He was there for approximately one year. At BVCF, Claimant had more difficulty controlling his diabetes. He also developed high blood pressure. Claimant then began to develop problems in his legs and had trouble walking. He had to use crutches and felt worse as time progressed. He lost feeling in his leg. Claimant complained to medical personnel, but he believed that little was done to address his deteriorating medical condition.

At a point in the early fall of 2002, Claimant did make a complaint about his medical condition and he was sent to the Colorado State Hospital (CSH). Claimant had developed clots in his leg and angioplasty surgery had to be done to remove them. Claimant then returned to BVCF and was placed on aspirin and a blood thinner.

Claimant was transferred to FCF in December, 2003. His medical treatment was similar, but in early 2005 Claimant had to be hospitalized again. This time he was treated at the Parkview Medical Center in Pueblo, Colorado. He received additional surgery which replaced an artery in the leg with one that is artificial. Claimant was hospitalized for about three weeks. He then returned to FCF.

Claimant's diabetes has continued to be treated by use of medication, diet, and exercise. He has been placed on an 1,800 calorie diet. His diabetes is not fully under control.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has diabetes, and that is not disputed by Defendants. Claimant is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this questions is yes. There was no evidence that he was disqualified from programs or services as the result of some other issue, such as disciplinary problems.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. Claimant has not been the victim of discrimination prohibited by

4

the ADA or Rehabilitation Act.

During his incarceration, Claimant has received medical care for his diabetes and other problems. He had concerns about that care, especially related to the actions and/or inactions of Dr. McLaughlin at BVCF.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters.[1]

Claimant's medical condition is related to blood pressure and clotting. These conditions are not part of the Settlement Agreement. Although Claimant believes that these conditions are related to his diabetes, there is nothing in the information provided by both sides that establishes that causal relationship. In addition, there was no evidence that Claimant was treated differently from other inmates. His concern is the quality of medical care. Having concern about the appropriateness of medical care is natural. The Settlement Agreement was drawn very narrowly, and Claimant has failed to establish that he was the victim of discrimination that is prohibited by the ADA and Rehabilitation Act.[2]

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question need not be reached in light of the answer to the previous question.

IT IS HEREBY ORDERED that the claim of Anthony Vaughn is denied, as he has failed to prove by a preponderance of the evidence each of the criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

---

[1] Claimant did not present sufficient evidence to establish that the medical care provided at BVCF was "deliberately indifferent" to his health condition. Since the claim can only be adjudicated under the ADA and Rehabilitation Act, Claimant retains the right to bring a separate lawsuit for alleged violations of the Eighth Amendment.

[2] Claimant may retain the right to commence separate litigation under the United States Constitution or state law. Claimant may want to consult with an attorney concerning options that he may have.

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 15, 2005.**

SIGNED this _19th_ day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _19th_ day of September, 2005 to the following:

Mr. Anthony Vaughn
#116051
FCF
P.O. Box 999
Canon City, CO 81215-0999

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adams Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203