IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

OCT - 5 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-142
Category III
Claimant: James Wayne, #116560
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on September 15, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: James Wayne (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Captain Richard Mischiara. All documentation previously submitted by both sides was accepted. Claimant did not offer into evidence any exhibits. Defendants offered into evidence Exhibits A through L, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant was incarcerated in the Montana State Prison from the mid-1990's until he was transferred back to Colorado. During his stay at that prison, Claimant was diagnosed with Chronic Obstructed Pulmonary Disease (COPD). This disease creates significant breathing problems for the individual who has the illness. Claimant utilized a wheelchair for part of the time he was in that facility.

After being released from the Montana correctional system, Claimant was placed in the Jefferson County Jail (Jail). The exact reason he was in that facility is unclear but is irrelevant for purposes of this order. While in that facility, a physician hired by the Jefferson County Sheriff's Department further diagnosed Claimant with COPD and directed that he be given a wheelchair. Claimant then was turned over to DOC.

Claimant was incarcerated initially in DOC on February 21, 2003. *Defendants' Exhibit L.* He was processed into the system at the Denver Regional Diagnostic Center (DRDC) in Denver, Colorado. Claimant remained at DRDC for five days. During that period of time, Claimant was on an oxygen machine full-time because of the COPD. Claimant then was placed on parole status.[2]

Claimant's release on parole was not successful. His parole was revoked and a warrant was issued for his arrest. He was taken back into state custody on August 26, 2003 in Broomfield, Colorado. He was placed back into DRDC on August 28, 2003. He remained at DRDC until September 10, 2003 when he was transported to the Colorado Territorial Correctional Facility in Canon City, Colorado. It is clear that during this period of time Claimant was continuing to experience breathing problems due to his COPD and other health issues.

Claimant was placed at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. This is a private facility owned by Corrections Corporation of America (CCA). Claimant was able to get around at the facility using a cane and did not have to rely full-time on a wheelchair.

---

[2] The reason for Claimant's almost immediate parole upon entry into DOC custody is not clear. The Special Masters will not allow discussion of the underlying criminal conviction/s as part of the hearing or adjudication of the claim. Claimant indicated in his testimony that his release on parole was mandatory, and that will be accepted at face value.

Claimant was at CCCF until the riot occurred in mid-2004.[3] He and others were transported to the Park County Jail. Claimant was there until placed at the Colorado Territorial Correctional Facility (CTCF) because of breathing difficulties. He was transferred to other facilities in DOC before coming to SCF.

Claimant testified that he arrived at SCF on January 4, 2005. He testified that the majority of his complaints about his treatment arise from his stay at SCF. He has been in a wheelchair since arriving at the facility and has been on a breathing machine full-time. He gets dizzy if he has to walk even a short distance. While at SCF, he has been housed in cells that were not equipped with handrails or with a toilet for someone who is handicapped. Claimant testified that he has requested a single cell, but none are available outside of the segregation units. Claimant testified that previous cell mates at SCF had shut off his breathing machine at night because it was too noisy for them to be able to sleep.

Claimant also testified that SCF was not built for wheelchair inmates. Observation booths for correctional officers do not allow a clear view of wheelchairs going through doors. As a result, mechanically operated sliding doors occasionally closed on his wheelchair. Claimant testified that no DOC staff member had ever closed a sliding door intentionally on him, but that the ability to see an inmate in a wheelchair is very limited.

On cross-examination, Claimant testified that he had been placed into a handicapped cell two days before the hearing. This is not a single cell, and another inmate lives in the cell with Claimant. He became a full-time wheelchair inmate in November, 2004. He received from DOC a pusher in January, 2005. Claimant responded to a question by indicating that he had received a new wheelchair on July 14, 2005. This wheelchair has a holder for oxygen. Claimant wanted a single cell because he was fearful that someone again would turn off his oxygen machine at night because of the noise that it makes.

