IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 92-cv-EWN-OES

JESSE (JESUS) MONTEZ, *et al.,*

Plaintiffs, as representatives of themselves and all others similarly situated in this class action,

        -vs-

BILL OWENS, *et al.,*

        Defendants.

---

Claim Number 05-001
Category V
Claimant: Kenneth G. Garcia, Jr.
Address of Claimant: P.O. Box 777, Canon City, CO 81215

---

Claim Number 05-002
Category V
Claimant: Mary Alonzo
Address of Claimant: 3110 Umatilla St., Denver, CO 80211

---

Claim Number 05-003
Category V
Claimant: Kenneth Alvin G. Jones, as brother of Nathan Jones
Address of Claimant: c/o H. Earl Moyer, Attorney at Law, 1401 Saulsbury Street,
        #204, Lakewood, CO 80214

---

Claim Number 05-004 (formerly 02-196)
Claimant: Elizabeth Serene, as mother of Rex Serene (Deceased)
Address of Claimant: 6413 Yank Court, #B, Arvada, CO 80004

---

Claim Number 05-005
Category V
Claimant: John E. Mossman, Sr., as father of Paul Mossman (Deceased)
Address of Claimant: c/o H. Earl Moyer, Attorney at Law, 1401 Saulsbury, #204,
        Lakewood, CO 80214

Claim Number 05-006
Category V
Claimant: Estate of Jessie Montez
Address of Claimant: c/o Paula Greisen, King & Greisen, Attorney at Law,
                     1670 York Street, Denver, CO 80206

Claim Number 05-008
Category V
Claimant: Clifford K. and Margarite M. Moore (as Father and Mother of Steven
           Richard Moore)
Address of Claimant: 101 Saturn Circle, Radcliff, KY 40160-2661

AND ALL SIMILARILY SITUATED CLAIMANTS.

**PLAINTIFF CLASS APPEAL OF ORDER OF SPECIAL MASTERS RE: CATEGORY V DAMAGES (DIRECTED TO JUDGE NOTTINGHAM)**

The Plaintiff Class hereby files this appeal of the "Order of Special Masters – Category V Damages"[1] denying certain damages to Class V claimants as follows:

**SUMMARY OF ARGUMENT**

On September 6, 2005, the Special Masters in this case entered an order denying certain types of damages to claimants under Class V, damages due to death, in the damage claim process outlined in the Remedial Plan.[2]  Exhibit A, Order of Special Masters, Category V Damages.  Specifically, the Special Masters limited the available damages in those cases to loss of earnings and expenses sustained by the claimants prior to their deaths.  The Special Masters based this conclusion on the following findings:

---

[1] The Order of Special Masters is Docket # 1083.
[2] See Paragraph XXXII, page 29.

2

1) that all Eighth Amendment claims under 42 U.S.C. §1983 had been dismissed by the Court prior to the approval of the settlement agreement, Exhibit A, page 7; 2) that pursuant to the recent decision in *Fitzgerald v. Corrections Corporation of America, Inc, et al.*, 403 F.3rd 1134 (10th Cir. 2005), the American with Disabilities Act (the "ADA") and the Rehabilitation Act ("Rehab Act") do not provide remedies for failure to accommodate medical needs, Exhibit A, page 8, and; 3) that the ADA and Rehab Act do not provide damages for pain and suffering, lost earnings after the date of death, or for punitive damages. Exhibit A, pages 9-10.  Plaintiffs contend that the Order of the Special Masters is based upon an erroneous interpretation of the law and Settlement Agreement.

The Remedial Plan provides that the claimants in each category are entitled to "any remedy otherwise available in a court of law."  Remedial Plan, Section XXXII. Plaintiffs contend that if category V claimants satisfy the four criteria established in this Court's November 23, 2004 Order, then they (their estates) are entitled to the full panoply of damages available to any other claimant, including pain and suffering, emotional distress, economic damages, punitive damages, attorneys' fees and costs.[3]

### ARGUMENT

**I. THE STANDARD OF REVIEW IS DE NOVO**

The Special Masters' resolution of this issue concerns conclusions of law and thus is reviewed under the de novo standard.  See Fed.R.Civ.P. 53; 9 James Wm. Moore et al., Moore's Federal Practice § 53.12[3][d][i][B] (3d ed. 1999).

