IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92 cv 870 - EWN-OES

JESSE (JESUS) MONTEZ, *et. al.*

Plaintiffs,

v.

BILL OWENS, *et al.,*

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF CLASS APPEAL REGARDING AVAILABILITY OF DAMAGES FOR DENIAL OF MEDICAL CARE (DIRECTED TO JUDGE NOTTINGHAM)**

---

Defendants, through counsel, Elizabeth H. McCann and James X. Quinn, of the Colorado Attorney General's office, submit the following Answer to the Plaintiff Class Appeal Regarding the Availability of Damages for Denial of Medical Care filed by Plaintiffs' Class Counsel on behalf of Joseph Lovato, Joe Eubanks and all "similarly situated claimants." (Docket # 1065)

**I. PLAINTIFFS' CLASS COUNSEL ONLY REPRESENT CERTAIN INDIVIDUAL INMATES IN THEIR CLAIMS FOR DAMAGES**

Plaintiffs' Class Counsel have filed an appeal on behalf of two inmates, Joseph Lovato and Joe Eubanks, and "all other similarly situated claimants." Defendants note that Plaintiffs' Class Counsel do not represent any claimants in their damages claims other than those for whom they have entered an appearance. In Section XXXII. Damages, the Remedial Plan states that "Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any

individual with respect to their individual damage claims." Class Counsel has entered an appearance in the claims of about 10-12 inmates. They did not represent Mr. Eubanks nor Mr. Lovato at their hearings in front of the Special Masters and have not filed entries of appearance on their behalf.

The bases for individual damages claims are very specific with regard to the circumstances of an individual inmate. The Special Masters are considering each claim carefully and issuing decisions based on the specific facts of the inmate's situation. In fact, one of the inmates on whose behalf the Plaintiff Class Counsel filed an appeal, Joe Eubanks, filed his own appeal without benefit of Counsel on August 18, 2005. (Objection to Final Order of Special Master: Hearing Date July 25, 2005, Docket # 1045, attached hereto as Exhibit A). He recently supplemented this appeal on Sept. 19, 2005 (Docket #1103, attached hereto as Exhibit B).

Defendants object to Plaintiffs' Class Counsel filing an appeal as to any inmate for whom they have not entered an appearance. Defendants object to Class Counsel filing an appeal as to other inmates "similarly situated." There are no other inmates similarly situated which is why the Special Masters are considering each damage claim individually. Defendants recognize that the issues that Plaintiffs' Class Counsel raise may impact more than one inmate's claim for damages; however, they should be considered only in the context of the claims that have been appealed.

## II. PLAINTIFF CLASS COUNSEL MISSTATES THE UNDERLYING REASONS FOR THE SPECIAL MASTERS' DECISIONS DENYING MEDICAL MALPRACTICE CLAIMS

The premise on which Plaintiffs' Class Counsel appeal is based is wrong. Class Counsel argue that the Special Masters have based the orders in the cases in question on assertions that 1) Fitzgerald v. Corrections Corporation of America, 403 F.3d 1134 (10th Circuit 2005) bars

2

recovery of damages for failure to provide medical care under the Americans with Disabilities Act or the Rehabilitation Act; and 2) that all Eighth Amendment claims were dismissed by Judge Nottingham prior to approval of the settlement agreement.

The fact of the matter is that the Special Masters have been evaluating the claims of all inmates by considering the four criteria that were outlined in the Court's November 23rd order which was issued after a hearing on Oct. 23, 2004 and was based on the Remedial Plan. The Court directed the Special Masters to address the following questions in considering the damage claims:

1. Is the claimant a disabled individual who is a member of the class?

2. Was the claimant otherwise qualified to participate in the programs or receive the benefits and services offered by DOC (Department of Corrections)?

