IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFF CLASS APPEAL REGARDING CATEGORY V DAMAGES (DIRECTED TO JUDGE NOTTINGHAM)**

---

Defendants, through the Colorado Attorney General, respectfully submit the following "Response to Plaintiff Class Appeal Regarding Category V Damages."

### STATEMENT OF FACTS

This class action began as a suit against the Governor, the Colorado Department of Corrections ("CDOC"), CDOC's Executive Director, and several prison officials for alleged violations of (1) the Rehabilitation Act, 29 U.S.C. § 794 ("Rehab Act"), (2) the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and (3) 42 U.S.C. § 1983 for alleged violations of the Rehab Act, the ADA, and the Eighth and Fourteenth Amendments.  (Second Amended Complaint – Class Action, ¶ 2, filed 1/24/1996).  All individuals were sued in their individual and official capacities.

After extensive briefing, this Court dismissed Plaintiffs' Rehab Act and ADA claims against individual Defendants in their individual capacities.  The Court also dismissed all § 1983 claims (related to the ADA, Rehab Act, and Eighth Amendment)

against the Defendants in their official capacities.[1]  Finally, the § 1983 claims based on

the Rehab Act and the ADA were dismissed against individual Defendants in their

individual capacities due to qualified immunity.  Montez v. Romer, 32 F.Supp.2d 1235,

1243 (D. Colo. 1999).  After the 1999 order, the only remaining claims for damages were

against the state and CDOC under the ADA and/or Rehab Act, and against the

individually named Defendants in their individual capacity for alleged violations of the

Eighth Amendment.

The parties settled the underlying lawsuit by entering into the Remedial Plan on

August 27, 2003.  Section XXXII of the Remedial Plan allows individual class members

to file claims for damages.  Claimants are assigned to one of five categories.  Category V

is reserved for inmates who allegedly died as a result of discrimination based on the

inmate's disability.

In Spring 2005, Plaintiffs' class counsel asked the Special Masters what damages

were available for successful Category V claims.  Following briefing by both sides, the

Special Masters issued an order on August 31, 2005, regarding available Category V

damages. (See Order of Special Masters, Category V Damages, attached as Exhibit A).

The Special Masters determined that the available damages are those allowed by the

ADA and Rehab Act and not limited by Colorado's survivorship statute.  Because the

damages are not allowed by the ADA, Rehab Act, or Colorado law, the Special Masters

held that Category V claimants cannot obtain punitive damages, damages for pain and

---

[1] No § 1983 claim was asserted, nor could it have been, against the state or the CDOC.
Accordingly, the § 1983 claim was only asserted against the individuals named in the
"Second Amended Complaint – Class Action."

suffering, lost earnings after the date of the claimant's death, or damages otherwise

available under 42 U.S.C. § 1983. (Id. at p. 9-10).

**ARGUMENT**

**I.      UNDER THE ADA, REHAB ACT, AND COLORADO LAW,
CATEGORY V CLAIMANTS CAN ONLY RECOVER
COMPENSATORY DAMAGES FOR LOSS OF EARNINGS
AND EXPENSES SUSTAINED PRIOR TO DEATH.**

Under the Remedial Plan, claimants may seek "any remedy otherwise available in

a court of law." Remedial Plan, § XXXII.  In this case, the remedies otherwise available

in a court of law are those authorized by the ADA and Rehab Act and not limited by

Colorado's survivorship statute. (See Special Masters' Order, Exh. A., p. 9 (this phrase

"requires reference to the ADA and Rehab Act")).  Plaintiffs request "the full panoply of

damages," including economic damages, punitive damages, damages for pain and

suffering or emotional distress, and attorneys' fees and costs.  Most of these damages are

not available in this case.

Category V damages are limited by Colorado's survivorship statute.  See C.R.S. §

13-20-101(1).  Neither the ADA nor the Rehab Act addresses whether a claim survives a

claimant's death.  Thus, under 42 U.S.C. § 1988, Colorado's survivorship law controls as

long as the law is "not inconsistent with the Constitution and laws of the United States."

Robertson v. Wegmann, 436 U.S. 584, 588-89 (1978).  Under Colorado law, an

ADA/Rehab Act claim survives the plaintiff's death, but damages are limited. C.R.S.

§ 13-20-101(1).  "The damages recoverable after the death of the [claimant] shall be

limited to loss of earnings and expenses sustained or incurred prior to death and shall not

include damages for pain, suffering, or disfigurement, nor prospective profits or earnings

after the date of death." Id.  Plaintiffs contend that this statute is contrary to the goals of

the ADA and Rehab Act.  Several courts disagree.

