IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870
JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

Vs.

BILL OWENS, et al.,

    Defendants.

---

REPORTER'S TRANSCRIPT
STATUS CONFERENCE

---

    Proceedings before the HONORABLE EDWARD W. NOTTINGHAM, Judge, and the HONORABLE JOHN L. KANE, Senior Judge, United States District Court for the District of Colorado, commencing at 9:01 a.m., on the 27th day of October, 2004, in Courtroom 14, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiffs    PAULA GREISEN, ESQ.
    ALISON BUTLER DANIELS, ESQ.
    King & Greisen
    1670 York Street
    Denver, Colorado

For the Defendants    ELIZABETH H. MCCANN, ESQ.
    JAMES X. QUINN, ESQ.
    Colorado Attorney General's Office
    Litigation Section
    Denver, Colorado

Also Appearing    H. EARL MOYER, ESQ.
    Moyer Beal and Vranesic
    1401 Saulsbury Street
    Lakewood, Colorado

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

P R O C E E D I N G S

JUDGE NOTTINGHAM: This is Case No. 92-N-870, case is Montez, since deceased, and I can't remember who the most senior leading players were. I'll take the appearances of counsel.

MS. GREISEN: Good morning, Judge, Paula Greisen and Alison Butler Daniels appearing on behalf of the class. And Mr. Moyer, I think is also going to enter his appearance today.

MR. MOYER: Good morning, Your Honor. H. Earl Moyer, appearing on behalf of my client Duncan Leach and the estates of Mossman and Jones.

JUDGE NOTTINGHAM: Who is Duncan Leach?

MR. MOYER: Duncan Leach was one of the named plaintiffs in this class action who claims rights by virtue of lack of mobility. He's the gentleman who suffered from being in a wheelchair when he went -- all of his life, virtually, for his physical injuries.

JUDGE NOTTINGHAM: He is still alive?

MR. MOYER: He is still alive.

JUDGE NOTTINGHAM: And then you represent the estates of some deceased?

MR. MOYER: Two decedents.

JUDGE NOTTINGHAM: Before we go to the other side, let me ask some questions about this, because this is one of the things that has puzzled me. This case was a class action, and

1  Ms. Greisen and her firm have been representing the class.  I
2  would assume that both of these individuals are members of that
3  class.
4           MR. MOYER:  My client is not only a member, he is a
5  named member of the class.
6           JUDGE NOTTINGHAM:  All right.  So what's the deal?
7  What's going on?  Because I would -- are you entering as a
8  member of the class?  Because he hasn't opted out, to my
9  knowledge.  And I don't know that they were given the
10 opportunity to opt out, because this was a (b)(2) class action.
11          MS. GREISEN:  That's correct, Judge.  What has
12 happened, in the damage claim process, we did not enter an
13 appearance on behalf of the 900 some people, so they're allowed
14 to get their own counsel for the damage claim process.
15 Mr. Moyer is representing those three entities just in the
16 damage claim process.  And there may be other lawyers that have
17 also entered, I'm not -- I don't know that I know all of the
18 lawyers that have entered individual appearances.  So he's
19 certainly not entering as class counsel, his appearance today.
20          I'm a little concerned, if there were other attorneys
21 that were -- that have entered and wanted an opportunity, that
22 they -- I don't know whether they were given notice or not of
23 the status hearing.
24          JUDGE NOTTINGHAM:  I know a lot of people who may or
25 may not be members of the class have filed pleadings or motions

1  in this case of one sort or another.  But I think I understand
2  that now, so we'll go to the defendants.
3          MR. MOYER:  Your Honor, I filed my entry of appearance
4  and filed certain petitions prior to this settlement having
5  been accepted, because my client wanted to be sure that certain
6  modifications that he was requesting were being considered as
7  part of the settlement.
8          JUDGE NOTTINGHAM:  Were you here before?
9          MR. MOYER:  Yes, Your Honor.
10         JUDGE NOTTINGHAM:  Okay.  I had forgotten that, and
11 I'm sorry.
12         All right.  Other side.
13         MS. McCANN:  Beth McCann, Your Honor, appearing on
14 behalf of Department of Corrections, with Jim Quinn from the
15 Attorney General's Office.
16         JUDGE NOTTINGHAM:  All right.  This matter is before
17 the Court for a status conference.
18         I think there is some confusion, certainly in my mind,
19 as to who does what, which is why my colleague, Judge Kane, is
20 here.  Because the parties primarily drafted the agreement for
21 settlement in this case, and I think it's fair to say, probably
22 Ms. Greisen and Ms. McCann have had a heavy hand in drafting
23 that, if you can call it heavy hand.
24         And there are some things that are not very clear to
25 me.  For example, the Special Masters issued an order, if I

1  could find it in here -- they issued a report and
2  recommendation to Senior United States District Judge John L.
3  Kane, and the report and recommendation concerned certain
4  issues that were raised by Carl Ross, it appears, and the
5  Special Masters felt they needed a district judge to resolve
6  those matters.

