1       MS. GREISEN: It's on page 29, I think the third full
2  paragraph.
3       JUDGE NOTTINGHAM: I see. These awards may be
4  appealed on an abuse of discretion review to the Honorable
5  Judge Kane.
6       MS. GREISEN: Right.
7       JUDGE NOTTINGHAM: But you both agree that in the
8  process -- in this process, the Special Master makes an initial
9  determination concerning who is a class member, who is disabled
10 and the other things that you think should have been
11 determined.
12      Ms. Greisen, in your submission -- your response filed
13 October 22, you say there is some other things that should be
14 determined. But those go initially to the Special Master, and
15 then to Judge Kane.
16      MS. GREISEN: Right.
17      JUDGE NOTTINGHAM: So my question to you -- I'm trying
18 to figure it out for future disputes -- is there anything left
19 for this judge, me, to resolve?
20      MS. GREISEN: I believe it was anticipated that we
21 would not be before this court on any issues during this
22 special -- during the damage claim process.
23      JUDGE NOTTINGHAM: Okay. Now, to complicate it just a
24 little bit further, I have a welter of motions filed by people
25 who may or may not be class members. We have an internal

1    problem because the clerk's office doesn't know whether to
2    refer things to Judge Kane or to me, but I think we can resolve
3    that internally. For example -- and you're not getting copies
4    on all of these.
5            MS. GREISEN: No.
6            JUDGE NOTTINGHAM: But the Attorney General is on some
7    of them.
8            I have on June 15, 2004, a motion for judgment on
9    motion for injunctive relief filed by Mr. Robert Wirtz. I have
10   no idea whether this man is a member of your class. I don't
11   know all the people who are members of your class. And my
12   inclination is to say, if they are members of the class, then
13   they should contact you. And if you say you are not
14   representing them on their individual damages claim, they can
15   get another attorney, such as Mr. Moyer, or they can proceed
16   pro se before the Special Masters. If they are not members of
17   your class, then all file a separate action.
18           Because my sense is the same as yours, we're getting a
19   lot of people who have medical needs of one sort or another,
20   and they may think they have a claim under the Eighth
21   Amendment, but they think they can short-circuit the liability
22   part of that by sliding in as members of this class and get
23   damages for their condition. And I would wonder what your
24   position is on these kinds of pleadings. I know you haven't
25   seen all of them, but you have seen some of them.

1      MS. GREISEN: Sure.

2      JUDGE NOTTINGHAM: Because some of them get sent to
3  you. Here is a motion for discovery, and I assume that those
4  all go before the Special Master.

5      MS. GREISEN: They are. And some of this is just
6  simply a lack of understanding by the class members or
7  potential class members as to what procedure to follow.
8  Sometimes, in some cases, the Special Master has dismissed some
9  of these claims already. I know that there was a claim for
10 injunctive relief that was filed with the Special Master that
11 he already denied. And I think that there may simply be a
12 misunderstanding as to what they're supposed to do next. And
13 I'm not sure whether or not we need to send out more
14 instructions to people.

15      I think, actually, the Special Master has been very
16 good about when he -- when he gets copied on these and shows
17 that they're sent or filed in the Court, he will send some sort
18 of notification to them saying, you need to file the appeal
19 process, which is appealing to Judge Kane.

20      JUDGE NOTTINGHAM: So when we get a motion that's
21 filed in this case and served on neither party or on one party,
22 it seems to me a proper response would be to have the Clerk as
23 a matter of course send both you and the Attorney General's
24 Office, the two counsel of record, and give you ten days to
25 resolve it with the person who is filing the motion.

1          MS. GREISEN:  Well, that would be very difficult.

2          JUDGE NOTTINGHAM:  Why?

3          MS. GREISEN:  Well, number one, because of -- I don't

4    know how many filings you've gotten, but I get so much mail on

5    a weekly basis from individuals.  And, you know, at this point

6    in time, we're not allowed to call people at DOC unless there

7    is a pending court date.  And we have to prove -- Kathy Holtz

8    is here from the DOC.  She can answer to these issues.  But we

9    can't just get on the phone and talk to people anymore like we

10   used to be able to.  So that would be -- that would be very

11   difficult for us to try to resolve.

