1   certainly believe Eighth Amendment claims can be heard by the
2   Special Master.  The Eighth Amendment claim was in this case,
3   they have to be a class member, obviously, to be able to file
4   the Eighth Amendment claim.  But there was an Eighth Amendment
5   claim in this case.
6         JUDGE NOTTINGHAM:  But you -- in your submission, you
7   say they have to prove they have a disability within the
8   meaning of this case.  And I guess you phrased that "members of
9   the class."
10        MS. GREISEN:  That's right.
11        JUDGE NOTTINGHAM:  But there are two ways of looking
12  at that.  The class was a class of disabled people.
13        MS. GREISEN:  Correct.
14        JUDGE NOTTINGHAM:  And therefore to be a member of the
15  class, they have to prove they have a disability.  That's not
16  an Eighth Amendment claim, at least the way I think about it --
17  it may be an Eighth Amendment claim, because they are disabled,
18  they may be getting deliberately indifferent treatment.  But an
19  Eighth Amendment claim standing alone without a -- proof of a
20  disability does not make them members of the class, and they're
21  going to have to file a separate action.
22        MS. GREISEN:  You know, I think that if in fact the
23  defense had raised these issues during class certification
24  time, that would have been the time to raise it.  This class
25  was certified with three claims, the class was certified with

1    the different class members.  And to bring three separate
2    claims, the Eighth Amendment claim, Rehab and ADA claim, all of
3    those three claims are still alive, they were alive throughout
4    the pendency of this case.  And if you are a class member and
5    you have a claim under the Eighth Amendment, it has always been
6    our contention that you can bring that in this -- in this
7    damage claim process.
8            JUDGE NOTTINGHAM:  Well, that's -- I think that's
9    inconsistent with what you gave in your recent submission, that
10   they have to prove several things.  They have to prove that
11   they have a disability within the meaning -- and I think you --
12   you said that the Special Master and the reviewing judge could
13   look at the body of law and at least decide it under the
14   Rehabilitation Act, and you contend under the ADA, I gather,
15   but they can look at that body of law and decide whether
16   they're disabled.  If they're disabled, they're in the class,
17   fine.
18           MS. GREISEN:  That's right.
19           JUDGE NOTTINGHAM:  But I -- I understand Ms. McCann's
20   point, and -- because I've seen some of these claims in this
21   mass of motions that I'm looking at.  They're claims that
22   they're not getting adequate dosage or their diabetes is not
23   being treated.
24           MS. GREISEN:  That's correct.
25           JUDGE NOTTINGHAM:  And they don't say -- they don't

1  take the additional step of saying, I am a disabled person.

2  MS. GREISEN:  Well --

3  JUDGE NOTTINGHAM:  And I must say that I -- I don't
4  understand your contention that an Eighth Amendment claim
5  without a disability is something that has to be adjudicated by
6  the Special Master, in light of your position that they have to
7  prove they have a disability.

8  MS. GREISEN:  Well, being a diabetic is one of the
9  disabled class members in this case.  I mean, that's one of the
10 four class members, are people with diabetes.  So it may be --

11 JUDGE NOTTINGHAM:  But there is more to being disabled
12 than that, Ms. Greisen.  You have to have diabetes, you have to
13 make a showing that it -- it affects one of your major life
14 activities.

15 MS. GREISEN:  Sure.

16 JUDGE NOTTINGHAM:  And you have to make some
17 additional showings.  And what I'm seeing in some of these
18 things -- and I'm using diabetes as an example -- is somebody
19 saying, I've got diabetes, and I'm not getting my medication.

20 MS. GREISEN:  Sure.

21 JUDGE NOTTINGHAM:  That's not enough.

22 MS. GREISEN:  That may be a problem in the claim form,
23 that we didn't ask them specifically for that information.  I
24 mean, that may be true, and I'd have to look.  I don't
25 remember -- the claim forms were for all four disabilities --

1  whether or not we have asked them for specific information with
2  respect to every disability, tell me how it affects the major
3  daily life activity, I'm not sure that question was on there,
4  frankly.  That may be something that the Special Master then
5  says, you guys are going to have to give us evidence of this.
6          It may be true that you may be a diabetic and not fit
7  the meaning of disabled.  I think the vast majority of
8  diabetics in DOC are uncontrolled and they will meet the
9  standard.  But you're right, that will be a question for the
10 Special Master to determine.  These issues are issues for the
11 Special Master.  I -- I would submit that they're really not
12 issues that are going to be determined on a case-by-case basis
13 by this court.  They need to be given back to the Special
14 Master and let them determine whether or not an individual is
15 going to fit that disability.
16          JUDGE NOTTINGHAM:  Or fit that --
17          I keep interrupting your presentation.  I'm sorry.
18          MS. McCANN:  No, I think it's helpful to hear
19 everyone's interpretation.
20          It seems to me what would be helpful to the Special
21 Master is if not some kind of order from the Court or ruling
22 from the Court, at least, perhaps, we can provide him with a
23 transcript of today's hearing, just to give some guidance.
24          I think they feel that they needed a little more
25 guidance as to what was appropriate for them to review.  And as

