IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-116
Category III
Claimant: James R. Duncan, #41762
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

### DEFENDANTS' RESPONSE TO DUNCAN'S "OBJECTION UNDER RULE 53(G)(2) MOTION FOR APPEAL"

Defendants, through the Colorado Attorney General, respectfully submit the following "Response to Duncan's 'Objection Under Rule 53(g)(2) Motion for Appeal'."

### STATEMENT OF THE CASE

Claimant James Duncan filed an individual claim for damages as part of the Montez v. Owens class action. He claims to be vision disabled due to dyslexia and/or a learning disability. He claims to be mobility disabled due to a painful back injury. Duncan alleges that the Colorado Department of Corrections

("CDOC") discriminated against him by not providing him appropriate medical care and by not helping him with his dyslexia/learning disability.

Special Master Borchers conducted a hearing on Duncan's claim on September 23, 2005.  Duncan testified during the hearing and submitted Exhibits 1 through 15. (Final Order of Special Master, p. 1, attached as Def. Exh. A).[1]  All of Duncan's exhibits were admitted. (Id.).  Defendants offered Exhibits A through P, and all were admitted. (Id.).  The Special Master found that Duncan has a history of back problems, including a herniated disk, arthritis, and degenerative disk disease. (Id. at p. 4).  Duncan is able to walk and not wheelchair bound. (Id. at 6).  While it is unclear whether Duncan is dyslexic, he likely does have significant learning disabilities. (Id. at 5).

The Special Master issued a Final Order on October 10, 2005, denying Duncan's claim.  The Special Master held that Duncan does not have a vision or mobility disability and that the Montez lawsuit does not encompass learning disabilities.  (Id. at 5-6).  The Special Master also held that "[t]here was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.  Claimant's concern is the quality of medical care that he has received over the years since he came into DOC custody." (Id. at 6).  Claims regarding the quality of an inmate's medical care "cannot be resolved under the ADA and Rehabilitation Act." (Id.).

---

[1] The Final Order is docketed as 1155.

"In order to prevail under the ADA and Rehabilitation Act, a claimant must show that he received treatment that was different because of his disability." (Id.). The Special Master found that Duncan received medical care throughout his incarceration. (See id. at 7). Finally, having held that Duncan was not disabled and that he was not discriminated against by CDOC because of any disability, the Special Master did not need to address whether Duncan was otherwise qualified for any programs, benefits, or services, or whether Duncan was harmed because of discrimination by CDOC. (Id. at 6, 7). Duncan subsequently filed his Objection to the Final Order.

## STANDARD OF REVIEW

The Special Masters' award of damages "may be appealed on an abuse of discretion review to the Honorable Judge Kane." (Remedial Plan, § XXXII). "A court has abused its discretion when it based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995). "An abuse of discretion occurs when a judicial determination is arbitrary, capricious, or whimsical. It is not merely an error of law or judgment, but an overriding of the law by exercise of manifestly unreasonable judgment, or the result of impartiality, prejudice, bias or ill will as shown by evidence or the record of proceedings." United States v. Wright, 826 F.2d 938, 943 (10th Cir. 1987).

3

**ARGUMENT**

The November 23, 2004 Order by Judges Kane and Nottingham set out the four required criteria for a Montez damages claim:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

(November 23, 2004 Order, ¶ 2). In evaluating these criteria, ADA and Rehabilitation Act case law is to be applied. (November 23, 2004 Order, ¶ 3).

**I.      THE SPECIAL MASTER WAS NOT BIASED AGAINST DUNCAN.**

Duncan claims that the Special Master did not allow or use any of the evidence he submitted. Review of the Final Order shows that the Special Master heard Duncan's testimony and admitted all exhibits submitted by Duncan (Exhibits 1-15). (See Final Order, p. 1). The Special Master's finding of facts was largely based on the evidence submitted by Duncan. Duncan complains that the Special Master admitted some of Defendants' exhibits. Review of the hearing recording shows that the Special Master clearly explained to Duncan that Defendants' exhibits were admissible and that the Special Master would determine the weight to be given to any exhibit. The Special Master acted properly.

4

Duncan was given a full and fair opportunity to present his case. The Special Master did not act impartially, prejudicially, or with bias or ill will towards Duncan. That the Special Master did not reach the conclusion that Duncan wanted does not mean the Special Master abused his discretion.

