IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92—870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 17 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-116
Category III
Claimant: James R. Duncan, #41762
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

### FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on September 23, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: James R. Duncan (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from the following witnesses; Claimant and Marteena L. Ring. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 15, and all were admitted. Defendants offered into evidence Exhibits A through P, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

2

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master will note the important parts of the testimony provided by the witnesses.

Claimant came into CDOC custody on December 23, 1999. He was placed at the Denver Regional Diagnostic Center (DRDC) for evaluation for seven weeks. He then was assigned to SCF in early 2000. He has been at SCF since that date.

The evidence presented by both sides reflects that Claimant has had back problems since coming into DOC custody. He has a herniated disc at L5-S1, suffers from arthritis, and has degenerative disk disease. Claimant has had four surgeries on his back. There is no question that Claimant has a problem with pain as a result of his back. Claimant described this pain as significant and chronic.

Claimant testified that he has been placed on restrictions, including no bending or lifting of anything forty pounds or over. He testified that he had been placed in a cell that was not handicapped equipped. He believed that this was contrary to doctor's orders.

Claimant further testified that he believes that he has been discriminated against as the result of his learning disabilities. He stated that he has demonstrated problems in trying to learn. He has had these learning disabilities since high school. He believes these learning disabilities are covered by the ADA and Rehabilitation Act.

In 2001, Claimant advised medical personnel that he was having problems with his feet. He had plantar fasciitis in his left foot. Medical personnel provided to him information on stretching exercises for his foot, but nothing further. Claimant wanted the Special Master to view his foot, which was observed to be swollen and discolored. Claimant testified that he has had difficulty in walking and is sometimes not able to do it at all.

Medical personnel provided a back brace and a cane for movement. The back brace was taken from Claimant when he was placed into administrative segregation. The brace was returned to him when he was released from segregation. Claimant noted that stools and tables at SCF have no back supports and are painful for him to sit on.

Claimant also testified that he has had significant heart problems. He had three heart stoppages during his last surgery. Claimant was particularly upset concerning the quality of care that he has received in DOC and at contract facilities, including Denver Health Medical Center (Denver Health). Claimant believed that the care provided at Denver Health was inappropriate and done negligently.

Claimant testified that he believed that staff at Denver Health would provide no further care to him because he is an inmate. He believed this to be an outgrowth of his last surgery in 2000 at that facility. He also testified that he thought he had been the victim of medical malpractice at Denver Medical.

On cross-examination, Claimant testified that he had back pain before his surgery in 2000. He used a walker for one year after the surgery, with a cane being provided ever since. He believed that he had not received enough physical therapy after his surgery.

Claimant also stated that he had been "fired" from his GED class by the teacher. He had been terminated from other programs. He admitted that he can be outspoken if he believes something is not right.

The other witness who testified was Marteena L. Ring. She is the special population coordinator at SCF and is involved in inmate educational programs. She did an educational assessment of Claimant in July, 2004. She testified that Claimant does have some learning disabilities. She also testified that removal from an educational program can occur based upon disciplinary convictions. She was aware that Claimant had several disciplinary convictions. On cross-examination, she acknowledged that it was unlikely that Claimant would be able to pass the GED tests due to his learning disabilities. She thought it made more sense to try to have Claimant involved in classes just for his betterment, but not with the goal of obtaining a GED certificate.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** On his claim form, Claimant checked two categories: vision disability and mobility disability. Each will be discussed separately.

**Vision Disability:** The criteria for vision disability under the Settlement Agreement is very narrow. This category is limited to "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses."

Claimant's own testimony establishes that he does not meet the narrow definition of vision disability. He is not blind and is able to see with corrected vision. Claimant's testimony reflected that he really was dealing with his learning disabilities. He claims that he is dyslexic. Ms. Ring was not as convinced that this condition was present, but acknowledged that he had significant learning disabilities that would make it next to impossible to complete successfully GED testing.

Claimant does not meet the definition of vision disability. The learning disabilities may be subject to action under the ADA, but in a separate lawsuit. Claimant retains the right to pursue in a

5

separate lawsuit his issues concerning treatment for his learning disabilities.

**Mobility Disability:** The Settlement Agreement also narrowly defines mobility disability. This category is limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." An individual who is able to walk one hundred yards without stopping or climb a flight of stairs without stopping does not fall into this category.

The testimony of Claimant makes clear that he was not wheelchair bound on or before August 27, 2003. Likewise, he testified that he is ambulatory and able to walk. He does use a cane, but is still able to walk. His condition is related to his back problems, not a lower extremity condition as required by the Settlement Agreement.

There is no question that Claimant is in pain and struggling with his physical condition. The Special Masters have jurisdiction only over the categories set forth in the Settlement Agreement. Claimant is not mobility impaired as defined in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Claimant does not meet the definition of vision or mobility impairment, this question need not be reached.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant's concern is the quality of medical care that he has received over the years since he came into DOC custody.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

In order to prevail under the ADA and Rehabilitation Act, a claimant must show that he received treatment that was different because of his disability. An example would be a disabled individual being told that he would never be considered for a position of employment, even though

otherwise qualified. In this case, Claimant has received medical care throughout his time in CDOC. He has some concerns about that care. Since his claim does not fall under the provisions of the Settlement Agreement, Claimant may pursue separate litigation if he believes that he was the victim of improper or negligent medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of James R. Duncan is denied, as he had failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 19, 2005.**

SIGNED this 10th day of October, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this __17th__ day of October, 2005 to the following:

Mr. James R. Duncan
#41762
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra