IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-116
Category III
Claimant: James Duncan, #41762
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## AFFIDAVIT OF DOCTOR ORVILLE G. NEUFELD

---

I, Orville Neufeld, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1. This affidavit is based upon my personal knowledge.

2. I am currently employed part time by the Colorado Department of Corrections ("CDOC") as a contract physician.

3. I was a full time Medical Officer for CDOC from January 1, 1993 until retirement in February 1, 2003. I was the Chief Medical Officer for CTCF, the Canon City Women's Facility, and CSP. I supervised the Physician Assistants, Nurse Practitioners, and the Nursing staff. During those ten years, I served on the Medical

DEFENDANT'S EXHIBIT C

Review Board, Physicians Roundtable, and the Pharmacy and Therapeutics Committee. I was second in command for the medical care of inmates in the state of Colorado. I was also the Physician Director for the CDOC Laboratory and the Medical Advisor to the CDOC Canteen Services.

4. I have been a Doctor since 1973.

5. I received my D.O. from the Kansas City College of Osteopathic Medicine in 1973.

6. I currently hold medical a license in Colorado.

7. I also hold a Ph.D. in Pharmacology.

8. I hold certifications in Basic Life Support, Advanced Cardiac Life Support, and Advanced Trauma Life Support.

9. I was board certified as a Family physician in 1991.

10. I held lectures and laboratories as an Assistant Professor in Pharmacology in Pharmacy, Dental and Medical Pharmacology at the University of Arkansas and the University of California School of Medicine in San Francisco in 1967-68.

11. I was Chairman of the Department of Pharmacology and Acting Chairman of the Department of Physiology at the Kansas City of College of Osteopathic Medicine from 1968 to 1972.

12. I had a private medical practice in Oklahoma from 1974 to 1991. During that time, I was Chief of Staff at the Municipal Hospital for four years, Director of Medical Education for eleven years, and developed and directed the externship program for eight years.

2

13. I was a contractor in Emergency Medicine from 1991 to 1996.

14. I have substantial experience in reviewing medical records for purposes of evaluating standard of care issues and assessing whether specific treatment, care, or accommodations are needed.

15. Any CDOC inmate with a disability may submit a request for accommodation regarding access to benefits, programs, or services. Such requests are to be sent to Cathie Holst, the ADA Inmate Coordinator ("AIC"). Before an accommodation is granted, CDOC doctors screen the inmate to determine whether the inmate is disabled.

16. I have reviewed the medical records of **James Duncan, #41762**, and am familiar with his care, treatment, and needs.

17. A review of the records reveals the following:

    a. Duncan does not have a mobility or vision impairment.

    b. Duncan does have a history of lower back problems and chronic back pain. His medical file reveals a herniated disc at L5-S1, degenerative disc disease, a back strain, and osteoarthritis. Duncan has had at least four back surgeries. The last surgery resulted in a fusion and cage put around his spinal cord. While most patients in such condition are never pain free, most are capable of doing their activities of daily living. Duncan is able to ambulate and perform his activities of daily living.

    c. In 2001 Duncan complained of foot problems. He was diagnosed with plantar fasciitis with a spur in his left foot.

3

                Duncan was instructed on stretching exercises, proper use of shoe gear he had been given, and activity restrictions.

d.    CDOC has given Duncan appropriate accommodations and restrictions for his medical condition, including no lifting over 40 pounds, no intensive labor, and no working with heavy machinery. See Food Handlers Certificate.

e.    Duncan has been given a back brace and a cane. See Ambulatory Record dated 3/11/02, Response to Step 1 Grievance dated 5/23/02, Ambulatory Record dated 10/16/02.

f.    Pursuant to CDOC policy, Duncan's back brace was taken when he was placed in administrative segregation. The medical file does not show when Duncan got out of segregation and when the back brace was returned. An ambulatory record from March 18, 2004 reveals that Duncan had a back brace in March 2004.

g.    In January 2002, Duncan filed a grievance complaining about his medical care and pain medication. Part of the Response noted that Duncan had "been seen walking in yard doing [his] daily routine." Duncan was "on appropriate non-narcotic analgesics for [his] pain" and "also ha[s] received appropriate physical therapy and PT exercises."

h.    An ambulatory record from February 18, 2004 reports that Duncan says he "walks regularly 5 miles/day."

 i. On September 21, 2004, Dr. Singh noted that Duncan "walks with a cane and exercises regularly 1 mile a day per pt [and] no falls recently."

 j. Ambulatory records from February 8, 2005, and August 4, 2005, state that Duncan has a steady gait and can ambulate with a cane.

 k. Duncan was evaluated for a disability and an Accommodation Resolution was issued that concluded,

> Offender is ambulatory therefore he does not qualify for a handicapped cell. He has medical restrictions in place which adequately meet his needs (first tier, lower bunk, no heavy lifting, no intensive labor, no heavy machinery), has the use of a cane if necessary, and is able to walk 3-5 miles per day. . . . Offender does not meet the Montez criteria for a mobility disorder and does not require the accommodations he requests.

