IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 03-140
Category III
Claimant: Shawn M. Winkler, #48319
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

**DEFENDANTS' RESPONSE TO WINKLER'S "OBJECTION TO SPECIAL MASTER"**

_____

Defendants, through the Colorado Attorney General, respectfully submit

the following Response to Winkler's "Objection to Special Master."

**STATEMENT OF THE CASE**

Claimant Shawn Winkler filed an individual claim for damages as part of

the <u>Montez v. Owens</u> class action.  Winkler is currently in the custody of the

Colorado Department of Corrections ("CDOC"), incarcerated at the Limon

Correctional Facility ("LCF").  He filed a claim as part of the <u>Montez v. Owens</u>

class action, alleging that he is mobility, hearing, and vision disabled, and that CDOC failed to provide him proper medical care.

Special Master Borchers conducted a hearing on Winkler's claim on September 2, 2005.  The Special Master heard testimony from Winkler and Defendants' witnesses: Dr. Orville Neufeld, Cathie Holst, and Lisa Adelman. (See Final Order, p. 1;[1] Recording of Hearing[2]).  Winkler cross-examined all of Defendants' witnesses, including Dr. Neufeld who appeared by speaker phone. (See Hearing Recording).  Winkler did not request any witnesses during his hearing. (See Hearing Recording).  Winkler "did not formally offer into evidence any exhibits." (Final Order, p. 1).  All documents submitted by Winkler prior to the hearing were accepted into evidence. (Id.).

Winkler testified that he received an electric shock from a dishwasher while working in the kitchen at the Buena Vista Correctional Facility on August 13, 1999.  He claimed that as a result of this shock he began having problems with his vision, hearing, and mobility.  Winkler has had one hearing aide since 2000. According to Dr. Neufeld, Defendants' medical expert, Winkler does have some hearing loss in both ears but is able to function with the one hearing aid. Sometime prior to 2003, Winkler was placed in a wheelchair.  In 2005, CDOC medical staff evaluated Winkler and determined he is physically able to walk

---

[1] The Final Order is docketed at 1171.
[2] The Special Master previously submitted to this court a recording of the hearing on CD.

without assistance and does not need a wheelchair.  Defendants presented

testimony and evidence showing that Winkler exaggerated his condition and likely

never needed a wheelchair.  Winkler argued that he received "a complete lack of

medical care" from CDOC. (See Final Order, p. 4-5; Hearing Recording).

The Special Master issued a Final Order on October 4, 2005, denying

Winkler's claim.  The Special Master accepted Winkler's testimony that

"something significant occur[ed] on August 13, 1999."  The Special Master found

that Winkler had "some problems seeing" but that his problem did not constitute a

disability under the Remedial Plan. (Final Order, p. 5, 6).  Similarly, the Special

Master concluded that "Claimant's own testimony indicates that he has hearing

loss in both ears," but "[h]e has a hearing aid and is able to hear." (Final Order, p.

6).  Therefore, "Claimant does not meet the definition of being disabled due to a

hearing impairment, as he is able to communicate and is able to hear emergency

warnings." (Id.).  Finally, despite Defendants' evidence that Winkler likely never

needed a wheelchair, the Special Master concluded that because Winkler was

using a wheelchair on August 27, 2003—the date the Remedial Plan went into

effect and set the class—he was mobility impaired under the Remedial Plan's

definition. (Id. at 6-7).

The Special Master also concluded that "there was no evidence that would

lead to the conclusion that Claimant had been the victim of discrimination

prohibited by the ADA or Rehabilitation Act." (Final Order, p. 7).  According to

the Special Master, Winkler's complaint is really about his medical care.

"Contrary to the assertion made by Claimant that there had been an absolute lack of care, it is clear that claimant has received medical treatment while in DOC custody." (Final Order, p. 7).  The Special Master concluded that Winkler's claim alleging "substandard care or medical negligence must be brought under the Eighth Amendment . . . A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act." (Id.).  Under the Remedial Plan and the November 23, 2004 Order issued by Judges Kane and Nottingham, all claims are to be resolved under the ADA and Rehabilitation Act. (Id.).  The Special Master concluded that Winkler's claim regarding the quality of his medical care is beyond the scope of this case, but could be brought in a separate lawsuit. (Id.).

