IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 01-092
Category I
Claimant: James Rudnick, #68432
Address of Claimant: LCF, 49030 State Hwy 71, Limon, CO 80826

_____

**DEFENDANTS' APPEAL DIRECTED TO THE HONORABLE JUDGE
JOHN KANE REGARDING DAMAGES AWARD**

_____

Defendants, through the Colorado Attorney General, respectfully submit

the following Appeal Directed to the Honorable Judge John Kane Regarding

Damages Award.

**STATEMENT OF THE CASE**

Claimant James Rudnick filed a claim for damages pursuant to the

Settlement Agreement in this case.  Mr. Rudnick was initially a Class I claimant;

Judge Borchers changed the classification to Class II.  As a class II claimant,

Rudnick did not receive a hearing.  Rudnick claims to suffer from chronic back

and hip pain, arthritis in his feet, and bunions which limit his ability to work at certain jobs and to participate in recreational activities.[1]

In the Final Order issued on September 27, 2005, the Special Master concluded that Rudnick's ability to walk has been substantially limited by his mobility impairment. The Special Master also found that Rudnick's mobility impairments significantly restricted his ability to perform several major life activities.[2] The Special Master found that Rudnick was otherwise qualified to participate in the programs or receive the benefits offered by DOC. Judge Borchers also decided that Rudnick has been discriminated against by DOC and denied accommodations because of his disability. Specifically, the Special Master determined that one of the "services" offered by DOC is medical assistive devices and these devices will help Rudnick walk and function in prison.[3] The Special Master found that Rudnick sustained injuries and awarded a medical mattress, heating pad, boots that fit his feet, custom made orthotics, and a chair and adjustable stool that accommodate Rudnick's height and weight.[4]

---

[1] Rudnick also claimed to be vision impaired. The Special Master concluded that Rudnick did not have a vision impairment. (See Final Order, p. 5-6, attached as Exhibit A).

[2] The Special Master found that Rudnick's affected major life activities included: sitting, sleeping, standing in one position for periods of over 30 minutes, moving and straightening out, moving quickly in response to orders by DOC staff, and participating in recreational activities. (See Final Order, p.7, Attached as Exh. A).

[3] Id. at p. 8.

[4] Id. at p. 8.

## STANDARD OF REVIEW

The Special Masters' award of damages "may be appealed on an abuse of discretion review to the Honorable Judge Kane."[5]  Pursuant to Fed. R. Civ. P. 53(g)(4), on appeal, this court must decide *de novo* all objections to conclusions of law made or recommended by Judge Borchers.  "A court has abused its discretion when it bases its decision on an erroneous conclusion of law or when there is no rational basis in evidence for the ruling."  Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995).  Accord In re Holocaust Victim Assets Litigation, 424 F.3d 132, 146-147 (2nd Cir. 2005), McDowell v. Philadelphia Housing Authority, 423 F.3d 233, 238 (3rd Cir. 2005), Bazzetta v. McGinnis, 423 F.3d 557, 564 (6th Cir. 2005), U.S. v. Corry, 206 F.3d 748, 750 (7th Cir. 2000), Plaintiff's Bayrol Steering Committee v. Bayer Corp., 419 F.3d 794, 802 (8th Cir. 2005).   "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).  See also Schikore v. BankAmerica Supp. Retirement Plan, 296 F.3d 956, 960 (9th Cir. 2001).  "A district court by definition abuses its discretion when it makes an error of law."  Koon v. United States, 518 U.S. 81, 100 (1996).

## ARGUMENT

The November 23, 2004 Order by Judges Kane and Nottingham set out the four required criteria for a Montez damages claim:

1.  Is the claimant a disabled individual who is a member of the class?
2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3.  Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)
4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy? [6]

In evaluating these criteria, ADA and Rehab Act case law is to be applied.[7]

Rudnick is not a member of the class because he is not mobility impaired, he cannot be "otherwise qualified" for health care appliances, he was not denied health care appliances because of his disability, and he has not sustained any injuries as a result of being denied health care appliances.

