IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 92-cv-EWN-OES

JESSE (JESUS) MONTEZ, *et al.,*

Plaintiffs, as representatives of themselves and all others similarly situated in this class action,

        -vs-

BILL OWENS, *et al.,*

        Defendants.

_____

Claim Number 05-001
Category V
Claimant: Kenneth G. Garcia, Jr.
Address of Claimant: P.O. Box 777, Canon City, CO 81215

_____

Claim Number 05-002
Category V
Claimant: Mary Alonzo
Address of Claimant: 3110 Umatilla St., Denver, CO 80211

_____

Claim Number 05-003
Category V
Claimant: Kenneth Alvin G. Jones, as brother of Nathan Jones
Address of Claimant: c/o H. Earl Moyer, Attorney at Law, 1401 Saulsbury Street,
        #204, Lakewood, CO 80214

_____

Claim Number 05-004 (formerly 02-196)
Claimant: Elizabeth Serene, as mother of Rex Serene (Deceased)
Address of Claimant: 6413 Yank Court, #B, Arvada, CO 80004

_____

Claim Number 05-005
Category V
Claimant: John E. Mossman, Sr., as father of Paul Mossman (Deceased)
Address of Claimant: c/o H. Earl Moyer, Attorney at Law, 1401 Saulsbury, #204,
        Lakewood, CO 80214

---

Claim Number 05-006
Category V
Claimant: Estate of Jessie Montez
Address of Claimant: c/o Paula Greisen, King & Greisen, Attorney at Law,
                1670 York Street, Denver, CO 80206

---

Claim Number 05-008
Category V
Claimant: Clifford K. and Margarite M. Moore (as Father and Mother of Steven
        Richard Moore)
Address of Claimant: 101 Saturn Circle, Radcliff, KY 40160-2661

---

AND ALL SIMILARLY SITUATED CLAIMANTS.

---

## PLAINTIFF'S REPLY IN SUPPORT OF APPEAL OF ORDER RE: CATEGORY V DAMAGES (DIRECTED TO JUDGE NOTTINGHAM)[1]

---

The Plaintiff Class hereby submits its Reply in support of its appeal of the "Order of Special Masters – Category V Damages."

### SUMMARY OF ARGUMENT

On September 6, 2005, the Special Masters entered an order denying certain types of damages to claimants under Class V--damages due to death--in the claim process outlined in the Remedial Plan. The Plaintiff has appealed that Order to this Court, and Defendants have responded. Plaintiff now submits the following Reply in support of the Class Appeal Regarding Category V Damages.

The parties agree that contrary to the ruling of the Special Masters, Plaintiff's Eighth Amendment claims remain, along with claims arising under the ADA and

---

[1] This Reply relates to Plaintiff Class Appeal of Order of Special Master Re: Category V Damages (Docket # 1149) and Defendants' Response thereto (Docket #1195).

2

Rehabilitation Act. The only question, then, is how to address damages flowing from those violations, and whether Defendants may attempt to resurrect debates on liability at this late hour.

## ARGUMENT

### I. THE MEASURE OF DAMAGES FOR VIOLATIONS OF FEDERAL STATUTES IS GOVERNED BY FEDERAL, NOT STATE, LAW.

Defendants first charge that "Category V damages are limited by Colorado's survivorship statute." *Resp. at 3*. Under that statute, a decedent's estate may recover only certain economic losses, but not damages for "pain, suffering, or disfigurement, nor prospective profits or earnings after the date of death." Colo. Rev. Stat. § 13-20-101(1). Of course, decedents whose earnings capacity was limited to inmate work at the Colorado Department of Corrections earned mere pennies a day. If Defendants' analysis is to prevail, the outcome is ironic indeed: inmates who suffered lesser losses as a result of Defendants' actions (or inaction) may recover more than the estates of those whose death was caused by Defendants' illegal conduct. That is, "damages due to death" would be virtually no damages at all. This cannot be—and is not—the law.

