IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 1 2 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-167[1]
Category III
Claimant: Clenteen Sue Williams, #116910
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Monday, October 17, 2005 at the Denver Women's Correctional Facility (DWCF), 3600 Havana, Denver, CO 80239 in the afternoon. Present were the following: Clenteen Sue Williams, Claimant; Adam Wiens, from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant.

At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been

---

[1] Claim was originally Category I, Claim 01-122 and was reassigned to Category III on October 5, 2005 by Special Master Borchers and set for an immediate hearing due to Claimant's medical condition.

reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt out provision for any individual.  The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.     General inconvenience or nominal damages;
II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.    Damages due to severe physical injuries; and
V.     Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.     Claimant on June 27, 2004, submitted an initial claim which was assigned claim number 01-122.  The basis of the claim is a mobility impairment.  A supplemental claim was filed on September 2, 2004.

2.     Claimant's claim was assigned to Category I based upon the Remedial Plan as set forth above.  On October 5, 2005, Special Master Borchers, of his own motion, reassigned Claimant to Category III and set the matter for an immediate hearing.

2

4.    Claimant presently is under the jurisdiction of the Colorado Department of Corrections (CDOC) and has been since March 20, 2003.  Claimant is housed at the Denver Women's Correctional Facility.

5.    Claimant suffers from Chronic Obstructive Pulmonary Disorder (COPD) and is permanently on oxygen.  Claimant generally uses a wheelchair to ambulate through the facility.

6.    Defendants stipulated that because of Claimant's medical condition she is mobility impaired.

7.    Claimant testified that she wasn't too sure why she was having the hearing.  She indicated that she receives fine medical care and is treated well but would like to have an egg crate mattress pad.  She additionally indicated that she wanted "to be left alone to do her time."  Claimant indicated that she does not believe that the Defendants have discriminated against her because of her disability or that Defendants have failed reasonably to accommodate her disability.

## III. CONCLUSIONS OF LAW

1.    The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2.    The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).

3

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3.     The Special Master finds and concludes based upon the testimony and the stipulation that Claimant does suffer from a permanent mobility disability, within the meaning of the Remedial Plan.

4.     The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. The record is devoid of any evidence suggesting that Claimant was not eligible for any of the programs, benefits or services offered by DWCF or was disqualified from these programs, benefits or services for reasons other than her disabilities. Consequently, as to those programs, benefits and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

5.     The key question is whether Claimant was discriminated against because of her disabilities. By her own testimony, Claimant indicated that she receives all that she needs -- with the notable exception of an egg crate mattress -- and has not suffered discrimination based upon her medical disabilities.

6.     With respect to Claimant's mobility disability, she has failed to establish by a preponderance of the evidence that she was denied accommodation that would have allowed her to participate in programs or services. Accordingly, the Special Master finds and concludes that Claimant suffered no discrimination because of her disability that is cognizable under the Rehabilitation Act, the ADA or the Remedial Plan.

## IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met her burden of proving her claim by a preponderance of the evidence and, therefore, her Claim in this matter is DENIED.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 19, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

4

SIGNED this _5th_ day of December, 2005.

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _5th_ day of December, 2005 to the following:

Ms. Clenteen Sue Williams, #116910
DWCF
P.O. Box 392005
Denver, CO 80239

Mr. Adam Wiens
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_Margie Dykstra_

6