IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DE. VER, COLORADO

DEC 1 2 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-033
Category III
Claimant: Steve D. Garcia, #111141
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 1, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Steve D. Garcia (Claimant); and Aaron Atkinson, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Defendants offered Exhibits A through K, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that

substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. *Permanent Hearing Impairments*
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

3. *Permanent Vision Impairment*
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

4. *Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic*
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witness, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

3

Claimant was diagnosed as having diabetes in February, 1994. He was able initially to maintain his blood sugar levels through use of medicine and diet. Claimant was not incarcerated and obtained medical care through private providers. As time progressed, it became more difficult for Claimant to control his blood sugar levels. He was placed on insulin which he took two times per day. Claimant testified that maintaining the proper blood sugar level was difficult, even with help from his private physician.

At some point, Claimant was incarcerated at the Adams County Jail.[1] He experienced several hypoglycemic reactions while at that facility. One of the reactions led to an altercation with sheriff's deputies. Claimant was so ill because of the low blood sugar level that it was determined that he did not know what was occurring when he scuffled with the deputies.

On November 16, 2001, Claimant was turned over to DOC custody. He was admitted into the Denver Regional Diagnostic Center (DRDC) and underwent almost a month of testing. Claimant notified DOC staff at DRDC that he was a diabetic. Claimant continued to receive insulin, but it was a different mixture than he received prior to his incarceration. According to Claimant, the mixture he had received was too costly for DOC. As a result, DOC medical staff attempted to control his blood sugar levels with different forms of insulin.

After his evaluation period, Claimant was transferred to the Kit Carson Correctional Center (KCCC) in Burlington, Colorado. KCCC is a facility owned and operated by Corrections Corporation of America (CCA). Claimant arrived at this facility on December 14, 2001 and left on April 1, 2003. Claimant testified that he was treated well while at KCCC. His blood sugar levels were under control. He received soft sided and soled shoes. He also received three finger sticks per day. Claimant indicated that KCCC medical staff had helped him to stabilize his blood sugar levels.

Claimant then was transferred to the Limon Correctional Facility (LCF) on April 1, 2003. When he arrived at LCF, the medical shoes that he had been provided at KCCC were taken from him. He was provided boots which gave little support or comfort to him. He developed sores on the feet. These sores remained for some period of time. While at LCF, he was unable to obtain medical shoes for his feet, but he did receive extra pairs of socks for the week. He was able to change his socks daily. Eventually, the wounds started to heal.

Claimant further testified that the diabetic diets at LCF were not appropriate. His blood sugar levels at LCF were very high. Claimant believed that he had to adjust his food intake in order to try to stabilize the blood sugar levels. He had more hypoglycemic reactions. He tried exercising more, but found it difficult to jog. He started to have problems with his eyes and did receive eye glasses.

On June 20, 2005, Claimant was returned to DRDC for a few days. He then was transferred to SCF on June 23, 2005. He has been at SCF ever since.

---

[1] The Special Master is unaware of the basis for Claimant's incarceration. It is irrelevant for purposes of this case why Claimant is in DOC custody.

Claimant testified that his diabetes had led to his transfer from LCF. At SCF, he has continued to receive insulin for his diabetes. Claimant has maintained a job at all facilities in which he has been placed. He has been working as a paraprofessional in the education section at SCF.

Claimant was asked specifically as to discrimination of which he may have been a victim. Claimant testified that he is a "brittle" diabetic and should be taking special insulin. His request for special insulin was denied by DOC. He testified further that he is losing his teeth and eyesight. He described his health condition as deteriorating. Claimant believed that the insulin mixture that he received prior to his incarceration would allow him to feel better.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Defendants have acknowledged that Claimant is diabetic. He is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for non-health reasons.

Defendants questioned Claimant on several disciplinary convictions, but those did not appear to have any impact on jobs or other programs. The Special Master specifically finds that these convictions did not impact Claimant as to any program for which he might otherwise have been eligible.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. There was no evidence presented that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant has received medical care for his diabetes during his confinement in DOC. He has concerns about that care. He believes that he should be receiving the special mixture that he was prescribed before his incarceration. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that

Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant's medical records indicate that he has received significant medical care since he came into DOC custody. He was referred to a specialist, Dr. Potecha. His medical care was reviewed by the specialist and continued in the same manner as before the consultation.

It is fair to say that Claimant's diabetes is severe and unstable. The term "brittle" is appropriate to his condition. He has received care that has included referral to a specialist. Claimant testified that his transfer to SCF was premised upon the need to be a facility with a full-time medical staff. Claimant is concerned about his condition, and rightly so. The Special Master specifically finds that Claimant did not abuse his diet by consuming canteen items that were inappropriate.

The Settlement Agreement requires that a claimant prove by a preponderance of the evidence that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not provided any evidence that he was treated differently because he was diabetic during the time period of December 16, 2001 through August 27, 2003. Claimant has not provided any evidence that he was the victim during this period of time of discrimination prohibited by the ADA and Rehabilitation Act. Whether the quality of care provided during this period of time met Eighth Amendment requirements is beyond the jurisdiction of the Special Masters. The ADA and Rehabilitation Act were not violated during the period of December 16, 2001 through August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
In light of the answer to #3, this question does not need to be reached.

IT IS HEREBY ORDERED that the claim of Steve D. Garcia is dismissed, as he has failed to establish by a preponderance of the evidence each of the four criteria as required by the order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 24, 2006.**

SIGNED this _5th_ day of December, 2005.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _5th_ day of December, 2005 to the following:

Mr. Steve D. Garcia
#111141
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203