IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

Claim Number 03-097
Category III
Claimant: Verlyn L. Bald Eagle, #98784
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81038-1000

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on October 20, 2005. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Verlyn L. Bald Eagle (Claimant); and Adams Wiens, attorney for Defendants.

Testimony was received from the following witnesses; Claimant and Ronald Dixon. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibit 1 and it was admitted. Defendants offered into evidence Exhibits A through G, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master finds the following to be the facts necessary to resolve this claim.

Claimant is a Native American who was diagnosed with rheumatoid arthritis (RA) in 1991. This disease has created significant problems over the years. Prior to entry into DOC custody in November, 1998, Claimant had a total right knee replacement necessitated by the disease. He was taking medication on a daily basis to cope with his condition.

Claimant came into DOC custody in late 1998. He was placed at the Denver Regional Diagnostic Center (DRDC) for evaluation. Claimant brought to the attention of DOC medical officials that he had RA. He was transferred initially to the Colorado Territorial Correctional Facility (CTCF) which has an infirmary. He was there for about three weeks. He arrived at AVCF in February, 1999 and has been incarcerated at that facility through the present.

Claimant has suffered from limitations on joint movements for years. He has had trouble with knees, ankles and hips. He cannot do what other individuals can do who do not have RA. Claimant has trouble walking and often cannot get out of bed because of his illness and the pain that it causes. Claimant estimated that he is unable to get out of bed five days per month.

Claimant has been taking a CAD class for over two and one-half years. His instructor, Robert Dixon, testified that Claimant has been allowed to become a half-time student because of his medical condition. Mr. Dixon testified that Claimant often cannot attend class and that he is excused on those days because of his health condition. Indeed, Claimant was written up with disciplinary charges in July, 2003 but was acquitted because he has been given permission to miss class if his RA flares up.

Since coming into DOC custody, Claimant has had two hip replacement surgeries necessitated by his RA. Prior to his latest surgery in 2002, Claimant was in a wheelchair because he could not walk well and was in extreme pain.

Claimant was asked by the Special Master as to acts of discrimination that he had been subjected to in DOC as a result of his RA. He described directly two incidents, and then related a third area that has affected him on a daily basis. The first incident occurred when he was taken to CTCF for his second surgery. Rather than being placed into the infirmary as a preface to his surgery at Saint Thomas More Hospital in Canon City, Claimant was placed into segregation. Inmates commonly refer to this as "the hole." Claimant testified that this placement was the result of his physical condition and was discriminatory. The Special Master notes that no counter evidence was presented as to why Claimant was placed into segregation rather than the infirmary. The Special Master specifically finds this placement was the result of Claimant's physical condition.

4

The next series of incidents relate to frequent strip searches that Claimant has had to undergo as the result of the metal that exists in his body. Claimant has suffered one knee and two hip replacements as a the result of his RA. Claimant noted that he often has to pass through a metal detector at what is called the "midway" at AVCF. The metal in his body sets off the detector and he then is strip searched. Claimant has requested that he be placed on the list of those who activate the detectors who are not subjected to strip searches but less intrusive searches. Claimant indicated that the multiple strip searches are degrading and are premised in his case solely because of his medical condition.

Claimant testified further that his cell house does not have a bathroom that has handrails for handicapped inmates. He often has difficulty standing up without use of his hands. As a matter of course, he will wait to use a bathroom in a different building that does have handrails. In addition, Claimant has requested non-skid pads for the shower. There are no hand rails in the showers, and Claimant has fallen twice. He indicated that he hit his face on one occasion and broke a bone. Claimant's testimony concerning the lack of handrails in the bathroom and shower is unrefuted and is accepted.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

The Settlement Agreement provides that a claimant's condition must be one that exists on or before August 27, 2003. In addition, a claimant had to have been in DOC custody on or before the same date. As to this claim, Claimant came into DOC custody in November, 1998. Claimant checked only the category for mobility disability on his claim form.

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is yes. The Settlement Agreement narrowly defines mobility disability. This category is limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Claimant was in a wheelchair for the period of time preceding his second surgery. He also testified that he has difficulty walking and particularly climbing stairs. The medical records submitted by Defendants reflect that Claimant has been suffering for years. Claimant had to use crutches when he was evaluated at the Colorado Mental Health Institute in Pueblo in 1998. *Defendants' Exhibit L.* He was given a bottom bunk and lower tier restriction in 2002. *Defendants' Exhibit D.* The medical records reflect that Claimant's illness has led to deformity of his joints. That is particularly true for his left hand which was visibly deformed and had limitations in its use.

Claimant has a significant health condition. This condition has affected his lower extremities. Claimant was relegated to a wheelchair before his second hip surgery. Claimant was and is a member

of the class for mobility disability.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence that Claimant was unable to participate in programs or to receive services for other reasons, such as disciplinary problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is yes. Claimant did not complain about the quality of medical care he has received. He testified that his problems relate to the living conditions that he has been dealing with, including bathrooms and showers that are not fitted correctly for a person who has a physical handicap. Claimant has made requests for non-skid pads for the shower, but none have been provided. He has had to use handicapped equipped bathrooms in other buildings because his cell house bathroom is not so equipped.

Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996). The very least that an inmate at a correctional facility can expect are bathrooms and showers that can be used safely. In addition, an inmate can expect not to be placed into segregation solely because of his medical condition.

Claimant is an amazingly upbeat individual. He has made the most of his situation, as reflected in the medical records and in the testimony of his instructor, Mr. Dixon. Claimant is entitled to the same opportunities that individuals without disabilities have, which includes the right to personal safety in using bathrooms and showers.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has suffered falls in the shower as the result of the lack of handrails. He has suffered emotional trauma worrying about his physical safety, both in using the shower and bathroom in his cell house.

Claimant also has pointed to a Code of Penal Discipline case which was brought against him for failing to work. Claimant had been given an accommodation in that he was granted permission not to come to class if his illness flared up. He was acquitted of the charge, but it remains part of his records. The charge was related to his health condition and should be removed, since he has been acquitted.

The appropriate remedies for Claimant are as follows: (1) removal of the COPD charge from his record; (2) placement in a cell house that is ADA compliant or rebuild his current cell house facilities to comply with the ADA; (3) provide non-skid pads for the shower; and (4) payment of $500.00 for the emotional trauma and injuries suffered by Claimant.

IT IS HEREBY ORDERED that the claim of Verlyn Bald Eagle is granted to the extent noted

in this Final Order; and

IT IS FURTHER ORDERED that Defendants are to place Claimant in a cell house that has ADA compliant facilities or rebuild his present cell house facilities to comply with the ADA and Remedial Plan; and

IT IS FURTHER ORDERED that Defendants shall remove any documents relating to the COPD case, as Claimant was found not guilty and the charge was the result of a failure to honor the accommodation already in place for Claimant's illness; and

IT IS FURTHER ORDERED that Claimant is awarded $500.00 for his injuries and emotional trauma suffered as the result of the actions of Defendants and their staff; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 9, 2006.**

SIGNED this 5th day of December, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _5th_ day of December, 2005 to the following:

Mr. Verlyn L. Bald Eagle
#98784
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_/s/ Marjie Dykstra_