IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DEI.VER, COLORADO

DEC 1 2 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-040
Category III
Claimant: Leroy Walter Baker, #82907
Address of Claimant: SCF, P.O. Box 1000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on September 15, 2005.  This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Leroy Walter Baker (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from Claimant.  All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 6, and all were admitted. Defendant offered Exhibits A through N, and all were admitted.  After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

During the course of the hearing, the Special Master discovered that the digital recording system had not been set up correctly. The recording for this hearing goes from Track #3 on Disk 1 forward through Disk 2. Having reviewed the information on the disks and submitted by both sides, the Special Master has determined that a sufficient record exists to allow resolution of this claim. Claimant restated many of his points throughout the hearing and set forth his position in his closing argument. In addition, Claimant was granted additional time to submit medical records to support his claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

2

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into DOC custody in May, 1999. He had been incarcerated previously in the Federal Bureau of Prisons (BOP). He was placed initially by DOC. at the Denver Regional Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Centennial Correctional Facility(CCF) in Canon City, Colorado. He remained there until 2003 when he transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He remained at CTCF for eight months and then came to SCF.

In the mid-1990's while in BOP custody at FCI-Englewood, Colorado, Claimant was diagnosed as being diabetic. He was given medication for his diabetes. He also was diagnosed with a heart condition that required that he take medication.

When Claimant came into DOC custody, he advised medical personnel that he was diabetic and had a heart condition. He started receiving insulin. DOC. medical staff also advised Claimant that they believed that he had Hepatitis A, B and C. In addition to taking medication for his heart condition, Claimant began taking medication for his liver.

Claimant expressed concern with the quality and appropriateness of medical care he has received while in DOC. custody. Claimant expected that he would be required to go through an alcohol and drug program after the diagnosis with Hepatitis. That did not begin until shortly before the hearing. After completion of an alcohol and drug program, Claimant expects further treatment for his Hepatitis.

Claimant had two heart attacks while at CCF. He also fell and hit his head. CCF medical staff recommended that he receive medical shoes and special shirts. Those have never been provided to Claimant. As the result of his medical condition, Claimant was granted lower bunk status at CCF. That status was not renewed at CTCF or SCF. He has requested medical shoes be provided to him.

Claimant also testified that he has a problem with his eyes. He was provided glasses at CCF. These were broken when he was assaulted at CTCF in the yard. He did not receive replacement glasses after the assault. He has made do with glasses that he obtained from some source.

Claimant testified that he has been taken off all medications at SCF. He receives only aspirin. Claimant did not believe this to be an appropriate decision by medical staff at SCF. Claimant further

4

indicated that he still needs medical shoes and button down shirts.

In discussing his disciplinary record, Claimant stated that his diabetes will affect his attitude at times. He becomes short tempered and may say things that lead to write-ups. He believed that staff should be more cognizant of diabetic mood swings. At the time of the hearing, Claimant was receiving insulin by shot. He has not received medical shoes and his prior pair are worn out.

On cross-examination, Claimant testified that he is on the first tier in his cell house at the present time. He stated that medical care is bad and had not helped him a lot. Claimant further testified that he believes that he should get different treatment. He acknowledged that he has missed finger sticks and some shots of insulin. He further stated that his blood sugar levels will fluctuate. He is on a diabetic diet which has 2,400 calories.

In April, 2004, Claimant refused to accept the diabetic diet that he been prescribed. He testified that it was all the same food anyway. Claimant further testified that "I have a right to be a diabetic."

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems. Claimant's own testimony indicates that he does not fall under this definition. He has some vision problems, but those have been rectified by use of glasses. Claimant does not fall into the category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant's own testimony indicates that he does not fall into this category.

**Diabetes:** There is no question that Claimant is diabetic. That is acknowledged by Defendants. There is a dispute as to whether he meets the definition under the remedial plan.

The Settlement Agreement provides that diabetes relates to those "[i]nmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." The evidence is unrefuted that Claimant is dependent upon insulin, receiving two shots per day. Claimant is part of the class as a diabetic.

**Other Health Conditions:** Claimant has been diagnosed with hepatitis. This disease is not covered by the Settlement Agreement. To the extent that another, uncovered condition has led to problems under the ADA and Rehabilitation Act, Claimant retains the right to bring a separate lawsuit on such a condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Claimant has had disciplinary issues, but no evidence has been presented that these convictions had any effect on the placement of Claimant.

**3. Was the Claimant discriminated against by DOC. because of his or her disability?** The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant objects to the type and quality of medical care that he is receiving.

Claimant has received medical and vision care. He has had concerns about that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant's testimony reflected his belief that he had been the victim of mediocre or improper medical care. He mentioned the Eighth Amendment on several occasions. Claimant retains the right to pursue a separate action under the Eighth Amendment. He simply has not shown a violation of the ADA or Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be answered, as the answer to the previous question was in the negative.

IT IS HEREBY ORDERED that the claim of Leroy Walter Baker is denied; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 17, 2006.**

SIGNED this *5th* day of *December,* 2005.

BY THE COURT:

Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _5th_ day of December, 2005 to the following:

Mr. Leroy Walter Baker
#82907
SCF
P.O. Box 6000
Sterling, CO  80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203