IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 12 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 02-212
Category II
Claimant: Ellsworth Pettit, #98151
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the claim of Ellsworth Pettit (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Limon Correctional Facility (LCF) in Limon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, and he has done so. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>2. Permanent Hearing Impairments
>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>3. Permanent Vision Impairment
>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>  1. Is the claimant a disabled individual who is a member of the class?
>  2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>  3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>  4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in October, 1998. Claimant was placed initially at the Denver Regional Diagnostic Center (DRDC). After evaluation, Claimant was placed ultimately at LCF.

Claimant had health problems before he came into DOC custody. He had testicular cancer. He received radiation treatment for his cancer. His cancer is in remission, but it has left him with chronic conditions. Claimant suffers from severe diarrhea. He needs to be close to a toilet. This has affected his ability to have visitations and to have any type of job. Claimant has described other problems that arise because of problems with his colon. Claimant has indicated that this problem will be with him for the rest of his life and is a result of the radiation treatment.

Claimant originally submitted evidence that he is diabetic. That fact is not in dispute by Defendants. Claimant indicated in his initial papers that he was not receiving sufficient finger sticks per week. He believed that it was proper to have finger sticks daily in order to monitor his blood sugar levels.

Claimant also has submitted information that he has a hearing problem. He states that "[w]hile Plaintiff's hearing loss is mild, it is in fact permanent and worsening." *Reply, p.2.* He has requested access to sign language classes and a TDD machine for telephone calls.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Hearing Impairment:** The definition in the Settlement Agreement for hearing impairment is as follows:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, a claimant can only meet this definition if he is totally deaf.

Claimant's own pleadings indicate that, at best, he has a mild hearing loss. Though he

4

indicates that his hearing problem is getting worse, the date that must be applied in determining if a disability existed is August 27, 2003, the day the Settlement Agreement was approved. Claimant had to meet the definition of hearing loss on that date. He has not submitted any evidence that he was totally deaf on that date. He is not part of the class for purposes of hearing impairment.

**Diabetes:** There is no dispute that Claimant is diabetic. He is part of the class as a diabetic.

**Mobility Impairment:** Claimant has indicated that he is mobility impaired. He bases this on his chronic condition of diarrhea which has created significant problems, especially during visitation.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair and does not have a lower extremity disability as defined by the Settlement Agreement. Claimant may have a condition that falls under the ADA and Rehabilitation Act, but not under the Settlement Agreement in this case. Claimant retains the right to pursue a separate lawsuit for any condition not covered by the Settlement Agreement that may meet the criteria of the ADA. Claimant is not part of the class for mobility impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**
The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant is upset about the medical care that he has received while incarcerated in DOC. He is concerned about the treatment he has received concerning his chronic diarrhea. Those concerns have some legitimacy.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue

separately any rights that he may have concerning his medical care. This would include whether or not he received the proper number of finger sticks each week.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ellsworth Pettit is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 15, 2006.**

SIGNED this _5th_ day of _December_, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

     I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 5th day of December, 2005 to the following:

Mr. Ellsworth Pettit
#98151
LCF
49030 State Highway 71
Limon, CO  80826

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203

_____