IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 12 2005

GREGORY C. LANGHAM
CLERK

---

Claim Number 01-153
Category I
Claimant: William E. Rinhart, #113707
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089-8535

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of William E. Rinhart (Claimant). The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan (Settlement Agreement) was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Settlement Agreement. The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

2

### 1. Permanent Mobility Impairments

a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.

b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.*, an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.

### 2. Permanent Hearing Impairments

Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

### 3. Permanent Vision Impairment

Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

### 4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics

Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
   1. Is the claimant a disabled individual who is a member of the class?
   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Mr. Rinhart filed his initial claim for damages in August, 2004 alleging mobility and vision impairments and diabetes. In response to an order to show cause, Claimant filed a letter dated September 17, 2004 in which he limited his claim to having a mobility impairment and diabetes. On November 25, 2004, the Special Master discharged the show cause order and the claim proceeded. In January, 2005, the Claimant filed a letter with attached medical records.[1] Although not specifically designated as such, the Special Master will consider the letter and attached documents as Claimant's supplemental form. Mr. Rinhart's claim was assigned to Category I. Upon examination of the initial and supplemental claim forms and supporting documents, the Special Master has determined that assignment to Category I was, and still is, appropriate. The Settlement Agreement provides that Claimants will not receive a hearing on any claims assigned to either Category I or Category II. Therefore, Mr. Rinhart's claim will be resolved based upon the written documents submitted by each side.

The Special Master has reviewed the claim, supplemental forms, and other documents submitted by Claimant. The Special Master has reviewed the response of Defendants and Claimant's September 27, 2005 letter in reply to Defendants' response. The Special Master finds the following to be the facts necessary for resolution of the claim.

Mr. Rinhart has been in DOC custody since December, 2001. In May, 2003, Claimant was attacked and severely beaten by another inmate resulting in injuries to the front and back of both knees and his legs. Prior to his incarceration, Mr. Rinhart suffered a heart attack during which he fell and hit his head. As a result, Mr. Rinhart had open heart surgery to replace a defective aortic valve and two brain surgeries to resolve internal bleeding from the head injury. It is clear from the documents submitted by both sides that Mr. Rinhart has the following: heart disease; chronic obstructive pulmonary disease (COPD); diabetes; high blood pressure; and excessive weight. Claimant states that he had some problems with pain and stiffness in his legs after heart surgery, but the assault on him by another inmate in May, 2003 has made it impossible for him to "walk more than about 100 feet without stopping to rest." *(Claimant's September 17, 2004 letter)*. Mr. Rinhart claims that he has not received proper medical care for either his diabetes or injuries sustained from the assault during the time he was in Fremont Correctional Facility. Mr. Rinhart believes that the lack of adequate medical care after May, 2003 has resulted in his lower extremity impairment becoming significantly worse.

Defendants' response is that Mr. Rinhart does not have a mobility impairment for three reasons. First, Defendants state that Mr. Rinhart "has presented no evidence that [he] cannot walk

---

[1] The medical records submitted by Claimant are dated as follows: 9/16/04; 7/24/03; 6/6/03; 5/30/03; 5/22/03; 5/29/03 and 8/12/03.

4

100 yards." *(Defendants' Response, p.4)*. Second, Defendants state that on June 1, 2005, the Chief Medical Officer determined that Mr. Rinhart "does not have a qualifying mobility disability pursuant to the mandates of the Montez Remedial Plan, therefore he is not entitled to accommodation for a mobility impairment." *(Defendants' Response, p. 4, Exhibit A)*. Finally, Defendants state that "Rinhart has presented no evidence that his mobility impairment is permanent." *(Defendants' Response, p.5)*.

