| Court Address:<br>US DISTRICT COURT | FILED<br>UNITED STATES DISTRICT COURT<br>DENVER, COLORADO<br><br>DEC 21 2005<br><br>GREGORY C. LANGHAM<br>CLERK |
|---|---|
| JESSE MONTEZ, ET AL<br>Plaintiff,<br>BILL OWENS, ET AL<br>v.<br>Defendant(s). | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br>Jill Coit #86530<br>claim no 03-129<br>P.O.BOX 392005<br>Denver Co 80239 | Case No.: 92 N 870 (OES)<br>96 N 343<br>Div/Ctrm: |
| PETITION TO EXPAND THE SCOPE AND PARAMETERS OF THE MONTEZ REMEDICAL PLAN AND TO INCLUDE ADA STANDARDS FOR INDIVIDUALS WITH DISABilities | |

COMES NOW, Jill Coit, Plaintiff Pro Se, and moves this Court EXPAND THE PARAMETERS AND SCOPE OF THE MONTEZ REMEDIAL PLAN. As grounds, she states:

1. The plan as it is now enunciated is extreme in its restriction.

2. Mobility - lower torso and extremities - implicates use, tension, and wear upon the non-involved portions of the upper torso. Further, to mandate inflexibility in assessing these portions of a disabled person's body indicates an intention to separate one half from the whole. It is an anomaly.

3. DOC is refusing to recognize involvement of the assistive limbs (hands, arms and shoulders) in the overall mobility implication. In order to be mobile, for those wheelchair bound, and in spite of assurances of pusher-aides, the disabled person often must rely upon their own hands, arms and shoulders. This often further impacts

wear and tear either already processing deterioration, or is simply the exigency of an aging body.

4. Spine, both lumbar and cervical implicate in either the progression of, or even the onset of mobility disabilites. (analogy drawn to the late C. Reeve, whose paralyzing injury to the cervical spine most certainly initiated his disability).

5. Degenerative disorders of the spine are not assessible to only one region - lumbar or cervical - but antagonize the entire bodily mobility function. Not only does such a degenerative disease such as osteo-arthritis progress, particularly in relationship to the aging process, but it can disable the same functions, from a cervical area involvement, and with the same results - stricture on bending, lifting, squatting, twisting, turning, and weight bearings as arthritic conditions attributed to the lumbar regions.

6. This same implication can distort the body and the limbs. It can create significant dimensional irregularities - length, torque, and resultant balance and joint inequality and wear.

7. The plan also needs to be re-written to include other than total loss of hearing as the parameter for hearing-disabled inclusion. Particularly, in the environment of a correctional facility, even partial loss of hearing can have a profound and deleterios efffect upon not only the quality of life, but even the liberty interest of the affected person. With any type of hearing deficit, whether total or partial (and that partial being subject to deterioration over even a moderate time), the hearing impaired inmate can be injured, or even sanctioned by authorities through no fault of their own.Further  at issue is the fact that care is, to say the least, not available with any qualitative address of time frame. As a

partially impaired inmate struggles with the prosciptions of the prison environment, and experiences deterioration, there is often no address to preemptive or corrective-device therapy. This inmate struggles then to hear warning announcements, or even routine daily announcements, some of which, if not immediately obeyed, can result in "write-ups", which in turn impact liberty interest at time of consideration for community programs or even parole.

8. Vison disability is also at issue in this plan. The plan does not address visual problems other than those of complete blindness or those "going blind" The plan faile to address and structure for those who have other vision impairments -- extreme light sensitivit; light-reactive migraine conditions, and even the proper fitting and prescription production for marginal eye problems. Again, the over all inablility of DOC to be proactive intreatment of the issues is if not causal toward degeneration into more drastic condition, certainly at issue.

9. Plan participant Coit (Class III) asks this Court to stay the assessment proceedings and sua sponte take up a review and revision of the MOntez Remedial Plan, in its entirety. She requests the Court, in essence, to re-write the Plan, and make inclusion in it for those items, issues, and bodily areas above-discussed. She further asks the Court to make its revisions, as herein requested and any others the Court shall identify as germane, retroactive to the effective date of the Plan.

10. Plaintiff Coit also asks the Court to take notice that the herin presented suggestions for consideration do not act to harm DOC, but actually, by virtue of encouraging preemptive assessment, treatments, and inclusion in said Plan, stand to meke substantial and positive impact and result in overall cost-saving to medical car

Wherefore plaintiff prays this court will expand the scope and parameters fo the Montez Remedical Plain and to include th ADA standards for individuals/inmates with disabilities as this petition outlined.

Respectfully,

Jill Coit #86530
P.O.BOX 392005
Denver, Co 80239

CERTIFICATE OF MAILING

I swear I placed in the US mail the above attached documents. This 2 day of November, 2005 addressed to the following:
US DISTRICT COURT
SPECIAL MASTERS _ JUDGE BRUCE PRINGLE
ATTORNEY GENERAL