IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-021
Category III
Claimant: John Olivarez, #109419
Address of Claimant: 2846 Federal Blvd., Apt.# 9, Denver, Colorado 80211

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on November 14, 2005, at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: John Olivarez, Claimant; Jess Dance, from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant, Elizabeth Olivarez, for the Claimant; Cary Shames, D.O., Chief Medical Director, Colorado Department of Corrections for the Defendants. Exhibits A through J, offered by Claimant were admitted into evidence and Exhibits K through R, offered by Defendants were also admitted into evidence. A comprehensive Appendix of the Exhibits is attached as part of this Order. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying

to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted a claim which was assigned claim number 03-021 and the basis of his claim is a mobility impairment.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

2

3. Claimant has provided the Special Master with the following updated contact information:

> 2846 Federal Blvd., Apt. # 9
> Denver, Colorado 80211
> Phone: 303-458-9669

4. Proper notice of the hearing was given and Claimant along with Defendants appeared.

5. Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) from June 2001 through July of 2004.

6. Claimant testified that he was incarcerated at DRDC for approximately 11 days, and then transferred to the Sterling Correctional Facility (SCF), where he spent the remainder of his incarceration.

7. Claimant suffers from degenerative joint disease, Spondylosis deformans, peripheral vascular insufficiency, sleep apnea, Hepatitis-C and obesity. Claimant testified that during the time he was in the custody of the CDOC, he could not walk 100 yards on a level surface. While in the custody of the CDOC, he had the following medical restrictions: (a) use of a lower bunk and lower tier; (b) no lifting over 10 lbs.; (c) no prolonged standing; and (d) no sitting for long periods of time.

8. Many of Claimant's complaints relate to his belief that he did not receive proper medical treatment, or that he was not provided with various items to alleviate his pain. For example, he testified that he requested, but was denied extra blankets or a sponge cube to raise his legs and a spring mattress. Additionally, Claimant stated that he asked to see doctors and medical specialists on numerous occasions but these requests either were not honored or there were substantial delays in arranging doctor visits. He also unsuccessfully sought to be transferred from SCF to a facility that could better treat his medical problems and meet his medical needs. The evidence does indicate that CDOC provided him with a substantial amount of medical treatment. X-rays were taken of his back and spine; and an ultrasound was done to make sure that he didn't have clots. He was given diuretics and support stockings to assist in alleviating the edema in his legs. He was given a permit to wear tennis shoes. The evidence further establishes that Claimant on his own accord discontinued use of the medications and only used the support stockings part of the time.

9. Claimant testified to several instances in which the CDOC failed to accommodate his alleged lower extremity disability. Firstly, Claimant indicated that he was taking a janitorial class but was unable to sit through the entire class because of pain in his legs. He asked for a permit to be excused from the class early but this was denied. Although he was in pain, he remained in the class to avoid being disciplined. Secondly, Claimant stated that he asked for, but was denied, a permit to take a short-cut to the chow

3

hall. As a result, he was required to ambulate a substantially longer route to the dining room to receive his meals. He negotiated this longer route slowly and painfully. Thirdly, in 2002-2003, Claimant was assigned to Therapeutic Community for 10 months and was required to work in the kitchen. Most of the time, his assignment involved working with flatware, which he could do sitting down. However, on many occasions, he was required to work on the serving line for 2 to 2 ½ hours because he was denied a permit restricting him to jobs that could be performed while sitting. Also, when the kitchen was short of help, Claimant was assigned to wash dishes, which required him to stand for long periods of time.

    10. The evidence reveals that Claimant did participate in many classes and programs including: a core curriculum class, drug and alcohol abuse classes, computer classes, anger management classes and a life learning program. He also had a job on the Lions Club glasses repair labor crew that he could perform sitting down.

### III. CONCLUSIONS OF LAW

    1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

    2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent

4

physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class. During his incarceration, Claimant had a permanent physical mobility impairment that substantially limited the major life activities of walking, working and perhaps performing manual tasks. Although the testimony was in conflict, the Special Master finds and concludes that Claimant could not walk 100 yards without significant pain and difficulty.

The Special Master further finds and concludes that while Claimant's sleep apnea may constitute a permanent physical disability under the ADA and/or the Rehabilitation Act, it is not a disability or impairment that falls within the ambit of the Remedial Plan.

3.   The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the CDOC.

4.   The key issue is whether Claimant was discriminated against because of his disability. Claimant's contentions relating to the alleged failure of the CDOC to treat properly the medical condition causing his disability or to provide him with proper medication and/or equipment to alleviate his pain does not constitute a violation of the ADA or the Rehabilitation Act. While such actions or failures to act may give rise to claims for deliberate indifference to medical needs, the courts have held that substandard medical care or failure to treat properly a disability does not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation,* 403 F.3d 1134, 1144 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

5.   Claimant's contentions that the CDOC failed to accommodate his disability by forcing him to perform work in the kitchen while standing and preventing him from obtaining a permit to leave class early raise a novel issue. As counsel for Defendants points out, forcing an inmate to participate in a program or perform tasks that he is simply unable to do probably does not constitute either discrimination because of his disability or a failure to accommodate within the meaning of Title II of the ADA or the Rehabilitation Act. However, that is not the fact situation presented here. The evidence indicates that (a) Claimant desired to participate in the janitorial class and the kitchen job; and (b) had the CDOC complied with Claimant's medical restrictions of no prolonged sitting or standing, Claimant would have been able to participate in both of these activities without severe pain. Accordingly, the CDOC's failure reasonably to accommodate Claimant's disability in a manner consistent with his medical restrictions constitutes a violation of the ADA and the Rehabilitation Act.

