IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

F I L E D
UNITED STATES DISTRICT COUR
DENVER, COLORADO

JAN 0 3 2006

GREGORY C. LANGHA
CLE

Claim Number 01-005
Category I
Claimant: Frank Martinez, #100158
Address of Claimant: SCCF, P.O. Box 3, Pueblo, CO 81003

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the claim of Frank Martinez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado.

This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants. Though granted up to and including May 31, 2005, Claimant has not filed a response. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

----

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant has submitted only his claim form. He did not submit any supplemental forms or medical records.

From what has been presented, it appears that Claimant came into DOC custody in 1998. He has been in custody ever since. He presently is incarcerated at SCCF.

Claimant checked only the box for diabetes on his claim form. He stated in his claim form, in part, as follows:

My diabetes has been a controling (sic) factor in my life now. I have to be exercising all the time, so my blood sugar will be right, and sometimes that isn't possible, being locked down all the time and I have to eat the food they give even if it's loaded with carbs, which means sugar.

When asked on the claim form as to what discrimination has taken place by DOC staff, Claimant stated only that "[b]y not giving me the right foods to eat. They give nothing but hi-carb meals."

Defendants have moved to dismiss the claim, arguing that the claim fails to state a prima facie case. Defendants have not submitted any documents related to Claimant. They have reserved the right to go forward with additional evidence if the motion is denied.

## III.

The key point in time for a claim is August 27, 2003. A claimant must show that he had a valid claim and was discriminated against on or before that date. Actions occurring after August 27, 2003 may only be considered if a claimant had a valid cause of action that existed on or before that date.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined. The definition for diabetes under the Settlement Agreement is as follows:

4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities

4

Defendants note correctly that the ADA and Rehabilitation Act require a showing that a major life activity has been impacted by the claimed disability. *Toyota Motor Manufacturing v., Williams*, 534 U.S. 184 (2002). No such allegations have been set forth by Claimant concerning his diabetes. He alleges that it is under control.

All allegations in a claim must be liberally construed, as virtually all claimants are representing themselves. At some point, a claimant must set forth what it is that occurred and must comply with the four criteria set forth in the order of November 23, 2004. The Special Master agrees that the claim is deficient and does not establish a basis for further action. Claimant has not established that he is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** This question does not need to be reached in light of the answer to question #1.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** This question does not need to be reached in light of the answer to question #1.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the answer to question #1.

IT IS HEREBY ORDERED that the claim of Frank Martinez is denied, as he has failed to set forth sufficient allegations to show that he has a prima facie case under the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 14, 2006.**

SIGNED this 3rd day of January, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

5

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _3rd_ day of January, 2006 to the following:

Mr. Frank Martinez
#100158
SCCF
P.O. Box 3
Pueblo, CO 81003

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203