IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

F I L E D
UNITED STATES DISTRICT COUR
DENVER, COLORADO

JAN 0 3 2006

GREGORY C. LANGHAM
CLER

Claim Number 01-035
Category I
Claimant: Debbie Montoya, #107433
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

## FINAL ORDER OF SPECIAL MASTER

     THIS MATTER comes before the Special Master on the claim of Debbie Montoya(Claimant). Claimant is incarcerated in the Denver Women's Correctional Facility (DWCF) of the Colorado Department of Corrections (DOC).

     This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Though granted up to and including October 7, 2005, Claimant has not filed a reply. Further argument will be waived.

### I.

     This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;

II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV. Damages due to severe physical injuries; and

V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES

The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Neither side has provided much information to the Special Master. Claimant has submitted only her claim form. Defendants have provided copies of medical and personnel records of Claimant.

From what has been presented, it appears that Claimant came into DOC custody in 1999. She has been to various DOC facilities since and apparently was paroled at one point. Her parole was unsuccessful, and Claimant was returned to DOC custody. When she filed her claim, she was incarcerated at the Pueblo Minimum Center(PMC) in Pueblo, Colorado. The last address provided by Claimant was DWCF, and the Special Master will assume the she is still there.

Claimant checked only the box for mobility impaired on her claim form. She described here impairments as follows:

Constant physical pain, not being able to work, But I am still working here at PMC. I am at San Carlos Kitchen until I leave on the 4 May.

In the section dealing with discrimination by DOC and its staff, Claimant stated as follows:

I wasn't taken for ex rays. Also my headaches are very painful need stronger medication and physical therapy.

Defendants have submitted documents reflecting Claimant's work and educational record within DOC custody. Defendants also have provided copies of medical records which do not reflect any major health problem.

As previously noted, Claimant was given an opportunity to file a reply to the answer of Defendants. Claimant has not filed anything. Indeed, she has filed no medical records or other documents in support of her claim

## III.

The key point in time for a claim is August 27, 2003. A claimant must show that she had a valid claim and was discriminated against on or before that date. Actions occurring after August 27, 2003 may only be considered if a claimant had a valid cause of action that existed on or before that date.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has

indicated that she is mobility impaired. She bases this on the allegations of constant pain that she is suffering.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair and does not have a lower extremity disability as defined by the Settlement Agreement. Claimant may have a condition that falls under the ADA and Rehabilitation Act, but not under the Settlement Agreement in this case. Claimant retains the right to pursue a separate lawsuit for any condition not covered by the Settlement Agreement that may meet the criteria of the ADA. Claimant has not proven that she is part of the class for mobility impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. There is no evidence that would lead to the conclusion that Claimant has been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant has alleged insufficient medical care and medications. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statute. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him by CDOC medical staff or others, that is beyond the jurisdiction of the Special Masters.

There has been no evidence presented by Claimant that DOC or its employees have discriminated against her in violation of the ADA and Rehabilitation Act. A mere dispute about medical care is insufficient to trigger the provisions of these federal acts.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Debbie Montoya is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

5

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 14, 2006.**

SIGNED this 3rd day of January, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

6

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _3rd_ day of January, 2006 to the following:

Ms. Debbie Montoya
#107433
DWCF
P.O. Box 392005
Denver, CO 80239

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203