IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

---

Claim Number 02-107
Category II
Claimant: Kenneth Mickens, #42657
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Kenneth Mickens (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has not filed a reply. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in January, 1985. It is unclear from what has been presented as to how long he has been at CTCF.

In his initial claim form, Claimant described his disabilities as follows:

>"Severe cardio-myopathy" - heart muscle disease that causes the heart to become weak and causes the heart to over strain itself. (2.) Mild moderate "mitral value insufficiency." "Valve malfunction" in the left ventrical (sic). Fails to pump blood adequately and fluid accumulates in lungs. "Severe single vessal (sic) coronary artery disease. Angina pain; may cause a heart attack and heart failure."

When asked to describe the discrimination that he was subjected to, Claimant stated that he needed surgery on his heart and that DOC would not approve it due to the cost. Claimant checked only the

3

box for mobility disability on the claim form.

Claimant was requested to file a supplemental form. In that form, Claimant described his mobility problems as follows:

> Diagnosed with "unstable arthritic knee." Significant popping in the medial compartment. I have had the following tests to date. 1st Anterior drawer and 1+ Lachman test. Both show positive.

Claimant further stated that he had been advised that he would need a knee replacement. He had been told that he was "too young" for such surgery. At the time Claimant filed his supplemental form, he was close to his forty-ninth birthday.

Defendants have submitted a number of documents in support of their answer. A intake form completed by Claimant at the Fremont Correctional Facility (FCF) on April 20, 2000 reflected a "no" answer to a question related to serious medical issues. A similar form was provided to Claimant on July 29, 2003 at CTCF, and there was no indication of any knee problem. The form did indicate that he was taking medicine for his heart.

On May 22, 2003, Claimant signed a refusal of treatment form concerning his right knee. On the form that Claimant signed, it was noted that "Mom died 5-21-03 not wanting surgery at this time." On June 17, 2003, a similar refusal form was signed by Claimant in which it was noted that "not having problems with it as bad as in the past. Don't think knee surgery is necessary at this time."

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has indicated that he is mobility impaired. He bases this conclusion on his heart condition and knee problem.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair. Claimant's heart condition is not a lower extremity disability as defined by the Settlement Agreement.

The knee condition might qualify as a lower extremity impairment if more information had been presented. In and of itself, a knee condition does not rise to the level of a disability. The Settlement Agreement uses as examples of impairment the inability to walk one hundred yards

without stopping or being unable to climb stairs. Claimant had the opportunity to provide additional information concerning his knee condition, but did not do so. It also appears that the knee condition was not sufficiently severe enough to warrant surgery when offered. Defendants are correct in noting that Claimant has failed to carry his burden to show that he had a disability recognized by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**
The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant was offered surgery for his knee in 2003 and refused such treatment.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the medical care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Kenneth Mickens is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 31, 2006.**

SIGNED this 4th day of January, 2006.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 4th day of January, 2006 to the following:

Mr. Kenneth Mickens
#42657
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

*[Signature: Colleena Dickerson]*