IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

---

Claim Number 02-204
Category II
Claimant: Robert Jones, #63565
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan (also referred to as Settlement Agreement). The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for

1

Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
>     *A. COVERED DISABILITIES*
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     *B. QUALIFIED INMATE*
>     Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>     *C. PERMANENT DISABILITY/IMPAIRMENT*
>     A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

> *1. Permanent Mobility Impairments*
> a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.
> b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.*, an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.
>
> *2. Permanent Hearing Impairments*
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>
> *3. Permanent Vision Impairment*
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>
> *4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Upon re-examination of the initial and supplemental claim forms and supporting documents filed by the Claimant, the Special Master has determined that the claim was appropriately assigned to Category II. The Settlement Agreement provides that Claimants will not receive a hearing on any claims assigned to Category II. Therefore, the claim of Mr. Jones will be resolved based upon the written documents submitted by each side.

The Special Master has reviewed the claim, supplemental forms, and other documents submitted by Claimant. The Special Master has reviewed the response of Defendants and Claimant's "Reply to Defendants' Response". The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial claim in April, 2004 and supplemental claim form for mobility impairment in June, 2004. Mr. Jones has been incarcerated in DOC since October, 1994. Prior to his incarceration, Mr. Jones sustained shotgun injuries to his left shoulder, both legs and his left foot. He states that the constant pain in his left foot, particularly in his toes, makes it difficult for him to walk up and down stairs. He claims that he has fallen twice while climbing the ladder into the top bunk in his cell because he has trouble with balance. Mr. Jones states that he has been denied a lower tier and bottom bunk restriction since his arrival at LCF in February, 2004. He also states that LCF has refused to provide him with the shoes recommended by Dr. Patterson, the orthopedic surgeon who evaluated him in June, 2003.

Defendants response to the claim is to state that Mr. Jones is not a member of the class because he has no mobility impairment that would constitute a disability under the Settlement Agreement. In particular, Defendants state that Claimant "has presented no evidence that he cannot walk 100 yards" and that he "has presented no evidence that his mobility impairment is permanent." (*Defendants' Response, p.5*).

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

### I. Mobility Impairment:

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is yes.

The Settlement Agreement provides that an individual is mobility impaired even if not

confined to a wheelchair if the person has a permanent lower extremity impairment that substantially limits walking and the person's ability to perform a major life activity. Three criteria must be met: 1) Claimant's ability to walk has to be substantially limited by his lower extremity impairment; 2) the lower extremity impairment has to substantially limit Claimant's ability to perform a major life activity; and 3) the lower extremity impairment is not expected to improve within six months. Both Claimant and Defendants have submitted documents that predate August 27, 2003, the date the class was formed. These documents substantiate that since 2001, DOC medical staff have been aware of and treated Claimant's gunshot injury to his left foot.

Claimant saw a podiatrist in October, 2001 who recommended surgery and "medical sneakers". *(Document attached to Claimant's Supplemental Form)*. During the same month, an ambulatory health record signed by Dr. Creany stated, "Tennis shoes are medically appropriate". *(Defendants' Exhibit B)*. In November, 2001, an ambulatory health record signed by a physician (the signature appears to be Dr. Creany's) stated that "medical will purchase" a men's size 9.5 New Balance shoes." The record also indicates that Claimant could obtain "medical sneakers" and "wear tennis shoes for medical reasons when and where allowed by security". *(Document attached to Claimant's Supplemental Form)*. The Special Master finds that these recommendations were followed by DOC until June, 2003.

Claimant was evaluated by Dr. Patterson, an orthopedic surgeon in June, 2003 and April, 2004. In 2003, Dr. Patterson recommended "soft-soled shoes with soft inserts". Apparently, Claimant was moved to another DOC facility in July, 2003 and was not provided with or allowed to wear tennis shoes. *(Document attached to Claimant's Supplemental Form)*. Claimant was moved to LCF in February, 2004. He requested a bottom bunk on a lower tier and tennis shoes to be provided by DOC. These requests were denied by medical staff. On April, 14, 2004, Claimant was again evaluated by Dr. Patterson who recommended a "great toe fusion". Until surgery, Dr. Patterson stated that he "would not force him [Claimant] to climb ladders and allow him [Claimant] to use the bottom bunk. I would also suggest a padded, high-top, type boot to control the instability in his ankle as well as provide some padding for his degenerative foot." *(Document attached to Claimant's Supplemental Form)*. The recommendations for a lower tier and bottom bunk were vigorously opposed by one member of the DOC medical staff who, although not a physician, made a medical decision that Claimant did not meet the criteria for a bottom bunk. *(Defendants' Exhibit C and accompanying pages)*. However, in July, 2004, Claimant was provided with a bottom bunk on a lower tier. Those medical restrictions continue. *(See, Defendants' Progress Assessment Summary dated 2/11/05 and Ambulatory Health Record dated 4/14/05)*.

