IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

  Plaintiffs,

-vs.-

BILL OWENS, et al.

  Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 1 1 2005

GREGORY C. LANGHAM
     CLERK

---

Claim Number 01-007
Category I
Claimant: Samuel R. Ramirez, #114605
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the claim of Samuel R. Ramirez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has not done so. Further argument will be waived.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 18, 2003. Claimant was placed initially at the Denver Regional Diagnostic Center (DRDC). After evaluation, Claimant was placed ultimately at SCF.

Claimant in his initial claim form stated, in part, as follows:

> Everyday in this environment is important that I hear people and sounds, my hearing is very poor, specially the right ear. I'm taking computers in the morning, and janitorial in the afternoon. I know that my grades could be better if I had hearing aids. I appreciate your concern.

In this same form, Claimant did not answer the question concerning what discrimination he had suffered while in DOC custody.

Claimant was sent a supplemental form for hearing impairment. On this form, Claimant responded as follows:

> 1. Describe your hearing loss: There is tremendous loss in my right ear, and some loss in my left ear, they both need hearing aids.
> 2. Describe how your hearing loss affects your life in DOC: I attend school, and it is hard to hear the teacher or students, if they're speaking, my grades would be a lot better with hearing aids. There are sometime when I cannot hear the intercom, and I attend to miss important events or rules.

Claimant did not provide any medical records or additional information in support of his claim.

In their answer to the claim, Defendants state that Claimant does have some hearing loss. This hearing loss is not sufficient enough to require use of signing, lip reading or written communication. Attached to the answer are documents showing hearing tests and courses that Claimant has attended or is attending.

Defendants acknowledge that Claimant has received a hearing aid. Defendants also state that Claimant is housed in an area where there is a strobe light alarm.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The definition in the Settlement Agreement for hearing impairment is as follows:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, a claimant can only meet this definition if he is totally deaf.

Claimant's own pleadings indicate that, at best, he has a moderate hearing loss. The date that must be applied in determining if a disability existed is August 27, 2003, the day the Settlement Agreement was approved. Claimant had to meet the definition of hearing loss on that date. He has not submitted any evidence that he was totally deaf on that date. He is not part of the class for purposes of hearing impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**
The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant did not provide any allegations that he was treated differently from others who were not disabled. Claimant had to allege and prove that he was subjected to discrimination between the date of his incarceration in DOC on July 18, 2003 and the date of the approval of the Settlement Agreement on August 27, 2003. Claimant has not done that.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Samuel P. Ramirez is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 27, 2006.**

SIGNED this ___ day of January, 2006.

5

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ____ day of January, 2006 to the following:

Mr. Samuel R. Ramirez
#114605
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203