IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

FILED
DISTRICT COURT
RADO

JAN 3 · 2006

NGH·
CL·

_____

Claim Number 03–016
Category III
Claimant: Patrick Murray, #103010
Address of Claimant: SCF, P.O. Box 6000, Sterling, Colorado 80751-6000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on December 1, 2005 at the Sterling Correctional Facility (SCF), Sterling, Colorado. Present were the following: Patrick Murray (Claimant) and Aaron Atkinson, attorney for Defendants.

Testimony was presented by Claimant. The Special Master also received Defendants' Exhibits A through D. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual class member. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section stated, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provided the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further went on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments were limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment

2

that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judges Nottingham and Kane stated as follows:

> All claims are to be evaluated based solely upon the criteria in paragraph #1. The claims are limited to those that encompass a disability within the meaning of the Rehabilitation Act, provided, however, that a claimant need not prove intentional discrimination, an issue which was resolved by execution of the Remedial Plan. The Remedial Plan and, if necessary, case law concerning disabilities under the Rehabilitation Act and Americans with Disabilities Act may be reviewed for assistance in applying the criteria.

Thus, the Special Masters must look to the Settlement Agreement first to determine if a claimant has proven each of the four criteria set forth above.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The following are the highlights of the testimony presented by Claimant.

Claimant came into CDOC custody in April, 1999. He was placed first at the Denver Reception and Diagnostic Center (DRDC). He was at DRDC only for a short period of time. He then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was at this facility for approximately two years. He then was transferred to the Arrowhead Correctional Facility (ACC) in Canon City, where he remained for one year. His next placement was at the Crowley County Correctional Facility (CCCF) where he remained for two years. He then returned to FCF for

3

one year. He was transferred to SCF in November, 2003 and remains at that facility.

Claimant testified that he was diagnosed as diabetic in 2002. He has controlled this illness since with diet and exercise. Claimant has not been required to take medication for his diabetes.

Claimant was diagnosed with compressed vertebrae before he came into DOC custody. He experienced no problems with his back initially and cannot point to a specific incident that led to this injury. After the back was examined, Claimant discovered that he had cracked vertebrae and a bulging disk. He also was advised that he might have arthritis.

Claimant's back begin to deteriorate in condition after he entered DOC custody. His legs began to bother him and affected his ability to walk. While at FCF, he had difficulty in having his legs support his body weight. He was placed on work restrictions. He was placed into a lock down in his cell every day because he had no work assignment or program to attend. When Claimant arrived at SCF, he was placed into solitary confinement.

In his testimony, Claimant indicated that he had received two MRI's and two CAT scans while in DOC custody. Two months before the hearing, Claimant did have surgery on his back. This was done at Denver Health Medical Center. Claimant testified that it was too early to tell if the surgery would reduce the pain he has been experiencing. At the time of the hearing, feeling had not returned to both of his legs. Claimant testified that damage had been caused to his leg as a result of the delay in providing surgery to him.

Claimant stated that he had difficulty in walking and that it was becoming more difficult for him. He testified that he lived in the farthest cell house from the chow hall. He had requested a closer placement.

Claimant indicated that his diabetes had not been a problem for him. He was given a special diabetic diet. Later, he requested and received a kosher diet.

On cross-examination, Claimant indicated that the pain had been more severe during his second stay at FCF. He testified further that he had been receiving medical care. When asked specifically, Claimant stated that he now was able to walk more than one hundred yards and to climb stairs. He had never requested a wheelchair nor used a cane. Medical personnel advised Claimant that he had arthritis. His back has continued to deteriorate.

Claimant missed several appointments as the result of what he said was his back condition. He complained to medical staff that he was in pain and needed help. He believed that earlier surgery would have helped rectify the pain that he was experiencing.

During his first stay at FCF, he had a job in the laundry. He did not have a job when he returned to FCF for his second stay. He also did not have access to the recreational yard. He never played basketball or handball in any of the facilities.

Defendants submitted the affidavit of Dr. Orville Neufeld, D.O. who reviewed Claimant's medical records. Attached to this affidavit are several documents from Claimant's medical charts. The documents reflect that Claimant has received medical care while in DOC custody.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant was in CDOC custody on August 27, 2003. Each of the claimed disabilities will be examined separately. Claimant bears the burden of showing that he met the criteria for each disability on or before August 27, 2003.

**Diabetes:** The Settlement Agreement provides the following definition for diabetes.

4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

The Settlement Agreement further provides that a claimant with diabetes must show that there was some impact on his or her life. Claimant has presented evidence to establish that he has a mild case of diabetes that has been controlled with diet and exercise.

Claimant admitted that his diabetes has not been a problem for him. Claimant does not meet the definition of diabetes in the Settlement Agreement. As a result, he cannot pursue his claim further as to this disability.[1]

**Mobility Impairment:** Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking..." Claimant was not in a wheelchair on or before August 27, 2003.

Claimant's problems have dealt with his back. He indicated in his testimony that he had pain in his legs and believed that this was from his back. The Special Master finds that the back condition led to leg problems. Claimant is determined to have had a mobility impairment on or before August 27, 2003.

---

[1] The Special Masters and Judge Nottingham had nothing to do with the negotiation of the Settlement Agreement. Once Judge Nottingham approved the Settlement Agreement, the Special Masters were jurisdictionally limited by that document. A claimant can be diabetic and not fall under the definition in the Settlement Agreement. That is the case as to this Claimant.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** There was no evidence that Claimant was disqualified from any program or benefits as the result of violent behavior, COPD convictions, or the like.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** There is insufficient evidence to establish that Claimant was the victim of discrimination that is prohibited by the ADA and Rehabilitation Act. Claimant has received medical care over the time period that he has been in DOC. He has had some jobs, but he also has indicated that he was in too much pain to do much of anything.

Claimant's concern has been with the quality of medical care that he has received. It is clear from his own testimony that he has received some care, but it did not relieve the pain that he was experiencing. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant has failed to prove discrimination under the ADA and Rehabilitation Act. He retains the right to bring a separate lawsuit under the Eighth Amendment if he believes that the quality of medical care has been substandard and that he has suffered because of that.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the previous question has been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Patrick Murray is dismissed, as he has failed to prove by a preponderance of the evidence each of the criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 10, 2006.**

SIGNED this _26_ day of January, 2006.

6

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 2/ day of January, 2006 to the following:

Mr. Patrick Murray
#103010
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203