IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

UNITED ... URT

JAN 3 2006

GRE... ... ...AM
... ...

---

Claim Number 01-065
Category I
Claimant: Janice Torrez, #56030
Address of Claimant: DWCF, Unit 2, P.O. Box 392005, Denver, CO 80239

---

## FINAL ORDER OF SPECIAL MASTER

---

     THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

## I.

     This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan (also referred to as Settlement Agreement). The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for

1

Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed her claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

### 1. Permanent Mobility Impairments

a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.

b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.

### 2. Permanent Hearing Impairments

Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

### 3. Permanent Vision Impairment

Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

### 4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics

Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?

2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Special Master has reviewed the initial and supplemental claim form and the attached documents submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant was given the opportunity to reply to Defendants' response by October 7, 2005. No reply was filed. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed her initial claim in May, 2004 and supplemental claim form for mobility impairment and impairment due to diabetes in July, 2004. Ms. Torrez has been incarcerated in DOC since October, 2000. Initially, she was placed at Colorado Womens' Correctional Facility (CWCF) and then transferred to Denver Womens' Correctional Facility (DWCF) early in 2004. Ms. Torrez states that her claim relates to her treatment while at CWCF, not DWCF. *(See, letter dated 6/9/04, with attached documents).*

Ms. Torrez has multiple, serious medical conditions. Her medical record substantiates that she has hypertension, Hepatitis C, diabetes, and a benign tumor in the pituitary gland (adenoma). Both her diabetes and adenoma are controlled with medication. The medical record also indicates that Ms. Torrez has ovarian cysts and a benign mass in her breast which was excised in June, 2005.

Ms. Torrez claims that she has not been considered for certain jobs and programs because of her medical conditions. She claims that she was not accepted into a cosmetology program in 2003 nor allowed to continue in the canine training program in 2004 because of her medical conditions, primarily her diabetes. She claims that she applied for a job in the library in November, 2003 at CWCF, but was not selected. Ms. Torrez also claims that at the same time she was denied access to these programs and denied a job in the library, she was forced to work in the kitchen and yard despite medical restrictions against lifting heavy objects or working with machinery.

In their response, Defendants assert that Ms. Torrez is not a member of the *Montez* class. They argue that she does not have a mobility impairment that would constitute a disability under the Settlement Agreement. Defendants concede that Ms. Torrez is diabetic. *(See, Defendants' response, pp.2-3).* However, they argue that her diabetes does not constitute an impairment under the terms of the Settlement Agreement.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

4

### I. Mobility Impairment:

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. Although Claimant has many serious medical conditions, the Settlement Agreement, as drafted by counsel for the class and counsel for Defendants, narrowly defines the disabilities that are covered. Under the Settlement Agreement an individual is mobility impaired even if not confined to a wheelchair if the person has a permanent lower extremity impairment that substantially limits walking and the person's ability to perform a major life activity. Three criteria must be met: 1) Claimant's ability to walk has to be substantially limited by her lower extremity impairment; 2) the lower extremity impairment has to substantially limit Claimant's ability to perform a major life activity; and 3) the lower extremity impairment is not expected to improve within six months.

Ms. Torrez has not offered any evidence in support of her allegation that she had a permanent lower extremity impairment prior to August 27, 2003, the date the class was established. She has not met any of the criteria necessary to substantiate a mobility impairment.

Ms. Torrez has raised several concerns regarding the quality of medical care that she has received for her various medical conditions while in DOC custody. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Cases for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to her, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that she may have concerning her medical care.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify her from participating in the programs or receiving the benefits or services offered by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant does not meet the definition of disabled with a permanent lower extremity mobility impairment under the negotiated Settlement Agreement, this question need not be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question need not be reached in light of the answer to Questions #1 and #3.

*II. Permanent Diabetes Impairment:*

**Is the Claimant a disabled individual who is a member of the class?** The answer to this question is yes. From review of the medical records, it appears that Ms. Torrez was diagnosed with Type II diabetes sometime in early 2003. *(See, Defendants' response, Exhibit B. pp. 4 and 8).* Defendants admit that Ms. Torrez is diabetic. *(Defendants Response, pp. 3 and 6).* The Special Master finds that Ms. Torrez meets the definition of having a permanent diabetic disability as set forth in the Settlement Agreement and is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefits or services offered by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. It is impossible for the Special Master to discern the connection, if at all, between the diagnosis of diabetes in 2003 and Ms. Torrez not being chosen to participate in the cosmetology program, not continuing in the canine training program or being rejected for employment in the library. In fact, as of May 5, 2003, after being diagnosed with diabetes, Ms. Torrez was working in the Canine Companion Program. "Since 10/28/02, Ms. Torrez has been working for the Canine Companion Program earning good attitude and good progress aptitude ratings each month. Ms. Torrez reports she was recently named a Team Leader for the Canine Companion Program." *(Progress Assessment Summary dated 5/5/03).* At that time, Ms. Torrez was "rated as having moderate medical needs with the housing and work restrictions listed above." The next "Progress Assessment Summary" dated November 20, 2003 states: "Ms. Torrez is currently unable to work due to numerous medical issues. She has a good work history however and remains willing to participate in all programs." At that time, Ms. Torrez was "rated as having severe medical needs with the housing and work restrictions listed above." The November 20, 2003 assessment summary comports with Ms. Torrez's own statement that from June, 2003 until December, 2003 she was placed on an indefinite lay-in status due to her medical conditions. *(Supplemental form for diabetes, dated 7/7/04).* The Special Master finds that Ms. Torrez was not accepted for the cosmetology program or hired to work in the library in 2003 or re-accepted into the Canine Companion Program in 2004 because of her multiple, serious medical issues, of which diabetes is one.

The Special Master can find nothing in the record that substantiates Ms. Torrez's allegation that in 2004 she was forced to work in the kitchen and yard despite her medical restrictions and because of discrimination based upon her diabetes. Ms. Torrez has failed to prove by a preponderance of the evidence that she was discriminated against by DOC because of her diabetic disability.

**4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?**
This question need not be answered in light of the answer to Question #3.

IT IS HEREBY ORDERED that the claim of Janice Torrez as to both mobility and permanent diabetic impairments is denied, as Ms. Torrez has failed to prove by a preponderance of the evidence each of the four criteria set forth in the District Court's Order of November 23, 2004; and

IT IS FURTHER ORDERED that all other aspects of the claim of Janice Torrez are dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 3, 2006.**

SIGNED this _23_ day of January, 2006.

BY THE COURT:

_____
Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this *23* day of January, 2006 to the following:

Ms. Janice Torrez
#56030
DWCF
P.O. Box 392005
Denver, CO 80239

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203