IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  92-cv-00870-EWN

JESSE (JESUS) MONTEZ, *et al.*,

    v.

BILL OWENS, *et al.*,

    Defendants.

**RESPONSE BY THE PLAINTIFF CLASS TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S RECOMMENDED AWARD OF FEES AND COSTS**

The Plaintiff Class, through undersigned counsel of record, responds as follows to Defendants' Objections to special master's Recommended Award of Attorney Fees and Costs (doc. #1567), as directed by the Minute Order of the Court, dated January 30, 2006 (doc. #1568):

**A.  INTRODUCTION**

Defendants have objected to the special master's Recommended Award Of Attorney Fees And Costs.  Their Objections, however, 1) are not timely made; 2) are not supported by the record (Defendants did not produce *or even once* cite to the record);[1] 3)

---

[1] In addition to voluminous documentation of their claim, Class Counsel offered testimony by Paula Greisen, David H. Miller, and Edwin S. Kahn, as an expert in civil right attorney fees. Transcript (Draft) of the fees and costs hearing before Hon. Robbie M. Barr, Judicial Arbiter Group, Denver, Colorado, November 10, 2005 (hereinafter cited as "Exhibit 6" or "Transcript"), (Exhibit 6, pp. 3: ll. 15-19; 4: ll. 3-9, swearing in the referenced witnesses).  (The court reporter indicated to undersigned counsel that Defendants had not ordered the transcript until the end of January, 2006.  At Class Counsels' request, the court reporter was able to produce the attached transcript within 48 hours.) Defendants offered no testimony.  *Id.*, p. 82: ll. 4-10 "We don't have any

grossly misstate the record, which is cited herein; and, 4) attempt to re-write the Remedial Plan ("Plan") and keep Class Counsel from being compensated when they have been forced to defend the Plan's general remedy of class members being allowed to pursue their individual claim for damages.

This fees and costs request arose when Class Counsel, pursuant to ¶ XXXIII of the Remedial Plan, pp. 29-30 (Exhibit 1), filed their November 2, 2005, Request to the special master, seeking attorney fees and costs for doing compliance work. (Exhibit 2). Class counsel supplemented the request by submission of November 9, 2005. (Exhibit 3). That Request and its Supplement, along with the record of the hearing that will be referenced herein, make it crystal clear that Defendants are wrong when they assert that Class Counsel sought fees and/or costs for work done representing individual damage claimants in their personal claims under the Remedial Plan.

No time was billed for work done in representing a particular inmate claimant. Defendants make this straw man assertion to confuse the record—again, a record they do not present and never cite. The special master rejected Defendants' assertion that part of Class Counsel's work related to individual inmate damage claims, and ruled that Class Counsel did work to both monitor compliance with the Remedial Plan, and work to assure the integrity of the damage claim *process* under the Remedial Plan, and that those efforts were all fully compensable, under the terms of the Plan.[2]

---

witnesses to present." *See also*, Class Counsels' exhibits to record (to be produced by special master), as well as Exhibits 1-11, attached hereto.

[2] Indeed, the law office of King & Greisen, LLP, has entered appearances in approximately a dozen individual inmate damage claims. However, no time for attorney fees spent on those cases has been billed to Defendants, and no time for such work will be billed, until and unless those individual inmate claims are successfully concluded.

2

How and what Class Counsel has had to do to assure the plaintiff class their right to pursue their individual damage claims is laid out in detail in the special master's Recommended Award Of Attorney Fees And Costs ("Recommended Award) (Exhibit 4, pp. 2-6), and will be discussed in depth below.

The only other issue of significance addressed by Defendants is whether certain specific time entries were compensable because of the number of minutes requested or the need for the expenditure of time. Those issues are also discussed below. However, they were properly dealt with by special master Barr in her Recommended Award. As with the other issues referenced above, Defendants' Objections should be denied, and the special master's Recommended Award should be approved by Order of the Court.

