# KING & GREISEN, LLP
## ATTORNEYS AT LAW

Diane S. King
Paula Greisen

1670 YORK STREET
DENVER, COLORADO 80206

David H. Miller, *Of Counsel*
Margaret B. Funk, *Of Counsel*
Julie C. Tolleson, *Of Counsel*

Alison Butler Daniels
Leslie K. Pagett

November 2, 2005

**VIA HAND DELIVERY**

Judge Robbie Barr
Judicial Arbitor Group
1601 Blake Street, Suite 400
Denver, CO 80202

>      Re: Arbitration of fees, costs in the matter of *Montez v. Owens*,
>          92-N-870, Pursuant to Settlement Agreement Between the Parties

Dear Judge Barr:

Thank you for once again serving as the special master to arbitrate the fees and costs issues in this case. As you no doubt remember, this case is a certified class action against the Colorado Department of Corrections ("DOC") for violations of the rights of inmates with disabilities under the American with Disabilities Act (the "ADA"), the Rehabilitation Act of 1973 (the "Rehab Act") and the Eighth Amendment. The parties entered into a settlement agreement (the "Remedial Plan") which was signed by the Court after our last arbitration. Remedial Plan attached as Exhibit A. As you may remember, the settlement included not only comprehensive programmatic and architectural changes to be implemented by the DOC, but also a multi-tiered damage claim procedure under which inmates could be compensated for their injuries. In addition, the Plan provides that class Counsel "may spend the time and resources reasonably necessary to monitor compliance during the Compliance Period" and may submit their fees and costs petitions on an annual basis for your determination. Remedial Plan, Section XXXI, p. 28, Exhibit 1. Those fees are now submitted for your review.

Over the last two years since our last arbitration, we have continued to fulfill our duty as class counsel. Below we provide a history of the events during the past two years:

### I. SUMMARY OF WORK

Our last fee arbitration occurred on August 21, 2003. A copy of the Special Master's award as a result of that arbitration is attached to this letter for your convenience. After that arbitration, the Court approved the Remedial Plan at the final fairness hearing on August 27, 2003. Exhibit 1. Immediately after the Court signed the settlement agreement, a significant

**EXHIBIT 2 Plaintiffs**

Judge Robbie Barr
November 2, 2005
Page 2

portion of class counsel's time was spent responding to communications from class members regarding the agreement and responding to Defendants' appeal of the award issued as a result of the August 2003 arbitration. After briefing by the parties and a hearing, Judge Nottingham approved the attorney's fees and costs awarded at the initial arbitration of attorney's fees. Exhibit 2 (briefs by the parties, Order by Court affirming attorney's fees and costs award and entry of judgment). Thereafter, counsel worked on a variety of issues to ensure compliance with the settlement agreement, including:

- Communicating with experts regarding their roles in the compliance process;

- Communicating with clients regarding compliance issues, including visits to facilities. Visits were necessitated because DOC implemented a policy that attorney-client phone calls will no longer be allowed unless there is written verification of an immediate, and previously unknown hearing date for the inmate, and;

- Implementation of the damage claim process including such tasks of preparation of damage claim forms and instructions to claimants, meetings with opposing counsel and the Special Master to implement procedures and deadlines, resolving notification issues to claimants (including parolees and next-of-kins), and ensuring effective distribution of the claim forms to claimants.

The Damage Claim Process

The damage claim process has been a massive undertaking. See Docket of Court Proceedings since Entry of Remedial Plan, Exhibit 3. Because of disputes between the parties regarding the applicable procedures and law that governed this process, class counsel has had to spend significant time ensuring the process is in compliance with the Remedial Plan. The damage claim process in the Remedial Plan provides as follows:

XXXII.  DAMAGES

Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

Judge Robbie Barr
November 2, 2005
Page 3

    I. General inconvenience or nominal damages;

    II. Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;

    III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

    IV. Damages due to severe physical injuries; and

    V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

Class members with damages allocated under categories 1 and 2 shall not be entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3, 4 & 5 shall be entitled to a hearing before the Special Master. Generally, these hearings should be no more than two hours in length. However, the Special Master may extend the time for the hearing when the issues require additional time. Class members that are entitled to a hearing on their respective damages are entitled to counsel during that hearing, to present witnesses, make argument, and to any remedy otherwise available in a court of law.

After review of the evidence, the Special Master shall issue a written determination as to the damages awarded to each claimant. These awards may be appealed on an abuse of discretion review to the Honorable Judge Kane.

Class members, their representatives and counsel are entitled to discovery regarding their damage claims and shall be provided copies of the relevant DOC files upon request, including but not limited to medical information, as well as relevant internal quality assurance documents as allowed by the special master.

Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court

Judge Robbie Barr
November 2, 2005
Page 4

>in this case. The Special Master may only extend the time limits for filing a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.
>
>Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any individual with respect to their individual damage claim.

Remedial Plan, Section XXXII, pp. 29-29, Exhibit 1.

After the Remedial Plan was entered by the Court, there were a series of meetings between the parties and the Special Master to discuss the implementation of the damage claim process. A significant amount of time was spent by class counsel preparing the claim forms to be filed by the individual claimants. Eventually it was decided that each claimant would be provided an "Initial Claim Form" along with an instructional sheet to file their claim. After their claim was filed, the claimants were then sent a "Supplemental Claim Form" that was specific to their claimed disability and the relevant instructional sheet for providing supplemental information.

In order to ensure compliance with the Remedial Plan, class counsel's office created a database to track notification of claimants, the filing of claim forms and orders issued by the Special Masters. Prior to the recent adoption of e-filing by the District Court, the Special Masters were sending class counsel hard copies of all claims filed and all orders issued. To date, over 1,300 claims have been filed and approximately 500 have been adjudicated by the Special Masters. The volume of material generated by the claims process is massive and includes: the initial and supplemental claim forms, the materials provided by the claimants in support of their forms, the correspondence from claimants seeking information about the process, the Final Orders of the Special Masters, and the appeals filed by the parties. The organization of this material alone is very time-consuming and requires paralegal involvement.

From the inception of the damage claim process, there have been significant disputes between the parties regarding the rights and obligations of all the claimants under the Remedial Plan. These disputes include:

Discovery Issues

The parties disagreed on the amount of discovery to which claimants were entitled during the damage claim process and who would bear the costs of that discovery. After both sides submitted briefs on the issue, Special Master Borchers determined that all claimants were entitled to discovery as allowed under the Federal Rules of Civil

Judge Robbie Barr
November 2, 2005
Page 5

Procedure and that the Defendants must bear the costs of discovery. Exhibit 4 (Plaintiffs' and Defendants' briefs to the Special Masters and Court, and Order of Special Masters Concerning Discovery, August 11, 2004).

The Defendants appealed this Order to Judge Kane, pursuant to the settlement agreement. Exhibit 4. In the meantime, however, Judge Nottingham held a hearing on other unrelated issues regarding liability defenses, as discussed below. At that hearing, the discovery issues were raised, but specifically not decided by the Court. At the conclusion of that hearing, the Court ordered the parties to submit an Order memorializing the hearing for the Court's signature. Not surprisingly, the parties could not agree on the outcome of the hearing so each side submitted a separate proposed order. In their proposed order, the Defendants inserted language limiting the discovery obtainable by the claimants. When the Order finally issued, it contained a sentence to the effect that the Claimants could receive the first ten pages of discovery free. Exhibit 5. The Order did not specify who would bear the costs of discovery beyond the initial amount.

After that Order issued, Judge Kane ruled on the Defendant's appeal of the Special Masters' Order Concerning Discovery. Exhibit 4. In that Order, Judge Kane overruled all of Defendants' objections except that he found that discovery was to be granted in accordance with the Remedial Plan, rather than the Federal Rules of Civil Procedure. Exhibit 4. Not surprisingly, the parties differ in their interpretations of these two Orders and another motion has been filed with the Court to clarify which of these orders govern discovery in the damage claim process.

Liability Issues Raised by Defendants

As most of the claimants are *pro se* during the damage claim process, it was of special importance that Class Counsel monitor the process to ensure compliance with the Remedial Plan. In so doing, class counsel has spent a large portion of time responding to liability defenses raised by the Defendants to the claims to defeat recovery by the claimants. Specifically, the Defendants raised the following issues[1]:

1. That the claimants may not bring claims for damages under the ADA, Exhibit 5;

2. That damage claims under the Eighth Amendment are barred because of the failure to plead an individually named defendant, failure to plead deliberate indifference in the claim forms, and qualified immunity issues, Exhibit 5;

---

[1] These issues, which affected a significant portion of the claimants, were raised in each individual claimant's cases and class counsel's briefing indicated it was filing on behalf of the particular claimant and "all similarly-situated claimants" or as "Class Counsel."

Judge Robbie Barr
November 2, 2005
Page 6

    3. That the settlement agreement precludes any injunctive relief for individual claimants, Exhibit 5;

    4. That claimants must plead and prove intentional discrimination to recover under the Rehabilitation Act, Exhibit 5;

    5. That all claims must be dismissed unless the claimants had exhausted their administrative remedies as required by the Prison Litigation Reform Act, Exhibit 6; and

    6. That the recent decision in *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005) precludes the claimants from receiving damages for DOC's failure to accommodate their medical needs under the ADA or Rehab Act. Exhibit 7.

