IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 92–N–870 (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE (JESUS) MONTEZ, et al.

    Plaintiffs,

v.

BILL OWENS, et al.,

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 3 0 2004

GREGORY C. LANGHAM
CLERK

---

### ORDER AND MEMORANDUM OF DECISION

---

    In this class action, state prisoners with various disabilities claim that state officials have violated certain federal statutes prohibiting disability discrimination. The named plaintiffs are inmates at various correctional facilities operated by the Defendant Colorado Department of Corrections. Plaintiffs allege that the Colorado Department of Corrections and the individual defendants in their individual and official capacities have violated (1) the Rehabilitation Act, 29 U.S.C.A. § 794 (West 1999 & Supp. 2003), (2) the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 to 12213 (West 1995 & Supp. 2003), and (3) 42 U.S.C.A. § 1983 (West 2003), together with the Eighth and Fourteenth Amendments to the United States Constitution. On the eve of trial, the parties settled the case. Part of this settlement involved the reference of the issue of attorneys' fees and costs to a special master. This matter is now before the court on defendants' "Objection to Memorandum Award of Attorneys' Fees, Class Member Compensation, and Costs; Motion for Hearing Regarding Same," filed October 20, 2003.



EXHIBIT

5

Plaintiffs

Jurisdiction is based on 28 U.S.C.A. § 1331 (West 1993 & Supp. 2003).

## FACTS

### 1.    *The Settlement Agreement*

This case has a long and tortuous history. A factual overview of the issues and claims for

relief in this case is provided in *Montez v. Romer*, 32 F. Supp.2d 1235, 1237 (D. Colo. 1999).

Familiarity therewith is assumed.

On the eve of trial, the parties reached a settlement agreement. (Special Master's Mem.

Award of Att'y Fees, Class Member Compensation, and Costs, and Denial of Additional

Monetary Sanctions at 1 [filed Oct. 6, 2003] [hereinafter "Report"].) I conducted a fairness

hearing on the proposed settlement in August 2003, and approved the proposed settlement with

modifications on August 28, 2003. (Order Approving Settlement [filed Aug. 28, 2003].) The

parties, in the settlement agreement, provide a method for the assessment and award of attorneys'

fees and costs. (Remedial Plan, Colorado Department of Corrections, August 27, 2003 at 29–30

[filed Sept. 11, 2003] [hereinafter "Remedial Plan"].) According to the terms of the agreement,

attorneys' fees and costs are to be determined by a "special master" after a hearing. (*Id.*) The

agreement does not specifically reference Federal Rule of Civil Procedure 53, which deals with

special masters. (*Id.*)

Regarding this hearing, the parties stipulate that "[d]efendants may not argue that

[p]laintiffs are not 'prevailing parties' for any matter in this litigation." (*Id.* at 30.) The

agreement then states that "[p]laintiffs stipulate that time spent solely on Eighth Amendment

matters that do not implicate the ADA or Rehab Act will be subject to the fee caps under the

Prison Litigation Reform Act ["PLRA"]. All other claims are not governed by the PLRA and

reasonably hourly rates would apply." (*Id.*) Next, the agreement explains that "[p]laintiffs'

counsel may also request that the class representatives are entitled to an additional amount of

compensation for their service as representatives." (*Id.*)

The agreement then sets forth the time for the decision of the special master, and this

court's review of the conclusions of the special master. (*Id.*)  Regarding these issues, the parties

stipulate that

> the special master will . . . decide the attorneys' fees and costs
> within 30 days of the fairness hearing.  The special master's
> decision will be subject only to an abuse of discretion review by
> Judge Nottingham and, unless the special master's decision is
> overturned by the Court within 30 days, the decision by the special
> master will stand as the final decision in the case.

(*Id.*)

The agreement also addresses the administrative closure of this case. (*Id.* at 31.)  The

agreement provides that

> [t]he lawsuit shall remain administratively closed and shall not be
> reopened absent a showing of good cause upon motion from either
> Plaintiffs or Defendants.  The parties stipulate that 'good cause'
> will be shown by an allegation that either party has failed to
> comply with a determination made by . . . a special master and
> seeks enforcement of that decision.

