IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-01
Category II
Claimant: Carl L. Ross
Address of Claimant: P.O. Box 34, Frederick, CO 80530

---

## ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the "Response to Claim and Supporting Documents" filed by the Colorado General Attorney on behalf of the named Defendants. This response raises significant issues that affect each and every claim that may be filed pursuant to the settlement agreement that has been approved by the Court. These issues must be dealt with before further action is taken on additional claims.

I.

In 1992, this action was commenced against the then-named defendants pursuant to the *Rehabilitation Act, 29 U.S.C. § 794 (Rehabilitation Act), the Americans with Disabilities Act, 42 U.S.C. § 12101 to 12213* (ADA), and *42 U.S.C. § 1983* (§1983). Coupled in with the cited statutes relied upon were claims under the Eighth Amendment and Fourteenth Amendment to the United

EXHIBIT 7 Plaintiffs

States Constitution. *Montez v. Romer*, 32 F.Supp. 1235 (D.Colo. 1999). With the exception of the then-Governor of the State of Colorado, all other defendants were affiliated in some form or fashion with the Colorado Department of Corrections (DOC). The case was assigned to Judge Edward W. Nottingham of this Court. The case was certified as a class action on behalf of all inmates of DOC who were similarly situated.

As time progressed after filing, various motions were filed by the parties. Judge Nottingham ruled that individual defendants in their official capacities were not subject to claims under § 1983. He also ruled that individual defendants acting in their individual capacities were not liable for damages under the Rehabilitation Act or ADA for damages. Qualified immunity was available also for individuals facing claims under §1983. *Id.*

Prior to a scheduled trial date in August, 2003, the parties entered into a settlement of all claims. This settlement agreement (Agreement) was placed before the Court as the "Remedial Plan, Colorado Department of Corrections, August 27, 2003." On August 27, 2003, Judge Nottingham held a fairness hearing and then approved the Agreement.

As part of the Agreement, it was agreed that DOC would undertake various steps to provide services or access for inmates who qualified under the ADA or Rehabilitation Act. The Agreement provides, in part, as follows:

> III. Definitions
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent physical disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

*Agreement, pp. 1-2*. Thus, the Agreement provided for resolution of all issues related to four specific disability/impairment categories. An inmate with a non-covered disability, such as a mental illness, would not be covered by the Agreement. That inmate's remedy, if any, could only be obtained through separate litigation.

The parties agreed also to a means of resolution of damage claims through the Agreement. This provision is contained in Paragraph XXXII which reads as follows:

> DAMAGES
> Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nomimal emotional injuries (such as fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.
>
> Class members with damages allocated under categories 1 and 2 shall not be entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3,4 & 5 shall be entitled to a hearing before the Special Master. Generally, these hearings should be no more than two hours in length. However, the Special Master may extend the time for the hearing when the issues require additional time. Class members that are entitled to a hearing on their respective damages are entitled to counsel during that hearing, to present witnesses, make argument, and to any remedy otherwise available in a court of law.
>
> After review of the evidence, the Special Master shall issue a written

3

determination as to the damages awarded to each claimant. These awards may be appealed on an abuse of discretion review to the Honorable Judge Kane.

Class members, their representatives and counsel are entitled to discovery regarding their damage claims and shall be provided copies of the relevant DOC files upon request, including but not limited to medical information, as well as relevant internal quality assurance documents as allowed by the special master.

Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claim Forms. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claim for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case. The Special Master may only extend the time limits for filing a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.

Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any individual with respect to their damage claim.

*Agreement, pp. 28-29.*

Pursuant to the Agreement, damage claim forms were prepared by this Special Master and then provided to DOC for distribution to inmates. Some claim forms were mailed directly to individuals who had requested forms from the office of the Special Masters. The forms were made available to DOC inmates on or about March 23, 2004.

Carl L. Ross (Claimant) submitted by mail his initial claim form to the Special Master on April 13, 2004. Claimant checked the box for mobility impairment. After review by the Special Master, the claim was assigned to Category II. As a follow-up to the filing of the claim, the office of the Special Master forwarded to Claimant a supplemental form dealing with mobility issues.

The completed supplemental form was returned to the office of the Special Master. The exact facts alleged by Claimant are irrelevant to this discussion of the issues at hand. Claimant did respond

4

to the question as to remedy being sought by stating that he was seeking money from DOC for the actions or inactions of its staff.

Counsel for DOC was granted time to respond to the claim of Claimant. Since this is a Category II case, no hearing will be granted as a matter of right to Claimant to present his case. A determination will have to be made solely on the written documents submitted by both sides.

