IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

RECEIVED
OCT 1 2 2005
BY: 02-420

---

Claim Number: 02-420
Category: II
Claimant: Jimmy Graham, #58513
Address of Claimant: DCC, 4102 Sawmill Mesa Road, Delta, CO 81416

---

## RESPONSE TO MOTION

Defendants, through the Colorado Attorney General, respectfully submit the following Response to Motion.

### STATEMENT OF FACTS

On September 3, 2005, claimant Graham sent a letter to the Special Masters complaining that a green tag had been placed on all his clothes. He asserted that the purpose of the tags was to inform the parole board and CDOC staff that the inmate had sued CDOC and the State. He also stated that someone at the facility started a rumor that the green tags designate inmates in protective custody, thereby placing him in danger. The Special Masters ordered Defendants to respond.

EXHIBIT B

On August 1, 2005, CDOC implemented a new policy whereby "offenders who have a verified qualifying disability will now be required to wear green offender identification tags on all of their clothing." See Memo from Cathie Holst dated August 1, 2005, attached as Def. Exh. A. The purpose of the green tags is "help[] staff in identifying the 'Montez' offenders who may require special medical attention in the event of an emergency. It will also make staff aware of those individuals who may need accommodations as it relates to their disability." Id.

## ARGUMENT

### I. THE VALIDITY OF DOC POLICY IS BEYOND THE SCOPE OF THE SPECIAL MASTERS' AUTHORITY AND JURISDICTION.

The Remedial Plan only gives the Special Masters authority to determine whether individual claimants are entitled to damages. (See Remedial Plan, § XXXII). The Special Masters have no jurisdiction or authority to rule on the validity of DOC policy. Furthermore, as explained below, the policy is not discriminatory and serves a legitimate penological interest.

### II. DOC'S POLICY DOES NOT DISCRIMINATE AGAINST THE DISABLED.

This policy is not discriminatory. The green tags are akin to "handicap parking" tags on a car. Both signify that the person has legitimate medical issues and may require special accommodations. No medical privacy interest is at issue because the green tags do not identify what the inmate's specific disability or medical issues are. In addition, most disabilities are obvious, regardless of a tag, especially if the specific inmate meets the narrow definitions of disability set out in the Montez Remedial Plan. For example, if an inmate uses

2

a wheelchair, walker, blind cane, hearing aide, or other similar devices, then most other inmates probably already know that the specific inmate has a disability.

Finally, the Remedial Plan, in its "Special Identification" section, specifically states that "Custody staff for each housing unit to which inmates with disabilities are assigned will be made aware of the inmate's disabilities and how to accommodate the special need of those inmates." (Remedial Plan, § XIX). The green tags are the quickest and most effective way to alert staff of a disabled inmate who may have special needs.

### III. THE GREEN TAGS PROTECT THE SAFETY AND NEEDS OF DISABLED INMATES, AND THUS SERVE A LEGITIMATE PENOLOGICAL INTEREST.

Courts should generally defer to a prison's policy that serves a legitimate penological interest. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safley, 482 U.S. 78, 84 (1987). Prison officials are better equipped than the judiciary to deal with the "intractable" problems of prison safety, security and reform. Shaw v. Murphy, 532 U.S. 223, 228 (2001). Even if a policy infringes upon a prisoner's constitutionally-protect right, the prison's policy must be upheld if reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89. Similarly, the Remedial Plan recognizes that legitimate penological interests trump and justify denial of a disabled interest's request for a reasonable accommodation. (See Remedial Plan, § XI(A)). Therefore, even if Graham's request to have the green tags removed is reasonable, his request can be denied because the policy promotes safety and order within the prison.[1]

---

[1] Similarly, even if the Special Masters believe the policy is discriminatory, Graham is not entitled to damages as a result of the policy because the green tags serve a legitimate penological interest.

3

DOC maintains a database listing and tracking "disabled" inmates. However, in an emergency situation staff does not have time to check the database. The green tags alert staff that an inmate has a qualifying disability under Montez (mobility, vision, hearing, or diabetes) and may need special attention or accommodations. The green tags help both staff and disabled inmates in several ways. For example, if staff finds an inmate unconscious on the ground, the green tag will immediately alert staff that the inmate has a verified disability, thus making it easier to determine that the inmate is diabetic and may need immediate insulin. Similarly, if staff encounters an inmate with a green tag who is not standing for count, staff can more quickly determine that the inmate has legitimate medical issues which preventing standing for count (physically unable to stand due to lower extremity impairment or did not hear count because deaf) and that the inmate is not being disobedient. Alternatively, in the case of a fire or other emergency, DOC staff can search for inmates wearing a green tag in order to help them get to a safe area.

Graham alleges that the only purpose of the policy is to identify inmates who have sued DOC or the State. However, the green tag is worn by all inmates with a verified disability, including many who have never sued.

Graham claims that other inmates believe the green tags signify inmates in protective custody. The fact, if it is one, that inmates misinterpret a policy does not mean the policy is invalid. By helping staff help disabled inmates, the green tag policy serves legitimate penological interests in safety and order.

Respectfully submitted this 11th day of October, 2005.

JOHN W. SUTHERS
Attorney General

*(signed)* Jess Dance

JESS A. DANCE, 35803*
Attorney
Corrections Unit
Civil Litigation and Employment Law Section
Attorney for Defendants
*Counsel of Record

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within RESPONSE TO MOTION upon all parties herein by depositing copies of same in the United States mail, postage prepaid, at Denver, Colorado, this 11th day of October, 2005 addressed as follows:

Jimmy Graham, #58513
DCC
4102 Sawmill Mesa Road
Delta, CO 81416

*Courtesy Copy To:*

Cathie Holst

5

# STATE OF COLORADO

**DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone: (719) 597-9580
Fax: (719) 226-4755
Web: www.doc.state.co.us



Bill Owens
Governor
Joe Ortiz
Executive Director

## MEMORANDUM

TO: All Designated Montez Facility Laundry Supervisors

FROM: Cathie Holst, AIC

RE: Offender Identification Tags for
Offenders with Verified Qualifying Disabilities
under the Montez Remedial Plan

DATE: August 1, 2005

It has been decided by executive staff that offenders who have a verified qualifying disability will now be required to wear green offender identification tags on all of their clothing. This will include any offender who has received an Accommodation Resolution from my office stating he/she does have a verified qualifying disability.

My office has purchased and will supply each of the designated facilities with the initial batch of green clothing labels along with the thermo-patches to go over the labels and I am sending those out with this letter. It will be the facilities responsibility to purchase the labels after the first supply is depleted.

I am sending by separate a memo the list of offenders that have been medically screened and determined to have a verified qualifying disability.
This list contains the names and DOC numbers of the offenders who are required to wear the new identification tags. As we identify other offenders with verified qualifying disabilities located in your facility you will be notified by the Warden.

The new identification tags will be printed the same as all other identification tags with the exception that the offenders name should have a --------------------
**BOLD DOTTED LINE** under it as this will separate out the offender for any staff that are color bind.



DEFENDANT'S
EXHIBIT
A

Initially, this may cause some confusion, but once the new system has been in place awhile it will be particularly helpful to staff in identifying the "Montez" offenders who may require special medical attention in the event of an emergency. It will also make staff aware of those individuals who may need accommodations as it relates to their disability.

Once the tags have been attached, please provide my office with written verification as to each offender so that we can document the information in their AIC files. Include the date the marked clothing was provided to the offender.

Thank you in advance for your help and cooperation with this project. If you should have any questions please feel free to contact my office.


cc: Nolin Renfrow
　　Gary Golder
　　Wardens
　　Jerry Allbrecht