IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

UNITED ST_____ ____ ___URT

JAN 3 _ 2006

GR_____ _____ __HAM
CLE__

---

Claim Number 02-124
Category II
Claimant: Donald Hunt, #114109
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 808026

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the claim of Donald Hunt (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Limon Correctional Facility (LCF) in Limon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 2001. Claimant was placed initially at the Denver Regional Diagnostic Center (DRDC). He then was placed at LCF.

Claimant checked only the box for hearing impaired on his claim form. In response to the question concerning disabilities, he stated as follows:

> I have to wear hearing aids and have a great difficulty in functioning throughout the entire C.D.O.C. systems, especially at this facility, they use speakers to communicate with us in our cells. I am also unable to use the T.V. in my cell without it being turned up and have been threatened by staff several times about it.

In response to the question concerning discrimination by DOC staff, Claimant stated as follows:

> A first, L.C.F. medical refused to recognize that I had a hearing problem and told me I would be okay. I had to fight them to get my hearing aid and only received it after I had been terminated from jobs for not showing up. I am unable to listen to my T.V. or radio at night because I cannot have any type of headphones. All other inmates are allowed earbuds which I cannot wear due to my hearing aids.

In his supplemental form, Claimant indicated that he received a hearing aid for only one ear. He has ringing in his ears and indicated that a doctor had recommended two hearing aids. He elaborated on his difficulty in hearing announcements over an intercom and statements made by a correctional officer.

Defendants have filed an answer to the claim. Attached to that answer are several exhibits. Claimant attempted in June, 2003 to secure an additional hearing aid for his left ear but was told he did not meet DOC criteria. *Defendants' Exhibit A.* Plastic earphones were provided to Claimant in late 2004. *Defendants' Exhibit B.*[2] Defendants also have submitted some documents reflecting completion of courses while in DOC custody.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

---

[2] Claimant was provided an opportunity to file a response to Defendants' answer. Claimant did not do so. As a result, the document reflecting that clear headphones were provided to Claimant at LCF will be accepted as true.

**1. Is the Claimant a disabled individual who is a member of the class?** This is a very close question. There is no question that Claimant has hearing loss in both ears. He has received a hearing aid while in DOC custody. Claimant has argued that he should have two hearing aids due to his hearing loss.

The Settlement Agreement provides the only basis upon which the Special Masters may adjudicate claims. The definition for hearing impairment is as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

This definition is *extremely* narrow. In order to be part of the class for hearing impaired, a claimant must show that he has to rely on lip reading, written communication or signing, even if he has hearing aids.

Claimant does not fall into the class of hearing impaired, as there is no evidence that he has had to rely on signing, lip reading or written communication when he has had his hearing aid. There is no question that Claimant has a hearing loss. That loss is not severe enough to place him into the hearing impaired category under the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** This question does not need to be reached in light of the no answer to the first question.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be reached in light of the no answer to the first question.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the no answer to the first question.

IT IS HEREBY ORDERED that the claim of Donald Hunt is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 3, 2006.**

SIGNED this _23_ day of January, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _2?_ day of January, 2006 to the following:

Mr. Donald Hunt
#114109
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203