IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

   Plaintiffs,

-vs.-

BILL OWENS, et al.

   Defendants.

---

Claim Number 03-067
Category III
Claimant: Joseph Archibeque, #47339
Address of Claimant: FLCF, P.O. Box 1000, Fort Lyon, CO 81038-1000

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 29, 2005 at the Fort Lyon Correctional Facility (FLCF), Fort Lyon, Colorado. Present were the following: Joseph Archibeque (Claimant) and Jess Dance, attorney for Defendants.

Testimony was presented by Claimant. The Special Master also received Claimant's Exhibits 1 and 2, as well as Defendants' Exhibits A1 through C2. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. The Special Master allowed Defendants to file the affidavit of Dr. Cary Shames, D.O. after the hearing. That has been received and reviewed. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide an opt out provision for any individual class member. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section stated, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provided the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further went on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments were limited to

2

"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement also provides as follows:

> Damage claims must be filed within 90 days of receipt of the inmate of the Damage Claims form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the ongoing jurisdiction exercise by the federal court in this case. The Special Masters may only extend the time limits for filing of a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.

The class was established and set on August 27, 2003 when Judge Nottingham approved the Settlement Agreement. To be part of the class, an inmate had to have been in DOC custody on or before that date and had to have a valid claim that arose during the period ending August 27, 2003.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judges Nottingham and Kane stated as follows:

> All claims are to be evaluated based solely upon the criteria in paragraph #1. The claims are limited to those that encompass a disability within the meaning of the Rehabilitation Act, provided, however, that a claimant need not prove intentional discrimination, an issue which was resolved by execution of the Remedial Plan. The

3

Remedial Plan and, if necessary, case law concerning disabilities under the Rehabilitation Act and Americans with Disabilities Act may be reviewed for assistance in applying the criteria.

Thus, the Special Masters must look to the Settlement Agreement first to determine if a claimant has proven each of the four criteria set forth above.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master has reviewed the testimony presented and documents received into evidence. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody initially in 1981. He served a sentence and was discharged sometime in the early 1990's. He returned to DOC custody in 1996. He served an additional period of time and was discharged in 1997. Claimant was placed at the Buena Vista Correctional Complex (BVCC) in Buena Vista, Colorado during this second sentence. In 1997, Claimant was discharged.

Claimant returned to DOC custody on September 2, 2003. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was placed at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado. He was at FMCC for approximately twenty-three months. He then went to the Huefano County Correctional Center (HCCC) in Walsenburg, Colorado for three months. He then was transferred to FLCF and is there at this time.

Claimant injured his back prior to entry in DOC. He testified that he could not function well, but was able to get around at BVCC. Claimant had no trouble with diabetes during this second period of incarceration. Claimant testified that he was able to walk for about one hour each day but experienced pain.

Claimant testified that he received a write up while at BVCC in the 1996-97 period of time. He was not able to perform his work on that day and refused an order to go to work. He believed that he lost good time due to his disability.

Prior to the present period of DOC custody, Claimant testified that he had been on Supplemental Security Income (SSDI). He had been in significant pain and was struggling to survive. He discussed with medical staff at DRDC his medical condition, which included one leg being shorter than the other. He also had been advised that he had arthritis.

When he arrived at FMCC, Claimant requested pain medications for his condition. He did not receive any medicine except for over-the-counter products such as Advil. He wanted Celebrex for his pain but was told that was a non-formulary drug and would not be provided. Claimant also wanted appropriate shoes, along with a lift for his shorter leg and a cane. He did not receive any of

4

the requested items.

Claimant was not diagnosed as a diabetic until late 2002. There have been times since when his diabetes has been out of control.

According to Claimant, FMCC was not properly erected to help those who are disabled. There are no rails for showers or toilets. The same was true also for HCCC. Claimant testified that he fell in a shower at HCCC. It also was difficult to get around at that facility.

