IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-870 (OES) (Consolidated for all purposes with Civil Action No. 96-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

_____

Claim Number 03-062
Category III
Claimant: Joseph Martinez, #53960
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on October 20, 2005. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Joseph Martinez (Claimant); and Adam Wiens, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 2, and both were admitted. Defendants offered into evidence Exhibits A through D, and all were admitted. The Special Master agreed to Claimant's request to keep the claim open until November 30, 2005. A further request was made by Claimant for an extension to submit documents. That request was granted up to and including January 17, 2006. Claimant has submitted additional medical records and those have been reviewed. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master will highlight the important aspects of the evidence presented.

Claimant came into CDOC custody in 2000. He initially was placed at the Denver Regional Diagnostic Center (DRDC). After four months, he was transferred to the Centennial Correctional Facility (CTCF) in Canon City, Colorado. He was there for about one month and then placed at AVCF. He has been at this facility ever since.

Claimant has had major back problems for years. As the result of his work, he began to experience pain in his back. Before he came into DOC custody, he had three major operations on his back. Two of the operations by Dr. Donn Turner, M.D. in Fort Collins led to removal of several disks in the back. Steel plates had to be installed in order to stabilize Claimant's back.

While incarcerated at the Larimer County Jail, Claimant fell and reinjured his back. As the result of this injury, Claimant started to drag his left foot because he could not move it in a normal fashion. He was in extreme pain and received pain killers. The Larimer County Sheriff's Department did nothing to repair the injured back. Claimant was in such pain that he was receiving morphine.

When Claimant was transferred to DRDC, he was on a morphine patch that had been given to him in Larimer County. Medical personnel took Claimant off of the morphine patch. According to Claimant, he suffered heart damage when he was taken off the patch. He then was prescribed morphine for a period of time.

When Claimant arrived at AVCF, he was taken off of all pain killers. Claimant described the action of taking him off his medications as "a hate crime." He had to be taken to the hospital for his heart, but then was disciplined for problems that arose with staff. He was brought back to the facility but nothing was done for him.

Claimant testified that he has continuous pain in his back. He also has Hepatitis C. His pain does not get treated except with over the counter medications.

Claimant stated that he has been taken to various specialists concerning his back. He saw a doctor in Denver and was advised that the metal plates in his back needed to be removed. That has not occurred. His neck cracks all of the time and sometimes leads to dizziness. Claimant testified that he has a crushed disk in his back. He was required to take an upper bunk for an extended period of time.

Claimant indicated that he now has a single cell. He cannot work and has been placed into medically unassigned status. He had a cane for a period of time, but that was taken away. He has

been using the cane of a friend. He cannot walk at times because of pinched nerves in his back.

Claimant testified further that his health condition is marginal. He has constant pain and is sometimes lightheaded. He feels "bummed out" because of his physical condition. His biggest concern is to have someone determine what is wrong with him physically so he can get well. He has not been eating. He saw a nutritionist about one month before the hearing for help.

On cross-examination, Claimant testified that he had been sent to see specialists. He also indicated that he had been scheduled for operations, but those had not occurred. On redirect examination, Claimant explained that he would like to receive surgery in order to stop the pain that he is experiencing.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant checked only mobility impairment on his claim form. Mobility disability is defined as inmates who use wheelchairs full or part-time or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The application of this definition has to be as of August 27, 2003, the date the class was set.

From the evidence and testimony presented, this is a close case. Claimant's physical problems for the most part relate to his back condition. There is no question that Claimant has a bad back due to the prior injuries and surgery. Claimant testified that the surgery affects his legs and makes it difficult for him to walk. Claimant will be given the benefit of the doubt and will be determined to be part of the class for mobility impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Claimant has had some disciplinary convictions, but it would appear that his physical condition has precluded him from being involved in various programs and activities.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant's concern is the quality of medical care that he has received over the years. His further concern is to find a way to bring the chronic pain that he is experiencing under control.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment.

*Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the quality of care provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

In order to prevail under the ADA and Rehabilitation Act, a claimant must show that he received treatment that was different because of his disability. An example would be a disabled individual being told that he would never be considered for a position of employment, even though otherwise qualified. In this case, Claimant has received medical care throughout his time in CDOC for his back and pain. He has many concerns about that care.

Claimant has received medical care for his disability. Nothing was presented that indicated that the care decisions were outside the realm of accepted medical practice. It is likely that Claimant would be experiencing pain if he were not incarcerated. That pain would be masked by medicine, such as the morphine, but it was not a violation of the ADA to terminate such medication. Claimant retains the right to bring a separate lawsuit under the Eighth Amendment if he believes that his medical care has been substandard.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question does not need to be reached in light of the answer to the previous question.

IT IS HEREBY ORDERED that the claim of Joseph Martinez is denied, as he has failed to affirmatively answer by a preponderance of the evidence each of the four questions in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 3, 2006.**

SIGNED this 2⅟ day of January, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this $\underline{2\ell}$
day of January, 2006 to the following:

Mr. Joseph Martinez
#53960
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203