```
                                                                      1
 1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 92-N-00870 (Consolidated for all
 3    purposes with Civil Action No. 96-N-00343)
      _____

 4
      JESSE (JESUS) MONTEZ, et al.,
 5
           Plaintiffs,
 6
      v.
 7
      BILL OWENS, et al.
 8
           Defendants.
 9    _____

10                      REPORTER'S TRANSCRIPT
      _____

11
12              PURSUANT TO NOTICE, the above-entitled
13    hearing was taken before the HONORABLE ROBBIE M. BARR,
14    at 1601 Blake Street, Denver, Colorado, on Thursday,
15    November 10, 2005, at 9:38 a.m., before Teresa Chaplin,
16    Registered Professional Reporter and Notary Public.
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1  APPEARANCES:
      For the Plaintiffs:
 2      PAULA GREISEN, ESQ., and
        DAVID H. MILLER, ESQ.
 3      King & Greisen, LLP
        1670 York Street
 4      Denver, Colorado 80206
        (303) 298-9878
 5
      For the Defendants:
 6      ELIZABETH H. McCANN, ESQ.,
        Deputy Attorney General, and
 7      JAMES X. QUINN, ESQ.
        Assistant Attorney General
 8      1525 Sherman Street, 5th Floor
        Denver, Colorado 80203
 9      (303) 866-5443
10               INDEX
11  TESTIMONY
      PAULA GREISEN                      Page  4
12
      DAVID MILLER                       Page 26
13    Cross-Examination by Ms. McCann    Page 44
14  EDWIN KAHN
      Direct Examination by Ms. Greisen  Page 59
15    Cross-Examination by Ms. McCann    Page 66
      Redirect Examination by Ms. Greisen Page 80
16
    CLOSING ARGUMENT
17    By Ms. McCann                      Page 83
      Closing Argument and Rebuttal Testimony
18     by Ms. Greisen                    Page 108
19
20
21
22
23
24
25
```

Page 3

```
 1              P R O C E E D I N G S
 2         WHEREUPON, the following proceedings were
 3  taken pursuant to the Federal Rules of Civil Procedure.
 4              *   *   *   *   *
 5         THE COURT:  Would you announce
 6  appearances for the record, please?
 7         MS. GREISEN:  Paula Greisen and
 8  David Miller appearing on behalf of the plaintiff
 9  class, as well as Ed Connor.
10         MS. McCANN:  And Beth McCann and
11  Jim Quinn appearing on behalf of the defendants.
12         THE COURT:  Nice to see you again.
13         MS. McCANN:  Thank you.
14         THE COURT:  Do you have an idea how you
15  would like to proceed?
16         MS. GREISEN:  I anticipated that I would
17  offer my testimony and Mr. Miller's testimony, and then
18  the testimony of Mr. Kahn, and then offer any rebuttal
19  testimony after they've presented their argument.
20         THE COURT:  Okay.  Then we're here on
21  fees which have been incurred during the compliance and
22  monitoring period, I'm supposed to have a hearing not
23  to exceed one day, and questions are as to
24  reasonableness of the fees and costs and entitlement to
25  attorneys' fees, to the extent they were incurred in
```

Page 4

```
 1  assistance on the damages issues, as opposed to the
 2  monitoring.  All right.  Do you want to make any
 3  opening remarks that aren't covered in your statements?
 4         MS. GREISEN:  Judge, I don't want to make
 5  any opening remarks, in general, I think a lot of my
 6  testimony will just confirm some, or be regard to some
 7  of the issues that are raised in our statements, but
 8  since you've reviewed our submissions, I don't see the
 9  need for opening.
10         (The witnesses were sworn.)
11              TESTIMONY
12         MS. GREISEN:  Judge, since the last
13  arbitration, the Court, Judge Nottingham, signed the
14  remedial plan, and the compliance period started.  As
15  we pointed out in our submission, Section 31 provides
16  that class counsel would be compensated for time and
17  resources, quote, reasonably necessary to monitor
18  compliance during the compliance period.  And, of
19  course, that's why we are here today.
20         After the Court signed the remedial plan,
21  we spent a significant amount of time communicating
22  with clients with respect to the settlement; we spent
23  time talking with experts about achieving compliance at
24  DOC; and, of course, we spent a significant amount of
25  time monitoring compliance with the overall plan,
```

