82
1  but I don't mind just finishing up. I don't think we
2  have -- we're just going to have arguments, right? We
3  don't have any witnesses to present.
4        MS. GREISEN: That's fine. I assume
5  there may be other issues raised that I may need your
6  testimony on, I'm not sure, so ...
7        MR. KAHN: Well, I'm happy to stay, sure.
8        MS. McCANN: I don't think we'll need
9  Mr. Kahn any further, since we're paying for him, I
10 would be just as happy --
11       MS. GREISEN: I have not received the
12 defendants' response to our submission. I saw their
13 submission, but they got our submission, of course,
14 after they filed their submission, so I'm not in a
15 position to anticipate whether they will now have an
16 issue with my hourly rate or other issues that I may
17 need his testimony on, so I'm going to ask him to stay.
18       MS. McCANN: We did not submit anything
19 further than what you received, so ... And we are not
20 contesting the hourly rates, although personally, I
21 would, but the courts seem to be against me on the
22 issue of how much lawyers are really worth. So
23 we'll ...
24       THE COURT: Now, that's a bigger issue
25 than what I decided.

83
1        MS. McCANN: So we will just proceed to
2  our argument, then, if that's all right.
3        THE COURT: Thank you.
4             CLOSING ARGUMENT
5  BY MS. McCANN:
6        The way we view this remedial plan and
7  the settlement agreement in this case is that there are
8  really two components to it. The first is the
9  injunctive component, in which DOC is required to make
10 structural changes, as well as programmatic changes.
11       The second component is a process that's
12 somewhat unusual, I think, in class actions, where
13 individual inmates have the ability to file a claim
14 with specific special masters who were hired or engaged
15 specifically to handle the damages portion of this
16 settlement.
17       And so what happens is, an individual
18 claimant must show that he or she is disabled within
19 the meaning of the Act and within the meaning of the
20 remedial plan, and that that disability -- that because
21 of that disability, he or she has been discriminated
22 against by the Department of Corrections, and that that
23 has resulted in damage or injury.
24       That is a whole separate process which
25 Judge Borchers mentions in his special order, too,

84
1  which this Court has referenced, that individual
2  claimants are filing claims, and that they may be
3  represented by class counsel, they may be represented
4  by independent counsel, they may be pro se. And to
5  date, we've had probably 60 to 70 hearings already, and
6  they are proceeding even as we speak. So individual
7  inmates have --
8        THE COURT: By the way, thank you very
9  much for not agreeing to use me.
10       MS. McCANN: Yes, I think the special
11 masters are sort of regretting that they agreed.
12       But at any rate, they are proceeding, the
13 inmates are presenting their cases, they are being
14 awarded money damages, they are being awarded
15 prosthetic devices, and other aids, health aides, some
16 of them are winning, some of them are losing. So in
17 the course of these individual claims --
18       THE COURT: May I ask a question?
19       MS. McCANN: Yes.
20       THE COURT: At the hearing, is the DOC
21 represented by counsel or do they have a representative
22 who appears who is not an attorney?
23       MS. McCANN: Someone from our office
24 appears at those hearings.
25       THE COURT: Someone with a law degree?

85
1        MS. McCANN: Yes, yes, a lawyer appears.
2        And our position in the attorneys' fees
3  area is that we understand that plaintiffs' counsel are
4  entitled to compensation, reasonable compensation for
5  monitoring the compliance issues, and they have done
6  some of that over the course of the last two years.
7  But in terms of questions relating to damages, they are
8  not entitled to attorneys' fees at this stage in the
9  litigation.
10       They have chosen to represent 10 --
11 approximately 10 individual claimants, they will be
12 filing claims on behalf -- well, they already have
13 filed claims on behalf of those individuals, and they
14 will be having hearings.
15       They may raise whatever issues they want
16 to raise in those hearings. And if they are successful
17 in those hearings, just as an individual attorney would
18 be entitled to attorneys' fees, they will at that point
19 be entitled to attorneys' fees for issues regarding
20 damages.
21       And in fact, these issues have come up in
22 the context of individual damages claims, the issues
23 that they have -- some of the issues that are
24 referenced in their billings. I think it's
25 particularly telling that they, themselves, separated

