01-13-06

RECEIVED
FEB 3 2006
BY:

To: Judge Borchers

From: J. Rudnick #68432      Claim # 01-092

of the Montez ADA Resolution. Case

Re: Update on Accomodations          MONTEZ V BOONS
092-cv-00870-EWN

Judge Borchers,

Attached is an update — on Mobility Claim —
Too show what I'm going-through, just
trying to get my Accomodations.

Not only was this Medical Need items provided
"LATE" but it Don't FIT OR SERVE what
was Recommended by the Doctor.
- They are UN-USEABLE —

This Needs to be Addressed — Competent
Treatment should NOT Require so much
hassle and Time to do what seems as
such a Simple Accomodation.

This is the SAME junk I'm going-thru for
EYE / VISION care + treatment — And
why I tried to explain so much in this
case in so much detail.

I hope you can do something to help.

Sincerely,

January 12th. 2006

Medical Dept. (LCF)
        Clinical Services

Re: Custom Orthotics    Recieved 01-09-06


I have 'Tried' these orthotics for (2) days And find
them very Uncomfortable And The Design causes Instability.

Examination (Side by Side) Shows 3 problems.

    1 - The odd lumps Molded-in to the Sole Are Uneven.*
    2 - And too high ? *( left don't match The Right )
    3 - The Arch is too low on both feet.*

I need to have these Right (especially when it interfers
with work. (as in working on Ladders) And General 'Walking'.

Please Re-Schedule Foot-(Orthotic Maker) to Remedy
    this Situation. (As they Are Currently UnUsable)
            A.S.A.P.

Thank You.

    PS. These Are Court ordered Items — Further Delay or
        Faulty Accommodations holds DOC in contempt -
                            (Since 'Nov '05)

Copies: Fed. Dist. Ct. Judge Boechers (Spel Mstr)
        Fed. Dist. Ct. Judge Kane    (Sr. Judge)
        Atty Crew Ofc
        Paula Greisen, Atty
        David Lane, Atty

1-26-06

To: Med. Clinical Services

From: J. Rudwick 68432   L43 A

Subject: Medical Care Provider Details

Would you Please provide me with the Name And Address of the D.O.C. Medical Care Provider, Insurance Co., And Names of the people In-Charge of each Along with the D.O.C. contact persons Such as L.C.F.'s Chief Medical Officer -

Thank You.

I will need this Information to Contact the Right people for a Peaceable legal Resolution to obtain details as to each parties duties, obligations, And coverage for Prisoners as wards of the State.

Re: Eye/Vision care

Prisoner 68432  C.DOC

LCF 49030 St. Hwy. 71

Limon, CO. 80826

cc: Hon. Judge Kane Fed. Dist. Ct.
Hon. Judge Boschers Fed. Dist. Ct.
Atty. Genr. Office.
Atty. Paula Greison Denver

January 26th 2006

TO: LCF Medical (Chief Medical Officer)

FROM: J. Rudnick #62432    44.3A

SUBJECT: Recent Eye Exam Results

I would like an Appointment with the Chief Med. Officer with regards to PROCEDURE and RESULTS of Eye Dr. Exams.

I Recently saw the Optometrist Dr. Lohse
  He did the Eye Chart Test and Prescription Exam
    But As the Lens Changes Were Made, the Values
      Kept changing due to my focus difficulties
  When finished - I'd look Away. Re-Adjust and
  View THROUGH his device ... And could not Re-FOCUS
    to the Lens Values. to see the chart clearly.

At one Point - It seemed perfect - then he Added More
changes - Jacking-up the whole prescription
          Fed-up — I told him this Ain't Working
  ( Because he Could not Bring back a "Focused Image" )
He said he'd "look into" Special Lenses ( Hi Index + Contacts)
And smaller Diameter Lens Frames (to Reduce glare)
      Other than this — Ø progress —
          The Testing Appears incomplete at best.
  I do not want Another pair of glasses MADE
    to Wrong Values .
  I look forward to seeing you. ASAP!

