In The United States District Court
For The District Of Colorado

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2006 FEB 13 AM 11:34

GREGORY C. LANGHAM
CLERK

Civil Action No 92-cv-870 EWN (Consolidated with No. 96-N-343)

BY _____ DEP. CLK

Jesse Montez, et. al.,
    Plaintiff's

v.

Bill Owens, et al.,
    Defendants.

---

Claim Number 02-003
Category II
Claimant: Waldo Mackey, #82262
Address of Claimant: CCF P.O. Box 600, Canon City, Co 81215-0600

---

Claimant 02-003 Answer to The Defendants Response of January 31, 2006.

Statement Of Facts

On page 1 of the defendants response in the "Statement Of Facts" it is true that I claim mobility impairment arising from arthritis in the neck, shoulder, knee, back, and now the

1

fingers, also I claim that due to bronchitis I am short of breath with extended activity. Also it is true that I claim that the Colorado Department of Corrections (CDOC) discriminated against me by denying me medications for these illnesses or deliberately prescribing cheaper non-effective medications that the defendants knew to be ineffective for my condition.

In FN-1, the defendants object to the letter about them putting me in a cold cell because of the Special Master's Order granting claimant up to May 27, 2004 to file information related to my claim.

This is an ongoing state and this particular note worthy incident took place on December 4, 2005, after the Special Master's Oder of May 27, 2004.

On page 2 of the defendants statement of facts is misleading, intentionally. I have been under the medical care of the defendants since December 1993, a year after the Montez suit was filed. From 1985 to 1993 I was in the California Prison system.

The defendants cite their "exhibit B" as proof that I do not have a disability. Defendants "exhibit B" is a "sham." I was called to medical and asked questions. I was not examined for arthritis or bronchitis, there were no ex-rays or a physical examine done.

If the Special Master will note, all of the medical exhibits ecept for A, B, and C are from the year 2001 to 2003. In exhibit A, Dr. Wermer stated that my cough was due to allergic.

This is not the truth I have been diagnosed with bronchitis after chest ex-rays. I have coughed up blood due to this

illness and I had informed staff and medical that the cold weather had a negative effect on my arthritis causing me pain and my bronchitis causing me respitory distress.

On page 2 of the defendants "Statement of Facts" they claim that my arthritis does not significantly impair my movement or ability to walk.

This is not true, I was restricted to the first tier and the bottom bunk due to my impairment. Again, Dr. Wermers did not examine my legs, knee or have me walk. If he would have, he would have noted a limp.

In the defendants "exhibit c", the Dr. designated me as able to walk 100 yards or climb a flight of stairs without pause. This is not exactly true. If I am not in pain I am able to do this, but if I am in pain, then I can't. Exhibit C is false.

On page 2 of the defendants "Statement Of Facts" state that the use of Parafon reduced my level of pain. This is not true. The P.A. prescribed Parafon for my arthritis even though he knew Parafon was not for "bone pain." I told the P.A. that Parafon upset my stomach. I never stated that Parafon works well for arthritis pain, as it states on page 2. I request renewal of the medication because the P.A. told me that I should keep taking it to be effective, which it never was.

On page 2 of the defendants "Statement of Facts", I did say when I was on the medication "Ultram" that it helped with the pain, but medical staff has refused to prescribe it to me since 2001. In fact I haven't had medication for my arthritis or bronchitis for over three years.

3

On page 3 of the defendants "Statement of Facts" it states that it is "no evidence of a significant lung problem per exam today."

Notice that the defendants are exact in stating "per exam today", that is because on previous exams the x-ray showed the disease bronchitis. This so called exam was no exam at all, Dr Wermers only listened through a stethoscope for a few seconds.

On page 3 of the defendants "Statement of Facts", it is true at that time I only asked for bottom tier bottom bunk restriction because the diseases had not progressed as they are today and that the Tens unit for pain, the shoe lift and the wedge pillow for acid reflux were confiscated from me for no other purpose but because they were disallowed at CSP.

Medical recognized that the arthritis was causing me pain and prescribed the Tens unit, but the Tens unit is for muscle pain not bone pain, so it is true that the Tens unit was ineffective on relief of arthritis pain, but that only shows the ineptitude of the defendants.

On page 3 of the defendants "Statement of Facts" the defendants use exhibit D./F. to justify the confiscation of the prosthesis for my leg. They claim that I could purchase and use foam insoles to put in my shoes to equalize the length of my leg.

That may be true except for the fact that staff at CSP and CCF confiscates every inmates shoes and gives the inmate canvas tennis shoes. These tennis shoes are flat and slip on, and the arch support foam insoles will not fit in these tennis shoes.

4

On November 17, 2005, as in defendants exhibit B, Dr. Wermers report is not the truth. At the time of this so called report, property staff had confiscated my state shoes and I was barefoot at the time of this sham of an exam, so the Dr's words, "ambulates well in deck shoes without inserts" is a false statement.

