IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 92-N-870

FILED
UNITED STATES DISTRICT COURT
COLORADO

FEB 15 2006

GREGORY C. LANGHAM
CLERK

JUDICIAL ARBITER GROUP, INC.

JAG Case No. 230790

Jesse Montez, et al.,

   Plaintiffs,

v.

Roy Romer, et al.,

   Defendants.

---

### RECOMMENDED AWARD OF ATTORNEY FEES AND COSTS

---

This case comes before the undersigned pursuant to Section XXXIII of the August 27, 2003, Remedial Plan ("Remedial Plan"), and subject to Rule 53, for a determination of post-judgment attorney fees. The United States District Court for the District of Colorado adopted the Remedial Plan on August 28, 2003, after a fairness hearing held on August 27, 2003. For this fee determination, the parties appeared, through counsel, for a hearing held by agreement at the Denver offices of the Judicial Arbiter Group, Inc., on November 10, 2005. Assistant Attorneys General Elizabeth H. McCann and James X. Quinn represented the Department of Corrections

("DOC"). Class Counsel King and Greisen, LLP, through attorneys David H. Miller and Paula Greisen, represented the plaintiff class members. The attorneys had previously submitted briefs setting forth their respective positions, as well as two 4-inch binders of pleadings filed after August of 2003, either in the district court or before the Special Masters. Attorneys Miller and Greisen presented sworn testimony regarding the fee request, and they called attorney Edwin S. Kahn as their expert. DOC cross examined the witnesses and introduced three exhibits. Considering the testimony, the exhibits, the prehearing submittals, and arguments of counsel, the undersigned has reached the following conclusions of fact and law.

**I.   Should Class Counsel be compensated for fees related to protecting class claimants' individual rights to seek compensatory damages as opposed to fees generated for monitoring DOC compliance with the Remedial Plan?**

   **A.   DOC's position**

DOC concedes that the Remedial Plan grants Class Counsel reasonable fees and costs "[d]uring the Monitoring Period . . . [for] the time and resources reasonably necessary to monitor compliance during the Compliance Period." *Remedial Plan, § XXXI*. DOC acknowledges that this included monitoring compliance of the structural and programmatic requirements of the Remedial Plan. DOC further acknowledges that Class Counsel's initial involvement in implementing the damage claims process was compensable. Those compensable legal activities included preparation of damage claim forms and accompanying instructions to claimants, meetings with DOC counsel and the Special Master to create and implement procedures and deadlines, devising methods to notify claimants (including parolees and next-of-kin), and ensuring effective distribution of claim forms to claimants.

The parties disagree, however, on the extent of further involvement Class Counsel should have had in the ongoing adjudication of damage claims. DOC maintains that Class Counsel's

involvement in briefing discovery issues and liability defenses is presently non-compensable. DOC also maintains that some of the legal services that Class Counsel charged as general compliance monitoring were, in actuality, services performed to help Class Counsel decide whether to elect to represent individual claimants seeking compensatory damages.

DOC argues that Class Counsel is "not entitled to attorneys' fees incurred in seeking damages on behalf of claimants unless and until they are successful in the [individual] damages cases." *DOC submission at 2.* DOC reasons that Class Counsel is neither duty bound to perform, nor entitled to compensation for, legal work related to individual inmates' efforts to seek disability-related discrimination damages from the Special Masters charged under the Remedial Plan with handling those damage claims. DOC buttresses its position with language from Section XXXII of the Remedial Plan: "Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class Counsel does not have an obligation to represent any individual with respect to their individual damages." Class Counsel has entered an appearance in only about a dozen individual claimants' claims. DOC argues that Class Counsel's involvement in other claimants' proceedings is unnecessary. DOC concludes therefore that post judgment attorney fees should be awarded to Class Counsel only where: (1) Class Counsel elects to appear for the individual claimant *and* (2) the claimant prevails.

**B.     Class Counsel's position**

Class Counsel and expert Kahn take the position that in this particular case, "monitoring compliance" requires legal services not only to assure the Remedial Plan's injunctive type remedies were made available to class members, but also to assure the integrity of the damage

3

claims process, without which the possibility of individual class members obtaining the potential damages promised in the Remedial Plan would be rendered illusory.

During the implementation of the damage claim process,[1] Class Counsel's office created a database to track notification, filing of claim forms, and orders issued by Special Masters Borchers and Pringle. To date, over 1,300 claims have been filed and approximately 500 have been adjudicated. The paper generated is voluminous, as can easily be imagined. Approximately 60 contested hearings have been held. In all 60 hearings, Assistant Attorneys General appeared to represent the DOC; in only one was the class claimant represented by counsel (and there, it was not Class Counsel). As envisioned, the majority of claimants are appearing *pro se*.

