IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-019
Category II
Claimant: James T. Laugerude, #82332
Address of Claimant: 585 S. Alton Way, #D-12, Denver, CO 80247

_____

## FINAL ORDER OF SPECIAL MASTER
_____

    THIS MATTER comes before the Special Master on the claim of James T. Laugerude (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC), but has discharged his sentence. He is not in DOC custody at this time.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant is not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss. Claimant has responded to the motion. Further argument will be waived.

I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>       B. QUALIFIED INMATE
>       Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>       C. PERMANENT DISABILITY/IMPAIRMENT
>       A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>       The Settlement Agreement further provides, in part, as follows:
>
>       2. Permanent Hearing Impairments
>       Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>       3. Permanent Vision Impairment
>       Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>       4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>       Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>       2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>           1. Is the claimant a disabled individual who is a member of the class?
>           2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>           3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>           4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant was in DOC custody from December, 1993 to July 29, 1998. It is unclear how many DOC facilities Claimant was placed into during his time in custody. He began his time in custody at the Denver Reception and Diagnostic Center (DRDC) and then was moved to the Colorado Territorial Correctional Facility (CTCF). He then was transferred to the Fremont Correctional Facility (FCF). Finally, it appears that he was transferred to the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado.

Claimant alleged in his claim form that he had trouble getting out of bed, tying his shoes and moving around. He indicated that he had heart and respiratory problems. He alleged that he was not allowed to work and received poor medical care. Claimant checked only the mobility impairment box on the claim form.

In his supplemental form, Claimant indicated further that he had trouble getting clothes that fit him. He could not secure employment that would pay him a decent salary.

Defendants filed a motion to dismiss alleging that Claimant does not meet the criteria of the Settlement Agreement. Defendants argue that Claimant cannot prevail even if all of his allegations are accepted as true.

In his reply to the motion, Claimant states that he was extremely heavy and that he should have been retained at DRDC and then transferred to FCF. Claimant states that he had angina problems and did not receive appropriate care. Examination of all documents submitted by Claimant indicates that his medical problems related to his weight, heart and respiratory conditions.

## III.

Even though Defendants have filed a motion to dismiss, the Special Master must examine the allegations of Claimant in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Unless a claimant meets the first criteria, the other three questions do not need to be reached.

**Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined. Claimant has indicated that he is mobility impaired. He bases this on his weight and size, respiratory, and heart problems.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair and does not have a lower extremity disability as defined by the Settlement Agreement. Claimant indicated that he could walk and could climb stairs.

It is possible for an individual to be disabled and not be covered by the Settlement Agreement. Heart and respiratory problems are not covered by the Settlement Agreement, but may be the subject of a separate lawsuit under the ADA. The same is true for someone who is overweight. The allegations set forth by Claimant and accepted as true for purposes of the motion to dismiss make clear that he cannot prevail. Claimant is not part of the class. His remedy is to file a separate lawsuit in a court of competent jurisdiction.

IT IS HEREBY ORDERED that the Defendants' motion to dismiss is granted, as Claimant's allegations do not present a prima facie claim of mobility disability as set forth in the Remedial Plan; and

IT IS FURTHER ORDERED that the claim of James T. Laugerude is denied and dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 22, 2006.**

SIGNED this 21st day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master