_Original._

| | |
|---|---|
| Court Address:<br><br>US DISTRICT COURT<br>901--19th Street<br>~~Denver, co 80294~~<br><br>JESSE MONTEZ, ET AL<br>Plaintiff,<br><br>BILL OWENS, ET AL<br>v.<br><br>Defendant(s). | **FILED**<br>UNITED STATES DISTRICT COURT<br>DENVER, COLORADO<br><br>MAR 2 1 2006<br><br>GREGORY C. LANGHAM<br>CLERK<br><br>▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br><br>Jill Coit # 86530<br>Claim Number 03-129<br>P.O.BOX 392005 DWCF<br>Denver, Co 80239 | Case No.: 92N 870 and<br><br>Div/Ctrm: 96 N 343 |

RESPONSE TO FINAL ORDER OF SPECIAL MASTERS

_Judge Kane_

Comes Now Claimant pro se and does hereby present the following
to this Court. Claimant does not have a copy of her exhibits or
the numbers of each exhibit but she tried to construct which
exhibits applied from the list of Appendix of Exhibits but it
is not clear what the exhibits actually contain.

Claimant still has not heard the CD Rom transcripts so her
objections are not complete. Claimant ask this court for permission
to amend her Response to Final Order of Special Masters once
she is granted access to hear or see said transcripts. There
were at least 11 errors in the Final Order of Special Masters
that would influence the decisions of this Court. Judge Pringle
had just had eye surgery can could not see and that could account for
some of the errors. Claimant has had a stroke and has not gotten
her full cognitive abilities back. She has asked for appointment of
counsel or help since she can still not see from her stroke of
12-15-05 but has not heard from the Court on these motions.

Claimant was granted her motion for a copy of her exhibits
but the defendants have not given her a copy, they claim they
do not have a copy that only the court has one. I do not know
if this is correct. However this is the best I can due without
a transcript or exhbits.

Claimant has included sections A through K.
All number circled in RED are part of the Final Order of Special
Masters for easy reference for the court.

*Claim A*

**A.**

1.      Claimant presented proof as to the numerous areas and acts by which the Colorado Department of Corrections (DOC) breached the general ambit of the Montez Remedial Plan both pre and post plan. It is the Claimant's perception that DOC fail in objecting to her proofs as exhibit on page 7 (next to last paragraph almost at the end) Of Judge Pringles Final Order of Special Masters states: NO EVIDENCE WAS PRESENTED BY DEFENDANTS TO ESTABLISH THAT EITHER OF THE REQUESTED ACCOMMODATIONS WAS UNREASONABLE OR INAPPROPRIATE). In fact, no evidence was presented by defendants that any of claimants prior medical or personal accommodations were unreasonable or inappropriate.

2.      The Special Master Has awarded "Minimal Damages" predicated upon damages sustained due to DOC failure to provide proper shoes /inserts (*A) ;  however, the Special Master limits the award to Category III due to "dearth of damage evidence".

3.      Claimant Coit asserts that from the time of occurrence (fall) to present, her medical condition, with specificity to her mobility, has suffered accelerated deterioration. Said deterioration is directly attributed to the triggering fall and has been both prior and subsequent to the Montez Remedial Plan, thus severely aggravated and accelerated deterioration and pain in mobility issues. Further, while not addressed under the Montez Remedial Plan exacerbated, heightened by chronological ages is implicit in mobility issues. (The Montez Remedial Plan does address newly developed vision impairments on page 19 under Training Regarding Visions Impairment Issues, so it stands to reason under this plan that new developed and heightened by chronological age should also be considered.)

4. Because Claimant has suffered unwarranted, unabated pain, diminished range of motion and joint torque/ deterioration due to lack of medical appliance (shoes) provision for extended period (s) , she ask the reviewing  Judge upon review of additions/ resubmitted evidentiary exhibits to increase her Montez Remedial Plan rating and re-award  damages according.

*A   Claimant would be better suited to Class IV Damages due to severe physical injury"due to defendants failure to follow their own doctors orders and get Claimant orthopedic shoes and braces.

*Claim B*

**B.**

1. Claimant presents there is a conundrum established within the Final Order of the Special Master: that "hands" do not fall within the overall ambit of the Montez Remedial Plan.

2. Section III, (2) paragraphs 1 and 2 reference the term "Manual".
" Manual " is defined specifically:
(a) Manual, adj. "used or performed by hand>" Bryan A Gardner, Black's Law Dictionary, 7th edition, 1999.
(b) Manual adj., "Of, relating to, or involved the hands; also; worked by hand,-requiring or using physical skill and energy." Merriam –Webster Dictionary (paperback) 5th ed, 1997.
Therefore, hands use thereof, or inability to use  are, under inclusion of  law by Special Master-are implicated in the Montez Remedial Plan.

3. Claimant also presents that the term "mobility" as enunciated within the  Montez Remedial Plan is not self limiting to a "lower extremity mobility" (*2). " Mobility" as a term is a secondary derivation of "Mobile"- in itself, a simple synonym for "Moveable" as it related to "Motion ". " Motion" is not solely attributable to the lower extremities – "Range of Motion" is a determinative medical diagnosis pronounced for multiple body areas: leg, knee, arm, waist, *hands ,* shoulder , cervical and lumbar spine.

4.     Simple application of the above defining parameters includes "hands" and all co-relative body areas under the Montez Remedial Plan ambit as assessed by the Special Master.

5.    Supplemental argument has  basis within the Montez Remedial Plan, section XVI-a. …gloves for the hands ( *3);  DOC will make free weights available to any inmate with disabilities ( *4);  it also list under XVI: Health Care Appliances,…dental prostheses and breathing devices-clearly upper body extremities.( *5)
Further, "orthopedic appliances applies to "skeletal "deformity or treatment; upper extremities are as "skeletal" as lower.

