

cc: Mary Lou Judiscak

#74199
#AO1186

PODIATRY CLINIC   8/4/99   AO118867

S. Patient is seen today indicating that her fibroma excision site has healed very well. She has no pain in the left foot whatsoever. She is very pleased with her progress. She however indicates that she was granted a request for a heel lift 3/4" in the left shoe last year.   She also indicates that she was supposed to be given some orthotic devices last year.   I reviewed the notes and find no reference to this whatsoever. Patient does have a slight leg length discrepancy.

Dx: f/u

P. Recommend a 1/4" lift left. This needs to be approved by Colorado Access. I examined the surgical site and note that it is totally healed with no sign of fibroma. Also note the patient's shoes, she is wearing a very short Rockport —

James Gremillion, DPM
8/4/99
Ja/ma

Mary Lou Judiscak
8/10/99

COIT, JILL
74126  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
6-11-44
12-7-98   TA2   5F6
MED/SRG   F/CMCF 86530   RE

Colorado Mental Health Institute at Pueblo.

Ward

# Anthony A. DeCesaro

STEP III GRIEVANCE OFFICER
2862 S. Circle Drive, Suite 140
Colorado Springs, CO 80906-4122

March 4, 2004

RE: Grievance #C-DW03/04-0032

Dear Ms. Jill Coit #86530:

I have reviewed your Step III grievance that you filed with regard to boots.

In investigation into this matter I have found that the state issue boots are not able to be altered. You have a medical permit to wear tennis shoes at all times in the facility except when at visiting or leaving the facility, during a transport. Abilities Unlimited are not able to alter the state issue boots, because of their design. Because of the limited time you are required to wear the state issue boots, limited to visiting where you are not typically standing on your feet for any length of time, the discomfort appears to be minor. Because of the inability to alter the boots and the fact that you have the medical order for tennis shoes allowing them to be worn at all times except during visits, I cannot recommend any relief in this matter.

Please except my apology for the late response, as I had some difficulty in contacting certain individuals during this investigation.

It is your burden to prove your allegations stated in your step III grievance. I have reviewed the facts of this case and determined that you did not meet this burden. There was no corroborating evidence to provide proof of your allegations.

Your request for relief is denied. This is the final administrative response in this matter and you have exhausted your administrative remedies.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance that you filed: Informal Resolution Attempt, Step I Grievance, Step II Grievance, and Step III Grievance.

Sincerely,

Anthony A. DeCesaro
Step III Grievance Officer

Cc: working file
    Tom Kolle

## Colorado Department of Corrections
## Consultation Report Form

**Appt#: 63911**

| | | | |
|---|---|---|---|
| DOC #: 86530   Name: COIT, JILL | | Facility: DW | Date Initiated: 06/29/2005 |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/11/1944 |
| Level: 1 MONTH | Tele-Med: NO   Provider: RAZZAGHI, MITRA A , MD | | SDD: 03/26/3004 |
| Request: DME | Auth #: | Number of Visits:   1 | PED: 03/26/3004 |
| Location: DEN-WOMENS | Appt Dt: | Specialist: | DH #: 2098863 |

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION:  This a request for replacement of worn out bilateral wrist braces ( for severe carpal tunnel syndrome and deformity due to severe DJD) as well as replacement of worn out shoe lift ( due to 1.5 inch leg length discrepancy), Both DMEs are more than 1 year old and have been approved multiple times before.
thank you.

2. MILLIMAN CARE GUIDELINES - CRITERIA MET: yes
3. URGENCY OF NEED V. REMAINING SENTENCE: life time sentence
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: great morbidity and functional disability
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: n/a
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: most conservative way
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THEPATIENT'S COOPERATION IN TREATMENT: yes
8. PAIN COMPLAINTS/BEHAVIOR: none
9. RISK AND/OR COST BENEFIT: no risk

| Provider Signature: | *Electronically Signed* | Date: 06/29/2005  06:08 |
|---|---|---|
| Provider Name: | RAZZAGHI, MITRA A , MD | m11204 |

**Specialist's Subjective, Objective, Assessment Plan:**

_____

_____

_____

_____

_____

_____

_____

_____

Please do not discuss dates of the follow-up appointments with the offender.
Insurance: Access Correctional Care   Phone: (888) 380-3726   FAX: (877) 232-5976
Please send all dictated reports to: Clinical Services - Dept of Corrections - 2862 S Circle Dr, Colorado Springs, CO 80906
Or FAX to your Scheduler: Arlene Castro - 719 226 4566

ב"ה



**THE ALEPH INSTITUTE**
JOSEPH & STERNA GUTNICK NATIONAL HEADQUARTERS
9540 Collins Avenue • Miami, Florida 33154-7127
305.864.5553 • Fax: 305.864.5675 • www.alephinstitute.org

Robert H. Burns
*Director of Prisoner Services*



RECEIVED
DEPT. OF CORRECTIONS
APR 0 5 2004
OFFICE OF
LEGAL SERVICES

March 31, 2004

Anthony A. DeCesaro
Step III Grievance Officer
2862 South Circle Drive
Suite 140
Colorado Springs, Colorado 80906-4122

Chairman / Founder
Rabbi Sholom D. Lipskar

President
Lloyd S. Rubin

Executive Vice President
Rabbi Aaron Lipskar

Director of Prison and
Military Programs
Rabbi Menachem M. Katz

Director of Religious Education
Moshe N. Barouk

Director of Family Programs
Raquel Hainne

Programs Coordinator
Elisheva Tucker

Director of Prisoner Services
Robert H. Burns

Prisoner Services Coordinator
Leah Solomon

Administrative Legal Assistant
Deborah Botbol

Correspondence Coordinator
Skip A. Alevy

Re: Jill Coit, #86530 - Denver Women's Correctional Facility
Grievance #C-DW03-0032 - Defective boots

Dear Mr. DeCesaro:

By way of introduction, The Aleph Institute is the largest not-for-profit charitable religious organization dedicated to giving spiritual guidance and societal help to Jewish inmates in the federal and all state prison systems and their families. We have been doing this in excess of past 22 years, and have had an excellent working relationship with prison authorities, including the Colorado Department of Corrections.

I am sorry to have to take you away from your busy schedule, but a matter of great concern has arisen and I am advised that you are the official with the jurisdiction and authority to rectify it. In order to help you refresh your memory, I have enclosed a copy of your response to Jill Coit's grievance filed over boots that are causing her great harm when she has to wear them.

From the content of your letter it appears to be quite obvious that you also view her boots as being defective for her use. Altering of the boots was apparently considered, but you found out that due to their design they could not be altered. Jill also advises that the boots are two sizes too small and that there are holes in them. In addition to being too small, the heel portion was found to be too wide and that, instead of being women's shoes they were shoes for men to wear. See, doctor's report which is also enclosed herein.

The fact that she has a medical pass to wear sneakers most of the time should illustrate the need for correct boots regardless of the time limitation that she may be wearing them, not the other way around. Whenever she wears the boots she is in pain and suffers therefrom.

All Jill wants is woman's shoes that fit her, and she is entitled to this. I cannot fathom the reluctance on the part of the D.O.C. to provide boots that she can wear without the attendant pain and suffering, not to mention that the boots are apparently old and worn out.

In light of all of the foregoing, please reevaluate your previous determination and see that she gets boots that will fit her.

Take care and be well.

Very truly yours,

Robert H. Burns

Enclosures (2)

COLORADO DEPARTMENT OF CORRECTIONS

REQUEST FOR EXCEPTION
TO
STANDARD OF CARE

DATE  10-21-96

INMATE  JILL COIT          DOC# 85530
(Name)

FACILITY:  CWCF          PED:

I REQUEST THAT THE ABOVE INMATE BE GRANTED AN EXCEPTION TO THE
CURRENT STANDARD OF CARE.  HIS/HER MEDICAL CONDITION IS  L/S
Corset c Plastic Insert ordered by Ortho-
pedist

I FEEL THAT THE CURRENT STANDARD OF CARE DOES NOT APPLY IN THIS
CASE BECAUSE  On Going Back & Cervical Prob W
the L/S Corset is appropriate and a
Jackson Cervical Pillow is appropriate for
neck prob.

