IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-067
Category II
Claimant: Kirt Dean; Huskey, #76311
Address of Claimant: Camp George West, 15445 South Golden Road, Golden, CO 80401

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Kirt Dean; Huskey. Defendants filed answer to the claim. Claimant was granted time to file a reply. Claimant has done so.

The claim has been assigned to Category II. Claims in this category are not entitled to a hearing and are to be adjudicated on the documents submitted by both sides. Upon receipt of Claimant's reply, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval

established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2

        2. <u>Permanent Hearing Impairments</u>
        Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
        3. <u>Permanent Vision Impairment</u>
        Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
        4. <u>Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic</u>
        Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

        2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
            1. Is the claimant a disabled individual who is a member of the class?
            2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
            3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
            4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the Colorado Department of Corrections (DOC) in 1982. On his initial sentence, Claimant was in DOC custody until 1986. Claimant returned to DOC custody in 1987 and has been in custody since that date.

Claimant injured his right knee in the early 1980's. While in his initial DOC custody, Claimant had surgery on that knee. Since that time, Claimant has experienced many problems with

the knee. Claimant stated in his claim form that he was unable to play sports, has significant problems, and walks with a limp. Claimant further states that he wears a knee brace constantly.

Claimant in his initial claim form also stated that he has arthritis in his lower back. He also states that he has been determined to be vision impaired and must wear reading glasses. Finally, he states that he has Hepatitis C.

Claimant alleges that he has been subjected to discrimination because DOC will not undertake another knee surgery on his right knee. He believes that this failure to fix the knee has created unnecessary pain and suffering.

The medical records submitted by Claimant reflect the following. Dr. Jacob Patterson M.D. saw Claimant on November 29, 2002. In the medical note, Dr. Patterson stated, in part, as follows:

> The patient is a 45-year old inmate. He complains of severe pain with severe DJD in the right knee. On an earlier sentence, he had surgery by Dr. Shroyer done in 1981. He did well for a while, but now he has pain and popping along the medial side. It hurts with weight-bearing or any type of exercise. He says it occasionally pops out.

Dr. Patterson's note reflects that x-rays show that there is significant degenerative joint disease. In his recommendation, Dr. Patterson noted that "[m]ay need knee replacement surgery at some point since he is serving until 2012." Dr. Patterson indicated the he wanted to see Claimant in one year.

The second medical record is from Dr. Gary Go, an orthopedic specialist. Claimant saw this doctor in April, 2004. In the note, Dr. Go stated, in part, as follows:

> A. ACL deficient right knee with subsequent DJD, s/p medial meniscectomy in 1983.
> P. 1. ACL brace may benefit him.
>    2. Continue Naprosin 2 times daily with food PRN and add Tylenol on top of it if it is still hurting.
>    3. I agree with Dr. Patterson that he will probably need a total knee at some point in his lifetime, however, I told him I wanted him to live with his knee as long as he could, and I explained to him why, since it does not last forever and he would wear it out faster that a 60 y/o would.

No additional medical records have been submitted by either side. No records have been submitted concerning any vision problems.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems. Claimant has provided no evidence to indicate that he has anything more than a minor eye sight problem. Claimant does not fall into the category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant has had knee problems that predate his re-entrance into DOC on this sentence in 1987. For purposes of this order, the Special Master will find that Claimant meets the definition for mobility impairment.

**Other Health Conditions:** Claimant has been diagnosed with Hepatitis C. This disease is not covered by the Settlement Agreement. To the extent that another, uncovered condition has led to problems under the ADA and Rehabilitation Act, Claimant retains the right to bring a separate lawsuit on such a condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this questions is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services.

**3. Was the Claimant discriminated against by DOC. because of his or her disability?**
The answer to this question is no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant has received medical care. He has concerns about that care. He believes that he should receive knee surgery and that failure to provide that surgery constitutes a violation of the ADA and Rehabilitation Act. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent

that Claimant is questioning the medical care provided to him, that is beyond the jurisdiction of the Special Masters.

The medical opinion to wait as long as possible to do the knee replacement does not appear to be outside the realm of accepted medical practice. Claimant has produced no evidence that would indicate that delaying the surgery as long as possible would violate the standard of care for an orthopedic surgeon. There is no evidence that such a medical opinion and decision violates the ADA and Rehabilitation Act in any way.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to the previous questions is no, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Kirt Dean; Huskey is denied and dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 15, 2006.**

SIGNED this 20th day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master