IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-072
Category II
Claimant: Wayne Sloan, #115370
Address of Claimant: Limon Correctional Facility, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan (also referred to as Settlement Agreement). The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for

Defendants, the Court was notified that a settlement had been reached between members of the class

and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

2

*1. Permanent Mobility Impairments*
a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.
b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.

*2. Permanent Hearing Impairments*
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

*3. Permanent Vision Impairment*
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

*4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

3

## II.

The Special Master has reviewed the initial and supplemental claim form and the attached documents submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant was given the opportunity to reply to Defendants' response by November 21, 2005. No reply was filed. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial claim in April, 2004 and supplemental claim form for mobility and hearing impairment in May, 2004. Mr. Sloan has been incarcerated in DOC since November, 2002. In September, 2003, an MRI revealed that Mr. Sloan had a herniated disc, disc degeneration at C5-C6 and mild spinal stenosis. *(See, Claimant's exhibits attached to May, 2004 supplemental claim form)*. In his initial and supplemental claim forms, Mr. Sloan states that despite the fact that DOC knew the results of the MRI in September, 2003, he was forced to work on an outside work crew where he had to shovel dirt and lift heavy objects. He claims that these tasks made the neck and back pain that he was experiencing worse. He also claims that DOC has been deliberately indifferent to his medical needs by not adequately addressing the pain in his neck and back and failing to treat the resulting radiating pain to his right arm and hand[1]. He states that he has constant migraine headaches, numbness in his right arm and hand and ongoing equilibrium problems. *(See, Claimant's initial and supplemental claim forms and attached documents)*.

Mr. Sloan also claims that since March, 2004, he has had progressive and dramatic hearing loss in both ears. He states that he is constantly dizzy and has ringing in both of his ears. He requested a hearing aid, but based on the results of a hearing test in November, 2003, he was told that he did not qualify.

In their response, Defendants assert that Mr. Sloan is not a member of the *Montez* class. They argue that he does not have a mobility or hearing impairment that would constitute a disability under the Settlement Agreement.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

### *I. Mobility Impairment:*

---

[1]Claimant indicates in a letter filed March 20, 2005 that his herniated discs have been removed and part of his spine fused during recent back surgery. However, he claims that he continues to have problems with his ears.

4

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. There is no doubt that Claimant has suffered from neck and back pain that radiated into his right arm and hand and resulted in numbness to his hand. He was diagnosed with a herniated disc  and disc degeneration at the location of the fifth and sixth vertebrae of the cervical spine. *(See, 9/11/03 MRI report from Lincoln Community Hospital, Hugo, Colorado)*.  However, the Settlement Agreement, as drafted by counsel for the class and counsel for Defendants, narrowly defines the disabilities that are covered. Under the Settlement Agreement, a permanent mobility impairment for a person not in a wheelchair requires that a person have a permanent lower extremity impairment that substantially limits walking and the person's ability to perform a major life activity. Mr. Sloan does not have a permanent ***lower extremity*** impairment. The Special Master does not wish to minimize in any way the intense pain, numbness or weakness that Claimant states he has had to live with as a result of his herniated discs. However, all of Mr. Sloan's complaints involve his upper extremities: neck, back, arms and hands. Mobility impairments to the upper body and limbs are simply not covered by the Settlement Agreement. Under the negotiated Settlement Agreement, Mr. Sloan  does not establish by a preponderance of the evidence that he is a disabled individual who is a member of the *Montez* class.

Mr. Sloan has raised several concerns regarding the quality of medical care that he has received for his various medical conditions while in DOC custody. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Cases for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement.[2] To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefit or services offered by DOC.

---

[2]Claimant's individual Eighth Amendment claims are not contemplated by the Settlement Agreement, unless those claims meet the four criteria set forth in the District Court's order of November 23, 2004. Based upon the evidence presented, the Special Master finds that Claimant has not sustained his burden of proof.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
Since Claimant does not meet the definition of disabled with a permanent lower extremity mobility impairment under the negotiated Settlement Agreement, this question need not be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question need not be reached in light of the answer to Questions #1 and #3.

## II. Permanent Hearing Impairment:

**Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. The definition of a permanent hearing impairment under the Settlement Agreement, is so narrow and specific that it is nearly impossible for any Claimant to prove a disability under this category. Mr. Sloan is not permanently deaf. In his supplemental form, Mr. Sloan attached a copy of a hearing test performed in November, 2003. Mr. Sloan states that he requested a hearing aid, but his hearing was not bad enough for him to qualify for one.[3] To establish a permanent hearing impairment, a Claimant must demonstrate that even with hearing aids he cannot communicate effectively with others or hear an emergency warning. Under the negotiated Settlement Agreement, Mr. Sloan does not establish by a preponderance of the evidence that he is a disabled individual who is a member of the *Montez* class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. The Claimant does not have any disciplinary convictions or other documented reasons that would disqualify him from participating in the programs or receiving the benefits or services offered by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
Since Claimant does not meet the definition of disabled with a permanent hearing impairment under the negotiated Settlement Agreement, this question need not be answered.

**4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?**
This question need not be answered in light of the answer to Questions #1and #3.

IT IS HEREBY ORDERED that the claim of Wayne Sloan as to both permanent mobility and hearing impairments is denied, as Mr. Sloan has failed to prove by a preponderance of the evidence each of the four criteria set forth in the District Court's Order of November 23, 2004; and

---

[3]Mr. Sloan apparently reached this medical conclusion on his own or from a statement made by an individual who also was not a physician, that was included in the denial of an informal resolution filed by Claimant in March, 2004. The Special Master can find no report in the file that indicates that a physician or specialist reached the conclusion that Mr. Sloan's hearing loss was not severe enough for him to qualify for a hearing aid.

IT IS FURTHER ORDERED that all other aspects of the claim of Wayne Sloan are dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 15, 2006.**

SIGNED this 20th day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

7