IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-082
Category II
Claimant: Thomas Edward Johnson, #103364
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on Defendants' Motion to Dismiss. Claimant was given the opportunity to respond to the motion. Claimant has submitted a reply to it. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> 
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
> 
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants' have moved to dismiss this claim on the basis that it cannot be granted, even if the allegations in it are accepted as true. Defendants argue that Claimant has only raised the issue of his left arm and that a mobility disability is limited by the Settlement Agreement. Defendants argue that the loss of an arm or use of an arm does not fall within the definition of mobility impaired as set forth in the Settlement Agreement.

Claimant's response to the motion to dismiss states, in part, as follows:

> Defendants claim that plaintiff is not mobility impaired. Plaintiff lost the use of his left arm in 1989. Since, having three surgeries to regain movement and use of the arm. Plaintiff is behind on surgeries and physical therapy, and in danger of losing what he has gained by the surgeries so far.
> Plaintiff is still unable to tie shoes, button pants, and pull on shirts, without difficulty, pain, and having to ask the assistance of other inmates. There has been, supposedly, an order in for these items for several months now. However, there has been no relief as of yet.
> Plaintiff was diagnosed with Hepatitis C in 2000. Plaintiff is still being denied interferon treatment and being discouraged away from it by the medical providers here at SCF. As of the present time, plaintiff's liver is in a treatable state. Why not treat this virus now, before it becomes untreatable.

In the response, Claimant acknowledges that his conditions are the loss of use of his left arm and Hepatitis C. Review of the initial claim form reflects that the loss of use of the arm was Claimant's basis for checking the mobility box on the form.

The Settlement Agreement provides the only jurisdiction that the Special Masters are able to exercise. There is no question that a claimant can fall under the protections of the Americans with Disabilities Act but not be covered by the Settlement Agreement. Damage claims must be filed by those individuals who have one of the four disabilities if they were in DOC custody on or before August 27, 2003. Individuals not in one of the four categories may file their own lawsuit under the

3

ADA and seek relief through that separate case.

Claimant does not have a mobility disability as defined by the Settlement Agreement. He is not in a wheelchair and does not have a lower extremity condition. Claimant has lost the use of his left arm and has Hepatitis C. These may well be conditions that would warrant relief from a court, but they are not conditions covered by the Settlement Agreement. Claimant may pursue a separate lawsuit, but he may not pursue his claim. Defendants' motion will be granted, as Claimant has not alleged a condition covered by the Settlement Agreement.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Thomas Edward Johnson is dismissed as not being cognizable under the Remedial Plan; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 15, 2006.**

SIGNED this 20th day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master