IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-253
Category II
Claimant: Larry Patrick Delaney, #66301
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Larry Patrick Delaney (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has done so. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>  A. COVERED DISABILITIES
>  The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1999. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Colorado Territorial Correctional Facility (CTCF) at Canon City, Colorado. When Claimant filed his claim, he was at CTCF.

In his claim form, Claimant stated, in part, as follows:

> My left arm was broken by a fall from a bunk bed in my cell. I was operated on after several grievances were submitted. I now have a scar from shoulder to elbow along with a steel plate in my arm. They also had to take a piece of bone from my hip. I am not able to left over 15 or 20 pounds. I suffer from constant pain in my hip and arm, my arm prevents me from comfortably pulling on shirts. I cannot defend myself from lack of strength. I cannot use arm to lift or climb. My hip prevents me from sleeping on left side along with arm. My hip also keeps me from running and basic exercise along with my arm. My arm is in constant pain.

The medical records submitted by Claimant reflect that he did have a left humerus fracture. Surgery was undertaken at Denver Health Medical Center. Claimant has stated that he does not believe that he received appropriate medical care.

Defendants' answer argues that Claimant does not fall within the parameters of being mobility disabled. Claimant's reply states, in part, as follows:

> I was not then or now, offered any kind of rehab from my left arm that was broken by conditions of the facility. I was placed in population unable to work because of this, and unable to defend or protect myself. And unable to exercise properly to this day. I was left to grieve for a second opinion, because the bone specialist refused to operate on me, and false claims of treatments were documented.

Claimant states in his reply that he has had limited time to review his medical records. For the reasons that will be set forth, additional time for such review would not help in the resolution of this claim.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined.

Claimant has indicated on his claim form that he is mobility impaired. He has not checked any other box. He bases this on the condition of his left arm.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair. Claimant does not have a lower extremity disability as defined by the Settlement Agreement. Claimant's concern is with the condition of his left arm, and that concern is legitimate and supported by the documents that he has submitted. The problem is that the criteria for mobility disability is very narrow, and Claimant's left arm condition does not meet that criteria.

Claimant may have a condition that falls under the ADA and Rehabilitation Act. Unfortunately, it does not fall under the Settlement Agreement in this case. Claimant retains the right to pursue a separate lawsuit for any condition not covered by the Settlement Agreement that may meet the criteria of the ADA. Claimant also retains the right to bring a separate lawsuit for violations of the Eighth Amendment and/or medical negligence. Claimant is not part of the class for mobility impairment in this case.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant is upset about the medical care that he has received while incarcerated in DOC. He is concerned about the treatment he has received on his left arm. Those concerns have some legitimacy.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Larry Patrick Delaney is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 22, 2006.**

SIGNED this 21st day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master