IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-386
Category II
Claimant: Craig Kidder, #112753
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Craig Kidder. Defendants filed an answer to the claim. Claimant was granted time to file a reply, and he has done so.

The claims has been assigned to Category II. Claims in this category are not entitled to a hearing and are to be adjudicated on the documents submitted by both sides. Upon receipt of Claimant's reply, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement

Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2

>       2. Permanent Hearing Impairments
>       Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>       3. Permanent Vision Impairment
>       Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>       4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>       Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>       2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>               1. Is the claimant a disabled individual who is a member of the class?
>               2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>               3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>               4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the Colorado Department of Corrections (DOC) in March, 2001. He has been in DOC custody since then and presently is incarcerated at the Sterling Correctional Facility in Sterling, Colorado.

Claimant injured his left knee playing basketball. While in his initial DOC custody, Claimant had surgery on that knee. Since that time, Claimant has experienced many problems with the knee.

Claimant stated in his claim form that his knee will swell up and hurts. Claimant states that his left knee feels about 20% of his right knee. He has difficulty climbing stairs and cannot exercise like he should.

Claimant in his claim form indicates the he sought work at the Four Mile Correctional Center (FMCC) in the horse program or in the dairy. He was turned down because of his bad knee. These programs would have allowed him to make more money that he can now. He was placed into a food service position which required him to be on his feet, but that position paid substantially less than he would have made in the FMCC programs.

In his supplemental form, Claimant indicated that he can only walk three or four laps at the track. He equates this as being close to a mile. When he finishes walking, the left knee will swell and ache.

Defendants' response to the claim contains a number of documents, including medical records. On April 11, 2003, Claimant had arthroscopic surgery on his left knee. On April 30, 2004, Claimant was hurt playing basketball. He jammed his finger and sought medical care. On other occasions in 2002, Claimant was playing basketball and needed medical attention.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be part of the class, a claimant must show that he or she was disabled on or before August 27, 2003. In addition, the claimant must meet the criteria set forth in the Settlement Agreement. It is possible for a claimant to be disabled and be protected by the ADA, but not meet the criteria of the Settlement Agreement.

Claimant checked only mobility disability on his claim form. In his reply to the Defendants' answer to his claim, Claimant states, in part, as follows:

> In reply to your response, I guess the problem I have is my and your definition of disability. My left knee is not 100% or even close. I still cannot squat and get up. Just crossing my legs sitting is very uncomfortable. After about 1 minute, my left knee aches something terrible. Just think for a minute, the Dr. who performed the surgery on me never did an MRI on me. He just went in blind. Is that normal practice?

Claimant goes on to question the medical care that he received.

In his claim form and supplemental form, Claimant states that he is able to walk three or four laps of the track. This is almost one mile. He further acknowledges that he can climb a set of stairs,

4

but not without pain. Claimant states that it is a matter of the definition of disability. He is correct, but the Special Masters may exercise jurisdiction over only those claims that meet the very specific definitions set forth in the Settlement Agreement.

The Settlement Agreement specifically provides that a claimant must be in a wheelchair or have a lower extremity problem. That problem must affect substantially walking or climbing of stairs. The definition in the Settlement Agreement provides that a person who cannot walk for one hundred yards without stopping or cannot climb a set of stairs without stopping falls within the definition of having a mobility disability.

The claim form, supplemental form, and attached documents do not indicate that Claimant meets the definition of mobility disabled. He can walk a mile and can climb stairs. The Special Masters were not involved in drafting the Settlement Agreement but are bound by it. Claimant's forms indicate that he does not meet the criteria for mobility disabled. His condition may fall under the broader protections of the ADA and he may bring a separate lawsuit to protect his rights. Unfortunately, he may not pursue this claim as he does not meet the definition for mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this questions is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services.

**3. Was the Claimant discriminated against by DOC. because of his or her disability?**
Even if Claimant were part of the class, he has not alleged any basis for a claim of discrimination. Claimant is concerned about the medical that he has received. It is clear that Claimant has received medical care. He has had concerns about that care. He believes that he should receive knee surgery and that failure to provide that surgery constitutes a violation of the ADA and Rehabilitation Act. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to the previous question is no, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Craig Kidder is denied and dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 15, 2006.**

SIGNED this 20th day of March, 2006.

                                                        BY THE COURT:

                                                        */s/ Richard M. Borchers*

                                                        _____
                                                        Richard M. Borchers
                                                        Special Master