IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-048
Category III
Claimant: Toney L. Brown, #61215
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on September 23, 2005. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Toney L. Brown (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from Claimant. All documentation previously submitted by both sides was accepted. Claimant offered into evidence Exhibits 1 through 5, and all were admitted. Defendants offered into evidence Exhibits A through X, and all were admitted. Final closing arguments were presented. Claimant was granted time in which to respond to the affidavit of Dr. Neufeld. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

    2. Permanent Hearing Impairments
    Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
    3. Permanent Vision Impairment
    Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
    4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master will summarize the important parts of Claimant's testimony.

Claimant came into DOC custody on July 10, 2000. He was placed at the Denver Regional Diagnostic Center (DRDC) for three weeks. He then was taken to the Limon Correctional Facility (LCF). He remained at LCF until March 10, 2005. He was transferred to SCF and remains there at the time of this order.

Claimant has suffered a number of injuries over the years. He has a torn ligament in his left knee. As a result, his left leg will give out on him. This injury occurred in 2001 while incarcerated. Claimant also has a suffered an injury to his right wrist. This was the result of an injury while working and led to non-union of several bones. Claimant has great difficulty in using his right hand. He often will use a splint on his right hand to help support it. He has difficulty using tools and cannot climb a ladder. He has no grip in his right hand.

Claimant also has suffered an injury to his Achilles tendon in his right foot. The foot has not healed. This has made it impossible for him to stand for any long period of time. He also has plantar fasciitis and needs special shoes.

As to his claim of a vision disability, Claimant testified that his eyes are sensitive to light. He needs tinted lenses but cannot get them. He is limited in the time that he can spend in the sun and often gets headaches as the result of the light. He stated that he has not had an eye examination in two to three years. Claimant testified further that he had been advised that he could not wear wire rim glasses and would have to send the pair that he has out of the facility. Claimant also indicated that DOC only permits clear lens glasses.

Claimant has to stay off of his feet because of his foot problems. He has requested orthotics but has been told that he did not meet the DOC criteria. He was advised to buy inserts from the canteen list.

Claimant testified that he believed that he was subjected to discrimination in that he was expected to perform all of his duties in the same fashion as a person without mobility problems. He described his difficulties in climbing up steps to second and third tiers. He is unassigned at the present time. He has not had an assigned job for some time.

In July, 2005, Claimant's wrist was injured as the result of a fall. The tendon injury occurred previously in March, 2004. Prior to this injury, he had been on restriction. He did receive crutches after the tendon injury. Claimant stated that he was in pain when he walked. He acknowledged that a played a little basketball.

Claimant further testified that he has had problems with the care provided to him at LCF and SCF. Claimant believed that he has not received appropriate care.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. At the hearing, Claimant withdrew that part of his claim dealing with his hearing.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement in the same way that they are bound by a statute. The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and includes only claimants suffering extreme eyesight problems.

Claimant's own testimony indicates that he does not fall under this definition. He has vision problems, but those problems are not covered by the definition in the Settlement Agreement. The very narrow definition means that a person must be legally blind to fall into the category. Claimant does not fall into the category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides that mobility impairment is limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking..." There is a dispute as to whether Claimant meets the definition for mobility impairment.

Review of Claimant's testimony and all documents leads to the conclusion that he was mobility impaired on August 27, 2003. Claimant had lower extremity problems that limited his walking and climbing of stairs.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides and as related to the date of August 27, 2003, the answer to this question is yes. There were no disqualifications from programs, benefits, or services for disciplinary or other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant is upset about the medical care that he has received while incarcerated in DOC. It is clear that Claimant received medical treatment, but Claimant takes issue with its appropriateness.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the preceding question has been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Toney L. Brown is denied; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 15, 2006.**

SIGNED this 20th day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master