IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-045
Category II
Claimant: Ruben E. Moreno, #44976
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Ruben E. Moreno (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is confined at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant is not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a answer to the claim. Claimant has filed a reply to the answer of Defendants. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>   A. COVERED DISABILITIES
>   The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant began his incarceration in DOC in July, 1989. It is unclear how many facilities he has been in, but was at the Fremont Correctional Facility (FCF) when he filed his claim in April, 2004.

In his claim form, Claimant checked the box for mobility impaired. He also stated that he had other medical conditions. He noted that he had a seizure disorder. He alleged that he did not receive appropriate medical treatment for his condition. He also stated that "[a]ll of my physical injuries occurred because of my seizure disorder; I should have been housed in a different area..."

In his supplemental form, Claimant states, in part, that "I suffer from seizure disorder that prevents me from doing a lot of things, also I have degenerative disease, slipped disks in back." Claimant further stated, in part:

> I have been in DOC for going on 16 years and the problems I have had are countless. The worst is when I was at AVCF. Anybody with a seizure disorder is to be housed and placed in a lower bunk, an order I now have; but back then I was refused and as a result I had a seizure. I fell off my top bunk and knocked out 9 teeth, 5 on to top, 4 on bottom. I now have an upper and lower partial. This happened at AVCF in 1993.

Claimant requested that he receive monetary compensation.

In reply to the answer of Defendants, Claimant states, in part, as follows:

> Since 1990 and while currently incarcerated within the Colorado Department of Corrections (CDOC), I've attempted, without avail, to successfully communicate my long history of seizure disorder, chronic lower back pain, fractured left hand, and 10 lost teeth (due to a fall from a top bunk during a seizure attack).

Claimant further states that he has not received "proper and prudent medical treatments and prescription medications as required." Claimant notes that he has had to educate medical staff concerning his conditions each time he has been transferred. Finally, Claimant notes that he is one of the original plaintiffs in this case and has been struggling for sixteen years to receive appropriate medical care.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the box for mobility impaired. The question then is whether he meets the criteria as set by the Settlement Agreement.

The Settlement Agreement provides a very narrow qualification for mobility impairment. Permanent mobility impairment is limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant is using or has used a wheelchair. There also is no evidence that Claimant has a lower extremity problem that limits walking. Claimant has indicated that he has a seizure disorder, lower back pain, dental issues, and related conditions. The problem is that these are not covered by the Settlement Agreement.

Claimant's concerns are legitimate about his seizure disorder and that the treatment he has received over the last sixteen years. It is entirely possible that this condition is covered by the ADA. The Special Masters have only the jurisdiction provided by Section XXXII of the Settlement Agreement. Claimant's conditions are not covered by the Settlement Agreement, but Claimant may bring his own lawsuit in a court of competent jurisdiction for his conditions. He simply is not part of the class for mobility impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no, as it pertains to the categories set forth in the Settlement Agreement. Claimant's treatment as to his seizure disorder raises some indication of discrimination in employment and housing.

Claimant has a concern with the quality of medical care that he has received. There is no question that he has received some care, but not what Claimant thinks may be helpful. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ruben Moreno is denied, as he is not part of

the class for mobility impairment; and

   IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 22, 2006.**

   SIGNED this 21st day of March, 2006.

              BY THE COURT:

              */s/ Richard M. Borchers*

              _____
              Richard M. Borchers
              Special Master