IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-274
Category II
Claimant: Herbert Eychaner, #102059
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Herbert Eychaner. The Special Master has reviewed the claim and all documents filed by both sides. Since this is a Category II claim, no hearing will be held. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS
A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in

2

this case by considering the following questions:

      1. Is the claimant a disabled individual who is a member of the class?

      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

As noted previously, the Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master has re-examined the claim and all supporting documents and has determined that placement of this claim into Category II was appropriate.

The Special Master has reviewed the claim, supplemental forms, and other documents submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant has filed a reply which has been reviewed.

Claimant came into the custody of DOC on October 1, 1999. At the time he filed his claim, he was incarcerated at the Sterling Correctional Facility (SCF) in Sterling, Colorado. He has since been transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado.

On his claim form, Claimant checked the boxes for mobility impairment and diabetes. He stated, in part, as follows:

      (1) Mobility - I came into DOC with a 9% whole person mobility with certain factors to bending, over the head repetitive movement. I have degenerative disk disease. (2) DOC did a diagnosis as to me being diabetic. I do not feel that is so, and have asked them to retest me many times over the past 3 years - the meds they give keeps my blood sugar too low most of the time.

Claimant further stated in response to the question as to discriminatory acts by DOC employees as follows:

      I was told I had to get a job or loose good time. I was forced to take the only job available at the time.

Claimant also described the harm he believed that he had suffered.

3

I took the only job which I felt would be the least strenuous on my back but this was not the case with begin with. This was very hard handling heavy boxes - then all the repetitive move day after day. My back has only gotten worse. I finally got a placement in the hobby shop where I sit most of the time. I spent most of four years working as one of the librarians - right from the library start up.

In the supplemental forms, Claimant states that he does not believe that he is diabetic. He objects to being on a special diet and receiving medications for diabetes. Claimant has requested to be retested to determine if he truly is diabetic. In his supplemental form, Claimant reiterates that he has a significant back problem. Attached to his supplemental form is a medical record from 1996 that reflects multi-level degenerative disk disease.

Defendants filed an answer in which they argue that Claimant is not part of the class. They argue that Claimant cannot prevail on his claim. Defendants do acknowledge that Claimant is diabetic, but that his condition is maintained by medicine and diet.

Claimant has filed a reply. He has indicated that he was not able to obtain jobs because of his back condition. He had to change from a library job to the hobby shop because he could not bend over due to his back condition. Claimant states that "[m]aybe I don't meet the mobility impairment under the Remedial Plan." He states that at FCF he is not able to receive pain medication for his back, but rather is told to purchase over the counter medications from the canteen. He believes that he has a chronic back problem that warrants state payment for pain medications.

Claimant further states that he has diabetes and that it is under control through medications. He has lost a number of teeth through extractions over the last five years. He has requested a partial plate but has not received it. He has difficulty chewing his food.

### III.

Defendants' first argument in opposition to the claim is that Claimant has "submitted no evidence to support his claim." The argument is that Claimant submitted only his own statements in his claim form and subsequent documents and these cannot be considered. This is completely disingenuous and follows in the footsteps of many other and similar arguments raised to avoid having claims resolved on their merits.

Defendants negotiated the Remedial Plan with counsel for the class to end this litigation. Section XXXII established the process for submitting claims for damages arising from violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act. The Remedial Plan was approved by Judge Nottingham on August 27, 2003, and the class was set on that date. The settlement provided no opt-out provision, so an inmate in custody on or before August 27, 2003 had to file a claim if he believed that he had a qualifying disability and had been the victim of discrimination prohibited by the ADA.

Section XXXII provides, in part, as follows:

4

Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members *may* attach any relevant information to this form, including proof of injury ir the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. (emphasis added).

*Remedial Plan, p. 28*. This Section provides that "Class members allocated under categories 1 and 2 shall not be entitled to a hearing before the special master." The Section further provides that "[a]fter review of the evidence, the Special master shall issue a written determination as to the damages awarded to each claimant." *Remedial Plan, p.29*.

A claimant must file a claim form in order to confer jurisdiction upon the Special Masters. A claimant is entitled to submit documents in support of his claim. A claimant also is entitled to discovery. When the claim process began, the Special Masters held that the Federal Rules of Civil Procedure applied and would allow for use of discovery tools such as interrogatories and request for production of documents. Defendants objected to this ruling. The matter was presented to Judges Nottingham and Kane, and both ruled that the Federal Rules of Civil Procedure do not apply to the claims process. All claimants were and are entitled to review their medical records and all quality assurance documents. All claimants were and are limited to ten copies without charge, but a claimant is entitled to make a showing of good cause for additional copies over and above the ten granted without charge. In addition, Judge Nottingham has ruled that the Remedial Plan provides no power for the Special Masters to issue subpoenas. These rulings by the District Judges have been premised upon the construction of the Remedial Plan as approved on August 27, 2003. Thus, the vast majority of claimants have been severely limited in their ability to obtain information to prepare and present their claims.

Section XXXII specifically provided for the filing of claims by all individuals who believed that they had been denied their rights under the ADA and Rehabilitation Act. As noted, there is no right to a hearing for claimants whose claims have been assigned to Categories I and II. The claims in those categories must be resolved on all documents submitted by the claimant and Defendants. The claim form, supplemental form, other statements from a claimant, and a reply to the answer of Defendants become the testimony of a claimant. This was what was negotiated by Defendants and counsel for the class. Defendants are bound by the provisions of the Remedial Plan. If Defendants had not wanted the claim forms to be considered as evidence, they could have so negotiated that point with counsel for the class. They did not do that.

In addition, the damage claim process before the Special Masters constitutes an "ancillary proceeding" to the case. The provisions of *28 U.S.C. §1746* apply. The statements of a claimant are deemed submitted under oath or affirmation. A false statement on a claim form or subsequent document could lead to prosecution for perjury. *See e.g., Dunn v. United States*, 442 U.S. 100 (1979). The documents of a claimant will be deemed submitted under oath or affirmation, The documents will be accepted and considered on their merits. The alternative is to elevate all claims

5

to Category III and allow a hearing on each claim. Every claimant's testimony then be considered as evidence and given as much or as little weight as the Special Master deems appropriate.

To the extent that Defendants have essentially raised a motion to dismiss the claim, that motion will be denied. The claim will be resolved on its merits.

### IV.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each condition will be reviewed individually.

**Diabetes:** In his initial claim form, Claimant objected to being diagnosed with diabetes, He requested a retest. In his reply to Defendants' answer, he has acknowledged that he is diabetic and his condition is under control through use of medications. There is no dispute at this point that Claimant had diabetes on August 27, 2003. He will be found to be a member of the class as to diabetes.

**Mobility Impairment:** In order to be a member of the class for mobility impairment, a claimant must have a condition that meets the criteria of the Settlement Agreement. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Claimant has significant problems in his back. He has degenerative disk disease. He does not use a wheelchair full or part-time. He does not have a lower extremity impairment that limits walking. Claimant does not meet the criteria for mobility impairment as set forth in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. There is no evidence that Claimant was disqualified from programs for disciplinary or other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
The answer to this question is no as it pertains to his diabetes. There was no evidence presented that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant has provided no evidence that he was denied entry into a program or services because of his diabetes.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Herbert Eychaner is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 30, 2006.**

SIGNED this 28th day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

7