IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

---

Claim Number 02-128
Category II
Claimant: Stephen Moore, #57381
Address of Claimant: CSP, Unit A-6-24, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

     THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

### I.

     This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan (also referred to as Settlement Agreement). The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for

1

Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

2

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

> *1. Permanent Mobility Impairments*
> a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.
> b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.
> *2. Permanent Hearing Impairments*
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> *3. Permanent Vision Impairment*
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> *4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Special Master has reviewed the initial and supplemental claim form and the attached documents submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant was given the opportunity to reply to Defendants' response by December 19, 2005. To date, no reply has been filed by Mr. Moore. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial claim in April, 2004 and supplemental claim form in June, 2004, alleging a vision impairment disability. Mr. Moore has been incarcerated in DOC since July, 1987. It appears that Mr. Moore was transferred to CSP in 1996 or 1997 and has been in administrative segregation since his arrival at CSP. There are no vocational programs available at CSP and no opportunities for work, except in very limited circumstances.

In 1992, Mr. Moore sustained a serious injury to his left eye. Mr. Moore claims that he has received inadequate medical care to address the injury to his eye. Furthermore, he claims that DOC has failed to provide him with two pair of glasses: one for reading and one for distance as prescribed by an ophthalmologist on September 30, 1999. *(See, Claimant's supplemental claim form and attached documents hand numbered 46 and 49).* Mr. Moore also claims that he was denied glasses for twenty-one months, although he does not specify the actual years encompassed. He claims that from 1996 until 2001, he was unable to use the library or the day hall. As a result of not having the proper glasses, he has not been able to progress out of administrative segregation extending his stay at CSP from the average of two or three years to seven. Mr. Moore also claims that his vision difficulties have lengthened his prison sentence by denying him the right to earn good time. As a result of the lack of treatment that he has received, Mr. Moore claims that he has had to take medication for depression and anxiety. *(See, Claimant's initial claim for damages).*

Defendants assert that Mr. Moore does not have a vision impairment that would constitute a disability under the Settlement Agreement. Therefore, they conclude that Mr. Moore is not a member of the *Montez* class and is not entitled to any relief under the Settlement Agreement.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

### *I. Permanent Vision Impairment:*

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. Mr. Moore does not have a "vision impairment" as defined in the Settlement Agreement that would qualify him as a disabled individual who is a member of the *Montez* class.

The Special Masters are bound by the Settlement Agreement in the same way that they are

4

bound by a statute. A "vision impairment" under the Settlement Agreement is very narrowly defined as "inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, *even with corrective lenses*." *(Emphasis added)*. In his initial and supplemental claim forms, Mr. Moore states that the vision in his left eye is "20/400". Mr. Moore has attached a consult report from an ophthalmologist, Dr. Donald Schlomer, dated September 30, 1999. That report substantiates that the *uncorrected* vision in Mr. Moore's left eye is 20/400. However, the same report indicates that with *correction*, Mr. Moore's central acuity vision in his left eye is 20/50 and 20/25 in his right eye. At the time of the 1999 consult, the ophthalmologist suggested that Mr. Moore consider having two pair of glasses: one for distance and one for reading. It appears that this suggestion was based on Mr. Moore telling Dr. Schlomer that he could not see well enough with the bifocals that he had received from DOC. *(See, 1/14/00 letter from Dr. Schlomer to Claimant's mother, hand numbered p. 49 and attached to supplemental claim form)*. Mr. Moore has also provided the Special Master with a second consult report from another ophthalmologist, Dr. Greenlee, dated January 1, 2001. Dr. Greenlee examined Mr. Moore on December 4, 2000 and indicated that although Mr. Moore was "nearsighted and somewhat presbyopic because he is 46 years of age, otherwise his examination is entirely within normal limits." [1]

The Special Masters cannot rewrite the specific terms of the Settlement Agreement. Under the negotiated Settlement Agreement, a Claimant, even with the use of corrective lenses, does not have to have central vision acuity that is better than 20/200. Mr. Moore's central vision acuity with correction is 20/50 in his left eye and 20/25 in his right eye. Mr. Moore does not fall into the very narrow category of "vision impairment" as defined in the negotiated Settlement Agreement. Therefore, Mr. Moore does not establish by a preponderance of the evidence that he is a disabled individual who is a member of the *Montez* class.

The Special Master would note that even if Mr. Moore qualified as disabled because of a vision impairment recognized under the Settlement Agreement, the United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Cases for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement.[2] To the extent that Claimant is questioning the care provided

---

[1]It appears from the records submitted by Mr. Moore that his dispute with DOC regarding his vision predates 1998. *(See, hand numbered pages 10 and 19 attached to supplemental claim form)*.

[2]Claimant's individual Eighth Amendment claims are not contemplated by the Settlement Agreement, unless those claims meet the four criteria set forth in the District Court's order of

to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Claimant does not meet the definition of disabled with a vision impairment under the negotiated Settlement Agreement, this question need not be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant does not meet the definition of disabled with a vision impairment under the negotiated Settlement Agreement, this question need not be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be answered in light of the answers to Questions #1, # 2 and #3.

IT IS HEREBY ORDERED that the claim of Stephen Moore as to a vision impairment is denied as Mr. Moore has failed to prove by a preponderance of the evidence each of the four criteria set forth in the District Court's Order of November 23, 2004; and

IT IS FURTHER ORDERED that all other aspects of the claim of Stephen Moore are dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 22, 2006.**

SIGNED this 27 day of March, 2006.

BY THE COURT:

_____
Richard M. Borchers
Special Master

---

November 23, 2004. Based upon the evidence presented, the Special Master finds that Claimant has not sustained his burden of proof.

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 27 day of March, 2006 to the following:

Mr. Stephen Moore
#57381
CSP
P.O. Box 777
Canon City, CO 81215-0777

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203