IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-104
Category III
Claimant: Charles Ramos, Jr., #112819
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on March 10, 2006. This hearing was held at the Colorado State Penitentiary (CSP) in Canon City, Colorado. Present were the following: Charles Ramos, Jr. (Claimant); and Aaron Atkinson, attorney for Defendants.

Testimony was received from the following witnesses: Claimant; Katie Cathcart; and Larry Watkins. All documentation previously submitted by both sides was accepted. Defendants offered into evidence Exhibits A through I, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

2

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the custody of DOC in April, 2002. He initially was a placed at the Denver Reception and Diagnostic Center (DRDC). In May, 2002, he was placed at the Colorado State Penitentiary (CSP) in Canon City, Colorado.

Claimant testified that he noticed a problem when he had difficulty listening to his television. He had to turn it all the way up to hear it. This created problems with others in his pod. It also created problems in dealing with some correctional officers.

Specifically, Claimant began to have troubles with CO Patterson. At the CSP, inmates are usually confined to their cells for twenty-three hours a day. Inmates are fed in their cells, with food trays being passed through a slot in the door. Claimant testified that CO Patterson would become angry if Claimant was not at the slot the minute food was available to him. CO Patterson said to Claimant that there would be no food unless he was at the door. Claimant reiterated to this correctional officer that he had trouble hearing his commands.

When threatened with no food, Claimant filed a grievance. According to Claimant, this found its way back to CO Patterson who called him on the intercom in his cell and used racial epithets against him. Claimant advised others that he had a hearing problem and cannot hear all commands. Claimant did indicate that he has had two audiograms since arriving into DOC custody.

Claimant also testified that he has a mobility problem that is the result of back problems in his spine. Claimant had seen a chiropractor for several months in the 1980's for his back. This treatment was helpful to him. He has not had surgery on his back. He did tell the people at DRDC that he had back problems. Sometimes walking can be a problem.

Claimant testified that he has degenerative disk disease. He can't sit up for long periods of time. He is in a lot of pain. Sometime his "back will lock up for days at a time." He was sent to a hospital in Pueblo in February, 2006 for examination of his back. The ride in the van to the hospital was difficult and hard on his spine. Claimant testified that he does exercise in his cell to attempt to control his pain and physical condition. He has started doing yoga exercises as a way to feel better. When he is granted release to the exercise room, he will walk around to help with his back. Claimant did testify that he does have to climb stairs occasionally and must stop periodically.

Claimant indicated that he had been advised that he had some hearing loss. He would like to have a closed captioned television in his cell. He believed that he has received substandard medical care while in DOC custody.

On cross-examination, Claimant admitted that he had flooded his cell one day in order to get attention. He further stated that he had not been able to work his way into the pro unit, which is the program utilized to transition CSP inmates to less restrictive facilities. Claimant further stated that he would like to receive chiropractic treatment while in custody.

Claimant called Katie Cathcart, a DOC employee. Ms. Cathcart was a sergeant on Claimant's pod and was aware of the discussion surrounding CO Patterson's directive to Claimant to be at the tray slot when he came around.

Defendants called Larry Watkins, who is a case manager at CSP. He has been the case manager for Claimant for one and one-half years. He discussed the eligibility requirements in order

to go into the pro unit. Claimant does not meet that criteria, as his behavior has not been good. Claimant has completed four programs that may allow him to be placed into the pro unit.

Claimant further testified that he did testify by telephone at the fairness hearing held before Judge Nottingham in late August, 2003. He believed that he was subjected to retaliation as the result of this testimony. A stool was broken in his cell. He has had disciplinary convictions. Those convictions, coupled with other negative behavior, have made it impossible for Claimant to be placed at a lower security facility.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems. There was no testimony or evidence presented by Claimant that indicated that he falls under this definition. Claimant does not fall into the category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant has had back problems that predated his entrance into DOC. He received chiropractic care for his back problems before entering into DOC custody. Claimant does not meet the narrow definition set forth in the Settlement Agreement.

**Hearing Impairment:** In order to meet the narrow definition of hearing impaired set forth in the Settlement Agreement, a claimant must meet the following standard:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

Audiograms given to Claimant gave conflicting results. It does appear that Claimant has some hearing loss.

To be absolutely blunt, the Settlement Agreement requires a claimant to be legally deaf and require lip reading, signing or written communication. Claimant does not have a hearing loss to that extent. He loss is noticeable to him and leads to the problems that he described with CO Patterson. The Special Master is bound by the definitions in the Settlement Agreement, and Claimant is not part of the class that is hearing impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is no. Claimant was placed into the highest security prison in the state system. His behavior has led to disciplinary convictions and loss of privileges. His behavior cannot be blamed upon his physical condition. Claimant has failed to progress into a lower security facility because of his actions. There is no evidence that any actions against Claimant were discriminatory because of his physical conditions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #3 has been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 30, 2006.**

SIGNED this 31st day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master