IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-126
Category III
Claimant: Roy Allen Embry, #43885
Address of Claimant: FLCF, P.O. Box 1000, Fort Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 30, 2005. This hearing was held at the Fort Lyon Correctional Facility (FLCF) in Fort Lyon, Colorado. Present were the following: Roy Allen Embry (Claimant); and Jess Dance, attorney for Defendants.

Testimony was received from the following witnesses for Claimant: Claimant; Rene Martinez; Brian Webster; Michael Howard; Linda Worthen; Jeannine Morris; Robert Gilardo; and Marvin Maltby. Defendants presented the following witnesses: Daryl Vigil; Richard Weems; Rae Timme; and Diane Gilbert. All exhibits offered into evidence by both sides were accepted. Defendants requested time in which to submit an affidavit from Dr. Shames, and that request was granted. That affidavit has been reviewed, and Claimant has filed a rebuttal. The case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants.

Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to

"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. A brief review will be made of the testimony presented by all witnesses.

Claimant called as his first witness Rene Martinez. She testified that she is the health services

administrator at FLCF. She remembered an issue that had arisen concerning Claimant's use of a wheelchair. She recalled little beyond that, other than Claimant had received a new wheelchair.

The next witness was Brian Webster, a physician's assistant at the Sterling Correctional Facility (SCF). He testified that Claimant was wheelchair bound when he as in custody at that facility. He did recall Claimant from the time he was at SCF, but did not remember much about the situation there. There was a conference concerning a wheelchair and gloves, but he did not recall anything concerning a grievance.

Lieutenant Michael Howard remembered Claimant when he was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant had come to the facility with velcro shirts (no buttons) and elastic pants. These were taken from him, as they were not allowed at CTCF. The policy at that facility was to allow a shirt or pants that was one size larger than normal. On cross-examination Lt. Howard testified that property rules will vary among DOC correctional facilities. An inmate at CTCF is allowed one pair of shoes, either black issue shoes or white tennis shoes. Authorization was required for special shoes. Lt. Howard testified that he had no authority to make exceptions to CTCF policy on boots.

Sergeant Linda Worthen is now working at the Colorado Women's Correctional Facility, but previously had been at CTCF. Sergeant Worthen remembered Claimant and recalled an incident in November, 2003 when Claimant had health problems and had been denied treatment for a left hip problem. The medical department at CTCF had refused to see Claimant. Seregant Worthen had staff transport Claimant to the medical department.

Jeannine Morris had been Claimant's case manager at SCF. She recalled dealing with Claimant. She remembered Claimant trying to obtain employment. Claimant had wanted to work for Colorado Industries, but was not able to do so. She had tried to assist Claimant in finding a job. Claimant was in a wheelchair at that time. Ms. Morris did call an individual by the name of Mike at Colorado Industries and found out that Claimant would not be disqualified from working with that agency while in a wheelchair. Ms. Morris remember some question about whether Claimant had a high school diploma. Claimant began working in December, 2004 as an inmate representative.

Lieutenant Robert Gilardo recalled Claimant from his placement at CTCF. He remembered Claimant being moved to cell house 3. He recalled further that Claimant wanted to obtain a trapeze, a device that is located over a bed to allow a disabled inmate to get in and out of that bed. Lt. Gilardo testified that Claimant fell out of bed on one occasion. He recalled that Claimant was able to take care of himself. Lt. Gilardo recalled further the transfer of Claimant to SCF. Claimant returned to CTCF at one point and had certain items taken from him. Velcro shirts that had been provided at SCF were taken from him. On cross-examination, Lt. Gilardo testified that security issues arise on certain occasions with items that are being carried in by an inmate. He further stated that Claimant was pretty much able to care for himself. Claimant would roll himself around in his wheelchair, though occasionally he needed help. No trapeze was provided to him at CTCF.

Marvin Maltby, R.N. is employed at FLCF in the medical department. He recalled looking

4

for a trapeze. He never did find a complete trapeze. A trapeze had been provided for another inmate.

Claimant testified that he first came into DOC custody in December, 1976. He was placed at a number of facilities over the following years, but then was transferred into federal custody in 1988. Claimant returned to DOC custody in 1994.

Upon his return to DOC custody, Claimant was placed at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. In March, 2004, Claimant was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. Finally, Claimant was transferred to FLCF in March, 2005. He then was transferred back to CTCF, but returned to FLCF in August, 2005.

