ORIGINAL

| Court Address: US DISTRICT COURT 901--19th Street Denver, Co 90294 | FILED UNITED STATES DISTRICT COURT DENVER, COLORADO APR - 6 2006 GREGORY C. LANGHAM CLERK |
|---|---|
| JESSE MONTEZ, ET AL<br>Plaintiff,<br>BILL OWENS, ET AL<br>v.<br>Defendant(s). | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address): JILL COIT #86530 Claim number 03-129 P.O.BOX 392005, Denver, Co 80239 | Case No.: 92 CV 870 96 cv 343<br>Div/Ctrm: |
| COMBINED MOTION FOR CONTEMPT CITATION(S), FOR ORDER(S) DIRECTING RELIEF, AND FOR REMOVAL OF CDOC ADA INMATE COORDINATOR WITH REPLACEMENT DETERMINATION BY JUDGE KANE. | |

COMES NOW, Claimant Jill Coit, DOC # 86530, MRP Claim No. 03-129, and requests this Court to issue Citations of Contempt to the Colorado Department of Corrections, to issue Order(s) Directing Relief on behalf of said Claimant, and to find cause for Removal of the CDOC ADA Inmate Coordinator (with subsequent replacement being a neutral party determined by Judge John Kane). In support of these requests, Ms. Coit states:

1. Claimant Coit is recognized as a qualified member of the Montez class action against the Colorado Department of Correction; she is, therefore, entitled to all reliefs enunciated in the MRP.

2. Ms. Coit has made diligent efforts to secure relief for her recognized medical conditions, to obtain care and accomodations as authorized under the "plan", and to receive re-provision of medical prescriptions/appliances previously accorded, but later removed/lost/denied due to inter-facility movement.

prepared by S. R.

3. Despite assurances made by Dr. Cary Shames, Director of Medical Service, CDOC, at an MRP hearing, held on October 31, 2005, that re-screening/update to facilitate timely accomodations would be completed within ten (10) days, following (in response to query by Judge Pringle), no positive attempt(s) have been forthcoming. CDOC has, under the authority granted Cathie Holst, A.I.C., failed to effect any relief.

4. On March 9, 2006, Claimant Coit wrote to RAndy Smith, HSA, Clinical Services, DWCF, regarding previously-provided medical appliance replacements. (Attachment "A"). Mr. Smith, on March 20, 2006 responded, citing contact with and input by CAthie Holst, A.I.C., which indicated non-inclusion in MRP, due to Ms. Holst not having been provided with completed "appropriate paperwork" -- ostensibly Request for Accomodation and Medical RElease forms. (the Exhibits accompanying Attachment "A" --Items 3-9 -- were contained in the exhibits ADMITTED into evidence at hearing on October 31, 2005, and were numbered: "Z", "P", "DD" "K, pg.9", "EE", and "GG".). (also see: Attachment "A-1").

5. Mr. Smith's reply letter, which clearly asserts reliance upon contrary input from CAthie HOlst, A.I.C. (and which is, by virtue of DOC internal policy, binding upon Mr. Smith) is not only incorrect, and a deliberate circumvention of the stated parameters ordered in MRP, but is proof of critical failure in the management and operation of the Office of Legal Service, AIC, under the auspices of Cathie HOlst.

6. Claimant Coit has not only complied with the requirements of MRP/ADA qualification assessment procedures, but has done so numerous times -- Ms. Holst has repeatedly denied receipt of these documents, inferred incompleteness, or in some other

manner negated Ms. Coit's performance of her responsibilities. Following, is a list of attachments, inclusive of a brief description, which prove Claimant's compliance (and also prove a complete failure in the Office of Legal Affairs --either directly or through incompetent management under Ms. Holst--of maintenance and conservation of medical/legal documents).

ATTACHMENT "B" (INCLUSIVE)

B-1: Supplemental Form-Mobility, completed approx. 2-29-04.
B-2: Supplemental Form-Hearing, completed approx. 2-29-04.
B-3: Supplemental Form-Vision, completed approx. 2-29-04. (above, also submitted to this Court, as well as AIC).
B-4: MedicaL Release (amended) completed 2-29-04
B-5: Medical Screening Forms for Montez/ADA [Mobility, Other(Hearing, Vision, Diabetes)]] completed by Dr. Mitra Razzaghi on March 16, 2004 and FAXED TO DOC LEGAL SERVICES ON MARCH 16, 2004 (see: fax date-time stamp); and, THEN FAXED BACK TO DWCF BY DOC LEGAL SERVICES ON MARCH 25, 2004 (seel fax date-time stamp).
B-6: Accomodation Resolution Form, prepared by Cathie HOlst, dated March 22, 2004, stamped as faxed/mailed on 3-22-04, and countersigned by Mitra RAzzaghi, M.D. on 3-22-04.
B-7: REVISED Accomodation Resolution Form, prepared by CAthie HOlst, dated March 23, 2004, and countersigned by Mitra Razzaghi, M.D. 3-23-04.
B-8: Memorandum from Cathie HOlst to Claimant, dated October 29, 2004 (indicative of "recent correspondence" re: ADA form)
B-9: Ambulatory Health Record, dated 1-25-05, noting that "before final decision" (on medical appliances)) discussion with "administration and the legal department" will occur. (What is the implication of deferring MEDICAL DECISONS to non-medically-licensed individuals in DOC administration/legal departments?)_.
B-10: "Medical Message" regarding another request for medical appliance accomodation; there is again a deferral to legal on medical issues -- either previously resolved or newly addressed. Legal should not be able to influence medically sound determinations.
B-11: (ANOTHER) Medical Release, dated February 2, 2005.
B-12: Memorandum from Cathie Holst, dated October 20, 2005, requesting completion of Request for Accomodation and Medical Release (completed forms, dated 10-27-05, accompany)
B-13: FINAL ORDER OF SPECIAL MASTER, dated December 15, 2005, sustaining claimant's disablility discrimination "under the ADA, the Rehabilitation Act and the Remedial Plan."
B-14: Letter, accompanying return of exhibits, dated 3-17-06.

The documents represent absolute proof that Coit has previously submitted the "appropriate paperwork" as required; Coit has been found by this Court to satisfy Montez. Any remediation, or even

further assessments for deterioration of ADA-identified conditions are strictly medical considerations.

7. Ms. HOlst, the CDOC Medical Department, et al, continue to dissemble before this Court, exhibiting absolute contempt for the orders and intent of same as pronounced The Court has guaranteed Ms. Coit and all other members of Montez/ADA relief; this relief is being diminished, withheld, and generally marginalized or refused by DOC, as exemplified by the actions of and insinuations into medically-secular situations.

8. Simply put, CDOC is in total contempt of both the spirit of and the Order issued by this Court regarding the issues in MOntez.

9. CDOC continues to deny replacement of medical appliances, and through the non-professional dissembling of Cathie HOlst (which borders upon making medical determinations thereby implicating the practice of medicine without proper licensure -- illegal, by statute in the State of Colorado), abidges the order and mandate of Montez..

10. The management of CDOC Office of Offender Legal Services, under the auspices of Cathie Holst is either operated with complete ineptitude regarding case file management, or is hampered by a deliberate unethical propensity to impede Claimant's postion and accomodations. Ms. Holst's constant assertions that "proper paperwork" has not been filed, thereby foreclosing Claimant from relief under Montex/ADA is provably flawed. Not only has the questined "paperwork" been numerous-times filed, but this Court held hearings, at which Ms. Holst testified; the Court then awarded remuneration under Montez. Ms. HOlst clearly exhibits an "agenda" directed to the detriment of Claimant Coit and potentially equally detrimental to all other qualified inmate participants in Montez.

11. Ms. Coit was provided with yet another document acknowledging her disabilities -- this one signed by N.P. Jamie Harrelson on March 20, 2006** (While unprovable hearsay, Ms. Coit overheard commentary that she would "never get anything without a Court order." )

WHEREFORE, Claimant Coit herein prays this Court for a direct and explicit Order to CDOC that all requested medical appliances, accomodations, special property, as enunciated previously held be returned, re-provided, or otherwise accorded within 21 days of Order. Further, accomodations as contemplated in the Court's Montez Remedial Plan (i.e., hobbycrafts on an absolute par with non-disabled inmates, and facilitatable by mechanical means.) should also be Ordered made available within the same 21-day window.

