IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-380
Category II
Claimant: Benito Negron, #100646
Address of Claimant: 210 Boston Avenue, E.H.T., New Jersey 08234-6923

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant. Defendants have filed a motion to dismiss the claim. Claimant has responded to the motion to dismiss. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in

2

>this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in July, 1998. At the time Claimant filed his claim in May, 2004, he was incarcerated at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Claimant has discharged his sentence and now is living in New Jersey.

Claimant checked both the mobility impaired and vision impaired boxes on his claim form. He stated, in part, on his form as follows:

>I have had surgery on both of my thumbs and had to have a ligament taken off my left hand wrist to repair the left hand thumb. I cannot do manual jobs for long periods where use of hands is repetitive, because hand cramps up, can't hold grip. Also I am short sighted, and recently because I can't get a job and had to write all court pleadings three times over. I have been diagnosed with carpal tunnel & damage to shoulder nerves. DOC will only copy initial pleadings.

Claimant alleged in his initial claim form that he was subjected to discrimination because he was poor and unable to pay for copies.

Claimant submitted two supplemental forms. The first dealt with his alleged vision impairment. Claimant stated, in part, as follows concerning his vision issues.

>I have far sighted/short sighted problems and the light on some places within DOC facilities is very poor making my eye sight very tired. When I try to focus I get real bad headaches.

Claimant went on to state that he was told to buy aspirins from the canteen, as he could not get medication from DOC medical staff.

As to his mobility impairment, reiterated the problems that he has had and is having with his thumbs. He also indicated that he had back problems.

3

In response to the motion to dismiss filed by Defendants, Claimant has submitted a reply and additional documents. Attached to the reply are various medical documents. There is an MRI from April, 2005 that reflects disc bulges and degenerative changes in Claimant's neck. Another report reflects that Claimant has Hepatitis C, degenerative joint disease, carpal tunnel syndrome, and hyperlipidemia. A third document reflects learning disabilities. Claimant has submitted two documents that reflect that he is unable to work. A DOC medical document from October, 2003 reflects a diagnosis of carpal tunnel syndrome and ulnar palsy.

Defendants have moved to dismiss the claim of Claimant on the basis that he is not part of the class as defined by the Settlement Agreement. Defendants argue that Claimant cannot prevail, even if all of his allegations are accepted as true. Defendants then argue that dismissal would be appropriate.

The standard utilized by F.R.C.P. 12 will be applied to the claim and associated documents submitted by Claimant. All documents and allegations will be accepted as true. The Special Master must then apply the criteria set forth in the Settlement Agreement and review the four questions in the order of November 23, 2004. Each claimed disability will be examined separately.

**Vision Impairment:** The Settlement Agreement provides the following criteria for determining vision impairment.

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant would have to be legally blind in order to meet this standard.

Claimant has some vision issues, but he is not legally blind. Accepting as true all information submitted by Claimant, he does not meet the standard required by the Settlement Agreement. The motion to dismiss will be granted as to vision impairment, as Claimant cannot prevail based upon what he has alleged and presented.

**Mobility Impairment:** Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking..." Unless a claimant alleges and then proves that he or she is in a wheelchair or has a lower extremity condition, that claimant cannot prevail under the Settlement Agreement.

Claimant has not alleged nor do any of his documents establish that he uses a wheelchair either part of full time. Claimant has not alleged nor shown that he has a lower extremity condition that substantially affects walking. Claimant's concerns are legitimate about his health, but his orthopedic issues relate to upper extremity problems. Claimant correctly notes that a person can be disabled with the conditions that he has. In fact, he has been found to be disabled. The problem is that the Settlement Agreement narrowly defines the four categories and limits each to the most

serious cases. Accepting as true everything that has been filed, Claimant does not meet the criteria for mobility impairment.

**Other Conditions:** Claimant has other health problems, including Hepatitis C. The Settlement Agreement is limited to the four areas of vision, hearing, mobility and diabetes. The Special Masters have no jurisdiction except that which is set forth in the Settlement Agreement. The Special Masters cannot expand the definitions of those conditions set forth in the Settlement Agreement and cannot add additional categories.

**Claimant's Remedy:** Claimant has conditions that are subject to the protection of the ADA and Rehabilitation Act. Claimant may file his own lawsuit to seek redress for discrimination by DOC staff, but he cannot pursue his claim. Claimant is not part of the class, either as vision impaired or mobility impaired.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, as Claimant has not alleged through any documents that he is either vision impaired or mobility impaired as defined by the Settlement Agreement; and

IT IS FURTHER ORDERED that the claim of Benito Negron is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 17, 2006.**

SIGNED this 11th day of April, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master

5