IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 01-191
Category I
Claimant: Jack Kenton McCabe, #99972
Address of Claimant: SCCF, P.O. Box 3, Pueblo, CO 81002

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of Claimant. Defendants have filed a motion to dismiss. Claimant was given up to and including April 10, 2006 in which to file a response to the motion. Claimant has not done so. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on the motion to dismiss.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives

to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

>    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>    1. Is the claimant a disabled individual who is a member of the class?
>    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The claim form filed by Claimant listed only mobility disability. Claimant noted that he has Hepatitis C and that this has seriously affected his life. In his initial claim form, Claimant stated as follows:

> Hep. C  I'm very tired. Broken leg from too many meds and not the right kind. They took my castoff and the next day it broke again.

Claimant did not answer the question concerning discrimination that may have occurred in violation of the ADA and Rehabilitation Act. Claimant did not submit supplemental forms.

Claimant then sent a letter to the Special Master. Claimant alleged that he was in custody in 2001 at the Kit Carson County Correctional Facility (KCCF) in Burlington, Colorado. He described himself as being "a guinea pig for their mental health department." He alleged that he blacked out and his leg as he fell. It was broken. He was taken to the local hospital and then to Denver Health Medical Center. When the cast was removed after six months, the leg broke again at the same location. Claimant stated, in part, in his letter:

> I want to be joined to the Montez v. Owens ADA Civil Suit for wrongfully denying me my crutches and wrongfully denying me my medication that worked for me causing the instability and causing the broken leg not just once but twice.
> Thank you for the letter giving me the chance to explain my cause for joining this suit over mobility and optical. I have repeated issues with DOC over refusing proper cleaning supplies and denying glasses when needed.

Claimant has not submitted any additional documents and has submitted no medical records.

Defendants have filed a motion to dismiss. They argue that Claimant cannot prevail even if everything he has alleged is accepted as true. For purposes of resolving this motion, all allegations

3

set forth by Claimant will be deemed true.

Claimant checked the box for mobility impairment. The Settlement Agreement provides a narrow definition of mobility impairment. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Defendants correctly note that Claimant has not alleged that he uses a wheelchair full or part-time. Further, he has not alleged that he has a lower extremity condition that affects his ability to walk. Accepting as true all of Claimant's allegations, he has failed to set forth a prima facie case for mobility impairment.

As to his mention of a vision impairment, Claimant only states that he has not received glasses when requested. The Settlement Agreement provides a narrow definition for vision impairment.

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant with a vision impairment would have to be legally blind. Claimant has not alleged anything that remotely would place him into the vision impaired category.

In addition, Defendants correctly note that Claimant has failed to allege that he was the victim of discrimination under the ADA and Rehabilitation Act as to a lower mobility impairment or vision impairment. Claimant's allegations relate to medical issues that evolve from mental health treatment. There is no category for mental health conditions.

Claimant has expressed concern about the medical care that he has received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice. Claimant may bring a separate lawsuit concerning any claim of malpractice.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Jack Kenton McCabe is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 22, 2006.**

SIGNED this 17th day of April, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master