IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-092
Category II
Claimant: Johnny Pride, #49271
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on Defendants' motion to dismiss. Claimant was granted up to and including April 10, 2006 in which to file a response to the motion. He has not filed any response to the motion.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

      On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs

   or receive the benefits or services offered by DOC?

    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The claim form filed by Claimant listed only mobility impairment. In the initial form, Claimant stated as follows:

> I have a back injury that causes severe pain on a constant basis. This injury occurred during a injury suffered while at work on a construction job at the Sterling Correctional Facility 5 years ago when I was 70 years of age. The second disability that I suffer from is a Prostrate (sic) Problem that the DOC refuses to address or fix.

In response to the question about discrimination by DOC staff, Claimant stated as follows:

> I was told by a Doctor for the DOC that I needed an operation on my Prostrate (sic) but the DOC refused to do it because it would cost too much. This is discrimination based on the fact that they have done like operations for many inmates. As to the back injury, they will do nothing to ease the pain or attempt to repair the back where the DOC does do back surgery or repair on other inmates.

In his supplemental form, Claimant reiterates what he has set forth before. He has a chronic back problem that causes him great pain. His prostate is apparently enlarged, and he is concerned about that.

Defendants have filed a motion to dismiss. They argue that Claimant cannot prevail even if everything he has alleged is accepted as true. For purposes of resolving this motion, all allegations set forth by Claimant will be deemed true.

Claimant checked only the box for mobility impairment. The Settlement Agreement provides a narrow definition of mobility impairment. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has made reference to a wheelchair in one kite, but has not alleged in either his claim form or supplemental form that he must use a wheelchair. Claimant has not alleged that he has a lower extremity condition that affects his ability to walk. There does not appear to be any dispute that Claimant has a chronic back problem. Accepting as true all of Claimant's allegations, he has failed to set forth a prima facie case for mobility impairment, as that term is defined in the Settlement Agreement. Claimant does not have a lower

extremity condition and has not alleged that he is in wheelchair full or part-time. His prostate condition is not one covered by the Settlement Agreement, and the Special Masters cannot expand the criteria of that agreement.

Accepting as true everything Claimant has alleged about his claim of mobility impairment, he cannot prevail on his claim. Claimant does have the right to bring his own lawsuit under the ADA and Rehabilitation Act, or on another legal basis, against Defendants. He cannot pursue the claim as to mobility impairment, as he does not meet the criteria.

Claimant has expressed concern about the medical care that he has received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice. Claimant may bring a separate lawsuit concerning any claim of malpractice.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Johnny Pride is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 22, 2006.**

SIGNED this 17th day of April, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master