IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

**DEFENDANTS' RESPONSE TO CLAIMANT LEACH'S "OBJECTION TO AUGUST 1, 2005 FINAL ORDER OF SPECIAL MASTER" DIRECTED TO JUDGE KANE**

Defendants, through the Colorado Attorney General respectfully submit their Response to Claimant Leach's "Objection to August 1, 2005 Final Order of Special Master."[1]

### I. FACTS RELATING TO LEACH'S DAMAGE CLAIM

Claimant is currently incarcerated in Texas. He was incarcerated in the Colorado Department of Corrections ("CDOC") from 1989 to 1998. Specifically, he was housed at the Colorado Territorial Correctional Facility ("CTCF") from February 1989 to 1991. From 1992 to 1998, he was housed at the Fremont Correctional Facility ("FCF").

Claimant suffers from cerebral palsy. Prior to his incarceration he was also diagnosed with scoliosis. At the time of his incarceration he walked with Canadian crutches and did not use a wheelchair. Shortly after his incarceration, he was provided

---

[1] Defendants originally filed this response on November 1, 2005.

1

with a wheelchair in order to better access the facility. Although claimant could still ambulate using his crutches, the wheelchair was necessary for long distances.

In August of 1995 Claimant was diagnosed with spondylolysis at L5. He was also diagnosed with a herniated disk in July of 1996.

The gravamen of Leach's claim is that maneuvering his wheelchair up steep ramps and opening large heavy doors caused his scoliosis, spondylolysis and herniated disk. Ultimately in 1997, Claimant underwent a L5-S1 fusion. In support of his claim, Leach presented the testimony of Steven Snowden, a professor at Texas Christian University with a Ph.D in physical education. As noted by the Special Master's Final Order, the only testimony from a medical doctor presented by claimant was through cross examination of Carey Shames, D.O. the Chief Medical Officer of the CDOC. Dr. Shames testified that in his medical opinion, Claimant's spondylolysis and herniated disk would not have been caused by the physical stresses resulting from Claimant's use of a wheelchair. Dr. Shames further noted that from review of the medical records, Claimant was diagnosed with scoliosis long before he entered the CDOC.

Leach also maintained in his claim that because he was not provided with a pusher, he was unable to access the gymnasium because the doors were too heavy and because the route to the gymnasium was difficult to traverse in his wheelchair. He also maintained that FCF only had one accessible table in the cafeteria and that he missed meals as a result thereof, and that when a new cafeteria with more accessible tables was built, the buffet cart for salads was in the way. He also maintained that he was unable to obtain a job at the tag and tab plants because these areas at FCF were not accessible. Further he claimed that he was forced to quit his job in the kitchen due to lack of an accessible inmate

2

bathroom. Finally, he alleged that the shower at FCF did not have grab bars or a shower seat.

## II. PROCEDURAL HISTORY

Pursuant to the Terms of the Remedial Plan entered and approved by the Court, Claimant Duncan Leach, through counsel, filed a claim for damages with the Special Master. His claim was categorized as a category III claim entitling Leach to a hearing. His claim was originally set for a one day hearing.

Leach's claim form indicated that he was seeking damages based upon denial of an inmate pusher. He claimed that the ramps at the CDOC facilities were to steep and that his caused injury to his back. Prior to the hearing Defendants sought a continuance due to the unavailability of certain defense witnesses. Leach's counsel adamantly objected to the continuance in the telephonic hearing relating to Defendants' request. As a result Special Master Pringle denied the continuance and the hearing proceeded as scheduled.

On the day of the hearing, Leach attempted to change his claim. Specifically, on the day of the hearing, he attempted to assert that his herniated disk was caused by falls in his cell due to lack of grab bars. As noted by Special Master Pringle, this theory was not presented in the claim form submitted by Leach. Thus, the Special Master ruled on the record that Claimant's attempt to change his theory to one which is inconsistent with the theory presented in his claim form was untimely.

The claim was heard by Special Master Bruce Pringle. On June 7, 2005, after a full day of presentation, Claimant had still not concluded presentation of his claim. Accordingly, an additional day of hearings occurred on July 25, 2005.

3

After hearing two days of evidence, Special Master Pringle entered a Final Order on August 1, 2005. The Special Master concluded that Claimant had a mobility impairment and is disabled. He also concluded that Leach was otherwise qualified to receive programs, benefits and services. However, the Special Master concluded that Leach failed to sustain his burden of proving that the lack of an inmate pusher caused his scoliosis, spondylolysis or herniated disk. Special Master Pringle further concluded that Claimant failed to sustain his burden of proving that the lack of a pusher aggravated these conditions.

