IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 02-044
Category II
Claimant: John E. McMurrin, #63470
Address of Claimant: ACDF, P.O. Box 5001, Brighton, CO 80601

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of John E. McMurrin (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. The last known address for Claimant was the Adams County Detention Facility in Brighton, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant is not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants filed a motion to dismiss on the basis that Claimant had failed to provide an updated address. Since the Special Masters had an address which appeared to be current, the motion to dismiss was denied.

Defendants filed a second motion to dismiss. Their argument is that Claimant has failed to set forth sufficient allegations that would allow him to succeed on his claim. Claimant was granted up to and including April 24, 2006 in which to respond to the motion. Claimant has not respond to the motion. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the

Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

It is unclear when Claimant came into DOC custody, as he failed to provide that information in his claim form. Based upon work with other inmates who have filed claims, Claimant appears to have been incarcerated initially in the 1980's. At the time that he filed his claim, Claimant was incarcerated in the Colorado State Penitentiary (CSP) in Canon City, Colorado.

Claimant checked two boxes on his claim form: mobility impaired and hearing impaired. Claimant stated as follows:

> My left ear is hard of hearing.
> My left and right knees are totally messed up.
> It hurts just to walk. Sometimes either knee just gives out. Tired of complaining when nobody listens. Its always (fill out a kite).
> They give me motrin like its going to fix the problem. I'm not a murdered or rapist +
> I've never harmed a child. But yet DOC only helps those who fit their criteria.

In response to the question on the claim form as to acts of discrimination by DOC and its staff, Claimant stated as follows:

> I've been told to fill out a kite for my knees. When something was protruding out of my knee. I was ignored about my ear + told to fill out a kite. This was an on going situation. In both my knees something is really wrong.

Claimant was provided with supplemental forms to fill out. He did not return those forms to the Special Masters. Claimant also did not submit any medical records or other documents in support of his claim.

## III.

Defendants have filed a motion to dismiss. This motion will be treated in the same fashion as a motion filed pursuant to F.R.C.P. 12(b). All allegations in the claim form will be accepted as true. Claimant must establish that he is a member of the class by having a disability as defined by the Settlement Agreement. Absent falling into a category as defined by the Settlement Agreement, Claimant may not pursue his claim.

4

Claimant has alleged two disabilities. Each will be examined separately.

**Hearing Impairment:** Claimant has alleged that he is hard of hearing out of his left ear. There are no allegations that he cannot hear out of his right ear.

In order to qualify as hearing impaired, a claimant must meet the following definition.

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, no claimant can qualify for permanent hearing impairment unless that person is totally deaf. From the statements set forth, Claimant is able to hear through both ears. Claimant is not totally deaf. There is no allegation that Claimant must communicate through lip reading, signing or use of written communication. Under the extremely narrow definition in the Settlement Agreement, Claimant does not qualify as hearing impaired.

**Mobility Impairment:** In order to meet this definition in the Settlement Agreement, a claimants must use "wheelchairs full or part time due to a permanent disability" or be "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Review of Claimant's claim form indicates that he has knee problems. From what Claimant has stated, there is no doubt that he has had pain in his knees. The problem is that Claimant has not alleged that he is in a wheelchair or that he cannot walk more than one hundred yards without stopping. In order to allege a mobility impairment, a claimant must set forth allegations showing that the definition in the Settlement Agreement applies. Claimant has not done so, and Defendants are correct in arguing that Claimant has failed to set forth a prima facie case for either impairment. The Special Masters are jurisdictionally bound by the definitions of the Settlement Agreement.

Claimant is advised that his conditions may be protected by the ADA and Rehabilitation Act. The Settlement Agreement does not cover all conditions that may be protected. Claimant may wish to pursue a separate lawsuit concerning his conditions. Unfortunately, Claimant does not meet any of the definitions of the Settlement Agreement and may not pursue his claim.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 24, 2006.**

SIGNED this 12th day of May, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master