IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-085
Category II
Claimant: Alonzo Moore, #100911
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS
A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or

2

signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

     3. Permanent Vision Impairment

     Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

     4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic

     Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

     2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

          1. Is the claimant a disabled individual who is a member of the class?

          2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

          3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

          4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master has re-examined the claim and has determined that placement of this claim into Category II is appropriate.

The Special Master has reviewed the claim submitted by Claimant. The Special Master further has reviewed the response of Defendants. Claimant was granted the opportunity to file a reply to the answer of Defendants, but Claimant did not do so.

According to the claim form of Claimant, he came into DOC custody on May 17, 1999. Claimant has been incarcerated at various DOC facilities and is presently at the Colorado State Penitentiary in Canon City, Colorado.

On his claim form, Claimant checked the boxes for mobility impaired, hearing impaired, and

vision impaired. Claimant stated, in part, as follows:

> Mobility impaired - due to the fact of two (2) bullet wounds to my head creating "skull fractures." I now have been medically diagnosed with the disease called "Frontal Lobe Syndrome." My mobility impairment does not allow me vigorous exercise, working with heavy machinery, living in high places that causes dizziness. My mobility impairment due to the damage to my brain tissue and cells causes me severe headaches and seizures me wondering who then assist me by guiding me to my housing unit or wherever it is that I am found needing to get to and from on a facility compound structure.
> Hearing Impaired
> Due to the bullet wounds to my head, one of the bullets passed through my right ear drum and destroyed my hearing process. I cannot hear out of my right hearing ear lobe and have difficulty processing information. DOC has no testing facilities nor do they offer any medical treatment or devices.
> Vision Impaired
> Due to the bullet wounds, the bullet fragments damaged my visual alignment in which I see in blurred visuals making it hard for me to see clearly. Especially come night fall. It is then my visual becomes very complicated.

In response to the question on the claim form concerning discrimination by DOC and its staff, Claimant states, in part, that the "Colorado Department of Corrections facilities are nor designed or equipped with equipment to accommodate one of these mental conditions I face."

Claimant was provided with supplemental forms to complete and return to the Special Master. Those supplemental forms were never received nor did Claimant submit any medical or other records.

### III.

Defendants' first argument in opposition to the claim is that Claimant has "submitted no evidence to support his claim." The argument is that Claimant submitted only his own statements in his claim form and these cannot be considered.

Defendants negotiated the Remedial Plan with counsel for the class to end this litigation. Section XXXII established the process for submitting claims for damages arising from violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act. The Remedial Plan was approved by Judge Nottingham on August 27, 2003, and the class was set on that date. The settlement provided no opt-out provision, so an inmate in custody on or before August 27, 2003 had to file a claim if he believed that he had a qualifying disability and had been the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Section XXXII provides, in part, as follows:

4

Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members *may* attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. (emphasis added).

*Remedial Plan, p. 28.* This Section provides that "Class members allocated under categories 1 and 2 shall not be entitled to a hearing before the special master." The Section further provides that "[a]fter review of the evidence, the Special master shall issue a written determination as to the damages awarded to each claimant." *Remedial Plan, p.29.*

A claimant must file a claim form in order to confer jurisdiction upon the Special Masters. A claimant is entitled to submit documents in support of his claim. A claimant also is entitled to discovery. When the claim process began, the Special Masters held that the Federal Rules of Civil Procedure applied and would allow for use of discovery tools such as interrogatories and request for production of documents. Defendants objected to this ruling. The matter was presented to Judges Nottingham and Kane, and both ruled that the Federal Rules of Civil Procedure do not apply to the claims process. All claimants were and are entitled to review their medical records and all quality assurance documents. All claimants were and are limited to ten copies without charge, but a claimant is entitled to make a showing of good cause for additional copies over and above the ten granted without charge. In addition, Judge Nottingham has ruled that the Remedial Plan provides no power for the Special Masters to issue subpoenas. These rulings by the District Judges have been premised upon the construction of the Remedial Plan as approved on August 27, 2003. Thus, the vast majority of claimants have been severely limited in their ability to obtain information to prepare and present their claims.

