IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-152
Category III
Claimant: Anthony Hernandez, #83042
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

**RESPONSE TO MOTION FOR EMERGENCY INJUNCTION**

Defendants, through the Colorado Attorney General, respectfully submit the following Response to Hernandez's Motion for Emergency Injunction

**STATEMENT OF FACTS**

Anthony Hernandez, #83042, is a diabetic inmate incarcerated at the Colorado Territorial Correctional Facility ("CTCF") of the Colorado Department of Corrections ("CDOC"). He has filed a claim for damages as part of the Montez class action. In April 2006, he requested an emergency injunction. See Emergency Injunction, docketed at 1943. He complains that the medical provider who evaluated his need for accommodations was rude and insulting. Hernandez alleges that the provider stated that the he (the provider) would not approve any accommodations for inmates

associated with the Montez case. Id., p. 1. Hernandez seems to allege that the CDOC has a policy of retaliating, discriminating, and refusing medical treatment and accommodations to disabled inmates. Id., p. 1-2. He also claims that at one time he had a single cell, a bottom tier restriction, medical tennis shoes, and an order for finger sticks four times per day, but that these are no longer provided to him. Id., p. 2. Hernandez requests an injunction ordering the following: (1) CDOC to provide him with a single cell, four fingers sticks per day, and free medical tennis shoes; (2) CDOC to stop harassing and discriminating against him; and (3) an evaluation by a non-CDOC doctor. Id.

According to CDOC medical records, Hernandez was seen on March 22, 2006, by Dr. Joseph Wermers, the physician at CTCF, to determine whether Hernandez's condition constitutes a disability and what, if any, accommodations he needs. See Ambulatory Health Record, 3/22/06, attached as Defendants' Exhibit A; Diabetes Screening Form, attached as Defendants' Exhibit C; Mobility Screening Form, attached as Defendants' Exhibit D.[1] According to the ambulatory record, completed the same day by Dr. Wermers, Hernandez was an "[a]rgumentative, aggressive and hostile patient from [the] moment he entered exam room." Id.

During the evaluation, Hernandez asked to either be given all supplies for testing his own blood sugars or to have finger sticks on demand at no charge. Dr.

---

[1] Hernandez initially requested accommodations in December 2003, however he did not submit a signed medical release form until February, 2006. Because the CDOC's ADA Inmate Coordinator ("AIC") is not a doctor, a formal disability screening and determination of what, if any, accommodations are necessary cannot be completed until an inmate has submitted a signed medical release to the AIC.

2

Wermers explained that "for security reasons supplies are not provided in cells." <u>See</u> Def. Exh. A. Dr. Wermers also noted that Hernandez is prescribed finger sticks twice per day but that Hernandez often skips his finger sticks. <u>Id.</u> ("BID" is the medical abbreviation for twice a day). For example, between March 1 and March 22, 2006, Hernandez missed all but 3 of his afternoon finger sticks. <u>Id.</u> Dr. Wermers also explained that Hernandez could obtain finger sticks at other, non-prescribed times but that he would be charged. <u>Id.</u>

Hernandez has requested finger sticks on demand in the past. In December 2003, Cathie Holst, the CDOC's ADA Inmate Coordinator, responded to Hernandez's inquiry about finger sticks.

> Your provider assesses your need for finger sticks and has determined that you require them twice per day. In the interest of facility order and management, finger sticks are performed at specified times – 6:00 a.m. and 4:00 p.m. Finger sticks may be performed at other times if ordered by the provider, or if you are experiencing a problem and need your values checked. The facility does not deny you finger sticks; you may have as many as you believe you need if you are experiencing difficulty, however those will be treated as an emergency. Since additional finger sticks are outside the recommendations of your provider, you will be charged a co-pay for them. In addition, you have been advised that you may be tested to see whether you in fact need a finger stick at a different time of day but to date you have declined to participate in this evaluation. Having no evidence to the contrary, your provider has made the best determination of your situation as he can.

Memorandum from Cathie Holst to Anthony Hernandez, dated 12/31/03, attached as Defendants' Exhibit B.

Hernandez wants the CDOC's Medical Department to provide him free tennis shoes. Dr. Wermers explained that Hernandez's condition does not require medical to

3

provide him free tennis shoes. Def. Exh. A.  Hernandez can purchase tennis shoes from the prison canteen. Id.; Def. Exh. B.  Dr. Wermers reviewed Hernandez's recent canteen purchases and found, "Canteen past 3 months: $444 spent, includes more than 260 food/snack items as well as racquetball supplies.  Certainly has money to purchase tennis shoes." Def. Exh. A.

