IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-147
Category III
Claimant: Jimmy Ross Bulgier, TDCJ #902732[1]
Address of Claimant: 265 FM3478/Estelle Unit, Huntsville, TX 77320-3322

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on Tuesay, January 24, 2006, 11:00a.m.[2] MST[3] at the office of Legal Resolution Center, Denver Corporate Center III, Suite 1100, 7900 East Union, Denver, Colorado. Present were the following: Jimmy Ross Bulgier, Claimant, by telephone[4]; Randy E. Goodrum, Qualified Reading Assistant[5], by telephone; Brooke Meyer and Jennifer Berman, from the Office of the Attorney General, for Defendants; Orville Neufeld, D.O., witness for the Defendants;

---

[1] Claimant's Colorado Department of Corrections number is CDOC #69812. To ensure that Claimant receives his mail, the Special Masters have used his Texas Department of Criminal Justice (TDCJ) number on all orders and correspondences.

[2] The hearing time was originally scheduled to begin at 2:00p.m. MST but, due to cancellations of earlier hearings and the availability of witnesses and the Claimant, the hearing started at 11:00a.m., MST.

[3] Claimant is located in Texas in the Central Standard Time zone and, to ensure availability, all times were set and reference the Mountain Standard Time zone where Colorado is located.

[4] At the time of the hearing, Claimant was incarcerated in Texas at the Estelle Unit in Huntsville, TX.

[5] The basis of Claimant's *Montez* claim is vision impairment. Prior to the commencement of the hearing, Claimant moved the Special Masters to provide him with a Qualified Reading Assistant during the hearing pursuant to 28 C.F.R. 35.104. Specifically, Claimant sought fellow Estelle Unit inmate, Randy E. Goodrum, TDCJ #1065104. The motion was granted and the Special Masters' staff worked with the Warden and staff at the Estelle Unit to arrange for Mr. Goodrum's participation.

1

Cathie Holst, Colorado Department of Corrections ADA Inmate Coordinator, witness for the Defendants.

Testimony was received from the following witnesses: Claimant, Jimmy Ross Bulgier[6], by telephone; Becky Romano, Regional Mental Health Administrator for DOC, by telephone; Orville Neufeld, D.O.; Dennis Dinsmore, Tab/License Plate Factory Manager, by telephone; Elizabeth Manzanares, Teacher at Colorado Territorial Correctional Facility (CTCF), by telephone; Michael Lovato, RN3, Nursing Supervisor at CTCF, by telephone; Scott McKinsey, by telephone; Cary Shames, D.O. Claimant submitted Exhibits marked "A" through "D" and Defendants submitted Exhibits marked "1" through "8[7]" An Appendix of Exhibits is attached as part of this Order.

At the conclusion of the hearing, Claimant requested a copy of the transcript of the hearing. The Special Master, on the record, informed the Claimant that all the Special Master can do is to provide a set of audio compact discs of the hearing[8]. The claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

---

[6] Frequently, during the hearing, Claimant asked Mr. Goodrum to assist him with the reading of documents. Mr. Goodrum, at the onset, was placed under oath for the purpose of being an assistant but did not provide any of his own testimony. Mr. Goodrum is identified on the record as the person speaking on behalf of Claimant.

[7] Claimant also introduced Exhibit 8. However, the exhibit is only marked as Defendants' 8.

[8] Claimant informed the Special Master that inmates are not allowed to keep compact discs in their personal possession. Prior to sending out the discs and Final Order, the Special Master will have his staff coordinate with the law library at the Estelle Unit so that the discs can be sent appropriately and be made available to Claimant in the law library.

2

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.      General inconvenience or nominal damages;
    II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
    III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
    IV.    Damages due to severe physical injuries; and
    V.     Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.    Claimant submitted an initial claim on June 7, 2004 which was assigned claim number 02-488.

2.    Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.    Based upon a number of motions filed with the United States District Court and forwarded to the Special Master, the Special Master determined that Claimant should be reassigned to Category III. On August 1, 2005, Claimant was reassigned claim number 03-147.

4.    Claimant is currently incarcerated in Texas, 265 FM3478/Estelle Unit, Huntsville, TX 77320-3322 and is under the jurisdiction of the Texas Department of Criminal Justice.

5.    Proper notice of the hearing was given, and both Claimant and the Defendants appeared for the evidentiary hearing.

3

6. Claimant was in the custody of the Colorado Department of Corrections (CDOC) from approximately May 1993 until September 1997: 4 years, 7 months and 19 days.[9]

7. Claimant is Vision Impaired.

8. Claimant suffers from Retina Linticular Fiberplasia (RLF) which he has had since birth. He is considered legally blind, uses a white cane. He is unable to read normal or large print and primarily reads Braille.

9. While in CDOC custody, Claimant testified that he did not ask staff to present documents to him in Braille. He simply asked that they read to him documents such as appointments. He asked for a reader but was refused and inmates were not allowed to provide assistance.

10. While at CTCF, Claimant testified that he suffered many cuts resulting in scars from collisions with sharp edges on doors. There were no white cane markings. He nearly fell into a six foot irrigation canal because the canal lacked a railing. The chow hall windows open out and Claimant hit the windows, fell, was cut and scarred. Claimant testified that the safety hazards at CTCF were not addressed.

