IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 03-146
Category III
Claimant: Gerald Sensabaugh, #100656
Address of Claimant: CSP, P.O. Box 777, Canon City, Co 81215-0777

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on Wednesday, February 1, 2006, 10:30a.m., at the Colorado State Penitentiary (CSP), Canon City, Colorado. Present were the following: Gerald Sensabaugh, Claimant; Jess Dance, from the Office of the Attorney General, for Defendants; Orville G. Neufeld, D.O., for; Cathie Holst, ADA Inmate Coordinator.

Testimony was received from the following witnesses: Claimant, Orville G. Neufeld, D.O., Officer Gordon, Case Manager Larry Watkins. An Appendix of the Exhibits submitted is attached as part of this Order. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been

1

reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.      General inconvenience or nominal damages;
    II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
    III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
    IV.    Damages due to severe physical injuries; and
    V.     Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.    Claimant submitted an initial claim on April 2, 2004 and was originally assigned claim number 02-055 and placed in Category II pursuant to the Remedial Plan.

2.    Claimant filed a supplemental claim for damages due to mobility on May 3, 2004.

3.    On July 13, 2005, pursuant to part of a discovery order request, the Special Master – on his own motion – elevated Claimant to Category III and reassigned him to Claim 03-146.

4. Claimant is presently incarcerated in the Colorado State Penitentiary (CSP), located in Canon City, Colorado. He has been in Colorado Department of Corrections (CDOC) custody since 1998 and has also been house in Burlington, Sterling and Limon.

5. Proper notice of the hearing was given, and both Claimant and the Defendants appeared for the evidentiary hearing.

6. Claimant has claimed mobility impairment.

7. Prior to coming under CDOC jurisdiction, Claimant had three back surgeries and two hip surgeries. In 1985, he had his two lower bottom vertebrae fused. The surgery didn't take and a year later, the fusion was redone and he had metal and screws put in. Three years later, the hardware was removed. The three surgeries were done at the VA hospital. In 1989, Claimant was hit by a car and he suffered a broken hip, leg and shoulder. His hip bone was shattered and a leg bone was replaced with a metal rod. He has a Penrose drain. He is in constant pain.

8. Claimant testified that the Denver Reception & Diagnostic Center (DRDC) said he needs two mattresses. While at Burlington, Claimant had an "egg crate" mattress. At Sterling Correctional Facility (SCF) he was told "yes" and then "no" and then "yes" again to the mattress request. At Limon Correctional Facility (LCF) his restrictions were removed. Without the second mattress or egg crate, Claimant suffers additional hip pain.

9. At LCF and SCF Claimant attempted to get jobs but was fired because he didn't show up for work because he was locked in his cell. At SCF he worked as an ADA Porter but lost that job because they found someone "more handicapped." At LCF he was put on a generic cleanup crew. A new "make work" job was created for him called "bricks" where he went to the gym to get an empty bucket and brush and had to stand around the flagpole for one hour. Prior to being incarcerated, Claimant painted apartments and refurnished antiques.

10. Claimant testified that in September, 2004, PA JoAnn Stark took his egg crate and shoes. She is told by Dr. Dallegge, a Podiatrist, that he wears 12EEE low top shoes and his shoes should be tennis shoes not leather shoes. PA Stark informed him that he could make $100/month working in industries and "self procure" his shoes. His Step II Grievance response was "tough luck." Claimant does not use a wheelchair but, in 2001, while at SCF, Claimant used crutches for two months.

11. Claimant testified that he does not go to recreational activities because he cannot stand for an hour.

12. Dr. Neufeld testified that Claimant has big feet and that big shoes create sore feet and Claimant should simply wear two pairs of socks. He testified that CDOC has a new source of mattresses and the new mattresses are four inches thick rather than

3

the one-and-three-quarter-inch thick mattresses traditionally issued by CDOC.  The new mattresses are replacing the old mattresses as they are "retired."  Additionally, he testified that the policy at CSP is that egg crate mattresses are not allowed due to fire considerations and the high level of security at the facility and only the most serious of medical overrides allows an egg crate.  Dr. Neufeld testified that he has worked at CSP.

### III.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Collins is a disabled individual who is a member of the class.  Claimant has a mobility impairment.

2.      The next question which must be resolved is whether or not Claimant was qualified to participate in the programs or to receive benefits or services offered by the

4

CDOC. The record shows no evidence suggesting that Claimant was not eligible for any of the programs, benefits or services offered by the Kit Carson Correctional Facility (Burlington), LCF, SCF or CSP facilities or was disqualified from these programs, benefits or services for reasons other than his disabilities. Consequently, as to those programs, benefits and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

3. The ultimate question is whether or not Claimant was discriminated against because of his disabilities. The testimony was clear that Claimant has suffered discrimination in that his egg crate or second mattress has been taken from him causing him to have problems with his hip. Further, Claimant has had his tennis shoes taken from him and told to wear extra socks to make his shoes fit properly. The lack of proper tennis shoes is also discriminatory because Claimant has been told by medical that he should be wearing tennis shoes to prevent further back problems.

4. Finally, the record shows that Claimant has suffered damages. There is no showing of monetary damages incurred by Claimant as a result of the failure to accommodate as discussed above. Claimant has had his tennis shoes and second mattress or egg crate taken. While non-economic loss is not recoverable under the Rehabilitation Act or the ADA absent proof of intentional discrimination (*Powers v. MJB Acquisition Corp.,* 184 F.3d 1147 (10th Cir. 1999)), the issue of intentional discrimination was resolved through the settlement and Remedial Plan. In any event, the evidentiary record contains a sufficient showing of intent to sustain a claim for non-monetary loss under the Rehabilitation Act and the ADA. Considering the totality of the evidence, the Special Master finds and concludes that the sum of $250.00, a new four-inch-thick mattress or egg crate mattress as well as a new, properly fitting pair of tennis shoes that do not require multiple pairs of socks to make the shoes fit adequately compensates Claimant for CDOC's failure to accommodate his mobility disability from 1998 though the present..

5. On April 27, 2006, the Special Master received from Claimant a Motion for an Order to introduce further Discovery based upon a recent ruling by Judge Nottingham. The Special Master is unaware of such a ruling by Judge Nottingham. Further, the evidentiary portion of the hearing was concluded three months ago. Claimant's post-hearing motion for further discovery is denied.

### IV. ORDER

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has met his burden of proving his claim by a preponderance of the evidence and, therefore, his claim in this matter is GRANTED; and

IT IS FURTHER ORDERED that that Claimant is to be provided a new four-inch thick mattress or egg crate mattress; and

IT IS FURTHER ORDERED that Claimant is to be provided new, proper fitting tennis shoes to wear, said shoes not requiring multiple pairs of socks to fit; and

IT IS FURTHER ORDERED that Claimant is to be awarded the sum of $250.00; and

IT IS FURTHER ORDERED that Claimant's post-hearing motion for discovery is DENIED; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 16, 2006** with the Clerk of the United States District Court at the following address:

>  901 19th Street
>  Denver, CO 80294.

.

SIGNED this 16th day of May, 2006

>  BY THE COURT:
>
>  /s/ Richard C. Davidson
>  _____
>  Richard C. Davidson,
>  Special Master

6

# CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _16th_ day of May, 2006 to the following:

Mr. Gerald Sensabaugh, #100656
CSP
P.O. Box 777
Canon City, CO 81215-0777

Mr. Jess A. Dance
Ms. James X. Quinn
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter