IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COUR,
DENVER, COLORADO

MAY 2 2 2006

GREGORY C. LANGHAM
CLERK

---

Claim Number 02-392
Category II
Claimant: Gary C. Grimes, #101699
Address of Claimant: SCC, P.O. Box 800, Canon City, CO 81215-0800

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Gary C. Grimes (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Skyline Correctional Complex (SCC) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Though granted up to and including April 3, 2006, he has not filed any response to the answer of Defendants. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 29, 1999. Claimant was placed initially at the Denver Regional Diagnostic Center (DRDC). After evaluation, Claimant was placed ultimately at SCC.

In his initial claim form, Claimant checked only the box for mobility impaired. Claimant stated, in part, as follows:

> I have Plantar Faciitis, a chronic foot problem. This condition makes it very hard for me to walk without extreme pain in my feet. Also, I am unable to stand for long periods of time without pain. This problem has also caused me to develop lower back pain and soreness in both knees.

In response to the question concerning discrimination by DOC staff and employees, Claimant stated

3

as follows:

> I believe that the Department of Corrections has discriminated against me by not properly treating my condition. They have refused to provide necessary orthodics and/or special footwear to relieve the pain and discomfort associated with this condition. As a matter of fact, they requested that I personally provide for my needs by purchasing arch supports and insoles from canteen, which are inadequate for my condition. They also have refused to allow a podiatrist to examine me and recommend treatment.

Claimant submitted a supplemental form which reiterates that he has plantar faciitis (PF). Attached to the supplemental form are some medical records. One entry reflects that he had a heel bruise in August, 2000. Heel pads were ordered for a bone bruise. Claimant also alleges that his legs and back hurt because of his PF.

Defendants have filed an answer and attached several documents. Defendants first argue that Claimant is not disabled in the context of the Settlement Agreement. He is able to walk, and various DOC staff have watched him walk in the past. Further, staff have watched Claimant play softball and basketball. *Defendants' Exhibit D*. Defendants further argue that they have provided medical care to Claimant, though he has a dispute as to what that care should be.

Though having been granted up to April 3, 2006, Claimant has not filed a response to the answer of Defendants. The claim will have to be resolved on what has been submitted by both sides.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the box for mobility impaired. This is the only condition that needs to be examined. In addition, a claimant must show that he was mobility impaired, as defined by the Settlement Agreement, on or before August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair. Claimant also has failed to prove that he has a lower extremity disability as defined by the Settlement Agreement. He has PF, and there is no doubt that condition is painful. Claimant has not provided any allegations or evidence indicating that he cannot walk more than one hundred yards or is unable to climb steps without stopping. Under the extremely narrow definition of mobility impaired, Claimant has not established that he falls into the class.

Claimant may have a condition that falls under the ADA and Rehabilitation Act, but not under the Settlement Agreement in this case. Claimant retains the right to pursue a separate lawsuit for any condition not covered by the Settlement Agreement that may meet the criteria of the ADA. Claimant is not part of the class for mobility impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no, but only for purposes of this case. The Special Masters cannot consider claims of medical negligence or malpractice. Claimant is upset about the medical care that he has received while incarcerated in DOC. He has a painful condition and would like some pain relief.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Gary C. Grimes is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 26, 2006.**

SIGNED this 18 day of April, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this /6 day of April, 2006 to the following:

Mr. Gary C. Grimes
#101699
SCC
P.O. Box 800
Canon City, CO 81215-0800

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

