IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-171
Category III
Claimant: Paul Martinez, #108333
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Monday, February 13, 2006, 9:00a.m., at the Sterling Correctional Facility, Sterling, Colorado. Present were the following: Paul Martinez, Claimant; J. Aaron Atkinson and Jennifer Berman, from the Office of the Attorney General, for Defendants; Carl Wojciechowski, Claimant's Case Manager.

Testimony was received from the following witnesses: Claimant. Defendants submitted two Exhibits:

| | | |
|---|---|---|
| EXHIBIT A: | 13 pages | A compendium of various Accommodation Resolutions, Screenings and Department of Corrections Ambulatory Health Records for Paul Martinez. |
| EXHIBIT B: | 15 pages | Affidavit of Doctor Orville G. Neufeld with supporting exhibits. |

At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

1

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

   I.   General inconvenience or nominal damages;
   II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
   III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
   IV.  Damages due to severe physical injuries; and
   V.   Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted an initial claim on September 26, 2005 and was assigned claim X-135 as the filing was untimely.

2. Upon a showing of cause, Claimant's untimely filed claim was accepted and reassigned as claim number 03-171.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant is presently incarcerated in the Sterling Correctional Facility, Sterling, Colorado.

4. Proper notice of the hearing was given, and both Claimant and the Defendants appeared for the evidentiary hearing.

5. Claimant has been in the custody of the Colorado Department of Corrections (CDOC) from approximately 1999 through the present.

6. Claimant has claimed mobility impairment, hearing impairment, vision impairment and diabetes.

7. Prior to coming under CDOC jurisdiction, Claimant suffered a stroke. His disabilities began in 2000.

8. With respect to his mobility, Claimant indicates that for nine months after his stroke, he suffered paralysis on his right side. He required use of a wheelchair. He has arthritis in his left knee and hip. He has problems getting around. The bottoms of his feet hurt and he waited one time for 45 minutes in the cold to get his medicine. He was offered a wheelchair but he won't use it because his side is not strong enough and he will go in circles. No pushers have been offered. His cell is more than 100 yards from the chow hall and he forces himself to walk.

9. With respect to his diabetes, he has no special diet. He is "self-controlled." He doesn't eat bad food. He had a heart attack and was taken to side 1 and put to bed and not taken to the hospital. He lost 7 pints of blood. On a second occasion, he lost 4 pints of blood. The backs of his toes are turning purple.

10. Claimant testified that his hearing is bad and that he responds, "huh? huh?" a lot. He gave up class because he couldn't hear. His hearing has worsened since he arrived in Sterling. He has asked for hearing aids. Claimant testified that 8 months prior to the hearing, he was taken to Denver for a test and the next day taken to Sterling for the same test. He was told that he needs hearing aids in both ears. He attempts to lip read. During the hearing, Claimant asked Mr. Atkinson to speak louder and slower so he could hear.

11. Claimant testified that his vision is bad. He has used his glasses since entering CDOC jurisdiction on April 29, 1999. He hasn't had CDOC issued glasses in spite of vision tests indicting that he needs new glasses.

3

12. Claimant testified that he was denied the following programs: reading, AGA class. He testified that Mrs. Ringer made him sign a paper saying that he doesn't want to go to school but he wanted to go to school but wasn't able to read well. Claimant's claim form indicates that he is illiterate. Prior to his heart attack, he was an ADA Porter.

13. The affidavit of Dr. Neufeld opined that Claimant is not mobility impaired, visually impaired or hearing impaired. Claimant disputed the records examination of Dr. Neufeld. Claimant also notes that he has never been examined by Dr. Neufeld. Defendants admitted that Claimant is diabetic but assert that the condition is controlled by diet.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision

4

impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Martinez is a disabled individual who is a member of the class. Claimant has diabetes.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. There is nothing in the evidentiary record suggesting that Claimant Martinez was otherwise unqualified to participate in any program or to receive any benefit or services. As a result, the Special Master finds and concludes that Claimant has met this requirement of the ADA, the Rehabilitation Act and the Remedial Plan.

4. The third, and probably key issue before the Special Master, is whether Claimant was discriminated against by CDOC because of his or her disability. In order to establish discrimination in the context of the Remedial Plan, Claimant must demonstrate that he requested accommodation for his disability and that reasonable accommodation was denied. No evidence of discrimination was offered by Claimant.

5. It should be noted that many of Claimant's complaints relate to an alleged failure of the CDOC to provide reasonable medical care and treatment for his disability or to an alleged deliberative indifference of the CDOC to Claimant's medical needs. These claims are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

6. Since Claimant cannot prove that he was discriminated against, the analysis need not go further.

## IV. ORDER

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his claim in this matter is DENIED.

IT IS FURTHER ORDERED that that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 9, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

5

SIGNED this _9th_ day of May, 2006

BY THE COURT:

/s/ Richard C. Davidson

Richard C. Davidson,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _9th_ day of May, 2006 to the following:

Mr. Paul Martinez, #108333
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. J. Aaron Atkinson
Ms. Jennifer Berman
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter