IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 2 2 2006

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-174
Category III
Claimant: Richard J. Collins, #65097
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on Monday, February 13, 2006, 2:00p.m., at the Sterling Correctional Facility, Sterling, Colorado. Present were the following: Richard J. Collins, Claimant; J. Aaron Atkinson and Jennifer Berman, from the Office of the Attorney General, for Defendants; Kathy Writtenhouse, Nurse Practitioner.

Testimony was received from the following witnesses: Claimant, Kathy Writtenhouse, Nurse Practitioner. An Appendix of the Exhibits submitted is attached as part of this Order. At the conclusion of the hearing, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been

1

reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

  I.  General inconvenience or nominal damages;
  II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
  III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
  IV.  Damages due to severe physical injuries; and
  V.  Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted an initial claim on July 20, 2004 and was originally assigned claim number 02-645 and placed in Category II pursuant to the Remedial Plan.

2. Claimant filed a supplemental claim for damages due to mobility around September 17, 2004.[1]

---

[1] The supplemental claim is not dated on the form. However, the claim was mailed on September 17, 2004 as evidenced from the postage mark on the envelope. The Special Master received the claim on September 20, 2004.

2

3.	Upon the request of Claimant dated November 1, 2005, Claimant's *Montez* claim was re-evaluated by the Special Master and elevated to Category III and re-assigned claim number 03-174 and set for a hearing on December 15, 2006.

4.	Claimant is presently incarcerated in the Sterling Correctional Facility, Sterling, Colorado.

5.	Proper notice of the hearing was given, and both Claimant and the Defendants appeared for the evidentiary hearing.

6.	Claimant has been in the custody of the Colorado Department of Corrections (CDOC) from approximately 1994 through the present.

7.	Claimant has claimed mobility impairment.

8.	Prior to coming under CDOC jurisdiction, in 1985 Claimant had a hip fracture and the cartilage has deteriorated to the point that it is totally deteriorated. The deterioration can be compared to an untreated cavity in a tooth. Since there is bone-on-bone rubbing and deterioration, Claimant's left leg is one inch shorter than the right. Claimant additionally suffers from bone spurs, has lost hip movement, can't jog and can't participate in many jobs due to limited inability to squat and to lift.

9.	Claimant has been denied a double mattress. He has been denied a hip replacement surgery three times[2] by the CDOC insurance carrier, Colorado Access. Claimant testified that the orthopedic surgeon and specialist in Denver who have seen him say that the "denials are ridiculous." Eventually, Claimant was granted a bottom bunk and a cane. He was denied orthopedic shoes.

10.	With respect to jobs, Claimant cannot work in the higher paying industries programs which pay $100-$200 more per month. Claimant wants to work "hands on" but is unable because of the hip. He has suffered a loss of quality of his life. He hurts all the time.

11.	Nurse Practitioner Kathy Writtenhouse testified that she has reviewed Claimant's X-Rays and they show severe Degenerative Joint Disease (DJD) and bone spurs. She admitted that the experts recommend a total joint replacement. She testified that DJD is a condition and is also known as arthritis and that movement helps to alleviate pain but that DJD can be painful. She also testified that one needs to have a 3/8 inch leg length discrepancy to get orthopedic shoes.

12.	Claimant testified that he "just wants to get back to daily activities." He also believes that a prosthetic hip is an accommodation.

---

[2] Claimant testified that he is presently working with Dr. Michael Dayton on his fourth reconsideration and is hopeful to have his hip surgery granted, soon since CDOC is now with PHP as an insurance provider.

3

13. The affidavit of Dr. Neufeld agreed that Claimant does have DJD; but he opined that Claimant is not mobility impaired.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, the Special Master finds and concludes that a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Collins is not a disabled individual who is a member of the class. No dispute exists that Claimant suffers from Degenerative Joint Disease and is in need of a hip replacement surgery. No dispute exists that Claimant suffers severe pain and endeavors with makeshift medical supplies to alleviate his pain.[3]

---

[3] During the hearing, Claimant was allowed to remove his pants and show the Special Master how his hip/waist is wrapped with elastic bandages.

4

The problem for the Special Master is that, based upon the definition of "permanent disability/impairment" cited above, Claimant does have a condition which should improve within six months provided that Claimant has his necessary hip replacement surgery. The unfortunate situation is that CDOC's insurance provider – over the clear medical agreement of the doctors and specialists who have seen Claimant – continues to deny coverage for the surgery.

Further, Claimant's overall complaint relates to an alleged failure of the CDOC to provide reasonable medical care and treatment for his disability or to an alleged deliberative indifference of the CDOC to Claimant's medical needs. These claims are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

While the Special Master sympathizes with Claimant's situation and hopes that CDOC's new insurance carrier approves the hip replacement surgery, since Claimant cannot prove that he has a permanent disability within the parameters of the Remedial Plan, the inquiry need go no further.

## IV. ORDER

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his claim in this matter is DENIED.

IT IS FURTHER ORDERED that that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 16, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this _16th_ day of May, 2006

BY THE COURT:

/s/ Richard C. Davidson

Richard C. Davidson,
Special Master

5

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _16th_ day of May, 2006 to the following:

Mr. Richard J. Collins, #65097
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. J. Aaron Atkinson
Ms. Jennifer Berman
Mr. Jess A. Dance
Ms. James X. Quinn
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-174
Category III
Claimant: Richard J. Collins, #65097
Address of Claimant: P.O. Box 6000, SCF, Sterling, CO 80751-6000

---

### APPENDIX OF EXHIBITS

---

The following is a list of Exhibits introduced by CLAIMANT and ADMITTED into evidence in the above referenced claim:

EXHIBIT 1:   17 pages     Letter of May 20, 2005 to Special Master Borchers with 14 attached exhibits numbered 1-14.

EXHIBIT 2:   1 page       Accommodation Resolution for Richard J. Collins

---

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

EXHIBIT A:   4 pages[1]    Accommodation Resolution/Request for Accommodation /Department of Corrections Ambulatory Health Record /Mobility Screening for Richard J. Collins.

---

[1] Both Claimant and Defendant introduced the Accommodation Resolution (page 1) which is co-marked as Claimant's Exhibit 2.

| | | |
|---|---|---|
| EXHIBIT B: | 1 disc | Copies of Claimant ambulating.[2] |
| EXHIBIT C: | 1 page | Query Offender Programs for Richard J Collins dated 02/09/2006. |
| EXHIBIT D: | 14 pages | Affidavit of Doctor Orville G. Neufeld with supporting exhibits. |
| EXHIBIT E: | 4 pages | Colorado Department of Corrections Clinical Services Clinical Standards and Procedures for Durable Medical Equipment as revised September 2005. |

---

[2] Without the zoom, Claimant couldn't tell if it was him or not. A second tape on the same disc also couldn't be identified by Claimant.