IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-156
Category II
Claimant: David A. Frazell, #107469
Address of Claimant: 8769 Ulster Street, Commerce City, CO 80022-5600

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of David A. Frazell (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time that he filed his claim. He has discharged his sentence and is no longer under DOC control.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants but has not filed any reply to Defendants' response. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

     B. QUALIFIED INMATE
     Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
     C. PERMANENT DISABILITY/IMPAIRMENT
     A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

  The Settlement Agreement further provides, in part, as follows:

     2. Permanent Hearing Impairments
     Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
     3. Permanent Vision Impairment
     Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
     4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
     Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

  On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

     2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
       1. Is the claimant a disabled individual who is a member of the class?
       2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
       3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
       4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in November, 2000. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was in custody at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado when he filed his claim.

In his claim form, Claimant stated, in part, as follows:

> I have constantly painful feet regardless of what shoe type I wear. This has denied me access to various sports and certain jobs. I have taken my foot problems to the medical staff - they have denied me a proper professional foot doctor - shoes and or insoles. I have been given various medications and been told this will make it alright. The greater part of the day I must sit down because of the pain in my left foot. The longest I could stand on my feet (foot) is an hour, and even then it is rather painful. I feel that with proper care and shoes this problem would not be as bad as it has become and would be somewhat easier to deal with on a daily basis, but for the last three years, this has been denied to me.

In response to the question concerning discrimination by DOC and its staff, Claimant stated on his form as follows:

> I was discriminated against by the Colo. DOC at Fremont Corr. Fac. At Canon City, CO and BCCF, Las Animas, CO through denial of proper medical care for my feet. This has kept me from various jobs and sports that I would like to do.

Claimant was forwarded a supplemental form to fill out for mobility impairment. It should be noted that Claimant only checked the box on the initial claim form for mobility impairment. In the supplemental form, Claimant stated, in part, as follows:

> I can not run. I can not play sports. I'm always taking pills and I can not stand in one place very long.

He alleged that he had requested surgery to fix his feet and that had been denied. He stated that he only received more medication in higher doses. He also stated that DOC staff "promised tennis shoes and did not give them to me."

## III.

Defendants' response to the claim does not contain any medical records. It is in essence a motion to dismiss. Claimant was granted up to and including April 24, 2006 in which to file a reply to the response of Defendants. Claimant did not file anything, and this claim must be resolved on what has been presented.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined.

Claimant has indicated on his claim form that he is mobility impaired. He has not checked any other box. He bases this on the condition of his feet.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair. Claimant has not provided any evidence or allegations that he is limited in walking to one hundred yards or less before stopping or that he is precluded from climbing steps. Claimant has alleged that he has significant problems with his feet and is in pain. Claimant's claim form and supplemental form do not allege sufficient facts to place Claimant under the definition of mobility impaired as set forth in the Settlement Agreement.

Claimant may have a condition that falls under the ADA and Rehabilitation Act. Unfortunately, it does not fall under the Settlement Agreement in this case. Claimant retains the right to pursue a separate lawsuit for any condition not covered by the Settlement Agreement that may meet the criteria of the ADA. Claimant also retains the right to bring a separate lawsuit for violations of the Eighth Amendment and/or medical negligence. Claimant is not part of the class for mobility impairment in this case.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant is upset about the medical care that he received while incarcerated in DOC. He is concerned about the treatment he received for his feet. Those concerns have some legitimacy.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by

Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of David A. Frazell is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 7, 2006.**

SIGNED this 23rd day of May, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

6