IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

## AFFIDAVIT OF KATHLEEN BAXTER

I, Kathleen Baxter, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1. This affidavit is based upon my personal knowledge.

2. I am employed by the Colorado Department of Corrections ("CDOC") as a Legal Assistant. As part of my job, I assist Cathie Holst with her duties as the CDOC's ADA Inmate Coordinator ("AIC").

3. On August 17, 2005, we (the AIC's Office) received a Request for Accommodation from inmate Thomas Ayotte, #126891. In his Request, Offender Ayotte claimed to be deaf since birth. Offender Ayotte submitted a medical release form but failed to obtain a witness' signature, as required.

4. Offender Ayotte submitted his Request on August 11, 2005, while he was still at the Denver Reception & Diagnostic Center ("DRDC"). According to

1

CDOC records, Offender Ayotte entered DRDC, his first CDOC facility, on July 29, 2005.

5. On August 18, 2005, the day after we received Offender Ayotte's Request, Ms. Holst asked me to find out where Offender Ayotte was housed (whether he was still at DRDC or whether he had been moved), obtain a new, correctly completed medical release, and determine whether Offender Ayotte needed any temporary accommodations pending a disability evaluation by a physician.

6. On August 18, 2005, I contacted Tom Mizel, Offender Ayotte's case manager at the Fremont Correctional Facility ("FCF").  (Offender Ayotte transferred from DRDC to FCF on August 16, 2005.)  Mr. Mizel told me that he would meet with Offender Ayotte that day then call me back.

7. Later that same day (August 18, 2005), Mr. Mizel called me back.  Mr. Mizel had Offender Ayotte in his office and put Offender Ayotte on the phone.  The phone in Mr. Mizel's office is a regular phone.  It is not a specialty phone for hearing-impaired persons.

8. I spoke with Offender Ayotte on the phone.  Offender Ayotte had no difficulty hearing me or communicating with me.  He was able to hear and answer all of my questions.  In fact, Offender Ayotte heard well enough to correct my mispronunciation of his last name.

9. During our conversation, Offender Ayotte signed a new medical release which Mr. Mizel witnessed.

10. The only people involved in the telephone conversation on August 18, 2005, were me, Offender Ayotte, and Mr. Mizel.  As I explained above, Offender

Ayotte was able to communicate with me without apparent difficulty using a regular telephone. He did not use or need a sign language interpreter.

11. It has come to my attention that Offender Ayotte regularly uses the Colorado Inmate Phone System ("CIPS"), the regular phone system. In November 2005, I asked Sue Grisenti, the CDOC's CIPS Coordinator, to investigate whether Offender Ayotte uses the regular phone system, and if so, how effectively. See Exhs. A-1, A-2. According to Ms. Grisenti, Offender Ayotte placed 21 completed phone calls using CIPS between October 1, 2005, and October 31, 2005. Id.

12. Ms. Grisenti listened to the recordings of some his calls and found that Offender Ayotte and the other party could both hear each other without any problem. Id. Ms. Grisenti sent me a compact disc containing the recordings of two of Offender Ayotte's phone conversations. I later received another compact disc containing four of Offender Ayotte's phone conversations.

13. In one of the phone conservations that I listened to, Offender Ayotte and his daughter discussed his desire for various accommodations. Offender Ayotte made these statements while speaking clearly. He appeared to have no difficulty hearing or communicating with his daughter. Nothing in the recording of Offender Ayotte's phone conversations suggests that he is unable to communicate using the regular phone system.

14. Offender Ayotte has used the regular phone system continuously throughout his incarceration. See Exh. A-1, Exh. A-3.

15. I have asked Mr. Mizel, Offender Ayotte's case manager, and Sgt. Kevin Erps, Offender Ayotte's work supervisor, about Offender Ayotte's ability to

3

hear and communicate.  Both Mr. Mizel and Sgt. Erps informed me that they do not have any problems communicating with Offender Ayotte.

16. Based on my personal interaction with Offender Ayotte and my conversations with Mr. Mizel and Sgt. Erps, as well as listening to recordings of Offender Ayotte's phone conversations, it is clear that Offender Ayotte can communicate effectively without a sign language interpreter, whether in person or by phone.

17. I do not believe that Offender Ayotte needs a sign language interpreter in order to testify.

18. CDOC medical staff have evaluated Offender Ayotte to determine if he has a disability.  Offender Ayotte does use hearing aides.  According to medical staff, Offender Ayotte is able to hear and communicate with and without his hearing aids.

19. An Accommodation Resolution has been completed for Offender Ayotte. See Exh. A-4.  The Accommodation Resolution states, "A DOC physician and the Chief Medical Officer have determined that you [Offender Ayotte] have a HEARING IMPAIRMENT that is correctable by the use of a hearing aid.  With the use of your health care device, your hearing impairment does not substantially limit your ability to perform a major life activity, therefore your condition does not rise to the level of a disability pursuant to the ADA/Rehabilitation Acts." Id.  The Accommodation Resolution further ordered Offender Ayotte to wear his hearing aid at all times and stated that he may be entitled to temporary accommodations if his hearing aid ever becomes inoperable and needs to be repaired or replaced. Id.

20.     The AIC and the Chief Medical Officer determined that Offender Ayotte does not require any accommodations.  "Even without use of a hearing aid you are able to hear alarms and announcements and require no special housing placement nor assistance from staff in evacuations/emergencies.  You have no need of the loan of a vibrating watch nor do you require access to a TTY phone.  Preferential seating in programs, education, etc., is not required.  Access to captioned and/or subtitled television programming is not necessary.  <u>You do not require a sign language interpreter as you are able to effectively communicate through normal conversation</u>."  Id. (emphasis added).


FURTHER AFFIANT SAITH NAUGHT.


s/ Kathleen Baxter_____
KATHLEEN BAXTER


Subscribed and sworn before me in the County of <u>El Paso</u>, State of Colorado, this <u>25</u>[th] day of May, 2006.

My commission expires: <u>August 31, 2006</u>_____.


s/ Cheryl A. Martin_____
Notary Public


*Original signature of Kathleen Baxter and Cheryl A. Martin, notary public, is on file with the Attorney General's Office.*