IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES

JESSE (JESUS) MONTEZ, *et al.,*

    Plaintiffs,

v.

BILL OWENS, *et al.,*

    Defendants.

---

**PLAINTIFF CLASS RESPONSE TO DEFENDANTS' MOTION RE SIGN LANGUAGE INTERPRETER (DIRECTED TO THE HONORABLE JUDGE KANE)**

---

    The Plaintiff Class, through counsel of record, Paula D. Greisen of the Law Firm of KING & GREISEN, LLP, hereby files this Response to Defendants' Motion regarding a sign language interpreter for class member Thomas Ayotte:

    1.    Defendants dispute whether class member Thomas Ayotte requires a sign language interpreter as an accommodation to allow him to testify as a witness in the upcoming compliance hearings scheduled before this Court. Currently, Mr. Ayotte is scheduled to testify on Thursday, June 1, 2006. On Tuesday, May 30, class counsel was first made aware of the Defendants' intention to file this motion and thus has not had an opportunity to discuss the issues raised in the motion with their client. Nevertheless, there is sufficient evidence to support Mr. Ayotte's request for an interpreter.

    2.    The Defendants have failed to produce a full picture to this Court regarding Mr. Ayotte's condition. The ADA Inmate Coordinator (AIC) file produced to undersigned counsel shows the following evidence:

a.  Mr. Ayotte reports that he has been deaf since birth, uses hearing aids, reads lips, and is fluent in sign language.  He requested to be screened for a hearing disability by the DOC in August 2005.  Exhibit A.  On August 30, 2005, Cathie Holst, the AIC, sent a letter to Dr. Creany, asking him to screen Mr. Ayotte for a hearing disability.  Exhibit B.

b.  Dr. Creany completed the screening on September 14, 2005 and <u>confirmed that Mr. Ayotte had a hearing disability</u>.  See Request for Accommodation and Verification of Disability signed by Dr. Creany, Exhibit C.  The "Hearing Screening" document completed by Dr. Creany states that the "staff cannot confirm or deny" whether Mr. Ayotte can hear emergency warnings.  The attached "Ambulatory Health Records" detail that "his hearing aids help with some amplification, but they do not resolve the problems.  [C]ellhouse staff [was] called.  [T]hey report [Mr. Ayotte] can hear when they speak loudly.  [T]hey are unsure if he can hear the overhead announcements, but they doubt it."  The doctor's notes go on to state that Mr. Ayotte was reading his lips as they talked and that "at times he does not catch what I say, but once or twice I think he may have heard me in a loud voice without seeing my lips."  Exhibit C.

c.  Pursuant to his exam, Dr. Creany prepared an "Accommodation Resolution" verifying Mr. Ayotte's need for accommodations.  Exhibit D.  According to DOC's procedures, this Resolution was then sent to the Chief Medical Officer, Dr. Shames, for approval.

2

    d.        The "Accommodation Worksheet" for Mr. Ayotte shows that Dr. Shames approved Dr. Creany's determination on October 19, 2005. Exhibit E. However, in a memo produced to counsel by DOC, Kathleen Baxter, a (non-medical) assistant in the AIC's office, disagreed with this finding and wrote an email to Dr. Shames, disputing the disability. Exhibit F. The email is undated but the memo contains a date of November 2, 2005 at the bottom.

    e.        At the beginning of November, Mr. Ayotte filed a grievance stating that he made a second request in October to have his hearing aid repaired and he had received no response. Exhibit G. In a response to Mr. Ayotte's grievance dated December 13, 2005, the AIC stated that because his disability screening was still under review, she could not provide him any accommodations. The response also states that any complaints about problems with hearing aids must be addressed to Clinical Services, not the AIC. Exhibit H.

    f.        The AIC file shows that Dr. Shames and Ms. Holst had a phone call with Dr. Creany on or about November 14, 2005 and requested that Dr. Creany order an audiogram for Mr. Ayotte. Exhibit I. On the same date, the AIC sent a letter to Mr. Ayotte stating that his disability determination was being "delayed." Exhibit I.

    g.        The next record in the file is a fax from Dr. Creany to the AIC on November 16, 2005 containing two audiograms (dated 11/8/05 and 9/29/05) and a "Audio" report dated November 8, 2005 which states that Mr. Ayotte's right hearing aid was repaired. The report is not very legible, but appears to state that one of his aids needs to be replaced and both ear molds need to be

