IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-021
Category II
Claimant: Thomas Michael Martus, #95330
Address of Claimant: 48 Hickory Lane, Warne, NC 28909

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Thomas Michael Martus (Claimant). Previously, Claimant was incarcerated in the Colorado Department of Corrections (DOC).

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Additional argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

        B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
        C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals that involve mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into the custody of DOC on November 26, 1997. Though it is not noted by Claimant, his entry into DOC custody most probably came through the Denver Reception and Diagnostic Center (DRDC). Claimant has not provided information on where he was placed thereafter. He noted that he was placed at a facility in Canon City that had three floors, since he was placed on the third floor. Most probably, he was housed at that time at the Colorado Territorial Correctional Facility (CTCF), as that facility has an infirmary for inmates who are ill or convalescing.

Claimant had back and left knee problems when he came into DOC custody. At some point, Claimant had back surgery and, within weeks, knee surgery. In his initial claim form, Claimant noted that after back surgery he could not sit or walk for any length of time. It was too painful to walk up stairs. After his knee surgery, Claimant was on crutches. He indicated that he could not

walk up or down stairs but was placed on a third floor, despite his physical limitations. Claimant stated that he "was not able to go to breakfast, lunch or dinner on 3rd floor for over month."

Claimant checked only the box for mobility impairment on the claim form. In response to the question on the claim form dealing with discrimination by DOC and its staff, Claimant stated as follows:

> I was 3 days out of knee surgery and 1 month out of back surgery and was put on 3rd floor for 4 weeks. Could not get down stairs most of the time, could not stand in shower, could not carry food tray, could not carry bedding, laundry, while trying to walk. Could not use phone because of phone being up or down stairs and could not go to church. Due to stairs were involved, no handicapped access ramps, no doctors for over a month, was told by guards to make it or not. (For food).

In the supplemental form for mobility impairment, Claimant reiterated his previous concerns. He was on crutches and was unable to walk without them. Claimant stated that he requested to be placed on the main floor, and that occurred after two weeks. He did not receive follow-up medical care for four weeks. In his supplemental form, Claimant indicated that he injured his knee trying to get up and down the steps at the facility in Canon City.

Claimant states in his initial claim form that he was paroled on December 23, 1998. Neither side has provided any information that would indicate that Claimant returned to DOC custody at any time after being paroled. It will be presumed that Claimant has discharged his sentence. Claimant now lives in North Carolina.

Defendants' answer has no medical or other records attached. Defendants have simply denied all allegations and indicated that the burden of proof is on Claimant to establish his case.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant checked only the box for mobility impairment. Claimant does carry the burden to establish that he was mobility impaired during the time he was in DOC custody.

In order to establish a claim, a claimant must provide evidence that he or she has a permanent disability that will not improve within six months. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The Settlement Agreement is binding upon the Special Masters, and there is no discretion to expand the categories of disabilities or the definitions of those disabilities.

Claimant has established that he came into DOC custody with back and knee problems. There is no dispute that he received surgery on both his back and his knee. The Special Master further finds that Claimant had significant pain after his surgeries and was on crutches after his knee surgery. Claimant was released on parole on December 23, 1998.

Claimant did not use a wheelchair full or part-time during his period of incarceration. He was on crutches due to knee surgery. Claimant has not provided any information as to how long he was on crutches after his knee surgery. It is unknown if Claimant was using crutches at the time he left on parole. The Special Master does not know how long the recuperation period took.

The Settlement Agreement requires each claimant to establish that he or she has a permanent disability. Claimant has not done that. There is no evidence that his conditions extended beyond six months or that he was permanently disabled on August 27, 2003, the day when the Settlement Agreement was approved. A reasonable inference from the evidence is that Claimant had back and knee problems and received surgery for both. Claimant then convalesced and was able to heal to the point that he was able to walk without crutches. Without evidence of a permanent disability, as defined in the Settlement Agreement, a claimant cannot prevail on his or her claim.[2]

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** This question does not need to be reached in light of the no answer to the first question.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be reached in light of the no answer to the first question.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the no answer to the first question.

IT IS HEREBY ORDERED that the claim of Thomas Michael Martus is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 14, 2006.**

SIGNED this 5th day of June, 2006.

---

[2] Accepting Claimant's statements as true, the treatment he received after his knee surgery was reprehensible. Claimant does have a right to be bitter concerning that treatment.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master