IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-093
Category II
Claimant: Weslee Bailey, #109039
Address of Claimant: 1106 West 10th Street, Loveland, CO 80537

_____

**ORDER OF DISMISSAL OF SPECIAL MASTER**
_____

    THIS MATTER comes before the Special Master on the claim of Weslee Bailey (Claimant). Claimant was incarcerated when he filed his claim. He has discharged his sentence and is now living in Loveland, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on March 1, 2001. He was incarcerated at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado at the time that he filed his claim. CCCF is a private facility operated by Corrections Corporation of America (CCA). CCA facilities in Colorado contract with the state to take DOC inmates.

Claimant stated, in part, in this initial claim form as follows:

> My disability is vision impaired. I have been visually impaired since 1992 or there about. My vision because I have to wear glasses to see, when I am reading, writing, and to get around. I have no means to get around without them. In November of 2003, I had my glasses taken from me at Bent County Correctional Facility, had them taken and removed from my person on November 10, 2003, and after requesting them back I was refused to have them back. Due to this occurring I became very ill and was not able to properly take care of my self due to my glassES being confiscated without any explanation or legitimate reason.....I was without my glasses for a total of almost two weeks and had to go about daily tasks without seeing. Upon having my glasses returned they were broken.

Claimant alleged further that he had migraine headaches because of not having his glasses.

In his Supplemental Form, Claimant reiterated that he had his glasses taken from him on November 11, 2003. He has requested monetary damages for the problems that arose starting on that date.

Defendants' answer has no medical or other records attached. Defendants have basically filed a motion to dismiss, resting on the burden of proof that Claimant carries to establish his claim.

## III.

This claim must be resolved on one procedural point. The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. It was on that date that the class was defined. It also was on that date that provisions of the Settlement Agreement were activated.

The Settlement Agreement provides that a claimant must establish that he was disabled, as defined by the agreement itself, on or before August 27, 2003. Further, a claimant must show that he was subjected to discrimination prior to that date. The Settlement Agreement provides, in part:

> Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claims arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional

damages.

*Remedial Plan, §XXXII.* This provision of the Settlement Agreement has been interpreted by Judges Nottingham and Kane as requiring a claimant to have a valid, provable claim that arose on or before August 27, 2003. If such claim is proven, then the claim may be amended to include something that happened after August 27, 2003.

Claimant's allegations all revolve around actions at the Bent County Correctional Facility (BCCF) on November 11, 2003. Claimant has not alleged any discriminatory action on the part of any DOC employee or contractor that occurred on or before August 27, 2003. Claimant may not pursue his claim because he does not fall within the class as defined on August 27, 2003.

Claimant does have the right to pursue a separate action in state or federal court. Since Claimant has not alleged or proven that he was disabled and the subject of discriminatory action by DOC on or before August 27, 2003, he may not pursue his claim.

IT IS HEREBY ORDERED that the claim of Weslee A. Bailey is dismissed for lack of jurisdiction, as the acts that he has alleged all occurred after the date of August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 31, 2006.**

SIGNED this 5th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master