IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-564
Category II
Claimant: Nick Smith-Bey, #98861
Address of Claimant: CCF, P.O. Box 600, Canon City, CO 81215-0600

_____

## ORDER OF DISMISSAL OF SPECIAL MASTER
_____

      THIS MATTER comes before the Special Master on the claim of Nick Smith-Bey (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) and is presently housed at the Centennial Correctional Facility (CCF) at Canon City, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant is not entitled to a hearing. Defendants have filed a motion to dismiss. Claimant was granted time to file a reply to the motion, and he has done so. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals claiming mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant has argued in his reply that "[a]ll factual allegations other than conclusory ones pled in the complaint are accepted as true and construed in the light most favorable to Plaintiff." *Claimant's Reply, p.1*. As to this claim, the standard must be different. Claimant has submitted numerous documents in support of his claim. These documents cannot be ignored when considering the motion filed by Defendants. The more appropriate standard is that utilized on motions for summary judgment filed pursuant to Fed.R.Civ.P. 56. The motion filed by Defendants may be granted only if there is "no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Camulgia v. City of Albuquerque*, ___F.3d ___, 05-2128 (10th Cir., May 31, 2006).

Claimant came into DOC custody on December 23, 1998. In 2002, Claimant was incarcerated at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He was

3

working in the kitchen on June 17, 2002 when he fell and hurt his back. Claimant was found by another inmate lying on the floor. A Sergeant was called to the kitchen, and Claimant was taken to medical and examined. The accident report filed by Claimant with the Special Master was completed by Lieutenant Gomez and reflects that Claimant did hit his back on the curb of the sink. A subsequent x-ray was taken on June 25, 2002. That x-ray did not indicate any fractures or other problems.

Claimant in his initial claim form indicated that on "Aug 30, 2003 six guards piled on my back and other parts of my body." No medical records have been submitted by Claimant concerning this second incident.

Claimant has alleged that he has been the subject of discrimination, especially as to disciplinary actions against him. Claimant has submitted final actions on Code of Penal Discipline (COPD) violations filed against him. In those proceedings, Claimant did raise issues concerning his physical health. He was convicted in all of the COPD actions he has submitted in support of his claim.

Review of all of the information and exhibits submitted by Claimant establishes the following: Claimant was an inmate in DOC on August 27, 2003. He suffered an injury to his back on June 17, 2002. He received medical care as the result of the fall in the kitchen at AVCF. Claimant has filed a claim which involves only mobility impairment. Claimant has continued to complain about back problems that arose from the fall in June, 2002. Claimant has not provide any allegations or evidence that he is in a wheelchair full or part-time. Claimant has not provided any evidence that he has a lower extremity condition that affects his walking.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair. Claimant has not provided any evidence that he is limited in walking to one hundred yards or less before stopping or that he is precluded from climbing steps.

The standard under Fed.R.Civ.P. 56 is "no genuine dispute over a material fact." *Id.* Claimant injured his back. That is what he has represented to personnel at DOC. This includes his representations on a grievance filed in 2005. When all materials facts are weighed in favor of Claimant, he cannot prevail on his claim, as he does not meet the narrow definition of mobility impaired. Claimant does not have a lower extremity impairment.

Since Claimant does not meet the definition of mobility impaired, he is not precluded from bringing a separate action against Defendants in state or federal court. Claimant may seek relief through a new lawsuit. He cannot pursue his claim for the reasons stated.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Nick Bey-Smith is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 7, 2006.**

SIGNED this 5th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master