IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-197
Category III
Claimant: Tommie Osman, #115568
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER came before the Special Master for hearing on May 30, 2006. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Tommie Osman (Claimant) and Brooke Meyer, attorney for Defendants.

Testimony was received from Claimant, Urban Hendrix, and Jean Stanley. All documentation previously submitted by both sides was accepted. Defendants offered into evidence Exhibits A through C, and all were admitted. After closing arguments, the claim was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge

Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. <u>Permanent Hearing Impairments</u>
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. <u>Permanent Vision Impairment</u>
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. <u>Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic</u>
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant was born on January 28, 1943. He lived in the Sterling, Colorado area until his conviction in 2002. He was placed into the custody of DOC on November 29, 2002 and was taken to the Denver Reception and Diagnostic Center (DRDC). In January, 2003, Claimant was transferred

to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He then was transferred for a brief period to the Bent County Correctional Facility in Las Animas, Colorado. He was transferred back to FCF and was transferred to SCF in January, 2004.

Claimant was not in good health when he came into DOC custody. Claimant was diagnosed with Chronic Obstructed Pulmonary Disease (COPD) shortly after entry into DOC custody. He was issued a oxygen concentrator on December 11, 2002. The medical report on that date reflected that the need for the concentrator was urgent. The oxygen generator was issued to Claimant while he was at DRDC.

Claimant also was diagnosed with muscle atrophy and intermittent claudication. These conditions cause cramping pain and weakness in the legs. An individual with such conditions must stop and rest. The pain will subside after a period of time. These conditions are reflective of inadequate blood supply to the muscles.

Upon his arrival at FCF, Claimant began a series of requests to obtain a wheelchair. Those requests were denied on the basis that his medical conditions would be improved through walking. He also requested an extra mattress and medical care for what he claimed was an extreme lower spine problem. Those requests were denied. The response to the lower spine problem was that nothing could be done for that pain, even if x-rays were taken.

Claimant testified that he had requested a wheelchair at FCF because it was difficult for him to move. He was not able to get into various programs because he was always late in getting to classrooms and other locations. He would have to stop and rest. He could not make the necessary trips between locations during the time allotted at the facility. Claimant used a cane while at FCF. He would begin walking during a movement period and be late to a class or other location. He would be directed to go back and start over.

Claimant had wanted to transfer to SCF, as this was close to his wife. Though it was not discussed in detail during the hearing, Claimant's wife is ill and unable to travel. The transfer to SCF allowed Claimant the opportunity to have visits with his wife.

Upon his arrival at SCF, Claimant was provided a wheelchair. He testified that he uses the wheelchair every day. Claimant testified that the problems that have arisen at SCF have been resolved. In addition to the wheelchair, Claimant has been assigned a pusher to help him get around.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately. The Special Masters must abide by the provisions of the Settlement Agreement. The Special Masters were not involved when the Settlement Agreement was

being negotiated and then approved by the Court. In the same way that a judge is bound by a statute, the Special Masters are bound by the Settlement Agreement.

**Hearing Impairment:** Claimant has checked the box for hearing impairment. In his testimony, he indicated that he has a hearing loss. He testified that he has missed announcements and appointments due to this hearing loss. He will read lips when he can.

In order for a claimant to be part of the class for a hearing impairment, the following definition must met:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning

The Special Master is bound by this definition contained in the Settlement Agreement. Claimant's own testimony indicates that he does not meet this definition. Claimant does not have to rely on written documents, lip reading or sign language to communicate. Although he has a hearing loss, it does not meet the narrow and restrictive criteria of the Settlement Agreement.

To be blunt, an individual claimant would have to be totally deaf, even with hearing aids, before that individual could be considered part of the class for hearing impairment. At the time of the issuance of this order, no claimant has met this definition. Claimant does not meet the definition and cannot pursue his claim as to a hearing loss.

**Mobility Impairment:** There is no question that Claimant has many medical issues, including a lower extremity condition that is permanent and affects his ability to walk. The muscle atrophy and claudication affect his ability to move. Claimant's testimony is unrefuted that he must walk slowly and stop. His conditions will subside after he rests for a period of time.

Defendants concede that Claimant is in a wheelchair. This also brings Claimant within the definition of mobility impaired as set forth in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this questions is yes. There was no evidence that he was disqualified from programs or services as the result of some other issue, such as disciplinary problems.

There was testimony and evidence that Claimant had not been compliant with the Sex Offender Treatment Program (SOTP). Claimant acknowledged that he has never admitted any wrongdoing, and that is a requirement of the SOTP. As a result, he has lost several days of good time since he has been in DOC custody. Those lost days are not the result of any ADA-related issues and reflect program requirements that Claimant has not met.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
With one exception, the answer to this question is no. The ADA and Rehabilitation Acts require a showing of discrimination based upon a disability. The loss of good time because of an unwillingness to admit wrongdoing pursuant to the SOTP has nothing to do with Claimant's physical condition.

One area of discrimination has been proven. Claimant arrived at FCF in January, 2003. He had been diagnosed with COPD and had received an oxygen concentrator. He was not able to move quickly, and that was known to DOC staff.[1] A decision was made not to provide him with a wheelchair. It was deemed appropriate for him to walk in order to strengthen his muscles and blood flow in his legs. The problem was that Claimant could not move very fast and often had to rest. He was late to various classes, appointments, and meetings. He would be sent back to the start point, and this became frustrating to Claimant. The evidence presented reflects that FCF staff were aware of Claimant's condition but made no effort to extend the movement time for him. The decision not to provide a wheelchair was made by Dr. Creany at FCF, and that will not be second guessed. With the assistance of a pusher and a wheelchair, Claimant would have been able to make the movements within the time allotted. Without the wheelchair, Claimant should have received additional time to make movements. He thus was penalized due to his mobility impairment that has been acknowledged by Defendants.[2]

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
The Special Master determines that Claimant should receive compensation for the period of time at FCF in the amount of $100.

IT IS HEREBY ORDERED that the claim of Tommie Osman is granted as to failure to provide extended time for movement while at FCF; and

IT IS FURTHER ORDERED that the remainder of the claim of Tommie Osman, including his hearing impairment claim, is denied for the reasons set forth in this Order; and

IT IS FURTHER ORDERED that Claimant is entitled to compensation for the mobility impairment issues set forth in this Order in the amount of $100; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

---

[1] Claimant also had heart problems. He had triple bypass surgery prior to entering into DOC custody.

[2] As noted from the testimony of Mr. Hendrix at FCF, that facility was not one that was designated to receive inmates with disabilities. Even if Claimant had not requested the transfer to SCF, he would have been moved to a different facility, since FCF was not able to handle inmates with significant ADA issues.

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 14, 2006.**

SIGNED this 5th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master