IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-033
Category II
Claimant: William E. Drieman, #99751
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of William Drieman (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Colorado State Penitentiary (CSP) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants, but he has filed nothing further. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in August, 1988. He presently is incarcerated at the CSP in Canon City, Colorado.

Claimant checked the mobility impaired box on his claim form. He stated in his form, in part, as follows:

> 1) hepatitis C treatment procedure to 9 mo. To do biopsy, still not truthful diagnosis. 2) hand permanently crippled. CSP won't give aid for writing that I need. Say I need medical proof, medical won't help. 3) hemorrhoids getting worse. CSP won't give any reelief. No hemorrhoid pillow or lotions. 4) stomach acids. Stopped meds after 7 yrs. of meds. CSP says I have to by my own when I am a ward of the State. Constant acid-nervous stomach won't give medical help.
> It takes over two months to get work done on teeth when in severe pain or lost fillings and no meds or treatment causes depression and despair. Skin problems from dirty laundry. Laundry here does not clean clothes and it is against the rules to wash your own. PA medical says it's a fungus on my skin for a year then says it's just a serosis only comes at CSP. No treatment.
> 5) my back has a fusion and I have constant muscle spasms. Some worse and some better. No meds due to security.

In response to the question concerning discrimination, Claimant stated in his claim form that he was not receiving the medical treatment that is needed for his conditions.

In his supplemental form, Claimant alleges that the medical care he has received is not up to standard. He would like an Ace rap for his hand which is crippled. Claimant also submitted grievance forms that he submitted seeking help from DOC staff.

Defendants have filed a motion to dismiss. They argue that Claimant has failed to set forth a prima facie case under the definitions of the Settlement Agreement.

## III.

Defendants have filed a motion to dismiss. The Special Master must accept as true all reasonable allegations of Claimant. The motion may be granted only if Claimant could not establish his case, despite accepting as true all of his allegations.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has a

myriad of medical problems. He has detailed those in his claim form and supplemental form.

The Settlement Agreement limits the category of permanently mobility impaired to those "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The Special Masters are bound by this definition and may not extend it.

Claimant has not alleged that he is in a wheelchair full or part-time. Claimant also has not alleged or submitted any documentation that would indicate that he is suffering from a permanent lower extremity impairment. There are no allegations that Claimant cannot walk more then one hundred yards or climb a flight of steps without stopping.

Claimant's conditions for hepatitis C, a crippled hand, GERDS, and fused back are all significant, and painful. These conditions are not covered by the Settlement Agreement. Claimant has the right to bring his own separate action for these conditions, if he believes he has been the victim of discrimination under the ADA. Claimant cannot establish a prima facie case even if all of his allegations are accepted as true. Claimant may not pursue his claim, as he is not part of the class as mobility impaired under the very narrow definition of the settlement agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** This question does not need to be answered in light of the no answer to Question #1.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be answered in light of the no answer to Question #1.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the no answer to the first question.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of William E. Drieman is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 31, 2006.**

SIGNED this 12th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master