IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN - 8 2006

GREGORY C. LANGHAM
CLERK

Claim Number 01-125
Category I
Claimant: Juan Balderas, #102407
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the claim of Juan Balderas (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Arrowhead Correctional Center (ACC) in Canon City, Colorado.

This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response. Further argument will be waived.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in December, 1998. Claimant apparently was at various DOC facilities over the years. He is presently at ACC.

In his claim form, Claimant checked the box for mobility impaired. Claimant stated in his form, in part, as follows:

> I have mobility problems on both knees. I had surgery on my right knee on 2-12-04 and now my knee is a lot worse. I cannot bend my knee right, and I am in enormous pain on both knees but the one I had surgery on is worse. I have attempted to get a wheelchair from medical because the pain is so great I almost passed out (faint). I have gotten different answers but most of the time their answer is that they don't have any.

3

*As to the question concerning discriminatory actions by DOC and its staff, Claimant stated as follows:*

> I have been attempting to get a wheel chair from medical. I have sent many kites to medical letting them know that I need this wheelchair to move around and I have been ignored.

Claimant was provided a supplemental form to complete and return. He did so. In the form, Claimant stated, in part, as follows:

> I am having difficulty moving around (walking) as I was operated on my right knee on 2-12-04. My right knee is still swollen and stiff and also very painful.

In response to the question on the supplemental form as to requests for accommodations, Claimant stated as follows:

> I have put in a request for a wheel chair and also a request to be moved to a Unit (36) that is closer to my classroom. But both requests have been denied. I seen nurse practitioner Jeanne Davies today 8-3-04 and asked her for a wheelchair. And she said no.

In a later submission, Claimant stated that he was using a cane to get around. He could walk very slowly. He has continued to request use of a wheelchair. He also believes that he has been the victim of medical malpractice.

Medical records submitted by Claimant reflected attempts to obtain surgery on his knee. Grievance responses reflect that DOC staff acknowledged that Claimant has arthritis.

### III.

*Defendants' response to the claim of Mr. Balderas is a general denial.* There are no medical or other records attached to the response. In essence, Defendants have filed a motion to dismiss. Defendants correctly note that claimants must carry the burden of proof on their claims.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined.

Claimant has indicated on his claim form that he is mobility impaired. He bases this on the condition of his knees while in DOC custody.

Claimant's forms and exhibits do indicate that he had problems with his knees for some extended period of time. DOC medical staff did see Claimant and ultimately referred him to an orthopedic consultation. This apparently took place at Denver Health Medical Center where surgery took place in February, 2004. Claimant has alleged that this surgery did not go as well as he would have hoped and that he is suffering physical problems and pain.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The definition further is limited by requiring a claimant to show that he or she cannot walk one hundred yards without stopping or climb a flight of stairs without stopping. The definitions of disabilities in the Settlement Agreement must be applied to a condition that existed on or before August 27, 2003. A claimant who has a disability and was the victim of discrimination on or before August 27, 2003 may amend the claim to show that a further act of discrimination occurred after this date.

Claimant has established that he had problems with his knees before August 27, 2003. He has not established that he fell under the definition of mobility impaired on or before that date. Claimant's documents reflect that he began to suffer serious problems after surgery in February, 2004. This date is after August 27, 2003 and beyond the jurisdiction of the Special Master. Claimant may have a claim that can be pursued as a separate lawsuit, but his claim has not been established as a matter of fact or law as to his condition on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. Claimant's concern is with the medical care he has received. Claimant believes he has been the victim of medical malpractice. He has not shown that he was the victim of any discriminatory action on or before August 27, 2003.

Claimant has alleged that DOC failed to fix his knee. Claimant has received medical care while in DOC custody. The quality of that care is questioned by Claimant. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement

Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be answered in light of the negative answer to Question #3.

IT IS HEREBY ORDERED that the claim of Juan Balderas is denied, as he has failed to answer affirmatively all four of the questions in the order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 7, 2006.**

SIGNED this 26th day of May, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 26th day of May, 2006 to the following:

Mr. Juan Balderas
#102407
ACC
P.O. Box 300
Canon City, CO 81215-0300

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203