IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER ... ... CO

JUN - 8 2006

GREGORY C. L........HAM
CLERK

---

Claim Number 02-147
Category II
Claimant: William Redding, #61930
Address of Claimant: 2541 West 9ᵗʰ Avenue, Denver, CO 80204

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of William Redding (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time that he filed his claim. He has discharged his sentence and is no longer under DOC control.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response. Further argument will be waived.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or
>     services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in November, 2001. He remained under the control of DOC until April, 2003. It appears that he was released on parole during that month. Claimant returned to DOC custody in November, 2003 and then was paroled again in April, 2004. At some point thereafter, Claimant discharged his sentence. Claimant was incarcerated at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado when he filed his claim.

Claimant checked only the box for diabetes in his claim form. Claimant stated, in part, as follows:

> I'm a diabetic since 2001 but was told I could have had it since I was a kid. Since I have been a diabetic, I have not been able to control my diabetes. I have been given different medications that DOC prescribed, diets, which really aren't diets. All I can do is exercise which doesn't help.
> Have problems with neuropathy, legs and feet hurt when I sit, lay down or stand for long periods of time.
> Back problems. Had x-ray and ultrasound done and found possible calcification on right kidney.

In response to the question on the claim form concerning discrimination by DOC and its staff, Claimant stated as follows:

> I feel that by not telling me of my problems, prevented me on getting proper medical attention. I was given naproxen and ibuprofen.

Claimant submitted a detailed letter in May, 2004 which indicated his concerns. He had been placed on Glucophage to regulate his diabetes, but that did not work as his body rejected the medicine. A different medicine was prescribed. He alleged that he was not able to obtain comfortable shoes.

Defendants' answer to the claim contains no medical records or other documents. In essence, the response is a motion to dismiss. Defendants have denied the allegations of Claimant and argue that he has not proven his claim.

Claimant was granted up to and including April 24, 2006 in which to file a response to the answer of Defendants. Claimant has filed nothing. This claim will have to be adjudicated based upon what has been submitted by both sides.

# III.

Defendants' first argument in opposition to the claim is that Claimant has "submitted no evidence to support his claim." The argument is that Claimant submitted only his own statements in his claim form and these statements cannot be considered.

Defendants negotiated the Remedial Plan with counsel for the class to end this litigation. Section XXXII established the process for submitting claims for damages arising from violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act. The Remedial Plan was approved by Judge Nottingham on August 27, 2003, and the class was set on that date. The settlement provided no opt-out provision, so an inmate in custody on or before August 27, 2003 had to file a claim if he believed that he had a qualifying disability and had been the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Section XXXII provides, in part, as follows:

> Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members *may* attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. (emphasis added).

*Remedial Plan, p. 28.* This Section provides that "Class members allocated under categories 1 and 2 shall not be entitled to a hearing before the special master." The Section further provides that "[a]fter review of the evidence, the Special Master shall issue a written determination as to the damages awarded to each claimant." *Remedial Plan, p.29.*

A claimant must file a claim form in order to confer jurisdiction upon the Special Masters. A claimant is entitled to submit documents in support of his claim. A claimant also is entitled to discovery. When the claim process began, the Special Masters held that the Federal Rules of Civil Procedure applied and would allow for use of discovery tools such as interrogatories and request for production of documents. Defendants objected to this ruling. The matter was presented to Judges Nottingham and Kane, and both ruled that the Federal Rules of Civil Procedure do not apply to the claims process. All claimants were and are entitled to review are their medical records and all quality assurance documents. All claimants were and are limited to ten copies without charge, but a claimant is entitled to make a showing of good cause for additional copies over and above the ten granted without charge. In addition, Judge Nottingham has ruled that the Remedial Plan provides no power for the Special Masters to issue subpoenas. These rulings by the District Judges have been premised upon the construction of the Remedial Plan as approved on August 27, 2003. Thus, the vast majority of claimants have been severely limited in their ability to obtain information to prepare and present their claims.

5

Section XXXII specifically provided for the filing of claims by all individuals who believed that they had been denied their rights under the ADA and Rehabilitation Act. As noted, there is no right to a hearing for claimants whose claims have been assigned to Categories I and II. The claims in those categories must be resolved on all documents submitted by the claimant and Defendants. The claim form, supplemental form, other statements from a claimant, and a reply to the answer of Defendants become the testimony of a claimant. This was what was negotiated by Defendants and counsel for the class. Defendants are bound by the provisions of the Remedial Plan. If Defendants had not wanted the claim forms to be considered as evidence, they could have so negotiated that point with counsel for the class. They did not do that.

In addition, the damage claim process under the Remedial Plan before the Special Masters constitutes an "ancillary proceeding" to the case. The provisions of *28 U.S.C. §1746* apply. The statements of a claimant are deemed submitted under oath or affirmation. A false statement on a claim form or subsequent document could lead to prosecution for perjury. *See e.g., Dunn v. United States*, 442 U.S. 100 (1979). The documents of a claimant will be deemed submitted under oath or affirmation, and the documents will be accepted and considered on their merits. The alternative is to elevate all claims to Category III and allow a hearing on each claim. Every claimant's testimony then would be considered as evidence and given as much or as little weight as the Special Master deems appropriate.

To the extent that Defendants have essentially raised a motion to dismiss the claim, that motion will be denied. The claim will be resolved on its merits.

## IV.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined. Claimant has submitted his own statements indicating that he is diabetic. He has detailed further that his diabetes created health problems for him while he was incarcerated in DOC.

Defendants have provided no information that would indicate that Claimant is not diabetic. The Special Master finds that Claimant has established that he was diagnosed as a diabetic while in DOC custody prior to August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**

6

Based upon what has been submitted by Claimant, the answer to this question is no. There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant is upset about the medical care that he received while incarcerated in DOC. That concern has some legitimacy.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant's own documents reflect that he did receive medical care while in DOC custody. Claimant disputes that such care was appropriate or helpful. Claimant retains the right to pursue a separate action against Defendants for what he believes was improper medical care. Under *Fitzgerald*, Claimant may not pursue the issue of the quality of medical care through a claim filed pursuant to the ADA.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of William Redding is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 7, 2006.**

SIGNED this 30th day of May, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 30th day of May, 2006 to the following:

Mr. William Redding
2541 West 9th Avenue
Denver, CO 80204

Mr. James X. Quinn
Mr. Jess A. Dance
Mr. Aaron Atkinson
Ms. Brooke Meyer
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203