IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-098
Category II
Claimant: Charles B. Taylor, #100686
Address of Claimant: 14751 E. Tennessee Drive, #217, Aurora, CO 80012-3718

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Charles B. Taylor (Claimant). Claimant was incarcerated when he filed his claim. He has discharged his sentence and is now living in Aurora Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

This definition is controlling control as to implementation of the Settlement Agreement and adjudication of claims filed by individuals alleging mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in March, 1998. He was placed at various DOC facilities until his discharge on November 11, 2005. Claimant is no longer under DOC custody or control.

Claimant checked the mobility impaired box in his initial claim form. He submitted a letter that details his claim. He stated, in part, as follows:

>My name is Charles Taylor, I am disabled due to an accident I received while working at (D.A.C.) Denver Athletic Club. I have been this way since March of 1993. I have been diagnosed with chronic back pain. I also have been treated for severe depression. I have been prescribed "thorazine" and Flexerill medications

>along with Ibrophren (sic) 800. I have been on these medications since 1993. I have trouble walking, bending and standing for long periods of time. I have been (SSI) for this disability....

Claimant goes on to state, in part, as follows:

>Since I have been doing time at (D.O.C.) I have had many discriminatory actions taken against me. Even though they are well aware of my problems and that I am lower bunk restricted. Their own infirmary mandated. I was ordered to sleep on upper bunks and endure the pain of crawling up and down for most of my stay at (D.O.C.).

Claimant indicates in his claim form that he was required to work in a laundry and do other heavy work which created problems for him. He then had to work in food service at the Colorado State Penitentiary. There were no floor mats to cushion his feet and back while standing in a serving line. He slipped and fell on one occasion due to wetness on the floor.

Claimant filed a supplemental form which included further information about his claim. He submitted a letter that had been circulated to third persons concerning conditions at Phoenix House.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the box for mobility impaired. The question then is whether he meets the criteria as set by the Settlement Agreement.

The Settlement Agreement provides a very narrow qualification for mobility impairment. Permanent mobility impairment is limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not in a wheelchair full or part-time.

Information provided by Claimant and Defendants indicates that Claimant does not have a permanent lower extremity impairment. He has significant back problems and is disabled because of those. Claimant has provided no information that would indicate that he cannot walk 100 yards or climb a flight of stairs without stopping. Claimant's submissions indicate that he is mobile, but is in constant pain. He was concerned about being placed into an upper bunk with his back problems, and that concern was legitimate. The problem is that Claimant does not meet the definition for mobility impaired. The Special Master is bound by that definition and may not modify or expand it.

Claimant does not fall under the definition of mobility impairment. Therefore, he is not part of the class as established by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or receive services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be answered, as the answer to #1 is in the negative.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Charles B. Taylor is denied, as he has failed to answer affirmatively all questions set forth in the Order of November 23, 2004 and is not part of the class for mobility impairment; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 31, 2006.**

SIGNED this 13th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master