IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-251
Category III
Claimant: Edward T. Trujillo, #112714
Address of Claimant: 6710 W. 95th Place, Westminster, CO 80021

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on June 9, 2006. The hearing was held at the offices of Legal Resolution Center, Westminster, Colorado. Present were the following: Edward Trujillo (Claimant); Sharon Trujillo, wife of Claimant; and Celia Randolph, attorney for Defendants.

Testimony was received from the following witnesses: Claimant and Sharon Trujillo. All documentation previously submitted by both sides was accepted. Claimant did not formally offer into evidence any exhibits. Defendants offered into evidence Exhibit A, and that was admitted. Final closing arguments were presented. This case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.¹   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

¹The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master has considered all testimony presented, along with the documents submitted by both sides.

Claimant came into DOC custody on March 2, 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He spent about five days at that facility and then was transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. BCCF is a private prison facility that accepts inmates from DOC. Claimant remained at BCCF until his release on parole in 2004.

Claimant came into DOC custody with a diminished hearing capacity. He was limited by his hearing loss in what he could do. Claimant testified that it was difficult to hear because of background noise. He was unable to listen to television and had to stare at people to understand them He was able to read lips in order to understand what was being said.

After his arrival at BCCF, Claimant explored various educational programs that were open to him. He wanted to do into the electronics class but was unable to do so. He ended up in a different class, but it was difficult to hear the instructor.

Claimant requested a hearing test from BCCF staff. That was granted about eight months after his arrival at the facility. He was transported to Pueblo, Colorado for an evaluation. The testing indicated that Claimant had a moderate hearing loss. He then received a hearing aid, but that was of limited use to him. The batteries would run out, and replacement batteries had to be ordered. Sometimes he would go for two weeks without operating batteries.

Claimant testified that the hearing aid was not a panacea for his hearing loss. BCCF was a facility that was in a large building. Echoes were common and affected Claimant's ability to hear. In classes, Claimant would have difficulty hearing instructors, especially those who were female. Claimant stated that he was worried about not hearing a statement by a guard and then being written up for it.

On cross-examination, Claimant testified that he was able to understand the questions posed to him at the hearing. He has not worn the hearing aid since leaving DOC custody. He had wanted an accommodation for the television at BCCF, since it was impossible to turn it all the way up without disturbing others. He further testified that he believed that the electronics course was not available to him because he could not hearing sound signals coming from various gauges and testing equipment.

Claimant testified that he became a recluse in prison to survive. He just stayed out of the way of others because he could not hear and was fearful that something would happen to him. Though

he was threatened by other inmates on a couple of occasions, he was not attacked.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The most important question is whether a claimant is a member of the class. The Special Master is bound by the Settlement Agreement and its definitions.

The definition in the Settlement Agreement for hearing impairment is as follows:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, a claimant can only meet this definition if he is totally deaf.

The evidence presented by Claimant reflects that he does not meet the extremely narrow definition for hearing impairment. Claimant does have a hearing loss, and that is conceded by Defendants. Claimant was able to communicate with others at BCCF and DRDC. Claimant is not permanently deaf. He is able to hear, but with reduced ability. Claimant is not required to rely solely upon written communication, lip reading or signing. The evidence presented by Claimant reflects that he is able to hear and respond.

The Settlement Agreement provides the only jurisdictional basis upon which the Special Master may act. The definitions for all disabilities listed in the Settlement Agreement are narrow. Through the date of this order, no claimant has met the definition for hearing or vision impairment. The Settlement Agreement cannot be modified by the Special Master. Claimant may have the right to bring a separate lawsuit under the ADA for his reduced hearing capacity, but he does not meet the definition for hearing loss in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides and as related to the date of August 27, 2003, the answer to this question is yes. Other than health issues on that date, there does not appear to have been any disqualification from programs, benefits, or services. Claimant had no disciplinary problems at all.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
This question does not need to be answered in light of a negative answer to Question #1.
**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question does not need to be answer in light of the negative answer to Question #1.

5

IT IS HEREBY ORDERED that the claim of Edward Trujillo is denied, as he has failed to answer affirmatively each of the four questions set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2006.**

SIGNED this 13th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master