IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-367
Category II
Claimant: Juan J. Rosales, Jr., #53527
Address of Claimant: Unknown
_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Juan J. Rosales (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He since has been released on parole and has discharged his sentence.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. The mailing address for Claimant is invalid, as mail has been returned. Claimant has not provided a current address. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>    B. QUALIFIED INMATE
>    Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>    C. PERMANENT DISABILITY/IMPAIRMENT
>    A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>    The Settlement Agreement further provides, in part, as follows:
>
>    2. Permanent Hearing Impairments
>    Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>    3. Permanent Vision Impairment
>    Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>    4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>        1. Is the claimant a disabled individual who is a member of the class?
>        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1985. He was in various facilities of DOC over the years and was released on parole on several occasions. He now has discharged his sentence.

At the time that he filed his claim, Claimant was in custody at the Arrowhead Correctional Center (ACC) in Canon City, Colorado. He was released on parole from that facility.

In his initial claim form, Claimant stated as follows:

> I been having a hard time hearing on the phone and my family have to scream so I can hear them.

In response to the question concerning discriminatory acts by DOC and its staff, Claimant stated as follows:

> Because they don't have a T.T.D. phone on our unit and I use to use it on a private facility.

Claimant also stated that his hearing aid had broken and he was not able to get it fixed.

In his supplemental form, Claimant stated that he "was born deaf!" He indicated that his hearing aid had not been fixed. He had requested use of a TTD telephone, but that had been denied.

Defendants' response to the claim of Claimant contains a number of attachments. Defendants acknowledge that Claimant has a hearing loss in both ears. He received an audiology consultation for his ears, and then was provided hearing aids. Defendants maintain that Claimant does not meet the definition for hearing impaired.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the box for hearing impairment. The question then is whether he meets the criteria as set by the Settlement Agreement.

The Settlement Agreement provides the following as to hearing impairment:

2. *Permanent Hearing Impairments*
   Inmates who are permanently deaf or who have a permanent hearing

> impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

In order to meet this definition, a claimant would have to be permanently deaf and unable to hear at all, having to rely upon written communication, lip reading or signing to communicate.

The evidence submitted by both sides reflects that Claimant has hearing loss in both ears. While in DOC custody, Claimant did not have to rely upon lip reading, signing or written communication in order to communicate. In addition, Claimant received hearing aids. There is no evidence that these hearing aids did not provide some assistance to Claimant in hearing.

Claimant does not qualify under the very narrow definition for hearing impairment in the Settlement Agreement. His hearing loss might be sufficient enough to allow him to pursue a separate lawsuit. A claimant may have a disability covered by the ADA, but not recognized by the Settlement Agreement. His hearing loss does not rise to the level required by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Juan J. Rosales, Jr. is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 31, 2006.**

SIGNED this 14th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master