IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 02-036
Category II
Claimant: David P. Gauge, #61321
Address of Claimant: 8111 N.W. 172nd Lane, Fanning Springs, FL 32693-9453

___

## FINAL ORDER OF SPECIAL MASTER

___

    THIS MATTER comes before the Special Master on the claim of David P. Gauge (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He now has been released and lives in Florida.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

  The Settlement Agreement further provides, in part, as follows:

    2. Permanent Hearing Impairments
    Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
    3. Permanent Vision Impairment
    Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
    4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

  On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
      1. Is the claimant a disabled individual who is a member of the class?
      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in August, 1989. At the time that he filed his claim, he was incarcerated at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

Claimant checked only the boxes for vision impaired and hearing impaired. In response to the question concerning disabilities, he stated as follows:

> Hearing Impaired - Petitioner suffers from "total" deafness in "right" ear & partial deafness in left ear; due to (Right ear) injury - (left ear) age: which, especially in "crowded" areas, makes it quite difficult to "distinguish" and to "differentiate" sound. Above can be substantiated through medical records - "Permanent hearing loss" - irreversible - severed nerve - hearing aid deemed useless due to permanent, "non-repairable" nerve damage - severed nerve - in "right" ear.
> Vision Impaired: Petitioner is "far-sighted" - is "reading" impaired; right eye "differs" from left - both eyes impaired, left "stronger" than right; constituting "two" different prescriptions; one for each eye - 1 due to severe "skull" injuries - bifocals are apt to induce seizures; "must" wear "reading" glasses with "proper" prescriptions for each eye.

In response to the question on the claim form concerning discriminatory actions by DOC and its staff, Claimant stated that not all cells have intercom speakers. As a result, it is often impossible for hearing impaired inmates to hear all information being relayed, including notice of movements. As to vision impairment, Claimant states that DOC and its staff did not provide reading glasses. Inmates were directed to purchase such glasses from the canteen.

In his claim form, Claimant alleged that he missed 3-5 meals per week because he was unable to hear announcements over the cell house speakers. He also alleges that he had to purchase his own glasses in order to read.

In his supplemental forms, Claimant stated that he had to spend $200 per year for eight years for food from the canteen. This was based upon his estimate of missing three meals per week. He also indicated that he had difficulty in seeing in classes.

Defendants filed an answer which is basically a denial of Claimant's allegations. No medical records have been submitted by either side. Claimant was granted up to and including April 24, 2006 in which to file a reply to the answer of Defendants, but he filed nothing further.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the boxes for vision impaired and hearing impaired. The question then is whether he meets the definitions as set by the Settlement Agreement.

**Vision Impairment:** The Settlement Agreement provides the following definition for vision impairment.

> 3. Permanent Vision Impairment
>
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be very blunt, an individual has to be blind in order to meet this definition.

Claimant's own forms indicate that he see. He is not blind. He requested reading glasses, as he is far sighted. Nothing has been presented by either side that comes close to indicating that Claimant meets the definition for vision impaired. He may have vision issues, but they are not severe enough to place him under the definition in the Settlement Agreement. Claimant is not part of the class for vision impaired.

**Hearing Impaired:** The Settlement Agreement provides the following definition for hearing impairment.

> 2. Permanent Hearing Impairments
>
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

This definition is as extreme as the one for vision impairment. An individual has to be deaf to qualify and must rely upon writings, lip reading or signing to communicate.

Based upon what has been presented by both sides, Claimant does have hearing loss. He does not have a hearing loss that is sufficient to bring him within the definition set forth in the Settlement Agreement. Claimant has some residual ability to hear, as set forth in his own documents. The Special Master notes that Claimant desired use of in cell intercoms for announcements. Nothing has been presented to indicate that Claimant was unable to communicate directly with staff or other inmates. Claimant does not meet the definition of hearing impaired and is not part of the class for that disability.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

5

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
Since the answer to Question #1 is no as to both claimed impairments, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of David P. Gauge is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2006.**

SIGNED this 19th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master