IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

Plaintiffs,

-vs.-

BILL OWENS, et al.

Defendants.

---

Claim Number 02-260
Category II
Claimant: Hubert Underwood, #105565
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Hubert Underwood (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who are claiming mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody in March, 2001. Claimant was placed initially at the Denver Regional Diagnostic Center (DRDC). He then was placed at SCF.

Claimant checked only the box for mobility impaired on his claim form. In response to the question concerning disabilities, he stated as follows:

> May 2003, while climbing off the top bunk bed, I injured my right foot, notifying medical services through their kite system on numerous occasions, trying to seek medical assistance due to the injury of my right foot, major swelling and severe pain I experience while trying to walk -
>
> Finally, with the assistance of my Case Manager (Lawliss) I received a medical appointment on June 5th 2003 where after several more visits and two x-rays,

> it was determined I had broken my foot. On August 8th they placed a cast on my foot, ignoring the fact that there was possibly a calcium build-up around the bone. After removal of the cast (6 wks) I was still unable to place direct pressure upon my foot, without causing extreme pain.

In response to the question concerning discrimination by DOC staff, Claimant stated as follows:

> Due to lack of medical care, when my injury occurred, thus when I was seen by medical (60 days) from the injury til my foot was placed in a cast, causing my broken bones to begin healing irregularly and possible calcium build-up which has created my current disability and inability to walk properly. During the past 8 months and numerous kites to medical without response, suffering discomfort and foot pain, thus causing inability to walk properly.

In his supplemental form, Claimant indicated that his foot injury prohibited him from participating in sports such as baseball, volleyball and basketball. He stated that he is unable to walk any distance and has trouble getting up and off a top bunk. Claimant stated further:

> I previously asked N.P. Davis for lower bunk restriction and a cane - I was given one crutch to assist in my walking and was denied lower bunk - I was also refused a short route pass to chow hall until my Case Manager (Mr. Lawliss) complained to medical staff. Medical staff at this facility are very hesitant and resistant in providing any accommodations in assisting inmates medical needs.

Claimant also goes on to state that "I am claiming physical injury as a direct failure of staff at this facility who refuse to acknowledge my foot was broken and mis-diagnosing my injury as 'gout' ."

Defendants have filed a response to the claim. Attached to the answer are some medical records of Claimant. There is no dispute that Claimant did break his foot and that it was placed into a cast.

Claimant was granted up to and including April 24, 2006 in which to file a reply to the response of Defendants. Despite being accorded the opportunity to file a reply, Claimant has filed nothing. The claim will be adjudicated based upon what exists in the file at this time.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The Settlement Agreement requires, in part, that a claimant prove that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was set.

The Settlement Agreement provides that a permanent disability is "[a] condition which is not expected to improve within six months." In addition, permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

As to this claim, Claimant was injured in May, 2003. Based upon what Claimant has provided, it is clear that his injury did not constitute a permanent disability on that date. He was in a cast on August 27, 2003, and no evidence has been presented that any medical professional believed that a permanent disability would arise from the breaking of the foot. Claimant's own documents indicate that he received treatment for his condition. No medical or other professional stated that permanent impairment would occur to the foot. Claimant had a broken foot. It will be accepted that problems continue with the foot at this writing. The evidence reflects that it was only sometime after August 27, 2003 when Claimant believed that he had a permanently disabled right foot.

In addition, Claimant has failed to establish that the lower extremity condition did limit walking to 100 yards or less without stopping or the inability to climb a flight of stairs without stopping. The Special Master has no doubt that Claimant was and is in pain. A foot injury can generate extreme pain. The definition for mobility impairment requires proof of use of a wheelchair or a lower extremity condition that limits walking. There is no evidence of use of a wheelchair by Claimant. Likewise, there is no evidence that reflects Claimant cannot walk for more than 100 yards without stopping, though he does have pain.

Claimant has not established that he falls within the definition of mobility impairment for the reasons stated. Claimant has not met the burden of proof required to establish his claim.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Nothing has been presented that reflects Claimant was disqualified from programs or services because of other problems, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The thrust of the claim of Claimant is that he did not receive prompt and appropriate medical care. It is clear that he received some care at a point in time. Claimant does not believe that the care was appropriate.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant

is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement.

The Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately through a new lawsuit any rights that he may have concerning his medical care. He may not pursue such a cause of action through the claim process in this case.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the negative answer to the first question.

IT IS HEREBY ORDERED that the claim of Hubert Underwood is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 11, 2006.**

SIGNED this 19th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master