IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03–216
Category III
Claimant: Trinidad Quintana, #111668
Address of Claimant: FLCF, P.O. Box 1000, Fort Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

    THIS MATTER came before the Special Master for hearing on June 15, 2006 at the Fort Lyon Correctional Facility (FLCF), Fort Lyon, Colorado. Present were the following: Trinidad Quintana (Claimant); and Berina Ibrisagic, attorney for Defendants.

    Testimony was received from the Claimant. The Special Master received the affidavit of Dr. Orville Neufeld, D.O. The Special Master also received Claimant's Exhibit 1. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

    On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge

Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claims seeking damages or other remedies available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master has reviewed the testimony presented and documents received into evidence. The Special Master finds the following to be the facts necessary for resolution of the claim.

In 1984, Claimant was shot in the back. He sustained a complete destruction of part of his back. He was rendered a paraplegic and has been in a wheelchair since that event.

Claimant came into DOC custody on January 7, 2002. He was in a wheelchair at that time. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was evaluated at DRDC and then transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was at SCF for approximately fourteen months. Claimant was transferred back to DRDC and remained at that facility for one hundred and fourteen days. Claimant testified that he was advised that he was going to be transferred to FLCF, but that did not happen at that time.

Claimant then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He remained at that facility until September 27, 2004 when he was transferred to FLCF. He has remained at FLCF since that transfer.

Claimant testified concerning a number of points, but only a few will be discussed. Claimant is adept at using his wheelchair and has attempted to exercise to maintain upper body strength. Claimant also is cognizant of the pitfalls that await a wheelchair bound individual. Claimant has maintained reasonably complete records which reflect attempts at each placement to secure safer and better facilities for those who are disabled. Claimant has used the grievance system extensively.

While at SCF, Claimant was required to use a shower that was not handicapped equipped. Claimant testified, and the Special Master so finds, that he fell because there were no handrails in the shower. Claimant was shaken but not seriously hurt. This fall took place in late 2002 or early 2003, prior to the approval of the Settlement Agreement by Judge Nottingham.

After his transfer back to DRDC, Claimant fell at in a shower at that facility. The shower was not handicapped equipped. Claimant again was not seriously hurt, but he was concerned about his physical well-being as an inmate.

Claimant did not fall in a shower at LCF. He sent several grievances and letters to various DOC offices. On June 23, 2004, Claimant received a letter from Lou Archuleta, Manager of Prison Operations, which acknowledged that modifications to showers at LCF had not been completed, but a shower chair, shower wand, and staff assistance were available.

On May 20, 2004, Claimant and Inmate Terry Scearce were being transported from LCF to Denver for medical appointments. Claimant was placed by DOC staff in the back of the van. Staff secured only the large wheels of the wheelchair and not the smaller wheels. Claimant was handcuffed to his chair and was unable to move. Once the van arrived in the Denver area on I-70, the driver turned onto Chambers Road in Aurora. That driver came to stop and then accelerated so quickly from the stop that it overturned Claimant's wheelchair. He hit the back of the van and suffered injuries to his hands. He also testified that he has continued to have soreness in his left shoulder. The van staff took Claimant to the emergency room at Denver Health Medical Center. He then spent the night at DRDC where he was checked again. Claimant testified that he was helpless when the wheelchair started to topple over. Mr. Scearce verified what occurred. It is clear that this accident was entirely preventable.

Claimant testified that he will be released in 2007. He is a Mexican national who has been in the United States for thirty years. He has a hold from Immigration and Customs Enforcement and will be deported upon his release.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant was in DOC custody on August 27, 2003. Defendants concede that he was and is disabled, as he has been confined to a wheelchair since arriving into DOC custody. He is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** There was no evidence that Claimant was disqualified from any program or benefits as the result of violent behavior, COPD convictions, or the like.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
The answer to this question is yes as to the falls in the shower, the lack of a handicapped shower that was fully safe at LCF, and the van incident in May, 2004. The fall in the shower at SCF was prior to August 27, 2003. Claimant was entitled, therefore, to amend his claim and include incidents up through the date of the hearing.

Claimant has been mobility impaired from the day he came into DOC custody. Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996). In the context of prison life, basic programs are food, shelter and clothing. Claimant is not able to undertake these three basics on his own, as his liberty has been curtailed. Claimant is entitled to a safe living environment and a safe travel environment. Had Claimant not been a paraplegic, he would not have been at risk in the showers at SCF, DRDC, and LCF. He would not have been injured at all in the van incident, because he would have been placed into a seat with a belt.

The van incident is particularly egregious because Claimant had to rely on DOC staff to transport him and safeguard him while in the van. Had there been a major accident, Claimant would have been seriously injured or killed.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
The Special Master determines that Claimant is entitled to compensation in the amount of $750.00 for his injuries and anxiety caused by the lack of safe facilities and safe transportation.

IT IS HEREBY ORDERED that the claim of Trinidad Quintana has been proven to the extent set forth in this order; and

IT IS FURTHER ORDERED that Claimant is to receive $750.00 as full and complete compensation as to his claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2006.**

SIGNED this 19th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master