IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03–222
Category III
Claimant: Raymond Stuart, #87437
Address of Claimant: FLCF, P.O. Box 1000, Fort Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 16, 2006 at the Fort Lyon Correctional Facility (FLCF), Fort Lyon, Colorado. Present were the following: Raymond Stuart (Claimant); and Berina Ibrisagic, attorney for Defendants.

Testimony was received from the Claimant. The Special Master received the affidavit of Dr. Orville Neufeld, D.O. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval

established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claims seeking damages or other remedies available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the

criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. The Special Master has reviewed the testimony presented and documents received into evidence. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant suffered a stroke during surgery prior to his entry into the custody of DOC. His left side is paralyzed. Claimant has been confined to a wheelchair since being sentenced to DOC.

Claimant was placed first at the Denver Reception and Diagnostic Center (DRDC). He was there for a few weeks and then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant was at CTCF for five years. Claimant then was transferred to the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado. He was at that facility for about five years. He then was transferred to FLCF and has been at the facility for about one and one-half years.

Claimant testified that while at CTCF he was provided a pusher. He was not able to able to attend music and other programs at the auditorium, as it was not wheelchair accessible. The only way he could attend was if he was carried by two individuals to the auditorium. He also had problems with some of the pushers assigned to him. Certain individuals were unreliable. One pusher dropped him out of his wheelchair. Claimant also testified that there was no physical therapy that was helpful to him. He believed that he knew more about physical therapy than some of the individuals assigned to help him.

At SCCF, Claimant received physical therapy through the Colorado State Hospital. No pushers were available to assist him. He had trouble getting off and on toilets at that facility. Claimant was concerned about fire alarms and the ability of the facility to evacuate him if there was

a fire. Claimant indicated further that SCCF has many seriously mentally ill individuals who posed a threat to him and others. The visiting room was unaccessible for him, as there was no ramp that he could use for his wheelchair.

Claimant testified that some of his property was not received by him at FLCF after his transfer. He has wondered if some of the items were thrown away, including family pictures and an address book. He also lost some of the canteen items he had purchased at SCCF before he was transferred. He also lost a cushion for his wheelchair that was not transferred.

Claimant testified that he was placed into a non-ADA compliant room at FLCF. He complained and was transferred to an appropriate room. He indicated further that he has difficulty at religious services because the bathroom is not wheelchair accessible. He has been unable to obtain a pusher at FLCF. He also does not have an assistant for daily life activities. Claimant stated that it is very difficult to dress himself, as he only has use of one hand.

On cross-examination, Claimant acknowledged that he was assigned to jobs and classes at SCCF. He was enrolled in a GED class at SCCF. He also was in a senior support group that was helpful. He always has had restrictions because of his physical condition. He acknowledged that he had several disciplinary problems while at SCCF. He denied that he had refused physical therapy. He maintained that the bathroom in the room used for religious services has a door that is too narrow for wheelchairs.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant was in DOC custody on or before August 27, 2003. Defendants concede that he was and is disabled, as he has been confined to a wheelchair since arriving into DOC custody in 1994. He is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** There was no evidence that Claimant was disqualified from any program or benefits as the result of violent behavior, COPD convictions, or the like. It is true that he has had several COPD convictions, but these are not germane to the issues in this claim.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is yes and no. Claimant has testified that he has been limited over the years because of being wheelchair bound. He was unable to attend the music room or programs in

the auditorium at CTCF while he was there.[1]  The auditorium was inaccessible by those in wheelchairs. This violated the ADA and Rehabilitation Act, as it denied equal opportunities to those in wheelchairs.

Claimant testified, and it was not rebutted, that the visiting room at SCCF was not accessible to those in wheelchairs. Claimant testified that he was one of two inmates in wheelchairs at SCCF, and that he was not able to get into the visiting room because there was the lack of a ramp. He was denied equal opportunities because of being wheelchair bound.

Claimant also testified that he was not able to easily use the restroom in the facility used for religious services at FLCF. He believed that he was being discriminated against under the ADA because others not in wheelchairs were able to use the religious facility more easily.

Claimant has been mobility impaired from the day he came into DOC custody. Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996). In the context of prison life, basic programs are food, shelter and clothing. Claimant is not able to undertake these three basics on his own, as his liberty has been curtailed. Claimant is entitled to equal treatment on issues of access to facilities. Claimant has established his claim to these access issues. To the extent that Claimant presented evidence as to other issues, he has not established that part of his claim.

Claimant testified concerning lack of physical therapy at CTCF and elsewhere. He indicated that the individuals who were working with him were not physical therapists. He believed that they were CNA's only. He questions their education and professional skills. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

---

[1] This issue has arisen in previous cases. The auditorium at CTCF was not wheelchair accessible prior to its being closed in 2002. Individuals in wheelchairs, including Claimant, were unable to gain access to the auditorium unless physically carried by other inmates. The auditorium was closed because it was not usable by those in wheelchairs.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** The Special Master determines that Claimant is entitled to compensation in the amount of $100.00 for the violations of the ADA and Rehabilitation Act that have occurred during Claimant's incarceration.

IT IS HEREBY ORDERED that the claim of Raymond Stuart has been proven to the extent set forth in this order; and

IT IS FURTHER ORDERED that Claimant is to receive $100.00 as full and complete compensation as to his claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2006.**

SIGNED this 19th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master