IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-435
Category II
Claimant: Charles William Fletcher III, #65848
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Charles William Fletcher (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they have a mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on August 5, 1991. He remained in DOC custody until July 5, 1998. It is unclear whether Claimant discharged his sentence at that time or was released on parole.

Claimant returned to DOC custody on May 21, 1999. He has remained in DOC custody continuously since that date. He presently is in custody at SCF.

In his claim form, Claimant states as follows:

Plantar fasciitis; severe pes planus. Affects - significant pronation is exhibited upon standing. Suffering from knee pain and severe lower back pain. Back pain

3

causes sleepless nights and discomfort during the day.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> By not receiving the correct treatment nor the proper orthotics to correct the arches in my feet. Nor have I been able to receive orthotic shoes.

Attached to the claim form are two progress notes from Dr. Howard Krieger, DPM which confirm that Claimant has the conditions of plantar fasciitis and pes planus.

In his supplemental form, Claimant has restated the basic problems that he has dealt with his feet. He has pain and discomfort when walking and has been limited in the sports and other recreation activities that he is able to do. Claimant also indicates that he has requested special shoes or inserts from DOC.

Documents submitted by Defendants reflect that some treatment was provided for the foot conditions. Defendants maintain, and Claimant has not filed any rebuttal, that orthotic shoes were provided to Claimant. Also Claimant injured his ankle while playing basketball on April 21, 2005 while at SCF.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the box for mobility impairment. The question then is whether he meets the criteria as set by the Settlement Agreement.

The definition in the Settlement Agreement provides permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant is not and has not been in a wheelchair at any time since returning to DOC custody. His foot problems would qualify as a lower extremity condition.

In order to meet the second part of the definition for mobility impairment, a claimant must show that the condition limits walking. That is further defined as being unable to walk for one hundred yards without stopping or being unable to climb a flight of stairs without stopping. Claimant has provided no information or evidence that he cannot walk or climb stairs. There is no question that he has foot pain. That is insufficient to qualify under the Settlement Agreement as a lower extremity condition. It is not disputed that he hurt his ankle playing basketball. Claimant is to be commended for his efforts to stay healthy and active, but it means that he does not have a mobility

impairment condition. Claimant does not qualify under the very narrow definition for mobility impairment in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?**  The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Charles William Fletcher III is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 11, 2006.**

SIGNED this 21st day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master