IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-513
Category II
Claimant: Frederick R. Mayberry, #91965
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**ORDER OF DISMISSAL OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Frederick R. Mayberry (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is in custody at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion to dismiss of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>    B. QUALIFIED INMATE
>    Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>    C. PERMANENT DISABILITY/IMPAIRMENT
>    A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>    The Settlement Agreement further provides, in part, as follows:
>
>    2. Permanent Hearing Impairments
>    Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>    3. Permanent Vision Impairment
>    Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>    4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>        1. Is the claimant a disabled individual who is a member of the class?
>        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on 1996. He presently is at AVCF. It is unknown where he was housed prior to his present placement.

Claimant stated, in part, in this initial claim form as follows:

> Critical hearing loss in both ears has and does cause me to miss appointments, meals, and programs because I cannot hear announcements. The hearing loss places me at physical risk because I cannot hear warnings such as fire alarms and announcements. It further places me at risk because I cannot hear orders and instructions from staff.
> Light-sensitive sight caused by pinkeye makes it painful for me to be in sunlight and difficult to read without tinted lenses which DOC has denied.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> For two years I was denied a hearing test, and after hearing test was denied hearing aid, and denied authorization to purchase hearing aid. DOC has also given instructions to all eye examiners to not prescribe tinted lenses, thus I have been denied fair medical treatment.

In his supplemental forms, Claimant states, in part, as follows:

> 42% loss in left ear, 38% loss in right ear. The doctor who did my hearing test said it was a critical hearing loss, and that he recommends a hearing air.

Claimant states in his supplemental vision form that he has "[l]ight sensitive eyes requiring tinted lenses in open sunlight."

Defendants' motion to dismiss argues that Claimant does not have a vision or hearing impairment as defined by the Settlement Agreement. Claimant was granted up to and including June 5, 2006 in which to respond to the motion to dismiss. Claimant has not filed any response to the motion to dismiss.

## III.

Defendants have filed a motion to dismiss. All reasonable inferences will be drawn in favor of Claimant and all alleged facts will be accepted as true.

In order to prevail on a claim of mobility impairment, a claimant must meet the definitions

in the Settlement Agreement. Each claimed condition will be taken separately.

**Vision Impairment**: The Settlement Agreement sets forth the following definition for vision impairment:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant would have to be legally blind to meet this definition.

Accepting as true what Claimant has set forth, he has light sensitive eyes. He is able to see, but would feel more comfortable with tinted lenses for sunlight. Claimant has not alleged any facts that come close to meeting the definition of vision impaired. Defendants are correct in arguing that Claimant has failed to set forth a prima facie claim for vision impairment.

**Hearing Impairment**: The Settlement Agreement sets forth the following definition for hearing impairment:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt again, this definition would require a claimant to be totally deaf and be limited in communication to written documents, signing or lip reading.

Claimant has a hearing loss in both ears. He has a legitimate concern for his safety and in complying with staff orders. Claimant has some residual hearing and has not alleged that he must rely on written communications, lip reading or signing. Claimant does not meet the narrow definition in the Settlement Agreement for hearing impaired.

Claimant may have a condition that would be protected by the ADA. It is possible to fall under the protections of the ADA while not meeting the more strict definition of the Settlement Agreement. Claimant may have the right to bring his own lawsuit as to his hearing loss. He cannot pursue his claim, as he has not alleged that he has a more profound hearing loss.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted and the claim of Frederick R. Mayberry is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2006.**

SIGNED this 22nd day of June, 2006.

> BY THE COURT:
>
> */s/ Richard M. Borchers*
> _____
> Richard M. Borchers
> Special Master