IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-517
Category II
Claimant: Robert E. Quintero, #105549
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**ORDER OF DISMISSAL OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Robert E. Quintero (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is in custody at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion to dismiss of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on 1999. He presently is at AVCF. It is unknown where he was housed prior to his present placement.

Claimant stated, in part, in this initial claim form as follows:

>Brachia Plexus injury w/nerve damage in right arm and shoulder and neck problems, have signed all permission forms "twice" and DOC claims these records are not available, symptoms include neck pain, shoulder pain and is affecting both shoulders, arms and had fall asleep at night and cause severe pain in shoulders, neck and arms. Also sciatic nerve problems in right leg, have been promised a pain clinic for over 3 years with appt. never scheduled. This affects my work and simple everyday activity including the ability to sleep at night. I have suggested pain meds and an extra mattress only to be told I do not need anything. My sleep is disrupted

on a nightly basis from the pain in the neck and shoulders, numbness and tingling in arms and hands.

In his supplemental form, Claimant again details his medical condition which affects his shoulders, neck and low back. He has alleged that his health conditions affect his ability to stand, sit and work.

Defendants' motion to dismiss argues that Claimant does not have a mobility impaired as defined by the Settlement Agreement. Defendants note that Claimant does not allege that he cannot walk more than one hundred yards or that he is in a wheelchair full or part-time.

Claimant was granted up to and including June 12, 2006 in which to respond to the motion to dismiss. Claimant has not filed any response to the motion to dismiss.

### III.

Defendants have filed a motion to dismiss. All reasonable inferences will be drawn in favor of Claimant and all alleged facts will be accepted as true.

In order to prevail on a claim of mobility impairment, a claimant must meet the definition in the Settlement Agreement. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Defendants note that no allegations have been set forth that Claimant is in a wheelchair full or part-time.

Claimant has alleged primarily that he has neck, shoulder, and lower back problems. These are not covered by the definition in the Settlement Agreement. Claimant has alleged that he has "sciatic nerve problems in the right leg." As Defendants note, a condition in a leg does not mean automatically that a claimant meets the definition. On the contrary, there must be a showing that a claimant's ability to walk is impaired and that the claimant cannot walk more than one hundred yards without stopping or cannot climb a flight of stairs without stopping. Defendants are correct that Claimant has not set forth any allegations that he cannot walk or climb steps. Accepting as true all of the facts alleged by Claimant, there has not been a showing of a prima facie case as to mobility impairment.

Claimant clearly has health issues. The Settlement Agreement only deals with four specific and narrow conditions. Claimant may well have the right to bring his own separate lawsuit under the ADA. He has not responded to the motion. Accepting as true what Claimant has alleged, he cannot prevail on his claim.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted and the claim of Robert E. Quintero is dismissed; and

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2006.**

      SIGNED this 22nd day of June, 2006.

                                       BY THE COURT:

                                       */s/ Richard M. Borchers*

                                       _____
                                       Richard M. Borchers
                                       Special Master