IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-569
Category II
Claimant: Roland Johnson, #87852
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**ORDER OF DISMISSAL OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Roland Johnson (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently has been placed at the Arkansas Valley Correctional Facility AVCF) at Crowley, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a reply to the motion of Defendants. Claimant has not filed any reply to Defendants' motion. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in November, 1994. It is unclear from the file where Claimant has been placed over the last twelve years. He is at AVCF at the present time.

In his claim form, Claimant stated, in part, as follows:

> Vision - inflammation of left eye, light sensitive, headaches and severe redness, blurred vision - at time when first waking, unfocused vision up to three [3] hours - no depth perception. Condition diagnosed upon arrival at DOC. Diabetic-Hypoglycemic - constantly tired, agitated, disorientated, staggering, blurred vision, shaking-uncontrolled hand movements, any sugar intake may and does cause diabetic crash.

In response to the question concerning discrimination by DOC and its staff, Claimant stated on his form as follows:

> Prior to arrival at the Arkansas Valley Correctional Facility, I was diagnosed by Dr. Garlic at the Kit Carson Correctional Center (KCCC) and treated for hypoglycemia; AVCF sent me to the Colorado Territorial Correctional Facility (CTCF), for testing which allegedly proved negative. Thus, this facility's refusal to treat. Likewise, prior to arrival at AVCF, I was diagnosed, and treated for acute Uveitis [ inflammation of the uvea-the vascular middle layer of the eye constituting the iris, ciliary body, and choroid] by Dr. Forester at KCCC. AVCF one again re-examined and was told to re-schedule a follow-up examination in six [6] months and need not be treated, but no re-scheduling to date, been waiting eighteen [18] months.

Claimant did not file any supplemental forms or any of his medical records.

Defendants' motion to dismiss is predicated on a belief that Claimant has failed to make sufficient allegations that would amount to a prima facie case. As noted previously, Claimant was granted up to and including June 5, 2006 in which to file a reply to the motion of Defendants. Claimant has not filed any reply.

## III.

Defendants' motion requires that all allegations set forth by Claimant be accepted as true. Claimant did not file any medical records or other documents in support of his claim.

The Special Master must examine the allegations in the claim in light of the order of November 23, 2004. In reality, only two of those questions are germane to the pending motion.

4

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined. Claimant checked to boxes on his claim form: vision impaired and diabetes. Each will be examined separately.

**Vision Impairment:** The Settlement Agreement provides a very narrow definition of vision impairment. The definition is as follows:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, to meet this definition an individual claimant has to be legally blind.

Claimant's allegations indicate that he is not blind. He has had an inflamation of his left eye and occasionally has blurred vision. He also may have unfocused vision. There are no allegations that Claimant cannot see with corrective lenses.

The definition in the Settlement Agreement is extremely narrow. Claimant's allegations do not place him within the definition. Claimant had the opportunity to reply to the motion and did not do so. He may have vision issues, but those issues are not within the definition of vision impaired as set forth in Settlement Agreement.

**Diabetes:** For purposes of this order, it will be accepted that Claimant has diabetes. There are allegations from Claimant that his condition is really hypoglycemia.

Being diabetic is not sufficient, in and of itself, to allow his claim to proceed on in the process. Claimant has to allege that his diabetic condition limits a major life activity. Claimant has alleged concerns about his health, and those concerns are legitimate. He has not alleged that he is unable to carry on all life activities, despite having diabetes. Claimant's claim form is not sufficient to allow this part of the claim to continue.

**2. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has not set forth any allegations of discrimination that can be acted upon under the ADA and Rehabilitation Act. These acts were enacted to prevent discrimination against those who have disabilities. An example would be having facility programs that could not be attended by those in wheelchairs because of physical obstacles in a building.

Claimant has alleged that he has received medical care. He takes issue with that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be

resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Roland Johnson is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 11, 2006.**

SIGNED this 22nd day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master

6