IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 02-579
Category II
Claimant: Steven J. Dec, #96774
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

___

## ORDER OF DISMISSAL OF SPECIAL MASTER
___

      THIS MATTER comes before the Special Master on the claim of Steven J. Dec (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to respond to the motion of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss. In resolving this motion, all reasonable allegations of Claimant must be accepted as true.

In his initial claim form, Claimant alleged that he came into DOC custody on February 18, 2004. From handling hundreds of claims, the Special Master noted that Claimant's DOC would have required him to have been in custody prior to this date. Claimant has filed some medical records, and three pages date back to 1998. Claimant was incarcerated at that time at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado.

In his initial claim form, Claimant states as follows:

>My right elbow has been reconstructed with a metal plate and seven screws.

>Mobility and range of movement of that arm is restricted and is often painful to varying degrees. During wet and/or cold weather I experience unremitting pain, unless pain management medications are available to alleviate it. Even more serious, though, is that my level L-1 vertebra is fractured and is exacerbated by moderate scoliosis and arthritis, the resulting impaired mobility and chronic pain is better understood. The latter combined conditions cause me trouble trying to sleep the night through, dressing and undressing, and performing many normal daily tasks. In order to function as normally as possible and with the least pain one might reasonably expect, a pain-management regimen is necessary. Clearly, I cannot perform any physical labor, engage in sports, or even sit for more than about ten minutes at a time. This greatly impairs my ability to work at gainful employment of any kind. Prior to my imprisonment, my pain management regimen included prescription medications that were readily renewed as needed, a back brace, heating pad and/or hot water bottle, special mattress, etc....which maximized mobility and minimized pain.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>The DOC has repeatedly refused to provide me with ANY of the pain medications or other devices which made life more bearable and my personal activities more varied and constructive. Despite my offers to provide documentation to support my claims of need for and previous provision of the mentioned pain-management devices and drugs, DOC has refused all blandishments, cut off what medication it had been supplying, and turned a deliberate indifferent attitude toward my needs. There is nothing short of enforced inactivity and is effectively an additional punishment to my statutory loss of freedom.

In his supplemental form for mobility impairment, Claimant stated, in part, as follows:

>Because of my physical limitations, it is sometimes difficult and painful to climb and descend stairs. It is also difficult at times to dress and undress, tying and untying shoes being particularly a problem.....

The three pages of medical records from 1998 reflect that Claimant was having lower back problems at that time. He was placed on restrictions for work which included no bending or lifting of over twenty-five pounds. One medical record reflects that the back injury was from a motor vehicle accident. He was also granted some physical therapy.

Defendants' motion to dismiss is predicated on a number of points, but only three need to be discussed. First, Defendants argue that Claimant has not alleged a mobility impairment that meets the definition set forth in the Settlement Agreement. Claimant has alleged problems with his elbow and his back. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who

have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not alleged that he is in a wheelchair full or part-time. He also has not alleged a lower extremity condition that is permanent and that affects his walking. A lower back condition and elbow are not covered by the definition in the Settlement Agreement. The Special Master is bound by that definition and may not expand it. Accepting as true everything that has been alleged, Claimant has not established a prima facie case.

Second, the Settlement Agreement provides that a claimant must show that he was disabled and in DOC custody on or before August 27, 2003. Claimant on his claim form alleged that he came into DOC custody in February, 2004. As noted, Claimant was in custody in 1998. From the medical records provided, it appears that he was receiving treatment and medications during the time he was at FMCC. In order to establish a claim, a claimant must also alleged that he was the subject of discrimination prohibited by the ADA at a time that predated August 27, 2003. Claimant has made no such allegations.

Third, Claimant has alleged that he has received substandard medical care. He alleges at one point that Defendants have been deliberately indifferent to his care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Claimant retains the right to bring a separate lawsuit under the Eighth Amendment if he believes that his medical care has been substandard. He cannot adjudicate that issue through an ADA claim or lawsuit.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and claim of Steven J. Dec is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 11, 2006.**

SIGNED this 22nd day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master