IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 01-013
Category I
Claimant: Jesse Rocha, #92692
Address of Claimant: BVMC, P.O. Box 2005, Buena Vista, CO 81211-2005

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Jesse Rocha (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Buena Vista Minimum Center (BVMC) in Buena Vista, Colorado.

This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant has filed a reply to the response of Defendants. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals claiming mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 10, 1996. At the time that Claimant filed his initial claim form, he was incarcerated at the Sterling Correction Facility in Sterling, Colorado.

In his initial claim form, Claimant stated, in part, as follows:

> Ruptured L5 disc, chronic head aches, neck and upper extremity pain, after suffering on the job injuries in July 11, 1986.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Knowing of my injuries, D.O.C. chained my hands, legs, to waist, and

3

transported me for 23 hours on hard plastic seat to prison in Appleton, Minnesota.

Claimant stated that he suffered stress because of the trip to Minnesota, and then additional stress when transported back to Colorado. Claimant checked only the box for mobility impairment on his initial claim form.

Claimant filed a supplemental claim form for mobility impairment. He stated, in part, as follows:

> Because of herniated L5 disc, I have pain and numbness of right leg, pain and weakness of neck and upper right extremity, and chronic headache.

Claimant has alleged that he cannot have an egg crate mattress and that he cannot be transferred to a community setting because of his back condition. He also alleged that he fell and aggravated his back injury while at the Kit Carson Correctional Facility in Burlington, Colorado.

Defendants have filed a response to the claim which denies that Claimant is disabled under the definitions of the Settlement Agreement. Defendants have submitted several medical and other records.

Claimant has filed a reply to the response of Defendants. In that reply, Claimant states that he was found to be disabled by the Social Security Administration prior to his arrival in DOC. His back and neck injuries occurred as the result of a job injury incurred while working for the City of Brush, Colorado. In his reply, Claimant alleges that he has had mail opened by DOC staff and that he recently had his lower bunk restriction cancelled. He indicates that he has to use a top bunk with no ladder, and his knees and back are being hurt when he has to jump off of the bed.

### III.

Defendants' first argument in opposition to the claim is that Claimant has "submitted no evidence to support his claim." The argument is that Claimant submitted only his own statements in his claim form and subsequent documents and these cannot be considered.

Defendants negotiated the Remedial Plan with counsel for the class to end this litigation. Section XXXII established the process for submitting claims for damages arising from violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act. The Remedial Plan was approved by Judge Nottingham on August 27, 2003, and the class was set on that date. The settlement provided no opt-out provision, so an inmate in custody on or before August 27, 2003 had to file a claim if he believed that he had a qualifying disability and had been the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Section XXXII provides, in part, as follows:

> Damages of individual class members shall be determined by a special master

>designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members *may* attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. (emphasis added).

*Remedial Plan, p. 28.* This Section provides that "Class members allocated under categories 1 and 2 shall not be entitled to a hearing before the special master." The Section further provides that "[a]fter review of the evidence, the Special master shall issue a written determination as to the damages awarded to each claimant." *Remedial Plan, p.29.*

A claimant must file a claim form in order to confer jurisdiction upon the Special Masters. A claimant is entitled to submit documents in support of his claim. A claimant also is entitled to discovery. When the claim process began, the Special Masters held that the Federal Rules of Civil Procedure applied and would allow for use of discovery tools such as interrogatories and request for production of documents. Defendants objected to this ruling. The matter was presented to Judges Nottingham and Kane, and both ruled that the Federal Rules of Civil Procedure do not apply to the claims process. All claimants were and are entitled to review their medical records and all quality assurance documents. All claimants were and are limited to ten copies without charge, but a claimant is entitled to make a showing of good cause for additional copies over and above the ten granted without charge. In addition, Judge Nottingham has ruled that the Remedial Plan provides no power for the Special Masters to issue subpoenas. These rulings by the District Judges have been premised upon the construction of the Remedial Plan as approved on August 27, 2003. Thus, the vast majority of claimants have been severely limited in their ability to obtain information to prepare and present their claims.

Section XXXII specifically provided for the filing of claims by all individuals who believed that they had been denied their rights under the ADA and Rehabilitation Act. As noted, there is no right to a hearing for claimants whose claims have been assigned to Categories I and II. The claims in those categories must be resolved on all documents submitted by the claimant and Defendants. The claim form, supplemental form, other statements from a claimant, and a reply to the answer of Defendants become the testimony of a claimant. This was what was negotiated by Defendants and counsel for the class. Defendants are bound by the provisions of the Remedial Plan. If Defendants had not wanted the claim forms to be considered as evidence, they could have so negotiated that point with counsel for the class. They did not do that.

In addition, the damage claim process under the Remedial Plan before the Special Masters constitutes an "ancillary proceeding" to the case. The provisions of *28 U.S.C. §1746* apply. The statements of a claimant are deemed submitted under oath or affirmation. A false statement on a claim form or subsequent document could lead to prosecution for perjury. *See e.g., Dunn v. United States*, 442 U.S. 100 (1979). The documents of a claimant will be deemed submitted under oath or affirmation, and the documents will be accepted and considered on their merits. The alternative is to elevate all claims to Category III and allow a hearing on each claim. Every claimant's testimony

then would be considered as evidence and given as much or as little weight as the Special Master deems appropriate.

## IV.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Review of the documents submitted by both sides indicates that Claimant does have neck and back problems. He also had other health issues, including coronary problems.

Medical records submitted by Defendants confirm that Claimant has back and neck issues. He has limited back movement and has been receiving medication. Over the years, Claimant did receive restrictions, including limitations on work and top bunk status. Claimant correctly noted that the top bunk restriction has been terminated.

The initial question to be answered is whether Claimant met the definition of mobility impaired, as set forth in the Settlement Agreement, on August 27, 2003. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The Special Master is bound by this definition and may not expand or change it.

Claimant has provided no evidence or allegations that he is in a wheelchair full or part-time. Claimant does not meet this part of the definition for mobility impaired. In order to meet the second part of the definition, a claimant must establish that on or before August 27, 2003 he had a permanent lower extremity condition that substantially affected walking. The Settlement Agreement further provides examples that an individual could not walk more than one hundred yards without stopping or had to stop when climbing a flight of stairs.

Claimant has not established that he falls under the second part of the definition. There is no question that he has a long-term chronic condition in his back and neck. There is no evidence that Claimant is unable to walk more than one hundred yards without stopping or climb a flight of stairs. There is no question that Claimant is in pain on a full-time basis, but his condition does fit under the definition for mobility impaired as set forth in the Settlement Agreement.

Claimant may well be disabled under the ADA. Since Claimant does not fall under the definitions in Settlement Agreement, he may pursue his own separate lawsuit for his back and neck conditions.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was disqualified from

programs or services for other reasons, such as disciplinary problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
This question does not need to be reached in light of the no answer to the first question.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question does not need to be reached in light of the no answer to the first question.

IT IS HEREBY ORDERED that the claim of Jesse Rocha is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 17, 2006.**

SIGNED this 27th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master