IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-586
Category II
Claimant: Riley R. Vigil, #100814
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Riley R. Vigil (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) and is placed presently at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Additional argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals that involve mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into the custody of DOC on June 7, 1999. Claimant was originally placed in the Denver Diagnostic and Reception Center. He then was sent to the Arkansas Valley Correctional Facility (CTCF) in Crowley, Colorado. He then was transferred to CTCF.

In his initial claim form, Claimant stated, in part, as follows:

> Movement in right shoulder. Torn rotator cuff. First operation did not work. Operation in 2001. Have been given run around since then. In pain and unable to do normal everyday functions. Now after having to fight them for new MRI. They are still refusing to treat properly for pain and are talking about replacing part of my shoulder (1/4 shoulder). My trade is a mechanic and I will not be able to continue to do my required day responsibilities.  I cannot complete them now as well. In pain

3

24/7. To include while sleeping.

In response to the question on the claim form concerning discrimination by DOC and its staff, Claimant stated as follows:

By them refusing to act on continued request to find out what was still wrong with my shoulder, their own record shows they knew I still had a torn rotator cuff problem. They continued to stall and still are leaving me in pain and are dragging their feet about the repair of shoulder.

Claimant submitted a number of his own medical records. Dr. Thomas Eskestrand, M.D. examined Claimant on October 23, 2003 and found that Claimant had a significant shoulder problem. Other medical records reflect that Claimant did have back and other health problems. The records reflect that Claimant did see medical staff for his health issues.

Defendants' response to the claim is essentially a motion to dismiss. Defendants have submitted no medical or other records. They simply have placed the burden on Claimant to prove that he should prevail on his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant checked only the box for mobility impairment. Claimant does carry the burden to establish that he was mobility impaired while in DOC custody on August 27, 2003.

In order to establish a claim, a claimant must provide evidence that he or she has a permanent disability that will not improve within six months. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The Settlement Agreement is binding upon the Special Masters, and there is no discretion to expand the categories of disabilities or the definitions of those disabilities.

Claimant was not confined to a wheelchair on August 27, 2003. Further more, Claimant has alleged and substantiated that he has problems in his back and shoulders. Claimant has not alleged that he has a permanent lower extremity condition. In addition, there are no allegations or evidence that Claimant was unable to climb a flight of stairs without stopping or walk one hundred yards without stopping. Claimant has medical issues, but they are not covered by the Settlement Agreement. Claimant is not mobility impaired as set forth in the definition established by the Settlement Agreement.

The Special Masters are bound by the provisions of the Settlement Agreement. The Special

Masters cannot expand the definition for a disability or add a disability. Claimant has shoulder problems. He does not have a lower extremity condition that is permanent and that affects his ability to walk. Claimant is not part of the class, because he does not fall within the mobility impaired definition. Claimant retains the right to file a separate lawsuit if he believes that he had a disability on August 27, 2003 and was subjected to discrimination because of his physical condition on or before that date.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** This question does not need to be reached in light of the no answer to the first question.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be reached in light of the no answer to the first question.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the no answer to the first question.

IT IS HEREBY ORDERED that the claim of Riley R. Vigil is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 18, 2006.**

SIGNED this 27th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master