IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-080
Category II
Claimant: Paul M. Huskey, #97873
Address of Claimant: 209 Colorado Avenue, Arriba, CO 80804

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Paul M. Huskey (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time that he filed his claim. He has discharged his sentence and is no longer under DOC control.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response.

Claimant advised the Special Master that he had been diagnosed with cancer. Claimant was granted the opportunity to have a hearing to allow further presentation his claim, due to his health condition. Claimant did not respond to that offer. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 23, 1998. At the time that Claimant filed his initial claim form, he was incarcerated at the Huerfano County Correction Center (HCCC) in Walsenburg, Colorado. HCCC is a private correctional facility operated by Corrections Corporation of America (CCA). DOC does contract to place Colorado prisoners in HCCC and other CCA facilities.

Claimant checked the boxes for mobility impairment and diabetes on his initial claim form. Claimant stated, in part, as follows:

> I am a diabetic and have to control my blood sugar by special diet, I also have been diagnosed in January, 1999 for Hepatitis B and C. In August, 2002, I began having severe pains in my feet. This has been ongoing since. The pain at times is unbearable and the only relief is medication. I can only stay on my feet so long and when walking there is times that it can be very painful. In the course of providing the medical treatment, the process has been always postponing. Since August of 2002 I have been waiting to see a podiatrist, and yet have seen one.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> In August 0f 2002 I was incarcerated at the Kit Carson Correction Center (CCA). I had serious pains with my feet, at the time Ms. Hill the nurse employed at KCCC prescribed medication and told me not to wear the boots and issued medical shoes until she could arrange for a Dr. appointment with Dr. employed at KCCC. When seen by Dr. Rand, he requested that I be seen by a podiatrist and that a referral would go to Dr. McGary at CDOC for approval. On June 11, 2003, I was sent to the Phoenix Center (community corrections). Let me remind you that I still haven't seen a podiatrist or heard anything about seeing one.

Claimant also stated that he had worn shoes without arch supports for seven months and was denied medical shoes at HCCC. Claimant further stated that "I will be disabled and have no funds to pay for medical attention for my foot." Claimant was discharged on June 6, 2004.

In a letter attached to his claim form, Claimant stated, in part, as follows:

> I have been punished for being disabled. I was regressed back with no write ups, I have been in pain since May of 2002. I have taken every measure to be provided the medical treatment, and I could not be provided the medical shoes here at HCCC and yet every prison staff knew that I was put at risk by me wearing shower shoes since my arrival at HCCC. My condition has gotten worse.

Claimant submitted supplemental forms and a number of his medical records. In the supplemental form for diabetes, Claimant detailed problems that he had experienced. He has been weak and dizzy. He had problems with a correct diet and had been hospitalized because of out of control blood sugar levels. He was regressed back to a DOC facility because of problems related to his diabetes. Claimant indicated that he did not receive the appropriate diet at HCCC and became ill as a result.

In his mobility supplemental form, Claimant detailed his inability to receive medical shoes. He wore shower shoes at HCCC all the time, even when going to the chow hall and educational programs.

The medical records submitted by Claimant generally support his claims. His foot problems appear to be related to his diabetes and were causing significant problems. Claimant was able to receive medical shoes at KCCC, but not at HCCC. Requests were made by medical staff for a consultation with a podiatrist or orthopedic specialist.

On June 10, 2002, a medical provider noted that Claimant could wear his shower shoes until such time that he could save money for proper shoes. Claimant never saw a podiatrist or orthopedic specialist before his discharge. The only entry in any document was the response to a Step III grievance when Anthony DeCesaro stated that "[y]ou were denied a podiatrist visit by Colorado Access because your condition did not interfere with your daily living activities."

Defendants' response to the claim is basically a motion to dismiss. Defendants have submitted no medical or other records. They simply have alleged that Claimant has not met his burden of proof. They argue that the claim should be dismissed.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined.

**Diabetes:** Claimant has presented sufficient information to conclude that he suffered from diabetes on or before August 27, 2003 while in DOC custody. Claimant is a member of the class as a diabetic.

**Mobility Impaired:** Claimant has indicated on his claim form that he is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not proven or alleged that he was in a wheelchair at any time while in DOC custody.

Claimant has described significant problems with his feet and walking. Part of his lower extremity problems is related to his diabetes. He also had arch and bone problems that were causing limitations on walking. Defendants have presented no counter evidence to that submitted by Claimant. The Special Master determines that Claimant was also mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant has set forth a scenario of denial of basic necessities. Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996).

Claimant requested an appropriate diet consistent with his diabetes. He did not receive that at HCCC and at Phoenix House.[2] The medical records reflect that staff at KCCC and HCCC believed Claimant should be seen by a podiatrist or orthopedic specialist. That never occurred. The denial by Colorado Access, the medical management company then hired by DOC, was not based on any medical evaluation that has been presented as to this claim. A reasonable inference from what Claimant has presented is that any requests for an evaluation were denied in hopes that Claimant would discharge.

Basic medical care means just that. Physicians at KCCC and HCCC requested referrals to a podiatrist or orthopedic specialist because neither could provide the care that they believed was necessary. This is not a case where there might be a dispute concerning the quality of medical care that would be governed by *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Claimant never received a referral that was deemed necessary by two physicians. Claimant was discriminated against because DOC did not want to pay for a consultation. Such consultation might have led to additional medical procedures at some cost.

Finally, the issue of medical shoes is beyond the understanding of this Special Master. It was determined at KCCC that Claimant needed medical shoes. Those shoes were taken from him at HCCC, but he was allowed to wear shower sandals. He was authorized to have soft sided shoes, but only if he paid for them. Claimant stated that he had no funds to buy shoes that were deemed medically important.

---

[2] Phoenix House is a community placement and is not part of the DOC system. The Special Master finds that Phoenix House did not provide appropriate care for Claimant, but is not subject to the provisions of the Settlement Agreement.

The Special Master finds in this case that Claimant was denied basic health and living necessities. That denial was based upon financial considerations, which denied Claimant his right to equality of treatment under the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant is battling cancer, and there is no evidence that disease was related in any way to his treatment while in DOC. Claimant did not receive medical treatment and other necessities of life, and Claimant is entitled to $700.00 for compensation.

IT IS HEREBY ORDERED that the claim of Paul M. Huskey is granted to the extent set forth in this Order; and

IT IS FURTHER ORDERED that Paul M. Huskey is awarded $700.00 for damages suffered while in DOC custody in violation of the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 17, 2006.**

SIGNED this 27th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master

7