IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-414
Category II
Claimant: William S. Collier, Jr., #76298
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on the claim of William S. Collier, Jr. (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Limon Correctional Facility (LCF) in Limon, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant has filed a reply to the motion of Defendants. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially
> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals claiming mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss. All reasonable allegations of Claimant must be accepted as true for purposes of the motion.

Claimant came into DOC custody on April 24, 2001. In his initial claim form, Claimant checked only the box for mobility impairment.

Claimant alleged in his initial claim form, in part, as follows:

> I suffer from severe cartilage damage at the L5-S1 vertebraes in my lower spinal column. I cannot live a normal life because this injury does not allow me to stand or walk on my feet for any length of time without immense pain!

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> From 5-?-01 to 4-6-04 it took me until I had acknowledgment of my stated condition. I had to file untold numbers of requests for help in the form of medical slips request kites, letters, grievances, visits with the medical departments. Length of "time" between each examinations and over all. I had to exhaust the grievance process.

Claimant was sent a supplemental form but did not return that form to the Special Master.

Defendants' motion to dismiss alleges that Claimant has failed to allege a sufficient basis upon which he can receive relief. Defendants did not submit any medical or other records with the motion.

Claimant filed a letter as a reply to the motion. Claimant indicated in the letter that he has received medical care and that his medical problems have been resolved through surgery. He indicated that he considered dropping his claim but decided not to because of the treatment that he and others receive from medical care providers.

### III.

The Special Master must examine the motion in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant did have lower back problems. He has indicated that his condition was improved through surgery.

The initial question to be answered is whether Claimant met the definition of mobility impaired, as set forth in the Settlement Agreement, on August 27, 2003. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The Special Master is bound by this definition and may not expand or change it.

Claimant has provided no evidence or allegations that he was in a wheelchair full or part-time on August 27, 2003. Claimant does not meet this part of the definition for mobility impaired. In order to meet the second part of the definition, a claimant must establish that on or before August 27, 2003 he had a permanent lower extremity condition that substantially affected walking. The Settlement Agreement further provides examples that an individual could not walk more than one hundred yards without stopping or had to stop when climbing a flight of stairs.

Claimant has not alleged or established that he falls under the second part of the definition. He had a long-term chronic condition in his back. There is no evidence or allegation that Claimant

was unable to walk more than one hundred yards without stopping or climb a flight of stairs. Claimant was in pain on a full-time basis prior to his surgery, but his condition does fit under the definition for mobility impaired as set forth in the Settlement Agreement. A back problem is not a lower extremity condition, and the Special Master is jurisdictionally bound by the definitions in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was disqualified from programs or services for other reasons, such as disciplinary problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be reached in light of the no answer to the first question.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be reached in light of the no answer to the first question.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of William S. Collier, Jr. is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 17, 2006.**

SIGNED this 27th day of June, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master