IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-00343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

**DEFENDANTS' RESPONSE TO "PLAINTIFF CLASS MOTION FOR ORDER CONCERNING DISCLOSURE OF FUNDS PAID TO CLASS MEMBERS" (DIRECTED TO THE HONORABLE JUDGE KANE)**

Defendants, through the Colorado Attorney General, respectfully submit the following Response to "Plaintiff Class Motion for Order Concerning Disclosure of Funds Paid to Class Members."

1. In certain cases, the Colorado Department of Corrections ("CDOC") is required by Colorado law or CDOC policy to garnish a portion of deposits into an inmate's banking account to pay the offender's debt.

2. Many inmates owe restitution and other debts arising from their underlying crime and criminal proceedings. When an inmate owes court-ordered child support, or restitution, costs, or other fees arising from a criminal case, the CDOC is required by state law to deduct at least twenty percent from all deposits into the inmate's bank account for payment toward the inmate's outstanding balances. § 16-18.5-106, C.R.S.; CDOC Administrative Regulation ("AR") 200-15, IV-A, available at http://www.doc.state.co.us/admin_reg/PDFs/0200_15.pdf, attached as Exhibit A. "At a

minimum, the executive director shall order that twenty percent of <u>all deposits</u> in an inmate's bank account, including deposits for inmate pay, <u>shall be deducted and paid toward any outstanding order from a criminal case or for child support</u>." § 16-18.5-106(2), C.R.S. (emphasis added).  Such orders could include costs, surcharges, restitution, time payment fees, late fees, and any other fines, fees, or surcharges listed in 16-18.5-110, C.R.S., resulting from a criminal case or for child support. <u>Id.</u>; 16-18.5-110, C.R.S.  This mandated deduction will not occur if the inmate owes no child support and has no court-ordered debts resulting from a criminal conviction.

       3.      The CDOC will also deduct a portion of deposits into an inmate's account when ordered to do so by a state or federal court; for example, when the U.S. District Court orders an inmate to pay the filing fee for a civil lawsuit filed by the inmate.

       4.      If an inmate owes unpaid debts to the CDOC—that is, the inmate has a negative account balance—then 50% of all deposits into the inmate's account are deducted until the inmate has paid off his or her negative balance. <u>See</u> AR 200-02, available at <u>http://www.doc.state.co.us/admin_reg/PDFs/0200_02.pdf</u>, attached as Exhibit B.  This policy allows the CDOC to recoup any debts the inmate owes to the CDOC.

       5.      In addition, Colorado law authorizes the State Controller to withhold a portion of funds paid by the State to recoup debts owed to State agencies for unpaid taxes, unpaid student loans, and other unpaid debts owed to the State or any State agency. <u>See</u> § 24-30-202.4, C.R.S.  It is undersigned counsel's understanding that the State Controller has not exercised this authority regarding any of the awards or settlements paid to claimants in the <u>Montez</u> class action.

6. Both state and federal courts have upheld the CDOC's authority to deduct portions of deposits into an inmate's account to pay off that inmate's debts. See, e.g., Scott v. Case Manager Owens (SCF), 80 Fed.Appx. 640, 642-44 (10th Cir. 2003) (unpublished) (rejecting as frivolous inmate's constitutional challenges to the CDOC's policy of deducting a portion of deposits where the inmate has a negative account balance); People v. Lowe, 60 P.3d 753, 755-56 (Colo. App. 2002), cert. denied, (Colo. 2002) (rejecting constitutional challenges to Colorado's inmate restitution statute, § 16-18.5-106, C.R.S.).

7. These state laws and CDOC policies apply equally to all inmates. Whether or not an inmate is disabled or is a Montez claimant has no bearing on what, if anything, is deducted from deposits into an inmate's account. Indeed, it is doubtful whether CDOC staff know when a specific deposit is related to the Montez case. These policies do not treat Montez claimants differently than other inmates.

8. An inmate who owes unpaid debts—whether in the form of child support, court-ordered victim restitution, or a negative inmate account balance—will have a portion of all deposits into his or her inmate account deducted until the debt or debts are fully paid. On the other hand, an inmate who owes no court-ordered debts, no child support, and no debts to the CDOC, will receive 100% of any deposits into his or her inmate account.

9. These state laws and CDOC policies were in effect in August 2003 when the parties entered into the Remedial Plan. Nothing in the Remedial Plan altered the CDOC's non-discriminatory inmate banking policies. Nothing in the Remedial Plan, any Final Orders, or any individual settlement agreements exempts Montez claimants from

their financial responsibilities imposed by Colorado law and CDOC regulations. Consequently, the application of the CDOC's inmate banking policy has no relevance to whether the CDOC is in substantial compliance with the Remedial Plan.

10. Class Counsel seeks "to discover and obtain information related to the actual amount of money tendered to each member of the Plaintiff Class who obtained a settlement or order awarding him or her money for the resolution of his or her damages claim." (Plaintiff Class Motion, p. 2). As noted above, state law and CDOC policy on inmate banking apply equally to all CDOC inmates. Nothing in the Remedial Plan exempts Montez claimants from these laws and policies. Because the CDOC's inmate banking policies have no bearing on whether the CDOC is in substantial compliance with the Remedial Plan, Class Counsel's discovery motion is not likely to produce relevant or admissible information. Therefore, Class Counsel's motion should be denied.

11. Finally, King & Greisen did not represent any of the individual claimants who have been awarded money or have settled their claims. "Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any individual with respect to their individual damage claim." Remedial Plan, § XXXII, p. 29. None of the claimants who have so far received money as part of the Montez case, whether by award or settlement, were represented by King & Greisen. Because King & Greisen did not represent these claimants in their individual damages claims, they have no right to information from these inmate's banking records.

4

WHEREFORE, because Class Counsel's motion is not likely to lead to admissible information relevant to whether the CDOC is in substantial compliance with the Remedial Plan, Defendants respectfully request that this Court deny the Motion.

Respectfully submitted this 5th day of July, 2006.

>JOHN W. SUTHERS
>Attorney General
>
>
>s/ Jess A. Dance
>JESS A. DANCE, 35803*
>Assistant Attorney General
>Civil Litigation & Employment Law Section
>Attorney for Defendants
>
>Colorado Attorney General's Office
>1525 Sherman Street, 5th Floor
>Denver, Colorado  80203
>Telephone:  (303) 866-5165
>Fax: (303) 866-5443
>Email: jess.dance@state.co.us

## CERTIFICATE OF SERVICE

I certify that on the 5th day of July, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Paula Greisen | David H. Miller |
| greisen@kinggreisen.com | David.Miller@qwest.com |
| King & Greisen, LLP | 1801 California St., Ste. 900 |
| 1670 York St. | Denver, CO 80202 |
| Denver, CO 80206 | |

*Courtesy Copy To:*

Cathie Holst

>s/ Jess A. Dance

5