IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

———————————————————————————————————————

Claim Number 02-192
Category II
Claimant: Jessie Butler Joniak, #108581
Address of Claimant: 23615 'b' Barten Way, Ellicott, CO 80839

———————————————————————————————————————

**FINAL ORDER OF SPECIAL MASTER**

———————————————————————————————————————

      THIS MATTER comes before the Special Master on the claim of Jessie Butler Joniak (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time that she filed her claim. She has been placed on parole and is no longer in a DOC facility.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on March 19, 2001. She was released on May 18, 2001. She returned to DOC custody on September 29, 2003. She has since been paroled.

Claimant checked only the mobility impaired box on her initial claim form. She stated, in part, as follows:

>I came into Colorado DOC with a back injury that occurred 1-27-01. I could not get proper physical therapy or medical care until I went to community. The 6 month break in medical care caused loss of mobility in lower back, right hand and wrist and shoulder. I have permanent work restrictions that DOC does not honor. I am in constant pain. This has caused depression for which I now take Prozac. I am

3

>force to work at jobs that cause me more pain and suffering and don't fall under workmen's comp restrictions. DOC has not given me any work for 5 months although I kited and grieved medical many times. X-rays that were ordered in Nov. 03 were not done until 4-16-04.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>I came in with a documented injury and was not treated. All my medical records were released to DOC in 3-01. This lack of care limited my ability to settle damages with employer and workmen's compensation. It also limited workmen's compensation liability for damages.

Claimant submitted a supplemental form for mobility impairment. In that form, she stated, in part, as follows:

>Right hand wrist, elbow and shoulder are constantly swollen and painful. Cannot lift objects or lift right arm over head or above shoulder without stabbing pain in mid shoulder and lower back. Makes it hard to walk to and from work and activities. Impossible to play sports.

Defendants file a response to the claim. They have disputed that Claimant is a member of the class. Defendants submitted some of Claimant's medical records. As noted previously, Claimant was given the opportunity to file a reply to the response of Defendants, but she has not done so.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined. In addition, a claimant must show that she was disabled on or before August 27, 2003. It was on that date that Judge Nottingham approved the Settlement Agreement and established the class.

Claimant has indicated on her claim form that she is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There has been no evidence submitted by either side that Claimant was in a wheelchair at any time while in DOC custody. Claimant does not meet the first provision for mobility impairment.

Claimant has not established that she had a permanent lower extremity condition that affects walking. Claimant has established that she had a work related injury on January 21, 2001. She

received treatment through workmen's compensation. The report of March 8, 2001 from Dr. Michael Sparr, M.D. details the nature of the injury. Dr. Sparr further believed that symptom magnification existed.

Claimant was in DOC custody from March 19, 2001 to May 18, 2001. Her return to DOC custody was on September 29, 2003. This was after the approval of the Settlement Agreement. Claimant may only include post-settlement actions of DOC if she can establish that she had a disability as defined by the Settlement Agreement on or before August 27, 2003 and was subjected to discriminatory conduct prohibited by the ADA and Rehabilitation Act. Claimant has not done that.

Claimant has not established that she had a lower extremity condition during the initial period that she was in DOC custody. Shoulder, arm, wrist and back injuries are not covered by the Settlement Agreement. Claimant may have the right to bring a separate lawsuit concerning these conditions, but she cannot pursue her claim through this case as she does not fall under the definition of mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since Claimant is not a member of the class, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to answered, as Claimant is not a member of the class.

IT IS HEREBY ORDERED that the claim of Jessie Butler Joniak is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 6th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master