IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-525
Category II
Claimant: Susan J. Beemer, #104342
Address of Claimant: PMC, P.O. Box 3, Pueblo, CO 81003

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Susan J. Beemer (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Pueblo Minimum Center (PMC) in Pueblo, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants, but she has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss. All reasonable allegations of Claimant must be accepted as true. Defendants' motion cannot be granted unless Claimant cannot prevail on her claim, with all allegations accepted as true.

Claimant came into DOC custody in July, 2000. Claimant was placed initially at the Denver Regional Diagnostic Center (DRDC). She then was placed at the Colorado Women's Correctional Facility (CWCF) in Canon City, Colorado. Claimant was then transferred to PMC.

In her initial claim form, Claimant checked the boxes for mobility impaired, hearing impaired, and vision impaired. Claimant stated, in part, as follows:

> I am hearing impaired and since my incarceration my hearing has decreased significantly due to chronic ear infections. My allergy to dairy products causes my infections and I have always struggled to get a non-dairy diet in this facility. I do not hear all announcements and worry of getting a write up as a result.
> I also wear glasses. I currently have purchased my own light weight transitional glasses. I need these due to the fact that I have had 6 major surgeries on R ear and mastoid (skull). I need permission to keep the glasses as DOC is threatening to take them.

In response to the question on discrimination by DOC and its staff, Claimant stated as follows:

> Medical has worked with me to find an allergy pill to maintain a healthy ear environment - but the kitchen staff has not honored my non-dairy diet. I have been very patient for 4 years. I am now in a step 1 grievance. I am needing help to get the point across to any facility I go to.

Claimant filed a supplemental form for hearing impairment. In this form, Claimant stated, in part, as follows:

> I have very little hearing left in my right ear. And my left ear has diminished some also. Do to an ear infection left untreated for 8 mos. I now have constant ringing in my R ear. At the time I feared death since I have had a long history of ear infections and was warned by my ENT an infection left untreated could kill me.

Claimant indicated in this form that she had difficulty understanding messages sent over the loud speaker system.

Claimant submitted some medical records and other documents in support of her claim. A letter from Dr. Don Schilling, M.D. in April, 2001 verified that Claimant had significant ear

4

problems over the years. She had received a tube after mastoid surgery. Claimant did see a Dr. Howe, M.D. for ear drainage in April, 2001. Dr. Howe verified that ear problems continued. Claimant also submitted a audiogram from Dr. Victoria King, M.D. which reflected some hearing loss, particularly in the right ear. In her letter of January 30, 2002, Dr. King stated that audiogram showed "normal hearing in the left ear" and '[t]he right ear shows normal bone thresholds with a complete conductive gap of 55 decibels in the low frequencies."

### III.

In their motion to dismiss, Defendants have argued that Claimant cannot prevail as she is not part of the class. Each of the claimed disabilities will be examined separately.

**Mobility Impairment:** Claimant checked the box on the claim form for mobility impairment. The Settlement Agreement provides a very narrow qualification for mobility impairment. Permanent mobility impairment is limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

A review of all documents submitted by Claimant reflects no discussion or allegations concerning mobility impairment. Claimant does not fall under the definition of mobility impairment, as she has not alleged any mobility impairment issues.

**Vision Impairment:** Claimant has alleged that she wears glasses. She has expressed concern that DOC staff are contemplating taking her glasses that she had privately purchased.

The Settlement Agreement provides the following definition for vision impaired.

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant would have to be legally blind to meet this definition. At the writing of this order, not one claimant has met the criteria.

Claimant is not legally blind. She may have some vision problems, but she does not meet the criteria of the Settlement Agreement for vision impairment.

**Hearing Impairment:** There is no question that Claimant has had significant problems with her ears, particularly her right ear. The infections have led to legitimate concerns about her ability to hear from the right ear.

The Settlement Agreement provides the following definition for hearing impairment:

> 2. Permanent Hearing Impairments

5

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

The definition is extremely narrow and requires that a claimant be deaf. It further requires that a claimant be able to communicate only through lipreading, signing or written communication.

The medical documents submitted by Claimant indicate that hearing in the left ear is within normal limits. Hearing in the right ear is reduced, especially in the lower decibel ranges. The materials submitted by Claimant reflect that she is able to hear and communicate through speech. Claimant has not alleged that she uses a hearing aid.

Accepting as true everything that Claimant has submitted, she does not fall under the definition of hearing impaired set forth in the Settlement Agreement. The Special Master is bound by the definition and may not expand it. Claimant may have a disability that would be subject to the protections of the ADA, but she is not hearing impaired as set forth in the Settlement Agreement.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Susan J. Beemer is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 6th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

6