IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-194
Category III
Claimant: Hector Martinez-Jimenez, #106871
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master on May 30, 2006 for hearing. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

Present were the following: Hector Martinez-Jimenez (Claimant) and Brooke Meyer, attorney for Defendants. Claimant testified in his own defense and offered into evidence Exhibits 1 and 2. Both were admitted. Defendants called Dr. Orville Neufeld, D.O. and Darrell Snyder as witnesses. Defendants offered into evidence Exhibits A through M, and all were admitted. After closing arguments, the case was taken under advisement. This order will constitute final resolution of this claim.

The Special Master would note that Claimant is a citizen of Guatemala. He speaks almost exclusively Spanish. The Special Master does speak Spanish and received assistance from a DOC correctional officer who was bilingual. The language issue created some problems that will be discussed later in this order.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During

the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an

3

appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Since this claim was placed into Category III, Claimant was entitled to a hearing. The Special Master has reviewed the testimony presented, all exhibits submitted, and all written documentation filed prior to the hearing.

Sorting out all of the facts necessary for resolution of this claim has not been easy. Claimant acknowledged at the hearing that some of the documents he has submitted were written by fellow inmates, as Claimant has limited use of the English language. Some of documents are difficult to follow and may not provide a complete picture of Claimant's condition and issues. At the hearing, it was difficult to keep a focus on a specific question or issue. Likewise, it was difficult to discern the facts that are relevant to any claim, as this case is governed by the ADA and Rehabilitation Act.

The following are the facts necessary for resolution of this claim. Claimant came into DOC custody in January, 2000. As mentioned previously, Claimant is a citizen of Guatemala. He is facing deportation upon parole or discharge of his sentence. When Claimant came into DOC custody, he was placed at the Denver Reception and Diagnostic Center (DRDC). Claimant is a diabetic and that was noted at DRDC. Claimant was at that facility for only a short time

Claimant then was placed at the Kit Carson Correctional Center (KCCC) in Burlington, Colorado.  He was at KCCC for approximately thirteen months. While at KCCC, medical staff provided medical shoes to Claimant because of concerns with his diabetes. His medicine was changed to a new drug which created problems for him. Medical staff kept changing and there was no continuity. Claimant was not able to get consistently a diabetic meal even though DOC knew he was diabetic.  His blood sugars became very high.

Claimant was then transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. While at FCF, Claimant was assaulted while in his cell. Claimant had problems with stitches and began to experience vision difficulties. Claimant also was experiencing problems with his right ear, as he has no ability to hear with that ear. Claimant also indicated that his left ear has some hearing loss. Claimant did get ill for a period of time and was transferred to the infirmary at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was hospitalized due to problems with his diabetes.

Claimant was asked at the hearing concerning discrimination that he was subjected to while in DOC that was related to his disabilities. He indicated that in 2005 he was placed into a classroom with a new teacher. He could not hear her and ultimately was written up for a purported violation. Claimant believed that this write up was inappropriate. He was also removed from the class.

Claimant testified that he was transferred to work in the kitchen at SCF. It was difficult for him to work in the kitchen. He fainted at one point while working at the dishwasher.

Claimant also testified that in August, 2003 he was denied a bottom bunk, though he had received such a restriction in the past. He also that he did not get his diabetes medication. He also had a hard time getting the proper meal for his diabetes. He has been eating the kosher diet, as it was healthy and tasted better than the diabetic diet.

Dr. Orville Neufeld, D.O. testified for Defendants. He had reviewed all of Claimant's medical records. Dr. Neufeld testified that Claimant's medical records reflected that he is able to hear. Claimant's vision has been checked. The examinations indicated that Claimant is not blind. Dr. Neufeld testified that Claimant was diabetic when he entered into DOC custody. Claimant's medical records reflect that diabetic diets have been offered while he has been in custody. The records reflect that Claimant has not complied with the appropriate diets.

Dr. Neufeld described Claimant's diabetes as troublesome. The diabetes is "brittle" and subject to changes. It is a problem and will continue to be. Claimant will have to work to keep his blood sugar levels under control. On cross-examination, Dr. Neufeld testified that Claimant has a hearing loss.

After the hearing was completed, the Special Master reviewed all medical and other records submitted by both sides. There is no question that Claimant has been diabetic for years. This diagnosis predates Claimant's custody in DOC. The first medical note from Denver Health Medical Center (DHMC) is dated January 23, 1996. Claimant had been in South Dakota before coming to Colorado. The initial medical notes from DHMC reflect that Claimant was diabetic and suffered other medical problems. DHMC staff noted in 1997 that Claimant had difficulty communicating with Spanish-speaking staff and became repetitive in his discussions. The notes reflect a diagnosis of Type II diabetes and knee problems. The medical notes also reflect a concern because of depression and possible psychosis.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each question will be taken separately.

A claimant must establish that he was in DOC custody on or before August 27, 2003. The claimant must establish that he was disabled on or before that date and had been subjected to discrimination that was prohibited by the ADA and Rehabilitation Act.

**1. Is the Claimant a disabled individual who is a member of the class?**  In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set

forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only claimants who are suffering extreme eyesight problems.

Claimant may have some vision problems. He is able to see. There is insufficient evidence to establish that Claimant falls into the narrow category of vision impairment. The definition is one that must be followed by the Special Masters. Claimant does not meet the definition in the Settlement Agreement.

**Hearing Impairment:** The criteria for hearing impairment is narrow. A claimant must show the following:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

Claimant has had problems with his ears. His hearing has been affected, but he is not deaf. There was no evidence that Claimant had to use lip reading, signing or written communication. Claimant was able to communicate orally at the hearing. Claimant does not meet the narrow criteria for hearing impairment.

**Diabetes:** There is no question that Claimant is diabetic. That is acknowledged by Defendants. Claimant is determined to be a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as multiple disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** With one exception, the answer to this question is no. Generally, there was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act.

Claimant has received medical and vision care. He has had concerns about that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v.*

*Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant testified that he had difficulty obtaining an appropriate diet at KCCC. He had to eat regular meals and could not receive a diabetic tray. Though there was conflicting testimony concerning Claimant's adherence to a proper diet, the Special Master finds that Claimant did not receive appropriate diabetic meals during his stay at KCCC.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has established his claim only to the extent of the denial of a diabetic diet at KCCC for a period of time. This denial of a diabetic diet caused Claimant harm. The Special Master determines that damages in the amount of $100.00 would be appropriate.

IT IS HEREBY ORDERED that the claim of Hector Martinez-Jimenez is granted, but only as to the time when he did not receive consistently a diabetic diet at KCCC; and

IT IS FURTHER ORDERED that the remainder of the claim of Hector Martinez-Jimenez is dismissed, because he has failed to prove by a preponderance each of the criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant is awarded damages of $100.00 for the denial of his diabetic diet at KCCC; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 6th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

7