IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-224
Category III
Claimant: Ronald Frazier, #58407
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master on June 16, 2006 for hearing at the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Ronald Frazier (Claimant) and Berina Ibrisagic, attorney for Defendants. Claimant presented James Riley as a witness and also testified himself. Claimant offered no exhibits. Defendants offered into evidence Exhibit A, and it was admitted. After closing arguments, the case was taken under advisement. This order will constitute final resolution of this claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

only the jurisdiction agreed upon by the parties.

2

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Since this claim was placed into Category III, Claimant was entitled to a hearing. The Special Master has reviewed the testimony presented, all exhibits submitted, and all written documentation filed prior to the hearing.

Claimant came into the custody of DOC in 1997. Claimant was originally placed at the Denver Reception and Diagnostic Center (DRDC). After various tests and evaluations, Claimant was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant was at CTCF for two weeks.

DOC then placed Claimant at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Claimant was at AVCF for about six months. He then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He was at LCF for eight years and recently was transferred to FLCF.

Claimant testified that he has diabetes. His blood sugar readings have been controlled through diet and exercise. He has not had to take medications regularly for his diabetes. Claimant testified that he wanted to be able to use a finger stick daily to insure that his blood sugars were not out of control. He testified that he was being charged $5.00 for a medical visit when he sought a finger stick. Claimant was diagnosed with diabetes in 1999.

Claimant testified that he had a tendency to run low blood sugar counts. He has experienced emotional distress and is often paranoid. He has not received what he believes to be appropriate education concerning his diabetes.

Since being diagnosed with diabetes, Claimant has started to have problems with his feet. He has requested a referral to a podiatrist for his condition, but that has been denied. Claimant is not able to walk on some days. Claimant asked for and was denied medical shoes.

As to his vision problems, Claimant testified that he has "floaters." These are small items in the eye that float and obstruct vision. Claimant has requested to see a specialist but has not been able to do so. He has seen an optometrist, but wishes to have an examination by a ophthalmologist who is a medical doctor.

Claimant testified further that he has a skin disease. He has received some medicine for the condition. Claimant would like to have a second opinion from a specialist as to his diabetes and skin care.

Claimant testified further that he is mobility impaired. Claimant has a hard time getting around at his facility. There are days when he alleges that cannot walk. It is generally hard for Claimant to get around. His feet hurt continually.

Claimant testified that the co-payment program is not fair. He is a chronic patient and should

only be charged $5.00 each six months. Claimant testified that he does not have sufficient income to secure all that is needed. He was identified as a chronic patient status at LCF.

Claimant testified that he was on a diabetic diet but that it was awful. He described some food as "not consumable." He finally switched to a kosher diet that provided some relief to him. Also Claimant had difficulty in getting enough exercise during a given week. He described his pain as unbearable.

When Claimant arises in the morning, some days his vision will remain blurred for a couple of hours. Claimant also described a vertigo-type sensation when everything appears to be moving.

On cross-examination, Claimant testified that he is not getting proper medical care at FLCF. He only gets finger sticks two times per week. He has not been placed on any medications at FLCF, He has been receiving snacks. He was not able to bring a snack to all of his employment sites at the facility.

Claimant stated in response to a question from Defendants' counsel that he had not been denied a job at any DOC facility because of his health issues. Defendant was not employed in a facility job at the time of the hearing. Claimant had been advised to purchase soft soled shoes from the canteen. Claimant stated again that the pain is unbearable and that he would like to get opinions from specialists concerning his medical care.

In rebuttal testimony, Claimant testified that something has happened to his kidneys. He believes that this is the result of his diabetes.

James Riley testified for Claimant. Riley is an inmate at FLCF and is diabetic. He explained that treatment for diabetics has not been appropriate. There has been little education which would make a difference for inmates. He has had trouble with his shoes and feet.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined.

**Vision Impairment:** The Special Masters are bound by the categories and definitions set forth in the Settlement Agreement. Having an eye problem is not, in and of itself, sufficient to establish a vision impairment.

The Settlement Agreement provides that a vision impairment means "[i]nmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." This definition is very narrow and would include only

claimants who are suffering extreme eyesight problems.

Claimant may have "floaters" and some additional issues with his vision. He is able to see. Claimant does not fall into the narrow category of vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** The Settlement Agreement provides a narrow definition for mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Claimant has not used a wheelchair while in DOC custody. He does not have permanent lower extremity condition that limits his mobility. Claimant is able to walk and climb steps. His problems with his feet are related to his diabetes. Claimant does not meet the criteria for being mobility impaired.

**Diabetes:** There is no question that Claimant is diabetic. That is acknowledged by Defendants, though they dispute that any major life activity has been affected by the diabetes. For purposes of this order, the Special Master finds that Claimant is a diabetic and is a member of the class for that reason.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as multiple disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The testimony of Claimant reflected that he had some problems with his physical condition but had been fortunate in being able to control his blood sugar levels with exercise and diet. Claimant's complaints are with the medical care that he has received over the years while in DOC custody.

Both sides have submitted copies of Claimant's medical records. Some of the documents are the same. All of the documents reflect that Claimant has received medical care. There is a dispute about the effectiveness of that care and whether something further should be done. Claimant would like access to finger sticks on a daily or more often basis.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by

Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

Claimant has the right to pursue a separate action for medical negligence or malpractice. Under *Fitzgerald*, those issues may not be pursue under an ADA action. Claimant has not established that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on any non-medical issue.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ronald Frazier is denied, as Claimant has failed to prove by a preponderance each of the criteria set in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 18, 2006.**

SIGNED this 6th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master