In The United States District Court

For the District of Colorado

Civil Action No 92-N-870 (OES) (Consolidated for all purposes with Civil Action No 96-N-343)

Jesse (Jesus) Montez, et al.,
Plaintiffs

Vs

Bill Owens, et.al.,
Defendants

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 7 - 2006

G_____ C. LANGHAM
CLERK

---

Claim No 03-146
Category III
Claimant: Gerald Sensabaugh Doc #100656
Address: C.S.P. P.O. Box 777 Canõn City, CO. 81215-0777

---

Motion For Further Relief (enforcement)

---

Comes Now Gerald Sensabaugh Plaintiff/Claimant Pro-Se and Respectfully Submits the Following For the Courts Consideration and guideance.

## BACKGROUND

This litigation was commenced in 1992 Against then Governor Roy Romer and various officals of the Colorado Department of Corrections (D.O.C.). The case was Brought under the Americans with Disabilities Act 42 USC § 12101 and the Rehabilitation Act 29 USC § 794. During the Summer of 2003 the parties began the process of trying to reach a settlement of all issues. The Court was

1

advised that a settlement had been reached between members of the class and defendants. Judge Nottingham set the case for a fairness hearing.

On August 27 2003 the Remedial Plan (A.K.A. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General Inconvenience or Nominal Damages;
II. Damages due to the loss of Good Time, Earned Time, Access to Programs, or Services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as fear of death)
IV. Damages due to severe physical injuries; and
V. Damages due to death.

2

Only one of the categories may be applied to each class member. For instance a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III; Remedial Plan, pp. 28-9

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## STATEMENT OF FACTS

1. Claimant submitted an initial claim on April 2, 2004 and was originally assigned Claim No. 02-055 and placed in Category II pursuant to the Remedial Plan.

2. Claimant filed a supplemental claim for damages due to mobility on May 3, 2004.

3. On July 13, 2005 pursuant to part of a Discovery Order Request the Special Master, elevated Claimant to Category III and Re Assigned him to Claim No. 03-146.

4. Claimant is currently incarcerated in the Colorado State Penitentiary (CSP) located in Canon City, CO. Claimant has been in DOC's custody since 1998, and has also been housed at Burlington (KCCF) Sterling (SCF) and Limon (LCF)

5. A hearing was held by the Special Master (Judge Borchers) at CSP on February 1, 2006 at 10:30 AM

6. The Special Master finds and concludes that the Claimant (Sensabaugh) is disabled and a member of the class and that Claimant has a mobility impairment.

7. Based on the findings of fact and conclusions of law; the Special Master granted my claim.

8. The Special Master in his Final Order that was signed on the 16th of May 2006, ordered that Claimant be provided a

new four inch thick mattress or egg crate mattress; and that Claimant is to be provided new proper fitting tennis shoes to wear, said shoes not requiring multiple pairs of socks to fit; and Claimant is to be awarded the sum of $250.00 (U.S.).

9. Claimant received the Final Order of the Special Master on Friday May 19th 2006 at 9:15pm.

10. Upon receipt of the Final Order I notified the following D.O.C. Personnel;

> Capt. Guy Doubleday Shift Supervisor
> Lt. Wm Beard Case Manager
> Ms. Webster Case Manager
> Lt. Pacheco Laundry Supervisor
> Lt. Jane Doe Dayshift Supervisor E-Pod (name unknown to Claimant at this time)
> Lt. Matthews Dayshift Supervisor B-Pod
> Sgt. John Doe Dayshift E-Pod (name unknown to Claimant at this time)
> Sgt. Jack Doe 2nd Shift E-Pod (name unknown to Claimant at this time)
> Sgt Cruch Dayshift B-Pod
> Sgt Sims Dayshift B-Pod

11. In the order of the mattress, on June 29 2006 at 10:30am I was brought an 8 year old mattress (the date tag was still attached) that had numerous urine stains on it and was reeking of the same, the mattress was so worn out that it was $\frac{1}{2}$ inch thick. The mattress was brought to my cell by Sgt Cruch and Sgt Sims, when I pointed out to them what the Final Order said (I showed them the document.) Sgt. Cruch replied "Tuff! That's the only spare mattress in the facility (CSP) and Capt. Doubleday said to give it to you so your stuck with it!" As I tried to respond they both walked away and left the pod.

4

Case No. 1:92-cv-00870-CMA-MEH   Document 2090   filed 07/07/06   USDC Colorado   pg 5 of 9

This mattress was in my cell for ten minutes and the urine smell was so strong that my eyes were watering and I had to breath thru a cloth over my face. After a 1/2 hour Lt. Matthews came to my cell door and offered me a cleaning rag to clean the exterior of the mattress. I told him the mattress was unacceptable and showed him the Final Order, he said he was aware of it before I showed it to him. After another 1/2 hour the mattress was removed from my cell at which time Sgt Sims stated "you don't take that one, you don't get one." To this day I have not received a mattress. I am currently sleeping on a 1 1/2 inch thick mattress with about 1/2 inch of newspaper under it.

12. In the order of the shoes, on June 20 2006 I had a conversation with Lt Pacheco of the laundry who said "send down your old shoes and I'll send up new ones." I said "size 12 EEE" he said "yes". Two hours later I was given a pair of size 11D shoes. When I contacted staff via the cell intercom I was told there was nothing they could do till Thursday, when I pointed out that I could not get my feet into these shoes the staff told me to go barefoot till they could see about getting me the correct size on Thursday (2 days away). On Thursday I was given a pair of size 13's and told they don't have my size and their not going to special order them, so just wear an extra pair of socks or two to make them fit.

