IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 01-020
Category I
Claimant: Terry Benavidez, #82741
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Terry Benavidez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.¹   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

¹The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>> B. QUALIFIED INMATE
>> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>> C. PERMANENT DISABILITY/IMPAIRMENT
>> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
>> 2. Permanent Hearing Impairments
>> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>> 3. Permanent Vision Impairment
>> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1992. Claimant has been housed at a number of correctional facilities. When he filed his claim, he was at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. He now is at CTCF.

Claimant's initial claim form only listed Hepatitis C as the claimed disability. Claimant alleged that he was not provided medicine for his condition. A show cause order was issued to Claimant, as Hepatitis C is not a disability covered by the Settlement Agreement. Claimant alleged in a letter that he had a mobility impairment, and the order to show cause was discharged.

Claimant filed a supplemental form for mobility disability. Claimant stated, in part, as follows:

> Spinal injury to my T-11 vertebrae, herniated lower back 5,6,7 trauma. Fracture that I received while in DOC. Right hand do to my back injury.

Claimant stated that the spinal injury affected his whole life. "I walk with a limp." He stated further that he had numbness in his back. Claimant acknowledged that he had been given a lower bunk restriction, but he believed that he should receive a medical cell.

Defendants filed a response to the claim. Defendants have argued that Claimant was not disabled under the definition in the Settlement Agreement on August 27, 2003. As a result, Defendants argue that he is not a member of the class and cannot pursue his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Claimant has not filed any further pleadings or documents.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The most important question to be answered affirmatively is whether a claimant is disabled and, therefore, a member of the class. The date of disability must be on or before August 27, 2003. A claimant may seek relief for actions after that date, but only if he has a valid claim on or before August 27, 2003.

Claimant has submitted no medical records in support of his claim. He has claimed mobility impairment as the only category he may raise under the Settlement Agreement.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part

time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not proven nor alleged that he was in a wheelchair at any time while in DOC custody.

Claimant has claimed only back problems. In one document, he stated that he walks with a limp. In order to qualify under the definition as mobility impaired, a claimant must prove that he has a lower extremity disability that substantially limits walking. Examples used for determining if a person meets the definition would include an inability to walk 100 yards without stopping or an inability to climb a flight of stairs without stopping.

Claimant has not established that he has a lower extremity condition that affects walking. He is not part of the class and may not pursue his claim.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** This question need not be answered in light of the negative answer to Question #1.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the negative answer to Question #1, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Terry Benavidez is denied, as he has failed to affirmatively answer all four questions in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master