IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-112
Category II
Claimant: Rocky Trujillo, #93870
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 80215-1010

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master on the claim of Rocky Trujillo (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) and presently housed at the Colorado Territorial Correctional Facility (CTCF) at Canon City, Colorado.

The claim has been assigned to Category II. Claims in this category are not entitled to a hearing and are to be adjudicated on the documents submitted by both sides. Claimant was given the opportunity to submit documentation in support of his claim. Defendants filed an response to the claim. Claimant was given the opportunity to file a reply to the response, but he has not done so. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge

Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition is controlling as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility

2

impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the Colorado Department of Corrections (DOC) in July, 1997. He was place initially into the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. Claimant ultimately was placed at CTCF. He remains at that facility.

In his initial claim form, Claimant stated as follows:

> Arthritis - in right hand, right wrist, back, knees and the bottom of right toe. Also left shoulder.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Denied medication that the rheumatologist prescribed.

In his supplemental form for mobility disability, Claimant stated, in part, as follows:

> I have a deformity in my left hands and left arm now from rheumatoid arthritis which causes me to not be able to participate in most jobs and activities. I am in constant pain in my knees, right foot, shoulders and back which limits my

3

movement extensively. I can only walk for short periods of time, standing for any time is impossible. My DOC medical records should show this.

Claimant alleged further that "I get turned down for most jobs because of limited mobility." He alleged further that he had requested surgical treatment for his left arm. He was turned down. He requested special shoes and a second mattress but was denied. He further stated "I am not receiving proper medical care and my health is suffering for it." Claimant also indicated that he had fallen as the result of his condition and was often confined to his cell.

Claimant submitted several pages of medical records, as well as kites to medical. On February 25, 1998, Claimant requested special shoes and removal of metal rods in his back. The health care provider did not believe that special shoes were necessary or the rods in the back should be removed. He made a request for surgery on his nose, but that was denied. In December, 2000, approval was given for special shoes with orthotics.

On December 5, 2001, Claimant saw Dr. Briney who is a rheumatologist. Dr. Briney confirmed the diagnosis of rheumatoid arthritis (RA) and made several recommendations. The records submitted by Claimant reflect that he was seen by medical personnel on a frequent basis.

Claimant provided additional medical records last year. Trigger point injections were utilized in an attempt to control the pain that Claimant was experiencing. These were done on the left elbow and right wrist of Claimant. Additional medical records confirmed the diagnosis of rheumatoid arthritis.

Defendants have attached a number of medical records to their response. On April 2, 2003, a note reflected that Claimant was seen either by Dr. Bloor or an assistant. There was confirmation that RA was present. There was a recommendation for prednisone to help control the RA.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?**  In order to answer this question, each claimed impairment or disability must be examined. In this case, Claimant is only alleging mobility impairment.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence from either side that Claimant has used a wheelchair full or part-time. Claimant does not meet the first criteria for mobility impairment.

The second criteria is a lower extremity condition that is permanent and which affects

walking. Claimant has established that he has RA in his knees and that this significantly affects his ability to walk.  The Special Master does find that Claimant is mobility impaired because of the RA in his knees. The back, wrist and shoulder problems are not covered by the Settlement Agreement and will not be resolved in this claim.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this questions is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has not provided specific evidence to show that he was the victim of discrimination prohibited the ADA and Rehabilitation Act. The burden is upon Claimant to prove this point, and he has not done so. The evidence presented reflects that Claimant was provided jobs and services.

Claimant has received medical care. He has had concerns about that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to the previous questions is no, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Rocky Trujillo is denied and dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 10th  day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

5