IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-270
Category II
Claimant: Francis J. Teague, #86735
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Francis J. Teague (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Limon Correctional Facility (FCF) in Limon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

II.

Claimant came into DOC custody in August, 1995. It is unclear how many facilities he has been housed at by DOC, but he was at LCF when he filed his claim. He remains at that facility at the preparation of this order.

Claimant checked only the box for vision impaired on his claim form. In response to the question concerning disabilities, he stated as follows:

> My left eye has 20/700 vision and my right eye about 20/50. Without glasses I cannot read print such as found in a newspaper as it is blurred. This makes me have to wear the wrong eye glass to do my job even though my sight is still blurred.
> All I really want is DOC to get me the glasses that work without forcing me to sign any paperwork.

When asked in the same form as to acts of discrimination by DOC staff, Claimant stated as follows:

> For over two years I have been trying to get DOC to make me corrective glasses and after three tries which failed to get it right they told me I would have to pay for my own glasses from outside doctor. I went through a three steps of grievances before being sent down to a Limon eye doctor. Once there I was told I had to sign a contract which stated if DOC did not pay I would. Two things it is against DOC regulations for me to enter into a contract and second if DOC can't provide medical care to me as required by law then let me out of prison where I will gladly provide for myself.

In his supplemental form, Claimant elaborated on his condition.

> From childhood my left eye has been a lazy eye (amblyopic eye). Without glasses my overall vision is blurred and with the right corrective lens things are in focus. Now even with corrective lenses my left eye only sees things with a blur.

> Since I do not have a pair of glasses that have the correct prescription in them, it means that to do my normal everyday work I am required to do so with it out of focus while wearing the glasses, and if I keep them on all day it causes eye strain and numerous headaches. This limits the things that I do as whenever possible I take the glasses off and only put them on when it is imperative that I be able to read even if they are not in total focus.

Defendants have filed a response to the claim. They argue that Claimant is not part of the class for vision impaired. They are argue further that Claimant has not been subjected to any discrimination.

4

Claimant was given an opportunity to file a reply to the response of Defendants. Claimant has not filed any additional documents or pleadings. The claim will be resolved on what has been presented.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?**  Claimant has checked only the box for vision impaired. The question then is whether he meets the criteria as set by the Settlement Agreement.

The definition for vision impairment in the Settlement Agreement is as follows:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant would have to be virtually blind to meet this definition.

The documents submitted by Claimant indicate that he is not blind. Claimant is able to see, but with some problems. A medical record from June 17, 1997 indicated that Claimant had vision with correction of 20/20 and 20/30. There was a slight diminution to 20/20 and 20/50 with corrective lenses on September 5, 2002. Claimant's vision can be corrected to better than 20/200, the requirement of the definition in the Settlement Agreement. In order to meet the definition for vision impaired, Claimant would have to show that he is permanently blind or has vision that is not correctable to 20/200 or better. Claimant's own documents reflect that this is not the case for eyes.

Claimant may have vision issues, but those issues do not fall under the definition for vision impaired in the Settlement Agreement. That definition is binding upon the Special Master and cannot be modified or changed. Claimant may not pursue his claim, as he is not part of the class as vision impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?**  The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**  Since the answer to Question #1 is no and Claimant is not part of the class, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

5

Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Francis J. Teague is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 2, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

6