IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

―――――――――――――――――――――――――――――――――――――――――――

Claim Number 02-290
Category II
Claimant: Randy W. Gaspar, #53109
Address of Claimant: 15137 East Louisiana Drive, #A, Aurora, CO 80012

―――――――――――――――――――――――――――――――――――――――――――

**FINAL ORDER OF SPECIAL MASTER**

―――――――――――――――――――――――――――――――――――――――――――

THIS MATTER came before the Special Master on the claim of Randy W. Gaspar (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC). He now has discharged his sentence and is no longer under the control of DOC.

The claim has been assigned to Category II. Claims in this category are not entitled to a hearing and are to be adjudicated on the documents submitted by both sides. Claimant was given the opportunity to submit documentation in support of his claim. Defendants filed a response to the claim. Claimant was given the opportunity to file a reply to the response, but he has not done so.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval

established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition is controlling as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility impaired.

2

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the Colorado Department of Corrections (DOC) on March 16, 1993. He was in various correctional facilities during his time in custody. Claimant was at the Sterling Correctional Facility (SCF) in Sterling, Colorado when he filed his claim.

In his initial claim form, Claimant stated as follows:

> Disabilities I have included severe degenerative - osteoarthritis, and severe chronic pain from a presumed "ruptured-disc," "bone-spur," and/or "pinched-nerve" in my back/leg which is the cause of uncontrollable pain that extends from my lower-back area to slightly above my ankle of my right let. The pain started in or around September 1998 (while I was an inmate in the "Progressive Reintegration Program" ("PRO-UNIT" program) at the Colorado State Penitentiary, said pain a result of a "volleyball-injury" of which I was compelled to participate despite my objections to (D.O.C.) - C.S.P. administration that I am not able to participate (broken-back).

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I allege that I have been discriminated against by the Colorado Department of Corrections as I have sought and been refused adequate medical attention (this is an operable condition) and have been refused my verbal and written (via the D.O.C. grievance process) requests for surgical relief on my chronically-painful back/leg

injury that I suffered while in state care as an inmate of the Colorado Department of Corrections. Initially, Doctor "Neufeld" (and, subsequently every additional D.O.C. health care provider that I have made aware of my medical problems) have told me that "D.O.C. will not expend the capital to provide my surgery as their (D.O.C.) budget will not allow for it, and I should wait till I'm paroled and pay for surgery."

In his supplemental form, Claimant stated, in part, as follows:

My pain from my medical condition (i.e. "Pinched-nerve," "ruptured-disc," etc.) which D.O.C. has acknowledged but refused to surgically relieve (due to economics) makes it painful to walk, sit, or stand for extended periods of time.

I have to climb stairs (D.O.C. refuses me a bottom-tier cell, and refuses me a bottom bunk) sleep and climb to a top bunk, walk lengthy distances to and from the chow-hall and medical without the offer from D.O.C. of a cane or wheelchair.

Defendants submitted a response to the claim of Claimant, attaching several medical records. Claimant was given the opportunity to file a reply, but he has not done so. The claim will be adjudicated based upon what has been presented.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he is mobility impaired. He has not checked any of the other three boxes on the claim form.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant mentions at one point that he was not offered use of a wheelchair while in DOC custody. He has not alleged or proven that he used a wheelchair full or part-time. Claimant does not qualify as mobility impaired under the first criteria of wheelchair use.

The second or alternative criteria is having a permanent lower extremity condition that substantially limits walking. Defendants have attached a number of Claimant's medical records which paint a different picture than that set forth by Claimant. Defendants correctly note that Claimant has not alleged that he cannot walk one hundred yards without stopping nor climb a flight of stairs. The allegations set forth by Claimant are that he is in pain and that he cannot walk in a normal manner. One medical record reflects Claimant was hitting softballs on June 10, 2003. On July 10, 2003, an MRI of Claimant's back indicated that there was degenerative disk disease but

4

with no disk protrusion. Other records reflected that Claimant was observed playing softball, basketball, and handball. On October 14, 2004, Claimant advised medical personnel that he had injured himself playing basketball. Medical took x-rays of Claimant's right hip on December 3, 2004 and the right knee on August 6, 2003. Those x-rays were negative.

Claims in Category II must be adjudicated on what is submitted by both sides in writing. Claimant had the opportunity to file a reply to the response of Defendants. Claimant did not do that. In light of the medical records provided by Defendants and unrebutted by Claimant, there has been a failure to establish that Claimant is mobility impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is no as to any claimed impairment, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Randy W. Gaspar is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master