IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-355
Category II
Claimant: Ronald R. Reed, #54639
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

_____

### FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Ronald R. Reed (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Arrowhead Correctional Center (ACC) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially
> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1998. It is unclear how many facilities he has been housed at by DOC, but he was at ACC when he filed his claim. He remains at that facility at this time.

Claimant checked the boxes for mobility impaired, hearing impaired, and diabetes. In response to the question concerning disabilities, he stated as follows:

Mobility: I have had a tingling sensation in my right leg and have had it for some time now. Also a feeling of numbness. The right knee is weak and its difficult for me to climb stairs.

Hearing impaired: I have hearing loss in both ears and used to wear two hearing aids. I lost one just prior to coming to prison. I have been told by hearing specialist on the streets that I would benefit with two aids. I feel that in my therapy groups that are held several times a week that I miss out on a good percentage of what is said. Also I feel my life could be in danger for not being able to hear a warning(s) if shouted, or an alarm is sounded. Often time I feel I cannot take part in a conversation for lack of hearing the conversation.

Diabetic issue: I have Hep.C and have been trying to get treatment for this for some years now. Recently I was told that I am now on a list for a liver biopsy which could take up to eight months. I don't know why the long wait and feel that another eight months simply prolongs and increases the risk to my health. I have fatigue bouts throughout the day and have been given one snack when I formerly was given three to help during these bouts. Sure I can continue to suffer from the Hep C and the fatigue and headaches that come with it for lack of a supplemental diet but is it really necessary? Can this be addressed?

Tourettes: I have tourettes and have had it for a number of years. The medication I used to take for it has bad side effects for me and have found that I am better off without I. I am wondering whether there is any other treatment for this that I or the prison system, is unaware of that I could be doing or taking now?

When asked in the same form as to acts of discrimination by DOC staff, Claimant stated as follows:

I am not being given treatment for my leg which was operated on several years ago. They will not give me a second hearing aid because I already have one and have told me not to ask them anymore. My last test was 7 years ago for which I took when I was on the streets and that was when I was told that two hearing aids would benefit me.

In his supplemental forms, Claimant reiterates that problems that he is experiencing with his medical issues. He states that he has been diagnosed as having hypoglycemia. He states that this

illness is exacerbated by the Hepatitis C that he has had for some time. Claimant in his supplemental form for hearing impairment indicates that he has received a new hearing aid for his left ear. He still would like one for his right ear.

In his supplemental form for mobility impairment, Claimant indicates as follows:

> I have fallen arches and prominent heal bones and have had for as long as I remember. Also, I have a right AL separation - left adhesive lapsulith's on my right shoulder and DOC has not operated to fix this problem on my right shoulder.

Claimant filed a document entitled "Amended Information." In that document, he indicated that the ACC medical department had started the process of eliminating his snack for his hypoglycemia. He also indicated that he has not received treatment for his Hepatitis C.

Defendants' response to the claim does not have any attached medical records. The response is basically a motion to dismiss, arguing that Claimant has failed to establish that he is entitled to relief under the Settlement Agreement.

Claimant was given an opportunity to file a reply to the response of Defendants. Claimant has not filed any additional documents or pleadings. The claim will be resolved on what has been presented.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked the boxes for mobility impaired, hearing impaired, and diabetes. The question then is whether he meets the definitions set by the Settlement Agreement. Claimant carries the burden of showing that he fell within one of the definitions on or before August 27, 2003.

The Special Master would note that Claimant has referred to other medical conditions that he has. These include a shoulder problem, Tourettes, Hepatitis C and emotional issues. None of these are covered by the Settlement Agreement. Claimant may have a legitimate claim under the ADA and Rehabilitation Act for any of these conditions. Claimant may file a separate lawsuit concerning these conditions, but they may not be resolved through this claim.

**Mobility Impairment:** The Settlement Agreement provides a narrow definition for mobility impairment. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has used a wheelchair while in DOC custody. Claimant does not meet the first criteria for mobility impairment.

5

The second alternative criteria is that a claimant has a permanent lower extremity condition that substantially affects walking. Claimant has stated that he has bad knees and numbness in his leg. He also has difficulty climbing stairs. Since Defendants have submitted no evidence to rebut the statement of Claimant, the Special Master finds that Claimant has a permanent lower extremity condition that affects his ability to climb stairs. Claimant is determined to be a member of the class as mobility impaired.

**Hearing Impairment:** The following definition for hearing impairment is contained in the Settlement Agreement.

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

In order for any claimant to meet this definition, he would have to be totally deaf.

The evidence submitted by Claimant reflects that he is not totally deaf. He has hearing loss in both ears and must use a hearing aid. He believes that a second hearing aid would assist him more, and he may well be correct. The evidence presented is clear that Claimant does not have to rely upon lip reading, signing or written documents in order to communicate. Claimant does not meet the extremely narrow definition of hearing impairment of the Settlement Agreement.

**Diabetes:** Claimant has stated that he has hypoglycemia. He further has indicated that this condition is intertwined with his Hepatitis C. As noted earlier, Hepatitis C is not a condition covered by the Settlement Agreement.

The Settlement Agreement provides very narrow definitions for the four conditions covered. This Special Master has ruled in the past that hypoglycemia is not diabetes and is not a condition covered by the Settlement Agreement. Claimant does not meet the definition for diabetes and is not part of the class for that condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to answer this question affirmatively, a claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. An example would be a claimant who is wheelchair bound being placed into a correctional facility that is not equipped to handle wheelchairs. Another example would be a claimant who is insulin dependent being denied insulin for a period of time for no valid reason.

When asked in the initial claim form about discriminatory conduct by DOC and its staff, Claimant indicated that he had been denied a second hearing aid. Claimant has discussed in subsequent documents not receiving medical care for his Hepatitis C. Claimant has not pointed to an overt act that was discriminatory toward him because of his mobility impairment. Since Claimant only meets the definition of mobility impaired, Claimant must show that he was the victim of discrimination for that condition. He has not done that.

Claimant is reminded that he may have a claim because of his non-covered conditions that may be raised in a separate lawsuit. He has not established that he was subjected to discrimination for a listed condition in violation of the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ronald R. Reed is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 2, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master