IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-395
Category II
Claimant: Jamie Dean Ervin, #89935
Address of Claimant: FMCC, P.O. Box 200, Canon City, CO 81215-0200

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master on the claim of Jamie Dean Ervin (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He now is housed at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado.

The claim has been assigned to Category II. Claims in this category are not entitled to a hearing and are to be adjudicated on the documents submitted by both sides. Claimant was given the opportunity to submit documentation in support of his claim. Defendants filed a response to the claim. Claimant was given the opportunity to file a reply to the response, but he has not done so.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval

established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition is controlling as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into the Colorado Department of Corrections (DOC) on April 24, 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear to which facility he was then transferred. He was at the Fort Lyon Correctional Center (FLCF) when he filed his claim. He now has been transferred to FMCC in Canon City, Colorado.

In his initial claim form, Claimant stated as follows:

> I have had almost all my meniscus taken out of my leg/right knee. Now I can't walk or stand for long periods of time. Also I can't kneel down on it. I feel my knee problems are worse now since my surgery.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Took five months to be seen by a specialist. I didn't receive any therapy after the surgery. It took four months to get a brace for my leg. Still to this day I have to climb up two flights of stairs to get to my room which is hard on my knee.

Claimant also alleged that he did not receive appropriate medical care in a prompt fashion. "I feel if I would have been treated right and had the proper care I would not be in the shape I am now."

In his supplemental form, Claimant stated, in part, as follows:

> I have problems walking, standing, kneeling and just every day duties.
>
> Climbing up and down stairs, walking to and from the chow hall to do my work. I am very depressed any more because my disability prevents me from living a normal life.

Attached to the supplemental form are several medical records. In a medical note of April 7, 2004, Dr. Jacob Patterson, M.D. noted as follows:

> He is status post arthroscopy of the knee. At that time, he was noted to have a failed repair of the medial meniscus and had a near complete meniscectomy.

Dr. Patterson also noted that Claimant has signs of early degenerative joint disease.

Defendants submitted a response to the claim of Claimant, attaching several medical records. One medical record of January 11, 2005 questioned the severity of Claimant's medical condition and whether there was an issue of secondary gain for medications and work limitations.

Claimant was given the opportunity to file a reply, but he has not done so. The claim will be adjudicated based upon what has been presented.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he is mobility impaired. He has not checked any of the other three boxes on the claim form.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." He has not alleged or proven that he used a wheelchair full or part-time.

Based upon what has been presented by both sides, the Special Master finds that Claimant did have on August 27, 2003 a permanent lower extremity condition that substantially limited walking. The medical records corroborate that on that date Claimant had a knee with significant problems that limited his ability to walk. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the

**benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or serves due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has alleged the lack of prompt and correct medical care. He also has alleged no physical therapy after his surgery.

Claimant has received medical care. He has concerns about that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. Claimant is questioning the case provided to him, and that is beyond the jurisdiction of the Special Masters.

Claimant has not established any discriminatory conduct by DOC or its staff that violates the ADA or Rehabilitation Act. Claimant retains the right to pursue a separate lawsuit concerning his medical care. That lawsuit may be filed pursuant to the Eighth Amendment or state statute.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Jamie Dean Ervin is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master