IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-402
Category II
Claimant: Juan Sierra-Omini, #112040
Address of Claimant: BVCC, P.O. Box 2017, Buena Vista, CO 81211

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER comes before the Special Master on the claim of Juan Sierra-Omini (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) and is placed at the Buena Vista Correctional Complex in Buena Vista, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants but he has not done so. Further argument will be waived.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on February 8, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was in custody at the Limon Correctional Facility (LCF) in Limon, Colorado when he filed his claim.

In his claim form, Claimant stated, in part, as follows:

> My vision is impaired and I have trouble seeing near and far away and I have light sensitivity.

In response to the question concerning discrimination by DOC and its staff, Claimant stated on his form as follows:

> I need to wear glasses and when I was received into the Department of Corrections I was allowed to keep my prescription eye glasses I had when I was arrested but while I was housed at Arkansas Valley Correctional facility they were taken from me by Lt. Robert Steinbeck, the hearing officer, where he took my glasses and another Hispanic inmates' glasses but this same officer is not taking the same type of glasses from Caucasian and black inmates which has caused him to discriminate against me. I was allowed to keep the glasses when I came to prison because the DOC does not provide the type of glasses that I need.

Claimant was forwarded a supplemental form to fill out for vision impairment. In the supplemental form, Claimant stated, in part, as follows:

> I cannot focus with my right eye and have very painful reaction to the bright light my head is also in pain and when I go outside I have to shut my eyes for a long time.

> I cannot go out to the yard or gym and have a lot of trouble trying to read for the same matter I cannot work in the computer or watch t.v. without pain.

Defendants' motion argues that Claimant is not part of the class, as he does not meet the definition of vision impaired. As noted previously, Claimant was given the opportunity to respond to the motion and has not done so.

## III.

Defendants have filed a motion to dismiss. All reasonable allegations of Claimant must be accepted as true.

In order to pursue a claim, a claimant must show that he falls within the definition of a

4

disability as set forth in the Settlement Agreement. The definition for vision impaired is as follows:

    3. Permanent Vision Impairment
        Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, this definition means that any claimant will have to be legally blind to fall into the vision impaired category. At the writing of this order, not one claimant has met this definition.

    Claimant's own allegations indicate that he can see. He does not have vision problems that cannot be corrected with glasses. He would like to have his prescription glasses back and has a legitimate concern about the differences in standards that exist between correctional facilities. The point is that Claimant does not meet the definition of vision impaired as set forth in the Settlement Agreement. The Special Master is bound by that definition and cannot expand it. Claimant is not vision impaired as defined in the Settlement Agreement and may not pursue his claim.

    IT IS HEREBY ORDERED that Defendant's motion to dismiss is granted, and the claim of Juan Sierra-Omini is dismissed: and

    IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

    SIGNED this 10th day of July, 2006.

                             BY THE COURT:

                             */s/ Richard M. Borchers*

                             Richard M. Borchers
                             Special Master