IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-409
Category II
Claimant: Steven McGonigle, #113858
Address of Claimant: BCCF, 11560 Rd FF 75, Las Animas, CO 81054

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Steven McGonigle (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is in custody at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants. Claimant has not filed any reply to Defendants' response.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 2, 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was at the Arrowhead Correctional Complex (ACC) when he filed his claim. He has since been transferred to BCCF.

Claimant checked the boxes for mobility impairment and hearing impairment on his initial claim form. Claimant stated, in part, as follows:

> Mobility: My significant heart damage impacts my mobility. My cardio problems restrict my ability to move about without stopping to catch my breath or to move from point A to point B. quickly.
>
> Hearing Impaired: I am profoundly deaf in my right ear 100% loss. My hearing in the other ear is ineffective unless sound is over 35/45 decibels. My hearing loss is approximately 30% in the left. Hearing normal communication, messages over the intercom, communication in large group settings is extremely difficult.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> First, movement, speed, communication are all assumed to be at "non-disability" parameters. No leeway or consideration has been afforded - everyone treated the same....On multiple instances, I had to stop to catch my breath and was untimely to time deadlines & missed the same opportunities that others were afforded...

Claimant indicated that he has missed medical and other appointments because of his hearing loss. Further, Claimant has alleged that he made requests for accommodations through DOC, but to no avail. Claimant did receive a hearing aid after some delay. Claimant had his own hearing aid taken from him when he entered into custody.

Defendants have filed a motion to dismiss. Defendants argue that Claimant is not part of the class, as he does not fall under any definition as being disabled. Claimant was given the opportunity to file a reply but has not done so.

## III.

Defendants' have filed a motion to dismiss. As a result, all reasonable allegations of Claimant must be accepted as true. The motion may not be granted unless Claimant cannot prevail as a matter of law and fact.

Each claimed impairment or disability must be examined. Claimant has alleged two disabilities: mobility impairment and hearing impairment.

**Mobility Impaired:** Claimant has indicated on his claim form that he is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not alleged that he was in a wheelchair at any time while in DOC custody.

Claimant has alleged that he has heart problems that affect his ability to move. Claimant has further alleged that he needs more time for movements because of his need to stop. The definition which is binding upon the Special Master requires that a claimant establish that he has a permanent lower extremity condition that affects walking. Claimant has not alleged that he has a lower extremity condition. The definition is narrow, and Claimant does not fall under it.

The Settlement Agreement deals with four types of disabilities. The protection of the ADA extends to other disabilities. Claimant may have a valid ADA claim based upon what he has set forth, but his heart problems cannot be resolved through his claim. Claimant retains the right to pursue a separate lawsuit under the ADA for these problems.

**Hearing Impaired:** A claimant alleging a hearing impairment must fall within the following definition:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

To be blunt, this definition is so narrow that a claimant would have to be totally deaf.

Claimant has alleged that he has a significant hearing loss in his right ear. The loss in his left ear is much less. Claimant has a hearing aid and is able to communicate without having to resort to signing, lip reading or written communication. Claimant does not meet the extremely narrow definition for hearing impaired. At this writing, not one claimant who has alleged hearing impairment has fallen within this definition. The Special Masters are jurisdictionally bound by the disability definitions and may not expand them.

Claimant is in the same situation as may other claimants. He has a hearing loss that creates problems for him. He does not have a significant enough hearing loss to fall within the definition in the Settlement Agreement. Claimant may have the right to bring a separate lawsuit, as his condition may still fall under the ADA. At the very least, Claimant may want to file for formal ADA accommodations through Ms. Cathie Holst at DOC Headquarters.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Steven A. McGonigle is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master