IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-419
Category II
Claimant: Daniel M. Geschwentner, Jr., #93502
Address of Claimant: 19858 Summerset Lane, Parker, CO 80130

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Daniel M. Geschwentner, Jr. (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He has discharged his sentence and is no longer under DOC control.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants. Claimant has not filed any reply to Defendants' motion.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in May 14, 1997. He was released on July 25, 2002. He has discharged his sentence.

Claimant checked only the mobility impaired box on his initial claim form. He stated, in part, as follows:

>I had to have back surgery that was denied me when at Sterling. I have been on restrictions since I had the surgery in August of 2003. I am restricted to lifting weight, bending and twisting. My hours of work have been changed because I can't stand for long periods of time. I have been hindered from finding another job with

>better pay because I am still recovering. Also I have a strain on my financial situation because I have had $170.00 a month in medical bills.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>After I had my MRI, they told me that they wouldn't give me surgery because I didn't have enough time left. At that time I had at least 1 ½ years to go. Now, I had to get surgery when I got out and I have lost wages, time out of my life to heal, mobility and ability to get other higher paying jobs.

In his supplemental form, Claimant states as follows:

>Do not have the mobility (range of motion) in my lower back from surgery. Limited motion, lifting ability and continuous soreness.

Claimant did not submit any medical records or other documents in support of his claim.

Defendants have filed a motion to dismiss. They argue that Claimant is not part of the class and, therefore, may not pursue his claim. As noted previously, Claimant was given the opportunity to file a reply to the response of Claimant, but he did not do so.

### III.

Defendants have filed a motion to dismiss. As a result, all reasonable allegations of Claimant must be accepted as true. The motion may be granted only if Claimant cannot prevail as a matter of law and fact.

The question raised in the motion to dismiss is one of whether Claimant is part of the class. Claimant has indicated on his claim form that he is mobility impaired. He has listed no additional claimed disabilities.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not alleged that he was in a wheelchair at any time while in DOC custody.

Claimant has alleged that he had significant back problems that required surgery when he left DOC custody. His major complaint is that he did not receive surgery while in custody and that left him with permanent problems in his back.

The Settlement Agreement limits mobility impairments also to those individuals who have a permanent lower extremity condition that affects walking. Claimant has not alleged that he had

a lower extremity condition. He has alleged that he had a back problem. Claimant is not part of the class because of mobility impairment.

Claimant is not part of the class. He retains the right to file his own lawsuit concerning his back and the treatment he received while in DOC custody. Claimant may not pursue his claim, as it is does not cover a disability set forth in the Settlement Agreement.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Daniel M. Geschwentner is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 25, 2006.**

SIGNED this 10th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master