IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-463
Category II
Claimant: Carlos J. Archuleta, #100165
Address of Claimant: 4205 Wallace Street SE, Albuquerque, NM 87120

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Carlos J. Archuleta (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC). He has discharged his sentence and is no longer under the control of DOC.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss. All reasonable allegations of Claimant must be accepted as true. The motion may be granted only if Claimant cannot prevail as a matter of law and fact with all allegations being accepted in the light most favorable to him.

Claimant came into DOC custody for the first time in July, 1998. He was released in April, 2000, but returned to DOC custody in August, 2001. He was released again in November, 2002. Claimant returned again to DOC custody in January, 2003. He was released in late 2004 or early 2005. Claimant was at the Sterling Correctional Facility (SCF) in Sterling, Colorado when he filed his claim.

Claimant checked only the boxes for hearing impaired and vision impaired on his claim form. In response to the question concerning disabilities, he stated as follows:

> I suffer from an acute hearing disorder and I am visually impaired. Both hearing and vision disorders are documented. By not hearing commands issued by DOC staff, I'm in a constant state of anxiety and apprehension of being sanctioned unjustly for non-compliance. My vision impairment causes frequent headaches due to optical strain.

When asked in the same form as to acts of discrimination by DOC staff, Claimant stated as follows:

> I have submitted requests for hearing aids and glasses. Both requests have been denied.

In his supplemental form for hearing impairment, Claimant stated, in part, as follows:

> I suffered an acute hearing loss as a result of working aboard a U.S. Navy destroyer (DD965) in the main engine room. I experienced a 60% loss of both high and low frequencies.

> I experience a constant annoying ringing in my ears. It is very difficult to comprehend dialogue, even when enunciated clearly. This causes much uncertainty, and in some situations, apprehension because of my current situation of incarceration. I find myself guessing, rather than knowing what I'm told by staff. My inaction has been considered as ambivalence in some cases.

In his supplemental form for vision impairment, Claimant elaborated on his condition.

> My vision problems were initiated by severe powder burns to both eyes when I was 14 years old. Now my eyesight has deteriorated to the point that prolonged reading or strain to the eyes causes headaches.

Defendants' motion to dismiss argues that Claimant does not meet the definitions for vision or hearing impaired. Defendants argue that he is not part of the class. Claimant was given the opportunity to respond to the motion to dismiss, but he has not done so.

### III.

Defendants have filed a motion to dismiss. All reasonable allegations of Claimant must be accepted as true. The motion may not be granted unless Claimant cannot prevail as a matter of law and fact.

**Vision Impaired:** The definition in the Settlement Agreement for vision impaired is as follows:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant would have to be legally blind to meet this definition.

Claimant has not alleged that he is blind. He has alleged that he has difficulty seeing and has requested DOC to provide glasses to him. There are no allegations nor any evidence that has been submitted that indicates the vision of Claimant cannot be corrected to 20/200 or better. Under the very narrow definition of the Settlement Agreement, Claimant does not meet the test for vision impaired.

**Hearing Impaired:** The definition in the Settlement Agreement for hearing impaired is as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

This narrow definition would require a claimant to be totally deaf and dependent upon lip reading, signing or written documents for communication.

Claimant has alleged that he has reduced hearing due to his military service. He had difficulty understanding all messages while in DOC custody. Claimant did allege that he was able to hear and was not required to sign, lip read or use written documents to communicate. Claimant does not meet the narrow definition of hearing impaired in the Settlement Agreement.

Claimant is not a member of the class, as he does not fall under the definitions of either

vision or hearing impaired. Accepting as true all of his allegations, Claimant cannot prevail on his claim.

      IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Carlos J. Archuleta is dismissed; and

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 3, 2006.**

      SIGNED this 10th day of July, 2006.

      BY THE COURT:

      */s/ Richard M. Borchers*

      _____
      Richard M. Borchers
      Special Master