IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-051
Category II
Claimant: Robert L. Rice #48182
Address of Claimant: 119 Locust Street, Modesto, CA 95351-2625

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert L. Rice. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out

1

provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III.  DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

The Remedial Plan further goes on to discuss categories and criteria for special placement. *Remedial Plan, Section V., paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses. Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Remedial Plan, Section V., paragraph A.* These definitions control as to implementation of the Remedial Plan and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant Rice submitted a claim which was assigned claim number 02-051. The claim is premised on alleged mobility impairment, hearing impairment, vision impairment and diabetes.

3

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Rice entered CDOC custody in 1996. Although the records provided to the Special Master do not specify the institutions in which Claimant was housed, it appears that he was incarcerated at the Arkansas Valley Correctional Facility for most of the time period pertinent to his *Montez* claim. During some unspecified time period, he was also housed at Limon Correctional Facility. Claimant appears to have been released from CDOC custody sometime in 2006.

4. Claimant asserts that he suffers from severe arthritis and loss of equilibrium; that he is completely deaf in his right ear and uses a hearing aid in his left ear; that he is vision impaired; and that he is hypoglycemic.

5. Claimant contends that his arthritis and loss of equilibrium constitute a permanent physical disability that substantially impedes his ability to engage in the major life activity of walking. While in CDOC custody, he was given a cane to assist him in walking. Claimant states that his cane was taken away from him at some unspecified point in time; and that he filed a grievance on 7/10/2003. The cane was returned on 9/24/03. Claimant alleges that sometime in 2003 he fell in the dining room and injured his back. However, there is nothing in the record showing whether this incident occurred during the time when he was deprived of the use of a cane. Claimant also alleges that the CDOC refused to provide him with orthopedic shoes as well as proper medical treatment for his arthritis and loss of equilibrium.

6. Claimant Rice further alleges that the CDOC discriminated against him with respect to his hearing disability by disciplining him for failing to follow an order which he did not hear and by refusing to provide him with sign language and lip reading classes.

7. Claimant asserts that he suffers from hypoglycemia and that the medical providers at the Limon Correctional Facility refused to renew his prescription for hypoglycemic snacks that had previously been provided while he was at Arkansas Valley.

8. Claimant Rice also alleges that he has poor eyesight which prevents him from focusing, reading and performing job duties. He contends that the CDOC did not respond to his request for corrective lenses.

9. Finally, Claimant appears to allege that that CDOC has discriminated against him by failing to provide accommodations that would have allowed him to secure and maintain prison jobs.

### III. CONCLUSIONS OF LAW

4

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act. (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V., paragraph A. of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities. The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class. Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks. Additionally, the Special Master finds and concludes that Claimants' mobility disability falls within the criteria established by the Remedial Plan class membership based upon a permanent physical mobility impairment.

The Special Master finds and concludes that Claimant has not sustained his claim that he has a permanent vision disability under the Remedial Plan. Claimant concedes that he is not blind, and the documentation provided in the Exhibits to Defendants' Response establishes that Claimant's vision acuity is significantly above the threshold defined in the Remedial Plan.

5

The Special Master finds and concludes that Claimant has not sustained his claim that he has a disability due to diabetes. There is no evidence that Claimant has in the past or presently suffers from diabetes. While Claimant may be hypoglycemic, hypoglycemia is not a condition or illness that equates to diabetes.

Finally, the Special Master finds and concludes that Claimant has not sustained his claim that his hearing problems meet the definition of, and criteria for a "permanent hearing impairment," under the Remedial Plan. The medical records submitted as Exhibits to the Defendants' Response demonstrate that Claimant can hear with the assistance of hearing aids; and that hearing aids have been supplied to him.

3.  The Special Master finds and concludes that Claimant has failed to sustain his contention that he was discriminated against because of his mobility disability. To the extent that his discrimination claim is premised on the refusal of the CDOC to provide him with medical treatment and/or orthopedic shoes, Claimant is required to show that these alleged deficiencies in medical treatment prevented him from taking part in the institution's programs and services. No such showing has been made by the Claimant. Without such a showing, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

4.  Likewise, Claimant's mobility discrimination claim premised on his falling in the dining room is not supported by the record. Claimant fails to present information or documentation showing the circumstances surrounding his fall, or demonstrating that the fall was the result of a failure to accommodate his disability.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendant and against Claimant dismissing Claimant Rice's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 10, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 10th day of July, 2006;

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 10th day of July, 2006 to the following:

Mr. Robert Rice, #48182
119 Locust St.
Modesto, CA 95351-2625

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter