IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 1 3 2006

GREGORY C. LANGHAM
CLERK

Claim Number: 02-165
Category II
Claimant: Theodor Castillo, #82565
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Theodor Castillo. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out

1

provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.     General inconvenience or nominal damages;
> II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.    Damages due to severe physical injuries; and
> V.     Damages due to death.
>
> Only one of the above categories may be applied to each class member.   For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Remedial Plan further goes on to discuss categories and criteria for special placement. *Remedial Plan, Section V., paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses. Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Remedial Plan, Section V., paragraph A.* These definitions control as to implementation of the Remedial Plan and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Castillo submitted a claim which was assigned claim number 02-165. The claim is premised on an alleged mobility disability.

3

2.     Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.     Claimant Castillo entered CDOC custody on January 1, 1994. His release date is 2085.

4.     In 1982, Claimant was involved in a motor vehicle accident in which he fractured his right ankle, requiring the insertion of hardware. The hardware was later removed and a final screw was removed in 1993. Since that time, Claimant has suffered from degenerative arthritis in the right ankle, with hypersensitivity over scarring of the lateral aspect. Claimant is able to stand without significant pronation or supination of the foot; and his ankle appears fairly stable despite the degenerative changes that have taken place.

5.     The state issued shoes that were provided to Claimant exacerbated the damage to his ankle. For the most part, Castillo's claim involves his continuing efforts to obtain high-top soft-soled shoes at CDOC expense and CDOC's refusal to provide them. Claimant asserts that several of his medical providers have recommended or ordered that he be provided with high-top soft-soled shoes. CDOC did supply him with one pair but refused to replace them after the initial pair wore out. Claimant was also provided with a shoe known as a "Rhino," but this provided no protection or support to Claimant's ankle. At various times, CDOC has allowed Claimant to purchase high-top soft-soled shoes at his own expense.

6.     Claimant also contends that despite medical recommendations and orders to the contrary, CDOC personnel shackled him during transport to and from court appearances, which further damaged his ankle.

7.     Finally, Claimant alleges that he was fired for refusing to work at a time when his foot had swollen up; and that this incident resulted in the imposition of discipline in the form of a loss of good time or earned time credit.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 et seq., and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an

individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to dsiabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V., paragraph A. of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing or vision impairment, as defined in the Remedial Plan or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Castillo has not sustained his allegation that he suffers from a permanent mobility disability, within the meaning of the Rehabilitation Act, the ADA, and the Remedial Plan. Under the criteria established by the Remedial Plan, a Claimant asserting a permanent mobility disability must demonstrate that he or she uses a wheelchair full or part time or that he or she cannot walk 100 yards on a level surface and/or cannot climb a flight of stairs without pause. There is no evidence in the record indicating that Claimant Castillo meets these criteria. Indeed, the records submitted to the Special Master demonstrate the contrary—Claimant does not use a wheelchair; he can walk 100 yards and climb stairs without a pause; he does not require assistive devices; he does not need a shower chair; and he is capable of attending classes, programs and work.

3.      CDOC's failure to provide Claimant with high-top soft-soled shoes, and CDOC's continued use of leg shackles while transporting Claimant may well have caused Claimant unnecessary pain and further ankle damage. However, claims for deliberate indifference to medical needs are not cognizable under the Rehabilitation Act or the ADA. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984) and, thus, fall outside the scope of the Special Master's authority under the Remedial Plan.

4.    Additionally, the documentary record establishes that Claimant Castillo's allegedly swollen ankle played no part in the loss of his prison job.  Likewise, the subsequent discipline imposed was for conduct unrelated to Castillo's ankle problems.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendant and against Claimant dismissing Claimant Castillo's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 10, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 10th day of July, 2006;

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 10th day of July, 2006 to the following:

Mr. Theodor Castillo, #82565
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

Susan L. Carter