IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 1 3 2006

GREGORY C. LANGHAM
CLERK

---

Claim Number: 02-167
Category II
Claimant: Alfred D. Harris, #91439
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Alfred D. Harris. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out

provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five *categories of damages shall* apply to each class member:

> I.     General inconvenience or nominal damages;
> II.    Damages due to loss of good time, earned time, access to programs or services *that have not resulted* in physical injury;
> III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.    Damages due to severe physical injuries; and
> V.     Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.   DEFINITIONS

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

The Remedial Plan further goes on to discuss categories and criteria for special placement. *Remedial Plan, Section V., paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Remedial Plan, Section V., paragraph A.* These definitions control as to *implementation of the Remedial Plan and adjudication of all claims filed by individuals.*

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Harris submitted a claim that was assigned claim number 02-167. The claim is premised on an alleged mobility disability, vision disability and disability due to diabetes.

2.     Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.     Claimant Harris entered CDOC custody in 1996.   The file does not disclose a release date.

4.     Claimant was diagnosed with diabetes in 2001.   He asserts that he suffers from the following symptoms because of his diabetes:   tingling/numbness, sex problems, frequent urination and lack of endurance.   Claimant Harris complains that he has not received necessary and proper medical treatment for his diabetes.

5.     Claimant Harris also asserts that he has a mobility disability.   He alleges that he has trouble walking, suffers from pain in the groin area and tingling/numbness in both legs.   He contends that his left leg gives out, causing him to have frequent falls.   He also complains of walking with a continuing limp.

6.     Claimant contends that he has fallen on several occasions because he has not been given a cane or a wheelchair.   He also alleges that he developed a large knot in his groin area that prevented him from walking and attending a meeting concerning his removal from administrative segregation.   Harris asserts that he was placed in the Colorado State Penitentiary for refusing to attend the meeting.

7.     Claimant alleges that he has vision problems caused by his diabetes that result in headaches and dizziness.   He asserts that he has not been given proper glasses. He also contends that he did not attend classes because he could not see the text.   He further contends that he was written up and denied good time for failing to attend classes.

## II.  CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.   Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."   42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).   The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.   29 C.F.R. § 1630.2(j)(1).   "Major life activities" include functions "such as caring for

4

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V., paragraph A. of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that while Claimant Harris does suffer from diabetes, he has not demonstrated that the diabetes or the symptoms thereof prevent him from reasonably engaging in any major life activity. Rather, his main complaint with respect to diabetes is that he has not received proper medical treatment. While improper or inadequate medical treatment may give rise to a claim for deliberate indifference to medical needs, the courts have held that substandard medical care or failure to properly treat a disability does not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation*, 403 F.3d 1134, 1144 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

The Special Master further finds and concludes that Claimant Harris does not suffer from a permanent vision disability within the meaning of the Rehabilitation Act, the ADA and/or the Remedial Plan. Harris does not contend that he is blind, nor does he allege that his visual acuity cannot be corrected to 20/200. Indeed, his medical records demonstrate that his uncorrected visual acuity is better than 20/200.

Finally, the Special Master finds and concludes that Claimant Harris has not demonstrated by a preponderance of the evidence that his mobility problems are sufficiently severe to constitute a permanent mobility impairment under the Remedial Plan. There is no evidence in the record that he requires a wheelchair to ambulate or that he cannot walk at least 100 yards or climb a flight of stairs without pause. The knot in his groin that allegedly prevented him from walking to the meeting regarding his removal from administrative segregation is not the type of long term condition that could be deemed a permanent mobility disability.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and *Conclusions of Law*, *Judgment* be entered in favor of Defendants and against Claimant dismissing Claimant Harris' claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 10, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 10th day of July, 2006

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 10th day of July, 2006 to the following:

Mr. Alfred D. Harris, #91439
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

Susan L. Carter