IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 1 3 2006

GREGORY C. LANGHAM
CLERK

---

Claim Number: 02-307
Category II
Claimant: Darrell Miracle, #02912
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Darrell Miracle. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

The Remedial Plan further goes on to discuss categories and criteria for special placement. *Remedial Plan, Section V., paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Remedial Plan, Section V., paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

3

1.   Claimant Miracle submitted a claim that was assigned claim number 02-307. The claim is premised on an alleged mobility disability and disability due to diabetes.

2.   Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.   Claimant Miracle entered CDOC custody on 12-1-1997. The file does not disclose a release date; however Claimant is current serving a 37 sentence.

4.   Claimant suffers from diabetes and is insulin dependent. He also suffers from diabetic neuropathy and severe arthritis. He cannot climb stairs and generally cannot sit or stand for more than approximately ten minutes at a time. He is wheelchair-bound much of the time. When he does walk, it is with the assistance of a cane. Claimant asserts that his disabilities prevent him from working at any prison job.

5.   Claimant Miracle asserts that necessary medical treatment and medications for his diabetes have been withheld and that on two occasions, he received negligent medical treatment that placed his life in jeopardy. He also contends that even though he cannot perform a job because of his disabilities, he should receive similar pay to those prisoners who do work. Finally, Claimant alleges that on many occasions, such as when the weather is inclement, his mobility disability prevents him from getting to the window where medications are dispensed. On these occasions, he has had to forego his medications.

## II. CONCLUSIONS OF LAW

1.   The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.   The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V., paragraph A of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Miracle has sustained his claim that he suffers from permanent mobility disability and from a disability due to diabetes within the meaning of the Rehabilitation Act, the ADA and the Remedial Plan. He is essentially wheelchair-bound and has very limited ability to ambulate without the assistance of a wheelchair. The Special Master further finds and concludes that Claimant is a member of the class.

3. The Special Master finds and concludes that Claimant Miracle is otherwise qualified to receive the benefits and to participate in the programs and services offered by the institution where he is housed.

4. The key question is whether the Defendants have discriminated against Claimant because of his disability. Claimant's primary contention is that necessary medical treatment and medications have been withheld from him and/or that he has received negligent medical treatment. Such a contention, however, does not give rise to a claim under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corporation*, 403 F.3d 1134, 1144 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). The Special Master finds and concludes that Claimant's assertion that he should receive pay even though he is unable to perform a prison job is without merit. As a matter of law, penal institutions are not required to accommodate a disability by paying a prisoner for work that he cannot perform because of his disability.

5. This leaves Miracle's claim that prison officials failed to accommodate his mobility disability by delivering medications to him on those occasions when he was unable to ambulate to the location where medications were distributed. While such a failure to accommodate might theoretically give rise to a claim for relief, there are significant evidentiary deficiencies in Claimant's presentation here. For example, a few occasional or isolated instances are not sufficient to establish a failure to accommodate

5

under the ADA. More importantly, a disabled person must request reasonable accommodation. *Reed v. Lepage Bakeries, Inc.*, 244 F.3d 254 (1st Cir. 2001). No evidence has been presented that Claimant Miracle requested that medications be delivered to him when inclement weather prevented him from getting to the distribution location. For these reasons, the Special Master finds and concludes that Claimant Miracle's claim of discrimination based on his inability to obtain his medications on isolated occasions due to inclement weather must fail.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Miracle's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 10, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 10th day of July, 2006

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 10th day of July, 2006 to the following:

Mr. Darrell Miracle, #02912
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter

7