IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 01-043
Category I
Claimant: Walter Warthen, #68126
Address of Claimant: RCC, 0200 County Road 219, Rifle, CO 81650

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Walter Warthen (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Rifle Correctional Center (RCC) in Rifle, Colorado.

This claim has been assigned to Category I. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant has filed a reply to the answer of Defendants. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant indicated on his claim form that he came into DOC custody in 2001.[2] He was at the Skyline Correctional Center (SCC) in Canon City, Colorado when he filed his claim. He has since been transferred to RCC.

Claimant only checked the box for mobility impairment on his claim form. He stated as follows concerning his disability.

---

[2] The Special Master has handled over 1,400 claims. From review of these claim forms, it is clear that Claimant was in DOC custody prior to 2001 because of his DOC number. Claimant has made no claim for anything prior to 2001 and nothing will be considered from any prior time period.

3

      Blood clot in lower left leg. Leg swells up when walking, wakes me up at night (pain).
In response to the question concerning discrimination by DOC and its staff, Claimant stated in his claim form as follows:

      If you don't work, you get wrote up & regressed w/more points, screws up any parole, community corrections eligibility.

      Claimant was sent a supplemental form to complete and return. He did so, and stated, in part, as follows:

      Blood clot in lower left leg, leg swells up when walking, or standing, feels like a hot power, have to stop & elevate leg. Can not run, can not walk very far very fast.

Claimant stated in the supplemental form that his leg wakes him up at night. He expressed concern about his medical condition.

      Defendants' answer does not have any medical records attached, nor are any other records submitted. Defendants have argued that Claimant has failed to prove his claim and that it should be dismissed. They note that Claimant is at RCC which is a minimum restrictive camp and that there is no evidence that Claimant has not been able to work or that he has suffered any repercussions from not working.

      Claimant has submitted a time computation sheet for consideration. He also filed a brief reply to the answer of Defendants. In his reply, he states that he does have a disability and that his life is affected. Claimant further states in his reply that "[j]ust because I have not requested accommodations does not make the blood clot any less a disability."

### III.

      The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

      **1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he has a blood clot in his lower leg and that the clot affects his ability to run and walk. Defendants have presented no evidence that the clot does not exist. Rather, they argue that he has not proven his claim by failing to establish that he cannot walk more than one hundred yards without stopping or not being able to climb a flight of stairs without stopping.

      Claimant is representing himself, and all reasonable inferences will be drawn in his favor. The Special Master finds that the blood clot is a lower extremity condition that affects walking. Claimant is part of the class as mobility impaired.

      **2. Was the Claimant otherwise qualified to participate in the programs or receive the**

**benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** The answer to this question is no. The Claimant has not alleged any act of discrimination that violates the ADA and Rehabilitation Act. He acknowledges in his reply that he did not and has not requested an accommodation for his disability.

The ADA and Rehabilitation Act require a showing that an individual with a disability was treated differently than a person without the disability. In this case, Claimant has complained about a work or else policy, but there is no indication that this policy was not applied to all inmates at SCC and RCC. There is no evidence in the file that Claimant cannot work. There is no evidence that Claimant should be excused from working. There is no evidence that Claimant has been written up or regressed because of a failure to work.

Claimant has failed to establish that he was treated differently because of his disability. Having a blood clot in his lower left leg is not sufficient to establish an ADA claim. There must be discriminatory acts on the part of DOC and its staff, and that has not been established by Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question need not be answered in light of the negative answer to Question #3.

IT IS HEREBY ORDERED that the claim of Walter Warthen is denied, as he has failed to answer affirmatively all four of the questions in the order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 16, 2006.**

SIGNED this 24th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master