IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-553
Category II
Claimant: Brian Michael Thompson, #91342
Address of Claimant: 6564 S. Clermont Ct., Centennial, CO 80121

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Brian Michael Thompson (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He has discharged his sentence and is no longer under DOC control. The address listed above is the last known address for Claimant, and the last order was returned as undeliverable at that address.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in October, 1996. He remained in custody until April, 1998. He returned to DOC custody in February, 2000. He was released from DOC custody in March, 2002. Claimant discharged his sentence on April 21, 2004.

Claimant checked only the box for diabetes. In his claim form, he stated as follows:

> I am a juvenile type one insulin dependent diabetic. Since the age of two. Due to diabetes, I suffer from bad vision. Also have had seizures and comas due to being incarcerated. Lack of diet, insulin control and depression.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Due to my disease, I was incarcerated at Fremont Correctional facility on a non-violent case, with s.o.'s and people that murdered. I was denied boot camp due to my disease, with minimum points denied to go to a camp. Due to my medical four status.

Claimant was sent a supplemental form to complete and file with the Special Masters. He did not do that. He has not filed any medical records or other documents to support his claim.

Defendants' answer does not contest that Claimant was and is a diabetic. Medical records attached to the answer of Defendants reflect that Claimant was non-compliant with his diabetic diet. He received medical care while in DOC, including insulin, finger sticks, and a diabetic diet. The medical records reflect further that Claimant would eat inappropriate foods at times.

Claimant was given the opportunity to file a reply to the answer of Defendants. He has not filed any further reply or documents. The claim will be adjudicated based upon what has been submitted.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant is a diabetic. That is not disputed by Defendants. Claimant is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the**

4

**benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Defendants correctly note that Claimant's allegations are vague and not supported by any backup documentation. Claimant carries the burden pursuant to the Settlement Agreement to prove his claim. He has not done so.

There is no evidence of any discrimination during the 1996-1998 time period. Claimant makes only a general allegation that he was denied boot camp. It is unclear whether Claimant completed a sentence in 1998 or was released on parole. In any event, there is no evidence to support any claim of discrimination during the first period of incarceration by Claimant in 1996-1998.

The medical records submitted by Defendants for the 2000-2002 period reflect that Claimant was a diabetic with significant health issues. The records reflect, though, that Claimant was not compliant with his diet and consumed inappropriate foods. It is clear that DOC provided medical care, insulin, and a diabetic diet. Claimant was non-compliant on several occasions. There is no evidence before the Special Master that Claimant safely could have gone to a camp. In light of the difficulty in controlling his blood sugar level, assignment to a camp would have been inappropriate.

In order to prevail on a claim, a claimant must prove that he was treated differently than a person without a disability. Differences in treatment alone will not establish a claim, if there is a valid reason for such treatment. In this case, Claimant has not proven that he could have gone to a camp without serious medical repercussions to him. Claimant's allegations that he was not provided a diabetic diet and insulin are not true, as evidenced by the medical records submitted by Defendants. Claimant has not proven that he was subjected to discriminatory actions by DOC and its staff.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is no, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Brian M. Thompson is denied, as he has failed to affirmatively answer all four questions of the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 16, 2006.**

SIGNED this 24th day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master