IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 01-178
Category I
Claimant: Everett G. Richardson, #46731
Address of Claimant: 1607 Sage Boot Drive, Pfulgerville, TX 78660

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Everett G. Richardson (Claimant). Claimant was in the custody of the Colorado Department of Corrections (DOC) at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Claimant discharged his sentence and was released from DOC custody.

This claim has been assigned to Category I. Claimant was not entitled to a hearing, and the claim must be adjudicated upon the documents submitted by both sides. Defendants previously filed a motion to dismiss. That motion was partially granted, and the mobility impairment claim is the only part of the claim remaining. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge

Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

2

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant filed his form while in DOC custody. He stated that he came into DOC custody on June 29, 2004. He was placed into a community placement and then discharged his sentence.

In his claim form, Claimant stated, in part, as follows:

> I suffer from degenerate disk disease on my lower back which impairs my ability to lift, sit, stand & work for any extended period of time.
> During the month of June or July (04) while at DRDC it was brought to my attention that I am hypoglycemic which cause me to shake at times, blurred vision & frequent headaches.

In response to the question on the claim form concerning discrimination by DOC and its staff, Claimant stated as follows:

> For my chronic back pain I was simply given tylenol & placed on a lower bunk lower tier restriction. For my hypoglycemia, I was original supposed to receive three snacks daily but that was discontinued after only one day & I was told to order snacks from commissary.

Claimant was provided with supplemental forms to complete. He did fill out those forms and returned them to the Special Master. Claimant stated that he was injured and was denied medical treatment in 1999-2001. He received an "assessment but no MRI was ever done." He also indicated that he fell in the shower and had surgery on his hand.

Claimant did submit some medical records. One record was a medical report from Dr. Kanard in November, 2004. In that report, Claimant reported to the physician that he had fallen through a roof in 2000 while working. He hurt his right knee and lumbar spine. Dr. Kanard diagnosed Claimant as having osteoarthritis in the right knee and degenerative joint disease in the lumbar spine. He placed certain limitations on his work.

Defendants filed a motion to dismiss. Part of the motion was granted. Defendants were granted additional time in which to further respond to the claim, but nothing further has been filed. The motion to dismiss will be treated as a general denial of the entire claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to prevail on his claim, Claimant must establish that he was disabled on or before August 27, 2003. It is difficult to ascertain exactly when Claimant was in the custody of DOC. As noted previously, the only remaining disability is mobility impairment. Vision impairment and hypoglycemia have been dismissed.

The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant has had back and knee problems since his fall in 2000. Claimant has made general allegations about how his walking has been affected. Claimant will be given the benefit of the doubt, and the Special Master determines that he was mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant states that he received a lower tier and lower bunk restriction. He received a non-narcotic pain medication, but did not believe that this was sufficient. There are no other allegations that Claimant was denied entry into any programs or failed to receive services due to his mobility impairment.

Claimant did not like the quality of medical care that he received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and

Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has not proven that he was the victim of discrimination as prohibited by the ADA and Rehabilitation Act. A dispute over the medical care provided is insufficient to establish discrimination.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the negative answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Everett G. Richardson is denied, as he has failed to affirmatively answer all four questions in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 16, 2006.**

SIGNED this 26th day of July, 2005.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

5