IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 02-317
Category II
Claimant: Mariano de la Cruz, #97967
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of Mariano de la Cruz (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>2. Permanent Hearing Impairments
>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>3. Permanent Vision Impairment
>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody on July 30, 1998. It is not clear from the documents submitted by both sides in which correctional facilities Claimant has been placed. He was at FCF when he filed has claim and has remained at that facility.

In his claim form, Claimant stated as follows:

> My vision is impaired, without proper vision I am not able to participate in activities that normally could participate. I cannot read properly. I cannot participate in any activity which requires eye and hand coordination. As requiring reading and writing. Even walking. Many times I have collided with another individual or objects because of my disability.
> My walking (mobility) is impaired. Without proper mobility I am not able to participate in activities that normally could participate. I cannot work properly. I cannot participate in any activities that requires my legs, because I have a lot of pain in my joints. I was layoff from DOC industries because I can not handle to work because I have a lot of pain in my joints, because of my disability.

Claimant responded to the question concerning discrimination by DOC and its staff as follows:

> I have been discriminated by DOC because they refuse to treat my condition medically. Further more, they do not or will not provide physical therapy; inability or refusal to help me with my condition has resulted in a continue degenerative condition and has contributed to the progressive loss of what vision I have left. Since I first requested medical assistance or help, my eyesight has worsened considerably.

> I have been discriminated by DOC, because they have refused to treat my condition medically. Furthermore, they do not or will not provide me with physical therapy or specialist Dr. for my illness. Inability or refusal to help me with my condition has resulted in a continued degenerative condition has contributed to the progressive loss of mobility. Since I first requested medical attention or assistance for help, my entire body is worse and all the joints of my hand starting getting worse, including my knee joints.

In his supplemental forms, Claimant states, in part, as follows:

> From day one I came to DOC, I requested medical attention to my eyes.

Claimant further stated that he was refused medical attention and did not promptly receive eye glasses.

In February, 2005, Claimant forwarded a letter to the Special Masters. Most of the letter was in Spanish.[2] In the letter, Claimant stated that he wished to stop his claim because he believed DOC staff would become angry with him.

Defendants filed a response to the claim. The response was basically a motion to dismiss, as no medical records were attached the response. Defendants have argued that Claimant is not part of the class, as he has failed to establish that his medical conditions meet the definitions of the Settlement Agreement.

Claimant was given an opportunity to file a reply to the response of Defendants. Claimant has filed nothing further nor had he reiterated any desire to not proceed with his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the boxes for vision impairment and mobility impairment. The question then is whether he meets the criteria for either as set by the Settlement Agreement.

**Vision Impairment:** The definition for vision impairment in the Settlement Agreement is as follows:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

To be blunt, a claimant would have to be virtually blind to meet this definition.

Claimant's statements do not shed much light on his vision issues. In his supplemental form, Claimant does not indicate what his vision problem really is. He indicates that he has trouble engaging in day to day activities. It is clear that Claimant can see and that he has received prescription glasses. The glasses were delayed for some period of time, but he did receive them. The Special Master does not know from the allegations of Claimant whether his eyesight is correctable or not. There are no allegations that anything could be done to improve Claimant's eyesight. Indeed, his eyesight might be the same even if he were not in prison.

The claim process is intended to allow a *pro se* claimant the opportunity to state in his own

---

[2] This Special Master speaks and reads Spanish and has reviewed the letter of Claimant in that language.

5

words what is problems are and how DOC discriminated against him. There is a minimum requirement that must be met by a claimant to place Defendants on notice as to what occurred on or before August 27, 2003. That minimum requirement has not been met by Claimant as to his vision impairment either in English or Spanish. The allegations set forth by Claimant are so vague that they fail to establish a *prima facie* case under the Settlement Agreement.

**Mobility Impairment:** Mobility impairment is defined by the Settlement Agreement. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Claimant has not alleged that he was in a wheelchair on or before August 27, 2003. Further, there is no indication as to what Claimant's condition really is. He claims that he has pain but does not discuss why. He alleges that he cannot work but has submitted nothing to substantiate this. As with vision impairment, Claimant has failed to meet the most basic and minimal requirements necessary to establish a claim.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is no and Claimant is not part of the class, this question does not need to be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is no and Claimant is not part of the class, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Mariano de la Cruz is dismissed, as he has failed to answer affirmatively the four questions in the Order of November 23, 2004 and has failed to provide minimal allegations that would constitute a *prima facie* case; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 16, 2006.**

SIGNED this 31st day of July, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master