IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-00343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 01-092
Category I
Claimant: James Rudnick, #68432
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

**DEFENDANTS' RESPONSE TO RUDNICK'S LETTER
(DIRECTED TO THE HONORABLE JUDGE KANE)**

---

Defendants, through the Colorado Attorney General, respectfully submit the following Response to Rudnick's Letter.

### HISTORY OF RUDNICK'S <u>MONTEZ</u> CLAIM

1.  James Rudnick, #68432, was a claimant assigned to Category I who claimed to have mobility and vision disabilities. Based on documents and briefs submitted by the parties, Special Master Borchers found that Rudnick did have a mobility disability. (<u>See</u> Final Order, docketed at 1133).

The Special Master ordered Defendants to provide Rudnick with the following items: a medical mattress, a heating pad, boots that fit his feet, custom made orthotics, and a chair and adjustable stool that accommodates his height and weight and adequately supports his back and lower extremities. (Id.).

2. Rudnick's damages claim also alleged that the glasses he has received from the CDOC fail to adequately address his particular vision needs. (Final Order, p. 4). The Special Master denied Rudnick's claims regarding his vision because Rudnick does not have a vision disability. (Id., p. 5). The Special Master then stated an alternative ground for denying Rudnick's claim about his glasses. "The Special Master would note that even if Mr. Rudnick qualified as disabled because of a vision impairment under the Settlement Agreement . . . the ADA and Rehabilitation Act are not available for claims of substandard medical treatment." (Id.).

3. The Final Order allowed both parties to file an objection with this Court on or before December 5, 2005. Defendants filed a timely appeal. (Docketed at 1211). Rudnick did not appeal the Final Order. On December 16, 2005, this Court denied Defendants' appeal and affirmed the Final Order. (See Order dated December 16, 2005, docketed at 1243).

4. On or around July 20, 2006, Rudnick sent a letter to this Court raising two complaints. (Letter dated July 18, 2006, docketed at 2145). He first complaints that, even though the Special Master previously determined that he has a mobility disability, the CDOC has screened him and concluded that he has no disabilities. (Id.). He claims the CDOC's conclusion that he has no disabilities is fraudulent. Rudnick also complains about his glasses, alleging that he is an old pair from 1995 because the CDOC will not give him a new pair. (Id.). Rudnick states that he has grieved both of these issues several times but has not received the response he wants. (Id.). He asks this Court to order the CDOC to recognize his mobility disability and give him the "vision accommodations" (presumably glasses) a specialist has recommended. (Id.).

## MOBILITY ISSUES

5. The CDOC originally evaluated Rudnick in early 2005 to determine whether he had either a mobility or a vision disability. Following a disability screening, his medical provider concluded that Rudnick did not have any disabilities. The CDOC issued an Accommodation Resolution in February 2005 stating that Rudnick had no disabilities.

6. Despite a medical doctor's conclusion that Rudnick was not disabled, the Special Master found that Rudnick had a mobility disability

based on Rudnick's written allegations and what the Special Master interpreted to be inconsistencies between the Accommodation Resolution form and the way the doctor filled out a Verification of Disability form.  As noted above, the Special Master held in Rudnick's favor and ordered the CDOC to provide Rudnick with a medical mattress, a heating pad, new boots, custom-made orthotics, and a chair and a stool to accommodation his back and lower extremities. (Final Order, p. 8).

7. The CDOC complied with the Final Order and provided Rudnick with the ordered items.  Defendants previously responded to Rudnick's allegations regarding compliance with the Final Order. (See Defendants' Response to "Fourth Report and Recommendations of the Special Masters", filed on March 1, 2006, docketed at 1661).

8. On November 16, 2005, the CDOC gave Rudnick a second medical mattress, an electric heating pad, and an adjustable height upholstered stool with a back rest.  While the Final Order mentions both a chair and a stool, Rudnick informed Ms. DeeAnne Kahler, the Health Services Administrator at the Limon Correctional Facility, that the Special Master had misunderstood his request: he only wanted a chair or a stool, not both.  Rudnick accepted the adjustable stool and informed Ms. Kahler that it would meet his needs.

