IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 03-152
Category III
Claimant: Anthony Hernandez #83042
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO. 81215-1010

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on June 30, 2006. Present were the following: Anthony Hernandez, Claimant; Brooke Meyer, from the Office of the Attorney General, for the Defendants; Orville Neufeld, D.O., witness for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Orville Neufeld. Exhibits A through D were offered into evidence by Claimant. Exhibits 1 through 13 were offered into evidence by Defendants. Attached as part of this order is a comprehensive Appendix of Exhibits listing each exhibit admitted into evidence and each exhibit not admitted into evidence. At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been

1

reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE

2

>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses. Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Hernandez submitted a claim that was assigned claim number 03-152. The claim is premised on an alleged disability due to diabetes.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Hernandez first entered CDOC custody in 1994. He was initially housed at the Limon Correctional Facility (LCF). In 2000, he was transferred to the Centennial Correctional Facility (CCF). In June of 2004, he was transferred to the Colorado Territorial Correctional Facility (CTCF), and has remained there until the present.

4. Claimant was diagnosed with diabetes in 1990 or 1991. He has been taking insulin since 1993. He testified that due to his diabetes, he suffers from frequent urination, depression, stress and pain in his feet and legs. He stated that on occasion he has gone into diabetic comas. Sometimes when his blood sugar levels are out of balance, he has trouble communicating.

5. Claimant Hernandez indicated that while he was housed at CCF, he would have to forego his recreational time because it was scheduled at the same time that insulin was distributed at the med line. He testified that this was the situation the entire time he was housed at CCF. Hernandez also complained that while at CCF and also at CTCF, he was unable to obtain finger sticks to test his blood sugar because they were often administered during times when inmates were prohibited from moving within the facility. Additionally, Hernandez testified that while he was housed at CCF, he worked as a shipping clerk. He was told that he could not leave his job to obtain finger sticks for testing his blood sugar or he would be fired. As a result, he was not able to test his blood sugar on a regular basis.

6. While in LCF, Hernandez was supplied with soft shoes and a single cell, and this carried over for a short time while he was at CCF. However, in approximately 2000, he was told that he had to purchase his own soft shoes. He now has state issued boots but cannot wear them due to his diabetes. A few months ago, he was placed in a double cell and assigned the upper bunk, which poses a danger to him if he suffers a diabetic coma.

7. Dr. Neufeld testified based upon his review of Claimant Hernandez's medical records. Dr. Neufeld indicated that the records disclose that Hernandez has not

complied with his diabetic diet. Hernandez acknowledges that he is not compliant with the diabetic diet provided by the CDOC and that he prefers to regulate his own diet.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Hernandez has a permanent disability due to his diabetes. Claimant's medical records show that CDOC has placed medical restrictions on him due to his diabetes including temporary restrictions for lower bunk-lower tier and permanent restrictions against working with heavy machinery or on any job where loss of consciousness would be hazardous.

5

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

4. The key issue is whether Claimant was discriminated against because of his disability. The Special Master finds and concludes that CDOC did discriminate against Claimant Hernandez because of his diabetes by failing to accommodate him in his use of the facility's recreational areas and in his job as a shipping clerk. Specifically, the uncontroverted evidence establishes that Hernandez was required to choose between utilizing the recreation facilities at CCF and receiving his diabetes medications and testing supplies. Likewise, the uncontroverted evidence shows that he was required to choose between his job and receiving his finger sticks. Consequently, the Special Master finds and concludes that Hernandez has sustained his claim and that an award of damages is appropriate.

5. No evidence was presented indicating that Hernandez suffered any monetary damages as a result of Defendants' failure to accommodate his disability. Nor was any evidence presented that Hernandez suffered any specific medical consequences as the result of not receiving his medications and/or medical testing supplies. Under these circumstances, the Special Master finds and concludes that a damage award in the amount of $500.00 will adequately compensate Claimant Hernandez for Defendants' violation of his right to be free from discrimination because of his disability.

## IV. ORDER

IT IS HEREBY ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, judgment should be entered in favor of Claimant Anthony Hernandez and against Defendants in the amount of $500.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before October 16, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 16th day of August, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

# CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 16th day of August, 2006 to the following:

Mr. Anthony Hernandez, #83042  
CTCF  
P.O. Box 1010  
Canon City, CO 81215-1010

Ms. Brooke Meyer  
Mr. Jess A. Dance  
Mr. James X. Quinn  
Office of the Attorney General  
Litigation Section  
1525 Sherman St., 5th Floor  
Denver, CO 80203

                                          /s/ Susan L. Carter  
                                          _____  
                                          Susan L. Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-152
Category III
Claimant: Anthony Hernandez, 83042
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 80215-1010

---

**APPENDIX OF EXHIBITS**

---

The following is a list of Exhibits introduced by CLAIMANT and ADMITTED into evidence in the above referenced claim:

| | | |
|---|---|---|
| EXHIBIT A: | 1 page | Colorado Department of Corrections Centennial Correctional Facility Informative Report for Hernandez. |
| EXHIBIT B: | 1 page | Unsigned letter of September 18, 2003 addressed to "To Whom It May Concern" form "Mr. C. Wagner." |
| EXHIBIT C: | 3 pages | Colorado Department of Corrections Progress Assessment Summary for Anthony Hernandez, dated 03/28/2005. |
| EXHIBIT D: | 1 page | Typewritten letter known as "Attachment 1." |

---

The following is a list of Exhibits introduced by DEFENDANTS and ADMITTED into evidence in the above referenced claim:

EXHIBIT 1:    1 page         Query Offender Programs dated 06/13/2006 for Anthony

1

|  |  |  |
|---|---|---|
|  |  | Hernandez. |
| EXHIBIT 2: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 3/7/96. |
| EXHIBIT 3: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 5-6-96. |
| EXHIBIT 4: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 4-6-97. |
| EXHIBIT 5: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for A. Hernandez dated 12/3/98. |
| EXHIBIT 6: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Hernandez dated 1/5/99. |
| EXHIBIT 7: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 3-21-00. |
| EXHIBIT 8: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 6/12/00. |
| EXHIBIT 9: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for A Hernandez dated 12-5-02. |
| EXHIBIT 10: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 12-10-03. |
| EXHIBIT 11: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Anthony Hernandez dated 23 Feb. 04. |
| EXHIBIT 12: | 1 page | Diabetes Education Class SOAP notes for Anthony Hernandez dated 7/27/05. |
| EXHIBIT 13: | 1 page | Department of Corrections Ambulatory Health Record for Anthony Hernandez dated 03/22/2006. |