IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 03-196 (formerly 02-267)
Category III
Claimant: Gaudalupe Ramirez, #112701
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on June 29, 2006. Present were the following: Guadalupe Martinez, Claimant; Cruz Caballero[1], Case Manager and Translator; Brooke Meyer, from the Office of the Attorney General for Defendants; Dr. Orville Neufeld, witness for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Orville Neufeld. The following exhibits were offered into evidence by Claimant:

| | | |
|---|---|---|
| Exhibit A: | 1 page | Colorado Department of Corrections Offender Grievance for Guadalupe Ramirez, Step 1, dated 12-12-05. |
| Exhibit B: | 1 page | Colorado Department of Corrections Offender Grievance for Guadalupe Ramirez, Step 1, dated 05/03/06. |
| Exhibit C: | 1 page | Colorado Department of Corrections Offender Grievance for Guadalupe Ramirez, Step 1, dated 6/5/06. |

---

[1] Mr. Caballero is a case manager at CTCF and is proficient in both English and in Spanish. Since Claimant has little comprehension of the English language, Mr. Caballero was brought in to translate. At the commencement of the hearing, Mr. Caballero was placed under oath as a translator.

1

The following exhibits were offered into evidence by Defendants:

    Exhibit 1:    3 pages    Colorado Department of Corrections Progress Assessment Summary for Guadalupe Ramirez, dated 12/02/2004.
    Exhibit 2:    1 page    Accommodation Resolution for Guadalupe Ramirez, dated 10-25-05.

At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.    General inconvenience or nominal damages;
> II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.    Damages due to severe physical injuries; and
> V.    Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

>   III.   DEFINITIONS
>
>   A. COVERED DISABILITIES
>   The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses. Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Ramirez submitted a claim that was assigned claim number 02-267. The claim is premised on an alleged disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. On March 7, 2006, Special Master Borchers reassigned Mr. Ramirez's claim to Category III, at which time it was also assigned a new claim number 03-196.

4. Claimant Ramirez entered CDOC custody in 2002. He was housed for one night at Kit Carson Correctional Facility and then for a short period of time at the Denver Reception & Diagnostic Center (DRDC). Thereafter, he was transferred to the Colorado Territorial Correctional Facility (CTCF) and has remained there until the present.

5. Claimant was diagnosed with diabetes 19 years ago. For the past 19 years, he has taken insulin for his diabetes. Until May of 2006, he was receiving NPH. In May of 2006, his insulin medication was changed to Lantus.

      6.     Claimant Ramirez does not claim that he was denied access to any programs, services or facilities as result of his diabetes. He has worked in the kitchen serving food since he arrived at CTCF in 2002.

      7.     Ramirez asserts that when his blood sugars are too low, he cannot understand when people are talking to him; and sometimes he falls asleep when his blood sugars are too low. He complains that for four years, until May of 2006, his medication for diabetes was not changed despite his repeated requests that it should be increased because his blood sugars were too high. Ultimately, his dosage was increased but he still believes that his blood sugars are high.

      8.     Ramirez also asserts that every time he had a low blood sugar and sought medical assistance, the CDOC personnel treated it as a self-declared emergency and required to pay for the service. He believes that he has paid approximately $200 for medical services due to his diabetes.

      9.     Dr. Neufeld testified regarding Claimant Ramirez's medical records. Dr. Neufeld indicated that initially Ramirez was treated with NPH, a long-acting form of insulin together with some quick-acting insulin. The dosages were changed as deemed necessary by his medical providers. Ramirez has been given a permanent pass for blood sugar checks. He has been issued an American Diabetic Association compliant diet on various occasions. Dr. Neufeld stated that, according to the medical records, Ramirez has missed his meals many times, which can cause blood sugars to be low; and has also failed to eat his diabetic snacks.

      10.    Dr. Neufeld also testified that Ramirez has been assigned to the Chronic Care Clinic for treatment of his diabetes. A semi-annual fee is charged for the Chronic Care Clinic. All diabetics are automatically assigned to the Chronic Care Clinic. An inmate may remove himself from the Chronic Care Clinic but he will then be charged on a per kite basis for medical care. All inmates are charged for medical treatment and chronic care is actually less expensive because the charge is on a semi-annual, rather than a per kite basis. Dr. Neufeld indicated that the amounts paid by Mr. Ramirez for medical care could include some self-declared emergencies, which even chronic care inmates are charged for on a per kite basis. A self-declared emergency is a condition that CDOC medical personnel deem to be due to the patient's own conduct or negligence.

### III.  CONCLUSIONS OF LAW

      1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

      2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment;

5

or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Ramirez has sustained his allegation that he suffers from a permanent disability due to his diabetes, within the meaning of the Rehabilitation Act, the ADA and the Remedial Plan. The uncontroverted evidence establishes that Ramirez is a diabetic who has been taking insulin for 19 years to control his blood sugars, and who is significantly limited in one or more major life activities due to his diabetes.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs and benefits offered by the CDOC.

4. The key issue is whether Claimant was discriminated against because of his disability. Claimant Ramirez acknowledges that he was able to utilize the facilities, programs and services offered by CTFC, and that he was not discriminated against with

6

respect to any facilities, programs and/or services because of his disability. Claimant's main contention is that he did not receive proper medical treatment for his diabetes. However, claims relating to the alleged failure of the CDOC to properly treat the medical condition causing his disability or to provide him with proper medication does not constitute a violation of the ADA or the Rehabilitation Act. While such actions or failures to act may give rise to claims for deliberate indifference to medical needs, the courts have held that substandard medical care or failure to properly treat a disability does not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation*, 403 F.3d 1134, 1144 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

    5. The Special Master further finds and concludes that Claimant Ramirez has not sustained his claim that he was discriminated against because of his diabetes through CTCF's policy which required him to pay medical treatment from the chronic care clinic and for medical treatment due to self-declared emergencies. The evidence establishes that policies requiring payment for medical treatment are applied by CTCF in the same manner to all inmates. All inmates who utilize the chronic care clinic -- regardless of whether or not they are deemed disabled under the ADA -- are required to pay a small semi-annual fee. Likewise, any inmate who seeks medical treatment for what is deemed a self-declared emergency is charged a fee for the treatment, regardless of whether or not the inmate has a qualifying disability within the meaning of the ADA. In short, there is no evidence that Ramirez was treated differently than non-disabled inmates with respect to charges for medical care.

    6. Because Claimant Ramirez has not proved by a preponderance of the evidence that he has been discriminated against by the CDOC because of his disability due to diabetes, his Claim must be denied.

## IV. ORDER

    IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Ramirez's claim with prejudice; and

    IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before October 16, 2006** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

8

SIGNED this 16th day of August, 2006;

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

    I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 16th day of August, 2006 to the following:

Mr. Guadalupe Ramirez, #112701
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Brooke Meyer
Mr. Jess Dance
Mr. James X. Quinn
Office of the Attorney General
Litigation Section
1525 Sherman St., 5th Floor
Denver, CO 80203

                /s/ Susan L. Carter

                _____
                Susan L. Carter