IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLO.

AUG 28 2006

GREGORY C. LANGHAM
CLERK

---

Claim Number: 02-342
Category II
Claimant: Donnis Moore, #65624
Address of Claimant: 3015 Josephine Street, Denver, CO. 80205

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Donnis Moore. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Remedial Plan further goes on to discuss categories and criteria for special placement. *Remedial Plan, Section V., paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "inmates who do not need or require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking . . ." Permanent hearing impairments affect those inmates who are "permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." An inmate is deemed to have a "permanent vision impairment" if he or she is "permanently blind," or if he or she has a "vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses. Permanent diabetics are those "Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." *Remedial, Section V., paragraph A.* These definitions control as to implementation of the Remedial Plan and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.     Claimant Moore submitted a claim that was assigned claim number 02-342. The claim is premised on an alleged mobility disability and vision disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Moore entered CDOC custody in August 2000. He was released from CDOC custody in February of 2005. While in CDOC custody, Claimant was housed at the Fort Lyon Correctional Facility.

4.      Claimant asserts that he is blind and that he suffers from glaucoma. He alleges that he cannot read, cannot see objects and cannot watch television. He further alleges that he suffers from arthritis and joint disease in his back and knees; and that he also suffers from disc disease for which he has not received proper evaluation or treatment. Claimant also contends that he suffers from heart disease.

5.      Claimant Moore does not claim that he was denied access to any programs or facilities as result of his alleged disabilities. Rather, he contends that he could not attend or participate in classes and that he could not perform prison jobs because of his medical problems. As a result, he did not receive earned time credit which would have otherwise been available to him if he could have participated in classes and performed prison jobs.

6.      Claimant also contends that, on one occasion, he fell down after his cane had been taken away from him. After this fall, prison personnel returned Moore's cane to him.

### III. CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled *individual who is a member of the class*. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V., paragraph A. of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Moore has not sustained his allegation that he suffers from a permanent mobility disability, within the meaning of the Rehabilitation Act, the ADA and the Remedial Plan. Under the criteria established by the Remedial Plan, a Claimant asserting a permanent mobility disability must demonstrate that he or she uses a wheelchair full or part time or that he or she cannot walk 100 yards on a level surface and/or cannot climb a flight of stairs without pause. There is no evidence in the record indicating that Claimant Moore met these criteria. Indeed, the records submitted to the Special Master demonstrate the contrary—Claimant does not use a wheelchair; he can walk 100 yards and climb stairs without a pause. While Claimant undoubtedly has arthritis and a degenerative joint and disc condition, the Special Master finds and concludes that these conditions are not sufficiently restrictive of Moore's ability to ambulate to qualify him for relief under the Remedial Plan.

Additionally, the Special Master finds and concludes that Claimant Moore has not sustained his allegation that he suffers from a permanent vision disability within the meaning of Rehabilitation Act, the ADA and the Remedial Plan. Although Claimant alleges that he is blind and has glaucoma, the medical records provided to the Special Master demonstrate otherwise. Various eye examinations performed while Claimant was in custody resulted in visual acuity results far better than the 20/200 threshold under the Remedial Plan. None of the medical records provided to the Special Master contain a diagnosis of glaucoma. Claimant was provided with eyeglasses but apparently did not use them regularly.

The Special Master finds and concludes that Claimant's heart disease does not fall within the parameters of the Remedial Plan, even if it rises to the level of a permanent physical disability.

3.     Because the Special Master has found and concluded that Claimant Moore's mobility and vision problems do not constitute permanent physical disabilities

cognizable under the Remedial Plan, there is no need to consider the novel question of whether CDOC's denial of earned time can constitute a failure to accommodate under the Rehabilitation Act, the ADA and/or the Remedial Plan.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Moore's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 10, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 10th day of July, 2006

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 10th day of July, 2006 to the following:

Mr. Donnis Moore, #65624
3015 Josephine St.
Denver, CO 80205

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

Susan L. Carter