IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-00343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

## DEFENDANTS' BRIEF REGARDING MEDICAL CO-PAYS
### (DIRECTED TO THE HONORABLE JUDGE KANE)

Defendants, through the Colorado Attorney General, respectfully submit the following Brief Regarding Medical Co-pays.

### STATEMENT OF FACTS

The Colorado General Assembly has required the Colorado Department of Corrections ("CDOC") to charge inmates a co-pay for medical services since 1987. In 1987, the General Assembly ordered the CDOC to charge inmates three dollars "for each visit by such inmate to an institutional or noninstitutional physician . . . except that such charge shall not be assessed for any visit required by the department during the intake process or for an annual physical examination." § 17-1-113, C.R.S. (1987).

In 1989, § 17-1-113 was revised to include exemptions to the co-pay requirement. See § 17-1-113, C.R.S. (1989). The co-pay was waived for "any visit required by the department during the intake process, an annual physical examination, any visit initiated by a medical or mental health staff member, any visit to a physician, dentist or optometrist resulting from a referral by a nurse or physician assistant, any emergency treatment, or a follow-up visit initiated by a medical professional." Id.

In Collins v. Romer, 962 F.2d 1508, 1513 (10th Cir. 1992), the Tenth Circuit held that the 1987 version of the statute was unconstitutional because it failed to ensure that indigent inmates would receive medical care, but that the 1989 version, which created multiple exemptions, was constitutional. The 1989 version was in effect between 1989 and 1998.

In 1998, the Colorado General Assembly once more substantially amended the co-pay statute to ensure more consistent application of the co-payment charges and to more effectively "discourage inmates from seeking unnecessary medical services." § 17-1-113(1)(a), C.R.S. (1998). The legislature ordered the CDOC to "assess consistent copayments, in amounts to be determined by rule of the executive director . . . for every medical service provided." § 17-1-113(2), C.R.S. (1998). The legislature also ordered the CDOC to promulgate rules regarding the medical co-pay system,

2

including "[t]he specific and exclusive bases upon which a copayment may be waived by department personnel." § 17-1-113(4)(a), (d), C.R.S. (1998). The 1998 version is still in effect.[1]

The CDOC's current co-pay system, which went into effect in February, 2005, is detailed in Administrative Regulation ("AR") 700-30. Available at http://www.doc.state.co.us/admin_reg/PDFs/0700_30.pdf, attached as Exhibit A. Under AR 700-30, "All offenders will be charged a sum of $5.00 for each health care visit that is offender initiated." AR 700-30, IV-A-2. "Offenders who have been diagnosed with a chronic health condition," including diabetes, "will be charged the automatic semi-annual (every 183 days) $5.00 co-pay charge as long as the offender is receiving treatment for such condition." AR 700-30, IV-A-7. This is the six-month chronic care co-pay. Id. In addition, an offender who requests to see medical due to a self-declared emergency will be charged a $5.00 co-pay if there is a confirmed emergency or if the inmate is admitted to an infirmary or hospital, or $10.00 if there is not a confirmed emergency. See AR 700-30,

---

[1] In 2000, the General Assembly repealed the requirement that CDOC submit a report to the Colorado legislative audit committee by September 1, 1999, on the volume and kind of services rendered to inmates before and after the 1998 amendment. No other amendments have been made.

3

IV-A-4; Clinical Services Patient Handbook, p. 3, attached as Attachment "A" to AR 700-30.

