shall not be assessed for any visit required by the Department during the intake process or for an annual physical examination."

The evidence is and I find that this statute was not preceded by a specific study demonstrating abuse of the system by inmates. However, Dr. Kleinsasser testified that he was aware that several agencies had made studies regarding utilization of health care services and that a certain level of copayment, according to these studies, was necessary in order to prevent over-utilization. And, that is, to me at least, a matter of common sense and it's something that's done commonly in what I'll call the outside sector, the non-prison population, by insurance companies. There is a copayment designed to prevent over-utilization of medical services.

In fact, the Department of Corrections had been studying a possibility of a copayment even prior to the legislature's enactment of the statute and the officials of the Department of Corrections, at least, felt that some level of copayment was entirely appropriate. The Plaintiffs' testimony is not exactly clear on that. Dr. Lauen seemed to indicate or imply that any level of copayment would tend to deny access to medical care, although as I understood Dr. Leidig's testimony, he did not have much of a problem with some level of copayment. He took issue with what he viewed as the exorbitant level of copayment imposed by the statute.

14

1  The enactment of the 1987 statute was followed by
2  what I've characterized earlier as some severe disagreements
3  within the Department of Corrections concerning the effect of
4  the statute and whether the statute was wise legislation. The
5  Department of Corrections primary focus was at least two-
6  fold. Number one, they were concerned and the doctors
7  providing the services were concerned that the level of
8  copayment and the requirement that it be paid at each visit
9  would deter inmates with continuing problems, such as
10 continuing mental problems, continuing health problems, for
11 example, diabetes, from seeing doctors and obtaining followup
12 care. There was also a second concern expressed by some of
13 the doctors and that was that the level of copayment was high
14 in relation to what the inmates earned.
15  If we were considering only the 1987 statute, I
16 believe a closer legal question would be presented because the
17 1987 statute did not make any exception for continuing treat-
18 ment of serious medical conditions and it did not make any
19 exception for instances where a referral to a physician was
20 made by a physician's assistant or nurse. And, the reason
21 that that seems to me to be significant is that under the 1987
22 statute all visits to doctors with the exceptions of annual
23 physicals or visits made while the prisoner was in the
24 diagnostic unit were subject to the $3.00 copayment charge.
25 And, I agree with the Plaintiffs that at some level the amount

1  of the copayment can act as a complete deterrent to an inmate
2  seeking medical care. For example, a copayment of $1,000
3  would be absurd. That would be an absolute deterrent or close
4  to an absolute deterrent not only for the prison population,
5  but for many of the rest of us.
6      So, the level of copayment, if it prevents the
7  Plaintiffs from seeking medical care or from being provided
8  with adequate medical care, could constitute a Constitutional
9  violation. However, I am not confronted only with the 1987
10 statute. The Plaintiffs are seeking injunctive relief and it
11 would make no sense for the Court to be enjoining practices
12 that existed under a previous version of the statute. For
13 purposes of injunctive relief, I only look to the statute as
14 it currently exists to determine whether there is a
15 constitutional violation.
16      The 1989 statute amended the 1987 statute in two
17 important respects. It reads as follows:
18      "The Department shall charge $3.00 against an
19      inmate's account for each visit by such inmate to an
20      institutional or non-institutional physician,
21      dentist, or optometrist, except that such charge
22      shall not be assessed for any visit required by the
23      Department during the intake process and annual
24      physical examination, any visit initiated by a
25      medical or a mental health staff member, any visit

          to a physician, dentist, or optometrist resulting
          from a referral by a nurse or a physician assistant,
          any emergency treatment, or a followup visit
          initiated by a medical professional."

     As I've noted, there are several changes in this statute.  First, followup visits initiated by a medical professional are excepted from the $3.00 copayment charge.  And, second, visits initiated by a medical or mental health staff member or visits resulting from a referral by a nurse or a physician assistant are also excepted.  So that if an inmate visits a physician's assistant and is referred to a doctor for a medical condition which the physician's assistant in his or her professional opinion decides requires further treatment, then the inmate is not charged.  And, further, if the doctor diagnoses a continuing condition, such as a continuing mental problem, continuing mental illness, diabetes, or other continuing medical problems that require followup treatment, the followup treatment is excepted from the $3.00 copayment charge.

     I find that these additions to the statute save it from any Constitutional infirmity.  And, in reaching that conclusion, I have reviewed the Colorado statute on the licensing and practice of physician's assistants which neither party has brought to the attention of the Court, but which is nevertheless instructive when it is applied to the facts of