IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-242
Category III
Claimant: Marlon L. Smith, #117217
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on August 31, 2006. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Marlon L. Smith (Claimant); and Scott Wilkonson, attorney for Defendants.

Testimony was received from the Claimant. Defendants did not present any witnesses. Claimant offered into evidence Exhibits 1 through 9, and all were admitted. Defendants offered into evidence Exhibit A, and it was admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody on June 18, 1993. After an evaluation period at the Denver Reception and Diagnostic Center (DRDC), Claimant was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado. He remained there for approximately one year. He then was transferred to SCF.

Claimant testified that he was not feeling well even before he came into DOC custody. He requested medical attention, but no one was able to determine what problem he was experiencing. After being transferred to SCF, Claimant was diagnosed as being a diabetic. Since being diagnosed, Claimant has received insulin by shot, though the amount of insulin has varied. He also has received other medications, including Glucophage.

Claimant began to experience problems with his eyes. There was constant redness and pain behind the eye. Claimant requested to see an eye specialist, but that did not occur until a couple of months before the hearing. The eye specialist did not find a specific medical problem when he examined Claimant. That eye specialist recommended that a further examination be conducted by another specialist. As of the date of the hearing, that examination had not taken place. Claimant indicated that there may be a need for stronger glasses.

Claimant has experienced pain and numbness in his legs. He has swelling in his legs, making movement very difficult. Claimant fell from an upper bunk bed and hurt his back. He requested a lower bunk limitation, but that has not been provided on a permanent basis. Claimant also testified that he has had high blood pressure for several years.

At the present time, Claimant works in the SCF hobby shop. He has invested his time and money in this work and cannot afford a write-up by a DOC employee. He testified that he has attempted to live with his medical problems, but it has been difficult. He has missed some meals and now has been threatened with a write-up if he does not eat breakfast.

As part of his treatment for diabetes, Claimant has been placed back on a 2400 calorie a day diet. He also is receiving a snack and insulin. Dr. Fortunato took Claimant off of all medications for a period of time to see if the blood sugar levels could be controlled without medicine. That was not possible.

Claimant has filed several grievances concerning the care that he has received. In addition, he filed a separate lawsuit in this Court. *Smith v. Ortiz & Maketta*, 04-OES-2237. This lawsuit has

been dismissed without prejudice, according to Claimant. He believes that he may be able to refile the case, if need be. The lawsuit alleged violations of the Eighth Amendment in not diagnosing Claimant's diabetes earlier when he was suffering pain and health problems.

On cross-examination, Claimant testified that he makes clocks and cards in the hobby shop for sale. He has missed some days due to his health. He testified that he believes that he will require new glasses, as he is having difficulty in seeing. Claimant acknowledged that he normally does not eat breakfast.

When asked specifically by counsel for Defendants, Claimant stated that he did not recall be denied anything by DOC. His concerns were with his medical condition. He is trying to eat the right foods to control his diabetes.

Defendants acknowledge that Claimant has diabetes. They believe that the diabetes has reasonably been controlled, but Claimant has not been compliant with his diet.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Claimant clearly has medical issues. It should be noted that Claimant's blood pressure condition, as a separate condition, is not covered by the Settlement Agreement.

**Diabetes:** The evidence substantiates that Claimant is diabetic. The Special Master specifically determines that Claimant was diabetic when he entered into DOC custody, even though it was not diagnosed for over almost two years. Therefore, Claimant is part of the Class.

**Mobility Impairment:** The Settlement Agreement provides that an individual is mobility impaired if he is permanently wheelchair bound or has a lower extremity disability. Claimant is not confined to a wheelchair and is able to walk more than one hundred yards. Under the very narrow definition of mobility impairment set forth in the Settlement Agreement, Claimant has not established that he has a mobility impairment.

**Vision Impairment:** The Settlement Agreement provides the following definition for vision impairment.

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

There is no question that Claimant has been experiencing problems with his eyes. Exactly what the problems entail is unclear.

Claimant is able to see and does have corrected vision that does not exceed 20/200. Under the very narrow definition of the Settlement Agreement, Claimant does not have a vision disability.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant testified at length about his concern with the medical care that he has received. He questioned why he had not been diagnosed with diabetes. In filing a separate lawsuit with this Court, Claimant alleged that he had been denied medical care to the point that the Eighth Amendment was violated.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the medical care provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law, Claimant must pursue separately any rights that he may have concerning the quality of his medical care.

In order to prevail on his ADA and Rehabilitation claims, Claimant must establish that he was the victim of discrimination because of his diabetes on or before August 27, 2003. Claimant has not done that. Claimant has established that he is diabetic and was so when he entered into DOC custody. He has established that he has received medical care, though he has significant concerns about the quality of that care. Claimant has not established that he was discriminated against because of his diabetes on or before the date that Settlement Agreement was approved by Judge Nottingham. Unless a claimant can establish that he was disabled, as defined by the Settlement Agreement, and subjected to discrimination on or before August 27, 2003, he may not raise issues that post-date the approval of the Settlement Agreement.

Claimant retains the right to pursue any and all claims he may have for medical malpractice, or any discrimination claims that have occurred since August 27, 2003. These will need to be pursued in a separate lawsuit.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

Since the answer to Questions #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Marlon L. Smith is denied, as he had failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 11, 2006.**

SIGNED this 5th day of September, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master