IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-cv-00343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

**DEFENDANTS' BRIEF REGARDING SPECIAL MASTERS' EVALUATION OF WHETHER CLAIMANTS ARE DISABLED (DIRECTED TO THE HONORABLE JUDGE KANE)**

Defendants, through the Colorado Attorney General, respectfully submit the following Brief Regarding the Special Masters' Evaluation of Whether Claimants Are Disabled.

## BACKGROUND

Under the Remedial Plan, the Special Masters (Judges Borchers, Pringle, and Davidson) are responsible for evaluating individual damages claims and awarding damages where appropriate. (See Remedial Plan, ¶ XXXII). Section III of the Remedial Plan explains that "[t]he persons covered by this Plan are individuals with mobility, hearing, and vision

impairments and inmates with diabetes." (Id., ¶ III(A)).  The Remedial Plan also defines "qualified inmate" as an "[i]nmate with a permanent physical disability/impairment which substantially limits his or her ability to perform a major life activity." (Id., ¶ III(B)).  Section III(C) states that a permanent disability is one "which is not expected to improve within six months."  In Section V(A), the Remedial Plan specifically discusses in more detail the types of impairments that require placement in special housing. (Id., ¶ V(A)).

In November, 2004, this Court and Judge Nottingham addressed the criteria to be used by the Special Masters in evaluating damages claims. (November 23, 2004 Order of Judges Kane and Nottingham, docketed at 745, attached as Defendants' Exhibit A).[1]  Under this order, all claims are evaluated pursuant to the following criteria:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

---

[1] Defendants are attaching copies of cited orders that are not electronically available through PACER.

(Id., ¶ 2).  "The Remedial Plan and, if necessary, case law concerning disabilities under the Rehabilitation Act and the Americans with Disabilities Act may be reviewed for assistance in applying the criteria." (Id., ¶ 3).

The Special Masters have resolved over 800 claims so far, many by a Final Order on the merits.  (Additional claims have settled or been dismissed for procedural reasons, such as late filing or a claimant's failure to inform the court of the claimant's address upon discharge.)  In these orders, the Special Masters note that claims are being evaluated based on the Remedial Plan, the ADA, the Rehabilitation Act, and the November 23, 2004 Order by this Court and Judge Nottingham. (See, e.g., Final Order RE Coit, p. 5, docketed at 1253).

Many Final Orders begin by quoting Section III of the Remedial Plan, the definitions section. (See, e.g., Final Order RE Duncan, p. 2, docketed at 1155).  The Final Orders next note that "[t]he Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.*" (See Final Order RE Duncan, p. 2-3). Section V(A) of the Remedial Plan provides objective definitions for the terms "permanent mobility impairments", "permanent hearing impairments", and "permanent vision impairments". (Remedial Plan, § V(A)).[2]  The

---

[2] Section V(A) of the Remedial Plan states:

3

Special Masters have considered these definitions in evaluating whether claimants are entitled to damages. (See e.g., Final Order RE Duncan, p. 3). These specific definitions provide further guidance to the Special Masters in interpreting the Remedial Plan and the types of disabilities covered by the Plan.

The Special Masters have considered the criteria from Section V(A) in evaluating damages claims since at least August 2004. (See, e.g., Order of Special Master Dismissing Claim RE Hull, August 3, 2004, docketed at 656, attached as Defendants' Exhibit B (referring to without citing Remedial Plan, ¶ V(A)(1)); Order of Special Master Dismissing Claim RE Courville, August 3, 2004, docketed at 658, attached as Defendants' Exhibit C (referring to without citing Remedial Plan, ¶ V(A)(3))).  The Special Master have referred to Section V(A) in evaluating hundreds of claims.

---

1. Permanent Mobility Impairments
Inmates who use wheelchairs full or part time due to a permanent disability [and] Inmates who do not require a wheelchair but who have a permanent lower extremity impairment that substantially limits walking . . .
2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

Remedial Plan, § V(A), quoted by, e.g., Final Order RE Duncan, p. 2-3.

