# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants,

---

Claim Number 02-545
Category II
Claimant: Keith Schwinaman, DOC # 105240
Address of Claimant: CTCF, Unit 7-2-11, P.O. Box 1010, Canon City, CO 81215-1010

---

## RESPONSE TO CLAIM AND SUPPORTING DOCUMENTS

Defendants, through the Colorado Attorney General, respectfully submit the following Response to Claim and Supporting Documents.

## STATEMENT OF FACTS

Keith Schwinaman ("Claimant") avers that he is a member of the Montez class. Claimant has been in CDOC custody on and off since 1999. See Claimant's Initial Claim Form for Damages. Claimant asserts that he is disabled due to diabetes and due to vision impairment. Id. Claimant states that he has had type I diabetes since he was fourteen years old. Id. Claimant asserts that CDOC has denied him prompt medical attention, glucose tablets and medical shoes. Id.

1

Claimant asserts that he was discriminated against where he only received medical treatment for multiple seizure episodes, and not for single seizure episodes. See Claimant's Initial Claim Form for Damages. Claimant appears to assert that he was further discriminated against where he was denied work while at Buena Vista Correctional Facility. He states that he was discriminated against "by being refused work at the Prison [B.C.F.C.][sic] because it would be too inconvenient for medical staff to come in the case of a diabetic needing help for his diabetic symtoms [sic]..."Id. He alleges that he has been harmed by CDOC actions through panic attacks related to a fear of dying, vision loss, and long-term problems with his feet.

Claimant's medical records reflect that Claimant does have type I diabetes, and that he is insulin-dependent. His records reveal that CDOC has consistently provided him with his insulin needs. See Exh. A (June 16, 2005 ambulatory health record notes that Claimant's "[insulin] sliding scale will remain the same..."); Exh. B (renewed prescription for insulin noted in a December 30, 2004 ambulatory health record); Exh. C (in a diabetic eye examination of July 1, 2002, it is noted that Claimant is on both regular and NPH insulin); Exh. D (in a February 28, 2001 ambulatory health record, 30 days of insulin is ordered before Claimant's discharge date of March 13, 2001); and Exh. E (in a July 31, 2000 ambulatory health record, it is noted that Claimant was given his evening insulin as ordered).

CDOC has routinely checked the status of Claimant's diabetes and, generally, Claimant's diabetes has been under control and without complications. See Def. Exh. F ("[Claimant's] last few blood sugars have been under control and no recent hypolglycemia [sic]" and "type 1 dm under control"); See also Exh G (Claimant's

hemoglobin A1c levels registered at 6.8% on November 26, 2005, 6.3% on April 19, 2005, and 6.8% on December 22, 2004. These hemoglobin A1c levels were within the target range (<7%)).

However, these routine checks of Claimant's diabetes have revealed that some of his hemoglobin A1c levels have registered high, with his highest reading registering at 9.3%. See Def. Exh. H. The times that Claimant's blood sugar levels have thus run high, CDOC has adjusted his insulin intake accordingly. See Def. Exh. I ("[Claimant's] insulin needs adjustment, running high in the am and this was confirmed, so needs adjustments" and "adjustments made in insulin and meds."); and Def. Exh. J ("inmate says he feels much better since his insulin was adjusted and his blood sugars have been lowered.") Similarly, CDOC has provided Claimant with glucose tablets when his blood sugar levels have run low. See Def. Exh. K (where Claimant had a blood sugar level of 44, "glucose tabs given – b/s rechecked… [Claimant] states [he is] feeling ok, and doesn't want another b/s check."); and Exh. L (Claimant is allowed two glucose tablets in his personal possession at a time per an accommodation resolution of January 6, 2005, and that amount was increased to three upon Claimant's grievance filed June 10, 2005.)

The occasional spikes and drops in Claimant's blood sugar levels may be a result of his non-compliance with his diabetes treatment. Claimant has been observed abusing his glucose tablet privileges on at least two occasions. See Def. Exh. M ("[Claimant is] non-compliant with diet – using excessive amt. of glucose tabs"); and Def. Exh. N ("[Claimant] was given 2 glucose tabs per Dr. Aasen and informed he needed to eat them before leaving medical due to abusing the priviledge [sic].")

3

Claimant has also been observed purchasing high-sugar snack items from the canteen. See Def. Exh. O (list of Claimant's canteen purchases from January and February 2006, include purchases of cherry pie, peanut butter, seasonal cakes, ice cream, and chocolate orange sticks.); and Def. Exh. P ("note from kitchen, [Claimant] repeatedly purchases food items in excess of $178.00 from canteen, i.e. punch, chocolate candy bars (multiple), jam, donuts, cinnamon rolls, beef salami, [and] cookies.")

Claimant has been screened for a disability, and it was concluded from his screening that, while he does have diabetes, he has no need of an accommodation for his diabetes to facilitate access to jobs, programs, services and benefits. See Def. Exh. Q.

Claimant's medical records do not reflect that he has any problems with his vision. Claimant has routinely received eye examinations, and they reflect that his visual acuity is good. See Def. Exh. R (As of June 20, 2000, Claimant's uncorrected visual acuity was 20/50 in his right eye and 20/30 in his left eye); Def. Exh. S (Claimant's uncorrected visual acuity was 20/30 in his right eye and 20/30 in his left eye as of February 21, 2002); and Def. Exh. T (As of March 20, 2004, Claimant's corrected visual acuity was 20/30 in both eyes). While Claimant was provided with eyeglasses, he apparently discarded them. See Def. Exh. C ("[Claimant] threw specs away b/c got [headaches] when reading.") Nothing in Claimant's medical records reveal that he has any diabetic retinopathy. See Def. Exh. U (Claimant's diabetic clinical care flow sheet notes that Claimant does not show signs of retinopathy.)

It does appear that Claimant experienced some foot ulceration in mid-January 2001. See Def. Exh. V. Upon examination of his feet, Claimant was given a permit