# EXHIBIT D
# PART II

to wear shower shoes, and given instructions of foot care including soaking his feet in warm water. Id. Claimant's feet were re-examined on January 30, 2001 and on February 28, 2001, and it was noted that his toes were healing nicely. See Def. Exhs. D and M. Nothing in Claimant's medical records reflect that he suffered from recurring foot ulcers for which special shoes may be medically indicated. See Def. Exh. W.

Claimant's medical records do not reflect that Claimant has experienced multiple seizures, but do denote one incident in which he had a single seizure:

> [Claimant] had a "seizure" but was alright now... [He] sitting on top bunk, states he was awakened unexpectantly [sic] and "blacked out." [Claimant] [s]tates he took am insulin, did not eat breakfast but had food in room, ate lunch, did not exercise excessively. [Claimant] is convinced he got up too fast.

Def. Exh. X.

Claimant was able to ambulate to medical on his own, and was examined there. Id. Later that afternoon, Claimant's cellmate informed clinical services that Claimant had not eaten lunch that day or the day before. Id. Claimant was granted a six month bottom bunk restriction based upon the incident. Id. In later seeking reinstatement of a bottom bunk restriction by stating that he was prone to seizures, his physician noted that he had not been diagnosed with a seizure disorder, and had been prescribed Tegretol, not for seizures, but for psychiatric issues. Def. Exh. Y. Therefore, his physician noted that a lower bunk was not medically indicated. Id.

## ARGUMENT

Under the November 23, 2004 Order by Judges Kane and Nottingham, a claimant is entitled to damages if the following four questions, as applied to the

5

claimant's circumstances, are answered in the affirmative. First, is the claimant a
disabled individual who is a member of the class? (November 23, 2004 Order, ¶2).
Second, was the claimant otherwise qualified to participate in the programs or receive
the benefits or services offered by DOC? Id. Third, was the claimant discriminated
against by DOC because of his or her disability? Id. For example, were
accommodations requested and denied because of the disability? Id. Finally, did this
conduct cause the claimant harm, and, if so, what is an appropriate remedy? Id.

## I.     CLAIMANT'S CLAIM MUST FAIL BECAUSE HE
##        SUBMITTED NO EVIDENCE TO SUPPORT HIS CLAIM.

Pursuant to the ADA and the Rehabilitation Act, a plaintiff bears the burden of
proof, and, therefore, must prove that he or she is disabled; is otherwise qualified for a
specific job, program, service or benefit; and that he or she was denied access to that
job, program, service or benefit because of discrimination against his or her disability.
See Lanman v. Johnson County, 393 F.3d 1151, 1156 (10th Cir. 2004) ("any plaintiff
asserting a claim under the ADA must establish that he or she is a qualified individual
with a disability"); Tyler v. City of Manhattan, 857 F. Supp. 800, 817 (D. Kan. 1994),
aff'd 118 F. 3d 1400 (10th Cir. 1997) ("the plaintiff carries the burden of proof on a
claim that he has been discriminated against on the basis of his disability"). "[T]he
ADA requires those claiming the Act's protection… to prove a disability by offering
evidence that the extent of the limitation in terms of their own experience…is
substantial." Toyota Motor Manuf. v. Williams, 534 U.S. 184, 198 (2002) (emphasis
added) (quotation omitted).

6

A claimant's unsworn, unsupported statements in the Initial or Supplemental Damage Claim Forms do not constitute evidence. The Damage Claim Forms in this case serve the exact same purpose as a Complaint filed in court for a civil case: they put the defendant on notice of the specific claims asserted by plaintiff or claimant. (See Remedial Plan, § XXXII). A civil complaint is a pleading. The U.S. Supreme Court has held that pleadings are not evidence and "no inferences [are] to be drawn" from them. Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 546 (1908); see also Medina v. Pacheco, 161 F.3d 18, *3 (10th Cir. 1998) (table opinion) ("pleadings are not evidence"). Additionally, vague, conclusory, unsupported, or self-serving statements by a claimant do not constitute evidence. See Handy v. Price, 996 F.2d 1064, 1068 (10th Cir. 1993); Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

Claimant has only submitted his Initial Claim Form for Damages with typewritten attachments elaborating upon his claim. These unsworn, unsupported statements do not constitute evidence. Claimant has provided no documentation from his files or any other form of evidence to support his claims. Where Claimant has failed to submit any evidence in support of his claims, he has failed to meet his burden of proof. Therefore, Claimant's claim should be denied.

