# EXHIBIT J
# PART II

work. As a result Diaz was eventually rejected or terminated from the Vocational Textiles and Upholstery and Correctional Industries because he could not understand English well enough to communicate effectively. See Def. Exh. C. Nothing in the record indicates that Diaz was terminated from a CDOC program or job because he is hearing impaired. In fact, on September 8, 2005, Diaz was determined to be "OK to return to work without restrictions." See Def. Exh. F.

Diaz further alleged that he was discriminated against when he received a COPD conviction for Fraud. It is unclear from the claim forms how Diaz's Fraud conviction discriminated against him. Conversely, Diaz received the COPD conviction because he presented a false GED certificate. This fraud was confirmed by the Minnesota Department of Education on February 26, 2003. Nothing in the record indicates that the Fraud conviction related to any matter concerning his hearing disability. See Def. Exh. D. Except for disciplinaries, Diaz has not been denied any earned time. See Def. Exh. E.

Ambulatory Health Records confirm Diaz's allegation regarding his hearing disability. Medical closely provided treatment and services for Diaz's hearing impairment. Diaz's was provided with audiograms and a hearing aid. See Def. Exh. G. In addition to providing those accommodations, CDOC regularly provided repair and service for Diaz's hearing aid. Of course, it was up to Diaz to notify Medical when he needed batteries, replacement or repair to his hearing aid. See Def. Exh. H. The medical records do not indicate that Diaz was treated for any injuries that were the result of his hearing impairment.

## ARGUMENT

4

Whether a <u>Montez</u> claimant is entitled to damages turns on four criteria. First, is the claimant a disabled individual who is a member of the class? The Remedial Plan limits the class to inmates with diabetes, vision, hearing, or mobility impairments. Second, was the claimant otherwise qualified to participate in the programs or receive the benefits of the services offered by DOC? Third, did DOC discriminate against the claimant because of his or her disability? (*e.g.*, were accommodations requested and denied because of the disability?) Finally, did Defendants' conduct cause the claimant harm and if so, what is an appropriate remedy? <u>See</u> November 23, 2004 Order, ¶ 2. A <u>Montez</u> claimant bears the burden of proving all four elements of a <u>Montez</u> damages claim. In applying these criteria, the court can look to ADA and Rehabilitation Act case law. <u>Id.</u> at ¶ 3.

In order to file a <u>Montez</u> damages claim, a claimant must have one of the four designated impairments and must have been the victim of discrimination based upon that condition. <u>See</u> Remedial Plan; <u>Toyota Motor Manuf. v. Williams</u>, 534 U.S. 184 (2002); <u>Pennsylvania Dep't of Corrs. v. Yesky</u>, 524 U.S. 206 (1998). The only relevant disabilities for the purposes of the Remedial Plan are diabetes, vision, hearing, or mobility impairments. Remedial Plan, § III.

### I.      DIAZ HAS NOT ESTABLISHED THAT HE IS A DISABLED INDIVIDUAL WHO IS A MEMBER OF THE CLASS.

"[A]s a threshold matter, any plaintiff asserting a claim under the ADA must establish he or she is a qualified individual with a disability." <u>Lanman v. Johnson County</u>, 393 F.3d 1151, 1156 (10th Cir. 2004).

Diaz has claimed that he is hearing impaired. Diaz has even been qualified by a physician to have a hearing disability that warrants some accommodations. <u>See</u> Def.

5

Exh. A. However, the Remedial Plan defines a hearing impairment in Montez as "Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning." Remedial Plan § V(A)(2). Diaz is only permanently deaf in his left ear, he does not have to read lips, rely on written communication, or sign in order to communicate effectively. Thus, Diaz is not hearing disabled under the ADA definition. Diaz has been provided hearing aids in order to accommodate his hearing disability. Diaz's hearing aid accommodation allows him to communicate effectively and hear an emergency warning.

Diaz must have one of the four designated impairments and must have been the victim of discrimination based upon that condition. See Remedial Plan; Toyota Motor Manuf. v. Williams, 534 U.S. 184 (2002); Pennsylvania Dep't of Corrs. v. Yesky, 524 U.S. 206 (1998). Because Diaz does not have one of the four designated impairments he is not a class member and cannot seek damages.

## II.     DIAZ WAS NOT DENIED ACCESS TO JOBS OR PROGRAMS NOR WAS HE OTHERWISE QUALIFIED.

Even if Diaz is disabled, he is only entitled to relief if CDOC denied him access to a program or benefit that he was "otherwise qualified" for. See School Bd. of Nassau County v. Arline, 480 U.S. 273, 285 (1987). "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." Id. at 287 n.17; Pushkin v. Regents of Univ. of Colorado, 658 F.2d 1372, 1387 (10th Cir. 1981). "[T]o assure meaningful access [for an otherwise qualified person], reasonable

accommodations in the grantee's program or benefit may have to be made." Alexander v.

Choate, 469 U.S. 287, 300 (1985).

