IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 01-104
Category I
Claimant: Antonio Chavez, #58609
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO  80751

---

## FINAL ORDER OF SPECIAL MASTER
---

      THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan (also referred to as Settlement Agreement).  The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for

Defendants, the Court was notified that a settlement had been reached between members of the class

1

and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

>      *1. Permanent Mobility Impairments*
>      a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.
>      b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.
>
>      *2. Permanent Hearing Impairments*
>      Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>
>      *3. Permanent Vision Impairment*
>      Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>
>      *4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*
>      Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>      2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>           1. Is the claimant a disabled individual who is a member of the class?
>           2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>           3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>           4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

The Special Master has reviewed the initial and supplemental claim forms and other documents submitted by Claimant.[1] The Special Master has reviewed the response of Defendants. Claimant was given the opportunity to reply to Defendants' response by July 14, 2006. To date, no reply has been filed by Mr. Chavez. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial claim in June, 2004 and supplemental claim form for mobility, hearing and vision impairments in July, 2004. Mr. Chavez has been incarcerated in DOC since1987. Mr. Chavez states that DOC has failed to adequately treat his trigeminal neuralgia which was diagnosed in 2002 by an otolaryngologist, Dr. Victoria King. Claimant states that he has constant, excruciating pain on the left side of his face, including his "skull, ear, jaw and eye." *(Supplemental claim form)*. Claimant asserts that because DOC has not treated his trigeminal neuralgia with the proper medications and surgeries, his hearing, vision and mobility have been impaired to such an extent that he now qualifies as disabled under the Settlement Agreement. Mr. Chavez requests that the Special Master award him monetary damages for his pain and suffering and that DOC provide him with the medications and surgeries that he has requested to resolve his severe facial pain.

Defendants' response is a general denial of Mr. Chavez's claims. Defendants assert that Mr. Chavez is not a member of the *Montez* class because he has not presented any medical records or evidence to substantiate that he has a hearing, mobility or vision impairment that would constitute a disability under the Settlement Agreement.[2]

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

*I. Permanent Mobility, Vision and Hearing Impairments:*

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. The Settlement Agreement, as drafted by counsel for the class and counsel for Defendants, narrowly defines the disabilities that are covered. Under the definitions set forth in the Settlement Agreement, Mr. Chavez does not a permanent mobility, hearing or vision impairment.

---

[1] Claimant submitted a number of documents attached to his supplemental claim form which have been reviewed by the Special Master.

[2] On April 28, 2005, Claimant submitted additional documents to the Special Master. These documents include the following medical records: DOC Ambulatory Health Records for Claimant dated: 10/21/02; 10/23/02 and 2/10/05; 9/12/02 otolaryngology evaluation by Victoria King, M.D. and 1/6/05 neurology evaluation by Steven C. Zielinski, M.D.

*(Settlement Agreement, Section V, Paragraph A, pp. 4-5, set forth on p.3 of this order).*

There is no doubt that chronic pain can be as debilitating as any physical disability. Chronic pain interferes with all of the mental and physical functions of the body. Claimant has been treated by DOC medical staff for severe chronic pain on the left side of his face since 2000. On November 8, 2002, Claimant was told in a Step II Grievance Response that he had been diagnosed with trigeminal neuralgia and treated with Tegretol.[3] Mr. Chavez's dispute with DOC arises from the fact that an otolaryngologist, Dr. Victoria King, in her September 12, 2002 evaluation recommended that Mr. Chavez be started on Neurontin for the pain resulting from trigeminal neuralgia. At that time, Neurontin was not available at DOC and other medications were substituted.[4] Mr. Chavez disagreed with this course of treatment and alleged deliberate indifference to his medical condition.

A review of Claimant's medical records demonstrates that Claimant has been treated for chronic severe facial pain while at DOC. On 10/21/03, Mr. Chavez had a neurosurgery consult at Denver Health. The MRI taken at that time showed "no evidence of nerve compression" and Claimant's symptoms were found to be "inconsistent with trigeminal neuralgia." On 4/14/04, Mr. Chavez had a neurology consult at Denver Health. He was referred to a neurosurgeon, Dr. Steven Zielenski, who found no pathology on the MRI taken on 12/6/04. Dr. Zielenski submitted a written evaluation on January 6, 2005 in which he stated that Mr. Chavez's symptoms were not entirely consistent with trigeminal neurology. In addition, Dr. Zielenski noted in his report that Mr. Chavez had tried a number of medications to manage his facial pain including Tegretol, Neurontin, Klonopin and Baclofen. None of the medications were effective.

Although Claimant disagrees with the scope and quality of medical provided to him by DOC, he has not established by a preponderance of the evidence that he is a disabled individual with a mobility, hearing or vision impairment. The Special Master finds that Mr. Chavez is not a disabled individual who is a member of the *Montez* class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Claimant does not meet the definition of disabled with a mobility, hearing or vision impairment under the Settlement Agreement, this question need not be answered.

---

[3]Claimant submitted a document entitled "Step II Grievance Response" dated November 8, 2002 which states: "A review of your records shows that you have been diagnosed with trigeminal neuralgia and have been treated with Tegretol. You saw Dr. King on 9/12/02 and she concurred with this diagnosis."

[4]At some point in time, Mr. Chavez was treated with Neurontin which he claimed did not work. *(See, DOC Ambulatory Health Record, dated 2/10/05 and 1/6/05 evaluation by Dr. Zielinski noting that Neurontin was used by Claimant without success).*

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
Since Claimant does not meet the definition of disabled with a mobility, hearing or vision impairment under the negotiated Settlement Agreement, this question need not be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question need not be reached in light of the answers to Questions #1, #2 and #3.

### IV.

The Special Master finds that all of Mr. Chavez's claims are based on what he considers to be substandard medical care. However, any claims that Mr. Chavez might have regarding the quality of medical care provided by DOC are not cognizable under the ADA and Rehabilitation Act. The Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The Tenth Circuit Court of Appeals ruled that the ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Cases for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement.[5] To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

IT IS HEREBY ORDERED that the claim of Antonio Chavez as to mobility, hearing or vision impairment is denied, as Mr. Chavez has failed to prove by a preponderance of the evidence each of the four criteria set forth in the District Court's Order of November 23, 2004; and

IT IS FURTHER ORDERED that all other aspects of the claim of Antonio Chavez are dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 6, 2006.**

---

[5]Claimant's individual Eighth Amendment claims are not contemplated by the Settlement Agreement, unless those claims meet the four criteria set forth in the District Court's order of November 23, 2004. Based upon the evidence presented, the Special Master finds that Claimant has not sustained his burden of proof.

SIGNED this 11th day of September, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master