IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-468
Category II
Claimant: George C. McDaniel  #90095
Address of Claimant: Limon Correctional Facility, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan (also referred to as Settlement Agreement). The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of the Settlement Agreement, as they have only the jurisdiction agreed upon by the parties. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for

Defendants, the Court was notified that a settlement had been reached between members of the class

and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Settlement Agreement was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class. The Settlement Agreement did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file claims seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> *III. DEFINITIONS*
> *A. COVERED DISABILITIES*
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> *B. QUALIFIED INMATE*
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> *C. PERMANENT DISABILITY/IMPAIRMENT*
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A, pp.4-5.*

2

> *1. Permanent Mobility Impairments*
> a) Permanent Wheelchair: Inmates who use wheelchairs full or part time due to a permanent disability.
> b) Permanent Mobility Impairment: (non-wheelchair): Inmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking: *e.g.,* an inmate who cannot walk 100 yards on a level surface or climb a flight of stairs without a pause. Such impairment may require use of a cane, prosthesis, walker or other assistive devices.
> *2. Permanent Hearing Impairments*
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> *3. Permanent Vision Impairment*
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> *4. Permanent Diabetics: Insulin or Non-Insulin Dependent Diabetics*
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A, pp.4-5* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Special Master has reviewed the initial and supplemental claim forms submitted by

3

Claimant. The Special Master has reviewed the response of Defendants. Claimant was given the opportunity to reply to Defendants' response by June 17, 2006. To date, no reply has been filed by Mr. McDaniel. The Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant filed his initial claim in June, 2004 and supplemental claim form for mobility and vision impairment in July, 2004. Mr. McDaniel has been incarcerated in DOC since 1994. Mr. McDaniel's claims a lower extremity mobility impairment based upon injuries to his heels and knees that predate his incarceration. Although Mr. McDaniel did not submit any documentation in support of his claim, Defendants attached medical records which substantiate that Claimant has been treated for ankle, knee and back pain from 1997 to 2005. *(See, Defendants' Exhibits B, C, D, G, H, I, J, K, L, P, and Q)*. Mr. McDaniel's assertion that one of his legs is shorter than the other is not documented.

Claimant states that he was denied "medical shoes" from 1997 to 2000 despite the fact that a physical therapist authorized them. In 2000, Claimant asserts that he was given "medical shoes" by DOC. He describes the shoes as "soft soled street shoes, with extra padding in the heel of the shoes and an added insole to compensate for the leg length difference, which is a one-fourth inch difference". *(Claimant's supplemental form)*. Claimant states that he had these shoes until April, 2004 when they were wrongfully confiscated by medical security and destroyed. *(See, Defendants' response, Exhibits N and R)*. Mr. McDaniel claims that he had a medical permit to have the shoes but he could not substantiate this because the pertinent pages from his medical records were missing. *(Claimant's supplemental form)*. Claimant believes that DOC retaliated by destroying the shoes after he filed his claim as allowed by the Settlement Agreement in this case. Claimant states that since his shoes were taken, he cannot participate in any recreational sports and he has severe pain sitting, standing or walking any distance. He requests that medical shoes be authorized again and that he be allowed to have his family pay an outside vendor for medical boots and shoes. Mr. McDaniel also requests that he be compensated for the inadequate shoes and insoles that he has had to purchase from the canteen.

Mr. McDaniel's claim for a vision impairment is based upon his sensitivity to both natural and artificial light. Mr. McDaniel claims that he was authorized prescription sunglasses in 1997, but two weeks after receiving them, they were confiscated and destroyed by security. Claimant states that he is legally blind in one eye and needs to wear prescription sunglasses all of the time, both inside and outside. Mr. McDaniel states that the sunglasses that he can purchase at the canteen are "one size fits all" and slip off his face. *(Claimant's supplemental form)*. Claimant requests that he be reimbursed for the cost of the confiscated prescription sunglasses and that he be allowed to have his family pay an outside vendor for prescription sunglasses similar to the ones that were destroyed.

In their response, Defendants assert that Mr. McDaniel is not a member of the *Montez* class. They argue that he does not have a mobility or vision impairment that would constitute a disability under the Settlement Agreement.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

*I. Permanent Mobility Impairment:*

**1. Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. The Settlement Agreement, as drafted by counsel for the class and counsel for Defendants, narrowly defines the disabilities that are covered. Under the Settlement Agreement, a permanent mobility impairment for a person not in a wheelchair requires that a person have a permanent lower extremity impairment that substantially limits walking and the person's ability to perform a major life activity. A review of the documents submitted by Defendants establishes that Mr. McDaniel has been treated by DOC medical staff over the years for heel, ankle and knee pain and sports related injuries. Mr. McDaniel claims that he had "medical shoes" for four years until they were confiscated and destroyed in April, 2004. Since then, he states that he cannot walk or participate in any sports events without severe pain.

