IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-094
Category: II
Claimant: Donald Ray Beierle #67317
Address of Claimant: 5400 Sheridan Blvd., #340, Arvada, CO 80002

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Donald Ray Beierle. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.  DEFINITIONS
>
> A.  COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B.  QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C.  PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Beierle submitted a claim which was assigned claim number 02-094. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Beierle first entered CDOC custody in March of 2002. During his incarceration, he has been housed at several CDOC facilities, including but not limited to Buena Vista Correctional Facility (BVCF), Crowley County Correctional Facility (CCCF) and Huerfano County Correctional Center (HCCC).

4. Claimant has a long history of back pain. He states that he injured his back while lifting wall frames as part of his job at the BVCF in 1999. Claimant then aggravated his back injury in approximately 2001 while lifting rolls of leather in the saddle shop at BVCF. Claimant continued to work in the saddle shop until he was transferred to the CCCF in August of 2002. In March of 2003, Claimant Beierle purchased a bottle of Ibuprofen to relieve his back pain. In the summer of 2003, Beierle was seen by CDOC medical providers for his lower back pain and complained of

difficulty walking and performing his regular normal duties such as cleaning his cell and making his bed.

     5.     Claimant's back pain became significantly more severe in late September of 2003. He indicates that for a period of time after September 24, 2003, he was hardly able to walk or stand. He states that during this time he was unable to utilize the handicapped shower because it was being used by non-disabled inmates. Claimant asserts that CDOC has failed to properly treat his back pain, has failed to provide him with a special mattress and has refused to accommodate his inability to stand in long lines to get his mail, to obtain his food and to utilize the canteen. He indicates that he is forced to stand in these long lines because he is unable to run like other inmates due to his back pain. As a result, he is usually at the end of the line for meals, mail and the canteen. He also claims that during September of 2003, when he could hardly walk, he was required to go to the back of the dining hall because non-handicapped inmates were sitting at the handicapped table. Claimant states that he missed many meals in September of 2003 due to his back pain and the failure of CDOC personnel to accommodate his back problem. He also complains that CDOC has failed to give him a lower bunk restriction and that he was forced to utilize a top bunk for four months in 2004.

A review of Claimant's medical records reveals little objective evidence of back injury. A May 2003 x-ray showed that his vertebrae were in good alignment, with no fractures, dislocations or areas of destruction. There was a slight narrowing of the L4-L5 disk.

     6.     Claimant also suffers from a variety of other ailments including wrist pain, migraine headaches and flat feet. He contends that CDOC has failed to provide proper medical treatment and has failed to accommodate his wrist pain. Additionally, he asserts that CDOC refused to provide him with tennis shoes with arch support to correct his flat feet. He was required to purchase his own tennis shoes and these did not have sufficient arch support.

### III.  CONCLUSIONS OF LAW

     1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

     2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a

4

major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. Initially, the Special Master finds and concludes that Claimant's wrist problem and migraine headaches do not constitute disabilities that fall within the ambit of the Remedial Plan because they do not affect Claimant's mobility, hearing or vision and are not the result of diabetes. As a result, while Claimant may have an ADA and/or Rehabilitation Act claim relating to these medical problems, it must be pursued in a separate legal action.

Claimant's chronic back pain and flat feet do involve issues of mobility and, hence, can be considered under the Remedial Plan. While the evidence is in conflict, the Special Master finds that Claimant Beierle has made a sufficient showing that his chronic back problem does substantially limit his major life activity of walking. The Special Master finds and concludes that there is insufficient evidence to demonstrate that Claimant's flat feet constitute an impairment that substantially limits any major life activity.

4. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the DOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

5. Of course the key issue under the ADA, Rehabilitation Act and the Remedial Plan is whether Claimant was discriminated against because of his disability. Many of Claimant's complaints of discrimination and failure to accommodate relate to alleged lack of proper medical treatment, medications and medical devices. To the extent that Beierle's discrimination claim is premised on the lack of proper medical treatment, or the alleged failure of CDOC to provide proper medications and/or medical devices such claims are not cognizable under Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

Other than Claimant's arguments relating to lack of proper medical care, which do not state claims under the ADA or Rehabilitation Act, all of Claimant's assertions of discrimination and failure to accommodate his mobility disability concern actions or failures to act on the part of CDOC occurring after August 27, 2003. Specifically, Claimant's contentions relating alleged failures to accommodate his needs in the dining hall, the alleged failure to make a handicapped shower available to him and the alleged failure to provide him with a lower bunk all occurred after his back pain became significantly worse in late September of 2003. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

Because Claimant Beierle has failed to show discrimination or failure to accommodate his disability that occurred prior to August 27, 2003 and constituted a violation of the ADA and/or the Rehabilitation Act, his Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Beierle's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 13th day of September, 2006.

                                                              BY THE COURT:

                                                              /s/ Bruce D. Pringle

                                                              _____

                                                              Bruce D. Pringle,
                                                             Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 12th day of September, 2006 to the following:

Mr. Donald Ray Beierle, #67317
5400 Sheridan Blvd., #340
Arvada, CO 80002

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                                /s/ Susan L. Carter

                                                Susan L. Carter