IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-096
Category: II
Claimant: Troy Fettes, #99885
Address of Claimant: CCF, P.O. Box 600, Canon City, CO 81215-0600

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Troy Fettes. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1.  Claimant Fettes submitted a claim which was assigned claim number 02-096. The claim is premised on alleged mobility impairment, hearing impairment and vision impairment.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  Claimant Fettes entered CDOC custody in 1999. Although the records provided to the Special Master do not specify the institutions in which Claimant was housed, it appears that Claimant was incarcerated at the Crowley County Correctional Facility (CCCF), Freemont Correctional Facility (FCF), Sterling Correctional Facility (SCF) and Centennial Correctional Facility (CCF).

4.  Claimant suffers from hip, lumbar and cervical pain for which he has been given various medications. He indicates that in 1999, he received a head injury as a result of an assault while he was housed at CCCF. Claimant states that he was confined to a wheelchair until he was moved to FCF but his request for a pusher was denied. At that time, his wheelchair was taken away and he was given a cane. Claimant indicates that he was denied an assistant despite his request for one. His request for a handicapped room was also denied. Claimant contends that he was denied proper medical treatment,

proper medications and proper medical devices. While in SCF, Claimant was placed in a cell without aid bars and without his cane. Claimant asserts that he fell and broke his nose in his cell as a result of being overmedicated. He alleges that he has not been able to participate in unspecified programs.

   5. Claimant also contends that he suffered damage to his hearing and vision as a result of the 1999 assault. He states that both his distance and near vision have been affected so that he now wears bifocals. Claimant Fettes indicates that while and FCF, an eye specialist recommended eye surgery, but that CDOC refused to comply with the recommendation and have never allowed him to see another eye specialist. With respect to alleged hearing impairment, Claimant Fettes states that he has minimal loss of hearing in his left ear and substantial hearing loss in his right ear. He complains that he has not been given hearing aids despite the fact that a doctor concluded that hearing aids were needed. He again complains that he has not received proper medical treatment for his hearing problem. Claimant asserts that he has difficulty using the telephone and that he has gotten into trouble for missing important instructions.

   6. Claimant's testimony regarding his alleged impairments is inconsistent with his institutional and medical records. It appears that Claimant has little difficulty walking. While several of his medical records note that he has hip, lumbar and cervical pain, they also indicate that he walks with a normal gait and ambulates to and from his cell with no difficulty. Claimant's medical records suggest that he suffers from epileptic seizures. Although the medical records reflect that Claimant suffered injuries to his ears and blurred vision as a result of the 1999 assault, there is nothing in the records indicating that he has a permanent hearing or vision impairment. Additionally, a visual acuity test performed in 2003 showed an uncorrected acuity 20/25 for Claimant's right eye and a 20/50 uncorrected acuity for the left eye.

### III. CONCLUSIONS OF LAW

   1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

   2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class. Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks. Additionally, the Special Master finds and concludes that Claimant's mobility disability falls within the criteria established by the Remedial Plan class membership based upon a permanent physical mobility impairment.

Claimant has not met his burden of establishing that he suffers from either a permanent vision disability or a permanent hearing disability. Claimant's uncorrected visual acuity does not substantially limit the major life activity of seeing, and, as Claimant has acknowledged, he has been given bifocals to correct his vision. Likewise, there is insufficient evidence in the record to demonstrate that Claimant suffered any permanent impairment to his hearing as a result of the 1999 assault.

4. The question of whether Claimant suffers from a permanent mobility disability is more difficult. While he was provided with a wheelchair after the 1999 assault, it was taken away from him and he has been ambulating with or without the aid of a cane ever since. Although Mr. Fettes' Claim and Supplemental Claim make reference to "mobility problems," neither indicates that Claimant is unable to walk. Claimant's medical records affirmatively note that he is able to ambulate without significant difficulty. Based on the totality of the evidence, the Special Master finds and concludes that Claimant has not established by a preponderance of the evidence that his mobility problems substantially limit his ability to perform the major life activity of walking.

5. Even if we assume for purposes of discussion that Claimant suffers from a permanent mobility disability, the key issue is whether Claimant was discriminated against because of his disability during the time covered by the Remedial Plan. To the extent that his discrimination claim is premised on the refusal of the CDOC to provide him with medical treatment or that he has been given improper medical care, Claimant is required to show that these alleged deficiencies in medical treatment prevented him from taking part in the institution's programs and services. No such showing has been made by the Claimant. Without such a showing, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

6. The Special Master finds and concludes that Claimant's fall in his cell was not causally related to any permanent mobility disability. Rather, Claimant himself acknowledges that his fall was caused by his medications.

7. Finally, Claimant fails to identify any program or service that he was precluded from utilizing because of his alleged mobility disability. To the contrary, Claimant's records show that he did participate in programs including: GED, Anger Management, Prison Life Skills and Crime Impact on Victims.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Fettes' claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 13th day of September, 2006.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

   I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 13th day of September, 2006 to the following:

Mr. Troy Fettes, #99885
CCF
P.O. Box 600
Canon City, CO 81215-0600

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

            /s/ Susan L. Carter
            _____
            Susan L. Carter