IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

―――――――――――――――――――――――――――――――――――――――――――――

Claim Number: 02-182
Category: II
Claimant: Troy Dean Moore, #55398
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

―――――――――――――――――――――――――――――――――――――――――――――

**FINAL ORDER OF SPECIAL MASTER**

―――――――――――――――――――――――――――――――――――――――――――――

THIS MATTER comes before the Special Master on the claim of Claimant Troy Dean Moore. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant Moore submitted a claim which was assigned claim number 02-182. The claim is premised on an alleged mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Moore entered CDOC custody in 1999. He has been housed at various CDOC facilities, including Sterling Correctional Facility (SCF), Buena Vista Correctional Facility (BVCF), and Centennial Correctional Facility (CCF).

4. Claimant asserts that he suffers from a dislocated disk in his lower back which causes him severe pain. He states that the pain causes him to lose sleep and also "results in some mobility problems at times." *See,* Correspondence from Claimant Moore received July 19, 2005.

5. Claimant Moore contends that he has not received appropriate medical care for his back pain. He indicates that he has been given improper medication and that his requests for effective medication have been denied. Moore further takes issue with the decision of CDOC medical providers that he is not a candidate for surgery.

6. Claimant states that in 2003, he slipped and fell in the shower while in administrative segregation at SCF because there were no hand rails.

7. Claimant Sanchez also alleges that he was denied earned time; that he was required to work when he was unable to do so because of his back pain; and that he received discipline for refusing to work when his back pain was too severe.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

4

   3. The Special Master finds and concludes that Claimant Moore has not sustained his burden of establishing that he has a permanent mobility disability. The record shows that Claimant was able to walk and negotiate stairs -- albeit with some pain. The only evidence of mobility impairment consists of Claimant's statement that his back pain "results in some mobility problems at times." This evidence is insufficient to establish a substantial limitation on the major life activity of walking.

   4. Even if Claimant Moore is deemed to be permanently disabled within the meaning of the ADA and/or Rehabilitation Act, the Special Master finds and concludes that Claimant has failed to sustain his contention that he was discriminated against because of his mobility disability. Moore's primary claim is premised on the refusal of the CDOC to provide him with proper medical treatment and medications. Such a claim falls outside the ambit of the protections afforded by the ADA and/or the Rehabilitation Act. A failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but it does not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of Amerisica,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

   5. While Claimant Moore asserts that he fell in the show due to a lack of hand rails, no evidence has been presented that this fall was related to Moore's alleged mobility problems.

   6. Finally, Claimant asserts that he was forced to work despite his back pain; that he lost earned time; and that he was subjected to discipline for refusing to work. There is no evidence that non-disabled offenders were treated differently with respect to these work related matters. Consequently, the Special Master finds and concludes that Claimant has failed to establish any disparate treatment because of his mobility problems.

### IV. ORDER

   IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Moore's claim with prejudice.

   IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street<br>Denver, CO 80294.

   SIGNED this 13th day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 13th day of September, 2006 to the following:

Mr. Troy Dean Moore, #55398
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                                      /s/ Susan L. Carter
                                                      _____
                                                      Susan L. Carter