IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-220
Category:  II
Claimant:  Anthony Mack
Address of Claimant:  SCF, P.O. Box 6000, Sterling, CO 80751

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Anthony Mack.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.    Claimant Anthony Mack submitted a claim which was assigned claim number 02-220. The claim is premised on an alleged permanent vision disability.

2.    Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.    Claimant entered CDOC custody in August of 1998. The record does not identify each of the institutions in which Claimant has been housed. It appears, however, that during all or part of the time that he has been in CDOC custody, Claimant has been housed at the Limon Correctional Facility (LCF) and the Sterling Correctional Facility (SCF).

4.    Claimant asserts that he has a permanent vision disability. He suffers from double vision. This causes headaches and also affects his reading. He states that when reading he has to reposition his sight for short periods of time in order to eliminate the double vision. As a result, he reads slowly. Claimant also indicates that he cannot participate in baseball, basketball, volleyball or horseshoes.

     5.     Claimant contends that for many years, CDOC refused to allow him to undergo eye surgery even though it had been recommended by his medical providers. Claimant also complains that he was required to wait for substantial periods of time in order to have CDOC schedule necessary visits with ophthalmologists. He did undergo eye surgery in 2005 but now asserts that he needs additional follow-up surgery and that CDOC has not authorized it.

     6.     Claimant's medical records show that he has had numerous eye examinations since entering CDOC custody. These examinations show that his corrected visual acuity has ranged from 20/20 in both eyes to 20/20 in the right eye and 20/25 in the left eye. The medical records also reveal that he has been issued several pairs of prescription glasses. The records substantiate Claimant's statements that surgery was recommended by his medical providers as early as April of 2002 and that he did not undergo surgery until 2005. Some of this delay appears to have been due to insurance issues. The remaining delay is unexplained by the records provided to the Special Master. The records also confirm that follow-up surgery has been recommended. There are also instances were Claimant submitted requests to see an eye specialist but the appointment was not scheduled by CDOC for some time.

### III. CONCLUSIONS OF LAW

     1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

     2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4

As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities, thus rendering the impairment a "disability," under the ADA and/or Rehabilitation Act.

The threshold question presented by Mr. Mack's claim is whether double vision constitutes a permanent vision impairment that substantially limits his ability to engage in one or more major life activities. On the one hand, if the answer to this question is in the negative, his claim must fail. On the other hand, if the answer to the query is in the affirmative, then further analysis is required to determine whether he is "qualified," and whether he has been discriminated against by CDOC because of his disability.

Claimant does not contend that he is blind or that his visual acuity prevents him from seeing. Indeed, such a contention, if made, would have been directly contrary to the medical records provided by the Claimant, since those records show that his corrected visual acuity has ranged between 20/20 in both eyes to 20/20 in the right eye and 20/25 in the left eye. The United States Supreme Court has clearly established that corrective measures must be taken into account in determining whether a disability exists. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999). Thus it is only Claimant's corrected visual acuity that is relevant. The medical records show that Claimant has received several pairs of corrective glasses while in CDOC custody.

There is no doubt that Claimant's double vision constitutes a vision impairment. However, the fact that Claimant has some impairment relating to his vision is insufficient to establish that he is disabled. It is the impact of the impairment on Claimant's ability to perform major life activities that is determinative of this issue. The impact must consist of a substantial limitation on the ability to engage in a major life activity in order to rise to the level of a disability under the ADA or the Rehabilitation Act. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

The overwhelming majority of reported decisions under the ADA and/or the Rehabilitation Act that deal with claims of disability based on vision impairment have looked to the plaintiff's visual acuity. These cases provide no assistance to Claimant Mack because his visual acuity with corrective lenses is as good -- or better -- than the average person. For the most part, the few cases that deal with vision problems which do

5

not significantly impact visual acuity have concluded that such problems do not substantially limit the plaintiff's ability to engage in major life activities. *E.g., Weigert v. Georgetown Univ.,* 120 F. Supp. 2d 1 (D.D.C. 2000)(plaintiff with neurological disorder that made her highly sensitive to fluorescent lighting or glare not disabled); *Hoppes v. Commonwealth Fish and Boat Comm.,* 32 F. Supp.2d 779 (M.D. Pa. 1998)(color blindness not a disability); *Cline v. Fort Howard Corp.,* 963 F. Supp. 1075 (E.D. Okla. 1997)(difficulties with peripheral vision did not constitute disability). Specifically, the case law indicates that double vision generally does not substantially limit major life activities. *Monell v. Ks. Ass'n of Sch. Bds.,* 2001 WL 487766 (D. Kan., April 18, 2001); *Bancale v. Cox Lumber Co.,* 1998 U.S. Dist. LEXIS 22773 (M.D. Fla., May 18, 1998), *aff'd.,* 170 F.3d 199 (11th Cir. 1999); *Overturf v. Penn Ventilator, Co., Inc.,* 929 F. Supp. 896 (E.D. Pa. 1996).

Here, the Claimant indicates that his double vision renders him unable to play baseball, volleyball, basketball and horseshoes. None of these, however, are major life activities. The closest he comes to showing an impact on a major life activity is his statement that he must adjust his sight to read and that this slows down his reading speed. The Special Master finds that while this evidence shows some limitation on the major life activity of reading, the evidence fails to demonstrate that the limitation is substantial enough to be deemed a "disability," within the meaning of the ADA and/or the Rehabilitation Act.

3.  Additionally, Claimant's entire claim is premised on an alleged failure to provide proper medical treatment for his vision impairment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, to the extent that Claimant is attempting to assert a claim under the Eighth and Fourteenth Amendments to the United States Constitution, it is not cognizable under the Remedial Plan since there has been no showing that Claimant suffered any discrimination with respect to medical care because of his disability.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Mack's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before November 11, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 11th day of September, 2006

> BY THE COURT:
>
> /s/ Bruce D. Pringle
>
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 11th day of September, 2006 to the following:

Mr. Anthony A. Mack, #102779
SCF
P.O. Box 6000
Sterling, CO 80751-6000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter