IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-268
Category: II
Claimant: Vernon Rowe, #68583
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Vernon Rowe. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Rowe submitted a claim which was assigned claim number 02-268. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Rowe first entered CDOC custody in November of 1991. Although the records provided to the Special Master do not identify each of the facilities in which Claimant has been housed, it appears that he has been housed for part or all of the time that he has been in CDOC custody at the Limon Correctional Facility (LCF).

4. Claimant suffers from diabetes. He states that due to his diabetes, his vision is blurry unless he is wearing his eyeglasses. He also indicates that he has pain and swelling in his feet and ankles.

5. Claimant's primary complaint relates to an incident that occurred on September 16, 2003. Claimant had been employed in the garment factory since June of 2002 and had received good work performance reviews. He asserts that on September 16, 2003, the facility was in lock-down. He was required to take the medication for his

3

diabetes 1½ hours before eating.  He claims that because he had not received a meal, he declined to go to work.  As a result, he was terminated from his job.  The incident also resulted in a disciplinary proceeding in which Claimant was given ten days of punitive segregation.  He also lost a number of his privileges including his single cell, his hobby shop permit and his hobby shop inventory.

Claimant also asserts that at some unspecified time, he was not given his medications for 7½ days.

6. Claimant's records confirm that he is a diabetic and that his diabetes has caused some problems for him including pain in his feet and ankles.  He was placed on a special diet in 2000 and provided with oral medications.  The records reflect that during a medical examination in 2003, Claimant stated that he had been out of his medications for about a week.  The record further reflects that Claimant understood that he could have gone to the med-line and received his medications but indicated that he did not want to have to show his I.D.  The medical records reflect that Claimant has received eye examinations in 2000, 2001, 2003 and 2005.  In 2000, Claimant's corrected visual acuity was 20/20 in both eyes.  By 2005, his corrected visual acuity had changed slightly to 20/20 and 20/25.  He has periodically received new prescription glasses.

7. The description of the September 16, 2003 incident provided by CDOC personnel differs markedly from the description provided by Claimant. According to CDOC personnel, Claimant received a sack lunch on September 16, 2003.  Although many inmates received cookies in their sack lunch, Claimant received an apple because the kitchen ran out of cookies.  Claimant allegedly told CDOC personnel that he would not go to work unless he received cookies.  When he refused to report for work, he was terminated and a disciplinary proceeding was initiated.  After the disciplinary hearing, the hearing officer accepted the version of events presented by CDOC personnel.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a

major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. The Special Master finds and concludes that Claimant has failed to demonstrate by a preponderance of the evidence that his diabetes constitutes a disability within the meaning of the ADA and/or the Rehabilitation Act. The fact that Claimant has diabetes does not in itself render him disabled or qualify him for relief. Rather, he must present evidence establishing that his diabetes substantially limits his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

While Claimant's diabetes does result in some medical problems, there is simply no evidence that his diabetes substantially limits Claimant's ability to engage in any major life activity. His visual acuity has consistently been 20/20 to 20/25 with corrective lenses. Although he does have some pain in his feet and ankles, there is no indication that he is substantially limited in his ability to walk.

4. Even if Claimant were deemed to be disabled within the meaning of the ADA and/or Rehabilitation Act, he has failed to present any evidence that he suffered discrimination at the hands of CDOC because of his disability. Claimant's assertion that he did not receive medications for a week is refuted by the medical records which show that when he ran out of oral medication, he failed to go to the med-line to get more. In any event, even if the medical records supported Claimant's contention, both our Circuit

and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, to the extent that Claimant is attempting to assert a claim under the Eighth and Fourteenth Amendments to the United States Constitution, it is not cognizable under the Remedial Plan since there has been no showing that he suffered any discrimination with respect to medical care because of his disability.

There are a variety of reasons why the incident of September 16, 2003, which forms the primary basis for Claimant's *Montez* Claim, cannot be sustained. However, there is no need to discuss each of them in detail because any Claim arising out of his incident is simply not cognizable under the Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan. No such showing has been made here.

5. Because Claimant Rowe has failed to show that his diabetes constitutes a disability within the meaning of the ADA and/or the Rehabilitation Act and because he has failed to show that he suffered any discrimination because of his alleged disability prior to adoption of the Remedial Plan, his Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Rowe's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 11, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 11th day of September, 2006.

                                                    BY THE COURT:

                                                    /s/ Bruce D. Pringle
                                                    _____
                                                    Bruce D. Pringle,
                                                    Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 11th day of September, 2006 to the following:

Mr. Vernon Rowe, #68583
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter