IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-309
Category: II
Claimant: Harold Stahl, #112277
Address of Claimant: P.O. Box 40412, Grand Junction, CO. 81504

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Harold Stahl. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Stahl submitted a claim which was assigned claim number 02-309.  The claim is premised on an alleged permanent mobility disability, vision impairment and diabetes

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Stahl first entered CDOC custody in February 2002.  It appears that he was released from CDOC custody in 2005.  It further appears that for some of the time that Mr. Stahl was in CDOC custody, he was housed at the Freemont Correctional Facility (FCF) and the Four Mile Correctional Center (FMCC).

4.      Claimant suffers from osteoporosis and chronic pain.  He complains of severe shoulder pain but also asserts that he has pain in his hips and has lost feeling in his feet.  Claimant Stahl also contends that he may have diabetes and that his eyesight has gotten worse due to a lack of proper medical care.

5.      Claimant asserts that CDOC failed to provide proper medical care for his degenerative joint disease and diabetes and failed to supply him with proper medications. He further contends that he has been denied medical shoes and a comfortable mattress.

Stahl points out that he slipped in the kitchen on a waxed floor injuring his hip and shoulder. In addition, Mr. Stahl alleges that he was required to work even though his disabilities prevented him from working; and that he was forced to attend GED classes even though he could not sit for long periods of time. Finally, he complains that he was not provided with reading assistance in his GED class and, as a result, he failed his GED test.

      6.      Claimant Stahl's medical records indicate that he suffers from chronic joint disease and arthritis. The medical records discuss Mr. Stahl's shoulder problems, but do not describe in any detail problems with his legs, feet or hips. An examination in June of 2004 revealed bilateral hip degenerative joint diseas, and indicated that both hip joints were mildly narrowed with several areas of calcification around the right hip. After the fall in the kitchen, x-rays of his ankle revealed no acute problems.

### III.  CONCLUSIONS OF LAW

      1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

      2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. The Special Master finds and concludes that Claimant Stahl has failed to sustain his claim that he suffers from a permanent mobility disability, a permanent vision disability or diabetes. While Claimant does suffer from degenerative joint disease and arthritis, no evidence was presented showing how the degenerative joint disease and arthritis in his hips affects any major life activity. Specifically, no evidence was presented that Claimant's hip problems prevent him from walking or climbing stairs or that these problems substantially limit the major life activity of walking.

Likewise, while Claimant asserts that he has vision problems, there is no objective evidence in the record to confirm this. There is also nothing in the record establishing that Claimant's vision is so poor that it substantially limits any major life activity.

Finally, there is no mention in Mr. Stahl's medical record that he has been diagnosed as suffering from diabetes. Furthermore, even if Mr. Stahl suffers from diabetes, no evidence was presented that his diabetes substantially limits his ability to engage in any major life activity.

The Special Master notes that Claimant Stahl does have significant shoulder problems. However, these are outside the scope of the Remedial Plan.

4. Because Claimant has failed to establish that he has a mobility or vision disability within the meaning of the ADA, the Rehabilitation Act, or the Remedial Plan or that his diabetes constitutes a disability within the meaning of the ADA, the Rehabilitation Act, or the Remedial Plan his claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Stahl's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 13th day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

―――――――――――――――――――――

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

    I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 13th day of September, 2006 to the following:

Mr. Harold Stahl, #112277
P.O. Box 40412
Grand Junction, CO 81504

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                   /s/ Susan L. Carter

                   Susan L. Carter