IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.
96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-319
Category: II
Claimant:  Vincent A. Espalin, #83740
Address of Claimant:  AVCF, P.O. Fox 1000, Crowley, CO 81034-1000

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER comes before the Special Master on the claim of Claimant
Vincent A. Espalin.  The Special Master has reviewed the claim and all documents filed
by both sides.  This Order shall constitute the final action of the Special Master on this
specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and
various officials of the Colorado Department of Corrections (CDOC).  The case was
brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation
Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying
to reach a settlement of all issues.  The Court was advised that a settlement had been
reached between members of the class and Defendants.  Judge Nottingham set the case
for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was
presented to Judge Nottingham.  After consideration of objections that had been filed by
various individuals, Judge Nottingham determined that the Remedial Plan should be
approved.  That approval established the class and did not provide for an opt-out
provision for class members.  The Remedial Plan also created a mechanism for

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member.   For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Espalin submitted a claim which was assigned claim number 02-319. The claim is premised on an alleged permanent mobility disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Espalin first entered CDOC custody in 1993. During his incarceration, he has been housed at several CDOC facilities. Claimant identifies these institutions and the dates of his confinement in each as follows: Crowley County Correctional Facility (CCCF), 2002 to present; Freemont Correctional Facility (FCF), 1994 to 1996 and Nov. 1999 to 2002; Bent County Correctional Facility (BCCF), 1997 to June 1999; and Sterling Correctional Facility (SCF), June 1999 to Nov. 1999. Claimant also indicates that in July of 1996, he was transferred to a private prison in Texas housing CDOC prisoners.

4.      Claimant has a long history of back and hip problems. He describes his back problems as pain resulting from ruptured disks, a pinched sciatic nerve, and spinal stenosis. Claimant Espalin asserts that from 1994 until the middle of 2000, he was misdiagnosed by CDOC medical providers who told him that his back pain was

muscular.  In 2000, an MRI was performed which showed three ruptured disks, a pinched sciatic nerve and spinal stenosis.  In 2001, Claimant underwent back surgery that was partially successful in alleviating his pain.  Claimant states that he is still experiencing chronic back pain.

5.     Claimant Espalin states that he has not been provided with appropriate medication for his back pain and that he has been refused medical shirts, medical shoes, a medical mattress and a bottom-bunk restriction, although he has requested these accommodations.

6.     Claimant states that his chronic back pain prevents him from sleeping.  He also indicates that he cannot run or jump.  Claimant points out that because he cannot ambulate quickly, he winds up at the end of the line at the dining hall and at the gym.  As a result, he must stand in the chow line for long periods of time and much of the exercise equipment is already being used by the time he arrives at the gym for his recreation time. Additionally, Claimant notes that there are often lines for canteen and medications, requiring him to stand for long periods.

### III.  CONCLUSIONS OF LAW

1.     The  legal  standards  applicable  to  this  claim  are  derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).   "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The  Remedial  Plan  limits  the  class  of  persons  who  might  otherwise  have  a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility,

4

hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Espalin does not suffer from a permanent mobility disability within the meaning of the ADA, the Rehabilitation Act or the Remedial Plan.  It is clear that his back problems do not result in a permanent mobility impairment as defined in the Remedial Plan, since he is not wheelchair bound, he can walk 100 yards and he can negotiate a flight of stairs.  Additionally, while his back pain may significantly impact the major life activity of sleeping, the Special Master finds and concludes that Claimant's back pain does not substantially limit any major life activity associated with mobility.  Although he cannot jump or run, these do not constitute major life activities for purposes of the ADA or Rehabilitation Act.  *See Piascyk v. City of New Haven,* 64 F. Supp.2d 19 (D. Conn. 1999), *affd.,* 216 F.3d 1072 (2d Cir. 2000).  Likewise, the fact that he ambulates slowly does not substantially limit the major life activity of walking.  *Penchinsen v. Stroh Brewery Co.,* 932 F. Supp. 671 (E.D. Pa. 1966), *aff'd.,* 116 F.3d 469 (3d Cir.), *cert. denied,* 522 U.S. 868 (1997).

3.      Furthermore, the gist of Claimant Espalin's claim is that he received negligent medical treatment and that CDOC medical providers refuse to recognize that his medical condition requires medical shoes, a medical mattress, medical shirts, and a bottom-bunk restriction.  To the extent that Claimant Espalin's discrimination claim is premised on the improper medical testing and/or a failure to provide him with proper medical treatment, medications and/or medical devices, such claims are not cognizable under Title II of the ADA or the Rehabilitation Act.  *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Espalin's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 13th day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 13th day of September, 2006 to the following:

Mr. Vincent A. Espalin, #83740
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____

Susan L. Carter