IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-364
Category: II
Claimant: Danny Lee Pinkert, #58493
Address of Claimant: 11219 East Woodrow Road, Slaton, TX 79364

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant Danny Lee Pinkert. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III.  DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant Pinkert submitted a claim which was assigned claim number 02-364. The claim is premised on an alleged hearing impairment

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Rice entered CDOC custody in June of 1988 and was housed in various CDOC facilities from June of 1988 until his discharge from custody in April of 2004.

4. It is undisputed that Claimant suffers from hearing loss. In 1997, a physician at Denver Health examined Claimant and found that Pinkert's hearing loss was mild to severe and recommended that Claimant be provided with hearing aids. In 1998, an audiological evaluation was performed by Denver Health and Hospitals which indicated that Claimant's average hearing loss in his right ear was 38.2 dB and the average hearing loss in his left ear was 43.3 dB. Claimant was not provided with hearing aids because, under CDOC policy, a hearing aid is only supplied to those whose puretone average is greater than 40 in the better ear.

5.      Claimant states that due to his hearing impairment, he cannot hear portions of spoken words and that he needs to be face-to-face with the speaker so that he can read their lips.

6.      While in custody, Claimant participated in many programs offered by the facilities in which he was housed, including Therapeutic Community Programs, an Addiction Recovery Program, a Vocational Education-Computer Info Processing program and a Distorted Thinking Group. He was employed while in custody and received commendations for outstanding performance.

7.      Claimant contends that he was not provided with hearing aids despite his request and the recommendation of the medical provider at Denver Health. He also contends that because he was not provided with hearing aids, he was unable to utilize the telephones at the facilities where he was housed. He states that because the CDOC failed to accommodate his hearing disability, he was prevented from communicating with his mother by telephone.

### III.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has sustained his burden of establishing that he has a permanent hearing disability within the meaning of the ADA and the Remedial Plan. The evidence shows that Claimant has a mild to severe hearing loss. His audiogram indicated that the severity of his hearing loss was very close to the level that would have qualified him for hearing aids under CDOC policy. According to Claimant, he cannot hear well enough to understand what is being said to him and must rely upon lip reading to communicate effectively.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4. The key issue is whether Claimant was discriminated against because of his disability. Claimant contends that he was discriminated against because he was not given hearing aids, even though recommended by a medical provider. However, to the extent that his discrimination claim is premised on the refusal of the CDOC to provide him with medical treatment and/or medical devices such as hearing aids, the claim fails under the ADA and the Rehabilitation Act. Claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

Claimant's contention that he was discriminated against due to his disability because he was unable to utilize effectively the telephone does fall within the ambit of the ADA and the Rehabilitation Act. It is undisputed that the CDOC could have accommodated Claimant's hearing disability by allowing him to utilize telephones with volume amplification devices. Also, CDOC has Telecommunications Devices for the Deaf (TDD) that can be made available to hearing impaired inmates. There is no evidence that Claimant was ever afforded these accommodations. Accordingly, the Special Master finds and concludes that while in CDOC custody, Claimant suffered discrimination because of his hearing disability and that he is entitled to damages.

5. Claimant suffered no physical harm or economic loss as a result of CDOC's failure to accommodate his disability. He was unable to communicate

telephonically with his mother while in custody and this clearly caused Claimant some emotional distress.  However, he was able to communicate with her by letter.  Based on the totality of the circumstances, the Special Master finds and concludes that Claimant is entitled to damages in the amount of $250.00.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant and against Defendants in the amount of $250.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 13th day of September, 2006.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
>
> _____
> Bruce D. Pringle,
> Special Master

**CERTIFICATE OF MAILING**

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 13th day of September, 2006 to the following:

Mr. Danny Lee Pinkert, #58493
11219 East Woodrow Road
Slaton, TX 79364

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                              /s/ Susan L. Carter
                                              _____
                                              Susan L. Carter