IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-412
Category: II
Claimant: Alan Cordell Spreckelmeyer, # 83229
Address of Claimant: 1516 D. East 21st Street, Pueblo, CO. 81001 or
                            1824 Berkley Ave., Pueblo, CO 81004[1]

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Alan Cordell Spreckelmeyer. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

---

[1] In the last correspondence received from Claimant, this address was written. However, since Claimant has not indicated whether or not this is his new mailing address, the Special Master will mail this Final Order to both addresses.

1

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

       C. PERMANENT DISABILITY/IMPAIRMENT
       A condition which is not expected to improve within six
       months.

  On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

      1. Is the claimant a disabled individual who is a member of the class?
      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

  This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

  Being duly advised, the Special Master makes the following Findings of Fact:

  1. Claimant Spreckelmeyer submitted a claim which was assigned claim number 02-412. The claim is premised on an alleged permanent mobility disability, a permanent vision disability and disability due to diabetes.

  2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

  3. Claimant Spreckelmeyer first entered CDOC custody in February of 1998. He was released from CDOC custody in April 2003. Although the record does not reflect all of the facilities in which Claimant was housed, it appears that he was housed for part or all of his CDOC custody at the Sterling Correctional Facility (SCF).

  4. Claimant complains of a host of medical problems. He indicates that he is a diabetic. He asserts that he is vision impaired. He states that has to walk and work with the assistance of knee braces because of injuries to his lower back and knees

sustained in a fall that occurred in February of 2000. Claimant also contends that he suffers from shoulder, wrist and cardiac problems, as well as a hiatal hernia.

      5. With few exceptions discussed in paragraph 6 below, Claimant's contentions all relate to alleged refusals to provide medical treatment, unreasonable delay in providing medical care, improper medical care and treatment and intentional failure to comply with medical orders. For example, Claimant asserts that CDOC waited seven months to treat his shoulder, wrist and back injuries sustained during the fall. He indicates that although he fell in February of 2000, his back was not x-rayed until August of 2000. He asserts that his diabetes has never been controlled; that CDOC medical personnel stopped providing him with medication for his diabetes; and that the diabetic diet that was ordered for him was inappropriate for diabetics. Claimant complains that he was supposed to receive an orthopedic consult for a torn rotator cuff and for his knees but that he was never seen by an orthopedist. He asserts that his cardiac problems are due to stress caused by CDOC's alleged failure to provide proper treatment for his diabetes. Claimant attributes his vision problems to CDOC's alleged failure to manage properly his diabetes and to the fact that he contracted an eye infection that was not properly treated by CDOC medical personnel.

      Claimant also contends that he was refused or denied updated prescription lenses and sun glasses. He states that he was provided with a pair of knee braces that were subsequently stolen. CDOC refused to provide Claimant with new knee braces and, as a result, Claimant was required to purchase a new set of braces himself. Claimant asserts that when he was released from CDOC custody, the knee braces that he purchased were confiscated. Finally, Claimant contends that although medical personnel indicated that he might benefit from wearing tennis shoes instead of boots, CDOC refused to provide tennis shoes free of charge; and Claimant was required to purchase inadequate tennis shoes from the canteen.

      6. Claimant advances three allegations that arguably relate to his ability to access and to utilize the services, programs, benefits and facilities offered by the institution where he was housed. First, he states that he was denied a lower-tier/lower-bunk restriction by CDOC medical personnel. Second, Claimant states that he was denied a "short-pass" to the dining hall by medical personnel. Third, Claimant indicates that he was denied a transfer to a lower security prison because of his medical problems.

      7. Claimant's medical records show that he was diagnosed as having diabetes and was placed on a diabetic diet. The records indicate that the order for a diabetic diet was withdrawn due to Claimant's noncompliance. CDOC medical providers prescribed physical therapy for Claimant's knees but he refused to participate in the physical therapy program. A CDOC physician determined that Claimant was not a candidate for an orthopedic consult until he complied with physical therapy. Claimant was provided with heel inserts and medical recommended that he wear tennis shoes purchased by him from the canteen. The medical records submitted to the Special Master indicate that Claimant received an eye examination in 1999, at which time his uncorrected vision was 20/200 in one eye and 20/30 in the other. He was given a

prescription for corrective lenses at that time that corrected his vision to 20/25 and 20/20. No further history of eye examinations or eye problems is found in the medical records submitted to the Special Master.

8. The records provided to the Special Master indicate that Claimant had a job while in CDOC custody and that he engaged in mild exercise and walking in the yard.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

3. Initially, the Special Master finds and concludes that there is no evidence in the record connecting Claimant Spreckelmeyer's alleged cardiac problems and hiatal hernia to any mobility, vision or hearing disability or to any disability due to diabetes.

Furthermore, the Special Master finds and concludes that Claimant's shoulder and wrist problems do not involve any mobility, vision or hearing disability or any disability due to diabetes. While the Remedial Plan states that it covers persons with "mobility impairments," *Remedial Plan* ¶III(A), it does not generally define the term "mobility impairments." However, the references to "mobility impairment" in the Remedial Plan indicate that the parties intended the term to encompass diseases, injuries and/or conditions involving the lower extremities that impose a substantial limitation on the major life activity of walking. *See, Remedial Plan* ¶V(A)(1)(dealing with presumed need for special housing and defining "permanent mobility impairment as "a permanent lower extremity mobility impairment that substantially limits walking."); *Remedial Plan* ¶XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly suggesting that "mobility impaired" inmates are those with diseases, injuries and/or conditions involving their lower extremities).

In short, there is no indication in the Remedial Plan that its coverage of inmates with "mobility impairments" extends beyond those who are substantially limited in their major life activity of walking because of diseases, injuries and/or conditions involving their lower extremities. There is no evidence that Claimant Spreckelmeyer's shoulder and wrist problems involve his lower extremities or substantially limit his ability to engage in the major life activity of walking.

The Special Master finds and concludes that Claimant Spreckelmeyer has failed to sustain his burden of establishing that his back and knee problems substantially limit his ability to engage in any major life activity. While he did wear knee braces and heel cups while in CDOC custody, there is no showing that he was unable to walk or to work. Indeed, the records submitted to the Special Master lead to a contrary conclusion for they state that Claimant engaged in mild exercise, walked in the yard and had a job.

Likewise, the Special Master finds and concludes that Claimant Spreckelmeyer has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent vision impairment and/or a permanent impairment due to his diabetes that substantially limits his ability to engage in one or more major life activities. The

only objective evidence in the record relating to Claimant's vision is an eye examination that shows he was given a prescription for corrective lenses and that his corrected vision was 20/20 in one eye and 20/25 in the other. While Claimant does suffer from diabetes, there is no evidence in the record that Claimant's diabetes precluded him from engaging in any major life activity identified in 29 C.F.R. § 1630.2(h)(2)(i).

4. Virtually all of Claimant's complaints relate directly or indirectly to either alleged failure to provide timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

5. Because Claimant has failed to demonstrate that he has a permanent mobility impairment, a permanent vision impairment or a permanent impairment due to diabetes that substantially limits his ability to engage in one or more major life activities, the Special Master finds and concludes that his *Montez* claim should be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Spreckelmeyer's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 12, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 12th day of September, 2006.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
>
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 12th day of September, 2006 to the following:

Mr. Alan Cordell Spreckelmeyer, #83229
1824 Berkley Ave.
Pueblo, CO 81004

Mr. Alan Cordell Spreckelmeyer, #83229
1516 D. East 21st Street
Pueblo, CO. 81001

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter