IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-459
Category II
Claimant: Ronald G. Pierce, #53627
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Ronald G. Pierce. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Ronald G. Pierce submitted a claim which was assigned claim number 02-459. The claim is premised on an alleged permanent vision disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant entered CDOC custody in December 9, 1987. The record does not identify each of the institutions in which Claimant has been housed. It appears, however, that during all or part of the time that he has been in CDOC custody, Claimant has been housed at the Arkansas Valley Correctional Facility (AVCF).

4. Claimant asserts that he has a permanent vision disability. His visual acuity appears to be 20/175 in each eye; however, the records provided to the Special Master do not disclose whether this is his uncorrected or corrected visual acuity. Claimant wears bifocal lenses. He states that he is unable to see past a distance of a few feet. He does indicate that he works on a computer. Claimant gets eye twitches and headaches from working on a computer and from being outside in the sun for very long.

3

5. Claimant's sole complaint relates to a CDOC policy adopted in July of 2004. Prior to the adoption of this policy, inmates with prescription glasses could obtain transitional glasses that afforded protection from the sun and UV rays. Even these, contends Claimant, did not afford proper protection. However, in July of 2004, CDOC adopted a policy that prohibited inmates from obtaining transitional glasses, tinted glasses or sunglasses. Claimant notes that non-prescription sunglasses can be purchased at the canteen and inmates who do not wear prescription glasses can obtain protection from the sun and UV rays by purchasing these. After the July 2004 policy change, inmates who wear glasses can purchase clip-on sunglasses from the canteen but Claimant asserts that these do not stay affixed to his glasses and do not afford proper protection. As a result of CDOC's 2004 policy change, Claimant contends that he can no longer participate in outdoor recreation or work on his computer.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while

an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. It is difficult to determine from the evidence presented whether Claimant has a permanent vision impairment which substantially limits one or more major life activities. While the record indicates that his visual acuity is quite poor, there is no way to tell whether the 20/175 visual acuity relates to corrected or to uncorrected vision. The United States Supreme Court has clearly established that corrective measures must be taken into account in determining whether a disability exists. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). Thus, it is only Claimant's corrected visual acuity that is relevant.

Furthermore, the only description provided regarding the effect of Claimant's vision problems on major life activities is his statement that he can only see for a few feet. The record does indicate that Claimant is able to use a computer. Based on the totality of the evidence it is doubtful that Claimant has met his burden of proving by a preponderance of the evidence that he has a permanent vision impairment that substantially limits a major life activity. Nevertheless, for purposes of discussion, the Special Master will assume that Claimant has adequately established that he suffers from a permanent vision disability.

4. Even if Claimant Pierce is deemed to have a permanent vision impairment that substantially limits one or more major life activities, the Special Master finds and concludes that Claimant has failed to establish that he suffered any discrimination which is cognizable under the Remedial Plan due to his alleged disability. By Claimant's own concession, his claim of discrimination relates to the adoption and implementation of a new CDOC policy in 2004. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

5. Because it is doubtful that Claimant has established that he has a permanent vision impairment that substantially limits his ability to engage in one or more major life activities, and because Claimant has failed to establish that he suffered any discrimination because of his alleged disability prior to the adoption of the Remedial Plan, his claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Pierce's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 11, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 11th day of September, 2006.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of September, 2006 to the following:

Mr. Ronald G. Pierce, #53627
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter

7