IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-477
Category:  II
Claimant:  Greggory Wade Oliver, #63284
Address of Claimant:  AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Greggory Wade Oliver.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Greggory Wade Oliver submitted a claim which was assigned claim number 02-477. The claim is premised on an alleged permanent vision disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant entered CDOC custody in October of 1989. The record does not identify each of the institutions in which Claimant has been housed. It appears, however, that during all or part of the time that he has been in CDOC custody, Claimant has been housed at the Arkansas Valley Correctional Facility (AVCF) and Fremont Correctional Facility (FCF).

4. Claimant asserts that he has a permanent vision disability. He states that his visual impairment is due to snow blindness that occurred when he was a youth. This has caused his eyes to be sensitive to light and darkness. In describing the affects of this condition, Claimant states that when outside during the day, he must limit his exposure to sunshine to approximately 1½ to 2 hours at a time. In the evening, his eyesight becomes blurry. When he is in contact with sunlight or bright indoor lighting, Claimant develops headaches, nausea and disorientation. He states that, without transitional lenses, he

cannot read for extended periods of time particularly the small print of law books and magazines. Claimant further indicates that without transitional lenses, he cannot participate in outdoor activities such as softball, volleyball, basketball or running.

      5.      Claimant asserts that for six years prior to July of 2004, he made numerous requests over a period of years to see an eye specialist to have the prescription for his corrective transitional lenses updated. He contends that despite his requests, CDOC never provided him with new prescription transitional lens glasses. In July of 2004, CDOC adopted a policy that prohibited inmates from obtaining transitional glasses, prescription tinted glasses or prescription sunglasses. Claimant notes that non-prescription sunglasses can be purchased at the canteen and inmates who do not wear prescription glasses can obtain protection from the sun and UV rays by purchasing these. After the July 2004 policy change, inmates who wear glasses can purchase clip-on sunglasses from the canteen, but Claimant asserts that these do not address his medical needs. He complains that as a result of CDOC's failure to provide him with transitional prescription lenses his eyesight is deteriorating.

      6.      Claimant's records confirm that for many years prior to July of 2004, he requested new prescription transitional lenses. His records also show that with corrective lenses, Claimant's visional acuity is 20/20.

### III. CONCLUSIONS OF LAW

      1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

      2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

      The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical

4

disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities, thus rendering the impairment a "disability," under the ADA and/or Rehabilitation Act.

The threshold question presented by Mr. Oliver's Claim is whether his sensitivity to bright light and darkness constitutes a permanent vision impairment that substantially limits his ability to engage in one or more major life activities. On the one hand, if the answer to this question is in the negative, his claim must fail. On the other hand, if the answer to the query is in the affirmative, then further analysis is required to determine whether he is "qualified," and whether he has been discriminated against by CDOC because of his disability.

Claimant does not contend that he is blind or that his visual acuity prevents him from seeing. Indeed, such a contention, if made, would have been directly contrary to the medical records provided by the Claimant, since those records show that his corrected visual acuity is 20/20. The United States Supreme Court has clearly established that corrective measures must be taken into account in determining whether a disability exists. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999). Thus, it is only Claimant's corrected visual acuity that is relevant. Furthermore, no contention is made that CDOC refused to provide Claimant with corrective lenses. His claim relates solely to the refusal of CDOC to provide him with new transitional prescription lenses and to the 2004 policy prohibiting inmates from possessing transitional prescription lenses or prescription sunglasses.

Of course, the fact that Claimant has some impairment relating to his vision is insufficient to establish that he is disabled. It is the impact of the impairment on Claimant's ability to perform major life activities that is determinative of this issue. The impact must consist of a substantial limitation on the ability to engage in a major life activity in order to rise to the level of a disability under the ADA or the Rehabilitation Act. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

The overwhelming majority of reported decisions under the ADA and/or the Rehabilitation Act that deal with claims of disability based on vision impairment have looked to the plaintiff's visual acuity. These cases provide no assistance to Claimant Oliver because his visual acuity, with corrective lenses, is as good or better than the average person. For the most part, the few cases that deal with vision problems which do not significantly impact visual acuity have concluded that such problems generally do not substantially limit the plaintiff's ability to engage in major life activities. *E.g., Weigert v. Georgetown Univ.,* 120 F. Supp. 2d 1 (D.D.C. 2000)(plaintiff with neurological disorder that made her highly sensitive to fluorescent lighting or glare not disabled); *Hoppes v. Commonwealth Fish and Boat Comm.,* 32 F. Supp.2d 779 (M.D. Pa. 1998)(color blindness not a disability); *Cline v. Fort Howard Corp.,* 963 F. Supp. 1075 (E.D. Okla. 1997)(difficulties with peripheral vision did not constituted disability); *Overturf v. Penn Ventilator, Co., Inc.,* 929 F. Supp. 896 (E.D. Pa. 1996)(tumor behind one eye which caused double or triple vision not a disability).

Here, Claimant indicates that his sensitivity to light and darkness renders him unable to play softball, volleyball, basketball or to run. None of these, however, are major life activities. The closest he comes to showing an impact on a major life activity is his statement that he cannot read for extended periods of time, particularly if the print is small. The Special Master finds that while this evidence show some limitation on the major life activity of reading, the evidence fails to demonstrate that the limitation is substantial enough to be deemed a "disability," within the meaning of the ADA and/or the Rehabilitation Act.

3. Because Claimant Oliver has failed to prove by a preponderance of the evidence that his vision impairment rises to the level of a disability for purposes of the ADA and/or Rehabilitation Act, his Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Oliver's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 11, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 11th day of September, 2006

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of September, 2006 to the following:

Mr. Greggory Wade Oliver, #63284
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                                /s/ Susan L. Carter
                                                _____
                                                Susan L. Carter