IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-257
Category II
Claimant: James R. Sinclair, #106008
Address of Claimant: Phoenix Center, 8031 Highway I-76, Henderson, CO 80640

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

2

>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master has re-examined the claim form and has determined that placement of this claim into Category II is appropriate.

The Special Master has reviewed the claim submitted by Claimant. Though he was provided a supplemental form, Claimant did not file such a form or any medical records in support of his claim. The Special Master has reviewed the response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants. Claimant did not do so.

Claimant came into DOC custody in July, 2000. At the time he filed his claim in April, 2004, Claimant was at the Delta Correctional Center (DCC) in Delta, Colorado. Claimant is presently living in a community corrections program.

In his claim form, Claimant stated, in part, as follows:

> I have a gun shot wound to my left foot, which is constantly in pain. I cannot walk or stand for any time without pain. It affects major life quality of exercise. My hearing is very poor also. DOC has refused any treatment.

In response to the question on the claim form concerning discrimination by DOC and its staff, Claimant stated as follows:

> DOC has refused to allow me to purchase footwear that will help ease the pain my gunshot wound causes. They have stonewalled my every request for them to provide me with approved footwear to ease my pain therefore causing my life to become a torment with every step.

Defendants' answer disputes the allegations of Claimant. Attached to the answer are several documents which reflect that Claimant received medical attention during the time that he was in

3

DOC custody. A response to a grievance of Claimant in January, 2003 reflected that Claimant had been seen seven times for his foot problems. In addition, he had received an orthopedic consultation. The records reflect further that Claimant was fitted with extra wide state boots.

Claimant was given the opportunity to file a reply in rebuttal to the response of Defendants. He has filed no further documents.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has indicated on his claim form that he is mobility impaired and hearing impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not proven or alleged that he was in a wheelchair at any time while in DOC custody.

For purposes of this order, the Special Master will find that Claimant is part of the class as being mobility impaired. The gunshot wound does affect his mobility.

Claimant has failed to establish that he has a hearing impairment. Certainly, Claimant has failed to establish that such impairment has affected a major life activity.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was not eligible to participate in programs and receive services. As an example, nothing has been presented to indicate that he had a disciplinary record that precluded programs and services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant was shot in the foot. He has continued to have medical problems with his foot since coming into DOC custody. Claimant's concern was with the boots that he was provided by DOC. There is no evidence that Claimant was denied services or programs as the result of the wound to his foot. There was and is a difference of opinion among medical personnel and Claimant concerning the footwear that he was to receive..

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by

4

Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning quality of the medical care provided to him, that is beyond the jurisdiction of the Special Masters. Claimant has the right to pursue a separate action for medical negligence or malpractice.

The Special Master has reviewed everything filed by Claimant. Nothing has been presented that would reflect Claimant was subjected to discrimination that was prohibited by the ADA and Rehabilitation Act. Claimant has received medical care at all times while in DOC custody. Claimant disagrees with the medical care that has been provided. Under *Fitzgerald*, the Special Masters have no jurisdiction to examine the quality of the medical care provided. Claimant may pursue a separate action if be believes that the medical care provided violated the basic requirements of the Eighth Amendment.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #3 has been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of James R. Sinclair is denied, as he has failed to answer affirmatively each of the four questions in the order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 18, 2006.**

SIGNED this 18th day of September, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master