IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

───────────────────────────────

Claim Number 02-344
Category II
Claimant: David Rodriguez, #60324
Address of Claimant: c/o Andrew Schwab, 4335 West Florida Avenue, Denver, CO 80219

───────────────────────────────

## FINAL ORDER OF SPECIAL MASTER
───────────────────────────────

THIS MATTER comes before the Special Master on the claim of Claimant. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

    1. Is the claimant a disabled individual who is a member of the class?
    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master has re-examined the claim and all supporting documents and has determined that placement of this claim into Category II is appropriate.

The Special Master has reviewed the claim and supplemental form submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants. Claimant did not do so.

Claimant came into DOC custody on February 4, 2003. When the claim was filed, Claimant was at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant has been released on parole and is no longer incarcerated in a DOC facility.

In his claim form, Claimant stated, in part, as follows:

> As I reported the first time that I am considered 40% disabled mobility and is documented. My attorney, Mr. Simons, sent copies of my injuries and my disability; and I am shown to only have bottom bedding.

As to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> If I enforce my medical disability, I would be considered a M-4 which in turn cannot land a job with full pay as other inmates, plus can be forced to live in rural areas such as Fort Lyons in the So. Eastern corner hundreds of miles form my family - wife - children - grandchildren which would create an even more stress. Mentally a no win/lose situation.

In the supplemental form for mobility, Claimant stated, in part, as follows:

> I have been given 40% disability for my broken back which occurred in 1998. Should not pick up or bend to and fro; 20 lbs. no more 10 lbs. above my head. All

      paper work was submitted to medical services DRDC, Denver Facility from attorney Mark Simons.

Claimant submitted no medical records with his claim or supplemental form. Claimant did not file a reply to the response of Defendants.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has indicated on his claim form that he is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not proven or alleged that he was in a wheelchair at any time while in DOC custody.

Claimant has described in very general terms problems related to his back. He had an injury to his back that pre-dated his incarceration in DOC. His complaints relate to his back, not a lower extremity impairment. There are no allegations that his walking is substantially impaired.

Defendants have submitted a medical record entry from January 1, 2004. Claimant advised medical personnel that he had knee pain from playing basketball the day before. This medical report has not been disputed by Claimant. It is difficult to reconcile a claim of mobility impairment on or before August 27, 2003 when a claimant is playing basketball after that date.

There is also no evidence that a major life activity of Claimant was affected by his bad back or alleged mobility issues. Claimant was able to carry on his daily life despite his back problems.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has provided no evidence that he was subjected to discrimination because of his claimed disability. There is absolutely no evidence that Claimant was prohibited from participating in any program or receiving any service as the result of discrimination.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered, as the answers to Question #1 and #3 were in the negative.

IT IS HEREBY ORDERED that the claim of David Rodriguez is denied; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 18, 2006.**

SIGNED this 18th day of September, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master