IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-295
Category: II
Claimant: Jayson A. Preble, #95175
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant Jayson A. Preble. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Preble submitted a claim which was assigned claim number 02-295. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Preble entered CDOC custody in 1997. Although the record does not reflect all of the institutions in which Claimant has been housed while in CDOC custody, it appears that he has been housed all or part of the time at the Limon Correctional Facility (LCF), the Arkansas Valley Correctional Facility (AVCF) and the Sterling Correctional Facility (SCF).

4. Claimant suffers from a limb length discrepancy with an accompanied foot deformity. Specifically, his left leg is shorter than his right leg due to an injury sustained in a motor vehicle accident. He states that complications have arisen as a result of his limb length discrepancy including: pain along the hamstring muscle and tendons of his left leg, pain in his knees and joint and muscle pain in his back when he stands or walks.

5. Claimant asserts that CDOC has failed and refused to provide him with proper medical care for his limb length discrepancy, which has resulted in increasing debilitation. Claimant notes that CDOC personnel indicated that he was qualified for a corrective shoe and/or orthotic device but that these were not provided. Additionally, Claimant states that although they were strongly recommended by a podiatrist, Claimant cannot obtain a pair of sneakers because he is unable to afford them and CDOC will not supply them. He also complains that CDOC has refused to give him a continuing medical restriction requiring that he be assigned to a lower bunk. Claimant further contends that he is required to work or to maintain placement in a program in order to receive earned time credit and pay even though his physical impairment restricts his ability to work.

6. Claimant's records confirm his limb length discrepancy. While in CDOC custody, Claimant has been seen by podiatrists who have attempted to alleviate the symptoms of his limb length discrepancy by recommending that he receive sneakers and by recommending that he be provided with insoles. He was also supposed to receive larger state issued boots to accommodate his insoles. Claimant asserts that he has never been provided with any of larger boots, insoles or any orthopedic inserts to alleviate his condition.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is

4

a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Preble has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent mobility disability that substantially limits his ability to walk or to engage in other major life activities. There is no doubt that Mr. Preble suffers from an impairment of his lower extremities due to his leg length discrepancy and that this condition is accompanied by pain and some restriction of motion. However, there is nothing in either Mr. Preble's written Claim forms or in his medical records that indicate that he cannot walk or work or that he is otherwise substantially limited in his ability to engage in any major life activity. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999). The fact that Claimant cannot walk or stand for long periods of time without pain is simply insufficient to demonstrate a substantial limitation on the major life activity of walking. *See, e.g., Penny v. United Parcel Serv.,* 128 F.2d 408 (6th Cir. 1997); *Rosa v. Brink's, Inc.,* 103 F. Supp. 2d 287 (S.D.N.Y. 2000); *Piascyk v. New Haven,* 64 F. Supp. 2d 19 (D. Conn. 1999); *Puoci v. City of Chicago,* 81 F. Supp. 2d 893 (N.D. Ill. 2000); *Williamson v. Hartmann Luggage Co.,* 34 F. Supp. 2d 1056 (M.D. Tenn. 1998); *Banks v. Hit or Miss, Inc.,* 996 F. Supp. 802 (N.D. Ill. 1998).

3. There may well be justification for Claimant's assertions that CDOC has failed and refused to provide wider boots and inserts recommended by his medical providers. There may also be justification for Claimant's contention that CDOC has been deliberately indifferent to his medical need for orthopedic devices to correct his leg length discrepancy. However, to the extent that Claimant Preble's complaints of CDOC discrimination are based upon an alleged lack of proper medical diagnosis or treatment or an alleged failure to provide proper medications or medical equipment, they are not cognizable under Title II of the ADA or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). They must be pursued in a separate legal action under 42 U.S.C. § 1983.

      4. Because Claimant Preble has failed to establish by a preponderance of the evidence that he suffers from a permanent mobility disability that substantially limits his ability to engage in one or major life activities, his *Montez* claim cannot be sustained.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Preble's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 22, 2006** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

SIGNED this 22nd day of September, 2006.

        BY THE COURT:

        /s/ Bruce D. Pringle

        _____
        Bruce D. Pringle,
        Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 22nd day of September, 2006 to the following:

Mr. Jayson A. Preble, #95195
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                            /s/ Susan L. Carter
                                            _____
                                            Susan L. Carter