IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-296
Category:  II
Claimant:  Daniel N. Robles, #47882
Address of Claimant:  FMCC, P.O. Box 200, Canon City, CO 81215-0200

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Daniel N. Robles. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Robles submitted a claim which was assigned claim number 02-296. The claim is premised on an alleged permanent mobility disability and a permanent vision impairment.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Robles first entered CDOC custody in 1981. He was released on parole in 1983, and returned to CDOC custody in April of 1997 and remained in custody until October of 1997, when he was again paroled. Claimant was again placed in CDOC custody from December of 1997 until July of 1998. In January of 2004, he yet again entered CDOC custody and remained in CDOC custody until October of 2004, when he was paroled. He entered CDOC custody again in December of 2005. He has been housed at various facilities while in CDOC custody including Buena Vista Correctional Facility (BVCF), Four Mile Correctional Center (FMCC) and Sterling Correctional Facility (SCF).

4. Claimant contracted polio as a child. Prior to entering CDOC custody, he continuously wore a knee brace on his right knee. Because of his knee problems, Claimant indicates that he cannot climb, run or stand for any length of time; that he can't

walk for long distances; and that he can't sit for periods of time. He states that he is in extreme pain while walking to and from the chow hall. Claimant also indicates that he has had a bullet in his left arm for 17 years. Claimant explains that while the vision in his right eye is 20/20, he has virtually no vision in his left eye. Finally, Claimant states that he is illiterate and cannot read or write.

5. Claimant Robles asserts that when he first entered CDOC custody in 1979, he was required to send his knee brace home because it had metal in it. The knee brace was never replaced. When he returned to CDOC custody in 1997, his knee brace was sent home again and he was given a cane. In 2004, while Claimant was at SCF, he saw Dr. Frantz regarding his mobility problems and requested an orthopedic consult to be fitted with a knee brace. Dr. Frantz refused to schedule an orthopedic consult and told him to purchase a knee brace from the canteen. Claimant Robles contends that CDOC's refusal to recognize his need for a knee brace and to supply him with a knee brace constitutes deliberate indifference to his medical needs. Mr. Robles also states that CDOC medical personnel refused to grant his request for a short pass to the chow line.

Claimant also complains that although he has requested laser eye surgery or glasses, CDOC has refused to provide either. He states that when he tries to read or write, he gets headaches because he cannot focus.

Claimant further asserts that has been denied proper medical treatment and medications for the bullet in his left arm. Claimant is under a 45 lb. lifting restriction. He has asked to see a neurologist for numbness and tingling in his fingers and toes but a neurological consult has not been scheduled.

Finally, Claimant complains that despite CDOC's promise to do so, he has not been provided with classes or other means to learn to read and write. He states that CDOC did provide cassette tapes to help him read but did not provide books on tape.

6. The single medical record submitted by Defendants indicates that in 2004, Claimant was provided with lower bunk and no work camp restrictions. The record notes that Claimant was afflicted with polio as a child and has some limitations with his left leg. It also notes Claimant's statement that he is blind in his left eye and Claimant's reported need for a leg brace.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment;

or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Robles has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent mobility disability that substantially limits the major life activity of walking. The fact that Claimant cannot climb, run or stand for long periods of time and cannot walk far distances without pain is insufficient to establish that his ability to perform a major life activity has been substantially limited. *See, e.g., Penny v. United Parcel Serv.,* 128 F.2d 408 (6th Cir. 1997); *Rosa v. Brink's, Inc.,* 103 F. Supp. 2d 287 (S.D.N.Y. 2000); *Puoci v. City of Chicago,* 81 F. Supp. 2d 893 (N.D. Ill. 2000); *Williamson v. Hartmann Luggage Co.,* 34 F. Supp. 2d 1056 (M.D. Tenn. 1998); *Banks v. Hit or Miss, Inc.,* 996 F. Supp. 802 (N.D. Ill. 1998).

Accepting Claimant's statement that he cannot see out of his left eye as true, his 20/20 uncorrected visual acuity in his right eye demonstrates that he is not substantially limited in the major life activity of seeing. Monocular vision is not *per se* a substantial limitation on seeing. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999). Rather, in order to invoke the protections of the ADA and/or the Rehabilitation Act, the Claimant must present specific facts demonstrating that the effect of his monocular vision on his

5

ability to see is substantial. The Special Master finds and concludes that Claimant has failed to make such a showing.

Finally, neither Claimant's shoulder injury nor his illiteracy fall with the scope of the Remedial Plan, which is limited to mobility, vision and hearing impairments and impairments due to diabetes.

3.   The Special Master notes that most of Claimant's complains relate directly or indirectly either to alleged failure to provide timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

4.   Because Claimant Robles has failed to prove by a preponderance of the evidence that he has a permanent mobility disability or a permanent vision impairment that substantially limits one or more major life activities, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant Robles dismissing his Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 22, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 22nd day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

       I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 22nd day of September, 2006 to the following:

Mr. Daniel N. Robles, #47882
FMCC
P.O. Box 200
Canon City, CO 81215-0200

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                            /s/ Susan L. Carter
                                            _____
                                            Susan L. Carter