IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-301
Category: II
Claimant: Terrence Allen Blount, #93574
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089-8535

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Terrence Allen Blount. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Blount submitted a claim which was assigned claim number 02-302. The claim is premised on an alleged permanent mobility disability.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  Claimant Blount first entered CDOC custody in April of 1996. He was released from CDOC custody in January of 2000 and reentered CDOC custody in February of 2000. Although the record does not specify each of the facilities in which he was housed while in CDOC custody, it appears that he was housed at Arkansas Valley Correctional Facility (AVCF), Sterling Correctional Facility (SCF) and Huerfano County Correctional Center (HCCC).

4.  Claimant has a long history of knee problems. He has had surgeries on both knees, including a surgery on his right knee to remove the meniscus and surgery on his left knee to repair the patella tendon. Apparently, a wire that was inserted in his knee during one of these surgeries broke and was finally surgically removed in 2006. Claimant Blount indicates that as a result of his knee problems, he is in constant pain. He states that he cannot run, climb, bend or walk for any length of time without pain and has

trouble sleeping.  Claimant states that he utilizes a cane to assist him in walking.  He also states that he can no longer work as a result of the pain in his knees.

5. Claimant Blount asserts that he has consistently been denied proper medical care and that the medical care that has been provided to him for his knees has been negligent.  For example, he contends that after the surgery on his patella in January of 2001, he suffered an infection because the dressings were not changed on a regular basis.  He also claims that after his knee surgery, he was supposed to receive physical therapy and do exercises but physical therapy was never provided and he was denied the ability to exercise.  He further contends that "donkey braces" were prescribed by his medical providers but were never supplied to him by CDOC.  He states that after the wire that had been placed in his knee broke in 2004, CDOC would not remove it.  He complains that CDOC refused to authorize appropriate restrictions for his medical condition, including lower-bunk/lower-tier and no climbing.

6. Claimant's medical records indicate that for a period after his surgeries, he did have a lower bunk restriction.  Apparently, the restriction was removed at some point in time, but the record does not reflect the precise date.  The records show that Claimant did have several restrictions in place, including no prolonged standing, no bending, no weight bearing and no squatting.  Finally, the medical records reflect that the broken wire in Claimant's knee was removed in 2006.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).

4

Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

Initially, the Special Master notes that Defendants have provided no documents or other evidence in opposition to Mr. Blount's claim. Additionally, Defendants Response to the Claim is generic in nature and contains no specific references to any of Claimant's allegations or contentions. Consequently, the Special Master finds and concludes that to the extent that the information in Claimant Blount's claim is not inconsistent with the medical records that he has provided to the Special Master, said information will be deemed true.

The Special Master finds and concludes that Claimant Blount has sustained his burden of establishing by a preponderance of the evidence that he has a permanent mobility disability that substantially limits the major life activity of walking. The medical records confirm that Claimant has a long history of severe knee problems that have continued despite repeated surgeries. The record further reflects that Claimant can only walk with difficulty and with great pain, even when assisted by a cane.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). There is no evidence in the record indicating that Claimant was unqualified to participate in the programs, benefits and services offered by the CDOC.

4. Of course, the key issue under the ADA, Rehabilitation Act and the Remedial Plan is whether Claimant was discriminated against because of his disability. Almost all of Claimant's complaints of discrimination and failure to accommodate relate to alleged lack of proper medical treatment and deliberate indifference to his medical needs. While these allegations raise serious questions under the Eighth and Fourteenth Amendments to the United States Constitution, they do not provide a basis for a claim under either the ADA or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882

5

(8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

There are two matters that, although indirectly related to medical care, do implicate Claimant's ability to utilize without pain the facilities provided by CDOC. The first of these is his contention that his lower-bunk restriction was removed and, as a result, he was required to climb up to his upper bunk. Thus, absent some evidence that such a medical restriction was unnecessary, the lack of a lower-bunk restriction for one who has severe knee problems and cannot climb constitutes a failure to accommodate the particular mobility disability here in question. Second, Claimant states that he was never provided with the "donkey braces" that were prescribed for him by his medical providers. There is no evidence presented by Defendants contradicting this contention. The "donkey braces" are directly related to the ability of Claimant to engage in the major life activity of walking. Absent some reasonable explanation why Claimant was not provided with these items which would have assisted him in walking with less pain, the Special Master finds and concludes that this conduct on the part of Defendants constitutes a failure to accommodate Claimant's mobility disability.

5.   Claimant has not provided any evidence establishing economic loss as a result of the failures to accommodate described in paragraph 4 above. Further, there is no objective medical evidence before the Special Master identifying the medical effect of the failures to accommodate on Claimant's already existing knee problems. Based on the entire record, the Special Master finds and concludes that the sum of $500.00 is fair and reasonable compensation for Defendants' failures to accommodate Claimant's mobility disability. As discussed more fully above, any damages sustained by Claimant due to Defendant's alleged deliberate indifference to his medical needs and/or alleged negligent medical treatment must be addressed in a separate legal action.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant and against Defendants in the amount of $500.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 22, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 22nd day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 22nd day of September, 2006 to the following:

Mr. Terrence Allen Blount, #93574
HCCC
304 Ray Sandoval Street
Walsenburg, CO 81089-8535

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter

8