IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-382
Category:  II
Claimant:  Encarnacion T. Rivera, #111364
Address of Claimant:  SCF, P.O. Box 6000, Sterling, CO 80751-6000

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER comes before the Special Master on the claim of Claimant Encarnacion T. Rivera.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member.   For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

> 2.   The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1.   Is the claimant a disabled individual who is a member of the class?
>> 2.   Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3.   Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4.   Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Rivera submitted a claim which was assigned claim number 02-382.  The claim is premised on an alleged permanent mobility disability and an alleged permanent vision disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant entered CDOC custody in February of 2003.  He has been housed at the Sterling Correctional Facility (SCF).

4.      Claimant Rivera has poor circulation in both legs and has been diagnosed with edema. He states that he also has varicose veins in both legs.  He indicates that he cannot participate in exercises and cannot walk or stand on his feet for long periods of time.  Claimant also has blurred vision in his right eye due to a cataract.  Finally, Claimant has many missing teeth and has difficulty eating.

5.      Claimant contends that CDOC has not properly treated his edema and has given him medications that have resulted in additional health problems.  He asserts that CDOC has refused to provide him with eyeglasses and has failed to authorize surgery to remove the cataract in his right eye.  He states that he had to drop out of GED class

because of his vision impairment. Claimant asserts that CDOC has refused to provide him with dentures and, as a result, it is very difficult for him to eat.

6.     Claimant's medical records show that he has received continual medical care and treatment for his edema. Several different medications have been prescribed for him and he has been provided with medical stockings. He has also been given medical restrictions including lower bunk/lower tier, no stairs and authorization to wear tennis shoes. The medical records also indicate that Claimant was scheduled for consults with an ophthalmologist in May of 2003 and January of 2004 but did not go to his appointments because there was a $3.00 charge for the examination. He was seen by an ophthalmologist in April of 2004 who determined that eyeglasses would not correct Claimant's blurred vision in his right eye. The ophthalmologist indicated that cataract removal surgery would be considered. Cataract removal was denied by Colorado Access in September of 2004.

7.     The records provided to the Special Master show that Claimant has been employed in grounds maintenance and also in food service. The records are unclear as to why Claimant dropped out of GED classes. There is some indication that he wanted to stop attending GED classes so that he could work in grounds maintenance.

### III.  CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is

a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has sustained his burden of establishing by a preponderance of the evidence that he has a permanent mobility impairment that substantially limits his ability to engage in one or more major life activities. The evidence fails to establish that Claimant is substantially limited in the major life activity of walking. However, Claimant's medical records show that he cannot climb stairs and he has been given a medical restriction of no stairs. While the case law is in conflict as to whether an inability to climb stairs is a substantial limitation of a major life activity, for purposes of these Findings, Conclusions and Order, the Special Master will assume that climbing stairs is a major life activity.

The Special Master finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that his blurred vision in his right eye constitutes a substantial limitation on the major life activity of seeing or reading. Claimant's medical records demonstrate that he has adequate vision in his left eye to compensate for any vision problems in his right eye.

Finally, the Special Master finds and concludes that while Claimant's dental problems may give rise to a claim under the ADA and/or the Rehabilitation Act, they are outside the scope of the Remedial Plan which is limited to mobility, vision and hearing impairments and impairments due to diabetes.

3.     The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). There is no evidence in the record indicating that Claimant was unqualified to participate in the programs, benefits and services offered by the CDOC.

4.     Of course, the key issue under the ADA, Rehabilitation Act and the Remedial Plan is whether Claimant was discriminated against because of his disability. Many of Claimant's complaints of discrimination and failure to accommodate relate to alleged lack of proper medical treatment and deliberate indifference to his medical needs. While these allegations may raise questions under the Eighth and Fourteenth

Amendments to the United States Constitution, they do not provide a basis for a claim under either the ADA or the Rehabilitation Act.  *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005).  *See also United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

The Special Master finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that Defendants did not reasonably accommodate his mobility disability.   The uncontroverted evidence establishes that Claimant has received continuing medical treatment and medications for his edema and leg pain; and that he has been provided with medical restrictions to assist him in utilizing the facilities, programs and services of the institutions in which he has been housed.  Likewise, the Special Master finds and concludes that even if Claimant had a permanent vision impairment that substantially limits his ability to engage in major life activities -- at least up until August 27, 2003 -- CDOC provided reasonable accommodations for his vision problem.  The record reflects that an ophthalmologist consult and examination was arranged for Claimant in May of 2003 but he failed to attend.  Although he asserts that he was discriminated against because he would have had to pay $3.00 for the consult and examination, there is no evidence in the record indicating that this $3.00 charge was only imposed on prisoners with permanent disabilities.  To the contrary, it appears that the charge was generally imposed on all inmates.

The Remedial Plan was signed on August 27, 2003.  Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen.  The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003.  While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

Because Claimant Rivera has failed to sustain his burden of establishing that he is vision impaired and has failed to establish that he was discriminated against because of his mobility disability, his claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Rivera's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before November 22, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 22nd day of September, 2006.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 22nd day of September, 2006 to the following:

Mr. Encarnacion T. Rivera, #111364
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter