IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-399
Category:  II
Claimant:  Albert B. Hill, #110516
Address of Claimant:  BCCF, 11560 County Rd. FF-75, Las Animas, CO 81504

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Albert Hill.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.       General inconvenience or nominal damages;
II.      Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.     Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.      Damages due to severe physical injuries; and
V.       Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.     DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

> 2.   The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1.   Is the claimant a disabled individual who is a member of the class?
>> 2.   Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3.   Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4.   Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Hill submitted a claim which was assigned claim number 02-399.  The claim is premised on an alleged permanent mobility disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Hill entered CDOC custody in September of 2001.  Although the records provided to the Special Master do not identify with specificity the various facilities where Claimant was housed, it appears that he has been housed for all or a substantial portion of his CDOC custody at the Colorado Territorial Correctional Facility (CTCF) and the Bent County Correctional Facility (BCCF).

4.      Claimant suffers from arthritis and advanced degenerative changes in his right hip and mild degenerative disc disease in his lumbar spine.  He states that he has difficulty walking, sitting, sleeping, standing, dressing, undressing and exercising.  He describes his pain as moderate to severe while engaging in any of these activities.

5.      Claimant Hill asserts that he has been denied proper medical treatment and medications for his hip and lumbar spine.  Specifically, he contends that he should be

a candidate for hip replacement surgery, arthroscopic surgery or arthroplasty. He takes issue with what he says is a CDOC policy that an inmate must be at least 55-years-old to receive a hip replacement. Mr. Hill also contends that CDOC is attempting to treat his back and hip problems with inappropriate medications. Although Claimant tried taking glucosamine for a few months, he complains that inmates are required to pay for this product. He indicates that the glucosamine did little to alleviate the pain from his hip.

6.      Claimant also contends that CDOC failed to accommodate his request for an egg shell mattress to assist him in sleeping and has failed to provide him with a chair having a back rest. Additionally, he states that the table provided in the dayroom has seats with no backs and are positioned low to the ground which further aggravate his hip.

### III. CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent

physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has sustained his burden of establishing that he has a permanent mobility disability. He has stated that the severe degenerative changes in his right hip make it difficult for him to engage in a variety of activities, including walking, sleeping, sitting, standing, dressing, undressing and exercising. The evidence demonstrates that his hip condition substantially limits his ability to engage in one or more major life activities.

3.      The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4.      The key issue is whether Claimant was discriminated against because of his disability. Claimant contends that he was discriminated against because CDOC has refused to perform hip replacement surgery, arthroscopic surgery or an arthroplasty to correct his right hip; and that CDOC has refused to provide him with proper medications. However, to the extent that his discrimination claim is premised on the refusal of the CDOC to provide him with medical treatment and/or appropriate medications, the claim fails under the ADA and the Rehabilitation Act. Claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

5.      Claimant also contends that CDOC failed to provide him with a medically appropriate mattress. This claim of indifference to his medical needs also fails under the *Fitzgerald* rationale*, supra.*

6.      What remains is Claimant's contention that he was not provided with appropriate chairs to accommodate his back problem. He indicates that the failure to provide this accommodation impaired his ability to utilize the dayroom. Defendants present no evidence in contravention of these contentions. The Special Master finds and concludes that Defendants' failure to accommodate in this regard entitles Claimant to relief.

7.      No evidence has been presented regarding the appropriate amount of damages sustained by Claimant. No economic loss has been demonstrated and no objective evidence of any resulting physical injury has been shown. The Special Master finds and concludes that the sum of $100.00 is fair and reasonable compensation to

Claimant for Defendants' failure to provide appropriate chairs to accommodate his disability.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant and against Defendants in the amount of $100.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 22, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 22nd day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 22nd day of September, 2006 to the following:

Mr. Albert B. Hill, #110516
BCCF
11560 County Road FF75
Las Animas, CO 81504

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter