IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-434
Category II
Claimant: Timothy W. Dudley, #97181
Address of Claimant: 7195 E. Whisper Ranch Road, Prescott, AZ 86314

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Timothy W. Dudley (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time that he filed his claim. He was at the Sterling Correctional Facility (SCF) in Sterling, Colorado at that time. He has since been released from DOC custody and has relocated to Arizona.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion to dismiss of Defendants. He has not done so. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in September, 1999. He was placed initially at the Denver Reception and Diagnostic Center (DRDC) in Denver, Colorado. At some point, he was transferred to SCF.

On his initial claim form, Claimant checked the boxes for mobility impaired and vision impaired. He stated, in part, as follows:

>Mobility I have received 2 back surgeries. It wasn't till recently here at SCF that they granted me bottom bunk restricted. TC program forced me to go up and down the stairs on Unit 25 when I had a no stairs restriction due to my severe asthma as well. Left eye blind. Unable to get an optometrist appointment for corrective lens. They refuse.

3

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> They continue to refuse medical treatment, dental, optometrist, and refuse kites as to a follow up on injury to left knee. 3 kites submitted they return it saying you have already submitted one in April. This is now June 1st.

Claimant was sent supplemental forms to complete and return. Claimant did submit supplemental forms for both vision impairment and mobility impairment. As to his vision, Claimant stated, in part, as follows:

> 20/600 vision in left eye. Need glasses for reading.
> Unable to read in excess due to strain on right eye and blindness in left eye.

Claimant stated further that he requested glasses but had not received a pair. Claimant indicated that he was advised that he would not receive glasses because there was too little time left on his sentence.

Claimant stated as to his mobility impairment as follows:

> I have severe asthma and 2 lower back surgeries to date. I was currently in the TC Program at SCF where I was forced to walk up and down the stairs on a regular basis when I had stairs restriction due to my asthma. And have been on top bunk when I was bottom bunk restricted.

Claimant also set forth problems that he experienced as a result of the lack of restrictions due to his asthma and mobility problems.

Defendants have filed a motion to dismiss. Defendants argue that Claimant's allegations in his documents do not rise to the level required by the Settlement Agreement. Defendants argue further that, as a matter of law, he is not part of the class as a mobility or vision impaired individual.

The Special Master issued an order granting Claimant an opportunity to respond to the motion to dismiss. That order was sent to an Arizona correctional facility. The order was returned. It was reissued and sent to an address in Prescott, Arizona. That order has not been returned in the mail. Claimant was granted up to and including September 25, 2006 in which to respond to the motion to dismiss. Claimant has filed nothing further.

### III.

The motion of Defendants requires that all reasonable allegations set forth by Claimant be accepted as true. This is the same standard that would be applied under *F.R.Civ.P. 12(b)*.

**Vision Impairment**: In order to prevail on a vision impairment claim, a claimant must allege

and ultimately prove that a condition exists that affects a major life activity. A physical impairment is not sufficient to meet the standard of the Settlement Agreement or ADA.

Claimant has alleged that he is nearly blind in his left eye. He also alleges that he can see through his right eye with glasses. Claimant has not alleged that he has a vision condition that prohibits him from carrying on a major life activity. Claimant cannot prevail on his vision impairment claim, as it is insufficient as a matter of law to meet the requirement of the Settlement Agreement and ADA.

**Mobility Impairment**: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has alleged that he has a severe case of asthma and back problems. He has not alleged that he is confined to a wheelchair or suffers from a lower extremity condition that affects walking.

Claimant has failed to allege a mobility impairment that is covered by the Settlement Agreement. Claimant may have a valid claim under the ADA and Rehabilitation for his asthma and back, but the claim must be pursued through a separate legal action. The Settlement Agreement has no category for asthma or back problems. Claimant has the ability to pursue his asthma and back claims in federal or state court.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Timothy W. Dudley is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 29, 2007.**

SIGNED this 4th day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master