IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-520
Category II
Claimant: Louis Mayfield, #68537
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER comes before the Special Master on the claim of Louis Mayfield (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) and is presently placed at the Limon Correctional Facility (LCF) in Limon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 18, 1997. Claimant was at LCF when he filed his claim. The only category checked on the claim form was that of mobility impaired.

Claimant stated, in part, as follows on his claim form, concerning his disability.

> I have a mobility disability from a gun-shot to my left hip. I have a mobility disability from a gun-shot wound in my left arm and shoulder.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

3

> I cannot read or write and have to have help with medical requests and grievances. The medical department here refuses to adequately treat me. They periodically see me on medical call-out lists, but never actually do anything toward a final resolution of my medical complaint. I am limited in job placement, good time credits and inmate pay scales.

On July 2, 2004, Claimant was sent supplemental forms to complete and return. He has never filed those forms.

Defendants filed their response on August 27, 2006. The Special Master issue an order to Claimant allowing him the opportunity to file a reply to Defendants' response to his claim. Despite being granted up to and including June 24, 2006 in which to file a reply, Claimant has filed nothing.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has submitted no medical records or anything more than his initial claim form. The question is whether there is sufficient evidence to establish that Claimant is mobility impaired.

Medical records submitted by Defendants reflect that Claimant has degenerative changes in his left hip. It is not disputed that he was shot in the leg in 1997, but the medical records reflect that Claimant is able to move and carry out his daily life activities. Other medical records reflect that Claimant was feeling well on May, 2003. He was able to lift weights. He hurt his thumb playing basketball in July, 2003.

Medical staff took x-rays in February, 2004 and noted gunshot fragments in the leg of Claimant. No recommendation was made to remove the fragments. In early 2006, a medical record reflects that Claimant was able to walk more than 300 feet and climb stairs.

To qualify as mobility impaired, a claimant must have a lower extremity condition that affects walking. The totality of the evidence presented reflects that Claimant does not have a mobility impairment as defined by the Settlement Agreement. Claimant is able to move and his hip problem has not affected his ability to carry out daily life activities.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**
There is no evidence that establishes any discrimination on the part of DOC or its staff as it relates to Claimant's physical condition. Claimant's complaint appears to be with medical

treatment that he has received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning quality of the medical care provided to him, that is beyond the jurisdiction of the Special Masters. Claimant has the right to pursue a separate action for medical negligence or malpractice.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answers to Questions #1 and #3 are in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Louis E. Mayfield is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 15, 2007.**

SIGNED this 3rd day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master