IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-543
Category II
Claimant: Michael A. Montoya, #113784
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Michael Montoya (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Crowley County Correctional Facility (CCCF) at Olney Springs, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 2003. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was at FCF when he filed his claim.

In his initial claim form, Claimant stated as follows:

> Hep C -for two years they refuse to progress any treatment. I feel sick and have internal pain. Shattered and arthritic ankles - extreme pain, can't walk well at times - can't stand on at times - they refused pain meds or treatment. Low back problems - pain in bed, can't move well refused pain meds.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> On several occasions I have complained about ankles and back, but to no avail - now I can't go to medical because if in pain and want to go to medical they charge 5-10 dollars - I only make about 4 dollars a month as a worker. They refuse to treat my Hep C and it is getting worse. They say I need classes but have not provided those classes although they make me take every other class they have in mental health.

Claimant was sent a supplemental form to complete and return. In that form, Claimant stated, in part, as follows:

> Difficulty walking with severe pain in the ankles (ankles supposed to be fused years ago). Severe lower back pain - high levels with Hep C tests and getting worse.

Claimant also stated as follows:

> Painful to walk and difficulty sleeping. Difficulty getting exercise which is causing severe weight problem which makes back and ankles hurt worse. The Hep C is to a point where I fear severe permanent damage and worry about death. The mental stress from medical refusing to help with back, legs and Hep C is a huge concern always has a person severely frustrated.

In response to the question concerning a request made for accommodations, Claimant stated as follows:

> I have asked for bottom bunk/bottom tier restrictions but only have been

given bottom bunk restriction. I have asked for better shoes because the boots cause severe pain in ankles. Ankles and lower back severely degenerated and arthritic. I have asked for pain meds and have been refused or discontinued. I have asked for documentation concerning injuries and refused.

Defendants' response has attached to it several pages of Claimant's medical records. Those records reflect that Claimant does have Hepatitis C and has ankle problems. He was given a lower bunk restriction in July, 2002. Recently, DOC medical staff have authorized arch supports and medical shoes.

Claimant was granted up to and including July 31, 2006 in which to file a reply to the response of Defendants. Claimant has not filed a reply nor has he submitted any medical or other records in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. The Special Master would note that Hepatitis C is not a condition covered by the Settlement Agreement. Claimant retains the right to pursue a separate lawsuit concerning this condition.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked only the box for mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking..." There is no evidence that Claimant has ever been in a wheelchair since being placed into DOC custody.

Though it is a close question, the Special Master finds that Claimant's ankle condition places him into the category of mobility impaired. He is part of the class for mobility impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. There is no evidence that DOC staff have discriminated against Claimant due to a disability.

Claimant's concerns have to do with the quality of medical care that he has received. There is no question that he has received some care. This is not a case where care was denied due to the impairment of Claimant. The fact that DOC may charge for a medical visit is not an issue that can be resolved by the Special Masters.

   The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes. Claimant retains the right to pursue a separate lawsuit if he believes he was the victim of medical malpractice or denied proper medical care in violation of the Eighth Amendment.

   **4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

   IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

   IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 15, 2007.**

   SIGNED this 3rd day of October, 2006.

            BY THE COURT:

            */s/ Richard M. Borchers*

            _____
            Richard M. Borchers
            Special Master