IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-MEH (Consolidated for all purposes with Civil Action No. 96-cv-00343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

**DEFENDANTS' RESPONSE TO "PLAINTIFF CLASS' MOTION REGARDING LEGALITY OF THE DOC'S MEDICAL CO-PAY PROGRAM AND THE UNDERLYING COLORADO CO-PAY STATUTE"**

Defendants, through the Colorado Attorney General, respectfully submit the following Response to "Plaintiff Class' Motion Regarding Legality of the DOC's Medical Co-Pay Program and the Underlying Colorado Co-Pay Statute."

**ARGUMENT**

**I.    COLORADO'S MEDICAL CO-PAY SYSTEM DOES NOT VIOLATE THE REMEDIAL PLAN.**

Nothing in the Remedial Plan bars the CDOC from charging medical co-pays to inmates, including those with diabetes. The Remedial Plan's only

mention of the CDOC's co-pay policy is that "Copays for all medical visits shall be waived for inmates who are classified as medically unassigned." (Remedial Plan, § XXVI). The CDOC is complying with this requirement. See Administrative Regulation ("AR") 700-30, IV-B-14 (waiving co-pays for medically unassigned inmates) (copy attached to Defendants' Brief Regarding Medical Co-Pays). Besides exempting medically unassigned inmates, the Remedial Plan makes no mention of co-pays. Nothing in the Remedial Plan waives the co-pay for diabetic inmates or for diabetes-related medical visits or services.

The Colorado General Assembly has required the CDOC to charge inmates a medical co-pay since 1987. See § 17-1-113, C.R.S. There was a co-pay system in effect in August, 2003, when the parties settled the case and entered into the Remedial Plan. Had Plaintiffs believed that diabetics should not be charged co-pays, they should have included such a provision in the Remedial Plan. The Remedial Plan is essentially a contract. Plaintiffs cannot now demand what they did not contract for. The fact that the parties agreed that the CDOC would waive co-pays for medically unassigned inmates shows that Plaintiffs could have requested a provision waiving co-pays for all diabetics. Because they did not, it is too late to insert such a

requirement now.  The Plaintiffs cannot amend the Remedial Plan at this time.  Plaintiffs' requested relief is beyond the scope of the Remedial Plan.

## II.     COLORADO'S MEDICAL CO-PAY SYSTEM DOES NOT VIOLATE THE ADA.

Nothing in the ADA prohibits a prison from charging a medical co-pay to all inmates, including those with diabetes.  Plaintiffs argue that the CDOC's co-pay system—which is mandated by § 17-1-113, C.R.S.,[1] and implemented by AR 700-30—has a disparate impact on inmates with diabetes, and thus violates the ADA. (Plaintiff Class' Motion Regarding Co-Pay, p. 9).  Plaintiffs' attack on § 17-1-113 and AR 700-30 should be rejected for several reasons.

The CDOC's co-pay policy does not violate the ADA.  Plaintiffs' motion alleges that the co-pay policy has a disparate impact on all diabetics.  Plaintiffs' statement that diabetics require more medical care than other inmates, and thus must pay more medical co-pays, is speculative and unsupported.  Diabetes is a disease that affects different people differently depending on the individual and the stage of the disease.  Certainly, some diabetics require daily medical care, including finger sticks and medication.

---

[1] Plaintiffs repeatedly refer to C.R.S. 17-36-113.  There is no such statute.  Plaintiffs are presumably referring to § 17-1-113, C.R.S., the statute which requires the CDOC to charge inmates a medical co-pay.

On the other hand, there are some diabetics who can be medically managed with healthy diet and exercise, and who do not require daily care. Meanwhile, it is easy to list other chronic medical conditions, such as AIDS or Hepatitis C, that can require as much medical care as diabetes. Consequently, it is difficult to state which medical condition requires the most medical care. The CDOC's co-pay policy applies equally to all inmates, including those with chronic conditions such as diabetes, AIDS, and Hepatitis C. The co-pay system does not have a disparate impact on inmates with diabetes.

The General Assembly gave the CDOC sole authority to devise "[t]he specific and exclusive bases upon which a copayment may be waived by department personnel." § 17-1-113(4)(d), C.R.S. Because, as noted above, it is difficult to anticipate how much medical care an inmate will need based upon a diagnosis alone, the CDOC chose to waive the co-pay for specific types of medical services (including any appointment initiated or schedule by medical staff), not for specific illnesses. See AR 700-30, IV-B.[2]  The

---

[2] Class Counsel misstates the amount of co-pays that diabetics are charged. Under AR 700-30, the CDOC waives the co-pay for, among other things, medication administration, lab work, follow-up appointments initiated or scheduled by a health care provider, and any request or appointment initiated or scheduled by medical staff. See AR 700-30, IV-B. Consequently, where a medical provider orders a diabetic to receive a daily finger stick (or multiple finger sticks throughout the day), those finger sticks are free. A diabetic does not pay a co-pay for finger sticks, or other medical care, initiated by medical staff.

