

Not Reported in F.Supp.2d                                                                                                                Page 1

Not Reported in F.Supp.2d, 2005 WL 2657885 (D.Colo.), 17 A.D. Cases 1082, 31 NDLR P 147

**(Cite as: 2005 WL 2657885 (D.Colo.))**

**Motions, Pleadings and Filings**

United States District Court,
D. Colorado.
Julianna BARBER, by and through her next friend, Marcia Barber; Madeline
Barber, by and through her next friend, Marcia Barber; Marcia Barber; Colorado
Cross-Disability Coalition, a Colorado non-profit corporation; and American
Council of the Blind of Colorado, Inc., a Colorado non-profit corporation,
Plaintiffs,
v.
STATE of Colorado, Department of Revenue; State of Colorado, Department of
Revenue, Division of Motor Vehicles; M. Michael Cook, in her individual and
official capacity as Executive Director of the Colorado Department of Revenue;
and Steve Tool, in his individual and official capacity as Senior Director of
the Colorado Division of Motor Vehicles, Defendants.
No. Civ.A.05CV00807REBCB.

Oct. 17, 2005.
Amy Farr Robertson, Fox & Robertson, P.C., Kevin William Williams, Colorado Cross-Disability Coalition, Denver, CO, for Plaintiffs.

Elizabeth H. McCann, Colorado Department of Law, Denver, CO, for Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

BLACKBURN, J.

*1 The matter before me is Defendants' Motion to Dismiss [# 10], filed July 11, 2005. By this motion, defendants seek to dismiss plaintiffs' claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131-12134, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794, for failure to state claims on which relief may be granted. I grant the motion in part and deny it in part.

Plaintiff Marcia Barber has retinitis pigmentosa, a condition which substantially limits her in the major life activity of seeing, among others. On September 8, 2004, Marcia's daughter, plaintiff Julianna Barber, turned 15 years old. Soon thereafter she obtained a minor's instruction permit and completed a driver's education course. Having satisfied these statutory prerequisites, she was eligible to drive under the supervision of a parent, stepparent, or legal guardian who held a valid driver's license. *See* § 42-2- 106(b), C .R.S. (2004). However, because Marcia does not have a driver's license due to her disability, Julianna was not able to participate in this program. Although Marcia requested that she be allowed to designate Julianna's grandfather to supervise her driving, defendants refused this request. Nevertheless, the statute was subsequently amended, effective July 1, 2005, to also permit a grandparent with power of attorney to supervise a minor's driving.

Marcia, Julianna, and Marcia's younger daughter, Madeline, together with the Colorado Cross-Disability Coalition and the American Council of the Blind of Colorado, filed this lawsuit claiming that the statute violated the ADA and the Rehabilitation Act. They seek compensatory, injunctive, and declaratory relief. Defendants have moved to dismiss these causes of action.

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

...

Not Reported in F.Supp.2d                                   Page 2

Not Reported in F.Supp.2d, 2005 WL 2657885 (D.Colo.), 17 A.D. Cases 1082, 31 NDLR P 147

**(Cite as: 2005 WL 2657885 (D.Colo.))**

sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1533 (10th Cir.1992). The complaint must be construed in the light most favorable to plaintiffs, and its allegations must be taken as true. *Robinson v. City and County of Denver* 39 F.Supp.2d 1257, 1262-1263 (D.Colo.1999) (citing *Daigle,* 972 F.2d at 1533). However, I need not assume that plaintiffs "can prove facts which [they] ha[ve] not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

This lawsuit implicates both Title II of the ADA and section 504 of the Rehabilitation Act, which "impose identical obligations," *Cisneros v. Wilson,* 226 F.3d 1113, 1124 (10th Cir.2000), *overruled on other grounds by Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), and, thus, are construed similarly, *see Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1102 (10th Cir.1999). Both statutes prohibit discrimination against a "qualified individual with a disability" by reason of such disability. *See* 42 U.S.C. § 12132, 29 U.S.C. § 794(a). Thus, to assert a cause of action under either statute, a plaintiff must prove:

*2 (1) That he [or she] is a qualified individual with a disability;
(2) That he [or she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright,* 186 F.3d 1216, 1219 (10th Cir.1999) (quoting *Tyler v. City of Manhattan,* 849 F.Supp. 1429, 1439 (D.Kan.1994)) (alterations in *Gohier* ). *See also Weinreich v. Los Angeles County Metropolitan Transportation Authority,* 114 F.3d 976, 978 (9th Cir.1997) (prescribing the same elements for cause of action under the Rehabilitation Act, with additional requirement that plaintiff prove program receives federal financial assistance).

