Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)
**(Cite as: 2006 WL 650131 (D.Colo.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
William ERICKSON, Plaintiff,
v.
Barry J. PARDUS, Assist. Clinical Dr., C.D.O.C.,
and Dr. Anita Bloor, L.C.F.,
Medical Staff, all defendants named in their
individual and official
capacities, Defendants.
**No. 05 CV 00405 LTB MJW.**

March 13, 2006.
William Erickson, Limon, CO, pro se.

Awilda R. Marquez, Hall & Evans-Denver Co., Denver, CO, for Defendants.

ORDER

BABCOCK, Chief J.

*1 This case is before me on the recommendation of the Magistrate Judge that Defendants' Motion to Dismiss (Doc 26) be granted. The Magistrate Judge notes that to the extent Plaintiff makes claim for damages against Defendants in their official capacities such claims should be dismissed but that the motion to dismiss against the Defendants in their official capacities should not be granted insofar as it seeks injunctive relief.

Plaintiff has filed timely specific objections to the Magistrate Judge's recommendation. Defendants have responded to the objections. I have therefore reviewed the recommendation *de novo* in light of the file and record in this case. The Plaintiff notes no objection to dismissal of any portion of his claims for damages against Defendants in their official capacity disavowing any claim against them for monetary damages. On *de novo* review, I conclude that the Magistrate Judge's recommendation is correct.

Plaintiff has also filed a motion to expedite ruling (Doc 22). It appears that the motion was filed on June 3, 2005 and reasserted on January 2, 2006. In light of my ruling upon the objections to the recommendation, the motion to expedite is moot.

Accordingly

IT IS ORDERED that the above action is DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's motion to expedite is DENIED AS MOOT.

RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

WATANABE, Magistrate J.

(Docket No. 26)
This case is before this court pursuant to an Order of Reference to United States Magistrate Judge issued by Chief Judge Lewis T. Babcock on April 5, 2005 (Docket No. 9).

In his pro se Prisoner Complaint (Docket No. 3) and attachments thereto, the plaintiff alleges the following. Plaintiff has Hepatitis C. In order to obtain treatment that entails weekly self-injections of interferon and twice-daily oral ingestion of Ribavirin capsules, he completed the required drug and alcohol classes, had a liver biopsy, and was assessed as needing treatment, which would take one year. However, on March 19, 2004, "[s]hortly after beginning treatment," a syringe used to give a Pegylated Interferon shot became missing at the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)
**(Cite as: 2006 WL 650131 (D.Colo.))**

medical department after the Friday afternoon shots for those on treatment. Within twenty minutes of that discovery, plaintiff's living pod (which housed 52 men) was searched, and a syringe was found in a communal trash can. According to the plaintiff, that syringe was cut-down, was not the type used in giving the Pegylated Interferon shots, and could not have been the missing one because there would not have been time to make an alteration. Nevertheless, plaintiff was taken to segregation, written up, and immediately removed from treatment by defendant Dr. Anita Bloor. Plaintiff was subsequently convicted of a violation of the Colorado Code of Penal Discipline ("COPD") for possession of drug paraphernalia.

Plaintiff unsuccessfully grieved the termination of his Hepatitis C treatment. In response to plaintiff's Step 2 grievance, plaintiff was advised:

*2 You have received a COPD conviction for theft of a syringe and needle from the medical clinic. Within a correctional facility, the only reason for stealing a syringe and needle is to use them for injection of illicit drugs. Consequently, within the intent of the hep C guidelines, theft or possession of such drug paraphenalia is equivalent to the use of illicit drugs. Your grievance is denied.

If you want to have your hepatitis C infection treated; one year from the date the treatment was stopped you must begin another 6 months of drug and alcohol classes. If you successfully complete that class and if you remain enrolled in drug and alcohol aftercare (for example, attendance at AA/NA) then you can again begin hepatitis C treatment. However, because of the interruption the treatment must be started over from the beginning.

