IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN

JESSE (JESUS) MONTEZ, *et al.,*

    v.

BILL OWENS, *et al.,*

        Defendants.

---

**PLAINTIFF CLASS' RESPONSE TO DEFENDANTS' BRIEF REGARDING MEDICAL CO-PAYS (DIRECTED TO THE HONORABLE JUDGE KANE)**

---

The Plaintiff Class, through undersigned counsel of record, Paula Greisen, Esq., of the law firm of King & Greisen, LLP, hereby responds to Defendants' Brief Regarding Medical Co-Pays:

## I. SUMMARY

In February 2005, over a year after the Remedial Plan was agreed to by the parties and entered as an order of the Court,[1] the DOC adopted a policy, Administrative Regulation 700-30, which imposes additional medical fees on inmates with diabetes for the daily treatment of their serious medical needs.[2] Thus, if an inmate with diabetes feels he or she is suffering from low or high blood sugars and needs an additional fingerstick, he is charged $5.00; if he needs glucose tablets, he is charged $5.00; if he needs to have his insulin prescription refilled, he is charged $5.00; if he feels like he is crashing, *i.e.*

---

[1] The Remedial Plan was made an order on the Court on August 27, 2003.

[2] As explained in Plaintiff's Motion Regarding Legality of the DOC's Medical Co-pay Program and the Underlying Colorado Co-Pay Statute, docket 2234, the DOC regulation at issue was adopted to implement the mandate of C.R.S. § 17-1-113. However, that statute specifically allows DOC to waive the co-pays for services as decided by DOC. C.R.S. § 17-1-113(4)(d).

suffering from extremely low blood sugar, and needs immediate medical care, he will be charged either $5.00 or $10.00 depending on whether medical staff agree there is an "emergency." If the inmate is wrong, and medical staff determines it was not a true "emergency," the inmate is charged $10.00. Given that inmates earn a maximum of sixty cents a day in DOC if they have a job, the policy of imposing these charges (in addition to the chronic care charges already incurred by inmates with diabetes) effectively deters inmates with diabetes from receiving medical care under life-threatening circumstances or alternatively, driving them into serious debt that contradicts ultimate penological objectives. *See Beerheide v. Suthers*, 82 F.Supp.2d 1190, 1198 (D. Colo. 2000) (charging co-pays that run an inmate into serious financial debt is contrary to the penological objective of rehabilitation.) The evidence before the Court at the compliance hearings in this case shows that inmates with diabetes routinely forego necessary medical care because of the enormous cost imposed on them for constitutionally mandated medical treatment. This particular hardship resulting from the assessment of co-pays for ongoing, sometimes daily, medical needs of diabetics has had the unintended, but no less unlawful result of adversely impacting inmates with diabetes. This policy adopted by DOC creates a disparate, discriminatory impact on inmates with diabetes in violation of the American with Disabilities Act, the Rehabilitation Act ("ADA"), and the Remedial Plan.

    The other practical implication of DOC Administrative Regulation 700-30 with respect to how it affects inmates with diabetes is that it impinges on other constitutional rights of these inmates unrelated to medical care, specifically, their Eighth Amendment right to be free from cruel and unusual punishment (including having access to basic hygiene items), their First Amendment right to access the courts and their Sixth

Amendment right to access counsel because their limited funds are exhausted by the imposition of repeated co-pays.

## ARGUMENT

**A.  The Remedial Plan Prohibits Discrimination Against Individuals with diabetes.**

The DOC first argues that the Remedial Plan does not specifically exempt diabetics from the co-pay policy and thus the Plaintiff Class waived any right to seek redress for the impact of this current discriminatory policy.  Docket 2233 p. 5-6.  This argument misses the mark.

The first paragraph of the Remedial Plan states:

> It is the policy of the Colorado Department of Corrections (DOC) to provide inmates with disabilities, with or without reasonable accommodation, access to its programs and services consistent with legitimate penological interests. No qualified inmate with a disability, as defined in Title 42 of the United States Code, Section 12102 shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the DOC or be subjected to discrimination.

Remedial Plan I, p.1.

Thus, the Remedial Plan clearly prohibits DOC from discriminating against inmates with disabilities.  One form of discrimination is the implementation of policies that have a disparate impact on persons with disabilities.  In this case, DOC established a policy after the effective date of the Remedial Plan which has a disparate impact on a protected category – persons with diabetes.  Although the policy appears facially neutral, it has a unique effect on person with diabetes because those individuals must have daily

3

medical attention to survive.  See e.g. *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996).
[3]

The Plaintiff Class is not seeking to modify the Remedial Plan but rather to enforce the basic premise of that Plan – that DOC cannot continue implementing policies that have the effect of discriminating against inmates with diabetes.

