IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-450
Category II
Claimant: Michael A. Lopez, #47961
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

      THIS MATTER comes before the Special Master on the claim of Michael A. Lopez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a response to the motion of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on September 10, 1981. It is unclear from the documents submitted by both sides as to the number of DOC facilities in which Claimant has been placed. He has been at AVCF since he filed his claim.

Claimant checked only the box for vision impaired on his initial claim form. He stated, in part, in that form as follows:

> My disability is my poor eyesight. I've been wearing glasses since I was seven years of age but my sight began to worsen during my early teens. Without glasses, I cannot read a sign posted more than 3 feet away and I get intense headaches if I'm without glasses for longer than an hour. This I discovered in my early 20s and has been the case ever since, only more so the older I get. In sunlight, my sight is hindered greatly, even with glasses so I've had transitional lenses for the last 15 years or so. Having the transitional lenses has always made it much easier to see in the daytime and I haven't had to get my eyes checked as often as I used to for new prescriptions, although I am due for an up-dated prescription.

In response to the question in the initial claim form concerning discrimination by DOC or its staff, Claimant stated as follows:

> Ever since DOC changed over to the "Oakley" style of eye wear, it has been difficult for me to obtain any kind of filtered lenses, never mind that the particular frame is much too cumbersome and heavy on my face. Hence my reason for buying my own personal eye wear from an optical outlet in Florida. My family has been buying them for me over the years. Now, the DOC has posted a ruling that says "no prescription sunglasses will be allowed in any DOC facility after 6-7-04, and that the rule includes any kind of tinted lenses, photo lenses and transitional lenses," of which I own two (2) pair. This rule was posted in regard to an inmate taking issue with medical staff after entering the infirmary with his glasses on which the staff deemed "prescription sunglasses" and asked the inmate to remove the glasses. When he refused, staff stated that the inmate would get a report if he didn't relinquish the eye wear at that time. The inmate said he would file a lawsuit because the staff accused is type of glasses as, supposedly, being "gang related." The inmate then said it was also a case of race discrimination because "only Mexicans" had the type he wore. The matter was taken to higher authorities who issued the edict that, after 6-7-04, no sunglasses would be allowed unless they were purchased from the canteen. All types of lenses would fall under the rule and none would be given a "grandfather" clause, which means that those inmates who currently have a disallowed item would be exempt from any action. This clause is usually applied in most cases but was not afforded the inmates this time.

I believe I'm being discriminated against because the administration will not even listen to reason in so far as differentiating between what are sunglasses and transitional or filtered lenses and why the many should suffer for the few.

DOC has not given even the slightest sensible reason why they will arbitrarily confiscate the eye wear, yet insist we buy sunglasses from the canteen or "clip-on" sunglasses that not only scratch lenses but do not fit most eye wear except for state issue glasses. I don't wear state issues glasses.

Claimant was provided a supplemental form to complete and file. He did so and reiterated what had been set forth in the initial claim form. He indicated in the supplemental form that he was working in the hobby shop and needed his glasses for his work. He also indicated that his damages arise from being denied the opportunity to wear the glasses that he has had for fifteen years.

Defendants have filed a motion to dismiss. Their argument is that Claimant is not disabled as defined by the Settlement Agreement. They argue further that Claimant has alleged that he can see with glasses.

As noted previously, Claimant was granted up to and including June 24, 2006 in which to respond to the motion. Claimant has filed nothing in response to the motion.

## III.

Defendants' motion requires that the Special Master accept as true all reasonable allegations set forth by Claimant. The standard used will be the same as applied in determining whether a motion to dismiss should be granted under Fed.R.Civ.P. 12(b).

The Settlement Agreement provides a definition as to vision impairment.

3. Permanent Vision Impairment

Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

The allegations of Claimant clearly reflect that he does not meet this definition. He is able to see with glasses. He has received updated prescriptions over the years and, in fact, has chosen to secure his own eye wear.

The Settlement Agreement further provides that a claimant must have "a permanent disability/impairment which substantially limits his or her ability to perform a major life activity." This is the standard under the ADA and Rehabilitation Act. A major life activity must be affected by the disability. Claimant's allegations do not reflect that there has been a disruption of a major life activity, as Claimant acknowledges that he can see with corrective lenses. Claimant cannot prevail on his claim under the ADA, accepting as true all that he has alleged.

Finally, Claimant has not alleged any act of discrimination related to his claimed disability.

5

Claimant is not the only inmate to file a claim concerning the tinted lenses issue. Claimant has not alleged that he has been singled out for discrimination because of a vision disability. On the contrary, Claimant has alleged that every inmate is being treated the same. If an inmate has tinted lenses, they will be taken away. The DOC decision may not make any sense. It is certainly easy to raise the issue of gangs has a justification for any penal decision. Claimant has not alleged that he was singled out and treated differently from other inmates.

Defendants' motion will be granted. Claimant retains the right to pursue other legal rights to maintain his eye glasses. Claimant has not alleged in his claim facts that would allow him to prevail as a matter of law.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted and the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 15, 2007.**

SIGNED this 9th day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master