IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-570
Category II
Claimant: Charlie J. Jones, Jr., #111042
Address of Claimant: 17192 Adriatic Drive, Apt. J-103, Aurora, CO 80013

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Charlie J. Jones, Jr. (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time that he filed his claim. Claimant has been placed on parole and is no longer in a DOC facility.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants. Claimant has not filed any reply to Defendants' response.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who believe that they are mobility impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on October 26, 2001. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear how many facilities Claimant was in prior to being placed on parole. Claimant was at the Fort Lyon Correctional Facility (FLCF) at Ft. Lyon, Colorado when he filed his claim. Claimant had been placed previously at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

On his initial claim form, Claimant checked only the box for mobility impaired. Claimant stated in that form, in part, as follows:

> I have heel spurs and chronic pain and I'm unable to walk without pain and discomfort and I'm dependent on pain medication to sleep at night. I'm restricted

>from squats and only allowed to stand for (45 min) forty-five minutes. I can't wear a show on my right foot. I have headaches 4-5 times a week. The boots have been an issue for two years now and now I'm being forced to wear them. Since the injury(s) caused by the boots my leg has been swollen and discolored. I don't wear shorts due to the irregular size of my right leg and sores. I don't walk anymore or even ride the stationary bike. I've cried myself to sleep behind the pain and the thought of how I'm not going to be able to provide for my 4 babies because I do construction for a living. My weight goes up and down and the weight causes my heart to beat faster,

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>I've had three (3) doctors state I need shoes and made a request and DOC denied. I've asked to see a specialist and was turned down by DOC heads (John Does). My injuries are ones that require special foot wear and DOC has denied me "softer different" or special shoes after the doctors stated I needed them. There are several inmates in here that have had special shoes ordered for them through DOC and I was told they don't have the funding, and I don't meet the requirements of the "Inmate Benefit Package."

Claimant was provided a supplemental form to fill out. Claimant submitted that form and also included documents from his medical file. In his supplement form, Claimant stated, in part, as follows:

>I'm able to walk with the aid of the pain meds. I'm up till four to five in the morning because of the pain; I feel like I'm walking on rocks as well as, sitting down for about five to ten minutes and either my knee or my ankle giving out and the constant pain from the boots rubbing against my outer right foot and the boots.

>I've gone from playing sports and walking in the evenings to barely getting around the facility. I have to endure the pain when I'm around certain groups of people so that they don't think I'm able to be taken advantage of; I've for the first time heard that I was obese and need to loose weight and it's hard when you're having trouble walking or even standing. I'm tired most of the time. I have shorts that I've worn twice since being in DOC and with the swelling of my leg, foot, ankle and the constant sores; I've lost motivation and the confidence to attempt anything.

>I asked for stronger medication and better shoes, with (Heel spurs) they call for the "experimentation of athletic shoes to find a pair that is comfortable and gives you fewer symptoms." On several occasions; on 6-14-04 I received a "Message from Medical." My request for different shoes, softer, etc. was denied by headquarters.

Attached to his supplemental form are copies of grievances and medical records. In response to one grievance, Dr. Wilmer Perez, M.D. stated on May 23, 2003 that Claimant needed tennis shoes

because of the condition of his feet. On June 8, 2004, Dr. Patty Beecroft, M.D. responded on a grievance that an ulcer had enlarged on Claimant's foot and that he would have to wear shower shoes since no tennis shoes or special boots were available. On one grievance response, Claimant was told he could buy tennis shoes from the canteen. On another form, Claimant was advised that medical believed that he only had plantar fasciitis. He was provided a pamphlet on the condition.

Defendants filed a response to the claim. Claimant was granted permission to wear tennis shoes at SCF for six months. Claimant purportedly told medical staff at SCF that he had ordered tennis shoes from the canteen. He was granted various restrictions because of his leg problems. He received a lay-in for one month because of his physical condition in 2002. A heel cup was ordered for him after a diagnosis was made of plantar fasciitis. A prescription shoe was provided to Claimant in February, 2003. He was observed running and kicking a football. He was observed playing flag football in October, 2003. In June, 2004, Claimant was observed playing softball in the yard.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each question will be examined separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, the claimed impairment or disability must be examined. Claimant has indicated on his claim form that he is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There has been no evidence submitted by either side that Claimant was in a wheelchair at any time while in DOC custody. Claimant does not meet the first provision for mobility impairment.

The second part of mobility impairment is having a permanent lower extremity condition that "substantially limits walking." There is no question that Claimant has had problems with his feet. He has been diagnosed with plantar fasciitis. He had ulcers on his feet at times. In order to meet the criteria of the Settlement Agreement, a claimant must show that the disability he has substantially affects a major life activity. This is a requirement of the ADA and Rehabilitation Act, and the Settlement Agreement merely incorporates that legal requirement.

Since this is a Category II claim, the documentation submitted by both sides must be utilized for adjudication of the claim. The burden of proof is upon Claimant to show that he has a disability recognized by the Settlement Agreement and that the disability affects a major life activity. Defendants have submitted documentation to show that Claimant continued to engage in sports while in DOC custody. *Exhibit FF (playing softball in the yard); Exhibit AA (playing flag football in the yard); Exhibit Y (hitting softballs in the yard).* Claimant has not rebutted the evidence submitted by Defendants.

The evidence presented by both sides reflects that Claimant does have health issues with his feet. The evidence does not substantiate that a major life activity has been affected by the condition of the feet. Contrary to Claimant's assertions in his supplemental form that he was barely able to get around, it is clear that he was able to play sports and to walk. Under the requirements of the Settlement Agreement, Claimant had to show that he had a disability that affected a major life activity. Claimant has not carried that burden.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is no, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to answered, as Claimant is not a member of the class.

IT IS HEREBY ORDERED that the claim of Charlie J. Jones, Jr. is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 22, 2007.**

SIGNED this 9th day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master