92 - cv- 870 EWN-DES

I was on SSI Three years
before I went to Prision and
DOC New that. I Told them
that I Could not work but
the Forest me to work anyhow

I am Now back on SSI
Here is the Paper work you
Need For my Case

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 10 2006

GREGORY C. LANGHAM
CLERK

Thank you

Harold D Stahl

DOC # 112277     10-5-06

I am on Perement Disibility

My New Address is

Harold Stahl
2972 G Road
Grand Jct, CO
81504

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

Claim Number: 02-309
Category: II
Claimant: Harold Stahl, #112277
Address of Claimant: P.O. Box 40412, Grand Junction, CO. 81504

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER comes before the Special Master on the claim of Claimant Harold Stahl. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.  DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Stahl submitted a claim which was assigned claim number 02-309. The claim is premised on an alleged permanent mobility disability, vision impairment and diabetes

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Stahl first entered CDOC custody in February 2002. It appears that he was released from CDOC custody in 2005. It further appears that for some of the time that Mr. Stahl was in CDOC custody, he was housed at the Freemont Correctional Facility (FCF) and the Four Mile Correctional Center (FMCC).

4.      Claimant suffers from osteoporosis and chronic pain. He complains of severe shoulder pain but also asserts that he has pain in his hips and has lost feeling in his feet. Claimant Stahl also contends that he may have diabetes and that his eyesight has gotten worse due to a lack of proper medical care.

5.      Claimant asserts that CDOC failed to provide proper medical care for his degenerative joint disease and diabetes and failed to supply him with proper medications. He further contends that he has been denied medical shoes and a comfortable mattress.

Stahl points out that he slipped in the kitchen on a waxed floor injuring his hip and shoulder. In addition, Mr. Stahl alleges that he was required to work even though his disabilities prevented him from working; and that he was forced to attend GED classes even though he could not sit for long periods of time. Finally, he complains that he was not provided with reading assistance in his GED class and, as a result, he failed his GED test.

6.    Claimant Stahl's medical records indicate that he suffers from chronic joint disease and arthritis. The medical records discuss Mr. Stahl's shoulder problems, but do not describe in any detail problems with his legs, feet or hips. An examination in June of 2004 revealed bilateral hip degenerative joint diseas, and indicated that both hip joints were mildly narrowed with several areas of calcification around the right hip. After the fall in the kitchen, x-rays of his ankle revealed no acute problems.

### III. CONCLUSIONS OF LAW

1.    The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.    The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3.      The Special Master finds and concludes that Claimant Stahl has failed to sustain his claim that he suffers from a permanent mobility disability, a permanent vision disability or diabetes. While Claimant does suffer from degenerative joint disease and arthritis, no evidence was presented showing how the degenerative joint disease and arthritis in his hips affects any major life activity. Specifically, no evidence was presented that Claimant's hip problems prevent him from walking or climbing stairs or that these problems substantially limit the major life activity of walking.

Likewise, while Claimant asserts that he has vision problems, there is no objective evidence in the record to confirm this. There is also nothing in the record establishing that Claimant's vision is so poor that it substantially limits any major life activity.

Finally, there is no mention in Mr. Stahl's medical record that he has been diagnosed as suffering from diabetes. Furthermore, even if Mr. Stahl suffers from diabetes, no evidence was presented that his diabetes substantially limits his ability to engage in any major life activity.

The Special Master notes that Claimant Stahl does have significant shoulder problems. However, these are outside the scope of the Remedial Plan.

4.      Because Claimant has failed to establish that he has a mobility or vision disability within the meaning of the ADA, the Rehabilitation Act, or the Remedial Plan or that his diabetes constitutes a disability within the meaning of the ADA, the Rehabilitation Act, or the Remedial Plan his claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Stahl's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before November 13, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

5

SIGNED this 13th day of September, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER dated this 13th day of September, 2006 to the following:

Mr. Harold Stahl, #112277
P.O. Box 40412
Grand Junction, CO 81504

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

Susan L. Carter

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Hearings and Appeals
Suite 701, South Tower
121 S Tejon Street
Colorado Springs, CO 80903-2216

Date: MAY 2 4 2006

Harold D. Stahl
2972 G Road
Grand Junction, CO 81504

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case.  Please read this notice and the decision carefully.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so.  To do that, the Council must mail you a notice about its review within 60 days from the date shown above.  Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the decision.  You must make the request in writing.  You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office.  You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255**.  Please put the Social Security number shown above on any appeal you file.

