IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-636
Category II
Claimant: Bryce Larry Graham, #114095
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER comes before the Special Master on the claim of Bryce Larry Graham (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants. Despite being given the opportunity to respond to the motion, Claimant has not filed any response to it. Further argument will be waived.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss the claim. The Special Master must accept as true all reasonable allegations set forth by Claimant. The same standard will be used as required under Fed.R.Civ.P. 12(b).

Claimant came into DOC custody in July, 2002. He was processed through the Denver Reception and Diagnostic Center (DRDC) and then placed at SCF.

Claimant checked only the box for hearing impairment on his initial claim form. In that form, Claimant stated, in part, as follows:

> I have about 75% hearing loss in my left ear and about 20 to 30% in my right. By not being able to hear I'm not able to make calls to family except to have help. I can't hear most people talk to me or understand what's being said. My free time I can't watch TV or listen to a radio. It's hard to have a conversation because I can't hear what's being said to me.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Since arrival at DOC, I've sent medical kites requesting help and explaining that I can barely hear. I've never had 1 reply to my complaints. It's like I have never sent to medical for help. I've been completely ignored.

Claimant stated further as follows:

> My communication with family is almost non-existent and deteriorating. I'm barred from church and other things because I can't hear. My hearing is getting worse cause people have to yell, and to attempt to hear TV, it's blaring, which only hurts my hearing worse.

Claimant filed a supplemental form which reiterated his allegations in the initial claim form.

Defendants' motion to dismiss argues that Claimant is not a member of the class. They argue that Claimant still has residual hearing and does not fall within the definition of hearing impairment in the Settlement Agreement.

## III.

Claimant has not responded to the motion to dismiss. The question is whether Claimant can prevail based upon what he has submitted to the Special Master. It should be noted that Claimant

has not submitted any documentation, such as medical records or kites, to support his allegations.

The Settlement Agreement provides the following definition for hearing impairment.

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

This definition is very stringent and requires virtually total deafness before someone would qualify. Claimant's allegations do not reach the requirements of this definition. Claimant has some residual hearing.

In addition, Claimant has failed to allege that a major life activity has been affected. He has hearing loss, accepting as true what he has set forth, but he has not alleged that he is unable to function in a major life activity. Claimant was given the opportunity to respond to the motion and did not do so. Therefore, Claimant has not provided anything to indicate that a major life activity has been affected.

Finally, Claimant has alleged only that he has not received medical care that he believes would be helpful. Under *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005), claims of medical malpractice or negligence may not be brought in a lawsuit commenced under the ADA and Rehabilitation Act. Claimant has the right to pursue a separate lawsuit relating to the lack of medical care provided by DOC.

Defendants' motion to dismiss will be granted. Claimant may commence a separate lawsuit concerning the lack of medical care he has received.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 22, 2007.**

SIGNED this 16th day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers - Special Master