IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-774
Category II
Claimant: Vanessa R. Hall Jackson, #46438
Address of Claimant: 3320 Madison Street, Denver, CO 80205

---

## FINAL ORDER OF SPECIAL MASTER

---

    THIS MATTER comes before the Special Master on the claim of Vanessa R. Hall Jackson (Claimant). The Special Master has reviewed the claim, supplemental forms, and response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but she did not file a reply. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody in 1980. It appears that she has been in and out of DOC custody since that date. Claimant discharged her sentence in May, 2003. She previously had

3

been incarcerated at the Denver Women's Correctional Facility (DWCF) and Colorado Women's Correctional Facility (CWCF) in Canon City, Colorado.

In her initial claim form, Claimant checked the boxes for mobility and hearing impaired. She stated, in part, as follows:

> I cannot walk very long because of the pain in my spine, and my knee gives out. Unable to hear to get a job. Cannot hear anyone call my name, hearing is getting worse, and I don't know sign language. Another problem I was concerned about is a lump I discovered by my right ear several months ago. I again made an appointment with the P.A. Maryann Alessi. Ms. Alessi simply told me to come back when the lump got bigger. I explained to her that cancer is prevalent in my family and that I have an aunt who has had several malignant tumors in the same area.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> When I arrived at DWCF in May, 1998, I made an appointment with the facility P.A. to discuss with her a problem I was having with my menstrual cycle. I was bleeding every two weeks. My condition was diagnosed as serious fibroid tumors at Rose Medical Center in 1997 by Dr. Picker. I relayed this information to the P.A. Maryann Alessi. She refused to schedule.

Claimant was forwarded supplemental forms to complete and return. In her supplemental form for hearing impairment, Claimant stated, in part, as follows:

> Limited hearing in left ear, hearing loss in right ear.
> Could not hear while I was in various programs, school, etc. Not able to hear on the job in the sewing room.

Claimant stated that she secured a hearing aid but had problems with it. It had to be sent to Pueblo for repairs.

Claimant stated in her supplemental form on mobility impairment, in part, as follows:

> Unable to sit for long periods of time. Unable to lie down for long periods because of a pinched nerve. Damage to left side of body. Knee swelling on left side.

> Uncomfortable most of the time. Still have to have cortisone shots in my heel.

Claimant stated further:

> Failed to provide medical treatment when I fell on the job. Also fail to provide medical treatment when I fell during a volley ball game. My leg was

4

>   wrapped with an ace bandage and I was given motrin. Later or after about a week, I had a doctor's appointment. Found that I had a torn ligament in the knee. After swelling, my knee had to be drained.

Claimant did not submit any medical or other records in support of her claim.

Defendants submitted a response to the claim. Defendants have argued that Claimant never met the definition of being disabled while in DOC custody. Defendants have requested denial of the claim.

An order was issued to Claimant granting her the opportunity to file a reply to the response of Claimant. That order was mailed to the last address given by Claimant and as listed on the first page of this Final Order. That order was returned as undeliverable. Claimant has provided no updated address at which she may be reached by mail.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The claim form and supplemental forms will be considered as the testimony that Claimant would provide if there had been a hearing. The question is whether Claimant can prevail solely upon her statements.

**Mobility Disability**: Claimant has alleged that she had a mobility impairment while in DOC custody. The Settlement Agreement sets forth specific requirements for mobility impairment. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

Claimant has not alleged that she used a wheelchair while in DOC custody. She has alleged back and spine problems. Claimant claims to have a bad knee, but she has not presented evidence that she could not walk everyday. Claimant has failed to establish that her back and knee created a disability that affected a major life activity, such as walking. Claimant has acknowledged that she injured a knee playing volleyball. Such activity is inconsistent with a lower extremity mobility impairment that affects walking. Claimant has not carried her burden of proof to establish that she had a permanent lower extremity impairment that affected walking.

**Hearing Impairment**: Claimant claims that she had limited hearing in both ears while in DOC custody. The evidence presented by Defendants reflects that Claimant received a hearing aid for her left ear in 1998. In 2002, she was diagnosed with moderate to severe sensory neural hearing loss. She continued to use a hearing aid.

Claimant has not established that her hearing loss impaired a major life activity. Based upon

the evidence presented by both sides, the Special Master finds that Claimant was provided a hearing aid while in DOC custody. There is no indication that she was not able to function. In fact, just the opposite is the case. Claimant took pride in her work and education, as reflected by the reports attached to Defendants' response. Claimant has failed to establish that she had a hearing impairment on or before August 27, 2003 while in DOC custody.

**Tumors**: Claimant has alleged that she sought help for a lump near her ear. She believed that this could be cancer, in light of a family history of such tumors. This condition is not covered by the Settlement Agreement. The Special Master has no jurisdiction to deal with this condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant's concern is the quality of medical care that she has received over the years.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to her, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that she may have concerning the quality of her medical care.

In order to prevail under the ADA and Rehabilitation Act, a claimant must show that she received treatment that was different because of her disability. An example would be a disabled individual being told that she would never be considered for a position of employment, even though otherwise qualified. In this case, Claimant has received medical care throughout her time in CDOC. She has some concerns about that care. Since her claim does not fall under the provisions of the Settlement Agreement, Claimant may pursue separate litigation if she believes that she was the victim of improper or negligent medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

   IT IS HEREBY ORDERED that the claim of Vanessa R. Hall Jackson is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

   IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 29, 2007.**

   SIGNED this 16th day of October, 2006.

            BY THE COURT:

            */s/ Richard M. Borchers*

            _____
            Richard M. Borchers
            Special Master