IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 02-853
Category II
Claimant: Max Valles, #116277
Address of Claimant: c/o Officer Christine Robertson, 205 Main Street, Longmont, CO 80501

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER comes before the Special Master on the claim of Max Valles (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the Fremont Correctional Facility (FCF) in Canon City, Colorado when he filed his claim. He has been released on parole.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants. Despite being given the opportunity to respond to the motion, Claimant has not filed any response to it. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>   The Settlement Agreement further provides, in part, as follows:
>
>   2. Permanent Hearing Impairments
>   Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>   3. Permanent Vision Impairment
>   Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>   4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>   Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>       1. Is the claimant a disabled individual who is a member of the class?
>       2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>       3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>       4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss the claim. The Special Master must accept as true all reasonable allegations set forth by Claimant. The same standard will be used as required under Fed.R.Civ.P. 12(b).

Claimant came into DOC custody on January 27, 2002. He was processed through the Denver Reception and Diagnostic Center (DRDC) and then placed at FCF. In his initial claim form, Claimant stated, in part, as follows:

> My problem is hearing. In May of 04 I was assaulted by another inmate and taken to the medical where they treated me for a blown ear drum. They said that the injury was one of the worst they have seen to the inner ear. The hearing specialist came a few weeks later in June 04. 85% of my hearing in the left ear is gone permanently. Nothing has been done after many kites. Still nothing has been done. I asked for an aid to assist my hearing. Still nothing has been done to help my situation.

In response to the question concerning discrimination by DOC and its staff, Claimant stated that "as of the current date nothing has been done to help my hearing kites been unanswered."

Claimant was forwarded a supplemental form and asked to complete that. In the supplemental form, Claimant reiterated that his hearing problems arose from the assault in May, 2004. He experienced problems in hearing messages over the intercom and in hearing teachers in class. He has asked for a device to assist in hearing.

Defendants' motion to dismiss raises multiple issues, but only one needs to be discussed. Defendants have moved to dismiss the claim on the basis that the only allegations raised by Claimant related to the assault in May, 2004 and actions by DOC staff thereafter. Defendants argue that Claimant has failed to that establish anything occurred on or before August 27, 2003 that was covered by the Settlement Agreement.

## III.

The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. It was on that date that the class was set. In order to file a claim, a claimant had to have been in DOC custody on or before August 27, 2003. In addition, a claimant had to have been disabled, as defined by the Settlement Agreement, and have been subjected to discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. A claimant who became disabled after August 27, 2003 retains the right to file a separate lawsuit under the ADA and Rehabilitation Act.

Defendants correctly note that Claimant alleges that he became disabled as the result of the

assault in May, 2004. There is not one single allegation of disability before May, 2004. Claimant does not fall within the class and may not pursue his claim. Claimant may bring a separate lawsuit if he believes that he was disabled under the ADA and was subjected to discrimination due to his disability. Claimant is not part of the class and cannot pursue his claim.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 22, 2007.**

SIGNED this 16th day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master