IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-884
Category II
Claimant: Allen Spencer, #84896
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Allen Spencer (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion of Defendants. Despite being given the opportunity to respond to the motion, Claimant has not filed any response to it. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>    B. QUALIFIED INMATE
>    Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>    C. PERMANENT DISABILITY/IMPAIRMENT
>    A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>    The Settlement Agreement further provides, in part, as follows:
>
>    2. Permanent Hearing Impairments
>    Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>    3. Permanent Vision Impairment
>    Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>    4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>        1. Is the claimant a disabled individual who is a member of the class?
>        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss the claim. The Special Master must accept as true all reasonable allegations set forth by Claimant. The same standard will be used as required under Fed.R.Civ.P. 12(b).

Claimant came into DOC custody in November, 1994. He was processed through the Denver Reception and Diagnostic Center (DRDC). Claimant may have been at other correctional facilities, but he was at AVCF when he filed his claim. He remains at AVCF.

Claimant checked the boxes for mobility and vision impairment on his initial claim form. In that form, Claimant stated, in part, as follows:

> Vision = severe migraines, eye light sensitive and blurred vision. Unable to go out side on regular basis. Limits reading and outside activities as well as medical treatment. Mobility = lower back pain and neck. I have degenerative arthritis diagnosed and social security disabled in 1989. This at many times limits gym activities and little to none medical treatment.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> They refuse to give proper medical treatment or aids such as braces or support that once was given. They blame their provider, or such long delay on follow-up care or recommended care from specialist. They will not send to see specialist. Job restrictions.

Claimant was sent supplemental forms to complete and return. Claimant has never submitted either supplemental form provided to him nor has he submitted any medical or other records in support of his claim. All that has been submitted is the initial claim form.

Defendants' motion to dismiss argues that Claimant is not a member of the class. They argue that Claimant does not fall within the definitions for mobility or vision impairment in the Settlement Agreement.

## III.

Claimant has not responded to the motion to dismiss. The question is whether Claimant can prevail based upon what he has submitted to the Special Master. It should be noted that Claimant has not submitted any documentation, such as medical records or kites, to support his allegations.

**Mobility Impairment**: The Settlement Agreement details what is encompassed for mobility

impairment. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

There are no allegations in the initial claim form that Claimant used a wheelchair at any time prior to August 23, 2003, the date on which the Settlement Agreement was approved. More importantly, there are no allegations that Claimant has a permanent lower extremity impairment that substantially limits walking. Claimant has alleged that he has lower back pain, as well as neck pain. These may form the basis for an ADA complaint, but they are not covered by the Settlement Agreement. Claimant retains the right to pursue a separate lawsuit for his back and neck. He may not pursue his claim, as he has not alleged that he has a permanent lower extremity condition that substantially affects walking.

**Vision Impairment**: Claimant has alleged that he has blurry vision and eyes that are sensitive to light. Claimant has made no allegation that a major life activity was affected by his vision condition prior to August 27, 2003. The ADA and Rehabilitation Act require that an impairment affect a major life activity. That has not been alleged in the initial claim form.

Claimant was given the opportunity to respond to the motion to dismiss. He did not do so. His initial claim form fails to allege sufficient facts that would him to prevail as a matter of law on his vision impairment claim.

**Medical Treatment**: Claimant has alleged that he has not received medical care that he believes would be helpful. Under *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005), claims of medical malpractice or negligence may not be brought in a lawsuit commenced under the ADA and Rehabilitation Act. Claimant has the right to pursue a separate lawsuit relating to the lack of medical care provided by DOC, if he believes that he was the victim of malpractice or a violation of the Eighth Amendment.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 22, 2007.**

SIGNED this 16th day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master