IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-185
Category: II
Claimant: Achell Pack, #98154
Address of Claimant: 1818 Marion Street, # 818, Denver, CO 80218

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Achell Pack. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Pack submitted a claim which was assigned claim number 02-185. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Although the record is unclear, it appears that Claimant Pack may have entered CDOC custody in 1998. The record fails to identify the facilities in which she was housed while in CDOC custody; however, she was housed for part or all of the time that she was in CDOC custody at the Denver Women's Correctional Facility (DWCF). Claimant was released from CDOC custody in 2004.

4. Claimant asserts that she suffers from chronic lower back pain, muscle spasms in her back and a pinched nerve in her leg, all of which may have arisen as a result of a pelvic fracture in 1990. She contends that she has difficulty walking and sleeping due to the pain. At least for some period of time while at CDOC, Claimant had restrictions of no prolonged standing or bending, no lifting and a limited work schedule.

5.      Claimant Pack asserts that CDOC failed to accommodate her disability by denying her request for a lower tier restriction.  She also contends that after she received an orthopedic consult in 2000, CDOC improperly denied her requests for further consults with an orthopedic specialist.  She complains that CDOC failed to provide her with proper medications.

6.      Claimant's medical records show that in February of 2003, Claimant was given a lower tier-lower bunk restriction for four weeks due to a sprained ankle.  In March or April of 2003, Claimant was seen by a doctor who determined based on x-rays that Claimant was suffering from degenerative joint disease and that the temporary lower tier-lower bunk restriction was no longer necessary.  The doctor ordered prescription medications together with muscle strengthening exercises.  Claimant was provided with restrictions of no bending, no prolonged standing and no lifting greater that 15 lbs.

**7.**      While Claimant was in the custody of CDOC, she had a job in the kitchen and was offered the opportunity to participate in computer classes and other programs.

### III.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility,

hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

Although the evidence is in conflict, the Special Master finds and concludes that Claimant has not sustained her burden of establishing by a preponderance of the evidence that she suffers from a permanent mobility impairment that substantially limits her ability to engage in one or more major life activities. It is clear that Claimant suffers from lower back pain and the objective medical evidence indicates that this is due to degenerative joint disease. There is no suggestion in the medical records or otherwise, however, that Claimant has trouble walking. She simply states but does not present evidence that her ability to walk is substantially limited. The Special Master finds and concludes that Claimant's limitations with respect bending, standing for long periods of time and/or lifting over 15 lbs. do not constitute substantial limitations on major life activities.

3. Additionally, to the extent that Claimant's complaints relate to a lack of proper medical treatment or an alleged failure of CDOC to provide proper medications, they are not cognizable under Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

4. Finally, under the circumstances presented here, the decision by Claimant's medical providers to eliminate her temporary lower tier restriction does not support a claim under either the ADA or the Rehabilitation Act. The evidence demonstrates that, in March of 2003, her medical providers determined that based on the objective medical information from Claimant's x-rays, a lower tier restriction was no longer needed. Claimant offered no evidence showing that this decision was medically incorrect. The fact that Claimant disagrees with her medical provider's assessments of the accommodations necessary for her lower back pain and degenerative joint disease is insufficient as a matter of law to sustain a claim under the ADA or the Rehabilitation Act.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Pack's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before December 20, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED 20th day of October, 2006

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 20th day of October, 2006 to the following:

Ms. Achell Pack, #98154
1818 Marion St., #818
Denver, CO 80218

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

    /s/ Susan L. Carter

    Susan L. Carter