IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

―――――――――――――――――――――――――――――――――――――――――――――――――――――

Claim Number: 02-259
Category: II
Claimant: Mack Thomas, #54954
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

―――――――――――――――――――――――――――――――――――――――――――――――――――――

**FINAL ORDER OF SPECIAL MASTER**

―――――――――――――――――――――――――――――――――――――――――――――――――――――

THIS MATTER comes before the Special Master on the claim of Claimant Mack Thomas. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Thomas submitted a claim which was assigned claim number 02-259. The claim is premised on an alleged permanent mobility disability and alleged disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Thomas entered CDOC custody in 1997. Although the record fails to identify the facilities in which he has been housed while in CDOC custody, it appears that he has been housed during part or all of his incarceration at the Sterling Correctional Facility (SCF).

4. Claimant suffers from diabetes. He also suffers from series cardiac problems which may or may not be related to his diabetes. He underwent a coronary artery bypass in February of 2004, after a consult with a cardiologist. Since this surgery, Claimant notes that his right leg, ankle and foot have become swollen, causing him to limp from pain.

5. Claimant Thomas complains that he has not received proper medical care for his diabetes and particularly for the swelling that has occurred in his leg, ankle and

foot. He also asserts that he has not received any medical care for his deteriorating eyesight. Mr. Thomas did have a medical restriction for lower tier and lower bunk until May or June of 2004. It is unknown when he initially received this restriction. Claimant Thomas contends that his medical providers eliminated his lower bunk restriction, which has resulting in significant difficulties and pain in getting into and out of his bunk. Claimant also asserts that in June 2004 his CDOC medical providers refused to provide him with a short pass to classes and to the dining room despite his request that they do so. Claimant further asserts that he is not being provided with enough blankets and that his feet become cold at night. Finally, Claimant complains that in 2004 his CDOC medical providers denied his request that he continue to receive antiseptic for his foot soaker to help alleviate his foot pain.

      6.     Claimant's records show that he was active prior to his surgery in 2004. Claimant indicated that he walked a lot for health reasons and worked out. He has always controlled his diabetes by his own means and does not take a diabetic diet.

      7.     Claimant's medical records show that on April 16, 2004, Claimant was examined by Dr. Frantz. Thereafter, Dr. Frantz consulted with Dr. Singh, another of Claimant's medical providers, about Claimant's lower tier-bottom bunk restriction. A joint decision was made by these medical providers that the lower tier-bottom bunk restriction was only necessary for a short period of time while Claimant recovered from his bypass surgery and that it should be removed in June of 2004

### III. CONCLUSIONS OF LAW

      1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

      2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing,

4

vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that prior to August 27, 2003, Claimant did not have a permanent mobility disability or a permanent disability due to his diabetes within the meaning of the ADA or the Rehabilitation Act. The uncontroverted evidence in the record establishes that prior to his bypass surgery in 2004, Claimant walked and worked out for his health. As discussed more fully below, inmates who were not disabled within the meaning of the ADA or the Rehabilitation Act prior to the execution of the Remedial Plan on August 27, 2003 are not included within the *Montez* class and cannot pursue damage claims under the Remedial Plan. Any such damage claims must be pursued through a separate legal action.

3.  Additionally, to the extent that Thomas' complaints relate to a lack of proper medical treatment or an alleged failure of CDOC to provide proper medications, they are not cognizable under Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

4.  Finally, all of Claimant's allegations of discrimination concern decisions or events that occurred after August 27, 2003. All of Claimant's evidence of actionable discrimination and failures to accommodate relating to his alleged disabilities involve decisions by his CDOC medical providers made after his bypass surgery. This is true with respect to the decisions to eliminate Claimant's lower tier-lower bunk restriction, the failure to provide sufficient blankets, the decision to deny Claimant's request for a short pass to class and the chow hall, and the refusal to provide Claimant with antiseptic for his foot bath.

The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited

to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

Because Claimant Thomas has failed to show that he was disabled prior to the execution of the Remedial Plan, and also has failed to show any discrimination or failure to accommodate his disability that occurred prior to August 27, 2003 and constituted a violation of the ADA and/or the Rehabilitation Act, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Thomas' Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 20, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 20th day of October, 2006

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

  I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 20th day of October, 2006 to the following:

Mr. Mack Thomas, #54954
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

              /s/ Susan L. Carter

              Susan L. Carter