IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-279
Category: II
Claimant: Anthony R. Murphy, #88572
Address of Claimant: 1315 Corona St., Denver, CO 80218

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Anthony R. Murphy. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.     General inconvenience or nominal damages;
II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.    Damages due to severe physical injuries; and
V.     Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.   DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

> 2.   The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1.  Is the claimant a disabled individual who is a member of the class?
>> 2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Murphy submitted a claim which was assigned claim number 02-279.  The claim is premised on an alleged permanent mobility disability and permanent disability due to diabetes.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Murphy entered CDOC custody in July of 2003.  Although the records provided to the Special Master do not identify with specificity the various facilities where Claimant was housed, it appears that he has been housed for all or a substantial portion of his CDOC custody at the Colorado Territorial Correctional Facility (CTCF), Arrowhead Correctional Center (ACC), and Limon Correctional Facility (LCF).  He was released from CDOC custody in 2005.

4.      Claimant suffers from syncopic episodes where he becomes dizzy, nauseated and sometimes blacks out.  He states that these episodes may occur as frequently as two to three times per month.  During his syncopic episodes, Claimant must sit or lay down.  He states that he has fallen during syncopic episodes, injuring his head, neck and shoulders.  Claimant also suffers from pain in his back, leg and ankle that may be related to arthritis.  He is bipolar and is under medication for this condition.  Claimant

Murphy also asserts that he is diabetic.  Finally Claimant indicates that he has no teeth and needs dentures.

5.      Claimant asserts that because of his medical restrictions, CDOC did not provide him with a job.  As a result, Claimant Murphy claims that he was required to remain in his cell for up to 17 hours per day.  Claimant also contends that CDOC refused to provide treatment for his diabetes and his syncope, and that he was been denied necessary medical equipment -- such as finger sticks -- to monitor his diabetes.  Finally, Claimant complains that CDOC refused to provide him with dentures.

6.      Claimant's medical records confirm that he is suffering from syncopic episodes.  He has had numerous medical consults, examinations and testing relating to this condition.  The records indicate that he was tested for diabetes and that CDOC medical personnel determined that he was not diabetic.  He was placed on medical restrictions due to his syncopic episodes including lower bunk, no stairs and no work where loss of consciousness might have been hazardous.  The medical records note that Claimant's gait was normal and that he was able to perform one-leg stands with either leg.  He did exhibit pain attempting to return to a standing position from a squat.

7.      Claimant's records further indicate that he was provided with a job in the kitchen but that Claimant submitted a kite to be excused from kitchen duty because of his syncopic episodes.  The records also reflect that he was also offered a position as a parapro and quit shortly after receiving the position.

### III.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29

C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Murphy has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent mobility disability. While Claimant does suffer from arthritis, there is no indication in the record or in Claimant's claim that he cannot walk or ambulate in a normal fashion.

Claimant Murphy relies primarily upon the fact that he suffers from syncopic episodes as the basis for his alleged permanent mobility disability. While the Remedial Plan states that it covers persons with "mobility impairments," it does not generally define the term "mobility impairments." *Remedial Plan* ¶ III(A). However, the references to "mobility impairment" in the Remedial Plan indicate that the parties intended the term to encompass diseases, injuries and/or conditions involving the lower extremities that impose a substantial limitation on the major life activity of walking. *See Remedial Plan* ¶ V(A)(1)(dealing with presumed need for special housing and defining "permanent mobility impairment as "a permanent lower extremity mobility impairment that substantially limits walking."); *Remedial Plan* ¶ XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly suggesting that "mobility impaired" inmates are those with diseases, injuries and/or conditions involving their lower extremities).

In short, there is no indication in the Remedial Plan that its coverage of inmates with "mobility impairments" extends beyond those who are substantially limited in their major life activity of walking because of diseases, injuries, and/or conditions involving their lower extremities. Claimant Murphy's syncopic episodes undoubtedly constitute a

very serious medical condition.   However, there is no evidence that this condition involves his lower extremities or substantially limits his ability to engage in the major life activity of walking.

The Special Master also finds and concludes that Claimant Murphy has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent impairment due to diabetes that would entitle him to relief under either the ADA or the Rehabilitation Act.   Even assuming for purposes of discussion that Mr. Murphy is a diabetic, there is no evidence in the record that his alleged diabetes substantially limits his ability to engage in any major life activity.

Finally, the Special Master finds and concludes that Claimant's complaints regarding CDOC's refusal to provide him with dentures is not cognizable under the Remedial Plan.

3.      To the extent that Claimant Murphy's complaints of CDOC discrimination are based upon an alleged lack of proper medical diagnosis or treatment or an alleged failure to provide proper medications or medical equipment, they are not cognizable under Title II of the ADA or the Rehabilitation Act.   *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

4.      Because Claimant Murphy has failed to establish by a preponderance of the evidence that he suffers from a permanent mobility disability or a permanent disability due to diabetes, his *Montez* Claim cannot be sustained.

### IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Murphy's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 20, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 20th day of October, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 20th day of October, 2006 to the following:

Mr. Anthony R. Murphy, #88572
1315 Corona St.
Denver, CO 80218

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

_____

Susan L. Carter