IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

―――――――――――――――――――――――――――――――――――――――――――

Claim Number: 02-362
Category: II
Claimant: Felix Mike Ortega, #63216
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

―――――――――――――――――――――――――――――――――――――――――――

**FINAL ORDER OF SPECIAL MASTER**

―――――――――――――――――――――――――――――――――――――――――――

THIS MATTER comes before the Special Master on the claim of Claimant Felix Mike Ortega. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.     General inconvenience or nominal damages;
> II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.   Damages due to severe physical injuries; and
> V.    Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.    DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Ortega submitted a claim which was assigned claim number 02-362. The claim is premised on an alleged permanent mobility disability and permanent disability due to diabetes. Although Claimant did not check "Vision Impaired" on his Initial Claim Form, it appears that he is claiming a permanent vision impairment as well.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Ortega first entered CDOC custody in June of 1991. Although the record does not reflect all of the facilities in which Claimant was housed, it appears that he was housed for part or all of his CDOC custody at the Huerfano County Correctional Center (HCCC).

4. Claimant was diagnosed as a diabetic in 1991. He asserts that CDOC medical personnel have been unable to control his blood sugar. He has taken a variety of medications, including insulin and glucophage, none of which have been successful in controlling his diabetes. Claimant states that due to his uncontrolled diabetes his eyesight deteriorated to the point where he needed laser eye surgery. Claimant recently underwent laser surgery. Claimant Ortega states that his uncontrolled diabetes has also

3

affected his mobility.  He indicates that he gets cramps in his legs when his blood sugars are high and that he is losing feeling from his knees to his feet due to poor blood circulation in his legs.  His Supplemental Claim Form for mobility impairment states: "I have problems walking for long periods of time . . . . I only walk to school, Med line and to the chow hall.  Yard time I walk 45 minutes Then stay in my room.  I have no energy."  He notes that he can no longer play ball, run or lift weights.

5.  With few exceptions discussed in paragraph 6 below, Claimant's contentions all relate to alleged refusals to provide medical treatment, unreasonable delay in providing medical care, improper medical care and treatment and intentional failure to comply with medical orders.  For example, Claimant asserts that CDOC medical personnel have not provided proper treatment and/or medications to control his blood sugar and pain and have prescribed excessive medications that have caused him stomach problems and blood in his stools.  He contends that on occasion, CDOC personnel have refused to allow him to see medical providers.  Claimant Ortega complains that due to his uncontrolled diabetes, he required laser eye surgery but that CDOC unreasonably delayed providing the laser surgery.

6.  Claimant also asserts that on two occasions, he was denied a meal at the chow hall -- even though he arrived during the time that the chow hall was open.  On these occasions he was unable to take his insulin, because he cannot take insulin without a meal.  Claimant complains that he has been denied soft-soled tennis shoes which offer much greater comfort for diabetics.  He also states that while he has been given a temporary lower bunk restriction, he fears that the restriction may not be renewed and that he will be required to climb up to and down from an upper bunk.

7.  Claimant's medical records show that he was diagnosed as having diabetes and he has been treated for diabetes since his arrival in CDOC custody.  The records reflect difficulty in controlling his diabetes and the problems with his eyesight resulting from the diabetes.  A January 2005 eye examination showed that Claimant's visual acuity was correctible to 20/20 with glasses but that Claimant declined eyeglasses.  The records reflect medical restrictions including a knee brace and directives to avoid prolonged standing and walking.  A thoracic spine x-ray taken in December of 2005, after Claimant complained of mild back pain, showed some moderate anterior osteophyte formation off of the mid- and lower-vertebral bodies.  The medical impression was moderate degenerative spurring but no active disease.

### III.  CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one

or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Claims premised on denial of medical care, delayed medical care and negligent medical care simply do not implicate the ADA or the Rehabilitation Act. These statutes do not provide substitutes for medical malpractice claims or constitutional claims for deliberate indifference to medical needs. Nor do they provide a forum for litigating disputes between a patient and his medical providers over the necessity, adequacy or timeliness of medical treatment. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes. Thus, a Claimant under the Remedial Plan must demonstrate that he or she has a permanent mobility impairment, a permanent vision impairment, a permanent hearing impairment or diabetes, **and** that the impairment substantially limits Claimant from engaging in one or more major life activities.

There is no doubt that Claimant suffers from diabetes and has significant medical problems as a result of this disease. However, Claimant cannot sustain a claim under the ADA or the Rehabilitation Act unless he establishes by a preponderance of the evidence that his diabetes substantially limits his ability to engage in one or more major life activities. While Claimant asserts that he cannot walk long distances or for long periods of time, the Special Master finds and concludes that this is insufficient to demonstrate a **substantial limitation** on the major life activity of walking. Both the case law and regulations dealing with this issue have concluded that diseases, injuries and conditions that result in moderate restrictions on one's ability to walk, stand, sit and climb stairs do not qualify as substantial limitations on a major life activity. *E.g., Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir. 1999); *Kelly v. Drexel University,* 94 F.3d 102 (3d Cir. 1996); *Stewart v. Weast,* 228 F. Supp. 2d 660 (D. Md. 2002); 29 C.F.R. § 1630.2(j)(2).

The same is true of Claimant's alleged vision impairment. While undoubtedly Claimant's diabetes has adversely affected his vision, the medical records indicate that his vision is correctible to 20/20 with eyeglasses. More importantly, no evidence has been presented as to how his vision problems affect his ability to perform activities that are of central importance to most people's daily lives. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999). The Special Master finds and concludes that Claimant Ortega has failed to present evidence meeting this demanding standard.

3. It is clear that virtually all of Claimant's complains relate directly or indirectly either to alleged failure to provide timely medical care and medications or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

4. Because Claimant has failed to demonstrate that he has a permanent mobility impairment, a permanent vision impairment or a permanent impairment due to diabetes that substantially limits his ability to engage in one or more major life activities, the Special Master finds and concludes that his *Montez* claim should be denied. Claimant must pursue his medical malpractice and deliberate indifference to medical needs claims in a separate suit.

## IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Ortega's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 20, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 20th day of October, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

        I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 20th day of October, 2006 to the following:

Mr. Felix Mike Ortega, #63216  
HCCC  
304 Ray Sandoval St.  
Walsenburg, CO 81089

Mr. James X. Quinn  
Mr. Jess A. Dance  
Office of the Attorney General  
Litigation Section  
1525 Sherman Street, 5th Floor  
Denver, CO 80203

                                                    /s/ Susan L. Carter  
                                                    _____  
                                                    Susan L. Carter