IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-065
Category: II
Claimant: Richard L. Shults, #106810
Address of Claimant: 189 Highway 36, Vilonia, Arkansas 72173

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant Richard L. Shults. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out

1

provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>    2.   The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>    1.  Is the claimant a disabled individual who is a member of the class?
>    2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.   Claimant Shults submitted a claim that was assigned claim number 02-065. The claim is premised on an alleged mobility disability.

2.   Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.   Claimant Shults entered CDOC custody on July 15, 2000. Claimant indicates that his release date was November 29, 2004. Although the record does not identify all of the facilities in which Claimant was housed while in CDOC custody, it appears that he was housed for some periods of time in the Four Mile Correctional Center (FMCC), the Sterling Correctional Facility (SCF) and the Skyline Correctional Center (SCC).

4.   Claimant suffers from chronic neck and back pain as well as muscle spasms resulting from an accident while he was riding a bicycle. He also contends that he suffers from mental illness and shoulder problems. He states that his back problems prevent him from standing for long periods of time and also make it painful for him to walk and to negotiate stairs. Mr. Shults takes daily medication for back pain.

5.      Claimant Shults asserts that CDOC personnel forced him to work in the kitchen even though he was unable to do so as a result of his medical problems, post-traumatic stress disorder and bipolar disorder.  He indicates that he received a COPD violation and conviction for refusing to work and was sent to punitive segregation.  He complains that he was subjected to verbal abuse by CDOC personnel while in his holding cell.  Claimant asserts that prison guards placed a snitch jacket on him which caused him to fear for his safety.  As a result, Claimant states that he refused to return to the general population and requested to remain in administrative segregation.  Because he was in administrative segregation, many of the facilities and programs that were available to the general population were denied to him.  Finally, Claimant asserts that he was denied proper medical treatment and was denied a restriction for a lower bunk.

6.      Claimant's medical records reveal that he was seen by CDOC medical providers for his back pain in 2000, 2001, 2003 and 2004.  In 2000, his medical records indicate that his chronic lower back pain was noted by the nurse, and medication was prescribed.  X-rays taken in 2001 showed a normal lumbrosacral spine, a normal cervical spine and a normal thoracic spine.  Claimant's 2001 medical records also note that he was playing softball and pitching.  In 2003, Claimant's medical records state that his disk spaces were maintained, his alignment and bone architecture was unremarkable and that there was no evidence of any old or recent fracture, significant degenerative disease or paraspinous mass.  There was no osteolytic or osteblastic process.  The pedicles were intact.  A 2004 X-ray report should some possible osteoarthritis.

## II.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing,

vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Shults has failed to sustain his burden of establishing that he has a permanent mobility disability within the meaning of the ADA, the Rehabilitation Act and/or the Remedial Plan. Claimant's shoulder injury, bipolar disorder and/or post-traumatic stress disorder do not constitute permanent mobility disabilities under the Remedial Plan. While Claimant's chronic back pain is related to mobility, the objective medical evidence establishes that Claimant's back problems are not severe enough to limit substantially his ability to participate in any major life activity.

3. Additionally, Claimant has failed to establish that he has been discriminated against because of his chronic back problems. Claimant's assertion that he was forced to work despite his back problems, shoulder problems and mental illness may constitute deliberate indifference to medical needs pursuant to the Eighth and Fourteenth Amendments to the United States Constitution but it does not constitute disparate treatment within the ambit of the ADA and/or Rehabilitation Act. Likewise, to the extent that Claimant Shults' discrimination claim is premised on a failure to provide him with proper medical treatment and medications, such claims are not cognizable under Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

4. Finally, to the extent that Claimant Shults takes issue with his CPOD convictions, such claims cannot be pursued under the ADA until and unless his disciplinary convictions are overturned. *See Heck v. Humphrey,* 512 U.S. 477 (1994); *Daniel v. Fields,* 1995 WL 539008 at fn. 2 (10th Cir. 1995)(unpublished); *Deatherage v. Stice,* Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished).

## IV. ORDER

IT IS HEREBY ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendant and against Claimant dismissing Claimant Shults' claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 20, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 24th day of October, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 24th day of October, 2006 to the following:

Mr. Richard L. Shults, #106810
189 Highway 36
Vilonia, AK 72173

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                /s/ Susan L. Carter

                Susan L. Carter