IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number:  02-073
Category:  II
Claimant:  Robert B. Sullivan, CDOC #116706 (BOP #31854-013)
Address of Claimant:  F.C.I. Englewood, 9595 West Quincy Avenue,
          Littleton, CO 80123

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert B. Sullivan.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

### I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out

provision for class members.   The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;
II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.     Damages due to severe physical injuries; and
V.      Damages due to death.

Only one of the above categories may be applied to each class member.   For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Sullivan submitted a claim which was assigned claim number 02-073. The claim is premised on an alleged permanent mobility disability and a permanent hearing disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Sullivan entered CDOC custody in February of 2003. During his CDOC custody, Claimant was housed at the Sterling Correctional Facility (SCF).

4.      Claimant asserts that he has a permanent mobility disability due to an anterior cervical fusion at C6-7 performed in 1995 to repair a herniated disk. He has been given a 13% Total Body Impairment rating by worker's compensation. Claimant indicates that he suffers from muscle spasms, stiffness in his neck and headaches. As a result of these symptoms, Claimant states that he now needs assistance to do work which he could previously do without assistance. Claimant also states that he has minor hearing loss in his left ear but has not requested any accommodations for his hearing impairment. He indicates that his hearing loss could cause him to misunderstand or not hear announcements on the intercom which, in turn, could result in discipline.

5.      Claimant contends that when he arrived at SCF, he asked to be assigned to a computer training class.  Instead, he was assigned to a janitorial class.  Claimant asserts that after completing the class he was required to accept a position as a porter or remain unassigned, in which event he would have been placed in maximum security with a possible loss of good time.  He complains that the job duties of a porter required heavy lifting that could cause him to re-injure his neck or spine and that these job duties were contrary to his worker's compensation work restrictions.  He notes that in January and in April of 2004, he did injure his neck and shoulder while working.   Additionally, Claimant Sullivan asserts that CDOC confiscated his second mattress that had been authorized by medical to alleviate pain and allow him to sleep better.  He also contends that CDOC medical personnel gave him improper medications which caused allergic reactions.  Further, Claimant Sullivan states that CDOC refused to x-ray his neck after an attack by another prisoner and that Claimant was placed in punitive segregation because he was the victim of the attack.

With respect to his alleged hearing impairment, Claimant notes that CDOC has banned sign language training materials.

Finally, Claimant asserts that after the execution of the Remedial Plan in August of 2003, he has suffered retaliatory discrimination and harassment by CDOC.

6.      Claimant's medical records show that his gait and his hearing are normal but that has some limitation on side-bending and rotational motion.   He has been prescribed various pain medications.  The records confirm that Claimant was treated for injuries to his neck and shoulder in 2004 and that Claimant did suffer injuries inflicted by another inmate.

7.      The records provided to the Special Master show that Claimant took computer classes in 2004 and 2005.  In addition to his job as a porter, during his CDOC custody, Claimant worked on ground and lawn maintenance and in housekeeping. Claimant did incur a disciplinary conviction in December of 2003 for disobeying a lawful order.  Claimant pleaded guilty to the charge and received a loss of eight days of good time and a 20-day loss of phone privileges.  There is nothing in the records submitted to the Special Master suggesting that the conviction was related to any hearing impairment.

## III.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C.

4

29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC.  Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities.  The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant Sullivan has failed to establish by a preponderance of the evidence that he suffers from a permanent mobility disability.  While the Remedial Plan states that it covers persons with "mobility impairments," it does not generally define the term "mobility impairments."  *Remedial Plan* ¶ III(A).  However, the references to "mobility impairment" in the Remedial Plan indicate that the parties intended the term to encompass diseases, injuries and/or conditions involving the lower extremities that impose a substantial limitation on the major life activity of walking.  *See, Remedial Plan* ¶ V(A)(1)(dealing with presumed need for special housing and defining "permanent mobility impairment" as "a permanent lower extremity mobility impairment that substantially limits walking.");  *Remedial Plan*

¶ XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly suggesting that "mobility impaired" inmates are those with diseases, injuries and/or conditions involving their lower extremities.).

In short, there is no indication in the Remedial Plan that its coverage of inmates with "mobility impairments" extends beyond those who are substantially limited in their major life activity of walking because of diseases, injuries and/or conditions involving their lower extremities. The Special Master notes that there is an absence of any evidence in the record suggesting that Claimant has a lower extremity mobility impairment. His gait appears to be normal and he has presented no evidence indicating that his ability to walk is substantially limited.

Additionally, the fact that Claimant may have some physical limitations that impede his ability to perform the job of porter does not mean that he is substantially limited in his ability to engage in the major life activity of working. In the case of the major life activity of working, "the term substantially limited means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform a single, particular job does not qualify as a substantial limitation on Claimant's ability to work. *Bristol v. Bd. of County Comm'rs, Clear Creek*, 281 F.3d 1148 (10th Cir. 2002).

Although Claimant asserts that he has a lifting restriction, he presents no evidence regarding the nature or degree of his restriction. Furthermore, he presents no evidence comparing his lifting restriction with that of the average person. Generally, this omission is fatal to a disability claim under the ADA and/or the Rehabilitation Act based on inability to lift. *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237 (10th Cir. 2001).

The Special Master also finds and concludes that Claimant has presented no evidence demonstrating that he has a hearing impairment that substantially limits his ability to engage in major life activities. Claimant simply states that he has a hearing impairment. Claimant, however, has not offered evidence of the frequency or severity of his condition, other than to state that it is "minor." Claimant's uncorroborated assertion that he is hearing impaired by itself is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999).

3.      Absent proof that Claimant has a permanent mobility disability and/or a permanent hearing disability within the meaning of the ADA and/or Rehabilitation Act, his complaints regarding job assignments, failure to provide proper medical care and medications and confiscation of his second mattress at best amount to allegations of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to

the United States Constitution. Both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4.      The Special Master finds and concludes that Claimant has not sustained his contention that he received discipline because of his alleged disabilities. Furthermore, no evidence has been presented that the disciplinary conviction has been reversed or vacated. Without such evidence, ADA claims premised on an alleged wrongful CPOD conviction cannot be pursued. *See Heck v. Humphrey,* 512 U.S. 477 (1994); *Daniel v. Fields,* 1995 WL 539008 at fn. 2 (10th Cir. 1995)(unpublished); *Deatherage v. Stice,* Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished).

5.      Finally, the Special Master finds and concludes that the Remedial Plan does not give the Special Master jurisdiction to consider claims of retaliation that arose after the execution of the Plan on August 27, 2003.

Because Claimant Sullivan has failed to demonstrate that he has a permanent mobility disability or a permanent hearing disability and because he has failed to demonstrate that he suffered any discrimination cognizable under the ADA, the Rehabilitation Act or the Remedial Plan, his claim must be denied.

## IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Sullivan's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 24, 2006** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

7

SIGNED this 24th day of October, 2006.

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 24th day of October, 2006 to the following:

Mr. Robert B. Sullivan, CDOC #116706
BOP #31854-013
F.C.I. Englewood
9595 West Quincy Avenue
Littleton, CO 80123

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

_____
Susan L. Carter