IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-389
Category: II
Claimant: Darrell Payne, #112150
Address of Claimant: FCF, P.O. Box 999, Canon City, CO. 81215-0999

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Darrell D. Payne. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Payne submitted a claim which was assigned claim number 02-389. The claim is premised on an alleged vision disability and disability due to diabetes.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  Claimant Payne first entered CDOC custody in February of 2002. He was paroled in July of 2003 but returned to CDOC custody in December of 2004. During his incarceration, he has been housed at Arkansas Valley Correctional Facility (AVCF) and Freemont Correctional Facility (FCF).

4.  Claimant is a diabetic. When he entered CDOC custody in February of 2002, his blood glucose level was very high. His medical records indicate that he was immediately placed on a special diet. Less than one month later, he was placed on insulin. Claimant also states that his has vision problems. He wears corrective lenses. Claimant indicates that he has glaucoma and possibly retinopathy.

5.  Claimant Payne asserts that he has not received proper medical treatment and medications for his diabetes. He contends that necessary blood tests have not been

3

performed on a regular and timely basis. Claimant further complains that despite his continued requests, he was not given an eye examination for over a year after he entered CDOC custody and he is not being provided with periodic eye examinations. Claimant Payne asserts that he requested a large print Bible but his request was rejected by CDOC personnel. Finally, he states that he is required to wear black work boots despite the fact that they are not good for diabetics.

6. Claimant's medical records show that he has received insulin, as well as other medications and a special diet to control his diabetes. He has also been given a bottom tier-bottom bunk restriction. The record indicates that Claimant has not been fully compliant with his diabetic diet. Claimant's vision was checked on February 26, 2003, at which time his uncorrected visual acuity was 20/30 in both eyes. When he returned to CDOC custody in 2004, he was wearing glasses that he had purchased and his visual acuity with the glasses was 20/20.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Payne has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent vision impairment or a permanent impairment due to his diabetes. Claimant's vision at the time he entered CDOC custody was not so deficient as to substantially limit his ability to engage in any major life activity. When he returned to CDOC custody in 2004, he was wearing glasses and his corrected vision was 20/20. Although Claimant has diabetes, his medical records show that he is receiving insulin and other medications as well as a diabetic diet and that his diabetes is generally under control. There is no evidence in the record suggesting that Claimant's diabetes substantially limits him from engaging in any major life activities. To the contrary, his medical records indicate that he exercises, walks, bikes, uses a jump rope and plays basketball.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4. Claimant Payne's primary complaint is that he has not received proper medical care for his diabetes and that he was not allowed to see an eye doctor for over a year. To the extent that Claimant's discrimination claim is premised on the lack of proper or timely medical treatment, such claims are not cognizable under Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984).

5. Because Claimant Payne has failed to show that he has a permanent vision impairment or a permanent impairment due to diabetes which substantially limits his ability to engage in one or more major life activities, his claim must be denied.

### IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Payne's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before December 25, 2006** with the Clerk of the United States District Court at the following address:

>  901 19th Street
>  Denver, CO 80294.

SIGNED this 25th day of October, 2006.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

6

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 25th day of October, 2006 to the following:

Mr. Darrell D. Payne, #112150  
FCF  
P.O. Box 999  
Canon City, CO 81215-0999

Mr. James X. Quinn  
Mr. Jess A. Dance  
Office of the Attorney General  
Litigation Section  
1525 Sherman Street, 5th Floor  
Denver, CO 80203

                                            /s/ Susan L. Carter  
                                            _____  
                                            Susan L. Carter