IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-524
Category: II
Claimant: Philip Andrade, #53497
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Philip Andrade. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Andrade submitted a claim which was assigned claim number 02-524. The claim is premised on an alleged permanent hearing disability and a permanent vision disability.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  Claimant Andrade entered CDOC custody in 1986. Although the record does not specifically identify the facilities in which Claimant has been housed, it appears that for all or part of his CDOC custody, Claimant Andrade has been housed at the Arkansas Valley Correctional Facility (AVCF) and the Limon Correctional Facility (LCF).

4.  Claimant has suffered from bilateral hearing loss since he was a child. A 1983 audiology report indicates that he had mild to moderate sensorineural hearing loss bilaterally. In 1992, he was fitted for and received two hearing aids. During a shakedown at LCF in October of 2002, Claimant's hearing aids were either taken or lost. Initially, the CDOC refused to replace either of the hearing aids on the basis that Claimant himself had either thrown them away or destroyed them. After Claimant filed

3

grievances, CDOC changed its position and ultimately one of the hearing aids was replaced in approximately November of 2003.

Claimant states that he has difficulty understanding or hearing announcements over the intercom system. As a result, he indicates that he has missed chow call and recreation call. He says that he cannot talk on the phone because the noise level in the pods prevents him from hearing the conversation; and that he cannot perform certain unspecified jobs because he is afraid of hurting himself due to his hearing impairment. Claimant also states that it is difficult for him to hear the television or radio.

Claimant also indicates that his vision is impaired. He wears corrective lenses, but states that even with corrective lenses, his eyes hurt after reading for a period of time. He further notes that if he is outdoors for a long period of time, it takes a while for his eyes to adjust.

5. Claimant contends that CDOC improperly took his hearing aids during the October 2002 shakedown at LCF; that CDOC improperly refused to replace his hearing aids; and that when CDOC finally changed its position, only one of his hearing aids was replaced in November of 2003. Claimant asserts that he is restricted from having the sound on his radio or television too loud and that CDOC refuses to allow him to have headphones which would permit him to hear the television and radio better. Claimant also complains that he has received COPD convictions that stemmed from his inability to hear.

With respect to his vision impairment, Claimant complains that he has not been permitted to have a tape recorder so that he can listen to books on tape. He further asserts that the prison library does not have enough large print books.

6. Claimant's medical records confirm that he has moderate bilateral hearing loss and that he received two hearing aids in 1992. His records also confirm his complaints that his hearing aids were taken, lost or misplaced during the October 2002 shakedown; and that he was issued one replacement hearing aid in approximately November of 2003. Claimant's records show numerous telephone calls to relatives. Finally, the records submitted to the Special Master reveal several COPD convictions none of which appear to be attributable to any hearing impairment. No records have been submitted to the Special Master that speak to Claimant's vision impairment.

7. The records provided to the Special Master show that Claimant has consistently worked during his CDOC custody. They also show that Claimant received his GED while incarcerated in 1995.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

4

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has proved by a preponderance of the evidence that he suffers from a permanent hearing disability.  The evidence does establish that Claimant has significant hearing problems.  The medical records confirm that he has moderate permanent bilateral hearing loss.  More importantly, Claimant has described how his hearing loss limits his major life activity of hearing.  A moderate hearing loss may well be sufficient to constitute a disability if, after a comparison of the plaintiff and non-impaired individuals, it is determined that the hearing impairment is substantial. *E.g., Wilson v. Aetna Life and Casualty Co.,* 195 F. Supp. 2d 419 (W.D.N.Y. 2002).  Claimant points out that he cannot hear announcements on the intercom system, that he has difficulty hearing on the telephone and that he cannot hear the radio or the television.  While some evidence was offered by Defendants suggesting that Claimant is a frequent user of the telephone, there is no evidence in the record directly contradicting Claimant's description of his limitations.

Additionally, Claimant's hearing, as corrected by the use of hearing aids, generally might provide the proper standard under *Sutton v. United Airlines, Inc.,* 527 U.S. 471 (1999). However, such is not the case where, as here, CDOC refused to provide Claimant with hearing aids from October of 2002 until approximately November of 2003. As a result, the Special Master finds and concludes that during this time period, it is the effect of Claimant's uncorrected impairment on his ability to engage in the major life activity of hearing that provides the relevant legal standard.

The Special Master finds and concludes that Claimant has failed to demonstrate by a preponderance of the evidence that he suffers from a permanent vision disability. While Claimant does wear corrective lenses, this does not in itself qualify Claimant as being disabled. Furthermore, even though Claimant cannot read for long periods of time and has difficulty adjusting his eyesight when he is outdoors, the Special Master finds and concludes that these limitations are not "substantial," within the meaning of the ADA and/or Rehabilitation Act.

3.  The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). Although Claimant has several COPD convictions, there is no evidence that these disqualified him from participating in programs or receiving the benefits or services offered by CDOC.

4.  Of course, the key question is whether Claimant has been discriminated against because of his alleged disabilities. Generally, the failure of CDOC to provide hearing aids to a hearing impaired inmate, when viewed in isolation, does not give rise to a claim under the ADA and/or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). However, here the failure of CDOC to provide Claimant with hearing aids from October of 2002 until he finally received one hearing aid in approximately November of 2003 had a direct and substantial impact on Claimant's ability to engage in the major life activity of hearing. Specifically, it substantially limited Claimant's ability to utilize effectively the telephone, to hear the television and the radio and to hear announcements over the intercom. Consequently, the Special Master finds and concludes that CDOC discriminated against Claimant because of his hearing disability.

The Special Master finds and concludes that Claimant has not sustained his hearing disability discrimination claim insofar as it is based on unlawful COPD convictions. Such claims cannot be pursued under the ADA until and unless the disciplinary convictions or adverse administrative actions are overturned. *See Heck v. Humphrey,* 512 U.S. 477 (1994); *Daniel v. Fields,* 1995 WL 539008 at fn. 2 (10th Cir.

1995)(unpublished); *Deatherage v. Stice,* Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished).

     5.    Claimant has not established that he has suffered any economic loss as a result of the discrimination discussed in Paragraph 4 of the Conclusions, *supra.* Based upon the totality of the evidence, the Special Master finds and concludes that the sum of $300.00 is fair and appropriate compensation for CDOC's discrimination against Claimant because of his hearing disability.

## IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Andrade and against Defendants in the amount of $300.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 24, 2006** with the Clerk of the United States District Court at the following address:

          901 19th Street
          Denver, CO 80294.

SIGNED this 24th day of October, 2006.

          BY THE COURT:

          /s/ Bruce D. Pringle
          _____
          Bruce D. Pringle,
          Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 24th day of October, 2006 to the following:

Mr. Philip Andrade, #53497
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter