IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-542
Category: II
Claimant: Jorge Molina, # 116173
Address of Claimant: 1500 West Thornton Parkway, Space 276, Denver, CO 80260

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Jorge Molina. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Molina submitted a claim which was assigned claim number 02-542. The claim is premised on an alleged permanent mobility disability, permanent vision disability and permanent disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Molina entered CDOC custody in January of 2003. Although the record does not specify the facilities where Claimant has been housed, it appears that for all or part of his CDOC custody, he was housed at the Kit Carson Correctional Center (KCCC) and the Sterling Correctional Facility (SCF).

4. Claimant suffers from type II diabetes. He states that he also suffers from poor vision; that he has lost 80% of his vision in his left eye; and that his right eye is getting worse. Claimant indicates that he cannot participate in unspecified programs and activities because of his poor vision. Claimant states that his feet are too long and that they hurt. According to Claimant, he cannot walk long distances. Finally, Claimant asserts that he has a rash on his body.

5.   Claimant contends that CDOC medical providers failed and refused to treat properly his diabetes, his vision impairment and his rash.  He asserts that was not instructed or trained on how to control his diabetes.  He contends that he did not receive proper medication, was not permitted to see a specialist and that the medical treatment he did receive was often delayed.  With respect to his vision impairment, Claimant complains that CDOC medical personnel refused to provide him with reading glasses, and refused to authorize laser eye surgery.  Claimant also contends that he was charged $5.00 for each medical visit.

Claimant states that while in CDOC custody, he feared for his life and was concerned that the inadequate medical treatment he received would adversely affect his ability to care for his family once he was released.  Claimant also complains that he was not given good time credit because of his disabilities.  Further, Claimant contends that his good time credits and his ability to take classes were adversely affected by a pay-cut strike in the kitchen where he was employed, even though he continued to work during the strike.

6.   Claimant's medical records confirm that he has type II diabetes. The records show that he received continuous medical treatment for this condition. Shortly after entering CDOC custody, in February of 2003, Claimant was provided with several prescription medications including:  Glucophage, Lescol, insulin and DiaBeta.  At the same time, he was given a hand-out on type II diabetes and was also verbally instructed on his condition.   On February 6, 2003, he was placed on a diabetic diet, although in January of 2005, he executed a written refusal of his prescribed diet.

7.   The medical records also confirm that Claimant has poor visual acuity. His visual acuity in the left eye has ranged from 20/100 to 20/200 and his right eye visual acuity has ranged from 20/30 to 20/60.  In February of 2005, Claimant executed a refusal against medical advice to see an eye doctor.  By March of 2006, the records indicate that Claimant had reading glasses.

8.   The records submitted to the Special Master indicate that Claimant suffered a loss of good time credit due to non-compliance with his Sex Offender Treatment and Monitoring Program.  There is no indication, other than Claimant's statement, that his loss of good time credit was in any way related to a kitchen strike.

9.   Claimant's records indicate that while he was at SCF, he worked in the kitchen.

### III.  CONCLUSIONS OF LAW

1.   The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

Claimant's visual acuity in his left eye is severely impaired. For all intents and purposes, he has monocular vision. Claimant's vision in his right eye is moderately impaired. It is debatable whether Claimant's vision impairment rises to the level of a disability within the meaning of the ADA and/or the Rehabilitation Act. Monocular vision is not *per se* a substantial limitation on seeing. *Albertson's Inc. v. Kirkingburg,*

5

527 U.S. 555 (1999). However, for purposes of this Order, the Special Master will assume that Claimant has demonstrated by a preponderance of the evidence that he has a permanent vision disability.

The Special Master finds and concludes that Claimant Molina has failed to establish by a preponderance of the evidence that he suffers from either a permanent mobility disability or a permanent disability due to diabetes. There is no evidence in the record that Claimant has any mobility impairment that substantially limits his ability to engage in one or more major life activities. The fact that he may have some pain when walking is insufficient to establish a permanent mobility disability under the ADA and/or the Rehabilitation Act. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.,* 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.,* 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir. 1996).

The Special Master finds and concludes that Claimant's diabetes does not constitute a permanent disability under the ADA and/or the Rehabilitation Act. In this case, Claimant has offered virtually no evidence that would allow the Special Master to determine whether he is "substantially limited" in any major life activity due to his diabetes, *i.e.,* whether he is "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Claimant simply states that he has diabetes. Claimant, however, has not offered evidence of the frequency or severity of his symptoms. Claimant's diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999).

Finally, the Special Master finds and concludes that Claimant's rash is not an impairment which falls within the scope of the Remedial Plan.

3. Even assuming that Claimant suffers from a permanent vision disability and/or a permanent disability due to diabetes, there is nothing in the record establishing that he has been discriminated against because of his disabilities. There is no evidence in the record, other than Claimant's allegations in his Claim and Supplemental Claim, suggesting that the treatment, medications and instructions of his medical providers regarding Claimant's vision problems fell below the standard of care required by law.

Even if they did, such issues may give rise to a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4. The Special Master finds and concludes that Claimant's contention that he lost good time credit because of his disabilities is not supported by the record. The record reflects that Claimant lost good time credit due to non-compliance with his Sex Offender Treatment and Monitoring Program.

Because Claimant Molina has failed to demonstrate that he has a permanent mobility disability or a permanent disability due to diabetes, and because he has failed to demonstrate that he suffered any discrimination cognizable under the ADA, the Rehabilitation Act or the Remedial Plan, his claim must be denied.

### IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Molina's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 24, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 24th day of October, 2006

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 24th day of October, 2006 to the following:

Mr. Jorge Molina, #116173
1500 West Thornton Parkway, Space 276
Denver, CO 80260

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

                                                    /s/ Susan L. Carter

                                                   Susan L. Carter