IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-557
Category: II
Claimant: David Sam, #107382
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant David Sam. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Sam submitted a claim which was assigned claim number 02-557. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Sam entered CDOC custody in November of 2000. Although the record does not specify the facilities where Claimant has been housed, it appears that for all or part of his CDOC custody, he has been housed at the Buena Vista Correctional Facility (BVCF) and the Arrowhead Correctional Center (ACC).

4. Claimant suffers from damage to his left and right knees. He states that he has torn ligaments, tendons and cartilage in his right knee and a complex lateral meniscal tear in his left knee. Claimant indicates that he has bone pain and muscle atrophy and wears a brace on his right knee that was prescribed by an orthopedic doctor.

5. Claimant contends that CDOC medical providers refuse to authorize surgery on his right knee and have told him that he should wait ten years before having a knee replacement. Claimant asserts that CDOC medical providers have rejected his

alternative treatment request involving Oxandrolone and exercise. He complains that in July of 2003, he was attacked by another inmate because his knee problems made him a "target." He states that he received discipline as a result of the incident including loss of his job in prison industries and loss of his honor living quarters. Apparently he has been returned to a single cell or "honor dorm," but states that it is on the third tier and that there are no single cells on the first tier. Claimant further states that there is a lack of jobs for mobility disabled inmates and that the recreational area does not contain equipment designed for use by mobility disabled inmates.

      6.    The few medical records provided to the Special Master show that Claimant had MRIs performed on his knees in May of 2005. The MRI of the left knee revealed a complex lateral meniscal tear. The MRI of the right knee showed moderately severe osteoarthritic changes with bilateral complex meniscal tears. There was some question as to whether there might also be a partial tear of the posterior cruciate ligament. Claimant indicates that the CDOC doctor recommended that he have arthroscopic surgery on his left knee but Claimant declined because he was concerned about the surgery doing further damage to his better knee.

### III. CONCLUSIONS OF LAW

      1.    The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

      2.    The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

      The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility,

4

hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Masters' authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent mobility disability. The medical records clearly establish that Claimant suffers from significant ligament damage to both his knees with the right knee being more severely damaged. However, a Claimant's diagnosis of significant ligament damage in his knees, by itself, is insufficient proof that Claimant suffers from a permanent mobility disability under the ADA and/or the Rehabilitation Act. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999). Rather, Claimant must demonstrate that his knee damage results in a substantial limitation to his ability to engage in one or more major life activities.

There is virtually no evidence in the record showing how Claimant's knee problems affect his ability to engage in major life activities such as walking and climbing stairs. It appears from the very limited information provided to the Special Master that Claimant walks with a brace and is able to negotiate stairs to get to his third tier cell. Otherwise, the record is entirely silent on the effect of Claimant's knee damage.

3. Even if we assume that Claimant suffers from a lower mobility disability, there is nothing in the record establishing that he has been discriminated against because of his disability. Claimant's complaints reflect an ongoing dispute between Claimant and his medical providers regarding the proper treatment of his knee problems and the appropriate medication to relieve his pain. There is no evidence in the record, other than Claimant's allegations in his Initial Claim and his Supplemental Claim, suggesting that the treatment and the opinions of his medical providers regarding Claimant's knee

5

problems fell below the standard of care required by law. Even if they did, such issues may give rise to a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4. Furthermore, Claimant's contention that he was discriminated against through the loss of his job and various privileges cannot be the basis for a claim under the ADA and/or the Rehabilitation Act. Claimant has indicated that the loss of his job and his "honor" cell was the result of a disciplinary conviction. To the extent that Claimant Sam takes issue with his CPOD and other disciplinary convictions, such claims cannot be pursued under the ADA until and unless his disciplinary convictions or adverse administrative actions are overturned. *See Heck v. Humphrey,* 512 U.S. 477 (1994); *Daniel v. Fields,* 1995 WL 539008 at fn. 2 (10th Cir. 1995)(unpublished); *Deatherage v. Stice,* Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished).

5. Finally, although Claimant asserts that the recreation area at BVCF did not have equipment specifically designed for persons with permanent mobility disabilities, there is no evidence in the record that Claimant ever requested special equipment or an exercise program that would accommodate his knee problems. Absent proof that Claimant requested or otherwise made his need for accommodation regarding exercise equipment known to CDOC personnel, his claim of discrimination must fail.

Because Claimant has failed to demonstrate that he has a permanent mobility disability and because he has failed to demonstrate that he suffered any discrimination cognizable under the ADA, the Rehabilitation Act or the Remedial Plan, his claim must be denied.

### IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Sam's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 24, 2006** with the Clerk of the United States District Court at the following address:

                901 19th Street
                Denver, CO 80294.

SIGNED this 24th day of October, 2006.

                BY THE COURT:

                /s/ Bruce D. Pringle
                _____
                Bruce D. Pringle,
                Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 24th day of October, 2006 to the following:

Mr. David Sam, #107382
ACC
P.O. Box 300
Canon City, CO 81215-0300

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter