IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 02-745
Category II
Claimant: Geri Stebnitz-Burt, #69512
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

___

**FINAL ORDER OF SPECIAL MASTER**
___

      THIS MATTER comes before the Special Master on the claim of Geri Stebnitz-Burt (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Denver Women's Correctional Facility (DWCF) in Denver, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but she has filed nothing further in support of her claim. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

As set forth in the initial claim form, Claimant stated that she came into DOC custody on May 21, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Colorado Women's Correctional Facility (CWCF) in Canon City, Colorado. She then was transferred to the Pueblo Minimum Center (PMC) in Pueblo, Colorado. She was at PMC when she filed her claim. Claimant was released on parole on January 1, 2005. It appears that parole was violated and a new sentence was imposed on a case that arose after her release on parole. Claimant returned to DOC custody on April 20, 2006. She presently is incarcerated at DWCF.

In her initial claim form, Claimant checked the boxes for hearing and vision impairments. Claimant stated, in part, as follows:

> My hearing in my left ear is very bad. Also I've not been seen by anyone for this and over the past 1+ years it's gotten worse. I believe I may need a hearing aid.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I received eye glasses (state issue) in September, 2002. At that time I had my own glasses which DOC made me send home - because I couldn't prove they were prescription glasses. Since my eye exam my eyes have gotten worse, my glasses are broken beyond repair and lenses are scratched badly. I initially paid for my state glasses (I live on 23¢ per day State pay) $3.00 for glasses. I can no longer see print unless it is large print. I can only get a new pair w/o an eye exam for $12.75 which I don't have. We can order out for glasses from outside stores (Sears - Lens Crafters-, etc.). However, I do not have family to buy them and have them sent in w/receipt & prescription, or to order them from this facility. I am in terrible need of glasses. I can no longer read close up or at a distance, I believe it's from having to use damaged eye glasses. At one point I was told by medical at CWCF that I can only get one pair of glasses after 3 years. I have medical kite requesting new glasses with their denial.

In her supplemental form on hearing impairment, Claimant stated, in part, as follows:

> I am almost deaf in my left ear.

> I am unable to hear and the jobs they have given me could be dangerous with a hearing loss. Working around heavy equipment that is operating or working in the kitchen around industrial ovens & steam release cookers - I'm in fear of physical injury all the time.

4

In the supplemental form on vision impairment, Claimant stated, in part, as follows:

> I was made to send home my prescription glasses and was given DOC glasses with a minor exam - After those glasses given me were both broken and scratched, I was told I couldn't get another eye exam and glasses until 9/05 - every three years DOC will give us eye exams and glasses - I make 60¢ per day & 20% of that goes to any restitution I may have.

Claimant submitted no medical records or other documents in support of her claim.

Defendants have submitted both a motion to dismiss and a response to the claim. The Special Master will review only the response, as that deals with the merits of the claim. Defendants have attached some medical and other records to their response.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that she was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

**Vision Impairment:** Claimant has alleged that she is vision impaired. She acknowledges that she received glasses from DOC in late 2002. She maintains that those glasses were broken and scratched on the date when she filed her claim.

In order to qualify as vision impaired, a claimant must establish that she had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed. Claimant has not established on that date that she was vision impaired, as defined by the Settlement Agreement.

Claimant received a vision exam at intake on September 25, 2002. The exam reflected that uncorrected vision was 20/30 and 20/25 in her eyes. *Exhibit D*. She was provided glasses on October 11, 2002. The evidence presented does not indicate that Claimant was vision impaired on that date or any date prior to August 27, 2003. No major activity of daily life was affected by the vision issues that Claimant has alleged. Claimant was given the opportunity to rebut the response of Defendants and she did not do so. Claimant has failed to establish that she was vision impaired, as defined by the Settlement Agreement, on or before August 27, 2003.

**Hearing Impairment:** In her initial claim form, Claimant states that she is almost deaf in her left ear. Claimant does not allege that she has had to rely on written communication, lip reading

5

or signing in order to communicate.

On August 12, 2002, Claimant had a physical examination when she entered DOC custody. There were no complaints about hearing loss or any finding by medical staff. *Exhibit B*. When she re-entered DOC in April, 2006, she did not indicate that she had a hearing problem.

The evidence presented by both sides reflects that Claimant is not hearing disabled. She may have a hearing issue, but it has not affected a major activity of daily living. Claimant can hear with her right ear. There is no evidence that any hearing loss rises to the level of a disability. That is particularly true when there are no documents reflecting that DOC was made aware of any claimed loss of hearing in either ear. Claimant has not met her burden of proof as to hearing impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Geri Stebnitz-Burt is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 31st day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master