IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-808
Category II
Claimant: Tracey Hansen, #115814
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Tracey Hansen (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Denver Women's Correctional Facility (DWCF) in Denver, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but she has filed nothing further in support of her claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>   I. General inconvenience or nominal damages;
>   II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
>   III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
>   IV. Damages due to severe physical injuries; and
>   V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>   2. Permanent Hearing Impairments
>   Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>   3. Permanent Vision Impairment
>   Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>   4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>   Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in July, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the DWCF and remains at that institution.

In her initial claim form, Claimant checked only the box for mobility impairment. She stated, in part, as follows:

> Have a spinal injury from MVA (motorcycle) 1983 C-3 thru T1 bony bar at C5-6 & C6-7. Neck and back prevent me from sleeping on these mats. Cement. Bathrooms are very difficult to shower and use sinks. I have problems with my hands and arms falling asleep and the water won't stay running. Had closed head injury and I have a difficult time hearing (6-2-04) I saw doctor about ringing and nothing was done. No ear "infection."  Still loud ring/buzz and can't hear what I'm supposed to do over load speakers and in chow hall.

In response to the question on discrimination by DOC and its staff, Claimant stated, in part, as follows:

> CDOC will not allow extra mattress for back injury. Announcements are made and if someone doesn't tell me & I miss it, then I'm not allowed to go at another time. I can't carry my bag then I am yelled at and harassed. I walk slow in fear of injury my back even more and no time barriers are given (or heard at least). I cannot get medication to relieve the pain in my back anymore ....

In a subsequent filing, Claimant alleges that she was diagnosed on December 9, 2003 with degenerative disk disease (DVD), osteoporosis, and scoliosis. She also indicated that DOC was discontinuing all narcotic pain medications for most inmates. In a supplemental form for mobility impairment, Claimant reiterated that she had been diagnosed with DJD and the other back conditions.

Defendants' response contains a number of attached medical records. Defendants dispute that Claimant is mobility impaired, as defined by the Settlement Agreement. Defendants have requested that the claim be dismissed.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant has alleged that she suffered a head injury at some point which has led to ringing in her ears. The brain injury claim is not recognized by the Settlement Agreement. Claimant may pursue a separate lawsuit concerning

that condition.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that she was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

Claimant came into DOC custody in July, 2002. She has alleged that she was injured prior to her incarceration. Review of all information provided by both sides indicates only one entry before August 27, 2003 in her medical records concerning back pain. That entry was on March 28, 2003 and reflected back pain. *Exhibit A*. Claimant was advised to do hot patches and was given pain medication. Later in 2003 she was referred for a spinal examination. *Exhibit B*. This was on October 2, 2003. Claimant was provided a lay in for one day from her sewing work.

The remainder of the medical records and other documents submitted by Defendants reflect entries from 2004 to the present. It was determined in March, 2005 that Claimant was medically unable to carry out her sewing assignment.

As mentioned previously, Claimant was given an opportunity to file a reply to the Defendants' response. She did not file anything further. Thus, the Special Master must adjudicate the claim on what has been presented by both sides. Further, the evidentiary burden is on Claimant to establish that she was disabled, as defined by the Settlement Agreement, on or before August 27, 2003. In addition, she must establish that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant can establish that she was disabled and discriminated against before August 27, 2003, the Settlement Agreement provides that she may request relief for actions that have occurred since August 27, 2003.

The problem is that Claimant has not established that she was disabled on or before August 27, 2003. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has ever been in a wheelchair while in DOC custody. Further, the evidence reflects that Claimant does not have a lower extremity condition that affects walking. Claimant has a bad back which does not fall into the category of mobility impaired.

Finally, Claimant has not established that she was discriminated against due to a disability on or before August 27, 2003. The only entry in her medical records prior to August 27, 2003 reflects back pain. Claimant has not met her burden to establish her case as it relates to the time period prior extending back from August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other

5

reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant did not establish that she was the victim of discrimination based upon a recognized disability on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Tracey Hansen is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 31st day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master