IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-870
Category II
Claimant: Edward Rice, #117368
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Edward Rice (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Arkansas Valley Correctional Facility (AVCF) at Crowley, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>   A. COVERED DISABILITIES
>   The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 8, 2002. Claimant then was released on March 22, 2004. He returned to DOC custody on January 2, 2005.

Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Claimant was at SCF when he filed his claim. He was transferred to AVCF at some point. He remains at that facility.

In his initial claim form, Claimant checked the boxes for mobility and vision impairments. Claimant stated, in part, as follows:

> Seizure disorder. Medications phenobarbital, dilantin, can't drive. They know my vision is seriously impaired but will not help with glasses which in turn impairs my mobility.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Because I do not have enough of a sentence for them to help me. Have been named 100% disabled by Dr. Singh of Sterling Correctional Facility March 2004.

Claimant was provided supplemental forms to complete, but he never submitted them to the Special Master. Claimant requested and received additional time in which to file documents in support of his claim, but nothing further has been filed.

Defendants have filed a response contesting the claim. Attached to the response are copies of medical records of Claimant. One record reflects a vision screening in June, 2006 which indicated 20/70 in the right eye and 20/70 in the left eye without glasses. The attached documents also reflect that Claimant is able to walk without stopping for at least 100 yards.

Claimant was given the opportunity to rebut the response of Defendants. He has not filed anything further. The Special Master must adjudicate the claim based upon what has been filed by both sides at this time.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer

this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

**Vision Impairment:** Claimant has alleged that he is vision impaired and has not received appropriate glasses. In order to qualify as vision impaired, a claimant must establish that he had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed. Claimant has not established on that date that he was vision impaired, as defined by the Settlement Agreement.

Claimant received a vision screening in June, 2006 which reflected he had glasses and that his eyesight was good when corrected. Claimant was given the opportunity to rebut the response of Defendants and he did not do so. Claimant has failed to establish that he was vision impaired, as defined by the Settlement Agreement, on or before August 27, 2003.

**Mobility Impairment:** Claimant's primary medical issue is seizure disorder. His records reflect that he has had seizures, as well as heart problems. He acknowledges that he has been receiving medications for his seizure disorder.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." No evidence exists in the record that Claimant has ever been in a wheelchair while in DOC custody. In addition, no evidence has been presented that he had a permanent lower extremity condition that affected walking. Claimant's seizure disorder may constitute a disability, but it is not one covered by the Settlement Agreement.

Claimant carried the burden to establish that he had a mobility impairment, as defined by the Settlement Agreement, on or before August 27, 2003. He has not met his burden of proof. He may pursue any claims of discrimination because of his seizure disorder through a separate lawsuit.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be answered, as the answer to Question #1 was no.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Edward Rice is denied, as he has failed to

prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 31st day of October, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master