IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 01-114
Category I
Claimant: Kenneth Kyle, #109449
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

___

## FINAL ORDER OF SPECIAL MASTER
___

    THIS MATTER comes before the Special Master on the claim of Kenneth Kyle (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in June, 2001. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at SCF. He remains at that facility.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> 1) knees - chondromlacia patella, Osgood Schlatter's disease, baker's cyst. Separately & combined they cause severe pain, weakness, instability. Brought about by extensive mobility, climbing stairs, ladders. Limits types of employment and quality of life.
> 2) left heel - plantar faciatis and recurring heel spurs. Limits walking and extensive lifting. Severe pain & discomfort that limits employment and quality of life.
> 3) torn hip flexor muscle, right side. Caused by work related injury in 1996. Healed improperly leaving internal scar tissue. Causes chronic lumbar, groin & inner right thigh pain. Difficulty in lifting, extensive mobility, chronic pain, limits work (no heavy lifting or squatting) and general quality of life.
> 4) inguinal hernia & testicular cyst. Cause of hernia due to work related injury in 1996. Cyst discovered during treatment. Causes severe pain during extensive physical activity, including walking and lifting. Limits physical activity and general quality of life.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> When I arrived at DOC in June, 2001 I presented copies of documents from Colo. Dept. of Voc. Rehab. Colo. Div. Of Worker's Comp., and Denver Dept. of Human Services, detailing the disabilities mentioned herein. On 6/26/01, I was granted a bottom bunk restriction.
> On April 5, 2004, the bottom bunk restriction was terminated. I was informed by CO Cone, a CO Housing officer restriction had to be renewed annually.
> Within 2 weeks, during a medical visit, Dr. Singh refused to renew he restriction, even though he was presented with all of the symptoms by the examining P.A. He stated that the 4 mentioned physical limitations, plus my ongoing treatment for cardiovascular problems weren't enough to warrant the bottom bunk restriction.
> On May 31, 2004, I inspected my medical, the appointment made in response to a kite submitted on April 15, 2004. When I reviewed my records, I discovered that all the documentation I'd previously submitted, and documentation requested by DOC from a treating physician via signed release, were all missing from my medical

records. All outside verification of my disabilities was apparently removed by DOC staff.

Claimant submitted a document entitled "Additional Information." In that document, Claimant stated, in part, as follows:

> 1. On 8-9-01 I refused treatment by Dr. Singh at SCF because of what I felt to be previously sub-standard treatment by him combined with his condescending manner toward inmates (Attached). From 8-9-01 on I was never scheduled to be seen by him.

Claimant also indicated that he had fallen from a top bunk on November 25, 2004. Attached to this document were a refusal of treatment relative to Dr. Singh, dated August 9, 2001, medical records relating to the bottom bunk restriction, an x-ray report from April, 2004 reflecting lumbar degenerative disc disease, and other documents relating to his request for disability status.

Defendants filed a response which contains no attachments. Defendants argue that Claimant has failed to establish his claim and that it should be dismissed. The response will be treated as a motion to dismiss.

Claimant was granted up to and including April 24, 2006 in which to file a reply to the Defendants' response. Claimant filed a motion asking for an extension of time, and that was granted up to and including July 31, 2006. Claimant filed a second motion for extension of time, and that was granted up to and including October 23, 2006. Despite being granted several additional months in which to file a reply, Claimant has filed no further documentation in support of his claim.

### III.

Under the Settlement Agreement, the burden is upon a claimant to establish that he was disabled on or before August 27, 2003 and was the victim of discrimination prohibited by the ADA and Rehabilitation Act. The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. If any of the four questions is not positively established, then a claimant cannot prevail.

Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Claimant came into DOC custody on June, 2001. In the time period ending on August 27, 2003, Claimant has mentioned only one thing. He refused to be treated by Dr. Singh because of "Dr. Singh's condescending manner toward clients." There has been no evidence presented that Dr. Singh singled out disabled inmates for special treatment. Indeed, Claimant has indicated that he was condescending to all inmates.

5

Claimant was granted a bottom bunk restriction which was not revoked until April, 2004. His claim form and supplemental information all involve actions that took place after April, 5, 2004. Claimant has not established that he was the victim of discrimination due to a disability on or before August 27, 2003. Having failed to prove that such discrimination place on or before that date, the Claimant not present to the Special Master any discriminatory acts that post-date August 27, 2003. The Special Master has no jurisdiction over post-August 27, 2003 action unless there was discrimination before that date.

Claimant is not without a remedy. He may bring a separate lawsuit to deal with what occurred from April 5, 2004 on. He may not pursue his claim, as he has not established that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

IT IS HEREBY ORDERED that the claim of Kenneth Kyle is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 3rd day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master