IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-726
Category II
Claimant: Franklin D. Kemp, #103605
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Franklin D. Kemp (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC) at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to respond to the motion of Defendants. This included an extension of time up to and including October 23, 2006. Claimant has filed nothing further in support of his claim or in response to the motion to dismiss. Further argument will be waived.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Defendants have filed a motion to dismiss. The Special Master must accept as true all reasonable allegations set forth by Claimant. The only document filed by Claimant concerning his claimed disability is the initial claim form.

Claimant entered into DOC custody at some point in the early 2000's.[2]  In his initial claim form, Claimant checked the boxes for vision impairment and for mobility impairment. Claimant stated, in part, as follows:

> Granuloma mullacula. A pigmentation disease (it eats your muscle tone) makes hands & arms weak (makes me hurt 24/7). Both arms. Vision I wear DOC plastic lenses that come scratched and every time you clean them they get more scratched. 700-05 is not a proper AR. My feet also have calluses between my toes. Need medical attention. Nurse/practitioner said she was going to deal with it but hasn't in 4 ½ years. Can't lift nothing over 25 lbs without severe pain.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Denied good time earned time by case manager (says I'm too old for it).

Claimant was provided supplemental forms to fill out for both vision and mobility impairment. He has never submitted those to the Special Master. Likewise, Claimant has not submitted any medical or other records in support of his claim.

## III.

A claimant must allege in his claim or accompanying documents that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. Pursuant to the Settlement Agreement, this discrimination must have taken place on or before August 27, 2003. If a claimant establishes that he was discriminated against during the period of time prior to August 27, 2003, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Discrimination must be the result of a recognized disability. An example would be an individual who is wheelchair bound being placed into a cell that is too small for the wheelchair. The claim process was established to allow claimants to submit their forms without the need for legal assistance. The Special Masters have granted great latitude to claimants to state why they believe

---

[2] Claimant did not indicate on his claim form the year he came into DOC custody. All he indicated was February 14.

that they are disabled and why they believe that they were subjected to discrimination in violation of the ADA and Rehabilitation Act.

Accepting as true everything that is present in the initial claim form, Claimant has not alleged any discriminatory act/s by DOC or its staff. He clearly has not set forth even the minimal allegations that would allow him to prevail. That is particularly true since Category II claims are not entitled to a hearing. Normally, the Special Master would examine the claimed disability first, but that does not need to be done here. Claimant cannot prevail, as a matter of law, on the discrimination portion of his claim. There simply are no allegations that he was treated differently from other inmates who did not have a disability. Claimant was given an opportunity to respond to the motion to dismiss, including receiving an extension of time at his request. Claimant has not responded in any fashion. The motion to dismiss will be granted.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Franklin D. Kemp is denied, as he has failed allege or prove by a preponderance of the evidence any discrimination by DOC and its staff as required by the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 3rd day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master