IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-160
Category II
Claimant: Reginald Price, #104650
Address of Claimant: P.O. Box 751, Brookshire, TX 77423

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Reginald Price (Claimant). Defendants filed an answer to this claim. Claimant was granted up to and including October 30, 2006 in which to file a reply to the answer of Defendants. Claimant has filed nothing further in support of his claim.

The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval

established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, p.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not need require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the

2

criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category II are to be resolved without a hearing. The Special Master has re-examined the claim and all supporting documents and has determined that placement of this claim into Category II is appropriate.

The Special Master has reviewed the claim, supplemental form and other documents submitted by Claimant. The Special Master has reviewed the response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants. Claimant did not do so.

Claimant came into DOC custody in April, 2000. At the time he filed his claim in April, 2004, Claimant was at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Claimant has been released from custody and now is living in Texas.

In his claim form, Claimant stated, in part, as follows:

> Impaired mobility in right knee: I have difficulty walking or standing for 15 minutes. My disability limits my mobility of walking and standing. I have been diagnosed as having a tricked knee: see attachment B. I have notified medical that I have pain in my right knee when I walk and that my leg buckles on me when I walk and I fall. See attachments C and D.

Though Claimant refers to attachments, none were submitted with his claim form. Claimant also states that he was subjected to discrimination because DOC did not update his medical rating and that he lost jobs and other privileges because of his medical status.

Claimant submitted a supplemental form for mobility impairment. In that form, Claimant stated, in part, as follows:

3

> My disability affects me in DOC because: I fall when leg (knee) buckles. Limits my walking and standing more than 100 yards and 15 minutes of standing. I hurt with pain when I stand more than 15 minutes or walk more than 100 yards. It forces me to sit down due to pain. Limits most of my every day activities that require standing or walking.

Claimant stated further that he had requested a knee brace but that had been denied. Claimant stated that he was assigned to an outside work crew which required walking and standing. Claimant asked to be relieved of the transfer to the work crew, but was placed into an unassigned status. Claimant wanted to be placed back into his previous job, but that request was denied. Claimant believes that this treatment was discriminatory and punishment due to his injuries.

Defendants' response to the claim denies the allegations of Claimant. Attached to the response are two documents. The first document is a disposition of charges reflecting that Claimant was convicted of unauthorized absence in May, 2002 during the time that he was unassigned. The second document is an Accommodation Resolution which reads, in part, as follows:

> Initially Dr. Frantz screened this offender and determined he had a mild mobility disability which warranted a short route pass, housing and standing restrictions although he appeared to move about the clinic and exam room without obvious difficulty, limp, or affected gait.
> Approximately one month later, Dr. Frantz and HSA Judy Bullard viewed a video tape which clearly showed the offender walking around the yard, recreating, orientating another offender to the facility, all without difficulty. He walks to and from the rec hall from his living unit which is the farthest away; therefore he should be able to walk the regular route to meals and meds. The video showed no apparent functional difficulty which would warrant a standing restriction, and the offender was sent a letter stating that his restrictions had been lifted.
> The offender clearly has no disability and gives every appearance of exaggerating whatever pain he might have associated with his knee problem. No accommodations will be afforded this offender.

Claimant was given the opportunity to file reply in rebuttal to the response of Defendants. He has filed no further documents.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has indicated on his claim form that he is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility

4

impairment that substantially limits walking...." Claimant has not proven or alleged that he was in a wheelchair at any time while in DOC custody.

Claimant alleges that he has knee problems. He has submitted one medical document and little support for his claim. In response to his claim, Defendants have submitted evidence that he was observed by video camera in the yard at SCF showing no effects of a disability. As the result of the video tape, Dr. Frantz withdraw all previously issued restrictions.

Claimant has not rebutted the allegation and evidence submitted that he has no substantial impairment. Claimant carries the burden of proof under the Settlement Agreement to prove that he has a disability that affects a major life activity. Claimant has failed to carry that burden of proof, especially in light of the information submitted by Defendants.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Claimant failed to establish that he has a disability recognized by the Settlement Agreement, this question does not need to be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant failed to establish that he has a disability recognized by the Settlement Agreement, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Claimant failed to establish that he has a disability recognized by the Settlement Agreement, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Reginald Price is denied, as he has failed to answer affirmatively each of the four questions in the order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 29, 2007.**

SIGNED this 6th day of November, 2006.

BY THE COURT:

/s/ Richard M. Borchers

_____
Richard M. Borchers
Special Master