IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-706
Category II
Claimant: Roland A. Martinez, #108830
Address of Claimant: c/o Ms. Theresa Fleck, 1558 12th Street, Alamosa, CO 81101
_____

## FINAL ORDER OF SPECIAL MASTER
_____

    THIS MATTER comes before the Special Master on the claim of Roland A. Martinez (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He was then at the Sterling Correctional Facility (SCF) in Sterling, Colorado. He has been placed on parole and is residing in the San Luis Valley.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 17, 2001. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado. He is now on parole.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> Due to my fall back in Nov. of 2001 pain has increased a lot; unable to sleep on my side and has even gone on to increase numbing to my L arm along with numbing to my legs. I am unable to set down for longer than 10-15 minutes at a time because the pain in my neck is very severe & causes numbing to my legs when I do sit. I have been suffering all this time from pain not to mention the pain caused by side affects from all the different pain medication I was given. To be more specific I have a lot of pain in the soles of my feet along with bruising that hasn't gone away. This pain is unbearable when standing on my feet for any length of time over an hour or so.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Sterling Clinical Staff Services is showing deliberate indifference to my medical needs. I fell and injured my neck and lower back in November, 2001. Intentional denying access to medical care or interfering with personal treatment violates constitutional rights. Series of incidents violate 8th Amendment rights.

In his initial claim form, Claimant has alleged that he has been the victim of medical malpractice, negligence, and deliberate indifference.

In his supplemental form on hearing, Claimant stated, in part, as follows:

> I'm in constant pain, confined to my cell house because of my lack of mobility in not being able to participate in any sports activities, exercise is very limited....

Claimant attached to his supplemental form some of his medical records. One record for November 26, 2001 verifies that Claimant slipped and fell on his back due to a wet floor in the chow hall. He was granted the right to wear tennis shoes in February, 2002, but that was later revoked. He was granted a lower bunk restriction that was later revoked.

Defendants' response to the claim contains a number of medical and other records. An

offender profile reflects that Claimant did come into DOC custody on April 17, 2001. *Exhibit A*. He was paroled on November 23, 2005. During the period of time he was in DOC custody, he received seventeen disciplinary convictions.

Defendants also have submitted documentation indicating that Claimant is not disabled. Claimant was convicted for unauthorized absence due to playing handball in September, 2004. He suffered a twisted knee playing soccer in March, 2002 and baseball in August, 2005. Claimant had a number of jobs, and Defendants argue that he was able to work.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established. Thus, Claimant must establish that he was disabled during the period of time from April 17, 2001 to August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody. The evidence does substantiate a fall in the chow hall on November 26, 2001. He did hit on his back.

One entry from his medical records is notable. On March 19, 2002, Claimant went to medical to seek treatment for a twisted knee. Dr. Philbin, the treating physician, stated as follows:

> Pt. is 33 y/o Hisp. male - has been seen many times in part for "excruciating" pain - so bad he needs narcotics to make the pain bearable - yet he plays soccer

Another entry from August 8, 2005 reflects that Claimant was injured after playing in a baseball game. Claimant was given the opportunity to rebut the documents submitted by Defendants, but he has filed nothing further to support his claim.

Category II claims must be adjudicated on the forms and documentation submitted by both sides. There is no right to a hearing, and the Special Master must weigh the evidence that has been presented to him. The burden of proof is upon Claimant to establish that he has a qualifying disability and that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Claimant has failed to establish his claim that he was mobility impaired on or before August 27, 2003. A claimant that plays baseball, handball and soccer is not an individual who has "a

permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not carried his burden to establish that he was disabled.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Roland A, Martinez is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 6th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master