IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-719
Category II
Claimant: William E. Rose, #117181
Address of Claimant: Unknown

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of William E. Rose (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He was at that time at the Sterling Correctional Facility (SCF) in Sterling, Colorado. He has been discharged from his sentence with DOC and has provided no forwarding address. The last address available was SCF, and he is no longer there.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 28, 2003. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was at SCF when he discharged his sentence.

In his initial claim form, Claimant checked the boxes for hearing and vision impairments. Claimant stated, in part, as follows:

> Hearing: I am unable to hear intercoms, loudspeakers, and PA systems in general. I am also unable to have a conversation when there is any background noise, which almost always exists in the prison environment. I have trouble hearing verbal announcements and orders that are given by corrections officers.
> Vision: I have difficulty seeing at arms length which causes me problems seeing computer monitors, books, peoples faces, TVs, etc,

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I am in constant danger of punishment because I am unable to hear orders by corrections officers. I also routinely miss announcements for recreation, academics, and even meals. I experience difficulty hearing instructors in the classroom and embarrassment caused by misunderstanding what was said and having to ask people to repeat themselves. DOC refuses to acknowledge my vision disability. I first requested eye glasses in April 2003 and was ignored for months. Finally, I was prescribed a pair of glasses in July 2003 which the prescription was incorrect and they ignored all of my requests to be tested again for the correct prescription. I was then told that in order to get a correct prescription I would need to pay for a new eye exam and glasses. I was willing and able to pay but was never seen for an eye exam.

In his supplemental form on hearing, Claimant stated, in part, as follows:

> I have diminished hearing in both ears which prevents me from clearly understanding spoken words.
>
> I have requested a hearing aid on two different occasions but was denied. I was told that I didn't need any hearing aids even though my hearing was never tested.

In his supplemental form on vision, Claimant stated, in part, that "I have difficulty seeing objects at arms length." He further indicated that he could not view computer monitors or books. Claimant

submitted with his supplemental form two kites requesting a hearing aid and one requested a new vision examination.

Claimant submitted in June, 2005 some of his medical records. One document was a copy of a grievance concerning his hearing loss. The reply to the grievance stated that Claimant had been evaluated and found to be able to hear conversational speech. A medical entry from February 16, 2005 reflected hearing loss but ability to carry on a conversation.

Defendants' response contains a number of documents from Claimant's medical file. Those records reflect that Claimant has some hearing loss but was tested and found to be able to carry on a conversation. He was given permission to sit in the front row of his classes. *Exhibit A*. Defendants argue that Claimant is not hearing impaired, as defined by the Settlement Agreement.

Defendants' response also includes documents relating to vision testing. A vision examination was given when he first came into DOC custody and his right eye was determined to be 20/60 and left eye was 20/50. *Exhibit D*. It was determined that his vision was correctable to 20/20 for both eyes.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established. Thus, Claimant must establish that he was disabled during the period of time from April 28, 2003 to August 27, 2003.

**Vision Impairment:** Claimant has alleged that he is vision impaired and has not received appropriate glasses. Claimant has alleged that he was given glasses with the wrong prescription.

In order to qualify as vision impaired, a claimant must establish that he had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed. Claimant has not established on that date that he was vision impaired, as defined by the Settlement Agreement.

This claim must be resolved on the written documents submitted to the Special Master. The evidence submitted by both sides indicates that Claimant was tested when he came into DOC custody and had vision correctable to 20/20 for both eyes. He was provided glasses, and nothing has been submitted by either side to establish that the glasses had the wrong prescription. Likewise, there is no evidence that a major life activity was affected by the vision problems. Defendant has failed to establish that he was vision impaired, as defined by the Settlement Agreement, on or before

5

August 27, 2003.

**Hearing Impairment:** The evidence presented by both sides reflects that Claimant was tested for hearing loss when he came into DOC custody. It was determined that he was able to carry on a conversation and was not in need of a hearing aid. In addition, he was accommodated by allowing him to sit in the front row of his classes.

As with vision impairment, Claimant must establish that he was disabled, as defined by the Settlement Agreement, on or before August 27, 2003 and that his hearing impairment affected a major activity of daily life. Claimant has not established that his hearing loss affected a major life activity. He has established that he had some hearing loss but was able to hear. There is no evidence before the Special Master that Claimant was unable to function or had to rely on lip reading, signing or written communication in lieu of hearing.

Claimant has hearing loss. Claimant has failed to establish that this loss affected a major life activity, as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of William E. Rose is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 3rd day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master