IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-753
Category II
Claimant: Paul Lopez, #115636
Address of Claimant: SCF, P.O. Box 6000, Sterling, Colorado

---

## AMENDED FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Paul Lopez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a response of Defendants' motion, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>2. Permanent Hearing Impairments
>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>3. Permanent Vision Impairment
>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on December 7, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the SCF.

In his initial claim form, Claimant checked only the box for vision impairment. Claimant stated, in part, as follows:

> Vision: I am light sensitive, and have dry eyes; wear prescription photo gray glasses which will not be replaced if they become broken. I had eye surgery before 2002 to help with my dry eyes and need a nightly eye clean at bed time. Night mask helps with this dry eye condition. The ointment needs to be applied to each eye at night & eyes must be closed through night. Unable to do this if I have to get this done at med line & then walk back to unit 9:30 p.m.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Because of light sensitive I am not able to get prescription "sun glasses" from DOC. Nor am I able to get a "sleep mask" to block out light at night which allows me to sleep. Do not have ointment needed to prevent the dry eye conditions. Should be applied in cell, not at med line (self med).

In his supplemental form on vision, Claimant reiterated that he has a vision impairment due to dry eyes and light sensitivity. He stated that he had requested a sleep mask. Claimant has indicated that he has headaches due to the light sensitivity of his eyes.

Claimant also submitted medical records from Kaiser Permanente which reflect his dry eye condition. These records also contain other heath information that is unrelated to the claim.

Defendants' motion to dismiss argues that Claimant does not have a condition that is cognizable under the Settlement Agreement. Defendants request that the claim be dismissed.

## III.

Since Defendants have filed a motion to dismiss, all reasonable allegations mustl be accepted as true. Fed.R.Civ.P. 12(b). The motion may be granted only if Claimant cannot prevail as a matter of law.

Claimant has alleged that he is vision impaired. He has alleged light sensitivity and dry eyes. He has requested a sleep mask, appropriate glasses, and the ability to use a cream at bedtime, rather

than having to go to the medical line.

In order to qualify as vision impaired, a claimant must establish that he had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed. Claimant has not established on that date that he was vision impaired, as defined by the Settlement Agreement.

There are no allegations that Claimant cannot see or that he is unable to carry on his major activities of daily life. There are no allegations or evidence submitted by Claimant that he cannot hold a job, read, or do the myriad of life activities that require sight. He has an eye condition. That condition does not rise to the level of an impairment under the ADA and Rehabilitation Act. Accepting as true everything that Claimant has stated and submitted, he cannot prevail as a matter of law. The motion to dismiss will be granted.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Paul Lopez is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 7th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master