IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-762
Category II
Claimant: George Buels, #66292
Address of Claimant: Unknown

_____

### FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of George Buels (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He was at that time at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He has been discharged from his sentence with DOC. He provided an address in Aurora, Colorado, but the last order sent to the address was returned as undeliverable. The letter reflected that Claimant had moved and left no forwarding address.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on October 15, 1991. He was incarcerated at various DOC facilities, including AVCF, before discharging his sentence on December 19, 1994. Claimant returned to DOC custody on a new sentence on March 8, 2002. He was at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado until placed on parole on June 1, 2003. Parole was violated and he returned to DOC custody on August 25, 2004. He discharged his sentence on April 16, 2006.

In his initial claim form, Claimant checked the boxes for mobility, hearing, and vision impairments. Claimant stated, in part, as follows:

> (Mobility) I have three ruptured discs with arthritis in the small of my spine that causes persistent pain. Prevents and inhibits movement and farther worsening. Unable to perform some of the simplest daily activities. I can't sit or stand for long periods of times. It is worse in the mornings causing constant pain. (Hearing) I have hearing impaired in my left ear, often people thin that I am being rude. (Vision). Floaters have developed. Spots appear when unable to have access to food some times blurry vision stays longer that other and seems to be food related.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Being a man of color, I feel subjected to severe treatment under a presumption of ignorance. I was made to sit in a sitting position on a bus in restraints from 12 to 14 hr. each day for 8 days. Being extradited from Nevada to Denver that should have been a 12hr ride. Took 8 days. That cause me to have a heart attack on the bus in California while in custody of Department of Correction extradite bus.

Claimant submitted some medical records in support of his claim. A report from Dr. Jeffrey Scott, M.D. in February, 2002 indicated that Claimant has a significant L-4/5 disc herniation with radiculitis and disc degeneration. Claimant also indicated that he had other medical problems, including hepatitis. Claimant submitted some medical records from California and records from the Colorado Department of Human Services.

Defendants have submitted a response to the claim. Attached to the response are some medical records and an offender profile. Defendants argue that Claimant has not met his burden of proof to show that he was disabled at any time while in DOC custody.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established. Thus, Claimant must establish that he was disabled during the period of time from October 15, 1991 to December 19, 1994 or during the period from March 8, 2002 to June 1, 2003.

The Special Master would note that no evidence has been presented by either side concerning Claimant's health and physical condition during his initial incarceration from 1991 to 1994. That period of time will not be considered, since there is no evidence that any disability was being claimed during those years.

**Vision Impairment:** Claimant has alleged that he had floaters at some point during his time in DOC. He did not allege that these prohibited him from seeing.

In order to qualify as vision impaired, a claimant must establish that he had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed. The evidence submitted by Defendants reflects that Claimant had a vision examination and had 20/25 uncorrected vision in both eyes. Claimant has not established that he had a vision problem while in DOC custody prior August 27, 2003.

No evidence has been presented that a major life activity was affected by the vision problems. Floaters do no constitute a condition that rises to the level of a vision impairment. Defendant has failed to establish that he was vision impaired, as defined by the Settlement Agreement, on or before August 27, 2003.

**Hearing Impairment:** Claimant's allegations concerning hearing loss are vague. There is no evidence that Claimant ever requested a hearing examination or requested a hearing aid.

As with vision impairment, Claimant must establish that he was disabled, as defined by the Settlement Agreement, on or before August 27, 2003 and that his hearing impairment affected a major activity of daily life. Claimant has not established that his hearing loss affected a major life activity. There is no evidence before the Special Master that Claimant was unable to function or had to rely on lip reading, signing or written communication in lieu of hearing.

**Mobility Impairment:** Claimant had a back injury that was work related and occurred in 2001. Claimant was not in DOC custody at that time. The evidence submitted by both sides reflects that significant degenerative conditions exist in his back.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part

time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." No evidence has been submitted by either side that Claimant ever had to use a wheelchair while in DOC custody. More importantly, there is no evidence that Claimant's ability to walk was affected substantially by his back condition. The Settlement Agreement, as well as the ADA, require proof that a major activity of daily life was affected. No doubt Claimant was in pain, but no evidence has been presented that his physical condition affected his ability to carry on his life activities.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of George S. Buels is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 6th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master