IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-786
Category II
Claimant: Joseph Smith, #113028
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062

---

## FINAL ORDER OF SPECIAL MASTER
---

    THIS MATTER comes before the Special Master on the claim of Joseph Smith (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is placed presently at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on May 1, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Buena Vista Correctional Complex (BVCC) in Buena Vista, Colorado. He has since been transferred to CCCF.

In his initial claim form, Claimant checked the boxes for mobility and vision impairments. Claimant stated, in part, as follows:

> My first disability is a pinched sciatic nerve. I can't stand for extended periods, and the disability is a result of a fall in the kitchen here. The medical department here has done little to nothing about the injury.
> My second disability is I wear contacts. Upon my arrival at DOC, my contacts were mailed home. Since I have tried to get glasses, but my appointments keep getting canceled or the eye doctor just doesn't show. So I've been going for over two years without being able to see clearly at distances over 30 feet.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> On the sciatic nerve injury, medical has continually refused to perform an MRI to pinpoint the problem and has done nothing to attempt to fix it. Medical is not giving me anything for the pain either. Medical says it will go away given time.
> About the vision issue, CDOC has not made glasses available and my vision is getting worse.

In his supplemental form on mobility, Claimant stated, in part, as follows:

> I have a pinched/strained nerve. This nerve runs from the lower back all the way down the left leg. I also have a hernia.

Claimant stated further that he has to walk carefully because of the hernia.

In his supplemental form concerning vision, Claimant stated that "I am short-sighted." He reiterated that he had requested glasses, but had not received any from DOC.

Defendants have filed an answer to the claim. Attached to the answer are several medical records from Claimant's file. Defendants deny that Claimant is disabled or has been the victim of discrimination.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

**Vision Impairment:** Claimant has alleged that he is vision impaired and has not received glasses. Claimant has alleged that he had contact lenses when he came into DOC custody and that these were mailed back to his home.

In order to qualify as vision impaired, a claimant must establish that he had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed. Claimant has not established on that date that he was vision impaired, as defined by the Settlement Agreement.

Defendants state that Claimant has never requested a vision examination. Claimant has not presented anything to rebut that position. In addition, Claimant has not shown that a major life activity has been affected by his vision impairment. Indeed, Claimant claims only that he cannot see clearly over thirty feet. There is no evidence that his near sightedness has affected his ability to hold a job and function in his daily life. The Settlement Agreement requires that an individual claiming a vision impairment show that a major life activity has been affected. Claimant has not done that, and he has failed to establish that he has a vision impairment as defined by the Settlement Agreement.

**Mobility Impairment:** Claimant did slip and fall on the floor at BVCC. He was treated in August, 2003. *Exhibit A*. He was complaining of tenderness in the muscles of his back. Medical did provide him with Motrin and Ibuprofen. He did develop pain in his left leg about one month later. This pain would result from prolonged periods of standing.

Claimant will be given the benefit of the doubt as to this issue. The Special Master determines that Claimant is mobility impaired in light of his sciatic nerve problem in his left leg.

Claimant also indicated that he had a hernia. Records submitted by Defendants reflect that this condition has been repaired. A hernia does not qualify as a recognized disability under the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

5

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Claimant came into DOC custody on May 1, 2002. The evidence submitted by both sides does not reflect that Claimant was discriminated against by DOC and its staff because of his mobility disability. Claimant bears the responsibility of establishing that he was treated differently because of the disability and that was in violation of the ADA and Rehabilitation Act.

Claimant's concerns relate to treatment decisions made by DOC medical staff. It is not disputed that he has received some medical care. That is documented by the medical records attached to the Defendants' answer. Claimant questions the care or lack of care provided to him.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue through a separate lawsuit any claims that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Joseph Smith is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 20, 2007.**

SIGNED this 6th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master