IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-899
Category II
Claimant: Marc Cinocco, #68916
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER comes before the Special Master on the claim of Marc Cinocco (Claimant). Claimant is in the custody of the Colorado Department of Corrections (DOC). He is incarcerated at the Crowley County Correctional Facility (CCCF) at Olney Springs, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody 1991. He remained in custody until 1993 when he discharged his sentence. Claimant returned to DOC custody in April, 2001 and remains incarcerated at the time of issuance of this order.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> Feet, i.e. bunions on both big toes - unable to run or walk a distance w/o pain. Back, i.e. rotated spine, scoliosis, and arthritis in spine. Constant pain, difficulty sleeping, and difficulty sitting for long periods. Shoulders constant pain difficulty sleeping and loss of feeling in arms and hands. Hemorrhoids - pain and loss of bowel control due to multiple surgeries. All disabilities impair my ability to exercise causing weight gain and high blood pressure. Loss of self esteem and depression.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Feet, i.e. improper footwear. No corrective footwear or surgeries. Yet Wyoming and Washington inmates constantly received proper corrective footwear or surgeries while housed in Colorado facilities. No treatment or medication for back or shoulders either except for Wyoming and Wash. Inmates. Improper treatment for hemorrhoids surgeries when doctors orders were changed every time.

Claimant filed an addition to his claim which states, in part, as follows:

> 1. The Plaintiff has also developed Acid Reflux Disease, due to medications instead of proper treatment.
> 2. The Plaintiffs has Hypoglycemia, which is not being treated properly.

Defendants filed a response and amended response to the claim. The amended response is the controlling document. Defendants dispute that Claimant is disabled and a member of the class. They further dispute that he has been the victim of any discrimination prohibited by the ADA and Rehabilitation Act.

Claimant was granted up to and including October 25, 2006 in which to file a reply to the response of Defendants. Claimant has filed nothing further in support of his claim. This claim must be adjudicated on what has been submitted by both sides.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

**Mobility Impairment:** Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." No evidence has been presented that Claimant has been in a wheelchair at any point during his incarceration with DOC. There is absolutely no evidence that Claimant was mobility impaired during his initial incarceration during the time period of 1991-1993.

The records submitted by Defendants reflect that Claimant did receive medical care from April, 2001 to the present. Those records reflect that Claimant did complain concerning foot problems. He received an inner pad for the tennis shoes that he had received earlier. *Exhibit B*. It is not disputed by Defendants that Claimant has had bunions on his feet. Claimant received within the last few months arch supports and heel cups.

Claimant stated to medical personnel that he was running in 2004 to lose weight. He further reported that he injured himself running into a fence while playing softball in May, 2003. Claimant has indicated that he has continued to play softball.

In order to carry his burden of proof, Claimant must establish that he had a recognized disability on or before August 27, 2003 and that his life was substantially affected by that disability. Other than Claimant's initial claim form, no additional medical documents have been provided by Claimant. The only medical entries that predate August 27, 2003 are medical notes on May 22, 2003 and another on August 26, 2003. Neither medical entry reflects a medical condition that could be classified as disabling.

Claimant has not established that he is substantially limited in his activities of daily life due to his claimed mobility disability. Claimant has failed to set forth sufficient evidence on which he could be found as being disabled within the meaning of the Settlement Agreement.

**Other Claimed Impairments:** Claimant has mentioned other conditions, including hemorrhoids, acid reflux, hypoglycemia and shoulder problems. The Special Masters are limited to the four categories set forth in the Settlement Agreement. The Special Masters are jurisdictionally bound by the provisions of the Settlement Agreement and cannot add additional physical conditions or impairments. The additional issues cannot be acted upon by the Special Master. As an example, the issue of hemorrhoids is not part of the Settlement Agreement and cannot be adjudicated by the

Special Masters.

Claimant has not carried his burden to show that he was mobility impaired and disabled, as defined by the Settlement Agreement. There is no evidence that Claimant was treated differently from others at CCCF who are DOC inmates.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has not shown that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. As a result, nothing that occurred after that date may be adjudicated by the Special Master. Claimant is free to bring a separate lawsuit concerning post-August 23, 2003 actions by DOC and its staff.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Marc Cinocco is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294

**on or before February 27, 2007.**

SIGNED this 13th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master