IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-285
Category III
Claimant: Michael Moyer, #61389
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master for hearing on October 21, 2006. This hearing was held at the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Michael Moyer (Claimant) and Berina Ibrisagic, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A and B were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in September, 1988. He has been placed at a number of facilities since being incarcerated. He was at the Arkansas Valley Correctional Facility (AVCF) for several years. He came to FLCF in 2002.

In 1992 Claimant was diagnosed as having diabetes while he was at AVCF. The prescribed treatment for Claimant included insulin by shot. Claimant's diabetes has been difficult to control since it was first diagnosed. At the time of the hearing, Claimant was receiving insulin by shot twice per day. He also was taking four tablets of Glucophage and four tablets of Diabeta.

As an outgrowth of his diabetes, Claimant has experienced neuropathy in his feet. He has limited feeling in his feet, describing the feeling as having a permanent sock on. He testified that he has requested orthopedic shoes, but has had to wear state shoes. He was able to obtain some tennis shoes while at AVCF but had them taken from him when he arrived at FLCF.

Claimant testified that he had trouble with the diets provided to him and other diabetics. He maintained that the diet was the same as given to non-diabetic inmates, with just a smaller serving. He has struggled over the last few years with his weight.

Claimant testified that he was provided glucose tablets at AVCF. He carried these tablets all the time due to occasions when he had low sugar levels. When he arrived at FLCF, the glucose tablets were taken from him. He was told that the tablets would not be provided to him and that he would have to buy hard candy from the canteen.

In his rebuttal testimony, Claimant stated that he had purchased tennis shoes from the canteen. These lasted only thirty days. The cost to Claimant was $65.00. He also testified that he purchased food items from the canteen in order to have a snack if his blood sugars fluctuated.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no question that Claimant has diabetes. There is also no question that Claimant has diabetes that is brittle. His blood sugar levels have been up and down. Claimant is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any

disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Many of Claimant's concerns and complaints relate to the medical care that he has received. It is clear that diabetes has proven to be a difficult condition for him to deal with. That is understandable, especially since his blood sugar levels have not been controlled.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

In light of the *Fitzgerald* decision, a claimant must show that he was the subject of discrimination prohibited by the ADA and Rehabilitation Act. An example would be being placed into a facility that had no ramps for wheelchairs or not providing braille educational resources for a blind inmate. In this case, Claimant has raised one significant issue that reflects discriminatory conduct on the part of Defendants.

It is unrefuted that Claimant was provided glucose tablets at AVCF and told to carry these at all times. These tablets were provided without cost. Claimant testified that he needed such tablets when his blood sugar level was low. Upon arrival at FLCF, the glucose tablets were taken from him. Claimant was provided no reason why this occurred. Claimant was told that he should carry hard candy, but that DOC would not provide such candy at state expense. Instead, Claimant had to purchase the hard candy from the canteen. Claimant has made such purchases, as he had indicated that he must be deal with low blood sugar levels.

Claimant has a chronic condition that will be with him the rest of his life. Unlike a non-diabetic inmate, Claimant has no choice but to purchase the hard candy to keep with him. His alternative is a potential serious or even fatal episode with his disease. Claimant and others have been presented with a Hobson's choice. Under the ADA and Rehabilitation Act, services, programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996). Services may be as basic as being provided medicine or other medical treatment. Here, Claimant was receiving glucose tablets at no charge to him. These were taken from him and not replaced. The candy has become the substitute, but only if paid for by Claimant and others

5

similarly situated. Unlike the non-diabetic inmate who was able to buy soap and other personal items from the meager state wages paid, Claimant could obtain a similar number of items only if he forfeited the hard candy.

On and before August 27, 2003, Claimant was treated differently due to his diabetes as noted. Claimant has established his claim as to the hard candy issue. The remaining issues have not been proven by a preponderance of the evidence or reflect a medical decision governed by *Fitzpatrick*.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Defendants placed Claimant into a position that was untenable and which placed him in fear of his well-being. Claimant is entitled to $250.00 as damages for the discrimination that occurred at FLCF.

IT IS HEREBY ORDERED that the claim of Michael Moyer is granted, in part, and Claimant is entitled to the sum of $250.00 as damages; and

IT IS FURTHER ORDERED that the remainder of the claim is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 19, 2006.**

SIGNED this 13th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master