IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-697
Category II
Claimant: Harry A. Martinez, #96735
Address of Claimant: CMRC, 2925 East Las Vegas St., Colorado Springs, CO 80906

_____

## FINAL ORDER OF SPECIAL MASTER
_____

    THIS MATTER comes before the Special Master on the claim of Harry A. Martinez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is presently at the Cheyenne Mountain Re-Entry Center (CMRC) in Colorado Springs, Colorado.

    This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to respond to the motion of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on March 24, 1998. He has remained in DOC custody ever since. At the time that he filed his claim, Claimant was at the Limon Correctional Facility (LCF) in Limon, Colorado.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

>   Back injury prior to entering DOC on 8-11-97. I was injured on the job. Medical diagnosis was compression fractures to T-9 and T-10 lower spine. Hairline fracture to spinal column T-1 - T-12. Limitations to lifting (maximum weight in pounds) 10-20 lbs., carrying, pushing, pulling. I was also to avoid repetitive bending, twisting, or stopping. My condition has not changed. Pain symptoms are present every day and at times very severe. I have trouble sleeping. And stand for long

periods of times. And anything that puts stress on my back.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was under doctors care and physical which DOC neglected to follow up on. I was subjected to a system that showed no compassion. With disregard to human life, per say me as a person. I explained to the interviewing medical personnel that I had been under doctors and in physical therapy before I was sentenced. And, I also explained my medical condition. But I was mislead to believe I would be taken care of, but the first thing they did was to change my medication, which I had been taking and was doing just fine. They failed to pass on my disability or my limitations. So I have suffered needlessly.

In his supplemental form on mobility, Claimant stated, in part, as follows:

> I suffer from chronic back pain, which at times is very severe with pain and swelling. I suffer from lower back pain with varying degrees of pain from repetitive bending, twisting and stooping. I have trouble with carrying, pushing, and pulling. After any of these types of activity pain and symptoms persist for 3 to 4 days.

Claimant indicated that he has nothing in his cell to support his lower back. Claimant attached to his supplemental form some medical records which reflect his back problems.

Defendants filed a motion to dismiss. They argue that Claimant has not alleged facts that would make him a member of the class as mobility impaired.

Claimant was granted up to and including November 4, 2006 in which to respond to the motion to dismiss. Despite being granted this time, Claimant has filed nothing in response to the motion.

### III.

Defendants have filed a motion to dismiss. The Special Master must accept as true all reasonable allegations made by Claimant. The standard to be used will be that required in reviewing a motion under Fed.R.Civ.P. 12(b). The motion may only be granted if the allegations set forth by Claimant are insufficient to allow the claim to proceed as a matter of law.

The Settlement Agreement provides definitions that must be followed by the Special Masters.
Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There are no allegations set forth by Claimant that he has ever used a wheelchair while in DOC custody.

To be part of the class as mobility impaired, a claimant must show that he has a lower extremity impairment that substantially limits walking. A careful review of the forms and documents submitted by Claimant indicate that no allegations have been set forth that he has a lower extremity impairment or has trouble walking. Accepting as true all allegations of Claimant, he has not alleged sufficient facts to allow this claim to proceed on to adjudication. Claimant is not mobility impaired as defined by the Settlement Agreement.

Claimant has back problems. These problems may rise to the level of a separate disability protected by the ADA and Rehabilitation Act. Claimant has the right to bring his own separate lawsuit to seek a vindication of his rights under the law. He cannot pursue his claim as he is not part of the class as mobility impaired.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Harry A. Martinez is dismissed, as he is not part of the class as mobility impaired.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 27, 2007.**

SIGNED this 15th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master