IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-698
Category II
Claimant: Sandra O'Neil-Lopez, #54972
Address of Claimant: 2541 S. Sherman Street, Unit C, Denver, CO 80210

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Sandra O'Neil-Lopez (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time she filed her claim. She was at that time at the Pueblo Minimum Center (PMC) in Pueblo, Colorado. She now has been released on parole.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a response to the motion of Defendants, but she has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility,
>     hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

According to her initial claim form, Claimant came into DOC custody on May 14, 2004. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). After evaluation, Claimant was placed at the Denver Women's Correctional Facility. Later, she was placed at PMC. She then was released on parole.

In her initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows:

> Insulin diabetic must have sugar checked 2x daily. If I miss these shots I get blurred vision, headaches, thirst.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I am insulin dependent 2x a day. I was at Denver Womens depending on the shift that I was working I either did or didn't receive insulin. Some would let me out of lock down. Some would forget. I have been waiting months now for special shoes ordered by the doctor. It's now August and I still haven't received them. Doctor has changed medication.

Claimant has not filed any further documents in support of her claim.

Defendants have filed a motion to dismiss. Defendants note that the initial claim form of Claimant lists her DOC date has being after August 27, 2003. They argue that she cannot be part of the class for that reason.

Claimant was granted up to and including November 6, 2006 in which to respond to the motion to dismiss. Claimant has not responded to the motion.

### III.

The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. It was on that date that the class was set. In order to be able to file a claim, a claimant had to have been in DOC custody on or before that date. In addition, a claimant had to have been disabled on or before that date and subjected to discrimination prohibited by the ADA and Rehabilitation Act.

The initial claim form of Claimant states that she came into DOC custody on May 14, 2004. Claimant has not set forth any additional information that would indicate that she was disabled on or before August 27, 2003.[2] Claimant carries the burden to establish that she is part of the class. That includes a showing that she was in DOC custody on or before August 27, 2003. Claimant has not carried her burden. Claimant may bring her own separate lawsuit concerning anything that occurred after August 27, 2003.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted and the claim of Sandra O'Neil-Lopez is dismissed, as she came into DOC custody after August 27, 2003 and is not

---

[2] Claimant's DOC number (54972) would reflect that she was in DOC custody much earlier than 2004.

part of the class.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 27, 2007.**

SIGNED this 15th of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master