IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-097
Category II
Claimant: David L. Majors, #95548
Address of Claimant: Unknown

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of David L. Majors (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He has been discharged and was living in Grand Junction. The last address provided by Claimant was 3187 Orson Avenue, Grand Junction, Colorado. The last order sent to that address was returned as undeliverable.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August 21, 1997. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at the Fremont Correctional Facility (FCF) in Canon City, Colorado when he filed his claim. He has since discharged his sentence. His whereabouts are unknown.

In his initial claim form, Claimant checked the box for vision impairment. Claimant stated, in part, as follows:

> I can't see things at a distance without eyeglasses to correct most of my vision. Without eye glasses I can't see further than 2 inches in front of my face which would impair me to drive, read, see, and work both in prison and in society. As a result of having no eyeglasses, my eye strained, my eyes got worse, and I have to get a new prescription in about a month of having no problems.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Large print books were not offered to me. Audio-visual equipment wasn't offered either. I had to wait for eyeglasses and when my eyeglasses didn't arrive, I'd have to wait even longer without eyeglasses. This would put strain on my eyes and I'd have to get a new prescription. If I couldn't afford eyeglasses then I was forced to go without eyeglasses which would put strain on my eyes. The nurse, Shirley Penkoff, wouldn't answer my questions regarding eyeglasses. She would automatically tell me that they were "ordered" and not respond to anything else I had to say.

Claimant filed a supplemental form in which he reiterated what he had set forth in his initial claim. In addition, he attached copies of grievances that he had submitted. On March 11, 2005, Claimant submitted additional documents in support of his claim. These included copies of grievances and responses. In one response, Cathie Holst, AIC for DOC, stated, in part, as follows:

> The Montez Remedial Plan clearly states that only offenders whose vision cannot be corrected to at least 20/200 are considered disabled. While I can appreciate your distress at the possibility of having to get along without your glasses in the event they are lost of broken it is clear that you function perfectly well as long as you have them. If your glasses become lost or broken, they would simply be replaced either at your or the DOC's expense. Whereas you state you cannot afford to replace your glasses, a review of the deposits into your offender banking account over the past 13 months indicate that you would easily be able to afford a replacement pair.

The other attached documents reflect that Claimant did receive glasses and eye examinations.

Defendants have filed a motion to dismiss the claim. Defendants argue that Claimant has failed to set forth sufficient allegations to allow him to prevail, as a matter of law. Claimant was given the opportunity to file a response to the motion to dismiss of Defendants. Despite being given time to file a response, Claimant has filed nothing further. In addition, Claimant has not provided an up-to-date address at which he may be reached by mail.

### III.

Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

Defendants have filed a motion to dismiss. All reasonable allegations of Claimant must be accepted as true. *Fed.R.Civ.P. 12(b)*. The documents submitted by Claimant will also be considered and accepted as true.

Defendants argue that Claimant is not disabled, as defined by the Settlement and the ADA. The allegations and documents submitted by Claimant reflect that his eyesight is correctable to 20/20 for each eye. The document submitted by Claimant reflect that he has had frequent eye examinations and has received glasses.

The definition of vision impairment in the Settlement Agreement is as follows:

> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

Claimant does not have a condition that is not correctable. He is able to see with eye glasses. Review of everything submitted by Claimant reflects that he does not have an impairment that is covered by the Settlement Agreement or the ADA. With eye glasses, Claimant does not have a condition that affects activities of daily living.

Defendants' motion to dismiss is appropriate and will be granted. Claimant has not alleged sufficient facts that would allow him to prevail on his claim. He is not disabled as defined by the Settlement Agreement and ADA.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of David L. Majors is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 1st day of December, 2006.

                                        BY THE COURT:

                                        */s/ Richard M. Borchers*

                                        _____

                                        Richard M. Borchers
                                        Special Master