IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-589
Category II
Claimant: Roger L. Kinney, #68272
Address of Claimant: 3921 Clinton Avenue, El Paso, TX 79903

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Roger L. Kinney (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He has been discharged from his sentence with DOC. He presently is living in Texas.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

       B. QUALIFIED INMATE
       Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
       C. PERMANENT DISABILITY/IMPAIRMENT
       A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who are alleging mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1992. Claimant has stated in his initial claim form that he was released on December 6, 2002. He has discharged his sentence and is not under the control of DOC in any fashion.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

    Lower back injury, have drop foot, nerve damage. Was wearing brace, but it's broke.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> My injury when I fell at work in 1995 I kept telling medical that I had no feeling in my left foot. They told me that all inmates lie. It took 2 years before they had me start seeing a doctor. By that time my left leg got smaller and I start falling.

Claimant went on to state:

> I can't stand up or sit down at a long period of time. I keep falling down because my ankle gives out on me. I have a lot of nerve damage to my back and I can't hold any jobs because of my injury. I don't have any feeling in my left foot.

In his supplemental form on mobility, Claimant stated, in part, as follows:

> I have a drop foot and my left leg is smaller than my right. When I walk or turn around quick, I fall down all the time. I have nerve damage where it's hard to sit or stand long periods of time, My left ankle gives out on me when I walk. I have a very weak left leg. I walk for a while then my left foot drag.

He stated that he was injured while on his job at a prison bakery. Claimant also stated that "I have what Dr. Lilly told me nerve damage and a drop foot."

Defendants have filed a response to the claim. That response is basically a motion to dismiss, as there are no attached documents. Defendants are arguing that Claimant has failed to prove his claim and that it must be dismissed.

Claimant was granted up to and including November 6, 2006 in which to file a reply to the response of Defendants. Claimant has not filed a reply or any documents in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

Since Category II claims must be adjudicated on the documents submitted by both sides, the initial claim form and supplemental form will be considered in the same way as if Claimant were testifying at a hearing. In this case, the question is whether Claimant can prevail based upon what he has submitted.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part

4

time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has indicated in his pleadings that he has a drop foot. He has no feeling in his left foot and will drag it along.

Claimant has provided sufficient evidence to find that he was mobility impairment before his discharge in December, 2002. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Under the Settlement Agreement, Claimant carries the burden of proving that he was discriminated against because of his disability.

Claimant has stated in his documents that he was injured in 1995 while working at a prison bakery. He did not receive prompt medical care and went for two years before he started to see a doctor. According to his supplemental form, Claimant saw Dr. Lilly for an evaluation. Dr. Lilley is an orthopedic specialist who did consultation work for DOC for several years. It appears that Claimant did receive some medical care for his foot and back, but not care that Claimant believed was appropriate or sufficient for his condition.

Claimant is concerned about his health, and this is not a frivolous concern. Claimant is upset about the medical care that he has received while incarcerated in DOC. He has concerns about the care provided, and his concerns may have some legitimacy.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. Claimant is questioning the care provided to him. That issue is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has alleged that he did not receive proper medical care while in DOC custody. He may well be correct in that assertion. The problem is that the *Fitzgerald* case precludes examination of any medical malpractice issues in an ADA case. Claimant has not set forth any allegations of

discrimination that may be adjudicated in this claim. Claimant may pursue separately his issues of medical malpractice through a separate lawsuit. Under *Fitzgerald*, he may not pursue those through this claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Roger L. Kinney is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 5, 2007.**

SIGNED this 29th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master