IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-690
Category II
Claimant: Gerald Lucas, #64294
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Gerald Lucas (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in December, 1990. It is not clear as to how many DOC facilities Claimant has been placed in over the years. It is clear that Claimant was in a community corrections placement and then parole. As reflected in his medical records, parole was revoked at some point.

In his initial claim form, Claimant checked the boxes for mobility and vision impairments. Claimant stated, in part, as follows:

> My feet were crushed in 1990. Since then, walking, standing or even lying down has caused pain and misalignment of knee, hip & back. My calcanues foot bone protrudes 1 ½ inches through my Achilles tendon so when it touches anything, i.e. shoes, bed, socks, it is like exposed raw bone. My feet and calves cramp all the time.
> My vision is continually worsening. My glasses have a reaction (allergic) with my skin - irritating, itchy, swollen, red and scaly.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> People other than myself got shoes made for them to compensate for deformities. Or at least got tennis shoes. Not me. Also knee braces, back braces & egg crate mattresses for sore areas. Not me.
> I see others with different shape glasses and other material for frames that eliminate the problems.

Claimant was provided supplemental forms to complete and return. He has not done so. In addition, Claimant has not submitted any medical or other records in support of his claim.

Defendants have filed a response to the claim. Attached to that response are a number of medical and other records. Defendants argue that Claimant is not mobility impaired as defined by the Settlement Agreement.

Claimant was granted up to and including November 6, 2006 in which to file a reply to the response of Defendants. Despite being granted time, Claimant has filed nothing further in support of his claim.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

4

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

**Vision Impairment:** Claimant has alleged that his vision is getting worse. He claims that his glasses cause a reaction in his skin.

In order to qualify as vision impaired, a claimant must establish that he had a vision problem that affected a major life activity on or before August 27, 2003. The burden is upon a claimant to prove that the disability existed.

Claimant has received vision testing. His vision is recorded as 20/30 in each eye. *Exhibit C*. Claimant has received glasses to correct his vision. *Exhibit K*. There is no evidence that his vision problems affect a major life activity. Claimant has not established that on August 27, 2003 he was vision impaired, as defined by the Settlement Agreement.

**Mobility Impairment:** Claimant claims that he is mobility impaired. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence before the Special Master that Claimant has ever used a wheelchair while in DOC custody.

Claimant was injured in 1990 when he jumped from a building. He had surgery to repair the break in his ankle when he jumped. He then was incarcerated in DOC in late 1990. In 1996, Claimant was referred to Dr. Dennis Phelps, M.D. in Colorado Springs. Dr. Phelps examined Claimant and indicated that no restrictions needed to be placed on him. Dr. Phelps stated, in part, as follows:

> At this juncture, I would tend to agree with Mr. Lucas that I would not afford him any particular restrictions. He has adapted his shoe wear over the years and states that he really has no trouble with this. I would afford him no particular restrictions, given the fact that he had full motion, no evidence of skin breakdown, full strength in the foot and walks without a limp. He in the future may require some shaving of this area if he does develop local problems, but given the fact he has gone six years to date without any particular problems I would not anticipate this.

*Exhibit D*. Other medical records submitted by Defendants reflect that Claimant has received medical care and that his major activities of daily life have not been curtailed by his foot condition.

The Settlement Agreement provides as examples of mobility impairment that an a claimant could not walk more than one hundred yards without stopping or climb a flight of stairs without requiring a pause. Claimant has submitted only his initial claim form, and that form does not contain

sufficient information to allow Claimant to prevail as a matter of law. Claimant has not proven that he is mobility impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant is concerned about his health, and this is not a frivolous concern. Claimant appears to be upset about the medical care that he has received while incarcerated in DOC.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law.

Claimant may pursue separately any rights that he may have concerning his medical care. Claimant has failed to establish any evidence of discrimination prohibited by the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Gerald Lucas is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 5, 2007.**

SIGNED this 30th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

---

Richard M. Borchers
Special Master