IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

_____

Claim Number 02-718
Category II
Claimant: Stephen Grace, #57349
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Stephen Grace (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is placed at the Limon Correctional Facility (LCF) in Limon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants and has filed a reply in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially
> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."  This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who allege mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant was incarcerated in DOC during the late 1980's. It is unclear exactly when he came into the DOC system. On his initial claim form, Claimant stated that he came into DOC custody on February 4, 2000. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was placed at one point at the Colorado Territorial Correctional Facility (CTCF) before being placed at LCF.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> I have a crushed disk in my lower back dating from 1987 which is in my working file. And I also have something turn in my left knee which happen this year in June. As of today I haven't had nothing done but given ice and a ace bandage. I

was told over a month in a half I'll being seeing someone from ortho a specialist. And I've been put on the third tier top bunk twice since I've been here. I have had restriction for bottom bunk bottom tier since 1987 thru out my incarceration coming to Limon I was told I don't have any restrictions and they can place me anywhere they want to. I'm walking on a cane and someone continues to change my restriction every other week.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> After filing grievances with the department of corrections about my injuries I was told by the grievance department in Colorado Springs that we are sorry you fell off the top bunk while at Territorial Correction facility. Your restriction will be put back on after moving to another facility. They act like they don't know what I'm talking about.

In his supplemental form on mobility, Claimant reiterated that he had been injured and was not receiving proper care. Claimant attached grievances that he had filed seeking relief.

Defendants filed a response to the claim. Attached to the response are a number of Claimant's medical records. Those records reflect that Claimant injured his knee on June 21, 2004 while playing softball. Subsequent to that date, he had surgery to repair and reconstruct his ACL. *Exhibit E.* Claimant received a cane and a knee brace. Claimant requested and received an accommodation resolution as mobility impaired. The medical records reflect that an x-ray was taken of Claimant's spine on April 2, 2004. It was read as being normal.

Claimant filed a reply to the response of Defendants. He states that his cane has been taken from him and that this was inappropriate. He has requested damages for the actions of DOC staff toward him.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. In this case, Claimant has only claimed a mobility impairment.

Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established. If Claimant can establish that he was disabled on or before that date, then he may also include alleged acts of discrimination that have occurred after August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part

4

time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls adjudication of this claim and must be utilized by the Special Master.

From review of all of the evidence, the key date concerning this claim is June 21, 2004. It was on that date that Claimant injured his knee. He had ACL reconstruction through surgery. This particular injury led to his accommodation resolution as being mobility impaired. The date of the injury and surgery postdates August 27, 2003. The events of June 21, 2004 and later may only be considered if Claimant was mobility impaired, as defined by the Settlement Agreement, on or before August 27, 2003.

The evidence presented by both sides does not substantiate that Claimant was mobility impaired on August 27, 2003. Claimant has alleged that he had a crushed disk in his back due to an injury in 1987. He further claims that he did receive a restriction to bottom tier and bottom bunk. Even if that was true, there is no evidence that Claimant was in a wheelchair while in DOC custody on or before August 27, 2003. More importantly, there is no evidence that Claimant had a permanent lower mobility impairment that affect walking. The evidence presented by Defendants reflects a lower spine that appeared to be normal. Absent establishment of a covered disability on or before August 27, 2003, the Special Master is without jurisdiction to adjudicate anything past that date.

In this case, Claimant has established that he received a serious knee injury in June, 2004. That injury was determined to warrant an accommodation resolution. Since Claimant was not mobility disabled on or before August 27, 2003, the Special Master is without jurisdiction to review anything that happened after that date.

Claimant is not without a remedy. He may file a separate lawsuit concerning the actions of DOC staff that post-date August 27, 2003. He is not precluded from seeking review through an appropriate court concerning alleged ADA violations that post-date August 27, 2003. Claimant may not pursue his claim for the reasons noted.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question need not be answered in light of the negative answer to Question #1. The Special Master would note that Claimant questions the medical care that he has received from DOC. Claimant is concerned about his health, and this is not a frivolous concern.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or

5

pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability.  A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Stephen Grace is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 30th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master