IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-784
Category II
Claimant: Andrew Vigil, #83003
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Andrew Vigil (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is presently housed at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>       B. QUALIFIED INMATE
>       Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>       C. PERMANENT DISABILITY/IMPAIRMENT
>       A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>       The Settlement Agreement further provides, in part, as follows:
>
>       2. Permanent Hearing Impairments
>       Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>       3. Permanent Vision Impairment
>       Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>       4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>       Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>       2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>           1. Is the claimant a disabled individual who is a member of the class?
>           2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>           3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>           4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1994. Claimant was discharged in 1995. Claimant returned to DOC custody on November 5, 2002 . He was placed into the Denver Reception and Diagnostic Center (DRDC) and then transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant then was transferred to other facilities and placed on parole on November 17, 2003. Claimant absconded from parole and was placed back into DOC custody on August 17, 2004.

He returned to DRDC and then was placed at other facilities. He was placed on parole again and absconded. He was returned to DOC custody and placed at facilities of DOC. He was at the Trinidad Correctional Facility (TCF) in Trinidad, Colorado when he filed his claim. He later was transferred to SCF.

In his initial claim form, Claimant checked the boxes for hearing impairment and vision impairment. Claimant stated, in part, as follows:

> Disability (1). I have a hearing impaired in my left ear totally deaf. It affects my communication that I don't understand people when they talk to me. (2) My vision is serious. Can't read or write without eye wear! Been at DOC for the last 6 months without glasses. DOC says wait till you go to your facility - well I been here for the last seven months without glasses.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> The Department of Corrections is discriminating against me because they say I don't have enough time for a hearing aid. But the fact is I've been doing this number 83003 for the past ten years! The last time I spent five and one-half months at DOC in Denver without glasses without able to read or write. Locked down for 22 hours daily.

Claimant further stated in his initial claim form as follows:

> I was assaulted at Cell House Five. Broken nose ear damage for life. The officers said they would contact me at the halfway house that I was sent to. But they never did file an assault charge. The person that attacked me, Phil Montoya 84705, was doing 20 to life for murder and was not even supposed to be in population!

Claimant was provided supplemental forms to complete and file. He has not returned those forms. Claimant further has not submitted any medical or other records in support of his claim.

4

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.[2]

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

**Vision Impairment:** Claimant has alleged that he has vision problems that require eyeglasses. He claims that he cannot write or read without glasses.

The medical records submitted by Defendants detail that Claimant has received eye examinations over the years since 2002 and has been provided eyeglasses. When Claimant returned to DOC custody he was assessed has having 20/40 and 20/30 vision without glasses. *Exhibit E*. The records submitted by Defendants also indicate that Claimant had prescription eye glasses during the time he was in custody from 2002 to the present. *Exhibits F, G. & H*.

The evidence submitted by both sides reflects that Claimant has correctable vision. With glasses, Claimant has few problems reading and writing. The medical and other records reflect that Claimant does not have a vision impairment as defined by the Settlement Agreement. More importantly, Claimant does not have a vision impairment as defined by the ADA and Rehabilitation Act. There is no evidence that Claimant has a permanent vision disability that affects activities of daily living.

---

[2] Claimant has indicated that he was assaulted by another inmate. The Special Masters only have jurisdiction to consider disability claims as set forth in the Settlement Agreement. Claimant has a right to be upset concerning the assault, but there is no jurisdiction that would allow the Special Master to provide any form of remedy as the result of the assault.

**Hearing Impairment:** Defendants acknowledge that Claimant has some hearing loss. It is described by Defendants as a minor impairment.

There are no medical records or other documents that have been submitted that reflect that Claimant ever complained of a hearing loss during his initial incarceration in the early 1990's. Claimant did contact medical staff in early 2003 concerning an ear infection. *Exhibit O*. An examination indicated that Claimant had redness in his ear drum and it was swollen. In June, 2003, Claimant again had ear problems with an left ear drum perforation. There was no indication of any hearing loss at that time.

In March, 2005, Claimant went to medical and stated that he was totally deaf in one ear. *Exhibit S*. He requested an ADA screening. He was evaluated as not having a sufficient loss of hearing as to require a hearing aid.

The Special Master finds that insufficient evidence has been presented to sustain the burden of proof of showing that a hearing impairment existed on or before August 27, 2003. The evidence reflects that Claimant has hearing in one ear. There is no evidence that the activities of daily life were affected by the hearing problem.

Claimant has failed to carry his burden of proof that he has a hearing impairment, as defined by the Settlement Agreement. He has not shown that he has been unable to carry out the activities of daily life. Loss of some hearing is insufficient to rise to the level of a hearing impairment under the Settlement Agreement and ADA.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Claimant came into DOC custody in the early 1990's and left in 1995. There was no evidence presented as to any discrimination during that period of time. Claimant returned to DOC custody in 2002. The evidence submitted by both sides does not reflect that Claimant was discriminated against by DOC and its staff because of any covered disability.

Claimant has objected to some of the medical care that was provided to him from 2002 through the present. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005).

Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Andrew Vigil is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 1st day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master