IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-824
Category II
Claimant: Cecelia Smiley, #82860
Address of Claimant: 1107 33rd Street, Denver, CO 80205

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Cecelia Smiley (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time she filed her claim. She was at that time at the Denver Women's Correctional Facility (DWCF). She has discharged her sentence with DOC.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to respond to Defendants' motion, but she has filed nothing further in support of her claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
>> 2. Permanent Hearing Impairments
>> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>> 3. Permanent Vision Impairment
>> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant did not indicate on her initial claim form when she came into DOC custody. She indicated that she had an expected release date of February 19, 2005. She has discharged her sentence and is now living in Denver.

In her initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows:

> Diabetic, seizures, lupus, cancer, bi-polar

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> They're not giving me my meds like they're supposed to. I had three seizures since I've been here and they wouldn't give me my meds.

Claimant stated further in the initial claim form as follows:

> I hit my head on the sidewalk and they wouldn't treat me.

On February 18, 2005, the Special Master issued an order to Claimant directing that she file a supplemental form on diabetes. On December 19, 2005, an additional order was issued granting Claimant up to and including February 21, 2006 in which to file the supplemental form. Though she was provided the form, Claimant has never filed a supplemental form or additional documents in support of her claim.

Defendants have filed a motion to dismiss this claim. Defendants argue that Claimant has failed to set forth sufficient allegations that would allow this claim to be adjudicated.

Claimant was granted up to and including November 20, 2006 in which to respond to the motion. Claimant has filed nothing in opposition to the motion to dismiss. Likewise, Claimant has not filed a supplemental form, though ordered to do so on two occasions.

## III.

Defendants have filed a motion to dismiss. The Special Master is required to accept as true all reasonable allegations of Claimant. In this case, the only allegations before the Special Master are contained in the initial claim form.

Claimant failed to state when she came into DOC custody. A claimant must show that she was disabled on or before August 27, 2003 and had been the victim of discrimination prohibited by

4

the ADA and Rehabilitation Act. The Special Master has no idea when Claimant was diagnosed as being diabetic or when she alleges that she was the victim of discrimination. If an individual became disabled after August 27, 2003 or was the victim of discrimination for the first time after that date, the claimant may not pursue her claim. She is required to file her own lawsuit in state or federal court.

In addition, Claimant has failed to set forth what medications were prescribed for what medical condition. The medical conditions of seizure disorder, lupus, cancer and bipolar are not covered by the Settlement Agreement. Claimant may pursue a separate lawsuit on those conditions but may not pursue her claim for those conditions and illnesses.

Finally, a claimant with diabetes must allege that she was disabled by that disease and that diabetes affected her activities of daily life. There are no such allegations set forth in the initial claim form. Claimant has been granted the opportunity to provide additional information concerning her diabetes and has not.

Even if all of the allegations in the initial claim form are accepted as true, Claimant has failed to set forth even a minimal basis for allowing the claim to continue. Defendants' motion is appropriate and will be granted.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Cecelia Smiley is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 5, 2007.**

SIGNED this 29th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master