IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-845
Category II
Claimant: William N. Collester, #99522
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of William N. Collester (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is presently housed at the Arrowhead Correctional Center (ACC) in Canon City, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on November 4, 1998. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at ACC when he filed his claim. He later was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado, but later returned to ACC.

In his initial claim form, Claimant checked the box for hearing impairment. Claimant stated, in part, as follows:

> I have a partial hearing loss. I have difficulty hearing sounds and/or voices. If my attention is not directed to a particular source of sound, I appear to others that I am ignoring them. When I do this I don't hear them, so I don't react.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> On 7-15-03 I was convicted of count interference. During afternoon count on three separate occasions I failed to hear announcement to stand up.

Claimant stated further in his initial claim form as follows:

> I was terminated from the SOTMP program for one year. Three days a month of good time was taken from me that I was not in the program. Plus the amount of good days of earned time that I lost for the initial write-up.

Claimant was forwarded a supplemental form to complete and return. That has never been filed. In addition, Claimant was provided the opportunity to submit medical and other records in support of his claim. He has submitted only the initial claim form.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

Defendants have submitted a substantial number of documents in support of their response. Included are medical records, as well as other DOC documents relating to Claimant. Claimant did report some hearing loss in 1999. *Exhibit A*. There is no indication that Claimant made any further complaints about hearing loss up to and including August 27, 2003. In the documents submitted by Defendants, the next hearing loss reference is noted on December 20, 2005. *Exhibit B*. There are no documents that indicate that Claimant was tested for his hearing or that he had received a hearing aid. The overwhelming evidence reflects that Claimant has been able to carry on major life activities despite a claimed loss of hearing.

In order to qualify as hearing impaired, a claimant must show that his hearing loss has affected his activities of daily living. A claimant carries the burden of proof, and the Special Master must resolve any factual disputes that exist. In this case, Claimant has not carried his burden of proof. The disputed evidence does not establish that Claimant had a hearing impairment on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is no. Claimant has claimed that he was terminated from the SOTMP program due to the inability to hear. The substantial documentation presented by Defendants, and not rebutted by Claimant, reflects termination from this program because of an unwillingness to comply with program requirements. The Special Master determines from all evidence presented that Claimant was not qualified to continue within the SOTMP program because of reasons that were totally unrelated to any hearing issues.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Claimant came into DOC custody on November 4, 1998. The evidence submitted by both sides does not reflect that Claimant was discriminated against by DOC and its staff because of his mobility disability. Claimant bears the responsibility of establishing that he was treated differently because of a disability and that was in violation of the ADA and Rehabilitation Act. The evidence presented reflects that Claimant had other significant issues that precluded him from enrolling in and

completing the SOTMP program. The evidence reflects further that Claimant had been warned that he must be standing for the afternoon count. Had Claimant had significant hearing issues, he would have so indicated at his COPD hearing and would have sought medical care. He did not do so. Instead, Claimant raised as a defense that he was on medication that made him sleepy. *Exhibit BB* ("Inmate states his medications make him sleepy"). There is insufficient evidence present to allow a finding that Claimant was denied services or programs due to a covered impairment.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of William Collester is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 30th day of November, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master