IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 02-652
Category II
Claimant: Todd Olson, #112110
Address of Claimant: 9580 N. Oakwood, Neenah, WI 54956

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of Todd Olson (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He was placed at the Buena Vista Correctional Facility (BVCF) when he filed his claim. He has been discharged from his sentence and is living in Wisconsin.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals who are claiming to be mobility impaired.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on February 1, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was placed at various facilities of DOC, including BVCF.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> My left arm is disabled because of gunshots. Shot by an officer as I had my hands up. My left arm is in extreme pain every day of my life. I have been told by medical doctors I will be in extreme pain for the rest of my life and it will get worse every day. I also have gun shots to my right arm and right leg. My left leg they had

3

> to remove ligaments to make my leg and arm work so now I have partial feeling in my left leg. The bullet went through my leg. Pain is the worst. With every passing day it will get worse. Dr. Ekestrand at Cell House 5 refused to even look at my wrist which I am having most of my problems with. And now I was just fired because I refused to pick up 30 to 40 lbs. With my arms.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> They have repeatedly forced me to work intense labor in the kitchen in BVCF. From 10:00 a.m. to 6:30 p.m. work the line. To working all day long at the TC program in the green houses at ACC to scrubbing showers at Crowley, Walsenburg and Ordway. I have proof to show that. Now with being fired I will lose my yard time, gym time, library time and religion time. My cholesterol is so high I can't afford to lose time to walk.

Claimant was forwarded a supplemental form to complete and return. Claimant did file that form. Claimant stated, in part, as follows:

> I have been diagnosed with severe arthritis and it will get worst & worst for the rest of my life. I was shot several times. It's in my medical files. My left arm no longer functions well and I'm in pain all day long.

Claimant stated further in the form:

> I'm on work restrictions. No lifting over 8 lbs. No intense labor. My muscles in my arms are deteriorating badly. No one will let me work for them because of this so I end up locked down all day & night. On the weekends they let me out to yard but that's only if its nice out.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Defendants do not dispute that Claimant received several gunshot wounds. *Exhibit A*. There was nerve damage in Claimant's left arm. Defendants argue that Claimant has not set forth any evidence that he has a lower extremity condition. The records provided all relate to the left arm and traumatic arthritis in that arm. *Exhibits C & E*.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever was in a wheelchair while in DOC custody.

The evidence presented by both sides does not establish that Claimant has a permanent lower extremity mobility impairment. It is clear that Claimant was shot in his right leg prior to coming into DOC custody. Claimant does not indicate that his right leg was affected to the point that it affected his ability to walk on or before August 27, 2003. On the contrary, the evidence Claimant has presented relates to his arms and his inability to lift or carry anything due to injuries. There is no indication that Claimant has a permanent lower extremity impairment that limits walking.

The Special Masters only have the jurisdiction that has been granted by the Settlement Agreement. Claimant has presented a claim that relates to an upper extremity condition. That is not one of the four disabilities recognized by the Settlement Agreement. Claimant retains the right to bring his own separate lawsuit concerning the condition of his arms and the discrimination that he alleges was directed at him. He cannot pursue his claim, since he was not in a wheelchair nor did he have a lower extremity impairment that affected walking on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is no, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Todd Olsen is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 11th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master