IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

　　　　Plaintiffs,

-vs.-

BILL OWENS, et al.

　　　　Defendants.

_____

Claim Number 02-728
Category II
Claimant: Jo Ann M. Wenzinger, #109307
Address of Claimant: LVCF,1401 W. 17th Street, Unit 5, Pueblo, CO 81003

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

　　　　THIS MATTER comes before the Special Master on the claim of Jo Ann M. Wenzinger (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). She is presently housed at the La Vista Correctional Facility (LVCF) in Pueblo, Colorado.

　　　　This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, and she has filed a reply in support of her claim. Further argument will be waived.

**I.**

　　　　This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."  This definition controls as to implementation of the Settlement
Agreement and adjudication of all claims filed by individuals claiming mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any
claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on May 31, 2001. She was placed initially at the Denver
Reception and Diagnostic Center (DRDC). She then was placed at the Denver Women's
Correctional Facility (DWCF). On May 24, 2002, Claimant was transferred to the Pueblo Minimum
Center(PMC) in Pueblo, Colorado. LVCF is a part of the PMC complex.

In her initial claim form, Claimant check the box for mobility impairment. Claimant stated,
in part, as follows:

I suffer from chronic degenerative osteoarthritis which is aggravated by
weight-bearing activities such as lifting and some bending movements. Additionally,
I am unable to achieve and maintain a "squatting" position without severe pain and
assistance in standing up again.

3

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> At the DWCF facility I was receiving Indocin regularly to relieve pain and swelling. I was suddenly transferred to PMC where Indocin was discontinued. When I complained of severe pain and decreased mobility, I was told "this is a work camp" and that they couldn't afford to continue my Indocin. I was threatened with punishment and/or transfer if I continued to complain of pain. I eventually wrote a letter to the Dept. of Regulatory Agencies and after suffering for almost one year, my Indocin was reinstated and my need for treatment verified.

Claimant was forwarded a supplemental form to complete and return. That form was returned. Claimant stated, in part, as follows:

> I suffer from some osteoarthritis, as well as knee damage from a previous injury. At times, my knees are very swollen and I am unable to bend/squat without difficulty. Often, walking is painful and slow without taking anti-inflammatory medication.

Claimant stated further concerning seeking an accommodation from DOC:

> 1) I asked for a "light-duty" status which would exempt me from jobs involving squatting or heavy lifting.
> 2) I asked to continue to receive the Indocin (anti-inflammatory) that I received during my year at DWCF.
> 3) I asked to be allowed to see an orthopedic specialist (as is allowed per "Administrative Regulation").

Claimant further alleges that she was required to use Motrin as a pain medication after the Indocin was discontinued.

Claimant submitted copies of grievances that she had filed in late 2005 requesting proper sized boots. The grievances were denied.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and her time in DOC. Defendants argue that Claimant has failed to establish her claim.

Claimant filed a reply to the response of Defendants. Claimant stated, in part, as follows:

> Claimant continues to assert mobility problems as described in her original claim and detailed in the Defendants' Response. In addition, during the time in which this legal process has transpired, she has experienced increasing difficulties climbing stairs and has fallen down the stairs on two occasions when her left knee "gave out", unable to support her. As a result, she has refiled an "ADA Request for

4

Accommodation" with the specific DOC Coordinator over thirty days ago. She was never contacted by anyone after her first submission almost one year ago, and she continues to await a response to her second request. She has indicated her difficulties in climbing stairs, her inability to lift heavy objects and furniture (as sometimes ordered by staff) due to disabling compression of her knee joints, and her fear of retaliation based upon previous experiences in attempting to have her needs addressed.

Claimant further has stated in her reply that she was assigned to light duty status while at DWCF but does not want to be regressed to a higher security level facility. Attached to her reply are copies of medical records and restrictions issued by Dr. Wermers in 2002 setting lifting limits for Claimant. Claimant also requested that she receive Indocin, but that was denied on the basis that Dr. Wermers had taken Claimant off that medicine.

III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?**  In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that she was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that she was disabled on or before August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."  There is no evidence before the Special Master that Claimant was ever in a wheelchair while in DOC custody. Claimant does not meet the first definition of mobility impairment.

The second prong of mobility impairment requires a showing that a claimant has a lower extremity impairment that substantially affects walking. The evidence presented by both sides reflects that Claimant has medical issues related to degenerative changes. Those changes were viewed as minimal in an x-ray taken in September, 2004. *Exhibit B*. It was noted at the time the x-ray was taken that Claimant was walking without apparent problems. There is no evidence that Claimant cannot walk more than one hundred yards without stopping. There is insufficient evidence to find that Claimant meets the definition of being mobility impaired.

In addition, the ADA requires that there be a showing that a disability impairs a major life

5

activity. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002). What has been submitted by both sides does not reflect that any major life activity was affected by degenerative changes on or before August 27, 2003. It is that date that is crucial for determining if a claim has been proven. Claimant has had health issues since arriving in DOC. The evidence in this case does not establish impairment of a major life activity on or before August 27, 2003 as the result of any condition which is recognized by the Settlement Agreement

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant must establish that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that she was discriminated against during that period of time, then she may include acts of discrimination that post-date August 27, 2003 as part of her claim.

Claimant is most upset concerning the medical care that she has received while in DOC custody. She had a disagreement with Dr. Wermers and others concerning the medicine Indocin. She pursued that issue through grievances and letters to outside authorities. The concern about medical care forms the primary focus of her claim. There is no evidence that Claimant was denied entry into programs or jobs while in DOC custody. Her focus has been on her medical care.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to her, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that she may have concerning her medical care.

Claimant also has the right to pursue separately any claim that she may have that arises after August 27, 2003. Since Claimant has not established that she was the victim of discrimination on or before August 27, 2003, she may pursue separately any ADA discrimination claims that she may have for the period that post-dates August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Jo Ann M. Wenzinger is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 8th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master