IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-787
Category II
Claimant: Ernest W. West, #111617
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Ernest W. West (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is housed at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on December 21, 2001. He has been placed at a number of DOC facilities over the years. He was at the Huerfano County Correctional Center (HCCC) in Walsenberg, Colorado when he filed his claim.

Claimant was placed on parole on March 2, 2005. He violated parole and was taken back into custody. He is presently at SCF.

In his initial claim form, Claimant checked the box for mobility impairment and vision impairment. Claimant stated, in part, as follows:

> I've had 7 different assaults against me beginning May 2002 until September 2004. I've lost ½ sight in my right eye in which I must wear glasses. I have permanent nerve damage in my upper shoulder. I have 3 broken fingers 2 on my left and one on my right hand. I am now diagnosed as bi-polar due to all of the assaults against me. I have pain in my left elbow always and left ankle in I walk with a cane off and on.
> I am sending you an 8 page report of all 7 assaults against me date, places, etc. If you need any other information concerning these assaults against me please feel free to ask me. I'm taking naproxen pain meds 500 mg for the rest of entire life.

In the document referred to as the "8-page report," Claimant does relate the various assaults that have taken place against him. The first assault purportedly occurred in May 2002 while Claimant was assigned to the Colorado State Penitentiary (CSP) in Canon City, Colorado. He described his assailant as a white supremacist who shoved a hot tray into his back. The same assailant assaulted him again two weeks later. No physical injuries were sustain in those two assaults that were described as disabling.

Claimant stated in his report that the next assault came on September 6, 2003 while working on the kitchen line at Four Mile Correctional Complex (FMCC) in Canon City, Colorado. After being transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado, Claimant was assaulted by an individual who used a sock with a lock in it. This led to a fractured rib in the upper back. Claimant suffered additional assaults on March 3, 2004, June 5, 2004, and September 1, 2004.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was discriminated against by Colorado Dept. of Corr. because I'm a bi-polar Black inmate in which staff knew as well as DOC headquarters because I wrote them 4 or 5 letters in the past about my assaults against me by hate crimes and Black gang

bangers, my 8th Amendment rights were violated and 14th Amendment big time.

Claimant alleged further in his initial claim form as follows:

> The harm caused to me because of discrimination by Colorado Dept, of Corr. is that each assault against me DOC staff knew about these incidents before they even happen, and never did anything to protect me from these assaults when I went to DOC staff for their help.

Claimant submitted a supplemental form for each disability. Claimant stated that he now has to walk with a cane and is in pain. He also has alleged the loss of one-half of his eyesight in his right eye.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant filed a reply to the response of Claimant. In that reply, Claimant stated, in part, as follows:

> Due to the facts, the defendants acknowledge that I was assaulted with serious bodily harm on or about October 2003 with a slight fracture to my upper left shoulder, Feb. 15, 2004 I suffered two broken left fingers that still causes me pain, June 5, 2004 assault in which defendants themselves on page 4 that I lost vision in my right eye from 20/20 to 2/20, and on September 1, 2004 #7th assault against me in which I've sustain injuries to my left ankle right finger in which causes me to use walking cane for almost a year daily due to the serious trauma that happen against me that day.

Claimant reiterated in his reply that his life had been threatened and that his constitutional rights had been denied.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be

adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

Reviewing all of the evidence presented by both sides leads to the following conclusions. First, Claimant has alleged that the assaults against him were the result of actions of other inmates that DOC purportedly knew about. Claimant has alleged Eighth Amendment violations that are not part of this case. Claimant has a right to a safe and secure environment, but that has little or nothing to do with the Americans with Disabilities Act (ADA).

Second, Claimant's submissions indicate that he believes that he became disabled as the result of the June 5, 2004 assault. Claimant has alleged two assaults that occurred prior to August 27, 2003, and neither led to any injuries that were described as disabling. The use of a walking cane was the outgrowth of the ankle injury that was incurred on September 1, 2004. Defendants correctly state that these injuries occurred after August 27, 2003 and cannot be pursued independently through the claim process. A claimant must show that he was disabled on or before August 27, 2003, and Claimant has not done that. He may not request consideration of anything that occurred after that date, since there is nothing that occurred before August 27, 2003.

Claimant has a right to pursue a separate lawsuit for violations of his Eighth Amendment rights. Claimant has not submitted any evidence that reflects that he was disabled , as defined by the Settlement Agreement, on or before August 27, 2003.[2]  That being the case, his claim must be dismissed.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since Question #1 has been answered in the negative, this question does not need to be answered.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ernest W. West is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

---

[2] Claimant has indicated that he is bi-polar. The Settlement Agreement does not provide any category for mental health disabilities. Claimant may have the right to pursue a separate lawsuit under the ADA and/or Eighth Amendment for his mental health issues.

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 11th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master