IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-490
Category II
Claimant: Elic Johnson, #74507
Address of Claimant: 1980 Newark, Aurora, CO 80010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Elic Johnson (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He was housed at the Ft. Lyon Correctional Facility (FLCF), Ft. Lyon, Colorado when he filed his claim. He has since been released from custody and is living in Aurora, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody in 1978. Claimant was released from custody on that sentence in January, 1994.[2]  Claimant returned to DOC custody on a new sentence on January 2, 2004.

In his initial claim form, Claimant checked the box for vision impairment. Claimant stated, in part, as follows:

> I am unable to see as the DOC took my glasses and refused to return them as a result I am unable to see. Secondly, I am a diabetic and have high blood pressure, and have suffered a heart attack because the DOC has withheld my medication.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> The withholding of my glasses is discrimination as they do not withhold other inmates' glasses. The medical department has withheld medications ordered by doctors and in some cases actually discontinued those meds. This is a showing of utter disregard for my well being and health.

Claimant went on to state:

> On the vision problem, it has caused me not to read, to misunderstand what I try and read, and causes great problems trying to get around. The second problem is even more serious the withholding of meds have actually caused me to have a heart attack causes severe chest pains now, and loss of sleep. I suffer recurring dizzy spells to such an extent that I am unable to walk or eat.

Claimant was forwarded supplemental forms to complete and return. Those have been filed by Claimant. On the form for diabetes, Claimant stated, in part, as follows:

> My medical records, made available to the DOC at the time of my incarceration on January 2, 2004, clearly showed that I was diabetic and have been

---

[2] Defendants stated in their response that they had attached as Exhibit A the offender profile of Claimant reflecting when he came into DOC custody and when he was released. No such document was provided with the response. Claimant has submitted a number of documents that corroborate that he came into DOC custody again in 2004. Further, Claimant was given the opportunity to file a reply to the response, but he did not do so. The Special Master finds that Claimant left DOC custody in 1994 and returned to that custody on January 2, 2004.

>   diabetic since 1993. Despite my numerous complaints of chest pains and irregular heart beat, the DOC ignored my condition and withheld proper medication from me. This lack of care and willful withholding of medical treatment lead to ever increasing high blood pressure and ultimately to a heart attack in late January, 2004.

On his vision supplemental form, Claimant stated, in part, as follows:

>   Entering DOC on January 2, 2004, my prescription glasses were taken from me by the officers in charge of incoming inmates. I was told that they would be returned to me in an hour or so, but they never were.....This condition existed from January 2, 2004 to May 11, 2004 when I was finally provided a pair of corrective glasses. But by then, the damage had been done.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

Only one point raised by Defendants needs to be discussed. Claimant has provided no evidence or even allegations that he was disabled on or before August 27, 2003. The totality of Claimant's allegations relate to his period of incarceration that commenced on January 2, 2004. Though Claimant was in custody from 1978 to 1994, he has failed to establish that he was disabled, as defined by the Settlement Agreement, during that period of time. Claimant is not part of the class.

Claimant has the right to pursue a separate lawsuit for everything that has occurred since January 2, 2004. He may not pursue his claim, as all of his allegations relate to occurrences that happened after August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Elic Jpohnson is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 13th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master