IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-656
Category II
Claimant: Edward Charles Loftin, Jr., #90388
Address of Claimant: 2776 ½ Hartford Court, Grand Junction, CO 81503

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Edward Charles Loftin, Jr. (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) from July 2, 1996 to November 20, 2001. He was on parole when he filed his claim. He now has discharged his sentence and is living in Grand Junction, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 2, 1996. It is unclear as to the number of facilities in which Claimant was placed. He was granted parole on November 20, 2001. He has discharged his sentence and is no longer under any DOC jurisdiction.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> Before coming to DOC, I was exposed to tuberculosis in the county jail. While in DOC I was given a drug called I.N.H. However, I was allergic to this drug, and got sick when I took it. Although there were several other inexpensive drugs available, I was never put on them. But more important, I was to have x-rays every 6 months. This rarely happened. I have a birth condition that has left me 60% disabled. The constant pain can be helped by some simple therapy. I was given none. I have trouble being mobile (walking up hill, standing too long, sitting too long, climbing). My needs were largely ignored. At one point, I needed a crutch or cane and was denied one. I also needed a lower bunk but seldom got one.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I believe I was discriminated against by DOC because I am Hispanic and Native American and I was disabled. I saw this pattern with other disabled people of color. However, I must admit I also saw white disabled inmates discriminated against.

Claimant stated further in his initial claim form as follows:

> I believe that my back injury has gotten worse, because of no therapy, which I was getting before I went in. Because of this injury I should have been in a medical camp. I have much more trouble getting around now. I think my T.B. should have been treated more aggressively. My chances of coming down with T.B. are much stronger now, because of lack of treatment.

Claimant was forwarded a supplemental form to complete and return. In his supplemental form, Claimant stated, in part, as follows:

> I was born with scoliosis of the spine in two places, both in the upper back and lower back. This condition resulted in my right left being shorter than my left leg. This condition has left it difficult for me to stand or sit for long periods of time. This condition along with a couple of traffic accidents have left me in considerable

>       pain most of the time. I sometimes have trouble walking and need my cane. I also
>       need physical therapy and adjustments to get through without discomfort.

Claimant goes on in his supplemental form:

>       I was not able to sleep in an upper bunk. I could not take certain jobs.
>       Sometimes I had trouble getting up stairs. Sometimes I would have trouble getting
>       through the day without pain because of no physical therapy was offered. At one
>       facility I was denied crutches or the use of a cane. It was a long way to the chow hall
>       and it was slightly uphill. My injury and no therapy made getting to and from
>       difficult and painful.

Attached to Claimant's supplemental form were a number of medical reports and records. Most of these records related to an accident that occurred in March, 1992. The records do reflect that Claimant had pain as the result of the accident and that it was noted that his right leg was shorter than his left.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim. Defendants do acknowledge that Claimant has a case of scoliosis and leg length discrepancy.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

Claimant has raised issues over which the Special Master has no jurisdiction. Exposure and treatment for suspected TB is not part of the Settlement Agreement. Upper and lower back issues also are not covered by the Settlement Agreement. The same is also true of Hepatitis C. Claimant retains the right to bring a separate action for these and other issues over which the Special Master has no jurisdiction.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to

establish that he was disabled on or before August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This is the definition that is binding upon the Special Master and must be followed.

There is no evidence that Claimant ever used a wheelchair while in DOC custody. Thus, Claimant does meet the first requirement of the definition.

The second prong requires a showing by Claimant that he had a permanent lower extremity impairment that substantially limited walking. The medical documents submitted by Defendants corroborate that Claimant has one leg shorter than the other. There is no evidence that Claimant could not walk while in DOC custody. In fact, the medical records submitted reflect that Claimant was active, despite having health issues. *Exhibit D* (lifting weights). Claimant has not shown that he had a permanent lower extremity condition that substantially affected walking.

Claimant has not proven by a preponderance of the evidence that he had a mobility impairment, as defined by the Settlement Agreement, on or before August 27, 2003. Claimant is free to bring a separate lawsuit for those conditions not covered by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Edward Charles Loftin, Jr. is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 13th of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master