IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-687
Category II
Claimant: Timothy Conde, #110867
Address of Claimant: CMI Dahlia, 4511 East 46th Avenue, Denver, CO 80216

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Timothy Conde (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He was housed at the Sterling Correctional Facility (SCF) in Sterling, Colorado when he filed his claim. He has now been released on parole from DOC custody and is living in Denver, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in September, 2001. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at SCF when he filed his claim. He since has been granted parole.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> Nerve damage, brain damage, in my linguistic skills and are very poor at this time. It's hard to write or even read books. Also hard to pick items up and my hands are always hurting. Doctor diagnosed me as having chronic pain in whole body, motor skills are not good since injury, am on bottom bunk restriction and bottom tier restriction and have many documented physical restrictions. Plus fall from top bunk in 2003 when I had bottom bunk/tier restriction.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> In my medical reports the doctors in Pueblo, CO said I should have therapy x3 times a week, to help with motor skills, also to be checked regularly for brain damage and nerve damage. DOC has done nothing since I got out of the hospital in 2003 Dec. Have put in many kites concerning this matter with little to no response. PA's ordered tests that were never done.

Claimant went on to say in his initial claim form:

> The harm caused is being put in general population where I can't protect myself and fear for my life, the mental anguish is immense. Losing contact with family due to motor skills not working. Undue amount of pain during waiting for medical procedure. Physical pain affecting mental progress in the TC program that I'm in for behavioral modification problems.

Claimant was forwarded a supplemental form to complete and return. He has done so. In that form, Claimant has stated, in part, as follows:

> Nerve damage in hands, coordination is below normal. Currently first floor, bottom bunk restricted. Currently has work restrictions (cannot lift any heavy weight. Cannot stand for more than thirty minutes. No squatting). Balance is not adequate.

Claimant in the supplemental form indicates that he has Hepatitis C. Attached to his supplemental form is a copy of a Progress Assessment Summary. That form indicates that on December 17, 2003,

4

Claimant was given certain restrictions, including first tier/lower bunk.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant. Defendants argue that Claimant has failed to establish his claim. Medical records reflect that Claimant has ulnar neuropathy. *Exhibit A*. Those records reflect that Claimant suffered a head injury on June 8, 2003. This was in conjunction with a drug overdose. He was initially hospitalized at St. Anthony Hospital in Denver, Colorado, but was transferred to the Colorado Mental Health Institute in Pueblo. A transfer record submitted by Defendants reflects that Claimant was at Independence House on Pecos Street in Denver when he had his overdose. He was returned to full-time DOC custody thereafter. Other records reflect that Claimant has a significant mental health component to his present condition.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

The evidence presented by both sides reflects that Claimant was in a community placement at Independence House in Denver in mid-2003. How long Claimant was in this placement is unclear, but Claimant was not under DOC custody while at Independence House. It is also clear from what has been submitted that a great majority of Claimant's present medical problems relate to a drug overdose. *Exhibit K*. The overdose was the result of actions by Claimant, not by DOC and its staff.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair full or part-time on or before August 27, 2003. There also is no evidence that Claimant had a permanent lower extremity mobility impairment that substantially limited walking during the time period that ended on August 27, 2003.

As of August 27, 2003, Claimant did not have a mobility impairment as defined by the Settlement Agreement. Claimant certainly has had significant health issues since that date, but those

5

are not covered by the Settlement Agreement. Claimant retains the right to file a separate lawsuit in his own name for anything that occurred after August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Timothy Conde is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 13th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master