IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-893
Category II
Claimant: Wayne Thomas, #98562
Address of Claimant: 8370 87th Avenue, #F, Arvada, CO 80003

_____

## FINAL ORDER OF SPECIAL MASTER
_____

      THIS MATTER comes before the Special Master on the claim of Wayne Thomas (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He was
placed at Camp George West in Golden, Colorado when he filed his claim. He presently is on parole.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

In his initial claim form, Claimant stated that he came into DOC custody on November 20, 2004. In that claim form, Claimant checked the boxes for vision and mobility impairment. Claimant stated, in part, as follows:

> This disability right leg and back pain has definitely change the way I get around. I can't stand up on my right leg long at all. The pain start getting real bad after about 10 min standing on it. And my back is another big problem. The problem with my back is that I can't stand up or walk without a lot of pain. This problem has gotten worse caused by the lack of proper medical treatment. DOC has fail to accommodate or care for my disability.
>
> My vision started to get worse and I had told medical this they told me that they would put me on a list to be seen that was back in March of this year and I still have not been seen. My health has gotten worse all because of the lack of medical treatment and attention. I am going to have big problems getting back to my life because of now my disability. No one should have to live like this.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was not given any medical treatment other than a nurse saying to see my physician once I'm released. She told me to see a doctor once I'm home. I was not check out by x-ray or anything once I told them that my release date was 8/20/05. The medical staff did not want to give me any treatment.

Claimant was forwarded supplemental forms to complete and return. Those have been filed and contain similar allegations to those set forth in the initial claim form. Claimant filed a letter in August, 2005 indicating that he was experiencing significant leg pain which he believed was related to his disability.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

Claimant originally came into DOC custody on October 6, 1998. He was evaluated at the Denver Reception and Diagnostic Center (DRDC) and transferred to the Four Mile Correctional Complex (FMCC) in Canon City, Colorado. Claimant remained at FMCC until April 15, 1999 when he was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant was paroled on October 31, 1999 and then discharged his sentence on May 1, 2001.

Claimant returned to DOC custody on January 5, 2005. He was seen at DRDC and then sent to Camp George West. He was transferred ultimately to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was paroled on November 4, 2005. He remains on parole at this time.

Claimant's present incarceration began after the Settlement Agreement was approved by Judge Nottingham on August 27, 2003. Claimant may seek adjudication of the incidents that occurred after August 27, 2003 only if he was disabled before that date. In addition, Claimant has to prove that he was discriminated against by DOC and its staff on or before August 27, 2003.

A careful review of all documents submitted by Claimant reflects that he is complaining of problems that arose after he returned to DOC custody. In a letter to Paula Greisen, dated June 20, 2005, Claimant stated that "my medical problems started back in 1-6-2005 back problems and right leg problems..." There are no allegations anywhere in Claimant's pleadings that relate to his first period of incarceration in 1998-99.

Defendants have attached medical records from the first period of custody. Claimant did report some leg and feet problems. *Exhibit A*. Claimant was allowed to wear tennis shoes and have some time off. Later x-rays were taken of his knees, and the results were normal. *Exhibit C*. He was provided physical therapy exercises to strengthen his knees. *Exhibit E*.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is absolutely no evidence before the Special Master that Claimant ever used a wheelchair while in DOC custody. There also is no evidence that during his first incarceration that Claimant had a permanent lower extremity impairment that substantially limited walking.

There are absolutely no allegations of any vision problems while in DOC custody prior to

5

August 27, 2003. Claimant is not part of the class as vision impaired.

Claimant has failed to prove that he was disabled, as defined by the Settlement Agreement, prior to August 27, 2003. Therefore, the Special Master has no jurisdiction over any allegations that post-date August 27, 2003. Claimant's remedy is to file his own lawsuit concerning discriminatory acts that may have occurred after August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Wayne Thomas is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 12, 2007.**

SIGNED this 13th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master