IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-871
Category II
Claimant: Dianne Smith, #108634
Address of Claimant: ACRC, 2135 W. Chenango, Littleton, CO 80120

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on the claim of Dianne Smith (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). She presently is in a community corrections program in Littleton, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but has only filed a letter stating she received the last order. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on March 29, 2001. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). She then was placed at the Denver Women's Correctional Facility (DWCF). She was released on parole on February 19, 2003. Parole was violated and Claimant returned to DOC custody on December 8, 2004. She was incarcerated at DWCF.

Claimant was granted parole again on January 4, 2006. Parole was again violated and Claimant returned to DOC custody in August, 2006. She now is at a community corrections program.

In her initial claim form, Claimant checked the boxes for vision impairment and diabetes. Claimant stated, in part, as follows:

> I see or have blurred vision on & off. My diabetes goes real high & I sometimes think because I don't have a good diet it goes real high.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> They failed to see to my needs right away.

In her initial form, Claimant also stated:

> I've been putting kites in to have my eyes checked because I see blurry because of my diabetes & still seeing blurry. I haven't seen a doctor at this moment.

Claimant was forwarded supplemental forms to complete and return. In her supplemental form on diabetes, Claimant stated, in part, as follows:

> Because I have put in kite after kite complaining about how my vision acts up sometime I can't see a thing. Around 2001 or 2002, I went to Denver General Hospital & they looked through my eyeballs with some dye & I never get glasses yet. So the most recent is Feb. 21st 2005. I haven't gotten any glasses yet. My visual problems did not subside until I found out that I have diabetes.

Claimant also stated as follows:

> Yes it is very sad to me when I try to strain my eye sight to see & I can't because I also have emotional problems & between not being able to see & going through what I go through sometimes is a bit overbearing. And sometimes I am very

scared that I am going to go completely blind.

In her supplemental form for vision impairment, Claimant stated as follows:

I see everything blurry & my eyes would start watering & they hurt if I try to strain too much to see.

Claimant also set forth that "I haven't gotten my needs met I still haven't gotten glasses."

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and her time in DOC. Defendants argue that Claimant has failed to establish her claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed only a brief letter and no additional documents in support of her claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that she was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that she was disabled on or before August 27, 2003.

**Vision Impairment**: The medical records attached to Defendants' response reflect that Claimant does not a vision impairment. Claimant was provided an eye examination in April, 2001 and was found to have 20/20 eyesight in both eyes. *Exhibit A*. In late 2001, Claimant was diagnosed with type II diabetes. Shortly thereafter, Claimant was seen by an ophthalmologist at Denver Health, and the examination reflect no major problems with eyesight. *Exhibit C*. An eye examination took place in February, 2003. *Exhibit D*. Glasses were ordered for Claimant as the result of that examination. Her eyes were still correctable to 20/20. In March, 2005 a further examination was performed by an optometrist. *Exhibit G*. Her bilateral vision was determined to be 20/20. An ophthalmologist examined Claimant in May, 2005 and found no indications of major problems, despite having been diagnosed with diabetes.

Claimant has alleged that she has some vision limitations. She has not alleged that her vision

problems affect her ability to carry on her activities of daily life (ADL). Claimant has not alleged nor proven that she cannot see with glasses or that she has eyesight problems that are the result of her diabetes. Claimant has not established that she is vision impaired, as required by the ADA and Settlement Agreement. She is not part of the class as vision impaired.

**Diabetes**: Claimant was diagnosed as being diabetic after arriving in DOC custody. She is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant must establish that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that she was discriminated against during that period of time, then she may include acts of discrimination that post-date August 27, 2003 as part of her claim.

The evidence submitted by both sides reflects that Claimant received medical care for her diabetes while in DOC custody. She has received regular medical appointments and care, including monitoring of her blood/sugar levels. Claimant has received medications, a diabetic diet, and finger sticks for monitoring of blood/sugar levels. The documents also reflect that Claimant often did not follow the medical advice given to her, with not monitoring her diet and not taking medications as prescribed.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to her, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that she may have concerning her medical care.

Claimant has not established that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act. Her complaints are vague and not supported by documents that either side has submitted. The result is that Claimant has not established her claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Dianne Smith is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 26, 2007.**

SIGNED this 29th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master