IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-175
Category III
Claimant: Travis Lee Hosier, #104683
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER came before the Special Master for hearing on December 15, 2006. The hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado.  Present were the following: Travis Hosier (Claimant) and Scott Wilkonson, attorney for Defendants.

Testimony was received from Claimant through cross-examination. Claimant also offered Exhibit 1 which was admitted. Defendants' Exhibit A was offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in April, 2000. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Buena Vista Correctional Facility (BVCC) at Buena Vista, Colorado. He was transferred to FCF on December 4, 2000 and has remained at that facility since.

Claimant filed his initial claim form in May, 2005. He checked only the box for vision impairment. In his claim form, he stated, in part, as follows:

> The disability that I have is a vision disability. This disability affects my vision for seeing objects which makes me nearsighted, and I also have a stigmatism and sensitivity to light. My prescription is very strong. I am effectively blind with prescription eye glasses. Since I have a sensitivity to light, my eyes sometimes dilate when the sun is bright outside, the sunglasses, clip-ons they offer here aren't sufficient. My sensitivity to light gives me headaches, cause my eyes to water and affects my ability to see. Sun glasses and clip-ons that can be purchased from the outside provide this added protection.

In response to the question concerning acts of discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I have been discriminated against by the Colorado Department of Corrections (CDOC) through the misapplication of administrative Regulation AR 850-06. AR 700-05, Optometry Scope of Services says that a prisoner can get prescription eyeglasses from an outside source pursuant to AR 850-06, offender property. However, AR 850-06(IV)(Q)(2) says, "prescription glasses shall be purchased in accordance with administrative regulation 700-15, optometry scope of services." The regulations have placed in a catch-22. Also the inadequate sunglasses put extra strain on your eyes, which can lead to faster deterioration. Another point is that the eye glasses they offer here are not impact-resistant (neither the plastic or poly-carbonate lenses) which places me in danger of injury from impact of foreign objects.

In his supplemental form, Claimant stated that DOC prohibits wearing of contact lenses by inmates. Claimant used contact lenses in the past but has been precluded from doing so while in custody. Claimant stated further that he has a twitch that is the result of his stigmatism.

Prior to the hearing, Defendants had submitted a response to the claim. Attached to the response are a number of medical records relating to Claimant and his vision issues. Claimant received eye examinations on a regular basis and was issued eye glasses by DOC.

At the hearing, Claimant chose to submit Exhibit #1 in lieu of direct examination. This exhibit is an affidavit. Attached to it are several medical records and other documents. Claimant states in his affidavit that he has vision that is 20/400 in each eye. He believes that he qualifies as a member of the class.

Claimant states further in his affidavit that he cannot participate in sports because of the concern that his glasses will fall off and be damaged. He indicates that he received the wrong prescription which caused eye strain and headaches. Claimant had an injury to his eye on April 27, 2005 which required medical attention.

Counsel for Defendants was granted the opportunity to cross-examine Claimant. In response to a question, Claimant stated that he does not have totally corrected vision in each eye. Claimant stated that he is able to read. He has two pair of glasses, as he uses one pair for work, He is scared that his glasses will break. It would be hard to get by without the glasses. Recreational staff advised Claimant not to play sports because he cannot see. When asked how his vision is affected daily, Claimant stated that he has trouble with glare from the sun. He now has things that float in his eyes. His work is as a para-pro in the vocational shop.

Defendants submitted Exhibit A which is an affidavit from Dr. Orville Neufeld, D.O. Attached to the affidavit are some of Claimant's medical records. Dr. Neufeld states that Claimant has 20/400 vision in each eye, but is correctable to 20/20. There is a slight stigmatism. Claimant also has a drooping left eye lid. A metal object did enter Claimant's eye in 2005, and he received treatment for that.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be discussed separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The Settlement Agreement provides a definition for vision disability as follows:

> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.

It has been argued that this definition applies only to placement decisions for those who have vision disabilities. There is no evidence that Claimant is blind, and that was verified when Claimant appeared for the hearing.

Likewise, there is no evidence that Claimant's vision cannot be corrected to 20/200 or better. Claimant's eye examinations reflect that his vision is far better than 20/200 when using glasses. Under the definition in the Settlement Agreement, Claimant does not qualify as vision impaired.

Under the ADA and Rehabilitation Act, an impairment must be so substantial as to prohibit the ability to carry on activities of daily life. *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002). All of the evidence submitted by Claimant reflects that he has some vision issues, but they do not rise to the level of precluding activities of daily life. Claimant has an impairment but not a disability.

Claimant raises issues concerning the construction and interpretation of two DOC administrative regulations. Claimant is right that the regulations are inherently contradictory. The problem is that the Special Masters do not have the jurisdiction over DOC and its regulatory processes. Claimant retains the right to seek relief through the state court system in Colorado. The Special Masters are limited by the Settlement Agreement to determining if an individual had a disability on or before August 27, 2003 and had been the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Claimant does not have a qualifying disability for the reasons noted. He is not part of the class. He may seek relief as to discrepancies in administration regulations through a state court proceeding.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Travis Hosier is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 26, 2007.**

SIGNED this 27th day of December, 2006.

6

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master