IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-274
Category III
Claimant: Ronald D. Lucero, #58531
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on December 15, 2006. The hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Ronald D. Lucero (Claimant) and Scott Wilkonson, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibit A was offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]    Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on October 2, 1986. Claimant has been placed at a number of DOC facilities over the years. In 1995, Claimant was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He remained there until 1999 when he was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. In 2000, Claimant was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He remained there until 2003 when he was transferred to FCF.

Claimant was diagnosed as being diabetic in 1996. He initially was prescribed a diabetic diet and medication. He was able to control his blood sugar levels without use of insulin. Later he had a bad reaction to a diabetic medication which actually made his diabetes worse. He was unable to control his blood sugar levels at that time.

DOC medical staff switched Claimant to a medication called Diabeta. This medicine was given twice per day and allowed some stabilization of the blood sugar levels. Claimant was able to exercise which helped with his weight. Claimant testified that DOC food is heavy on carbohydrates and this means potential weight increases. Claimant stated that he has been advised that he is a Type Two diabetic.

Claimant testified that he has had trouble with his feet and toes. He will develop calluses that have to be reduced in size. He has found being a diabetic in a prison setting to be difficult because of anxiety over the disease. He does not know if he is receiving the right medications.

As to his vision, Claimant testified that he receives an examination once per year. He has one pair of glasses now, and that the cost is $12.50 for a replacement pair. He has not regularly received a glaucoma examination when his eyes have been checked. His eyesight is different now, and Claimant does not believe that he will ever be able to see properly again. Claimant testified that he and other inmates should receive appropriate medical care.

On cross-examination, Claimant stated that his diabetes is under control. He is not presently on a diabetic diet. He was on a reduced calorie diet while at AVCF. He was terminated from that diet because of missing certain meals. He testified that he would miss some meals because he had to attend sweat lodge as part of his religious beliefs. He testified further that sometimes his feet would become numb. He would have problems with his toenails, particularly when wearing his previous boots. He now has received a reasonable pair of shoes from DOC.

On further cross-examination, Claimant testified that he can only read with bifocals. He is worried about blindness resulting from glaucoma. He does not know how he could deal with being blind.

On redirect examination, Claimant testified that he worked in correctional industries in the

metal shop. He acknowledged that he has received medical care. He has been classified as having a chronic condition.

<h1 style="text-align:center">III.</h1>

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be discussed separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant checked two boxes on his initial claim form: diabetes and vision impairment. In addition, Claimant appears also to be claiming a mobility impairment. Each of these conditions must be examined individually.

**Diabetes:** There is no question that Claimant has diabetes. He has been diabetic since 1996 and has been treated for the disease since that date. Claimant is a member of the class as a diabetic.

**Vision:** Claimant acknowledges that he has received regular yearly eye examinations. He has received glasses and is able to function daily with the use of his glasses.

In order to be vision impaired under the Settlement Agreement, a claimant must be unable to carry on his activities of daily life (ADL) as the result of a vision impairment. The best that the evidence supports is that Claimant has an impairment that can be corrected with glasses. There is no evidence that his vision is so impaired that he cannot carry out the ADL. Claimant is not part of the class as vision impaired.

**Mobility:** Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The evidence presented does not support that there is a mobility impairment, as defined by the Settlement Agreement.

Claimant has degenerative changes in his lower extremities. He has tendinitis of the right ankle. His right foot also has basic degenerative changes. He also has degenerative joint disease in his left knee.

There is no evidence that Claimant has ever used a wheelchair while in DOC custody. Likewise, there is no evidence that Claimant's degenerative condition has prohibited him from walking. The Settlement Agreement provides two examples of mobility impairment. The first is the inability to walk more that one hundred yards without stopping. The second is the inability to climb a flight of stairs without stopping. The evidence presented by Claimant does not substantiate that there is a lower extremity mobility impairment that affects walking. Claimant is not part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the**

5

**benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The Special Master finds that Claimant was the victim of discrimination in one area. To the extent that Claimant has raised other issues and areas of concern, the Special Master finds that those have not be established.

Many of Claimant's concerns relate to medical care that he has been provided. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability.  A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

In light of the *Fitzgerald* decision, a claimant must show that he was the subject of discrimination prohibited by the ADA and Rehabilitation Act. An example would be being placed into a facility that had no ramps for wheelchairs or not providing braille educational resources for a blind inmate. In this case, Claimant has raised one significant issue that reflects discriminatory conduct on the part of Defendants.

The one issue raised has troubled the Special Master for some period of time. Claimant was placed on a 2400 calorie diabetic diet. He was removed from that diet because he missed a number of meals. Claimant testified that he had to miss those meals because he was attending sweat lodge as part of his religious beliefs. In essence, an inmate who has diabetes is disciplined for missing meals by having the diabetic diet removed from him. The fact that this might lead to some health issues or severe anxiety for an inmate seems not to trouble anyone at DOC. Removal of a specific diet for an inmate who has diabetes because of missing a diabetic meal might appear rational at first blush, but it is discriminatory. Claimant has testified that he had a choice to attend part of his religious services through sweat lodge and lose his diabetic diet or not attend his religious service and maintain the diet. No evidence was presented by Defendants that others who were not diabetic were denied a meal or diet because of attendance at a religious function.

Claimant has a chronic condition that will be with him the rest of his life. Basic medical care is a program and service in the prison setting. Under the ADA and Rehabilitation Act, services,

6

programs and activities can be very basic. *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481 (7th Cir. 1997); *Schmidt v. Odell*, 64 F.Supp.2d 1014 (D.Kan.1999); *Kaufman v. Carter*, 952F.Supp. 520 (W.D.Mich.1996). Services may be as basic as being provided medicine or a medical diet. The loss of the diabetic diet was punishment that affected Claimant and caused anxiety concerning his condition.

On and before August 27, 2003, Claimant was treated differently due to his diabetes as noted.  The remaining issues have not been proven by a preponderance of the evidence or reflect a medical decision governed by *Fitzpatrick*.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Defendants placed Claimant into a position that was untenable and which placed him in fear of his well-being. Claimant is entitled to $125.00 as damages for the discrimination that occurred while in DOC custody.

IT IS HEREBY ORDERED that the claim of Ronald D. Lucero is granted, in part, and Claimant is entitled to the sum of $125.00 as damages; and

IT IS FURTHER ORDERED that the remainder of the claim is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 26, 2007.**

SIGNED this 27th day of December, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master