IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-682
Category II
Claimant: Jerry D. Grady, #93047
Address of Claimant: BVMC, P.O. Box 2005, Buena Vista, CO 81211

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Jerry D. Grady (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is housed at the Buena Vista Minimum Center (BVMC), Buena Vista, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a response to Defendants' motion. Claimant has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>      B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>      C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
>      2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>      3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>      4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>      1. Is the claimant a disabled individual who is a member of the class?
>      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

In his initial claim form, Claimant states that he came into DOC custody in December, 2003. From the DOC number assigned to Claimant, it appears that he was in DOC custody prior to December, 2003. Other than some medical records, no further information has been provided as to when that prior DOC incarceration occurred.

In his claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> The disability is crushed feet, arthritis in both feet and hips, amputation of right heel. This has caused unusual wear on the discs in my back, which has resulted in a curvature in my spine. This makes it very difficult for me to walk or sit for extended periods of time without being in extreme pain. It also makes walking on slippery floors overtly dangerous.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I work in the kitchen in the position of special projects due to my physical limitations. When I was hired for this position it was as a part-time employee to roll flatware for 2.5 hours per day. During this work period I was required to sit on a wooden stool, this causes me a pain that I was able to endure. On July 12, 2004, my schedule was changed to include a second 2.5 hour shift, sitting on the same wooden stool. I requested to be put on the original shift or to at least be given a place to sit with cushion and back support.
> The kitchen supervisor, Capt. Guy Edmonds, told me "you can suffer just as well here as in your cell." This was after explaining that the chronic pain I was suffering was/is unbearable. I was told by the Medical Department that it was the kitchen's responsibility to handle such matters.
> I could endure the extended work period if accommodations were made for me to have better seating.
> Secondly, while walking on the slippery floor of the kitchen in May, 2004 I fell and broke a toe. There have been no attempts to accommodate my inability to walk on the floors....

Claimant was forwarded a supplemental form to complete and return. Claimant submitted that form in October, 2004. In that form, Claimant alleged that he had been determined to be one hundred percent disabled by four doctors and by the Social Security Administration. Claimant detailed another fall that occurred in the dining room on May 25, 2004.

Claimant also submitted some medical records in support of his claim. Those records include

entries from 1997. Claimant was apparently at the Skyline Correctional Center (SCC) in Canon City, Colorado in July, 1997. One medical record reflects that Claimant has deformed feet. He was to receive a referral to podiatry. In April, 1997, there is an entry reflecting scoliosis and a leg length discrepancy. Later medical entries indicate that Claimant does have problems and deformities in his feet.

Defendants have filed a motion to dismiss. Defendants argue that Claimant has failed to make sufficient allegations to include him in the class, as defined by the Settlement Agreement.

Claimant was given the opportunity to file a response to the motion to dismiss of Defendants. Despite being given up to and including December 18, 2006, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Since Defendants have filed a motion to dismiss, all reasonable allegations set forth by Claimant must be accepted as true.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

The medical records from 1997 substantiate that Claimant had a permanent lower extremity impairment due to his deformed feet and leg length discrepancy. Accepting as true the allegations of Claimant, he was mobility impaired on or before August 27, 2003. That impairment existed in 1997 when Claimant was previously in custody.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Defendants note correctly that Claimant only has alleged discriminatory acts that occurred after he was re-incarcerated in December, 2003. Claimant specifically points to the actions of DOC staff in extending his work hours and not accommodating him. He further points to the falls that he has taken in the kitchen and dining room which he maintains are the result of his physical condition.

Claimant has not alleged that he was the victim of discrimination on or before August 27, 2003. The Special Master has reviewed everything submitted by Claimant, and there is not one allegation of discrimination prohibited by the ADA before August 27, 2003. Under the Settlement Agreement, Claimant may not amend his complaint to include discriminatory acts that post-date that point in time unless prior discrimination is established. Claimant has not made such allegations, despite being given the opportunity to respond to the motion to dismiss.

Claimant has the right to pursue a separate lawsuit for any acts of discrimination that occurred after his return to DOC custody in December, 2003. Claimant may not pursue his claim for the reasons noted.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Jerry D. Grady is dismissed, as he has failed to set forth any allegations of discriminatory conduct prior to December, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 3rd of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master