IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

_____

Claim Number 02-731
Category II
Claimant: Teddy Mark Long, #100680
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Teddy Mark Long (Claimant).  Claimant is incarcerated in the Colorado Department of Corrections (DOC). He has been placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially
> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in April, 1999. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. He then was transferred to FCF.

In the initial claim form, Claimant checked the boxes for mobility impaired and diabetes. Claimant stated, in part, as follows in his initial claim form.

> Diabetes requires daily insulin injection. Restricted diet has produced progressive deterioration in overall health and reduced life expecting. Narcolepsy produces sudden, unpredictable loss of muscle control, falling to ground.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Medical problems and disabilities resulted in placement in facilities where I was unable to participate in programs that would have earned sentence reduction time, and in exclusion from employment in Correctional Industries where I would have earned funds to support my self after release. DOC has failed to provide a therapeutic diet that meets the clinically accepted recommendations of the American Diabetes Association.

Claimant goes on to state:

> Inadequate and inappropriate treatment of diabetes has resulted in severe deterioration of visual acuity, progression of diabetic neuropathy and peripheral vascular disease, repeated infections and skin disorders, pain, suffering and debilitation.

Claimant was sent supplemental forms to complete and return. Those were never filed with the Special Master.

Defendants submitted a response to the claim. Defendants argue that Claimant is not disabled and is not part of the class.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including December 20, 2006, Claimant has filed nothing further in support of his claim or a reply to the response filed by Defendants.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability alleged by Claimant must be examined separately.

**Mobility Impairment**: Claimant checked the box on his initial claim form for mobility impairment. Claimant set forth no allegations in the claim form concerning any mobility problems. Claimant likewise submitted no supplemental form or medical records supporting any claim of mobility impairment. Claimant has failed to prove that he has a mobility impairment.

**Diabetes**: Claimant has been a type II diabetic since 1987. He is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Defendants have submitted unrefuted evidence that Claimant has had more than his share of disciplinary problems. He failed to abide by the program requirements at SOTP and lost a job at FCF because of a work stoppage. Claimant has lost opportunities and earned time for reasons unrelated to his diabetes.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

Claimant has received medical care since coming into DOC custody. There is no evidence that he was denied entry into or completion of any programs as the result of his diabetes. There is no evidence that he did not receive appropriate services from DOC.

Claimant is diabetic, but there is no evidence that he did not receive appropriate services and medical care for his condition. Claimant has not established that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Teddy Mark Long is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 3rd day of January, 2007.

BY THE COURT:

/s/ *Richard M. Borchers*

_____

Richard M. Borchers
Special Master