IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-828
Category II
Claimant: Andrew Montoya, #114875
Address of Claimant: c/o Ed Martinez, 310 E. Abriendo, Suite D, Pueblo, CO 81004

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER comes before the Special Master on the claim of Andrew Montoya (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He was placed at the Four Mile Correctional Center (FMCC) in Canon City, Colorado when he filed his claim. Claimant has been released on parole.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a response to Defendants' motion to dismiss, but he has filed nothing further in support of his claim. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>       A. COVERED DISABILITIES
>       The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in September, 2002. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at FMCC when he filed his claim. He later was transferred to the Huerfano County Correctional Facility (HCCF) in Walsenburg, Colorado. He now is on parole.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> Chronic back pain from an automobile accident in 1996. Specialist - Dr. Koons - neurosurgeon. I can't sit down for long periods of time. Can not lift the weight I was once able to. I was recommended by the surgeon Dr. Koons to receive facet blocks in my back. Also to take pain medication and try and get as much physical therapy for it as possible. He also told me that I could possibly have this pain for the rest of my life. Also my shoulders from the same accident I have chronic bursitis as well as inferior bone spurs that cause me pain and recently had surgery in Sept. - 2004 by orthopedic surgeon Dr. Eskestrand and he recommended pain medication - physical therapy - and both surgeons recommended the continuous need for follow-up visits that have been denied by Dr. Neufeld and Dr. Bautista and Dr. Cabiling.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> When I first came to DOC I was taking medication for my pain. They started calling me a drug addict and told me the pain was in my head and tried to give me psychotropics. Then sent me off to a minimum center from there. They put me to work and told me if I didn't they would fire me and restrict my privileges. So finally, they moved me to a minimum restricted because of my medical status and told me I can't be at minimum because they don't have the staff to help me. But the medical staff here told me if I keep complaining of my pain, they would write me up and give me a COPD.

Claimant stated further in his initial claim form as follows:

> They have caused severe pain by making me work and have made my injuries worse because the doctors don't want to send me to see my specialists so I can continue to get treatment. They don't want to give me my pain medication that has been recommended by the surgeons. They have put me in R.P. status. They don't want to give me proper medical treatment such as therapy, Tens Unit, DOC doctors threaten me with write ups have tried to make me sign waivers of liability.

Claimant was forwarded a supplemental form to complete and return. He completed that form and attached some medical records. Included in the attached documents are medical reports from Dr. Eskestrand, an MRI evaluation, and various grievances that have been filed by Claimant.

Defendants have filed a motion to dismiss the claim. Defendants argue that Claimant has failed to allege an injury that is covered by the Settlement Agreement. Defendants argue that the claim must be dismissed.

Claimant was given the opportunity to file a response to Defendants' motion. Claimant was granted up to and including December 18, 2006 in which to file a response, but he has filed nothing in opposition to the motion.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Since Defendants have filed a motion to dismiss, all reasonable allegations of Claimant must be accepted as true.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

The Settlement Agreement covers four areas of disability. The definitions in the Settlement Agreement are binding and must be followed by the Special Masters. The Settlement Agreement does not cover all possible disabilities that may be subject to the ADA and Rehabilitation Act.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There are no allegations in any document submitted by Claimant that he has ever used a wheelchair while in DOC custody. Claimant thus does not meet the first criteria of mobility impairment.

The second criteria is a showing that a claimant had a permanent lower extremity impairment that substantially limited walking. There are no allegations by Claimant that such a condition existed on August 27, 2003. Claimant has alleged that he had shoulder and back problems. These are the result of an automobile accident in 1996. Claimant has set forth no allegations of leg, knee or related lower extremity problems. Stated simply, Claimant has alleged a condition that is not covered by

the Settlement Agreement.

Claimant is not without a remedy. Since his allegations do not bring him within the provisions of the Settlement Agreement, he is free to bring his own separate lawsuit in state or federal court. He may seek damages for the care that he believes is deficient. Claimant has not alleged sufficient facts that would bring him within the definition of mobility impaired as set forth by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has alleged deficient medical care during the time that he was in DOC custody. He specifically has alleged the inability to have follow-up care with the specialists who treated him.

Accepting as true all allegations of Claimant, he is arguing that he has received substandard medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability.  A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants' motion to dismiss the claim is granted; and

IT IS FURTHER ORDERED that the claim of Andrew Montoya is dismissed, as he has not alleged a medical condition that is covered by the Settlement Agreement; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 5th day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master