IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 02-858
Category II
Claimant: Maximillian Lewis, #49996
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211-2017

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER comes before the Special Master on the claim of Maximillian Lewis (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He has been placed at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado.

The Special Master has reviewed the claim, supplemental forms, and motion to dismiss filed by Defendants. Claimant was granted the opportunity to file a response to the motion to dismiss, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

In his initial claim form, Claimant states that he came into DOC custody on May 3, 2004. From his DOC number, it is clear that Claimant was in DOC custody at some prior point in the past. It is not known when he was previously in custody in the past. Claimant's allegations all relate to the period after May 3, 2004.

In the initial claim form, Claimant checked the boxes for mobility, vision and hearing impaired. Claimant has alleged that he has epilepsy and hypertension. He further has alleged that he is blind in his right eye and deaf in his left ear. In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Unable to work any jobs in my condition. This facility is punishing me by not letting me work, I can't work! Too much medication.

Claimant was forwarded supplemental forms to complete and return. Attached to those forms are medical records from a time period prior to Claimant entering into DOC custody. A letter from Dr. Springs, dated January 25, 2005, reflects that Claimant has epilepsy and has been treated over the years for his seizures, including the use of Dilantin.

Defendants submitted a motion to dismiss. Defendants argue that Claimant has alleged only actions that took place from May 3, 2004 on. Defendants argue that he cannot be part of the class, as he alleged nothing that occurred on or before August 27, 2003.

An order was issued to Claimant granting him the opportunity to file a response to the motion to dismiss. Despite being granted up to and including December 18, 2006 in which to respond, Claimant has filed nothing further in support of his claim or in opposition to the motion to dismiss.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Since Defendants have filed a motion to dismiss, all reasonable allegations set forth by Claimant must be accepted as true.

**1. Is the Claimant a disabled individual who is a member of the class?** Only one issue needs to be discussed concerning the motion. Claimant has alleged that he came into DOC custody on May 3, 2004. From the letter of Dr. Springs, it is clear that Claimant was out in the community and not in DOC custody until early May, 2004.

The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. It was

on that date that the class was set. In order to file a claim, a claimant had to have been in DOC custody on or before that date. In addition, the claimant had to have been the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Individuals who came into DOC custody after that date could not file a claim, but could pursue a separate lawsuit.

Accepting as true everything that Claimant has alleged and submitted, he returned to DOC custody on or about May 3, 2004. Claimant has not alleged that he was disabled at any point prior to August 27, 2003 while in DOC custody. His allegations all relate to what has occurred since August 27, 2003. Claimant is not part of the class. He may not pursue his claim, but he may file a separate lawsuit concerning alleged discriminatory actions by DOC staff that have occurred on or after May 3, 2004.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** the Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, as Claimant came into DOC custody after August 27, 2003; and

IT IS FURTHER ORDERED that the claim of Maximillian Lewis is dismissed, as Claimant is not part of the class; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 3rd day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master