IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-865
Category II
Claimant: Blake H. Codding, #84418
Address of Claimant: 6021 Demott Avenue, Commerce City, CO 80022

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Blake H. Codding (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) at the time he filed his claim. He was housed at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant has been in the custody of DOC on two different occasions. He initially came into custody on October 6, 1994. He was placed at a number of facilities, but was paroled on April 8, 1997. Claimant discharged that sentence on April 8, 2000.

Claimant returned to DOC custody on July 9, 2003. He was placed initially at the Denver Reception and Diagnostic Unit (DRDC). He then was transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. He remained at BCCF until he was transferred to FLCF on March 25, 2004. Though he spent some periods at other facilities, he primarily stayed at FLCF until paroled on September 8, 2005. Claimant discharged the second sentence on June 18, 2006.

In his initial claim form, Claimant checked the box for mobility, vision and hearing impairments. Claimant stated, in part, as follows:

> Left knee needs reconstruction or replacement, can't stand for too long ½ hr at the most! Swollen and full of water, can't walk far! I'm on a knee brace & cane. Right knee is also going out! Water on it & very painful. Right roto-cup is torn severely can't hold up 5 to 10 lbs! Back pain! Lower lumbar blew a disk back in 74. Left hip, nerves were all tangled up, operation was going to relieve that, still never regained calf muscle back. Still get knife prick's in foot area, tingling, ham string pulls a lot! Scoliosis & degenerative arthritis on the back. No egg crate foam, back brace! Can't lift with right roto-cup injury sometimes its even hard to lift the newspaper up to read it. My back goes out on me especially in the winter months. Vision is sensitive to bright light or glare. Hearing was impaired very loud machines in the laundry.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Back in Sept.- 94 at Fremont Correctional Facility (we were inside the compound) they made me jump with my leg's handcuffed. I told them my knee was already injured! They had a step in the back of the van, I jump down and my left knee popped loud, and I went down, fell on ground. The guards said welcome to prison! Pal! In cell house 7 they made me climb stairs. I lived on 2nd floor. Made me lift and carry 4x8 pieces of steel up to 3rd floor to make bunks & made me stand all day long in the kitchen. Hurt my back. Only gave me back brace at Fremont. Only took fragments out of left knee should have reconstructed or replaced knee. Same thing here at Ft. Lyon. Didn't give me an operation denied me my meds when I came here. Took Bent County almost a year just to x-ray and then lost them. When I came here, they had me working in the laundry at Ft. Lyon. Can't work and they wrote me up twice one for failure to work in kitchen, had ear infection bloody nose irregular

heart beat. Was in bathroom late. Disruption of count. All for medical condition!

Claimant was forwarded supplemental forms to complete and return. Those forms have never been filed. In addition, Claimant was provided the opportunity to submit medical and other records in support of his claim. He has submitted only the initial claim form.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time to file a reply, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

**Vision Impairment**: Claimant's only reference to a vision impairment is in his initial claim form. He states that his "vision is sensitive to light or glare." Claimant did not file a supplemental form concerning his claim of vision impairment nor did he submit any medical records. It is unclear whether this claim relates to the first period of incarceration or second.

Defendants have submitted documentation showing that Claimant received eye examinations. When he returned to DOC custody, his eyes were uncorrected to 20/40 in each eye. *Exhibit H*. He was noted to wear glasses that corrected his vision. No evidence exists that Claimant had a vision problem that affected an activity of daily life. The evidence presented reflects that Claimant was able to carry on all activities of daily life and, therefore, was not disabled under the ADA as vision impaired. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). Claimant is not part of the class as vision impaired.

**Hearing Impaired**: Claimant's only reference to a hearing impairment come in his initial claim form. He stated that his "hearing was impaired very loud machines in the laundry!" No supplemental form for hearing impairment was filed by Claimant nor any medical records.

Defendants note that no reference is made in any of Claimant's medical records concerning complaints about hearing. His reference to an ear infection and missing count occurred in 2005. There is no evidence that any hearing problem was brought to DOC attention before 2005. Claimant has failed to carry his burden of proof to show that he had a hearing impairment on or before August 27, 2003 that affected activities of daily life. Claimant is not part of the class as hearing impaired.

**Mobility**: Claimant has alleged significant problems with his knees and back. Those problems extend back to Claimant's first period of incarceration.

The Settlement Agreement controls whether a claimant is mobility impaired or not. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has ever used a wheelchair full or part-time while in DOC custody.

In order to meet the definition of mobility impairment, a claimant must have a permanent lower extremity impairment that substantially limits walking. Defendants have submitted evidence that Claimant has continued to play sports over the years. He has been observed playing handball. *Exhibit C; Exhibit E*. Claimant was advised to stop doing jumping exercises. *Exhibit F*. The Settlement Agreement provides as an example that a claimant who is disabled would not be able to walk one hundred yards without stopping. There is no evidence before the Special Master that Claimant cannot walk or climb stairs. The evidence is that he has continued to play handball and engage in other sports.

The Settlement Agreement places the burden upon a claimant to establish that he meets the definition of mobility impairment. Claimant has not done that. He has established that he has some knee problems, but those problems have not curtailed his ability to play sports. Claimant is not part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Claimant has not established that he was treated differently on or before August 27, 2003 due to any of his alleged disabilities. Claimant has received medical care during his time in DOC custody. Claimant has concerns about the medical care provided while in DOC custody.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has not established that he was the victim of discrimination on or before August 27, 2003. He may pursue any claims concerning the quality of his medical care through a separate lawsuit.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Blake H. Codding is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 3rd of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master