IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-900
Category II
Claimant: Brian D. Flanders, #64722
Address of Claimant: RCF, 200 County Road 219, Rifle, CO 81650

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Brian D. Flanders (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He has been placed at the Rifle Correctional Facility (RCF) in Rifle, Colorado.

The Special Master has reviewed the claim, supplemental forms, and motion to dismiss filed by Defendants. Claimant was granted the opportunity to file a response to the motion to dismiss, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August 24, 2000. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. Claimant then was placed at the Buena Vista Minimum Center (BVMC) in Buena Vista, Colorado. He later was transferred to RCF.

In the initial claim form, Claimant checked the boxes for mobility, vision and hearing impaired. Claimant stated, in part, as follows in his initial claim form.

> Total hip replacement 8-7-2001 affects my walking, squatting, bending, kneeling, and no sitting on my knees.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> On May the 11th, 2005 my boss on cwp work crew instructed me to get down on my knees and paint curbs. When I told him that I couldn't as stated in my medical file, he yelled out quit being lazy and get down there and paint those curbs. So I got down on my knees and painted curbs for about fifteen minutes, when I went to get up I felt a terrific pain in the back of my left leg. The medical staff from the infirmary hauled me into the building and took x-rays of my left hip, the one that got replaced.

Claimant goes on to state, in part:

> On July the 11th of this year (2005) Dr. McLaughlin called me into the clinic here at BVMC and stated that the x-rays that were taken on May the 11th showed that the ball and socket had a space in them, where the x-rays that were taken at the Rifle Hospital back in October of 2004 were normal. On July the 13th of this year Dr. McLaughlin took some more x-rays and indicated that there was no change from the x-rays that were taken on the 11th of May....

Claimant sent a letter in support of his claim. That letter was received on October 19, 2005. In that letter, Claimant stated that he had been in a community corrections program in February, 2005 but was terminated due to his medical condition.

Defendants submitted a motion to dismiss. Defendants argue that Claimant has alleged only actions that took place from May 11, 2005 on. Defendants argue that he cannot be part of the class, as he alleged nothing that occurred on or before August 27, 2003.

An order was issued to Claimant granting him the opportunity to file a response to the motion to dismiss. Despite being granted up to and including December 18, 2006, Claimant has filed nothing further in support of his claim or in response to the motion to dismiss.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Since Defendants have filed a motion to dismiss, all reasonable allegations set forth by Claimant must be accepted as true.

**1. Is the Claimant a disabled individual who is a member of the class?** Only one issue raised in the motion to dismiss needs to be discussed. Claimant has alleged two major incidents, both occurring in 2005. In the first, Claimant alleges that he was placed at a community corrections program in Craig, Colorado. He was terminated because he was not physically able to walk to a specific program in which he was enrolled.

The second incident occurred on May 11, 2005 when Sergeant Mayfield ordered him to paint curbs. This led to a problem with the hip that had been replaced. Claimant alleges that he advised Sergeant Mayfield that he had medical restrictions but that did not matter. He was ordered to paint the curbs.

The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. It was on that date that the class was set. In order to file a claim, a claimant had to have been in DOC custody on or before that date. In addition, the claimant had to have been the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Individuals who came into DOC custody after that date could not file a claim, but could pursue a separate lawsuit. The same is also true for individuals who were subjected to discrimination prohibited by the ADA after August 27, 2003.

Accepting as true everything that Claimant has alleged and submitted, he was the victim of discrimination on February and May, 2005. His allegations all relate to what has occurred since August 27, 2003. Claimant is not part of the class. He may not pursue his claim, but he may file a separate lawsuit concerning alleged discriminatory actions by DOC staff that have occurred since February, 2005.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** the Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, as Claimant has alleged only discrimination that occurred in 2005; and

IT IS FURTHER ORDERED that the claim of Brian Flanders is dismissed, as Claimant is not part of the class; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 3rd day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master