IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-561
Category II
Claimant: Anthony Roebuck, #94123
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Anthony Roebuck (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is presently housed at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 17, 1997. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at the Sterling Correctional Facility (SCF) in Sterling, Colorado when he filed his claim. He later was transferred to FLCF.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> Pain, discomfort, impaired range of motion. My disability is osteoarthritis which I got because of a torn ACL and MCL in MN. The surgery was delayed for (2) years because CDOC sent me to a private facility out of state. The arthritis is a result of that delay, according to the surgeon.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> There were items I was given after the surgery to help with pain and swelling, CDOC took them. CDOC will not even give me a knee brace. The surgery was two years after the fact arthritis (which is irreversible) and suffering could have been avoided. I was discriminated against by being removed from this state. I was sent to MN without a signed interstate compact agreement and against my will. I committed no crimes nor was I indicted nor convicted of any crimes in the state of MN. Once there CDOC did not address my medical concerns. I was discriminated against by being held as a CDOC prisoner, but not being afforded proper medical treatment, as a CDOC prisoner in the State of Colorado would have. This indifference to my health has caused me irreparable damage, constant pain and needless suffering. That goes beyond my sentence.

Claimant was forwarded a supplemental form to complete and return. That has never been filed. In addition, Claimant was provided the opportunity to submit medical and other records in support of his claim. He has submitted only the initial claim form.

Defendants have submitted a response to the claim. Attached to the response are many medical and other records concerning Claimant and his time in DOC. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given time up to and including December 11, 2006 in which to file a reply, Claimant has filed nothing further.

4

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

Claimant has alleged that he was denied medical care while in a private prison in Minnesota. Neither side has submitted any medical records from the Minnesota facility. Defendants have provided an x-ray report which reflects that on March 10, 1999 Claimant had degenerative changes in his left knee. He was incarcerated at that time at the Kit Carson County Correctional Facility (KCCF) in Burlington, Colorado. He received surgery on his left knee on July 16, 1999. Subsequent medical records reflect that Claimant was walking well as of late July, 1999. *Exhibit A*.

Defendants have submitted medical records which reflect that Claimant received injuries while playing basketball. *Exhibit B*. Claimant did have toenails removed on May 23, 2002 and received use of a cane for one week. Subsequent to that, he suffered a injury playing basketball on August 3, 2002. He injured his left knee while running in July, 2003. In January, 2004, Claimant was playing basketball and hurt his knee. An x-ray was taken on February 4, 2004 and reflected no acute problems with the knee.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has ever used a wheelchair while in DOC custody. Claimant does not meet the first prong of mobility impairment.

The second alternative prong requires a claimant to show that he had a permanent lower extremity mobility impairment that substantially limited walking on or before August 27, 2003. Claimant has not done that. Claimant is to be commended for attempting to remain as active as possible while incarcerated. The problem is that playing basketball and running in the time period prior to August 27, 203 is reflective of someone who does not meet the criteria of mobility impaired. An example provided in the Settlement Agreement is an inability to walk more than one hundred yards without stopping. There is no evidence that is the case with Claimant. Claimant has not proven

5

that he was mobility impaired on or before August 27, 2003, as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Anthony Roebuck is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 26, 2007.**

SIGNED this 20th day of December, 2006.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 28th day of December, 2006 to the following:

Mr. Anthony Roebuck
#94123
FLCF
P.O. Box 1000
Ft. Lyon, CO 81038-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203