IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-668
Category II
Claimant: Fred K. Loftin, #58934
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on the claim of Fred K. Loftin (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is now at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]    Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>   2. Permanent Hearing Impairments
>   Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>   3. Permanent Vision Impairment
>   Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>   4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>   Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>       1. Is the claimant a disabled individual who is a member of the class?
>       2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>       3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>       4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on December 4, 1999. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was placed at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado.

In his initial claim form, Claimant checked the box for diabetes and vision impairment. He stated as follows:

> My feet are giving me the most problems. I can't stand on my feet for very long before they start getting numb. I also have problems with my eyesight. I can't see very far and I see black spots all the time.

In response to the questions concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was discriminated against by CCCF Health Services Administrator Ms. Del LeCount on 12-11-03. Ms. Del LeCount put out a memorandum stating that CCCF will not provide medical tennis shoes to DOC offenders. Before this memorandum came out CCCF made me do a payment plan for my medical tennis shoes. I'm still paying on them at $5.00 a month. The shoes cost $65.00. As for my eyes, I need dark tinted eyeglasses, but CCCF Health Services will not provide me with tinted eyeglasses.
>
> The harm caused me is that CCCF forced me to pay for my own medical shoes that are the wrong kind of shoe for my feet. I need a higher arch shoe with a thicker sole. These shoes that they are selling on CCCF canteen do not work for my feet and make my feet worse. As for my eyes goes they have got worse because I need sunglasses that are prescription eyeglasses.

Claimant was sent supplemental forms to complete and return. In the form for diabetes, Claimant stated that he was having back problems related to his feet. He had not received an accommodation for his feet or back. As to vision impairment, Claimant reiterated that he has trouble with the sun and needs prescription sunglasses.

Attached to his supplemental forms, Claimant provided some records. The first document is a copy of the memorandum of December 11, 2003 indicating that tennis shoes cannot purchased on a payment plan. The second document is a medical record from 2004 indicating that Claimant does have Type II diabetes. Other medical records also have been submitted.

Defendants' response has attached to it several pages of Claimant's medical records. Defendants argue that Claimant is not disabled, as defined by the Settlement Agreement. The records reflect that Claimant is a diabetic. Defendants argue that the diabetes does not affect Claimant's daily life and, therefore, he is not disabled.

Claimant was granted up to and including January 16, 2007 in which to file a reply to the response of Defendants. Claimant has not filed a reply nor has he submitted any additional documents in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. The burden is on a claimant to prove each of these four questions.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has claimed two disabilities. Each will be taken separately.

**Diabetes**: Defendants acknowledge that Claimant is a Type II diabetic. Though Defendants argue that Claimant is not disabled, the Special Master finds that Claimant is a member of the class as a diabetic.

**Vision**: Claimant's vision claim is very vague and not supported by any documents. Defendants have submitted an eye examination from March 20, 2002 which reflects that Claimant's vision is 20/20. Claimant has not proven that he has a vision impairment, as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant appears to have concerns about the quality of medical care that he has received. The evidence presented by both sides indicates that medical care has been provided to Claimant while in DOC custody.

This is not a case where care was denied due to the impairment of Claimant. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard

medical care must be brought under the Eighth Amendment or pursuant to state statutes.

Claimant has objected to having to pay for medical tennis shoes. He indicates that he has problems with his feet that would be alleviated by having the proper shoes. The issue of shoes having to be purchased from the canteen has arisen in other claims. The difference here is that Claimant has presented no evidence that tennis or soft sided shoes are medically necessary. Claimant has not shown that any medical care provider determined that such shoes were essential for the health and well-being of Claimant. The burden of proof is on Claimant to establish that he was the victim of discrimination as prohibited by the ADA and Rehabilitation Act. He has not carried that burden as to the medical tennis shoes or any other part of his claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is no, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Fred Loftin is denied, as he has failed to prove that he was victim of any act of discrimination prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 23, 2007.**

SIGNED this 22nd day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master