IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

  Plaintiffs,

-vs.-

BILL OWENS, et al.

  Defendants.

_____

Claim Number 02-723
Category II
Claimant: Steve Chavez Lopez, #55877
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

  THIS MATTER comes before the Special Master on the claim of Steve Chavez Lopez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is now at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

  This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

  This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on February 19, 2003.[2]  Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was placed at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Claimant was at HCCC when he filed his claim. He then was placed at AVCF.

In his initial claim form, Claimant checked the box for mobility impairment. He stated as follows:

> My knee has been approved for surgery, but the facility refuses to schedule surgery. My ankle has screws in it right under the skin and causes extreme pain. I have been authorized for low-cut shoes to help alleviate the pain, but the facility refuses to buy me the shoes. All this makes it very hard to walk but I have to walk to do anything. I have also been approved for rehabilitative therapy, but the facility refuses to set up therapy sessions for my ankle.

In response to the questions concerning discrimination by DOC and its staff, Claimant stated as follows:

> This facility refuses to provide standard treatment of my disability, measures authorized to repair damage, authorized therapy or any shoes authorized to help alleviate pain.

> I am forced to walk on a knee that needs surgery, making the problem worse. I am forced to wear boots that rub against the screws in my ankle which are just under the skin, which makes it even more difficult to walk because of the pain the rubbing causes and I cannot exercise properly with weights or cardio vascular walking to maintain any proper level of health.

Claimant was sent a supplemental form to complete and return. In that form, Claimant stated, in part, as follows:

> Hardware in ankle, which restricts movement, especially when I am not given the low top shoes ordered by Dr. Knee is unstable to the point that it cannot be relied on to support my weight, causing restrictions in all areas of activity. DOC is aware that surgery is required and so far has not scheduled surgery.

---

[2] The Special Master notes that Claimant has a DOC number that reflects that he was in custody on a previous occasion. Claimant has not raised any issues concerning any prior period of incarceration.

Attached to his supplemental form, Claimant has submitted several pages of medical records. The first entry is from DRDC on March 24, 2003 and reflects the problem with the hardware in the ankle. Claimant was provided low top shoes at that facility. The second report is from Dr. Jacob Patterson, M.D. who is an orthopedic specialist. He saw Claimant on a consultation and found the problem with the ankle and unstable knee. A recommendation was made for an MRI on the knee and that Claimant wear low top shoes. The third medical record is a report for HCCC that indicates that an MRI was done of the knee and that there was a complete ACL tear.

Defendants' response has attached to it several pages of Claimant's medical records. Defendants argue that Claimant is not disabled, as defined by the Settlement Agreement. The records attached reflect that surgery was performed on October 13, 2004 to repair the torn ACL and remove the hardware from the ankle. The medical records submitted further reflect that Claimant has healed and is doing well.

Claimant was granted up to and including January 16, 2007 in which to file a reply to the response of Defendants. Claimant has not filed a reply nor has he submitted any additional documents in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. The burden is on a claimant to prove each of these four questions.

**1. Is the Claimant a disabled individual who is a member of the class?**  The evidence submitted by both sides reflects that Claimant came into DOC custody in February, 2003 with an unstable knee and problems with the hardware in his ankle. The medical records reflect that the left knee was unstable to the point that Claimant would fall. Claimant also had the hardware problem in his ankle that affected his ability to walk.

Claimant must establish that on August 27, 2003 he had a permanent lower extremity mobility impairment that substantially limited his walking. Though this is a close case, the Special Master finds that Claimant has established that he was mobility impaired on that date. Further, the condition would have been permanent, absent the surgery that was performed in 2004. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?**  The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**  With one exception, the answer to this question is no. Claimant's concerns have to do with the quality of medical care that he has received. There is no question that he has received some care.

There is also no dispute that he received surgery for his knee and ankle in 2004. The evidence submitted reflects that his medical conditions were repaired and that Claimant is doing well.

This is not a case where care was denied due to the impairment of Claimant. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.

The one exception relates to low top shoes. While at DRDC, it was determined that he needed these shoes because of his condition. The medical entry on March 24, 2003 stated simply Claimant was to have Riddell shoes which were black with a low top. When transferred to HCCC, Claimant lost the shoes given to him at DRDC. It is unclear when that transfer took place, but the Special Master is aware that DRDC stay is relatively short. The transfer to HCCC would have occurred prior to August 27, 2003.

Claimant still needed low top shoes, but DOC required Claimant to buy such shoes. An entry from HCCC on November 24, 2003 states as follows:

> According to the orthopedic consult, a soft low cut show should be worn, and authorization was given to pad the patient's boot from the hardware. Medical is not required to issue the shoes. You may purchase the low cut shoes/tennis shoes from the commissary at your expenses, Medical will provide padding for your boot.

*Exhibit F*. Stated simply, DOC did not want to pay for low cut shoes, even though such shoes had been provided at DRDC and had been found to be necessary due to Claimant's condition. Thus, Claimant had to expend his own money to obtain shoes that were necessary for his physical condition. Other inmates without such a condition received boots at no cost. The issue of the low top shoes reflects discrimination toward Claimant due to his lower extremity condition.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has described the problems that he experienced with high top boots. He suffered some pain and discomfort as a result of not receiving low top shoes. Claimant will be awarded $100.00.

IT IS HEREBY ORDERED that the claim of Claimant is substantiated, in part, concerning the loss of low top shoes after his transfer to HCCC and Claimant is awarded One Hundred Dollars ($100.00) as damages; and

IT IS FURTHER ORDERED that the remaining issues raised by Claimant are denied, as he has failed to prove that any additional discriminatory act occurred; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 23, 2007.**

SIGNED this 22nd day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master

7