IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-903
Category II
Claimant: Wilanna T. Williams, #117144
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Wilanna T. Williams (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). She presently is at the Denver Women's Correctional Facility (DWCF).

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of her claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to reply to the motion to dismiss of Defendants, but she has filed nothing further.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 23, 2003. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). She then was placed at the Denver Women's Correctional Facility (DWCF).

In her initial form, Claimant checked the box for mobility impaired. Claimant stated:

> Ventricular septal defect of sinus vaslava aneurism epair. Restrictions of no heavy lifting, no exertion, no lifting over 10 lbs. No vigorous exercise or extensive labor tasks. No lifting over head permanently.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> Poor post surgery care. After a temperature of 107 degrees they did not follow the orders of the doctor at University Health and Sciences to bring me back. The doctor & nurses would not give me the recommended doses of pain relief. Did not do physical therapy with me. Had me cleaning under my own hospital bed. Cleaning the hospital room. The Department of Corrections ordered to released only from the hospital. I left without oxygen. DOC transport drivers did not strap me in, drove over bumps.

Claimant was provided a supplemental form to complete and file. In that supplemental form, Claimant stated, in part:

> Heart palpitations, waking up with pain in chest, restrictions - no lifting over 10 lbs., no extensive exercise, also no lifting over head. Feet and swelling of legs.

Claimant also submitted medical records in support of her claim. Those records are from 2004. Included are medical records from the University of Colorado Health Sciences Center. Those records reflect a trip to the Adult Congenital Cardiology Clinic.

Defendants have filed a motion to dismiss. Defendants note that Claimant came into DOC custody on June 20, 2003. Defendants argue that the records reflect that the heart issues arose in 2004. As a result, Claimant cannot show that she was disabled on or before August 27, 2003.

Claimant was granted up to and including January 7, 2007 in which to file a response to Defendants' motion to dismiss. Despite being given that time, Claimant has filed nothing further in response to the motion or in support of her claim.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Since Defendants have filed a motion to dismiss, all reasonable allegations of Claimant must be accepted as true.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that she was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that she was disabled on or before August 27, 2003.

Claimant has raised concerns about heart problems that she has experienced since arriving in DOC custody. The documents that she has filed with the Special Master all reflect that her heart problems began in 2004. There is no question that Claimant has significant health issues. The question is whether those issues arose on or before August 27, 2003. The documents provided by Claimant do not reflect any health issues in the time period of June 20, 2003 to August 27, 2003. Accepting as true all allegations and documents submitted by Claimant, the health problems that led to the filing of the claim arose in 2004. Thus, Claimant is not part of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant must establish that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that she was discriminated against during that period of time, then she may include acts of discrimination that post-date August 27, 2003 as part of her claim.

Accepting as true everything alleged by Claimant, the acts of discrimination occurred during and after the heart issues arose. In other words, the alleged acts of discrimination occurred in 2004 and later. Claimant cannot pursue her claim, as she is not part of the class and has alleged no discriminatory acts on or before August 27, 2003.

Claimant has the right to bring her own separate lawsuit for anything that occurred in 2004 or later. She simply cannot pursue her claim, as she is not part of the class for the reasons set forth.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted; and

IT IS FURTHER ORDERED that the claim of Wilanna T. Williams is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 16, 2007.**

SIGNED this 22nd day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master