IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 03-082
Category III
Claimant: Arthur Montoya, #66311
Address of Claimant: 2777 W. 40th Ave., Denver, CO 80211

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on April 24, 2006 at the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. Present were the following: Arthur Montoya, Claimant; Brooke Meyer, from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant. The following exhibits were entered by Claimant:

    Exhibit A:    HCCC ordered blood test results for Claimant, dated 10/23/2003.
    Exhibit B:    HCCC blood test results for Claimant, dated 07/02/2003.
    Exhibit C:    HCCC diabetes clinic follow-up for Claimant dated 1-8-04.
    Exhibit D:    DRDC Consultation Report Form for Claimant dated 9/17/03.
    Exhibit E:    Request for Consultation for Claimant dated 7/23/03.
    Exhibit F:    5 pages of Diabetes reports for Claimant with dates in 2003.

The following exhibits were entered by Defendants:

    Exhibit 1:    Affidavit of Doctor Roderic Gottula
    Exhibit 2:    Colorado Department of Corrections/Ambulatory Health Record for Claimant dated 8/11/04

1

    Exhibit 3:    Department of Corrections Ambulatory Health Record for Claimant dated 12/01/2004.
    Exhibit 4:    Canteen Sales Summary for Claimant from 01/01/2003 – 01/08/2006.

At the conclusion of the hearing, the claim was taken under advisement.[1] This order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.    General inconvenience or nominal damages;
    II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
    III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
    IV.    Damages due to severe physical injuries; and
    V.    Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

---

[1] Due to the Special Master requiring an unforeseen surgery, the matter has remained under advisement for several months while the Special Master recuperated.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant on May 18, 2004, submitted an initial claim which was assigned claim number 03-082. The basis of the claim is a hearing impairment and diabetes.

2. Claimant's claim was assigned to Category III based upon the Remedial Plan as set forth above.

3. Claimant's current address at the time of the hearing was:

>  2777 W. 40th Ave.
>  Denver, CO 80211

4. Proper notice of the hearing was given and Claimant appeared along with Defendants.

5. Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) at various times from November 1991 – July 1995, January 1997 – October 2001 and from October 2002 – the time of his parole.

6. During his incarceration, Claimant was housed at least at the Kit Carson Correctional Center (KCCC), the Huerfano County Correctional Center (HCCC) and the Limon Correctional Facility (LCF).

7. Claimant testified that from the time of his incarceration in 1998 until 2001, he was housed at the KCCC and that facility was not compliant with his diabetic medicines. Claimant stated that the lack of compliance was mostly in the two private facilities where he was housed (KCCC and HCCC). He testified that his blood sugars were out of control and would go as high as 500, his vision would become blurry and he was afraid that he might die. His testimony was that those treating him also thought he might die.

8. Claimant testified that he was diabetic in 1995 prior to his incarceration. He stated that he was placed on a 2,400 calorie diabetic diet but that he was never given one. He stated that he received the same food as everyone else. Claimant testified that he saw the doctor for schedule visits approximately every 45 days and that he complained about not being on a special diet. He took oral medications and his blood sugars were tested daily. Claimant testified that he was not discriminated against because of his diabetes but that the discrimination occurred in that he was not getting a proper diet.

3

9.      With respect to his hearing loss, He couldn't get a hearing aid or an assistance device.  Claimant has to read lips and cannot talk over background noise.  His hearing loss began in 1997 at the time his incarceration started.  Claimant testified that it was noted on his intake but nothing was done.  He couldn't always hear orders and background noise caused him problems.  He had no convictions for his hearing loss.  He couldn't hear PA announcements and had to go out of his cell to see what was occurring.  Claimant testified that he requested a hearing aid two times at HCCC but was never given one.  His ears were scanned for tumors.

10.     On cross examination, Claimant testified that LCF and the state prisons were compliant but that the private facilities were not.

### III.  CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.  The Special Master

finds and concludes that Claimant is a disabled member of the class. He suffers from diabetes and from a hearing loss.

      3.     The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. The record is devoid of any evidence suggesting that Claimant was not eligible for any of the programs, benefits or services offered by the various facilities where Claimant was housed or was disqualified from these programs, benefits or services for reasons other than his disabilities. Consequently, as to those programs, benefits and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

      4.     The key question is whether Claimant was discriminated against because of his disabilities. The only claim of discrimination before the Special Master was that Claimant didn't receive a diabetic diet or a hearing aid. However, the record is clear that Claimant was prescribed a diabetic diet but that he wasn't always compliant leading to severe spikes in his blood sugars. As for a hearing aid, no evidence was presented to the Special Master to indicate that the lack of a prescribed hearing aid was discriminatory. Rather, Claimant's primary complaint is that while he was incarcerated in two private correctional facilities, he received inadequate medical treatment and/or deliberate indifference by those CDOC contracted facilities to his condition. While these may constitute legitimate claims under other statutes or constitutional provisions, they are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). Since Claimant cannot prove that he suffered discrimination, his claim must be dismissed.

## IV. ORDER

      IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his Claim in this matter is DENIED with judgment to be entered in favor of the Defendants;

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 22, 2007** with the Clerk of the United States District Court at the following address:

      901 19th Street
      Denver, CO 80294.

SIGNED this 22nd day of January, 2007.

BY THE COURT:

/s/ *Richard C. Davidson*
_____
Richard C. Davidson,
Special Master

# CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 22nd day of January, 2007 to the following:

Mr. Arthur Montoya, #66311  
2777 W. 40th Ave.  
Denver, CO 80211

Ms. Brooke Meyer  
Mr. James X. Quinn  
Mr. Jess A. Dance  
Office of the Attorney General  
Litigation Section  
1525 Sherman Street, 5th Floor  
Denver, CO 80203

                                                            /s/ Susan L. Carter

                                                            Susan L. Carter