IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-610
Category II
Claimant: Douglas Lee Crawford, #55972
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

## FINAL ORDER OF SPECIAL MASTER
_____

      THIS MATTER comes before the Special Master on the claim of Douglas Lee Crawford (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is now placed at the Limon Correctional Facility (LCF) in Limon, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on November 24, 1985. He has been incarcerated at several facilities over the years. He was at LCF when he filed his claim. He remains at that facility.

In his initial claim form, Claimant checked the boxes for mobility impairment, hearing impairment and vision impairment. He stated as follows:

> Body suffered Fractured collarbone, broken shoulder. T-6 & T-8 vertebras cracked, T-7 crushed. All healed, but improperly. Internal & external ear damage, operation corrected as could; hearing-aid helpful. Glasses help vision impairment accident created. Walk with use of a walking stick - cane. Mental: organic amnestic syndrome, bridial cerebral hemorrhaging, thus those helped with inducing, which was also occurred, amnesia.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Lack of physical therapy; lack of mental therapy. Thus physical and mental therapy remains self produced = hence self involved with/into, through to completion(s) self induced DOC programs.

Claimant was sent supplemental forms to complete and return. Claimant stated, in part, as follows in his supplemental form on hearing impairment:

Sometimes have harder time understanding what people say.

As to his mobility impairment, Claimant stated that as an example "walk from living unit to chow hall - eat - return. Need to lay down = spinal pain so intense."

As to vision impairment, Claimant stated that "[e]yes need glasses." Attached to his supplemental forms, Claimant provided some medical records. One letter reflects that a motorcycle accident occurred on July 13, 1985. Claimant suffered a head injury in that accident. Also included are some of his medical records while in DOC custody.

Defendants' response has attached to it several pages of Claimant's medical records. Defendants argue that Claimant is not disabled, as defined by the Settlement Agreement.

Claimant was granted up to and including January 16, 2007 in which to file a reply to the response of Defendants. Claimant has not filed a reply nor has he submitted any additional medical or other records in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. The burden is on a claimant to prove each of these four questions.

**1. Is the Claimant a disabled individual who is a member of the class?**  Claimant has alleged three areas of impairment. Each claimed disability will be taken separately.

**Vision Impairment**: Claimant has alleged that he has a vision impairment because of his need for glasses. Records provided by Defendants reflect that Claimant has vision that can be corrected to 20/20 in each eye. *Exhibit C; Exhibit D*.

The ADA and Rehabilitation Act require a showing of a disability that is permanent and that affects activities of daily life. An example would be an individual who is permanently in a wheelchair and is unable to travel to a chow hall for meals. Under the Settlement Agreement, the burden is on Claimant to show that his activities of daily life have been affected by a vision impairment.

The Settlement Agreement has been interpreted by the Special Masters to require a showing for a vision impairment that there is an inability to see. There is no such evidence before the Special master. Claimant may wear glasses but he can see. He is not part of the class as vision impaired.

**Hearing Impairment**: Claimant does wear a hearing aid. It is unclear from his documents exactly what he is claiming that he cannot hear. With his hearing aid, Claimant has not alleged that he cannot carry on a conversation or react to alarms.

As with the claimed vision impairment, Claimant must show that activities of daily life have been affected by his hearing loss. Claimant has not done so. He has alleged that he has diminished hearing but is able to carry on daily activities with his hearing aid. Claimant is not part of the class as hearing impaired.

**Mobility Impairment**: Claimant has alleged that he suffered a back injury in the mid-1980's. He now must use a cane to get around.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."  There is no evidence before the Special Master that Claimant has ever used a wheelchair while in DOC custody. The evidence does reflect that Claimant has back problems that affect his mobility. *Exhibit E*.  He clearly must use his cane for stability.

This is a close case. The Special Master finds that Claimant is mobility impaired and is part

5

of the class.[2]

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. There is no evidence that DOC staff have discriminated against Claimant due to a disability.

Claimant's concerns have to do with the quality of medical care that he has received. He has alleged that he did not receive physical or mental therapy. There is no question that he has received some care. This is not a case where care was denied due to the impairment of Claimant. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.

Claimant has failed to establish that he was victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. His concerns about the quality of medical care may be taken up in a separate lawsuit. He may also bring an action concern his mental health issues. He may not pursue his claim for the reasons noted.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 23, 2007.**

SIGNED this 29[nd] day of January, 2007.

---

[2] Claimant has claimed emotional issues. These are beyond the jurisdiction of the Special Master. Claimant has the right to pursue any such claims in a separate lawsuit.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master