IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-671
Category II
Claimant: Guillermo Gomez, #107011
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Guillermo Gomez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is now at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody on April 26, 1999. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear if he was placed at other facilities before being confined at AVCF.

In his initial claim form, Claimant checked the box for mobility impairment. He stated as follows:

> I have spinal disc compress fracture (L-4, L-5), and I can't lift more than (20) lbs. or walk up and down more than one flight of stairs. I have chronic lumber pain. This prevents me from participating on most jobs, recreational activities (leisure) within DOC.
> I have a injury on my left knee which required surgery (twice) which continue to bother me and prevent me from standing up long periods and swell up regularly. DOC took away my knee and back braces and not replaced neither of the (2) two.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> DOC does not want to recognize my injuries which are well documented on my medical records. DOC have my medical records from CCA - Bent County Correctional Facility. Also my medical records from Steamboat Springs Memorial Hospital. Even with all these records, DOC had confiscated both of my braces and ace wraps. Plus refused to prescribe a decent pain medication of some kind or substitute that adequately provides me with some kind of relief. I do not speak or understand English fluently and DOC does not have medical personnel fluent in Spanish.
>
> Cannot get a regular paying job, cannot participate in any sports programs plus I'm in pain all the time and cannot get restful sleep due to back and knee pain.

Claimant was sent a supplemental form to complete and return. Claimant restated what he had placed into his initial claim form. Claimant also stated, in part, as follows:

> 08/11/03 I arrived to AVCF from Bent County Correctional Facility, at that time the intake personnel took my back brace. I have a lot of pain and discomfort when I move or/and walk with my back brace this which affects my job choices and recreation including educational programs since CDOC specially this facility does not offer any job, recreation or/and educational opportunities for prisoners with medical restrictions like the ones I suffer, also on 03/17/04 on a shakedown of my

      cell some officers took and confiscated all my knee braces and the back brace back
      up even when it was listed on my property, now I also have problems walking.

Claimant has included some medical records as part of his supplemental response. While at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado, Claimant was issued ace bandages, knee brace, extra pillow and additional items due to his medical problems.

      Defendants' response has attached to it several pages of Claimant's medical records. Defendants argue that Claimant is not disabled, as defined by the Settlement Agreement.

      Claimant was granted up to and including January 16, 2007 in which to file a reply to the response of Defendants. Claimant has not filed a reply nor has he submitted any medical additional records in support of his claim.

### III.

      The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. The burden is on a claimant to prove each of these four questions.

      **1. Is the Claimant a disabled individual who is a member of the class?**  Claimant has alleged that he has a mobility impairment. Claimant carries the burden of proving that he has such an impairment. Since this is a Category II claim, the establish of the impairment must be done through written documents, as there is no right to a hearing.

      There is no dispute that Claimant has suffered a compression fracture at L-4 of his lumbar spine. *Exhibit A*. It is also not disputed that Claimant was provided a knee brace and other items at BCCF. *Exhibit B*. When Claimant arrived at AVCF, he was seen by a physician who formed the opinion that Claimant did not need an extra mattress, knee brace, special chair, button up shirt, and other items previously provided. Based upon this medical opinion, those items were taken from Claimant.

      Claimant did request an evaluation to determine if he had a disability. An evaluation occurred on January 11, 2006 at AVCF. Claimant was found to be able to walk one hundred yards without stopping, do jumping jacks, and walk on his toes and heels. Claimant was determined not to have any impairment listed under the Settlement Agreement.

      Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."  There is no evidence that Claimant has ever used a wheelchair while in DOC custody.

      The evidence presented by both sides reflects that Claimant has had an L-4 compression fracture. Claimant has not proven that he has a permanent lower extremity impairment that prevents

5

him from walking one hundred yards without stopping or climbing a flight of stairs without stopping. Claimant does have medical problems but he has not proven that he has a mobility impairment as defined by the Settlement Agreement. A lumbar back problem is not a lower extremity impairment. The knee problem is undefined and not substantiated by any records submitted by either side.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. There is no evidence that DOC staff have discriminated against Claimant due to a disability.

Claimant's concerns have to do with the quality of medical care that he has received. There is no question that he has received some care. This is not a case where care was denied due to the impairment of Claimant. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.

Claimant has complained about the confiscation of his back brace, knee brace, and ace bandages. These were taken from Claimant based upon a physician's determination that they were unnecessary. Claimant has not rebutted this medical opinion. Claimant retains the right to pursue a separate lawsuit if he believes he was the victim of medical malpractice or denied proper medical care in violation of the Eighth Amendment.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 23, 2007.**

SIGNED this 29nd day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master