IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-646
Category II
Claimant: Jerome Howe, #108055
Address of Claimant: Unknown

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER comes before the Special Master on the claim of Jerome Howe (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He has now been released. Mail sent to the two addresses provided by Claimant has been returned. The Special Master does not have an updated address for Claimant.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to file a reply to the response of Defendants, but he has filed no further documents. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on December 12, 2000. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado when he filed his claim. He now has been released from custody.

In his initial claim form, Claimant checked the box for mobility impairment. He stated as follows:

> I've got no feeling from my left knee down. I've lost all use and feeling in my ankle, foot, and toes. I can't run or do any physical activities because I've lost the use of my ankle, feet, toes. I've got to wear a special brace to walk (AFO brace). I put most of my weight on my right knee causing a tear on my ACL. I'm depressed a lot because I can't do anything without fatigue and pain. And I won't be able to inter-act physically with my children because of this.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> DOC has taken 3 days of my earned time because I couldn't find a job. I've come close to losing my privilege and being put in orange with loss of all privileges. I've been offered no rehabilitation since I've been in DOC.
>
> 3 days of earned time have been taken from me. Medical has charged me $ .50 every time I've been see for follow-up appointments. And my mandatory release date has been delayed and moved back too.

Claimant was sent a supplemental form to complete and return. In that form, Claimant stated, in part, as follows:

> In "01" I had my first surgery. I had a herniated disk at L4 & L5. Upon waking up, I couldn't feel my left leg from the knee down. It's been like this since. I can't move my left ankle or any toes. I can't play any sports. The risk is too great. I have to wear a brace. Walking is a challenge for me. I can't run or jog.

Claimant also stated that he is in constant pain and has not been able to find a job.

Defendants' response has attached to it several pages of Claimant's medical records. Defendants argue that Claimant is not disabled, as defined by the Settlement Agreement.

Claimant was granted up to and including January 29, 2007 in which to file a reply to the

response of Defendants. Claimant has not filed a reply nor has he submitted any medical or other records in support of his claim. The last two orders sent to Claimant have been returned as undeliverable.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. The burden is on a claimant to prove each of these four questions.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he has a mobility impairment. Defendants concede that Claimant has a lower mobility impairment, but they argue that it does not rise to the level of a disability.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody. The evidence submitted by both sides reflects that Claimant had a lower extremity mobility impairment on August 27, 2003. Claimant's ability to walk was affected sufficiently to be disabled. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Nothing presented by Defendants reflected that Claimant could not participate in any programs or services due to other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. There is no evidence that DOC staff have discriminated against Claimant due to a disability.

Claimant has concern with the quality of medical care that he has received. There is no question that he has received some care. This is not a case where care was denied due to the impairment of Claimant. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.

Defendants argue that Claimant has not established that he was discriminated against because of his mobility impairment. Defendants are correct. There is no evidence that leads to the conclusion

that any decision or action by DOC was the result of discrimination due to his mobility impairment. The burden is upon Claimant to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. He has not carried that burden.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 30, 2007.**

SIGNED this 31st day of January, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master