IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Montez vs. Owens

Case #92-N-870
Consolidated with: Case *96-N-343
Individual Damage Claim #03-147

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

FEB - 8 2007

Objections to Final Order of Special Master
And
Request for Reconsideration

GREGORY C. LANGHAM
CLERK

COMES NOW, I Jimmy Bulgier (Plaintiff Acting Pro-se) in this above cause matter do hereby OBJECT to the Final Order of the Special Master (Richard C. Davidson) dated May 16, 2006. I, Plaintiff Bulgier further request a Reconsideration hearing to correct the errors made by Judge Davidson.

Plaintiff Bulgier's Request for Reconsideration and Objections to Final Ruling of Special Master (Davidson)

Plaintiff Bulgier intends to show this court that Judge Davidson is bias against the Plaintiff and has made his rulings based on information, which does not exist in the record or presented by either the Defendants or Plaintiff. Plaintiff Bulgier's Objections are based on the following errors, which appear in the court record, His rulings were made arbitrarily on his own assumptions and without regards to the facts and verbal objections during the hearing. Even Judge Davidson's Order listed an error which is noted in footnote #7 on page 2 of his Order. Assuming that the Clerk of the Court or an Assistant to the Judge made the following errors while preparing Judge Davidson's Order, the responsibility for the errors of Judge Davidson's staff lie squarely on Judge Davidson.

## Statement of Plaintiff

Plaintiff Bulgier is, at best, a layman at law. Therefore Plaintiff requests this court to construe his arguments and objections liberally and not hold him to the higher standards as that of an attorney.

**Plaintiff Bulgier (who is not an attorney) had made four written requests to this court for "Appointment of Counsel" to assist Plaintiff Bulgier during the hearing. Each time this court has turned down Plaintiff Bulgier's request.**

Therefore, this court must provide leniency and not hold Plaintiff Bulgier to the standards of an attorney especially when Plaintiff Bulgier is attempting to submit documents (affidavits, grievances, etc.) in to evidence or to have this court consider them. Plaintiff Bulgier is not an attorney and does not know or understand the Rules and Procedures of the Court with the proper presentation of documents in to evidence. During the hearing Plaintiff Bulgier requested Judge Davidson to pay close attention, pay special note, take into consideration, etc. various documents. This was the only means which Plaintiff Bulgier knows of to have to court enter documents in to evidence or enter such documents in tot the Record.

## Witnesses

Special Master Richard M. Borcher's Order of November 28, 2005 stated that Plaintiff Bulgier has the right to have witnesses appear during the hearing. Judge Davidson refused to permit Plaintiff Bulgier to call any of his witnesses with the exception of

1

C.D.O.C. employee Becky Romano. Plaintiff Bulgier Objected and the Defendants Counsel stated that Plaintiff's witnesses would not be called because Plaintiff Bulgier submitted Affidavits / Inmate Declarations from some of these witnesses. Not all of the witnesses who Plaintiff Bulgier had requested to appear before this court (see Plaintiff's list of witnesses) had submitted Affidavits or Inmate Declarations. Three witnesses (Jack Shamaly, Frank Sarak and Dave Burris) were C.D.O.C. employees and did not submit Affidavits to Plaintiff Bulgier. When Plaintiff Bulgier attempted to call these witnesses Defendants Counsel stated those employees were either no longer employed with C.D.O.C. or unavailable. Plaintiff Bulgier objected to the Defendants reasons for not calling his witnesses. Judge Davidson ruled in favor of the Defendant's Counsel.

Plaintiff Bulgier strongly objects to Judge Davidson's ruling in favor of Defendant's Counsel to deny Plaintiff Bulgier's right to call witnesses, which he had specified in his list of witnesses. Judge Davidson's ruling in this matter is clearly bias against the Plaintiff and is contrary to Judge Richard M. Borcher's Order of November 28, 2006 giving Plaintiff Bulgier the right to have witnesses appear on his behalf.

# I

# Errors in the Appendix of Exhibits:

### Refer to items I through VIII below.)

In Judge Davidson's Order he makes note of an error where the court states that one of the exhibits listed in the Exhibits for the Defendants should have also been listed in the Exhibits for the Plaintiff. On page 2, foot note #7 of Judge Davidson's Order it says, "Claimant also introduced Exhibit #8. However, the Exhibit is only marked as Defendant's #8." This is not the only error similar to this one. Many such errors are listed below.

# II

# Affidavits / Inmate Declarations Missing from the Appendix of Exhibits:

Plaintiff Bulgier submitted Affidavits / Inmate Declarations from the following C.D.O.C. inmates:

a) Plaintiff Bulgier's Affidavit / Inmate Declaration submitted in 1994/1995. This Affidavit / Inmate Declaration was submitted prior to or about the time when Judge Nottingham Granted Plaintiff Bulgier's Request to Consolidate his case (94-B-343) in with the Class Action case.

b) Affidavit / Inmate Declaration from inmate Harold Graham (at C.T.C.F. in 1992 – 1997) an affidavit in support of Plaintiff Bulgier's claims against the inmate Law Library and Annette Porter. This Affidavit / Inmate Deceleration was submitted in 1994/1995 prior to or about the time Judge Nottingham Granted Plaintiff Bulgier's Request to Consolidate his case (94-B-343) in with the Class Action case.

c) Affidavit / Inmate declaration from Kenneth Endsley (One of two) submitted in 2005 in support of Plaintiff Bulgier's claims against C.D.O.C. (C.T.C.F.) mental Health Becky Romano and Glynett Smith for refusing reasonable accommodations when plaintiff Bulgier was not able to read lay-in slips. (See Appendix "D".)

d) Affidavit / Inmate Declaration from Kennth Endsley (two of two) submitted in 2005 in support of Plaintiff Bulgier's claim against Becky Romano and Glynett Smith for employment discrimination at the Tab Plant at C.T.C.F. (See Exhibit "D".)

e) Affidavit / Inmate Declaration from inmate Benny Padilla, (one of two) submitted in 2005 in support of Plaintiff Bulgier's claim against Safety issues at C.T.C.F. (See Exhibit B".)

