

### ~~Definitions~~
(from Block's Law Dictionary)

**Benefit:**
1. Advantage, privilege.Exhibits:   Discription.
2. Proffit or gain; especially the consideration that moves to the promisee.Page

**Harm:**
Injury, loss, damage: material for tangable detriment.

**Bodily Harm:**
Physical pain, illness or impairment of the body.
Equals Mayhem: Model Penal Code 210.0(3)
(See also "Serious Bodily Injury".)

## Table of Exhibits

**Exhibits: Discription:**           **Page**

A    Memorandum of Jack Shamaly (dated Sept. 20, 1994)........................17

B    Affidavit / Inmate Declaration of Benny Padillas *PAdilla*....................18

C    Affidavit / inmate Declaration of Josheph Crispin ............................19

D    Affidavit / Inmate Declaration of Kenith Endsley #1 .........................20

E    Affidavit / Inmate Declaration of Kenith Endsley #2 .........................21

F    Affidavit / Inmate Declaration #1of Nick Zemora ...........................23

G    Affidavit / Inmate Declaration #2of Nick Zemora ...........................24

H    **Grievance**
     95-092 (dated 05-16-95) ..............................................25
     95-139(a)  (dated 01-10-96(..............................................27
     95/96-249 (dated 03-20-96 ............................................30
     94/95-266 (dated 03-24-95)........................................32~31

*ADD #31*

## Table of Appendixes: 33

**Appendix: Discription:**           **Page**

A    A.DA Statutes used in this case ........................................32 34 ~ 40

B    Hadley School for the Blind (Braille courses) ......................33 39 40

C    Court  Documents;" Request for Court to Order Clerk to Provide and make Photocopies of Documents...42 39 48

D    Query Offender Programs (dated 01-102006)..........................47 53

E    ~~Academic Awards;~~ Progress Assessmebt Summery: .................48 54

     C.T.C.F. (dated 05-12-94)...........................................49
     F.C.F    (dated 05-12-95)..........................................50
     C.T.C.F (dated 05-16-94)............................................51

F    **Employment / Academic / Vocational Evaluations:**
     Life Skills / Personal Relationships (L.S. & P. R.) (dated 01-01-95 to 01-31-95)......52 57
     Tab-Hand Packager (dated 05-26-95 to –06-25-95)...........53
     Tab- Hand Packager (dated 05-22-95 to –5-25-95).............54
     Personal Life Skills (Per L/s) (dated 03-01-94 to 03-31-95)...........55

G    Official Time Computation Report (dated 08-04-1997)...............56 61

## MEMORANDUM

**TO:**    Ed Caley, Case Manager
**FROM:**  Jack Shamaly, Ph.D., Psychologist II
          FCF Mental Health Coordinator
**DATE:**  September 20, 1994
**RE:**    Jim Bulgier, #69812

   This is to inform you that on 9/19/94 Mr. Bulgier relayed information to me which has me concerned for his personal safety. He specifically reported that unidentified inmates have been harassing and threatening him.   This intimidation has taken the following forms: attempts to set his hair and/or hair net on fire, removal of his eye glasses from his face, verbal harassment, moving his clothes and his cane while he is showering, having water thrown at him, being physically pushed, being physically removed from the shower, having sand thrown in his face, and being threatened that he will be stabbed.   Mr. Bulgier attributes these incidents to people taking advantage of him since he is seriously sight impaired and cannot identify them.

   I have known Mr. Bulgier since he was placed at the Colorado Territorial Correctional Facility.  It is my understanding he was removed from CTCF because he was not medically restricted and because he was too bright intellectually to participate in Becky Romano's, Social Worker III sexual deviancy group for developmentally disabled offenders. However, I recently spoke with Ms. Romano and she indicated that she would be willing and it would be appropriate for Mr. Bulgier to participate in a sexual deviancy treatment group for medically restricted inmates.   Given Ms. Romano's experience in working with disabled persons I agree that this would be an appropriate placement.  Also I believe that Mr. Bulgier is an extremely vulnerable/victim prone inmate. Given that CTCF, in my opinion, is an environment which is much more accommodating and relatively safer for the disabled inmate, I would see this as a much more appropriate environment for Mr. Bulgier. In support of this is my knowledge that Mr. Bulgier did not encounter the types of problems he is experiencing here, at CTCF. In  sum,  I  ask  that  you  seriously  consider  a reclassification/transfer of Mr. Bulgier to CTCF. If I can be of further assistance in this matter I can be reached at Ext. 3552. Thank you.

cc: Mental Health File

17

Ex B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RE: Case #92-N-870

Jesse Montez vs Bill Owens (et al)

Consolidated with: Case #92-N-343

Jimmy Bulgier vs. Bill Reed

## AFFIDAVIT of Benny Padilla

1. My name is Benny Padilla and I am over the age of twenty-one and competent to make an affidavit of the following facts within my personal knowledge.

2. I, Benny Padilla (D.O.C. #82114) currently housed within the Territorial Correctional Facility in Canon City, Colorado, do hereby swear under penalty of law to the following facts.

3. From 1993 through August of 1997, I was housed with inmate Jimmy Bulgier, a co Plaintiff in this here above said case. Plaintiff Bulgier and I are both legally blind. Both Plaintiff Bulgier and I would have to depend on other inmates to read communications (written forms) issued to us by the Colorado Department of Corrections (Territorial Facility). It was very rear occasions that Mr. Bulgier and I would be able to get a staff member to read any communications (such as appointment slips) to us.

4. Plaintiff Bulgier and I found from experience that we could not always depend on inmates to read such communications to us.

I, Benny Padilla do hereby sware under penalty of law that the above statement and facts have been read to me and I adopt said work as my own product, I further swear under said oath that the above stated facts are true and correct, are true and accurate, End of statement.

Respectfully submitted on this 23th day of August, 2004.

Signature: _Benny Padilla_

Benny Padilla DOC #82114

P.O. Box 1010

Canon City, Colorado 80214-1010

18

ExC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF Colorado

Case #92-n-870
Jesse Montez vs. Bill Owens (et al)
Consolidated with: Case #96-N-343
Claim #02-488

---

### AFFIDAVIT from Joseph Crespin

COMES NOW!, Joseph Crespin who states that I am over the age of 21 and competent to make this Affidavit of the facts within my personal knowledge.

I have been an inmate at the Territorial Correctional Facility (C.T.C.F.) with Jimmy Bulgier from 1994 to 1997 when he was discharged. Mr. Bulgier is legally blind.

Mr. Bulgier frequently had problems getting D.O.C. staff and Officers to read their Written Communications to him. I would frequently read appointment slips (lay-in passes), responses to Inmate Communications forms and other types of D.O.C. Communications.

I feel it was the responsibility of D.O.C. staff to provide this type of service in accordance with the Americans with Disabilities Act, Title II.

END OF STATEMENT.

I, Joseph Crespin do hereby swear under penalty of perjury that I have read the foregoing Affidavit and I swear again under penalty of perjury that the above facts are true and correct.

Dated on this ___ day of ___ June ___, 2004.

Signature: _____
Joseph Crespin  D.O.C. #_____

Signed before me on this _____ day of _____, 2004.

Signature: _____

My commission expires on _____,_____.

19

F/D

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case #92-N-870
Montez (et al) vs Owens (et al)
Consolidated with:  Case #96-N-343
Individual Damage Claim #02-488

## INMATE DECLAIRATION
### From Kenneth Endsley

I, Kenneth Endsley (D.O.C. #74690 do hereby certify that the following statements are true and accurate and are made to the best of my ability. I , Kenneth Endsley do hereby certify that I am over the age of 21 years and am confident and fully able to appear before this Honorable Court if and when called upon to do so.

I make these statements of my own free will and am able to remember these facts from 10 years in the past to the best of my ability.

I was an inmate at the Territorial Correctional Facility (C.T/.C.F.) with Mr. Bulgier in the early 1990s. Mr. Bulgier and I was enrolled in to a Mental Health Program in 1995/1996. Becky Rhomano and Glynett Smith were in charge of the program at that time.

The entire group of inmates who attended the Mental Health programs at C.T.C.F. were informed that we all were permitted **one unexcused absence during the entire program**. I recall clearly that Mr. Bulgier is legally blind and cannot read printed materials. He had to get other inmates to read his lay-in passes (appointment slips) to him.

In 1996 Mr. Bulgier missed one class session and was called in to a following group meeting. At the meeting Mr. Bulgier explained to the entire group that he could not read the lay-in pass and had to find someone to read it for him. The inmate who read the pass to him lied and told Mr. Bulgier that the class for that day had been canceled. This class did in fact meet that day.

Mr. Bulgier was called in and during the group session, we group members voted (at the instructions of Becky Rhomano and Glynett Smith) to permit Mr. Buolgier to continue in the classes. Becky Rhomano and Glynett Smith disagreed with the entire group and dismissed Mr. Bulgier and gave him an unexcused absence and terminated him from all future groups.

I feel that the decisions of Becky Rhomano and Glynett Smith were wrong and unfair to Mr. Bulgier's disability.

I, Kenneth Endsley (D.O.C. #74690) do hereby certify that the forgoing statements are true and accurate and I fully understand that I am subject to Court sanctions under the penalty of law.

Respectfully submitted and signed on this 27th the day of August, 2004.

Signature: Kenneth Endsley

20

Ex 10 E Pg 1

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case #92-N-870
Montez (et al) vs Owens (et al)
Consolidated with:  Case #96-N-343
Individual Damage Claim #02-488

INMATE DECLAIRATION
From Kenneth Endsley

I, Kenneth Endsley (D.O.C. #74690 do hereby certify that the following statements are true and accurate
and are made to the best of my ability.  I , Kenneth Endsley do hereby certify that I am over the age of 21
years and am confident and fully able to appear before this Honorable Court if and when called upon to do
so.

I make these statements of my own free will and am able to remember these facts from 10 years in the past
to the best of my ability.

I was an inmate at the Territorial Correctional Facility (C.T/.C.F.) with Mr. Bulgier in the early 1990s.
Mr. Bulgier and I was employed at the Tab Plant at the Territorial Correctional Facility (C.T.C.F.) in 1996.
Mr. Bulgier is legally blind and was able to perform the job duties he was called upon to do.

Mr. Bulgier and I were also enrolled in the same Mental Health group.  Becky Rhomano and Glynett
Smith were in charge of the Mental Health Programs as well as the Handicapped employment at the Tab
Plaint.

Mr. Bulgier was fully able to perform the job duties at the Tab Plant. In fact Becky Rhomano and
Glynett Smith were amazed of how well Mr. Bulgier was able to adapt and come up with solutions to
overcome his blindness and perform his work.  I do recall that Mr. Bulgier had requested of Becky
Rhomano and Glynett Smith to have a lamp installed over his work station so he could see the direction of
the Tab which he was stuffing the envelopes with.  Mr. Bulgier's request for a lamp was never provided.

Mr. Bulgier requested the lamp because some inmates would walk by and turn the Tab stickers up-side-
down without his knowledge.  There was some horse playing to relieve tension in the Tab Plant but only
during the rest breaks or before work started or after it ended.  It was not out of the ordinary for inmates to
shoot the manager (Dave) with rubberbands.  But staff knew this was only for fun and release of tension.
We all (Mr. Bulgier included) performed our jobs as required and were frequently complemented by staff.

After Mr. Bulgier was terminated from the groups at Mental Health, Mr. Bulgier informed me that he
had filed a Step 1 Grievance against Becky Rhomano and Glynett Smith.  Mr. Bulgier said he also followed
up with a complaint in U.S. District Court via his attorney for reasons of discrimination.  After this I recall
that Becky Rhomano and Glynett Smith called Mr. Bulgier in to the Tab Plant office.  I could see through
the windows that Mr. Bulgier was not pleased with the out come of this meeting.  When Mr. Bulgier came
out, he said that Becky rhomano and Glynett Smith had fired him and he then left the Tab Plant.

