IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-891
Category II
Claimant: Peter Gonzales, #75443
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

## FINAL ORDER OF SPECIAL MASTER
_____

      THIS MATTER comes before the Special Master on the claim of Peter Gonzales (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is housed at the Colorado Territorial Correctional Facility (SCF) in Canon City, Colorado.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant has filed a response to the motion. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> > 2. Permanent Hearing Impairments
> > Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> > 3. Permanent Vision Impairment
> > Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> > 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> > Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August, 1994. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado when he filed his claim.

In his initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows:

> I'm sure I been a diabetic a lot longer then DOC is telling me. I can't see very good. I don't walk that good anymore. My feet are always hurting. There is something wrong with my foot and I can't walk on it. I can't get DOC to do anything about it. I just don't feel good about myself like I did before.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Well I feel that I been discriminated against because this has been going on for years with me and I'm still not getting my needs met.

Claimant was forwarded a supplemental form to complete and return. He has done so. Attached to that form are several pages of medical records. One document indicates that Claimant has a healed fracture of the right tibial and fibular shaft. There are problems with both feet and some degenerative conditions. Other records reflect that he was diagnosed as diabatic in 2004. He is Type II and the diabetes is not under control.

Defendants' motion to dismiss is predicated on Claimant having been first diagnosed as diabetic on August 30, 2004 while at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Medical records submitted by Defendants also reflect that Claimant is a Type II diabetic and the disease is not under control.

Claimant was given the opportunity to file a reply to the response of Defendants. Claimant has filed a reply requesting that the motion to dismissed be denied.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement

Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

There is no evidence that has been submitted by either side that Claimant was ever diagnosed as having diabetes before August 30, 2004. Claimant argues that he was not feeling well before that date and probably was diabetic. That may be true, but there is no evidence that he was diabetic.

Claimant's profile reflects that he was in community corrections and on ISP. There is no evidence that a private medical care professional diagnosed diabetes while Claimant was on a community placement. Defendants' failure to diagnose diabetes is not actionable under the ADA and Rehabilitation Act. There is insufficient evidence that Claimant was diabetic on or before August 23, 2003. Without such evidence, the claim may not proceed. The motion to dismiss will be granted.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant has not set forth any evidence that he was discriminated against because of diabetes on or before August 23, 2003. This is a discrimination lawsuit, not a lawsuit brought under the Eighth Amendment for medical malpractice. Since Claimant was not diagnosed as a diabetic until August 30, 2004, there could not have been discrimination based upon that condition prior to that time.

Claimant may pursue the failure to diagnose as a separate lawsuit. He may not use the claim process to pursue a medical malpractice or negligence claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Questions #1 and #3 are in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants motion to dismiss is granted and the claim of Peter Gonzales is denied, as he has failed to establish that he had a disability covered by the Remedial Plan on or before August 23, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294

**on or before May 14, 2007.**

SIGNED this 11th day of February, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master