IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-244
Category III
Claimant: John Claice, #105782
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on February 8, 2007. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: John Claice (Claimant); and Scott Wilkonson, attorney for Defendants.

Testimony was received from Claimant. Exhibit 1 was submitted by Claimant, and it was admitted. Claimant offered Exhibits A and B, and both were admitted. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 7, 2000. He has been incarcerated at a number of DOC facilities. He was at the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado when he filed his claim. He was transferred to other facilities before arriving at SCF on September 20, 2005.

Claimant testified that he has been in administrative segregation for most of the last two years. He indicated that his life is in danger and that he has continued to do the things necessary to stay in segregation and out of the general population.

In 2000, Claimant was incarcerated in the Delta County Jail. He was partially paralyzed. This was either the result of an assault or an infection. Initially, some medical personnel thought he had Bell's Palsy. He was placed on medications.

When Claimant arrived in Denver Reception and Diagnostic Center (DRDC), he was taken off of the medications. He began to have problems. Claimant then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was placed back on some medications, including Neurontin. He slipped and fell down some stairs. As the result of this fall, Claimant testified that he suffered a fracture vertebra. He began to get some treatment and physical therapy at FCF. He was referred for a consultation to Dr. Lilly, an neurosurgeon. He received some trigger point injections. He continued to have problems with his back and neck. A request for a heating pad was denied.

Claimant also was diagnosed as having hypoglycemia. He had trouble receiving snacks once he was transferred to the Limon Correctional Facility (LCF). Those were restored after the transfer to SCF.

On cross-examination, Claimant testified that his paralysis affected his back and neck. He had trouble standing for more than twenty minutes, but the paralysis did not affect his legs. He was in great pain after the fall on the stairs. Claimant stated that his paralysis has resolved, but he is still in pain. He sometimes finds it difficult to walk. He has been directed to buy Aleve from the canteen but cannot get enough because of pill limitations.

Claimant testified further that he had received a Tens Unit for his back. Claimant had received conflicting information from medical care providers.

On rebuttal, Claimant testified to he was not given prompt medical care. No one would listen to him. The fracture in the back has healed. He wondered why it took so long to be provided treatment.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately.

**Mobility Impaired**: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody.

Claimant has had significant medical problems. His paralysis has now resolved, with the exception of lingering pain. The paralysis was of the neck and back. It was not of the lower extremities. Claimant suffered a fracture of a vertebra. That has now healed. He has some degenerative conditions in his back. He has had Bell's Palsy.

The evidence does not substantiate that Claimant on or before August 27, 2003 had a permanent *lower extremity condition* that substantially limited walking. The paralysis was of the back and neck. The other conditions may impact walking but do not fall under the criteria for mobility impairment. Claimant is not a class member based upon mobility impairment. Claimant retains the right to bring a separate lawsuit concerning back and neck problems.

**Hypoglycemia**: Claimant has hypoglycemia. The problem is that hypoglycemia is not a condition covered by the Settlement Agreement. Claimant has the right to pursue this condition as a separate lawsuit, but he may not pursue his claim on this condition.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has received medical care. He has not agreed with some of the care he has received. Likewise, Claimant generally has received access to programs in DOC over the years.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or

pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #3 has been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of John Claice is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 14, 2007.**

SIGNED this 12th day of February, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master