IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 05-002
Category V
Claimant: Mary Alonzo (as Mother and Heir of David Alonzo)
Address of Claimant: 3110 Umatilla St., Denver, CO 80211

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 27, 2006 at the Office of Legal Resolution Center, Denver, Coloardo. Present were the following: Mary Alonzo, Claimant as Mother and Heir of David Alonzo, deceased; Mr. Rufino F. Alonzo, father of David Alonzo; Jess Dance, from the Office of the Attorney General, for Defendants; Cathie Holst, Colorado Department of Corrections ADA Inmate Coordinator, for Defendants; Cary B. Shames, D.O., Colorado Department of Corrections Chief Medical Director.

Testimony was received from the following witnesses: Claimant, Mary Alonzo and Cary B. Shames. The following exhibits were entered by Defendants:

Exhibit A:  20 pages of Ambulatory Health Records for David Alonzo.
Exhibit B:  CDOC Clinical Services Emergency Sheet for David Alonzo, dated 3-9-01.
Exhibit C:  Colorado Department of Corrections / Ambulatory Health Record for David Alonzo dated 3-12-01.

This hearing was split into two proceedings. The first, which occurred on February 27, 2006 was an evidentiary hearing to determine liability for the claim. At the time of the hearing, an appeal of the Special Masters' ruling concerning damages on

1

Category V claims was pending before the District Court Judge. The Special Master determined that it would be appropriate to move forward with an evidentiary hearing and then to hold a second hearing with respect to damages once the issue before the District Court Judge was resolved. The parties were advised of this split and the matter was taken under advisement at the conclusion of the hearing.[1]

On August 22, 2006, the District Court ruled on the issue of damages for Claimants in Category V and upheld the Special Masters' August 31, 2005 Order concerning Category V damages. A copy of the Special Masters' order has previously been sent to all parties. A copy of the District Court's Order upholding the Special Masters' order will be included for Claimant with this Final Order.

This order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.    General inconvenience or nominal damages;
    II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

---

[1] Due to the Special Master requiring an unforeseen surgery, the matter has remained under advisement for several months while the Special Master recuperated.

> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. On April 15, 2004, the Special Master received from Claimant an Initial Claim for Damages claiming disability due to diabetes on behalf of her deceased son, David Alonzo, #56574. Along with the Initial Claim for Damages, Claimant included a copy of her son's death certificate indicating a date of death of March 11, 2001.

2. Claimant's claim was assigned to Category V based upon the Remedial Plan as set forth above.

3. Claimant's current address at the time of the hearing was:

   3110 Umatilla St.
   Denver, CO 80211

4. Proper notice of the hearing was given and Claimant appeared along with Defendants.

5. Claimant's late son was under was under the jurisdiction of the Colorado Department of Corrections (CDOC) from March 30, 1987 until his death on March 11, 2001.

6. During his incarceration, Claimant was housed at least at the Limon Correctional Facility (LCF) where he ultimately passed away.

7. Claimant testified that her son informed her of the lawsuit filed. Her son was put in the "hole" and was denied his medications. Her son fell and was taken to the hospital and he was intubated before he died. Claimant visited her son often and talked to him but he didn't discuss the lawsuit.

8. Claimant testified that the cause of her son's death was that he fell, hurt his arm and got a flesh eating disease. Claimant testified that she didn't think her son had

3

diabetes when he entered CDOC. She testified that her son was healthy but very heavy when he entered CDOC custody. On cross examination, she testified that her son did not get proper medical care while in CDOC custody. She also testified that, according to another inmate, her son fell out of his wheelchair.

9. Dr. Shames testified that David Alonzo did have diabetes and references in Mr. Alonzo's chart were made as far back as 1987. At that time, Claimant was borderline and a family history of diabetes existed. Dr. Shames also testified that the progression of Mr. Alonzo's diabetes started with slightly elevated sugars and treatment and diet followed the American Diabetic Association's guidelines. Mr. Alonzo weighed in the 420 pound range. During his incarceration, Mr. Alonzo was non-compliant with his diet and insulin.

10. Dr. Shames also testified that with diabetes, a patient will get end organ damage, vascular problems due to poor circulation, resulting infections, vision problems.

11. According to the records, Dr. Shames testified that Mr. Alonzo's arm was not fractured but that he did fall on his elbow. Mr. Alonzo had been placed on dialysis due to renal failure. Mr. Alonzo had sepsis which was the real reason he died. Sepsis is common among diabetics and the sepsis overtook Mr. Alonzo's body within one day.

12. The Special Master reviewed the medical records and did not see anything that indicated that Mr. Alonzo was being treated improperly or being neglected. Mr. Alonzo saw many specialists even when he was not compliant.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act.(ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Mr. Alonzo was a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities. The Special Master finds and concludes that Mr. Alonzo was a disabled member of the class. He suffered from diabetes.

3. The next question which must be answered is whether Mr. Alonzo was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. The record is devoid of any evidence suggesting that Mr. Alonzo was not eligible for any of the programs, benefits or services offered by the various facilities where he was housed or was disqualified from these programs, benefits or services for reasons other than his disabilities. Consequently, as to those programs, benefits and services forming the basis for claim here in question, the Special Master finds that Claimant was qualified.

4. The key question is whether Mr. Alonzo was discriminated against because of his disabilities. No evidence of discrimination based upon Mr. Alonzo's diabetes was before the Special Master.

5. The more important issue to be determined by the Special Master, however, is whether or not CDOC has any responsibility for Mr. Alonzo's death. The testimony was clear that Mr. Alonzo was not in good health and that he was not always compliant with his diet and prescribed medical care. As indicated in the Findings of Fact, the record is clear that Mr. Alonzo did receive much medical treatment in spite of his lack of compliance. Mr. Alonzo's body, unfortunately, could no longer fight off the sepsis and other medical problems and passed away. For that reason, the Special Master concludes that no liability was established by Claimant that her son died as a result of discrimination against Mr. Alonzo because of his diabetes. Since Claimant was unable to determine liability, the Special Master has determined that a second hearing on damages is not necessary.

Since Claimant cannot prove liability that her son suffered discrimination leading to his death, her claim must be dismissed.

## IV. ORDER

      IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met her burden of proving her claim by a preponderance of the evidence and, therefore, her Claim in this matter is DENIED with judgment to be entered in favor of the Defendants;

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 31, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street<br>
Denver, CO 80294.

SIGNED this 31st day of January, 2007.

/s/ Richard C. Davidson
_____
Richard C. Davidson,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 31st day of January, 2007 to the following:

Ms. Mary Alonzo
3110 Umatilla St.
Denver, CO 80211

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter

7