IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-207
Category: II
Claimant: Duñg Duong, #66169
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Duñg Duong. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Duong submitted a claim which was assigned claim number 02-207. The claim is premised on an alleged permanent mobility disability and an alleged vision disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Duong first entered CDOC custody in September of 1991. Although the record does not reflect all of the facilities in which Claimant was housed, it appears that he was housed for part or all of his CDOC custody at the Bent County Correctional Facility (BCCF), the Arrowhead Correctional Center (ACC), the San Carlos Correctional Facility (SCCF) and the Colorado State Penitentiary (CSP).

4. Claimant has arthritis in his hands and arms. He also suffers from hammer toes, a congenital condition that has resulted in pain and degenerative changes to his feet. Claimant also suffers from hypoglycemia, deteriorating eyesight, a fungal infection on his hands and hemorrhoids. He states that the hemorrhoids prevent him from walking long distances without severe pain.

5. All of Claimant's contentions all relate to alleged failures to provide medical treatment, unreasonable delay in providing medical care and improper medical care. He asserts that CDOC misdiagnosed his vision problems and failed to perform adequate tests or follow ups to find out the cause of his progressively deteriorating eyesight. He also complains that when he was diagnosed with arthritis in his hands, CDOC did not perform adequate tests to determine if he had arthritis in his other joints. He contends that CDOC has not provided proper medical treatment for his fungal infection or his hemorrhoids.

6. Claimant's medical records confirm that he has arthritis in his hands and that he has degenerative changes in both feet. He has been provided with a permit to purchase comfortable supportive shoes or sandals. Claimant has also been supplied with prescription glasses. He has received medical treatment and medication for both his fungal infection and his hemorrhoids. The records indicate that Claimant has been placed on a special diet for his hypoglycemia. Claimant has received an injection for his shoulder pain. Because of his skin problems, he has been given a medical restriction precluding him from engaging in activities that might cause him to sweat.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility,

hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

Initially, the Special Master finds and concludes that there is no evidence in the record connecting Claimant Duong's fungal infection with a disability cognizable under the Remedial Plan. Furthermore, the Special Master finds and concludes that the arthritis in Claimant's hands does not involve any mobility, vision or hearing disability or any disability due to diabetes. While the Remedial Plan states that it covers persons with "mobility impairments," *Remedial Plan* ¶ III(A), it does not generally define the term "mobility impairments." However, the references to "mobility impairment" in the Plan indicate that the parties intended the term to encompass diseases, injuries and/or conditions involving the lower extremities that impose a substantial limitation on the major life activity of walking. *See, Remedial Plan* ¶ V(A)(1)(dealing with presumed need for special housing and defining "permanent mobility impairment as "a permanent lower extremity mobility impairment that substantially limits walking."); *Remedial Plan* ¶ XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly suggesting that "mobility impaired" inmates are those with diseases, injuries, and/or conditions involving their lower extremities).

In short, there is no indication in the Remedial Plan that its coverage of inmates with "mobility impairments" extends beyond those who are substantially limited in their major life activity of walking because of diseases, injuries, and/or conditions involving their lower extremities. There is no evidence that Claimant Duong's hand problem involves his lower extremities or substantially limits his ability to engage in the major life activity of walking.

The Special Master finds and concludes that Claimant Duong has failed to sustain his burden of establishing by a preponderance of the evidence that he suffers from a vision disability. There is no evidence in the record showing Claimant's corrected or

uncorrected visual acuity. Nor is there any information provided by Claimant regarding how his allegedly diminished vision affects his ability to engage in major life activities.

Finally, the Special Master finds and concludes that Claimant Duong has failed to sustain his burden of showing that he has a permanent mobility disability. While the evidence confirms that Claimant does have hammer toes and does suffer from hemorrhoids, there is no evidence in the record demonstrating that these conditions substantially limit his ability to engage in any major life activity. At best, he states that he is unable to walk long distances without pain. This, in itself, does not constitute a substantial limitation on a major life activity. *Banks v. Hit or Miss, Inc.*, 996 F. Supp. 801 (N.D. Ill. 1998).

3. As noted above, all of Claimant's complaints relate directly or indirectly to either alleged failure to provide proper and timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

Because Claimant has failed to demonstrate that he has a permanent mobility disability, or a permanent vision disability, and because he has failed to establish by a preponderance of the evidence that he has been the victim of any discrimination by CDOC because of his alleged disabilities, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Duong's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 5, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 5th day of February, 2007

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 5th day of February, 2007 to the following:

Mr. Duñg Duong, #66169
CSP
P.O. Box 777
Canon City, CO 81215-0777

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter