IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-052
Category III
Claimant: Marvin O. Jenkins, #111924
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on May 8, 2006 at the Sterling Correctional Facility (SCF). Present were the following: Marvin O. Jenkins, Claimant; Jess Dance from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant. No exhibits were entered. The matter was taken under advisement.[1]

This Order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

---

[1] Due to the Special Master requiring an unforeseen surgery, the matter has remained under advisement for several months while the Special Master recuperated.

1

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted a claim which was assigned claim number 03-052 and the basis of his claim is a vision impairment and diabetes.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Proper notice of the hearing was given and Claimant along with Defendants appeared.

2

4. Claimant was under the jurisdiction of the Colorado Department of Corrections (CDOC) from March 7, 2001 through the present. Claimant has been incarcerated primarily at the Limon Correctional Facility (LCF) and the Sterling Correctional Facility (SCF).

5. In 2002, Claimant was diagnosed with diabetes at the Crowley facility in Ordway. In 2004, Claimant became insulin dependent. Claimant's problems began primarily when he was in the Limon Correctional Facility. Claimant indicated that he had been unable to attain his medical records and that he was placed in Administrative Segregation for 18 days and he was placed on a high carbohydrate diet causing his vision to become technically blurred for one-and-a-half months. Claimant indicated that his blood sugars were about 200 before being sent to Administrative Segregation. At the time of the hearing, Claimant's diabetes was under control and was running between 122 and 139. Claimant testified that he was "in excellent health" when he entered CDOC.

6. On cross examination, Claimant testified that he has been on a 2,400 calorie ADA diet and tried a Kosher diet. In the library, he learned how to eat. While at LCF, he testified that his blood sugars were fluctuating and that he was only checked on Mondays, Wednesdays and Fridays at LCF. He received mostly morning finger sticks. Claimant understands that his vision problems occur when his sugars are low. Claimant indicated that he had problems getting "in cell" medications and that he had to sign a one page contract to self-medicate. Claimant testified that he wears reading glasses, prescribed by CDOC and that his vision is correctable to 20/20 with the glasses.

7. Claimant testified that the basis of his claim is the quality of his medical care from the February 2004 trip to Administrative Segregation forward.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*; and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant is not a disabled individual who is a member of the class. Claimant suffers from diabetes and has some vision problems both of which are covered by the Remedial Plan. However, the issues raised by Claimant all relate to problems which arose in February, 2004, by Claimant's own testimony. The Remedial Plan was signed on August 27, 2003. Since Claimant's complaints arose after the Remedial Plan was signed, the Complaints are outside the scope of the jurisdiction conferred upon the Special Master by the Remedial Plan and are not cognizable and Claimant's claim for relief pursuant to the Remedial Plan must be denied. The analysis need not go any further.

Even if the Special Master found that Claimant was a member of the class, Claimant's own testimony was not that he was discriminated against because of a disability but that he received poor medical care. Such claims do not fall within the ambit of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

## IV. ORDER

IT IS HEREBY ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, with respect to the mobility claim, Claimant has not met his burden and proved his claim by a preponderance of the evidence and judgment should be entered in favor of the Defendants and Claimant's claim is hereby dismissed.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed on or before **March 22, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 22nd day of January, 2007.

/s/ Richard C. Davidson
_____
Richard C. Davidson,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 22nd day of January, 2007 to the following:

Mr. Marvin O. Jenkins, #111924
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. Jess A. Dance
Mr. James X. Quinn
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter