IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-430
Category: II
Claimant: Brian Dean Walton, #50933
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Brian Walton. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101* and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Walton submitted a claim which was assigned claim number 02-430. The claim is premised on an alleged permanent mobility disability, an alleged vision disability and disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Walton first entered CDOC custody in 1983. Although the record does not reflect all of the facilities in which Claimant was housed, it appears that he was housed for part or all of his CDOC custody at the Buena Vista Correctional Facility (BVCF), the Freemont Correctional Facility (FCF), the Arkansas Valley Correctional Facility (AVCF) and the Sterling Correctional Facility (SCF).

4. Claimant has a lengthy history of disputes and grievances with the Colorado Department of Corrections. He has submitted what appears to be most of these grievances along with very lengthy handwritten narratives to the Special Master in support of his *Montez* Claim. It is clear that most of these grievances and handwritten narratives concern issues that have nothing whatsoever to do with the Americans with Disabilities Act (ADA), the Rehabilitation Act (Rehab Act), or the *Montez* Remedial Plan

(Remedial Plan). Those few references that do have some pertinence to a possible disability discrimination claim are discussed below.

      5.     Claimant suffers from lower back pain and a problem with the nerves in his right leg and foot. These are apparently the result of injuries sustained in two incidents when he slipped and fell on wet floors at AVCF. He states that he has pain which varies in intensity and makes it difficult for him to get out of bed and requires him to be careful going down stairs and turning corners. He also indicates that the more intense the nerve pain is, the harder it is for him to walk. Because of his back pain, it is difficult for him to sit in class.

      Claimant Walton also asserts that he suffers from low blood sugar and has a lack of energy. Additionally, he states that he suffers from dizziness.

      Finally, Claimant indicates that he was attacked by another inmate in 1999 and suffered an injury to his right eye. He describes his vision as being obscured and filmy. He indicates that he sees floaters and that his peripheral vision is also affected. He notes that his eye condition would make it difficult for him to drive a car and that it would pose dangers working with saws. He indicates that he struggles to read and that his vision problems prevent him from taking educational or vocational classes.

      6.     Claimant alleges that he has not received proper medical care for his back and leg pain. He complains about the location of his cell being in a cold area and he also complains that he has been assigned the worst cellmates. He contends that CDOC has refused to provide him with proper chairs, medical shoes and an extra mattress. He also contends that he was required to work while at AVCF despite his back pain. Elsewhere, Claimant asserts that CDOC has failed to provide him with a job.

      Claimant complains that he has not received proper medical care and testing for his low blood sugar. He also asserts that CDOC has refused to provide him with a piece of fruit or vegetables in his room.

      Finally, Claimant asserts that CDOC has not properly treated his eye problems and that he did not receive new prescription glasses from 1999 until 2003.

      7.     Claimant's medical records confirm his complaints of intermittent lower back pain and intermittent pain down his right leg. In 2002, Claimant requested a medical pass that would allow him to go for morning walks. In September of 2002, Claimant refused to have x-rays taken of his back. A 2003 ambulatory health record indicates that there were no visual abnormalities of the back, and that Claimant's range of motion was good. An ambulatory health record in May 2005 indicates that Claimant walked into the appointment, stood and sat with no apparent difficulties. At that time Claimant states that he no longer had lower back pain after physical therapy and a significant loss of weight. Claimant's records reflect that a number of medical restrictions have been in place at various times including lower bunk, no heavy lifting, no bending and no intensive labor.

An ambulatory health record of February 2002 indicates that Claimant was seen for hypoglycemia and was counseled on the importance of being compliant with his diet. The record notes that Claimant was verbally abusive and refused to accept responsibility for his own care.

Finally, Claimant's medical records show that he received an eye examination in February of 1999, at which time his corrected visual acuity was 20/20 in both eyes. At that time he received one pair of prescription glasses. In June of 2003, Claimant had an eye examination which demonstrated a corrected visual acuity of 20/20 in both eyes. Claimant was issued a new pair of prescription glasses in July of 2003.

### III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment as defined in the Remedial Plan, or was

5

a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant has failed to sustain his burden of proving by a preponderance of the evidence that he suffers from a permanent mobility disability. The fact that Claimant's lower back and leg pain may impair his mobility in itself is insufficient to demonstrate that he is disabled within the meaning of the ADA and/or the Rehabilitation Act. Rather, he must present evidence establishing that these problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999).

Here, the evidence indicates that Claimant can walk, negotiate stairs and work. The fact that he experiences intermittent pain when engaging in these activities does not demonstrate a substantial limitation on any major life activity. *See, e.g., Penny v. United Parcel Serv.*, 128 F.2d 408 (6th Cir. 1997); *Rosa v. Brink's, Inc.*, 103 F. Supp. 2d 287 (S.D.N.Y. 2000); *Piascyk v. New Haven*, 64 F. Supp. 2d 19 (D. Conn. 1999); *Puoci v. City of Chicago*, 81 F. Supp. 2d 893 (N.D. Ill. 2000); *Williamson v. Hartmann Luggage Co.*, 34 F. Supp. 2d 1056 (M.D. Tenn. 1998); *Banks v. Hit or Miss, Inc.*, 996 F. Supp. 802 (N.D. Ill. 1998).

The Special Master also finds and concludes that Claimant has failed to sustain his burden of proving by a preponderance of the evidence that he suffers from any permanent disability as a result of his diabetes. Claimant's diagnosis of hypoglycemia by itself is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd*, 170 F.3d 188 (11th Cir. 1999). He must demonstrate that his hypoglycemia substantially limits his ability to engage in one or more major life activities. Claimant has presented no evidence of how his major life activities are affected by his low blood sugar.

Finally, while Claimant may suffer some vision impairment, his corrected visual acuity is 20/20. The medical records show that Claimant has received prescription glasses. In such a situation, it is his corrected visual acuity that must be considered in determining whether he is disabled. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999). While Claimant contends that his 1999 prescription lenses were inadequate and that he had to wait for three years to get new glasses, there is nothing in the medical records or in any of the documents provided by Claimant suggesting that he needed new corrective lenses between 1999 and 2003.

3. Many of Claimant's complaints relate directly or indirectly to either alleged failure to provide proper and timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

Also, many of Claimant's complaints concern allegedly negligent or reckless conduct of CDOC in causing or creating the conditions that resulted in the injuries to Claimant's back and eye. These complaints, however, are well beyond the scope of the ADA, the Rehabilitation Act and/or the Remedial Plan.

Because Claimant Walton has failed to demonstrate that he has a permanent mobility disability, a permanent vision disability, or a permanent disability due to diabetes, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Walton's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 5, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 5th day of February, 2007.

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 5th day of February, 2007 to the following:

Mr. Brian Dean Walton, #50933
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter