IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-456
Category: II
Claimant: William Porter, #85154
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Claimant William Porter. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101* and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.    General inconvenience or nominal damages;
> II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.   Damages due to severe physical injuries; and
> V.    Damages due to death.
>
> Only one of the above categories may be applied to each class member.   For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Porter submitted a claim that was assigned claim number 02-456. The claim is premised on an alleged permanent mobility disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Porter entered CDOC custody in October of 2001. Although the records provided to the Special Master do not specifically identify the facilities in which Claimant has been housed, it appears that for all or part of his CDOC custody, he has been housed at the Sterling Correctional Facility (SCF).

4.      As a result of an accident that occurred in 2000, Claimant has pins and a bolt in his left hip and a rod in his upper left leg. As a result, his left leg is approximately 1 ½ inches shorter than his right leg. Claimant also has skin grafts and scarring on his left foot, as well as tendon and nerve damage that causes foot pain. Additionally, he states that since December of 2002, he has had a back problem. Finally, Claimant complains of problems with his teeth and his jaw.

5.      Claimant Porter contends that he requires special orthopedic shoes. He asserts that up until 2002, he was not provided with orthopedic shoes. As a result, he was

not able to access the gym and walking was painful. Claimant was issued a pair of orthopedic shoes in 2002, but he asserts that they did not help the problems with his left foot. Claimant complains that these shoes wore out within three months and that he did not receive replacements until 2004. He acknowledges that the replacement shoes are medically helpful. Claimant also contends that he had a job in Correction Industries for 87 days but was terminated because he moved too slowly. He also states that he was terminated because he could not go through the metal detector and had to be strip searched twice a day. Additionally, Claimant asserts that he has not been given proper medical treatment for his teeth and jaw problems.

6.     Claimant's medical records confirm that he has a rod in his left femur and a compression screw that passes through the intramedullary rod into the femoral neck. The medical records also confirm that Claimant suffers from scarring and skin grafts on his left foot and that he has chronic foot pain. Claimant received special orthopedic shoes in December of 2002 which he acknowledged fit properly. An ambulatory health record in January of 2004 indicates that Claimant's shoes were totally worn out. An ambulatory health record in January of 2002 states that Claimant walks slowly and stiffly. He has had a lower tier-lower bunk medical restriction.

7.     The records provided to the Special Master show that Claimant has worked as a Para Pro in the library since January of 2005. He worked in the laundry from June of 2004 until January of 2005 and in the library from March of 2003 until June of 2004. Claimant worked in the seating factory from December of 2002 until the end of February of 2003.

### III. CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing or vision impairment, as defined in the Remedial Plan or was a diabetic and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent mobility disability within the meaning of the ADA and/or the Rehabilitation Act. Clearly, Claimant has impaired mobility. However, the fact that Claimant has such a mobility impairment in itself is insufficient to establish a permanent disability for purposes of the ADA and/or the Rehabilitation Act. Rather, Claimant must present evidence establishing that his hip, leg and foot problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

Claimant has presented little evidence as to how his hip, leg and foot problems affect his ability to engage in major life activities. He states that he has pain when he walks; and his medical records indicate that he walks slowly and stiffly. However, this is insufficient to establish a substantial limitation on his ability to walk. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.,* 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.,* 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir. 1996).

The Special Master also finds and concludes that Claimant's teeth and jaw problems are not within the scope of the *Montez* Remedial Plan.

5

3.     Because Claimant has failed to establish that he suffers from a permanent mobility disability within the meaning of the ADA and/or Rehabilitation Act, his complaints about the adequacy of his medical care and treatment, the failure of CDOC to provide him proper orthopedic shoes and the failure of CDOC to provide him with new orthopedic shoes in a timely fashion do not constitute claims of disability discrimination. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability.  As stated above, no such showing has been made here.

4.     Because the Special Master has found and concluded that Claimant Porter has failed to demonstrate that his hip, leg and foot problems substantially limit his ability to engage in one or more major life activities, his Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Porter's claim with prejudice.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 5, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 5th day of February, 2007.

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 5th day of February, 2007 to the following:

Mr. William Porter, #85154
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter