IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-516
Category: II
Claimant: Bruce Clifford Peterson, #48058
Address of Claimant: c/o Bruce Sarbaugh, Esq., 2969 Baseline Road, Boulder, CO 80303

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Bruce Peterson. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out

1

provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Peterson submitted a claim which was assigned claim number 02-516. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. The record is unclear as to when Claimant first entered CDOC custody. He has been in CDOC custody since July of 2002 and it is possible that he entered CDOC custody as early as October of 2001. While in CDOC custody, Claimant has been housed at Ft. Lyon Correctional Facility (FLCF), Buena Vista Correctional Facility (BVCF) and Crowley County Correctional Facilty (CCCF).

4. Claimant suffered a gunshot wound in the lower spinal area prior to entering CDOC custody. The bullet could not be removed and Claimant states that it has caused nerve damage to his right leg. Claimant also suffers from degenerative joint disease in his knees and from flat feet. He indicates that he is in constant pain and has difficulty walking and is unsteady negotiating stairs. Claimant states that these problems have affected his ability to participate in certain programs, jobs and activities that other non-disabled inmates enjoy.

5. Claimant asserts that he has been denied medical devices and medical restrictions necessary to assist him in alleviating his pain and preventing further deterioration of his back, knees and feet. He also claims that those medical devices and restrictions that have been provided were not supplied in a timely manner. Specially, he states that although he has repeatedly asked for an egg shell mattress, CDOC medical providers have consistently denied the request. After requesting a knee brace on several occasions, a knee brace without metal inserts was finally given to him in 2004. He has also been provided with a cane. Claimant contends that the cane was taken away from him and it has not been returned despite repeated requests. It is unclear whether he still has the knee brace issued to him in 2004. Claimant complains that he began requesting medical shoes upon entering CDOC custody but never received any. He also requested an elevator pass but this was denied. Finally, Claimant asserts that after numerous requests for lower tier-lower bunk restrictions, these were ultimately provided in 2004 but were later removed.

6. Claimant's medical records confirm that he has continuing controversies with CDOC and CDOC medical providers over medical devices and medical restrictions. Many of the controversies, such as those relating to the egg shell mattress, cane and continuation of his lower tier-lower bunk restriction, appear to be the result of a disagreement between Claimant and CDOC medical providers over the necessity for the devices and restrictions.

7. The medical records confirm that Claimant suffers from back pain as a result of a bullet that remains in his lower back and that he also suffers from flat feet and degenerative joint disease in his knees. An x-ray report in August of 2002 showed bullet slug fragments just to the right of L5 and a moderately large slug near L3. No significant degenerative changes were seen. Several of Claimant's medical records note that he walks without a limp, and that he can sit and rise from a chair without assistance. An assessment performed in August of 2005 concluded that Claimant was fully mobile with a slight right-sided gait but noted that Claimant complained of intermittent numbness and occasional knee pain. The records show that Claimant has regularly received medication for pain including Motrin, Naprosyn and ibuprofen.

8. The records provided to the Special Master reveal that Claimant has had several jobs while in CDOC custody, including a job as a janitor as well as work in the fish hatchery. Claimant's most recent job has been as a wheelchair pusher.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one

or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to demonstrate by a preponderance of the evidence that he has a permanent mobility disability within the meaning of the ADA and/or the Rehabilitation Act. There is no doubt that Claimant suffers from an injury to his lower back due to bullet fragments and slugs that cannot be removed, flat feet and degenerative joint disease in his knees. However, the fact that Claimant has problems with his lower back, feet and knees does not in itself render him disabled or qualify him for relief. Rather, he must present evidence establishing that these problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999).

Claimant asserts that his lower back, feet and knee problems substantially limit his major life activity of walking. However, all of his medical records run counter to this assertion. They uniformly state that Claimant can and does walk. Some of the records

indicate that he walks without a limp, while others note that he favors the right leg. Even assuming that Claimant walks with a limp and has pain while ambulating, the Special Master finds and concludes that this does not rise to the level of a substantial limitation on the major life activity of walking. This finding and conclusion is consistent with the federal case law dealing with similar mobility issues. *E.g., Talk v. Delta Airlines, Inc.,* 165 F.3d 102 (5th Cir. 1999); *Kelly v. Drexel University,* 94 F.3d 102 (3d Cir. 1996); *Graver v. Nat'l Eng'g Co.,* 1995 WL 44344 (N.D. Ill., July 25, 1995).

As noted above, the United States Supreme Court has stated that the key evidence in establishing a substantial limitation on a major life activity is the Claimant's own experience. In the context of the instant case, a Claimant must present evidence identifying the specific programs and benefits that he cannot participate in, and/or the specific facilities that he cannot access due to a disability covered by the Remedial Plan. Other than the general assertion that he cannot participate in certain but unspecified programs, jobs and activities, Claimant fails to provide any information as to how his alleged mobility impairment affects his ability to engage in any major life activity. Furthermore, the records provided to the Special Master indicate that Claimant does in fact engage in activities, such as working as a wheelchair pusher that would strongly suggest that his mobility impairment is not severe enough to be deemed a disability under the ADA and/or the Rehabilitation Act.

4. Since Claimant has failed to establish that he has a permanent mobility disability under the ADA and/or the Rehabilitation Act, his disputes the CDOC medical providers cannot be deemed discrimination because of a disability. Rather, at worst they merely amount to a disagreement over the medical necessity for various medical devices and restrictions. At best, the failure of CDOC to provide such medical devices and restrictions may give rise to a claim of deliberate indifference to medical needs. Such claims are not cognizable under either the ADA or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

5. Because Claimant Peterson has failed to show that his back, feet and knee problems constitute a disability within the meaning of the ADA and/or the Rehabilitation Act, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Peterson's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 5, 2007** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 5th day of February, 2007.

>BY THE COURT:
>
>/s/ Bruce D. Pringle
>_____
>Bruce D. Pringle,
>Special Master

## CERTIFICATE OF MAILING

    I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 5th day of February, 2007 to the following:

Mr. Bruce Peterson, #48058
c/o Bruce Sarbaugh, Esq.
2969 Baseline Road
Boulder, CO 80303

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter