N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-018
Category III
Claimant: Richard B. Gonzales, #46594
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on April 25, 2006 at the Limon Correctional Facility (LCF). Present were the following: Richard B. Gonzales, Claimant; Ms. Jennifer Berman, from the Office of the Attorney General, for Defendants.

Testimony was received from the following witnesses: Claimant and Dr. Roderic Gottula by affidavit. The following exhibits were entered by Defendants:

Exhibit A: Department of Corrections Ambulatory Health Record for Richard B. Gonzales, dated 3/13/2006.
Exhibit B: Affidavit of Doctor Roderic Gottula.

At the conclusion of the hearing, this matter was taken under advisement[1] This order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

---

[1] Due to the Special Master requiring an unforeseen surgery, the matter has remained under advisement for several months while the Special Master recuperated.

1

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. On April 4, 2004 Claimant filed an Initial Claim with the Special Master. A Supplemental Claim was filed with the Special Master on May 12, 2004. The basis of Claimant's claim was a mobility impairment, a hearing impairment, vision impairment and diabetes.

2. Claimant's claim was assigned to Category III based upon the Remedial Plan as set forth above and assigned to Claim 03-018.

3. At the time of the hearing, Claimant was housed at the Limon Correctional Facility (LCF).

4. Proper notice of the hearing was given and Claimant appeared along with Defendants.

5. Claimant has been under CDOC jurisdiction since his sentencing on July 11, 1996.

6. During his incarceration, Claimant has been housed at LCF, Olney Springs (CCCF), Ordway (AVCF) and Fremont Correctional Facility (FCF).

7. Concerning mobility, Claimant testified that he got hurt in the military and had a back brace and a tens unit but both were taken at FCF. He has lower back issues and 3, 4, 5 and 6 have been worked on. He has diabetic neuropathy in his feet and he had his shoes taken from him in Crowley County and hasn't had shoes since. His feet burn and swell with state issued boots. Claimant's last injury was September 10, 1986. His first back surgery was about 1974. His last surgery was in the 1990s.

Claimant testified that most of his time had been spent in private facilities, that grievances disappeared and that when at CCCF, doctors wouldn't prescribe surgery because "they can't do it." Claimant's biggest complaint was that he received no therapy, providers at the private prisons refused to do things and no pain meds were given beyond Tylenol and Ibuprofen.

Claimant testified that his left leg gives out and that he has to use a cane which he had to fight to get for nine years. Claimant testified that he had no denial of programs and that the facility wanted him to work in the kitchen but that he couldn't stand and after approximately four hours he has to sit. He toughs it out in programs.

8. Claimant testified that he had hearing problems which began in the military service while he was working with cannons and had no ear muffs. He wore hearing aids but they were broken in CCCF when a guard stepped on them during a riot. Claimant has VA issued hearing aids but they are broken and are not safe to use.

Claimant testified that it is hard to hear and to understand commands, or hear the PA. He gets headaches. At CCCF, he would get yelled at for saying, "can't hear." The problem continues at LCF. The doctor ordered Claimant to have a hearing test in Pueblo in November of 2006.

9. Claimant testified that he has vision problems. His left eye is burning and he has "dots" in that eye. He can't get anti-glare glasses even if he pays. The black dots

are protein, Claimant testified. He has floaters caused from being "smacked with alcohol" when he was younger. He receives new glasses every year and CDOC takes care of him at this point.

10.  Claimant testified that he was diagnosed as being diabetic in 2000 while at Ordway (AVCF). His blood sugars surge to around 300 and 289. He was taken off of his snack, has missed 8 days of the month and meds keep him too drugged up in the morning and he misses breakfast. He was taken off of his diet, had no snack and has been regulating by watching what he eats and losing weight. Claimant has blood stick tests only two times per week at LCF on Tuesday and Friday as opposed to twice daily in Olney Springs. Claimant got a card and order slip for when he was out of pills. No pills mean that his diabetes soars. He had many denials at Crowley and his grievances disappeared.

11.  At Crowley, Claimant was bottom tier/bottom bunk in a medical cell until the riot. Then, he was moved to the upper level and he couldn't walk stairs. He testified that he could walk about one block then needs to rest. He can't navigate flights of stairs without having to stop. He has pain and feels very heavy. At LCF, he is bottom tier/bottom bunk restricted. On cross examination, Claimant testified that at Ordway and CCCF he couldn't complete movement timely, he missed calls and he has to crank up the television because no headphones. As a result, his cellmates complain and he as been through a lot of "cellies."

### III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant was a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing,

vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities. The Special Master finds and concludes that Claimant is a disabled member of the class. He suffers from mobility impairment, hearing loss, vision impairment and diabetes.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. The record is devoid of any evidence suggesting that Claimant was not eligible for any of the programs, benefits or services offered by the various facilities where he was housed or was disqualified from these programs, benefits or services for reasons other than his disabilities. In fact, Claimant's own testimony was that "they" wanted him to work. The Special Master finds that Claimant was qualified.

4. The key question is whether Mr. Gonzales was discriminated against because of his disabilities. No evidence of discrimination was presented by Claimant as a result of his disabilities. He testified that he has been bottom tier/bottom bunk restricted, and he has a cane. He receives new glasses every year. While some disparity may exist between facilities, Claimant has received stick tests for his diabetes. He was issued a card and order slip for use when he runs out of pills. He was ordered a hearing test for his hearing and he has hearing aids, though they are broken.

It should be noted that many of Claimant's complaints relate to an alleged failure of the CDOC to provide reasonable medical care and treatment for his disability or to an alleged deliberative indifference of the CDOC to Claimant's medical needs. These claims are not cognizable under the Rehabilitation Act, the ADA or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

Since Claimant cannot prove that he suffered discrimination due to his disabilities, his claim must be dismissed.

### IV. ORDER

IT IS ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, Claimant has not met his burden of proving his claim by a preponderance of the evidence and, therefore, his Claim in this matter is DENIED with judgment to be entered in favor of the Defendants;

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 31, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 31st day of January, 2007.

/s/ Richard C. Davidson

Richard C. Davidson,
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 31st day of January, 2007 to the following:

Mr. Richard B. Gonzales, #46594
LCF
49030 State Highway 71
Limon, CO 80826

Ms. Jennifer Berman
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter