IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-644
Category II
Claimant: Honorato Alvarez-Valencia, #112175
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Honorato Alvarez-Valencia (Claimant). The Special Master has reviewed the claim, supplemental forms, and response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he did not file a reply. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

Defendants previously filed a motion to dismiss. The Special Master granted, in part, that motion. The only issue that remains is the numbness in Claimant's leg and whether he is mobility impaired.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

2

>       B. QUALIFIED INMATE
>       Inmate with a permanent disability/impairment which substantially
>       limits his or her ability to perform a major life activity.
>       C. PERMANENT DISABILITY/IMPAIRMENT
>       A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals claiming mobility impairment.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>       1. Is the claimant a disabled individual who is a member of the class?
>       2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>       3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>       4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 4, 2002. He was placed at the Denver Reception and Diagnostic Center (DRDC) for initial evaluation. He then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He remained at LCF until he was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

>   When I got arrested I was handcuffed on my back and slammed down to the ground. Since then I have had a lot of back pain, where it numbs half of my body and I limp all the time. Because of this injury I can not do any intensive work, no heavy lifting, not sitting over long periods and no vigorous exercise. Since I cannot do almost no kind of work with my restrictions within DOC this prohibit me from

>   participating in very few programs that DOC have, cannot do recreational programs, educational programs or/and productive work. Because DOC refuses to prescribe me the necessary medication I get lock jaw regularly and I am in pain all the time. It gotten so bad that I sometimes swell up so bad I cannot do anything.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>   I believe that DOC does not have the programs or job positions available for prisoners with disabilities like mine nor DOC make any attempt to either provide the adequate treatment like medication and therapy or job placements for prisoners with restrictions, what makes it more difficult is the fact that DOC does not have a PA or doctor fluent in Spanish for people like me that does not speak or understand English fluently. How can I effectively express my ailments and problems to a person that does not understand my language fluently? The injury I have has been well documented from the day of my arrest. Another problem is that when I get someone to write me a medical kite/request it takes two or three weeks to get an appointment and then nothing is done.

Claimant filed a supplemental claim form. Claimant reiterated the concerns that he expressed in his initial form. Claimant did not submit any medical records or other documents in support of his claim.

Defendants' response has attached to it several medical and other records. Defendants argued that Claimant is not mobility impaired.

Claimant was granted up to and including January 29, 2007 in which to file a reply to the response of Defendants. Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The claim form and supplemental forms will be considered as the testimony that Claimant would provide if there had been a hearing. The question is whether Claimant can prevail solely upon his statements, in light of the documents submitted by Defendants.

One of the medical records submitted by Defendants reflects an observation by a DOC staff member while Claimant was at the dental clinic. *Exhibit A*. Claimant was observed walking normally without a limp. When he noticed Mr. Singh, a PA at AVCF, Claimant began to limp. After Mr. Singh was out of sight, Claimant began to walk normally again.

Other records detail that Claimant appears to have had strokes in the past. *Exhibit B; Exhibit*

*C*. He has recuperated from those. He has been observed on several other occasions walking normally and without a limp. *Exhibit E*. Other records reflect that Claimant has put out little or no effort in the work setting. *Exhibit I*.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." The evidence presented by Defendants reflects that Claimant has not been in a wheelchair at any time. Further, it reflects an individual who is able to walk without difficulty.

Claimant has not filed a reply refuting anything submitted by Defendants. The burden is upon Claimant to prove that he is mobility impaired. He has not done that. Claimant has failed to establish that he is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant's concern is the quality of medical care that he has received over the years.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Honorato Alvarez-Valencia is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

5

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 14, 2007.**

      SIGNED this 16th day of February, 2007.

                                  BY THE COURT:

                                  */s/ Richard M/ Borchers*

                                  Richard M. Borchers
                                  Special Master