IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-659
Category II
Claimant: Thomas Brown, #115213
Address of Claimant: FMCC, P.O. Box 200, Canon City, CO 81215-0200

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on the claim of Thomas Brown (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is incarcerated at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado.

      The Special Master has reviewed the claim, supplemental forms, and response of Defendants. Claimant was granted the opportunity to file a reply to the answer of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody on November 1, 2002. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. He then was placed at the Limon Correctional Facility (LCF) in Limon, Colorado. He was transferred to the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Claimant was at that facility when he filed his claim. He has been transferred subsequently to FMCC.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows:

> I have chronic pain syndrome and spina bifida, scoliosis and degenerative discs. My chronic pain hurts all of the time and is getting worse. It affects my daily activities more and attention span. I was on aid to the needy and disabled for 4 years prior to incarceration. I would like physical therapy, adequate medical assistance to help me help myself. I have a hard time sleeping because of muscle spasms due to a lack of calcium and arthritis in my neck and back. I have severe pain which shoots down my leg when I walk and have bowel movements. Regularly my vertebrae are out of alignment. It causes me to have pain when I breath. My sternum is completely dislocated from my chest cartilage. I also have a dislocated shoulder with a pinched nerve. Those things hinder my daily abilities to provide for myself adequately.

In response to the questions concerning discrimination by DOC and its staff, Claimant stated as follows:

> I have been repeatedly charged for chronic care. I have been told that if it is not a life threatening medical issue DOC does not have to help my condition. I have had referrals to pain clinics but they have been cancelled by provider working out of his capacity. I have been denied medication which I have taken for years on the streets. I have been repeatedly seen by different doctors never the same doctor. I have been given psycho tropic medication for depression after I was seen and evaluated and found not depressed by mental health. I was prescribed elavil by the provider acting out of capacity.

> I have had an increase in the amount of my degenerative condition. I have been denied medication and I have had approved neurology appointment cancelled by provider because he believes I have no pain and it is in my mind. I have been repeatedly given massive amounts of Ibuprofen 800 mg tabs for over a year. In excess of 2000 mg a day which have caused stomach problems and blood in my urine. Acid reflux because of so much IBU.

Claimant was sent a supplemental form to complete. In that supplemental form, Claimant stated, in part, as follows:

> I have a hard time walking, sleeping, bending, stooping, lifting. I have debilitating pain which sometimes renders my knees and back useless. My neck always hurts and causes me migraine headaches, loss of use of my arms at times and muscle spasms.

On March 7, 2005, Claimant forwarded a letter to the Special Master indicating that he had suffered injuries while at FLCF.

Defendants submitted a response to the claim. Attached to that response were a number of pages of medical records. Many of those records refute Claimant's statements in his claim.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including January 29, 2007, Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In his initial claim form, Claimant checked only the box for mobility impairment. The burden is upon Claimant to prove that he was mobility impaired on or before August 27, 2003. Since Claimant is not entitled to a hearing, this claim must be resolved on the written documents that have been submitted by both sides.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has ever used a wheelchair while in DOC custody.

The evidence is in dispute concerning Claimant's physical condition. In November, 2004, an accommodation evaluation reflected that Claimant was able to walk more than one hundred yards without stopping and was able to climb a flight of stairs. In addition, Defendants have submitted evidence that has not been refuted that indicates that Claimant is able to run. *Exhibit E.* He was observed speed walking. *Exhibit F.* He has been observed walking without problems. *Exhibit H.*

Claimant has failed to prove that he is mobility impaired. The evidence presented reflects that he can run and walk rapidly. A mobility impaired inmate must show that his permanent lower impairment condition substantially limits walking. Claimant has not proven that he falls into the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has failed to carry his burden of proof that he was discriminated against by DOC and its staff due to a mobility impairment.

Claimant has failed to prove that he was subjected to discrimination prohibited by the ADA and Rehabilitation Act. Claimant has been given access to employment, services and programs.

Claimant's major concern is with his medical care. This concern is beyond the realm of the Settlement Agreement. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Thomas Brown is dismissed, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May14, 2007.**

SIGNED this 16th day of February, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master