IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-875
Category II
Claimant: Terry Jones, #112259
Address of Claimant: c/o Ed Stokes, 3720 Sinton Road, #110, Colorado Springs, CO 80907
_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Terry Jones (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). He now has been granted parole and is living in the Colorado Springs' area.

The Special Master has reviewed the claim, supplemental forms, and response of Defendants. Claimant was granted the opportunity to file a reply to the answer of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on March 2, 2002. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. On April 1, 2002, Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Claimant was at AVCF when he filed his claim. Subsequently, he was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He was released on parole on September 25, 2006.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form.

> All injuries occurred many years ago as a result of a motorcycle accident. These injuries now affect the mobility of my left leg and my hip that was broken in three places. Along with this injuries were a crushed pelvis, broken ankles, and related neck and back injuries. Each day I live with intolerable pain and my ability to walk normally and function socially in the community of prison settings with stairs.

In response to the questions concerning discrimination by DOC and its staff, Claimant stated as follows:

> Most all of my housing assignments in DOC have been either second or third tiers where making my way up and down stairs is almost impossible. Also, walking long distances to eat or go to programs, such as hobby shop or AA meetings. A big complaint also is the accommodation of being able to sit while showering. This has not been offered me. My issue of pain has also been ignored. The only treatment offered is (INSAIDS) which don't work, and irritate my stomach to the point of bleeding.

> On one occasion I fell down the cellhouse stairs unable to navigate my way. I was severely hurt and had to be taken to the medical department. I feel also that without the accommodations for the handicapped I am continually hurting myself irreversibly. Describing my treatment in general by the medical staff would be unprofessional and acting without principles or care for human beings.

Claimant was sent a supplemental form to complete. In that supplemental form, Claimant stated, in part, that "[m]y problems affect my ability to climb stairs, shower, and walk right. I am also constantly housed on upper tiers and made to walk stairs."

Defendants submitted a response to the claim. Attached to that response were a number of pages of medical records, as well as records of Claimant's prison term. Many of those records refute Claimant's statements in his claim.

4

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including January 29, 2007, Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In his initial claim form, Claimant checked only the box for mobility impairment. The burden is upon Claimant to prove that he was mobility impaired on or before August 27, 2003. Since Claimant is not entitled to a hearing, this claim must be resolved on the written documents that have been submitted by both sides.

The medical records submitted by Defendants indicate that Claimant stated initially that he had suffered from seizures and headaches. These were purportedly the result of a head injury several years ago. Claimant made no mention to DOC medical staff of any motorcycle accident. Based upon his reported seizures, Claimant was provided restrictions that required lower bunk and lower tier placements.

On September 4, 2003, Claimant advised DOC medical staff that he had been in the motorcycle accident. DOC staff took x-rays and noted post-traumatic degenerative changes in the left hip. He was authorized a cane while placed at AVCF, and the cane was used by Claimant until he left on parole. Claimant wanted narcotic medication for his pain. That was denied by DOC medical staff.

Claimant also had other health issues. He has Hepatitis C and Hodgkins Lymphoma. He refused medical care for the latter condition, indicating that he would get care when he returned to the community on parole.

The evidence is in dispute as to the time when Claimant advised DOC medical staff that he had been in the motorcycle accident. Subsequent medical examinations substantiate that he has had prior trauma to his skeletal system. For purposes of this order, the Special Master determines that Claimant was mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Though Claimant had COPD convictions for refusal to work, there does not appear to have been any overall disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has failed to carry his burden of proof that he was

discriminated against by DOC and its staff due to a mobility impairment.

Claimant made serious allegations in his claim form that he was required to live on second and third tiers, as well as top bunks. His medical records reflect that he was given restrictions for first tiers and lower bunks because of a history of seizures. Claimant has filed nothing to refute the medical records. Claimant did receive accommodations in this regard.

Claimant was given access to employment and educational programs. He was dropped from a GED program because he failed to show up for class. He was terminated from several jobs because he refused to work. Some of these refusals led to disciplinary convictions. On other occasions, he acknowledged to DOC staff that he could not complete educational programs due to his head injury and anxiety.

The fact is that no discriminatory action by DOC or its staff has been established by Claimant. He has a concern about medical care, but that is beyond the realm of the Settlement Agreement. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Terry Jones is dismissed, as Claimant has failed to prove that he was subjected to any discriminatory act prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May14, 2007.**

SIGNED this 16th day of February, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master