IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-880
Category II
Claimant: Gilroy Vasquez, #64053
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Gilroy Vasquez (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is housed at the Limon Correctional Facility (LCF) in Limon, Colorado.

The Special Master has reviewed the claim, supplemental forms, and response of Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he did not file a reply. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This definition controls as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals claiming mobility impairment.

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1990. He has been placed at a number of institutions over the years. When he filed his claim, Claimant was placed at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. He then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado.

Claimant checked the boxes for diabetes and mobility impairment. Claimant stated, in part, as follows:

> Diabetic, dizziness, weak, swelling up in legs-hands. Also we don't have a dietician here to give proper diet meals/can't walk or run due to injuries in legs.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> By not getting proper medical care when need it. Have been putting medical kites but they do not respond to them.

> Hard to move around and to get bottom bunk when needed. I'm getting a lot worse since these people won't give me proper medical care.

Claimant filed supplemental claim forms. On the supplemental form for diabetes, Claimant stated, in part, as follows:

> As of now they have stopped me from finger sticks and have taken my diabetic snacks from me. I have been going through this since I've got here. They don't give diabetics correct dietary trays.

As to his mobility impairment, Claimant stated in his supplemental form as follows:

> Leg swell up lots of pain bruising. No strength in them.

> Can't work because can't stand up for long time.

Defendants' response has attached to it several medical and other records. Defendants argue that Claimant is not mobility impaired nor is he diabetic.

Claimant was granted up to and including January 29, 2007 in which to file a reply to the response of Defendants. Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The claim form and supplemental forms will be considered as the testimony that Claimant would provide if there had been a hearing. The question is whether Claimant can prevail solely upon his statements, in light of the documents submitted by Defendants. Each claimed disability will be taken separately.

**Diabetes:** Claimant has alleged that he is diabetic. He has submitted his initial claim form and supplemental form. Claimant has not submitted any medical records in support of his claim that he is diabetic.

Claimant first told DOC staff that he was diabetic in December, 2000. A blood sugar test was normal. At no time that Claimant has been in DOC custody has he been diagnosed as diabetic. In fact, his medical record from April 10, 2006 reflects no evidence of diabetes.

Claimant has been diagnosed as having hypoglycemia. *Record of April 20, 1999.* A medical screening in September, 2004 confirmed the diagnosis of hypoglycemia. Claimant was receiving finger sticks for hypoglycemia and received snacks. Both were discontinued.

Claimant has filed no reply to the response of Defendants. The evidence overwhelmingly indicates that Claimant is not a diabetic. He has hypoglycemia, and that condition is not one covered by the Settlement Agreement. Claimant is not part of the class, as he is not diabetic. Claimant may pursue a separate lawsuit concerning his hypoglycemia, but he may not pursue his claim.

**Mobility Impairment**: Defendants acknowledge that Claimant has a long history of swelling and bruising. This is the result of low platelet count. DOC has provided Claimant with support hose and medication.

Claimant has been able to walk and play sports. His medical records reflect various sports injuries. Claimant was hurt playing softball in April, 2000 and sought medical care. He was hurt playing handball in December, 2000. He was hurt playing basketball in August, 2001. He was hurt playing softball in September, 2001. He was injured in both March and June, 2003 while playing softball.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant was ever in a wheelchair while in DOC custody. More importantly, the record reflects that Claimant did not have on August 23, 2003 or before a permanent lower extremity condition that substantially affected walking. Claimant is to be praised for exercising through sports such as handball and softball. Both sports require running. Claimant has not proven his claim that

he is mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** There was no evidence that would lead to the conclusion that Claimant had been the victim of discrimination prohibited by the ADA or Rehabilitation Act. Claimant's concern is the quality of medical care that he has received over the years.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Gilroy Vasquez is denied, as he had failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 14, 2007.**

SIGNED this 16th day of February, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master