IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-314
Category III
Claimant: Paul Palecek, #88838
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on February 8, 2007. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Paul Palecek (Claimant); and Scott Wilkonson, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A and B were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on May 16, 1996. He was placed for evaluation at the Denver Reception and Diagnostic Center (DRDC). He was at that location for five weeks and then was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He was at AVCF when he filed his claim. He then was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado. The hearing on this claim was held at that facility.

In his initial claim form, Claimant checked the boxes for diabetes, vision impairment, and mobility impairment. Claimant stated, in part, as follows:

> I have a hard time walking or working. I'm in a great deal of pain.
> 2. I have very poor eyesight to begin with. I can't see to do any closeup work. I do work in the hobby shop with limited ability.
> 3. As far as the diabetic thing goes I just feel bad all the time. I need more exercise & better diet and probably medication.

As to discrimination by DOC and its staff, Claimant stated as follows:

> I was fired from Correctional Industries. I was constantly humiliated and made to stay late and to perform extra duties because they thought I was just lazy. I've been in severe pain for almost eight years. All my joints swell and their answer is motrin.

Claimant submitted supplemental forms for all three claimed impairments. As to diabetes, Claimant stated, in part, that "[a]ll we ever get to eat is pasta, rice, bread and beans. I firmly believe this has been the contributing factor to my diabetes." As mobility impairment, Claimant indicated that "I have arthritis so bad that every step is excruciating...." As to his vision impairment, Claimant noted that "I can't see up close or far away even though I have to wear very very thick glasses."

At the hearing, Claimant testified that he had been diagnosed as having diabetes while at AVCF. He was placed on a special diet and was trying to exercise as much as he could. He further testified that he has arthritis which has affected most of his joints. He was terminated from a job with Correctional Industries at AVCF which he believed was improper. The supervisor terminated him on the belief that he was lazy. In reality, Claimant believes that is termination was related to his medical conditions. Claimant had been at the job for five or six years.

Claimant also testified that he has poor vision due to being nearsighted. His joints swell up, particularly his knees and ankles.

On cross-examination, Claimant testified that he was getting better. He is trying walk a mile a day for exercise. He also has received eye glasses from DOC. He was upset about being terminated

from his position at Correctional Industries. He maintained that he had always made it to work no matter how bad he felt. He has taken motrin on a regular basis, as well as other drugs for his arthritis. He has been referred by DOC medical staff to an arthritis specialist.

Claimant stated that he has been through very painful periods of time. He did have an eye exam approximately two years ago. Claimant restated that he has great pain when he walks.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The date which is important is August 27, 2003. It was on that date that Judge Nottingham approved the Settlement Agreement. In order to be a member of the class, a claimant must show that he or she was disabled in one of the four categories on or before that date. In addition, the claimant must prove that he or she was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Claimant has alleged that he has three impairments as recognized by the Settlement Agreement. Each will be discussed separately. Claimant has other health issues, such as Hepatitis C and heart disease, which are not covered by the Settlement Agreement.

**Diabetes:** Defendants submitted a number of medical records in conjunction with the affidavit of Dr. Neufeld. On April 16, 1997, Claimant received an evaluation by Dr. Bloor because of an abnormal electrocardiogram. Claimant had been scheduled for hernia surgery, but a test of his heart revealed an abnormality. The evaluation by Dr. Bloor indicated no sign of diabetes. The evaluation did reveal joint issues that were noted as possibly being related to arthritis.

Claimant was seen by many DOC medical providers over the next few years. That was particularly true in 2001-02. There is no mention of diabetes, but there was a diagnosis of hypoglycemia. This diagnosis may have been made in error. The first indication of diabetes is in 2004. He has been on special diets and exercise to control this condition. So far, it appears to be under control.

Claimant was asked specifically when he recalled being diagnosed as having diabetes. He testified that the diagnosis was made after he came into DOC custody and was placed at AVCF. He was not able to indicate the specific date when medical personal advised him that he was diabetic.

The evidence is not clear as to when Claimant was diagnosed as having diabetes. There is no question that he was so diagnosed at the time of the hearing. The Special Master finds that Claimant was diabetic on or before August 27, 2003. He is part of the class as a diabetic.

**Vision Impairment**: Claimant has been tested by DOC over the years. He was determined to be 20/400 in each eye. He was provided glasses and was corrected to 20/20 in each eye.

Examinations occurred in 1996, 2002 and 2004.

In order to be vision impaired, there must be evidence that a claimant has vision that is so poor as to affect the activities of daily living. This Special Master has ruled in the past that the Settlement Agreement requires a showing of blindness or something extremely close to that. In this case, there is no evidence that Claimant cannot function with corrective lenses. Just the opposite has been established. Claimant has not established that he was vision impaired, as defined by the Settlement Agreement, on or before August 27, 2003.

**Mobility Impairment:** There is no question that Claimant has arthritis. He has swelling of his joints. He also has some degenerative joint disease in his right knee.

Claimant testified that he walks but has constant pain. He is trying to walk one mile per day to keep in shape, particularly because of the diabetes. He has been taking motrin for his pain, but it has not eased the pain totally.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has ever used a wheelchair while in DOC custody.

The definition of the Settlement Agreement is binding upon the Special Masters. Mobility impairment requires a showing of a permanent lower extremity condition that substantially limits walking. The evidence in this case indicates that Claimant is able to walk. He attempts to walk one mile or more each day for exercise. The Settlement Agreement definition has not been met by the Claimant. He is not part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant is extremely upset over his termination from his job with Correctional Industries at AVCF. This work allowed him to make much more money per month than a normal job in DOC. He believes that he was unfairly terminated from the position and that such termination was the result of his physical impairments. When asked why he did not file a grievance when he was fired, Claimant stated that he was fearful that he would lose his single cell.

In light of the previous rulings in this Order, Claimant would have to show that his termination or treatment in general was as a result of discrimination due to his diabetes. Claimant has not established that there is a connection between his diabetes and his termination. The Special Master can appreciate his feelings about the loss of the job. It is entirely possible that such

termination was improper for various reasons. Claimant did not file a grievance which might have rectified that situation or, at least, required something in writing justifying the termination. Claimant has not proven that his termination was the result of a discriminatory act.

Claimant also has had concerns and complaints relating to the medical care that he has received. It is clear that his arthritis has been painful. The evidence reflects that he has received care, but does not believe that it has been effective.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question # is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Paul Palecek is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 14, 2006.**

SIGNED this 19th day of February, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master