IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-712
Category II
Claimant: Gillie T. Thurby, Jr., #118295
Address of Claimant: c/o Karl Kramer, 7255 Irving Street, Westminster, CO 80030

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER comes before the Special Master on the claim of Gillie T. Thurby (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He now is on parole and is living in the Denver metro area.

    The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>  B. QUALIFIED INMATE
>  Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>  C. PERMANENT DISABILITY/IMPAIRMENT
>  A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>  The Settlement Agreement further provides, in part, as follows:
>
>>  2. Permanent Hearing Impairments
>>  Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>  3. Permanent Vision Impairment
>>  Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>  4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>  Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>  2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>  1. Is the claimant a disabled individual who is a member of the class?
>>  2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>  3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>  4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 28, 2003. He was placed at the Denver Reception and Diagnostic Center (DRDC). He was placed then at the Sterling Correctional Facility (SCF) on August 14, 2003. Claimant has been released on parole and is living in the Denver metro area.

In the initial claim form, Claimant checked the boxes for mobility impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form.

> Mobility. I was in a car wreck have problems with my neck & back, and have lots of leg cramps. It's hard to get up & down on top bunk and they took my orthopedic shoes when I came to prison and I have told them about my disk in my back. It's hard to walk at times without a cane. They won't help me or put me on bottom bunk or give me a cane nor will they give me a 2nd motrin for help with the back pain. I need my glasses. I used them on the streets but DRDC said that prison would give me some. It's been over 1 year now and nothing.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Because they have put me in more pain because of not addressing the problem with my car wreck. They have me in county jail shoes and foam for the bunk to help. And gave me pain pills on as needed basis. I was under the care of Dr. Ray and his staff before I came to prison. SCF has not gave me any addition but took my orthopedic shoes. They have told me I'm too short to get any help. They know I also need glasses but they don't help with that. The dentists also don't help because too short.

Claimant was sent supplemental forms to complete and return. In his supplemental form for vision impairment, Claimant restated what had been set forth in the initial claim. He further stated that "need glasses to see better." His glasses were taken from him when he came into DOC custody because of a metal frame.

In his supplemental form for mobility impairment, Claimant stated that he had problems in his lower back, legs and neck. He requested a cane on August 16, 2003 but did not receive one at that time.

Defendants submitted a response to the claim. Defendants argue that Claimant is not disabled and is not part of the class. A number of Claimant's medical records were submitted with the

4

response.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including January 8, 2007, Claimant has filed nothing further in support of his claim or a reply to the response filed by Defendants.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant carries the burden of proving that he had a disability recognized by the Settlement Agreement on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability alleged by Claimant must be examined separately.

**Vision Impairment**: The records submitted by both sides reflect that Claimant received an eye examination on July 30, 2003 when he was processed through DRDC. His vision was determined to be 20/40 in his left eye and 20/25 in his right eye. The medical record for that date reflects that Claimant had glasses. *Exhibit B*.

No other records have been submitted by either side concerning vision. The Special Master has ruled in the past that vision impairment requires a showing that a claimant is or almost is blind. The activities of daily life must be affected, and that has not been proven by Claimant. The only evidence before August 27, 2003 reflects that Claimant had vision correctable to 20/20. Claimant is not vision impaired and not a member of the class on that basis.

**Mobility Impairment**: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody.

In order to establish a claim of mobility impairment, Claimant must establish that on or before August 27, 2003 that he had a permanent lower extremity impairment that substantially limited his being able to walk. The physical of Claimant at DRDC on July 30, 2003 does not reflect problems in Claimant's legs. *Exhibit B*. The Settlement Agreement provides as examples of mobility impairment the inability to walk more than one hundred yards without stopping or the inability to climb a flight of stairs without stopping. There is no evidence that Claimant's leg cramps affect his ability to walk on a daily basis. There is insufficient evidence presented to show that a mobility impairment existed on or before August 27, 2003. That being the case, Claimant has failed to prove that he is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the**

**benefits or services offered by DOC?** There is no evidence that Claimant was disqualified from receiving services, benefits or programs as the result of other issues, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question. There is no evidence that Claimant was treated differently as the result of a claimed impairment.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Gillie T. Thurby, Jr. is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 23, 2007.**

SIGNED this 5th day of March, 2007.

BY THE COURT:

*/s/ Richard M/ Borchers*

Richard M. Borchers
Special Master