IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-791
Category II
Claimant: Roy Grimes, #76352
Address of Claimant: 8210 Turnpike Drive, Westminster, CO 80031

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Roy Grimes (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He now has discharged his sentence and is living in the Denver metro area.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
>> 2. Permanent Hearing Impairments
>> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>> 3. Permanent Vision Impairment
>> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody in the late 1980's. He has been placed at a number of facilities over the years, including the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado, the Huerfano County Correctional Center (HCCC) in Walsenberg, Colorado, and the Kit Carson County Correctional Center (KCCC) in Burlington, Colorado. Claimant discharged his first sentence in 1994. He returned to custody in 1997 on a new sentence.

Claimant was placed on parole but returned DOC custody in 2003. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. He then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado.

In the initial claim form, Claimant checked the boxes for mobility impaired, hearing impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form.

> Mobility impairment due to back problems incurred while incarcerated in the custody of the Department of Corrections due to improper placement on the top bunk. I suffer from both arthritis and back and shoulder injuries also a problem with my left knee due to an antecedent injury. I suffer from hearing impairment, caused by old age which was originally onset at child birth. Several examinations have established this condition. Repeated attempts to obtain medical examinations and treatment of my condition have been ignored. Examination and diagnosis was conducted at Denver General, but there was never any follow-up. At Burlington, a DOC contracted facility, I was informed that I would be denied the needed hearing aid. Health services I have repeatedly sought, have been denied. Vision impairment due to prescribing of improper eye wear.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> DOC has failed to provide proper aid and or sufficient medical treatment. They have disallowed my participation in many of the rehabilitative programs and have punished me through disciplinary proceedings for my inability to work or perform the assigned duties due to my impairment. I have been denied adequate medical treatment and had to endure emotional and physical anguish due to my medical impairments.

Claimant submitted medical records in support of his claim. On July 26, 2000, Claimant saw Jacob Patterson, M.D. who is an orthopedic specialist. Dr. Patterson diagnosed Claimant as having an extensor weakness in his left knee. The medical note reflects that Claimant was walking with a limp. Dr. Patterson indicated that surgery might not improve the situation. The medical record further reflects that Claimant had arthritis in his back and hands.

Claimant provided medical records which reflected that he had received in June, 2003 restrictions for lower bunk and lower tier. In addition, he was not to be assigned to a camp, be involved in heavy lifting or intensive labor. Other records submitted reflect that Claimant has a bad ankle and other medical conditions that include heart disease and Hepatitis C.

Claimant provided a medical record reflecting that he had been given a hearing test. That record reflects that the tonal loss was not deemed to meet DOC criteria for a hearing aid. Claimant had been seen previously at Denver General Hospital, and a hearing loss was noted.

Claimant was sent supplemental forms to complete and return. The supplemental form for hearing impairment restated the need for hearing aids. Claimant indicated that he was scared because he could not hear and that he was at risk for his safety because he could not hear well.

In his supplemental form for mobility impairment, Claimant stated, in part, as follows:

> Hard to walk without my left knee giving out and falling due to weakness of the back & knee. Especially with a cane or back brace. Hard to get in and out of bed when the ladder is in the middle of the bed.

In his supplemental form for vision impairment, Claimant stated:

> I have problems seeing far sighted. I can't see anything 2 feet from my face. I can't read lunch menus. Books and the bulletin board posted in the day room. And headaches from trying to read.

Defendants submitted a response to the claim. Defendants argue that Claimant is not disabled and is not part of the class. A number of Claimant's medical records were submitted with the response.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including January 16, 2007, Claimant has filed nothing further in support of his claim or a reply to the response filed by Defendants.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability alleged by Claimant must be examined separately.

**Vision Impairment**: The records submitted by both sides reflect that Claimant has received eye examinations over the years that he has been in DOC custody. In 1991, an examination reflected that Claimant had vision in his right eye of 20/80 and 20/70 in his left eye. With glasses, Claimant's

vision was correctable to 20/20 in both eyes. *Exhibit Z*. Claimant received glasses in 1991.

Claimant has been seen over the years that he has been in an out of DOC custody. His eyesight was correctable to 20/20. *Exhibit AF; Exhibit AG, Exhibit AH*. According to the medical records provided by Defendants, Claimant has received state issued prescription glasses.

The records submitted by both sides do not reflect that Claimant is blind or has suffered from a significant vision problem. Claimant has not presented evidence to reflect that his activities of daily living have been curtailed because of vision problems. Claimant has to wear prescription glasses, but such glasses provide corrected vision to 20/20. Claimant has not proven that he falls into the class as vision impaired.

**Hearing Impairment**: Claimant does have hearing loss. Claimant received a hearing test in 2004 and the loss was noted. *Exhibit AO*. Claimant does have difficulty with crowd noises. He was not recommended for a hearing aid as he was close to his discharge date. *Exhibit AS.*

Claimant has not proven that he had a hearing loss on or before August 27, 2003 that affected his activities of daily living. The evidence reflects that the hearing loss was detected in 2004. Claimant is not part of the class as hearing impaired, as the hearing loss was determined after the date of approval of the Settlement Agreement. Claimant may pursue his hearing loss through a separate lawsuit, but may not pursue it through this claim.

**Mobility Impairment**: Claimant checked the box on his initial claim form for mobility impairment. The medical records submitted by both sides reflect long-term problems for the left knee and ankle. He has received knee and back braces, as well as a cane. These were taken from him at LCF on the basis of security issues.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody.

The evidence reflects that Claimant has had a lower extremity condition in his left leg which is permanent. Claimant is part of the class as mobility impaired. This is based upon the knee and ankle, as the back problems are not part of mobility impairment under the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Claimant has had some disciplinary problems. It does not appear that those disciplinary problems disqualified him from any programs or services while in DOC custody.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met

his burden of proof as to this question.

Claimant's major complaint has been the nature and extent of his medical care while in DOC custody. The documents submitted by both sides reflect that Claimant received medical care over the years that he was in DOC custody. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant also has failed to prove that he was denied access to service or programs while in DOC custody due to his mobility impairment. Claimant received restrictions and was seen frequently by medical staff. Claimant has not proven his claim that he was the victim of discrimination due to his mobility impairment.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Roy Grimes is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 23, 2007.**

SIGNED this 5th day of March, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master

7