IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-326
Category III
Claimant: William Robert Booth, #117853
Address of Claimant: 1209 Clark, Goodland, KS 67753

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on February 23, 2007. This hearing was held at the offices of Legal Resolution Center, 600 17th Street, Denver, Colorado 80202. Present were the following: William Robert Booth (Claimant); and Berina Ibrisagic, attorney for Defendants.

Testimony was received from Claimant and Wilbur Booth. Defendants' Exhibit A was offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 25, 2003. Claimant initially was placed at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was placed on parole, but that was not successful. Claimant returned to DOC custody. He returned to SCF and then discharged his sentence on March 18, 2006.

In his initial claim form, Claimant checked the box for mobility impairment. He also noted that he was "partially retarded due to a brain injury on 12/04/85." Claimant stated, in part, as follows:

> #1 herniated L4-5 S1 low back stable fractures 11 & 12 mid back and herniated discs in neck. #2 torn rotator cuff on r. side, probable tear on L. Side. #3 partial retardation due to brain injury. Was told need to learn to live in pain for back problems. Shoulders just need operation and brain injury causes clinical depression and major anxiety attacks. No bottom false plate made when only have 3 teeth on bottom.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Was made to wear boots and not given tennis shoes for back problems, never given a short pass was always made to wait in ling lines for meds and chow and was told since I have no scars from operations or bed sores I could have no egg carton or 2nd mattress for back or shoulders.

Claimant was provided a supplemental form to fill out. He reiterated the problems that had been experiencing. He stated further that "I have been denied everything I have asked for, all they have done is made jokes to me which was very degrading." He also indicated that he had fallen trying to get out of bed and suffered injuries.

Defendants filed a response to the claim that included some of Claimant's medical records. Upon review of all documents, the Special Master determined that the claim should be elevated to Category III. Such elevation allowed the Claimant to have a hearing and present his case.

Claimant testified at the hearing that he is in pain all of the time. He was injured in a motorcycle accident that occurred in 1985. He has difficulty walking and can only sleep for short stretches. Walking exacerbates his back problems and vice versa. He was only given over the counter medicines for his pain.

Claimant testified further that he tried to see doctors for his conditions. He ran afoul of DOC

staff and was disciplined for his actions. He described his back problem as a stable fracture at L 11-12. He also has two torn rotator cuffs. When he fell from his bed, he hit his face and broke some of his teeth. He had received a lower bunk and lower tier restriction.

On cross-examination, Claimant indicated that he could walk, but it was painful. His feet were not hurting, but his back is in constant pain.

Wilbur Booth, father of Claimant, testified that his son does have significant problems due to his brain injury. His brain injury caused problems while on parole, and these problems led to his revocation and return to DOC custody.

Defendants submitted Exhibit A into evidence. Attached to this affidavit were a number of Claimant's medical records.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to establish his claim, Claimant must show that he had a recognized disability on or before August 27, 2003. Claimant also must show that he was in DOC custody on or before that date and that he was the victim of discrimination during that same period of time.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody.

Claimant has testified that he difficulty walking due to his back. The pain was severe enough to preclude him from walking any extended distances. Though this an extremely close call, the Special Master will find that the back problems led to lower extremity issues that affected walking. Claimant is a member of the class as mobility impaired.

The Special Master notes that Claimant suffered a brain injury. The Settlement Agreement does not contain a category for brain injuries. Claimant may pursue his brain injury through a separate lawsuit.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to establish a claim, a claimant must show that he was the victim of discrimination on or before August 27, 2003 as prohibited by the ADA and Rehabilitation Act. Discrimination must have been the result of improper treatment based upon one of the four categories of impairments listed in the Settlement Agreement.

Claimant came into DOC on June 25, 2003. He was transferred to SCF on July 17, 2003. Claimant has not established that he was the victim of discrimination as prohibited by the ADA on or before August 27, 2003. He testified that he received a lower tier and lower bunk restriction. He also received restrictions for heavy lifting and intensive work.

Claimant's concerns related to medical decisions that were made concerning his care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has not established that during the period of late June, 2003 to late August, 2003 that he was the victim of discrimination due to his mobility problems. Claimant may pursue separately anything that occurred after August 27, 2003 and anything related to his brain injury. Claimant may file a separate lawsuit to seek compensation for discrimination that occurred after August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this questions does not need to be answered.

IT IS HEREBY ORDERED that the claim of William Robert Booth is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 28, 2007.**

SIGNED this 2nd day of March, 2006.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master