IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-442
Category II
Claimant: Daniel Talavera, #118920
Address of Claimant: c/o PO Sheila Pitt, 3642 S. Galapago, Englewood, CO 80010

_____

## FINAL ORDER OF SPECIAL MASTER

_____

      THIS MATTER comes before the Special Master on the claim of Daniel Talavera (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC). He now has been granted parole and is living in the Denver metro area.

      This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a motion to dismiss the claim. Claimant was given the opportunity to file a response to the motion of Defendants, but he has filed no further documents. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. *After consideration of objections that had been filed by various individuals*, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. *This section states, in part, as follows:*

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services *that have not resulted in physical injury;*
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, *a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.*

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

According to his initial claim form, Claimant came into DOC custody on August 4, 2003. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He had several additional placements after DRDC. He then was transferred to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Claimant was at HCCC when he filed his claim.

In his initial claim form, Claimant checked the box for vision impairment. He stated as follows:

> Was diagnosed by DRDC as being severely nearsighted in September 2003. The medical staff at DRDC recommended that I be issued a set of glasses. Without them I am legally blind.

In response to the questions concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was moved from DRDC to Park County jail on hold to boot camp. While there, I made a number of requests to receive a pair of eye glasses from medical, but to no avail. A month later I was moved to Buena Vista Correctional Facility for a month where I made repeated requests to the medical staff for a pair of eye glasses. However no glasses were issued. I was then moved to Cell House 5 for a month where I attempted to receive a pair of eye glasses but to no avail. I now currently reside at Huerfano County Correctional Center where I made repeated requests to medical for prescription eye glasses. No action was taken approximately the first month of my arrival here at DRDC until late April 2004 when I was finally issued a pair of prescription eye glasses. I believe the Colorado Department of Corrections has acted with blatant disregard toward my serious medical condition warranting this law suit.

> As a result of the CDOC's blatant disregard to my medical condition by not providing me with prescription eye glasses I have been unable to see for approximately eight months while incarcerated. This has resulted in irreparable damage to both eyes causing severe pain which could have been avoided. I believe that I am entitled to damages that the court would deem appropriate.

Claimant was sent a supplemental form to complete and return. Claimant restated what he had placed into his initial claim form. Claimant also stated, in part, that "no grievances filed due to my vision problems and unable to see." Claimant attached to his supplemental form a document reflecting that he received a pair of eyeglasses on April 15, 2004.

Claimant later submitted a letter and additional supporting documents. One of the documents was a vision examination held on April 17, 2004 reflecting that Claimant does have poor vision without glasses.

Defendants have filed a motion to dismiss. Attached to that motion is a certified "Offender Profile" which reflects that Claimant was received at DRDC on September 10, 2003. Defendants argue that Claimant is not a class member, as he came into DOC custody after August 27, 2003.

Claimant was granted up to and including February 12, 2007 in which to file a response to the motion to dismiss. The order granting time to respond was sent to Claimant's Parole Agent Sheila Pitt. Claimant has not filed a response to the motion nor has he submitted any additional records in support of his claim.

### III.

There is one issue present at this point. In order to qualify as a member of the class, a claimant must have been in DOC custody on or before August 27, 2003. In addition, a claimant must prove that he had a disability recognized by the Settlement Agreement and that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Claimant came into DOC custody on September 10, 2003. He was not in DOC custody on or before August 27, 2003. Claimant may not pursue his claim. Claimant does have the right to file a separate lawsuit concerning actions by DOC staff toward him from September 10, 2003 forward to his release on parole.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Claimant is dismissed; and

IT IS FURTHER ORDERED that Claimant is advised that he may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 14, 2007.**

SIGNED this 20th day of February, 2007.

BY THE COURT:

Richard M. Borchers
Special Master

5

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 20th day of February, 2007 to the following:

Mr. Daniel Talavera
#118920
c/o Parole Agent Sheila Pitt
3642 S. Galapago
Englewood, CO 80010

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203