IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-669
Category II
Claimant: Astolfo Perez, #117887
Address of Claimant: c/o P.O. Travis Hadaway, 601 Colorado Avenue, La Junta, CO 81050

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Astolfo Perez (Claimant). Claimant previously was incarcerated in the Colorado Department of Corrections (DOC). When he filed his claim, Claimant was housed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Claimant presently is on parole.

This claim has been assigned to Category II. Pursuant to the Remedial Plan, Claimant was not entitled to a hearing. Claimant has been given an opportunity to submit documents in support of his claim. Defendants have filed a response to the claim. Claimant was given the opportunity to reply to the response of Defendants, but he has filed nothing further in support of his claim. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 11, 2003. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). It is unclear as to all facilities in which Claimant has been placed. He was at AVCF when he filed his claim. He has been released on parole.

In his initial claim form, Claimant checked the boxes for mobility and vision impairment. Claimant stated, in part, as follows:

> Have problems with both of my knees, fell down while at Territorial Correctional Facility on some ice on floor. According to doctor need surgery. I'm in pain all the time, can't walk without pain and when I sit down it hurts more. Also got respiratory problems & need breathing machine at night, can't see very well & have crutches in my cell for my legs. Can't get the meds prescribed by doctor for my pain in DOC. PA continues to give me different medications that don't work & make sick because of all the other medications I take for high blood pressure & breathing problems. I am still on pain, so much that some times I can not walk to the chow hall, My breathing machine need replacement packs regularly but I'm given the run around while I was in Territorial. A lot better here but procedures lack procedures to avoid delay or/and wrong order of replacement pack.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> DOC have ignored my constant claims of unbearable pain on both of my knees and have moved me to this facility where the walk to the chow hall is twice as big as when I was on Territorial. I believe this has a lot to do because I cannot speak English very well nor understand a lot of what they say on the medical department.

Claimant was forwarded supplemental forms to complete and return. The supplemental forms were filed.

In his supplemental form, Claimant describes the constant pain that arose after his fall at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He states that he had few accommodations for his condition at AVCF and had to wait to use showers on the first floor, as he cannot climb stairs.

In his supplemental form for vision impairment, Claimant states, in part, as follows:

> The eye glasses CDOC have given me don't help me see any better than not wearing glasses. My eye sight have deteriorated very fast and continuously. By the

4

> time CDOC supply me with eye glasses I need another stronger prescription, light on units very low & I get headaches from forcing my eye sight.

Claimant also has alleged that lighting in DOC facilities is deficient. As a result, it is hard for him to see.

Claimant filed an additional document which included medical records and affidavits. Claimant states that " Mr. Perez's present condition started in 2004 when he slipped and fell on a icy walkway at the Territorial Corr. Facility." A medical record from February 8, 2004 confirms that Claimant sought treatment as the result of the fall on ice at CTCF. It was noted that Claimant's right knee was slightly swollen. Medical records subsequent to that date reflect continuing pain and problems with the knees.

Defendants have submitted a response to the claim. Attached to the response are some of Claimant's medical records. Defendants argue that Claimant has failed to establish his claim.

Claimant was given the opportunity to file a reply to the response of Defendants. Despite being given up to including December 20, 2006, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to answer this question, each claimed impairment or disability must be examined. Under the Settlement Agreement, Claimant must establish that he was disabled on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham and the class was established.

This is a Category II claim. Claimant is not entitled to a hearing. The claim must be adjudicated on what has been submitted by both sides. Claimant carries the burden of proof to establish that he was disabled on or before August 27, 2003.

**Vision**: Claimant has made vague allegations concerning his vision. Claimant came into DOC custody on June 11, 2003. No evidence has been presented that between that date and August 27, 2003 that Claimant had any vision problems.

