Case 1:92-cv-00870-CMA-MEH   Document 2588   Filed 03/12/07   USDC Colorado   Page 1 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-684
Category II
Claimant: Michael Sorden, #109538
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Michael Sorden (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is incarcerated at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

The Special Master has reviewed the claim, supplemental forms, and response of Defendants. Claimant was granted the opportunity to file a reply to the answer of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." This is definition that is binding upon the Special Masters.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 21, 2001. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. He was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He then was placed at FCF.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows:

> Medical personnel at the Denver Reception and Diagnostic Center (DRDC) were aware that I had pre-existing mobility disabilities with my right femur and right dominant wrist. Although I have received medical treatment and surgeries for these disabilities since I've been incarcerated in the Colorado Department of Corrections (CDOC) these treatments and surgeries have been provided in a piecemeal fashion,

3

and have been based more upon monetary concerns of the CDOC and Colorado Access, the Health maintenance organization that determines whether, and what type of medical care is provided to CDOC inmates, rather than what is medically necessary, based upon recommendations of professional medical personnel.

The disability to my right dominant wrist has prevented me from doing even the most basic of tasks, such as using the push-buttons on the sinks provided by CDOC in an inmate's cell(which causes me extreme pain, due to the constant, sharp pain associated with the extended healing process of multiple treatment and surgeries to the wrist), and the fact that I am unable to tie my shoes, without extreme pain....

The disability to my right femur, which is the result of a fall from a cliff in Utah in 1989, is a pre-existing condition that medical personnel at DRDC were aware of when I processed into the CDOC in the year 2001. I have had chronic pain while incarcerated in the CDOC, mainly because of a metal rod/nail that was placed in my right femur subsequent to the 1989 accident.....

The mal-rotation of my right femur has caused pain and damage to my right knee and hip, which severely affected my ability to continue my profession....I was, and still am, unable to sit for long periods of time, which prohibited me from returning to an educational environment, and sitting in a classroom to learn a new profession.

I was an athlete, who played both football and baseball in school but am only able to do so with extreme, chronic pain....I sleep with great discomfort, and suffer from sleep deprivation because of the chronic pain in my leg, knee, and hip, exacerbated by thin CDOC mattresses, causing spine misalignment, with resulting back pain. The pain to my back, knee, and hip causes me such excruciating pain that I often don't untie my shoes when I go to bed, and leave them on.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

I believe that the CDOC has discriminated against me by providing piecemeal treatment and surgeries for my mobility disabilities, which, as previously stated, have been based more upon monetary concerns of the CDOC and Colorado Access. The CDOC is discriminating against me by denying me specific accommodations that would make recovery more tolerable, and much less painful. More particularly, the CDOC has failed to provide me with sink knobs that turn, when they are fully aware that I am unable to push the knobs without excruciating pain. I also am being denied a wedge (pillow), and an additional pillow to place between my legs, to help relieve my hip pain. As previously mentioned, I am being denied a thicker "medical mattress" by the CDOC, even though the cellhouse that I am housed in has at least fifteen (15) of these thicker mattresses in storage, on-site.

Claimant also has alleged in his claim form that he was denied antibiotics while at LCF. This medicine was necessary because of an infection in the femur.

4

Claimant was sent a supplemental form to complete. He completed the form and returned it to the Special Master. In that supplemental form, Claimant stated, in part, as follows:

> As detailed in the Claimant's initial claim form and the attached affidavit incorporated herein, the Claimant suffers from two mobility impairments:
> (a) A right dominant wrist dysfunction augmented by repeated surgeries and extensive and incomplete healing times.
> (b) A right hip, femur and knee dysfunction augmented by repeated surgeries and extensive and incomplete healing times.

Claimant went on to allege as follows:

> The Claimant cannot place his full weight upon his right leg without pain, lay down without pain, or perform any locomotion without pain. The Claimant has an approximate 60%-80% total range of motion in his right leg. The Claimant's inability to effectively use his right leg has caused an overuse in his right leg leading to new injuries in the form of a cracked third metatarsal and torn ligaments in the left heel.

Claimant has attached an affidavit to his supplemental form which details treatment over the period of time that he has been in DOC custody.

Defendants submitted a response to the claim. Attached to that response were a number of pages of medical records. Defendants argue that Claimant is not mobility impaired.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including January 29, 2007, Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In his initial claim form, Claimant checked only the box for mobility impairment. The burden is upon Claimant to prove that he was mobility impaired on or before August 27, 2003. Since Claimant is not entitled to a hearing, this claim must be resolved on the written documents that have been submitted by both sides.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has ever used a wheelchair while in DOC custody.

5

The definition of mobility impairment is binding upon the Special Master. There must be a showing of a permanent lower extremity impairment that affects walking. Claimant has had problems with this right wrist. This condition persists but is not covered by the Settlement Agreement. Claimant may pursue a separate lawsuit concerning his right wrist, but he may not pursue issues concerning his wrist in this claim. The wrist is not a lower extremity condition.

Defendants argue that Claimant fails to meet the definition of mobility impaired for his right femur. Specifically, Defendants argue that he can walk without major difficulty. In support of this position, Defendants have submitted some of Claimant's medical records. Only one page of the medical records submitted predates August 27, 2003. *Exhibit E.* The physical examination done on July 3, 2001 reflected a mild limp in Claimant's right leg. He received significant restrictions at that point (lower bunk, no camps, no intense labor, etc.).

Based upon all of the evidence submitted by both sides, the Special Master determines that Claimant was mobility impaired on or before August 27, 2003 due to the condition of his right femur. He is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. There does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has failed to carry his burden of proof that he was discriminated against by DOC and its staff due to a mobility impairment.

Claimant's major concern is with his medical care. Indeed, he has acknowledged that he has received medical care while in DOC custody. He believes some of this care was piecemeal and done only when monetary considerations were considered first by DOC. These concerns are beyond the realm of the Settlement Agreement.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the case provided to him, that is beyond the jurisdiction of the Special Masters. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law, Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has failed to prove that he was subjected to discrimination prohibited by the ADA and Rehabilitation Act. Claimant has been given access to employment, services and programs. The medical care concerns may be legitimate, but that cannot be acted upon by the Special Master in light of the *Fitzgerald* decision.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Michael Sorden is dismissed, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May14, 2007.**

SIGNED this 19th day of February, 2007.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 14 day of February, 2007 to the following:

Mr. Michael Sorden
#109538
FCF
P.O. Box 999
Canon City, CO 81215-0999

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203