IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-870 (OES) (Consolidated for all purposes with Civil Action No. 96-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-253
Category III
Claimant: George Tinsley, #108526
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089-8535

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on January 4, 2007. This hearing was held at the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado. Present were the following: George Tinsley (Claimant); and Celia Randolph, attorney for Defendants.

Testimony was received from the Claimant. Defendants did not present any witnesses. Defendants offered into evidence Exhibits A through C, and all were admitted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

The Settlement Agreement provides that all claims assigned to Category III are to receive a hearing. Based upon the testimony from the witnesses, plus a review of exhibits and submitted documents, the Special Master finds the following to be the facts necessary for resolution of the claim.

Claimant came into CDOC custody on March 19, 2001. After an evaluation period at the Denver Reception and Diagnostic Center (DRDC), Claimant was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He remained there for approximately two weeks. He then was transferred to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. HCCC is a private correctional facility run by Corrections Corporation of America (CCA). DOC has contracts with CCA for placement of Colorado inmates in various facilities in Colorado.

During his two-week evaluation period at DRDC, Claimant was diagnosed as having diabetes. He was placed onto a sliding insulin scale and began to receive medication. He was placed on a special diabetic diet and received other medication, including Glucophage. Claimant testified that he had been in a county jail for one year prior to his transfer to DOC but that no medical staff at that jail had indicated that he was diabetic.

Claimant has been able to work his way off of insulin. He continues to take other medications and receive what are purportedly diabetic meals.

Claimant testified that he is under great stress because of the diabetes. He is aware from his own research of the potential problems that can arise from the disease. This would include kidney problems. He testified that his feet are getting worse and his vision continues to deteriorate. Claimant testified further that DOC has a generalized approach to treatment of diabetes. He believed that there should be a team approach to treating diabetes. He indicated that he had not received any education on diabetes, having to search on his own for information.

Claimant testified further that he has a lower bunk restriction. He has worked in the past but does not have a regular job at the present time. He also indicated that he has had trouble sleeping and that conditions at HCCC are not good.

Claimant acknowledged that he had not been able to attend the SOTP program. That program requires convicted sex offenders to acknowledge their culpability, and Claimant maintains that he did not commit any criminal act. Failure to complete SOTP has hindered his ability to progress through the system and obtain parole. Claimant will complete his sentence in late 2007.

Claimant further admitted that he had refused some meals because they were no different

than the regular menu. Diabetic candy was taken off of the canteen list at HCCC shortly after he arrived at HCCC.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no dispute that Claimant is diabetic. He is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by CDOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services, except for the SOTP program. Claimant's disqualification from that program has nothing to do with his diabetes.

**3. Was the Claimant discriminated against by CDOC because of his or her disability?** Claimant testified at length concerning the medical care and education that he had received at HCCC. Claimant was and is concerned about his health, and there is legitimacy to that concern. With one exception, Claimant's concerns are with the quality of the medical care that he has received while in DOC custody.[2]

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the medical care provided to him, that is beyond the jurisdiction of the Special Masters. The same is true as to the lack of medical education concerning diabetes. Since the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law, Claimant must pursue separately any rights that he may have concerning the quality of his medical care.

One significant area of discrimination has been established by Claimant. In the affidavit of Dr. Neufeld, he makes the comment that "Mr. Tinsley's most recent canteen purchases indicate that he continues to make consistent purchases of sugar containing foods that should not be consumed

---

[2] Claimant has made allegations that the diabetic meal is nothing more than the regular meal. Such an allegation, in and of itself, does not constitute sufficient proof that the meals are the same.

by diabetics for good control since consummation of such foods make it impossible for medication to control sugar levels." *Paragraph L, Exhibit A*. This type of paragraph appears all the time in such affidavits. What does not appear ever is an indication of what foods or sweets may be available for consumption by a diabetic. In this case, Claimant has testified that the warden at HCCC discontinued diabetic candy shortly after he arrived at the facility. In other words, Claimant was denied the opportunity to secure an item/s from the canteen that a non-diabetic was and is able to purchase. To argue that Claimant had made unwise choices in canteen purchases is disingenuous when the diabetic candy was removed as an option. No reason was offered at the hearing why diabetic candy and other items for diabetics could not be offered through the canteen. That is particularly true when the inmate population in DOC has an extraordinarily high percent of diabetics. Claimant has established that discrimination has taken place as to the discontinuance of diabetic candy from the canteen.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant can only secure items, such as candy, through the canteen. Claimant cannot buy such candy through family or an outside vendor. Termination of diabetic candy placed Claimant in the position of eating no candy or eating candy that is not healthy. Claimant is entitled to $100.00 as the damages as a result of this discrimination.

IT IS HEREBY ORDERED that the claim of George Tinsley is granted, in part, and he is awarded $100.00 as damages; and

IT IS FURTHER ORDERED that the remainder of the claim of George Tinsley is denied; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 8th day of January, 2007.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 8th day of January, 2007 to the following:

Mr. George Tinsley
#108526
HCCC
304 Ray Sandoval Street
Walsenburg, CO 81089-8535

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203