IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-255
Category III
Claimant: Anthony Ganter, #110958
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on January 4, 2007. This hearing was held at the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado. Present were the following: Anthony Ganter (Claimant) and Celia Randolph, attorney for Defendants.

Testimony was received from Claimant. Also offered by Claimant was Exhibit #1 which was admitted. Defendants' Exhibits A through D were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in November, 2001. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred in late 2001 to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was at FCF for approximately fifteen months. Claimant then was placed at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. He was at FLCF until October, 2005 when he was transferred to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. HCCC is a private facility that has a contract to take DOC prisoners.

On June 17, 2002 while at FCF, Claimant was diagnosed as having diabetes. He was advised that he that his condition was borderline. He was placed into the chronic care program and was provided a diabetic diet. As part of the chronic care program, Claimant testified that he was to be seen by medical staff at least every six months.

Claimant testified that he has sought proper medical and foot care since being diagnosed as diabetic. He was not diabetic when he came into the custody of DOC. He indicated that he has not been receiving regular eye examinations and has experienced significant problems with his heels and feet. He has cracks and lesions on the heels of his feet. There is reddish brown discoloration reflecting circulatory problems. His diabetes has caused depression, as he is worried about his health.

Claimant testified further that he has had major activities of life disrupted by his diabetes. He has concerns eating. Walking is difficult because of the problems with his heels. Claimant has had trouble losing weight. He does not believe that the medical staffs at the various facilities have been of much help. For his heels, he was advised to purchase a cream from the canteen.

As time has progressed, Claimant started to receive medication. He is on Diabeta and Glucophage. He also is taking insulin by shot twice per day. Claimant expressed concern that HCCC does not call diabetics for meals at the same time each day, a procedure that was used at other facilities. Claimant had employment in the kitchen and as a pusher at FLCF. He has not worked much at HCCC. He has not been involved in programs at HCCC.

On cross-examination, Claimant testified that he had not been denied entry into any program at DOC. He stated that the diabetic meals are really the same meals for other inmates and that he cannot eat what everyone else eats. His heels get cracked. He now receives a lotion from medical. That lotion does not help that much.

In his rebuttal testimony, Claimant stated that he did not receive a snack until he arrived at FLCF. He always has taken his medications as prescribed and has tried to adhere to the diabetic diet. He has not received any physical or other therapy since being in DOC custody. He has never had a problem with his blood sugar level being too low. As a result, he has never had glucose tablets.

Various medical records were submitted by Defendants before and during the hearing. The initial medical examination of Claimant on November 5, 2001 indicated that he was possibly diabetic. Formal diagnosis of the disease did take place on June 17, 2002. The medical records reflect that Claimant had several medical appointments over the years. Recommendations were made to Claimant for weight loss and to refrain from eating inappropriate food items from the canteen list.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no question that Claimant has diabetes. He was diagnosed has having diabetes in June, 2002. Claimant is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant's concerns and complaints relate to the medical care that he has received. It is clear that diabetes has proven to be a difficult condition for him to deal with. That is understandable. He has expressed concern that his diabetes also has affected him emotionally, causing depression.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

In light of the *Fitzgerald* decision, a claimant must show that he was the subject of discrimination prohibited by the ADA and Rehabilitation Act. An example would be being placed into a facility that had no ramps for wheelchairs or not providing braille educational resources for a blind inmate. In this case, Claimant has raised issues related to his medical care. He testified that he had not been denied access to programs as the result of his diabetes. He has not provided any evidence that he was denied services because of his diabetes. Claimant has expressed legitimate and

natural concern about his health and the medical care that has been provided to him. The medical records submitted by Defendants reflect that Claimant has received medical care, including eye examinations. The quality of that care is beyond the jurisdiction of the Special Master.

Claimant has failed to establish that he was the victim of any discriminatory act on or before August 27, 2003 that was prohibited by the ADA and Rehabilitation Act. In light of the *Fitzgerald* decision, Claimant retains the right to pursue a separate lawsuit under the Eighth Amendment concerning the quality of care that he has received.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the fact that the answer to #3 above is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Anthony Ganter is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 9, 2007.**

SIGNED this 11th day of January, 2007.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ___ day of January, 2007 to the following:

Mr. Anthony Ganter
#110958
HCCC
304 Ray Sandoval Street
Walsenburg, CO 81089

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203