IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-204 (formerly 02-042)
Category III
Claimant: Thomas Martinez #117601
Address of Claimant: DRDC, 10900 Smith Road, Denver, CO 80239

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 29, 2006. Present were the following: Thomas Martinez, Claimant; Brooke Meyer from the Office of the Attorney General, counsel for Defendants; Dr. Orville Neufeld, witness for Defendants.

Testimony was received from the following witnesses: Claimant and Dr. Orville Neufeld. Exhibits 1 through 12 were offered into evidence by Defendants as follows:

| | | |
|---|---|---|
| Exhibit 1: | 3pages | Offender Profile for Thomas R. Martinez |
| Exhibit 2: | 1page | Colorado Department of Corrections/Ambulatory Health Record dated 11-17-04 for Claimant. |
| Exhibit 3: | 1page | Colorado Department of Corrections Offender Grievance Form for Thomas Martinez, numbered CT05/06-350 |
| Exhibit 4: | 1page | State of Colorado Department of Corrections Disposition of Charges for Thomas Martinez, dated 7-19-03 |
| Exhibit 5: | 1page | State of Colorado Department of Corrections Notice of Charges for Thomas Martinez dated 7/8/03 |
| Exhibit 6: | 3pages | Progress Assessment Summary for Thomas R. Martinez Dated 06/06/2006 |
| Exhibit 7: | 3pages | Progress Assessment Summary for Thomas R. Martinez |

1

|  |  | Dated 11/24/2004 |
|---|---|---|
| Exhibit 8: | 1page | Application Message dated 2005-04-19 06:42 |
| Exhibit 9: | 1page | Memorandum to Inmate Thomas Martinez from Jean Connett dated May 19, 2005. |
| Exhibit 10: | 1page | Medial record for T. Martinez dated 9-18-03 |
| Exhibit 11: | 2pages | Sterling Eye Center, L.L.P. medical record for Thomas R. Martinez dated April 23, 2004 by the SCF Clinic |
| Exhibit 12: | 9pages | Sterling Regional MedCenter Discharge summary for Thomas Martinez |

At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and

2

> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III.  DEFINITIONS
>
> A.  COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B.  QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C.  PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2.  The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1.  Is the claimant a disabled individual who is a member of the class?
> > 2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Martinez submitted a claim that was assigned claim number 02-042. The claim is premised on an alleged mobility disability, vision disability and disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. On March 7, 2006, Special Master Richard M. Borchers reassigned Mr. Martinez's claim to Category III, at which time it was also assigned a new claim number 03-204.

4. Claimant Martinez entered CDOC custody in 2003. He was initially housed at DRDC and then at Sterling Correctional Facility (SCF) until November of 2003, when he suffered a stroke. Thereafter, he was housed periodically at DRDC and Sterling. In approximately July of 2004, he was transferred to Colorado Territorial Correctional Facility (CTCF), and, with the exception of several short stays at DRDC, has remained in CTCF to the present time.

5. Claimant suffered from high blood pressure and heart disease prior to entering CDOC custody. Prior to entering CDOC custody, Claimant had heart bypass surgery. Claimant has also been diagnosed as a diabetic. It is unclear whether this diagnosis was made before or after he entered CDOC custody.

6. Prior to November of 2003, Claimant Martinez was able to walk, although his walking was restricted because of his blood pressure. In November of 2003, Claimant suffered a stroke. He was unable to walk after the stroke, and was provided with a wheelchair. Martinez asserts that he suffered the stroke because he was not provided with his blood pressure medication for three days. He indicates that during this three-day period, he went to the med-line and was told that the facility had run out of his medication. Claimant also contends that even after his stroke, he was walking a little. However, approximately two years ago, he was sent to the DRDC infirmary and then to the hospital. While at the hospital, a needle was allegedly left in his body and he developed an infection. Since that time, he has been unable to use his left knee and cannot walk. Although he was supposed to receive physical therapy, Claimant contends that he never received any.

