IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-895
Category II
Claimant: Alex Herrera, #117027
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Alex Herrera (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He has been placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

The Special Master has reviewed the claim and motion filed by Defendants. Claimant was granted the opportunity to file a reply to the motion of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 10, 2003. He was placed initially at the Denver Reception and Diagnostic Center (DRDC) for testing. He then was placed at the Crowley County Correctional Facility (CCCF) at Olney Springs, Colorado.

In his amended claim form, Claimant checked the boxes for hearing impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form.

> From injury which causes daily migraine headaches which at times cause me to blackout. Bright light hurts my eyes as well as seeing blotchy & spots at times also some blurriness. I am very sensitive to a lot of noise at one time. Noisy & Loud surroundings aggravate the headaches. Because of noisy and loud places causing me to experience daily headaches which are increased with noisy, loud and/or brightly lit places I cannot take my children to certain events that I used to also to obtain work in areas where I used to. I may not be able to obtain a license because of the blackouts which has already caused me to get into an accident.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I continually requested that I be taken to a hospital to see a doctor and have tests done to determine what was causing the migraines which were intensified as well as brought on by loud, noisy environments. Also places where there was a lot of bright lighting. Also to determine why I was blacking out from these headaches, and to try and care for them in the correct way other than what KCCC was doing which was only giving me pain medication which did not work. Also at time of injury I was only given a visual examination as to my injuries.

Claimant went on to state:

> Because I was not allowed to be seen by outside doctor which I needed to because KCCC was not capable of dealing with my injury and the results that followed. I went through daily pain and misery. I got into an accident from a blackout which hospitalized me with numerous injuries and also costs me much money as well as eventually sending me back to prison for violation of parole because of car accident.

Claimant was sent supplemental forms to complete and return. Claimant submitted forms for vision, hearing and mobility impairments. In the supplemental form for mobility impairment, Claimant stated, in part:

4

> Because of my headaches, often migraine, I must lay down and/or take a nap since I have these headaches every day often all day. I am not able to go a lot of places or do a lot of things I used to. Also blackouts cause me to also be limited to things I used to do in every day life.

Claimant restated that he has blackouts from his vision problems. Claimant submitted copies of medical request forms and records in support of his claim.

Defendants submitted a motion to dismiss. Claimant was granted up to and including March 10, 2007 in which to file a response to the motion. Despite being given time, Claimant has filed nothing further in support of his claim or in opposition to the motion to dismiss.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Since Defendants have filed a motion to dismiss, all reasonable allegations of Claimant must be accepted as true.

Claimant has indicated that his medical problems arose as the result of a fall while working at the KCCC kitchen in February, 2004. Claimant's medical records reflect that this is when his complaints concerning headaches began. *Exhibit C.* Defendants correctly note that nothing has been submitted which alleges any problems prior to the fall. Accepting as true everything that Claimant has set forth, his disabilities arose in February, 2004.

The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. A claimant had to have been in DOC custody on or before that date and suffering a disability recognized by the Settlement Agreement. According to his own allegations, Claimant became disabled in February, 2004. Claimant is not a member of the class. Claimant does have a right to bring a separate lawsuit for actions that occurred in February, 2004 and later. He may not pursue his claim.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, as Alex Herrera is not a member of the class and may not pursue his claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 28, 2007.**

SIGNED this 16th day of March, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master