IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

---

Claim Number 02-679
Category II
Claimant: Rudy Saiz, #43781
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Rudy Saiz (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He has been placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant originally came into DOC custody in 1973. He was released in 1979. He returned to custody in 1981 and remained until 1983. He was back in custody in 1990, 1995, 1998, and 2000. He was incarcerated in 2001 and has remained in custody since then.

In the initial claim form, Claimant checked the boxes for mobility impaired, hearing impaired, vision impaired, and diabetes. Claimant stated, in part, as follows in his initial claim form.

> I have severe back pain and now my knees are in a lot of pain. My ears are always ringing and seem to be losing hearing capabilities. My eyes are getting worse and I feel it's attributed to possibly a diabetic problem. There are moments when I feel real strange until I eat something and the funny queasy feelings go away. If I could get proper medical treatment for my back it wouldn't end up costing DOC money for surgeries. All they want to do is give me a pain pill, which does nothing to solve the problem.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I am having difficulty with a member of the medical staff here at AVCF. I understand the PA has certain guidelines he needs to follow, but my problem has been in my file for a very long time now. I am thankful someone has taken the time to send me this packet to acquire assistance. I am always told I have arthritis in my spine, but there are certain places in my back that are always in pain and they are not located by my spine.

Claimant was sent supplemental forms to complete and return. Claimant returned as uncompleted his supplemental form for diabetes. Claimant stated, in part, in his supplemental form for hearing impairment as follows:

> I have a constant ringing in my ears. In 4-Mile, I brought it to the doctor's attention. I was given a hearing test, and still never heard anything about it. Here at AVCF they have given me antivert but it doesn't help me.

In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

> My mobility is in my back. When I was first taken to DRDC the doctor told me about certain vertebrae's in my spine that were damaged and the reasons for the constant pain.

4

In the supplemental form on vision, Claimant stated that "macular degeneration, glaucoma is a very real possibility."

Defendants submitted a response to the claim. Attached to the response are some copies of Claimant's records. Defendants argue that Claimant is not disabled and is not part of the class.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including January 16, 2007, Claimant has filed nothing further in support of his claim or a reply to the response filed by Defendants.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability alleged by Claimant must be examined separately. A claimant must show that he had a disability on or before August 27, 2003, the day the Settlement Agreement was approved.

**Diabetes:** Claimant has never been diagnosed as having diabetes. He received a screening for diabetes in February, 2006 and was determined not to have the disease. *Defendants' Exhibit A.* Claimant has provided no evidence that he is diabetic. Claimant has failed to prove that he is a member of the class because of diabetes.

**Hearing Impaired:** Claimant has been diagnosed as having tinnitus. *Defendants' Exhibit F.* Claimant is able to hear others, but the constant ringing bothers him. Claimant does not need to communicate through lip reading, signing or written means. *Defendants Exhibit J.* The Special Masters have ruled in the past that hearing impairment requires almost being deaf with difficulty in carrying on daily activities. Claimant has not proven that he is impaired under the requirements of the Settlement Agreement.

**Vision Impaired:** Defendants have presented evidence that Claimant received an eye examination in September, 2005. Claimant was 20/30 in his right eye and 20/40 in his left eye with his existing prescription. *Defendants' Exhibit I.* Claimant alleged that he may have more serious eye problems, but that was found to be the case at his last examination.

Claimant carries the burden to show that his activities of daily life have been substantially impaired by his alleged vision impairment. Claimant has not been able to carry that burden. He is not a member of the class as vision impaired.

**Mobility Impaired:** Claimant has alleged that he has back problems. There is a question as to when his back began to hurt him. Defendants conducted an examination on February 9, 2006 on the back and lower extremities of Claimant. *Defendants' Exhibit F.*

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence in the record that Claimant has ever used a wheelchair while in DOC custody.

Claimant claims that he has problems in his back and knees that are painful. Two examples are provided in the Settlement Agreement concerning mobility impairment. One is the inability to walk more than one hundred yards without stopping, and the other is the inability to walk a flight of steps without stopping. The evaluation conducted in February, 2006 does not indicate either of those examples are applicable to Claimant. The burden of proof has not been met by Claimant. He is not a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was disqualified to participate in programs or receive services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

Claimant's concerns have to do with the quality of medical care that he has received. He has alleged that he did not receive the medicine and treatment he needs. There is no question that he has received some care. This is not a case where care was denied due to the impairment of Claimant. The United States Court of Appeals for the Tenth Circuit ruled on April 11, 2005 that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). The ruling in *Fitzgerald* is now controlling law in this jurisdiction. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under either the ADA or Rehabilitation Act. All claims for substandard medical care must be brought under the Eighth Amendment or pursuant to state statutes.

Claimant has failed to establish that he was victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. His concerns about the quality of medical care may be taken up in a separate lawsuit. He may not pursue his claim for the reasons noted.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Rudy Saiz is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 29, 2007.**

SIGNED this 14th day of March, 2007.

BY THE COURT:

Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ____ day of March, 2007 to the following:

Mr. Rudy Saiz
#43781
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203