IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-840
Category II
Claimant: Jerald Lewis, #114965
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Jerald Lewis (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He then was placed on parole. According to the DOC Inmate Locator, Claimant now has returned to custody on a new sentence.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on October 9, 2002. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for a short period. He then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant was placed on ISP on April 27, 2004. He returned to DOC custody in February, 2005. He was at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado when he filed his claim. He was placed back on parole in October, 2005.

In the initial claim form, Claimant checked the boxes for mobility impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form.

> My vision is very poor without corrective lenses. I cannot read or write without corrected vision. I have rods, pins & screws in my rebuilt right ankle & back. Left knee is "blown out." I have full body arthritis among other ailments. This severely limits my mobility. I have great depression and a sense of hopelessness over my lack of ability to get corrective lenses, proper medical treatment or medication or progressive (camp) placement or programs that could help me become financially independent upon release, as well as these options facilitating the release prospects I might have.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I am being prevented from going to camp which affects my Comcor & parole status. I am being kept out of programs which would help me gain employment when I am released. I am being forced to do jobs I am unable to do or that cause me great pain & suffering. I am not being given proper medication, footwear, etc. which causes great pain. I am denied necessary eye wear.

Claimant was sent supplemental forms to complete and return. In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

> I have rods, screws & plates in my left ankle & back, a "blown out" knee and full body arthritis, which prevent any real mobility when coupled with the lack of proper medical treatment & medication.

Claimant stated further that "I cannot walk far, maneuver or climb or bend without great pain."

In his supplemental form for vision impairment, Claimant stated, in part, as follows:

> Terrible vision close up and at a distance without proper eye wear which results in migraine headaches, blurred vision, painful & burning eyes, etc., and a lack of ability to read, write or even watch T.V.

He alleged further that he was denied the opportunity to bring into DOC custody his own prescription eye glasses.

Defendants submitted a response to the claim. Attached to the response were several pages of Claimant's medical records. Defendants argue that Claimant is not disabled and is not part of the class.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including December 13, 2006, Claimant has filed nothing further in support of his claim or a reply to the response to his claim filed by Defendants.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability alleged by Claimant must be examined separately.

**Vision Impairment**: Claimant was incarcerated in DOC custody on October 4, 2002. He was released on ISP in April, 2004. In order to establish that he is vision impaired, Claimant must prove that his activities of daily life were affected during this period of time.

The medical records submitted by Claimant reflect that Claimant had an examination of his eyes when he entered into DOC custody. It was determined that he wore prescription eye glasses. He was measured as having uncorrected vision of 20/25 in his right eye and 20/20 in his left eye. *Exhibit B*. An optometrist saw Claimant on November 27, 2002. *Exhibit C*. Claimant was issued eye glasses on January 24, 2003. *Exhibit C*. Other exhibits submitted by Defendants reflect that Claimant maintained his eye glasses as a property item when transferred to other facilities.

Claimant has failed to prove that he had a vision impairment during the time period that ended on August 27, 2003. The evidence submitted by Defendants, and unrefuted by Claimant, establishes that eye examinations were provided to Claimant and that he received prescription eye glasses. There is insufficient evidence to find any impairment of activities of daily life due to any claimed vision impairment.

**Mobility Impairment**: The evidence submitted by both sides reflects that Claimant was injured in 1984. He received medical treatment that included insertion of metal rods in his back and

5

plates and screws in his ankle. Medical records reflect that motrin and other pain medications were provided to Claimant during the period of time ending on August 27, 2003.

The medical records of Claimant reflect that DOC medical staff provided restrictions as to the time limit for standing, weight limit on lifting, and utilizing a lower bunk. It is a close call from the evidence presented by both sides, but the Special Master finds that Claimant is mobility impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

There is no evidence that Claimant received treatment that was different from other inmates who did not have a mobility impairment. Claimant was able to work and attend classes. *Exhibit T; Exhibit U*. Claimant makes generalized allegations of discrimination but provides no evidence to substantiate the charge. Claimant had restrictions that related to his physical limitations. There is no evidence that these restrictions were not proper under the circumstances. Likewise, there is no evidence that Claimant would have been able to physically go to a camp and work. Defendants correctly note that Claimant did not request any accommodations while in DOC custody. *Exhibit W*. Claimant has failed to establish that any action taken against him was in violation of the ADA and Rehabilitation Act.

Claimant also has alleged inadequate medical treatment. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Jerald Lewis is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 4, 2007.**

SIGNED this 30th day of March, 2007.

                                          BY THE COURT:

                                          */s/ Richard M. Borchers*

                                          _____
                                          Richard M. Borchers
                                          Special Master