IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-303
Category III
Claimant: John L. Sheets, #94967
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 15, 2006. This hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: John L. Sheets (Claimant); and Scott Wilkonson, attorney for Defendants.

Testimony was received from Claimant. Exhibit #1 was offered and accepted into evidence. Defendants' Exhibits A through C were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

Claimant was granted permission to have Dr. David Oba, M.D. testify by telephone. A telephone conference was held on January 30, 2007. After the testimony of Dr. Oba was received, the claim was taken under advisement. Additional documentation has been received from Claimant. This order shall constitute the final action by the Special Master on this specific claim.

I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in 1997. He was released from custody in April, 2000. He then returned to DOC custody on March 17, 2003.

Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) when he returned to custody in 2003. After processing, he was placed at the Huerfano County Correctional Center (HCCC) in Walsenberg, Colorado. Claimant paroled on April 12, 2004. His parole was revoked on May 25, 2004. He went back to DRDC, and then transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. He was at BCCC until July, 2006 when he was transferred to FCF.

In his initial claim form, Claimant checked the boxes for mobility impairment and vision impairment. In his initial claim form, Claimant stated as follows:

> Blind out of one eye. Cannot walk short or long distances due to documented MRI in medical file. Clearly a mobility and vision impairment. I get chronic headaches because of my blurred vision, cannot walk short and long distances because MRI reflects a life threatening problem with feet.

As to discrimination by DOC and its staff, Claimant stated as follows:

> Did not receive treatment within a proper time frame. Physician in facility overlooked problem areas which this has violated my rights and caused harm to my life which could be life threatening.

Claimant was provided supplemental forms to complete and submit. In his supplemental form for mobility impairment, Claimant stated, in part, as follows:

> Mobility problems consist of problems in the tarsus, metatarsus area of both feet. Continuous swelling, diagnosed fluid sacs above metatarsus. Bone cartilage has deteriorated away due to constant popping of the cartilage between the ankle and foot joint.
>
> My mobility disability affects my life at DOC by way of constant sharp pain and popping in both feet on a daily basis. Cannot run or walk long distances and short distances because of this problem that is ongoing. Cannot work industries because of discrimination by DOC seeing me limp every day.

Claimant attached various medical records which reflect problems with his feet. He also was

4

diagnosed with scoliosis.

In his supplemental form for vision impairment, Claimant indicated that he had various problems, including blurred and double vision. He further stated:

> Claimant was denied his initial request to continue and participate in treatment at a level that he was previously assessed before his diagnosed vision impairment.

Claimant alleged that he was denied entry into the SOTP because of his vision impairment.

At the hearing, Claimant testified that he believed his vision problems were the result of DOC inaction. He was having trouble seeing and cannot complete the SOTP program due to vision problems. As a result, he has lost and will lose additional earned time that would reduce his sentence. He testified further that he is at the wrong facility for his medical problems.

Claimant testified that his mobility impairment arose as the direct result of an accident at FCF. He had a previous injury at ACC when placed in custody at the facility. He was experiencing left foot problems and is in constant pain each day.

On cross-examination, Claimant stated that he cannot see as well as before coming back to DOC. He cannot see anything at a distance. He is concerned about the future and the health of his eyes. He acknowledged that he had been denied access to Phase Two of SOTP because he cannot see. He acknowledged that he had been removed from the Phase Two program as the result of an altercation with another inmate.

As the result of an accident while in DOC boot camp, Claimant has an ankle that has bothered him ever since. The ankle has limited the ability of Claimant to work in an Industries job. The result is that Claimant is not able to make the money that he would like. He is involved in housekeeping work at FCF.

On rebuttal, Claimant testified that he never purchased any arch supports from canteen. He tries to play some basketball but pays for it the next day. Claimant testified that he did not want to end up in a wheelchair.

The Special Master allowed the file to remain open in order to take the testimony of Dr. David Oba, M.D. Claimant asked Dr. Oba if he remembered the condition of his feet. Dr. Oba testified that an MRI was done on each foot. The left foot is worse than the right. The feet had significant problems which would lead to chronic pain. Dr. Oba did not believe that the condition would get better on its own. The right foot is now experiencing problems as the result of overuse. Dr. Oba recommended that Claimant obtain orthotics for his feet. The wearing of DOC issue boots without orthotics is difficult and painful.

5

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** The date which is important is August 27, 2003. It was on that date that Judge Nottingham approved the Settlement Agreement. In order to be a member of the class, a claimant must show that he or she was disabled in one of the four categories on or before that date. In addition, the claimant must prove that he or she was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

**Vision Impairment**: In order to be vision impaired, a claimant must prove that he has a significant loss of sight that affects the activities of daily living. The medical records of Claimant reflect that Claimant first complained about vision problems in 2005. *Exhibit A*

A vision examination was done in October, 1997 as part of an intake physical. That exam reflected 20/20 normal eyesight. *Exhibit Q*. Another examination in March 03, 2003 reflected 20/25 eyesight in the right eye and the same in the left. *Exhibit R*. On June 24, 2005, eyesight was 20/60 in the right eye and 20/50 in the left. *Exhibit S*. Glasses were provided to Claimant at DOC expense. *Exhibit W*.

There is insufficient evidence to find that Claimant was vision impaired on or before August 27, 2003, as that term is used in the Settlement Agreement. Claimant is not part of the class as vision impaired.

**Mobility Impairment:** It is not disputed that Claimant injured his ankle in 1997. Claimant has received treatment for his feet since the accident.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant has used a wheelchair since being placed into DOC custody.

On February 6, 2006, Claimant received x-rays of both feet in February, 2006. There were no abnormalities according to the radiologist who examined the films. *Exhibit B*. Similar findings were made in 1998. *Exhibit C*. An x-ray of the right foot and ankle reflected no localized tenosynovitis in June, 2006. *Exhibit E*.

Claimant's medical file has entries reflecting the playing of basketball and other sports. *Exhibit A* ("he admits playing full court basketball 3x per week for 30 min"); *Exhibit G* ("plays handball but hurts to walk or stand next 3-5 days"); *Exhibit M* ("injured right ankle playing basketball"). Claimant has tried to remain active, and that is commendable.

The Settlement Agreement provides two examples of mobility impairment. The first example is where a claimant is not able to walk one hundred yards without stopping. The second is where a claimant is not able to claim a flight of stairs without walking. In this case, the evidence reflects that Claimant can run in addition to walking. The ability to play basketball and other sports is contrary to the requirements of the Settlement Agreement for mobility impairment.

Claimant has not established that he is mobility impaired, as defined by the Settlement Agreement. He does not have a "permanent lower extremity mobility impairment that substantially limits walking...." He has foot problems that will be with him probably forever. He does not have a permanent mobility impairment of a lower extremity. He is not part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this questions does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question # 1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of John L. Sheets is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 21, 2007.**

SIGNED this 7th day of March, 2007.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 2 day of March, 2007 to the following:

Mr. John L. Sheets
#94967
FCF
P.O. Box 999
Canon City, CO 81215-0999

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203