IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 02-803
Category II
Claimant: Kenneth Armbeck, #62000
Address of Claimant: 1799 W. 32nd Avenue, #306, Denver, CO 80211

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of Kenneth Armbeck (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He has been placed on parole and is living in the Denver metro area.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants, but he has filed nothing further in support of his claim. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on December 5, 1989. He was placed into several DOC facilities until he was paroled in August, 1996. Claimant returned to DOC custody on July 18, 1997. He was incarcerated again on a new conviction in Denver.

Claimant was placed initially at the Denver Reception and Diagnostic Unit (DRDC). After a short period of time, he was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Claimant was at AVCF until August 10, 2001. He then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He now has been released on parole.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form.

> Injured in 1997 by Denver Police Department. Hospitalized in DGH, infirmary, due to permanent injuries to neck, back, head, left hand and right knee which DOC did and had surgery done, which was not done right and denied me medical attention to head/body. DOC is not helping medical needs since I been incarcerated to DOC from misconduct of Denver Police Department, after 7 years still need medical attention. I have all medical records.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> Doctors has ordered DOC to give me medications for neck and back and DOC has failed to comply with medical attention due to injuries. DOC has given me knee surgery that has worsen and trying to cover up that making my life activities more painful and harder to get around, denied right medical care.

Claimant was sent a supplemental form to complete and return. In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

> Left hand and right knee loss range of motion, neck, back, head.
>
> Loss of range of motion affects my work and life abilities. "Chronic pain."
> Neck, back, l. leg, r. knee, head/body trauma. Post traumatic stress disorder.

In response to a question concerning accommodations that may have been requested, Claimant stated as follows:

> Proper medical care, rails in all bottom showers and cement track in yard here in LCF. Rails in cell for handy cap.

4

Attached to his supplemental form, Claimant attached two medical records from Denver Health and Hospitals. The one record indicates that Claimant fell as he was trying to run from the police. Claimant has written in that he was assaulted by Denver police.

Claimant submitted medical records after filing his supplemental form. The first document is from February, 2004 when Claimant was seen at St. Thomas More Hospital because of right knee problems. Dr. Patterson diagnosed that Claimant had knee problems with a probable lateral meniscus and anterior cruciate ligament tear. The second document is from Denver Health and Hospitals and reflects an radiological report that found a "closed fracture of lumbar vertebra, without mention of spinal cord injury." The third document is a grievance which reflects that Claimant received a lumbar MRI in late 2002. Claimant also submitted various pages of his medical records from his stay in DOC.

Defendants submitted a response to the claim. Attached to the response were several pages of Claimant's medical records. Defendants argue that Claimant is not disabled and is not part of the class. The documents attached to the response reflect that Claimant received surgery on his right knee on February 18, 2004. Claimant was provided crutches and then a cane while recovering.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Despite being granted up to and including April 6, 2007, Claimant has filed nothing further in support of his claim or a reply to the response to his claim filed by Defendants.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he was mobility impaired on or before August 27, 2003. There is no question that Claimant suffered injuries in 1997, including a closed fracture of the lumbar vertebra and damage to his right knee.

Defendants correctly note that Claimant did not use a wheelchair while in DOC custody. There was use of crutches and a cane.

Based upon what has been presented by both sides, the Special Master determines that Claimant had significant problems with his right knee on or before August 27, 2003 which affected his mobility. The Special Master finds that Claimant was mobility impaired on or before the day the Settlement Agreement was approved.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was

unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

There is no evidence that Claimant received treatment that was different from other inmates who did not have a mobility impairment. Claimant was able to work and attend classes. Claimant makes only generalized references to the need for handrails and a cement track at LCF. Claimant has not pointed to a specific act of discrimination in which he was treated differently from an inmate who was not impaired. Claimant has failed to establish that any action taken against him was in violation of the ADA and Rehabilitation Act.

Claimant's main concern is what he has alleged to be inadequate medical treatment. The evidence presented by both sides reflects that Claimant did receive medical care while in DOC custody. It is the quality and effectiveness of that care with which Claimant has problems. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are prohibited by the *Fitzgerald* case from reviewing the quality of medical care provided to Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Kenneth Armbeck is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 25, 2007.**

SIGNED this 16th day of April, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master