IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-271
Category III
Claimant: Cornelius Bernard Jenkins, Jr., #80897
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 8, 2007. The hearing was held in the Sterling Correctional Facility, Sterling, Colorado. Present were the following: Claimant Cornelius Bernard Jenkins, Jr. (Claimant) and Scott Wilkonson, attorney for Defendants.

Claimant testified in his own behalf. Claimant also submitted Exhibit #1, and it was admitted into evidence. Defendants submitted Exhibit A. The Special Master determined that the affidavit from Dr. Neufeld had not been sworn to by him. Its admission into evidence was delayed pending receipt of the signature page. The Special Master also indicated that all documents previously submitted would be accepted and considered in resolving this claim.

Claimant requested time to submit additional documents in support of his claim. He was granted up and including April 9, 2007 in which to submit additional documents. No additional documents have been submitted.

Defendants requested time to submit the signature page for Dr. Neufeld's affidavit. Defendants were granted up to and including March 19, 2007 in which to submit the affidavit signature page of Dr. Neufeld. That page has not been submitted, and the affidavit of Dr. Neufeld will not be considered. The medical records attached to Dr. Neufeld's affidavit may be considered.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or

>   her disability? (e.g., were accommodations requested and denied because of the disability?)
>
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody in August, 1993. He remained in custody until November, 1996. He returned to DOC custody in February, 1997 and was released in June, 1998. He returned to custody in November, 1998 and was released in June, 2000. He then returned to DOC custody on September 12, 2001. He presently is incarcerated at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

In the initial claim form, Claimant checked the box for hearing impaired. Claimant stated, in part, as follows in his initial claim form.

> I am hard of hearing. I find myself more and more having to rely on lip-reading in order to get all of what a person is saying. I have a variance in being able to distinguish between a male or a female's voice. I have a hard time hearing women's voices at certain distances. I can't attend certain functions because I'm not always near enough to make out what they are saying clearly. Over the years I've brought this to DOC attention.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I feel that I was not given proper medical evaluations. As a result these actions through out the years could have prevented further loss of hearing. I believe that I wasn't taken seriously and I was ignored when requests for medical care were made or when I attempted to explain that I've been evaluated at the University of Stanford's medical center.

Claimant was sent a supplemental form to complete and return. In his supplemental form, Claimant stated, in part, as follows:

> I would describe my hearing loss as significant and a hindrance to day-to-day activities. I also would say that I suffer a progressive and significant hearing loss and have become very loud when I speak as a result of not being able to hear right and monitor my voice level.

Claimant submitted with his supplemental form several pages of his medical records. Claimant

requested issuance of a hearing aid in early 2002, but that was denied by DOC's medical evaluator, Colorado Access. Claimant also submitted copies of COPD convictions which he indicated were the result of his inability to hear.

At the hearing, Claimant that he was stabbed in the ear in 1988. His eardrum burst and he has had trouble ever since that incident. He was seen for his hearing loss by the Stanford University Hospital. He received a battery of tests from that facility, and he claims those tests reflect a significant hearing loss.

Claimant acknowledged that he spent considerable time in correctional facilities in California. He was in a group home in Hayward, California and was to have ear surgery. That did not take place. When Claimant arrived in DOC custody, he attempted to have someone evaluate his hearing problems. He told medical staff about the stabbing and damage to his left ear drum. He did put in kites to see medical staff.

Claimant testified that he talks loud and occasionally has problems because of that. While at the Limon Correctional Facility (LCF) in 2001, he was assaulted by another inmate who took offense at Claimant's loud voice. He also testified that there was an incident at the library that led to his being fired from a job. Claimant maintained that the librarian was wrong in thinking that he had raised his voice to her.

After Claimant's return to custody in 2001, he was seen by an audiologist. That report indicated that Claimant's hearing was in the acceptable range. Claimant testified that the audiologist had failed to ask him several questions and was incorrect in her evaluation. Claimant said that he still needs a hearing aid to safely function in a prison environment. Claimant submitted a request for an accommodation resolution but was turned down as not meeting the criteria for hearing impaired.

On cross-examination, Claimant testified that the trauma had been to his left ear. His right ear had not been hurt during the stabbing incident. Claimant testified that he had been able to get by in classes without a hearing aid, though he needed more assistance than others who did not have a hearing loss. He is able to utilize a telephone at the present. He has come to rely upon his cell mate to advise as to the content of announcements.

The medical records submitted by Defendants reflect that Claimant has seen medical staff over the years. The evaluation in June, 2006 on the request for an accommodation reflected that the audiology examination showed only a high frequency loss in the left ear. Requests over the years for a hearing aid were denied on the basis that Claimant did not have a serious enough hearing loss to warrant a hearing aid.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of

discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The Special Master has reviewed the testimony of Claimant and medical records submitted by both sides. The Settlement Agreement provides that for housing purposes that the following criteria presumptively would apply for determination of hearing impairment:

> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

The Special Masters have utilized this criteria for all hearing impairment claims that have been presented.

The question is whether Claimant has a hearing impairment so severe that it drastically affects his ability to carry on major life activities. The answer is no. Claimant has some hearing loss, but it is not to the point where he cannot hear or that he must use sign language, lip reading or written documents to communicate. There is not a hearing impairment as contemplated and required by the Settlement Agreement. The Special Master can appreciate that any loss of hearing can affect an individual. Indeed, this Special Master does have some hearing loss due to the normal aging process. The problem is that a hearing impairment means that activities of daily life are impossible for Claimant due to the hearing loss, and that it is not the case based upon what has been presented by both sides in this matter. Claimant has failed to establish that he meets the criteria for hearing impaired as set forth in the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Cornelius Bernard Jenkins, Jr. is dismissed, as Claimant has failed to prove that he has a hearing impairment as contemplated by the Settlement Agreement; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 25, 2007.**

SIGNED this 16th day of April, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master