IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-761
Category II
Claimant: Bennie Lee Hodge, #41862
Address of Claimant: BCCF, 11560 CR FF75, Las Animas, CO 81054

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Bennie Lee Hodge (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is incarcerated at the Bent County Correctional Facility (BCCF) at Las Animas, Colorado.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants. He filed a letter and one page of his correctional records. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>    B. QUALIFIED INMATE
>    Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>    C. PERMANENT DISABILITY/IMPAIRMENT
>    A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>    The Settlement Agreement further provides, in part, as follows:
>
>    2. Permanent Hearing Impairments
>    Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>    3. Permanent Vision Impairment
>    Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>    4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>    Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>        1. Is the claimant a disabled individual who is a member of the class?
>        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on March 17, 1976. He remained in DOC custody until 1994. He was released but returned on a new sentence on November 30, 1995. Claimant was released on parole in 1998. He was returned to DOC custody in early 1999. He has remained in custody since that date.

In the initial claim form, Claimant checked the boxes for vision impaired and diabetes. Claimant stated, in part, as follows in his initial claim form.

> Vision sometime I can't see good at all. Graves thyroid gland keeps me hipped up with no sleep. Diabetic as you is a up hill battle every day of life. It could be the last.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> It keep me from moving to a nicer job and a better place for living and seeing my mother at all.

Claimant was sent a supplemental form to complete and return. In his supplemental form on diabetes, Claimant stated, in part, as follows:

> My eyes are getting bad and feet. I bottomed out in Jan. or Feb of 2004. Any my shoulder been messed up now.

> Was over a year before I know what my health problem was. I was not getting any sleep or information about what was wrong with me for 18 months. I didn't know from one day to the next what I had wrong with me. Look in medical file documented from Jan. 1999 to 2001.

Defendants submitted a response to the claim. Attached to the response were several pages of Claimant's medical records. Defendants argue that Claimant is not disabled and is not part of the class.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Claimant did file a letter with the Special Master. Attached to that letter is a copy of his progress assessment from August, 2005. Claimant was at the Limon Correctional Facility (LCF) at the time the document was prepared.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately.

*Vision Impairment*: Claimant has checked the box for vision impairment in his initial claim form. In his supplemental form for vision impairment, he states that "I can't keep my eyes focused for a long time." He further states that he "can't read more than a few pages of a book before my eyes are jumping..." Claimant does not indicate what is wrong with his eyes and has not submitted any documentation to show that a diagnosed medical condition exists with his eyes.

Defendants note that Claimant submitted a request for accommodation on July 3, 2006. Claimant did not check the box for vision, only the box for diabetes. In that form, Claimant never mentioned any problems with his vision. When examined by Dr. Wermers, Claimant did not indicate he was having vision problems, as nothing was noted in the evaluation form.

Claimant has not established that he has a vision impairment as defined by the Settlement Agreement. His claim for vision impairment will be dismissed.

*Diabetes*: Defendants acknowledge that Claimant has diabetes. When that condition was diagnosed is unclear. Defendants argue that Claimant does not meet the criteria for diabetes because it does not affect activities of daily life. The benefit of the doubt will be granted to Claimant, and he is determined to be a member of the class as having diabetes.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

There is no evidence that Claimant received treatment that was different from other inmates who did not have diabetes. Claimant has been able to work and attend classes. Claimant has not pointed to a specific act of discrimination in which he was treated differently from an inmate who was not impaired by diabetes. Defendants have submitted documentation reflecting the classes Claimant has taken over the years, as well as the jobs that he has held. Claimant has failed to establish that any action taken against him was in violation of the ADA and Rehabilitation Act.

Claimant's main concern is what he has alleged to be inadequate medical treatment.

Claimant has alleged that it took several months to determine what was wrong with him. Claimant has alluded to the fact that he received medical care while in DOC custody. It is the quality and effectiveness of that care with which Claimant has problems. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are prohibited by the *Fitzgerald* case from reviewing the quality of medical care provided to Claimant.

Claimant has not proven that he was the victim of discrimination because of his diabetes. He has not proven his claim as to this point and cannot prevail on it.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Bennie Lee Hodge is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 25, 2007.**

SIGNED this 25rd day of April, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master