IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 02-770
Category II
Claimant: James Arthur Dumm, #98192
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 98192

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of James Arthur Dumm (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He is incarcerated at the Crowley County Correctional Facility (CCCF) at Olney Springs, Colorado.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants. Nothing further has been filed by Claimant. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in August, 1998. He has remained in DOC custody since that date.

In the initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows in his initial claim form.

> I was diagnosed as a diabetic while in the custody of the Colorado Department of Corrections ["DOC"] and incarcerated at the Arkansas Valley Correctional Facility ["AVCF"] on 03/27/03 by the facility medical staff after completing a 21-day monitoring period during which time my blood glucose levels were monitored through twice-daily finger sticks and periodic blood draws. Additional blood draws were done by the medical staff of the Crowley County Correctional Facility ["CCCF"] after my arrival confirming my status as a diabetic.
> Since first being diagnosed, I have continued the twice-daily finger stick and have eaten the medically ordered diabetic diets when provided. I have conformed to the medical advice I first received from the AVCF medical staff with regards to avoiding high-sugar foods, high-starch foods, etc. In following this diet, I must stay away from potentially dangerous foods and have avoided the canteen items and desserts that would elevate my blood sugar levels....

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I am currently incarcerated at the Crowley County Correctional Facility, which is owned and operated by the Corrections Corporation of America ["CCA"]. CCA contracts with Canteen Correctional Services to provide food service operations at CCCF for the inmate population, to include medically ordered diets.
> On 07/20/04, there was a riot at CCCF. As a direct result of the riot, the entire facility was placed on lock down status. This status has continued to this date with minor changes so that certain facility operations (food service, laundry, maintenance, etc.) may continue and limited opportunities for indoor recreation may be provided to the inmate population. One of the many changes that went into effect was the initiation of a special 'lockdown' diet at the request of CCCF Warden Brent Crouse, which sets a dietary standard lower than that required by the DOC food service master menu.
> Since 07/27/04, I have had continuous trouble in obtaining my medically ordered diabetic diet. On 08/18/04, my diabetic diet was changed to a 2400 Kcal diet....

Claimant was sent a supplemental form to complete and return. In his supplemental form,

Claimant restated what he had provided in his initial claim form. The riot at CCCF on July 20, 2004 disrupted that facility. He did not receive his diabetic diet from that point forward for a significant period of time. Claimant also submitted copies of his medical records for that period of time, as well as copies of grievances. These documents postdate the riot at CCCF.

Defendants submitted a response to the claim. Defendants argues that the claim relates to a time period not covered by the Settlement Agreement.

An order was issued to Claimant granting him the opportunity to file a reply to the response of Defendants. Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Defendants have argued that Claimant's allegations all postdate the implementation of the Settlement Agreement on August 27, 2003. Defendants argued that the claim is untimely.

The Settlement Agreement was approved by Judge Nottingham on August 27, 2003. It was on that date that the class was established. Paragraph XXXII provides, in part, as follows:

> Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises during the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case. The Special Master may only extend the time limits for filing a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.

This section has been interpreted by the Special Masters to require a claimant to prove that he had a listed disability on or before August 27, 2003 and had been a victim of discrimination on or before the same date. If a claimant established that he had a disability and was discriminated against because of that disability on or before August 27, 2003, then that claimant would be allowed to amend his claim to include any discriminatory act after that date. If no act of discrimination occurred on or before August 27, 2003, then a claimant had the right to bring a separate lawsuit for anything that occurred after that date.

Claimant was diagnosed as being a diabetic in March, 2003. Defendants concede that occurred. Claimant states in his initial claim form and supplemental form that he received appropriate care and diets while at AVCF. The problems arose on and after July 20, 2004, the day of the riot at CCCF. Claimant details attempts that he made to receive an appropriate diet, and that was not successful during the post-riot period.

Defendants are correct that Claimant has alleged discriminatory acts that occurred on or after July 20, 2004. Though Claimant was diagnosed as diabetic in March, 2003, there are no allegations of discrimination based upon his condition until July, 2004. Under the Settlement Agreement, Claimant may not pursue his claim, but he has the right to bring his own separate lawsuit in a court of competent jurisdiction. That is the remedy that Claimant must pursue, as the Special Masters do not have jurisdiction over the series of incidents that commenced on July 20, 2004.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of James Arthur Dumm is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 25, 2007.**

SIGNED this 25rd day of April, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master