IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-239
Category III
Claimant: Leonard Rogers, #103420
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on August 10, 2006. The hearing was held at the Buena Vista Correctional Facility (BVCC) in Buena Vista, Colorado. Present were the following: Claimant Leonard Rogers (Claimant) and Jess Dance, attorney for Defendants.

Claimant testified in his own behalf. Defendants submitted Exhibits A and B. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim.

During closing arguments, Claimant indicated that he wished to seek the representation of counsel. The Special Master granted Claimant additional time in which to seek an attorney to represent him. Claimant retained Neil MacFarlane, attorney at law, to review his case. The Special Master granted Claimant and his counsel up and including April 15, 2007 in which to indicate how they wish to proceed. Nothing further has been received from Claimant or his counsel, and the case will be resolved on the evidence that has been presented.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan

was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>  A. COVERED DISABILITIES
>  The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

2

>hearing, and vision impairments and inmates with diabetes.
>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>2. Permanent Hearing Impairments
>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>3. Permanent Vision Impairment
>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody on January 7, 2000. He was processed through the Denver Reception and Diagnostic Center (DRDC) and was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was placed on parole on March 2, 2002. Parole failed, and he was incarcerated at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He was placed back on parole, and that again failed. He was placed back at AVCF. He was transferred in 2003 to the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado, from where he filed his claim in June, 2004. Claimant discharged that sentence in March, 2005.

Claimant returned to DOC custody in September, 2005. He was processed back in at DRCD and then transferred to the Buena Vista Correctional Facility (BVCF) on October, 2005. The hearing was at BVCF on August 10, 2006. Claimant has since been transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

In the initial claim form, Claimant checked the boxes for mobility impaired, vision impaired, and hearing impaired. Claimant stated, in part, as follows in his initial claim form.

> In 1995 I was the victim of an automobile accident resulting in a "closed head" injury, a severe back injury including spine and hip damage. I suffer from memory loss, migraine headaches, blurred vision and difficulty hearing clearly. I also have trouble walking and generally moving without pain.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> All medications and therapy ordered by civilian doctor have been withheld by the Department of Corrections. While all other inmates receive needed medications, I have been denied any medication.

Claimant was sent supplemental forms to complete and return. In his supplemental form on hearing impairment, Claimant stated, in part, as follows:

> I have a closed head injury where I got hit by a car and put through a windshield, as a result I have hearing problems.

> It is miserable. I am getting no medication and it affects me by not hearing when they call count, when they call chow or even when they call me to the office. As a result, I'm always getting into trouble and missing meals, yard, and library all the time.

In his form for vision impairment, Claimant stated, in part, as follows:

> As a result of head injury, I have blurred vision off and on. When the blurring occurs, it causes headaches.
>
> I can't read properly or watch t.v. I have to spend lots of time in bed which prevents me from participating in other activities.

In his supplemental form for mobility impairment, Claimant stated as follows:

> Because of a bad back, I have the spine twisted and uneven hips. I have arthritis in my hips and joints, This is the result of the accident I had in Dec, 1996. I was on SSI prior to incarceration.

In April, 2006, Claimant sent a letter to the Special Masters in which he indicated that he had diabetes. He expressed his concern about his condition and that he was scared of dying. This claim was originally placed into Category II, but was elevated to Category III to allow a hearing to be held.

Defendants submitted a written response to the claim. Attached to the response were several pages of medical records of Claimant.

At the hearing, Claimant testified that has had problems since the car accident in 1996. He was hospitalized after the accident and was involved in therapy for two months. He testified that he never received the right medications while at CTCF. He has arthritis in various joints and finds it difficult to move. He requested the same medication as he had been receiving from his civilian physician, but that has been denied. Claimant testified that he only receives motrin for pain.

Claimant testified that he was working in the laundry at BVCF. His feet would swell and it was difficult to work. He believed that he has significant mental health issues, including depression. The mental health issues are a disability for him.

Claimant testified that he does not have a hearing problem. His vision is weak and he testified that he should have more frequent examinations. His diabetes was diagnosed in November, 2005. He has not seen any specialist for his diabetes. He is receiving medication for the diabetes twice per day. He is not on a special diet.

