IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-362
Category III
Claimant: Jesus Berzoza, #59470
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

      THIS MATTER came before the Special Master for hearing on April 26, 2007. The hearing was held at the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Claimant Jesus Berzoza (Claimant) and Celia Randolph, attorney for Defendants.

      Claimant testified in his own behalf. Defendants submitted Exhibits A and B. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. After closing arguments, the case was taken under advisement. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]

_____

      [1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may

Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

exercise only the jurisdiction agreed upon by the parties.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

3

Claimant first came into DOC custody in 1988. He was discharged on that sentence in 1994. He returned to DOC custody in late 1999. He as placed initially at the Denver Reception and Diagnostic Center (DRDC).  He was transferred then to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He remained at FCF for fourteen months.

He then was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He remained at AVCF until he was transferred to FLCF in 2006.

In the initial claim form, Claimant checked the boxes for mobility impaired and diabetes. Claimant stated, in part, as follows in his initial claim form.

> I suffer from a severe case of abnormal gathering of fatty buildup in my abdominal area. I am 5'5" and weigh approximately 265 lbs. And my abdomen hangs below my waistline to my knees. I have to have oxygen in order to get around as my diabetes in conjunction with this rare disorder hinders my even walking. This impairment severely hinders my mobility. I also suffer from diabetes and with no mobility my diet is completely out of the norm, being 65 years further hinders me.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> CDOC will not address any type of medical needs for me as they say they have yet to encounter this type of illness. They will not even address any type need alone document it into my file. This is a desperate cry out for help. I cannot eat or get in and out of my bed alone and the complete lack of care is inhumane for such a modern nation.

Claimant was sent supplemental forms to complete and return. In his supplemental form on diabetes, Claimant stated, in part, that he had a constant worry about his health. He had received an improper diet and inadequate access to a doctor.

At the hearing, Claimant testified that he was diagnosed with diabetes in 2001. He was placed on medicine at that time, but has not had to take insulin by shot. He has been on a diabetic diet in the past. Claimant also testified that he has lost a lot of weight and now is carrying 195 pounds. He still has to use oxygen at times because of breathing problems caused by his weight.

He testified that he is in pain when he has to walk. It is difficult to go up stairs because of his knees. He will have to stop and rest when walking. He has been advised that he has arthritis.  He also testified that he has had blood clots in his legs.

On cross-examination, Claimant was asked why he filed a claim. He indicated that he was told to do so by his case manager. He did not have many complaints and thought he was receiving appropriate case. He was not provided a job but did find a position on his own.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be taken separately.

*Mobility Impairment*: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking..." No evidence was presented that Claimant has used a wheelchair while in DOC custody.

There is a conflict in the evidence concerning Claimant's ability to walk. It is clear that he has some arthritis and has struggled with excessive weight. The mobility screening in July, 2006 found that Claimant was able to walk more than one hundred yards without pausing. Claimant testified that climbing stairs is difficult at times. The evidence is in conflict, but the Special Master finds that Claimant is not mobility impaired as defined by the Settlement Agreement.

*Diabetes*: It is not disputed that Claimant was diagnosed in 2001 as having diabetes. Claimant is a member of the class due to his diabetes.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met his burden of proof as to this question.

In order to establish a violation of the ADA and Rehabilitation Act, a claimant must show that he was treated differently from a non-handicapped individual. There was no evidence presented at the hearing that any such discriminatory act took place before August 27, 2003.

Claimant indicated that he filed his claim because he had been advised to do so. He did not believe that he had been treated differently because of his diabetes. Claimant's own testimony reflected that no discriminatory act had taken placed due to his having diabetes.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Jesus Berzoza is dismissed, as Claimant has failed to prove each that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 16, 2007.**

SIGNED this 30th day of April, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master