IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-267
Category III
Claimant: Joseph Ramirez, #83243
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on May 3, 2007. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Joseph Ramirez (Claimant); and Jennifer Fox, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A and B offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement.
*Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to
"[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who
do not require a wheelchair but who have a permanent lower extremity mobility impairment that
substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing
impairment so severe that they must rely on written communication, lip reading, or
signing because their residual hearing, with aids, does not enable them either to
communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not
correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for
regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of
the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in April, 1994. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant then was placed at the Limon Correctional Facility (LCF) in Limon, Colorado. He spent two years at LCF and was transferred to a Texas contract facility. He then was moved to a private facility in Minnesota. He returned to Colorado and was placed at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. He remained at CCCF for two years.

Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He remained at that facility for two years and then went to the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. After six months, he was placed at AVCF where he has remained.

In his initial claim form, Claimant checked the boxes for vision impaired and diabetes. Claimant stated, in part, in his claim form:

> I now wear eye glasses so I can read close-up. I'll need glasses so I will be able to see better at things in a distance. I also get bad headaches if I squint too much. The diabetes also has to do with twitching of my muscles where sometimes it feels like I have no control of the twitching and cramping in my feet, back and hands, my back, pretty much all over my body! Diagnosed Feb. of 2001.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> Knowingly and willfully they knew I was diabetic when they put me on Interferon and without analysis of my enzymes level I started to do the regimen of Interferon and the pills that go along with the Interferon.

In response to an order from the Special Master requesting information on why the claim was filed late, Claimant stated, in part, as follows:

> The Claimant was diagnosed in 1994 with Hepatitis C and starting on the Interferon program in 2005. The Claimant was diagnosed with diabetes in 2000 and is currently an Insulin-dependant diabetic.
> During much of 2004 and all of 2005 the Claimant was being treated for chronic bleeding and low platelet count(s) due to conflicts resulting from the combination of Interferon and Insulin, as well as other factors resulting from being both a diagnosed diabetic and Hep-C sufferer.

At the hearing Claimant testified that he was diagnosed as being diabetic in late 1999 or early

4

2000 while at CCCF. He was started on medication in the form of pills. He was not placed on a special diet at that time. His diabetes has continued to worsen. He is now receiving insulin by shot and receives two oral medications. He also is on a low sodium diet.

Claimant testified that his vision has been affected, probably by his diabetes. He stated that it seems to get worse every year. He also acknowledged that he has Hepatitis C. He was started on Interferon for this disease. He has felt sick because of the medication and its interaction with his diabetes.

On cross-examination, Claimant was asked directly as to what discrimination occurred due to actions by DOC and its staff. Claimant testified that he did not know if he could call anything as discriminatory. Claimant stated that he tries to obtain medical care and he hopes to be sent out of AVCF for a eye examination.

In lieu of live testimony, Defendants submitted the affidavit of Dr. Cary Shames, D.O. That affidavit contains a number of documents from Claimant's medical records. Defendants also submitted other documents in support of their position.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. It should be noted that Claimant has other medical problems, including Hepatitis C, which are affecting his health but which are not part of the Settlement Agreement.

**Diabetes**: According to Dr. Shames' affidavit, Claimant was diagnosed with diabetes in late 2000. The Special Master finds that Claimant was diabetic before August 27, 2003 and is a member of the class as diabetic.

**Vision**: The medical records attached to Dr. Shames' affidavit reflect that Claimant has had regular eye examinations. An examination was done in 1996 and Claimant had vision correctable to 20/20 in both eyes. He was provided eye glasses. Claimant received eye examinations in March, 2001, December, 2003, October, 2005, and October, 2006. In all instances, there has been no indication of diabetic retinopathy.

The Special Masters have interpreted vision impairment as requiring almost blindness. In the case of Claimant, he is able to function and do his activities of daily life. Claimant is not vision impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the

answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
The answer to this question is no. There was no evidence of disparate treatment due to diabetes from late 2000 to the present time.

Claimant has received medical care while in DOC custody. He has exprssed concern about that medical care, particularly concerning the use of Interferon therapy. Claimant has raised issues concerning the appropriateness of his medical care and what sounds like a claim of medical malpractice.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has not presented any evidence to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. As a result, he cannot prevail on his claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Joseph Ramirez is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 14th day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master