IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-331
Category III
Claimant: Ronald Atencio, #74373
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on May 3, 2007. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Ronald Atencio (Claimant); and Jennifer Fox, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A, B, C, E, G, and H were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on August 30, 1978. Claimant was in various DOC facilities until he discharged that sentence on February 23, 1985. Claimant returned to DOC custody on May 6, 1991. He was seen initially at the Denver Reception and Diagnostic Center (DRDC). He again was placed an various DOC facilities. He discharged that sentence on February 24, 1995.

Claimant returned to DOC custody on a new sentence on May 18, 1999. Claimant was placed initially at DRDC. He then was placed at a number of facilities and then was placed into a community placement on November 1, 2000. He was granted parole on August 23, 2001. Parole was revoked and Claimant came back into DOC custody on May 22, 2002. Claimant was again paroled on January 20, 2003. Parole failed again, and Claimant was taken back into custody on September 2, 2003. Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

Parole was granted to Claimant on February 25, 2004. He was taken back into DOC custody on February 10, 2005. He was placed back at AVCF. He then received a community placement on October 26, 2005. That placement failed, and Claimant was returned to DOC custody on March 20, 2006. He was returned to AVCF and has remained at that facility.

In his initial claim form, Claimant checked the boxes for hearing and vision impaired, as well as diabetes. Claimant stated, in part, in his claim form:

> I can only hear out of one ear. My hearing was fine until I got sick in DOC in 1999. They said that I had what they call Minears (sic) disease, a disease that affects the inner ear and affects your equilibrium. I have daily attacks of dizziness and sometime unable to move my head. There is no cure and I do the best while I'm sick so that I could go to breakfast....
>
> I was then diagnosed with diabetes summer of 1999. Ever since I have been struggling with this disability

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> I believe that DOC has not only contributed to me getting diabetes that they put me on no special diet. I am forced to eat the regular meals. I am forced to go to the medical department before I eat breakfast because the CO tells me to. I bottom out in the morning because I take my meds at 5:00 a.m. and I start to bottom out about 6:00 a.m. in time for breakfast and I am denied to go to chow because the CO will write me up for eating early so I am forced to hunt down a couple of sugar

packets to bring my sugar back up. I have been denied snack because I'm not on insulin. The CO over here denied a diet because I'm not on insulin.

Claimant testified that he was diagnosed with diabetes in 2002 while at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. He started to receive two shots of insulin per day. Claimant testified that he was place on a special diet, but that the food was awful. He was also prescribed other medications. He still receives insulin and other medication, including Zantac.

Claimant testified that he was withdrawing his vision impairment claim. He then testified that he has lost his hearing in his right ear because he had too much water in the inner ear. His ears will ring all the time. He has sought medical help for his ears. He takes water pills to help with his ears. He can hear out of his left ear.

Claimant testified that he had sought proper shoes as he is experiencing neuropathy in his feet and legs. He has ulcers on his legs and bruises easily. His legs will not heal. He received a recommendation for tennis shoes, but has been unable to purchase any from the canteen list. He was told that DOC does not provide tennis shoes to diabetics.

In lieu of live testimony, Defendants submitted the affidavit of Dr. Cary Shames, D.O. That affidavits contains a number of documents from Claimant's medical records. Defendants also submitted other documents in support of their position.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. It should be noted that Claimant has other medical problems which are affecting his health but which are not part of the Settlement Agreement.

**Hearing Impairment**: Claimant has presented evidence that he has some hearing loss. It is not disputed that he has Meniere's Disease which does affect his equilibrium. The only definition in the Settlement Agreement concerning hearing impairment basically requires that a claimant be deaf and have to rely upon signing, written communication or lip reading. Claimant's hearing loss does not approach that level.

Claimant also has not shown that his hearing loss affects his ability to carry on activities of daily life. Claimant is not hearing impaired under the Settlement Agreement.

**Diabetes**: According to Dr. Shames' affidavit, Claimant was diagnosed with diabetes in August 2000. The Special Master finds that Claimant was diabetic before August 27, 2003 and is a member of the class as diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant has been in and out of DOC custody since he was diagnosed as diabetic. DOC cannot be held responsible for something that occurred in a community placement or which occurred while Claimant was on parole. Since Claimant was in and out of DOC from the date he was diagnosed with diabetes and August 27, 2003, he had the burden to specifically show when he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. There was no evidence of general disparate treatment due to diabetes from August, 2000 to the present time. Claimant simply has not met the burden of proof required by the Settlement Agreement.

During the times Claimant had been in DOC custody he has received medical care. He has not agreed with some of the care he has received. Likewise, Claimant generally has received access to programs in DOC over the years.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ronald Atencio is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 14th day of May, 2007.

                                                BY THE COURT:

                                                */s/ Richard M. Borchers*

                                                _____
                                                Richard M. Borchers
                                                Special Master