IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-448
Category II
Claimant:  Christopher Shane Gray, #66588
Address of Claimant:  HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER comes before the Special Master on the claim of Claimant Christopher Shane Gray.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

**I.  BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Christopher Shane Gray submitted a claim which was assigned claim number 02-448. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Gray most recently entered CDOC custody in 1995. Although the record does not specify the institutions in which Claimant was housed while in CDOC custody, it appears that he was housed for part or all of his CDOC custody at the Buena Vista Correctional Complex (BVCC) and the Huerfano County Correctional Center (HCCC).

4. Claimant suffers from ankylosing spondylitis, a degenerative arthritic disease that primarily affects the spine, although other joints can become affected. It causes inflammation which can lead to severe chronic pain and discomfort. The inflammation can lead to new bone formation on the spine and can cause the spine to fuse in a fixed immobile position sometimes resulting in a stooped posture. Claimant states that he has dull aches in his lower back and buttocks and that often the pain is on both sides causing tenderness and severe stiffness in his back. He has difficulty sleeping and

breathing. He indicates that when the pain is very bad, it takes him a few minutes to get out of bed and that he has to lean to one side to walk because he can't stand up straight. Claimant also states that he suffers from depression and anxiety because of his degenerative disease.

     5. Claimant asserts that he has been denied proper medical care and proper medications for his condition. He also contends that he has been denied a wedge pillow, a medical mattress, arch supports and medical footwear. He states that he does work and that appropriate footwear would ease his pain while working. Claimant further complains that he was required to pay for his own extra blanket, tennis shoes, knee brace and medical visits.

     6. Claimant's medical records appear to confirm that he suffers from ankylosing spondylitis. An ambulatory health record in June of 2002 indicates that Claimant was provided with medications, was instructed on the need for exercise and advised to have an x-ray of his spine at age 35, and then every five years. X-rays taken in September of 2003 showed mild degenerative disc disease and spurring.

### III. CONCLUSIONS OF LAW

     1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

     2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility,

hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent mobility disability. Claimant does have ankylosing spondylitis that is accompanied by pain. However, the fact that a Claimant suffers from pain, by itself, is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999).

There is virtually nothing in the record indicating that Claimant's ankylosing spondylitis has produced a substantial limitation on his ability to engage in the major life activities of walking or working. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision, the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.,* 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.,* 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir. 1996).

Claimant's ankylosing spondylitis is a serious medical condition that may well affect other major life activities such as sleeping or breathing. Although his condition may constitute a disability under the ADA and/or the Rehabilitation Act, it is not the type of disability cognizable under the Remedial Plan. While the Remedial Plan states that it covers persons with "mobility impairments," *Remedial Plan* ¶ III(A), it does not generally define the term "mobility impairments." However, the references to "mobility impairment" in the Remedial Plan indicate that the parties intended the term to encompass diseases, injuries, and/or conditions involving the lower extremities that impose a substantial limitation on the major life activity of walking. *See, Remedial Plan* ¶ V(A)(1)(dealing with presumed need for special housing, and defining "permanent mobility impairment as "a permanent lower extremity mobility impairment that substantially limits walking."); *Remedial Plan* ¶ XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly

5

suggesting that "mobility impaired" inmates are those with diseases, injuries, and/or conditions involving their lower extremities).

In short, there is no indication in the Remedial Plan that its coverage of inmates with "mobility impairments" extends beyond those who are substantially limited in their major life activity of walking or perhaps working because of diseases, injuries and/or conditions involving their lower extremities. There is nothing in the submission of Claimant that would indicate that his condition substantially limits his ability to engage in the major life activities of walking and working. Indeed, the record reflects that he engages in both such activities. The fact that he experiences pain when he does so is insufficient to sustain his Claim. *See, e.g., Penny v. United Parcel Serv.,* 128 F.2d 408 (6th Cir. 1997); *Rosa v. Brink's, Inc.,* 103 F. Supp. 2d 287 (S.D.N.Y. 2000); *Piascyk v. New Haven,* 64 F. Supp. 2d 19 (D. Conn. 1999); *Puoci v. City of Chicago,* 81 F. Supp. 2d 893 (N.D. Ill. 2000); *Williamson v. Hartmann Luggage Co.,* 34 F. Supp. 2d 1056 (M.D. Tenn. 1998); *Banks v. Hit or Miss, Inc.,* 996 F. Supp. 802 (N.D. Ill. 1998).

Because Claimant has failed to demonstrate that he has a permanent mobility disability cognizable under the Remedial Plan, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Gray's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 2, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 2nd day of May, 2007

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of May, 2007 to the following:

Mr. Christopher Shane Gray, #66588
HCCC
304 Ray Sandoval St.
Walsenburg, CO 81089

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

_____
Susan L. Carter