IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-321
Category III
Claimant: Jeffery Harris, #101324
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on May 4, 2007. The hearing was held at the Arkansas Valley Correctional Facility (AVCF) at Crowley, Colorado. Present were the following: Claimant Jeffery Harris (Claimant) and Rob Huss, attorney for Defendants.

Claimant testified in his own behalf. Defendants submitted Exhibits A through E. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. After closing arguments, the case was taken under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may

Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

exercise only the jurisdiction agreed upon by the parties.

        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

    The Settlement Agreement further provides, in part, as follows:

        2. Permanent Hearing Impairments
        Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
        3. Permanent Vision Impairment
        Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
        4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
        Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

    On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

        2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
            1. Is the claimant a disabled individual who is a member of the class?
            2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
            3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
            4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

3

Claimant first came into DOC custody in August, 1999. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant spent two years at CTCF and then was placed at AVCF. Claimant remained at AVCF for four years and eight months. He then was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado.

In the initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows in his initial claim form.

> My diabetes affects me in the following ways: my sugar levels vary widely due to inconsistent menu items. Mr feet swell making walking difficult. My vision is becoming impaired due to poor medical treatment. My life is stressful as I am constantly worrying because DOC medical will not provide basic care for my condition.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> DOC medical has continued to provide less than adequate medical care/treatment. Medical refuses to perform what the American Diabetes Association (ADA) recommends as routine examinations for diabetics. Additionally, medical has refused to check my swollen feet; perform the recommended examinations as suggested by the pharmaceutical company which provides some of the medication that DOC is giving to me (Actos). My documented heart problems are exasperated by diabetic medications yet medical refuses to modify the medications or check my heart conditions. Medical refuses to perform annual eye exams as recommended by ADA as well as regular blood pressure exams, cholesterol tests, foot exams, PAD evaluations or quarterly HbA1c tests. DOC medical does not recognize the complications of my illness and treats the symptoms as non-existent or has stated that symptoms are in my mind.

At the hearing, Claimant testified that he was diagnosed as being a diabetic in 1991. He began treatment by taken medication by pill. He has had heart problems for some period of time, and that has created problems in treating his diabetes.

When Claimant arrived at DRDC, his diagnosis of diabetes was confirmed. He continued to take medication by pill. He now also takes insulin. Claimant was given a diet tray. He later transferred to a kosher diet, as that was viewed as appropriate for diabetics. His kosher diet was terminated recently, and he is now eating the regular meal provided at DOC facilities and is expected to carefully examine what he should eat. He also receives a snack.

Claimant had a heart attack in 2000. He received two stents in his heart. He has continued to struggle and worry about heart issues.

Claimant testified that he has met with a dietician to discuss his diet. He is worried about his diabetes as it has led to the loss of his teeth and is causing his eyes to turn white. He has not received any tooth implants now that his teeth are gone. Claimant stated that sometimes the facility would run out of medication. He had to wait three weeks for medicine at one point. Claimant stated that medical providers will change medications.

On cross-examination, Claimant was asked how he been discriminated against. He indicated that the facility could not keep his medicine in stock. Further, he was precluded from being placed at a camp because of his medical level.

In rebuttal, Claimant testified that he had been on Actos for an extended period of time. He was taken off this drug at AVCF. He now receives Glucophage and is taking insulin by shot two times per day.

Defendants presented the affidavit of Dr. Orville Neufeld, Ph.D., D.O. in lieu of his testimony. Attached to the affidavit are several pages of medical records of Claimant.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was had a covered impairment on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** There is no dispute that Claimant has diabetes. He came into DOC custody with diabetes and that status has not changed. Claimant is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. A claimant must show that he was treated differently than a non-handicapped individual.

Based upon all of the evidence presented, it does not appear that Claimant was the victim of discrimination, with one exception that will be discussed. Claimant has significant heart problems and has had a major attack since coming into DOC custody. When Claimant arrived at DRDC, it was clear that he had medical issues, including diabetes. *Exhibit A-1 (list of medications of Claimant)*. Claimant has not shown that he was denied progressive moves because of his diabetes. Some of the decisions, such as no placement at camps, appear to have been based upon the on-going heart problems of Claimant.

Claimant testified that the facilities in which he was placed would run out of his medication. He once had to wait three weeks before his medication was available to him. This testimony has not been refuted by Defendants. This Special Master has held that running out of medicine is unconscionable and a violation of the ADA and Rehabilitation Act. A diabetic in prison has no option to seek appropriate medication on his own or through non-prison sources. To deny a diabetic needed medication is to treat that individual differently, as the non-diabetic does not need Actos or insulin to keep on living. Accommodation for the diabetic is to insure that he or she has access to appropriate medications. That did not occur here. Claimant has established that a violation of the ADA occurred concerning the lack of replacement medication.

Claimant has raised numerous issues concerning his medical care while in DOC. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant was in fear because of the lack of replacement medication. Claimant is entitled to damages in the amount of $350.00.

IT IS HEREBY ORDERED that the claim of Jeffery Harris has been established to the extent noted in this Order, and Claimant is entitled to damages in the amount of $350.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Jeffery Harris is dismissed, as Claimant has failed to prove each of the four questions set forth by Judges Nottingham and Kane and that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 16th day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master