IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-390
Category II
Claimant: Lawrence E. Savage, #82150
Address of Claimant: c/o Matthew Goldberg, 3980 Quebec Street, #221, Denver, CO 80207

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Lawrence E. Savage. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out

1

provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Savage submitted a claim which was assigned claim number 02-390. The claim is premised on an alleged permanent mobility disability and a permanent vision disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. The record is unclear as to when Claimant entered CDOC custody. Claimant states that he entered CDOC custody in 2003; however, there are records submitted to the Special Master indicating that Claimant was in CDOC custody in 2000, and perhaps as early as 1993. The record is also unclear as to the facilities in which Claimant has been housed. In appears that for part or all of the time that he was in CDOC custody, Claimant was housed at the Limon Correctional Facility (LCF), the Sterling Correctional Facility (SCF), the Kit Carson Correctional Center (KCCC) and perhaps the Freemont Correctional Facility (FCF).

4. Claimant complains of severe ankle and back pain. He suffered an ankle fracture in 1998 that was repaired by surgery and the installation of plates and screws. He has had chronic ankle pain ever since and has been given ibuprofen for pain. In 2000, he suffered an ankle sprain that resulting in some swelling. He received Motrin and was

temporarily given a set of crutches. Claimant has also been seen on a few occasions by medical providers for neck pain. Claimant states that the pain prevents him from standing on his ankle for long periods of time.

Claimant also states that he suffers from severe eye pain. He indicates that periodically his eyes stop working and he sees tiny lights and lines that he believes are scratches on his pupils. He further states that his eyes are sensitive to light and that the eye pain causes headaches.

5. Claimant contends that he has not received proper medical care for his ankle, neck and eye pain. He states that he has repeatedly requested to see an eye specialist but his requests have been denied. Claimant asserts that pursuant to a doctor's recommendation in 2000, he was provided with special soft sole shoes that gave some relief from his ankle pain and allowed him to exercise. Claimant complains that the soft sole shoes were taken away from him when he arrived at the Limon Correctional Facility in December of 2003. As a result, Claimant states that he can no longer go the recreation area and work out and that he has gained a significant amount of weight because of the lack of exercise.

6. Claimant's medical records show that he did suffer a fractured ankle which was repaired by surgery involving the placement of plates and screws. The records indicate that the ankle fracture is well healed and that there are no significant degenerative changes. Claimant does apparently continue to suffer pain due to a chronic deltoid ligament strain. However, there is no indication in the medical records that his ankle pain prevents him from walking. To the contrary, the medical records are replete with notations that Claimant's gait is normal and robust and that he does not walk with a limp. The medical records reflect that Claimant suffers from severe dry eyes and that he was diagnosed with recurrent corneal erosions. He was given medication for this condition. Claimant wears glasses and his corrected visual acuity is 20/20 in the right eye and 20/25 in the left eye.

7. The records provided to the Special Master confirm that Claimant's soft sole shoes were taken away from him when he arrived at the Limon Correctional Facility. He was given permission to purchase tennis shoes from the canteen.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C.

29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent mobility disability. The evidence does establish that Claimant has pain in his ankle and neck. However, the fact that a Claimant suffers from neck and ankle pain, by itself, is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999).

5

There is no evidence in the record that Claimant's neck and ankle pain substantially limit his ability to engage in the major life activity of walking. Indeed, the record reflects that Claimant can and does walk normally and without a limp. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision, the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.*, 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.*, 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996).

The Special Master further finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that his eye pain substantially limits his ability to engage in any major life activity. Claimant's corrected visual acuity is 20/20 in the right eye and 20/50 in the left eye. Because Claimant has been provided with corrective lenses, his corrected visual acuity is the relevant consideration for purposes of the ADA and/or the Rehabilitation Act. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).

3. Even if Claimant is deemed to have a permanent mobility disability and/or a permanent vision disability, the Special Master finds and concludes that he has not established by a preponderance of the evidence that he has suffered any discrimination because of his alleged disabilities which are cognizable under the Remedial Plan. All of Claimant's complaints regarding his vision problems relate directly to alleged failures to provide proper and timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

Claimant's main complaint regarding his mobility impairment is that his soft sole shoes were taken from him in December of 2003 when he arrived at Limon Correctional Facility. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph

XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan. No such evidence was presented here.

Because Claimant has failed to demonstrate that he has a permanent mobility disability or a permanent vision disability and because he has failed to demonstrate that he suffered any discrimination or failure to accommodate his alleged mobility impairment prior to August 27, 2003, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Savage's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 2, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 2nd day of May, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of May, 2007 to the following:

Mr. Lawrence E. Savage, #82150
c/o Matthew Goldberg
3980 Quebec St., #221
Denver, CO 80207

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter