IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-444
Category II
Claimant: Lionel Vigil, #91051
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Lionel Vigil. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Lionel Vigil submitted a claim which was assigned claim number 02-444. The claim is premised on an alleged permanent mobility disability, a permanent vision disability, a permanent hearing disability and permanent disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Vigil entered CDOC custody in 1996. Although the record does not specify the institutions in which Claimant was housed while in CDOC custody, it appears that he was housed for part or all of his CDOC custody at the Freemont Correctional Facility (FCF), the Sterling Correctional Facility (SCF), a facility in Karnes, Texas and the Huerfano County Correctional Center (HCCC).

4. Claimant complains of a host of medical problems, some of which potentially implicate the *Montez* Remedial Plan and many others that clearly do not. He asserts that he is diabetic. He states that he has stiff elbows and knees that sometimes make walking painful. He also indicates that he has chest pains, stomach cramps, dizziness, progressing asthma, nasal congestion, headaches and pains while he is sleeping or walking. Claimant Vigil further states that he can't hear very well and has a buzzing

in his ear. This has caused him to miss appointments and have some earaches. He explains that rather than asking teachers or prison guards to speak up, he finds out what they have said from his fellow inmates and that this is very embarrassing. Finally, Claimant states that his vision is blurry and he can barely read bulletin boards, menus and school black boards. He indicates that his eyes tire when he reads or watches television and that his vision is worse when he is outside exposed to sunshine.

      5.    Claimant asserts that CDOC has improperly treated his diabetes and has not provided him with a proper diabetic diet or a proper cell. He further contends that the ventilation system does not provide him with clean air, which exacerbates his medical conditions.

      Claimant complains that he has not received adequate medical care for his elbow and knee pain and that he was denied a cane and ice packs while at the Sterling Correctional Facility. He further contends that he has been moved unnecessarily from facility to facility. Also, Claimant states that he has been given an upper bunk and that he has fallen from his bunk a few times. He indicates that at Huerfano County Correctional Center, there are no ladders on the bunks, that the stools in the cells are metal and that the facility was locked down for days or weeks at a time.

      Claimant Vigil asserts that he has not received proper medical care for his hearing impairment, and that he has been discriminated against by not receiving proper meals and living quarters.

      With respect to his vision impairment claim, Claimant contends that he did not receive an appointment for eyeglasses until May of 2000, after his eyesight became blurry and he was getting headaches. He also complains that after breaking his glasses, he had a hard time getting new ones.

      6.    Claimant's medical records show that he received a series of x-rays of his lumbar sacral spine, pelvis and left humerus in 2005, as a result of Claimant's complaints. All of the x-rays were negative and showed no abnormalities, fractures or dislocations. An ambulatory health record dated 7/23/03 notes that Claimant exercises by walking. The same record contains a medical directive to continue these exercises. Claimant was diagnosed as hypoglycemic in September of 2002 but has never been diagnosed as diabetic. At the time of his diagnosis of hypoglycemia, he was provided with education regarding his condition. He was again given information on hypoglycemia and diet in July of 2003. The medical records show that Claimant's eyesight was tested in March of 1998 and indicated an uncorrected visual acuity of 20/40 in the right eye and 20/35 in the left eye. It appears that Claimant received corrective lenses in 1999. A follow up eye examination showed a corrected visual acuity of 20/25 in the right eye and 20/20 in the left eye. There are no medical or other records suggesting that Claimant ever complained about hearing loss or that he ever received any treatment for hearing loss.

## III. CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent mobility disability. There is no objective medical evidence that Claimant suffers from any condition that would adversely impact his ability to walk. Furthermore, the fact that a Claimant may suffer from knee pain, by itself, is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May

18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999). There is no evidence in the record that Claimant's back and hip pain substantially limits his ability to engage in the major life activity of walking. Indeed, the record reflects that Claimant can and does walk. Finally, the EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision, the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.,* 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.,* 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir. 1996).

The Special Master further finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he suffers from a permanent hearing disability. Other than his conclusory statements in his Claim and Supplemental Claim, there is no evidence that he has a hearing impairment. Additionally, there is no evidence that Claimant ever complained to CDOC personnel of hearing difficulties or ever asked or received medical treatment for a hearing impairment.

The Special Master finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he suffers from diabetes. Although he has been diagnosed with hypoglycemia, there is no evidence in the record that he has ever been diagnosed as being a diabetic.

The Special Master further finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he suffers from a permanent vision impairment that substantially limits his ability to engage in major life activities. Because the basis of Claimant's discrimination claim with respect to his vision impairment is that he did not receive corrective lenses for a lengthy period of time, the applicable standard to determine whether he is vision disabled is his uncorrected visual acuity. Even using the uncorrected visual acuity standard, however, it is clear that Vigil's very moderate vision impairment (20/40 uncorrected acuity in left eye and 20/35 uncorrected acuity in right eye) does not amount to a permanent vision disability within the meaning of the ADA and/or the Rehabilitation Act.

Because Claimant has failed to demonstrate that he has a permanent mobility disability, a permanent vision disability, a permanent hearing disability or a permanent disability due to diabetes, his Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Vigil's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 2, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 2nd day of May, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

---

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of May, 2007 to the following:

Mr. Lionel Vigil, #91051
HCCC
304 Ray Sandoval St.
Walsenburg, CO 81089

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter