IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-447
Category II
Claimant: Joann Davis, #117526
Address of Claimant: 915 S. Union, #203, Colorado Springs, CO 80910

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Joann Davis. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Joann Davis submitted a claim which was assigned claim number 02-447. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. It appears that Claimant Davis entered CDOC custody approximately February, 1993. While in CDOC custody, she was housed at the Denver Women's Correctional Facility (DWCF).

4. Claimant suffers from severe hip and back problems. She has had these problems since childhood, and they were exacerbated in a motor vehicle accident in 1992. She developed disc disease which required surgery in 1993. She has hip bursitis and cervical disc disease, as well as lumbar degenerative disc disease, severe plantar faciitis, and degenerative joint disease in her knee. She is unable to work and walks with the assistance of a cane. Claimant walks with a significant limp and cannot ambulate for any significant distance, even with the aid of a cane.

5. Claimant asserts that she did not receive appropriate medical treatment and medications for her pain; that CDOC unreasonably delayed providing proper medical

treatment; and that CDOC improperly withdrew her pain medication. She also contends that CDOC refused to provide her with medical devices to assist in treating her medical condition, including a medical mattress, a pillow to elevate her legs, cold packs and a pass to utilize the microwave to heat towels for use as hot packs. Claimant further complains that CDOC refused to provide her with an elevator pass so that she could utilize the library. She references one specific instance in 2004 when her back froze up and she was unable to get to the dining hall. She states that CDOC staff refused to bring her food, and refused to provide her with a wheelchair.

6. Claimant's medical records confirm that Claimant suffers from severe degenerative disc disease and bursitis in her hips, plantar faciitis and degenerative joint disease in her knee. The records further confirm that these conditions render her unable to work. The medical records indicate that Claimant was seen on 8/29/03, at which time she given a lower tier-lower bunk restriction, an order to provide her with a cane, an elevator pass and a medically unassigned status. She was also provided with pain medication. On 10/9/03, medical provided Claimant with an additional order for medical tennis shoes. Claimant received various pain medications over the course of her CDOC custody. On 12/19/03, Claimant was provided with an order for an elevator pass for an additional three months. It appears that the elevator pass was again renewed in 2004. Her lower bunk-lower tier restriction was renewed in January of 2004. In February of 2005, medical issued a directive that Claimant could use the microwave indefinitely to make hot packs

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing,

4

vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has established by a preponderance of the evidence that she suffers from a permanent mobility impairment that substantially limits her ability to engage in the major life activity of working. The medical records confirm that Claimant suffers from severe degenerate lumbar disc disease as well as degenerative joint disease in her knee, bursitis in her hips, and plantar faciitis in her feet. While she can walk to some extent with the assistance of cane, it is uncontroverted that the above described conditions substantially limit her ability to work. Accordingly, the Special Master finds and concludes that Claimant suffers from a permanent mobility disability within the meaning of the ADA and the Rehabilitation Act.

3.  The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4.  The key issue is whether Claimant was discriminated against because of her disability. This issue is complicated by the fact that while any discrimination within the applicable statute of limitations may be cognizable under the ADA and/or the Rehabilitation Act, the Remedial Plan is more restrictive. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a

showing that Claimant did in fact suffer discrimination through a failure to accommodate her disability prior to the execution of the Remedial Plan.

      5.    Additionally, to the extent that Claimant's complaints relate to the adequacy of her medical care, the propriety of the medications provided by CDOC, or the timeliness of medical assistance, they are not cognizable under the ADA and/or the Rehabilitation Act. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

      6.    Claimant does assert claims regarding access to benefits, programs and services that might be cognizable under the ADA and the Rehabilitation Act. For example, she alleges that she was denied elevator passes that would have allowed her to utilize the library, that on at least one occasion she was denied a wheelchair to get to the dining hall when her back froze up and that on this occasion CDOC staff refused to bring her food. The problem with her claim regarding elevator passes is that the medical records submitted to the Special Master demonstrate that she was provided with elevator passes on a regular basis. The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that CDOC discriminated against her by refusing to provide elevator passes. Claimant's remaining contention regarding the occasion in 2004 when she could not ambulate from her cell to the dining hall is the only portion of her claim that implicates discrimination cognizable under the ADA and/or the Rehabilitation Act and that incident occurred well after the execution of the Remedial Plan. Consequently, if Claimant wishes to pursue an ADA or Rehabilitation Act claim with respect to the 2004 incident, she must do so in a separate independent lawsuit outside of the *Montez* claim process.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Davis' Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before July 2, 2007** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 2nd day of May, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of May, 2007 to the following:

Ms. Joann Davis, #117526
915 S. Union, #203
Colorado Springs, CO 80910

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter