IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-732
Category II
Claimant: Craig Cordell Ralston, # 50155
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Craig Cordell Ralston. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Ralston submitted a claim which was assigned claim number 02-732. The claim is premised on an alleged permanent mobility disability and a permanent hearing disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Ralston entered CDOC custody in May of 2003. During his CDOC custody, he has been housed at the Limon Correctional Facility (LCF).

4. Claimant has lower back problems due to multiple back injuries. He has undergone two surgeries, a discectomy at L4-L5 and a laminectomy at L4-S1. He has also received various treatments such as physical therapy and steroid therapy with minimal results. Claimant Ralston also has impaired hearing. As a result of his hearing impairment, Claimant states that he cannot hear announcements on the public address system and cannot effectively utilize the telephones. He indicates that prison personnel often become angry with him and threaten discipline because he cannot hear their instructions and because he asks them to repeat their instructions several times.

5. Claimant contends that he has not received proper medical care for his back problems. He states that he has been denied adequate medication for pain relief and has been waiting for many months to be seen by a neurosurgeon. He asserts that he fell and may have chipped a bone in his shoulder, but that he has not received proper medical treatment for it. With respect to his hearing, Claimant complains that he has been denied a hearing aid and that despite his requests, no classes in lip reading or sign language have been provided. He states that because of his hearing impairment, he has missed meals, appointments, programs, medications and recreation.

6. Claimant's medical records show that he does have back problems which impair his mobility. However, there is little in the Claim, Supplemental Claim or medical file describing the nature and extent of Claimant's mobility impairment. The initial Claim merely states that Claimant has considerable chronic nerve pain at all times and that he has stiffness and weakness in his legs. He further states that standing, sitting, bending and lifting exacerbates the pain; and that his sleeping and eating are affected. The medical records indicate that medical providers have recommended further surgery but that Claimant signed a written refusal declining such surgery.

7. Claimant's medical records note a self-reported hearing problem in June of 2003. No further reference to any hearing difficulty appears until November of 2003, when hearing tests were performed that disclosed a 38 decibel hearing loss in the right ear and a 78 decibel hearing loss in the left ear. On December 1, 2003, Claimant was denied a hearing aid because CDOC's insurance provider would not pay for it. A hearing aid was again denied in December of 2005 because Claimant did not meet the CDOC criteria. An additional denial occurred in February of 2005 for the same reason. Several additional hearing tests have been performed, each of which indicated a right ear hearing loss of approximately 35 decibels and a left ear hearing loss of approximately 85 decibels.

8. The records provided to the Special Master show that Claimant has held jobs in the library and physical plant. He has taken GED classes, as well as classes in custodial training, industrial technology and computer information processing.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the

average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent mobility disability. The evidence does establish that Claimant has significant back problems. However a Claimant's diagnosis of lower back injury or damage, by itself, is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd*, 170 F.3d 188 (11th Cir. 1999). There is virtually no evidence in the record showing how Claimant's back problems affect his ability to engage in major life activities and no evidence that he is substantially limited in the major life activity of walking.

5

The record is not convincing that Claimant's hearing impairment constitutes a substantial limitation on the major life activity of hearing. An ambulatory health record of April 2006 notes that when the medical provider asked Claimant questions while not facing him that Claimant answered appropriately. Yet, the audiograms do indicate a significant hearing loss. For purposes of Ralston's *Montez* Claim, the Special Master will assume that he has met his burden of proving that he has a permanent hearing disability within the meaning of the ADA and/or Rehabilitation Act.

   3.   Of course, the key question is whether Claimant has been discriminated against because of his alleged disabilities. All of Claimant's complaints regarding his lower back problems relate directly to alleged failures to provide proper and timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

   4.   Claimant asserts that he was discriminated against because of his disability when CDOC refused to provide him with a hearing aid and/or sign language and lip reading classes. There is no evidence in the record that Claimant ever requested sign language of lip reading classes. While Claimant was denied hearing aids, this did not occur until after he had received an audiogram in November of 2003. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan. No such evidence was presented here.

Because Claimant has failed to demonstrate that he has a permanent mobility disability, and because he has failed to demonstrate that he suffered any discrimination or

6

failure to accommodate his hearing disability prior to August 27, 2003, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Ralston's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 2, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 2nd day of May, 2007.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of May, 2007 to the following:

Mr. Craig Cordell Ralston, #50115
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter