IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-742
Category II
Claimant: Michael Milligan, #42327
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on the claim of Michael Milligan (Claimant). Claimant is incarcerated in the Colorado Department of Corrections (DOC). He presently is placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

      The Special Master has reviewed the claim and response by Defendants. Claimant filed a motion to dismiss. An order was issued to Claimant advising him that dismissal of his claim would preclude him for filing in the future. He also was advised that a statement had to be filed by him indicating that he was not being coerced into requesting dismissal of his claim. Nothing further was filed. Claimant was advised in an order dated March 30, 2007 that his claim would be resolved on its merits if he did not file a further statement requesting dismissal of his claim. Nothing further has been submitted, and the claim will be resolve on its merits.

      This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans

with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an

3

appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody in 1984. When he filed his claim, he was incarcerated at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Claimant has since been transferred to FCF in Canon City, Colorado.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form.

> I have a permanent subtalar ankle joint instability and flat foot (left foot), which requires me to wear a custom AFO brace (prosthetic) to help me walk. This is fully documented in my CDOC medical files. This disability limits my walking, it limits my ability to participate in recreational activity, and it limits me in job opportunities because I cannot stand for longer periods of time and I cannot walk very far without pausing due to the pain.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I have been denied acknowledgment of my disability by CDOC. I have resubmitted an Inmate Disability Form for verification. I have been denied accommodation for my disability by CDOC. I have resubmitted a Request for Accommodation for accommodation. Also, I have been placed in a private CCA prison facility, the Huerfano County Correctional Center, which isn't providing access to the recreation yard, setting accommodations in dining halls or equal recreational programs for inmates with disabilities. I am also being denied proper footwear for accommodation for my AFO brace, as well as repair or replacement of the footwear I purchased outside of CDOC and currently possess.
>
> I have been caused harm by denial of access to recreational activities and yard activities as currently none are provided at HCCC for any disabled inmates.

Defendants submitted a response to the claim. Attached to the response were several pages of Claimant's medical records. Defendants argue that Claimant is not disabled and is not part of the class. Defendants submitted a profile which reflects the facilities that Claimant has been placed into since coming to DOC. Claimant arrived at HCCC on June 30, 2004. He then was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado on February 23, 2006. He has been at other facilities before arriving at FCF.

Claimant had an x-ray of his left ankle on September 12, 2000. *Exhibit E*. The radiologist read the x-ray as follows: "left ankle is radiographically normal." Dr. Howard Krieger, DPM examined Claimant on September 18, 2000. *Exhibit F*. His report indicated the following:

> Metatarsalgia from long brace. Ankle joint pain of chronic nature, which seems to be well controlled with the brace in possession.

Claimant was provided custom made boots for his leg and ankle. *Exhibit I*. He also was given some restrictions. *Exhibit J*.

Claimant was given until May 1, 2007 in which to respond to the response of Defendants or to submit the additional document for dismissal of his claim. Claimant has filed nothing further in support of his claim or in reply to the previous order of the Special Master.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he has a permanent ankle problem. He alleges that he had this problem in the late 1990's and in the year 2000. The medical records provided by Defendants reflect that he was complaining of ankle problems and had received a boot for his left foot and ankle.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not used a wheelchair while in DOC custody. He does not qualify under that part of the definition.

Claimant has stated that he cannot walk far without pausing. An example in the Settlement Agreement for a mobility impairment is the inability to walk more than one hundred yards without stopping or not being able to climb a flight without stopping. It is unclear exactly how far Claimant can walk without stopping. Claimant will be given the benefit of the doubt. He is found to be mobility impaired and a member of the class on that basis.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met

his burden of proof as to this question.

There is no evidence that Claimant received treatment on or before August 27, 2003 that was different from other inmates who did not have a mobility impairment. Claimant was able to work and be involved in programs. Claimant makes only generalized references to the lack of recreational opportunities for disabled inmates at HCCC, but he was assigned to that facility on June 30, 2004. Claimant has not been specific concerning anything that occurred prior to August 27, 2003. Claimant has failed to establish that any action taken against him was in violation of the ADA and Rehabilitation Act

Claimant does have concern about his medical treatment. The evidence presented by both sides reflects that Claimant has received medical care while in DOC custody. It is the quality and effectiveness of that care with which Claimant has some problems. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are prohibited by the *Fitzgerald* case from reviewing the quality of medical care provided to Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Michael Milligan is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 18th day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master