IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-344
Category III
Claimant: Jay H. Bailey, #103284
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER came before the Special Master for hearing on May 11, 2007. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Jay H. Bailey (Claimant); and Jennifer Fox, attorney for Defendants.

    Testimony was received from Claimant and James Blum. Defendants' Exhibits A through J were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

    After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on December 28, 1999. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was at DRDC for approximately four months and then went to the Limon Correctional Facility (LCF) in Limon, Colorado. Claimant then went to the Kit Carson Correctional Center (KCCC) in Burlington, Colorado. Claimant returned to DRDC for about ten months and then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant was at FCF until he was transferred to FLCF for a short period of time.

Claimant returned to FCF for three to four months and then went back to LCF. He remained at LCF until September 27, 2004 when he was transferred to FLCF. He has remained at FLCF since his last transfer.

In his initial claim form, Claimant checked the boxes for mobility impairment and vision impairment. Claimant stated, in part, in his claim form:

> I am wheelchair bound due to degenerating joints. All bodily joints are affected. The pain interferes with everyday movement and sleep. Sometimes the arthritic effect is so bad that I cannot even hold a pen for weeks at a time or even lift a book or open a carton of milk. Even brushing teeth will hurt my neck and wrists during these episodes. I am also prone to severe infections in my lower legs and feet (which are mostly numb from previous episodes causing nerve damage). At times, the arthritis in my rib cage will be so painful that I can barely breathe for days at a time, let alone sleep. I also have nerve damage in my left hand and wrist, causing numbness in my hand and fingers.
> I have blind spots in both eyes. The macular layer is damaged so my central vision is non-existent at those blind spots. I must have large print to read with both eyes. Small print (normal sized actually, newspaper size) is possible but difficult and slow if I use just my left eye because I have to look slightly to the side of what I want to see.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> On numerous occasions especially at Limon Correctional Facility, staff has refused to delegate someone to push my wheelchair to medical, chow and other necessary everyday places. All of the bulletin boards are too high. The doors are difficult to get through. The showers at LCF, KCCC have no handrails or places to sit and therefore, I had to go without showers for several months at a time.

Claimant was sent supplemental forms to complete and return. In his supplemental form on

mobility, Claimant detailed the types of arthritis that he presently has. In response to the question about requested accommodations, Claimant stated as follows:

    DRDC - No pushers, no classes, no jobs, no Law Library (total 10 months)
    LCF - No showers, no pushers (total 12 months)
    (KCCF) - No showers, no pusher til later, no jobs, only one class (total 18 months)
    FCF - No jobs, no classes, no accessible cell, no wheelchair repair (total 15 months)
    All facilities have unreadable bulletin boards, too high for wheelchair. Print
        too small
    FLCF - no classes, no pushers, no hobby ship, no job

Attached to his supplemental form are several grievances and medical records.

Claimant submitted additional records in support of his claim. Included were reports from radiologists from 2002 that confirmed that Claimant does have significant arthritic problems. Other medical issues, including obesity and gout, were also noted in the various documents that were submitted.

In his testimony at the hearing, Claimant stated that he has macular degeneration in his eyes. He described his vision as like having a blind spot. His right eye is worse than his left eye. It is difficult for him to read. He was diagnosed with this condition in 2000. Claimant states that he has received no treatment for his condition, but has had eye examinations. He believes DOC is simply ignoring his condition. He has received access to talking books from the library. He also noted that bulletin boards are too high for individuals in wheelchairs.

Claimant testified that he came to DOC in a wheelchair. He now weighs about 425 pounds. He weighed a bit less when he came into custody. Care and maintenance of his wheelchair are major priorities. The rubber has often come off of the wheels. While at KCCC, he requested repair of his wheelchair. He requested use of a loaner chair but without much success. He has continued to have problems in obtaining repairs to his wheelchair.

While at KCCC, there were no shower chairs. Claimant testified that the shower bench would not support his weight. He had to take "bird baths" in his cell. There were no hand rails in the cell and the wheelchair would slip back and forth. At FLCF on his first placement there were problems with the shower that lacked handrails. There also were no shower chairs. He fell on occasion and had trouble getting up.

Claimant testified that the shower at LCF was too narrow for his wheelchair. The shower at LCF simply was not usable by him. Claimant did not have an assigned pusher at LCF. He missed appointments because of his inability to travel from place to place at LCF. At FLCF during his present placement, he requested repairs to his wheelchair. It took a long time to get repairs.

