IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-372
Category III
Claimant: James Christensen, #43710
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

### FINAL ORDER OF SPECIAL MASTER

_____

      THIS MATTER came before the Special Master for hearing on May 11, 2007. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Claimant James Christensen (Claimant) and Jennifer Fox, attorney for Defendants.

      Claimant testified in his own behalf. Defendants submitted Exhibits A and E. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]

_____

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may

Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

exercise only the jurisdiction agreed upon by the parties.

### C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

3

Claimant first came into DOC custody on August 4, 1976. He remained in DOC custody until 1978, when he walked away from the Colorado State Hospital (CSH) in Pueblo, Colorado. Claimant was out of DOC custody for over eleven years. He came back into DOC custody on July 16, 1989.

Upon his return to custody, Claimant was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He has been at a number of institutions over the years and was placed at FLCF on October 11, 2002.

In the initial claim form, Claimant checked the boxes for mobility impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form.

Left side of body numb from waist to toes. Knees give out at times and I fall. Use cane, never treated, they say it's age. Have had five pair of glasses, but still not able to correct any. Have some lite type hazy sight at times. Suppose to have it checked, not yet.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

They seem to feel that because I have arthritis, nothing can be done, mostly my time affects what they will do. My eyes are not getting better, and no one really wants to spend money to deal with it. Again age plays are part in this. Again time and age seems to play a factor in dealing with my torn biceps muscle. I realize at almost nothing works perfect but to write it off for age is discriminatory far as I'm concerned.

Claimant was sent supplemental forms to complete and return. In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

I suffer from three injuries received during my incarceration by DOC, each impairing my mobility and my emotional ability to cope with life in DOC. These injuries are (1) injury to my left hip and knee and back; (2) injury to my right bicep; and (3) mental and emotional damage due to "shock treatments."

Claimant described how he was attacked in 2001 by another inmate and thrown down violently. As a result of the attack, Claimant states that he has had to use a cane to walk. He had requested use of a wheelchair at the time he filed his supplemental form. Claimant maintains in his supplemental form that he is crippled in his left hip and knee.

In his supplemental form for vision impairment, Claimant stated that he has requested glasses since 1989. He has " 'blurred' vision which causes violent headaches and visual distortion."

Claimant submitted several pages of his medical records in conjunction with his

supplemental forms. The medical records reflect that Claimant has a right leg that is shorter than his left leg. He has fallen on several occasions. There are references to arthritis. Claimant has polio as a child. Claimant received Vicoden as a pain medication for a period of time, and then only Motrin. There are entries concerning his biceps tear. In 2001, Claimant saw Dr. Ryale, a specialist. Dr. Ryale noted that Claimant may have post-polio syndrome. There was reduced sensation in the left leg when an exam was performed.

This case was initially assigned to Category II. There is no right to a hearing for Category I and II claims and they must be resolved on the documents submitted. In August, 2006, Defendants submitted a response to the claim, as well as supporting documents. On page one of the response, Defendants stated as follows:

> Claimant James Christensen claims to be a member of the *Montez* class due to his claimed vision and mobility impairment. *See*, Initial and Supplemental Claim forms. As discussed further below, Defendants deny that Mr. Christensen is vision impaired or disabled. Defendants do concede that Mr. Christensen became mobility impaired by May of 2003.

Attached to the response are several pages of medical records. Those records reflect that vision exams were provided to Claimant on April 10, 2002 and on September 22, 2004. One medical entry reflects that Claimant was granted a restriction for stairs and lower tiers on May 21, 2003. An evaluation on November 29, 2004 reflected that Claimant had medical problems in both knees. He was experiencing significant balance problems.

At the hearing, Claimant testified that his vision continues to get worse. He has "fog in eyes" on occasions. He has received a new pair of glasses but they have not helped. He was recently screened for glaucoma.

Claimant testified further than he has mobility problems in his legs and hips. I uses a cane to get around. He has fallen several times and would like to have an MRI taken on his hips and back. He indicated that medical staff at FLCF were starting to work on some of his health issues. His left leg will turn cold. His hip will give out. He has been trying to walk as much as possible. Claimant stated that he just wants to know what is wrong with him. He would like to see what can be done to help him. He has become discouraged about his care.

On cross-examination, Claimant testified that medical care was his main issue. He works as a porter but it is not a hard job. He has used a cane since 2000. He has not used a wheelchair. He needs to have his left shoulder fixed .

Defendants submitted the affidavit of Dr. Neufeld. Attached to that affidavit are copies of medical records of Claimant. A report of a radiologist from February 12, 2001 reflects that Claimant had degenerative joint disease (DJD) at that time. *Exhibit A-2*. A physical examination on January 16, 2002 reflected several medical issues facing Claimant, including right-sided weakness. *Exhibit A-3*. The prognosis was "expect to progressively worsen." He was provided lower tier and bunk

restrictions on January 8, 2003. *Exhibit A-5*. He received a knee brace in 2004. He was also diagnosed with anxiety. *Exhibit A-6*.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

Claimant has raised issues concerning a torn biceps and his mental health. The latter relates to his treatment at the CSH in the late 1970's. As noted in Section I of the order, the Special Master has jurisdiction to consider only those disabilities noted in the Settlement Agreement. Mental health issues and upper body impairments are outside of the provisions of the Settlement Agreement. Claimant retains the right to bring a separate lawsuit concerning either of those conditions, but they may not be pursued through this claim.

**1. Is the Claimant a disabled individual who is a member of the class?** Each of the claimed disabilities will be taken separately.

**Mobility**: At the hearing, Defendants argued that Claimant was not mobility impaired. Defendants previously conceded that he was mobility impaired. That admission is binding. Claimant was mobility impaired on or before August 27, 2003. He is part of the class as mobility impaired.

**Vision**: The Special Masters have interpreted vision impairment to require a showing almost of blindness. In this case, Claimant has indicated that be had vision problems, but such problems do not show up in the vision examinations that he has undergone. The Settlement Agreement places the burden on a claimant to show he was impaired and disabled on or before August 27, 2003. As to vision impairment, Claimant has not done that. Claimant is not part of the class as vision impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. A claimant must show that he was treated differently than a non-handicapped individual.

Claimant was very candid at the hearing. He thought the claim process was preordained against him. He specifically stated that he did not want money, but only to feel better. He requested that an MRI be taken of his back, hips and knees, and that he receive appropriate treatment. In response to a direct question on cross-examination, Claimant stated that his medical treatment was the issue that he was concerned about. He wanted DOC to be directed to provide to him an MRI.

There is no question that Claimant has received some medical care while in DOC custody. Claimant does not believe that he has received appropriate care while in DOC custody. He continues to be in pain and struggling with his balance. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

The Special Master can appreciate the concern that Claimant has for his well-being. His case is predicated on the quality of medical care that he has received. The *Fitzgerald* case precludes the claim process from being used to evaluate the quality of care that has been received. Claimant retains the right to bring a separate lawsuit under the Eighth Amendment. The evidence presented does not establish a disparity of treatment prohibited by the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of James Christensen is dismissed, as Claimant has failed to prove that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 18th day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master