IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-388
Category III
Claimant: Henery Whitley, #93524
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on May 11, 2007. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Henery Whitley (Claimant); and Jennifer Fox, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A through F were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on September 19, 1997. He was placed at the Denver Reception and Diagnostic Center (DRDC). He remained at DRDC for approximately three weeks and then was transferred to the Kit Carson Correction Center (KCCC) in Burlington, Colorado. He remained at KCCC for about two years and then went to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He was transferred to FLCF on September 12, 2002.

In his initial claim form, Claimant checked the boxes for vision impaired and diabetes. Claimant stated, in part, in his claim form:

> Vision: I have lost a large percentage of my vision while in DOC. Diabetic: After some time of being incarcerated I was diagnosed with diabetes. I had noticed and suffered long before I was diagnosed.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> As I stated before I was suffering from swollen feet and arms, dizziness and blurred vision long before I was ever diagnosed. I now suffer from vision loss because of the slow diagnosis of the medical staff.
>
> Because of this medical situation I am unable to advance to a lower class security rating.

Claimant was sent supplemental forms to complete and return. Claimant completed the supplemental form for diabetes. He stated, in part, as follows:

> I have had several occasions where I blacked out for unknown amount of time due to DOC's inability to diagnose me as a diabetic on my initial testing. It wasn't until two years later and my constant complaining of side effects due to diabetes that I was diagnosed with diabetes.

Attached to the supplemental form are several pages of medical records. One page is from Denver Health Medical Center and reflects an examination on October 1, 1999. Claimant was found to be diabetic at that time. The other entries reflect the blackout spells that had occurred.

This claim was assigned originally to Category II. Defendants had filed a response to the claim and had attached several pages of medical records. Included in the attached documents are two physical examinations. The first is dated September 22, 1997 and reflects a glucose test that was high. There were other abnormalities that were listed, but none related to the claim. On December 22, 2002 another physical examination took place and reflected that Claimant had high glucose test

results. He was diagnosed by then as having diabetes. Claimant also had an eye examination on April 30, 2003 which indicated that he had eyesight correctable to 20/20 in both eyes. Claimant received eyeglasses in August 2, 2003 and May 26, 2006. *Exhibit F*.

In his testimony at the hearing, Claimant stated that he was diagnosed with diabetes in 1999 and then placed immediately at KCCC. He was given Glucophage and Glucovance as medications for his diabetes. Claimant testified that he experienced swelling in his legs,. He also was experiencing pain in his chest related to his heart. Claimant stated that when he arrived at FLCF he was advised that he should not have been on Glucovance.

Claimant testified further than he received no programs for exercise. He was advised to carry candy and glucose tablets for the times when he had a low blood/sugar level, but had to purchase his own candy through the canteen. Claimant testified further that his leg had been swollen for most of the last year. He had received water pills but that did not help. He had purchase compression socks for his legs. Claimant believed the swelling was related to his diabetes.

Though he had been advised that he was receiving a special diet, Claimant believed that it was what was served to everyone as a whole. Claimant has been referred to a specialist for his diabetes. Claimant has received insulin by shot twice per day since 2001.

On cross-examination, Claimant testified that he has received glasses from DOC. He must use glasses for reading. He noted that diabetics are not called for exercise even though supposedly impaired.

Claimant testified on rebuttal that he does purchase items from the canteen. He wondered why DOC did not prohibit such purchases if it was concerned about the health of diabetic inmates. Claimant noted that DOC "can control your money." Claimant stated that AVCF did provide glucose tablets to inmates who were diabetic.

In lieu of live testimony, Defendants submitted the affidavit of Dr. Orville Neufeld, Ph.D., D.O. That affidavit contains a number of documents from Claimant's medical records. Defendants also submitted other documents in support of their position.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. It should be noted that Claimant has other medical problems, including a heart condition, which are affecting his health but which are not part of the Settlement Agreement.

**Diabetes**: According to Dr. Neufeld's affidavit, Claimant was diagnosed with diabetes in

5

late 1999. The Special Master finds that Claimant was diabetic before August 27, 2003 and is a member of the class as diabetic.

**Vision**: The medical records attached to Dr. Neufeld's affidavit reflect that Claimant has had regular eye examinations. He has been provided eye glasses.

The Special Masters have interpreted vision impairment as requiring almost blindness. In the case of Claimant, he is able to function and do his activities of daily life. Claimant is not vision impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no, with one exception. Claimant has received medical care while in DOC custody. He has expressed concern about that medical care. Claimant has raised issues concerning the appropriateness of his medical care and what sounds like a claim of medical malpractice in not diagnosing his diabetes earlier.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has testified that he has been advised to carry candy with him or have glucose tablets. While at AVCF, glucose tablets were provided by medical staff. Those tablets were necessary for those times when Claimant's blood/sugar levels were low. Since arriving at FLCF, Claimant has had to purchase his own candy. The Special Master has noted in the past that candy has been necessary for the health of diabetic inmates. Glucose tablets are not provided any more because of security concerns. The result is that Claimant is treated differently from an inmate who does not have diabetes. The non-diabetic is not required to allocate part of his modest monthly earnings for items essential for his health. On the other hand, the diabetic does have to make a choice. He may choose not to purchase the candy and face the prospect of a significant health event.

The diabetic inmate must secure his medicine from the correctional facility as he cannot shop on the outside market. The issue of candy for low blood/sugar periods is the same as medicine, as it is necessary for the well-being of Claimant and others. This disparate treatment does violate the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has established that he has had to purchase candy as a health necessity. The Special Master finds damages have been established in the amount of $75.00.

IT IS HEREBY ORDERED that the claim of Henery Whitley is proven, in part, and Claimant is awarded $75.00 in damages; and

IT IS FURTHER ORDERED that the remainder of the claim of Henery Whitley is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 21st day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master