IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-394
Category III
Claimant: Ben Lopez, #102795
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on May 10, 2007. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Claimant James Christensen (Claimant) and Rob Huss, attorney for Defendants.

Claimant testified in his own behalf. Defendants submitted Exhibits A and G. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may

Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

exercise only the jurisdiction agreed upon by the parties.

2

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant first came into DOC custody on November 24, 1999. *Exhibit G*. Claimant was evaluated initially at the Denver Reception and Diagnostic Center (DRDC). He then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He remained at FCF until 2005 when he was transferred to FLCF.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form.

> May 11, 1999 I had a heart attack. Due to the heart attack I cannot write good enough to the paperwork. I am 77 years old so it is hard for me to get around here at Fremont - this place took all the wheelchairs out of here. I have fallen 5 times, this last time 02-16-05 things were not the same. I cannot get out of bed that good, I cannot go eat, and they don't want to bring me anything to eat. In my medical files you will see all the things I have been through - this place is not a medical placement, so they keep doing the same thing and that is "nothing" - if I fall again I feel I can die. Please get me to DRDC - somewhere close to my wife in Denver.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> Because they know that I can not get the help I need I cannot use the rest room alone. But they still got me here. I cannot get to the law library without a wheelchair - and they say this is not a place for them so it is hard for me to do anything.

This claim was originally assigned to Category II. Defendants submitted a response to the claim, and then it was elevated to Category III and the hearing was held. Attached to response were a number of medical and other records. The medical records reflect that Claimant had significant heart disease problems and received a coronary bypass operation at St. Joseph Hospital in 1998. He had received a food handler's certificate in 2000 but had significant restrictions due to his physical condition. He received an x-ray in 2002 which reflected that "left hip joint is narrowed and sclerotic." He was diagnosed as having degenerative joint disease (DJD).

At the hearing Claimant testified that he has just been diagnosed as having diabetes. He has had DJD for several years, as well as heart problems. He has had problems with his balance and was using a wheelchair to steady himself while walking. He has been trying to walk as much as possible, often going around the perimeter of FLCF for exercise. Claimant testified further that he had problems falling while at FCF. He requested a wheelchair while there and did not receive one. He has had limited jobs while in DOC custody. Claimant indicated that he is presently seventy-nine years old.

In lieu of testify from a witness, Defendants offered into evidence the affidavit of Dr, Orville

Neufeld, Ph.D., D.O. *Exhibit A*. Attached to that affidavit are a number of records of Claimant. Defendants acknowledge that Claimant had heart surgery before arriving into DOC custody. A cardiac evaluation was done on August 11, 2004. *Exhibit A-4*. Nothing unusual was noted concerning the heart, but it was noted that he was on medication that might need to be modified in dosage.

The medical records reflect that Claimant fell at FCF on September 19, 2003. *Exhibit A-5*. Claimant was allowed use of a wheelchair for a short period of time. It was noted in 2005 at FCF that he might have Parkinson's disease. *Exhibit A-7*. A wheelchair was recommended by medical staff on February 23, 2005. *Exhibit A-8*. As the result of that recommendation, Claimant was transferred to FLCF. He was placed on the special needs floor.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

Claimant recently has been diagnosed as having diabetes. This condition did not exist on or before August 27, 2003. As a result, it may not be considered as part of this claim. Claimant may pursue a separate lawsuit if he believes that he had been discriminated against due to his diabetes.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant is only claiming mobility impairment in his claim. Claimant must show that he was impaired on or before August 27, 2003.

Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant used a wheelchair for only a short period and after August 27, 2003. He is not mobility impaired as being in a wheelchair full or part-time.

Claimant's testimony is that he presently walks around the perimeter of FLCF three times per day. He does so to get exercise. He also testified that walking helps him. Claimant is to be congratulated on his efforts to maintain his health. From his testimony, it appears that his discharge date is not far in the future. He wants to be released to be with his wife who is eighty-four years old.

Two examples are used in the Settlement Agreement for mobility impairment. An individual who cannot climb a flight of stairs without stopping is deemed mobility impaired. The same is true for an individual who is unable to walk more than one hundred yards without stopping. The evidence reflects that Claimant is able to walk a significant distance and does so every day. Claimant is not mobility impaired as defined by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ben Lopez is dismissed, as Claimant has failed to prove that he was mobility impaired, as defined by the Settlement Agreement, on August 27, 2003 or before; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 18th day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master