IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-898
Category II
Claimant: Dennis O'Connor, #110456
Address of Claimant: 141 North 1st Street, Grand Junction, CO 81501

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER comes before the Special Master on the claim of Dennis O'Connor (Claimant). Claimant was in the custody of the Colorado Department of Corrections (DOC) when he filed his claim. He has discharged his sentence and is living in the Grand Junction area.

    This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Claimant has filed two claim forms and a supplemental form. Defendants have filed a response to the claim. Claimant was granted up to and including May 14, 2007 in which to file a reply to the response of Defendants. Despite being granted additional time in which to file a reply, Claimant has filed nothing further.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

>2. Permanent Hearing Impairments
>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>3. Permanent Vision Impairment
>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC on September 28, 2001. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). On November 19, 2001, he was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He was transferred on April 30, 2002 to the Arrowhead Correctional Facility (AHCC) in Canon City, Colorado.

Claimant was placed on intensive supervised parole on August 12, 2002. He went back the Grand Junction area. Claimant was placed on absconder status on October 12, 2004. He was taken into custody on May, 2005 and returned to DOC custody at DRDC on May 25, 2005. He was placed at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado on June 22, 2005. He was transferred to the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado on November 30, 2005. He discharged his sentence in late 2006.

Claimant filed two claim forms. On both forms, Claimant checked only the box for diabetes. In the second form, Claimant stated, in part, as follows:

> I have diabetes and it leaves me tired and my vision is not the best. I'm 67 years old.

On the same form, Claimant responded to the question about discrimination by DOC and its staff as follows:

> I am retired and am being made to work as a janitor when some of the younger inmates do nothing.

Claimant was sent a supplemental form for diabetes. Claimant responded as follows in that form:

> I've never been told what I should eat to keep the diabetes from getting worse and I am not on a diabetic diet.

> I'm on a disability pension from the railroad. I'm 67 years old and I'm being made to work as a janitor when some younger men do nothing or very little.

Claimant has not submitted any of his medical records or any other records from DOC or non-prison sources.

Defendants have filed a response to the claim. Attached to that response are several pages of medical records. None of the records reflect that Claimant has ever been diagnosed as having diabetes.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has checked the box only for diabetes. Claimant has submitted no medical records which reflect that he has been diagnosed as having diabetes. He only states that he has this disease.

None of the medical records submitted by Defendants reflect that Claimant has diabetes. Testing was undertaken by DOC in mid-2005. The test results reflected that his blood/sugar levels were within normal limits. A diabetic screening was conducted in November, 2005, and a doctor noted that Claimant was not diabetic.

Claimant was given the opportunity to submit evidence to support his claim that he is diabetic and was so on August 27, 2003. He has spent time in the civilian community and has had access to non-DOC medical evaluations and treatment. Claimant has filed nothing with the Special Masters that substantiates that he has diabetes. As equally important, he has presented nothing to show that he was diabetic on August 27, 2003. Claimant simply has not carried his burden to show that he had diabetes on or before August 27, 2003. His claim will be dismissed.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Dennis O'Connor is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 20, 2007.**

SIGNED this 31st day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master