IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-906
Category II
Claimant: Michael W. Purcell, #85034
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER comes before the Special Master on the claim of Michael W. Purcell (Claimant).  Claimant is incarcerated in the Colorado Department of Corrections (DOC). He has been placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado.

The Special Master has reviewed the claim and response by Defendants. Claimant was granted the opportunity to file a reply to the response of Defendants. He has filed a brief reply to the response of Defendants. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

It is unclear when Claimant initially came into DOC custody. This appears to have been in the mid-1990's. Claimant was at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado in December, 1999 when he fell. It appears that he was released at some point and then returned to DOC custody after a new conviction in 2004. He presently is at FCF in Canon City, Colorado.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form.

> Mobility problems consist of problems in the left knee and both feet. Problems with the rotula, cartilage and bones rubbing against each other. Both feet are severely damaged.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> When I informed Bent County Correctional Center medical staff that I needed to see a doctor to have a recent MRI done on problem areas, they simply denied my request. Clearly discrimination.

> I may never be able to correct my knee and feet problem plus I fear for my life if I don't get something done soon, I may be paralyzed in two years.

Claimant was sent supplemental forms to complete and return. Attached to his form are some copies of medical records. In the supplemental form, Claimant states, in part, as follows:

> Mobility problems consist of articular cartilage disease of the knee with a much reduced articular cartilage space on the lateral compartment of the left knee. There is a number of transverse lines in the distal femur as though he might have been sick at times.

> My mobility disability affects my life in DOC by way of constant pain and popping of the knee joint. Cannot run or walk long and short distances, cannot play sports or access certain programs. I am limited to reading books in my cell for recreation.

In the supplemental form, Claimant detailed what accommodations he has sought:

> I asked Bent County Correctional Center Medical Department to fix my knee when I fell and reaggravated the swelling.....All that was given to this injury was an

4

ace bandage and Tylenol 325 mg 1-2 tabs PO BID prn X3 days.

In response to a question concerning falling, Claimant stated, in part, as follows:

> Yes, fell down in the kitchen in December of 1999. I slipped because there was no wet-floor signs around the dining room area.

Defendants submitted a response to the claim. Defendants argue that Claimant is not disabled and is not part of the class. Defendants have submitted copies of medical and other records.

Claimant has filed a brief reply to the response of Defendants. He states that he is disabled under the definition in the Settlement Agreement. He further objects to Defendants submitting copies of his civilian medical records.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." There is no evidence before the Special Master that Claimant ever used a wheelchair while in DOC custody.

The evidence presented by both sides reflects that Claimant does have articular cartilage disease of his knees. He also has problems with his feet. Defendants argue that he is not disabled and point to a medical record from Rocky Mountain Orthopaedic Associates, P.C. in Grand Junction, Colorado. Claimant objects to the use of those records, but he submitted copies of them with his supplemental form. The report of October 6, 2000 is insightful.

> Michael Purcell is a young man who has articular cartilage disease of his knee with a much reduced articular cartilage space on the lateral compartment of the left knee. Associated with this he has a little restriction on knee flexion and even knee extension where he lacks about the last 5'.
> Recommendations: His symptoms are not truly disabling. He works regularly and he doesn't miss work because of his knee.....

Apparently, the doctors in Grand Junction planned to take a conservative approach to his problems.

DOC medical records corroborate that Claimant has knee instability. *Exhibit D*. He also has club feet. *Exhibit F*.

The Settlement Agreement provides examples of mobility disability. Those examples are an inability to walk without stopping for one hundred yards and the inability to climb a flight of stairs without stopping. Claimant has stated that he has difficulty walking any distance. In this case, Claimant will be given the benefit of the doubt and will be determined to be mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that has been presented that Claimant was precluded from receiving services or participating in programs for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. That discrimination must be based upon disparate treatment based upon his mobility impairment.

In his claim form and supplemental form, Claimant refers to the lack of medical care for his knees. When he fell in the kitchen at BCCF, he requested a new MRI and further treatment. Claimant has stated in his documents that he believes that the lack of medical care constituted discrimination.

The evidence reflects that Claimant has received medical care while in DOC custody. He has expressed concern about that medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has raised concerns about the medical care that he received, especially after the fall. The *Fitzgerald* decision precludes any examination in this case of the quality of that care. Claimant may raise the issue of quality of care in a separate lawsuit. He cannot do so through his claim.

Claimant has not presented any evidence to substantiate any claim of discrimination separate from his concerns about his medical care. As result, his claim must be dismissed.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Michael W. Purcell is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 20, 2007.**

SIGNED this 31st day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master