IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-211
Category III
Claimant: Matthew Mounts, #66276
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on May 3, 2007. The hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Claimant Matthew Mounts (Claimant) and Jennifer Fox, attorney for Defendants.

Claimant testified in his own behalf and presented the following witnesses: James Kirkendall; Charlie Pa; Sandra Gray; Leonard Smith; and Michelle Nelson. Claimant offered into evidence Exhibits 1 through 12, and all were admitted. Defendants presented the testimony of Sandra Gray. Defendants submitted Exhibits A and E, and all were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

        B. QUALIFIED INMATE
        Inmate with a permanent disability/impairment which substantially
        limits his or her ability to perform a major life activity.
        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

    The Settlement Agreement further provides, in part, as follows:

        2. Permanent Hearing Impairments
        Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
        3. Permanent Vision Impairment
        Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
        4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
        Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

    On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

        2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
           1. Is the claimant a disabled individual who is a member of the class?
           2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
           3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
           4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody on October 7, 1991. He was placed at the Denver Reception and Diagnostic Center (DRDC) for evaluation. One month later, he was transferred to the Limon Correctional Facility (LCF) in Limon. Colorado. Claimant remained at LCF until he was transferred to AVCF on August 26, 2002.

In the initial claim form, Claimant checked the boxes for mobility impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form.

> I have Multiple Sclerosis which (due to spasticity) has caused limited use of my right leg so I now walk with a cane. I've had problems with housing (like being on a top bunk) access to music programs (at LCF), etc. - essentially, mobility limitations have limited some of my access. I also have a 75% loss of hearing in my right ear and a 50% loss of hearing in my left ear. As DOC has only gotten me one hearing aid and often doesn't have batteries for it I've had some problems hearing directions, orders by staff, or instructions to avoid other confusions such as with jobs, etc. As neither I nor staff use sign language (I only developed this hearing problem over the past couple of years so I never learned sign language), I have communications issues with some staff. I can read lips to an extent but if I cannot see their face I may miss if or misinterpret it. So I've been threatened with write ups for disobeying orders I never heard. Essentially, when I don't hear them they treat me like I'm stupid.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I was the back up kosher cook at LCF but when the kosher cook quit, Capt. Hobbard found out I had to use a cane to walk so refused to give me the job even though I was the most qualified candidate. I also had problems going to the music program at LCF (stairs I had to climb). When I first got to AVCF I was assigned to a top bunk that my cell mate had to help me climb up and so I was scared I'd fall if I had to urinate late at night. I haven't seen a neurologist in over a year or had an MRI in about 2 ½ years even though what I have is degenerative.

Claimant was sent supplemental forms to complete and return. In his supplemental form for hearing impairment, Claimant reiterated that he has hearing loss in both ears. Claimant believes that he needs two hearing aids, rather than one. In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

> I have needed a cane to walk for some time now (the cane was issued May 2 of 2001) and as of May 25, 2001 it was officially determined to be gradually

worsening. There are also left arm and vision issues.

Claimant also stated that when he came to AVCF he was placed on a top bunk. He was unable to climb a ladder. After two weeks, he received a lower bunk. Attached to the supplemental forms were several pages of medical and other records. One medical record from Denver Health corroborates that Claimant does have Multiple Sclerosis (MS). Another documents reflects receipt of a cane on May 16, 2001.

At the hearing, Claimant presented a number of witnesses. The first witness was James Kirkendall, who is an inmate in DOC. Testified that he has known Claimant since the early 1990's. Mr. Kirkendall stated that Claimant was in good health and often played sports. He has hearing problems that have gotten worse over the years. Claimant now wears a hearing aid. Mr. Kirkendall indicated that he often has to repeat himself when he talks to Claimant. Mr. Kirkendall indicated that since Claimant has been at AVCF that there have been times when he had to help Claimant up the stairs. Claimant has not been able to go to meals sometimes because of his health. He has had to repeat orders from staff so Claimant could understand them. Claimant rarely goes to the yard.

Charlie Pa is another inmate who is at AVCF. He has known Claimant for about two and one-half years. During that period of time, Mr. Pa has observed Claimant's mobility problems. Claimant often has difficulty walking up stairs and often needs help. Mr. Pa also noted that Claimant is now in a cell with flashing lights. On cross-examination, Mr. Pa stated that he has had to hold Claimant's hand and cane while he goes up stairs.

Sandra Gray is employed by Colorado Correctional Industries (CCI). Claimant works for Ms. Gray as an internet technician. Ms. Gray testified that Claimant has done his job very well. She has not observed Claimant having difficulties walking or climbing stairs. On cross-examination, Ms. Gray indicated that Claimant must climb stairs to get to the location of her office. Claimant has worked for Ms. Gray since November, 2002.

