IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 02-612
Category II
Claimant: Hector L. Maldonado, #112229
Address of Claimant: c/o Stacey Pray, 4335 W. Florida Avenue, Denver, CO 80219

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of Hector L. Maldonado (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He has been released on parole.

The Special Master has reviewed the claim and motion to dismiss filed by Defendants. Claimant was granted the opportunity to file a reply to the motion of Defendants. Nothing further has been filed by Claimant. This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on November 16, 2001. He was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado when he filed his claim. As noted earlier, he has been released on parole.

In the initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows in his initial claim form.

> I have diabetes. I am on insulin shots and the pill I have to take this the rest of my life. I found out that I have diabetes in July, 2003 while being incarcerated at CTCF in Canon City, Colo. If I don't get my medication it can and will kill me.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I feel that the department of corrections always knew that I had diabetes. I am HIV positive and I complained of my losing weight and always thirsty. This was ignored by medical. In 2003 I got real sick one day. In July, 2003 and my blood was tested through a finger stick and it was found that I had a real high reading.

Claimant was sent a supplemental form to complete and return. In his supplemental form, Claimant stated, in part:

> On June 29, '04, I complained to medical that my sugar level had risen (almost 400)(150 is normal). This was ignored & I was advised to submit a kite to be seen. I was experiencing dry mouth, dizzyness & frequent urination from drinking water due to my not getting my diabetic pill. This went on until I fell out on July 02, '04. My cellmate called for the cellhouse staff & was taken to medical where I was tested by the nurse. She contacted P.A. Mike Walsh for clearance to administer insulin & and it was so administered. Because of the days of neglect of my cry for help or to be seen by medical staff. During this period, I lost 6 lbs, which was documented. This placed my life in jeopardy as DOC consistently refuses to acknowledge the existence of a medical situation let alone the need for treatment. If it's not convenient to the officer, it's not worth taking action on!!

Defendants submitted a motion to dismiss the claim. An order was issued to Claimant granting him the opportunity to file a reply to the motion of Defendants. Claimant has filed nothing further in support of his claim.

## III.

Defendants have filed a motion to dismiss. All reasonable allegations made by Claimant in the documents that he has submitted must be accepted as true.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to prevail on his claim, Claimant must show that he was a member of class on or before August 27, 2003. Claimant has alleged that he was diagnosed as having diabetes in July, 2003. He maintains that he has been treated for diabetes since July, 2003.

For purposes of Defendants' motion to dismiss, it will be accepted as true that Claimant was diagnosed with diabetes in July, 2003. Claimant was a diabetic before August 27, 2003 and will be accepted as a member of the class on the date the Settlement Agreement was approved by Judge Nottingham.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Under the provisions of the Settlement Agreement, a claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. In other words, a claimant must show that he was treated differently from someone who did not have diabetes.

In this case, Claimant has made no specific allegations concerning disparate treatment in the period of July-August, 2003. Since Defendants filed a motion to dismiss, Claimant had the right to amend his claim or provide additional documents. Claimant do not do that. The Special Master is left to speculate concerning what might be inferred in the allegations of Claimant.

What Claimant has alleged is that DOC medical staff were negligent in diagnosing his diabetes and that he has not received proper care since being diagnosed. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or

medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Accepting as true everything that Claimant has alleged, Claimant may not pursue his claim. He may bring a separate lawsuit concerning the quality of medical care that he has received since 2003 concerning his diabetes. Claimant has set forth insufficient allegations to allow this claim to proceed further. The motion to dismiss will be granted.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is granted, and the claim of Hector L. Maldonado is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 20, 2007.**

SIGNED this 6th day of June, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master