IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.
96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-138
Category: II
Claimant: Jose A. Acevedo, #99366
Address of Claimant: BVCC, P.O.Box 2017, Buena Vista, CO 81211

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Jose
A. Acevedo. The Special Master has reviewed the claim and all documents filed by both
sides. This Order shall constitute the final action of the Special Master on this specific
claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and
various officials of the Colorado Department of Corrections (CDOC). The case was
brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation
Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying
to reach a settlement of all issues. The Court was advised that a settlement had been
reached between members of the class and Defendants. Judge Nottingham set the case
for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was
presented to Judge Nottingham. After consideration of objections that had been filed by
various individuals, Judge Nottingham determined that the Remedial Plan should be
approved. That approval established the class and did not provide for an opt-out
provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.     General inconvenience or nominal damages;
II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.    Damages due to severe physical injuries; and
V.     Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.   DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Acevedo submitted a claim which was assigned claim number 02-138. The claim is premised on an alleged permanent mobility disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant first entered CDOC custody in December, 1998. While in CDOC custody, Claimant has been housed at Buena Vista Correctional Facility (BVCF).

4.      While in the United States Army prior to incarceration, Claimant suffered an injury to his left knee. Although three arthroscopic surgeries have been performed to surgically repair the knee, these have not been successful. Claimant has now been told that the knee is not repairable. During his time at CDOC, Claimant has been allowed a neoprene knee brace (sleeve) and later a hinged knee brace. The hinged knee brace was first denied because of security concerns but later was furnished to him.

5.      Claimant asserts that he was denied a hinged knee brace necessary for him to participate in recreational activities. As a result he was unable to participate in aerobic activities he needed to maintain his weight. As a result his weight has increased and he has worried about his health and suffered anxiety attacks. He has had to be medicated to

feel comfortable and to decrease his anxiety. After being given the hinged knee brace on August 14, 2003, he has improved and has begun to lose his excess weight.

6.     Claimant's medical records confirm that a knee brace was ordered for him but was refused because of security issues. Rather, he was told to use the neoprene brace. When this did not work, he was ultimately given the hinged brace. The refusal of a hinged brace appears to be the result of a security concern by CDOC. When the brace was finally given to him, his concerns appear to have lessened.

7.     The records provided to the Special Master reveal that Claimant has had a long term job in the saddle shop while at BVCF.

### III.  CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3.     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.     Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a

4

permanent physical mobility, hearing or vision impairment, as defined in the Remedial Plan or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.      The Special Master finds and concludes that Claimant has failed to demonstrate by a preponderance of the evidence that he has a permanent mobility disability within the meaning of the ADA and/or the Rehabilitation Act.  There is no doubt that Claimant suffers from an injury to his left knee.  However, the fact that Claimant has this problem does not in itself render him disabled or qualify him for relief. Rather, he must present evidence establishing that this problem substantially limits his ability to engage in one or more major life activities.  The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002).  Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

6.      Claimant asserts that his knee problem substantially limits his ability to exercise unless he is using a hinged knee brace.  When he utilizes his brace it appears that he is able to do as he wishes.  In the context of the instant case, a Claimant must present evidence identifying the specific programs and benefits that he cannot participate in and/or the specific facilities that he cannot access due to a disability covered by the Remedial Plan.  Other than the general assertion that he cannot participate in exercise activities, Claimant fails to provide any information as to how his alleged mobility impairment affects his ability to engage in any major life activity.  Furthermore, the records provided to the Special Master indicate that Claimant does in fact engage in activities such as working in the saddle shop.  The lack of any other evidence of mobility disability leads to the conclusion that his mobility impairment is not severe enough to be deemed a disability under the ADA and/or the Rehabilitation Act.

7.      Since Claimant has failed to establish that he has a permanent mobility disability under the ADA and/or the Rehabilitation Act, his disputes with the CDOC providers cannot be deemed discrimination because of a disability.  Rather, they merely amount to a disagreement over the medical necessity versus prison security.

8.      Because Claimant Acevedo has failed to show that his knee problem constitutes a disability within the meaning of the ADA and/or the Rehabilitation Act, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Acevedo's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before August 6, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 6th day of June, 2007.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson,
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 6th day of June, 2007 to the following:

Jose A. Acevedo, #99366
BVCC
P.O. Box 2017
Buena Vista, CO 81211


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter

Susan L. Carter