IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-139
Category III
Claimant: Frank L. Vargas, #55359
Address of Claimant: HCCF, 304 Ray Sandoval Street, Walsenburg, CO 81089

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 1, 2007. The hearing was held at the Huerfano County Correctional Facility (HCCF) at Walsenburg, Colorado. Present were the following: Claimant Frank L. Vargas (Claimant) and Rob Huss, attorney for Defendants.

Claimant testified in his own behalf. Defendants submitted Exhibits A through G. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. After closing arguments, the case was taken under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may

Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

exercise only the jurisdiction agreed upon by the parties.

        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

    The Settlement Agreement further provides, in part, as follows:

        2. Permanent Hearing Impairments
        Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
        3. Permanent Vision Impairment
        Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
        4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
        Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

    On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

        2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
            1. Is the claimant a disabled individual who is a member of the class?
            2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
            3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
            4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

3

Claimant came into DOC custody on September 12, 1986. He has been placed at a number of DOC facilities over the years. In March, 1998, he was transferred to HCCF. He remained a HCCF until he was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado on September 26, 2001. He was at CTCF until he returned to HCCF on August 6, 2003. He was transferred to the Ft. Lyon Correctional Facility (FLCF) at Ft. Lyon, Colorado on March 31, 2004. He returned to HCCF on October 21, 2005.

In the initial claim form, Claimant checked the boxes for mobility impaired, vision impaired, and diabetes. Claimant stated, in part, as follows in his initial claim form.

> I have diabetes for over a year now and it has caused me to have a massive heart attack & it has also affected my eyes real bad & also my feet which are always numb & always feel like they're on fire plus I'm always cold due to bad circulation from the neuropathy & the heart attack. So I can truly say that it has affected my life in so many ways.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was losing a lot of weight drinking a lot of water losing my eyesight having chest pains numbness in my feet and I was putting in kites to medical & they just put me off until I had a heart attack. That's when I found out I had diabetes & I also found out I was supposed to be tested for diabetes 6 months before but never was.

At the hearing, Claimant testified that he was diagnosed with diabetes on March 7, 2004, the day he had his heart attack. As the result of his heart attack, Claimant had heart surgery and two stents were placed into his heart. He began receiving insulin for his diabetes shortly thereafter. He also started to receive medication by pill (Glucophage).

Claimant testified that he had been to medical on several occasions prior to his heart attack. He was having chest pains and wanted to see if there was a problem. He was told that he had nothing but gas and that it would work itself out. He then had his heart attack. Claimant believes that his heart attack was the result of undiagnosed diabetes. Claimant testified further that he now has neuropathy in his feet. This includes shooting pains in his legs.

As to his vision, Claimant testified that he has had cataracts. He did receive surgery and lenses were implanted into his eyes. Each eye was done at a separate time.

On cross-examination, Claimant testified that he sometimes bought candy from the canteen. He carried this candy for those times when he might have a low blood/sugar level and need to raise it. When asked specifically as to the discrimination that was alleged by DOC and its staff, Claimant stated that he had been seeking appropriate shoes in order to have fewer problems with his feet. He indicated that the neuropathy in his feet was bad.

In rebuttal, Claimant stated that the diet he was on was not what it should be. He did miss some meals because of being tired and sleeping through those meals. He stated that DOC and HCCF medical staff have yet to check his feet.

Defendants presented the affidavit of Dr. Orville Neufeld, Ph.D., D.O. in lieu of his testimony. Attached to the affidavit are several pages of medical records of Claimant. In addition, Defendants submitted additional administrative documents concerning Claimant.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003 and that he fell into the claimed categories on or before that date. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be taken separately.

*Diabetes*: There is no question that Claimant has been diagnosed as having diabetes. The question becomes one of when he was diagnosed as having the condition.

The Settlement Agreement requires that a claimant have a disability on or before August 27, 2003. In this case, Claimant was not diagnosed as being a diabetic until March 7, 2004. Claimant may well have some concerns about the type of medical testing and care that he received leading up to March, 2004. That will be discussed later in this order. The problem is that the diagnosis was not made until after the date of approval of the Settlement Agreement. Claimant is presently diagnosed with diabetes, but he was not and is not part of the class as diabetic as of August 27, 2003. Claimant retains the right to pursue a separate lawsuit concerning anything that may have occurred after August 27, 2003.

*Vision*: The Special Masters have interpreted the Settlement Agreement to require almost blindness for a vision impairment. Claimant has had cataracts. He received surgery on his eyes in March, 2005.

There is no evidence that Claimant had vision problems on or before August 27, 2003. As a result, he is not part of the class as vision impaired. Claimant retains the right to pursue a separate lawsuit for anything that may have occurred after August 27, 2003.

*Mobility*: Claimant's allegations concerning his mobility issues were very vague. There was no evidence presented that Claimant had mobility problems on or before August 27, 2003.

Claimant's mobility issues arise out of his heart attack and heart disease. He testified that he continues to walk and exercise to some degree. The mobility problems arose after the heart attack

in March, 2004.

*In General*: In order to prove a claim, a claimant must show that he was a member of the class on or before August 27, 2003. There is no evidence that Claimant was impaired or diabetic on or before that date. Claimant may not pursue his claim, but he does have the right to pursue a separate lawsuit for anything that may have occurred after August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. A claimant must show that he was treated differently from a non-handicapped individual. There was no evidence presented at the hearing that any such discriminatory act took place before August 27, 2003.

Claimant has raised also some issues concerning his medical care while in DOC. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may have a legitimate concern about testing that was done by DOC staff that did not lead to an earlier diagnosis of diabetes. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Frank L. Vargas is dismissed, as Claimant has failed to prove each of the four questions set forth by Judges Nottingham and Kane and that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act after August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 20, 2007.**

SIGNED this 7th day of June, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master