IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-343
Category III
Claimant: Keith W. Percival, #105190
Address of Claimant: BCCF, 11560 CR FF-75, Las Animas, CO 81054-9573

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER came before the Special Master for hearing on June 8, 2007. This hearing was held at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. Present were the following: Keith W. Percival(Claimant); and Rob Huss, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A through F were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]    Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>    I. General inconvenience or nominal damages;
>    II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
>    III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
>    IV. Damages due to severe physical injuries; and
>    V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>        A. COVERED DISABILITIES
>        The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in July, 2000. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was at DRDC For about three weeks. Claimant then was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was at SCF for about eighteen months.

Claimant then was transferred to the Arrowhead Correctional Center (ACC) in Canon City. He remained at ACC and then was transferred after nine months to BCCF. He arrived at BCCF in October, 2002.

In his initial claim form, Claimant checked the box for diabetes.  Claimant stated, in part, in his claim form:

> I worry about the effects diabetes has on my kidneys, heart, eyes and lungs. Not being able to take care of these things causes a lot of unnecessary stress which only increases my blood sugar.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> Can't keep medicine on hand as it seems as if very often I am told "your meds haven't come in."  I haven't had regular eye exams, feet exams and at times allowed me to check regularly daily.

> No education provided on diabetes. What I know I learned on my own research. Live in fear of what part of my body might be affected by it.

Prior to this claim being elevated to Category III, Defendants filed a response to the claim. Some medical records of Claimant were attached to the response. Defendants acknowledged in that document that Claimant has diabetes. Defendants disputed that Claimant was disabled.

At the hearing Claimant testified that he was advised at DRDC when he first came into DOC custody that he might be a borderline diabetic.  He was officially diagnosed as having diabetes in 2002 while at ACC. He was placed on oral medication (Glucophage). He received a diabetic diet and diabetic snack. After some period of time, he was placed on insulin on a sliding scale. He received insulin if he needed it. After arriving at BCCF, he was taken off insulin because the medical staff believed that his blood/sugar levels were under control.

Claimant testified that at BCCF he was put on KOP program. This is short for "Keep on Person" which allowed him to have his medicines in his cell. When he would begin to run out of medicine, he would submit a form and the medicine would purportedly be refilled. While at BCCF,

Claimant had occasions when he had notified medical staff that he was running out of his Glucophage and he would be told that his medicine had not arrived at the facility. As a result, he would have to go for some period of time without the medicine for his diabetes. Claimant became so concerned about this that he dropped out of the KOP program and simply would go to the medicine line to obtain his Glucophage and other prescribed drugs.

Claimant testified that he has received regular eye examinations. Medical care at BCCF has been good. He checks his blood/sugar levels on a regular basis.

On cross-examination, Claimant testified that he was not on a special diet at the present time. He has been watching what he eats and has been able to control his blood/sugar levels. He is a student in a computer class at the present time.

In lieu of live testimony, Defendants submitted the affidavit of Dr. Orville Neufeld, D.O.. That affidavit contains a number of documents from Claimant's medical records. Defendants also submitted other documents in support of their position.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he had diabetes. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant was diagnosed as having diabetes in 2002 while at ACC. Claimant is diabetic and a member of the class due to that.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is generally no, but there is one exception. Claimant testified that recent care at BCCF has been excellent and that he does not believe that he has been discriminated against in the medical care that he has received.

Claimant has raised some issues concerning his medical care while in DOC. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v.*

*Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability.  A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant was asked if he had been discriminated against because he had diabetes. He said that he could not say that he had been. He did testify that he had forwarded to medical staff at BCCF the paperwork to renew his prescription for his medicine. When he went to get his medicine, he was told that it had not arrived as yet. As a result, Claimant went without Glucophage for some period of time.

The Special Master finds that Defendants, through the medical staff at BCCF, did run out of medicine to provide to Claimant. As this Special Master has written in the past on similar claims, a diabetic inmate in prison must rely upon prison medical staff to provided needed medicine, such as Glucophage. The inmate does not have the luxury of being able to drive to a local pharmacy. It was and is unconscionable for a prison medical department to run out of medicine for a diabetic inmate. In this case, there was more than one time that Claimant submitted the document requesting a refile and BCCF medical staff did not have the medicine available for use by Claimant. As stated by Claimant, he finally gave up on the KOP program because it was too difficult to deal with the lack of medicine for periods of time.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant went through the psychological trauma of not having his medicine available when he ran out.  Claimant is entitled to $125.00 in damages.

IT IS HEREBY ORDERED that the claim of is granted, in part, and Claimant is entitled to the sum of $125.00 as damages; and

IT IS FURTHER NOTED that the remainder of the claim is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 27, 2007.**

SIGNED this 12th day of June, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master