IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-491
Category II
Claimant: Willie Lee Malone, #82804
Address of Claimant: 3865 S. Carefree Circle, # M, Colorado Springs, CO 80917

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Willie Lee Malone. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Willie Malone submitted a claim which was assigned claim number 02-491. The claim is premised on an alleged permanent mobility disability and a permanent vision disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Malone entered CDOC custody in 1993. Although the record does not specify the institutions in which Claimant was housed while in CDOC custody, it appears that he was housed for part or all of his CDOC custody at the Arkansas Valley Correctional Facility (AVCF), the Four Mile Correctional Center (FMCC), the Huerfano County Correctional Center (HCCC), the Buena Vista Correctional Complex (BVCC), the Rifle Correctional Center (RCC) and the Fort Lyon Correctional Facility (FLCF). Claimant is currently on parole.

4. Claimant complains of degenerative arthritis in his right hip, lower back and left shoulder. He states that he has bulging disks that causes sciatica. He has also complained of foot pain. Claimant indicates that the sciatica makes it painful and difficult for him to stand, walk and sit. Finally, Claimant states that he suffers from sensitivity to light and headaches; and that the headaches can last from three to six days.

5.  Claimant's primary complaint is that he was approved and received medical tennis shoes at no cost in the mid-1990s. However, in 1996, CDOC's insurance provider refused to reorder new medical tennis shoes. Claimant also requested a Tens unit for his pain but CDOC refused to provide him with one.

6.  Claimant's medical records indicate that he has some early degenerative change with minimal narrowing of the disc inner space at 1-2. Otherwise, Claimant's lumbar spine and sacrum are within normal limits. Over a period of the approximately 10 years that he was in CDOC custody, Claimant's records are replete with references to minor injuries sustained while playing basketball and baseball. His medical records contain no suggestion that Claimant's ability to walk or negotiate stairs is significantly impeded. His back pain has been treated with medications. A 1998 podiatry clinic report notes that there is nothing wrong with Claimant's feet and that State supplied tennis shoes were not medically necessary. The report indicates that Claimant could purchase his own tennis shoes.

Claimant's medical records also reflect that he has been provided with period eye examinations and corrective lenses. A 1999 eye exam showed a corrected visual acuity of 20/20 in both eyes. Per a 2002 eye examination, Claimant's visual acuity was 20/30 in the right eye and 20/25 in the left eye.

### III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A).

4

Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing or vision impairment, as defined in the Remedial Plan or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent mobility disability. Claimant does have some degenerative changes in his back that produce pain. However, the fact that a Claimant suffers from back and hip pain, by itself, is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd*, 170 F.3d 188 (11th Cir. 1999).

There is no evidence in the record that Claimant's back and hip pain substantially limits his ability to engage in the major life activity of walking. Indeed, the record reflects that Claimant can and does walk normally and without a limp. His medical records note that he is active and plays both basketball and baseball. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision, the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.*, 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.*, 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996).

The Special Master further finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he suffers from a permanent vision impairment that substantially limits his ability to engage in major life activities. At the date of his last eye examination, Claimant's corrected visual acuity was 20/30 in the right eye and 20/25 in the left eye. Because Claimant was provided with corrective lenses by CDOC, it is corrected visual acuity that is pertinent for purposes of the ADA and/or the Rehabilitation Act. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). While Claimant's vision slightly deteriorated from 1999 to 2002, there is no

5

evidence in the record that Claimant's very moderate vision impairment prevented or substantially limited his ability to see or engage in other major life activities.

Because Claimant has failed to demonstrate that he has a permanent mobility disability or a permanent vision disability, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Malone's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before July 2, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 2nd day of May, 2007.

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 2nd day of May, 2007 to the following:

Mr. Willie Lee Malone, #82804
3865 S. Carefree Circle, #M
Colorado Springs, CO 80917

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
Susan L. Carter