IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-663
Category II
Claimant: David L. Johnson, #98338
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant David L. Johnson. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.     Claimant David Johnson submitted a claim which was assigned claim number 02-663. The claim is premised on an alleged permanent disability due to diabetes and an alleged permanent vision disability.

2.     Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.     Claimant Johnson entered CDOC custody in 1998. During his CDOC custody, he has been housed at the Limon Correctional Facility (LCF) and briefly at the Colorado Territorial Correctional Facility (CTCF).

4.     Claimant suffers from type II diabetes. He asserts that his diabetes is out of control. Claimant also states that he is legally blind and cannot see without the assistance of corrective lenses.

5.     Claimant asserts that he has not received proper medical care and medications for his diabetes. He contends that CDOC does not follow up on medical issues in a timely manner, which exacerbates his problems from diabetes. He indicates that his condition has gone without assessment for six to seven months, even though his diabetes was out of control at the time of his last visit to CDOC medical providers. He

3

complains that he does not receive medical care during lock-downs, and that CDOC ignores basic necessities such as medication and food for extended periods of time.

Claimant also contends that although CDOC has provided him with prescription lenses, the prescription is incorrect and the frames do not fit properly. He complains that CDOC will not allow him to obtain prescription lenses on his own from outside the facility.

Finally, Claimant contends that CDOC charges him for medical treatment. As a result, he asserts that he has no money to purchase soap and other items necessary for his hygiene.

6.     Claimant's medical records confirm that he suffers from type II diabetes. The medical records indicate that he has received ongoing treatment and medications for his condition. A diabetic diet has been ordered for him, as well as finger sticks for periodic monitoring of his blood sugars. CDOC medical providers have prescribed a variety of medications, including Glucophage and Glucovance. Virtually all of the medical records provided to the Special Master indicate that Claimant's diabetes is under control. However, the records also reveal that Claimant has been noncompliant with his prescribed diet; that he has not regularly taken his medications; and that he has failed to monitor his blood sugar with finger sticks for periods of time.

The medical records provided to the Special Master show that Claimant's uncorrected vision is 20/200. However, there is no information provided by either Claimant or defendants regarding his corrected visual acuity. Claimant does state that he works with thread and needles; that he reads and records documentation associated with his prison job; and that he does legal work relating to his case.

7.     The records provided to the Special Master indicate that Claimant worked in food service from 1998 until May of 2004. Since May of 2004, he has been assigned to the garment factory. He has no work or housing restrictions. Claimant received his GED in 2001.

### III. CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the

average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

The Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that he suffers from a permanent disability due to diabetes. Clearly, Claimant suffers from type II diabetes. Claimant's diagnosis of diabetes, by itself, is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999). There is virtually no evidence in the record showing if or how Claimant's diabetes affects his ability to engage in major life activities and no evidence that he is substantially limited in the major life activity as a result of his diabetic condition. In fact, the record affirmatively

demonstrates that Claimant's diabetes does not substantially limit his ability to walk, work and perform necessary daily activities.

The Special Master further finds and concludes that Claimant has failed to meet his burden of proving by a preponderance of the evidence that he suffers from a permanent vision disability within the meaning of the ADA and/or the Rehabilitation Act. While Claimant's uncorrected vision is extremely poor, he acknowledges that he has been provided with corrective lenses by CDOC. Under such circumstances, the question of whether Claimant's vision impairment substantially limits his ability to engage in major life activities must be answered based upon his corrected visual acuity. *Sutton v. United Air Lines*, 527 U.S. 471 (1999). No evidence has been presented regarding test results of Claimant's corrected visual acuity. While Claimant states that the prescription lenses provided to him are incorrect and that he is only able to receive a new prescription every two years, he acknowledges that he uses a needle and thread in connection with his work; that he reads; and that he performs legal work. There is nothing in Claimant's medical records suggesting that he was ever seen for eye problems, or that he complained about vision problems during his medical visits.

3.      Generally speaking, Claimant's primary complaint relates to the quality and quantity of medical care that he is given by CDOC. He clearly has significant disagreements with CDOC medical personnel over how best to treat his diabetes. However, alleged failures to provide proper and timely medical care and/or medications, or to disputes between Claimant and his CDOC medical providers regarding his medical treatment do not give rise to claims under the ADA and/or Rehabilitation Act. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4.      To the extent that Claimant complains about being assessed fees for medical services, he has not demonstrated that he has been treated differently in this regard that other inmates. Thus, there has been no showing that he has been discriminated against with respect to the charging of fees. Furthermore, because Claimant does not suffer from a permanent disability due to his diabetes or from a permanent vision disability, his complaints about the fees charged, at best, amount to allegations of deliberate indifference to his medical needs. As stated in paragraph 3 of the Conclusions, *supra*, these matters are generally not cognizable under the ADA and/or Rehabilitation Act.

5.    Because Claimant Johnson has failed to demonstrate that he has a permanent disability due to diabetes or that he has a permanent vision disability within the meaning of the ADA and/or Rehabilitation Act, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Johnson's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 11, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 11th day of April, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of April, 2007 to the following:

Mr. David L. Johnson, #98338
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Judy M. Olive

Judy M. Olive