IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-700
Category II
Claimant: Raymond E. Smith, #113023
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Raymond E. Smith. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Smith submitted a claim which was assigned claim number 02-700. The claim is premised on an alleged permanent mobility disability, a permanent vision disability, a permanent hearing disability and a permanent disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Smith entered CDOC custody 1998. It appears that he was released from CDOC custody sometime between 1999 and 2001, and then re-entered CDOC custody in 2001. He was again released from CDOC custody in 2004 and re-entered CDOC custody in 2005 or 2006. Although the record does not specifically identify the facilities in which he has been housed, it appears that for all or a portion of the time that he has been in CDOC custody, he has been housed at the Sterling Correctional Facility (SCF), the Arkansas Valley Correctional Facility (AVCF), and the Bent County Correctional Facility (BCCF).

4. Claimant suffers from diabetes that appears to be poorly controlled, although he does take insulin. Claimant's diabetes has resulted in diabetic neuropathy in his feet and hands and has also affected his vision. Claimant also suffers from moderate

hearing loss in his left ear and more severe hearing loss in his right ear. Claimant walks with a limp because of sore feet and his neuropathy affects his fine motor skills, making it difficult for him to pick up pencils and pens. He can only walk short distances and can only work part time due to fatigue. With respect to his hearing loss, Claimant states that he misses announcements on the loud speaker, including announcements for the med-line. He also states that he cannot hear the fire alarm while in his cell.

5. Claimant asserts that CDOC has failed to provide proper medical treatment for his diabetes and the pain that he suffers due to neuropathy. Specifically, he contends that CDOC has not treated his neuropathy with shots and/or vitamins containing B-12 and B-6. He complains that CDOC has failed to provide him with trifocals and has refused his requests for a hearing aid. Finally, he asserts that he has received disciplinary write-ups as a result of not being able to hear.

6. Claimant's medical records confirm that he has diabetes that is poorly controlled. They also confirm that Claimant has neuropathy in his feet and hands; that he can only walk short distances; that he cannot work more than four hours due to fatigue; and that he cannot lift more than 10-20 pounds on a continuous basis. With respect to his hearing loss, the medical records indicate that on 5/28/03, the audiology clinic determined that he was an appropriate candidate for amplification and that he was interested in utilizing hearing aids. However, CDOC refused to provide hearing aids because he did not meet the CDOC criteria of a pure tone average equal to or greater than 50 decibels in the better ear.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant has proved by a preponderance of the evidence that he has a permanent mobility disability due to diabetes and that he has a permanent hearing disability. The evidence establishes that the diabetic neuropathy from which Claimant suffers limits his walking to very short distances and that it prevents him from working on a full-time basis. His medical providers have concluded that although Claimant is not totally disabled, he does have a physical impairment that substantially precludes him from engaging in his usual occupation, and that this condition will continue for a period in excess of six months.

Because Claimant has not been provided with hearing aids, his hearing impairment must be judged with reference to how his unamplified hearing affects his ability to engage in major life activities. Claimant has stated that he cannot hear announcements over the loud speaker and cannot hear the fire alarm. Defendants have submitted no evidence to rebut these statements. Furthermore, the medical records establish that Claimant's hearing loss is severe enough to warrant hearing aids. The fact that CDOC regulations do not recognize Claimant's hearing loss as severe enough to warrant hearing aids is immaterial to the issue of whether he suffers from a hearing disability under the ADA and/or Rehabilitation Act.

5

The Special Master finds and concludes that Claimant has failed to sustain his burden of proving by a preponderance of the evidence that he has a permanent vision disability. While his vision is affected by his diabetes, there is no evidence in the record as how this vision impairment affects Claimant's ability to engage in major life activities. There is also no medical evidence in the record regarding Claimant's visual acuity.

3.   The next question which must be answered is whether Claimant was qualified to participate in the programs or receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). Although Claimant has received several disciplinary convictions, the evidence does not suggest that these convictions disqualified Claimant from participating in the programs, benefits, and services offered by the CDOC.

4.   The key issue is whether Claimant was discriminated against because of his disability. The Special Master finds and concludes that Claimant has failed to establish that he has been discriminated against because of his mobility disability or because of his diabetes. He does not contend that has been denied access to any programs, services or facilities as a result of his mobility disability or because of his diabetes. Rather, his contention is simply that he has not received proper medical care and treatment. Such issues may give rise to a legal claim of *deliberate indifference to medical needs* under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

The Special Master finds and concludes that Claimant has sustained his burden of establishing that CDOC has denied him access to services and facilities because of his hearing disability. The evidence shows that Claimant is unable to hear announcements, including announcements for the med-line and he cannot hear fire alarms while in his cell. He requested accommodations in the form of a hearing aid which was denied by CDOC even though CDOC medical providers found Claimant to be a candidate for amplification.

The Special Master has reviewed the records regarding Claimant's disciplinary convictions. The Special Master finds and concludes that these records fail to support

6

Claimant's contention that any of his disciplinary convictions were because of his hearing disability.

     5.    Claimant has presented no evidence of monetary loss or physical injury sustained as a result of CDOC's failure to accommodate his hearing disability. Based on the totality of the evidence, the Special Master finds and concludes that the sum of $250.00 is fair and reasonable compensation for the inconvenience suffered by Claimant because he has not been provided with an appropriate hearing aid.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Smith and against Defendants in the amount of $250.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 11, 2007** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

SIGNED this 11th day of April, 2007.

                                    BY THE COURT:

                                    /s/ Bruce D. Pringle
                                    Bruce D. Pringle,
                                    Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of April, 2007 to the following:

Mr. Raymond E. Smith, #113023
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Judy M. Olive
_____
Judy M. Olive