IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-710
Category II
Claimant: Otto Graham, # 48023
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Otto Graham. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.    General inconvenience or nominal damages;
II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.   Damages due to severe physical injuries; and
V.    Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.  DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Graham submitted a claim which was assigned claim number 02-710.  The claim is premised on an alleged permanent vision disability and a permanent disability due to diabetes.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Graham entered CDOC custody in 1981.  During his CDOC custody, he has been housed at the Colorado Territorial Correctional Facility (CTCF), the Arkansas Valley Correctional Facility (AVCF), the Shadow Mountain Correctional Facility, the Freemont Correctional Facility (SMCF) and the Limon Correctional Facility (LCF).

4.      Claimant suffers from type II diabetes.  As a result of his diabetes, he also suffers from vision problems.  Claimant states that he is legally blind without corrective lenses and that his deteriorating eyesight interferes with his ability to function at his prison job.  He further indicates that his vision problems have severely reduced his ability to read, write, exercise and to interact socially.  He expresses concerns that his impaired eyesight makes him vulnerable to injury from doors, machinery, hanging objects and ice on the ground.

3

5.    Claimant contends that CDOC refused and failed to provide him with proper medical treatment and medications for his diabetes and vision problems. He complains that CDOC refused to supply him with prescription lenses and has failed properly to monitor his deteriorating vision through weekly exams. He also asserts that he is required to pay for glasses and for medical visits. He contends that the cost of medical care requires him to make choices as to whether he will obtain medical care or to utilize his limited funds to purchase hygiene items such as soap.

6.    Claimant's medical records confirm that he has type II diabetes which has generally been under control. The records indicate that Claimant has received medications, including Diabeta and Glucophage. Although CDOC medical providers suggested that he begin taking insulin, Claimant declined. The records also show that Claimant was placed on a diabetic diet but that he was noncompliant with the dietary requirements. The medical records show that Claimant does have some vision problems due to his diabetes. They also reflect that he has periodic eye examinations, as well as corrective laser surgery in 2005. A visual acuity test performed in December of 2003 showed that Claimant had uncorrected vision of 20/25 in both eyes. While Claimant's eye examinations did not demonstrate a need for prescription lenses, he has been provided with reading glasses.

7.    The records provided to the Special Master show that Claimant has worked in the garment factory and received a Certificate of Achievement in the art of garment manufacturing in July of 2005.

## III. CONCLUSIONS OF LAW

1.    The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.    The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant Graham has failed to establish by a preponderance of the evidence that he suffers from a permanent disability due to diabetes or from a permanent vision disability. Claimant does suffer from diabetes. However, putting aside his alleged vision impairment, which will be discussed separately, Claimant has offered virtually no evidence that would allow the Special Master to determine whether he is "substantially limited" in any major life activity due to his diabetes, *i.e.,* whether he is "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Claimant simply states that he has diabetes. Claimant, however, has not offered evidence of the frequency or severity of his symptoms. Claimant's diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessments); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999).

Claimant provides significantly more elaboration on how his vision impairment affects his ability to work and engage in other major life activities. However, his descriptions of the severity of his vision impairment are entirely at odds with the objective medical evidence as contained in his medical records. The medical records show that he has been provided with corrective laser surgery. Even before the corrective laser surgery, Claimant's uncorrected visual acuity was within normal range. Claimant correctly notes that he was not provided with prescription lenses, but the medical records show that his visual acuity impairment was not significant enough to require corrective lenses. The records further show that he has been consistently provided with reading glasses. Until Claimant filed his Claim in August of 2004, there is no suggestion in any of the records provided to the Special Master that his vision problems substantially limited his ability to perform his job in the garment factory.

3.      For the most part, Claimant's complaints relate to alleged substandard medical care. There is no evidence in the record, other than Claimant's allegations in his Claim and Supplemental Claim, suggesting that the treatment and medications provided to Claimant fell below the legal standard of care. Even if they did, such issues may give rise to a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4.      Finally, the Special Master finds and concludes that Claimant's objections to paying for medical treatment do not give rise to a claim of disability discrimination under the ADA and/or the Rehabilitation Act. No showing has been made that Claimant was treated differently than any other inmate in this regard.

Because Claimant Graham has failed to demonstrate that he has a permanent disability due to diabetes or a permanent vision disability, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Graham's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of

Civil Procedure 53(g)(2), but said objection must be filed **on or before June 11, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED 11th day of April, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of April, 2007 to the following:

Mr. Otto Graham, #48023
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Judy M. Olive

Judy M. Olive

8