IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

___

Claim Number: 02-716
Category II
Claimant: Randall W. Friesen, #58745
Address of Claimant: 1479 Fillmore Street, Denver, CO 80206

___

### FINAL ORDER OF SPECIAL MASTER

___

THIS MATTER comes before the Special Master on the claim of Claimant Randall W. Freisen. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Friesen submitted a claim which was assigned claim number 02-716. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Friesen entered CDOC custody in 1997. He was released to Community Corrections in February of 2006. During most of his CDOC custody, he was housed at the Freemont Correctional Facility (FCF) and the Arrowhead Correctional Center (ACC).

4. In 1998, Claimant suffered an injury to his cervical spine, which left his left arm one inch smaller than his right arm. He states that he has muscle atrophy, numbness and tingling in his left hand and fingers and constant pain in the entire left arm. He also states that he has suffered injuries to his lumbar spine, the most recent of which occurred on August 11, 2003. He states that after his August 11, 2003 injury, he was diagnosed with moderate to severe spinal stenosis. He indicates that he has pain and loss of mobility and that his limbs were paralyzed for a period of time.

5.      Claimant contends that CDOC medical providers failed and refused properly to treat his medical needs. He states that with respect to the August 11, 2003 injury, he was not issued crutches until September 6, 2003 and that he was not given a wedge pillow and sleeping aids, although he repeatedly asked for them. He indicates that he was not seen by a neurologist until July of 2004. Claimant asserts in general that he has been denied jobs and has been denied or restricted from use of recreational equipment and programs. Claimant specifically complains about the fact that he was placed on restricted status after he lost his job as a chaplain's assistant, allegedly because he did not come to work while he was on crutches because of the August 11, 2003 injury to his back. He states that this delayed his ability to be released to Community Corrections. Claimant also complains that he was released from his position in the recreation department because of the medical restrictions that had been placed upon him and that he was denied yard privileges during his lay-in after the August 11, 2003 accident.

6.      Claimant's medical records confirm that he suffered a back injury on August 11, 2003. Prior to that time, Claimant had mild degenerative disk disease and mild spinal stenosis. However, Claimant acknowledged that he could walk fine until the August 2003 accident. Claimant was on medical lay-in from August 12, 2003 until September 24, 2003 as a result of his injuries, during which time he was required to use crutches to ambulate. An EMG performed in September of 2003 indicated chronic neuropathic changes in L4-S1. An MRI performed in December of 2003 showed diffuse degenerative disk disease and spinal stenosis with left nerve room impingement. In February of 2004, x-rays of his lumbar spine revealed diffuse degenerative disk disease and spinal stenosis at all levels and severe spinal stenosis at L3-L4. The records show that in July of 2004, Claimant's requests for an extra mattress and a wedge pillow were denied because there was no medical indication that they were necessary. However, he was issued a wedge pillow in November of 2004 and an egg mattress in August of 2005. In February of 2005, x-rays indicated advanced degenerative disk disease in Claimant's lumbar spine. As of September 2005, Claimant was under medical restrictions of no intensive labor, no lifting of more than 15 pounds and a directive that tennis shoes should be worn for work.

7.      The records provided to the Special Master indicate that Claimant was terminated from his position as a chaplain's assistant on September 3, 2003 and that he was placed on restricted privileges for failing to report for work from August 14, 2003 to September 3, 2003. However, the records indicate that Claimant's release from his position as a chaplain's assistant was by mutual agreement between himself and the chaplain, and that this occurred on August 6, 2003, five days before the accident. The records further indicate that Claimant's termination from his job in recreation occurred in April of 2004.

### III. CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

4

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

The Special Master finds and concludes that Claimant Friesen has failed to establish by a preponderance of the evidence that he suffers from a permanent mobility disability. While Claimant was not able to ambulate without the aid of crutches for approximately 30 days after the August 2003 accident, this does not amount to a

5

"permanent" disability under the ADA and/or the Rehabilitation Act. *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 257 (4th Cir. 2006); *Guzman-Rosario v. United Parcel Service*, 397 F.3d 6, 10 (1st Cir. 2005); *Sanders v. Amerson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996). Other than during this brief period of time, the record is devoid of any information regarding Claimant's ability to walk. To be sure, the degenerative changes to Claimant's lower back produce pain and discomfort. However, the fact that he may have some pain when walking is insufficient to establish a permanent mobility disability under the ADA and/or the Rehabilitation Act. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.*, 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.*, 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996).

The Special Master further finds and concludes that while Claimant's impaired left arm may constitute a disability under the ADA and/or the Rehabilitation Act, it is outside the scope of the disabilities covered by the *Montez* Remedial Plan and, thus, beyond the Special Master's jurisdiction. The Remedial Plan states that it covers persons with "mobility impairments." *Remedial Plan* ¶ III(A). However, the Remedial Plan does not define the term "mobility impairments." However, the references to "mobility impairment" in the Remedial Plan indicate that the parties intended the term to encompass diseases, injuries and/or conditions affecting the lower extremities that impose a substantial limitation on the major life activity of walking. *See Remedial Plan* ¶ V(A)(1)(dealing with presumed need for special housing and defining "permanent mobility impairment as "a permanent lower extremity mobility impairment that substantially limits walking."); *Remedial Plan* ¶ XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly suggesting that "mobility impaired" inmates are those with diseases, injuries, and/or conditions affecting their lower extremities).

In short, there is no indication in the Remedial Plan its coverage of inmates with "mobility impairments" extends beyond those who are substantially limited in their major life activity of walking because of diseases, injuries and/or conditions affecting their lower extremities

3. The Special Master finds and concludes that Claimant's complaints regarding the adequacy of his medical treatment and care and his assertions that medical care was unreasonably delayed are not cognizable under the ADA and/or the Rehabilitation Act. Such issues may give rise to a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the

Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4. The Special Master finds and concludes that the evidentiary record does not support Claimant's contention that he was terminated from his position as a chaplain's assistant because of his difficulties in ambulating after the August 11, 2003 accident. The record demonstrates that Claimant's termination was the result of decisions made on August 6, 2003, five days before the accident occurred.

5. Finally, the Special Master finds and concludes that Claimant's contention that he was terminated from his employment in the recreation department because of his back problems is not cognizable under the Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

Because Claimant Friesen has failed to demonstrate that he has a permanent mobility disability, and because he has failed to demonstrate that he suffered any discrimination cognizable under the Remedial Plan, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Friesen's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 11, 1007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 11th day of April, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of April, 2007 to the following:

Mr. Randall W. Friesen, #58745
1479 Fillmore St.
Denver, CO 80206

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Judy M. Olive
_____
Judy M. Olive