IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-717
Category II
Claimant: Ricardo Ray Garduno, #113683
Address of Claimant: 935 Camillo Court, # C, Olathe, CO 81425

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Ricardo Ray Garduno. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.    General inconvenience or nominal damages;
II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.   Damages due to severe physical injuries; and
V.    Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.   DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Garduno submitted a claim which was assigned claim number 02-717. The claim is premised on an alleged permanent mobility disability.

2.      Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.      Claimant Garduno entered CDOC custody in August of 2001 and was discharged in August of 2005. Although the record does not specify the facilities where Claimant was housed, it appears that for all or part of his CDOC custody, he was housed at the Sterling Correctional Facility (SCF).

4.      Claimant states that he has had several operations on his right ankle and also has a herniated disk at L-5. He indicates that he walks with a limp, that he has a lot of pain and that he cannot walk down stairs. He notes that walking on the concrete floors increases the pain in his ankle and back. Claimant also suffers from stomach problems and chest pains.

5.      Claimant contends that CDOC refused and failed to provide him with proper medical treatment and medications for his ankle. He complains that CDOC refused to supply high-topped shoes, even though they were recommended by an

orthopedic specialist.  He further asserts that he was denied the opportunity to see an orthopedic specialist.  Claimant indicates that he fell on a wet floor in 2004 and that he did not receive proper medical treatment for his injuries.

6.     Claimant's medical records confirm that he suffered prior ankle injuries and that he has pain in both his ankle and back.  He has been given Motrin for pain control.  The medical records indicate that Claimant's gait is somewhat altered because of an ankle fusion but that he performs lower back exercises every other day; that he exercises on the treadmill every other day; and that he uses a Stair Master for 15 minutes every other day.    The  records  also  note  that  Claimant's  orthopedic  specialist recommended that he should wear high-top tennis shoes and that Claimant was given permission to purchase these from the canteen.

7.     The records provided to the Special Master reveal that while in CDOC custody, Claimant obtained his GED and attended and completed various computer classes.

## III.  CONCLUSIONS OF LAW

1.     The  legal  standards  applicable  to  this  claim  are  derived  from  three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

The  Remedial  Plan  limits  the  class  of  persons  who  might  otherwise  have  a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility,

hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

The Special Master finds and concludes that Claimant Garduno has failed to establish by a preponderance of the evidence that he suffers from a permanent mobility disability. There is no evidence in the record that Claimant has a mobility impairment that substantially limits his ability to engage in one or more major life activities. The evidentiary record affirmatively establishes that Claimant is able to exercise on a treadmill and on a Stair Master. The fact that he may have pain when walking or that he may walk with a limp is insufficient to establish a permanent mobility disability under the ADA and/or the Rehabilitation Act. The EEOC's regulations provide that a walking impairment becomes a disability only when the individual is so limited that he "can only walk for very brief periods of time." 29 C.F.R. § 1630.2(j) Appx. In an unpublished decision the United States Court of Appeals for the Tenth Circuit has cited several cases from other Circuits that collectively establish that even moderate restrictions on the ability to walk do not amount to a substantial limitation. *See McCoy v. USF Dugan, Inc.,* 42 Fed.Appx. 295 (10th Cir. 2002)(unpublished) *citing Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir. 1999); *Penny v. United Parcel Service, Inc.,* 128 F.3d 408 (6th Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir. 1996).

3.     The gist of Claimant's complaints are that he received substandard medical care from CDOC and that he was not provided with medically necessary equipment free of charge (i.e., high-top tennis shoes). There is no evidence in the record, other than Claimant's allegations in his Claim and Supplemental Claim, suggesting that the treatment, medications and instructions of his medical providers regarding Claimant's ankle and back problems fell below the standard of care required by law. Even if they did, such issues may give rise to a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do

claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

Furthermore, no showing has been made that CDOC's failure to provide Claimant with high top shoes free of charge amounted to discrimination because of his disability. There is no evidence in the record that non-disabled inmates were treated differently with respect to the CDOC policy of requiring inmates to purchase non-state issued shoes from the canteen.

Because Claimant Garduno has failed to demonstrate that he has a permanent mobility disability and because he has failed to demonstrate that he suffered any discrimination cognizable under the ADA, the Rehabilitation Act or the Remedial Plan, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Garduno's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 11, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 11th day of April, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

6

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 11th day of April, 2007 to the following:

Mr. Ricardo Ray Garduno, #113683
935 Camillo Court, #C
Olathe, CO 81425

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Judy M. Olive
Judy M. Olive

7