IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-273
Category III
Claimant: David L. Mares, #49814
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on May 4, 2007. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: David L. Mares (Claimant); and Rob Huss, attorney for Defendants.

Testimony was received from Claimant. Defendants' Exhibits A through E were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on October 26, 1994. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado. After three years at CCF, he was transferred to AVCF.

In his initial claim form, Claimant checked the boxes for mobility impairment and diabetes. Claimant stated, in part, in his claim form:

> DOC failure to proceed with hip replacement surgery which was approved shortly after I broke my left hip August 31, 1998, and which should have done the very first time in order to save me the pain and rehabilitation of a second surgery.
> I believe the surgery done to repair my hip was incorrectly or negligently done as a result of the surgery my left leg is an inch shorter than my right leg which deprives me of certain physical activities such as walking, sitting, or standing for too long of a time without the hip tightening and cramping up causing pain and discomfort, and limiting me to what I can do.
> I have lately learned I will need yet another surgery to remove the pins in my left hip from the previous surgery which are starting to protrude from inside to the outside of my leg. This all could have been avoided if DOC would have complied by allowing the surgery to replace my hip and avoided the constant pain and discomfort as well as the coming surgery for the last six years.

Claimant stated further concerning his diabetes:

> My diabetes has been out of control for the last 2, or 3 years ever since DOC discontinued the only medication that helped control my sugar level(diabenese). It was substituted with Glucovance, Glucophage, Avandia which was also discontinued, and one I can't recall. None of these medications help control my sugar level and combine side effects I had to be taken off. As a result, I had to be put on insulin which they keep trying to regulate by increasing and lowering the dosage and still can't be controlled.
> DOC is largely responsible by not complying with the Montez class action law suite and is putting my and other diabetics' health at risk. One meal we are fed large portions of carbohydrates raising the sugar level then we are fed low quality meals. There have times when I needed assistance to raise my blood sugar level. DOC is creating diabetics here. There seems to be one or two new diabetics every month.

In his testimony at the hearing, Claimant testified that he was diagnosed as diabetic back in 1983-84. He was placed on oral medications at that time. He then had to begin taking insulin.

4

Claimant stated that he arrived at AVCF in 1997. He was on insulin for a period of time and then began taking Actos and Glucophage. He started to put on weight and always felt bloated. Medical staff began to change medications. He was returned to insulin and has been receiving two shots per day. He only gets a one finger stick test in morning, and Claimant does not believe those tests are accurate.

Claimant testified further than he needs to have finger stick tests in the afternoon. He has not been on a special diet for some time. He is provided a diabetic snack.

As to his mobility issues, Claimant stated that he broke his hip in 1998. He had surgery later but believed that it had been done incorrectly. He thinks that ligament damage was done during the surgery, as he is in pain. A second surgery was done after the claim was filed, approximately two years ago. Claimant stated that he walks differently now and it hurts all the time. The pain is less if Claimant lies down. Claimant is employed as a porter in the hobby shop.

Claimant testified that he has felt worse after the second surgery. He has been placed on the chronic care list. He has received an order to have his toenails trimmed, as he cannot reach down to do that himself. He never received the physical therapy that was promised.

Claimant indicated that the food provided to him and other diabetics is mostly carbohydrates. The diabetic diet is the same as the regular meals given to the population as a whole. He has gained some weight. Claimant testified that he attempts to work out with weights and to do callisthenics.

On cross-examination, Claimant testified that he needed a heel lift for his shoe, as one leg is shorter than the other. He testified that be believed that a ligament or tendon had been cut by mistake during the first surgery.

In rebuttal testimony, Claimant testified that he can't take all of the medications prescribed for him due to the side effects. He does buy food items from the canteen to help. He secured some fireballs if he had a crash period with low blood sugar levels. Claimant testified further that Dr. Beecroft had been able to get his blood sugar levels stabilized. She also put him on a diabetic snack. Claimant stated that he cannot walk for long periods of time.

Defendants submitted the affidavit of Dr. Orville Neufeld, Ph.D., D.O. Attached to that affidavit were several pages of Claimant's medical files. Several documents reflect that Claimant has restrictions, including no vigorous exercise and no intensive labor.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he had a mobility impairment that

5

affected major life activities. He must show also that he was diabetic on or before that date. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The boxes checked on the claim form were for diabetes and for mobility impairment. Each will be taken separately.

**Diabetes**: Claimant was diagnosed as a diabetic back in the mid-1980's. He came to DOC as a diabetic. That status has continued. Claimant is a member of the class as a diabetic.

**Mobility Impairment**: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Claimant has not used a wheelchair while in DOC custody.

Claimant broke his hip in 1998. He had surgery as the result of that break. He has one leg that is shorter than the other as a result of the accident. Claimant has recently had hip replacement surgery. Claimant testified that his ability to walk had been affected. Claimant will be given the benefit of the doubt and will be determined to be mobility impaired. He is part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The answer to this question is no. Claimant throughout his pleadings and throughout his testimony raised issues concerning the quality of medical care that he has received in DOC. He believes that the hip replacement surgery should have been done years ago. He believes that his condition has been worsened by the second surgery not having been done earlier.

Claimant has received medical care while in DOC custody. He has expressed concern about that medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant

is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has not established by evidence that he was the victim of discrimination in violation of the ADA and Rehabilitation Act. The *Fitzgerald* decision precludes any examination in this case of the quality of medical care. There is no evidence of disparate treatment. As a result, Claimant cannot prevail on his claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of David L. Mares is denied and dismissed for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 30, 2007.**

SIGNED this 16th day of May, 2007.

BY THE COURT:

Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ___ day of May, 2007 to the following:

Mr. David L. Mares
#49814
AVCF
P.O. Box 1000
Crowley, CO 81034-1000

Mr. James Quinn
Mr. Jess Dance
Office of the Attorney General
1525 Sherman Street
Denver, CO 80203