IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-183
Category III
Claimant: Terry D. Gibbens, #69102
Address of Claimant: BCCF, 11560 CR FF-75, Las Animas, CO 81054-9573

_____

# FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master for hearing on June 8, 2007. This hearing was held at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. Present were the following: Terry D. Gibbens (Claimant); and Rob Huss, attorney for Defendants.

Testimony was received from Claimant, Earl Reed, Robert Duby, and Jack Carr. Defendants' Exhibits A through I were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
> 3. Permanent Vision Impairment
> Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
> 4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
> Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

3

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in September, 1992. He first went to the Denver Reception and Diagnostic Center (DRDC) for processing. He was at DRDC for about two months. Claimant then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was then transferred after three weeks to the Fremont Correctional Facility (FCF) in Canon City, Colorado.

After six months at FCF, Claimant was placed at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. He was at BVCF for twenty-six months. He then was transferred for twenty-one months to private facilities in Texas. He returned to Colorado and went to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He was at AVCF for nine years. On May 26, 2006, he was transferred to BCCF.

In his initial claim form, Claimant checked the boxes for hearing impaired and vision impaired. Claimant stated, in part, in his claim form:

> The problems I have in my hearing is high frequency loss. I may hear speech but in certain situations I may understand speech well but in other situations I totally can miss whole conversations especially around other noises. I was told at one time DOC would give me a hearing aid, but they never did. I know I need the type of hearing aid that takes care of high frequency loss of hearing. I was told by Doctor that on the street I would be given a hearing aid but by DOC standards I wouldn't. This has affected my life in a negative way for many many years by missing so much conversations & even appear to be dumb when problem is just not hearing what was really being said. I have ADD also which could be a factor also.
>
> How this (vision impairment) affects my life: It affects me in many ways like reading for any extended time or doing anything intricate. I have used many different kinds of eye solutions & they would only mildly relieve them & they still would continue to bother me. I basically have flushed my eyes out with water with the same results as the eye drops sometimes. After reading for any extended time my eyes would be blurry for some time. Even my near sight would be affected which is not a problem normally for me...

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I believe that discrimination is always a factor when it comes to any expenses & them taking our disabilities so lightly & doing nothing. I don't believe I should have to file a grievance just to get something done. I have also been told by audiologist that I meet criteria for a hearing aid but not by DOC standards which are

4

lower than the civilian population.

Claimant was sent supplemental forms to complete. Claimant did fill out and return the supplemental forms. In his form for hearing impairment, Claimant restated that he had high frequency loss of hearing. He has difficulty understanding announcements on the intercom. He repeated that he had requested a hearing aid from DOC.

In his supplemental form for vision impairment, Claimant stated, in part as follows:

> Eyes get blurry after reading for short or long time. Is erratic, burning & redness, itching, dryness, gooie matter usually at night and dry matter in the morning, usually. Never any problems in the morning. Usually never any problem in Sun. Can read normal type print sometimes w/o glasses. Vision deteriorating over years. Eyes act more like infection.

In April, 2005, Claimant moved to amend his claim to include mobility impairment. That request was granted. Claimant stated that he was a disabled Vietnam war veteran and had suffered injuries while in combat. Claimant also noted that he had been assaulted in 1999 and his jaw was broken. He has continued to have problems with his jaw, particular with a TMJ condition. Claimant attached to his amendment to his claim some medical records. Those medical records reflected that Claimant was suffering from arthritis. An MRI report reflected mild degenerative disk disease (DDD) in L5-L3 of his spine.

Claimant provided a medical record reflecting that he had been assaulted by other inmates in July, 2004. He suffered bruises and was sore.

At the hearing Claimant testified that he did not wear glasses when he came into DOC. He began to have eye problems, including blurred vision and mucous-filled eyes. He received glasses from DOC, but they did not help much. Claimant testified that he has received medical treatment for his eyes and some examinations, but it has not resolved the problem.

