IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-373
Category III
Claimant: Leroy Cunningham, #75593
Address of Claimant: BCCF, 11560 CR FF-75, Las Animas, CO 81054-9573

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 8, 2007. This hearing was held at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. Present were the following: Leroy Cunningham (Claimant); and Rob Huss, attorney for Defendants.

Testimony was received from Claimant. In addition to his own testimony, Claimant offered into evidence Exhibits 1 through 6, and all were admitted. Defendants' Exhibits A through H were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on May 10, 1976. Over the next almost twenty years, Claimant was placed in various DOC facilities. There were also periods of time when Claimant was on parole. Claimant discharged his first sentence on March 28, 1996.

On January 8, 2004, Claimant returned to DOC custody on a new sentence. He was processed at the Denver Reception and Diagnostic Center (DRDC). He then was placed at the Kit Carson Correctional Center (KCCC) in Burlington, Colorado. Claimant remained at KCCC until December 9, 2004 when he was transferred to the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. On May 18, 2005, Claimant was placed into a community placement in Denver. He was returned to FLCF on August 29, 2005. He was placed on parole on February 23, 2006. Parole was revoked, and Claimant came back into DOC custody on June 7, 2006. He was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was transferred to BCCF in November, 2006, and has remained at that facility since that date.

In his initial claim form, Claimant checked the boxes for hearing impaired and vision impaired, as well as diabetes. Claimant stated, in part, in his claim form:

> After years of diabetes, the circulation in my legs, feet is very bad. My feet swell continuously, & when they don't throb or ache, they seem to tingle. Prison footwear is very inappropriate for such disabilities. I spend most time in my cell w/ my feet up, or soaking in hot water - it helps.
> I have lower back pain, that sometimes becomes debilitating (severe). My vision is failing more & faster as I age. It seems like I just get used to a prescription & my sight worsens again. DOC only updates my prescription every two yrs. It's not often enough.
> My diabetes is causing progressively worst symptoms that aren't being addressed sufficiently by DOC staff. I feel my B.G. levels rise far more often, causing horrible headaches, yet my meds aren't up-dated. I have serious issues & difficulty w/ my breathing and it's not being addressed.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> DOC turns a deaf ear to my request for comfortable footwear & "support stockings" for my poor circulation. Perhaps even some Epson salts to soak my feet when they throb. I need more often eye exams & prescriptions, like folks on the street - to stop my frustrating, failing vision. I need attention by staff, to my issues of my chronic headaches - disturbing chest pains that have become a daily nuisance, & please help w/ my breathing problems. Staff is not attending to these so far. My back problems need a specialist, or chiropractor, you can't "gloss over" injuries like

4

that.

Claimant was sent supplemental forms to complete. He returned those forms to the Special Master. In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

> It is the refusal to treat me properly and denying accommodations of outside doctors which might cost more, and the changing of medications to something that does not work or help, that causes pain and emotional distress.

Claimant in his vision supplemental form stated that "I have asked on numerous occasions to please provide correct glasses so I could at least read."

At the hearing, Claimant testified that he was diagnosed as having diabetes while at KCCC. He was started on insulin with two shots per day. He received a special diet. After some period of time, he also began to receive medication (Glucophage) for his diabetes. KCCC provided diabetic shoes to Claimant. Those were then taken when he arrived at DRDC and not returned.

Claimant testified that DOC shoes have caused many problems for him. His toenails have fallen off. He has started to wear flip-flop shoes. He has requested special shoes but has not received them. Claimant indicated that his feet feel like they are on fire. He has been forced to wear state-issued footwear. That footwear is hurting his feet and causing blisters and other health issues.

Claimant testified that he has had back problems, including numbness in his legs and feet. He has been told that nothing can be done. Claimant also has had chest pain and wonders if it is the result of being prescribed Avandia, a drug that is now known to have an effect on the heart. Claimant said that he continues to struggle to control his blood/sugar levels. He did stated that the doctor at BCCF is good and is trying to provide help.

In his testimony, Claimant also stated that he has sleep apnea and must use a C-Pap machine at night. He was seen at National Jewish Hospital before he came back to DOC custody. He has attempted to work but it has been difficult. He was trained as a chef but has been unable work much since he returned to DOC. Claimant stated that he will simply "fall out." He has been trying to get approved for a disability through Social Security.

Claimant testified further that his vision has become blurry at times. He cannot watch television. It is difficult to read more than a page or two of a book at one time. Claimant stated that he has limited funds and cannot buy special footwear or hire a private doctor to examine him.

On cross-examination, Claimant testified that his foot problems began in the 1980's and predated being diagnosed with diabetes. The problem with loss of toenails arose after he developed diabetes. He reiterated that he has sleep apnea and must use a C-Pap machine at night. He acknowledged that he has seen some specialists since coming to DOC. He is still on insulin and has difficulty seeing. He stated that he can't get adequate medical treatment. No steps have been taken to alleviate his medical problems.

