IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-173 (formerly 02-064)
Category: III
Claimant: Wellman E. Gibson #74384
Address of Claimant: CCF, P.O. Box 600, Canon City, CO 81215-0600

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master on the claim of Claimant Wellman E. Gibson. This Hearing was held at the Sterling Correctional Facility (SCF) on February 13, 2006 before Richard C. Davidson, Special Master. Present were the following: Claimant, *pro se*; J. Aaron Atkinson and Jennifer Berman from the Office of the Attorney General on behalf of the Defendants. Testimony was received from the following: Claimant; Kathy Writtenhouse, Nurse Practitioner at SCF; Lieutenant Debbie Outten, by telephone; Orville Neufeld, D.O., by affidavit. Claimant introduced exhibits 1 through 5 and Defendants introduced Exhibits A through M. A comprehensive Appendix of Exhibits is attached to this Order. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been

1

reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.   DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE

2

Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

2.  The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1.  Is the claimant a disabled individual who is a member of the class?
2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Wellman E. Gibson submitted a claim which was assigned claim number 03-173.[1]  The claim is premised on an alleged permanent mobility disability.

2.      Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3.      Claimant Gibson first entered CDOC custody in 1986. Claimant has been housed at Arkansas Valley Correctional Facility (AVCF), Limon Correctional Facility (LCF), Centennial Correctional Facility (CCF), Fremont Correctional Facility (FCF) and Sterling Correctional Facility (SCF).

---

[1] Originally, the claim was assigned to claim number 02-064.  By order of the Special Master, the claim was elevated to Category III and set for a hearing.

4.     In 1993 or 1994, Claimant was diagnosed with degenerative disk disease, lumbar scoliosis and spondylosis.  In 1999 he was diagnosed with herniated disks in his cervical spine.  He underwent a multi-level fusion on his cervical spine in 2000.  In 2004, an MRI exam showed additional degeneration in his lumbar spine and in his cervical spine.  This results in pain causing him to have difficulty walking and standing.  A follow up exam to determine the clinical correlation of the MRI results concluded that his back pain does not correlate with the MRI findings.  He also complains of pain in his hands. He claims he has been discriminated against by CDOC by being denied jobs and resulting good time earned.  He claims the medical staff has written that he is faking his problems.

5.     Claimant also claims he has been discriminated by having his books on tape taken by CDOC.  He claims that his hand difficulties with dexterity and his cataracts mandate his continuing in the books on tape program.

6.     Claimant also claims that CDOC has retaliated against him for bringing claims against them in this case and that he has been prohibited from using the prison library.[2]

### III.  CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

3.     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, and vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical

---

[2] By his own motion, the Special Master had class counsel investigate the claims as part of their ongoing compliance duties under the Remedial Plan.

disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.      Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.      Neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing and diabetes.

6.      There is no question that Claimant Gibson suffers from progressive chronic low back pain with radiculopathy into his legs. He has suffered with this problem for many years. The medical records and specifically the 2004 MRI confirm this and also confirm that his condition is worsening. He has indicated that he now uses a cane for mobility. The records also demonstrate that he is suffering from progressive deterioration in his cervical spine. This condition causes him to have pain and weakness in his hands. The question is whether these conditions are sufficient to render him mobility disabled within the narrow limitations of the *Montez* case. Based upon the records provided to the Special Master and the testimony offered, the Special Master finds and concludes that Claimant Gibson is a mobility disabled person under the terms of the Remedial Plan. The evidence shows that Claimant is able to walk but because of his chronic low back pain and radiculopathy, he can only do so slowly and with pain and he now needs a cane. He is <u>unable</u> to climb stairs safely. Claimant finds stairs unsafe because of the increasing difficulties he has with his hands. He is unable to grip and as a result is unable to insure his safety by using hand rails. Therefore, Claimant has demonstrated that his chronic back pain and radiculopathy, coupled with his cervical problems constitutes a substantial limitation on the major life activities of walking and mobility and anything that requires him to grip and to hold.

7.      The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It

appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

8.      The key issue is whether Claimant was discriminated against by CDOC because of his mobility disability. Claimant Gibson has stated that he was discriminated against by being denied jobs, by being fired from jobs, from being denied needed medical equipment and from being denied lower bunk/lower tier restrictions.  The records, however, demonstrate that he was allowed to engage in activities as tolerated.  He held some jobs and although he was fired from one of them, this does not appear to have been related to his mobility disability.  He was given restrictions for lower bunk/lower tier in recognition of both his mobility disability and the difficulties with his hands.  His greatest ongoing complaint of discrimination seems to be that he was deprived of the privilege of continuing to participate in the books on tape program.  He was allowed to participate in the program but has had the tapes and the machine taken from him without reason.  The Special Master finds that this constitutes discrimination because of his disability.  A more egregious form of discrimination occurred when he was barred from the library for being unable to sign in for a period of over three months.  This is inexcusable discrimination.  Mr. Gibson has a complex disability involving both his lower back and legs and also his cervical spine and the inability to use his hands.

