IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-352
Category III
Claimant: Dean J. Cordova, #95767
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on June 22, 2007. This hearing was held at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Present were the following: Dean J. Cordova (Claimant); and Rob Huss, attorney for Defendants.

Testimony was received from Claimant. In addition to his own testimony, Claimant offered into evidence Exhibit 1 and it was admitted. Defendants' Exhibits A through G were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

>The Settlement Agreement further provides, in part, as follows:
>
>>2. Permanent Hearing Impairments
>>Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>>3. Permanent Vision Impairment
>>Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>>4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>>Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on April 13, 1998. He was placed at the Denver Reception and Diagnostic Center (DRDC). He was at DRDC for about one month. He then was transferred to the Four Mile Correctional Center (FMCC) in Canon City, Colorado. He remained at FMCC until his was placed on parole on August 7, 1998. Claimant remained on parole until January, 21, 1999 when he returned to DOC custody.

Upon his return, Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on January 21, 1999. He was granted parole again on July 24, 2000. That parole attempt failed, and Claimant returned to DOC custody on August 8, 2001. Claimant went first to DRDC and then to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant was granted parole on January 15, 2003. He returned to DOC custody at DRDC on October 16, 2003. He was placed then at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado on December 24, 2003. He transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado on May 13, 2004. He transferred to BVCF on December 9, 2004.

In his initial claim form, Claimant checked the boxes for hearing impaired, vision impaired, mobility impaired, and diabetes. Claimant stated, in part, in his claim form:

> I had knee surgery & my surgery has made my knee worse. I have diabetes & it's affected my vision very badly & my kidneys are starting to fail. My blood pressure is high & I'm having head aches that DOC will not help me with. My health right now is spiraling out of control due to DOC's ineffective assistance with helping my diabetes illness. My doctor at CTCF has stated that I've already lost 6-8 years of my life expectancy due to my diabetic condition. Yet due to facilities transfers, I have not been able to receive proper treatment & my condition continues to worsen each & every day.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> DOC has had enough time to help me with my diabetes & now my health is so bad that I may be facing dialysis for my kidneys & I still have not been checked for my vision headaches or my hearing. DOC is making my health worse by not treating me for my diabetic illness.

Claimant was sent supplemental forms to complete. He returned those forms to the Special Master. In his supplemental form on diabetes, Claimant stated that medical staff were not able to help him lower his blood/sugar levels. In his supplemental form on hearing impairment, Claimant indicated that he is finding it harder to hear. He was not able to hear well on the telephone. His vision also has been affected by his diabetes.

This claim was originally assigned to Category II. Respondents filed an answer to the claim which included several pages of Claimant's medical records. Defendants noted that the first entry in medical records concerning diabetes is on October 20, 2003. *Exhibit B attached to Response.*

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

The Settlement Agreement is the document that provides the only basis upon which a claim may be filed. The Settlement Agreement establishes the only jurisdiction that the Special Masters have. The Settlement Agreement sets limits on what the Special Masters may do on a given claim.

Claimant must show that on or before August 27, 2003 he was disabled under each of the categories that he is claimed and noted on his claim form. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately.

*Mobility*: Claimant testified that he could not state that he had been discriminated against by DOC and its staff due to any mobility problems. Claimant did not want to pursue this part of his claim, and it will be deemed withdrawn.

*Vision*: Claimant testified that his vision is bad. He believed that he was simply aging but now believes that it is related to his diabetes. He stated that he has been issued glasses, but he cannot see. He has difficulty reading the newspaper. He is scheduled for an eye examination.

The medical records attached to Exhibit A reflect that eye examinations were provided to Claimant. He was tested on August 21, 2001 and was found to have 20/20 visual acuity in each eye. *Exhibit A32.* On October 17, 2001, Claimant was examined and determined to be 20/25 in each eye. *Exhibit 33.* On October 20, 2003 when he returned to DOC custody, Claimant was examined and determined to have 20/25 visual acuity in the right eye and 20/30 in the left eye. *Exhibit A35.* Claimant was examined in May, 2005 and determined to have 20/50 visual acuity in each eye. *Exhibit A37.* Claimant has refused two subsequent examinations. *Exhibits A 38 and A39.*

The Special Masters have interpreted the Settlement Agreement as requiring almost blindness to qualify as visually impaired. All claimants must show that they fell into the class through one of the conditions set forth in the Settlement Agreement on or before August 27, 2003. In this case, Claimant has not done so. The eye examinations that were performed prior to August 27, 2007 reflected eyesight that was within normal limits. There is no evidence of diabetic retinopathy in either eye on or before August 27, 2003. Claimant has not proven that he was vision impaired on or before August 27, 2003.

*Hearing*: The Special Masters have interpreted hearing impaired as requiring almost total deafness. The key is whether a hearing impairment existed on or before August 27, 2003.

No evidence has been presented by either side that any hearing impairment existed prior to August 27, 2003. When Claimant returned to DOC custody in October, 2003, he did not report any hearing problems. *Exhibit A35*.

The evidence is insufficient to establish that Claimant had a hearing impairment, as defined by the Settlement Agreement. Claimant has not proven that he was hearing impaired on or before August 27, 2003.

*Diabetes*: Claimant testified that he was diagnosed with diabetes in 2004 while at CTCF. He recalled a prior medical visit in 2002 when he was told that he might be diabetic. In 2004, he started to receive insulin and other medicine. At first, he received two shots of insulin per day. Now he receives three shots per day.

There is no evidence of a diabetic diagnosis prior to August 27, 2003. Claimant was diagnosed upon his return to DOC custody on October 20, 2003. *Exhibit A1*. Claimant has testified that there may have been some concern about blood/sugar levels, but no treatment was provided for that.

The Settlement Agreement established the class on August 27, 2003. To be part of the diabetes class, a claimant had to show he had been diagnosed as diabetic on or before that date. There is no evidence that diabetes was diagnosed on or before that date. Claimant is not part of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prove a claim, a claimant must show that he had a listed impairment on or before August 27, 2003 and had been subjected to discrimination as the result of that impairment. The ADA and Rehabilitation Act are discrimination statutes. A claimant must show that a discriminatory act took place before August 27, 2003. An example would be intentionally placing a wheelchair-bound inmate on the second floor of a cell house that had no elevator.

Claimant's complaints have been related to his medical care. He does believe that DOC has provided correct medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth

Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Even if he had established that he was a member of the class, Claimant failed to establish any discriminatory act as contemplated by the Settlement Agreement. Under *Fitzgerald*, the Special Master has no power in this case to review the quality of medical care provide to Claimant or anyone else.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #3 has not been answered in the affirmative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Dean J. Cordova is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 10, 2007.**

SIGNED this 27th day of June, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master