IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

        Plaintiffs,

-vs.-

BILL OWENS, et al.

        Defendants.

_____

Claim Number 03-127
Category III
Claimant: Andrew Gallegos, #49736
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

        THIS MATTER came before the Special Master for hearing on June 1, 2007.  This hearing was held at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Present were the following: Andrew Gallegos (Claimant); and Rob Huss, attorney for Defendants.

        Testimony was received from Claimant.  Defendants' Exhibits A through F were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. Claimant requested more time in which to submit additional medical records. Claimant was granted up to and including July 2, 2007 in which to submit any additional documents he wished to have considered. Despite being granted additional time, Claimant has filed nothing further.

        This case was taken under advisement after closing arguments, subject to the submission of additional medical records. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

        This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

The Settlement Agreement further provides, in part, as follows:

2. Permanent Hearing Impairments
Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
3. Permanent Vision Impairment
Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A.* These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

3

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody in 1981. He was discharged from that sentence in 1983. Claimant returned to DOC custody in 1989 and remained for one year.

Claimant came back into DOC custody on a new conviction in 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He remained there for about two weeks. Claimant was placed then at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. He remained at BVCF for about one and one-half years. He then was transferred to HCCC on August 13, 2003.

In his initial claim form, Claimant checked the box for vision impaired. Claimant stated, in part, in his claim form as follows:

My disability is with my vision, severe case glaucoma. It has affected my life dramatically because I am going blind. I suffer severe headaches, damage to me optic nerve and loss of vision, loss of appetite from nausea and loss of weight.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

In March of 2003 I was diagnosed with glaucoma and in May my Glaucoma was severe enough that the glaucoma specialist recommended eye surgery. This was at the Rocky Mountain Eye Center in Pueblo, CO in May of 2003. The eye surgery was never approved by the Dept. of Corrections and was not performed for over 2 years and have cost consider (sic) amount of eye sight loss and damage to my optic nerves.

Severe damage to my optic nerve and great loss of eye sight and there are no medical procedure that can correct this problem. Glaucoma specialist Mary Morrisey at Denver Medical health stated that I would not be facing the problems I am now if the surgery would have been done two years ago and the great damage to my optic nerve.

Claimant was sent a supplemental form to complete. He did so and returned it in conjunction with several pages of medical records. Claimant stated, in part, as follows in his supplemental form:

Dr. Greenly, a glaucoma specialist, at the Rocky Mountain Eye Center in Pueblo, Colorado, has diagnosed my condition as open angle glaucoma. My symptoms include sharp pain in the back of my eyes. When the pain occurs, my vision becomes cloudy, then it looks like I am looking through a tunnel in my right

4

eye. It then takes a minute for my eyes to adjust.

    The distance I can see is 25 to 30 feet. Less than that without my glasses. Because of the pressure in my eyes, I wake up in the morning with a severely painful headache. When I try to read the letters are shadowed and run together. I can no longer judge distance. I have to squint a lot to try and make my eyes focus. I am very sensitive to bright light. When I come in from the outside it becomes dark to where I can only see shadows of people or objects. I have to sit down for a few minutes before my vision returns, and I am able to focus again. I have severe damage to my optic nerve. This is what causes the sharp pain in my eyes. I feel nauseated all the time, and I suffer loss of appetite.

At the hearing, Claimant testified that he was diagnosed with glaucoma in March, 2003. He was provided eye drops. He was sent to see Dr. Greenly, an ophthalmologist, in Pueblo, Colorado. Dr. Greenly determined that glaucoma was present. Claimant was sent also to see a doctor at Denver Health Medical Center (
DHMC) in October, 2003, and the diagnosis of glaucoma was reinforced.  Claimant was advised by the doctor at DHMC that he should have laser eye surgery.

Claimant testified further that when he arrived at HCCC he was examined. He was told by medical personnel at that facility that he had glaucoma. He was transported at one point to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado and placed into the infirmary at that facility. Claimant assumed that he was going to have surgery, but that did not happen.

Claimant testified that he was taken to DHMC in 2005 and did have laser surgery. The right eye was done in May, 2005. Claimant stated that there were no positive results. He had further surgery in 2006. The last surgery was successful. Claimant goes approximately every four months to DHMC for an eye checkup.

During his testimony, Claimant stated his eyesight has worsened. He can see to a limit of about thirty-five feet. Claimant believes that his condition was neglected and that it grew worse because of that. He is concerned about going blind.

On cross-examination, Claimant was asked if there was anything that he had requested and was denied. He said that he requested eye glasses and large print books. He said that he still did not have any large print books. He reiterated that DOC had not taken care of his health.

On redirect examination, he stated that the surgery could have been done earlier. Claimant believes that earlier surgery might have stabilized his eyesight and helped save years of eyesight.

### III.

The Special Master must examine the evidence in light of the four questions set forth by

Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

The Settlement Agreement is the document that provides the only basis upon which a claim may be filed. The Settlement Agreement establishes the only jurisdiction that the Special Masters have. The Settlement Agreement sets limits on what the Special Masters may do on a given claim.

A claimant must show that on or before August 27, 2003 he was disabled under each of the categories that he is claimed and noted on his claim form. A claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?**  There is no question that Claimant has glaucoma. He was so diagnosed in March, 2003. It is not disputed by Defendants that Claimant has glaucoma.

The Special Masters have interpreted the Settlement Agreement as requiring almost blindness to qualify as visually impaired. In this case, Claimant has established that he has a significant condition affecting his eyes. Though it is a close case, the Special Master will find that Claimant is vision impaired due to his glaucoma.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prove a claim, a claimant must show that he had a listed impairment on or before August 27, 2003 and had been subjected to discrimination as the result of that impairment. The ADA and Rehabilitation Act are discrimination statutes. A claimant must show that a discriminatory act took place before August 27, 2003. An example would be intentionally placing a wheelchair-bound inmate on the second floor of a cell house that had no elevator.

The evidence submitted by both sides reflects that Claimant has received medical care during the time he has been in custody. This care has included examinations by Dr. Greenly and physicians at DHMC. Claimant's complaints are related to the quality of his medical care. He does not believe that DOC has provided correct medical care. He further believes that surgery should have occurred many months before it did.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination

that is premised upon a disability.  A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue in a separate lawsuit any rights that he may have concerning his medical care, including any claims he may have under the Eighth Amendment.

Claimant was diagnosed as having glaucoma in March, 2003. Under the Settlement Agreement, Claimant carried the burden at the hearing to show that he was subjected to discrimination due to his vision problem during the time period that ended on August 27, 2003. Claimant has not done that. He has raised concerns about the quality of medical care that he has received, but the *Fitzgerald* decision precludes in this case any examination of the quality of that care. Since claimant has not established any discriminatory act on or before August 27, 2003, the claim cannot be sustained.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #3 has not been answered in the affirmative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of is denied, as Claimant Andrew Gallegos has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 1, 2007.**

SIGNED this 23rd day of July, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master

7