IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-261
Category III
Claimant: Richard Sandoval, #76150
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on April 27, 2007. The hearing was held at the Bent County Correctional Facility (BCCF) at Las Animas, Colorado. Present were the following: Claimant Richard Sandoval (Claimant) and Jennifer Fox, attorney for Defendants.

Claimant testified in his own behalf. Defendants submitted Exhibits A, B and D, and all were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim.

Claimant requested additional time in which to submit other exhibits and a closing argument. Claimant was granted up to including July 15, 2007 in which to submit exhibits and a closing argument. Nothing further has been submitted by Claimant. The Special Master will waive further argument in this case.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>     B. QUALIFIED INMATE
>     Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>     C. PERMANENT DISABILITY/IMPAIRMENT
>     A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

> The Settlement Agreement further provides, in part, as follows:
>
>     2. Permanent Hearing Impairments
>     Inmates who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning.
>     3. Permanent Vision Impairment
>     Inmates who are permanently blind or who have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses.
>     4. Permanent Diabetics: Insulin or Non Insulin Dependent Diabetic
>     Inmates who are diabetic and who are or are not dependent on insulin for regulation and require accessible housing to accommodate their disabilities.

*Settlement Agreement, Section V, Paragraph A*. These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>     2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>         1. Is the claimant a disabled individual who is a member of the class?
>         2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>         3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>         4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any

claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody in August, 1990. He was at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado for six months, He then was placed at the Arkansas Valley Correctional Facility (AVCF) for five years. He was transferred to a private prison in Texas, but returned to Colorado in 1997. He was placed at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado, where he remained for four years. Claimant then was transferred to BCCF in November, 2000.

As a matter of course, the Special Master checks the DOC Inmate Locator which is available on-line. Inmates are often moved, and it is important to send a copy of the final order to the right address. It appears that Claimant has been moved to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado.

In the initial claim form, Claimant only checked the box for diabetes. Claimant stated, in part, as follows in his initial claim form.

> I've got diabetic (sic) for the rest of my life.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was discriminated by refused to get some comfortable shoes, was told they are on a budget. The kitchen also refused to give me the proper diet and snacks, they are also on a budget.
>
> Having to wear boots and my feet are hurting at this time.

Claimant was sent a supplemental form to complete and return. In his supplemental form on diabetes, Claimant stated, in part, as follows:

> (A) The improper sizes of shoes, my shoe size is 5 ½ and 14 years they have been giving me size 6 ½.
> (B) The improper diet, meals are not adequate for a diet meals.

At the hearing, Claimant testified that he was claiming a mobility impairment, as well as diabetes.

Claimant testified that he was diagnosed as being diabetic in 2000 while at BCCF. Claimant testified further that he occasionally takes insulin. Originally, he was told he was not diabetic.

In his testimony, Claimant indicated that he has Addison's disease. He believes that he has diabetes. He has been eating a diabetic diet.

4

Claimant testified that he was discriminated against because of his diabetes. He stated that the food at BCCF was not very good and too much pasta was being served. He also stated that medicines were not given regularly. Claimant stated that he has significant emotional problems that have affected his life.

As to his mobility claim, Claimant stated that he had a mild stroke in 2005. He has a weakness as the result of his stroke on the left side of his body. He cannot run or walk very fast. He also has anxiety and arthritis.

On cross-examination, Claimant testified that he was told two months ago that he was not diabetic, but then was advised later that he was. He has trouble with his right ankle, as well as the left side of his body. He tries to exercise regularly. He has been told that he will need to reduce and then terminate the medicines that he is on.

In rebuttal to Defendants' exhibits, Claimant testified that he has a bad back that is arthritic. He had a second mattress, but that was taken by DOC staff. He has back problems and has been given a wedge pillow.

Defendants presented the affidavit of Dr. Orville Neufeld, D.O. In his affidavit, Dr. Neufeld states that Claimant was diagnosed as diabetic in July, 2001. He was placed on an oral medication and was encourage to exercise more, Claimant also had to undertake daily finger sticks and exercise.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003 and that he fell into the two claimed categories on or before that date.  He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be taken separately.

*Diabetes*: There is no question that Claimant was diagnosed as having diabetes in July, 2001. *Defendant's Exhibit A*. Claimant is part of the class as a diabetic, with that condition having existed on or before August 27, 2003.

*Mobility*: This part of the claim arose in 2005 after the stroke. In order to fall under the provisions of the Settlement Agreement, a claimant must have had a recognized disability on or before August 27, 2003. Claimant was diagnosed with diabetes, but the stroke had not yet occurred. Claimant is not part of the class as mobility impaired. He may pursue a separate lawsuit under the ADA and Rehabilitation Act if he believes he was discriminated against because of a mobility impairment that arose in 2005.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. A claimant must show that he was treated differently from a non-handicapped individual. There was no evidence presented at the hearing that any such discriminatory act took place before August 27, 2003.

Claimant has raised also some issues concerning his medical care while in DOC. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law.

Claimant made vague references in his papers to lack of comfortable shoes and not having the right meals. Claimant provided no specificity concerning these allegations. He also alleged that he had not received his medications at some points, but that also was extremely vague. Stated directly, Claimant simply did not prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Richard Sandoval is dismissed, as Claimant has failed to prove each of the four questions set forth by Judges Nottingham and Kane and that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act after August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 1, 2007.**

SIGNED this 23rd day of July, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master