IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-193 (formerly 02-166)
Category III
Claimant: Luis Raphael Echemendia Diaz, #84886
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO. 81215-1010

---

# FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on June 29, 2006. Present were the following: Luis Echemendia Diaz, Claimant; Cruz Caballero, translator for Claimant[1]; Brooke Meyer, from the Office of the Attorney General, counsel for Defendants; Dr. Orville Neufeld, witness for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Orville Neufeld. Exhibits 1 through 8 and A through C were offered into evidence. Attached as part of this order is a comprehensive Appendix of Exhibits listing each exhibit admitted into evidence and each exhibit not admitted into evidence. At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was

---

[1] Mr. Caballero is a case manager at CTCF and is proficient in both English and in Spanish. Since Claimant has little comprehension of the English language, Mr. Caballero was brought in to translate. At the commencement of the hearing, Mr. Caballero was placed under oath as a translator.

1

brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates

2

with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Diaz submitted a claim that was assigned claim number 02-166. The claim is premised on an alleged hearing disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. On February 13, 2006, Special Master Richard M. Borchers reassigned Mr. Diaz's claim to Category III, at which time it was also assigned a new claim number 03-193.

3

4.  Claimant Diaz entered CDOC custody in 1994. He has been housed at approximately a dozen different facilities. From January 28, 2003 until May of 2005, he was housed at the Limon Correctional Facility (LCF). He was housed at the Kit Carson Correctional Center (KCCC) from May of 2005 to October of 2005. Since October of 2005, he has been housed at the Colorado Territorial Correctional Facility (CTCF).

5.  Claimant has suffered from hearing loss since at least 1994. He has worn a hearing aid in his right ear since 1999. Claimant Diaz asserts that he has no hearing in his left ear and that he can only hear with his right ear when using a hearing aid. Diaz does not use sign language but states that he does lip read on occasion. He has had other medical problems while in CDOC custody, for which he contends that he did not receive proper medical attention. In December of 2005, he suffered a heart attack and underwent bypass surgery. However, Diaz indicates that since he returned from the hospital after his surgery, he has received better medical care, including heart monitoring and blood testing.

5.  As testified to by Dr. Neufeld, Claimant's medical records show that he has significant hearing loss in his left ear but that the hearing loss in his right ear is not as severe. Hearing tests that he has taken reveal that the hearing in his right ear has been stable and is almost within normal conversation range without the assistance of a hearing aid.

6.  Claimant Diaz does not assert that he has been prevented from utilizing facilities, receiving services or participating in programs due to his disability. He has had various jobs, including maintenance, television repair and janitorial. Diaz refused to participate in GED classes.

7.  Diaz asserts that in May of 2003, while at LCF, he was charged with a disciplinary violation for providing incorrect information as to where he was living while he was working in the kitchen. Two other Hispanics were working with him in the kitchen at the time of the incident but he was the only one found guilty during the disciplinary proceeding; and he was the only one that received any punishment. Diaz states that during the hearing, he was having trouble hearing over the noise of a fan. The hearing officer, Lt. Samu, allegedly accused Diaz of making fun of the hearing process and, as a result, found him guilty of the charge against him and gave him 40 days of punitive segregation.

8.  Diaz complains of another disciplinary conviction in February 7, 2004, in which he was charged with failing to comply with an order by a prison guard to display his identification. Again, Lt. Samu was the hearing officer. Lt. Samu allegedly told Diaz that Samu knew Diaz was going to make fun of the hearing process and ultimately found Diaz guilty and imposed a loss of privileges for 60 days.

9.  Finally, Diaz testified that ever since attorneys started to come to CTCF in connection with the *Montez* case, he has suffered discrimination by staff in the form of a

4

write up for having an altered lamp and confiscation of his property, including pens, a sewing needle, the altered lamp, a pair of glasses and a safety strap for his glasses.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant Diaz does not suffer from a permanent hearing disability within the meaning of the Remedial Plan. The evidence establishes that he is not deaf. Further, he is not required to rely on written communication, lip reading or signing. The medical records show that Diaz's residual hearing with a hearing aid enables him to communicate effectively and to hear an

emergency warning. Finally, during the June 29, 2006 hearing on his claim, Claimant Diaz exhibited no difficulty in hearing the Special Master and the testimony of Dr. Neufeld or in communicating with the translator, Mr. Caballero.

