IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-208
Category II
Claimant: Francisco R. Flores, #56923
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Francisco R. Flores. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101* and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.  General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Settlement Agreement provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant Flores submitted a claim which was assigned claim number 02-208. The claim is premised on an alleged mobility disability and alleged disability due to diabetes.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Flores entered CDOC custody in September 2001. While the record does not specify the facilities in which he has been housed, it appears that for all or part of his CDOC custody, Claimant has been housed at the Limon Correctional Facility (LCF), the Kit Carson Correctional Center (KCCC), the Colorado Territorial Correctional Facility (CTCF) and the Freemont Correctional Facility (FCF).

4. Claimant has been diagnosed as having a recurrent disc herniation. Although he previously had back surgery, he indicates that the surgery left him with nerve damage and chronic pain. He suffers from pain in his lower back, as well as pain, discomfort and numbness in his left leg and right buttocks region. He states that he is only able to engage in limited physical exercise and cannot take long walks. Claimant also suffers from diabetes.

5.  Claimant Flores asserts that he has been denied proper medical care and treatment for his back problems and for his diabetes. Specifically, he contends that the medications provided for his back and leg pain only gives limited and temporary relief. He indicates that he has been denied medical shoes, a bottom bunk-bottom tier restriction and an egg shell mattress. Regarding his diabetes, Claimant complains that he has not been given an adequate and appropriate diet and has been denied necessary medical monitoring. Claimant also contends that the recreation area does not provide proper access and that parts of the recreation area are unpaved and sloping, creating a risk of injury. Finally, he contends that his mobility impairment renders him unable to perform various tasks or comply with various instructions. As a result, Claimant states that he is subjected to continuous harassment by security personnel.

6.  Claimant's records confirm that he has back problems and diabetes. His back and leg pain has been treated with pain medication and a TENS Unit. It appears that additional surgery has been considered but has been deferred in favor of a trial of more conservative care. He has been provided with a wedge pillow and a back brace. Claimant has also received various medical restrictions, including no lifting over 20 pounds, no sitting or standing over 20 minutes, no bending or squatting, no intense labor, no heavy machinery and lower bunk. The lower bunk restriction was denied to Flores until August of 2003. The medical records also show that Claimant has been provided with a diabetic diet, medication for his diabetes and at least some medical monitoring in the form of finger sticks and eye examinations.

7.  Claimant's records show that he has applied for various jobs while in CDOC custody. His application for a position in food service was denied because of his medical restrictions. Other positions were not available to him because of his disciplinary record. He recently received a job as a porter. The records also indicate that Claimant has completed several courses including janitorial courses, basic electronics and an anger management program.

8.  The records provided to the Special Master shed some light upon the impact of Claimant's diabetes, back and leg problems on his mobility. An ambulatory health record of 1/28/05 indicates that Claimant was alert and oriented and that his gait was even. Likewise, an ambulatory health record dated 5/10/05 notes that Claimant's gait was even. On 4/26/05, an ambulatory health record discusses an examination performed in connection with Claimant's request for a cane. It states that Claimant had equal muscle strength in both legs and that he walked 50 feet down the hallway and 50 feet back with no evidence of imbalance. A medical record dated 2/14/02 notes that Claimant suffered an injury while playing basketball.

### III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

Based on the evidence presented, the Special Master finds and concludes that Claimant Flores has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent mobility impairment that substantially limits his ability to engage in a major life activity. To be sure, his medical records reveal that he does have a recurrent herniated disk and nerve damage from a prior surgery. It is also uncontroverted that he cannot walk long distances or stand for more than 20 minutes at a time. However, the United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999). Claimant himself merely states that he cannot walk long distances. The fact that Claimant cannot walk or stand for long periods of time without pain is insufficient to demonstrate a substantial limitation on the major life activity of walking. *See, e.g., Penny v. United Parcel Serv.*, 128 F.2d 408 (6th Cir. 1997); *Rosa v. Brink's, Inc.*, 103 F. Supp. 2d 287 (S.D.N.Y. 2000); *Piascyk v. New*

*Haven*, 64 F. Supp. 2d 19 (D. Conn. 1999); *Puoci v. City of Chicago*, 81 F. Supp. 2d 893 (N.D. Ill. 2000); *Williamson v. Hartmann Luggage Co.*, 34 F. Supp. 2d 1056 (M.D. Tenn. 1998); *Banks v. Hit or Miss, Inc.*, 996 F. Supp. 802 (N.D. Ill. 1998).

The Special Master also finds and concludes that Claimant has failed to demonstrate that his diabetes substantially limits his ability to engage in any major life activity. Claimant's diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd*, 170 F.3d 188 (11th Cir. 1999). Claimant presented no evidence as to how his diabetes affected his ability to engage in major life activities. However, the records provided to the Special Master show that Claimant is able to walk, work and attend classes.

3.  Essentially, Claimant's claim boils down to a dispute between Claimant and his medical providers over the proper treatment of his back and leg problems and his diabetes. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

4.  Because Claimant has failed to prove by a preponderance of the evidence that he has a permanent mobility impairment that substantially limits his ability to engage in one or more major life activities or that his diabetes substantially limits his ability to engage in one or more major life activities, his claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant Flores dismissing his *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 23, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 23rd day of July, 2007.

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 23rd day of July, 2007 to the following:

Mr. Francisco R. Flores, #56923
CCCF
6564 State Highway 96
Olney Springs, CO 81062-8700

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter