IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-498
Category II
Claimant: Robert Taylor, #63743
Address of Claimant: 5900 W. 62nd Ave., Arvada, CO 80003

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert Taylor. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Robert Taylor submitted a claim which was assigned claim number 02-498. The claim is premised on an alleged permanent vision disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant was in CDOC custody from March of 1995 until May 19, 2003. He reentered CDOC custody in February of 2004 and was released in July of 2006. Although the record does not specifically identify each of the institutions in which Claimant was housed, it appears that during part or all of his CDOC custody he was housed at the Limon Correctional Facility (LCF) and the Centennial Correctional Facility (CCF).

4. Claimant asserts that he has a permanent vision disability. He states that he is essentially blind in his left eye since he was in grade school, and suffers from blurred vision, an inability to distinguish detail, impaired depth perception and frequent headaches. He indicates that glasses help to some extent. Claimant asserts that he cannot read for any length of time and cannot use a computer. He also states that without his glasses, he cannot see well enough to sign any type of document or write letters.

5.    Claimant Taylor asserts that in 1996, he was given a misconduct report for refusing to work at an assignment that required him to operate a sewing machine. He states that he refused the assignment because his vision impairment made it unsafe for him to perform the work. As a result of the misconduct report, disciplinary proceedings were initiated and, after a hearing, Claimant was found guilty of the charge. Claimant complains that he received punishment consisting of 90 days of punitive segregation, loss of 20 days of good time and was precluded from participating in recreation and educational programs. Claimant contends that the punishment imposed for his refusal to work constitutes discrimination because of his alleged vision disability.

6.    Claimant's medical records confirm that he is essentially blind in his left eye. His corrected visual acuity in his right eye is 20/20. The records provided to the Special Master also confirm that he received punitive discipline for refusing to work.

### III. CONCLUSIONS OF LAW

1.    The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.    The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities, thus rendering the impairment a "disability," under the ADA and/or Rehabilitation Act.

The threshold question presented by Mr. Taylor's claim is whether his monocular vision constitutes a permanent vision impairment that substantially limits his ability to engage in one or more major life activities. On the one hand, if the answer to this question is in the negative, his claim must fail. On the other hand, if the answer to the query is in the affirmative, then further analysis is required to determine whether he is "qualified," and whether he has been discriminated against by CDOC because of his disability.

While Claimant is essentially blind in his left eye, his corrected visual acuity in the right eye is 20/20. The evidence shows that Claimant has been provided with corrective lenses by CDOC. The United States Supreme Court has clearly established that such corrective measures must be taken into account in determining whether a disability exists. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). Thus it is only Claimant's corrected visual acuity that is relevant.

Of course, the fact that Claimant has some impairment relating to his vision is insufficient to establish that he is disabled. It is the impact of the impairment on Claimant's ability to perform major life activities that is determinative of this issue. The impact must consist of a substantial limitation on the ability to engage in a major life activity in order to rise to the level of a disability under the ADA or the Rehabilitation Act. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555 (1999).

Claimant acknowledges that he can see. He states that he cannot read for long periods of time, that he cannot use a computer and that he has impaired peripheral vision. The Special Master finds and concludes that while Claimant clearly has a vision impairment, he has failed to present sufficient evidence showing that the impairment results in a substantial enough limitation on his ability to perform major life activities to be deemed a disability within the meaning of the ADA and/or the Rehabilitation Act. The ADA case law dealing with individuals who have monocular vision that does not substantially impair their ability to engage in major life activities supports this conclusion. *E.g., Sherman v. Peters*, 110 F. Supp. 2d 194 (W.D.N.Y. 2000); *Pacella v. Tufts Univ. Sch. of Dental Med.*, 66 F. Supp. 2d 234 (D. Mass. 1999).

3.    Even if Claimant is deemed to have a vision disability, the Special Master finds and concludes that he has failed to demonstrate that he was discriminated against because of his disability. His entire Claim is premised on the disciplinary conviction and resulting punishment that he received in 1996 for refusing to work. No evidence has been presented that the disciplinary conviction has been reversed or vacated. Without such evidence, ADA claims premised on an alleged wrongful CPOD conviction cannot be pursued. *See Heck v. Humphrey,* 512 U.S. 477 (1994); *Daniel v. Fields,* 1995 WL 539008 at fn. 2 (10th Cir. 1995)(unpublished); *Deatherage v. Stice,* Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished).

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Taylor's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 23, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 23rd day of July, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 23rd day of July, 2007 to the following:

Mr. Robert Taylor, #63743
5900 W. 62nd Ave.
Arvada, CO 80003

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter