IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-504
Category II
Claimant: Marvin Eddings, #64890
Address of Claimant: c/o James Bunting, 554 Blossom Field Rd., Fountain, CO 80817

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Marvin Eddings. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.  General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Marvin Eddings submitted a claim which was assigned claim number 02-504. The claim is premised on an alleged permanent mobility disability. Originally, Claimant also asserted that he had a permanent vision disability but his vision claim has been withdrawn.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant was in CDOC custody from August of 1997 until November of 2001. He reentered CDOC custody in May of 2002 and was released in September of 2004. Although the record does not specifically identify each of the institutions in which Claimant was housed, it appears that during part or all of his CDOC custody, he was housed at the Limon Correctional Facility (LCF) and the Centennial Correctional Facility (CCF).

4. Claimant has a long history of back pain. In 1999 he underwent a right L5-S1 diskectomy. Subsequent to this surgery, Claimant has continuously complained of severe back pain and has been seen by CDOC medical providers on numerous occasions regarding these complaints. He states that his back pain prevents him from walking long

3

distances. He also indicates that he can't sit, stand or lie down for more than an hour or two. His legs twitch and cramp on a regular basis.

5. Claimant Taylor asserts that his back pain has been worse since he underwent surgery and that CDOC has failed and refused to provide him with proper medical treatment and proper medications. Beyond his complaints relating to medical care, Claimant asserts that CDOC refused to provide him with a job unless he agreed to have his medical restrictions removed from his record. As a result, he states that he remained unassigned and did not receive the same privileges as assigned inmates. He also contends that he did not have rails to help him get into and out of his bunk; that he fell while walking to the med-line because he was housed too far away; and that he was required to climb four or more steps in order to get his meals or to use the phone. Claimant also contends that CDOC personnel took away his tennis shoes that had been approved by his medical providers.

6. Claimant's medical records confirm that Claimant has lower back problems and that he has complained of back pain consistently since his 1999 surgery. However, the objective medical findings indicate only minimal to moderate abnormalities. For example, a March 2000 report indicated that Claimant had small disc bulges at L1-2 and L4-5 resulting in no significant spinal or foraminal stenosis. An April 6, 2001 report stated that Claimant had normal strength through the lower extremities; that his muscle tone was normal; and that no atrophy or fasciculations were appreciated. It also noted minimal evidence of residual radiculopathy. A March 2003 medical report regarding the results of an X-ray showed degenerative disk and facet arthropathy but normal alignment of vertebral bodies. The medical records also noted that Claimant was able to walk well with the assistance of a cane. Thus, an October 2001 report stated that Claimant was ambulating easily with a cane. During a 2003 examination, Claimant reported that walking helped ease the pain. A 2004 medical report noted that Claimant was ambulatory; and a February 2006 report stated that Claimant's gait was normal.

7. The records provided to the Special Master show that Claimant has medical restrictions precluding vigorous exercise, bending, intensive labor, heavy lifting, squatting, climbing stairs and prolonged standing. He had a lower tier-lower bunk restriction but in 2003, he requested that the lower tier restriction be lifted. Claimant states that he made the request for removal of his lower tier restriction because it was necessary to do so in order to get a job. The records also reveal that Claimant was employed in 2000 and 2001 in various jobs, including a Para Pro in the law library, and a pod porter. He quit working as a pod porter due to his medical release and was placed on light duty. He did complete vocational janitorial level I and II courses in 2000.

8. The records do support Claimant's contention that he was denied tennis shoes although his medical providers considered them appropriate. There is nothing in the records provided to the Special Master that Claimant ever requested railings for his bunk or that he requested reassigned housing that was closer to the med-line and would not require him to use stairs to access the med-line or the phone.

## III. CONCLUSIONS OF LAW

1.      The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.      The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities, thus rendering the impairment a "disability," under the ADA and/or Rehabilitation Act.

The threshold question presented by Mr. Eddings' claim is whether his mobility impairment substantially limits his ability to engage in one or more major life activities. On the one hand, if the answer to this question is in the negative, his claim must fail. On the other hand, if the answer to the query is in the affirmative, then further analysis is required to determine whether he is "qualified," and whether he has been discriminated against by CDOC because of his disability.

The Special Master finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent lower mobility impairment that substantially limits his ability to engage in one or more major life activities. It is clear that Claimant suffers from significant lower back pain, and that his medical records show degenerative disk disease and facet arthropathy. However Claimant's diagnosis of lower back pain and degenerative changes in his lower back by themselves are insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd*, 170 F.3d 188 (11th Cir. 1999). Rather, Claimant must present evidence establishing that these problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg, supra.*

Claimant's medical records reflect that he can ambulate normally with a cane, and that he has been provided with a cane by CDOC. While Claimant asserts that he cannot walk long distances or for long periods of time, the Special Master finds and concludes that this is insufficient to demonstrate a **substantial limitation** on the major life activity of walking. Both the case law and regulations dealing with this issue have concluded that diseases, injuries and conditions which result in moderate restrictions on one's ability to walk, stand, sit and climb stairs do not qualify as substantial limitations on a major life activity. *E.g., Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir. 1999); *Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996); *Stewart v. Weast*, 228 F. Supp. 2d 660 (D. Md. 2002); 29 C.F.R. § 1630.2(j)(2).

Additionally, while Claimant does have several medical restrictions, the evidence does not establish that Claimant is substantially limited in his ability to work. Indeed, Claimant himself asserts that he can work and had his lower tier restriction removed so that he could more easily obtain a job.

3. Even if Claimant is deemed to have a permanent lower mobility disability, he has failed to show that he was discriminated against because of his disability. His complaints regarding inappropriate medical care and failure to provide proper medications do not give rise to a claim under the ADA or the Rehabilitation Act. This has been confirmed both by our Circuit and others. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

Furthermore, although Claimant contends that he was denied accommodations of a more conveniently located housing and railings for his bunk, there is no evidence in the record suggesting that any accommodations were ever requested. Absent evidence that CDOC was made aware of the need for these accommodations, Claimant's ADA and/or Rehabilitation Act claims fail. *Cannice v. Norwest Bank Iowa, N.A.*, 189 F.3d 723 (8th Cir. 1999). Likewise, although Claimant asserts that CDOC should have found him a job that was consistent with his medical restrictions, he offers no evidence regarding what jobs were available that his medical restrictions would have allowed him to perform.

Because Claimant Eddings has failed to establish by a preponderance of the evidence that he suffers from a permanent mobility impairment that substantially limits his ability to engage in one or more major life activities, his claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Eddings' claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 23, 2007** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 23rd day of July, 2007.

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 23rd day of July, 2007 to the following:

Mr. Marvin Eddings, #64890
c/o James Bunting
554 Blossom Field Rd.
Fountain, CO 80817

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter
_____
Susan L. Carter