IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-138 (formerly X-097)
Category: III
Claimant: Kevin Mark Bretz, #46584
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Kevin Mark Bretz.. This Hearing was held at Colorado State Penitentiary on February 1, 2006 before Richard C. Davidson, Special Master. Present were the following: Claimant, *pro se*; Mr. Jess Dance, Esq. from the Office of the Attorney General for Defendants. Testimony for Claimant was received from the following: Claimant, Steven Gardner, Junie Trevino, Johnny Reyes, David Doxtater and Duane Raymond, all employees of CDOC. Testimony for Defendants was received from the following: Orville G. Neufeld, D.O., Cathie Holst. The Special Master has reviewed the testimony and all documents filed by both sides. An Appendix of Exhibits is attached to the back of this claim. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major

2

life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six
months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

> 2.  The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1.  Is the claimant a disabled individual who is a member of the class?
>> 2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.      Claimant Kevin Mark Bretz submitted a claim which was assigned claim number 03-138.  The claim is premised on claims of permanent mobility disability, hearing and vision disabilities

2.      Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3.      Claimant Bretz first entered CDOC custody in 1980.  He was paroled but brought back into custody in 1990. Claimant has been housed at BVCF, RCC, LCF, CCF, CTCF, AVCF, Montana, SCF and CSP.

4.      Claimant was injured in 1983 in an accident at Rifle Honor Camp.  He apparently suffered herniated discs at L4 and L5.  He also suffers from degenerative disc disease and from a congenital spinal stenosis.  He has severe spinal stenosis at L4-5 and

moderate spinal stenosis at L5-S1. As early as 1999, surgery had been recommended but evidently Claimant refused to have the required preliminary work up according to an Ambulatory Health Record dated August 31, 1999. It appears that surgery had later been approved but not performed. Claimant was diagnosed with right ankle problems in 2001. As a result, high top boots with a brace were issued. A back brace, pain medications, a cane and the use of a wheelchair were recommended by Dr. Lilly on 2001. These items were subsequently furnished to Claimant. He was put on restrictions by Dr. Bugglewicz in 2001.

5.      Claimant was sent to Montana on an interstate compact move in February 2002. He was returned to CDOC in July 2004. He returned with his back brace, ankle brace, and knee brace, special high top boots, shoes, and a cane, issued to him earlier by CDOC. Upon his return these were confiscated and he was put into a wheelchair. He was put on permanent lower bunk restriction as well as other restrictions on activities on April 9, 2005 in a Progress Assessment Summary.

6.      Interestingly, a second Progress Assessment Summary also dated April 9, 2005 and almost identical to the first, omits all restrictions and changes his Medical/Dental rating from 4/2, 4/2 to 3/2, 3/2. It appears that the first version was printed April 9, 2005, the date of the Summary while the second was printed July 27, 2005, shortly before Claimant was transferred to CSP. It also appears that despite medical records documenting his medical problems going back to 1999, these suddenly became meaningless in 2005 when his restrictions were removed, his surgery was cancelled and his pain medications terminated. This raises serious questions in the mind of the Special Master as to the authenticity of documents provided by CDOC, the medical care provided to Mr. Bretz, and as to the motivation for transferring Claimant to CSP.

7.      On June 22, 2005, Claimant was being brought to CSP in a CDOC bus. He was shackled and chained. Upon his return he had difficulty exiting the bus because of his medical condition, fell to the ground and injured his left foot and ankle. He claims the medical care for this injury was inadequate and that he continues to have pain. Claimant also claims he was not provided proper footwear after his special boots and shoes were confiscated and that he has had to go barefoot or wear shower shoes because of CDOC neglect. In fact the property inventory sheet prepared on June 6, 2005 does not list any shoes other than shower shoes in Claimant's possession.

8.      Mr. Bretz also claims to be hearing disabled and vision impaired. Unfortunately, the medical records have not been furnished for the Special Master to review and without these records, no definitive conclusion can be reached. The Special Master will dismiss these claims with no ruling as to their merits.

