IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-281
Category III
Claimant: Alice Randle #83209
Address of Claimant: CWCF, P.O. Box 500, Canon City, CO. 81215-0500

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Alice Randle. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Randle submitted a claim on May 19, 2004, which was assigned claim number 02-381. The claim is premised on alleged permanent disability due to diabetes.

2. Claimant's claim was originally assigned to Category II pursuant to the Remedial Plan as set forth above. On July 7, 2006, Ms. Randle's claim was reassigned to Category III and renumbered to 03-281.

3. Claimant Carter entered CDOC custody in approximately February of 1995 and was released from CDOC custody in approximately December of 1995. She reentered CDOC custody in August of 2000. While in CDOC custody, Ms. Randle has been housed at DWCF and CWCF.

4. Claimant suffers from diabetes, which was diagnosed in 1993. She is insulin dependent. Ms. Randle testified that her diabetes is reasonably well controlled with insulin, and that he diabetes does not substantially limit her daily routine or her ability to engage in major life activities. She has no orders for special diet, but does have a lower bunk restriction. At one time, Ms. Randle had a restriction to refrain from heavy lifting due to a shoulder problem unrelated to her diabetes. Ms. Randle's diabetes does not affect her ability to work, walk, see, hear, read, write, or sleep.

5. During the time that she has been in CDOC custody, Claimant Randle has been employed as a cook, in computer refurbishing, knitting, and as a para-pro. She has taken vocational classes, including basic office education and maintenance training.

6. Claimant's primary complaint is that the CDOC discriminates against her because of her diabetes. She asserts that under the CDOC point system, she has at times been eligible to be transferred to Pueblo Minimum Center (PMC)(now La Vista Correctional Facility). She notes that PMC has better job opportunities with more pay and better educational programs. However, she has been told repeatedly that she cannot be transferred to PMC, even though she is otherwise qualified, because PMC has not facilities to house insulin dependent inmates.

7. Claimant Randle also asserts that she receives her fingersticks in the morning before breakfast. By the time she arrives at the dining hall, many of the breakfast choices are not longer available. Furthermore, she states that on occasion the inmate count at CWCF takes as long as 50 minutes to an hour, during which time the facility is in lock-down and inmates cannot use the restroom. This poses little problem for non-diabetic inmates. However, Ms. Randle takes water pills in connection with her diabetes, which makes long lock-down periods very uncomfortable for her.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical

4

disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to meet his burden of proving by a preponderance of the evidence that his diabetes constitutes a permanent disability under the ADA and/or the Rehabilitation Act. Claimant readily acknowledges that her diabetes does not substantially limit her ability to engage in any major life activity. The Special Master finds and concludes that Claimant's diabetes does not render her "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Claimant simply states that she has diabetes. Claimant's diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999). There is simply no competent evidence in the record that would allow the Special Master to find and conclude that Claimant's diabetes substantially limits her ability to care for oneself, perform manual tasks, walk, see, hear, speak, breath, learn or work. *See* 29 C.F.R. § 1630.2(h)(2)(i).

3. Claimant asserts that she suffers from discrimination based on her diabetes because she (a) cannot obtain a transfer to PMC where better paying jobs and additional educational opportunities are available; (b) is not able to enjoy the breakfast meal choices available to non-diabetic inmates; and (c) during count, she is often required to wait long periods of time to utilize the restroom. The Special Master assumes for purposes of this Final Order that Ms. Randle's description of her eligibility for transfer to a minimum security facility, her inability to enjoy the breakfast choices that might otherwise be available, and the problem posed to her by lengthy lock-downs for count are factually accurate. The Special Master finds and concludes, however, that even if Ms. Randle is discriminated against because of her diabetes, such discrimination in the context of her particular case is not actionable under the ADA, the Rehabilitation Act, or the Remedial Plan. The fact that an inmate has a particular disease, such as diabetes, does not, in itself, qualify him or her for protection under the ADA, the Rehabilitation Act, or the Remedial Plan. Rather, the inmate must demonstrate that the disease renders him or her disabled; that is, substantially limited in his or her ability to engage in one or more major life

activities. *See Branham v. Snow,* 392 F.3d 896 (7th Cir. 2004). As noted above, the uncontroverted evidence conclusively establishes that Ms. Randle's diabetes does not substantially limit her ability to engage in any major life activity.

Because Ms. Randle is not disabled within the meaning of the ADA, the Rehabilitation Act, or the Remedial Plan, her *Montez* Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Carter's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before October 8, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 17th day of August, 2007

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _____ day of August, 2007 to the following:

Ms. Alice Randle
# 83209
CWCF
P.O. Box 500
Canon City, CO 81215-0500


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203


                                                _____
                                                /s/ Susan L. Carter