Case 1:92-cv-00870-CMA-MEH   Document 2865   Filed 09/10/07   USDC Colorado   Page 1 of 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-387
Category III
Claimant: James W. Sibert, #58792
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

---

## FINAL ORDER OF SPECIAL MASTER
---

      THIS MATTER came before the Special Master for hearing on August 23, 2007. The hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Claimant James Sibert (Claimant) and Chris Alber, attorney for Defendants.

      Claimant testified in his own behalf. Claimant offered into evidence Exhibits #1 and 2, and both were admitted. Defendants presented as a witness Dr. Orville Neufeld, D.O. and offered into evidence Exhibits A through LL. All were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

2

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   >   1. Is the claimant a disabled individual who is a member of the class?
>   >   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   >   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   >   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody on August 1, 1988. He was evaluated at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He then was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He remained at AVCF for eight and one-half years. He was transferred to a private Texas facility for one year.

Upon Claimant's return to Colorado, he was placed at the Huerfano County Correctional Facility (HCCF) in Walsenburg, Colorado. He was at HCCF for over two years, He was briefly placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. DOC then placed Claimant at the Bent County Correctional Facility (BCCF) for 6 ½ years. He transferred to CCCF on January 22, 2007.

In the initial claim form, Claimant checked the boxes for mobility impaired, vision impaired, and diabetes. Claimant stated, in part, as follows in his initial claim form.

>   I became diabetic in the mid part of 2002. My vision was affected greatly, as I lost 50% of what vision I had. My feet, mainly my toes, are losing feeling and I have foot cramps a lot. In the mornings I can barely walk.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> Not having proper medical care and food.
>
> I can not do a lot. I used to like read books, my eyes hurt and my vision varies. Going outside to walk hurts too much, my feet and even with sunglasses my eyes hurt.

Claimant was sent supplemental forms to complete and return. In his supplemental form on diabetes, Claimant stated, in part, as follows:

> When I first found out I was diabetic, I told my family and believing it was hereditary, I asked who has ever had it. I was told no one. I have found out that diet and some times medication can bring on diabetes. Since I've been in prison for sixteen years something had to go wrong here.

In the supplemental form on mobility, Claimant stated as follows:

> I having more and more problems with my feet. My toes are hurting and going numb. My balance has been affected by this also.
>
> It is hard to get around. At night my feet are hurting so bad that sometimes I don't even go to dinner. I do not do outside to walk or play games because it hurt afterward.
>
> I have asked for proper fitting shoes, but was turned down.

In his supplemental form on vision impairment, Claimant stated, in part, as follows:

> My first problem with diabetes was my sight. I did not know this at the time. Overnight my vision got real bad. I put in to see the eye doctor and when he examined my eyes I was told I had loss about 50% of my vision from my last exam. He then explained what he thought it was. He asked if I have ever been tested for diabetes. I said no. My vision has even gotten worse since then. I find it hard to focus.

Claimant testified at the hearing that he began to experience problems with his vision in 2002. He was seen by an eye doctor who asked if he had every been checked for diabetes. He was placed on oral medications and insulin. Claimant stated further that he had recently been taken off of insulin and was able to maintain his blood/sugar levels through the oral medication and diet.

Claimant indicated at the hearing that he had lost one-half of his vision. He has received stronger glasses which are bifocals. He has had trouble with his feet after being diagnosed with

diabetes. He used to work as a clerk in the laundry but found that difficult to do because of being on his feet a lot and having to read.

When he was at BCCF, all diabetics were taken off of finger stick testing. Medications were still available but there was no testing for Type II diabetics. Claimant had to pay attention to his own body and regulate his intake of food based upon that. The facility would run out of medicines on occasion. He had to file grievances to get his medicine started again. Claimant also stated that he had been on a special diet for part of the time after his diagnosis with diabetes. He also was experiencing frequent leg cramps.

On cross-examination, Claimant testified that BCCF had run out of Glucophage on occasion. He would have to wait for the medication to come into the facility. When asked about seeking a job, Claimant stated that he does not apply anymore. He does work as a pod porter, but that takes only a few minutes per day. He does not exercise much because of his physical condition.

