IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N–343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-410
Category III
Claimant: Robert Lee Bellm, #87134
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on August 2, 2007. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Robert Lee Bellm (Claimant); and Jennifer Fox, attorney for Defendants.

Claimant presented the following witnesses at the hearing: Claimant; Sgt. Tiffany Ruiz; Sgt. Dennis Brewer; Donald Drew; Hormoz Pourat; Dave Rodriguez; Dr. Anita Bloor, M.D.; Lt. Ernestine Milles; Cathie Holst; and Dr. Cary Shames, D.O. Plaintiff offered into evidence Exhibits 1 through 14, and all were admitted. Defendants did not call any witnesses, but Defendants offered into evidence Exhibits A thru D. All were admitted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>
> hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August 8, 1995. He was placed at the Denver Reception and Diagnostic Center (DRDC) for approximately eight months. He then was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado where he remained for two years. Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado for one year.

After FCF, Claimant was placed into the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado. He remained at SCCF for one year and then went to the Limon Correctional Facility (LCF) in Limon, Colorado for two years. Finally, he was transferred to FLCF on October 15, 2002. He has been at FLCF ever since that date.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> The disability I have is caused by a disorder identified as "Morbid Obesity." I weight four hundred and fourteen pounds (414) I am 5 foot, 6 inch, 28 year old (DOB 9/19/75) male, with the waist line of 78 inches. Due to my size I must rely on a cane, and when going up/down stairs/ramps I am reliant on the aid of another

>  person for stabilization.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

>  I believe that I have been discriminated against by the Colorado Department of Corrections (CDOC), since my arrival in August, 1994, and transfer to the Fort Lyon Correctional Facility (FLCF) in October of 2002. I have been housed in over-crowded living quarters. The rooms at FLCF are very small. To maneuver around, exit/enter these rooms people within the room are required to move themselves and or property, so I can pass.
>  The bed which I am assigned to sleep in, is too small for my person .....The shower stalls are too small for me as well....The housing unit which I am housed in, Unit 4, FLCF, has an outside operational elevator for inmate use. However, I am not permitted to use this elevator. ....

Claimant was provided a supplemental form to complete. He did submit that form and indicated, in part, as follows:

>  I am a 28 year old male. I suffer from Morbid Obesity. I weigh 414 pounds, at 5 feet, 6 inches tall. Due to my size walking is very difficult, and rely on a cane and the aid of a Clinical Assistant.

Claimant indicated that he found it difficult to move and had essentially become bed ridden. He had requested help but had received little. Claimant submitted documentation later reflecting that he was on oxygen all the time due to the stress on his lungs and heart due to his physical size.

At the hearing, Claimant testified and presented several witnesses. In his own testimony, Claimant indicated that he has been dealing with excess weight all of his life. He has had difficulty walking because of his weight. He started oxygen when he was diagnosed as either having Chronic Obstructed Pulmonary Disease (COPD) or asthma. He also has been diagnosed as having degenerative joint disease (DJD) in his knees and has congestive heart problems.

Claimant testified that he has great difficulty getting around. He is in fear for his life. Medical staff have not been helpful, as all they say is that Claimant needs to lose weight. He was on a weight loss program, but it involved the drug Phen-Pehn which is no longer on the market. His weight affects all aspects of his life. Claimant stated that he can walk no more than fifty to seventy-five yards before having to stop. He has been placed on lower tier and no stairs restrictions. He has filed requests for accommodation, seeking to have a pusher assigned to him. Sometimes, Claimant will use a wheelchair. He was provided a pusher and wheelchair, but both were taken away. He has requested help at the chow hall, but that was also taken away from him.

On cross-examination, Claimant acknowledged that he had been overweight all of his life. He was provided a cane when he first arrived at FLCF. He was provided a wheelchair for a period

of time. He has been on full-time oxygen since 2005. He stated that he has to stop frequently when walking because of his inability to regain his breath. He testified further than he was always having problems moving from place to place at FLCF because of the short time limit for movement. He acknowledged that he had been able to hold some jobs.

