IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-412
Category III
Claimant: Donald Lee Revere, #69342
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master for hearing on August 23, 2007. The hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Claimant Donald Revere (Claimant) and Chris Alber, attorney for Defendants.

Claimant called the following witnesses in support of his case: Vincent Edwards; Bendetta Kreutzer, R.N.; and Claimant. Claimant did not offer any exhibits during the hearing. Defendants presented as a witness Dr. Orville Neufeld, D.O. and offered into evidence Exhibits A through EE. All were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

In 1987, Claimant was standing on a street corner in Denver. A RTC bus driver cut a corner too sharply and ran over the foot of Claimant. As the result of this accident, Claimant was hurt seriously. He had an operation which led to the fusion of several bones in his foot. Claimant has never been able to walk normally since the accident.

Claimant came into DOC custody on October 30, 1992. He was placed at the Denver Reception and Diagnostic Center (DRDC) and then was transferred to the Arkansas Valley Correctional Facility (ACVF) in Crowley, Colorado. He remained at AVCF for a short time and then was placed into a community program. Claimant was in and out of DOC facilities in 1994 and 1995. He was discharged on August 30, 1995.

Claimant returned to DOC custody on August 13, 1998. Claimant was placed initially at DRDC and then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He was at LCF for a year and then transferred to the Four Mile Correctional Center (FMCC) in Canon City, Colorado. He was placed into a community program in mid-2000. That placement did not work, and Claimant returned to DOC custody on January 17, 2001. He returned to DRDC and then went to AVCF. He was at AVCF from January 18, 2001 to February 23, 2004 when he was transferred back to FMCC. He remained at FMCC until April 7, 2004 when he went to the Arrowhead Correctional Center (ACC). He was placed into the TC Program which he completed.

Claimant was placed back into the community in July, 1995. He was in community corrections or on parole for the time period from July, 2005 on. He was placed back at DRDC in April, 2007. Claimant was placed at CCCF on May 4, 2007.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form:

> I have a crushed foot by an RTD bus ran over my left foot broke every bone in my foot. This is a life time injury with pain while walking or standing a lot or for a long period of time.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> By not allowing me the things I needed to live without pain. The orthopedic said I can have the red wing boots but DOC would have to order them and pay for them and they said no they can't do that anymore. So I asked could my wife send them in they said no. I've seen them do it for people before. I believed the doctor didn't order them cause I was a black man. I asked for a cane. They denied it.
>
> By not allowing the Red Wing boots. The black DOC boots have caused calluses on the bottom of my foot. I have a limp now. Pain all the time cause my one foot is crammed into the boot. It was smashed flatter than the right one and it has caused other blister on the top of my foot my 3rd and fourth toe are crushed together. Some times I could use a cane but they won't give me one

Claimant was sent a supplemental form to complete and return. In his supplemental form on mobility, Claimant stated as follows:

> I have a bad limp now. Can't run or stand for no more than 10 min. at a time. Can't squat. No heavy lifting No intensive labor.

Claimant later submitted medical records from various visits to medical staff over the years.

At the hearing, Claimant called as a witness Mr. Vincent Edwards. Mr. Edwards was the roommate of Claimant while both were at ACC. Mr. Edwards observed the problems that Claimant had in walking and with his feet in general. Claimant had a significant limp. Mr. Edwards was aware that Claimant had requested different boots for his feet. Claimant was unable to walk the yard for exercise.

Ms. Bendetta Kreutzer is a nurse for DOC at both Camp George West and DRDC. She had dealings with Claimant at both facilities. She was aware of the problems that Claimant had with his feet. She helped him soak his feet and had the physician assistants shave off the calluses that developed on his feet. She was able to secure moleskin to help his feet from becoming raw.

Defendants presented Dr. Orville Neufeld, D.O. as a witness. Dr. Neufeld was employed as a consultant on this case. Dr. Neufeld had reviewed Claimant's medical records. He acknowledged that Claimant had received a serious injury as a result of the bus accident. Subsequent x-rays reflected degenerative joint disease and arthritic changes in some joints. Claimant's right leg is shorter than his left. Dr. Neufeld believed that there always will be discomfort in the right foot. On cross-examination, Dr. Neufeld testified that Claimant should be able to obtain properly fitted boots. Dr. Neufeld did not believe that a cane would helpful.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The ADA and Rehabilitation Act require proof that a major life activity has been affected by a disability. *42 U.S.C. §12102(2)*. "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *20 C.F.R. §1630.2(h)(2)(I)*.

