IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 03-221
Category III
Claimant: Jimmy Graham, #58513
Address of Claimant: Teller County Jail, P.O. Box 730, Divide, CO 80414

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER came before the Special Master for hearing on May 10, 2007. This hearing was held at the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Jimmy Graham (Claimant); and Rob Huss, attorney for Defendants.

Testimony was received from Claimant, along with Exhibit #1. Defendants' Exhibits A through J were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. Claimant requested that the claim remain open to allow additional documents to be filed. Claimant filed a supplemental brief and additional exhibits. The case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in February, 2003. He went to the Denver Reception and Diagnostic Center (DRDC). He was there for about four weeks. He was sent to YOS in Pueblo, Colorado where he remained for two weeks. He then was transferred to the Trinidad Correctional Facility (TCF) in Trinidad, Colorado. He was at TCF for about six months.

Claimant was placed at the Delta Correctional Center (DCC) in Delta, Colorado on December 23, 2003. He remained at DCC for twenty-seven months. On March 6, 2006, he was placed at the Skyline Correctional Center and remained there for twenty days. He was transferred to the Four Mile Correctional Complex (FMCC) in Canon City, Colorado and was there for nine months. Claimant then was transferred to FLCF. Claimant has now been discharged from the custody of the Colorado Department of Corrections (DOC).

In his initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, in his claim form:

>   I have type 2 diabetes. I have problems maintaining steady blood sugar levels which causes me to have symptoms of hypoglycemic shock. Being in a lock down situation, I do not have access to 24 hour medical attention. I am also not allowed to work outside work crews like other inmates because of my disability. Furthermore,

>I am at a facility that is not approved to house inmates with disabilities as outlined in this civil action.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

>I am not allowed to work on the outside work crews like other inmates are. I am not allowed the prescribed medical diet causing me to have to pick and choose off of the regular menu. I am being denied access to a H/S snack. This facility does not provide 24 hour medical care. I am only allowed to test my blood sugar levels one day per month, so I have no way to monitor it, The only way I know where my blood sugar level is at is when I start to go into hypoglycemic shock.

Claimant was sent a supplemental form to complete and file. In his supplemental form, Claimant stated, in part, as follows:

>I was initially diagnosed with Diabetes at DRDC on 5/03 and put on medication glucotrol. On 6/6/03 I was transferred to STU at YOS in Pueblo. Since there wasn't any glucotrol at that facility, it was substituted with diabeta. Diabeta made my glucose level drop very low causing symptoms of hypoglycemic shock every early afternoon. Eventually, I was placed back on glucotrol on 6/13/04 and the symptom stopped. I was made to suffer needlessly.
>On 11/03 at TCF I was on glucophage w/2400 Cal. diet w/ h/s snack. 11/06/03 I left TCF on writ to Jeffco. My medical diet info was not included in travel medical records, and I never received my diet at Jeffco as a result. Again, I started having symptoms of hypoglycemic shock. I've attempted to resolve this issue. I am now currently at DCC where they refuse to give me a medical diet, causing the deterioration of my condition, as my Hemoglobin A/C levels are extremely high.

Claimant also submitted a number of pages of his medical records.

In his hearing, Claimant testified that he was diagnosed with diabetes on May 6, 2003. He was placed on a special diet of 2400 calories per day and was prescribed glucotrol. When he was transferred to YOS in Pueblo, Colorado he was prescribed diabeta, as that facility did not have glucotrol. When he was transferred to TCF, he was put on glucophage and provided a special diet. He remained on glucophage at the time of the hearing.

When he was transferred to DCC, he was told that his diet was being discontinued. The reason advanced was that DCC did not provide a special diet, as diabetics were not supposed to be at the facility. At DCC, he was allowed to do a blood check once per month. He was required for a period of time to wear a green tag which symbolized that he had a disability. Claimant objected to the green tag, and it was ultimately removed. He also requested special shoes but did not receive them.

Claimant testified that he was regressed, and he believed that this was the result of his being diabetic. He was denied classes at various facilities. He believed that the denial was the result of his illness.

On cross-examination, Claimant testified that he was on a kosher diet at FLCF. He stated further that he tried to make wise canteen purchases. He has had continuing problems with his feet. He last worked in a kitchen.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant was diagnosed with diabetes in May, 2003. Claimant was diabetic on August 27, 2003 and is, therefore, a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on a claim, a claimant must prove that he was subjected to discriminatory conduct by DOC or its staff members on or before August 27, 2003. If discriminatory conduct is proven on or before that date, then a claimant may amend his claim to include additional discriminatory conduct after August 27, 2003.

The testimony and evidence of Claimant indicated that he was diagnosed as diabetic on May 9, 2003. *Exhibit A2* (Part of affidavit of Dr. Neufeld). The Special Master has noted already that Claimant was diabetic on August 27, 2003 and, therefore, a member of the class. The much tougher question is what, if any, acts of discrimination prohibited by the ADA and Rehabilitation Act occurred on or before August 27, 2003.

Many of Claimant's concerns relate to the quality and extent of medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement

Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant came into DOC custody in February, 2003. He was not diagnosed as having diabetes until early May, 2003. Claimant was at TCF when the diagnosis was made. The evidence presented by Claimant did not indicate that he was subjected to any acts of discrimination between early May, 2003 and August 27, 2003 based upon his disability. The evidence does reflect that significant problems occurred, including the issue of the green name tag, after he arrived at DCC on December 23, 2003. Under the Settlement Agreement, Claimant must prove that he was discriminated against by DOC and its staff *on or before August 27, 2003,* and that the discrimination was in violation of the ADA and Rehabilitation Act. Claimant has not established that he was subjected to any discrimination based on his diabetes from May, 2003 through August 27, 2003.

Claimant is not left without a means of redress of his rights. Claimant has the right to pursue through a separate lawsuit anything that occurred after August 27, 2003. Claimant's concerns about lack of proper diet, the green name tag, and related matters all took place at DCC. The Settlement Agreement prohibits consideration of any post-August 27, 2003 action unless something was proven prior to that date. Claimant has not established any discrimination based on his diabetes that occurred on or before August 27, 2003. Claimant is not barred from bring his own lawsuit for what occurred at DCC.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Jimmy Graham is denied, as he did not establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation that occurred on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 19, 2007.**

SIGNED this 12th day of September, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master