IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number: 03-294
Category: III
Claimant: Jackie L. Carr, #76686
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on August 23, 2007. The hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Claimant Jackie L. Carr (Claimant) and Chris Alber, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented as a witness Dr. Orville Neufeld, D.O. and offered into evidence Exhibits A through EE. All were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody in May, 1977. He was discharged from that sentence on October 17, 1983. Claimant returned to DOC custody on October 2, 1997. He was placed at the Denver Reception and Diagnostic Center (DRDC) for approximately three weeks. He then was transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. He remained there for one day.

Claimant was transferred to a private prison in Minnesota. He was at that facility for approximately fourteen months. Claimant returned to Colorado and was placed into the Kit Carson Correctional Center (KCCC) in Burlington, Colorado. Claimant then was placed into the Fremont Correctional Facility (FCF) in Canon City, Colorado. He then went to the Arrowhead Correctional Center (ACC) in Canon City, Colorado and remained there until January 22, 2002. Claimant was transferred back to KCCC and remained there until May 25, 2004. He returned to FCF for a few days and then went to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He remained at AVCF until August 28, 2006 when he was placed at CCCF.

In the initial claim form, Claimant checked the boxes for mobility impaired, vision impaired, and hearing impaired. Claimant stated, in part, as follows in his initial claim form:

>Surgery 2001 left knee! Severe arthritis in both knees; constant pain, worsens

3

> when stand too long, or walk too much. Have had ear infection for over one year both ears. Tried to see ear specialist for 9 months, medical providers says NO! Prescribed ear drops (medicated) for 8 months. Can't hear out of left ear and right ear is worsening. Eyes have decreased dramatically last 4 years, now wear bifocals, had to quit reading totally because of lenses. They only prescribe plastic lenses with no scratch resistant coating and allow nothing to clean lenses that won't scratch lenses. So consequently they scratch very quickly easily and they only replace once every two years which means you don't see for a year and a half.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> DOC tells you you have to buy your own pain reliever. So I have to do without because I can't get them to prescribe anything that don't attack my liver. I am Hepatitis B, C positive. After 4 years if taking Zoloft, they stopped it cold turkey June 2, 2004. Psychotropecs are supposed to be weaned off. They caused mental, emotional damage then after two weeks wants to give me a different drug (Paxel) which I took one week and had to stop. Just 20 mg a day caused severe side effects. Saying the script expired 6-2-04 when it was rewrote when I came here 5-27-04 for additional 90 days 100 mg. day.

Claimant was sent a supplemental form to complete and return. In his supplemental form on hearing, Claimant stated as follows:

> Problems started at KCCC a private prison that CDOC contracts to house inmates. My problem was pressure on ear nose throat face, to the point of pain was unacceptable. The pressure build up shut off the hearing in both ears, but worse in my left ear and face. The pressure built till the ear canal burst open and drained.

In his supplemental form on vision impairment, Claimant stated, in part, as follows:

> I seven years I've gone from fairly good vision to very poor vision wearing bifocals. Plastic lenses is all CDOC will issue with no towel or paper towel that will allow cleaning without scratches.
> I can not read books any more because of the frustration of reading the same line over and over because of the bifocal lenses. If you have the same pair of glasses for six months they are scratched beyond seeability.

In his supplemental form on mobility impairment, Claimant stated, in part, as follows:

> Reconstructive surgery on left knee end of Feb 2001. Knee damaged 12-1999 by the time CDOC did surgery my knee was totally destroyed inside. Now this knee aches 24 hours a day seven days a week. Medical tells me to buy aspirin from the commissary that no one can afford.

Claimant submitted a number of pages of his medical records. Records from 2000 reflect that he was having trouble with his knees. A knee support was ordered for him in May, 2000. He had continuing problems and had an MRI in September, 2000. He was experiencing at that time occasions when his knee would go out on him. On February 20, 2001, Claimant had knee surgery performed by Dr. Patterson. In the operative report, Dr. Patterson found the following problems in the left knee: (1) complete ACL tear; (2) tear, posterior one third lateral meniscus; and (3) Grade 3 weight bearing cartilage defect, medial femoral condyle. *Post-operative Report*.

Additional medical records filed by Claimant reflect other health issues. He had a liver biopsy on April 27, 2006 as the result of possible complications caused by his hepatitis B and C. He also has had on-going dental problems.

At the hearing, Claimant testified that he was in the TC program at ACC in 2001. He was terminated from the program on January 1, 2002. He had bottom tier/bottom bunk restrictions while at ACC. His problem was that he was not able to stand on his feet for very long, but was required to work in the kitchen. He began to experience all sorts of medical problems which led to meetings being missed in the TC program. He was placed in on the second tier.

In 2000-01, his knee created problems. The knee would swell to the size of a basketball. After the arthroscopic surgery, the knee continued to have problems. Claimant thought he would be seen by Dr. Patterson again, but that never took place.

Claimant was terminated from the TC program for purportedly making threats to staff. He was found not guilty at the disciplinary hearing. Claimant was terminated from the TC program and then was regressed. He attempted to get reinstated to the TC program but with no luck. He was reclassified and then sent to KCCC.

