IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number: 03-330
Category: III
Claimant: Oliver Giller, #109839
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on August 23, 2007. The hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Claimant Oliver Giller (Claimant) and Chris Alber, attorney for Defendants.

Claimant testified in support of his claim. Claimant offered into evidence Exhibits 1 through 5, and all were admitted. Defendants presented as a witness Dr. Orville Neufeld, D.O. and offered into evidence Exhibits A through N. All were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

     B. QUALIFIED INMATE
     Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
     C. PERMANENT DISABILITY/IMPAIRMENT
     A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody on July 1, 2001. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He remained at DRDC for approximately two weeks and then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He remained at the facility until November 15, 2001.

Claimant then was placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He remained at AVCF until July 31, 2003 when he was transferred to CCCF. He has remained at CCCF to date, except for a three-week period in segregation which was at AVCF.

In the initial claim form, Claimant checked only the box for diabetes. Claimant stated, in part, as follows in his initial claim form:

> Diabetic: Type I. Diabetes is progressing and medical care is substandard. High Blood pressure: High Blood Pressure is a direct result of Diabetes and weight. Overweight. Cholesterol: weight is a problem because of diet and irregularity of meds. Growth on lower stomach: comes and goes but limits movement. Could be from diabetes. Idole Hernia: can't swallow sometimes. Affects breathing all the time. Heart Problems: Due to the high blood pressure and diabetes I'm taking pills called tenenol that control heart beat regularity. If you go without it affects your chances

>of having heart failure. I am constantly having to wait on this medication. It is never available on a consistent basis and I am forced to take the chance of a heart attack or heart failure.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

>The medical care is below standard. I am always waiting on meds. Even if I go 5 days ahead of time so my meds could be ordered they still aren't there. I have been forced to a top bunk at one point even though I have a bottom bunk restriction. I was refused ice by CCCF and Ordway prisons even though my hernia is dependent on it by doctors orders for swelling. I'm given bologna for diabetic snack or cheese both containing high amounts of salt and cholesterol.

At the hearing, Claimant testified that he believed that he was disabled due to hearing, vision and mobility impairments. His claim was amended to allow consideration of these alleged impairments, as well as diabetes.

Claimant testified that he was diagnosed as diabetic while at AVCF. He also was found to have high blood pressure and high cholesterol. Claimant indicated that he was diagnosed as diabetic as the result of testing done by medical staff. He did not know what medications he was prescribed initially. He was given a bottom bunk/bottom tier restriction early on.

Claimant testified further that he was denied a diabetic diet and told not to file any grievances. He believed that his placement into segregation for twenty-five days was the result of his requests for accommodations. He was concerned about the water that was available to drink, as it was chemically softened. Claimant worked in the water softening business for a period of time and is aware of the potential problems arising from use of the chemicals for the process.

Claimant stated that his diabetic snack is bologna and cheese. Other meals likewise provide food that Claimant believes is unhealthy, including white bread and lunch meat. Claimant was particularly concerned about the smaller portions of food he receives at the food line. Claimant provided at the hearing a diagram to confirm what he said was direct action to deny diabetic inmates the same amount of food that inmates who do not have diabetes receive.

On cross-examination, Claimant testified that he did not receive a hearing before being placed into segregation. He stated further that medical staff have told him his diabetes is under control. Claimant does not agree with that assessment of his disease. Claimant further testified that vegetables are overcooked by food staff at CCCF.

Defendants presented as their sole witness Dr. Orville Neufeld, D.O. who is a physician hired to review medical files of claimants. Dr. Neufeld testified that Claimant's records reflect that he weighed 300 pounds when he came into DOC. Claimant was tested and found to be diabetic. There is no physical evidence of any diabetic problems in the eyes or extremities of Claimant. The diabetes

does not impair activities of daily life. Claimant's vision is correctable by glasses, and those have been provided to him.

On cross-examination, Dr. Neufeld indicated that Claimant does have elevated blood pressure. Blood pressure can be affected by stress and may require a low sodium diet. Claimant is not on a diabetic diet, but could make that request.

