IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-390
Category III
Claimant: Robert E. Archuleta #81187
Address of Claimant: Williams Street Center, 1763 Williams Street, Denver, CO. 80218

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert E. Archuleta. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Archuleta submitted a Claim on April 2, 2004, which was assigned claim number 02-018. The Claim is premised on alleged permanent disability due to diabetes.

2. Claimant's Claim was originally assigned to Category II pursuant to the Remedial Plan as set forth above. On January 23, 2007, Mr. Archuleta's Claim was reassigned to Category III.

3. On February 26, 2007, the Special Master entered an Order setting Mr. Archuleta's Claim for hearing at 9:00 a.m. on August 24, 2007 at Legal Resolution Center's Offices located at 600 17th St. Ste. 2800-South, Denver, CO. 80202. A copy of this Order was sent to Mr. Archuleta's last known address, Williams Street Center, 1763 Williams Street, Denver, CO 80218.

4. Mr. Archuleta failed to appear for the scheduled hearing on August 24, 2007 at 9:00 a.m.

5. The medical records submitted by the Defendants in response to Mr. Archuleta's claim show that Claimant's diabetes is controlled with insulin and diet. He

has worked in the kitchen and as a pod porter. Currently, his only medical restriction is against lifting more than 50 lbs.

6. Claimant asserts that he has been discriminated against by being moved to a higher security facility which offers less programs and work opportunities. He also contends that CDOC refused to provide Claimant with tennis shoes .

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. In addition to establishing a disability within the meaning of the ADA/Rehabilitation Act and the *Montez* Remedial Plan, a claimant bears the burden of proving by a preponderance of the evidence that he was otherwise qualified to participate in the programs and/or receive the services and benefits offered by the CDOC.

4

Furthermore, the claimant must establish by a preponderance of the evidence that he was discriminated against because of his disability and that he suffered damages as a proximate result of said discrimination.

4. Claimant Archuleta did not appear for his hearing and consequently presented no evidence in support of his Claim. Accordingly, the Special Master finds and concludes that Claimant Archuleta has failed to establish his *Montez* Claim by a preponderance of the evidence.

5. Even if we consider the claim and documents supporting the Defendants' response thereto, the record is insufficient to establish that Claimant has a permanent disability due to his diabetes. The record indicates that Claimant can walk, work, and is not otherwise substantially limited in his ability to engage in any major life activity.

6. Additionally, there is no evidence in the record to support Claimant's contention that CDOC discriminated against him because of his diabetes by transferring him to a higher security prison. The record shows that Claimant absconded while on probation in January of 1993, which would provide ample basis for transfer to a higher security facility.

For the reasons stated above, Mr. Archuleta's *Montez* Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Archuleta's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 10, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 19th day of September, 2007

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

5

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 19th day of September, 2007 to the following:

Mr. Robert E. Archuleta
# 81187
Williams Street Center
1763 Williams Street
Denver, CO  80218


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203


/s/ Susan L. Carter