IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-342
Category III
Claimant: Abel Garza #97986
Address of Claimant: c/o Dana Fox, 2643 Midpoint Drive, Ste. E, Ft. Collins, CO 80525

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Abel C. Garza. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Garza submitted a Claim on October 11, 2006, which was assigned claim number X-194. The Claim is premised on alleged permanent disability due to diabetes.

2. Claimant's Claim was accepted for filing on October 16, 2006, and was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. On March 16, 2007, the Special Master entered an Order setting Mr. Garza's Claim for hearing at 12:00 noon. on August 31, 2007 at Legal Resolution Center's Offices located at 600 17th St. Ste. 2800-South, Denver, CO. 80202. A copy of this Order was sent to Mr. Garza's last known address, c/o Dana Fox, 2643 Midpoint Drive, Ste E., Ft. Collins, CO. 80525.

4. Mr. Garza failed to appear for the scheduled hearing on August 31, 2007 at 12:00 noon.

5. Claimant's claim alleges that his blood sugars fluctuate on occasion. He states that he sometimes suffers from headaches, sensitivity to light and sound, swelling in his feet, numbness in his legs, and pain in his back. Claimant also indicates that he has low energy.

6. Claimant Garza asserts in his claim that his doctor told him to quit his job in culinary arts because it required him to stand for prolonged periods of time. Claimant states that he was disciplined for quitting his job and lost good time credit. His points also were increased as a result of this situation, which prevented him from being transferred to a lower security facility.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

3. In addition to establishing a disability within the meaning of the ADA/Rehabilitation Act and the *Montez* Remedial Plan, a claimant bears the burden of proving by a preponderance of the evidence that he was otherwise qualified to participate

4

in the programs and/or receive the services and benefits offered by the CDOC. Furthermore, the claimant must establish by a preponderance of the evidence that he was discriminated against because of his disability and that he suffered damages as a proximate result of said discrimination.

4. Claimant Garza did not appear for his hearing and consequently presented no evidence in support of his Claim. Accordingly, the Special Master finds and concludes that Claimant Garza has failed to establish his *Montez* Claim by a preponderance of the evidence.

5. Even if we consider Mr. Garza's claim on its merits, the Special Master finds and concludes that the record fails to establish by a preponderance of the evidence that Claimant's diabetes constitutes a permanent disability within the meaning of the ADA and/or the Rehabilitation Act. There is no evidence that Claimant's diabetes substantially limits his ability to engage in any major life activity. Claimant's claim indicates that he can walk and work.

6. Additionally, Claimant's allegation of discrimination relates to discipline he received for quitting his job. To the extent that Claimant Morales takes issue with his CPOD and other disciplinary convictions, such claims cannot be pursued under the ADA until and unless his disciplinary convictions or adverse administrative actions are overturned. *See Heck v. Humphrey,* 512 U.S. 477 (1994); *Daniel v. Fields,* 1995 WL 539008 at fn. 2 (10th Cir. 1995)(unpublished); *Deatherage v. Stice,* Civ. 05-91-F (W.D. Okla, Dec. 29, 2005)(unpublished). Furthermore, there is insufficient evidence in the record to demonstrate that the discipline received by Claimant constituted discrimination because of his disability.

For the reasons stated above, Mr. Garza's *Montez* Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Garza's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 10, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 19th day of September, 2007

5

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 19th day of September, 2007 to the following:

Mr. Abel Garza
#97986
c/o Dana Fox
2643 Midpoint Drive, Suite E
Fort Collins, CO  80525


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203

/s/ Susan L. Carter