IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-382
Category III
Claimant: Edgar Lloyd Hostetter # 100551
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO. 81215

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Edgar Lloyd Hostetter. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Hostetter submitted a claim on May 29, 2004, which was assigned claim number 02-428. The claim is premised on an alleged permanent disability due to diabetes.

2. Claimant's claim was originally assigned to Category II pursuant to the Remedial Plan as set forth above. On January 5, 2007, Mr. Hostetter's claim was reassigned to Category III and renumbered to 03-382.

3. Claimant Hostetter entered CDOC custody in April of 1999. His current release date is 2028, and he is eligible for parole in 2012. Except for a brief period of time at DRDC, Claimant has always been housed at the Colorado Territorial Correctional Facility.

4. Claimant suffers from diabetes, which is generally well controlled with diet and medication. It is necessary for him to check his blood sugars with finger sticks each morning and evening. He receives diabetic snacks. As a result of his diabetes, he has had some problems with his toe nails and feet, and his knees hurt when he walks stairs. Claimant states that his blood sugars go up and down even with his medications.

3

5. Claimant was receiving Avandia for his diabetes. CDOC medical personnel switched his medication to Actos, and more recently to Gulcophage. Claimant states that he did not receive any medication for up to three months when his medication was changed from Avandia to Actos.

6. Claimant Hostetter also asserts that he is disabled due to a vision impairment that may, in part, be caused by his diabetes. The testimony and medical records indicate that Claimant's vision, corrected with prescription glasses, was good until approximately 2002. In 2002, his vision deteriorated significantly. Visual acuity tests in November of 2002 showed corrected distance acuity of 20/50 in his right eye and 20/60 in his left eye. On July 28, 2004, Claimant's corrected visual acuity was 20/40 in each eye. Claimant testified that he now has floaters and gets blank spots. He indicates that he cannot read or see close up with his glasses, and must taken them off to perform these tasks. Claimant's medical records show that he was seen by an opthamologist who concluded that he was suffering from inoperable cataracts.

7. Claimant Hostetter asserts that the CDOC has discriminated against him by changing his diabetes medications, and by failing to provide him with any medication for his diabetes for up to three months while his medication was being changed. He also asserts that the CDOC has discriminated against him by failing to properly correct his vision, and by supplying him with glasses that were the wrong prescription. He contends that he has had the wrong prescription for his eyeglasses for several years.

## III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing,

4

vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to meet his burden of proving by a preponderance of the evidence that his diabetes constitutes a permanent disability under the ADA and/or the Rehabilitation Act. In this case, Claimant testified that his diabetes is satisfactorily controlled by diet and that it has no impact on his major life activities. The Special Master finds and concludes that Claimant's diabetes does not render him "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Claimant simply states that he has diabetes. Claimant's diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg*, 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.*, 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd*, 170 F.3d 188 (11th Cir. 1999). There is simply no competent evidence in the record that would allow the Special Master to find and conclude that Claimant's diabetes substantially limits his ability to care for oneself, perform manual tasks, walk, see, hear, speak, breath, learn or work. *See* 29 C.F.R. § 1630.2(h)(2)(i).

Claimant Hostetter also contends that he suffers from a vision disability, which may or may not be related to his diabetes. The Special Master finds and concludes that at least by November of 2002, Claimant in fact was disabled within the meaning of the ADA and/or the Rehabilitation Act by virtue of a vision disability. The evidence establishes that Claimant's vision impairment substantially limited his ability to read and write. *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 798 (9th Cir. 2001)(one who cannot read due to a vision impairment is substantially limited in a major life activity). Additionally, Claimant's visual acuity tests show that by November of 2002, his distance vision was very poor, even with correction. Indeed, his corrected visual acuity in November of 2002 would have disqualified him from receiving a driver's license.

3. The key question is whether Claimant Hostetter was discriminated against by the CDOC because of his vision disability. Claimant does not assert that he was denied access to any program, service, or facility offered to inmates by the CDOC. To the contrary, the evidence establishes that Claimant has consistently had jobs and has taken several different classes. In fact, Claimant acknowledges that he has never been denied access to a job or any program offered by CDOC because of his diabetes or vision problems.

Claimant's sole complaint with respect to his vision impairment is that he has not received proper medical care from the CDOC. The record shows that Claimant's vision has remained poor despite several eye examinations and the issuance of multiple pairs of prescription glasses. However, the evidentiary record simply is not sufficient to establish by a preponderance of the evidence that the CDOC has been guilty of negligence or deliberate indifference to Claimant's medical needs.

Furthermore, virtually all of Claimant's complaints relate directly or indirectly to either alleged failure to provide timely medical care or to disputes between Claimant and his CDOC medical providers regarding his medical treatment. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

For all of the foregoing reasons, Mr. Hostetter's *Montez* Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Hostetter's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before December 10, 2007** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 19th day of September, 2007

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 19th day of September, 2007 to the following:

Mr. Edgar Lloyd Hostetter
#100551
CTCF
P.O. Box 1010
Canon City, CO  81215


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203


/s/ Susan L. Carter