IN THE UNITED STATES DISTRICT COURT6
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

    -vs-

BILL OWENS, et al.,

    Defendants.

---

**Plaintiff Class Counsel's Response to Special Master's Order Requesting Compliance Report with Regard to Claimant Wellman E. Gibson, #03-173**

---

Plaintiff Class Counsel, Paula Greisen and Jennifer W. Riddle, of KING & GREISEN, LLP, hereby file this response:

1. The Special Master issued an Order requesting Class Counsel to investigate issues raised by Claimant Wellman E. Gibson. Specifically, Mr. Gibson asserts that he has been discriminated against by the DOC due to his disability and has been repeatedly denied access to the library.

2. In investigating the allegations, Class Counsel requested information from the DOC, had a phone conference with Mr. Gibson, and reviewed grievances filed by Mr. Gibson. Based on this information, undersigned Counsel has determined that Mr. Gibson was intentionally denied access to the library for a period of approximately three months as a result of discrimination on the basis of his disability.

3. In response to the inquiries of undersigned Counsel, the DOC has admitted that Mr. Gibson was banned from the General Library at the Sterling Correctional Facility from February of 2006 to mid-May of 2006. The DOC claims that Mr. Gibson was initially ejected from the library for alleged "disruptive behavior" because he refused to sign in, or would sign his name illegibly at the General Library.

4. While the DOC admits that Mr. Gibson was denied access to the library for over three months, the DOC does not accept responsibility for the denial but rather it argues it was a mere "miscommunication."

Mr. Gibson's Physical Impairment:

5. Mr. Gibson suffers from the softening and degeneration of the spinal cord leading to paralysis which results in limitations of the extremities. Due to this condition, Mr. Gibson's hands frequently lock up, preventing him from holding things like writing utensils and books. The DOC has been on notice of Mr. Gibson's impairment affecting his dexterity as far back as 2004, when Mr. Gibson identified his disability in an Informal Resolution Attempt. **Exhibit A, Informal Resolution Attempt.** Mr. Gibson was screened for disability in September of 2005. His ambulatory health record indicates a report of

> "Substantial difficulty holding a book with his left arm/hand. Over the last 2-3 years he also reports pain in his right arm with a loss of function intermittently in this arm when it is in certain positions."

2

**Exhibit B, Ambulatory Health Record.** Subsequent requests for accommodations indicate that Mr. Gibson has been provided accommodations for his disability. **Exhibit C, Verification of Disability.** In a memo written by the AIC Cathie Holst in March of 2004, Ms. Holst acknowledges Dr. Wermer's finding that Mr. Gibson's condition implicates "his ability to grasp items with his hands." **Exhibit D, Memorandum.** While Mr. Gibson's impairment may not fall under one of the Montez categories, he certainly has been recognized by the DOC as an inmate who requires certain accommodation under the ADA.

Mr. Gibson was Denied Access to the General Library for Discriminatory Reasons:

6. As a result of Mr. Gibson's condition, his inability to hold books, and the fact that his hands lock up on him, he has been allowed to participate in the Colorado Talking Books program. In order to make his selections for the books on tape, Mr. Gibson needs access to the library, where the computer database is located as well as the sign up sheet for books.

7. To access the library at SCF, each inmate must first sign in at the Programs Hub, and then a second time at the General Library. Usually, when Mr. Gibson would arrive at the Programs Hub and the General Library, he was permitted to have someone else sign him in, or one of the guards would sign him in due to his inability to grasp a writing utensil.

8. Apparently on the day in question, however, on or around February 23, 2006, Mr. Gibson had someone sign in for him at the Programs Hub, but when he got to the General Library, the librarian refused to allow anyone else to sign in for him. When he argued with her that he needed help because of his disability, Major

3

Waide decided that Mr. Gibson was being "disruptive," and ordered that he leave the library.

