IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 02-907
Category II
Claimant: Melvin Ray Elizer, #103323
Address of Claimant:

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Melvin Ray Elizer (Claimant). Claimant was in the custody of the Colorado Department of Corrections (DOC) when he filed his claim. He has been placed on parole and is living in the Denver area.

This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Claimant has filed only a claim form. Defendants have filed a response to the claim. Claimant was granted up to and including September 10, 2007 in which to file a reply to the response of Defendants. Despite being granted additional time in which to file a reply, Claimant has filed nothing further.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC in December, 1999. He was released in July, 2000. Claimant returned to DOC custody in September, 2001 and remained until November, 2004. He again was released. He returned to DOC custody in March, 2005 and has remained in custody since that date.

Claimant filed a claim form in September, 2006. He checked only the box for mobility impairment. In his claim form, Claimant stated, in part, as follows:

> I have a lower back injury that results in severe pain and is aggravated by prolonged standing, repeated bending, reaching and twisting. Spasms occur regularly and frequency has increased usually due to the aggravating circumstances listed above. Serious abuse occasionally results in locking up the spine, resulting in demobilization for an extended period. The injury I believe to be the probable cause occurred in approximately August 2001.

In response to the question concern discrimination by DOC and its staff, Claimant stated as follows:

> I have been denied work assignments in "incentive" paid positions, such as clerk at the W.H.I.P. (Wild Horse Inmate Program) specifically due to present work restrictions. I have been forced to work in food service even after being released

from CSP Food Service by direction and intimidation of my case manager. Work assignment duties all include activities I am supposed to be prohibited from performing by my work restrictions, and my protests have been met with threats of disciplinary action.

Defendants filed an answer to the claim on June 29, 2007. Attached to the response are several pages of Claimant's medical records. There is an intake sheet from Denver Reception and Diagnostic Center (DRDC), dated December 12, 2005, that reflects Claimant has had lower back problems since 2001. The intake sheet also reflects that Claimant has other medical conditions, and he has had issues with drug abuse. Other medical records reflect that medical care was provided to him for his back.

The records submitted by Defendants reflected restrictions had been placed on Claimant. *Exhibit H*. He was restricted from bending, squatting, being assigned to a camp, and was not to go to a boot camp. Attached to the response are copies of COPD convictions, as well as a query page reflecting eight disciplinary convictions from March, 2000 to December 21, 2006.

Claimant was granted up to and including September 10, 2007 in which to file a reply to the response of Defendants. Claimant has filed nothing further in support of his claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?**  Claimant has a lower back problem. The records submitted reflect that this condition began in 2001. Claimant refers to an accident, but it is not clear if this occurred while in DOC custody.

There is evidence of medical restrictions being imposed by medical staff. Claimant was restricted in 2006 from bending or squatting. Nothing has been presented by Claimant to indicate that these restrictions existed on or before August 27, 2003. The documents submitted by Defendants reflect that restrictions were imposed after August 27, 2003. *Exhibit Q*.

There is no evidence that Claimant was unable to walk on or before August 27, 2003. Claimant does carry the burden of proof to establish that he was mobility impaired on or before that date, and he has not met that burden. There must be a showing under the ADA and Rehabilitation Act that a physical impairment substantially limited a major life activity. *42 U.S.C. 12102(2); 29 U.S.C. 794(d)*. In order to meet the requirements of the statute, there must be something more proven than simply having lower back pain. Claimant has not met his burden of proof and is not part of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Claimant received eight COPD convictions from 2001 to 2006. Claimant has the burden to show that these convictions did not prevent him entry into the programs that he requested. He has made no such showing.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant carries the burden to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met that burden.

From what has been presented by both sides, the complaints that Claimant is raising relate to the period of time after Claimant returned to DOC custody in 2005. There has been no showing of any act by DOC or its staff on or before August 27, 2003 that reflected any discrimination based upon Claimant's physical condition.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 10, 2007.**

SIGNED this 17th day of September, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

───────────────────────────────
Richard M. Borchers
Special Master