IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-414
Category III
Claimant: Gregory Cook, #89740
Address of Claimant: 2219 Saranac Drive, Colorado Springs, CO 80910

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on July 6, 2007 at the office of Legal Resolution Center, Colorado Springs, Colorado. Present were the following: Gregory Cook (Claimant); and Jennifer Huss, f/k/a Jennifer Fox, attorney for Defendants.

Testimony was received from Claimant, Cathie Holst, and Thomas Hainey. Claimant offered into evidence Exhibits 1 through 11, and all were admitted. Defendants' Exhibits A through C were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

Additional time was granted up to and including October 1, 2007 in which each side could present additional information and documents. Further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>   A. COVERED DISABILITIES
>   The persons covered by this Plan are individuals with mobility,

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>hearing, and vision impairments and inmates with diabetes.
>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody on September 13, 1996. Claimant was first placed at the Denver Reception and Diagnostic Center (DRDC). He remained there until October 21, 1996 when he was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He remained at FCF until he was paroled in September 7, 1998. Claimant successfully completed his parole and was discharged from his sentence on June 7, 2002.

Claimant returned to DOC custody on a new sentence in June 7, 2004. He again was placed at DRDC and then transferred to the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Claimant was at FLCF until he was transferred into a community corrections placement. Claimant was placed on parole on February 7, 2006. Claimant has remained on parole.

In his initial claim form, Claimant checked the boxes for mobility impairment, vision impairment, and diabetes. Claimant stated on his claim form, in part, as follows:

>I am in a wheel chair and use it 90% of the time. I can walk but only short distances. I can stand only for short periods of time as explained in disability approval documents. I have trouble reading because of a stroke which affected my right eye. I am legally blind in my right eye. I am also a diabetic and have all

      problems associated with it. I have severe sleep apnea and I am on oxygen 24 hours a day.

In response to the question as to what discrimination had taken place due to DOC staff actions, Claimant stated as follows:

      I was denied medicine for very serious disabilities. I have chronic back & leg pain (severe). I took pain medication for several months but was soon tired of how I felt all of the time and requested another solution. I was then given Elavil (50 mg). Over the past 12 years I have had it increased periodically to 200 mg two years ago. DOC has decided I don't need this medication and DOC is making me fight to get my meds. I have not seen a doctor yet. DRDC made me sleep without my nasal CPAP machine, for about five days.

      Claimant submitted additional documents over the months following the submission of his claim. He indicated that he has sleep apnea, as well as other health conditions. He stated that he is in a wheelchair about ninety percent of the time he is awake. Claimant also submitted a number of pages of his medical records. Some of those records reflect the significant health issues that Claimant has been dealing with, including sleep apnea.

      At the hearing, Claimant testified that he has been in DOC on two occasions. While on parole in the late 1990's, Claimant was diagnosed as having diabetes by a physician in the community. He was treated for his diabetes with Glucophage, insulin, and other medications. He has been on insulin for some time and receives it by injection three times per day.

      Claimant testified further the he had fallen and broken his back in the early 1990's or late 1980's. He has had difficulty walking as the result of his injuries. He has been in constant pain. He was offered surgery for his back but felt the risk was too great. He began to use a wheelchair part-time during his first sentence to DOC. On cross-examination, he acknowledged that during his first sentence, he was able to walk some without the wheelchair or a cane. He was not able to get up and down steps.

      Claimant also testified that he had difficulty getting glasses when he arrived at FLCF. His left eye had changed and he did not receive glasses with changed prescriptions. He has difficulty reading.

### III.

      The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each question will be taken separately.

      The Settlement Agreement provides that a claimant must establish that he was disabled, as

defined by that agreement, on or before August 27, 2003. A claimant must also show that he was discriminated against on or before that date. If such a showing is made, then a claimant may amend his claim to include actions that have occurred after August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. A claimant must show that he had a listed disability on or before August 27, 2003. The Special Master would note that Claimant's other medical conditions, including sleep apnea, are not covered by the Settlement Agreement. Claimant may bring a separate lawsuit to deal with the sleep apnea or other uncovered conditions.

**Diabetes**: Claimant testified that he was diagnosed with diabetes while on parole in 1999. Claimant was diagnosed as having diabetes when he returned to DOC custody on June 7, 2004.

Claimant was not diagnosed as having diabetes when he was in DOC custody during the period of 1996-98. Claimant is not a member of the class as a diabetic.

**Vision**: Claimant has indicated that he has had significant eye problems over the years. Though the records provided by both sides are not clear, it does appear that Claimant had eye problems that were the result of a stroke in 1994. The intake sheet from September 18, 1996 at DRDC reflects that Claimant was partially blind in his right eye at that time. The Special Master finds Claimant to be part of the class as vision disabled.

**Mobility:** Defendants have conceded in an earlier filing that Claimant is mobility disabled. He is determined to be a member of class in that category.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The Settlement Agreement requires that a claimant establish that he was subjected to actions by DOC and its staff that violate the ADA and Rehabilitation Act. In this case, such discrimination must have occurred on or before August 27, 2003.

The bulk of Claimant's concerns relate to his medical care while in DOC custody. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by

Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has raised one issue of discrimination that predates August 27, 2003. While at FCF in 1996-98, Claimant was noted to have mobility issues. The records do not fully detail every medical finding, but Claimant was struggling with the effects of a stroke, lower limb problems, and chronic pain. He was in a wheelchair part-time. Claimant testified that he was required to climb stairs but was unable to do so. He had no choice, even though he had a mobility disability. The Special Master determines that the requirement that Claimant had to climb stairs was discriminatory toward him in light of his physical condition at that time. Claimant has failed to prove any other act or acts of discrimination that violated the ADA and Rehabilitation Act. In light of the *Fitzgerald* decision, issues concerning the quality of medical care cannot be resolved. Claimant may bring a separate lawsuit concerning alleged Eighth Amendment violations related to his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** The discriminatory action against Claimant occurred ten years or more ago. Claimant will be granted $150.00 in damages.

IT IS HEREBY ORDERED that the claim of Gregory Cook is granted, in part, and he is awarded $150.00 in damages; and

IT IS FURTHER ORDERED that the remainder of the claim of Gregory Cook is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 17, 2007.**

SIGNED this 12th day of October, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master