IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-718
Category II
Claimant: Stephen J. Grace, #57349
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

_____

## SECOND FINAL ORDER OF SPECIAL MASTER
_____

    THIS MATTER comes back before the Special Master on the claim of Stephen J. Grace (Claimant). Judge John Kane has directed that the final order be reconsidered in light of additional information submitted by Claimant.

    The Special Master granted Claimant further time up to and including October 15, 2007 in which to submit additional information. Neither side has submitted any further documents for consideration on this claim. The previous final order will be vacated, with this order taking its place.

    This is a Category II claim. The claim must be resolved on the documents submitted by both sides. The claim will be adjudicated on what has been presented by both sides.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.*

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC during the late 1980's. On his claim form, he indicated that he came into DOC custody on February 4, 2000. Claimant was incarcerated at the Limon Correctional Facility (LCF) when he filed his claim in August, 2004. He now is housed at the Arrowhead Correctional Center (ACC) in Canon City, Colorado.

Claimant checked only the box for mobility impaired on his claim form. Claimant stated, in part, as follows:

>I have a crushed disk in my lower back dating from 1987 which is in my working file. And I also have something turn in my left knee which happen this year in June. As of today I haven't had nothing done but given ice and a ace bandage. I was told over a month in a half I'll be seeing someone from other specialist. And I've been put on the third tier top bunk twice since I've been here. I have had restriction for bottom bunk bottom tier since 1987 thru out my incarceration. Coming to Limon I was told I don't have any restrictions and they can place me anywhere they want to. I'm walking on a cane and someone continues to change my restriction every

other week.

In his initial claim form, Claimant responded to the question about discrimination as follows:

> After filing grievances with the department of corrections about my injuries I was told by the grievance department in Colorado Springs that we are sorry you fell of the top bunk while in Territorial Correctional facility. Your restriction will be put back on after moving to another facility. They act like they don't know what I'm talking about.
>
> Once again while hurt I was put on the third tier and top bunk and fell while trying to get down and reinjured my back. And I can't work but I try and stay in programs just to be active. Limon Facility medical department refuses to accept my restrictions and refuse to get me help with my knee.

Claimant submitted a supplemental form and a number of supporting documents. These documents include medical records and grievances. In his supplemental form, Claimant stated, in part, as follows:

> I first hurt my back in 1987 at Ordway Correctional Facility. I was told I may have a crushed disk in my lower back and then I messed around and fell off the top bunk after being ordered to either get up there or go to the hole. By officers.

In his supplemental form, he indicated that he was using a cane to help him walk. Attached to his supplemental form was a copy of a draft civil rights complaint. It is unknown whether Claimant filed this with the Court. He noted that at he arrived at Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado in December, 2002. He was assigned to a cell on the top bunk. Claimant stated that he had advised correctional officers that he had restrictions. He was told to take the top bunk or face ramifications. He fell from the top bunk later and injured his back.

In later documents, Claimant indicated that he had injured his knee. He stated that he had not received proper medical care for his knee.

Defendants filed a response to the claim. Defendants dispute that Claimant is disabled. The documents attached to the response indicate several things. Claimant injured his left knee while playing softball on June 21, 2004. The medical record for June 25, 2004 reflects that Claimant had no previous injury or surgery to that knee. *Exhibit A*. Surgery was ultimately done on that knee. *Exhibit E*. He was found to be mobility impaired on June 26, 2006. *Exhibit G*. He has been using a cane for support. An x-ray on April 2, 2004 reflected a normal spine. *Exhibit J*.

Claimant requested to be able to review his medical records. That request was granted on October 23, 2006. Claimant was granted also time in which to submit a reply to the answer of Defendants. Claimant did file an affidavit on November 17, 2006. Claimant stated, in part, as follows:

>    1) Affiant cannot effectively participate in outdoor recreation because he cannot walk without the use of a cane, which he no longer has as Defendants took it away from him.
>    2) Affiant has great difficulty even walking to chow or to the library, etc., because he does not have the use of a cane.
>    3) Affiant has repeatedly attempted to be evaluated for further medical treatment on his knee to no avail. Affiant has repeatedly been told that he has received all the treatment he will ever receive.

