IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-605
Category II
Claimant: Jonathan I. Burnett #64026
Address of Claimant: 842 E. Co. Rd. 60, Mendon, IL 62351

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Jonathan I. Burnett. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Burnett submitted a claim on July 9, 2004, which was assigned claim number 02-605. The claim is premised on alleged permanent mobility, vision, and/or hearing disability. The claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

2. The record before the Special Master fails to reveal the dates when Claimant was in CDOC custody or the facilities in which he was housed. The records attached to Defendants' Response indicate that Claimant was at least in CDOC custody during the period of June 2001 through early 2003. These records also indicate that Claimant was housed for at least part of his CDOC custody in Bent County Correctional Facility and Freemont Correctional Facility. Mr. Burnett's Claim suggests that he may have been housed in Texas in approximately 1991.

3. Claimant asserts that he suffers from chronic lower back pain, arthritis in his joints, bone spurs on his feet, and plantar fasciitis. He states that these problems with his lower extremities were very limiting. Claimant indicates that while in CDOC custody, he was in constant pain, and that eventually he could not stay on his feet long enough to work.

Claimant states that he wears reading glasses, but provides no further information regarding his alleged "vision disability."

With respect to his hearing impairment, Claimant notes that he has hearing loss in both ears, which makes it hard to understand speech in the noisy environment of a prison. He states that his hearing impairment made life in CDOC custody "most difficult."

4. Claimant asserts that CDOC failed to test his hearing or to provide him with hearing aids for seven years. He further alleges that CDOC failed to provide proper treatment for his back, knee, and foot pain. Claimant contends that he was denied an assist cell, a standby wheelchair, and tennis shoes. Finally, he asserts that he was denied a lower bunk restriction for an unreasonable period of time, and that, as a result, he was forced to sleep on the floor or the top bunk. He indicates that he fell off of the top bunk on one occasion. Finally, Claimant contends that he slipped and fell in the shower a few times.

5. The medical records provided by the Defendants show that Claimant suffered from chronic back pain. X-rays taken in September of 2001 revealed minimal spurring at the marigins of the patellas in both knees. The radiologist's impression was "[m]inimal degenerative changes at the patellofemoral joints." Claimant was seen by an orthopaedist in October of 2001. The doctor's impression was "[m]ild DJD. No mechanical symptoms." The doctor recommended continued use of anti-inflammatories and soft-soled shoes. A physical therapy consult was offered, but was declined by Claimant. In early 2003, Claimant was seen by a CDOC medical provider, complaining that his back went out. Claimant told the provider that his back had not gone out for over a year. The medical provider noted that Claimant was able to walk slowly with a cane.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that although Claimant suffers from a mobility impairment, he has failed to demonstrate by a preponderance of the evidence that his mobility impairment constitutes a "mobility disability," within the meaning of the ADA and/or the Rehabilitation Act. The question of whether an impairment rises to the level of a disability depends upon whether the impairment substantially limits the ability to engage one or more major life activities. The claim and supplemental claim submitted by Claimant suggests that his lower back pain, knee pain, arthritis, and plantar fasciitis substantially limit his ability to walk and work. However, the medical records submitted by Defendants paint a different picture. They indicate that Claimant's back, knee and feet problems are due to mild degenerative joint disease; that he is able to walk with the assistance of a cane even when his back is "out," and that he has no mechanical symptoms. The Special Master resolves this conflict in the evidence in favor of the Defendants.

Likewise, the Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that his hearing impairment rises to the level of a hearing disability. The medical records confirm that Claimant has abnormal hearing in his right ear. Nevertheless, Claimant provides little or no information as to how his hearing impairment affects his ability to engage in major life activities. He simply says that while in CDOC custody, he had difficulty hearing speech, and that life was "difficult." This is insufficient to establish that Claimant's hearing impairment substantially limited his ability to engage in one or more major life activities.

Claimant has provided no information concerning his claimed vision disability. Consequently, the Special Master finds and concludes that he has failed to meet his burden of proving that he suffers from a vision impairment and that the impairment is serious enough to substantially limit his ability to engage one or more major life activities.

For the foregoing reasons, the Special Master finds and concludes that the claim of Mr. Burnett must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Burnett's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 7, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 22nd day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle
_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 22nd day of October, 2007 to the following:

Mr. Jonathan I. Burnett
842 E. Co. Road 60
Mendon, IL  62351


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203


                                                               Susan L. Carter