IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-691
Category II
Claimant: Betty Ann Maxwell #61543
Address of Claimant: 1534 East 22nd Avenue, Denver, CO 80205

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Betty Ann Maxwell. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Maxwell submitted a claim on August 6, 2004, which was assigned claim number 02-691. The claim is premised on an alleged permanent disability due to a mobility impairment. Ms. Maxwell's claim was assigned to Category II.

3. Ms. Maxwell's claim indicates that she entered CDOC custody in June of 2003 and was released on August 14, 2004. Her medical records show that she was in CDOC custody in 2000 as well, but the beginning and ending date of this period of her CDOC custody are unknown. It appears that she was housed at the Colorado Women's Correctional Facility and the Denver Women's Correctional Facility during her CDOC custody.

4. Claimant Maxwell's claim and the records in her file indicate that suffers neck and back pain resulting from a motor vehicle accident in 1996. She has also been diagnosed with scoliosis, and suffered injuries to her right leg and hand from gunshot and knife wounds. While in CDOC custody, she underwent a bunionectomy, which resulted in some nerve damage to her big toe. One of Claimant's legs is ½ inch longer than the other, requiring her to wear a heel insert. Claimant states that she cannot stand for long periods of time without pain, and that her leg and neck hurt if she walks long distances. The record reflects that in 2000, she was cleared to work in Food Services with a restriction of no lifting of more than 25 lbs. without assistance.

3

5. Claimant asserts that CDOC negligently performed the bunionectomy, and that CDOC has refused to provide her with reconstructive surgery to correct the problem. She also contends that she has been denied a back and neck brace; that she has been denied medical shoes; and that she has been refused medication for her pain. She also claims that CDOC failed to order medical shoes for her even though her doctor had ordered them. Finally, Claimant describes an incident in which CDOC personnel failed to evacuate her from her cell in a timely manner when noxious fumes were emanating from the vents, and then required inmates to stand outside in the cold for three hours without coats or blankets. She states that she suffered from a swollen neck, red eyes, and a sore throat because of this incident, and that the conduct of CDOC aggravated her asthma.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

While Claimant does suffer from various conditions that impair her mobility to some extent, the Special Master finds and concludes that the Claimant has failed to prove by a preponderance of the evidence that her impaired mobility rises to the level of a mobility disability within the meaning of the ADA and/or the Rehabilitation Act. The medical records support Claimant's contention that she suffers from mild scoliosis; from the residual affects of wounds to her leg; and from some residual nerve damage to her toe. However, there is insufficient evidence to demonstrate that these conditions substantially limit her ability to engage in any major life activity. The record shows that she can walk and work. The fact that it is painful for her to walk long distances or stand for long periods of time, in itself, does not demonstrate a "disability," within the meaning of the ADA and/or the Rehabilitation Act. Both the case law and regulations dealing with this issue have concluded that diseases, injuries, and conditions that result in moderate restrictions on one's ability to walk, stand, sit, and climb stairs do not qualify as substantial limitations on a major life activity. *E.g., Talk v. Delta Airlines, Inc.*, 165 F.3d 1021 (5th Cir. 1999); *Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996); *Stewart v. Weast*, 228 F. Supp. 2d 660 (D. Md. 2002); 29 C.F.R. § 1630.2(j)(2).

Absent sufficient proof that Claimant's impairments substantially limit her ability to engage in one or more major life activities, her claims of improper medical treatment, failure to provide appropriate pain medication, and failure to provide necessary medical equipment do not fall within the ambit of the ADA and/or the Rehabilitation Plan. While such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). A claim for deliberate indifferent to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

The incident described in Ms. Maxwell's contentions regarding the delay in evacuating her from her cell and the fact that she and other inmates were required to stay outside in the cold for three hours are not tied to any claim of mobility, vision, or hearing disability, or disability due to diabetes. As a result, her contentions are not covered by the *Montez* Remedial Plan.

For the foregoing reasons, the Special Master finds and concludes that the claim of Ms. Maxwell must be denied.

### IV. ORDER

5

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Maxwell's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 7, 2008** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

SIGNED this 22nd day of October, 2007

        BY THE COURT:

        /s/ Bruce D. Pringle

        Bruce D. Pringle,
        Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Final Order of Special Master this 22nd day of October, 2007 to the following:

Ms. Betty Ann Maxwell
1534 E. 22nd Avenue
Denver, CO 80205

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter