IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-379
Category III
Claimant: Robert Turner #81107
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert Turner. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

1

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

      2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

  This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

  Being duly advised, the Special Master makes the following Findings of Fact:

  1. Claimant Turner submitted a claim on April 14, 2005, which was assigned claim number 02-879. The claim is premised on alleged permanent disability due to a vision impairment and/or diabetes.

  2. Claimant's claim was originally assigned to Category II pursuant to the Remedial Plan as set forth above. On December 18, 2006, Mr. Turner's claim was reassigned to Category III and renumbered to 03-379.

  3. Claimant Turner entered CDOC custody in 1993. During his CDOC custody, Claimant has been housed at various facilities, including Limon Correctional Facility, Crowley Correctional Facility, Arkansas Valley Correctional Facility, Sterling Correctional Facility, and Freemont Correctional Facility. His current release date is in 2023.

  4. Claimant was diagnosed with hypoglycemia in 1998. He controls his hypoglycemia with exercise and diet. Claimant has never been diagnosed with diabetes.

  5. Mr. Turner acknowledges that his hypoglycemia does not substantially limit his ability to engage in normal life activities. He walks for recreation, has taken classes, and has worked while in CDOC custody. He does not use the yard, but this is for reasons other than his medical condition.

  5. Claimant wears prescription lenses. His visual acuity with corrective lenses has ranged from 20/20 in both eyes, to 20/20 in his right eye and 20/25 in his left eye. A 2003 visual acuity test indicated that his uncorrected vision was 20/20 in his right eye and 20/40 in

his left eye. During his CDOC custody, Claimant has had several optometric examinations and has received several pairs of eyeglasses.

6. When Claimant was a boy, he injured his eye in an accident. As a result, he developed sensitivity to light. This sensitivity to light increased after he suffered a beating by inmates while at Sterling Correctional Facility in 2001. Claimant's sensitivity to light prevents him from going outside unless he is wearing photo grey lenses. He received a pair of photo grey lenses from CDOC in approximately 2000.

Since the incident at Sterling Correctional Facility in 2001, Claimant has gotten headaches and has lost some peripheral vision. He gets ribbons of light in his vision approximately once a month. The light ribbons last for approximately 20 minutes, and the episodes may re-occur for a couple of days. Additionally, since 2004, Claimant has had problems reading close up. He was working in Office Equipment Repair, where he had to read schematics, and his difficulties reading close up made his work difficult. As a result, he had to use a larger magnifying glass to read the schematics and to see the circuit boards.

7. Claimant contends that the CDOC discriminated against him because of his hypoglycemia by providing him with a new diet in May of 2007 that eliminated some of his carbohydrates. He further asserts that the CDOC discriminated against him because of his vision problems by refusing to allow him to receive a pair of bifocal transitional lenses that were purchased by his mother in 2005. The evidence establishes that when Claimant's near vision became blurry, he was given a new prescription for bifocal lenses. He sent this prescription to his mother, who purchased a pair of transitional bifocal glasses for him from an outside vendor. At about the time this occurred, however, FCF and/or the CDOC instituted a new policy which prohibited inmates from obtaining glasses from outside vendors. Consequently, Claimant was unable to receive the glasses purchased by his mother. Claimant was issued a pair of clear bifocal glasses by the CDOC, which are adequate for indoor use. However, his photo grey glasses, which are seven years old, are not bifocals. Claimant asserts that he should be allowed to have one pair of transitional bifocal glasses that will suffice for both indoor and outdoor use, instead of being relegated to the two sets of glasses which he has now. Claimant further states that he has heard rumors that the CDOC may change its policy to only allow clear lenses. If such a change should occur, Claimant indicates that he would not be able to get to the chow hall, go to work, or go to church because he must go outside to access these areas.

## III. CONCLUSIONS OF LAW

1.   The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant does not suffer from diabetes. While hypoglycemia can be a predictor of the possibility of future onset of diabetes, this is not always the case. Hypoglycemia is not an impairment covered by the *Montez* Remedial Plan. In any event, even if hypoglycemia were included with the scope of *Montez*, the uncontroverted evidence establishes that Claimant's hypoglycemia does not cause him to be substantially limited in his ability to engage in any major life activity. To the contrary, Claimant readily acknowledges that he can walk, work, take classes, attend church, and access the chow hall.

The Special Master further finds and concludes that while Claimant may suffer from a vision impairment, the impairment does not rise to the level of a "disability," within the meaning of the ADA and/or the Rehabilitation Act. Claimant's visual acuity is adequate to allow him to engage in the major life activities of seeing, working, and reading. Additionally, the fact that Claimant experiences sporadic episodes when he sees ribbons of light does not constitute a vision disability. Claimant's sensitivity to light is adequately addressed by the photo grey lenses provided by the CDOC. His primary contention is that he must utilize two different pairs of glasses—one when he is outside and one when he is inside. However, the inconvenience attendant to utilizing two separate pairs of glasses is not sufficient to constitute a substantial limitation on any major life activity.

Additionally, the Special Master finds and concludes that neither Claimant's complaint regarding his new diet or his complaint regarding the CDOC's policy of prohibiting receipt of glasses from outside vendors is within the scope of the *Montez* Remedial Plan. The new diet was provided in 2007. The issue regarding the pair of transitional lens bifocals purchased by Claimant's mother arose in 2005. A claim under *Montez* must be based on a permanent disability that manifested itself prior to August 27, 2003. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

For the foregoing reasons, the Special Master finds and concludes that the claim of Mr. Turner must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Turner's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 7, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 22nd day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 22nd day of October, 2007 to the following:

Mr. Robert Turner
# 81107
FCF
P.O. Box 999
Canon City, CO  81215-0999


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203

_____
/s/ Susan L. Carter

7