IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-627
Category II
Claimant: Willie L. Ates #06804
Address of Claimant: DRDC, 10900 Smith Road, Denver, CO 80239

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Willie Ates. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III. DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Willie Ates submitted a claim on July 16, 2004, which was assigned claim number 02-627. The claim is premised on alleged permanent disability due to a mobility impairment.

2. Claimant's claim was or assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant Ates entered CDOC custody in June of 1987 and remained in CDOC custody until February of 1988. Claimant re-entered CDOC custody in February of 1989. Although the record does not reflect all of the CDOC facilities in which he has been housed, it appears that for all or a portion of his CDOC custody, Claimant has been housed at the Crowley County Correctional Facility, the Ft. Lyon Correctional Facility, the Fremont Correctional Facility, the Arkansas Valley Correctional Facility, and the Colorado Territorial Correctional Facility. He is currently serving a 40 year to life sentence.

4. Claimant is an insulin dependent diabetic. Although his diabetes appears to be generally under control, it has resulted in numerous medical problems, including a mobility impairment and a vision impairment that fall within the scope of the *Montez* Remedial Plan. Due to his diabetes, Claimant suffers from peripheral neuropathy in his

3

feet. Claimant also states that he suffers from degenerative arthritis throughout his body, as well as right hip and knee problems, and sciatic nerve damage in his right leg. Claimant indicates that he cannot walk more than 10 minutes, cannot engage in any sustained lifting, and cannot sit for long periods of time. Claimant states that he cannot negotiate stairs. His hands and arms go numb after short periods of use.

Claimant also suffers from vision impairment, in large part due to his diabetes. He has retinopathy and significant areas of retinal edema in both eyes. He has undergone cataract surgery on both eyes. Claimant states that his eyes are sensitive to light, and that he cannot distinguish faces or see well at a distance beyond four or five feet in bright sunlight. He cannot read regular print without corrective lenses and his eyes tire quickly when using reading glasses for over 30 minutes. Claimant also indicates that his depth perception is affected.

Claimant also suffers from a variety of medical conditions that are beyond the scope of the *Montez* Remedial Plan, such as sleep apnea, shoulder pain, hypertension, sinusitis, and obesity.

Claimant has worked as a unit custodian.

5. Claimant asserts that in 1994, CDOC ceased providing him with soft-soled shoes, which are necessary because of the peripheral neuropathy in his feet. Thereafter, he was forced to buy tennis shoes from the canteen, which did not have the proper arch, support, or cushioning. He claims that since 2001, he has been denied access to a podiatrist. He further contends that he was provided with orthotics in 1993 or 1994, but that CDOC has refused to service and maintain them. Claimant asserts that in 2000, a physical therapist recommended that he receive new orthotics, but CDOC refused to approve the request.

Claimant alleges that he has not received adequate medical care and treatment for his eye condition. He claims that in 1991 and 1992, laser surgery was performed on both of his eyes to remove growths. He contends that a few months later, he was diagnosed as having numerous burns on his eyes, bleeding, and blistering resulting from the surgery. According to Claimant, these conditions required several more laser treatments to correct. He asserts that as a result of the failure of the CDOC to provide proper treatment for his eyes, his eyesight has worsened to the point that he had to have cataract surgery. After the cataract surgery, Claimant states that he could no longer read regular print without corrective lenses.

6. Claimant's medical records show that he was diagnosed with severe peripheral neuropathy as early as 1987. In 1988, he was treated with medication for pain and swelling in his feet and legs. His medical provider recommended that he be allowed to elevate his feet while sitting, and that he only be required to walk short distances. He was also issued a pair of Hush Puppy shoes in 1988. In 1992, Claimant was again treated for swelling in his feet. A medical examination at the podiatry clinic revealed that he had

4

peripheral neuropathy, as well as symptoms of infracalcaneal bursitis and plantar fasciitis in his right foot. Claimant was diagnosed with chronic sciatica in 1997.

In 1996, a CDOC podiatrist found that Claimant had severe pronation which was greater in his left foot than in the right. He was also diagnosed with posterior tibial dysfunction and posterior tibial tendonitis. At that time, it was recommended that he be casted for orthotics as soon as possible. In January of 2000, Claimant's medical records indicate that new orthotics were denied by Colorado Access, and that Claimant was referred to podiatry. A 2000 podiatry progress note indicated that although Claimant's orthotics needed some repair, they were adequate and did not need replacement.

The record fails to reflect any podiatrist consults after 2000.

