IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-409
Category III
Claimant: Clinton Erickson # 68370
Address of Claimant: LCF, 49030 State Highway 71, Limon CO  80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Clinton Erickson. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, and after an evidentiary hearing held on October, 19, 2007, the Special Master makes the following Findings of Fact:

1. Claimant Clinton Erickson submitted a claim on July 19, 2004, which was assigned claim number 02-635 pursuant to the *Montez* Remedial Plan. The claim is premised on alleged permanent disability due to a hearing impairment, a mobility impairment, and a vision impairment. On March 21, 2007, the claim was reassigned to Category III, and was renumbered as 03-409.

3. Claimant Erickson entered CDOC custody in June of 1992. During his CDOC custody, he has been housed at the Limon Correctional Facility. He is serving a life sentence.

4. Claimant suffers from diminished hearing in both ears. He was born with a hearing loss in both ears, and it has progressively gotten worse. He was provided with one hearing aid by the CDOC in 2000 or 2001 that he wore in his left ear, but he lost it approximately one-and-a-half or two months ago. Without the hearing aid, he just hears background noise. He can hear the sound, but cannot determine what is being said without completely concentrating on the person talking. He has to turn the television up loud or use headphones. Claimant indicates that he has a janitorial job and that his impairment prevents him from hearing people coming up behind him. He has completed a phase I janitorial class.

3

Claimant also suffers from rosacea that impacts his mobility. He states that approximately six months of the year, he gets a severe rash that affects most of his body, including his thighs. Although he can walk, negotiate stairs, and work, the rash makes walking painful. He has had this condition most of his life. He currently treats it with hydrocortisone cream and other topical creams and ointments obtained from the canteen. He states that these medications do not provide effective relief from the pain, and any relief that he does enjoy is very temporary.

Finally, Claimant asserts that his rosacea results in a vision disability. The rosacea causes the skin on his face to swell, crack, and bleed. His eyelids swell and become puffy and red. He has used Vaseline and lotion, but it did not help. He also uses hydrocortisone, but it only provides temporary relief. The condition arises a couple of times per week. Claimant acknowledges that he can see, read, and work.

5. Claimant asserts that CDOC has discriminated against him by failing to provide him with two fully functional hearing aids. He contends that the one hearing aid that he had up until a month or two ago did not work well. He notes that with two hearing aids, he would be better able to hear speakers, fire alarms, and understand what is being said. Claimant further claims that CDOC has discriminated against by failing to provide proper treatment and medications for his rosacea. He asserts that he requested new medications, but CDOC refused to provide them because they were not on the formulary. He also contends that CDOC refused to prescribe prednisone or other types of steroids that provide significant relief from the swelling, cracking, and bleeding around his eyes and the rash on his thighs.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant does suffer from a hearing impairment, a mobility impairment, and a vision impairment, but that these impairments do not individually or collectively render him "disabled," under the ADA and/or the Rehabilitation Act. While Claimant's hearing impairment, without any corrective device, may constitute a hearing disability, the evidence is uncontroverted that he was supplied with a hearing aid by CDOC. Although the one hearing aid did not eliminate his hearing impairment, it sufficiently mitigated it to enable him to hear and work. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). The preponderance of the evidence demonstrates that while two hearing aids might provide even better hearing to the Claimant, one hearing aid sufficiently allows Claimant to engage in major life activities.

Additionally, the Special Master finds and concludes that Claimant's rosacea does not sufficiently impede Claimant's vision or mobility to render him disabled within the meaning of the ADA and/or Rehabilitation Act. Claimant acknowledges that he can see and work, and that although it is painful at times, he can walk and negotiate stairs.

The Special Master also finds and concludes that CDOC did not discriminate against Claimant because of his hearing impairment and/or his vision or mobility problems. Claimant essentially contends that CDOC has failed and refused to provide him with medical devices (*i.e.*, two hearing aids) and appropriate medications. However, because the lack of these medical devices and medications did not prevent Claimant from engaging in major life activities, his contentions, at best, constitute claims of negligent medical treatment or deliberate indifference to medical needs. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

5

Furthermore, a claim for deliberate indifferent to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

For the foregoing reasons, the Special Master finds and concludes that the claim of Clinton Erickson must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant Mosby dismissing Mr. Erickson's *Montez* claim with prejudice.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 14, 2008** with the Clerk of the United States District Court at the following address: 901 19th Street, Denver, CO 80294.

SIGNED this 29th day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

---

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing Final Order of Special Master this 29th day of October, 2007 to the following:

Mr. Clinton Erickson
# 68370
LCF
49030 State Highway 71
Limon, CO   80826


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO   80203

                                                    /s/Susan L. Carter