IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-426
Category III
Claimant: Zina N. Jones #97766
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Zina N. Jones. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;
II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.     Damages due to severe physical injuries; and
V.      Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Jones submitted a claim on March 28, 2007, which was assigned claim number 03-426. The claim is premised on an alleged permanent mobility disability and disability due to diabetes.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Jones entered CDOC custody in September of 1998. During her CDOC custody, she has been housed at the Colorado Women's Correctional Facility and the Denver Women's Correctional Facility. Her mandatory release date is in 2013.

4. Claimant suffers from diabetes, which was diagnosed in 1999. She takes glucophage and has generally kept her blood sugars under control. On approximately three occasions since 1999, she got light headed as a result of low blood sugars.

5. Claimant Jones has been diagnosed with neuropathy in her legs and feet, which may be the result of her diabetes. She also has plantar fasciitis. Additionally, Claimant's tendons in her left foot were severed in 1987. Claimant further states that she has problems with her right ankle. The neuropathy causes a tingling sensation in both legs and both feet, and has caused her toenails to turn purple. Until approximately 1½ years

ago, the problems with Claimant's lower extremities did not significantly impact her daily life activities. She was able to walk, run, work, and engage in activities. Beginning in late 2005 or early 2006, her symptoms became much worse. She was not able to get out of bed quickly, and for three or four days a week she had great difficulty moving around. She continued to work at her job in the canteen as a trainer and janitor, but had to sit down for 10 or 15 minutes several times a day. She states that by afternoon, her legs would become numb and that her entire left side became paralyzed. She had difficulty getting to the bathroom and getting out of bed. Claimant also complains that for the last year, she has experienced pain in her left heel. These symptoms have been persistent from late 2005 or early 2006 to the present. On cross-examination, Claimant stated that she goes to the gym and walks on the treadmill two or three times a week for 30 minutes.

6. Because of her mobility problems, Claimant has a first tier restriction and a restriction against utilizing stairs. Prior to 2006, she was able to negotiate stairs and was able to attend a life skills class on the second floor of the facility. However, after 2006, she could not walk up and down stairs and was unable to attend classes until she recently received an elevator pass.

7. Claimant Jones testified that in addition to the neuropathy, her diabetes has caused her to have diarrhea. This problem commenced in approximately February of 2007.

8. Claimant asserts that the CDOC has discriminated against her because of her diabetes and mobility problems by failing to provide proper medical treatment. Specifically, she contends that the medications provided to her to treat her lower extremity problems have not helped. She was not allowed to see a doctor for her feet until approximately seven months ago. She has not seen a doctor for her diabetes. Claimant also complains that except in 2001 and for a couple of weeks in 2003, she has not been allowed to check her blood sugars with finger sticks. She does have her blood checked every 90 days.

Additionally, Ms. Jones contends that CDOC has failed to provide her with medical boots. She received medical boots with inserts while at CWCF. When she arrived at DWCF, the medical boots and inserts were taken away. Three months later, she received a pair of medical tennis shoes. When the tennis shoes wore out in 2003, a pair of medical boots was ordered. They wore out in 2005, and the facility did not have medical boots that would fit the Claimant. As a result, she was provided with another pair of tennis shoes. These tennis shoes wore out in January 2007. When she put in a kite for an orthopedic consult, it was denied. Finally, the head of laundry supplied Claimant with another pair of tennis shoes.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to meet his burden of proving by a preponderance of the evidence that her diabetes constitutes a permanent disability under the ADA and/or the Rehabilitation Act. Other than the problems with her lower extremities, which will be discussed separately, Claimant has offered no evidence demonstrating that her diabetes per se substantially limits her ability to engage in any major life activity. The Special Master finds and concludes that Claimant's diabetes does not render her "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Claimant states that she has diabetes. However, a diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of

substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999). There is simply no competent evidence in the record that would allow the Special Master to find and conclude that Claimant's diabetes substantially limits her ability to care for oneself, perform manual tasks, see, hear, speak, breathe, learn or work. *See* 29 C.F.R. § 1630.2(h)(2)(i).

The Special Master finds and concludes that Claimant does have a mobility impairment resulting from a variety of conditions, some of which are related to her diabetes. However, up until 2006, her mobility impairment did not constitute a disability, because it did not substantially limit her ability to engage in one or more major life activities. Until 2006, Claimant was able to walk, run, exercise, work, and attend classes.

For purposes of discussion, we may assume that commencing sometime in 2006, her mobility impairment became sufficiently severe to constitute a "disability," within the meaning of the ADA and/or the Rehabilitation Act. Nevertheless, the Special Master finds and concludes that mobility disabilities arising after August of 2003 are not covered by the *Montez* Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate her disability prior to the execution of the Remedial Plan.

Additionally, to the extent that Claimant asserts that she is not receiving proper medical care and/or appropriate medication, such a claim is not cognizable under the ADA and/or the Rehabilitation Act. These issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. No such showing has been made here.

6

For all of the foregoing reasons, Ms. Jones' *Montez* Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Jones' *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before  January 14, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 27th day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

_____

Bruce D. Pringle,
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Final Order of Special Master this _29th_ day of October, 2007 to the following:

Ms. Zina N. Jones
#97766
DWCF
P.O. Box 392005
Denver, CO  80239


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203

/s/Susan L. Carter