IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-657
Category II
Claimant: Larry W. Mershon #44058
Address of Claimant: c/o Doris Kugler, 66966 WCR 80, New Raymer, CO 80742

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Larry Mershon. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Mershon submitted a claim on July 24, 2004, which was assigned claim number 02-657. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant entered CDOC custody in December of 1990. He was paroled in March of 2006. The record does not reflect all of the facilities in which Mr. Mershon was housed during his CDOC custody. However, it appears that for some or all of his CDOC custody, he was housed at Four Mile Correctional Facility, Arkansas Valley Correctional Facility, and Limon Correctional Facility.

5. Claimant Mershon's claim states that he has a permanent mobility disability because of a metal rod that was placed in his leg. The rod was inserted due to a fracture that appears to have occurred prior to Mershon's CDOC custody. Mr. Mershon indicates that the metal rod restricts the use of his leg to the extent that he cannot spend any time on his feet. Claimant also complains of nerve damage to his leg. He notes that he has persistent pain and burning around the area of the rod, as well as a loss of feeling in his right leg. Claimant further states that his leg "locks up," thereby subjecting him to the

3

potential for serious injury. Mershon asserts that he has fallen several times. He states that the impairment in his right leg will affect him in his profession as a construction worker, and will cause him to lose income.

6. In addition to the metal rod in his right leg, Claimant's medical records reflect that suffers from some degenerative changes at T12 and L1, and a complete loss of joint space with osteophytic production surrounding the joint on his right large toe. Surgery on his toe was discussed with him in 2000, but he decided to forego surgery unless the pain became more severe.

7. Claimant asserts that CDOC discriminated against him by failing and refusing to provide him with proper medical treatment. Specifically, he contends that CDOC has refused to remove the metal rod in his leg in a timely manner, thereby causing permanent injury and disability. He further alleges that CDOC discriminated against him by failing to provide him with vocational training that would allow him to obtain a job outside of the construction industry after his release.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

Although Claimant asserts that his mobility impairment substantially limits his ability to engage in major life activities, his medical records and other CDOC records relating to Claimant's incarceration paint a very different picture. From September of 1993 through September of 1994, Mershon was employed as a construction worker in the Recreation Department at Limon Correctional Facility. He painted the entire inside of the gymnasium, and worked on numerous other projects. In 1996, while at Arkansas Valley Correctional Facility, Claimant worked on various construction projects. In 1998, he helped construct new weight equipment for the yard at Arkansas Valley Correctional Facility. Also, in 1998, a Progress Assessment Summary noted that Mr. Mershon was very healthy and that no medical problems were reported during the review period.

In 1991, Mershon consulted with an orthopedist and requested that the metal rod be taken out of his right leg. At that time, Claimant reported no pain, but reported some numbness in his thigh. The doctor indicated that taking the rod out would have no effect on his numbness, and that there was no reason to remove the rod because it was not symptomatic.

The evidentiary record relating to Claimant's alleged mobility impairment is rather sparse. However, other than Claimant's assertions in his claim, there is no evidence to support his contention that he disabled as a result of a mobility impairment. All of the documentary evidence in his file supports a contrary conclusion. Based on the totality of the evidence, the Special Master finds and concludes that Claimant Mershon has failed to prove by a preponderance of the evidence that he is or was "disabled," within the meaning of the ADA and/or the Rehabilitation Act.

Additionally, it appears that Claimant's primary contention regarding discrimination by the CDOC is premised simply on a difference of opinion between him and his medical providers. In any event, even assuming that Claimant did not receive proper or timely medical care, this, in and of itself, does not establish a claim of discrimination under the ADA and/or the Rehabilitation Act. Such an issue may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984).

Furthermore, a claim for deliberate indifferent to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

For the reasons stated above, Mr. Mershon's *Montez* Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Mershon's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 14, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 27th day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Final Order of Special Master this 29th day of October, 2007 to the following:

Mr. Larry W. Mershon
#44058
c/o Doris Kugler
66966 WCR 80
New Raymer, CO  80742


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203


/s/Susan L. Carter