IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-406
Category III
Claimant: Charles Mosby #63611
Address of Claimant: LCF, 49030 State Highway 71, Limon CO 80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Charles Mosby. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, and after an evidentiary hearing held on October, 19, 2007, the Special Master makes the following Findings of Fact:

1. Claimant Charles Mosby submitted a claim on July 14, 2004, which was assigned claim number 02-620 pursuant to the *Montez* Remedial Plan. The claim is premised on alleged permanent disability due to a vision impairment. On March 19, 2007, the claim was reassigned to Category III, and was renumbered as 03-406.

3. Claimant Mosby entered CDOC custody in August of 1990. During his CDOC custody, he was been housed at a variety of facilities, including Colorado Territorial Correctional Facility, Fremont Correctional Facility, Shadow Mountain Correctional Facility, Bent County Correctional Facility, Four Mile Correctional Center, Huerfano County Correctional Center, and Limon Correctional Facility.

4. Claimant suffers from a vision impairment known as severe photophobia. As a result, he states that his eyes are extremely sensitive to light. He must wear tinted glasses or sunglasses whenever he is exposed to light, including indoor light. Without tinted lenses or sunglasses, Claimant indicates that he cannot see and loses his balance, that he cannot work, and that he cannot read the newspaper, books, or instruction manuals. He cannot take classes unless he is wearing tinted glasses. According to Claimant, his condition has persisted since 1984, when he suffered an eye injury at work. The condition has improved slightly over the years. However, since 1990, his sensitivity to

light affects him approximately 70% of the time. Claimant states that he requires prescription lenses, and that he cannot work, read, or play sports without them. Without prescription lenses, he cannot see the clock on the wall in his workplace.

Claimant is employed in Power Sewing, where he operates a serger (machinery that sews inseams and outseams). He states that he can no longer thread the machine, and requires assistance from his co-workers.

5. Claimant asserts that from the beginning of his CDOC custody until 2000, CDOC provided him with tinted prescription eyeglasses or allowed him to purchase tinted prescription eyeglasses from an outside vendor. The tinted prescription glasses allowed him to have good visual acuity and also provided relief from Claimant's photophobia. Commencing in approximately 2000, Claimant contends that CDOC adopted a policy that precludes inmates from obtaining eyeglasses from outside vendors and also refused to tint the eyeglasses provided by CDOC. Despite the change in CDOC policy, Claimant was allowed to continue wearing his existing tinted prescription eyeglasses until sometime in 2004, when he was paroled.

Claimant was returned to CDOC custody in September of 2005. He asserts that at that time, Claimant began discriminating against him by requiring him to dispose of his tinted prescription glasses. CDOC provided him with clear prescription glasses, but refused to tint them. Additionally, CDOC policy precluded him from obtaining tinted prescription glasses from an outside vendor. As a result, Claimant was relegated to utilizing clear prescription glasses provided by CDOC, which gave no protection from light and exacerbated his photophobia; to wear nonprescription sunglasses obtained from the canteen, which failed to correct his visual acuity deficiency; or to utilize clip-on sunglasses purchased from the canteen which did not allow him to properly use his bifocal lenses.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29

C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant does suffer from a mobility impairment. Regardless of whether photophobia is a disease, an organic medical condition, or a psychological condition, it is undisputed that its symptom is an increased sensitivity to light. Claimant's severe photophobia affects his ability to read, take classes, walk, and work.

The record is uncontroverted that up until 2005, Claimant was either provided with or obtained from outside vendors tinted prescription glasses which allowed him to engage in all major life activities despite his photophobia. As a result, the Special Master finds and concludes that from the inception of his CDOC custody until at least September 2005, Claimant's vision impairment did not constitute a "disability" within the meaning of the ADA and/or the Rehabilitation Act. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999).

In September of 2005, Claimant began to suffer the consequences of the CDOC policy which prevented him from utilizing tinted prescription eyeglasses. While it may be fairly debatable whether at this point in time Claimant's vision impairment rose to the level of a disability under the ADA and/or the Rehabilitation Act, the Special Master finds and concludes that it is not cognizable under the *Montez* Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures, was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer

discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan

In short, the Special Master finds and concludes that Claimant's vision impairment did not rise to the level of a disability within the time frame covered by the *Montez* Remedial Plan damage provision, and that CDOC did not discriminate against him because of his vision impairment during the applicable *Montez* time frame.

For the foregoing reasons, the Special Master finds and concludes that the claim of Charles Mosby must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant Mosby dismissing Mr. Mosby's *Montez* claim with prejudice.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 14, 2008** with the Clerk of the United States District Court at the following address: 901 19th Street, Denver, CO 80294.

SIGNED this 27th day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

---
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

      I hereby certify that I have mailed a copy of the foregoing Final Order of Special Master this 29th day of October, 2007 to the following:

Mr. Charles Mosby
#63611
LCF
49030 State Highway 71
Limon, CO  80826


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO  80203

                                              /s/Susan L. Carter