IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-218
Category:  II
Claimant:  Scott A. Gray, #47600
Address of Claimant:  SCF, P.O. Box 6000, Sterling, CO 80751-6000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Scott Gray.  The Special Master has reviewed the claim and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for

damages and/or for other relief.  This section states, in part, as follows:

> Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A.  COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B.  QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C.  PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

> 2.  The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

2

> 1.  Is the claimant a disabled individual who is a member
> of the class?
> 2.  Was the claimant otherwise qualified to participate in
> the programs or receive the benefits or services offered by
> DOC?
> 3.  Was the claimant discriminated against by DOC because
> of his or her disability? (e.g., were accommodations requested
> and denied because of the disability?)
> 4.  Did this conduct cause the claimant harm and if so, what is
> an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Scott Gray submitted a claim which was assigned claim number 02-218.  The claim is premised on an alleged permanent vision disability.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  Claimant first entered CDOC custody in 1994.  While in CDOC custody, Claimant has been housed at Sterling Correctional Facility (SCF), in Texas, and in the Centennial Correctional Facility (CCF).

4.  In February 1995, while in CDOC custody, Claimant's left eye was surgically removed.  As part of the surgery, the eye orbit was prepared for a prosthetic eye.  A prosthetic eye was furnished to Claimant in December 1995.  Sometime later in 1996, Claimant was found to have a staph infection in the eye socket.  Claimant contends that the infection was neither treated properly nor promptly and as a result the eye orbit surgery had to be redone.  Claimant says he is now disfigured as the eye socket has sunk into his face.  He blames CDOC medical for failing or refusing to properly treat him.

5.  Claimant says he is disabled because of his having only one eye.  He complains that he has no peripheral vision and bumps into people and things because he is unable to see on the left.  He complains of being housed in a two-man cell because he bumps into his cell mate.

6.  A review of the medical records submitted confirms that Claimant had his eye enucleated and did suffer a subsequent infection.  The records show that he did receive a prosthetic eye and has been prescribed eye drops and other medications.  He has had his vision tested and glasses have been

3

prescribed to correct the vision in his right eye. With the corrective lens in his glasses, Claimant has 20/20 vision on the right.

7. The records also show that Claimant has had several jobs while in CDOC custody, primarily in the kitchen. He has also worked as a janitor.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. The Special Master finds and concludes that Claimant has failed to demonstrate by a preponderance of the evidence that he has a permanent vision disability within the meaning of the ADA and/or the Rehabilitation Act. Claimant does have only one eye with the resulting loss of peripheral vision and loss of depth perception. However, in order to have a qualifying vision

4

disability, a Claimant must show that he is "permanently blind or … have a vision impairment not corrected to central vision acuity of 20/200 or better, even with corrective lenses." Claimant is permanently blind on the left but has vision on the right corrected to 20/20. Thus he does not meet the criteria for a vision disability. In addition, a Claimant must present evidence establishing that his vision problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

6. As noted above, the United States Supreme Court has stated that the key evidence in establishing a substantial limitation on a major life activity is the Claimant's own experience. In the context of the instant case, a Claimant must present evidence identifying the specific programs and benefits that he cannot participate in, and/or the specific facilities that he cannot access due to a disability covered by the Remedial Plan. Claimant has failed to provide any information as to how his alleged vision impairment affects his ability to engage in any major life activity other than to state that he bumps into things.

7. Since Claimant has failed to establish that he has a permanent vision disability under the ADA and/or the Rehabilitation Act, any disputes he has with the CDOC medical providers cannot be deemed discrimination because of a disability. At most, he may have a claim for deliberate indifference to his medical needs. However, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

8. Because Claimant Gray has failed to show that his vision problem constitutes a disability within the meaning of the ADA and/or the Rehabilitation Act, his Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Gray's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 28, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 16th day of November, 2007.

5

BY THE COURT:

*/s/ Richard C. Davidson*

_____

Richard C. Davidson
Special Master