IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-264
Category:  II
Claimant:  Junior Lybrand, #88747
Address of Claimant:  49030 State Highway 71, Limon, CO 80826-8908

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant Junior Lybrand. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for

damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Lybrand submitted a claim which was assigned claim number 02-264. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant entered CDOC custody in February, 1996. While in CDOC custody, Claimant has been housed at Limon Correctional Facility (LCF).

4. Claimant argues that he suffers from "100% arthritis in every joint." He also says that he suffers from asthma and emphysema and has chronic back pain. He says that these afflictions make it difficult to walk, climb stairs, or go out into the yard in cold weather. He also has trouble sleeping because of the hard bunk and thin mattress.

5. Claimant was formerly employed in the laundry and currently is assigned to raise the flag. He claims that he has been discriminated against by CDOC when he was told by medical that he could not work in the laundry because of his asthma and emphysema and consequently lost the income of that job. He is also discriminated against by the refusal to give him an extra mattress and house him on the bottom tier. He lives on the second tier and has to climb the stairs to get there. He has, however, been given certain accommodations. Since he has difficulty walking the 300 yards to the chow hall, he is allowed to eat in his room. He is medically restricted from standing more than 30 minutes or lifting more than 10 pounds. He has been given a handicapped job. He says he is medically restricted to a single cell, lower tier, and lower bunk. However, he says this is being ignored and he is housed on the second tier.

6. Claimant's medical records confirm that he has numerous medical problems including arthritis and chronic obstructive pulmonary disease, COPD. He also suffers from other ailments not related to this case. But the medical records also show that Claimant moves around the clinic and exam room without difficulty and is able to walk. It appears that Claimant's most disabling condition is the COPD which interferes with his ability to breathe. It appears that it is this condition that causes him to stop and rest rather than some lower extremity condition that interferes with his mobility.

7. It is also apparent from the medical records that Claimant feels that he is not receiving proper or adequate medical treatment. Whether this is correct is not relevant since such claims are not cognizable under Montez.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility

4

under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. The Special Master finds and concludes that Claimant has demonstrated by a preponderance of the evidence that he has a permanent mobility disability within the meaning of the ADA and/or the Rehabilitation Act. There is no doubt that Claimant suffers from numerous health issues including arthritis in his hips and knees. The difficulties he has with arthritis, coupled with the COPD result in his being unable to walk or climb stairs without resting. Claimant must present evidence establishing that these problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999). Claimant has done so.

6. Claimant asserts that his arthritis and COPD problems substantially limit his major life activity of walking. Some of his medical records run counter to this assertion and state that Claimant can and does walks without difficulty in the clinic and exam room. But these are short distances. Because Claimant avoids walking longer distances to minimize his difficulties and when he must do so, is only able to walk longer distances by stopping and resting, the Special Master finds and concludes that this does rise to the level of a substantial limitation on the major life activity of walking.

7. Claimant says the loss of his job in the laundry was discrimination because of his disability. This was in fact caused by his COPD, not by his mobility disability. Being taken out of the laundry because it was damaging to his health was not discrimination but was done to protect the Claimant. The issue of housing is more troubling. Claimant has said that he is on restriction to single cell, bottom tier and lower bunk. That being the case, Claimant is suffering discrimination by being housed on the second tier and being forced to climb stairs to get to and from his cell.

8. Claimant should be housed on the first tier pursuant to his medical restrictions. Furthermore, Claimant is entitled to an award of damages in the sum of $300.00.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Claimant awarding him the sum of $300.00 in damages and ordering that he be housed on the first tier pursuant to his medical restrictions.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 28, 2008** with the Clerk of the

United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 16th day of November, 2007.

> BY THE COURT:
>
> */s/ Richard C. Davidson*
> _____
> Richard C. Davidson,
> Special Master