IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-266
Category: II
Claimant: Fernando Ramirez, #99458
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Fernando Mora Ramirez. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for

damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.    DEFINITIONS

A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

2.  The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1.  Is the claimant a disabled individual who is a member of the class?
> 2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Ramirez submitted a claim which was assigned claim number 02-266.  The claim is premised on an alleged permanent mobility disability.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  The Claimant has been in CDOC custody since January, 1999. While in CDOC custody, Claimant has been housed at Buena Vista Correctional Facility (BVCF).

4.  Claimant suffered a right ankle fracture in approximately 1998.  Specifically, he suffered a "pilon type right ankle fracture."  This was treated non-operatively.  An x-ray taken on July 12, 2000 shows joint disruption, joint space narrowing, and some anterior lipping.  Claimant uses an ankle brace for stability.  On October 26, 2000 a podiatrist, Dr. Wentz, diagnosed developing traumatic arthritis and noted that an ankle fusion may ultimately be required.  He recommended that Claimant have a higher top boot for use with the ankle brace in order to stabilize the ankle and slow the development of arthritis.  This boot was ordered and fitted but then disallowed for reasons not understood by Claimant.  He asserts that he has been denied these boots as necessary medical devices to assist him in alleviating his pain and preventing further deterioration of his ankle.

5.  Claimant says that he can walk but quickly develops pain which requires him to stop.  He is unable to walk for exercise.  He admits that he may be able to walk 100 yards but only with "serious pain" in his ankle and back.  The pain in his back seems to be caused by a leg length discrepancy related to his ankle injury.

6. The medical records confirm that Claimant suffers from a previously fractured right ankle. He was referred for a podiatry consult by medical. After the recommendation that he be issued high top boots, those boots were ordered and received. They were fitted to Claimant while using the ankle brace and did provide more support and comfort. Nevertheless, Claimant has now been denied the boots despite his need for them.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. The Special Master finds and concludes that Claimant has demonstrated by a preponderance of the evidence that he has a permanent mobility disability within the meaning of the

ADA and/or the Rehabilitation Act.  He has shown that he has trouble walking because of his ankle injury.  Medical has recognized his condition and has attempted to help him by obtaining an ankle brace for him and referring him for a podiatry consult.  Following that consult, medical ordered the high top boots that were recommended and fit them to Claimant.  The benefit of the boots was recognized. It is unclear why the boots have not been given to him because of his demonstrated need.  Certainly, the high top boots fall within the definition of medical devices necessary for Claimant's well being.

6.  Claimant asserts that his back and ankle problems substantially limit his major life activity of walking.  While he can walk to some degree, the medical records show that his condition is deteriorating.  In addition, he is unable to participate in walking for exercise.

7.  Claimant should be immediately issued the boots ordered for him.  In addition, he is entitled to be awarded the sum of $250.00.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant ordering CDOC to immediately issue the high top boots ordered for him.  In addition, Claimant is awarded the sum of $250.00 in damages.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 28, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294

SIGNED this 16th day of November, 2007.

BY THE COURT:

*/s/ Richard C. Davidson*

_____

Richard C. Davidson,
Special Master