IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

---

Claim Number: 02-350
Category:  II
Claimant:  Andrew Clarenson, #111548
Address of Claimant: 1704 Wildwood Road, Bloomington, IL 61704

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Andrew Clarenson. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for

damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Andrew Clarenson submitted a claim which was assigned claim number 02-350. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3. Claimant entered CDOC custody in June, 2001. While in CDOC custody, Claimant has been housed at Sterling Correctional Facility (SCF).

4. Claimant says he suffers from high blood pressure that causes him to be dizzy. He says this makes it hard for him to climb stairs or ladders. When he walks he has to be careful. He is afraid of falling down stairs or off his bunk. He also has a seizure disorder that runs in his family.

5. Claimant asserts that he has been denied medical assistance through medical charging a co-pay. He can't pay the co-pay and has to do without medical care. He claims he has been denied a transfer to a minimal honor camp and has lost good time as a result of his medical problems. The records do show that he is medically ineligible for camps and that he is lower bunk and first tier housing restricted.

6. The medical records confirm that Claimant suffers from high blood pressure. He also has some mental or emotional problems. The medical records do not, however, show that he has a lower extremity problem that causes him to be unable to walk. The record from Parkview Medical Center dated September 26, 2001 shows that he was running when he had some sort of attack. The records subsequent to this incident show Claimant concerned about his high blood pressure and other

complaints and a constant attempt to be transferred to a camp or to another facility. There are no indications of a serious lower extremity defect or problem.

      7. The records provided to the Special Master reveal that Claimant has had several jobs while in CDOC custody, has received his GED and has taken other classes.

### III. CONCLUSIONS OF LAW

      1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

      2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

      3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

      4. Based on the criteria established by the Rehabilitation Act, the ADA and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

      5. The Special Master finds and concludes that Claimant has failed to demonstrate by a preponderance of the evidence that he has a permanent mobility disability within the meaning of the ADA and/or the Rehabilitation Act. There is no doubt that Claimant suffers from high blood

pressure and various other ailments. However, the fact that Claimant has medical problems alone does not in itself render him disabled or qualify him for relief. Rather, he must present evidence establishing that these problems substantially limit his ability to engage in one or more major life activities. The United States Supreme Court has noted that the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184 (2002). Claimants must prove the limitations caused by their impairments are substantial in terms of their own experience. *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999).

6. Claimant asserts that his high blood pressure interferes with his ability to walk. However, the Special Master finds and concludes that this does not rise to the level of a substantial limitation on the major life activity of walking caused by a permanent lower extremity defect. This finding and conclusion is consistent with the federal case law dealing with similar mobility issues. *E.g., Talk v. Delta Airlines, Inc.,* 165 F.3d 102 (5th Cir. 1999); *Kelly v. Drexel University,* 94 F.3d 102 (3d Cir. 1996); *Graver v. Nat'l Eng'g Co.,* 1995 WL 44344 (N.D. Ill., July 25, 1995).

7. Since Claimant has failed to establish that he has a permanent mobility disability under the ADA and/or the Rehabilitation Act, his disputes the CDOC medical providers cannot be deemed discrimination because of a disability. At best, the failure of CDOC to provide such medical treatment may give rise to a claim of deliberate indifference to medical needs. Such claims are not cognizable under either the ADA or the Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. As stated above, no such showing has been made here.

8. Because Claimant Clarenson has failed to show that he has a disability within the meaning of the ADA and/or the Rehabilitation Act, his Claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Clarenson's Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 28, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 16th day of November, 2007.

BY THE COURT:

*/s/ Richard C. Davidson*

_____
Richard C. Davidson,
Special Master