IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

_____

Claim Number: 02-378
Category:  II
Claimant:  Richard Hickey, #76807
Address of Claimant: TCF, P.O. Box 2000, Trinidad, CO 81059

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Richard Hickey. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for

damages and/or for other relief.  This section states, in part, as follows:

> Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.      General inconvenience or nominal damages;
> II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.     Damages due to severe physical injuries; and
> V.      Damages due to death.
>
> Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.    DEFINITIONS
>
> A.  COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B.  QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C.  PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

> 2.  The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

2

> 1.   Is the claimant a disabled individual who is a member of the class?
> 2.   Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3.   Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4.   Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters.  A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Richard Hickey filed a claim which was assigned claim number 02-378.  The claim is premised on an alleged permanent mobility disability.

2.  Claimant's claim was assigned to Category II pursuant to the Remedial Plan as set forth above.

3.  Claimant Richard Hickey first entered CDOC custody in April, 1987.  While in CDOC custody, he was housed at Fort Lyon Correctional Facility (FLCF), Arkansas Valley Correctional Facility (AVCF), Kit Carson Correctional Center (KCCC), Fremont Correctional Facility (FCF), Limon Correctional Facility (LCF), Centennial Correctional Facility (CCF) and at Four Mile Correctional Center (FMCC).

4.  Claimant suffers from chronic knee problems in both knees.  In addition, he says he has deformed feet and that he needs bunion surgery on his feet.  He has had several surgical procedures on his right knee that he says were all failures.  He says he has a torn ACL in his left knee that needs surgery but he is afraid to have the surgery because of his history of failed surgeries on the right. He also claims to suffer from "chronic psychological, emotional and mental torture" because of his condition

5.  Claimant asserts that CDOC has discriminated against him by improperly denying his adequate pain medication after surgery, denying him physical therapy and follow up with a surgeon.

6.  The medical records confirm that Claimant has had several surgeries.  The records also show that Claimant has refused several surgeries including bunion surgery.  The records also show

that at times he is able to ambulate, sit down and rise from a chair without assistance and walk without a limp.  The records do show that Claimant has received a great deal of treatment but they do not show that he has any significant permanent mobility disability.  It appears that the surgeries were successful and that as a result Claimant is able to walk.

7.  The records also show that Claimant has been given numerous restrictions and has been furnished with medical devices such as crutches, a cane, a knee brace and tennis shoes.  The Special Master is unable to find any evidence that Claimant was ever denied needed medical care.  In addition, Claimant has been able to work and to take classes during his incarceration.

### III.  CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

3.  The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.  Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.  As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC.  Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities.  The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6.  The Special Master finds and concludes that Claimant has failed to sustain his burden of establishing by a preponderance of the evidence that he has a permanent mobility disability that is covered by the Remedial Plan. While the Remedial Plan states that it covers persons with "mobility impairments," *Remedial Plan* ¶ III(A), it does not generally define the term "mobility impairments." However, the references to "mobility impairment" in the Remedial Plan indicate that the parties intended the term to encompass diseases, injuries, and/or conditions involving the lower extremities that impose a substantial limitation on the major life activity of walking.  *See, Remedial Plan* ¶ V(A)(1)(dealing with presumed need for special housing, and defining "permanent mobility impairment as "a permanent lower extremity mobility impairment that substantially limits walking."); *Remedial Plan* ¶ XVI(A)(identifying health care appliances as including "orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs . . . gloves for wheelchair use only," thereby strongly suggesting that "mobility impaired" inmates are those with diseases, injuries, and/or conditions involving their lower extremities).

7.  The Special Master likewise finds no evidence of any discrimination as claimed by Claimant.  The totality of the records shows that Claimant has received a great deal of medical care from CDOC including several surgeries.  More surgeries were available to him but he refused.  In short, the Special Master concludes that Claimant has failed in his burden of proof.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendant and against Claimant Richard Hickey, dismissing his claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 28, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 16th day of November, 2007

5

BY THE COURT:

*/s/ Richard C. Davidson*

_____
Richard C. Davidson
Special Master