DC FORM 750-01B (11/15/06)

## COLORADO DEPARTMENT OF CORRECTIONS
## LEGAL ACCESS PROGRAM
# PHOTOCOPY REQUEST FORM

LAST NAME: _____ FIRST INITIAL: _____ DOC #: _____

FACILITY: _____ UNIT: _____ DATE SUBMITTED: _____

LIST THE DATE OF ANY **COURT IMPOSED DEADLINE**: _____

A signed and completed miscellaneous withdrawal slip must accompany this request.
The Legal Access Program copies only original pleadings in the nature of habeas corpus, post conviction relief and conditions of confinement. Please list each document to be copied on separate lines and include description, number of pages you are submitting and number of copies you are requesting. Incomplete forms will be returned or denied.

| DESCRIPTION OF DOCUMENTS SUBMITTED | # PAGES SUBMITTED | # COPIES REQUESTED | # COPIES APPROVED |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

**OFFENDER SIGNATURE (REQUIRED)** _____

### DO NOT WRITE BELOW THIS LINE ~ OFFICIAL USE ONLY

CHARGE TO ACCOUNT: $ _____
DATE RECEIVED AT SENDING FACILITY: _____ NUMBER OF PAGES RECEIVED: _____
DATE RECEIVED IN PROCESSING LAW LIBRARY: _____
NUMBER OF PAGES RECEIVED IN PROCESSING LAW LIBRARY: _____
DATE COMPLETED: _____
STAFF/CLERK PHOTOCOPIER INITIALS: _____
    METER END: _____
MINUS   METER BEGIN: _____
    TOTAL COPIES: _____
MINUS   ADMINISTRATIVE COPIES: _____
    TOTAL COPIES TO OFFENDER: _____ DATE DENIED: _____

Your request has been **DENIED** _____ in whole _____ in part  for the following reasons:

_____ Your request form was not properly completed (Missing required signature, full cell location, facility, unit, tier, cell, DOC #, date, etc.)
_____ The material you have submitted does not meet program definitions of legal material as described in AR 750-1. Legal photocopies are limited to the areas of habeas corpus, post conviction and conditions of confinement.
_____ Your photocopy request exceeds the page limit established by the legal access program (see attached). Also see posted photocopy policies. Regardless of your ability to pay, you will be supplied only the required number of copies as dictated by court rule or statute. Your request is in excess of those requirements (see attached). Also see posted photocopy policies.
_____ You have not submitted the documents to be copied.
_____ You must submit a completed miscellaneous withdrawal ticket with your request, regardless of indigence status.
_____ Attachments/exhibits to a document must be submitted with the original document, even if the original is not being copied.
_____ Your account is in arrears for at least $300. See AR 750-1 for additional information.
_____ The legal access program will not copy A.R.s, I.A.s, O.M.s, or material contained in the law library, even as attachments/exhibits.
_____ The legal access program will not copy transcripts, incomplete documents, unsigned documents, altered documents, and/or blank forms.
_____ The legal access program will not copy non-original documents, previously-copied documents, incoming correspondence, administrative correspondence or documents (account statements, mittimus, etc.), grievances, COPD appeals; *except* as exhibits attached to an original pleading being filed with the court or attached to a letter to a judge or attorney of record. Your pleading **must** include a statement referring to the attached exhibits in order for them to be copied.
_____ Other: _____

20052

# STATE OF COLORADO



**COLORADO DEPARTMENT OF CORRECTIONS**
Centennial Correctional Facility          Colorado State Penitentiary

P. O. Box 600                             P. O. Box 777
Canon City, CO  81215-0600                Canon City, CO 81215-0777
Phone: (719) 269-5510                     Phone: (719) 269-5120
FAX:  (719) 269-5545                      FAX:  (719) 269-5125

Bill Owens
Governor

Joe Ortiz
Executive Director

# M E M O R A N D U M

DATE :   8/30/06

TO :   Olguin #76704

FROM :   Case Manager Roberts

SUBJECT :   Classification, and movement

After reviewing your reclassification and movement, it appears that you were classed as close custody on 2/24/87, and placed  At Shadow Mountain Correctional Facility.  Your were reclassed to medium on 4/29/87 and moved to Fremont Correctional Facility on 6/5/87.   You were reclassed to close on 8/20/87 and moved back to Shadow Mountain on 9/8/87.   You were again reclassed to medium on 7/9/1991, and progressed to Fremont on 8/26/91.  Again  reclassed to close on 1/26/93.  You were placed in AD-SEG on 8/20/93 and move to CSP on  9/24/93.  There were several times that you were in the infirmary during these time frames.

