IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs.-

BILL OWENS, et al.,

   Defendants.

_____

Claim Number: 03-184
Category: III
Claimant: Clint Crews, Sr. #109270
Address of Claimant:  c/o Sara Phelps, 3642 South Galapago Street,
             Englewood, CO 80110
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Claimant Clint Crews, Sr. This Hearing was held at Dominion Plaza in Denver on March 14, 2007 before Richard C. Davidson, Special Master. Mr. Crews appeared Pro Se. Defendants were represented by Scott Wilkonson, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> Is the claimant a disabled individual who is a member of the class?
> Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Clint Crews, Sr. submitted a claim which was assigned claim number 03-184. The claim is premised on an alleged permanent mobility disability caused by Claimant's diabetes and upon diabetic disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Crews first entered CDOC custody in 2001. Claimant was housed at CTCF.

4. Despite having a long history of diabetes, CDOC first diagnosed Claimant with diabetes in May 2001, shortly after entering CDOC custody. At that time he was placed on insulin and a diabetic diet. The records indicate that he was treated aggressively for his diabetes but that he was often non-compliant with his diet and his medications. Claimant testified that he was able to balance his diet and insulin better than the medical staff. The records do indicate that he suffered some episodes of hypoglycemia. Claimant testified that he was being given too much insulin so he would often not take the whole dose.

5. Claimant claims to suffer from diabetic neuropathy in his legs and feet and has a mobility disability because of this. He testified that he was able to walk before the middle of 2004 despite having arthritis in his right knee. Beginning in the middle of 2004, he has had increasing pain when he walks. He is able to climb a flight of stairs but must stop and rest. He testified that he can walk two city blocks but does have pain and discomfort. He uses a cane much of the time. The records do show that Claimant was complaining of pain in his feet as early as 2002 but they also show that

3

he was never diagnosed with neuropathy in his lower extremities.

6. Claimant testified that he was able to work as a caretaker and pusher for another disabled inmate during 2003. After that, his condition deteriorated and he had to stop. He requested a bottom tier/ bottom bunk assignment but says he was told none were available. CDOC issued him a cane to assist in his ambulation. During 2005, he had restrictions on his activity, was issued a handicap seating pass and was briefly issued a wheel chair.

7. Claimant blames CDOC for not balancing his insulin with his calorie intake. He was given too much insulin and suffered hypoglycemia several times. His non-compliance resulted from his efforts to balance his insulin with his food intake.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially

4

limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Crews does have a qualifying diabetic disability. This disability manifests itself in the reduction of Claimant's ability to walk and function. He does not have a separate mobility disability. The inability of CDOC to properly adjust Claimant's insulin and diet has caused mobility problems. This is sufficient to demonstrate a substantial limitation on the major life activities of walking and functioning as a coherent human being.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by DOC because of his diabetic disability. The records show that CDOC did treat Claimant for his diabetes. Claimant was non-compliant which complicated the task of CDOC. He was allowed to work until such time as he felt his condition had deteriorated. He was issued a cane and a wheelchair at one point. Claimant's primary complaint goes to the quality of medical care while in the custody of CDOC. As mentioned above, in paragraph 5, Montez does not allow the Special Master to award damages for inadequate medical care, but only for discrimination because of a qualifying disability.

9. The Claimant has failed to show that he was discriminated against by CDOC because of his diabetic disability. Thus, no damages may be awarded.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 15, 2008** with the Clerk of the

United States District Court at the following address:

901 19th Street  
Denver, CO 80294.

SIGNED this 20th day of November, 2007.

> BY THE COURT:
>
> */s/ Richard C. Davidson*
> _____
> Richard C. Davidson
> Special Master