IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al,

      Plaintiffs,

-vs.-

BILL OWENS, et al,

      Defendants.

_____

Claim Number: 03-208
Category: III
Claimant: Lora Woods, #84697
Address of Claimant: c/o Wynona Mahaffey, 2516 Foresight Cr., Suite 9
      Grand Junction, CO 81505

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Claimant Lora Woods. This Hearing was held at Colorado Women's Correctional Facility (CWCF) on October 30, 2006 before Richard C. Davidson, Special Master. Ms. Woods appeared Pro Se. Defendants were represented by Celia Randolph, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

1. This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

2. On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

3. Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.     General inconvenience or nominal damages;
> II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.   Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.   Damages due to severe physical injuries; and
> V.    Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

4. Pursuant to this provision, Claimant filed her claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

5. On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> Is the claimant a disabled individual who is a member of the class?
>
> Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>
> Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>
> Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

6. This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Lora Jean Woods submitted a claim which was assigned claim number 03-208. The claim is premised on an alleged permanent hearing disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Woods first entered CDOC custody in 1994. She was released in 2000 but was incarcerated again in 2002 until 2006. She was housed at DWCF.

4. Claimant had a stapendectomy performed on both ears in 1992, and as a result has lost some hearing on both sides. She also has a mental illness which causes her to hear voices. She claims she has trouble discerning between the voices she hears and actual voices of people around her. A hearing aid was first provided to Claimant bu CDOC in October 1995. At that time she had a hearing loss of 45 decibels on the left and borderline hearing loss on the right. The hearing aid was repaired and returned to her in April, 1999. Upon her return to CDOC custody in late 2002, a new hearing aid was ordered and given to her in January 2003. In September 2005, Claimant was furnished with a vibrating watch. In May, 2006, a replacement hearing aid was ordered for her. The records show the batteries were replaced many times. The records also show that Claimant had little difficulty communicating with those people around her.

5. In December, 2005, Claimant was sexually assaulted while in the shower. Previously, she had asked another inmate to stay in the bathroom while she was in the shower to prevent any assault. The guard had ordered the other inmate to not be in the bathroom with her. Subsequently the assault occurred. Claimant was injured in the assault resulting in the loss of her dentures and her glasses being broken. Claimant testified that she is in fear for her safety.

6. Claimant was to be paroled shortly following this hearing. The parole did take place and

she now resides outside of prison.

## III.  CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

3.  The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.  Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.  As is discussed more fully below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC.  Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities.  The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6.  The Special Master finds and concludes that Claimant Woods is a hearing disabled person under the terms of the remedial plan.  It is apparent that DOC also considered her disabled since she

was provided with hearing aids on three occasions along with a vibrating watch.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by DOC because of her hearing disability. Claimant Woods claims that she was denied hearing aids by CDOC. However, the records show that she was furnished three separate hearing aids during her incarcerations. She also claims that she was denied batteries for her hearing aids but the records clearly show that she was provided batteries when needed. The records also show that she was not denied jobs or other privileges because of her hearing disability. She did have some conflict with CDOC personnel but these were not caused by her hearing disability.

9. Claimant also raises the claim of discrimination in the action of the guard to not allow her to have another inmate in the bathroom while she was showering. However, rather than this being discrimination because of her disability, it was an example of the guard trying to prevent misconduct between inmates. Claimant's assault was a terribly traumatic event but was caused by the malicious actions of the assaulter not by CDOC.

10. The Special Master concludes that Claimant has not been the victim of discrimination by CDOC because of her hearing disability.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of CDOC and dismissing the claims of Claimant Lora J. Woods.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 15, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 20th day of November, 2007.

BY THE COURT:

*/s/ Richard C. Davidson*

_____
Richard C. Davidson
Special Master