IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-248
Category: III
Claimant: Juan J. Maldonado, #81249
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Marty Bueno. This Hearing was held at the Colorado State Penitentiary (CSP) on February 20, 2007 before Richard C. Davidson, Special Master. Mr. Maldonado appeared Pro Se. Defendants were represented by Berina Ibrisagic, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> The Special Masters shall evaluate individual damage claims

2

>   submitted in this case by considering the following questions:
>
>> Is the claimant a disabled individual who is a member of the class?
>> Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Juan Maldonado submitted a claim which was assigned claim number 03-248. The claim is premised on an alleged permanent diabetic disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Maldonado first entered CDOC custody in 1997. Claimant was housed at AVCF, BVCF, LCF and CSP. He also was sent to Mississippi for a period of time. He currently is housed at CSP.

4. Claimant suffers from diabetes. He was first diagnosed with Type II diabetes in August, 1998. He has been treated with insulin and other drugs to control his diabetes ever since. Claimant complains of having to take insulin and other drugs to control his disease and of being unable to heal from injuries and viruses. He claims that he has an allergic reaction to the medications but is forced to take them against his will. He also complains that he is unable to get proper treatment and suffers blackouts when his sugars get too low.

5. Claimant says he has been discriminated against by CDOC by being denied work and other programs. He claims he has been fired from jobs over "made up charges" but does not specifically claim this was due to his diabetes. He is very critical of the medical staff of CDOC. He has not been given a single cell despite asking for one. He has filed numerous grievances against staff but these have all been denied.

6. The medical records show that upon Claimant being diagnosed with diabetes, CDOC medical staff undertook aggressive treatment including monitoring of his blood sugars through finger sticks, and the administration of medications to control the disease. The records also show that Claimant was non-compliant in having finger sticks done and in his diet. This non-compliance continued until approximately one and one half years ago when Claimant has begun to take his medications and to submit to finger sticks regularly. Since he has been more compliant, his blood sugars have been well controlled. The records also show that Claimant's vision has been monitored to detect any diabetic retinopathy. His vision is still excellent and he shows no signs of diabetic retinopathy.

7. Other records show that Claimant has held several jobs and has attended training programs during his time in custody. The records also show, however, that Claimant has had numerous disciplinary violations. There is no evidence to show that he was denied jobs or programs due to his diabetes.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

      4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

      5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

      6. The Special Master finds and concludes that Claimant Maldonado is not disabled. There is no question that Claimant has diabetes but there is simply no evidence that his diabetes prevents him from engaging in any major life activities. Limitations have been placed upon his activities in the past but these limitations were the result of discipline imposed for Claimant's violations.

      7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

      8. Of course, the key issue is whether Claimant was discriminated against by CDOC. The records show that when Claimant's blood sugars were out of control Claimant was being non-compliant with his treatment regimen. Claimant has not been discriminated against by being required to take his medications. Likewise, there is no evidence that Claimant was denied his medications while he was out of state. Those records indicate that he was checked regularly and was prescribed insulin and other drugs to control his diabetes. Neither has Claimant been discriminated against by being without jobs or by not being allowed to engage in other programs. Such discrimination must be shown to be because of his diabetes. There is no evidence to prove that this ever occurred.

      9. Claimant has failed to prove that his diabetes rises to the level of a disability as outlined in the Montez criteria. Neither has he been discriminated against by CDOC because of his diabetes.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this

action.

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **February 15, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 19th day of November, 2007.

> BY THE COURT:
>
> */s/ Richard C. Davidson*
>
> _____
>
> Richard C. Davidson,
> Special Master