IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-263
Category:  III
Claimant:  Michael William Bass
Address: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Michael William Bass. This Hearing was held at CTCF on March 27, 2007 before Richard C. Davidson, Special Master.  Mr. Bass appeared Pro Se.  Defendants were represented by Celia Randolph, Esq.  The Special Master has reviewed the testimony and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

DEFINITIONS
A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

Is the claimant a disabled individual who is a member of the class?

Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Michael William Bass submitted a claim which was assigned claim number 03-263. The claim is premised on an alleged permanent diabetic disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Bass first entered CDOC custody in 1982. He has been out of custody twice but has been brought back into custody.

4. Claimant was first diagnosed with diabetes in 1999. In 2001 he became insulin dependent. Currently his blood sugars are to be checked once per day. A review of the medical records show that Claimant was put on medication upon his diagnosis and that those medications have been adjusted and changed as needed. He was placed on a diabetic diet but failed and refused to follow it and ultimately requested that it be discontinued. He has also been non-compliant in controlling his diabetes by eating desserts and purchasing food from the canteen that is not recommended. CDOC has checked Claimant's vision and has found no evidence of any diabetic retinopathy.

5. Claimant complains that he was not given proper footwear. He was complaining of foot numbness and claims that CDOC was supposed to order him some better shoes. Evidently, this was not done, but he was told to purchase shoes from the canteen.

6. Claimant says that he was discriminated against by CDOC by not being allowed to go into community corrections. However, CDOC does not control community corrections. An inmate is given the right to apply for admittance into community corrections. Whether or not an inmate is

3

admitted is up to the community corrections program applied for. CDOC has no input as to whether or not an inmate is admitted. Thus, Claimant's failure to be admitted into community corrections does not constitute discrimination by CDOC.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to

4

mobility, vision, hearing, and diabetes.

6.  The Special Master finds and concludes that Claimant Bass has failed to show that he is a disabled individual under the criteria set out in the Montez Remedial plan.  Claimant does have diabetes but that alone is insufficient to show that he is disabled.  He must show that his diabetes substantially limits one or more of his major life activities.  No limitations have been shown.  Even if CDOC failed to give him the footwear as he complains, he was given the opportunity to purchase other shoes in the canteen.

7.   The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC.  A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications.  *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004).  It appears that Claimant was qualified to participate in the programs, benefits, and services offered by CDOC unless he was being disciplined.

8. Of course, the key issue is whether Claimant was discriminated against by DOC because of his diabetic disability. Claimant Bass has stated that not being able to be admitted into community corrections was discrimination by CDOC.  However, CDOC has no control over admissions to community corrections.  Thus, no discrimination has been shown.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 15, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 19th day of November, 2007.

BY THE COURT:

*/s/ Richard C. Davdison*

_____
Richard C. Davidson,
Special Master

5