IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs.-

BILL OWENS, et al.,

   Defendants.

---

Claim Number: 03-301
Category: III
Claimant: Brian Ray, #91588
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Brian B. Ray. This Hearing was held at Limon Correctional Facility (LCF) on February 6, 2007 before Richard C. Davidson, Special Master. Mr. Ray appeared Pro Se. Defendants were represented by Celia Randolph, Esq. The following witnesses were called, sworn and testified: Claimant Brian Ray; Patricia Kaylor; Carole Berends; Cary Shames, M.D.; and Orville Neufeld, D. O., by affidavit. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Brian Ray submitted a claim which was initially assigned claim number 02-508. Upon review, the case was elevated to Category III and renumbered as 03-301. The claim is premised on an alleged diabetic disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Ray first entered CDOC custody in 1996. Claimant has been housed at FCF, CCF and LCF.

4. Claimant has suffered from diabetes since 1991. In the year 2001, he was started on insulin to control his disease following what he calls "a stroke" in 2000. Claimant is concerned that he was only allowed to do finger sticks on Tuesday and Friday despite his having been told that he needed to check his sugars more often. He was allowed to come inside for his finger sticks only on Tuesday and Friday. Other days, he had to stand in the Medical line with other inmates and wait to check his sugars. Since it took a short time to do the check, the other inmates harassed him for holding up the line. As a result, he chose not to check his sugars in the Medical line.

5. Claimant is also concerned that he was not given the proper diet to control his diabetes.

6. A review of the records shows that Mr. Ray's diabetes was continually monitored. His medications were adjusted when necessary to treat him properly. There are many indications that

3

his blood sugars were monitored through finger sticks. As his medications were changed, he was tested more frequently. The records also show that Mr. Ray was not always compliant with his treatment and other recommendations. He sometimes failed to take his medications and did not eat meals. His canteen record is indicative of his non-compliance. As a result, Claimant's blood sugars were variable, sometimes low and sometimes elevated. But there is no evidence that this variability was caused by less frequent finger sticks than Claimant desired.

7. The records also show that Claimant was instructed on his recommended diet choices. Despite this, he failed to eat meals regularly which contributed to his variable blood sugars.

8. The medical records indicate that Claimant has some early diabetic retinopathy. It is being monitored and treated and has not progressed to the point of being disabling. Claimant has taken good care of his feet and is not suffering from foot problems. It appears that there is no disability resulting from Claimant's diabetes.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial

4

Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Ray is not a diabetic disabled person under the terms of the remedial plan. It is apparent that CDOC has adequately treated Claimant's diabetes and that he is not precluded from any activities or life functions because of his diabetes.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by CDOC.

8. Of course, the key issue is whether Claimant was discriminated against by CDOC because of his diabetes. The evidence fails to show any discrimination by CDOC. Claimant has been allowed access to programs and jobs and has not been restricted in any way because of his diabetes.

9. Claimant has failed to prove that he is disabled because of his diabetes. In addition, Claimant has failed to prove any discrimination by CDOC. Claimant's claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 15, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street

Denver, CO 80294.

SIGNED this 20th day of November, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard C. Davidson
Special Master