IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

     Plaintiffs,

-vs.-

BILL OWENS, et al.,

     Defendants.

_____

Claim Number: 03-358
Category:  III
Claimant:  Martin E. Schweitzer, #81859
Address of Claimant:  5654 South Prince Street, #311, Littleton, CO 80120

_____

### FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Martin E. Schweitzer.  This Hearing was held at Dominion Plaza on March 14, 2007 before Richard C. Davidson, Special Master.  Mr. Schweitzer appeared Pro Se.  Defendants were represented by Scott Wilkinson, Esq.  The Special Master has reviewed the testimony and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

### I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*.  During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants.  Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.    Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

DEFINITIONS
A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

2

Is the claimant a disabled individual who is a member of the class?

Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Martin Schweitzer submitted a claim which was assigned claim number 03-358. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Schweitzer first entered CDOC custody in 1998. Claimant was housed at FMCC, AVCF, BVCC, SCC, RCC, and SCF.

4. Claimant was injured in 1997 in an industrial accident. He slipped and fell while working as a carpenter and twisted his knee. He was diagnosed with osteoarthritis and degenerative joint disease. He received worker's compensation benefits for this injury.

5. After entering CDOC custody, Claimant was forced to work at a dairy farm despite his knee problems. This work caused him severe pain in his knees and left hip. He was also forced to work on fences with the same result. He was issued crutches to assist his mobility but was unable to work while using them. In 2000, CDOC sent him to have an arthroscopic procedure performed on his knee. It was found that he had little cartilage remaining in the knee. He testified that he should have had a knee replacement. It was discovered that he had a leg length discrepancy. CDOC issued a lift for his shoe. He also complains that he was issued boots when he should have been wearing soft shoes.

6. In 1998, Claimant says he was diagnosed with a defective mitral valve in his heart. He says he was not given any medication for this until 2003. A mitral valve replacement was recommended but was never performed. The records show that his mitral valve problem was

diagnosed in 2003.  The need for a valve replacement was noted but was not performed since Mr. Schweitzer was to be released in the fairly near future.

7.  Claimant claims discrimination by being forced to do jobs that he was incapable of performing.  He admits he was given more suitable jobs later.  He was also given accommodations such as soft shoes, a shoe lift and bottom bunk/bottom tier restrictions.

8.  Claimant's primary complaints are that he was given inadequate medical care by CDOC. He argues that he should have been given a knee replacement and a mitral valve replacement.  In his testimony, Claimant stated that CDOC was "grossly negligent" in his medical care.

### III.  CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

3.  The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.  Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially

limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Schweitzer was not a mobility disabled person under the terms of the remedial plan during his time in CDOC custody. In order to be mobility disabled, a person must be permanently disabled as defined in the Remedial Plan. Claimant was not permanently disabled. He did have some severe difficulties with his knee and with his heart but these did not rise to the level of permanent disabilities.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by CDOC because of any disability. The records show that Claimant was accommodated from the time he entered custody. He was given a bottom bunk/bottom tier restriction, he was issued soft shoes and a shoe lift. Arthroscopic surgery was performed on his knee. While the first jobs he was given did not recognize his knee problems, he was later given jobs he was able to perform.

9. Claimant's primary complaints are that he was denied adequate medical care by CDOC. As mentioned in paragraph 5 above, the Montez Remedial Plan does not allow for the granting of damages for inadequate medical care but only for discrimination because of a person's disability. In this case, the Special Master concludes that Claimant did not have a qualifying disability and was not discriminated against by CDOC.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 15, 2008** with the Clerk of the

United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 19th day of November, 2007.

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson,
Special Master