IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-424
Category III
Claimant: Hormoz Pourat, #113890
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER came before the Special Master for hearing on November 7, 2007. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Hormoz Pourat(Claimant); and Jennifer Huss, attorney for Defendants.

Claimant presented the following witnesses at the hearing: Thomas Snyder; Thomas Rogers; Kathy Holt, NP; Troy Chavez; Lt. Ernestine Mills; CO Stephen Harberson; Sgt. Dennis Brewer; Thomas Haynie; and Claimant. Plaintiff offered into evidence Exhibits 1 through 10, and all were admitted. Defendants called Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits 1 thru 21, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>hearing, and vision impairments and inmates with diabetes.
>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 10, 2002 at the Denver Reception and Diagnostic Center (DRDC). Claimant remained at DRDC until July 25, 2002 when he was transferred to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Claimant remained at HCCC until mid-November, 2002.

On November 13, 2002, Claimant went into the custody of the United States Marshal's Service. Claimant apparently had federal charges that had to be resolved. He remained in federal custody until July 14, 2004. Claimant then returned to the custody of DOC and was placed back at HCCC.

Claimant remained at HCCC until October 18, 2005 when he was transferred to the Limon Correctional Facility (LCF) at Limon, Colorado. On April 17, 2007, Claimant was transferred to FLCF. He has remained at FLCF since his transfer from LCF.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

>I have severe back pain. I also have real bad pain in my left leg due to

>sciatica. My left knee hurts real bad also. I have arthritis in my back and I get real bad cramps in my back muscle which is real painful. I use a cane when I walk and I cannot walk very far. I have stopped going to the prison yard most of the time and the only exercise I get is when I go to the prison gym and use the stationary bike. I have stopped going to religious services.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

>When I went back to Huerfano County Correctional Center (HCCC) in 2004 my case manager placed me on medically unassigned status and I received unassigned wages for about 6 months. Also, it took a long time to see the nurse practitioner. I needed a cane but she denied giving me one. I also needed a bottom bunk which she refused to give me. I was in a lot of pain and she would not give me what I needed.

Claimant called several witnesses to discuss what has happened to him at FLCF since his arrival on April 17, 2007. Claimant testified concerning the medical care has received over the last few months. He testified that he was in extreme pain and having difficulty moving.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim.

Claimant came into DOC custody on July 10, 2002 and left on November 13, 2002. Claimant had to establish that he was disabled during that period of time under the Settlement Agreement. Claimant has not done that.

Claimant offered no testimony that he was unable to walk during that four-month period in 2002. Claimant submitted a medical record from DRDC on July 12, 2002 which reflected that he had reported back pain. *Claimant Exhibit #9.* The entry in his medical records for that date indicated that he was able to use non-steroidal pain relievers for his pain. He also reported anxiety and panic attacks. The medical notes for July 12, 2002 do not reflect any inability to walk or carry on the activities of daily life.

Claimant also submitted a copy of a form which was filled out when he was transferred to HCCC. Claimant indicated that he had back pain, constipation, panic attacks and depression. There

4

is no indication that he was having trouble walking or moving. All other medical records reflect care provided after Claimant's return to HCCC in 2004.

The Settlement Agreement provides that a claimant may amend his claim to allow consideration of post-August 27, 2003 conduct, but only if he has established his claim prior to that date. Under the Rehabilitation Act and ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; and (3) being regarded as having such an impairment." *42 U.S.C. §12101(2); 29 U.S.C. §794(d); 29 U.S.C. §705(9)(B)*. None of Claimant's evidence concerning what has occurred since his return to DOC custody in 2004 is relevant if he cannot establish that he was disabled during the four-month period in 2002 when he was in DOC custody, primarily at HCCC.

Claimant has not established that he was disabled in 2002 before being taken into federal custody. In fact, the only evidence offered reflected some lower back pain but there was no evidence that Claimant was mobility impaired. The Special Master determines that Claimant did not meet the definition of "disabled" as required by the ADA and Rehabilitation Act on November 13, 2002, the day he went into federal custody. Therefore, Claimant may not amend his claim to include post-August 27, 2003 conduct by DOC and its staff. Claimant is not barred from pursuing a separate lawsuit for what he believes to be a violation of the ADA after his return to DOC custody on July 19, 2004.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** In light of the answer to Question #1, this question does not need to be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** A claimant must prove by a preponderance of the evidence that he was subjected to discriminatory conduct on or before August 27, 2003. This discrimination must be based on a claimant's recognized disability, not on other factors such as race, age, etc. An example would be placement of a wheelchair-bound inmate on the third floor of a building with no working elevators.

Not one scintilla of evidence was offered by Claimant concerning any alleged discrimination by DOC and its staff in 2002. All of Claimant's energy was directed at incidents that occurred in 2004 or later. Absent a showing of discrimination before August 27, 2003, Claimant is precluded by the Settlement Agreement from discussing what occurred after that date. Claimant did not allege, let alone prove, that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act in 2002.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of a negative answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Hormoz Pourat is denied, as he failed to establish that he was mobility disabled on or before August 27, 2003 and the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date; and

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 28, 2008.**

      SIGNED this 12th day of November, 2007.

      BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master