IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 01-103
Category I
Claimant: Robert Griego, #117534
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER comes before the Special Master on the claim of Robert Griego (Claimant). The claim was assigned to Category I. Claimant filed his claim form, supplemental form, and additional documents in support of his claim.

Defendants filed a response to the claim on February 8, 2006. Claimant was granted up to and including March 20, 2006 in which to submit a reply to the response of Defendants. Claimant filed nothing further. Since this is a Category I claim, the Special Master must adjudicate the claim on the basis of the documents filed by both sides. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC on May 9, 2003. From the information provided by both sides, it appears that he has remained in DOC custody since that date. Claimant was incarcerated at the Sterling Correctional Facility (SCF) in Sterling, Colorado when he filed his claim. He now is at the Arrowhead Correctional Center (ACC) in Canon City, Colorado.

In his claim form, Claimant checked the box for mobility impairment. He stated, in part, as follows:

> I have limited mobility. Everyday I experience swelling and extreme pain in both knees. I also have breathing problems and I am on an oxygen generator and a CPAP machine. I have to reset them myself and they have not been checked our recalibrated by medical. Due to the lack of breath this also limits my mobility. It keeps me limited to walking to the chow hall and to the education building. I have

3

no recreation pastime and I am unable to participate in games or sports. Also due to a previous head injury, I have a skull deformity in which limits my thought process that limits my duties and work that is expected in DOC. Due to the pressure of the rules and regulations in a level 5 facility I suffer from headaches and very much confusion. Every day I experience this and I always fear that I might do something against the rules without realizing it. My memory has given me a great deal of problems and makes life twice as hard knowing that I cannot keep up with the curriculums that are expected of me. I face constant retaliation from the staff due to their lack of medical training and not understanding my medical condition. I feel that this is a cruel and unusual punishment.

In his claim form, Claimant was asked to describe the discrimination that had occurred. Claimant stated as follows:

I am expected to perform physically and mentally in the same manner as the other inmates are. We are all generalized and if we do not meet their expectations we are punished and or ridiculed as I have been. I take longer to perform my duties and I am not cared for in my mental and physical disabilities. I feel I should be placed where my needs will be addressed and taken care of and not discriminated against. All of my pain and suffering has been neglected as a handicap issue.

In his supplemental form, Claimant stated, in part, as follows:

Prior to my incarceration I was admitted to St. Anthony's Hospital following a motorcycle accident in June of 1994. At that time I was diagnosed as having a closed head injury and a tibial plateau fracture in my right knee. Since my incarceration in DOC I have been diagnosed as having chronic knee pain. This disability makes it hard for me to walk without extreme pain in my right knee. Also standing for long periods of time aggravates my knee.

Claimant noted on his supplemental form that he had not asked for any accommodations for his knee. He also stated as follows:

Discrimination;
Since my incarceration at the Sterling Correctional Facility (SCF) I have been diagnosed as having chronic knee pain in my right knee. Also I have pain in my left knee. I have submitted numerous medical kites to the medical department complaining of pain in both of my knees. Medical gave me Naprosyn and Indocin for pain. Still I am experiencing problems walking and standing. I feel DOC is discrimination against me in two respects;
1) Failing to examine my knees and
2) I am being discriminated against by DOC because a specialist examines other inmates and I am not. I feel that being denied equal treatment is discrimination against me.

Defendants filed their response in February, 2006. Attached to that response are to x-ray reports . The first report is dated June 18, 2003 and is from the Denver Reception and Diagnostic Center (DRDC). The report states, in part, as follows:

> The left knee is unremarkable other than some minimal degenerative change at the patellofemoral joint, There is only slight medial compartmental narrowing and no acute fracture or joint effusion is seen.
> The right knee contains metallic hardware from prior ACL repair as well as additional screws and metallic anchors projecting over the proximal tibula. Old fracture deformity of the tibial plateau is evident which is normal alignment. There is also an old fracture deformity of the proximal fibula which is well healed....

*Exhibit F*. While at DRDC, Claimant was provided with restrictions to first tier, no intensive labor, and no camps. *Exhibit G*.

On August 15, 2003, an additional x-ray was taken of the right knee at SCF. The report of the doctor reflects that metallic hardware was noted and an old fracture. The doctor stated:

> Impression:
> 1. Old trauma and orthopedic intervention.
> 2. Mild degenerative changes of the medial and patellofemoral compartments.
> 3. Nothing acute.

*Exhibit E*.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** The evidence submitted by both sides reflects that Claimant does have a problems with his legs. That is especially true of his right knee which basically was rebuilt after his motorcycle accident in 1994. The Special Master determines that he is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The Special Master finds that Claimant is otherwise eligible to participate in programs and receive services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to establish his claim, Claimant must prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. That discrimination

must be related to a disability recognized by the Settlement Agreement. Claimant has stated that he had problems thinking because of his skull injury and problems breathing. These latter two conditions are beyond the jurisdiction of the Special Master.

Claimant must prove by a preponderance of the evidence that he was discriminated against by DOC and its staff on or before August 27, 2003. Absent such a showing, the Special Master cannot consider any actions by DOC after that date. In other words, Claimant must establish that he was the victim of discrimination between May 9, 2003 and August 27, 2003.

Claimant was in two facilities during the period of time up to August 27, 2003. While at DRDC, Claimant received medical treatment and x-rays. Claimant received restrictions, such as lower tier, while at DRDC. There is no evidence before the Special Master of any alleged discrimination due to mobility impairment while Claimant was at DRDC. Claimant was placed at SCF, and there is no evidence of discrimination during the period leading up to August 27, 2003. Claimant received medical care and restrictions.

In this case, Claimant has made significant allegations concerning lack of medical care being provided to him by DOC. Claimant complained that he was not able to see an orthopedic specialist. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. It is clear that Claimant has received some medical care, but has not agreed with such care. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement.

Claimant has no proven that he was the victim of discrimination due to a mobility impairment during the period of May 9 to August 27, 2003. As a result, the Special Master may not consider anything that occurred after August 27, 2003. To the extent that Claimant believes he was the victim of discrimination after August 27,2003, he may bring his own separate lawsuit. The same is also true concerning his mental processing issues.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Robert Griego is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 15, 2008.**

SIGNED this 26th day of November, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master