IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 01-200
Category I
Claimant: Michael Sean Edmond, #86059
Address of Claimant: BVCC, P.O. Box 2017, Buena Vista, CO 81211

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER comes before the Special Master on the claim of Michael Sean Edmond (Claimant). The claim was assigned to Category I. Claimant filed his claim form, supplemental form and additional documents in support of his claim.

Defendants filed a response to the claim on March 1, 2006. Claimant was granted time to file a reply to Defendants' response. He did file a reply. Since this is a Category I claim, the Special Master must adjudicate the claim on the basis of the documents filed by both sides. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially
      limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A.* Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

      On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

      2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
          1. Is the claimant a disabled individual who is a member of the class?
          2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
          3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
          4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

      Claimant initially came into DOC custody on June, 1995. He was released on August 27, 1997. Claimant then returned to DOC custody on November 30, 2004. He has remained in custody since. It appears that he has spent most of his recent commitment at the Buena Vista Correctional Complex (BVCC) in Buena Vista, Colorado.

      In his claim form, Claimant checked the boxes for vision impaired and diabetes. He stated, in part, as follows:

      I am unable to see for distances without the aid of my glasses, and my vision has gotten worse. I am also hypoglycemic and my blood sugar is really low so I am able to eat only certain foods. My hypoglycemia also affects my vision. If I do not receive the required sugar level every day, I begin to feel very lethargic and dizzy like I am going to faint, with perfuse sweating. The feeling is similar to going into

a diabetic coma.

In his claim form, Claimant was asked to describe the discrimination that had occurred. Claimant stated as follows:

> When I asked for new glasses because my prescription was old, they did not give me any. Although I am hypoglycemic, they did not give me an extra snack like diabetics nor do they monitor my sugar level like they are supposed to do by doing "finger sticks" every day. Recently, I was prescribed medication without the mental health doctor seeing me like they do with all other offenders within the DOC.
>
> My vision has become worse. Without my glasses, I am now legally blind....

Since it appeared that Claimant was alleging that he had hypoglycemia, a show cause order was issued to him. Hypoglycemia is not diabetes, and the Special Masters only have jurisdiction over conditions set forth in the Settlement Agreement. Hypoglycemia is not a disability over which the Special Masters have any jurisdiction. The claim of hypoglycemia was dismissed on May 3, 2005.

Claimant attached to his supplemental form a number of documents, including his own affidavit. In that document, Claimant stated, in part, as follows:

> 2. On March 17, 1995, I was sentenced to 4 years in the CDOC, however I did not arrive at the Denver Reception & Diagnostic Center (DRDC) until sometime in June 1995. I had wrote to the CDOC to tell them to transfer me to DRDC soon as possible because I needed a new pair of prescription eyeglasses due to my eyesight deteriorating. I even wrote the American Civil Liberties Union (ACLU) to request that they investigate my request to the CDOC to transfer me to DRDC as soon as possible so that I could get a new pair of prescription eyeglasses. Nevertheless, I did not receive a new pair of prescription eyeglasses until November 25, 1995. And my eyesight further deteriorated during the time I requested the CDOC to transport me to DRDC so that I could get a new pair of prescription eyeglasses until I received the eye glasses on November 25, 1995.
>
> 6. On my driver's license it states that I must wear prescription eye glasses while operating a motor vehicle because I am legally blind when not wearing them.
> 7. On May 28, 2005, I purchased a new pair of prescription eyeglasses for $5.00, however, I had to purchase another pair on December 2, 2005, for $17.49 because my first pair of new prescription eyeglasses were broken while I was playing basketball due to the fact that they are too fragile to wear while I play sports. Then on January 31, 2006, the new pair of prescription eyeglasses that I purchased on December 2, 2005, were broken.

Claimant also enclosed several pages of his medical records. Included were eye examination results,

grievances and other documents.

Defendants' response to the claim contains no medical or other records. For all practical purposes, the response is a motion to dismiss. Defendants have stated that Claimant has failed to substantiate his claim by a preponderance of the evidence.

Claimant filed a reply which attached an eye examination in May, 2005 and receipts for purchase of two pairs of prescription eye glasses. Claimant further states that he has been discriminated against because DOC will not provide goggles that would allow inmates with eye glasses to safely play sports.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

Though Claimant has continued to raise the issue of his hypoglycemia, that has been dismissed. Hypoglycemia is not a covered condition under the Settlement Agreement. Claimant retains the right to pursue a separate lawsuit concerning that condition. He just cannot pursue his claim as to hypoglycemia.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he has a vision disability. It is important to note that the Settlement Agreement requires that a claimant establish that he had a vision, hearing or mobility impairment, or diabetes on or before August 27, 2003.

Claimant came into DOC in June, 1995. He remained in DOC custody until August 27, 1997. Claimant returned to DOC custody in 2004. In order to establish his claim, Claimant must prove that he was vision impaired, as defined by the Settlement Agreement, during his first period of incarceration.

Claimant has submitted a copy of an eye examination done in September, 1995. The report reflects that Claimant's eyesight was 20/200 in each eye and was correctable to 20/20. The prescription eyeglasses that Claimant had at the time of the examination corrected to 25/200. The examination does not reflect significant sight problems.

It apparently took until November, 1995 for Claimant to receive his new eyeglasses. There is no evidence that the lack of accurate eyeglasses affected Claimant's ability to do activities of daily life. There certainly may have been some inconvenience, but Claimant was not and is not blind.

The Special Masters have uniformly treated vision impairment as requiring a showing of a significant vision loss or problem that does affect activities of daily life. Individuals who are unable

to see in order to read and who must use Braille, readers, or talking books fall into the category of people who have an impairment that affects activities of daily life. Claimant does not fall into the category of vision impaired for the period ending on August 27, 1997. Claimant is not part of the class as vision impaired. Claimant may pursue a separate lawsuit for anything that has occurred since his return in 2004 to DOC custody.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The Special Master finds that Claimant is otherwise eligible to participate in programs and receive services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to establish his claim, Claimant must prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. That discrimination must be related to a disability recognized by the Settlement Agreement.

In order to meet this criteria, Claimant would have to show that he was subjected to discrimination prohibited by the ADA and Rehabilitation Act during the period of time from June, 1995 to August 27, 2003. Claimant has not done that. The only claimed act of discrimination was a delay in obtaining eyeglasses with the proper prescription, as those were received in November, 1995. Such delay, it and of itself, is insufficient to prove a discriminatory act. It was an inconvenience but has not been proven to be a violation of the ADA. Claimant is advised again that he may pursue anything that has occurred from 2004 to the present through a separate lawsuit.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Michael Sean Edmond is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 15, 2008.**

SIGNED this 26th day of November, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master