IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-497
Category II
Claimant: Dorothy T. Soto, #115017
Address of Claimant: c/o John Van Zandt, 601 Colorado Avenue, La Junta, CO 81050

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Dorothy T. Soto (Claimant). The claim was assigned to Category II. Claimant filed her claim form, supplemental form and additional documents in support of her claim.

Defendants filed a response to the claim on March 1, 2006. Claimant was granted time to file a reply to Defendants' response. She did file a reply. Since this is a Category II claim, the Special Master must adjudicate the claim on the basis of the documents filed by both sides. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed her claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on October 8, 2002. At the time Claimant filed her claim, she was incarcerated at the Colorado Women's Correctional Facility (CWCF) in Canon City, Colorado. According to the DOC internet Inmate Locator, Claimant has been granted parole and is living in southeastern Colorado.

In her claim form, Claimant checked the boxes for mobility impaired and diabetes. She stated, in part, as follows:

> I am a diabetic and I have knee problems. I have a right deteriorating knee and arthritis on both knees and right now as of 6-5-04 I have a torn ligament and I am in a leg brace. Will be for 6 weeks until seen by orthopedic doctor.

In her claim form, Claimant was asked to describe the discrimination that had occurred. Claimant

3

stated as follows:

> When I hurt my leg at the facility I wasn't taken into hospital for x-rays until 16 days after my injury. Then they don't give us diabetics trays or rather diabetic food. Our food is like everybody elses. That's bad on us diabetics.
>
> Drs. take too long to see you and don't care about the inmates. When your in pain or sick they don't schedule you until your already over your sickness or its gotten worse. Takes too long to see the doctors.

Claimant filed two supplemental forms. In her form on diabetes, Claimant stated, in part, as follows:

> I have thyroid, hiatal hernia, asthma, arthritis, diabetic & kidney problems. Also high blood pressure. I don't have the right diet and also when I run out of my self meds diabetic pills they take up to 2 weeks to reorder my pills and also I ordered thyroid pills June 18th, 2004 and didn't get any until July 21, 2004, The doc is not accurate on giving us our meds. They say it's the pharmacy's fault.

In the supplemental form for mobility impairment, Claimant stated, in part, as follows:

> I have arthritis and deteriorating on both my knees and they hurt me very much and they don't do nothing for me in that matter.
> I can't stand very long. I can't lift more than 10 lbs. I can't kneel at all. And I can't walk for very long distances in kind of my knees and asthma.

Defendants' response to the claim contains a number of Claimant's medical records. Defendants note that Claimant does have arthritis that was found on x-rays in January, 2003. *Exhibit C*. Claimant has walked with a slight limp since April, 2003. *Exhibit D*. Defendants argue that her medical records reflect that Claimant is able to walk even with her knee problems. Claimant has received ice, crutches, and other accommodations during her time in DOC custody.

Defendants concede that Claimant has Type II diabetes. They point to Claimant's medical records which reflect that he diabetes has been controlled and that there have been no complications. Claimant was not on insulin, but received medications while in custody. *Exhibits D, H, J, O*.

Claimant filed a one-page letter in reply to the response of Defendants. In that reply, Claimant stated as follows:

> I received this letter from you's and it said I had to write you's back before May 22, 2006. I am disabled from my knees and I wasn't seen by a doctor for 16 days after I was hurt playing baseball. I was not seen right away and I do take care of myself the best I can because my life is worth more to me than anything so it's up to you's to decide if I am well taken care of by DOC. But I know I wasn't and I am

4

disabled in kind on of my knees. I also found disabled in the streets before coming to prison. I was receiving SSI so I am disabled. I am a diabetic. But I was told to respond so I did.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that she was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that she has a mobility disability and is diabetic. It is important to note that the Settlement Agreement requires that Claimant establish that she was mobility impaired or diabetic on or before August 27, 2003.

**Diabetes:** There is no question that Claimant was diabetic while in DOC custody. Claimant will be given the benefit of any doubt and is determined to be a member of the class as a diabetic.

**Mobility:** Claimant has two bad knees that have arthritis. Giving Claimant the benefit of doubt, she is determined to be mobility impaired and a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The Special Master finds that Claimant was otherwise eligible to participate in programs and receive services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to establish her claim, Claimant must prove that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. That discrimination must be related to a disability recognized by the Settlement Agreement.

The vast majority of Claimant's complaints relate to the quality of medical care she received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. It is clear that Claimant has received some medical care, but has not agreed with such care. To the extent that Claimant is questioning the care provided to her, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue a separate lawsuit concerning the quality of medical care she received while in DOC custody.

The evidence presented by Claimant reflects that she did receive medical care and accommodations while in DOC custody. The evidence submitted by Claimant does not establish that any violation of the ADA and Rehabilitation Act occurred on or before August 27, 2003. In fact, the evidence is the opposite. Claimant was provided medical care and accommodations. The quality of the medical care must be resolved in a different lawsuit or proceeding. Claimant has not proven by a preponderance of the evidence that she was the victim of any discriminatory conduct prohibited by the ADA on the part of DOC or its staff prior to her release on parole.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Dorothy T. Soto is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 15, 2008.**

SIGNED this 26th day of November, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

───────────────────────────────
Richard M. Borchers
Special Master