IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

　　　　Plaintiffs,

-vs.-

BILL OWENS, et al.

　　　　Defendants.

_____

Claim Number 02-510
Category II
Claimant: Larry White, #43440
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

　　　　THIS MATTER comes before the Special Master on the claim of Larry White (Claimant). The claim was assigned to Category II. Claimant filed his claim form, supplemental form and additional documents in support of his claim.

　　　　Defendants filed a response to the claim on March 6, 2006. Claimant was granted time to file a reply to Defendants' response. He has filed a reply and additional supporting documents. Since this is a Category II claim, the Special Master must adjudicate the claim on the basis of the documents filed by both sides. Further argument will be waived.

I.

　　　　This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

The Settlement Agreement further goes on to discuss categories and criteria for special placement. *Settlement Agreement, Section V, Paragraph A*. Permanent mobility impairments are limited to "[i]nmates who use wheelchairs full or part time due to a permanent disability" or "[i]nmates who do not require a wheelchair but who have a permanent lower extremity mobility impairment that substantially limits walking...."

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody in 1976. He was released in 1985. He returned to DOC custody in 1986. He appears to have remained in custody since 1986. He was at the Colorado State Penitentiary (CSP) in Canon City, Colorado when he filed his claim. He remains at that facility at the time of the writing of this order.

In his claim form, Claimant checked the box for vision impaired. He stated, in part, as follows:

>My eyes are not normal 20-20 vision and must rely on state issued defective eyewear bifocal glasses to generally see. I have been diagnosed by the optometrist doctor for CSP as having possible indications of glaucoma symptoms or age macular degeneration. It is normally a strain to read, write and do daily activities that require seeing proper. I have had approx. four

3

> different eye exams from September - October, 2003, March, 2004 & April, 2004 and the exams are not adequately given because I believe there are further tests as well as proper treatment that I should be receiving and do not because of underlying discriminatory motives.

In his claim form, Claimant was asked to describe the discrimination that had occurred. Claimant stated as follows:

> The discrimination exists that for failure of DOC/CSP medical services refused to adhere to their own rules - regulations under DOC AR # 700-05 for which I am entitled to receive eye exams at least every two years and acquire new glasses at state cost of $3.00; that as of August, 2003, I was and have been eligible for new glasses and that CSP clinical services are requiring I pay an increase price of $12.75. I have exhausted the grievance process and still do not receive glasses.
>
> My vision is obscured and defective. I sometime see black blotches & various objects in my left eye and the 2 ½ year old glasses I wear are scratched. The frame is in need of adjustments and the indication of glaucoma may digress toward blindness if I do not receive the proper professional medical treatment.

Claimant further indicated that he had not received adequate medical treatment and DOC medical staff had acted with deliberate indifference toward him.

Claimant has submitted a number of documents in support of his claim. Included in those documents are various grievances that he has submitted relative to his request for eye examinations. The response to one grievance indicated that the time for routine eye examinations had been extended to every three years, as contrasted to two years under an older regulation.

In his supplemental form, Claimant stated, in part, as follows:

> I am subject to wear bifocal eye wear in order to maintain a normal vision and unable to generally read, write and function as a normal heathy human being. I am also at a higher risk to develop glaucoma because of my African Native American ethnicity.

Claimant has noted further in his supplemental form that he must use bifocals in order to "read literature, legal documents and petition the courts for redress relevant to my liberty interests."

Defendants' response to the claim was filed in early March, 2006. Attached to the response are copies of eye examinations done on Claimant. Exams performed on April 30, 1992 and December 13, 1992 reflected that Claimant's eyesight was correctable to 20/20 in both eyes. Exams given in 1999 and 2003 reflect the ability to correct Claimant's eyesight.

4

Claimant filed a reply to the response of Defendants. Claimant stated, in part, as follows:

> The claimant was subject of two visual-eye exams by Doctor Greenlee, ophthalmologist, M.D. at the eye clinic of St. Thomas - Moore Hospital, located in Canon City, Colorado on the dates of January 12, 2006 and September 7, 2005 and on the second eye exam taken 1/12/06 the doctor's test confirmed his initial exam of 9/7/05 that claimant has glaucoma.

Claimant also included his own affidavit in support of his claim. In that affidavit, Claimant described incidents that had occurred at CSP.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he has a vision disability. It is important to note that the Settlement Agreement requires that a claimant establish that he had a vision, hearing or mobility impairment, or diabetes on or before August 27, 2003. Only if the claim is proven as to that date or before may a claimant amend his claim and raise issues of continuing discrimination.

The claim filed by Claimant really involves three separate legal areas. First, Claimant has alleged that DOC medical staff did not follow the applicable provisions of Administrative Regulation #700-05. The Special Masters may exercise only the power granted to them under the Settlement Agreement. The Special Masters do not have any jurisdiction to deal with daily life in DOC and whether or not DOC has followed its own regulation. Even if Claimant is correct, the Special Master cannot compel Defendants to follow their own regulations. Claimant could seek such an order through a proceeding in state district court pursuant to C.R.C.P. 106.

Second, Claimant's allegations raise issues of improper or negligent medical and health care. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. The Special Masters are prohibited by the *Fitzgerald* case from reviewing the quality of medical care provided to Claimant. *Fitzgerald* means that Claimant is not precluded by the Settlement Agreement from bringing a separate lawsuit under the Eighth Amendment.

Third, Claimant residually falls back on the ADA and Rehabilitation Act by generally arguing that he has an eye condition and is being subjected to discrimination. The problem is that Claimant must establish that he had a vision disability on or before August 27, 2003 and, because

5

of this disability, was being treated differently from other inmates who did not have vision impairments. What Claimant has established for the period of time ending on August 27, 2003 is that he needed glasses to correct his vision, that he was provided glasses he believed were defective, and that he did not receive examinations as often as he should.

The Settlement Agreement has been construed by the Special Masters to require a significant showing of loss of vision before a vision impairment would be found. Having to use bifocals to read is not, in and of itself, sufficient to establish a vision impairment. Claimant has not shown that his activities of daily life were affected significantly on or before August 27, 2003. The ADA is not available for every person who wears eye glasses to correct their vision. The ADA is available for individuals who are blind or suffer such vision loss as to require use of braille, audio books, or readers. Claimant does not have that degree of vision problem.

The Special Master notes that no conclusions are being drawn concerning anything that occurred after August 27, 2003. As noted previously, Claimant had to establish that he was a member of the class as vision impaired on or before that date. He has not done that. Claimant may pursue through a separate lawsuit anything that occurred after that date. The Special Master is finding that there has been insufficient proof to establish a vision impairment, as defined by the Settlement Agreement, on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The Special Master finds that Claimant was otherwise eligible to participate in programs and receive services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to establish his claim, Claimant also must prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. That discrimination must be related to a disability recognized by the Settlement Agreement.

Even if Claimant's vision condition on August 27, 2003 fell into the category of a vision impairment, there has been no showing that DOC engaged in conduct prohibited by the ADA and Rehabilitation ACT. Claimant has received eye examinations and medical care. He has concerns about such care, but *Fitzgerald* bars the Special Masters from examining such care under the ADA.

Discrimination under the ADA and Rehabilitation Act occurs when a person with a recognized disability is treated differently because of that disability. An example would be an individual in a wheelchair being placed on the third tier of a cell house that has no elevator. Claimant has not proven that he was treated differently solely because of his vision condition.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Larry White is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23,

2004 as to other issues; and

       IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 22, 2008.**

       SIGNED this 26th day of November, 2007.

                            BY THE COURT:

                            */s/ Richard M. Borchers*

                            _____
                            Richard M. Borchers
                            Special Master