IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

_____

Claim Number: 03-334
Category:  III
Claimant:  Marty Bueno, #50565
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on the claim of Claimant Marty Bueno. This Hearing was held at CTCF on February 27, 2007 before Richard C. Davidson, Special Master. Mr. Bueno appeared Pro Se.  Defendants were represented by Celia Randolph, Esq.  The Special Master has reviewed the testimony and all documents filed by both sides.  This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC).  The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues.  The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham.  After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved.  That approval established the class and did not provide for an opt-out provision for class members.  The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief.  This section states, in part, as follows:

Claim forms will then be sent to the Special Master.  The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.      General inconvenience or nominal damages;

II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;

III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);

IV.     Damages due to severe physical injuries; and

V.      Damages due to death.

Only one of the above categories may be applied to each class member.  For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III.  *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

DEFINITIONS
A.  COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B.  QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C.  PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim.  They stated, in part, as follows:

The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> Is the claimant a disabled individual who is a member of the class?
>
> Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>
> Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>
> Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.  Claimant Marty Bueno submitted a claim which was assigned claim number 03-334. The claim is premised on an alleged permanent mobility disability.

2.  Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3.  Claimant Bueno first entered CDOC custody in 1993. Claimant was housed at CCF, CTCF, SCP, and CSP.

4.  Claimant was injured in 1986 in an industrial accident. He suffered a badly fractured femur requiring the placement of a rod. He now has a leg length discrepancy. In order to treat this condition, DOC issued to him special boots with a built up sole to enable him to walk. He was also given a wedge pillow and an egg crate mattress to enable him to sleep. Sometime after being given the boots, DOC took them and threw them away. Before this occurred he was doing well and was able to walk and exercise. After the boots were taken, he had problems with mobility. He was given new boots after two or three years.

5.  Upon being transferred to CTCF in February 2005, Claimant's boots, wedge pillow and egg crate mattress were taken by the nurse practitioner. At this time, Claimant finds it difficult to walk because of his discomfort. He claims that he is unable to sleep without the wedge pillow and mattress because of pain and discomfort.

6.  Claimant testified that other inmates are allowed to have special boots but that he has been denied his.

### III.  CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(i).

3.  The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes.  *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments.  *Remedial Plan* ¶ III(B).  A permanent disability/impairment is a condition which is not expected to improve within six months.  *Remedial Plan* ¶ III(C).  As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.  Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.  As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC.  Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities.  The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6.  The Special Master finds and concludes that Claimant Bueno is a mobility disabled person under the terms of the remedial plan.  It is apparent that DOC also considers him disabled

4

since he was provided special boots with built up soles in order to correct his leg length discrepancy. Further his leg length discrepancy and the rod in his femur limit his ability to sleep without the additional accommodations provided and then removed by DOC, the wedge pillow and the egg crate mattress. This is sufficient to demonstrate a substantial limitation on the major life activities of walking and sleeping.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by DOC because of his mobility disability. Claimant Bueno has stated that the taking of his previously issued special boots, wedge pillow and egg crate mattress had a substantial impact on his ability to utilize the services provided by the facility and his ability to sleep. Claimant also testified that other inmates are able to have these accommodations that he has lost. Defendant has offered no explanation as to the reasons for taking the boots and other items.

9. The Special Master concludes that Claimant has been discriminated against by being deprived of the special accommodations previously provided to him by DOC. While the taking of his accommodation equipment occurred after the cut off date for Montez claims, this taking was a continuation of the policy that had taken his boots prior to the cut off time.

10. While the Claimant presented no evidence as to the monetary amount of his damages, it is clear that to prevent the discrimination arising from the taking of his boots, wedge pillow and egg crate mattress, those items should be restored to him. If the boots have been discarded or lost, it will be necessary for DOC to obtain new medical boots for him forthwith. The wedge pillow and egg crate mattress should also be restored to him.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Bueno and against Defendants ordering DOC to provide boots with built up soles to compensate for the leg length discrepancy, a wedge pillow and an egg crate mattress for Claimant.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 15, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this19th day of November, 2007

BY THE COURT:

*/s/ Richard C. Davidson*

_____

Richard C. Davidson,
Special Master