IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

___

Claim Number: 03-213
Category: III
Claimant: Jamie C. James, #84720
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

___

# FINAL ORDER OF SPECIAL MASTER

___

THIS MATTER comes before the Special Master on the claim of Claimant Jamie C. James. This hearing was held at DWCF on December 5, 2006 before Richard C. Davidson, Special Master. Ms. James appeared Pro Se. Defendants were represented by Celia Randolph, Esq. The following witnesses were called, sworn and testified: Claimant Jamie C. James; Captain Karen Lutz; Lieutenant Gayle Ross; Case Manager Patricia Duran; Dawn Amos; and Deborah Reilly, P.A. Orville Neufeld, D.O. appeared by affidavit. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval

established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed her claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Jamie C. James submitted a claim which was assigned claim number X-159 as untimely filed. Upon review, the claim was elevated for hearing and assigned claim number 03-334. The claim is premised on an alleged permanent hearing disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant James first entered CDOC custody in 1993. Claimant has been housed at CWCF and DWCF.

4. Claimant has a lifelong hearing disability. She claims to be deaf in the right ear and to have less than 50% hearing in the left despite being furnished with a hearing aid by CDOC. She is unable to hear facility and unit public address announcements. Even when she can hear, she has trouble understanding what is being said. Guards must talk directly to her so she can hear and understand. If they speak from the side or the back, she is unable to hear. She is unable to hear fire alarms and drill announcements.

5. CDOC has furnished a hearing aid to Claimant to assist in her hearing. As with all hearing aids, this requires batteries in order to work. Those batteries must be replaced on a regular basis or the hearing aid is useless. Ms. James claims that batteries were readily available at CWCF but at DWCF they have not been available as she needs them. Claimant testified that CDOC will only replace batteries when the old ones have gone dead. She must sometimes wait up to two weeks

3

to receive new batteries. During these times, she is unable to hear.

6. Even with her hearing aid, Claimant is unable to hear when she attempts to talk on the phone. She needs access to a TTY phone. While she has attempted to obtain access, she has not been successful. As a safety precaution, Claimant needs a strobe light in her cell to alert her to fire alarms and announcements. She has attempted to have a sign language class set up but has not succeeded.

7. Claimant wants a sign placed on her cell door reading "Hearing Impaired." She wants access to a TTY phone and wants an aide to assist her when she cannot hear. She wants hearing aid batteries issued to her so she can change batteries when needed instead of waiting for medical to order her one, similar to the self-medications given to other inmates. She wants to be housed on the first floor with others who are disabled, and to be assigned a roommate who could help her hear announcements and fire alarms. She needs a watch so she can know when to go places and not be dependent upon the public address system.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and © the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III©. As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Jamie James is hearing disabled under the terms of the remedial plan. It is apparent that DOC also considers her disabled since she was provided with a hearing aid. Her inability to hear certainly interferes with her ability to communicate and to hear communications..

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by DOC because of her hearing disability. While CDOC has provided some accommodations to Ms. James, it has failed to provide the most basic accommodation to her condition, namely batteries for her hearing aid. To issue a hearing aid and then force a hearing disabled individual to go without batteries for the hearing aid is clear discrimination. In addition, while several CDOC employees have tried to assist Claimant when announcements or alarms are sounded, others have not. Claimant should be accommodated by placing her in a disabled cell with a room mate willing to assist her.

9. Claimant presented no evidence as to the monetary amount of her damages. It is clear that to prevent discrimination from arising from the failure to provide hearing aid batteries, Claimant should be issued batteries as a self-medication so she can change the battery when necessary. She should also be housed in a disabled cell with a roommate willing to assist her.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Jamie C. James and against Defendants ordering CDOC to provide hearing aid batteries as a self-medication item and ordering CDOC to house Claimant in

a disabled cell with a roommate willing to assist her in hearing announcements and alarms. Judgment is also entered against CDOC and in favor of Claimant in the amount of $400.00.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 22, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 28th day of November, 2007.

BY THE COURT:

*/s/ Richard C. Davidson*

_____
Richard C. Davidson,
Special Master