IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

___

Claim Number: 03-266
Category: III
Claimant: Michael Olson, #112340 (Deceased) - by Eric Olson, brother
Address of Claimant: Eric Olson, 115 Limberlost, Tucson, AZ 85705

___

## FINAL ORDER OF SPECIAL MASTER

___

THIS MATTER comes before the Special Master on the claim of Michael Olson (Deceased). A hearing was held on September 26, 2006 in Denver, Colorado. The hearing was held before Judge Richard Davidson, Special Master. Eric Olson, brother of the deceased, appeared by telephone. Defendants were represented by Celia Randolph, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Michael Olson submitted a claim on April 20, 2004 which was assigned claim number 02-184. This claim alleged that Michael Olson was mobility impaired. Michael Olson passed away on October 4, 2004. His interests in the claim were taken over by his brother, Eric Olson. The claim was elevated to Category III and assigned claim number 03-235.

2. Michael Olson entered into DOC custody on March 5, 2002 at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He returned to DRDC on June 4, 2004. He remained at DRDC until July 6, 2004 when he returned to LCF. He was taken back to DRDC on September 16, 2004. He remained at DRDC until he passed away on October 4, 2004.

3. The claim of Michael Olson alleged mobility impairment. Mr. Olson stated, in part, in his claim form as follows:

> Loss of mobility from arthritis and stroke. Unable to work or attend school. I am unable to walk or sit for long periods of time. I also tend to need more bed rest.
>
> DOC denies privileges to inmates who are unassigned. These privileges include yard time with assigned inmates, religious services, pictures to send to love ones, and competitive activities like Scrabble and chess tournaments. Unassigned inmates are restricted to cells for longer periods of time.

4. Michael Olson had Hepatitis C for many years before he entered into DOC custody. This

3

disease led to liver failure and his death. The family requested in October, 2004 that life support efforts be terminated. He passed away shortly after that request was honored.

5. Eric Olson sent a letter on June 3, 2004 to Al Estep, Warden at LCF, concerning the medical care being provided to Michael Olson. Eric Olson maintained that Michael Olson had suffered a stroke within the six-month period predating the letter to Warden Estep. Eric Olson maintained further that the stroke created mobility problems for his brother including difficulty in walking, falling, and being unable to take his food tray at the chow hall. Even if true, the strokes post-date August 27, 2003.

6. Dr. Bloor testified that the medical records did not reflect any evidence of a stroke. Michael Olson had two MRI's while at LCF. Neither MRI reflected any evidence of a stroke.

7. Insufficient evidence was presented to establish that Michael Olson was mobility impaired on or before August 27, 2003. Michael Olson was extremely ill due to his Hepatitis C and liver damage. Hepatitis C is not a condition covered by the Remedial Plan.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and ( c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III ( c). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan. Hepatitis C and liver failure are not conditions

4

set forth in the Remedial Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. During the course of the hearing, Eric Olson raised several issues concerning the quality of medical care provided to his brother. Under the *Fitzgerald* decision, the Special Master has no jurisdiction over issues related to the quality of medical care. Eric Olson is not precluded from pursuing a separate lawsuit under the Eighth Amendment concerning the quality of medical care provided to his brother during the time Michael Olson was in DOC custody.

6. The Special Master finds and concludes insufficient evidence was presented at the hearing to establish that a mobility impairment existed on or before August 27, 2003. The evidence presented reflects that Michael Olson's mobility issues began in late 2003, within the six-month period pre-dating Eric Olson's letter to the Warden. Michael Olson may have been disabled under the ADA in very late 2003 or early 2004 due to mobility issues arising from his Hepatitis C and problems with his liver. The only condition before the Special Master is that of mobility impairment. No conclusion is made as to Hepatitis C and liver problems rising to the level of a disability under the ADA and Rehabilitation Act.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Eric Olson did not establish that Michael Olson was subjected to discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. The Special Master makes no findings as to allegations of discrimination after August 27, 2003. Absent establishing that discrimination took place on or before that date, Eric Olson may not pursue through the claim process what may have occurred after that date.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, the claim filed by Michael Olson and continued by Eric Olson is hereby dismissed.

IT IS FURTHER ORDERED that Eric Olson and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 29, 2008** with the Clerk of the United States District Court at the following address:

                901 19th Street
                Denver, CO 80294.

SIGNED this 28th day of November, 2007.

                BY THE COURT:

                */s/ Richard C. Davidson*
                _____
                Richard C. Davidson
                Special Master