IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-376
Category: III
Claimant: Joseph Vigil, #117724
Address of Claimant: 1000 Cartaret Street, Apt. #2, Pueblo, CO 81004

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Joseph Vigil. The hearing was held at the offices of Legal Resolution Center in Colorado Springs, Colorado on May 2, 2007 before Richard C. Davidson, Special Master. Mr. Vigil appeared pro se. Defendants were represented by Rob Huss, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

submitted in this case by considering the following questions:

>    1. Is the claimant a disabled individual who is a member of the class?
>    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Joseph Vigil submitted a claim on June 2, 2004 which was assigned claim number 02-443. The claim alleged that Claimant has a mobility impairment.

2. Claimant's claim was reassigned to Category III pursuant to the Remedial Plan as set forth above. A new claim number of 03-376 was assigned to the claim.

3. Claimant Vigil first entered CDOC custody on June 12, 2003. He went first to the Denver Reception and Diagnostic Center (DRDC). He was transferred to the Arkansas Valley Correctional Facility (AVCF), in Crowley, Colorado. He then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was at CTCF when he filed his claim. Claimant was granted parole on February 6, 2006 and is living in the Pueblo, Colorado area.

4. Prior to coming into DOC custody, Claimant was examined by medical staff for back pain. Claimant was diagnosed as having a compression deformity at L4, scoliosis and degenerative disc disease. A second evaluation in early March, 2003 found significant injuries at L3 and L4 of his spine. The injuries were the result of an automobile accident in 1988.

5. When Claimant came into DOC custody at DRDC on June 12, 2003, he was examined by medical staff. He was granted restrictions of no lifting over ten pounds, no vigorous exercise, bottom bunk, and 1st tier housing.

6. Claimant was prescribed a cane by DOC medical staff and did receive it. Claimant brought into DOC custody his own TENS unit. DOC provided batteries for the TENS unit while Claimant

3

was in custody.

7. Claimant took classes while in DOC custody. Claimant was not assigned to a job while in DOC custody.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and ( c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III( c). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope

4

of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Joseph Vigil was mobility impaired during the period of time of June 12, 2003 to August 27, 2003.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America,* 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant's concerns relate to the quality of medical care he received in DOC custody, that is beyond the jurisdiction of the Special Master.

8. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003. Under Settlement Agreement, Claimant must establish that he had a recognized disability on or before August 27, 2003. Claimant must also establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

In this case, Claimant has established that he had a mobility impairment on August 27, 2003. Claimant has not established that he was the victim of discrimination during the period of time from June 12 to August 27, 2003. The decision to initially take the cane from Claimant when he came into DOC custody reflected a medical decision that the cane was not necessary. Indeed, the complaints that Claimant has made reflect medical decisions. Claimant received a cane and a back brace while in DOC custody. In addition, Claimant was allowed to keep his TENS unit.

Claimant was accorded restrictions that reflected his physical condition. There is insufficient evidence to reflect that Claimant was discriminated against during the period of time ending on August 27, 2003. Claimant's allegation that he was improperly transferred to AVCF was not proven by a preponderance of the evidence.

Under the Settlement Agreement, a claimant must establish that he was disabled on or before August 27, 2003 and a victim of discrimination before any incidents of discrimination after August 27, 2003 may be considered. Since Claimant has not established that he was discriminated against by DOC and its staff from June 12, 2003 and August 27, 2003, the Special Master cannot consider

5

any incidents that occurred after the cut-off date. Claimant may pursue any claimed discrimination after August 27, 2003 through a separate lawsuit.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, that the claims of Claimant Joseph Vigil are denied and dismissed.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 29, 2008** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 3rd day of December, 2007.

>BY THE COURT:
>
>*/s/ Richard C. Davidson*
>
>_____
>Richard C. Davidson
>Special Master