IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-364
Category III
Claimant: Lester C. Henderson # 113966
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO. 80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Lester C. Henderson. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for

1

individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.  General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Henderson submitted a claim on June 29, 2004, which was assigned claim number 02-670. The claim is premised on alleged permanent disabilities due to a mobility impairment and diabetes.

2. Claimant's claim was originally assigned to Category II pursuant to the Remedial Plan as set forth above. On November 25, 2006, Mr. Henderson's claim was reassigned to Category III and renumbered to 03-364.

3. Claimant Henderson entered CDOC custody in approximately July of 2002 after being transferred from Virginia. During his CDOC custody, he has been housed at a number of facilities, including but not limited to Freemont Correctional Facility, Colorado Territorial Correctional Facility, Fort Lyons Correctional Facility, Arkansas Valley Correctional Facility, Sterling Correctional Facility, and Limon Correctional Facility.

4. Claimant suffers from diabetes, which he generally controls with diet. Mr. Henderson's left leg has been significantly and adversely impacted by his diabetes, obesity and a prior motorcycle accident. He suffers from peripheral vascular disease which results in edema in his lower extremities, and particularly his left leg. On several occasions, he has developed cellulitis in his lower extremities. In 2003, Claimant was

3

hospitalized with a clot in his left leg. At some point, a permanent vascular filter was inserted. He has had ongoing medical problems with his left leg that have required periodic medical treatment. On a few occasions, Mr. Henderson has utilized a wheel chair to ambulate, particularly during his 2003 hospitalization and rehabilitation. However, Claimant generally walks with the assistance of a cane.

5. Claimant currently works in the sewing factory. He has had a variety of jobs while in CDOC custody. His medical providers have ordered the following restrictions: first tier-lower bunk; no stairs; no bending, squatting, or heavy lifting; no heavy exercise; no stairs; and no assignment to camps.

6. Claimant contends that CDOC has refused to place him in a facility that has a bed which will allow him to properly elevate his feet. He states that due to the configuration of the beds at Limon Correctional Facility (LCF), he cannot properly elevate his feet and, as a result, his medical condition has deteriorated. Claimant asserts that he is not receiving proper medical care at LCF, and that he should be transferred to a medical facility or an institution that has a medical unit where he can be housed.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant has failed to meet his burden of proving by a preponderance of the evidence that his diabetes constitutes a permanent disability under the ADA and/or the Rehabilitation Act. In this case, Claimant testified that his diabetes is satisfactorily controlled by diet and that it has no impact on his major life activities. The Special Master finds and concludes that Claimant's diabetes does not render him "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Claimant simply states that he has diabetes. Claimant's diagnosis of diabetes by itself is insufficient. *Albertson's v. Kirkingburg,* 527 U.S. 555, 566-67 (1999) (existence of substantial limitation on major life activity requires case-by-case assessment); *Bancale v. Cox Lumber Co.,* 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998)(proffer of diagnoses and labels insufficient to show how visual impairments affect Claimant's activities of daily life), *aff'd,* 170 F.3d 188 (11th Cir. 1999). There is simply no competent evidence in the record that would allow the Special Master to find and conclude that Claimant's diabetes substantially limits his ability to care for oneself, perform manual tasks, walk, see, hear, speak, breath, learn or work. *See* 29 C.F.R. § 1630.2(h)(2)(i).

Claimant Henderson also contends that he suffers from a mobility disability as a result of the edema and cellulites in his left leg. There is no doubt that Claimant suffers from several serious medical conditions that affect his lower extremities and particularly his left leg. However, the evidence demonstrates that Claimant can walk with the assistance of a cane; that he is able to work so long as he is not required to stand for prolonged periods of time; and that he regularly works out by walking in the yard. It does not appear that the edema, vascular disease, and cellulitis that affect his left leg have imposed a substantial limitation on Claimant's ability to utilize the facilities, or participate in the programs and services offered by the institutions in which he has been housed.

3. Additionally, Claimant's complaint that he is not receiving proper medical care for his left leg, even if true, is not cognizable under the ADA and/or the Rehabilitation Act. Such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, but both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within

the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections,* 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg,* 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital,* 729 F.2d 144 (2nd Cir. 1984). Furthermore, a claim for deliberate indifference to medical needs is not cognizable under the Remedial Plan unless it is tied to a showing of discrimination because of a disability. No such showing has been made here.

   4. To the extent that Mr. Henderson's *Montez* claim relates to inadequacies in his housing at LCF, it does not fall within the ambit of the Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan suggesting that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures, was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA and Rehabilitation Act cognizable under the Remedial Plan and occurring prior to August 27, 2003. Based on the record, Claimant was never housed at LCF until 2007.

   For all of the foregoing reasons, Mr. Henderson's *Montez* Claim must be denied.

## IV. ORDER

   IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Henderson's *Montez* Claim with prejudice; and

   IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before October 8, 2007** with the Clerk of the United States District Court at the following address:

               901 19th Street
               Denver, CO 80294.


SIGNED this 17th day of August, 2007

                              BY THE COURT:

                              /s/ Bruce D. Pringle
                              _____
                              Bruce D. Pringle,
                              Special Master

Case 1:92-cv-00870-CMA-MEH   Document 3058   Filed 08/17/07   USDC Colorado   Page 7 of 7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _____ day of August, 2007 to the following:

Mr. Lester C. Henderson
# 113966
LCF
49030 State Highway 71
Limon, CO 80826


Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
/s/ Susan L. Carter