IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-354
Category III
Claimant: Thomas J. Sotelo #86218
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Thomas J. Sotelo. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Sotelo submitted a claim on March 23, 2005, which was assigned claim number 02-855. The claim is premised on alleged permanent disability due to a mobility impairment.

2. Claimant's claim was originally assigned to Category II pursuant to the Remedial Plan as set forth above. On November 15, 2006, Mr. Sotelo's claim was reassigned to Category III and renumbered to 03-354.

3. Claimant Sotelo entered CDOC custody in 1995. He remained in CDOC custody until approximately 2000, and then re-entered CDOC custody in 2002. His current release date is March of 2008. During his CDOC custody, Claimant has been housed at various facilities, including, Buena Vista Correctional Facility, Limon Correctional Facility, Freemont Correctional Facility, Sterling Correctional Facility, Arkansas Valley Correctional Facility, Kit Carson Correctional Facility, Crowley County Correctional Facility, and Huerfano County Correctional Facility.

4. Claimant Sotelo has had back problems since he was 19. From 1995 to 2004, Claimant would experience episodes when his back would go out and he would not be able to walk. These episodes occurred two or three times a year, and lasted for up to two weeks. Claimant testified that he had approximately three such episodes in 2006, and

approximately six episodes in 2007. Except for the times when he is suffering from one of these episodes, Claimant testified that he can walk for between 25 minutes and an hour and sit for approximately 15 minutes without becoming uncomfortable. He indicated that he must rest every 150 feet or so when walking. Normally, he can get to and from his cell to the chow hall if he rests. For the last six years, he has had to squat in the shower in order to wash his lower extremities, because he cannot bend over.

5. Claimant testified that until 2004, the cause of his back problem was not diagnosed. When he experienced an episode where he could not walk or was in severe pain, he would seek medical treatment. CDOC medical providers kept telling him that there was nothing wrong with his back, or that the pain would subside in a few days. He was treated with pain killers and given various restrictions on a temporary basis, such as lower bunk, lower tier, and no heavy lifting. On a few occasions, he was provided with a wheelchair and/or a TENS unit on a temporary basis. In 2004, an MRI was performed on Claimant's back, and he was diagnosed as having degenerative disc disease and two herniated discs.

6. Prior to being diagnosed with degenerative disc disease in 2004, Claimant Sotelo relied upon the statements of CDOC medical providers that his back problems were not serious and that the periodic episodes of back pain would resolve themselves quickly and without permanent effect. As a result, up until 2004, Claimant engaged in his normal daily activities except when he was prevented from doing so by one of the sporadic episodes of severe back pain. He went up and down stairs, walked in the yard, used some mechanical weights, and played handball, football, and tennis. While in CDOC custody, Claimant has worked primarily in the kitchen wrapping silverware, in the dish room, or on the chow line.

7. Claimant complains that from the time he went into CDOC custody until 2004, CDOC medical providers failed to diagnose his back problem. As a result, he did not receive proper medical treatment, and he continued to engage in activities that likely aggravated his condition and may have caused further damage to his back and spine. Since his diagnosis in 2004, Claimant asserts that CDOC has ignored directives of his medical providers; that he has been denied appropriate restrictions, such as lower tier; and that CDOC has refused to provide him with a job compatible with his disability. He also asserts that some of the facilities in which he has been housed did not have working handicapped showers, or that he was denied the use of handicapped showers.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one

4

or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that although Claimant suffers from a mobility impairment, it does not rise to the level of a "permanent mobility disability," within the meaning of the ADA and/or the Rehabilitation Act. Whether an impairment constitutes a substantial limitation on a major life activity depends on, among other things, the duration of its limiting effects. *E.g., EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001)("To hold that a person is disabled whenever that individual suffers from an occasional manifestation of an illness would expand the contours of the ADA beyond all bounds."). Medical conditions or illnesses that only sporadically limit one's ability to engage in major life activities generally do not constitute permanent disabilities under the ADA and/or Rehabilitation Act. *E.g., Rohan v. Networks Presentations LLC*, 375 F.3d 266, 276 (4th Cir. 2004).

The evidentiary record demonstrates that Claimant's ability to walk and work are substantially limited during the episodes when his back goes out. However, Claimant testified that these episodes occurred two to three times per year from 1995 through 2004, and that each episode lasted for up to two weeks. These sporadic episodes, whether considered separately or cumulatively, do not render Claimant permanently disabled. Other than during these brief episodes, Claimant has been able to walk, work, exercise, and negotiate stairs. *See, e.g., Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 644 (2d Cir. 1998)(ability to stand in one spot for only 10 minutes is not a substantial

5

limitation on the major life activity of standing); *Helfler v. United States Postal Service*, 115 F.3d 613, 616 (8th Cir. 1997)(ability to sit for no longer than 30 minutes in one position not a substantial limitation); *Bond v. Sheahan*, 152 F. Supp. 2d 1055, 1067 (N.D. Ill. 2001)(ability to walk several blocks before resting does not amount to a substantial limitation on walking). Claimant was also able to shower, although he had to squat to wash his lower extremities.

The record does not suggest that Claimant's back became worse after he was diagnosed in 2004. However, even if it did, a claim under *Montez* must be based on a permanent disability that manifested itself prior to August 27, 2003. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to August 27, 2003. While post-August 27, 2003 discrimination may be taken into account, there must be a showing that Claimant did in fact suffer discrimination through a failure to accommodate his disability prior to the execution of the Remedial Plan.

Essentially, Mr. Sotelo's claim is that from 1995 to 2004, CDOC failed to properly diagnose and/or provide proper medical care for his back. While such issues may well form the basis for a legal claim of deliberate indifference to medical needs under the Eighth and Fourteenth Amendments to the United States Constitution, both our Circuit and others have clearly stated that deliberate indifference to medical needs does not give rise to a claim under either the ADA or the Rehabilitation Act, nor do claims of negligent medical treatment fall within the ambit of either of these statutes. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). *See also Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274 (1st Cir. 2006); *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). Furthermore, even if a claim of failure to timely and properly provide medical treatment for a disability could form the basis for an action under the ADA, the Rehabilitation Act, and/or the *Montez* Remedial Plan, an evidentiary showing would have to be made that the medical care actually provided was indeed inadequate or was unreasonably delayed. The evidentiary record before the Special Master is insufficient to support such a conclusion.

Furthermore, to the extent that Claimant's contention is that he received improper medical care and/or that he was not provided with proper accommodation after his diagnosis in 2004, said claim is beyond the scope of the *Montez* Remedial Plan, which, as noted above, is limited to claims of disability discrimination that arose prior to August 27, 2003

For the foregoing reasons, the Special Master finds and concludes that the claim of Mr. Sotelo must be denied.

6

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Sotelo's *Montez* Claim with prejudice; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 7, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 19th day of October, 2007

BY THE COURT:

/s/ Bruce D. Pringle

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 19th day of October, 2007 to the following:

Mr. Thomas J. Sotelo
# 86218
FCF
P.O. Box 999
Canon City, CO 81215-0999

Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter