IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number 02-063
Category II
Claimant: David York, #95717
Address of Claimant: c/o Joe York, 604 N. 9th Street, Scottsville, KY 42164

___

# FINAL ORDER OF SPECIAL MASTER

___

      THIS MATTER comes before the Special Master on the claim of David York (Claimant). Claimant was in the custody of the Colorado Department of Corrections (DOC) when he filed his claim. He has now discharged his sentence. The last known address for Claimant is that noted above.

      This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Claimant filed claim form, supplemental form, and other documents in support of his claim. Defendants filed their response to the claim on March 1, 2006. Claimant was granted time to file a reply to the response. Claimant filed his reply on March 10, 2006. Further argument will be waived.

## I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>   A. COVERED DISABILITIES
>   The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>    1. Is the claimant a disabled individual who is a member of the class?
>    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC in January, 1997. He was incarcerated at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado when he filed his claim. He was at the Sterling Correctional Facility (SCF) in Sterling, Colorado when he suffered a knee injury. He now has discharged his sentence. The last known address for Claimant is that of his father in Kentucky.

Claimant filed a claim form in April, 2004. He checked only the box for mobility impairment. In his claim form, Claimant stated, in part, as follows:

> My right knee was operated on in 2002. The extent of the injury and the surgery that had to be done has left me permanently unable to use my leg as I would have before. My work abilities have been affected and limits me in a lot of different ways, in here (incarcerated) as well as when I'm released. I am a laborer having to use my legs to do the work that I do to keep a steady job. The Doctor stated (Dr. Pullman) that I will never be able to do the things I used to do because of the length that it took to correct the injury. Doing any labor work that would have me doing any side lateral movements will be very limited. Labor work is all I've ever done or know.

In response to the question concern discrimination by DOC and its staff, Claimant stated on his

claim form the following:

> When I injured my knee in 2001 they x-rayed it stated I only sprained it. After filing several grievances I was told that because of insufficient medical funds that they couldn't afford to give me an MRI that was needed. I continued to file medical requests and grievances until almost a year later I received the much needed MRI and it was found that my ACL had deteriorated and was dead. I got the MRI in 2002, surgery months later.
>
> Dr. Pullman explained to me that if I would have gotten medical attention within a few months, he could have repaired the torn ligament with a simple surgery and I would have been at close to 100%, but having to replace it now with a major open knee operation I would never gain full use of my knee.....

In his supplemental form, Claimant stated, in part, as follows:

> Have permanent injury to R knee due to surgery in 2002. Injury became more severe due to lack of treatment and no medical funds at Sterling Correctional to properly treat me.

Claimant submitted copies of grievances and some medical records reflecting his problems with his knees.

Defendants filed their response to the claim on March 1, 2006. Attached to the response are copies of some of Claimant's medical records. Defendants dispute that Claimant is mobility disabled, referencing several pages of medical records. Defendants note that Claimant had two ACL surgeries, one on July 24, 2002 and one in 2003. Defendants further dispute that Claimant was the victim of discrimination and that he received services and programs from DOC.

Claimant filed a reply in support of his claim. Claimant states that he was terminated from a job in 2005 in food service because of his physical condition. Claimant stated further that he was confined at the Huerfano County Correctional Center (HCCC) for a period of time and received a knee brace while there. He had the knee brace taken by DOC staff when he was transported to a DOC facility (HCCC is a private correctional facility). He believed this to be discriminatory.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant had

4

ACL surgery in 2002 and 2003. The evidence is not as clear as it could be, but there is no dispute that Claimant did have significant surgery on his right knee. He will be given the benefit of the doubt. Claimant is determined to be a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence is before the Special Master that Claimant was otherwise unable to participate in programs or receive services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant carries the burden to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Stated simply, a claimant must show that he was subjected to treatment that was different from that of a non-disabled person and that such treatment was predicated on a recognized disability. An example would be the placement of a claimant in a wheelchair on the third tier of a cell house with no elevator.

Claimant has argued that he received medical care that was deficient and improper. He maintains that it was the result of medical staff not providing him a prompt surgery. He is particularly upset at the delay that occurred before he received his first surgery on his ACL.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law.

Even if Claimant's allegations are accepted as true, there is no jurisdiction for the Special Master in light of the *Fitzgerald* decision. Claimant did receive medical care. Claimant maintains that the care was deficient and delayed. Defendants have argued just the opposite and maintain that Claimant did receive appropriate care. The resolution of this issue is beyond the jurisdiction of the Special Master.

Claimant retains the right to bring a separate action under the Eighth Amendment concerning his medical care while in DOC. In light of *Fitzgerald*, the Special Master has no jurisdictional power to evaluate or assess the quality of medical care that was provided to Claimant while in DOC custody.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant David A. York is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 22, 2008.**

SIGNED this 28th day of November, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master