IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-169
Category: III
Claimant: Thomas Caulley, #49458
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Thomas Caulley. This hearing was held at FCF on September 24, 2007 before Richard C. Davidson, Special Master. Mr. Caulley appeared pro se. Defendants were represented by Robert Huss, Esq. Rick Lawson, Sgt. Karl Freed, Corrections Officer John DeLeau, Tim Creany, M.D., Lt. Jackie Jones, Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Thomas Caulley submitted a claim which was initially assigned claim number 01-023. The claim was later elevated and assigned claim number 03-169. The claim is premised on an alleged permanent vision disability. During the hearing, evidence was presented by both sides concerning a possible mobility disorder. Consequently, the Special Master also considered this issue.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Caulley first entered CDOC custody in 1991. Claimant has been housed at LCF, Ordway, in Minnesota and since March, 1996 has been at FCF.

4. Claimant suffers from severe hypertension and has been on medication to control it for many years. In 1991 he suffered a stroke and hemorrhaged into his right eye causing vision damage. Since that time he has suffered several recurrent hemorrhages in the eye. In 1994 he had laser surgery to correct the damage. After surgery he had 20/20 corrected vision in both eyes. Since then, his vision on the right has deteriorated to 20/300. Corrective lenses do not help his right eye. Vision in his left eye has also deteriorated but is still correctable to approximately 20/30.

5. Claimant also suffers from mobility impairment because of bad knees. He started having trouble with his knees in late 1995. They continued to deteriorate and he was issued knee braces in 2007. He has also been issued a cane to assist in his mobility. Before he was issued the braces,

3

he had a great deal of difficulty in walking and was unable to climb stairs. He was moved to the first tier because of his inability to climb stairs. Before he had braces, he sometimes missed meals because he was unable to walk to the chow hall. He testified that he is now able to walk with the use of the braces and his cane. Without his braces he is unable to walk.

6. CDOC medical has prescribed medication to control Claimant's severe hypertension. However, the evidence is very clear that Claimant was not always consistently given his medication in a timely manner. With the exception of Rick Lawson, <u>all</u> the witnesses testified that medical failed on many occasions to furnish the medications to Claimant. Claimant testified that he was forced to put in a kite to obtain medication refills. If medical had the medications on hand he would receive them. If the medication was out of stock, he would have to submit another kite after it came in. He has had to go as long as two months without his medication.

7. Dr. Creany testified that he was aware of Claimant's difficulties in obtaining his medications. He testified that without the medications, Claimant could lose his vision. He prescribed the medications, but, the staff would not timely issue the medications or would allow them to run out before reordering. He said that the retinal hemorrhages were thought by the specialist to have been caused by uncontrolled hypertension.

8. Case manager Lt. Jackie Jones testified that she had to intervene with medical on four occasions to get them to issue medications to Claimant. She found that the staff would mix up the inmate names and Claimant would not get his medications. Once the medication was lost and had to be reordered before Claimant could get it.

9. The records show that Claimant has worked and participated in programs on a regular basis since his incarceration.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks,

4

walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master reluctantly finds and concludes that Claimant Caulley is not vision or mobility disabled according to the terms of the Montez remedial plan. The remedial plan requires a showing of a permanent physical impairment which substantially limits Claimant's ability to perform a major life activity. Such a showing has not been made. The evidence shows that Claimant has been issued a cane and knee braces which assist him in walking. Claimant admits he can walk with these assistive devices. Thus, Claimant has failed in his burden of proof to show that he is mobility disabled.

7. Claimant's vision impairment is more troubling. It is clear that Claimant's severe hypertension has not always been well treated because of his history of not receiving his medications timely. This has caused damage to his vision. However, his vision is correctable to 20/30 on the left even though his right eye has been permanently damaged and is not correctible. While having good vision on one side and poor vision on the other is an impairment, the vision impairment does not substantially limit his ability to perform the major life activity of seeing. He is able to see to move around the facility, to work and to participate in other activities. Claimant simply does not qualify as vision disabled despite his problems.

8. The next question which must be answered is whether Claimant was qualified to

5

participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

9. Of course, the key issue is whether Claimant was discriminated against by CDOC because of his impairments. Efforts have been made by CDOC to provide accommodations to Claimant. For his mobility impairment, he has been moved to the bottom tier and he has been given a cane and knee braces. For his vision impairment, he has been given surgical intervention, he has been examined regularly and he has been issued corrective lenses. Other than not receiving his medications timely, Claimant has been accommodated.

10. The failure of CDOC medical to timely provide hypertension medications to Claimant is lamentable. The Special Master notes that in 2003, Dr. Creany instituted reforms to correct this problem. Prior to that time, medical was not providing adequate care. However, as is pointed out in paragraph 5 above, inadequate medical care is not an issue that is cognizable under the remedial plan. Rather, the Claimant must pursue that claim in a separate action.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 8, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 7th day of December, 2007.

BY THE COURT:

*/s/ Richard C. Davidson*

Richard C. Davidson
Special Master