IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-185
Category: III
Claimant: Malcolm M. Runnel, #59529
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Malcolm M. Runnel. The hearing was held at CSP on October 29, 2007 before Richard C. Davidson, Special Master. Mr. Runnel appeared pro se. Defendants were represented by Jennifer Huss, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Malcolm M. Runnel submitted a claim which was assigned claim number 03-185. The claim is premised on alleged permanent mobility, vision and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Runnel first entered CDOC custody in 1988. Claimant has been housed at CTCF, SCP, FCF, ACC, CCF, LCF, AVCF and CSP.

4. Claimant was diagnosed with insulin dependent diabetes in 1988 and was immediately put on insulin. His A1C at that time was 16.4. Over the years his A1C has varied and now is 7.4. Claimant says CDOC food is bad and sometimes he cannot eat because he feels sick from his medications. He complains because CSP will not allow him to have food in his cell even though he needs to eat when he takes his pills. He believes the insulin dosage is too high. In October 2007, he had a bad reaction to his insulin because the food was late.

5. Claimant says his vision is bad because he was beaten by another inmate in September 2005, while at LCF. He says he was hit with his own lamp. He claims he has been injured while in CDOC custody. He says that while he was housed at CCF "everyone was trying to kill him." He now has cataracts on both eyes. He can watch television and can read. He is afraid he will lose his vision if the cataracts are not treated. He feels this is an emergency.

6. Claimant says his mobility is bad. He says he has inflammation in his feet and has bad

3

circulation in his legs. He has problems walking but can climb stairs. He is able to exercise despite his bad legs. He has been able to work and take classes. The records show he has worked in maintenance, in janitorial, in the kitchen and dining room and as a porter. He has also been frequently unassigned.

7. The records show that Claimant has not been totally compliant with his treatment plan. He has refused his insulin on several occasions. He does not eat his food and has been accused of stealing food. This he denies. His blood sugar levels have varied due to his non-compliance.

8. Claimant's vision records show that he is nearsighted. He does suffer from some minimal retinopathy. He does have low grade cataracts. He has also been diagnosed with glaucoma which is treated with eye drops. He has received regular eye exams generally on an annual basis. His corrected vision is 20/20 on the right and 20/25 on the left. Despite his eye problems, no limitations on his activities of daily living are noted in the records.

9. The medical records do not show any limitations on Claimant's mobility. In the Ambulatory Health Record dated January 17, 2006, it is noted that Claimant "can walk approx 200 ft around the clinic without a cane. He can step up and down on the exam table step at least 13 times unaided." In his testimony, Claimant admitted he can climb stairs.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within

six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

     4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

     5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

     6. The Special Master finds and concludes that Claimant Runnel is not disabled in any way according to the Montez criteria. It is undisputed that Claimant has diabetes and that his diabetes is having some impact on his health. However, this impact, in the form of diabetic retinopathy is "minimal." His vision remains good and is corrected very well to 20/20 and 20/25. While Claimant says he has trouble walking because of poor circulation, any mobility impairment does not interfere with his activities of daily living. He has shown no permanent lower extremity impairment.

     7. Claimant has the burden of proving that he is disabled. Claimant has failed to do this. His primary focus at the hearing was that the food is bad at CSP and that he is not able to keep food in his cell. This focus is not relevant to the question of his alleged disability. Having failed to establish that he is disabled in any way, it is not necessary to address the remaining questions in the Montez remedial plan. However, the Special Master notes that no evidence of discrimination by CDOC has been offered. Rather, the evidence shows that Claimant himself has contributed to the worsening of his diabetes through his non-compliance.

### IV. ORDER

     IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

     IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 7, 2008** with the Clerk of the United States District Court at the following address:

5

901 19th Street
Denver, CO 80294.

SIGNED this 7th day of December, 2007.

BY THE COURT:

*/s/ Richard C. Davidson*

---

Richard C. Davidson
Special Master