IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs-

BILL OWENS, et al.,

   Defendants.

---

Claim Number: 03-186
Category: III
Claimant: Brandy F. Davis, #99062
Address of Claimant: DWCF, 3600 Havana Street, Denver, CO 80239

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Brandy Davis. This Hearing was held at DWCF on November 14, 2006 and November 28, 2006 before Richard C. Davidson, Special Master. Ms. Davis appeared pro se. Defendants were was represented by Celia Randolph, Esq. Irene Betin, Jill Coit, Julie Ponder, Sondra Lechner and Nancy Nolan were called, sworn and testified on behalf of Claimant. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

    1. Is the claimant a disabled individual who is a member of the class?
    2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
    3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
    4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Brandy Davis submitted a claim which was assigned claim number 03-186. The claim is premised on alleged permanent mobility and hearing disabilities. Claimant has abandoned her hearing disability claim.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Brandy Davis first entered CDOC custody in 1998. Claimant has been housed at DWCF her entire time.

4. Claimant has numerous medical problems which interfere with her mobility including cerebral palsy, multiple sclerosis and seizure disorder. She also suffers from some mental or emotional disorders including bi-polar disorder. She has been totally disabled since 1983 and prior to her incarceration used an electric wheelchair. Currently, Claimant is mobility impaired and uses a wheelchair full time. She also has a permanent abdominal catheter. Because of her wheelchair use she meets the criteria for a permanent mobility disorder. This has been acknowledged by CDOC

5. Claimant has numerous complaints against CDOC. In her housing complaints she says she cannot get her wheelchair repaired when it is necessary. She is housed with another wheelchair inmate in a non-handicap cell. There is not enough room for two wheelchairs in a room. She is unable to get into her storage locker. The dining facilities are not set up for wheelchair users. She says there is only one handicap table in one dining facility and none in the other dining facilities.

The shower facilities are not adequate for wheelchair users and are not equipped with shower chairs.

6. Claimant says that she is not being given the items she needs to be comfortable. She needs an egg crate mattress, more blankets, a heating pad and a humidifier. She needs changes to her closet so she is able to reach things and get into her locker.

7. Claimant says her medical needs are not being provided for. She needs weekly bag changes. There have been times when her medications have been stopped for no reason. She says she is denied certain medications because they are not "curative." She also feels that she should not be charged a co-pay each time she visits medical because her condition is permanent and chronic.

8. The records show that Claimant has been furnished with a wheelchair pusher. However, her pusher, Julie Ponder testified that she has had no training and has had to figure out what to do for Claimant on her own. Ms. Ponder testified that Claimant is not given assistance in an emergency because she is not housed with Claimant.

9. The records and testimony also show that Claimant was allowed to work and participate in other CDOC programs. Irene Betin, the library supervisor, testified that Claimant has worked for her and is a good worker. Accommodations were made for her wheelchair in the library.

10. The records show that Claimant was given numerous accommodations as she requested. She was housed in a handicap cell. She was given extra blankets. She was given a wheelchair pusher. She was provided with a mechanical reacher. She was housed in a single cell. Her wheelchair has been repaired several times.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Davis is a mobility disabled person under the terms of the remedial plan. She uses a wheelchair full time. Her condition is permanent. There is no dispute that she is mobility disabled.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by CDOC because of her mobility disability. Claimant says that she has been discriminated against by having medical and comfort items recommended or ordered but then denied. Since she is unable to move around she is in need of these items. She specifically refers to a humidifier and heating pad. She also says she is unable to sleep because she needs an egg crate mattress and additional blankets. She also claims discrimination by CDOC failing to keep her wheelchair in good condition and allowing it to fall into disrepair.

9. The Special Master concludes that Claimant has failed to prove that she has been discriminated against by being deprived of accommodations necessary for her condition. Claimant

5

says she needs additional blankets so she can sleep. The records show that she has been given extra blankets. Claimant must have a wheelchair to allow her to be mobile and the chair must be kept in good repair. Claimant says CDOC has failed to keep the chair in repair. The records show it has been repaired several times. Claimant raises other claims that necessary items were wrongfully denied to her but the records or testimony show that the items were disallowed for medical or security reasons. The testimony of Nancy Nolan explained that some items were not medically necessary or were not allowed. Claimant has the burden of proving all the elements of her case. Here, she has failed to prove discrimination on the part of CDOC.

10. Many of the claims raised in this case go to the issue of inadequate or improper medical care. As indicated above in paragraph 5, such claims are not cognizable as part of the Montez case.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing her claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 7, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 7th day of December, 2008.

BY THE COURT:

*/s/ Richard C. Davidson*

Richard C. Davidson
Special Master