IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-225
Category: III
Claimant: Jose Escobar, 48895
Address of Claimant: CSP, P.O. Box 777, Canon City, CO 81215-0777

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Jose Escobar. The hearing was held at CSP on November 5, 2007 before Richard C. Davidson, Special Master. Mr. Escobar appeared pro se. Defendants were represented by Christopher Alber, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.  General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> A. C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Jose Escobar submitted a claim which was assigned claim number 03-225. The claim is premised on alleged permanent mobility and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Escobar first entered CDOC custody in 1987. Claimant has been housed at CTCF, SCF, LCF, AVCF and CSP.

4. Claimant was diagnosed with diabetes in 1987. He was put on oral medications at that time and remains on oral medications at this time. He says he has to take occasional insulin. He gets finger sticks 2-3 times per week but doesn't know his A1C levels. He was on a diabetic diet for 7 or 8 years but has been on a regular diet for 2-2 ½ years. While on the diabetic diet he was receiving an evening snack. Claimant believes his eyes and kidneys have been damaged by his diabetes. He can read with his right eye but his left eye vision is blurry. He also says his legs and feet swell up and he can't walk. Sometimes he cannot walk to the shower. He admits receiving medication to control the swelling. He says he cannot climb a flight of stairs because of pain in his legs.

5. Claimant had orthopedic shoes and orthotics since 1991. He says the shoes were taken by CDOC before he was sent to Nebraska in 1992. Claimant had surgery on his knee in 1997 and was issued a knee brace which was subsequently confiscated by CDOC. He says he can't stand more than 5 or 10 minutes at a time.

3

6. Claimant claims that CDOC guards beat him for no reason. He only eats one meal a day because he is afraid to take the meals as they are passed to him because the guards will smash his fingers. He claims the meals also are contaminated and spit in. He frequently refuses his medications because he claims they are tampered with and make him sick. He says medical staff puts perfume and dirt into his medications. Because of his fear of the guards he pays other inmates to keep his legal documents.

7. The records show that Claimant has a history of refusing his finger sticks, meals and medications. His canteen record shows that he purchases undesirable food. He claims he does not eat this but that he gives this to other inmates to help him. He testified that the medical records are wrong because the medical staff is lying.

8. The medical records show that Claimant's diabetes is under "reasonable control" despite Claimant frequently refusing his medications and meals. His vision has been checked and no evidence of diabetic neuropathy has been found. He vision is currently corrected to 20/20 and 20/25. In March, 2007 Claimant refused another eye exam. His kidney function is good although he may have some early "mild kidney changes." He is able to perform all his activities of daily living.

9. Claimant has flat feet. If he was allowed to walk a lot, he could benefit from tennis shoes and arch supports. Despite his claim that he cannot walk, he admitted he was able to walk 1 or 2 city blocks to get from his cell to the conference room where the hearing was held.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant is not mobility disabled. There was no evidence presented to show that Claimant has any "permanent lower extremity impairment that substantially limits walking." He admitted he is able to walk one or two city blocks. He says he cannot climb stairs without resting because of pain in his legs and feet because of swelling. He receives medication for swelling and the medical records do not record any disability. Neither is Claimant disabled because of his diabetes. The records show that his diabetes is under control and does not interfere with his activities despite Claimant being non-compliant with meals and medications. Claimant can show no physical damage caused by his diabetes other than some early and mild kidney changes. Claimant has the burden to show any limitations on daily activities caused by his claimed disabilities but has failed to do so. Consequently, his claims must fail.

7. Since the Claimant has failed to establish that he is disabled, it is not necessary for the Special Master to consider any claims of discrimination. However, Claimant claims he has been beaten and was in fear that he would be beaten on the way back to his cell. He also claimed that his food and medications were contaminated. If these claims were true, Claimant could have the basis for another lawsuit. In fact, Claimant blames these alleged retaliatory activities on his litigation against CDOC employees. As a result, these claims are outside the limitations set by the Montez remedial plan. Even if Claimant had established his claimed disabilities, these matters would not be evidence of discrimination because of such disabilities.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 7, 2008** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 7th day of December, 2007.

>BY THE COURT:
>
>_____
>Richard C. Davidson
>Special Master