IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

  Plaintiffs,

-vs.-

BILL OWENS, et al.,

  Defendants.

---

Claim Number: 03-284
Category: III
Claimant: Jacques Richardson, #100851
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Jacques Richardson. This Hearing was held at CSP on November 5, 2007 before Richard C. Davidson, Special Master. Mr. Richardson appeared pro se. Defendants were represented by Christopher Alber, Esq. Sergeant Trujillo, Waldo Mackay, Doctor Wermers, Claimant and Orville Neufeld, D.O. were called, sworn and testified. Claimant waived witnesses Reid, Davis, Hildebrand, Fettis and Dr. Aasen. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Jacques Richardson submitted a claim which was assigned claim number 03-284. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Richardson first entered CDOC custody in 1999. Claimant has been housed at LCF, CSP, and CCF.

4. Claimant injured his knee while playing football as a youth. Over time the knee has gotten worse. In September, 2000 arthroscopic surgery was performed. Claimant described this as cleaning out the joint and smoothing the bone. As a result, his knee now has no cartilage and is bone on bone. He has good days when he can walk with little pain and bad days when it hurts to walk. He admits he can walk and climb stairs but has to hold on to the handrail. He has to go up stairs to shower. He said he walked 100 yards to come to the hearing room. He wears a neoprene sleeve to hold the patella in place.

5. Claimant works as a porter. During the day he has to rest a lot. He says the knee locks when he is in a sitting position. He says he cannot stand on that leg for long periods of time, or do anything strenuous. A cane has been recommended for him but has never been issued. He admits that since he is in administrative segregation, he cannot have a cane. He wants a knee replacement but this has been refused because he is too young. Instead, Dr. Neufeld testified that he needs to be "very kind to the knee."

6. Claimant says he has been discriminated against by CDOC by being forced to work as a porter. He has been further discriminated against by being charged a co-pay despite the fact that he has a chronic condition. He says he is sometimes charged $10.00 when he needs ice for his knee.

He also charges discrimination by CDOC for the refusal to allow knee replacement surgery.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant does not have a mobility disability as it is defined in the Montez remedial plan. There is no doubt that he has a permanent lower

extremity mobility impairment, but he is still able to walk and climb stairs. In order to be mobility disabled, Claimant must prove that he is substantially limited in some major life activity such as walking. This he has failed to do.

7. Nor has Claimant proven that he has been discriminated against by CDOC. He is currently going through the Progressive Reintegration Program at CCF. A requirement of that program is that he have employment. This is a requirement for all inmates in the program. This is not discriminatory. Whether he should be charged a co-pay is a matter of CDOC medical policy and is outside the scope of this case. Also, there is no evidence that he has been treated any differently than other inmates similarly situated. Finally, his claim that he is being discriminated against by the refusal to give him knee replacement surgery is a complaint that he is receiving inadequate medical care. This claim is not cognizable in this case as is stated in paragraph 5 above.

8. Having failed to prove that he is mobility disabled, Claimant's claim must fail.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 7, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 7th day of December, 2007

> BY THE COURT:
>
> */s/ Richard C. Davidson*
>
> _____
> Richard C. Davidson
> Special Master