IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-333
Category: III
Claimant: Michael Eugene Graham, #88908
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Michael Eugene Graham. The hearing was held at SCF on August 17, 2007 before Richard C. Davidson, Special Master. Mr. Graham appeared Pro Se. Defendants were represented by Robert Huss, Esq. The following witnesses were called, sworn and testified: Peggy Mae Graham and Orville Neufeld, D.O. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Michael E. Graham submitted a claim which was assigned claim number 03-333. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Graham first entered CDOC custody in February, 1996. Claimant has been housed at FCF, ACC, HCCC, KCCC, SCF, and in Texas.

4. Claimant was injured in 1969 while in the United States Army. He suffered a gunshot wound to the right foot. Pursuant to that experience he was diagnosed with PTSD. He was given a 20% disability for the foot injury and an overall 70% disability. When he entered CDOC custody he was using orthotics to assist his mobility. In 1997 he was issued new orthotics and orthopedic boots. He was able to ambulate with these devices.

5. While he was housed at ACC in 2004, he began to have additional problems. He was under pressure at his kitchen job and had a reoccurrence of his PTSD. He felt he could not do his job so he quit. He was found guilty of "failure to work" and lost good time as a result. Subsequently, his orthotics and orthopedic boots were taken and he was transferred to another facility. Eventually he was able to get his orthotics back but not his orthopedic boots. The orthotics were subsequently lost in a riot. He does wear tennis shoes which help. He was issued prison boots but they do not fit properly. He has been given a cane permit.

6. Claimant says he suffers pain in his joints and muscle spasms. He is able to walk perhaps up to an hour. However, when his foot is aggravated he says he cannot walk at all. He claims he is suffering from ankylosing spondylitis. He claims he is 100% disabled according to VA rules.

7. The medical records show that Claimant was examined to determine whether he had ankylosing spondylitis. Medical admits that he could have this but that the "story is unusual" and the diagnosis is "doubtful." Reference is made in the medical records from May 2, 2005, to Claimant's VA chart. The note states "his VA chart clearly indicates presence of HLAB27 only, with no clinical features of ankylosing spondylitis." The same medical records also refer to Claimant's ability to walk a "considerable distance" from unit 21 to east medical at SCF.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially

limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Michael Graham is not mobility disabled as defined in the ADA, the Rehabilitation act, or the Montez criteria. It appears, from the medical records and from his own testimony that he is able to walk long distances without difficulty. While he does use a cane, that alone is not enough to render him disabled. The Special Master notes that when he was observed walking in the May 2, 2005 record, that he was able to do so despite wearing boots that were too large.

7. Claimant argues that he is considered 100% disabled according to VA criteria and therefore, should be considered disabled in this matter. However, the VA criteria are not controlling in this case. Rather the criteria in the ADA, the Rehabilitation Act and the Montez Remedial Plan control this finding. According to these criteria, Claimant is not mobility disabled. He is able to walk even though he has some difficulty in the early morning. He can walk long distances and for a long period of time.

8. Since Claimant has failed to meet his burden of proof to show that he is substantially limited in some major life activity by his alleged disability he is not entitled to recover in this action.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 8, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 7th day of December, 2007

BY THE COURT:

*/s/ Richard C. Davidson*

---
Richard C. Davidson
Special Master