

**JOHN W. SUTHERS**
Attorney General

**CYNTHIA H. COFFMAN**
Chief Deputy Attorney General

**DANIEL D. DOMENICO**
Solicitor General

**STATE OF COLORADO**
**DEPARTMENT OF LAW**

OFFICE OF THE ATTORNEY GENERAL

**STATE SERVICES BUILDING**
1525 Sherman Street - 7th Floor
Denver, Colorado 80203
Phone (303) 866-4500

November 19, 2007

Paula Greisen
King and Greisen
1670 York St.
Denver. Co. 80206

RE:    inquiries

Dear Paula:

Enclosed please find a copy of the investigations conducted regarding the matters you raised following your visit to Ft. Lyon Correctional Facility. Please let me know if you have any questions.

Sincerely,

FOR THE ATTORNEY GENERAL

ELIZABETH H. MCCANN
Deputy Attorney General
Litigation Section
(303) 866-3261
(303) 866-5443 (FAX)

AG File:        DOCUMENT2

Exhibit B

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**
Fort Lyon Correctional Facility
Michael Arellano, Warden
P.O. Box 1000
Fort Lyon, Colorado 81038
Phone: (719) 456-2288
Fax:     (719) 456-3211
Web:    www.doc.state.co.us



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

MEMORANDUM

TO:         Lou Archuleta, Deputy Director of Prisons

FROM:     Michael Arellano, Warden  *Michael /Arellano*

DATE:      October 27, 2007

RE:          Concerns of Paula Griesen

In reference to the concerns expressed by Paula Griesen, I offer the following:

JONTAH TAYLOR, #94633

A Use of Force did occur involving Offender Jontah Taylor, # 94633 on September 20, 2007. This Use of Force is under review. A panel has been formed for a fact finding review. This review is scheduled to occur this week (sometime between October 29, 2007-November 2, 2007) with a report due on the review by the end of the following week.

The Use of Force report packet prepared by the shift commander and the camera footage is included with this memorandum.

RAYMOND STEWART, #87437

On September 19, 2007, Offender Stewart was working a half time position in the food service area. He has another part time job attending class to obtain his GED. While working this food service position, Offender Stewart became incontinent of stool. He did not report this to staff but continued to wipe tables in the food service area while wheeling his chair through and spreading fecal matter around the dining area. The area was cleared of other offenders and clinical staff were notified to assist the offender.

Staff observed Nurse Neuhold to use profanity toward the offender. The Lieutenant of Food Service spoke privately to Nurse Neuhold and requested she not speak to Offender Stewart in that manner. The Shift Commander also addressed the issue with Ms. Neuhold as did the Custody/Control Major. This issue was discussed with Paul Lastrella by Associate Warden Smith, who requested that he address the issue with Nurse Neuhold. Reports regarding this incident and memorandum from Mr. Lastrella is included in this

October 24, 2007
Page Two

packet. The situation was reviewed and discussed with the Shift Commander by the Custody Control Major regarding the movement of the offender from the food service area instead of asking clinical staff to report.

Offender Stewart was terminated from the food service position based on security concerns. Spreading fecal matter in the food service area creates a potential for offender discord and negative actions by the offender population toward Offender Stewart.

Offender Stewart remains employed in education working on his GED. Case Management staff are reviewing the jobs for potential placement in another part time position.

WENDY GROVER

Ms. Grover did have occasion to talk with Ms Griesen about Offender Bobb, #54891. The report submitted by Ms. Grover indicates that Offender Bobb approached Ms. Griesen in the main entry. Offender Bobb is not an offender who fits the Montez criteria. Offender Bobb was directed to return to the cell house by Ms. Grover as she felt were the instructions from legal services regarding this type of situation and the contact with Ms. Griesen. This was not satisfactory to Ms. Griesen. Ms. Grover and Staff witnessing the exchange do not believe the actions by Ms. Grover were unprofessional. Reports were submitted describing the situation and are attached.

