IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-896
Category II
Claimant: Frankie Evans, #115813
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER comes before the Special Master on the claim of Frankie Evans (Claimant). Claimant is in the custody of the Colorado Department of Corrections (DOC) and is placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado.

Claimant was released on parole previously and departed from parole supervision. Defendants moved to dismiss the claim, and that motion was granted. Judge John L. Kane vacated that order and directed that the claim be resolved on its merits. Claimant has returned to the custody of DOC and is at SCF.

This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Defendants have filed a response to the claim. Claimant was granted up to and including December 3, 2007 in which to file a reply to the response of Defendants. Despite being granted additional time in which to file a reply, Claimant has filed nothing further.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC on December 19, 2002. He originally went to the Denver Reception and Diagnostic Center (DRDC). He has been placed at SCF for the majority of time that he has been in custody.

Claimant filed a claim form in July, 2005. He checked only the box for diabetes. In his claim form, Claimant stated, in part, as follows:

> As of April 20, 2005, I was diagnosed with hypoglycemia, a boarder line diabetic. Because I was misdiagnosed from January 16, 2004 by Dr. J. Brooks and went untreated for hypoglycemia for so long it has taken a toll on me mentally and physically unable to function normally. Mentally I have difficulty concentrating, headaches, dizziness, confusion, trouble speaking clearly, slurred speech, and depression. Physically I get the shakes real bad, rapid heart beat, severe fatigue, and poor coordination making walking difficult without tripping. Also uncontrollable bladder. These ongoing conditions make it unbearable at times to perform everyday tasks confidently. Even though I was seen by mental health on May 27th, 2005 to talk about my sleeping disorder, loss of weight and depression, I still haven't been

3

treated.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>Although I told Dr. Brooks about my symptoms related to diabetes and that my father was believed to be diabetic, she ignored my request to test me for diabetes and tested me for thyroid problems instead, leaving my hypoglycemic diagnosis undetected and untreated until April, 2005.

In support of his claim, Claimant has submitted one page of his medical records and has provided additional personal statements. He included a medical report from April 20, 2005 which reflected a diagnosis of hypoglycemia. He was to have three snacks per day to insure that there were no drops in his blood sugar levels. In an attached statement to his claim, Claimant stated that he was tested for diabetes in January, 2004 but there was a misdiagnosis.

In his supplemental form, Claimant stated that "I noticed my illness December of 2003." He detailed that he had been examined for thyroid problems.

In response to the claim, Defendants have submitted a number of pages of Claimant's medical records. The diagnosis of hypoglycemia was made in April, 2005. *Exhibit C*. He received follow-up care for his condition. *Exhibit I*.

Claimant was granted up to and including December 3, 2007 in which to submit any reply to the documents filed by Defendants. As noted previously, Claimant has filed nothing further.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** Defendants have raised two issues in response to this claim. The first is that Claimant has failed to show that he was disabled on or before August 27, 2003. The second is that Claimant is not diabetic and, therefore, has not proven his claim. Each of these will be taken separately.

In order to file a claim, a claimant had to have been in DOC custody on or before August 27, 2003. In addition, a claimant had to have been disabled with a condition recognized by the Settlement Agreement. In this case, Claimant came into DOC on December 19, 2002. A thorough review of all documents submitted by both sides reflects that Claimant first began having symptoms in December, 2003. Claimant thought he might have diabetes. There is no evidence whatsoever that

4

Claimant was diabetic on or before August 27, 2003. Claimant's condition arose after that date, and Claimant may not pursue his claim on this basis alone.

Second, the evidence submitted by both sides reflects that Claimant has hypoglycemia. This condition reflects low blood sugar levels. *Harvard Medical School Family Health Guide, 2005, pp. 843-44*. Hypoglycemia is not diabetes. The Settlement Agreement does not include this condition, only diabetes, vision, hearing, and mobility. The Special Masters have jurisdiction only over the four conditions set forth in the Settlement Agreement.

The Special Master has no jurisdiction over this claim for the reasons noted. Claimant's remedy is to file a separate lawsuit.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Since the answer to Question #1 is in the negative and there is a lack of jurisdiction over this claim, this question does not need to be answered.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative and there is a lack of jurisdiction over this claim, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative and there is a lack of jurisdiction over this claim, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Frankie Evans is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 3, 2008, 2007.**

SIGNED this 10th day of December, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master