IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-058
Category III
Claimant: Lawrence Robert Warfield, #54622
Address of Claimant: 4410 E. Pikes Peak Avenue. #205, Colorado Springs, CO 80916

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on November 30, 2007. This hearing was held at the office of Legal Resolution Center in Colorado Springs, Colorado. Present were the following: Lawrence Robert Warfield (Claimant); and Chris Alber, attorney for Defendants.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Defendants' Exhibits A through AC were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on July 9, 1985. He was housed at various DOC facilities over the years that he was serving that sentence. Claimant discharged his initial sentence on February 28, 1993.

Claimant returned to DOC custody on a new sentence on October 25, 2001. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado on November 14, 2001. He remained at FCF until he was placed at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado on April 21, 2003. He remained at BCCF until he was placed on parole on July 28, 2004. Claimant returned to DOC custody from parole on July 26, 2005. He remained in DOC custody at various institutions until he was placed back on parole on December 15, 2005. Parole was revoked again, and Claimant returned to DOC custody October 31, 2006. He was placed back on parole on August 8, 2007.

Claimant was in DOC custody at BCCF when he filed his claim on April 21, 2004. In his initial claim form, Claimant checked the boxes for hearing impairment, vision impairment, and

mobility impairment. Claimant stated, in part, in his claim form:

> On November 23, 2001, I submitted a medical kite to the FCF medical staff about the severe pain in my left ear, to this date, I have not received the proper attention or treatment for my left ear. I have now lost the total hearing in my left ear. The damage is a permanent one, due to the fact of lack of medical attention in a timely manner. I now cannot benefit from any treatment. Still to this date nothing has been done on or for my left ear, and my pain.
>
> Upon my arrival to DOC, it was brought to the attention of property and the medical staff, that I was in need of special foot ware. From October 25, 2001, through to and including March of 2004, I have been denied proper footware. My feet are in constant pain, due to being forced to ware boots that did not fit. I no longer have any support of arches of my feet. I now have sores and curled toes. I will not require surgery on my feet. My feet are permanently damaged.
>
> My first disability is to my eyes, when a nurse put corrosive ear wax solution known as Debrox, both in my eyes while fully open. I was left untreated for over eight (8) months. I have submitted numerous health kites to DOC medical staff. I was denied medical glasses from October 25, 2001, up to January 24, 2003, when there was a knowledge that my vision went from 20/15 per eye to 20/100+ per eye.....
>
> During the times relevant to this claim, I sustained a right hand injury, at no fault of my own. Again I was denied medical treatment for 32 days, when I have all the symptom as those caused by a fracture. When x-rays were later taken, and revealed a broken 4th finger, as well as damaged tendons and ligaments....
>
> In September, 2001, I was informed that my right knee cap was out of alignment. I have submitted numerous medical kites to DOC medical staff and their agents. In 2002, I was informed that my knee and leg, had bone spears. For over three (3) years I have been in severe pain and suffering of my right knee. My knee goes out at will without notice. I now have to receive painful injection to my right knee cap, I can no longer run or jump, stand and walk as before. I have been denied the needed treatment and therapy for my knee. My knee is permanently damaged.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> DOC has discriminated against me by its deliberate indifference to my medical needs, when they were brought to the medical staff attention. DOC was negligent in failing to properly supervise and ensuring compliance with their duty to me as the medical provider, when there was a awareness of my injuries, and many medical request. All I have received is sarcasm, abuse, recriminations, blaming, smart remarks, and emotional outbursts. I have tried to discuss these issues with the medical department, Mental Health, Unit Managers, and Case Managers, with no results to this date.

Claimant also has submitted a number of documents in support of his claim, including several pages of medical records. He submitted records reflecting that he had a fracture of his fourth finger on his right hand in 2001. He was seen by Dr. Eskestrand who diagnosed tendinitis, wrist sprain, and mallet right ring finger.

Claimant submitted documents concerning his eyes. He was diagnosed as having chemical conjunctivitis which arose out of a chemical being put into his eyes. Claimant received optometric exams in DOC, and those records were included in the documents Claimant has submitted. While at BCCF, Claimant was referred to Dr. Jarvis Ryals, M.D., a neurologist. Claimant had been experiencing headaches before seeing Dr. Ryals. Also included in his documents were records of when he sought treatment for his right knee, feet and ear. The documents include copies of medical kites and records from various medical providers. Claimant was seen for each condition that he has noted.

At the hearing, Claimant testified concerning his concerns about his treatment while in DOC custody. Claimant stated that a medical provider had placed an ear drop in his eyes while he was incarcerated at the El Paso County Jail. The drops burned his eyes, and he has had sight problems since then. He brought this to the attention of DOC staff when he was at DRDC. He received eye glasses after entering into DOC custody, but these were taken from him at BCCF. His visual acuity dropped from 20/15 to 20/70. He testified that he filed grievances and kites but received no responses. His eyes are now light and photo sensitive.

Claimant testified that his hearing was affected by an infection that went untreated. Fluid was discovered in the ear. He claims to have lost hearing in his left ear. He requested but never received a hearing aid. Claimant noted that he has other medical conditions, including asthma and Graves disease.

Concerning his mobility impairment, Claimant testified concerning the problems that he has had with his right hand. He believed that his finger was broken while at the El Paso County Jail. He did see Dr. Eskestrand and believed that he was to receive special splints, but never was provided those by DOC. Claimant testified that he believed that his medical problems have made it impossible for him to keep a job in the community since his release.

