IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

 Plaintiffs,

-vs.-

BILL OWENS, et al.,

 Defendants.

---

Claim Number: 03-075
Category: III
Claimant: Domingo Valenzuela, #95661
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER comes before the Special Master on the claim of Claimant Domingo Valenzuela. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado on May 29, 2007 before Richard C. Davidson, Special Master. Mr. Valenzuela appeared pro se. Defendants were represented by Celia Randolph, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Domingo Valenzuela submitted a claim which was assigned claim number 03-075. The claim alleges that Claimant has diabetes and a vision impairment.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Valenzuela first entered CDOC custody in 1998. He was at SCF when he filed his claim and had his hearing. He now has been transferred to the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

4. Claimant was diagnosed with diabetes before he came into DOC custody in 1998. He is a brittle diabetic, and it has been difficult to control his blood-sugar (B-S) levels.

5. Claimant has advanced cancer of the prostate. This cancer has spread to his bladder and has created significant health issues. The cancer has made stabilization of his B-S levels a difficult task.

6. Claimant was diabetic on and before August 27, 2003. He is found to be a member of the class as a diabetic.

7. Claimant has received frequent eye examinations since coming into DOC custody. His eyesight has been correctable to 20/20 in both eyes. The evidence presented does not reflect that any diabetic neuropathy exists in either eye. Claimant is not a member of the class as vision impaired.

8. Claimant came into DOC custody with tennis shoes that had been prescribed for him by his physician. Claimant was given permission to have tennis shoes if there were no security concerns. No evidence was submitted at the hearing that Claimant's tennis shoes ever posed a security problem. No evidence was presented as to why it became necessary for Claimant to buy his own tennis shoes from the canteen.

9. Claimant made the allegation that on three or four occasions he was given the wrong pills or an incorrect dosage of insulin. No supporting evidence was presented by either side concerning this allegation.

10. Claimant's first language is Spanish, and he had difficulty at the hearing in understanding what was transpiring. As a result, all documentation submitted by both sides has been reviewed in detail.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and ( c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III( c).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially

limited one or more of his or her major life activities.

     5. As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

     6. The Special Master finds and concludes that Claimant Domingo Valenzuela was diabetic during the entire time he has been in DOC custody. He is a member of the class as a diabetic.

     7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

     8. Claimant did not establish that he was the victim of discrimination on or before August 27, 2003, with one exception. The Special Master would note first that Claimant did not establish that he received the incorrect dosage or type of medicine. Even if true, it has not been established by a preponderance of the evidence.

     The loss of tennis shoes does reflect a discriminatory policy. The medical records early on indicated that tennis shoes were appropriate because of his diabetic neuropathy. At some point, the shoes were taken and not replaced. Claimant was told to purchase his own tennis shoes from the canteen. If the tennis shoes were medically necessary when he came into DOC custody and his condition has worsened, then expecting Claimant to purchase his own tennis shoes constitutes a discriminatory act. Claimant was placed at a significant disadvantage because he had to earn money to purchase the tennis shoes, the tennis shoes were medically helpful, and he was less able to work due to his medical condition. Claimant is entitled to damages of $200.00 as the result of the loss and non-replacement by DOC of his tennis shoes.

## IV. ORDER

     IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, that judgment is entered in favor of Claimant Domingo Valenzuela and against Defendants in the amount of $200.00 for loss of his tennis shoes;

     IT IS FURTHER ORDERED that the remaining allegations of Claimant are denied and

dismissed;

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 17, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 19th day of December, 2007.

> BY THE COURT:
>
> */s/ Richard C. Davidson*
>
> _____
> Richard C. Davidson,
> Special Master