IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-201
Category III
Claimant: Larry Gordon, #53405
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 4, 2007. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado. Present were the following: Larry Gordon (Claimant); and Chris Alber and Willow Arnold, attorneys for Defendants.

Testimony was received from Claimant and Dr. Anita Bloor, M.D. Claimant's Exhibits 1 and 2 were offered and admitted. Defendants' Exhibits F through P were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on July 9, 1985. Claimant was placed primarily at the Centennial Correctional Facility (CCF) in Canon City, Colorado. Claimant discharged that sentence on May 3. 1989.

Claimant returned to DOC custody on July 27, 1994. Claimant was placed first at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to LCF in September, 1994. He was transferred briefly to CCF but returned to LCF in November, 1995. He has been incarcerated at LCF for almost all of the period of time since late 1995.

In his initial claim form, Claimant checked the boxes for diabetes, vision impairment, and mobility impairment. Claimant stated, in part, in his claim form:

> I am in pain with both feet, and it's hard to walk. I explained that I need soft sole shoes which was denied by DOC medical. I was denied eye glasses that are tinted in order to keep the sun's rays out of a left eye injury. Colorado department of corrections have out right intentional misdiagnosis me with irritable bowel

3

syndrome, in order to punish me without due process of any law, subject me to "genocide..."

I was denied the right to be treated as punishment because I am in pain and that not being treated for years my liver, kidneys, bladder is infected. My food was contaminated with sulfuric acid, and human waste, because I filed a civil rights complaint against Arapahoe County Sheriff Patrick Sullivan, and Gail Norton, Colorado Attorney General, to silents me.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

I was subjected to a "program of genocide ...contrary to the ...laws" of the United States Constitution and the State of Colorado because I am black and have exercise my rights, illegally incarcerated on a invalid warrant, denied equal protection.

Claimant also has submitted some medical records and other documents in support of his claim. He also has submitted supplemental forms on each claimed disability. Claimant reiterated that he is in constant pain. As to a mobility impairment, Claimant stated that he has trouble walking and running. He can only sit for a few minutes. As to vision impairment, Claimant stated that "I wear eye glasses and I request that my glasses be tinted and was denied in 1995, here at the Limon facility."

Claimant submitted copies of some of his medical records in 2005. Claimant has other medical issues, including bowel problems. Claimant sent to the Special Master copies of medical records relating to those problems. Claimant was examined by a non-DOC specialist, Dr. Finlaw, M.D., in the mid-1990's for possible bowel disease. That physician indicated in January, 1996 that Claimant probably had irritable bowel syndrome. He recommended a high fiber diet, bulk agents, and anti-spasm medication.

Also forwarded by Claimant were copies of other tests performed concerning his bowel and other problems. This included lower GI tests. Some of these tests were performed while Claimant was in the Arapahoe County Jail.

In 2005, Claimant filed several motions and documents. He indicated in one document that he has both physical and mental health problems. Claimant also reiterated in several documents that he was being subjected to improper treatment because he is African American and that this treatment is a form of genocide.

At the hearing, Claimant called Dr. Anita Bloor, M.D. as his first witness. Dr. Bloor is the physician assigned to LCF. Dr. Bloor has been the physician at LCF since 1996 and has provided treatment to Claimant over that intervening period of time. Dr. Bloor indicated that Claimant has hypertension and heart disease. Dr. Bloor has ordered medication for both. She testified that Claimant is not diabetic and that he is able to walk. She further noted that Claimant does not HIV

or AIDS.

Claimant testified at the hearing that he had diabetes. He testified further that he had been poisoned by the Arapahoe County Jail in the time period of 1992 through 1993. He claimed that he had not been treated for irritable bowel syndrome. He testified that he had not had proper medical treatment while in custody. He further believed that he has a flesh-eating bacteria that is slowly destroying him. He noted that he has cramps. He has not been taken out of LCF for treatment. Claimant testified that "DOC has made an effort not to treat me."

On cross-examination, Claimant testified that he did not have diabetes per se. He did indicate that he has a vision problem. He just received new glasses from DOC, but he wanted to receive tinted lenses. In response to another question, Claimant testified that he tries to exercise everyday. This includes running one mile or more each day. He did note that he has trouble with his feet, as he loses sensation in his feet.

Defendants presented no witnesses but offered Exhibits F through P. Those records reflected treatment for GERDS and possible sleep apnea. Claimant received an evaluation by an eye specialist at the Colorado State Hospital in 1989, and nothing unusual was found. *Exhibit M*. Routine exams by optometrists since reflect normal, correctable vision.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. It should be noted that Claimant has other medical problems, including irritable bowel syndrome, which are affecting his health but are not part of the Settlement Agreement.

**Vision Impairment**: The evidence presented by both sides reflects that Claimant was not vision impaired on or before August 27, 2003. There was insufficient evidence to prove that Claimant suffered any vision impairment that affected activities of daily life. This Special Master has uniformly held that a vision impairment under the ADA and Rehabilitation Act requires a significant loss of eye sight bordering on being blind. Claimant has failed to establish that he was vision impaired on or before August 27, 2003. Claimant is not part of the class as vision impaired.

**Diabetes**: There is no evidence that Claimant was or is diabetic. Claimant has not been diagnosed as having diabetes. He is not part of the class as diabetic.

**Mobility**: Claimant has had some problems with his legs and feet. Those problems have not affected his ability to participate in the activities of daily life. Claimant continues to be able to walk and run. Claimant has not proven that he was mobility impaired on or before August 27, 2003.

Claimant may have other medical issues, including his heart problems, hypertension, and irritable bowel syndrome. These may be pursued through a separate lawsuit. They cannot be pursued through this claim form.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has not established that he is a member of the class under any category set forth in the Settlement Agreement. He also has proven no discriminatory action by DOC or its staff.

Claimant has complained about the quality of medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Even if Claimant were determined to be a member of the class, there is no evidence that he was the victim of discrimination based upon his claimed disabilities. Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation. Claimant has not met his burden of proof.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Larry Gordon is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 8, 2008.**

SIGNED this 12th day of December, 2007.

        BY THE COURT:

        */s/ Richard M. Borchers*

        _____
        Richard M. Borchers
        Special Master