IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-318
Category: III
Claimant: Genady B. Slonimsky, #106124
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Genady B. Slonimsky. This hearing was held at CTCF on February 27, 2007 before Richard C. Davidson, Special Master. Mr. Slonimsky appeared Pro Se. Defendants were represented by Celia Randolph, Esq. Claimant, Michael Lovato and Orville Neufeld, by affidavit, were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

   1. Is the claimant a disabled individual who is a member of the class?
   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Genady Slonimsky submitted a claim which was assigned claim number 02-562. After being reviewed the claim was elevated and assigned claim number 03-318. The claim is premised on alleged permanent mobility and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Slonimsky first entered CDOC custody in August 2000. Claimant has been housed at CTCF, FLCF, and HCCC.

4. Shortly after being incarcerated, Claimant started complaining of leg pain, worse on the right. In September, 2001, x-rays were taken which showed mild degenerative changes in the lumbar spine with the most degeneration at L-5, and advanced degenerative changes in the hips. Right hip replacement was ordered but denied by the insurance carrier because of Claimant's obesity and hypertension. Claimant was given a wheelchair and encouraged to lose weight. A few months later, Claimant had lost weight and the surgery was scheduled. Claimant asked for a cane and that was issued to him. The surgery was performed around the first of May, 2003. Claimant was given a walker to assist him after the surgery. He progressed and eventually the wheelchair was taken as not being medically necessary. It was observed by medical that Claimant walks well with just a cane. The medical records show that Claimant was to have a hip replacement on the left performed in February, 2007.

5. Claimant testified that he is able to walk and climb stairs. He offered no evidence to show

3

that he was unable to perform any major life activity because of his impairment. His primary complaint was that his wheelchair was taken so he had to walk.

6. Claimant was diagnosed with type II diabetes on September 18, 2003, after the effective date of the Montez settlement. His diabetes has not always been under good control since his A1C levels have varied from a high of 8.5 to a low of 5.0. Changes to medications and diet have been made to achieve better control. There is no evidence that Claimant's diabetes has caused any damage. Claimant's primary complaint concerning his diabetes is that the food is bad. No evidence was offered to prove that Claimant's diabetes has interfered with any major life activity.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the

ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master concludes that claimant has an impairment to his mobility but is not disabled according to the Montez criteria. Claimant must prove both that he is impaired and that his impairment interferes with a major life activity such as walking. The evidence shows that Claimant wants to have the permanent use of a wheelchair and is upset that it was taken from him when he did not need it. Claimant can and does walk with a cane and even without. He has failed to prove that his mobility impairment interferes with any major life activity. Thus, he has failed to prove that he is a member of the class.

7. Neither has Claimant offered proof that his diabetes interferes with any major life activity. In addition, he was diagnosed with diabetes after the effective date of the Montez settlement. This claim is therefore, untimely and must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 17, 2008** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 26th day of December, 2007

>BY THE COURT:
>
>/s/ Richard C. Davidson
>_____
>Richard C. Davidson
>Special Master