IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-297
Category: III
Claimant: Raymond A. Price, #66072
Address of Claimant: BVCC, P.O. Box 2017, Buena Vista, CO 81211

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Raymond A. Price. This hearing was held at CSP on October 29, 2007 before Richard C. Davidson, Special Master. Mr. Price appeared pro se. Defendants were represented by Jennifer Huss, Esq. The following witnesses were called, sworn and testified: Claimant Raymond A. Price, Reggie Porter, Lt. Gentile, Josie Edwards, Michael Aasen, M.D., Thomas Valdez and Orville Neufeld, D.O. John Stoner, M.D. was out of state and could not attend. Claimant waived testimony from Cathie Holst and Patricia Vaught. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals,

Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I.    General inconvenience or nominal damages;
II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV.   Damages due to severe physical injuries; and
V.    Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

III.  DEFINITIONS
      A. COVERED DISABILITIES
      The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Raymond A. Price submitted a claim which was assigned claim number 02-091. After review, the claim was assigned claim number 03-297. The claim is premised on claims of alleged permanent mobility, Hearing, and vision disabilities..

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Price first entered CDOC custody in 1991. He has been housed at CCF, CSP, and SCCF.

4. Claimant served in Vietnam during the war. While serving, his hearing was damaged and he also began to suffer from PTSD. Claimant testified that his hearing has gotten worse while in the custody of CDOC. He says he has never had a hearing test while at CDOC. He says he has requested a hearing test "many times." Sometimes he can't hear at all while sometimes he can hear but doesn't understand. Sometimes he can hear announcements but other times he cannot. He says his left ear is worse than the right. He believes his eardrums are scarred.

5. Claimant testified that he has only had his vision tested twice while in CDOC custody,

once in 1998 and again in 2004. He has been issued glasses but cannot read small print. He watches television but it is blurry.

6. Claimant testified that his mobility disability is caused by a large hernia. He had hernia surgery in 2003 or 2004. Following his surgery, his groin and scrotum swelled up and he had to use ice to bring the swelling down. In 2006 he was diagnosed with bladder cancer and had surgery which involved removal of a testicle. He suffered the same post-op complications. In 2007 he had another bladder surgery, this time without complications. If he moves wrong or stands too long he gets sharp pains in his groin. Because of these pains he has to stop and rest when he walks. He believes this pain is caused by the surgical mesh used in his hernia repair.

7. A review of the medical records shows that Claimant had vision exams in 1991, 1997, and in 2003. In each of these exams his corrected vision was 20/20 in both eyes. His uncorrected vision in 2003 was 20/30 in one eye and 20/40 in the other.

8. Claimant has had one formal hearing exam while in CDOC custody in 1991. His hearing was normal at that time. Since then, he has requested hearing exams and has talked with medical staff. In January 2007 he was examined by Dr. Aasen. The doctor testified that Claimant could hear "soft spoken speech" even though he has some scarring on his eardrums. At one time, a Physician's Assistant examined Claimant for broken ear drums but found they were intact. Inmate Thomas Valdez testified that Claimant doesn't hear very well and that he has to talk loud to him. Inmate Reggie Porter testified that Claimant's hearing has gotten worse since he has known him and that in early 2007 Claimant didn't seem to hear sirens going off. Claimant has submitted kites requesting hearing exams but has been refused. Dr. Neufeld testified that the lack of testing indicates the lack of need for testing. He said that medical personnel will talk to Claimant and conclude that he doesn't need testing.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1).

"Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. Claimant has failed in his burden of proof to show that he is vision disabled. The testing demonstrates that his vision is very good and is corrected to 20/20. Claimant has also failed in his burden of proof to show that he is hearing disabled. While his testimony and the testimony of the two inmates was that he had trouble hearing, the testimony of Dr. Aasen is more persuasive when he testified that Claimant could hear soft spoken speech. That is supported by the formal hearing test in 1991 which showed no hearing loss.

7. The requirement for proving a permanent mobility disability is listed in the Montez remedial plan. Claimant must show a permanent mobility impairment and that the impairment significantly limits a major life activity. The evidence presented by Claimant does not meet these criteria. Claimant has hernia and bladder problems for which he has had surgery. The reason he has to rest, according to his testimony, is because of pain he believes is caused by surgical mesh in his groin. He has no permanent mobility impairment that substantially limits walking. Without this, he does not meet the criteria for a permanent mobility disability.

8. The finding of a permanent disability, as defined in the Montez Remedial Plan is a necessary requirement for any recovery. Without this finding, it is not necessary to consider the

5

other questions. Claimant has failed to establish that he is permanently disabled in any way. Consequently, he is not able to recover in this action.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 7, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 7th day of December, 2007.

BY THE COURT:

Richard C. Davidson,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ___ day of December, 2007 to the following:

Mr. Raymond Arthur Price
#66072
BVCC
P.O. Box 2017
Buena Vista, CO 80211

Mr. James Quinn
Mr. Jess Dance
Office of the Attorney General
1525 Sherman Street
Denver, CO 80203