IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

_____

Claim Number: 03-145
Category: III
Claimant: Edward Wetherbee, #58059
Address of Claimant: FMCC, P.O. Box 200, Canon City, CO 81215-0200

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Claimant Edward Wetherbee. This Hearing was held at FMCC on September 10, 2007 before Richard C. Davidson, Special Master. Mr. Wetherbee appeared Pro Se. Defendants were represented by Robert Huss, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Edward Wetherbee submitted a claim which was assigned claim number 02-814. After review, the claim was elevated and assigned claim number 03-145. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Wetherbee first entered CDOC custody in 1988. Claimant has been housed at AVCF, in Minnesota, at BCCF, LCF and FMCC.

4. Prior to 1994, Claimant began to develop pain in his right hip. An x-ray taken in June 1994 showed advanced degeneration in the right hip joint with bone on bone contact in the weight bearing portion. He was diagnosed with "Symptomatic DJD of the hip." A notation in the "Recommendations" section of the June 29, 1994 report says that if he stays in prison to the year 2000, he will likely need surgery before that time. He was issued a cane to assist his mobility. His condition continued to deteriorate and by 2002 Claimant was housed in a handicap cell. On May 27, 2003, Dr. Pohlman, an orthopedic specialist, recommended that Claimant have a hip replacement. Claimant had a one inch leg length discrepancy because of the deteriorating hip joint so it was also recommended that he have a shoe built up with a one inch heel lift and a one half inch sole lift. This was provided. Claimant was told that CDOC could not afford a hip replacement for him. He has not received the surgery.

5. Claimant has other medical problems including G.I., prostate and sinus problems. He

3

testified that he needs diverticulitis treatment and wants that before hip replacement surgery. He suffers from scoliosis of his spine that he says was caused by the leg length discrepancy. Claimant is able to walk with a cane but does so only with pain. He walks slowly and painfully for very short distances. He can climb stairs if he climbs one stair at a time. He testified that he is in pain all the time. He has trouble lying on his side and must sleep on his back or stomach.

6. Claimant was given a CDOC disability screening on November 1, 2005 and was found to be mobility disabled. He has been given accommodations for many years including a cane, a built up shoe, lower bunk, lower tier restrictions, a handicap cell and handrails around the toilet. He is allowed to sit for counts. His cane has been replaced and his shoes have been replaced when needed. Interestingly, he has not formally requested either hip replacement or diverticulitis surgery. He says the lack of medical treatment has caused him to deteriorate.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Wetherbee is a mobility disabled person under the terms of the remedial plan. It is apparent that DOC also considers him disabled since he was screened and found to be mobility disabled. He has been provided special boots with built up soles in order to correct his leg length discrepancy. However even with special shoes and a cane he is still unable to walk normally. He cannot climb stairs without taking them one stair at a time. He cannot walk without pain. He cannot sleep on his side without pain. He must walk slowly. These limitations are sufficient to demonstrate a substantial limitation on the major life activities of walking and sleeping.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. Of course, the key issue is whether Claimant was discriminated against by DOC because of his mobility disability. The evidence shows that Claimant has received accommodations for his mobility disability. He has been provided with special built up shoes and these have been replaced when necessary. He has been given a cane. He has been housed in a handicap cell. The only accommodation related to his mobility disability he has not been given is hip replacement surgery and he has not formally requested that. It is the Claimant's burden to show that he has been discriminated against by CDOC. He has not done this. Therefore, the Special Master concludes that he has not been the subject of discrimination by CDOC because of his disability. It must also be noted that the alleged discrimination he complains about is the denial of a medical procedure. Complaints of inadequate medical care are generally not cognizable in a Montez claim as indicated in paragraph 5 above.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 17, 2008** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

SIGNED this 28th day of December, 2007.

        BY THE COURT:

        /s/ Richard C. Davidson
        _____
        Richard C. Davidson
        Special Master