IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

_____

Claim Number: 03-292
Category: III
Claimant: Ulysses S. Grant
Address of Claimant: 2420 Franklin Street, Denver, CO 80205

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Claimant Ulysses S. Grant. This hearing was held at the offices of Legal Resolution Center in the Dominion Plaza Building, 600 17th Street, Suite 2800- South, Denver, CO 80202 on December 17, 2007 before Richard C. Davidson, Special Master. Mr. Grant appeared pro se. Defendants were represented by Jess Dance, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Ulysses S. Grant submitted a claim which was assigned claim number 02-245. After review the claim was elevated and assigned claim number 03-292. The claim is premised on alleged diabetic and vision disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Grant first entered CDOC custody in 1995. He was briefly on parole in 2001 but then came back into CDOC custody until 2004. Claimant was housed at FCF, BVCF, AVCF, CTCF, FLCF and FCF.

4. Claimant was injured on February 20, 2002 when he fell on stairs at CTCF and hit his head. He claims that this injury caused his vision to deteriorate in the left eye. He testified that the vision on the left is uncorrectable but that he can see with his right eye. The medical records show that on October 20, 1995 Claimant's vision was corrected to 20/20. By 2001, Claimant's vision had deteriorated to corrected vision of 20/25 on the right and 20/50 on the left. The records from February 20, 2002 show that Claimant had fallen and bumped his head. The exam was basically normal with the exception of two small bumps on the top of his head and discomfort on both sides of the face. On May 27, 2002 his vision was checked and found to have deteriorated to 20/50 on the right and 20/100 on the left. He was referred for a visual field exam which revealed constricted visual fields in both eyes. No definitive reason for the loss was identified although some scarring was found in the eyes of unknown origin. On January 8, 2003, Claimant's eyes were checked again and his vision had improved. His corrected vision was 20/20 on the right and 20/40 on the left.

5. When Claimant entered CDOC custody, he had several medical problems including "low grade early diabetes" and cirrhosis of the liver. While at DRDC his medications were changed and his diabetes went out of control. While he believed he should be on insulin, he says medical

disagreed. The records show that his medications were adjusted several times and eventually he was put on a sliding scale for insulin. His blood sugars fluctuated and his medications were adjusted to bring his diabetes under control. Claimant testified that CDOC was not always diligent in giving him his medications. The records show that on infrequent occasions he would not get his medications because he had not put in a kite. The records also show that Claimant was not always compliant with his diet to take care of his diabetes. Claimant testified that he has diabetic neuropathy. The medical records confirm this. The records also show that Claimant does not have any kidney or eye problems caused by his diabetes.

6. Claimant is primarily complaining about the quality of medical care he has received from CDOC. He testified that he believes better care could have prevented his deteriorating vision and the problems he has from his diabetes.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy

alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Ulysses S. Grant has failed to prove that he is a disabled person and thus is not a member of the class. Claimant has an impairment to his vision and is impaired by having diabetes. However, this is not enough to bring him within the class. He must prove that these impairments are severe enough that they substantially limit one or more of his major life activities. This Claimant has failed to do. His vision impairment is not severe enough to qualify pursuant to the *Montez* criteria. Claimant is able to see and to function despite his vision impairment. Indeed, his vision impairment is no more severe than many people in our society.

7. As to Claimant's diabetes, he does suffer from diabetic neuropathy. However, no evidence has been submitted to show that this substantially limits a major life activity. He is not suffering from any organ damage and his eyes are not affected by his diabetes. Claimant is concerned with the quality of the medical care he has received from CDOC. However, this claim is not cognizable under *Montez* as is indicated in paragraph 5 above.

8. Since Claimant has failed to prove that he is a member of the class, it is not necessary to proceed with further analysis of his claims.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendants and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 21, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 14th day of January, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson
Special Master