IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

 Plaintiffs,

-vs.-

BILL OWENS, et al.,

 Defendants.

---

Claim Number: 03-315
Category: III
Claimant: James G. Hall, #53639
Address of Claimant: KCCC, P.O. 309, Burlington, CO 80807

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant James G. Hall. A hearing was held at the Kit Carson Correctional Center (KCCC) in Burlington, Colorado on October 12, 2007 before Richard C. Davidson, Special Master. Mr. Hall appeared *pro se.* Defendants were represented by Chris Alber, Esq.

Claimant presented his own testimony in support of his claim. Defendants presented the testimony of Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A through Cz, and all were admitted.

The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.      General inconvenience or nominal damages;
> II.     Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.    Damages due to severe physical injuries; and
> V.     Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.    DEFINITIONS
> A.  COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B.  QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C.  PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant submitted a claim on June 18, 2004 which was assigned claim number 02-527. The claim alleged that Claimant was diabetic.

2. Claimant's claim was reassigned to Category III pursuant to the Remedial Plan as set forth above. A new claim number of 03-315 was assigned to the claim.

3. Claimant first entered into DOC custody on September 3, 1985. He was discharged from that sentence on October 15, 1985. Claimant returned to DOC custody on August 9, 1988. He remained in DOC custody until he was placed into a community program on December 11, 1992. He remained in community programs or on parole until June 14, 1994. Claimant discharged that sentence on October 24, 1994. Claimant then returned to DOC custody on August 13, 1997. He has been in DOC since that date.

4. Since returning to DOC custody in August, 1997, Claimant has been at various facilities, including the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado and his present facility. Claimant has been released to community placements and parole. Those did not work out, and Claimant returned to custody.

5. Claimant only checked the box for diabetes on his claim form. He stated that "I have

diabetes. Since 1991, the biggest thing in controlling diabetes is diet and medication." In response to the question concerning discrimination, Claimant further stated that "[n]ot have a ADA diet, taking away diabetic medication that help controls the diabetes and the unexperienced medical staff taking care of us."

6. Claimant was diagnosed with diabetes in 1991. He was out of DOC custody when the diagnosis was made. He had one period when he was in a diabetic coma and was taken to Swedish Hospital in Englewood, Colorado. He was diagnosed as a Type I diabetic and began receiving insulin. DOC first made its own independent diagnosis in 1994.

7. Claimant has no diabetic retinopathy. He did not have any kidney problems of which he was aware on or before August 27, 2003. The evidence reflects some mild kidney problems at this time.

8. Claimant contracted Hepatitis C in 2000. Claimant maintains that this condition was the result of negligence by a nurse while he was at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado.

9. Claimant is able to exercise each week. He runs the stairs and does other exercises.

10. Claimant has had access to various programs and services during his custody with DOC.

### III.  CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and ( c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class.  Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(I).

3.  The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A).  Additionally, the Remedial Plan

limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III( c).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. There was and is no dispute that Claimant was diabetic on and before August 27, 2003. The Special Master finds, though, that Claimant's diabetes did not affect his activities of daily life during the period of time leading up to August 27, 2003. Claimant is not a class member as a diabetic.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant's concerns relate to the quality of medical care he received in DOC custody, that is beyond the jurisdiction of the Special Master. Claimant has received medical care over the years.

8. Under the Settlement Agreement, Claimant must establish that he had a recognized disability on or before August 27, 2003. Claimant must also establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not proven that he was the victim of discrimination on or before that date.

Under the ADA and Rehabilitation Act, any act of discrimination must be related to a recognized or perceived disability. An example would be the placement of an inmate who is in a wheelchair into a cell on a third tier with no access to an elevator. There is no evidence that Claimant was denied any program or service as the result of his diabetic condition. The evidence reflects that he received medical care and other services.

Claimant's main complaint dealt with diabetic diets that he received over the years. There was insufficient evidence to prove that the diets provided to Claimant were insufficient for his condition. More importantly, the evidence reflects that diabetic diets were made available to Claimant. There was no evidence that Claimant was the victim of discrimination under the ADA and Rehabilitation Act due to having diabetes.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, that the claims of Claimant James G. Hall are denied and dismissed.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 7, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 11th day of January, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson
Special Master