IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

_____

Claim Number: 03-340
Category: III
Claimant: Javane A. Gadlin, #64936
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Claimant Javane A. Gadlin. This hearing was held at CTCF on February 27, 2007 before Richard C. Davidson, Special Master. Mr. Gadlin appeared pro se. Defendants were represented by Celia Randolph, Esq. Claimant was called, sworn and testified. Orville Neufeld, D.O. testified by affidavit. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Javane Gadlin submitted a claim which was assigned claim number 02-631. After review, the claim was elevated and assigned claim number 03-334. The claim is premised on alleged permanent mobility, hearing and vision disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Gadlin first entered CDOC custody in 1990. He was paroled in 1993 but re-incarcerated in 1997. Claimant has been housed at CTCF, LCF and CCF.

4. Claimant says he mobility impaired because his feet hurt all the time. On occasion, his right foot swells up and hurts. As a result, he is unable to walk more than 10 or 15 minutes at a time. While he can walk and climb stairs, he always has pain. The medical records show that Claimant suffers from flat feet and from a congenital short fourth metatarsal in his right foot. To assist Claimant, he was issued tennis shoes in 1992 and 1993. When he returned to CDOC custody, he was allowed to wear tennis shoes in the facility but was required to wear state issued boots outside. He was issued softer "Rhino" boots. In 1999 he refused custom orthotics which were offered to him. Also in 1999, a podiatrist, Dr. Kreiger stated "there is currently no visible medical reason for him not being able to wear the state boots." In 2005, Dr. Aasen performed a disability screening on Claimant. Dr. Aasen found that Claimant was able to walk and climb stairs and was not mobility disabled.

5. In 2004, Claimant was diagnosed as suffering from Systemic Lupus Erythematosus or

3

"Lupus." In 2005, he was found to be able to work. In 2006, Claimant began to use a wheelchair either as a result of his Lupus or because of his medications.

6. Claimant says that he suffers from hearing problems that "come and go." These problems include tinnitus and difficulty understanding speech. He was examined in 2002 as part of a physical exam and was found to have normal hearing in both ears. The disability screening in 2005 did not show any severe limitations on Claimant's hearing.

7. Claimant also says that he has vision problems. He testified that he sometimes loses vision in one eye and sometimes in both. He believes he has glaucoma and has received eye drops for this. He says he has trouble reading. When given an eye exam in 2002, his corrected vision was 20/30 in both eyes. In 2003, his corrected vision was 20/20 on the right and 20/50 on the left. In June, 2004, his corrected vision was 20/50 on the left and 20/25 on the right. While Dr. Aasen found some compromise to Claimant's eyes in 2005 because of his Lupus, no vision disability was found.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision

4

impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Gadlin has failed to prove that he is disabled under the terms of the remedial plan. To be successful in this action, Claimant must prove that he was mobility, hearing or vision disabled prior to the date of the remedial plan of August 27, 2003. Claimant has not proven that he has ever been disabled because of hearing or vision problems. While he has shown that he requires the use of a wheelchair as of June, 2006, this is well outside the time limit. In addition, it is unclear whether he needs a wheelchair because of his Lupus or for some other reason. The Montez Remedial Plan does not include disability because of Lupus unless it is shown to cause disability of one of the four types. Consequently, this falls outside the Montez plan.

7. In order to prove a disability, it is also necessary to prove that any impairment substantially limits Claimant's ability to participate in one or more major life activities. No such limitation has been shown. Claimant's case is premised upon some symptoms that come and go rather than upon a permanent impairment that interferes with major life activities. Thus, Claimant has failed to prove that he is a member of the class.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 14, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 14th day of January, 2008.

BY THE COURT:

/s/ Richard C. Davidson

---

Richard C. Davidson
Special Master