IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 05-015
Category V
Claimant: Sara Gonzales (as Mother and Heir of Cruz Gonzales, #44412)
Address of Claimant: 415 Fruit Street, N.E., #32, Albuquerque, NM 87102

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 13, 2007. This hearing was held at the office of Legal Resolution Center in Denver, Colorado. Present were the following: Jess Dance, attorney for Defendants, and Dr. Orville Neufeld, D.O.

Notice of the hearing date, time and location had been provided to Sara Gonzales. She did not appear for the hearing. No request was received from her for any appearance by telephone nor were any additional written documents received from her. Defendants requested the opportunity to present evidence, and that request was granted. Testimony was presented from Dr. Neufeld. Defendants offered into evidence Exhibits A through K. All were admitted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Cruz Gonzales was alive when he filed his own claim on April 1, 2004. For purposes of this Order, Cruz Gonzales will be referred to as the Claimant. His mother, Sara Gonzales, assumed the claim as his heir on his death.

Claimant came into DOC custody initially on February 22, 1978. He was placed initially at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Over the intervening years, Claimant was placed into a number of different facilities. On March 15, 1997, Claimant returned to CTCF. He was transferred to the Kit Carson Correctional Center (KCCC) in Burlington, Colorado on October 18, 2003. He was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on May 25, 2004. He was transferred back to CTCF for placement at the infirmary on March 4, 2005. Claimant passed away on March 19, 2005.

Claimant was in DOC custody at KCCC when he filed his claim on April 1, 2004. In his initial claim form, Claimant checked the boxes for hearing impairment and mobility impairment. Claimant stated, in part, in his claim form:

> Back surgery done was never completed rendering my right leg numb after standing for 3 minutes. Hepatitis C. Remains untreated after five biopsies attempts. Inoperable hernia. Due to complications from Hepatitis C rendering me confined to wheelchair and impairing my mobility.
> Loss of hearing - DOC personnel in Texas broke right side of jaw and rammed upper part of jaw which is closing the ear canal and impairs the hearing.
> Also the discovery of cysts in the chest area behind the aurella (sic) also inoperable due to Hepatitis complication (excessive bleeding).

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> After first back surgery (in L-4 vertebrae) I asked Dr. Lilly neurosurgeon contracted by DOC if he would complete the surgery and he never got back to me. DOC then closed the file on the matter with no response nor recourse in the matter.
> Most injuries or ailments I had and already at CTCF and knowing this or because of it, I was moved from facility by case manager John Ghan. I believe I was moved due to excessive medical needs and costs. I asked for treatment years ago before Hep C turned to cirrhosis. And have been continually denied.

Claimant filed two supplemental forms. In his supplemental form for hearing impairment, he noted the injury that occurred while in Texas. He stated, in part:

> Echos already loud noises seem louder in good ear and many times conversations from right are inaudible. I have missed fire drills when I sleep on good side cause I can't make out actual sounds.

In his supplemental form for mobility impairment, Claimant stated, in part, as follows:

> Hernia and Back. The hernia causes my intestines to bulge out and fall into scrotum. I can't walk and hold them in my hands. Back was operated on not completed. My right leg gets numb after standing for three minutes.

Claimant sent several letters to the Special Masters over the months preceding his death. He indicated that his hernia was becoming worse and made it impossible for him to move. Shortly before his death, Claimant sent a letter indicating that he was on Interferon, but was concerned about the dosage that he was receiving at FCF.

After the death of Claimant, the Special Master notified Sara Gonzales of the claim. Ms. Gonzales was given the opportunity to continue on with the claim and request transfer to Category V, if she was alleging that Claimant's death was the result of discriminatory conduct by DOC and its staff. Ms. Gonzales did file a claim, but only as to mobility impairment. She stated, in part, as follows:

> Hepatitis C diagnosed in 1994, first treatment of Interferon in 2004. Dosage given was too much, almost caused overdose, lack of treatment for so many years resulted in liver failure, resulting in death. Lumps in both breasts caused extreme pain for many years. Hernia never treated, caused extreme pain, unable to walk, most of the time did not have wheelchair; kept confined to cell. Never received treatment for lumps in breasts. When a biopsy was finally attempted 3 or 4 attempts made, and finally tissue was pulled from lung instead of liver.

Ms. Gonzales also described how she believed her son was the victim of discrimination.

> As stated above, my son's cries went unheard, and many times when he cried loud enough he would be moved to another facility where he could begin the process again "asking for help."

No additional medical records were submitted to the Special Master.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. Dr. Neufeld had reviewed the medical records of Claimant. According to Dr. Neufeld, nothing was contained in the medical records relating to any hearing impairment. Claimant did have a history of back problems and had a hernia that was extensive. Surgery on the hernia was out of the question because of Claimant's advanced Hepatitis C. The hernia did limit Claimant's mobility.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately.

Under the ADA and Rehabilitation Act, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

*Hearing Impairment*: There has been insufficient evidence presented to prove that Claimant had any hearing impairment. There are no medical records relating to any hearing loss. In addition,

5

the documentation submitted by Claimant before his death indicated that he was able to function in his daily activities.

**Mobility**: Evidence presented by both sides reflects that Claimant became mobility impaired early in this decade due to his hernia and other problems. The Special Master will find that Claimant was mobility impaired on August 23, 2003. Claimant became a member of the class on that date.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The documents submitted by both Claimant and Sara Gonzales question the medical care provided to Claimant while in DOC custody. The evidence presented by both sides reflects that Claimant did receive medical care while in DOC custody. Claimant questioned the effectiveness of that care while he was alive, and Ms. Gonzales believes he was deprived of care in his last few years of custody.

The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). As noted, there was medical care provided to Claimant while he was alive. Much of that care related to his Hepatitis C and associated problems, including cirrhosis of the liver. Judgment calls were made concerning his medical care.

The *Fitzgerald* decision precludes that Special Master from considering the quality of medical care that Claimant received while in DOC custody. Ms. Gonzales pursue a separate lawsuit under the Eighth Amendment concerning her son's care. The *Fitzgerald* decision limits ADA cases to consideration of whether or not discrimination took place due to an impairment. If Claimant had received *no* medical care for a condition, then the ADA and Rehabilitation Act would apply. The evidence reflects that he did receive care for each condition that has been discussed.

There is no evidence that Claimant was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. The issues relating to the quality of medical care will have to be handled through a separate lawsuit.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Cruz Gonzales and the subsequent claim of his mother, Sara Gonzales, are denied for the reasons noted in this Order; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 7, 2008.**

SIGNED this 9th day of January, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

───────────────────────────────
Richard M. Borchers
Special Master