IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-909
Category II
Claimant: Nicholas Thomas Ames, #90769
Address of Claimant: c/o Richard Riley, 3720 Sinton Road, #110, Colorado Springs, CO 80907

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER comes before the Special Master on the claim of Nicholas Thomas Ames (Claimant). Claimant was incarcerated in the Colorado Department of Corrections (DOC) when he filed his claim. He has been released on parole. It appears, based upon Defendants' motion, that Claimant has absconded from parole supervision. A warrant is outstanding for his arrest.

The Special Master has reviewed the claim and response by Defendants. A motion to dismiss has now been filed by Defendants based upon Claimant absconding from parole supervision. The motion will be denied and the claim resolved on its merits.

Claimant was granted the opportunity to file a reply to the response of Defendants. Since he has fled from parole supervision, no additional time will be granted to him to file a reply to the response of Defendants.

This is a Category II claim. All Category II claims are to be resolved on the documents submitted by the parties. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans

with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant first came into DOC custody on November 27, 1996. He was placed at the Denver Reception and Diagnostic Center (DRDC). He was placed then at the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. He remained there until transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. He was placed on parole on February 18, 1998 and discharged that sentence on July 22, 1999.

Claimant returned to DOC custody on July 16, 2004. He was placed at DRDC and then transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was placed into a community placement on March 2, 2005 and then placed on parole. His parole was revoked, and he was placed back at BVCF. He remained at BVCF until placed on parole on March 1, 2007. Based upon the motion filed by Defendants, it appears that Claimant will be back in custody due to his absconding from parole supervision.

In the initial claim form, Claimant checked the box for mobility impaired and hearing. Claimant stated, in part, as follows in his initial claim form.

> (1) In 6-94, I broke 2 bones in 6 places. I have three screws holding it together. In 97 I came to BVCF and saw some specialist about my foot and they made it possible for me to get orthopedic shoes at DCF. If I don't have good foot wear and anti-inflamatories I start having a bad limp which makes me adjust my walk and then it affects my back.
>
> (2) My hearing problem is not documented and I don't know how to address this disability that I have. So whatever information or direction you can assist me with it would be appreciated.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> They aren't giving me access to anti-inflamatories and proper orthopedic shoes which other problems and back problems take place.

Claimant was sent forms to complete and return. Claimant never returned the supplemental forms. He never submitted any medical records or other documents in support of his claim.

Defendants' response was received on July 31, 2007. Attached to that response are several pages of Claimant's medical records. The medical records reflect that Claimant was given anti-inflammatory medications and orthopedic shoes before he was released on parole in 1998. Defendants also dispute that he was ever the victim of discrimination at any point in time.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately. Claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to determine if an individual meets the requirements of the ADA and Rehabilitation Act, there must be an analysis using a three-part test. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184(2002). First, an individual must show the presence of a physical or mental impairment. Second, the individual must show that the impairment affects a "major life activity." *Id*. Third, the individual must show that the impairment "substantially limits" that major life activity. *Id.* Under the Remedial Plan, there is a further limitation to the four listed conditions (hearing, vision, mobility, and diabetes). Each claimed disability must be examined separately.

**Hearing Impairment:** Claimant acknowledges that there is no notation anywhere in his

medical records of any hearing loss. He has provided no evidence to substantiate that he has a hearing impairment. Claimant has failed to prove that he was disabled due to a hearing impairment on or before August 27, 2003.

4

**Mobility Impairment:** Defendants correctly note that Claimant must show that he was mobility impaired on or before August 27, 2003, the date the Remedial Plan was approved. Claimant has provided little information concerning his incarceration that ended in 1998. From the documents submitted by Defendants, Claimant did receive medication and appropriate footwear.

More importantly, there is no evidence that Claimant had any problems carrying out his activities of daily life prior to his release on parole in 1998. Claimant has failed to prove that he was mobility impaired on or before August 27, 2003. Therefore, the Special Master has no jurisdiction over anything that may have occurred after that date.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that has been presented that Claimant was precluded from receiving services or participating in programs for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. That discrimination must be based upon disparate treatment due to his claimed impairments.

The evidence reflects that Claimant received medical care while in DOC custody up to 1998 and upon his return in 2004. He has expressed concern about that medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has failed to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before his release on parole in 1998. Further, there is no evidence that he was discriminated against on the basis of his claimed disabilities after his return to DOC custody in 2004.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Nicholas Thomas Ames is dismissed, as Claimant has failed to prove each of the four questions set forth; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 12, 2008.**

SIGNED this 18th day of January, 2008.

BY THE COURT:

_____
Richard M. Borchers
Special Master