IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs.-

BILL OWENS, et al.,

   Defendants.

_____

Claim Number: 03-386
Category: III
Claimant: Theodore Vialpando, #62175
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Claimant Theodore Vialpando. The hearing was held at AVCF on November 26, 2007 before Richard C. Davidson, Special Master. Mr. Vialpando appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant, inmate Louis Medina, Supervisor Pablo Encinias, Lt. David Romero and Orville Neufeld, D.O. were called, sworn and testified. Claimant waived testimony from Henry Ybarra. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Theodore Vialpando submitted a claim which was assigned claim number 02-216. After review, the claim was elevated and assigned claim number 03-386. The claim is premised on alleged permanent mobility, vision, hearing and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Vialpando first entered CDOC custody in 1990. Claimant has been housed at CTCF, SMCF, LCF, CCF, CSP, and AVCF.

4. Claimant claims to have a mobility disability. He does not relate this to any injury, "it just started" when he came into custody. He gets pain up and down the back and in both knees. It limits his walking "a little." He can walk to chow, climb stairs and work. He lives on the third tier and is under no restrictions. He has had x-rays taken which show minimal degenerative disc disease. He admitted that his mobility problems do not interfere with his ADL's.

5. Claimant has state issued glasses to assist his vision. With his glasses, his vision is corrected to 20/20. He has some "early background diabetic retinopathy" according to Dr. Neufeld. He has been diagnosed with glaucoma and uses eye drops. He does not claim any interference with his activities because of his vision problems.

6. Claimant says he has a loss of hearing although it has not been documented with an

3

audiogram. He says he uses close captioning on his television. Because of his hearing loss he has trouble understanding people and announcements. He admitted that his hearing loss does not interfere with his ADL's. He wants an audiometric exam but this has been denied. Dr. Neufeld testified that he probably has some hearing discrimination loss.

7. Claimant suffers from diabetes which was diagnosed in 1988. For several years he only took oral medications but was then put on insulin. He has trouble controlling his blood sugars. He blames this on the diet he is provided and on improper medications. However, he admits he has not been compliant. The medical records show that he refuses finger sticks in the morning and sometimes refuses to take his insulin.. He buys a lot of candy from the canteen which contributes to his high sugar levels. Claimant misses a lot of meals, one report stating that he missed 40 out of 48 meals. As a result of his non-compliance, his A1c levels fluctuate from a high of 15.6 to a low of 7.8. However, the majority of his A1c readings are in the 11-13 range, well above the desired level.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision

4

impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant has not shown that he is mobility, vision, or hearing disabled. While he does have some impairments, he has not shown that any of these impairments substantially interfere with any major life activities. He has admitted that his mobility impairment and hearing impairment do not interfere with his ADL's. His vision impairment is not severe enough to cause him any problems. CDOC has provided vision exams and has provided medications to treat his vision problems.

7. Claimant suffers from diabetes. The evidence shows that the diabetes is largely out of control due to the non-compliance of Claimant. However, Claimant has remarkably little damage from his disease. He has some early diabetic retinopathy and some early neuropathy. There is no evidence that he is suffering from any other organ damage. While dealing with diabetes is a great inconvenience, no evidence has been introduced to show that it substantially interferes with any major life activities. Consequently, the Special Master is forced to conclude that Claimant is not suffering from any disability caused by his diabetes.

8. Claimant has failed to prove that any impairments he has rise to the level of a disability as described in the *Montez* remedial plan. Consequently, Claimant has failed to show that he is a member of the *Montez* class. Therefore he is not entitled to recover pursuant to this action.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 14, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 16th day of January, 2008.

                                BY THE COURT:

                                /s/ Richard C. Davidson
                                _____
                                Richard C. Davidson
                                Special Master