IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 05-016
Category: V
Claimant: Ruth Perkins Davis (Heir of Timothy Alton Russell, Deceased, #85837)
Address of Claimant: C/O Judith Funderburg, Esq., 600 17th Street, Suite 2800-South,
    Denver, CO 80202

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Ruth Perkins Davis, heir to Timothy Alton Davis, deceased. This hearing was held at the offices of Legal Resolution Center at the Dominion Plaza Building, 600 17th Street, Suite 2800-South, Denver, Colorado on December 3, 2007 before Richard C. Davidson, Special Master. Ms. Davis was present together with counsel, Judith Funderburg, Esq. Defendants were represented by Jennifer Huss, Esq. Orville Neufeld, D.O. was called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals,

Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the

2

criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Timothy Alton Russell submitted a claim which was assigned claim number 02-022. After his death this matter was elevated to Category V and assigned claim number 05-016. The claim is premised on the death of Mr. Russell. Ruth Perkins Davis, heir to Mr. Russell, is now the Claimant. However, in this Final Order, Mr. Russell shall be referred to as the Claimant.

2. This claim was assigned to Category V pursuant to the Remedial Plan as set forth above.

3. Claimant Russell first entered CDOC custody in 1995. Claimant was housed at CCF, CSP, and SCCF. Claimant Russell died on October 18, 2005 while at CSP.

4. Claimant Russell suffered from back pain while he was incarcerated. His back pain started in 1985, prior to his incarceration, as a result of a beating with a tree branch. There is also mention of his having been stabbed in 1990. CDOC noted his back pain and responded with treatment. He was given medications, a heating pad, and a back support. Diagnostic x-rays were done on multiple occasions which failed to show a basis for his back pain. The x-rays were normal. At one time, his Parafon Forte was discontinued because he was sharing it with other inmates. He complained of back pain but worked out on a regular basis. Numerous notations in the records tell of his moving around and ambulating without difficulty.

5. The medical records show that Claimant was not cooperative with medical on many occasions. He suffered from mental problems that made him a difficult inmate. The records also

3

show that Claimant was becoming suicidal in 2005 and was suffering from delusional thinking. The Ambulatory Health Record dated April 14, 2005 states "recently 2 significant losses: aunt died who was like a mother; and a sister died within 10 days . . ." This record mentions that Claimant was suicidal. The Ambulatory Health Record dated August 3, 2005 states "PT understands the risks and benefits of informing and not informing staff of suicidal thoughts." On September 8, 2005 Claimant was having problems with delusional thinking. Despite being treated with medications for his mental problems, Claimant committed suicide on October 18, 2005.

6. The records show that CDOC medical staff was actively treating and counseling with Claimant prior to his death.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy

alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Russell was a member of the *Montez* class by reason of his death while in CDOC custody. However, the cause of his death is problematic. In order to recover, it must be proven that his death was caused by the actions or inactions of CDOC. The records clearly show that CDOC was well aware of Claimant's mental and medical problems and was actively treating them. Claimant committed suicide. There is simply no evidence to prove that CDOC, in any way, contributed to Claimant's death. Without this evidence, Ms. Davis cannot recover.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendants and against Claimant Ruth Perkins Davis dismissing her claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before April 14, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 16th day of January, 2008.

> BY THE COURT:
>
> /s/ Richard C. Davidson
> _____
> Richard C. Davidson
> Special Master