IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 02-912
Category II
Claimant: Cecelia V. Canty, #44319
Address of Claimant: 36 Oakland Street, Aurora, Colorado 80012

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Cecelia V. Canty (Claimant). Claimant was previously in the custody of the Colorado Department of Corrections (DOC). She has discharged her sentence and is living in Aurora, Colorado.

This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Claimant has filed a claim form and supplemental form for mobility impairment. Defendants have filed a response to the claim. Claimant was granted up to and including January 14, 2008 in which to file a reply to the response of Defendants. Despite being granted additional time in which to file a reply, Claimant has filed nothing further.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC in June, 2001. She was placed initially at the Denver Reception and Diagnostic Center (DRDC). She then was placed at the Denver Women's Correctional Facility (DWCF). Claimant discharged her sentence and has been released.

Claimant filed a claim form in September, 2007. She checked only the box for mobility impairment. In her claim form, Claimant stated, in part, as follows:

>Limited use of arms and hands (carpal tunnel). Hands & arms will go numb as well as fingers. Unable to comb hair if arms are above chest height for too long, can't carry food trays can not perform job duties in a timely manner for having to stop and rub shake and wait for feelings to come back into hands and arms. Sciatica causes severe pain in right leg and hip as well as lower back unable to walk long distances without having to stop.

In response to the question concern discrimination by DOC and its staff, Claimant stated as follows:

>Judy Saiz would not look into my medical files at all in order to know what was written and ordered from previous medical staff. She gave me medical release forms to sign to get medical records from outside hospitals because she did not want

3

to look in the DOC medical files. Then my medical files were conveniently lost and I have been transferred to DWCF and I have not seen a medical staff member here. I was told I would be seen by Nancy approx. 7/27/07 as of 9/4/07 I still have not seen anyone.

Claimant filed a supplemental form for mobility impairment. Claimant stated, in part, as follows:

> Hands & forearms numb, unable to comb hair without numbness. Back and right leg has pain from sciatica nerve.
>
> Was unable to carry food tray, comb hair without help. Walking up & down steps was difficult.
>
> Asked for braces or splits for arms, requested bottom bunk restrictions & bottom tier - was not given either.

Claimant was granted up to and including September 10, 2007 in which to file a reply to the response of Defendants. Claimant has filed nothing further in support of her claim.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that she was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** There must be a showing under the ADA and Rehabilitation Act that a physical impairment substantially limited a major life activity. *42 U.S.C. 12102(2); 29 U.S.C. 794(d)*. In order to meet the requirements of the statute, there must be something more proven than simply having pain or some inconvenience in doing activities of daily life.

Claimant has alleged that she has carpal tunnel in both her wrists. Medical records submitted by Defendants do not reflect such a condition. Claimant has not proven that she had such a condition and that it affected activities of daily life while in DOC custody. Claimant's own allegations do not reflect that she was unable to carry on her life activities, only that there were some problems.

Claimant also alleged sciatica in her lower back, right hip, and right leg. No medical records reflect that this condition was ever diagnosed. There was no evidence presented by Claimant that this condition limited substantially her ability to carry on activities of daily life.

Based upon the evidence and documents presented by both sides, the Claimant has failed to

4

prove that she had a mobility disability while in DOC custody. No evidence was presented by either side that reflected a diagnosis of either carpal tunnel or sciatica.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented by either side that Claimant was disqualified while in DOC custody from receiving programs and services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant carries the burden to prove that she was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met that burden.

When asked in her claim form concerning discrimination by DOC and its staff, Claimant stated as follows:

> Judy Saiz would not look into my medical files at all in order to know what was written and ordered from previous medical staff. She gave me medical release forms to sign to get medical records from outside hospitals because she did not want to look in the DOC medical files. Then my medical files were conveniently lost and I have been transferred to DWCF and I have not seen a medical staff member here. I was told I would be seen by Nancy approx. 7/27/07 as of 9/4/07 I still have not seen anyone.

Claimant's concerns relate to the medical care provided to her while in DOC custody.

The evidence reflects that Claimant received medical care while in DOC custody. She has expressed concern about the quality of that medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue separately any rights that she may have concerning the quality of her medical care.

Claimant has failed to establish that any discrimination prohibited by the ADA and Rehabilitation Act took place while in DOC custody. Claimant may pursue a separate lawsuit if she believes her medical care was substandard.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 5, 2008.**

SIGNED this 23rd day of January, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

---

Richard M. Borchers
Special Master