IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-172
Category III
Claimant: Anthony L. Lee, #61594
Address of Claimant: 4101 Pecos Street, Denver, CO 80211

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on January 14, 2008. This hearing was held at the offices of Legal Resolution Center in Denver, Colorado. Present were the following: Anthony L. Lee (Claimant); and William Arnold, attorney for Defendants.

Testimony was received from Claimant. Defendants presented the testimony of Dr. Orville Neufeld, D.O. Defendants' Exhibits A through T were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

        B. QUALIFIED INMATE
        Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

      2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on October 6, 1989 at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant was placed into a number of facilities and was released on parole. The initial sentence was discharged on April 1, 1993.

Claimant came back onto DOC custody on September 26, 1995. He was evaluated at the Denver Reception and Diagnostic Center (DRDC). He was placed at a number of facilities and was released on parole. On more than one occasion, parole was revoked. He was at the Buena Vista Correctional Facility (BVCF) from December , 2001 to August, 2002. He then was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado in August, 2002. He was released on parole but that was revoked. He now has been placed into a community corrections program.

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, in his claim form "Achilles injury." Claimant included a number of other documents in support of his claim, and alleged that he had an Achilles tendon injury in 1999. He alleged further that he was denied appropriate housing and was subjected to discriminatory racial comments and was denied access for rehabilitation.

At the hearing, Claimant testified that he tore his Achilles tendon in April, 1999. He had

3

surgery to repair the injury. He was in a cast on two occasions as the result of the surgery. DOC facilities were not equipped for mobility impaired inmates. There were no rails in showers. He felt he was in lock down status because of his mobility issues. Claimant also testified that he had difficulty getting around.

Claimant also testified that he had problems with the rehabilitation part of his treatment. His ankle kept giving out on him. He was given medication for his pain. He then was moved to CCCF where he asked for a stool to get into a top bunk. That was denied. He was taken off of his medications. Claimant believes that he has limitations on employment at the present time as the result of his Achilles problem. Claimant has worked as a waiter and finds it difficult to do that work now. He has problems standing for extended periods of time. He was told to work in pain.

On cross-examination, Claimant stated that it is hard for him to exercise because of his limitations. He walks very slowly. He sometimes will use a treadmill. He starts to be in pain in five to ten minutes when he has extensive use of his legs. Claimant stated succinctly that he believed that he has never recovered fully from his injury. He believes that he should have received more physical therapy after the surgery was completed.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. Dr. Neufeld confirmed that Claimant did suffer a torn Achilles tendon in April, 1999 and had surgery. Claimant was placed into a cast and given crutches. When the surgery was performed, there was a slight reduction in the length of the tendon.

Dr. Neufeld indicated that an individual with an Achilles tendon tear is not 100% after surgery, as it is a significant injury. He testified that Claimant probably will not be able to participate in some sports activities. Dr. Neufeld stated that Claimant did have some complications after the surgery, but was provided accommodations.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must show that on or before August 27, 2003 he had disability. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant suffered a tear of his Achilles tendon in April, 1999. He received surgery for that injury and did receive some physical therapy after the surgery was completed. Claimant has alleged that this injury continues to affect him to the point that he is having difficulty working.

The evidence presented by both sides reflects that Claimant is not the same as he was before his injury in 1999. The evidence reflects that Claimant was able to continue walking. He has an impairment, but the evidence does not reflect that there is a disability.

4

Under the provisions of the Settlement Agreement, a claimant must establish that he was an "[i]nmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity." There has been no showing that on August 27, 2003 or before that there was a permanent impairment that substantially limited Claimant's ability to perform activities of daily life. In other words, the ADA and Rehabilitation Act require a showing of an disability that has a significant impact on basic life functions. That is not the case here.

The Settlement Agreement further provides that a disability be permanent. In this case, Claimant was in a cast on two occasions after his surgery. Claimant recovered and was able to give up use of crutches. There is no question that Claimant is not the same as before the injury, but that is not the test. No substantial impairment of a major life activity has been shown, and Claimant was not disabled, as defined by the ADA, on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Anthony L. Lee is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 5, 2008.**

SIGNED this 28th day of January, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master