IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-243
Category III
Claimant: Eugene Navarro, #83708
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on December 14, 2007. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Eugene Navarro (Claimant); and Jennifer Huss, attorney for Defendants.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Claimant's exhibit 1 was offered and accepted. Defendants' Exhibits 1 through 28 were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. Claimant requested an opportunity to review his medical records and submit additional copies of his records. That request was granted.

Claimant has submitted additional documents in support of his claim. He has included several pages of medical records.

This claim has been taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the

Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody in August, 1994. He was placed at the Denver Reception and Diagnostic Center (DRDC) for two weeks. He then was transferred to the camp at the Buena Vista Correctional Complex (BVCC) in Buena Vista, Colorado. In 1995, Claimant was transferred to a community placement. Claimant was placed in intensive supervised parole (ISP) but that was revoked in 1997. Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) in 1997. He remained there until November 18, 2006 when he was transferred to SCF.

In his initial claim form, Claimant checked the boxes for mobility impairment, vision impairment, and hearing impairment, as well as for diabetes. Claimant stated, in part, in his claim form:

> [mobility] - I have two discs in my back which causes a lot of pain while I walk long distances and sit down for long periods and standing. [For my hearing] have 60% lost of hearing for my left side and on my right side 20% lost of hearing, and do to the fact of me gettin' hit on my upper left side of the forehead in which I

got 14 stitches and is why I have a hearing problem and with my memory in now having trouble remembering what I need and remember. [For my Vision] and [Diabetic] I'm having 90% trouble of seeing after I eat and the prescribed glasses the state got me does not work and in the morning I have trouble walking when I get up and start my morning chores. My diabetic treatment is not in balance with my system because every 20 minutes I've got to get up to use the bathroom. I've been affected of the hepatitis C virus and I have not received treatment for the virus....My right side ankle and heal was fractured 20 yr's ago and is given me a lot of pain and my left side knee was fractured 4 yr's ago and in which I'm gettig a lot of pain and now is a long term arthritis disease and which also come to my two elbows which are arthritis also. I'm not seeking to be removed from this facility and my intentions are to serve my time here not in other facility.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> The P.A. and Doctor refused to treat my Hepatitis C and liver....I feel as an inmate I was discriminated "because" I am an inmate. Over all I don't deserve to get this treatment....For my flat foot why doesn't DOC pay for my flat foot and pain with proper tennis shoes since I don't have no money. They haven't provided me with anything for my flat foot and arch support.

Claimant also claimed that he had not received proper treatment for all of his conditions. He believed that this was discriminatory toward him.

Claimant submitted supplemental forms on all of his claimed conditions. Claimant also submitted medical records from various providers. Dr. Robert Levine, M.D. in a letter dated December 2, 1997 noted that Claimant has a mild case of Hepatitis C. He recommended frequent re-exams to determine that status of the disease. Dr. Levine also noted that Claimant is diabetic. Other records reflect an examination for a low back problem in 1990 and an examination in 1996 for ankle problems.

In December, 2006, Claimant submitted additional medical records in support of his claim. Included in this group of documents was a report from Dr. James Ogsbury, M.D. indicating that Claimant may have a lower back disk herniation. He also provided a copy of a DOC form which reflects a multitude of medical problems facing Claimant, including Hepatitis, Type 2 diabetes, and back pain.

At the hearing, Claimant testified that he was diagnosed in 1984 as having diabetes. He was treated at that time by oral medications. He has received stronger medications over the years since coming into DOC custody. He claimed that he had been denied medicines and treatment, requiring the filing of grievances. He believes that his diabetes has worsened. He also testified that his vision is bad. He does receive eye examinations two times per year.

4

Before coming into DOC custody, Claimant worked at the Coors plant in Golden, Colorado. The job environment was noisy, and that affected his hearing. Claimant testified that he was injured while working at Coors. He received medical treatment as part of workmen's compensation. His back and lower legs have become worse. He has been taking Motrin each day. He has been advised that he has arthritis in his ankles. He requested a cane but that was denied. He requested special shoes but that also was denied. Claimant was told by DOC staff that there was no money for special shoes.

