IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-286
Category III
Claimant: Frederick Porter, #52696
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on January 10, 2008. This hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Frederick Porter (Claimant); and Willow Arnold, attorney for Defendants.

Testimony was received from Claimant. Exhibits 1 through 17 were offered by Claimant and accepted into evidence. Defendants presented the testimony of Dr. Orville Neufeld, D.O. Defendants' Exhibits A through H were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

        B. QUALIFIED INMATE
        Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

        2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
            1. Is the claimant a disabled individual who is a member of the class?
            2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
            3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
            4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on January 18, 1985. Claimant remained in custody until he was paroled on August 15, 1986. Claimant discharged that sentence on December 18, 1986. *Defendants' Exhibit A.* Claimant returned to DOC custody on September 14, 1989. He was paroled on October 8, 1992. Parole was revoked, and Claimant returned to custody on May 13, 1993. Claimant discharged that sentence on June 16, 1995.

Claimant was convicted of a new offense and returned to custody on February 14, 1997. Claimant was processed at the Denver Reception and Diagnostic Center (DRDC) and then placed at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado on May 1, 1997. Claimant was paroled on July 20, 1998. Paroled was revoked, and Claimant returned to DOC custody on September 30, 1999. Claimant then was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado on October 22, 1999. Claimant has been placed at various facilities since that point in time, with a placement at FCF on May 31, 2007.

In his initial claim form, Claimant checked the boxes for vision impairment and diabetes. Claimant stated, in part, in his claim form:

        I have not had any medical treatment for the last five years I have been incarcerated in DOC. I was afraid of my condition was in danger. They did not tell

3

me I was diabetic until 2001. I've been incarcerated since the year of 1998. They did not make any attempt to help me understand my disease or give me any treatments because of their budget. I am now full fledge diabetic. It has cause a misperception of how I feel about myself. I feel damage and damages for the rest of my life. I had found out I diabetic glaucoma.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> They did not consider giving me the proper treatment until I got to the Diagnostic with the problem. Once they knew of my condition they do not want to strain their medical budget. For years they did nothing to help me. Obvious my condition grown considerably worse. I currently been held in a room with no way to get help if I should go into a diabetic attack. In Buena Vista or any facility I wouldn't have anyway to get help.
>
> Now medical is charging us much money. I cannot afford to keep going to get check even though I'm diabetic. I only make 30¢ a day and medical charges a dollar or more per visit. Which leaves me nothing for my hygiene. I do not have any outside financial help.

Claimant was provided supplemental forms to complete and return. In his supplemental form on diabetes, Claimant stated that he was beginning have problems with his eyes. He indicated that he had not received any treatment for what he describes as diabetic glaucoma. He attached copies of grievances that he had filed seeking medical treatment.

Claimant has continued to file additional documents in support of is claim. In several documents, Claimant has indicated that he has faced racial discrimination in seeking medical care.

At the hearing, Claimant testified that he was told when he came into DOC custody that he was on the borderline of being a diabetic. He was not diagnosed until 2004 when he was placed at the Buena Vista Correctional Complex (BVCC). He began to receive Glucovance and Actos while at BVCC. As time progressed, he began taking insulin. He received an overdose of insulin and had problems as the result of that. Claimant testified that he remains on the same medication and treatment at the present time.

As to his vision, Claimant stated that he has glaucoma which he believes is the result of the diabetes. He was sent to see an specialist while at BVCC. As a result, he began taking eye drops for the glaucoma. Claimant also testified that he has a mobility issue with his left shoulder. He had surgery in 2001 or 2002 when some bone was taken out.

Claimant indicated that he had received no treatment for his diabetes before 2004. No one had provided any education to him between 1998 and 2004 concerning diabetes. He has had trouble keeping jobs which he attributes to his diabetes which affects him physically. Supervisors had

terminated him for lack of interest when it really was a reflection of low blood-sugar levels. He also testified that often he is the only African-American diabetic in his unit or facility.

Claimant also indicated that he gets light-headed when nervous. If he had been better educated, then he would have been able to handle his condition.

On cross-examination, Claimant indicated he has had problems writing and reading. He had assistance in preparing his claim and associated forms.

Defendants presented the testimony of Dr. Orville Neufeld, D.O. This witness testified as an expert and had reviewed the medical records of Claimant. Dr. Neufeld indicated that Claimant does have diabetes. Claimant also has glaucoma, but it is not related to his diabetes. He acknowledged that Claimant received an improper dose of insulin at one point.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** A claimant must prove that he was disabled as defined in the Settlement Agreement on or before August 27, 2003. A claimant must show also that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date. Each disability must be examined separately.

**Diabetes**: There is no question that Claimant has diabetes at the present time. His diabetes was not diagnosed until 2004 when he was at BVCC.

The Settlement Agreement requires that a disability must have been diagnosed on or before August 27, 2003. The evidence presented by both sides reflects that Claimant was not diagnosed with diabetes until 2004. There may have been some concerns raised on or before August 27, 2003, but there was no diagnosis. The ADA and Rehabilitation Act prevent discrimination based on a disability that is recognized. In other words, there can be no discrimination by an individual unless that individual knows that the person has a disability. In this case, the recognition of diabetes came in 2004.

The Special Master has no jurisdiction over the claim of diabetes, since Claimant was not diagnosed with diabetes on or before August 27, 2003. Claimant may pursue his own separate lawsuit for what has transpired after that date.

**Vision Impaired**: Claimant testified that he has vision problems caused by glaucoma. He blames the glaucoma on his diabetes.

The evidence presented by both sides reflects that Claimant does have glaucoma. He is treating that condition with eye drops. The evidence indicates that the glaucoma is not related to the

diabetes, but is a separate condition affecting Claimant.

There is no evidence that the glaucoma affects Claimant's activities of daily living. He has a condition that can be stabilized, but he is able to carry on each day. The Settlement Agreement incorporates the ADA requirement that a disability substantially impair an activity of daily living. That was not established by Claimant. The evidence fails to establish that Claimant is a member of the class as vision impaired.

**Mobility Impaired**: Claimant did not present much evidence concerning his shoulder problems. As noted earlier, Claimant did not check the box for mobility impairment on his claim form. The mobility impairment claim arose at the hearing.

Claimant did have surgery on his shoulder in 2001 or 2002. He has had lingering problems since his surgery. He presented no evidence that his shoulder problem or other mobility issues substantially impair any activity of daily life. Claimant is not a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Claimant submitted copies of COPD convictions that he has received over the last few years. Defendants noted that Claimant has had several COPD convictions and that has affected his ability to obtain programs. The Special Master has noted a total of eighteen COPD convictions since 1998. These certainly have affected placement and other decisions made by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** As noted previously, a claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has set forth instances when he believes he was the victim of racial discrimination, but the Special Master has no jurisdiction over claims of racial, ethnic or religious discrimination.

Many of Claimant's concerns relate to his medical care while in DOC custody. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

There is insufficient evidence to establish any discrimination by DOC or its staff on or before August 27, 2003. Under the *Fitzgerald* decision, the Special Master has no power to examine the quality and appropriateness of medical care received by Claimant. Claimant has failed to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since Question #1 and #3 have been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Frederick Porter is denied, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 5, 2008.**

SIGNED this 23rd day of January, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master