IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-428
Category III
Claimant: Gregg Johnston, Jr., #112990
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on January 10, 2008. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado, as Claimant was in the infirmary at that facility. Present were the following: Gregg Johnston, Jr. (Claimant); and Willow Arnold, attorney for Defendants.

Testimony was received from Claimant. Defendants presented the testimony of Dr. Orville Neufeld, D.O. Defendants' Exhibits A through L were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 24, 2002. He was evaluated at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on May 8, 2002. He remained at FCF until he was transferred to the Arrowhead Correctional Center (ACC) in Canon City, Colorado on February 2, 2005. He remained at ACC for two days and then returned to FCF. He has remained at FCF since his return, except for a couple of brief periods of time.

In his initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, in his claim form:

I have diabetes. I haven't had real bad affects in my life until I came to DOC. If I don't have the proper diet it makes my blood-sugar fluctuate up and down (DOC does not have an ADA diet). With diabetes I have to monitor diet, exercise, and how long I can participate in certain activities w/out suffering low blood sugars. Monitoring my insulin and sugar intake is a job in itself for me. I've been a diabetic for 22 yrs. and have had very good control w/only minimal problems such as eating too much and needing extra insulin or vice versa. Diabetes has affected my nerves and has caused some numbness and tingling in my feet which is very uncomfortable. I have to be careful of catching a cold, getting a cut which can cause serious

3

problems if not taken care of properly. The most important thing is I have to watch my feet which if infected by something as a stubbed toe could lead to amputation. I have to usually wear nice athletic soft shoes which aren't available unless purchased off of the canteen for $60.00 plus dollars. I can only hope to get low top shoes so my feet don't get sores. Recreation activities are good to do but must be monitored very closely which is almost impossible to do in DOC.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> I was recommended for boot camp and was denied due to my diabetes. I also have been held back from continuing my SOTP Phase II program at Arrowhead due to my M4 rating as a diabetic. This facility is supposedly considered a medical facility then it should offer all programs. Also my vision has deteriorated to that of a 75 yr. old man, but I have yet to get the follow up surgery I need from Dr. Greenlee. Insufficient amount of time. I believe my current eye problems stem from the lack of real diabetic diet....

Claimant was provided supplemental forms to complete and return. In his supplemental form on diabetes, Claimant stated as follows:

> I am claiming emotional damage because I am being held back from moving to Arrowhead Correctional for Phase II of the SOTMP because I am an M4 based on because of my diabetes. By not being able to move over to Arrowhead I am not able to be recommended for parole. I have met and succeeded every criteria and standard set for over one year ago......

This claim was originally assigned to Category II and was to be resolved on written pleadings and documents. In May, 2006, Defendants submitted a response to the claim. Attached to that document were several pages of Claimant's medical records. A medical record from an examination on January 1, 2006 reflects that Claimant does have type 1 diabetes. *Exhibit A attached to Response.* A document entitled "Classification Action," dated January 5, 2006, reflects that ACC did send Claimant back to FCF because of his medical issues.

Also in the documents submitted by Defendants was a progress assessment summary, dated 4/22/2004, which reflected that Claimant had suffered "a few diabetic seizures during this rating period." Claimant also received COPD convictions during 2003.

At the hearing, Claimant testified that he is thirty-four years old. He was diagnosed as having diabetes when he was nine years old. Claimant testified that in DOC he receives insulin and finger sticks. He stated that his medical treatment while in DOC has been good. He stated that "medical never gives me problems."

Claimant stated that he is a sex offender. He has been sentenced to a term of 2 years to life

in DOC. If released on parole, he will be under supervision for the remainder of his life. In order to be released on parole, Claimant stated that he must complete Phase I and Phase II of the Sex Offenders Treatment Program (SOTP). Claimant testified that he had completed Phase I.

