IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-189
Category: III
Claimant: David N. Martinez, #63189
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant David N. Martinez. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado on June 26, 2007 before Richard C. Davidson, Special Master. Mr. Martinez appeared pro se. Defendants were represented by Jennifer Fox, Esq. and Chris Albers, Esq. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also

created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant filed his claim on April 8, 2004. The claim was given number 02-084 and was initially assigned to Category II.

2. The claim was reassigned to Category III and renumbered 03-189. Claimant alleged that he was diabetic. Claimant did not check any of the other boxes on the claim form.

3. Claimant came into DOC custody on December 3, 1987. Claimant was first diagnosed as being a diabetic in 1999 when he was at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant was transferred to the Sterling Correctional Facility (SCF) on March 6, 2001. He remain at SCF until he was transferred to LCF on October 28, 2003. Claimant has remained primarily at LCF since that date, though he has been placed briefly at other facilities for medical care.

4. Claimant was provided oral medications when he first was diagnosed as diabetic. Claimant has had difficulty over the years stabilizing his blood-sugar levels.

5. Claimant has other health problems, including severe artery disease. He has had two stents put into heart, as well as heart catheters.

6. Claimant has had restrictions over the years, including bottom bunk, bottom tier, and no heavy lifting.

7. Claimant testified at the hearing that he believed he was discriminated against when he was not found to be disabled when he applied for an accommodation. This was after his transfer to LCF on October 28, 2003.

8. Claimant has worked in various jobs over the years while in DOC custody. At the time of hearing, he was working in the garment factory at LCF.

9. Claimant's testimony indicated that his diabetes had not affected his ability to carry on activities daily life on or before August 27, 2003.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and © the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III ( c). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

4

5. As is discussed more fully in paragraph 3 below, neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by DOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant has been diabetic since 1999. The evidence presented by Claimant does not indicate that his activities of daily life were affected by his diabetes up to and including August 27, 2003. He is not a member of the class as a diabetic, as he has been able to carry on daily activities.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the DOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. There was no evidence presented by Claimant that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant received medical care for his diabetes. He received restrictions that related more to his heart disease, but reflected an attempt to accommodate Claimant and his medical problems.

Claimant had to show that he had a recognized disability that affected activities of daily life and that he was discriminated against because of that disability. Claimant has failed to establish that he was the victim of discrimination due to his diabetes on or before August 27, 2003. Absent such evidence, the Special Master may not consider anything that occurred after August 27, 2003. Claimant's concerns all arose after his transfer to LCF on October 28, 2003. The Special Master will make no conclusions concerning what may have occurred after the transfer of Claimant to LCF. Claimant may pursue anything that occurred at LCF through a separate lawsuit. He may not pursue what occurred through the claim process.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, the claims brought by Claimant David N. Martinez are hereby dismissed.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before February 29, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 3rd day of December, 2007.

BY THE COURT:

*[signature]*

Richard C. Davidson,
Special Master

# CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 3rd day of December, 2007 to the following:

Mr. David N. Martinez
#63189
LCF
49030 State Highway 71
Limon, CO 80826


Mr. James Quinn
Mr. Jess Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Susan L. Carter