IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92—870 (OES) (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-353
Category III
Claimant: Erik B. Mares, #117614
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on December 14, 2007. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Erik B. Mares (Claimant); and Jennifer Huss, attorney for Defendants.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Defendants' Exhibits 1 through 20 were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 4, 2003. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He was at DRDC until June 19, 2003. He was then moved to the Centennial Correctional Facility (CCF) in Canon City, Colorado. He was at CCF until December 16, 2003, though he was placed at DRDC and at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado for brief periods of time for medical reasons.[2]

Claimant arrived at SCF on December 16, 2003. Claimant has been in various units at SCF, including two periods of segregation. Claimant remains at SCF as of the date of this order. *Defendants' Exhibit 20*.

---

[2] Claimant's profile reflects that he was placed at the CTCF infirmary from October 31, 2003 to December 15, 2003. On December 15, 2003, he was transferred to DRDC and then transferred to SCF the next day.

In his initial claim form, Claimant checked the boxes for diabetes and mobility impairment.[3] Claimant stated, in part, in his claim form:

> I am unable to walk normal. I can't work or lift anything without being in pain or making my illness worse. I am unable to walk and sit down for long periods of time. I am unable to work out and do things that a person should do to get healthy. I am unable to work because I am unable to lift anything over 20 pounds without hurting myself. I have lost self-esteem because I am not able to do everything I used to do before and therefore this has affected me mentally also because I know now that this injury will be with me forever.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> I was seen by doctors at both hospitals, Sterling Hospital and Denver General. Both hospitals ordered that I come back for treatment but I was never brought back. I also was shocked by an electrical appliance in the kitchen that threw me back about four feet. They brought me out in a wheel chair and instead of taking me to medical I was brought to my cell. Later, my cellmate saw I was bleeding from my nose, mouth and ears and it was until then I was brought to medical. I feel I was discriminated against in many ways when I first hurt my back and was taken to the hospital in Sterling and also at Denver General. Both doctors ordered I should be brought back for further checking of my injury but the doctor (Dr. Sing, G) at SCF told me through an interpreter C.O. (Lira) that I was faking and acting a "dumb ass." Furthermore, I was ordered back to work in the kitchen, where I slipped and fell twice and injured my back even more, not to mention the time I was thrown back by an electrical appliance that shocked me, knocked me down and I was wheeled back to my cell. It was until an officer that checked up on me noticed I was bleeding from my ears, nose and mouth that staff wheeled me back to medical.
> I feel I was discriminated against because of my inability to communicate and litigate well, proper treatment and reasonable timing would have avoided the enhancement of my injury.

Claimant testified that he has had difficulty walking since coming into DOC custody. He has asked for medical attention, but continues to have problems. When he experiences pain, he returns to his cell and climbs into his bed. Claimant did seek medical attention in mid-October, 2003 because he was experiencing pain in walking. On October 14, 2003, he was seen at CCF by Dr. Wermers who did an examination. *Defendants' Exhibit 5.*

---

[3] Claimant's first language is Spanish. He has a very limited knowledge of English. His claim form and other submissions were written by others who assisted him. The Special Master asked Claimant if all information submitted was true and accurate to the best of his knowledge, and Claimant indicated that it was.

4

Claimant had x-rays taken on November 3, 2003. The report stated that there was "mild to moderate multilevel degenerative disease particularly in the lower lumbar segments. *Defendants' Exhibit 6*. An EMG was done of Claimant's spine on January 10, 2004, but the doctor indicated that "[t]here is no EMG corrolates of the patient's symptomatology." *Defendants' Exhibit 7*.

Claimant did receive an electrical shock on May 5, 2004. He was taken by ambulance to the hospital in Sterling. He was treated and released. He later received treatment for chronic pain at the same hospital. *Defendants' Exhibit 13*.

Claimant testified further that he had a need for special shoes. He stated that his legs will fall asleep.

On cross-examination, Claimant testified that he did not know that he was diabetic before he was evaluated at DRDC. DOC started medications and that continues for the diabetes. Claimant continues to work in the kitchen and has to stand all day at his job. He tries to walk in the yard, primarily to help with the control of his diabetes.

On redirect examination, Claimant stated that he falls in the kitchen. He does not want to be charged for every medical visit because he has chronic conditions.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Settlement Agreement, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately.

**Diabetes**: The evidence establishes that Claimant has a mild case of diabetes. From all medical reports and other evidence, it appears that Claimant was diagnosed with diabetes in October, 2003. This date post-dates August 27, 2003. Claimant has not established that he was diabetic on or before August 27, 2003 and, therefore, may not pursue his claim concerning diabetes.

In addition, the evidence presented concerning diabetes has been sketchy. As a practical matter, Claimant has failed to establish that activities of daily life were affected by his diabetes. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). Claimant is not a member of the class as a diabetic.

**Mobility**: Claimant arrived at DRDC on June 4, 2003. Under the provisions of the Settlement Agreement, Claimant has to prove by a preponderance of the evidence that he was disabled on or before August 23, 2003. In other words, Claimant must show that he was mobility disabled in the

5

first two and one-half months that he was in DOC custody.

The evidence presented by both sides reflects that Claimant first began seeking help for his back and legs in October, 2003. Dr. Wermers' note of October 14, 2003 is lengthy. Dr. Wermers ordered testing to be done. Those tests reflected degenerative disk disease in the lower back. There is no evidence that Claimant was disabled on or before August 27, 2003. That must be shown before any conduct after that date may be considered.

Claimant has failed to establish that he was mobility impaired on or before August 27, 2003. Claimant is not precluded from bringing a new lawsuit for what has occurred since that date. Claimant was not mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has not established that he is a member of the class under any category set forth in the Settlement Agreement. He also has proven no discriminatory action by DOC or its staff on or before August 27, 2003.

Claimant has testified that he has concerns about the quality of medical care provided to him. Indeed, his claim form specifically discusses what is described as lack of proper treatment. The evidence reflects that Claimant did receive medical care, both inside and outside of DOC. Claimant has a concern about the quality of that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical practice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has not shown that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. He has not met his burden of proof. He retains the right to bring a separate lawsuit for anything that may have occurred after August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Erik Mares is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 as to other issues; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 31, 2008.**

SIGNED this 7th day of January, 2008.

BY THE COURT:

_____
Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 7th day of January, 2008 to the following:

Mr. Erik Mares
#117614
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. James Quinn
Mr. Jess Dance
Office of the Attorney General
1525 Sherman Street
Denver, CO 80203

*Susan L. Carter*