IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

_____

Claim Number: 03-212
Category: III
Claimant: Abad Martinez, #102765
Address of Claimant: BVMC, P.O. Box 2017, Canon City, CO 81211

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master on the claim of Claimant Abad Martinez. The hearing was held at the Four Mile Correctional Complex (FMCC), iin Canon City, Colorado on May 22, 2007 before Richard C. Davidson, Special Master. Mr. Martinez was represented by Castelar M. Garcia, Esq. Defendants were represented by Celia Randolph, Esq. Claimant Abad Martinez and Orville Neufeld were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.  General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.  DEFINITIONS
>    A. COVERED DISABILITIES
>    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>    B. QUALIFIED INMATE
>    Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>    C. PERMANENT DISABILITY/IMPAIRMENT
>    A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Abad Martinez submitted a claim which was assigned claim number 03-212. The claim is premised on alleged permanent mobility, vision and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Martinez first entered CDOC custody in 1999. Claimant has been housed at FCF, CTCF and FMCC.

4. Claimant suffers from asthma and uses an inhaler on a daily basis. CDOC provides the inhalers for his use. Generally, his asthma is controlled by his inhalers but sometimes he has difficulty breathing. At those times, Claimant has trouble walking very far. After a short distance, he loses his breath and must stop to rest before proceeding. He also has an injured shoulder but admits that this does not interfere with his mobility. Prior to coming to CDOC, in 1978 Claimant was found to be entitled to SSD benefits because of his Chronic Pulmonary Insufficiency.

5. Claimant also claimed a vision and diabetic disability but failed to put on evidence to support these claims.

6. Dr. Neufeld testified that Claimant suffers from plantar fasciitis. He has been treated with steroid injections and has been allowed to wear tennis shoes and insoles. CDOC provided him with heel cups and support hose. In 2002, Claimant injured his right knee. Subsequently, he developed cellulitis and a staph infection. He was taken to the infirmary for treatment and recovered in about

one month. Dr. Neufeld confirmed that Claimant suffers from asthma.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant does suffer from temporary episodes when his asthma limits his mobility. However, there is no permanent impairment to his

mobility. When his asthma is bad, his mobility is limited. Otherwise he is able to walk and climb stairs and move around the facility.

7. In order to recover in this action, Claimant must prove that any impairment he has substantially interferes with a major life activity. In the case of mobility, this would be the major life activity of walking. Claimant has not sustained his burden of proof. Neither has Claimant sustained his burden of proof to show that he is vision or diabetic impaired. Claimant did not offer any evidence to these claims.

8. Since Claimant has failed to prove that he is disabled, the Special Master concludes that he is not a member of the Montez class. Because of this conclusion, it is not necessary to discuss the issues of discrimination.

9. The fact that Claimant was entitled to receive Social Security disability benefits has no bearing on the conclusions in this case. The grounds for recovery in this case are contained in the Montez remedial plan as discussed above. The plan does not allow the finding of a disability based upon asthma except as it may interfere with the major life activity of walking. Again, the Special Master has concluded that Claimant failed to prove his disability as discussed in paragraph 7, above.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 6th day of February, 2008

BY THE COURT:

/s Richard C. Davidson

_____
Richard C. Davidson
Special Master