IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-231
Category: III
Claimant: Robert Chavez, #43454
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master on the claim of Claimant Robert Chavez. The hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on November 26, 2007 before Richard C. Davidson, Special Master. Mr. Chavez appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

2

submitted in this case by considering the following questions:

>  1. Is the claimant a disabled individual who is a member of the class?
>  2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>  3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>  4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Robert Chavez submitted a claim which was assigned claim number 02-335. After review, the claim was elevated and assigned claim number 03-231. The claim is premised on alleged permanent mobility, hearing, vision and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Robert Chavez first entered CDOC custody in 1977. He was paroled in 1983 but was returned to CDOC custody in 1988. Claimant has been housed at CTCF, FCF and AVCF.

4. Claimant was injured in 1976 when he was shot in the left hip. The gunshot damaged the sciatic nerve and as a result, the left leg is smaller than the right. He has some limitation of movement in the leg. He was issued special shoes in the 1980's. When he came back into custody in 1988 and was sent to CTCF the shoes were taken and replaced with prison boots. He says that the right leg is just as bad as the left now. He says he has pain running down both his legs into his feet. In order to walk he utilizes a cane he brought into prison with him. He is able to walk and climb stairs but must be careful. Claimant is bottom bunk/bottom tier restricted. He is employed with a handicap job. He says he can walk "maybe a block" with his cane. He is able to walk to the mess hall.

5. The medical records confirm that Claimant has chronic back pain from advanced degenerative disk disease, and has had it for many years. On October 12, 2001 he had an MRI which showed "spondylolisis with spondylolisthesis at L5-S1 degenerative changes are noted at L3-

3

4 and a herniation at L3-4 lateralized to the right." Under impression, the report stated "6. Symptoms markedly in excess of objective findings." Further medical records document that Claimant was attempting to obtain narcotic medications. Some records indicate that Claimant was able to ambulate without difficulty, even without his cane, particularly when not being observed.

6. Claimant also claims to be hearing disabled. His main complaint is that his left ear gets plugged. He admits that he can hear.

7. He also claims to be vision impaired. He complains that his eyes get blurred from time to time. He believes it is caused by his diabetes. He has been vision tested several times and his most recent test on March 21, 2007 showed his corrected vision to be 20/20 on the right and 20/25 on the left. There is no evidence of diabetic neuropathy in either eye.

8. Claimant does have diabetes. He was diagnosed with diabetes in about 1995 while at CTCF. Initially he was prescribed oral medications but later was prescribed insulin. His control has not always been good. He believes his eyes are being damaged. He believes he has neuropathy from his diabetes in his feet and legs. He says that sometimes he cannot get his socks on.

9. The medical records show that Claimant's A1C levels have fluctuated from a low of 5.5 in 1996 to a high of 8.6 in 2005. Generally his A1C levels are in the 5.8 to 6.5 level, generally considered good. This is in spite of Claimant buying candy from the canteen. His examinations have not shown any diabetic retinopathy or neuropathy. The problems with his feet are caused by his sciatic nerve damage. His kidneys show no evidence of damage.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant does suffer from diabetes and is mobility impaired. There is no proof of any vision or hearing impairment. In order to prove that he is a member of the class, Claimant must also prove that his diabetes and/or his mobility impairment substantially interferes with one or more of his major life activities. This, Claimant has failed to do.

7. Claimant has proven that he has diabetes. However, he has not put on any evidence to show that his diabetes has progressed to interfere with any major life activities. His eyes and kidneys have not been damaged. He is not suffering from diabetic neuropathy. His treatment is an inconvenience but no more than that suffered by any other insulin dependent diabetic. There is simply no evidence of any limitations of daily activities caused by his diabetes.

8. While Claimant does have some mobility impairment, he has failed to prove that this impairment substantially limits any major life activities. He is mobile and is able to walk and climb stairs. While he utilizes a cane, this fact alone is insufficient to prove a disability. The question is whether Claimant is substantially limited when using his cane. The evidence shows that he is not.

9. Claimant has been accommodated and placed on some restrictions by CDOC to lessen the impact of his impairments. The Special Master concludes that Claimant has failed to prove that he is disabled in any way, as described in the Montez remedial plan, and therefore, he is not a member of the Montez class. That being the case, there is no reason to proceed with the other questions.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

$$901\ 19^{th}\ \text{Street}$$
$$\text{Denver, CO 80294.}$$

SIGNED this 6th day of February, 2008

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson
Special Master