IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-241
Category: III
Claimant: Orlando C. Clark, #91231
Address of Claimant: SCF, P.O .Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master on the claim of Claimant Orland C. Clark. The hearing was held at the Four Mile Correctional Center (FMCC) in Canon City, Colorado on May 22, 2007 before Richard C. Davidson, Special Master. Mr. Clark appeared pro se. Defendants were represented by Celia Randolph, Esq. Claimant and Orville Neufeld D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Orlando Clark submitted a claim which was assigned claim number 03-241. The claim is premised on alleged permanent mobility and vision disabilities. During the hearing, Claimant waived his vision disability claim so it will not be considered.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant first entered CDOC custody in 1996. Claimant has been housed at FCF, KCCC, CCCF, AVCF, FMCC and SCF.

4. Claimant has a long history of chronic back pain going back to an injury in 1993. He has had several back surgeries. In 1999, he was found to be suffering from a nerve impingement with chronic leg pain and was authorized to have an extra mattress. The extra mattress authorization was renewed in 2002. Despite his back and leg pain, he was playing basketball in February 2000 when he dislocated his thumb. Following a fall in July, 2002 he was placed in a wheelchair. Shortly after, he was progressed to a walker. In late December 2002, he voluntarily gave up the walker. However, on May 7, 2003 he underwent a decompressive laminectomy at L2-3, L3-4, and L4-5 with bilateral foraminotomies and disc excisions at L2-3 and L4-5. Following this surgery he had complications resulting in right foot drop. In June 2003 he was issued an AFO foot and leg brace, a back brace, cane, walker and 2 medical pillows. In March 2004 he was authorized to have a cane, back and leg braces, a shower stool and Ted hose. He was also given tennis shoes to use with his AFO brace. By August 2005 he was able to exercise. By October 2006 he was "able to walk 1-2 miles on the track without much difficulty."

5. Despite the medical records, Claimant says that he was discriminated against by CDOC in several ways. When he came to FMCC in July 2005 he says his medical shoes were taken from him. He says that he cannot wear his AFO brace without the shoes. He says that in 2003 he was given an extra mattress but that it was taken away in 2006. He also claims that he has been discriminated against because he is not able to go into community corrections. He also complains of inadequate medical care.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C)

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against

4

because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Clark is not a mobility disabled person under the terms of the remedial plan. Following Claimant's surgery he suffered complications that require him to wear an AFO brace and a back brace. Because of his efforts to recover, to exercise and walk, he improved to the point of being able to walk 1-2 miles per day on the track by October 2006. While Claimant is certainly impaired because of his injuries, in order to prevail in this case he must show that he is permanently and substantially limited in one or more major life activities such as walking. Claimant has failed to prove that he is limited. Rather the evidence is to the contrary that Claimant is able to be active and walk moderate distance for exercise. Without this proof, the Special Master is forced to conclude that Claimant is not a member of the Montez class.

7. It is noted that the claims of discrimination raised by the Claimant must also fail. The claims of inadequate medical care are not cognizable under the Montez Remedial Plan as discussed in paragraph 5 above. The reason for the taking of the shoes and mattress have not been made clear. If an action is taken for a valid security or penological reason, such action is not discrimination. In addition, CDOC has no control over the placing of an individual into community corrections. CDOC has referred Claimant for consideration for placement. It is the decision of the community corrections officials to accept or reject someone into their program.

8. Since the Special Master has concluded that Claimant is not a member of the Montez class, it is not necessary to consider the other issues in this case.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 8th day of February, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson
Special Master