IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs.-

BILL OWENS, et al.,

   Defendants.

_____

Claim Number: 03-258
Category: III
Claimant: James Miera, #88920
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master on the claim of Claimant James Miera. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado on May 29, 2007 before Richard C. Davidson, Special Master. Mr. Miera appeared pro se. Defendants were represented by Celia Randolph, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant James Miera submitted a claim which was assigned claim number 02-145. After review, the claim was elevated and assigned claim number 03-258. The claim is premised on alleged permanent mobility, hearing and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Miera first entered CDOC custody in 1996. Claimant has been housed at FCF, FLCF, and SCF.

4. Claimant suffers from osteoarthritis in his hips. This limits his mobility. He is able to walk but must do so slowly and needs a cane for support. He is not able to climb stairs. On one occasion, Claimant fell while attempting to enter a transport van. He has been given accommodations for his impairment, including a cane, lower bunk and an extra mattress. He needs someone to carry his tray in the chow hall. It is Dr. Neufeld's opinion that Claimant is mobility disabled.

5. Claimant testified that he suffers from hereditary hearing loss and as a result has trouble hearing announcements, and has difficulty hearing in classes. Claimant has had three audiogram exams because of his hearing loss. The first exam was in March 1996, the second in 2001, and the third in January 2007. None of these exams showed that Claimant's hearing loss qualified him for hearing aids. However, his classroom instructors confirm that Claimant cannot hear or participate in class. Claimant testified that he has trouble understanding and that background noise causes him trouble.

6. Claimant suffers from diabetes and is insulin dependent. He has had trouble controlling his diabetes while incarcerated. He had to be assigned to a different work shift so that he could take his insulin before eating. His A1c levels have been monitored and they have ranged from a high of

13.1 to a low of 8.0. As a result of his diabetes, his kidneys have been damaged. He suffers from some "moderate background diabetic retinopathy." Despite this, his vision is able to be corrected to 20/40 on the right and 20/25 on the left. He is required to take insulin and other medications to control his blood sugars.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Miera is a mobility disabled person under the terms of the remedial plan. It is apparent that CDOC also considers him disabled since he has been given restrictions and other accommodations. While he attempts to exercise, his mobility is still restricted and he is unable to climb stairs without stopping. In the chow hall he must have someone carry his tray as he is unable to walk and carry the tray. This is sufficient to demonstrate a substantial limitation on the major life activity of walking.

7. The Special Master also concludes that Claimant is hearing disabled. He clearly suffers from some hearing loss. The audiogram testing reveals that while he has hearing loss it is not sufficient to meet the standards for issuance of a hearing aid. However, he is unable to hear or participate in classes because of his hearing loss. He testified that he was suspended from class until he got hearing aids. This is sufficient to demonstrate a substantial limitation of the major life activity of hearing.

8. Claimant also suffers from diabetes. However, despite this, he is able to function without difficulty. While he has suffered some kidney damage, he has failed to prove that he suffers from any more difficulties than most insulin dependent diabetics. He is able to see and the kidney damage has not caused him to be disabled. While he has had a bladder infection and suffers problems from that, his diabetes is not causing him to be disabled.

9. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

10. Of course, the key issue is whether Claimant was discriminated against by DOC because of his mobility and hearing disabilities. Claimant testified that he has had to have accommodations because of his mobility disability. The evidence shows that CDOC has provided Claimant with what he needs for his mobility including someone to carry his tray in the chow hall, a cane, an extra mattress and restrictions. No evidence has been offered to show any lack of care or failing to meet Claimant's mobility needs. No discrimination because of mobility has been shown.

11. The Special Master concludes, however, that Claimant has been discriminated against by CDOC because of his hearing loss. While Claimant may fall outside the CDOC limits for a hearing aid based solely on audiogram testing, he still has trouble hearing and understanding, particularly when background noise is present as it always is. This has resulted in his being unable to take classes because he cannot hear or participate. By CDOC denying him a hearing aid, it has prevented him from being able to participate in activities because of his hearing loss. This is discrimination. To avoid this, CDOC should issue Claimant a hearing aid so that he can once again participate in the activities offered.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law,

Judgment be entered in favor of Claimant James Miera and against Defendants ordering CDOC to issue a hearing aid to Claimant as soon as possible. In addition, Claimant is hereby awarded the sum of $500.00 in damages.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 4th day of February, 2008

BY THE COURT:

/s/ Richard C. Davidson

---

Richard C. Davidson
Special Master