IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-317
Category: III
Claimant: Robert Rochefort, #68920
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 80138-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert Rochefort. The hearing was held at Sterling Correctional Facility (SCF) in Sterling, Colorado on May 29, 2007 before Richard C. Davidson, Special Master. Mr. Rochefort appeared pro se. Defendants were represented by Celia Randolph, Esq. Claimant was called, sworn and testified. Claimant's Exhibits 1-13 were offered and admitted into evidence. The affidavit of Orville Neufeld, D.O., Defendants' Exhibit A, was offered and admitted into evidence, as well as Defendants' Exhibits B-H. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval

established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Robert Rochefort submitted a claim which was initially assigned claim number 02-538. Subsequently, upon review by the Special Master, the claim was elevated and assigned claim number 03-317. The claim is premised on alleged vision impairments and impairments due to diabetes.

2. Claimant's claim was re-assigned by the Special Master to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant first entered CDOC custody in August 1992. Until recently, Claimant was in custody at SCF. He now is at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

4. Claimant arrived at CDOC with a pair of gas permeable hard contact lenses. In 1995, he requested a new pair of hard contact lenses to replace his scratched ones. After a series of eye exams by a number of ophthalmologists, Claimant prevailed in a Step III grievance regarding this issue, and was provided a pair of gas permeable hard contact lenses after an eye exam on 7/6/95 conducted by Benton Murphy, M.D. Dr. Murphy concluded that the hard lenses were "medically necessary" because Claimant could not see with regular glasses.

5. In 2000, Claimant again requested that his gas permeable hard contact lenses be replaced. Claimant testified that he had at least three additional eye exams: 2001 by Dr. Buchanan, 2002 by Dr. Ellitt and again in 2007 by Dr. Buchanan. In 2001 and 2002, both ophthalmologists, who were outside providers, recommended that Claimant receive hard lenses because they were "medically

3

necessary." In 2001 and 2006 CDOC physicians determined that Claimant's myopia did not fall within the exceptions set forth in CDOC's administrative regulation #700-05. Therefore, his contacts were not replaced.

6. Claimant was diagnosed with diabetes in 1984. His diabetes is now well controlled by a daily injection of insulin. Claimant has been monitored regularly for complications that often result from diabetes. As a result of having Hepatitis B, Claimant has developed end stage liver disease. He also has ascites, or fluid build up in his abdomen that makes it difficult to urinate. In 2004, Claimant was convicted of two COPD violations for his failure to produce a urine sample during a drug screening. Sometime after Claimant filed his initial claim, the COPD convictions in Cases 04-1878 and 04-1910 were expunged from his record. His good time and earned time were reinstated by CDOC.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. §1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(c).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

4

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Robert Rochefort is not disabled due to a vision impairment or because of diabetes under the terms of the remedial plan. In order to prove a disability, it is necessary for Claimant to show that he has a permanent vision impairment and a permanent impairment due to diabetes. Defendants do not dispute that Claimant has diabetes and is severely nearsighted. However, Claimant must show that his impairments substantially limit a major life activity. The records and Claimant's own testimony show that he is able to take care of himself in performing activities of daily living. He is able to see well enough to have worked several jobs before he became medically unassigned. In 2005, Claimant successfully completed a computer course which involves close up work. In addition, Claimant testified that he has not been discriminated against by CDOC because of his diabetes.

7. Claimant has consistently framed his complaint regarding CDOC's failure to provide him with hard contact lenses as a result of inadequate or improper medical care. As is indicated in paragraph 5 above, such claims are not cognizable in this action.

8. Having failed to prove that he is permanently disabled due to vision impairments or diabetes, Claimant is unable to prevail in this matter.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendants and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 8th day of February, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson
Special Master