IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

___

Claim Number: 03-320
Category: III
Claimant: Walter J. Price, #42492
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

___

# FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER came before the Special Master on the claim of Claimant Walter J. Price. The hearing was held at Sterling Correctional Facility (SCF) in Sterling, Colorado on May 30, 2007 before Richard C. Davidson, Special Master. Mr. Price appeared pro se. Defendants were represented by Ms. Jennifer Fox, Esq. Claimant, Phillip Held, Gary Little, Brian Webster, Ronald Johnson and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Walter J. Price submitted a claim which was assigned claim number 02-495. After review, the claim was elevated and assigned claim number 03-320. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Price first entered CDOC custody in 1979. Claimant has been housed at CCF, CTCF, FCF, SCF, and LCF.

4. In 1977, Claimant had surgery on his feet which were deformed and had bunions and hammer toes. Over the years, he has had further surgeries resulting in calluses, bunions and sores on his feet. In December, 1978, he suffered a gunshot wound to his lower spine. This also necessitated several surgeries and ultimately caused him to need crutches, a cane and a wheelchair for mobility. He testified that he can move around a little using his right leg but that his left leg doesn't work. He is able to walk a little with his cane. He can stand without a cane but needs it to walk. His mobility is limited. He cannot climb stairs. However, several notations in his medical and other records show him to be able to walk some distance without his cane and to stand for long periods of time.

5. CDOC has provided Claimant with many accommodations besides the equipment mentioned above. He has been given sandals, shower shoes and tennis shoes, support hose, open

3

front shirts, a basin for foot soaks, back and leg braces. He has a shower chair and egg crate mattress. He has been provided a handicap cell. He is on several restrictions including lower bunk and first tier housing. He has been furnished with narcotic and non-narcotic drugs for his pain. He has a wheelchair pusher.

6. Claimant is upset with medical and with CDOC because certain shoes have not been provided to him. He has refused shoes that have been ordered and has wanted other shoes instead. He now has to purchase his own shower shoes after CDOC furnished them to him in the past. He has been provided with various types of footwear and has been allowed to wear it in different areas of the facility. He is also upset because he is unable to get certain drugs that he wants. He has a history of drug abuse and has been caught "cheeking" his medications. He has been disciplined for transporting contraband in his wheelchair.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Price is a mobility disabled person under the terms of the remedial plan. He has genetically deformed feet, has had numerous surgeries on his feet and still has difficulty with them today. He suffered a gunshot wound to his lower spine which has caused him to need a cane, crutches and a wheelchair for mobility. This is sufficient to demonstrate a substantial limitation on the major life activity of walking despite his ability to ambulate short distances without his chair or cane.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by CDOC, except during those times he was under administrative punishment. The Special Master notes that even during the times he was in segregation, he has been allowed to have his egg crate mattress and other items as needed.

8. Of course, the key issue is whether Claimant was discriminated against by CDOC because of his mobility disability. Claimant has argues that the refusal of CDOC to issue proper footwear as it once did is discrimination. He also complains that he has not been able to have jobs that he wants and is unable to get the medical care he desires. The medical records do not support these claims. Claimant has received a great deal of medical care including narcotic and non-narcotic drugs as he needed. He has been issued footwear, although not always exactly what he wanted. As for his ability to work, the records show that Claimant has been allowed to work when he is able. No discrimination has been proven. Without this proof, Claimant's action must fail. Claimant is not entitled to recover in this matter.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 4th day of February, 2008

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson
Special Master