IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

_____

Claim Number: 03-323
Category: III
Claimant: Paul I. Pollard, Jr., #66360
Address of Claimant: CCF, P.O. Box 600, Canon City, CO 81215-0600

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER came before the Special Master on the claim of Claimant Paul Pollard, Jr. The hearing was held at the Colorado Supreme Court (CSP) in Canon City, Colorado on February 20, 2007 before Richard C. Davidson, Special Master. Mr. Pollard appeared pro se. Defendants were represented by Berina Ibrasagic, Esq. Claimant was sworn and testified, Orville Neufeld, D.O. testified by affidavit. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

**I. BACKGROUND**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.    General inconvenience or nominal damages;
> II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.   Damages due to severe physical injuries; and
> V.    Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.  DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Paul Pollard, Jr. submitted a claim which was assigned claim number 02-494. After review, the claim was elevated and assigned claim number 03-334. The claim is premised on an alleged permanent mobility, hearing, vision, and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Pollard first entered CDOC custody in 1991. He was paroled in 1997 but returned to CDOC custody in 2001. He has been housed at CCCF, AVCF, and CSP.

4. Claimant was severely injured in 1986 in a chemical burn accident. He suffered the loss of his left eye, the partial loss of his left ear, extensive burns to his face, neck and chest. He also has burns to his Eustachian tube.

5. Claimant is blind in his left eye, the eye having been enucleated. He has no peripheral vision on the left and poor depth perception. However, the vision in his right eye is corrected to 20/20. The eyelid was damaged by the chemical burn, is scarred and does not close completely. CDOC has furnished him with eye drops and ointment to assist in this problem. The records show that he does not have any diabetic neuropathy in his remaining eye.

6. Claimant's left ear was damaged in the chemical accident. He also suffered burns to his Eustachian tube. He has had frequent infections in this ear. In 2000, he had surgery to clean out the ear and repair the eardrum. In 2002, when he was re-incarcerated, he had an audiometric exam. He

was suffering from hearing loss on both sides, worse on the left. A hearing aid was requested but was denied by Colorado Access Insurance as not being medically necessary. Claimant says he has trouble hearing the intercom if he is sleeping on his left side and also sometimes doesn't hear the fire alarm.

7. Claimant testified that he is mobility disabled although he testified "I can walk." He admitted that he does not need any assistive devices for mobility. He testified that he is able to walk and jog in place and that he can climb stairs. The records do not show any limitations on mobility. He has been given numerous restrictions including lower bunk/lower tier, no heavy lifting, no bending, no shoveling and no honor camps. Despite these restrictions he requested that he use the stationary bike in the gym in 2003.

8. Claimant was diagnosed with type II diabetes in 1998. He was placed on several medications and prescribed a special diet with evening snack to control his disease. Claimant has not always been compliant with his diet or medications and has requested that both be discontinued. He has also purchased items from the canteen that are not suitable for a diabetic. Despite this, Claimant's A1c levels have not been out of control. While his levels have varied from 5.0 to 9.4, the majority have been well below the target of 7.0. Medical exams have not shown any evidence of foot, eye or other organ damage from his diabetes.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources:  (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six

months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Pollard has failed to prove that he is disabled under the criteria of the Montez remedial plan. There is no question that Claimant is vision and hearing impaired. The total loss of one eye and the damage to his ears are clearly shown. However, it must be shown that such impairments substantially interfere with one or more major life activities in order to prove disability. While Claimant has only one eye, the vision in his other eye is correctible to 20/20. Claimant is still able to see and function with his good eye. Consequently, there is no substantial loss of a major life activity such as seeing. While Claimant has hearing loss in both ears, such hearing loss does not result in the substantial loss of a major life activity such as hearing.

7. Claimant says he is mobility disabled. But he admits that he can walk, climb stairs, run and jog in place. Again, claimant must first show that he is impaired and that the impairment substantially limits a major life activity. In this case, the evidence simply does not support that Claimant has any impairment to his mobility.

8. Claimant does suffer from Type II Diabetes. However, he has the burden of showing that this disease has caused further damage to him that substantially limits a major life activity. The evidence fails to prove this. No extremity, eye, or other organ damage has been shown. Claimant has failed in his burden of proof.

9. Claimant has failed to prove that he is disabled in any way as required in the Montez remedial plan. By failing to prove this, he has failed to prove that he is a member of the class. Thus Claimant is not entitled to recover in this action.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this

action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 6th day of February, 2008

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson
Special Master