IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

_____

Claim Number: 03-327
Category:  III
Claimant:  Michael R. Ingram, #43629
Address of Claimant:  SCF, P.O. Box 6000, Sterling, CO 80751

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master on the claim of Claimant Michael R. Ingram. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado on May 30, 2007 before Richard C. Davidson, Special Master. Mr. Ingram appeared pro se. Defendants were represented by Ms. Jennifer Fox, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I.  BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.  Damages due to severe physical injuries; and
> V.   Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims

submitted in this case by considering the following questions:

1.  Is the claimant a disabled individual who is a member of the class?
2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II.  FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Michael R. Ingram submitted a claim which was assigned claim number 02-581. After review, the claim was elevated and assigned claim number 03-327. The claim is premised on alleged permanent mobility and vision disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant first entered CDOC custody in 1977. Claimant has been housed at CCF, CTCF, SMCF, LCF, AVCF and SCF.

4. Claimant was injured in 1975 when he was hit by a car. This caused injury to his back and caused a concussion. Since that time, he has had back pain, back spasms, and sciatic pain. He uses hot packs to help with the back pain. Despite his pain, he is not restricted to the bottom bunk or bottom tier. He is limited to no lifting over 20 pounds. He is able to walk and climb stairs but does so with pain. Claimant also has bad feet due to deformed heels and bony protuberances. His feet also cause him pain when he walks. Because of the condition of his feet, state issued boots cause him to get blisters. As a result he wears tennis shoes and generally has been allowed to wear them instead of the state boots. In 2002, Claimant complained of knee pain. On exam, nothing was found to explain his complaints.

5. Claimant suffers from photophobia as a result of his accident in 1975. To assist him, he wears a ball cap and sunglasses. He suffers from headaches and gets migraines. The medical records confirm this. Despite his headaches, his vision is correctable to 20/20 with glasses. He

offered no evidence to show any limitation on his daily activities because of vision defects.

6. Claimant has asked for certain accommodations because of his mobility and vision problems. He has requested a single cell and half-time job, but these have been denied. He has also requested typewriter ribbons, correction fluid and typing paper. These things have also been denied.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to

mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant is not mobility disabled. Claimant does suffer from a mobility impairment because of his feet and his back pain. However, in order to prove a disability, Claimant must prove that his impairment substantially interferes with one or more of his major life activities. The evidence fails to prove this. Claimant can walk and climb stairs. He is not under any restrictions because of his mobility. The evidence does not show any limitation on a major life activity.

7. Neither does the Special Master conclude that Claimant is disabled because of his photophobia. In order to prove a vision disability, Claimant must prove that his vision problem again substantially interferes with a major life activity. Claimant has shown that he has photophobia but has failed to show that it is anything more than an inconvenience. His visual acuity is correctible to 20/20 in both eyes. There is no evidence to show disability.

8. Claimant really seems to be complaining that he is not getting everything that he requests. However, unless those requests constitute medical necessities, they do not fall within the Montez criteria.

9. Claimant has failed to show that he is disabled and is a member of the Montez class. Consequently, he is not entitled to recover in this action.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 4th day of February, 2008

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson
Special Master

5