IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-369
Category: III
Claimant: Stanley R. Heisch, #68718
Address of Claimant: C/O Helena Schultz, 219 Cameron Street, #C. Brush, CO 80723

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master on the claim of Claimant Stanley R. Heisch. The hearing was held at Legal Resolution Center, 7907 Zenobia Street, Westminster, CO 80030-4444 on July 13, 2007 before Richard C. Davidson, Special Master. Claimant Stanley R. Heisch appeared together with Counsel Ms. Helena Schultz, Esq. Defendants were represented by Robert C. Huss, Esq. Claimant Stanley R. Heisch, Carey Shames, M.D., and Marietta Heisch were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Stanley R. Heisch submitted a claim which was assigned claim number 02-692. After review, the claim was elevated and assigned claim number 03-369. The claim is premised on alleged permanent mobility and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Heisch first entered CDOC custody in 1991. He escaped in 1999 and was re-incarcerated in April 2004. He was released on parole in September 2005. Claimant was been housed at SCF, FMCC, ACC, CCC, DCC, and Hill Top House in Durango.

4. The claims brought by Mr. Heisch all relate to his condition and treatment or lack of treatment by CDOC following his return to custody in April, 2004. When he returned to custody he was suffering from degenerative joint disease. His right hip was severely degenerated. He was also suffering from a hernia at the sight of an incision for surgery due to a gunshot wound. He testified that he was able to walk with the aid of a cane when he came back to custody. He says the cane was taken when he returned. He was given a walker and later was given a wheelchair.

5. During the time he was back in custody, his hernia enlarged. He blames CDOC for this. He also blames CDOC for his inability to walk. He argues that he should have been given a hip replacement rather than a wheelchair. In fact, Colorado Access was asked to approve a hip replacement but refused. The records indicate that he was offered hip surgery twice but refused

3

because he wanted the hernia repair performed first. He has had hip replacement surgery since he has been out of custody. He is still waiting on hernia repair surgery.

6. Claimant was diagnosed with diabetes in 2000 while in Mexico. Before coming back into custody, he was not on medications but controlled the disease with diet. When he came back to CDOC he was assigned a diabetic diet. He complains that this diet was not good for diabetics. His blood sugars went up while he was on this diet. Now that he is not in custody, he controls his diet and has reduced his dependence on drugs. He blames CDOC lack of medical care for his out of control diabetes.

7. The records indicate that when Claimant returned to custody he was given several accommodations including a walker, a wheelchair, medical helps, and bottom bunk/bottom tier restrictions. He was examined and plans for medical care for his diabetes were implemented. The records also show that Claimant was non-compliant with his diet and was eating a lot of improper foods causing his blood sugars to be out of control. He would often refuse to take his medications. In October 2004, surgery was refused unless he was able to get his sugars under control. He remained non-compliant. In early 2005, he refused surgery twice saying he would have surgery when he was released from CDOC. He was given a hernia belt and an egg crate mattress. Claimant raises many other complaints with CDOC having to do with treatment issues and treatment he considers improper.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits

4

participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant did not have a qualifying mobility disability during his incarceration. He definitely was impaired in his ability to walk but in order to prove a disability, Claimant must show that he had a permanent impairment that substantially interfered with one or more major life activities. Claimant was suffering from a correctable condition which by its definition is not permanent. Claimant has proven this himself by having hip replacement surgery and regaining his mobility.

7. Neither was Claimant disabled because of his diabetes. The fact that Claimant has diabetes does not prove a disability. Claimant must show that because of his diabetes and complications arising from his diabetes, he is permanently impaired and that his impairment interferes with a major life activity. He has failed to do this. Rather the evidence shows that Claimant himself was non-compliant with his treatment and was causing his diabetes to be out of control. Despite this, there was no evidence presented that he has suffered any damage to his eyes or other organs. Claimant has failed in his burden of proof.

8. Claimant is also prevented from recovery because all of his complaints relate to the period from April 2004 to September 2005. The Montez remedial plan is dated August 27, 2003. The plan defines "Covered Disabilities" as follows: "The persons covered by this Plan are individuals with mobility, hearing and vision impairments and inmates with diabetes." The plan then puts into place procedures for determining disabilities and the way inmates will be placed and treated in the future. It does not give *future* inmates the right to file claims under the remedial plan. This is precisely what Claimant has done in this claim. He is claiming disability and discrimination caused by his incarceration after the remedial plan was approved. Consequently, he cannot be a member of the Montez class and his claim must be denied.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 12, 2008** with the Clerk of the United States District Court at the following address:

>901 19th Street
>Denver, CO 80294.

SIGNED this 8th day of February, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson
Special Master