IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs.-

BILL OWENS, et al.,

   Defendants.

─────────────────────────────────────────────

Claim Number: 03-308 (formerly 01-036)
Category: III
Claimant: Randy Kailey, #50247
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

─────────────────────────────────────────────

## FINAL ORDER OF SPECIAL MASTER

─────────────────────────────────────────────

THIS MATTER comes before the Special Master on the claim of Claimant Randy Kailey. The hearing was held at Sterling Correctional Facility (SCF) in Sterling, Colorado on May 30, 2007 before Richard C. Davidson, Special Master. Mr. Kailey appeared pro se. Defendants were represented by Jennifer Fox, Esq.

Claimant was called, sworn and testified. All of the documents previously submitted by Claimant were offered and admitted into evidence. The affidavit of Orville Neufeld, D.O., Defendants' Exhibit A, was offered and admitted into evidence. Also admitted were Defendants' Exhibits B-F. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to

Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-29.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF PROCEDURAL FACT

1. Claimant is one of the original plaintiffs in the *Montez* class action law suit. From the beginning, he worked closely with class counsel on the case and was led to believe that mental health issues would be one of the covered disabilities contained within the Remedial Plan. Claimant filed written objections to the proposed settlement agreement (Remedial Plan) in July, 2003. After consideration of the objections filed by various individuals, Judge Nottingham approved the Remedial Plan on August 27, 2003.

2. In early 2004, Claimant filed motions for contempt, injunctive relief and objections to various parts of the settlement agreement with the Court. On July 2, 2004, the Special Master ruled that Claimant's motions had to be ruled upon by the assigned District Judge. "The Special Masters have only the power to adjudicate damage claims, and no action can be taken on the motions that are pending in the case in chief."

3. On January 5, 2007 upon Claimant's request, the Special Master ruled that mental health disabilities could not be considered as part of the damage claim process and would have to be pursued in a separate lawsuit.

4. In April, 2007, Claimant requested a continuance of his May 30, 2007 hearing date. Again, he claimed that there were pending motions before the United States District Court relevant to his damage claims in this proceeding. The Special Master stated that upon his own inquiry he had found no pending motions before the District Court and he denied Claimant's motion to continue on May

16, 2007.

## III. FINDINGS OF FACT

1. Claimant Randy Kailey submitted a claim which was initially assigned claim number 01-036. Upon a later review by the Special Master, the claim was elevated and assigned number 03-308. The claim is premised on alleged mobility and vision impairments and a category added by Claimant entitled "mental health disability."

2. Claimant's claim was re-assigned by the Special Master to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant first entered into CDOC custody in January, 1986. Claimant has been incarcerated at a number of different facilities during his twenty-one years in custody. At the time of the hearing, he was being held at SCF in Sterling, Colorado.

4. Claimant has serious mental health issues. He has not participated in the Sex Offender Treatment Program and as a result has lost earned time credits. At the May 30, 2007 hearing, Claimant was aware that mental health issues could not be pursued through the damage claim process. He chose to proceed on his alleged claim for damages due to a mobility impairment and withdrew his claim for damages based upon an alleged vision disability.

5. As an original Plaintiff in the class action law suit, Claimant requested reimbursement for the $1,081 of his own money that he has spent in furtherance of the law suit.

6. Claimant alleges that his mobility problems arose from an incident that occurred in 2001 at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado when he was assaulted by another inmate. The record substantiates that Claimant's right knee was injured in October, 2001. An MRI at that time showed that Claimant had a medial collateral ligament tear. Claimant was given a hinged brace and was scheduled for reconstructive surgery in November, 2001 to repair the tear. However, the surgery was postponed until July, 2002, but successfully performed at that time.

7. While Claimant was still recovering from knee surgery, he applied for but was denied a job position as a "para pro." The job required standing. Claimant did not believe that the restriction was appropriate. He grieved the denial of the job. Each level of grievance was denied.

8. Claimant applied for and received other jobs including a position in the computer lab, a job working in the drafting department and working as a custodian.

9. Claimant recovered from his surgery in 2002. He ambulates without any assistive devices. He is not experiencing any pain, but his right knee is not stable and often "locks up." Claimant can walk a couple of times around the yard before he has to rest. He currently has bottom tier restrictions.

4

## IV. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(c). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Randy Kailey is not disabled due to a mobility impairment under the terms of the Remedial Plan. In order to prove a disability, it is

5

necessary for Claimant to show that he has a permanent mobility impairment. In late 2001 and 2002 Mr. Kailey was having difficulty walking due to reconstructive surgery on his right knee. He does not now and did not then have a permanent mobility disability as defined by the terms of the Remedial Plan.

8. Having failed to prove that he is permanently disabled due to a mobility impairment, Claimant is unable to prevail in this matter.

9. Claimant has sought reimbursement for money that he contributed to class counsel in the amount of $1,081. The Special Master does not have jurisdiction over that issue, and Claimant will have to seek relief from the assigned District Judge.

10. Claimant has the right pursue any claims concerning mental health issues through a separate lawsuit, as mental health issues were not resolved through the approval of the Remedial Plan.

## V. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendants and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 21, 2008** with the Clerk of the United States District Court at the following address:

        901 19th Street
        Denver, CO 80294.

SIGNED this 15th day of February, 2008.

        BY THE COURT:

        */s/ Richard C. Davidson*

        _____
        Richard C. Davidson
        Special Master