IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-004
Category III
Claimant: Randall Rust (Deceased); #62444
Address of Claimant: Betty L. Rust, as mother and heir, 5929 Benz Place, Zephyrhills, FL 33540

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER comes before the Special Master on the claim of Randall Rust (Claimant). Claimant passed away on April 27, 2005. His mother, Betty L. Rust (Mother), is pursuing the claim as the heir of Claimant.

This claim was assigned to Category III. Upon the death of Claimant, the Mother was given the opportunity to elevate the claim to Category V. She chose not to do so. Since this claim was assigned to Category III, Mother had the right to have a hearing. The Mother has requested that the claim be resolved solely on the documents in the file. Mother has indicated in correspondence that she is unable to travel. Both sides have been granted the opportunity to submit additional documents for consideration.

The claim will be resolved on the documents submitted by both sides. Further argument is waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC on March 16, 1990. Claimant was housed in various DOC facilities over the years. When he filed his claim, he was incarcerated at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

Claimant filed a claim form on April 2, 2004. He checked the boxes for mobility and vision impairments. In his claim form, Claimant stated, in part, as follows:

> Encephalopathy; 2. Cirrhosis; 3. Hep - C; 4 Chronic Hepatitis.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> By not giving me the treatment needed for me to go to work, so I can earn my good time/earn time. A handicap job will do but they will not even give me one. They will not let work. But they will let me suffer and hurt and fall out, to where I damage myself, and when I fall down they just leave me there. I have to ask for a wheelchair, and was denied. I have fear for my life. I was in a coma for 4 days. My

3

> physical condition is worsening, because of lack of medical treatment and care.
>
> There is no after care for serious medical needs, my chronic medical problems as my liver is not curable. There will be additionally paper work sent to you to also show discriminated and there conduct of medical are to me.

Claimant provided some of his medical records to the Special Master. In April, 2003, a letter was sent to Mother from a medical staff member at the Sterling Correctional Facility (SCF) in Sterling, Colorado. The letter stated as follows:

> Your son, Randall Rust, is being treated for end-stage liver disease, cirrhosis, hepatic encephalopathy, ascites, chronic low back pain, obesity, and psoriasis. He has a history of poly-substance abuse. Dr. Singh is your son's physician at SCF. Randall had appropriate treatment, testing to include labs, ultrasound x-ray, urography/tomography, and treatment. He has refused endoscopic examination to evaluate possible GI bleeding. He has been evaluated by Dr. John Bloor who is a gastroenterologist for his hepatitis.
> Randall has numerous chronic medical problems which periodically become acute. For these acute exacerbations, he is sent to the local hospital for evaluation and treatment. We continue to experience non-compliance issues with him in regard to his medication in spite of frequent counseling by Dr. Singh.
> Your son's liver disease is not curable. We will continue to provide supportive therapy, to include hospitalization and movement to an infirmary facility when his condition warrants these services.

*Letter of Judy Bullard, dated April 11, 2003*. Also included by Claimant were medical records from St. Thomas More Hospital in Canon City, Colorado. The records detail one hospitalization on December 11, 2001 in which Claimant was combative and was restrained at four points.

> In his supplemental form, Claimant stated, in part, as follows:
>
> I have trouble walking, reading and writing.

He also alleged that he had fallen twenty-seven times after passing out due to his medical condition. Attached to the supplemental form are several pages of medical records. Those records reflect that Claimant had many health conditions, including Hepatitis C, asthma, GERD, and cirrhosis of the liver. Claimant had experienced chronic liver failure up to his death. It is clear that the various health conditions that Claimant was dealing with also affected his mental faculties. One set of medical records reflected a hospitalization on December 13, 2001 at the Colorado Mental Health Institute at Pueblo, Colorado (CMHIP). Claimant had been transferred from St. Thomas More Hospital in Canon City, Colorado. Claimant had been found unconscious and then became disoriented and combative.

After the death of Claimant, Mother submitted documents in support of the claim. Mother

had secured counsel to represent Claimant in an attempt to seek a compassionate release on parole. The letter from counsel to the Parole Board reflected the significant health issues facing Claimant, several of which would be terminal.

Defendants submitted a further response to the claim. Attached to that response are several pages of Claimant's medical records.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** The Settlement Agreement does not include many of the conditions which are discussed in the medical records (Hepatitis C, GERD, etc.). Each claimed disability must be examined separately.

**Mobility Impairment**: There is evidence from the medical records that reflects that Claimant was having difficulty standing and walking. For purposes of this order, the Special Master will find that Claimant was mobility impaired on or before August 27, 2003. Claimant will be deemed to be a member of the class as mobility impaired.

**Vision Impairment**: There is no evidence that Claimant was unable to see or had a vision disability. Claimant had evaluations by optometrists and others over the years. The records reflect that Claimant had vision that was correctable to 20/20 in each eye.

In order to determine if an individual meets the requirements of the ADA and Rehabilitation Act, there must be an analysis using a three-part test. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184(2002). First, an individual must show the presence of a physical or mental impairment. Second, the individual must show that the impairment affects a "major life activity." *Id*. Third, the individual must show that the impairment "substantially limits" that major life activity. *Id.* Under the Remedial Plan, there is a further limitation to the four listed conditions (hearing, vision, mobility, and diabetes).

The activities of daily life were not affected by Claimant's vision. Claimant had more significant health issues that did affect him daily, but these were not related to any claimed vision impairment. Claimant was not vision impaired on or before August 27, 2003 and not part of the class on that basis.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Claimant had over twenty COPD convictions. These hindered his ability to gain entry into certain programs.

The biggest problem that faced Claimant was his failing health. For purposes of this order, the Special Master finds that Claimant was not disqualified from DOC programs and services due to his disciplinary record.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
The file is replete with concerns raised by Claimant and his relatives that he was not receiving proper medical care. The evidence submitted by both sides reflects that Claimant did receive a lot of medical care while in DOC custody. Mother has questioned the quality of the medical care, as did Claimant when he was alive.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant questioned the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law.

In order to establish a violation of the ADA and Rehabilitation Act, a claimant must show that he was discriminated against on the basis of a recognized disability. An example would be an individual who has lost use of his legs being placed on the third tier of a building and being forbidden to use the elevator. Another example would be the withholding of insulin for a period of time from a diabetic. Under the *Fitzgerald* decision, which is binding on the Special Masters, medical decisions must be analyzed under the Eighth Amendment. That is beyond the scope of the Settlement Agreement, unless there also is a clear cut ADA violation. That is not the case with this claim. There were repeated requests for a wheelchair by Claimant, and those request were denied for the most part. Yet, the medical records also reflect that Claimant was encouraged to keep moving and not simply give up attempting to walk. Under *Fitzgerald*, the medical decisions cannot be examined under the ADA and Rehabilitation Act.

The Special Master does not find that the evidence establishes any act of discrimination prohibited by the ADA and Rehabilitation Act concerning Claimant's mobility impairment. Medical decisions may be examined in a separate lawsuit under the Eighth Amendment. Any claim of discrimination related to conditions not covered by the Settlement Agreement (Hepatitis C, etc.) may be the subject of a separate lawsuit.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim filed by Randall Rust is denied, as Claimant and

his heir failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant's heir and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 19, 2008.**

SIGNED this 20th day of February, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master