IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-163
Category: III
Claimant: Lyle Houston, #62173
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Kyle Houston (Claimant). The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado on October 18, 2007 before Richard C. Davidson, Special Master. Claimant appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant, Orville Neufeld, D.O. and Ella Houston, Claimant's mother, were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > Is the claimant a disabled individual who is a member of the class?
> > Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Kyle Houston submitted a claim which was assigned claim number 02-869. After review, the claim was elevated and assigned claim number 03-163. The claim is premised on alleged permanent mobility, vision and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Houston first entered CDOC custody in 1990. He was paroled in 2002 but was brought back into custody in 2004. During his incarceration, Claimant has been housed at DRDC, BVCF, BCCF, SCC, CTCF, LCF, FCF, KCCC and SCF.

4. Claimant was first diagnosed with diabetes in 1989 prior to his incarceration. After he came into CDOC custody in 1990, he had problems getting proper medical care for his disease. He testified that the diagnosis of diabetes has been questioned by CDOC. He believes that his diabetes is getting worse and has caused damage to his heart, eyes and kidneys. He sometimes develops sores on his feet that do not heal. He is concerned with the future and what his medical condition will be.

5. The medical records show that Claimant has had A1c testing done. His levels range from 5.6 to 6.2. According to the report, an A1c level of 6 or below is considered a non-diabetic level. He has also had a four-hour glucose test which was normal. Dr. Neufeld testified that based upon the test results and the A1c levels, Claimant is "very borderline" for diabetes and he concludes that

Claimant is not a diabetic. Contrary to Claimant's assertions, a protein test showed that he does not have any kidney damage.

6. Claimant was injured on the job while on parole. In 2004 he had surgery to repair a hernia resulting from this injury. Upon his discharge, he was arrested. He says he was re-injured while being transported in a sheriff's van on November 29, 2004.

7. Claimant has a long history of trouble with his feet. In 1987 he had a bunionectomy on his left foot. In 1991 he suffered third degree burns to his left foot that required a skin graft. He continues to have chronic foot pain. He also has flat feet and plantar fasciitis. He has been issued arch supports for that condition. He has been allowed to wear tennis shoes and has been given sandals. He has been given padding to wear in his shoes. Claimant believes his diabetes is making his feet worse. He testified that he is able to walk and climb stairs. He is not able to run. He is bottom bunk restricted. He is able to exercise four days a week.

8. Claimant testified that his vision is blurry and that his eyes seem to be changing rapidly. He says he is not able to get new glasses. He can read if the print is close to him. He says he got new glasses in February, 2006 but that they were broken while being adjusted. The medical records and testimony shows that he has corrected vision of 20/20 in both eyes and has been able to be corrected to 20/20 for several years.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶

4

III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant has some impairment to his feet. However, in order to prove that he is mobility disabled and thus a member of the Montez class, Claimant must prove that because of his impairment, he is substantially limited in one or more major life activities, such as walking. This Claimant has failed to do. Claimant admits that he can walk and climb stairs. His limitation is that he is unable to run. Unfortunately, the evidence is simply insufficient to show that Claimant is mobility impaired.

7. Likewise, the evidence is insufficient to prove that he is disabled because of his diabetes or his vision. It is disputed whether he even has diabetes. He suffers no limitations because of the disease. His vision is corrected to 20/20 and has been able to be corrected to that level for several years. Because of the lack of evidence as to any substantial limitations on major life activities, the Special Master concludes that Claimant is not disabled in any way, mobility, vision or because of diabetes.

8. Since Claimant has failed to prove any disability, he is not a member of the Montez class. No further discussion is required. It should be noted, however, that Claimant is most disturbed by what he perceives as a lack of proper medical care. As is discussed in paragraph 5 above, this issue is not part of the Montez case. Should Claimant believe he has a valid medical malpractice case, he must seek relief in another forum.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 27, 2008** with the Clerk of the United States District Court at the following address:

>  901 19th Street
>  Denver, CO 80294.

SIGNED this 29th day of February, 2008.

>  BY THE COURT:
>
>  /s/ Richard C. Davidson
>  _____
>  Richard C. Davidson
>  Special Master