IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-236
Category III
Claimant: Charles R. Workman, #42066
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, Colorado 81038-1000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on February 14, 2008. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Charles R. Workman (Claimant) and Willow Arnold, attorney for Defendants.

Claimant testified in support of his claim. Claimant offered Exhibits #1 through #6, and all were admitted. Defendants presented as a witness Dr. Orville Neufeld, D.O. and offered into evidence Exhibits A through S. All were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant came into DOC custody on January 24, 1977. He was discharged from this sentence on April 28, 1990. Claimant returned to DOC custody on September 7, 1993. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado on October 6, 1993. On January 25, 2000, Claimant was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He remained there until being transferred to FLCF on April 17, 2007. He since has remained at FLCF.

In the initial claim form, Claimant checked the boxes for mobility impaired and vision impaired. Claimant stated, in part, as follows in his initial claim form:

I am a 61 year old man who is somewhat senile. I have degenerative arthritis in my back, hips and knees and I suffer daily from chronic pain in my back, hips, abdominal and groin area. Also sometimes my knee, ankles and top arch of my feet become swollen and it is so painful that I can barely walk.
I have Hepatitis "C" and I believe, but am not sure that this is what has been causing my chronic abdominal and groin pains as well as the severe leg and foot cramps I often have during the night. I have tendinitis, which sends shooting pains up my arms and across my shoulders. Sometimes it is so bad that I cannot use my

3

arm for a few seconds. I have spent many sleepless nights because of the pain.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I went to work at the Garment factory on May 1, 2000. At the time promises were made to me regarding earnings and commissions. Between May, 2000 and May 15, 2002 the shop rules were revised about eleven times, allowing staff to lengthen my work day, cut my earnings and commissions and set outrageous quotas for some and no quotas for others. Some of the these quotas were so high that most of the inmates could not make them unless they never went to the bathroom or took their 15 minute break, or stopped working for any reason. When I complained I was told "If I did not like it go get another job."......

Claimant was sent a supplemental form to complete and return. In his supplemental form on mobility, Claimant stated as follows:

> I have degenerative arthritis in my back, hips, knees and other extremities. Some days, especially when the weather changes, I am in a great deal of pain and can barely walk. The pain is constant, but some days it is much worse.

In the supplemental form for vision impairment, Claimant stated, in part, as follows:

> I do not know what the problem is. Sometimes my vision just becomes all blurry and I can't see anything. This can last up to a minute or more.
> Working on a sewing machine without your vision can be dangerous. However, a one minute break can cause you to fail making outrageous quota and failing to make outrageous quotas is grounds to be terminated.

Claimant also submitted several grievances that he had filed concerning his situation and his termination from the garment factory.

In March, 2007, Claimant sent a letter to the Special Masters indicating that he was not receiving proper medical care. He stated in the letter that he had several chronic and serious health conditions: arthritis; Hepatitis C; a hernia; dry eyes; skin infection and high cholesterol. He objected to the co-pay charged when he was able to see someone at medical.

At the hearing, Claimant testified that he had secured a job at the garment factory at LCF. Claimant was required to sign a contract and was advised concerning rules that had to be followed. The job paid more than other positions he had while in DOC custody. Claimant was advised that unexcused absences would lead to a loss of the job.

Claimant testified that he had no absences that were not excused from 2000 to 2003. He received his pay every month and was able to make quotas. He then described what he believed was

harassment by supervisors. He was promoted to a supervisory position and began to advise other inmates on how to do the work. He testified that he thought everything was back to normal but was fired for no reason. He was told later that he was terminated for excessive absences. He filed grievances objecting to his termination, but to no avail. Claimant further believed that it was wrongful to terminate him from the garment factory as he was sick.

Claimant testified that he tried to find other work but had physical limitations. He stated that he cannot work in a kitchen because of those limitations. He discussed other medical concerns that he had and felt little was done to try to treat him.

Claimant also testified that he had sought medical care for his vision. He experiences blurry eyesight for a period of time. He does not know what causes the blurring, and no one in the DOC medical department has been able to help him.

On cross-examination, Claimant testified that he wears glasses at the present time. He prepared his own claim form and did the typing of it. In response to a question, he stated that he does not exercise at the present.

Defendants presented the testimony of Dr. Orville Neufeld, D.O. According to Dr. Neufeld, the medical records reflect that Claimant has degenerative joint disease in the knee. Claimant also has plantar fasciitis and degenerative disk disease. Dr. Neufeld also noted that his vision is correctable to 20/20 in both eyes, and there is no evidence of cataracts or diabetes.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he has two disabilities. Each will be taken separately,

**Vision Impairment**: Claimant has alleged that he has periodic blurring in his eyes. He does not know what causes the problem, and the blurring will last for a few seconds.

The evidence reflects that Claimant has vision that is correctable to 20/20. Nowhere in the submitted medical records is there any insight as to what has caused the blurring. *Exhibit E thru G*. It appears that this condition is periodic, with no indication as to what triggers the blurring.

The ADA and Rehabilitation Act require proof that a major life activity has been affected by a disability. *42 U.S.C. §12102(2)*. "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *20 C.F.R. §1630.2(h)(2)(I)*. In addition, the Settlement Agreement provides as follows:

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.

The evidence submitted by both sides indicates that the eye condition is transitory. Activities of daily life are not affected, except during the blurring. There is no substantial impairment of any activity of daily life.

In the past, this Special Master has ruled that a claimant must show almost blindness before being considered as vision impaired. The evidence in this case establishes no such condition. In addition, Claimant's condition does not substantially impair his activities of daily living. Claimant is not vision impaired and is not a member of the class as vision impaired.

**Mobility Impaired:** Claimant's main complaint is that he lost the sewing job at LCF. He maintains that he was discharged in violation of the ADA and Rehabilitation Act, as he was experiencing health problems. Claimant's records reflect that he last worked in the garment factory at LCF on February 3, 2004. *Exhibit D.* It was on that date that he lost his position at the factory.

The question that must be asked first is whether Claimant was mobility impaired on or before August 27, 2003. Claimant has had back issues for years. *Exhibit K.* Those back problems did not prevent him from applying for and accepting a position at the garment factory. His physical condition has not prevented him from walking or otherwise carrying on activities of daily life. There is insufficient evidence to show that Claimant's mobility issues rose to the level of a disability. He was able to carry on his activities of daily life on and before August 27, 2003. Claimant is not a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must show that he was treated differently than a non-handicapped individual.

Claimant's main concern is the loss of the job in the garment factory. That appears to have occurred after August 27, 2003. There is no evidence that an act of discrimination took place prior to that date that violated the ADA and Rehabilitation Act.

Claimant does disagree with the nature of the medical care that he has received. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. Because of

the holding in *Fitzgerald*, the Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant. Eighth Amendment claims may not be pursued through the claim process.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Charles Workman is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 27, 2008.**

SIGNED this 29th day of February, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master