IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-356
Category: III
Claimant: Justin M. Goetz, #114949
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Justin Goetz (Claimant). The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado on October 18, 2007 before Richard C. Davidson, Special Master. Claimant appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant, Orville Neufeld, D.O. and Case Manager Curtis Deal were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

> The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > Is the claimant a disabled individual who is a member of the class?
> > Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Justin M. Goetz submitted a claim which was assigned claim number 02-867. After review, the claim was elevated and assigned claim number 03-356. The claim is premised on an alleged permanent diabetic disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Goetz first entered CDOC custody in 2002. Claimant has been housed at DRDC, FCF, AVCF, CTCF, FMCC and SCF.

4. Claimant is a diabetic. He was first diagnosed with diabetes in 1982. Prior to his incarceration, his blood sugar levels were under control. After his incarceration in 2002, his sugar levels were not well controlled, having gone over 500. Claimant testified that he had problems obtaining his insulin and getting the correct dosages. Claimant testified that he suffers from diabetic neuropathy in his hands, feet and stomach, with the stomach being the worst. His feet have pain and numbness and are "bothersome." He has trouble sleeping because of this. He does not have diabetic retinopathy.

5. Claimant is able to work although he was turned down for work in the metal shop at FCF. He has asked for other jobs but has been refused. There is no evidence that this was caused by his diabetes. He says that his medical code has been used as the basis for moving him among facilities. He says he is not being properly housed at SCF and is in a higher security level than he should be.

3

6. Claimant is able to engage in sports and exercise. He says he exercises every day, plays handball, walks and jogs. He complains because sometimes he was forced to choose between yard time or going to medical at CTCF and AVCF because of scheduling conflicts. There is no evidence that this was deliberate or based upon his being a diabetic.

7. The medical testimony and records show that Claimant's diabetes is under "fairly good control." His A1c levels have fluctuated from a high of 10.3 to a low of 7.4. His A1c normally is in the range of 8.6 to 9.2. He has been tested for vision problems and has corrected vision of 20/20 in both eyes. There is no evidence of diabetic retinopathy. The records confirm neuropathy in his feet. The records also show that he has been inconsistent in his compliance, skipping shots and eating from the canteen.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master concludes that Claimant does suffer from diabetes and that there is a history of his diabetes not being well controlled. He is insulin dependent. However, to prove that he is a member of the Montez class, Claimant must show that his diabetes substantially limits one or more of his major life activities. Claimant has failed to make this showing of proof. The evidence shows that Claimant is independent in his activities of daily living. He is able to work, can walk and exercise. While he does have some neuropathy in his feet, this does not limit his activities. Because of this, the Special Master concludes that Claimant is not a member of the Montez class and is not entitled to recover in this action.

7. It should also be noted that much of what Claimant is complaining about took place after the Montez remedial plan was approved. The plan was approved on August 27, 2003. Most of Claimant's allegations relate to occurrences after that date. Because of this, much of his claim is untimely. In addition, most of Claimant's complaints concern the quality of his medical care. This issue is not part of this case as stated in paragraph 5 above.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 27, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 29th day of February, 2008.

> BY THE COURT:
>
> /s/ Richard C. Davidson
> _____
> Richard C. Davidson,

Special Master