IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

　　Plaintiffs,

-vs.-

BILL OWENS, et al.,

　　Defendants.

---

Claim Number: 03-398
Category: III
Claimant: Donald Penrod, #76672
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

　　THIS MATTER comes before the Special Master on the claim of Donald Penrod (Claimant). The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado on October 18, 2008 before Richard C. Davidson, Special Master. Claimant appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant and Orville Neufeld, D.O., were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

　　This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

　　On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

> The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > Is the claimant a disabled individual who is a member of the class?
> > Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Donald Penrod submitted a claim which was assigned claim number 03-398. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Penrod first entered CDOC custody in 1977. He was paroled in 1987 but returned to CDOC custody in 1991. Claimant has been housed at DRDC, BVCF, FCF, CTCF, LCF, CCF, AVCF, FLCF, and SCF.

4. Claimant suffers from congenital spinal stenosis in his cervical and lumbar spine. Claimant injured his low back in 1995 while lifting weights at AVCF. In 1996 he was diagnosed with osteoarthritis, spurs in his back and a herniated disc at L4-5 protruding to the left. There was some encroachment on the thecal sac, as well as partial impingement on the neural foramina at that level on the left. He was also suffering from lumbar radiculopathy. In 1998 he was scheduled for surgery but failed to appear. In May 1999, Claimant was diagnosed with "severe degenerative disc disease throughout the cervical spine with foraminal stenosis and spinal stenosis at nearly every level." His low back was diagnosed as "Congenital spinal stenosis with facet degenerative joint disease throughout the lumbar spine."

5. On October 13, 2000, Claimant had cervical decompression of C4, C5 and C6 and foraminotomies of C3-4, C4-5, C5-6 and C6-7. He had some post surgery complications when his

drain was accidentally pulled out and had to have an emergency evacuation of an epidural hematoma. The records show that he recovered quickly. It appears that no cervical fusion was performed. He has not had lumbar surgery.

6. At the present time, Claimant complains of pain in his back and radiating down his left leg. He also has numbness and pain in his right hand. He says he cannot work because he is unable to sit or stand for more than 20 to 30 minutes at a time. He also suffers from loss of bowel control and must wear diapers. He is able to walk and climb stairs, although it causes him pain. He wants to have surgery on his back and neck and to go to a pain clinic.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the

ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant is an impaired person by reason of his neck and back problems. However, in order to qualify as a member of the Montez class, it must be proven that he is mobility impaired, that the impairment is permanent and that it substantially interferes with one or more of his major life activities, such as walking. Claimant has failed to prove that he has a mobility impairment. He has a very bad neck and a very bad back. But he is still able to walk and climb stairs and to perform his activities of daily living. Because of this failure, Claimant does not qualify as a member of the Montez class and is unable to recover in this action.

7. It appears that Claimant is primarily concerned with the medical care he has received from CDOC. It should be noted that claims of inadequate or improper medical care are not part of this case as is indicated in paragraph 5 above.

8. Because Claimant has failed to prove that he qualifies as a member of the Montez class, no further discussion is required.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 27, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 29th day of February, 2008.

> BY THE COURT:
>
> /s/ Richard C. Davidson
> _____
> Richard C. Davidson,
> Special Master