IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-420
Category: III
Claimant: Santos Romero, #48563
Address of Claimant: KCCC, 49777 County Road V, P.O. Box 309, Burlington, CO 80807

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Santos Romero (Claimant). The hearing was held at the Kit Carson Correctional Center (KCCC) in Burlington, Colorado on October 17, 2007, before Richard C. Davidson, Special Master. Claimant appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant and Orville Neufeld were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

DEFINITIONS

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

The Special Masters shall evaluate individual damage claims
submitted in this case by considering the following questions:

Is the claimant a disabled individual who is a member
of the class?
Was the claimant otherwise qualified to participate in
the programs or receive the benefits or services offered by
DOC?
Was the claimant discriminated against by DOC because
of his or her disability? (e.g., were accommodations requested
and denied because of the disability?)
Did this conduct cause the claimant harm and if so, what is
an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special
Masters. A claimant must establish by a preponderance of the evidence each of the above four
criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Santos Romero submitted a claim which was assigned claim number 02-332.
After review, the claim was elevated and assigned claim number 03-420. The claim is premised on
an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth
above.

3. Claimant Romero first entered CDOC custody in 1982. Claimant has been housed at CCF,
SMCF, CTCF, AVCF, CCCF, SCCF, SCF and KCCC.

4. Claimant was injured in an automobile accident in 1970. His foot and ankle were injured
in the accident. Subsequently, he had surgery on his left foot, leaving him with a painful scar on the
top of the foot. He has suffered from back pain ever since the accident in 1970. In about 1980 he
began to suffer neck pain. He also has pain in his elbow and bilateral carpal tunnel pain. While in
CDOC custody in October 2003, he developed sciatic pain that starts in his foot and runs up the side
of his leg into his buttocks. He is able to walk and climb stairs but cannot stand too long. He says
bending over helps relieve the pain. He testified that he walks with a stiff left foot. He has scoliosis
in his back.

5. In 1992, CDOC issued him orthopedic shoes to aid in his mobility. He testified that he
has had difficulty keeping his shoes as he has been moved to various facilities. At this time he wears
a softer and looser boot, similar to a desert boot, with a pad over the top of his left foot.

6. He has received accommodations from CDOC for his problems. After filing a grievance he was given a bottom bunk restriction. He now has a double mattress and a chair in his cell. He has been given a heel lift and wears tennis shoes he purchased from the canteen. He has requested a cane but that has been refused. He has been able to work the entire time he has been in CDOC.

## III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Phillip Carter is not mobility disabled under the terms of the remedial plan.  He is able to walk and climb stairs and to work. While he is impaired from his foot injury and degeneration and from his degenerating back, he has not shown that these problems substantially limit any of his major life activities.  Without this proof, his impairment does not reach the level of a disability.  Claimant has failed to prove that he is a member of the Montez class.

7. Having failed to prove that he is a member of the Montez class, it is not necessary to consider whether Claimant has been discriminated against by CDOC.  However, other than the issue of having his orthopedic shoes taken, it does appear that CDOC has accommodated his increasing needs.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 27, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 29th day of February, 2008.

BY THE COURT:

/s/ Richard C. Davidson

Richard C. Davidson
Special Master