IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No.96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-435
Category III
Claimant: Thomas E. Girardin, #57089
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 21, 2008. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Thomas E. Girardin (Claimant) and Willow Arnold, attorney for Defendants.

Claimant called the following witnesses in support of his case: Claimant and Dr. Paula Frantz, M.D. Claimant did not offer any exhibits during the hearing. Defendants presented as a witness Dr. Frantz and offered into evidence Exhibits A through U. All were admitted. The Special Master indicated that all documents previously submitted would be accepted and considered in resolving this claim. Final arguments were received by the Special Master. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections. The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge

Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they may exercise only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on September 3, 1987. He was incarcerated first at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He then was placed at the Arkansas Valley Correctional Facility (AVCF) in Canon City, Colorado on September 21, 1987. He remained at AVCF until he was transferred to a Texas facility on September 16, 1996. He returned to Colorado on December 4, 1997 and was placed at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. He was transferred to SCF on June 20, 2000 and has remained at that facility since that date.

In the initial claim form, Claimant checked the box for mobility impaired. Claimant stated, in part, as follows in his initial claim form:

> 1) Severe Plantar Fasciitis - permanent condition/affects my ability to walk properly/Dept. of Corrections refuses to operate or provide a continuous treatment plan. 2) Compressed disc between C4 & C5/Permanent condition/Dept. of Corrections refuses to operate or provide a continuous treatment plan/causing severe pinched nerves in my neck and shoulders. (Feels like someone in putting a cigarette out on my shoulders).

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part,

as follows:

> The medical dept. at this facility failed to provide treatment plans and/or operations to repair my conditions. They also forgot to schedule me for appointments to orth-surgeon and podiatrist after receiving authorization to do so because of their negligence. The medical department continues to show a pattern of negligence, which is documented, that they are having a hard time of providing the proper medical staff to come into the facility to give treatment at an acceptable level.

Claimant was sent a supplemental form to complete and return. In his supplemental form on mobility, Claimant stated as follows:

> Plantar Fasciitis: Limits my ability to walk very far or for long periods. Also cannot stand for long periods or feet will cramp up. Compressed vertebrae - (between C4 & C5): continuous pain in neck and shoulders. Shoulders feel like they are on fire due to pinched nerve feeling. Cannot lift over 10 lbs.

Claimant stated further:

> Failed to provide special shoes since I am considered indigent and cannot afford them myself. And the Dept. of Corrections refuses to pay for the operations to repair the damage. Will continuously and progressively get worse.

Claimant later submitted medical records from various visits to medical staff over the years. Claimant was seen by Dr. Dallagge, D.P.M. in 2003. Dr. Dallegge determined that Claimant was suffering from plantar Fasciitis. Dr. Dallegge provided injections to the heels of Claimant and then noted that "[w]ould not consider him a surgical candidate unless he was approved for custom orthotics."

Claimant was seen in February, 2004 at the spine clinic at Denver Health. He was diagnosed with degenerative disk disease. This referral came after Claimant had fallen on his back in March, 2003. The notes from the examination indicate that Claimant had full range of motion and that x-rays revealed no major problem. Claimant was diagnosed as having degenerative disk disease (DDD) and cervical spondylosis.

Defendants filed a response to the claim, as it was originally assigned to Category II. Attached to the response are several pages of medical and other records concerning Claimant. They reflect that Claimant does have DDD in his neck, as well as plantar fasciitis.

Claimant filed a reply to the response of Defendants. In that reply, Claimant presented information concerning his physical conditions. Claimant argued that his rights have been violated under the Eighth Amendment. He stated in his reply that he believes that there has been a deliberate disregard to his physical condition. "Deliberate indifference exists when the defendant knows of and disregards an excessive risk to the plaintiff's health." *Reply at p.10.*

4

At the hearing, Claimant testified concerning his physical conditions over the years. He discussed the treatments he has received for his feet, including the cortisone injections that were prescribed by Dr. Dallegge. Claimant testified that he was requesting surgery on his feet and neck in order to end the pain that he has experienced. He also commented that the medical co-pay for treatment in DOC "just does me in." He is indigent and cannot afford the co-pays when he visits medical at SCF.

Dr. Paula Frantz, M.D. testified that Claimant does have DDD and plantar fasciitis. She noted that Claimant had been seen by Dr. Dallegge and the spine clinic at Denver Health. For a period of time, Claimant was on crutches to help ease the pain in his feet. Dr. Frantz did not believe that orthotics would help in the long run and that surgery was not going to guarantee relief from the pain in the feet. She further testified that surgery on the neck would have to be an absolute last resort in light of the possible consequences from such surgery.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must establish that he was disabled on or before August 27, 2003. He must establish further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The ADA and Rehabilitation Act require proof that a major life activity has been affected by a disability. *42 U.S.C. §12102(2)*. "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *20 C.F.R. §1630.2(h)(2)(I)*.

The Settlement Agreement requires that a claimant prove that he was disabled on or before August 27, 2003. If such a showing is made, then an amendment of the claim may be made to show that the disability has continued past that date.

In this case, the evidence establishes that Claimant was placed on crutches and given a medical lay-in so he could remain off of his feet. It is clear that for a period of time stretching over several months Claimant's ability to walk was severely limited. The Special Master finds that Claimant was mobility impaired on or before August 27, 2003 and is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence has been presented that Claimant was unqualified for programs and services due to disciplinary or other problems. The record reflects that Claimant has never had a disciplinary conviction during his time in DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In order to prevail on his claim, Claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must show

5

that he was treated differently than a non-handicapped individual.

The problem facing Claimant is fairly basic. He is in constant pain both in his neck and shoulders and in both feet. Claimant has stated that he believes that the discrimination against him has been the denial of surgeries to his ease his constant pain. He believes that his rights under the Eighth Amendment have been violated by the denial of proper care.

There is no question that he has received some care while in DOC custody. Claimant disagrees with the nature of the care and that his pain continues. The Special Master specifically finds that Claimant does have chronic pain both in his neck and feet. The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant is alleging inadequate or improper medical care, he must pursue a separate action under the Eighth Amendment. Because of the holding in *Fitzgerald*, the Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant. Eighth Amendment claims may not be pursued through the claim process.

The Special Master understands what Claimant is going through. He is in pain and would like to get some relief. The problem is that disagreements in the type of medical care to be provided do not rise to level of discrimination under the ADA and Rehabilitation Act. The evidence in this case reflects a disagreement concerning the care to be provided. Dr. Frantz has testified that a decision has been made to treat Claimant's conditions conservatively, especially concerning his neck pain. There was nothing outrageous in her testimony, but it contradicts Claimant's desire to have surgery. Reasonable differences of opinion in medical care do not rise to the level of an ADA violation. Reasonable differences of medical opinion do not rise to the level of an Eighth Amendment violation.

Under the *Fitzgerald* decision, this Special Master has no jurisdiction to determine any issues concerning the quality of care provided to Claimant. Claimant has not proven any discrimination under the ADA and Rehabilitation Act that may acted upon by the Special Master.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Thomas E. Girardin is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 27, 2008.**

SIGNED this 3rd day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master