IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-437
Category III
Claimant: John Hammonds, #53767
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master for hearing on February 28, 2008. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado. Present were the following: John Hammonds (Claimant); and Willow Arnold, attorney for Defendants.

Claimant testified on his own behalf. Defendants called Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A thru Q, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

      2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
            1. Is the claimant a disabled individual who is a member of the class?
            2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
            3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
            4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on September 30, 1985. Claimant discharged that sentence on September 9, 1987. Claimant returned to DOC custody on February 26, 1993. He was placed initially at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. He then was transferred to LCF on April 22, 1993.

Claimant remained at LCF until April 8, 1997 when he was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado. He was transferred to the Arkansas Valley Correctional Facility (AVCF) in Ordway, Colorado on May 24, 2004. He remained there until being returned to LCF on November 6, 2007.

In his initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows:

      As a diabetic I am extremely susceptible to all diseases and infections. I must constantly watch what I eat, to control my blood sugar levels. To prevent dizziness, nausea, fatigue, becoming unconscious etc....I must wear proper footwear and clothing including but not limited to, shoes as well as socks...

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated

as follows:

> I am forced to pay for medical treatment. Unlike other inmates with on going medical issues, diabetics must pay for all consultations, any finger sticks to check blood sugar levels even when they are experiencing extremely high or low sugar levels including any and all symptoms. Diabetics are not given the proper clothing or footwear as required and recommended by the American Diabetes Association. We are forced to pay for these items, which are mandatory medical necessities. Because the vast majority of inmates make under $10.00 a month this is impossible to do. Which staff is only too well aware of.
> Medical has insulin line at the same time as recreational yard is scheduled. We are told we can either have insulin or go to yard/gym. To choose one or the other.
> Diet trays are not the proper amount nor prepared right. Not get items listed as juice, fruit (or it spoiled rotten), snacks are composed to stale bread rotten meat.
> I was threatened with losing my job because the schedule called for me to get insulin and finger sticks during work hours. They said that were not going to allow me to go to medical from work area......

Claimant was provided a supplemental form to complete and file. He did return the form. He stated that he was having trouble with his feet due to improper footwear. Claimant attached to this form several pages of grievances that he had filed and medical records. One of the documents was a report prepared by Dr. Ralph Wentz, D.P.M. which indicated that Claimant was having trouble with his feet and needed more appropriate shoes.

At the hearing, Claimant testified that he was first diagnosed as having diabetes in 2002 while at CCF. Claimant was provided insulin initially and then began taking oral medications. Claimant testified that he had observed others who were diabetic and determined that he would not end up in the same condition as those individuals. Claimant began exercising and dieting. He was able to lose 78 pounds and began to carefully watch his diet. He continued to exercise and generally take care of himself. As a result, Claimant was able to terminate all drug usage and still maintain his blood/sugar levels. He has become hypoglycemic and now receive snacks to keep his blood/sugar levels up.

Claimant testified that when he was suffering from diabetes he began to experience in-grown toenails that would not heal. He did purchase some of his own shoes that helped generally with his feet. He was able to end medicine use in 2004. He testified that at CCF the medical line was at the same time as recreation, and a diabetic had to select one over the other.

On cross-examination, Claimant testified that he had trouble with his vision in 2000 and went to medical. He was told that he was a borderline diabetic. He still experiences some problems with his eyes. Claimant testified that there were three medical lines per day, but that he had difficulties getting his medicines due to his work.

Defendants called Dr. Neufeld as an expert witness. He testified that Claimant had been

diabetic for several years but had been able to lose weight and control his blood/sugar levels with diet. Dr. Neufeld questioned whether the original diagnosis of diabetes was correct. Claimant has hypoglycemia at the present time.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim.

This claim presents some unusual aspects to it. Claimant has established that he was diagnosed as having diabetes while at CCF. Claimant did not recall the exact date of his diagnosis, but it appears to have been in 2001. Claimant was placed on insulin and then oral medications (Glucophage, Glucovance). Claimant was taken off insulin after a short period of time. Through his own efforts, Claimant was able to lose weight and exercise control over his diet. Claimant ceased to be a diabetic in 2004. His present condition is hypoglycemia, but the Special Master has no jurisdiction over that condition as it was not one of the four conditions set forth in the Settlement Agreement.

As Claimant noted, he was treated by DOC as having diabetes for a period of years and then the diagnosis was switched. Defendants have suggested that there may have been an improper diagnosis in the first place, but that does not appear to be the case. More importantly, Claimant was treated as being diabetic and, as will be shown, subjected to some discrimination.

The Special Master finds that Claimant was diabetic for a period of time and treated as such. The diabetes affected Claimant's daily activities due to the need to obtain his medications and affected his ability to walk. Claimant is a member of the class as diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** A claimant must prove by a preponderance of the evidence that he was subjected to discriminatory conduct on or before August 27, 2003. This discrimination must be based on a claimant's recognized disability, not on other factors such as race, age, etc. An example would be placement of a wheelchair-bound inmate on the third floor of a building with no working elevators.

Claimant established two areas of discrimination by DOC and its staff. The first is that at

CCF a diabetic had a choice between going to recreation or going to the medical line for finger sticks and medicine. Individuals without diabetes were able to go to recreation and not have to worry about their health. Diabetics had to make a choice which is exactly what the ADA is supposed to prevent. While he was diagnosed as being diabetic and while at CCF, Claimant faced the same choices as other diabetics. This was a violation of the ADA and Rehabilitation Act.

The second area involves shoes that were requested. DOC had Claimant see two podiatrists and both found Claimant had significant problems with his feet and toenails. These problems predated the diagnosis of diabetes. The problems were only exacerbated by the diabetes. Claimant was concerned about his health and his feet not creating problems due to his diabetes. The medical reports on file in this claim reflected a determination that soft sided shoes were important and necessary. Claimant was faced again with a choice of having to buy these shoes from the canteen and have better health of his feet or not spend the money and take his chances. This choice was improper and violated the ADA and Rehabilitation Act.

The Special Master would note that this claim only relates to a finite period of time. Claimant is not diabetic at this time and has not been since 2004. What has occurred since 2004 is irrelevant to this claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has established that he was the victim of discrimination during the time he was diagnosed as having diabetes. He is entitled to damages in the amount of $250.00.

IT IS HEREBY ORDERED that the claim of John Hammonds is granted, in part, as set forth herein, and Claimant is awarded damages in the amount of $250.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 27, 2008.**

SIGNED this 5th day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master