UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLRADO

Civil Action No 92-N-470 (OES) Consolidate with Cio. Act No 96-N-343

Jesse Montez et al.,
     Plaintiffs,

          vs.

Bill Owens et al.,
Defendants

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 07 2008

GREGORY C. LANGHAM
                    CLERK

Claim No. 03-088
Category III
Claimant  Patrick O'Boyle #83672
Address of Claimant  FCF POB 999 Canon City, Col. 81215

Objection To Final ORDER of Special Master

     This matter resulting in this formal object-
ion came before the Special Master R.C Dav-
idson on the claim(s) of Patrick O'Boyle #83672
Claim No. 03-088. The Hearing was held at the
Fremont Correctional Facility September 10,
2007 Complainant P. O'Boyle appeared pro se.
Defendants were represented by R.C. Huss Esq.
The Claimant and Orville Newfield D.O. were
called to testify. To make note, Claimant O'Boyle
contacted the diagnosing doctors by mail
to request that they testify concerning his
degenerative joint desease but they did not
respond to his attempts. The claimant
was obstructed from any other contact

with the diagnosing specialists due to his incarceration and indigency.

The Special Master, R.C. Davidson, alleges that he reviewed all testimony <u>and all documents filed</u> by both sides. To make important note - the Special Master <u>does not</u> state he reviewed all the exhibits A1-A30 which are critical to the complainant's claim/issue.

This formal objection is an objection to Special Master's seemingly, intentional fabrications, embellishments & facts unsupported in record that are contained in his finding of fact and conclusions of law that resulted in the Special Master's wrongful, discriminatory, arbitrary and capricious dismissal of Claimant O'Boyle's irrefutably meritorious claim(s).

## I

## BACKROUND

The Claimant will refer the reviewer of this formal Objection to page 1 through page 3 of the Final Order generated by Special Master Davidson for the backround details of the Montez case but will note the following information on page 2 and 3 of the Final Order for reference.

Section III of the Remedial Plan provides the following definitions. (and information)

A Covered Disabilities

The persons covered by this plan are individuals with mobility ... impairments.

B Qualified Inmates

Inmate's with permanent disability/impairment(s) which <u>substantially limit</u> <u>his ability to perform major activities</u>(To be reasonably included here - without pain discomfort, suffering and intesifying the medical+physical condition)

<u>C</u> Permanent Disability/Impairment

A condition which is not expected to improve within six months. (In the case at hand, my progressive degenerative joint disease) (See all exhibits for details)

The Special Master shall evaluate individual damage claims by considering the following questions:

1) Is the claimant a disabled individual who is a member of the class (In this case, YES, Class/Category III Please note medical Restrictions Exh. A -highlighted)

2) Was the claimant otherwise qualified to participate in programs or recieve benifit on services offered by CDOC? (Answer YES - he is an inmate who is incarcerated with professionally diagnosed physical impairment. See All Exhibits this Filing)

3

3) Was the claimant discriminated against by CDOC because of his disability? (e.g. were accommodations requested and denied because of the disability?) (Answer YES - he is not allowed to participate in vocational training programs due to the fact his medical restrictions will not allow him in shop training atmosphere/situations) (See Exh. A)

4) Did this conduct by CDOC cause the claimant harm and if so, what was the appropriate Remedy? YES-Denied Programs

This Order (above) controls the Adjudication of all claims and must be followed by the Special Master. A claimant most establish by perponderance of the evidence each of the above four criteria.

## II

### Summary of Complaint

The core issue is that complainant O'Boyle is being denied available vocational training programs due to correctable medical condition (Programs i.e. vocational welding, machine shop training, Furniture Shop training, Building trades carpentry etc.)

The correction of the medical condition is surgery or podiatric footwear so that the complainant can participate

in the shop training atmosphere.

To Note - Please listen to an review the tape of the hearing held September 10, 2007, Fremont Correctional Facility

### Statement of Facts

Pursuant to the four Montez criteria listed above the complainant asserts as follows:

i) The claimant is disabled by severe degenerative joint disease that, at this time, is most prevalent in his large toe(s) joints. Chronological Order

a) Exh A - Query Medical Information no standing over 40 min then 2hr sitdown

b) Exh B - 1/18/95 - Dr. Podiatric Medicine (DPM) J. Gremillion - patient suffers [A.] severe degenerative joint disease ..., recommend athletic type shoes ..., if pain continues ... perform arthroplasty procedures (surgical intervention - recommended 14 yrs ago)

Exh C) 1/9/98 - X Rays - show quite significant degenerative arthritis of MP joint ... one could consider keller procedure with cheilectomy - remove spurs  Dr. P. Iverson, Medical Centers Willmar - Willmar Minn.

d) Exh D  2/14/00 Dr H. Krieger DPM Podiatric Progress Note - ... Patient presents with constant pain in both great toe joints. This problem has been present for 6 years

5

...Treatment plan — He was told shoes were his responsibility ... surgical correction seems to be most appropriate option ... soft shoe ... could serve to increase comfort given his deformity but, ultimately, the joints are degenerated and will require some form of Replacement

Exh E   3/13/00  Dr H Krieger DPM — There is severe degenerative joint disease present in both 1st MPJ's. The joint is painful to manipulation and there is obvious difficulty in shoes — prefers more functional implant as was offered as an option

Also please Review State exhibits 3, , A1, A2, A5, A8, A16, A11, A15, A21. It should be noted that surgical correction was recommended 14 years ago

Most important to note that starting in 2003 the complainant has been Refused access to a Podiatric doctor with the CDOC claim that they no longer contract with this kind of specialist (deliberate deception) so the ongoing degenerative medical/physical condition has not been diagnosed as to it's increasing severity for five years. The complainant states as seen in fact that the painful condit-

6

ion has expanded and worsened so that there is an increase in limitation of the complainants mobility and his ability to perform major life activities

The above facts as stated by professional medical specialists clearly establish the serious degenerative medical physical impairment that severely limits the complainants mobility. The specialists all recommend surgical intervention or special podiatric shoes to help and assist the complainants ability to perform daily functions i.e. CDOC vocational training programs.

As can be seen in the medical restrictions listed (Exh. A) the complainants ability to participate in vocational programs is obstructed. His case manager will not put him in for the training programs due to the medical restrictions. He cannot participate in the training available.

Therefore the claimant states that the accommodations requested, special podiatric shoes, are a reasonable request if the preferred surgery is not available. This accommodation

7

has been refused.

