IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

---

Claim Number 03-160
Category III
Claimant: Anthony Eugene Rankin, #81577
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on March 6, 2008. This hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Anthony Eugene Rankin (Claimant); and Willow Arnold, attorney for Defendants.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Claimant's Exhibits #1 and #2 were offered and admitted. Defendants' Exhibits A through EE were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on September 10, 1993. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for evaluation. Claimant then was transferred to the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Claimant remained at ACC until he was transferred to the Skyline Correction Center (SCC) in Canon City, Colorado in April, 1994. Claimant then was placed into a community corrections program.

Claimant was placed on parole on May 10, 1996. Parole was revoked, and Claimant returned to DOC custody. He was incarcerated at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado on July 24, 1996. Claimant was placed on parole on February 24, 1997. Parole was revoked, and Claimant reentered DRDC on September 10, 1998. Claimant was transferred to the Bent County Correctional Facility (BVCF) in Las Animas, Colorado on December 7, 1998. He was placed back on parole in September, 1999. Claimant then discharged his first sentence on September 26, 1999.

Claimant came back into DOC custody on June 9, 2004. He again went to DRDC for evaluation and testing. He then was placed at FCF on June 30, 2004. He remains at FCF at this time,

but has a mandatory release date of August 20, 2008.

In his initial claim form, Claimant checked the boxes for mobility impairment, hearing impairment and diabetes. Claimant stated, in part, as follows:

> Mobility impairment. In 91 I was assaulted. I'm left with severe nerve damage in my left leg and foot. After surgery to repair a stab wound in my left leg I'm left with hammer toes. This condition is very painful to walk and DOC refuses to buy me a pair of soft sole shoes. I'm deaf in my left ear. Since being incarcerated I've developed diabetes. I have high blood sugar which comes from DOC feeding me bread, breakfast, lunch and dinner. Too many calories in the food they provide, and there is sugar in everything they serve.

When answering the question concerning discrimination against him by DOC and its staff, Claimant stated as follows:

> I've asked Nurse Jasmine and other DOC staff to please get me a pair of soft sole shoes so that I could at least walk the track as a form of exercise to help my diabetes. And as a means of comfort. DOC refuses to give me insulin as a measure of controlling my diabetes. Instead they are giving me pills. Pills that don't work because my blood sugar is still way too high.

Claimant filed a supplemental form concerning diabetes. Claimant stated, in part, as follows:

> My eyes stay blurry all the time. I've told Dr. Creeny about this problem but nothing has been done. My blood sugar is and has been around 173 or more. And my ALC has been at 10. Which means my kidneys, my eyes and my feet are in serious trouble once I get out. I've got cracked skin underneath my left toes that will not heal. And I'm sure this is where my physical problems will begin. I also don't get circulation in my feet that well, and my legs hurt all the time.

Claimant submitted copies of his medical records in support of his claim. Those medical records reflect that Claimant does have diabetes which is being treated with medicine. The documents also reflect that Claimant has hammer toes.

At the hearing, Claimant testified that he was diagnosed in 2000 as having diabetes by a private physician. Claimant was not in DOC custody at that time. He began receiving Glucophage at that time. He now is on insulin, receiving one shot per day. Claimant acknowledged that he was not diagnosed as diabetic before 2000.

At the hearing, Claimant testified that when he came back into DOC custody in 2004 he advised staff that he was diabetic. He asked for insulin, but it was not provided for three and one-half years. He expressed concern that the delay in receiving insulin would lead to kidney problems, along with potential problems in his joints. He began receiving insulin on June 7, 2007. Claimant

also testified that he had received improper meals that were heavy with white bread. He stated that DOC does not provide glucose tablets for those times when blood sugar levels are low. He indicated further that there are few, if any, items that a diabetic can safely purchase from the canteen.

Claimant testified that he has frequent urination as the result of his diabetes. He does not receive afternoon or evening snacks. He also wanted to receive a straight edge clipper for his toenails.

Concerning his mobility disability, Claimant testified that he has had hammer toes for years. He had surgery, but it was not successful. He was provided appropriate shoes, but those were taken away. A screw that was placed into his big toe has broken but DOC will not remove or fix it. Claimant has a fear of losing his feet due to his diabetes and possible infection. Use of DOC boots has led to permanent corns and other problems. Claimant stated that other inmates have medical soft-sided shoes, and he believed that he also should have such shoes.

On cross-examination, Claimant stated that his mobility problems arose after he was stabbed in the leg in 1992. Surgery was done in 1992 but it did not correct the problem of the hammer toes. When asked if he has played basketball, Claimant testified that he simply shoots baskets. He has difficulty walking due to his foot condition.

