IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

―――――――――――――――――――――――――――――――――――――――――――――――――――――――

Claim Number 03-170
Category III
Claimant: William Miles, #60774
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

―――――――――――――――――――――――――――――――――――――――――――――――――――――――

## FINAL ORDER OF SPECIAL MASTER

―――――――――――――――――――――――――――――――――――――――――――――――――――――――

THIS MATTER came before the Special Master for hearing on March 7, 2008. This hearing was held at the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Present were the following: William Miles (Claimant); and Willow Arnold, attorney for Defendants.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Defendants' Exhibits A through T were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August 11, 1989. Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Claimant discharged that sentence on June 5, 1990.

Claimant returned to DOC custody on February 17, 1993. He was evaluated at the Denver Reception and Diagnostic Center (DRDC) and then placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant discharged this sentence on July 3, 1994.

Claimant returned to DOC custody on December 27, 2002. He was sent back through DRDC for evaluation. He then went to the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. He remained at FLCF until he was paroled on June 15, 2006. Parole was violated, and Claimant came back into custody on November 21, 2007. Claimant was placed at ACC on December 11, 2007. Claimant has a mandatory discharge date of April 18, 2008.

In his initial claim form, Claimant checked only the box for mobility impairment. Claimant stated, in part, as follows:

> Fused ankles - no rotation in ankles. Severe head trauma - partial paralysis on left side. Trouble walking - working in pain all the time. In need of physical therapy since 1989.

When answering the question concerning discrimination against him by DOC and its staff, Claimant stated as follows:

> Condition not properly diagnosed upon entering prison. No physical therapy to be had. No seeing doctors without paying 3.00. No time off earned for working. Slave wages pay.

Claimant filed a supplemental form concerning mobility. Claimant stated, in part, as follows:

> Left side partially paralyzed - problems walking - inability to use left side properly. Problems with stairs up and down.
> Unable to do most jobs. Unable to participate in most activities unless sedentary.
> Asked for cane - denied. Asked for Tens Unit - denied told that there was no proof that they actually work. Asked for special shoes - told to buy from canteen. They don't sell the kind of shoes on canteen I need.

Claimant also stated that he had fallen on several occasions but had not seriously hurt himself.

At the hearing, Claimant testified that he was hit in the head in 1989 and suffered paralysis on the left side of his body as a result. He has asked for a Tens Unit over the years that he has been in custody but has been denied one by DOC medical staff. Claimant testified that he has requested a cane to use and special shoes. He indicated that state boots tear up his feet.

Claimant testified further that he has requested physical therapy but has not received any. His left foot drags when he walks. He had requested a cane but has not received one. He testified that he uses a cane when he is out of DOC custody.

On cross-examination, Claimant testified that his mobility problem relates to his paralysis on the left side of his body and his ankles. Both ankles were hurt in 1984 and have not been the same since. Claimant indicated that he can walk in the yard but his left foot will drag.

Defendants called Dr. Orville Neufeld, D.O. as an expert witness. Dr. Neufeld stated that Claimant does not meet the criteria for mobility impairment, but does have some physical limitations. There is left-sided weakness as the result of the head injury. Claimant did receive physical therapy. Dr. Neufeld testified that Tens Units have not been shown to be effective. He acknowledged that more physical therapy might have been helpful at the time of the head injury in 1989. There is no question that there is left-sided partial paralysis.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, Claimant must establish that he was disabled on or before August 27, 2003. The Special Master may consider matters that post-date August 27, 2003 only if there is establishment of a disability prior to that date. In addition, Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act prior to that date.

This is a close case as to whether or not Claimant meets the criteria for being mobility disabled. There is no question that Claimant suffered a significant head injury in 1989 that led to partial paralysis. Claimant has had trouble walking. The Special Master observed Claimant walking, and there are residual problems from the head injury. Claimant testified that he has suffered falls as the result of his lack of stability. The Special Master will give the benefit of any doubt to Claimant and will find him to be mobility impaired. He is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must show that he was the victim of discrimination prohibited by the ADA on or before August 27, 2003. Only if he can establish this may he seek relief for something that occurred after that date.

Claimant's complaints relate to his medical care while in DOC custody. He has expressed concern about that medical care. Specifically, Claimant has requested a Tens Unit and physical therapy. Claimant has argued that he did not receive proper care after his head injury and that his condition is worse than it should have been. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has not established any act of discrimination against him by DOC staff that was premised upon his mobility impairment. The issues related to medical care, including the Tens Unit, are beyond the jurisdiction of the Special Masters in light of the *Fitzgerald* decision. Claimant has failed to prove that any acts taken against him violated the ADA and Rehabilitation Act.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of William Miles is denied, as he has failed to prove each of the four elements required by the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 2, 2008.**

SIGNED this 12th day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master