IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-429
Category III
Claimant: Cleo Bramwell, #45606
Address of Claimant: ACC, P.O. Box 300, Canon City, CO 81215-0300

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER came before the Special Master for hearing on March 7, 2008. This hearing was held at the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Present were the following: Cleo Bramwell (Claimant); and Willow Arnold, attorney for Defendants.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Defendants' Exhibits A through X were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August 15, 1979. Claimant was placed at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant discharged his initial sentence on July 21, 1980.

Claimant returned to DOC custody on September 25, 1981. He returned to BVCF and then was transferred to other institutions. Claimant was discharged from that sentence on June 18, 1992. Claimant returned to DOC custody on February 24, 1994. He was incarcerated at ACC and then granted parole in 1996. Parole was revoked, and Claimant was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. That sentence was discharged on December 26, 1996.

Claimant came back into the DOC system on November 13, 1998. He was placed at ACC and other facilities. He also was placed on parole. That sentence discharged on August 29, 2000. The present commitment began on January 14, 2005. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC) and then transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. On March 2, 2006, Claimant was placed back at ACC

3

where he remained until he was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado on March 22, 2006. Claimant returned to ACC on July 23, 2007.

In his initial claim form, Claimant checked only the box for mobility impairment. Claimant stated, in part, as follows:

> I have had three lower back surgeries in DOC. 3 laminectomies 1 fusion. I do not remember all of the dates of the surgery but they were done by a Dr. Schroyer at the State Hospital while I was incarcerated in DOC from 1979 to 2005. I have had bottom bunk restrictions. And I still do to date.

When answering the question concerning discrimination against him by DOC and its staff, Claimant stated as follows:

> I was forced to work hard labor jobs, at Limon C.F., Arrowhead labor crews, Buena Vista labor crews. DOC knew of my back injuries but made me work anyway. If I refused to work I would be written up and lost good time. Lost housing put in segregation.

Claimant filed a supplemental form concerning mobility. Claimant stated, in part, as follows:

> I cannot climb stairs well and use bottom bunks. I no longer walk well.
> I am limited re many recreation facilities. I can't sleep well on hard mattresses and bunks. At CTCF I could not use arts & crafts or movies, they were upstairs (etc), I feel I do much harder time than most because I can do less than they can.

Attached to the supplemental form was a medical record reflecting that an L4 fusion was done on Claimant on December 12, 1990 by Dr. Shroyer. That record also reflects that Claimant had a laminectomy on March 28, 1984. A disc excision and hemilaminectomy were done on February 17, 1987.

Claimant submitted various portions of his medical records. Many of those records reflect long-term back problems with continual pain.

At the hearing, Claimant testified that he had three major surgeries while in DOC custody. He continues to have back pain that affects everything that he does, including walking. Claimant indicated that he has permanent disabilities. He cannot bend or twist. He has difficulty walking and must stop and rest after one hundred yards. He cannot walk around the track out in the yard. He is limited in what he can lift, having a twenty-five pound restriction. He has great difficulty climbing stairs. He stated that he has numbness in the back of his left leg. He has had to use a cane and walker at times in the past. He believes that he has been the victim of discrimination when he was not granted restrictions for lower tier and lower bunk. He testified that he cannot get into a top bunk.

On cross-examination, Claimant testified that his mobility impairment claim is predicated on his back problems. These began as the result of a motorcycle accident. He testified that he cannot lift weights because of his back problems. Claimant stated that he could not walk for a period of time after the first surgery. He has used a cane and walker in the past.

Defendants presented Dr. Neufeld as an expert witness. Dr. Neufeld testified that Claimant has had back problems and surgeries. There is residual left side pain and numbness. Claimant does have trouble going up and down stairs. Claimant has some restrictions that preclude lifting and working on wet floors. Dr. Neufeld testified that Claimant will never be one hundred percent, and additional surgery would not be helpful. Dr. Neufeld stated that Claimant could perform his activities of daily living. Claimant stated that every facility in DOC re-evaluates an inmate for restrictions when that inmate first arrives.

In rebuttal, Claimant testified that he needed restrictions due to his back problems. Claimant testified that he was ordered to work on wet floors and that he was concerned about additional injuries. He was required to move rocks in 1999. Claimant had trouble getting restrictions in the past in order to protect his physical condition.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, Claimant must establish that he was disabled on or before August 27, 2003. The Special Master may consider matters that post-date August 27, 2003 only if there is establishment of a disability prior to that date. In addition, Claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act prior to that date.

The evidence in this case reflects that Claimant was mobility disabled during the time of his third surgery. He was required to use a walker and then a cane. His ability to walk was affected at that time.[2] The evidence also reflects that Claimant has had difficulties walking since the third surgery. Though there is one entry reflecting a concern of manipulative behavior on the part of Claimant, the Special Master finds that the back condition and its effects on his ability to walk are real and not imagined.

The Special Master finds that Claimant is a member of the class based upon what has transpired since 1990. Claimant's ability to walk has been affected by his back condition off and on,

---

[2] Both sides at the hearing dealt with Claimant's present condition. The Remedial Plan requires establishment of a disability on or before August 27, 2003. A claimant may not be disabled at the present time but was in the past. The Remedial Plan does not require a condition to continue into the present.

5

and this qualifies under the Settlement Agreement.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must show that he was the victim of discrimination prohibited by the ADA on or before August 27, 2003. Only if he can establish this may he seek relief for something that occurred after that date.

Claimant testified that he was discriminated against when his restrictions for bottom bunk/bottom tier were not honored. He specifically discussed his time at CTCF when staff required Claimant to work in the kitchen and to take a top bunk. He also indicated that he was requested to go to second tier at BCCF.

The testimony of Claimant was not specific concerning dates and details regarding what occurred. The Special Master can appreciate that time has a different meaning in the prison context, with few benchmarks to use in delineating what may have occurred and when. The evidence reflects that Claimant was given appropriate restrictions after his surgery in December, 1990. The Special Master finds that Claimant's testimony concerning being forced to work in the kitchen at CTCF is credible and is accepted. At that time, Claimant had appropriate restrictions and those were violated. Claimant was placed at risk, and discrimination did occur.

The evidence does not support a finding of any continuing discrimination. Claimant has back problems and pain. His left leg has residual problems. There simply is insufficient evidence to substantiate any discrimination on the part of DOC staff since Claimant came back into custody on January 14, 2005. The Special Master will limit this order to the periods of time that Claimant was at CTCF in 1990-91 and 1996.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant suffered mental anguish due to his back condition when required to work on wet floors in the kitchen at CTCF. Claimant is awarded $200.00 as damages.

IT IS HEREBY ORDERED that the claim of Cleo Bramwell is granted, in part, and he is awarded damages in the amount of $200.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Cleo Bramwell is denied, as he has failed to prove each of the four elements required by the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

6

an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 2, 2008.**

      SIGNED this 12th day of March, 2008.

                              BY THE COURT:

                              */s/ Richard M. Borchers*

                              _____
                              Richard M. Borchers
                              Special Master