IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-431
Category III
Claimant: Mike Fleming, #100942
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER came before the Special Master for hearing on February 28, 2008. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado. Present were the following: Mike Fleming (Claimant); and Willow Arnold, attorney for Defendants.

    Testimony was received from Claimant. He offered into evidence Exhibit 1, and it was admitted. Defendants presented the testimony of Dr. Orville Neufeld, D.O. Defendants' Exhibits A through X were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

    After final closing arguments, the case was taken under advisement. Claimant was granted additional time to review his medical records and submit additional exhibits. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 4, 1999. He was placed at the Denver Reception and Diagnostic Center (DRDC) for testing. He then was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He remained at SCF until he went to the Four Mile Correctional Center (FMCC) in Canon City, Colorado on July 18, 2000. He then was released to a community placement.

Claimant came back into DOC custody and was placed at FMCC on July 18, 2000. He was transferred to the Skyline Correctional Center (SCC) in Canon City, Colorado on July 23, 2001. Claimant was placed then on the Arrowhead Correctional Center (ACC) in Canon City, Colorado on May 20, 2003. He was paroled on April 1, 2004. Parole was revoked, and Claimant came back into DOC on October 6, 2004. He was placed back on parole on December 30, 2004. Claimant absconded from supervision and his parole was revoked. He went back through DRDC on November 16, 2006. He was transferred to the Bent County Correctional Facility (BVCF) in Las Animas, Colorado on December 15, 2006. He then was transferred to the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado on January 11, 2007. Claimant finally was transferred to the LCF on February 6, 2007.

In his initial claim form, Claimant checked the box for mobility impaired. Claimant stated,

3

in part, in his claim form:

> I suffer from detached quadriceps on both knees. I cannot walk without the aid of crutches. I can't go up or down stairs. I cannot sit for an extended period of time. I cannot walk on uneven terrain paved or unpaved. I cannot perform physical labor without falling because if I don't use my crutches I fall.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated, in part, as follows:

> I cannot work most jobs because of my disability. I am being treated the same as people that refuse to work. I have limited or restricted use of recreation, day room time, certain programs such as music room use and since I don't have a job here at Limon they won't house me in a handicap cell because they aren't used for intended purposes instead they are used as rewards for those with jobs as single cells.
> I need a handicap cell for the use of grab rails and the raised toilet to minimize my risks of falling, and incurring more injuries. I have fallen several times getting on/off the toilet. There is also the issue of monetary difference between being unassigned and working. My health is in decline because I cannot go to recreation as others. I need to be at a medical facility.

At the hearing, Claimant testified that he received crutches from DOC on June 30, 2006. He testified further than he had received an appropriate cell and toilet while at BCCF. He explained that he had problems with the quadriceps since September, 2005. He has fallen, and he cracked a rib and elbow as the result of one fall.

Claimant stated that he been unassigned at several facilities but not for medical reasons. He has requested a handicap-accessible cell but had not received one. He cannot climb stairs and, as a result, had no access to the music room at LCF. He testified that he believed he should be at a medical facility due to his physical problems. He indicated that nothing is set up for handicapped inmates at LCF. He had sought a job, but no one would hire him.

On cross-examination, Claimant stated that the accident was in September, 2005. His physical problems began at that time. He testified that he was able to walk and run before the accident. He had pain prior to September, 2005, but he had no major disability. He has had to use his crutches a lot since the accident.

Defendants presented the testimony of Dr. Orville Neufeld, D.O. and offered several exhibits into evidence. Claimant fell from a building in September, 2005 and ruptured both quadriceps. *Exhibit O*; *Exhibit S*. Claimant has used crutches since that time. Dr. Neufeld testified that Claimant's medical records reflected only minor complaints prior to September, 2005. Claimant does need to use crutches, as his balance was affected by the fall. Claimant cannot walk up stairs as the result of his injury in September, 2005.

Claimant was granted time to submit additional documents for consideration by the Special Master. Claimant did submit two documents that reflected that he had crutches as part of his personal property on November 16, 2006.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** Each disability must be examined separately. A claimant must show that he had a listed disability on or before August 27, 2003.

There is no question that Claimant is presently mobility impaired. That is the result of the fall that occurred in September, 2005. The evidence submitted by both sides reflects that Claimant had minor health and physical issues prior to the fall in 2005. Claimant testified that he was able to run and get around before the fall. Claimant's disability commenced with the fall in September, 2005.

The jurisdiction of the Special Masters is limited. The Settlement Agreement provides that a claimant had to be disabled and the victim of discrimination on or before August 27, 2003. A claimant who was so disabled could then amend his claim to raise issues of continuing discrimination after August 27, 2003. Claimant became disabled in September, 2005. The Special Masters have no jurisdiction over his claim. He was not disabled on or before August 27, 2003.

Claimant may pursue his own lawsuit under the ADA and Rehabilitation Act for anything that may have occurred after the fall. He may not pursue his claim for the reasons noted.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC.?** This question does not need to be answered, as Claimant was not disabled on or before August 27, 2003. The Special Masters have no jurisdiction over this claim.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** This question does not need to be answered, as Claimant was not disabled on or before August 27, 2003. The Special Masters have no jurisdiction over this claim.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered, as Claimant was not disabled on or before August 27, 2003. The Special Masters have no jurisdiction over this claim.

IT IS HEREBY ORDERED that the claim of Michel W. Fleming is denied, as he was not disabled on or before August 27, 2003 and there is a lack of jurisdiction over his claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 9, 2008.**

SIGNED this 17th day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master