UNITE STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 92-N-870 (OES) Consolidate with Civ. Act No 96N-343

Jesse Montez et al.,
     Plaintiffs,

vs.

Bill Owens et al.,
     Defendants

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 07 2008

GREGORY C. LANGHAM
                    CLERK

Claim No. 03-088
Category III
Claimant  Patrick O'Boyle #83672
Address of Claimant  FCF POB 999 Canon City, Col 81215

Objection To Final ORDER of Special Master

This matter resulting in this formal objection came before the Special Master R.C Davidson on the claim(s) of Patrick O'Boyle #83672 Claim No. 03-088. The Hearing was held at the Fremont Correctional Facility September 10, 2007. Complainant P. O'Boyle appeared pro se. Defendants were represented by R.C. Huss Esq. The Claimant and Orville Newfield D.O. were called to testify. To make note, Claimant O'Boyle contacted the diagnosing doctors by mail to request that they testify concerning his degenerative joint desease but they did not respond to his attempts. The claimant was obstructed from any other contact

with the diagnosing specialists due to his incarceration and indigency.

The Special Master, R.C. Davidson, alleges that he reviewed all testimony and all documents filed by both sides. To make important note - the Special Master does not state he reviewed all the exhibits A1-A30 which are critical to the complainant's claim/issue.

This formal objection is an objection to Special Master's seemingly, intentional fabrications, embelishments & facts unsupported in record that are contained in his finding of fact and conclusions of law that resulted in the Special Master's wrongful, discriminatory, arbitrary, and capricious dismissal of Claimant O'Boyle's irrefutably meritorious claim(s).

## I

## BACKROUND

The Claimant will refer the reviewer of this Formal Objection to pag 1 through page 3 of the Final Order generated by Special Master Davidson for the backround details of the Montez case but will note the following information on page 2 and 3 of the Final Order for reference.

Section III of the Remedial Plan provides the following definitions. (and information)

2

A covered Disabilities

The persons covered by this plan are individuals with mobility ... impairments.

B Qualified Inmates

Inmates with permanent disability/impairment(s) which <u>substantially limit his ability to perform major activities</u> (To be reasonably included here - without pain, discomfort, suffering and intesifying the medical & physical condition)

C Permanent Disability/Impairment

A condition which is not expected to improve within six months. (In the case at hand, my progressive degenerative joint disease) (See all exhibits for details)

The Special Master shall evaluate individual damage claims by considering the following questions:

1) Is the claimant a disabled individual who is a member of the class (In this case, YES, class/category III Please note medical restrictions Exh. A - highlighted)

2) Was the claimant otherwise qualified to participate in programs or recieve benifit or services offered by CDOC? (Answer YES - he is an inmate who is incarcerated with professionally diagnosed physical impairment. See All Exhibits this filing)

3

3) Was the claimant discriminated against by CDOC because of his disability? (e.g., were accomodations requested and denied because of the disability?) (Answer YES - he is not allowed to participate in vocational training programs due to the fact his medical restrictions will not allow him in shop training atmosphere/situations) (See Exh. A)

4) Did this conduct by CDOC cause the claimant harm and if so, what was the appropriate Remedy? YES - Denied Programs

This Order (above) controls the adjudication of all claims and must be followed by the Special Master. A claimant must establish by preponderance of the evidence each of the above four criteria.

## II

## Summary of Complaint

The core issue is that complainant O'Boyle is being denied available vocational training programs due to correctable medical condition (Programs i.e. vocational welding, machine shop training, Furniture Shop training, Building trades carpentry etc.)

The correction of the medical condition is surgery or pediatric footwear so that the complainant can participate

4

in the shop training atmosphere.

To Note - Please listen to un review the tape of the hearing held September 10, 2007, Fremont Correctional Facility

### Statement of Facts

Pursuant to the four Montez criteria listed above the complainant asserts as follows:

1) The claimant is disabled by severe degenerative joint disease that, at this time, is most prevalent in his large toe(s) joints. Chronological Order

a) Exh A - Query Medical Information
no standing over 40 min then 2 hr sit down

b) Exh B - 1/18/95 - Dr. Podiatric Medicine (DPM) J. Gremillion - patient suffers [A.] severe degenerative joint disease..., recommend athletic type shoes..., if pain continues... perform arthroplasty procedures (surgical intervention - recommended 14 yrs ago)

Exh c) 1/9/98 - X Rays - show quite significant degenerative arthritis of MP joint ... one could consider Keller procedure with cheilectomy - remove spurs  Dr. P. Iverson, Medical Centers - Willmar - Willmar Minn.

d) Exh D  2/14/00 Dr H. Krieger DPM Podiatric Progress Note - ... Patient presents with constant pain in both great toe joints. This problem has been present for 6 years

