IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN-OES

JESSE (JESUS) MONTEZ, *et al.,*

    Plaintiffs, as representatives of themselves and all others similarly situated in this class action,

    v.

BILL OWENS, *et al.,*

    Defendants.

___

**STIPULATION REGARDING STATUS OF COMPLIANCE BY THE COLORADO DEPARTMENT OF CORRECTIONS WITH THE MONTEZ REMEDIAL PLAN**

___

    The Plaintiff Class, through their counsel Paula Greisen and Jennifer W. Riddle of King & Greisen, LLP and Edward T. Ramey and Lara E. Marks of Isaacson Rosenbaum, PC and the Defendants, through counsel Elizabeth McCann and James Quinn of the Office of Attorney General, hereby enter into the following Stipulation with respect to the status of compliance by the Colorado Department of Corrections ("CDOC") with the Montez Remedial Plan, as follows:

A. The Remedial Plan was entered as an Order of the Court on August 27, 2003. The Remedial Plan provides that the Defendants had a two-year period, until August 27, 2005 to achieve substantial compliance with the terms of the Plan. On August 29, 2006, the CDOC admitted non-compliance with the Remedial Plan as of August 27, 2005, except with respect to the architectural requirements of the Remedial Plan and the parties agreed that certain remedies would be entered against the CDOC and that there would be a new compliance date of July 27, 2007.

B. The Defendants hereby stipulate that CDOC was not in substantial compliance with the Remedial Plan by July 27, 2007, except the architectural plant provisions of the Remedial Plan. As a result, the remedies outlined below shall be implemented. These remedies are not intended to serve as a checklist for substantial compliance but rather as a sanction for CDOC's non-compliance. In addition, the compliance period is hereby extended as provided below, however,

the monitoring period for the architectural-physical plant requirements shall have ended effective July 27, 2007 except as provided below.

C. The next date to determine whether substantial compliance has been achieved is May 1, 2009. If the parties do not agree that substantial compliance has been achieved by that date, there shall be another compliance hearing and Judge Kane will determine whether substantial compliance was achieved by that date. Class counsel will provide an agenda for counsel for the defense ten days prior to meetings regarding compliance issues prior to the next compliance deadline.

D. The parties shall agree to establish discovery procedures to provide counsel for the Plaintiff class discovery on all facilities and all aspects of the Defendants' compliance with the Remedial Plan. If the parties cannot agree on these procedures, they will submit the issues to Judge Kane.

The following remedies shall be implemented for the failure to achieve substantial compliance with the Remedial Plan by the required date of July 27, 2007:

1. Inmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses. Unless it is determined that the inmate intentionally broke his/her own glasses, CDOC will replace damaged or broken glasses free of charge on an as needed basis. If the preponderance of the evidence shows that the inmate intentionally broke his/her glasses in any particular year, he/she will be responsible for the replacement costs of those glasses.

2. CDOC will provide long-lasting batteries for hearing aids. Such batteries shall be kept in stock in facility clinics and available to inmates with hearing aids on an as needed basis. CDOC will identify upon intake at DRDC the size and or type of batteries needed for every individual's hearing aid.

3. CDOC will conduct disability screenings based upon mutually acceptable criteria and will re-screen inmates as appropriate. Such criteria will be developed by the parties with the party's experts no later than June 1, 2008. If the parties cannot agree on these criteria, the matter shall be submitted to the Court for a forthwith review. At that time, Judge Kane will appoint such independent expert(s) as he deems appropriate and, with their assistance, establish the criteria to be used for disability screenings.

4. CDOC will immediately adhere to and implement any Court Order or Special Master's Order determining the disability classification of a class member unless there is a documented and substantial change in the class member's condition to warrant a change in the classification.

5. CDOC will add American Sign Language classes as a program offered by CDOC to inmates identified as hearing impaired or disabled.

6. As stated in the Remedial Plan, CDOC will provide Sign Language Interpreters for medical visits, except during the routine administration of medications such as med line, to inmates who use ASL as a means of communication. In the event of emergent or emergency situations, CDOC can utilize alternatives means of communication until an interpreter can be provided. In any event, an interpreter will be provided as soon as possible.

7. Any inmate who had an ADA grievance denied or denied as moot since July 1, 2006 (as well as those identified during the deposition of the AIC), may request the office of the AIC to reevaluate such grievances. If it is determined that the grievance did in fact have merit and should have been granted, the AIC shall explain that it was inappropriately denied and shall issue a new response acknowledging the error and what, if any steps, have been taken to address the grievance.

8. CDOC will engage in annual testing for CDOC employees on the requirements of the Remedial Plan in a process and with content that the parties shall agree to within 90 days of the date of this Stipulation. This testing shall be implemented by July 1, 2008 and the results and analysis provide to class counsel annually beginning April 1st of each calendar year.

