IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 02-373
Category II
Claimant: Alfonso Hollis, #52393 (by his brother Lieutenant Hollis, #41768)
Address of Claimant: 1980 Verbena Street, Denver, CO 80220
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER comes before the Special Master on the claim filed by Alfonso Hollis (Claimant) when he was in the custody of the Colorado Department of Corrections (DOC). He was placed at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado at the time he filed his claim with the Special Masters.

      Claimant has since passed away. His brother, Lieutenant Hollis (Brother) has taken over the claim and has requested that it be adjudicated. That request will be granted. The Brother has requested that the claim remain in Category II and not be elevated to Category V.

      Since this is a Category II claim, the claim must be resolved on the documents submitted by both sides. Defendants have filed a response to the claim. The Brother was granted up to and including March 17, 2008 in which to file a reply to the response of Defendants. No further pleadings have been received from the Brother.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC initially on November 9, 1984. He was placed at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant was granted parole on October 23, 1986 and then discharged that sentence on April 23, 1987.

Claimant returned to DOC custody on March 27, 1990. He was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado for evaluation and testing. Claimant was transferred to the Arrowhead Correctional Center (ACC) in Canon City, Colorado and then placed on parole. The second sentence was discharged on April 11, 1991.

Claimant returned to DOC custody on September 29, 1993. He was evaluated at the Denver Reception and Diagnostic Center (DRDC) and then transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. Claimant was released to a community placement in Denver on November 17, 1994. Claimant absconded from the community placement and eventually was returned to DOC custody. The sentenced discharged on June 27, 1996.

Claimant came back into DOC custody on May 6, 1998. He was taken back to DRDC and then taken to BCCF. He was transferred on November 12, 1998 to the Fremont Correctional Facility

(FCF) in Canon City, Colorado. On February 26, 2001, DOC transferred Claimant to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Claimant was granted parole on April 24, 2002. Parole failed, and Claimant came back to DOC custody on May 24, 2002. Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. On September 17, 2002, Claimant was sent to FLCF. He remained at that facility until transferred back to FCF on June 21, 2004. Claimant was discharged on April 24, 2005. Claimant passed away after his release from DOC custody.

Claimant filed a claim form in May, 2004. He checked the boxes for mobility impairment, vision impairment, and diabetes. In his claim form, Claimant stated, in part, as follows:

> Due to my current medical conditions I have limitations that affect my quality of life. I have diabetic related problems that also affect other areas of my life, such as my mobility, and vision. I experience severe recurring medical side effects due to my diabetes that cause me trouble in maintaining a job. Due to DOC's current policies regarding my medical condition I feel that my right to good quality medical treatment is being violated.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

> I believe the main discrimination that DOC has shown toward me is their attitude about giving me a pro-active treatment of my illness. I can't exercise like the doctor asks, because my feet are in very poor condition, and my request for special shoes have been denied. Also they have been unstable in treating me, changing my medication quickly and not giving the medicine time to work.

In his supplemental form for vision, Claimant stated, in part, as follows:

> The Claimant's vision problems could be described as being far sighted meaning that the Claimant has difficulty seeing objects far away.

In his supplemental form for diabetes, Claimant that he had not received appropriate shoes. He indicated that he had a liver condition, and that this condition was not treatable until his diabetes was under control. In his supplemental form for mobility impairment, Claimant stated, in part, as follows:

> I have difficulty in walking; numbness in my feet; and pain in aforementioned areas and my legs and this includes cuts developing as a result of this condition produces severe pain.

In response to the claim, Defendants have submitted a number of pages of Claimant's medical records. The medical records reflect that Claimant was diagnosed with diabetes in 1999. He began taking insulin and other medications. Claimant also had other medical conditions, including hypertension and chronic obstructive pulmonary disease. *Exhibit O*. Defendants also submitted

4

copies of eye examinations which indicated that vision in both eyes was correctable to 20/20.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** Each of the claimed disabilities must be examined separately.

**Diabetes**: Claimant was diagnosed as having diabetes in 1999. Review of the medical records reflects problems in controlling the disease. There is no question that Claimant was diabetic from 1999 through 2005. Claimant was a member of the class as diabetic.

**Vision Impairment**: The medical and optometry examinations indicated that Claimant's vision was correctable to 20/20. *Exhibit M*. Claimant was provided glasses in 2001, 2002 and 2004. *Exhibits H, K and S*. No evidence has been presented by either side that any diabetic retinopathy was present during the examinations.

No evidence was presented by Claimant that his ability to do the activities of daily life was hindered by vision problems. *See, Toyota Motor Manufacturing v. Williams*, 534 U.S. 184 (2002). In addition, there is no evidence that the DOC-issued glasses did not correct the vision problems. If a corrective measure can be utilized, then there is no recognized disability. *Sutton v. United Air Lines,* 527 U.S. 471 (1999). Claimant and Brother have failed to establish that Claimant had a vision impairment on or before August 27, 2003, as defined by the Settlement Agreement. Claimant was not a member of the class as vision impaired.

**Mobility Impairment:** The same problem exists with the claim of mobility impairment. There has been no evidence presented that Claimant could not walk. The evidence reflects just the opposite. *Exhibit O*. Claimant was not mobility impaired, as defined by the Settlement Agreement, on or before August 27, 2003. Claimant was not a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the evidence provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In his claim form concerning discrimination by DOC, Claimant wrote as follows:

> I believe the main discrimination that DOC has shown toward me is their attitude about giving me a pro-active treatment of my illness. I can't exercise like the doctor asks, because my feet are in very poor condition, and my request for special shoes have been denied. Also they have been unstable in treating me, changing my medication quickly and not giving the medicine time to work.

The medical records submitted by Defendants reflect that Claimant did receive medical care for his diabetes. He was on insulin and Glucovance. From 1999 on, Claimant received care for this disease. It is clear that Claimant had questions about the quality of care that he was receiving.

The United States Court of Appeals for the Tenth Circuit has held that the ADA and Rehabilitation Act are not available to litigate claims of medical negligence or malpractice. *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134 (10th Cir. 2005). To the extent that Claimant alleged inadequate or improper medical care, such claim would have to be pursued by separate action under the Eighth Amendment. The Special Masters are precluded from examining the quality of care provided by DOC staff to a claimant.

Reviewing everything submitted by Claimant or on his behalf, there is no evidence of discrimination that is actionable under the ADA and Rehabilitation Act. In light of *Fitzgerald,* this Special Master is precluded from examining the quality of medical care provided to Claimant by DOC medical providers. Brother retains the right to bring a separate action under the Eighth Amendment concerning the quality of care provided to Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative and there is a lack of jurisdiction over this claim, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Alphonso Hollis is denied, as there has been a failure to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 9, 2008.**

SIGNED this day of March 21, 2008.

BY THE COURT:

/s/ Richard M. Borchers

_____
Richard M. Borchers
Special Master