IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

   Plaintiffs,

-vs.-

BILL OWENS, et al.,

   Defendants.

---

Claim Number: 03-106
Category: III
Claimant: Phillip Carter, 68880
Address of Claimant: c/o Brice A. Tondre, Attorney at Law, 215 South Wadsworth Boulevard, Lakewood, CO 80226

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Phillip Carter. This hearing was held at the offices of Legal Resolution Center at Dominion Plaza, 600 17th Street, Suite 2800-South, Denver, CO 80202 on February 11, 2008, before Richard C. Davidson, Special Master. Mr. Carter appeared with his counsel, Brice Tondre, Esq. Defendants were represented by Ms. Willow Arnold, Esq. Prior to the hearing, Claimant waived all his witnesses except for himself. Claimant Phillip Carter and Orville Neufeld were called, sworn and testified. Counsel requested to submit closing arguments in writing, and the request was granted. The Special Master has reviewed the testimony and all documents filed by both sides including the written closing arguments. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to

Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

      2.  The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

>   1.  Is the claimant a disabled individual who is a member of the class?
>   2.  Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3.  Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4.  Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Phillip Carter submitted a claim which was assigned claim number 02-201. After review, the claim was elevated and assigned claim number 03-106. The claim is premised on alleged permanent mobility and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Carter first entered CDOC custody in 1992. Over time, he has been on parole and has been brought back into custody several times. This claim concerns the time from 1999 to 2001. During this time, Claimant was housed at DRDC and SCF.

4. Claimant was injured in August, 1995 while on parole from CDOC. He had climbed a fence and when he jumped down he shattered his ankle. Prior to coming back into custody, he had two surgeries that attempted to repair the ankle. These surgeries had only limited success and resulted in a leg length discrepancy of less than one inch and a permanently damaged ankle. When he came into custody in 1999, he used a cane and crutches for mobility. While at DRDC, he was issued black tennis shoes and told not to wear the ordinary issue prison boots as they could damage his ankle.

5. Upon being transferred to SCF in June, 2000, Claimant's tennis shoes were taken for inspection. Claimant was told the shoes would be returned in 24 hours. However, because of gang concerns, the black tennis shoes were retained and not returned. He was told to purchase other tennis shoes from the canteen. The evidence presented showed that he had adequate money in his canteen account and could have purchased shoes at that time. Claimant was without his shoes until

November 13, 2000 when CDOC issued him new tennis shoes. During this time, Claimant refused to purchase shoes from the canteen and wore his shower shoes. He was issued prison boots but refused to wear them. While wearing his shower shoes, claimant injured his ankle again. He believes he re-fractured his ankle or damaged the pins in the ankle but the evidence fails to show this.

      6. Subsequent to his fall and ankle injury, he was taken to Denver Medical for x-rays and when returned to SCF was given a wheelchair and an AFO brace. The x-rays showed that he had a solid fusion with no damage to the hardware. He was subsequently issued rocker bottom shoes to assist his mobility. He testified that he had limited mobility but that he could walk further while using crutches. He was able to walk short distances while pushing his wheelchair.

      7. Claimant testified that the grounds at SCF were torn up because of construction and that his ability to get around was limited. He says he requested a pusher but was refused. The records show that a pusher was considered but that Claimant did not meet the criteria for one. He also testified that he couldn't exercise, couldn't sit in the chow hall in his wheelchair, and that the showers were not accessible to him.

      8. Claimant has litigated his mobility claims against CDOC previously in the case of <u>Carter v. Suthers</u>. The basic issues raised were the same as the issues raised here. The facts relied upon at that time are the same facts relied upon here. Thus the prior determinations and rulings are binding on this proceeding. The court in <u>Carter v. Suthers</u> rejected Claimant's claims and dismissed his lawsuit. The Special Master in this case must make the same ruling on the facts found above.

      9. Claimant testified that he believes that he had diabetes while incarcerated at SCF and that CDOC knew it but refused to treat him. The medical records and medical testimony shows that Claimant's blood sugars were tested several times while at SCF and that on one or two occasion he had elevated blood sugars. The records also show that his blood sugars returned to normal and that he did not meet the diagnostic criteria for diabetes at that time. While on parole in October 2001, Claimant suffered a black out and was later diagnosed with diabetes in April 2003. After returning to custody his diabetes was treated by CDOC. The medical testimony was that Claimant suffers from some mild kidney damage from diabetes but that it is not interfering with his activities of daily living. There is no evidence that he has diabetic neuropathy or retinopathy.

      10. There was evidence that Claimant continued his ankle treatment after he was released from custody. He testified that he has had three additional surgeries since his release. He also testified that he was treated by Kaiser Permanente for diabetes.

### III. CONCLUSIONS OF LAW

      1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

      2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means

"(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

      3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

      4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

      5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

      6. Based upon the doctrines of res judicata and collateral estoppel, the Special Master is bound by the findings and conclusions made in the case of <u>Carter v. Suthers</u>. The facts in that case were determined to be frivolous. Thus the facts underlying the mobility disability claim in this case are frivolous as well. There can be no conclusion of disability based upon these facts. Claimant is, therefore, not a member of the Montez class under his mobility disability claim.

      7. The Special Master concludes that Claimant is not disabled because of his diabetes. The fact of his having diabetes is not sufficient to show disability. Claimant must show that the effects of his diabetes pose a substantial limitation on one or more of his major life activities. Claimant has presented no evidence to prove this. Thus he has failed in his burden of proof to show disability. So far as his disability claim for diabetes is concerned, he is not a member of the class.

      8. Having failed in his burden of proof to show that he is a member of the Montez class, Claimant is not allowed to go forward in this claim.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendant and against Claimant dismissing his claims.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 9, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 24th day of March, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____
Richard C. Davidson,
Special Master