IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-180
Category III
Claimant: Lester Nortonsen, #83398
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80828

___

## FINAL ORDER OF SPECIAL MASTER
___

    THIS MATTER came before the Special Master for hearing on December 4, 2007. This hearing was held at the Limon Correctional Facility (LCF) in Limon, Colorado. Present were the following: Lester Nortonsen (Claimant); and Chris Alber, attorney for Defendants.

    Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Claimant's exhibits 1 and 2 were offered and accepted. Defendants' Exhibits A through AM were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. Claimant requested an opportunity to review his medical records and perhaps submit additional copies of his records. That request was granted up. Claimant was allowed up to March 17, 2008 in which to submit any additional documents for consideration. Claimant has submitted additional medical records.

    This claim has been taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During

the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility,
> hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially
> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on May 6, 1994. He was evaluated initially at the Denver Reception and Diagnostic Center (DRDC). He was placed at the Colorado State Penitentiary (CSP) in Canon City, Colorado. He remained at the CSP until May 19, 2007 when he was transferred to LCF.

In his initial claim form, Claimant checked the boxes for mobility impairment, vision impairment, and hearing impairment. Claimant stated, in part, in his claim form:

> (1) My hearing, my loss is 70% or more and it's hard to understand others and it get me into trouble.
> (2) A neck injury. It causes headaches and pain 24 hours a day and the pain is worst when I move it.
> (3) Lower back. I have constant pain that won't go away and keeps me from moving a lot.
> (4) Both knees. They gave out on 6-5-03 and won't hold my weight. Can't walk and I'm being forced to slide on the floor to get around.

3

   (5) Lower abdomen pain. Keeps me from moving a lot.
   (6) Asthma. Limited movement so I don't have another attack.
   (7) Neck pain in front. Throat has pain all the time when it moves.
   (8) Left hand ring finder. It's jammed and won't go straight at all.
   (9) Vision. My eyesight was messed up after getting human waste sprayed at me, everything is blurry beyond three feet.

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I have been refused treatment because of my conviction. The staff either throws out my sick call slips or just ignores them. I also have found out that my medical records have been tampered with to cover up their actions towards me so I remain in pain 24 hours a day and also getting write-ups because of my limited movements and hearing loss. Also my inhaler was taken and it was done in hopes of my dying and can't get another one due to the lies from the staff. Also the officers allow the inmates to bang or anything else they want to me.

Claimant submitted supplemental forms for each claimed impairment. In regard to his hearing impairment, Claimant stated, in part, as follows:

> It has been getting very hard to hear due to the banging by other inmates on the desk, stool and walls. It's like being in a drum and after the banging stops, it's even harder to hear for awhile, but I can read lips if I'm close enough.

As to mobility impairment, Claimant stated:

> Not able to walk since my knees gave out on June 5, 2002. My lower back has a lot of pain and affects my one leg and appendix area when I move certain ways, my neck has a lot of pain and needs an operation that is being denied by medical. I also have ankle pain, knee pain and hip pain when they are moved the wrong way. My right finger left hand is locked bent.
> I can only slide around in my cell due to being denied a wheelchair and that causes more pain trying to get on the toilet or moving around to do other things that need doing. Can't write with my left hand any more with the injury to it.

Concerning his vision impairment, Claimant stated in his supplemental form, in part, as follows:

> I was assaulted in 1995 with a shit bomb by another inmate and ended up getting some in my eyes and since then my vision has been blurred beyond 3 feet where I can't even tell who the person is, my left eye also hurts all the time since then.

4

Claimant also submitted copies of kites that he had forward to DOC staff requesting assistance.

Defendants filed an initial response when this claim was assigned to Category I. Included in the response were several pages of Claimant's medical records. Some of those records are worth noting. Claimant was given the opportunity to have an eye examination on October 6, 2003 but refused. On October 15, 2003, Claimant was refused replacement hearing aids. A wheelchair was authorized on June 24, 2003 for Claimant's use in the day hall. The medical records reflect additional requests by Claimant for use of a wheelchair. An administrative document attached to the initial response reflects that through December 28, 2004 Claimant had a total of thirty-three disciplinary convictions. *Defendants' Exhibits.* A number of medical records reflect refuses to be examined by a health care provider or to undertake any testing, including testing for asthma.

Claimant sent several documents to the Special Master in October, 2005. Claimant was issued restrictions in 1994, 2000, and 2001. This included use of a wheelchair for movement while at CSP. Claimant also included documents from the Neuro Imaging Institute in Florida from January, 1992. Those documents reflected some disc herniation at L4-L5, L5-S1, and at C5-C6.

Claimant also forwarded additional documents shortly before the hearing. These documents included evaluations by Dr. Wakeshima and Dr. Lilly. Surgery was recommended by Dr. Lilly but not carried out as it was not approved by Colorado Access, the health care administrator at that time for DOC. The records further noted that Claimant had two hearing aids in June, 2000.

