IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

　　Plaintiffs,

-vs.-

BILL OWENS, et al.,

　　Defendants.

---

Claim Number: 03-228
Category: III
Claimant: Waldo Mackey, #82262
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Waldo Mackey, #82262. The hearing was held at CCF on June 19, 2007 before Richard C. Davidson, Special Master. Mr. Mackey appeared pro se. Defendants were represented by Ms. Jennifer Fox, Esq. Claimant Waldo Mackey, inmate Troy Fettes, and inmate Jacques Richardson were called, sworn and testified. Orville Neufeld, D.O. testified by affidavit. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Waldo Mackey submitted a claim which was assigned claim number 02-003. After review, the claim was elevated and assigned claim number 03-228. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Mackey first entered CDOC custody in 1993. Claimant has been housed at DRDC, LCF, KCCC, SCF, FCF, CSP, CCF and CTCF.

4. Claimant broke his left femur in 1967. When it healed, it was shorter than his uninjured leg. Prior to his incarceration, Claimant had a special shoe to compensate for the leg length discrepancy and also used a cane. At DRDC, he was given a lift to wear in his shoe. However, when he was sent to CSP in 2002, the lift and other items were taken. When he was sent to CCF a physician's assistant measured his leg length difference and found it to be 3 centimeters. An orthotic was made to correct this. He says he was given a medical clearance for his shoes and the orthotic but that they were taken from him later as they were claimed not to be needed by DOC medical staff. Claimant says he still has pain in his back and hips. He wears a homemade lift in his shoe but he still has pain.

5. Claimant testified that before CSP took his orthotic he could walk without difficulty. Since that time he has pain in his back and hip every day. He also has a "popping" in his knee which

3

sometimes causes pain. He is concerned that his condition will worsen without a compensating orthotic.

6. A review of the medical records shows that Claimant does have a shorter leg on the left. He was issued a shoe lift by CDOC but it was taken by CSP because of security reasons. A replacement shoe lift was requested but was denied by the insurance carrier. The records also show that Claimant has arthritis in his neck, shoulders and knee. He has been treated for this.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against

4

because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant is not mobility disabled. There is no question that Claimant suffers from arthritis and has a leg length discrepancy. Certainly these problems do constitute an impairment. However, in order to prove a disability, Claimant must show that any impairment substantially limits one or more major life activities such as walking. This proof is absent. The medical records show that Claimant is able to walk without difficulty. The Ambulatory Health Record of March 22, 2007 shows this in the note "pt tells me that he made his own lift x 6mos (once lift denied). pt currently reports that he does wear the lift and is able to walk the track for at least 30 minutes in a row." There is no evidence to prove that Claimant is limited except by some pain.

7. The evidence is also clear that Claimant's needs have been accommodated. DRDC issued a shoe lift to him. He has been given a wedge pillow and a TENS unit. While he lost those items at CSP, he has been examined and the items have been found to be unnecessary. The exception is the shoe lift which was requested for Claimant by Dr. Creany in the Ambulatory Health Record mentioned above.

8. Since Claimant has failed to prove that he is disabled according to the Montez criteria, he is not a member of the Montez class and is unable to recover in this action.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 9, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 24th day of March, 2008.

> BY THE COURT:
>
> /s/ Richard C. Davidson
> _____
> Richard C. Davidson, Special Master

5