IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-238
Category: III
Claimant: Robert Neely, #114438
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert Neely, #114438. The hearing was held at Fremont Correctional Facility on March 10, 2008 before Richard C. Davidson, Special Master. Mr. Neely appeared pro se. Defendants were represented by Ms. Willow Arnold, Esq. Lt. Jim Harding, inmate Wayne Glasser, inmate Patrick Catanach, Tim Creany, M.D., Claimant, and Orville Neufeld were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Robert A. Neely, #114438 submitted a claim which was assigned claim number 02-047. After review, the claim was elevated and assigned claim number 03-238. The claim is premised on alleged permanent vision and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Neely first entered CDOC custody in 2002. Claimant has been housed at DRDC, KCCC, and FCF.

4. Claimant has litigated certain claims against CDOC previously. The facts found and the legal rulings are binding in this proceeding.

5. Prior to his incarceration, Claimant testified that he was in good health. In March, 2003, he was diagnosed with diabetes while incarcerated at KCCC. Prior to this time he had some symptoms of the disease which Dr. Neufeld testified was pre-diabetes. Claimant argues that he was put on the wrong medication for his diabetes. CDOC put him on Glucophage and Kenalog. Claimant says he should not have been given these medications because they are contra-indicated for alcoholics and people with kidney and liver disease. Claimant claims to be suffering from both kidney and liver disease and to be an alcoholic. In fact, Claimant does have Hepatitis C. Claimant says the use of these medications caused injury to him.

6. The evidence, through the testimony of Dr. Creany and Dr. Neufeld, together with the medical records, shows that Claimant does suffer from diabetes. While his blood sugars have not always been well controlled, he has suffered very little damage from the disease. He does have some protein spillage into his urine but this is barely more than normal. He does not have diabetic retinopathy or neuropathy. Other than the inconvenience of having the disease and having to take medication for it, he has not been affected by the disease. Both doctors testified that the medications were properly prescribed and have caused no damage to Claimant.

7. Claimant also complains about deteriorating vision in his eyes. Claimant has had cataracts on both eyes. The cataract on the right has been removed and the lens replaced. His testimony stated that surgery for the left eye was scheduled although it had earlier been denied by the insurance carrier. Claimant testified that he had very limited vision in his left eye and that he was barely able to function. He said that his cell mate had to read things to him because he was unable to do so. However, at the hearing, he was able to sort through his papers to find what he needed without any apparent difficulty. When asked what the published date was on a book he referred to, he turned to the proper page and read the date. The medical records showed that Claimant received regular eye checks and that his current corrected vision on the right was 20/20 while the corrected vision on the left was 20/100.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Robert Neely is not disabled either by his diabetes or by his vision difficulties. In order to prove that he is disabled, it is necessary for Claimant to show that he is impaired. This he has done by proving that he suffers from diabetes and that he has a cataract on the left eye. However, Claimant must also prove that these impairments substantially limit one or more of his major life activities. This he has failed to do. While there is no question that he does suffer from diabetes, there is no evidence that his diabetes substantially limits him in any way. Thus, he is not disabled by his diabetes. Neither has Claimant shown that he is substantially limited by his vision impairment, nor has he proven that it is permanent. Without this proof, Claimant has failed to show that he suffers from a vision disability.

7. In order to recover in this matter, Claimant has the burden of proof. By failing to prove his case, he has failed to show that he is a member of the Montez class. His claims must fail. However, there is another problem with Claimant's case. His claims are untimely and thus do not fall within the Montez remedial plan. The Montez remedial plan was dated and put into effect on August 27, 2003. The plan covers inmates who were disabled prior to that date. The medical records show that Claimant was not suffering from diabetes prior to that date. In addition, Claimant admitted that his eyes did not start to go bad until 2005. Without Claimant having been disabled prior to August 27, 2003, he does not fall within the Montez class.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 9, 2008** with the Clerk of the United States District Court at the following address:

5

901 19th Street
Denver, CO 80294.

SIGNED this 24th day of March, 2008.

BY THE COURT:

/s/ Richard C. Davidson

_____

Richard C. Davidson,
Special Master