IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-–870 (OES)  (Consolidated for all purposes with Civil Action No. 96—343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

_____

Claim Number: 03-283
Category III
Claimant: Albino Sanchez-Garcia, #83139
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010
_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on March 6, 2008 at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Claimant; Dr. Orville Neufeld, D.O.; and Willow Arnold, attorney for Defendants.

Claimant testified, but called no other witnesses. Claimant did not enter any exhibits into evidence but asked that the Special Master review all of the documents that he had submitted previously. Defendants Exhibits A through JJ were offered and admitted. These were referred to by Dr. Neufeld during his testimony.

The Special Master has reviewed the initial and supplemental claims submitted by Mr. Sanchez-Garcia, as well as all other documents filed, including medical records. All documentation previously submitted by both sides was accepted.

After final closing argument, the case was taken under advisement. The Special Master has reviewed the claim and all documents filed by both sides. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101 (ADA)*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the Remedial Plan[1]. Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class. The Remedial Plan did not provide for an opt out provision for any individual but set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Remedial Plan, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Remedial Plan in Section III provides the following definitions:

---

[1] The Special Masters also were not involved in the negotiation of the Remedial Plan. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

III. DEFINITIONS
   A. COVERED DISABILITIES
   The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
   B. QUALIFIED INMATE
   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
   C. PERMANENT DISABILITY/IMPAIRMENT
   A condition which is not expected to improve within six months.

The Remedial Plan further goes on to discuss categories and criteria for special placement. *Remedial Plan, Section V, Paragraph A, pp.4-5.*

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
   1. Is the claimant a disabled individual who is a member of the class?
   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant or their representative must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody in February 1994. He was placed at the Denver Reception and Diagnostic Center (DRDC) for six weeks and then transferred to Limon Correctional Facility (LCF) in May, 1994. Due to overcrowding in the DOC system, Claimant was transferred from LCF to a facility in Karnes City, Texas in July 1997 as a DOC inmate. On August 25, 1997, Claimant attempted to escape from that facility. During his escape attempt, he jumped or fell from a wall or fence and severely injured both of his legs and feet. As a result of the injuries to his feet, Claimant has severe arthritis and persistent pain. Claimant was also shot in the left arm during his escape and has sustained permanent injury to his arm. After initial surgery in Texas, he was transported back to the Colorado State Penitentiary (CSP) in October 1997 where he was placed in administrative segregation. At CSP, Claimant continued to receive medical treatment for his injuries and in November 1999 he was transferred to CTCF, where he is currently placed.

Mr. Sanchez-Garcia filed his initial claim in June, 2004 and supplemental claim in July,

3

2004. Mr. Sanchez-Garcia claims that he has a permanent lower extremity mobility impairment that is not being adequately addressed by DOC as required by the ADA, Rehabilitation Act and the Remedial Plan. He requests on going medical treatment without having to pay the required DOC co-pay, appropriate work boots, an eggcrate or some kind of foam mattress and a bottom bunk restriction. Claimant further states that he has been wrongly denied access to his medical records from Texas for the time period of August 25, 1997 through October 14, 1997 and that DOC wrongly deprived him of good time and earned time credits from October 1997 through November 1999, the two years he was held at CSP.

Dr. Orville Neufeld, D.O. testified that he reviewed Claimant's medical file and all documents submitted by Claimant. Defendants assert that Mr. Sanchez-Garcia has no qualifying mobility disability as defined by the ADA, Rehabilitation Act, or the Remedial Plan. Defendants assert that because Mr. Sanchez-Garcia is not a member of the *Montez* class, he is not entitled to any relief under the Remedial Plan.

### III.

*I. Permanent Mobility Impairment:*

**1. Is Mr. Sanchez-Garcia a disabled individual who is a member of the class?**

In order for Claimant to establish that he is a member of the *Montez* class, he must prove by a preponderance of the evidence the following:

1. Claimant was in DOC custody prior to August 27, 2003;
2. Claimant had a qualifying disability under the ADA, Rehabilitation Act and/or the Remedial Plan prior to August 27, 2003;
3. Claimant's disability substantially limited one or more major life activities.

