IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

-vs.-

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-307
Category: III
Claimant: Edmund Lloyd Herrera, #76006
Address of Claimant: KCCC, P.O. Box 309, Burlington, CO 80807

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Edmund Herrera, #76006. The hearing was held at KCCC on October 22, 2007, before Richard C. Davidson, Special Master. Mr. Herrera appeared pro se. Defendants were represented by Chris Alber, Esq. Claimant and Orville Neufeld, D.O. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file

claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Edmund Herrera submitted a claim which was assigned claim number 02-595. After review, the claim was elevated and assigned claim number 03-307. The claim is premised on alleged permanent mobility and vision disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Herrera first entered CDOC custody in 1985. He was paroled in 1986 but was brought back into custody in 1989. He has remained in custody since that time. Claimant has been housed at CTCF, SCC, SMCF, LCF, CCF, HCCC, AVCF, and KCCC.

4. Claimant suffers from medical problems in his feet, knees, low back and shoulders. In his feet, he has plantar fasciitis, heel spurs, fallen arches and bad toes. He has had injections into his heels and sometimes wears splints while sleeping. CDOC issued arch supports to him. He says he has pain in his feet while walking. His heel spurs have been confirmed by x-rays.

5. Claimant testified that he injured his right knee in 1995 while playing handball. He said he ran into another inmate and hyper-extended his knee. The pain in his knee is constant. He injured his left knee while playing basketball. He wears CDOC issued neoprene sleeves on his knees as braces. The medical records confirm the hyper-extension to Claimant's right knee on October 29, 1993. The injury was diagnosed as a soft tissue injury. An x-ray taken on March 31, 1995, because of continuing complaints of pain, showed a radiographically normal right knee. On May 28, 2002 additional x-rays were taken of the right knee and were read as normal. After Claimant fell when the knee locked up in June 2002, the knee was found to have a full range of motion. An MRI taken in September 2002 showed a normal right knee. Additional x-rays in November 2003 continue to show a normal knee.

6. Claimant suffers from degenerative disk disease in his lumbar spine. He did receive injections into his back but stopped them. He has a heel lift that he says is of help to him. He wears a CDOC issued back brace. He does not recall any injury to his back but believes it happened over time. He had x-rays taken of his low back in December 2000 which confirmed degenerative disk disease. Additional x-rays have shown spurring.

7. Claimant also complains of bad shoulders. He testified that he has had two surgeries and has had cortisone injections. The records show several x-rays of the shoulders read as normal.

8. Claimant has also made a claim for vision disability. He suffers from pterygium in both eyes. This condition can cause a loss of vision if left untreated. He has had surgery on the left to remove the growth and to remove a cyst. The pterygium is not so severe on the right and does not interfere with his vision. He currently has corrected vision of 20/25 in both eyes and admits that he can "see fine" with his glasses. He also wears prescription sunglasses to protect his eyes.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. As mentioned above, Claimant has raised claims of mobility and vision disabilities. After reviewing the evidence and especially the medical records, the Special Master finds and concludes that Claimant Edmund Herrera is not mobility disabled under the terms of the remedial plan. While he does have medical problems involving his feet, knees, low back and shoulders, in order to prove that he is disabled, he must prove that those problems, individually or combined, substantially limit one or more of his major life activities such as walking. This he has failed to prove. Rather, the medical records show that he is able to move around and to climb onto the exam table without difficulty. While it is undoubtedly true that Claimant suffers pain, this is insufficient to prove a mobility disability. Claimant admits he can walk and climb stairs and lives on the second tier. There is simply insufficient evidence to show that Claimant is mobility impaired.

7. Neither does the Special Master conclude that Claimant is disabled because of his vision. Claimant has pterygium but it does not interfere with his vision. He admits he can "see fine" with his glasses. He has failed to prove that his condition substantially interferes with his vision.

8. Having failed to prove that he is disabled according to the Montez criteria, Claimant has failed to prove that he is a member of the Montez class. Claimant is, therefore, unable to recover in this action.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 9, 2008** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 24th day of March, 2008.

BY THE COURT:

/s/ Richard C. Davidson

---
Richard C. Davidson,
Special Master