IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-328
Category III
Claimant: Henry Ray Tafoya, #40786
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER came before the Special Master for hearing on March 13, 2008. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Henry Ray Tafoya (Claimant); and Willow Arnold, attorney for Defendants.

Claimant presented his own testimony at the hearing. Defendants called Dr. Orville Neufeld, D.O. as their sole witness. Defendants offered into evidence Exhibits A thru AA, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on May 10, 1978. He was evaluated at CTCF and then was placed at various facilities before he was granted parole on July 17, 1979. Claimant returned to DOC custody on May 7, 1981. He was placed initially at the Centennial Correctional Facility (CCF) in Canon City, Colorado on June 1, 1981. He remained at CCF until November 9, 1990 when he was transferred to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Over the next few years, Claimant was placed at various DOC facilities. He returned to CTCF in August 2001 and then went to the Limon Correctional Facility (LCF) in Limon, Colorado on January 7, 1003.

Claimant transferred to the Arrowhead Correctional Center (ACC) in Canon City, Colorado on October 31, 2006. He then was placed at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado on November 9, 2006. Claimant returned to CTCF in August 2007.

In his initial claim form, Claimant checked the boxes for mobility impairment, vision impaired, and diabetes. Claimant stated, in part, as follows:

> (1) I need a cane to get around with...(2) Because of my diabetes my eyes are always giving me trouble..(3) I have a lot of problems because of my diabetes.
> 1. The only time I can get any help in getting around is when I have an emergency...

3

      2. When I can't see is when the DOC does anything.
      3. I have went as much as thirty days without my meds.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

> The only time DOC does anything is when they have to. I have been hurting so bad that I was unable to get out of bed; as for my vision the DOC puts me off and tells me that I can't see the eye doctor unless a year has passed since my last visit. The DOC also has a hard time getting my meds to me. Why I don't know! I am unable to sit, stand or just doing anything for a period of time over five (5) or ten (10) min.
> Have you ever tried to walk or even get out of bed with so much pain that you can't even do that! Well that is just the begin of the way they abuse their authority and treatment. I cannot stand, sit or do anything anymore. Everything.

      At the hearing, Claimant testified that he was diagnosed with diabetes in the mid-1990's when he was transferred to a Kansas prison due to DOC overcrowding. At that time, medical staff recommended that he take various medications, one of which was Glucophage. It was not recommended at that time that insulin be given by shot.

      Claimant testified further that his vision started deteriorating about ten years ago. He indicated that he began losing sight in his right eye. He has been receiving an eye exam once per year. His mobility issues related most to his right knee and hip. He has deteriorating disks in his back. He has been using a cane for his mobility problems.

      Claimant testified that he was given a janitorial job at LCF and later at FLCF. That work was too demanding at both places because of his physical restrictions. Claimant did not last at ACC because Claimant was unable in his opinion to keep up with the work that was there.

      Claimant testified that various facilities would run out of his medicines and he would go without them for extended periods of time. He went two weeks without his medications for diabetes at LCF and one week at FLCF. Claimant testified that when he arrived at the Colorado State Prison (CSP) he did not receive his medications until Dr. Neufeld intervened. Claimant testified that he has had no major problems since arriving at CTCF.

      On cross-examination, Claimant stated that he had a back injury in 1966. No surgery has been performed on his back, but it has created problems for him over the years. He later was assaulted while in custody, and that aggravated his physical problems. He testified that he has been using a cane since he had a heart attack in 1998. Claimant stated further than he can walk for a while but must then stop and rest. He has been assigned an aide to assist him with daily activities. Claimant does watch television and has been wearing glasses for thirty years.

Dr. Orville Neufeld testified as an expert witness. He acknowledged that Claimant is not a young man and has health problems. He stated that Claimant was diagnosed as a diabetic in 1996. Claimant has not taken insulin by shot, but only oral medications.

Defendants also submitted several documents as exhibits. Three exhibits reflect difficulty in Claimant receiving his medications. *Exhibits O, Q, and T.*

In rebuttal, Claimant testified that he has not been having a problem receiving his medications while at CTCF. He felt that he was forced to work at LCF and FLCF or face a possible write-up.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim.

**Vision Impairment**: Claimant has testified that his eyes have become blurry over the last ten years. Claimant acknowledged that he has received glasses and yearly eye examinations. According to vision exams, Claimant's eyesight is correctable to 20/20.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The evidence submitted by both sides does not indicate that any activity of daily life has been substantially impaired by the decline in vision. As noted by Defendants' expert, there is some question as to whether the decline in eyesight is simply part of growing older. The Special Master has required a showing of almost blindness as to this category. Claimant is not blind and is not a member of the class as vision impaired.

**Mobility Impairment**: Claimant has back and leg problems. He uses a cane to stead himself

and has difficulty walking. The evidence reflects that Claimant can walk for a short period but must stop and rest.

Though this is a close case, the Special Master finds that Claimant's back and leg problems do affect his ability to walk. He is a member of the class as mobility impaired.

**Diabetes:** Claimant was diagnosed as having diabetes in 1996 while in DOC custody at a Kansas prison. He has continued to be diabetic and has been on medications ever since.

The Special Master has found in the past that being diabetic on or before August 27, 2003 was sufficient to be a member of the class. In this case, Claimant has testified that his ability to live daily has been affected by the lack of medications available to him. Thus, Claimant has been placed in fear of a deterioration in his health. Claimant is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was disqualified from any applicable programs or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** A claimant must prove by a preponderance of the evidence that he was subjected to discriminatory conduct on or before August 27, 2003. This discrimination must be based on a claimant's recognized disability, not on other factors such as race, age, etc. An example would be placement of a wheelchair-bound inmate on the third floor of a building with no working elevators.

In this case, Claimant has failed to prove that he was the victim of discrimination as the result of being forced to work as a janitor at LCF, ACC and FLCF. Claimant testified that all inmates had to work. He just found it difficult to keep up with what was being requested of him. In this case, Claimant did not present sufficient evidence to prove that any actions taken against him concerning his work were the result of discrimination prohibited by the ADA and Rehabilitation Act. Claimant indicated that everyone was being treated in the same way in that all were required to work. The Special Master cannot find as a matter of fact or law that DOC staff discriminated against Claimant due to his back and leg problems.

The same is not true as to his diabetes. DOC documents reflect that medicines did run out on several occasions. Claimant had to go several days without his diabetic medications. There is no evidence whatsoever that this was the result of anything that Claimant did or did not do. Any opinion to that effect is pure speculation. Claimant had no ability to secure his medications on his own. He is an inmate and must rely on DOC and its staff to provide medications necessary to carry on life. As this Special Master has found in other cases and finds in this one, it is unacceptable to place a diabetic inmate in a position of not having necessary medications. In this case, Claimant was testifying correctly that various facilities did run out of medications. He was worried about his health as a result, and with good reason. The ADA and Rehabilitation Act were violated on those occasions when the medicine ran out and Claimant had to do without those medications.

6

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant testified that he was very worried about his health when his medications ran out and he had to wait days for his medicines. That worry was legitimate and caused Claimant harm. Claimant is entitled to damages in the amount of $250.00.

IT IS HEREBY ORDERED that the claim of Henry Ray Tafoya is granted, in part, and he is awarded $250.00 in damages as the result of DOC facilities running out of diabetic medications; and

IT IS FURTHER ORDERED that the remainder of the claim of Henry Ray Tafoya is dimissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 13, 2008.**

SIGNED this 19th day of March, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master