IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-436
Category III
Claimant: Chung Pak, #112892
Address of Claimant: 15856 E. Kepner Drive, Aurora, CO 80017

___

**FINAL ORDER OF SPECIAL MASTER**
___

THIS MATTER came before the Special Master for hearing on March 20, 2008. This hearing was held at the offices of Legal Resolution Center, 600 17th Street, Denver, Colorado. Present were the following: Chung Pak (Claimant); and Willow Arnold, attorney for Defendants. Also present were Jungkoo No, interpreter, and Claimant's pastor.

Testimony was received from Claimant and Dr. Orville Neufeld, D.O. Defendants' Exhibits A through Z were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. Claimant was granted additional time in which to submit documents for consideration by the Special Master. Claimant was granted up to April 8, 2008 in which to submit any additional documents for consideration. Claimant did submit additional documents for consideration on his claim.

This claim has been taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During

the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 16, 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC) for evaluation and testing. Claimant was transferred from DRDC to the Skyline Correctional Center (SCC) in Canon City, Colorado on May 3, 2002. Claimant remained at SCC until he was transferred into a community corrections program on September 6, 2002.

Claimant's community corrections placement was not successful and he returned to DRDC on June 10, 2003. He was then placed at the Trinidad Correctional Facility (TCF) in Trinidad, Colorado. He transferred to the Arrowhead Correctional Center (ACC) on June 23, 2004. He remained at ACC until he was paroled on September 22, 2004. Claimant was able to complete his parole successfully. Claimant discharged his sentence on September 22, 2007.

In his initial claim form, Claimant checked the boxes for vision impairment and diabetes. Claimant stated, in part, in his claim form:

> I have Type II Diabetes. Since I became incarcerated I have had many high

3

blood sugar levels, because CDOC does not have a separate diet for diabetic inmates. I have extensive records, and have kept a diary to prove this.

During my incarceration I have been diagnosed with a heart murmur, which makes me tire easily and makes it necessary for me to watch my activity levels. I must constantly monitor and self-regulate myself. I have records of this diagnosis from last year, yet nothing has either been prescribed or done for this......

My vision has deteriorated, yet the CDOC Eye Doctor will not prescribe new eye glasses, or do a vision check until June 2004, even though I have a twitch in my left eye.....

Last I began experiencing cramping in my feet and lower legs, which I believe is caused by poor blood circulation....

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

I have been very sorely discriminated against in several ways, by CDOC. The most obvious is that I am Korean and there is a severe language barrier to communications with anyone who does not show patience and a willingness to cooperate toward understanding.....

I have requested interpreters to better explain my medical concerns for nearly two years. Instead I have been given a notation on my file, expressing that I am a good candidate for ESL (English Second Language), but not once have I had access to an interpreter....

Other discrimination, of a direct nature, is that health professionals employed at CDOC have used this language barrier to lie to me and to call me bad names directly to my face. I have been able to document this, as well as file Grievances, to no avail.

The most discriminatory aspect of this is that when I request help or explanations from any of the facility health professionals, or case managers they view my persistence as confrontational. This has caused both my record and my reputation to suffer...

In addition, both myself and the other Diabetic inmates at this facility must now sign for our meals in the Chow Hall. This is meaningless discrimination because the meals prepared for us are still very high in cholesterol, and the diet remains very similar to the regular menu.....

Claimant submitted supplemental forms for each claimed impairment. In his supplemental form for vision impairment, Claimant stated, in part, as follows:

I have had double vision in my left eye for over 6 months. I have also had problems with my eyes tiring easily so that I am unable to do enough of my bible studies. If I persist, they become irritated and painful.

In response to the question concerning the seeking of an accommodation, Claimant stated:

4

> I have tried to schedule an eye appointment to get my eyes checked for new glasses. Because my paperwork says I may be discharged within a year, my requests have been denied.

In his supplemental form for diabetes, Claimant stated that "I am not just claiming damage through lack of medical care; I am also claiming improper medical care for my diabetes." Claimant testified that he believed lack of medical care led to other health problems, including a heart murmur, colon pain, and kidney problems.

Claimant submitted with his supplemental forms additional documents in support of his claim. Included were grievances filed by Claimant, along with a synopsis of steps taken by him to seek help. The first noted grievance was filed on September 9, 2003.

Claimant in May 2006 filed a number of other documents in support of his claim. Some of these documents were duplicates of what had been previous submitted. Claimant requested copies of menus, and those were provided. Claimant apparently met with the DOC dietician concerning diabetic meals, but Claimant did not believe that the diets were appropriate. Claimant also included copies of several pages of his medical records. These records reflect that Claimant is a Type II diabetic.

At the hearing, Claimant testified that he was first diagnosed as a diabetic on April 1, 2001 while in the Arapahoe County Jail.[2] Claimant advised DOC staff at DRDC that he was diabetic. He was treated from the beginning with oral medications.

Claimant testified further that he was at TCF when a meeting was held concerning diabetes. This was a meeting apparently with by class counsel. When asked by the Special Master concerning discriminatory actions taken by DOC and its staff, Claimant testified that the primary concerns related to the diet provided to inmates who are diabetic and the medical care. Claimant testified that there was no special diabetic diet. He also had trouble with a Nurse Howell and had difficulty getting the medical care that he needed.

