IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-913
Category II
Claimant: Lewis E. Erskine, #110280
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, Colorado 81062

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the claim of Lewis E. Erskine (Claimant). Claimant is presently in the custody of the Colorado Department of Corrections (DOC). Claimant is placed presently at the Crowley County Correctional Facility (CCCF), Olney Springs, Colorado.

This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Claimant has filed a claim form and supplemental form for mobility impairment. Defendants have filed a response to the claim. Claimant was granted up to and including April 21, 2008 in which to file a reply to the response of Defendants. Despite being granted additional time in which to file a reply, Claimant has filed nothing further.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC on August 30, 2001. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for testing. Claimant was transferred to CCCF on September 24, 2001. He was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on September 11, 2003. He then was placed at the Arrowhead Correctional Center (ACC) in Canon City, Colorado on August 17, 2005.

On October 17, 2005, Claimant was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He returned to CCCF on May 24, 2006.

Claimant filed a claim form in July 2007. He checked only the box for mobility impairment. In his claim form, Claimant stated, in part, as follows:

> I have a chronic right knee injury since 1989 and I am currently @ 40% disability level through the Vet Admin. I slipped & fell on 31 Dec 2006 & on 12 Jan 2007. Since the fall I haven't been able to walk w/out pain so for me there is <u>no</u> yard. I am in pain 24/7 but this medical won't do anything for me.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

3

> I am currently under one year from being released thus this medical and the CDOC will not allow me to be seen by a ortho doctor.
>
> My right knee and leg are getting worse and because of this I cannot walk the yard in order to lose weight.

Claimant attached to his claim form some medical records from February and May, 2007.

In response to an order from the Special Master, Claimant responded with a letter that was received on September 25, 2007. Claimant stated, in part, as follows:

> On 31 Dec 2006 I slipped and fell because this prison did not clear the sidewalks of snow and ice. After 36 days I was finally seen by a "doctor" after being seen on 31 Dec 2006 by a nurse. After three months of being in pain and fighting this prison's "doctor", Dr. Cabiling told me that there was nothing he could do for me and to file under Montez.

Claimant filed a supplemental form for mobility impairment. Claimant stated, in part, as follows:

> Due to a fall on 31 Dec 2006 my right leg/knee has been in severe pain and it hurts to stand, walk or lay down. I am currently on crutches only because this prison I am at does not allow wheelchairs. I am in pain 24/7 but CCCF nor CDOC wants to do an MRI or allow me to go to a specialist.

Defendants have filed a response to the claim. Attached to the response are several pages of Claimant's medical records. Included was an operative report reflecting that Claimant had arthroscopic surgery on his right knee in September 2005. *Exhibit 6*.

Claimant was granted up to and including April 21, 2008 in which to file a reply to the response of Defendants. Claimant has filed nothing further in support of his claim. Further argument will be waived at this time.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has alleged that he is mobility impaired. He is not alleging that he is vision impaired, hearing impaired, or diabetic.

Claimant must prove that on or before August 27, 2003 he was mobility impaired under the ADA and Rehabilitation Act. There must be a showing under both statutes that a physical impairment substantially limited a major life activity. *42 U.S.C. 12102(2); 29 U.S.C. 794(d)*. In order to meet the requirements of the statute, there must be something more proven than simply having pain or some inconvenience in doing activities of daily life.

In this case, Claimant has stated that his problems began after a fall on December 31, 2006. He has alleged that he has not received appropriate medical care since that fall and should be referred to a specialist. The falls discussed by Claimant both occurred after August 27, 2003. As a result, Claimant's treatment after the falls may only be considered if he was disabled on or before August 27, 2003.

The evidence submitted by Defendants reflects that Claimant did not indicate any mobility problems when he came into DOC custody. *Exhibit 3*. In June 2003 he began experiencing edema, which is a burning sensation in his right leg and knee. *Exhibit 4*. He was provided treatment, but ultimately underwent arthroscopic surgery on his right knee on September 1, 2005. *Exhibit 6*. After the surgery, the records reflect that Claimant was feeling better. *Exhibit 7*. Claimant's next indication of problems with his knee is after the fall on December 31, 2006.

Claimant has not established that he was mobility impaired on August 27, 2003. The medical records reflect that he had a burning sensation in his knee from mid-2003 on through the surgery, there is no evidence that this affected his ability to walk and move about. Absent establishment that Claimant was mobility impaired on or before August 27, 2003, the Special Master cannot consider anything that occurred in 2006 to the present time.

Claimant has not established that he was mobility impaired on or before August 27, 2003. Claimant is not part of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented by either side that Claimant was disqualified while in DOC custody from receiving programs and services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant carries the burden to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met that burden.

Claimant's complaints in his claim and supplemental form relate to medical care provided after the fall on December 31, 2006. Claimant believes that the medical care was substandard and not what he should have received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical

care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

Claimant has failed to establish that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Therefore, there is no jurisdiction to consider any allegations after August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Lewis E. Erskine is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 12, 2008.**

SIGNED this 25th day of April, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master