IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 02-914
Category II
Claimant: Asa M. Meek, #92031
Address of Claimant: SCF, P.O. Box 6000, Sterling, Colorado 80751
_____

## FINAL ORDER OF SPECIAL MASTER
_____

    THIS MATTER comes before the Special Master on the claim of Asa M. Meek (Claimant). Claimant is presently in the custody of the Colorado Department of Corrections (DOC). Claimant is placed presently at the Sterling Correctional Facility (SCF), Sterling, Colorado.

    This is a Category II claim. The claim must be resolved on the documents submitted by both sides. Claimant has filed a claim form alleging mobility impairment, hearing impairment, and vision impairment. Defendants filed a response to the claim. Claimant was granted time in which to file a reply. That reply has been filed by Claimant. Further argument will be waived.

### I.

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on December 26, 1996. He was placed at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. He then was placed into various community placements.

Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on April 28, 1997. He remained there until July 24, 1997when he was transferred to the Four Mile Correctional Center (FMCC) in Canon City, Colorado. He was placed on parole on February 1, 1999. Claimant returned to DOC custody on April 25, 2000 after he violated parole. He was sent to SCF on May 18, 2000. He remained at SCF until he was paroled on May 30, 2001. Claimant discharged this sentence on April 10, 2002.

Claimant returned to DOC custody on a new sentence on December 1, 2006. He was placed at DRDC and then transferred to the Kit Carson Correctional Center (KCCC) in Burlington, Colorado. He remained at KCCC until February 22, 2007 when he was transferred to SCF. He remains at that facility at this time.

The Special Masters received a letter on October 26, 2007 that was written by another inmate but signed by Claimant. The letter indicated that "Mr. Meek cannot talk very well or write due to 2 strokes he's had in the last 2 years." The letter also indicated why Claimant had waited to file his

3

claim. Claimant was sent a claim form and information sheet.

On November 20, 2007, the claim form from Claimant was received at the office of the Special Masters. Claimant checked the boxes for mobility impairment, hearing impairment, and vision impairment. Claimant stated, in part, as follows:

>Mobility Impairment: I suffer from the lingering effects of a broken back sustained in a car accident prior to my incarceration. My back was broken in four (4) places and a bone chip is still free floating in my vertebrae affecting the nerves in my spine causing me to have severe pain and problems with my balance, walking, standing, coordination, equilibrium, sitting and sleeping.
>Hearing Impairment: I have a hearing impairment due to my age and sustained head trauma from the car accident I was in prior to my incarceration. This interferes with my ability to hear and communicate. Also my equilibrium as well as my memory has been affected.
>Vision impairment: I have a vision impairment due to my age and sustained head trauma from the car accident I was involved in prior to my incarceration. This affects my ability to see and read properly. It also affects my depth-perception and my balance. It cause me to have severe headaches.

In response to the question concerning discrimination by DOC and its staff, Claimant stated as follows:

>I was certified by the Veteran's Administration as being disabled. I was being treated for the lingering effects of my back injuries as well as my hearing and vision impairments. Colorado Department of Corrections refuses to treat my injuries and impairments. They have not tested my vision or hearing and they have not treated injuries or provided any viable therapy for the lingering affects there of. Colorado Department of Corrections is deliberately indifferent to my serious medical needs and instead of verifying my medical records from; Denver Veteran's Administration, Veteran's Administration Hospital in Hinse, Ill., Veteran's Administration Medical Center Records Department of Denver (branch of service is Army) and Kit Carson Correctional Center (previous facility I was at), they have chosen instead to deny me adequate health care. I am being refused the opportunity to participate in educational, Voc. Ed., or recreational programs. Because of my stagger, my stutter and the way that I am perceived I am being treated as a second class individual with no rights. I have requested a medical mattress, a wedge pillow, a chair with back support and a back brace, all of which have been denied by Medical and Colorado Department of Corrections. I have even offered to pay for these items personally and Colorado Department of Corrections still refuses to acknowledge my serious medical needs.

Claimant filed supplemental forms with the Special Masters. In the supplemental form concerning vision impairment, Claimant stated, in part, as follows:
>In school I have trouble seeing the chalkboard and this facility only has about

4

> 2 dozen books in large print out of 5000 books in the library. I have trouble reading any of the stuff DOC puts out for inmates to read rules, canteen form, etc.

