IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-117
Category III
Claimant: Shannon Williams, #105799
Address of Claimant: 512 N. M.L.K. Blvd., #4201, Lubbock, TX 79043

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on April 11, 2008. This hearing was held at the offices of Legal Resolution Center, 600 17th Street, Denver, Colorado. Shannon Williams (Claimant) participated by telephone. Willow Arnold, attorney for Defendants, was present in person.

Claimant testified on her own behalf. Defendants called Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A thru CC, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed her claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 20, 2000. She was placed initially at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. Claimant was transferred to the Denver Women's Correctional Facility (DWCF) on July 26, 2000. Claimant remained at DWCF until February 23, 2003 when she was granted parole. Claimant violated parole and was returned to DOC custody on December 6, 2004. Claimant was placed into the infirmary at DRDC and remained there until June 22, 2005 when parole was granted again.

Claimant was not able to remain on parole and returned to DOC custody on December 22, 2005. On January 3, 2006 Claimant returned to DWCF. Claimant discharged her sentence on June 14, 2006. Claimant presently lives in Lubbock, Texas. Due to her health conditions, Claimant participated by telephone at the hearing.

In her initial claim form, Claimant checked the boxes for mobility impairment, vision impairment, hearing impairments, and diabetes. Claimant stated, in part, as follows:

My mobility disability includes: I'm in a wheelchair, I've had 3 strokes, I'm on oxygen 24 hours a day. I have a permanent tracheotomy tube in my neck. I have a brace on my right leg and arm. I can't walk more than a couple of feet and I'm out of breath. I have severe hearing loss in my right ear. It keeps me from hearing the

3

T.V. or important things that people have to say. Vision impaired: I have vision loss in both my eyes. I am also borderline diabetic. Between all of these things I can't get drug treatment or a GED cause of all of my health problems. I can't watch T.V. cause DOC lost my glasses and I can't hear very well. I keep infections in my neck and my memory is very bad. It's really hard cause I have to be suctioned and I have oxygen at all times and it makes everyday life really hard for me.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

> Because I have a drug habit and they would not move the T.C. program to the first floor so that I could join it. I also couldn't get a GED cause of I was always sick and my memory is so bad now. They could've let me take the work back to my unit and work on it or come up with something so I could get a better education like everybody else. But that's how I was discriminated against. I also can't work at all.

Claimant was provided supplemental forms to complete. In the supplemental form concerning diabetes, Claimant stated, in part, as follows:

> I don't have diabetes, but I'm borderline diabetic. But my medical care was terrible from 2000 to 2003.

In the supplemental form for hearing impairment, Claimant stated, in part:

> I can't hear the T.V. or what the Doctor has to say. So I don't get a good understanding. My hearing loss is in both ears but more on the right side than left.

Concerning mobility impairment, Claimant set forth the following in the first section of the supplemental form:

> I'm in a wheelchair cause I've had 3 strokes and I can't breath. It's hard for me to walk more than a few steps with out having to sit down. I wear braces on both my right leg and arm.

In the supplemental form on vision impairment, Claimant stated: "I have a lot of problems seeing without gasses. I can't see far at all."

Claimant submitted some documents in support of her claim. One is a letter is from Dr. Mitra Razzaghi, M.D. In that letter, Dr. Razzaghi stated as follows:

> I have had the pleasure of taking care of Ms. Shannon Williams, DOC #105799, during her stay at DRDC Infirmary.
> Ms. Williams is wheelchair-bound and suffers from severe respiratory disease and multiple other medical problems. During her recent relatively short stay at DOC,

she has required multiple admissions to intensive care unit and visits to sub-speciality clinics. Due to the chronic nature of her medical problems, in my medical opinion she will continue to have high medical needs and I don't predict a full recovery from her medical conditions.

At the hearing, Claimant testified by telephone from Lubbock, Texas. She testified that she had a tracheotomy when she came into DOC custody. She requested supplies for her tracheotomy but had problems getting the supplies. She stated that she had not received oxygen promptly. She also had trouble getting a wheelchair and a pusher.

Claimant testified that she was unable to take classes. She became more ill as her stay in DOC continued. She also testified that she had difficulty hearing. She indicated that she did not believe that her health would improve.

On cross-examination, Claimant testified that someone has to hold the telephone for her when she needs to use it. She stated that she has trouble seeing the television. She is partially paralyzed and received a wheelchair in 2004. In response to a question, she indicated that she can walk for only a short way and then often falls. She stated that she could not stand in the medical line and needed a wheelchair. She also indicated that she has seizures, asthma, and COPD. She acknowledged having been a former smoker for twenty years.

