IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-156
Category III
Claimant: Don L. Martin, #113936
Address of Claimant: HCCC, 304 Ray Sandoval Street, Walsenburg, CO 81089

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on March 31, 2008. This hearing was held at the Huerfano County Correctional Center (HCCF) in Walsenburg, Colorado. Present were the following: Don L. Martin (Claimant); and Willow Arnold, attorney for Defendants.

Claimant testified on his own behalf. Claimant offered Exhibits #1 thru #14, and all were admitted. Defendants called Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A thru FF, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 26, 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. Claimant then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on September 3, 2002. He remained at FCF until he was transferred to HCCC on January 3, 2007.

In his initial claim form, Claimant checked the boxes for mobility and hearing impairments. Claimant stated, in part, as follows:

> (Mobility) I was working in the kitchen at Fremont Correctional Facility on April 20, 2003. I was asked to go to the prep room and prepare bologna salami and cheese for the after noon meals (dinner). In the prep room was Sgt. Haus the CO over the pm cooks and inmates Coffey and Cole. There were other inmates to help but I don't know their names. We were joking verbally, not horse playing. I looked for a 4" x 6" x 12" steam pot to put the finished product in. I took the kitchen wrap off the pan and laid it on the counter. I then placed one row of meat on the kitchen wrap to make room for one slice bologna one salami, topped off with a slice of cheese. We stack these one atop the other, seven servings per stack until the pan is filled. I walked to the table behind me to get the cheese and stepped across a steel cable which was fastened to each end to secure sharps or other materials us inmates may

3

use as a weapon. The cable was so long the center most part was lying on the floor. When I went for the cheese, it was of course atop the table, so I had no reason to be looking at the floor. When I turned to go back to my work area with the cheese in my hands, the cable tripped me. I landed with all my weight on my left knee, breaking the knee cap in two places.

Since that Sunday afternoon of April 20, 2003, I have been to the infirmary on several occasions, both here at Fremont as well as Colorado Territorial Correctional Facility, for x-rays and physical therapy.

(Hearing) While incarcerated in Mesa County I found it difficult to hear and understand other inmates as well as guards......I arrived here at Fremont and while I was waiting to be given a cell house I filed a request for eye and hearing tests. I received my eye test and glasses first. Then finally a year later I get my hearing test. It said I was moderate to severe. I was sent to an ear doctor in Pueblo. When I got there, the doctor told me I needed another test at another facility, that has been almost two months ago now.....

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

My DOC job related injury to my knee has severely limited my ability to be freely mobile, and is a source of continual pain and unnecessary suffering caused primarily by Colorado DOC's discrimination regarding addressing and or correcting this disability. I am extremely frustrated that Colorado DOC will not correct this medical problem especially since it occurred a year ago: my hearing loss problem they have discriminated against me by failing to correct a pre existing problem which initially happened to my belief while I was serving in the military which medical personnel in DOC were aware of but have failed to do anything about.....

Claimant was provided supplemental forms to complete. In the supplemental form concerning hearing impairment, Claimant stated, in part, as follows:

I have to depend on other inmates relating messages to me (I am wanted to the cage by DOC staff). I have to stand at a door and go when others go at movement. I would rather read than watch a movie I miss more of because I can't hear it.

On the form concerning his alleged mobility impairment, Claimant stated as follows:

I am in constant agony with my knee (left) since it was broken. Some days are a little better or worse than others. It is a constant battle with weather and perhaps running out of medication and not being allowed to obtain it when it's needed.

At the hearing Claimant testified concerning his injury on April 20, 2003 while working in

4

the kitchen at FCF. He tripped over a cable and cracked his kneecap in two places. He was taken to medical for treatment. He received only basic treatment and waited two or three days for x-rays. He has had on-going problems with his knee since. He has fallen because his knee has given out. He testified that he is in constant pain. He indicated that he has not received sufficient medication for his pain.

As to alleged discrimination, Claimant testified that he requested a cane for some period of time. He was granted a cane, and then it periodically would be taken away from him. He had to submit kites through medical staff in order to get his cane back. It would take some time to get it returned. He had trouble getting pain medication and was told to purchase medicine from the canteen.

Claimant testified that he has back and foot problems. He has requested inserts for his shoes but was told to purchase tennis shoes from the canteen. He had to return to working in the kitchen when transferred to HCCC. It was difficult to stand on his feet for some period of time. Claimant stated that his knee would go out on him without notice. Claimant stated that it has been difficult to do kitchen work. Claimant testified further that he had requested that he be given a cane permanently. So far, that has not occurred.

Concerning his hearing, Claimant testified that he had suffered hearing loss while serving with the United States Marine Corps. He believes that his hearing has become worse since arriving in DOC custody. He has received evaluations for his hearing loss. He testified that he cannot hear messages on the loud speaker for movement or mail call.

On cross-examination, Claimant testified that the injury to his knee aggravated his back condition. He stated that he tries to exercise as much as he can. He will walk in his cell house for exercise. He has to stop periodically while walking in order to rest his knee. He indicated that he will put on headphones while in his cell in order to watch television. He has not received a hearing aid from DOC.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. Dr. Neufeld had reviewed Claimant's DOC medical records. Dr. Neufeld testified that Claimant did have a broken knee cap but otherwise he was pretty healthy. Dr. Neufeld indicated that Claimant's knee will never be the same due to the accident. He believed that Claimant should be doing more exercises to help his general conditioning.

