IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-351
Category III
Claimant: Stephen Adams, #86319
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on April 10, 2008. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Stephen Adams (Claimant); and Willow Arnold, attorney for Defendants.

Claimant testified on his own behalf. Claimant offered into evidence Exhibits #1 and #2, and both were admitted. Defendants called Dr. Paula Frantz, M.D. Defendants offered into evidence Exhibits A thru PP, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on May 5, 1995. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. Claimant was placed then at several facilities over a period of time. Claimant was placed into a community corrections program in October 1999 and then placed on parole. Parole failed, and Claimant was placed back into DOC custody on October 16, 2001 at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado.

Claimant was placed back on parole in November 2002. Claimant was arrested by officers of the Aurora Police Department on January 31, 2003. Claimant was severely injured as the result of this arrest and continues to have medical problems. Claimant was incarcerated in the Arapahoe County Jail until he returned to DOC custody on June 11, 2004. This incarceration was the result of a revocation of parole and a new criminal conviction.

Claimant was placed at DRDC from June 11, 2004 to July 15, 2004. He then was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He remained at SCF until he was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He then was transferred briefly to the Four Mile Correctional Center (FMCC) and Arrowhead Correctional Center (ACC) in Canon City, Colorado. On December 13, 2007, Claimant was transferred to FLCF.

3

In his initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> 1) Paralysis to left side of body. 2) Unable to stand or sit or walk over 50 feet, because of the paralysis and surgery performed on back, L-4 and 5, L-2 also damaged. "Severe spinal injury" limits my mobility to do just about anything. Spinal nerve damage. I have severe nerve damage and paralysis to the left side of my mid torso to my left knee. I have already had surgery to the lower part of my spine and need surgery to the upper half. Due to all this I have drop foot and severe spasms on regular basis that keep me bed ridden a lot in pain.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

> I am made to walk outside and approximately 150 ft. three times a day to eat but also am forced to stand in line for a long period of time before retrieving a tray of food. I am also forced to go walk outside in the snow and all other weather to the medical window to retrieve my medication only to arrive and have to stand there in line on a cane with all my body weight shifted to the right for 20 min. to 30 min and then walk back to the living unit in pain. I have been on the medical staff consistently for "Canadian crutches" and still no dice.....I am also forced to work by sitting up in a chair for 3 ½ hr on a computer there is no type of support cushion for my back and DOC Sterling refuses to accommodate this necessity and if I don't work then I am placed on lock down status. I am forced to do tasks that are very hard on the body and create a great deal of additional pain. I cannot do these tasks....I deserve to be in a facility that accommodates my medical needs.

Claimant was provided a supplemental form to complete and file. Claimant stated in this form, in part:

> I have severe nerve damage to my back and have had spinal surgery, but I still retain the partial paralysis in the left mid torso to left leg which has brought a great deal of immobilization and mobility impairment. It is hazardous and painful to my back and right side of body, to walk or move at all. I have a walking cane and I am unable to stand or sit or bend....

At the hearing, Claimant testified that he suffered a significant injury to his spine while being arrested on January 31, 2003. This altercation with the police led to partial paralysis on the left side of his body. While incarcerated at the Arapahoe County Jail, Claimant underwent spinal surgery performed by Dr. Choi. Claimant indicated that a disk was removed from his spine and then a fusion took place. He suffered nerve damage as the result of the injury and surgery.

Claimant testified further than he received a brace for his leg and needed special shoes. He indicated that he needed a new right boot because the old one had worn out. Claimant stated that he

believed that he was the victim of discrimination due to the medical care that he has received since coming back to DOC. He indicated that he has received some accommodations but that his wheelchair needs to be fixed. Claimant stated that he had no mobility problems before the January 31, 2003 incident with the police.

On cross-examination, Claimant testified that he can get around with the Canadian crutches. He rarely goes to eat meals at the chow hall, as it is too far away. He has received a shower chair from DOC staff. He indicated that he did not know why he was transferred to FLCF.

Defendants called as an expert witness Dr. Paula Frantz, M.D. She had reviewed the medical file of Claimant. She stated that Claimant had been injured while being arrested in late January 2003. She described Claimant's present condition as she saw it and believed that Claimant could get around without a wheelchair.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have been in DOC custody on or before August 27, 2003 and had an impairment, as recognized by the Settlement Agreement (mobility impairment; hearing impairment; vision impairment; and diabetes). It was on that date that the Settlement Agreement was approved by Judge Nottingham. A claimant also must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

The time sequence that controls in this case began with Claimant's release on parole on November 18, 2002. Prior to that date, Claimant had no mobility problems as noted by his own testimony. On January 31, 2003, Claimant was injured during his arrest and suffered spinal injuries. He then was placed into the custody of the Arapahoe County Jail. He remained in the custody of the jail until June 11, 2004 when he returned to DOC custody.

Claimant is not a member of the class as defined by the Settlement Agreement. He was not disabled while in DOC custody on or before August 27, 2003. His injuries were not the result of anything DOC did or did not do on or before this date. When Claimant returned to DOC custody in June 2004, he was injured and disabled. The problem is that no jurisdiction exists to deal with any condition that arose after August 27, 2003 because Claimant was not disabled on or before that date.

Claimant may pursue his own separate lawsuit for anything the occurred in DOC after his return on June 11, 2004. He cannot pursue his claim for the reasons noted. The Special Master has no jurisdiction over the claim and must dismiss it.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the**

**benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In light of the answer to Question #1, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #1, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Stephen Adams is denied, as Claimant was not disabled and in DOC custody on or before August 27, 2003 and, therefore, he is not part of the class; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before June 30, 2008.**

SIGNED this 21st day of April, 2008.

BY THE COURT:

/s/ Richard M. Borchers

Richard M. Borchers
Special Master