IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-390
Category III
Claimant: Robert Archuleta, #81187
Address of Claimant: 29 S. King Street, Denver, CO 80219

___

## FINAL ORDER OF SPECIAL MASTER
___

THIS MATTER came before the Special Master for hearing on April 11, 2008. This hearing was held at the office of Legal Resolution Center, 600 17th Street, #2800-South, Denver, Colorado. Present were the following: Robert Archuleta (Claimant); and Willow Arnold, attorney for Defendants.

Claimant testified on his own behalf. Defendants called Dr. Orville Neufeld, D.O. Defendants offered into evidence Exhibits A thru EE, and all were admitted.

Each side presented closing arguments, and further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

        B. QUALIFIED INMATE
        Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 14, 1993. He was placed at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. He then was placed at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. He remained at BCCF until he was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on January 27, 1994. He was placed then at the Arrowhead Correctional Center (ACC) in Canon City, Colorado. Claimant was placed into a community setting and discharged this sentence on September 28, 1995.

Claimant returned to DOC custody on a new sentence on May 23, 2003. He was sent to DRDC for evaluation. He was placed afterward at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. He was placed into a community setting on July 29, 2004. He returned to DOC custody and to BVCF on September 21, 2004. He then was placed at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado on September 12, 2005. Claimant went to a community placement on October 18, 2006 and is now on parole.

In his initial claim form, Claimant checked only the box for diabetes. Claimant stated, in part, as follows:

> (Diabetic) No driving license so unable to find driving jobs, hard to get to work. Must be close to medical facility & time off for appointments, so make it hard

3

to find & keep jobs.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated follows:

> Moved me from level 1 to level 2 which is more security. Loss of certain freedom. More locked down and harsher inmates, which made me more stressed, which caused me to have to do more insulin injections. Made me have to remain in prison longer. Had to work my way back to Level 1 than thru halfway house. Now I'm level 1 again & have no gate pass as none med inmates get programs which give them experience for when they are released, which were denied. And other special programs, such as heavy equipment or forestry. Also denied minimum camps which results in having to do more time before we're eligible for release. They offer more programs in min camps which were not eligible to due to our hold in min restricted camps.

Claimant was provided a supplemental form to complete. In his supplemental form, Claimant stated, in part:

> Thru the system of DOC it is a known fact that diabetics are supplied with soft sole shoes due to the problems we have with our feet. Here at Buena Vista we are told this facility does not provide for us. Even DRDC recognizes this problem and they are only a tempo facility. I feel shoes are very important to diabetics. Because feet of a diabetic are very vulnerable to infections while have to be working & standing on our feet all day long. I feel if one facility in DOC provides & recognizes this why not all of them.

At the hearing, Claimant testified that he was diagnosed as having diabetes in 1989-90. He began treating his diabetes with insulin by shot. He takes three shots of insulin per day. He also has been diagnosed as having sleep apnea and COPD. Claimant stated that he was always tired and would fall asleep at his job. This was the result of his sleep apnea. Claimant stated that he needed diabetic shoes because his feet would swell.

Claimant stated that he was the victim of discrimination because of his medical code. He would not be placed into any camps because of his diabetes. This meant that he had to serve more time than if he could have gone to a camp. Claimant stated that some of the programs at camps are not available at higher security facilities and that the pay is higher at camps. He had wanted to train to run heavy equipment but was not able to do so. He was told that this was the result of his diabetes. Claimant also indicated that he could not obtain a gate clearance which precluded him working in some jobs that were outside of the fence.

On cross-examination, Claimant testified that DOC had not taken care of his medical problems. He was required to wear DOC issued boots. He sometimes was not able to exercise. He sometimes did not go for meals as he was not able to walk for any extended period of time.

Defendants presented Dr. Orville Neufeld, D.O. as an expert witness. He had reviewed Claimant's medical records while he was in DOC custody. Dr. Neufeld acknowledged that Claimant is diabetic and must rely upon insulin to control his condition. Claimant's blood sugar test results have been "all over the place." Dr. Neufeld testified that Claimant is overweight and does not control his food intake as well as he should. Claimant wears glasses but there is no evidence in the medical records that Claimant has any diabetic retinopathy.

Dr. Neufeld testified further that Claimant had received diabetic education. Records reflected some potential problems with his kidneys. In his opinion, Claimant had not taken proper care of himself and had not been following the appropriate regimen for his illness. Dr. Neufeld stated that Claimant needs to lose weight and control what he eats. In his opinion, soft soled shoes could be obtained from the canteen. Restrictions on placement of diabetics is for safety because the camps do not have twenty-four hour medical staff available in case of an emergency. On cross-examination, Dr. Neufeld testified that he was aware that diabetics cannot be placed at a camp. Claimant's medical rating is an M-4 which reflects a need to be close to medical care in case of an emergency.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim.

The evidence reflects that Claimant was diagnosed as having diabetes long before coming into DOC custody. Claimant was diabetic on and before August 27, 2003. In keeping with previous rulings by the Special Masters, Claimant is determined to be a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has raised one basic issue in this case that will need to be explored in detail. Claimant testified that he was denied equal treatment because he was unable to be placed into minimum level camps. As a result, Claimant was not able to attend certain programs, was not able to earn higher wages, and was required to serve more time that he otherwise would have. He believes that this was discriminatory and based solely upon the fact that he was a diabetic.

Claimant testified that he was moved from BCCF to AVCF for no apparent reason, except

that he was diabetic and that BCCF did not have sufficient medical staff in 1994 to care for him and other diabetics. BCCF had a lower security level than AVCF. Claimant believed that this transfer was based solely on the fact that he had diabetes that require insulin three times per day. This testimony was not refuted.

Claimant further testified that he was never eligible for any of the minimum security camps because of his diabetes. Dr. Neufeld confirmed that diabetics cannot be placed at a camp due to lack of medical care on a twenty-four hour basis. Claimant stated that programs were available at camps that were not at other facilities. More importantly, Claimant testified that camp programs allowed faster community or parole placement. In other words, Claimant had to serve more time in DOC custody than someone comparably placed who was not diabetic.

Defendants spent time discussing the safety issues for a diabetic, and that is all well and good. It misses the point raised by Claimant that programs were available at camps but could not be utilized by diabetics because camps would not accept diabetic inmates. It further misses the point that Claimant was not able to obtain the benefits available to non-diabetic inmates at camps which allowed earlier release back into the community. Claimant has established that programs that would lead to earlier release into the community were not available for diabetics in higher security facilities. Thus, Claimant was treated differently simply because he was and is an insulin-dependent diabetic.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant stated that he had to serve more time in DOC custody before his release into the community. The Special Master finds that this did occur and that Claimant was denied equality of treatment during the period of time from 1993 to 1995. He is entitled to damages in the amount of $1,000.00.

IT IS HEREBY ORDERED that the claim of Claimant Robert Archuleta is granted to the extent noted, and damages are granted to Claimant in the sum of $1,000.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 7, 2008.**

SIGNED this 23rd day of April, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master