IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-037
Category III
Claimant: James Martinez, #56997
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

## FINAL ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master for hearing on April 10, 2008. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: James Martinez (Claimant); and Willow Arnold, attorney for Defendants.

Claimant presented the following witnesses at the hearing: Sergeant Emory Oliveras; Lt. Dennis Munger; Claimant; and Sergeant Barry Johnson. Defendants called Dr. Paula Frantz, M.D. Defendants offered into evidence Exhibits A thru EE, and all were admitted.

Each side presented closing arguments. Claimant was granted additional time up to and including May 10, 2008 in which to submit additional documents in support of his claim. No additional documents have been received. Further argument will be waived. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for

Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility,

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on August 21, 1987. He was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on September 16, 1987. He was placed then at the Centennial Correctional Facility (CCF) in Canon City, Colorado on August 12, 1988. Claimant was transferred to the Four Mile Correctional Center (FMCC) on March 15, 1989. He was placed into a community corrections placement on November 30, 1989. He regressed back to DOC custody on October 19, 1990 and went to the Rifle Correctional Center (RCC) in Rifle, Colorado. He went on parole on December 26, 1991. He was discharged from that sentence on February 2, 1994.

Claimant returned to DOC custody on December 12, 2000. He was placed at the Denver Reception and Diagnostic Center (DRDC) for evaluation and testing. He then was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado on January 25, 2001. He remained at SCF until placed into a community program on March 8, 2007. He was returned to DOC custody on July 5, 2007 and was placed at FLCF.

In his initial claim form, Claimant checked only the boxes for mobility impairment and vision impairment. Claimant stated, in part, as follows:

3

My mobility results from my left leg being a quarter inch shorter than my right leg. SCF refuses to provide proper foot wear. My vision impairment is that I have had cataract surgery and the implants which I have in both eyes are being damaged by the refusal to order proper eye glasses. My eyes will go unfocused for days and I have continuous headaches from my eyes trying to focus.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated follows:

The Sterling Correctional Facility medical department has refused numerous requests for proper footwear with a quarter inch buildup on the left sole. On my eyes SCF Medical Department refuses to do a proper evaluation on my eyes and the lens implants which are staring to fail, I am slowly going blind.

With my left leg being a quarter inch shorter than my right - this continued uneven walk will force my spine and hips to deteriorate and cause paralysis.
If my eyes are not corrected or attempts are made to get me proper eye wear, it is very possible that I will go blind, it has been four years that I have been trying to get proper care, it may already be too late.

Claimant was provided a supplemental form to complete. In his supplemental form on mobility impairment, Claimant stated, in part:

I have bleeding feet with an excessive amount of puss discharge everyday. I have my left leg which is shorter than my right leg and the SCF Medical Department refuses to provide shoes and medical treatment to stop the bleeding.

As to his vision impairment, Claimant stated:

Approximately 10 years ago I had lens implant surgery. Since my incarceration the lenses have started to fail. I need a proper evaluation and glasses that could stop or slow down the lenses deteriorating and leaving me blind.

Claimant also filed copies of grievances, medical kites and some pages of his medical records. The records reflect that he has a right foot that is size 7, while his left foot is size 6. The medical records also reflect that Claimant has significant problems with athlete's feet. The records further reflect significant calluses on both feet.

At the hearing, Claimant called a number of witnesses. Sergeant Emory Oliveras is a DOC employee at SCF. He was aware that Claimant broke his hip and had to be helped to seek medical attention. Claimant's fall took place on a sidewalk. Lieutenant Dennis Munger is assigned to SCF and remembered some of the medical problems that Claimant has been experiencing. He was aware that Claimant was using a cane.

4

Sergeant Barry Johnson is employed by DOC at SCF. He was aware that Claimant used a cane while at SCF. The cane then was taken away.

Claimant testified in his own behalf. He indicated that he broke his hip while at SCF. This occurred in front of Cell House 21. He fell down and had to be helped by others to medical. He had surgery on his hip at Denver Health and Hospitals. He was placed at DRDC for recovery and was provided a wheelchair. Later the wheelchair was taken from him. He was provided a cane and then that was taken from him. He has had problems with his hip since the break. The hip socket is probably deteriorated to the point that it needs to be replaced.

