IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-207
Category III
Claimant: Raymond Stevens, #56921
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on May 1, 2008. This hearing was held at the Sterling Correctional Facility (CTCF) in Sterling, Colorado. Present were the following: Raymond Stevens (Claimant); and Willow Arnold, attorney for Defendants.

Claimant testified in his own behalf. Defendants presented the following witnesses: Dr. Paula Frantz, M.D.; Kathy Kiley; Mary Carlson; and Nancy Bell (by offer of proof). Defendants' exhibits A through Z were offered and admitted into evidence.

This claim has been taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on August 10, 1987. He was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He then was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. On March 30, 1988, Claimant was placed into a community placement. Claimant returned to DOC custody on June 24, 1988 and was placed at the Buena Vista Correctional Facility (BVCF), in Buena Vista, Colorado.

Claimant was granted parole on July 12, 1989. Parole was revoked and Claimant returned to DOC custody. He went to the Denver Reception and Diagnostic Center (DRDC) for evaluation. He returned to DOC custody and was placed at a number of facilities. He returned to AVCF on June 5, 1998 and remained there until January 26, 2001 when he went to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. He then was transferred to the Colorado State Penitentiary (CSP) in Canon City, Colorado on May 7, 2001. He paroled from CSP on April 16, 2007. Parole was revoked, and Claimant was returned to DOC custody. He ultimately was placed at SCF where the hearing was held.

In his initial claim form, Claimant checked the box for vision impairment. Claimant stated, in part, in his claim form:

> My disability affected my life so bad that I can't even get a job or hold one!!

3

> I can't read or write or do mathematics my skills are at the 1st grade level. I have severe processing memory problems and learning disabilities. I'm getting help to do this form now!! I can't even look at t.v. for too long because I can't hold the picture still. I have no way of living life like any one else. I have a disability that is scotopic sensitivity syndrome and the disability affects my life every time I do any thing. Life for me is so hard because there is nothing I can do to make it all go away or help it!! It is a disability that will be with me for life and it will have severe affects on my life forever.....

In response to the question in the claim form concerning discrimination by DOC and its staff, Claimant stated as follows:

> I was discriminated against by the Colorado Department of Corrections by them not having programs or services to people with my disabilities here in C. Sp. or in DOC. There is no access to school programs for people with my disabilities. I'm being discriminated against by DOC not having access to legal assistance for people with my disabilities. I'm being discriminated against by DOC not having job training programs for people who cannot obtain their GED due to their disability.[2]

Claimant was provided a supplemental form to complete. In his supplemental form, Claimant stated as follows:

> My vision disability is called Scotopic Sensitivity Syndrome which causes light/visual processing difficulties while reading. In my case trying to read. I also have severe processing memory problems and learning disabilities.

Claimant also submitted several documents in support of his claim. Some of these included academic assessments. In a memorandum dated May 14, 2002, Jeffrey J. Hay stated, in part:

> Academically, Mr. Stevens is reading around the 1st grade level. It is evident that Mr. Stevens has severe processing, memory problems, and learning disabilities. ....Because of Mr. Steven's low Academic performance and perceptual and neurological based reading problems it is unrealistic that he will ever be able to obtain his GED. Furthermore, based on his previous academic history, it is highly unlikely that Mr. Stevens would be able to do the cognitive programming necessary through the PRO Unit (which is geared to the 6th grade level of functioning) and that he should not receive restricted privileges.

---

[2] The Special Master corrected most spelling errors and some grammar mistakes. Claimant acknowledged that another inmate wrote the claim form for him. The content of the form is what is important.

In a memorandum dated November 7, 2001, Jeffrey Hay wrote to the CSP security manager and stated, in part:

> Inmate Raymond Stevens # 56921 F-2:21, was tested for Scotopic Sensitivity Syndrome which causes light/visual processing difficulties while reading. Mr. Stevens demonstrates many of the signs which would qualify him as having this disorder. Through testing, two color overlays (turquoise & grey) have been found to help Mr. Steven's reading ability. With CSP security's permission, Mr. Stevens will have the two color overlays in his possession for reading purposes only. The overlays are not to be altered in any way and if they are, they will not be re-issued.

