IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-316
Category III
Claimant: Dennis M. Hicks, #112732
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on May 12, 2008. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Dennis M. Hicks (Claimant); and Willow Arnold, attorney for Defendants.

Testimony was received from Claimant. Defendants presented the testimony of Dr. Paula Frantz, M.D. Defendants' Exhibits A through G were offered and admitted into evidence. All documentation previously submitted by both sides was accepted. After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on April 3, 2002. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant remained at DRDC until June 18, 2002 when he was transferred to the custody of the Montezuma County Sheriff. Claimant remained in local custody until his return to DRDC on February 24, 2003.

Claimant was transferred to the Colorado State Penitentiary (CSP) in Canon City, Colorado on March 24, 2003. Claimant was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado on September 8, 2004. On August 25, 2005, Claimant was placed into the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant was transferred to AVCF in October, 2006.

In his initial claim form, Claimant checked the box for diabetes. Claimant stated, in part, as follows:

> I was diagnosed with Type II Diabetes in April of 2002 when I entered DOC at Denver Reception & Diagnostic Center. I have to take pills twice daily (Glucovance). I'm on sliding scale for insulin and I need finger sticks twice daily. If blood sugar level is above 150 I get insulin injection.
> I think it is accurate to say that I suffer from all diabetes related health

3

problems. The diabetes is affecting my eyesight adversely. Also diagnosed with diabetic neuropathy. This causes pain and swelling in my feet and ankles and damages small blood vessels and nerves. I have loss of feeling in my toes. I also have bad serious spinal injuries which are well documented by my private medical records dating back to mid 1980's. My back pain is severe at times but doctors here don't seem to care. I believe lack of treatment and medicine constitutes cruel and unusual punishment.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> The Department of Corrections started off by taking my shoes and custom orthotics which were prescribed by my Doctor. No explanation was given, they simply told me I could not have them. Shoes were taken at DRDC and orthotics were taken here at CSP. I can not put my disease on hold while I am here at CSP. The policy here on canteen also discriminates against diabetics because it denies access to any sugar-free products. I have not been provided training on a regular basis, or at all, for that matter. I did receive minimal papers on diabetes from nurse, only after I requested them but they are inadequate and do not cover facts a diabetic needs to know. Also the diet here has not been reviewed by Ms. Edwards for compliance with American Diabetes Association guidelines regarding diabetic meal management and appropriate changes to that diet have not been implemented as the settlement points out on page 17 of settlement.
> The medical care here is a joke. I have filed grievances about the lack of adequate medical care. I have had numerous problems with P.A. Wencl employee # 5594. Have documented his lies and incompetence. To make a long story shorter my blood sugar levels are still twice as high on average of what they should be. So the lack of a proper diet, and inadequate medical care and follow-up to get blood sugar under control are the two main ways I am being discriminated against now. Also the Pharmacy has run out of my diabetic meds (Glucovance) twice, for 2 days each time in the last month. Again, I can not put my diabetes on hold until it is convenient for the pharmacy to supply my medicines.

Claimant was provided a supplemental form to complete and file. In that supplemental form, Claimant related that he had concerns about the medical care and diet that he was provided by DOC. Claimant also noted that he had high cholesterol levels. Claimant stated, in part:

> I was transferred to Montezuma County (Cortez, Co.) the morning of 6-18-02 with no medication of any kind. I feel DOC should have sent meds with me, but they did not. It was 48 hours before I got any medication. I told the jail doctor (Dr. Bloink) at Montezuma Co. what meds I was on, although I didn't know all the dosages. At this point he guessed the dosage. DOC did not send any medical records at all.

Claimant also detailed in his supplemental form that he had been diagnosed with prostate cancer.

He underwent surgery. Claimant stated that his diagnosis was delayed because of incompetent medical care while in DOC.

At the hearing, Claimant testified that he was diagnosed with diabetes when he came into DOC custody at DRDC. Claimant stated that he was put on oral medications (Glucovance and Actos). He was on a sliding scale and received insulin as needed. He stated that he had not received appropriate medical care. He described the policy of charging inmates for medical visits. He had a couple of occasions when his medicines were not available and had to be ordered.

