IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96–N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-247
Category III
Claimant: George C. Knorr, #45154
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

THIS MATTER came before the Special Master for hearing on February 21, 2008 and May 1, 2008. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: George C. Knorr (Claimant); and Willow Arnold, attorney for Defendants.

Claimant presented the following witnesses during the course of the hearing: Sergeant Deanna Martin; Major Kenneth Wildenstein; Case Manager Ryan Long; Case Manager Richard Medina; Cathie Holst; Claimant; Brian Webster; and Claimant (rebuttal). Claimant offered into evidence Exhibits #1 through #14, and all were admitted. Defendants called as a witness Dr. Paula Frantz, M.D. Defendants offered into evidence Exhibits A thru FF, and all were admitted.

Each side presented closing arguments. Further argument will be waived. Claimant was granted additional time in which to submit documents, and he has submitted an affidavit and additional documents in support of his claim. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the

Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provided the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

III. DEFINITIONS
                        A. COVERED DISABILITIES
                        The persons covered by this Plan are individuals with mobility,
                        hearing, and vision impairments and inmates with diabetes.
                        B. QUALIFIED INMATE
                        Inmate with a permanent disability/impairment which substantially
                        limits his or her ability to perform a major life activity.
                        C. PERMANENT DISABILITY/IMPAIRMENT
                        A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on February 14, 1979. He was placed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant discharged his initial sentence on April 6, 1981.

Claimant returned to DOC custody on June 21, 1983. He returned to CTCF and then was placed on parole. This sentence was discharged on August 15, 1984. On July 16, 1986, Claimant was placed back into DOC custody and returned to CTCF. Claimant discharged this sentence on November 7, 1991.

On January 22, 1998, Claimant was recommitted to DOC on a new sentence. Claimant was placed into the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. He was transferred to a community placement and then granted parole. Claimant returned to custody after parole failed and was again sent to DRDC. He then was placed at the Arrowhead Correctional Facility (ACF) in Canon City, Colorado. On February 23, 1999, Claimant discharged that sentence.

On January 14, 2002, Claimant returned to DOC custody and was placed back at DRDC. He was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on February 11, 2002. He was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado on August 19, 2002. On August 9, 2004, Claimant was transferred to the Arkansas Valley Correctional facility (AVCF) in Crowley, Colorado. He remained there until he was transferred to SCF on March 2, 2006.

In his initial claim form, Claimant checked the boxes for mobility impairment and diabetes. Claimant stated, in part, as follows:

> Both feet have been broken and never properly set or casted. Dropped metatarsels, spurs on heals high arches, right ankle broken in high school, right knee broken while in service (USMC), along with asthma (can't breath). It hurts for me to walk any distance; I have problems standing, sitting, and can't sleep properly. I need corrective shoes which DOC has refused to supply, and corrective surgery on my feet. Due to the inability to exercise, I am some 95 pounds overweight and am at high risk for a heart attack. I also suffer from high-enial hernia which further denies me the ability to exercise and requires surgery to rectify. DOC refuses to provide the medical attention needed to let me live a normal life style and is in my opinion, an attempt to kill me, therefore, I am in fear of my life and would request relief other than monetary, to be placed in Federal custody, this being above and beyond any monetary award. I have become a diabetic through the improper foods and dietary schedule provided by DOC and I have never before suffered this ailment. There are no diabetics in my family nor has there ever been any. I now have to suffer with this disease and am at the constant risk of diabetic shock due to my placement and the improper diabetic diets served by this contract facility and no supplementary snacks. Considering my asthmatic condition, DOC has placed me in the worst possible environment. Constant dust, heat, and improper medical care. This facility is a death trap for anyone who suffers from any breathing problems or diabetes. Due to the diabetes I have lost my upper teeth and can no longer enjoy eating corn on the cob, raw carrots, celery, and a good steak. I have not been able to adjust to dentures nor does it seem likely in the future. I once was able to run, scuba dive, and work at normal physical jobs, (roofing, framing, dry wall, concrete) as I have been in construction since age 13. These jobs are no longer within my limited ability. I once was able to dance and now am unable to. The jobs which I have done in the past are high paying positions $25.00 per hour or more. I will never again be able to earn these wages nor live in the style I once lived.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated as follows:

