IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

     Plaintiffs,

-vs.-

BILL OWENS, et al.

     Defendants.

---

Claim Number 03-440
Category III
Claimant: Denise M. Harvey, #95650
Address of Claimant: LVCF, 1401 W. 17th Street, Pueblo, CO 81003

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 9, 2008. This hearing was held at the La Vista Correctional Facility (LVCF) in Pueblo, Colorado. Present were the following: Denise M. Harvey (Claimant), and Willow Arnold, attorney for Defendants.

Claimant called the following witnesses: Annie White; Claimant; Tessie King; Ethel White Djigma; and Helen Schroeder. Defendants called Dr. Thomas Fisher, M.D. as a witness. Defendants' Exhibits A through Z were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on April 22, 1998. Claimant was placed at the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. Claimant was transferred to the Denver Women's Correctional Facility (DWCF) on August 3, 1998. She remained at DWCF until she was granted parole on February 17, 1999.

Parole was revoked, and Claimant returned to DOC custody on August 21, 2000. Claimant was returned to DWCF. She was transferred to the Colorado Women's Correctional Facility (CWCF) on September 28, 2000. She remained at that facility until November 8, 2000 when she was transferred to the Pueblo Minimum Center (PMC). Claimant returned to CWCF on December 1, 2000. Claimant discharged her sentence on March 10, 2001.

Claimant returned to DOC custody on a new sentence on February 14, 2002. She was placed at DWCF. She was transferred to CWCF on August 25, 2002. She was returned to DWCF on September 11, 2002. Claimant remained at DWCF until granted placement in a community setting on March 16, 2005. She then was granted parole.

Parole was revoked, and Claimant returned to DOC custody on January 9, 2008. She was placed back at CWCF and then transferred on January 18, 2008 to LVCF.

In her initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, in her claim form as follows:

> Congestive heart failure. I'm very tired all the time for my energy level is very low. Even standing or sitting for long periods of time makes me very sleepy. For my blood doesn't flow correctly to my heart. As my left heart stem isn't pumping the blood flow like it should to my heart. And I must take aspirin daily to thin my blood to get it to flow also. For I have a very hard time sleeping. Or when sleeping I'm awakened by shortness of breath. Feet swell continuously, along with my ankles. If it's really windy or just brisk wind I have a hard time breathing which sometimes send me into a light asthma attack.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated:

> My 5th Amendment rights have been violated. My paperwork has been falsified in order for me to be at this facility. The doctor here is not a specialist of any kind. And just by him looking at me I was told by him there is nothing wrong with me.

Claimant was asked to describe the harm she has suffered. She responded, in part, as follows:

> General inconvenience - unable to climb to top bunks due to loss of air going up and down stairs exhausted from walking or easy work. Have to prop head up while lying down. Cuts off air. Damages due to loss of good time/earned time access to programs, or services that have not resulted in physical injury - unable to get into apprenticeship programs due to asthma, sleep apnea, and congestive heart failure. Also edema in ankles and feet swelling.

Claimant submitted documents for inclusion in the file. These documents included copies of medical records, grievances and kites. One of the documents submitted was a report of an echocardiogram done on her heart on November 7, 2002. The conclusion of the physician was as follows:

> Conclusions: Normal left ventricular function. Moderate tricuspid regurgitation with mild pulmonary hypertension. Consider contrast study or transesophageal echocardiogram if clinically indicated to evaluate the presence of any shunt.

Additional medical records submitted reflected that Claimant has high blood pressure and asthma. Other records reflect that Claimant does have edema with swelling in her ankles.

At the hearing, Claimant presented a number of witnesses. Annie Harvey testified by telephone. She is the mother of Claimant and testified that her daughter had been sick for an extended period of time. Ms. Harvey stated that Claimant has pulmonary disease, specifically COPD, and congestive heart failure. Claimant has been diagnosed with hypertension. She was aware that Claimant had been terminated from jobs while in DOC custody.

Helen Schroeder is in DOC custody at the High Plains Correctional Facility in Brush, Colorado. She has known Claimant for over ten years. She was aware that Claimant had many health problems, and she had observed the problems Claimant experienced with medications. She observed that Claimant's legs would swell up. She was aware that medications were withheld at some points in time. Claimant has had heart issues.

Tessie King is an inmate at LVCF. She has known Claimant for some period of time. She was aware that Claimant has had two heart surgeries.

