IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES)(Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ. et al.

Plaintiffs

v.

BILLOWENS, et al.

Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN 3 0 2008

GREGORY C. LANGHAM
CLERK

---

Claim Number 03-377
Category III
Claimant: Ronald Cordova, #57350
Address: AVCF Unit 4, P.O.Box 1000, Crowley, Co 81034

---

OBJECTION TO TO MARCH 31, 2008 STIPULATION BY BOTH PARTY COUNSELS REGARDING STATUS OF COMPLIANCE BY COLORADO DEPARTMENT OF CORRECTIONS

---

COMES NOW, the Plaintiff, Ronald Cordova, pro se, respectfully "objects" to the "stipulations tenderred" by both Counsel's for the Plaintiffs and the Defendants, and as for gounds states the following:

1. Its obvious that counsels for the Plaintiffs do not have there best interest in mind when it comes to Remedial Plan of August 27, 2003, page 20 section C. Possession of Health Care Appliances. It is clear from that Remedial Plan, in pertinent part:

> "...No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entry into DOC system..."

2. According to this new Stipulation tenderred by both Plaintiff's and Defendants counsels. All prisoners or ADA class Plaintiff's must give up there eye glasses which they were allowed to keep according to August 27, 2003 Remedial Plan. Inmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses..."

3. There are about 50 % of inmates, ADA class members who have wire frame or personal glasses. Many of these prescribed personal glasses have prescribed treatments that DOC Medical will not provide when these glasses are replaced.

4. Fore Instance, the Plaintiff Ronald Cordova, has photogray or transitions lens, with Anti-glare protection from bright lights-including sun light and 100% protection from UVA AND UVB rays as prescribed treatment by family doctor. DOC Medical will not provide this prescribed treatment and have discouraged eye doctors to even recommed it, under contract with DOC.

5. None of the Montez et al attorneies have ever discussed this issue with ADA inmates regarding there prescribed eye glasses. How can they stipulate to some thing they have not discussed with ADA member under Montez et al. Its because they do not have are best interest at hand. And its obvious the Defendants counsel do not.

6. Plaintiff, also notices that there is several remedial plans mentioned in this stipulation. Why hasn't all these other remedial plans other then the August 27, 2003 been made available to all ADA inmates or class. Counsels for the Plaintiff's in Montez et al v. Bill Owens have never provided any up dated remedial plan or stipulation other then this March 31, 2008 plan. Other Plans mention are July 27 2007, August 29, 2006, August 27, 2005, these remedial plans are mention in the stipulation I received just recently 5/29/2008 from counsel Paulsen's office. I have also asked other ADA inmates regarding these other Plans and non have a copy.

7. Plaintiff also objects to any future decision with Number 26 of the March 31, 2008 Stipulation, because all DOC Medical staff and medical personel are bias and will not render an unbias opinion/diagnoses or treatment. This includes any decision by the AIC because Cathie Holst is paid by the State and there is a conflict of interest.

8. Plaintiff, contends that all ADA Class members under Montez et al, have been denied argument in their behalf against the Stipulation tenderred March 31, 2008 section D. (1) as to why inmates must give up there personal glasses. This is going cost thousands of dollars replacing all these glasses. There is "NO" justification. Nor is this a security and safety issue. As a class member under Montez et al I have been denied due Process to present any argument or evidence against this issue of replacing personal glasses. Or give up wire frame glasses.

WHEREFORE, Plaintiff, Ronald Cordova submitts this Motion in Objection against these Stipulation by both party counsel's. And preserving these issue for Appeal purposes in the 10th Circuit Court of Appeals.

Date June 17, 2008

Respectfully submitted

*Ronald Cordova*

Ronald Cordova, #57350 Pro se,
AVCF      Unit 4
P.O.Box 1000
Crowley, Co 81034

CERTIFICATE OF SERVICE

I, Ronald Cordova, pro se, certify that a true and correct Motion for <u>Objection to March 31, 2008 Stipulation tenderred by both party counsels Regarding status of compliance by CDOC with Montez et al.</u> " was mailed to all parties in this action by U.S. Mail, postage, prepaid on June /7, 2008 to the below parties.

