IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number 03-441
Category III
Claimant: Ethel White, #68138
Address of Claimant: LVCF, 1401 W. 17ᵗʰ Street, Pueblo, CO 81003

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

      THIS MATTER came before the Special Master for hearing on June 9, 2008. This hearing was held at the La Vista Correctional Facility (LVCF) in Pueblo, Colorado. Present were the following: Ethel White (Claimant), and Willow Arnold, attorney for Defendants.

      Claimant called the following witnesses: Lt. Rosanna Jordan; Brenda Mumford; Carmen Jackson; and Claimant. Plaintiffs Exhibits #1 through #9 were offered and admitted into evidence. Defendants called Dr. Thomas Fisher, M.D. as a witness. Defendants' Exhibits A through FF were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

      After final closing arguments, the case was taken under advisement. The case was left open until June 24, 2008 for Claimant to submit additional documents in support of her claim. Claimant has filed additional documents. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During

the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on June 9, 1992. She was placed at the Denver Reception and Diagnostic Center (DRDC). Claimant then was transferred to the Colorado Women's Correctional Facility (CWCF) in Canon City, Colorado. She returned to DRDC on September 18, 1992. Claimant went to a community corrections placement on November 2, 1992. Claimant returned to DRDC custody on May 13, 1993 and was placed back at CWCF. Claimant was granted parole on September 27, 1993. Her sentence was discharged on December 11, 1994.

Claimant returned to DOC custody on September 1, 1998. She was placed at DRDC and then transferred to DWCF. Claimant was granted parole on October 28, 1998. Claimant returned to DOC custody on August 23, 2001. She went back to DWCF and then was sent to the Pueblo Minimum Center (PMC) in Pueblo, Colorado. She discharged this sentence on March 10, 2003.

Claimant returned to DOC custody on July 31, 2006. She was placed initially at DWCF.

Claimant went into a community placement in August 2007, but that was not successful. Claimant was placed at LVCF on March 5, 2008.

In her initial claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, in her claim form as follows:

> I'm totally disabled due to acts that were taken by DWCF. My left foot is deformed - and I have to wear special shoes - because DWCF lost my medical shoes and yet to provide me with prescribed shoes that the doctor prescribed. They got approval (DWCF)(07) to fill the prescription of Rock-A-By shoes and they didn't do what they were approved by Central Office to do. I'm unable to stand long, run, wear heels, can not use my legs for normal exercise like everyone else. I walk with a cane now - will have to for the rest of my life.

In response to the question concerning discriminatory acts by the DOC and its staff, Claimant stated:

> First of all by placing me in a work facility and not giving me the proper medical for my medical situation. My pain my intestinal problems as well as the proper diet, that were prescribed to me by my primary care doctor at Davis Pavilion in Denver, CO. I'm to have a fiber diet - it is noted in my chart. "Dr. Jones" Denver, CO and not having proper equipment for myself to be able to exercise or get to class.

At the hearing, Claimant presented a number of witnesses. Carmen Jackson is an inmate at LVCF. She testified that she has known Claimant since her arrival at LVCF. She was aware of the pain that Claimant experiences. She has gone with Claimant to medical to obtain help. She was aware also that the medications that Claimant was prescribed were stopped.

Brenda Mumford testified that she presently is at LVCF in DOC custody. She has known Claimant since both were placed at DWCF. She was assigned as the aide for Claimant. She is aware of Claimant's limitations. She is aware that Claimant only leaves her cell for classes that she is taking. Ms. Mumford was also aware that the feet of Claimant are a "mess."

Lt. Rosanna Jordan is assigned by DOC to the LVCF. She knows Claimant spends most of her time in her cell. She does have problems with her feet.

Claimant testified that she first came into DOC custody in 1992. Prior to entering into custody, she suffered some injuries as the result of an automobile accident with a drunk driver. In late 2003, Claimant was living in Denver and was in an abusive relationship. In December 2003 she jumped out of a window and fell several stories. Claimant was seriously injured, but stated that she would have died had she remained in the apartment on the fourth floor. She received medical care through Denver Health Medical Center that extended for over a year.

Claimant testified that she is in chronic pain. Her feet were almost destroyed in the fall, and

she must wear special correctional shoes. Most of her back has been fused. She has lost control of her bladder and colon due to nerve damage in her lower spine. She now has a cane that has been provided for her by medical. She testified that she has been trying to get DOC to prescribe appropriate shoes for her, but with no luck to date.

Claimant testified that she has no bones left in the heels of her feet. It is nearly impossible for her to take a shower at LVCF because there is no shower seat. Claimant testified that she cannot walk very far and certainly not around the yard at LVCF. She has had some falls and near falls because of her instability.

On cross-examination, Claimant testified that prior to 2003 she had restrictions only for lifting and prolonged walking. She had slipped disks before the December 2003 fall, but was able to walk. Prior to the December 2003 fall, Claimant did not use a wheelchair or cane.

Defendants presented Dr. Thomas Fisher, M.D. as a witness. He testified that he had reviewed Claimant's medical records. He noted that Claimant had a prior automobile accident and some restrictions. There was no indication of degenerative disease.

Dr. Fisher testified that when Claimant returned to DOC custody in 2006 she had numerous problems. This was the result of the December 2003 fall. She had undergone several surgeries and had ulcers on the bottom of her feet. Claimant was referred to both an orthopedic physician and a podiatrist. Claimant was in a wheelchair for a period of time while in DOC custody, and now has a cane.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that she was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that she was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that she was disabled by her mobility impairment on or before August 27, 2003. If she so establishes that she was disabled on or before August 27, 2003, then she may amend her claim and raise incidents that have occurred since that date up to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the

general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The evidence is undisputed that Claimant had only minor problems prior to December 2003 when the several story fall occurred. The evidence presented by Claimant was that she had minor back pain, but was able to carry on her activities of daily living without any problems. Claimant had brief limitations for lifting and prolonged walking. By her own testimony, Claimant was not disabled on or before August 27, 2003. Claimant cannot amend her claim to include matters that occurred later in time.

The December 2003 fall changed Claimant's life forever. Defendants' argument that she is not presently disabled under the ADA and Rehabilitation Act strains all logic and credibility. Claimant has significant and permanent health issues that will be with her the rest of her life. The Special Master has no jurisdiction over incidents that post-date August 27, 2003. Claimant may pursue her own separate lawsuit, but she cannot pursue her claim for the reasons noted.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Since Question #1 has been answered in the negative, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** This question does not need to be answered in light of the negative answer to Question #1.

IT IS HEREBY ORDERED that the claim of Ethel White is denied, as she has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 30, 2008.**

SIGNED this 27th day of June, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master

6