IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-173
Category: III
Claimant: Wellman E. Gibson #74384
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

**AMENDED FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master on the claim of Claimant Wellman E. Gibson. This hearing was held at Sterling Correctional Facility (SCF) in Sterling, Colorado on February 13, 2006 before Richard C. Davidson, Special Master. Mr. Gibson appeared pro se. Defendants were represented by Aaron Atkinson, Esq. and Jennifer Berman, Esq. The Special Master issued the Final Order on June 22, 2007.

Defendants filed an <u>Objection To Final Order And Motion To Remand</u> with the Honorable Judge John L. Kane, Jr. After review, Judge Kane issued an Order of Remand on October 19, 2007. Following the Remand, Claimant filed numerous requests and motions. Defendants were directed to respond to these motions. Thereafter, the matter was set for a new hearing on May 12, 2008. This hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado before Richard C. Davidson, Special Master. Claimant again appeared pro se. Defendants were represented by Willow Arnold, Esq. The Special Master has again reviewed the entire file, the testimony from all witnesses, and all documents and other materials filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During

the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major

2

life activity.
B. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six
months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims
submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member
of the class?
2. Was the claimant otherwise qualified to participate in
the programs or receive the benefits or services offered by
DOC?
3. Was the claimant discriminated against by DOC because
of his or her disability? (e.g., were accommodations requested
and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is
an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master made the following Findings of Fact following the February 2006 hearing:

1. Claimant Wellman E. Gibson submitted a claim which was assigned claim number 03-173. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Gibson first entered CDOC custody in 1986. Claimant has been housed at AVCF, LCF, CCF, FCF, and SCF.

4. In 1993 or 1994, Claimant was diagnosed with degenerative disk disease, lumbar scoliosis and spondylosis. In 1999 he was diagnosed with herniated disks in his cervical spine. He underwent a multi-level fusion on his cervical spine in 2000. In 2004, an MRI exam showed additional degeneration in his lumbar spine and in his cervical spine. This results in pain causing him to have difficulty walking and standing. A follow up exam to determine the clinical correlation of the MRI

3

results concluded that his back pain does not correlate with the MRI findings. He also complains of pain in his hands. He claims he has been discriminated against by DOC by being denied jobs and resulting good time earned. He claims the medical staff has written that he is faking his problems.

5. Claimant also claims he has been discriminated against by having his books on tape taken by DOC. He claims that his hand difficulties with dexterity and his cataracts mandate his continuing in the books on tape program.

6. Claimant also claims that DOC has retaliated against him for bringing claims against them in this case.

## ADDITIONAL FINDINGS OF FACT

The Special Master makes these additional findings of fact following the May 12, 2008 hearing:

1. Claimant suffers from several medical problems. He has tendon and nerve damage in his left hand. He suffers from moderate stenosis in his cervical spine that may be caused by a herniated disc. His cervical spine, however, is stable. He suffers from mild degenerative joint disease in his knees and low back.

2. Claimant testified that his hands "hurt constantly." However, no medical explanation exists for this subjective complaint.

3. Claimant is able to ambulate without assistance even while carrying boxes and other items. He is able to climb and descend stairs without difficulty. A surveillance video shows him moving his possessions into a cell, climbing stairs and walking, with and without objects in his hands, without difficulty. He sometimes grasped the handrail and sometimes did not. He does not appear to have difficulty in gripping.

4. The visual evidence of Claimant walking and climbing stairs while carrying objects was not available at the earlier hearing. This new evidence is persuasive to the Special Master.

## III. AMENDED CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The

4

term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restrict an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, and vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. Neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. There is no question that Claimant Gibson suffers from chronic low back and neck pain. He has suffered with these problems for many years. The medical records and specifically the 2004 MRI confirm this and also confirm that his lower back condition is worsening. He indicated at the first hearing that he uses a cane for mobility. However, the cane was found to be not necessary prior to the second hearing and was taken by CDOC. The records also demonstrate that he is suffering from deterioration in his cervical spine. This condition causes him to have pain and weakness in his hands. The question is whether these conditions are sufficient to render him mobility disabled within the narrow limitations of the Montez case. Based upon the records provided to the Special Master and the testimony offered at both hearings, and especially the surveillance videos, the Special Master finds and concludes that Claimant Gibson is <u>NOT</u> a mobility disabled person under the terms of the remedial plan. The evidence shows that Claimant is able to walk and climb stairs without difficulty. He is able to do so even while holding a box or other items. He has failed to demonstrate that he has difficulty in walking or that he needs a cane. He is <u>able</u> to climb stairs safely. Claimant claims that he finds stairs unsafe because of the increasing difficulties he has with his hands. He says he is unable to grip and as a result is unable to insure his safety by using hand rails. However,

5

the evidence fails to support this. Therefore, Claimant has failed to demonstrate that his chronic back pain, coupled with his other medical problems, constitutes a substantial limitation on the major life activity of walking. Consequently he fails to meet the requirements to be mobility disabled.

7. The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King,* 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by the DOC.

8. The key issue is whether Claimant was discriminated against by DOC because of his medical problems. Claimant Gibson has stated that he was discriminated against by being denied jobs, by being fired from jobs, from being denied needed medical equipment and from being denied lower bunk/lower tier restrictions. The records, however, demonstrate that he was allowed to engage in activities as tolerated. He held some jobs and although he was fired from one of them, this does not appear to have been related to his medical problems. He was given restrictions for lower bunk/lower tier in recognition of his medical problems and the difficulties with his hands. His greatest ongoing complaint of discrimination seems to be that he was deprived of the privilege of continuing to participate in the books on tape program. He was allowed to participate in the program but has had the tapes and the machine taken from him without explanation. CDOC has policies to determine whether an inmate qualifies for the books on tape program. Those policies must be followed. Based upon the evidence presented the Special Master is unable to find discrimination against Claimant because of any medical problems.

9. The record is full of instances where Claimant has disagreed with DOC about policies or the way he has been treated. He claims he has been moved, been put on Administrative Segregation and has had items taken from him for no reason. It is not clear that these incidents amount to more than the enforcement of CDOC rules or policies. Again, no discrimination has been shown based upon his medical condition.

10. The Special Master concludes that Claimant Wellman Gibson is not disabled. While he does suffer from some medical problems, these do not rise to the level of constituting substantial limitations on any daily life activity.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Amended Findings of Fact and Conclusions of Law, Judgment will be entered in favor of Defendant and against Claimant dismissing the claims brought by Claimant; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before September 30, 2008** with the Clerk of the United States District Court at the following address:

                901 19th Street
                Denver, CO 80294.

SIGNED this 16th day of July, 2008.

                BY THE COURT:

                /s/ Richard C. Davidson
                _____
                Richard C. Davidson,
                Special Master