IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

_____

Claim Number X-271
Category X
Claimant: Daniel Thiebold, #131076
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

## ORDER OF SPECIAL MASTER
_____

THIS MATTER comes before the Special Master on the documents filed by Daniel Thiebold (Claimant) with the Court. Included in those documents are the following: a Functional Ability Questionnaire; ADA Process form; cover letter (doc. #3424); letter from Claimant that was received by the Special Masters on June 10, 2008; and a second letter and attachments received by the Special Masters on June 21, 2008.

When Claimant submitted the cover letter and Functional Ability Questionnaire, an order was issued to Claimant. In that order the Special Master indicated that no claim had been filed by Claimant. He responded with a letter indicating that he came into DOC custody in April 2006.

In his letters to the Court and Special Masters, Claimant has indicated that he must use a wheelchair. Claimant also has alleged that he is disabled and has been subjected to various acts of discrimination prohibited by the ADA and Rehabilitation Act.

On the face of his letters, Claimant would appear disabled under the Remedial Plan. Claimant has acknowledged that he was not in DOC custody on or before August 27, 2003. He has not filed a claim form with the Special Masters.

Claimant's documents raise a number of issues. There is some question as to what, if any, action may be taken on the documents submitted by Claimant. The questions become one of

jurisdiction by the Court over this *pro se* pleading.

**Status of the Class**: The Remedial Plan was approved on August 27, 2003. The Remedial Plan does not specifically define the class, but presumably the class was set on the date of approval. That being the case, Claimant is not a member of the class.

The question is whether the Remedial Plan contemplated a different date for establishing the class or whether two subsequent stipulations have modified and changed the Remedial Plan. The first stipulation was presented to Judge Kane on August 29, 2006 and was approved on the same day. This stipulation includes a waiver of medical co-pays for diabetics who were in the DOC system "on July 26, 2006 until at least twelve calendar days after Judge Kane rules on the co-pay issue, unless the Court determines that the CDOC may not reinstitute the co-pays." *Amended Stipulation, §B(2)*. The stipulation further provided for equality of pay for prison jobs.

The second stipulation was signed on March 31, 2008 and approved by Judge Kane on April 4, 2008. This stipulation provides, in part, as follows:

> Inmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses. *P. 2, §1.*
> CDOC will provide long-lasting batteries for hearing aids. *P.2, §2.*
> CDOC will add American Sign Language classes as a program offered by CDOC to inmates identified as hearing impaired or disabled. *P.2, §5.*
> All repairs needed to auxiliary aides shall be completed within sixty (60) days of the day that the inmate reports the need for repair. *P.3, §9.*
> The TTY machines shall be made available to inmates who require such an accommodation in the same manner the CIPS telephones are available to non-hearing impaired/disabled inmates. *P. 3, §11.*
> CDOC shall immediately provide vibrating watches to all inmates with hearing impairments or disabilities. *P.4, §18.*
> All inmates with diabetes will be designated as "class members" (rather than IMP or D) and the language about whether they are disabled or not will be removed from Accommodation Resolution forms. *P.5, §25.*

The language of this stipulation appears to be applicable to all DOC inmates, not just those in custody on or before August 27, 2003.

This is a class action and has been so designated for years. As such, counsel for the class speak for the class. *Johnson v. City of Tulsa, Oklahoma*, 489 F.3d 1089 (10th Cir. 2007)("[t]he class action can be unmanageable if the class cannot speak with one voice."). The question then is fairly basic: is Claimant a member of the class? If he is, then *McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991) would apply.

The situation in *McNeil* was similar to that in this case. There was a class action brought

2

against the Oklahoma prison system. The class was certified and counsel appointed to represent the class. The case ultimately resolved. A problem then arose with *pro se* filings.

> Because there is a potentially recurring problem of individual members of the class seeking to litigate issues within the class action, respondent and the district court must have a procedure for handling pro se filings. Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action. To permit that would allow interference with the ongoing class action. (cit. omitted). Claims for equitable relief must be made through the class representative until the class action is over or the consent decree is modified.

*Id. at 1165-66*. The court of appeals did require acceptance of all documents, but with the understanding that any document would either be dismissed or the court would " either directly send the papers to class counsel or advise the pro se litigant that he must send the papers to class counsel." *Id. at 1166*.

The duty is initially upon class counsel to review the documents.

> If, after the pro se papers are sent to class counsel, he refuses to examine the papers or inappropriately determines they have no merit, the pro se prisoner may file a separate action either seeking to intervene in *Battle* (the on-going class action) or challenging the adequacy of the representation by class counsel.

*Id. at 1166.* The clear import of *McNeil* is that individually filed pleadings or documents are not appropriate when the issues raised by the *pro se* pleadings relate to compliance with a court order, consent decree, or settlement.

Assuming that Claimant is a member of the class, then *McNeil* requires that he submit his documents to counsel for the class. Claimant has not done that. Under *McNeil*, class counsel have the duty to review the *pro se* pleadings and then determine what, if any, action should be taken on behalf of that inmate.

In light of the decision in *McNeil*, the Special Master will forward the pleadings of Claimant to counsel for the class. Assuming Claimant is a class member, no further action can be taken on his pleadings, as he is represented by counsel.

**Legal Stranger to the Class**: Claimant came into DOC custody long after the date of approval of the Remedial Plan in August 2003. If he is not a member of the class, then he would appear not to be a party to this case.

The Remedial Plan, and presumably both stipulations, were intended to make life easier for all inmates with disabilities. This would include the lives of individuals, such as Claimant, who arrived in DOC long after the approval of the Remedial Plan. The question, though, is whether the

Remedial Plan and the subsequent stipulations may be enforced through this action by an inmate who is not a member of the class. The answer is no. If Claimant is not a member of the class, then he is a third-party beneficiary of the Remedial Plan and the two stipulations. Claimant's remedy is to commence a separate lawsuit as an intended beneficiary. *Johnson v. City of Tulsa, Oklahoma, supra at 1110-11.*

      IT IS HEREBY ORDERED that all pleadings of Claimant shall be forwarded to counsel for the class for such action as deemed appropriate; and

      IT IS HEREBY ORDERED that no further action will be taken by the Court on the pleadings of Claimant for the reasons noted.

      SIGNED this 23rd day of July, 2008.

      BY THE COURT:

      */s/ Richard M. Borchers*

      _____
      Richard M. Borchers
      Special Master