IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-416
Category III
Claimant: Larry D. Sims, #49971
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO. 80826

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Larry D. Sims. The Special Master has reviewed the claim and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual

1

inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
>
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

2

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Sims submitted a claim on April 18, 2007, which was assigned claim number 03-416. The claim is premised on an alleged permanent mobility disability due to epilepsy.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Sims initially entered CDOC custody in 1983. It appears that he was paroled in 1989, re-entered CDOC custody in 1991, and has remained in CDOC custody since that time. During his CDOC custody, he has been housed at various facilities, including Colorado Territorial Correctional Facility, Skyline Correctional Facility, Freemont Correctional Facility, Arkansas Valley Correctional Facility, Buena Vista Correctional Facility, Four Mile Correctional Facility, and Limon Correctional Facility.

4. Claimant has suffered from epilepsy since he was two years old. He is taking medication to control his epilepsy. He testified that on infrequent occasions he has blacked out while walking. He suffers from headaches and problems with bowel control. Claimant Sims indicated that for a period of time while he was housed at the Colorado Territorial Correctional Facility, he used a cane to ambulate because his foot would turn

3

in, but he no longer utilizes it. He has been provided with a bottom bunk-bottom tier restriction by CDOC.

5. Although Claimant does not use the gym and does not walk in the yard, he acknowledges that he can walk and that he does walk around the facility in which he is housed without assistive devices. Claimant's ability to walk was confirmed by various witnesses, including Lt. Commander Trujillo, Lt. Hubbard, and Nurse Practitioner Walker. Ms. Walker testified that she sees Mr. Sims in the chronic care clinic for his seizure disorder, and that although he has had occasional seizures, in general his epilepsy is well managed.

6. Although Claimant currently is not assigned to a job, he testified that his unassigned status is not because of his epilepsy. He has worked various jobs in the past, including food service and law library positions. Claimant testified that the only restriction on work resulting from his seizure disorder is that he cannot operate heavy equipment.

7. Claimant Sims asserts that CDOC has discriminated against him because of his epilepsy because there is only one handicapped shower in B pod. However, Sims testified that he lives in A pod and will not go to B pod because he is concerned about gang members who are housed there. Presumably, there are no handicapped showers in A pod. He also complains about the lack of sufficient handicapped seating in the chow hall.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

4

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

Clearly, Claimant's epilepsy constitutes an impairment. However, the fact that he is impaired, in itself, does not establish that he has a "disability," within the meaning of the ADA and/or the Rehabilitation Act. *See E.E.O.C. v. Sara Lee* Corp., 237 F.3d 349, 352-53 (4th Cir. 2001)(epilepsy is not a disability unless it substantially limits the ability to engage in major life activities). *See also Brunke v. Goodyear Tire & Rubber* Co., 344 F.3d 819, 820-21 (8th Cir. 2003); *Landry v. United Scaffolding, Inc.*, 337 F. Supp. 2d 808, 815-16 (M.D. La. 2004). The Special Master finds and concludes that Claimant has failed to meet his burden of proving by a preponderance of the evidence that his epilepsy constitutes a permanent disability under the ADA and/or the Rehabilitation Act. Claimant has offered no evidence demonstrating that his seizure disorder substantially limits his ability to engage in any major life activity. The Special Master finds and concludes that Claimant's epilepsy does not render him "[s]ignificantly restricted as to the condition, manner or duration" under which he can perform a major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). Although Claimant Sims asserts that his seizure disorder constitutes a mobility disability, the uncontroverted evidence is that he can ambulate well without the need for assistive devices. It is also uncontroverted that he can and has worked at various jobs in the facilities where he has been housed. Although Claimant is currently unassigned, he acknowledged that this was because he had not received jobs that he had requested, and that his unassigned status was unrelated to his seizure disorder.

Because Claimant Sims does not suffer from a mobility disability under the ADA and/or the Rehabilitation Act, his *Montez* Claim must be denied.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Defendants and against Claimant dismissing Claimant Sims' *Montez* Claim with prejudice; and

5

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before May 5, 2008** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 23rd day of January, 2008.

> BY THE COURT:
>
> /s/ Bruce Pringle
> _____
> Bruce D. Pringle,
> Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 23rd day of January, 2008 to the following:

Mr. Larry D. Sims
# 49971
LCF
49030 State Highway 71
Limon, CO 80826

Mr. James Quinn
Mr. Jess Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

Susan L. Carter