IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

___

Claim Number 03-448
Category III
Claimant: George L. Marin, #40375
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

___

## FINAL ORDER OF SPECIAL MASTER

___

THIS MATTER came before the Special Master for hearing on October 20, 2008. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: George L. Marin (Claimant) and Willow Arnold, attorney for Defendants.

Claimant called himself as a witness. Defendants called Dr. Thomas Fisher, M.D. as a witness. Defendants' Exhibits A through MM were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on January 24, 1977.[2] Claimant was placed initially at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant was discharged from that sentence on March 4, 1980.

Claimant returned to DOC custody on December 29, 1981. He was placed into the diagnostic unit at CTCF. He then was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado. Claimant remained at CCF until October 5, 1990 when he was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant remained at BVCF until he was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on July 6, 1999.

---

[2] Claimant testified that he was incarcerated at Buena Vista in the 1960's and early 1970's. For purposes of this order, that period of time is not relevant to this claim. It also is probable that the facility was then a reformatory that was under the jurisdiction of the Colorado Department of Institutions.

Claimant was placed back at CCF on February 8, 2000. On January 28, 2003, Claimant was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He remained at LCF until April 3, 2003 when he was transferred to SCF. He has remained at SCF since that transfer.

In his claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, in his claim form as follows:

> I have severe pain, excessive walking discomfort & problems standing. My spine has curvature from bone deterioration. Pain in legs & bending problems. This has caused headaches swelling of lower back & legs. This problem has been going on now for 28 years. Have tried minimal treatment, CDOC refuses to address in a professional form. Feet go to sleep & extreme nerve pain, side of feet have tenderness walking.

When asked about alleged discrimination by DOC and its staff, Claimant stated as follows in his claim form:

> I've filed numerous kites over the years. CDOC P.A.'s refuse to address my issues, claiming I'm just getting old and its natural.
> MRI done & showed L4-L5-S1 damage to discs, milogram done & scope showed blockage & nerve pinching, from ruptured disc & misalignment of spine.
> CDOC Sterling Dr. Webster (PA) continues to ignore & pass my medical off as old age. "Webster is a PA only, not doctor, but he is addressed as doctor by his staff at Sterling."

Claimant filed a supplemental form for mobility impairment. Claimant stated, in part, as follows:

> I have sharp pain down by leg from L4-L5-S1 damage to back. It affects my standing, walking & sleeping by producing extreme pain at times that causes crippling & bladder control issues of urinating my pants or bed.

When asked about how the mobility problems affect his life, Claimant stated, in part:

> Having to walk over 1 mile a day to eat in chow hall & being housed in a cell top bunk, has endangered my quality of life. I fall off bunk bed top from missing the ladder I can't see or feel from numb legs & feet. I slam into steel tables & locker boxes, steel stool that these cells have in place. The cells at Sterling are not designed for handicapped or disabled prisoners.

Attached to Claimant's supplemental form are several pages of medical records. A report from April 19, 1995 reflects that x-rays were taken of Claimant's back and that there was narrowing of the joint space at L3-4, with osteophytic projections. Claimant was diagnosed as having severe degenerative disc disease at L3-4. Additional records reflected lower back pain that had become chronic.

4

At the hearing, Claimant testified that he was hurt in a diving board accident when he was a child. He stated that he has been incarcerated most of his life. He has had problems with his back for years and has been bedridden at times because of his back. He indicated that he has fallen while in DOC custody, including falling from top bunks.

Claimant stated that he had been advised that he has degenerative disk disease (DDD). Since 1995, Claimant has been trying to obtain lower bunk and lower tier restrictions. Claimant stated that his left leg is sometimes numb and he cannot feel if his feet are on a ladder rung. He indicated that he has been denied accommodations for his back and leg problems. He has asked for medicine to cope with the pain but has been advised that he should buy over-the-counter pain relievers from the canteen. Claimant is fifty-nine years old. Claimant testified that he experiences a lot of pain each day and night.

