IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil action No. 92-CV-00870-EWN-OES

JESSE MONTEZ et. al.

Plaintiffs,

v.

BILL OWENS, et al.

Defendants.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 1 6 2008

GREGORY C. LANGHAM
CLERK

PLAINTIFF'S RESPONSE TO THE CLASS COUNSEL'S
AND THE DEFENDANTS COUNSEL RESPONSE ON ABOUT
OCTOBER 14, 2008

   Plaintiff, Ronald Cordova, Pro se, submits this Response to the Order of
Special Master, dated November 3, 2008 in regard to Class Counsel's and Defend-
ants response to Plaintiff's Motion and or, Letter dated on about June 20, 2008.

   Plaintiff, Ronald Cordova, Pro se, will respond to Montez et. al., counsel
first and then to Attorney General response. And make a final argument as to both
Responses.

   1. Paragraph 1., of Class counsel's Response. Give wrong D.O.C. Number for
Plaintiff, Cordova. My D.O.C. Number is #57350. I don't want to be confused with
any other inmate or his action.

Plaintiff, filed a Motion and letter on about June 20, 2008 to Judge Kane, accor-
ding to Section XXXVI Miscellaneous Provisions, A. Resolution of Disputes., of the
August 27, 2003 Remedial Plan.

Also, the reason to bring to Judge Kane's attention issues not being addressed by
Class Counsel. I have wrote to Montez et al attornies and never received any an-
swer back. ragarding problems according to the ADA Or Rehabilitation Act. I have
had answer to letters regarding the problems I have had with Medical and the Gri-
evance system. Paula Greisen did write back on a few of the letters, only to tell
she was not aware I was having so many problems with Medical and other ADA issues.
Ms. Greisen told me she could not help me because she represented the Class, and
not me as a individual. I feel that deny's all class members to full discovery to
Production of Documents and Intorrogatories pursuant to Federal court Rules. And
there is several reason for this, an example:"most inmates know nothing of the
Fed Rules and know nothing about the Law. That is why we depend on the Attornies
who are suppose to represent us in a class law suit.

Several Inmates I know, have written letters to the Law firm of King & Greisen
and have never received back an answer. I can prove this if the court wants the
proof. I can get signatures from inmates at this Facility if necessary - to sign
a petition. I as well as other ADA Class members under Montez et. al., do not be-
lieve Class Counsel have had Montez class best interest at hand. You can ask any
member for ther personal opinion.

As for my response I strongly objected to the Stipulation of April 4, 2008 because its in conflict with the August 27, 2003 Remedial Plan regarding "personal eye glasses. Because it effects every inmate or prisoner in D.O.C. in General. The Stipulation agreed upon by both Party counsels generally speaks towards all inmates rather then just ADA Class members. And it involves personal property of every inmate who has "prescribed eye glasses".

Whether an inmate has a ADA Disability or not his or her personal eye glasses are the subject of the Stipulation. How and why did this become in General an Issue with the American Disability Act, and or, Rehabilitation Act. According to page 3 of Class Counsel Response, section or paragraph 6 and 7 bring up the issued of eye glasses, and that DOC presented information on the Security and Safety issues created by wire or metal framed glasses.

Why was this issue not brought up in any of the "Meeting with ADA inmates and Class counsel. I don't recall this issue being mention at any meeting, nor did any of the inmates who signed the June 20, 2008 letter to Judge Kane. And there is most likely hundreds more in DOC who do not know of this issue and Plaintiff's Motion to Judge Kane. I am sure there are hundreds of other inmates at other Facilitys that would like to have a say so in this matter. Because I believe its property issue under Due Process and equal Protection of both U.S. and State Constitutions. Also, ADA Members should know what is Class Counsel's duty to all class members.

Page 29 of August 27, 2003, I believe sixth paragraph states:

> Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damaged claims. Class counsel does not have an obligation to represent and individual with respect to their individual damages claim.

What is the Obligation of Class Counsel's, or its duty. What protection do class inmates have to full and complete hearings, discovery, production of documents. If inmates letters and issues are not addressed. There is certainly something wrong going on regarding this Class Action law suit. If Class counsel refused to address issues from letters from class members, what are they to do.

