IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870- CMA-OES

JESSE (JESUS) MONTEZ, *et. al.*

Plaintiffs,

v.

BILL RITTER, *et al.,*

Defendants.

_____

**DEFENDANTS' STATUS REPORT**
_____

Defendants, through counsel, Elizabeth H. McCann and James X. Quinn, of the Colorado Attorney General's office, hereby submit the following status report regarding the 2008 Stipulation extending the compliance period to May 1, 2009 (Document #3326).

1. A stipulation was filed by the parties on March 31, 2008 and signed by the Court on April 4, 2008, extending the compliance period to May 1, 2009 (Document #3326). The stipulation contained several items regarding actions to be taken by Department of Corrections (DOC) in return for the extension of the compliance period.

2. The parties have been meeting on a monthly basis as a large group to review steps taken by the Dept. of Corrections and to provide proof of same to the plaintiffs' attorneys. In addition, this has provided the parties an opportunity to discuss possible solutions to issues and has given the plaintiffs' attorneys a chance to provide input into suggested actions by the DOC. Smaller groups have met several times with experts to discuss the disability criteria.

3. The Dept. of Corrections has made substantial progress throughout the course of this extension and has addressed many of the issues contained in the stipulation as well as in the original remedial plan.

4.  Paragraph #1 of the stipulation concerns replacement of eye glasses. This has been implemented.

5. Paragraph #2 requires DOC to provide long-lasting batteries for hearing aids. This has been implemented.

6. Paragraph #3 states that DOC will conduct disability screenings based upon mutually agreeable criteria. This is the area that prompted the filing of the status reports. The parties have agreed on the screening criteria for mobility disability, but have not been able to come to agreement on the vision and hearing criteria. The disagreement is described in detail in the Plaintiffs' Status Report (Document #3723).

It is Defendants' position that a person with a hearing loss of 40/4 decibels or greater in the better ear would be considered disabled and could be fit for a hearing aid in that ear. With regard to both ears, the position of the Defendants is that an inmate would be considered disabled and may be fitted for two hearing aids if there is a hearing loss of 50/4 in both ears. Defendants have consulted with an expert medical doctor who has worked in the area of disabilities and in a correctional setting for many years. He himself is hearing impaired and wears a hearing aid. The opinion of Defendants' expert, Robert Jones, M.D., in support of Defendants' position is attached as **Attachment 1** with his C.V. attached as **Attachment 2**.

With regard to criteria for finding disability based on vision, the parties are actually quite close and may be able to resolve this issue without a hearing. We have agreed on the criteria for

visual acuity; the only area of disagreement concerns offenders with monocular vision, which is a very small group. Plaintiffs' expert states: "Patients that have monocular vision need to be evaluated on a case by case situation. Although this cohort of patients are not technically disabled by medical standards, they can have difficulty with depth perception and limited visual field that might warrant accommodation pursuant to the ADA." Thus, plaintiffs' own expert does not say that a person with monocular vision is necessarily disabled, just that this is a factor to consider and that some sort of accommodation might be warranted. Defendants' position is that if an offender with one functioning eye meets the threshold for vision criteria in his or her only eye, the offender is disabled. An inmate will be considered visually disabled with 20/60 acuity or worse, best corrected in the better eye, or central visual field of 20 degrees or less in his or her best eye or both eyes. Monocular vision may affect depth perception which may or may not be disabling and may or may not require some accommodation. Defendants are hopeful that the parties can resolve this area.

7. Paragraph #4 requires DOC to implement and adhere to any Special Master order determining disability classification of a class member unless there is a substantial and documented change in the offender's condition. This has been accomplished with the exception of 10-12 offenders and should be completed very soon.

8. Paragraph #5 requires DOC to add a sign language class. This has been implemented.

9. Paragraph #6 requires sign language interpreters for medical visits. These are being provided.

10. Paragraph #7 concerns review by the AIC upon request by an inmate for grievances that need to be reconsidered. This has been completed.

11. Paragraph #8 requires annual testing for DOC employees regarding the remedial plan with questions to be agreed upon by the parties. The process and questions have been agreed upon, and the testing is taking place. DOC provides plaintiffs' counsel with testing results during the monthly meetings.

12. Repairs for auxiliary aids are the topic of paragraph #9 which requires them to be made within 60 days. This area is being addressed.

13. The wheelchair clinics required by paragraph #10 have been completed, and all repairs or replacements have been made.

14. Paragraph #11 concerns TTY machines and making them accessible to hearing impaired offenders. TYY kiosks have been installed at Territorial Correctional Facility in which most of the hearing impaired inmates are housed. The target for installation in other facilities is the end of March. Training on their use is being conducted or will be shortly.

15. Paragraph #12 concerns the issue of more frequent bathroom breaks for diabetics. DOC continues to work on this. This has not been resolved.

16. Training of staff on the diabetic kits is required by paragraph #13. This is on going and rosters of all of those trained have been provided to plaintiffs' counsel.

