IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA (Consolidated for all purposes with Civil Action No. 96–CV-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

___

Claim Number X-317
Category: Untimely Filed Claim
Claimant: Alexander Pogosyan, #102239
Address of Claimant: LCF, 49030 State Highway 71, Limon, CO 80826

___

## ORDER OF SPECIAL MASTER
___

THIS MATTER comes before the Special Master on the letter of August 21, 2008 filed by Claimant Alexander Pogosyan (Claimant). Claimant's letter has been treated as an objection to the stipulation between class counsel and Defendants that was approved on April 4, 2008 ("2008 stipulation").

Claimant's objection was one of many that were received by the Court and by the Special Masters. Upon receipt of the objections, an order was issued directing class counsel and Defendants to respond to the general objections. Those responses have been received and have been reviewed. After much research and review of the entire case file, each objection will be resolved separately.

Claimant's letter states, in part, as follows:

    I am not a class member but I must state: I do not agree with this ADA stipulation (which only mimics the unconstitutional DOC AR 700-15 1A) and I object to the ADA Stipulation as posted because it threatens (1) my safety, security, and way of life. (In a dangerous prison environment by them taking my personal Dr. prescribed eye glasses) (2) my personal (self-purchased) property (which this facility, Limon Correctional Facility, has begun sending notices for us to hand over our glasses) (3) And the very purposes the doctor prescribed them for me.
The 2008 stipulation referred to by Claimant contained additional provisions that were not

included in the Remedial Plan. The 2008 stipulation reads, in part, as follows:

>The following remedies shall be implemented for the failure to achieve substantial compliance with the Remedial Plan by the required date of July 27, 2007:
>1. Inmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses. Unless it is determined that the inmate intentionally broke his/her own glasses, CDOC will replace damaged or broken glasses free of charge on an as needed basis. If the preponderance of the evidence shows that the inmate intentionally broke his/her glasses in any particular year, he/she will be responsible for the replacement costs of the glasses.

The 2008 stipulation became effective on April 4, 2008 when signed by Judge Kane. It is this section that Claimant is concerned about, as he believes the Colorado Department of Corrections (DOC) has been and will be using this paragraph to take eyeglasses from inmates that have been purchased privately.

As noted previously, the Special Master directed both class counsel and Defendants to respond to the general issues concerning this paragraph in the 2008 stipulation. Counsel for the class responded on October 14, 2008 (Document #3667) and stated, in part, as follows:

>5. During the compliance review conducted by counsel for the Plaintiff Class, a major concern raised by inmates was DOC's non-compliance with §XVI(c) of the Remedial Plan. Class Members notified class counsel that their glasses had been taken away and had not been replaced in a timely manner in violation of the Remedial Plan.
>6. In March of 2008, DOC admitted it was not in compliance with the Remedial Plan and the parties entered into negotiations regarding Stipulations to benefit Montez Class Members. During this process, counsel for the Plaintiff Class raised the issue of eyeglasses being taken away in violation of §XVI(c).
>7. DOC presented information on the security and safety issues created by wire or metal framed glasses to support its practice of taking away such health care appliances.
>8. DOC's non-compliance with §XVI(c) is not with respect to inappropriate removal of health care appliances, but rather in the replacement of the appliance and/or providing accommodations for inmate's needs in the absence of the removed health care appliance.
>9. Accordingly, the Stipulation requires DOC to allow inmates to retain possession of their personal eyeglasses until DOC issues a replacement pair of glasses rather than the former practice of taking glasses away for security reasons without providing a replacement pair at the same time. Furthermore, the Stipulation benefits Class Members by requiring DOC to replace damaged or broken glasses free of charge on an as needed basis rather than only replacing damaged or broken glasses in a three-year period of time.

Counsel for Defendants filed a response directly with the Special Masters. In the response, Defendants argued that the objectors' real complaint was with the actions of counsel for the class. Defendants further argued that the objectors may not seek private relief through *pro se* pleadings. Defendants rely upon *McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991) as supporting their position, and they further argue that the inmates have not shown that they contacted class counsel with their concerns about eye glass replacement or the provision in the 2008 stipulation.

Claimant has not filed a claim pursuant to Section XXXII of the Remedial Plan. He states clearly that he is not a class member. It is also clear that he does wear eyeglasses that have prescription lenses.

One of the issues raised in the objections is whether the class has been expanded by the 2008 stipulation. The language in paragraph 1 of the 2008 stipulation reads, in part, that "[i]nmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses." A reasonable reading of that section would seem to indicate that all inmates in DOC are covered, not just those with a vision impairment. Assuming that interpretation, then the class was expanded by the approval of Judge Kane on April 4, 2008.

The Special Master specifically finds that Paragraph 1 of the 2008 stipulation did not expand the class of those who are vision impaired. This is consistent with the language in class counsel's response that "parties entered into negotiations regarding Stipulations to benefit Montez Class Members..." Reviewing the 2008 stipulation as a whole, there was and is no indication that it was the intent of class counsel and Defendants to include all inmates with prescription eyeglasses in the vision impaired subclass.