Defendants presented Captain Richard Mischiara as a witness. He is the supervisor of Living Units 3 & 4 at SCF. Claimant lives in the units that he supervises. He testified that Claimant was in a new cell that had just been completed. The cell is handicapped accessible with handrails, toilet, etc.

Included in the exhibits submitted by Defendants was Exhibit B. This was an accommodation resolution from Ms Cathie Holst. That resolution stated that Claimant has a mobility impairment and is permanently in a wheelchair. The resolution was signed by Ms. Holst on May 17, 2005 and by Dr. Cary Shames, D.O. (DOC Chief Medical Officer) on May 31, 2005. This resolution directed SCF to provide a handicapped cell to Claimant within thirty days. That did not occur. Claimant was placed into a handicapped cell on September 13, 2005.

---

[3] The riot at CCCF led to the destruction of one building and several injuries to inmates. Though a private facility, DOC took over control of the facility to end the riot. CCCF is still being used to house DOC inmates, as several have filed claims with the Special Masters.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** This claim raises a couple of legal questions that will have to be dealt with by the Special Master. In order to answer this specific question, there will have to be an in-depth examination of part of the Settlement Agreement.

The provisions of Paragraph XXXII reads as follows:

### *XXXII DAMAGES*

Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;

II. Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;

III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as fear of death);

IV. Damages due to severe physical injuries; and

V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

Class members with damages allocated under categories 1 and 2 shall not be entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3,4 & 5 shall be entitled to a hearing before the Special Master. Generally, these hearings should be no more than two hours in length. However, the Special Master may extend the time for the hearing when the issues require additional time. Class members that are entitled to a hearing on their respective damages are entitled to counsel during that hearing, to present witnesses, make argument, and to any remedy otherwise available in a court of law.

After review of the evidence, the Special Master shall issue a written

determination as to the damages awarded to each claimant. These awards may be appealed on an abuse of discretion review to the Honorable Judge Kane.

Class members, their representatives and counsel are entitled to discovery regarding their damage claims and shall be provided copies of the relevant DOC files upon request, including but not limited to medical information, as well as relevant internal quality assurance documents as allowed by the special master.

Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claim Forms. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claim for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case. The Special Master may only extend the time limits for filing a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.

Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any individual with respect to their damage claim.

*Agreement, pp. 28-29.* The question is whether Claimant is part of the class since he came to DRDC on August 28, 2003. Defendants argue that he was too late, as the class was established on August 27, 2003.

The evidence presented by both sides established that Claimant was mobility disabled on February 21, 2003. Claimant had a breathing machine that he had to use full-time. He was unable to ambulate without stopping because of his COPD. The Settlement Agreement provides, in part, as follows:

Permanent Mobility Impairments
a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.

This definition encompasses the condition of Claimant in February, 2003. The Special Master determines that Claimant was a member of the class when he was placed into DOC custody in February, 2003 and on August 28, 2003. Claimant certainly was disabled within the parameters of the ADA and Rehabilitation Act on the date of the hearing.

The tougher question involves the requirements of the Settlement Agreement concerning the filing of a claim. The Settlement Agreement did not exist in February, 2003 when Claimant was placed on parole. The settlement formally occurred on August 27, 2003. As a practical matter, the claim forms were not distributed until late March, 2004. Claimant forwarded a letter to the Special

7

Masters that was received on April 19, 2005. In that letter, Claimant indicated he had been unaware of the settlement and claim process until a few days before his letter was written. A claim form was provided to him and then filed with the Special Masters.

In his initial filing with the Special Masters, Claimant alleged that he was precluded from ever going to a camp because he was in a wheelchair. Claimant indicated that he believed that this was discriminatory. Based upon the evidence presented at the hearing, Claimant raised this issue as the result of his placement in DOC in February, 2003. As a practical matter and based upon information received on other claims, Claimant was not eligible for a camp in February, 2003.