---

[3] These are the types of damages recoverable in Section 1983 Eighth Amendment claims.

3

## II.  THE SPECIAL MASTERS ERRED IN FINDING ALL EIGHTH AMENDMENT CLAIMS WERE DISMISSED.

The initial premise for the limitations imposed on category V damages by the Special Masters is based on the assertion that all Eighth Amendment §1983 claims were dismissed from this case. Thus, according to the Special Masters, the damages allowed for Eighth Amendment claims are not recoverable in the damage claim process. This finding is in error.

Although it is correct that certain Eighth Amendment claims were previously dismissed by this Court, not <u>all</u> Eighth Amendment claims were dismissed. The Special Masters have misread this Court's prior rulings in *Montez v. Romer*, 32 F.Supp.2d 1235 (D.Colo. 1999) in which some, but not all of the Eighth Amendment claims were dismissed. Even the Defendants concede that the Special Masters are "not entirely accurate" by asserting that all Eighth Amendment claims were dismissed. Exhibit B, Defendants' Response to Plaintiff Class Appeal Regarding Availability of Damages for Denial of Medical Care, page 11 (Docket # 1107). Specifically, the Defendants have conceded:

> [T]he Court did not dismiss a narrow category of Section 1983 claims against the individual defendants in their individual capacities based on the Eighth Amendment. The statement in the Nov. 23 Order stating the narrow circumstances under which an Eighth Amendment claim can be considered reflects that ruling.

Exhibit B, supra.

Plaintiffs agree with this statement and agree that all claimants must satisfy the four criteria outlined in the Court's November 23, 2004 Order in order to recover damages.

When it is shown that a class member who satisfies the four criteria died as a result of the discrimination by the Defendant, it is at its core an Eighth Amendment claim

and the claimant is entitled to "any damages otherwise available in a court of law" pursuant to the Remedial Plan. Those damages are all damages allowed by 42 U.S.C. §1983.

Damages Available For Section 1983 Eighth Amendment Violations Resulting in Death

The Honorable Judge Kane addressed the issue of the remedies available in a Section 1983 case in which death results in *Sager v. Woodland Park*, 543 F. Supp. 282 (D. Colo. 1982). In that case, the Court held*:*

> In recognition of the seriousness of constitutional injuries redressed under §1983, federal courts have employed a full panoply of damage categories. Damages available in appropriate §1983 actions may include mental and emotional damages, punitive or exemplary damages, pecuniary damages and in some cases even presumed or inferred damages. …. I can not (sic) perceive any reason why courts would restrict these damages in situations where constitutional injuries are the most pernicious-when death results. If anything, courts should be alert to expand available damage remedies to deter, punish and compensate for such egregious violations. *Accordingly, I conclude that the proper interpretation of §1983 requires that the damage categories generally available in §1983 actions, be available in situations where constitutional violations result in death. Id*. at 294 (emphasis added).

Several years later, in *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1989)*,* the Tenth Circuit affirmed this sentiment and stated:

> We believe appropriate compensatory damages would include medical and burial expenses, pain and suffering before death, loss of earning based upon the probable duration of the victim's life had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions.

*Id.* at 1507.

Thus, when it is shown that the conduct of the Defendants caused the death of the class member, the full panoply of §1983 damages may be awarded.

5

**III.     Legal Precedent Subsequent to the Settlement of this Case Does Not Apply to the Damage Claim Process.**

The next premise for the Order of the Special Master is that claimants cannot assert that the Defendants failed to accommodate their medical needs under the ADA or Rehab Act because such claims are precluded by the recent decision in *Fitzgerald v. Corrections Corporation of America, Inc, et al.. al*., 403 F.3rd 1134 (10th Cir. 2005). This issue has been previously briefed by the Plaintiffs in "Plaintiff Class Appeal Regarding The Availability Of Damages For Denial Of Medical Care" on September 7, 2005 (Docket # 1000) and the arguments in that brief were incorporated herein.  For the reasons stated in that brief, Plaintiff assert that *Fitzgerald* has no application to this case and cannot bar the individual claims that the Defendants failed to accommodate their medical needs.  To allow the Defendants to assert legal defenses that arose after the settlement agreement entered in this case would eradicate the intent of the parties in reaching the settlement.  *See Moses-Ecco Company, Inc. v. Roscoe-Ajax Corp.,* 320 F.2d 685, 690 (D.C. Cir. 1963)(A settlement agreement made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty.)