3. Was the claimant discriminated against by DOC because of his or her disability?

4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy? (Order Nov. 23, paragraph 2)

In the Order of the Special Master in the Eubanks case, Docket No. #1036, (attached hereto as Exhibit C), the Special Master denied the claim for damages, not because of Fitzgerald or dismissal of Eighth Amendment claims, but because the claimant did not meet the criteria of the Remedial Plan and the Nov. 23 Order. The Special Master specifically found that claimant was not a disabled member of the class because he was able to walk and there was no evidence that he met the requirement of having a limitation on a major life activity. The Special Master concluded: "Claimant has not met the standard required by the Settlement Agreement. As a result, he cannot pursue his claim." (Order, Exhibit C, p. 6).

In the Order, the Special Master did not reach the other three criteria because claimant had not satisfied the first requirement of the Court's Order so as to come within the parameters of the plan. He was not disabled because he did not have a permanent disability that substantially limited his ability to perform a major life activity.

Interestingly enough, Mr. Eubanks himself understood the Court's order and has appealed it based on his own articulate arguments as to why his condition does limit his ability to perform a major life activity and why he should be considered disabled within the parameters of the criteria. (Appeal, attached hereto as Exhibit A and Supplement, attached as Exhibit B.) One has to wonder, if Mr. Eubanks could understand the basis of the Special Masters's order, why Class Counsel could not. At any rate, the Fitzgerald case and the Eighth Amendment had nothing to do with the reason the Special Master dismissed the claim.

In the other case being appealed by Plaintiff Class Counsel, concerning Mr. Lobato, (Final Order, attached hereto as Exhibit D), there was also no denial of his claim based on Fitzgerald or the Eighth Amendment. In fact, Mr. Lobato won his hearing and received an award of $500. The Special Master found that he was a disabled member of the class with permanent mobility impairment. The Special Master then found that Defendants failed to provide reasonable accommodation for Claimant's mobility disability in connection with his use of the shower and that this caused injury to the Claimant.

The Special Master did mention Fitzgerald and noted that medical malpractice claims are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan, but there was no indication that the Special Master found that any of Mr. Lobato's medical claims were because of discrimination based on his disability.

4

The other specific order mentioned in the Plaintiffs' Class Counsel appeal, that of Johnnie Ramirez, (although they did not appeal on his behalf) also does not support their position. In the Order issued by the Special Master, (attached hereto as Exhibit E), the Special Master found that Mr. Ramirez met the criteria of the Nov. 23 Order because he is a diabetic who is dependent on insulin and needs accessible housing. The Master further found that with one minor exception, the claimant was not discriminated against by DOC. The only discrimination was that he was not provided with insulin for a short period of time when he was transferred from one facility to another. The Master found no other discrimination based on his disability. The Master concluded that the failure to provide insulin was denial of access to health care because of the disability - not medical malpractice. The Master awarded him $100 for the time period when he was not provided with insulin.

Thus, while the Special Masters mentioned <u>Fitzgerald</u> in these decisions, they did not rely on <u>Fitzgerald</u> in determining whether or not the claimant was entitled to damages. They also did not deny the claims based on a misunderstanding of the status of Eighth Amendment claims. They appropriately considered the four criteria established as the basis for damages awards as outlined in this Court's previous order of Nov. 23, 2004 and the Remedial Plan.

In their appeal of these two orders, Plaintiffs' Class Counsel never mention nor address the four relevent criteria from the Nov. 23 Order. An Appellant bears the burden of showing that the Special Master abused his discretion in applying the four criteria announced in the Nov. 23 Order. As there is no allegation, let alone persuasive argument, that the Special Master incorrectly analyzed the four required criteria as to Eubanks or Lovato, the appeals must fail.

### III. MEDICAL MALPRACTICE CLAIMS WERE NEVER CONTEMPLATED BY THE REMEDIAL PLAN NOR THE CLASS CERTIFICATION

This is a class action brought pursuant to the Americans with Disabilities Act and the Rehabilitation Act to seek compliance by the Dept. of Corrections with these acts and to ensure that inmates are not being discriminated based on their disabilities. Plaintiffs' Class Counsel are trying to turn the individual damage claims into individual full blown tort medical malpractice claims under the Eighth Amendment. That is not what this cases concerns. The criteria that were outlined in the Court's Nov. 23 Order for individual claims clearly require that in order to recover, an inmate must show that he or she comes within the definition of disabled individual, that he or she is otherwise qualified for a benefit or program, **that he or she has been discriminated against by DOC because of his or her disability,** and that the discrimination has caused compensable harm.