      In Rosenblum v. Colorado Department of Health, 878 F.Supp. 1404 (D. Colo.

1994), the court held that Colorado's survivorship statute was not inconsistent with the

goals of the ADA and should be applied to limit damages in an ADA suit.

> This provision is not inconsistent with the ADA, which does not
> address the availability of damages after the plaintiff's death.
> Further, it is not necessarily inconsistent with the policies
> underlying the ADA – namely, deterrence and victim
> compensation.  Accordingly, I find and conclude that the plaintiff
> may not recover damages for pain and suffering, nor lost earnings
> or benefits for times after [the date of death].

Id. at 1409.  Colorado law is not inconsistent with the ADA or Rehab Act because many

of the types of damages prohibited by C.R.S. § 13-20-101(1) are not allowed by the ADA

or Rehab Act anyway.

      According to the U.S. Supreme Court, "punitive damages . . . may not be awarded

in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." Barnes v.

Gorman, 536 U.S. 181, 189 (2002).  In addition, "the majority of courts addressing the

specific question of whether a plaintiff may recover money damages for mental anguish,

emotional distress, and humiliation, have held that such compensatory relief is not

available under [the Rehab Act]." Tyler v. City of Manhattan, 849 F.Supp. 1442, 1444

(D. Kan. 1994), aff'd 118 F.3d 1400 (10th Cir. 1997); see also Tallarico v. TWA, Inc.,

881 F.2d 566, 570 (8th Cir. 1989) (no damages for emotional distress); ADAPT, Salt

Lake Chapter v. Skywest Airlines, 762 F.Supp. 320, 325 (D. Utah 1991) ("Damages for

emotional distress or mental anguish are likewise unavailable under the Rehabilitation

Act . . . the purposes behind the Act are better served by not permitting emotional distress

damages"). Therefore, punitive damages and damages for emotional distress and mental anguish are not available under the ADA and Rehab Act.

Because the ADA and Rehab Act do not allow many of the types of damages requested by Plaintiffs, the limitations of C.R.S. § 13-20-101(1) are not inconsistent with the ADA and Rehab Act. Therefore, under the ADA, Rehab Act, and Colorado law, Category V claimants cannot recover punitive damages, economic damages after the date of death, nor damages for pain and suffering or emotional distress. Successful Category V claimants can only recover compensatory damages for loss of earnings and expenses sustained or incurred prior to death.

## II. CLAIMANTS ARE NOT ENTITLED TO DAMAGES UNDER § 1983.

Plaintiffs contend that they should be entitled to "the types of damages recoverable in Section 1983 Eighth Amendment claims." (Plaintiff Class Appeal, p. 3 n.3). In Montez v. Romer, 32 F.Supp.2d at 1243, this Court dismissed all § 1983 claims against defendants in their official capacities and the § 1983 claims based on the ADA and Rehab Act against individual defendants in their individual capacities. Thus, Plaintiffs cannot obtain § 1983 damages for ADA/Rehab Act violations. Following these dismissals, the only remaining § 1983 aspect of this case was for Eighth Amendment claims against individual defendants in their individual capacities. See id.

While the Special Masters erred in stating that all § 1983 claims were dismissed prior to settlement, this misstatement does not merit overturning the Special Masters' Order. The Special Masters properly noted that under this Court's November 23, 2004 Order all claims are to be evaluated solely under the ADA and Rehab Act. As discussed below, claims alleging medical malpractice under the Eighth Amendment will be unable

to meet the four criteria set out in the November 23, 2004 Order, and thus will not be eligible for damages.  In addition, the Special Masters properly noted that none of the Category V claims alleged discrimination by any of the individual named defendants— the only defendants potentially subject to § 1983 damages.  Therefore, the Special Masters were correct in holding that § 1983 damages are not available in this case.

### A.  Following Settlement, Neither the Parties Nor the Court Intended for Eighth Amendment Claims to Remain.

Determining what damages are available begins with the Remedial Plan.  An agreement to settle a federal lawsuit is a contract, governed by the principles of contract law. See Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989).  The goal of the Remedial Plan was to bring CDOC into compliance with the requirements of the ADA and Rehab Act, and to allow class members to file individual damages claims for alleged disability discrimination.  While a narrow § 1983 claim may have remained prior to settlement, the Remedial Plan represents a full integration and resolution of the parties' dispute, and extinguishes the complaint, the answer, and other pleadings predating it.  The Remedial Plan did not address quality of medical care issues and did not preserve any Eighth Amendment claims.