7  Although the caption is -- suggests the report is sent
8  to Judge Kane, the bets are hedged in the recommendation
9  section, because it's recommended that the Honorable John L.
10 Kane or another United States District Judge determine the
11 extent of damages and remedies, et cetera, and that the
12 Honorable John L. Kane or United States District Judge
13 determine the applicability of the Eleventh Amendment immunity
14 to claims filed pursuant to paragraph XXXII, and recommended
15 that somebody determine whether Rehabilitation Act claims filed
16 pursuant to the agreement require allegations and proof of
17 intentional discrimination.

18 Judge Kane and I both wonder what the -- at least I
19 do -- what the parties' positions are on that.  Because it's
20 not clear from the face of the agreement, I think, what the
21 intent of the parties was, as to who resolved the kind of
22 issues presented by the Special Masters in that pleading -- or
23 in that recommendation.

24 MS. GREISEN:  Would you like me to step up?
25 JUDGE NOTTINGHAM:  Probably.

1          MS. GREISEN: I -- I'm not sure that there is
2     disagreement between the parties, at least there wasn't at the
3     last -- at the last hearing. And, obviously, they'll speak for
4     themselves. I think we anticipated that these issues would
5     have been resolved by the Special Master. And then if either
6     side disagreed, that they would have taken the issues to Judge
7     Kane.
8          I think where some of the confusion might lie is, at
9     least in my opinion, some of the issues being raised are really
10    liability issues. And the Special Master wasn't designed to
11    determine liability issues, just damage issues.
12         JUDGE NOTTINGHAM: Well, he -- the Special Master has
13    to determine at least initially whether the claimant is
14    disabled, doesn't he?
15         MS. GREISEN: Yes. I agree with that. In fact, in
16    the filing -- the response I filed on Friday, I said I think
17    there are three issues the Special Master has to address,
18    whether the person is a class member, whether they have a
19    disability within the meaning of the class, whether they proved
20    that they were discriminated because of -- discriminated
21    against because of their disability, and whether they were --
22    they were damaged by the conduct of DOC. Those are the three
23    questions. Not to get into questions as to whether or not --
24    legal argument such as whether the ADA allows the images, what
25    the standard to have to prove a Rehab Act claim is, those kind

1   of issues.

2   And, actually, I talked briefly with Ms. McCann right
3   before -- before we adjourned, and I think we may be closer on
4   those issues than we had originally thought.  So I'll defer to
5   them to address where we have a closeness.

6   But certainly it was our intention that these would be
7   decided initially by Judge Borchers, the Special Master, and
8   they would then be appealed to Judge Kane.

9   JUDGE NOTTINGHAM:  To decide whether somebody has a
10  disability, does the Special Master, and ultimately Judge Kane,
11  if that's who it goes to, look to the body of law developed
12  under the ADA?

13  MS. GREISEN:  I think that's appropriate.  I mean, I
14  think they do to some extent have to look as to whether or not
15  under the Rehab Act or ADA this person is disabled within the
16  meaning of that Act.  And I think that -- I think that the
17  instruction forms that the parties set down and devised suggest
18  that, as well.  And I don't remember the exact wording of the
19  remedial plan, but we did say -- I believe we used the word "a
20  qualified person with a disability."  So I think they do -- the
21  Special Master does have to make that initial determination.