12          And some of these -- some of them actually probably

13   are class members, and they have a right to go through the

14   appeal process.  Some of them I don't think are class members,

15   and then I'm -- that is putting a tremendous burden to address

16   the non-class members who aren't -- aren't going to be

17   satisfied by what myself or Mr. -- Ms. McCann say, frankly,

18   because they're upset because they've been either denied as

19   class members or they have a grievance that this case -- for

20   instance, a lot of mental health inmates have complained

21   because mental health is not a part of this case, is not a

22   class member --

23          JUDGE NOTTINGHAM:  Well, so maybe there is no answer

24   but to go through each of these -- I must have 20 of them.

25          MS. McCANN:  Your Honor, could I suggest that

1  perhaps -- I haven't seen all of them, but perhaps you
2  should -- the Court could just refer them to the Special
3  Master, and the Special Master can then make a determination
4  as --
5             JUDGE NOTTINGHAM:  As to whether they're members of
6  the class?
7             MS. McCANN:  Right.  Whether he needs a response by
8  either of the counsel or, you know -- because they do have a
9  separate file on every single claim that's been filed.  And I
10 think it might be smoother -- I mean, there may be some that
11 would have to come back through you, but it might work
12 better --
13            JUDGE NOTTINGHAM:  That's what I'm trying to figure
14 out.  You know, a motion for injunctive relief, I think the
15 Special Master is going to handle that one like a hot potato,
16 and -- I mean, that's a possible suggestion.  But the Special
17 Master appeals go on Judge Kane.
18            It seems to me both of you are telling me, I don't
19 have anything to do with this case, that you have agreed
20 that -- that your agreement is that -- I don't know whether
21 Judge Kane welcomes that or not, but that your agreement is
22 that these things go to Judge Kane.
23            MS. McCANN:  I -- I think that for the vast majority
24 of that is true.  I think there is some issues here today that
25 at least we think you should resolve.

1      JUDGE NOTTINGHAM: All right.

2      MS. McCANN: Those have to do with interpretation of
3 the agreement and what -- what can be handled by the Special
4 Master. So I think there is a -- we would suggest that perhaps
5 there are some issues in -- today that you could resolve.

6      JUDGE NOTTINGHAM: All right. Well, we'll hear from
7 you eventually.

8      In an anticipatory manner, then, considering what
9 Ms. McCann has said, Ms. Greisen, would you agree with what
10 your position is on Section 36A, resolution of disputes.

11      MS. GREISEN: Talking about Section 36A of the
12 Settlement Agreement?

13      JUDGE NOTTINGHAM: Yes.

14      JUDGE KANE: On page 30.

15      JUDGE NOTTINGHAM: On page 30, yeah.

16      MS. GREISEN: I'm sorry. What was your question, as
17 to whether or not --

18      JUDGE NOTTINGHAM: My question was, I'm anticipating
19 something Ms. McCann said. She says there are fundamental
20 things that still remain -- that appeals to common sense, at
21 least to my common sense. But I'm wondering what effect this
22 language has on that.

23      MS. GREISEN: Well, I believe it was the -- certainly
24 my position during settlement process, and I believe it was a
25 meeting of the minds, that if we had disagreements on any

1   issues that gave rise during the settlement process, those
2   issues would first be brought to Judge Kane.
3              JUDGE NOTTINGHAM:  All right.
4              MS. GREISEN:  And I think that's what that clause
5   says.
6              JUDGE NOTTINGHAM:  Okay.
7              MS. GREISEN:  Judge, with respect to the bevy of
8   motions that you have, I don't have a problem with the
9   suggestion that Ms. McCann has of sending those initially to
10  the Special Master.  I guess my concern is if they're
11  determined not to be class members, that those -- there is not
12  any issue about whether or not they then get filed with this
13  court or they're told -- I don't want people to run out of
14  statute of limitation issues and those kinds of things because
15  they get sidetracked over the Special Master.
16             JUDGE NOTTINGHAM:  Right.  That's why initially I
17  suggested before Ms. McCann made her suggestion that either
18  they're members of the class or they're not.  If they're
19  members of the class, then they ought to be proceeding
20  according to the agreement and not filing things with the
21  Court.  Some of them may think they're presenting to the
22  Special Master by filing with the Court.  But if they are not
23  class members, then they should be told, you're not class
24  members, you're going to have to file a special action.
25             And I don't know how I make that determination, except

1  by doing the things the Special Master is supposed to do.