1  Ms. Greisen said, they seem to feel that they were not the
2  proper ones to consider it.  So they referred it here without,
3  really, having -- us having fully flushed it out at that level,
4  I think.  I think what they were saying was, they need -- they
5  need some guidance from the Court.  And I think you're
6  providing some, just by the discussion here today.
7           JUDGE NOTTINGHAM:  Well, suppose that we just remand
8  it to the Special Master -- masters, I think both of them.
9           MS. McCANN:  Yeah.
10          JUDGE NOTTINGHAM:   -- and told them, look at the
11 transcript of this hearing, which is ordered by the parties,
12 what -- is that enough?  And listen to the parties.  I'm a
13 little surprised that they threw up their hands -- you're
14 presenting that they threw their hands up quickly.  I'm not
15 sure they would agree with that.  But they didn't hear what
16 we're hearing today, I gather.
17          MS. McCANN:  Well, and I think that may be true, that
18 we weren't -- we didn't fully present our position to them.
19 And I think that perhaps we can do a little bit better job of
20 that in the future.  But I do think this fundamental issue
21 about the Eighth Amendment and the medical malpractice claim is
22 one that has been very troubling to us.  And it kind of ties
23 into the discovery issue, which we have brought actually to
24 Judge Kane, I believe, but we have --
25          JUDGE NOTTINGHAM:  I'm not sure.  I mean, that's an

1  internal problem with the Court. Some of these things go to
2  him and --
3         MS. McCANN: Well, the Special Master did issue a
4  ruling with respect to discovery, which we felt was beyond what
5  we anticipated. For example, he has -- they have ruled that
6  depositions will be allowed and interrogatories, and we did not
7  contemplate that, frankly. We contemplated that the claimants
8  would be entitled to review of their records, would be entitled
9  to copies of some of their records, and there is a dispute
10 there about the cost, but we did not anticipate that we might
11 have to have individual wardens or individual doctors sit
12 through, you know, 900 depositions by individual claimants.
13         I mean, that's why you bring a class action, is you do
14 the depositions as a class. But in the damage procedures, we
15 anticipated only that there would be paper exchanges and that
16 they could have counsel at the hearings, but we certainly
17 didn't anticipate depositions. And I don't know if you want --
18 I'd like to have some discussion about that today, if we can.
19         JUDGE NOTTINGHAM: Well, as a general abstract matter,
20 I don't agree with you that you never have depositions except
21 when it's a class action. You could have depositions for
22 damages. I think the problem you're presenting is that we have
23 900 prisoners, all of whom want to take the depositions of the
24 warden and the -- and their treating doctor, right?
25         MS. McCANN: Well, we don't know yet. We haven't

1    gotten there yet.  But we would like to -- we would like to cut
2    that off.
3            JUDGE NOTTINGHAM:  Well, I don't know whether you can
4    decide this or whether it's circular.  But if you're correct
5    that a lot of the -- and I tend to agree with you, from what
6    I've seen, that there are many people who have a claim that is
7    an Eighth Amendment claim but not a disability act claim.  If
8    the Special Master initially determined that they were within
9    the class and then said, if you're within the class, you get
10   more discovery, would that solve the problem?
11           MS. McCANN:  It's hard to say in the abstract.  I
12   think we do not want to be in a position of having to have a
13   series of individual depositions by these class members.
14   During the course of the preparation for trial, the class
15   counsel took over 30 depositions of many wardens and many
16   representatives of DOC.  We don't believe that additional
17   depositions should be allowed.
18           Now, I would hope that your scenario is what would
19   happen, is that many of these would be weeded out and we
20   wouldn't really end up with the necessity for depositions by
21   any of them; but I'm not confident of that.
22           JUDGE KANE:  You -- I think -- you have a very
23   legitimate concern that you have a lot of pro se litigants
24   wanting to tie up the administrative staff with depositions.
25   And they obviously -- the Department of Corrections staff have