## II. THE SPECIAL MASTER PROPERLY HELD THAT DUNCAN DID NOT HAVE A VISION OR MOBILITY DISABILITY UNDER THE REMEDIAL PLAN.

Duncan claims to have mobility and vision disabilities. He argues that he is vision disabled because, due to dyslexia or a learning disability, he sees letters and numbers backwards. The Special Master properly found that Duncan is physically able to see. (See Final Order, p. 5). Therefore, Duncan does not have a "vision disability" as the phrase is understood under the Remedial Plan or common sense. Duncan's complaint is really about a learning disability, not his visual acuity. The Special Master properly held that the Montez case only covers vision, mobility, and hearing disabilities, and diabetes. "The learning disabilities may be subject to action under the ADA, but in a separate lawsuit." (Final Order, p. 5). The Special Master properly held that Duncan does not have a vision disability and that complaints regarding learning disabilities are outside the scope of this case.

The Special Master also properly held that Duncan did not have a mobility disability as defined by the Remedial Plan. The Remedial Plan defines "mobility disability" as "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking;

5

*e.g.*, an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause." (Remedial Plan, § V(A)(1)).  It was not an abuse of discretion for the Special Master to apply the Remedial Plan's narrow definition.

Duncan is not mobility impaired.  By his own testimony, Duncan is not wheelchair bound and is able to walk. (See Final Order, p. 6).  "Offender is ambulatory . . . and is able to walk 3 – 5 miles per day." (Accommodation Resolution, attached as Def. Exh. B).  A medical record from February 18, 2004, reports that Duncan told medical staff that he "walks regularly 5 miles/day." (Affidavit of Dr. Neufeld, Def. Exh. C, ¶ 17(h), attached as Def. Exh. C).  When necessary, he is allowed to use a cane. (See Def. Exh. B).  On September 21, 2004, Dr. Singh noted that Duncan "walks with a cane" and that Duncan said he "exercises regularly 1 mile a day." (Def. Exh. C, ¶ 17(i)).  Because Duncan is able to walk, he is not mobility disabled.

In addition, where the claimant is not in a wheelchair, the Remedial Plan requires that the alleged mobility disability be due to a permanent lower extremity impairment. (Remedial Plan, § V(A)(1)).  Review of the hearing recording and the Special Master's findings of fact show that Duncan only alleged a back injury. The Special Master properly held that "[h]is condition is related to his back problem, not a lower extremity condition as required by the Settlement Agreement." (Final Order, p. 6).  The Special Master considered all the evidence submitted by both parties, including Duncan, and properly applied the definitions

6

set forth in the Remedial Plan to Duncan's claim.  The Special Master did not abuse his discretion by holding that Duncan failed to prove a disability.

### III. THE SPECIAL MASTER PROPERLY HELD THAT CDOC DID NOT DISCRIMINATE AGAINST DUNCAN.

The Special Master properly held that "[t]here was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act." (Final Order, p. 6).

In his Objection, Duncan alleges that he was discriminated against by CDOC in two ways.  He first claims that CDOC staff refused to help him with his learning disability/dyslexia. (See Duncan's Objection, p. 2).  As noted above, allegations regarding learning disabilities and/or dyslexia are beyond the limited scope of the Montez case.

Duncan also claims that CDOC discriminated against him by providing inadequate medical care. (See Duncan's Objection, p. 7).  Based on Duncan's testimony, the Special Master concluded "Claimant's concern is the quality of medical care that he has received over the years since he came into DOC custody." (Final Order, p. 6).

The Special Master correctly held that neither the ADA nor the Rehabilitation Act provides of cause of action for claims regarding the quality of a claimant's medical care. (Final Order, p. 6); see Fitzgerald v. Corrections Corp. of

7

America, 403 F.3d 1134, 1144 (10th Cir. 2005);[2] Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992). "The ADA does not create a remedy for medical malpractice." Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996). Duncan's allegations regarding the quality of his medical care are beyond the scope of the ADA and Rehabilitation Act.