 l. For a while CDOC attempted to treat Duncan's medical issues with a TENS unit. See Ambulatory Records dated 4/22/03, 5/24/04. Dr. Shames, CDOC's Chief Medical Officer, later determined that Duncan does not need a TENS unit. See Ambulatory Record dated 9/7/04.

 m. After Duncan filed a grievance regarding the TENS unit, Dr. Singh informed Duncan that "you do not meet criterion for Tens unit at present, so your Tens unit was justifiably denied by Dr. Shames on 6/14/04. You have chronic arthritis in your back & have ability to do your activities of daily living & have received

5

    meds & specialty visits & appropriate investigations." See Response to Step I Grievance dated 10/27/04.

n.  In Response to Duncan's Step II Grievance about the TENS unit, Dr. Frantz explained that the denial of the TENS unit was appropriate. Even when Duncan had the TENS unit, he still was seen almost monthly in the clinic for complaints about back pain. Dr. Frantz reviewed Duncan's chart and concluded that there was no evidence that the TENS unit helped Duncan.

o.  Duncan claims to be vision impaired due to dyslexia. Based on my review of the medical file, it does not appear that Duncan is dyslexic. Furthermore, dyslexia is not a vision impairment. Nothing in the medical suggests that Duncan has visual acuity problems.

p.  Duncan has consistent received appropriate medical care and treatment. He has been seen by the clinic whenever necessary. There is no indication that Duncan was ever improperly denied access to medical care or treatment.

q.  CDOC consistently provided Duncan proper medical care and treatment.

FURTHER AFFIANT SAITH NAUGHT.

_____
Orville G. Neufeld, Ph.D., D.O.

6

meds & specialty visits & appropriate investigations." See Response to Step I Grievance dated 10/27/04.

n. In Response to Duncan's Step II Grievance about the TENS unit, Dr. Frantz explained that the denial of the TENS unit was appropriate. Even when Duncan had the TENS unit, he still was seen almost monthly in the clinic for complaints about back pain. Dr. Frantz reviewed Duncan's chart and concluded that there was no evidence that the TENS unit helped Duncan.

o. Duncan claims to be vision impaired due to dyslexia. Based on my review of the medical file, it does not appear that Duncan is dyslexic. Furthermore, dyslexia is not a vision impairment. Nothing in the medical suggests that Duncan has visual acuity problems.

p. Duncan has consistent received appropriate medical care and treatment. He has been seen by the clinic whenever necessary. There is no indication that Duncan was ever improperly denied access to medical care or treatment.

q. CDOC consistently provided Duncan proper medical care and treatment.

FURTHER AFFIANT SAITH NAUGHT.

_____
Orville G. Neufeld, Ph.D., D.O.

6

Sep 19 05 07:03p    Orville or Ida Neufeld    719 481 4225    p.4
Case No. 1:92-cv-00870-CMA-MEH   Document 1205-3   filed 11/30/05   USDC Colorado   pg 8 of 10
Case 1:92-cv-00870-EWN-OES   Document 1168   Filed 10/31/2005   Page 8 of 10
09-19-05  14:48    FROM-COLO ATTORNEY GENERAL    3038665443    T-252  P.06/25  F-401

Subscribed and sworn before me in the County of El Paso, State of Colorado, this 19th day of September, 2005.

MY COMMISSION EXPIRES
09/08/2008

My commission expires: _____

_____, Teri Klever
Notary Public

[Notary Seal: TERI KLEVER, NOTARY PUBLIC, STATE OF COLORADO]

7

19

## EXHIBITS

1) 01and 02 report on muscle  by doc Kakkar;s    dated 6/29/02

2) (B) another Kakkars report on my hand,dated 11/29/03

3) G-3 report on NO BENDING!! from Doc. Dwyer 2/15/00

4) ⊙-2 report by Doc Dwyer  never blockages and sterold shots    dated1/23/03

5) G-2) Doc Dwyer report for NO BENDING  3/01/00

6)Grievance #0041 Showing perjudice and discrmination by teaching staff and AIC-ADA Staff.

7)  Grievance #74 Showing how medical staff is refusing me medical care and medication.

8) 2-C and 3-C Educational report  and ( JUST THE FACTS) a report on dyslexica.

9) reuqest ~~from~~ for Duncan to have tape player and tapes by Mis. Heverly.

10) 2-X proof of faleifiying document  by Doc. Singh and C. Holst.

11) Q-4 T.A.B.E. tast dated 5/4/04  please see mis. Kayhs report at bottom of page.

12) "first" Educational report by Mis. Ring  gave wrong info. on.!!

13) (F) proof that Doc. Singh  LIED on dotors report Duncan never ~~stated~~ stated anything on arthrites

14) # 025 grievance denial of disabilitys status by all of ADA staff and DOC staff!!

15) P-P4 certificate on Art.

16) M-2 proof of learning disability in 1963!!

20

**NON HANDICAPPED CELL** — last exhibit

*This way hurts back each time you get in to or out of bed!!*

you have to bend your back about 55 to 60 degrees

**HANDICAP CELL**

proper way for a lower extremity person to get in to bed!!