Winkler filed an Objection to the Special Master's Final Order.  He accuses the Special Master of "flagrantly twist[ing] the facts and testimony." (Objection, p. 5).  He alleges that Defendants' witnesses lied and claims that his evidence "far outweigh[ed] the C.D.O.C. fabricated defense." (Id. at p. 2, 4, 5).  He also challenges the Special Master's impartiality, claiming that the Special Master denied him witnesses and did not accept the documentary evidence he submitted. (Id. at p. 1-2).  He also claims that he did not receive sufficient discovery before the hearing. (Id. at p. 2-3).

He also argues that, contrary to the Special Master's finding, he is hearing impaired because he cannot carry on a normal conversation or hear an alarm or page. (Id. at p. 1).  He also complains that the Special Master found him to have a

mobility impairment yet still denied his claim. (<u>Id.</u>).[3]  Winkler contends that

CDOC discriminated against him by providing him negligent or improper medical

care. (<u>Id.</u> at p. 3).  He argues that the Special Master should have considered his

allegations regarding the quality of his medical care. (<u>Id.</u>).

**STANDARD OF REVIEW**

The Special Master's award of damages "may be appealed on an abuse of

discretion review to the Honorable Judge Kane."  (Remedial Plan, § XXXII).  "A

court has abused its discretion when it based its decision on an erroneous

conclusion of law or where there is no rational basis in evidence for the ruling."

<u>Mann v. Reynolds</u>, 46 F.3d 1055, 1062 (10th Cir. 1995).  "An abuse of discretion

occurs when a judicial determination is arbitrary, capricious, or whimsical.  It is

not merely an error of law or judgment, but an overriding of the law by exercise of

manifestly unreasonable judgment, or the result of impartiality, prejudice, bias or

ill will as shown by evidence or the record of proceedings." <u>United States v.</u>

<u>Wright</u>, 826 F.2d 938, 943 (10th Cir. 1987).

**ARGUMENT**

The November 23, 2004 Order by Judges Kane and Nottingham set out the

four required criteria for a <u>Montez</u> damages claim:

> 1.  Is the claimant a disabled individual who is a member of
>     the class?

---

[3] Winkler's Objection does not mention his vision and does not challenge the
Special Master's conclusion that he does not have a vision disability.

5

2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

(November 23, 2004 Order, ¶ 2).  In evaluating these criteria, ADA and Rehabilitation Act case law is to be applied. (November 23, 2004 Order, ¶ 3).

## I.  WINKLER RECEIVED A FAIR HEARING.  THE SPECIAL MASTER WAS NOT BIASED AGAINST HIM.

Winkler seems to challenge the fairness of the hearing conducted by the Special Master.  He first claims that the Special Master did not accept the documentary evidence he submitted.  Actually, the Special Master "accepted . . . [a]ll documentation previously submitted by both sides." (Final Order, p. 1).

Winkler alleges that he was denied witnesses.  He also seems to claim that he did not receive sufficient discovery before his hearing.  Winkler did not raise either of these complaints during his hearing: he did not request any witnesses during his hearing, nor did he complain about insufficient discovery. (See Hearing Recording).  Where other claimants requested time to gather additional evidence or sought to question additional witnesses, Special Master Borchers has worked to accommodate the claimants' requests, either by continuing the hearing on a later date or by allowing the claimant to submit additional evidence following the hearing.  Had Winkler raised either issue during his hearing, Special Master

Borchers would have likely worked to accommodate his requests.  Winkler did not mention either of these complaints during his hearing.  It is too late to do so now.

Winkler alleges that the Special Master "flagrantly twist[ed] the facts and testimony." (Objection, p. 5).  Contrary to Winkler's assertion, the Special Master actually resolved many fact disputes in Winkler's favor.  For example, the Special Master concluded that, based on Winkler's own testimony, Winkler has hearing loss in both ears and has some vision problems. (Final Order, p. 6).  Furthermore, Defendants submitted evidence suggesting that Winkler was not shocked on August 13, 1999—Winkler did not first complain about being shocked until January 2001—and that Winkler exaggerated his condition and likely never needed a wheelchair.  Despite Defendants' evidence, the Special Master concluded that Winkler was mobility impaired and that "something significant occur[ed] on August 13, 1999." (Final Order, p. 4, 6-7).  Review of the Final Order shows that the Special Master resolved many factual issues in Winkler's favor.  While Defendants believe that Winkler was never truly mobility impaired, none of the Special Master's factual findings were "arbitrary, capricious, or whimsical."

Winkler was given a full and fair opportunity to present his case.  The Special Master did not act impartially, prejudicially, or with bias or ill will towards Winkler.  That the Special Master did not reach the conclusion that Winkler wanted does not mean the Special Master abused his discretion.