## I.      RUDNICK IS NOT MOBILITY IMPAIRED.

To be a class member, Rudnick's ability to walk must be substantially limited by an impairment (*e.g.*, he could not walk 100 yards or climb a flight of stairs without pause).  Likewise, his impairment must substantially limit his performance of major life activities.  Rudnick must also show that his impairment will last more than six months.  <u>Bragdon v. Abbott</u>, 524 U.S. 624, 630 (1998); <u>Doyal v. Okla. Heart Inc.</u>, 213 F.3d at 495 (10th Cir. 2000); Remedial Plan, V(A)(1)(b).

---

[5] <u>See</u> Remedial Plan, Section XXXII, ¶4.
[6] <u>See</u> Remedial Plan, ¶ 2.
[7] <u>Id</u>. at ¶3.

A.    <u>Rudnick's ability to walk is not substantially limited by his impairment</u>.

The CDOC (Colorado Department of Corrections) allowed Mr. Rudnick to be screened for ADA (Americans with Disabilities Act) accommodation purposes. Dr. Bloor performed the screening.  A major factor relied on by the Special Master was the alleged inconsistency in Dr. Bloor's findings.[8]  The Special Master interpreted this evidence incorrectly.  Although in January 2005, Dr. Bloor identified a mobility disability and noted that Mr. Rudnick requires the use of assistive devices, the findings must be viewed as a whole with the Doctor's other comments.

On question four of the January 11 screening form, Dr. Bloor indicates that Mr. Rudnick can walk 100 yards and climb a flight of stairs.  On question five, although Dr. Bloor indicated that Rudnick requires assistive devices, her further explanation at the bottom of the page merely states that the inmate is requesting an orthotic, not that she is recommending or ordering an orthotic.[9]  Likewise, Ambulatory Health Records provided to the court, dating back five years, merely indicate what Mr. Rudnick was requesting, not what was being ordered.[10]  On question nine, Dr. Bloor indicates that, with a minor restriction, Mr. Rudnick can work a full day.  Specifically, Dr. Bloor indicates that he can work eight hours, and only restricts Mr. Rudnick from work on ladders for more than four hours at a time.  Otherwise, he can work a full eight hour day.  Dr. Bloor's examination also

---

[8] <u>See</u> Final Order, p. 6.
[9] <u>See</u> Def. Exh. J. p.3.

notes that sports that require heavy footwork should be limited to fifteen minutes; therefore, he can access and participate in recreational activities.[11]

In the Accommodation Resolution she completed on February 8, 2005, Dr. Bloor indicates that, "[James Rudnick] was screened by the physician and is not disabled in any way…he is completely capable of ambulating 100 yards … despite complaints of back, hip, and foot pain.[12] Therefore, there is no contradiction regarding Dr. Bloor's order or recommendations regarding Mr. Rudnick's ability to ambulate. Mr. Rudnick can walk at least 100 yards and climb a flight of stairs. He is also able to participate in recreational activities, but not more than fifteen minutes at a time if the recreational activity requires heavy footwork. Thus, Mr. Rudnick is not mobility impaired. The Special Master made a reversible error when he determined that Mr. Rudnick is mobility impaired and a class member.

B.    <u>There is no substantial impairment of any major life activities</u>.

In addition to his ability to walk, it is Mr. Rudnick's ability to function that determines whether he is disabled. To be disabled, Mr. Rudnick must offer specific evidence showing that an impairment substantially limits a major life activity. "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis or an impairment. Instead, the ADA requires those 'claiming the Act's protection…to prove a disability by offering evidence that the extent of the limitation [caused by the

---

[10] <u>See</u> Claimant's Exhibits.
[11] <u>See</u> Def. Exh. J. p.3.
[12] <u>See</u> Def. Exh. B.

impairment] in terms of their own experience…is substantial."  Toyota Motor

Manuf. v. Williams, 534 U.S. 184, 198 (2002) (quoting Albertson's Inc. v.

Kirkinburg, 527 U.S. at 567).