#### A. *ROSENBLUM* IS NOT BINDING AND WAS WRONGLY DECIDED.

The Special Masters relied on an eleven-year-old trial court decision to hold that neither ADA nor Rehabilitation Act claims survived the death of Category V inmates. *See Rosenblum v. Colo. Dept. of Health*, 878 F.Supp. 1404 (D. Colo. 1994). In determining that the Colorado survival statute barred the decedent's ADA claim, the *Rosenblum* court turned to 42 U.S.C. § 1988(a), which provides for a reference to state law in construing certain federal civil rights statutes. This reliance on Section 1988 was

3

unwarranted, because Section 1988(a) includes neither the ADA nor the Rehabilitation Act among the federal civil rights laws to which it applies.  *See Fleming v. U.S.P.S.*, 27 F.3d 259, 262 (7th Cir. 1994)(Section 1988 does not apply to Rehab Act).  *See also Hanson v. Atlantic Research Co.*, 2003 WL 430484 (E.D.Ark. 2003)(labeling *Rosenblum* "erroneous.").[2]

The weight of authority dictates that federal common law, not state statute, governs the survival of ADA and/or Rehabilitation Act claims, and that under federal common law, claims for compensatory damages under the ADA and Rehabilitation Act do indeed survive the death of the claimant.[3]  *See, e.g., Estwick v. U.S. Air Shuttle*, 950 F.Supp. 493, 498 (E.D.N.Y. 1996)(ADA claim survives death under federal common law); *Carabello v. South Stevedoring*, 932 F.Supp. 1462 (S.D.Fla. 1996)(same); *EEOC v. Deloitte & Touche*, 2000 WL 1024700 *7 (S.D.N.Y. 2000)(same).  *Cf. Arnold v. City of New York*, 340 F.Supp.2d 550 (M.D.Pa. 2004)(ADA and Rehab Act claims on behalf of plaintiff's decedent).  This analysis is consistent with the remedial purpose of those statutes, and the Plaintiff Class respectfully submits that *Rosenblum* should be disregarded as an outlier.

### B.    IN ANY EVENT, *ROSENBLUM* DOES NOT APPLY TO SECTION 1983 CLAIMS.

Defendants apparently seek to reduce to a pittance the damages available to deceased inmates by invoking the Colorado survival statute as to all of Plaintiff's claims.

---

[2]    *See also* "Treatment of Americans with Disabilities Act Claims When the Plaintiff Is Deceased:  A Call for Uniformity," 48 Emory L.J. 733 (1999); "Survivorship Claims Under Employment Discrimination Statutes," 69 M.S.L.J. 425 (1998)(stating that the *Rosenblum* court "misread" applicable law).

[3]    Defendant also makes a "throw-away" argument that because the Rehabilitation Act does not provide for emotional distress damages, they are thus not available under the ADA. As the ADA specifically provides for such damages, Defendants' argument has no support.

4

However, neither the Colorado survival nor wrongful death statute operates to limit the damages available to a decedent (or his estate, through his next friend) for federal civil rights claims.  *White v. Talboys*, 573 F.Supp. 49, (D. Colo. 1983)(Kane, J.)("Since the allegedly unconstitutional conduct caused the decedent's death, application of Colorado survival and wrongful death damage rules would undermine the deterrence goals of § 1983.").  *See also Jackson v. Marsh*, 551 F.Supp. 1091, 1095 (D. Colo. 1982)(state law limiting damages does not apply to so-called "constitutional torts.").

The only question that remains, then, is what measure of damages is available for a Section 1983 claim where, as here, the constitutional violation has caused or contributed to death?  The Tenth Circuit adequately analyzed that issue fifteen years ago in *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990).   In that case, the Court rejected the application of the Oklahoma survival statute because it would so severely curtail recoverable damages and thus be inconsistent with the public policies underlying Section 1983.   Instead, the court concluded that

> We believe appropriate compensatory damages would include medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions.