In response to Mr. Rinhart's claim that he is impaired because of diabetes, Defendants state that Mr. Rinhart "does not require special housing because of his diabetes." Further, Mr. Rinhart "must show that his diabetes substantially limits at least one major life activity." *(Defendants' Response, p.5)*. Defendants' position is that Mr. Rinhart is not mobility impaired or impaired by diabetes under the terms of the Settlement Agreement. Therefore, he is not a member of the class and is not entitled to relief.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

*I. Mobility Impairment:*

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is yes. The Settlement Agreement provides that an individual is mobility impaired even if not confined to a wheelchair if the person has a permanent lower extremity impairment that substantially limits walking and the person's ability to perform a major life activity. The crucial date for making this determination is August 27, 2003, the date the class was certified. Attached to Defendants' response are a number of documents. All of them are dated after August 27, 2003 except for three: 7/20/02, "Ambulatory Health Record"; 5/22/03, "Ambulatory Health Record"; and 8/26/03, "DOC Physical Examination". The remaining twenty-one pages that comprise Exhibits A through D are dated in 2004 and 2005.

Claimant came into DOC custody in December, 2001. He received a physical exam in one of the DOC facilities on July 20, 2002. As a result of the exam, Claimant was to receive accommodations for his multiple medical conditions, including a first tier, lower bunk and no assignment to a camp. Any accommodations made by Defendants preceded the filing of this claim by at least a year. It is clear from the documents submitted by Defendants themselves that Mr. Rinhart was severely beaten in his lower extremities in May, 2003. Defendants repeated reference to an "alleged" assault is inaccurate. *(See, 5/22/03 and 8/26/03 Ambulatory Health Records)*.

Mr. Rinhart states in both his initial and supplemental claim that he cannot walk more than 100 feet without pain and shortness of breath. Defendants claim that this statement is not sufficient evidence of a mobility disability. The Special Master finds that Mr. Rinhart's assessment of his own ability to walk both before and after the assault in May, 2003 is credible and supported by the

5

medical records. Claimant was clearly mobility impaired on August 27, 2003, and therefore he is a member of the class.[2]

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefit or services offered by DOC.[3]

**3. Was the Claimant discriminated against by DOC because of his mobility disability?** The answer to this question is no. Mr. Rinhart's underlying complaint regarding his mobility impairment is that the medical care he received after the assault in May, 2003 was either not proper or inadequate. Claimant states that he was told by medical staff that the pain he was experiencing would dissipate in three or four months. He states that the pain and stiffness in his knees and legs are still present and are exacerbated by walking.

The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.[4]

---

[2] The Special Master notes that DOC medical staff determined that Mr. Rinhart was not mobility impaired as of June 1, 2005 according to their interpretation of the definition of a lower extremity mobility impairment under the Settlement Agreement. However, Mr. Rinhart's medical chart reflects that as of May, 2005, Dr. Timothy Creany noted that Mr. Rinhart probably needs accommodations for his medical conditions, primarily COPD. In fact, Mr. Rinhart has recently been moved to another facility that hopefully will address his medical needs more to his satisfaction.

[3] Although Defendants argue that Mr. Rinhart's non-compliance with his sex offender treatment program may preclude him from participating in certain programs, the Special Master cannot find any evidence in the record to substantiate that.

[4] All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be reached in light of the answer to question #3.

*II. Permanent Diabetes Impairment:*

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. The medical records submitted by Defendants state that Claimant was diagnosed with Type II diabetes in 2003. *(Defendants' Exhibit C)*. In his initial and supplemental claims, Mr. Rinhart states that medical staff has "tried to convince" him that he is a diabetic or borderline. Claimant questions that diagnosis.

The Special Master cannot determine if Claimant had Type II diabetes prior to August 27, 2003, the date the class was formed. Therefore, the Special Master concludes that Claimant does not meet the definition of having a permanent diabetic disability as set forth in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefit or services offered by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant does not meet the definition of disabled as a "permanent diabetic, this question need not be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be reached in light of the answer to Questions #1 and #3.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed, as he has failed to answer affirmatively prove by a preponderance of the evidence each of the four questions required by the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 27, 2005.**

SIGNED this _7th_ day of November, 2005.

BY THE COURT:

Richard M. Borchers - Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 7th day of November, 2005 to the following:

Mr. William Rinhart
#113707
HCCC
304 Ray Sandoval Street
Walsenburg, CO 81089-8535

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____