5

No evidence was presented by Defendants to rebut Claimant's testimony that he sought a permit to take a shorter route to the chow hall, that he was denied such a permit and, that, as result, he was required to take a much longer route, causing him substantial pain and difficulty. Consequently, there is no evidence that Claimant's request for accommodation was unreasonable or that compliance with the request was inconsistent with security and/or other penological concerns. The Special Master finds and concludes that Defendants' failure to allow Claimant access to the chow hall in a manner consistent with his disability and his medical restrictions also constitutes a violation of the ADA and Rehabilitation Act.

6. Although Claimant seeks $2000.00 in damages for pain, suffering and emotional distress allegedly incurred as a result of the Defendants' failure to accommodate his mobility disability, he has not presented extensive evidence of the issue of damages. Based on the evidentiary record, the Special Master finds and concludes that the sum of $500.00 will sufficiently compensate Claimant for the violations of the ADA and Rehabilitation Act set out in Conclusion of Law number 5 above.

## IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, judgment should be entered in favor of Claimant and against Defendants in the sum of $500.00;

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed on or before **January 27, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 15th day of December, 2005.

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 15th day of December, 2005 to the following:

Mr. John Olivarez, # 109419
2846 Federal Blvd., Apt. #5
Denver, CO 80211

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-021
Category III
Claimant: John Olivarez, #109419
Address of Claimant: 2846 Federal Blvd., Apt. #9, Denver, CO 80211

---

**APPENDIX OF EXHIBITS**

---

The following is a list of

| | | |
|---|---|---|
| EXHIBIT A: | 8 pages | Colorado Department of Corrections Progress Assessment Summary (Dates 01/20/2002-02/04/2004) |
| EXHIBIT B: | 6 pages | Copies of 25 Requests for Sick Call |
| EXHIBIT C: | 11 pages | State of Colorado Department of Corrections Clinical Services Informal Resolution Attempt dated 3/03/03 and subsequent Step 1, Step 2 and Step 3 CDOC Offender grievances and a resolution letter dated April 25, 2003 from Anthony A. DeCesaro, Step III Grievance Officer plus supporting documentation. |
| EXHIBIT D: | 29 pages | Various medical and treatment records for John Olivarez. |
| EXHIBIT E: | 10 pages | Social Security Administration Consent to Release records and subsequent medical records. |
| EXHIBIT F: | 1page | San Francisco General Hospital Physical Therapy |

- 1 -

|              |          |                                                                                                                                                                                                  |
|--------------|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              |          | evaluation of John Olivarez dated 7/24/97.                                                                                                                                                       |
| EXHIBIT G:   | 6 pages  | State of Colorado Department of Corrections Clinical Services Informal Resolution Attempt dated 3/03/03 with Step One, Two and Three grievances, DeCeasaro response and Informal Resolution Attempt dated 9/27/03. |
| EXHIBIT H:   | 2 pages  | Copies of 5 Requests for Sick Call.                                                                                                                                                              |
| EXHIBIT I:   | 12 pages | Copies of up to 31 Requests for Sick Call.                                                                                                                                                       |
| EXHIBIT J:   | 21 pages | Statement of Claimant John Olivarez.                                                                                                                                                             |

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

| EXHIBIT K: | 1 page  | Inmate Sched Query Offender Programs dated 10/26/2005 for John Olivarez.                     |
|------------|---------|----------------------------------------------------------------------------------------------|
| EXHIBIT L: | 3 pages | Colorado Department of Corrections Progress Assessment Summary, date 07/11/2004 for John Olivarez. |
| EXHIBIT M: | 1 page  | Colorado Department of Corrections Offender Grievance Step Two, for John Olivarez signed 4/4/03. |
| EXHIBIT N: | 1 page  | Colorado Department of Corrections Offender Grievance Step One, for John Olivarez signed 3/27/03. |
| EXHIBIT O: | 1 page  | Reception/Diag Query Admission Summary, dated 10/26/2005 for John Olivarez.                  |
| EXHIBIT P: | 1 page  | Colorado Department of Corrections / Ambulatory Health Record dated 11-25-01 and 10/11/01.   |
| EXHIBIT Q: | 1 page  | Colorado Department of Corrections / Ambulatory Health Record dated 11/4/03.                 |
| EXHIBIT R: | 1 page  | Colorado Department of Corrections / Ambulatory Health Record dated 6/9/04 and 5-19-04.      |