Defendants assert that Mr. Jones is not mobility impaired because he "has presented no evidence that he cannot walk 100 yards." Defendants also assert that "Jones has presented no evidence that his mobility impairment is permanent." *(Defendants' Response, pp. 5 and 7)*. The Special Master finds these two statements to be false and directly contradicted by documents that Defendants themselves submitted. On 1/5/05, Dr. Bloor verified that Claimant is mobility impaired and that he *cannot* walk 100 yards on a level surface or climb a flight of stairs without pause. *(See, Defendants' Exhibit A and accompanying pages)*. The Special Master finds that Defendants have

5

known since 2001 that Claimant has a lower extremity impairment that limits his ability to walk, climb stairs, participate in recreational activities and perform certain jobs that require standing. All of these activities are "major life activities." Claimant had a mobility disability on August 27, 2003 and is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefit or services offered by DOC.[1]

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is yes.

The Special Master has already found that Mr. Jones has had a permanent lower extremity mobility impairment since October, 2001 that substantially limits his ability to walk and perform other major life activities. Claimant has been discriminated against and denied accommodations because of his disability.

One of the "services" provided by DOC are medical assistive devices that will accommodate a mobility disability. The tennis shoes recommended for Claimant by several different experts fall into that category because they were found to be medically necessary to accommodate Claimant's mobility disability. Since 2001, medical experts have recommended that Claimant be provided with tennis shoes to accommodate the degenerative changes in his left foot. It appears that until June, 2003, Claimant received tennis shoes at state expense. After June, 2003, the recommendation for soft-soled shoes at state expense was not followed.

Defendants argue that Claimant can purchase tennis shoes or soft-soled shoes with inserts at the canteen. The Special Master will take judicial notice that few inmates have large amounts in their accounts for purchase of items from the canteen. All inmates now must make a co-payment to receive medical care. *(C.R.S. §17-1-113. See also, documents attached to Claimant's Reply to Defendants' Response)*. Availability of an item on the canteen list is not a substitute for the basic services and programs that must be provided under the ADA and Rehabilitation Act. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997). Claimant is entitled to receive either medically appropriate tennis shoes, boots or athletic shoes as an accommodation to his mobility disability.

In addition, Dr. Patterson's recommendation in early 2004 that Claimant be placed in a lower bunk and a lower tier to accommodate his mobility disability was not followed. In fact, the decision to deny Claimant a bottom bunk and lower tier for months seems to have been personal to one of the

---

[1] Defendants argue that Claimant's COPD convictions *may* have prevented him from qualifying for several jobs. (emphasis added). A computer printout of Claimant's disciplinary convictions and nothing more is not sufficient evidence to substantiate this assertion.

DOC medical staff. *(See, Informal Resolution Attempt dated 6/2/04 attached to Claimant's Reply to Defendants' Response)*. DOC regulations and policies cannot contravene the ADA and Rehabilitation Act.

Claimant has raised several issues in his claim that deal with disagreement over the quality of medical care provided to him while in DOC custody. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
The answer to the first part of this question is yes. Defendants' conduct in not providing medically necessary shoes harmed the Claimant. The Special Master finds that the appropriate remedy is for DOC to provide Claimant with tennis shoes, boots or athletic shoes that address the medical concerns and recommendations of the orthopedic specialists that Claimant has seen over the years for his permanent lower mobility impairment.

In addition, the Special Master awards the Claimant $100.00 for the months that he was arbitrarily denied a bottom bunk and lower tier by one member of the medical staff of DOC despite the clear recommendations of the orthopedic specialist. The Special Master finds that one particular member of the medical staff, who did not have a medical degree, overrode the recommendations of a medical expert for what can only be viewed as purely vindictive reasons.

IT IS HEREBY ORDERED that the claim of Robert Jones is granted as to permanent lower extremity mobility impairment; and within the next thirty days DOC is to provide Mr. Jones with either tennis shoes, boots or athletic shoes that follow the recommendations and address the concerns of the orthopedic specialists Claimant has seen; and

IT IS FURTHER ORDERED that DOC cannot require Robert Jones to purchase any recommended shoe from the canteen; and

IT IS FURTHER ORDERED that $100.00 be deposited into Claimant's account within on or before March 1, 2006; and

IT IS FURTHER ORDERED all other aspects of the claim of Robert Jones are dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 1, 2006.**

SIGNED this ____ day of January, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 7 day of January, 2006 to the following:

Mr. Robert Jones
#63565
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203