**B.     DEFENDANTS' OBJECTIONS WERE NOT TIMELY MADE**

This Court made it clear in its Order And Memorandum Of Decision dated April 30, 2004, ("Order") that "[t]he appointment and review of decisions of special masters is governed by Federal Rule of Civil Procedure 53 . . . and . . . Rule 53 still governs the issues in this [attorney fees] matter. " (Exhibit 5, pp. 6-7).

In the Order, the Court dealt with the question of whether the 2003 request for attorney fees and costs should have been handled under Rule 53 in its form as amended on December 1, 2003, or in its prior form. (Exhibit 5, pp. 7-8). The Court concluded that because 1) the parties stipulated to a joint master prior to December 2003; 2) her report was issued prior to December 2003; and, 3) Defendants' and Plaintiffs' objections and response were filed prior to the effective date of the amendment of Rule 53, it would "work an injustice to treat this issue under the amended rule." (*Id.*).

Things have now changed. While the terms of the Remedial Plan were entered before the amendment of Rule 53, the hearing before the special master, her recommendation, and the parties' objections and response on the pending fees and costs request all occurred, or were all filed, *after* December 1, 2003.

The issue of which form of the Rule to use, however, is irrelevant because *under either version of the rule*, Defendants' Objections were not timely made.[3] The Recommended Award was served on both parties on December 29, 2005. (Exhibit 4, p. 11, Certificate of Facsimile and Certified Mailing to special master's Recommended Award). Under the pre-December 1, 2003, Rule 53, Defendants' Objections would have had to be filed "[w]ithin 10 days after being served with notice of the filing of the report . . .." (Fed.R.Civ.P. 53, pre-December 1, 2003 amendment). Even under the amended Rule 53: "A party may file objections to . . . the master's order, report, or recommendations *no later than 20 days from the time the master's order, report, or recommendations are served . . ..*" Fed.R.Civ.P., Rule 53(g)(2) (emphasis added). Defendants did not file their

---

[3] The Court noted in the Order (of April 30, 2004) that, "defendants' objection was filed one day late." (Exhibit 5, p. 12). However, Class Counsel failed to object based on untimeliness and thus Plaintiffs' later-made objection to Defendants' untimeliness was, itself, waived. *Id.* This time, Class Counsel does not repeat that error, and Defendants, essentially having been warned by the Court once already, should not be given any latitude, and should not be allowed another late filing. While the plaintiff class did not explicitly move for adoption of the Recommendation, such a motion is not required under the prior version of the Rule, or even under the amended version of the Rule. Fed.R.Civ.P. 53(g) Advisory Committee note to 2003 amendments ("if no party asks the court to act on a master's report, the court is free to adopt the master's action or to disregard it at any relevant point in the proceedings."). *See Wallace v. Skadden, Arps, Slate, Meacher & Flom, LLP*, 362 F.3d 810, 814-815 (DC Circuit, 2004); *Latin American Music Co., Inc. v. Archidiocese of San Juan,* 2005 WL 1847013 at 10 (D. Puerto Rico, 2005) (Aug. 2, 2005).

Objections until January 27, 2006 (Doc. # 1567), some 29 days after the Recommendation was served.

While the time limit under Rule 53 may not be jurisdictional, *See Wallace v. Skadden, Arps*, *Slate, Meacher & Flom, LLP,* 362 F.3d 810, 816, nt. 7 (DC Circuit, 2004) (citing Committee Notes), in its Order of April 30, 2004, this Court instructed the parties that the terms of Rule 53 would apply to the initial question of whether an objection to the special master's recommendation was timely. (Exhibit 5, pp. 11-12). Defendants have ignored this Court's earlier decision in that regard. That decision accurately sets out the law, and additionally is the law of this case. *See Shaw v. AAA Engineering & Drafting, Inc.,* 213 F.3d 538, 545 (10th Cir. 2000) (prior resolution of fees issue became the law of the case, and when only legal issues were presented no hearing was required).