All of the above issues were briefed by the parties to the Special Master and/or to Judge Nottingham or Judge Kane. The first five of the issues were decided by the Court in favor of the Plaintiff class. See Orders of Judge Nottingham, Exhibits 5 and 6. The sixth issue, the "Fitzgerald issue" is still pending before Judge Nottingham.

<u>Issues Raised by The Special Masters</u>

There were also several issues that had to be briefed by Class Counsel because either the Special Master specifically requested the parties to brief or the issues were raised sua sponte by the Special Masters:

    1. Whether All Eighth Amendment claims were dismissed prior to the Settlement: In almost every Order issued by the Special Masters, they have declined to address Eighth Amendment issues stating that all such claims were dismissed by Judge Nottingham prior to the approval of the settlement agreement. Exhibit 7. This is an incorrect interpretation of the Court's prior opinion in this case and the issue is pending before Judge Nottingham.

    2. What damages are available to Class V claimants under the Remedial Plan? This is a complicated legal issue concerning what type of damages Class V claimants, those who have died during the case, are entitled to under the Remedial Plan. The Remedial Plan specifies that claimants are entitled to all damages "as allowed by law." Remedial Plan, Exhibit 1, Section XXXII. However, the type of damages allowed may depend on whether the claim is based on the ADA, the Rehab Act, or the Eighth Amendment. The issue of the type of damages allowed under the ADA and Rehab Act when the conduct

Judge Robbie Barr
November 2, 2005
Page 7

        in question caused the death of the claimant is a question of first impression and there is no existing case law on this exact situation. The Special Masters requested that the parties brief this issue and it is currently on appeal to Judge Nottingham. Exhibit 8.

3. The Special Masters issued a Report and Recommendation requesting the appointment of additional special masters as the current case load was expected to take several years to complete without additional assistance. Judge Nottingham held a hearing on this issue and the parties submitted reports on acceptable appointments. Exhibit 9.

4. The Special Masters Issued an Order concerning one of the claimants who was withdrawing his claim because of alleged threats made by a correctional officer. The Special Master directed class counsel to "take the steps necessary to determine if improper threats were made" toward the claimant. Exhibit 10. Class counsel has begun an investigation into this matter.

Other General Compliance Issues

In addition to the above issues, there have been various status conferences and procedural issues that needed to be addressed by both sides. For instance, both Judge Kane and Judge Nottingham are addressing issues raised by the Remedial Plan. However, it has not been clear which issues should be addressed to each Judge. Accordingly, at the Court's direction, the parties recently filed briefs detailing the pending issues and which Judge should be hearing that issue. Exhibit 11 (Status reports by the parties and other miscellaneous issues).

As the Court is aware, the Remedial Plan established a two-year time limit under which DOC had to achieve substantial compliance with the Plan. In the year following the approval of the Plan, class counsel communicated with their clients regarding the status of compliance with the Remedial Plan. The parties had initially hoped (as stated in the Plan) that compliance would be achieved after one year. After communicating with the clients and the experts, it was very apparent to class counsel that DOC would not be in compliance with the Remedial Plan by August 2004. Perhaps knowing that DOC was not in compliance at that time, there was no evidence produced by DOC nor did it request any compliance review at the one year anniversary of the settlement. Accordingly, class counsel has continued to monitor compliance efforts with the injunctive aspects of the Remedial Plan.

In August 2005, class counsel filed a Notice of Non-Compliance with the Court asserting that DOC has failed to meet compliance with the Plan during the allowed two-year time period. Exhibit 12 (Plaintiffs' Notice and Defendants' Response). To date, class counsel has traveled to DOC headquarters on several occasions to review documents and discuss compliance issues with

Judge Robbie Barr
November 2, 2005
Page 8

DOC personnel. Several more visits are anticipated and class counsel has begun reviewing the compliance documents produced by DOC. It is anticipated that this will be a lengthy process.

## II. ATTORNEYS' FEES AND COSTS

### A. Attorneys' Fees

In accordance with the Remedial Plan, Class Counsel is entitled to compensation for the time and resources reasonably necessary to monitor compliance during the Compliance Period. Remedial Plan, Section XXXI, p. 28, Exhibit 1. As stated in the previous arbitration award, the fee award should be calculated "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), *cited in Ramos v. Lamm,* 713 F.2d 546 (10th Cir. 1983). The lodestar number should then be adjusted according to the guidelines discussed in *Ramos*.