(*Id.*)

### 2.    *The Special Master's Hearing and Report*

The parties held their attorneys' fees and costs hearing before the special master on

August 21, 2003. (Report at 3.)  The special master issued her report on October 2, 2003 and

filed it in this court on October 6, 2003. (*Id.* at 12.)  Regarding attorneys' fees, the special master

concluded that (1) plaintiffs' counsel were entitled to an award at the billing rates they requested,

-3-

(2) none of plaintiffs' legal work was solely attributable to plaintiffs' Eight Amendment claims so plaintiffs' billing rates should not be limited by the PLRA, (3) the hours of billing requested by plaintiffs was reasonable, and (4) the results achieved by plaintiffs were "excellent." (*Id.* at 4–9.) Based on the foregoing, pursuant to the lodestar method of calculating attorneys' fees, the special master assessed an award of $952,614.70 in attorneys' fees against defendants. (*Id.* at 9–10.)

Regarding costs, the special master concluded that $4,794.00 of plaintiffs' requested costs were either unreasonable or would normally be absorbed as part of a law firm's overhead. (*Id.* at 10.) The special master awarded the rest of plaintiffs' requested costs, assessing an award of $135,998.10 in costs against defendants. (*Id.*)

Regarding compensation for named class representatives, the special master stated, in full, that "[t]he cases cited and evidence presented support an award of compensation for the named class representatives in the following amounts." (*Id.* at 11.) The special master then listed the class representatives and awarded each of them a sum between $1500 and $5000. (*Id.*) Consequently, the special master awarded compensation for the named class representatives against defendants in the total amount of $48,500.00. (*Id.*)

Finally, regarding sanctions, the special master declined to award additional attorneys' fees as a sanction for defendants' discovery abuses because defendants suffered a penalty for their abuses, namely a limitation of what arguments they could maintain at trial. (*Id.* at 11–12.)

*3.*      ***Defendants' Opposition to the Special Master's Report***

On October 20, 2003, defendants filed an objection to the special master's report in this court. (Objection to Mem. Award of Att'ys' Fees, Class Member Compensation, and Costs;

Mot. for Hr'g Regarding the Same [filed Oct. 20, 2003] [hereinafter "Defs.' Br."].) Defendants object to the special master's report regarding attorneys' fees on the grounds that, according to defendants, (1) plaintiffs' lawyers engaged in excessive billing, (2) plaintiffs' lawyers billing time included administrative tasks, (3) the special master erred by not applying the PLRA to reduce plaintiffs' attorneys' fees award, (4) attorney Paula Greisen's billing rate was too high, and (5) plaintiffs' attorneys' fees award should be reduced because of plaintiffs' partial or limited success. (*Id.* at 4–13.) Defendants object to the special master's report regarding costs because, according to defendants, certain costs awarded were improper. (*Id.* at 13–14.) Defendants, furthermore, object to the special master's award of compensation for named class representatives because, according to defendants, compensation for class representatives is improper in this case, and several of the inmates who received compensation were not class representatives. (*Id.* at 14–19.) Defendants, moreover, request a hearing on this matter. (*Id.* at 1, 20.)

On October 27, 2003, plaintiffs filed a response to defendants' objections. (Resp. to Objection to Mem. Award of Att'ys' Fees, Class Member Compensation, and Costs and Objection to Req. for a Hr'g [filed Oct. 27, 2003] [hereinafter "Pls.' Resp."].) Then, on December 8, 2003, plaintiffs' moved to open the case for entry of judgment for the award of attorneys' fees, costs, and class representative compensation pursuant to the special master's report. (Mot. to Open Case for Entry of J. for Award of Att'ys' Fees and Costs and Class Member Compensation [filed Dec. 8, 2003].) Plaintiffs argue that this court must reopen the case and enforce the special master's award because, under the settlement agreement, the special master's award became final when this court did not overrule her report within 30 days of its

issuance. (*Id.*)

On December 12, 2003, defendants responded to plaintiffs motion and moved to open the case for consideration of defendants' objections to the special master's report. (Mot. to Open Case for Consideration of Defs.' Objections to Recommendation of Special Master and Resp. to Pls.' Mot. to Open Case [filed Dec. 12, 2003] [hereinafter "Defs.' Mot to Open"].) Defendants argue that since the special master did not issue her report within 30 days of the hearing, as set forth in the settlement agreement, the special master's report is unenforceable under the settlement agreement. (*Id.*)