DOC has filed its response to the claim through the office of the Colorado Attorney General. The response details the various actions taken by Judge Nottingham, including dismissal of various claims over the years that the case was pending prior to the Agreement being approved. Since all individual defendants were or are affiliated with DOC, except Governor Owens, the Special Master will refer only to DOC as the respondent to the claim of Mr. Ross.

## II.

The response from DOC raises significant issues that will be dealt with in conjunction with the claim of Mr. Ross. DOC notes that Judge Nottingham dismissed all claims against individual defendants under the ADA and Rehabilitation Act. In addition, claims under §1983 based upon the Rehabilitation Act and ADA also were dismissed.

DOC then states in its response, in part, as follows:

> In Thompson v. State of Colorado, 258 F.3d 1241 (10th Cir. 2001), the Tenth Circuit held that Congress failed to meet the requirements for abrogation of state sovereign immunity when enacting Title II of the ADA. Thus, Plaintiffs' (sic) claim for damages under the ADA fails. Additionally, all claims for injunctive relief were resolved by the terms of the Remedial Plan dated August 27, 2003. Accordingly, the only claims before the Special Master are for damages against the CDOC under the Rehabilitation Act, and for damages against the individually named Defendants for violation of the Eighth Amendment.

*Response, p.2-3.* DOC has further argued that Claimant may only prevail if he can prove that he was the victim of intentional discrimination.

5

In 1976, the United States Supreme Court held that the ADA was applicable to correctional facilities, such as those run by DOC. *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998). The applicability of the ADA to correctional or other public facilities did not resolve the issue as to whether damages could be assessed against a state or one of its agencies.

DOC correctly notes that the Tenth Circuit did hold that the Eleventh Amendment does grant immunity to states from damage claims under the ADA. The more appropriate citation is *Thompson v. Colorado*, 278 F.3d 1020 (10th Cir. 2001), *cert. den.*, 535 U.S. 1077 (2002). Eleventh Amendment immunity protects a state from an action in federal court, unless Congress has abrogated the immunity or the state has consented to be sued. *Id. at 1024*. The Tenth Circuit found that there had been no consent by the State of Colorado nor any abrogation of immunity by Congress that would allow an action under the ADA for fees charged for handicapped parking placards. *See also, Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002).

Eleventh Amendment immunity from actions under the Rehabilitation Act was granted to the states through the United States Supreme Court's decision in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1085). Based upon that decision, Congress amended the statute in 1986 to abrogate such immunity. *42 U.S.C. §2000d-7*. Thus, damages can be sought from DOC for alleged violations of the Rehabilitation Act.

DOC further argues that the Rehabilitation Act requires proof of intentional discrimination. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999). If this is the standard to be applied, then Claimant, as well as other inmates, is entitled to be so advised. The Rehabilitation Act also may limit claims to specific programs. *See, McGeshick v. Principi*, 357 F.3d 1146 (10th Cir. 2004).

6

The power of the Special Masters to adjudicate claims is granted solely by the Agreement. The Special Masters do not see the Agreement as providing the power to adjudicate Eighth Amendment claims or claims under *42 U.S.C. § 1983*. The only claims that may be adjudicated involve five categories of severity and four types of impairments/disabilities. The Special Masters have a responsibility and duty to determine what limitations exist under the Agreement as to remedies and damages that may be awarded.

If Eleventh Amendment immunity exists from all damage claims under the ADA and injunctive relief is precluded by the Agreement, then Paragraph XXXII has little or no vitality to it. The extent of the understanding of the parties that led to Paragraph XXXII will need to be ascertained before this claim is adjudicated, as well as the other 800 that have been filed. Claimant and counsel for the Class will be granted an opportunity to respond to the issues raised.

IT IS HEREBY ORDERED that Claimant Carl L. Ross and Counsel for the Class are granted up to and including **July 16, 2004** in which file a response to DOC's arguments as to the limitations by law on damages that may be awarded by the Special Masters; and

IT IS FURTHER ORDERED that the appearance of Counsel for the Class is for the class members and not specifically for Claimant Carl L. Ross; and

IT IS FURTHER ORDERED that a hearing may be requested by any party to the claim or by Counsel for the Class.

SIGNED this 29 day of June, 2004.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 29th day of June, 2004 to the following:

Mr. Carl L. Ross
P.O. Box 34
Frederick, CO 80530

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206
   Via Fax (303-298-9879) and Regular Mail

Mr. James X. Quinn
Assistant Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203b
   Via Fax (303-866-5443) and Regular Mail

_____
Margie Dykstra