Upon arrival at FLCF, Claimant began using a wheelchair. He has received only over-the-counter medications for his pain. He has requested a pusher to help him get around the facility. He was living in a dormitory facility at the time of the hearing.

Claimant testified on cross-examination that he had no diabetes that he was aware of in the 1990's. The diagnosis for diabetes came in 2002 and prior to entry in DOC in September, 2003. Claimant has been receiving a diabetic diet recently.

In response to an inquiry from counsel for Defendants, Claimant stated that he was able to get by during his 1996-97 stay in DOC. He was in constant pain during that period of time. Claimant testified that there were no medical restrictions in place during that period. Claimant did receive a COPD conviction for disobeying a lawful order to work. He did complete a computer class while at BVCC.

### III.

This claim involves two periods of time. The first period is 1996-1997, and the second is September, 2003 to the present. The Settlement Agreement provides that a claimant must show that he or she was disabled on or before August 27, 2003 and the victim of discrimination prohibited by the ADA and Rehabilitation Act. A claimant may amend his or her claim to reflect post-August 27, 2003 conduct if there is a valid claim that existed prior to that date. If Claimant were alleging only conduct from September, 2003 on, he would not be part of the class and would be precluded from pursuing a claim. The question that must be answered first is whether or not Claimant has proven by a preponderance of the evidence that he was disabled in 1996-97, as defined in the Settlement Agreement, and was subjected to discrimination because of that disability.

**Diabetes:** Claimant was not diagnosed as diabetic until 2002. There is no evidence that he had diabetes in 1996-97. There also is no evidence that he was subjected to discrimination during that period of time due to his diabetes. Claimant is not part of the class of diabetic inmates and may not pursue his claim for this condition.

**Mobility Disability:** The Settlement Agreement provides that permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower

5

extremity mobility impairment that substantially limits walking...." The Settlement Agreement further provides examples of someone who would meet the definition as an individual who cannot walk over one hundred yards without stopping and/or cannot climb a set of stairs without stopping.

The evidence is not in dispute that Claimant did not use a wheelchair at any time during the 1996-97 period. Claimant's own testimony was that he was able to walk for one hour though he was in pain. Exhibits submitted by Defendants reflected that Claimant had refused to work. On one charge sheet (*Exhibit A-2*), Claimant was asked if he wanted an easier task if his hip was hurting. Claimant was quoted as saying " no, I just don't want to work." Claimant pled guilty to the charge, but apparently argued that he had bad feet, a bad hip and a bad back. There was no evidence presented by either side that reflected Claimant was unable to work at all or that he had sought a medical determination that he could not work.

The Special Masters are bound jurisdictionally by the Settlement Agreement. The definitions for the four categories of disabilities must be followed. It means that a claimant might have a hearing loss but not meet the definition set forth in the Settlement Agreement. The evidence presented by Claimant establishes that he did have some health problems during his 1996-97 stay in DOC. His own testimony reflected that those problems did not meet the definition of mobility impaired as established by the Settlement Agreement.

Claimant does not fall within the class for mobility impairment. Since he did not meet the criteria for mobility impaired before August 27, 2003, he cannot amend his claim and request to pursue his claim for anything that happened after he returned to DOC custody in September, 2003.

Since Claimant is not part of the class covered by the Settlement Agreement, he may pursue his own separate lawsuit in either federal or state court. Claimant has requested information on how to pursue a separate lawsuit. The Special Masters cannot provide such advice. Claimant may want to contact counsel for class at the address listed on the certificate of mailing.

IT IS HEREBY ORDERED that the claim of Joseph Archibeque is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 10, 2006.**

SIGNED this 26 day of January, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 26 day of January, 2006 to the following:

Mr. Joseph Archibeque
#47339
FLCF
P.O. Box 1000
Fort Lyon, CO 81038-1000

Ms. Paula Greisen
Mr. David Miller
Counsel for the Class
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203