Page 5

```
 1  including compliance with the damage claim process.
 2         And that seems to be the heart of the
 3  issue today, so I'm going to just spend the time
 4  talking about that, unless, of course, you have
 5  questions with respect to other issues.
 6         Judge, the remedial plan is a very
 7  comprehensive document, it's the product of a
 8  month-long negotiation.  And though the parties tried
 9  to be as detailed as possible when they made that plan,
10  there's no way that the parties could foresee all the
11  parameters that would need to be discussed in the
12  execution of that plan.
13         I think it's fair to say, it's certainly
14  our position that all the parties anticipated that
15  there would be aspects of the plan that would have to
16  be determined during the course of the compliance and
17  the monitoring period.
18         With respect to the damage claim process,
19  issues that arose initially had to be resolved that
20  were not specifically addressed in the remedial plan,
21  such as the damage claim forms, what would those forms
22  look like, what kind of instructions would be given to
23  clients as to how to fill out those forms, would we
24  need a different form for the different -- we have five
25  different classes, would we need a different form for
```

**Page 6**

1  each class, would there be several different types of
2  forms for them to fill out. Those issues were not
3  simple, and they certainly weren't discussed in the
4  negotiation of the remedial plan.
5      All the parties met, counsel for both
6  sides met, we've met frequently with the special
7  masters to devise those plans. There was never any
8  objection at that point that class counsel should not
9  have been involved, because I believe it was by
10  agreement of the parties that we would sit down and
11  resolve some of these technical issues during the
12  compliance period.
13      There were other issues that weren't
14  addressed in the remedial plan, such as who pays the
15  cost of discovery and what discovery do the claimants
16  get. There were also various meetings between counsel
17  for both sides to discuss these issues.
18      After the damage claim process began, in
19  other words, after forms began to be filed by the
20  claimants, there was -- the vast majority of our time,
21  class counsel's time, was spent responding to attempts
22  by the defense to, we believe, eliminate any type of
23  relief that would have been offered under the remedial
24  plan. In other words, and this is the biggest area --
25      THE COURT: Any type of monetary relief?

**Page 7**

1      MS. GREISEN: Correct. Actually, Judge,
2  any type of relief at all, because one of the issues
3  they raised was that our clients weren't entitled to
4  injunctive relief, as well, there was a brief on that
5  issue.
6      So in essence, they raised not only
7  liability based defenses, and I've outlined them in the
8  submissions, unless you want me to go through them, but
9  they raised 11th Amendment issues; they raised issues
10  such as the ADA does not allow for damages; they raised
11  issues such as the burden of proof, whether or not our
12  clients had to prove intentional discrimination under
13  the Rehab Act; they raised claims such as currently the
14  Prison Litigation Relief Act exhaustion requirements;
15  they also argued that our clients were not entitled to
16  any injunctive relief. These types of defenses that
17  were raised would have eradicated any form of relief
18  under the damage claim process.
19      It is our belief that part of monitoring
20  the remedial plan was and is monitoring the damage
21  claim process to ensure the integrity of that process
22  for our clients. If these claims had been successful,
23  and to date, none of them have been, if these defenses
24  had been successful, it would have, without doubt,
25  ensured no remedy for our clients.

**Page 8**

1      In approaching the damage claim process,
2  I think it's important for the Court to know that we
3  approached it on two different fronts. We approached
4  it first as class counsel and our responsibility as
5  class counsel to ensure the integrity of the process.
6  There are also, I believe, 10 different people that we
7  are currently representing during the damage claim
8  process on the merits of their individual claims.
9      Those cases are -- we have separate
10  billing procedures in our office to track billing on
11  those cases. We have not included any of those
12  billings in the submission. We agree with the defense
13  that we are not entitled to fees on those specific
14  cases unless and until we prevail on those cases. What
15  we are asking for today is our fees in acting as class
16  counsel with respect to the issues that affect the
17  class.
18      THE COURT: I need to interrupt you to
19  ask a couple of basic questions. Why are there two
20  judges involved?
21      MS. GREISEN: That's a good question, and
22  it was a question that caused some confusion initially.
23  The remedial plan specifies that if there is an appeal
24  with the individual merits of any particular case, that
25  those appeals would be heard by Judge Kane. Initially

**Page 9**

1  the parties were submitting all of their appeals on
2  these issues to Judge Kane.
3      And Judge Kane held a status conference,
4  in which he said that he didn't think that these policy
5  issues were issues that were properly before him
6  because they go to the overall intent of the remedial
7  plan.
8      THE COURT: By policy issues, do you mean
9  issues related to what damages are available?
10      MS. GREISEN: Correct. Those issues I
11  think initially were addressed to him, but they didn't
12  have to do with the merits of individual cases. He
13  believed -- he initially said he was going to talk with
14  Judge Nottingham about whether Judge Nottingham would
15  retain supervision over those questions that go to
16  overall procedures and policy in the case, maybe
17  "policy" is not the right word, but interpreting the
18  remedial plan.
19      We did subsequently have a hearing in
20  front of Judge Nottingham, the Court at that time
21  instructed the parties to make a list of all the
22  pending cases and inform the Court which judge they
23  thought should hear which issues. The parties did
24  that, and I point the Court's attention, I believe it's
25  Exhibit 11 ...