86

1  out their billings for compliance issues and damages
2  issues, and you can see by looking at the billings that
3  the damages billings go more toward these damages
4  issues.
5      Now, we also object to the entries
6  particularly by Ms. Bellock, but really, of all of them
7  for these visits to the individual facilities when
8  individual damages claims are being addressed, because
9  what they were doing when they went to the facilities
10 was meeting with individuals to decide whether or not
11 they were going to represent them, and that is part of
12 the damages process and should not be compensable at
13 this stage.
14     Some of the visits where they talked
15 completely about compliance, like the early visits that
16 happened after the remedial plan was agreed to, we
17 don't object to those, they went down to the
18 facilities, they had meetings with a big group, they
19 had meetings in the auditorium where they would explain
20 the settlement agreement to the inmates, what we object
21 to is the visits that began in the spring of -- well,
22 most of them, I think, were in the spring of 2005, but
23 there may have been some in 2004, where they went to
24 the facilities to talk to individual claimants, and --
25     THE COURT: Could you be more specific,

87

1  are you saying they, are you primarily talking about
2  Ms. Bellock?
3      MS. McCANN: Well, Ms. Bellock,
4  primarily, most of the visits were hers, but
5  Ms. Greisen and Mr. Miller went on some of those
6  visits, as well, but it's primarily hers. And the ones
7  that I'm talking about are the ones where all three of
8  them went. The ones where just Mr. Miller and
9  Ms. Greisen went early on, we're not objecting to,
10 other than that we think one attorney would have been
11 sufficient.
12     THE COURT: I thought Mr. Miller
13 testified that billing for visits to the extent they
14 were to determine whether to accept a client was done
15 separately, so is there evidence, other than just
16 Bellock's billing records, that leads you to conclude
17 that's not --
18     MS. McCANN: Yes. And I apologize, I did
19 mean to get these marked and admitted, these letters
20 that I was showing to Mr. Miller.
21     THE COURT: Okay, I'm pretty flexible, go
22 ahead.
23     MS. GREISEN: Can we have a copy of
24 those? I would like to look at them if she's going to
25 argue the exhibits.

88

1      MS. McCANN: Sure, can we make copies
2  here?
3      THE COURT: Yeah, if you go to the front
4  desk, she can make them for you.
5      MS. McCANN: Why don't I get them marked
6  first.
7      (Exhibits A, B, and C were marked.)
8      (Pause in proceedings.)
9      MS. McCANN: So I would now offer to the
10 Court Exhibits A, B, and C. And particularly A
11 demonstrates that when Patricia Bellock went to some of
12 these facilities, particularly Fremont, she designated
13 individuals that she was meeting with regarding
14 individual claims. And she also mentions all the other
15 facilities, individuals she was meeting with for two
16 purposes, individual claim and compliance.
17     So our position is that clearly the
18 purpose of these visits was not just for compliance,
19 but was also to decide who they were going to represent
20 in the individual damage claims.
21     THE COURT: Well, hang on. Did you
22 compare this to the billing?
23     MS. McCANN: Yes, there are -- if you
24 look in the damages billing, there's a series of visits
25 by Ms. Bellock in the spring, which I'm not finding at

89

1  the moment.
2      THE COURT: There's -- because she's
3  asking permission for the March 31st and April 1st of
4  this year, and there's no entries that I see on those
5  two dates, other than the review order of Judge
6  Borchers'.
7      MS. GREISEN: I believe, instead of being
8  in the damages, she's looking at the two -- it's in the
9  compliance section.
10     MS. McCANN: It's in the compliance,
11 sorry. Thank you.
12     THE COURT: Well, that would have been a
13 lot easier.
14     MS. McCANN: You see the 3-31, well, it's
15 3-30, 3-31 entries regarding her visits at Canon City,
16 and then on 4-21 was her visit to Fort Lyons, and on
17 4-25 was her visit to Arkansas Valley.
18     THE COURT: Yeah, can we do one at a
19 time? If you look at March 31, which is one of the
20 days she says she's going to meet with individual
21 clients, and you look at the billing, there's half of
22 it, or half a day, basically.
23     MS. McCANN: Well, there's the day
24 before, also, travel, 3-30, so those two entries. But
25 our position is that all of the visits that Ms. Bellock

23 (Pages 86 to 89)