# CERTIFICATE OF SERVICE

I James Rudwick certify that I mailed a true and correct copy of three (4) pgs attached by US Mail, postage prepaid, to the following on this __1st__ day of __February__ 2006

_[signature]_

Office of the Atty Gen
Dept of Law
1525 Sherman St 5th Fle
Denver CO 80 203-1760

J. Rudwick 68437
LCF 49030 St. Hwy. 71
Limon, CO 80826

RECEIVED

FEB 3 2006

BY:

January 29, 2006

To: The Clerk of the Court
From: James Rudnick #68432   L.C.F. 49030 St. Hwy. 71 Limon CO. 80826
Re: Attachments Enclosed


Dear Sir,
    Enclosed is my <u>Motion for Order to Compel</u> and for <u>Order of Contempt</u> along with exhibits for the Court.

    Also, Letters Requesting from You:

·   <u>Writ of Attachment</u> as part of the Above matter   ( Rule 70 · Compel )   see Attached

·   <u>Registry of Actions</u> to my Case/claims filings — In which No Response has been issued.
                                                    see Attached

I also have a question:
    Why am I being Mailed 'Responses' to others
Motions About which I Know Nothing about ?
            — And —
    These Court Responses are so minimal in information without a Complete Registry of Actions (and details) that they Appear to serve No purpose on my case.

I appreciate your looking into this.

Sincerely,

[signature]

January 28, 2006

TO: The Clerk of the Court

FROM: James Rudnick #68432   LCF 49030 St. Hwy 71 Limon, CO. 80826

Re: Montez v Owens   92-N-870 (OES)

Rudnick Claim # 01-092   Category: I

A.D.A. Resolution/Settlement

— Mobility Disability Accommodations

Pursuant to Court Order 09-27-05

Dear Sir:

I have filed some Motions to this Court and received No Response to date (filed 11-02-05, 11-30-05, and there may have been others)

Would you Please send me a Registry of Actions Regarding my claim only.

Thank you,

Sincerely,

January 28th 2006

To: The Clerk of the Court

From: James Rudnick #68437    L.C.F. 49030 St. Hwy. 71
                                      Limon, CO. 80826

Re: Montez v Owens 92-N-870 (OES)
      ADA Settlement / Resolution "Accommodations Order"
                                            09-27-05
      Rudnick Claim #01-092   Catagory: I

Dear Sir,

    I am Requesting an Application for Writ of Attachment
pursuant to Rule 70   28 USCA "Judgement"
to Apply part II " to compel obedience to the
"Judgement" for Accommodations (09-27-05)
As part of my Motion Action Requested before
this Court's Special Master.        (Attached in this pkg)


Thank You

Sincerely,

J. Rudnick

February 01, 2006

To: Honorable Judge Borchers,

From: J. Rudnick #68432 Claimant 01-092 (catagory I) <u>MONTEZ</u> A.D.A. case

Subject: Explanation of attachments

Hon. Judge Borchers,

I am appreciative of your actions and rulings on this case as far as ORDERing of specific accommodations for my Mobilities claims.

The attached Motions are due to the ongoing problems of this C.D.O.C. clinical services where the "product" they provide DOES NOT serve the need or solve the mobility issue.

This is the same issue I attempted to explain with the eyeglass (vision) claim.

Yes the Defendants have made 'custom-made' orthotics and provided a temporary chair/stool combination... But, the orthotics ARE NOT what the Doctor described for me and explained in detail <u>how</u> they would be made to re-set the alignment of the foot. And, the "chair/stool" (though it works for now) is a temporary 'fix'.

This is why I am making these attached motions to GET SOME FINALITY and STOP the Defendants from "side-stepping" what is truely ordered and REQUIRED by the doctors.

It comes accross with the appearance that the Defendants are half-stepping and adding complications to the accommodations to act as a new infliction of punishment.

This should have been resolved at the conclusion of the original 30 day notice given in your final order.

Attached also are letters sent to the L.C.F. clinical services attempting to explain the need for getting this stuff right.

I hope this motion for order to comply and for contempt will get them to act right.

Thank you for your time and efforts on this case/claim.