Plus I told Dr Wermers that the foam insoles sold on the canteen did not fit in the tennis canvas shoes, and it was impossible to get my foot in these shoes once an insert is in it. That is the reason that I was allow to where the state black shoes until Dr. Werner had them confiscated on November 17, 2005. See exhibit 1.

On page 3 of the defendants "Statement of facts" claim that the defendants delt with arthritis medication request in a accommodating and non-discriminatory manner. This is not true. First not since 2001 with the vioxx and ultram has medical staff even attempted to deal with my disease of arthritis and has only prescribed muscle pain medications.

On page 3 and 4 of the defendants "Statement of facts" they claim exhibits G and H as being satisfied with the informal resolution. This only confirms that I was in pain and that staff stated it would give me my medication. Exhibit I is only a misunderstanding about my medication and shows I was concerned.

The defendants "Statement of facts" are not facts at all. The fact is that the defendants have been denying me meaningful medication because of the cost of effective medication.

The fact is that I now have lower back pain because

5

the defendants took my prosthesis and shoes for no other reason than I was to dress like all other inmates. <u>See def's exh. A, back pain</u>.

As for the bronchitis the defendants have prescribed an inhaler which would ordinarily be prescribed for asthma and a wrong medication for someone with bronchitis. As soon as I found out that the inhaler was the wrong medication, I stopped it. I don't know if the inhaler caused any damage or not.

Also staff confiscated my prescribed wedge pillow for acid reflux. I am still taking medication for this and don't know if this confiscation has caused harm. There was no reason to confiscate any of the medical prescriptions, security or otherwise.

# Argument

In the Remedial Plan, Colorado Dept. of Corr. of August 27, 2003, filed in the U.S. District Court September 11, 2003, it states in III. Definitions, C. Permanent Disability/Impairment: A condition which is not expected to improve within six months.

In the instant case although I am not classified with a severe disibility, I am classified with an impairment that is not going to improve in six months.

In the Remedial Plan, V. Placement, A. Categories & Criteria For Special Placement: (b) impairment Non wheelchair. That without medication I cannot walk 100 yards without pain, moreover, because my left leg is shorter than the right I have pain in my lower back when walking. Furthermore my knee is arthritic and without medication is painful.

The defendants exhibit B is without substance or merit because his findings are bias, as he is an agent of the defendants and employed by them. Dr. Wermers did not fully examine me, he did not observe me or give me any test.

Dr. Wermers exhibit C is false. The Dr. filled this form out, and this shows as the Dr. perjured himself on question no. 12. It states: Does the offender require the use of special clothing, footwear, or prosthetics? To this question Dr. Wermers answered "no." Dr. Wermers had/has full knowledge that I wear a full prosthetic lift in my shoe. When this prosthetic was being made I was given the choice of having a special made shoe or having a prosthetic piece I could put in my shoe.

7

This is clearly bias and arbitrary and an attempt to cover up medical malpractice and the defendants discriminatory treatment in order to prevent spending.

In order to have lower bunk and tier restrictions, an inmate must have a recognized mobility impairment. See exhibit 2. Its only when the defendants are held to account, is when they deny responsibility. See exhibit 3 compared to exhibit 2.

In the instant case the defendants argue that I as claimant makes no assertion that I was denied access to any job, programs benefits or services to which he was otherwise qualified. See defendants response argument page 7.

This is not true. I was originally removed from the pro unit because my case manager, K. Moore and property officer James Clark accused me of bartering with inmate John Trujillo, #87138, to which I knew nothing about and had no control over. See exhibit 1, also Tebbetts v. Whitson, 956 P.2d 639, 640-41. Nevertheless, because K. Moore and J. Clark claimed that they saw the invoice with my name on it, she had me administratively segregated and restricted privileges.

I appealed the ad seging, as did Trujillo, I claimed there was no invoice and proved that inmate Trujillo did not purchase the book and staff perjured themselves. On the same evidence my conviction was upheld and and Trujillo was expunged. See exhibit 4, compared to exhibit 5 and 5a. Also notice that Judy Lindsey is both the Hearing officer and appeal judge on my case "only."

Once I convinced staff that case manager Moore and J. Clark was not truthful they returned myself and Trujillo back to the pro

8

unit. This set the stage for retaliation.

Because K. Moore was once again my case manager, she assigned me to the "cold cell" even though she was aware of my bronchitis and arthritis and went as far as to move an inmate out of that cell to move me in. See exhibit 6. This was in the month of December and the window did not close and the temperture was right at freezing in the cell.

The defendants argue that the cold cell was for use for general population therefore I was treated the same as any other inmate. This is not the case

In <u>Thaddeus-X and Bell Jr. v. Blatter</u>, 175 F.3d 378, 386, states that "It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." See e.g. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759; <u>See also Smith v. Maschner</u>, 899 F.2d 940, 947-48. I was housed in the "cold cell" because I accused K Moore of lying to ad seg me. <u>Smith</u>, 899 F.2d 940, 949.

In the instant case, because it was freezing in the "cold cell" I complained to Sgt. Rezak, he stated that I wasn't cold and I told him to shut up. For this my punishment was no T.V. for 3 days.