As the class members began to file claims, the parties disagreed as to the amount of discovery to which individual claimants were entitled and who would bear the expense of that discovery. Both Class Counsel and the Attorney General submitted briefs to Settlement Master Borchers on that issue. Special Master Borchers' order ruling that DOC had the burden of paying the costs of discovery and further ruling that the Remedial Plan, not the Federal Rules, would govern discovery, was on appeal to Judge Kane when Judge Nottingham entered an order that limited the DOC's burden to paying for the first ten pages of discovery. Judge Kane then affirmed Settlement Master Borchers' order. The parties have a motion pending to clarify these apparently inconsistent decisions. Class Counsel seeks compensation for briefing the discovery issues.

Class Counsel Miller has testified that, in addition to Class Counsel's helping devise the damage claims process and forms, and Class Counsel's briefing of discovery issues, he has

---

[1] DOC, as noted above, agrees that implementing the damages claims process is part of Class Counsel's obligation to monitor DOC compliance with the Remedial Plan.

4

personally reviewed pleadings filed by DOC in the individual damage claims. DOC necessarily filed those pleadings in individual cases; however, attorney Miller concluded that any ruling on the issues DOC had raised would affect a significant portion of class members. Specifically, Class Counsel states DOC raised the following defenses that are generally applicable to all potential claimants:

1. That the claimants could not bring claims for damages under the ADA;

2. That damage claims under the Eighth Amendment were barred because of, e.g., the failure to plead an individually named defendant, or qualified immunity;

3. That the settlement agreement precluded injunctive relief for individual claimants;

4. That claimants needed to plead and prove intentional discrimination to recover under the Rehabilitation Act;

5. That all claims should be dismissed unless the claimant had exhausted the administrative remedies (as required by the Prison Litigation Reform Act); and

6. That the recent decision in *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005), precluded claimants from receiving damages for DOC's failure to accommodate their medical needs under the ADA or Rehab Act.

As stated, DOC raised these issues (which Class Counsel maintains potentially affected a significant percentage of the claimants) in individual claimant's cases. Class Counsel determined that individual claimants were ill suited to respond to such complex legal arguments, and so filed responsive briefs in those claimants' cases, indicating that Class Counsel was appearing on a limited basis on behalf of the particular claimant "and all similarly-situated claimants" or as "Class Counsel." The parties briefed all of the above issues to the Special Masters or to Judge Nottingham or Judge Kane. The first five of the issues were decided in favor of the plaintiff

class. The sixth issue, the *Fitzgerald* issue, was still pending before Judge Nottingham at the time of this hearing.

Finally, in addition to setting up the process, forms, and notice, and intervening on broad liability and discovery issues in individual cases, Class Counsel responded to issues raised *sua sponte* by the Special Masters, *e.g.*, whether all Eighth Amendment Claims were dismissed prior to settlement; what damages would be legally compensable under the ADA, the Rehab Act, and the Eighth Amendment; what damages, if any, would survive a claimant's death;[2] whether the parties could agreed upon additional Special Masters to assist with the claims process; and whether one of the class members had been threatened for his role in the case.

## II. Legal analysis and findings of fact regarding attorney fees and costs

### A. Legal authorities

By way of background, this Remedial Plan is, so far as could the undersigned could determine, unusual among prisoner class action cases. Most of the guiding opinions were decided principally as First Amendment claims, or as §1985 or §1983 civil rights discrimination claims, not as Americans with Disabilities Act ("ADA") discrimination claims, which formed the basis for the majority of relief awarded in the Remedial Plan. The undersigned did not find another prisoner rights class action in which a post judgment procedure to obtain compensatory damages, as opposed to injunctive relief, was made available to the individual class members as part of the remedial plan or decree. The Remedial Plan here nevertheless envisions creation of just such a process for damages claims. The question, therefore, becomes: does Class Counsel's duty to ensure that DOC complies with the decree[3] extend to monitoring and filing pleadings in

---

[2] Class Counsel has represented that this is an issue of first impression.
[3] That continuing duty is clear. *Duran v. Carruthers*, 885 F.2d 1492, 1495 (10th Cir. 1989).

individual damage claims on questions of general importance, not just to that individual's damage claim, but also to the majority of class members who elect to file such claims *pro se*?