6.     It is imperative that uses or loss of use for shoulder, arm, or hands is recognized as implicative upon mobility as applied in the Montez Remedial Plan, and as a whole as determinative.

7.     Claimant is equally foreclosed from service programs and benefits by upper deficit as by lower (which has to with hands and shoulder disabilities is severely  exacerbated).

8. Predicated upon application of the above, claimant ask the Judge Kane  to review and re-determine this particular parameter since Judge Pringle in his  Final Order of Special Master specifically mentions manual. *page 5 (2) (2nd par. next to last sentence and next to last paragraph - last line "... and perhaps performing manual tasks)"*

*Claimant prays hands are included in Montez.*

*Claim C*

C.

Claimant was denied working in the CWCF - GED class from May 1995 until October 2001 when she was transferred to DWCF where her disabilities could be accommodated. This period was well within the set Montez Remedial Plan. The GED employment was paid $2.00 per day, instead Claimant was put in position that paid .60 per day because CWCF refused to accommodate claimants inability to climb stairs. See Final Order of Special Master page 7 second paragraph ("...;and that her inability to teach was the result of the defendants' failure to provide a requested accommodation of allowing her to take an alternative rout to the classroom. No evidence was presented by defendants to establish that either of the requested accommodations was unreasonable or inappropriate."

Claimant did present inmate wage figures at the hearing held by Judge Pringle on October 31, 2005 but did not present a specified breakdown in the difference of the two jobs. Here is the breakdown.

The Montez Remedial Plan does not allow for damages but does provide for Claimant to be made whole.

. The lost wages Claimant sustained is as follows:

October        2001        (Claimant was sent to DWCF to accommodate her mobility
                                        Disabilities)
May            1995    (Claimant was denied position in GED program due to stairs)
------------------------
5 months        6 years   Claimant is making claims for only 6 years of different wages.

52 weeks times  5  days per week = 1560 days total
1560 days times $2.00 per day = $3,120.00
1560 days time $ .60 per day =  $ 936.00   CLAIMANT WAS PAID

        $3, 1120.00   —  $   936.00 = $ 2,184.00 lost wages due to discrimination in job placement.

Claimant prays this Court
will grant lost wages due to
descrimination in job placement.



Transfer from cwcf to dwcf because cwcf could not accommodate Claminat's disabilities. (oct 2001)

4. Claimant is currently under the jurisdiction of the Colorado Department of Corrections (CDOC). She entered CDOC custody in 1995. From 1995 to October of 2001, Claimant was housed at the Colorado Women's Correctional Facility (CWCF). Since October of 2001, she has been housed at the Denver Women's Correctional Facility (DWCF), except for a brief 10-day period, from March 19, 2004 to March 29, 2004, when she was transferred to CWCF.

## V.  PLACEMENT

Inmates who are currently in DOC and are moved to a designated facility because of a disability and pursuant to this agreement will have the same privileges and property rights as they possess in their current placement.

I had the following personal property when I transferred from CWCF (Colorado Women's Correctional Facility) to DWCF (Denver Women's Correctional Facility) in October 2001 because CWCF could not accommodate my disabilities/handicapped ness.

| Item | Price | |
|---|---|---|
| Alarm Clock (1) | $ 5.99 | |
| Base Ball Hat (1) | $ 5.19 | |
| Bathrobe (1) all cotton | $84.00 | |
| Bra's (4) all cotton | $41.56 | ($10.39 x 4 =41.56) |
| Briefs (4) all cotton | $12.88 | ($19.95  for 6 pair =$3.22  each) |
| Calculator (1) | $21.85 | |
| Coffee Maker (1) | $18.39 | |
| Combination Lock (1) | $5.80 | |
| Curing Iron (1) | $17.32 | |
| Gloves (1) | $ 1.17 | |
| Doo  Rag (1) | $ 2.65 | |
| Fan (1) | $22.60 | |
| Gloves (1) weight lifting | $21.72 | |
| Gym Shorts (1) all cotton | $11.87 | |
| Hair Dryer (1) | $24.39 | |
| Headband (1) | $  .83 | |
| Hot Pot (1) | $16.93 | |
| Lamp (1) | $13.19 | |
| Multi Outlet (1) | $13.32 | |
| Photo Album (1) | $ 2.36 | |
| Radio (1) | $16.39 | |
| Shower Shoes (1) | $2.80 | |
| Socks (4)  (all cotton) | $ 9.95  (  for 3 pair) | |
| Stereo Headphones (1) | $26.39 | |
| Sweatpants (1)  all cotton | $32.95 | |
| Sweatshirts (2)  all cotton | $66.90   ($34.95 X 2 ) = | |
| T-shirts (1) all cotton | $ 5.32 | |
| Thermal Drawer  (1) all cotton | $ 16.00 | |
| Thermal Shirt (2) all cotton | $ 16 x 2= 32. | |
| Towels (2) all cotton | $ 5.32 x = 10.64 | |
| Typewriter | $ 514.00 | |
| Wash Cloth (2) all cotton | $ 2.12 x 2=  4.24 | |
| File Box (1) | $ 5.99 | |
| Cable Cord (1) | $ 2.66 | |

Total $ 1,074.36 personal property taten from Clairmont on October 2001 when 20 efendants transferred her from CWCF to DWCF.

Issue one- transfer to DWCF from CWCF on October 2001

*Continue D*

Defendants in October 2001 moved Claimant from CWCF (not for the Mobility Impaired according to the Montez Remedial Plan) to Denver Women's Correctional Facility (DWCF) well within the Remedial Plan. Claimant lost all her medical issues, prescribed and ordered medical items i.e.: back braces, hand braces, knee braces, heating pad, cervical pillow, wedge pillow, medical items. Claimant also lost approximate ~~$000 dollars~~ $ 1,074 in personal property to include the following. Claimant wants defendants to reimburse or replace said items. Claimant had no control over where defendants placed Claimant nor the fact that Claimant was disabled and unable to be mobile at CWCF.