AND REQUEST THE FOLLOWING TREATMENT AS AN ALTERNATIVE
L/S Corset c Plastic Insert
Jackson Cervical Pillow

_____
PHYSICIAN FILING REQUEST

DATE  10-21-96

APPROVED ☐          DENIED ☐

_____
SIGNATURE

_____
DATE

CS.MED.03 (04/92)

# AMBULATORY HEALTH RECORD

| APPOINTMENT | | Facility: | DW | Living Unit: | DW/UNIT2 |
|---|---|---|---|---|---|
| page 1 of 1 | | | | | |

**86530   COIT, JILL**

| | | | |
|---|---|---|---|
| Temperature: | 95.5 | Pulse: | 95 | Weight: | 156 |

**SUBJECTIVE**

Active Medication(s): ASA ENTERIC - 325 MG; BENADRYL - () MG; MIDRIN - 65/100/325; PREDNISONE - 5 MG; PREMARIN - 0.9 MG; ZANTAC - 150 MG

| | | |
|---|---|---|
| Temperature: | 95.5 | Pulse: 95 | Weight: 156 |
| Respiratory: | | BP: 130 / 77 |

Vitals Taken: PULSE OXSYM=97.00;

pt here for incresed pain in back and LE. states 2 weeks ago was assulted by couple inmate form the back. has not reported the assult. no bruising in the back, "was little yellow at first". no body sheet was done. c/o exacerbation of pain since. requests help with the pain.
also c/o sciatic pain from mid buttocks to knee. requests MRI of the back since the X-Ra did not show mis-allignment. denies loss of bowel or bladder control or weakness, but has tingling and numbness whci resolves when pain comes.

**OBJECTIVE**

No significant change in back exam. no ecchymosis. subjective pain in right upper back as well as lower. muscle spasm as before lumbar area.

**ASSESSMENT**

LOW BACK PAIN
ARTHRITIS
SCIATIC PAIN
EST PT VISIT HIGH COMPLEX

discussed in detail the circumstances where getting the MRI actually is helpful.  Discussed that the Lumbar Corset has been ordered and hopefully will help with LBP. pt agreeable to a trial of low dose steroid for anti-inflammation effect for one week.
Also informed pt that I could not verify the assult by exam.

**PLANS / ORDERS**

Allergies: PENICILLIN G; ALLERGIC TO PENICILLIN

prednisone 5 mg qd for 7 days

may order/wear cotton pants/shorts indefinitely

Medical Work Restrictions: Added: SQUATTING; NO BENDING;

| Datetime: | Providers: | RAZZAGHI, MITRA A |
|---|---|---|
| 08/31/2004 16:33 | | |

| PA/NP | PHYSICIAN | NURSE | DateTime 8/31/4 1806 |
|---|---|---|---|

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.  SGY

NAME  Coit, Jibe

OFFENDER NO.  86530

LIVING UNIT  DnLC

SUBJECTIVE:

OBJECTIVE:  Temp. _____  Pulse _____  Resp. _____  B/P _____

ASSESSMENT:

DATE  8/5/04

TIME  1250

PROBLEM 1 2
PLAN / ORDERS

Mr. Rice / Pa. V.
① Please order lumbar
corset
②messagle to pt.

SIGNATURE:
NURSE:

P.E:

PHYSICIAN:
Rx NO.

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

**PRICARE CODE NO.**

**NAME:** Cert, Jill

**OFFENDER NO.:** 86530

**DATE:** 8-3-04

**LIVING UNIT**

**TIME:** 0900

**SUBJECTIVE:**
Nees Shoes Controlible
Cert 1200 - 1500
White Medical
Shoes

**OBJECTIVE:** Temp. ___ Pulse ___ Resp. ___ BP ___ / ___

Recieved Custom Medical Shoes

At Receipted

**ASSESSMENT:**
Delivered Custom Medical
Shoes. May need New
Pair each year

**PROBLEM** 1  2   **PLAN / ORDERS**

**SIGNATURE:**
**NURSE:**
**P.E.:**
**PHYSICIAN:**
**Rx NO.:**

31201

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

# DEPARTMENT OF CORRECTIONS
## AMBULATORY HEALTH RECORD

APPOINTMENT
Page 1 of 1

Ordered By: RAZZAGHI, MITRA
Printed at: 12/10/2004 14:28:30
Encounter#: 913329

| 86530 | COIT, JILL | Facility: | DW | LU: | DW/UNIT2 | 1 | B | 10 | R |

**SUBJECTIVE**

Temperature: _____   Pulse: 90   Weight: 161
Respiratory: _____   BP: 127 / 79
Vitals Taken: PULSE OXSYM=97.00;

### PLANS / ORDERS
Allergies: PENICILLIN G; ALLERGIC TO PENICILLIN

please provide a wheelchair to be used as needed x 1yr

**ASSESSMENT**

OSTEOARTHROSIS, GEN
KNEE PAIN
SHOULDER PAIN
EST PT VISIT HIGH COMPLEX

Datetime:          Providers: RAZZAGHI, MITRA A
12/10/2004 00:00

PA/NP _____
Datetime: 12/10/2004 00:00

PHYSICIAN
Provider: 5494

NURSE
DateTime

**DEPARTMENT OF CORRECTIONS**
**AMBULATORY HEALTH RECORD**

Printed By: HARRELSON, JAMIE
Printed at: 02/08/2006 09:10:16
Encounter#: 1143849

| 86530 | COIT, JILL | Facility: DW   LU: DW/UNIT2 | 1 | D | 126 | L |

**SUBJECTIVE**
Active Medication(s): ASA ENTERIC - 325 MG; BENADRYL - 50 MG; MIDRIN - 65/100/325; XYLOCAINE JELLY - 2%

Temperature: 97.7     Pulse: 94     Weight: 163

Respiratory:          BP: 110 / 84

Vitals Taken: PULSE OXSYM=95.00;

**PLANS / ORDERS**

Allergies: PENICILLIN G

advised the patient of her carotid doppler studies.

**OBJECTIVE**

Due to the patients physical limitations the patients needs to have her legal papers waist high and also needs assistance w/ bathing and other activities of daily activities.

**ASSESSMENT**

Datetime:              Providers: HARRELSON, JAMIE
02/08/2006 08:56

PA/NP/RD _____   PHYSICIAN _____   NURSE _____
Datetime: 02/08/2006 08:56        Provider: 5053        DateTime _____

DC Form 78 (2/93) / Old. No. 263
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRI/CARE CODE NO. | NAME: Cox, Jill | OFFENDER NO. 86530 | LIVING UNIT

DATE 1-13-04 | TIME 0900

SUBJECTIVE:
Reviewed additional Prescription for Custom made shoes with 1½" sole buildup

+ Custom Made Orthotics for severe

OBJECTIVE:   Temp.____ Pulse____ Resp.____ B/P____/____

plantar fascitis. Evaluated existing shoes and found large holes in both from wear. Evaluated State boot and found they were too short. Evaluated Medical Tennis shoes and found they were too wide at the heel, they were

ASSESSMENT:
Meus shoes - feel Custom made shoe Appropriate

PROBLEM 1 2
PLAN / ORDERS:
Will submit cost to Colorado Access. Once approved will return for treatment

SIGNATURE:
NURSE:
P.E.
Dr Mohr, will note +

PHYSICIAN:
Rx NO.
[signature]

CUIT, JILL                              #86530       91      S-7              CWCF

**ORTHOPEDIC CLINIC (7-26-95):**  This is an interesting lady complaining of left knee pain.  She is doing a life sentence.  She is now 51 years old.  She says her knee swells on occasion.  She enjoys her job and has occasional medial joint line pain, but if she elevates, she is able to manage satisfactorily.  She had a right total hip replacement done in 1993 after she was apparently repeatedly kicked in an assault.  She does well with the right hip and has intermittent pain and swelling in the left knee.  She also had a scope on the right knee for similar symptoms.