Claimant testified that since returning to DOC custody he has not been able to find steady employment. He has had a multitude of excuses given to him, but he believes all relate to his physical condition. Claimant is in a wheelchair and believes that work has been denied to him because of this. He specifically had requested work at the tab plant at CTCF that pays more than the subsistence amount provided to unassigned inmates.

Claimant related that he had completed an associates degree through Parks College. He believed that this should have given him an edge in obtaining work at the tab plant or through another program in correctional industries. He never was interviewed for the tab plant and was told by someone that his wheelchair could never clear the metal detector at the tab plant entrance.

Claimant further stated that he had health care items taken from him when he arrived at CTCF. He had received a certificate to have these items, but that did not appear to matter. This process of denying health appliances also occurred at other facilities. Claimant testified that he had received tennis shoes as the result of a medical decision. These were taken from him. He also had wheelchair gloves and stretch pants taken from him. When he arrived at CTCF, he was advised that he could not have velcro shirts and pants.

Besides being wheelchair bound, Claimant also has diabetes and Hepatitis C. Claimant was directed to take a drug called Actose but was not doing so at the time of the hearing.

Claimant testified that he was approved for a handicapped cell in 1995 at CTCF. He has needed a cell that was large enough to accommodate his wheel chair. Claimant has not received handicapped cells at times over the years. In September, 2000, Claimant was seen by a medical provider in CTCF and told that he did not need a "wet" cell. Claimant objected, as he has a disorder of his colon that requires manual removal of feces. He had a single cell up to 2003 when he lost that status. He requested return to a single cell in 2004. When Claimant was transferred to SCF, he was placed into a non-handicapped cell. The cell he was in was not safe because of his physical limitations. He fell several times when trying to get onto the toilet. He had requested at CTCF a trapeze and believed that one had been ordered. This would make his transfer from his bed to his wheelchair easier and safer. He has yet to receive a trapeze.

5

Claimant requested repairs to his wheelchair on several occasions. The repairs were delayed. He was burned by hot water on his hip as the result of his mobility impairments, but did not receive prompt medical care. Sergeant Worthen did get Claimant to medical for care for this injury.

On cross-examination, Claimant testified that he is on a special floor at the present time. The area where he lives has two toilets. The shower has handrails and a appropriate chair. Claimant further testified that he was diagnosed with diabetes in 2002. His issue has been one dealing with shoes. He has tried to deal with his diabetes by diet and exercise.

When asked about employment, Claimant stated that he had attempted to obtain a position for years. He was a volunteer inmate representative at SCF. When asked about his stay at SCF, Claimant indicated that he had fallen three times. Rails and other changes were not done immediately, and he was in a non-handicapped cell for four months. He also stated that he did not have any major complaints concerning DOC medical care.

Defendants called four witnesses to testify. Daryl Vigil is the DOC classification supervisor. He discussed various policies concerning property and that some items are not allowable at certain facilities, normally due to security concerns. There is an attempt to have uniformity of clothing and footwear.

Richard Weems is the acting director of facilities at DOC. He has been part of program to implement *Montez* reforms in buildings and other facilities. He testified that there are handicapped cells available at FLCF. He did not believe that a trapeze was necessary for Claimant. He also testified that cells at SCF had been modified to meet ADA criteria.

Rae Timme is the custody and control manager at FLCF. She indicated that a trapeze could be used as a weapon. She indicated that DOC policy is to try to minimize items in a cell. She testified that she only vaguely recalled talking with Claimant in the yard concerning a trapeze. Diane Gilbert, a nurse at FLCF, testified that she was unaware of any trapeze being used presently by an inmate at FLCF, but acknowledged that one had been used in the past.

After the hearing was concluded, Defendants were given permission to submit an affidavit from Dr. Shames. Defendants submitted an additional affidavit from Sergeant James Boone who is employed at FLCF. Sergeant Boone claimed in his affidavit that he observed Claimant standing under his own power on January 12, 2006. He claimed further that Claimant admitted that he is able to stand for a few seconds. Also included in the affidavit are alleged statements from other inmates that Claimant is manipulative and threatening. In response to this affidavit, Claimant submitted his own statement and counter affidavits that indicate that he truly is a paraplegic.