FURTHER, Claimant Coit asks this Court to Order CDOC replace CAthie HOlst as the ADA Inmate Coordinator, and to find that this replacement Order is for cause. Claimant further asks that the replacement CDOC AIC be selected by JUdge John Kane in order to assure a fair and impartial facilitator. She also suggests that, as CDOC persists in placing medical determinations into the purview of the AIC, this person must be both a physician and a legally-schooled party.

RESPECTFULLY SUBMITTED, this 4 day of April, 2006

Jill Coit

Jill Coit, Claimant Pro Se,
DOC #86530; Claimant #03-129
Denver Women's Correctional Facility
P.O. Box 392005
Denver, CO. 80239

**Attachment "C".

CERTIFICATE OF MAILING

I swear I placed in the US mail, postage pre paid to the following:
US DISTRICT
JUDGE BORCHERS/PRINGLE
MR. ADAM WIENS-ATTORNEY GENERAL

THIS 4 day Of April, 2006

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**
**DENVER WOMENS CORRECTIONAL FACILTY**
**CLINICAL SERVICES**
**Randy R. Smith, Health Services Administrator**
**3600 Havana Street, Denver, CO 80239**

March 20, 2006

To: Ms. J. Coit, #86530
From: Randy R. Smith, HSA, Clinical Services, DWCF
Subject: Montez Resolution / Response to Letter

Ms. J. Coit

I have submitted an inquiry based on your requests to HQ and have discussed your letter dated February 9th to myself and NP Harrelson with Cathie Holst of Legal Services. My question to Legal was whether you were under the ADA Accommodation Resolution as referred to in your letter. Ms. Holst replied that they have sent numerous communiqué to you so that you may fill out the appropriate paperwork to be considered for a formal ADA Screening.

Currently, you do not fall under the Montez Resolution Plan as indicated in your letter. Ms. Holst suggested I convey to you the importance of completing the appropriate forms and request a formal screening. She also asked me to have you send all future correspondence concerning the legality of the Montez Resolution to the attention of the A.I.C at Legal Services and they will assist you with your claim. After the screening is complete, Legal Services will be able to communicate a determination whether you are a qualified disability pursuant to the mandates of the Montez Remedial Plan.

In response to the braces/property loss as indicated in your letter, I am unable to secure your braces until you comply with the above screening as that will indicate a need for definitive medical care. Once I am authorized to issue these devices to you based on your healthcare needs as dictated from the results of the hearing, I will do so immediately.

Randy R. Smith

Randy R. Smith, HSA, Clinical Services, DWCF

EXHIBIT "A-1"

February 9, 2006

Dear Mr. Smith and Rae Rice,

I met with Jamie yesterday and she told me to write you regarding my braces (back brace), tens unit, support hose, medical mattress (egg crate) and heating pad. I have enclosed a copy of the Montez Remedial Plan of which I am a member. It clearly states that DOC has 7 days to order medical appliances and that no previously allowed medial equipment at prior facility will be denied. I have also enclosed a copy of my property sheet to refresh your memory on what medical equipment I had at CWCF. Remember no one can figure out why my medical equipment was taken from me when I came to DWCF in October 2001 and lost.

I am not going to debate what happened or place blame; I merely want the situation resolved and medical appliances returned to me.

Please see me immediately so we can work out these issues and get me fitted for my back brace. Enclosed please find the medical orders for my back brace. If you need more documentation I will be happy to provide you with your own medical records so you do not have spend hours researching my medical files.

If I do not hear from you in the next week I will assume you are just blowing me off and will go to the next step. I am supposed to eliminate as much stress as I can and this can be worked out easily. I think I have been more than reasonable and fair especially since this problem has taken so long to resolve.

Thanks,

Jill Coit # 86530

Exhibits attached:

1. Montez Remedial Plan
2. Property sheet from CWCF showing: Back braces, moist heating pad (which is sitting in Pat's office), Tens unit, cervical and wedge pillow.
3. Medical record dated 8-5-04 that states, Ms. Rice/ Pat V "Please order lumbar corset, Message to Pt".
4. Query Medical Information dated 12/20/2000 Moist heating pad, cervical pillow, tens unit, 2 hours sun shine x 5 years
5. Medical record dated 7-14-00 "growth on bottom of left foot causing her to walk on side of foot... causing (?) causing (?) causing (?) causing (?) hip pain.
6. Needs warm environment due to arthritis
7. Consultation Report dated 6-29-05 ".as well as replacement of worn out shoe lift (due to 1.5 inch leg length discrepancy) Both DMEs are more than 1 year old and have been approved multiple times before. " "4. great morbidity and functional disability."
8. Medical Record dated 11-04-03 "Pt requires orthotics for heel spur (R) Pt requires custom made shoe with 1 ½ inch left sole buildup."
9. Medial Record dated 11/11/99 "tens purchase authorization # A 0135820. to continue use of tens unit as needed for pain relief as previously instructed".
10. Medical Record date 11/29/04 for heating pad
11. AR Offender Property 850-06 that shows that medical items are the exception to the rule that all items are ordered though Canteen. If you just followed that rule it would help eliminate 90% of your work and allow inmates families to order directly from distributors thus saving your budget from paying for items.
12. To update your records, apparently Joyce told transport that I did not have anything in the file that says I need to be "warm" on transport. Here is medical record stating that "Pt needs to avoid cold environment as much as possible" I would like to see the comments section in restrictions placed in my file. Common sense would dictate that if I was to avoid cold environments I would be allowed my medical coat on transport when it is freezing out.

Let me known if you need more?

CC
Judge Pringle-Montez Remedial Plan
File

EXHIBIT "A"

# STATE OF COLORADO

**DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone: (719) 597-9580
Fax: (719) 226-4755
Web: www.doc.state.co.us

## MEMORANDUM

TO: Offender Jill Coit #86530
DWCF

FROM: Cathie Holst
AIC

RE: Recent correspondence

DATE: October 29, 2004

---

Offender Coit, I explained to you in earlier memos that your request for an ADA accommodation was to be submitted on the form designed for that purpose with one additional page attached if necessary and that your requests were to be made without embellishment or discussion.

I further informed you that sending me voluminous records was unnecessary and unwelcome and I am returning the latest shipment to you without having read or copied it for my files. By this memo I am instructing you not to send me this information again. If I receive it, it will be destroyed.

My office does not make the determination of your disability status, therefore the records you send here are useless to me. My office only recommends appropriate accommodations **after** you have been determined to be disabled; that determination is made by Clinical Services. Clinical Services has not formally determined that you have a qualifying disability.

Finally, you have failed to return a properly completed medical release to me. As I have explained to you on several occasions, I will take no action with respect to your requests until I have the release in my file.

Thank you for your attention.

cc: AIC File

EXHIBIT "B-8"

EXHIBIT B-6-@ 5

# ACCOMMODATION RESOLUTION

| NAME | Jill Coit | DOC | 86530 |
|---|---|---|---|
| FACILITY | CWCF | DATE RESOLVED | 3-22-04 |
| DISABILITY | Mobility | PROVIDER | Dr. Razzaghi |

| DOCUMENTATION | Cat | Refer to Medical Chart |
|---|---|---|
| Staff observations will be forthcoming. | | |
| **REQUEST** | Cat | |
| Has carpal tunnel, arthritis, leg length discrepancy, growth on foot, heel spurs, torn tendon in knee, immune system, allergies, heart attack & hip replacement. She wants a special typewriter, to remain at DWCF & medical appliances. | | |
| **ACCOMMODATION** | Cat | Agreed upon until staff observation is completed |
| Spoke w/ Dr. Razzaghi regarding Coit's disability & need to provide accommodations. We discussed each problem & accommodation individually & it was decided that more info is still needed to make certain determinations regarding necessary accommodations. What is agreed upon now is as follows: The offender requires a lower tier & bunk, no lifting over 5 lbs., a shower chair, she can ambulate up or down 8-10 stairs & can sit in class, a program or work situation for 2 hours & then needs to be allowed to stand, stretch & move about for a few minutes. She can then return to a sitting position. The offender does not require a handicap cell as appears in her chart. Rather, she can be easily accommodated by provided her w/ a walker to provide stability when she gets on & off the toilet. The walker is to be used in her cell only. Dr. Razzaghi still requires staff to observe this offender as she ambulates through her daily activities to adequately access her need for a specific type of typewriter & her ability to climb stairs. The assignment for observation will be made & information sent to Dr. Razzaghi in order for her to make her final determination. We ask that she consult w/ Dr. Cabiling at CWCF. I will complete the Accommodation Resolution, fax to Dr. Razzaghi for her signature which will remain in effect until the observation is completed. Changes may be made at that time if necessary.<br><br>The Dr. has found no qualifying hearing disability & therefore, no accommodations are necessary. The offender has hearing aids. | | |