The Special Master rejected Leach's claim that he was unable to access the cafeteria due to the fact that the facility made accommodations by allowing Leach to have meals in his cell. Further, Leach admitted that he never requested an accommodation to allow him to remain in the cafeteria until such time as space was available at the wheelchair accessible table.

The Special Mater also rejected Leach's claim that he was discriminated against because of a lack of a wheelchair accessible bathroom in the cafeteria kitchen.

The Special Master concluded that there was evidence in the record that Leach requested grab bars and a shower seat in the shower area, however, Leach presented no evidence that he sustained an injury or damage as a result thereof

Finally, the Special Master concluded that Leach proved by a preponderance of the evidence that he was denied access to certain facility areas and jobs as a result of his disability and that he incurred pain and suffering as a result of the CDOC's failure to accommodate his disability by assigning him a pusher. However, as the special Master

4

noted there was no evidence of monetary damages nor was there any medical testimony supportive of pain or fatigue alleged by Leach.  Claimant was awarded $500.00.

On August 30, 2005, pursuant to the Remedial Plan, Leach filed his "Objection to August 1, 2005 Final Order of Special Master" seeking review of the Order with this Court.  Pursuant to the terms of the Remedial Plan, the Order of the Special Master "may be appealed on an abuse of discretion review to the Honorable Judge Kane."  See Remedial Plan at p. 29.

### III.   STANDARD OF REVIEW

Pursuant to the terms of the Remedial Plan, the Order of the Special Master "may be appealed on an abuse of discretion review to the Honorable Judge Kane."  (See Remedial Plan at p. 29).

An abuse of discretion occurs when there is no legal or factual support for the decision.  See Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995) ("A court has abused its discretion when it based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling");  Shaw v. AAA Engineering & Drafting, Inc., 213 F.3d 538, 542 (10th Cir. 2000) (same).  "An abuse of discretion occurs when a judicial determination is arbitrary, capricious, or whimsical.  It is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment, or the result of impartiality, prejudice, bias or ill will as shown by evidence or the record of proceedings."  United States v. Wright, 826 F.2d 938, 943 (10th Cir. 1987).  An abuse of discretion can also be found if the district court's ruling is "significantly premised on an incorrect understanding" of the applicable law.  United States v. Vargas, 925 F.2d 1260, 1263 (10th Cir. 1991); See also Mann v. Reynolds, 46

F.3d 1055, 1062 (10th Cir. 1995) ("A court has abused its discretion when it based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling").

## IV.     ARGUMENT

### A.     The Special Master Properly Limited Leach's Claims to those Raised in his Claim Form For Damages.

The Remedial Plan provides that:

> After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages.

(See Remedial Plan at section XXXII).  The purpose of this form is identical to a complaint in a civil case filed in court; it puts the defendant on notice of the specific claims of the plaintiff or claimant.  In this case, Claimant Leach was represented by counsel who completed and executed Leach's Claim Form for Damages.  Counsel also obtained and reviewed Leach's medical records well in advance of the hearing.

The gravamen of Leach's objection is that the Special Master limited him to the claims asserted in his claim form. This does not constitute an abuse of discretion.[2]  Leach was represented throughout these proceedings.  His initial claim form is approximately six pages long and is very detailed as to what conduct Leach sought damages.  Specifically, Leach, through his attorney maintained the following:  "Because of the failure of the Colorado Correctional System to place claimant in a facility that had ADA compliant ramps or at least minimally to provide claimant with an inmate aide, claimant sustained a

6

herniated disk as a result of extreme low back stress." (See Leach's Initial Claim Form for Damages at page 6). Indeed, his expert's report stated exclusively that Leach's injuries were caused by ramps that were too steep. (See Hearing Exhibit 5). Leach's counsel admittedly never sought to amend or supplement his claim for damages prior to the hearing.

Approximately one week before the hearing, the Defendants moved to reschedule the hearing due to the fact that two witnesses were unavailable.  Claimant adamantly opposed the motion stating that a continuance would create a hardship for the claimant. The Special Master denied Defendants' Motion to Reschedule the Hearing.  (See Order Denying Motion to Reschedule Hearing).