Section XXXII specifically provided for the filing of claims by all individuals who believed that they had been denied their rights under the ADA and Rehabilitation Act. As noted, there is no right to a hearing for claimants whose claims have been assigned to Categories I and II. The claims in those categories must be resolved on all documents submitted by the claimant and Defendants. The claim form, supplemental form, other statements from a claimant, and a reply to the answer of Defendants become the testimony of a claimant. This was what was negotiated by Defendants and counsel for the class. Defendants are bound by the provisions of the Remedial Plan. If Defendants had not wanted the claim forms to be considered as evidence, they could have so negotiated that point with counsel for the class. They did not do that.

In addition, the damage claim process under the Remedial Plan before the Special Masters constitutes an "ancillary proceeding" to the case. The provisions of *28 U.S.C. §1746* apply. The statements of a claimant are deemed submitted under oath or affirmation. A false statement on a claim form or subsequent document could lead to prosecution for perjury. *See e.g., Dunn v. United States*, 442 U.S. 100 (1979). The documents of a claimant will be deemed submitted under oath or affirmation, and the documents will be accepted and considered on their merits. The alternative is

5

to elevate all claims to Category III and allow a hearing on each claim. Every claimant's testimony then would be considered as evidence and given as much or as little weight as the Special Master deems appropriate.

To the extent that Defendants have essentially raised a motion to dismiss the claim, that motion will be denied. The claim will be resolved on its merits.

### IV.

The order of November 24, 2004 sets forth the requirements that must be followed by the Special Masters. A claimant must first establish that he or she has a disability, as defined by the Settlement Agreement, and falls within the class.

Claimant was provided supplemental forms to complete and return. He did not do so. Defendants have filed an answer to the claim, but it contains no medical or other records of Claimant. The answer is basically a general denial and motion to dismiss. Claimant was extended the opportunity to file a reply to the answer, but he did not do so. The claim will be resolved on the information that both sides have provided.

Claimant's medical issues have arisen as a result of his being shot in the head. The full extent of his medical problems is unclear, but there is no doubt that Claimant has had significant damage done to his body. The question is whether he meets the definitions set forth in the Settlement Agreement. Each claimed disability will be taken separately.

**Vision Impairment:** Claimant has alleged that bullet fragments have created problems for his vision. The fragments have caused problems for vision alignment and he cannot see clearly.

The definition for vision impairment in the Settlement Agreement is as follows:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

This is the definition that must be used by the Special Masters. To be blunt, a claimant would have to be legally blind before being able to qualify for vision impairment under the Settlement Agreement.

Claimant's form indicates that he has some eyesight. There are no allegations that his vision is 20/200 or worse. Claimant does not meet the definition for vision impairment in the Settlement Agreement. His vision claim may be such that it could be brought as a separate lawsuit, but Claimant may not pursue his claim as to this condition.

**Hearing Impairment:** Claimant has alleged that his right ear drum was destroyed when he

was shot. He has alleged that he cannot hear out of his right ear.

In order to qualify as hearing impaired, a claimant must meet the following definition.

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, no claimant can qualify for permanent hearing impairment unless that person is totally deaf. Claimant is able to hear through his left ear. Claimant is not totally deaf. There is no allegation that Claimant must communicate through lip reading, signing or use of written communication. Under the extremely narrow definition in the Settlement Agreement, Claimant does not qualify as hearing impaired.

**Mobility Impairment:** In order to meet this definition in the Settlement Agreement, a claimants must use "wheelchairs full or part time due to a permanent disability" or be "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Review of Claimant's claim form indicates that he has significant problems as a result of being shot twice in the head. The Special Master can appreciate Claimant's struggles with his physical condition. The problem is that Claimant is not in a wheelchair and does not have a lower extremity condition that affects his ability to walk. From what Claimant has stated, there is no doubt that he has had difficulty with walking, but not as the result of a lower extremity condition. The Special Masters are jurisdictionally bound by the definitions of the Settlement Agreement.

Claimant is advised that his conditions may be protected by the ADA and Rehabilitation Act. The Settlement Agreement does not cover all conditions that may be protected. Claimant may wish to pursue a separate lawsuit concerning his conditions. Unfortunately, Claimant does not meet any of the definitions of the Settlement Agreement and may not pursue his claim.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 24, 2006.**

SIGNED this 12th day of May, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master