Regarding Hernandez's request for extra clothing, blankets, and a permit to wear a coat and hat all year long, Dr. Wermers concluded that Hernandez's "clothing is appropriate" and noted that "[b]lankets are a housing/security issue, as are winter clothing during summer." Def. Exh. A.

Hernandez is on a variety of diabetes medications, including insulin. See Def. Exh. A.  As noted above, Hernandez has poor compliance with the two finger sticks per day prescribed by Clinical Services. Id.  At one point, Hernandez was prescribed an ADA (American Diabetes Association) diet but that diabetic diet was discontinued due to Hernandez's noncompliance with the diet. Id.  Hernandez currently receives a regular diet with a HS ("hours of sleep") snack. Id.  An eye exam from July 2005 shows that he does not have diabetic retinopathy. Id.  On the Diabetes Screening form, Dr. Wermers noted Hernandez's poor compliance with his treatment: "poor compliance finger sticks – canteen loaded with inappropriate foods – was not compliant RE diabetic diet – sporadic refusal [of] labs to monitor DM [diabetes]." Def. Exh. C.

After Dr. Wermers stated that Hernandez missed many of his prescribed finger sticks, Hernandez "jumped up, gave [Dr. Wermers] the finger in [a] very aggressive and threatening fashion and walked out." Def. Exh. A.  According to Dr. Wermers,

4

"[a]fter arguing with almost every sentence I spoke, giving me the finger, [Hernandez] says I am confrontational." Id.  Hernandez walked out of the screening before it was completed. Id.; Def. Exh. D.

## ARGUMENT

### I. HERNANDEZ FAILS TO MEET THE REQUIREMENTS FOR AN INJUNCTION OR TRO.

The purpose of a preliminary injunction is to preserve the status quo between the parties pending a final decision on the merits. Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).  Because a preliminary injunction is an extraordinary remedy, the plaintiff's right to relief must be clear and unequivocal. SCFCIL, Inc. v. Visa USA, Inc., 936 F. 2d 1096, 1098 (10th Cir. 1991), overruled on other grounds by Schrier v. University of Colorado, 427 F.3d 1253 (10th Cir. 2005). A party moving for preliminary injunctive relief must demonstrate the following:

> (1) a substantial likelihood of success on the merits of the case;
> (2) irreparable injury to the movant if the preliminary injunction is denied;  (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction;  and
> (4) the injunction is not adverse to the public interest.

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001).

For some requested preliminary injunctions, a movant has an "even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction may be issued." Id.  The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, or (3) provide the movant substantially all the relief he may recover after a full trial on the merits. See id.  Because Hernandez's

5

requested relief would disturb the status quo, would be mandatory as opposed to prohibitory, and would provide him with substantially all the injunctive relief he could recover after a hearing with the Special Masters, the heightened burden requirement applies.  Thus, he must demonstrate not only that the four requirements for a preliminary injunction are met but that they weigh heavily and compellingly in his favor.  He cannot meet his burden.

### A. Hernandez Fails to Demonstrate a Substantial Likelihood of Success on the Merits of His Claim.

Hernandez's request for an injunction should be denied because he has failed to demonstrate a substantial likelihood of success of the merits of his damages claim. As a Category III claimant, Hernandez will receive a hearing on his damages claim with the Special Master.  All damages claims are evaluated by the criteria set out in the November 23, 2004 Order by the Honorable Judges Nottingham and Kane:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

November 23, 2004 Order, ¶ 2.  In applying these criteria, the court can look to ADA and Rehabilitation Act case law. Id., ¶ 3.

To be "disabled" under the ADA/Rehabilitation Act, a claimant must show that a physical impairment substantially limits a major life activity. See Toyota Motor Manuf. v. Williams, 534 U.S. 184, 187 (2002).  It is undisputed that Hernandez has

6

diabetes, a physical impairment. However, that he has diabetes does not mean that he is disabled. "It is insufficient for individuals . . . to merely submit evidence of a medical diagnosis or an impairment. Instead, the ADA requires [a claimant] to prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial." Id., 534 U.S. at 198 (quotation omitted). Hernandez has failed to show that his diabetes rises to the level of a disability. Indeed, he flipped off Dr. Wermers and left the exam room before his screening could be completed. See Def. Exh. A.