11. Claimant testified over objection that at Fremont Correctional Facility (FCF) he was attacked by four inmates. Something was shoved up his rectum and penis. He testified that it was painful and felt like bleeding. Claimant testified that CDOC did not take proper care of him.

12. Claimant testified over objection that while in CDOC custody, he was burned by an iron. His testimony also was that the wound was not self-inflicted. Claiamant testified that CDOC did not take care of him. Lieutenant Jerry Kimbel showed him deliberate indifference after the iron burn and did not want Claimant to go to medical.

13. Claimant's testimony indicates that he had problems with Becky Romano. He was employed at the Tab/License Plate factory and believes that he was terminated as a result of retaliation from a grievance/ADA complaint he filed against Ms. Romano. He testified that she wanted him to move to the back corner of the room which would jeopardize his safety. His testimony, supported by the testimony of Dennis Dinsmore was that his work product was very good. Several months later, he was hired in the kitchen and three days later he lost his single cell status.

14. Claimant testified that he was forced to take the family life skills class several times. He testified that he lost good time and work time and was unfairly terminated from Ms. Romano's group. He also filed a complaint against the law library.

---

[9] This time does not include the time that Claimant was in the Adams County Jail from December 1992 until May 1993.

15. Claimant testified that his transfer to FCF was unsafe and that the ensuing attack caused him years of pain and suffering. Claimant had surgery after he got out.

16. Becky Romano testified that she has worked for CDOC for 20 years. She remembered Mr. Bulgier. Her testimony was that he was terminated because of horseplay, acting out, tripping people with his cane and pulling out chairs to make the person attempting to sit fall down. A behavior plan for Claimant "to do better" was implemented.

17. Dr. Neufeld testified that RLF is a condition where visual acuity drops over time due to a fibrous band that occurs over retinas. No good treatment exists at this time for RLF. Dr. Neufeld testified that Claimant was a preemie and, when he was in a ventilator, he received too much oxygen which caused the RLF. This was common for preemies born around the time of Claimant. He testified that Claimant is, in fact, legally blind within the boundaries set forth by the Remedial Plan. Claimant was given glasses and a white cane. His review of the medical charts revealed that something was, in fact, put into Claimant's penis and surgery was performed. The charts also reveal that the on 1/23/95, Claimant reported an iron burn on his left hand and the record shows no entry that the 3cm lesion was self-inflicted.

18. Elizabeth Manzanares testified that she was not sure if Claimant's repeat participation in classes was mandatory or voluntary.

19. Michael Lovato testified that he has personal knowledge of Claimant. He also testified that two qualifying criteria are necessary for a single cell: 1) a recent colostomy; 2) an abnormal drop in white blood cell count which would require a quarantine of sorts to protect general population form the potential of getting sick. He also testified that a medical single cell overrides a privileged single cell.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the

5

average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Bulgier is a disabled individual who is a member of the class. Claimant is visually impaired.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. There is nothing in the evidentiary record suggesting that Claimant Bulgier was otherwise unqualified to participate in any program or to receive any benefit or services. The record is clear that Claimant participated in many classes as evidenced by the Academic Achievement Awards. Claimant also was employed in the Tab/License Plate factory and also in the kitchen. As a result, the Special Master finds and concludes that Claimant Bulgier has met this requirement of the ADA, the Rehabilitation Act and the Remedial Plan.

4. The third, and probably key issue before the Special Master, is whether Claimant was discriminated against by CDOC because of his or her disability. In order to establish discrimination in the context of the Remedial Plan, Claimant must demonstrate that he requested accommodation for his disability and that reasonable accommodation was denied. No evidence of discrimination was offered by Claimant. Claimant testified, specifically, that he did not ask for documents to be provided to him in Braille.

Ultimately, Claimant's claims of discrimination go to issues of housing, employment, failure to protect from harm and failure to provide a reader. The testimony was clear that Claimant did not meet the criteria for a single cell for medical purposes. While it may be true that Claimant was attacked, he did not prove that he was discriminated against because of the attack. He received medical treatment. Also, the Special Master remains unclear how Claimant could have been protected from the attack.

The record shows that Claimant did seek an inmate reader and was denied. However, the record also shows that Claimant had problems with the staff in the law library who could have provided him assistance.

     5.    It should be noted that many of Claimant's complaints relate to an alleged failure of the CDOC to provide reasonable medical care and treatment for his disability or to an alleged deliberative indifference of the CDOC to Claimant's medical needs. These claims are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005).

     6.    Since Claimant cannot prove that he was discriminated against, the analysis need not go further.

## IV. ORDER

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his claim in this matter is DENIED.

IT IS FURTHER ORDERED that that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 16, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

.

SIGNED this 16th day of May, 2006

> BY THE COURT:
>
> /s/ Richard C. Davidson
>
> _____
> Richard C. Davidson,
> Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _16th_ day of May, 2006 to the following:

Mr. Jimmy Ross Bulgier, TDCJ #902732
265 FM3478/Estelle Unit
Huntsville, TX 77320-3322

Ms. Brooke Meyer
Ms. Jennifer Berman
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                        /s/ Susan L. Carter

                                        Susan L. Carter