3

       replaced.  The report on the audiogram states "severe [word not decipherable] with poor word disc." Exhibit J.  The audiogram dated 11/8/05 indicates that Mr. Ayotte has 28% speech discrimination in his right ear and 24% in his left ear.

h.     Apparently, as a result of the audiogram, Dr. Creany confirmed his original diagnosis that Mr. Ayotte had a hearing disability.  However, the Accommodation Worksheet shows that Ms. Baxter then met with Dr. Shames to have him review Dr. Creany's findings and that Dr. Shames "disagrees with Dr. Creany's findings and states that he does not feel the offender has a qualifying hearing disability pursuant to the provisions of Montez." Exhibit E.  Thus, it appears that Ms. Baxter was able to persuade Dr. Shames to override the first and second opinions of the examining medical expert and disapprove the disability.

i.     On November 23, 2005, Dr. Shames noted that he was overriding Dr. Creany's determination based on "observational evidence of hearing normal voice." Exhibit K.  The records indicate that Dr. Shames, unlike Dr. Creany, never examined Mr. Ayotte nor did he speak with any of the staff charged with the daily supervision of Mr. Ayotte.  Although the Accommodation Worksheet indicates that the "Accommodation Resolution Form" was drafted on January 11, 2006, there was no such form produced to undersigned counsel in the AIC file that was provided on May 19, 2006.  Apparently, in anticipation of the compliance hearing this week, Dr. Shames did prepare a Resolution stating that he does not need any accommodations because with his hearing aid, his

impairment does not rise to the level of a disability. (Attached as exhibit to Defendants' Motion).

3. Based on the above sequence of facts, the DOC is denying Mr. Ayotte's legitimate disability, over the advice of the examining doctor. Given his assistance to DOC in defeating damage claims filed against them, Dr. Shames is no longer an impartial medical observer. To the contrary, Dr. Shames has testified in numerous damage claims hearings on behalf of DOC and has written untold number of affidavits to support DOC's attempts to deny damage claims. At this point, he is no longer an unbiased witness.

4. In addition, although undersigned counsel requested copies of the working files for all the class members who would be testifying at the compliance hearings this week, defense counsel informed undersigned counsel last Thursday, April 25, 2006 that those files would not be produced to class counsel, but rather class counsel could view those files at headquarters in Colorado Springs. Although undersigned counsel informed the defense that they wanted copies of the entire files, this request was denied. Accordingly, undersigned counsel has not had an opportunity to review the working files for Mr. Ayotte to determine if it contains additional evidence of his disability.

5. Class counsel, did however, meet with Mr. Ayotte in March 2006, during compliance visits to the various facilities. At that time, it appeared to counsel that Mr. Ayotte could only discern about 30% of what was spoken and that he required an interpreter. Mr. Ayotte has provided written information to class counsel that he can use the phones with amplification devices. At the time of the preparation of this response, Counsel was not provided with a copy of the phone recordings described in Defendants' motion. In any event, it would be

impossible to discern from any such tapes whether amplification devices were used during the recordings.

6.      At this time, there is sufficient evidence to support Mr. Ayotte's request for an interpreter at the compliance hearings.  At a minimum, it is undisputed that Mr. Ayotte's hearing aids are still in need of repair, as shown by Exhibit J.  Accordingly, Plaintiff Class requests that this Court deny Defendants' motion and order that an interpreter be provided for the hearing.[1]

RESPECTFULLY SUBMITTED this 31st day of May, 2006.

~s/ Paula Greisen_____
Paula D. Greisen
King & Greisen LLP
1670 York Street
Denver, CO 80206
Phone:  (303) 298-9878
Fax:  (303) 298-9879
E-mail:greisen@kinggreisen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of May 2006, I served the foregoing **RESPONSE TO MOTION RE SIGN LANGUAGE INTERPRETER** via electronic filing to:

Beth McCann
James Quinn
Assistant Attorney General
1525 Sherman Street, 5th Floor
Denver, Colorado   80203
Fax: (303) 866-5443

_____~s /Antoinette L. Taylor_____

---

[1] Counsel for the defense did inform class counsel that they had scheduled an interpreter for the hearing in the event the Court denied the defense motion.