13. I notified Lt. Beard, Lt Jane Doe, Sgt John Doe, and Sgt. Jack Doe all of E-Pod of the Final Order of the Special Master to which they all replyed they don't have to go by that because, D.O.C. Rules say I can't have a second mattress, and as for shoes

5

I'll wear what I'm given or I'll be given a Code of Penal Discipline write up.

14. I was living in E-Pod till June 12, 2006 when I was moved to B-Pod and given a Code of Penal Discipline write up. (of which I'll be found guilty on July 17 2006)

15. In the order of the $250.00, I received a letter dated June 27 2006 from Jess A. Dance for the Attorney General that a check has been forwarded to Inmate Banking; but since D.O.C. does not accept checks and all money sent to an Inmate Account must be made by Electronic Fund Transfer (EFT) as set forth in the Administrative Regulations of D.O.C.. I doubt it was deposited. When I inquired of Ms Webster (casemanager) if I could have a print out of my Inmate Account Statement to verify if the deposit was there she stated "No" when I asked for a reason she walked away.

## ARGUMENT

Since a final order "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgement" CATLIN Vs UNITED STATES 324 US 229 233 65 S.CT. 631 633 (1945); Century Laminating Vs Montgomery 595 F2d 563 (10th Cir 1979).

The final order of the Special Master is clear and specific enough that it can be understood by anyone reading it, and it is clear that the aforementioned D.O.C. employees show a willful disregard with insults to reduce the humaness of the claimant and a refusal to comply with the order that they should be held in contempt and jailed; Rule 70 Fed.R.Civ.P.; Newman Vs The State of Alabama 683 F2d 1312, 1318 (11th Cir 1982) Furthermore the acts committed by the employees

6

of D.O.C. are clearly in violation of the order; Rule 65(d) Fed.R.Civ.P Also see N.L.R.B. Vs Brooke Industries 867 F2d 434,435 (7th Cir 1989); Balla Vs Idaho State Board of Corrections 869 F2d 461,465 (9th Cir 1989); Stotler & Co. Vs Able 870 F2d 1158 1163 (7th Cir 1989).

Since the Defendants have not been Reasonably Diligent, nor energetic in Attempting what was ordered. Aspira of New York Vs Board of Education 423 F.Supp 647,654 (1976); and have further aggravated my condition by increasing my physical pain and causing me to have a more pronounced limp than before as well as the mental anxiety of becoming wheelchair bound for the rest of my life, or even my early death.

Injunctive Relief is designed to deter future wrongful acts. United States Vs W.T. Grant Co. 345 US 629,633 73 S.Ct. 894,897 (1953) the likelihood of future violations is inferred from the totality of circumstances, including the commission of past illegal conduct. SEC Vs Managment Dynamics Inc. 515 F2d 801,807 (1975) See Also U.S. Vs Oregon State Medical Society 343 US 326,333 72 S.Ct. 690 695 (1952). In the light of Defendants past and present violations of the Americans with Disabilities Act it is reasonable to infer that future misconduct will occur by the Defendants.

The Claimant would ask for Injunctive Relief in the form of Compensatory Damages in the amount of Ten Million Dollars (U.S.) Powell Vs Ward 487 F.Supp 917,936 (SDNY 1980) Aff'd As Modified 643 F2d 294 (2nd Cir) Cert Denied 454 US 832 (1981); Welch Vs Spangler 939 F2d 570, 572 (8th Cir 1991); Morales Feliciano Vs Hernandez Colon 704 F.Supp at 20; and Punitive Damages in the amount of Ten Million Dollars (U.S.)

Furthermore the Claimant would ask the Court to exercise its power under Rule 70 Fed.R.Civ.P. and appoint someone to carry out the

7

Final order of the Special Master at Defendants cost; see also 28 USC §1657(a) Also: <u>Plata Vs Schwarzenegger</u> U.S.D.C. (ND Cal) Case No. C-01-1351 TEH.

Under 28 USC § 1961 the Claimant would ask that interest be paid on the monetary part of the Final order from the time of issuance of the Final Order (May 16, 2006) until such time as the Defendants make payment and is verified by the Claimant. The interest to be ten percent a month, and I would ask the Court to enjoin the State from attaching the monetary proceeds of the Final Order of the Special Master. <u>Hankins Vs Finnell</u> 964 F2d at 859-61; <u>Spain Vs Mountanos</u> 690 F2d 742 745-47 (9th Cir 1982); <u>Collins Vs Thomas</u> 649 F2d 1203, 1205-06 (5th Cir 1981); <u>Dallas County, TX Vs Collins</u> 456 US 936 (1982).

Finally I would ask the Court to level coercive fines against the Defendants, and to grant such other relief as it may appear that Plaintiff/Claimant is entitled.

## CONCLUSION

Claimant would ask the Court to grant this Motion for Further Relief (enforcement) in toto, and to have Defendants comply with the Final Order of the Special Master forthwith.

Respectfully Submitted this 2nd day of July 2006

G. Sensabaugh #100656
Claimant Pro Se #03-146

<u>Certificate of Service</u>

I hereby certify that I have mailed postage prepaid, a copy of the foregoing Motion for Further Relief (enforcement); This 3rd day of July 2006, to the following:

Clerk of the United States District Court
901 19th St.
Denver CO 80294

G. Sensabaugh

Mr Jess A. Dance
Office of the Attorney General
1525 Sherman St 5th Floor
Denver CO 80203

Ms. Paula Greisan
King & Greisan
1670 York St
Denver CO 80206