9. The CDOC also gave Rudnick the footwear ordered in the Final Order. Rudnick was fit for new boots on November 16, 2005. After receiving his new boots, Rudnick told Ms. Kahler that the new boots fit well and met his needs. Finally, the CDOC arranged for Abilities Unlimited to build Rudnick a pair of custom-made orthotics. After fitting Rudnick on November 21, 2005, Abilities Unlimited delivered a pair of custom-made orthotics to LCF on January 9, 2006. After Rudnick complained on January 12, 2006, that the orthotics were uncomfortable, the CDOC arranged for Abilities Unlimited to refit Rudnick and build him a new pair of orthotics. Rudnick received those new custom-made orthotics on March 8, 2006. Consequently, the CDOC has complied with the Final Order by providing Rudnick with the ordered items.

10. Following the Special Master's finding that Rudnick had a mobility disability, the CDOC decided to rescreen Rudnick to determine whether he was in fact disabled. As part of this evaluation process the CDOC videotaped Rudnick while he was working his job as an electrician. As part of his electrician job, Rudnick is required to climb up and down ladders. Video evidence shows Rudnick walking around the Limon Correctional Facility, at times carrying his ladder, without any apparent problems. The video also show Rudnick climbing up and down his ladder

without any problems, and also standing at the top of the ladder balancing himself without needing to hold onto anything.

11.     Defendants intended to show this video while cross-examining Rudnick during the Compliance Hearings scheduled last month.  (Class Counsel listed Rudnick as a witness.)  Defendants can submit a copy of this video if the court wishes.

12.     Based on a physical examination of Rudnick, review of the videotape, and review of Rudnick's medical file, Rudnick's medical provider again concluded that Rudnick did not have a mobility disability.  The CDOC also again concluded that Rudnick's vision problems do not rise to the level of a disability.  On June 14, 2006, the CDOC issued a new Accommodation Resolution. (See Accommodation Resolution, attached to Rudnick's Letter, docketed at 2145).  The Accommodation Resolution stated that "[a] DOC physician and the Chief Medical Officer have determined that you do not have a qualifying vision or mobility disability pursuant to the mandates of the Americans With Disabilities/Rehabilitation Acts, therefore you are not entitled to accommodations." (Id.).

13.     The Accommodation Resolution is not fraudulent.  It is based on a review of his actual physical abilities and condition.  New evidence not

6

available to the Special Master (the videotape) confirms that Rudnick has no problems with his mobility.

14. The CDOC is treating Rudnick fairly. Even though subsequent evaluation has proven that Rudnick has no mobility problems, the CDOC has continued to comply with the Final Order (as the CDOC is legally required to do) and allowed Rudnick to keep the items ordered by the Special Master.

15. If Rudnick insists on the challenging his Accommodation Resolution based on a perceived discrepancy between the Accommodation Resolution and the Final Order, Defendants will move for Relief from Judgment of Order pursuant to Fed. R. Civ. P. 60(b)(2) based on "newly discovered evidence." Video evidence confirms that conclusion of multiple doctors that Rudnick does not have a mobility disability.

## VISION ISSUES

16. The CDOC regularly sends Rudnick to optometrists and ophthalmologists, perhaps at often as twelve times per year. Examples of various vision checks are attached collectively as Exhibit A. Rudnick was given (and signed for) state issued prescription glasses on, at least, the following dates: January 18, 2001, April 16, 2003, June 26, 2003, June 15, 2004, and May 12, 2005. Id. Rudnick refused to accept a pair of prescribed

7

glasses on December 27, 2005. Id.  The CDOC is well aware of Rudnick's vision needs and has consistently provided him with appropriate glasses. Id.

17.     Rudnick has repeatedly demanded either Lasik eye surgery, contacts, or a specific type of eyeglass lenses that the CDOC does not allowed.  Undersigned counsel has been informed that, at some point in time, a specialist told Rudnick that he could benefit from a specific type of lenses.  Unfortunately, the CDOC does not allow inmates to possess that specific type of eyeglass lenses.  In general, the CDOC only allows types of eyeglasses that use plastic lenses.  Undersigned counsel has been informed that the type of lenses Rudnick wants can only be made with glasses lenses, not plastic.  He refuses to be content with any glasses except the specific type that he has decided he needs.

18.     Since 2000 Rudnick has repeatedly demanded to receive that one specific type of lenses which he knows are not allowed in CDOC custody.  Despite his complaints, the CDOC has provided Rudnick with appropriate glasses.  "The glasses you have been issued have been made appropriately based upon your current prescription.  The eyeglasses you are requesting are not available through the Department of Corrections.  Also, you do not meet the criteria for contact lenses." Letter by G. Ventura,

8

September 29, 2005, attached along with other letters and grievances as Exhibit B.