The CDOC waives the co-pay for certain services. The co-pay is waived for the following services:

1. Intake health examinations or screenings.
2. Intake mental health screenings.
3. Dialysis.
4. Treatment orders such as dressing changes, wound checks, and medication administration.
5. Lab work and x-rays.
6. Work related injuries.
7. Health related educational sessions.
8. Departmental initiated health measures necessary to prevent the spread of infectious or contagious diseases.
9. Pregnancy related visits.
10. Follow-up appointments initiated/scheduled by a health care provider.
11. Sexual assault examinations, including mental health services necessary to treat the offender.
12. Subsequent appointments (not initial) as a result of admission to a DOC special needs unit
13. ADA screenings.
14. Medical unassigned (or other equivalent code).
15. Referrals to specialists/sub-specialists, x-ray.
16. ***Any request or appointment initiated/scheduled by medical staff.***

AR 700-30, IV-B (emphasis in original). The CDOC does not waive the required co-pay for diabetics or for diabetes-related medical visits, unless the visit is for one of the specific and exclusive bases listed in AR 700-30, IV-B.

4

Indigent inmates will not be denied necessary medical care because of their inability to pay the co-pay. "All offenders will have access to necessary health care, regardless of indigency status or ability to participate in a co-pay program." AR 850-14, IV-C-3, available at http://www.doc.state.co.us/admin_reg/PDFs/0850_14.pdf, attached as Exhibit B. "***All offenders will have access to health care regardless of their ability to pay.***" AR 700-30, I (emphasis in original).

At Class Counsel's request, the parties agreed to ask the Honorable Judge Kane whether the CDOC may continue to charge diabetics for medical co-pays as it does all other inmates, including those with other chronic diseases. (See Stipulation and Order Regarding Status of Compliance by DOC with Remedial Plan, ¶¶ B(2), (10), docketed at 2108). The CDOC agreed to temporarily waive all medical co-pays for treatment or visits related to diabetic care (except for the six-month chronic care co-pay) until Judge Kane rules on the co-pay issue. (Id., ¶ B(2)).

**ARGUMENT**

**I.   NOTHING IN THE REMEDIAL PLAN EXEMPTS DIABETICS FROM THE CO-PAY POLICY.**

The Colorado General Assembly has required the CDOC to charge inmates a medical co-pay since 1987. See § 17-1-113, C.R.S. There was a co-pay system in effect in August, 2003, when the parties entered into the

5

Remedial Plan.  At no time has the CDOC waived the co-pay requirement for diabetic inmates or for diabetes-related medical visits and services.

Nothing in the Remedial Plan waives the co-pay for diabetic inmates or for diabetes-related medical visits or services.  The Remedial Plan's only mention of the CDOC's co-pay policy is that "Copays for all medical visits shall be waived for inmates who are classified as medically unassigned." Remedial Plan, § XXVI.  In accordance with this agreement, the CDOC does waive co-pays for medically unassigned inmates. See AR 700-30, IV-B-14.  Besides exempting medically unassigned inmates, the Remedial Plan makes no mention of co-pays.

The Remedial Plan represents a full integration and resolution of the parties' dispute, and extinguishes the complaint, the answer, and other pleadings predating it.  The claims and defenses asserted in the pleadings are exchanged for the legal rights detailed in the agreement.  Had Plaintiffs believed that diabetics should not be charged co-pays, they should have included such a provision in the Remedial Plan.  Because they did not, it is too late to insert such a requirement now.

## II. THE CDOC'S CO-PAY POLICY IS CONSTITUTIONAL.

The State must provide for an inmate's serious medical needs. See Estelle v. Gamble, 429 U.S. 97 (1976).  However, as long as an inmate's

6

serious medical needs are met, it is a matter of state law whether the cost of that care shall be borne by the state or the prisoner. Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245-46 (1977). "Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him." Id. at 245 n.7. If a free citizen does not have a right to free medical care, there is no reason why an inmate should have such a right. See Bobblett v. Angelone, 942 F. Supp. 251, 253-54 (W.D. Va. 1996).

States can require inmates to pay co-pays for medical care. Revere, 463 U.S. at 245-46; Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404 (9th Cir. 1985); Negron v. Gillespie, 111 P.3d 556, 558 (Colo. App. 2005). As noted above, the Colorado General Assembly requires the CDOC to charge inmates a medical co-pay. § 17-1-113, C.R.S.; AR 700-30.