4

The Special Masters' final decisions may be appealed to the Honorable Judge Kane. (Remedial Plan, ¶ XXXII).  In issuing orders on these appeals, this Court has repeatedly concluded that the Special Masters' evaluations are "based entirely on the evidence and a correct application of the law." (Order of Judge Kane RE Duncan, March 22, 2006, docketed at 1784 (reviewing Final Order RE Duncan, docketed at 1155)).  This Court made similar statements in affirming several other decisions of the Special Masters. (<u>See, e.g.</u>, Order of Judge Kane RE Freeman, July 20, 2006, docketed at 2144; Order of Judge Kane RE Castro, April 13, 2006, docketed at 1898; Order of Judge Kane RE Baker, March 29, 2006, docketed at 1827).

Judge Nottingham recently held that "the record before the court on this appeal demonstrates that the special masters are faithfully considering the issues which the court directed them to consider." (Order Concerning Damages and Attorney Fees by Judge Nottingham, August 22, 2006, docketed at 2216, p. 7).

## ARGUMENT

In evaluating all claims, the Special Masters look to three legal sources: (1) the Remedial Plan, (2) the ADA, and (3) the Rehabilitation Act. They are guided by the Court's November 23, 2004 Order, ¶ 2 in making

5

their determinations as to whether an inmate is entitled to damages. See, e.g.,

Final Order RE Coit, p. 5, docketed at 1253.

> I. "DISABILITY" UNDER THE ADA AND
> REHABILITATION ACT.

"[A]s a threshold matter, any plaintiff asserting a claim under the

ADA must establish he or she is a qualified individual with a disability."

Lanman v. Johnson County, 393 F.3d 1151, 1156 (10th Cir. 2004).  A

"disability" is a physical impairment that substantially limits a major life

activity. 42 U.S.C. § 12101(2); 29 U.S.C. § 705(20)(A).  A "plaintiff must

articulate with precision the impairment alleged and the major life activity

affected by that impairment, and the court is to analyze only those activities

identified by the plaintiff." Doebele v. Sprint/United Mgmt. Co., 342 F.3d

1117, 1129 (10th Cir.2003).

> That a plaintiff has an impairment does not mean he or she is disabled.
>
>> It is insufficient for individuals . . . to merely submit
>> evidence of a medical diagnosis or an impairment.
>> Instead, the ADA requires those claiming the Act's
>> protection . . . to prove a disability by offering evidence
>> that the extent of the limitation in terms of their own
>> experience . . . is substantial.

Toyota Motor Manuf. v. Williams, 534 U.S. 184, 198 (2002) (quotation

omitted).  Specifically discussing diabetes, the U.S. Supreme Court has

explained that declaring a diabetic disabled "simply because he or she has

6

diabetes . . . is contrary to both the letter and the spirit of the ADA." Sutton v. United Airlines, 527 U.S. 471, 483-84 (1999). "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others." 29 C.F.R. pt. 1630 app., § 1630.2(j).

A claimant is only disabled if an impairment substantially limits a major life activity. The U.S. Supreme Court has explained that "substantially" means "considerable" or "to a large degree." Toyota, 534 U.S. at 196. "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with [a major life activity] from qualifying as disabilities." Id. at 197. This term "needs to be interpreted strictly to create a demanding standard for qualifying as disabled." Id. (emphasis added).

A court must consider any corrective or mitigating measures in analyzing whether there is a substantial limitation. See Sutton v. United Airlines, 527 U.S. 471, 482-83 (1999). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id. "[I]f a plaintiff can see normally while wearing glasses or can walk without

7

significant impairment while wearing a brace or using a cane, she or he cannot be considered disabled within the meaning of the ADA." Vass v. Riester & Thesmacher Co., 79 F.Supp.2d 853, 861 (N.D. Ohio 2000). Medication is a mitigating measure to be considered. See Murphy v. United Parcel Serv., 527 U.S. 516 (1999) (plaintiff was not disabled under ADA because with medication his high blood pressure did not substantially limit any major life activity). Examples of mitigating and corrective measures include glasses, hearing aids, medication, canes, and braces.