## II. CLAIMANT IS NOT DISABLED AS DEFINED BY THE REMEDIAL PLAN.

While the Remedial Plan provides narrow, objective criteria for determining mobility, hearing, and vision disabilities, it does not provide objective criteria for determining whether an inmate's diabetes rises to the level of a disability. The Remedial Plan only makes reference to "inmates who are diabetic and who are or are

7

not dependent on insulin for regulation and require accessible housing to accommodate their disabilities." To qualify as disabled under the ADA or Rehabilitation Acts, a claimant must have a "physical impairment that substantially limits one or more... major life activities." Toyota Motor Manuf. v. Williams, 534 U.S. 184, 187 (2002)(quotation omitted). While diabetes is a physical impairment, that alone is not enough to qualify as disabled.

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis or an impairment. Instead, the ADA requires those claiming the Act's protection... to prove a disability by offering evidence that the extent of the limitation in terms of their own experience... is substantial. Id. at 198.

While Claimant does have diabetes, his diabetic condition does not rise to the level of a disability. See Def. Exh. Q. CDOC has routinely provided Claimant with a diabetes treatment plan including administration of insulin. See Def. Exhs. A-E, I-L. Where Claimant complies with the diabetic treatment plan provided him by CDOC, his diabetes is controlled and without complications. See Def. Exhs. F-G. However, through intake of high-sugar snacks in contravention of his diet and excessive intake of glucose tablets, Claimant has not complied with his diabetic treatment plan. See Def. Exhs. M-P. Therefore, due to Claimant's refusal to adhere to his diabetes treatment plan, Claimant's diabetes was sometimes uncontrolled. See Def. Exh. H. Even so, there is no indication from Claimant's medical records, nor does he allege, that his diabetes substantially limits him in the performance of any major life activity. Therefore, Claimant's diabetic condition is not disabling, and does not warrant special accommodation beyond his existing diabetes treatment plan.

8

In determining the extent to which an impairment limits one or more major life activities, consideration should be given to any measures taken to correct for, or mitigate the impact of, a physical impairment. See Sutton v. United Air Lines, 527 U.S. 471, 482 (1999). ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures – both positive and negative- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus disabled under the Act.") The Court, in Sutton, goes on to note that "a person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id. at 482-83; See also Murphy v. United Parcel Serv., 527 U.S. 516, 521 (1999).

Inmates with qualified vision impairment are those "who are permanently blind or who have vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses." Remedial Plan, § V(A)(3). Claimant does not have qualified vision impairment where his visual acuity, *without corrective lenses*, has ranged from 20/30 to 20/50 in both eyes, and, as corrected, was 20/30 in both eyes. See Def. Exhs. C, R-T. Additionally, Claimant's medical records reveal that Claimant does not show signs of diabetic retinopathy. See Def. Exh. U. Therefore, Claimant is not disabled due to visual impairment.

## III.   CDOC DID NOT DENY CLAIMANT ACCESS TO ANY JOB, PROGRAM, BENEFIT OR SERVICE FOR WHICH HE WAS OTHERWISE QUALIFIED.

Even if Claimant is found to be disabled, he is only entitled to relief if CDOC denied him access to a program, benefit, or service for which he was otherwise

qualified. See School Bd. of Nassau County v. Arline, 480 U.S. 273, 285 (1987). Claimant asserts that he was denied glucose tablets and medically-prescribed shoes. See Claimant's Initial Claim Form for Damages. Claimant was provided with glucose tablets to keep in his possession in the event of a low blood sugar episode. See Def. Exhs. K-L. However, on at least two occasions, Claimant was observed as abusing his glucose tablet possession privilege. See Def. Exhs. M-N. Claimant was, therefore, sometimes required to consume the glucose tablets given before he left clinical services. See Def. Exh. N. However, a temporary restriction upon where Claimant eats the glucose tablets given, does not constitute a denial of glucose tablets.

Nothing in Claimant's medical records reflect that he suffered from recurring foot ulcers for which special shoes may be medically indicated. See Def. Exh. W. It does appear that Claimant experienced some foot ulceration in mid-January 2001. See Def. Exh. V. At that time, Claimant was provided proper treatment where his feet were examined, he was given a permit to wear shower shoes, and he was instructed on foot care. Id. Where Claimant's feet healed shortly thereafter, and Claimant's medical records do not reflect subsequent foot ulcerations, Claimant did not suffer recurring foot ulcerations for which special shoes would be warranted. See Def. Exhs. D and M.