Furthermore, a claimant must prove that he was "discriminated against by CDOC

because of his or her disability? (*e.g.*, were accommodations requested and denied

because of the disability?)" See November 23, 2004 Order, ¶ 2. Diaz cannot prove that

he was denied any programs because of his disability. Distinctively, Diaz was not

terminated from any position because of his hearing impairment, rather, Diaz was

terminated for either medical restrictions (i.e. heavy lifting, no heavy machinery, etc.) or

because he couldn't communicate (i.e. he cant speak English, not because of his hearing

impairment). See Def. Exh. B & C. Diaz worked in several jobs and attended many

programs that he was medically able to perform.

Diaz has been allowed to work and attend programs and classes. Because

Diaz does not allege, let alone prove, that he was denied access to any job, program,

or service, his Montez claim must fail.

### III.   DIAZ WAS NOT DISCRIMINATED AGAINST BECAUSE OF HIS DISABILITY.

The third prong Diaz must prove in a Montez case is that he was discriminated

against by CDOC because of his disability (i.e. were accommodations requested and

denied because of the disability). Clearly Daiz was not denied accommodations. In fact,

Diaz was provided treatment and a hearing aid for his impairment. Likewise, Diaz's

Accommodation Resolution provided him with the proper accommodation for his hearing

impairment request. See Def. Exh. A. There is no record that Diaz was denied any

accommodation because of his disability, nor has Diaz provided evidence to the contrary.

7

Therefore, Diaz could not have been discriminated against because of his alleged disabilities.

Even if Diaz was unable to perform specific jobs due to his medical condition, that alone would not established a right to recovery. "[I]nability to pursue one career . . . does not constitute a severe impact on an individual's life." McGuinness v. University of New Mexico Sch. of Med., 170 F.3d 974, 979 (10th Cir. 1998). Diaz was only medically restricted from performing certain jobs. These restrictions are for his safety and for the safety of others in the correctional facility. Therefore, because Diaz was not denied an accommodation based on his hearing disability, Diaz's claim for damages must fail.

### IV.    DIAZ WAS NOT HARMED BY CDOC.

Lastly, Diaz must be able to prove that CDOC's actions caused him injuries. Nothing in the record indicates that any CDOC actions caused Diaz an injury. Therefore, Diaz cannot conceivably claim that he suffered an injury (physical or not) or that but for CDOC's actions he would not have suffered an injury.

### V.    DIAZ'S CLAIM ALLEGES IMPROPER MEDICAL CARE WHICH IS BEYOND THE SCOPE OF THIS CASE.

An inmate's claim of improper medical care falls under the Eighth Amendment, not the ADA or Rehab Act. The ADA does not provide a jurisdictional basis for challenging the quality of medical care received by an inmate in a correctional facility. See Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1143-44 (10th Cir. 2005); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.") Furthermore, Judges Kane and Nottingham have made clear that "individual Eighth Amendment medical malpractice claims are not contemplated by

the Remedial Plan." See November 23, 2004 Order, ¶ 5. A medical malpractice claim is only actionable if its meets the four criteria of a disability discrimination claim.

Under the Eighth Amendment, a prisoner's right is to access with medical personnel capable of evaluating the need for treatment. Frohmader v. Wayne, 766 F.Supp. 909, 916 (D.Colo. 1991), aff'd in part, rev'd in part on other grounds, 958 F.2d 1024 (10th Cir. 1992). A prisoner has no right to the diagnosis or treatment of his choice. Coppinger v. Townshend, 398 F.2d 392, 394 (10th Cir. 1968). A mere disagreement between an inmate and a doctor about the need for specific treatment does not state a claim for relief. Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993).

Therefore, Diaz's claims of improper medical care, delayed medical care or disagreements with medical treatment are beyond the scope of recovery in Montez.

## CONCLUSION

To succeed Diaz must prove the four elements laid out in the Remedial Plan. If the four elements are not met, the claim must fail. Accordingly, Diaz has not proved that he was a class member.

Diaz is not hearing impaired as required by the Remedial Plan, ADA and the Rehabilitation Act. Second, Diaz did have access to programs or received the benefits offered by CDOC. Diaz was not discriminated against by CDOC because of his alleged disability. Diaz was provided with all accommodations that were requested regarding his hearing impairment. Because Diaz is not legally disabled and was not denied an accommodation based on a disability that resulted in an injury, his claim for damages must be denied.

9

Finally, Diaz's complaints of improper medical care, delayed medical care or

disagreements with medical treatment are beyond the scope of Montez and should also be

denied.

Respectfully submitted this 6 day of Ot. 2005.

JOHN W. SUTHERS
Attorney General

ADAM WIENS, 36357*
Attorney
Corrections Unit
Civil Litigation and Employment Law
  Section
Attorney for Defendants
*Counsel of Record

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within RESPONSE TO CLAIM upon all parties herein by depositing copies of same in the United States mail, postage prepaid, at Denver, Colorado, this 6 day of Ct., 2005 addressed as follows:

Luis E. Diaz, #84886
LCF
Unit 2B
49030 State Hwy 71
Limon, CO 80826

*Courtesy Copy To:*

Cathie Holst

11