Claimant did not submit any documents to support his claim of a permanent lower extremity impairment. The documents submitted by Defendants contradict all of Claimant's assertions.[1] Claimant was examined by medical staff on 6/18 and 6/22/04. Notes in the ambulatory health record indicated that Mr. McDaniel's gait was even when he walked and he had no trouble getting on and off the examination table. It was also noted that Claimant was "wearing tennis shoes" and was advised to continue with soft soled shoes. *(Defendants' response, Exhibits, D and M)*. On September 24, 2005, Claimant was treated for an injury to his shoulder which he sustained while playing football. *( Defendants' response, Exhibits G and H)*. The Special Master finds that the ability to play football indicates that Mr. McDaniel could not possibly have a lower extremity impairment. The Special Master finds that Claimant has not established by a preponderance of the evidence that he is a disabled individual with a permanent lower extremity mobility impairment who is a member of the *Montez* class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Claimant does not meet the definition of disabled with a permanent lower extremity mobility impairment under the Settlement Agreement, this question need not be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant does not meet the definition of disabled with a permanent lower extremity mobility impairment under the negotiated Settlement Agreement, this question need not be answered.

---

[1]As Mr. McDaniel chose not to reply to Defendants' response, the Special Master accepts the veracity of the exhibits submitted by Defendants as they pertain to both Claimant's alleged mobility and vision impairments.

5

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
This question need not be reached in light of the answers to Questions #1, #2 and #3.

## II. *Permanent Vision Impairment:*

**Is the Claimant a disabled individual who is a member of the class?** The answer to this question is no. A permanent vision impairment under the Settlement Agreement is very narrowly defined as "inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better even with corrective lenses." Mr. McDaniel apparently wears corrective lenses issued by DOC. He does not complain about the adequacy of these glasses, but claims that he has a medical need for prescription sunglasses. Mr. McDaniel did not submit any documents to support his claim of a permanent vision impairment. However, the documents submitted by Defendants substantiate that Claimant is not blind, and with corrective lenses, Mr. McDaniel's central vision acuity was 20/30 in the right eye and 20/50 in the left eye at his last optometric exam on April 13, 2004. *(Defendants' response, Exhibit E)*.

The Special Master finds that prescription sunglasses are not encompassed under the negotiated Settlement Agreement, unless a Claimant can substantiate a medical need for dark glasses. Mr. McDaniel has not done so. Claimant states that he needs to wear prescription sunglasses all of the time or he has constant headaches and nausea. The Special Master cannot reconcile these statements of Claimant with his medical history which shows that Claimant is very physically active. The Special Master is at a loss to understand how Claimant can allege that without prescription sunglasses he can barely function, but yet he still manages to play racquetball, basketball and football. Under the negotiated Settlement Agreement, Mr. McDaniel has not established by a preponderance of the evidence that he is a disabled individual with a permanent vision impairment who is also a member of the *Montez* class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Claimant does not meet the definition of disabled with a permanent vision impairment under the Settlement Agreement, this question need not be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant does not meet the definition of disabled with a permanent vision impairment under the negotiated Settlement Agreement, this question need not be answered.

**4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?** This question need not be answered in light of the answers to Questions #1, #2 and #3.

The Special Master would note that any complaints that Mr. McDaniel might have regarding the quality of medical care provided by DOC are not cognizable under the ADA and Rehabilitation Act. The Court of Appeals for the Tenth Circuit ruled on April 11, 2005, that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ADA and

Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Cases for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement.[2] To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

IT IS HEREBY ORDERED that the claim of George C. McDaniel as to both permanent mobility and vision impairments is denied, as Mr. McDaniel has failed to prove by a preponderance of the evidence each of the four criteria set forth in the District Court's Order of November 23, 2004; and

IT IS FURTHER ORDERED that all other aspects of the claim of George C. McDaniel are dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 6, 2006.**

SIGNED this 5th day of September, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

---

Richard M. Borchers
Special Master

---

[2]Claimant's individual Eighth Amendment claims are not contemplated by the Settlement Agreement, unless those claims meet the four criteria set forth in the District Court's order of November 23, 2004. Based upon the evidence presented, the Special Master finds that Claimant has not sustained his burden of proof.

7