4

CDOC's policy of waiving co-pays for specific services and visits is more reasonable and practical than assessing or waiving co-pays based upon the medical condition an inmate has. Colorado's co-pay system does not have a disparate impact on inmates with diabetes and does not violate the ADA.

In addition, not all diabetics are disabled within the meaning of the ADA. The ADA prohibits discrimination "on the basis of disability." 42 U.S.C. § 12132. Under the ADA, a "disability" is a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12101(2). That a person has an impairment, such as diabetes, does not mean he or she is disabled.

> It is insufficient for individuals . . . to merely submit evidence of a medical diagnosis or an impairment. Instead, the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial.

Toyota Motor Manuf. v. Williams, 534 U.S. 184, 198 (2002) (quotation omitted). Specifically discussing diabetes, the U.S. Supreme Court has explained that considering a diabetic disabled "simply because he or she has diabetes . . . is contrary to both the letter and the spirit of the ADA." Sutton v. United Airlines, 527 U.S. 471, 483-84 (1999).

Furthermore, even if all diabetics were considered disabled simply because of their diagnosis, the CDOC does not deny any diabetic inmate

5

access to medical care.  All inmates, including those with diabetes, are provided access to medical care.  "All offenders will have access to necessary health care, regardless of indigency status or ability to participate in a co-pay program." AR 850-14, IV-C-3 (copy attached to Defendants' Brief Regarding Medical Co-Pays).  "***All offenders will have access to health care regardless of their ability to pay.***" AR 700-30, I (emphasis in original).  The CDOC's co-pay policy applies to all inmates and does not discriminate against diabetics.

Finally, Plaintiffs' "disparate impact" claim is a new claim that cannot be asserted now for the first time.  Plaintiffs' "Second Amended Complaint – Class Action" did not include a disparate impact claim.  Review of the Second Amended Complaint shows that Plaintiffs alleged intentional discrimination (denial of access to programs, services, and activities, and refusal to provide reasonable accommodations); structural/architectural problems with several CDOC facilities; and inadequate evacuation plans at several CDOC facilities. (See Second Amended Complaint – Class Action, docketed at 99).  The words "disparate impact" never appear in the Second Amended Complaint.

While Plaintiffs are correct that an ADA plaintiff has the ability to raise a disparate impact claim, the claim is separate and distinct from an

6

intentional discrimination claim and must be specifically alleged in the complaint. See Barber ex rel. Barber v. Colorado, Dept of Revenue, 2005 WL 2657885, *3 (D. Colo. 2005) (unpublished order by Judge Blackburn finding that plaintiffs' "broad, generalized statement that plaintiffs were 'discriminated against on the basis of disability'" failed to allege a disparate impact claim, but giving plaintiffs an opportunity to amend their complaint) (a copy of the order is attached). At this point in the Montez litigation—14 years after the case was originally filed and three years after it settled—it is too late for Plaintiffs to amend their lawsuit to allege a new claim.

### III.   COLORADO'S MEDICAL CO-PAY SYSTEM IS CONSTITUTIONAL.

For the first time in the lengthy history of this case, Plaintiffs challenge the constitutionality of § 17-1-113, C.R.S., a state statute. This new claim is untimely and without merit. As noted above, Colorado law has required the CDOC to charge inmates a medical co-pay since 1987. Nothing in original Complaint (filed in 1992) or the Second Amended Complaint (filed in 1996) challenged the constitutionality of any state statute. Three years after the parties settled the underlying litigation, it is now much too late for Plaintiffs to insert a new claim challenging the constitutionality of § 17-1-113, C.R.S.

As long as an inmate's serious medical needs are met, states can require inmates to pay a co-pay for medical care. See Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245-46 (1977); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404 (9th Cir. 1985); Negron v. Gillespie, 111 P.3d 556, 558 (Colo. App. 2005).  Nothing in the Eighth Amendment entitles inmates to free medical care.  "It is clearly constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay." McCall v. Johnson County Sheriff's Dept, 71 Fed.Appx. 30, 31 (10th Cir. July 25, 2003) (unpublished opinion, copy attached).  "There is, of course, no general constitutional right to free health care." Reynolds v. Wagner, 128 F.3d 166, 173 (3rd Cir. 1997).  "[T]here is nothing unconstitutional about a program that require[s] that inmates with adequate resources pay a small portion of their medical care." Id. at 174.

Both the U.S. District Court for the District of Colorado and the Colorado Court of Appeals have upheld Colorado's co-pay system. See Erickson v. Pardus, 2006 WL 650131, *9-11 (D. Colo. March 13, 2006) (unpublished opinion, copy attached); Negron v. Gillespie, 111 P.3d 556, 558 (Colo. App. 2005).