Defendants argue first that none of the individual plaintiffs is a "qualified individual with a disability." A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *see also* 29 U.S.C. § 705(20). Defendants argue that Marcia is not qualified under the statute because she is ineligible to hold a driver's license. [FN1] This circular argument ignores the fact that Marcia has requested an accommodation to the statute's rules to allow her to designate another licensed driver to supervise Julianna's driving instruction. Such accommodation would allow her to participate in the program, which already mandates parental participation, either personally or by proxy. [FN2] I therefore find that the complaint adequately alleges both that Marcia is a qualified individual with a disability and that the statute excluded her from participation in the program.

> FN1. For purposes of a disability discrimination claim, it does not particularly matter that the statute also impacts non-disabled persons who also do not have driver's licenses. The Supreme Court has rejected "comparator" analysis in these types of cases. *See McGary v. City of Portland,* 386 F.3d 1259, 1266 (9th Cir.2004) (citing *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999)). The inquiry is "not whether the benefits to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 2657885 (D.Colo.), 17 A.D. Cases 1082, 31 NDLR P 147
**(Cite as: 2005 WL 2657885 (D.Colo.))**

which they are legally entitled." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2nd Cir.2003), *cert. denied,* 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004).

FN2. Defendants argue also that the process of obtaining a legal guardianship or power of attorney is not onerous and that the relinquishment of parental rights occasioned thereby may be limited solely to the right to supervise the minor while driving. While these arguments may be persuasive on summary judgment, at this early juncture, I must accept plaintiffs' representations that these alternative options are not reasonable accommodations.

However, I find that Julianna and Madeline cannot assert viable ADA or Rehabilitation Act claims. It is undisputed that neither has a disability herself. Julianna and Madeline argue nevertheless that the defendants have discriminated against them on the basis of their association with their mother. Title I of the ADA prohibits such associational discrimination. *See Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1082 (10th Cir.1997) (citing 42 U.S.C. § 12112(b)(4)). However, to invoke the protections of that section, a plaintiff must show an employment relationship with the defendant. *See McGuinness v. University of New Mexico School of Medicine,* 170 F.3d 974, 979 (10th Cir.1998). Obviously, no such relationship is claimed in this case. Moreover, no similar statutory provision is included in Title II of the ADA. Although applicable regulations provide that public entities may not discriminate against individuals based on their association with a person with a disability, *see* 28 C.F.R. § 35.130(g), plaintiffs provide no argument or authority to suggest that this regulation creates a cause of action in the absence of express statutory authorization. [FN3] *But see Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37, 47-48 (2nd Cir.1997) (suggesting in dicta that 28 C.F.R. § 35.130(g), although not entitled to controlling weight, might be entitled to due weight, but ultimately finding question irrelevant). I therefore conclude that Julianna's and Madeline's individual claims should be dismissed.

FN3. Plaintiffs argue instead that Julianna's and Madeline's claims pass muster because the Tenth Circuit has found that standing under Title II extends to the full limits of Article III. *See Tandy v. City of Wichita,* 380 F.3d 1277, 1287 (10th Cir.2004); *see also Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 103 n. 9, 99 S.Ct. 1601, 1609 n. 9, 60 L.Ed.2d 66 (1979) (noting that when "Congress intended standing ... to extend to the full limits of Art. III, the normal prudential rules do not apply; as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed"). Whatever the legitimacy of this argument in relation to issues of standing, it offers no guidance when considering whether associational discrimination is a substantive claim under Title II.

*3 Defendants assert further that plaintiffs cannot prove that they were discriminated against solely by reason of disability because there is no evidence that defendants intentionally sought to discriminate against the blind and visually impaired in enacting and enforcing the statute. Plaintiffs counter that they are not asserting claims for disparate treatment under the statute, but rather for disparate impact and for failure to offer a reasonable accommodation. Both theories assert distinct and viable claims under the ADA and the Rehabilitation Act. [FN4] *See Alexander v. Choate,* 469 U.S. 287, 300-01, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (reasonable accommodation claim); *Chaffin v. Kansas State Fair Board,* 348 F.3d 850, 859-60 (10th Cir.2003) (disparate impact claims); *see also Henrietta D. v. Bloomberg,* 331 F.3d 261, 273-77 (2nd Cir.2003) (noting that plaintiff need not prove disparate impact in order to make out a reasonable accommodation claim), *cert. denied,* 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004). Nevertheless, I do not believe that the complaint,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 4

Not Reported in F.Supp.2d, 2005 WL 2657885 (D.Colo.), 17 A.D. Cases 1082, 31 NDLR P 147

**(Cite as: 2005 WL 2657885 (D.Colo.))**

with its broad, generalized statement that plaintiffs were "discriminated against on the basis of disability," is adequate to put defendants on notice that plaintiffs intend to prosecute such claims. Defendants are entitled to know that which they must defend. I therefore will afford plaintiffs an opportunity to replead their claims to properly assert disparate impact and reasonable accommodation claims.