(Step 2 CDOC Offender Grievance Form, attached to the Complaint) (emphasis added). As noted above, plaintiff's treatment was terminated on March 19, 2004. He commenced this action almost a year later, and there is no indication in the Complaint or subsequent filings that the plaintiff was to begin or has begun another six months of drug and alcohol classes in order to begin Hepatitis C treatment again.

According to the Grievance Officer who reviewed plaintiff's Step 3 grievance, from the COPD conviction "the reasonable inference is made that it was [plaintiff's] intent to attempt to use illicit drugs. The successful treatment of Hepatitis C is incumbent upon the individual remaining drug and alcohol free to give the liver a better chance of recovery. Based upon your intent to circumvent the required criteria to remain drug and alcohol free, the termination was justified...." (Letter dated Sept. 30, 2004, attached to the Complaint).

Plaintiff claims that Bloor is being deliberately indifferent to the plaintiff's serious medical needs in violation of his Eighth Amendment protections by refusing plaintiff treatment for a disease from which he suffers. In addition, plaintiff contends that his Fourteenth Amendment procedural due process protections have been violated because the Colorado Department of Corrections' ("CDOC") protocol for treatment of Hepatitis C did not allow for the plaintiff to be removed from treatment for such an infraction, and the treatment protocol requires that he be treated for Hepatitis C so long as he meets the pre-requisites of the protocol. Plaintiff claims he is still in need of treatment, and the CDOC will not treat him, even though he meets the requisite treatment criteria.

In addition, plaintiff complains about the CDOC's enactment of a medical policy which requires co-payments to be made for medical visits, namely, $5 to see a nurse practitioner or physician's assistant, $10 to see a doctor, $5 per dental visit, $5 per mental health visit, and $10 for an emergency visit unless it is declared a true emergency, in which case the payment is dropped to $5. Plaintiff contends that the co-payments are excessive and violate his Eighth Amendment protections against cruel and unusual punishment because the visits cost more than he makes in one month ($10 per month, subject to a $2 deduction for court-ordered restitution and costs), and CDOC makes those deductions first, forcing the plaintiff to choose between hygienic needs and medical visits. Defendant Pardus, the Assistant Director of Clinical Services for CDOC, allegedly enacted the new co-payment policy.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3

Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)

**(Cite as: 2006 WL 650131 (D.Colo.))**

\*3 Plaintiff unsuccessfully grieved the new co-payment policy. In the final grievance decision, plaintiff was informed that no increase in co-payments were made in the previous eight years, that the $5.00 rate was within the national standard of co-payment rates charged by corrections departments in other states, and that mandatory charges are required by Colorado statute. (Letter dated October 21, 2004, attached to the Complaint).

Plaintiff seeks declaratory, injunctive, [FN1] and monetary relief.

> FN1. Namely, plaintiff seeks "a permanent injunction requiring CDOC to cease from taking the excessive co-pays and a temporary injunction requiring CDOC to treat me for Hepatitis C under the standards of the treatment protocol [sic] established by them." (Compl. at 8).

Now before the court is the Defendants' Motion to Dismiss (Docket No. 26), which was filed on June 20, 2005. Plaintiff opposes the motion (Docket No. 35), and defendants filed a Reply (Docket No. 39). The court has reviewed the motion, the response thereto, and the reply and has considered applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendation.

Defendants seek dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the following grounds: (1) plaintiff fails to state a claim against the defendants in their official capacities because they are not "persons" under 42 U.S.C. § 1983; (2) plaintiff's claims for monetary damages against defendants in their official capacities are barred by the Eleventh Amendment; and (3) the court lacks subject matter jurisdiction over the defendants in their official capacities because they are protected by qualified immunity.