DOC's contention that Plaintiffs should be barred from raising this issue because it was not addressed in the Remedial Plan is a red-herring.  None of the myriad of policies that Plaintiffs believed were discriminatory were specifically singled out in the Remedial Plan – that was not the design of the Plan.  The Plan simply does not go through every policy at DOC to determine which was illegal and needed to be changed.  To the contrary, the Plan sets out general parameters under which DOC must adhere to come into compliance with the law.  The overall mandate of the Remedial Plan was that DOC shall not discriminate against inmates with disabilities, in any form, shape or manner.  If DOC continues to adhere to a policy that does perpetuate such discrimination, it will not be in compliance with the express terms of the Plan.  DOC's policy of charging inmates with diabetes every time they require additional blood sugar testing, medical attention, or prescription refills has a disparate impact on these persons with disabilities and thus violates the express terms of the Remedial Plan.

**B.  The DOC's Argument that Co-Pay Policy is Legal Is Based on Narrow Findings of Non-Binding and Distinguishable Cases.**

DOC also argues that the co-pay regulation is constitutional in reliance on a non-binding Colorado state appellate decision, *Negron v. Gillespie,* 111 P.3d 556 (Colo. App.

---

[3] Cited and discussed in Plaintiff Class' Motion Regarding Legality of the DOC's Medical Co-Pay Program and the Underlying Colorado Co-Pay Statute, docket 2234.

4

2005).[4]  In *Negron*, inmate Benito Negron, acting *pro se*, sought mandamus relief under Colo. R. Civ. P. 106(a)(2) claiming that the DOC's 13-day wait in allowing him to see a nurse for a headache violated his Eighth Amendment right and that the medical co-pay of $3.00 he was charged to see the nurse was excessive.  *Id.* at 558.

In ruling that the co-pay was not excessive, the Colorado Court of Appeals noted the following distinguishable facts:

First, at the time the case was brought, the DOC had not yet promulgated any final rules on when co-pays would be assessed.  Accordingly, the Court did not examine, much less rule on the constitutionality of the terms of AR 700-30, the AR at issue here.  *Id.,* at 559.

Second, the Colorado Court of Appeals noted that Negron had failed to request a waiver of the co-pay.  *Id.*, at 559.  The Court then relied on this fact in holding that the $3.00 co-pay was not excessive in light of Negron's allowable earnings.  *Id.* ("any claim that the copayments are unreasonable in light of Negron's monthly income of five dollars cannot succeed in the absence of a showing, not present here, that Negron has unsuccessfully sought from the DOC a waiver of the applicable copayment.")

As opposed to the situation in *Negron,* the current version of AR 700-30, does not allow any inmate to request a waiver of the medical co-pay.  Moreover, the case involved a one-time complaint, relief for a headache, which is hardly comparable to the type of necessary daily, and often life-threatening, medical services at issue in this case.  Thus, the holding in *Negron* is not applicable to the Plaintiff Class' instant request for relief.

---

[4] Although the DOC also argues that the state can require inmates to pay co-pays for medical care that is not the issue here.  Plaintiffs are not disputing the DOC's right to charge the six-month chronic care co-pay, but rather are only disputing the additional co-pays required of diabetics for the daily treatment of their serious medical needs.

The DOC also argues that policies similar to Colorado's co-pay policy have been upheld in other jurisdictions. The cases cited by DOC, however, do not address the systemic problem presented in this case. For instance, DOC cites *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 408 (9th Cir. 1985), in which an inmate with a knee injury alleged that the $3.00 co-pay imposed by the correctional facility denied him medical treatment and violated various other constitutional rights. The Ninth Circuit dismissed these claims stating that the inmate had not alleged he was denied medical care because he was unable to pay the co-pay and had not provided any facts in support of his claim. Here, the Class argues instead that the co-pay policy, as applied to inmates with diabetes, actually does have the effect of depriving them of necessary medical care, as well as depriving them of access to canteen and personal hygiene items, phone calls, and postage, which thereby deprives them of access to their attorneys, the courts, and their families. In essence, the regulation requires inmates with diabetes to pit one constitutional right against another -- choosing to exercise their rights to access the courts/counsel/family/hygiene items and the right to counsel against their right to receive medical treatment.

The DOC also relies on *Johnson v. Department of Pub. Safety & Corr. Servs.*, 885 F. Supp. 817, 821-22 (D. Md. 1995). In *Johnson*, a Maryland District Court upheld a $2.00 medical co-pay policy **because** of its co-pay exemption for **"necessary treatment."** (emphasis added). In fact, the policy at issue in *Johnson* provided that co-pays also would not be charged for emergency visits or for chronic care patients. Given these exceptions, the Court upheld the policy stating:

> The policy is flexible and makes a wide variety of
> exceptions to avoid imposing unnecessary hardship on

6

> seriously or chronically ill prisoners. In light of the numerous exceptions, it appears that the only inmates likely to be subjected repeatedly to the co-pay requirement are those who overuse prison medical services with frequent visits for minor complaints.

*Id*. at 820.

Thus, the policy upheld in *Johnson* is distinguishable from Colorado's co-pay statute because there is nothing in the DOC AR that provides an exemption from co-pays for "necessary treatment" or for emergencies or chronic care patients.[5] See AR 700-30[6] and C.R.S. §17-36-113.