**Time to File an Appeal**

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless

See Next Page

you show you did not get it within the 5-day period.  The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time to Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

## How an Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case.  These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree.  The Council may review your case for any reason.  It **will** review your case if one of the reasons for review listed in our regulation exists.  Section 416.1470 of the regulation lists these reasons.

Requesting review places the entire record of your case before the Council.  Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case.  The Council may also send it back to an Administrative Law Judge for a new decision.

## If No Appeal and No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review.  My decision will be a final decision that can be changed only under special rules.

See Next Page

Harold D. Stahl (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)                    Page 3 of 3

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office.  If you visit an office, please bring this notice and decision with you.

The telephone number of the local office that serves your area is (970) 245-2627.

Its address is Social Security, 744 Horizon Court, Room 120, Grand Junction, CO 81506.

Peggy S. Ball
Administrative Law Judge

cc:   Jack Shoffner
      Attorney-at-law
      300 Main St., Ste 103
      Grand Junction, CO 81501

## MEDICAL ASSESSMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)

| NAME OF INDIVIDUAL | SOCIAL SECURITY NUMBER |
|---|---|
| Harold Cross-Stahl | 523 - 76 - 2777 |

To determine this individual's ability to do **work-related activities on a regular and continuous basis,** please give us your opinions for each activity shown below:

1. Check the appropriate block;
2. Respond to the questions about the individual's ability to perform the activity; and
3. Identify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, symptoms (including pain etc.) which support your assessment or any limitations.

Note (1): **REGULAR AND CONTINUOUS BASIS** means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Note (2): **OCCASIONALLY** - Very little to one-third of the time.  **FREQUENTLY** - from one-third to two-thirds of the time.  **CONTINUOUSLY** - more than two-thirds of the time.

**It is important that you relate particular medical findings to any assessed limitation in capacity: The usefulness of your assessment depends on the extent to which you do this.**

---

## I. ARE LIFTING/CARRYING AFFECTED BY ANY IMPAIRMENTS?  ☐ No  ☑ Yes

If yes, check the boxes in the table representing the individual's ability to lift.

| Lift | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| A.  Up to 10 lbs: | | ✔ | | |
| B.  11 to 20 lbs: | ✔ | | | |
| C.  21 to 50 lbs: | ✔ | | | |
| D.  51 to 100 lbs: | ✔ | | | |

If yes, check the boxes in the table representing the individual's ability to carry.

| Carry | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| A.  Up to 10 lbs: | | ✔ | | |
| B.  11 to 20 lbs: | ✔ | | | |
| C.  21 to 50 lbs: | ✔ | | | |
| D.  51 to 100 lbs: | ✔ | | | |

Please identify the medical findings that support this assessment? (unless a narrative report is attached)

Rom limitations multiple joints
Limited ambulation speed
Decreased balance
Decreased strength
Decreased cardiorespiratory fitness
Medical conditions - DDD, Asthma, HTN, Rot
cuff tear (R), Diabetic neuropath

II. ARE SITTING/STANDING/WALKING AFFECTED BY ANY IMPAIRMENTS?   ☐ No   ☑ Yes

If "yes," please circle how many hours the individual can:

| | At One Time without Interruption | Total in an 8 hour work day |
|---|---|---|
| A. Sit | 0 (1) 2 3 4 5 6 7 8 | 0 1 (2 3) 4 5 6 7 8 |
| B. Stand | (0 1) 2 3 4 5 6 7 8 | 0 1 (2) 3 4 5 6 7 8 |
| C. Walk | (0 1) 2 3 4 5 6 7 8 | 0 (1 2) 3 4 5 6 7 8 |