2

f)  Affidavit / Inmate Declaration from Joseph Crispin (See Exhibit "C".) (two of two) submitted in 2005 in support of Plaintiff Bulgier's claims of inadequate persons to read C.D.O.C. documents (such as Lay-In slips, appointment cancellation notices, rule changes, etc) and no staff willing to read said documents to blind inmates. Note: Inmate Benny Padilla is totally blind and is not able to read Braille of any type. In 1995/96/97 Plaintiff Bulgier was just starting to learn Braille.

g)  Affidavit / Inmate Declaration from inmate Nicklaus Zemora (1 of 2) submitted in 2005 in support of Plaintiff Bulgier's claim that staff would not read C.D.O.C. communications to blind inmates (Bulgier or Padilla) and he (Nicklaus Zemora) would frequently read mail and documents to Padilla and Bulgier. (See EXHIBIT "f".)

h)  Affidavit / Inmate Declairation from Nicklaus Zemora (2 of 2) Submitted in 2005 in support of Plaintiff Bulgier's claim concerning **No Qualified Reader in Education classes. (See Exhibit "G".)**

# III

# Missing Documents not entered into the Appendix of Exhibits:

Plaintiff had his special reader person (Randy Goodrum) read several documents during the hearing. Plaintiff Bulgier requested these documents be entered into the record and be considered by Judge Davidson. Most of the documents, which Plaintiff Bulgier had read in the hearing, were not entered into the record and do not appear in the Appendix of Exhibits as previously requested by Plaintiff Bulgier. The documents, Affidavits, Medical Reports, Mental Health Reports etc. which should have been listed in the Plaintiff's lists of Exhibits include:

A.  Affidavit and medical / Mental Health Report from C.D.O.C. employee Jack Shamaly. Jack Shamaly stated in his report the fact that Plaintiff Bulgier being attacked and harassed at the Freemont Facility (F.C.F.) were in fact true. Jack Shamaly in his report for example stated that inmates were trying to set Plaintiff Bulgier's hair on fire. That same day of the assault Jack Shamaly called Plaintiff Bugleir into his office from Plaintiff Bjulgier's attendance at work in the Dinning Hall. Jack Shamaly saw Plaintiff Bulgier's hairnet and requested that Plaintiff Bugleir turn the hairnet over to him Plaintiff Bulgier complained and Jack Shamaly took the hairnet as evidence to the facility Captain (Reed) and showed the Captain the burn in Plaintiff Bulgier's hairnet. This is one of the many facts, which Jack Shamaly investigated, concluded as true and submitted in his report. This report was read to Judge Davidson. Judge Davidson never considered this report, never listed the report in the Appendix of Exhibits, nor honored Plaintiff Bulgier's request to review them, considered them or entered them into the record. This further demonstrates Judge Davidson's bias against Plaintiff Bulgier. (See Exhibit "A".)

B. Plaintiff Bulgier received a large package of documents from the Defendant's Counsel (as per Plaintiff many previous requests) on the day of the hearing (January 24, 2006 30 to 40 minutes prior to the hearing) and was not allowed sufficient time to review the package of documents. During the hearing, Plaintiff Bulgier learned that none of the "Inmate Communications / Request forms" were provided to Plaintiff Bulgier as he had requested many times previously. All of these Inmate Communication / Request forms (commonly refereed to as "I-60s" by inmates and staff) clearly document Plaintiff documented his requests and complaints with C.D.O.C. staff. This court will note that on the entire Step 1 Grievance forms, the forms ask several questions (*What have you done to try to resave the issue? Who did you speak to? When did you speak to them? Etc.*) Nearly all of Plaintiff Bulgier's answers were documented in writing (via "I-60s" Inmate Communications / Request forms, verbally or each respective staff, etc. Plaintiff Bulgier would not have been permitted to proceed with either a Step 1 or 2 Grievance without first documenting his request or complaint in writing on an Inmate Communication / Request form or verbally in person to that staff member.

Not all of the Inmate Step 1 or Step 2 Grievance forms which were read or spoken about during the hearing were entered into the record, considered by Judge Davidson or listed in the Appendix of Exhibits.

# IV

## Grievances not in the Appendix of Exhibits:

The court record and Appendix of Exhibits should indicate ALL of the following grievances:

| Date: | Step Number: | Grievance Number: | Refer to Appendix or Exhibits: |
|---|---|---|---|
| 01-03-96 | #1 | 95/96-139 | *(hand written)* Exhibit "H" |
| 01-10-96 | #2 | 95/96-139(A) *(hand written)* | Exhibit "H" |
| 02-02-96 | #2 | 95/96-139 (A) *(type written)* | Exhibit "H" |
| 03-24-95 | #1 | 94/95-266 | Exhibit "J" |
| √05-22-95 | #1 | 95-092 | EXHIBIT "h" |
| √12-07-93 | #1 | 93-225 | Appendix "C" Previously submitted prior to hearing. |
| √09-12-95 | #1 | 95-164 | Appendix "C" Previously submitted prior to hearing. |
| √03-20-96 | #1 | 95/96-249 | Exhibit "I" |
| √07-26-93 | #1 | 93-145 | Appendix "C" Previously submitted prior to hearing. |

*Checked (√) items above are grievances which do not appear in the Appendix of Exhibits or in the court record and need to be added thereto.*

# V

## Medical Documents not in the Appendix of Exhibits:

During the Hearing of January 24, 2006 Plaintiff Bulgier spoke about an assault, which occurred the first day, which he was at the Freemont (F.C.F.) facility. Plaintiff Bulgier reported this assault to the Regional Psychologists (Jack Shamaly) and this assault was clearly documented. As a result of this assault Plaintiff Bulgier had to have surgery to remove a foreign object from in side of his bladder. The Colorado State Hospital supposable performed surgery to remove the foreign object. **Surgery was not performed** but rather an exploratory examination with a camera was done. State Hospital doctors claimed to Plaintiff Bulgier that the foreign object had in deed been removed. **This claim by the Colorado State Hospital doctors was not true.** Plaintiff Bulgier requested that these Medical documents from the Colorado State Hospital in Pueblo, Colorado be entered into evidence and into the record. These said medical documents DO NOT appear in the Appendix of Exhibits as requested by Plaintiff Bulgier.