21

*Ex E. - Pg 2*

I later asked Mr. Bulgier what had happened and he replied that Becky Rhomano and Glynett Smith demanded that he relocate his work station from the front of the Tab Plant to the back corner. Mr. Bulgier refused for fear of his safety in the event of a fire. I agreed with Mr. Bulgier reasoning.

I strongly feel that Mr. Bulgier was retaliated against due to his filing a law suit against Becky Rhomano and Glynett Smith and not for horse playing as Becky Rhomano and Glynett Smith claimed on their response to Mr. Bulgier's grievance. If Mr. Bulgier was terminated for horse playing, then why wasn't the rest of the inmates fired for the same reasons?

I, Kenneth Endsley (D.O.C. #74690) do hereby certify that the forgoing statements are true and accurate and I fully understand that I am subject to Court sanctions under the penalty of law.

Respectfully submitted and signed on this 27th the day of August, 2004.

Signature: *Kenneth Endsley*

Kenneth Endsley  D.O.C. #74690
Ft. Lyons Correctional Facility
30999 Country Road 15
P.O. Box 1000
Ft. Lyons, Colorado  81038

22

EX F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF Colorado

Case #92-n-870
Jesse Montez vs. Bill Owens (et al)
Consolidated with: Case #96-N-343
Claim #02-488

---
### AFFIDAVIT from Nick Zamora
---

COMES NOW I, Nick Zamora who states that I am over the age of 21 and competent to make this Affidavit of the facts within my personal knowledge.

I have been an inmate at the Territorial Correctional Facility (C.T.C.F.) with Jimmy Bulgier from 1994 to 1997 when he was discharged. Mr. Bulgier is legally blind.

Mr. Bulgier frequently had problems getting D.O.C. staff and Officers to read their Written Communications to him. I would frequently read appointment slips (lay-in passes), responses to Inmate Communications forms and other types of D.O.C. Communications.

I feel it was the responsibility of D.O.C. staff to provide this type of service in accordance with the Americans with Disabilities Act, Title II.

END OF STATEMENT.

I, Nick Zamora do hereby swear under penalty of perjury that I have read the foregoing Affidavit and I swear again under penalty of perjury that the above facts are true and correct.

Dated on this 24th day of _March_, 2004.

Signature: _Nick Zamora_
Nick Zamora D.O.C. #_____

Signed before me on this _____ day of _____, 2004.

Signature: _____

My commission expires on _____, _____.

23

*Exibit G*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF Colorado

Case #92-n-870
Jesse Montez vs. Bill Owens (et al)
Consolidated with: Case #96-N-343
Claim #02-488

---

### AFFIDAVIT from Nick Zamora

COMES NOWI, Nick Zamora who states that I am over the age of 21 and competent to make this
Affidavit of the facts within my personal knowledge.

I have been an inmate at the Territorial Correctional Facility (C.T.C.F.) with Jimmy Bulgier from
1994 to 1997 when he was discharged. Mr. Bulgier is legally blind.

Mr. Bulgier frequently had problems getting D.O.C. staff and Officers to read their Written
Communications to him. I would frequently read appointment slips (lay-in passes), responses to Inmate
Communications forms and other types of D.O.C. Communications.

I feel it was the responsibility of D.O.C. staff to provide this type of service in accordance with the
Americans with Disabilities Act, Title II.

END OF STATEMENT.

I, Nick Zamora do hereby swear under penalty of perjury that I have read the foregoing Affidavit and I
swear again under penalty of perjury that the above facts are true and correct.

Dated on this 24th day of _MARCH_ , 2004.

Signature: _Nick Zamora_
Nick Zamora  D.O.C. #_____

Signed before me on this _____ day of _____, 2004.

Signature: _____

My commission expires on _____,_____.

54

EX B

**COLORADO DEPARTMENT OF CORRECTIONS**

**OFFENDER GRIEVANCE FORM**

RECEIVED

MAY 2 2 1995

CLINICAL SCVS.
E. FISH

STEP 1

| NAME | DOC No. 60981-2 | FACILITY |
|------|-----------------|----------|
| JIM Bulgier | | C.T.C.F. |

Instructions:
1) Fill out identifying data legibly in space provided;
2) Clearly state basis for grievance;
3) Describe the attempts made to resolve the problem;
4) State specifically what remedy you are requesting

95-092

**REQUEST**

THIS IS A EMERBENY GRIEVANCE To Be answered I 72 Hoors.

ABAINST MEDICAL DEPARTMENT AT C.T.C.F.

ISSUE — INADEQUATE MEDICAL TREATMENT, LEAVING ME IN PAIN WITHOUT relief

PETITIONER Has Requested medical treatment for EPA D/DM/TUS Condition (swelling of testicles) P.A. Carlson ordered x-ray to determine if theis is a foreign object in my pancreus. P.A. Rose cancled the x-ray, My condition is aggrevated by experiment of having to walk to med line. It is very painful to walk. walking cause sharp pain.

PETITIONER NEEDS TO BE SEEN BY A urologist, and Hospitalized until this condition is cured or pain brought to point that I can walk without severe pain. Petitioner feel like P.A. Rose experiment was to rough and caused excessive pain in testicles, petitioner need a wheel chair with breaks until petitioner can walk again.

**Relief Requested**

adequate medical treatment & Hospitalization to alleviate pain and suffering. Visual inspection of pancras with x-rays remove probe to determine if any foreign objects exist. and proper begin for excuse from assignment until this condition is cured

DATE: 16 MAY 1995

OFFENDER SIGNATURE: Jim Bulgier

Court Exhibit

**RESPONSE**

You were seen by me, the Medical Officer for CTCF, on 5/18/22 and stated that you had pain "at the end of urination." You were ordered a specialist (urologist) consult, which is pending. You have been seen 5X in the last 12 days. You have had 3 kinds of pain medication. Your care has been proper and adequate so grievance is denied. You have abused the emergency grievance procedure.

DATE: 5/22/95        SIGNATURE: W. O. Autery, PRM

**RECEIPT**

I acknowledge receipt this date of a complaint from the above inmate in regard to the following subject: Medical Treatment

DATE: 5/22/95        SIGNATURE:  S. Fish

**DISTRIBUTION**

Department file,    Working case management file,    Superintendent,    Inmate

DC Form 25-a (Revised 8/93)

25

Ex B

**RECEIVED**

MAY 2 2 1995

**CLINICAL SCVS.**
**E. FISH**

## COLORADO DEPARTMENT OF CORRECTIONS

### OFFENDER GRIEVANCE FORM

STEP 1

NAME Jim Bulgier

DOC NO. 69812

FACILITY C.T.C.F.

| Instructions: | 1) | Fill out identifying data legibly in space provided; |
| | 2) | Clearly state basis for grievance; |
| | 3) | Describe the attempts made to resolve the problem; |
| | 4) | State specifically what remedy you are requesting |

95-092

REQUEST

THIS is A EMERGENY GRIEVANCE to be answered 2 72 Hours.
AGAINST MEDICAL DEPARTMENT AT C.T.C.F.
ISSUE - INADEQUATE MEDICAL TREATMENT, LEAVING ME IN PAIN WITHOUT relief

PETITIONER Has Requested medical treatment for EPA D. DANITOS' CONDITION (SWELING of TESTIC
P.A. Coelien ordered xray to determin if there is a foreign object in my PANCREAS P.A. Ross Come
the xray, My Condition is aggravated by experiment of haveing to walk to med. line. IT is very painful
to walk, walking cause sharp pain,

PETITIONER NEEDS to BE SEEN By A Urologist, and Hospitalized untill this Condition is Cured
or pain Subsided to point that I can walk without severe pain. PETITIONER FEEL like P.A. Ross examin
was to rough and Caused excessive pain in testicles, petitioner need a wheel chair with another un
petitioner can walk again,

Relief Requested
adequate medical treatment & Hospitalization to alariate pain and suffering, x-and. inspica
of pancreas with micro Camera probe to determine if any foreign objects exist, and proper begin for pers
from assignment untill this Condition is cured

DATE: 16 MAY 1995

OFFENDER SIGNATURE: Jim Bulgier

Court Exhibit

RESPONSE

See attached.

26

DATE:

SIGNATURE:

RECEIPT

Ex H,

## COLORADO DEPARTMENT OF CORRECTIONS

## OFFENDER GRIEVANCE FORM

STEP II          95/96  #,134 A,

| NAME | DOC No. | FACILITY |
|------|---------|----------|
| Jim Bulgier | 69812 | Territorial Facility |

Instructions:
1) Fill out Identifying data legibly in space provided; Exhibit CASE # 94-B-2955,
2) Clearly state basis for grievance;  CASE # 95-1314,
3) Describe the attempts made to resolve the problem;  Exhibit U.S. Dept. of Justice
4) State specifically what remedy you are requesting  Docket # OJP-95-C-007.
5) Attach copy of Step I

REQUEST

WARD C/AAR & Case Manger MURPHY

ISSUE- Discrimination in Hiring Practices & Retaliation for Exercise of my Rights under Americans with disabilities act, title II, - 4.0000 Ref 28 CFR 35,140, and attachment A, signed by State of Colorado, is recieving funding from United States.

Named defendants discriminated against petitioner, plain and clear, refusing to o.k. petitioners employment under protected expense, and hired inmate Crispin in petitioner job slot, after notification of Complaint to United States Justice Department, employment based upon thirds assignment, causing left. He also retaliated against petitioner and removed Single Cell Status, inmate Crispin did not lose his single cell status therefore the equal protection clause was also Violated. Plainly and Clearly

Relief requested
Back pay and all status restored, including re-assignment of single cell status.
Relief; unspecified monitary damages via 42 U.S.C. 1983 law suit for A.D.A. Violation.

DATE: 1/18/96  JANUARY 18, 1996,   OFFENDER SIGNATURE: Jim Bulgier

RESPONSE

## See attached response.

DATE: 2/2/96   SIGNATURE: Gloria Masterson

RECEIPT

EX H

Step II Grievance 95/96-139A
Jim Bulgier, DOC #69812

While investigating your grievance, I spoke with
Nard Claar (Housing/Programs Manager), Dave
Burrous (Tab Operations), Becky Romano (Mental
Health Coordinator), Bill Reed (Cellhouse 7 Captain),
and Rene Murphy (Case Manager). I also spoke with
you on this date (2/2/96). As we discussed, your
grievance fails to mention your release from the Tab
Plant. I have determined that you are responsible for
your termination from the Tab Plant. You were
initiating problems with other inmates, such as
lowering their chairs, etc. You admitted doing this,
but state all inmates were engaged in "horseplay." A
staffing was held to discuss your behavior and set
conditions for your employment at the Tab Plant.
You refused to meet the conditions and were
terminated. Therefore, you are responsible for your
loss of job. Soon thereafter, you did ask for a job in
the kitchen. All assignments were full and staff
reviewed your request to determine if a new position
could be created for you. This did take some time
due to the normal procedures for creating a new job
and the absence of Mr. Claar. In December, you
were assigned to Food Service and are still assigned.
I will not grant any remedy as I believe you failed to
meet the criteria for a single cell by creating the loss
of your job at the Tab Plant. This is totally your

28

Ex H.

95/16-131

**COLORADO DEPARTMENT OF CORRECTIONS**

**OFFENDER GRIEVANCE FORM**

U.S. District Court.
Exhibit: Civil Rights Case #94-B-295 STEP 1   U.S. District Court of Appeals
Exhibit: Civil Rights Case #95-151

| NAME | DOC No. | FACILITY |
|------|---------|----------|
| Jim Bulger | 69812 | TERRITORIAL |

Instructions:
1) Fill out identifying data legibly in space provided;   Exhibit: U.S. Dept
2) Clearly state basis for grievance;
3) Describe the attempts made to resolve the problem;   Justice Docket
4) State specifically what remedy you are requesting.   #OJP-95-C-DD7

Against
Major Ward Claar:

Subject: Loss of Single MAN Cell!   REQUEST ADA legal Action Pending:
A.D.A. Title 2 Section 4 Employment Hiring Rights for Handicap.
REF: A.D.A. Title 2 Section 3.9000-3.UDDD Retaliation is prohibited.