Defendants have submitted medical records reflecting that Claimant did not have any vision problems that affected his activities of daily life. He received an examination on June 13, 2003 and was found to have 20/100 vision each eye before correction. *Exhibit G*. Subsequent examinations indicated that his vision had improved and that he had been provided eye glasses. *Exhibit H; Exhibit I.*

5

Under the provisions of the Settlement Agreement, Claimant carries the burden to show that he had a vision impairment on August 27, 2003 that was significant enough to affect his activities of daily life. Claimant has not met that burden. He is not part of the class as vision impaired.

**Mobility**: According to the documents of Claimant, his mobility problems began after the fall at CTCF on February 6, 2004. Medical staff saw Claimant on February 8, 2004 and noted that the fall had occurred two days earlier. Claimant related to medical staff that he heard a pop in his knee when he fell. He was prescribed crutches at that time.

Claimant has submitted no documents relating to anything prior to February 6, 2004. Defendants submitted an x-ray report from June 17, 2003 that reflected Claimant had a bad right knee. *Exhibit D*. The doctor evaluating the film stated that Claimant had "[d]egenerative changes with probable loose bony body in the medial compartment."

Claimant was given a medical examination on June 13, 2003. The medical provider noted that Claimant had bad knees and provided a number of restrictions. These included no stairs, a lower bunk, and first tier. *Exhibit G*.

After the fall, Claimant was referred to Dr. Go, an orthopedic specialist. Dr. Go stated in his report, in part, as follows:

> S. Patient is a 54 y/o gentleman who states that he has right greater than left knee pain, He has no pain at rest, he has pain when he starts ambulating. He would not quantify from 0-10, he states it "hurts bad" however. He states he has been incarcerated x 1 out of a total of four years.
> O. Exam. Bilateral lower extremities, patient is neurovascularly intact. ROM 0-130 degrees, both knees are stable, he is tender at the joint lines medially, right greater than left. Both knees are stable, there is no effusion. X-rays done today reveal degenerative changes, bilateral knees.
> P. Naprosyn, 500 mg bid with food on a routine basis, add Tylenol on top of it if he is still hurting.
> I discussed steroid injections vs. viscous supplementation.
> He will probably need a total joint replacement some day.

*Exhibit E*.

From all evidence presented, the Special Master finds that Claimant had a lower extremity condition that was permanent on August 27, 2003. This condition affected him to the point that he was given a restriction that included no climbing of stairs. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The answer to this question is yes. Other than health issues,

there does not appear to have been any disqualification from programs, benefits, or services for other reasons.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?**
Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. If Claimant establishes that he was discriminated against during that period of time, then he may include acts of discrimination that post-date August 27, 2003 as part of his claim.

Claimant came into DOC custody on June 11, 2003. Claimant's allegations and evidence concerning discrimination all relate to actions after February 6, 2004, the date of the fall at CTCF. There is no evidence before the Special Master that reflects Claimant was discriminated against by DOC and its staff because of his mobility disability on or before August 27, 2003. Claimant bears the responsibility of establishing that he was treated differently because of the disability and that was in violation of the ADA and Rehabilitation Act. Since Claimant has not established that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act for the period ending August 27, 2003, the Special Master cannot consider anything that occurred after August 27, 2003.

Claimant is concerned about his health, and this is not a frivolous concern. Claimant is upset about the medical care that he received while incarcerated in DOC. He has concerns about the care provided, and his concerns may have some legitimacy.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Under the Settlement Agreement, Claimant had to prove that he was the victim of discrimination that occurred on or before August 27, 2003. He has not done that. His allegations of discrimination all occur after the fall on February 6, 2004. Claimant has the right to pursue separately any claims that he may have that arise after August 27, 2003. He cannot pursue his claim for the reasons noted.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

7

IT IS HEREBY ORDERED that the claim of Astolfo Perez is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 5th day of January, 2007.

BY THE COURT:

_____
Richard M. Borchers
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ___ day of January, 2007 to the following:

Mr. Astolfo Perez
#117887
c/o P.O. Travis Hadaway
601 Colorado Avenue
La Junta, CO 81050

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203