7. Claimant Martinez testified that he is a diabetic and takes insulin, which controls his blood sugars satisfactorily.

8. Claimant stated that he was provided with glasses while he was at SCF and was able to see well with them. He testified that on one occasion when he went to DRDC in December of 2005, the glasses were taken away from him and have not been returned. Martinez indicated that he has been told that he cannot get another pair of glasses without paying for them.

9. Claimant also indicated that he has had some kidney problems for the past two years.

10. Martinez testified that he has been assigned an assistant/pusher to help him transport himself around the facility. He further testified that he does not have any difficulty accessing any of the facilities at CTCF because there are ramps. He worked at SCF folding flatware and also worked at CTCF when he wasn't sick. Martinez stated that he tried to get a job in the Tab Plant but there were no openings. He has attended a mental health program and attends church. He has been given medical restrictions, including (a) lower tier-lower bunk; (b) no intensive labor; (c) no vigorous exercise; (d) no heavy lifting; (e) no assignment to camps; (f) no assignments over 8000 ft; and (g) restriction to Canon City area.

11. Based on his review of Claimant Martinez's medical records, Dr. Neufeld testified that Martinez had eye examinations in September of 2003 and April of 2004. His visual acuity without correction in September of 2003 was 20/30 in both eyes. In April of 2004, his visual acuity was 20/25 with glasses and 20/30-20/40 without glasses. Dr. Neufeld conceded that Claimant is mobility impaired, within the meaning of the Remedial Plan.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Remedial Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing or vision impairment, as defined in the Remedial Plan or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Martinez has sustained his allegation that he has a permanent mobility impairment within the meaning of the Remedial Plan. Martinez cannot walk and is confined to a wheelchair. The Special Master finds and concludes that, based on Claimant's visual acuity tests, he does not suffer from a permanent vision disability within the meaning of the Remedial Plan. The Special Master finds and concludes that while Martinez is a diabetic, the evidence does not establish that his diabetes substantially limits him from engaging in any major life activity. His diabetes appears to be satisfactorily controlled by medication. Finally, the Special Master finds and concludes that to the extent that Claimant suffers from kidney problems, there is no evidence indicating that these are related to any disability covered by the Remedial Plan.

3. The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the DOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, and benefits offered by the DOC.

4. The key issue is whether Claimant was discriminated against because of his disability. Claimant Martinez acknowledges that to the extent his medical condition allows, he has been able to utilize the facilities, programs and services offered by CTCF and that he has not been discriminated against with respect to any facilities, programs and/or services because of his mobility disability. Claimant indicated that he has worked on occasion, has attended church and has participated in a mental health program. He has

been assigned an assistant/pusher and does not assert that he is precluded from accessing any facilities because of his disability. There is no evidence that he has requested any accommodation that would permit him to participate in any other programs or take advantage of any other services.

     5.    Claimant's main contention is that he did not receive proper medical treatment, which resulted in a stroke and ultimately caused him to be unable to walk. He also complains of substandard medical care at the hospital when a needle was allegedly left in his body. In addition, he asserts that he was supposed to receive physical therapy but none has been provided. However, evidence relating substandard medical care, lack of medical care, and/or failure of the DOC to properly treat or provide proper medication for Claimant's medical conditions does not establish a violation of the ADA or the Rehabilitation Act. While such actions or failures to act may give rise to claims for deliberate indifference to medical needs, the courts have held that substandard medical care or failure to properly treat a medical condition or disability does not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation*, 403 F.3d 1134, 1144 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

     6.    Additionally, the Special Master notes that the event which Claimant contends resulted in his mobility disability, as well the loss of his glasses while at DRDC, both occurred after August 27, 2003. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003.

     7.    Because Claimant Martinez has not proved by a preponderance of the evidence that he has a vision disability or a disability due to his diabetes under the Remedial Plan; and because he has failed to prove by a preponderance of the evidence that he been discriminated against by the DOC because of his mobility disability; and because his allegations relate to events that occurred after August 27, 2003, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Martinez's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before May 16, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 16th day of March, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 16th day of March, 2007 to the following:

Mr. Thomas Martinez, #117601
DRDC
10900 Smith Road
Denver, CO 80239

Ms. Brooke Meyer
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

_____
Susan L. Carter