Claimant testified further that he did not receive any medications when he was at CTCF previously. He has a limp in his walk on occasion. He also has asthma. He was receiving SSI benefits before his incarceration. He was determined to be disabled due to his closed head injury and bi-polar illness.

On cross-examination, Claimant stated that he receive Darvicet before he came into DOC custody. He admitted that he is in DOC custody for drug offenses. He indicated that he had seen a number of medical personnel while in custody. He also testified that he walks for recreation.

Claimant testified that he saw an optometrist while at BVCF. He was advised that his eyesight was 20/20. Claimant further testified that he has received medical treatment while in custody but believed that it had not helped him. Claimant does not believe that he has been treated fairly while in DOC custody.

Defendants submitted the affidavit of Dr. Neufeld. Attached to that affidavit are copies of medical records of Claimant. The first is a diagnostic report from Dr. Fleming reflecting that no significant abnormality was found as the result of an examination on December 31, 2002. Other documents reflect that medical examinations were conducted of the knees on various dates.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

Claimant has spent much time discussing his closed head injury and mental health issues. Neither of these conditions is recognized as a disability under the Settlement Agreement. Both are disabilities recognized by the Americans with Disabilities Act. Claimant has the right to commence a separate lawsuit to seek redress for any damages caused by discrimination prohibited by the ADA for the closed head injury and mental health issues.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be taken separately.

*Hearing Impairment*: No evidence was presented by either side that Claimant has any significant diminution in his hearing. The records reflect that in 2005 he had an excessive amount of ear wax. There is no evidence to support this allegation. Claimant carries the burden of proof and has not met that burden as to any claimed hearing impairment.

*Diabetes*: Claimant was diagnosed with Type II diabetes in late 2005 after he returned to custody. Claimant is controlling the diabetes through oral medications.

Claimant was not diagnosed as diabetic on or before August 23, 2003. This was the day the Settlement Agreement was approved. The Special Masters have jurisdiction over claims involving diabetes only if a diagnosis existed on or before that date. Claimant has the right to pursue a separate lawsuit relating to his diabetes.

*Vision Impairment*: When Claimant entered into DOC custody in 2000, his eyes were found to be 20/20 without glasses. He received eye examinations in 2002 and 2005. In both instances, his eyesight remained good. He had a further examination on March 26, 2006 at which he was found to be 20/40 in his right eye and 20/30 in his left eye.

An ophthalmologist saw Claimant on April 13, 2006. Claimant had indicated that his eyesight was decreasing and was blurry. He was diagnosed with Drusens, a condition that leaves blank spots in the field of vision. It was not deemed to be acute.

The evidence does not substantiate that any vision impairment existed on or before August 27, 2003. Claimant has failed to establish this part of his claim.

*Mobility Impairment*: There is no dispute that Claimant was in a serious automobile accident in the mid-1990's. When Claimant entered into DOC custody in 2000, there was no indication of major mobility impairment. In May, 2002, he received x-rays of his hips and degenerative joint disease was noted. Claimant was provided a bottom bunk restriction in 2002. Claimant advised medical staff in 2003 that he walked for recreational. He stated the same at the hearing.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence that Claimant ever used a wheelchair while in DOC custody.

There is no evidence that Claimant has any condition that is a permanent lower extremity mobility condition that substantially limits his walking. The evidence reflects that he does have degenerative hip disease, but he continues to walk without trouble for exercise. The evidence does not substantiate that any mobility impairment existed on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

In order to establish a violation of the ADA and Rehabilitation Act, a claimant must show that he was treated differently from a non-handicapped individual. There was no evidence presented at the hearing that any such discriminatory act took place before August 27, 2003.

Claimant's main argument is that he has received inadequate medical treatment and medicine. There is no question that he has received some care while in DOC custody. Claimant does not believe that he has received appropriate care while in DOC custody. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Leonard Rogers is dismissed, as Claimant has failed to prove each that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 25, 2007.**

SIGNED this 25th day of April, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master