On cross-examination, Claimant testified that he is able to read and uses bifocals. He has requested a magnifying glass to help when he reads. Claimant stated that he had received an

oversized wheelchair. He has received repairs, though belatedly. Claimant indicated that he cannot stand without having something to hang onto.

James Blum was called as a witness by Claimant. He is an inmate in DOC who is housed at FCF. He had known Claimant at FCF. Mr. Blum verified that Claimant had been in a wheelchair when he first met him. It was difficult for Claimant to go outside in his wheelchair. In addition, the wheelchair started to break down. Mr. Blum helped Claimant do some repairs on his wheelchair to allow him to have some mobility while awaiting professional repairs. There were no handrails in rooms. There were a limited number of places in the chow hall for wheelchair inmates. The cell Claimant was in had a stool welded to the wall. The desk in the cell was unusable by Claimant, as he could not get his wheelchair near the desk due to the stool. On cross-examination, Mr. Blum stated that he had never seen Claimant use a cane while he was at FCF.

Defendants submitted the affidavit of Dr. Orville Neufeld, Ph.D., D.O. Attached to that affidavit were several pages of Claimant's medical files, as well as other documents.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he had a mobility impairment and vision impairment that affected major life activities. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be taken separately.

**Vision**: Claimant has macular degeneration. He has received regular eye examinations, and it appears that his vision is correctable. Claimant did testify that he was not receiving treatment for this condition.

The Special Masters have ruled that vision impairment, as set forth in the Settlement Agreement, requires almost a showing of blindness. Claimant has some vision problems, but there is no evidence that something can be done to rectify the condition that he has. Claimant acknowledges that he is able to read and see, albeit with some difficulties. Claimant is able to carry on activities of daily life. The Special Master finds that Claimant is not vision impaired.

**Mobility**: Claimant has always been in a wheelchair since he arrived at DRDC in December 1999. Claimant uses a wheelchair full-time. He is mobility impaired, as defined by the Settlement Agreement. He is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the**

**benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Based upon all of the evidence presented, Claimant has proven part of his claim. Claimant was the victim of discrimination while in DOC custody on or before August 23, 2003.

Claimant testified at length concerning the systemic problems that existed before August 27, 2003. At several facilities, the physical plant could not accommodate Claimant and his wheelchair. That was the case at LCF as he could not get his chair into the shower stall. Due to Claimant's weight, he is not able to use the shower bench at KCCC. The cell at FCF was not appropriate for Claimant. In response to a grievance, FCF staff responded, in part, as follows:

> 2) There are no handrails at the toilet; the cell did not include handrails in the original design. This cell is not a permanent assignment for you. Since you are likely to move to different locations, you were issued a cane to assist you in moving around. This should be adequate for your needs.

*Exhibit G*. There is no question that Claimant was placed into a cell at FCF that was unsuitable due to his physical limitations and impairments. There is no rebuttal evidence concerning showers and other facilities at KCCC and LCF. Most of the systemic issues arose prior to August 27, 2003.

Claimant has testified, and it has not been refuted, that he was unable to see many of the bulletin boards at the facilities in which he was placed. The bulletin boards were too high for him to read due to his wheelchair. The evidence reflects that the bulletin boards were not moved after the Settlement Agreement was signed.

Claimant has established that repairs to his wheelchair prior to August 27, 2003 were unreasonably delayed. Claimant was entitled to a proper substitute chair while his wheelchair was being fixed.

There is no question that Claimant has significant and long-term medical problems.[2] It would be fair to say that Claimant poses a challenge for medical staff at DOC. He was the victim of facilities problems that existed prior to the Settlement Agreement. Many of those problems have been rectified, but they existed before August 27, 2003.

To the extent Claimant has raised other issues, the Special Master finds that they have not

---

[2] Testimony reflected that Claimant has sleep apnea and has received an oxygen generator. Part of his sleep problems may relate to his weight. He has foot ulcers and hypertension.

7

been proven by a preponderance of the evidence. Claimant has established that he was the victim of discrimination on or before August 27, 2003 that was prohibited by the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant was discriminated against because of his mobility impairment for the reasons noted. Claimant was not able to carry on normal daily functions, such as taking a shower. Claimant is entitled to damages in the amount of $900.00.

IT IS HEREBY ORDERED that the claim of Jay H. Bailey is granted, in part, and he is awarded damages in the amount of $900.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Jay H. Bailey is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 14, 2007.**

SIGNED this 21st day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master