Leonard Smith also works for CCI at AVCF. He also is a supervisor of Claimant. He has never had a problem with Claimant. On cross-examination, Mr. Smith stated that he has observed Claimant climbing steps to the office. Claimant has had to lift monitors and computers in his job.

Michelle Nelson testified that she is a nurse at AVCF. She knows Claimant through his professional visits to medical. She has given injections to Claimant and was aware of a reaction to one. She testified that she has not observed a major mobility issue for Claimant. She also indicated that she had never observed any hearing problem nor has she had to repeat herself to be understood. On cross-examination, Ms. Nelson that she was aware that Claimant used a cane. She has never had a hearing problem with Claimant.

Claimant testified at the hearing that he was diagnosed with MS in 1999. This diagnosis came about after an MRI of his brain. He had begun to feel sick at LCF in 1999 and fell. He develop Bells Palsy. Dr. Bloor examined Claimant at LCF and believed he had major problems and referred him to Denver Health.

Claimant testified that his hearing issues have arisen since the late 1990's. He has seen an audiologist and has significant hearing loss. He was provided one hearing aid but believed that he should have two. He finds it easier to understand someone if he can look straight at that person.

Claimant testified that Physician Assistant Singh at AVCF did not want him to climb stairs. He has had to do so because he is in a federal training program in computers. Claimant wants to complete the program as it will provide him a means of earning a living when released. He testified further that his greatest fear is losing his job and training program. He is worried that he will not be able to climb stairs to get to the office. He also is worried that he could be written up for not hearing a message or order from staff.

Claimant also stated that he can no longer play sports. He has been placed into a wheelchair at times because of mobility issues. He absolutely needs a cane and hearing aid to function.

On cross-examination, Claimant acknowledged that he had been fired from a job at LCF in 1994-95. He received his hearing aid in 2002. He would like a second hearing aid as a backup. The facilities have run out of hearing aid batteries at times.

Defendants submitted the affidavit of Dr. Neufeld. Attached to that affidavit were several pages of medical and other records of Claimant. Defendants also recalled Ms. Gray as a witness. She was asked if she had ever noticed a major hearing problem with Claimant. Her answer was no, but occasionally she had to repeat something. She also was asked if Claimant had to lift computers in his job, and the answer was yes.

On rebuttal, Claimant testified that he has leg problems that affect his ability to walk. When initially placed at AVCF, he was put onto a top bunk. That lasted a few days and then was rectified. Claimant has had a bottom bunk since.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each of the claimed disabilities will be taken separately.

**Hearing Impairment**: The Special Masters have interpreted the Settlement Agreement as requiring a claimant who has a hearing impairment to show that he has to use sign language, lip reading or written materials in order to communicate. In other words, the claimant must show that he is deaf.

In this case, Claimant does have significant hearing loss. He has received one hearing aid,

and it appears that he is able to carry on activities of daily life with the single hearing aid. This is a very close case, but the Special Master determines that Claimant is not hearing impaired as defined by the Settlement Agreement.

**Mobility Impaired**: Defendants acknowledge that Claimant has MS. Based upon the totality of the evidence presented, the Special Master determines that Claimant was mobility impaired on or before August 27, 2003 due to his MS. He is a member of the class because of mobility impairment.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. A claimant must show that he was treated differently than a non-handicapped individual.

Claimant testified at length that his greatest fear is losing his present job and training program in computers. Claimant has continued to climb stairs and carry computers to insure that he does not get terminated. Claimant has given one hundred percent for his prison job and he is to be congratulated on that. In some respects, Claimant is doing more than others similarly situated and this is because of the desire to maintain his job and training program.

Claimant has established one act of discrimination. It is unrefuted that Claimant was denied the job as kosher cook at LCF. Claimant has testified it was because the supervisor did not want to have a cook who had to use a cane for balance. This incident occurred just after Claimant was diagnosed with MS and issued a cane. Defendants offered no counter explanation, arguing instead that Claimant was not mobility impaired and, therefore, not subject to the protections of the ADA.

Claimant does not believe that he has received appropriate care while in DOC custody, such as not receiving a second hearing aid. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

With one exception, Claimant has not shown that he has been treated differently due to his MS. He has worked hard at his computer program and has gained the confidence of those he works with at AVCF. Had Claimant been made the kosher cook at LCF, he might not have had the opportunity to obtain the computer training that he has received. That does not justify the discrimination that occurred, but it mitigates the damages that have resulted.

7

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant was denied the job as kosher cook at LCF because the supervisor did not want someone with a cane. This decision violated the ADA and Rehabilitation Act. Claimant is entitled to damages in the amount of $200.00.

IT IS HEREBY ORDERED that the claim of Matthew Mounts is granted to the extent noted, and Claimant is awarded damages in the amount of $200.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Matthew Mounts is dismissed, as Claimant has failed to prove that he was the victim of any additional discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 6, 2007.**

SIGNED this 21st day of May, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

8