Claimant explained that he has hearing deficiency that dates back to the Vietnam war. He has been tested and has a high frequency loss in hearing. The loss is different in each ear. He has requested a hearing aid, but has not received one. He noted that he often cannot hear someone talking, particularly if there is background noise. He has found himself not getting involved in conversations due to the inability to hear. Claimant believed that some inmates assumed he was ignoring them rather than not being able to hear them.

On cross-examination, Claimant responded that he had received bifocals from DOC. When asked concerning discrimination, Claimant testified that he still had symptoms in his eyes. Mucous remains in his eyes, and nothing has been done about that. Further, he had not received a hearing aid.

Claimant called a number of witnesses. Robert Duby has served with Claimant and knew him

well. He was aware of Claimant's hearing problems and had observed those. He also was aware that Claimant had some vision problems. Claimant had to sit close to a television in order to see if and hear it.

Jack Carr testified that he was aware of Claimant's vision problems. Claimant would complain on a regular basis concerning his vision. He also was aware of the hearing problem that Claimant experienced.

Earl Reed testified in person at the hearing. He has known Claimant since he arrived at BCCF. He has observed Claimant struggling with his vision and hearing. He believed that Claimant had developed some ability to read lips. He has had to repeat and spell out words for Claimant.

In lieu of live testimony, Defendants submitted the affidavit of Dr. Orville Neufeld, D.O. That affidavit contains a number of documents from Claimant's medical records. Those records reflect that Claimant has many significant health issues. *See, Exhibit E and Exhibit H*. Defendants also submitted other documents in support of their position.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he was disabled under one of the four listed categories. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately.

*Mobility*: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Examples provided in the Settlement Agreement are the inability to walk more than one hundred yards without stopping and/or the inability to climb a flight of stairs without stopping.

Claimant is not and has not been in a wheelchair. In addition, Claimant did not provide evidence that he could not walk more than one hundred yards without stopping or could not climb a flight of stairs. The medical records submitted do not establish that Claimant is mobility impaired. Claimant is not part of the class as mobility impaired.

*Vision*: The Special Masters have interpreted vision impairment to mean that an individual is almost totally blind and unable to carrying on daily living activities due to vision loss. Claimant has not established that he is vision impaired.

Claimant has problems with mucous and changing eye prescriptions. These are troublesome and a nuisance. There is no evidence that his eye condition has affected his ability to do basic activities of daily life. Claimant has an eye condition, but is not impaired as required by the Settlement Agreement. Claimant is not part of the class as vision impaired.

*Hearing*: There is no question that Claimant has hearing loss. That is documented by his medical records. The loss is strongest at the higher frequencies.

Claimant's hearing claim presents an interesting issue. The Settlement Agreement provides no clear cut definition as to who falls into the category of being hearing impaired. Claimant has documented hearing loss. On the other hand, Claimant is able to carry on most activities of daily life. As an example, Claimant heard most of what transpired during his hearing. There were some occasions when something had to be repeated. The question is where the dividing line is between hearing impaired and hearing non-impaired.

The Special Masters basically adopted the following definition for hearing impairment claims.

> 2. Permanent Hearing Impairments
> Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.

Claimant does not remotely meet this definition. He may read lips to a certain degree but he does not rely upon lip reading. Claimant clearly is not deaf. He does not have to rely upon written communication, lip reading or signing.

Claimant makes an excellent case for why he should have a hearing aid. He has been attacked twice. He believes that such attacks were the result of another inmate believing that he ignored that inmate. A hearing aid might preclude further attacks because Claimant would be able to hear better.

The Special Master finds that Claimant is not hearing impaired as required by the Settlement Agreement. Claimant can hear and can carry on his activities of daily life. He could benefit from a hearing aid, but he has not presented evidence that would allow a finding of hearing impaired, as contemplated by the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant has not established that he is a member of the class, as required by Question #1, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #1 has not been answered in the affirmative, this question does not need to be answered. in damages.

IT IS HEREBY ORDERED that the claim of Terry Gibbens is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 27, 2007.**

SIGNED this 15th day of June, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

———————————————————
Richard M. Borchers
Special Master