On redirect examination, Claimant testified that his medical treatment has changed on a frequent basis for the last two years. He stated further that he did not believe that it was fair to be charged for medical care. He has requested soft sided shoes but has not had any provided to him. He has chronic problems and should be treated as a chronic patient, thus stopping co-payments.

In lieu of live testimony, Defendants submitted the affidavit of Dr. Orville Neufeld, D.O. That affidavit contains a number of documents from Claimant's medical records. Defendants also submitted other documents in support of their position.

In rebuttal, Claimant testified that he been denied a diabetic diet. Claimant complained that another inmate was placing foreign matter in his food. He was placed in administrative segregation as the result of his concerns about his food. He stated that he was not going to take medications that hurt him. Claimant testified further than all of his joints hurt. Nothing has been done for the pain. He has received some eye examinations but still has difficulty seeing.

Claimant testified that he had not been to a specialist for his diabetes. His condition is out of control . He has a special chair in his cell because of his physical condition.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

The Settlement Agreement is the document that provides the only basis upon which a claim may be filed. The Settlement Agreement establishes the only jurisdiction that the Special Masters have. The Settlement Agreement sets limits on what the Special Masters may do on a given claim.

Claimant must show that on or before August 27, 2003 he was disabled under each of the categories that he is claimed and noted on his claim form. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately.

*Diabetes*: Claimant acknowledges that he was diagnosed with diabetes at KCCC. This was after he returned to DOC custody on January 8, 2004. There is no question that Claimant is diabetic and has had problems controlling his blood/sugar levels.

As discussed previously, the Settlement Agreement controls the jurisdiction that the Special Masters may exercise. As an example, several claimants have requested relief because of shoulder problems, arguing that they are disabled and have been discriminated against in violation of the ADA. The Settlement Agreement provides no category for upper extremity problems. The Settlement Agreement further requires that a listed condition must have existed on or before August

6

27, 2003. Claimant was never diagnosed as having diabetes during his previous incarceration in DOC which ended on March 28, 1996.

The Special Masters have no jurisdiction over the claim of diabetes. Claimant's remedy is to pursue a separate lawsuit for what has occurred since he was diagnosed as a diabetic at KCCC in 2004.

*Vision*: The same problem exists for the claim of vision impairment as for diabetes. Review of all documents submitted by both sides reflects that vision problems arose after Claimant's return to DOC custody in 2004. Claimant had an eye exam in 1996 that reflected that his eyesight was within normal limits and correctable with glasses. *Defendants' Exhibit W*.[2] He received glasses in January, 1996. *Defendants' Exhibit X*. There is no evidence of any problems with vision that would come close to any disability on or before Claimant's discharge on March 28, 1996.

The Special Master has no jurisdiction over the claim of vision. Claimant may pursue a separate lawsuit under the ADA and Rehabilitation Act concerning what has occurred since January, 2004.

*Mobility*: Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...." Examples provided in the Settlement Agreement are the inability to walk more than one hundred yards without stopping and/or the inability to climb a flight of stairs without stopping.

There is no evidence that Claimant ever used a wheelchair while in DOC custody. He was not mobility impaired on that basis during the time period that ended on March 28, 1996.

The evidence from the time period ending March 28, 1996 indicates that Claimant was having problems with his feet and legs. He complained of numbness in both on July 10, 1993. *Defendants' Exhibit JJ*. Claimant was provided support hose. He had cramping in his legs and hands in July, 1994. *Defendants' Exhibit MM*. Claimant had experienced the numbness while working out with weights. Claimant requested permission to purchase his own soft sided shoes in 1994. *Defendants' Exhibit NN*.

The evidence presented does not substantiate that Claimant was mobility impaired on or before March 28, 1996. There is no evidence that Claimant was unable to walk more than one hundred yards without stopping and there is no evidence that he could not climb a flight of stairs without stopping. The documents in the file and presented at the hearing have been reviewed twice by the Special Master. Those documents reflect that Claimant was having health issues during the time up to March 28, 1996 but that he was able to work out and get exercise. The Special Master is

---

[2] These references are to exhibits attached to Defendants' response to this claim when it was still assigned to Category II.

bound by the definition in the Settlement Agreement. For the time period leading up to March 28, 1996, there is insufficient evidence to find that Claimant had a lower extremity condition that substantially limited walking.

*General*: There is no question that Claimant has significant medical issues at this time. Claimant's concerns about his physical condition and well-being are legitimate. From the standpoint of this claim, the Settlement Agreement provides guidelines that must be followed. Claimant has not shown that he had diabetes before August 23, 2003 and was in DOC custody at that time. The same is true as to vision and mobility impairments. Claimant's remedy is to pursue a separate lawsuit for what has occurred since his return to DOC custody on January 8, 2004.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Claimant has not established that he is a member of the class, as required by Question #1, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #1 has not been answered in the affirmative, this question does not need to be answered. in damages.

IT IS HEREBY ORDERED that the claim of Leroy Cunningham is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 27, 2007.**

SIGNED this 15th day of June, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master