9.      The record is full of instances where Claimant has disagreed with CDOC about policies or the way he has been treated.  He claims he has be moved, been put on Administrative Segregation and has had items taken from him for no reason.  Again, these claims do appear to be related to Claimant's mobility disability complex involving his progressive hand deterioration and thus are discriminatory.

10.      Claimant Gibson does have a permanent medical condition that causes him to be mobility disabled.  Whether Claimant has an additional 8th Amendment claim, or some other claim is outside the scope of this matter.  As a result of the discrimination, the Special Master has determined that Claimant should be awarded the sum of $600.00.  Additionally, Defendants are directed immediately to restore to Claimant the tape machine and tapes so that he may continue to participate in the Books on Tape program.

## IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment will be entered in favor of Claimant and against Defendants in the amount of $600.00.  Further, Defendants are directed immediately to restore to Claimant the tape machine and tapes so that he may participate in the Books on Tape program.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before August 22, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 22nd day of June, 2007.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 22nd day of June, 2007 to the following:

Wellman E. Gibson #74384
CCF
P.O. Box 600
Canon City, CO 81215-0600

Mr. J. Aaron Atkinson
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Ms. Paula Greisen
Counsel for the Class
King & Greisen, LLP
1670 York St.
Denver, CO 80206

/s/ Susan L. Carter

_____

Susan L. Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-173 (formerly 02-064)
Category:  III
Claimant:  Wellman Gibson, #74384
Address of Claimant:  CCF, P.O. Box 600, Canon City, CO 81215-0600

---

## APPENDIX OF EXHIBITS

---

The following is a list of Exhibits introduced by CLAIMANT and ADMITTED into evidence in the above referenced claim:

| | | |
|---|---|---|
| EXHIBIT 1: | 3 pages | CDOC Offender Grievance Form Step 2, Step 1 and Memo From Renee Martinez. |
| EXHIBIT 2: | 1 page | State of Colorado Department of Corrections Consulting Physician's Report Form for Wellman Gibson dated 11/5/97. |
| EXHIBIT 3: | 1 page | July 24, 2003 Step III Grievance from Anthony A. DeCesaro. |
| EXHIBIT 4: | 1 page | CDOC Offender Grievance Form Step 1 for Gibson. |
| EXHIBIT 5: | 8 pages | Letters of February 10, 2003 to Mr. Petrozzi, Clinic Team Leader, Medical Clinic at LCF and to Lt. O'Connor, Case manager both written by Wellman Gibson. |

---

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

EXHIBIT A:  6 pages          Order and Judgment Adopting Recommendation of Magistrate Judge, Filed by the United States District Court, Denver, Colorado, May 02, 2003.

EXHIBIT B:  18 pages         Colorado Department of Corrections Clinical Services Clinical Standards and Procedures as revised February, 2005 and including attachments.

EXHIBIT C:  1 page           CDOC Memorandum of October 25, 2005 to Wellman Gibson from Renee Martinez.

EXHIBIT D:  1 page           CDOC denial of Step II grievance dated October 26, 2005.

EXHIBIT E:  1 page           CDOC Offender Grievance Form, Step 1, filed 8-22-05.

EXHIBIT F:  5 pages          CDOC letter from Karl Gilge, Case Manager, dated September 11, 2002 and including attachments.

EXHIBIT G:  1 page           State of Colorado Department of Corrections Disposition of Charges for Wellman Gibson dated 11-6-01.

EXHIBIT H:  1 page           CDOC Informal Resolution Attempt for Wellman Gibson, Dated 11-27-02.

EXHIBIT I:   1 page          Query Offender Programs for Wellman Gibson, dated 02/09/2006.

EXHIBIT J:   15 pages        Denial of Step III grievance by Anthony A. DeCesaro, dated September 8, 2004 and including attachments.

EXHIBIT K:  1 page           Query Admission Summary for Wellman Gibson, dated 02/09/2006.

EXHIBIT L:  1 page           CDOC Offender Grievance Form for Wellman Gibson, dated 9-12-02.

EXHIBIT M:  15 pages         Affidavit of Doctor Orville G. Neufeld including exhibits.