      3. Even if Claimant Diaz is deemed to have a permanent hearing disability within the meaning of the Remedial Plan, he has not established that he has been discriminated against because of his disability. Diaz makes no claim that he has been denied the opportunity to utilize facilities or to participate in programs and services because of his alleged hearing loss. His sole contention in support of his *Montez* disability discrimination claim relates to punitive discipline that he received. He claims the disciplinary hearings were tainted because the hearing officer discriminated against him due to his hearing loss. It is questionable whether such claims can even be pursued under the ADA until and unless his disciplinary convictions are overturned. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Daniel v. Fields*, 1995 WL 539008 at fn. 2 (10th Cir. 1995)(unpublished); *Deatherage v. Stice*, Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished). However, even if the *Heck* doctrine is inapplicable to prisoner ADA claims, the Special Master finds and concludes that the evidence is insufficient to sustain Diaz' contention that the discipline he received was directly or indirectly related to his hearing loss.

      4. Claimant also contends that he has not received proper medical treatment. However, there is no evidence tying his claim of inadequate medical treatment to his alleged hearing disability. Furthermore, evidence relating substandard medical care, lack of medical care and/or failure of the CDOC properly to treat or to provide proper medication for Claimant's medical conditions does not establish a violation of the ADA or the Rehabilitation Act. While such actions or failures to act may give rise to claims for deliberate indifference to medical needs, the courts have held that substandard medical care or failure to properly treat a medical condition or disability does not constitute discrimination because of a disability, within the meaning of either the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corporation*, 403 F.3d 1134, 1144 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

      5. Additionally, the Special Master notes that several of the events which Claimant relies upon in support of his claim occurred after August 27, 2003. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003.

      6. Finally, Claimant's assertion that he has been retaliated against because of his *Montez* claim is not cognizable by the Special Master pursuant to paragraph XXXII of the Remedial Plan. Such a claim must be pursued in an independent legal action.

## IV. ORDER

IT IS HEREBY ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Diaz's claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before October 3, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 3rd day of August, 2007.

> BY THE COURT:
>
> /s/ Bruce D. Pringle
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 3rd day of August to the following:

Mr. Luis Raphael Echemendia Diaz, #84886
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Ms. Brooke Meyer
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-193 (formerly 02-166)
Category III
Claimant: Luis Raphael Echemendia Diaz, #84886
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO. 81215-1010

---

## APPENDIX OF EXHIBITS

---

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

| | | |
|---|---|---|
| EXHIBIT 1: | 2 pages | Offender Profile for Luis R. Echemediadiaz, 06/13/2006. |
| EXHIBIT 2: | 1 page | State of Colorado Department of Corrections Notice of Charges at LCF for Luis R Echemendiadiza, case #031340. |
| EXHIBIT 3: | 1 page | State of Colorado Department of Corrections Disposition of Charges at LCF for Luis R Echemendiadiza, case #031340. |
| EXHIBIT 4: | 1 page | State of Colorado Department of Corrections Notice of Charges at LCF for Luis R Echemendiadiaz, case #031651. |
| EXHIBIT 5: | 1 page | State of Colorado Department of Corrections Disposition of Charges at LCF for Luis R Echemendiadiaz, case #031651. |
| EXHIBIT 6: | 1 page | State of Colorado Department of Corrections Notice of Charges at LCF for Luis R Echemendiadiaz, case #041152. |

| | | |
|---|---|---|
| EXHIBIT 7: | 1 page | State of Colorado Department of Corrections Disposition of Charges at LCF for Luis R Echemendiadiaz, case #041152. |
| EXHIBIT 8: | 1 page | State of Colorado Department of Corrections Offender Appeal Form, Case #041152 for Luis Echemendia-Diaz. |
| EXHIBIT A: | 9 pages | Audiometric Case History and Test – Form III and Supporting documentation for Luis Echemendiadiaz. |
| EXHIBIT B: | 8 pages | Audiology & Hearing Aid Services, Madison Hospital for Luis, dated 4-23-96 and supporting documentation. |
| EXHIBIT C: | 1 page | Audiometric Case History and Test, Pueblo Hearing Center, Inc. for Luis Echemendiadiaz, 7-8-99. |