## III. CONCLUSIONS OF LAW

1.     The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.     The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3.     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.     Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.     It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6.     The Special Master finds and concludes that Claimant Bretz is a mobility disabled person under the terms of the remedial plan and has been disabled for many years. It is apparent that CDOC also considers him disabled since he was provided special boots, shoes, braces and a cane by CDOC to deal with his right ankle problem. Unfortunately, these shoes, boots, braces, and cane were taken from him when he returned from Montana and never returned. Instead, he was allowed to use a wheelchair, further evidence of his disability. Claimant also has a severe back problem which further limits his mobility. These facts demonstrate substantial limitations on the major life activities of walking and being able to utilize the facilities of the institution. Claimant was further injured on June 22, 2005 when he fell from a CDOC bus injuring his left foot and ankle. This caused further mobility limitations.

7.     The Special Master dismisses the claims of hearing and vision disability. It is intended that Mr. Bretz not be prejudiced in bringing these matters in another proceeding should this be desired.

8.     The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by CDOC except during those times he was in Administrative Segregation. It must be emphasized, however, that <u>Claimant was always qualified to receive the medical benefits and services he needed, whether in segregation or not.</u>

9.     Of course, the key issue is whether Claimant was discriminated against by DOC because of his mobility disability. Claimant Bretz has stated that the taking of his previously issued special boots, shoes, braces, and cane had a substantial impact on his ability to utilize the services provided by the facility and his ability to walk. Defendant has offered no explanation as to the reasons for taking the boots and other medical items and refusing to return them. Not only were these items taken, but Claimant was not even given replacement footwear. Consequently, the Special Master concludes that Claimant has been discriminated against by being deprived of the special accommodations, restrictions, and medical equipment previously provided to him by CDOC and then having the accommodations, restrictions, and medical equipment taken away by CDOC. Claimant has also suffered from CDOC discrimination by having his records altered, his surgery cancelled and his pain medications terminated when the medical records clearly show the existence of serious medical problems. Such conduct is outrageous and inexcusable. It appears that one reason for this may have been to send Claimant to CSP and remove him from SCF.

10.     While the Claimant presented no evidence as to the monetary amount of his damages, it is clear that to prevent ongoing discrimination, something must be done. It is clear to the Special Master that Mr. Bretz is not a model inmate. However, there is

absolutely no excuse to deny needed medical care to him.  Mr. Bretz is in the custody of the state.  He is unable to provide his own medical care and CDOC is charged with the responsibility to provide reasonable medical care.  In this case, this has not been done.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Bretz and against Defendants ordering CDOC to provide proper medical care to Claimant.  Because of the unique circumstances of this case, CDOC is ordered to send Mr. Bretz to outside orthopedic and neurosurgery specialists for examination and to promptly treat Mr. Bretz as the specialists direct.  The examination shall include his back, leg and ankle conditions.

IT IS FURTHER ORDERED that Claimant shall be awarded the sum of $1,500.00 as compensation for his maltreatment.

IT IS FURTHER ORDERED that Claimant be moved to a facility where he can receive care and where his restrictions can be accommodated.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 23, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 23rd day of July, 2007.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 23rd day of July, 2007 to the following:

Mr. Kevin Mark Bretz, #46584
CSP
P.O. Box 777
Canon City, CO 81215-0777

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Ms. Paula Greisen
Counsel for the Class
King & Greisen, LLP
1670 York St.
Denver, CO 80206

/s/ Susan L. Carter

Susan L. Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

_____

Claim Number 03-138 (formerly X-097)
Category: III
Claimant: Kevin Mark Bretz, #46584
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

_____

## APPENDIX OF EXHIBITS

_____

The following is a list of Exhibits introduced by CLAIMANT and ADMITTED into evidence in the above referenced claim:

EXHIBIT A: 1 page     Health South Lumbar Spine MRI result for Kevin Bretz, dated 6/08/01.

EXHIBIT B: 1 envelope     Letter to Dr. Wermer from Kevin M. Bretz.

EXHIBIT C: 1 page     CDOC letter from Barry J. Pardus to Kevin Bretz dated December 21, 2005.

EXHIBIT D: 3 pages and 1 envelope     Letter to Medical Director from Kevin Bretz. Mailed November 18, 2005.

EXHIBIT E: 3 pages     Letter to Kevin Bretz from Barry J. Pardus dated November 17, 2005 and including enclosures.