At the hearing, Defendants presented the testimony of Dr. Orville Neufeld, D.O. He is a physician who has been retained as a consultant by DOC. He testified that Claimant was diagnosed as having diabetes on September 10, 2002. The vision problems would be related to the diabetes. Since the diagnosis, Claimant has received medication and has been able to stabilize his blood/sugar levels. Dr. Neufeld testified that Claimant had complained about his feet tingling, but that DOC medical staff had not been able to determine what the problem is. On cross-examination, Dr. Neufeld indicated that there is no known cause of diabetes in about twenty-five percent of the individuals who have the disease.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each of the claimed disabilities will be taken separately.

**Diabetes:** Claimant was diagnosed as having diabetes in September, 2002. He was diabetic on August 27, 2003. Claimant is a member of the class as a diabetic.

**Mobility Impairment**: The ADA and Rehabilitation Act require proof that a major life activity has been affected by a disability. *42 U.S.C. §12102(2)*. In this case, Claimant has not proven that the problems with his feet have substantially limited a major life activity. Claimant has testified that he has pain and tingling, but he is able to walk and carry on other activities of daily life. Claimant has not proven that he is mobility impaired under the ADA and Rehabilitation Act. He is not part of the class as mobility impaired.

**Vision Impairment**: Claimant has experienced some vision problems as the result of his

5

diabetes. The testimony of Claimant indicates that his vision has deteriorated, but that he is able to see as the result of being provided stronger eyeglasses. Claimant has not established by a preponderance of the evidence that a major life activity has been substantially impaired as the result of his vision problems. *Id.* Claimant is not part of the class as vision impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must show that he was treated differently than a non-handicapped individual.

The evidence presented by Claimant fails to show any discrimination, with one exception. In response to the question about discrimination, Claimant stated in his claim form that he had was not receiving proper medical care or food. Claimant testified that he had concerns about medical care he had received. He believed the food was a possible cause of his diabetes, as it was not very healthy from his perspective.

The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of medical care provided by DOC staff to a claimant.

The Special Masters also have no power to oversee the day-to-day operation of prison facilities. Claimant's concerns about the quality of food provided to all inmates is not something over which the Special Masters have jurisdiction. The testimony presented by Claimant was that the food was not good for everyone, not just him. In other words, there was no showing of any discrimination based upon Claimant's diabetes.

The one exception that Claimant has established deals with a frequent issue that concerns the private prisons contracting with DOC. Claimant testified that while at BCCF the facility would run of his medications for diabetes. He had to put in kites and grievances to get the medicines restarted. He testified that he was concerned not having the medicines that had been prescribed for him.

Defendants' Exhibit LL reflects that Claimant was at BCCF from July 31, 2000 to January 11, 2007. There is no dispute that Claimant was diagnosed with diabetes on September 16, 2002. He was prescribed Glucophage and Indocin, as well as insulin. There is no evidence that Claimant did not take these medicines as directed by medical staff during the period of time he was at BCCF.

6

Unlike an individual in society, an inmate does not have the ability to go to a pharmacy to secure needed medicines. Inmates must rely on medical and prison staff to secure needed medications. In this case, it is unrefuted that Claimant went for several days without medications for his diabetes. He has to resort to filing grievances to get the medications that are clearly reflected as being prescribed. An individual who does no have diabetes does not have the worry of needing daily medications for his health. A diabetic must have medicine for his illness. As Dr. Neufeld testified, diabetes can be a progressive disease. It is unconscionable that a diabetic would have to go days without medication for his disease because a prison had run out of appropriate and prescribed drugs. This is discrimination in a direct form against Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant testified that he was concerned when he had to wait for his medications to be reordered and then provided to him. The fear of death or serious health issues for a diabetic is real. Claimant has proven his case, and he will be awarded $225.00 as damages for the time he had to wait for his medications for his diabetes.

IT IS HEREBY ORDERED that the claim of James W. Sibert is granted to the extent noted, and Claimant is awarded damages in the amount of $225.00; and

IT IS FURTHER ORDERED that the remainder of the claim of James W. Sibert is dismissed, as Claimant has failed to prove that he was the victim of any additional discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 12, 2007.**

SIGNED this 5th day of September, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master