A short resume will be provided of some of Claimant's witnesses. Dr. Anita Bloor, M.D. treated Claimant when he was at LCF. Dr. Bloor only had a recollection of Claimant from her notes, but noted that he had complained of back pain, as well as numbness and weakness in his leg. Claimant had wheezing in his lungs. He had high blood pressure and was grossly overweight.

David Rodriguez testified that he is an inmate at FLCF and has known Claimant for about two years. He works as a porter at the medical department at FLCF and has observed Claimant having difficulty sitting in a chair due to his size. Mr. Rodriguez would have to find a chair without arms so Claimant would not have to stand or sit on the floor awaiting his medical appointments.

Hormoz Pourat came to FLCF in March, 2007. He has been a cell mate of Claimant. He has observed the cramped bed that Claimant has had to use. Claimant has trouble turning in the bed. On cross-examination, Mr. Pourat testified that Claimant is afraid of dying. Claimant is depressed and nervous.

Claimant called Sergeant Tiffany Ruiz as a witness. She is assigned to FLCF and has had conversations with Claimant over some period of time. She was aware that Claimant had difficulty in trying to sit in a barber chair. She has observed Claimant walk without seeming difficulty, though he is slower than other inmates.

Sergeant Dennis Brewer testified that he has known Claimant since 2006. Sergeant Brewer stated that there had been discussions about whether Claimant could receive a two-man cell. He indicated further that the elevators were in need of repair. On cross-examination, Sergeant Brewer stated that Claimant was in a cell with three other inmates. He had observed Claimant who was able to move, albeit slowly.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim.

Claimant has described his condition as "morbid obesity." Claimant's weight has been a problem for years, predating his incarceration in DOC. The weight has affected all aspects of

Claimant's life, including his health. Evidence presented at the hearing reflects that Claimant's lower body joints have suffered due to the excess weight that he carries. He has COPD and sleep apnea, as well as other health issues.

This is a close case. Based upon all of the evidence, the Special Master determines that Claimant was mobility impaired on or before August 27, 2003. He is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** A claimant must prove by a preponderance of the evidence that he was subjected to discriminatory conduct on or before August 27, 2003. This discrimination must be based on a claimant's recognized disability, not on other factors such as race, age, etc. An example would be placement of a wheelchair-bound inmate on the third floor of a building with no working elevators.

In this case, Claimant's primary concerns are with his medical care. In his claim form, his requested relief would be to receive a bypass operation that would hopefully reduce his weight by many pounds. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

The bulk of Claimant's case relates to his medical care. As noted, the *Fitzgerald* case precludes action under the ADA and Rehabilitation Act. Claimant has not established any discriminatory conduct based upon his mobility impairment, with one exception. Claimant testified that he often cannot make it from one building to another during the ten minutes allotted for movement. This Special Master observed Claimant, and he has great difficulty walking. This is not a contrived condition, but an outgrowth of all of his health issues. Claimant has unable to complete some movements due to his mobility problem, and he is late for activities that he is involved in. The Special Master understands fully that DOC does not want Claimant to be in a wheelchair full-time, as that will affect his health even more. On the other hand, he is being treated adversely because of his inability to move rapidly enough during the ten-minute period of time allowed for movement.

Claimant has not established any other discriminatory conduct by DOC or its staff. The medical treatment issues cannot be resolved through this claim. Claimant has the right to pursue a separate lawsuit concerning the quality of medical care that he has received.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has established only part of his claim of discrimination. Claimant has established that he has been discriminated against as a result of the inability to complete movements in the allotted time of ten minutes. Claimant is entitled to damages of $100.00.[2]

IT IS HEREBY ORDERED that the claim of Robert Lee Bellm is grant, in part, and he is awarded $100.00 as damages; and

IT IS FURTHER ORDERED that all other parts of the claim are denied and dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 22, 2007.**

SIGNED this 20th day of August, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master

---

[2] The evidence of the malfunctioning elevators is troublesome. Claimant did not establish that the elevator problem predated August 27, 2003.