The evidence presented by both sides reflects that Claimant suffered a significant injury in the bus accident. The surgery on his foot left him with continuing problems and difficulty in walking. He has a limp and has significant pain. Claimant has a physical condition that affects walking, which is a major life activity. Claimant is disabled as mobility impaired and a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must show that he was treated differently than a non-handicapped individual.

The evidence presented in this case is reflective of a continuing pattern seen in several other claims. Claimant testified that he secured specially made shoes before he came into DOC custody. The shoes were designed to help Claimant with his foot deformities that resulted from the bus accident. When Claimant arrived at DOC the first time, his specially made shoes were taken from him. He was placed into state-issued boots. When Claimant discharged his first sentence, he secured custom made shoes again. These shoes were taken from him when he returned to DOC custody. The rationale is always one of security, but no testimony or other evidence was presented to establish that a real security issue exists. The net result is that Claimant has had to wear state-issued boots that

do not fit or help his feet. He has continued to have substantial pain.

Claimant submitted a number of medical records in support of his claim. Dr. Gremillion, a podiatrist, saw Claimant on February 16, 2000 and confirmed that his right leg is shorter than the left. Dr. Gremellion recommended custom molded shoes or, at least, orthotics. Dr. Patterson, an orthopedist, saw Claimant on March 7, 2001 and confirmed that Claimant has a deformed right foot. He also noted that Claimant had degenerative joint disease (DJD). He recommended soft soled shoes and orthotics.

Evidence submitted by Defendants reflects the significant problems that Claimant has with his feet. *Exhibit B; Exhibit E; Exhibit I; Exhibit I*. At one point, Claimant was given orthotics. *Exhibit N*. It is unclear from the testimony, but it appears that these were taken from him at some point. In addition, Defendants' exhibits reflect problems with the left femur. *Exhibit Q; Exhibit U*.

The testimony from Ms. Kreutzer was very compelling. She described how she had to assist Claimant with calluses that arose from the state boots. These calluses had to be shaved off by physician's assistants in order to preserve the health of Claimant's feet.

Claimant has requested appropriate shoes since he arrived back in DOC. He testified that he and his family were willing to pay for such shoes. The answer always has been no, or the shoes were taken upon return to DOC custody. Claimant has requested an accommodation for the shoes for his feet. He has always been denied this accommodation.

The discrimination here is fairly basic. Claimant has a badly injured right foot. He had specially made shoes that accommodated his physical condition and allowed him to walk better and to not face the health issues that he has faced with the state boots. He has requested simply to be placed at the same level as inmates who have no problems with their feet. Being placed into state-issued boots that are generic has created significant health problems for him, as described by Ms. Kreutzer. Claimant has been discriminated against by DOC and its staff due to the unwillingness to provide reasonable accommodations for his feet. The denial of specially made shoes or the denial of receipt of those shoes from his family is without any established basis.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant testified that all he is requesting is shoes that do not hurt his feet or cause pain. Defendants are directed to secure appropriately made shoes for Claimant that will accommodate his foot problems that are clearly documented in his medical files. Claimant is to receive replacement shoes for as long as he is in DOC custody. In addition, Defendants will take the necessary steps to insure that the specially made shoes are not confiscated at a new facility, if Claimant is transferred. Confiscation is permitted if there is evidence that Claimant has altered the shoes and the altered shoes present a significant security issue.

IT IS HEREBY ORDERED that the claim of Donald L. Revere is granted to the extent noted, and Defendants are to provide to Claimant specially made shoes to accommodate his foot problems; and

IT IS FURTHER ORDERED that Defendants shall replace the shoes provided to Claimant as long as he is in DOC custody; and

IT IS FURTHER ORDERED that Defendants will insure that the specially made shoes are not confiscated if Claimant is transferred to a new facility, absent a documented and established security issue; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 12, 2007.**

SIGNED this 5th day of September, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master