Claimant was diagnosed with diabetes on March 6, 2006. He has been able to lower his blood /sugar levels. He had ear problems while at KCCC, especially infections. His vision problem relates to the glasses that are provided by medical at FLCF. The glasses are easily scratched and make vision difficult.

In his testimony, Claimant indicated that he has arthritis in both legs. He has not received proper footwear. DOC staff have attempted to pass on to him used boots. He also has had other medications stopped, with ten days in delay in getting replacement medications.

On cross-examination, Claimant stated that he had a personality clash with supervisors in the TC program at ACC. He believed that he was the victim of discrimination due to being placed on a top tier, even with restrictions. He stated that his diabetes is under control, but that he has to fight for his medications.

Claimant further testified that he has trouble walking and does not go to the yard because of the pain associated with his arthritis and his knee. He stated further that he wears glasses. His hearing problems have cleared up and were probably the result of allergies.

Defendants called Dr. Orville Neufeld, D.O. as a witness. Dr. Neufeld has been hired as a medical consultant. He reviewed Claimant's medical records. Claimant had knee surgery in 2001. Claimant had swelling after his surgery which is not uncommon. There is degenerative joint disease in the knee. Dr. Neufeld stated that Claimant is able to do his activities of daily life. In his opinion, Claimant has no vision or hearing problems. His diabetes was diagnosed on June 19, 2006.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The ADA and Rehabilitation Act require proof that a major life activity has been affected by a disability. *42 U.S.C. §12102(2)*. "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *20 C.F.R. §1630.2(h)(2)(I)*. Each claimed disability will be taken separately.

**Diabetes:** Claimant was diagnosed as being diabetic in June, 2006. In order to fall under the claim provisions of the Settlement Agreement, a claimant must have been disabled by a covered condition on or before August 27, 2003. Since the diabetes was diagnosed in June, 2006, Claimant may not pursue this condition through this claim. He does have the right to pursue a separate lawsuit for his diabetes.

**Hearing**: Claimant testified that he had an ear infection that created problems hearing. He requested to see a specialist but was told that request would be denied. He testified at the hearing that the ear issues were probably related to allergies and finally cleared up. Claimant has not established that he had a hearing impairment on or before August 27, 2003 that affected a major life activity. He had some hearing issues but those were not permanent and did not affect activities of daily life.

**Vision**: Claimant was examined upon his entry into DOC and found to have vision correctable to 20/40. *Exhibit A*. When Claimant arrived at KCCC on April 25, 2003, he was found to be wearing glasses and having vision correctable to 20/30 (right) and 20/20 (left). *Exhibit L*. Claimant has received examinations by an optometrist which reflected no major problems. *Exhibit Q; Exhibit X*.

Claimant has not established that he had a vision impairment on or before August 27, 2003. Claimant has not established that any activities of daily life were affected by claimed vision problems.

**Mobility Impairment:** Claimant has had significant problems over the years with his left knee. Dr. Patterson, an orthopedic specialist, examined Claimant and found that he had a "grossly

6

unstable knee." *Exhibit C*. Surgery was performed on that knee on February 20, 2001. *Exhibit D*. The Special Master finds that Claimant had a mobility impairment that existed, at least, through surgery and follow-up examinations. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must show that he was treated differently than a non-handicapped individual.

Part of Claimant's case deals with the quality of medical care that he has received. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

Claimant has established one clear cut and continuing act of discrimination. Claimant stated in his claim form that "DOC tells you you have to buy your own pain reliever." That was the case for years and up to the present time. Review of the medical records submitted by Defendants reflects on-going pain due to the knee. Claimant has struggled with his left knee and it did affect his mobility in the time period leading up to August 27, 2003. The records reflect continuing knee pain. *Exhibit U; Exhibit V*.

Claimant has been in pain since he entered DOC. He appears to have received some pain medications through medical, but then was required to buy over-the-counter medications for pain relief. The Special Master would note that this issue has arisen on other claims. Claimant, as well as other inmates, has limited income and limited access to financial resources. An individual has a choice to either spend his limited resources on pain relievers through the canteen or suffer the pain associate with arthritis. The individual who is not disabled is able to utilize his meager income for personal items. Claimant has a no such choice if he wants some pain relief. He cannot seek additional work and income, as he is incarcerated. He has a fixed income. This Hobson's choice is inappropriate and violates the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has been and is disabled due to his left knee. He has established that he has been forced to purchase his own pain relievers. Claimant is entitled to $250.00 for damages that will reflect the pain relievers he has had to purchase over the years from the canteen.

IT IS HEREBY ORDERED that the claim of Jackie L. Carr is proven, in part, as noted in this Order; and

IT IS FURTHER ORDERED that the remainder of the claim of Jackie L. Carr is dismissed; and

IT IS FURTHER ORDERED that Claimant is awarded damages in the amount of $250.00 for the reasons noted in this Order; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 19, 2007.**

SIGNED this 12th day of September, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master