Both sides presented exhibits for consideration by the Special Master. Claimant filed a grievance in 2004 to regain a bottom tier/bottom bunk restriction. That was granted.

The medical report from DRDC reflects that Claimant was given a physical examination on intake at DRDC. He was noted to be wearing glasses and having eyesight correctable to 20/30. He did have a mass in his abdomen. Upon his arrival at AVCF on November 15, 2001, Claimant was noted to have multiple medical problems. This included the mass in his abdomen.

In January, 2003, test results reflected that Claimant was diabetic. It appears that initial attempts to control the disease were to be through diet. Claimant had continuing blood pressure problems and was diagnosed as having gouty arthropathy. Claimant acknowledges that he has been on medication for his various health issues.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The ADA and Rehabilitation Act require proof that a major life activity has been affected by a disability. *42 U.S.C. §12102(2)*. "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *20 C.F.R. §1630.2(h)(2)(I)*. Each claimed impairment will be discussed separately.

**Vision Impairment**: In order to prove his claim as to vision impairment, Claimant must establish by a preponderance of the evidence that he had a disability on or before August 27, 2003 that affected his activities of daily living. Claimant has not done that as to vision impairment.

Claimant wears eye glasses. There is no evidence that Claimant's eyes are not correctable with glasses. There is no evidence that a major life activity is affected by vision impairment. The documentation submitted by both sides indicates that some concern was raised about vision problems, but not until March 27, 2006. This was after the date of approval of the Remedial Plan.

Claimant has not proven that on or before August 27, 2003 that he was vision impaired. Claimant does retain the right to bring a separate lawsuit for anything that occurred after the date

of approval of the Settlement Agreement. He may not pursue this part of the claim, as it post-dates that approval.

**Hearing Impairment**: Claimant presented no evidence concerning any claimed hearing loss that existed on or before August 27, 2003. This part of the claim must be dismissed.

**Mobility Impairment**: Claimant claims that he is mobility impaired. He states that this is the reason he had lower bunk and tier restrictions.

The records submitted by both sides indicate some problems with feet and legs. A medical examination on September 19, 2006 indicated a painful and swollen right foot. *Exhibit M*. When seen on November 22, 2006, Claimant had a severely inflamed left toe. *Exhibit L*. This was diagnosed as gouty arthropathy. No problems were specifically noted at DRDC concerning mobility. *Exhibit A*. Claimant was noted to be grossly overweight in January, 2002 and received a bottom bunk and bottom tier restriction. *Exhibit B*.

Claimant has not established that he was mobility impaired on or before August 27, 2003. The evidence is unclear whether the bunk and tier restrictions were the result of Claimant being over weight or having high blood pressure. The Remedial Plan places upon every claimant the burden of proof. That burden has not been met as to this claimed impairment.

**Diabetes:** Claimant was diabetic on August 27, 2003. He is part of the class as the result of his diabetes.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems. The one exception was the SOTP program, and denial was based on a criteria totally unrelated to Claimant's health issues.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must show that he was treated differently than a non-handicapped individual.

Claimant does not believe that he has received appropriate medical care while in DOC custody. In his claim form, Claimant specifically stated that "[t]he medical care is below standard." The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

Claimant was non-specific concerning the medicines which he alleges he did not receive on

a prompt basis. It is clear that Claimant receives medication for high blood pressure and high cholesterol. The Special Master has no jurisdiction over these two conditions. The same is true concerning the hernia that Claimant has.

In order to meet the third requirement set forth in the order of November 23, 2004, any claimant must establish that he was treated differently due to a covered disability. As an example, a claimant who is wheelchair bound could show that he was denied access to a prison law library because it is not wheelchair accessible. Claimant has not established that he was discriminated against due to his diabetes on or before August 27, 2003. Most of what Claimant has presented post-dates August 27, 2003. What has been presented that falls into the covered time period is unclear and not reflective of discriminatory conduct predicated on Claimant's status as a diabetic.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Claimant has failed to establish issue #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Oliver Giller is denied, as he has failed to answer affirmatively all four of the questions set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 19, 2007.**

SIGNED this 12th day of September, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master