9. After Mr. Gibson left the library, Major Waide also went to Mr. Gibson's housing unit and informed the staff that they were not to issue any library passes to Mr. Gibson because he was permanently banned from the library. One of the housing unit staff told Mr. Gibson that Waide had ordered the ban and then asked Mr. Gibson what he had done to upset Waide.

Mr. Gibson Filed a Grievance Immediately After He was Banned From the Library:

10. On February 23, 2006, Mr. Gibson filed a Step I grievance regarding being denied access to the library. In his grievance, he specifically states that ". . . because of physical problems (dexterity) I am denied ALL access to the library." **Exhibit E, Grievance No. SF05106-1008-1.** Having received no response, on March 14, 2006, Mr. Gibson filed a Step II grievance stating, ". . .Waide informed the unit (Lt. Jones) that I not be allowed in the library per request made to him by library employees. This had to do with my inability to sign paperwork at times because of nerve damage that affects my dexterity. . ." **Exhibit F, Grievance No. SF05106-1008-2.** Mr. Gibson's Step II grievance was denied. Mr. Gibson then filed a Step III grievance on April 5, 2006, stating, ". . . per Major Waide's instructions to Lt. Jones in Unit 2 . . . I am not allowed in the library. This is an ADA violation . . ." **Exhibit G, Grievance No. SF05106-1008-3.** Mr. Gibson's Step III grievance was denied in November of 2006 on the grounds that he did not substantiate his claim that he was denied access to "law library" based on his dexterity concerns. **Exhibit H, Response to Step III grievance.**

11. Interestingly, although all his grievances clearly stated that they implicated ADA issues, the grievances were not routed through the ADA grievance process. Probably due to the complaint he filed in this case, the AIC office finally investigated the matter, cleared up the "miscommunication", and reinstated Mr. Gibson's library privileges.

12. While the DOC asserts that denying Mr. Gibson access to the library was merely a result of miscommunication, the evidence shows that Mr. Gibson was intentionally banned from the library for clearly discriminatory reasons. Due to his physical impairment, Mr. Gibson was not accommodated in the signing-in process at the General Library, which resulted in his removal from the library, and subsequent three and one-half month ban.

13. Pursuant to the Americans with Disabilities Act, 42 U.S.C. §2132, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. The term "disability" means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment. 42 U.S.C. §2102.

14. Mr. Gibson is certainly a qualified individual with a disability under the ADA and is therefore protected from discrimination on the basis of his disability. When the DOC denied him access to the library for over three months on the basis of his disability, the DOC violated the rights secured to Mr. Gibson through the ADA.[1]

DATED at Denver, Colorado this 31st day of January, 2007.

KING & GREISEN, LLP

*Jennifer W. Riddle*
Jennifer W. Riddle
Paula Greisen
1670 York Street
Denver, Colorado
Telephone: (303) 298-9878
greisen@kinggreisen.com

Counsel for Class

---

[1] In a letter received by Class Counsel on January 26, 2007, Mr. Gibson requested that Class Counsel bring to the attention of the Special Masters that he feels he is being retaliated against by the DOC for participating in proceedings related to the *Montez* case. Mr. Gibson's letter reports that the day after he spoke with Class Counsel with regard to this compliance report, he was placed on permanent punitive segregation status while he awaits transfer to another facility. All of his property was confiscated, including his books on tape materials. This also violated Mr. Gibson's bottom/bottom restriction, as he was forced to go to the second tier.

6

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2007, I served the Plaintiff Class Counsel's Response to Special Masters Order Requesting Compliance Report with Regard to Claimant Wellman E. Gibson, #03-173 via facsimile to:

Special Masters Borchers, Pringle and Davidson
Legal Resolution Center
7907 Zenobia Street
Westminister CO 80030
Facsimile: (303) 426-7714

Elizabeth McCann
James Quinn
Jess Dance
Assistant Attorney General
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Facsimile: (303) 866-5443

Wellman E. Gibson, #74384
Arkansas Valley Correctional Facility
12750 Highway 96, Lane 13
P.O. Box 1000
Crowley County, Colorado 81034

7