In another document Claimant acknowledged that he injured his knee in a sporting event in which he was participating.

>    Mr. Grace did in fact injure his knee while playing softball in an organized league, following which he did receive surgery and certain medical restrictions such as lower bunk, bottom tier, and use of a cane.

He indicated that he had not received appropriate medical care, and the surgery on his knee had not resolved all problems with it.

After the issuance of the initial final order, Claimant file a document with the Court entitled "motion to amend final order of Special Master." This document was filed on December 15, 2006. Judge Kane issued his order of remand on August 23, 2007.

Attached to the motion to amend are additional medical records. One document was from EMSA Correctional Care and reflects that on April 5, 2000 Claimant was given restrictions for a lower bunk assignment, extra pillow, and extra mattress. Another document reflects a medical entry from October 9, 2002 indicating that Claimant was having great difficulty in walking. He was admitted to the CTCF infirmary and discharged on October 16, 2002. The final page of medical records submitted with the motion to amend reflects that Claimant fell off of the top bunk in his cell. He arrived at the infirmary on a gurney. He was diagnosed as having an acute lower back strain.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant relies on two injuries in his claim that he is mobility impaired. First, he alleges that he had low back problems which affected his ability to walk. He alleges further that he fell and hurt his back trying to get out of a top bunk and that he should not have been on a top bunk in the first place. The second injury was to his knee on June 21, 2004. The knee injury led to surgery, and Claimant maintains that surgery has not alleviated all of his problems.

The documents submitted by Claimant after the first final order was prepared reflect that Claimant had a lower bunk restriction and was to receive low cut soft shoes. The record from October 9, 2002 reflects great difficulty in walking. Claimant was admitted to the infirmary on that date. As of late 2002, Claimant appears to have been mobility impaired.

The next major event in this case is the knee injury that occurred on June 21, 2004. *Exhibit A*. Claimant had surgery as the result of that injury. Claimant has argued that he is disabled as the result of that injury and has had a cane taken from him.

In order to establish a mobility impairment, a claimant must shown that he had a condition that was permanent and affected his ability to move. Claimant is claiming that he was disabled during the entire period of 2000 to the present. That argument does not fit with the reality that Claimant was actively playing softball in June, 2004. Claimant advised medical staff that he hurt his knee rounding third base. The ADA and Rehabilitation Act require a showing of an impact on activities of daily life. No such showing has been made for the year 2004 up to the time of the knee injury.

Claimant is found to have been mobility impaired during the period of 2000 through the end of 2002. The Special Master finds that Claimant recovered enough to be able to play softball in 2004. As a result, he ceased to be mobility impaired in 2004 when he began to play softball.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant argues that he was subjected to discrimination because he was forced to take a top bunk. He also argues that he did not receive appropriate medical care from DOC providers.

The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

Claimant did have a lower bunk restriction in April, 2000. That restriction was not adhered to by DOC and its staff after Claimant was moved. The rationale advanced is that DOC medical staff may change a restriction at any time based upon that provider's medical judgment. In this case, Claimant was directed to take a top bunk and suffered an injury as a result. The device reflects that the injury was an aggravation of an already bad back that affected walking. The Special Master determines that discrimination did take place when Claimant was required to take a top bunk which led to his fall.

The Special Master specifically finds that the mobility impairment ceased to be a disability condition when Claimant began to play softball. The two are mutually exclusive. The June, 2004 injury received medical care, though not the type that Claimant believed appropriate. Unfortunately, *Fitzgerald* precludes an examination of the quality of that medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** The incident of placing Claimant in a top bunk in violation of previous restrictions and contrary to what appears to have been his health at the time was in a single episode. Claimant has not proven anything further. Claimant will be awarded $150.00 for the damages suffered from the fall from the bed. The remainder of his claim is denied.

IT IS HEREBY ORDERED that the claim of Stephen Grace is granted, in part, and he is awarded $100.00 in damages; and

IT IS FURTHER ORDERED that the remainder of the claim of Plaintiff is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 17, 2007.**

SIGNED this 22nd day of October, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master