Claimant's medical records show that in 1993, his uncorrected visual acuity was 20/50 in both eyes, and that he had shadows in his vision. Also in 1993, he was diagnosed with diabetic retinopathy with significant macular edema and exudations threatening the fovea in both eyes. In 1999, Claimant had cataract surgery on his left eye. In a follow up examination, Claimant's uncorrected near visual acuity was 20/60 in both eyes, and his distance acuity was 20/50 in the left eye and 20/70 in the right eye. In 2000, Claimant underwent cataract surgery on his right eye. In 2001, Claimant's uncorrected visual acuity was 20/50. Further eye surgery was performed in 2004. A 2005 eye examination indicated an uncorrected visual acuity of 25/30 in his left eye and 20/40 in his right eye.

After filing his *Montez* claim, Claimant underwent a disability screening. The Accomodation Resolution states that no mobility or vision disability was found. The Resolution fails to note any of Claimant's lengthy medical history relating to either his mobility or vision problems.

### III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29

5

C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant does suffer from a mobility impairment that is sufficiently serious to substantially limit his ability to engage in the major life activity of ambulating. The record reflects that he is only able to walk for a brief period of time and cannot negotiate stairs. Claimant's medical records reflect a long history of mobility problems, many of which are the result of his diabetes. These include, but are not limited to peripheral neuropathy and plantar fasciitis. His medical records further establish a history of bursitis, sciatica, severe pronation, posterior tibial dysfunction and posterior tibial tendonitis. Claimant asserts that these diagnosed medical conditions substantially limit his ability to walk, sit, and utilize stairs. While there is conflicting evidence in the record regarding the affect of Claimant's medical conditions on his mobility, the Special Master finds and concludes that the preponderance of the evidence supports Claimant's contention that he is mobility disabled under the ADA and/or the Rehabilitation Act.

The record also establishes that Claimant suffers from a vision impairment, which is also due in large part to his diabetes. However, the Special Master finds and concludes that Claimant has failed to prove by a preponderance of the evidence that his vision impairment is sufficiently serious to qualify as a disability under the ADA and/or the Rehabilitation Act. Although Claimant's uncorrected visual acuity may be poor enough to qualify as a disability, Claimant acknowledges that with corrective lenses, he is able to read. Although the medical records failed to note whether Claimant has in fact received corrective lenses, the clear implication from the *Montez* claim submitted by Claimant is that he has received or acquired reading glasses.

The Special Master finds and concludes that the preponderance of the evidence establishes that Claimant has been discriminated against by CDOC because of his mobility disability. Claimant has been denied new orthotics since 2000. Although in 2000, Claimant's medical provider indicated that he did not need new orthotics at that

6

time, the medical records do not show any subsequent podiatrist consults. Additionally, the medical records provided to the Special Master fail to reveal any follow up medical care for Claimant's lower extremity problems after 2000, even though he had previously been diagnosed with a variety of lower extremity conditions resulting from his diabetes. The Special Master further finds and concludes that the Accomodation Resolution prepared by CDOC after the filing of Mr. Ates' claim is inconsistent with his medical history and the findings of his medical providers over a substantial period of time.

To be sure, generally a failure to provide appropriate medical care and/or medical devices is not considered discrimination under the ADA and/or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). However, the situation is otherwise where, as here (a) a claimant suffers from a mobility impairment that rises to the level of a disability; and (b) necessary medical care and/or medical devices, if provided, would render claimant capable of engaging in major life activities. The Special Master finds and concludes that the preponderance of the evidence establishes that both of these elements have been met. The fact that the record fails to note any medical care for an insulin dependent diabetic with numerous diagnosed mobility problems since 2000 provides support for the Special Master's conclusion. The Special Master's conclusion is further supported by fact that the record fails to document that any consideration was given to Claimant's request for new orthotics since Colorado Access' denial in January of 2000.

For the foregoing reasons, the Special Master finds and concludes that the claim of Willie L. Ates is sustained.

The record does not reflect any monetary loss resulting from Defendants' discrimination and failure to proper accommodate Claimant's mobility disability. In light of this, the Special Master finds and concludes that an amount of $400.00 will reasonably compensate Claimant for Defendants' violation of the ADA and the Rehabilitation Act.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Ates and against Defendants in the amount of $400.00.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 14, 2008** with the Clerk of the United States District Court at the following address: 901 19th Street, Denver, CO 80294.

SIGNED this 29th day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Final Order of Special Master this 29th day of October, 2007 to the following:

Mr. Willie L. Ates
#06804
DRDC
10900 Smith Road
Denver, CO 80239

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/Susan L. Carter