RECEiVED This on 8- 31- 2006, aT mY (ell door, on ThE P,m, ShifT,



# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

**Colorado State Penitentiary**
Clinical Services, Unit II (CSP, CWCF)
P. O. Box 777
Canon City, CO 81215-0777
Phone: (719) 269-5190
Fax:   (719) 269-5192

Bill Owens
Governor

John W. Suthers
Executive Director

## M E M O R A N D U M

TO:          Felix Olguin  #76704
             F7-22

FROM:        Marlene Bowers, MRT II

DATE:        February 11, 2000

SUBJECT:     Information Requested

*************************************************************************************************************************

Mr. Olguin,

   I have some good news for you. After thoroughly going through your file, I was able to locate the records we thought were missing. The records were simply misfiled. I found the records from East Morgan County Hospital in Brush regarding the car crash on October 31, 2000. A copy of these records was sent with you to the CTCF infirmary.

   I also found the letter from the Step III Grievance Officer Frank Ruybalid. If you remember we requested a copy of this Otober 14, 1994, step III grievance from Mr. Ruybalid, since there was not a copy in your file. This was received and placed in your medical file on September 17, 1999.

   If you would like time to look over these records, please let me know, and I will schedule you for next week.

   I hope this will assist you.

horoughTY; means: (1): CompLETE (2): EXHAWSTIVE (3): (a-Search)
4): very CareFul,

**MEMORANDUM**

TO:          **Mr. Felix Olguin**
                   **DOC #76704, CSP, A-3-25**

FROM:       **David D. Holt, Ph.D.**    *David D. Holt*
                  **Clinical Administrator**

DATE:       **February 28, 2001**

RE:           **Request for Interview slip dated 2-15-01**

Mr. Olguin, I do not "love" to respond to sick call kites. On the contrary, sometimes it takes up a lot of administrative time to research the health care issues for patients to respond in a intelligent and fair manner. I do resent however responding to frivolous kites that are simply an exercise or task. In receiving the Request for Interview slip above, along with two letters addressed to Ms. Marlene Bowers, I did consult with Ms. Bowers. She indicated that she has attempted several times in the past to meet with you regarding the records issued by the East Morgan County Hospital concerning the automobile accident that occurred in 1985, but you failed to review the Records, instead choosing to bring up other grievances. It is not our responsibility to do extensive research for you and document in detail the specific events. You need to review the records for yourself and select what you want copied. If you desire to review your Medical Records, I would encourage you to contact Ms. Bowers again, but you need to stay on course and not use the meeting as a means to air other complaints.

Finally, the answer is *no* concerning your inquiry about a documented "Life-threatening illness or diseases" in your Record. The only exception to this is that you suffer from aging, which all of us have to contend with as human beings.

cc: Inmate Record

# STATE OF COLORADO

**COLORADO DEPARTMENT OF HUMAN SERVICES**

Office of Behavioral Health and Housing
George Kawamura, Manager
Director of Hospital Services
Elizabeth Stillman

**COLORADO MENTAL HEALTH INSTITUTE AT PUEBLO**
1600 West Twenty-Fourth Street
Pueblo, Colorado 81003-1499
Phone (719) 546-4000
TDD Personnel (719) 546-4628
FAX (719) 546-4484
www.cdhs.state.co.us

Robert L. Hawkins
Superintendent



Bill Owens
Governor

Marva Livingston Hammons
Executive Director

November 2, 2001

TO WHOM IT MAY CONCERN

RE:  Olguin, Felix P.
Case# 83345

This is to inform you Felix P. Olguin was admitted to and discharged from the Colorado Mental Health Institute at Pueblo on the following dates:

| Admitted: | Discharged: |
|-----------|-------------|
| 11/1/85 | 6/8/86 |
| 5/31/90 | 7/8/90 |
| 5/24/93 | 6/25/93 |
| 7/18/94 | 2/13/95 |
| 2/13/95 | 2/28/95 |
| 5/24/95 | 12/8/95 |
| 12/8/95 | 12/21/95 |
| 12/21/95 | 1/9/96 |
| 1/9/96 | 4/15/97 |
| 6/17/99 | 6/18/99 |
| 7/26/99 | 7/27/99 |
| 10/22/99 | 10/23/99 |
| 12/16/99 | 12/20/99 |
| 7/16/01 | 7/16/01 |
| 8/24/01 | 8/24/01 |



DEFENDANT'S EXHIBIT

E   (4/27/05)

APPENDIX (A)

Felix Paul Olguin
CMHIP #51823
Competency Evaluation
Robert B. Goos, M.D.
Page 3

unable to present it in any kind of convincing fashion. He seems to feel that he has been wronged by the Judicial System. He also wanted to present to me that he felt he was not capable of completing this 35 (c) when he was first arrested because of some problems with his Attorney and comprehension of what this particular procedure entailed. At no time in my review of the records was I able to find any evidence that antipsychotic medications resulted in any relief of symptoms for Mr. Olguin. A review of his developmental history supports the diagnosis of Antisocial Personality Disorder. He displayed symptoms of Conduct Disorder at age nine, when he began to run away from home frequently. He was truant from school and often suspended. It was reported that he would kill pet white rats in the classroom. There was also noted a long history of aggressive behavior towards other children and animals. Examples reported have included that he enjoyed hanging cats by the neck and putting firecrackers in their mouth. His first sexual assault occurred at age thirteen. He was involved in many episodes of theft as a juvenile and had a pattern of aggressive behaviors.