/cs

CC:   Cheryl Smith, Associate Warden

# KING & GREISEN, LLP
## ATTORNEYS AT LAW

Diane S. King
Paula Greisen

1670 YORK STREET
DENVER, COLORADO 80206

Alison Butler Daniels
Laura E. Schwartz
Jason Cobb
Jennifer W. Riddle

October 19, 2007

**VIA FACSIMILE AND EMAIL**
Elizabeth McCann, Esq.
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO 80203
Facsimile: (303) 866-5443

Re:  Ft. Lyon Correctional Facility Compliance with *Montez v. Owens*

Dear Beth,

As you know, we recently met with our class members at the Ft. Lyon Correctional Facility. We are deeply disturbed by some of the information we received regarding the state of compliance with the Montez case. The overwhelmingly consistent problem voiced by our class members was the attitude of the correctional staff, either exhibiting extreme disregard for the needs of our class members or express disdain for this case and the inmates involved.

The most disturbing information we received concerned the tasering of Jontah Taylor, a diabetic class member. We have been informed that on the morning of September 20, 2007, Mr. Taylor had a high blood sugar reading, of approximately 280, and informed the nursing staff he was in need of insulin. He was told to come back at 8:00 a.m. for his regular insulin shot. When he reported back at 8:00, we understand his insulin was then over 500. Mr. Taylor received a shot of insulin at 9:00 a.m. However, by noon, his blood sugars had risen to around 230. We are unclear whether he subsequently had another insulin shot around that time.

In any event, by around 5:00 p.m., two other inmates took Mr. Taylor to the med line because he was experiencing extremely low blood sugars, and had become hypoglycemic. We were told the Mr. Taylor was agitated, nervous and kept yelling that he needed to see a doctor. We understand that a nurse and a guard, Sgt. Newman, were attending to Mr. Taylor and trying to calm him and possibly trying to give him some glucose pills. When he was told to sit down, Mr. Taylor would sit down but would then stand up again demanding to see a doctor and was obviously agitated by the hypoglycemia – which can typically make a person very confused, nervous, shaky, and disoriented. Sgt. Newman then, either because he simply does not understand the physical manifestations of hypoglycemia or because he simply became tired of dealing with Mr. Taylor, decided to resolve the situation by tasering Mr. Taylor three to four

TELEPHONE: (303) 298-9878 ✧ FACSIMILE: (303) 298-9879 ✧ E-MAIL: greisen@kinggreisen.com

Beth McCann
October 19, 2007
Page 2 of 3

times. The witnesses to this incident uniformly described that Sgt. Newman tasered Mr. Taylor, who is very slight of build, 5"4' and 130 lbs, once while Mr. Taylor sat in his chair, then at least two to three more times after Mr. Taylor fell on the floor. We were informed that Mr. Taylor was then hog tied and taken to segregation.

We held numerous meetings with class members with diabetes and the same story was told to us on each occasion – by different witnesses at different times. On every occasion, the witnesses verified that at no time was Mr. Taylor combative or posing any threat to the custodial or medical staff. There is too much similarity between the stories to dismiss this as just an exaggeration by disgruntled inmates. Importantly, the class members were noticeably affected by what happened to Mr. Taylor and routinely expressed fear that this would happen to them if they became hypoglycemic.

We consider this an extremely serious incident and accordingly, request that we immediately be provided copies of all the incident reports regarding this matter, as well as a copy of Mr. Taylor's medical file. We have enclosed a release from Mr. Taylor for this information. Moreover, we understand that there should be security tapes of this incident and request that we be provided copies of those tapes immediately. Finally, we request a copy of any investigations into this incident, information concerning the use of tasers at any other time during the past year and the reason for that use, as well as the facilities' policy regarding the use of tasers.

Another incident that causes us concern involves Raymond Stuart, a mobility impaired class member who is confined to a wheelchair. As it is not uncommon for people confined to wheelchairs, Mr. Stuart often had problems with constipation. Although he did not like to use laxatives, he was ordered to take laxatives by the nursing staff. Recently, because of effect of the laxatives, Mr. Stuart was unable to get to a bathroom in time and had an accident while he was at his job working in the kitchen. Needless to say, this was very humiliating for Mr. Stuart. Nevertheless, one of the custodial staff members, Sgt. Newholt*, became very irate with Mr. Stuart, started cussing at him, and belittled him for having the accident. Apparently, Sgt. Newholt's tirade was so embarrassing that the other inmates felt very sorry for Mr. Stuart and even offered to help clean up. We understand that Sgt Newholt yelled at Mr. Stuart to return to his cell and then fired him from his job in the kitchen because of the accident.