Claimant testified also concerning his knee and feet. He has had a knee problem that he believes went untreated. His feet suffered because of bad footwear. He was to receive soft shoes, but had trouble getting them. He received soft shoes while at BCCF, though the request for them had originally been made in 2001.

Claimant testified that he was not given light duty work assignments. He could not do heavy work, and he believed DOC was aware of that. He believes further than he was not allowed to progress through the system because of his disabilities. Claimant testified as to his medical care that "seeing doctors and nurses means nothing if they don't follow their orders."

5

On cross-examination, Claimant testified that he has never been diagnosed with glaucoma or cataracts. The accident with his eyes took place in the El Paso County Jail. He had requested glasses for two years before he received them in 2003. Claimant testified that he cannot drive at night at the present time.

Claimant also testified that hearing in his right ear is good, but he cannot hear out of his left ear. His right hand is numb and he must use his left hand as much as possible. In response to a question from counsel for Defendants, Claimant stated that he has had three jobs in one year since being released, and he believes that has been caused by the treatment he received at DOC. Claimant testified that he wanted proper care while in DOC custody.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. Dr. Neufeld had reviewed the medical records of Claimant. Dr. Neufeld testified that the medical records reflect that Claimant has a mild neurosensory loss in his left ear. According to Dr. Neufeld, the loss in the left hearing was not sufficient enough to warrant a hearing aid.

Dr. Neufeld testified that Claimant has a history of visual sensitivity. He was suspected of having glaucoma, but that was not diagnosed during the time Claimant was in DOC custody. Dr. Neufeld acknowledged that Claimant has a loss of some sight in both eyes. This might be the result of the Graves disease. Dr. Neufeld testified that in his opinion Claimant did not have a mobility impairment.

Defendants also offered into evidence several pages of Claimant's medical records. Claimant was referred to Dr. Butler, an ENT specialist, who confirmed that Claimant has hearing loss.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. It should be noted that Claimant has other medical problems, including Graves disease, which are affecting his health by which are not part of the Settlement Agreement.

Under the ADA and Rehabilitation Act, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include

functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Vision Impairment**: The evidence presented by both sides reflects that Claimant was the victim of the malpractice of a nurse or other medical care provider in 2001 when he received ear drops in his eyes. This led to chemical conjunctivitis that continues to affect his sight. Claimant is determined to be a member of the class as vision impaired.

**Hearing:** The evidence reflects that Claimant has hearing loss in his left ear. The evidence presented by Claimant does not substantiate that the hearing loss "substantially limits" a major life activity. Claimant testified that the hearing in his right ear is excellent and that he is able to carry on his daily affairs. Claimant is not hearing impaired, as recognized by the ADA and Rehabilitation Act.

**Mobility**: Claimant has presented evidence of right wrist problems and problems with his knees. As to the wrist, the Settlement Agreement deals with lower extremity mobility problems. The wrist does not qualify on that basis. More importantly, the evidence reflects that Claimant's right wrist problems do not rise to the level of impairing major life functions.

The same is also true concerning the knees. Claimant testified that he is able to walk. His knees have problems but do not substantially impair a major life activity. Claimant is not mobility impaired under the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant is extremely upset over the medical treatment that he received while incarcerated. Some of that treatment was provided by the El Paso County Jail. His eye condition is the result of a foul-up at the jail with the ear drops. Claimant testified that he believed that he did not receive proper care while in DOC custody and had requested treatment during the entire time he was in custody.

The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). Claimant's concerns about the quality of the medical care he received are beyond the limits of what may be considered in this case. The evidence presented by both sides reflects that Claimant did receive medical care while in DOC custody. He saw specialists for his conditions, including Drs. Eskestrand, Ryals and Butler. Claimant did not believe the treatment from DOC medical staff to be appropriate. He blames DOC for his inability to maintain employment.

The *Fitzgerald* decision precludes that Special Master from considering the quality of medical care that Claimant received while in DOC custody. Claimant may pursue a separate lawsuit under the Eighth Amendment concerning his care. The *Fitzgerald* decision limits ADA cases to consideration of whether or not discrimination took place due to an impairment. If Claimant had received *no* medical care for a condition, then the ADA and Rehabilitation Act would apply. The evidence reflects that he did receive care for each condition that he discussed.

There is one area of discrimination that did occur. The Special Master has determined that Claimant had a vision problem when he came into DOC custody in 2001. This was the result of the ear drops being placed into his eyes. As a result, he suffered chemical conjunctivitis that affects his field of vision. Claimant testified, and the Special Master so finds, that he needed eye glasses in order to see to carry on daily functions. He did not have glasses for a significant period of time. When he received glasses from DOC, he then had them taken from him at BCCF. No reason has been given for that. DOC was on notice that he had a vision problem. Failure to provide glasses was discriminatory, as Claimant had no ability to seek professional eye care outside of DOC. Removal of the glasses by BCCF was also discriminatory.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant had great difficulty reading without eyeglasses. The delay in getting glasses and then their removal is without any basis. Claimant is entitled to damages in the amount of $250.00.

IT IS HEREBY ORDERED that the claim of Lawrence Robert Warfield is granted to the extent noted, and Claimant is awarded damages in the amount of $250.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Lawrence Robert Warfield is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 8, 2008.**

SIGNED this 18th day of December, 2007.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master