Claimant testified that he requested a double mattress due to his back problems. He was told no. Claimant also maintains that DOC staff advised him that there was nothing wrong with his back. He did have x-rays taken, but those were interpreted as within normal limits.

Claimant testified that he requested special shirts because of his shoulder problems. His diabetes now requires one shot of insulin per day. Claimant testified that his left knee tendon broke in 1999. This required medical treatment to correct. Claimant also reiterated that he is ill with Hepatitis C.

On cross-examination, Claimant acknowledged that he can walk, but with a lot of pain. He acknowledged that he did not wear a hearing aid. Claimant stated that his physical condition precludes him doing much, including going to the yard.

Dr. Neufeld testified for Defendants. Dr. Neufeld indicated that Claimant was diabetic but that it was under control. He was taking oral medications and insulin. He stated that Claimant has not been compliant with his diet and was eating food items that were harmful to stabilization of blood-sugar levels. He said that there was no indication of retinopathy from eye examinations. Claimant has received medical examinations and eye examinations. Dr. Neufeld testified that there was no indication of any appreciable hearing loss by Claimant.

Dr. Neufeld went on to testify that Claimant is flat footed. According to Dr. Neufeld, Claimant also has some degenerative disk disease (DJD). Dr. Neufeld did not believe that Claimant was disabled.

On rebuttal, Claimant testified that he did not wear glasses when he entered into DOC custody. He testified further that he does not have much money for canteen.

Claimant has filed a further document since the hearing which explains his position on his claim. Claimant states, in part, as follows:

> Order Special Master for consideration for February 1 of 2008, concerning additional medical records for year of 2007 when inmate was discriminated, when was denied to "medical care" all because he was or is a DOC inmate that has no right to "proper medical care"....

In the conclusion of his pleading, Claimant states, in part:

5

> Mr. Eugene Navarro's right to medical care proper care is violated and includes his right to Colorado and Federal constitutional rights from medicals right to receive proper care of medical. His due process 14th amendment right from constitutional rights are being violated and being punishment and suffering when its DOC right to provide proper medical care....

Claimant has attached copies of grievances concerning medical care and medical records.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must show that on or before August 27, 2003 he was disabled. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date. Each claimed disability will be taken separately.

**Vision:** The evidence presented by both sides reflects that on or before August 27, 2003, Claimant was wearing glasses. The evidence presented by both sides indicated the Claimant has eyes that have weakened over the years, but that vision problems are resolved through the use of eye glasses.

In order to establish a vision impairment, this Special Master has required a showing by a claimant that he is almost blind. In this case, Claimant's activities of daily life have not been substantial impaired by his vision. The examination in October, 2004 reflected that the optometrist determined that Claimant's vision was correctable to 20/20 with eye glasses. Claimant is not a member of the class as vision impaired.

**Diabetes**: The evidence is not disputed that Claimant has diabetes and had been so diagnosed prior to coming into DOC custody. Claimant is a member of the class as having diabetes.

**Hearing:** The evidence submitted by both sides reflects a minor hearing loss. There was no evidence that Claimant's activities of daily life were substantially affected by his hearing loss. Claimant is not a member of the class as hearing impaired.

**Mobility**: Claimant has some mobility issues. He is able to walk and carry on his activities of daily life. Claimant has not shown that he meets the ADA criteria of substantial impairment of a major life activity on the basis of mobility.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary

convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
The testimony of Claimant related almost exclusively to the quality of the medical care that he has received. The issue is whether he was the victim of discrimination due to his diabetes.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

In order to prove a claim, a claimant must establish that he was discriminated against by DOC and its staff due to a recognized disability on or before August 27, 2003. An example would be the placement on the third floor of a building with no elevator of an inmate who is wheelchair bound. No such evidence was presented by Claimant. He has received medical care, even though he may disagree with the effectiveness of some of it. There is no evidence that he has been denied access to services or programs because of any of the four claimed impairments, and certainly not due to his diabetes. Claimant simply has not proven his case as required by the Order of Judges Nottingham and Kane.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Eugene Navarro is dismissed, as Claimant has failed to prove each of the four criteria set forth in the Order of November 23, 2004 and has failed to prove that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 12, 2008.**

SIGNED this 23rd day of January, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master