Claimant testified further that he was transferred to ACC in order to be enrolled in Phase II. That program is available only at ACC. Once Claimant arrived at ACC, he was rejected because his diabetes placed him into an M-4 medical rating. ACC does not have the medical facilities to handle M-4 inmates. Thus, Claimant had to return to FCF. His transfer to ACC took place on February 2, 2004 and he returned to FCF two days later.

Claimant testified that he will not be considered for release on parole until he completes Phase II and other requirements (e.g., polygraph). He will not be able to go to ACC because of his diabetes.

Defendants presented the testimony of Dr. Orville Neufeld, D.O. Dr. Neufeld had reviewed the medical records of Claimant. Dr. Neufeld agreed that Claimant is a Type I diabetic. Dr. Neufeld saw Claimant as a "brittle diabetic." There are some problems with his eyes, as well as some kidney damage.

Dr. Neufeld testified that Claimant has a permanent M-4 medical rating. He needs to be close to available medical care. He stated that ACC cannot provide the necessary care for M-4 inmates.

In rebuttal, Claimant testified that he has been hospitalized on occasions because of his diabetes. He has requested to go to Phase II but has not been able to transfer. He believes that this was the result of his having diabetes.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** A claimant must prove that he was disabled as defined in the Settlement Agreement on or before August 27, 2003. A claimant must show also that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

Claimant was a brittle diabetic when came into DOC custody on April 24, 2002. Claimant is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** Defendants submitted evidence that Claimant has had COPD convictions. Defendants argue that these precluded entry into the Phase II program.

The Special Master finds from the evidence that Claimant was not able to participate in

5

Phase II because he is a brittle diabetic and has a permanent M-4 medical rating. ACC was not and is not able to accommodate an inmate with an M-4 medical rating.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
As noted previously, a claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant was a brittle diabetic on and before this date.

Claimant testified that he has received appropriate medical care from DOC. His concern was the inability to enter into Phase II of SOTP because of the inability of ACC to house an M-4 inmate.

The evidence reflects that sex offenders with M-4 medical codes will never be accepted at ACC. The only place where sex offenders may enter into Phase II SOTP is at ACC. Absent completing Phase II, Claimant and other sex offenders will never be considered for release by the Colorado Parole Board. In other words, Claimant and other similarly situated inmates will end up doing a life sentence because diabetes and other medical issues will preclude them from being transferred to ACC for Phase II. It is hard to imagine a more blatant case of discrimination in a prison setting.

The problem for Claimant is basic. The discriminatory action of disqualifying him from Phase II at ACC occurred in early February, 2005. The Settlement Agreement provides that a claimant must show that he was disabled on or before August 27, 2003 and the victim of discrimination on or before that date. The Settlement Agreement provides that "[i]nmates who have ongoing claims for damages may submit claims for future damages." *Remedial Plan, p.28*. The Settlement Agreement provides that a claimant may amend his claim for something that occurs during the compliance period. *Remedial Plan, p.29*. The Settlement Agreement further provides that claimants may bring separate lawsuits for issues that arise during the monitoring period. The Special Masters have determined that jurisdiction exists for a claim only if there is proof that a claimant was disabled on or before August 27, 2003 and the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

Claimant has not proven that he was discriminated against in violation of the ADA and Rehabilitation Act on or before August 27, 2003. He has not met the necessary prong to allow amendment of his claim. He has established that he was and is disqualified from attendance at the Phase II program at ACC due to his health code of M-4. *Exhibit P*.

Claimant has raised an issue that will need to be resolved in a separate setting. Claimant cannot be the only sex offender who has an M-4 rating who will be affected by ACC's inability to handle such medical conditions. Unless resolved by Defendants, Claimant and other similarly situated inmates will be able to pursue separate litigation that will be successful. Claimant and others similarly situated cannot have the door to parole closed to them because they are diabetic and/or have an M-4 medical rating.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

Since Question#3 has been answered in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Gregg Johnston, Jr. is denied, as Claimant he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to the time period ending on August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 5, 2008.**

SIGNED this 23rd day of January, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master