The complainant avers that it cannot be contested that the treatable and correctable medical condition is irretrievably intertwined with the denial of vocational training programs that CDOC is obligated to offer Mr. O'Boyle for his rehabilitation.

Further the complainant's participation in the available vocational training programs is an essential component of an inmates preperation to meaningfully re-enter society. Also a material part of mental preperation to re-enter a community living situation.

The core of the complaint is described above, with the supporting diagnosis by professional doctors, surely establish the history of and existance of the mobility impairment and CDOC's failure to accommodate a legitament complaint.

Returning to paragraphs 2, 3 and 4 on page three (3) of the Final Order of the Special Master, I refer to specific misinformation and deceptions presented (paragraph 4, page 3)

Reference is made by the Special

to factors reported by a medical doctor (not a podiatrist) Lily that is intentionally misleading (To note Dr. Lily is not a podiatrist he refered complainant O'Boyle to a podiatrist on Doctor B Clark - please see Exh 5 + 8 Podiatry Clinic Dictation by Dr. M.B. Clark).

To explain, Dr. Lily allegedly reported that I informed him I was running 25 miles a week. This is true BUT the information missing that is critical is that I had borrowed podiatric shoes from an inmate who had a similar joint disease ailment. When this inmate left that facility (Walsenburg (CCA) Colo.) I could not run anymore, I only had state boots and could not afford canteen Athletic shoes. I was trying to convince Dr. Lily to pressure medical to get me some podiatric shoes for health reasons.

It is especially critical to clarify the fabrication and misinformation generated by Special Master Davidson in paragraph 5 of page 3 in the Final Order.

The Special Master states that the complainant was offered fusion surgery. This is true but it was decided, after consultation with podiatric doctor/specialist, that an implant procedure was

more appropriate (See Exh. H - by D.J.Wentz
"Dr. Gemillion, Dr. Krieger who have recomm-
ended total joint implant arthroplasty, See
Also Exh. F and G by Dr. Clark) To Note - the
implant procedure was the surgical inter-
vention recommended and decided upon
Complainant O'Boyle refused "fusion"
surgery because that procedure WAS
NOT the surgery he was supposed to get
and that was decided upon by the prof-
essional specialists named above. There
was a mistake made by CDOC medical
care OR an intentional attempt to per-
form a "Cheaper" procedure that would
cripple Mr. O'Boyle.

Refering to paragraph 7 on page 4, the
Special Master most blatantly distorts
facts by stating the claimant was
offered "larger state boots" to prevent
the toes from being injured.

To make a statement of fact — Nowhere
in any of the podiatric doctor's reports
by specialists in the medical field who
are the only individuals with authority
to diagnose or give a prognosis is there
mention of "Larger boots" being any
kind of a cure/remedy for the physically
painful "Musculoskeletal - appreciated
advanced hallux valgus deformity" (Exh G
Dr B Clark pary D).

In fact __ALL__ professional podiatrists of authority state that the only option for the deformity as for treatment is surgery. As related by podiatrist Dr. H. Krieger on page 2 of Exh. ... given the deformities, but ultimately, the joints are degenerated and will require some form of replacement...)

The complainant asserts that this statement of "larger boots" being some sort of a medical or physical remedy to a serious mobility problem that requires periods of only 40 minutes standing is a fabrication not supported by record or is an embellishment/adornment that Special Master Davidson USED to "shore up" a very unfounded dismissal of the complaint immediately at issue.

It is to be noted that not even the state's agent at the September 10-08 hearing said or mentioned "larger boots" as an offered remedy. It must be pointed out that "larger boots" could __NEVER__ be any kind of viable treatment or solution when special medical footwear or surgical intervention is recommended by train professional specialist(s).

__III__

Objections and Clarifications
To Special Master's Conclusions
of Law

On page 4 of the Final Order by Special Master the first issue to consider is whether the Claimant is disabled? meaning ① does he have a physical impairment that substantially impairs one or more major life activities ② is there a record of such impairment or ③ being regarded as having such impairment. 42 USC § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B); Also see Reh Act 29 U.S.C. § 794 et seq. and A.W.D.A. Act 42 U.S.C. 1201 et seq.

This fact has unquestionably been proven by the Exhibits and the medical Restrictions in record. The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that significantly re-stricts an individual⊙ as to the manner or duration he can perform a major life activity as compared to the average person in general population who is performing the same activity (29 C.F.R. § 1630 2(j)(1). Major life activities" include performing manual tasks, walking... learning, working. 29 C.F.R. 16 30 2(h) 2(i)

The claimant simply requests the reviewer of fact to consider the medical restrictions enforced and placed upon the claimant — he is only allowed to stand for 40 minutes in a 260 minute period — THIS IS NOT AVERAGE OR NORMAL MOBILITY HE CANNOT PERFORM NORMAL JOB DUTIES IN MAINTENANCE OR CONSTRUCTION NOR ATTEND VOCATIONAL TRAINING IN A MEANINGFUL MANNER, involving walking, learning or working. (29 CFR § 1630.2(4) 2(i)

The Remedial Plan limits the class of persons to those with mobility impairments. Additionally the Remedial Plan (III B) and III(A) limit participation to inmates with permanent physical disabilities/impairments. In this immediate case the claimant can and does prove a perminent, ongoing, increasingly worsening, incurable degenerative joint disease established in record for 14 years.

To make specific note the ADA and Remedial Plan refer specifically to an inmates impairment that limits his ability and restricts him from performing normal walking, learning and or working that is a permanent disability.

The complainant asserts that a fair and simple review of all exhibits

and the states Exhibits (A1-1731) along with the medical Restrictions listed by professional doctors clearly prove the fact that his situation is squarely covered and meet the necessary criteria that the special Master ig- nored. Simply, there is no question that his mobility impairement is affect- ing necessary daily activities and his ability to work and learn.

Addressing criteria 2 specifically, "was the claimant otherwise qualified to participate in programs ... offered by DOC. The answer is YES, if he were supplied podiatric footwear meeting part- icular And Explicit requirements or (not included in this objection) surgical interven- tion Recommended by the podiatric spec- cialist doctors involved.

It is clear that the physical deform- ities in this situation restricts normal mobility of the claimant obstructing and denying him access to rehabilita- tive vocational programs offered to normally Ambulating inmates.