Defendants presented as an expert witness Dr. Orville Neufeld, D.O. In his testimony, he indicated that Claimant is deaf in his left ear. The right ear has only a slight hearing loss, and Claimant is able to carry on his activities of daily life despite the lack of hearing in the one ear.

Dr. Neufeld indicated that Claimant was diagnosed as having diabetes in 2004. His blood sugar levels have fluctuated. There is some slight indication of possible kidney problems. Dr. Neufeld verified the condition of hammer toes and stated that Claimant wears a large shoe (13 EE). He acknowledged that the surgery had not repaired the left foot. Dr. Neufeld did not believe that Claimant has a disability due to any condition.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, Claimant must establish that he was disabled on or before August 27, 2003. The Special Master may consider matters that post-date August 27, 2003 only if there is establishment of a disability prior to that date. In addition, Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act prior to that date.

Claimant has alleged three conditions that he believes have become impairments. Each will be discussed separately:

5

**Diabetes:** There is no question that Claimant is a diabetic at the present time. He is on insulin by shot. The problem is that the Settlement Agreement provides that an impairment must have existed on or before August 27, 2003 while a claimant was in DOC custody.

The evidence is clear that Claimant was diagnosed as being diabetic in 2000. Claimant was not in DOC custody at that time. Claimant returned to DOC custody on June 9, 2004. It was on that date that DOC became responsible for the medical care of Claimant. The date of approval of the Settlement Agreement was August 27, 2003. Claimant was not in DOC custody on that date. More importantly, Claimant was not diagnosed as having diabetes at any time prior to that date while in DOC custody.

The Special Master has no jurisdiction over the claim of diabetes for the reasons noted. Claimant retains the right to pursue his own lawsuit concerning his diabetes and the alleged violations of the ADA and Rehabilitation Act. Claimant may not pursue his claim concerning diabetes, as DOC did not become responsible for diabetic care in 2004.[2] Claimant is not part of the class as diabetic.

**Hearing Impairment:** Dr. Neufeld acknowledged in his testimony that Claimant is deaf in his left ear. Only one audiogram was introduced as evidence. *Exhibit EE*. It reflects that lack of hearing in the left ear.

The Special Masters have examined hearing loss from the standpoint of its affect upon activities of daily living (ADLs). In other words, a hearing loss in one or both ears does not become a disability until it affects every day activities. An inmate who has no hearing and must communicate through use of sign language or written communication falls into the category of hearing impaired because it affects ADLs, particularly the ability to communicate.

The Special Masters have found hearing loss not to rise to the level of a disability when ADLs are not affected. The evidence presented in the case by both sides reflects that Claimant is able to compensate for his left ear hearing loss by use of his right ear. There was limited evidence that ADLs were affected by the left ear hearing loss. Claimant has failed to establish that on or before August 27, 2003 he was hearing disabled, as defined by the ADA and Rehabilitation Act.

**Mobility Impairment:** Claimant has a condition known as hammer toes. This condition arose after he was stabbed in the leg in 1992. Surgery was performed, but it was not totally successful. Claimant has experienced problems with his feet since the surgery.

Defendants attempted to minimize Claimant's condition by implying that he regular plays basketball. The Special Master finds that Claimant's explanation that he shoots baskets only makes

---

[2] This Special Master has ruled in the past that lack of diabetic-appropriate items on the canteen and lack of glucose tablets or hard candy was discriminatory and in violation of the ADA.

sense. Claimant is attempting to lead as normal a life as possible with a physical condition that has affected his mobility to a certain extent.

The evidence presented by both sides reflects that Claimant is able to walk and carry on his ADLs. He is not able to participate in sports as he once did, and the shooting of a basketball is not the playing of basketball.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The problem concerning mobility is the same as with the claim of hearing impairment. There is a dividing line between what constitutes a disability and what does not. Claimant has some difficulty in moving and certainly has discomfort. Some of the pain relates to arthritis. The evidence reflects that Claimant is able to carry on his ADLs despite his hammer toes and arthritis. On or before August 27, 2003, Claimant was able to walk and do some exercises. Claimant did not meet the ADA standard for mobility impairment. Claimant is not part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must show that he was the victim of discrimination prohibited by the ADA on or before August 27, 2003. Only if he can establish this may he seek relief for something that occurred after that date.

The evidence presented by Claimant does not establish any acts of discrimination prohibited by the ADA or Rehabilitation Act prior to August 27, 2003. The Special Master does not have jurisdiction to examine any actions after that date while Claimant was in DOC custody.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Anthony Eugene Rankin is denied, as he has failed to prove each of the four elements required by the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 2, 2008.**

SIGNED this 14th day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master