5

...Treatment plan -. He was told shoes were his responsibility ... surgical correction seems to be most appropriate option ... soft shoe ... could serve to increase comfort given his deformity but, ultimately, the joints are degenerated and will require some form of replacement

Exh E   3/13/00 Dr H Krieger DPM - There is severe degenerative joint disease present in both 1st MPJ's... The joint is painful to manipulation and there is obvious difficulty in shoes - prefers more <u>functional implant as was offered as an option</u>

Also please Review state exhibits 3, , A1, A2, A5, A8, <u>A16</u>, A11, A15, <u>A21</u>. It should be <u>noted</u> that surgical correction was recommended 14 years ago

Most important to note that starting in 2003 the complainant has been refused access to a Podiatric doctor with the CDOC claim that they no longer contract with this kind of specialist (deliberate deception) so the ongoing degenerative medical/physical condition has not been diagnosed as to it's increasing severity for five years. The complainant states as sworn fact that the painful condit-

6

ion has expanded and worsened so that there is an increase in limitation of the complainants mobility and his ability to perform major life activities.

The above facts as stated by professional medical specialists clearly establish the serious degenerative medical physical impairement that severely limits the complainants mobility. The specialists all recommend surgical intervention or special podiatric shoes to help and assist the complainants ability to perform daily functions; i.e. CDOC vocational training programs.

As can be seen in the medical restictions listed (Exh. A) the complainants ability to participate in vocational programs is obstructed. His case manager will not put him in for the training programs due to the medical restrictions. He cannot participate in the ~~little~~ training available.

Therefore the claimant states that the accommodations requested, special podiatric shoes, are a reasonable request if the prefered surgery is not available. This accommodation

7

has been refused.

The complainant avers that it cannot be contested that the treatable and correctable medical condition is irretrievably intertwined with the denial of vocational training programs that CDOC is obligated to offer Mr. O'Bayle for his rehabilitation.

Further the complainant's participation in the available vocational training programs is an essential component of an inmates preperation to meaningfully re-enter society. Also a material part of mental preperation to re enter a community living situation.

The core of the complaint is described above, with the supporting diagnosis by professional doctors, surely establish the history of and existance of the mobility impairment and CDOC's failure to accomidate a legitament complaint.

Returning to paragraphs 2, 3 and 4 on page three (3) of the Final Order of the Special Master, I refer to specific misinformation and deceptions presented (paragraph 4, page 3)

Reference is made by the Special

to factors reported by a medical doctor (not a podiatrist) Lily that is intentionally misleading (To note Dr. Lily is not a podiatrist he refered complainant O'Boyle to a podiatrist Dr Doctor B Clark - please see Exh G + H Podiatry Clinic Dictation by Dr. M.B. Clark).

To explain, Dr. Lily allegedly reported that I informed him I was running 25 miles a week. This is true BUT the information missing that is critical is that I had borrowed podiatric shoes from an inmate who had a similar joint disease ailment. When this inmate left that facility (Walsenburg (CCA) Colo.) I could not run anymore, I only had state boots and could not afford canteen Athletic shoes. I was trying to convince Dr. Lily to pressure medical to get me some podiatric shoes for health reasons.

It is especially critical to clarify the fabrication and misinformation generated by Special Master Davidson in paragraph 5 of page 3 in the Final Order.

The Special Master states that the complainant was offered fusion surgery. This is true but it was decided, after consultation with podiatric doctor/specialist, that an implant procedure was

more appropriate (See Exh. H - by D. Wentz "Dr. Gemillian, Dr. Krieger who have recommended total joint implant arthroplasty. See Also Exh. F and G by Dr. Clark) To Note - the implant procedure was the surgical intervention recommended and decided upon. Complainant O'Boyle refused "fusion" surgery because that procedure WAS NOT the surgery he was supposed to get and that was decided upon by the professional specialists named above. There was a mistake made by CDOC medical care OR an intentional attempt to perform a "cheaper" procedure that would cripple Mr. O'Boyle.

Referring to paragraph 7 on page 4, the Special Master most blatantly distorts facts by stating the claimant was offered "larger state boots" to prevent the toes from being injured.

To make a statement of fact — Nowhere in any of the podiatric doctor's reports by specialists in the medical field who are the only individuals with authority to diagnose or give a prognosis is there mention of "Lager boots" being any kind of a cure/remedy for the physically painful "Muskuloskeletal - appreciated advanced hallux valgus deformity" (Exh G Dr B Clark pary D).