9. All repairs needed to auxiliary aides shall be completed within sixty (60) days of the day that the inmate reports the need for repair. This time period shall apply to all auxiliary aides, including but not limited to hearing aids and wheelchairs. Inmates who have experienced delays exceeding sixty (60) days between August 27, 2005 and July 27, 2007 for the repair or replacement of wheelchairs, hearing aids, crutches, or canes of any kind (including blind canes or those assisting with mobility issues), are entitled to file a request for compensation for the delay to the office of the AIC and shall be compensated $5.00 per thirty (30) day period he/she was without his/her assistive device beyond the sixty (60) days allotted for repair. From July 27, 2007 forward, inmates who experience delays exceeding sixty (60) days for the repair or replacement of wheelchairs, hearing aids, crutches, or canes of any kind, shall be entitled to compensation of $10.00 per each additional thirty (30) day period he/she is or was without his/her assistive device. Any inmate who believes that he/she has been denied compensation for these matters may file an ADA grievance.

10. CDOC shall immediately arrange to conduct wheelchair clinics at which every inmate who uses a wheelchair may have his/her wheelchair evaluated by a wheelchair specialist for proper fit and to ensure the wheelchair is in good working condition. CDOC will notify inmates in advance of these clinics and allow every inmate that requires the use, either full or part-time, of a wheelchair to participate. If any inmate is unable to attend the clinic for any reason, CDOC will arrange to have his/her wheelchair evaluated as soon as possible, but in no event later than 60 days after the clinic. Any inmate who declines to have his/her

1781596_2

wheelchair evaluated will be required to sign a refusal form.  Upon inspection by the specialist, any wheelchair not to specification shall be repaired as appropriate or replaced within sixty (60) days absent unique circumstances.

11. The TTY machines shall be made available to inmates who require such an accommodation in the same manner the CIPS telephones are available to non-hearing impaired/disabled inmates.  This includes but is not limited to maintaining the TTY machine in an accessible area and eliminating case manager involvement in accessing the CIPS phones.

12. CDOC shall take into consideration the specific need of certain diabetics to use the restroom facilities on a more frequent basis during visitation and at other times than inmates without diabetes.  CDOC will allow requests for bathroom breaks when possible.  If the request cannot be granted, CDOC will find alternative methods of accommodations.

13. CDOC will provide training to cell house and security staff every six (6) months on diabetic test kits available at each facility for use by the non-medical staff.  Such training will occur during roll call and shift commanders will keep a record of each time the training is conducted.  CDOC will post a notice to inform inmates that diabetic test kits are available when medical personnel are not available.

14. Any inmate who has a documented history of hypoglycemia or a hypoglycemic event shall be offered the right to be immediately relocated to a cell with a call button if the inmate is currently housed in a cell that can be locked by CDOC. If the inmate refuses the move, he/she shall indicate such refusal in writing.

15. CDOC shall make all necessary modifications or changes (including architectural changes) to allow all inmates with disabilities who are otherwise qualified to participate in the dog programs offered by CDOC.

16. CDOC shall provide two hearing aides to inmates with hearing impairments who meet the criteria mutually agreed upon by the parties.  If the parties cannot agree upon this criterion by June 1, 2008, the matter shall be submitted to Judge Kane for a forthwith hearing.

17. All hearing impaired inmates who are housed at Colorado Territorial Correctional Facility shall be housed in cells with strobe alarms and CDOC will provide the same proportional number of single cells with strobe alarms as is available to inmates without hearing impairments.  Any hearing impaired inmate who is currently housed in a single-cell without a strobe alarm shall have his/her cell immediately furnished with a strobe alarm.

18. CDOC shall immediately provide vibrating watches to all inmates with hearing impairments or disabilities.

1781596_2

19. Within ninety (90) days of the date of this Order, CDOC shall offer SOTMP Phase II at a designated facility that is comparable to the program currently available at Arrowhead Correctional Facility.

20. In the event that an Accommodation Resolution is lost or damaged, the office of the AIC will provide a replacement copy to the inmate at no cost.

21. CDOC shall establish a consistent, standardized procedure for inmates to obtain jobs within CDOC.  In addition, all inmates considered for a job opening and the decision-making process for the inmate selected for the jobs shall be documented.  This shall be implemented no later than July 1, 2008.

22. If PHP overrides a CDOC medical provider's or a specialists' recommendations for testing or assistive devices, CDOC will bear the burden of ensuring that the testing is otherwise conducted and/or will provide the assistive device at the expense of CDOC.

23. CDOC will implement the recommendations made in the expert reports submitted by the experts or, if there is not agreement, the parties will submit the matters to Judge Kane for a forthwith hearing.  Such hearing will be scheduled at the earliest convenience of the Court and no further discovery will be allowed.

24. All medical co-pays will be waived for any medical treatment related to the covered Montez disabilities and for medical treatment related to diabetic care, except for the newly implemented annual $5.00 co-pay charge assessed to every CDOC inmate.  Class members will no longer be charged the six month chronic care co-pay charge.