Claimant also submitted a copy of the functional capacity evaluation (FCE) done on August 21, 2007. The report from the FCE stated, in part:

> Mr. Nortonsen exhibited over symptom/disability exaggeration behavior by our criteria and he scored 1/5 by Waddell's and 6/21 by Modified Korbon's protocols indicating that a few non organic signs are present. He passed only 26/53 validity criteria during the FCE, 49%, which suggests very poor effort or voluntary submaximal effort which is not necessarily related to pain, impairment or disability.

At the hearing, Claimant testified that he was diagnosed with asthma in 1965. He stated that he has been in a wheelchair more or less full-time since June 5, 2002. He indicated that he had been injured in an industrial accident in 1992. He was supposed to have additional surgery due to this accident, but that did not occur before he was put into DOC custody. He has been requesting surgery ever since. His leg had become crooked over the years and was difficult to straighten out. He had his legs go out on him in June, 2002. He was sent to medical and did receive consultations by outside providers. He claims that he was supposed to have follow-up care but did not.

Claimant further testified that his hearing has become worse since arriving at DOC. Other inmates would make noise by pounding on cell doors or other things. He acknowledged that he has received testing for his hearing. He claims that he cannot hear much in his cell because of his hearing loss. He had two hearing aids but those were taken from him. One hearing aid was returned. Claimant believed that some documents had been removed from his medical files, but was unclear

5

as to exactly what was missing. Claimant also acknowledged that he has other medical issues, including high blood pressure and headaches.

On cross-examination, Claimant testified that he was not using a hearing aid at that time. He did not use a wheelchair in his cell at the CSP. He testified that he did need a wheelchair.

Dr. Orville Neufeld, D.O. testified as an expert witness for Defendants. He had reviewed the medical records of Claimant. Dr. Neufeld also noted that he had treated Claimant at one point when he was a physician with DOC. He noted from the medical records that Claimant's vision was 20/60 in each eye and that glasses had been authorized. According to Dr. Neufeld, there was no evidence of any vision impairment.

Dr. Neufeld testified that the audiograms given to Claimant reflected discrepancies. He did not believe that Claimant was unable to hear to the point of having a hearing impairment. He also questioned Claimant's need for a wheelchair while at CSP. Dr. Neufeld testified that it appeared that CSP staff found it easier to deal with Claimant in a wheelchair than to try to get him to walk.

On cross-examination, Dr. Neufeld responded to a question from Claimant by saying that "you've been a medical dilemma." Dr. Neufeld acknowledged that Claimant did have some herniation in discs in his back and neck.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he had a recognized impairment as set forth in the Settlement Agreement. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately.

**Vision:** The documentation presented by both sides does not reflect major vision problems for Claimant. The incident in 1995 did occur. Testing of his eyes reflected that glasses will correct vision problems. There is no evidence that activities of daily living have been substantially affected by what Claimant has described as blurry vision.

The Special Master has viewed the Settlement Agreement as requiring a showing of almost blindness before a vision impairment would exist. In this case, Claimant has not had to use talking books, Braille or other such measures in order to carry on his daily activities. Claimant is not a member of the class as vision impaired.

**Hearing:** It is not disputed that Claimant had two hearing aids at one point in time. As set

forth in his claim form, his hearing issues relate more to the incessant banging that occurred from other inmates while he was at the CSP. This led to headaches and general malaise, which is understandable.

Defendants noted that Claimant was able to conduct the hearing without having to use a hearing aid. Defendants' argument is that the ability to carry on a court procedure did not indicate hearing loss requiring a hearing aid or lip reading.

The Special Master finds that Claimant has failed to prove that he is hearing impaired. He is not part of the class on this basis.

**Mobility**: Much of the evidence concerning Claimant's mobility impairment is disputed. It is not disputed that Claimant was authorized use of a wheelchair for all movement at the CSP outside of his cell. Claimant received medical care for his undetermined mobility issues.

The Special Master finds that on or before August 27, 2003 Claimant was mobility impaired. Whatever the origin of this impairment, Claimant was limited in his ability to walk. Claimant is part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** The evidence presented by Defendants reflects that Claimant had over thirty COPD convictions up through 2004. These convictions delayed Claimant's transfer to a less-restricted facility and barred him from some programs. Claimant remained eligible, even with his disciplinary record, to receive basic services from DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has raised concerns about the medical care that he has received. He also has testified that other programs and options were not open to him.

Claimant has raised a number of issues about the medical care that he has received over the years. He notes that he was recommended for surgery, but that was never performed. He believes that he should have received additional medical care. There is no question that Claimant has received health care while in DOC custody.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any

7

rights that he may have concerning his medical care.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The overwhelming number of concerns of Claimant relate to his medical care. The quality of that care must be examined in a different proceeding. It cannot be examined in a case brought under the ADA and Rehabilitation Act.

Claimant has failed to establish that he was treated differently from others because of a recognized disability. For the time period at issue which ends on August 23, 2003, Claimant spent all of that time at the CSP, except for his brief time at DRDC. Claimant has not proven that any services or programs were denied him because of his mobility impairment. The same would be true also for hearing and vision impairments, had those been proven. Claimant has not proven his claim as to discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Lester William Nortonsen is dismissed, as Claimant has failed to prove each of the four questions set forth by Judges Nottingham and Kane and that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act after August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 9, 2008.**

SIGNED this 21st day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master