The question of whether Claimant has been subjected to discrimination prohibited by the ADA, Rehabilitation, and/or the Remedial Plan on or before August 27, 2003 is a separate question from whether Claimant is a disabled individual who is a member of the *Montez* class.

The Remedial Plan, the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et seq*. and the Rehabilitation Act, 29 U.S.C § 794 *et seq.* set forth the legal standards applicable to this claim. Under the ADA and Rehabilitation Act, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. § 794(d); 29 U.S.C. §705(9)(B).

"Major life activities" are not specifically defined in the Remedial Plan, but are in the regulations enacted to implement the ADA and Rehabilitation Act . "Major life activities" are basic functions, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The Special Master finds that Mr. Sanchez-Garcia is a member of the *Montez* class because he has proven by a preponderance of the evidence that he had a permanent (more than six months) lower extremity mobility impairment which substantially limited his ability to walk prior to August 27, 2003. *(see, Defendants' Exhibits I, J, K, L, M, N and O)*.

Claimant states that he still has a permanent lower extremity mobility impairment as contemplated by the Remedial Plan, the ADA and the Rehabilitation Act. Claimant has not submitted any medical records or any other documentation to support this allegation[2]. The only documents and medical records that the Special Master can consider were submitted by Defendants at the hearing.

**2. Was Mr. Sanchez-Garcia otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?**

The answer to this question is yes. The Special Master can find nothing in the record that excluded Mr. Sanchez-Garcia from participating in DOC programs and receiving the services offered by DOC.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**

The answer to this question is no. There is no dispute that Claimant suffered a self-inflicted catastrophic injury to his legs, feet and back in August 1997. The medical records submitted by Defendants substantiate that Claimant's recovery from this injury took about two years. During that time, DOC provided continuing care including assistive devices (wheelchair, walker and crutches), physical therapy as needed until March 3, 2000, yearly x-rays, insoles for Claimant's shoes, non-steroidal anti-inflammatory drugs for pain relief; steroidal injections into the joint of Claimant's right ankle and follow-up with Dr. Patterson, an orthopedic surgeon in Pueblo, Colorado. *(See, Defendants' Exhibits I through Z and AA through DD)*.

In August 1998, DOC recommended down stairs showers for Claimant for six months. *(Defendants' Exhibit T)*. In November 1999, DOC ordered heel cups and for one year, a bottom bunk restriction and a two-hour limitation on standing. *(Defendants' Exhibit Y).*[3]

On the one hand, Claimant testified that he believes that he needs appropriate work boots and an eggcrate mattress. Later in his testimony, he stated that he has no complaint about the

---

[2]Claimant's documents are multiple motions for continuance of the hearing date based on his inability to obtain his medical records from Texas for the period of August 25, 1997 through October 14, 1997.

[3]The Special Master assumes these restrictions remained in place for one year. Nothing in the medical records or in testimony at the hearing, indicates otherwise.

medical treatment that he has received while in DOC. "Every kite has been answered." Mr. Sanchez-Garcia testified that he can exercise using light weights. He walks around the track at CTCF. He wears tennis shoes and has been able to purchase tennis shoes every couple of years at the canteen. Claimant does have traumatic arthritis in his feet. Dr. Neufeld testified that Claimant's pain will never go away completely. Claimant experiences more joint pain and stiffness in cold weather because of fluctuations in the barometric pressure.

Claimant has successfully worked at a number of jobs. *(Defendants' Exhibit C)*. In November, 2007, he was assigned to the TAG Plant, an apparently coveted position. The Special Master finds that Claimant has failed to prove by a preponderance of the evidence that he has been discriminated against by DOC because of a permanent lower extremity mobility disability before or after August 27, 2003.[4]

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

Based upon the answer to question 3, this question need not be answered.

IT IS HEREBY ORDERED that Mr. Sanchez-Garcia's claim of discrimination based upon a permanent lower extremity mobility impairment is denied; and

IT IS FURTHER ORDERED that any other aspects of the claim not explicitly addressed are deemed dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 9, 2008.**

SIGNED this 26th day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

Richard M. Borchers
Special Master

---

[4]Claimant's complaints regarding denial of access to his Texas medical records and miscalculation of earned time cannot be addressed because Claimant has failed to prove by a preponderance of the evidence any acts of discrimination by DOC before or after August 27, 2003.