On cross-examination, Claimant testified that he started to have eye problems while at TCF. Claimant was referred to an eye specialist in Pueblo. Claimant stated that he began wearing glasses at the Arapahoe County Jail before coming into DOC custody. Claimant testified further that he does not see well. He does not watch much television.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. Based upon a review of the medical records, Dr. Neufeld testified that Claimant has received eye examinations and has correctable vision to 20/25 in his right eye and 20/40 in his left eye. The medical records do not

---

[2] The Special Master secured a Korean translator for the hearing. Claimant is originally from the Republic of South Korea. His command of the English language is limited.

5

reflect any diabetic neuropathy.

Dr. Neufeld testified that he treated Claimant in 2004. He described Claimant as a "poor historian" and that there was no evidence of double vision at the time of his evaluation. He testified further that Claimant has received medical care for his diabetes. There is no evidence of kidney damage. Claimant has been on oral medications for his diabetes. Claimant also received a thirty-day supply of medicine before he went out to a community placement on September 5, 2002.

According to Dr. Neufeld, the diet prescribed for Claimant and other diabetics was appropriate. He testified that the individual who is diabetic must take responsibility for what he eats. Dr. Neufeld further testified that none of Claimant's activities of daily life had been affected by his diabetes.

On April 8, 2008, Claimant submitted a number of additional documents in support of his claim. He included a prescription from a optometrist that is dated April 1, 2008. Also included were diet menus for December 2003, a copy of a letter to the ACLU, statements from many inmates who knew Claimant, and a copy of a letter sent to the Colorado State Board of Nursing. Also included is a typed document which is entitled "chronology." The first date on the chronology is November 25, 2003 and the last is January 21, 2004.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he had a recognized impairment as set forth in the Settlement Agreement. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Each claimed disability must be examined separately.

**Diabetes:** The evidence presented by both sides reflects that Claimant was diabetic on April 16, 2002 when he entered into DOC custody. In keeping with previous rulings, the Special Master finds that Claimant was diabetic on or before August 27, 2003 and is a member of the class as a diabetic.

**Vision:** The evidence presented by both sides does not establish that Claimant was vision impaired on or before August 27, 2003. Claimant's documents establish that he began to complain of vision problems in late 2003. This was after August 27, 2003. Though he had begun wearing glasses at the Arapahoe County Jail, there was no evidence of blurry or double vision until much later in his sentence.

Even the testimony concerning blurry vision does not establish a disability. Under the

Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I). The evidence does not establish that activities of daily life were affected by his vision, as required by the ADA and Rehabilitation Act. Claimant is not a member of the class as vision impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was not qualified to receive services and benefits from DOC. As an example, Claimant was not disqualified due to disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has set forth three major areas in which he believes that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. The first area is medical care, and Claimant has alleged in his pleadings that he received substandard care.[3] The second area deals with the inability to receive appropriate care due to the language barrier that existed between him and DOC medical staff. Third, Claimant believes that the meals provided to him while in DOC custody were inappropriate.

The evidence reflects that Claimant did receive medical care while in DOC custody, including referrals for testing and evaluations by specialists. The quality of that care is questioned by Claimant. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims

---

[3] Claimant acknowledged that someone helped prepare the documents that he submitted. Claimant does not have a sufficient command of English that would have allowed him to complete all of the forms. Claimant testified that all information contained in the documents submitted by him is true and accurate to the best of his knowledge.

7

of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The overwhelming number of concerns of Claimant relate to his medical care. The quality of that care must be examined in a different proceeding. It cannot be examined in a case brought under the ADA and Rehabilitation Act.

The second area of concern deals with the language barrier. As noted, Claimant is Korean and speaks very little English. He testified and noted in his pleadings that he never was provided an interpreter for any medical visits. The problem is that this area of concern has nothing to do with the ADA and Rehabilitation Act. Claimant must show discrimination in this case that is based upon his diabetes. Claimant may be able to pursue this issue in a separate lawsuit. It is not relevant and cannot be acted upon by the Special Master as part of the resolution of this claim.

The third area deals with meals. Claimant has alleged that the diet meals for diabetics were the same as for non-diabetic inmates. Other than his own testimony and documents, he has offered no proof that the meals provided to diabetics were discriminatory and violated the ADA. The evidence reflects that Claimant met with the DOC dietician. There is insufficient evidence to establish that the meals provided by DOC were inappropriate and somehow discriminatory under the ADA. In order to establish that the meals were not proper for a diabetic inmate, there would have to be some expert testimony showing that what was being served was inappropriate. Lay testimony from Claimant or any other inmate would not establish this point. As a practical matter, it would be nearly impossible for any claimant to prove that the meals served were harmful because there is no way to present expert testimony.

Claimant has failed to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. Claimant's major concerns deal with medical care which is beyond the jurisdiction of the Special Masters in light of the *Fitzgerald* decision.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Chung Pak is dismissed, as Claimant has failed to prove each of the four questions set forth by Judges Nottingham and Kane and that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act after August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 30, 2008.**

SIGNED this 14th day of April, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master