On his supplemental form concerning hearing impairment, Claimant stated:

> I get yelled at for not hearing staff at count time. In school I can't hear my teachers too well, it causes stress, miss calls to chow hall.
> I've asked for a hearing aid, and assistance with my school, and I was denied by ADA and AIC Cathie Holst her outlook is to deny anything you have wrong with you because she is pro-DOC.

On his form for mobility impairment, Claimant stated, in part:

> I have fallen a couple of times & my walking is extremely slow. I am the first one to leave the pod I live in, but I'm the last one to the chow hall....

Defendants have filed a response to the claim. Defendants argue that Claimant is not disabled under the Settlement Agreement. Defendants have presented a number of pages from Claimant's medical records. When he arrived at DOC on December 26, 1996, he did not report to medical staff that he had back problems. *Exhibit 3*. He returned to DRDC after parole was revoked, but no entry was made in his medical records of any claim of back problems or mobility issues. *Exhibit 4*. When Claimant returned to DOC custody in December 2006, he did complain of back pain and mobility issues.

Defendants also have presented the same medical records that reflect no complaints about vision problems until Claimant returned to DOC custody in December 2006. The same is also true concerning his hearing loss, which is not reflected in medical records prior to December 2006.

Claimant filed a reply to the response of Defendants. In his reply, Claimant indicated that he was attempting to secure records from VA. Claimant was granted additional time to provide any other documents he wanted considered as part of his claim. In his reply, Claimant stated:

> The Respondent(s) claim on Page 4 of their response, that Plaintiff "failed to report any problems or other mobility issues at this time." This may be as Plaintiff had been receiving proper medical care for his disabilities, prior to entering the (CDOC), and thought that such care would continue throughout his period of incarceration. Plaintiff was afforded some semblance of proper care while at the (KCCC) unit of (CCA), prior to be transferred to the Sterling Correctional Facility. However, upon entering this facility Plaintiff has been discriminately denied any form of proper medical care, and has to suffer because of this practice of discrimination in health care standards.

Claimant was granted time in which to submit additional documents, as he wanted to secure records from VA. On April 23, 2008, Claimant submitted additional medical records in support of

5

his claim. The records from VA reflect visits for various medical reasons. An entry for August 22, 2001 reflects low back pain. Claimant had x-rays taken of his back on October 9, 2001. The radiologist's impression was "[d]egenerative changes at L5/S1 with mild sacroiliac degenerative changes as well." It appears that Claimant did receive a back brace and additional items to help him in his daily life.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must show that he was disabled on or before August 27, 2003, the day the Settlement Agreement was approved by Judge Nottingham. In addition, a claimant must show that he was discriminated against by DOC and its staff on or before August 27, 2003.

**1. Is the Claimant a disabled individual who is a member of the class?** The Settlement Agreement provides, in part, as follows:

> Damage Claims must be filed within 90 days of receipt by the inmate of the Damage Claims Forms. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case.

*Remedial Plan, Paragraph XXXII*. In other words, any claimant must show that he was disabled under the ADA and Rehabilitation Act under one of the four categories listed in the Settlement Agreement.

Claimant left DOC custody on May 30, 2001. He did not return to DOC custody until December 1, 2006. Claimant must show that he was disabled on or before May 30, 2001 with one of the four conditions set forth in the Settlement Agreement. Only if Claimant can establish that he was disabled on or before May 30, 2001 and the victim of discrimination prohibited by the ADA and Rehabilitation Act, may he then amend his complaint to include actions that occurred after his return to DOC custody on December 1, 2006. Claimant has not carried this burden of proof.

Claimant has spent most of his time discussing what has occurred since he returned in December 2006. All of the VA medical records post-date his release on parole on May 30, 2001. A careful review of all documents submitted by both sides provides no evidence that Claimant was mobility impaired, vision impaired, or hearing impaired on or before being released on parole in May 2001. No activities of daily living were significantly impaired on or before Claimant's release on parole in May 2001.

Claimant has failed to carry his burden of proof as to May 2001 and before, and the Special

6

Master may not consider what has occurred since Claimant returned to custody on December 1, 2006. Claimant's remedy for what has occurred since December 2006 is to file his own lawsuit.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented by either side that Claimant was disqualified while in DOC custody from receiving programs and services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant also carries the burden to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not met that burden.

Claimant's complaints in his claim and supplemental forms relate to medical care provided after December 1, 2006. Claimant believes that the medical care was substandard and not what he should have received. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. Claimant may pursue separately any rights that he may have concerning the quality of his medical care.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Claimant Asa M. Meek is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 12, 2008.**

SIGNED this 28th day of April, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master