In response to additional cross-examination questions, Claimant testified that she has a full blown case of diabetes at the present time. She was a borderline diabetic in 2003. Claimant stated that she was discriminated against by DOC because there was a lack of drug treatment for those on the first floor. The T.C. drug program was on the third floor at DWCF, and she simply was not able to get to the program because of her physical condition.

Defendants called Dr. Orville Neufeld, D.O. as an expert witness. Dr. Neufeld had reviewed the medical records of Claimant. He stated that Claimant has a partial right-sided paralysis. She does have a tracheotomy. The records reflect that Claimant has used a cane for stability. Dr. Neufeld testified that there is no mention of diabetes in her medical records. He described her medical condition as "not that great."

Dr. Neufeld did not believe that Claimant was totally disabled. She had received a special brace for her foot drop condition. She was allowed extra blankets and pillows. She also received a humidifier. He acknowledged that she had frequent stays in the infirmary due to medical conditions. Over the years, she received additional medical items including special shoes and an oxygen generator.

Concerning the claimed hearing loss, Dr. Neufeld indicate that no such loss is noted in her records. There is nothing in her medical records either concerning vision impairment.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue her claim.

**Hearing Impairment**: Claimant has alleged that she had a hearing impairment on or before August 27, 2003. The Special Master has reviewed the documents that have been submitted by both sides. There is no question that Claimant has significant and serious medical problems. There is no indication of hearing loss. There are no copies of audiograms, if any, that may have reflected testing while in DOC custody.

The Special Master would note that Claimant did participate by telephone at her hearing. She was able to understand what was said at the hearing. The Special Masters have interpreted the hearing impairment provision of the Settlement Agreement to require something more than some hearing loss. Claimant has failed to prove that she was hearing impaired on or before August 27, 2003.

**Vision Impairment:** The same is true as to vision impairment. The evidence presented by both sides does not indicate that Claimant was vision impaired on or before August 27, 2003. This part of the claim has not been proven.

**Diabetes:** Claimant testified that she was a "borderline diabetic." The evidence fails to establish that she was diabetic on or before August 27, 2003. Even if she has been diagnosed as diabetic at the present time, Claimant must prove that she was diabetic on or before August 27, 2003. She has not carried her burden of proof concerning her claim of diabetes.

**Mobility Impairment:** The evidence establishes that Claimant was mobility impaired during her entire stay in DOC custody. She had mobility problems as the result of the totality of her medical conditions. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** A number of Claimant's complaints relate to the medical care that she received while in DOC custody. In addition, she has alleged that she was unable to attend and complete her GED due to discriminatory acts by DOC, as well as not being able to participate in drug treatment.

There is no question that Claimant did receive extensive medical care while in DOC custody. She questions the propriety of some of that care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to her, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that she may have concerning her medical care.

There are two complaints that need to be examined in some detail. First, Claimant alleged she was not able to attend the TC program because it was on the third floor at DWCF. Defendants' offer of proof from Brenda Noble indicated that Claimant did not need further drug treatment.

The second complaint from Claimant was that she was unable to complete her GED due to the inability to go up and down stairs and to have the work made available to her. Claimant testified that she could not bring work back to her unit any educational materials to study or get assistance in completing the program.

Claimant did not establish that she was eligible for or improperly denied access to the TC program. Her Progress Assessment of January 2006 reflects completion of a Level Four program in 2001. *Exhibit B*. Nothing has been provided that would indicate that DOC ever planned to place Claimant into the TC program. There is an insufficiency of evidence to show that Claimant was denied access to the TC program because of her health problems.

The inability to complete the GED program is a different matter. Claimant was enrolled in a GED program in 2001. *Exhibit D*. There is no question that she did not complete the program. *Exhibit B*. The Special Master finds that DOC staff did not accommodate Claimant to allow her to complete the program. Based upon the testimony provided by Claimant, the Special Master finds that Claimant did request assistance in 2001 and later to complete the program. Due to her health problems, she was not able to be in a classroom setting. No evidence has been presented that any attempt was made on or before August 27, 2003 to provide accommodations for Claimant to complete her GED.

To the extent that other issues have been raised by Claimant, they have not been proven by a preponderance of the evidence. Claimant has proven discriminatory conduct concerning her completion of the GED program.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Claimant testified that it was a goal to complete the GED program, especially in light of her multiple health issues. Her inability to complete the program and pass the test caused emotional stress.

7

Claimant is entitled to damages in the amount of $200.00.

IT IS HEREBY ORDERED that the claim of Shannon Williams is granted to the extent noted, and Claimant is awarded damages in the amount of $200.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Shannon Williams is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 14, 2008.**

SIGNED this 23rd day of April, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master