Dr. Neufeld testified further that the Claimant has flat feet. He needs arch supports for his feet, and those are available from the canteen. Dr. Neufeld believed that Claimant was not qualified for a hearing aid in 2003.

Defendants also offered into evidence several documents, including some of Claimant's medical records. Included are notations from Dr. Jacob Patterson, M.D., the orthopedic specialist to whom Claimant was referred.

5

Claimant testified in rebuttal. He stated that he has a hearing loss that affects him daily in prison life. He also stated that he continues to struggle with pain from his knee and back.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim.

**Hearing Impairment**: Claimant has alleged that he has a hearing impairment. The question that must be asked initially is whether he had a hearing impairment on or before August 27, 2003.

Claimant came into DOC custody on July 26, 2002. Claimant was evaluated on February 4, 2004 at the Colorado Mental Health Institute at Pueblo (CMHIP) by Dr. Charlene Hickson, M.D. Dr. Hickson found that Claimant had a moderate hearing loss. *Exhibit M*. A recommendation was made for a hearing aid, but that was denied by Colorado Access, as the overall DOC medical manager. *Exhibit H*. A determination was made that Claimant's hearing loss was not severe enough to warrant a hearing aid. *Exhibit I*. From the evidence presented by both sides, the Special Master determines that Claimant had a moderate loss on August 27, 2003.

The hearing loss, though, does not rise to the level of a disability. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The Special Masters have interpreted the provision of the Settlement Agreement relating to hearing impairment as requiring a significant impact on daily activities. In this case, Claimant has indicated that he has had to rely upon other inmates to advise him when it is time for mail call and chow. He did not indicate that he could not perform his assigned work or attend classes. In keeping with previous rulings, there has been no showing that Claimant had to rely on sign language, lip reading or written communication to carry on activities of daily life. Claimant was able to

6

understand what was going on at the hearing. On August 27, 2003 Claimant did not meet the criteria for being considered as hearing impaired under the ADA and Rehabilitation Act.

**Mobility Impairment**: Claimant claims that he was and is mobility impaired as the result of the accident on April 20, 2003. The initial date for consideration is August 27, 2003, as Claimant had to have been disabled on or before that date.

There is no question that Claimant broke his kneecap on April 20, 2003. *Exhibit D*. Dr. Patterson examined Claimant on September 10, 2003. On that date, Dr. Patterson noted, in part, as follows:

> He comes in today for follow-up of his patellar fracture. I have not seen him in about four months. This was a non-displaced, distal pole fracture. He still has his knee immobilizer....
> At this time, he should be clinically adequately healed.
> We will check an x-ray. He needs to get started on some quad strengthening exercises. Would suggest discontinuing the immobilizer and continue use of the cane. It will probably take 2-3 months to rehabilitate his muscles.

*Exhibit E*. Dr. Patterson next saw Claimant on January 28, 2004. At that time, Dr. Patterson stated that Claimant "still has some difficulty with stairs and instability in the patella." *Exhibit F*. Dr. Patterson recommended a lower tier restriction and further rehabilitation.

The evidence reflects that Claimant was mobility impaired on August 27, 2003 as the result of the fracture to his knee cap. He was having trouble walking and was in the midst of rehabilitation for his knee and leg. Claimant was a member of the class as mobility impaired on August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** A claimant must prove by a preponderance of the evidence that he was subjected to discriminatory conduct on or before August 27, 2003. This discrimination must be based on a claimant's recognized disability, not on other factors such as race, age, etc. An example would be placement of a wheelchair-bound inmate on the third floor of a building with no working elevators.

Claimant's allegations of discrimination concern his medical care following the fall and fracture of his kneecap. As noted in his claim form, Claimant alleged "Colorado DOC's discrimination regarding addressing and or correcting this disability." Claimant has further alleged that he did not receive proper medication to alleviate the pain that he has endured.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the

ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Review of all of Claimant's documents and testimony indicates that Claimant did receive medical treatment on and before August 27, 2003. Claimant takes issue with the quality of the care. Claimant has alleged that he did not receive proper medical care. He does not allege that between April 20, 2003 and August 27, 2003 that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act, save for the medical decisions made by DOC staff and the outside specialists that were secured.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. Concerning the time period that ended on August 27, 2003, the concerns of Claimant relate to his medical care. The quality of that care must be examined in a different proceeding. It cannot be examined in a case brought under the ADA and Rehabilitation Act. Claimant has failed to prove any discrimination by DOC staff on or before August 27, 2003 over which the Special Master would have jurisdiction in light of *Fitzgerald*.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered in light of the negative answer to Question #3.

IT IS HEREBY ORDERED that the claim of Claimant Don L. Martin is dismissed, as Claimant has failed to prove each of the four questions set forth by Judges Nottingham and Kane and that he was the victim of discriminatory conduct prohibited by the ADA and Rehabilitation Act after August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 7, 2008.**

SIGNED this 21st day of April, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master