Claimant also testified that he received cataract surgery several years ago. That surgery included lens implants. He had a second surgery. He has difficulty watching television. His vision is becoming worse. He also noted that his left leg is one-quarter inch shorter than his right leg. He stated that he walks with a slight limp. He indicated that the medical department at FLCF has been good to him. He testified that he believes that he needs a hip replacement.

On cross-examination, Claimant testified that he has received glasses from DOC. These are tri-focals. He still finds it difficult to watch television. When he takes off his glasses, everything is blurry. He has been using a walker at times. He feels safer with a walker. He tries to walk with a cane for exercise. In response to a question, Claimant indicated that he was not using a cane in 2003 and was able to walk with a limp. At the present time, he has difficulty moving his leg and taking his clothes off. He puts lotion on his feet but continues to have problems.

Defendants called Dr. Paula Frantz, M.D. as a witness. She testified that Claimant has had hip and health issues. He has chronic athlete's feet. He was seen by a podiatrist in January 2001 for this condition, and Dr. Frantz consulted with Claimant in January 2005. It was recommended to Claimant to secure an over the counter medicine from the canteen.

Dr. Frantz testified further that Claimant had cataract surgery prior to his entry into DOC. He had lens implants in his eyes. Claimant was referred to an ophthalmologist in 2004. He received laser treatment for his eyes in January 2005 and had a follow up evaluation two months later. Dr. Frantz stated that she did not believe the implants were deteriorating.

On January 25, 2005, Claimant was evaluated by Dr. Frantz for disabilities. She noted that Claimant could sit but was not able to flex. In July 2005, the hip did fracture. She noted that x-rays verified that there was a fracture in the hip. Claimant had a hip surgery. Claimant was able to walk using a cane and a walker after the surgery. Dr. Frantz encouraged Claimant to exercise and rehabilitate his leg and hip. The use of the cane was not to be permanent.

In January 2008, an MRI was done on Claimant's hip. Problems were noted that warranted a referral to a specialist. Claimant was advised that further surgery would involve risks of infection. Dr. Frantz stated that the left leg being shorter than the right was not a major issue.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have had an impairment, as recognized by the Settlement Agreement, on or before August 27, 2003. It was on that date that the Settlement Agreement was approved by Judge Nottingham. In other words, absent a showing of an impairment on or before that date, a claimant may not pursue his claim. In addition, each claimed disability must be examined separately.

**Mobility Impairment**: Claimant's hip fractured in July 2005. There is no dispute that surgery was performed on Claimant's hip. There is no real dispute that his hip has problems at the present time, but Claimant has been advised that additional surgery would involve possible complications.

The initial question is one of whether he was mobility impaired on August 27, 2003. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The evidence presented reflected that Claimant has a left leg that is one-quarter inch shorter than his right leg. There has been no evidence presented by either side that the leg being shorter substantially affected Claimant's ability to carry on activities of daily life. Claimant must establish that he was disabled, as defined by the ADA and Rehabilitation Act, on or before August 27, 2003. If that is established, Claimant may then amend his claim and present evidence of what occurred after that date.

Claimant has not established that he was mobility impaired, as defined by the ADA and Rehabilitation Act, on August 27, 2003. His activities of daily life were not substantially impaired. Therefore, the Special Master may not consider what has occurred after that date. Claimant may pursue what has occurred since August 27, 2003 through a separate lawsuit. Claimant is not a member of the class as mobility impaired.

**Vision Impairment:** Claimant did have surgery on his eyes prior to coming into DOC custody. That surgery included implants to both eyes. Claimant testified that his vision has started

to deteriorate. Medical records reflect that he had laser surgery on January 2005. A follow up examination reflected that he has 20/20 acuity in both eyes. *Exhibits G*.

The evidence presented by Claimant does not establish that he was vision impaired on or before August 27, 2003. As noted earlier in this order, nothing can be considered after that date unless there is an establishment on or before that date. There had been no showing that on or before August 27, 2003 that Claimant's ability to do activities of daily life was substantially impaired by vision problems. The Special Master does not make any determination concerning Claimant's vision impairment as of January 2005 or later. Claimant is not part of the class as vision impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has not established that he is a member of the class as either mobility of vision impaired. Therefore, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered as Claimant is not a member of the class.

IT IS HEREBY ORDERED that the claim of Claimant James Martinez is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 11, 2008.**

SIGNED this 16th day of May, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master