Permission was granted at that time for Claimant to have the overlays.

At the hearing, Claimant testified that he has had vision problems since he first came into DOC custody. He has never been able to read and has not been able to take and complete classes. He testified that he asked for testing for years. His initial requests for educational testing were denied.

Claimant stated that he needs schooling in order to be able to find work when he is released. The testing done in 2001 and 2002 indicates that Claimant reads at a very low level. Claimant testified that he has a vision impairment that precludes him from learning the skills necessary to survive in the community. Claimant described his vison as always moving on and off of a page. Claimant states that he cannot read and must get help from someone else who then reads to Claimant. Claimant also testified that he gets headaches from his vision problems.

On cross-examination, Claimant testified that he believes that he has Scotopic Sensitivity Syndrome (SSS). Claimant described SSS as a visual impairment. Claimant stated that someone else had completed his claim form because of the difficulties he has with reading. Claimant stated that he was advised that he also has dyslexia.

Claimant acknowledged that he had received colored overlays but they were taken from him when he entered CSP. Claimant testified that he tried to get help in the community while on parole, but without any success. He stated that he needs training so that he might find work when discharged from his sentence.

Claimant testified that he needed overlays for his reading. He is unable to watch much television. Claimant stated that no one had been able to teach him effectively since he came into DOC custody. He has been trying to utilize his hands as training for work.

Because of the vision problems, Claimant has had migraine headaches. Claimant indicated that his main concern is getting some education so that he can be released and then remain free.

Defendants called Dr. Paula Frantz, M.D. as an expert witness. Dr. Frantz is the Chief Medical Officer for DOC. She had reviewed the medical and optometry files of Claimant. Over the

years, Claimant has seen both optometrists and ophthalmologists. Claimant has received both MRI's and CT scans of his head. Those tests came back within normal limits. Dr. Frantz testified that SSS is not recognized by most health care professionals as a medical problem. She also stated that sometimes SSS is viewed as a type of dyslexia.

Dr. Frantz said based upon her research that SSS is an educational issue, not a medical condition. The problem for an individual with SSS is processing of information. Dr. Frantz said that Claimant's eyes are anatomically without major problems. His conditions are learning disabilities, rather than problems with the eyes. Dr. Frantz also stated that colored overlays may affect the movement that is part of SSS. On cross-examination, Dr. Frantz stated that SSS is not a medical diagnosis.

Defendants called Kathy Kiley as a witness by telephone. She had been a teacher of Claimant while he was at CSP. She testified that Claimant had made some progress in learning while at CSP. She acknowledged on cross-examination that educational work had to be read to Claimant. She stated that she is unaware of whether he can write.

Defendants called Mary Carlson who is the DOC manager of time computation and release. She testified by telephone that Claimant had not improperly lost any days of credit.

Defendants made an offer of proof that Nancy Bell would testify that she had been a teacher of Claimant. She believed that Claimant could write but very slowly.

Claimant testified in rebuttal that glasses do help, but it is still very difficult for him to read anything. He learns best through his hands. He stated that he has never been able to pass the GED exam. He believed that he needed to be taught in a different manner.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

Claimant must show that on or before August 27, 2003 he had a recognized impairment as set forth in the Settlement Agreement. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant has claimed only a vision impairment in this case. He has testified that he has SSS which precludes him from seeing correctly and, therefore, precludes him from learning.

This claim raises some unique and difficult issues. There is no question that Claimant has trouble learning and reading. Testing done in November 2001 indicated that he has significant learning disabilities. *Exhibit G*.
      The results of the Jordan Left-Right Reversal Test are well below the normal

limits suggesting severe visual reversal and neurological based Reading problems. He scored (83) on the total Raw Error score which places him in the 0 Percentile for his age and he is functioning below the 9.0 Developmental Age.

*Id. at p.2*. The conclusion at that time was that Claimant "would never be able to obtain his GED." Beyond the test results presented by both sides from 2001 and 2002, it does not appear that more recent educational testing has been done.