Claimant testified that there were no diabetic-friendly items on the canteen list when he first came into DOC custody. The situation is better now, except when in segregation. He stated that a number of correctional officers do not know the signs of diabetic distress.

On cross-examination, Claimant stated that he was not provided medications last year for a couple of days. He acknowledged that it may have been a computer glitch.

Dr. Paula Frantz, M.D. was called as an expert witness by Defendants. She testified that Claimant had failed to follow medical advice over the years that he has been in DOC custody. Claimant had refused certain medications and was non-compliant with the diabetic diet. Claimant did not take finger sticks on a regular basis.

Dr. Frantz testified further that Claimant refused to attend educational classes in 2007. She stated that there is some concern about preliminary signs of diabetic neuropathy. Claimant does not have problems with his feet to the point that he needs special shoes. He has received proper eye examinations.

Defendants offered several pages of exhibits. Included were refusals for medical care by Claimant. *Exhibit E*.

On rebuttal, Claimant testified that he does not consume all purchases that he makes from canteen. He had refused an EMG test because he was not familiar with it. He also stated that he did not understand the reasoning behind all of the medications that have been prescribed for him.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Claimant must show that on or before August 27, 2003 he had disability. Claimant must show further that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act that occurred on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** The evidence is clear and not contested that Claimant was diagnosed as having diabetes when he came into DOC custody at DRDC. In keeping with previous rulings, the Special Master finds that Claimant is a member of the class, as he was a diabetic on and before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Based upon the testimony provided by both sides, the answer to this question is yes. Other than health issues, there does not appear to have been any disqualification from programs, benefits, or services for other reasons, such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has complained both in writing and at the hearing that he has been denied proper medical care while in DOC custody. He alleges that his overall health has worsened due to this care.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The overwhelming number of concerns of Claimant relate to his medical care. The quality of that care must be examined in a different proceeding. It cannot be examined in a case brought under the ADA and Rehabilitation Act.

There are three areas in which Claimant has been the victim of discrimination prohibited by the ADA and Rehabilitation Act. First, Claimant testified that the canteen list did not have appropriate items for diabetes when he first came into DOC custody. The Special Master has ruled previously that diabetics were denied on and before August 27, 2003 equal opportunities to purchase items that were made for diabetics. Claimant acknowledged that this situation has improved dramatically and items for diabetics are now available from the canteen.

Second, Claimant testified that the pharmacy had run out of his diabetic medications. The latest incident was in 2007. The Special Master has ruled previously that the ADA and Rehabilitation Act are violated when a diabetic has to go for an extended period of time without his medications. Defendants tried to shift the blame to Claimant, but no evidence specifically was offered that these incidents were as a result of his actions or inaction.

Third, Claimant argued that he was denied proper treatment when he was shipped out to court in Montezuma County without his diabetic medicines and his records. The Special Master agrees, in part, with this argument. Claimant did go without his diabetic medications for a few days

6

and the doctor at the Montezuma County Jail had to make a guess as to the dosages of medications. An inmate leaving for court or transfer to another jurisdiction who is not diabetic does not have the worry that a diabetic does. Inmates being transferred have no control over their medical files and must rely upon DOC to transfer the records or to make other correctional officials aware of a diagnosis of diabetes. On his transfer on June 18, 2002, Claimant had to rely upon DOC medical staff to notify officials in Montezuma County of his medications and appropriate dosages. No evidence has been presented that such notification took place. No medications were sent with Claimant.

The evidence does reflect that Claimant has be selective in what treatment recommendations of DOC he will follow. Claimant's arguments are weakened by these decisions he has made. To the extent that Claimant has argued that other incidents of discrimination have occurred, these are either medical decisions which fall under *Fitzgerald* or have not been proven by a preponderance of the evidence.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant has established that he was fearful for his health when medications were not available to him. Claimant has established that he was subjected to emotional trauma because of this and is entitled to compensation in the amount of $250.00.

IT IS HEREBY ORDERED that the claim of Dennis M. Hicks has been proven, in part, as noted in this order and he is awarded damages in the amount of $250.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Dennis M. Hicks is denied and dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 18, 2008.**

SIGNED this 19th day of May, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master