> By not providing the proper medical treatment, surgery, and corrective devices (shoes), and placing me in a total dust bowl facility, I feel that the DOC has deliberately discriminated against me. I have a disease which I have to live with for

4

the rest of my life and I have to purchase supplementary foods just to survive and ward off diabetic shock, I have been forced to ascend stairs which hurt my legs and feet in total disregard of my needs. In past incarcerations, I have been restricted to bottom tiers and bottom bunking. I was on a state disability because of my back, legs, and feet along with my asthma when I was arrested. My condition has not improved nor will it improve any time in the future. I require lower tier housing and bottom bunk housing with adequate room to properly sit-up or without any bunks over my bunk, I have tried numerous times to acquire a medical cell assignment, but the doctors and nurses have refused to order this type of housing unit. I also have a chronic back condition which slips alignment at least 3-4 times a year without any help from me or my limited activities. This condition is a result of another active duty injury from 1968-69 and is well documented in my medical files....

Claimant presented a number of witnesses in support of his case. Sergeant Deanna Martin recalled an incident that occurred at SCF in March or April 2006. She is employed by DOC at SCF. She testified that she was aware that Claimant had slept on the floor of his cell. She stated that she did not remove a mattress from the cell. There is a prohibition of anyone sleeping on the floor of a cell. She also indicated that she had no access to the medical records of Claimant.

Major Kenneth Wildenstein was called as a witness by Claimant. He indicated that he did not remember any incident in April 2006 concerning a mattress. He did not recall moving a mattress from Claimant's cell.

Claimant called Ryan Long as a witness. He was the case manager for Claimant on two occasions at SCF. Case Manager (CM) Long was aware that Claimant had medical restrictions including bottom bunk and bottom tier. He recalled at one point that Claimant was trying to get medical shoes. CM Long contacted the associate warden at SCF on behalf of Claimant, but that person requested referral to medical for an evaluation. CM Long stated that Claimant related various concerns about the quality of medical care that he received. CM Long did not talk to medical staff. Claimant was transferred to a different unit at SCF and to a different case manager. On cross-examination, CM Long stated that Claimant did adequately in classes. CM Long was called as a rebuttal witness on May 1, 2008 and testified concerning efforts made to help Claimant obtain shoes.

Richard Medina was Claimant's case manager at the Arkansas Valley Correctional Facility (AVCF) in Ordway, Colorado. In response to a question, CM Medina stated that he never recalled Claimant ever being employed while at AVCF. He believed that Claimant had an M-4 code. He was aware that Claimant made application for jobs. He was not aware that Claimant ever had a single cell. On cross-examination, CM Medina testified that he was unaware of why Claimant had an M-4 code. He was aware that it was difficult for an inmate to find employment if he had an M-4 code. He observed Claimant walking without major problems. On rebuttal, CM Medina testified that an inmate who was unassigned (without a job or program) was not able to obtain a single cell at AVCF.

Claimant next called Cathie Holst as a witness. She holds the position of AIC at DOC headquarters. Ms. Holst testified that Claimant had been screened and found not to be disabled. On

5

cross-examination, Ms. Holst stated that Claimant did not need oxygen in light of his screening by medical staff. Ms. Holst stated that the accommodation screening did not find Claimant to be disabled, though he is diabetic.

Claimant testified on his own behalf. He stated that he was diagnosed as having diabetes in August 2002. He was not placed on any special diet but did begin to be provided snacks. He also received Diabeta and Glucophage as medicines to help stabilize his blood sugar levels. He had been unable able to function on several occasions due to low blood sugar levels.