Ethel White Djigma is also an inmate at LVCF. She testified that she had known Claimant for some time, including some time when neither was in custody. She testified that Claimant has heart problems and sleep apnea. She was concerned that Claimant has not been getting her medications.

Claimant testified at the hearing. Claimant testified that she has had significant heart problems for years. She also has asthma, hypertension and fluid buildup. She specifically stated that fluid will build up around her ankles. She has an inhaler for her asthma. She also takes aspirin each day to thin her blood. She described her problem with sleep apnea and indicated that she has a fear of dying in her sleep. She has to work at her own pace due to her medical conditions. She gets tired walking.

Claimant testified further that she cannot participate in sports or other activities due to her heart condition. Claimant was particularly incensed at Dr. Wermers who purportedly told her that there was nothing wrong with her. She stated that LVCF was the only place that she had trouble getting her medications.

On cross-examination, Claimant responded to a question by stating that her mobility impairment involved a number of conditions. She has to stop while walking due to fatigue. She stated that there are days when she can't go up or down any stairs. She also testified that she has had back problems since 2003. She has fallen on a couple of occasions.

On redirect examination, Claimant testified that she feels better when taking her medications. She is able to walk to the chow hall, but it is not very far from her cellhouse. She testified that she believed that her rights had been violated.

Dr. Thomas Fisher was called as an expert witness by Defendants. Dr. Fisher is a physician employed by DOC. He had reviewed the medical records of Claimant. He testified that Claimant has had a number of clinical examinations. Claimant does have a mild case of asthma, but it appears to

be well treated and stable. He testified that there was no evidence of congestive heart failure. He noted that Claimant has had testing done concerning the heart. EKG's have been administered and appeared normal. Examination of x-rays and echocardiograms reflected normal results.

Dr. Fisher testified further that there are no recent records which reflect heart problems. He did indicate that there may some sleep apnea present. That condition can be treated. On cross-examination, he stated that the medical records do not reflect any indication of high blood pressure. He stated further than DOC medical staff do not believe that Claimant needs medications.

On rebuttal, Claimant testified that there are a lot of inconsistencies in her medical records. Her feet hurt a lot, and they were hurting during the hearing. She believed that she need full testing to see what is the matter with her. She stated that she may look healthy, but that is not the case.

Defendants submitted a number of exhibits. An x-ray examination on October 15, 2002 reflected a normal heart size and negative pulmonary problems. *Exhibit O*. An x-ray done in January 2001 reflected a normal lower spine. *Exhibit P*. Chest x-rays taken in January 2005 reflected no abnormalities in the heart or chest. *Exhibit V*.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that se was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that she was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that she was disabled by her mobility impairment on or before August 27, 2003. If she so establishes that she was disabled on or before August 27, 2003, then she may amend her claim and raises issues that have occurred since that date up to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The evidence presented by both sides does not establish that Claimant was mobility impaired on or before August 27, 2003 to the point that her activities of daily life were impacted. Claimant

6

has health issues that did exist in 2003, but they do not affect the ability to carry on daily functions. In addition, the evidence is highly conflicting. Testing done does not reflect congestive heart failure. The evidence presented by Claimant reflected she does have some problems at the present time.

The Settlement Agreement places the burden of proof on Claimant. In this case, Claimant has not established that she was mobility impaired, as defined by the ADA and Rehabilitation Act, on or before August 27, 2003. Claimant thus may not request any consideration of issues after August 27, 2003 as part of the claim process.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant's evidence dealt primarily with the quality of health care provided by DOC medical staff. In the initial claim form, Claimant stated that her rights had been violated and that she was upset that Dr. Wermers believed nothing was wrong with her. Testimony from Claimant reflected a belief that she had not received proper medical care.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to her, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that she may have concerning her medical care.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The overwhelming number of concerns of Claimant relate to her medical care. The quality of that care must be examined in a different proceeding. It cannot be examined in a case brought under the ADA and Rehabilitation Act.

The evidence fails to reflect that any discriminatory act occurred in violation of the ADA and Rehabilitation Act on or before August 27, 2003. Claimant may pursue any claims of medical malpractice or violations of the Eighth Amendment through a separate lawsuit.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered in light of the negative answers to Question #1 and Question #3.

IT IS HEREBY ORDERED that the claim of Denise M. Harvey is denied, as she has failed

to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 30, 2008.**

SIGNED this 18th day of June, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master