Deputy James Quinn
Attorney General Office
1525 Sherman St, 5th Fl
Denver, Co 80203

Judge, John Kane
Byron White U.S. Courthouse
1823 Stout St.
Denver, Co 80294

June /7, 2008

Respectfully

*Ronald Cordova*
Ronald Cordova, #57350
AVCF        Unit 4
P.O.Box 1000
Crowley, Co 81034

*Exhibit M-1*

Re; Medical Appliances, Prescription Sunglasses/Transitional lens under D.O.C. Regulations A.R. 700-5 Medical/850-6 Personal Property

1. U.S. study says, more than 28 Million Americans have eye ailments that put them at risk for vision loss and blindness, researchers say warning that the numbers will surge as population ages, age 40 and over. Cataracts are the leading cause of blindness worldwide and No. 1 cause of poor vision in the United States. American adults estimated 20.5 million and expected to climb to 30.1 million in the next 20 years. Other causes of blindness and vision loss are Molecular Degeneration, Glaucoma, Diabetic Retinopathy, and Pterygiums. The figures published Monday in April 2004 Archives of Ophthalmology presented the most accurate estimates to date.
2. Prescription sunglasses/ transitional lenses are used for ultraviolet filtering and to protect eyes against harmful ultraviolet rays, in order to prevent eye disease (super) related to such exposures, such as solar retinitis and corneal dystrophies will only worsen if not properly protecting the eyes.
3. There appears to be "NO" rational basis for denying inmates proper protection for their eyes, nor does it effect any Legitimate Penological Interest by inmate making requests for accommodations, nor does it pose a risk to safety of security of the Institution-staff, or the Public, adversely it doesn't impact other Legitimate penological interest as deterring crime or maintaining inmate discipline.
4. By forcing or extorting inmates to purchase Clip-ons or inexpensive sunglasses from D.O.C. canteen as the only means, provides no medical protection for inmates eyes, this appears to be an act of retaliation for some apparent reason do to acts of negligence by staff, for D.O.C. to compensate for loss of moneys from recent sales of tobacco products and budget cuts.
5. Medical Appliances are not personal – property that falls under grandfather policies but are medical need for vision and protection from eye diseases 700-5 the only exception where medically diagnosed for special eye disease by an Ophthalmologist. A.R. 850 allows inmate (2) pair of prescription sunglasses if approved by security. Inmates that have already been allowed personal prescription sunglasses complied with D.O.C. Regs. To have personal prescription sunglasses/ Transitional Lenses.

Those not approved will be deemed contraband. Any medical appliances in the offenders possession NOT on the offenders inventory list will be submitted to Clinical services for evaluation (Offenders have the option of obtaining state issue sunglasses) when the D.O.C. gives inmates an option it allows them the power or right of choosing, "not mandatory."

6. 100-107 P.O.R. shall be composed in a designed format, "Mainly dealing with medical needs. P.O.R. shall not conflict with other A.V.C.F. Policies, review P.O.R's annual responsibility of offenders to read and comply with P.O.R's.

M-2

A.R. 850-4 v Responsibility 9B) Administrative Heads are Responsible for ensuring Compliance with this administrative regulation at their institute: Reprisals are prohibited, No offender shall be subjected to reprisals by offenders or Staff for use of the grievance process.

Inmate workers who already have medical appliance prescription sunglasses/Transitional lenses pass through check-points and shakedowns easily. And now a security issue comes up with clear eye glasses that are not permitted through checkpoint as well as clip-ons there is no guarantee that clip-on's and sunglasses on D.O.C. Canteen can't prevent exposing inmates to unnecessary potential harmful rays walking to and back from work each day, or chow, yard, and gym. The only guarantee is that the clip-on sunglasses and regular sunglasses are cheap, dark protection that provides no protection to the eyes.

In which Photo gray, anti-glare, anti-reflective protection made into glasses made with glass and prescribed by an Ophthalmologist.

Transitional lenses are made of Plastic and Polycarbonate and also prescribed by an Ophthalmologist for those who have eye stigmas from bright lights or sun light and other eye problems diagnosed by the eye doctor. (such as Ultraviolet protection).

<u>Polycarbonate lenses/Trilogy lenses</u>: can give 100% Ultraviolet Protection.

Polarized lens: improve your vision by reducing glare and eliminating the harmful effect of UV lights.

Canteen Sunglasses (all types) cannot give this protection, nor does the medical department prescribed sunglasses any kind of UV protection of harmful glare and bright light stigmas.