On cross-examination, Claimant testified that he had not paid much attention to the *Montez* case and filed a claim at the suggestion of a friend. He also delayed filing because he was afraid to use a wheelchair or cane.

Claimant stated that he is fearful that he will not be able to walk. He also has trouble with his right shoulder. He is employed as a porter and performs his duties each day, despite the pain that he is suffering. He has received good job ratings from staff.

On re-direct examination, Claimant stated that he is only seeking lower tier, lower bottom restrictions. He would like something for the pain that he is experiencing.

Defendants called Dr. Thomas Fisher, M.D. as an expert witness. Dr. Fisher testified that Claimant does have DDD at L3-4. Claimant had been seen by an orthopedic specialist. Claimant does have back problems, but no specialist has recommended surgery. Dr. Fisher indicated that surgery would not necessarily relieve the pain that Claimant is experiencing. On cross-examination, Dr. Fisher stated that there is no indication from the medical records of Claimant and the diagnostic testing that was done that there is any scoliosis. DDD is not a stagnant disease, and Claimant cannot expect his condition to improve on its own.

In rebuttal, Claimant testified that he felt that his condition was affecting his ability to walk. He would like to have additional testing done, particularly with another MRI, to determine his present status. Claimant stated that he does not want to be bedridden or be relegated to a wheelchair because his legs can no longer function.

Defendants submitted a number of pages of Claimant's medical records. Exhibit DD is a report by a radiologist on x-rays that were taken of Claimant on June 22, 2000. The report states, in part:

> The L3-4 disc space is markedly narrowed with vacuum disc phenomenon, end plate sclerosis, and moderately large osteophytes. Other disc spaces are fairly well preserved. There is mild right lateral subluxation of L3 relative to L4.

Diagnosis: Advanced degenerative disc disease at L3-4.

An EMG was done on February 8, 2004 which reflected normal results.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his mobility impairment on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Mobility Impairment**: Claimant testified that he has had back problems since initially coming into DOC custody. He has struggled with the pain that he experiences. The medical records submitted by both sides reflect that there is DDD and arthritis in the back. There is no question that Claimant has back problems and that such problems have affected his lower extremities.

The ADA requires that there be "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Claimant seems to be concerned with his ability to walk. Walking is a major life activity. The evidence presented by Claimant reflects that his ability to walk is affected at times by his back problems. Though Claimant is in pain on a continuous basis, the ability to walk occurs on an intermittent basis.

This is a close case. The Special Master finds that Claimant does have significant problems in his back and that he is in pain. The evidence does not reflect that Claimant was disabled, as defined by the ADA, on or before August 27, 2003. His ability to carry on daily activities, including walking, was affected on a limited basis on or before that date. That is insufficient to meet the test of the ADA and Rehabilitation Act.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** The Special Master need not reach this question in light of the answer to Question #1. A couple of comments are worth elaborating.

First, many of Claimant's concerns relate to the medical care he has received over the years. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. The quality of medical care could not be resolved through this claim.

Second, Claimant's only request at the hearing was to receive lower tier and lower bunk restrictions. He requested no other relief and did not request any monetary damages. The medical evidence submitted by Defendants reflects that Claimant has severe DDD and problems associated with that condition. Claimant is in pain. His request for lower bunk and lower tier restrictions is not unwarranted. His condition will continue to deteriorate, and the request is appropriate. Plaintiff will meet the threshold for the ADA at a point in time that is not far off. Another fall from a top bunk could lead to problems that could be avoided by the requested accommodations. It will cost Defendants nothing to provide him the restrictions that he has requested. It could cost Defendants thousands of dollars in medical care if he falls. It makes little sense not to provide the requested accommodations to Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answers to Questions #1 and #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of George L. Marin is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 and has failed to establish that he was disabled under the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 14, 2009.**

SIGNED this 7th of November, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master