Also, while I am on the subject of class counsel. I like to bring to the Court's attention about an incident that happened at a meeting hear at Arkansas Valley Correctional Facility. At this meeting, and I believe it was attorney Edward Ramey. If he is an attorney. Did a bad thing, he was so caught up in himself and sounded like he was not really concerned with what the ADA members had to say. He became angry, and said: "he could inform the Judge, to have us all removed from this facility because it was not actually a designated ADA Facility."

Most everyone took this as a threat, and wanted to leave the meeting. It got real hot in that meeting that day. And I can't remember the day exactly. But I could find out. The point I am making Class counsel Ed Ramey was out of line by making that threat about removing inmates from AVCF. This happen and could be proven. Records of when Class counsel came to AVCF for meetings prior to April 4, 2008 Stipulation. I know Ms. Paula Greisen was hear and several other staff or attornies from King & Greisen LLP was hear. When this took place and was totally uncalled for.

---

Getting back to the property issue of personal eye glasses and the security and safety issue. Before any new rule or regulation or policy can be effective. There is certain procedures to be followed.

Whether the issue regarding wire frame glasses can be replaced by "Stipulation of Both counsels in the Montez et al. I believe there are certain procedures that need to be followed according to TURNER V. SAFLEY, 107 SCt. 2254, 482 US 78 (1987). certain standards must be considered. Before an Regulation or new policy can be effective or changed, and I believe this would include a new stipulation that is going to effect all inmates rights whether they are part of Montez et al or not. And the reason why I say this is because the stupulation refer in general to all inmates with wire frame glasses in the stipulation. Not just the class members.

That is why I believe the Turner test is required here, since safety and security of the prison was brought up by DOC. According to page 3 of Class counsel's Response (paragraph 7). And is also a property issue of prisoners. That is why the four questions of Turner v, Safley, supra, should be considered.

1. Is the regulation reasonably related to a legitimate, neutral government interest?

2. Does the regulation leave open another way for you to exercise your constitutional rights?

3. How does the regulation impact other prisoners, prisons guards or officals and prison resources?

4. Are there obvious, easy alternatives to the regulation that would not restrict your right to free expression?

I believe all these question must be considered before this "Stipulation" can be or should have been considered first before it became part of the April 4, 2008 Stipulation became effective. And attornies for the class should have discussed this with all class memebers.

Plain and simple DOC Medical is not going to replace all inmates prescribed glasses with the same protection and prescription that the inmate had when he came into DOC. For instance: "I have photo-gray glasses, because of certain eye conditions with anti glare to protect against bright light. DOC has already denied that prescribed treatment. DOC will not allow inmates to buy prescribed glasses with just plastic frames and keep their prescribed prescription. In order to solve any safety or secuirty issue. Also how is it secuirty and safety issue, if staff is allowed to keep there wire frame glasses. How is the regulation "neutral government interest."'"

When DOC chhooses to deny full prescription of eye glasses within the replacement. It denys the inmate to his health care appliance. Also, the new Stipulation changes the August 27, 2003 Remedial Plan, page 20. section C. Possession of Health care Appliances, in pertinent part:  "<u>NO inmates shall be deprived of a health care appliance that was in the inmate's possession upon entry into the DOC system...</u>"

Inmates will suffer or have sufferd deprivation of health care, specificall there glasses. For those who's prescription has been alterted or changed because of the stipulation of April 4, 2008, or before. Many inmates have lost transitional lens that give 100% UVA and UVB protection. That is what my personal glasses have and I can't get that protection from canteen bought sun glasses. They do not have 100% protection.

Nor will DOC leave open other ways of solving wire frame glasses, and transitional lens, UVA, UVB and or, anti-glare protection, by following the Turner test to ex-

3.

ercise the options in Turner v. Safley, supra, of whether had the stipulation or regulation allowed inmates to buy their own glasses. That would meet DOC new procedures and save considerable cost to DOC and tax payers of the State. This is part of the Turner test, I believe.

If not then the stipulation or regulation cannot be sustained as reasonably related to legitimate penological interest, where logical connection between regulation and asserted goal is so remote as to render policy arbitrary or irrational, or where goal of targetting wire frame glasses of inmates is not legitimate and neutral one. Or why has not the 49 other DOC from other states restrict wire frame glasses. This seems to be the only State with this policy for wire frame glasses.

Also, I would like to stress to this Court. that the Stipulation of April 4, 2008 clearly states: The number one (1) issue reads: "in pertinent part'

> 1. Inmates will be permitted to retain possession of their personal glasses <u>until DOC issues a replacement pair.</u>   ..."