17. Paragraph #14 states that offenders who have a documented history of hypoglycemia or a hypoglycemic event shall be offered the right to be immediately relocated to a cell with a call button if their current cell can be locked by DOC. DOC continues to work on this. This has not been resolved.

18. Access to the dog program by disabled offenders is the topic of paragraph #15. It is our understanding that disabled offenders are now being considered for the dog program. Documentation needs to be gathered and provided to Plaintiffs' counsel.

19. Paragraph #16 concerns the hearing criteria which was addressed previously in paragraph 6 of this report.

20. Hearing impaired inmates at Territorial Correctional Facility are required to be in cells with strobe alarms. This has been accomplished.

21. DOC is required to provide vibrating watches to all hearing impaired or disabled offenders in paragraph #18. This has been accomplished and is on-going.

22. Paragraph #19 requires DOC to offer Sex Offender Training Phase II at a designated facility that is comparable to the program offered at Arrowhead. This program has been established at Territorial Correctional Facility and is open to disabled offenders. One offender is being provided with the class at Ft. Lyon Correctional Facility through video. Preference is not given to offenders with disabilities because there are many inmates on the waiting list for this program and admission to the program is based on factors unrelated to disabilities. It would not be fair to other offenders to put the disabled offenders at the top of the waiting list.

23. Paragraph #20 requires the ADA Inmate Coordinator to provide a free replacement copy to an offender who loses or damages an Accommodation Resolution. This has been implemented.

24. Paragraph #21 requires DOC to establish a standardized procedure for offenders to apply for and obtain jobs and requires documentation of those who apply and the results. Job descriptions have been standardized throughout the agency and a disc containing those

descriptions has been provided to plaintiffs' counsel. DOC is still distributing these descriptions facility wide, and DOC is still working on a new AR and Case Manager manual entry to reflect the process of applying for and the selection for jobs.

25. Paragraph #22 concerns when PHP (DOC's contractor for managing medical devices) overrides a decision of a medical provider or specialist's recommendation for testing or assistive devices. It requires DOC to ensure that testing is done or that devices are provided. As we understand it, this is taking place.

26. The issue of disagreements with expert reports in paragraph #23 is addressed in paragraph #6 of this status report.

27. Medical co-pays are the topic of paragraph #24, and this has been accomplished.

28. Pursuant to paragraph #25, diabetic offenders are to be designated class members and certain language is to be included in their Accommodation Resolutions. This has been done.

29. Paragraph #27 requires DOC to address any problems noted in Peter Orleans report regarding architectural issues. This has been accomplished.

30. The designation of a person to coordinate, administer and/or oversee the scheduling of repairs and/or replacement of assistive devices is required in paragraph #28. This has been accomplished.

31. Paragraph #29 concerns requests for refunds of co-pays. This has been accomplished and continues to be implemented.

32. Offenders are provided with two copies of their ADA grievances when filed as required by paragraph #30.

33. Paragraph #31 requires that DOC not take money from damage claim settlements other than that required by the victim assistance fund. This is being followed.

34. DOC was required to post notices in all facilities regarding the extension of the compliance period and conditions thereof. This has been accomplished.

35. Class counsel has written a letter to offenders in the AIC database regarding the April 2008 stipulation and it has been distributed to all recipients by DOC as required in paragraph#33.

DOC continues to work on additional areas that are outlined in the original Remedial Plan and expects to be in substantial compliance with the plan by the next deadline for substantial compliance, May 1, 2009.

In light of the fact that the parties have not agreed on the correct criteria for determining hearing disability and perhaps will not be able to agree on the criteria for vision disability, the provisions of paragraph #3 of the Stipulation (Document #3326) are triggered. This paragraph provides that Judge Kane will make a forthwith review if the parties cannot agree on criteria.

Respectfully submitted this 19th day of December, 2008.

        JOHN SUTHERS
        Colorado Attorney General


        _s/Elizabeth H.McCann_____
        ELIZABETH H. MCCANN 5834
        Deputy Attorney General
        Civil Litigation and Employment Law Section
        JAMES X. QUINN, 21729
        Assistant Attorney General
        Corrections Unit, Litigation Section

        Attorneys for Defendants

                1525 Sherman Street, 5th Floor
                Denver, Colorado  80203
                Telephone:  (303) 866-3261
                Fax: (303) 866-5443
                Email: beth.mccann@state.co.us

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 19th day of December, 2008, I electronically filed the foregoing Position Statement with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paula Greisen
Jennifer Riddle
greisen@kinggreisen.com
riddle@kinggreisen.com
Counsel for the class
King and Greisen, LLP
1670 York St.
Denver, Co. 80206

Ed Ramey
Lara Marks
eramey@ir-law.com
lmarks@ir-law.com
Isaacson Rosenbaum PC
633 17th St. Ste 2200
Denver, Co. 80202

                s/ Elizabeth H. McCann_____

                Elizabeth H. McCann