The Remedial Plan established four categories of impairments: vision impairment; hearing impairment; mobility impairment; and diabetes. An inmate may be a member of one subclass, such as being diabetic, and not be a member of another subclass. Claimant has not alleged that he is a member of any subclass or the class as a whole.

The policy statement on the first page of the Remedial Plan states as follows:

> It is the policy of the Colorado Department of Corrections (DOC) to provide inmates with disabilities, with or without reasonable accommodation, access to its programs and services consistent with legitimate penological interests. No qualified inmate with a disability, as defined in Title 42 of the United States Code, Section 12102 shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the DOC or be subjected to discrimination. All facilities designated to house inmates with disabilities will provide comparable programs, services and benefits available throughout comparable DOC facilities to ensure that inmates with disabilities are not discriminated against because of their disability.

The Remedial Plan provides in Paragraph III the following definitions:

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent physical disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Remedial Plan thus incorporates the definition of the ADA concerning disability, specifically referring to *42 U.S.C. §12101*. This statute reads, in part, as follows:

> (2) Disability
> The term "disability" means, with respect to an individual–
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

The parties agreed that damage claims were to be based upon the criteria of the ADA, with the impact on one or more major life activities. That agreement also covers other aspects of the Remedial Plan.

This case is based jurisdictionally upon the ADA and Rehabilitation Act. Absent a specific jurisdictional basis, a case cannot be maintained in a federal court. As an example, adjudication of violations of DOC regulations would be jurisdictionally impossible, unless the regulations violated a constitutional provision or federal law. The United States Supreme Court has ruled that corrective and mitigating measures must be taken into account when evaluating whether a permanent disability exists. *Sutton v. United Air Lines,* 527 U.S. 471(1999). As a result, the wearing of glasses is not, in and of itself, sufficient to find a permanent disability. If the wearing of eye glasses corrects a vision problem, then there is no permanent disability under *42 U.S.C. §12101*.

Class counsel and Defendants cannot agree to expand the class to include individuals who do not meet the criteria of the ADA and Rehabilitation Act. Paragraph 1 of the 2008 stipulation does not apply to Claimant, as he is not a member of the subclass of vision impaired. Claimant may not claim benefits from the Remedial Plan or the 2008 stipulation as a member of the subclass of vision impaired, because he is not vision impaired. Likewise, he may not be held to the provisions of paragraph 1 of the 2008 stipulation. Claimant may bring his own lawsuit concerning any issues he may have surrounding the confiscation of his private eyeglasses.

Claimant mentions general constitutional concerns about the confiscation of his eyeglasses. The Special Master cannot resolve that issue, as this case rests solely on the ADA and Rehabilitation

Act. Claimant may raise all constitutional issues in a separate lawsuit.

The ADA and Rehabilitation Act prohibit discrimination based upon a physical or mental disability. DOC's regulation on eyeglasses mirrors the provisions of Paragraph 1 of the 2008 stipulation ("Offenders entering the DOC through intake may retain possession of their personal glasses until the DOC issues a replacement pair of glasses"). *AR #700-05(IV)(B)(7)*. The DOC regulation appears neutral on its face. The argument that DOC issued glasses are inferior in quality may well be true. The problem is that any inmate wearing glasses issued by DOC must show that such glasses do not correct the vision impairment sufficiently to allow activities of daily living to be carried out. That evidentiary burden requires much more than just personal testimony concerning DOC glasses. If the DOC eyeglasses were determined to be deficient for all who receive them in the subclass, then class counsel could raise that issue. So far, class counsel has not done so.

The Court cannot oversee the daily operation of DOC and its facilities. The jurisdiction upon which the Remedial Plan is based is the ADA and Rehabilitation Act. The settlement through the Remedial Plan limits further what jurisdiction may be exercised by the Court. Claimant is not part of the vision impaired subclass or any other subclass. His remedy is to commence separate litigation. He is not bound by the Remedial Plan as it pertains to vision impairment. He is not bound by paragraph 1 of the 2008 stipulation. He is bound by *AR #700-05*, but will have to litigate all constitutional issues in a separate lawsuit.

IT IS HEREBY ORDERED that the Special Master specifically determines that Claimant has not been shown to be a member of the subclass of vision impaired and is not bound by the provisions of the Remedial Plan concerning vision impairment; and

IT IS FURTHER ORDERED that the stipulation approved by the Court on April 4, 2008 did not expand the vision impaired subclass to include every inmate who wears eyeglasses; and

IT IS FURTHER ORDERED that Claimant's motion for relief for any and all issues related to his eyeglasses is denied for lack of jurisdiction; and

IT IS FURTHER ORDERED that Claimant, Class Counsel, and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 17, 2009.**

SIGNED this 22nd day of December, 2008.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master