The Settlement Agreement as negotiated between counsel for the Class and counsel for Defendants provides that "[i]nmates who have on-going claims for damages may submit claims for future damages." *Remedial Plan, p. 28.* The agreement further provides that "...if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages." *Remedial Plan, p. 29.* The claim in this case was deemed filed on April 19, 2005 with the receipt of Claimant's letter. The claim form of Claimant was received on August 27, 2005. The testimony of Claimant indicated that virtually all of his complaints arose from his stay at SCF. The Special Master determines that Claimant included all acts that occurred while at SCF, though all of those post-date August 27, 2003. The Special Master further determines that Claimant had alleged a sufficient claim concerning pre-August 27, 2003 conduct to allow his claim to be amended. Finally, the Special Master finds that the intent of the parties was to allow a liberal policy of amendment to claims, as virtually all claimants are representing themselves.

Claimant is a member of the class as a person who has a permanent mobility impairment. That status existed as of February, 2003 and remains on this date.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Though testimony was presented as to disciplinary convictions, these did not appear to disqualify Claimant programs, benefits, or services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is yes. Review of medical and other records reflects that Claimant is in very poor health. He is on oxygen twenty-four hours per day and now is confined to a wheelchair. His testimony concerning the problems that he has experienced at SCF is believable and accepted.

There are two troublesome aspects to the treatment provided to Claimant at SCF. First, Claimant was evaluated by Dr. Singh and determined to be disabled. Defendants acknowledged his disability on May 31, 2005. The Accommodation Resolution directed that Claimant be provided a a handicapped cell and have access to handicapped bathroom facilities including a shower chair or bench. *Defendants' Exhibit B.* A decision was made to retain Claimant at SCF, but no handicapped

cell was made available until September 13, 2005.[4] Although Defendants' witness testified that his previous cell was handicapped equipped, that simply does not square with the evidence presented. There were no grab rails or handicapped toilet. The Special Master finds that the previous cell did not comply with the Accommodation Resolution.

Second, the testimony concerning cell mates turning off Claimant's breathing machine is credible and accepted. It also is frightening. As Claimant testified, the breathing machine is crucial for his survival. It creates some noise that some of his other cell mates objected to, and they turned the machine off at night when he was sleeping. Claimant also testified concerning an incident when he had run out of oxygen but was ordered not to leave his cell. This led to a disciplinary conviction.

DOC cannot be faulted for wanting to maintain security at all of its facilities. On the other hand, allowing other inmates to disrupt an individual's source of oxygen is unacceptable. Claimant did testify that his present cell mate is great and understanding. Previous individuals were not.

Claimant has received treatment that is a direct result of his disability. He has been subject to a disparity of treatment that would not have occurred if he did not have his mobility impairment. The Special Master determines that the conduct of DOC staff at SCF violated the ADA and Rehabilitation Act and that an accommodation was not provided to him in a timely and appropriate manner.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant stated clearly that he was and is terrified concerning his daily medical condition. That concern is legitimate. As Claimant testified, he would like to be back on the streets trying to take care of his own medical problems with the help of SSI and Medicaid, as he did before he was incarcerated in the Montana prison system.

Claimant would like to be released early. The Special Master does not have that authority based upon what has been presented. The Special Master determines that Claimant is entitled to receive $900.00 for the lack of an adequate handicapped cell and the non-nominal emotional injuries suffered by Claimant while at SCF.

IT IS HEREBY ORDERED that the claim of James Wayne is granted to the extent set forth above, as he has established by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant is to receive the sum of $900.00 for the damages that he has suffered while in DOC custody; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

---

[4] Claimant testified that he has been recommended for a transfer to Fort Lyon Correctional Facility. This facility houses a number of special needs inmates.

an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 5, 2005.**

SIGNED this *29th* day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

10

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 29th day of September, 2005 to the following:

Mr. James Wayne
#116560
SCF
P.O. Box 6000
Sterling, CO 90751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203