**IV.     Class V Claimants Are Entitled to the Full Panoply of Remedies Allowed Under Federal Law.**

Even assuming *arguendo* that the Court concludes that recovery under the Eighth Amendment is not available, in this case, where Class V claimants died as a result of the Defendants' conduct, the full panoply of federal common law remedies should be available.

6

In finding that the Colorado survival statute limited the remedies available to the claimants under the ADA and Rehab Act, the Special Masters relied on *Rosenblum v. Colorado Department of Health*, 878 F.Supp. 1404 (D.Colo. 1994).  This reliance is misplaced.

*Rosenblum* involved an employee with diabetes who was terminated from her job.  The plaintiff-employee then sued her employer for failure to accommodate her disability under the ADA.  After the instigation of the suit, the plaintiff-employee died and the personal representative of her estate was substituted as the plaintiff.  <u>There were no allegations that the death of the plaintiff was in any way caused by the actions of the employer</u>.  The Defendant argued that the estate could not recover damages for pain and suffering, or prospective earnings after the date of her death.

In deciding this issue, the *Rosenblum* Court first noted that the ADA is silent on the issue of the survival of actions.  Thus, the issue would be governed by 42 U.S.C. § 1988 which provides that the court must look to state law, "provided that it is 'not inconsistent with the Constitution and the laws of the United States.'"  *Id*. at 1408-9 (citations omitted).  In analyzing the facts in that case, the Court held that it would apply Colorado survivorship laws that limit damages to loss of earnings and expenses prior to death because, according to the Court, to do so was "not necessarily inconsistent with the policies underlying the ADA – namely deterrence and victim compensation."  *Id*. at 1409.

The issue here, however, is significantly different than in *Rosenblum*.  This is a prison conditions case where Class V claimants are alleging that the illegal actions of the Defendants were the cause of their deaths.[4]  Where the illegal government conduct

---

[4] The Special Masters noted that, to date, eight claims have been assigned to category V and seven of those claims allege that the Defendants caused the death of the class member.  Plaintiffs contend that the *Sager*

7

actually results in the death of the victim, it would contradict the purposes of the federal laws to apply severe state law damage restrictions.

The analysis in *Sager*, *supra* should be applied here to reject state law damage restrictions to survival claims under the ADA or Rehab Act.[5] In refusing to apply state damage limitations to limit recovery in death cases, the *Sager* Court first referred to the Seventh Circuit's analysis in *Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978) in which the Court also rejected state damage limitations, stating:

> It would be anomalous as well as ironic to hold that [the victim] could have sought redress for violation of his constitutional rights had he survived the alleged wrongdoing, but because the wrongdoing caused his death, the law is impotent to provide a remedy for his estate. Such a holding would not only fail to effectuate the policy of allowing complete vindication of constitutional rights, it would subvert that policy. . . . *Allowing recovery for injury but denying relief for the ultimate injury – death-would mean that it would be more advantageous for a tortfeasor to kill rather than to injure. Surely this cannot be the intent of the law. Id.* at 674 (emphasis added).

The United States Supreme Court affirmed the above reasoning in *Carlson v. Green*, 446 U.S. 14 (1980), finding that restrictive state damage limitations should be disregarded in order to implement the deterrence goals of the federal law when the government conduct at issue causes death.

The *Sager* Court went on to conclude that applying Colorado damage restrictions would undermine the compensation rationale of the federal laws by precluding recovery by the survivors and, importantly, would undermine the deterrence goals of the federal laws. Finding the state laws "inconsistent" with the federal laws under Section 1988, the Court refused to apply the state damage limitations.

---

analysis should apply in prison conditions cases even when defendants' conduct is not the cause of death. Otherwise, application of Colorado law would not provide any remedy for violations of these federal laws.
[5] Both the Rehab Act and the ADA are silent on the issue of survival of claims and thus Section 1988 analysis applies.