This is precisely the analysis the Special Masters are using in reviewing over 1200 claims. An inmate cannot collect a damage award unless he or she proves that he or she was discriminated against **because** of his or her disability. Whether the medical care he or she received was within the medical standard of care is not part of this analysis. The proper inquiry is whether or not he or she was denied access to medical care or a program or service because of a disability. For example, if an inmate is prescribed a different medication than he or she believes is needed, or if he or she has complications from a surgical procedure and believes that the procedure was not done correctly, these are medical malpractice claims that can be raised in a separate lawsuit. If, however, the medicine-dispensing window is placed too high for a wheelchair bound inmate to reach, or if the infirmary is not accessible to a disabled inmate, and

6

the inmate can show that this resulted in harm based on his or her disability, that is a cognizable claim pursuant to the Court's order and the Remedial Plan.

The Special Masters have been awarding damages in cases where an inmate is disabled, and the DOC has not made reasonable accommodations based on the disability. For example, the Masters have awarded damages when DOC has not assigned a mobility impaired inmate to a lower bunk, or has not provided shower bars, or has not provided a pusher for an inmate in a wheelchair. DOC has been ordered to provide a sophisticated artificial leg to an inmate who is disabled and to compensate two inmates who were denied soft shoes, one of whom had gout and one of whom had diabetes. DOC has been required to pay money to an inmate who missed several classes because DOC did not provide him with a lower bunk. Compensation has been ordered for diabetic inmates who were not given insulin when they were transferred to another facility because they were denied access to health care.

These are appropriate claims to be considered by the Special Masters. Claims that a doctor or staff member was negligent and did not provide appropriate medical care, or that the inmate did not get the medical care he or she felt was necessary are not claims of discrimination based on a disability.

This Court understood this distinction during the hearing held in this matter on October 27th, 2004 before this Court and Judge Kane. After discussion of who would make the initial determination as to whether someone was a member of the class, the Court stated as follows:

> Judge Nottingham: Because my sense is the same as yours, we're getting a lot of people who have medical needs of one sort or another, and they may think they have a claim under the Eighth Amendment, but they think they can short-circuit the liability part of that by sliding in as members of this class and get damages for their

condition. Transcript, Oct. 27 hearing, p. 16, lines 18-23, attached hereto as Exhibits F-1, F-2, F-3, and F-4 (The entire transcript is attached to allow the Court to review the quotes in context. It is submitted as four exhibits because of the limitations of the Attorney General's office scanning equipment.)

In addition, in discussing Eighth Amendment claims during that hearing, counsel for Defendants was very clear that Eighth Amendment medical malpractice claims were not envisioned by the Settlement Agreement:

> Ms. McCann: We do not believe that those strict medical malpractice claims are what were contemplated in his agreement. We -- those are the kinds of claims that are subject to defenses such as individual responsibility, individual personal responsibility, deliberate indifference, qualified immunity. . . That is not what we contemplated when we agreed or -- made this agreement. . . For example, anyone with a medical condition can say, I wasn't treated adequately by the doctor at DOC. It's not based on the disability. It's not because the person has diabetes that they weren't treated adequately. It's because of negligence by the doctor, if you believe them. So to --
>
> Judge Nottingham: I'm sorry to interrupt. But isn't that subsumed in the process that you have evidently agreed to, and that's the one noted at page 5 of Ms. Greisen's recent submission, they have to have -- they have to prove they have a disability within the meaning of the case. That ought to weed out the medical malpractice cases if that's determined.
>
> Ms. McCann: It --
>
> Judge Nottingham: Then they have to prove that they've
>
> Ms. McCann: - - been discriminated against.
>
> Judge Nottingham: been discriminated against because of that.
> Transcript, p. 25, l. 8-25, and p. 26, l. 4-15 (Exhibit F-2)

The Court was absolutely correct and that is precisely what the Special Masters are doing in these cases. The Masters have been following this Court's Nov. 23 Counsel in proposed orders and outlined in the Nov. 23 Order.