As Plaintiffs have previously pointed out, the claims and defenses asserted in the pleadings are exchanged for the legal rights detailed in the agreement. Jeff D., 899 F.2d at 759.  Just as Defendants forfeited any right to raise the defenses of qualified immunity and Eleventh Amendment immunity by settling this case and not preserving those defenses in the Remedial Plan, Plaintiffs forfeited any Eighth Amendment claim by settling and not preserving that claim in the Remedial Plan.

No § 1983 claim was asserted, nor could it have been, against the state or CDOC. Accordingly, a claimant cannot receive § 1983 damages for claims against CDOC. Section 1983 damages are only hypothetically possible for successful claims against individual defendants in their individual capacity.  After reviewing all Category V claims, the Special Masters noted that none of the claims alleged that "any listed defendant had any direct contact with one of the deceased," (Special Masters' Order, Exh. A, p. 7); that is, none of the Category V complaints make allegations against any of the individual defendants named in the Second Amended Complaint.  The claims make allegations only against CDOC in general.  Because § 1983 damages are not available from the state or CDOC and none of the Category V claims allege discrimination by any individual named defendants, none of the Category V claimants can obtain § 1983 damages.

In addition, this Court has repeatedly indicated that it did not intend this case to be an Eighth Amendment case.  During the October 27, 2004 status conference, the Court clarified that it never intended to certify the class as to an Eighth Amendment claim.

> Judge Nottingham: . . . <u>I don't think there are any Eighth Amendment claims in here</u>.  There are claims under the – this has been – the class was a class of disabled people; it was not a class of people that had Eighth Amendment claims. . . . But I don't think this is an Eighth Amendment case, the way you've structured it. Now, you say at the time it was certified, it was an Eighth Amendment case.  And I agree with that; it was.  There – you know, very little had been decided substantively when the case was certified.  But the way the settlement was structured, it – you know, every prisoner has an Eighth Amendment case.  I've got cases independent of this one where they're presenting Eighth Amendment claims.  If they could all come into the class, we'd have a great mess here.

(Transcript of 10/27/04 Status Conference, [2] p. 41, line 13 – p. 42, line 6, attached as Exhibit B-3) (emphasis added).  During the same hearing, Judge Nottingham noted that "when this class was certified, the representatives were disabled persons.  And I think [class counsel] purported to represent a class of disabled persons . . . You did not purport to represent all persons in the penal system who had an Eighth Amendment claim."  (Transcript, Exh. B-4, p. 46, lines 4-11).  This case is only a class action as to the ADA/Rehab Act claim, not the Eighth Amendment claim.

> **B.      Section 1983 Damages Are Unavailable Because Proving the Four Criteria Announced in the November 23, 2004 Order Establishes an ADA/Rehab Act Violation and Nothing More.**

Section 1983 damages can only be available in this case if a claimant proves an Eighth Amendment violation.  All claims are evaluated solely by considering the following criteria:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

(November 23, 2004 Order, ¶ 2, attached as Exhibit C).  These four elements are taken from ADA/Rehab Act case law and, if proven, establish an ADA/Rehab Act violation.

On the other hand, to prove an Eighth Amendment violation for inadequate medical care, a plaintiff must establish that (1) objectively, he or she suffered a

---

[2] The entire transcript of October 27, 2004 hearing is attached for the Court's convenience.  It is submitted as four exhibits (B-1, B-2, B-3, and B-4) due to the transcript's length and file size.

"sufficiently serious" medical need; that (2) subjectively, the defendant knew of, or must have known of, and disregarded an excessive risk to the plaintiff's health; and if treatment was merely delayed and not denied outright, that (3) the delay resulted in substantial harm to the plaintiff. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993).  The elements of an Eighth Amendment claim are completely different than the ADA/Rehab Act criteria set out in the November 23, 2004 Order. Proving the four required criteria does not establish an Eighth Amendment violation.

Plaintiffs contend that "[w]hen it is shown that a class member who satisfies the four criteria died as a result of the discrimination by the Defendant, it is at core an Eighth Amendment claim and that claimant is entitled to . . . all damages allowed by 42 U.S.C. § 1983."  (Plaintiff Class Appeal, p. 4-5).  This is incorrect.  Proving the four criteria only establishes an ADA/Rehab Act violation and nothing more.  That death occurred does not convert a disability discrimination claim into an Eighth Amendment claim.