22  JUDGE NOTTINGHAM:  Well, in your view, what would go
23  to me, as opposed to Judge Kane?  There are a lot of
24  questions -- and I'll get to the prisoners' new filings in a
25  moment.  But is there any issue of interpretation of the

1  agreement that comes to this court as the court having the
2  case, rather than to Judge Kane?
3       MS. GREISEN: Well, I -- I guess I'm going to
4  speculate. But I would say that if in fact there is an issue
5  here as to whether liability issues are going to be determined
6  during the damage phase, then I think then we do get into the
7  interpretation of the settlement agreement.
8       JUDGE NOTTINGHAM: Well, I thought liability -- I
9  guess this is your position too -- if we're going to retry
10 liability, why did we settle the case?
11      MS. GREISEN: That would exactly be our position. In
12 fact, we would say that that is inherently contradictive of
13 what we did when we settled this case. So -- you know -- and I
14 do think that to some extent, when Ms. McCann or Mr. Quinn
15 speaks, that I think that they have moved away from arguing
16 some of those issues now.
17      JUDGE KANE: It seems to me that the architecture or
18 the design of this settlement is such that when any appeal is
19 made to me on the basis of a determination of the Special
20 Master, the standard of review is abuse of discretion. And I
21 have looked at these matters that have been raised, that if
22 there are issues of law, then they don't come to me because
23 they're not part of the design of the settlement.
24      And so the particular issues about whether one has to
25 prove liability or not or whether the particular acts, the

1    Rehabilitation Act or the ADA, applies and what standards and
2    tests are to be used, seem to be me to be matters of law.  And
3    it would be, in my view, something that would be fanciful to
4    suggest that the parties settle by changing the standard of
5    review on questions of law from error of law to abuse of
6    discretion.
7        On the other hand, the thrust of the abuse of
8    discretion standard is that I'm to review determinations of the
9    Special Master as to amounts.
10        MS. GREISEN:  That --
11        JUDGE KANE:  That seems to me to be the contemplation
12    of the parties.
13        MS. GREISEN:  That was my understanding.
14        JUDGE KANE:  Okay.
15        MS. GREISEN:  So I -- I can't -- I can't articulate it
16    any better than that.  I can't imagine going back and
17    relitigating the issues of law that we spent the last ten years
18    litigating or arguing again, whether or not *Tennessee v. Lane*
19    has changed, whether or not we're going to allow damages under
20    the ADA and those kind of legal arguments at this point.
21        JUDGE NOTTINGHAM:  Well, I'm confused, then, because I
22    think Judge Kane is suggesting to you that the kinds of -- some
23    of these determinations are questions of law.  What -- who is
24    disabled?  That -- that is a mixed question of fact and law,
25    probably, but it does involve legal questions.  Somebody is

1   going to have to decide, does this person have a disability
2   such that he can recover damages. And what he's suggesting is
3   that the abuse of discretion standard doesn't encompass that.
4   So we're going to have an unusual kind of structure here,
5   questions of law go to me, and questions of abuse of discretion
6   go to him. I mean, that is a difficult standard to apply --
7           MS. GREISEN: Right.
8           JUDGE NOTTINGHAM:  -- because some of these are
9   mixed.
10          MS. GREISEN: I guess, I don't believe it was the
11  intention of the parties, at least it certainly wasn't our
12  intention, that we would split these issues between the two
13  courts. I certainly saw the questions that we are putting
14  before the Special Master as questions of fact. Are they -- do
15  they have possibly some legal aspects to it? I suppose that
16  that's true. And I would say at this point that it is simply
17  reviewable on abuse of discretion. If you can't review it on
18  abuse of discretion, it's not going to be reviewable.
19          JUDGE NOTTINGHAM: What does "abuse of discretion"
20  mean? There is an element of fact and an element of law.
21  Sometimes the decision will say, we reviewed the district
22  judge's decision on issues of law de novo, we've reviewed
23  something else for abuse of discretion.
24          MS. GREISEN: Uh-huh. Well, I guess, you know, I --
25  hindsight is always 20/20 on how these could have been phrased.

1   But my inclination would be to say that only questions of fact
2   are going to be reviewed by Judge Kane for abuse of discretion,
3   and no other issues are going to be reviewed. We only set up a
4   review for abuse of -- abuse of discretion on the facts.
5            JUDGE KANE: As I recall our discussions, the
6   questions of disability, vel non, were really not part of it.
7   These people were diabetics, or they were -- it was a
8   demonstrable and obvious disability. But the thrust of
9   deciding abuse of discretion was twofold, whether the damages
10  specifically were -- awarded by the Special Master were
11  excessive or insufficient, such as to represent an abuse of
12  discretion. That's what I understood it was about, until this
13  latest brouhaha started.
14           MS. GREISEN: Well, you know, I can't remember when
15  the issue of who is going to decide if somebody is a class
16  member came up. I believe it was raised during the damage
17  claim process. And I'm not going to disagree that there were
18  some people who I think are probably not class members that
19  filed damage claim forms, because you sent out a notice to
20  Department of Corrections, and everybody --
21           JUDGE KANE: Are you suggesting you have some
22  dishonest members of your class?
23           MS. GREISEN: No, I think the members are very honest.
24           JUDGE NOTTINGHAM: Just the non-members. It's those
25  non-members that she doesn't --