2              MS. GREISEN: I would agree, that question would be
3  referred to the Special Master.

4              JUDGE NOTTINGHAM: Okay.

5              We'll hear from whoever is speaking for the other
6  side.

7              MS. McCANN: Good morning.

8              JUDGE KANE: Good morning.

9              MS. McCANN: I think that what has happened, as we've
10 gotten actual claims, we've realized that there is some areas
11 that aren't entirely clear as to how much can be presented to
12 the Special Master and what kinds of claims can be presented.

13             We agree with the class counsel, with regard to the
14 questions that she listed in her response, which I think are on
15 page 5, that we anticipated that the Special Master would make
16 a determination, number one, as to whether or not an individual
17 is a member of the class, and that means, are they disabled to
18 the extent that it substantially limits their ability to
19 perform a major life activity.

20             The second question is, if they are disabled within
21 the meaning of the agreement and the class, was that person
22 discriminated against by DOC because -- specifically because of
23 the disability? And encompassed in that question is whether or
24 not there was an accommodation and whether that was an adequate
25 accommodation.

```
 1              And then the third question is, if that's the case,
 2    what are the damages?
 3              I guess the way we envisioned it, however, was that
 4    these are Rehabilitation Act damage claims.  We do not think
 5    that these individuals can bring ADA damage claims based on the
 6    law as it is currently.
 7              I don't know that that really matters, because the
 8    same questions would be asked under the Rehabilitation Act.  So
 9    the argument about Eleventh Amendment immunity -- Eleventh
10    Amendment immunity is not, really, I don't think important.  I
11    think if we can limit the claims to Rehab Act damage claims,
12    that's what we envisioned.
13              JUDGE KANE:  You mean -- you didn't mean, limit them
14    to Rehab Act.
15              MS. McCANN:  To the Rehab Act, to damage claims
16    brought under the Rehabilitation Act.  Because I think we've
17    conceded DOC did get federal funds.  Therefore, damage
18    claims -- the Eleventh Amendment immunity is waived as to Rehab
19    Act damage claims.
20              JUDGE KANE:  Isn't the Eleventh --
21              I'm sorry.
22              JUDGE NOTTINGHAM:  No.
23              JUDGE KANE:  Isn't immunity waived anyway by the
24    settlement?
25              MS. McCANN:  Well, to the extent -- I guess this is --
```

1  this is where it gets into, do we really need to get into this
2  question?  Because we did not -- we did not feel that we were
3  waiving legal defenses, many of which actually had already been
4  ruled on by Judge Nottingham and some of these claims
5  dismissed, but we didn't feel that we were waiving immunity
6  defenses in this agreement that would -- that we would be
7  legally entitled to.  But we did concede that under the status
8  of the law now, these individuals can bring legitimate damage
9  claims under the Rehabilitation Act.
10          JUDGE KANE:  You're saying it doesn't really make any
11 difference as to the kind of damages awarded by a Special
12 Master anyway?
13          MS. McCANN:  I don't think it really does, as long as
14 we are agreeing that these questions are ones that the Special
15 Master can consider.  Because we have conceded that if these
16 individuals are able to prove these questions -- answers to
17 these questions, that they are entitled to some damage claim.
18          One of the issues that still remains, I think, is,
19 under the Rehab Act, the claimants need to prove intentional
20 discrimination.  And we still believe that that is something
21 that they must prove, that the Department of Corrections
22 intentionally discriminated against them because of their
23 disability.  And so it's our position that in these hearings,
24 that's something that would still be considered by the Special
25 Master.

1           All right. That said, what -- I guess our biggest
2   concern is some of these Eighth Amendment claims. And the
3   judge has -- the Court has already referenced that a bit. What
4   we're finding in some of these claims that are coming in are
5   basically medical malpractice actions, and they are claiming
6   that -- like a diabetic did not get the proper dosage of
7   insulin early enough.
8           We do not believe that those strict medical
9   malpractice claims are what were contemplated in this
10  agreement. We were -- those are the kinds of claims that are
11  subject to defenses such as individual responsibility,
12  individual personal responsibility, deliberate indifference,
13  qualified immunity.
14          And if we are to be -- if the Special Master is to be
15  conducting full-fledged medical malpractice claims, then we're
16  going to be looking at expert witnesses, we're going to be
17  looking at extensive discovery. That is not what we
18  contemplated when we agreed or -- made this agreement.
19          And I think that what we would suggest is that the
20  Court today give some direction to the Special Master that
21  those medical malpractice claims need to be brought as separate
22  actions. They are not -- they are not Rehabilitation Act
23  claims based on a disability.
24          For example, anyone with a medical condition can say,
25  I wasn't treated adequately by the doctor at DOC. It's not