1  other things to do, and the -- could interfere. But can't the
2  Special Master make a determination under the exigent
3  circumstances of individual cases whether something is
4  necessary or not without granting carte blanche depositions?
5       And I'm just throwing this out for a moment. But in
6  not being entirely a stranger to pro se prisoner litigation,
7  that if somebody is in a 60-foot square cell, and I said you
8  can by deposition or by written interrogatory --
9       MS. McCANN: Uh-huh.
10      JUDGE NOTTINGHAM: I think there are ways that can be
11 used to address your legitimate concerns about that.
12      On the other hand, if somebody needs some information,
13 and the Special Master can't make a decision without it, it
14 would not be appropriate to dismiss that claim.
15      MS. McCANN: Well, I'm hopeful that we can handle it
16 that way. And maybe we attempt that, and if we have what we
17 consider to be an abuse of discretion ruling, then that is an
18 opportunity to bring it to you. We were --
19      JUDGE KANE: I think that one of the problems -- it's
20 been suggested that we simply order a transcript of this and
21 send it to the masters and --
22      JUDGE NOTTINGHAM: I wasn't entirely serious.
23      JUDGE KANE: I think maybe what we need to do is have
24 a more formal order in this, that -- that you -- that counsel
25 meet and confer and see if you can draft that to clarify these

1  issues.  And if you can't, then you come in to argue specific
2  ones, we can hear that.
3          MS. McCANN:  Uh-huh.
4          JUDGE KANE:  But this is kind of a potpourri, if you
5  will.
6          JUDGE NOTTINGHAM:  Now, the discovery issues that you
7  would have presented, you're talking about now, the Special
8  Master entered an order, and you objected to the order.  Who do
9  you expect that objection to be heard by?
10         MS. McCANN:  I think it would be Judge Kane.
11         JUDGE NOTTINGHAM:  Okay.
12         Do you agree, Ms. Greisen?
13         MS. GREISEN:  Yes, I agree.
14         MS. McCANN:  That's why I was sort of raising it, so
15 we can -- we can either discuss it here, or if you would
16 prefer, we can -- I don't know, have you responded to that?
17         MS. GREISEN:  No, we haven't filed a response yet.
18         MS. McCANN:  Okay.  They might need an opportunity to
19 respond.
20         JUDGE NOTTINGHAM:  I don't have a problem with what
21 you are agreeing to.  At least I don't think I do, although --
22 well, strike that.  I don't.  But frankly, this is more than I
23 contemplated Judge Kane would be doing.  And perhaps I'm
24 speaking out of turn, but it may be more than he contemplated
25 doing.  And I guess that's something we have to resolve

1  internally.

2  What -- you know, what is left for me to do in this
3  case?  Why -- why shouldn't the case be transferred to Judge
4  Kane, and I'll take 200 of his other cases in exchange?
5  Because that's about what it's worth.

6  JUDGE KANE:  I'll just give you the Rocky Flats case.

7  MS. McCANN:  I honestly think that we did not fully
8  anticipate that we would have this many issues.  We sought --
9  saw it that we would really not be calling upon Judge Kane too
10 frequently.  Unfortunately, it hasn't quite played out that
11 way.

12 And, you know, you are -- I think our contemplation
13 for your role was more limited to, if there were disagreements
14 of the interpretation of the plan.  Although, as you point out,
15 we did say that those would also be resolved by Judge Kane.

16 You know, internally, I don't think -- I certainly
17 don't have any objection to however you two want to handle
18 that.  Our contemplation was that Judge Kane would be more
19 dealing with these damage issues, just to get those resolved.
20 And I don't think we anticipated quite so many fundamental
21 interpretation of the agreement questions.

22 Maybe we can work some of this out.  We'll certainly
23 sit down and try to come up with an order that would work those
24 out.

25 We, as I said, didn't anticipate this issue of

1   depositions and discovery.  We thought the discovery would be
2   very limited, and it would be -- and flow pretty smoothly.  It
3   appears that that may not be the case.  It may, but --
4            JUDGE NOTTINGHAM:  Well --
5            MS. McCANN:  I think --
6            JUDGE NOTTINGHAM:  Go ahead.
7            MS. McCANN:  We just need -- you know, I think it
8   helps to have a federal judge saying, this is what -- we've
9   heard the arguments, and this is what we -- this is how we
10  think the Special Master should handle it, because that gives
11  guidance to all of us.
12           JUDGE NOTTINGHAM:  So to follow up on what Judge Kane
13  said, why don't you two, because there seem to be broad areas
14  of agreement, get together and draft an order which would be
15  primarily a response to the Report and Recommendation of the
16  Special Masters to Senior United States District Judge John L.
17  Kane, which was filed on July 9 with this court.  That's the
18  one where they say, we need guidance on a lot of these issues
19  because there are more than simple mathematical computations of
20  damages issues here.  And the order, if you can agree to it,
21  and I hope you can agree to most of it, at least, would
22  encompass the -- what you both seem to agree to at page 5 of
23  Ms. Greisen's submission on October 22, that these are the
24  questions that need to be decided, and appeals of those
25  questions will go to Judge Kane.  And discovery should be

1  proportionate or in accordance with deciding those questions.