An inmate's claim alleging improper medical care falls under the Eighth Amendment. The November 23, 2004 Order issued by Judges Kane and Nottingham, states that "[u]nless they meet the criteria established in paragraph#[2], individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." (November 23, 2004 Order, ¶ 5). Duncan's medical malpractice claim cannot satisfy the four criteria set out in the November 23, 2004 Order. First, as discussed above, Duncan does not have a vision or mobility disability under the Remedial Plan.

Regarding the "otherwise qualified" criteria, a claimant cannot be "otherwise qualified" for medical care. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979) (emphasis added).

---

[2] Class Counsel has argued that Fitzgerald, which was decided by the Tenth Circuit in 2005, should not apply to the Montez cases because it came down after the enactment of the Remedial Plan. The applicability of Fitzgerald is currently pending before Judge Nottingham. Whether or not Fitzgerald is binding is irrelevant because the case essentially reiterated existing law. In 1992, the Tenth Circuit explained in Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992), that medical malpractice claims can rarely, if ever, meet the requirements of the ADA and Rehabilitation Act. Johnson is binding precedent.

"[T]he term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'" Johnson, 971 F.2d at 1493-94 (quotation omitted). "[W]here medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services." United States v. University Hosp., 729 F.2d 144, 156 ($2^d$ Cir. 1984). Consequently, "the 'otherwise qualified' criteria . . . cannot be meaningfully applied to a medical treatment decision." Id.

In Fitzgerald v. Corrections Corporation of America, the Tenth Circuit explained that

> Fitzgerald would not have been 'otherwise qualified' for such treatment in the absence of his alleged disability—his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.

Fitzgerald, 403 F.3d at 1144. "[I]f such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment." Johnson, 971 F.2d at 1493. Consequently, Duncan cannot be "otherwise qualified" to receive any specific medical care.

Nor can Duncan prove that he was discriminated against regarding medical care because of a disability. "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" Johnson, 971 F.2d at 1494 (quoting University Hosp., 729 F.2d at 157).

9

The purpose of the ADA and Rehabilitation Act is to ensure that disabled persons receive access to the same jobs, programs, and services as non-disabled persons. "Without a showing that the non-handicapped receive the treatment denied to the 'otherwise qualified' handicapped, the [claimant] cannot assert that a violation of [the Rehabilitation Act] has occurred." Johnson, 971 F.2d at 1494. As the Special Master summarized, "[i]n order to prevail under the ADA and Rehabilitation Act, a claimant must show that he received treatment that was different because of his disability. (Final Order, p. 6). Because Duncan has had access to medical care throughout his incarceration, he cannot prove an ADA/Rehabilitation Act violation regarding medical care. The Special Master properly concluded that CDOC did not discriminate against Duncan. The Special Master did not abuse his discretion.

## CONCLUSION

The Special Master did not abuse his discretion in holding that Duncan failed to prove the required elements of a Montez claim. Based on Duncan's own testimony, his vision claim is really about dyslexia or a learning disability—which is outside the scope of this case—and he is physically able to walk and otherwise ambulate, thus he is not mobility disabled. Furthermore, the Special Master properly found that CDOC did not discriminate against Duncan based on any disability. The gravamen of Duncan's claim is that CDOC gave him inadequate medical care. The ADA and Rehabilitation Act do not provide a remedy for alleged medical malpractice. Because Duncan failed to prove the four elements

10

set out in the November 23, 2004 Order, the Special Master properly denied his claim. There was no abuse of discretion. Therefore, this court should affirm the Special Master's Final Order.

Respectfully submitted this 30th day of November 2005.

                    JOHN W. SUTHERS
                    Attorney General


                    s/ Jess A. Dance
                    JESS A. DANCE, 35803*
                    Attorney
                    Corrections Unit
                    Civil Litigation and Employment Law
                      Section
                    Attorney for Defendants
                    *Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on November 30, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Honorable Richard M. Borchers
dborchers@legalres.com
Legal Resolution Center
707 Zenobia Street
Westminster, Colorado 80030

I further certify that I have mailed copies of the foregoing via the United States mail, postage prepaid, at Denver, Colorado, this 30th day of November, 2005 addressed as follows:

James R. Duncan, #41762
SCF
P.O. Box 6000
Sterling, CO 80751-6000

*Courtesy Copy To:*

Cathie Holst

s/ Jess A. Dance