II.     BASED ON THE EVIDENCE AND CONTROLLING
        LAW, THE SPECIAL MASTER PROPERLY DENIED
        WINKLER'S CLAIM.

Winkler challenges the Special Master's conclusion that he is not hearing

disabled.  The Remedial Plan defines "permanent hearing impairment" as

"Inmates who are permanently deaf or who have a permanent hearing impairment

so severe that they must rely on written communication, lip reading, or signing

because their residual hearing, with aids, does not enable them either to

communicate effectively or hear an emergency warning." (Remedial Plan,

§ V(A)(2)).  While Winkler does have hearing loss in both ears, "[h]e has a

hearing aid and is able to hear . . . he is able to communicate and is able to hear

emergency warnings." (Final Order, p. 6).  The Special Master correctly held that

Winkler does not meet the Remedial Plan's definition for a hearing disability.

Attempting to meet the Remedial Plan's definition, Winkler now claims

that he is unable to carry on a normal conversation or hear an emergency warning

(Objection, p. 1).  Review of the hearing recording, however, shows that Winkler

was able to effectively hear and communicate with the Special Master, opposing

counsel, and all witnesses during his hearing. (See Hearing Recording).  In fact,

Winkler was able to hear and cross-examine a witness (Dr. Neufeld) who appeared

by speaker phone. (Id.).  The Special Master was correct in finding that Winkler is

able to hear and communicate.

Winkler argues that the Special Master should not apply the narrow

definition of "permanent hearing impairment", but instead should ask whether he

is "substantially limited" in his hearing.  First, the Special Master properly applied

the Remedial Plan's narrow definition because that is the definition agreed to by

Class Counsel and Defendant.  Moreover, Winkler cannot meet the broader

definition he puts forward.  Winkler is able to hear and communicate with a

hearing aid.

> If a person is taking measures to correct for, or mitigate, a
> physical . . . impairment, the effects of those measures—both
> positive and negative—must be taken into account when
> judging whether that person is 'substantially limited' in a
> major life activity and thus 'disabled' under the [ADA].

Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999) (plaintiffs whose vision

was correctable with glasses were not disabled under the ADA).  "[D]isability

under the [ADA] is to be determined with reference to corrective measures,"

including hearing aids. Id. at 488.  Because Winkler can hear and communicate

with his hearing aid, his hearing loss does not rise to the level of a disability.  The

Special Master did not abuse his discretion in holding that Winkler does not have a

hearing disability.

The Special Master correctly held that CDOC did not discriminate against

Winkler based on any disability.  "Generally, there was no evidence that would

lead to the conclusion that Claimant had been the victim of discrimination

prohibited by the ADA or Rehabilitation Act." (Final Order, p. 7).  Winkler never

claims that he was discriminatorily denied access to any job, program, benefit, or

service that he was qualified for. (See Hearing Recording).  Even though Winkler

was found to have a mobility disability, his claim still fails because CDOC never discriminated against him because of that disability.

Winkler claims that CDOC discriminated against him by providing inadequate medical care. (Objection, p. 3).  Under the November 23, 2004 Order issued by Judges Kane and Nottingham, "[u]nless they meet the criteria established in paragraph #[2], individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." (November 23, 2004 Order, ¶ 5).  Winkler cannot prove the required criteria.  Under the ADA and Rehabilitation Act, a claimant can rarely, if ever, be "otherwise qualified" for specific medical treatment. See Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493-94 (10th Cir. 1992).  In addition, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" Id. at 1494.

To prove the required criteria, Winkler would need to show that he was discriminatorily denied medical treatment because of his mobility impairment that non-disabled inmates had access to. See Johnson, 971 F.2d at 1493.  "Without a showing that the non-handicapped receive the treatment denied to the 'otherwise qualified' handicapped, the [claimant] cannot assert that a violation of [the Rehabilitation Act] has occurred." Id. at 1494.  According to the Special Master, "it is clear that Claimant has received medical treatment while in DOC custody." (Final Order, p. 7).  Because Winkler has had access to medical care, he cannot

prove an ADA/Rehabilitation Act violation regarding medical care.  The Special

Master properly held that CDOC has not discriminated against Winkler.

### III.  THE SPECIAL MASTER PROPERLY HELD THAT WINKLER'S EIGHTH AMENDMENT CLAIM WAS BEYOND THE SCOPE OF THIS CASE.

Winkler incorrectly argues that the Special Master should have awarded

him damages due to the allegedly negligent medical care provided by CDOC.  As

the Special Master correctly found, this case is an ADA/Rehabilitation Act case.