   Consequently, the effect upon a major life activity must be substantial.  "A

person is substantially limited when he or she is either unable or significantly

restricted in performing a major life activity that a person in the general population

can perform without significant restriction."  Lanman v. Johnson County, 393 F.3d

1151, 1157 (10th Cir. 2004); Doebele v. Sprint, 342 F.3d 1117, 1130 (10th Cir.

2003); Pack v. Kmart, 166 F.3d 1300, 1305 (10th Cir. 1999).  Because

"substantially" must be "interpreted strictly to create a demanding standard for

qualifying as disabled", the term "substantially" means "considerable" or "to a

large degree."  Toyota, at 196-97.

   A major life activity is a "basic activity that the average person in the

general population can perform with little or no difficulty."  Doyle, 213 F.3d at

495; Pack, 166 F.3d at 1305.  "In deciding whether a particular activity is a 'major

life activity', we ask whether that activity is significant within the meaning of the

ADA, rather than whether that activity is important to the particular individual."

Pack, 166 F.3d at 1305.  Some examples of major life activities include walking,

seeing, hearing, speaking, learning, reproduction, sleeping, working and caring for

oneself.  Toyota, supra at 195.

   Aside from walking, Mr. Rudnick has identified in his claim that he has

trouble sleeping.  However, there is no specific evidence in the record that Mr.

Rudnick is substantially limited in his ability to sleep.  The record does not show any medical diagnosis or treatment for sleep deprivation.  Furthermore, Mr. Rudnick is not claiming that he is unable to sleep or that his ability to sleep is significantly restricted.  Therefore, no major life activities are affected by Mr. Rudnick's physical condition.

      C.      <u>There is no evidence that impairment will last more than six months</u>.

Finally, in addition to the impairment substantially limiting the ability to walk and the impairment affecting major life activities, the impairment must also last for more than six months.  <u>Bragdon</u>, <u>supra</u>.  Again, the only objective evidence presented is Dr. Bloor's evaluation of Mr. Rudnick.  According to Dr. Bloor, Mr. Rudnick does not have an impairment that substantially limits his ability to walk or that substantially limits any of Mr. Rudnick's major life activities.  Because he does not have an impairment that substantially limits walking or any other major life activity, it is an error for the Special Master to find that Mr. Rudnick's condition would affect his major life activities for more than six months.

Because specific objective evidence has been presented that contradicts Mr. Rudnick's subjective complaints regarding his ability to ambulate and participate in recreational activities, he is not mobility impaired and not a member of the class.  Likewise, there has been no specific evidence presented that suggests Mr. Rudnick's physical condition causes a substantial impairment of his major life activities for more than six months.  Therefore, the Special Master made a

reversible error, in concluding that Mr. Rudnick is mobility impaired under the Remedial Plan or the ADA.

## II.   MR. RUDNICK CANNOT BE 'OTHERWISE QUALIFIED" FOR MEDICAL ASSISTIVE DEVICES.

Mr. Rudnick is claiming that he is mobility impaired.  A claimant alleging discrimination due to failure to receive medical treatment "must prove that he or she was discriminatorily denied medical treatment because of the [disability] and, at the same time, must prove that, in spite of the [disability], he or she was 'otherwise qualified' to receive the denied medical treatment." Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992).  Mr. Rudnick was denied medical assistive devices because he did not qualify for them, not because he has a disability.  It follows that Mr. Rudnick cannot be "otherwise qualified" for assistive devices that the medical unit personnel determined his condition did not warrant.

### A.   Rudnick is not "otherwise qualified" for medical treatment.

"An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979) (emphasis added).  Here, the court must ask whether Rudnick would be "otherwise qualified" for the desired medical assistive devices if not for his medical condition.  The answer is no because Rudnick only requests the devices because of his medical condition.  "[T]he term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of

medical treatment decisions without distorting its plain meaning.'" Johnson, 971 F.2d at 1493-94 (quoting United States v. University Hosp., 729 F.2d 144, 156 (2nd Cir. 1984)). "[W]here medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services." University Hosp., 729 F.2d at 156. Consequently, "the 'otherwise qualified' criteria . . . cannot be meaningfully applied to a medical treatment decision." Id. As a result, you can only be "otherwise qualified" for a job, program, or service, not medical treatment.