900 F.2d at 1507.

## II. CLAIMANTS WITH CATEGORY V DAMAGES ARE ELIGIBLE TO RECOVER ALL DAMAGES OTHERWISE AVAILABLE UNDER 42 U.S.C. § 1983.

### A. THE SPECIAL MASTERS ERRED IN FINDING ALL EIGHTH AMENDMENT CLAIMS WERE DISMISSED.

The Special Masters erroneously asserted that all Eighth Amendment §1983 claims had been dismissed from this case.  As already set forth in Plaintiff's Appeal, that

5

conclusion was plainly in error. Even the Defendants concede that Eighth Amendment claims remain. Their Response acknowledges that Eighth Amendment claims continue to be asserted pursuant to 42 U.S.C. § 1983 against a number of Defendants in their individual capacities. *See Defendants' Response at pp. 1-2, 5*.

However, despite that the Defendants' acknowledge that Eighth Amendment claims remain in the case, they seek to render those claims meaningless by a number of arguments attacking whether Category V claimants can recover any meaningful damages under the Eighth Amendment. As will be discussed more below, each of those arguments is flawed.

### B. DEFENDANTS MISAPPREHEND AND MISREPRESENT THE EIGHTH AMENDMENT ISSUES PRESENTED HERE.

First, Defendants dismissively label the Eighth Amendment claims of dead prisoners "medical malpractice" claims, and seek to avail themselves of the obvious: garden variety medical negligence does not implicate the ADA, the Rehabilitation Act, or the Eighth Amendment. But the time for determining whether the inadequate medical care provided here implicates the Eighth Amendment is a liability-based debate foreclosed by the Remedial Plan. Whether the allegation that a Defendant's withholding of adequate medical care states a claim for which relief may be granted under the ADA, the Rehabilitation Act, or the Eighth Amendment, is likewise a liability fight rendered moot by the Remedial Plan.

Defendants' end-run around the Remedial Plan must be rejected out-of-hand. They seize on the Special Masters' observation that "review of the claims placed into Category V does not indicate that any listed defendant had any direct contact with one of the deceased" (*Order of Special Masters at p. 7*) and attempt to use it to escape liability

6

for the Section 1983 claims of the Category V decedents. However, liability is no longer subject to dispute here. If indeed any defendant wished to argue that he or she was not liable under 42 U.S.C. § 1983, they should have advanced that argument before agreeing to the Remedial Plan.[4]

Finally, despite acknowledging that Eighth Amendment claims remain, Defendants argue that the claims forms suggest that such theories were implicitly abandoned. That is, Defendants suggest that the four criteria listed on the claim form reflect only an ADA/Rehab Act analysis and thus do not satisfy the "elements" of an Eighth Amendment claim. *See Resp. at 8-9.* Of course, the claim form was never intended to track the *prima facie* liability elements for any particular legal theory. Rather, the four listed questions essentially ask: Questions 1 and 2) is the claimant a member of the class? Question 3) is there causation? Question 4) what are the damages? Defendants' suggestion that the Eighth Amendment claims are abandoned because the claim forms do not track the Eighth Amendment liability elements misses the point. This Court has repeatedly stated that liability need not be proved and liability defense cannot be raised during the damage claim process. Thus, there is no need for the claimants to meet the Eighth Amendment liability test in a damage claim form. To the contrary, it is for the Special Master to determine if a claimant can meet the four criteria in the damage claim process – regardless of which theory of liability is being asserted.

At a status conference on October 27, 2004, the parties and the court discussed the interplay between the Eighth Amendment claims and the nature of the class (disabled

---

[4] Rather than re-brief Defendants' efforts to gut the remedial plan, Plaintiff Class also incorporates by reference the legal arguments contained in its Class Appeal Regarding the Availability of Damages for Medical Care, filed September 7, 2005, which thoroughly address this issue.