Accordingly, the Objections filed by Defendants should be denied as untimely, and the special master's Recommended Award should be adopted.

**C.    STANDARD OF REVIEW**

This Court addressed the issue of the appropriate standard of review in its Order And Memorandum of Decision, dated April 30, 2004. (Exhibit 5).

*Factual* findings of the special master bind the Court, since the Court did not rule on the Objections within 30 days of the date they were served.[4]  (Exhibit 1, Remedial Plan, ¶ XXXIII, p. 30). That is what this Court ruled in 2004. (Exhibit 5, p. 9). If the Court decides to consider Defendants' untimely Objections, questions of law are decided by the Court *de novo,* any agreement of the parties to the contrary not withstanding. (*Id.*,

---

[4] Concerning the pending fees/costs request, Defendants did not file their Objections until 29 days after the date the Recommended Award was served, and so they made it impossible for the Court to rule on them by the 30th day.

5

citing *Polin v. Dun & Bradstreet, Inc.* 634 F.2d 1319, 1320-1321 (10th Cir. 1980)(en banc).

### D.     THE SPECIAL MASTER'S RECOMMENDED AWARD WAS PROPERLY DECIDED

This is the second time that special master Barr has decided an issue of attorney's fees and costs under the Plan.  Her first recommendation was the subject of this Court's Order And Memorandum Of Decision, dated April 30, 2004.  Her current Recommended Award evidences her careful following of the methodology and the law set out by the Court in Exhibit 5.

In her Recommended Award, special master Barr immediately focused on the issue central to this fees dispute: the compensability of Class Counsels' work in safeguarding the damages remedy, set out in the Remedial Plan.  Defendants have taken the position that Class Counsel's work in maintaining the integrity of that part of the Remedial Plan is not work done monitoring DOC's compliance with the Plan, but in some way has been transformed into work representing inmates personally in the making of their individualized damage claims, and therefore will only be compensable if and when each particular inmate wins his or her individual claim.  (Exhibit 4, pp. 2-3).[5]

---

[5] Defendants' claim is undercut by the fact that in response to their actions to undermine the general remedy of individual damage claims, Class Counsel has had to devote some $76,600 worth of work related to challenging Defendants' positions that would have essentially prevented any and every claimant from setting out and/or successfully going forward with their individual claims.  (Exhibit 4 at 9).  *None* of this work was done in a claim in which Class Counsel had entered on behalf of the individual inmate. All of the work was performed either at the specific request of the special masters administering the damage claims process, or because the position taken by the Defendants in a particular inmate's claim would have severely prejudiced the claims of all of the class members under the Remedial Plan.  (*See, e.g.,* Exhibit 6, pp. 11: ll. 8-13;

6

Despite Defendants' contention, however, during the compliance period it is counsels' responsibility to monitor the whole Plan, including that part of the Plan that assures that class members maintain their right to a meaningful damage hearing process (Exhibit 1, ¶ XXXII). "Services devoted to reasonable monitoring of the [Remedial Plan], both to insure full compliance and to ensure that the plan is indeed working . . . are compensable services. They are essential to the long-term success of the plaintiffs' suit." *Northcross v. Board of Educ.,* 611 F.2d 624, 637 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

While Defendants inaccurately characterize some of Class Counsels' time as time spent on "damages issues," (Defendants' Objections, at 8), the special master properly analyzed such time as time spent "on damage process monitoring." (Exhibit 4 at 10). Therein lies the key to piercing Defendants' rhetoric. By baldly and inaccurately asserting that the questioned time is, by Defendants' definition, time spent on "damages issues," Defendants answer their own straw man question of whether such time is compensable. When the time is seen for what it really is—and as the special master understood it to be—as a factual matter, "time spent on damage process monitoring," (*id.*), the compensability of such time is clear.