In this case, the lodestar amount for fees is $ 188,727.25. The time spent by the members of the legal team is summarized as follows:

| | | | |
|---|---|---|---|
| Paula Greisen | 171.95 hrs @ $250/hr | = | $42,987.50 |
| | 109.00 hrs @ $275/hr | = | $29,975.00 |
| David Miller | 147.25 hrs @ $300/hr | = | $44,175.00 |
| Alison Butler-Daniels | 65.10 hrs @ $175/hr | = | $11,392.50 |
| Patricia Bellac | 216.50 hrs @ $180/hr | = | $38,970.00 |
| Diane S. King | 1.40 hrs @ $275/hr | = | $385.00 |
| Paralegals | | | |
| Cook, BP | 170.1 hrs @ $50/hr | = | $8,505.00 |
| Kelliher, Ho | 57.80 hrs @ $55 | = | $3,179.50 |
| Crawford, Johnson, Fields | 88.80 hrs @ $85/hr | = | $7,548.00 |
| Hoskins, Catherine | 16.95 hrs @ $95/hr | = | $1,610.25 |
| **Total Fees** | | | **$188,727.25** |

A summary of the fees incurred on an annual basis is attached as Exhibit 13.[2] Class counsels' detailed billing statements were contemporaneously kept and identify reasonable billable time worked on the case, a description of the actual work performed, and the applicable rates charged. Because counsel for the defense has indicated that they are challenging all the time spent by class counsel to ensure compliance with the damage claim process, undersigned counsel has provided a breakdown of those fees separately in Exhibit 14 as a printout showing fees for monitoring

---

[2] The fees and costs are those recorded on the computer as of October 31, 2005. Class counsel will provide a supplemental fee petition to submit time and costs to prepare for the arbitration.

Judge Robbie Barr
November 2, 2005
Page 9

compliance with the general Remedial Plan ("the Montez, et al." printout) and one for monitoring compliance with the damage claim provision in the Remedial Plan (the "Montez-Damages" printout).[3]

1. Market Rate Determination

As stated previously by this Court, the hourly fee awarded should reflect rates in effect at the time of the award to roughly compensate for inflation and interest adjustments. *Ramos*, 713 F. 2d at 555. However, the Court "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Lintz supra,* at 1165.

This Court previously approved Ms. Greisen's rate of $250 an hour. This had been Ms. Greisen's billing rate since 1999. In fall 2004, Ms. Greisen's billing rate was increased to $275 an hour. See Exhibit 15, Greisen's Affidavit for Fees. Although class counsel could argue that all of Ms. Greisen's time since the last award should be billed at the higher rate, in an exercise of billing judgment, her previous billing rate will be applied on all time entries prior to January 1, 2005. Thus, all time prior to January 1, 2005 is billed at the rate of $250 an hour and time after that date is billed at her current rate. If all of Ms. Greisen's time was billed at her current rate, the fee petition request would have increased by $4,538.

Mr. David H. Miller's rate of $300 has not changed and has previously been approved by this Court. Plaintiffs' counsel are familiar with the work performed by associate counsel Patricia Bellac and Alison Butler Daniels. The rates charged for those associates are comparable to those charged by other attorneys with similar experience, reputation and skill in the Denver metropolitan area, and we believe that these rates are reasonable in light of the prevailing rate in the community. See Exhibits 15 & 16, Greisen and Miller's Affidavit for Fees.
Under the factors outlined by the Supreme Court in *Hensley* and further refined by the Tenth Circuit in *Ramos*, Plaintiffs' counsels' hourly rates charged in this case are reasonable for attorneys of their skill and experience particularly in handling civil rights and prison cases in this community.

2. Reasonable Hours

The time and labor expended by class counsel was reasonable given the nature of the case, the need to monitor the compliance efforts under the Plan, and the complications encountered in implementing the damage claim process. Plaintiffs' counsel believe they used conservative billing judgment such that any time recorded represents time that was efficient and effective for representation of the class. When possible, paralegals were used to assist in the

---

[3] These separate printouts have handwritten notations showing were time was no-charged ("N/C") for the final billing.

Judge Robbie Barr
November 2, 2005
Page 10

review of the voluminous documents produced during and after the final settlement was approved by the Court and during the damage claim process.

A significant portion of time was spent monitoring compliance with the damage claim process. This was necessitated by the Defendants' repeated attempts to raise liability-based defenses during that process. Even after the Court issued an Order in November 2004 stating that liability-based defenses could not be raised during the damage claim process, the Defendants continued to do so by raising the exhaustion requirements under the PLRA. Class counsel had an ethical duty to respond to these attempts that, if successful, would have eradicated the damage relief obtained under the Remedial Plan. All of the time spent by class counsel on the damage claim process requested in this petition was time spent on issues that affect either the entire class, a large number of claimants, or an entire category of damage claimants. In the major briefings outlined above, the issues addressed by class counsel concern legal principles that will be applied to the claim process, rather than the merits of any individual case.