On April 30, 2004, in light of defendants' request for a hearing and pursuant to case law interpreting Federal Rule of Civil Procedure 53, I held a hearing at which the parties presented argument regarding these objections and motions. *See Green v. Brady*, 45 F.3d 439, No. 94–1210, 1995 WL 4282, at *2 (10th Cir. Jan. 6, 1995) ("Our reading of [Rule 53] . . . requires the district court to hold a hearing on objections to the [special master's] report, if requested to do so, before it adopts the special master's recommendation") (unpublished); *Kieffer v. Sears, Roebuck & Co.*, 873 F.2d 954, 956 (6th Cir. 1989) ("we hold that when a district court is presented with objections to the report of a special master, the objector has a right to a hearing"); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2612 (2d ed. 1995) (stating that "[t]he court must hold a hearing on the motion" objecting to a special master's report).

## ANALYSIS

### 1.    Standard of Review

This case raises some interesting questions, not often addressed, about the extent that

parties can, by stipulation, alter the federal rules of civil procedure. Whether this court can

review this case, and if so, under what standard of review, is dependent upon the parties' ability

to alter the rules of civil procedure.

The appointment and review of decisions of special masters is governed by Federal Rule

of Civil Procedure 53. Despite the fact that the parties do not specifically reference Rule 53 in

the settlement agreement, and the court's order did not address Rule 53, Rule 53 still governs the

issues in this matter. *See Turner v. Orr*, 722 F.2d 661 (11th Cir. 1984) (holding that parties

repeated reference in a consent order to a special master, even without mention of Rule 53, is

sufficient to establish a reference to a special master under Rule 53).

The first issue I address is which version of Rule 53 applies to the special master's report.

Rule 53 was extensively amended as of December 1, 2003. The Enabling Act provides that

when the United States Supreme Court amends a rule of civil procedure,

> [t]he Supreme Court may fix the extent such [amended] rule shall
> apply to proceedings then pending, except that the Supreme Court
> shall not require the application of such rule to further proceedings
> then pending to the extent that, in the opinion of the court in which
> such proceedings are pending, the application of such rule in such
> proceedings would not be feasible or would work injustice, in
> which event the former rule applies.

28 U.S.C.A. § 2074 (West 1994 & Supp. 2003). Here, the parties stipulated to a joint master

prior to the effective date of the new Rule 53, the special master issued her report prior to the

effective date of the new Rule 53, and the parties filed their objection and response thereto prior

to the effective date of the new Rule 53. I, therefore, conclude that it would work an injustice to treat this issue under the amended rule.

The former Rule 53(e) provides that

> **(1) Contents and Filing.** The master shall prepare a report upon the matters submitted to the master by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report. . . .
>
> **(2) In Non-Jury Actions.** In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. . . . The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions. . . .
>
> **(4) Stipulation as to Findings.** The effect of a master's report is the same whether or not the parties have consented to the reference; but, when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.

Fed. R. Civ. P. 53(e) (2003). The standard of review of a special master's findings of fact is clearly erroneous. 9 James Wm. Moore et al., Moore's Federal Practice § 53.12[3][d][i][A] (3d ed. 1999). The standard of review, however, for a special master's conclusions of law, is de novo. 9 James Wm. Moore et al., Moore's Federal Practice § 53.12[3][d][i][B] (3d ed. 1999).

Two interrelated issues regarding the standard of review of the special master's report under the former Rule 53 arise in this case. The first issue is whether the district court can still address the report of the special master even though more than thirty days have passed since the special master's decision. The second issue is whether the parties can stipulate to a level of review other than the one specified under the rule. I address each issue in turn.