Page 10

```
 1        THE COURT: Uh-huh.
 2        MS. GREISEN: -- where we filed those
 3   motions. And that was another part of what I intended
 4   to say, was that if you look at the submissions, the
 5   issues that we're submitting in our fee petition today,
 6   the issues that are currently pending, the Fitzgerald
 7   issues, and I believe there's 8th Amendment issues,
 8   even the defendants agree that those issues are issues
 9   in front of Judge Nottingham, because they affect
10   either the entire class or they affect an entire
11   category of claimants. Those are the only types of
12   issues which we have become involved in the damage
13   claim process.
14        THE COURT: Since you submitted the list
15   to Judges Nottingham and Kane, have they taken any
16   actions that would indicate to you that they were
17   paying any attention to the list?
18        MS. GREISEN: Well, I can tell the Court
19   that prior to the list -- prior to us submitting the
20   status report, all of these big policy issues or
21   procedural issues have been decided by Judge
22   Nottingham. He decided the 11th Amendment immunity
23   issues, all the motions that have been decided to date,
24   the PLRA issues, any kind of liability based defenses
25   have been decided by Judge Nottingham, and have been
```

Page 11

```
 1   decided based on what he believes the intent of the
 2   remedial plan was.
 3        THE COURT: But those issues got raised
 4   initially because -- they were raised because the State
 5   raised the issue with regard to an individual's claim
 6   for damages?
 7        MS. GREISEN: That's correct. And so
 8   what we did was we filed an appeal, and if you notice
 9   on our briefing, all of the appeals that we filed, we
10   entered as class counsel or as on behalf of similarly
11   situated people.
12        In those appeals, we did not discuss the
13   merits of any of the individual cases, we never have
14   discussed the merits of any of the individual cases, we
15   have only discussed the overall liability defenses that
16   have been raised, such as the 8th Amendment or the PLRA
17   issues.
18        THE COURT: The two that are still
19   pending are the Fitzgerald issues, which is whether
20   damages are permitted under the ADA?
21        MS. GREISEN: The Fitzgerald issue,
22   there's also -- you know, and I'm trying to remember, I
23   think at the time that we submitted Exhibit 11, there
24   was the Fitzgerald issue, and I think there might have
25   also been the 8th Amendment issue, whether or not all
```

Page 12

```
 1   8th Amendment claims were dismissed by the Court.
 2        Now, since the status report, there's
 3   also been another briefing, and that's the briefing on
 4   whether or not class five claimants, those who have
 5   died during the pendency of the case, are entitled to
 6   damages. That briefing has also been submitted to
 7   Judge Nottingham, and that was subsequent to the status
 8   reports that were prepared.
 9        But to answer your question, neither
10   Judge Nottingham nor Judge Kane have taken any steps
11   with respect to the status reports, or there hasn't
12   been any decisions on those cases. The defendant's
13   status report also lists several different individual
14   appeals that they are pursuing, and they note that
15   those appeals are directed to Judge Kane.
16        THE COURT: Okay, thank you. What do I
17   make of, then, Judge Borchers (phonetic), or Special
18   Master Borchers' comment in the order that was attached
19   to the defendants' submission, special order No. 2,
20   which says, counsel may file motion, class counsel, on
21   specific claims in which they have entered an
22   appearance -- as to any claim in which an entry of
23   appearance has not been filed, class counsel has no
24   legal standing to appear and argue any generic issue.
25        MS. GREISEN: I read that order, and I --
```

Page 13

```
 1   you know, this order happened, I believe the sequence
 2   of events, and I will premise this with I was out on
 3   maternity leave when I think a hearing took place, and
 4   Patricia Bellock (phonetic), who is one of the
 5   associates working on this case, attended. At that
 6   hearing I believe that an issue was raised with respect
 7   to whether attorneys' fees would be granted on this
 8   particular case, and my understanding, that there was a
 9   lot of things discussed during the status conference
10   that he references in the special order.
11        At that time the special master, and for
12   some reason, I will note that the special order says it
13   comes before the special master on his own motion, so
14   there wasn't, I don't believe, a pending -- there was
15   no motion filed for attorneys' fees, or anything like
16   that, but I believe at the time he was saying that that
17   issue couldn't be raised because it had to be raised in
18   the context of a specific case.
19        I understand how this order is being
20   interpreted to be very broad, saying that we don't have
21   any standing essentially to come in on any of these
22   issues. I'll note first, Judge, that the special
23   master asked us, I believe -- on every single briefing
24   that we've done, the special master directed class
25   counsel to either file a brief on it initially or with
```