90
1  made to the facilities, we don't have letters for every
2  single one of those. And we, of course, you know,
3  can't sit in on those interviews, we don't know exactly
4  what was going on, but we think this is representative
5  of what was occurring during all of these visits.
6       And there are several throughout the
7  months of April, March and April and May, I believe,
8  yeah, there's May 9th she went to Buena Vista,
9  May 10th, April 24th she went to Fort Lyons, April 25th
10 she met at Fort Lyons, our position is that all of
11 those visits are really at least partially for damages
12 issues, and really, primarily for damages issues,
13 because that was what Ms. Bellock was doing, she was
14 researching damages claims and filing briefs on damages
15 issues.
16      THE COURT: So essentially you would have
17 me reject her description which says, for instance, on
18 May 5th, arrange visits, re, compliance issues, and on
19 May 9th where it says, meet with inmate, re, compliance
20 issues, that's not accurate?
21      MS. McCANN: That's correct, our position
22 is that she may have -- a portion of the meeting may
23 have been regarding compliance issues, but when you
24 look at the totality of what Ms. Bellock was doing, it
25 was damages issues, and the briefs that she wrote all

91
1  related to damages issues.
2       And this document is indicative of that
3  for all of those kinds of visits. How else are the
4  plaintiffs going to figure out who they are
5  representing individually unless they went and talked
6  to them? And that's what she was doing.
7       And it appears that, you know, they
8  were -- she was only mentioning the compliance issues
9  because they understood that they could only bill for
10 the compliance issues, and so in the compliance section
11 of their billings, that's how she characterized it.
12 But if you look at the letter that she actually sent to
13 DOC, she characterizes it some for individual damages
14 only, some for both.
15      Nowhere in this letter does she say I'm
16 only visiting these inmates for compliance issues, it's
17 always either both or just damage claims. And it's
18 reflected throughout the billings that she does, her
19 primary purpose was to address damage issues. So we
20 think that the plaintiffs' counsel are not entitled to
21 collect for those visits at this time.
22      It's very similar to if you have -- well,
23 let me back up a second. Let's talk about the damage
24 issues that they claim are general, that that's why
25 they should be compensated, because they apply. There

92
1  are really two categories, one is the issue of medical
2  malpractice and does this case encompass individual
3  medical malpractice claims. Plaintiffs say yes, we say
4  no. So far the special master has ruled in our favor,
5  it's with Judge Nottingham now.
6       But let's assume they're correct, and
7  medical malpractice claims do apply in this case, let's
8  take the situation of an individual case. Plaintiffs'
9  lawyer brings a medical malpractice case under the 8th
10 Amendment, which is the way they are bringing it,
11 Section 1983 and the 8th Amendment.
12      They go to trial, they spend a lot of
13 time on motions, arguing about the damages that are
14 available in the case and the extent of damages that
15 are available in the case; they spend a lot of
16 attorneys' time researching, they go talk to their
17 clients, they hire experts, they do all of that work,
18 they go to trial, and they lose, the Court says, you
19 didn't prove that you're entitled to damages for
20 medical malpractice under the 8th Amendment and Section
21 1983, they don't get any fees, even though they spent
22 hours and hours and hours and hours and hours and hours
23 researching general damage questions.
24      It's exactly the same situation here,
25 these issues have to be raised in the individual cases.

93
1  When they go -- when they present a case on behalf of X
2  inmate, they have to argue, we think we can show under
3  the 8th Amendment that we're entitled to these damages.
4  If they win under the 8th Amendment and Section 1983,
5  then they are entitled to fees, but if they don't,
6  they're not.
7       And the same applies to the other
8  argument, which is the big general argument, which is,
9  what damages are available when the inmate is dead, and
10 those are the class five claims. There are only about
11 five or six of those cases all together. In each
12 individual case, that issue needs to be raised, what
13 damages are available when the inmate is deceased in a
14 class five.
15      We have also made this argument in front
16 of the special master, and they have ruled in our
17 favor, also, and that is also up to Judge Nottingham.
18 But these are issues, that same if you bought -- if
19 they represented -- let's say Mr. Moyer has one of
20 those cases where an inmate is deceased, he's got to go
21 and make that argument in that individual damage claim.
22      A deceased inmate, I think I'm entitled
23 to damages for more than just injuries before he died,
24 that he survives, he's got to make that argument; and
25 if he wins, he'll get attorneys' fees under Section