Respectfully,

James Rudnick, #68432
L.C.F. 49030 State. Highway 71
Limon, CO. 80826

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870(OES) cnsldt w/ No. 96-N-343

JESSE MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim No.   01-092
Category: 01
Claimant: JAMES RUDNICK #68432
Address: L.C.F. 49030 State Highway 71, Limon, CO. 80826

---

MOTION FOR ORDER TO COMPEL AND FOR ORDER OF CONTEMPT

---

Claimant, James Rudnick, #68432, pro se, hereby submits his Motion for Order to Compel and for Order of Contempt, and in support of this motion states;

1.  Claimant filed his A.D.A. Mobility/Vision claims, part of the Prisoners Civil Rights Class Action Settlement/Resolution, before the Special Master Judge Borchers, requesting accommodations for his disabilities.

2.  Judgement against Defendants was entered on 09/27/05. That judgement directed Defendants to supply this claimant a medical matress, heating pad, boots that fit his feet, custom made orthotics, a chair, and an adjustable stool that accommodates his weight, back support and lower extremities.

3.  A copy of the judgement is attached to this motion as Exhibit A.

3.  Defendants Appealed but the judgement was upheld by Judge Kane on 12/16/05.

    A copy of the Order is attached as Exhibit B.

4.  Defendants have not completed their accommodations as Ordered with the following matters left unresolved:
    a.  Custom-made Orthotics simply DO-NOT-WORK as they do not support the arch and cross section of either foot as needed and described by the doctor.  They actually worsen the medical condition.
        See Exhibit C.

RUDNICK MOTION (cont.)

4.    b.    The 'chair' supplied is listed as 'property of clinical services' and required modification to make it tall enough and repair the broken back-rest. Staff stated that this chair is only 'temporary'.

Although it 'works' now, WILL IT BE TAKEN...replaced...something NOT as good?   See Exhibit D + G

How can this claimant be assured it won't be confiscated by staff due to future mis-interpretations?   (A.D.A. stepIII greivance remains unanswered on this issue and is over-due by 2 months)

c.    NO stool has been supplied (for any regular population cell) and this issue remains in-the-air for HOW this facility is to design and install permanent-fixed stools for each desk area [or how to make-one adjustable with back-support as ordered]
       see Exhibit E

5.    The Judgement against the Defendants directed them to "file an affidavit within 30 days (calculated to 10/27/05) affirming the medical devices have been provided". None of these items were provided prior to 11/16/05

6.    Defendants have not contacted this claimant nor made any further efforts after they were contacted at L.C.F. clinical services.   See Exhibit F

7.    NO "affidavit" has been sent or copied to this claimant regarding the above Order.

8.    Claimant continues WAITING for defendants to complete their accommodations as Ordered and is suffering "foot/mobility" problems as a result of their failings...in fact what has been issued creates new problems as described in this motion.

9.    For the purposes covered under A.D.A. 42 USC §§12101-12213 Disabilities, and pursuant to CRCP Rule 70 (Colorado) and Title 28 USCA Rule 70 (Federal) This Court has the authority to direct the "acts Ordered" be done:
       I  by others at the cost of the defendants
       II compelled by writ of attachment from the clerk
       III or find the defendants in contempt.

10.   Additional authorities are found under 28 USCA rule 53 Master (c) Authority and Rule 54 Judgements; costs (d) reimbursements and attorny fees.
       Rule 58 Entry of Judgement (1)(c) for attorny fees
       Rule 69 Execution (a) to enforce Judgement.

11.   Under the above authorities, Rule 53(a) ...must protect against unreason- able delay. The Court Ordered accommodations for 'specialist recognized' medical conditions 'qualified under A.D.A. and resolution guidelines, requiring measures be taken to adequately treat or lessen chronic pain

2

RUDNICK MOTION (cont.)

and suffering which worsens with time now limiting ability to access and fully participate in programs and work assignments. No treatment or wrong treatment and accommodations causes further mobility injury  resulting in ongoing pain simply attempting to 'get-around' or work with blood blisters and bruising under the balls of this claimants feet as witnessed by Dr. Bloor and other medical staff at L.C.F. Clinical Services.

12.    Under the authorities Rule 54 and 58 "attorney fees" this Court may order the defendants to compensate this claimant for his "pro se" efforts and costs of copies and postage estimates incurred throughout this processing of his claims.

       This would not be excessive, but a reasonable compensation for the work and anquish the defendants put on to this calimant for their failings to provide fair and proper reasonable accommodations for known medical needs.