But when K. Moore heard of this, she had me ad seg again for verbal confrontation. See exhibit 7. There is no such charge in the Code Of Penal Discipline (COPD), but when I went to the ad seg hearing I was convicted of verbal abuse. I didn't have notice of the charges I was convicted of <u>Wolff v. McDonnell</u>, 418 U.S. 539,

9

564, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935, 956 (1974)

Once again K. Moore brought the charges and Judy Lindsey was both the hearing officer and the appeal judge, judging her own ruling again. Gwinn v. Aumiller, 354 F.3d 1211, at 1220-21 (10th Cir. 2004). Wolff, 418 U.S. at 592 S.Ct. 2963. See

In the instant case, this shows a pattern of retaliation and abuse that encompasses the medical issue to punish me by housing me in a "cold cell" for punishment, knowing that my health was at risk and/or I would complain and be sent back to ad seg.

In sending me back to ad seg for discriminatory acts because of my health I was denied the benefit of the program and job and would have been transferred to another facility.

On page 8 of the defendants response, they claim that there is nothing in my medical file for a cooler or warmer cell. Common sense and common decency dictates that you don't put another human being in a cell with freezing temperatures and then confine him to that cell for six (6) days without pause.

In Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811; it states "First the deprivation alleged must be, objectively "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324; Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992); a prison official's act or omission must result in the denial of "the minimal civilized measure of life's neccessities.

In the defendants response on page 7 and 8 they state that nothing in my medical records reflect that I medically require TENS unit (Therapeutic Electric Neurological Stimulator.

10

The defendants are stumbling over their own words, the TENS unit is prescribed for pain, thus you cannot have a TENS unit prescribed unless the medical staff diagnosed an inmate with severe pain.

In the Remedial Plan referred to in this case, no. XXVII, A., B., and C., dictates how the defendants are to treat health care appliances. The appliances are not to be taken unless it is to ensure the safety or security of the facility.

In the instant case, staff just took my medical appliances without explanation, cited "they are not allowed." And as for my shoe prosthetic, I informed medical staff and staff that without it, movement causes pain in my lower back. See exhibit 1, See also defendants exhibit A, Lower Back pain.

Last May I informed Sgt Smith of my medical problem and he went to medical to get an approval to wear my black shoes, the only shoe the prosthetic fit in. See exhibit 1.

It was not until the day Dr. Wermers filled out the "ambulatory" report, that all of a sudden I no longer need the prosthetic. See exhibit defendants B. This date 11/17/05 was the day the defendants took my shoes along with the prosthetic to be able to state that I did not need it. This definitely is "bias" and arbitrary decisions to deprive me of medical needs.

In the defendants response on page 8 and 9, they claim that I was never harmed "other than letting him remain in pain."

They cite defendant exhibit B-E and state CDOC consistently provided me with medication. I haven't been given any medication for bronchitis or arthritis for years. When I ask for pain medication medical staff tells me, "buy motrin on the canteen."

When I tell medical staff that motrin or asprin products upset my stomach they ignore me. See the defendants exhibit A, (Reflus Esophagitis).

The defendants exhibit B, shows all medication I am currently taking minis Elavil, HCTZ, Lescol. The medical staff refuses to give me any medication for arthritis or bronchitis, for since at least the year 2002. And when they were forced to give me something, it was alway uneffective since 2002.

In the defendants response on page 9, they argue that any Eight Amendant claim is beyond the scope of this case.

Even if that is so, the facts of this case show deliberate indifference to even give me medication for my condition.

The defendant is wrongly under the impression that my claim is based on a request for change in dosage, brand or delay in delivery. My claim is that they dilibertly denied me medical assestance and dilibertly withheld the assistance that they did give me, knowing that by withhold medication and assistance, I would be in extreme pain.

## Conclusion

This claimant has proved that the defendants statement of facts are not true while simultaneously providing proof of facts and exhibits to support his claim that the defendants discriminated against him because of his health. While not in a wheelchair Claimant has a permanent lower extremity mobility impairment that without medication limits walking and breathing. This claimant

12

prays that the court will examine his exhibits and facts and rule in his favor. The defendants goal was to retaliate and had no real reason to ad seg this claimant and gave no reason. See exhibit 10 and 11. See also Administrative Regulation 600-05; Redding v. Fairman, 717 F.2d 1105 at 1114-16. This retaliation interfered with the medical process in a discriminatory manner.

Respectfully Submitted
Waldo Mackey #82262

## Certificate Of Service

I do hereby certify that a copy(s) of the foregoing Claimant 02-003 Answer To The Defendants Response Of January 31, 2006 was mailed to the below on February 13, 2006

Attorney General, Colo.
J. Berman / Corrections Unit
1525 Sherman St., 4th fl.
Denver, Co 80203

Judge Richard Borchers / Bruce Pringle
Special Masters for the U.S. Dist Court
For the Dist. of Colo.
Legal Resolution Center
7907 Zenobia st
Westminster, Co 80030-7444

2-9-06        Waldo Mackey

13