DOC's position -- that the fees for addressing these issues are not recoverable because Class Counsel is not entitled to fees unless and until an individual claimant on whose behalf Class Counsel has appeared actually recovers damages -- finds little direct support in the case law. Class Counsel's position seems more in line with prior judicial opinions interpreting other class counsels' entitlement to post judgment monitoring fees. *See, e.g., Glover v. Johnson*, 138 F.3d 229 (6th Cir. 1998) (attorneys pursuing successful §1983 claim entitled to fees for appearing at hearings in individual cases which related to underlying class action; also properly compensated for appeals even though appeals were ultimately voluntarily dismissed and class was consequently not a "prevailing party" in the appeals), *reversed on other grounds sub nom Martin v. Hadix*, 527 U.S. 343 (1999); *Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 716-720 (8th Cir. 1997) (defense of a remedy is compensable post judgment activity; "prevailing party" status not retroactively removed when state successfully appealed and reduced "a small fraction of the relief" ordered), *citing with approval Jenkins v. Missouri*, 967 F.2d 1248 (8th Cir. 1992) (desegregation case; attorneys paid for defending post judgment collateral attacks on the award). Of course, fee awards are not appropriate unless the post judgment work is a necessary adjunct to the initial litigation. *Id.* at 716. *See generally, Diaz v. Romer*, 961 F.2d 1508 (10th Cir. 1992) (right to post judgment monitoring fees for subclass attorney even where subclass did not prevail on its interpretation of decree); *Jenkins by Agyei v. State of Mo.*, 73 F.3d 201 (8th Cir. 1996) (compensation appropriate where integrity of remedy is attacked).

The Special Master concludes that Class Counsel's position is legally sound, and Class Counsel is entitled to compensation for its involvement thus far in the individual damages

claims. To be sure, that conclusion does not alter the requirement that the amount of fees and costs awarded be reasonable, measured against the standards identified in a legion of cases, of which *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983) provides the guidelines in this circuit. And, this Special Master is mindful that the Colorado taxpayers who ultimately will fund this award should not be made to pay excessive monitoring fees. Unlike some civil class actions where a fund is created to pay claims and attorney fees, this legal bill falls directly upon the citizens of Colorado.

### B. Findings of fact

Judge Nottingham has previously noted that the undersigned's conclusions of law are subject to de novo review, and, obviously, he might ultimately adopt DOC's position. In the event that happens, DOC agrees that it would be more efficient for this Special Master to make at this time factual findings related to fees and costs incurred in the damage claims monitoring, and those incurred for general monitoring of DOC compliance. Both are set forth below.

With regard to all costs and fees for Class Counsel's post judgment involvement in the case, Class Counsel submitted detailed billing statements, contemporaneously kept, and expert Kahn has testified that the charges appeared reasonable, considering the work done as well as community standards as to billing rates. He also testified that all of the legal and paralegal services and costs were necessary to the monitoring required by the Remedial Plan, and, on cross examination, that the services provided were neither redundant nor inefficient.

DOC's proof that certain fees assessed were more likely related to Class Counsel's decision whether to accept individual cases than to monitoring compliance seemed to this fact-finder more conjectural and speculative than persuasive. DOC's argument, on the other hand, that some of the monitoring work performed and costs incurred were redundant, inefficient, or

8

unreasonable, was more compelling. As a result of that argument and a careful review of the billings, notwithstanding attorney Kahn's unwillingness to "second guess" Class Counsel's decisions on how to effectively monitor compliance, the requested fees and costs have been adjusted downward to accommodate the *Ramos* factors.

Class Counsel submitted a total bill of $206,629 for attorney fees for all compliance monitoring, of which Class Counsel appears to allocate $92,290 to damages claims process monitoring, and $114,339 to general compliance monitoring (including involvement in designing the claims process). The undersigned would, based on reviewing the attorneys' descriptions of work done, allocate differently; specifically, the undersigned finds that approximately $11,000 that Class Counsel assigned to the damages category is more properly allocable to the initial design of the damage process, which DOC concedes is compensable as general monitoring. Therefore, the undersigned has re-allocated the initial request to $81,290 and $125,339 sought for damages related monitoring and for general monitoring, respectively.

After carefully reviewing the documentation regarding attorney time, the undersigned finds, as a matter of fact, that Class Counsel made reasonable efforts to use time and personnel efficiently and to exercise reasonable billing judgments. The undersigned finds that the work performed was necessary and reasonable to achieve the monitoring required by the Remedial Plan. Adjusting the fees, however, by the *Ramos* factors set forth at length in my prior decision, the Special Master recommends a fee award to Class Counsel of $191,500, of which $114,900 is allocated to general compliance monitoring, and $76,600 to involvement in damages claims.

Class Counsel has requested $14,518 in costs, including compensation for Mr. Kahn's time ($2,100). After careful consideration, the Special Master recommends $12,300 as a reasonable cost award.

Thus, the total recommended award, based upon the undersigned's factual determinations as to the reasonableness of fees and costs, is $203,800. Should the district court decline to award fees for time spent on damage process monitoring, the recommended award is $127,200.

Done and submitted at Denver, Colorado, this 29th day of December, 2005.