*wherefore*

```
See exhibits : RR "Personal property inventory; A; ;AA; BB; DD; HH;
II;  "00" 8; "00" 9; "00"13; "00" 16; "00" 21;  "00" 39; "00" 45;
"00"46; "00" 49; "00" 50;  ⬛; TT; UU; WW; XX; YY; BBB; FFF;

These exhibits were all within the  August 2003 or the two year compliance
and monitoring period or showed prior issues that were continually being
addressed. Defendants were not in compliance and were in violation of
RFemedial Plan.    and exhibit - see next page
```

I had the following medical appliances when I transferred from CWCF (Colorado Women's Correctional Facility) to DWCF (Denver Women's Correctional Facility) in October 2001 because CWCF could not accommodate my disabilities/handicapped ness.  *exhibit RR*
*Personal property*
*inventory 5-15-01*
*(dated)*

Ace Bandages (4)
Wrist Braces (3)
Ankle Brace (1)
Cervical Pillow (1)
Support Hose (3) pair Hanes
Tens Unit (1)  (Transcutaneous electrical stimulation)
Back Brace (2)
Knee Wraps/braces (2)
Medical Tennis Shoes (1)
Wedge Pillow (1)
Medical Mattress (1) Jewish Medallion

```
WHEREFORE Claimant ask this Court to Order defendants

to reimburse or replace said medical items and to reimburse
personal items lost in this medical move to DWCF.
Claimant was moved to DWCF from CWCF because CWCF could not
accommodate Claimant's medical disabilities at CWCF.
```

FILE: TGaOM

ADD TO LIST (NO NUMBERS):

4 ACE BANDAGES
3 WRIST BRACES
1 ANKLE BRACE
1 CERVICAL PILLOW
  MISC. JEWISH FOOD
1 MOIST HEAT PAD
1 TORAH/HOLY BOOK (JUDAISM)
3 PR. SUPPORT PANTY HOSE
  TENS UNIT

RELIGIONS ITEMS
----------------
    1 JEWISH SACRED ITEMS BOX

FACILITY SPECIFIC ITEMS
-----------------------
    1 ADDRESS BOOK (PMC) CANTEEN ITEM        1 CABLE CORD
    1 CABLE SPLITTER                         1 JEWISH MEDALLION
    1 MICROWAVE BOWL.                        1 MISC.CANTEEN/HYGIENE ITEMS.
    1 MISC. PAPERWORK                       24 SPONGE ROLLERS (PMC) CANTEEN ITEM
    1 WEIGHT LIFTING GLOVES

MEDICAL APPLIANCES
------------------
    1 BACK BRACE                             1 CANE
    2 KNEE WRAPS/BRACES                      1 MEDICAL MATTRESS
    1 MEDICAL TENNIS SHOES                   2 PRESCRIPTION EYE GLASSES/CONTACTS
    1 WEDGE PILLOW

9.    Claimant produced extensive testimony of documentary evidence in support of her contention that DWCF has willfully refused to provide her with a plethora of medical devices and treatment that was prescribed or recommended by various health care professionals.  For example, Claimant had a back brace while she was incarcerated at CWCF.  The brace was taken away in October of 2001 and has not been given back to her.  Claimant did not receive orthopedic shoes until 2003, although her doctors requested them on numerous occasions.  She has not been given acceptable shoes or orthotics, and clothing that is consistent with various allergies that she has to fabric. Claimant has been denied a heating pad.  In 2001, Claimant's hand braces were taken away, and were were not returned until 2003.  While at CWCF, Claimant was provided with a dresser, a low table, an adjustable roller chair, egg shell mattress and a night stand. None of these were provided to her at DWCF.  Cervical pillows and ice packs which were provided to Claimant at CWCF have not been made available at DWCF.  Claimant was given Celebrex, an anti-inflammatory from 1998 to 2001 but this prescription medication has been denied to her since arriving at DWCF.  A special typewriter was

See next page of Final Order of Special Master Page 4 Top for continuation of Number 9.

Continue SEction ☒ Issue two- transfer to CWCF from DWCF onMarch 19, 2004 within the two year monitor and complianced period.

Claimant should never have been moved to CWCF under any circumstances. See exhibit ___ where Warden Wallace told the head ☒ Rabbi _____ that Claimant was moved because they do not like to keep an inmate at one facility to long.   Säe exhibit   FFF of Appendix of Exhibits

Defendants did not have a proper van to move Claimant when CWCF refused to take Claimant due to her disabilities. She was moved to CTCF (the infirmary of CTCF) .Since the transport van's step was broken the transportation guards had to lift Claimant by her upper arms since both her hands were in hand braces and she had a full restraint left leg braces. At which point both of her shoulder were injured as evidenced by exhibit _____ showing torn rotator cuffs. After tearing both shoulders at CWCF when the van arrived at CTCF Claimant was instructed to jump form the van since the transportation officers did not want to chance tearing anything else. Claimant jumped and the transportation officer failed to catch her thus causing her to land on her left leg that was in the full leg restraint brace. To make matters worse Claimant was not technically a medical admission to CTCF but merely an "administrative hold" according to Cathie Holst (AIC coordinator) so claimant could not receive medical attention or pain medication. DWCF in their haste to ship Claimant did not send her medications. Montez does not cover retaliation claims but clearly Claimant was being punished/retaliated against for ~discrim~ inated some reason thus why shipped to a facility that originally placed Claimant at DWCF due to her disabilities. Do Defendants claim Claimant suddenly got cured of all her disabilities, no evidence was entered into the record or the hearing of any such "cure"

Claimant lost the approximately ~200~ dollars in personal property and hobby craft items that were denied Claimant. This is again a clear violation of IV (V) Placement and Claimant's right to retain personal property when moved to another facility.