**PAST MEDICAL HISTORY:**  Remarkable for high cholesterol.  She has a history of CA of the colon 1978.  Circulation is good.  She has had seizures twice a month.

**ALLERGIES:**  MS, Demerol, Darvon, Darvocet, Percodan

**MEDICATIONS:**  Premarin, Naprosyn.

**EXAMINATION:**  She is a healthy appearing woman.  She does have some tenderness over the medial joint, left knee.  There is no effusion.  Range of motion 0-130.  Patello-femoral joint nontender.  Some pain with patellofemoral compression.  Knee stable.  Negative Lachman, negative posterior drawer, stable to medial and lateral stress at 0 and 30°.  Good pulses, normal sensation, normal motor function.  No pain with range of motion, right hip.

**X-RAYS:**  Show a right total hip in excellent position.  X-rays left knee, minor DJD.

**IMPRESSION:**  Medial compartment DJD.  Possible medial meniscus tear.  Minimal mechanical symptoms at this time.

**RECOMMENDATIONS:**  Limit activity, soft soled shoes, ice and elevate.  Continue to work on range of motion, use anti-inflammatories.  If she continues with mechanical symptoms, would reschedule an appointment for consideration of arthroscopy.

Jacob Patterson, M. D.
Orthopedic Consultant

T: 7-28-95/mg

8/1/95
M



RECEIVED
JUL 31 1995

CQIT, JILL                          86530                                    C

ORTHOPAEDIC CLINIC (12-15-99)
She returns for follow-up today still complaining of multiple joint complaints, knees, hips.
She says the pain is severe.  She cries.  She can't go up stairs.  She claims to do her exerci
ses on a regular basis.  She says she has been on eight anti-inflammatories and has had
complications with all of these.  Leg length discrepancy was measured by Rick today.  She
is short on the right by 1-1/2 inch and she actually has a lift on the left side instead
of the right.

EXAMINATION:  She has no effusion.  I have still be unable to document an effusion in the
left knee.  No pain with range of motion.  She has some diffuse tenderness.  She is otherwise
stable.  She has considerable atrophy.

MRI does show damage to the posterior aspect of the medial meniscus but this could be post-
surgical.  I do not think she has an acute or new injury.

PLAN:  Continue an exercise program.  I would agree with a trial of Celebrex if indeed she
has had complications with the usual anti-inflammatories.  She tells us the rheumatologist
saw her and concurs.  I really have nothing else to offer Jill.  I do not think she has any
surgical problems at this point.

Jacob Patterson, M.D.
Orthopaedic Consultant

T: 12-16-99/mp



This type of shower shoe is adjustable and has padding that could be cut away plus a way to keep the shoe on

| PRICARE CODE NO. | NAME Coit, Jill | INMATE NO. 86530 | LIVING UNIT CWCF |
|---|---|---|---|

**SUBJECTIVE:**

C/o PAIN Ⓡ KNEE & Ⓛ hip. Difficult to Amb.

DATE 7-14-00   TIME 1800

PROBLEM 1 2
PLAN / ORDERS

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P ___ / ___

Swelling noted Ⓡ KNEE. Growth on bottom of Ⓛ Foot causing her to walk on side of Foot. Ⓣ hip pain

① Cane use prn until seen by PA or Dr.

SIGNATURE:
NURSE: _____ RN

P.E.:

PHYSICIAN:
Rx NO.

**ASSESSMENT:**

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

STATE OF COLORADO
DEPARTMENT OF CORRECTIONS
CONSULTATION REPORT FORM

OFFENDER INFORMATION:                                           Date: 11/04/2003

   Name: COIT, JILL              DOC #: 86530        Facility: DEN-WOMENS

   DOB: 06/11/1944       SSN: 434622141     Gender: FEMALE   PED: 03/26/3004

   Insurance: COLORADO ACCESS FOR COLORADO DEPARTMENT OF CORRECTIONS

   Authorization #: 0108150390083              # Visits Authorized:      2

   Appointment is to be scheduled with Tele-medicine?: NO


PROVIDER'S CONSULT TO SPECIALIST:

   Hospital: DENVER HEALTH    Clinic: PT            Specialist:

   Hospital #: _____    Appt: _____    Priority: 3  ONE WEEK

   Diagnosis/Health Complaint:
      PT ORDERED BY PODIATRY FOR PT, US AND IONOPHORESIS FOR PLANTAR FASCITIS
      AND HEEL SPUR SYNDROME

   Provider Signature: _____   Facility Physician: _____

SPECIALIST'S SUBJECTIVE, OBJECTIVE, ASSESSMENT, PLAN:

   S- (R) heel pain (Heel spur / Plantar fascitis)
   O- Heel pain (R) leg length 1½" shortening (L)
   A- Chronic (R) heel pain
   P- PT requires orthotics for heel spur (R)
      PT requires custom made shoe with
                                        ½ IN (L)
                                        sole
                                        Build up

* PLEASE COPY CLINIC NOTES AND ATTACH TO THIS CONSULT
* DO NOT DISCUSS DATES OF FOLLOW-UP APPOINTMENTS WITH THE OFFENDER.
* RETURN THIS COMPLETED FORM TO THE SECURITY OFFICER ESCORTING THE OFFENDER.
* PLEASE SEND ALL DICTATED REPORTS TO:

   CTCF Clinical Services   PO Box 1010   Canon City, CO  81212
      Ph: 719-269-4099    Fax: 719-269-4092

Specialist: _____   Name: _____  11/14/03
            (Signature)              (Print)          (Date)

                              11/18/05
                                 MAR

   to Arlene
   .axed / Mailed                          _____ / _____

      NOV 18 2003                          NOV ⅃ 2003

STATE OF COLORADO
DEPARTMENT OF CORRECTIONS
CONSULTATION REPORT FORM

OFFENDER INFORMATION:                                   Date: 11/18/2003

   Name: COIT, JILL              DOC #: 86530       Facility: DEN-WOMENS

   DOB: 06/11/1944     SSN: 434622141     Gender: FEMALE   PED: 03/26/3004

   Insurance:  COLORADO ACCESS FOR COLORADO DEPARTMENT OF CORRECTIONS

   Authorization #: 0909190390216            # Visits Authorized:      2

   Appointment is to be scheduled with Tele-medicine?: NO


PROVIDER'S CONSULT TO SPECIALIST:

   Hospital: ONSITE CLIN-NOR  Clinic: ABILITIES UNLIM  Specialist:

   Hospital #: _____     Appt: _____    Priority: 4  TWO MONTHS

   Diagnosis/Health Complaint:
      1.5 INCH BUILT UP SHOE NEEDED FOR LEFT LEG.4 CM LENGTH INEQUALITY. PT
      ALSO HAS PLANTAR FASCITIS AND HEEL SPUR SYNDROME.NEEDS CUSTOM MADE
      ORTHOTICS PER PODIATRY

   Provider Signature: _____     Facility Physician: _Rmyl_, Mr_

SPECIALIST'S SUBJECTIVE, OBJECTIVE, ASSESSMENT, PLAN:

   _____

   _____

   _____

   _____

   _____


* PLEASE COPY CLINIC NOTES AND ATTACH TO THIS CONSULT.
* DO NOT DISCUSS DATES OF FOLLOW-UP APPOINTMENTS WITH THE OFFENDER.
* RETURN THIS COMPLETED FORM TO THE SECURITY OFFICER ESCORTING THE OFFENDER.
* PLEASE SEND ALL DICTATED REPORTS TO:

   CTCF Clinical Services    PO Box 1010    Canon City, CO  81212
         Ph: 719-269-4089    Fax: 719-269-4092


Specialist: _____    Name: _____    _____
                  (Signature)                       (Print)                (Date)


Faxed / Mailed

NOV 18 2003

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO

NAME _Cait Jell_

OFFENDER NO. _86530_

LIVING UNIT _WC_

**SUBJECTIVE**

DATE _3/28/00_

TIME

PROBLEM 1  2

PLAN / ORDERS

**OBJECTIVE** Temp _____ Pulse _____ Resp _____ B/P ___/___

_States nausea prevents using her pain meds_

√ May have Phenergan supp 25 mg q 8 hr x 2

SIGNATURE:
NURSE: _C Coleman RN 3-28-00_

P.E.: 1700

PHYSICIAN:
Rx NO.