Dr. Shames in his affidavit acknowledges that Claimant has been determined to have a permanent mobility disability. Claimant has not sought an accommodation evaluation for diabetes, but was diagnosed with the disease in 2002. He is receiving a diabetic diet and snacks. He has been non-compliant with his diet at times, as well as in taking his medications. He has been told to report for finger sticks.

**III.**

In his initial claim form, Claimant claimed that he had the following impairments: mobility impairment; vision impairment; and diabetes. At the hearing, Claimant requested to withdraw his vision impairment claim. That request was granted. Defendants at the hearing stated that Claimant was mobility impaired due to his full-time use of a wheelchair and that he is diabetic.

It is important to note that the Settlement Agreement requires that a claimant prove that he or she had a listed disability on or before August 27, 2003. It is that date that is crucial for evaluation of a claim. If a claimant has established the claim for discrimination, then he may request to amend his complaint to include issues that post-date August 27, 2003.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Diabetes:** Claimant has diabetes, and that is acknowledged by Defendants. There is a dispute as to whether he meets the definition under the remedial plan.

The Settlement Agreement provides that diabetes relates to those "[i]nmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." The Settlement Agreement does not define further the term "accessible housing." This Special Master has found that the term "accessible housing" means access to those things that are needed to live. This would include health care and other items crucial for a diabetic's well being.

From the evidence presented for the period of 2002 to August 27, 2003, Claimant's life did not dramatically change when he was diagnosed with diabetes. He started to receive a special diet and snacks. He also began to receive medication. The evidence presented by both sides fails to establish that the diabetes has risen to the level required by the Settlement Agreement. The Special Master finds that Claimant is not part of the class for diabetes.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. In this case, Defendants conceded at the hearing that Claimant was wheelchair bound and mobility impaired. After the hearing, Defendants appeared to be arguing that Claimant is not totality disabled because Sergeant Boone saw him standing on January 12, 2006.

The period of time at issue on this claim is 1994 through August 27, 2003. Claimant was in a wheelchair during this entire period. Defendants appear to be arguing that Claimant is some type of fraud, but the record belies that. It was not refuted that Claimant had been shot in the back in the

mid-1970's. He may have some residual abilities to stand. Claimant has damage to his back that limits his mobility. To imply that he can walk one hundred yards or climb steps without stopping is a bit much. The Special Master determines that Claimant meets the criteria for mobility impairment for the period ending on August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The Special Master finds that two areas of discrimination have been proven by Claimant. He testified that he had applied for work at CTCF, including work at the tag plant. He testified that he never received even an interview, though having completed on his own an associates degree program. Claimant further testified that he was told that his wheelchair would not be able to go through a metal detector. Claimant was aware that other handicapped individuals had received positions at the tag plant, but no one explained to him why he did not receive such a position. Defendants did not refute this point or offer counter evidence as to why Claimant did not have even an interview for a tag plant position. The Special Master finds that Claimant was subjected to discrimination in the treatment he received concerning seeking employment at the tag plant.

The second area of discrimination occurred when Claimant was transferred to SCF. This transfer post-dates August 27, 2003, but Claimant is permitted to pursue this part of his claim since he has established his claim for the time period required for the Settlement Agreement. Claimant was placed into a non-handicapped cell. He fell three times trying to use the toilet and had other problems. He was required to use facilities that he were not safe for him. The Special Master finds that Claimant was subjected to discrimination in being placed into an inappropriate cell at SCF and that he suffered injuries and damages as a result.

A brief note should be made concerning one other point. Claimant appeared to be fixated on a trapeze and his need for one. The evidence was conflicting. The Special Master cannot find that a trapeze constitutes a item that Claimant must have to live. Under the circumstances, sound and compelling reasons were offered why it should not be provided to Claimant. Those security reasons are entitled to due deference. The Special Master will not direct that Defendants provide a trapeze to Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has suffered as the result of the discrimination described in the previous section. The Special Master determines that Claimant should receive $750.00 as damages.

IT IS HEREBY ORDERED that the claim of Roy Allen Embry is sustained to the extent set forth in this Final Order as to discrimination in employment at CTCF and placement at SCF into non-handicapped cells; and

8

IT IS FURTHER ORDERED that the claim of Roy Allen Embry is denied in all other aspects; and

IT IS FURTHER ORDERED that Claimant is awarded $750.00 in damages; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 5, 2006.**

SIGNED this 3rd day of April, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master