Signature: Provider — [signature] MD  Date: 3/22/04

Signature: AIC — [signature] Cassie Haist  Date: Faxed/Mailed 3/22/04  MAR 22 2004

B-6

EXHIBIT B-7

5

# ACCOMMODATION RESOLUTION

| NAME | Jill Coit | DOC # | 86530 |
|---|---|---|---|
| FACILITY | CWCF | DATE RESOLVED | 3-23-04 |
| DISABILITY | Mobility | PROVIDER | Dr. Razzaghi |

**REQUEST FOR ACCOMMODATION**

Has carpal tunnel, arthritis, leg length discrepancy, growth on foot, heel spurs, torn tendon in knee, immune system, allergies, heart attack & hip replacement. She wants a special typewriter, to remain at DWCF & medical appliances.

**ACCOMMODATION**

Spoke w/ Dr. Razzaghi regarding Coit's disability & need to provide accommodations. We discussed each problem & accommodation individually & it was decided that more info is still needed to make certain determinations regarding necessary accommodations. What is agreed upon now is as follows: The offender requires a lower tier & bunk, no lifting over 5 lbs., a shower chair, she can ambulate up or down 8-10 stairs & can sit in class, a program or work situation for 2 hours & then needs to be allowed to stand, stretch & move about for a few minutes. She can then return to a sitting position. The offender does not require a handicap cell as has previously appeared in her chart. Rather, she can be easily accommodated by providing her with a walker to provide stability when she gets on & off the toilet. The walker is to be used in her cell only. Dr. Razzaghi still requires staff to observe this offender as she ambulates through her daily activities to adequately access her need for a specific type of typewriter & her ability to climb stairs. The assignment for observation will be made & information sent to Dr. Razzaghi in order for her to make her final determination. We ask that she consult w/ Dr. Cabiling at CWCF. I will complete the Accommodation Resolution, fax to Dr. Razzaghi for her signature which will remain in effect until the observation is completed. Changes may be made at that time if necessary.

The Dr. has found no qualifying hearing disability & therefore, no accommodations are necessary. The offender has hearing aids.

REVISIONS MADE 3-23-04

Offender remains at CTCF infirmary until necessary equipment can be purchased & installed at CWCF. DOC will purchase a raised toilet instead of a walker. A shower chair will be purchased.

Dr. Razzaghi has added the following restrictions: No pulling or pushing of 5 or more lbs. No thoracic twisting, instead of a walker the offender will be provided a high rise toilet seat, offender needs to move about for up to 15 minutes after sitting for 2 hours, no prolonged standing over 2 hours, no excessive exercise, no hard labor.

Signature: Provider ____ Date 3/23/04

Signature: AIC Cathie Holst ____ Date 3/23/04

B-7

# MOBILITY SCREENING

*(applies to lower extremities only)*

EXHIBIT ______

PATIENT NAME Coit, Jill

DOC # 86530 DATE 3/16/04

1. Does the patient require the use of a wheelchair for more than 6 months? Yes **(No)** (Circle one)
*If yes, the patient automatically meets the Montez criteria and requires special placement in a handicapped cell at a designated facility unless he/she has "opted out" of special placement. Contact the AIC if the patient needs to be moved to another facility or into a handicap cell in the current facility.*

2. If yes, does the patient have upper body strength to compensate for disability? N/A
   - Can he move from wheelchair to toilet? Yes No
   - Can he move from wheelchair to bunk? Yes No
   - Can he dress himself, get his meals, and attend programs, classes or recreation by himself? Yes No
   - Can he remain in a wheelchair all day? Yes No

3. If yes, does this patient require the assistance of an inmate aide? Yes No
   What percentage of the time? Full Part
   To perform what duties?

4. If the patient does not require the use of a wheelchair, can he walk 100 yards on a level surface or climb a flight of stairs without a pause? No per pt (not observed by staff)

5. Does the patient require the use of other assistive devices (cane, walker, crutches, special clothing, footwear, or prosthetics, etc.)? If so, what? [illegible] **(Yes)** No — brace for left [illegible] 2 wrist splints

6. Does the patient have a catheter? Yes **(No)**

7. Does he require an assignment to a handicapped table? Yes **(No)**
   Is this patient assigned to a handicapped table in the chow hall? Yes No

8. Does he require a shower chair? **(Yes)** No
   Is a shower chair available in his living unit? **(Yes)** No

9. Is this patient capable of attending class/programs/work for a full day? Yes **(No)**
   If no, how many hours per day is he capable of attending? on 2 hr restriction since 1998

10. Does the patient complain of any other problem(s) associated with the mobility impairment that have not been addressed? **(Yes)** No
    If yes, what are they? Pt has degenerative changes in lower back with L4-L5 disc space narrowing. no neurological change but causing pain + decreased range of motion. Also has (R) total hip prosthesis and (L) hip degeneration

11. Is the patient's condition affected by the seasons or weather? **(Yes)** No
    Explain: More pronounced pain in cold weather

*If you have determined that this patient DOES have a mobility impairment, contact the AIC to discuss what accommodations, if any, are appropriate.*

+ left knee meniscus tear - has had OR

[signature]
Signature & Title

B-5-A

5

# OTHER DISABILITY SCREENING

PATIENT NAME Coit, Jill

DOC # 86530

DATE 3/16/04

1. Does the patient have a medical and/or mental health condition which substantially effects his or her ability to perform a major life function (e.g., walking, breathing, thinking, seeing, etc)? Examples of conditions which might have such an impact are multiple sclerosis, congestive heart failure, chronic asthma, schizophrenia, paralysis or absence of an upper body limb. Yes No (Circle one)

2. Give name and description of the condition:
   BL wrist degenerative joint disease with mild ulnar deviation.

3. Is the condition expected to last longer than 6 months? (Yes) No (Circle one)

4. Is the condition expected to deteriorate or improve? Slow deterioration with advanced age

5. Describe the major life function that is substantially limited by the condition and the degree to which the function is limited:
   Pt c/o pain while cutting hair, turning knobs, typing, doing crafts, writing.
   (Need observation by staff)

*If you have determined that this patient MAY have another disability, contact the AIC to discuss what accommodations, if any, are appropriate.*

Observe

[signature], [illegible]
Signature & Title

EXHIBIT B-5-B

# HEARING SCREENING

PATIENT NAME Cort, Jill

DOC # 86530 DATE 3/16/04

1. Does the patient have a permanent hearing impairment so severe that he/she must communicate through signing, lip reading or written communication? Yes (No) (Circle one)

Is the impairment so severe that he/she cannot hear an emergency warning? Yes (No) (Circle one)

Does the patient wear hearing aid(s)? (Yes) No (Circle one)
Is the patient completely deaf in both ears? Yes (No) (Circle one)
If not, is the patient completely deaf in one ear? Yes (No) (Circle one)

2 Are there any other problems which would interfere with the patient's hearing? Yes No
If yes, what? Back ground noise decreases hearing ability states cannot hear through regular phone without amplification

*If the answers to the above questions are NO, do not proceed with the evaluation. If the answers to the above questions are YES, continue the evaluation and refer the patient for an audiogram if one has not been performed in the past year.*

2 Was the patient born deaf or was deafness the result of later trauma or illness? If later, at what age did the patient lose hearing and to what cause? History of Tympanic Membrane rupture as teenager [illegible] had tympanoplasty. Also history of Meniere's disease. Last Audio [illegible] ago.