The day before the hearing, Claimant's counsel advised Defendants that he would pursue a new theory at the hearing, specifically, that Leach's injury was caused by falls in his cell due to lack of grab bars.  Defendants advised claimant's counsel that there would be an objection because Defendants would not have adequate time to prepare a defense to claims outside of those asserted in the claim form.  The issue was addressed as a preliminary matter the day of the hearing. (See Attachment 1, hereto, Transcript at pp. 1-9, ).[3]   Special Master Pringle limited Claimant to those theories asserted in the Damage Claim form. (See Attachment 1 at p. 9).  Specifically, the Special Master concluded that "the Department of Corrections can only prepare to defend those claims which are asserted." (Id).  The Special Master reviewed the Claim form and determined that Claimant failed to assert a claim for damages based on alleged falls ands properly limited

---

[2] Indeed, an abuse would have resulted had Special Master allowed the Claimant to assert claims that were not asserted in the Claim Form.

[3] Defendants have prepared an unofficial transcript of portions of the hearing and attached it hereto.

Claimant to those issues raised in the claim form.[4]  At that point, Claimant's counsel requested a continuance of the hearing which was denied.  (Attachment 1, Transcript at pp. 9-10).

On June 7, 2005, after one full day of evidence, Claimant still had not finished presenting his case.  Accordingly, an additional day was scheduled for the presentation of evidence to occur approximately a month and a half later, on July 25, 2005.  Despite this fact, Claimant never requested that he be allowed to amend or supplement his claim to assert a damage claim for alleged falls.  Indeed, Claimant never made such request again until after all evidence had been presented.  (See Attachment 2, transcript at p. 30).

The Special Master's properly denied Claimant's request to amend /supplement his claim form or complaint on the day of hearing.  Such ruling can hardly be deemed an abuse of discretion.  There is undisputedly legal and factual support for the decision.  Thus it cannot be deemed an abuse of discretion.  See Mann v. Reynolds, 46 F.3d at 1062.  Additionally, the ruling was not arbitrary, capricious, or whimsical and thus does not constitute an abuse of discretion.   Shaw v. AAA Engineering & Drafting, Inc., 213 F.3d at 542.

---

[4] Moreover, Dr. Shames identified in the record the fall wherein Claimant sustained the herniated disk.  The fall was completely unrelated to any sort of ADA issues.  Specifically, the fall occurred when Leach was cleaning his hot pot in his cell and walking back to his bed.  See Exhibit 15.  Leach was not using the wheelchair CDOC had provided him.  Additionally, the fall was completely unrelated to ADA compliance issues like grab bars.  Dr. Shames attributed this fall as the cause of the herniated disk because this was the first notation in Leach's medical records of  shooting pain in the lower extremities.  Thus even if Claimant had been allowed to proceed on this claim, the only medical testimony at the hearing refuted his contention that the fall was somehow attributable to ADA issues.

**B.     The Special Master properly evaluated Leach's claim pursuant to the Remedial Plan and applicable law.**

In accordance with this Court's Order dated November 23, 2004, individual claimants are required to prove the following elements to recover damages.

1. Is the claimant a disabled individual who is a member of the class?

2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*,   were accommodations requested and denied because of the disability?)

4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

(November 23, 2004 Order at ¶2).

A review of the Special Masters Final Order, as well as the transcript of the hearing and applicable law, dictates that the Special Master properly evaluated and decided Leach's claim.  The decision of the Special Master Pringle is detailed, circumstantiated, and well reasoned. It is both legally and factually supported and should be affirmed.

**1. Defendants concede that Leach is a disabled individual who is a member of the class.**

The Special Master concluded that Leach was a disabled individual who is a member of the class.  Neither Leach nor the Defendants claim that this finding was in error.

## 2. Was Leach otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.

Special Master Pringle concluded that Leach was qualified to participate in programs and receive the benefits or services offered by the CDOC. Neither Claimant nor Defendant contest this finding.

## 3. Was Leach discriminated against by DOC because of his disability. (*e.g.*, accommodations were not requested and denied because of the disability.)

Both the ADA and the Rehabilitation Act require a claimant to show that the defendant's allegedly improper conduct was done *because of* claimant's disability. See 29 U.S.C. § 794 ("solely by reason of her or his disability"); 42 U.S.C. § 12132 ("by reason of such disability").