Even if Hernandez's diabetes does constitute a disability, he has not been discriminated against because of his diabetes. To recover damages, Hernandez must prove that he was denied access to a job, program, benefit, or service that he was otherwise qualified for, and that such denial was "because of" his diabetes. Hernandez is not "otherwise qualified" under the ADA or Rehabilitation Act to receive the things he requests: additional finger sticks, free tennis shoes, or a single cell. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979). "[W]here medical treatment is at issue, it is typically the handicap itself that gives rise to, or at least contributes to, the need for services . . . [thus] the 'otherwise qualified' criteria . . . cannot be meaningfully applied." United States v. University Hosp., 729 F.2d 144, 156 ($2^d$ Cir. 1984).

In Fitzgerald v. Corrections Corporation of America, 403 F.3d 1134, 1144 (10th Cir. 2005), the Tenth Circuit explained that "Fitzgerald would not have been 'otherwise qualified' for such treatment in the absence of his alleged disability—his

7

alleged disability in this case was the reason why Fitzgerald was seeking medical treatment." "[I]f such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment." Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992). Similarly, because Hernandez would not be seeking additional finger sticks, free tennis shoes, and a single cell if he was not diabetic, he cannot be "otherwise qualified" for those things under the ADA and Rehabilitation Act.

Nor has Hernandez been denied additional finger sticks, free tennis shoes, or a single cell as discrimination against his diabetes. Hernandez cannot show that he was discriminated against because of his diabetes. "[T]he plaintiff must present some affirmative evidence that disability was a determining factor in [defendant's] decision." Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1259 (10th Cir. 2001) (quotation omitted). Hernandez disagrees with the medical provider's conclusion that he does not require specialty medical tennis shoes, a single cell, or four finger sticks per day. "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" Johnson, 971 F.2d at 1494. The CDOC has not discriminated against Hernandez.

In addition, to the extent that Hernandez challenges the quality of medical care provided by the CDOC, his claim will fail. Both the Special Masters and the Honorable Judge Kane have repeatedly held that allegations regarding the quality of an inmate's medical care are beyond the scope of the ADA, Rehabilitation Act, and

8

Remedial Plan. See Fitzgerald, 403 F.3d at 1144; Johnson, 971 F.2d at 1493-94.[2]

"Unless they meet the criteria established in paragraph #[2], individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." November 23, 2004 Order, ¶ 5.  Moreover, a difference of opinion between a medical provider and an inmate-patient does not give rise to a constitutional violation, see Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968), and certainly does not state a claim under the ADA and Rehabilitation Act.  Hernandez's disagreements with his doctors about prescribed medical care fails to state a claim of disability discrimination.  Because the CDOC has not discriminated against Hernandez because of his diabetes, his damages claim will fail.  Hernandez has failed to demonstrate a substantial likelihood of success on the merit of his damages claim.  Therefore, his motion should be denied.

### B. Hernandez Fails to Demonstrate Irreparable Injury if the Injunction is Denied.

Hernandez will not suffer irreparable injury if the injunction is denied.  A movant can only obtain an injunction if he will suffer irreparable injury unless the injunction issues. See Longstreth v. Maynard, 961 F.2d 895, 902 (10th Cir. 1992). The movant must show a real or immediate threat of irreparable harm. See Schwimmer v. Kaladjian, 834 F.Supp. 93 (S.D.N.Y. 1993).  Speculative harm or loss

---

[2] In affirming multiple final orders issued by the Special Masters, Judge Kane has held that "[t]he claimant's complaints regarding quality of his medical care are well beyond the scope of this case and must be heard, if at all, by a separate individual action, and not as part of the remedial plan in this case." See, e.g., Order of Judge Kane Re: Claimant Shawn M. Winkler, dated March 22, 2006, docketed at 1786, attached as Defendants' Exhibit E.

9

is insufficient to justify an injunction. See Apollo Technologies Corp. v. Centrosphere Indus. Corp., 805 F.Supp. 1157 (D.N.J. 1992).

The CDOC provides Hernandez with appropriate medical care and will continue to do so. To treat and monitor his diabetes, the CDOC provides Hernandez with insulin and other medications, finger sticks twice a day, and a nighttime snack. See Def. Exh. A. In addition, Hernandez receives regular medical check-ups for his diabetes, including regular diabetic eye exams. Id. Hernandez has a history of noncompliance with his finger sticks and diet. Id. Due to his history of noncompliance with prescribed treatment, the greatest threat to Hernandez's health is Hernandez. He should comply with the care prescribed by medical staff.