> You state that DOC has failed to issue you proper eye glasses. This issue has been addressed in numerous letters from me over the past year. Departmental and facility policies regarding this issue have been fully explained to you. Still, you continue to misrepresent the facts of your care to professional governing bodies, advocacy organizations, and now to the Executive Director of the Department of Corrections. Efforts to misrepresent and circumvent the very standards designed to ensure your health care are unlikely to yield a positive outcome.

Letter by Chris Petrozzi, dated July 12, 2002, attached within Exh. B.

19.  In response to another grievance by Rudnick raising the same issue, a CDOC medical provider explained, "you have addressed this issue in the past. The answer remains the same. The glasses have been made to the optometrist specifications. The type [of] eye wear you are requesting is not available." See Response to Step II Grievance, dated September 20, 2005, attached within Exh. B.

20.  Contrary to Rudnick's allegations, eye specialists have noted that his CDOC-issued glasses are appropriate. "Evaluation by eye specialist denied need for special prescript[ion] glasses." Response to Step II Grievance, dated January 20, 2004, attached within Exh. B. Similarly, "[s]ince you received State issued prescription eye glasses based upon the

9

recommendations of an ophthalmologist, I feel compelled to disagree with your allegations that he Department of Corrections has been indifferent or neglectful." Letter by Christopher Petrozzi, dated March 9, 2001, attached within Exh. B.

21. Rudnick raised and lost this issue in his Montez damages claim. The Special Master noted that Rudnick complained that his state-issued "glasses are 'one size fits all' [and] they do not adequately address his particular vision needs." (Final Order, p. 4). The Special Master denied Rudnick's claim about his glasses for two reasons: (1) Rudnick does not have a vision disability, and (2) allegations about the quality of medical care cannot be resolved under the ADA or Rehabilitation Act. (Id., p. 5).

22. Rudnick never appealed the Special Master's order denying his vision claims. It is unclear whether Rudnick's current letter constitutes an appeal. If so, it is well outside the December 5, 2005 deadline to object set by the Special Master. Even if Rudnick could appeal at this time, the Special Master did not abuse his discretion in denying Rudnick's vision claim.

## GRIEVANCES

23. Finally, Rudnick has not been denied the opportunity to file grievances. Rudnick previously filed a motion to this Court complaining

that he does not like the CDOC's responses to his grievances. On April 24, 2006, Judge Nottingham denied Rudnick's motion. (Order dated April 24, 2006, docketed at 1931).

> This matter comes before the court on a motion by James Rudnick alleging that prison officials are refusing to process grievances properly. Although the motion is directed to Judge Kane, the relief requested is not simply a review of an award by the special masters. Accordingly, this is not an issue for Judge Kane. Moreover, the court finds and concludes that the relief requested is not relief which can be awarded in this case.

(Id.). Like his previous motion, Rudnick's current letter is not requesting a review of the Special Masters' Final Order, nor is he requesting relief which can be awarded in this case.

24. Review of the CDOC's Legal Grievance Log shows that Rudnick has filed 29 grievances in the past year. (See Legal Grievances, attached as Exhibit C). He filed at least 12 "disability" grievances. (Id.). At least four of the "medical" grievances regarded his vision and/or a request for specific type of glasses. (Id.). Review of the Comments column, as well as reviewing the sampling of grievances attached as Exhibit B, shows that Rudnick filed multiple grievances about the same issues. (Id.). Many of his grievances continue to be without merit.

Respectfully submitted this 11th day of August, 2006.

11

JOHN W. SUTHERS
Attorney General

s/ Jess A. Dance
JESS A. DANCE, 35803*
Assistant Attorney General
Civil Litigation & Employment Law
    Section
Attorney for Defendants

Colorado Attorney General's Office
1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5165
Fax: (303) 866-5443
Email: jess.dance@state.co.us

## CERTIFICATE OF SERVICE

I certify that on August 11th, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that I have mailed copies of the foregoing via the United States mail, postage prepaid, at Denver, Colorado, this 11th day of August, 2006, addressed as follows:

James Rudnick, #68432
LCF
49030 State Highway 71
Limon, CO 80826

*Courtesy Copy To:*

Cathie Holst

                                                      s/ Jess A. Dance