The CDOC's co-pay policy has been upheld by the Colorado Court of Appeals. Negron v. Gillespie, 111 P.3d 556, 558 (Colo. App. 2005). In addition, policies similar to Colorado's co-pay policy have been consistently upheld. See, e.g., Shapley, 766 F.2d at 408 (complaint which challenged $3 co-payment requirement dismissed because complaint failed to allege the policy deprived indigent inmates of necessary medical care); Reynolds v. Wagner, 936 F. Supp. 1216, 1223 (E.D. Pa. 1996), aff'd,128 F.3d 166 (3rd

7

Cir. 1997) (upheld $3 co-pay policy because "[a]lthough the government must provide medical care, the Supreme Court has never held that the government must pay for it"); Bobblett v. Angelone, 942 F. Supp. 251, 253-54 (W.D. Va. 1996) (inmate has no right to free medical care; he merely has a right to receive medical treatment, with the allocation of expenses being a matter of state law); Johnson v. Department of Pub. Safety & Corr. Servs., 885 F. Supp. 817, 821-22 (D. Md. 1995) (upheld $2 co-pay with exemption for "necessary treatment").  In addition, nothing in the Americans with Disabilities Act, the Rehabilitation Act, or the Remedial Plan entitles inmates to free medical care.

### III. THE CDOC'S POLICY OF WAIVING CO-PAYS FOR SPECIFIC SERVICES IS MORE REASONABLE THAN WAIVING CO-PAYS BASED ON THE TYPE OF ILLNESS.

The General Assembly gave the CDOC sole authority to promulgate rules for the "[t]he specific and exclusive bases upon which a copayment may be waived by department personnel." § 17-1-113(4)(d), C.R.S. (emphasis added); AR 700-30, IV-B.  The CDOC waives the required co-pay for medically unassigned inmates, for certain medical services, and for any service initiated by CDOC medical staff. See AR 700-30, IV-B.

The CDOC has chosen not to waive co-pays for specific illnesses, including diabetes.  There can be no reasoned approach in waiving co-pays

8

for inmates with certain medical conditions but not for inmates with other medical conditions. There is no logical reason why inmates with diabetes should be entitled to free medical care while inmates with Hepatitis C, or other chronic medical conditions, must pay a reasonable co-pay. There is no legal basis for creating an exemption for the co-pays for one illness (diabetes). Furthermore, such an exemption would subvert the goals of the 1998 amendments to § 17-1-113 by failing to discourage inmates from seeking unnecessary medical services.

## CONCLUSION

The CDOC's current co-pay policy, which is mandated by state law, does not violate the Constitution, ADA, nor the Rehabilitation Act. In addition, the CDOC has complied with the Remedial Plan by waiving medical co-pays for medically unassigned inmates. Nothing in the Remedial Plan requires the CDOC to waive medical co-pays for diabetics. The CDOC's decision to waive medical co-pays for specific services or appointments, instead of for specific illnesses, is a reasonable choice. Plaintiffs have not provided any reason why diabetics should be treated differently than other inmates, including those with disabilities. For these reasons, this Court should not require the CDOC to waive the required medical co-pay for diabetic inmates.

Respectfully submitted this 1st day of September, 2006.

        JOHN W. SUTHERS  
        Attorney General

        s/ Jess A. Dance  
        JESS A. DANCE, 35803*  
        Assistant Attorney General  
        Civil Litigation & Employment Law Section  
        Attorney for Defendants

        Colorado Attorney General's Office  
        1525 Sherman Street, 5th Floor  
        Denver, Colorado 80203  
        Telephone: (303) 866-5165  
        Fax: (303) 866-5443  
        Email: jess.dance@state.co.us

## CERTIFICATE OF SERVICE

I certify that on the 1st day of September, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paula Greisen  
greisen@kinggreisen.com  
King & Greisen, LLP  
1670 York St.  
Denver, CO 80206

*Courtesy Copy To:*

Cathie Holst

        s/ Jess A. Dance