The U.S. Supreme Court has emphasized that courts must focus on a plaintiff's actual functionality using any corrective or mitigating measures, not the name of the plaintiff's impairment, in determining whether the plaintiff meets the ADA and Rehabilitation Act's "demanding standard for qualifying as disabled."

## II. THIS COURT HAS REPEATEDLY AFFIRMED THE SPECIAL MASTERS' APPROACH AND INTERPRETATION OF THE REMEDIAL PLAN.

In addition to the ADA and Rehabilitation Act, the Special Masters look to the Remedial Plan in evaluating damages claims. Most Final Orders begin by discussing the Remedial Plan and quoting from Sections III and V(A). See, e.g., Final Order RE Duncan, p. 2-3, docketed at 1155. Section III defines various terms. Section V(A) of the Remedial Plan provides

8

objective definitions for the terms "permanent mobility impairments", "permanent hearing impairments", and "permanent vision impairments". Remedial Plan, § V(A). Although these definitions are contained within the section on placement of inmates, the Special Masters have appropriately considered these definitions in evaluating whether claimants are entitled to damages. (See, e.g., Final Order RE Duncan, p. 3). These specific definitions provide further guidance to the Special Masters in interpreting the Remedial Plan and the types of disabilities covered by the Plan. The Special Masters also consider the four criteria outlined in this Court's Nov. 23 order in considering the claims for damages.

The Special Master have considered the criteria from Section V(A) in evaluating damages claims since at least August 2004. See, e.g., Hull Dismissal, Def. Exh. B (referring to without citing Remedial Plan, ¶ V(A)); Courville Dismissal, Def. Exh. C (same). According to the Special Masters, "[t]hese definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals." Final Order RE Duncan, p. 3.

This Court has repeatedly held that the Special Masters' approach contains "no errors of law." For example, the Special Master denied the claim of James Duncan in part because he does not meet the narrow criteria

9

for mobility and vision disabilities set out in Section V(A). See Final Order RE Duncan, p. 2-3, 5-6.  After reviewing the Final Order, this Court concluded that "the Special Master's ruling is based entirely on the evidence and a <u>correct application of the law that this claim does not fall within the provision of the settlement agreement</u>." Order of Judge Kane RE Duncan, March 22, 2006, docketed at 1784 (emphasis added).

Regarding the claim of Leroy Baker, the Special Master held that, under the Remedial Plan's definitions from Section V(A), Baker is not vision or mobility disabled. See Final Order RE Baker, p. 5-6, docketed at 1227.  On appeal, this Court held "the Special Master has correctly decided that Mr. Baker's claims do not fall within the scope of the settlement agreement." Order of Judge Kane RE Baker, March 29, 2006, docketed at 1827.

Similarly, the Special Master held that Thomas Castro was not mobility disabled because "he does not meet the criteria for mobility disability" from Section V(A). Final Order RE Castro, p. 7, docketed at 1728. (Castro is diabetic but has not been discriminated against.)  This Court affirmed the Final Order because "[t]he findings are made on the basis of the evidence presented and amply supported.  There are <u>no errors of law</u>.  <u>The Final Order is well within the provision of the Settlement Agreement</u>."

10

Order of Judge Kane RE Castro, April 13, 2006, docketed at 1898 (emphasis added). See also Order of Judge Kane RE Winkler, March 22, 2006, docketed at 1786 ("The rulings of the Special Master are based on the evidence and the law was properly applied") (affirming Final Order docketed at 1147); Order of Judge Kane RE Coit, July 19, 2006, docketed at 2139 ("the findings made are consistent with the evidence presented and there are no errors of law") (affirming Final Order docketed at 1253); Order of Judge Kane RE Smith, July 19, 2006, docketed at 2141 ("the findings made are consistent with the evidence presented are there are no errors of law") (affirming Final Order docketed at 1917); Order of Judge Kane RE Freeman, July 20, 2006, docketed at 2144 ("the Special Master made extensive findings of fact and conclusions of law based on the evidence and testimony presented.  He did not abuse his discretion.  There are no errors of law") (affirming Final Order docketed at 1252).