Furthermore, where Claimant asserts that he was entitled to medically-prescribed shoes because of his diabetes, he is not claiming that he would have been otherwise entitled to such shoes if he were not diabetic. Under the ADA and Rehabilitation Act, a plaintiff can rarely, if ever, be "otherwise qualified" for specific medical devices such as medically-prescribed shoes. See Fitzgerald v. Corrections

10

Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005). ("Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say... that a particular decision was 'discriminatory'"); Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992) ("[I]f such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment.") Therefore, Claimant was not denied a benefit for which he was "otherwise qualified" when denied medically-prescribed shoes.

## IV. CLAIMANT WAS NOT DISCRIMINATED AGAINST BECAUSE OF HIS ALLEGED DISABILITY.

Claimant asserts that he was discriminated against where only treated for multiple-seizure episodes, but not for single-episode seizures. See Claimant's Initial Claim Form for Damages. Claimant's medical records reveal only one seizure experienced by Claimant while in CDOC custody, and that was a single-episode seizure. Def. Exhs. X-Y. Claimant was provided with medical attention and care in regard to that seizure episode. Def. Exh. X. Therefore, Claimant was not discriminatorily denied medical treatment in regard to his seizure episode.

Claimant vaguely asserts that he was discriminatorily denied work at Buena Vista Correctional Facility due to his diabetic condition. However, Claimant provides no evidence, let alone a description, of any jobs for which he applied and was denied at Buena Vista Correctional Facility. Without specifying jobs for which he applied and to which he was denied access, Claimant has not raised a cognizable claim of discrimination. Furthermore, a prisoner may not be "qualified" under the ADA or Rehab Act for various jobs, programs, services, or activities because of disciplinary

11

reasons, health reasons, or other valid penal justifications. Miller v. King, 384 F.3d 1248, 1266 (11th Cir. 2004).

## V. CLAIMANT DID NOT SUFFER HARM DUE TO CDOC ACTIONS.

CDOC never discriminated against Claimant, and Claimant was never harmed by CDOC's conduct. Claimant has provided no evidence that any harm he claimed he suffered was caused by CDOC's actions. Because Claimant faced no improper discrimination, Claimant suffered no harm arising from discrimination. Therefore, Claimant is not entitled to any remedy or damages.

## VI. ANY EIGHTH AMENDMENT CLAIM IS BEYOND THE SCOPE OF THIS CASE.

Many of Claimant's claims allege inadequacy and delay in CDOC's treatment of his diabetes and vision. To the extent that Claimant questions the sufficiency or timeliness of medical care provided to him, such claim is outside the scope of this case. Claims concerning the scope and quality of medical care fall under the Eighth Amendment, and cannot be resolved under the ADA and Rehabilitation Act. See Fitzgerald, 403 F.3d at 1144; Johnson by Johnson, 971 F.2d at 1493.

## CONCLUSION

Claimant's claim must be denied where Claimant has failed to meet his burden of proof because he provided no supporting evidence to his claim. Claimant's condition does not qualify under any of the disability categories. Claimant's vision concerns do not rise to the level of a disability where Claimant is neither blind nor with visual acuity more myopic than 20/200 in his better eye. Claimant's diabetes does not rise to the level of a disability where his diabetic condition does not

12

substantially limit him in any major life activity. As Claimant is not disabled, he is
not entitled to disability accommodations.

Where Claimant was not entitled to accommodations for disabilities, Claimant
was not denied access to any job, program, benefit or service for which he was
otherwise qualified. Furthermore, CDOC did not discriminate against Claimant based
upon a disability and, thus, Claimant did not suffer harm due to CDOC
discrimination. Finally, to the extent that Claimant's claim goes to the scope and
quality of medical care provided, it is outside the scope of a <u>Montez</u> claim. Therefore,
Claimant is not entitled to relief where Claimant does not have a cognizable claim
under the Remedial Plan.

Respectfully submitted this 13ᵗʰ day of March 2006.

JOHN W. SUTHERS
Attorney General

Jennifer Berman
JENNIFER BERMAN, 35882*
Corrections Unit
Civil Litigation and Employment Law Section
1525 Sherman, 4th Floor
Denver, CO 80203
(303) 866-5647
Attorney for the Defendants
*Counsel of Record

13

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within DEFENDANTS' RESPONSE TO CLAIM upon all parties herein by depositing copies of the same in the U.S. Mail, postage prepaid, at Denver, Colorado, this 13 day of March, 2006, addressed as follows:

Keith Schwinaman
DOC # 105240
Colorado Territorial Correctional Facility
Unit 7-2-11
P.O. Box 1010
Canon City, CO 81215-1010

*Courtesy Copy To:*

Cathie Holst

Kristin White

14