In Erickson, Judge Babcock dismissed for failure to state a claim an inmate's Eighth Amendment challenge to Colorado's co-pay system. See Erickson, 2006 WL 650131, *9-11.  As Judge Babcock properly held, "as long as the inmate receives access to necessary medical care, there is no reason why the State cannot apply a minimal charge to the inmate's account and recover costs when he has the ability to pay." Id. at *10.  Judge Babcock noted that the CDOC guarantees that all offenders will have access to necessary health care, regardless of ability to pay, and that AR 700-30 "contains a lengthy list of general exclusions to the medical co-payment fee." Id. at *11.  Colorado's current co-pay system is constitutional. See id.; Collins v. Romer, 962 F.2d 1508, 1513 (10th Cir. 1992) (finding 1987 version of statute was unconstitutional because it failed to ensure that indigent inmates would receive medical care, but that the 1989 version, which created multiple exemptions, was constitutional).

Policies similar to Colorado's co-pay system have been consistently upheld. See, e.g., McCall v. Johnson County Sheriff's Dept, 71 Fed.Appx. 30, 31 (10th Cir. 2003); Reynolds v. Wagner, 128 F.3d 166, 174 (3rd Cir. 1997); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404 (9th Cir. 1985); Breakiron v. Neal, 166 F.Supp.2d 1110, 1115 (N.D.Tex. 2001); Gardner v. Wilson, 959 F.Supp. 1223 (C.D. Cal. 1997); Boblett v. Angelone,

9

942 F. Supp. 251, 253-54 (W.D. Va. 1996); Johnson v. Department of Pub. Safety & Corr. Servs., 885 F. Supp. 817, 821-22 (D. Md. 1995).

The plaintiff in Erickson, like the Plaintiffs here, did "not allege[] that he has ever been denied medical care for a serious medical need because of his inability to make a co-payment . . . instead, he complains about having to make choices." Erickson, 2006 WL 650131, *10.  Plaintiffs do not argue that the CDOC denies diabetic inmates access to medical care, but that some diabetics may choose to forego medical care to save their money for other things.[3]  Because there is no allegation that the CDOC has denied any diabetic inmate access to medical care because of the inmate's ability to pay, Plaintiffs' Eighth Amendment claim must fail.

That an inmate may need to exercise fiscal responsibility and make choices about how to spend his or her money does not render a CDOC policy invalid.  It should be obvious that a prison is not a charitable institution.  An inmate should be expected to pay a nominal fee for services provided to the inmate.  For example, while inmates have a constitutional right to access the courts, inmates have no right to free or unlimited

---

[3] As with necessary medical care, the CDOC ensures that indigent inmates receive hygiene items. See AR 850-14, IV-C-1-a.  Furthermore, "[u]pon determination by the living unit supervisor, hygiene items may be issued regardless of indigency status." AR 850-14, IV-D.

10

photocopies. See Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980). "To require a prisoner who wishes to prosecute several legal actions simultaneously to have to choose occasionally between stamps and coffee is certainly no more a restriction than that which any indigent pro se non-prisoner must face." Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978). Indeed, unlike with photocopies, inmates are always guaranteed access to medical care, regardless of their ability to pay. Colorado's co-pay system does not deprive inmates access to medical care.

## CONCLUSION

The CDOC's current co-pay policy, which is mandated by state law, does not violate the Remedial Plan, the ADA, the Rehabilitation Act, or the Eighth Amendment. Nothing in the Remedial Plan requires the CDOC to waive medical co-pays for diabetics. The CDOC's co-pay system does not have a disparate impact on diabetics and does not violate the ADA. In addition, because the CDOC ensures that all inmates receive necessary medical care, regardless of ability to pay, the CDOC is constitutionally permitted to charge a medical co-pay. Finally, it is much too late at this point in the Montez litigation for Plaintiffs to attempt to amend the Remedial Plan or to assert new claims for the first time. For these reasons, this Court

11

should deny Plaintiffs' motion and allow the CDOC to continue its non-discriminatory medical co-pay policy.

Respectfully submitted this 5th day of October, 2006.

JOHN W. SUTHERS
Attorney General


s/ Jess A. Dance
JESS A. DANCE, 35803*
Assistant Attorney General
Civil Litigation & Employment Law
 Section
Attorney for Defendants

Colorado Attorney General's Office
1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5165
Fax: (303) 866-5443
Email: jess.dance@state.co.us

# CERTIFICATE OF SERVICE

I certify that on the 5th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paula Greisen
greisen@kinggreisen.com
King & Greisen, LLP
1670 York St.
Denver, CO 80206

*Courtesy Copy To:*

Cathie Holst

                                                s/ Jess A. Dance