> FN4. However, I note that the law in this circuit requires a plaintiff to show intentional discrimination to be entitled to compensatory damages in an ADA or Rehabilitation Act suit. *See Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir.1999). "[I]ntentional discrimination may be inferred when a policy maker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy ..." *Id* . (citation and internal quotation marks omitted; second alteration in *Powers* ). Because I will require plaintiffs to redraft their complaint to assert more definitively these claims, plaintiffs would do well, if they intend to seek compensatory damages in this matter, to more particularly allege facts showing deliberate indifference, if they can.

As for the organizational plaintiffs, defendants' argument that they lack standing misapprehends the nature of their claims in this lawsuit. The organizations are not suing based on injuries to their own institutional interests, *see Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975), but rather based on the interests of their members, *see Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). The complaint asserts that the organizational plaintiffs' members, including Marcia Barber, "are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *See Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342-43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) (citation and internal quotation marks omitted). However, it is not clear from the complaint that the organizational plaintiffs are seeking the type of relief that would not require participation of their individual members. *See id.,* 97 S.Ct. at 2441. More specifically, although claims for injunctive and declaratory relief may be adjudicated without individual participation of the members of an organizational plaintiff, *see id.,* damages claims cannot, *see Warth,* 95 S.Ct. 2213-14. Because plaintiffs' complaint makes only a single, general claim for damages, it is impossible to tell whether the organizational plaintiffs also are seeking such relief. When redrafting the complaint, plaintiffs should rectify this confusion. [FN5]

> FN5. I also agree with defendants that, to the extent the complaint can be read to assert a claim for punitive damages, plaintiffs are not entitled to such. *See Barnes v. Gorman,* 536 U.S. 181, 189, 122 S.Ct. 2097, 2103, 153 L.Ed.2d 230 (2002).

\*4 Finally, defendants claim that this lawsuit is moot because the recent amendment to the statute allowing a grandparent with power of attorney to supervise a minor's driving instruction gives plaintiffs all the relief they requested. I disagree. Although an ADA plaintiff is not necessarily entitled to the particular accommodation she requests, *see Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1177 (10th Cir.1999), the amendment to the statute does not, in fact, constitute the accommodation that Marcia Barber requested. Rather than simply allowing her to designate a substitute supervisor for her daughters' driving instruction, it requires her to execute a legally binding document to effectuate the transfer of parental authority. I thus cannot say that the amendment moots plaintiffs' claims.

THEREFORE, IT IS ORDERED as follows:

(1) That Defendants' Motion to Dismiss [# 10], filed July 11, 2005, is GRANTED IN PART and DENIED IN PART;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 5
Not Reported in F.Supp.2d, 2005 WL 2657885 (D.Colo.), 17 A.D. Cases 1082, 31 NDLR P 147
**(Cite as: 2005 WL 2657885 (D.Colo.))**

(2) That the motion is GRANTED with respect to the claims brought on behalf of Julianna and Madeline Barber, as well as any claim for punitive damages in this matter, and those claims are DISMISSED WITH PREJUDICE;

(3) That Julianna Barber and Madeline Barber are DROPPED as named plaintiffs in this action, and the case caption is AMENDED accordingly;

(4) That the motion is GRANTED further insofar as plaintiffs will be required to replead as herein specified;

(5) That plaintiffs SHALL FILE an amended complaint by November 7, 2005; and

(6) That in all other respects, the motion is DENIED.

Not Reported in F.Supp.2d, 2005 WL 2657885 (D.Colo.), 17 A.D. Cases 1082, 31 NDLR P 147

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 822860 (Trial Pleading) Answer (Feb. 17, 2006)

• 2006 WL 396563 (Trial Pleading) Second Amended and Supplemental Complaint (Jan. 20, 2006)

• 2005 WL 2836891 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Memorandum in Opposition to Defendants' Motion to Dismiss (Sep. 22, 2005)

• 2005 WL 2836883 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Defendants' Motion to Dismiss (Aug. 31, 2005)

• 1:05cv00807 (Docket) (May 2, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.