Rule 12(b)(1):
  empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. See U.S. CONST. art. III, § 2; *Morris v. City of Hobart,* 39 F.3d 1105, 1110 (10th Cir.1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. See *F & S Constr. Co. v. Jensen,* 337 F.2d 160, 161 (10th Cir.1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. See *Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. See *id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. See *id.*

\*4 *Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.,* 176 F.Supp.2d 1091, 1094-95 (D.Colo.2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1126 (10th Cir.1998); *Seamons v. Snow,* 84 F.3d 1226, 1231-32 (10th Cir.1996). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 4
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)
**(Cite as: 2006 WL 650131 (D.Colo.))**

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.... At the same time, ... it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

*CLAIMS AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES*

Defendants assert that the plaintiff's claims against them in their official capacities must be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) because they are not persons under 42 U.S.C. § 1983. In addition, defendants assert that to the extent the plaintiff brings claims for monetary damages against them in their official capacities, such claims are barred by the Eleventh Amendment. Plaintiff, however, notes that he is suing for both injunctive relief and punitive damages, and he asserts that a plaintiff should name the defendant in his or her official capacity if the defendant is being sued for injunctive relief.

The U.S. Supreme Court has stated that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state." *Will v. Michigan Dept. of State Police* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Furthermore, "[t]he Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law." *Montez v. Romer,* 32 F.Supp.2d 1235, 1241 (D.Colo.1999). Therefore, it is recommended that the plaintiff's claims for injunctive relief against the defendants in their official capacity not be dismissed on this ground, but to the extent that the plaintiff makes a claim for damages against them in their official capacity, that such claims be dismissed with prejudice.

*QUALIFIED IMMUNITY*

*5 Defendants assert that the plaintiff's constitutional claims against them in their individual capacities fail because they are protected by qualified immunity. When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." *Cruz v. City of Laramie, Wyo.,* 239 F.3d 1183, 1187 (10th Cir.2001). " 'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." ' *Id.* (footnote omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful ... but is to say that in the light of pre-existing law the unlawfulness must be apparent." ' *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citations omitted). "[O]fficials can still be on notice that their conduct violated established law even in novel factual circumstances.... Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts." *Id.* at 741.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 5
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)

**(Cite as: 2006 WL 650131 (D.Colo.))**

time did not clearly establish that the [defendant's] conduct would violate the Constitution, the [defendant] should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

In this case, the court finds that the plaintiff has failed to state Eighth or Fourteenth Amendment claims against the defendants.

*Termination of Plaintiff's Interferon/Rabavirin Treatment for Hepatitis C*

Defendants assert the following with respect to plaintiff's Eighth Amendment claim against defendant Bloor:

> Defendant Bloor's conduct simply does not rise to the level of "deliberate indifference." Although a Hepatitis C infection is unquestionably a serious medical problem, the Eighth Amendment issue here is whether the removal of Plaintiff from Hepatitis C treatment as a result of his own actions constituted deliberate indifference. The Colorado Department of Corrections ("CDOC") Clinical Standard and Procedure for Hepatitis C, provides that treatment for Hepatitis C can be stopped or started if there is evidence of substance abuse. Exhibit B, at p. 7. Also, the CDOC Contract for Attendance of Substance Abuse Education Classes and for Random Testing of Urine for Substance Abuse, which Plaintiff signed and a copy of which is attached as an exhibit to Plaintiff's Complaint, Plaintiff was advised that treatment for Hepatitis C would not be given if he evidenced continued drug abuse while incarcerated. Nevertheless, Plaintiff [sic] evidence of continued substance abuse while incarcerated was evidenced by Plaintiff's charged [sic] and conviction for possession of drug paraphernalia.
> 
> *6 Plaintiff was receiving Hepatitis C treatment at LCF when he took action that LCF officials determined to constitute evidence of an intent [to] use illicit drugs. *See* response to Grievance Form Step 3. He was terminated from treatment for attempting to use drugs. He was later convicted of possession of drug paraphernalia after a formal hearing with witnesses. *See* Grievance Form Step 1. According to the response to Plaintiff's Step 3 Grievance of the removal from treatment, attached as an exhibit to his Complaint, Plaintiff's conviction for possession of drug paraphernalia was a reasonable inference that he intended to use illicit drugs.
> 
> Defendant Bloor was providing Plaintiff Hepatitis C treatment when Plaintiff's actions violated CDOC policy. Defendant Bloor merely complied with CDOC policy. CDOC policy is based on a principle that continued substance abuse renders treatment ineffective and wasteful. *See* Contract, attached to Plaintiff's Complaint. Plaintiff disagrees with the principle underlying CDOC's policy on Hepatitis C treatment. A difference of opinion, however, does not demonstrate deliberate indifference.
> 
> Plaintiff's allegations against Defendant Bloor are insufficient to demonstrate she was deliberately indifferent to Plaintiff's serious medical needs. In the absence of facts alleged to support a claim for violation of Plaintiff's constitutional rights under the Eighth Amendment, Defendant Bloor in her individual capacity has qualified immunity from suit, and Plaintiff's Eight Amendment claim against her must be dismissed as a matter of law.