In addition, none of the cases from the other jurisdictions address the issue of whether their co-pay policies had the same or similar disparate impact the Colorado DOC policy has on inmates with diabetes. For example, one major reason why inmates with diabetes in Colorado seek more medical attention is because diabetic care is not managed properly by the DOC. As the Court is aware, the DOC stipulated that it is still not in compliance with substantive requirements of the Remedial Plan.[7] Thus, the DOC has <u>admitted</u> that it still does not offer the protections offered to inmates with diabetics including medical services and accommodations as required by the Plan. There is no suggestion that the departments of corrections in the jurisdictions cited by the DOC managed (or mismanaged) diabetic care for inmates in the same manner as the Colorado DOC. Therefore it is impossible to ascertain whether the inmates in other jurisdictions suffer from the same disparate impact caused by the Colorado co-pay policy as the inmates in the Colorado DOC.

---

[5] DOC regards all inmates with diabetes as requiring "chronic care."
[6] See Docket 2233, p. 4 for the list of services the DOC chose to except from the broad mandate for assessing co-pays on all medical treatment propounded by the Colorado Legislature under C.R.S. §17-36-113.
[7] The parties agreed that the DOC is in compliance with the architectural potions of the Plan.

7

### C. **There are Legitimate Reasons to Waive Co-pays for Inmates with Diabetes.**

Finally, the DOC argues that it has been given exclusive authority by the legislature to determine when co-pays will be waived and that it would be "unfair" to waive co-pays for certain illness such as diabetes but not for other illnesses.   Again, this argument misses the mark.

First, the DOC is not *legally* required to treat all illness the same and in fact does not do so.  To the contrary, the DOC has determined that treatment for certain conditions will be exempted from co-pays, such as dialysis, treatment for wounds, treatment to protect the spread of contagious diseases, pregnancy related visits, and sexual assault examinations.  *See* AR 700-30, IV-B.  Thus, the argument that the DOC cannot treat different illnesses or conditions differently is contradicted by the DOC's own regulation.

The DOC's argument that "[t]here is no logical reason why inmates with diabetes should be entitled to free medical care while inmates with Hepatitis C or other chronic medical conditions must pay a reasonable co-pay" Docket 2233, p. 9 is flawed.  Diabetes, a condition that requires constant daily monitoring and treatment to prevent death, is fundamentally different from other diseases that can be managed with less frequent or six month check-ups.  Moreover, as repeatedly stated, the Class is not asking for free medical care – but rather is asking that only a reasonable charge (the chronic co-pay charge) be assessed for that necessary care.[8]

---

[8] In support of its objection to modifying the co-pay charges for diabetics, the DOC cites *Boblett v. Angelone*, 942 F. Supp. 251, 253-54 (W.D. Va. 1996) which held that inmates have no right to free medical care. Again, the Plaintiff Class has not once made a request for free medical care.

8

Finally, the DOC asserts that making a co-pay exemption for diabetic services would subvert the goals of the 1998 amendments to § 17-1-113 by failing to discourage inmates from seeking unnecessary medical services.  (Docket 2233, p. 9).  The DOC offers absolutely no proof of this assertion.  The evidence has shown, however, that the DOC's co-pay policy with respect to inmates with diabetes effectively discourages those persons from receiving *necessary* medical services for their disability.  On the other hand, there is absolutely no evidence that including the care necessary for diabetics in the six-month chronic care charge will result in hoards of diabetics seeking unnecessary medical treatment.    Because the co-pay policy has the effect of discriminating against inmates with disabilities by imposing a disparate impact on them and burdens constitutional protections, it is thus prohibited by the Remedial Plan and the law – regardless of the legislative goals it was designed to implement.

## **CONCLUSION AND REQUEST FOR EVIDENTIARY HEARING**

Plaintiff Class respectfully requests that this Court find that the DOC's policy imposing multiple co-pays on inmates with diabetes to be in violation of the Remedial Plan, the ADA as well as the Constitution and that an evidentiary hearing be held on this matter if the Court determines further evidence is needed to support Plaintiffs' request for relief.

RESPECTFULLY SUBMITTED on this 5th day of October, 2006.

        KING & GREISEN, LLP

        *s*/ Paula D. Greisen
        Paula D. Greisen
        1670 York Street
        Denver, CO  80206
        (303) 298-9878,
        (303) 298-9879 (fax)
        greisen@kinggreisen.com

        Counsel for the Plaintiff Class

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 5th day of October 2006, I electronically filed the foregoing **PLAINTIFF CLASS' RESPONSE TO DEFENDANTS' BRIEF REGARDING MEDICAL CO-PAYS (DIRECTED TO THE HONORABLE JUDGE KANE)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses via U.S. Mail, addressed to:

Beth McCann, Esq.
James X. Quinn, Esq.
Jess Dance, Esq.
Assistant Attorney General
Civil Litigation and Employment Law Section
1525 Sherman St., 5th Floor
Denver, CO 80203
beth.mccann@state.co.us
james.quinn@state.co.us
jess.dance@state.co.us

　　　　　　　　　　　　　　　　　　　　　　　__*s*/ Paula Greisen____
　　　　　　　　　　　　　　　　　　　　　　　Paula Greisen