If you have indicated that the individual is unable to sit, stand, or walk for at least 2 hours at one time without interruption, please state how long a change of position (without leaving the work station) would be required.

a. If sitting, how long would an individual have to stand before resuming sitting _10 min_
b. If standing, how long would an individual have to sit before resuming standing _15 - 30 min_

Please identify the medical findings that support this assessment? (unless a narrative report is attached)

As on pg 1
Neck & back pain
Cervical stenosis, lumbar DDD

III. ARE THE CLAIMANT'S USE OF HANDS OR FEET AFFECTED BY ANY IMPAIRMENTS?
☐ No   ☑ Yes

If yes, please complete the following:

N = Never          O = Occasionally          F = Frequently          C = Continuously

| Claimant can use: | Right Hand | | | | Left Hand | | | |
|---|---|---|---|---|---|---|---|---|
| | N | O | F | C | N | O | F | C |
| REACHING | ✓ | | | | | ✓ | | |
| HANDLING | | ✗ | | | | ✗ | | |
| FINGERING | | ✗ | | | | ✗ | | |
| FEELING | | ✗ | | | | ✗ | | |
| PUSH/PULL | | ✗ | | | | ✗ | | |

| Claimant can use: For operation of Foot controls: | Right Foot | | | | Left Foot | | | |
|---|---|---|---|---|---|---|---|---|
| | N | O | F | C | N | O | F | C |
| | | | | | | ✓ | | |

SENSORY LOSS

Please identify the medical findings that support this assessment? (unless a narrative report is attached)

Reaching - loss of active reach from shoulder
not cuff ®. Handling etc - decreased
stereognosis bilaterally (ability to identify
object in hands )
MED - Shld RTC tear ® DDD ©, (B) Carpal tunnel
Diabetic neuropathy - feet

**IV. ARE ANY OF THE FOLLOWING POSTURAL AND PHYSICAL ACTIVITIES AFFECTED BY ANY IMPAIRMENTS?**   ☐ No   ☑ Yes

If "yes" please complete the following:

| Activity | Never | Occasionally | Frequently | Continuously |
|----------|-------|--------------|------------|--------------|
| Climb | ✓ | | | |
| Stoop | | ✓ | | |
| Crouch | ✓ | | | |
| Kneel | ✓ | | | |
| Crawl | ✓ | | | |
| Balance | ✓ | | | |

**V. DO ANY OF THE IMPAIRMENTS IMPACT THE CLAIMANT'S HEARING OR VISION?**
☐ No   ☐ Yes   *No FORMAL EVAL OF HEARING VISION REPORTS HEARING LOSS ① EAR*

If "yes" please complete the following questions (where appropriate).

1. If a **hearing impairment** is present,

   a. Does the individual retain the ability to hear and understand simple oral instructions and to communicate simple information? ☑ Yes ☐ No

   b. Can the individual use a telephone to communicate? ☑ Yes ☐ No

2. If a **visual impairment** is present,   *BIFOCAL SUPPORT*

   a. Is the individual able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles? ☑ Yes ☐ No

   b. Is the individual able to read very small print? ☑ Yes ☐ No   *CCCL.*

   c. Is the individual able to read ordinary newspaper or book print? ☑ Yes ☐ No

   d. Is the individual able to view a computer screen?. ☑ Yes ☐ No

   e. Is the individual able to determine differences in shape and color of small objects such as screws, nuts or bolts? ☑ Yes ☐ No

Please identify the medical findings that support this assessment. (unless a narrative report is attached)

*IV – Medical impairment as previously outlined*
*V – Based on performance on test & client report*

**VI.   DO ANY IMPAIRMENTS RESULT IN ENVIRONMENTAL LIMITATIONS?**
☐ No   ☑ Yes

If "yes" please place a number in box as to the degree of limitation.