# VI

## Colorado State Hospital Medical Documents not in the Appendix of Exhibits:

After Plaintiff Bulgier was discharged from C.D.O.C. on August 17th, 1997 he sought the Medical assistance of Dr. Avi Deshmoch in Stevenville, Texas. The fact that Plaintiff Bulgier had to have surgery to remove the foreign object via Dr. Deshmoch clearly proves that the Colorado State Hospital in Pueblo, Colorado **DID NOT PERFORM THE SURGERY AS THEY HAD CLAIMED** in 1996.

Plaintiff Bulgier is not trying to use this matter as a **Medical claim or personal injury claim against the Colorado State Hospital** but only intends to demonstrate the amount of **"pain and suffering"** which he had to endure for years while incarcerated at the Territorial (C.T.C.F.) Facility. Plaintiff Bulgier is only claiming **"lack of adequate SAFETY"** while he was housed at the Territorial (C.T.C.F.) and Freemont (F.C.F.) facilities.

These Medical documents from Dr. Avi Deshmoch's Office do not appear in the Appendix of Exhibits. Plaintiff Bulgier asked Judge Davidson to enter these medical documents into the record and as evidence. It once again appears that Judge Davidson failed to add these medical documents (which consists of approximately 42 pages) to the Appendix of Exhibits and failed to consider the documents as Plaintiff had requested.

# VII

## Memorandums Missing from Appendix of Exhibits:

From Jack Shamaly dated Sept. 20, 1994. (See Exhibit "A".)

# VIII

## Time Computation Reports Missing from the Appendix of Exhibits:

2.
DateDate:      Facility: Time Awarded or lost:    (See Appendix "G".)
08-04-1997 C.T.C.F. All awarded

## Objections to Final Order of Special Master

Plaintiff Bulgier objects to the Final Ruling of the Special Master (Richard C. Davidson's) Order of May 16, 2006. Plaintiff Bulgier asserts that many of Judge Davidson's rulings are arbitrary and were not based on facts contained in the Court Record or Transcripts. Judge Davidson made several rulings out of pure steritipical opinions of a blind individual (Plaintiff Bulgier) and made assumptions based on his assumptions, which are not supported by the facts in the case.

Plaintiff Bulgier feels that Judge Davidson's Final Ruling is unfair, arbitrary, not based on facts, based on assumptions, based on stereotyping of the blind plaintiff and Plaintiff Bulgier feels that a new hearing should be granted after the Court reviews the facts in this case and Plaintiff Bulgier's objections.

## Errors in Judge Davidson's Findings of Fact:

In item 8 of the Final Order "Findings of Fact"; Judge Davidson's order states that "Plaintiff primarily reads Braille." Plaintiff would like to clarify facts for the record. **In 1993 to 1997 (while plaintiff was in C.D.O.C.) Plaintiff Bulgier DID NOT KNOW Braille or could not read Braille sufficiently** to use it as a means of communications. (See Appendix "B".)  C.D.O.C. staff **DOES NOT KNOW BRAILLE and it would have been totally impossible for Plaintiff Bulgier and the Defendants (C.D.O.C.) staff to communicate in Braille.** Judge Davidson incorrectly assumed that both parties knew Braille and is a typical stereotype that is commonly applied to blind people ("that all blind people automatically know Braille"). Today Plaintiff Bulgier is still in the process of learning Braille.

In item 9 of Judge Davidson's Findings of Fact, he states that claimant testified that he did not ask staff to present documents to him in Braille. However, as Plaintiff stated above and herein, at the time he was in CDOC custody he did not know how to read Braille. Therefore, it would have been futile to request that documents be presented in Braille. (See Appendix "B".)

In item 10 Judge Davidson said, "Plaintiff nearly fell into a 6 foot irrigation channel". This is not true. Plaintiff said he was nearly shoved into the irrigation ditch by other inmates and there was not a hand railing around the **END OF THE IRRIGATION DITCH** where it enters under the ground. **This is a SAFETY ISSUE** *which plaintiff raised under Safety issues (See ,Appendix "A", II-3.5200 "A.D.A. Technical Assistance Manual" published by the U.S. Dept. of Justice.)*
Not having guard railings around the entire irrigation ditch is a clear violation of this above SAFETY REQUIREMENT under Title II. Plaintiff's attorney (Paula Griesen documented these safety hazards among others during the Discovery phase of the case and documented them in the complaint. Safety was a large part of the Settlement Agreement, which the Defendants agreed to.

In item 11 of Judge Davidson's ruling he claims there is no evidence that an attack had occurred against the Plaintiff Bulgier while at the Freemont Correctional Facility (F.C.F.). The Documents from Psychologist Jack Shamaly clearly document that Plaintiff Bulgier was indeed attacked not once but several times while at F.C.F. (See Exhibit "A".). JudgeDavidson stated that "anal penetration" had occurred during one said attack. Judge Davidson went outside of the record and added to the testimony when there was NO MENTION OF "ANAL PENETRATION" WHAT SO EVER BY Plaintiff or the Defendant's Counsel. It is clear that Judge Davidson is adding statements, which are not in the facts of the case. This is a clear violation of Court Rules.

In item 12 of Judge Davidson's ruling plaintiff clearly stated to Judge Davidson that he had to go to other staff to get them to allow Plaintiff Bulgier to obtain medical attention after he was burned by the iron. Judge Davidson failed to put these facts in the ruling. This also tends to show unfair bias on the part of Judge Davidson.

In item 13 of Judge Davidson's ruling judge Davidson stated that Plaintiff Bulgier was terminated from the Tab Plant "after plaintiff had filed an A.D.A. grievance". Judge Davidson failed to show that the termination was due to Retaliation "after Plaintiff filed an A.D.A. grievance, a complaint with the U.S. Dept. of Justice and this Court." Judge Davidson is once again not placing all the facts in his ruling of Findings of Fact.