On Oct 13, 1995, I requested the "FLATWARE STUFFERS" employees
job in the C.T.C.F. Kitchen. My employment was approved by
Lt. Conti, Lt. Lt. Filer and Lt. Murphy on October 13, 1993.
On December 27, 1995, you Major Claar gave your approval
As a result of your excessively long delay to hire me and oth
inmates (who applied after I applied) were given preferencial
status over me and hired over me. My Rights ARE viol
lalliation by Sargent Holden. Sargent Holden was told by Lt. Conti in
writing and by Lt. Murphy "that I have the above job"
On Dec. 26, 1995 Sargent Holden removed me from my single c
Remedy: I want my single cell Restored emedtely:   Jim Bulger
OFFENDER SIGNATURE:
December 28, 1995,
RESPONSE:
Sargent Holden said he would put me on the "BOTTOM" of the
single cell list. I want the "NEXT" single cell via your orders.
RESPONSE:

You were terminated from the Tab Operation on 10/12/95.  At that time you were
given a two week grace period to find other employment before we would move you
out of your single cell.  You were not employed in Food Service until 12/27/95,
therefore you were moved to a double cell and placed on the bottom of the single
cell list.  When you reach the top you may be moved back into a single cell.

DATE: 1-3-96                    SIGNATURE: Bill Read

29

EX A

## COLORADO DEPARTMENT OF CORRECTIONS

### OFFENDER GRIEVANCE FORM

STEP I                                    95/96 - 04°

| NAME J.M BULGER | DOC No. 69812 | FACILITY C.T.C.F. |

Instructions:  1) Fill out identifying data legibly in space provided;
2) Clearly state basis for grievance;
3) Describe the attempts made to resolve the problem;
4) State specifically what remedy you are requesting

### REQUEST

CELLHOUSE SEVEN STAFF and MAJOR WARD CLARK

ISSUE — UNSAFE HOUSING, Housed in Cellhouse, that does not meet A.D.A. Standards

Cellhouse three is to dark (improper lighted) to permit petitioner to use what limited vision I, have left.

Cellhouse has hazardous, without proper white cane guards, eg, ironing Boards and steel metal plates, hip heights, Hot Water Heater at CHEST HEIGHT, various unther articles in hallways, including hoses, Brackets etc, steel utility doors, inmates recieving threats from them, for bumping them with white cane, injured shins on bunk corner, Sore face on hot water dispenser, etc.

Relief wanted
SINGLE CELL in Cellhouse 7, where petitioner is more ACCUSTOMED to, better lit, to allow maximum use of what vision I have left, to prevent unessary injury and harm.

DATE: 3/20/96                    OFFENDER SIGNATURE: Jim Bulger

### RESPONSE

Moved To CH-7  3/29/96

Per Medical request.

Grievance Satisfied.

DATE: 4/8/96                    SIGNATURE: X Baum

### RECEIPT

30

COLORADO DEPARTMENT OF CORRECTIONS

OFFENDER GRIEVANCE FORM

STEP 1                    94/95 - 266

| NAME | DOC No. | FACILITY |
|------|---------|----------|
| JiMMY R. Bulgier | 69812 62782 | C.T.C.F. |

Instructions:
1) Fill out identifying data legibly in space provided; RE: FEderal STATUTES: of 199.
2) Clearly state basis for grievance; A.D.A. TitlE 2-3.2000,
3) Describe the attempts made to resolve the problem; A.D.A. Title 2-1.4200,
4) State specifically what remedy you are requesting #A.D.A. Title 2-7.1000,
A.D.A. Title 2-7.1100 & 7.1200

REQUEST

Ms. ANNETTE PoRTER, law libirian C.T.C.F.

issve - Denial of rights Guaranteed by A.D.ACt. of preference in reader and assistance where Subject is Confidential matter to petitioner.

TITLE II, sections 7-1100, 7.1200 Guranteed a blind person the right of choise of reader and assistant in pregration of legal documents, to a individual that he trust and is confortable with

petitioner is not confortable with reader and assistance that Ms porter wishes to appoint, as subject matter is personal and family, and concerns a prevuis clerk we broke trust and has harrassed petitioner wife and stole material objects from my wife and I,

Relief requested
a reader and assistance of my choise to help me prepare charges to D.A.

RE: Code of Federal Regulations: 28-U.S.CR.35.102 - 35.104.  28-CFR. 35.130 - 35.135  28-CFR. 35.150(c)(d),
28-C.F.R. 35.100 - 35.164     28-CFR. 35.105     35.107

DATE: 3/24/95              OFFENDER SIGNATURE: Jim Bulgier

RESPONSE

I spoke with Ms. Porter regarding this grievance. She states she has made at least two (2) individuals available to read to you. Ms. Porter states you want to bring in a person of your choice, which she states is not required. The law clerks are trained in confidentiality issues. If you had a problem with another inmate, the incident should be reported to your case manager for appropriate handling.

Grievance denied.

DATE: April 11, 1995        SIGNATURE: Gloria Masterson
                            Gloria Masterson, Administrative Servic

RECEIPT

31

Ex H

## COLORADO DEPARTMENT OF CORRECTIONS

### OFFENDER GRIEVANCE FORM

STEP 1

74/95- 266

NAME: Jimmy R. Bulgier    DOC No: 69812    FACILITY: C.T.C.F.
62170

Instructions:
1) Fill out identifying data legibly in space provided; RE: Federal Statutes! of 196
2) Clearly state basis for grievance; A.D.A. Title 2-3,2000.
3) Describe the attempts made to resolve the problem; A.D.A. Title 2-1,4200.
4) State specifically what remedy you are requesting    ADA Title 2-7,1000. Title 2-7,1100 & 7,120

### REQUEST

Ms. Annette Porter, law librian C.T.C.F.

ISSUE - Denial of rights guaranteed by A.D. Act of preference in reader and assistant where subject is confidential matter to petitioner.

Title II, sections 7-1100, 7.1200 granteed a blind person the right of choice of reader and assistant in preparation of legal documents, to a individual that he trust and is comfortable with.

Petitioner is not comfortable with reader and assistance that Ms Porter wishes to appoint, as subject matter is personal and family, and concerns a previous clerk who broke trust and has harrassed petitioners wife and stole material objects from my wife and I,

Relief requested
reader and assistance of my choise to help me prepare charges to D.A.

RE: Code of Federal Regulations: 28 USCR 35,102 -35,184, 28 CFR 35,130 - 35,135, 28 CFR 35,158 (c)(1), 28 CFR 35,160 - 35,164, 28 CFR 35,105 - 35,107.

DATE: 3/24/95    OFFENDER SIGNATURE: Jim Bulgier

### RESPONSE

I spoke with Ms. Porter regarding this grievance. She states she has made at least two (2) individuals available to read to you. Ms. Porter states you want to bring in a person of your choice, which she states is not required. The law clerks are trained in confidentiality issues. If you had a problem with another inmate, the incident should be reported to your case manager for appropriate handling.

Grievance denied.

DATE: April 11, 1995    SIGNATURE: Gloria Masterson
Gloria Masterson, Administrative Servi

RECEIPT

32

## Table of Appendixes:

| Appendix: | Discription: | Page |
|---|---|---|
| A | A.DA Statutes used in this case ......................................................................................32 |
| B | Hadley School for the Blind (Braille courses) ...........................................................33 |
| C | Court Documents;" Request for Court to Order Clerk to Provide and make Photocopies of Documents...42 |
| D | Query Offender Programs (dated 01-102006)……..….........................................................47 |
| E | Accodemic Awards;....................................................................................................48 |
| E | Progress Assessmenbt Summery: |
|  | C.T.C.F. (dated 05-12-94)............................................................................................49 |
|  | F.C.F     (dated 05-12-95)..............................................................................................50 |
|  | C.T.C.F (dated 05-16-94)...............................................................................................51 |
| F | Employment / Academic / Vocational Evaluations: |
|  | Life Skills / Personal Relationships (L.S. & P. R.) (dated 01-01-95 to 01-31-95)...........52 |
|  | Tab-Hand Packager (dated 05-26-95 to –06-25-95)............................................................53 |
|  | Tab- Hand Packager (dated 05-22-95 to –5-25-95)............................................................54 |
|  | Personal Life Skills (Per L/s) (dated 03-01-94 to 03-31-95)...........................................55 |
| G | Official Time Computation Report (dated 08-04-1997)...................................................56 |

**Definitions**

(From Black's Law Dictionary)

**Benefit:**
1. Advantage, privilege. Exhibits:   Description:
2. Profit or gain; especially the consideration that moves to the promise. Page

Harm:
 <u>**Injury, loss, damage  material for tangible detriment.**</u>

Bodily Harm:
<u>Physical pain, illness or impairment to the body.</u>
 <u>   Equals Mayhem: Model Penal Code 210.0(3)</u>
 <u>   (See also "Serious Bodily Injury".)</u>

# A.D.A. Statutes used in this case:

**A.D.A. Prevails over Conflicting State Laws .(II-1.4200)**   *(from A.D.A. Technical Assistance Manual (Published by the U.S. Dept. of Justice.)*

**Employment:** *(from Technical Assistance Manual)*

**II-4.1000**

Beginning January 26, 1992, Title II prohibits all Public Entities, regardless of size of workforce, from discriminating in their employment practices against qualified individuals with disabilities.

## Employment

## 28 C.F.R. 35.140 Employment Discrimination Prohibited:

(a) No qualified individual with a disability shall, on the basis of disability, program, or activity conducted by a Public Entity.

(b) (1) For purposes of this part, the requirements of Title 1 of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 C.F.R. part 1530, apply to employment in any service, program, or activity conducted by a Public Entity. if that Public Entity is also subject to the jurisdiction of Title 1.

(2) For the purpose of this part, the requirements of Section 504 of the Rehabilitation Act of 1973, as established by the regulations of the Dept. of Justice in 28 C.F.R. part 41, as those requirements pertain to employment, apply to employment in **any service**, program, or activity conducted by a Public Entity. if that Public Entity is not also subject to the jurisdiction of Title 1.

**Other Federal and State Laws**

# 34

Title II does not disturb other Federal Laws or any State Laws that provide protection for individuals with disabilities at a level greater or equal to that provided by the A.D.A. **It does, however, PREVAIL OVER ANY CONFLICTING STATE LAWS.**

**Primary Consideration 28 C.F.R 35.160(2) (from Section 35 law statutes.)**

*The Public Entity must provide an opportunity for individuals with disabilities to request the Auxiliary Aids and Services of their choice. The expressed choice shall be given Primary Consideration by the Public Entity (See Section 35.160(b)(2)). The Public Entity shall honor the choice unless it can demonstrate that another effective means of communications exists or that use of the means chosen would not be required under Section 35.164.*

**Reasonable Accommodation:** *(from the A.D.A. Technical Assistance Manual)*

II-4.3200  All Public Entities **must**  make "Reasonable Accommodations" to the known physical or mental limitations of otherwise qualified applicants or employees with disabilities unless the Public Entity can show that the accommodation would impose an "undue hardship" on the operations of its program.

"Reasonable Accommodation" means any change or adjustment to a job or work environment that permits a qualified applicant or employee with a disability to participate in the job application process, to perform the essential functions of a job, or to enjoy the benefits and privileges of employment equal to those enjoyed by employees without disabilities.

Illustrations include:

➢  Acquiring or modifying equipment or devices;

➢  Job restructuring;

➢  Part time or modified work schedules;

➢  Providing readers or interpreters;

➢  Making the work place accessible to and usable by individuals with disabilities.

However, any particular change or adjustment would not be required if, under the circumstances involved, it would result in an undue hardship.