EXHIBIT F: 1 page     CDOC letter to Kevin Bretz from Marlene Bowers dated September 22, 2005.

EXHIBIT G:  6 pages          Diabetic meal tickets for Kevin Bretz.

EXHIBIT H:  1 page           CDOC Offender Grievance form, Step 1 for Kevin Bretz dated 6-20-05.

EXHIBIT I:  1 page            CDOC Offender Grievance form, Step 1 for Kevin Bretz dated 6-28-05.

EXHIBIT J:  1 page            CDOC letter from Lt. G. Vendetti to K. Bretz dated November 21, 2005 concerning Religious Diet.

EXHIBIT K:  1 page           Request for Sick Call for Kevin Bretz dated 09/29/05.

EXHIBIT L:  1 page            Request for Sick Call for Kevin Bretz dated 11/28/05.

EXHIBIT M:  1 page         Request for Sick Call for Kevin Bretz dated 11/09/05.

EXHIBIT N:  1 page           Request for Sick Call for Kevin Bretz dated 11/09/05.

EXHIBIT 10:  1 tape          Video of Jan 27, 06 showing Claimant walking a distance less than 10-15 feet x 2 trips and the date changes to January 28, 06.[1]

---

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

EXHIBIT 1:  1 page           DOC Ambulatory Health Record for Kevin M Bretz, dated 07/20/2004

EXHIBIT 2:  1 page           CDOC Ambulatory Health Record for Kevin Bretz dated 21 Jun 94.

EXHIBIT 3:  1 page           CDOC Statement of Patient Leaving Against Advice Refusal of Treatment for Kevin Bretz dated 11-20-94.

EXHIBIT 4:  1 page           DOC Ambulatory Health Record for Kevin M Bretz, dated 08/07/2005.

EXHIBIT 5:  1 page           DOC Ambulatory Health Record for Kevin M Bretz, dated 06/22/2005.

---

[1] This was an internally kept video. The Special Master was never provided a hard copy. Additionally, the Claimant and Defendants do not have a copy and, in conformity with CDOC policy, the footage was deleted shortly thereafter. The video, however, had little impact on the resolution of the claim.

EXHIBIT 6:   1 page        DOC Ambulatory Health Record for Kevin M Bretz, dated 07/04/2005.

EXHIBIT 7:   1 page        CDOC letter to Kevin Bretz from Lynn Erickson, dated September 12, 2005.

EXHIBIT 8:   1 page        CDOC Offender Grievance Form, Step 1 for Kevin Mark Bretz, dated 06-28-05.

EXHIBIT 9:   1 page        CDOC Offender Grievance Form, Step 1 for Kevin Bretz dated 11-23-05.

EXHIBIT 11:  3 pages       Offender Profile for Kevin M Bretz dated 01/25/2006.

EXHIBIT 12:  1 page        DOC Ambulatory Health Record for Kevin M Bretz, dated 12/16/2005.

EXHIBIT 13:  1 page        Centennial Correctional Facility Informative / Incident Report for Kevin M Bretz dated 08/17/2004.

EXHIBIT 14:  1 page        DOC Ambulatory Health Record for Kevin M Bretz, dated 11/21/2005.

EXHIBIT 15:  1 page        DOC Ambulatory Health Record for Kevin M Bretz, dated 09/04/2005.

EXHIBIT 16:  1 page        CDOC Offender Grievance Form for Kevin M. Bretz, dated 10/28/04.

EXHIBIT 17:  1 page        CDOC Offender Grievance Form Step 1 for Kevin Mark Bretz, dated 7-12-05.

EXHIBIT 18:  1 page        CDOC Offender Grievance Form Step 1 for Kevin Bretz dated 11-23-05.

EXHIBIT 19:  1 page        CDOC Diagnostic Summary for Kevin Mark Bretz, dated 09/10/90.

EXHIBIT 20:  1 page        MSP Infirmary Progress Notes Nursing & Provider Incident Report for Kevin Bretz.

EXHIBIT 21:  11 pages      State of Colorado Department of Corrections Diagnostic Narrative Summary for Kevin M Bretz.