**EDUCATION HISTORY:** See 983 P.2d 805, People v. Vigil, (Colo. App. 1999 Page 6,

It was reported in old records that Mr. Olguin quit school in the eighth grade, but he told me it was in the seventh grade. I.Q. testing done at the Department of Corrections showed borderline intellectual functioning. There was one report that indicated dull normal intelligence. He has attended GED classes at the Department of Corrections.

**WORK HISTORY:**

It was reported that Mr. Olguin had a variety of short-term jobs. It was also reported that when he was living in Oklahoma City in 1982 he worked at a landscaping business.

**LEGAL HISTORY:**

Mr. Olguin had a number of offenses as a juvenile. In February, 1977, he was arrested and convicted of First-Degree Sexual Assault. He spent four years and ten months in prison, but was paroled in 1981. He was out for fifteen days, then was rearrested for Criminal Trespassing. He got out of prison in 1982. It was in October, 1985 that he allegedly kidnapped and raped the woman while her two-year-old son was present. He received a thirty-two year sentence for First-Degree Sexual Assault and a forty-eight year concurrent sentence for Second-Degree Kidnapping.

OLGUIN, FELIX PAUL
51823  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  /NA/
11-10-03  DOB  07-18-56  M
EP 18  DOC 76704  OLD  83345
WELD  COMP  EX  F/CSP 76704

**Colorado Mental Health Institute at Pueblo**
**OBSERVATION REPORT**

Ward   F-1
150 page 1 (10/93)

The PeoPle in Their answer Brief, on Page, 8, From Their Analysis,

Claimed: That Mr, olgvin's Sentence has expired on May 28, 1980).

when in Fact, The colorado State Reformatory, dis-charge, Papers Said in August 26, 1981, and The in-mate Files, and case managel Files,

Phone: No, To BVCF is 719-355-2404

and The Phone: No, For BVCF clinical service P.o, Box 2017 BVCF. Co 81211 Phone: No, 719-395-2404

Fax: 719-395-7235

The time limitation does not apply if the trial court finds that the defendant's failure to seek relief within the applicable period was the result of circumstances amounting to justifiable excuse or excusable neglect.  § 16-5-402(2)(d), C.R.S. (2006).

Although the trial court did not address the timeliness of the defendant's Crim. P. 35(c) motion, this Court may consider the procedural bar.  § 16-5-402(1.5), C.R.S. (2006) (authorizing appellate court to apply time bar even though issue not raised in the trial court); People v. Shepard, 151 P.3d 580, 585 (Colo. App. 2006).

Here, the defendant entered a guilty plea, and did not file a direct appeal. Thus, the 3-year time limits of § 16-5-402 began to run when he was sentenced on May 26, 1977, and expired on May 26, 1980.  Because this date was prior to July 1, 1984, the defendant was entitled to a grace period for filing a collateral attack until July 1, 1989.  Wiedemer, supra; People v. Fagerholm, 768 P.2d 689 (Colo.1989).

The defendant has alleged that he was mentally incompetent, and thus, had justifiable excuse or excusable neglect under § 16-5-402(2)(d) for failing to collaterally attack his conviction.  However, he was competent to stand trial in 1986 when he was convicted by a jury of offenses charged in Weld County case

8

COLORADO DEPARTMENT OF CORRECTIONS
LEGAL ACCESS PROGRAM
## REQUEST FOR LEGAL ASSISTANCE

DC Form 50-01A (11/15/06)

APPENDIX (B)

INCOMPLETE FORMS WILL BE DENIED.

TODAY'S DATE: 7-30-2007

LAST NAME: Felix Piolgmin   FIRST INITIAL: P   DOC #: 76704

FACILITY and HOUSING UNIT/CELL: C-4-15   WORK/PROGRAM ASSIGN. INCL. TIME: none

SESSION TIME REQUESTED* NA AM SESSION   NA PM SESSION
*Preferences will be taken into consideration for scheduling purposes; however, there is absolutely no guarantee that an offender will be scheduled as requested.