This display of anger and aggression toward a wheel-chair bound individual who has little to no control over bowel movements is emblematic of the hostility that we fear is expressed toward class members on a routine basis. There can simply be no justification for Sgt Newholt's conduct. Although we are told that another staff member did tell Sgt. Newholt that her reaction to the incident was inappropriate, we do not believe she faced any discipline. Perhaps more importantly, we simply cannot understand why Mr. Stuart would lose his job over what was clearly an accident. Given that there are a disproportionately high number of Montez class members at Ft. Lyon and that there are very few jobs available at that facility,

---

* We believe this to be the name of the Sgt., however, the spelling of the name may not be accurate.

Beth McCann
October 19, 2007
Page 3 of 3

getting a job at all is an enormous achievement. To have it taken away under these
circumstances seems clearly discriminatory and frankly, just wrong. Accordingly, we are
again asking for copies of all incident reports regarding this matter, a well as all records
showing why Mr. Stuart was removed from his job in the kitchen, and what, if any, discipline
Sgt. Newholt faced regarding her conduct.

Lastly, although it is not as serious as the two above incidents, I will mention one other
event that happened during our visit to Ft. Lyon as I think it also demonstrates an attitude by
the staff that is alarming. On one of the mornings while I was waiting for my team members, I
was standing in the hall area just beyond the front check-in at the facility. There was an inmate
there, Paul Bobb, who was shining shoes. As I was standing there waiting, Mr. Bobb asked me
if I received the packet of information that he sent me. I told him that another attorney in our
office, Jennifer Riddle, was receiving the mail and I would ask her when she got there if she
had seen his letter. That afternoon, I was again waiting in the same area and Mr. Bobb was
standing in the front check-in area. Ms. Riddle came in and was started checking in. At that
time, I said to Mr. Bobb that Ms. Riddle was here and I would ask her if she got his letter. I
then spoke to Ms. Riddle, asking if she got his letter. Ms. Riddle asked him when he sent the
letter and Mr. Bobb responded. Wendy Glover, the litigation assistant who has been assisting
arranging the group meetings, was standing in the control area in front of me and heard the
conversation. She then looked at Mr. Bobb and said "Mr. Bobb, if you want to talk to these
attorneys you can write them a letter." – or words to that effect. Not wanting Mr. Bobb to get
in trouble, I turned to Ms. Glover and told her that Mr. Bobb was just responding to a question
we asked of him. At that point, Ms. Glover became visibly angry and stated that it was now
time that Mr. Bobb return to his cell. I asked if this was his regular time to return to his cell.
Obviously irritated and with pursed lips, Ms. Glover responded to me that "It is now." As a
result of responding to a question we asked him, Mr. Bobb was immediately ordered back to
his cell.

The fact that Mr. Bobb was punished for merely responding to our question clearly
implies that the staff does not hesitate to retaliate against any inmate who appears to be
involved in this case. I was surprised that this hostility was so openly expressed in my
presence. This attitude appears to be pervasive at Ft. Lyon and indicative of the type of
problems that Judge Kane addressed at our last hearing.

We believe these matters need to be addressed immediately and look forward to your
client's response. Of course, please do not hesitate to call if you have any questions.

Sincerely,

Paula Greisen

PG\gc

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Trinidad Correctional Facility
P. O. Box 2000
Trinidad Colorado  81082
Phone:  (719) 845-3266
Fax:    (719) 845-3237

WARDEN'S OFFICE
RICHARD HARLAN
Phone:  (719) 845-3225
Fax:    (719) 845-3237



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

## FACT-FINDING HEARING
## ADDENDUM
## 11/13/07

**Date/Place of Hearing**

November 1st, 2007
Fort Lyon Correctional Facility
Administrative Conference Room