It is also very clear that the Special Master somehow, overlooked or ignored the obvious factors in medical Record that shows substantiating truths about the proven mobility

impairments suffered by the claimant

To make note - It must be clarified that the complainant NEVER REFUS-ED digital Replacement surgery as erroneously stated by Special Master in his finding of facts page 5 paragraph 8, he refused the "fusion procedure" that was not Recommended. Why would the Special Master assert this? (See Treatment Plan Exh. H pg1 - "I recommend a total joint implant... not a fusion)

The claimant refiterates, he is not making a medical claim in this Objection. He is stating he is being denied access to necessary vocational training programs he has a right to participate in. Further, the situation is easily "accomodated" by supplying special soft soled leather podiatric footwear.

It is important to note that the claimant has observed numerous inmates in this facility with special shoes but cannot find out how the inmates recieved the special footwear.

The complainant believes that a serious, unfair and discriminatory dismissal of his claim has occurred and that the facts as explained

above clearly satisfy all criteria required by the remedial plan, Class III to have accomidation(s) made so that the complainant can go on with his rehibilitation by getting important vocational training that is offered to all other inmates.

The claimant requests a full review of all components and factors explained, exhibits presented and all of the CDOC/state exhibits (A1-A31) and that the dismissal be reversed with accomidation(s) made/ordered by this court.

Respectfully Presented

P. O'Boyle

Date Signed
March 1, 2008

*Exh. A*

```
= MEDICAL =========== QUERY MEDICAL INFORMATION ========= 08/04/2006 = Page  1
Doc No: 83672   Name: OBOYLE, PATRICK              FMCC/UNITD PRES FACIL
=============================================================================
Medical Level:     Qualifier Code:     Desc:          Date Assigned:
  Dental Level:    Qualifier Code:     Desc:          Date Assigned:
      Chart Out Dtd:              Chart Location:           Comments
=============================================================================
        Medical Conditions                Medical Procedures

Date Assgnd Date Rslvd Condition  Qu    Date Assgnd Date Rslvd Procedure  Qu
----------- ---------- ---------- --    ----------- ---------- ---------- --


=============================================================================
      Medical Housing Restrictions        Medical Assignment Restrictions

Date Assgnd Date Rslvd Condition  Qu    Date Assgnd Date Rslvd Procedure  Qu
----------- ---------- ---------- --    ----------- ---------- ---------- --
                                        08/09/2000             STANDING
                                        08/04/2006             NOHVY-LIFT P
                                        08/04/2006             NO BENDING  P
```

Medical   No standing over 40 min. then 2 hr. sit down rest. No lifting ov
Comments  er 75 lbs. No repeatative Bending type work or activity.


Chart
Comments

*ExhB* ~~APPC~~
*AVCF*

O BOYLE, Patrick
CMHIP/110744
AVCF/83672

**COLORADO DEPARTMENT OF CORRECTIONS**
**REQUEST FOR CONSULTATION**

TO: *Pedidy Clinic IV* _____ FROM: *AVCF Laurence PA* _____
        Clinic Name                                      Facility & Examiner Name

Date: *7/26/94* _____   New *✓*   Follow up _____

PROBLEM: *47 y/o C/o burn both feet, mainly since wearing state shoes. Exam shows bilateral bunions ® > ©. Presently on NSAID's which helps. Do you for evaluate* _____

PROVISIONAL DIAGNOSIS: *Bilateral bunions head of 1st metatarsal* _____

==========================================================================

Date Seen: _____   (Findings, Conclusions, Recommendations)

PODIATRY CLINIC 01/18/95:  Patient is a 47 y/o white male with
chief c/o bilateral foot pain, left worse then right.  He indicates
He's had pain for several years (greater then 5) he notes severe
limitation of ROM and swelling and pain.  Today my exam reveals the
following:  No significant lesions seen with the exception of some
mild moderate swelling around the 1st metatarsal phalangeal joints.
Patient has severe loss of ROM in both 1st metatarsal phalangeal joints.
The left worse then right.  The patient has a total of 30 degrees
dorsiflexion and 5 degrees plantar flexion in the left and 35 to 50
degrees flexion and 7-10 degrees plantar flexion on the right.  X-rays
taken reveal the following: a severe joint space narrowing of the 1st
metatarsal phalangeal joints.  Sesamoid position is normal.  There is
trumpeting and widening of the 1st metatarsal phalangeal joint.  Osteo-
phytic proliferation's, sub condyle eburnation as well.  Same findings in the
right foot to a lesser extent.

*8-17-94*
*9-7-94*
*Went to Minn.*
*8-10-94*

A.  1. Severe degenerative joint disease, bilateral 1st metatarsal phalangeal
        joints.

P.  1. Recommend that we place the patient in some athletic type shoes and start
        him on Naprosyn 500mg bid pc.  If the patient can be comfortable with
        these measures, so be it.  If he continues to have pain then we have to
        perform arthroplasty procedures.

                                                        /ag
                                James Gremillion, DPM

**RECEIVED**
FEB 0 6 1993
CINDRA MARTINEZ, MRT II
AVCF MEDICAL RECORDS

Visit 99244
DX: Degenerative joint disease, severe

Consult only _____
Consult & _____
Consult & Treatment _____
Sec. 4 Consult

**DEFENDANT'S EXHIBIT**
**A1**
PENGAD 800-631-6989

Inmate Name *O Boyle, Patrick*
DOC # *83672*
DOB *2/6/48*

OJd 26-168   Dist:  White-Med. Rec., Yellow-Consult Phys., Pink-Trans. Sched.

*11/21/97 DTA*

AFFILIATED COMMUNITY
MEDICAL CENTERS-WILLMAR
101 WILLMAR AVENUE SW
WILLMAR, MN 56201

ORTHOPAEDICS

PATRICK A OBOYLE   02/06/48
8393027
1/8/98

*Exh C*

Mr. O'Boyle is a 49-year-old gentleman who complains of pain in both great toes. He has decreased mobility. This has been a chronic problem. He has seen a podiatrist for this before.

Examination reveals dorsiflexion of only 10 degrees at the MP joints of both great toes. There are osteophytic ridges palpable and a mild bunion deformity. There is not significant hallux valgus.

X-RAYS:   Standing AP x-rays of both feet show quite significant degenerative arthritis of the MP joint, great toe, with joint space narrowing, sclerosis and osteophyte formation.

I would suggest he wear a stiff soled shoe, take anti-inflammatory medications as needed. If this does not help him, one could consider a Keller procedure with a cheilectomy which is simply removal of the spurs.