In fact ALL professional podiatrists of authority state that the only option for the deformity as for treatment is surgery. As related by podiatrist Dr. H. Krieger on page 2 of Exh. ... given the deformities, but ultimately, the joints are degenerated and will require some form of replacement...)

The complainant asserts that this statement of "larger boots" being some sort of a medical or physical remedy to a serious mobility problem that requires periods of only 40 minutes standing is a fabrication not supported by record or is an embelishment/adornment that Special Master Davidson USED to "shore up" a very unfounded dismissal of the complaint immediately at issue.

It is to be noted that not even the state's agent at the September 10-08 hearing said or mentioned "larger boots" as an offered remedy. It must be pointed out that "larger boots" could NEVER be any kind of viable treatment or solution when special medical footwear or surgical intervention is recommended by train professional specialist(s).

III

Objections and Clarifications To Special Master's Conclusions of Law

On page 4 of the Final Order by Special Master the first issue to consider is whether the Claimant is disabled? meaning ① does he have a physical impairment that substantially impairs one or more major life activities ② is there a record of such impairment or ③ being regarded as having such impairment. 42 USC § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B); Also see Reh Act 29 U.S.C. § 794 et seq. and A.W.D.A. Act 42 U.S.C. 1201 et seq.

This fact has unquestionably been proven by the Exhibits and the medical restrictions in record. The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that significantly restricts an individual as to the manner or duration he can perform a major life activity as compared to the average person in general population who is performing the same activity (29 C.F.R. § 1630.2(J)(1). "Major life activities" include performing manual tasks, walking... learning, working. 29 C.F.R. 1630.2(h) 2(i)

The claimant simply requests the reviewer of fact to consider the medical restrictions enforced and placed upon the claimant - he is only allowed to stand for 40 minutes in a 260 minute period - THIS IS NOT AVERAGE OR NORMAL MOBILITY HE CANNOT PERFORM NORMAL JOB DUTIES IN MAINTENANCE OR CONSTRUCTION NOR ATTEND VOCATIONAL TRAINING IN A MEANINGFUL MANNER, involving walking, learning or working. (29 CFR § 1630.2(4).2(i)

The Remedial Plan limits the class of persons to those with mobility impairments. Additionally the Remedial Plan (III B) and III(A) limit participation to inmates with permanent physical disabilities/impairments. In this immediate case the claimant can and does prove a permanent, ongoing, increasingly worsening, incurable degenerative joint disease established in record for 14 years.

To make specific note the ADA and Remedial Plan refer specifically to an inmates impairment that limits his ability and restricts him from performing normal walking, learning and or working that is a permanent disability.

The complainant asserts that a fair and simple review of all exhibits

and the states Exhibits (A1-A731) along with the medical Restrictions listed by professional doctors clearly prove the fact that his situation is squarely covered and meet the necessary criteria that the Special Master ignored. Simply, there is no question that his mobility impairment is affecting necessary daily activities and his ability to work and learn.

    Addressing criteria 2 specifically, "was the claimant otherwise qualified to participate in programs ... offered by DOC. The answer is YES, if he were supplied podiatric footwear meeting particular and explicit requirements or (not included in this objection) surgical intervention recommended by the podiatric specialist doctors involved.

    It is clear that the physical deformities in this situation restricts normal mobility of the claimant obstructing and denying him access to rehabilitative vocational programs offered to normally ambulating inmates.

    It is also <u>very clear</u> that the Special Master somehow, overlooked or ignored the obvious factors in medical record that shows substantiating truths about the proven mobility

impairments suffered by the claimant.
  To make note - It must be clarified that the complainant NEVER REFUSED digital replacement surgery as erroneously stated by Special Master in his finding of facts, page 5, paragraph 8, he refused the "fusion procedure" that was not recommended. Why would the Special Master assert this? (See Treatment Plan Exh. H pg1 - "I recommend a total joint implant..." not a fusion)
  The claimant reiterates, he is not making a medical claim in this Objection. He is stating he is being denied access to necessary vocational training programs he has a right to participate in. Further, the situation is easily "accomidated" by supplying special soft soled leather podiatric footwear.
  It is important to note that the claimant has observed numerous inmates in this facility with special shoes but cannot find out how the inmates recieved the special footwear.
  The complainant believes that a serious, unfair and discriminatory dismissal of his claim has occurred and that the facts as explained

above clearly satisfy all criteria required by the remedial plan; Class III to have accomidation(s) made so that the complainant can go on with his rehibilitation by getting important vocational training that is offered to all other inmates.

The claimant requests a full review of all components and factors explained, exhibits presented and all of the CDOC/State exhibits (A1-A31) and that the dismissal be reversed with accomidation(s) made/ordered by this court.

Respectfully Presented

P. O'Boyle

Date Signed
March 1, 2008