25. All inmates with diabetes will be designated as "class members" (rather than IMP or D) and the language about whether they are disabled or not will be removed from Accommodation Resolution forms.  Instead, Accommodation Resolution forms will indicate their status as persons with diabetes and shall indicate that they will receive the below "accommodations as needed":

   a) Access to fingersticks upon request;
   b) Timing of meals with insulin;
   c) Where hypoglycemia or occurrence of a hypoglycemic event is documented, access to housing in a cell with a call button if the lock on the cell the inmate is currently housed in is controlled by CDOC, as described in #15;
   d) When possible, access to bathroom breaks during visitation and during programs and/or alternative methods to accommodate such need;

    e) No co-payments related to treatment for diabetes or diabetes-related conditions excluding the annual $5.00 annual charge assessed to all CDOC inmates;
    f) Access to after-hour testing kits; and
    g) Access to all benefits, services and programs offered at CDOC, regardless of diabetes, including progression to lower level security facilities; and
    h) Annual education on diabetes.

Accommodation Resolution forms shall also indicate that all the benefits of the Montez Remedial Plan shall be provided to these class members. The determination of whether an inmate with diabetes requires accommodation and what that accommodation shall be shall be made by the AIC.

26. In the case of a disagreement between the AIC and any other DOC employee, medical provider or contractor concerning the disability status of an inmate and/or accommodations to be provided, the conclusion of the ADA Inmate Coordinator will be final.

27. CDOC will remedy all problems and/or deficiencies noted in Peter Orleans' report and addendum on architectural compliance within ninety (90) days of this agreement.

28. Clinical services shall immediately establish a position designated to coordinate, administer and/or oversee the scheduling of all repairs and/or replacements of assistive devices at all facilities. This position will regularly communicate the status of these repairs/replacements with the AIC, will coordinate with the office of the AIC to ensure that the devices are properly and timely repaired/replaced and that appropriate accommodations are provided in the interim.

29. Requests for co-pay refunds made under the Amended Stipulation and Order may be submitted by kites directly to clinical services. An accounting of every request shall be maintained by the office of clinical services and reported to the AIC. Any inmate who requests a co-pay refund and is denied may submit an ADA grievance directly to the office of the AIC.

30. Inmates will be provided two (2) copies of their ADA grievances when filed.

31. CDOC will cease taking monies from Montez Damage Claim settlements or payments other than those required for repayment to victim assistance fund – reimbursements.

32. CDOC will post a mutually agreeable notice through the duration of the compliance period in all facilities noting that the compliance period for the Montez case has been further extended. The notice will outline the agreements and remedies contained herein. This posting will be placed in common areas and

1781596_2

    dayrooms at all facilities within forty-five (45) days after the entering of this Order and shall remain until substantial compliance is agreed upon by the parties or determined by the Court. The information contained in this notice will be made available in accessible formats to accommodate inmates with vision impairments.

33. Plaintiff's class counsel will write a letter to the inmates in the AIC database outlining this agreement. This letter will be protected by the attorney/client privilege. CDOC will facilitate the distribution of this letter through internal mail and will provide class counsel with an updated version of the AIC database as well as the location of the individuals in the AIC database. The Special Master and the CDOC shall provide information to Class Counsel regarding the location of claimants and other inmates in the AIC database who are no longer incarcerated within CDOC, to the extent available.

34. The terms of this Stipulation do not preclude the Plaintiff Class from seeking other remedies associated with an assertion of non-compliance with the Remedial Plan by the CDOC at any future hearing by the Court.

35. The defendants agree to reimburse Plaintiff's counsel for attorney's fees and costs incurred up to the date that these sanctions are entered. This amount will be paid within forty-five (45) days of receipt of the billing by DOC. Defendants reserve the right to object to specific billing requests submitted by plaintiffs' counsel. This stipulation does not preclude class counsel from requesting the payment of any costs or fees not paid by the Defendants at any future fee award application.

36. The stipulations and remedies set forth in the August 29, 2006 Stipulation shall remain in place unless modified herein or otherwise agreed to by the parties until substantial compliance is reached.

C. The Parties hereby request that this Court accept this stipulation, vacate the current compliance hearings and enter an Order in accordance with this Stipulation.

    STIPULATION TENDERED BY:

    Dated this 31st day of March, 2008

    By:    /s/ Paula Greisen
    Paula Greisen, Esq.
    Counsel for the Plaintiff Class
    KING & GREISEN, LLP
    1670 York Street
    Denver, CO 80206
    greisen@kinggreisen.com

1781596_2

By: /s/ Elizabeth H. McCann
Elizabeth H. McCann, Esq.
Deputy Attorney General
Counsel for Defendants
1525 Sherman Street, 4th Fl.
Denver, CO 80203
beth.mccann@state.co.us

STIPULATION APPROVED BY THE COURT:

DATED this __ day of _____, 2008.

                                                   BY THE COURT:

                                                 _____
                                                 JOHN L. KANE
                                                 United States District Judge