The evidence presented during the hearing reflects that various medical tests and evaluations have been done over the years. Dr. Wainwright found no major vision problems in an evaluation in 1999. An MRI of Claimant was read as normal in 2001. *Exhibit S*. A previous set of x-rays of the skull were read as within normal limits. *Exhibit T*. The evidence is significant that Claimant does have trouble processing information. From what has been presented, it appears that the processing problems relate to dyslexia and possibly SSS. There is no evidence that vision problems are caused by cataracts, glaucoma, or the myriad of other problems that can affect the ability to see. The question then is whether Claimant has a vision impairment as defined by the Settlement Agreement.

The Special Master did a computer search of court decisions relating to SSS. There are almost no cases dealing with SSS or Irlen Syndrome. In one case, SSS was claimed as a existing condition, along with many other claimed health problems. *Hintz v. Chater*, 913 F.Supp. 1486 (D.Kan. 1996)(denial of SSDA benefits upheld). In *Ballard v. Kinkaid School*, 147 F.Supp.2d 603 (S.D.Tex. 2000), a student argued that he had been discriminated against in violation of the ADA because of his SSS. This opinion was later withdrawn, but does provide some insight into SSS as a disability. The trial judge stated that SSS requires an individual examination of the condition on the activities of daily life of the individual. In that case, the student was able to read but with some difficulty. The student was determined not to be disabled under the ADA.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The evidence presented by both sides reflects that Claimant has great difficulty learning. By regulation, learning is included as a major life activity. *Id.* In this case, Claimant clearly has processing problems that may preclude him from ever attaining a GED.

The issue of SSS arose on a previous claim (03-430). The Special Master determined that

SSS was a visual condition covered by the Settlement Agreement. In order to treat both claimants equally, the Special Master will find that Claimant in this claim has established that he had a vision impairment on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There is no evidence that Claimant was not qualified to receive services and benefits from DOC. As an example, Claimant was not disqualified due to disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must also prove that he was the victim of discrimination on or before August 27, 2003. With one exception, Claimant has failed to establish such discrimination.

The evidence presented by both sides has established that Claimant has significant problems learning. The testing done in 2001 and 2002 reflects that Claimant may never be able to obtain even a basic amount of education. No matter what Defendants may do, it may not accomplish much. Claimant is concerned about being able to survive and work in the community when discharged. His concern is legitimate. Claimant does not want to re-enter the criminal justice system, and that goal is one that everyone should be working toward. The problem is that Claimant has not shown that he was treated differently from other inmates solely because of his visual processing problems. The evidence reflects that Claimant has received specialized educational assistance. There was and is little evidence that Claimant could receive additional specialized treatment that would allow him to make educational process. Claimant's concerns are not the result of discrimination prohibited by the ADA and Rehabilitation Act.

One area of discrimination has taken place. After Claimant was tested for SSS, colored overlays were provided to him. These help somewhat by keeping the printer pages from visually moving. At one point at CSP, apparently the overlays were taken and not returned. Claimant had an accommodation that made a slight difference in his life. No valid reason has been presented why the overlays were not returned or provided to Claimant. Claimant is to be provided appropriate overlays to allow him the opportunity read with less movement. This order shall continue until Claimant is discharged. Should Claimant misuse the overlays, then they may be removed from him.

The Special Master also is aware that special glasses may assist Claimant. Defendants are to take appropriate steps to determine if such glasses are available for Claimant and if they would help him with his vision problems. The goal is to ensure that Claimant is able to survive and support himself when discharged.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant testified that the colored overlays helped him and then were taken away with no reason given. Claimant is to be provided colored overlays to help with his SSS. He is to be examined to determine if special glasses for SSS treatment may be of assistance. If testing indicates that glasses would assist him and help with visual processing, then a pair of those glasses are to be provided to him.

IT IS HEREBY ORDERED that the claim of Claimant Raymond Stevens is granted, in part, as set forth in this order; and

IT IS FURTHER ORDERED that Claimant is to receive colored overlays for his visual impairment and is to be tested to determine if special glasses would help lessen his SSS problems; ad

IT IS FURTHER ORDERED that the remainder of the claim is dismissed due to failure to prove each of the four questions set forth by Judges Nottingham and Kane; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 4, 2008.**

SIGNED this 14th day of May, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master