Claimant had been injured while working for a small company. A trailer dropped on his right foot. Claimant was further injured while a member of the United States Marine Corps in 1968. After being injured in the service, Claimant was returned to the United States. He spent thirteen months in military hospitals. He began taking Coumadin as the result of pulmonary embolisms. The military rated Claimant as 19% disabled and then medically discharged him from the service in 1969. In 1970, Claimant broke a metatarsal bone in his foot. He continues to have problems moving on his own.

Claimant stated that he has had a bad back during the entire time his has been in DOC custody. Since 1991-1992, Claimant has basically had a lower tier, lower bunk restriction. He indicated that he felt he had been discriminated against because he had to move to a second tier and had to climb steps. Claimant was not able to do steps except in an extreme emergency. Claimant also stated that his asthma limits his ability to move. Claimant testified that he has had difficulty in getting any type of prison employment. He had tried to self-employ at the hobby shop but that did not work. He was denied a single cell. He was denied special shoes. He had a knee brace while at CCCF, but that was taken from him when he arrived at SCF. Claimant testified that he is willing to pay for orthotic shoes, but DOC will not allow him to do so. He received diabetic socks while at CCCF, but those were taken from him.

Claimant testified that he has no prospects for employment at SCF. He would like to regain the right to wear diabetic socks. Those had been provided at CCCF. Claimant stated that he would like to purchase a new knew brace. Claimant described an automobile accident that occurred in the early 1990's.

As part of his requested relief, Claimant stated that he should be transferred to a federal prison facility. He also requested tooth implants due to his loss of his natural teeth. He also stated that he needed surgery for his hernia repair, and that had been recommended at one time.

On cross-examination, Claimant testified that he does not exercise any more. He stated that he has stomach hernias and that they will pop out when he picks up a tray in the chow hall. He stated that he needed a handicapped shower, as he is not very stable and has difficulty keeping his balance. He related that the incident on the second tier happened at SCF. He indicated that he had developed vision problems and had not received his glasses since mid-2007.

Defendants presented Dr. Paula Frantz, M.D. as an expert witness. She testified that

Claimant's medical records reflected concern about blood sugar levels in January 1998. Claimant was treated with diet alone, and the condition was simply monitored. The full diagnosis of diabetes was made on May 21, 2003. The records further reflect some periods of low blood sugar levels. Claimant has historically refused to do finger sticks to check his blood sugar levels. Claimant did request not to be on a special diet. Dr. Frantz said that examinations reflected no foot neuropathy or vision problems related to the diabetes. Claimant has signed refusals for insulin. He also has had difficulty in complying with medication requirements.

Claimant has complained about lower back and foot problems. He was provided soft shoes in 2003-04. When the shoes wore out, they were not replaced. Evidence does exist of an old fracture, but it has healed. Claimant has been prescribed medicine for his asthma. Dr. Frantz stated that it does appear from the medical records that the asthma is being controlled. The problem with the hernia is not life threatening and has not required surgery.

Dr. Frantz testified that Claimant does not take his medications regularly. He sometime has held on to medications rather than taking them. He does have advanced arthritis. No recommendation has been made by medical staff concerning special footwear. There are no records warranting special shoes, only his complaints of pain. Claimant has an M-4 code due to his diabetes. All restrictions should be evaluated every year. Dr. Frantz believed that Claimant could do his activities of daily life (ADLs). Claimant is not an insulin dependent diabetic. Claimant should be taking his medicine, and he is not. Dr. Frantz described Claimant's blood sugar levels as being "profoundly out of control." Claimant did have bladder cancer recently which included surgery.

On cross-examination, Dr. Frantz said medical footwear is needed when a person has special problems with their feet. She did not see any reason why Claimant needed special footwear.

In rebuttal, Claimant testified that he had been discriminated against because of a recent fight among inmates. He had been ordered to lie flat on the ground but he could not. He was taken to segregation. He could not comply with the order to lie flat because of his physical condition.