Black's Law Dictionary, Sixth Edition. The word "Replace" means. To place again; to restore to former condition. Illinois Cent. R. Co. v. Franklin County, 387 Ill. 301, 56 N.E.2d 775, 779. Term, given its plain, ordinary meaning, means to supplant with substitute or equivalent. Olenick v. Government Eployees Ins. Co., 42 A.D.2d 760, 346 N.Y.S.2d 320, 321. To take the place of.

Its obvious DOC does not want inmates to have wire frame glasses because of there style that is personal to the inmate. Security and safety is not really the issue because anything that could violate security and safety with wire frame glasses could easyly be done with plastic frames. DOC Officer have wire frame glasses and could be used for the same security and safety issue raised or created issues as Class counsel "Response to Order, page 3, paragraph 7 indicates.

DOC Medical only want to replace personal wire frame glasses, and or, plastic frames with a prescription. Not any of the other prescribed protections the inmates eye doctor may have prescribed. Therefore its not a "REPLACEMENT." Nor will DOC allow inmates to pay for their own glasses through previous Ophthalmologist. Now if <u>DOC is willing to allow inmates buy their own Glasses, with plastic frames.</u> And the same prescriptions as before prescribed. The secuirty and safety issues are solved. And considerable money is saved for DOC Medical and the States Tax payers.

For all the above reasons and facts I object to the number one (1) issue on the Stipulation of April 4, 2008. And to number 26 of the Stipulation. Because the AIC Cathie Holst is a State employee and is not a unbias person capable of rendering a just decision regarding grievances. It is a conflict of interest to have her as AIC. She is well known for her bias conduct to deny ADA claims.

4.

RESPONSE TO ATTORNEY GENERAL ASSISTANT WILLOW I. ARNOLD, RESPONSE TO ORDER OF SPECIAL MASTER.

The Assistant Attorney General Willow I. Arnold, has goven the wrong DOC number for ADA Montez et. al. Member. #47702 is not the DOC number of Ronald Cordova. My DOC number is #57350.

As for setting aside the Stipulation of April 4, 2008 as indicated on page 1,2 of assistant A.G. Ms Arnold. The only issues objected to are number 1 and 26 of the Stipulation. This was in agreement with all who signed the June 20, 2008 Motion and letter to Judge Kane. And the reason why the Motion and letter went to Judge, Kane was because of disputes regarding the Stipulation. And according to section XXXVI. MISCELLANEOUS PROVISIONS A. RESOLUTION OF DISPUTES. Of the Remedial Plan August 27, 2003. Parties could submit the issue to Judge Kane. Since so many of the letters ADA inmates were going un-answered regarding question about inmates personal property, and or, eye glasses. It was decided to write directly to Judge Kane, for a resolution.

Plaintiff, Ronald Cordova, pro se, contends that both party counsels conspired to deny personal property of prescribed eye glasses at meetings. Without consent of discussing the issues involved with ADA inmates and any other inmate. Because the Stipulation in General includes all inmates in DOC regarding prescribed eye glasses.

It is Plaintiff's understanding of August 27, 2003 Remedial Plan that ADA inmates may file pro se, pleading, answers or responses when Class counsel ignors or fail to answer letters from ADA inmates. And provides the basis for individual pleadings. Also, their are other pleading from the Special Master's Orders. That must be answered or responded to by the ADA inmate regarding Hearing. Since Class Counsel claims they do not represent ADA inmates in hearings class action complaints.

Attorney Paula Greisen refused to represent me in the hearings held at AVCF. So I feel A.G. Willow Arnold statement number 5, on page 3 of her response is incorrect. Or Class counsel was ineffective in representing ADA inmates. Now on the other hand, if Class counsel is not going to answer letters regarding issues. And refuses to assist a class member in a hearing. or claims they cannot. Then I believe Fed. R. Civ. Proc. Rule 23 (a)(2) allows to submit pleading regarding question of law or fact common to there class. Know where that I can find I must send all my answers/pleading to class counsel prior to answering Court orders. For approval first.