Just as in *Sager*, application of the state damage restrictions in this case would completely thwart the compensation and deterrence goals underlying the ADA and the Rehab Act. Application of the state survival statute would limit recovery to loss of earnings and expenses sustained by the claimants prior to their deaths. See C.R.S. Section 13-20-101(1). In a prison conditions case, such a limitation would essentially mean that there would be no recovery for victims who suffered the most from the discriminatory conduct. Such as result would be exactly what the Court in *Green* warned of when it said: "Allowing recovery for injury but denying relief for the ultimate injury –death- would mean that it would be more advantageous for a tortfeasor to kill rather than to injure. Surely this cannot be the intent of the law." *Green, supra*, 581 F.2d at 674.

Accordingly, because application of the state law damage restrictions would be inconsistent with the compensation and deterrence purposes underlying the ADA and Rehab Act, they should not be applied to limit damages to the Category V claimants in this case.

## IV. DENYING DAMAGES TO CLASS V CLAIMANTS VIOLATES THE INTENT OF THE SETTLEMENT AGREEMENT.

The Remedial Plan in this case provides a comprehensive damage claim process in which claims are categorized into one of five categories. In pertinent part, the Remedial Plan provides:

> Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information

9

> desired to be submitted that is relevant to his/her claim of damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
>
> II. Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;
>
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
>
> IV. Damages due to severe physical injuries; and
>
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.
>
> Class members with damages allocated under categories 1 and 2 shall not be entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3, 4 & 5 shall be entitled to a hearing before the Special Master.[6]

It is clear that the Remedial Plan contemplated that there would be damages available for each of the five categories. It is also clear that special consideration would be given to the most serious injuries, Categories 3, 4, and 5, as those claimants would receive hearings on their claims. In addition, the fact that a claimant was assigned to one category does not preclude recovery for less severe injuries.

As stated above, application of the state law damage restrictions to Class V claimants in this case would mean that there would be essentially no damage awards for

---

[6] Remedial Plan, Paragraph XXXII, pp. 28-29.

10

that category – a result clearly not contemplated by the settlement agreement.  If that had been the intended result, there would have been no reason to include that category of damages in the settlement.  The damage claim process was not intended to be a battleground for arguing new defenses to escape compensation of the class members.  The Remedial Plan clearly contemplates that Class V victims be compensated and Plaintiffs request that the intent of that agreement be enforced.

## CONCLUSION

For the reasons stated above, Plaintiffs request that this Court reverse the Order of the Special Masters that applies the state law damage restrictions on Class V damages.

RESPECTFULLY SUBMITTED on this 17th day of October, 2005.

KING & GREISEN, LLP

*/s Paula Greisen*
Paula D. Greisen
1670 York Street
Denver, CO  80206
(303) 298-9878
(303) 298-9879 (fax)
greisen@kinggreisen.com

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October 2005, I served the foregoing, **PLAINTIFF CLASS APPEAL OF ORDER OF SPECIAL MASTERS RE: CATEGORY V DAMAGES (DIRECTED TO JUDGE NOTTINGHAM)** via electronic mail to:

James Quinn, Esq.
Jess Dance, Esq.
Elizabeth H. McCann, Esq.
Assistant Attorney General
1525 Sherman Street, 5th Floor
Denver, Colorado   80203
James.Quinn@state.co.us
jess.dance@state.co.us
beth.mccann@state.co.us

Hon. Richard M. Borchers
Legal Resolution Center
7907 Zenobia Street
Westminster, CO  80030
dborchers@legalres.com

Kenneth G. Garcia, Jr.
Post Office Box 777
Canon City, CO 81215

Mary Alonzo
3110 Umatilla Street
Denver, CO 80211

Kenneth Alvin G. Jones, as
Brother of Nathan Jones
c/o H. Earl Moyer, Esq.
1401 Saulsbury Street, $204
Lakewood, CO 80214

Elizabeth Serene, as Mother of
Rex Serene, Deceased
6413 Yank Court, #B
Arvada, CO 80004

12

John E. Mossman, Sr., as Father of
Paul Mossman, Deceased
c/o H. Earl Moyer, Esq.
1401 Saulsbury, #204
Lakewood, CO 80214

Clifford K. and Margarite M. Moore, as Father
& Mother of Steven Richard Moore
101 Saturn Circle
Radcliff, KY 40160-2661

/s/ Catherine E. Hoskins