The Court went on to state during the hearing:

8

Judge Nottingham: Both sides seem to have a procedure in mind which if applied, and if applied correctly, will weed out what you've characterized as the medical malpractice claims or the Eighth Amendment claims, because these are - - these are disability claims, not Eighth Amendment claims.  Transcript, p. 28. l. 8-12 (Exhibit F-2)

In a later exchange, the Court made this even clearer:

Judge Nottingham: And therefore to be a member of the class, they have to prove they have a disability. That's not an Eighth Amendment claim, at least the way I think about it -- it may be an Eighth Amendment claim, because they are disabled, they may be getting deliberately indifferent treatment. But an Eighth Amendment claim standing alone without a -- proof of a disability does not make them members of the class, and they're going to have to file a separate action. Transcript, p. 29, l. 14-21 (Exhibit F-3)

A further discussion then took place:

Judge Nottingham: But there is more to being disabled than that, Ms. Greisen. You have to have diabetes, you have to make a showing that it -- it affects one of your major life activities.

Ms. Greisen: Sure.

Judge Nottingham: And you have to make some additional showings. And what I 'm seeing in some of these things -- and I 'm using diabetes as an example -- is somebody saying, I've got diabetes, and I'm not getting my medication.

Ms. Greisen: Sure

Judge Nottingham: That's not enough.

Transcript  p. 31, lines 11- 21 (Exhibit F-3)

The Court addressed this issue once again during the October 27 hearing:

Judge Nottingham: . . . But if you're correct that a lot of the -- and I tend to agree with you, from what I've seen, that there are many people who have a claim that is an Eighth Amendment claim but not a disability act claim. Transcript p. 35 lines 4-7. (Exhibit F-3)

Yet again:

Judge Nottingham: Well, that's a different issue. I don't think there are any Eighth Amendment claims in here. There are claims under the -- this has been -- the class was a class of disabled people; it was not a class of people that had Eighth Amendment claims

9

> . . . But I don't think this is an Eighth Amendment case, the way you've structured it. Now, you say at the time it was certified, it was an Eighth Amendment case. And I agree with that; it was. There - you know, very little had been decided substantively when the case was certified. But the way the settlement was structured, it - - you know, every prisoner has an Eighth Amendment case. I've got cases independent of this one where they're presenting Eighth Amendment claims. If they could all come into the class, we'd have a great mess here.     Transcript, p. 41, lines 13-15, p. 42 line 1-6. (Exhibit F-3)

It is our position that this Court clearly understood the distinction between a claim brought based on discrimination under the ADA or the Rehabilitation Act (or even the Eighth Amendment) and a claim brought for inadequate medical treatment as an Eighth Amendment medical malpractice claim. It is clear that Plaintiffs' Class Counsel understood the distinction when entering into the settlement and agreeing to the criteria for evaluation of claims at the October 27 hearing.

Both counsel submitted proposed orders following this hearing and both this Court and Judge Kane chose portions of the proposed orders and incorporated them into the Nov. 23 Order. That Order governs the handling of individual damage claims. That order makes it very clear that the matters to be considered by the Special Masters are the four questions outlined earlier.

The Order addresses Eighth Amendment claims specifically and confirms that such claims are not to be considered unless the claimants meet the four criteria:

> 5. Unless they meet the criteria established in paragraph #1 [*sic*., paragraph #2], individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan. Nov. 23 Order, p. 2

This is the way in which the Special Masters are considering the claims, and this is the way they analyzed the claims in the appeals being considered herein.

Special Master Borchers frequently includes the following statement in his orders: "All Eighth Amendment claims were dismissed by Judge Nottingham prior to approval of the

10

Settlement Agreement." Defense counsel agree with Plaintiffs" Class Counsel that this statement is not entirely accurate. This Court dismissed most of the Section 1983 claims in <u>Montez v. Romer et. al</u>. 32 F. Supp.2d 1235 (D. Colo. 1999). The Court dismissed all Section 1983 claims against the individual defendants in their individual capacities based on the ADA and the Rehab Act and all Section 1983 damage claims against the individual defendants in their official capacities. However, the Court did not dismiss a narrow category of Section 1983 claims against the individual defendants in their individual capacities based on the Eighth Amendment. The statement in the Nov. 23 Order stating the narrow circumstances under which an Eighth Amendment claim can be considered reflects that ruling.