In essence, Plaintiffs argue that they should be entitled to § 1983 damages for alleged Eighth Amendment violations without having to prove the elements of an Eighth Amendment violation.  This Court anticipated that some claimants may attempt to get around the Eighth Amendment's high burden by asserting a Montez claim:

> Judge Nottingham: Because my sense is the same as yours, we're getting a lot of people who have medical needs of one sort of another, and they may think they have a claim under the Eighth Amendment, but they think can short-circuit the liability part of that by sliding in as members of this class and get damages for their condition.

(Transcript, Exh. B-2 p. 16, lines 18-23).  Plaintiffs cannot skirt the requirements for an Eighth Amendment claim by filing a claim in this case.

The November 23, 2004 Order states that "individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." (November 23, 2004 Order, Exh. C, ¶ 5). A claimant can assert a medical malpractice claim only if it "meet[s] the criteria established in paragraph #[2]." (Id.). Thus, any medical malpractice claim is evaluated under an ADA/Rehab Act analysis, not an Eighth Amendment analysis. Meeting the four Montez criteria as to a medical malpractice claim establishes an ADA/Rehab Act violation, entitling the claimant to the damages listed in section I of this brief. It does not establish an Eighth Amendment violation and, therefore, does not entitle the claimant to § 1983 damages.

### C. Under ADA and Rehab Act Case Law, a Claim Alleging Medical Malpractice Cannot Meet All Four Required Criteria.

The Tenth Circuit has made clear that allegations of improper medical care cannot meet the requirements of an ADA/Rehab Act claim. Thus, Plaintiffs' medical malpractice claims cannot meet the four criteria set out in the November 23, 2004 Order. Accordingly, any discussion of available damages for medical malpractice claims is, at best, hypothetical.

All claims are evaluated under the four criteria set out in the November 23, 2004 Order. If a claimant alleges an ADA/Rehab Act claim based on improper medical care, the claimant "must prove that he or she was discriminatorily denied medical treatment because of the [disability] and, at the same time, must prove that, in spite of the [disability], he or she was 'otherwise qualified' to receive the denied medical treatment." Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992).

"An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979) (emphasis added).  In analyzing any claim of improper medical care, the court must ask whether the claimant would have been "otherwise qualified" for the desired medical care or device if not for the claimant's disability.  The answer will almost always be no.  "[W]here medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services." United States v. University Hosp., 729 F.2d 144, 156 (2ⁿᵈ Cir. 1984).  Consequently, "the term *otherwise qualified* cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." Johnson, 971 F.2d at 1493-94 (quotation omitted, emphasis in original).

In Fitzgerald v. Corrections Corporation of America, 403 F.3d 1134 (10ᵗʰ Cir. 2005), the Tenth Circuit explained that

> Fitzgerald would not have been 'otherwise qualified' for such treatment in the absence of his alleged disability—his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment.  These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or Rehab Act.

Id. at 1144.  Plaintiffs argue that Fitzgerald, which was decided by the Tenth Circuit in 2005, should not apply to the Montez cases because it was decided after the parties settled.  They contend that the Special Masters' Order on Category V Damages should be overturned because it relied on Fitzgerald.  Contrary to Plaintiffs' assertion, Fitzgerald did not break new ground.  In 1992, well before the parties settled, the Tenth Circuit established in Johnson, 971 F.2d at 1493-94, that medical malpractice claims can rarely, if ever, meet the requirements of the ADA and Rehab Act.  In addition, this Court has

previously held that relevant ADA and Rehab Act case law may be considered in applying the four criteria. (November 23, 2004 Order, Exh. C, ¶ 3).

To the extent that claimants allege denial of treatment for their handicap, such claims must fail because absent the handicap, the claimant would not have needed the treatment. See Johnson, 971 F.2d at 1493-94; Grzan v. Charter Hosp., 104 F.3d 116, 121 (7th Cir. 1997).  "[I]f such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment." Johnson, 971 F.2d at 1493.  Similarly, a claimant can rarely, if ever, prove that allegedly inadequate medical care was the result of discrimination.  "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" Id. at 1494 (quotation omitted).

"The ADA does not create a remedy for medical malpractice." Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).

> Even apart from the prison setting it would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the [ADA], whereas a sick or injured but not disabled person . . . must be content with the remedy that the state law of medical malpractice provides.  Moreover, the courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners.  We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the [ADA].

Id. (emphasis added).