1    JUDGE KANE: I see, okay.

2    MS. GREISEN: I don't represent those people. But I
3  think there has to be a process fairly to weed out those
4  people. I don't think simply because you file a damage claim
5  that you're automatically a class member. I -- I don't think
6  that would be a common-sense approach for me to suggest. So
7  there has to be some -- some way to sort out the people that
8  say, you know, they fell and scraped their knee and therefore
9  have a mobility disability.

10   JUDGE KANE: But that's not in the present settlement
11 agreement, is it?

12   MS. GREISEN: Well, I believe that we talk about
13 qualified individuals with a disability in the settlement.

14   JUDGE NOTTINGHAM: Yes. Do you remember the section?

15   MS. GREISEN: It's XXXII, I believe.

16   JUDGE NOTTINGHAM: I reread that, so maybe I didn't
17 read it close enough.

18   MS. GREISEN: You know, it simply may be that we refer
19 throughout to "class members," and that was maybe not spelled
20 out. But that in order to be eligible --

21   JUDGE KANE: That's what the question is.

22   MS. GREISEN: -- you had to be a class member.

23   JUDGE KANE: If you're not a class member, that's a
24 question of law.

25   MS. GREISEN: I well, I think as Judge Nottingham

1  said, I think it's a mixed question.

2  JUDGE KANE: Well --

3  JUDGE NOTTINGHAM: But if it's a mixed question, I
4  don't know how it gets reviewed. If you intended only issues
5  of fact to be reviewed by the Special Master and Judge Kane,
6  then are you suggesting that it has to come to me initially to
7  determine whether this person is a class member and whether
8  this person has a disability, and if I determine that the
9  answer to both of those questions is yes, then I send it to the
10 Special Master.

11 MS. GREISEN: Oh, my god, no. I can't imagine coming
12 up with that kind of system. I -- it was certainly my belief
13 that these issues -- that issue would go to the Special Master.

14 JUDGE NOTTINGHAM: To start with the Special Master?

15 MS. GREISEN: Uh-huh.

16 JUDGE NOTTINGHAM: But -- so that could even be even
17 more cumbersome, if you're trying to divide between issues of
18 fact and issues of law. Then the Special Master has to do
19 something like both of them did and say, well, this is a
20 question of who is a class member, so Judge Nottingham has to
21 decide this. Then once he decides that, send it back to us,
22 we'll take a look at it, and then it goes to Judge Kane.

23 MS. GREISEN: Well, you know, I -- it may very well be
24 that this specific issue isn't addressed appropriately. I --
25 certainly, I'm willing to just talk with opposing counsel. I

1   can't imagine that the parties would disagree that the Special
2   Master would make that initial determination and with respect
3   to that determination, it would be appealable to Judge Kane. I
4   mean, I -- that was certainly -- you know, I -- I can honestly
5   say that I did not sit down and think about whether that was a
6   question of fact or law that was going to be appealed. I
7   assumed that that was going to be a part of this process.
8            So with respect to that issue -- I mean, I don't know
9   what your position is, but I would suggest we would just simply
10  submit that to the Special Master and have them decide that.
11           MS. McCANN: Your Honor, if I might. I think that --
12  I think both sides contemplated that this issue would go from
13  the Special Master to Judge Kane. You would not be involved in
14  this process, was I think our contemplation. And we did
15  anticipate that the question of whether someone was a class
16  member or was disabled would be determined in this process and
17  that the Special Master would make that initial determination,
18  then if either side disagreed, they would take it to Judge
19  Kane.
20           JUDGE NOTTINGHAM: Where is the abuse of discretion
21  standard articulated in the agreement? Do you remember?
22           MS. GREISEN: Well, I believe it's in --
23           JUDGE NOTTINGHAM: Is it Section --
24           MS. GREISEN:   -- XXXII. And it's --
25           JUDGE NOTTINGHAM: Here it is.