1   based on the disability.  It's not because the person has

2   diabetes that they weren't treated adequately.  It's because of

3   negligence by the doctor, if you believe them.  So to --

4           JUDGE NOTTINGHAM:  I'm sorry to interrupt.  But isn't

5   that subsumed in the process that you have evidently agreed to,

6   and that's the one noted at page 5 of Ms. Greisen's recent

7   submission, they have to have -- they have to prove they have a

8   disability within the meaning of the case.  That ought to weed

9   out the medical malpractice cases if that's determined.

10          MS. McCANN:  It --

11          JUDGE NOTTINGHAM:  Then they have to prove that

12  they've --

13          MS. McCANN:  -- been discriminated against.

14          JUDGE NOTTINGHAM:  -- been discriminated against

15  because of that.

16          MS. McCANN:  I agree. But I don't think that's what

17  is happening.  And I'm not sure that the Special Master

18  understands that.  And I guess -- I think that's why he

19  referred it here, because he wasn't clear on the extent to

20  which these kinds of claims can continue to be brought.

21          And I --

22          JUDGE NOTTINGHAM:  How much advocacy has occurred

23  before the Special Master?  The Attorney General, I assume, is

24  representing the claimants before the Special Master.  But the

25  claimants are by and large pro se, correct?

1          MS. McCANN:  Yes.  There have been a couple of
2    hearings by phone and one in person with the Special Master.
3    So -- where some of these issues have been discussed.  And
4    another issue is the discovery issue, which I'd like to talk
5    about in a few minutes.
6          But I'm not sure that the Special Master is clear on
7    what to do with these kinds of medical claims, is my
8    understanding.
9          JUDGE NOTTINGHAM:  Well, let me interrupt you and ask
10   Ms. Greisen a question.
11         Ms. Greisen, do you understandably try to limit your
12   involvement somewhat?  But for this kind of issue, where there
13   is a fundamental question, at least according to the Attorney
14   General, of whether you have to show a true disability, it
15   sounds like to me the Special Master had advocacy from one
16   side, and then he's got prisoner advocacy from the other side,
17   which is very usually no advocacy at all.  Why can't you be
18   involved in that?
19         MS. GREISEN:  You know, I have been involved in issues
20   that affected across the board.  There haven't been any
21   determinations made yet by the Special Master.  The only thing
22   the Special Master has done so far, which is determine which
23   category of claimants, taking the pleadings as true, would go
24   into, Categories 1 through 5.  Some of the claimants have
25   submitted supplemental claim forms.  There has been no

1  substantive hearings, nothing at all.  The only conferences
2  we've had are on the claim forms, what they're going to look
3  like.  And we had a couple of discovery issues, the breadth of
4  discovery that's going to be and who is going to pay for it.
5  So there haven't been any determinations --

6       JUDGE NOTTINGHAM:  Well, my point is this:  There is a
7  broad area of grievance, as you predicted on some of these
8  things.  Both sides seem to have a procedure in mind which if
9  applied, and if applied correctly, will weed out what you've
10 characterized as the medical malpractice claims or the Eighth
11 Amendment claims, because these are -- these are disability
12 claims, not Eighth Amendment claims.

13       And if the Special Master had heard what we're hearing
14 today, they, and I think it was both of them, might not have
15 sought clarification.

16       MS. GREISEN:  I think that's true, Judge.  We -- we --
17 he asked us to brief these issues.  And before we had a
18 briefing on it or hearing on it, he just referred it over.  And
19 I agree that I think some of these issues could have been
20 cleared up if we had sat down and had a hearing with him.  I
21 think it's premature to anticipate what some of the future
22 difficulties may or may not be.

23       I will agree that I think that there is a
24 misunderstanding -- maybe there is a disagreement between the
25 parties as to whether Eighth Amendment claims can be heard.  We