2  MS. GREISEN: Judge, I think that there still is a
3  fundamental area of disagreement, if I'm understanding what
4  Ms. McCann is saying, on whether or not claimants have to prove
5  intentional discrimination and whether or not such affirmative
6  defenses such as qualified immunity and those kind of defenses
7  are going to be raised.

8  JUDGE NOTTINGHAM: Who do you want to determine those?
9  If it's me, I'll determine that today.

10  MS. GREISEN: I think that's correct.

11  JUDGE NOTTINGHAM: All right.

12  MS. GREISEN: In terms of whether or not this is
13  really going to be a trial on the merits, I guess I want to
14  argue those issues further, because I think those are -- I
15  don't disagree that the Special Master would be scratching his
16  head as to how he would decide those issues, liability issues.
17  I think those are issues for this Court to determine whether
18  they're going to be raised or not.

19  JUDGE NOTTINGHAM: Well, I don't know that it makes
20  any difference, as Ms. McCann said, whether these are
21  Rehabilitation Act claims or ADA claims. Do you think it makes
22  a difference?

23  MS. GREISEN: Well, I guess it depends on whether
24  you're going to require a standard of proof to determine the
25  claim.

1            JUDGE NOTTINGHAM:  Okay.  Well, let me go to the
2   second question, then, in my view, having looked at the
3   agreement and based on the idea that this was a settlement,
4   they do not have to prove intentional discrimination.
5            MS. GREISEN:  Well, and I think that's important for
6   the Special Master to know that those levels of -- those type
7   of determinations do not have to be made and the qualified
8   immunity defenses cannot be raised, those kind of issues.
9            JUDGE NOTTINGHAM:  What are we talking about on
10  qualified immunity?
11           MS. GREISEN:  Well, they've -- in the Carl Ross claim,
12  they claim qualified immunity on the Eighth Amendment claim.
13           JUDGE NOTTINGHAM:  Well, that's a different issue.  I
14  don't think there are any Eighth Amendment claims in here.
15  There are claims under the -- this has been -- the class was a
16  class of disabled people; it was not a class of people that had
17  Eighth Amendment claims.
18           Your definition encompasses disability, and so I can
19  understand the State trying to preserve its position on a pure
20  Eighth Amendment claim.  I don't think they have qualified
21  immunity on the disability act claims that are being presented.
22  But I don't think this is an Eighth Amendment case, the way
23  you've structured it.
24           Now, you say at the time that it was certified, it was
25  an Eighth Amendment case.  And I agree with that; it was.

1   There -- you know, very little had been decided substantively
2   when the case was certified.  But the way the settlement was
3   structured, it -- you know, every prisoner has an Eighth
4   Amendment case.  I've got cases independent of this one where
5   they're presenting Eighth Amendment claims.  If they could all
6   come into the class, we'd have a great mess here.
7          MS. GREISEN:  It has to be an Eighth Amendment claim
8   related to the disability, that's related to their disability.
9   It can't be, I'm a diabetic, and I wasn't given an MRI for my
10  back sprain.  It has to be a claim that's related to their
11  disability.  I don't disagree with that.
12         JUDGE NOTTINGHAM:  Okay.  And I think as to that,
13  there is no qualified immunity, if -- if it's my decision.
14         MS. GREISEN:  Right.  I mean -- and I guess that's --
15  I -- maybe I should have been more specific early on.  It's not
16  any Eighth Amendment claim that a class member can have; it's
17  an Eighth Amendment claim relating to the fact -- the reason
18  they're a class member.
19         JUDGE NOTTINGHAM:  What do you mean by that?  Why
20  don't you just in effect give up on the Eighth Amendment
21  claims.
22         MS. GREISEN:  Because --
23         JUDGE NOTTINGHAM:  Because it introduces confusion.
24  Are you saying that they're going to have to prove deliberate
25  indifference on the part of individuals?