"Pursuant to the Settlement Agreement and the order of November 23, 2004, only

the ADA and Rehabilitation Act can be utilized for adjudication of claims." (Final

Order, p. 7).  All claims, including medical malpractice claims, are evaluated

under the four criteria set out in the November 23, 2004 Order, and those criteria

are taken from the ADA and Rehabilitation Act. (See November 23, 2004 Order,

¶¶ 2, 3, 5).

Neither the ADA nor the Rehabilitation Act provides a cause of action for

an inmate to challenge the quality of medical care provided by a correctional

facility. Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1144 (10th

Cir. 2005).[4]  "The ADA does not create a remedy for medical malpractice." Bryant

---

[4] Class Counsel has argued that Fitzgerald, which was decided by the Tenth Circuit in 2005, should not apply to the Montez cases because it came down after the enactment of the Remedial Plan.  The applicability of Fitzgerald is currently pending before Judge Nottingham.  Whether or not Fitzgerald is binding is irrelevant because the case essentially reiterated existing law.  In 1992, the Tenth Circuit explained in Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992), that medical malpractice claims can rarely, if ever, meet the requirements of the ADA and Rehabilitation Act.  Johnson is binding precedent.

v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).  Winkler argues that the Special

Master should have considered his claim regarding his medical treatment because

"[d]iscriminatory care of those with disabilities inherently has eighth amendment

[*sic*] issues inextricably embedded." (Objection, p. 3).  He is incorrect.

> Even apart from the prison setting it would be extremely
> odd to suppose that disabled persons whose disability is
> treated negligently have a federal malpractice claim by
> virtue of the [ADA], whereas a sick or injured but not
> disabled person . . . must be content with the remedy that
> the state law of medical malpractice provides.  Moreover,
> the courts have labored mightily to prevent the
> transformation of the Eighth Amendment's cruel and
> unusual punishments clause into a medical malpractice
> statute for prisoners.  We would be exceedingly surprised to
> discover that Congress had made an end run around these
> decisions in the [ADA].

Bryant, 84 F.3d at 249 (emphasis added).

Regarding medical care, the ADA, Rehabilitation Act, and the November

23, 2004 Order only require that an inmate have the same access to medical care

as non-disabled inmates.  By finding that Winkler had access to and received

medical care throughout his incarceration, the Special Master properly completed

the required ADA/Rehabilitation Act analysis set out in the November 23, 2004

Order.  The Special Master is correct that evaluations of the quality of an inmate's

medical care fall under the Eighth Amendment, not the ADA or Rehabilitation

Act, and are thus outside the scope of this case.  The Special Master did not abuse

his discretion by holding that Winkler's allegations of negligent medical care are

beyond the scope of this ADA/Rehabilitation case.

**CONCLUSION**

The Special Master's Final Order denying Winkler's claim should be affirmed for several reasons. Winkler received a fair, impartial hearing. Contrary to Winkler's allegations, the Special Master fairly considered Winkler's evidence and testimony, and actually resolve many, if not most, factual disputes in his favor. None of the Special Master's factual findings constitute an abuse of discretion. The Special Master properly applied existing ADA and Rehabilitation Act case law and the definitions contained in the Remedial Plan in evaluating Winkler's claim.

The Special Master properly concluded that Winkler's claim was really about the quality of his medical care, not discrimination in access to programs, jobs, or services. The Special Master reached the correct legal conclusion in holding that claims regarding the quality of an inmate's medical care fall under the Eighth Amendment, not the ADA or Rehabilitation Act, and thus are beyond the scope of this case. For these various, independent reasons, the Special Master's Final Order should be affirmed.

Respectfully submitted this 2nd day of December 2005.

JOHN W. SUTHERS
Attorney General


s/ Jess A. Dance

13

JESS A. DANCE, 35803*
Attorney
Corrections Unit
Civil Litigation and Employment Law
  Section
Attorney for Defendants
*Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on December 2, 2005, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following e-mail addresses:

Honorable Richard M. Borchers
dborchers@legalres.com
Legal Resolution Center
707 Zenobia Street
Westminster, Colorado 80030

I further certify that I have mailed copies of the foregoing via the United
States mail, postage prepaid, at Denver, Colorado, this 2nd day of December, 2005
addressed as follows:

Shawn M. Winkler, #48319
LCF
49030 State Highway 71
Limon, CO 80826

*Courtesy Copy To:*

Cathie Holst

s/ Jess A. Dance