In Fitzgerald v. Corrections Corporation of America, the Tenth Circuit explained that

> Fitzgerald would not have been 'otherwise qualified' for such treatment in the absence of his alleged disability—his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.

Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005).[13] Similarly, Rudnick is not "otherwise qualified" because, absent his medical condition, he would not have been eligible for the medical devices in the first place. See Grzan v. Charter Hosp., 104 F.3d 116, 121 (7th Cir. 1997) (plaintiff was not "otherwise qualified" for psychiatric treatment because absent her handicap (psychiatric condition) she would not have needed psychiatric treatment). "[I]f

---

[13] Class Counsel has argued that Fitzgerald, which was decided by the Tenth Circuit in 2005, should not apply to the Montez cases because it came down after the enactment of the Remedial Plan. The applicability of Fitzgerald is currently pending before Judge Nottingham. Whether or not Fitzgerald is

such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment." <u>Johnson</u>, 971 F.2d at 1493.  Therefore, the Special Master made a reversible legal error in concluding that Rudnick was "otherwise qualified" for medical assistive devices.

"Without a showing that the non-handicapped receive the treatment denied to the 'otherwise qualified' handicapped, the [claimant] cannot assert that a violation of [the Rehab Act] has occurred." <u>Id</u>. at 1494.  Because other inmates would not be eligible for medical assistive devices without an order or prescription for such devices, CDOC's denial of assistive devices to Rudnick is not an ADA/Rehab Act violation.  Accordingly, the Final Order must be reversed.

    B.    <u>Medical Assistive Devices are not "Services"</u>.

In most cases, medical assistive devices help the "otherwise qualified" Claimant participate in services, jobs and programs.  For example, a wheelchair helps the inmate get to class, visiting or the dining hall; glasses enable an inmate to participate and function during classes and work; hearing aides help an inmate hear instructions, orders or warning signals.  These devices are quite different from the medical assistive devices ordered by the Special Master.  Because medical devices such as wheelchairs, glasses and hearing aids are not readily available to non-qualifying inmates, inmates are required to be examined by medical staff in order to determine the necessity of such devices.  Upon request by Mr. Rudnick, Dr. Bloor performed such an examination.  As a result, Dr. Bloor

---

binding is irrelevant because the Tenth Circuit's 1992 opinion in <u>Johnson</u>, which is binding, established

determined that Mr. Rudnick did not qualify or require any of the devices he was requesting.[14]

Moreover, the Special Master erred in interpreting "services" broadly. Many courts have consistently and narrowly construed "services" in discrimination cases under the ADA and Rehabilitation Act.  These courts have considered the following to be "services":

- Access to telephones: <u>Niece v. Fitzner</u>, 922 F.Supp 1208 (E.D. Mich. 1996); Acting as Trustee (or other preferred status): <u>Dean v. Knowles</u>, 912 F.Supp 519; Obtaining Meals, and use of or access to Meals, Toilet, Shower, Recreational Areas: <u>Schmidt v. Odell</u>, 64 F.Supp. 2d 1014 (D. Kan. 1999); Dining Hall: <u>Crawford v. Indian Dept. of Corrections</u>, 115 F.3d 481 (7th Cir. 1997); Educational Services (library access and education programs): <u>Erickson v. Bd. Of Governor's of State Colleges</u>, 2000 WL 307121 (7th Cir. 2000); Housing: <u>Garrett v. Angelone</u>, 940 F.Supp. 933 (4th Cir. 1997); and counseling sessions, diagnosis/treatment, and mental health: <u>Lee v. City of Los Angeles</u>, 250 F.3d 668 (8th Cir. 2001); ADA § 202, 42 U.S.C.A. § 12132.