7

persons). At that time, the court and counsel agreed that in determining that how a claim was labeled made little difference. Judge Kane described a particular factual scenario and observed:

> Now, as an individual claimant, then he files – that's cruel and unusual punishment. It's also malpractice, and it's also a failure to accommodate under the Americans with Disabilities Act. So it fits all three? ***But what difference does it make?***
>
> ***We get back to this question of, what do we really care, in terms of implementing a settlement, whether this comes under the Rehabilitation Act or not?*** ….

*Dkt. 1107, Transcript of Proceedings, p. 44 (emphasis added).* Obviously, Eighth Amendment claims were neither abandoned[5] nor foreclosed by the language of the claim forms. Rather, at the time that such forms were prepared (prior to the *Fitzgerald case discussed below)*, it simply made no difference. That Defendants invoke after-the-fact legal developments to reduce their exposure (see below) does not change the intent and purpose of the Remedial Plan or the claim forms.

The argument that the Eight Amendment claims were somehow knowingly and intentionally "forfeited" by the Plaintiffs in the Remedial Plan has absolutely no basis in fact. If the parties had intended to abandon these claims, the Remedial Plan would have provided so specifically. In fact, there is no such provision regarding the forfeiture of any claims in the Remedial Plan, nor was there any discussion whatsoever by counsel during the settlement negotiations to abandon such claims. To the contrary, the Plaintiffs considered themselves in a superior bargaining position during settlement and in fact,

---

[5] The suggestion implicit in Defendants' brief --that Plaintiff Class abandoned Eighth Amendment claims in agreeing to the claim form language—is implausible to the extreme. Why would a prevailing party abandon a claim on which it had prevailed as to liability?

8

achieved every material relief they sought in this case. It would be nonsensical for them to have voluntarily forfeited a major claim during the settlement process at which they believed they had superior bargaining power. Class counsel has previously briefed this issue in "Plaintiff Class Appeal Regarding the Availability of Damages for Denial of Medical Care," Docket# 1065, and Plaintiffs incorporate those arguments expressly herein.

### C. DEFENDANTS MAY NOT AVOID THE CONSEQUENCES OF THE REMEDIAL PLAN BY CONTESTING LIABILITY BASED ON NEW CASE LAW.

Finally, Defendants suggest that even if the ADA or Rehabilitation Act survives, no damages can be recovered under those theories. In making this charge, Defendants rely on *Fitzgerald v. Correctional Corp. of America*, 403 F.3d 1134 (10th Cir. 2005), in which the Tenth Circuit suggested that "purely medical decisions" do not "ordinarily" fall within the scope of the ADA or Rehabilitation Act. 403 F.3d at 1144.

At the time the parties agreed to the Remedial Plan, the law regarding damages recoverable under the ADA and Rehabilitation Act for substandard medical care was unsettled. *Compare Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)(whether section 504 applies to individual medical treatment decisions "is a controversial issue that the Supreme Court has expressly left open."*).*[6] The Defendants could have, but did not, attempt to secure dismissal of those claims under Rule 12(b)(6) (failure to state a claim for which relief may be granted). Rather, Defendants stipulated to liability and agreed to a structured process under which claimants could recover their

---

[6] In *Johnson*, the Tenth Circuit confirmed that the application of the ADA or the Rehabilitation Act to a treatment decision is a fact-specific inquiry. *See generally* 971 F.2d at 1493-94 (comparing cases where the Rehabilitation Act was implicated with other cases where it was not).

9

damages. Now, invoking a decision issued two years later, Defendants are fundamentally attacking the applicability of the ADA and Rehabilitation Act to Plaintiff's claims. Their attempt is too little, too late. Plaintiff Class respectfully submits that it is entirely improper for Defendants to rely on an intervening change in the law to limit their exposure. The standards for recovery have already been established by the stipulation of the parties.