This circuit recognizes that Class Counsel in civil rights litigation play a "vigorous and necessary role in implementation" of a Remedial Plan, and should be compensated for their work in its enforcement, as "plaintiffs' counsel are charged with continuing duties and responsibilities" to enforce such provisions. *Duran v. Carrothers,* 885 F.2d 1492, 1495 (10th Cir. 1989); *Diaz v. Romer*, 961 F.2d 1508, 1511-1512 (10th

---

15: ll. 1-11; 61: ll. 1-25; 62: ll. 21-25; 63: ll.1-7; 64: ll. 16-21; 108: ll. 13-25; 109: ll. 1-23; 111: ll.9-21; 113: ll. 3-25; 114: ll. 1-8).

Cir. 1992)(awarding undersigned counsel fees against the Colorado DOC in a post-consent decree monitoring case even where the remedy sought was not obtained, since pursuing the legal work was reasonably necessary and within the scope and requirements of monitoring under the decree).

Defendants are attempting to engage the Court in a semantic distinction that does not, in fact, exist.  Defendants acknowledge that they "do not contest the fact that Plaintiff Class Counsel is entitled to reasonable attorneys' fees spent monitoring general compliance by the Department of Corrections with the Remedial Plan."  (Defendants Objections, p. 8 (doc. #1567)).  They then advance the red herring of a claim that Class Counsel is trying additionally to collect "for Section 1983 claims they may not be successful in pursuing."  (*Id.*).  That statement is false, and Defendants' supposed inability to distinguish between work done by Class Counsel to protect the class-wide remedy granted in the Plan, and Class Counsel's actually involving themselves in individual inmate claims where they enter an appearance and represent the individual interests of the plaintiff, is disingenuous.

Class Counsel has indeed entered into separate fee agreements with approximately 10 inmates.   None of the time counsel has spent working on those cases has been submitted in the pending fees and costs request.  The time for that work has been recorded separately, and will only be submitted as part of a fee request if and when counsel's clients are successful in recovering a substantive remedy in their damages claims.  This is consistent with the only testimony offered in the fees hearing, and the special master rebuffed Defendants unsupported claims to the contrary.  (Exhibit 6, pp. 8: ll. 4-15: "[W]e have separate billing procedures in our office to track billing on those [10

8

individual inmate claims]. We have not included any of those billings in the submission.").[6] The special master reduced the fees and costs award by several thousand dollars to more than account for any such event:

> After carefully reviewing the documentation regarding attorney time, the undersigned finds, *as a matter of fact,* that Class Counsel made reasonable efforts to use time and personnel efficiently and to exercise reasonable billing judgment. The undersigned finds that the work performed was necessary and reasonable to achieve the monitoring required by the Remedial Plan.

(Exhibit 4, p. 9)(Emphasis added). The special master performed the same exercise with respect to the costs. (*Id.*).

In attacking the special master's Recommended Award, Defendants have mischaracterized the holdings in the cases Judge Barr relied on. *Glover v. Johnson,* 138 F.3d 229 (6th Cir. 1998) was properly cited. In *Glover,* recalcitrant prison officials failed to implement the proscribed systemic prison remedy, and the court held that plaintiffs' counsel that brought compliance proceedings should be compensated for enforcing the decree and reasonable monitoring in what defendants improperly characterized as "collateral" proceedings. *Id.* at 251-252. (*See* Defendants' Objections at 7).

---

[6] At the hearing, opposing counsel and the special master (as a matter of determining the facts) carefully and exhaustively went through every billing entry that could possibly have improperly mixed an individual inmate damage claim into the billings for Class Counsel compliance monitoring, and where there was any doubt whatsoever, instead of trying to explain why the billings were indeed correct, for simplicity sake, and so as to exercise excessive caution, Class Counsel voluntarily withdrew the questioned entries that could not be conclusively demonstrated to be compliance-related. (*See, e.g.,* Exhibit 6, pp. 16: ll. 17-24; 17: ll. 8-23; 24-25; 18: ll. 1-10; 18: 24-25, 19: 1-6; 19: ll. 7-13; 14-21; 22-25; 20: ll.1-4; 5-16, 25; 22: ll. 10-15; 24: ll. 22-25; 25: ll. 1-23; 33: ll. 11-19; 37: ll. 6-19; 38: ll. 19-25; 39: ll. 1-11; 40: ll.5-8; 53: ll. 17-23; 54: ll. 14-19; 55: l. 9; 56: 1-4; 22-24; 59: ll.1-3).