At this time, class counsel represents approximately ten (10) individual claimants with respect to their claims for damages. Class counsel has specifically NOT billed any of the time spent on those representation to Defendants in this fee petition. Counsel maintains separate billing records and files for those individuals and that time is not included in this petition.

Counsel for the Defendants has indicated that they do not believe that time spent by class counsel on the damage claim process is compensable. This is contrary to the language of the Remedial Plan. The damage claim process was intended to be a simple process under which class members could appear without counsel to show the Special Masters, what, if any damages they had suffered during the pendency of this case. As contemplated, the vast majority of claimants are, in fact, pro se. Contrary to the intent of the Remedial Plan, as discussed above the defense has raised numerous legal defenses in the damage claim process. Without exception, these legal defenses have been raised initially in pro se cases where the claimants are not in a position to argue these complicated legal theories. On several occasions, the Special Master has specifically requested Class counsel to respond to defenses raised by the Defendants. See Order of Special Master, July 6, 2004, Exhibit 4; Exhibit 5, Report and Recommendation of the Special Masters to Senior United States District Judge John L. Kane, July 7, 2004, p.2.

In essence, Defendants argue that although the Remedial Plan provides for a damage claim process, they should be allowed to raise legal defense to eradicate all relief under that process and class counsel should have no role in thwarting those defenses. Clearly, the Remedial Plan contemplates that class counsel will monitor compliance with the Remedial Plan during the "compliance period." Protecting the integrity of the damage claim process is part of the necessary monitoring in this case and is fully compensable. Although success is not necessary to the recovery of fees as long as the involvement of class counsel is "reasonable," it should be

Judge Robbie Barr
November 2, 2005
Page 11

noted that class counsel has been successful in defeating every liability based defense raised by the Defendants to date.

    a. Adjustments Based on Results Obtained

After calculating the lodestar fee that the prevailing party may receive, a court has discretion to consider other factors deemed relevant to an award of attorney fees. *Ramos,* 713 F.2d at 553-54. Such factors include: the novelty and difficulty of the questions presented, the time involved and the results obtained, the number of reasonable strategies pursued, and "responses necessitated by the maneuvering of the other side." *Id.* at 554.

As discussed above, there were several unanticipated issues that arose during the damage claim process. Some of those issues are ones of first impression in this Circuit – such as what type of damages deceased claimants may receive under the relevant laws in this case. Other issues arose simply because they were not specifically addressed in the Remedial Plan -- such as who pays for discovery during the damage claim process. Because of the uniqueness of the posture of this case, it was probably inevitable that many of these sometimes difficult questions would arise. To date, the Plaintiffs have been successful in thwarting every major attempt by the defense to limit damages. As previously stated, this legal maneuvering by the defense required class counsel to spend time monitoring the damage claim process to ensure adherence to the Remedial Plan.

Overall, we again believe that the results obtained by the efforts of class counsel have been excellent and that the time and resources expended to obtain those results were reasonable under the circumstances.

### B. Costs

The reasonable and necessary costs incurred in the case have been attached as Exhibit 17. As these documents reflect, the reasonable costs incurred thus far in this matter amount to $8,052.76. The following is a breakdown of costs by category:

| | | |
|---|---|---:|
| Delivery Charges | = | $56.69 |
| Facsimile Charges | = | $102.51 |
| Research Charges | = | $333.12 |
| Long Distance Charges | = | $343.48 |
| Photocopy Charges | = | $5,211.12 |
| Postage Charges | = | $286.66 |
| Travel Charges | = | $1,696.75 |
| Miscellaneous Charges | = | $22.43 |
| **Total Costs** | = | **$8,052.76** |

Judge Robbie Barr
November 2, 2005
Page 12

In the exercise of billing judgment, class counsel agrees to reduce the cost bill by eliminating expenses for courier/delivery charges, facsimile charges and the miscellaneous items which totals $181.63. Therefore, the total costs requested amount to $7,871.13.

## V. CONCLUSION

Plaintiffs respectfully request an award of attorneys' fees in the amount of $188,727.25 and costs of $7,871.13 for a total of $196,598.38.

We look forward to meeting with you on Thursday, November 10, 2005, to resolve these issues.

Sincerely,
KING & GREISEN, LLP

Paula Greisen
David H. Miller

PG/DHM/ckc
Enclosures