First, the parties stipulate that "unless the special master's decision is overturned by the

Court within 30 days, the decision by the special master will stand as the final decision in the case." (Remedial Plan at 30.) Since I did not rule on defendants' objections within 30 days of the special master's report, I must determine whether I still have the power to review the special master's decision. There is no law on this exact issue. However, the Tenth Circuit has confronted a similar issue regarding whether the parties' stipulation that a special master's report is final requires the court to adopt, in full, the special master's report. *Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319 (10th Cir. 1980) (en banc). In *Polin*, "[u]pon stipulation of the parties, the judge entered a[n] . . . order enlarging the authority of the special master to conduct all further proceedings and stating that 'judgment will be entered in the case by this Court as recommended by such Special Master.'" *Id.* at 320. Subsequently, on the same day that the special master granted summary judgment for the defendant, "the district court entered judgment '[i]n conformity with the Order entered by [the] Special Master.'" *Id.* (alterations in original). The *Polin* court agreed with the district court that the parties could stipulate that a master's findings of fact are final. *Id.* at 1321. The *Polin* court, however, disagreed with the district court's summary adoption of the entirety of the special master's report, holding that the "[f]ailure of the district court to review and consider questions of law arising upon the special master's report violates Rule 53(e)(4)." *Id.* Thus, the parties explicit agreement that the court enter judgment in the case in accordance with the special master's decision did not override the Rule 53 requirement that the district court review the special master's report regarding questions of law. *Id.*

    Here, the parties have not stipulated, as in *Polin*, that I must adopt the findings of fact and conclusions of law by the special master. The parties, however, have set forth a mechanism that

accomplishes the exact same result if I do not overturn the special master's report within 30 days. (Remedial Plan at 30.) According to *Polin*, while the parties have the authority to require me to adopt the special master's findings of fact without review, the parties cannot require me to adopt the special master's conclusions of law without review. Accordingly, *Polin* mandates that I review the special master's conclusions of law.

Regarding my review of the special master's findings of fact, as discussed above, "when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered." Fed. R. Civ. P. 53(e) (2003); *Polin*, 634 F.2d at 1321 & n.3. The question before me on this point is relatively simple — whether the parties have stipulated that the special master's findings of fact are final. The parties stipulated that "unless the special master's decision is overturned by the Court within 30 days, the decision by the special master will stand as the final decision in the case." (Remedial Plan at 30.) The broad brush stroke language used by the parties includes both the special master's conclusions of law and findings of fact. (*Id.*) Since this stipulation implicitly includes, as a subset, the special master's findings of fact, I cannot review the special master's findings of fact since I have not overruled the special master's report within 30 days of its issuance.

Second, in reviewing the special master's conclusions of law, I must determine whether the proper standard of review is the one under Rule 53, or the one stipulated to by the parties. The parties have stipulated that "[t]he special master's decision will be subject only to an abuse of discretion review by Judge Nottingham." (Remedial Plan at 30.) Normally, courts apply a de novo standard of review to a special master's conclusions of law. 9 James Wm. Moore et al., Moore's Federal Practice § 53.12[3][d][i][B] (3d ed. 1999). I have found no direct law on

whether parties can stipulate to a different standard of review regarding a special master's

conclusions of law. Despite the lack of case law on this precise issue, the holding of *Polin*,

discussed above, is sufficiently analogous to this issue to provide guidance on this point. *Polin*

allows the parties to modify Rule 53 to the extent permitted by Rule 53 — by stipulating to the

finality of the special magistrate's findings of fact. *Polin*, 634 F.2d at 1321 & n.3. It does not

allow the parties, however, to stipulate to a modification of Rule 53, which was not permitted by

Rule 53 — by stipulating to the finality of the special magistrate's conclusions of law. *Id.* at

1321. Moreover, as a general matter, parties do not have unfettered discretion in their agreement

upon the role of a special master. For example, the Tenth Circuit has held that "the fact that the

parties agreed" to have a special master supervise the answers to interrogatories "does not make

[such a reference] permissible." *Wilver v. Fisher*, 387 F.2d 66, 69 (10th Cir. 1967); *but cf. Polin*,

634 F.2d at 1321 ("reference to a special master when made outside the limitations of Rule 53(b)

. . . does not raise an issue of jurisdiction. At most it constitutes an abuse of discretion")

(citations omitted). Since Rule 53 does not expressly permit the parties to alter the standard of

review of a special master's conclusions of law, the parties may not do so by stipulation.