14

1  the -- I think the first round of issues, the 8th
2  Amendment, 11th immunity issues, the special master
3  basically said he did not believe he had jurisdiction
4  to even answer those issues, and was going to put it
5  before Judge Nottingham and Judge Kane and let the
6  Court decide it.
7       This, I believe, had to do simply with
8  this discussion about attorneys' fees. I don't believe
9  that this goes to an overall issue that we don't have
10 standing to address the liability based defenses, I
11 think it's being read broader than what he meant on it.
12 I don't believe that Judge Nottingham will say, when we
13 go before him to argue liability based defenses, that
14 class counsel doesn't have a right and an obligation to
15 present the counterargument to why exhaustion should be
16 applied.
17      In fact, in none of the briefings to
18 date, although we have done briefings on all of them,
19 all of the issues that Judge Nottingham has decided, he
20 has never indicated that it's been inappropriate for
21 class counsel to participate in the discussions about
22 the damage claim process.
23      I simply think that this had to do with a
24 specific issue that was before the Court on attorneys'
25 fees. And frankly, if it goes beyond that, I would

15

1  simply suggest that the special master is wrong.
2       I agree that we do not have -- we would
3  not have standing to intervene to argue the merits of
4  any individual's case if we did not enter appearance on
5  that case. However, with respect to these much broader
6  issues, I don't think we can step aside and not
7  intervene on those issues. I think we have an ethical
8  duty, as well, to ensure that issues that affect a
9  substantial number of claimants are addressed by class
10 counsel.
11      As the Court knows, most of these
12 claimants are pro se, as was anticipated by the
13 remedial plan, we can't simply throw them to the wolves
14 in the damage claim process, although we had no intent
15 to represent them individually.
16      THE COURT: By throwing them to the
17 wolves, are you colorfully trying to say we can't let
18 them try to argue legal issues that they're not trained
19 to argue?
20      MS. GREISEN: That's a much more
21 articulate way to say it, yes.
22      Let me sum up that with saying, we think
23 that our efforts during the damage claim process have
24 been essential to ensuring integrity of the process and
25 the intent of the remedial plan, and we believe the

16

1  fees that we incurred were reasonable and necessary.
2       We also believe that the fees in the
3  monitoring of the damage claim process and the
4  compliance, in general, are recoverable, despite
5  whether or not we had been successful in arguing the
6  liability based defenses or not. I think there's some
7  suggestion in their brief that we would only be
8  entitled to fees if, in fact, we were successful in
9  arguing those issues. And I believe Mr. Kahn and
10 Mr. Miller will both talk about that. Although I would
11 say we have been successful, we believe, on every issue
12 to date, we don't believe that's a necessary component
13 of having our fees compensated.
14      I did want to simply go through the
15 specific challenges by the defense in their submission,
16 if I can, and then obviously, anything further that
17 they have today, we would like an opportunity to do
18 that. With respect to -- and I'll start on page 4 of
19 their submission at the bottom, and just kind of go
20 through them line by line.
21      They first challenge the entry of
22 9-23-03, two entries of CKC, that's Kansas Crawford,
23 who was a paralegal with us, regarding appeal issues
24 and filing the review. The first of those entries was
25 for research of certificate of interested party and

17

1  file review for appeal. Ms. Crawford is no longer with
2  our firm, so I couldn't clarify the entry, but I would
3  point out to the Court that entry has been no-charged,
4  so it's of no moment one way or the other in the
5  exercise of billing judgment.
6       The second entry was a, quote, call with
7  inmates regarding the settlement and review client mail
8  and organize, that's a fully compensable activity, we
9  believe, for a paralegal, and so we believe that
10 that's -- there should not be an issue with respect to
11 that entry.
12      The next two issues objected to by the
13 defense are 10-26-03, and 10-27-03, those were entries
14 for a DSK, who is Diane King, one of the partners in
15 our office, she spent some time, not a lot of time, I
16 might add, but some time assisting us in editing the
17 final response to the defendants' objections to the
18 special master's report previously.
19      As the Court knows, that was a
20 million-dollar fee and cost award that we were looking
21 at preserving on appeal. We don't think it's
22 inappropriate for another partner in the office to
23 spend a small amount of time reviewing it. I don't
24 think it's of any moment that Ms. King is not formally
25 entered on the case, I don't think that's a