Page 94

1  1988; if he doesn't win, he doesn't get attorneys'
2  fees, and that's what we're trying to make clear in
3  this case.
4          And the third issue is the discovery
5  cost, it's the same analysis. What they're entitled to
6  in discovery relates to their damage claims. And
7  really, the issue is just who's going to pay for it,
8  we've already agreed that the first 10 copies are
9  provided by DOC. So again, these are issues that will
10 be raised in the individual cases, an inmate asks
11 for -- all the inmates are allowed to review their
12 medical files, and they can select documents that they
13 want to have copied.
14         So in each individual case, the special
15 masters are looking at this issue and deciding the
16 issue. And that's what those special masters are
17 supposed to be doing, they're supposed to be deciding
18 these issues, and they've already decided them.
19 Because they were adverse to the claimants, we are now
20 hearing them in front of Judge Nottingham, but the
21 point is --
22         THE COURT: So you disagree, I think with
23 what Mr. Kahn was saying -- or we don't have to go that
24 far. You disagree that when plaintiffs' counsel
25 recovers, or at least recovers a victory in a class

Page 95

1  action case where damages are undecided, individualized
2  claims are undecided, that they're entitled to fees for
3  briefing the issues of damages and what damages are
4  available to the class?
5          MS. McCANN: In this case, because under
6  the remedial plan, it -- which they agreed to, it's
7  very specific, that they are entitled to reasonable and
8  necessary fees for monitoring compliance, and that they
9  do not have any obligation to represent individual
10 claimants. And so this is unusual in that sense,
11 because each individual plaintiff brings their claim
12 for damages.
13         Just as in the Blockbuster case, for
14 example, if I'm a member of the class, but I'm not a
15 class representative, I can hire my own attorney and go
16 and seek damages, and that attorney presumably,
17 depends, I guess, on the settlement agreement, but that
18 attorney --
19         THE COURT: The settlement agreement
20 gives you a ticket for a buck off, so it's not a good
21 analogy.
22         MS. McCANN: Well, but it is a good
23 analogy, because each individual plaintiff is
24 getting -- is a part of the class and is getting some
25 recovery. So the point of it is that this remedial

Page 96

1  plan drew a real distinction between compliance and
2  damages, and damages are a separate issue, they have
3  selected people that they are representing on damages,
4  these issues are raised in the context of individual
5  damages claims, and they go through the special master,
6  and the special master decides on those individual
7  claims.
8          And that's precisely what Judge Borchers
9  said in his order, he said, you can't just come in here
10 and assert general claims, you have to represent
11 individuals. In that context, then it's determined
12 whether or not they get attorneys' fees. We're not
13 contesting that they're entitled to attorneys' fees for
14 monitoring meeting with their experts to monitor the
15 diabetic training, or monitoring -- and in fact, I need
16 to clarify something.
17         We're not objecting to their obtaining
18 fees for helping put together the damage claim form
19 because that was done before any individual damages
20 claims were arrived at, and that was part of the
21 agreement that we came to, was that they would
22 participate in drafting that form, so we think that's
23 an appropriate expense. But once the forms are drafted
24 and distributed to the individuals, it then became the
25 responsibility of the individuals to bring their

Page 97

1  individual claims.
2          I also think it's interesting that they
3  initially, and I don't know exactly which pleadings
4  they provided to you, but they intervened in these
5  cases, on individual cases.
6          THE COURT: Can I ask you something?
7          MS. McCANN: Sure.
8          THE COURT: In your submission to -- in
9  your defendants' list of pending matters as of
10 September 14, 2005, you do say on page 2, paragraph 3,
11 the issue, which is basically whether individuals can
12 recover for 8th Amendment 1983 medical malpractice
13 claims, that's what you were just arguing, should be
14 decided by Judge Nottingham because the ruling will
15 affect several class members.
16         MS. McCANN: That's true. But in terms
17 of whether they're entitled to attorneys' fees for that
18 argument, it's got to be determined on those individual
19 cases. So the ones where they represent plaintiffs and
20 they are claiming medical malpractice damages, if they
21 are successful, then they would be entitled to recover
22 attorneys' fees for making that argument. But at this
23 stage, they haven't been successful on that claim, in
24 fact, the special master ruled against them.
25         THE COURT: All right. Well, what about