13.    Compensation has been requested throught this claimants filings only to reimburse costs because he has such limited funds.

Therefore, Claimant requests the Court to enter an Order to Compel and upon the Courts descretion, an Order of Contempt.

Further, Claimant requests the Court Order reasonable compensation.


RESPECTFULLY SUBMITTED this _1st_ day of _February_ 2006.

                                   James Rudnick #68432
                                   L.C.F. 49030 St. Hwy. 71
                                   Limon, CO. 80826

                        CERTIFICATE OF SERVICE

I, James Rudnick, #68432, Claimant/Plaintiff, pro se, [the undersigned] do hereby certify that a true and correct copy of this MOTION FOR ORDER TO COMPEL and FOR ORDER OF CONTEMPT, plus exhibits adn attachments, was placed in the U.S. Mail [following D.O.C. prisoner legal mail procedure] postage prepaid, addressed to the following, on this _1st_ day of _February_ 2006:

                                   James Rudnick, #68432

SPECIAL MASTER for the US DIST. CT.
for the DIST. OF COLO.
Hon. Judge Richard M. Borchers
Legal Resolution Center
7907 Zenobia St.             STATE OF COLORADO Dept. of LAW
Westminster, CO  80030-4444  OFFICE of the Attorney General
                             1525 Sherman St.     5th flr.
                             Denver. CO. 80203-1760

                              3

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

OCT -- 2005

---

Claim Number 01-092
Category I
Claimant: James Rudnick, #68432
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

    THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The *Remedial Plan* was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the *Remedial Plan* (also referred to as Settlement Agreement). The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the Class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the *Remedial Plan* (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
>     *A. COVERED DISABILITIES*
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     *B. QUALIFIED INMATE*
>     Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>     *C. PERMANENT DISABILITY/IMPAIRMENT*
>     A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

2

*1. Permanent Mobility Impairments*

a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.

b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.

*2. Permanent Hearing Impairments*

Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

*3. Permanent Vision Impairment*

Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

*4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*

Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?

2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

In January, 2005, the Special Master issued an order which stated in part that Mr. Rudnick's

3

claim had been assigned to Category I. Upon re-examination of the initial and supplemental claim forms and supporting documents, the Special Master has determined that the claim should have been assigned to Category II.   However, the Settlement Agreement provides that Claimants will not receive a hearing on any claims assigned to either Category I or Category II.   Therefore, Mr. Rudnick's claim will be resolved based upon the written documents submitted by each side.

The Special Master has reviewed the claim, supplemental forms, and other documents submitted by Claimant.[1] The Special Master has reviewed the response of Defendants and Claimant's "Reply in Opposition" to Defendants' response. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial claim in July, 2004 and supplemental claim form for mobility and vision impairments in September, 2004. Mr. Rudnick has been incarcerated in CDOC since April, 1992. He states that he has worn contacts and glasses since 1978. From the exhibits submitted by Claimant, it appears that his disagreement regarding DOC's medical treatment of his vision problems began in 2000 when the rules and regulations at DOC changed to preclude DOC from having to provide contact lenses, except for specific eye conditions. As determined by DOC, Mr. Rudnick does not have an ocular disease that requires contacts for treatment. Sometime in 2001, Mr. Rudnick received glasses. He claims these glasses are "one size fits all," but they do not adequately address his particular vision needs.[2]

Mr. Rudnick was involved in a motorcycle accident in 1984. The exhibits submitted by Claimant on 1/31/05 document his lower extremity mobility issues since at least 2000. Claimant is 6'4" or 6'5" and weighs 270 pounds. He claims that he has chronic hip and back pain, arthritis in his feet and painful bunions which limit his ability to work at certain jobs and to participate in recreational activities. Mr. Rudnick has requested properly fitting boots with orthotics, a medical mattress and heating pad for his back and hip pain, and a chair and stool that will allow him to sit with the proper support for his height and weight.