_____
ROBBIE M. BARR, Special Master

## CERTIFICATE OF FACSIMILE AND CERTIFIED MAILING

I hereby certify that on this 29th day of December, 2005, I faxed by facsimile transmission and deposited in the United States mail, certified mail, return receipt requested, a true and correct copy of the foregoing Special Master's Award to the following:

Judge Edward W. Nottingham
United States District Court
For the District of Colorado
U.S. Courthouse
901 19th Street
Denver, Colorado 80294
**VIA U.S. MAIL ONLY**

Paula Greisen, Esq.
King & Greisen
1670 York Street
Denver, CO  80206
FAX:  303-298-9879

Elizabeth McCann, Esq.
James Quinn, Esq.
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO  80203
FAX:  303-866-5691

*Susan Smith*
Susan Smith
Judicial Arbiter Group, Inc.

11

Suite 400
1601 Blake Street
Denver, CO 80202
303-572-1919
1-800-ARBITER
3__-71-1115 (FAX)

Suite ___
90 S__ Cascade Avenue
Colorado Springs, CO 80903
719-473-8282
719-473-9542 (FAX)



# TELECOPIER TRANSMITTAL

| | | |
|---|---|---|
| TO: | Paula Greisen, Esq. | FAX: 303-298-9879 |
| | Elizabeth McCann, Esq. | |
| | James Quinn, Esq. | FAX: 303-866-5691 |
| FROM: | Robbie Barr | |
| DATE: | December 29, 2005 | |

Number of pages (including cover): 12

If there are problems with this transmittal please contact:
At: 303-572-1919 or 800-272-4837

The information contained in this facsimile message and/or the document transmitted are arbiter-attorney privileged work-product or otherwise confidential and intended only for the use of the individual or entity above-named. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to the address listed above via the United States Postal service.

```
************************************************************************
*                                                                   P.01 *
*                          TRANSACTION REPORT                            *
*                                                       DEC-29-2005 THU 04:08 PM *
*                                                                        *
*    FOR:  JUDICIAL ARBITER GROUP      303 571 1115                      *
*------------------------------------------------------------------------*
*    SEND                                                                *
*   DATE  START     RECEIVER          TX TIME   PAGES TYPE    NOTE       M#  DP *
*------------------------------------------------------------------------*
*   DEC-29 04:07 PM 3032989879         1'48"     12   FAX TX   OK        224    *
*------------------------------------------------------------------------*
*                                     TOTAL :    1M 48S PAGES:  12       *
************************************************************************
```

Suite 400
1601 Blake Street
Denver, CO 80202
303-572-1919
1-800-ARBITER
303-571-1115 (FAX)

Suite 300
90 South Cascade Avenue
Colorado Springs, CO 80903
719-473-8262
719-473-9542 (FAX)



## TELECOPIER TRANSMITTAL

| | | |
|---|---|---|
| TO: | Paula Greisen, Esq. | FAX: 303-298-9879 |
| | Elizabeth McCann, Esq. | |
| | James Quinn, Esq. | FAX: 303-866-5691 |
| FROM: | Robbie Barr | |
| DATE: | December 29, 2005 | |

Number of pages (including cover): 12

If there are problems with this transmittal please contact:
At: 303-572-1919 or 800-272-4837

The information contained in this facsimile message and/or the document transmitted are arbiter-attorney privileged work-product or otherwise confidential and intended only for the use of the individual or entity above-named. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to the address listed above via the United States Postal service.

```
TRANSACTION REPORT
                                              DEC-29-2005 THU 03:18 PM
                                              P. 01

FOR:  JUDICIAL ARBITER GROUP      303 571 1115

FAX BROADCAST

DATE   START    RECEIVER      TX TIME   PAGES  TYPE    NOTE    M#    DP

DEC-29 03:16 PM 3032989879    1' 43"     11    FAX TX   OK    223
       03:12 PM 3038665691    3' 03"     11    FAX TX   OK    223

                              TOTAL :    4M 46S  PAGES:  22
```

Suite 400
1601 Blake Street
Denver, CO 80202
303-572-1919
1-800-ARBITER
303-571-1115 (FAX)

Suite 300
90 South Cascade Avenue
Colorado Springs, CO 80903
719-473-8282
719-473-9542 (FAX)



### TELECOPIER TRANSMITTAL

TO:      Paula Greisen, Esq.      FAX: 303-298-9879
            Elizabeth McCann, Esq.
            James Quinn, Esq.       FAX: 303-866-5691

FROM:    Robbie Barr

DATE:     December 29, 2005

Number of pages (including cover): 12

If there are problems with this transmittal please contact:
At: 303-572-1919 or 800-272-4837
The information contained in this facsimile message and/or the document transmitted are arbiter-attorney privileged work-product or otherwise confidential and intended only for the use of the individual or entity above-named. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to the address listed above via the United States Postal service.