According to Judge Pringle there are no damages under the Remedial Plan however Claimant wishes to assert a claim for future damages. These acts of denial or omission were done intentionally and are a violation under the Remedial Plan.   ( Shoulder, Leg, hip + Knee)

Claimant ask this Court to order Defendants to reimburse Claimant for personal property lost in this ~illegal~ move. Claimant wishes to point out that Claimant had already been deemed disabled as evidence by Accommodation Resolution dated 3-22-04 by Holst. exhibit  K  of Apendix of Ehibits.
( on 3-19-04 )

No amount of money can compensate Claimant for the pain and suffering she ~has~ for the toren rotator cuffs damaged by pulling her up the van with no step. Claimant does ask that this Court order defendants to accomodate her with medical appliances that will aid her shoulders or enable her to function and cary on daily living activities.

E.

Claimant while housed at CWCF had obtained medical and security clearance for a "light touch IBM typewriter" Staff at DWCF confiscated and forced disposal of said appliance. The typewriter was prescribed due to Claimant's deteriorating manual abilities; said manual ability has worsened with time and denial of hand braces for that condition. Where replacement by DOC of said typewriter/appliance is mandated under the Montez Remedial Plan. See section XVI, C.

Technology makes available a be product, at lesser cost: a laptop computer. This satisfies both manual mobility and vision diminishment (Ms. Coit has since assessment and Judge Pringle's hearing has suffered at least on stroke (TIA) with vision loss/impairment, she can not see out of her left eye and must have print larger to read). Under the Montez Plan page ___(*19) future vision impairment is allowed. Claimant's right to communicate (free speech) under USCA 1 and Montez Remedial Plan page 11, section X Reasonable Accommodations B. Reasonable accommodations shall be provided to inmates with disabilities to ensure effective communication with staff, and where applicable, other inmates and the public. (*11) In a prison setting freedom of speech is primary exercised through the written word.

There is no cognizable safety, security or penological abridgment inherent to allowing disabled inmate prescribed personal possessions of a lap top computer (without modem or wi-fi) and accompanying printer voice activated software. The entire cost for such a package is less than $600.00 which is equivalent to the previously prescribed and possessed typewriter. Further, Claimant does not presume that DOC should be burdened by the cost of this appliance, and presents she will absorb the cost . The Montez Remedial Plan allows for personal appliances see page 21 section XVI Health Care Appliances F. Maintenance and Repair of Wheelchairs "… When a personal wheelchair is submitted for repair…"

Montez   Remedial Plan copy

## XVII. LIBRARY EQUIPMENT

Electronic equipment, such as audio equipment, tape recorders, and computers will be available for use and when appropriate, to be checked out, in the general library and other areas where appropriate for use by inmates with disabilities. Each facility will be responsible for training staff and inmates with disabilities in the proper use of the equipment. Each facility shall provide a list of such equipment available to inmates with disabilities to the AIC and submit a protocol for the use of this equipment to be approved by the AIC. There will be a protocol, approved by the AIC, that will be used for each facility. The librarians shall maintain a list of resources regarding available accommodations which can be provided, such as books-on-tape and inter-library loan programs.

*See exhibit number "00"39 Invoice from Batchelor Business Machines dated 8-28-00" well within the time allowed under Montez.

Claimant has just learned that defendants provide in cell computers for inmates in AS in Sterling facility which is also a class 5 facility just as DWCF is.

Claimant prays this Court will order defendants to allow a computer to accommodate her disabilities in her cell.

Under Conclusion of Law on the Final Order of special master Naming Major life Activities" include functions "such as caring for oneself, performing manual task, walking , seeing, hearing, speaking, breathing, leaning and working."  29 C.F. R # 163.2 (h) (2) (i). The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility hearing, vision disabilities and those with disabilities due to diabetes. It does not say that the mobility disability must be limited to only the lower half of the body. It states disability must be permanent physical disability/ impairments which is not expected to improve within six months. Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities. This statement makes hand covered under the Montez Remedial Plan because their definition of Major Life activity included functions such as performing manual tasks. Manual insinuates use of hands. Claimant has a deformed right hand and no use of her thumb. Anytime she bends her wrist she is in severe pain and her joints swell. She has severe arthritis in her hands and wrist which prevent her from caring for herself and performing daily life activities such as bathing, putting on clothing, and normal daily activities. Diabetics can also lose the use of their hands and it would be unfair and unjust to not include hands as a diabetic medical issue.

"The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class. Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks." By the Special Master's own words, Claimant is disabled, and this should include her hands because most manual tasks are preformed with hands or machinery that performs the duties the hands would. The Special Master ruled that hands were not included in the Montez Remedial Plan. Claimant disagrees.

Claimant feels that since the Special Master included "performing manual tasks" under number 2, it should also include the hands. On page 6 he states. "Claimant has also presented testimony regarding shoulder, arm and hand problems and allergies to clothing. The Special Master need not consider whether these conditions might constitute a disability under the ADA because they are not disabilities covered by the Montez Remedial Plan. Consequently, the Special Master finds and concludes that the Montez Remedial Plan claim procedures to not apply to Claimant's shoulder, arm, hand and allergy conditions. Further any allegations of failure to accommodate these conditions so that Coit could participate in various programs also do not fall within the ambit of the Remedial Plan."

Claimant disagrees that in compliance with the spirit of the law under the Montez Remedial Plan, hands, arms and shoulders should not be included in the Mobility disability. Manual task can be limited or not able to accomplish due to lack of mobility of the hands, arms and shoulders. It is almost impossible to be able to bath and take care of your hygiene needs without the use of your hands, arms and shoulders. Claimant presented exhibits of her hand disability and inability to use her fingers, bend her wrist, lift her shoulders above her head or bend her arm more than 45 degrees.  These impairments substantially limit's her from performing major life activities, work or manual tasks as set forth in the ADA, The Rehabilitation Act and the Montez Remedial Plan.