**ASSESSMENT**

---

PRICARE CODE NO

NAME _Cait Jill_

OFFENDER NO. _86530_

LIVING UNIT _CWCF_

**SUBJECTIVE**

DATE _3-27-00_

TIME

PROBLEM 1  2

PLAN / ORDERS

**OBJECTIVE** Temp _____ Pulse _____ Resp _____ B/P ___/___

X _Soft corsett brace given by DH + H ortho MD for mild OA, Q hip, c chr. pain._

1- Soft corsett brace for PRN use, please (already provided by DH + H ortho MD) - 8 mo

SIGNATURE:
NURSE: _C Coleman RN 3-27-00_

P.E.: _NM Carter ANP 1300_

PHYSICIAN:
Rx NO.

**ASSESSMENT**

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET

31201

3/28/00 DW Coleman

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | OFFENDER NO. | LIVING UNIT |
|---|---|---|---|

SUBJECTIVE:

DATE

TIME

PROBLEM 1 2 _____
PLAN / ORDERS

OBJECTIVE:  Temp. _____ Pulse _____ Resp. _____ B/P ___

Void

SIGNATURE:
NURSE:

P.E.:

ASSESSMENT:

PHYSICIAN:
Rx NO.

---

| PRICARE CODE NO. | NAME Session #8 | OFFENDER NO. | LIVING UNIT |
|---|---|---|---|
| | Coit, Jill | 86530 | WC |

SUBJECTIVE: ↓ energy + discomfort ~ 3-4 days
NT163 post tx - then ↓ discomfort for
several days. Sts OMT does help
wants to continue. Today no c/o
visual problems. Sciatica "" joints.
P lot w/ emotional stress.

DATE 1-12-01
TIME 1015

PROBLEM 1 2
PLAN / ORDERS  OMT MFR, ME, CS, Cranial

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P 126/82

6 areas

Alert, walking erect c evidence of
discomfort. Focus on outside stressors
during session — ventilating.
Piriformis R > L restriction
Lumbar PV R7↓ ""
C aut Shld tenderness c attach. of biceps
upper traps c chronic restrict
Rhomboids c upper right tender
Stasis STR pronounced today

√ fluids / Rest 24"
√ Rtn / wks

ASSESSMENT:
SD T L/S
held well tol, agg ___ restriction as
adjustment occurs.

SIGNATURE:
NURSE: [signature] RN 1-12-01 1340

P.E.:

PHYSICIAN: [signature]
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.     NAME: Coit Jill     OFFENDER NO. 86530     LIVING UNIT: WC

SUBJECTIVE:

as below
Also wants Cane back.
Heel lift correction
discrepancy on (L)

DATE: 4/13/01     TIME: 1140

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___

PROBLEM / PLAN / ORDERS

1. Ace for (L) Knee X 3 days
2. Schedule appt. re hip assess. (5/6 4-20)
3. Cane X 1 wk only.

SIGNATURE:
NURSE: _Karen Komorken RN 4-13-01 1145_

P.E.: _____

PHYSICIAN: _____
Rx NO.

ASSESSMENT:
# Suspect (L) hip & Knee pain assoc ē heel lift adjustment

---

PRICARE CODE NO.     NAME: Coit, Jill     OFFENDER NO. 86530     LIVING UNIT: CWCF

SUBJECTIVE: Kite C/o swelling (L) Knee.
C/o pain on (L) Knee ē Sciatic nerve
going up the side of the leg + up
the back. (R) Knee also hurts now.

DATE: 4/11/01     TIME: 1515

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___

(R) Knee – 15½"
(L) Knee – 16" – Appears swollen
No bruising noted.

PROBLEM / PLAN / ORDERS

SIGNATURE:
NURSE: 4/11/01 1515 Noted _____

P.E.: _____

PHYSICIAN: _____
Rx NO.

ASSESSMENT: Swollen (L) Knee.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

ACCESS CORRECTIONAL CARE AUTHORIZATION

DATE: March 3, 2004                                    CONFIDENTIAL

PROVIDER: Abilities Unlimited  Inc
ATTENTION: ROBYN
ADDRESS: 245 Parkside Dr
Colorado Spgs, CO  80910-3131

OFFENDER NAME: Ms. Jill Coit
OFFENDER ID: 86530
AUTHORIZATION #: 01-010604-902-95
VALID: 01/06/04            THROUGH 07/04/04

We have reviewed this request and determined the services meet the plan's medical necessity guidelines and are a covered benefit.

SERVICES REQUESTED: PURCHASE OF CUSTOM ORTHOTICS AND SHOES WITH BUILDUP.

Note:  This authorization will be voided if the offender is released from the custody of the Colorado Department of Corrections or Division of Youth Corrections.

Please call Clinical Support Services at 1-888-380-3726 or 720-744-5120 if you have any questions or need to request an extension.

Thank you for participating in our prior authorization program.

Sincerely,

Access Correctional Care, Clinical Support Services

cc: DWCF MEDICAL

Case No. 1:92-cv-00870-CMA-MEH Document 4694-9 filed 12/20/2006 USDC Colorado pg 21 of 42

## Consultation Report Form

**Appt#:** 70122

**REQUESTED**

| | | |
|---|---|---|
| **DOC #:** 86530 | **Name:** COIT, JILL | **Facility:** DW/UNIT2 | **Date Initiated:** 12/20/2 |

**Gender:** FEMALE      **Security:** MINIMUM RESTRICTIVE      **SSN:** 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      **DOB:** 06/11/19

**Level:** 1-2 WEEKS      **Tele-Med:** NO      **Provider:** HARRELSON, JAMIE , NP      **SDD:** 03/26/30

**Request:** OPHTHALMOLOGY      **Auth #:**      **Number of Visits:** 1      **PED:** 03/26/30

**Location:** DENVER HEALTH      **Appt Dt:**      **Specialist:**      **DH #:** 2098863

### Diagnosis and requested evaluation or care:

1. CLINICAL INFORMATION: 62 Y/O FEMALE W/ CONT. DECREASED VISION IN HER LT. EYE SINCE EPISODE ON 12/15/05 FOR WHICH SHE WAS SEEN IN THE ED FOR LT. ARM WEAKNESS, LT. EYE VISON LOSS, AND DIFF TALKING. PER THE E.D. THE PT. NEEDS TO F/U W/ OPTH. IN 5 DAYS.SHE STATES SHE WAS SEEN BY OPTH. IN THE ED, BUT NO NOTE WAS RECIEVED.
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: Y
3. URGENCY OF NEED V. REMAINING SENTENCE: Y
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: Y
5. PRE-EXISTINGCONDITION PRIOR TO INCARCERATION: N
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: NA
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT: N
8. PAIN COMPLAINTS/BEHAVIOR: SEE ABOVE.
9. RISK AND/ORCOST BENEFIT:

| ICD | | CPT | |
|---|---|---|---|
| 719.41 | PAIN IN JOINT, SHOULDER REGION | 99215 | OFC/OUTPT VISIT E&M ESTAB MOD-HI SEVRTY 40 |
| 346.90 | UNSPEC MIGRAINE WITHOUT MENTION INTRACT MIG | | |
| 722.6 | DEGENERATION INTERVERTEBRAL DISC SITE UNSPE | | |
| 716.59 | UNSPEC POLYARTHROPATHY/POLYARTHRIT MX SITE | | |

| | | |
|---|---|---|
| **Provider Signature:** | *Electronically Signed* | **Date:** 12/20/2005 17:48 |
| **Provider Name:** | HARRELSON, JAMIE , NP | j10710 |

Please do not discuss dates of the follow-up appointments with the offender.
Insurance: Physician Health Partners  Phone: (866) 362-1374  FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 2862 S Circle Dr, Colorado Springs, CO 80906
Or FAX to your Scheduler @ 719 226 4566



Podiatric Medicine/ Foot Surgery

2928 W. 10th St.  Greeley, CO 80634  (970) 351-8820

## *PODIATRIC PROGRESS NOTE*

PATIENT NAME:  Jill Coit DOC#* DOB * AUTH # *
DATE: 9/10/02

**[SUBJECTIVE].**  Patient is requesting the continuation of the scenario regarding shoes and insoles that has been occurring for a number of years.  There was previous recommendations in the chart from Dr. Gremillion that she receive two pairs of sneakers which she currently purchased herself and had a pair of insoles that were shipped in from a health food store and apparently was taking care of heel pain.  She also had the shoes modified by Abilities Unlimited in order to accommodate the limb length discrepancy.  She claims that her left leg is 1 1/4 inches shorter than the right and she wears a " brace" in her shoe.  She has recently arrived here from Canyon City and one pair shoes was removed from her possession and would like to get this back.  She currently has pain in the left foot in the arch, very close to the heel region. This area previously underwent surgery to remove the planter fibroma and she feels that it has returned.  This has made it difficult for her to walk and very uncomfortable at work in the kitchen.  She mentions that she also has degenerative joint disease in her back and insufficiency situation that causes swelling in the feet leading her to need for support hose.  She reportedly wears a size 8 shoe.