3. Does the patient understand and use sign language? If so, which? Hearing good with hearing aids
Doesn't use it now had one course of Sign Language ([illegible])

4. Is the patient English speaking?
Yes

*If you have determined that this patient does meet the Montez criteria for a hearing impairment, contact the AIC to discuss what accommodations, if any, are appropriate.*

Dx w/ Hg

[signature] M.D.
Signature & Title

B-5-D

# VISION SCREENING

PATIENT NAME Gall, Jill

DOC # 86530 DATE 3/16/04

1. According to the Snellen chart, is the patient's corrected central visual acuity in the better eye more myopic than 20/200? Yes (No) (Circle one)

2. Other than myopia, are there any other problems which would interfere with his/her vision, e.g. cataracts or glaucoma? Yes (No) (Circle one)

If yes, what?

*(If your answer to either of the above questions is No, this patient does not meet the Montez criteria for a vision disability and may not qualify for an accommodation)*

Does the patient wear glasses? Yes No (Circle one)
Is the patient completely blind in both eyes? Yes No (Circle one)
If no, is the patient completely blind in one eye? Yes No (Circle one)
*("Blind" is defined to mean that the patient has NO SIGHT beyond distinguishing light and dark).*

3. Give Snellen values for **corrected** vision in each eye: R ________ L ________
*(Also attach copy of results of patient's most recent exam conducted by ophthalmology clinic)*

4. Has the patient been prescribed any special home treatment (eye drops, compresses, etc), medication or exercises for his eye problem? Yes No (Circle one)

If yes, what? Does it appear that the patient compliant with the treatment regimen?

*If you have determined that this patient meets the Montez criteria, contact the AIC to discuss what accommodations, if any, are appropriate.*

Mike A. Ringh, ALJ
Signature & Title

B-5-B

# DIABETES SCREENING

PATIENT NAME Coit, J. II

DOC # 76530 DATE 3/16/04

1 Does the patient have diabetes? Yes **No** (Circle one)

*If your answer is NO, terminate the diabetes screening and sign below.*

If yes:

Is medication prescribed for this patient? Yes No (Circle one)

Is a special diet prescribed for this patient? Yes No (Circle one

Is the patient compliant with his finger sticks? Yes No (Circle one

How often are finger sticks prescribed for this patient? ______

At what time(s) each day? ______

Does the patient have a prescription to wear special shoes? Yes No (Circle one)
If yes, are the soft shoes available on canteen appropriate? Yes No (Circle one)
If no, what footwear is prescribed for this patient?

2. Does this patient have any other problems associated with the effects of diabetes (e.g., vision, sores, amputation, etc)? Yes No (Circle one)

If so, what? *(Please complete proper form [vision, mobility, other] and attach)*

*If you have determined that this patient DOES have diabetes, contact the AIC to discuss what accommodations, if any, are appropriate.*

Mihn S. Rungl, MD
Signature & Title

B-5-F

B-1

Name of Claimant: Jill Coit

Claim Number: 02-661

## SUPPLEMENTAL FORM FOR CLAIMANTS WHO ARE CLAIMING DAMAGES DUE TO MOBILITY IMPAIRMENT

Class Action Disability Suit of *Montez v. Owens*, Civil Action No. 92-N-870
United States District Court for the District of Colorado

Based upon the review of your initial claim form by the Special Master, it appears that you are making a claim due to mobility impairments. Please answer the following questions concerning your mobility impairment. Please submit your answers to these questions, along with any other documentation that you may have and that you wish to be considered by the Special Master.

1. Please describe your mobility problems (Additional pages may be attached):

Advanced Degenerative Arthritis and Widspread Degerative Joint Disease prevent plaintiff from walking walking, climbing stairs, bending, squating and moving without pain. I have growths (plantar fasciitis) on both feet which inhibit walking. Had them removed but they keep

2. Describe how your mobility disability affects your life in DOC:

As a inmate I must walk, work and do houskeeping cheors. There is no way to get property that does not have metal heavy doors that are impossible for anyonw ith mobility problems to get through.

There are no handicapped toilets in the holding cells so when you go on an outside medical trip and must sit in the holding cell for over 8 hours you can not use the toilet since it is so low and no handicapped bars. You can not get to visiting without pain from heavy metal doors. The walks in the winter are snow covered and you are not allowed snow boots so you slip and fall and injure yourself.

3. If you asked DOC for an accommodation (such as accessible cells, restrooms, classrooms, job sites, special assistance with access around the facility, pushers, etc.) for your disability and were denied or you did not receive your accommodation in a timely manner, please describe (Additional pages may be attached):

See attached pages labled Conclusion and 1 thru 12

4. If you are claiming damages for an emotional or physical injury by DOC because of DOC's alleged failure to provide an accommodation, please describe/explain the injury (Additional pages may be attached):

B-1

EXHIBIT B-2

**Name of Claimant:** JILL Court

**Claim Number:** 02-661

**SUPPLEMENTAL FORM FOR CLAIMANTS WHO HAVE HEARING IMPAIRMENTS**

Class Action Disability Suit of *Montez v. Owens*, Civil Action No. 92-N-870
United States District Court for the District of Colorado

Based upon the review of your initial claim form by the Special Master, it appears that you are making a claim due to hearing impairment. Please answer the following questions concerning your hearing impairments. Please submit your answers to these questions, along with any other documentation that you may have and that you wish to be considered by the Special Master.

1. Describe your hearing loss:

I was diagnosed with a permanent hearing loss in about 1987. I can-not hear if there is background noise.

2. Describe how your hearing loss affects your life in DOC:

Can not hear anouncements, can't hear officers talking to me or giving me orders unless I am facing them and it is quiet.
I can not wear my hearing aids when I sleep so having anouncements heard would be most helpful.

3. If you are claiming damages because you requested an accommodation (such as hearing aids, TDD phone access, sign language interpreters, assistance with school, programs, or activities, close-captioned TV, etc.) for your disability and were denied or did not receive your accommodation in a timely manner, please describe (Additional pages may be attached):

Yes, I came into CDOC in 1995 with hearing aids and was told by adminastrating officer that if I needed hearing aids that DOC would issue them to me. So I went for over 7 years without hearing aids.

I still can not hear on the phone because of the background noise, the phones are in very busy area and ar enot enclosed so hearing is extremely difficult for all not just the hearing impaired.

CWCF medical refused to send me to an autologist to have my hearing tested because they said it was to expensive and that until I was really deaf doc would not provide a hearing aid for me so no use to go to audiologist.

B-2

B-3

Name of Claimant: Jill Cort

Claim Number: 02-661

**SUPPLEMENTAL FORM FOR CLAIMANTS WHO HAVE VISION IMPAIRMENTS**

Class Action Disability Suit of *Montez v. Owens*, Civil Action No. 92-N-870
United States District Court for the District of Colorado

Based upon the review of your initial claim form by the Special Master, it appears that you are making a claim due to vision impairment. Please answer the following questions concerning your vision impairments. Please submit your answers to these questions, along with any other documentation that you may have and that you wish to be considered by the Special Master.

1. Describe your vision problems:

I get severe migrain headaches due to the neck and back disc misalignment I can not see or think when they occur. I wear tri focals. I work in Computer Aided Drafting and Design and can not see the book because the print is so small. I get severe headached from trying to see.

2. Describe how your vision disability affects your life in DOC:

When I get a migrain, I need a dark quiet place to lay down and sleep. My eyes get tired when I am forced to live in a cell where the florcent lights are kept on 24 hours per day. The lights hurt me. My vision problems and migrains influence where I can work. Also my other health problems affect where I can work. I can use the computer so that is why I work in CAD (Computer Aided Drafting and Design.) It is the only place I can work where my hand doesnot hurt me.