To establish that defendant's alleged discrimination was "based on [claimant's] disability . . . the plaintiff must 'present some affirmative evidence that disability was a determining factor in [defendant's] decision.'" Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1259 (10th Cir. 2001) (quoting Morgan v. Hitli, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

The Special Master concluded that Leach sustained his burden of proof that he had requested accommodations regarding an inmate pusher, that CDOC agreed to assign him a pusher, and that one was never provided. The Special Master further concluded that the lack of such pusher precluded Leach from accessing certain areas of FCF. While the Defendants dispute this finding Defendants did not appeal the Special Master's finding.

## 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

The Special Master concluded based upon two days of evidence including six witnesses and numerous exhibits, that Leach failed to sustain his burden of proving that the

10

lack of an inmate pusher was a causative factor of his scoliosis, spondlolysis or herniated disk.  Indeed, the only evidence presented by Leach's witnesses with respect to this causation issue was via Steven Snowden, a professor at Texas Christian University with a Ph.D. in Physical Education.  The only testimony from a medical doctor presented at the hearing was through Dr. Carey Shames, a defense witness.  Dr. Shames testified that in his medical opinion, Leach's spondylylosis and herniated disk would not have been caused by the physical stresses resulting form Leach's use of a wheelchair without a pusher.  The Special Master's decision to believe the medical testimony of Dr. Shames, over that of Mr. Snoweden cannot be deemed an abuse of discretion.  See <u>Robinson v. Audi Aktiengesellschaft</u>  56 F.3d 1259 (10th Cir.1995) (Where a factual determination rests upon credibility of witnesses, clearly erroneous standard of review demands greater deference to findings of trial judge).

> The court below has the exclusive function of appraising credibility, determining the weight to be given the testimony, *412 drawing inferences from facts established, and resolving conflicts in the evidence. A choice between two competing but permissible views of the evidence is not clearly erroneous; where the court acts as fact finder the reviewing court in determining permissibility must view the evidence in the light most favorable to the prevailing party. Accordingly, after a review of the entire evidence, unless the reviewing court is left with the definite and firm conviction that a mistake has been made, the findings of the district court are to be upheld.

<u>State Distributors, Inc. v. Glenmore Distilleries Co</u>.  738 F.2d 405, 411 -412 (10th Cir. 1984) (Citations Omitted).  Accordingly, the decision of the Special Master on this issue should be affirmed

The Special Master concluded that there was evidence in the record that Leach requested grab bars and a shower seat in the shower area, however, Leach presented no

11

evidence that he sustained an injury or damage as a result thereof.  Thus he failed to meet this necessary element of his claim, causation of harm.

Special Master Pringle concluded that Leach proved by a preponderance of the evidence that he was denied access to certain facility areas and jobs as a result of his disability and that he incurred pain and suffering as a result of the CDOC's failure to accommodate his disability by assigning him a pusher.  However, as the special Master noted there was no evidence of monetary damages nor was there any medical testimony supportive of pain or fatigue alleged by Leach.  Claimant was awarded $500.00 to compensate him for inconvenience, pain and inability to access programs and facilities as a result of not having an inmate assistant. This award is appropriate and cannot be deemed an abuse of discretion as defined by this Court and the Tenth Circuit.

**C.     Leach did not object to the denial of his claims associated with alleged denial of access to the cafeteria.**

The Special Master rejected Leach's claim that he was unable to access the cafeteria due to the fact that the facility made accommodations by allowing Leach to have meals in his cell.  Further, Leach admitted that he never requested an accommodation to allow him to remain in the cafeteria until such time as space was available at the wheelchair accessible table.  Leach does not contest this finding in his Objection.

The Special Mater also rejected Leach's claim that he was discriminated against because of a lack of a wheelchair accessible bathroom in the cafeteria kitchen.  Leach does not contest this finding in his Objection.

## V.     CONCLUSION

In summary, the Final Order of Special Master Pringle is detailed, circumstantiated, and well reasoned.  The Final Order should be affirmed.

JOHN W. SUTHERS
Attorney General


s/ James X. Quinn
JAMES X. QUINN, 21729*
Assistant Attorney General
Civil Litigation and Employment Law Section
Attorney for Defendants
*Counsel of Record

1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone: (303) 866-4307
FAX: (303) 866-5443

## CERTIFICATE OF SERVICE

I certify that on April 28, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| H. Earl Moyer, Esq. | Honorable Richard M. Borchers |
| Mbv1@wt.net | dborchers@legalres.com |


s/ James X. Quinn