Hernandez asks this Court to order he be provided finger sticks four times per day. CDOC doctors have determined that he requires finger sticks twice per day. See Def. Exhs. A, B. As Hernandez has proven unable or unwilling to go to two finger sticks per day (as recommended by his doctor), it would be inappropriate to order that he receive four per day. Because the CDOC is already providing appropriate care, Hernandez will not suffer irreparable harm if the injunction is denied.

Nor has Hernandez shown that irreparable harm will occur if he buys his own tennis shoes from the canteen instead of receiving free tennis shoes from Clinical Services. Hernandez's condition does not require Clinical Services to provide him free tennis shoes as a medical necessity. See Def. Exhs. A, B. If he wants tennis shoes, Hernandez can purchase a pair from the canteen. Id. He has sufficient funds to purchase his own tennis shoes, but instead chooses to spend his money on snacks and racquetball supplies. See Def. Exh. A.

Finally, Hernandez has not shown that he will suffer irreparable harm if he does not receive a single cell. He has not been prescribed a single cell by Clinical Services. Nor is there any evidence that his medical condition requires a single cell. Consequently, Hernandez's motion should be denied because he will not suffer irreparable harm if the status quo is maintained.

### C. Hernandez Has Not Shown That Any Threatened Injury to Him Outweighs the Injury to the CDOC if the Injunction Would Be Granted.

As noted above, Hernandez will not suffer harm if the injunction is denied. On the other hand, granting Hernandez's motion would harm the CDOC. Granting the injunction would allow Hernandez, an inmate with a history of noncompliance with his prescribed treatment, to override his doctors' determinations regarding blood sugar monitoring and whether tennis shoes or a single cell are medical necessities. Because Hernandez has not established that any threatened injury to him outweighs the potential injury to the CDOC, his motion should be denied.

### D. The Injunction Would be Adverse to the Public Interest.

Hernandez seeks an injunction ordering the CDOC to give him four finger sticks per day, free tennis shoes, and a single cell. Hernandez is provided with two fingers sticks per day for free. See Def. Exh. A, B. "In the interest of facility order and management, finger sticks are performed at specified times – 6:00 a.m. and 4:00 p.m. Finger sticks may be performed at other times if ordered by the provider." Def. Exh. B. The CDOC's practice of providing finger sticks at specific times and places is dictated by its need to accommodate the medical needs of hundreds of inmates. Allowing all diabetics to receive finger sticks on demand would be unworkable and

11

would prevent Clinical Services from meeting the needs of all inmates. The CDOC's determination of the most efficient and medically-appropriate way to conduct blood sugar testing is entitled to deference.

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life. Where, as here, a state penal system is involved, federal courts have additional reason to accord deference to the appropriate prison authorities.

McKune v. Lile, 536 U.S. 24, 37 (2002) (quotations and citations omitted). The operation of the prison should be left to the CDOC. See, e.g., Bell v. Wolfish, 441 U.S. 520, 547-48 (1979). The Constitution is not "a micromanager of day-to-day prison activities . . . [nor] a guarantee of prisoner preferences over those of prison officials." Handy v. Price, 996 F.2d 1064, 1068 (10th Cir. 1993). It is in the public's interest to allow the CDOC to provide finger sticks in the most medically-appropriate and efficient way it can.

If Hernandez wants additional finger sticks beyond what the medical provider recommends, he can pay a co-pay. See Def. Exhs. A, B. The CDOC's co-pay policy is reasonable and appropriate. The public has an interest in having the CDOC, a state entity, hold down costs. See Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978) (holding down costs is a legitimate state interest). As long as an inmate's serious medical needs are met, it is a matter of state law whether the cost of that care shall be borne by the state or the prisoner. Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245-46 (1977). Colorado law requires the CDOC to charge a co-pay for medical

services. Colo. Rev. Stat. § 17-1-113.  The co-pay policy has been upheld in state court.  See Negron v. Gillespie, 111 P.3d 556 (Colo. App. 2005).  Similarly, there is nothing unreasonable about asking inmates to purchase some items, including tennis shoes, from the prison canteen.  This policy and practice serves the public's interest in holding down cost and teaching inmates to use money responsibly.

Finally, there are a limited number of single cells at any facility.  An inmate has no right to determine where he will be housed.  Housing decisions, including cell placement, are entrusted to the discretion of prison administrators.  See Meachum v. Fano, 427 U.S. 215, 223-25 (1976); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994).  It is in the public's interest to allow the CDOC to determine where to house its inmates.  Here, there is no evidence that Hernandez medically requires a single cell.  It would be adverse to the public's interest to allow Hernandez to dictate to the CDOC where he should be housed.