Furthermore, Judge Nottingham recently observed that the Special Masters are faithfully evaluating claims in light of the Remedial Plan and guidance from this Court and Judge Nottingham.

> Although the Remedial Plan required categorization of damages for purposes of determining whether a class member was entitled to hearing before a special master, it provided little additional guidance concerning the issues to be considered by the special masters in awarding damages.  Disputes arose almost immediately, and the

> special masters sought guidance from the court.  In response, the court outlined the issues to be considered in awarding damages. . . . [T]he record before the court on this appeal demonstrates that the special masters are faithfully considering the issues which the court directed them to consider.

Order Concerning Damages and Attorney Fees by Judge Nottingham, August 22, 2006, docketed at 2216, p. 6-7.

Class Counsel asks this Court to decide whether the Special Masters have applied the correct criteria in evaluating damages claims.  They further ask that the Special Masters be ordered to review the over 800 claims that have already been decided and issue amended orders if they applied the wrong criteria.  Class Counsel's request should be denied.  This Court has repeatedly held that the Special Master's evaluations contain "no errors of law."  Furthermore, Judge Nottingham has observed that "the special masters are faithfully considering the issues which the court directed them to consider."  The Special Masters have been correctly evaluating claims.  Consequently, there is no need to restart the entire damages process.

### III. CLASS COUNSEL WAITED OVER 23 MONTHS BEFORE RAISING THE CURRENT OBJECTION.

The Special Masters have resolved over 800 claims since beginning to evaluate claims in mid-2004.  Since at least August 2004, the Special Masters have referred to the special placement criteria set out in Section

V(A). See, e.g., Hull Dismissal, Def. Exh. B; Courville Dismissal, Def. Exh. C.  In October 2004, the Special Master explained that "[t]he language of the settlement agreement controls." Order of Dismissal RE Slusher, October 11, 2004, docketed at 722, attached as Defendants' Exhibit D.  Nearly two years later, in July 2006, Class Counsel complained for the first time that the Special Masters should not consider the criteria from Section V(A).

Class Counsel silently waited for 23 months as the Special Masters resolved over 800 claims before raising their current objection.  Their challenge is untimely and should be barred by equitable considerations, such as acquiescence or laches.  "[T]he defense of estoppel by acquiescence focuses on the party against whom the defense is asserted to see if that party waived its right, while the defense of laches concentrates on the position of the party asserting the defense to see if he or she was prejudiced." Mile High Indus. v. Cohen, 222 F.3d 845, 858 (10th Cir. 2000).

While Class Counsel is only now raising the current objection, they have repeatedly intervened in the damages process over the past two years to argue that claimants should be entitled to Eighth Amendment damages for inadequate medical care.  In the Plaintiff Class Appeal Regarding the Availability of Damages for Denial of Medical Care, docketed at 1065, Class Counsel argued (on behalf of Joe Eubanks, Joseph Lovato, and "all

13

similarly situated claimants") that claimants should be entitled to damages for inadequate medical care under Eighth Amendment.

In the Plaintiff Class Response to Defendants' Appeal, docketed at 1108, Class Counsel argued that the Special Masters should not consider Fitzgerald v. Corrections Corporation of America, 403 F.3d 1134 (10th Cir. 2005), which held that inmates cannot use the ADA or Rehabilitation Act to challenge the quality of medical care in a correctional facility. (Plaintiff Class Response was filed in response to Defendants' Objection regarding Steven Paul Walker.)  Finally, in the Plaintiff Class Appeal of Order of Special Masters RE: Category V Damages, docketed at 1149, Class Counsel argued that Category V claimants should be entitled to damages under 42 U.S.C. § 1983 for deliberately indifferent medical care in violation of the Eighth Amendment.