(Docket No. 26 at 9-10).

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' " *Brosseau v. Haugen,* 534 U.S. at 197. Based upon the findings below, this court finds that the plaintiff has not alleged facts that show that defendant Bloor's conduct violated the Eighth Amendment.

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.... The test for constitutional liability of prison officials 'involves both an objective and a subjective component.' " *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir.2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)

**(Cite as: 2006 WL 650131 (D.Colo.))**

must set forth facts demonstrating [1] that his alleged medical need ... was sufficiently serious to meet the objective element of the deliberate indifference test, *and* [2] that the Defendants' delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.
\*7 *Oxendine v. Kaplan,* 241 F.3d 1272, 1276-77 (10th Cir.2001) (quotations omitted).

Hepatitis C is unquestionably a serious medical problem. However, the Eighth Amendment issue in this case is not whether the Hepatitis C infection itself is a "serious medical need." See *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir.2004) ("[T]he Eighth Amendment issue is not whether the infection itself is a "serious medical need," but rather whether [plaintiff] had a serious medical need for prompt interferon treatment."). " 'When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" ' to determine whether the alleged deprivation was sufficiently serious." *Baxter v. Pesanti,* 2005 WL 1877200 (D.Conn. July 29, 2005) (quoting *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003)). "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'... The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain." ' *Mata v. Saiz,* 427 F.3d at 751.

Therefore, the issue here with regard to the first, objective element of the deliberate indifference standard is whether the discontinuance of the plaintiff's Interferon/Ribavirin treatment right after it began and/or discontinuing it for approximately an eighteen-month period (a one-year waiting period and then six months of drug and alcohol classes) resulted in substantial harm. See *Graham v. Wright,* 2004 WL 1794503 (S.D.N.Y. Aug.10, 2004) (In case where prisoner complained of delay in providing treatment for Hepatitis C, the court held that the objective element of deliberate indifference standard must be satisfied by "harm that resulted from the delay."). A close reading of the Prisoner Complaint shows that the plaintiff does not allege that as a result of the discontinuance of the treatment itself shortly after it began or the interruption of treatment for approximately eighteen months he suffered any harm, let alone substantial harm, than what he already faced from the Hepatitis C itself. Instead, plaintiff merely focuses on the fact that treatment was stopped. Therefore, this court finds that the plaintiff's Eighth Amendment claim fails on the first component of the deliberate indifference standard. Plaintiff's first claim for relief may be dismissed for failure to state a claim on this basis alone.

Even if the plaintiff alleged the requisite substantial harm, however, he has not met the second (the subjective) component of the deliberate indifference standard. "The subjective prong of the deliberative indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind.... The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." ' *Maita v. Saiz,* 427 F.3d at 751. Plaintiff has not alleged such facts. He has not alleged that in applying the provisions of the CDOC protocol, defendant Bloor subjectively knew of and disregarded an excessive risk to the plaintiff's health. In fact, according to statements made in the CDOC protocol and other documents submitted by the plaintiff, continued substance abuse renders treatment ineffective and wasteful.