1. Avoid concentrated exposure   2. Avoid even moderate exposure   3. Avoid all exposure.

| Restriction | Yes | No |
|---|---|---|
| Unprotected Heights | 3 | |
| Moving Mechanical Parts | 3 | |
| Operating a motor vehicle | 1 | |
| Noise | 1 | |
| Humidity and wetness | 2 | |

| Restriction | Yes | No |
|---|---|---|
| Dust, odors, fumes and pulmonary irritants | 3 | |
| Temperature - extreme cold | 2 | |
| Temperature - extreme heat | 2 | |
| Vibrations | 3 | |
| Other: Identify: | | |

Please identify the medical findings that support this assessment? (unless a narrative report is attached)

BALANCE LOSS, DECREASED AMBULATION SPEED,
ASTHMA, CARPAL TUNNEL SYNDROME

**VII.   PLEASE PLACE A CHECK IN APPROPRIATE BOXES.**

| ACTIVITY | YES | NO |
|---|---|---|
| Can the individual perform activities like shopping or banking? | ✓ | |
| Can the individual travel without companion for assistance? | ✓ | |
| Is a wheelchair, walker, 2 canes or 2 crutches required to ambulate? | | ✓ |
| Can the individual walk a block at a reasonable pace on rough or uneven surfaces? | | ✓ |
| Can the individual use standard public transportation? | ✓ | |
| Can the individual climb a few steps at a reasonable pace with the use of a single hand rail? | | ✓ |
| Can the individual prepare a simple meal & feed himself/herself? | ✓ | |
| Can the individual care for personal hygiene? | ✓ | |
| Can the individual sort, handle, use papers/files? | ✓ | |

SHOPPING - DIFFICULT
BANKING - ABLE

1 CANE

NEED RAIL, CANE
SLOWED SPEED

VIII.   STATE ANY OTHER WORK-RELATED ACTIVITIES, WHICH ARE AFFECTED BY ANY IMPAIRMENTS, AND INDICATE HOW THE ACTIVITIES ARE AFFECTED.  WHAT ARE THE MEDICAL FINDINGS THAT SUPPORT THIS ASSESSMENT?

IX.   IN YOUR OPINION, ON WHAT DATE WERE ALL THE LIMITATIONS STATED ABOVE FIRST PRESENT? _SEVERAL YEARS PER MEDICAL RECORD_

X.   HAVE ALL OF THE IMPAIRMENTS LASTED OR WILL THEY LAST FOR 12 CONSECUTIVE MONTHS?   ☒ YES   ☐ NO

_Pat Riley PT_
SIGNATURE/TITLE/MEDICAL SPECIALTY

_3/22/06_
DATE

_PAT RILEY PT_
Print Name (Legibly Please)

(Denver OHA Form 1151 - April 2003)

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings and Appeals

## ORDER

| IN THE CASE OF | CLAIM FOR |
|---|---|

Harold D. Stahl
(Claimant)

Supplemental Security Income

(Wage Earner)

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
(Social Security Number)

I approve the fee agreement between the claimant and his representative subject to the condition that the claim results in past-due benefits.

My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

## HOW TO ASK US TO REVIEW THE FEE AGREEMENT DETERMINATION

You or your representative may ask us to review the determination on the fee agreement.  If you decide to ask us for a review, write us within 15 days from the day you get this order.  Tell us that you disagree and give your reasons.
Send your request to this address:

- James R. Rucker
  Regional Chief Administrative Law Judge
  1244 Speer Boulevard
  Suite 600
  Denver, CO 80204

Your representative also has 15 days to write us if he or she does not agree with the determination on the fee agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

Peggy S. Ball
Administrative Law Judge

MAY 2 4 2006
Date

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings and Appeals

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|

Harold D. Stahl
(Claimant)

Supplemental Security Income

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
(Social Security Number)

(Wage Earner)

## JURISDICTION AND PROCEDURAL HISTORY

On January 26, 2005, the claimant protectively filed an application for supplemental security income, alleging disability beginning October 1, 1997. This claim was denied and is now before the undersigned Administrative Law Judge on a timely written request for hearing filed on June 25, 2005 (20 CFR 416.1429 *et seq.*). On April 13, 2006, the undersigned held a Video Hearing (20 CFR 416.1436(c)). The claimant appeared in Grand Junction, Colorado, and the undersigned presided over the hearing from Colorado Springs, Colorado. Robert M. Van Iderstine, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Jack Shoffner, an attorney.