In item 14 of Judge Davidson's ruling Judge Davidson failed to show that Plaintiff was placed in the "Family Life Skills" class and in the "Drug and Alcohol" class because the defendants refused to provide Plaintiff Bulgier with employment while at the C.T.C.F. Facility. When Plaintiff was housed at C.T.C.F. from May 1993 to May 1994 and again from November 1994 to 1996 plaintiff Bulgier was denied his right to employment. *Plaintiff was* not provided a job until 6-15-95 (at theTab Operations Plant) (See Appendix "D" which give a calendar list of program assignments.) and again on 12-27-95 (at the Kitchen Dinning room). *The* Defendants kept placing Bulgier in various classes (in violation of State Law). Attorney General Brook Mire stated in her Closing Arguments that Plaintiff Bulgier was not eligible for many of these classes. From 1993 until 6-15-95 Plaintiff was denied his Right to Participate in the Job Programs. If non disabled inmates are afforded the right to have a job and the resulting pay increase,

handicapped inmates should be afforded the same Rights to Participate in these same Job Programs and the benefits thereof. C.D.O.C.'s substituting classes in place of employment does not afford Plaintiff in this case the Right to Participate in a job.

| Employment & Educational History: | | |
|---|---|---|
| Start Date: | End Date: | Employment or Education Class: |
| | 08-27-93 | Personal Life Skills and Personal Relations. |
| | 08-27-93 | Family Life Skills Class |
| | 04-08-94 | Drug & Alcohol Education. |
| | 04-08-94 | Family Life Skills Class |
| Transfer to the Freemont Facility. | | |
| June 94 | Nov. 94 | F.C.F. Kitchen Dinning room. |
| Transfer back to Territorial Facility. | | |
| 06-15-95 | 10-12-95 | Tab Plant Operations.C.T.C.F. Kitchen |
| 12-27-95 | 10-23-96 | C.T.C.F. Kitchen Dinning room. |

(See Appendix "D", "E" and "F".)

Plaintiff Bulgier asserts that the employment discrimination issue applies to C.T.C.F. and **not to F.C.F.** Judge Davidson denied of this issue based on the fact that plaintiff Bulgier was employed at a different Facility (F.C.F.). Plaintiff Bulgier's Employment issues were against C.T.C.F. only and not against F.C.F. To further demonstrate the Defendant's wanton indifference to the law; the Defendant's and their Counsel stated at the January hearing that "It is a violation of State Law to place an inmate in these classes when that inmate has a High School Diploma and/or a College Degree." Plaintiff Bulgier has both a High School Diploma and a College Degree. But the Defendants have no regard to comply with either State laws or even the A.D.A. The time line that plaintiff Bulgier was housed at Territorial Facility and was illegally placed in education classes and denied his rights to employment clearly demonstrates the defendant's unwillingness to comply with the law.

**Plaintiff Bulgier in the January hearing testified to the fact that he lost Good Time and Earn Time. (See Appendix "G".) This fact is true. Plaintiff Bulgier requested that Judge Davidson review Plaintiff Bulgier Time Computation Sheet, which was read to the Judge during the hearing. The Time Computation Sheet was not entered into the record, as evidence and does not appear in the Appendix of Exhibits as requested by the Plaintiff.**

Plaintiff was terminated from Becky Romano's Mental Health group. This is true. (See Appendix "A" ("Auxiliary Aids and Services" and 23 C.F.R. 35.160)) However, Plaintiff had perfect attendance until an inmate who read his appointment slip lied to him and said, "The group has been canceled." Plaintiff Bulgier is legally blind (See item 17 of Judge Davidson's order) and is unable to read the written appointment slips. The A.D.A. requires the Public Entity (not other inmates) to make reasonable accommodations such as providing someone to read such written appointment slips. All of the Academic Achievement Reports (See Appendix "E" and "F".) and all of the Time Computation Reports demonstrate that Plaintiff Bulgier had an excellent attendance history without any disciplinary write-ups. These documents clearly demonstrate that Plaintiff Bulgier's behavior and character was well behaved and was shown to be a model prisoner. During the entire 4 years and 7 months 19 days of Plaintiff Bulgier's incarceration, Plaintiff Bulgier received only one write-up (a very minor write-up) which took place the last month of his incarceration. This demonstrates that the claim by Becky Romano's claims that Plaintiff Bulgier was always causing trouble and hitting other inmates with his cane carries little or no weight.(See Appendix "A" (28 C.F.R. 36 "Use of a white cane".) Plaintiff Bulgier asserts that Becky Romano's actions were a direct result of his filing suit and other legal complaints against her.

Plaintiff Bulgier testified that he was discriminated against by the Inmate Law Librarian (Annette Porter) and was denied reader Assistance in the Inmate Law Library. This fact is true. Plaintiff Bulgier's claims are supported by the Affidavit/Inmate Declaration of Plaintiff Bulgier and Inmate Harold Graham filed with this Court very early on in the case when this case was assigned to Judge Borchers in 1994. Both Plaintiff Bulgier and inmate Harold Graham filed their Affidavits/Inmate Decelerations approximately about

the time the "Request for Show Cause Order" was submitted by Plaintiff Bulgier. (See case #94-B-343 (consolidated with this Class Action)). Plaintiff Bulgier's and Inmates Harold Graham's Affidavit/Inmate Declaration was not considered by Judge Davidson, was not entered into evidence (as per Plaintiff's request) nor entered into the Appendix of Exhibits (as per Plaintiff Bulgier's Request

Plaintiff Bulgier is well within his rights to be provided with reader assistance under A.D.A. statutes 28 C.F.R. 35.160 "Communications subpart E." A: A Public Entity shall take appropriate steps to insure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others. B: 1. Public Entity shall furnish appropriate Auxiliary Aids and Services where necessary to afford an individual with a Disability an equal opportunity to participate in an enjoy the benefits of, a service, program, or activity conducted by a Public Entity. B: 2: In determining what type of Auxiliary Aids and Services necessary, a Public Entity shall give PRIMARY CONSIDERATION to the request of the individual with Disabilities.

Examples for Individuals with Visual Impairments include: Qualified Readers, taped text, audio recordings, Brailled Materials, Large print materials, and assistance in locating items."

(See Appendix "A" and the A.D.A. Technical Assistance Manual II-7000.)

In item 15 of Judge Davidson's ruling the facts are clear. Plaintiff was moved to F.C.F. in May 1994. Other inmates attacked plaintiff. Plaintiff did in fact report the attack (several months later) to Psychologist Jack Shamaly. (See Exhibit "A" Memorandum dated Sept. 19, 1994.) This attack was further reported to Ed Caley (case manager) and the building Captain (Reed).