"Undue hardship" means significant difficulty or expense relative to the operation of a Public Entity's program.  Where a particular accommodation would result in an undue hardship, the Public Entity **must determine if another accommodation were available that would not result in an undue hardship.**

**Relationship to Other Laws (28.C.F.R 35.103)(b)** *(From Section 35 Law Statutes.)*

*(b) Other Laws: This part does not invalidate or limit the remedies, rights, and procedures of any other Federal Laws, or State or Local Laws (including State Common Laws) that provide greater or equal protection for the rights of individuals with disabilities. Or individuals associated with them.*

**Retaliation and Coercion:**

*II-3.1100 (*from the Technical Assistance Manual);

*Individuals who exercise their rights under the A.D.A., or assist others in exercising their rights, are protected from retaliation. The prohibition against retaliation or coercion applies broadly to any individual or Entity that seeks to prevent an individual from exercising his or her rights or to retaliate against him or her for having exercised those rights.  Any form of retaliation or coercion, including threats, intimidation, or interference, is prohibited if it interferes with the exercise of rights under the Act.*

**Retaliation and Coercion:**

*28 C.F.R. 35.134 (From Section 35 manual);*

# 35

Section 35.134 implements Sections 503 of the A.D.A., which prohibits Retaliation against any individual who exercises his or her rights under the Act. This Section is unchanged from the proposed rule. Paragraph A of Section 35.134 provides that no private or Public Entity shall discriminate against any individual because that individual has exercised his or her right to appose any action or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manor in an investigation proceeding or hearing under the Act of this part.

Paragraph B provides that no Private or Public Entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise of his or her rights under this part or because that individual aided or encouraged any other individual in the exercise or employment of any right granted or protected be the Act or this part.

This Section protects not only individuals who support or assist them. This Section applies to all investigations or proceedings initiated under the Act or this part without regard to the alternative resolution of the underlying allegations. Because this Section prohibits any Act of Retaliation or Coercion in response to an individual's effort to exercise rights established by the Act and this part (or to support the efforts of another individual), the Section applies not only to Public Entities subject to this part, but also to persons in an individual capacity or to Private Entities.

**Right to Participate in the Regular Program** *(from the A.D.A. Technical Assistance Manual)*

II-3.4300  Even if a separate or special program for individuals with disabilities is offered, a Public Entity **cannot deny a qualified individual with a disability participation in its regular program.**

Qualified individuals are entitled to participate in regular programs, **even if the Public Entity** could reasonably believe that they cannot benefit from the regular program.

**Safety: II-3.5200 (***from The Americans with Disabilities Act, Technical Assistance Manual, published by the U.S. Dept. of Justice***)** **Public Entity may impose legitimate SAFETY REQUIREMENTS necessary for the safe operation of its services, programs, or activities.  However, the Public Entity MUST INSURE that its SAFETY REQUIREMENTS are based on <u>real risk</u>, not on speculation, stereotypes, or generalizations about individuals with Disabilities."**

Pt. 36, App. A

APP A

28 CFR Ch. I (7-1-94 Edition)

**4.4 Protruding Objects**

area of rescue assistance shall be protected with fire assemblies having a three-fourths hour fire protection rating.

(3) A portion of a one-hour fire-resistive corridor (complying with local requirements for fire-resistive construction and for openings) located immediately adjacent to an exit enclosure.

(4) A vestibule located immediately adjacent to an exit enclosure and constructed to the same fire-resistive standards as required for corridors and openings.

(5) A portion of a stairway landing within an exit enclosure which is vented to the exterior and is separated from the interior of the building with not less than one-hour fire-resistive doors.

(6) When approved by the appropriate local authority, an area or a room which is separated from other portions of the building by a smoke barrier. Smoke barriers shall have a fire-resistive rating of not less than one hour and shall completely enclose the area or room. Doors in the smoke barrier shall be tight-fitting smoke- and draft-control assemblies having a fire-protection rating of not less than 20 minutes and shall be self-closing or automatic closing. The area or room shall be provided with an exit directly to an exit enclosure. Where the room or area exits into an exit enclosure which is required to be of more than one-hour fire-resistive construction, the room or area shall have the same fire-resistive construction, including the same opening protection, as required for the adjacent exit enclosure.

(7) An elevator lobby when elevator shafts and adjacent lobbies are pressurized as required for smokeproof enclosures by local regulations and when complying with requirements herein for size, communication, and signage. Such pressurization system shall be activated by smoke detectors on each floor located in a manner approved by the appropriate local authority. Pressurization equipment and its duct work within the building shall be separated from other portions of the building by a minimum two-hour fire-resistive construction.

**4.3.11.2 Size.** Each area of rescue assistance shall provide at least two accessible areas each being not less than 30 inches by 48 inches (760 mm by 1220 mm). The area of rescue

assistance shall not encroach on any required exit width. The total number of such 30-inch by 48-inch (760 mm by 1220 mm) areas per story shall be not less than one for every 200 persons of calculated occupant load served by the area of rescue assistance.

EXCEPTION: The appropriate local authority may reduce the minimum number of 30-inch by 48-inch (760 mm by 1220 mm) areas to one for each area of rescue assistance on floors where the occupant load is less than 200.

**4.3.11.3* Stairway Width.** Each stairway adjacent to an area of rescue assistance shall have a minimum clear width of 48 inches between handrails.

**4.3.11.4* Two-way Communication.** A method of two-way communication, with both visible and audible signals, shall be provided between each area of rescue assistance and the primary entry. The fire department or appropriate local authority may approve a location other than the primary entry.

**4.3.11.5 Identification.** Each area of rescue assistance shall be identified by a sign which states "AREA OF RESCUE ASSISTANCE" and displays the international symbol of accessibility. The sign shall be illuminated when exit sign illumination is required. Signage shall also be installed at all inaccessible exits and where otherwise necessary to clearly indicate the direction to areas of rescue assistance. In each area of rescue assistance, instructions on the use of the area under emergency conditions shall be posted adjoining the two-way communication system.

**4.4 Protruding Objects.**

**4.4.1* General.** Objects projecting from walls (for example, telephones) with their leading edges between 27 in and 80 in (685 mm and 2030 mm) above the finished floor shall protrude no more than 4 in (100 mm) into walks, halls, corridors, passageways, or aisles (see Fig. 8(a)). Objects mounted with their leading edges at or below 27 in (685 mm) above the finished floor may protrude any amount (see Fig. 8(a) and (b)). Free-standing objects mounted on posts or pylons may overhang 12 in (305 mm) maximum from 27 in to 80 in (685 mm to 2030 mm) above the ground or

APP A

**Department of Justice**

**4.4 Protruding Objects**



*Fig. 8 (a)*
*Walking Parallel to a Wall*



*Fig. 8 (b)*
*Walking Perpendicular to a Wall*

**Fig. 8**
**Protruding Objects**

finished floor (see Fig. 8(c) and (d)). Protruding objects shall not reduce the clear width of an accessible route or maneuvering space (see Fig. 8(e)).

**4.4.2 Head Room**. Walks, halls, corridors, passageways, aisles, or other circulation spaces shall have 80 in (2030 mm) minimum clear head room (see Fig. 8(a)). *If vertical clearance of an area adjoining an accessible route is reduced to less than 80 in (nominal dimension), a barrier to warn blind or visually-impaired persons shall be provided (see Fig. 8(c-1)).*

## 4.5 Ground and Floor Surfaces.

**4.5.1\* General.** Ground and floor surfaces along accessible routes and in accessible rooms and spaces including floors, walks, ramps, stairs, and curb ramps, shall be stable, firm, slip-resistant, and shall comply with 4.5.

**4.5.2 Changes in Level.** Changes in level up to 1/4 in (6 mm) may be vertical and without edge treatment *(see Fig. 7(c)).* Changes in level between 1/4 in and 1/2 in (6 mm and 13 mm)

39

 

# THE HADLEY SCHOOL FOR THE BLIND

700 Elm Street
Winnetka, IL 60093-2554
(847) 446-8111
www.hadley.edu

SINCE 1920

PAGE 1 OF 2
DATE PRINTED: 7/6/06

STUDENT: Mr. Jim R. Bulgier
c/o Ms. Cotton
264 FM 3478 Estelle Unit
Huntsville, TX 77320-3322

DATE OF BIRTH: 6/5/1957

## PERMANENT ACADEMIC RECORD

| COURSE | TITLE | MEDIA | INST | ENROLL. DATE | LAST LESSON | COMP/CAN DATE | GRADE | CREDIT | CEU |
|---|---|---|---|---|---|---|---|---|---|
| OOR-101 | Orientation | C | Egoavil | 8/27/1993 | | 9/17/1993 | S | | 0.0 |
| BBS-351 | Business Management, Intro. to | C | Hersch | 10/21/1993 | 10 | 1/19/1994 | B | | 0.0 |
| BBS-151 | Business Law | C | Marshall | 2/1/1994 | 15 | 4/8/1994 | B | | 0.0 |
| BBS-401 | Managing People | C | Hersch | 3/31/1994 | 6 | 5/9/1995 | A | | 0.0 |
| BBS-501 | Selling Techniques | C | Golde | 3/31/1994 | 10 | 9/13/1994 | A | | 0.0 |
| ECE-151 | Assessing Yrself & Your Option | C | Jacobson | 3/2/1995 | 4 | 8/18/1995 | S | | 3.0 |
| ECE-201 | Job Acquisition, Principles of | C | Jacobson | 9/5/1995 | 8 | 2/27/1996 | S | | 3.0 |
| EIL-051 | Abacus 1 | C | Siegel | 5/15/1996 | 15 | 6/18/1996 | A- | | 3.0 |
| EIL-101 | Abacus 2 | C | Siegel | 6/20/1996 | 20 | 8/8/1996 | A- | | 2.0 |
| EBR-201 | Braille Reading 2 | B | Draeger | | | | A | | |
| BBS-451 | Marketing, Principles of | B | Hersch | 3/13/1997 | | 4/19/1998 | NS | | 0.0 |
| BBS-361 | Personal Fin. Planning, Intro. | C | Hersch | 8/22/1997 | 2 | 6/1/1999 | X | | 0.0 |
| EBR-601 | Using Raised Markers | C | Pamperin | 2/3/1998 | 6 | 6/5/1998 | S | | 1.0 |
| FTE-251 | Personal Computers, Intro to | C | Butow | 8/7/1998 | 2 | 7/19/1999 | X | | 0.0 |
| EBR-351 | Grade Three Braille | B | Bortz | 4/16/2001 | 9 | 4/4/2002 | WS | | 0.0 |
| EBR- | Essential | | | 4/4/2002 | | 7/8/2002 | NS | | 0.0 |
| EBR-261 | Effective Braille Reading | B | Perry | 10/27/2003 | 2 | 11/8/2004 | X | | 0.0 |
| AMA-401 | Mathematics Diagnostic Test | P | Pasinski | 12/15/2004 | | 6/22/2005 | S | | 0.0 |

GRADING SYSTEM
A   –   Excellent
B   –   Above Average
C   –   Average
D   –   Below Average
F   –   Failure
S   –   Satisfactory
U   –   Unsatisfactory
WS   –   Withrawal/Satisfactory
WT   –   Withdrawal/Transfer
X   –   Cancellation
NS   –   Non-start

**Credits** are Carnegie units. Students receive one half (0.5) unit of high school credit per semester-length course.

**CEU's** are Continuing Education Units

Accredited by:

North Central Association (NCA)

Distance Education and Training Council (DETC)

The Commission on International and Transregional Accreditation (CITA)

SIGNATURE

7/6/06
DATE

Valid as transcript only with signature of Director of Educational Services and embossed seal.