THE DATE OF ANY COURT IMPOSED DEADLINE: none yet has been set,   Amended from the (o)
appeal court
**ANSWER THE FOLLOWING. INCOMPLETE FORMS WILL BE DENIED**
NATURE OF MATTER: _____ Habeas Corpus   _____ Conditions of Confinement   ✓ Post Conviction Relief
Other: _____

ARE YOU CURRENTLY REPRESENTED BY AN ATTORNEY:   YES _____ NO ✓   Reply

HAS THIS MATTER IN WHICH YOU NEED ASSISTANCE BEEN FILED?   YES ✓ NO _____
IF YES, PROVIDE THE FOLLOWING: CASE # AND COURT appeal No: 06 (A0692 and (liminal Case No. 77(R)140
STATE THE TYPE OF ASSISTANCE YOU REQUIRE:   [PLEASE WRITE LEGIBLY]

1. From 1977-2007, if an inmate is on as obsi condei, a parole violator, and fugitive status, and he is out-of-the-state of colorado, thee is no question here. ~~Rxxxnotxxx~~

2. In some case, prisoners who have not been transferred out-of-state do they have a legitimate need for out-of-state legal materials [ a lot of the please see attached list   yes or no check one permission give] what is available from the csp Law library.   laws of other out of state.

3. Do colorado Doc officials have an duty-bound-and an obligation to make them available,   yes or no check one
I can't answer legal questions.   FelPion

JUL 31 2007   OFFENDER SIGNATURE   AUG 0 1 2007
DATE RECEIVED: _____   DATE ACCESS PROVIDED: _____

Your request has been DENIED for the following reasons:   DATE DENIED: _____

_____ Your request form was not properly completed (missing required signature, full cell location, facility, unit, tier, cell, assignment, DOC #, date, etc.)

_____ You have failed to submit the proper form. Please resubmit: _____

_____ The Legal Access Program does not accept the "Request for Interview" form for any reason.

_____ The Legal Access Program does not provide the forms you have requested.

_____ The Legal Access Program only provides addresses for courts and attorneys. You must request an address for a specific court or attorney.

_____ You may bring your request into compliance and **resubmit a new form**. A photocopy of this denied form will not be accepted.

_____ The legal access program cannot assist you with your request. It falls outside our program parameters.

_____ Other _____

METER END: 47180   MINUS (-) METER BEGIN: 47178   EQUALS (=) TOTAL ADMIN COPIES: 2
20027   Please Print legibly ok

*Appendix (C)*

# STATE OF COLORADO

COLORADO DEPARTMENT OF HUMAN SERVICES

OFFICE OF DIRECT SERVICES
Robert Rossi, Manager
Garry Toerber, Ph.D., Associate Manager

COLORADO MENTAL HEALTH INSTITUTE AT PUEBLO
1600 West Twenty-Fourth Street
Pueblo, Colorado 81003-1499
Phone (719) 546-4000
TDD Personnel (719) 546-4628
FAX (719) 546-4484

Robert L. Hawkins, ACSW
Superintendent

Bill Owens
Governor

Marva Livingston Hammons
Executive Director

July 19, 2001

Felix Olguin
DOC #76704 A-3-25
San Carlos Correctional Facility
PO Box 3
Pueblo, CO  81003

RE:  Letter dated 7-9-01

Dear Mr. Olguin:

I received your letter dated 7-9-01.  I have reviewed your medical record from your admission of 11-1-85 through 11-13-85.

**There is no indication in your record of any law enforcement agency interviewing you at the hospital.**

Sincerely yours,

Mabel Walker

Mabel Walker, RHIT
Supervisor, Medical Record Services

Copy:  Chart

**DEFENDANT'S EXHIBIT**

Q (4/27/05)

The mission of CMHIP is to provide quality mental health care to the people of Colorado.

APPENDIX (D)

R6/2757/WKB

6-27-2007,

DC FORM 850-4A (10/04)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number  C SO6/07 - 1056

STEP (Circle One) ① 2  3

ADA? Yes ☐ No ✓

| NAME Felix P. Olguin | DOC NO. 76704 | FACILITY CSP |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

C-4-15

Subject of Grievance and Requested Remedy:

1, The issue is whether, AG, DOC and/or CSP, and/or The co. parole board 2, (can use any of my Past discharged criminal convictions and sentences, 3, from 1975, SVCF and 1981, and 1986, and my present, 4, To and for denying my chances for parole, 5, based on not pertici pating nor completeing the required by statu and policies THE SEX OFFENDER TREATMENT PROGRAM, etc,