A.   Date of Incident:        Thursday, September 20th, 2007
     Date of Addendum:        Friday, November 13th, 2007

B.   Issue:   Use of Force Incident

C.   Staff:   Sgt. Chris Newman

**Reviewed by:**

Travis Horton
Renae Jordon
Greg Kirkland

**Overview:**

After submitting the Fact-Finding report, a series of questions was posed to Chairperson Horton regarding circumstances associated with, (before, during and after), this use of force. An addendum was requested that outlined the conversation the fact finding committee had with Clinical Services personnel. During the fact finding process, this committee reviewed the reports and interviewed Nurse Neuhold from the Fort Lyon Correctional Facility. Nurse Neuhold's written report stated that Offender Taylor's blood sugar level was "Dangerously" low, and that he was disoriented. Nurse Neuhold's report indicated that Offender Taylor was not making any sense when he talked, and he demonstrated uncoordinated movements. As time passed, he became more argumentative and more agitated according to Nurse Neuhold. During our interview, it was discussed, that Offender Taylor refused to cooperate with medical directives which Nurse Neuhold believes contributed to his condition continuing to worsen. Nurse Nuehold indicated that Offender Taylor became more disoriented and more animated in his arguments as his condition worsened. Nurse Neuhold also indicated that Offender Taylor's condition would progress to the point of "passing out". Offender Taylor's actions deteriorated to the point that Offender Taylor became "out of control". He, Taylor, jumped up from his chair, yelled obscenities and charged toward Sgt. Newman.

Nurse Nuehold was asked, "Did this medical situation require action at this time, or could Offender Taylor have been allowed to cool off for a period of time and then be approached by correctional personnel?" Nurse Nuehold indicated that Offender Taylor's condition required that correctional personnel continue to work with Offender Taylor at that time, and that he could not safely be left alone to "cool off". A written report submitted by Nurse Gilbert states that "Offender (Taylor), was unable to cooperate with medical, due to the, (Taylor's), acute illness.

Fort Lyon Correctional Facility Warden, Mr. Areallno submitted a list of 6 questions for Chairperson Horton and the fact finding board to review in addition to the supplied use of force packet.

1) How did Offender Taylor's medical condition affect the use of force?
2) Is Offender Taylor's behavior different because of his low blood sugar? If so Why?
3) Offender Taylor was escorted from the front med line area to the back took a seat and then acted out. Again, if his behavior was due to his medical conditions would he have acted out while being walked to the area where he was placed in the chair?
4) What did the low blood sugar level do to contribute to the way the offender responded to directives? Could a nurse (s) respond that in their professional opinion it did the following ....?
5) Is the offender's behavior normal for this offender?
6) Was Nurse Nuehold the only nurse involved, if not were the other nurses interviewed?

Response to Warden's questions:

1) The offender's medical condition did not directly affect the use of force, except that the offender was reported to have been disoriented and "detached" from the world around him. The use of force was based upon the offender lunging up from his chair, and the officer perceiving and responding to a threat. The cause of the behavior was/is unknown.

2) It cannot be said for certain that the offender's behavior was a direct result of his low blood sugar level, but that it is highly likely that his blood sugar level did contribute to his erratic behavior. The nurse indicated during the fact finding that low blood sugar can lead to this type of behavior.

3) The reports indicate that he was cooperative at the beginning of the incident, but was slowly getting less cooperative as time passed. Attempts were made by medical staff to treat his medical condition, however offender Taylor refused. He was moved to get away from the view of the other offender's, (his request). It appears that he cooperated with that move. He then lunged from his chair and his actions were responded to by staff.

4) Low blood sugar affects each person differently.

5 Two involved staff members indicated that this offender has had low blood sugar levels in the past, but he has not lunged at staff with his fists clenched prior to this incident.

6) Nurse Nuehold was the only Nurse that was in the same room as the offender and Sgt. Newman when the use of force occurred. She was the only Nurse interviewed by the Use of Force Fact Finding Board, because she had been involved with the incident from the beginning, and had witnessed the offender's actions, as well as the staff member's reactions.