PAUL C. IVERSON, M.D./can

cc:   David Cruz, M.D.
      Prairie Correctional Facility
      445 South Munsterman Street
      Appleton, MN 56208

P.L. Dorsch, RN OON

THE ABOVE HAS BEEN DICTATED, BUT
NOT READ AND IS SUBJECT TO
DICTATION AND TRANSCRIPTION
VARIANCE.

EXHIBIT
5



*Exh D*



RECEIVED
FEB 2 5 2000

## *PODIATRIC PROGRESS NOTE*

**PATIENT NAME.**  Patrick O'Boyle                     **DATE.**  2/14/00
83672        2/6/48

**[SUBJECTIVE].**  Patient presents with constant pain in both great toe joints. This problem has been present currently six years with the left foot being worse than the right. He has been taking Feldene 20 mg for five years and was just recently removed from it due to a noted decrease in platelet count. He is now taking Percogesic which is not helpful, and he is now has to limit his activities as compared to previously. He has previously seen a podiatrist within the prison system a few years ago who recommended a soft soled shoe and the probable need for surgery. There was noted to be approximately 20 degrees of range motion in the left 1st MPJ at that visit, according to the chart notes. According to patient , x-rays were taken fairly recently but were not available today. He claims that he is a very active individual and is not presently working nor going to school resulting in the ability to afford canteen sneakers. He demands that the state provide a pair of sneakers as previously suggested by the other podiatrist.

**[OBJECTIVE].**  Clinical evaluation revealed significant limitation of motion in both 1st MPJ's. The left side does indeed exhibit only 20 degrees range motion and is the more painful side. There is a fairly large protrusion of bone surrounding the first metatarsal head which is somewhat tender to palpation. In gait, there is more dorsiflexion available, but the patient is forced to invert his foot to eliminate forward weight bearing on the 1st MPJ's. X-rays are not available in clinic today. This patient is effusive with disdain for the facility and feels that his problem has not been addressed.

**[IMPRESSIONS/DISCUSSION].**  Significant hallux limitus, bilaterally

**[TREATMENT PLAN].**  X-rays should be reviewed at the next podiatry clinic, however it was mentioned that the views taken were only of the left foot and were nonweightbearing. Weight bearing views should be taken of each foot: specifically, an AP, M. O., and lateral. This will give a better dynamic indication of what is wrong with his feet. At first glance, surgical correction  seems to be the most appropriate option. He was told that shoes are his responsibility but won't change the nature of his deformity. He is unhappy about this and feels that he will fight to obtain state purchased comfortable shoes. A soft shoe such as the sneakers available on canteen could possibly serve to increase his comfort given

EXHIBIT
4

Exh D

his deformities, but ultimately, the joints are degenerated and will require some form of replacement or fusion.  A fuller assessment will be made on the next visit and further discussion regarding surgical options will be presented.

Howard Krieger, D.P.M.
HBK/drd

FROM : Howard Krieger                    PHONE NO. 707 733 5836          Mar. 16 2000 10:57PM P7

*Exh E*



**FOR YOUR FEET**

Podiatric Medicine/ Foot Surgery

2928 W. 10th St.  Greeley, CO 80634  (970) 351-8820



RECEIVED
MAR 17

3/13/00
Patrick O'Boyle          83672          2/6/48

S: patient presents for follow-up of painful 1st MPJ bilateral.  He reiterates the fact that the left foot is the more painful side.  In thinking over the discussion of surgery on the last visit, he feels that the silicone/silastic implant would probably be the most appropriate in his case.  He would like to get more active than currently as he feels he has been severely restricted in his activities from the pain in his feet.

0: again it was noted on this visit that there is only approximately 20 degrees of total available range of motion in the left 1st MPJ.  Weight bearing x-rays were evaluated on this visit and in comparison to nonweightbearing views, there did not seem to be a great deal of difference.  There is severe degenerative joint disease present in both 1st MPJ's with subchondral sclerosis and symmetrical joint space narrowing with periarticular osseous proliferation.  The sesamoids are in appropriate positions and joints are very congruent.  A hallux abductus deformity is present bilaterally but does not appear to be the source of pain.  The joint is painful to manipulation and there is obvious difficulty in shoes.

A: severe hallux limitus bilaterally.

P: another discussion occurred regarding choice of surgical procedures.  It was my contention that a 1st MPJ arthrodesis is the most appropriate procedure given his relatively young age and activity level.  He rejects the notion of having the joint fused, and prefers a more functional implant as was offered as an option.  New component implants are available which may serve his needs, but have not been proven at this point.  The silicone implants, despite the potential for breakdown is the procedure that he chooses to obtain.  He was warned that prior to the end of his life, he may require an additional surgery to remove a broken implant and replace it.  He was also advised that once the determination was made for particular implant, should it fail, it would be very difficult to switch to a different type of implant.  He seems to be aware of these facts and would like to proceed.  An attempt to obtain authorization for this procedure on the left foot will be made and patient will be seen accordingly.

*Howard Krieger DPM*

Howard Krieger, DPM

3/17/00



DEFENDANT'S
EXHIBIT
A 13

FROM : Howard Krieger          PHONE NO. : 307 733 5836          Apr. 14 2000 06:27AM P2



*Exh E*

**Podiatric Medicine/ Foot Surgery**

2928 W. 10th St. Greeley, CO 80634 (970) 351-8820

---

**4/10/00**
**Patrick O. Boyle     83672     2/6/48**

Patient was seen regarding painful 1st MPJ's. He is particularly interested in having surgery as soon as possible, but is currently involved in a legal dispute and is concerned that this surgery not interfere with the possibility of a favorable legal outcome. He expects the legal issues to be addressed relatively soon and would like to have the surgery as soon after that as possible.

*Howard Krieger DPM*

Howard Krieger, DPM

4/18/00



RECEIVED
APR 13 2000

*Exh F*

| REQUEST FOR CONSULTATION | | FROM: O'Boyle, Patrick A.   E-69318   WCCC/83672   2/6/48 | |
|---|---|---|---|
| TO: *Podiatry*  Physician or Service | | *WCCC*   Physician or Service | DATE: *5/7/02* |

*A0289308*

ATTENDING PSYCHIATRIST/WARD:

OBOYLE, PATRICK ALOYIUS

01-02-48   31

O'BC   F/WCCC 83672   RE

Psychiatric Diagnosis:

Chief Complaint, Findings, Information Desired:  *Painful Joint*   *X part*

PODIATRY CLINIC DICTATION BY Dr. Mark B. Clark.
PODIATRY CLINIC, 5/7/02:

S.    Follow up left foot pain.  The patient had been authorized for a first MPJ fusion, left foot, 9-01 through 1-30-02.  The morning of surgery, the patient was informed that I was recommending surgical arthodesis of the painful joint.  Patient subsequently refused surgery.  The patient is an active runner and is concerned about loss of motion at this joint.