Claimant called Brian Webster, PA as a rebuttal witness. Mr. Webster stated that he has treated Claimant at SCF over the past few years. Claimant did have an x-ray taken of his spine in 2002. Iy reflected mild arthritis. He did not recall any medical shoe issues or any need for a knee brace. Mr. Webster stated that Claimant abuses canteen, buying inappropriate items. He noted that glucose tablets are not provided at SCF to individual inmates, but each living unit has such tablets. On cross-examination, Claimant stated that Claimant is able to do his ADLs. He further stated that Claimant's blood sugar levels are out of control.

Dr. Frantz was called as a further rebuttal witness. She stated that Claimant has been receiving a kosher diet, and that such diets cannot be modified by medical staff. Claimant had not agreed to diet contracts in the past. At the present time, diabetic inmates are directed to make healthy choices from the regular food line.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. Each will be taken separately.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to be a member of the class, a claimant must have been in DOC custody on or before August 27, 2003 and had an impairment, as recognized by the Settlement Agreement (mobility impairment; hearing impairment; vision impairment; and diabetes). It was on that date that the Settlement Agreement was approved by Judge Nottingham. A claimant also must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date. Each claimed disability will be examined.

**Diabetes:** According to Dr. Frantz, Claimant was formally diagnosed as having diabetes on May 21, 2003. The evidence reflects that Claimant was diabetic on August 27, 2003 and remains so today. In addition, Judge Kane approved the stipulation of March 31, 2008 which included a provision that all diabetics will be designated as class members. *Order of April 4, 2008, p.5, §25.* Claimant is a member of the class as being a diabetic.

**Vision:** During the course of the hearing, Claimant made mention of vision problems. The evidence presented by both sides indicated that any vision issues arose after August 27, 2003. Those issues are outside the jurisdiction of the Special Masters. Claimant may bring a separate lawsuit as to vision issues under the ADA and Rehabilitation Act. Claimant may not pursue this claim as to any vision issues. Claimant is not part of the class as vision impaired.[2]

**Mobility Impairment:** Claimant's major complaints have related to a claim of a mobility impairment. Claimant has complained of lower back pain, as well as knee pain. Claimant has had lower tier, lower bunk restrictions during prior incarcerations. He has not been able to maintain such restrictions since returning to DOC custody in January 2002.

This is a close case as to mobility impairment. The Special Master finds that Claimant has a number of problems and conditions which make him mobility impaired. He will be given the benefit of the doubt. Claimant is a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** There was no evidence presented that indicated that Claimant was disqualified from DOC programs and services for reasons such as disciplinary convictions.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**

---

[2] DOC determined in 2007 that Claimant had a vision impairment that could be resolved through use of corrective lenses. Such determination does not affect the finding that no vision impairment existed on August 27, 2003.

It is not sufficient to simply prove that a disability existed on or before August 27, 2003. A claimant must establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before that date.

**Diabetes**: Claimant was diagnosed as being diabetic on May 21, 2003. Claimant must establish that he was discriminated against during the period that ended on August 27, 2003.

Claimant has alleged that the normal diet provided by DOC caused him to become diabetic. Claimant has provided no evidence to support this assertion, other than his own testimony. Such an assertion would have to be backed by scientific evidence, rather than simply personal testimony. Virtually all claimants have had to present their cases *pro se* and with no expert help. Claimant has not established that the diet caused him to be come diabetic.

Most of Claimant's concerns relate to medical care. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

As to diabetes, Claimant has alleged improper diets and medical care. It appears that these complaints relate to care provided after August 27, 2003. The Special Master has examined carefully all evidence presented by Claimant and finds that he has not established that he was discriminated against due to being diabetic on or before August 27, 2003.

**Mobility Impairment**: During the two days of hearings as to this claim, the Special Master continually reminded Claimant that the initial period of time in question ended on August 27, 2003. Absent a showing of discrimination having occurred on or before that date, there was and is no jurisdiction to consider anything after that date. Despite being so advised, Claimant continually dealt with matters that have only recently occurred.