For instance, that is why I objected to Cathie Holst being appointed AIC. I believe there was a conflict of interest and still do. Also, since I found out it was Class counsel that recommended Cathie Holst as AIC. This came out in my hearing with Judge. r. Borchers at this Facility (AVCF) May 12, 2008. And the A.G's Office approved of it. because they didn't object. This is one of the reason I believ the Montez et al. v. Bill Owen, is been a farce and shame regarding the American disability Act and Rehabilitation Act. I have not talked with one Class Member that approved of the settlement or Stipulation regarding there Medical care. And this especially includes Diabetis care or treatment. Member are not concerned with money as most think, Its medical care and treatment that is important to them. If a survey was to be conducted regarding "adequacy of representation by class counsel" there would be grounds for filing another class action law suit.

5.

I believe the Court can on its owen initiative take steps to address the issues. But until there is a survey from Class members, I don't think that will be done. One thing I know for sure that most Class members feel the Class Action Law suit has been a joke. And they have been denied minimum medical care even with Montez et. al. being filed. And if they had the knowledge to file separate suites they would.

Or the court May consider these pleading as a challenge to class counsel's representation. I certainly don't believe the Attorney General assistant Willow Arnold is correct on page 3 of her response that I have "NO" right to file pro se, pleadings. Because I don't believe Class counsel has adequately protected the interests of the class. I also, understand that I may file my own or separate claim. And I have given it much thought and be forced to do.

And the reason why I have not brought my concerns regarding eyeglasses to Class counsels attention. Because generally speaking eye glasses are not a ADA or Rehabilitation matter. Nor has class counsel ever brought up the issue of eye glasses in any meeting held by class counsel that I attended. Now if an inmates is blind and the issue comes up where he can prove because of his prescription he is blind. Now thst is a disability for the ADA.

But, when an issues is raised by party counsels of wire frame glasses. Is a security issue and plastic frames are not. How does that become part of a disability issues and a stipulation. Its a property issues, there is merit regarding this issue. Which apparently Ms. Willow Arnold refuses to grasp.

As for Ms. Willow Arnold's argument regarding Cathy Holst as AIC and whether there is a conflict of interest. There again, if a survey was conducted as to how AIC Cathy Hoslt has interferred with prisoners filing of papers with her office for class membership, and or, part of Montez et al. And how Cathy Holst took its on her own to deny forms. To be part of Montez et. al. There was even an article in the largest prison News letter regarding Cathy Hoslt's interference of inmates trying to become part of ADA under Montez et. al.

Here is what the Prison Legal News had to say:

Prison Legal News   July 2007, Vol 18 No. 7   (issn 1075-7678 page 13).

> Cathie Holst, known in Colorado for destroying the facility law library system, was appointed ADA inmate Coordinator (AIC). Her first act was to post a required notice throughout all facilities that initial claims forms are available and must be filed within 90 days of receiving the forms. Even special logs were developed for tracking claims within the CDOC. The Court, however, had ordered none of this; instead, a filing deadline of April 1, 2004 was established for all claims. Holst's actions were directly responsible for an untold number of claims rejected as late. When the Court discovered her personal crusade to thwart claims for relief, a new deadline of April 14, 2005, was established but only for claims occuring before August 27, 2003.

Ms. Willow Arnold, Assistant A.G., closes her response with Cathy Holst as AIC. Was a mutually agreeed upon. What I like to know in more detal, by whom, other than the A.G. Ofice and Class counsels.

6.

The fact remains, Ms. Cathy Holst is a State employee, paid by the State. And is not an unbias person who could rule honestly on grievance matters or ADA Claims. She is not a license Medical dostor or nurse. Qualified to make any determination regarding ADA claims.

And I believe the higher Courts will see there is and was a conflict of interest with her being mutually agreed upon by the A.G.'s Office and Class counsel LLP Law firm. There should have been some kind of "Notice to all ADA inmates" as to Cathy Holst appointment as AIC and what would be her function or background.

As far as most inmates are concerned, this includes past meetings. Know one ever brought up the appointment of Cathy Holst as an AIC. And what function she would be performing, and or, duties responsibilities of hanhling claims. Under Montez et al v. Bill Owens. Most ADA inmates were very-up set over her appointment. But did not know what to do about it.

WHEREFORE, I believe that numbers 1 and 26 of the April 4, 2008 Stipulation be set aside. And this Special Master consider all thy above information/facts set forth.

December 3, 2008

Respectfully

Ronald Cordova, #57350
AVCF            Unit 4
P.O.Box 1000
Crowley, Co 81034