The point, though, is that while Judge Borchers includes this statement in his orders, it is not the basis on which he denies recovery when he does. The denial of a claim is based on the analysis of whether the claimant meets the four criteria as demonstrated in the two orders under consideration here. Thus, while the statement is in the orders, it is irrelevant to the conclusion.

### IV. THE <u>FITZGERALD</u> CASE, <u>SUPRA</u>, DOES APPLY TO THE INDIVIDUAL CLAIMS, BUT IT IS NOT NECESSARY TO THE CONCLUSIONS OF THE SPECIAL MASTERS REGARDING THE CRITERIA ADOPTED BY THE COURT IN THE NOV. 23 ORDER

Plaintiffs raise the applicability of <u>Fitzgerald v. Corrections Corp. of America</u>, 403 F.3d 1134 (10th Cir. 2005) to the damages claims. In the <u>Fitzgerald</u> case, the 10th Circuit concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical malpractice. The Court held that purely medical decisions do not ordinarily fall within the scope of the ADA or the Rehabilitation Act and that medical malpractice claims were properly rejected. The facts are similar to some claims made in this case. In <u>Fitzgerald,</u> an inmate broke

his hip while incarcerated and claimed that the fall was because he had a diabetes related seizure because the prison authorities were not adequately treating his diabetes and did not provide him with a wheelchair. He also alleged that he never received treatment for the broken hip.

The Tenth Circuit noted that to recover under either the ADA or the Rehabilitation Act, the plaintiff must show that he is "otherwise qualified" for a benefit and that he was denied the benefit solely because of his disability:

> Further, we have held that the "the term otherwise qualified cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning' "[citation omitted]. Id at 8.

The Tenth Circuit cited with approval decisions from the Seventh Circuit that concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical malpractice. The Court noted that the plaintiff would not be otherwise qualified for treatment in the absence of his alleged disability. "These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act." Id at 8.  Thus the Court rejected the plaintiff's claims against an individual doctor under the ADA and Rehabilitation Act.

The Fitzgerald case has been cited by both Special Masters in their damages orders. It is the Defendants' position that Fitzgerald clearly does apply as it is directly on point with respect to a claimant's ability to recover damages for claims based on medical malpractice under the ADA and the Rehabilitation Act. This Court is bound by applicable Tenth Circuit law. This Court's Nov. 23 order specifically says: "The Remedial Plan and, if necessary, **case law** concerning disabilities under the Rehabilitation Act and the Americans with Disabilities Act may be reviewed for assistance in applying the criteria." (Nov. 23 Order, p. 3, Emphasis added).

Ms. Greisen herself acknowledged that applicable law would be considered in evaluating damages claims. The following exchange occurred during the Oct. 23 hearing (over a year after the Remedial Plan had been signed and approved by the Court):

Judge Nottingham: To decide whether somebody has a disability, does the Special Master, and ultimately Judge Kane, if that's who it goes to, look to the body of law developed under the ADA?

Ms. Greisen: I think that's appropriate.

Transcript, p. 7, lines 9-13 (Exhibit F-1))

Plaintiffs' Class Counsel argues that the Remedial Plan is a contract and any law developed after the date of the contract cannot be relied on by the Special Masters. That position is inconsistent with the terms of the agreement itself and Ms. Greisen's statement above. Further, there was case law at the time the agreement was signed that established that the ADA and Rehabilitation Act did not encompass medical malpractice Eighth Amendment claims. The Court in Fitzgerald quoted two Seventh Circuit cases that were decided before the Remedial Plan was signed: Bryant v. Madigan, 84 F.3d 246 (7th Cir. 1996) ("Moreover, the Courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishment clause into a medical malpractice statute for prisoners. We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the ADA." Id. at 17) and Grzan v. Charter Hospital of Northwest Indiana, 104 F.3d 116 (7th Cir. 1997).