The goal of the ADA and Rehab Act is to ensure that disabled individuals receive the same access to jobs, programs, services, and benefits as non-disabled individuals. Regarding prison medical treatment, an ADA/Rehab Act violation only occurs if healthy,

non-disabled inmates received access to medical care that disabled inmates did not. "Without a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicap, the [claimant] cannot assert that a violation of the [Rehab Act] has occurred." Johnson, 971 F.2d at 1494.  If a non-disabled inmate would not be entitled to a specific medical treatment or device, then the issue is beyond the scope of the ADA or Rehab Act.  Accordingly, the key issue is access to medical care.  For example, an ADA/Rehab Act violation would exist if a wheelchair-bound inmate could not visit the facility's doctor because the door to the doctor's office was too narrow for the claimant's wheelchair.  Such a claimant would be entitled to the damages discussed in section I.  On the other hand, traditional medical malpractice claims—claims alleging delay or denial of medical treatment—cannot meet all four required criteria for a Montez claim.  Therefore, claimants cannot obtain damages for medical malpractice claims.

### III.   NEITHER FUTURE DAMAGES NOR DAMAGES FOR THE PERSONAL LOSSES OF A DECEASED INMATE'S FAMILY ARE AVAILABLE FOR CATEGORY V CLAIMS.

The Special Masters properly held that Category V claimants cannot obtain damages for prospective losses after the date of death and that families cannot recover damages in their own right. (Order of Special Masters, Exh. A, p. 9-10).  Plaintiffs previously argued to the Special Masters that Category V claimants should be entitled to future damages and that families of deceased inmates should be entitled to damages under § 1983 for violation of the families' constitutional rights.  It appears that Plaintiffs have not appealed the Special Masters' decisions on these two issues.  Accordingly, Plaintiffs are essentially conceding that such damages are not available.

The Remedial Plan states that "[i]nmates who have ongoing claims for damages may submit claims for future damages." Remedial Plan, § XXXII.  This provision was intended to cover inmates who remain in prison during the compliance period and who allege additional damages because of continued discrimination.  Future damages were never intended to be available in the case of a deceased inmate.  Furthermore, a deceased inmate cannot have an "ongoing" claim.  In addition, C.R.S. § 13-20-101(1) prohibits future damages where the claimant has died.  Therefore, future damages are unavailable in Category V claims.

Plaintiffs also argued to the Special Masters that surviving family members are entitled to damages under § 1983 for violations of the family's constitutional rights.  Nothing in the ADA, Rehab Act, or Remedial Plan suggests that families of deceased claimants are entitled to their <u>own</u> damages.  The Remedial Plan only allows for damages of "individual class members." Remedial Plan, § XXXII.  In addition, "[r]ecovery under [the Rehab Act] runs to the <u>individual</u> . . . the Act does not authorize any damages in excess of the harm suffered." <u>Cook v. Hairston</u>, 948 F.2d 1288, *6 (6th Cir. 1991) (unpublished opinion) (emphasis added).  Neither the ADA nor the Rehab Act contains any provision that would allow recovery for a family's own damages.

## CONCLUSION

All claims are evaluated under the four criteria set out in the November 23, 2004 Order.  Proving the four required criteria establishes an ADA/Rehab Act violation, not an Eighth Amendment violation.  Therefore, § 1983 damages are not available in this case.  Under the ADA, Rehab Act, and Colorado law, punitive damages, economic damages after the claimant's death, and damages for pain and suffering, emotional distress, or

mental anguish are not recoverable.  Successful Category V claimants are entitled to compensatory damages for loss of earnings and expenses sustained or incurred prior to the claimant's death.

Respectfully submitted this 16th day of November 2005.

JOHN W. SUTHERS
Attorney General


s/ Jess A. Dance
JESS A. DANCE, 35803*
Attorney
Corrections Unit
Civil Litigation and Employment Law Section
Attorney for Defendants

Colorado Attorney General's Office
1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5165
Fax: (303) 866-5443
Email: jess.dance@state.co.us

## CERTIFICATE OF SERVICE

I certify that on the 16th day of November, 2005, I electronically filed the foregoing  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paula Greisen
greisen@kinggreisen.com
Counsel for the class
King & Greisen, LLP
1670 York St.
Denver, CO 80206

Honorable Richard M. Borchers
dborchers@legalres.com
Special Master
Legal Resolution Center
707 Zenobia St.
Westminster, CO 80030

*Courtesy Copy To:*

Cathie Holst

s/ Jess A. Dance
JESS A. DANCE, 35803*
Attorney for Defendants
Corrections Unit
Civil Litigation and Employment Law Section

Colorado Attorney General's Office
1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5165
Fax: (303) 866-5443
Email: jess.dance@state.co.us