The Special Master's interpretation of "services" appears to be contrary to many other courts and overly broad.  Disabled inmates must be provided access to services or programs similarly to non-disabled inmates.  Having access to clinical

---

that medical malpractice claims can rarely, if ever, meet the requirements of the ADA and Rehab Act.
[14] <u>See</u> Def. Exh. B and J.

services for treatment, diagnosis and counseling for a condition is one thing, it's quite another to be ordered or prescribed devices, drug prescriptions or therapy.

In fact, the Remedial Plan specifically addresses this issue. According to the Remedial Plan, the ordered medical assistive devices are "Health Care Appliances", not "Services".[15] "Health care appliances are assistive devices or medical support equipment, which have been prescribed for the inmate and approved by Clinical Services."[16] It follows that "[h]ealth care appliances shall be prescribed and approved for eligible inmates by licensed CDOC health care providers, subject to medical necessity, safety, and security.[17] In Mr. Rudnick's case, Dr. Bloor was such a qualified licensed CDOC health care provider who, after examination, determined that Mr. Rudnick was not an eligible inmate for assistive devices or medical support equipment. Consequently, Mr. Rudnick was not prescribed or approved for such devices.

Contrary to Dr. Bloor's medical examination and opinion, the Special Master ordered Rudnick to be provided with a medical mattress, a heating pad, boots that fit his feet, custom made orthotics, and a chair and an adjustable stool that accommodates his height and weight and adequately supports his back and lower extremities. All of these devices, except for the shoes and orthotics, are for Mr. Rudnick to use in his cell. It was not claimed, nor are there any facts to suggest these devices were ordered or requested to enable Mr. Rudnick to

---

[15] See Remedial Plan, XVI (A-B).
[16] Id. at (A).
[17] Id. at (B).

participate in any jobs, programs or services.  Essentially, Mr. Rudnick's complaint is that he was not given special accommodations.  Similar to <u>Bryant</u>, "he is not complaining of being excluded from some prison service, program, or activity, for example [recreational activity that his back pain, hip pain, and blistered toe] would prevent him from taking part in without some modification of the [service].  He is complaining about … treatment of his [back pain, hip pain, and blistered toe]."  <u>Bryant v. Madigan</u>, 84 F.3d at 249 (7th Cir. 1996).

None of the medical assistive devices ordered by the Special Master contribute to Rudnick's ability to obtain employment, attend classes or participate in the various services offered by the CDOC.  Therefore, the Special Master's order for unnecessary medical devices should be reversed.

      C.    <u>Requiring unnecessary assistive devices places an undue burden on the CDOC</u>.

Providing an unnecessary medical assistive device that contradicts medical opinion places an undue burden on the CDOC.  The Remedial Plan does not require CDOC to provide accommodations that would impose an undue burden on the agency.[18]  Requiring the agency to provide medical assistive devices to inmates who have been screened by a medical professional who did not order them would place an undue financial burden on the CDOC.

The purpose of accommodating a disability is to allow a disabled inmate to do something else (*i.e.* perform jobs, participate in programs and services).  None

---

[18] <u>See</u> Remedial Plan, Section XI(B).

of the assistive devices ordered by the Special Master contribute to Mr. Rudnick's ability to participate in programs or services.  The accommodation is a means to an end, not the end in itself.  The devices ordered by the Special Master are health care appliances or merely comfort items.  Because Mr. Rudnick was not eligible for such devices and licensed CDOC medical staff did not prescribe these devices, the Special Master's order places an undue financial burden on the CDOC.  Thus, the Special Master's Final Order should be reversed.