Moreover, *Fitzgerald* was a specific summary judgment decision that did not, by its plain terms, foreclose the claims herein. Even if *Fitzgerald* could be applied retroactively despite that liability is already stipulated, a careful reading of *Fitzgerald* reveals an ADA/Rehabilitation Act analysis that is both brief and fact-specific. In *Fitzgerald*, the Tenth Circuit upheld the grant of summary judgment to a defendant physician on the plaintiff's ADA and Rehabilitation Act claims based on the evidence adduced in that case. The Court's analysis of the ADA/Rehabilitation Act issues consisted *entirely* of the following:

> Under either the ADA or the Rehabilitation Act, Fitzgerald is obligated to show that he was 'otherwise qualified' for the benefits he sought and that he was denied those 'solely by reason of disability.' ... Further, we have held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." … As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say ... that a particular decision was 'discriminatory.'" … Several circuits have expressly concluded that neither the ADA nor the Rehabilitation Act provide remedies for alleged medical negligence.…
>
> In the instant case, the principal basis for Fitzgerald's claim against Dr. Josephson is the doctor's recommendation that the prison may 'do nothing' as an acceptable course of treatment for Fitzgerald's

> injuries. Dr. Josephson suggested the non-treatment option as one option, but also recommended surgery as another option. He did not make the final decision to deny treatment. Even if Dr. Josephson had been the final decision-maker, Fitzgerald would not have been 'otherwise qualified' for such treatment in the absence of his alleged disability--his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act. Fitzgerald's claims against Dr. Josephson under the ADA and Rehabilitation Acts were therefore properly rejected on the merits under §1997e(c)(2).

403 F.3d at 1143-44 (internal citations omitted).  It is clear that the *Fitzgerald* decision was a fact-specific inquiry as to how an inmate can prove liability under the ADA or Rehabilitation Act;  that is, when can a plaintiff establish that a damaging treatment decision was motivated by discriminatory animus?  No such analysis is needed here, of course, because liability is no longer at issue.

## CONCLUSION

For the reasons stated above, Plaintiffs request that this Court reverse the Order of the Special Masters that applies the state law damage restrictions on Class V damages or that otherwise purports to limit the ability of class members to recover their proximately caused damages.

RESPECTFULLY SUBMITTED this 9th day of December, 2005.

KING & GREISEN, LLP

*/s/ Paula Greisen*
Paula D. Greisen
1670 York Street
Denver, CO  80206
(303) 298-9878
(303) 298-9879 (fax)
greisen@kinggreisen.com

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December 2005, I served the foregoing, **PLAINTIFF CLASS APPEAL OF ORDER OF SPECIAL MASTERS RE: CATEGORY V DAMAGES (DIRECTED TO JUDGE NOTTINGHAM)** via electronic mail to:

James Quinn, Esq.
Jess Dance, Esq.
Elizabeth H. McCann, Esq.
Assistant Attorney General
1525 Sherman Street, 5th Floor
Denver, Colorado   80203
James.Quinn@state.co.us
jess.dance@state.co.us
beth.mccann@state.co.us

Hon. Richard M. Borchers
Legal Resolution Center
7907 Zenobia Street
Westminster, CO  80030
dborchers@legalres.com

Kenneth G. Garcia, Jr.
Post Office Box 777
Canon City, CO 81215

Mary Alonzo
3110 Umatilla Street
Denver, CO 80211

Kenneth Alvin G. Jones, as
Brother of Nathan Jones
c/o H. Earl Moyer, Esq.
1401 Saulsbury Street, $204
Lakewood, CO 80214

Elizabeth Serene, as Mother of
Rex Serene, Deceased
6413 Yank Court, #B
Arvada, CO 80004

John E. Mossman, Sr., as Father of
Paul Mossman, Deceased
c/o H. Earl Moyer, Esq.
1401 Saulsbury, #204
Lakewood, CO 80214

Clifford K. and Margarite M. Moore, as Father
& Mother of Steven Richard Moore
101 Saturn Circle
Radcliff, KY 40160-2661

/s/ Catherine E. Hoskins