9

Defendants' supposed "distinction" of the *Glover* case on appeal to the United States Supreme Court is unintelligible. The special master was simply citing to the Supreme Court proceeding in *Glover* (where the case was reversed *on other grounds,* as noted by the special master at Exhibit 4, p. 7, *sub nom. Martin v. Hadix,* 527 U.S. 343 (1999)), to provide a proper citation to the subsequent history of the *Glover* case. Defendants' "argument" that *Martin v. Hadix* is not properly cited by the special master is thus wrong.

Defendants' attempted distinguishing away of the special master's citation to *Missouri v. Jenkins*, 127 F.3d 709, 716-720 (8th Cir. 1997) is likewise inaccurate. In that decision in the long history of the *Jenkins* litigation, the Eighth Circuit stressed the importance of allowing the plaintiff their fees for defending the remedy against attack. *Id.* at 717. That was the holding in *Jenkins* that special master Barr was citing to, and it referenced (as she correctly noted) the court's prior decision in *Jenkins v. Missouri*, 967 F.2d 1248 (8th Cir. 1992). Defendants' description of the underlying claim in the 1992 Eighth Circuit as involving a desegregation case is irrelevant and does not undercut the 1997 language on which the special master relied.

Finally, Defendants' description of the Tenth Circuit decision in *Diaz v. Romer,* 961 F.2d 1508 (10th Cir. 1992) leaves one wondering. Indeed, the *Diaz* decision did stand for the proposition that post-compliance monitoring of a prison consent decree (even if unsuccessful) was properly compensatory. *That is exactly Class Counsel's point,* and so undersigned counsel acknowledges the authority cited by Defendants. That authority directly supports the holding of the special master.

E.  **THE SPECIAL MASTER MADE FINDINGS OF FACT THAT CLASS COUNSELS' REQUESTED FEES AND COSTS WERE REASONABLY AND NECESSARILY INCURRED TO PRESERVE THE INTEGRITY OF THE CLASSWIDE REMEDIES**

Defendants' entire argument in this regard is premised on the fiction that Class Counsel has billed for time in the context of individual inmates pursuing their own damages claim.  The special master saw through that fiction. Class Counsel assiduously culled their time records, including only hours spent enforcing the Remedial Plan.  Part of enforcing the Plan has been to organize and work to preserve one of the remedies under the Plan that Defendants, time and time again, have attempted to undermine—the right of the plaintiff class members to damages relief.   With reference to Defendants' argument (that time was spent on individual cases), the special master stated as follows:

> After carefully reviewing the documentation regarding attorney time, the undersigned finds, *as a matter of fact*, that Class Counsel made reasonable efforts to use time and personnel efficiently and to exercise reasonable billing judgment.  The undersigned finds that the work performed was necessary and reasonable to achieve the monitoring required by the Remedial Plan.

(Exhibit 4 at 9) (Emphasis added).

Likewise, in response to Defendants' argument that portions of the requested fees and costs related to individual damages claims instead of reasonable and necessary monitoring, the special master determined that Defendants' arguments had no basis in fact, and that they had not presented evidence at the hearing to substantiate their speculative claim:

> DOC's proof that certain fees assessed were more likely related to Class Counsel's decision whether to accept individual cases than to monitoring compliance seemed to this fact-finder more conjectural and speculative than persuasive.

(Exhibit 4 at 8).