Accordingly, I review the special master's conclusions of law under the de novo standard.

## 2. *Preliminary Matters*

Prior to analyzing whether the special master erred in any of her conclusions of law, I

must address three preliminary matters. First, although not raised by the parties, I must

determine whether defendants' timely filed their objection to the special master's report. Federal

Rule of Civil Procedure 53(e)(2) provides that "[w]ithin 10 days after being served with notice of

the filing of the report any party may serve written objections thereto upon the other parties."

Pursuant to Federal Rule of Civil Procedure 6(e), since the clerk gives notice of the filing by mail, the parties have thirteen days from the filing of the special master's report in which to object. *U.S. ex rel. Tenn. Valley Auth. v. 72.0 Acres of Land*, 425 F. Supp. 929, 946 (E.D. Tenn. 1976); 9 James Wm. Moore et al., Moore's Federal Practice § 53.13[3][e][i] (3d ed. 1999). The special master's report was filed in this court on October 6, 2003. (Report.) On October 20, 2003, defendants filed an objection to the special master's report in this court. (Defs.' Br.) Thus, defendants' objection was filed one day late.

However, defendants' objection is still properly before the court. "When a party files an untimely objection to the master's report, but the opposition does not object based on untimeliness, the objection is waived." 9 James Wm. Moore et al., Moore's Federal Practice § 53.13[3][e][i] (3d ed. 1999) (citing *Ex parte Jordan*, 94 U.S. 248, 252, 24 L. Ed. 123 [1876]). Here, plaintiffs do not object to defendants' tardy filing under Rule 53. Indeed, any reference to Rule 53 is conspicuously absent from both parties' briefs. Plaintiffs raise the issue that defendants delay in filing their objections is inappropriate because of the 30-day time limit set forth in the settlement agreement. (Pls.' Resp. at 3.)[1] Plaintiff's argument as to this point is not premised upon the untimeliness of defendants' objection under Rule 52(e)(2). Since plaintiffs have not objected to defendants' tardy filing under Rule 53(e)(2), plaintiffs have waived any objection to defendants' late filing.

Second, defendants contend that the special master's report is completely unenforceable

---

[1]Specifically, plaintiffs explain that "[d]espite knowledge that there was only a limited amount of time to appeal this decision under the settlement, Defendants waited eighteen (18) days to file their appeal and now object to all aspects of Judge Barr's order." (Pls.' Resp. at 3.)

because the special master was required to "decide the attorneys' fees and costs within 30 days of

the fairness hearing," and the special master did not do so. (Defs.' Mot to Open; Remedial Plan

at 30.) The parties held their attorneys' fees and costs hearing before the special master on

August 21, 2003. (Report at 3.) Thus, per the settlement agreement, the special master's report

was due by September 20, 2003. (Remedial Plan at 30.) The special master issued her report on

October 2, 2003, and this report was filed in this court on October 6, 2003. (Report at 12.)

Nevertheless, defendants' argument that the special master's report is invalid due to its untimely

filing is without merit.

While the parties stated that the special master would "decide the attorneys' fees and

costs within 30 days of the fairness hearing," the parties did not agree on a course of action if the

special master did not make the determination within 30 days. (Remedial Plan at 30.) The

parties could have added a clause that any ruling by the special master more than 30 days after

the fairness hearing would be void. The parties added a similar clause in the next sentence

regarding the finality of the special master's decision if this court did not rule within 30 days.

Since the parties did not include such a clause regarding the amount of time within which the

special master needs to make a decision, the late decision by the special master does not make

her report void. Furthermore, the 30 day requirement reads as a guideline to help accelerate the

award of attorneys' fees as opposed to a binding requirement created to void the special master's

report. Defendants, moreover, have neither shown nor discussed any resulting prejudice from the

delay in the special master's issuance of the report. For the foregoing reasons, I reject

defendants' argument that the special master's report is void.