Defendants response to the claim is to state that Mr. Rudnick has no vision or mobility

---

[1] The following documents submitted by the Claimant are in the file and have been reviewed by the Special Master: 5/26/04 letter regarding CDOC "Retaliation Actions Result of Montez Plan"; 6/24/04 "Initial Claim for Damages"; 9/5/04 Supplemental forms for mobility and vision impairments with five pages of supporting documentation; 9/8/04 "Motion to Raise or Adjust Claim Category Level"; 10/21/04 letter to Special Master; 3/29/05 "Supplemental Information to Claim #01-092"; 5/17/05 "Response Against Defendants Motion for Enlargement of Time"; 5/26/05 "Notice to the Court and/or Motion for Judicial Intervention"; 1/31/05 "Exhibits Attachment for Claim 01-092; and 9/9/05 "Claimants Reply in Opposition".

[2] Limon Correctional Facility does not allow inmates to purchase prescription eye glasses from outside vendors. *(Claimant's Exhibit, "Vision Impairment, Part A, p.74, 3/9/01 letter from Christopher Petrozzi, Clinical Team Leader).*

impairment that would constitute a disability under the Settlement Agreement. Defendants further state that even if Claimant is disabled he has not demonstrated that he was denied "access to a program, benefit or service for which he was otherwise qualified." *(Defendants' Response, p. 4).*

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

### *I. Vision Impairment:*

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. Claimant does not have a "vision impairment" as defined in the Settlement Agreement that would qualify him as disabled under the Settlement Agreement.

The Special Masters are bound by the Settlement Agreement in the same way that they are bound by a statute. The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." As the Special Master understands the test for central vision acuity, a reading of 20/200 means that the person being tested can see at 20 feet what a person with excellent vision can see at 200 feet. Under the Settlement Agreement, a Claimant, even with the use of corrective lenses, does not have to have central vision acuity that is better than 20/200. Claimant does not fall into the very narrow category of vision impairment as defined by the Settlement Agreement.

The Special Master would note that even if Mr. Rudnick qualified as disabled because of a vision impairment under the Settlement Agreement, the United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America,* 403 F.3d 1134, 1143 (10th Cir. 2005). Cases must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**2. Was the Claimant otherwise qualified to participate in programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Special Master has

5

reviewed the documents filed by both sides. Claimant does not appear to have been disqualified from programs, benefits or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant does not meet the definition of disabled with a "vision impairment", this question need not be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be reached in light of the answer to Questions #1 and #3.

## II. Mobility Impairment:

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is yes. The Settlement Agreement provides that an individual is mobility impaired even if not confined to a wheelchair if the person has a permanent lower extremity impairment that substantially limits walking and the person's ability to perform a major life activity. Both Claimant and Defendants submitted documentation that would substantiate that Claimant has had ongoing medical problems related to his back, hips and feet. Claimant's documentation for his mobility disability, which is extensive, precedes August 27, 2003, the date the class was certified.

Defendants argue that Claimant does not have a lower extremity impairment because he is "completely capable of ambulating 100 yards despite complaints of back, hip and foot pain." *(Defendants' Response, p. 3; See, Defendants' Exhibit B).* Defendants' Exhibit B is entitled "Accommodation Resolution." The document was signed by A. Bloor, M.D., on February 8, 2005 and by Cathie Holst, the ADA Inmate Coordinator on February 22, 2005. Defendants' Exhibit B states that Mr. Rudnick has no qualifying disability as determined by Dr. Bloor and therefore he is not entitled to any accommodation. "This offender was screened by the physician and is not disabled in any way. His vision is well within normal in spite of his claim of poorly made eyeglasses and he is completely capable of ambulating 100 yards in (sic) despite complaints of back, hip and foot pain."

Some of the statements contained in Defendants' Exhibit B denying an accommodation are directly contradicted by Defendants Exhibit J. On January 11, 2005, Dr. Bloor "verified" that Claimant had a mobility disability. *(See, Defendants' Exhibit J, p.1).*[3] In the mobility screening evaluation performed on the same day Dr. Bloor answers "Yes" to question #5 - "Does the patient require the use of other assistive devices (cane, walker, crutches, special clothing, footwear or prosthetics, etc.)? If so, what?" Dr. Bloor reiterates Claimant's request for a medical mattress and

---

[3] In the same document, Dr. Bloor verified that Claimant also has a "vision" disability. However, the vision screening evaluation that she completed the same day contradicts this conclusion. Despite this inconsistency, the Special Master is required to follow the clear language of the Settlement Agreement which precludes Claimant from qualifying for a disability based on a vision impairment.

heating pad, a chair and stool to accommodate Claimant's height and weight and to provide proper support for his back, as well as wider boots with orthotics that accommodate the length, width and condition of his feet. Claimant's mobility impairment and his request for accommodations have remained essentially unchanged since at least the year 2000. To date, Defendants have provided no assistive devices despite indicating the need for them.