Claimant argues that the limited mobility of her hands, arms and shoulders should be included in the Montez Remedial Plan.

Claimant also disagrees with the statement that "The Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen." "The Remedial Plan allows for future damages on page 28 XXII. "Inmates who have ongoing claims for damages may submit claims for future damagers.  So his Statement is incorrect and flawed.

Claimant claims her damages for denial of medial appliances; orthopedic shoes to correct leg length discrepancy and foot problems, braces and medical treatment are ongoing, continual and permanent. That the damages caused by denying said appliances, medical treatment ,shoes and braces causes future and further physical damages. The Montez Remedial Plan was to make right the disability discrimination and abuses suffered by defendants actions or omissions

The Montez Remedial Plan clearly outlines the procedures defendants are to follow in treating disabled inmates medical problems and issues. It list 7 days to order medical appliances. This was to insure that defendants did not delay or refuse to obey medical orders/ prescriptions or medical care, appliances, braces, etc.

Claimant medical disabilities clearly fell prior to the August 27, 2003 cut off date. They included "substantially limited" mobility of the feet, hip, knees, back, hands, arms and shoulders. They are permanent therefore they continued throughout the two year monitoring period. Without feet or knee mobility walking is severely limited. Without hip and back mobility movement of the lower extremities is severely limited. Without hand, arm and shoulder mobility caring for one or more of the major life activities are severely impaired.

Claimant's claims of disabilities/impairments and injuries all occurred prior to August 27, 2003 the cut off date for Montez Remedial Plan. Claimant wish to point out that testimony and exhibits presented were about issues of discrimination prior to cut off date or were within the two year monitoring and compliance period.  The only new injury/disability presented was the shoulder injury that Claimant incurred when she was punished by moving her back to CWCF (not for the mobility impaired) for nine days on March 19, 2004. It was defendants who

presented the court with exhibits on this move. These exhibits were not within the Montez Remedial Plan time frame but the Special Masters allowed the exhibits so Claimant merely defended herself since it was still within the monitoring time.

Under II Findings of Facts of Final Order of Special Masters

13

Section H

According to page 2 , first paragraph last line, "**The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.**" The Remedial Plan clearly allows damages. It also allows this court to enforce the Montez Remedial Plan when defendants are in violation and this is what Claimant is asking this court to enforce through an Order.

Claimant has been placed in Category 3 when in fact Claimant should be in Category IV , Damage due to severe physical injuries , due to defendants violation in  the Montez Remedial Plan when they denied following their own physicians written orders and instructions. By denying claimant the shoes that would correct her one and one half in leg length discrepancy they caused severe pain and the uneven wearing of her joints in her knee, hips and spine which all  limit her mobility.

Claimant submitted numerous medial documents during her 15 hour deposition showing that her mobility disability hinged on her ability to walk, bend, climb stairs, work , do manual tasks, perform major life activities and caring for herself. Even a non medical person would recognize the need to correct a one and one half inch leg length difference and the damage not correcting it would do to the entire body alignment which in turn would cause severe pain and suffering and limit mobility.

There are at least 15 significant  errors/or misleading statements  in the Findings of Fact beginning with number five. Claimant submitted document-ation listed as exhibit _____ which shows that Claimant has had a stair restriction in place since 1998 due to knees, hip and feet problems. Judge Pringle had just had eye surgery and could not see well which might  explain the errors/misinterpretations . He list that Claimant has had a stair restriction of 6 to 8 stairs since 1998. DWCF medical Dr. Razzaghi put a 6 to 8 stair restrict per day on Claimant in 2004 well beyond the Remedial Plan. That order  was revoked and returned to a "no stair restriction" a few months later .

This court needs to look at the statement, " This testimony was disputed by a CDOC witness and according to Dr. Shames, by Claimant's medical records." In the first place CDOC witness, LT Brenda Traxler committed perjury when she testified that there were only 10 stairs to her office which Claimant was forced to climb even though she had a no stair restriction in place during this period. There are _20_ stairs in unit 2 from the first floor to the second floor.

Number 7. "Claimant also suffers from Carpel Tunnel Syndrome and sustained injuries to her hand and shoulder which made it more difficult for her to utilize handrails while attempting to walk." Accordingly the interpretation that the Remedial Plan does not include anything but the lower body extremities is erroneous, hands/arms are needed to utilize handrails while walking. Under Conclusion of Law first paragraph states ," The legal standards applicable to this claim are derived from **three** sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.s. C. # 794,et seq; and (c) the Americans with Disability Act (ADA) 42 U.S. C. # 12101,et seq. The hands, arms and shoulders are recognized disabilities under the ADA. The fact that Claimant has a deformed right hand and suffers from debilitating degenerative arthritis in both her hands which prevents her from performing manual task and the ability to perform major life activities qualifies her under this plan.

Number 8. Claimant was declared by Social Security as totally disabled prior to incarceration, this is not a disputed fact.

Defendants have no regard or intention of obeying the Montez Remedial Plan as clearly demonstrated by the Deposition of October 2005. It is now ~~February~~ 2006 and the violations still have not been corrected. That is why Claimant as this court to issue an order of compliance with the Remedial Plan regarding these issues.