**[OBJECTIVE].**  There is pain with palpation around the area of the insertion of the planter fascia and the calcaneus on the left foot.  It is very difficult to determine whether a nodule could be palpated deep within this tissue, but it seemed as though there was something that was indurated which was palpable in this area.  She clearly has a limb length discrepancy causing the foot to mostly remain in equinus and the toes curl in attempt to stabilize her foot in this position.  Her shoes have been modified such that the sole of the left shoe is elevated to accommodate the limb length discrepancy.  She did not presently have a pair of insoles in the shoe, but the shoes were of excellent quality.

**[IMPRESSION/DISCUSSION].**  It seems reasonable that she continue to have  good quality shoes modified on a regular basis as previously, but two pairs of shoes clearly violate correctional policy and will have to be discontinued.  It is uncertain whether she indeed has a planter fibroma or merely a case of plantar fasciitis.

**[TREATMENT PLAN].**  A note was written in the chart for her to maintain the same style of shoe ordered from the outside, modified by Abilities Unlimited, but only one pair.  A pair of supportive insoles were dispensed today to avoid having to order from the outside.  Also she will require medical boots to accommodate her work and the condition of her foot.

*What are
medical boots*

*Howard Krieger*

**Howard Krieger, DPM   HBK/drd**

Sec. 3.x-req.m.
(Rev. 3-94)

## COLORADO DEPARTMENT OF CORRECTIONS
## X-RAY REQUEST/REPORT

REQ. RECEIVED _4-2-01_
REPORT RECEIVED _4/6/01_
REPORT SIGNED _4/6/01_
REPORT OUT _____

HISTORY: (INFORMATIVE CLINICAL HISTORY REQUIRED BY RADIOLOGIST)

_boxes of plastic spoons fell on head, 3/31/01 - C/o back + neck pain + dizziness since then. Hx C-spine stenosis_

| UPPER EXTREMITIES | | | LOWER EXTREMITIES | | | THORAX |
|---|---|---|---|---|---|---|
| ( ) Scapula | ( ) L | ( ) R | ( ) Pelvis | | | ( ) Chest PA, Lat |
| ( ) Clavicle | ( ) L | ( ) R | ( ) Hip | ( ) L | ( ) R | ( ) Ribs   ( ) L   ( ) R |
| ( ) Acro/Clav Jt | ( ) L | ( ) R | ( ) Femur | ( ) L | ( ) R | ( ) Sternum |
| ( ) Shoulder | ( ) L | ( ) R | ( ) Knee | ( ) L | ( ) R | ( ) Sternoclavicular |
| West Point | | | ( ) Lower Leg | ( ) L | ( ) R | ABDOMEN |
| ( ) Humerus | ( ) L | ( ) R | ( ) Ankle | ( ) L | ( ) R | ( ) Supine (KUB) |
| ( ) Elbow | ( ) L | ( ) R | | | | ( ) Supine & Upright |
| ( ) Forearm | ( ) L | ( ) R | ( ) Calcaneus (Heel) | | | ( ) L   ( ) R |
| ( ) Wrist | ( ) L | ( ) R | ( ) Foot | ( ) L | ( ) R | |
| ( ) Hand | ( ) L | ( ) R | ( ) Toes | ( ) L | ( ) R   1st ( )   2nd ( )   3rd ( )   4th ( )   5th ( ) | |
| ( ) Fingers | ( ) L | ( ) R | 1st ( )   2nd ( )   3rd ( )   4th ( )   5th ( ) | | | |

CRANIAL BONE
( ) General Skull Study
( ) G Facial bones study
( ) Orbit          ( ) L    ( ) R
( ) Mandible
( ) Tempromandibular Jt.
( ) Nasal Bone
( ) Sinuses, Upright waters
( ) Other _____

SPINE
(X) Cervical, Ap, Lat, Obliq
( ) Thoracic study, Ap, Lat
(X) Lumbar Ap, Lat, Obliq
(X) Sacrum - Coccyx

CONTRAST STUDIES
( ) Esophagram
( ) Upper GI
( ) Barium enema
( ) with air     ( ) without air
( ) Oral Cholecystogram
( ) IV Pyelogram

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RADIOGRAPHIC FINDINGS:

**JILL COIT**              **#86530**              **CWCF**

**CERVICAL SPINE:**   Spurs are present between C4-5 and C5-6. The facets are sclerotic.

**IMPRESSION:**   Degenerative disc disease.

**LUMBAR SPINE:**   The L3-4, L4-5 and L5-S1 disc spaces are narrowed.

**IMPRESSION:**   Degenerative disc disease.

**SACRUM AND COCCYX:**   Normal.

Lance Pysher, M.D.
Radiologist

INMATE NAME   Dict: 04-04-01   _JILL COIT_
Requested by   Resp: 04/04/01
Date of Request   Typ: 04-04-01 msb
Facility Code   _WC (CWCF)_

31206   Distr:   White – Medical Record      Canary – X-Ray      Pink – RAD

DOC# _86530_   D.O.B. _6-11-44_
X-Ray Tech: _CJ_
Date Taken: _4-2-01_

Sent to Doctor for review and signature.
Date: _4-04-01_   Initials: _____



COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

PRICARE CODE NO. 349Y

NAME   Co.t J.ll

OFFENDER NO. 76530

DATE 3/5/04   TIME 11 05   LIVING UNIT DWCF

SUBJECTIVE:

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P _____

needs new boots
for orthotics

ASSESSMENT:

PROBLEM 1 2

PLAN / ORDERS

Please ref't boots

NURSE:
SIGNATURE:   Juelica RN

P.E.:

PHYSICIAN:

Rx NO.

ST. THOMAS MORE HOSPITAL

86530
CWCF

NAME:            COIT, JILL
ROOM:            OP
MEDICAL RECORD #:    78983
DATE OF BIRTH:      06/11/1944
DOCTOR:            AUTREY/DOC
REASON FOR EXAM:    MILD TO MOD DJD
X-RAY NUMBER:       56746
DATE OF SERVICE:    02/01/2000

---

CERVICAL SPINE MRI:

COPY

Technique: T1, gradient echo, and fast spin echo T2-weighted sagittal images obtained through the cervical spine along with 4 mm thick gradient echo T2-weighted axial images.

Findings:  The spine is normal at C2-3 and C3-4.

At C4-5 there is the suggestion of a disc bulge and uncinate proliferation resulting in a moderate left foraminal stenosis.  The right foramen is patent and there is no spinal stenosis present.  At C5-6, there is bilateral uncinate proliferation, worse on the right than the left resulting in a moderate right and a mild left foraminal stenosis.  There is also minimal narrowing of the spinal canal without cord compression. C6-7 and C7-T1 are within normal limits.

IMPRESSION:  Degenerative disc disease at C4-5 and C5-6 with a left foraminal stenosis at C4-5 and a right foraminal stenosis at C5-6.  Minimal spinal stenosis without cord compression at C5-6.