3. If you are claiming damages because you asked for an accommodation (such as eyeglasses, a cane, a porter, braille or large print books, tape recorder, special assistance with classes, programs, or jobs, etc.) for your disability and were denied or you did not receive your accommodation in a timely manner, please describe (Additional pages may be attached):

I am asking for a computer anti-glare screen for my computer. For a maganifing page to put over the books so I can see them without straining my eyes, thus reducing my migraines. That a permanent order by written so I can always have my migrain medication (Midrin) it is the only thing that can help. But with CDOC's rules constantly changing I need it in writing I get my migrain medication of midring since that is the only one that works and I have many allergies also other medications do not work. I want to be able to continue ordering my prescription sun glass from an outside source since CDOC does not provide glass that fit my face or cover my eyes sufficient to block out the light when I get a migrain. This doesnot cost CDOC anything, I will pay for my glasses, I just need to make sure the court orders this or they can change the rules where I can not have my glasses.

sun glasses

B-3

7. Please list each and every grievance you have filed regarding the harm you are claiming, specifying the date of the grievance and a brief two or three sentence description of the complaint, and the DOC response (Attach copies of grievances and responses if possible):

On 3-19-04 I was sent illegall to CWCF-a non mobility impaired facility my medical restrictions were changed to get me sent there and were reversed once I got there but all my grievances and legal documents were seized by DWCF and they refuse to return them to me. I then filed on this retalian and denial but DWCF refuses to respond to my grievance. They only have 30 days and it was filed April 17 (app) but no resposne and I am denied the next step until they answer.I filed on many handiapped issues sorry I can not attach grievances. Also my hearing aids were not given to me when I was trans rred To CWCF.IT took over a week to get them to give them to me. See grievance from CTCF and CWCF. I filed a ADA grievance but it was not processed because I am restricted to one grievnce per month per warden Wallace. I filed a grieva on that in Dec 2003 but it has never been responed to. See not from Turer stat Ifiled on deniall of grievances. I do not know what else to do when the refuse to respond to grievances and won't let you go on to the next step until they answer. A direct violation of PLRA whereyou must exhaust administrative remedies available to you. So obviously not "available to me."

**8. What remedy are you requesting?** Please be specific (example, money, an accommodation, etc.):

I think I should be made a part of the class action that get monitary damages. payment since I have been denied medically prescribed and issued braces but they keep taking them away from me just because they can. This is cruel and unusual and serves no legitimate penological interest except to discourage me and try to force me from persuing legal action against them. I have had my legal documents , medical reports that I pay $1.25 per page destroyed. On 8-6-04 my leagl docuemts and medical reports were put in plastic bag and water dumped on them during a facility shake down. Officer Thomas will veify that this was doen to my property. It is recorded in the unit 2 log book for that date. and he will testify is subpoened. It is against the rules for staff to write reports or he would write a report for me. As he said there is no reason for this type of behavior. That is why this report is late, I have had to dry it out and retype these added pages.

Claimant

Date:

My mdeical records are not to be discussed with anyone but the head of CDOC medical records. I will provide the medicl records thatshow my mobility impairment. My deformed hand, knee restrictions, foot problems

# COLORADO DEPARTMENT OF CORRECTIONS

which limit walking without pain. HAve wide spread DJD, Severe ARthritis etc. Was declared totally disabled by Social security prior to incarceration.

## OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION

I, Jill Coit DOC# 86530 DOB 6-11-44,

authorize the Department of Corrections to release, request, review and/or discuss my medical and/or mental health records for the purposes of investigating my claim of disability, evaluating my disability status for an accommodation under the Americans with Disabilities Act ~~and as necessary assisting DOC staff in understanding my disability with respect to my housing, program, and daily living needs.~~ I do not give permission for my medical condition or handicapped reports to be given to anyone.

I understand that the information disclosed and discussed will be done so only to the extent necessary and only on an as-needed basis, however once disclosed it may not be disseminated to any person or organization that may become involved in the determination and/or accommodation of my disability. Not to be disseminated

I will provide you with the medical records need to determine my handicapped status. I understand that any relevant information may be disclosed, including but not limited to medical records, mental health records, HIV status, and drug and alcohol information.

I certify that this request has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that this authorization may be revoked at any time, except to the extent that action has already been taken to comply with it, and that authorization to use any information that has already been released may not be revoked as long as I remain in the custody of the Colorado Department of Corrections.

I hereby release the Department of Corrections and any employee thereof, any contract personnel and any authorized volunteer from any liability which may result from furnishing or using the information requested as authorized in this release. I have read the above and foregoing **OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION** and do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

The staff and others in CDOC/DWCF etc only need to know that I am handicapped they do not need to know the extent or nature.I do not give permsision to any such information to be given to anyone without my written permission for each individual, organization, etc.

Jill Coit
Offender Signature

2-25-04
Date

[signature]
Witness

2-29-04
Date

EXHIBIT B-4

EXHIBIT PP

APPOINTMENT
Page 1 of 2

# DEPARTMENT OF CORRECTIONS
# AMBULATORY HEALTH RECORD

ted By: RAZZAGHI, MITRA
ted at: 01/25/2005 10:17:03
Encounter#: 934970

| 86530 | COIT, JILL | Facility: | DW | LU: | DW/UNIT2 | 1 | B | 10 | R |
|---|---|---|---|---|---|---|---|---|---|

**SUBJECTIVE**

Active Medication(s): ASA ENTERIC - 325 MG; BENADRYL - 50 MG; MIDRIN - 65/100/325; PREMARIN - 0.625 MG

Pt here to discuss multiple issues, summary as below
1- states that has been in process of step 3 grievance for getting some medical supplies, for example wants to have heating pad, special type writer, support hose and tens unit and refers to some ARs and ADA, etc. and wants me to approve them. discussed with pt that this will be discussed with administration and the legal department before final decision being made.
2-hearing:
- has not been able to get batteries for hearing aid for a long time. per pharmacy records however, batteries have been sent on 12/30/04. will ask nursing to supply
- c/o left ear hearing not better after ABx and NS washes and Benadryl x 6 weeks. some itching involved as well, ? allergies ? need for hearing test
3- Follow up on the shoulder rotator cuff pathology. MRI report shows BL tendenosis vs. RCT, needs follow up with ortho
4-asking about what she needs to do with her allergies and itching when Benadryl taken off formulary. discussed there are few more options. and pt agreed to try Vistaril
5- Pt requests to have replacement for her wrist splints due to wear and tear. will check with Abilities Unlimited about the last time they were replaced
6- requests updating her restrictions in the computer. discussed that cannot put all permits and restrictions in DCIS format due to system difficulty but she can have them on paper as she already does.
7- requests to have a pusher for her wheelchair, states that hip pain is much better with using the wheelchair
I again re-emphasized my concern about losing her muscle strength with prolonged use of wheelchair, she shows me a note form a doctor that had found localized atrophy in her muscle and says that since she already has atrophy she does not care much since atrophy is permanent. discussed this misconception and that she does not have atrophy of all her muscles but if she does not use them that will happen. She understands and states she'll try to do more exercises.

8- c/o occasional bowel and urine incontinance, states she does not want to be evaluated for them but agrees to UA

**OBJECTIVE**

ENT exam:
right ear with dried wax obscuring the TM
left TM dull, no air-fluid level, no erythema, mild left submandibular LAP with tenderness

Urine dip : Large Blood, pt is menopause, need to repeat and do microscopy

**ASSESSMENT**

SHOULDER PAIN
CARPAL TUNNEL
HEARING LOSS
[illegible]

| Temperature: 97.7 | Pulse: 85 | Weight: 162 |
|---|---|---|
| Respiratory: | BP: 119 / 65 | |

Vitals Taken: PULSE OXSYM=94.00;

**PLANS / ORDERS**

Allergies: PENICILLIN G; ALLERGIC TO PENICILLIN

- [x] follow up ortho, audiogram, DME consult for wrist splints done
- [x] Urine dip done
- [x] UA ( send to lab for microscopy), Urien Culture and Sensitivity, CBC and BMP please this week
- [x] refer to the acting HSA and legal department for heating pad, support hose, tens unit and type writer issues
- [x] pls provide replacement batteries for the hearing aids
- [x] will replace Benadryl with Vistaril for itching when Benadryl expires in March
- [x] NEW - Rx#: 1873896 Drug Brand Name: DEBROX - 6.5% Alternate Name: CARBAMOXIDE Rx Date: 01/25/2005 Disc Date: 02/04/2005 Rx Instructions: TWO DROP(S) FOUR TIMES A DAY IN EACH EAR FOR FIVE DAYS FOLLOWED BY IRRIGATION BY NURSING
- [x] Medical Housing Restrictions: Added: FIRST-TIER; NO STAIRS;