### II. THE CDOC PROVIDES REASONABLE ACCOMMODATIONS TO INMATES WITH VERIFIED DISABILITIES.

Hernandez alleges that the CDOC has a policy of denying necessary accommodations and medical care to inmates.  In essence, he is challenging the CDOC's compliance with the ADA/Rehabilitation Act and the Montez Remedial Plan.  Under the Remedial Plan, the issue of whether the CDOC is in substantial compliance with the Remedial Plan is to be determined by the Honorable Judge Kane.  See Remedial Plan, § XXXI.  A Compliance Hearing before Judge Kane began on April 24 and 26, 2006, and will conclude on June 1 and 2, 2006.

13

More importantly, Hernandez's allegations are without merit. The CDOC has implemented a disability screening process and is providing necessary accommodations to inmates with verified disabilities. The AIC has opened files on over 1600 inmates. The AIC opens a file on an inmate if the inmate, the inmate's family, or CDOC staff—really anyone—alerts the AIC that the inmate may be disabled; or if the inmate requests accommodations; or if the inmate filed a claim for damages as part of the Montez class action. Once an inmate submits the necessary paperwork—a Request for Accommodations form and a medical release form—the inmate will be scheduled for a disability screening.

The CDOC has already screened approximately 620 inmates for disabilities.[3] An additional 110 screenings have been requested by the AIC and are in process. Of the approximately 620 screenings that have occurred, the CDOC has determined that approximately 250 inmates have a disability. Once the CDOC confirms that an inmate has a disability, the AIC works with medical staff and housing, security,

---

[3] While the AIC has open files on over 1600 inmates, several of those inmates have never sought accommodations or requested to be screened. For example, hundreds of inmates filed damages claims as part of the Montez class action but never requested anything from the AIC. The AIC has attempted to contact every inmate who has filed a damages claim (and who had not already requested accommodations) inviting them to request accommodations. Despite the AIC's invitation, several inmates who filed damages claims still have not requested any accommodations from the AIC.

Other inmates, despite notification from the AIC, have not been screened because they have not submitted a signed medical release form. It is the position of the CDOC and AIC that the AIC cannot review or disperse an inmate's confidential medical information, and thus cannot process a request for accommodations, without a signed medical release from the inmate. The approximately 620 screenings that have occurred and the 110 that are pending represent those inmates who have requested accommodations and submitted a signed medical release.

educational, and vocational staff to determined what, if any, accommodations the disabled inmate requires. The AIC then issues an Accommodation Resolution.

Because Hernandez prematurely walked out of his screening on March 22, 2006, the CDOC has been unable to verify whether his condition(s) rise to the level of a disability and what, if any, accommodations he requires. As a result, the CDOC has not yet issued an Accommodation Resolution for Hernandez. Any delay is due to Hernandez's refusal to cooperate. The Remedial Plan requires inmates to cooperate with the CDOC's efforts to evaluate disabilities and accommodations. "Inmates must cooperate with staff in the staff's efforts to obtain documents or other information necessary to verify a disability, including but not limited to, signing a release for medical or mental health information, if necessary." Remedial Plan, § IV.

Contrary to Hernandez's unsupported allegations, the CDOC has implemented a screening process and does provide reasonable accommodations to inmates with verified disabilities. Furthermore, while the quality of inmate's medical care is beyond the scope of this ADA/Rehabilitation Act class action, the CDOC affirmatively states that it provides reasonable medical care to all inmates and does not have a policy of refusing necessary medical care to any inmate.

## CONCLUSION

Hernandez fails to prove that any of the four requirements necessary for an injunction are present here, let alone prove that all four weigh heavily and compelling in his favor. Therefore, Hernandez's Motion for an Emergency Injunction should be denied.

Respectfully submitted this 15th day of May, 2006.

JOHN W. SUTHERS
Attorney General

s/ Jess A. Dance
JESS A. DANCE, 35803*
Assistant Attorney General
Corrections Unit
Civil Litigation & Employment Law Section
Attorney for Defendants
*Counsel of Record

1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: (303)866-5165
jess.dance@state.co.us

## CERTIFICATE OF SERVICE

I certify that on May 15th, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

I further certify that I have mailed copies of the foregoing via the United States mail, postage prepaid, at Denver, Colorado, this 15th day of May, 2006, addressed as follows:

Anthony Hernandez, #83042
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

*Courtesy Copy To:*

Cathie Holst

s/ Mariah Cruz-Nanio