Judge Nottingham recently rejected Class Counsel's arguments regarding medical claims and the Fitzgerald case. See Order Concerning Damages and Attorney Fees by Judge Nottingham, August 22, 2006, docketed at 2166.  Regarding medical claims, Judge Nottingham stated that "the special master concluded that complaints concerning the adequacy or reasonableness of treatment were not cognizable under the plan.  This conclusion was correct, because such complaints meet none of the four

14

criteria for an award of damages." Id. at 7.  In addition, Judge Nottingham held that the Special Masters can consider Fitzgerald because that case "is fully consistent with the way this court would have interpreted the Remedial Plan." Id. at 9.  Finally, Judge Nottingham affirmed the Special Masters' Order regarding Category V damages, holding that claimants are not entitled to bring § 1983 claims for allegedly deliberately indifferent medical care. Id. at 10-11.

As noted above, Class Counsel intervened on appeal in the claims of Steven Paul Walker and Joe Eubanks.  The Special Master discussed the criteria from Section V(A) in the Final Orders regarding both Walker and Eubanks. See Final Order RE Walker, p. 2-3, docketed at 956, attached as Defendants' Exhibit E; Final Order RE Eubanks, p. 2-3, 5, docketed at 1036.  Class Counsel, however, did not object to the Special Master's discussion of Section V(A).  Instead, Class Counsel only argued that the Special Master should be barred from considering Fitzgerald and that claimants should be entitled to damages for inadequate medical treatment.  If the Special Masters' consideration of Section V(A) were actually objectionable, Class Counsel coud have raised the issue when they intervened during the appeals of Eubanks and Walker.

15

By sitting silently for nearly two years as the Special Masters resolved over 800 claims, Class Counsel acquiesced in the Special Masters' analytical approach. Granting Class Counsel's request—that the Special Masters be ordered to review and potentially re-evaluate all claims—would significantly prejudice Defendants by potentially reopening hundreds of claims. In addition to the fact that this Court has already held that the Special Masters' approach is "a correction application of the law", equitable considerations should prevent this Court from ordering the Special Masters to go back and review every previously decided claim.

## CONCLUSION

The Special Masters are generally correctly evaluating individual damages claims. As ordered by this Court and Judge Nottingham, the Special Masters are evaluating the four criteria set out in the November 23, 2004 Order in light of Remedial Plan, ADA, and Rehabilitation Act. According to Judge Nottingham, "the special masters are faithfully considering the issues which the court directed them to consider." After reviewing dozens of Final Orders, this Court has repeatedly concluded that "the findings made are consistent with the evidence presented and there are no errors of law."

16

Because both this Court and Judge Nottingham have repeatedly found that the Special Masters are properly evaluating claims, it would be inappropriate to order them to go back and review all of the over 800 claims already resolved.  Furthermore, by waiting silently for 23 months as the Special Masters resolved over 800 claims, Class Counsel acquiesced and forfeited their opportunity to object to the Special Masters' overall approach.

Respectfully submitted this 6th day of September, 2006.

                    JOHN W. SUTHERS
                    Attorney General

                    s/ Jess A. Dance
                    JESS A. DANCE, 35803*
                    Assistant Attorney General
                    Civil Litigation & Employment Law
                        Section
                    Attorney for Defendants

                    Colorado Attorney General's Office
                    1525 Sherman Street, 5th Floor
                    Denver, Colorado  80203
                    Telephone:  (303) 866-5165
                    Fax: (303) 866-5443
                    Email: jess.dance@state.co.us

## CERTIFICATE OF SERVICE

       I certify that on the 6th day of September, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Paula Greisen | Honorable Richard Borchers |
| greisen@kinggreisen.com | Legal Resolution Center |
| King & Greisen, LLP | 7907 Zenobia St. |
| 1670 York St. | Westminster, Co. 80030 |
| Denver, CO 80206 | |

*Courtesy Copy To:*

Cathie Holst

                                              s/ Elizabeth H. McCann