\*8 Those documents repeatedly state that it is well acknowledged that the major cause of acute Hepatitis C at this time is intravenous drug usage and the sharing of needles and syringes among intravenous drug abusers. (See, e.g., Docket No. 36-2 at 1--Referral for Drug and Alcohol Education Classes for CDOC Patients Wanting Treatment for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 7
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)
**(Cite as: 2006 WL 650131 (D.Colo.))**

Hepatitis C). Furthermore, those documents report that treatment for Hepatitis C is expensive, and even if successful does not confer any protection against reinfection if the patient does the things that expose him or her to the virus again. (See Docket No. 36-2 at 2, CDOC Contract for Attendance of Substance Abuse Education and for Random Testing of Urine for Substance Abuse). The Contract for Attendance of Substance Abuse Education Classes and for Random Testing of Urine for Substance Abuse signed by the plaintiff, which is attached to the Complaint, states that "[c]ontinued substance abuse while incarcerated in the CDOC strongly indicates that a person is not sufficiently interested in receiving treatment to change their habits and follow medical recommendations."

Furthermore, in this case, according to the documents attached to the Complaint, the plaintiff was convicted of a COPD violation of possession of drug paraphernalia, namely, a syringe. According to the response to plaintiff's step 2 grievance, "[w]ithin a correctional facility, the only reason for stealing a syringe and needle is to use them for injection of illicit drugs. Consequently, within the intent of the hep C guidelines, theft or possession of such drug paraphenalia is equivalent to the use of illicit drugs." (Step 2 CDOC Offender Grievance Form, attached to the Complaint). Similarly, according to the Grievance Officer who reviewed plaintiff's Step 3 grievance, from the COPD conviction "the reasonable inference is made that it was [plaintiff's] intent to attempt to use illicit drugs. The successful treatment of Hepatitis C is incumbent upon the individual remaining drug and alcohol free to give the liver a better chance of recovery. Based upon your intent to circumvent the required criteria to remain drug and alcohol free, the termination was justified...." (Letter dated Sept. 30, 2004, attached to the Complaint).

Based upon the above, this court finds that the plaintiff's Eighth Amendment claim also fails on the second component of the deliberate indifference standard.

Based upon these same documents, this court also finds that the plaintiff has not shown that "the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." *Cruz v. City of Laramie, Wyo.*, 239 F.3d at 1187. The court agrees with the defendants that the plaintiff's alleged right to Hepatitis C treatment in spite of his conviction for possession of drug paraphernalia was not clearly established for qualified immunity purposes. Defendants correctly note that there are no U.S. Supreme Court or Tenth Circuit decisions providing any standards for the medical treatment of inmates with Hepatitis C. (See cases listed in the Reply, Docket No. 39 at 10 & n .5).

*9 In sum, the court finds that the plaintiff has failed to state an Eighth Amendment claim against defendant Bloor. Even if that were not the case, defendant Bloor would be protected by qualified immunity.

*Due Process Claim*

Plaintiff contends that his Fourteenth Amendment procedural due process protections have been violated because the CDOC protocol for treatment of Hepatitis C did not allow for him to be removed from treatment for such an infraction, and the treatment protocol requires that he be treated for Hepatitis C so long as he meets the pre-requisites of the protocol. Defendants, however, assert that there was no Fourteenth Amendment violation by defendant Bloor when she removed the plaintiff from Hepatitis C treatment for possessing drug paraphernalia without giving plaintiff due process of law. Defendants note that the plaintiff went through the entire three-step grievance procedure with regard to his removal from treatment (see documents attached to the Complaint), and defendants assert that the procedures provided meet the requirements of the Fourteenth Amendment. In addition, defendants state that the plaintiff had a hearing at which he had the opportunity to be heard and to hear the evidence against him with regard to the charge of possession of drug paraphernalia.