At the hearing the claimant, through his attorney, amended the alleged onset date of disability to May 24, 2005.

The record shows that the claimant was receiving supplemental security income benefits before he was sent to prison, which ceased when the claimant went to prison.

## ISSUES

The issue is whether the claimant is or has been disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from May 24, 2005, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

See Next Page

disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long

See Next Page

enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 *et seq*.).**

**2.   The claimant has the following severe impairments: osteoarthritis of the spine and left knee and diabetes mellitus (20 CFR 416.920(c)).**

The above impairments cause significant limitation in the claimant's ability to perform basic work activities.

**3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).**

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work that does not require overhead lifting; that does not require standing and walking more than two hours of an eight hour day; and does not require exposure to unprotected heights or hazardous machines.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929, SSR 96-4p and SSR 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927, SSR 96-2p, SSR 96-5p and SSR 96-6p.

See Next Page

The medical evidence reflects that the claimant has a history of osteoarthritis of the spine and left knee as well as diabetes mellitus. X-rays in 1999 showed narrowing of the C6-7 intervertegral disk space height. There was no evidence of atlantoaxial or subaxial subluxation and the posterior spinal line was maintained. There was large anterior osteophytes at C5 through C6. There was overgrowth of the facet joints in the lower cervical spine and possible left carotid artery calcification. The diagnosis was degenerative disk and joint disease of the cervical spine (Exhibit 1F). Joan Michener, M.D. examined the claimant in 1999 and opined that he could sit for six hours in an eight hour day and stand/walk for two hours of an eight hour day. The claimant did not use any assistive devices. He could lift 10 pounds maximum. Dr. Michener stated that the claimant could rarely bend, crawl, crouch, kneel or climb; he could occasionally stoop; and he was limited in is ability to reach and push/pull. Dr. Michener based these restrictions on the claimant's arthritis.

The claimant reported that he had been diagnosed with diabetes and began using insulin in 2004, while he was in prison (Exhibit 3F). In 2005 the claimant presented to Marillac Clinic with complaints of worsening arthritic pain. The doctor opined that the claimant's neck and shoulder pain sounded like cervical spinal stenosis with paresthesias radiating down into the arms and hands. The claimant reported pain and swelling in the left knee. The claimant was diagnosed with osteoarthritis with probable cervical spinal stenosis, type diabetes mellitus and diabetic peripheral neuropathy (Exhibits 5F and 6F).

The state agency disability examiner prepared a physical residual functional capacity assessment, assessing the claimant with limitations on stooping, kneeling and crawling. He had limitation in reaching including overhead reaching. The disability examiner is not a physician and the assessment is entitled to no weight as an expert medical opinion (20 CFR 416.927(f) and 416.913(d)(4)). Nevertheless, the Administrative Law Judge notes that the residual functional capacity assessment prepared by the state agency disability examiner is well supported by the record (SSR 96-6p).

In 2006, Pat Riley, PT completed a Medical Assessment of Ability To Do Work-Related Activities (Physical). He opined that the claimant could occasionally lift and/or carry up to 10 pounds and he should never lift and/or carry more than that. The claimant should avoid exposure to unprotected heights, moving mechanical parts, dust, odors and fumes and vibrations. He should also avoid humidity/wetness, temperature extremes and operating motor vehicles. The claimant uses a cane to ambulate and could climb a few steps with the use of a handrail, cane and slow speed. Mr. Riley based these limitations on the claimant's limited range of motion in multiple joints, decreased balance and decreased strength.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are generally credible.

**5.   The claimant is unable to perform his past relevant work (20 CFR 416.965).**

See Next Page

The claimant's past relevant work as a dish washer is described in the Dictionary of Occupational Titles (DOT) as medium work. His work as a concrete finisher is described as heavy work and his job as a drywall hanger/finisher is described as very heavy work. Mr. Van Iderstine opined that the claimant's residual functional capacity would not allow for the performance of his past relevant work due to the exertional demands and/or skill level of that work. Accordingly, the Administrative Law Judge finds that the claimant is unable to perform past relevant work.