Freemont Correctional Facility (F.C.F.) was deemed to be unsafe for handicapped inmates and did not meet the criteria to qualify as a handicapped accessible unit. (See page 4 of Proposed Settlement Agreement; Roman numeral VI "Designated Facilities".) In Plaintiff Bulgier's particular case, inmates were able to reach through the beanshoot door at the bottom of the cell door and push a button to open the electronic latch and gain access to the cell. The Control Picket Officers view of the cell was blocked due to a chest high wall partition blocking the clear view of the cell door. This was how Plaintiff Bulgier's attack was able to occur undetected by building staff. This is one of many reasons why F.C.F. was deemed to be unsafe and unqualified as a Handicapped Accessible Facility. These attacks happened as a direct result of my disability and the CDOC's inability to prevent such attacks at the Freemont Facility. This fact is supported by Psychologist Jack Shamaly's Exhibit "A" Memorandum.

In item 16 of Judge Davidson's Ruling Becky Romano claimed that Plaintiff was dismissed from the Tab Plant for reasons of horseplay, tripping people, hitting people, pulling their chairs out from under them, and etc. If Plaintiff had been guilty of such dangerous, and disruptive activities. He most certainly would have been given major write-ups. When Becky Romano claims that Plaintiff Bulgier was trying to trip other inmates, this too is untrue. Plaintiff Bulgier would walk slowly for his own safety. Other inmates, who were impatient and tried to go around Plaintiff Bulgier, would themselves trip over his white cane in their rush to get to the chow or other places. A blind person must use his white cane by tapping it left and right, in a 60-degree arch. (See Appendix "A" the Architectural Guidelines from the A.D.A. for the use of white canes for blind persons.) These Architectural Guidelines clearly document that a blind person must wave his cane left and right in an arch in order to detect objects in front of them. It is at this time when other inmates trip over Plaintiff Bulgier's cane. Becky Romano has made many attempts to claim this motion for mobility was Plaintiff Bulgier hitting others, with his cane. Once this is understood, one can see that Becky Romano's statements are not only misleading but made by someone unfamiliar with the proper use of white canes by blind persons. This further demonstrates that Becky Romano's testimony was false and attempted to discredit Plaintiff Bulgier (out of Retaliation) for filing his legal complaints against her. Contrary to Mrs. Romano's testimony, Dennis Dinsmore testified that Plaintiff was a **good worker** with **no major infractions**.

In item 18 of Judge Davidson's ruling Elizabeth Manzanares testified that she was unsure if the Education classes were voluntary or mandatory. Because Plaintiff Bulgier had already earned a High School Diploma and College Degree. Their testimony stated that it is a violation of State Law to place an inmate in these educational classes when they have a High School Diploma or College Degree.

8

C.T.C.F. staff kept placing Plaintiff Bulgier in these classes (See Appendix "D".) rather than providing him with a job. Plaintiff Bulgier's employment at F.C.F. does not apply to Plaintiff Bulgier's Employment complaint against C.T.C.F.

## Judge Davidson's "Conclusions of Law"

In item #4 Judge Davidson states that Plaintiff did not prove his case based on the following:

(a) Whether claimant was discriminated against by C.D.O.C. and

(b) Plaintiff failed to provide documentation to prove his claims.

1. Plaintiff Bulgier was discriminated by C.D.O.C. staff (mainly while at the Territorial Facility (C.T.C.F.)) and nearly all other Plaintiffs were discriminated against as well. In Judge Richard M. Borchers' (Special Master) ruling said "Order of Special Master – setting of Hearing Date" dated November 28th, 2005 "… however a claimant **need not prove intentional discrimination, in** an issue which was resolved by execution of the Remedial Plan…" This infers I (Plaintiff) **need not prove that discrimination was intentional** and is accepted that **discrimination had taken place.**

2. Judge Davidson ,also said I must demonstrate that I had requested accommodation for my disability. I have clearly documented this fact in writing and via verbal request to CDOC staff. The "Inmate Communication forms" were the first written request and the Defendants have not provided Plaintiff Bulgier with copies of these "Inmate Communication forms" to this date. Plaintiff has also demonstrated his written request for accommodation in the form of several Grievance forms. (See Exhibits "F".) CDOC staff responded to those grievance forms. These grievance forms clearly state *"What did you do to resolve this problem and who did you speak to and when?"* My written answer clearly states that I either verbally made the accommodation requests to the various CDOC staff or that I had submitted an "Inmate Communication Request form" (commonly refereed to as an "I-60". This clearly proves that my requests for accommodations were made, regardless if CDOC met that accommodation, or even failed to properly address the issues requested.

3. In Judge Davidson's Order he states in item #4, "In order to establish discrimination in the context of the Remedial Plan, Claimant **must demonstrate** that he requested accommodations for his disability and that reasonable accommodation were denied."

    Plaintiff asserts that **he in fact DID make several requests for accommodations, not only through written Requests (called "Inmate Communication Request" and referred to as I-60s,** as well as in the form of many grievances. These grievances do not appear in the record and Plaintiff clearly requested Judge Davidson to enter **all of his grievances** in to the record. (See also Appendix "C".("Plaintiff's Request for Copies" and "Plaintiff's Second Written Request for this Court to Consider and Rule on Plaintiff's Request for 120 Day Extension of Time and Plaintiff's Request for fOrder and Subpoena of Documents in Discovery")) These grievances are as follows:

| Date: | Step Number: | Grievance Number: | Description: |
|---|---|---|---|
| 01-03-96 | #1 | 9596-139 (hand written) | Same as type written grievance. |
| 01-10-96 | #2 | Same as the type written grievance. | |
| 02-02-96 | #2 | 95/96-139 (A) (type written) | Against Sgt. Holden (Housing Officer) for unfair removal from Single Cell Status. Response states; "As we discussed, your grievance fails to mention your release from the Tab Plant." Grievance denied. Staff's failure to update their records to show that I was released from the Tab Plant. |
| √ 03-24-95 | #1 | 94/95-266 | Against Annett Porter (Law Library) Requested Qualified Reader. Request Denied; "Reader of |