39



# THE HADLEY SCHOOL FOR THE BLIND

700 Elm Street
Winnetka, IL 60093-2554
(847) 446-8111
www.hadley.edu

SINCE 1920

PAGE:
DATE:

STUDENT:  Mr. Jim R. Bulgier
c/o Ms. Cotton
264 FM 3478 Estelle Unit
Huntsville, TX 77320-3322

DATE OF BIRTH: 6/5/1957

**PERMANENT ACADEMIC RECORD**

| COURSE | TITLE | MEDIA | INST | ENROLL. DATE | LAST LESSON | COMP/CAN DATE | GRADE | CREDIT | CEU |
|--------|-------|-------|------|--------------|-------------|---------------|-------|--------|-----|
| AMA-501 | Mathematics 2, Pre-Algebra | P | Pasinski | 11/1/2005 | | | | | |

GRADING SYSTEM
A – Excellent
B – Above Average
C – Average
D – Below Average
F – Failure
S – Satisfactory
U – Unsatisfactory
WS – Withrawal/Satisfactory
WT – Withdrawal/Transfer
X – Cancellation
NS – Non-start

**Credits** are Carnegie units. Students receive one half (0.5) unit of high school credit per semester-length course.

**CEU's** are Continuing Education Units

Accredited by:

North Central Association (NCA)

Distance Education and Training Council (DETC)

The Commission on International and Transregional Accreditation (CITA)

SIGNATURE

DATE

Valid as transcript only with signature of Director of Educational Services and embossed seal.

40

APPENdix
B.

# Braille Reading I

Take your first steps in braille reading. This course enables you to read letter-by-letter braille as well as numbers and punctuation marks. Lesson reports must be submitted in written or recorded form.

**Course ID:** E-BR-181
**Available in:** Braille with cassette or large print instructions
**Organization:** 24 lessons
**Credit:** One-half unit

## COURSE DETAILS

This course consists of 24 lessons. The braille alphabet, numbers, and punctuation marks are introduced. To show your mastery of the material, you send the instructor a handwritten, typewritten, or recorded transcription of each lesson. (Brailled reports are not accepted.) Individualized instruction is provided primarily on cassette following receipt of lessons. Short notes in braille are sent at appropriate times. You are allowed to send from one to five lessons at a time and are asked to wait for the instructor's response before sending more material.

**Prerequisite:** Basic communication skills (reading, writing, or recording)
**Grading:** Letter grade A-F
**Average Completion Time:** Nine months to two years
**Course Materials:** One braille volume and instructions on cassette or in large print

## OBJECTIVES AND CONTENT

You will be able to read all grade 1 braille, including punctuation marks, clock time, fractions, mixed numbers, dollar sign, number sign, capital sign, and decimal point.

Lessons 1-4 introduce the letters A-J, with two pages of reading practice for each lesson.
Lesson 5 introduces the number sign.
Lessons 6-11 cover the letters K through T.
Lesson 12 introduces the capital sign.
Lessons 13-15 complete the study of the alphabet.
Lesson 16 is an article on braille reading. It emphasizes methods and suggests

APPEndix B.

proper use of the fingers and hands.

Lesson 17 introduces the double capital sign, question mark, apostrophe, comma, and hyphen.

Lesson 18 is a story about Louis Braille.

Lesson 19 introduces quotation marks, semicolon, and the exclamation point.

Lesson 20 is a story entitled "The Visitor."

Lesson 21 introduces the parentheses, dash, and colon.

Lesson 22 is a story entitled "Remember the Alamo!"

Lesson 23 introduces the dollar sign, decimal point, fraction line, mixed numbers, and clock time.

Lesson 24 is the final test. It is a story entitled "Honesty Pays Off" and covers everything introduced in the course.

*APPENDIX B.*

# Braille Reading II

This course takes over where ▯Braille Reading I▯ stops. You will learn to read all the contractions of grade 2 braille and the world of literature will be at your fingertips. Lesson reports must be submitted in written or recorded form.

**Course ID:** E-BR-281
**Available in:** Braille with cassette or large print instructions
**Organization:** 28 lessons
**Credit:** One-half unit

## COURSE DETAILS

This course consists of 28 lessons. To show your mastery of the material, you send the instructor a handwritten, typewritten, or recorded transcription of each lesson. (Brailled reports are not accepted.) Individualized instruction is provided primarily on cassette following receipt of lessons. Short notes in braille are sent at appropriate times. You are allowed to send from one to three lessons at a time and are asked to wait for the instructor's response before sending more material.

**Prerequisite:** ▯Braille Reading I▯ or Braille Placement Test
**Grading:** Letter grade A-F
**Average Completion Time:** Nine months to two years
**Course Materials:** Two braille volumes and instructions on cassette or in large print

## OBJECTIVES AND CONTENT

You will learn to read any literary material transcribed in grade 2 braille.

Lesson 1 introduces the alphabetic word signs for the letters b, c, d, e, f, g, h, j, k, l, m, and n.
Lesson 2 introduces the alphabetic word signs for the letters p, q, r, s, t, u, v, w, x, y, and z.
Lesson 3 introduces the whole- and part-word signs and, for, of, the, and with.
Lesson 4 introduces the whole- and part-word signs ch (child), sh (shall), th (this), wh (which), ou (out), and st (still).
Lesson 5 introduces the short-form words about, above, according, across, after, afternoon, afterward, again, against, almost, already, also, although, altogether, and

43



# Effective Braille Reading

For braille readers at all levels of interest and proficiency, this is a practical guide to increased skill and enjoyment in braille reading. Topics include speed, accuracy, flexibility, comfort, variety, and comprehension in reading.

**Course ID:** E-BR-261
**Available in:** Braille
**Organization:** Six lessons
**Credit:** None

## COURSE DETAILS

Using the textbook, a practice anthology, and a timer, you are expected to accomplish short projects. Results of these projects are part of the examination which follows each lesson. For each of the first five lessons, the examination is short, consisting of four to seven questions. For the final lesson there is a longer examination, including objective questions and discussions.

**Prerequisites:** Elementary knowledge of grade 2 braille. Ability to write braille is preferred but not required. Exams are acceptable in any format. However, you are encouraged to report in braille, in typewriting, or via computer diskette.
**Grading:** Letter grade A-F. Slowness or problems in reading will not cause a lowering of the grade. As long as you report conscientiously, the grade is normally A. Grades of A plus indicate extra effort, notable proficiency, or remarkable progress.
**Average Completion Time:** Three to six months
**Course Materials:** Textbook (one braille volume) and Hadley anthology for practice in reading (one volume)

## OBJECTIVES AND CONTENT

Lesson 1: Opening the Books
When you complete this lesson, you will be able to:
a)   increase your awareness and enthusiasm about the possibilities of braille reading
2)   facilitate a review of grade 2 braille contractions if necessary

Lesson 2: Warming Up

44

When you complete this lesson, you will be able to:
3)   introduce you to ▯unreading,▯ an exercise in flexibility
4)   encourage you to develop greater flexibility and fitness in all physical activities

Lesson 3: Looking for Bits and Pieces
When you complete this lesson, you will be able to:a)      introduce ▯bits and pieces,▯ an
exercise in flexibility and random recognition
5)   encourage wise and effective use of practice sessions
6)   emphasize perseverance

Lesson 4: Comprehending More and More
When you complete this lesson, you will be able to:a)      explain general comprehension and
full comprehension
7)   present techniques used by experienced braille readers

Lesson 5: Learning New Techniques
When you complete this lesson, you will be able to:a)      explain a variety of techniques
     (selective reading, use of tables and titles,      sampling, subvocalization)

## Lesson 6: Continuing to Grow
When you complete this lesson, you will be able to:a)      present innovative ideas
(▯tricks of the trade,▯ copying, and comparing)
8)   help you find and obtain a variety of braille publications
9)   explain the uses of a variety of reading speeds
10)  encourage innovative ideas and the happy utilization of braille

45



always.

Lesson 6 introduces the part-word signs gh, ed, er, ow, and ar.

Lesson 7 introduces the part-word signs ing and ble.

Lesson 8 introduces the short-form words blind, braille, children, could, good, should, would, paid, and said.

Lesson 9 introduces the short-form words either, neither, friend, first, much, must, immediate, today, tomorrow, and tonight.

Lesson 10 introduces the whole-word and part-word lower signs en (enough) and in (in).

Lesson 11 introduces the part-word lower signs be, con, dis, and com.

Lesson 12 introduces the short-form words because, before, behind, below, beneath, beside, between, and beyond.

Lesson 13 introduces these braille composition signs: capital sign, italic sign, number sign, and letter sign.

Lesson 14 introduces the short-form words conceive, conceiving, deceive, deceiving, perceive, perceiving, declare, declaring, rejoice, and rejoicing.

Lesson 15 introduces the part-word lower signs ea, bb, cc, dd, ff, and gg.

Lesson 16 introduces the short-form words great, letter, little, necessary, o'clock, perhaps, quick, and together.

Lesson 17 introduces the whole-word lower signs to, into, and by.

Lesson 18 introduces the whole-word lower signs be, were, his, was, in, and enough.

Lesson 19 introduces the dot-5 initial-letter contractions day, ever, father, here, know, lord, mother, name, and one.

Lesson 20 introduces the dot-5 initial-letter contractions part, question, right, some, time, under, work, and young.

Lesson 21 introduces the dot-5 initial-letter contractions there, character, through, where, and ought.

Lesson 22 introduces the short-form words him, himself, herself, oneself, your, yourself, its, itself, myself, thyself, ourselves, and themselves.

Lesson 23 introduces the dots 4-5 initial-letter contractions upon, word, these, those, and whose.

Lesson 24 introduces the dots 4-5-6 initial-letter contractions cannot, had, many, spirit, world, and their.

Lesson 25 introduces the dots 4-6 final-letter contractions ound, ance, sion, less, and ount.

Lesson 26 introduces the dots 5-6 final-letter contractions ence, ong, ful, tion, ness, ment, and ity.

Lesson 27 introduces the dot-6 final-letter contractions ation and ally.

APPENDIX A

Lesson 28 is the final test and consists of reading practice for abbreviations of measurement, ellipsis, accent mark, and asterisk. Most students are allowed to choose between two selections, ☐ABCs for the Kitchen☐ and ☐Beyond the Armchair☐ as their final assignment.

*"These Documents was submitted into evidence"*

*Appendix C.*

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Montez vs. Owens
Case *92-N-870
Consolidated with: Case *96-N-343
Individual Damage Claim #02-488

---

**Request for Court to Order**
**Clerk to Provide and make Photocopies of Documents**

COMES NOW, I Jimmy Bulgier (Plaintiff) acting Pro-se in the above cause do hereby request this Honorable Court to Order the Clerk of this Court to make and provide photocopies of the attached documents for the following grounds:

➢ Plaintiff Bulgier is totally indigent and does not have moneys to purchase or hire a copy service to make copies of attached documents. The Texas Dept. of Criminal Justice – Institutional Division (T.D.C.J.-I.D.) does not permit their prison inmates to have access to any photo coping equipment.
➢ Plaintiff Bulgier is not able to make specific documents available to the U.S. Assistant Attorney General (James X. Quinn). For the reasons stated above.

Plaintiff Bulgier request this Honorable Court to Order the Clerk of this Court to make copies of the attached (See enclosure documents for the following parties;)

➢ This Court,
➢ Plaintiff Bulgier (See address below) and
➢ Defendant's Counsel (James X. Quinn).

And mail them to the following parties;

Plaintiff:
Jim Bulgier TDCJ #902732
264 FM 3478 / Estelle Unit
Huntsville, Texas  77320-3322

Mr.James X. Quinn
Assistant Attorney General
Litigation Section
1525 Sherman Street, 5ᵗʰ Floor
Denver, Colorado  80203

Defendant's Counsel:

Respectfully submitted on this 24ᵗʰ Day of June, 2005.