My desired resolution and remedies are (A) TO Know whether such practice were unacceptable, (B) illegal, (C) whether those practices renders parole eligible constitutionally impermissible, see the standard 22-2.4 (f) people v, Graham 793 P.2d 600, 601 (colo, App, 1989) and moland v, people, 757 p.2d 137, 143, (colo, 1988) (please address all of the paragraphs, No's of,

| DATE: 6-15-2007 | OFFENDER SIGNATURE  Felix P. Ou |
|---|---|
| DATE RECEIVED: | RESPONDING STAFF SIGNATURE & ID |

RESPONSE

see

attached response

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 6/12/07 | SIGNATURE/PRINT NAME & STAFF ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

| DATE: 6/18/07 | SIGNATURE/PRINT NAME & STAFF ID #   other |
|---|---|

R. Buffum #4474

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

| DATE: 7-19-07 | OFFENDER SIGNATURE/PRINT NAME & DOC #  76704  Felix P. Ou |
|---|---|

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"   7/16
Page 1 of 1

RECEIVED JUN 2 1 2007

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**
Centennial Correctional Facility          Colorado State Penitentiary

P. O. Box 600                              P. O. Box 777
Canon City, CO  81215-0600                Canon City, CO 81215-0777
Phone: (719) 269-5510                     Phone: (719) 269-5120
FAX:  (719) 269-5545                      FAX:  (719) 269-5125



Governor
Bill Ritter

Executive Director
Aristede Zavaris

## M E M O R A N D U M

DATE : 07/02/2007

TO :  Doc No: 76704        OLGUIN, FELIX

FROM : Steve Owens, Case Management Supervisor

SUBJECT : CS06/07-1056

Note the following AR 850-04.

"This grievance procedure may not be used to seek review of COPD convictions, administrative segregation placement, decisions of the Reading Committee, classification, sex offender designation, parole board decisions, or sentence computation. Code of Penal Discipline convictions, administrative segregation placements, parole board decisions, and decisions of the Reading Committee have exclusive appeal procedures. Classification is entirely at the discretion of the administrative head and classification committee of each institution. Sex offender designation and sentence computation arise from judicial proceedings involving individual offenders and require judicial review and adjustments. Decisions of the grievance officer are not grievable. **Calculations and/or awards of meritorious/earned time credits are grievable.**"

"The grievance shall clearly state the basis for the grievance and the relief requested in the space provided on the form. Additional pages will not be considered except at the Step 3 level when relevant exhibits may be attached, if they are reasonably related to proving the claim to the grievance officer."

In this grievance you have not defined a specific relief.  Since there is no proposed resolution, this grievance is denied.

DC FORM 850-4A (10/04)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number _CS06/07-1056_          STEP (Circle One)   1  (2)  3          ADA?   Yes ☐   No ✔

| NAME Felix Piolguin | DOC NO. 76704 | FACILITY CSP |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

C-4-15

Subject of Grievance and Requested Remedy:

1 The soul issue here is whether colorado DOC, and CSP and the colorado Parole board, and The Parole Revocation committee of each institution, 2, are allowed to use or Rely on my 1st criminal case No. 77CR1140, and conviction and sentence are they entitled to relief as to my fully served conviction, 3, will they use it against me for denying me my parole on 11-13 2008. So my Resolution and Remedy are (A) whether they are going to use, Rely on my 1977 BVCF sentence against me for what ever reasons or grounds (A) and whether this situation and matter are going to be placed into my current Parole File.

| DATE: 7-19-07 | OFFENDER SIGNATURE | _Felix Piolguin_ |
|---|---|---|
| DATE RECEIVED: 231-07 | RESPONDING STAFF SIGNATURE & ID | K Buchara   4021 |

RESPONSE

In reviewing your Step II grievance, it is difficult to ascertain what your exact issue is.
It appears that you are asking a question verses stating what you are grieving.
Additionally, you have not asked for a specific remedy as required.  Grievance denied.

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 8-3-07 | SIGNATURE/PRINT NAME & STAFF ID # K Buchanan (SK Buchanan)   4021   other |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | |
| DATE: 07-23-2007 | SIGNATURE/PRINT NAME & STAFF ID # Kenneth P Buffum   K. Buffum #4474 |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | |
| DATE: 8-14-07 | OFFENDER SIGNATURE/PRINT NAME & DOC # 76704   Felix Piolguin |

Original: Department File/AIC          Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

RECEIVED JUL 2 5 2007
Buchanan

APPENDIX ( E )

## INTRODUCTION

The defendant, Felix Olguin, appeals the trial court's order denying as time-barred his motion for post-conviction relief. The record and application of law support the trial court's order, and accordingly, it should be affirmed.

## STATEMENT OF THE CASE AND FACTS

As a preliminary manner, the Appellant's opening brief raises the same issues as the brief filed in <u>People v. Olguin</u>, 05CA1923 ("the companion case").[1] Although some of the procedural history is different, this appeal arises, in part, from the same determination by the trial court in the companion case that the defendant did not demonstrate justifiable excuse or excusable neglect for failing to file a post-conviction motion within the time limit set forth in § 16-5-402, C.R.S. (2006).