Information Evaluated:

1.  Report written by and Interviews with:  **Nurse Rebekka Neuhold**

_____
Chairperson, Travis Horton

_____
Board Member, Renae Jordon

_____
Board Member, Greg Kirkland

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Trinidad Correctional Facility
P. O. Box 2000
Trinidad Colorado 81082
Phone: (719) 845-3266
Fax: (719) 845-3237

WARDEN'S OFFICE
RICHARD HARLAN
Phone: (719) 845-3225
Fax: (719) 845-3237



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

## FACT-FINDING HEARING
## ADDENDUM
## 11/9/07

**Date/Place of Hearing**

November 1st, 2007
Fort Lyon Correctional Facility
Administrative Conference Room

A.  Date of Incident:    Thursday, September 20th, 2007
    Date of Addendum:    Friday, November 9th, 2007

B.  Issue:   Use of Force Incident

C.  Staff:   Sgt. Chris Newman

**Reviewed by:**

Travis Horton
Renae Jordon
Greg Kirkland

**Overview:**

After submitting the Fact-Finding report, an addendum was requested that outlined the conversation the fact finding committee had with Clinical Services personnel. During the fact finding process, this committee reviewed the reports and interviewed Nurse Neuhold from the Fort Lyon Correctional Facility. Nurse Neuhold's written report stated that Offender Taylor's blood sugar level was "Dangerously" low, and that he was disoriented. Offender Taylor was not making any sense when he talked, and he demonstrated uncoordinated movements. As time passed, he became more argumentative and more agitated. During our interview, it was discussed, that as Offender Taylor refused to cooperate with medical directives which Nurse Neuhold believes contributed to his condition continuing to worsen. Nurse Nuehold indicated that Offender Taylor became more disoriented and more animated in his arguments as his condition worsened. Offender Taylor's actions deteriorated to the point that Offender Taylor became "out of control". He, Taylor, jumped up from his chair, yelled obscenities and charged Sgt. Newman.

Nurse Nuehold was asked, "Did this medical situation require action at this time, or could Offender Taylor have been allowed to cool off for a period of time and then be approached by correctional personnel?" Nurse Nuehold indicated that Offender Taylor's condition required that correctional personnel continue to work with Offender Taylor at that time, and that he could not safely be left alone to "cool off".

**Information Evaluated:**

        1.      Report written by and Interviews with:      **Nurse Rebekka Neuhold**

_____

Chairperson, Travis Horton

_____

Board Member, Renae Jordon

_____

Board Member, Greg Kirkland

# STATE OF COLORADO

## COLORADO DEPARTMENT OF CORRECTIONS

Trinidad Correctional Facility
P. O. Box 2000
Trinidad Colorado 81082
Phone: (719) 845-3266
Fax:    (719) 845-3237

WARDEN'S OFFICE
RICHARD HARLAN
Phone: (719) 845-3225
Fax:    (719) 845-3237



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

### FACT-FINDING HEARING

| | |
|---|---|
| Date/Place of Hearing | November 1, 2007<br>Fort Lyon Correctional Facility<br>Administrative Conference Room |

        A.    Date of Incident:      Thursday, September 20, 2007

        B.    Issue:   Use of Force Incident

        C.    Staff:   Sgt. Chris Newman

Reviewed by:        Travis Horton
                    Renae Jordan
                    Greg Kirkland

Overview:

On Thursday, September 20, 2006, at approximately 1700 hours, Sgt. Chris Newman was asked by Fort Lyon Correctional Facility, Nurse Neuhold to provide the Medical Department with assistance. Sgt. Newman was asked to provide security oversight on Offender Taylor, Jontah – DOC#94633. Offender Taylor became verbally and physically disruptive in the Medical area of FLCF. Sgt. Newman utilized physical force while controlling the behaviors of Offender Taylor, (an electronic Restraining Device – a hand held Ultron); a (Joint Lock – straight arm bar takedown), and (Strength techniques – holding Offender Taylor on the gurney). Offender Taylor was restrained, and medical treatment was provided. A medical assessment of Offender Taylor was conducted immediately after the use of force situation occurred, and then again a short time after Offender Taylor was placed in an observation cell in the Segregation Unit, by Nurse Neuhold. Neither report listed any noted injuries except the injection site for the IV that was administered by FLCF Medical Personnel.

Issues Addressed:

1.    Was this a planned Use of Force situation or a spontaneous one?

2.    Did this situation warrant further contact with the Offender?

3.    Was the situation controlled by Sgt. Newman?

4.    Was the force used reasonable and appropriate for the situation?
        a.   Would other force options be effective in controlling the situation?
        b.   Would other force options have been excessive in controlling the situation?