O.    As noted before, he has functional and structural limitations of the first MPJ with pain on ROM.  There is mild bunion deformity present.  X-rays were not available for review today, however, per review, he had extensive DJD at the first MPJ.  This individual essentia has no joint space, ie, cartilage.

A/P.  1. DJD, first MPJ left foot.  Multiple surgeons have recommended correction, I concurr and recommended arthroplasty vs. arthodesis.  I had a thourough discussion with Patrick toda on his situation, and due to his athletic and activity level, he is wishing a non-arthrodes approach.  Based on his age, x-ray interpretation, and functional limitations, he would benefit from an implant procedure.  This was not previously authorized, and we do request such.  Ie., treatment for first MPJ to consist of a hemi-implant.

Dx: F/U
D: 5/7/02
T: 5/16/02
10:50a-11:05a
MBC/rh
cc/ WCCC
    M. Graber, RN.

*Denial from Colo Access*

_____ /rh
Mark B. Clark, M.D.

*O'Boyle, Patrick*
*WCCC   83672*
*DOB: 2/6/48*

White  - Chart
Canary - Clinic

Colorado Mental Health Institute at Pueblo
CONSULTATION

Unit _____
405 (11/99)

DEFENDANT'S
EXHIBIT
A21

OBOYLE, PATRICK
CMHIP/69318
WCCC/83672
DOB: 2/6/48
Podiatry clinic dictation
Dr. Mark B. Clark

*Exh G*

PODIATRY CLINIC 5/1/01   A0227734

S.  Patient referred for assessment of L foot pain. Per review patient has had discomfort
to the 1st MPJ for approx. 9 years. This has become progressive in nature. Patient
experiences severe discomfort with any weight bearing or ambulation. Throbbing at night.
Boots are uncomfortable. Has seen multiple podiatrists including Dr. Wentz, Dr. Gremillion
and Dr. Krieger.  All have recommended surgical intervention for DJD of the 1st MPJ
of the L foot. X rays confirm the presence of DJD. X rays are not available for my
review today. Previous recommendations have included arthrodesis, and arthroplasty.
Patient takes Naprosyn 500 mg bid. This was prescribed for low back pain. Patient
basically has not had any relief from previous interventions, i.e. shoe modification,
anti-inflammatories, etc.

O.  Observation of lower extremity: vascular-DP is 2/4. Dermatologic- erythema medial to
the 1st MPJ L foot. Musculoskeletal- appreciated is advanced hallux valgus deformity.
There is crepitation with ROM 1st MPJ. Pain with ROM 1st MPJ. Local edema and erythema
is appreciated. Also appreciated is interosteophytic protrusions of metatarsal head
medial, dorsal and lateral.

A/P. 1.  Advanced hallux valgus deformity with subsequent DJD 1st MPJ L foot. Currently
to date, extensive conservative treatment has been employed. There is no a functional
deficit of the L extremity resulting in limping and compensated gait. Compensated
gait subsequently is irritating the low back. Dr. Wentz has requested authorization.
Dictated note 12/8 by Dr. Wentz attached to such. Apparently patient was transferred
to a different facility. This has been a problem in the past. Due to lack of f/u
this patient suffers from severe discomfort. The only option for this individual
would be intervention. Recommendation pending my assessment of x rays.

Dx: advanced hallux valgus deformity
D: 5/1/01
T: 5/1/01                                              _____/ma
I: 11:00 a                                             Mark B. Clark, DPM
O: 11:20 a
MBC/ma
cc: mary Lou Judiscak
    OR; consent needed

EXHIBIT
3

# WEN.. FOOT AND ANKLE CLIN

## RALPH J. WENTZ, DPM, FACFAS
DIPLOMATE AMERICAN BOARD OF PODIATRIC SURGERY

*Exh 14*

*FMCC*

**TERRITORIAL DOC-CANON CITY**                    **Initial Charting**

**Oboyle, Patrick ( DOC # 83672)**
**December 08, 2000**

**CHIEF COMPLAINT:** Left foot pain.

**HISTORY OF PRESENT ILLNESS:** This is a 52-year-old male seen in podiatric consultation at the request of Janice Eades, F.N.P. The issue to address: Severe pain in the 1st metatarsal phalangeal joint of the left foot. The offender relates he has pain with every step. There has been previous podiatric evaluations performed by Dr. Gremillion as well as Dr. Krieger, both who have recommended total joint implant arthroplasty of the 1st metatarsal phalangeal joint, left foot. There has been extensive conservative treatment using multiple NSAIDS. Long term Feldene use that led to thrombocytopenia. Past medical history reviewed. Significant for: 1. Alcohol abuse.

**PHYSICAL EXAMINATION:** The dorsalis pedal pulses are strong and palpable. There is significant hypertrophy at the 1st metatarsal phalangeal joint of the left foot. Dorsiflexion is limited to 10 degrees. Plantar flexion limited to 5 degrees. There is pain with end ROM.

**X-RAY EXAMINATION:** Foot radiographs ordered today.

**ASSESSMENT:**
1. Advanced degenerative joint disease of the 1st metatarsal phalangeal joint, left foot.

**TREATMENT PLAN:**
1. There has been failure of extensive conservative treatment. There is now functional deficit with limping, with ambulation. As definitive treatment I recommended a total joint implant arthroplasty of the 1st metatarsal phalangeal joint, left foot. We will request authorization from Colorado Access for the procedure.

Ralph J. Wentz, Jr., DPM/cah   12/11/00
cc: Janice Eades, F.N.P.

*Pending*

*12/20/00*

RECEIVED
DEC 14 2000



**DEFENDANT'S EXHIBIT**
A110

Exh It
FMCC

# TERRITORIAL DOC-CANON CITY

**Oboyle, Patrick  (DOC # 83672)**
**December 08, 2000**

**RADIOLOGY REPORT:**  AP and lateral weight bearing views demonstrate arthritic changes of the 1st metatarsal phalangeal joint of both feet.  Subchondral sclerosis is present.  Joint space narrowing is present.  There is osteophytic spurring present around the joint.  There is a large dorsal spur present on the 1st metatarsal head of both feet.