Claimant discharged his immediate previous sentence on February 23, 1999. The Special Master has reviewed carefully all evidence that has been presented, and there is no evidence of any discriminatory action that allegedly occurred on or before February 1999. In fact, Claimant has indicated that he was able to obtain and maintain various restrictions during that sentence. The Special Master specifically finds that Claimant has failed to prove by a preponderance of the evidence that on or before February 23, 1999 he was the victim of discrimination prohibited by the ADA and Rehabilitation Act.

The question then is what has been established for the period of time from January 14, 2002 to August 27, 2003. Absent a showing of discrimination during that period of time, Claimant may not amend his claim to include anything that occurred since August 27, 2003. In his initial claim form, Claimant stated, in part, concerning discrimination as follows:

> By not providing the proper medical treatment, surgery, and corrective devices (shoes), and placing me in a total dust bowl facility, I feel that the DOC has deliberately discriminated against me.

A common theme throughout Claimant's case has been lack of proper medical care, including the failure to repair his hernias. The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The overwhelming number of concerns of Claimant relate to his medical care. The evidence is clear that Claimant has received medical care while in DOC custody. He objects to some of that care and argues that he should have additional care. The quality of that care must be examined in a different proceeding brought under the Eighth Amendment. It cannot be examined in a case brought under the ADA and Rehabilitation Act.

In addition, the evidence presented by Claimant indicates that other decisions, such as the refusal to provide special footwear, involved a medical judgment call. In order to refute such medical decisions, a claimant would have to present expert testimony to show that such judgment was out of line with accepted medical opinion. Claimant was not able to present such testimony.[3] In addition, Claimant testified that he had a knee brace and diabetic socks while at CCCF. Those were taken from him well after the date of August 27, 2003.

Claimant presented seven witnesses, in addition to his own testimony. Not one of those witnesses offered testimony concerning the period of time from January 2002 to August 27, 2003. In addition, not one of the witnesses offered testimony that was relevant or helpful in sorting out the issue of discrimination that may have occurred on or before August 27, 2003.

The Special Master has reviewed again all evidence presented and concludes that Claimant has not proven that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act for the period ending on August 27, 2003. Claimant has not established that he was treated differently from other, non-disabled inmates. As an example, Claimant made the allegation in his claim form that he was sent to CCCF and that such action was discriminatory. He described that facility as a "total dust bowl facility." The Special Master notes that other inmates were at CCCF and not all claimed to be disabled. Claimant has not shown that the transfer to CCCF was made in whole or part due to his claimed mobility disability. The claim process was intended to be simple

---

[3] The Remedial Plan provided no basis for any claimant to present expert testimony, unless the claimant hired that expert on his own. On the other hand, Defendants have routinely presented expert medical testimony, either in person or by affidavit, for almost three years. On matters concerning the propriety of health care provided by DOC, a claimant has almost no chance of prevailing due to lack of expert testimony.

and to allow presentation of evidence without a lot of evidentiary rules that might be applicable in a court setting. On the other hand, the process does require proof by a preponderance of the evidence that an act taken by DOC or its staff placed a claimant into a position where he was treated differently solely based upon a recognized disability.[4] An example would be the knowing placement of a wheelchair bound inmate on the third tier of a cell house that has no elevator. Claimant spent almost all of his time and energy concentrating on medical care that took place after August 27, 2003. Claimant has not proven this element of his claim.

There is no question that Claimant has significant health issues. He may well be correct in some of concerns about the care that he has received. Claimant may seek relief for everything that occurred after August 27, 2003 through use of a separate lawsuit. He cannot pursue amendment of his claim to encompass actions after August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of George Charles Knorr is denied, as he has failed to establish that he was the victim of discrimination actionable under the ADA and Rehabilitation Act on or before August 27, 2003 ; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 30, 2008.**

SIGNED this 13th day of June, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

---

[4] Claimant has complained about conditions that are outside of the Remedial Plan, including loss of teeth and asthma. The Remedial Plan limits the Special Masters to adjudication of claims relating solely to the four listed categories.