The case relied on by Plaintiffs' Class Counsel, Jeff D. v. Andrus, 899 F.2d 753 (9th Cir.1990), did not address the question of the applicability of law decided after a settlement agreement has been completed. The case states that in considering a settlement agreement, the Court may look at the intent of the parties as shown through conduct, language and surrounding

13

circumstances. Such an analysis supports the conclusion that applicable law concerning the ADA and Rehabilitation Act are to be considered by the Special Masters.

The reasoning of the Seventh and Tenth Circuits is consistent with this Court's understanding and comments during the Oct. 27th hearing. This Court anticipated the ruling in the Fitzgerald case. The ADA and Rehabilitation Act were not passed to allow medical malpractice claimants to bring their claims in the context of these two acts. The acts were passed to prevent discrimination against disabled individuals precisely because of their disabilities.

While we agree with the conclusion of the Special Masters that Fitzgerald bars malpractice claims under the ADA and Rehabilitation Act in this case, it is also our position that from a practical point of view, the Special Masters are relying on the Nov. 23rd criteria to determine if a claimant has stated a claim. In this case, the only medical claims that can be considered must meet the four criteria outlined in the Nov. 23 Order. Whether the claims are brought pursuant to the ADA, the Rehabilitation Act, or the Eighth Amendment pursuant to Section 1983, there is no compensable injury unless the claimant can show that he is qualified member of the class, that he is otherwise qualified for services, benefits, or programs, that he was discriminated against **because of his disability**, and that the discrimination resulted in harm. Pursuant to these criteria, an inmate is not discriminated against because of a disability when he or she doesn't get the best medical care or even if he or she doesn't get adequate medical care. Those claims do not fall within the purview of the class, the Remedial Plan, or this court's previous orders.

## CONCLUSION

This class action was brought on behalf of disabled inmates who allege discrimination against them by DOC because of their disabilities. They allege that they have suffered damages as a result of discrimination based on their disabilities. If they can prove these criteria at a hearing or through their written materials, they are entitled to monetary compensation. The Special Masters have been appropriately and thoroughly conducting hearings, reading documents, and analyzing the claims based on this Court's Order of Nov. 23, 2004 and the Remedial Plan. They have been denying some claims and granting some claims based on the criteria as ordered by this Court.

Plaintiffs' Class Counsel has failed to show in either of the two appeals being considered herein or any of the decisions of the Special Masters that they have not applied the criteria and the Plan correctly. This is not a medical malpractice lawsuit. Those claims may be brought separately. This case is a disability discrimination case and this Court should reiterate that fact in denying the appeals.

Respectfully submitted this 21 day of September 2005.

        JOHN SUTHERS
        Attorney General

        s/Elizabeth H. McCann
        ELIZABETH H. MCCANN 5834
        Deputy Attorney General
        Civil Litigation and Employment Law Section
        JAMES X. QUINN, 21729*
        Assistant Attorney General
        Corrections Unit, Litigation Section

Attorneys for Defendants

1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone:  (303) 866-3261
Fax: (303) 866-5443
Email: beth.mccann@state.co.us

### CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that on the 21st day of September, 2005, I electronically filed the foregoing  Defendants' Answer to Plaintiffs' Class Counsel Appeal Regarding Availability of Damages for Denial of Medical Care with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Paula Greisen | Honorable Richard M. Borchers |
| David Miller | dborchers@legalres.com |
| miller@kinggreisen.com | Special Master |
| greisen@kinggreisen.com | Legal Resolution Center |
| Counsel for the class | 707 Zenobia St. |
| King and Greisen, LLP | Westminster, Colorado 80030 |
| 1670 York St. | |
| Denver, Co. 80206 | |

s/Elizabeth H. McCann
Elizabeth H. McCann
Attorney for Defendants
Colorado Attorney General's Office
1525 Sherman St.
Denver, Co. 80203
303-866-3261
Fax: 303-866-5443
beth.mccann@state.co.us