### III.  CDOC DID NOT DENY MEDICAL ASSISTIVE DEVICES TO MR. RUDNICK BECAUSE OF A DISABILITY.

Mr. Rudnick was denied medical assistive devices by Dr. Bloor because he was not disabled and did not require the devices in order to participate in jobs, programs and services.  If Mr. Rudnick is not disabled then he cannot be denied devices because of a disability.  In fact, none of the ordered devices have anything to do with Mr. Rudnick's ability to walk, participate in jobs and programs, or access various CDOC services. Mr. Rudnick provided no evidence that he was treated any differently than any other inmate.  Mr. Rudnick must be compared against all inmates, not just inmates who have medical conditions that warrant medical devices.  Not all inmates have access to tailored health care appliances. Therefore, the CDOC could not have discriminated against Mr. Rudnick when Dr. Bloor and medical staff did not prescribe special accommodations.

### IV.     CDOC HAS NOT HARMED MR. RUDNICK.

Mr. Rudnick has the burden to prove that he was discriminated against because of his disability and that discrimination caused him an injury.  To be awarded damages under the Remedial Plan, the CDOC must have failed to reasonably accommodate an inmate with a disability that prevented him from participating in jobs, programs and services offered by DOC causing the inmate a physical or non-physical injury.[19]  The only viable injury for which Mr. Rudnick presented evidence was blisters on his feet.  However, it is unclear what caused the blisters.  There is no evidence to support the position that the blisters were caused because the CDOC denied Mr. Rudnick insoles or custom orthotic shoes because of a disability.  In fact, Mr. Rudnick left Question Five blank, regarding injuries that occurred at DOC, on the Supplemental Claim form.   He stated, "not an issue for these mobility problems." [20]  Otherwise, the blisters certainly did not arise from being denied the other assistive devices ordered by the Special Master.  Because Mr. Rudnick has not presented evidence that he sustained an injury that was the result of CDOC's discrimination against him because of a disability, the Special Master's order resulted in reversible error and an abuse of discretion.

### CONCLUSION

To recover damages under the Montez settlement, the Claimant must be a member of the class; must be otherwise qualified for jobs, programs, and services; must have been discriminated against because of his disability; and finally, must

have sustained an injury that was the result of disability discrimination.  Mr. Rudnick failed to meet this burden and is not eligible to recover damages under the Remedial Plan.

Mr. Rudnick was screened by a competent medical doctor and found not to have a mobility impairment.  Although Mr. Rudnick may have some medical issues, his issues do not rise to the level required by the Remedial Plan.  The facts do not support a finding of mobility impairment that affords Mr. Rudnick the opportunity to recover damages.  Therefore, Mr. Rudnick is not a member of the class.

Also, the Special Master erred in ordering CDOC to provide medical assistive devices to Mr. Rudnick.  According to licensed CDOC medical staff, Mr. Rudnick's condition does not warrant these medical assistive devices.  No records indicate that Mr. Rudnick was ever ordered or prescribed these items by medical staff at the CDOC.  A claimant cannot be otherwise qualified for medical treatment devices that qualified medical staff determined they do not need.  Furthermore, Mr. Rudnick cannot be discriminated against because of a disability if medical staff has determined he does not have one.  It follows that Mr. Rudnick has not suffered any injury as a result of disability discrimination by CDOC.  The Special Master erred when he determined that Mr. Rudnick has met his burden on the elements indicated in the Remedial Plan.

---

[19] See Remedial Plan, Section IV. ¶ 2.
[20] Supplemental Claim form, Question 5.

The Defendants, through the Colorado Attorney General, respectfully request that the Special Master's Final Order regarding awarded damages be reversed.

Respectfully submitted this 5th day of December 2005.

JOHN W. SUTHERS
Attorney General


s/ Adam Wiens

ADAM WIENS, #36357*
Attorney
Civil Litigation and Employment Law
  Section
Attorney for Defendants
*Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on December 5, 2005, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following e-mail addresses:

Honorable Richard M. Borchers
dborchers@legalres.com
Legal Resolution Center
707 Zenobia Street
Westminister, Colorado 80030

I further certify that I have mailed copies of the foregoing via the United
States mail, postage prepaid, at Denver, Colorado, this 5th day of December, 2005
addressed as follows:

James Rudnick, #68432
LCF
49030 State Hwy 71
Limon, CO 80826

***Courtesy Copy To:***

Cathie Holst

s/ Darlene Hill