11

As the special master explicitly noted in the record, the "DOC . . . agrees that implementing the damages claims process is part of Class Counsel's obligation to monitor DOC compliance with the Remedial Plan." (*Id.* at 4, nt. 1).  At the date of the hearing in November 2005, over 1,300 claims had been filed and approximately 500 had already been disposed of.  (*Id.* at 4).  Accordingly, undersigned counsel did the work class counsel is obligated to do during a compliance period such as the one at hand: counsel "created a database to track notification, filing of claim forms, and orders issued by Special Masters Borchers and Pringle." (*Id.*). While attorneys for the *Defendants* have appeared and actively litigated the 60 or so individual inmate contested damage claims that had gone to hearing by November, only *one* of those inmates was represented by an attorney, and that attorney was *not* Class Counsel. (*id.*); (Exhibit 6, pp. 85: ll. 2-8; 99: ll. 5-14).

As the special master noted, the testimony at the fees hearing showed that during the individual damages hearings significant disagreements arose between the parties as to how the damages hearing process was to be conducted and what defenses Defendants could raise during that process. (*Id.*).  In fact, such differences continue, and some of them are the subject of an upcoming hearing before this Court (currently scheduled for February 9, 2006).  *See* Status Report By Plaintiff Class on Pending Issues, doc. #1087 ("Status Report").

Since the damage claim process started, the Defendants have attempted to eradicate all relief under that process by raising liability-based defenses to defeat all damage claims.  As most of the claimants are *pro se* during the damage claim process, it was of special importance that Class Counsel monitor the process to ensure compliance

with the Remedial Plan.  In so doing, class counsel has spent a large portion of time responding the Defendants' attempt to defeat all such relief.  Specifically, the Defendants raised the following issues[7]:

1. That the claimants may not bring claims for damages under the ADA. (Exhibit 5 of Plaintiffs' Submission to the special master, dated November 2, 2005 (to be submitted to the Court under separate cover by the special master));

2. That damage claims under the Eighth Amendment are barred because of the failure to plead an individually named defendant, failure to plead deliberate indifference in the claim forms, and qualified immunity issues. (*Id.*);

3. That the settlement agreement precludes any injunctive relief for individual claimants. (*Id.*);

4. That claimants must plead and prove intentional discrimination to recover under the Rehabilitation Act. (*Id.*);

5. That all claims must be dismissed unless the claimants had exhausted their administrative remedies as required by the Prison Litigation Reform Act. (Exhibit 6 of Plaintiffs' Submission to the special master, dated November 2, 2005); and

6. That the recent decision in *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005) precludes the claimants from receiving damages for DOC's failure to accommodate their medical needs under the ADA or Rehab Act.  (Exhibit 7 of Plaintiffs' Submission to the special master, dated November 2, 2005).

(*See* Exhibit 7, Order Of Special Master).

All of the above issues were briefed by the parties to the special masters and/or to this Court or Judge Kane.  The first five of the issues were decided by

---

[7] These issues, which affected a significant portion of the claimants, were raised in each individual claimant's cases and class counsel's briefing indicated it was filing on behalf of the particular claimant and "all similarly-situated claimants" or as "Class Counsel."

13

the Court in favor of the Plaintiff class. The sixth issue, the "Fitzgerald issue" is still pending before this Court.[8]

All of the above issues have to do with the damage claim process, but if Defendants are to be believed, all of these issues would have to be briefed and argued by the inmates on their own, in their *pro se* damage cases, without the assistance of counsel, and Class Counsel's briefing and/or response to those issues would not be compensated unless and until Class Counsel was retained by each individual inmate to represent him or her, and then the individual inmate's case that raised that issue was decided against the DOC. (Exhibit 6, p.95: ll. 1-12, "[By the special master:] "You (Defendants) disagree that when plaintiffs' counsel recovers, or at least recovers a victory in a class action case where damages are undecided, individualized claims are undecided, that they're entitled to fees for briefing the issues of damages and what damages are available to the class.").