Third, plaintiffs argue that I cannot address defendants' objection because defendants

failed to provide the court with a transcript of the special master's hearing. (Pl.'s Resp. at 3–5.) According to plaintiffs, defendants, as the appellant, have the duty to provide the proper record. (Pls.' Resp. at 3–5.) Ordinarily, plaintiff is correct that the appellant has such a duty. *See Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995) ("It is not this court's burden to hunt down the pertinent materials. Rather, it is Plaintiff's responsibility as the appellant to provide [the court] with a proper record on appeal"). However, in the context of Rule 53, it is the special master's duty, as opposed to the objecting party's duty, to provide the court with the record of the proceedings before the special master. Fed. R. Civ. P. 53(e)(1). Rule 53(e)(1) states that "unless otherwise directed by the order of reference, the master shall file with the report a transcript of the proceedings and of the evidence and the original exhibits." *Id.* Here, there is no record of the special master providing the transcript, evidence, or original exhibits to this court. The lack of this record, however, does not and cannot impact this order because I am bound by the special master's factual determinations. Accordingly, the court can address defendants' objection, despite the fact that neither the parties nor the special master filed the transcript.

## 3. Attorneys' Fees

Defendants identify five alleged errors of the special master in assessing attorneys' fees. I address each in turn. First, defendants contend that plaintiffs' attorneys engaged in excessive billing due to block billing, utilized more than one lawyer for a task, and improperly billed for travel time. (Defs.' Br. at 4–8.) The Tenth Circuit "has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). Moreover,

-14-

> [b]ecause utilizing more than one lawyer may be reasonable in
> some situations, such as during settlement conferences or during
> trial, we decline to require an automatic reduction of reported
> hours to adjust for multiple representation or potential duplication.
> However, the district court should give particular attention to the
> possibility of duplication.

*Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) (footnote omitted), *overruled on other*

*grounds, Pa. v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725, 107 S.Ct. 3078,

3086 (1987). Furthermore, travel time and costs that "would normally be billed to a private

client" are permitted in an award of attorneys' fees. *Id.* at 559. In light of the foregoing, the

special master did not err in any conclusions of law. Accordingly, her findings of fact that these

attorneys' fees are appropriate is affirmed.

Second, defendants contend that the special master erred in assessing attorneys' fees for

administrative tasks. (Defs.' Br. at 8–9.) Although often not assessed as part of attorneys' fees,

the special master could assess these expenses "if such expenses are usually charged separately in

the area." *Ramos*, 713 F.2d at 559. Thus, the special master's findings of fact that these

attorneys' fees for administrative tasks are appropriate is beyond my review.

Third, defendants contend that the special master did not follow the Prison Litigation

Reform Act ("PLRA"), 42 U.S.C.A. § 1997e (West 1994 & Supp. 2003). (Defs.' Br. at 9–12.)

The PLRA caps the amount of attorneys' fees per hour for certain types of prison claims. 42

U.S.C.A. § 1997e. The parties and the special master agree that only plaintiffs' Eighth

Amendment claims are subject to the PLRA. (Report at 5–6; Defs.' Br. at 9–12; Pls.' Resp. at

13–15); *see also Beckford v. Irvin*, 60 F. Supp.2d 85, 88 (W.D. N.Y. 1999) (holding that PLRA

does not apply to claims under the ADA). The special master determined that "the legal work

-15-

required was all related to [the] ADA and Rehab Act issues, even though there was some overlap

with Eighth Amendment issues." (Report at 6.) Thus, the special master did not follow the

PLRA cap for any of the time billed by plaintiffs. (*Id.*) Defendants assert that this conclusion is

improper. (Defs.' Br. at 9–12.)

The Ninth Circuit recently addressed this issue, and concluded that a district court does

not abuse its discretion in determining that plaintiffs are entitled to attorneys' fees without the

PLRA cap where one of their claims is subject to the PLRA cap and the other claims are not.

*Armstrong v. Davis*, 318 F.3d 965, 974–75 (9th Cir. 2003). The *Armstrong* court supported its

decision by noting that "if 'fee claims and non-fee claims were so intertwined that the time spent

on the claims could not reasonably be divided, fees could be awarded for the entire case.'" *Id.* at

975 (quoting 1 Mary Francis Derfner & Arthur D. Wolf, Court Awarded Attorney Fees, ¶

12.02[1][b] at 12-13 [2001]). Furthermore, the court cited *Hensley v. Eckerhart*, explaining that

> cases in which 'the plaintiff's claims for relief . . . involve a
> common core of facts or [are] based on related legal theories[,]
> [m]uch of counsel's time will be devoted generally to the litigation
> as a whole, making it difficult to divide the hours expended on a
> claim-by-claim basis. . . . Where a plaintiff has obtained excellent
> results, his attorney should recover a fully compensatory fee.'