Defendants assert that Mr. Rudnick can walk 100 yards on a level surface or climb a flight of stairs without pause. Defendants' argument is that, if Claimant can pass this "test," he does not have a mobility impairment. To fit the definition of a lower extremity permanent impairment, three criteria must be met: 1) Claimant's ability to walk has to be substantially limited by his lower extremity impairment; 2) the lower extremity impairment has to substantially limit Claimant's ability to perform a major life activity; and 3) the lower extremity impairment is not expected to improve within six months. The Special Master specifically finds that the reference to a Claimant's ability or inability to walk a 100 yards is an example of one measurement that might be used to determine if a Claimant's ability to walk has been substantially limited. The Settlement Agreement does not specify that it is an exclusive measurement. The Special Master finds that Claimant's ability to walk has been substantially limited by his mobility impairment.

Defendants are in error when they state that Claimant "does not make any assertion that he is substantially limited in his ability to perform major life activities." *(Defendants' Response, p.4).* Claimant asserts that his disability prevents him from "sitting, sleeping, or standing in one position for periods of over 30 minutes or suffer great pain and difficulty moving and straightening out." Claimant asserts that his mobility impairment makes it difficult for him to move quickly in response to orders from DOC staff. Claimant asserts that his mobility impairment limits his ability to participate in recreational activities. *(See, Claimant's Initial and Supplemental Claim Forms for Damages).* The Special Master finds that Claimant's mobility impairment significantly restricts his ability to perform the above enumerated major life activities.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefit or services offered by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is yes.

The Special Master has already found that Mr. Rudnick has a permanent lower extremity mobility impairment that substantially limits his ability to walk and perform other major life activities. Defendants argue that Claimant was not discriminated against or denied accommodations because of his disability, but for other legitimate reasons. *(Defendants' Response, p.5).* Over the last five years, Defendants have agreed on different occasions that Claimant needs an adjustable stool and chair for his back and hip pain. For five years, Claimant has requested boots that fit by taking into account his height, weight and the medical condition of his feet. Claimant has requested

7

Case No. 1:92-cv-00870-CMA-MEH   Document 1636-3   filed 02/14/06   USDC Colorado   pg 20
Case 1:92-cv-00870-EWN-OES   Document 1133   Filed 10/05/2005   Page 8 of 10
of 30

orthotics that will prevent his feet from bleeding and blistering when he stands and walks. For five years, Claimant has requested a medical mattress and heating pad to help lessen the pain in his hips and back so that he can sleep better at night and function better during the day. Defendants state that Claimant has been denied all of these accommodations because they "are in fact requests for medical treatment which the AIC cannot authorize." *(Defendants' Exhibit B).* [4]

The Special Master finds that Claimant has been discriminated against and denied accommodations because of his disability. One of the "services" offered by DOC are medical assistive devices. These devices have been repeatedly recommended by DOC staff to address Claimant's permanent lower extremity mobility impairment. Defendants argue that Claimant does not meet DOC criteria for a medical mattress and that the orthotics Claimant requests can be purchased from the canteen. Defendants provide little or no evidence to substantiate these assertions. On the other hand, Claimant has presented numerous documents that dispute Defendants' assertions and support his request and need for medical assistive devices to help him walk and function in prison.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
The answer to the first part of this question is yes. Defendants' conduct harmed the Claimant. The Special Master finds that the appropriate remedy is to provide Claimant with the medical assistive devices recommended by DOC to address Claimant's permanent lower mobility impairment.