Number 9. "Claimant produced extensive testimony of documentary evidence of her contention that DWCF has willfully refused to provide he with a plethora of medical devices and treatment that was prescribed or recommended by various health care professional. This is a clear violation of Remedial Plan under XVI Health Care Appliances B. "No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entering into DOC system or was properly obtained while in DOC custody..." And D. "Health Care Appliances deemed necessary shall be ordered by medical no more than 7 working days after it is deemed necessary shall be ordered by medial no more than 7 working days after it is determine the inmate is in need of the appliance and the appliance shall be provided as expeditiously as possible."
It goes on to say, "For example, Claimant had a back brace while she was incarcerated at CWCF. The braces was taken away in October of 2001 and has not been given back to her. "Claimant submitted to the court proof of her having been issued a back brace during the Remedial Plan period as well as current medical orders to her to have a back brace which has yet to be ordered. Exhibits

"Claimant did not receive orthopedic shoes until 2003, although her doctors requested them on numerous occasions." Claimant submit numerous exhibits of podiatrist stating that Claimants shoes were to small. See exhibits I, XX, YY, ZZ, "OO"45, "OO"46, "OO"47, "OO"48, "OO"49,                              etc for prior August 2003 and for after Remedial Plan implementation BBB, FFF to show the extent Claimant tried to get shoes that fit and did not have holes in them. Denver Health head of Podiatry wrote the order himself issues orders for DOC to get me custom made Orthopedic shoes to accommodate my leg lengths discrepancy and plantar fibroma. Plantar fibroma was caused by wearing shoes that did not fit ie. To small. These conditions contributed to Claimants mobility disability.

"Claimant has been denied a heating pad." Violation of XVI B and D.

Number 9. second to last sentence, "Cervical pillows and ice packs which were provide to Claimant at CWCF have not been made available at DWCF. This is in clear violation of XVI Health Care Appliances, C.( page 20) "Possession of Health Care Appliances…No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entering into DOC system or was properly obtained while in DOC custody…". Defendants know of this in the Remedial Plan but have done nothing to correct the violation that was brought forth in October 2005 and it is February 2006 and it still has not been corrected

Number 9, last complete  sentence. "Claimant was given Celebrex, an anti-inflammatory from 1998 to 2001 but this prescription medication has been denied to her since her arrival at DWCF." This is incorrect, Claimant was on Celebrex until 2003  until she filed a grievance under Montez and ADA. Claimants medication was then taken away. Claimant recognized that ADA claims do not specifically cover damages but the Remedial Plan does allow for damages. While it does not mention retaliation and Claimant is not brining up retaliation since it is not covered but does point out a chain of events that could be interpreted as having the same affect. Limiting Claimants ability to walk and  perform major life activities by denying medication that would help is covered…..

Defendants have disobeyed the Remedial Plan under XVI page 21, D. "Health care appliances deemed necessary shall be ordered by medical no more than 7 working days after it is determined the inmates is in need of the appliance and the appliances shall be provided as expeditiously as possible." Claimant can not function due to the inflammation of her joints in her knee, hands, feet and hip. Celebrex allowed her increased mobility since it reduced the inflammation in her joints. There is no legitimate penological reason to deny Claimant medication that has been ordered , approved and given by DOC to improve mobility. This is not any different than denying a diabetic their medication.

16

Number 9 page 3 & 4 list, " A special typewriter was available at CWCF, but Claimant asserts that since her arrival and DWCF she has not had the use of a special typewriter." This is partial correct except for the fact that Claimant's family had to purchase the special typewriter at a cost of $ 514.⁰⁰? Claimant was denied this typewriter when she was sent to DWCF in October 2001, clearly within the Remedial Plan time frame.  According to XVI Health Care Appliances, C.( page 20) "Possession of Health Care Appliances…No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entering into DOC system or was properly obtained while in DOC custody…".

Number 9 last sentence, " Claimant requested a Tens Unit to assist in alleviating pain but it has not been provided. Exhibit R R shows that Claimant had a Tens Unit while at CWCF but was denied the Tens Unit upon transfer to DWCF in October 2001, within the Remedial Plan time frame.  "XVI Health Care Appliances, C.( page 20) "Possession of Health Care Appliances…No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entering into DOC system or was properly obtained while in DOC custody…". A Tens Unit was bought and paid for by DOC insurance carrier as evidence by exhibit _____.

Number 10, "Claimant testified that she has difficulty hearing, particularly when there background noise. She used hearing aids in 1995 but, since 1995, she has not been provide with hearing aids. " **Claimant came into DOC in 1995 with hearing aids.** Again defendants violated the Remedial Plan XVI C.

It does not matter that Claimant was is ᴺᴼᵀ permanently deaf as required by the Remedial Plan, Claimant has a hearing impairment so sever that she must rely on hearing aids to hear when there is back ground noise. The Remedial Plan states "with aids does not enable them either to communicate effectively  or …". ( page 5, 2. Permanent Hearing Impairments. Claimant can not <u>communicate effective</u> when there is background noise and she does not have hearing aids.  Claimant was punished because she could not hear a direct order due to fact that she did not have her hearing aids so could not hear with background noise.

Claimant claims she qualifies under the Remedial Plan because without hearing aids she can not communicate effectively  when there is back ground noise without hearing aids and she was denied her hearing aids for over 7 years.

Defendants refuse to give Claimant hearing aid Batteries that are not dead! Can't use hearing aid Without Batteries)

Continue 10. Defendants and DWCF continue to refuse to provide Claimant with hearing aid batteries. She was informed in February 2006, that her hearing aid is broken and it could take 6 to 8 months to get it seen. Defendants still have not complied with the Remedial Plan and are in violation when they refuse to provide Claimant with hearing aid batteries that are not defective. There is no where in the prison where background noise is not an issue. Claimant can not hear on the telephones due to background noise. Request that hoods be placed on some phones so hearing impaired inmates can hear.

Number 11. On October 31, 2005 during the Montez Hearing Claimant did not meet the requirements for Montez sight impaired. However on 12-15-05 she had a TIA (stroke) that left her unable to see out of her left eye and she has sight loss in both eyes now. Since Defendants have not met the two year monitoring and compliance requirements the Montez Remedial Plan should still be in place. Claimant needs a way to read books that have small print such as law books in the law library. She requests a scanner that has a memory so that it can be downloaded onto a computer that has enlargement capabilities. Under Montez computers are allowed and Claimant does qualify for one since she has a deformed hand and severe arthritis in both wrist that prevent her from using the typewriters sold on canteen due to swelling and pain. Page 22 XVII Library Equipment. "Electronic equipment such as audio equipment, tape recorders, and computers will be available for use and when appropriate for use by inmates with disabilities."