FILE

LANCE PYSHER, MD
D: 02/01/2000 T: 02/01/2000
tgu



RECEIVED
FEB 17 2000

DIAGNOSTIC IMAGING REPORT

*Court's Copy for ease reference. for Judge Kane*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on October 17, 2005, on October 31, 2005 and on November 8, 2005. Present were the following: Jill Coit, Claimant; Adam Wiens from the Office of the Attorney General, for Defendants. On November 8, 2005, Aaron Atkinson from the Office of the Attorney General also appeared for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Mitra Razzaghi; Linda Fischer; Rae Rice; Cary Shames, D.O., CDOC Chief Medical Officer; Cathie Holst; Brenda Traxler; and Cindy Phillips. Exhibits A through JJJ were offered into evidence. Attached as part of this order is a comprehensive Appendix of Exhibits listing each exhibit admitted into evidence and each exhibit not admitted into evidence. At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying

1

to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt out provision for any individual.  The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;
II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.     Damages due to severe physical injuries; and
V.      Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.      Claimant submitted a claim which was originally assigned claim number 02-661 and placed into category II pursuant to the Remedial Plan as set forth above.  The claim is premised on alleged mobility, vision and hearing disabilities.

2.      In response to Claimant's Request to be placed into a higher class, on April 19, 2005, Special Master Borchers reassigned Claimant's claim to Category III pursuant to the Remedial Plan as set forth above.  The claim was reassigned claim number 03-129.

3.    Proper notice of the hearing was given and Claimant along with Defendants appeared.

4.    Claimant is currently under the jurisdiction of the Colorado Department of Corrections (CDOC).  She entered CDOC custody in 1995.  From 1995 to October of 2001, Claimant was housed at the Colorado Women's Correctional Facility (CWCF).  Since October of 2001, she has been housed at the Denver Women's Correctional Facility (DWCF), except for a brief 10-day period, from March 19, 2004 to March 29, 2004, when she was transferred to CWCF.

5.    Claimant has suffered from a variety of medical problems that are the basis for her alleged mobility disability.  When she came under the jurisdiction of the CDOC in 1995, she suffered from low back pain and degenerative joint disease.  She had an artificial hip that prevented her from bending or twisting.  Claimant also had a leg length discrepancy.  Claimant testified that from 1995 to the present, she has been unable to walk more than 50 to 60 feet and cannot walk up or down stairs.  This testimony was disputed by a CDOC witness and, according to Dr. Shames, by Claimant's medical records.  Claimant has had a stair restriction of 6 to 8 stairs a day since 1998.

6.    In 1995, Claimant suffered a partial meniscus tear.  Surgery was performed in 1997 or 1998, but it was not completely successful in repairing the meniscus tear.  Claimant also developed plantar fibroma, a growth on the bottom of her foot.  This was removed in 1998 but reoccurred shortly thereafter.

7.    Claimant also suffers from carpel tunnel syndrome and sustained injuries to her hand and shoulder which made it difficult for her to utilize handrails while attempting to walk.

8.    Claimant has been classified as totally disabled by Social Security.

9.    Claimant produced extensive testimony of documentary evidence in support of her contention that DWCF has willfully refused to provide her with a plethora of medical devices and treatment that was prescribed or recommended by various health care professionals.  For example, Claimant had a back brace while she was incarcerated at CWCF.  The brace was taken away in October of 2001 and has not been given back to her.  Claimant did not receive orthopedic shoes until 2003, although her doctors requested them on numerous occasions.  She has not been given acceptable shoes or orthotics, and clothing that is consistent with various allergies that she has to fabric.  Claimant has been denied a heating pad.  In 2001, Claimant's hand braces were taken away, and were were not returned until 2003.  While at CWCF, Claimant was provided with a dresser, a low table, an adjustable roller chair, egg shell mattress and a night stand.  None of these were provided to her at DWCF.  Cervical pillows and ice packs which were provided to Claimant at CWCF have not been made available at DWCF.  Claimant was given Celebrex, an anti-inflammatory from 1998 to 2001 but this prescription medication has been denied to her since arriving at DWCF.  A special typewriter was

3

available at CWCF, but Claimant asserts that since her arrival and DWCF she has not had the use of a special typewriter. Claimant requested a Tens Unit to assist in alleviating pain but it has not been provided.

10.     Claimant testified that she has difficulty hearing, particularly when there is background noise. She used hearing aids in 1995 but, since 1995, she has not been provided with hearing aids. Claimant was cleared for hearing aids in 2001 and in 2002 or 2003 she was allowed to have her own hearing aids sent to her. Claimant asserts that in 2004 she received discipline that resulted directly from her inability to hear.

11.     Claimant contends that she has difficulty with her distance vision. It is undisputed, however, that she does not fall below the 20/200 vision acuity standard in the Montez Remedial Plan.

12.     Claimant has also testified to several threats and acts of retaliation for filing grievances and pursuing her *Montez* claims.

13.     Claimant testified that she fell in the shower causing swelling and pain; and that she fell from the low toilet in her handicapped cell prior to 2003. She indicated that the falls were due to the fact that she could not grasp the hand bars firmly because of her hand and shoulder problem.

14.     Claimant testified that she has fallen due to the lack of proper shoes and shoe inserts.

15.     Claimant was unable to use the carpentry shop at DWCF because of lifting and hand use restrictions. She wanted to participate in a dog training program but was unable to do so because she could not bend down to remove the dog excrement. DWCF refused to provide her with a shovel that she might have been able to utilize to accomplish this task. There were limited jobs for handicapped inmates. Claimant testified that she did computer aided drafting and design for a while but could not sit or use her hands. Claimant did have jobs in the law library.

16.     From 1995 to 2001, Claimant wanted to work as a teacher in the CWCF GED program. She was not able to do so because she would have had to negotiate approximately 14 stairs to get to the area where the classes were held. She requested an accommodation of being allowed to go through the yard and a gate in order to get from the building where she was housed to the building where the classes were held but this request was rejected.

17.     Claimant could not take part in the hobby program because of a medical problem with her thumb that prevented her from utilizing the rotator scissors. She was also prevented from knitting because of the thumb condition.

18.     Claimant requested that she be moved out of her handicapped cell at DWCF because it did not have sufficient light.  She was moved to a non-handicapped cell that provided more light.

## III. CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794, *et seq.;* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class.  Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks.

The Special Master finds and concludes that Claimant has not sustained her claim that she has a vision disability within the meaning of the ADA and/or the Remedial Plan.

5

No testimony or documentary evidence was presented regarding Claimant's vision acuity[1]. *Remedial Plan* ¶ V(A)(3).

The Special Master finds and concludes that Claimant has not sustained her claim that she has a hearing disability within the meaning of the ADA and/or the Remedial Plan. It is uncontroverted that Claimant is not "permanently deaf" and does not have "a permanent hearing impairment so severe that [she] must rely on written communication, lip reading, or signing because [her] residual hearing, with aids, does not enable [her] either to communicate effectively or hear an emergency warning." *Remedial Plan* ¶ V(A)(2).

Claimant has also presented testimony regarding shoulder, arm and hand problems and allergies to clothing. The Special Master need not consider whether these conditions might constitute a disability under the ADA because they are not disabilities covered by the Remedial Plan. Consequently, the Special Master finds and concludes that the *Montez* Remedial Plan claim procedures to not apply to Claimant's shoulder, arm, hand and allergy conditions. Further, any allegations of failure to accommodate these conditions so that Coit could participate in various programs also do not fall within the ambit of the Remedial Plan.

Finally, Claimant asserts damage claims based upon threats and retaliation. Again, regardless of whether or not these claims might be viable under the ADA and/or Rehabilitation Act, they do not fall within the scope of the Special Master's responsibilities under the Remedial Plan. *See* Order In Response to Report and Recommendation of the Special Masters to Judge John L. Kane, Nov. 23, 2004 at ¶¶ 2 and 3.

3.     The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4.     The key issue is whether Claimant was discriminated against because of her disability during the time covered by the Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to

---

[1] Claimant, by her own admission, agreed that her vision was corrected within the meaning of the Remedial Plan and that she cold not overcome the burden.