EXHIBIT "B-9"

Datetime: 01/25/2005 00:00

Providers: RAZZAGHI, MITRA A

EXHIBIT 10

# MESSAGE FROM MEDICAL

**TO:** Coit, Jill **DOC #:** 86530

**DATE:** 8/2/05 **UNIT#:**

Dear Ms. Coit,

I received your packet regarding your request to change your Montez Accomodations. As you well know, All accomodations need to be initiated through DOC legal office, if related to Montez and I cannot make any changes to already set resolution. Your best way to get help would be through communication with Ms. Holst. I have no choice but sending back all your documents. However, as a clinician I'll be more than happy to help with your medical needs.

pls copy for chart

**SIGNED:** Sincerely Dr. Razzaghi

2/10

DC Form 850-04D (06/04)

# COLORADO DEPARTMENT OF CORRECTIONS

## OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION

I, Jill Coit DOC # 86530 DOB 6-11-44, authorize the Department of Corrections to release, request, review, and/or discuss my medical and/or mental health records for the purposes of investigating my claim of disability, evaluating my disability status for an accommodation under the Americans With Disabilities Act, and if necessary assisting DOC staff in understanding my disability with respect to my housing, program, and daily living needs.

I understand that the information disclosed and discussed will be done so only to the extent necessary and only on an as-needed basis; however, once disclosed it may be disseminated to any person or organization that may become involved in the determination and/or accommodation of my disability.

I understand that any relevant information may be disclosed, including but not limited to medical records, mental health records, HIV status, and drug and alcohol information.

I certify that my request for accommodation has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that this authorization may be revoked at any time, except to the extent that action has already been taken to comply with my request, and that authorization to use any information that has already been released may not be revoked as long as I remain in the custody of the Colorado Department of Corrections.

I hereby release the Department of Corrections and any employee thereof, any contract personnel, and any authorized volunteer from any liability which may result from furnishing or using the information requested as authorized in this release. I have read the above and foregoing **OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION** and do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

Jill Coit
Offender Signature

2-2-05
Date

[signature]
Witness (REQUIRED)

2-2-05
Date

Original: AIC
Copies: Medical File, Mental Health File

Attachment "D".
Page 1 of 1

EXHIBIT 11

I swear I received this in the mail at 6:30 pm on 10-26-05 see offic initials.

# STATE OF COLORADO

DEPARTMENT OF CORRECTIONS

2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone: (719) 597-9580
Fax: (719) 226-4755
Web: www.doc.state.co.us

Bill Owens
Governor
Joe Ortiz
Executive Director

## MEMORANDUM

TO: Offender Jill Coit #86530
DWCF

FROM: Cathie Holst, AIC

RE: Disability screening

DATE: October 20, 2005

---

I am aware that you have a hearing scheduled before the Special Master with respect to your Montez claim for damages. The hearings are conducted more effectively if an offender has been screened for a disability prior to the hearing.

I am requesting that you complete the attached Request for Accommodation (Request) and Authorization for Release of Confidential Information (Release) and return them to my office so that I can schedule you for a screening prior to your hearing.

Please complete the Request by circling your claimed disabilities and using the space provided to describe the accommodations you need. The Release must be executed as written; you may not edit the document or omit any information that has been requested.

Since the screening process can be a lengthy one, I request that you submit your Request and Release in the immediate future. You may send your documents to me by interfacility mail at no cost to you.

Thank you for your attention to this important matter.

AIC File

EXHIBIT "B-12"

EXHIBIT K

DC Form 850-04D (06/04)

# COLORADO DEPARTMENT OF CORRECTIONS

## OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION

I, Jill Coit DOC # 86530 DOB 6-11-44, authorize the Department of Corrections to release, request, review, and/or discuss my medical and/or mental health records for the purposes of investigating my claim of disability, evaluating my disability status for an accommodation under the Americans With Disabilities Act, and if necessary assisting DOC staff in understanding my disability with respect to my housing, program, and daily living needs.

I understand that the information disclosed and discussed will be done so only to the extent necessary and only on an as-needed basis; however, once disclosed it may be disseminated to any person or organization that may become involved in the determination and/or accommodation of my disability.

I understand that any relevant information may be disclosed, including but not limited to medical records, mental health records, HIV status, and drug and alcohol information.

I certify that my request for accommodation has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that this authorization may be revoked at any time, except to the extent that action has already been taken to comply with my request, and that authorization to use any information that has already been released may not be revoked as long as I remain in the custody of the Colorado Department of Corrections.

I hereby release the Department of Corrections and any employee thereof, any contract personnel, and any authorized volunteer from any liability which may result from furnishing or using the information requested as authorized in this release. I have read the above and foregoing **OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION** and do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

Jill Coit
Offender Signature — Date: 2-2-05

[signature]
Witness (REQUIRED) — Date: 2-2-05

Original: AIC
Copies: Medical File, Mental Health File

Attachment "D".
Page 1 of 1

# REQUEST FOR ACCOMMODATION

*(After completing Request portion of this form, Return to AIC, 2862 S. Circle Drive, Colorado Springs, CO 80906)*

## I. OFFENDER INFORMATION: *(Please print)*

| Offender Name: | Jill Coit | DOC #: | 86530 |
|---|---|---|---|
| Current Facility: | dwcf | Date: | 10-29-05 |

## II. CLAIMED DISABILITY: *(Check all that apply)*

| | Vision | ✓ | Hearing | ✓ | Mobility | ✓ | Diabetes hypoglycemia | | Other mental |
|---|---|---|---|---|---|---|---|---|---|

## III. ACCOMMODATION REQUESTED: *(Be specific and brief. You may attach one additional page if necessary to fully describe your condition and/or explain your requested accommodation)*

I am mobility impaired due to deformed hand, Advanced Arthritis, Widespread Degenerative Joint Disease and deformed hand (right) – I can not use my hands for writing; Need assistance of medical appliances or objects to facilitate the following: holding objects-cups, cooking, eating; bathing and personal hygiene; getting dressed; working; dental care-flossing; pick up paper /objects; crafts-special tools and machines; doing household chores-making bed and cleaning; **Back, spine, neck and hip, knee and shoulders**-Advanced Arthritis and Wide Spread Disk Disease, torn menus is tear, tendonitis, damaged disk in back and neck therefore I can not walk, sit bend, squat, lift, twist, get object from under bed, get down into locked closet compartment, pull or push objects or self without severe pain so need medical appliances that will accommodate my disabilities such as hospital bed-current bed is to low, orthopedic mattress/egg crate mattress, heading pad and ice pack, desk that is low enough. **Feet and leg length discrepancy**- leg shorter by 1 and ½ inches on left leg, growth on bottoms of feet, bone spurs and heal problems therefore I need special orthopedic shoes with built in braces, shoes that accommodate the growths and foot problems- problems walking and standing. Hearing and vision mobility issues- denied hearing aids for over 8 years, then allowed to have personal hearing aids sent in from home; vision need special prescription glasses that CDOC does not provide. Allergies- highly allergic to mold which causes headaches/migraines and breathing and itching problems as well as many of the formulary medication CDOC approves therefore need mold free environment and non-formulary mediation as well as allergy free products. Need accommodations to participate in access to programs, benefit of assistive devices and services of the CDOC. See next page for breakdown of needed appliances and objects and medical problems that contribute to mobility disabilities.