Plaintiff responds that
   he has a procedural due process protection to have the conditions of contract/protocal [sic] he

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)
**(Cite as: 2006 WL 650131 (D.Colo.))**

signed enforced under provisions of the Fourteenth Amendment. *See Sandin v. Connor,* 515 U.S. 472, 483-85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). This is true just as much as it would be true for Defendants who claim they have the right to remove Plaintiff from treatment under the revised Protocal [sic]. And while they may be true (if the revised version were applicable to Plaintiff), that version of the Protocal [sic] is not applicable to Plaintiff as it was not in effect when he signed his treatment contract, nor is this condition even mentioned in the contract itself. *See* attachment A and B.
(Docket No. 36 at 10).

The court, however, agrees with the defendants that "neither the Fourteenth Amendment Due Process clause nor the CDOC Protocol or contract afford Plaintiff a protected liberty interest that would entitle him to procedural protections." (Reply, Docket No. 39 at 9) (citing *Sandin v. Conner,* 515 U.S. 472, 481-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). *See Bartlett v. Correction Med. Servs.,* 1997 WL 572834 (10th Cir. Sept.16, 1997) (Inmate was refused Interferon Alpha treatment for Hepatitis C, among other things. Inmate alleged violations of existing policies and failure to include Hepatitis C on the list of chronic medical conditions governed by special policies. Court found that "[w]hile corrections authorities may, and probably will, develop guidelines regarding the use of interferon A for treating some inmates, neither the cited policies or regulations, or the absence of a policy, confers a constitutional right under the Fourteenth Amendment.") (citing *Sandin* ). In addition, as noted above, the protocol does, in fact, provide that if there is evidence of drug-related COPD write-ups, it is evidence that the previous substance abuse classes did not work, and the patient must take another six months of such classes before starting treatment. (Docket No. 36-2 at 13). In addition, plaintiff's documentation attached to the Complaint shows that he was given a hearing regarding the COPD charge. In sum, this court finds no due process violation.

*Co-payments and Hygiene Items*

\*10 Defendants also assert that there was no Eighth Amendment violation by defendant Pardus regarding the co-payments. They note that in 1987, the Colorado legislature enacted mandatory co-payment charges for inmates "to discourage inmates from seeking unnecessary medical services." § 17-1- 113(1)(a), C.R.S. (2004). Furthermore, defendants point out that:
  As shown on a Memorandum dated July 28, 2004, from Defendant Pardus to CDOC offenders, attached to Plaintiff's Complaint as an exhibit, new co-pay charges were instituted on July 26, 2004. According to CDOC's response to Plaintiff's Step 3 Grievance of the co-pay charges, the increase in co-pay charges do "not exceed the direct and indirect cost of the medical, dental, or optometric services that are rendered," as required by the statute. Also, no increase had been made to the co-pay charges in eight years, and the charges had been evaluated by CDOC Clinical Services in comparison to amounts charged by corrections departments in other states.
(Docket No. 26 at 12).

The court finds that the plaintiff has not alleged facts which state an Eighth Amendment claim regarding the co-payments. Significantly, in this case, the plaintiff has not alleged that he has ever been denied medical care for a serious medical need because of his inability to make a co-payment or that he has been deprived of needed hygiene items; instead, he complains about having to make choices. *See Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir.1996) (Inmate plaintiff asserted lack of hygiene items cause his gums to bleed and recede and tooth decay that eventually had to be treated by a dentist and thus raised a genuine issue of material fact in regard to whether prison officials' alleged denial of hygienic items caused plaintiff serious harm.).

The court finds that as long as the inmate receives access to necessary medical care, there is no reason why the State cannot apply a minimal charge to the inmate's account and recover costs when he has the ability to pay. *See McCall v. Johnson County Sheriff's Dept.,* 2003 WL 21716433 (10th Cir. July

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 9
Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)
**(Cite as: 2006 WL 650131 (D.Colo.))**