**6.   The claimant was closely approaching advanced age on the date disability is established (20 CFR 416.963).**

**7.   The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**

**8.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 416.968).**

**9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSR 83-12 and SSR 83-14). If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "disabled" is reached by direct application of Medical-Vocational Rule 201.10.

**10.  The claimant has been under a "disability," as defined in the Social Security Act, from May 24, 2005, through the date of this decision (20 CFR 416.920(g)).**

## DECISION

Based on the application for supplemental security income protectively filed on January 26, 2005, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on May 24, 2005.

See Next Page

Harold D. Stahl (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)                                    Page 6 of 6

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the non-disability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

_____
Peggy S. Ball
Administrative Law Judge

MAY 2 4 2006
_____
Date

Social Security Administration
Important Information

```
                                    SOCIAL SECURITY
                                    ROOM 120
                                    744 HORIZON COURT
                                    GRAND JUNCTION CO 81506
                                    (970) 245-2627
```

```
        HAROLD DEAN STAHL
        2972 G RD
        GRAND JUNCTION CO 81504
```

Refer to: 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
Social Security Appointment Confirmation
                        May 30, 2006
                        Phone: (800) 772-1213

Thank you for contacting us for an appointment to visit our office. This is
confirmation of the date and time of your appointment. Please bring this notice
with you when you come into the office.

Type Of Claim: Supplemental Security Income
Date Of Appointment: June 9, 2006
Time Of Appointment: 01:00 PM

What We Need

We need the proof listed below to complete your Supplemental Security Income
claim. Please have those items that you can get easily with you at the time of
your appointment. We cannot accept a photocopy of most proofs unless the
photocopy is certified by the office that issued the original. However, if we
request a medical report, we can accept a photocopoy of it. We will return the
items to you. Even if you don't have all the items that apply to you, you
should keep your appointment. We will help you get the information you do not
have.

Here is what we will need for you or the person for whom you are applying:

Bank statement or checkbook for the account where you would like the payments
deposited.

_MRS TAYLOR_

HAROLD DEAN STAHL                          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
(NH NAME)                                  (NH SSN)

You should be available five minutes prior to the time of your appointment. If you are unable to keep your appointment, please contact us at the above number to reschedule.

You Can Also Apply For Food Stamps

You can also apply for food stamps with our office if the following are true:
  o  You do not currently get food stamps; and
  o  You live in a state other than California; and
  o  You and all members of your household are applying for or receiving Supplemental Security Income.

To complete your food stamp application, please have proof of household expenses (such as mortgage, rent, and utility bills) and proof of medical expenses with you at your appointment time.



# STATE OF COLORADO



1B45KH4
Harold D Stahl
PO BOX: 40412
GRAND JUNCTION CO 81504-0412

Vacant Position
Mesa DHS
510 29 1/2 RD
GRAND JUNCTION CO 81504-5383

06/15/2005

(970) 248-0871

Determination for the month of  : 07/2005

NOTICE OF APPROVAL

Your application for Adult Financial dated 03/22/2005 has been approved beginning 03/22/2005. Here is an explanation of your benefits:

Based on the rules for this program, your cash benefits will begin one month after 03/22/2005. Your first payment may be prorated. Your benefits for 07/2005 are $200.00.

The relevant Adult Financial Services rules can be found at 9 CCR 2503-1 at section 3.400 and 3.470.23.

Please contact Vacant Position at (970) 248-0871 with any questions or concerns regarding this notice.

Si usted no puede entender esta noticia, communiquese con su  Departmento local de Servicios Humanos.

| | |
|---|---:|
| Gross Earned Income | 0.00 |
| Earned Income Disregard | 0.00 |
| Child/Spousal Support | 0.00 |
| Net Earned Income | 0.00 |
| Gross Unearned Income | 0.00 |
| Unearned Income Disregard | 0.00 |
| Net Unearned Income | 0.00 |
| Deemed Income | 0.00 |
| Net Countable Income | 0.00 |
| Net Income Standard | 200.00 |
| Grant Amount | 200.00 |