9

| | | | | |
|---|---|---|---|---|
| √ | 05-22-95 | #1 | 95-092 | choice not required." Safety issues following assault against Plaintiff at Freemont. Documented assault with Jack Shamaly (Mental Health Regional director). Harm demonstrates the amount of pain and suffering, the length of pain and suffering and Medical's refusal to address the issue of pain. Colorado state Hospital claimed they performed surgery which is false. Surgery was performed by Dr. Avi Deshmukh in Stevenville, Texas on December 15th, 1998 after Plaintiff was discharged. |
| √ | v12-07-93 | #1 | 93-225 | Staff refused to provide a reader for the blind in the cell house. No reader in Education. Grievance denied. Harm is loss of pay; Education pays less than employment jobs. |
| √ | 09-12-95 | #1 | 95-164 | Becky Romano & Glynett Smith kicked Plaintiff out of Mental Health Group after other inmate lied about appointment slip. Mental Health failed to provide Reasonable Accommodation for Qualified Reader for the blind with appointment slips. Grievance denied Lost Good Time. |
| √ | 03-20-96 | #1 | 95/96-249 | Unsafe housing. Grievance granted after an unnecessary long period of time. |
| √ | 07-26-93 | #1 | 93-145 | Safety issues. Unsafe housing. Sharp protruding objects, hazards in the walk way, etc |

Checked (√) items above are grievances which do not appear in the Appendix of Exhibits or in the court record and need to be added thereto;

These above grievances clearly document that Plaintiff did in fact make his reasonable accommodation request not only in writing, but also as the grievances, additionally some were also made verbally.

Even if the grievance does not state that the accommodation was denied, the net fact was that the staff either did not address the issue, gave no answer, or avoided the issue by giving answers that did not pertain to the accommodation requested and denotes that the accommodation was not granted or addressed properly. D.O.C. staff kept avoiding the reasonable accommodation issue at hand by their failure to meet the request coherently or find an alternative accommodation.

For example: Annett Porter (Law Librarian) stated that a confidential reader is not required. When in fact the A.D.A. Technical Assistance Manual (Published by the U.S. Dept. of Justice) gives an illustration in States Courts where **if the disabled individual is not comfortable with the reader person provided by the court, and request another reader, that court must meet that accommodation.** (See Appendix "A" Primary Consideration, *A.D.A. Technical Assistance Manual*, page 39). Also, the A.D.A. in 28 C.F.R. 35.104 states that the provisions of the A.D.A. prevails over any state law, state policy or rules. **(See page 40 of the A.D.A. Technical Assistance Manual.)** Annett Porter's statement was "we are not required to provide this kind of service..." The A.D.A. **does prevail** over C.D.O.C.'s policy. When Annette Porter refused to provide Plaintiff Bulgier with a Qualified Reader, who can maintain confidentiality, she denied Plaintiff Bulgier's request, even when he had an individual who was willing to assist him. Primary Consideration **must be given to the disabled person when requested**.

Judge Davidson states in his order that Plaintiff Bulgier did not demonstrate harm. Also Judge Davidson states that Plaintiff did not show that he had been discriminated against as a result of his being attacked at Freemont. The Americans with Disabilities Act Title 2 Technical Assistance Manual clearly states that a Public Entity (such as C.D.O.C.) may not intentionally discriminate against a person with a disability. However, a Public Entity's practices and policies themselves can lead to discrimination. The A.D.A.'s Architectural Guidelines clearly state that a Public Entity **must provide for the safety of handicapped persons.** (See Appendix "A" **SAFETY** in *Technical Assistance Manual, II-3.5200*). C.D.O.C.'s failure to provide reasonable safety for Plaintiff Bulgier clearly led

10

to his attack and injuries. Harm did exist as a result of the injuries upon Plaintiff Bulgier. Medical at C.D.O.C. claimed they performed surgery to remove the foreign object. However, Dr. Deshmukh's medical records (which Plaintiff Bulgier provided to this court) clearly shows that the surgery for remove the foreign object did not take place under the care of C.D.O.C., as they claimed. Harm does exist in the many years of pain and suffering from the time of the attack in May 1994 until the removal of the foreign object in December 1998. Discrimination comes from the C.D.O.C. intentionally and knowingly transferring Plaintiff Bulgier to a facility which was too violent and unsafe for the handicapped. C.D.O.C. should have known that persons with handicaps (such as blindness) would be at great risk within such a facility. C.D.O.C. staff member Jack Shamaly obviously knew that Plaintiff Bulgier was at risk at the Freemont facility. **(See Exhibit "A" Shamaly's Memorandum).**

Judge Davidson states that Plaintiff Bulgier requested a qualified reader person and was denied. Judge Davidson's statement clearly demonstrates that discrimination exists. However, Judge Davidson ruled against Plaintiff Bulgier in nearly every claim. When Judge Davidson stated that C.D.O.C. failed to provide a reader person for Plaintiff Bulgier and then ruled against Plaintiff Bulgier by saying he failed to prove his claims clearly shows that Judge Davidson is bias against Plaintiff Bulgier and his entire rulings are unfair.

Judge Davidson further demonstrates his bias against Plaintiff Bulgier when he said Plaintiff had problems with Law Library staff (Defendant Annett Porter) who could have provided him with assistance. However, once again, Judge Davidson failed to rule this issue in favor of Plaintiff Bulgier. Judge Davidson is clearly in favor of the State.

In item 5 of Judge Davidson's Final Ruling he states that Plaintiff Bulgier's medical issues are not an A.D.A. issue. Plaintiff Bulgier was merely attempting to demonstrate the HARM and show how the attack resulted in Bodily HARM. (See Appendix "A" **Definitions; HARM, Bodily HARM.)** It is true that Medical issues are not directly an A.D.A. issue. However, Plaintiff Bulgier clearly stated through out the entire hearing that the medical issues were only to demonstrate **the harm with regards to the amount of Pain and suffering as a result of Plaintiff Bulgier's being attacked while at Freemont.** Plaintiff Bulgier did file a grievance (*95-092) (See Exhibit "J".) where he clearly stated that he was in considerable pain. The response on the grievance said that Plaintiff was scheduled to see a specialist. Plaintiff Bulgier **never did get to see a specialist.** Plaintiff Bulgier's pain and suffering went on for **years** (from May 1994 until surgery in December 1998) following his discharge from prison. C.D.O.C.'s policies created an obvious discrimination by transferring Plaintiff Bulgier to a clearly unsafe facility for blind handicapped persons, which reasonable persons would have known and should have known to be unsafe for the blind. All the Plaintiffs claims of harm demonstrate the result of such discrimination.