Signature: _____

Jim Bulgier  TDCJ #902732

Enclosures:
➢ **Grievances:**

| Grievance: | Date: | Step Number: | Grievance Number: |
|---|---|---|---|
| 95/96-139 (Handwritten) | 01-03-96 | 3#1 | |
| 95/96-139(a) (Handwritten) | 01-10-96 | #2 | |
| 95/96-139(a) | no date | #2 | |

48

APPINd.x
C.

| (Type Written) | | | |
|---|---|---|---|
| 95/96-266 | 03-24-95 | #1 | |
| 95-092 | 05-16-95 | #1 | |
| 93-225 | 12-07-93 | #1 | |
| 95-164 | 09-12-95 | #1 | |
| 95/96-249 | 03-20-96 | #1 | |
| 93-145 | 07-26-93 | | |

| Grievance #: | Dates: | Step # |
|---|---|---|
| 95/96-139 | 01-03-96 | 3#1 |
| *(hand written)* | | |
| 95/96-139(A) | 01-10-96 | #2 |
| *(hand written)* | | |
| 95/96-139 (A) | no date | #2 |
| *(type written)* | | |
| 94/95-266 | 03-24-95 | #1 |
| 95-092 | 05-16-95 | #1 |
| 93-225 | 12-07-93 | #1 |
| 95-164 | 09-12-95 | #1 |
| 95/96-249 | 03-20-96 | #1 |
| 93-145 | 07-26-93 | |

➢ **Time Computation Report (3 pages)**

➢ **Medical Report, Descriptions etc. from Dr. Avi Deshmukh.  (42 pages)**

49

*Append. C.*

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case #92-N-870
Montez vs Owens
Consolidated with: Case #96-N-343
Individual Damage Claim #-2-488

Plaintiff's ?Second Written Request
For this Court to Consider and Rule on
Plaintiff's "Request for 120 Day Extension of Time" and
Plaintiff's "Request for Order and Subpoena of Documents in Discovery"

COMES NOW, I, Jimmy Bulgier, Acting Pro-se in the above cause do hereby RESPECTFULLY
REQUEST that this Honorable Court review and consider three (3) REQUESTS which Plaintiff Bulgier
mailed to this Court on March 31, 2005 and April 6, 2005. Plaintiff feels that perhaps the Court Clerk
overlooked these filings and perhaps they were not brought to this Court' attention. Plaintiff respectfully
requests this court to respond to Plaintiff's three (3) written Requests within a reasonable amount of time.

Plaintiff's requests were as follows:

1.  **Request for 120 day Extension of Time:**
2.  On March 31, 2005, Plaintiff Bulgier filed via ail his Request for 120 Day Extension of Time for the
    following reasons as stated in the request.

A: All of Plaintiff Bulgier's "Individual Damage Claim forms were typed in to the computer. During a
routine shake-down and lock-down, all of Plaintiff Bulgier's legal documents were deleted from the
computer by prison staff. This fact was supported by two Affidavits from Thomas Goodson (the Manager
of Adaptive Resources where the computers are) and by Ricardo Sirna (an inmate who has been assisting
Plaintiff Bulgier since he cannot see the computer screen).

Plaintiff Bulgier needed the Extension of Time in order to retype the Individual Damage Claim forms back
in to the computer and needed time to revise any errors.

Time to gather documents from the Colorado Dept. of Corrections in order to provide dates, times locations
and their information which the Court requires on the Individual Damage Claim forms. (See items 2 and 3
below.)

3.  **Plaintiff's Request for Order and Subpoena of Documents in Discovery**

On March 31, 2005, Plaintiff Bulgier Requested this Honorable Court to ORDER and Subpoena
Documents from the Colorado Dept. of Corrections in order for Plaintiff Bulgier to provide an accurate and
true Individual Damage Claim form. Such items as dates, times and accurate information is required on
these forms.

Plaintiff Bulgier did state that he is INDIGIENT AND CANNOT
PAY FOR ANY REQUESTED DOCUMENTS as per the Courts

*50*

Appendix C

# Order of December 2004.
Plaintiff requests that this Honorable court Order the Colorado Dept. of Corrections to send to Plaintiff the following documents:

a) Medical documents pertaining to his surgery at the Colorado State Hospital in 1996.

b) Medical documents pertaining to his burn on his hand from C.T.C.F. in 1996.

c) Education Records from C.T.C.F. which reflects he dates and times that Plaintiff Bulgier attended "Family Life Skills" class three (3) times from 1993 through 1996.

d) An Sworn Affidavit from C.T.C.F.'s "Family Life Skills" class Instructor Frank Sarek reflecting that Plaintiff Bulgier was placed in Family Life Skills" three times because C.T.C.F. staff refused to provide jobs for blind inmates. And Frank Sareks statement stating that he refused to admit Plaintiff Bulgier to "Family Life Skills" class for a forth (4th) time.

e) All Step 1 and Step 2 grievances which Plaintiff Bulgier documented with D.O.C. in several Written letters and of which copies where filed with this court.

f) All Inmate to Staff Communications forms which Plaintiff filed with C.T.C.F. staff from 1993 through 1997 pertaining to A.D.A. Accommodations, medical, Mental Health, Law Library, etc.

4. **Plaintiff's Request for Order and Subpoena of Documents in Discovery:**

On April 6, 2005, Plaintiff Bulgier filed his request to this Court "Request for Order and Subpoena of Documents in Discovery" against Dr. Avi Deshmukh in Stevenville, Texas in order to obtain MEDICASL DOCUMENTS in support of Plaintiff's Individual Damage Claim and injury while in C.T.C.F. / Freemont Facility 8n 1994 through 1996. Defendant Jerry Kimbrel knowingly had Plaintiff Bulgier moved to a more violent facility where Plaintiff Bulgier was savagely attacked. The Colorado State Hospital in Pueblo, Colorado claimed they performed surgery to remove a piece of plastic from Plaintiff Bulgier's bladder . Plaintiff Bulgier requested the Medical records from Dr. Avi Deshmukh who performed corrective surgery and such documents will prove to this court that Plaintiff Bulgier under gone pain and suffering for several years while in C.T.C.F. and Plaintiff Bulgier had to get Dr. Deshmukh to correct the problem after his discharge in 1997. Plaintiff has most of the needed documents from Dr. Deshmukh's office, however, Plaintiff Bulgier requires the following from Dr. Deshmukh and seeks this Courts Order to Dr. Deshmukh for release of the documents in support of Plaintiff Bulgier's Individual Damage Claim:

a) Lab Report showing that a piece of plastic was found in side of the Kidney Stone and the Kidney stone was formed as a result of the presence of plastic in Plaintiff Bulgier's bladder.

b) An Affidavit from Dr. Deshmukh stating that a piece of plastic was found in side of the Kidney Stone and the Kidney Stone was formed as a result of the presence of the plastic in Plaintiff Bulgier's bladder.

c) That the size of the Kidney Stone and plastic found in Plaintiff Bulgier's bladder did cause considerable pain and suffering as well as trouble in urination.

51

Appendix C.

**Plaintiff's Indigent Status**

Plaintiff Bulgier is totally indigent and has no moneys or funds in order to pay D.O.C. for any documents. Plaintiff Bulgier requests this Honorable Court to wave the requirements for Plaintiff Bulgier to pay for documents from D.O.C. (See Plaintiff Bulgier financial statement filed with this court in 2003 or 2004.)

Plaintiff Bulgier is NOT EDUCATED IN THE LAW and does not know how to properly word his written Requests for Documents. It is Plaintiff Bulgier's intent to ask this Honorable Court to Order the Defendants (Colorado Dept. of Corrections and Instructor Fran Sarek) for the above requested documents. To ask this Honorable Court to Order Dr. Avi Deshmukh to release the above requested Medical documents.

Plaintiff asks this Honorable Court to order these parties to release these documents and to send them to Plaintiff Bulgier so he may complete his Individual Damage Claim forms in an accurate and true manner. Plaintiff Bulgier is not educated in Civil Law and asks this court to ORDER the parties either by a Subpoena or by any other means necessary in order to comply with Plaintiff Bulgier's requests for Documents.

Respectfully submitted on this 31st day of May, 2005.

Signature: _____

Jim Bulgier  TDCJ #902732
264 FM 3478 / Estelle Unit
Huntsville, Texas  77320-3322

52

APP D

```
= INMATE SCHED ======== QUERY OFFENDER PROGRAMS ========= 01/10/2006 = Page  1
  oc No: 69812   Name: BULGIER, JIMMY R                    HISTORY    SENT DIS

urrent Custody Level: MEDIUM
```

| Status | Facility | Program | Start Date | End Date |
|--------|----------|---------|-----------|----------|
| MPS/HIST | CTCF | HEALTH | 04/21/1997 | 08/18/1997 |
| MPS/HIST | CTCF | TRANSITION | 04/21/1997 | 08/18/1997 |
| MPS/HIST | CTCF | 7 RB UNASSIGNED | 04/19/1997 | 04/20/1997 |
| MPS/HIST | CTCF | HANDICAPPED WORKERS | 10/24/1996 | 04/18/1997 |
| MPS/HIST | CTCF | FD SV/AM DINING ROOM | 12/27/1995 | 10/23/1996 |
| MPS/HIST | CTCF | 7 RB UNASSIGNED | 10/13/1995 | 12/25/1995 |
| MPS/HIST | CTCF | SUPPORT GROUP TUE | 06/16/1995 | 09/12/1995 |
| MPS/HIST | CTCF | TAB OPERATIONS/CORR INDUSTRIES | 06/15/1995 | 10/12/1995 |
| MPS/HIST | CTCF | SOTP PH IB ORIENTATION MR/DD | 01/23/1995 | 12/31/1995 |
| MPS/NOAC | CTCF | SOTP PHASE I | 09/26/1995 | |
| MH/NTRPT | CTCF | SUPPORT GROUP FOR INMATES W/ | 02/07/1995 | 05/30/1995 |
| MH/NTRPT | CTCF | PH 1B MR/DD ORIENTATION | 02/20/1995 | 06/26/1995 |
| MH/WAITL | CTCF | SEX OFFENDER TREATMENT PROGRAM | 03/21/1994 | |
| MH/HISTR | CTCF | MH BASIC PROGRAM FOCN ANGER MG | 02/07/1994 | 03/03/1994 |

53

APP. E 1.

## STATE OF COLORADO
## DEPARTMENT OF CORRECTIONS
## PROGRESS ASSESSMENT SUMMARY

DC Form 550-1o-(1-11-93)

| INITIAL PROGRESS | | |
|---|---|---|
| INMATE NAME:<br>BULGIER, Jimmy | DOC NUMBER:<br>69812 | CUSTODY LEVEL:<br>MINIMUM RESTRICTIVE |
| FACILITY:<br>Fremont | NEXT SUMMARY:<br>05/12/95 | PAROLE DATE<br>OR NEXT HEARING DATE:<br>04/02/95 |
| CASE MANAGER:<br>E.F. CALEY | | |

**4 _ 3** WORK:
Bulgier has been assigned to Food Service since 05/13/94, he works wrapping plastic ware. He consistently receives above average work ratings.

**ACAD.**
**2 _ 2** ACADEMIC/VOCATIONAL:
**VOCAT** No participation in this area during this review period.
**2 _ 2**

**4 _ 4** MEDICAL:
Rated M-4, Bulgier is legally blind and has epilepsy. He can only be housed on the 1st tier and only on the bottom bunk.

**ALCOHOL**
**2 _ 2** SUBSTANCE ABUSE:
No programs are being recommended in this area at this time.
**DRUGS**
**1 _ 1**

**5 _ 5** SEXUAL VIOLENCE:
Bulgier is currently on the waiting list for SOTP, he will be sent to CTCF to participate in their SOTP program for inmates with disabilities.

**3 _ 3** PSYCHOLOGICAL:
Bulgier completed Basic Mental Health Group on 04/01/94. No participation in this area during this review period.