In this case, the People charged the defendant on September 11, 1981 with Felony Auto Theft, <u>see</u> § 18-4-409, C.R.S. (2006)(F-4) and First Degree Criminal Trespass, <u>see</u> § 18-4-502, C.R.S. (2006)(F-5)(v. 1, "ROA Prior to Icon"). On December 10, 1981, the defendant pleaded guilty to first degree criminal trespass, and was sentenced to one year in the custody of the Department of Corrections

---

[1] The appeal in the companion case arose out of case # 85CR901, out of Weld County.

(id.).  On February 18, 1982, the court approved a Stipulation for Deferred Judgment and Sentence and granted the defendant probation pursuant to the terms set forth in the stipulation (v. 1, p. 20).  On February 14, 1986, after the defendant was charged in the companion case, the People filed a Petition and Order to terminate the Deferred Judgment and Sentence, and the court dismissed the case with prejudice (v. 1, p. 26).

On December 19, 2002, the defendant, *pro se*, filed a motion for post-conviction relief alleging ineffective assistance of counsel (v. 1, pp. 63-72).  On September 17, 2003, the defendant, now through counsel, filed a motion for post-conviction relief alleging justifiable excuse or excusable neglect for failing to timely file the original post-conviction motion (v. 1, pp. 92-96).  Counsel later filed an amended motion asserting the same grounds, but attached the transcript from the hearing the court held in the companion case, and the trial court's order denying the motion after the hearing (v. 1, pp. 119-134; vv. 4-6).  At the hearing in the companion case, both parties presented expert testimony on the issue of whether the defendant's alleged diminished mental capacity was justifiable excuse or excusable neglect for failing to file a timely post-conviction motion.  The defendant also testified (vv. 4-6).

2

The trial court denied the defendant's motion for post-conviction relief (v. 2, pp. 261-63). The court concluded that the defendant was on parole in this case when he was sentenced in the aggravated range in the companion case, and should have challenged his conviction at the time (v. 2, pp. 262-63). Furthermore, the trial court relied on the findings of the judge in the companion case concluding that the defendant had failed to establish justifiable excuse or excusable neglect (v. 2, p. 263).

In the companion case, the trial court found that the defendant's circumstances had not drastically changed from the time of the three-year limitations period to the time of the filing of his *pro se* motion (v. 1, pp. 131-34). Specifically, the court found "that while the Defendant might very well have an exceptionally low I.Q., suffer from some form of mental disorder, and suffer from various physical infirmities causing acute pain, his circumstances have not changed so dramatically so as to explain" why his motion was not timely filed (v. 1, p. 133). The court also found that, based on his *pro se* motion and expert testimony regarding his behavior, the defendant displayed some mental sophistication (id.). Accordingly, the trial court in the companion case denied the defendant's motion for post-conviction relief.

3

## STATEMENT OF THE CASE AND FACTS

The procedural history of the underlying criminal case is not in dispute. On 11 September 1981, the Defendant was charged with Felony Auto Theft and First Degree Criminal Trespass. R. Vol 1 at ROA Prior to ICON. On 18 February 1982, the Defendant entered into a Deferred Judgment and Sentence and the Defendant was granted probation. R. Vol I at 20. At some point in 1983, the deferred judgment was revoked, but before Defendant was reapprehended he was involved in a fatal car accident on 31 October 1985. R. Vol I at 21 and 38.

On or about 19 December 2002, the Defendant filed a motion for a new trial pursuant to Rule 35(c) alleging ineffective assistance of counsel (although the District Court copy in the record is not file stamped). R. Vol I at 63. On 5 February 2003, court appointed Alternate Defense Counsel, Maria Liu, entered her appearance on behalf of the Defendant. R. Vol I at 86. On 20 May 2003, the District Court granted Ms. Liu leave to file a motion asserting excusable neglect/ justifiable excuse for filing the 35(c) motion outside the time limits set forth in C.R.S. §16-5-402. R. Vol I at 89.

In 1986, the Defendant was convicted in Weld County and remains incarcerated in the DOC pursuant to that case. He also filed a pro se 35(c) motion

SEE PEOPLE V. WOODELL, 950 P.2d 85, 71 (al. RPTR. 2d 241, ((al,1998)

4

APPENdix (F)

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone:   (719) 579-9580
Fax:      (719) 226-4755
Web:     www.doc.state.co.



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Prepared by: Cathie Holst, Manager, Office of Correctional Legal Services
Through Julie Russell Legal Assistant II

Received Correspondence:    July 24, 2007
Sent Response:                     August 16, 2007
Offender Name:                     Olguin, Felix
DOC No.:                              76704
Facility:                                 CSP

Offender Olguin,
The Office of Correctional Legal Services is in receipt of your letter dated July 22, 2007.
Whereas you have requested my personal services to assist you with your legal work and to
personally come to your cell and read the Colorado Revised Statutes to you; I am unable to
accommodate you.