5.    Was the anatomical review of Offender Taylor completed accurately?

11/05/2007    12:08      7198453237                       TCFADMIM                                PAGE    02/03

Information Evaluated:  1.      Incident Reports from:      James Larimore
                                                            Chris Newman
                                                            Rebekka Neuhold
                                                            Dianna Gilbert
                                                            James Boone
                                                            Donny Britton
                                                            Cory Burket
                                                            Mike Romero

                        2.      Use of Force Report / anatomical reports

                        3.      Surveillance Video of the Medical Area during that time period

                        4.      Interviews with:  Sgt. Chris Newman
                                                  Nurse Rebekka Neuhold

Conclusion:

After reviewing the associated incident reports, conducting interviews with the two FLCF personnel primarily involved with the application of force and the medical review of Offender Taylor, review of the surveillance video of the incident, this board concludes that this use of force was reasonable and justifiable in its application and duration. It appears that the Medical personnel, (Nurse Neuhold and Nurse Gilbert) had been attempting to provide medical treatment to Offender Taylor throughout the duration of this incident. Appesrantly, Offender Taylor arrived at medication line with an immediate need for treatment, thus requiring FLCF personnel to make and continue contact with Offender Taylor. Sgt. Newman was asked to provide a Security presence in an ongoing effort to gain Offender Taylor's voluntary cooperation. Sgt. Newman appears to have provided several opportunities to de-escalate the situation with Offender Taylor, and resorted to the utilization of force only when the confrontation was escalated by Offender Taylor. When Offender Taylor jumped from his chair and assumed a fighting posture while clenching his fists, Sgt. Newman responded with a hand held electronic restraining device. Sgt. Newman appears to have applied approximately a one second burst, while directing Offender Taylor back into a sitting position in his chair. Offender Taylor was then assisted to the ground, and restrained. The force used appears to have been appropriate to control the situation and withdrawn immediately upon obtaining compliance from Offender Taylor. The anatomical reports were completed by Nurse Neuhold immediately after the use of force incident, and then again after the offender was placed in the observation cell. Nurse Neuhold conducted a visual inspection of Offender Taylor, she did not observe cuts or abrasions on Offender Taylor's body.

Recommendations:      1.      Provide the involved personnel with an explanation of the findings of this review
                              board.

                      2.      Provide training to new medical personnel on the expected response of Electronic
                              Restraining devices. Have non involved personnel complete the final check of the
                              offender after a situation of this type.

List of Attachments:   A.     Use of Force Packet
                       B.     Copy of verbal testimony


Chairperson, Travis Horton

Board Member, Renae Jordan


Board Member, Greg Kirkland

11/05/2007  12:08    7198453237                    TCFADMIM                        PAGE  03/03
  11/02/2007 11:29 FAX 719 4562615              CCA/BENT CNTY CORRECTION            @004

(11/2/2007) Gregory Kirkland - fact finding use of force FLCF 11-01-07.doc                Page 3

Chairperson, Travis Horton

Board Member, Rexie Jordon

Board Member, Greg Kirkland

Johnathan Taylor # 44633
P.O. Box 1000 FLCF Unit-5
Fort Lyon, Colorado 81038

WARDEN'S OFFICE

Ms. C Smith
Assistant Warden FLCF

SEP 2 5 2007

Re: Insulin schock incident.