**ASSESSMENT:**
1. Advanced degenerative joint disease of the 1st metatarsal phalangeal joints of both feet.

Ralph J. Wentz, Jr., DPM/cah   12/11/00



impairments suffered by the claimant

To make note - It must be clarified that the complainant NEVER REFUSED digital replacement surgery as erroneously stated by Special Master in his finding of facts page 5 paragraph 8, he refused the "fusion procedure" that was not recommended. Why would the Special Master assert this? (See Treatment Plan Exh. H pg1 - "I recommend a total joint implant" not a fusion)

The claimant relterates, he is not making a medical claim in this Objection. He is stating he is being denied access to necessary vocational training programs he has a right to participate in. Further, the situation is easily "accomidated" by supplying special soft soled leather podiatric footwear.

It is important to note that the claimant has observed numerous inmates in this facility with special shoes but cannot find out how the inmates recieved the special footwear.

The complainant believes that a serious, unfair and discriminatory dismissal of his claim has occurred and that the facts as explained

above clearly satisfy all criteria required by the remedial plan, Class III to have accomidation(s) made so that the complainant can go on with his rehibilitation by getting important vocational training that is offered to all other inmates.

The claimant requests a full review of all components and factors explained, exhibits presented and all of the CDOC/State exhibits (A1-A31) and that the dismissal be reversed with accomidation(s) made/ordered by this court.

Respectfully Presented

P. O'Boyle

Date Signed
March 1, 2008

*Exh. A*

```
= MEDICAL =========== QUERY MEDICAL INFORMATION ========= 08/04/2006 = Page  1
Doc No: 83672   Name: OBOYLE, PATRICK              FMCC/UNITD PRES FACIL
==================================================================
Medical Level:     Qualifier Code:    Desc:        Date Assigned:
 Dental Level:     Qualifier Code:    Desc:        Date Assigned:
      Chart Out Dtd:              Chart Location:           Comments
==================================================================
            Medical Conditions              Medical Procedures

Date Assgnd Date Rslvd Condition  Qu    Date Assgnd Date Rslvd Procedure  Qu
----------- ---------- ---------- --    ----------- ---------- ---------- --


  ================================================================

      Medical Housing Restrictions        Medical Assignment Restrictions

Date Assgnd Date Rslvd Condition  Qu    Date Assgnd Date Rslvd Procedure  Qu
----------- ---------- ---------- --    ----------- ---------- ---------- --
                                        08/09/2000            STANDING
                                        08/04/2006            NOHVY-LIFT P
                                        08/04/2006            NO BENDING  P

Medical  No standing over 40 min. then 2 hr. sit down rest. No lifting ov
Comments er 75 lbs. No repeatative Bending type work or activity.


Chart
Comments
```

*Exh B* (handwritten)
*AVCF* (handwritten)

O BOYLE, Patrick
CMHIP/110744
AVCF/83672

## COLORADO DEPARTMENT OF CORRECTIONS
## REQUEST FOR CONSULTATION

TO: _Podiatry clinic IV_          FROM: _AVCF    Lawner PA_
　　　Clinic Name　　　　　　　　　　Facility & Examiner Name

Date: _7/26/94_ _____   New _✓_   Follow up _____

PROBLEM: _47 y/o C/o bone both feet, mainly since wearing state
shoes. Exam shows bilateral bunion ⊕ > ⊗. Presently on
NSAID's which helps. To you for evaluate_

PROVISIONAL DIAGNOSIS: _Bilateral bunion head of 1st metatarsal_

Date Seen: _____ (Findings, Conclusions, Recommendations)

PODIATRY CLINIC 01/18/95: Patient is a 47 y/o white male with
chief c/o bilateral foot pain, left worse then right. He indicates
He's had pain for several years (greater then 5) he notes severe
limitation of ROM and swelling and pain. Today my exam reveals the
following: No significant lesions seen with the exception of some
mild moderate swelling around the 1st metatarsal phalangeal joints.
Patient has severe loss of ROM in both 1st metatarsal phalangeal joints.
The left worse then right. The patient has a total of 30 degrees
dorsiflexion and 5 degrees plantar flexion in the left and 35 to 50
degrees flexion and 7-10 degrees plantar flexion on the right. X-rays
taken reveal the following: a severe joint space narrowing of the 1st
metatarsal phalangeal joints. Sesamoid position is normal. There is
trumpeting and widening of the 1st metatarsal phalangeal joint. Osteo-
phytic proliferation's, sub condyle eburnation as well. Same findings in the
right foot to a lesser extent.

A.  1. Severe degenerative joint disease, bilateral 1st metatarsal phalangeal
       joints.

P.  1. Recommend that we place the patient in some athletic type shoes and start
       him on Naprosyn 500mg bid pc. If the patient can be comfortable with
       these measures, so be it. If he continues to have pain then we have to
       perform arthroplasty procedures.

James Gremillion, DPM      /ag

(handwritten notes right margin: 17 9th / 9-1-96 / 9-1-96 / Went to / Minn. / 8-10-94)

RECEIVED
FEB 0 6 1993
CINDRA MARTINEZ, MRT
VCF MEDICAL RECORDS

Visit 9924
DX: Degenerative joint disease, severe

Consult only _____
Consult & _____
Consult & Treatment _____
Sec.4 Consult
Old 26-168   Dist: White-Med. Rec., Yellow-Consult Phys., Pink-Trans. Sched.

DEFENDANT'S
EXHIBIT
A1

Inmate Name _O BOYLE, PATRICK_
DOC # _83672_
DOB _2/6/48_

AFFILIATED COMMUNITY
MEDICAL CENTERS-WILLMAR
101 WILLMAR AVENUE SW
WILLMAR, MN 56201

ORTHOPAEDICS

PATRICK A OBOYLE    02/06/48
8393027
1/8/98

*Exh C*

Mr. O'Boyle is a 49-year-old gentleman who complains of pain in both great toes. He has decreased mobility. This has been a chronic problem. He has seen a podiatrist for this before.

Examination reveals dorsiflexion of only 10 degrees at the MP joints of both great toes. There are osteophytic ridges palpable and a mild bunion deformity. There is not significant hallux valgus.