According to Defendants, Class Counsel would not be paid for such work, and depending on how much an individual inmate won, under Defendants' theory, counsel might never be paid for the bulk of their work. *See Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d. 494 (1992) (in assessing the amount of the fee the primary consideration is the "degree of success obtained").

---

[8] Additionally, further questions relating to the integrity of the damages claims process are pending, and Class Counsel is and has been spending time on such issues in their role as the representatives of the plaintiff class, not in the role of representing or having filed an appearance on behalf of any individual inmate. *See, e.g.,* 1) Complaints of retaliation in the inmate damage claim process. (Exhibit 6, Transcript, p. 113: ll. 3-12); 2) Notice to Class Five claimants in the damage claim process (*Id.* at 113: ll. 13-25, 114: ll. 1-8.); 3) The expenses for each page of copying in the damage claim process (*Id.* at 114: ll. 15-25, 115: ll. 1-2).

14

According to Defendants, the DOC fox should be guarding the Remedial Plan henhouse, and Class Counsel should be monitoring and enforcing such Plan, *except* for the part of the Plan that establishes and protects the right of the plaintiff class to make individual damages claims.

**F.    THE SPECIAL MASTER HAS ALREADY REDUCED THE REQUESTED FEE AWARD TO TAKE INTO CONSIDERATION DEFENDANTS' ARGUMENT THAT THE FEES AWARDED WERE EXCESSIVE OR NOT NECESSARILY OR REASONABLY BILLED**

Defendants have argued that Class Counsel have submitted excessive billings. Defendants' Objections at 10–13.  During the hearing before the special master Class Counsel explained a number of the questioned billings.  (*See, e.g.,* Exhibit 6, pp. 16: ll. 17–25; 17: ll. 1-14; ll. 24-25; 18: ll. 1-10; ll. 24-25; 19: ll. 1-25; 20: ll. 1-12; 33: ll. 11-25; 34: ll. 1-15; 37: ll. 6-19; 40: ll. 5-15; 41: ll. 5-25; 42: ll. 1-6); (Exhibit 8, Class Counsel fees billings for the referenced dates).  The special master made factual findings and eliminated some of those (or other) charges.  (Exhibit 4 at 9) ("the requested fees and costs have been adjusted downward to accommodate the *Ramos* factors).

In deciding the facts, the special master reduced Class Counsel's fees by $15,129.  (*Id.*) (reducing the $206,629 fee request to $191,500).  Adding together *all* of the contested time specifically referenced in Defendants' Objections (at 10-13) (Exhibit 8, Class Counsel fees billings for the referenced dates), Defendants are only challenging, at most, $7,877 of requested time (aside from the argument that all of Class Counsels' time spent on the damages remedy are non-compensable).

15

Accordingly, with respect to the specific hours challenged by Defendants, the special master has already reduced the award in excess of the amount requested by Defendants.

## G.    COSTS

Defendants next appear to argue that the special master abused her discretion in awarding costs to Class Counsel.  Specifically, Defendants argue that Class counsel should not be entitled to certain costs amounting to $2,252,74.

The Special Master made a factual determination that the reasonable costs for Class Counsel's work was $12,300.  (Exhibit 4 at 9).  As a factual finding that has not been overturned within thirty days, it should not be subject to review.  Assuming *arguendo*, however, that even if the costs award is subject to review, the award by the Special Master already deducted the vast majority of the costs complained of by the Defendants and did not abuse her discretion in the award of costs.

Defendants' main contention is that certain research costs, copy costs and costs related to travel to the facilities to meet with class members are not reasonable.  At the hearing, testimony was presented by class counsel and their expert, Ed Kahn, regarding the reasonableness of those expenses.  (Transcript, Exhibit 6, pp. 22: l. 16 – 25: l. 25). The Defendants presented no evidence to the contrary.[9]  Class Counsel original costs request was for $14,518 – an amount already reduced by counsel in the exercise of billing judgment.[10] (Exhibit 11, Costs billings).  The costs requested and awarded are allowed by

---

[9] At the hearing class counsel withdrew the request for reimbursement of the travel expenses on 8/31/03 for $365.07 – the single largest one item expense complained of by Defendants.  (Transcript, Exhibit 6, pp. 24: l. 22-25: l. 9).