*Id.* at 975 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 [1983])

(alterations in original). In light of the foregoing, the special master did not err in any

conclusions of law. Accordingly, her findings of fact that these attorneys' fees are appropriate is

affirmed.

Fourth, defendants object to the rate at which attorney Greisen billed for her work.

(Defs.' Br. at 12.) Defendants' argument is premised, in part, on the fact that in a different

-16-

prisoner's rights case, I found that $175 an hour was a reasonable rate for Greisen. *Rodriguez v. Zavaras*, 22 F. Supp.2d 1196, 1202 (D. Colo. 1998) ("Rodriguez claims his attorneys are entitled to hourly rates as follows: . . . Paula Greisen [] at $175 per hour. Rodriguez's attorneys claim that th[is] hourly rate[ is] commensurate with reasonable hourly rates of other lawyers with similar experience and skill in the Denver legal community. [Pl.'s Mot. ¶¶ 12-13.] As defendants have not objected, I deem those rates reasonable for the services rendered before April 26, 1996"). The court is puzzled as to why Greisen's rate prior to April 26, 1996 was $175 an hour in one case, but the special master set her rate, at all times, including the time prior to April 26, 1996, at $250 an hour. However, an attorney's billing rate presents a question of fact, not a question of law. *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) ("[A]n attorney's marketplace billing rate is a factual question which is subject to a clearly erroneous standard of review") (internal quotation marks omitted; citation omitted; alteration in original). I, therefore, cannot review the special magistrate's determination of Greisen's billing rate.

Fifth, defendants contend that the special master erred by not reducing attorneys' fees because of plaintiffs' allegedly partial and limited success. (Defs.' Br. at 12-13.) The special magistrate stated that "I specifically find, even without reliance on the settlement stipulation, which says that Plaintiffs are the prevailing parties, that the results achieved [by plaintiffs] were 'excellent,' and not at all diminished by the relatively insignificant dismissal of individual government officials." (Report at 8-9.) Defendants argue factual reasons why the special master's conclusion is allegedly incorrect. (Defs.' Br. at 12-13.) This, once again, is a finding of fact that I cannot review.

### 4.    Costs

Defendants argues that $42,477.13 of plaintiff's $140,792.10 submission of costs are inappropriate. (Defs.' Br. at 13–14.) These costs represent (1) delivery and courier charges, (2) fees associated with allegedly unnecessary depositions, (3) meals,[2] (4) car rentals, (5) costs associated with alleged administrative tasks, (6) reduction in expert fees, and (7) miscellaneous expenses. (Defs.' Br., Ex. 3 [Defendants' Explanation of Costs that Should Not be Awarded].) It is legally permissible for the special master to impose these costs. *See, e.g., Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997) (holding that an award of costs for photocopying, mileage, meals and postage was appropriate where such fees were usually separately charged in area). The special master determined that the costs that she assessed would not be included in a law firm's overhead — in other words, would be costs the firm would bill to its clients — and were therefore proper. (Report at 10.) Since I may not review this factual finding, and the special master did not err in her conclusions of law, I affirm the special master's decisions as to costs.

### 5.    Incentive Awards to Class Representatives

Defendants maintain that the special master erred in her determination that the class representatives are entitled to additional compensation. (Defs.' Br. at 14–19.) There is no Tenth Circuit law on this issue. However, there are two cases from the Sixth Circuit that deal with incentive awards for class representatives in prisoner litigation. *Hadix v. Johnson*, 322 F.3d 895

---

[2]Indeed, the special master did deduct from plaintiffs' submission the entire cost of plaintiffs' meal expenses. (Report at 10.) Further, the special master reduced several of the other costs defendants identify herein. (*Id.*)

-18-

(6th Cir. 2003); *In re S. Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997). In *Hadix*, the

Sixth Circuit held that incentive awards were only permissible when there is either a common

fund from which to draw incentive awards, or authorization for incentive awards in the consent

decree. *Hadix*, 322 F.3d at 898 ("Without a common fund, however, there is no place from

which to draw an incentive award. Unsurprisingly, we are unable to find any case where a claim

for an incentive award that is not authorized in a settlement agreement has been granted in the

absence of a common fund"). *In re Southern* also dealt with incentive awards, where a district

court gave incentive awards to class representative inmates from the common fund established in

the case. *In re S. Ohio*, 175 F.R.D. 270.