IT IS HEREBY ORDERED that the claim of James Rudnick as to vision impairment is denied as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the District Court's Order of November 23, 2004; and

IT IS FURTHER ORDERED that the claim of James Rudnick is granted as to permanent lower extremity mobility impairment is granted and within the next thirty days DOC is to provide Mr. Rudnick with the following: a medical mattress; a heating pad; boots that fit his feet; custom made orthotics, not the orthotics or insoles that can be purchased in the canteen; and a chair and an adjustable stool that accommodates his height and weight and adequately supports his back and lower extremities; and

IT IS FURTHER ORDERED that all other aspects of the claim of James Rudnick are dismissed; and

IT IS FURTHER ORDERED that Defendants are to file an affidavit within thirty days affirming that the above enumerated medical devices have been provided to Mr. Rudnick; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

---

[4] This argument is disingenuous at best. If carried to its logical conclusion, DOC could deny all requests for accommodations by characterizing them as requests for medical treatment.

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 5, 2005.**

SIGNED this 29th day of September, 2005.

BY THE COURT:

Richard M. Borchers
Special Master

9

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this *27th* day of September, 2005 to the following:

Mr. James Rudnick
#68432
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Adam Wiens
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

EXHIBIT B
COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  **92-cv-00870-EWN**

**JESSE MONTEZ, et al.**

     Plaintiffs, as representatives of themselves and all others similarly situated in the class action,

v.

**BILL OWENS, et al,**

     Defendants.

---

### ORDER

---

KANE, J.

     This prisoner civil rights class action is before me on appeal (doc. #1211) from Special Master Borchers' Final Order related to James Rudnick dated September 27, 2005.  In the Order, the Special Master determined Rudnick's hip and foot-related ailments substantially limit his ability to walk and to perform other major life activities.  He also found Rudnick had been discriminated against by the Department of Corrections (DOC) and denied accommodations based on his disability.  The Special Master found Rudnick sustained injuries and awarded him a medical mattress, heating pad, boots that fit his feet, custom made orthotics, and a chair and adjustable stool to accommodate his height and weight.

     The State challenges each aspect of the Special Master's findings, arguing Rudnick is not mobility impaired, cannot be "otherwise qualified" for health care appliances, was

not denied health care appliances on the basis of his disability, and has not sustained any injuries as a result of being denied health care appliances. The State cites generally to Rule 53 governing review of decisions of a special master to argue my review of the Master's findings with respect to Mr. Rudnick must be *de novo* as to any determinations of law. According to the DOC, the Special Master "necessarily" abuses his discretion if it is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Appeal, p. 3. This is incorrect. The entire claims process in this action and the criteria for their determination are set forth in and limited to the operative Remedial Plan. The only error of law the Special Master can make is to misinterpret the Remedial Plan. His factual findings, the State concedes, are subject to an abuse of discretion standard. *See* Remedial Plan, § XXXII, ¶ 4.

I have reviewed the State's brief and considered carefully the arguments and case law cited therein. Considering the Special Master's Order in light of the standards to be applied, I cannot conclude the Master abused his discretion either in concluding Rudnick was disabled and entitled to relief, or in awarding the accommodations or remedies ordered. Even under the State's view of the abuse of discretion standard where I must evaluate the merit of the Master's statements of law under a *de novo* standard, no error is manifest.

> An abuse of discretion is one that is grossly unsound, unreasonable, or illegal. Discretion invested in judges results in a decision based upon what is fair in the circumstances and guided by the rules and principles of law. It is the court's power to act, rightfully exercised, when a litigant is not entitled to demand the act as a matter of right. An abuse of discretion

occurs when a judicial determination is arbitrary, capricious or whimsical. It is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record of proceedings.

*In re Bueno*, 248 B.R. 581, 582 (D. Colo. 2000)(Kane, J.)(citing *United States v. Wright et al.*, 826 F.2d 938, 942 (10th Cir.1987)). Under the circumstances of this case where the Special Master is intimately familiar with the long history of this class action, the parties and the nature and history leading to the establishment of a mutually agreeable Remedial Plan, and is vested with the duty to hear and consider individual claims of a multitude of class members, the abuse of discretion standard is particularly apt. Given the Master's expertise and the time and energy invested in evaluating Rudnick's claims, I will not disturb his judgment unless it appears the Master has "overriden" applicable law and exercised his discretion in a manner that cannot be reconciled with appropriate judicial temperament or duty. This clearly is not the case here.