Page 22 XVIII Institution Procedures B. 1. "….Accommodations such as large print, computer assisted devices, audio tapes and Braille will be made available on a case by case basis. Claimant is willing to bore the cost of the computer and scanner so she does not burden defendants in providing for her disability needs regarding her hands and sight.

Defendants provide Inmates in Sterling with computers in A.S. for school and game use so it is not a security risk since DWCF is also a class 5 facility.  Under ADA, the Rehabilitation Act and the Montez  Remedial Plan hands are a covered disability.

Under Montez page 1 Policy, "No qualified inmate with a disability, as defined in Title 42 of the United States Code, Section 12102 shall, because of that disability, be excluded from participation in or denied the benefits of services, programs or activities of the DOC or be subjected to discrimination. Under page 2. B. Qualified Inmate, "Inmate with a permanent physical disability/impairment which substantially limits his or her ability to perform a major life activity." C. Permanent Disability/impairment," A condition which is not expected to improve within six months. Page 4 IV Placement, "Certain facilities will be

designated for inmates with disabilities requiring special placement. Inmates with diabetes, **permanent mobility** ,hearing or vision impairments and **other disabilities or compound conditions** severe enough to require special housing and programs will be assigned to placement in these designat4ed facilities.

And page 15 and 16 Extension of time, "… Appeals that qualify for an expedited appeal may include but are not limited to the following: 1. Providing appliances or aids that are essential to performing major life activities." Page 20 XVI Health Care Appliances A. Definition: insert here.



All of the above support the premise that hand are included in the Remedial Plan when they are required to perform major life activities such as bathing, eating, communication through writing, cleaning and household chores, etc.

Number 12. Claimant is not allowed to file grievances as allowed by the Remedial Plan thus she is deprived of her constitutional rights to address grievances and access to the courts. Defendants have set down in Administrative Regulation 850-04 Grievances hurdles that are beyond Claimants ability to obey since medical must sign off on an ADA /Montez grievance before it can be filed. Medical refuses to answer my grievance nor are they processed. See Case Manager's Linda Fischer's testimony in the hearing on 10-31-05 in which she states Claimant can not submit more than one grievance per month and she is not even allowed one due to confusion on rules. This is clearly an act of retaliation since it serves no legitimate Penological interest or undue burden to deny Claimant the right to file grievances. Denying Claimant hearing aid batteries and orthotic shoes falls within this denial.

Number 13. Claimant still maintains that defendants are not meeting her handicapped/disability needs regarding her cell Claimant needs a hospital bed so that she can get out of bed without pain and suffering. Current beds are to low and do not provide support needed to accommodate hand, back and shoulder disabilities.

Number 14. Still true, defendants refuse to provide orthotic shoes to correct leg length discrepancy as ordered by DWCR physicians and specialist. This causes further damage to hip, spine, back and knees as well as pain and suffering.

Number 17. Defendants refuse to allow tools and machines that would enable Claimant to do the hobby crafts allowed by non disabled. Claimant request permission for knitting and embroidery machine as well as permission to do all hobby crafts allowed under DOC Administrative Regulation_____. *Claimant prays for the above hobbycraft items*
Claimant hands and wrist prevent her from any mobility except side to side motion. Twisting her wrist causes pain and swelling of her hands and wrist. Claimant can not even peal an orange, write legibly, turn a key, or floss her teeth without pain.

Number 18 is totally incorrect. Claimant was moved from cell 120 in unit 2 which met her medical and mental health requirements for warmth (and sun shine SAD) due to severe arthritis and DJD in her hands, back, neck and hips to a so called handicapped cell that only has a strobe blue light and 150 decibel alarm that does not go off for hours after the fire alarm has been cleared. Claimant has a seizure disorder which is aggravated by the flashing blue light. At no time should Claimant be in a cell that has this type of light. Claimant request that she be returned to her prior cell and that she be allowed to have the same accommodations furniture and property wise that she had at CWCF as allowed under the Montez Remedial Plan page 4 middle of page," Inmates who are currently in DOC and are moved to a designated facility because of a disability and pursuant to this agreement will have the same privileges and property rights as they possess in their current placement." Claimant needs minor changes such as a lower desk/table, adjustable chair, means to store her legal and craft box, dresser and night table that she had at CWCF medical unit. None of these are costly and were not disputed by defendants in the disability hearing before Judge Pringle on 10-31-05. See page _3_. *Final Order*

Section

19

The threshold question is whether plaintiff's impairments during the period in question constituted a disability within the meaning of the ADA and Montez Remedial Plan. As used in the ADA, the term "disability" means: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individaul in question (2) a record of such impairment; or (3) the state of being regarded as having such an impairment. 42 U.S.C. 12102 (2) CF Vande Zande V State of Wisconsin Dept of Administration 44 F 3d 538, 541 (7th cir 1995). Plaintiff argues she had a "disability" under each of these three proggs at the time in question.

With respect to the first prong, it is clear that plaintiff had a physical impairment during the period relevant to this lawsuit. However not every physical impairment constitutes a disabilty. Only an impairment that "substantially limits" a "major life activity" of the individual triggers the protection of the ADA. Howard v Navistar International Transportation Corp 904 F Supp 922, 927 citing Roth 57 F 3d at 1454, Hammon v Runyon  51 F 3d 721, 726 (7th cir 1995). The statute's inclusion of the words "subatantially" and "major" makes it clear that the impairment in question must be a significant one. Byrne 979 F 2d at 564 but the precise range of impairments to which the ADA applies cannot otherwise be glened from its text.