August 27, 2003. Claimant has presented considerable testimony regarding alleged discrimination and failures to accommodate that occurred after August 27, 2003. The Special Master finds and concludes that these allegations cannot be entertained under the *Montez* Remedial Plan.

As noted in Finding of Fact number 9 above, the overwhelming majority of Claimant's allegations, testimony and exhibits relate to medical treatment, medications and medical devices that were ordered or recommended by her doctors but were not provided by defendants. With the exception of her fall discussed in Finding of Fact number 14 above, there is no evidence tying these failures to provide treatment, medications or medical devices to any inability on the part of Claimant to utilize the institution's facilities or to take part in the institution's programs and services. Without such evidence, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). As a result, with the exception of Claimant's fall allegedly resulting from her failure to have been provided with proper shoes and shoe inserts, the Special Master finds and concludes that all of her claims relating to the CDOC's failure or refusal to provide medical treatment, medications and medical devices must fail.

What remains are Claimant's damage claims premised on (a) her fall because she was not provided with proper shoes and shoe inserts; and (b) her inability to teach in the CWCF GED program because she could not negotiate the stairs to get to the classroom. The Special Master finds and concludes that there is sufficient evidence in the record to sustain Claimant's claim that the fall and her inability to teach were the result of her permanent mobility impairment; that her fall was proximately caused by defendants' failure to provide a requested accommodation in the form of proper shoe inserts; and that her inability to teach was the result of the defendants' failure to provide a requested accommodation of allowing her to take an alternative route to the classroom. No evidence was presented by defendants to establish that either of the requested accommodations was unreasonable or inappropriate. Consequently, the Special Master finds and concludes that Claimant has sustained a claim of disability discrimination under the ADA, the Rehabilitation Act and the Remedial Plan.

Claimant presented no evidence regarding any injuries sustained or medical treatment necessitated by her fall. As a result, only an award of minimal damages is permissible. Likewise, no evidence was presented by claimant as to the extent of damages resulting from her inability to teach the GED class. In light of the dearth of damages evidence, the Special Master finds and concludes that the sum of $350.00 is an appropriate amount of damages for these two violations of the ADA, the Rehabilitation Act and the Remedial Plan.

## IV. ORDER

7

IT IS HEREBY ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, judgment should be entered in favor of the Claimant and against Defendants in the amount of $350.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 29, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this _15th_ day of December, 2005.

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _15th_ day of December, 2005 to the following:

Ms. Jill Coit, #86530
DWCF
P.O. Box 392005
Denver, CO 80239

Mr. Adam Wiens
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Margie Dykstra

*Judy Kane*

*reference of Exhibits*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant:  DWCF, P.O. Box 392005, Denver, CO 80239

_____

**APPENDIX OF EXHIBITS**

_____

The following is a list of Exhibits introduced by Claimant and ADMITTED into evidence in the above referenced claim:

EXHIBIT A:   1 page   Access Correctional Care Authorization for Jill Coit, dated March 3, 2004.

EXHIBIT B:   1 page   Access Correctional Care Denial for Jill Coit, dated August 29, 2005.

EXHIBIT D:   1 page   Query Medical Information for Jill Coit, dated 06/08/2005.

EXHIBIT E:   ½ page   Bottom half of Medical Information for cotton clothing for Jill Coit, dated 9/17/04.

EXHIBIT F:   2 pages   Denver Health Medical Center Radiology Consultation Report for Jill Coit, dated 12/27/2004.

EXHIBIT G:   1 page   Colorado Department of Corrections Clinical Services Intrasystem Transfer Health Screening Form for Jill Coit, dated 3-19-2004.

- 1 -

EXHIBIT H:  1 page      State of Colorado Department of Corrections Consultation Report Form for Jill Coit, dated 009/28/2004.

EXHIBIT I:  1 bag      One pair worn Reebok tennis shoes from Jill Coit.

EXHIBIT J:  2 pages      Memorandum from Cathie Holst to Jill Coit, dated May 12, 2004, RE:  Correspondence dated 5/5/04.

EXHIBIT K:  10 pages      Memorandum from Cathie Holst to Jill Coit, dated October 20, 2005 with supporting documents, letters, Accommodation Resolutions and Queries.

EXHIBIT M:  1 page      Colorado Department of Corrections Offender Consent for Disclosure of Confidential Information for Jill Coit, dated 2-2-05[1].

EXHIBIT N:  1 page      Offender Track Offender Profile, 03/24/2004, page 1.

EXHIBIT O:  1 page      Query Admission Summary, 08/24/2005, page 1.

EXHIBIT P:  1 page      Query Medical Information, 12/20/2000, page 1.

EXHIBIT Q:  1 page      Memorandum to Beverly Thompson from Rhonda Corretti, RE Jill Coit Informal Grievance, dated November 24, 2003.

EXHIBIT R:  1 page      Denver Women's Correctional Facility Segregation Allowable Property List.

EXHIBIT U:  1 page      D.W.C.F. Unit Two Case Management Kite for Jill Coit dated 11-22-04.

EXHIBIT W:  1 page      Correspondence form Charles Smith to Linda Fischer, 3/31/2005.

EXHIBIT X:  1 page      Department of Corrections Psychiatric Individual Contact[2].

EXHIBIT Z:  1 page      Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 8/5/04.

EXHIBIT AA: 1 page      Colorado Department of Corrections Cañon City, Colorado Territorial Correctional Facility Podiatry Clinic for patient Jill Coit, dated 1-27-99.

---

[1] Two identical copies of the same Exhibit M are marked and in the record.
[2] Two identical copies of the same Exhibit X are in the record.

EXHIBIT BB: 1 page       Podiatry Clinic 8/4/99 sheet for Jill Coit.

EXHIBIT CC: ½ page      Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 1-13-04[3].

EXHIBIT DD: 1 page      Copy of picture of shoes and lower half of record for Jill Coit dated 7-14-00.

EXHIBIT EE: 1 page      State of Colorado Department of Corrections Consultation Report Form dated 11/04/2003.

EXHIBIT FF: 1 page      Access Correctional Care Authorization dated March 3, 2004.

EXHIBIT GG: 1 page      Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 11/11/99.

EXHIBIT HH: 1 page      Message for Medical to Jill Coit, dated 10/15/02.

EXHIBIT II:  1 page      Colorado Department of Corrections Request for Exception to Standard of Care dated 10-21-96.

EXHIBIT JJ:  1 page      Colorado Department of Corrections / Ambulatory Health Record for Coit dated 10/22/01.

EXHIBIT KK: 1 page      Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 12/21/1.

EXHIBIT LL: 1 bag      A pair of used hand splints.

EXHIBIT MM: 1 page      Page of Offender Health Services rules, effective 07/15/02.

EXHIBIT NN: 1 page      Denver Women's Correctional Facility Segregation Allowable Canteen Catalogue Items.

EXHIBIT OO[4]: 55 pages      "OO"1: Printout for Jill Coit, dated 5-15-01.
                             "OO"2: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 4/13/01.
                             "OO"3: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 1-12-01.

---

[3] Defendants raised an objection on the grounds of relevance.  The document was admitted subject to Claimant "tying it up."

[4] Per the Special Master, Claimant was allowed to introduce these documents into evidence at once and all are to be marked sequentially as exhibit "OO" starting with "OO"1.  Quotation marks have been placed around the letters so as not to confuse the letters with zeroes.

"OO"4: CDOC Consultation Report Form for Jill Coit date 6/21/99.

"OO"5: Denver Health Outpatient Encounter Record Surgical-Specialty Clinics for Jill Coit dated 02/17/00.

"OO"6: State of Colorado Department of Corrections Consultation Report Form for Jill Coit dated 04/01/2005.

"OO"7: Letter to Anthony A. DeCesaro from the Aleph Institute dated March 31, 2004.

"OO"8: April 8, 2004 Letter to Jill Coit from Anthony DeCesaro.

"OO"9: September 9, 2003 letter to Mrs. Billiot from Patricia Valenzuela.