*Offender: Do not write below this line* Jill Coit

## VERIFICATION OF DISABILITY

| Date of Evaluation: | | Facility: | |
|---|---|---|---|
| Chief Medical Officer or Designee *(Please print)*: | | | |
| Title *(if designee)(Please print)*: | | | |

**I SCREENED THE OFFENDER ON THE ABOVE DATE AND VERIFY HE/SHE HAS THE FOLLOWING DISABILITIES:** *(Check each & attach disability-specific evaluation)*

| | None | | Vision | | Hearing | | Diabetes | | Mobility |
|---|---|---|---|---|---|---|---|---|---|
| | Other *(Please be specific)* | | | | | | | | |

Signature of Evaluating Chief Medical Officer/Designee ______________________ Date __________

Original: AIC

K-7

Hand: computer/scanner; file cabinet/files; hospital bed; ergonomic items to facilitate living; **Large handled items-** insulated cup; bowel; eating utensils; brushes; and flip top items; **Office equipment-**electric stapler; pencil sharpener; addin machine; containers for desk storage; **Medical aids/appliances-** Heating pad; braces for hand, knee, back, wrist, and ankle; acupressure medical aids; Tens unit; wedge pillow; cervical pillow; **Hospital bed-** orthopedic mattress/egg shell mattress; al cotton bedding- fitted sheets 2- sets, blankets, quilt, mattress pad; **FEET**: Shoes with Velcro closures- Orthopedic shoes, tennis, shower, insulted boots for snow/rain, house slippers; acupressure insoles; support panty hose; Ted stockings, and heal gel inserts; electric manicure/pedicure machine; **Clothing-** all cotton or no polyester- Velcro closures shirt, long sleeved tee shirts, poncho for rain and snow, Pajamas, nightgown, panties, bra, long underwear, sock, robe, uniforms, sweat suits. All items that we must purchase due to medical conditions we get at same cost as sold to CDOC inmates (ie. Long underwear) **Crafts**: knitting machine; rotary scissors with cutting mats and special rulers; beading looms and beads for cell; book holder; items as they become available to aid in crafts; **Dental-** water picks, large handle tooth bushes, Peritonitis visits **Items to aid disabled**: Coffee pot with metal carafe, sponges for bathing, ice packs, Oster hand held massage, whorl pool foot tub, Bath tub, **Furniture:** Ergonomic chair; dresser; foot stool; adjustable desk; wheel chair; bookcases; file cabinets; night stand; TV – 24 inch; chair hair dryer; cell to reflect disability; ~~pictures on walls~~; **Jobs for disabled**, allowed to use CAD to design furniture and clothing for disabled as well as useful item for living assistances; learning tapes; video's; games; flash card; dolls; TV channels-Learning channel, history channel, A & E, HBO; used books for college courses; legos and Lincoln logs; board games; donated crafts and disability items; all items listed under CDOC for hobby crafts allowed as well as DWCF allowed hobby crafts to include: **Hearing:** booth or some type of hood or quiet area for phone calls; headphones; quiet living area; **Mental Health** for disabled and elderly (mobility impaired) Gardening; plants in cell; animals-fish, bird, dog; Sun shine and extra time in yard; Allowed to help LTD –reading & crafts; programs to feel useful and helpful; allowed to take classes as health permits; special allowances for crafts in cells; **Allergies**: Mold, perfume free area, products that do not cause allergies; air filters/purifiers; windows that allow fresh air; Allow Neutrogena and Revlon allergy free products-make up and hygiene items; **Disabled wing**: I am allowed to keep cell in Unit 2 D 120- modify cell to accommodate disability as long as Latino cost to CDOC; allowed to choose pusher/ geriatric aid and care giver; medication delivered by 6 PM for night meds; not stand up for night time count-body part showing; automatic medication renewal for 3/6 months for self meds or renewal medication; free copies; allowed to purchase up to 26 inch TV so can read print; disabled inmates allowed to hold fund raiser one per month (ie: ice cream, pizza, sandwiches) to purchase items for disabled included exercise equipment for in unit use, cooking aids-toaster, microwave oven, refrigerator, electric frying pan, ice cream maker, etc.; Internet access for 6 hours per week for research on medical, crafts, educational, religious and programs for disabled, accessories. Sites must accessed under supervision and be pre-approved. TV Cable may be purchased for educational channels and installed in cells by three inmates joining to get special rate, must be paid for yearly.

Cele

Celebrex for anit-inflamatory. These items are requesteddue to Advanced Degenerative arthritis, Widespread Degenerative joint disease, deformed right hand leg lenght discrepancy, diverticlitis, allergies to many medication, torn meusis tear of the left knee, hip chronic pain and degenerative changes- Icannot walk even 50 feet without pain and knee giving way, inflmed rotator cuff, back an ddisk problems, hearing problems-can not hear on phone due to back ground noise and back ground noise in unit-need quiet cell or can't hear. Hands pain is so severe that my hands swell daily, can't flush toile button been an ongoing problem for years. Need toilet that has handle to flush also shower and need sink that is lower due to rotator cuff injury made worse on 3-19-04 move to CWCF transfer-can't lift arms above breast high.

K3

# COLORADO DEPARTMENT OF CORRECTIONS

## OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION

I, Jill Coit DOC# R6530 DOB 6-11-4

authorize the Department of Corrections to release, request, review and/or discuss my medical and/or mental health records for the purposes of investigating my claim of disability, evaluating my disability status for an accommodation under the Americans with Disabilities Act and if necessary assisting DOC staff in understanding my disability with respect to my housing, program, and daily living needs.

I understand that the information disclosed and discussed will be done so only to the extent necessary and only on an as-needed basis, however once disclosed it may be disseminated to any person or organization that may become involved in the determination and/or accommodation of my disability.

I understand that any relevant information may be disclosed, including but not limited to medical records, mental health records, HIV status, and drug and alcohol information.

I certify that this request has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that this authorization may be revoked at any time, except to the extent that action has already been taken to comply with it, and that authorization to use any information that has already been released may not be revoked as long as I remain in the custody of the Colorado Department of Corrections.

I hereby release the Department of Corrections and any employee thereof, any contract personnel and any authorized volunteer from any liability which may result from furnishing or using the information requested as authorized in this release. I have read the above and foregoing **OFFENDER CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION** and do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

[signature] 10-27-05
Offender Signature Date

[signature] 10-27-05
Witness Date

K-4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

EXHIBIT "B. 13"

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on October 17, 2005, on October 31, 2005 and on November 8, 2005. Present were the following: Jill Coit, Claimant; Adam Wiens from the Office of the Attorney General, for Defendants. On November 8, 2005, Aaron Atkinson from the Office of the Attorney General also appeared for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Mitra Razzaghi; Linda Fischer; Rae Rice; Cary Shames, D.O., CDOC Chief Medical Officer; Cathie Holst; Brenda Traxler; and Cindy Phillips. Exhibits A through JJJ were offered into evidence. Attached as part of this order is a comprehensive Appendix of Exhibits listing each exhibit admitted into evidence and each exhibit not admitted into evidence. At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying

B-13

to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted a claim which was originally assigned claim number 02-661 and placed into category II pursuant to the Remedial Plan as set forth above. The claim is premised on alleged mobility, vision and hearing disabilities.

2. In response to Claimant's Request to be placed into a higher class, on April 19, 2005, Special Master Borchers reassigned Claimant's claim to Category III pursuant to the Remedial Plan as set forth above. The claim was reassigned claim number 03-129.

3.     Proper notice of the hearing was given and Claimant along with Defendants appeared.

4.     Claimant is currently under the jurisdiction of the Colorado Department of Corrections (CDOC).  She entered CDOC custody in 1995.  From 1995 to October of 2001, Claimant was housed at the Colorado Women's Correctional Facility (CWCF).  Since October of 2001, she has been housed at the Denver Women's Correctional Facility (DWCF), except for a brief 10-day period, from March 19, 2004 to March 29, 2004, when she was transferred to CWCF.

5.     Claimant has suffered from a variety of medical problems that are the basis for her alleged mobility disability.  When she came under the jurisdiction of the CDOC in 1995, she suffered from low back pain and degenerative joint disease.  She had an artificial hip that prevented her from bending or twisting.  Claimant also had a leg length discrepancy.  Claimant testified that from 1995 to the present, she has been unable to walk more than 50 to 60 feet and cannot walk up or down stairs.  This testimony was disputed by a CDOC witness and, according to Dr. Shames, by Claimant's medical records.  Claimant has had a stair restriction of 6 to 8 stairs a day since 1998.