25, 2003) ("It is clearly constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay."); *Breakiron v. Neal,* 166 F.Supp.2d 1110, 1115 (N.D.Tex.2001) ("Deducting payments from a prison trust account does not of itself violate the Eighth Amendment's prohibition against cruel and unusual punishment. 'There is ... no general constitutional right to free health care.' ... Charging inmates for medical care, furthermore, is not *per se* unconstitutional."). The court agrees with the Third Circuit, which has held "that there is nothing unconstitutional about a program that require[s] that inmates with adequate resources pay a small portion of their medical care." *Reynolds v. Wagner,* 128 F.3d 166, 174 (3d Cir.1997) (quotation omitted). In *Reynolds,* the circuit court "reject[ed] plaintiff's argument that charging inmates for medical care is *per se* unconstitutional. If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.' ... Instead, such a requirement simply presents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world." *Id.*

*11 In the instant case, the CDOC regulation concerning the Offender Co-Payment Program specifically mandates that "[a]ll offenders will have access to health care regardless of their ability to pay. Unimpeded access to Clinical Services by offenders will be assured by requiring approval or denial of services be made by health care professionals." AR 700-03(I). Similarly, the CDOC regulation concerning indigent offenders provides in relevant part that "[a]ll offenders will have access to necessary health care, regardless of indigency status or ability to participate in a co-pay program." AR 850- 14(IV)(C)(3). *See Words v. Graves,* 1997 WL 298458 (D.Kan. May 28, 1997) (Finding that a regulation requiring medical co-pays suffered from no constitutional infirmities, noting that it mandated that "[n]o inmate shall be refused medical treatment for financial reasons.") (and cases cited therein); *Johnson v. Department of Public Safety & Correctional Svs.,* 885 F.Supp. 817, 820 (D.Md.1995) (same). In addition, a co-payment is not charged for every medical or dental appointment. The regulation contains a lengthy list of general exclusions to the medical co-payment fee, i.e., follow-up appointments initiated/scheduled by a health care provider; referrals to specialists/sub-specialists, x-ray; any request or appointment initiated/scheduled by medical or dental staff. AR 700-30(IV)(2). *See Negron v. Gillespie,* 111 P.3d 556 (Colo.Ct.App.2005) (Trial court found that as long as the Colorado inmate was not denied medical care for a serious medical need, the CDOC could properly charge him a co-payment. Court of Appeals disagreed with the inmate that the trial court erred in denying his claim for mandamus relief, finding, *inter alia,* that any claim that the co-payments are unreasonable in light of the inmate's monthly income could not succeed in the absence of a showing, not present in that case, that the inmate had unsuccessfully sought from the CDOC a waiver of the applicable co-payment and that the inmate had not alleged that he was denied treatment for a serious medical need because of his inability to make a co-payment.). *See also Breakiron v. Neal,* 166 F.Supp.2d at 1115 ("The state has a legitimate interest in the efficient use of prison resources. The Co-pay Policy accomplishes this goal by applying negative reinforcement to the human tendency to overuse health care services paid for by a third party. This is the very same, common sense reason that many health care systems in this country have implemented co-pay policies. Co-pay policies are designed to encourage universal, but efficient, access to medical care.").

In addition, the CDOC regulation concerning indigent offenders provides that "[u]pon determination by the living unit supervisor, hygiene items may be issued regardless of indigency status." AR 850-14(IV)(D). Plaintiff has not alleged that he was unable to purchase necessary hygiene items due to a co-payment and was then refused issuance of hygiene items by his living unit supervisor. Merely requiring inmates to manage and budget their resources does not by itself constitute an Eighth Amendment violation.

*12 WHEREFORE, for the foregoing reasons, it is hereby

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)

**(Cite as: 2006 WL 650131 (D.Colo.))**

Page 10

RECOMMENDED that the Defendants' Motion to Dismiss (Docket No. 26) be granted.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed.R.Civ.P. 72(b), *Thomas v. Arn,* 474 U.S. 140, 148-53, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dep't of Corrections,* 183 F.3d 1205, 1210 (10th Cir.1999); *Talley v. Hesse,* 91 F.3d 1411, 1412-13 (10th Cir.1996).

Not Reported in F.Supp.2d, 2006 WL 650131 (D.Colo.)

**Motions, Pleadings and Filings (Back to top)**

• 1:05cv00405 (Docket) (Mar. 03, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.