In Judge Davidson's Conclusions of Law, #5, he claims that Plaintiff Bulgier's complaints relate to failure of the C.D.O.C. to provide reasonable medical care and treatment for his disabilities or to an alleged deliberative indifference of the C.D.O.C. to claimant's medical needs. **Plaintiff Bulgier adamantly asserts that his arguments and evidence were presented to demonstrate the amount of harm that he suffered as a result of the C.D.O.C.'s discrimination for his handicap and Plaintiff Bulgier made it very clear at the hearing that this was his purpose and that he was not making separate claims of Medical Malpractice and Negligence. Therefore, This Court's Application for Individual Damage Claim clearly asked Plaintiff Bulgier to list the HARM, which occurred in the case. Judge Davidson's conclusion is incorrect.**

In item #6 of Judge Davidson's Ruling, he states that plaintiff Bulgier failed to prove his case and the analysis need not go any further. Judge Davidson clearly contradicts himself when in the previous item (#4) where he said Plaintiff requested a reader and was denied. Also where he was denied reader assistance in the Law Liabary and the Law Librarian (Defendant Annett Porter) could have provided this assistance. Just these two items alone clearly demonstrates Judge Davidson's bias against the Plaintiff and contradicted his own Findings of Fact. The fact that Plaintiff Bulgier requested various Defendant witnesses to be present and Judge over ruled Plaintiff' objections one after another during the hearing shows bias. Judge Borchers Order clearly stated that Plaintiff Bulgier **has the right to question and cross-examine all Defendants.** By Judge Davidson failing to comply with this previous Order this denied Plaintiff a fair and unbiased hearing. Attorney General Brook Mire clearly objected to Plaintiff Bulgier's requests and objections to

11

have Defendant witnesses present at the hearing. Attorney General Brook Mire stated at the hearing "that we are only obliged to have current C.D.O.C. employees present at the hearing. Current employees of C.D.O.C. are not party to this suit and cannot testify as to events, which took place back in 1993 to 1997. Plaintiff asserts that he only requested those employees who were employed at the time of the discrimination violations. Attorney General Brook Mire also said that they could not locate specific employees (i.e. Jerry Kimbrel and Bill Reed, etc.). This was a convenient excuse to not have these employees testify at the hearing and put Plaintiff Bulgier's entire hearing in favor of the state. Plaintiff Bulgier objected to these issues as well and Judge Davidson once again ruled in favor of the state.

Plaintiff Bulgier clearly asked the court in Writing and again at the hearing to enter in to the record as evidence many documents such as affidavits and grievances. One of the Affidavits was entered in to the record. Attorney General Brook Mire objected to having any of Plaintiff Bulgier's inmate witnesses appear stating that the affidavits are redundant. However, Judge Davidson compounded the problem by overruling Plaintiff Bulgier's objections in this matter and tipped the scales even further in favor of the state by failing to enter those affidavits in to the record as evidence.

Judge Davidson stated that Plaintiff Bulgier failed to prove his case. When Judge Davidson's court failed to enter any of the grievances in to the record as evidence after Plaintiff requested them in writing, (See Appendix "C".) Judge Davidson tipped the scales even more in favor of the State. These affidavits and grievances clearly document Plaintiff's claims. Each grievance asks a series of questions; *what did you do to try and resolve this issue? Who did you speak to? When?* Plaintiff's answers in these respective questions on each grievance clearly states that Plaintiff either spoke to the staff in person or submitted an "I-60" (Inmate Communication Request form).

## Conclusion

Judge Davidson stated that in order for claimant to establish discrimination in the context of the Remedial Plan, Claimant must demonstrate that he had requested accommodations for his disability and that reasonable accommodation was denied. Judge Davidson then claimed that Claimant offered no evidence of discrimination. **(See Judge Davidson's Order, page 6, #4)** Judge Davidson claimed that Claimant did not ask for documents to be provided in Braille. On this point, Claimant at the time of his incarceration in the C.D.O.C. was not knowledgeable in Braille and had just enrolled in a correspondence course for learning Braille with the Hadley School for the Blind. (See Appendix "B".) Secondly, Claimant was not required to request Braille but instead requested qualified readers which was denied by the Law Library staff, cell house staff and Mental Health staff. Judge Davidson acknowledged the fact that Claimant did request reader assistance, which was denied. **(See Judge Davidson's Order, page 6, #4.)** However, Judge Davidson then stated that Claimant had problems with the staff in the Law Library. Here it appears that Judge Davidson bought into the Defendant's arguments concerning Claimant's conduct. The Defendants vigorously argued that Claimant was a troublemaker and had conduct problems and this was apparently their reasoning for any denial of reasonable accommodation. However, a person's attitude or conduct does not justify denial of reasonable accommodation unless directly related to that reasonable accommodation request. If this were permissible, then any Public Entity could deny reasonable accommodations by simply claiming that the requester's attitude did not satisfy them. The C.D.O.C.'s staff apparently had mistaken claimant's request for Qualified Reader of his choice as having an atitude problem. According to the A.D.A. Technical Assistance Manual, , page 39 (*large print version*), Claimant has the right to Primary Consideration. (See Appendix "A".) Claimant requested Primary Consideration because he was incarcerated in a prison where discretion is vital when allowing other inmates to view other inmate's files and documents. Therefore, Claimant

12

had to find another inmate that he could trust to read his sensitive documents and he was denied this Primary Consideration by the C.D.O.C. staff. Claimant also provided evidence at the Hearing that he was not a troublemaker and did not have any attitude problems as the Defendants claimed. (See Appendix "F".) The fact remains, and Judge Davidson's confirmed, that the Record shows that the Claimant did seek a Qualified Reader and that request was denied by the C.D.O.C. staff.