**2 _ 2** LEISURE TIME:
No indication of inappropriate use of leisure time during this review period.

**1 _ 1** CONDUCT:
Bulgier has remained report free during incarceration.

**3 _ 3** PRE-RELEASE:

54

AP.E B/2

STATE OF COLORADO
DEPARTMENT OF CORRECTIONS
PROGRESS ASSESSMENT SUMMARY

DC Form 650-1c-(1-11-93)

| | | INMATE NAME: | DOC NUMBER: | CUSTODY LEVEL: |
|---|---|---|---|---|
| I N I T I A L | P R O G R E S S | BULGIER, Jimmy | 69812 | Medium |
| | | FACILITY:<br>CTCF  CH-7 | NEXT SUMMARY: | PAROLE DATE<br>OR NEXT HEARING DATE: |
| | | CASE MANAGER:<br>James Webber | 5/12/94 | 9/30/95 |

| | |
|---|---|
| 4  3<br>—  — | **WORK:**    Since arrival at DOC, subject has had one assignment to Personal Relations/Life Skills from 7/1/93 to 8/27/93.  He successfully completed this class.  He is currently unassigned. Subject is blind, which limits the employment options at CTCF. |
| ACAD.<br>2  2<br>VOCAT<br>2  2 | **ACADEMIC/VOCATIONAL:**    Subject is a high school graduate with an AA degree in small engine repair.  Subject shows an interest in furthering his education.  It is recommended that he obtain a vocational skill that he can do with his condition. |
| 4  4<br>—  — | **MEDICAL:**    Subject is rated M-4 due to his blindness.  He is also known to have seizures, although he has not had a seizure since 1991.  He is not on medication to control them. |
| ALCOHOL<br>2  2<br>DRUGS<br>1  1 | **SUBSTANCE ABUSE:**    Subject was referred to Mental Health staff this month.  The Diagnostic Summary shows inmate Bulgier could benefit from substance abuse counseling.  Currently awaiting recommendations. |
| 5  5<br>—  — | **SEXUAL VIOLENCE:**    Subject is a convicted sex offender with another prior offense, similarly related.  He was referred to Mental Health for treatment in this area.  No participation to date. |
| 3  3<br>—  — | **PSYCHOLOGICAL:**    Subject has been undergoing counseling since 1983 for a sex related offense.  He will be recommended to complete Basic Mental Health.  No participation to date since this conviction. |
| 2  2<br>—  — | **LEISURE TIME:**    Subject is limited in activities due to his condition. He keeps busy with his tapes from special education and the Hadley Institue and gets around  the facility well on his own. |
| 1  1<br>—  — | **CONDUCT:**    Subject has remained report free during this initial six month review period.  He is not a management problem. |
| 3  3<br>—  — | **PRE-RELEASE:**    Subject would like to eventually parole to his common-law wife in Thornton, CO.  His PED is 9/30/95. |

55

APP E Pg3

## STATE OF COLORADO
## DEPARTMENT OF CORRECTIONS
### PROGRESS ASSESSMENT SUMMARY

DC Form 550-1c-(1-11-83)

| I N I T I A L | P R O G R E S S | INMATE NAME:<br><br>BULGIER,JIMMY | DOC NUMBER:<br><br>69812 | CUSTODY LEVEL:<br><br>MINIMUM/R |
|---|---|---|---|---|
| | | FACILITY:<br>CTCF | NEXT SUMMARY: | PAROLE DATE<br>OR NEXT HEARING DATE: |
| | | CASE MANAGER:<br>RENE MURPHY | 05/16/97 | PAST |

| | |
|---|---|
| ← ← | **WORK:**<br><br>SUBJECT IS EMPLOYED AT THE KITCHEN AS OF <u>10/24/96</u>.WORK EVAL ARE SATISFACTORY HE DID REMAIN UNASSIGNED FROM <u>10/13/95-12/25/95</u>. |
| **ACAD.**<br>— —<br>**VOCAT**<br>2   2 | **ACADEMIC/VOCATIONAL:**<br><br>NO NEEDS LISTED. |
| — —<br>4   4 | **MEDICAL:**<br><br>LEGALLY BLIND AND EPILEPTIC. |
| **ALCOHOL**<br>— —<br>**DRUGS**<br>— —<br>1   1 | **SUBSTANCE ABUSE:**<br><br>No NEEDS IN THIS AREA. |
| — —<br>5   5 | **SEXUAL VIOLENCE:**<br><br>ON 1/9/96 HE WAS TERM FROM SOTP 1-B DUE TO UNEXCUSED ABSENCE. IT IS STILL BEING RECOMMENDED. |
| 5   4 | **PSYCHOLOGICAL:**<br><br>CURRENTLY ASSESSED W/NEED FOR SOCIAL SKILLS.SUBJECT WAS INVOLVED BUT DECIDED HE DIDNT NEED THIS AND QUIT. NOTE HE HAS A SEVERE DEFICIT IN THIS AREA. CONTINUES TO BE RECOMMENDED. |
| — —<br>3   3 | **LEISURE TIME:**<br><br>SUBJECT USES HIS LIESURE TIME  FILING LAWSUITS AND COURT PAPERWORK. AND FILING GRIEVANCES. |
| — —<br>1   2 | **CONDUCT:**<br><br>No COPD convictions. |
| — — | **PRE-RELEASE:** |

App F
PB1

# DEPARTMENT OF CORRECTIONS

DC Form 85O-3
(6/93 Version)

# EMPLOYMENT/ACADEMIC/VOCATIONAL EVALUATION

FACILITY _____ CTCF _____ CH7-WEBBER

| NAME BULGIER, James | DOC NO: 69812 | EVALUATING PROGRAM: EMPLOYMENT ☐ ACADEMIC ☒ VOCATIONAL ☐ |
|---|---|---|

| INMATE PROGRAM ASSIGNMENT L/S & P/R | HALF DAY ☐ FULL DAY ☒ | DATE ASSIGNED 11/28/94 | CURRENT PAY RATE 1/1 |
|---|---|---|---|

| REPORT DATES FROM: 01-01-95 TO 01-31-95 | 4 OUT-STANDING | 3 ABOVE AVERAGE | 2 SATIS-FACTORY | 1 NEEDS IMPROVEMENT | 0 UNSATIS-FACTORY | RATING |
|---|---|---|---|---|---|---|
| 1. WORK HABITS Consider: Promptness, dependability, absence, use of time. | ( ✓ ) | ( ) | ( ) | ( ) | ( ) | 4 |
| 2. RESPONSE TO SUPERVISION: Consider: Knowledge/skills and amount of supervision needed. | ( ✗ ) | ( ) | ( ) | ( ) | ( ) | 4 |
| 3. ATTITUDE: Consider: Work relationships with fellow workers and staff; willingness to cooperate, motivation, initiative. | ( ✓ ) | ( ) | ( ) | ( ) | ( ) | 4 |
| 4. QUANTITY OF WORK: Consider: Does amount of work meet standards? | ( ✓ ) | ( ) | ( ) | ( ) | ( ) | 4 |
| 5. QUALITY OF WORK: Consider: Does work meet standards for accuracy, thoroughness, neatness? | ( ✓ ) | ( ) | ( ) | ( ) | ( ) | 4 |
| 6. CARE AND SAFETY: Consider: Correct use and care of equipment, tools and supplies; proper safety precautions followed. | ( ✓ ) | ( ) | ( ) | ( ) | ( ) | 4 |

STATUS/DISPOSITION

☐ Continue Assignment

☒ Terminate (d) Assignment on ___3___ (day), ___2___ (month), __95__ (year), _____ because of

| | TOTAL | 24 |
|---|---|---|
| | AVERAGE RATING | 4.0 |

_✗_ Successful completion         _ Facility Transfer         _ Sentence Discharge

_✗_ By Instructor/supervisor      _ Parole                    _ Inmate Request

_ Other, specify _____

---

ACADEMIC: (Complete if applicable)

Current Grade Placement_____

Received GED: ☐ YES   ☐ NO

If yes, specify date: _____

Post Secondary Credit   ☐ NO   ☐ YES

If yes, specify date: _____ Hours _____

VOCATIONAL: (Complete if Applicable)

No. Hours: _____ Date _____completed

Vocational area: _____

Vocational Certificate earned:

☐ NO   ☐ YES

If yes, specify date: _____ Type _____

---

REMARKS/COMMENTS:

*will successfully complete classes on 2/3/95*

57

s/ _____ Supervisor/Instructor   1/31/95 Date

App F
Pg 2

# DEPARTMENT OF CORRECTIONS
# EMPLOYMENT/ACADEMIC/VOCATIONAL EVALUATION

DC Form 850-3
(6/93 Version)

FACILITY ___C.T.C.F. CH 7___

| INMATE NAME BULGIER, JIM | DOC NO: 69812 | EVALUATING PROGRAM: | EMPLOYMENT ☒ | ACADEMIC ☐ | VOCATIONAL ☐ |
|---|---|---|---|---|---|

INMATE PROGRAM ASSIGNMENT __TAB-HAND PACKAGER__    HALF DAY ☐  FULL DAY ☒    DATE ASSIGNED 5-22-95    CURRENT PAY RATE __4__

REPORT DATES FROM: 5-26-95    TO: 6-25-95

| | 4 OUT-STANDING | 3 ABOVE AVERAGE | 2 SATIS-FACTORY | 1 NEEDS IMPROVEMENT | 0 UNSATIS-FACTORY | RATING |
|---|---|---|---|---|---|---|
| 1. WORK HABITS Consider: Promptness, dependability, absence, use of time. | ( ) | (✓) | ( ) | ( ) | ( ) | 3 |
| 2. RESPONSE TO SUPERVISION: Consider: Knowledge/skills and amount of supervision needed. | ( ) | ( ) | (✓) | ( ) | ( ) | 2 |
| 3. ATTITUDE: Consider: Work relationships with fellow workers and staff; willingness to cooperate, motivation, initiative. | ( ) | (✓) | ( ) | ( ) | ( ) | 3 |
| 4. QUANTITY OF WORK: Consider: Does amount of work meet standards? | ( ) | ( ) | (✓) | ( ) | ( ) | 2 |
| 5. QUALITY OF WORK: Consider: Does work meet standards for accuracy, thoroughness, neatness? | ( ) | (✓) | ( ) | ( ) | ( ) | 3 |
| 6. CARE AND SAFETY: Consider: Correct use and care of equipment, tools and supplies; proper safety precautions followed. | (✓) | ( ) | ( ) | ( ) | ( ) | 4 |

STATUS/DISPOSITION

✓ Continue Assignment

TOTAL __17__

AVERAGE RATING __2.83__

☐ Terminate (d) Assignment on _____ (day), _____ (month), _____ (year), _____ because of

__ Successful completion          __ Facility Transfer          __ Sentence Discharge

__ By Instructor/supervisor       __ Parole                     __ Inmate Request

__ Other, specify _____

ACADEMIC: (Complete if applicable)

Current Grade Placement _____

Received GED  ☐ YES  ☐ NO

If yes, specify date: _____

Post Secondary Credit  ☐ NO  ☐ YES

If yes, specify date: _____ Hours _____

VOCATIONAL: (Complete if Applicable)

No. Hours: _____ Date _____ completed

Vocational area: _____

Vocational Certificate earned:

☐ NO  ☐ YES

If yes, specify date: _____ Type _____

REMARKS/COMMENTS:

58

S/ ___C. Haynes D.B.Burrous  gns 6/23/95___
Supervisor/Instructor          Date

App F.
Pg 3

# DEPARTMENT OF CORRECTIONS
## EMPLOYMENT/ACADEMIC/VOCATIONAL EVALUATION

DC Form 850-3
(6/93 Version)

### FACILITY   C.T.C.F. CH 7

| INMATE NAME BULGIER, JIM | DOC NO: 69812 | EVALUATING PROGRAM: | EMPLOYMENT ☒ | ACADEMIC ☐ | VOCATIONAL ☐ |
|---|---|---|---|---|---|

| INMATE PROGRAM ASSIGNMENT TAB--HAND PACKAGER | HALF DAY ☐ FULL DAY ☒ | DATE ASSIGNED 5-22-95 | CURRENT PAY RATE |
|---|---|---|---|