Your misconception of my duty, as Manager of the Office of Correctional Legal Services
does not include the responsibility to act as your personal assistant, nor are the staff employed
by this office required by statute, rule, regulation or precedent to act as your personal legal
secretaries.

Since you have such a long history with the Department of Corrections, you are aware that the
administrative regulations specify how access to the courts shall be provided to offenders. Your
behavior while incarcerated has determined that your custody level precludes you from the
ability to have physical access to a law library. Instead, you shall continue to obtain services
through the submission of requests via intra-facility mail addressed to the law library.

Finally, you have inquired as to the "...primary reason and the soul (sic) purpose in why there is
not was no other mechanism in place in 1977-2007 for your office and of the other DOC
facilities and staff and employees and supervisors and personall (sic) and guards and GED
teachers and program instructors in actually reading those legal materials." The purpose of the
Legal Access Program is to provide offenders with an avenue to pursue their legal claims in
court. DOC staff, teachers, and legal assistants are not obligated or responsible for reading
legal materials to you. If you are unable to read or comprehend such materials you may request
the court to appoint counsel to you.

Please note that this office will not respond to further correspondence regarding this issue. You
are required to follow the designated administrative grievance procedures to address any
complaints you may have. Thank you for your cooperation.

RECEIVED This AT MY CELL door on 8-20-2005.

APPENDIX (G)

# KING & GREISEN, LLP
### ATTORNEYS AT LAW

Diane S. King
Paula Greisen
Margaret B. Funk

1670 YORK STREET
DENVER, COLORADO 80206

Laura E. Schwartz
Alison Butler Daniels
Jason Cobb

September 9, 2006

## ATTORNEY –CLIENT PRIVILEGED

*Re: Montez, et al. v. Romer et. al.*

Dear Class Members,

I am writing this letter to let you know what is going on in the Montez disability case. As you may know, this case started many years ago with the hope of changing the prison system to meet the needs of people with certain disabilities -- mobility impairments, hearing impairments, vision impairments, and diabetes. In 2003, the Court ordered the "Remedial Plan" which requires the DOC to make a lot of changes to make sure that people with those disabilities are not discriminated against. If you have not gotten a copy of the Remedial Plan, you should write to Cathie Holst, the ADA Inmate Coordinator, at the DOC headquarters in Colorado Springs, and get a free copy.

The DOC had 2 years (until August 2005) to comply with all the terms of the Remedial Plan. During the review period, lawyers from our office visited the facilities, met with everyone who contacted the AIC for disability status, reviewed facility policies and all the AIC files, working files, and medical records of inmates with disabilities. We were able to build a strong case that the DOC was not in compliance with the Remedial Plan – in many, many ways.

In spring of this year, we began having hearings before the Court to prove that the DOC was not in compliance. Many of you testified at those hearings and many of you were scheduled to testify. The hearings went into July and at that time, it became clear that the DOC was going to lose the hearing. At that point, the DOC agreed to admit that it was not in compliance and wanted to reach a settlement rather than continue with more hearings. The hearings were then stopped and that is why some of you who were scheduled to testify did not get called as a witness – because it was clear that we had already won!

Because it was very clear that we were going to win the hearing, we said we would not agree to settle unless the DOC agreed to certain sanctions for not being in compliance. To make a long story short – they had no choice and agreed to just about everything we wanted. As a result, we entered into a settlement in which the DOC admitted that it was not in compliance (except for the architectural-physical changes) and it had one more year, until July 27, 2007, to make all the changes required by the Plan. If it doesn't look like DOC is still in compliance next year, we will have more compliance hearings.

We have included a copy of the Court Order in which the DOC stipulated it was not in compliance and the sanctions that the DOC was given. The sanctions that we got against the DOC may be helpful to you so please review the attached Order carefully. If you feel the DOC is not following the orders of these sanctions, please let us know.

The most important sanctions are as follows:

1. **The DOC will waive all medical co-pays for treatment or visits related to diabetic care (this includes but is not limited to additional fingersticks, emergencies, and prescription refills) for all diabetics in the DOC from July 26, 2006 until the Judge decides whether the DOC may legally charge these co-pays. If the Judge decides that the DOC can charge co-pays, you will start to be charged again for co-pays a week and a half after he makes that decision. On the other hand, if the Judge decides the DOC cannot charge such co-pays, you will not be charged again after that decision is made. We think the court will decide the issue in about 60 days.**