FT. LYON CORRECTIONAL FACILITY

Ms Smith,

I am filing a grievance with intent to bring legal action against the Fort Lyon
Medical department and supporting staff. I take "Lantis Insulin" a 24 hour insulin
which peaks in 6 hours. On 9/19/07 Morning medline my Blood sugar was 48 no
insulin was given. At Noon med-line Blood sugar was high I was given a sliding
scale of 20 units of Regular. At Dinner medline blood sugar tested and I was
given five units of lantis. P.A. Chestnut was seen at 9:20 A.M. she changed
the lantis order from 25 in the Morning and 5 at the evening. On 9/20/07 Morning
blood sugar was 280. Nurse refused any insulin, she gave me an order to return
at 8:00 A.M. because the order seemed unusual and I knew my order was wrong.
At 8:00 A.M. my blood sugar reads high, at another reading at 10:30 A.M. was
High, and I was then given 25 of lantis, which I argued would be to much since
may day had already losy 5 hours and a meal. Also a 12 units of regular was
given, again I spoke up, all the insulin so late in the days was dangerous.I
was told to report at noon medline or be escorted by officers, At noon blood
sugar was at 230, was given 2 units of regular. At 5:00 P.M. medline, I was
taken to medline by Cellmate "Martin" (Later explaining to me I was in what
they under was a insulin shock, As I was no able to understand what they were
saying to me or I was not coherent to them) When I was placed before the medline
window I do not remember anything at that point. Focusing briefly I was told
by Sgt. Newman I would be cuffed "for me to do something" "sit down or I will
put you down" I recall him playing with his handcuff and yelling at me. I tried
to tell him to let the sugar tablets do there job but while I was trying to
get the sugar tablet in my mouth. the next thing I remember is being hit in
the chest with a light, I learned later it was the taszer, I was sitting in
the chair. how was I a threat to him, I was surrounded by several officers,
I was cuffed hands and feet. I notice Sgt Draper with the Blunder bust rifle.
I was confused at what was happening. I was taken to the Segregation unit placed
in a cell, was then released in the A.M. of Friday. Staff I recall there were
were Lt Britten, Capt Larimore, Sgt. Newman, Sgt Boone, Sgt Wingard 4 different
nurse's one nurse 3. I have a history of this instant shock incident and this
medical staff is well aware of it. They are incompetent and dangerous, negligent
in how they treated me as a diabetic knowing my history.

Medical orders change by Ms Chestnut were not known to me until the time of
my going to the med-line window. These action are dangerous and negligent in
nature and life threatening. It is my intention to bring legal action regarding
the lack of care and due diligence in the performance of the duties of the medical
staff at FLCF.

Sincerely Submitted,

Johnathon Taylor

cc: Chief Judge Edward W. Nottingham

IN HOUSE MAIL
9-23-07

Ms L. Smith
Assistant Warden FLCF

**Colorado Department Of Corrections**

Name ___TAYLOR, J.___

Register Number ___94633___

Unit ___5___

Box Number _____

City, State, Zip _____

Mr C. SMith
Assistant Warden
FLCF

inhouse mail

10/1/07

Wen

plase issue
a Copy of this
is givin to
Paul
love
10/9/07
wer

FORT LYON-DOC          x:17194563566

**∗∗ Transmit Conf.Report ∗∗**

P.1                                                        Sep 26 2007  15:45

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 62264249 | NORMAL | 26.15:45 | 1'07" | 2 | O K | BRDCAST |
| 913038665443 | NORMAL | 26.15:47 | 0'35" | 2 | # O K | BRDCAST |

# LEGAL PROCESSING FORM

FACILITY: __FLCF__   PHONE#: _719/456-3210_   DATE: __September 26, 2007__

FACILITY LEGAL LIAISON: _Wendy Grover_

PLAINTIFF'S NAME:     __TAYLOR, J.__

IF PLAINTIFF IS AN OFFENDER LIST DOC#:__94633__

IF PLAINTIFF IS AN EMPLOYEE CHECK HERE:_____

CASE NUMBER:_____

*LIST THE DEFENDANT WHO RECEIVED THE LEGAL DOCUMENTS YOU ARE
SUBMITTING:*___C. Smith, Associate Warden_____

*HOW DID THE DEFENDANT LISTED ABOVE RECEIVE THE DOCUMENTS?*
XX_ INTER-FACILITY MAIL
____ REGULAR U.S. MAIL
____ CERTIFIED MAIL
____ PRIVATE PROCESS SERVER OR SHERIFF
____ OFFENDER HANDED IT TO DEFENDANT (IF YES, OFFENDER'S NAME AND
       DOC NUMBER)_____
____ ANOTHER STAFF MEMBER ACCEPTED SERVICE ON THE DEFENDANT'S
       BEHALF (IF YES, STAFF MEMBER'S NAME & HOW WAS IT RECEIVED)

____ OTHER (EXPLAIN IN DETAIL) _____

*ON WHAT DATE AND AT WHAT TIME WERE THE DOCUMENTS RECEIVED?*

____0900____          __September 26, 2007__
TIME                          DATE