X-RAYS:   Standing AP x-rays of both feet show quite significant degenerative arthritis of the MP joint, great toe, with joint space narrowing, sclerosis and osteophyte formation.

I would suggest he wear a stiff soled shoe, take anti-inflammatory medications as needed. If this does not help him, one could consider a Keller procedure with a cheilectomy which is simply removal of the spurs.

PAUL C. IVERSON, M.D./can

cc:   David Cruz, M.D.
      Prairie Correctional Facility
      445 South Munsterman Street
      Appleton, MN 56208

THE ABOVE HAS BEEN DICTATED, BUT
NOT READ AND IS SUBJECT TO
DICTATION AND TRANSCRIPTION
VARIANCE

EXHIBIT
5



Exh D



RECEIVED
FEB 25 2000

### PODIATRIC PROGRESS NOTE

**PATIENT NAME.**  Patrick O'Boyle          **DATE.**  2/14/00
83672        2/6/48

**[SUBJECTIVE].**  Patient presents with constant pain in both great toe joints. This problem has been present currently six years with the left foot being worse than the right. He has been taking Feldene 20 mg for five years and was just recently removed from it due to a noted decrease in platelet count. He is now taking Percogesic which is not helpful, and he is now has to limit his activities as compared to previously. He has previously seen a podiatrist within the prison system a few years ago who recommended a soft soled shoe and the probable need for surgery. There was noted to be approximately 20 degrees of range motion in the left 1st MPJ at that visit, according to the chart notes. According to patient , x-rays were taken fairly recently but were not available today. He claims that he is a very active individual and is not presently working nor going to school resulting in the ability to afford canteen sneakers. He demands that the state provide a pair of sneakers as previously suggested by the other podiatrist.

**[OBJECTIVE].**  Clinical evaluation revealed significant limitation of motion in both 1st MPJ's. The left side does indeed exhibit only 20 degrees range motion and is the more painful side. There is a fairly large protrusion of bone surrounding the first metatarsal head which is somewhat tender to palpation. In gait, there is more dorsiflexion available, but the patient is forced to invert his foot to eliminate forward weight bearing on the 1st MPJ's. X-rays are not available in clinic today. This patient is effusive with disdain for the facility and feels that his problem has not been addressed.

**[IMPRESSIONS/DISCUSSION].**  Significant hallux limitus, bilaterally

**[TREATMENT PLAN].**  X-rays should be reviewed at the next podiatry clinic, however it was mentioned that the views taken were only of the left foot and were nonweightbearing. Weight bearing views should be taken of each foot: specifically, an AP, M. O., and lateral. This will give a better dynamic indication of what is wrong with his feet. At first glance, surgical correction seems to be the most appropriate option. He was told that shoes are his responsibility but won't change the nature of his deformity. He is unhappy about this and feels that he will fight to obtain state purchased comfortable shoes. A soft shoe such as the sneakers available on canteen could possibly serve to increase his comfort given

EXHIBIT
4

Exh D

his deformities, but ultimately, the joints are degenerated and will require some form of replacement or fusion.  A fuller assessment will be made on the next visit and further discussion regarding surgical options will be presented.

Howard Krieger, D.P.M.
HBK/drd



*Exh E*



Podiatric Medicine/ Foot Surgery

2928 W. 10th St. Greeley, CO 80634 (970) 351-8820

3/13/00
Patrick O'Boyle      83672      2/6/48

S: patient presents for follow-up of painful 1st MPJ bilateral. He reiterates the fact that the left foot is the more painful side. In thinking over the discussion of surgery on the last visit, he feels that the silicone/silastic implant would probably be the most appropriate in his case. He would like to get more active than currently as he feels he has been severely restricted in his activities from the pain in his feet.

0: again it was noted on this visit that there is only approximately 20 degrees of total available range of motion in the left 1st MPJ. Weight bearing x-rays were evaluated on this visit and in comparison to nonweightbearing views, there did not seem to be a great deal of difference. There is severe degenerative joint disease present in both 1st MPJ's with subchondral sclerosis and symmetrical joint space narrowing with periarticular osseous proliferation. The sesamoids are in appropriate positions and joints are very congruent. A hallux abductus deformity is present bilaterally but does not appear to be the source of pain. The joint is painful to manipulation and there is obvious difficulty in shoes.

A: severe hallux limitus bilaterally.

P: another discussion occurred regarding choice of surgical procedures. It was my contention that a 1st MPJ arthrodesis is the most appropriate procedure given his relatively young age and activity level. He rejects the notion of having the joint fused, and prefers a more functional implant as was offered as an option. New component implants are available which may serve his needs, but have not been proven at this point. The silicone implants, despite the potential for breakdown is the procedure that he chooses to obtain. He was warned that prior to the end of his life, he may require an additional surgery to remove a broken implant and replace it. He was also advised that once the determination was made for particular implant, should it fail, it would be very difficult to switch to a different type of implant. He seems to be aware of these facts and would like to proceed. An attempt to obtain authorization for this procedure on the left foot will be made and patient will be seen accordingly.

3/h/00

Howard Krieger, DPM





*Exh E*

**Podiatric Medicine/ Foot Surgery**

2928 W. 10th St.  Greeley, CO 80634  (970) 351-8820

4/10/00
Patrick O. Boyle        83672         2/6/48

Patient was seen regarding painful 1st MPJ's.  He is particularly interested in having surgery as soon as possible, but is currently involved in a legal dispute and is concerned that this surgery not interfere with the possibility of a favorable legal outcome.  He expects the legal issues to be addressed relatively soon and would like to have the surgery as soon after that as possible.

Howard Krieger, DPM



*Exh F*

| REQUEST FOR CONSULTATION | O'Boyle, Patrick A. H-69318 WCCC/83672 2/6/48 |
|---|---|
| TO: *Podiatry* Physician or Service | FROM: *WCCC* Physician or Service   DATE: *5/7/02* |

AO289308

ATTENDING PSYCHIATRIST/WARD:

O'BOYLE, PATRICK ALOYSIUS

Psychiatric Diagnosis:

Chief Complaint, Findings, Information Desired: *Painful joint* *X-ray*

PODIATRY CLINIC DICTATION BY Dr. Mark B. Clark:
PODIATRY CLINIC, 5/7/02:

S.    Follow up left foot pain. The patient had been authorized for a first MPJ fusion, left foot, 9-01 through 1-30-92. The morning of surgery, the patient was informed that I was recommending surgical arthodesis of the painful joint. Patient subsequently refused surgery The patient is an active runner and is concerned about loss of motion at this joint.