[10] This includes the charge for counsel's expert, Ed Kahn.

16

42 U.S.C. § 1988, 28 U.S.C. § 1920 and Fed.R.Civ.P. 54(d)(1) and are clearly within the discretion of the Special Master.

The Special Master reduced the cost award by $2,218 – granting all but $34.74 of the Defendants' requested deductions.[11]  That cannot be an abuse of discretion and Defendants cite no authority for their argument.

## H.    CLASS COUNSEL'S TIME SPENT MONITORING COMPLIANCE WITH THE DAMAGE CLAIM PROCESS IS NOT SUBJECT TO THE PRISON LITIGATION REFORM ACT (THE "PLRA")

Finally, Defendants argue that "[f]rom review of the timesheets, the vast majority of [class] Counsel's time regarding the damage issues concerns Eight Amendment claims."  Thus, according to the defense, class counsel spent monitoring the damage claim process should be subject to the attorney fee rate limits under the PLRA.  (Defendants' Objections at 16-17).  Again, Defendants confuse the issues.  The Prison Litigation Reform Act, 42 U.S.C.A. Section 1997e(d)(1)(A), provides that the attorney fee rate shall be applied to any action brought by a prisoner when the attorney fee was "directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . ."  Here, as previously stated, Class Counsel has not *litigated* the merits of any Eighth Amendment claim in the damage claim process which could arguably raise PLRA issues.  Not surprisingly, Defendants fail to cite to one time entry or any other evidence in the record to establish their assertion.[12]  To the contrary, the time spent by Class Counsel

---

[11] Although the Special Master did not itemize each deduction, the result indicates the deductions requested by the defense, or their substantial equivalent.

[12] Defendants misrepresent the nature of the issues pending before the Court with respect to the Eighth Amendment issues.  There is one motion pending which discusses whether there are Eighth Amendment claims remaining in the case.  The second issue referenced by the defense concerns what damages are available when class members die

17

was to monitor compliance with the Remedial Plan.  As such, Class Counsel's fees are not subject to PLRA fee caps – and Defendants cite no authority to the contrary.

I.  CONCLUSION

For the reasons set out above, Defendants' Objections should be denied, and the special master's Recommended Award should be approved as the Order of this Court.

RESPECTFULLY SUBMITTED on this 6th day of February 2006.

          KING & GREISEN, LLP


          ~/David H. Miller
          _____
          David H. Miller
          Paula D. Greisen
          Julie Tolleson
          1670 York Street
          Denver, CO  80206
          (303) 298-9878
          (303) 298-9879 (fax)
          miller@kinggreisen.com

          Counsel for the Plaintiff Class

---

prior to the adjudication of their damage claim.  Although damages under the Eight Amendment are discussed in that brief, the main focus of class counsel's argument is whether damages under the ADA and Rehabilitation Act of 1973 survive.

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on this 6th day of February 2006, I electronically filed the foregoing **RESPONSE BY THE PLAINTIFF CLASS TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S RECOMMENDED AWARD OF FEES AND COSTS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses via U.S. Mail, addressed to:

    Beth McCann, Esq.
    James X. Quinn, Esq.
    Assistant Attorney General
    Civil Litigation and Employment Law Section
    1525 Sherman St., 5th Floor
    Denver, CO 80203
    beth.mccann@state.co.us
    james.quinn@state.co.us

    Hon. Richard M. Borchers
    Legal Resolution Center
    707 Zenobia St.
    Westminister, CO  80030
    dborchers@legalres.com

                ~s/ David H. Miller_____
                David H. Miller