Here, there is neither a common fund nor authorization in the settlement agreement for an

incentive award. While the parties set forth in their settlement agreement a mechanism for

assessing damages, they did not set up a common fund from which to draw damages. (Remedial

Plan at 28–29.) This lack of a common fund from which to draw damage awards is best

illustrated by the fact that the special master's report requires that defendants' pay the incentive

awards in addition to any money paid as damages under the settlement agreement. (Report at

11–12.) This is impermissible. *See Hadix*, 322 F.3d at 898–99 (6th Cir. 2003) ("Moore[, the

class representative] here is essentially asking the defendants to take on the additional burden of

an incentive award above and beyond the liabilities they had agreed to in the consent decree

settling the lawsuit — for the absence of a common fund here means that Moore would have to

obtain the incentive award not from a communal fund belonging to him and his fellow class

members, but from the defendants directly"). Also, there is no authorization in the settlement

agreement for an incentive award. The settlement agreement states that at the special master's

hearing "[p]laintiffs' counsel may also request that the class representatives are entitled to an

additional amount of compensation for their service as representatives." (Remedial Plan at 30.)

The "[p]laintiffs' counsel may also request" language is not sufficiently definitive to show that

the settlement agreement authorizes an incentive award. (Id.)

The special master's single sentence analysis regarding incentive awards does not address

any case law or any factual predicates upon which to base an incentive award. In light of *Hadix*,

the special master's conclusion is contrary to the law. Accordingly, I reduce defendants' liability

under the special master's report by $48,500.00, the amount for compensation for named class

representatives.

## 6.    *Conclusions*

For the reasons set forth above, I affirm the special master's report as to all of its findings

of fact and conclusions of law, except for the special master's conclusion of law that the class

representatives are entitled to an incentive award. Accordingly, defendants must pay plaintiffs

$952,614.70 in attorneys' fees and $135,998.10 in costs. The named class representatives are not

entitled to compensation. I find good cause to reopen this case to consider defendants' objection

to the special master's report and to enforce the special master's report to the extent that it

complies with this order and memorandum of decision.

Based on the foregoing it is therefore

ORDERED as follows:

1.  Defendants' Objection to the Special Master's Report (# 551) is GRANTED in part,

and DENIED in part.

-20-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92–N–870 (OES)
[Consolidated for all purposes with Civil Action No. 96–N–343]

## CERTIFICATE OF MAILING

I hereby certify that a copy of the Order and Memorandum of Decision signed by Judge Edward W. Nottingham on April 30, 2004 was served on April 30, 2004 by hand-delivery, where a "D.C." box number or asterisk (*) is indicated after the recipient's name, by electronic mail to the address specified where a double asterisk (**) is indicated after the recipient's name, or otherwise by depositing it in the United States mail, postage prepaid, addressed to the recipient:

Magistrate Judge O. Edward Schlatter*

Judge John L. Kane*

Paula Greisen, Esq.
David Miller, Esq.
Laura Schwartz, Esq.
King & Greisen
1670 York Street
Denver, CO 80206
*Attorneys for Plaintiffs*

H. Earl Moyer, Esq.
Moyer, Beal and Vranesic
1401 Saulsbury Street, Suite 204
Lakewood, CO 80215
*Attorney for Plaintiff Duncan F. Leach*

Elizabeth H. McCann, Esq.
James X. Quinn, Esq.
Attorney General's Office
Litigation Section
**D.C. Box 20**
*Attorneys for Defendants*

Jennifer L. Veiga, Esq.
Hall & Evans
**D.C. Box 5**
*Attorney for Defendants*

GREGORY C. LANGHAM, CLERK

By_____
Deputy Clerk or Secretary