Defendant's Appeal of the Special Master's Order dated September 27, 2005 is DENIED. The Order stands.

Dated this 16th day of December, 2005.

BY THE COURT:

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE

3

EXHIBIT C



A.

PROPER EXAMPLE

What I was told + expected

ORTHOTIC ARCH LIFT SUPPORT

SHOCK ABSORBENT PAD (FULL SIZE)

HIGH ARCH
STRONG PLASTIC CONSTRUCTION

B.

WRONG

What D.O.C. TRIED TO PROVIDE ME

COMBINATION FOAM + CORK PAD

LOW ARCH
(NO SUPPORT)!

✱ Huge Large Lump — WHAT THE HECK IS THIS ?
(LIKE WALKING WITH A ROCK IN SHOE)   RETARDED!

1. PAINFUL TO WALK-ON ALL DAY AGGREVATING EXISTING CONDITION.

2. CAUSES INSTABILITY   EVEN ON FLAT GROUND
ESPECIALLY ON LADDER USE DURING 'WORK' ACTIVITIES

3. ✱ LEFT ORTHOTIC DOES NOT MATCH THE RIGHT, WITH THE LEFT LUMP
MORE THAN 1" FORWARD OF THE RIGHT ORTHOTIC PAD.

4. NOT THE ORTHOTIC 'TREATMENT' I WAS TOLD BY DOCTOR.

5. DOES NOT LIFT THE ARCH OF THE FOOT SO AS TO REALIGN TOES
AND CORRECT THE STEP AS DOCTOR HAD DESCRIBED.

Exhibit D

ODD BALL
CHAIR 'SOFT PAD'



HEIGHT
HAS BEEN
'MADE' TO FIT
*

* WELDED BY MAINT. DEPT.
BROKEN BACK REST WAS ALSO
WELDED INTO POSITION

TEMPORARY
CHAIR
"REMAINS THE PROPERTY
OF CLINICAL SVCS"

DENTAL ASSISTANT CHAIR
ADJUSTABLE HEIGHT

THOUGH THIS CHAIR "LOOKS"
COMFORTABLE + IS PADDED

IT IS A 'RINGED PAD'
WHICH TENDS TO CUT-OFF
THE CIRCULATION TO THE
LEGS AFTER 30 MINS.

EXHIBIT E

22-24" HEIGHT REQUIRED

STOOL : "SHOULD HAVE BEEN INSTALLED" WHEN PRISON WAS BUILT.
(NON-EXISTANT IN ALL GEN. POPULATION PRISON CELLS)

January 12th 2006

EXHIBIT F

Medical Dept. (LCF)
Clinical Services

NOTICE TO CLINICAL SERVICES

Re: Custom Orthotics   Recieved 01-09-06

I have 'Tried' these orthotics for (2) days And find them very Uncomfortable And The Design causes Instability.

Examination (Side by Side) Shows 3 problems.

1 - The Odd Lumps Molded in to the Sole Are Uneven*
2 - And too high! *(Left don't match The Right)
3 - The Arch is too Low on both feet.

I need to have these Right (especially when it interferes with work (as in working on Ladders) And General Walking).

Please Re-Schedule Foot (Orthotic Maker) to Remedy this Situation. (As they Are Currently UnUsable) A.S.A.P.

Thank You.

P.S.   These Are Court-ordered Items — Further Delay or faulty Accommodations holds D.O.C. in Contempt -
(Since Nov '05)

Copies: Fed. Dist. Ct. Judge Borchers (Spel Mstr)
Fed. Dist. Ct. Judge Kane   (Sr. Judge)
Atty Crew Ofc
Paula Greisson, Atty
David Lane, Atty

Exhibit G

## LU-3  A-3-03

**Date:**       01/30/06
**To:**         Rudnick, J. #68432
**From:**       CMI McCallum  *McCallum*
**Subject:**    Grievance

Your step III was receipted on 12/05/2005.  Mr. DeCesaro is behind on the responses.  You should get a letter indicating the step three responses are behind and will be answered as soon as possible.  Concerning your chair, it is considered to be temporary until something more appropriate can be provided.