In regulations promulgated under the ADA , the EEOC has stated that "major life activity" means  "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing , speaking, breathing, learning, and working" 29 C.F.R. 1630.2(i). The list is given is non-exhaustive. The EEOC has referred to major life activities as  "basic activities that the average person in the general population can perform with little or no difficulty." Id. This too is an open-eneded guidelinem but the use of the words "function" and  "basic" in the  interpertive pronouncement does indicate that --in order to be "major " th elife activity in question must genereally b eamong those that are a necessary part of the everyday lives of most people or are otherwise "basic functions" (EEOC). Thus most people need to bathe, dress, eat, walk, see, hear, breathe, etc. on a daily basis, making these activities "major" and within the sweep of 42 U.S.C. 12102 (2).

law from Kriskovic V Wal-Mart Stores, inc, 948 F. Supp 1355

In addition to being "major" the activity affected by an ADA plaintfff must be "substantially" limited by the impairment. the ADA regualtions state that " substantially limits " means that which renders the indiv- dual either "unable to perform a major life activity that the adverage person in the general population can perform" or "significantly restricted in the duration, manner or condition under which an individual can peform a particular major life activity as compared to...the adverage person in the general population." (quoting 29 C.F.R. 1630.2 (i). That the latter part of this definition uses "significantly restricted" to define "substantially limited" is unhelpful, but it seems clear that an ADA plaintiff must genereally show that her impairment in a given activity arguably places her outside the range of abilities in that activity that one finds among non -disabled people in the general population. See Fed Reg, at 35m 741 (the tern 'adverage person' is not intneded to imply a precise mathematical 'average'.)

In the present case , plaintiff claims that she is substantially impaired in working, writing, walking, standing, lifting, pulling, pushing, bending & climbing stairs. Plaintiff further claims that working, walking, climbing stairs , bending, pushing,pulling and squating are "major life activities". Plaintiff asserts further that, even if she was not substantially impaired in any one of these impairments but that in combination of these multiple impairments man and did in her case limit major life activities.

That plaintiff came into CDOC with a leg length discrepancy that is a life long impairment. It affects how she walks. It also affects her hips, knees, back and spine. DOC failure to provide Orhtopedic shoes to correct this problem exerbated the other physial impairments in the hip, back, knees and spine. Plaintiff has had a "no stair" restiction in place since 1998 according to DOC records. Only in 2004 well out of the Montez Remedial Plain did one DOC doctor lift the total"No stair"restriction to include a 60 stairs a day restriction. It was only in place a few month until the "no stair' restriction was again reinstated.

SECTION J. OBJECTION TO DEFENDANTS EXHIBITS.

According to recorded dated 9-27-05 of Appendix of Exhibits
The exhibits listed as L were not within the time period of the Remedial
Plan August 2003. Claimant objects to exhibits on those grounds but
more importantly to the contents since they are false. Claimant has
affidavits from inmates that prove there was no table in Claimaaints
hospital cellat CTCF where Warden James Abbott claims Claimant walked
over to. There has never been a table in any of the cells Claimant has
been in in any of her 4 CTCF visits to Territorial. For warden Abbott
to outright lie Should be considered perjury. Claimant would like to
reserve the right to persue this perjury claim. This is the Warden and
this court should expect true testimony from this man. This is the same
Warden Claimant named in her sexual abuse law suit for failure to
protect and harassment.

Claimant is only claiming that defendants exhbits are not within time
frame because they claim Claimant's aren't. Actually defendannts
exhibits help Claimants claims since she was denitedd medical
appliances and  care and should never have been sent to CWCF since
it was not for the mobility impaired and Claimant was in a full
restraint leg brace. Claimants "no stair" restriction that had been
in place since 1995 and 20000was only changed for 6 to 8 stairs per day.
Claimant  was forced to climb over 100 stairs per day just to eat and
take medications/ice. nO choice.

WHEREFORE Claimant prays this  Court amend its ruling and find as follows:

1. That Claimant met the treshold requirement of Montez Vis -A- Vis Mobility and  with direct consideration to wheelchair mobility requires use of hands, shoulders, arms, which are extremities and impact the ability to permorm  major life activities+functions.

2. Claimant has also presented arguements regarding losses and violations under Montez and ask this court to rule in her favor awarding what ever consideration as it sees fit.

All damages awared to Claimant are to be mailed directly to Mr. Robert Berns of the Aleph Institute 9540 Collins  Avenue, P.O. Box 547127, Surfside, Florida 33154-7127.Only reimbursement for property lost is to be mailed to Claimant , if any.

Respectfully,

Jill Coit # 86530
P.O.  392005
Denver, Co 80239
Claim number  )3-129


Certificate of Mailing

I swear I placed in the US mail postage pre paid to the following.
Us Disgtrict Court
Judge  PRingle
Mr. Wiens -attorney General

This 16 day of March, 2006

COLORADO DEPARTMENT OF CORRECTIONS
CAÑON CITY, COLORADO
TERRITORIAL CORRECTIONAL FACILITY

## PODIATRY CLINIC

PATIENT: JILL COIT
DOC#: 86530

DATE: 01-27-99

This patient is seen in the clinic today 7 weeks status post plantar fibroma excision left foot. The patient is having minimal to no pain presently. She is very pleased with her progress.

My examination today reveals slight swelling at the incision site, but otherwise well healing wound. There is no sign of infection or untoward effects from the procedure. I note no recurrent plantar fibroma.

I do want to follow this patient. I also noted that the patient's boots that she is wearing today are far too small for her feet. The patient normally wears 8 to 8-1/2 size shoe. The shoe she has on today is probably a size 7-1/2, although it is very difficult to find the sizing. I recommended therefore that the patient be fit shoe again with boots that fit her feet.

James Gremillion, D.P.M.

D: 01-27-99
T: 01-28-99

2/3/99

RECEIVED
JAN 29 1999