"OO"10: Message from Medical to Jill Coit dated 9-15-03.

"OO"11 (2 pages): Denver Health Medical Center / University Hospital Telemedicine Encounter Form for Jill Coit dated 3/9/00.

"OO"12: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 2-24-03 (top) and 1-31-03 (bottom).

"OO"13: Letter to Jill Coit from Anthony A. DeCesaro dated March 4, 2004.

"OO"14: CDOC Consultation Report Form for Jill Coit dated 9-10-01.

"OO"15: Notice about towels and microwaves.

"OO"16: Statement from Rebecca Davis without a date.

"OO"17: CDOC Consultation Report Form for Jill Coit dated 7/9/02.

"OO"18: Denver Health Outpatient Encounter Record for Jill Coit dated 9/3/99.

"OO"19: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 7/27/04.

"OO"20 (1/2 page): Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 9/14/00.

"OO"21: Message from Medical for Ms. Jill Coit dated 2/20/03.

"OO"22: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 10/21/01 (top), 10/11/01 (bottom).

"OO"23: Colorado Department of Corrections Consultation Report Form for Jill Coit, dated 08/08/2005.

"OO"24: Colorado Department of Corrections Offender Grievance Form Step I, for Jill Coit dated 12-24-03.

"OO"25: Request for interview 6-6-04 with lots of notes.

"OO"26: Colorado Department of Corrections Informal Resolution Attempt for Jil Coit (sic) dated 9-9-03.

"OO"27: Part of a record of Jill Coit dated 1-16-03

"OO"28: Colorado Department of Corrections Informal Resolution Attempt for Jill Coit dated 8/15/03

"OO"29: Colorado Department of Corrections Informal Resolution Attempt for Jill Coit dated 12-24-03.

"OO"30: (2 pages) Affidavit of Michelle Baker for Law Suit 98-D-2031 Coit.

"OO"31: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 8/18/03 (top) 8/11/03 (bottom).

"OO"32: A checklist for Jill Coit dated 1-14-99.

"OO"33: Copy of a sheet of writing with a typed not to Ms. Glassman dated 12/15/00.

"OO"34: Denver Women's Correctional Facility Request for Laundry Service for Jill Coit dated 3/15/05.

"OO"35: On-site clinic letter from Hernan Morales, M.D. to Jill Coit concerning large bra fitting.

"OO"36: Denver Health Outpatient Encounter Record Surgical-Specialty Clinics for Jill Coit dated 03/27/00.

"OO"37: Colorado Department of Corrections X-Ray Request/Report, taken of Jill Coit on 4-2-01.

"OO"38: (1/2 page) Information for Jill Coit dated 10/15/01.

"OO"39: Invoice from Batchelor Business Machines to Jill Coit dated 8-28-00.

"OO"40: CDOC Consultation Report Form for Jill Coit dated 7/9/02.

"OO"41: Medical Query Medical Information, Jill Coit, 06/21/2001.

"OO"42: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 12/6/1.

"OO"43: Access Correctional Care Denial dated August 29, 2005 to Jill Coit.

"OO"44: Colorado Department of Corrections / Ambulatory Health Record for Coit dated 7/22/03 (top) 07/18/03 (bottom).

"OO"45: Orthopaedic (sic) Clinic 12-15-99 letter to Jill Coit from Jacob Patterson, M.D.

"OO"46: Picture of shoes with bottom half of document for Jill Coit dated 7-14-00.

"OO"47: Message from Medical to Jill Coit dated 1-8-02.

"OO"48: Pre-Operative Diagnosis of Plantar Fibroma on the left foot dated 12-8-98 by James P Gremillion for Jill Coit.

"OO"49: Orthopedic Clinic 7-26-95 report on Jill Coit from Jacob Patterson, M.D.

"OO"50: Letter to CDOC RE Jill Coit from Walter G. Briney, MD dated September 25, 2000.

"OO"51: Achieve new balance tennis shoes ad.

"OO"52: CDOC Consultation Report Form for Jill Coit dated 4/10/01.

"OO"53: Medical Query Medical Information for Jill Coit dated 06/08/2005.

EXHIBIT PP: 5 pages — Colorado Department of Corrections Offender Consent for Disclosure of Confidential Information for Jill Coit dated 2-29-04.

EXHIBIT QQ:1 page — Offender Heal Services Responsibility and Organization of Clinical Services, AR #700-01, Effective 07/15/02.

EXHIBIT RR: 1 page — Personal Property Inventory page signed by Claimant 5-15-01.

EXHIBIT SS: 1 page — Bottom of medical write-up dated 7-14-00 with photo of shoes photocopied on the top half.

EXHIBIT TT: 1page — Diagnosis write-up from Japes P. Gremillion, DFM/jr, dated 12-8-98.

EXHIBIT UU:1 page — Orthopedic Clinic Consultation write-up from Jacob Patterson, M.D., 7-28-95.

EXHIBIT VV:1 page — Orthopaedic (sic) Clinic 12-15-99 write-up from Jacob Patterson, M.D.

EXHIBIT WW:1 page — Colorado Department of Corrections Cañon City, Colorado Territorial Correctional Facilty Podiatry Clinic write-up from F. James Gremillion, D.P.M., dated 1-27-99.

EXHIBIT XX:1 page — Podiatry Clinic 8/4/99 observations of James Gremillion, DPM.

EXHIBIT YY:1 page — Page 2, Jill Coit, September 9, 2000 Impression and Plan from R. Lindsay Lilly, Jr., M.D./mc.

EXHIBIT ZZ: 1 page — 7/29/98 Diagnosis and write-up of Internal Derangement, Left Knee, by J. Patterson, M.D./jr.

EXHIBIT AAA:1 page — Colorado Department of Corrections / Ambulatory Health Record 1-21-01 write-up on Jill Coit.

EXHIBIT BBB:1 page — March 4, 2004 Grievance response from Anthony A. DeCesaro, Step III Grievance Officer, concerning Grievance #C-DW03/04-0032.

EXHIBIT CCC:1 page — Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 05/21/04.

EXHIBIT DDD:1 page — Department of Corrections Ambulatory Health Record page 1 of 2 for Jill Coit, printed 01/25/2005.

EXHIBIT EEE:1 page — Colorado Department of Corrections Consultation Report Form, for Jill Coit, dated 06/29/2005.

EXHIBIT FFF[5]:1 page — First page of a Letter from B"H Rabbi Shmuel Spritzer Lubavitch Youth Organization, dated May 6, 2004/15 Iyar 5764.

EXHIBIT GGG[6]:1 page — A computer printed Social Security Query (TPQY) Dated 5/31/01 for SSN: 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.

EXHIBIT HHH:2 pages — Denver Health Medical Center / University Hospital Telemedicine Encounter Form for Jill Coit dated 3/9/00.

EXHIBIT III:  1 page — Query Waitlist for Jill Coit listing Parole Eligibility Date 03/26/3004.

EXHIBIT JJJ: 1 page — Query Waitlist for Jill Coit Listing Parole Eligibility Date 03/26/3004.

---

The following is a list of Exhibits introduced by Claimant and NOT ADMITTED into evidence in the above referenced claim due to objection:

EXHIBIT C: — State Farm medical insurance from 1983.  Document withdrawn and not made part of the record.

EXHIBIT T:  1 page — 2 pictures of Claimant.  Objection sustained based upon Fischer testimony about document and lack of knowledge of picture and relevance.

EXHIBIT V: — Document not in file.  Objected to on basis of witness inability to establish document.

EXHIBIT Y:  1 page — Colorado Department of Corrections / Ambulatory Health

---

[5] Admitted over Defendants' Objection based on Relevance.
[6] Admitted over Defendants' Objection based on Relevance.

Record dated 9-27-05.

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

EXHIBIT L:   1 page        Response to Step 1 ADA Grievance prepared by Cathie Holst for Jill Coit, dated sent 2/11/05.

EXHIBIT S:   15 pages      Memorandum to Dr. Mitra Razzaghi from Mary Manchester, subject offender Jill Coit, dated March 31, 2004.