6.     In 1995, Claimant suffered a partial meniscus tear.  Surgery was performed in 1997 or 1998, but it was not completely successful in repairing the meniscus tear.  Claimant also developed plantar fibroma, a growth on the bottom of her foot.  This was removed in 1998 but reoccurred shortly thereafter.

7.     Claimant also suffers from carpel tunnel syndrome and sustained injuries to her hand and shoulder which made it difficult for her to utilize handrails while attempting to walk.

8.     Claimant has been classified as totally disabled by Social Security.

9.     Claimant produced extensive testimony of documentary evidence in support of her contention that DWCF has willfully refused to provide her with a plethora of medical devices and treatment that was prescribed or recommended by various health care professionals.  For example, Claimant had a back brace while she was incarcerated at CWCF.  The brace was taken away in October of 2001 and has not been given back to her.   Claimant did not receive orthopedic shoes until 2003, although her doctors requested them on numerous occasions.  She has not been given acceptable shoes or orthotics, and clothing that is consistent with various allergies that she has to fabric.  Claimant has been denied a heating pad.  In 2001, Claimant's hand braces were taken away, and were were not returned until 2003.  While at CWCF, Claimant was provided with a dresser, a low table, an adjustable roller chair, egg shell mattress and a night stand.  None of these were provided to her at DWCF.  Cervical pillows and ice packs which were provided to Claimant at CWCF have not been made available at DWCF.  Claimant was given Celebrex, an anti-inflammatory from 1998 to 2001 but this prescription medication has been denied to her since arriving at DWCF.  A special typewriter was

available at CWCF, but Claimant asserts that since her arrival and DWCF she has not had the use of a special typewriter.  Claimant requested a Tens Unit to assist in alleviating pain but it has not been provided.

10.    Claimant testified that she has difficulty hearing, particularly when there is background noise.  She used hearing aids in 1995 but, since 1995, she has not been provided with hearing aids.  Claimant was cleared for hearing aids in 2001 and in 2002 or 2003 she was allowed to have her own hearing aids sent to her.  Claimant asserts that in 2004 she received discipline that resulted directly from her inability to hear.

11.    Claimant contends that she has difficulty with her distance vision.  It is undisputed, however, that she does not fall below the 20/200 vision acuity standard in the Montez Remedial Plan.

12.    Claimant has also testified to several threats and acts of retaliation for filing grievances and pursuing her *Montez* claims.

13.    Claimant testified that she fell in the shower causing swelling and pain; and that she fell from the low toilet in her handicapped cell prior to 2003.  She indicated that the falls were due to the fact that she could not grasp the hand bars firmly because of her hand and shoulder problem.

14.    Claimant testified that she has fallen due to the lack of proper shoes and shoe inserts.

15.    Claimant was unable to use the carpentry shop at DWCF because of lifting and hand use restrictions.  She wanted to participate in a dog training program but was unable to do so because she could not bend down to remove the dog excrement.  DWCF refused to provide her with a shovel that she might have been able to utilize to accomplish this task.  There were limited jobs for handicapped inmates.  Claimant testified that she did computer aided drafting and design for a while but could not sit or use her hands.  Claimant did have jobs in the law library.

16.    From 1995 to 2001, Claimant wanted to work as a teacher in the CWCF GED program.  She was not able to do so because she would have had to negotiate approximately 14 stairs to get to the area where the classes were held.  She requested an accommodation of being allowed to go through the yard and a gate in order to get from the building where she was housed to the building where the classes were held but this request was rejected.

17.    Claimant could not take part in the hobby program because of a medical problem with her thumb that prevented her from utilizing the rotator scissors.  She was also prevented from knitting because of the thumb condition.

18.     Claimant requested that she be moved out of her handicapped cell at DWCF because it did not have sufficient light.  She was moved to a non-handicapped cell that provided more light.

## III. CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794, *et seq.;* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).   "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class.  Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks.

The Special Master finds and concludes that Claimant has not sustained her claim that she has a vision disability within the meaning of the ADA and/or the Remedial Plan.

No testimony or documentary evidence was presented regarding Claimant's vision acuity[1]. *Remedial Plan* ¶ V(A)(3).

The Special Master finds and concludes that Claimant has not sustained her claim that she has a hearing disability within the meaning of the ADA and/or the Remedial Plan. It is uncontroverted that Claimant is not "permanently deaf" and does not have "a permanent hearing impairment so severe that [she] must rely on written communication, lip reading, or signing because [her] residual hearing, with aids, does not enable [her] either to communicate effectively or hear an emergency warning." *Remedial Plan* ¶ V(A)(2).

Claimant has also presented testimony regarding shoulder, arm and hand problems and allergies to clothing. The Special Master need not consider whether these conditions might constitute a disability under the ADA because they are not disabilities covered by the Remedial Plan. Consequently, the Special Master finds and concludes that the *Montez* Remedial Plan claim procedures to not apply to Claimant's shoulder, arm, hand and allergy conditions. Further, any allegations of failure to accommodate these conditions so that Coit could participate in various programs also do not fall within the ambit of the Remedial Plan.

Finally, Claimant asserts damage claims based upon threats and retaliation. Again, regardless of whether or not these claims might be viable under the ADA and/or Rehabilitation Act, they do not fall within the scope of the Special Master's responsibilities under the Remedial Plan. *See* Order In Response to Report and Recommendation of the Special Masters to Judge John L. Kane, Nov. 23, 2004 at ¶¶ 2 and 3.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4. The key issue is whether Claimant was discriminated against because of her disability during the time covered by the Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to

[1] Claimant, by her own admission, agreed that her vision was corrected within the meaning of the Remedial Plan and that she cold not overcome the burden.

August 27, 2003. Claimant has presented considerable testimony regarding alleged discrimination and failures to accommodate that occurred after August 27, 2003. The Special Master finds and concludes that these allegations cannot be entertained under the *Montez* Remedial Plan.

As noted in Finding of Fact number 9 above, the overwhelming majority of Claimant's allegations, testimony and exhibits relate to medical treatment, medications and medical devices that were ordered or recommended by her doctors but were not provided by defendants. With the exception of her fall discussed in Finding of Fact number 14 above, there is no evidence tying these failures to provide treatment, medications or medical devices to any inability on the part of Claimant to utilize the institution's facilities or to take part in the institution's programs and services. Without such evidence, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). As a result, with the exception of Claimant's fall allegedly resulting from her failure to have been provided with proper shoes and shoe inserts, the Special Master finds and concludes that all of her claims relating to the CDOC's failure or refusal to provide medical treatment, medications and medical devices must fail.

What remains are Claimant's damage claims premised on (a) her fall because she was not provided with proper shoes and shoe inserts; and (b) her inability to teach in the CWCF GED program because she could not negotiate the stairs to get to the classroom. The Special Master finds and concludes that there is sufficient evidence in the record to sustain Claimant's claim that the fall and her inability to teach were the result of her permanent mobility impairment; that her fall was proximately caused by defendants' failure to provide a requested accommodation in the form of proper shoe inserts; and that her inability to teach was the result of the defendants' failure to provide a requested accommodation of allowing her to take an alternative route to the classroom. No evidence was presented by defendants to establish that either of the requested accommodations was unreasonable or inappropriate. Consequently, the Special Master finds and concludes that Claimant has sustained a claim of disability discrimination under the ADA, the Rehabilitation Act and the Remedial Plan.

Claimant presented no evidence regarding any injuries sustained or medical treatment necessitated by her fall. As a result, only an award of minimal damages is permissible. Likewise, no evidence was presented by claimant as to the extent of damages resulting from her inability to teach the GED class. In light of the dearth of damages evidence, the Special Master finds and concludes that the sum of $350.00 is an appropriate amount of damages for these two violations of the ADA, the Rehabilitation Act and the Remedial Plan.

**IV. ORDER**

IT IS HEREBY ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, judgment should be entered in favor of the Claimant and against Defendants in the amount of $350.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 29, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 15th day of December, 2005.

Bruce D. Pringle,
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 15th day of December, 2005 to the following:

Ms. Jill Coit, #86530
DWCF
P.O. Box 392005
Denver, CO 80239

Mr. Adam Wiens
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Margie Dykstra