In Judge Davidson's Conclusions of Law he stated that, "While it may be true that Claimant was attacked, he did not prove that he was discriminated against because of the attack". Claimant was not required to prove that he was discriminated against **because of the attack** when he proved that discrimination occurred **prior to the attack, which resulted in the attack.** The C.D.O.C.'s policies allowed Claimant to be transferred and placed in a situation, which was not suited for persons with a disability such as blindness. Evidence of this is shown in the Remedial Plan because the Freemont Facility in which Claimant was transferred to and was attacked did not qualify as a facility designated for the handicapped because of the violence and lack of accommodations for the handicapped. As evidenced in Jack Shamaly's Memorandum (See Exhibit "A"), he knew as the Administration should have known that Claimant's Safety was in jeopardy on the Freemont Facility. Therefore, Claimant's claim was that C.D.O.C. staff on the C.T.C.F. facility discriminated against Claimant for filing grievances and other actions for violations of the A.D.A. by transferring Claimant to an unsafe facility for the handicapped and as a result of the transfer to the Freemont Facility, Claimant was attacked and suffered great harm as a result of the attack. Further Judge Davidson states, "The Special Master remains unclear how Claimant could have been protected from the attack". The answer to this question is clear, Claimant **should not have been** transferred to the Freemont Facility because it posed a great risk to Claimant's safety and this transfer occurred simply because Claimant asserted his rights under the A.D.A.

In #5 of Judge Davidson's Conclusions of Law he states that it should be noted that many of Claimant's complaints relate to an alleged failure of the C.D.O.C. to provide reasonable medical care, this is simply not the case. Claimant simply was demonstrating the harm in his complaints. Judge Davidson's mistook Claimant's assertions concerning medical as making separate claims when Claimant was simply showing what harm he suffered.

It is apparent that Judge Davidson was unable to consider all of Claimant's evidence because numerous documents, which were requested to be admitted in evidence, were not admitted in to the Record at the Hearing. Claimant made numerous requests for these documents to be entered in the record as evidence during the Hearing. These documents are compiled together in the Appendix. (See Appendix "A" through "G".)

The only part of Judge Davidson's Order that denies Claimant Relief is page 6 and page 7, #4 & #5. However, as Claimant has shown above Judge Davidson's Conclusions in #4 & #5 are simply incorrect. Claimant summarizes the facts below:

1. Judge Davidson stated that Claimant must demonstrate that he had requested accommodations for his disability and that Reasonable Accommodation was denied. However, then Judge Davidson confirms that Claimant did, in fact, request Reasonable Accommodation in that of a Qualified Reader and was denied this request.
2. Claimant showed that he was retaliated against by C.D.O.C. staff for asserting his rights under the A.D.A. when C.D.O.C. staff transferred Claimant to a violent and unsafe facility for persons with handicaps such as blindness. Further, Claimant demonstrated a great amount of harm as a result of this transfer. Judge Davidson's claim that it remains unclear how claimant could have been protected from the attack is without merit.
3. Claimant did not argue a separate claim regarding denial of medical care but simply asserted the harm caused by the C.D.O.C.'s actions. Further, the C.D.O.C. (Defendants) did not deny that the attack upon Claimant was a direct result of Claimant being transferred to the Freemont Facility or that the Freemont Facility was an unsafe facility for handicapped individuals with disabilities such as blindness.

13

**Other Issues:**

At the Hearing Claimant also argued the issue of C.D.O.C. staff not reading his Appointment Slips (called Lay-Ins) which resulted in Claimant missing his appointments such as Mental Health Groups which then resulted in the **LOSS OF GOOD TIME** earned. (See Appendix "G".) This also resulted in Claimant's removal from the Mental Health Group because he failed to make the appointments and the removal from the Single Cell program. Plaintiff Bulgier has the "Right to Participate in the Regular Programs" such as Single Cell Status. (See Appendix "A" "Right to Participate".) Attorney General Brook Mire argued that Single Cell Status is a privilege and is not protected under the A.D.A black's Law Dictionary defines **Benefit as a privilege**. Therefore Benefit and Privilege is one and the same. (See Appendix "A" **Definitions "Benefit".**) The A.D.A under "Right to Participate gives disabled persons the right to participate in a Public Entities Programs, Activities **Benefits** and Services ..."The actions of the C.D.O.C. staff not providing Claimant with assistance in reading his appointment slips resulted in the denial of Claimant's **Right to Participate** in the Mental Health Groups and his **Right to Participate** in the Good Time program as well as to his **Right to Participate** in the Single Cell program.

At the Hearing Claimant argued that he was moved to the very back of the Tab Plant in which Claimant was employed. Claimant complained about this move because of Safety concerns because materials used in the Tab Plant were highly flammable and because the only exits from the Tab Plant were in the front of the building. Additionally, materials were stacked in various places all around the plant, which would have impeded Claimant's ability to reach the front of the Tab Plant or any of the two exits in the front of the Tab Plant in the case of a fire. Claimant complained numerous times regarding this safety issue and Defendants refused to provide Reasonable Accommodation to Claimant and place him in the front of the Tab Plant. Further, Claimant refused to compromise his safety by moving to the back of the Tab Plant and was terminated. Here again, Reasonable Accommodation was denied. This termination from the Tab Plant resulted in Claimant's **Right to Participate** in the Single Cell program and his **Right to Participate** in the Good Time program.

As stated above, Claimant has demonstrated that discrimination did, in fact, occur and that he suffered enormous harm as a result of the discrimination. Claimant has not requested millions of dollars in damages but made it clear with Judge Davidson that he was seeking at least the original $3,000.00 that was awarded him but taken from him on the State's Appeal of that award.

Claimant requests this court to overrule Judge Davidson and reverse the Special Master's Denial of Claimant's Claims and remand this case for further proceedings.

Respectfully Submitted
On this 2nday of February, 2007.

Jim Bulgier TDCJ #902732
Estelle Unit
264 FM 3478

14

Huntsville, Texas 77320-3322

Claiment

\

## Certificate of Mailing

Montez vs Owens
Case #92-N-870
Consolidated with: Case #06-N-343
Individual Damage Claim #03-147

I, Jimmy Bulgier do hereby certify that I have mailed a copy of the hereto-attached Objections to Final Order of Special Master to the following parties:

United States District Court
For the District of Colorado
901 Stout Street. 5th Floor
Denver, Colorado 80294

Office of Attorney General
Assistant Attorney General
James X. Quinn
Denver, Colorado 80203

Respectfully submitted
On this 2nd Day of February, 2007.

_____

Jim Bulgier TDCJ #902732
264 FM 3478 / Estelle Unit
Huntsville, Texas 77320-3322

15