REPORT DATES FROM: 5-22-95   TO: 5-25-95

| | 4 OUT-STANDING | 3 ABOVE AVERAGE | 2 SATIS-FACTORY | 1 NEEDS IMPROVEMENT | 0 UNSATIS-FACTORY | RATING |
|---|---|---|---|---|---|---|
| 1. WORK HABITS Consider: Promptness, dependability, absence, use of time. | (✓) | ( ) | ( ) | ( ) | ( ) | 4 |
| 2. RESPONSE TO SUPERVISION: Consider: Knowledge/skills and amount of supervision needed. | ( ) | (✓) | ( ) | ( ) | ( ) | 3 |
| 3. ATTITUDE: Consider: Work relationships with fellow workers and staff; willingness to cooperate, motivation, initiative. | ( ) | (✓) | ( ) | ( ) | ( ) | 3 |
| 4. QUANTITY OF WORK: Consider: Does amount of work meet standards? | ( ) | ( ) | ( ) | (✓) | ( ) | 1 |
| 5. QUALITY OF WORK: Consider: Does work meet standards for accuracy, thoroughness, neatness? | ( ) | ( ) | (✓) | ( ) | ( ) | 2 |
| 6. CARE AND SAFETY: Consider: Correct use and care of equipment, tools and supplies; proper safety precautions followed. | ( ) | (✓) | ( ) | ( ) | ( ) | 3 |

### STATUS/DISPOSITION

✓ Continue Assignment

| | |
|---|---|
| TOTAL | 16 |
| AVERAGE RATING | 2.67 |

☐ Terminate (d) Assignment on _____ (day), ____ (month), _____ (year), _____ because of

__ Successful completion      __ Facility Transfer      __ Sentence Discharge

__ By Instructor/supervisor      __ Parole      __ Inmate Request

__ Other, specify _____

### ACADEMIC: (Complete if applicable)

Current Grade Placement _____

Received GED: ☐ YES   ☐ NO

If yes, specify date: _____

Post Secondary Credit   ☐ NO   ☐ YES

If yes, specify date: _____ Hours _____

### VOCATIONAL: (Complete if Applicable)

No. Hours: _____ Date _____ completed

Vocational area: _____

Vocational Certificate earned:

☐ NO   ☐ YES

If yes, specify date: _____ Type _____

### REMARKS/COMMENTS:

59

Supervisor/Instructor   D. Haynes DRB 26 may 95   Date

APP F:
P34

# DEPARTMENT OF CORRECTIONS
# EMPLOYMENT/ACADEMIC/VOCATIONAL EVALUATION
## FACILITY _____ CTCF _____ CH7-WEBBER

| DATE BULGIER, James | DOC NO: 69812 | EVALUATING PROGRAM: | EMPLOYMENT ☐ | ACADEMIC ☒ | VOCATIONAL ☐ |
|---|---|---|---|---|---|

INMATE PROGRAM ASSIGNMENT PER L/S   HALF DAY ☒   FULL DAY ☐   DATE ASSIGNED 01/31/94   CURRENT PAY RATE 1/1

REPORT DATES FROM: 03-01-94 TO 03-31-94

| | 4 OUT-STANDING | 3 ABOVE AVERAGE | 2 SATIS-FACTORY | 1 NEEDS IMPROVEMENT | 0 UNSATIS-FACTORY | RATING |
|---|---|---|---|---|---|---|
| 1. WORK HABITS Consider: Promptness, dependability, absence, use of time. | ✓ | ( ) | ( ) | ( ) | ( ) | 4 |
| 2. RESPONSE TO SUPERVISION: Consider: Knowledge/skills and amount of supervision needed. | (✓) | ( ) | ( ) | ( ) | ( ) | 4 |
| 3. ATTITUDE: Consider: Work relationships with fellow workers and staff; willingness to cooperate, motivation, initiative. | (✓) | ( ) | ( ) | ( ) | ( ) | 4 |
| 4. QUANTITY OF WORK: Consider: Does amount of work meet standards? | (✓) | ( ) | ( ) | ( ) | ( ) | 4 |
| 5. QUALITY OF WORK: Consider: Does work meet standards for accuracy, thoroughness, neatness? | ✓ | ( ) | ( ) | ( ) | ( ) | 4 |
| 6. CARE AND SAFETY: Consider: Correct use and care of equipment, tools and supplies; proper safety precautions followed. | ✓ | ( ) | ( ) | ( ) | ( ) | 4 |

STATUS/DISPOSITION

| | TOTAL | 24 |
|---|---|---|
| | AVERAGE RATING | 4.0 |

_ Continue Assignment

☒ Terminate (d) Assignment on 8 (day), 4 (month), 94 (year), _____ because of

☒ Successful completion      _ Facility Transfer      _ Sentence Discharge

_ By Instructor/supervisor      _ Parole      _ Inmate Request

_ Other, specify_____

ACADEMIC: (Complete if applicable)

Current Grade Placement_____

Received GED: ☐ YES   ☐ NO

If yes, specify date:_____

Post Secondary Credit   ☐ NO   ☐ YES

If yes, specify date: _____ Hours _____

VOCATIONAL: (Complete if Applicable)

No. Hours:_____ Date _____ completed

Vocational area: _____

Vocational Certificate earned:

☐ NO   ☐ YES

If yes, specify date:_____ Type _____

REMARKS/COMMENTS: will successfully complete class on 4/8/94

60

S/ Paul Savel   3/31/94
Supervisor/Instructor   Date

```
      C O L O R A D O   D E P A R T M E N T   O F   C O R R E C T I O N S
         O F F I C I A L   T I M E   C O M P U T A T I O N   R E P O R T
```

### *** AS OF: 08/04/1997 ***

```
COMMITTMENT NAME (LAST,FIRST,MI)               DOC NUMBER  FACILITY     LIVING UNIT
---------------------------------------------  ----------  ----------   ----------
BRIGIER, JIMMY R                               69812       TERITORIAL   CTCF/CH7
```

INSTRUCTIONS: The above inmate's projected eligibility dates have been
              established or adjusted for the reasons listed below and
              this report nullifies any previous computations.

REASON(S) FOR
  ADJUSTMENT: MERIT/EARNED TIME AWARD

     REMARKS: FW

SENTENCES IMPOSED:

```
SEN        DOCKET                    MINIMUM     MAXIMUM   CS JAIL JAIL T EFF DATE
NO. COUNTY (MITTIMUS)  OFFENSE     YR MO DAY  YR MO DAY  TO TIME CRED Y YR MO DA
--- ------ ----------  ---------   -- -- ---  -- -- ---  -- ---- ---- - -- -- --
B 2 ADAMS  92CR1416    SXASCHLD     6- 0-  0   6- 0-  0   0   0   10   10 B 92-12-30
* M = Max Governing Sentence(s), N = Min Governing Sentence(s), B = Both
  P After the Docket Number Indicates that Subject has begun Serving the
  Mandatory Parole Period Portion of the Sentence Imposed.
```

COMPUTATIONAL TIME PERIODS:

```
   FROM--      ---TO---     -LENGTH-                                 NULL TIME
  YR MO DA    YR MO DA    YR MO DA TYPE OF TIME PERIOD               APPLICABLE
  -- -- --    -- -- --    -- -- -- ------------------------------    ----------
  93 05 05    97 08 04     4- 2-29 INCARCERATION
  92 12 30    93 05 05     0- 4- 5 DELIVERY TIME
```

TIME AWARDED OR LOST:

```
         TRANS DATE      AMOUNT
         YR MO DA        (DAYS)       TYPE          REASON
         -- -- --        ------     ----------    ----------
         97 06 01          7        ERND TIME     AWARDED
         97 05 01          7        ERND TIME     AWARDED
         97 04 01          7        ERND TIME     AWARDED
         97 03 01          7        ERND TIME     AWARDED
         97 02 01          7        ERND TIME     AWARDED
         97 01 01          7        ERND TIME     AWARDED
         96 12 01          7        ERND TIME     AWARDED
         96 11 01          7        ERND TIME     AWARDED
         96 10 01          7        ERND TIME     AWARDED
         96 09 01          7        ERND TIME     AWARDED
         96 08 01          7        ERND TIME     AWARDED
         96 07 01          7        ERND TIME     AWARDED
         96 06 01          7        ERND TIME     AWARDED
         96 05 01          7        ERND TIME     AWARDED
         96 04 01          7        ERND TIME     AWARDED
         96 03 01          7        ERND TIME     AWARDED
         96 02 01          7        ERND TIME     AWARDED
         96 01 01          8        ERND TIME     AWARDED
         95 12 01          8        ERND TIME     AWARDED
         95 11 01          8        ERND TIME     AWARDED
         95 10 01         10        ERND TIME     AWARDED
```

61

ABP C Pg2

*** AS OF: 08/04/1997 ***                          PAGE  2

COMMITTMENT NAME (LAST,FIRST,MI)                DOC NUMBER FACILITY    LIVING UNT
-------------------------------------------     ---------- ---------- ----------
BULGIER, JIMMY R                                69812      TERITORIAL CTCF/CH7

             95 09 01          10      ERND TIME           AWARDED
             95 08 01          10      ERND TIME           AWARDED
             95 07 01          10      ERND TIME           AWARDED
             95 06 01          10      ERND TIME           AWARDED
             95 05 01          10      ERND TIME           AWARDED
             95 04 01          10      ERND TIME           AWARDED
             95 03 01          10      ERND TIME           AWARDED
             95 02 01          10      ERND TIME           AWARDED
             95 01 01          10      ERND TIME           AWARDED
             94 12 01          10      ERND TIME           AWARDED
             94 11 01          10      ERND TIME           AWARDED
             94 10 01          10      ERND TIME           AWARDED
             94 09 01          10      ERND TIME           AWARDED
             94 08 01          10      ERND TIME           AWARDED
             94 07 01          10      ERND TIME           AWARDED
             94 06 01          10      ERND TIME           AWARDED
             94 05 01          10      ERND TIME           AWARDED
             94 04 01          10      ERND TIME           AWARDED
             94 03 01          10      ERND TIME           AWARDED
             94 02 01          10      ERND TIME           AWARDED
             94 01 01          10      ERND TIME           AWARDED
             93 12 01          10      ERND TIME           AWARDED
             93 11 01          10      ERND TIME           AWARDED
             93 10 01          10      ERND TIME           AWARDED
             93 09 01          10      ERND TIME           AWARDED
             93 08 01          10      ERND TIME           AWARDED
             93 07 01          10      ERND TIME           AWARDED
             93 05 05          50      ERNTIME-JB          AWARDED
             93 01 01          10      ERNTIME-JB          AWARDED
             92 12 30           0      ERNTIME-PJ          AWARDED


GOVERNING SENTENCE COMPUTATION:          MINIMUM        MAXIMUM
                                         YR MO DA       YR MO DA
                                         -- -- --       -- -- --
        Governing Sentences          :    6  0  0        6  0  0

        Sentence Effective Dates     : 1992-12-30    1992-12-30


TIME ACCOUNT LIMITS APPLICABLE:          MINIMUM        MAXIMUM
                                         YR MO DA       YR MO DA
                                         -- -- --       -- -- --
        Sentence Reduction Time      :    3  0 10
        Earned Time                  :                   1  6  0


TIME POSTINGS SUMMARY                    SENT REDUC     EARNED
                                           TIME           TIME
                                         YR MO DA       YR MO DA
                                         -- -- --       -- -- --
        Maximum Earnable             :    2 11 20        1  6  0
        - Vested / Granted           :    0  0  0        1  4  3
        - Withheld / Lost            :    0  0  0
        - To Be Withheld             :    0  0  0

62

APP G 63

*** AS OF: 08/04/1997 **

| COMMITTMENT NAME (LAST,FIRST,MI) | DOC NUMBER | FACILITY | LIVING UNT |
|---|---|---|---|
| BULGIER, JIMMY R | 69812 | TERITORIAL | CTCF/CH7 |

P R O J E C T E D   E L I G I B I L I T Y   D A T E S

    Parole Eligibility Date        :  PAST
    Sentence Discharge Date    : 1997-08-17