   **The DOC will refund your inmate account if you were charged for a medical visit that was related to diabetes (unless it was a chronic care visit) between July 26, 2006 and August 9, 2006. Beginning August 9, 2006, diabetics will not be charged for medical visits related to diabetic care other that chronic care visits. Although the visits are free, please do not abuse or misuse this privilege. You will still have to pay the 6-month chronic care co-pay. If you believe you have been charged a co-pay for a medical visit related to diabetes after July 26, 2006, in violation of the Agreement, you may file an ADA grievance with the AIC.**

   This means that anyone with diabetes (whether you have been screened or not) will get all co-pays waived except for the 6 month chronic care co-pay. If you got a letter from us a couple of weeks ago telling you that the co-pays would be waived from July 14, 2006 – don't worry. The DOC will honor that letter and will not make you pay those co-pays – but this applies only to the people that we sent letters to and no one else. In the meantime, anyone with diabetes can go to medical whenever they need to get finger-sticks or their diabetic prescriptions refilled without being charged until the Judge decides whether the current co-pay system is legal. Although we ask that you don't abuse this privilege, we want everyone with diabetes to go to medical when they need, especially if they are shocking out or have an emergency, and understand that they will not be charged for the visit.

2. If you have not already been provided a copy of the Remedial Plan, you may ask the AIC for one, and you will get one for free during the next year. If you were charged for a copy of the Plan, and you can prove this and the charge is on your DOC records, you can ask the AIC for a refund.

3. A notice was to be posted in common areas and day-rooms at all facilities by August 10, 2006. The notice explains the agreements and sanctions contained in the Court Order. The posting will stay posted until substantial compliance is reached by the DOC. If you have not seen a posting at your facility, please let us know.

4. If you believe that you have been given an "ADA Job" or a job that paid less than similar jobs, or you were given only a part-time job because of your disability, you should write to the AIC and explain your job and why you think you got paid less because of your disability. The AIC will investigate these claims. If the AIC decides that you should have had a regular paying job but got a job that received less pay, or you were given an "ADA Job" or other job and was paid less for this job than for other non-ADA jobs, or you were given a part-time job solely because of your disability status, you will be paid the difference between the wages of the non-ADA job or the full-time job from what you were actually paid, retroactively from August 27, 2003. In other words, if you were given a part-time job, an "ADA Job", a "Handicapped Job", or any other job that only paid 30 cents a day, and the only reason you had that job was because of your disability and you were able to do other full paying jobs, then you would get paid to you an additional 30 cents for every day that you did the lower paying job.

5. We think the DOC has been using the wrong standards to decide if you have a disability. The DOC has agreed to re-screen the inmates who were screened under the wrong standards. We also think the wrong standards and legal analysis have been used by the Special Masters in the damage claim process. We think people have been denied disability status and have had their damage claims denied unfairly. We also think you should have been allowed to argue your Eighth Amendment claims (that the DOC was deliberately indifferent to your serious medical needs) in the damage claim process <u>if</u> your Eighth Amendment claim relates <u>directly</u> to your disability. We will be arguing these issues to the Court very soon. If the Court decides that we are right, the Special Masters will have to review all the claims that used the wrong standards or legal analysis, and issue new opinions on those claims. We will let you know what happens on these issues.

For instance, the DOC is now saying that everyone with diabetes does not have a disability. We think that is wrong and will argue that to the Court. The DOC is also trying to say that everyone who has a hearing aid is not hearing disabled – and we think that is wrong and we are arguing that to the court. We also think that the Special Masters have been too limited in who they are saying is part of the class – for instance, they are saying you essentially have to be blind or deaf to qualify as vision or hearing impaired. We think that is wrong and will be arguing that to the court. We will let you know when the Court decides these issues.

---

TELEPHONE: (303) 298-9878 ✧ FACSIMILE: (303) 298-9879 ✧ E-MAIL:greisen@kinggreisen.com

6.  If you filed a claim in the damage claim process and were charged for the first ten pages of any DOC records, or you were charged more than $.25 per page for additional copies, and your claim is supported by the DOC's records, you will be given a refund for such costs. If you believe you have such a claim, you may write to the AIC to obtain your refund. If you believe you have been wrongfully denied a refund, you may file an ADA grievance.

If you think that the DOC has violated any of these requirements or any provision of the Remedial Plan, then you should file an ADA grievance and write a letter to my office. When we start reviewing the DOC for compliance, we will look at all of your AIC files and review all the ADA grievances – so please help us build a case by putting your complaints in writing if DOC is not in compliance. We can not know what is really happening inside DOC unless you put your complaints in writing in a ADA grievance and/or letters to the AIC.

We hope very much that you will benefit from the sanctions we got against the DOC and are even more hopeful that the DOC gets its act together and finally complies with the Remedial Plan (but we are not holding our breath). We are sorry that we will not be able to write to each of you individually but please understand there are many more of you than there are of us and we will read your letters and use them to help our case.

Take care,

KING & GREISEN, LLP

Paula Greisen