O.    As noted before, he has functional and structural limitations of the first MPJ with pain on ROM. There is mild bunion deformity present. X-rays were not available for review today, however, per review, he had extensive DJD at the first MPJ. This individual essentia. has no joint space, ie, cartilage.

A/P.  1. DJD, first MPJ left foot. Multiple surgeons have recommended correction, I concurr and recommended arthroplasty vs. arthodesis. I had a thourough discussion with Patrick toda on his situation, and due to his athletice and activity level, he is wishing a non-arthrodes approach. Based on his age, x-ray interpretation, and functional limitations, he would benefit from an implant procedure. This was not previously authorized, and we do request such. Ie., treatment for first MPJ to consist of a hemi-implant.

Dx: F/U
D: 5/7/02
T: 5/16/02
10:50a-11:05a
MBC/rh
cc/ WCCC
    M. Graber, RN.

*Denial from Colo access*

Mark B. Clark, M.D.                    /rh

*O'Boyle, Patrick*
*WCCC  83672*
*DOB: 2/6/48*

White - Chart
Canary - Clinic

Colorado Mental Health Institute at Pueblo     Unit_____
CONSULTATION                                    405 (11/99)

DEFENDANT'S EXHIBIT A21

*Exh G*

OBOYLE, PATRICK
CMHIP/69318
WCCC/83672
DOB: 2/6/48
Podiatry clinic dictation
Dr. Mark B. Clark

PODIATRY CLINIC 5/1/01   A0227734

S. Patient referred for assessment of L foot pain. Per review patient has had discomfort to the 1st MPJ for approx. 9 years. This has become progressive in nature. Patient experiences severe discomfort with any weight bearing or ambulation. Throbbing at night. Boots are uncomfortable. Has seen multiple podiatrists including Dr. Wentz, Dr. Gremillion and Dr. Krieger.  All have recommended surgical intervention for DJD of the 1st MPJ of the L foot. X rays confirm the presence of DJD. X rays are not available for my review today. Previous recommendations have included arthrodesis, and arthroplasty. Patient takes Naprosyn 500 mg bid. This was prescribed for low back pain. Patient basically has not had any relief from previous interventions, i.e. shoe modification, anti-inflammatories, etc.

O. Observation of lower extremity: vascular-DP is 2/4. Dermatologic- erythema medial to the 1st MPJ L foot. Musculoskeletal- appreciated is advanced hallux valgus deformity. There is crepitation with ROM 1st MPJ. Pain with ROM 1st MPJ. Local edema and erythema is appreciated. Also appreciated is interosteophytic protrusions of metatarsal head medial, dorsal and lateral.

A/P. 1. Advanced hallux valgus deformity with subsequent DJD 1st MPJ L foot. Currently to date, extensive conservative treatment has been employed. There is now a functional deficit of the L extremity resulting in limping and compensated gait. Compensated gait subsequently is irritating the low back. Dr. Wentz has requested authorization. Dictated note 12/8 by Dr. Wentz attached to such. Apparently patient was transferred to a different facility. This has been a problem in the past. Due to lack of f/u this patient suffers from severe discomfort. The only option for this individual would be intervention. Recommendation pending my assessment of x rays.

Dx: advanced hallux valgus deformity
D: 5/1/01
T: 5/1/01
I: 11:00 a
O: 11:20 a
MBC/ma
cc: mary Lou Judiscak
    OR; consent needed

_____ /ma
Mark B. Clark, DPM



EXHIBIT
3

# WEN.   FOOT AND ANKLE CLIN.

## RALPH J. WENTZ, DPM, FACFAS
### DIPLOMATE AMERICAN BOARD OF PODIATRIC SURGERY

*Exh 14*

**TERRITORIAL DOC-CANON CITY**                                    **Initial Charting**   *FMCC*

Oboyle, Patrick  ( DOC # 83672)
December 08, 2000

**CHIEF COMPLAINT:**  Left foot pain.

**HISTORY OF PRESENT ILLNESS:**  This is a 52-year-old male seen in podiatric consultation at the request of Janice Eades, F.N.P.  The issue to address: Severe pain in the 1st metatarsal phalangeal joint of the left foot.  The offender relates he has pain with every step.  There has been previous podiatric evaluations performed by Dr. Gremillion as well as Dr. Krieger, both who have recommended total joint implant arthroplasty of the 1st metatarsal phalangeal joint, left foot.  There has been extensive conservative treatment using multiple NSAIDS.  Long term Feldene use that led to thrombocytopenia.  Past medical history reviewed.  Significant for: 1.  Alcohol abuse.

**PHYSICAL EXAMINATION:**  The dorsalis pedal pulses are strong and palpable.  There is significant hypertrophy at the 1st metatarsal phalangeal joint of the left foot.  Dorsiflexion is limited to 10 degrees.  Plantar flexion limited to 5 degrees.  There is pain with end ROM.

**X-RAY EXAMINATION:**  Foot radiographs ordered today.

**ASSESSMENT:**
1.  Advanced degenerative joint disease of the 1st metatarsal phalangeal joint, left foot.

**TREATMENT PLAN:**
1.  There has been failure of extensive conservative treatment.  There is now functional deficit with limping, with ambulation.  As definitive treatment I recommended a total joint implant arthroplasty of the 1st metatarsal phalangeal joint, left foot.  We will request authorization from Colorado Access for the procedure.

Ralph J. Wentz, Jr., DPM/cah  12/11/00
cc: Janice Eades, F.N.P.

12/20/00

RECEIVED
DEC 1 4 2000



DEFENDANT'S
EXHIBIT
A16

*Exh 1+*
*FMCC*

**TERRITORIAL DOC-CANON CITY**

**Oboyle, Patrick   (DOC # 83672)**
**December 08, 2000**

**RADIOLOGY REPORT:**   AP and lateral weight bearing views demonstrate arthritic changes of the 1st metatarsal phalangeal joint of both feet.  Subchondral sclerosis is present.  Joint space narrowing is present.  There is osteophytic spurring present around the joint.  There is a large dorsal spur present on the 1st metatarsal head of both feet.

**ASSESSMENT:**
1.  Advanced degenerative joint disease of the 1st metatarsal phalangeal joints of both feet.

Ralph J. Wentz, Jr., DPM/cah   12/11/00

