IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES)(Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al
Plaintiffs,

v.

BILL OWENS et al.
Defendants.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 29 2008

GREGORY C. LANGHAM
CLERK

Claim Number 03-377
category III
Claimant: Ronald Cordova, #57350
Address: AVCF Unit 4, P.O.Box 1000, Crowley, Co 81034

## OBJECTION TO THE SPECIAL MASTER FINAL ORDER DATED JUNE 25, 2008

COMES NOW, the Plaintiff, Ronald Cordova, pro se, files his "OBJECTION" to the Special Master's final Order, dated June 25, 2008. And as for grounds states the following:

This Action is pursuant to the Americans with Disabilities Act, 42 USC 12101. and Rehabilitation Act 29 USC 794. And certified as a Class Action under Montez, et al, No. 92-N-870 and consolidated with 96-N-343.

The Plaintiff specifically object's to the Special Master's Final Order for the failure to consider the facts presented. And denial of Civil Procedural Rules. There was two Hearing conducted: January 24, 2008 and May 12, 2008. Plaintiff filed a Motion for witnesses, the Plaintiff's family witnesses were never contacted and other witnesses were denied because the special mater claimed only employees could be called, these were expert witnesses, Dr. Jacob Patterson and Dr.( ) Lohr and Dr. C. Bethel experts in Ophthalmology and Orthopedic's. These and Plaintiff's Exwife Sue Bloodworth and Son Ronald Cordova Jr were not called. All other witnesses were considered hostile witnesses.

Plaintiff, will make an objection as to each page of Special master Judge. R. Borchers Order, and then a final argument. As best as he can. Plaintiff has know legal training and prays this Court to understand the disadvantage Plaintiff has.

Plaintiff did submit addresses and phone numbers of witnesses he had hope to call during the Hearing. The expert witnesses requested were denied by Judge R. C. Davidson. Plaintiff objected to the judge's order denying these witnesses and argued in a motion (dated November 20, 2007.

Plaintiff argued he was denied a fair opportunity to present evidence and expert testimony regarding his claim under the ADA and Rehabilitation Acts. The case

1.

cited was WEST v. ATKINS, 487 US 42, 54-57, 108 SCt. 2250, 2258-60 101 LEd2d 40, 53-55 (1988). The Court held: ...that a doctor under contract with the State to provide medical services to prisoners at a state prison hospital on part-time basis "acts 'under color of state law" within the meaning section 1983).

In, the Judge's Order denying Plaintiff's request to call witnesses, the court said these witnesses were not employees. These expert witnesses were employees by contract and acted under color of law and should have been called to testify in the hearing. (judge R. Davidson order, dated Nov 12, 2007). <u>If they are acting under color of law, then they are acting in ther offical capacity as employees</u>.

On page two of Special master Judge Borchers Final Order: The Judge states in first paragraph   ..." that a settlement had been reached between members of the class defendants."

The class members as far as I know were not contacted as to what settlements had been reached or dicussed. I did not know of any issue because no one from the class attornies had any meeting with memeber, especiall on the issue of inmates giving up ther personal eye glasses, how did this ever become an issue in the first place. Its a property issue with inmates. How did determination as to what categories a ADA members, all have suffered discrimination of mimimum proper medical care. While the Attornies made millions.

Bottom od page 2: Plaintiff believes he meets all the requirements under Section III Definitions
A. Covered Disabilities

> The persons covered by this plan are individuals with mobility, hearing, and vision impairments and inmates with diabetis.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which subsatntially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve in six months.

I certainly meet these requirements under definitions for ADA Claim and have submitted evidence and facts/affidavits. Since 1963 when I got out of the Navy as to when i first injured my left or right knee. I can't remember exactly since I injured both knees so close in time. I am still trying to get more proof from State Compensation records through an investigator. Plaintiff's conditions regarding both Eye and mobility claims have never improved since he first was injured and will never improve.

Plaintiff explained in detail as much as he could remember in filing his ADA Claim as to times and places of these injures both Mobility and eye impairment claims.

It was right after Plaintiff got out of the Navy that he first injured his knee and was taken to familiy doctor at that time. His name was Dr. Mosko at a clinic in East Denver. Plaintiff's Mother Elizabeth Hinojos took me to the doctor. My Mother died year ago otherwise she would have been a witness. Dr. Mosko has also died since

2.

my injuries first happened. Its been since 1963-64. I explained how I first injured my knee playing liesurely sports with friends at a park. And how I developed my eye or vision claim. I started welding school soon after I got out of the Navy at Emily Griffin School Denver Colorado. And started to get severe headache, but did not know why. Until I went to see the family eye doctor (Dr. Kanda) he had an office off of North Pecos Street and Boulder Turnpike. He also has died, otherwise he would have been called as a witnesses. <u>He told me I had a photophobia, caused by bright lights or welding flash</u>. Since I was going to welding school at the time and working part-time welding. My condition got worse and I had to stop welding and could not work as a welder to support my familiy. And the ability to perform a major life activity. (working as a welder). <u>Dr. Kanda at that time said I was developing macular degeneration and it would eventually get worse if I continued to weld,</u> plus I had several myopia and would get eye inffections all the time with other eye problems. Since Plaintiff's incarceration he has had his eyes examined by several eye doctors for infection and eye problems. While Plaintiff was at Denver County jail awaiting trial at Denver General Hospital. The eye doctor told Plaintiff <u>he had certain eye conditions and prescribed photogray dark lens for his eyes</u>. DOC Medical deny these eye conditions by there own doctors, or those contracted to give eye examine. Plaintiff submitted a exhibit in his "objection to State's response, dated October 18, 2006 (Exhibit M-3) part of 21 exhibits. I hope the Special Master will send a copy of that particular Motion to this court. Its Plaintiff's main arguments to the state's Response as to claims.

    Upon arrival at DRDC and Cellhouse 5 Diagnostic Center for evaluation and testing. The plaintiff explained to medical staff about his knee injuries and the disabilities given by State Compensation. Plaintiff explained as best he could in detail the circumstance and how many times he had re-injured his knees and the Hospitals, clinics he had gone too. In 1993 at the Denver Diagnostic Center I was given blue neoprene knee braces for both knees, and was told I would get follow up treatment at my permanent Facility. THAT I NEVER GOT AND I HAVE NOT SEEN ANYONE OTHER THEN Dr. JACOB PATTERSON UNTIL NOVEMBER 14, 2001) <u>14 year latter,</u> I finally see a Orthopedic specialist. at the time he told me I would get arthrscopy surgery. Somehow AVCF Medical rejected the surgery and or, denied the treatment because of cost, NO matter how serious the Plaintiff's condition was. See Exhibit A of Plaintiff's Motion "Objection to State's Response" dated October 18, 2006. Later on I was told by P.A. T. J. Singh and P.A. Ted Laurence both that I was not going to get Knee surgery.

Over the years while being incarcerated I had my knee pop-out and I would blackout because of the pain. It would do "NO" good to go directly to medical. For the simple reason, I would not get any emergency treatment. When there is this type of injure, medical just tells you have a sprang or something of that. And they will make an xray appointment which may be in one to two weeks. I always wraped my knee made a kite out to medical and wait to be called/ Medical records will verify any knee problems or xrays. This is basically how emergency are handled, their is "NO" trained medical staff that can treat broken bones or injuries of this kind. Whether it is serious or not inmates don't get proper care and must wait until sent to a specialist out side of the prison.

I also want to make it clear to this Court, that I have tryed my best getting other medical records regarding my claim. Such as records from St Anthony's Hospital and Colorado Prestress Concrete where I worked and injured my knee, plus records from Clinical Office of Dr. Mosko through private investigators. But I have not been successful as of yet.

Along with these records I hope to get Records from Dr. ( ) Kanda the Optometrist who examined and who's diagnosis was that I had sever Photophobia to bright lights and was developing macular degeneration of the eyes. And that the major cause was welding flash, which at the time I was going to school for and working part-time. Although I doubt I will get much since Dr. Kanda has been dead for several years. That is why I was prescribed dark-lens for protection from bright light.

My eyes continued to get worse over the years, even though I had to quit working as a welder. I was diagnosed as having sever meibomian inspisations/infarus, and myopia/presbyopia. (See Exhibit M-3) of my "Objection to States Response" dated October 18, 2006). To Special Master.

On page 5 of Special Master. Judge R. Borchers, describes some of the Plaintiff's claims regarding Mobility claim and the care or treatment he had been given by DOC medical. Actually the plaintiff never received any treatment or care. Other then a pair of blue knee braces issued on about 1-29-93 and the time he was seen by Doctor Jacob Patterson November 14, 2001. All this information of facts and evidence should have been given careful consideration in determining "Discrimination for or, since Plaintiff was examined and told he would get follow-up care on 1-29-93. The Judge, did not consider these important facts. According to the ADA definitions, I meet all the requirements and there are records and affidavits from family to verify disabilities I have claimed.

In fact the only expert in the medical field of "Orthopedics-specializing in the Skeletal System, Muscles, Joints and Ligaments that examined the Plaintiff was Dr. J. Patterson. <u>None of the physician's assistants (Ted Laurence or T. Singh, or Dr Wermer, Gary Norman, PA, or Dr. Orville Neufeld.</u> Qualified as experts witnesses in Orthopedics, nor could any testify as experts in a court of Law. Only Dr. Jacob Patterson could, and I was denied to call him as a witness.

Defendants counsel and Montez et al counsels have all made the ADA a mockery and shame. The Special Master indicates on page 5, that I called Ted Laurence as a witness. Its my understanding from the defendant's witness list all the P.A's would be called. Actually, Ted Laurence is a hostile witness. Even though he testified that Plaintiff had knee problems. And that he was aware Dr. Patterson recommended a knee brace, but had been taken away.

The Knee Brace was taken away during a shakedown, because the brace had metal stays and was authorized. Also the permit (a blue card) had not been renewed according to a write-up Plaintiff was given for have exspired treatment prescribed. <u>It was not Plaintiff fault the brace had metal stay, that's the way it was given to him by medical</u>. Plaintiff was subjected to loss of earntime and discipline as being wrong.

Plaintiff,contends Ted Laurence was not qualified to conduct any kind of ADA Evaluation. All DOC Medical Staff are trained to deny as much care and treatment to save cost for the contracted provider.

PAGE 6 of Special Master's Order:  States: "on cross-examination, Mr. Laurence indicated that Claimant was to old for a knee replacement." ...

As Plaintiff recalls, on the date Ted Laurence conducted this so called ADA evaluation. Mr Laurence told Plaintiff that his knee surgery was cancelled because of his age and that the Provider, A Dr. Shames denied the treatment. But on the day

4.

I was exaimined by Dr. J. Patterson, I was told he would do arthroscopy surgery. And then said he felt it was to late because of my age. I was actually in a state of limbo because I didn'y really know what would happen. Regardless of which or who denied any treatment, whether it was DOC Medical staff or the contracted Provider, it was discrimination and deliberate. Plaintiff has been waiting since 1993 for followup treatment. And suffered with pain and blacks when ever his knees would pop-out or fear they would again.

Plaintiff's knee braces have been taken away twice and has received two Code of Penal Discipline write-ups. Lost good time/earned time for having prescribed treatment in his possession.

It is the Plaintiff's contention the Special Master has not followed the Settlement Agreement Section XXXII that provide the basis for filing claims: See page 2 of the Special Master Order Date d June 25, 2007. For determination of categories, Failed to consider <u>the Plaintif lost of good time and earn time do to write-ups that was not his fault. The knee braces were a prescribed treatment. The Plaintiff suffered inconvenience from each category and to this day nothing has changed. Nor will his knee injury improve the rest of his life.</u>

<u>OTHER HOSTILE WITNESSES CALLED BY PLAINTIFF</u>: Sgt. Terry Jones, was called at the ADA Hearings at AVCF. The Plaintiff called Sgt Jone to prove Officer Jones wrote-up the Plaintiff for have blue neoprene knee braces. At the time of the write-up the Plaintiff showed Sgt. Jones his permit that was given at the time the knee braces were given. Sgt Jones said, Plaintiff had to have a blue card. Plaintiff was found guilty for having prescribed treatment. Plaintiff wanted to also establish that Sgt. Jones had a serious dis-like or hatred towards Mr. Cordova the Plaintiff. Plaintiff had never had a write-up in 16 years during his incarceration until Sgt. Jones conduct became aware of. Sgt Jones continued to harass and retaliate against Plaintiff. Because the Plaintiff filed grievances and filed Civil Rule 106 in District Court because Plaintiff felt the write-ups were false. Sgt. Jones even told a friend of Plaintiff the reason he dislike Plaintif is because he filed a law suit against Sgt. Jones.

Other Hostile Witnesses: Plaintiff called Sgt. S. Buford. Ms. Buford was Plaintiff's supervisor during the time he worked in the Visitingroom. Plaintiff had a job working in the visitingroom before he was transferred to Minnesota a private prison. He has always had above average evaluation in workmanship and attitute.

While working this second time in the visitingroom Plaintiff experienced two guards with hostil conduct and attitutes. Sgt Laurent and Sgt. S. Buford. Both white officers. Plaintiff was hired by Sgt. Montoya, who was very respectfully and was an Officer who worked with the inmates. He gave Plaintiff good evaluation regarding his Job performance. Plaintiff never once mentioned his disability to these officers, and always worked with other inmates moving tables chairs, the tables weight was about 80 to 100 lbs. and two inmates always moved the tables. (There was about 90 tables or more. The reason two inmates moved the tables was so that they did not drop them on the tile floor. Because it would damage the floor. DOC Staff always told the inmates who worked in the visitingroom to help each other moving the tables. Always with another inmate helping.

A Plaintiff can establish discrimination by showing he was terminated or lost his job because of abusive working conditions, regarding his disability. And that he had

5.

he had medical restrictions on how much weight he could life. Plaintiff never told anyone guard he had limited disability. Or how Sgt. S. Buford brought up the fact of Plaintiff's medical excuse of not lifting over 10 lbs. As far as Plaintiff knew and according to Sgt. Laurent and Sgt. Buford he was terminated for his religous beliefs and medical excuse according to D.O.C. work evaluations. <u>See Exhibits AA-W, BB-w, CC-W, DD-W AND A-W. Of the Plaintiff's Objection to State's Response."  dated October 18, 2006 filed with Special Master, Judge, Borchers.</u>

Both Officers: Sgt. Laurent and Sgt. Buford hostility towards the Plaintiff's religious belief as messianic jew, and not working on Saturday. But Plaintiff never complained about or mentioned working saturday. Sgt. Montoya who hired Mr. Cordova always allowed plaintiff to work on Sunday. So he could have Saturday off. But Sgt. Laurent and Buford did not like that idea. And threaten Plaintiff to start working on saturday. I did and never complained, but I was graded, or given a bad evaluation for my religious belief. Which is a First Amendmend violation under the U.S. Constitution.

Although Plaintiff was denied the right to call Sgt. Laurent at the hearing to established the Officers hate and discrimination. He did call Sgt. Buford. A Plaintiff can establish, his employer's decision or conduct had a determinative influence for termination of his job in the visitingroom. See Southeastern Comm. College v. Davis, 99 SCt. 2361 (1979) Plaintiff contends that both these two officers conduct and false evaluation regarding Plaintiff's work performance was a deciding factor to terminate the Plaintiff. Sgt. Laurent claimed to have fired Plaintiff for giving away his watermillon while eating in visiting. Sgt. Laurent started inmates who worked in visiting to eat cold meals on weekends. I did not want a cold meal, so I chose not to eat. An inmate who had a visit. Took the meal or watermillon. And Sgt. Laurent accused me of giving it to him. And said I was fired or terminated me. If this was true I would have been given a COPD write-up of Disciplinary charges, but never was. Basically the Plaintiff was terminated because of his disability and religious belief as messianic jew. The work evaluations confirm this. Both Sgt. Laurent and Sgt. Buford caused from participation in work. With their modification and changes regarding the visitingroom job. And not following previous officers and job standards for this job. Both Officer have both been removed from supervisor over inmates working in visitingroom.

The Special Master did not consider any of this information in Plaintiff's pleading or during the Hearing held at this facility. And never considered whether the Plaintiff had worked with his legs in knee bandages or not. Only that Sgt. Buford was right in her observation of the Plaintiff walking without problems.

<u>Vision claim:</u> page 6 of Special master's Order:

The Plaintiff was denied calling contractual employees, Dr. Benton Murphy, Dr. C. Bethel and Dr. Lohr. These doctors examined me when I had eye effections or for new glasses. They are employees and acting under color of law. All my family doctors since passed away. So I could not call them as witeness to testify as to my eye conditions of "photophobia, macular degeneration and the abnormal sensitivity to bright lights or glare. Especially to welding flash, a job I worked at and went to trading school to learn and support my family with.

6.

The Plaintiff contends that the Special Master did not consider any of the difficulties explained at both hearing regarding his claims, or any of the evidence he presented. This includes any expert testimony that may have been beneficial to the plaintiff from Dr. B. Murphy, Dr. C. Bethel and Dr. Lohr regarding eye inffections or problems.

Plaintiff felt that he could have proved that contracted Doctors were bias or instructed to provide only what medical care was dictated by the provider contracted with D.O.C. Medical Dept. also on page 6 of the Special master order only refers to Plaintiff' claims and problems as just not truthful, therefore there is "NO" discrimination. Or even minimum care necessary for the Plaintiff's serious medical needs. Plaintiff always had prescribed photogray lens with anti-glare protection, including UVA, UVB protections... And always bought his own glasses until D.O.C. policy recently changed during this Montez et al v. Bill Owens law suite. Now inmates can't buy there own glasses from an outside source. Or get the prescribed treatment private doctors may have prescribed. D.O.C. Medical will not provide previous prescribed treatment. And is discouraged by medical staff and those who are contracted to give eye examination.

All witnesses called by Defendants, none are experts in Orthopics or Ophthalmology that would have testified in support or benefited Plaintiff's claims. Nor could any of the witnesses testify truthfully regarding Plaintiff's claims. As a matter of fact all witnesses have impeded or delayed/discouraged and deliberatedly dis criminated against plaintiff getting the minimum care or treatment. For the past 22 years in prison Plaintiff has had file grievance after grievance just to get denied and confronted with barriers of bureaucracy for proper treatment.

Even though Defendant witness Dr. Orville Neufeld did admit Plaintiff had an ACL injury and had problems. As well as witness Ted Laurence P.A., the Special Master did not consider follow-up treatment and delays since 1993 discrimination in the minimum. Plaintiff suffered with pain since 1993 and on two occasion was falsely given a disciplinary write-up for have prescribed treatment. And subjected to lost of earntime or goodtime. Plus, the Plaintiff has never been given back the knee braces or new braces. Cathie Holst the AIC for Montez et al class, has denied the grievance process. She is a State employee and that is a conflict of interest. She is not going to agree to help any inmate whether they are disabled or not.

Plaintiff has also submitted records from Denver General Hospital, and affidavits from family regarding his eye claim. And that he suffers from sever "Myopia and or "meibomian inspisations/infarus, myopia/presbyopia." See Exhibit M-3 of Plaintiff's "Objection to State Response" October 18, 2006.

> Myopia constituted "disability under ADA and Rehabilitation Act.
> Peacock v. County of Marin, 953 F.Supp 306 N.D. Cal. 1997.
> See also: Williams v. Ill, DOC No. 97C3475, 1999 US Dist. Lexis
> 18190 at *15. ND Ill Nov 16 1999) Unpublished)(holding that a de-
> fendant's extreme Myopia constituted a disability where the
> defendant acknowledged the condition as disabling in the pleading.

Apparently the Special master has not considered any of Plaintiff's facts and his pleading. Or whether defendants have discriminated regarding the minimum treatment for Plaintiff's eye conditions or Mobility claim. The Only qualified doctor to examined Plaintiff, Dr. Jacob Patterson, wanted to operate. But somewhere down the line, the provider denied any future surgery for a serious condition.

7.

The Defendants relie on medical personel that are not experts in Orthopedic in denying Plaintiff's Mobility claim. And fail to accept the fact of the only expert to examine Plaintiff. And that was Dr. Jacob Patterson-an orthopedic surgeon. It took about 14 years before I was finally examined by a qualified doctor in orthopedics. AVCF Medical knew verywell of the Plaintiff's circumstances regarding knee injuries. Plaintiff was subjected to years and years of discrimination. These are genuine facts that cannot be dismissed. Plaintiff has suffered during the times when his knee would pop-out or just give out without any prior normal condition of walking. His knees have been weak because of injury.

Plaintiff, is attaching an affidavit with this Motion, regarding a recent injury to right knee. On about November 12, 2008 Plaintiff was jus walking and his right knee just pop-out. When this happens the pain is so severe, i just black-out. This time I managed to hold my self up. But the pain cannot be stopped. I didn't have any knee brace, because my knee brace was taken away by Nurse. Howe, last year. Claiming it was unauthorized because of metal straps in the brace. I did not know and did not buy or obtain the brace illegl. It was prescribed by a License doctor and given to me. If I had the brace on at the time. I don't believe this injury would have happened.

I submitted a medical kite for treatment, and was called to medical November 18, 2008. I was seen by Ted Laurence, P.A. he denied me medical care and told me he had a policy not to see those that filed law suites against him. I was scheduled the next day to see P.A. Singh.

Under Estelle v. Gamble, 429 US 97, 97 SCt 285 (1976) this case, the Supreme Court of United States ruled the States have a constitutional obligation to provide medicla care to those it incarcerates. P.A. Ted Laurence does not have a policy to treat or provide medical care. He has an obligation and acts under color of Law. Please read the attached Affidavit to this motion to this Court. Exhibit A.

Ted Laurence's conduct was deliberated discrimination. Conduct that is discriminative and failure to provide treatment or care to a serious ongoing injury. The Plaintiff followed all the required policy/regulation for Co-payment and everything necessary for medical care and was denied. This is tipical of the medical care inmates received in prison. Animals in zoos get better care then Humans in prison. Plaintiff has filed a grievance, because its necessary for future complaints. Although the grievance system does not work and bias responses. Administrative Regulation are not followed in answering the grievances procedures. The third Step grievance officer fails to answer timely and never investigates properly. Whether its AIC answers or ADA greivances, Steps are not followed.

According to REMEDIAL PLAN OF August 27, 2003. Page 14 regarding ADA Grievance Procedures. Paragraph 3, Step I and II are suppose to be forwarded to are case-manager. The case-manager then forwards the grievances to REGIONAL ASSISTANT DIRECTOR.

I have had two grievances lost, and or, never answered because know one knows where or who is the Regional Assistant Director. My grievance regarding the Knee braces that was taken away by nurse D. Howe. Took over a year to answer. After I had to refile, and then be denied that it was my fault for having a prescribed knee brace with metal straps. The second grievance regarding an ADA EYE examination. After several months I was told to go to receiving, there I tryed on the

new glasses and I got dizzy. I couldn't say if it was because of the new prescription. Or wrong prescription. I asked Officer Woodson, if I could try the glasses on before he destroyed my old prescription. He said it wasn't up to him. So I couldn't take the glasses unless i had permission to try them, and hope my eyes adjusted to the new prescription.

I sent a kite to medical, they did not respond. And then I sent another kite. I still did not receive an answer. A few days later, I had a medical appointment with cronic care, and was seen by Dr. Aasen. I told him about the new glasses and what had happened. He said he had nothing to do with it. I said you was the one who told me. That I would be scheduled for an ADA eye exam. He then told me to talk with one of the Nurses. I waited, and then I was told to leave. So I filed a grievance regarding the eye exam and its policy to pick-up glasses in receiving instead of medical. That way problems could be solved right away.

Medical responded back, with an answer that, it was not an ADA matter and that I was filing the wrong issues to the wrong party. Either way, I was denied. I do know this as a fact, Dr. Aasen told me he put me in for an ADA eye exam. And now he denys it. This is the same run around we get from medical or who ever we talk too about problems. The procedures and stipulation and or, agreements in the Remedial Plan is not being followed. The grievance system is not followed. That is why I believe the Montez et al. law suite is a farce and shame. Mean time hundreds of inmates are subjected to poor medical care, as diabetic, or mobility or eye claims are over looked as just a complaining inmate. No one will ever know the truth until honest people investigate.

The AIC office has never responded to a claim for diabetis. And there is know way I can prove it was sent in. Because the lady at the mailroom refused to log papers to AIC as legal.

PLAINTIFF HAD TWO HEARING WITH SPECIAL MASTER, JUDGE, RICHARD BORCHERS:
Dates of hearings January 24, 2008 and May 12, 2008

Plaintiff, brought up the issue of grievances through ADA and AIC office, according to Remedial Plan of August 27, 2003, page 14 ADA Grievances Procedure. Sec 3, in pertinent part:

> ..." The case manager shall then, within 5 calendar days of receiving the Step II grievance, forward the grievance and accompany documents to the appropriate Regional Assistant Director. The Regional Assistant Director shall then issue a written determination within 25 days of receipt of the Step II grievance....."

No one at these hearings including Judge Borchers knew who was Regional assistant director. My grievance regarding prescribed appliance knee brace had been taken in a shakedown by Nurse D. Howe. My grievance was lost. My case manager did know anything or didn't try to find out what happened. I told Judge Borchers about the problems ADA inmates have with grievance system and that its just a joke. DOC staff could care-less about inmate grievances. Administrative Regulations on grievance procedure are not followed. Yet if inmates don't follow procedures, they grievances are denied for failure to follow A.R's or other procedures. This is another reason why I think both attornies on both sides have made a mockery and shame of the American Disability Act. And I believe the courts have allowed error to go unchecked. Class counsel has failed, there main concern is money.

9.

The grievances systen does not work. Its just an obstacle to discourage inmates attempt to resolve problems, abuses, retaliation by DOC staff.

DISCRIMINATION:

I believe I have shown discrimination in my complaint and pleading. And have established I have a Mobility/Vision and debetis claim. And will eventually get Records from State Compensation through a private attorney.

I have shown discrimination regarding my knee braces, which have been taken on two occasion and never returned. Prescribed by medical and by an Orthopedic. I needed these knee braces for support for my knees. They were prescribed appliances and accommodation necessary for treatment and prevention of further injury.

I have shown lost of earntime for have prescribed treatment, by given disciplinary write-up by DOC Staff, Officer Jones. Whon has constantly harassed me.

I have shown lost of Job, in visiting room because I couldn't life over a certain amount of weight. Accordong to Office Buford. And was terminated.

I have shown I have certain eye condition in which DOC Medical claims are not authorized treatment. According to ther provider. But it does not say that in Estelle v. Gamble, 429 US 97, 97 SCt 285 (1976) the State must provide medical care for those it incarcerates, not according to the medical provider.

I have been denied minimum medical care over the last 16 years at least regarding my knees. Assess to programs of medical services. My medical records proves the times i have been x-rayed. And just recently the re-injury of my right knee. And denied medical care completely by Ted Laurence because he has his own policy not to treat inmates who have file law suits. Or are part of Montez et. al.

I don't believe DOC nor the Attorney General's office, and Class counsel have followed in detail the Remedial Plan of August 27, 2003 and changed issues in the April 4, 2008 Stipulations. Without notifying and concent of ADA inmates. There needs to be a survey regarding Class counsel's representation.

There are certain issues I cannot address in this Objection because I do not have what the Court refer to; for example Nov 23, 2004 ORDER IN RESPONSE TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTERS TO JUDGE JOHN L. KANE (order). It refers to a recommendation #622 and on page 2 to criteria in paragraph #1. I don't have any idea idea what they are discussing. Because I don't have that information., or pleading. ADA inmates don't have the privilege of a guiding hand or knowledge of the law.

According to the April 4, 2008 Stipulation, number 20. We can write to AIC office for lost pleading or copies of or regarding Montez. Well I wrote a letter to the on 6/27/08 and the response I got back from Marshall Griffith July 14, 2008.

My letter was regarding the grievance system and that I needed copies of certian pleading that I didn't have. The answer I got was, it was mu fault for having a prescribed knee braces. It was like I was being scalded for following the rules or obeying regulations. In other words I was criticize harshly for having the knee braces. and that I was sent all the Montez document already and that's it. No procedure was followed according to Stipulation #20. This is wrong, its like a one sideed settlement.

The AIC Office should follow the Stipulations agreed to, and provide Plaintiff with the requested pleading/Papers. In order he could complete his argument to this Court's order.

Another thing the Plaintiff would like to point-out. Is that the affidavits from his family have not been submitted in bad faith, but are honest and true. And will be proven when ever the Plaintiff gets disability records from State Compensation, State of Colorado. Its just that Plaintiff has had a hard time finding the right investigator to obtain these records., the claims are to old to fined.

Plaintif would like to also point-out, he was denied a fair hearing. Because the Special Master 's denied calling all Plaintiff's witnesses. Especially Dr. Jacob Patterson, who was under contract to provide medical examinations. And under contract is an employee. See. **West v. Atkins,** 487 US 42, 54-57, 108 SCt. 2250-60 (1988). Or page 1 of this Objection.

    Plaintiff, believes he has established discrimination, as a matter of fact it should be deliberate discrimination and intentional. Becuase he was denied benefits of services, programs, or activities of a public entity, or subjected to discrimination. As Plaintiff has stated before, he was denied follow-up surgey, For 16 years or more Medical has failed to provide any treatment. Dr Jacob Patterson who examined Plaintiff years later wanted to provide Arthroscopic surgey but was denied by Dr. Shames. That is what I was told by Ted Laurence during an medical visit. During these years of prolong period of delayed medical care Plaintiff suffered with pain and continues to this day. The Special Master has not taken this into account. Also during this time, knee braces were prescribed until proper treatment would be performed. But, Plaintiff was given disciplinary write ups for have prescribed knees braces, they were taken away. He was found guity and lost good time and earn time. Special Master did not taken this into consideration. These were prescribed appliance to help and support Plaintiff until he got treatment-surgery. This constitutes "exclusion from participation in or... den[ial of] the benefits of the prison's "services, Programs, or activities." 42 USC §12132; **Yeskey, supra,** 524 US at 210 (noting that the phrase "services, programs, or activities' in §12132 includes ... Medical... prison programs. **U.S. v. Georgia,** 546 US ___, 126 SCt. 877 (2006).

AVCF Medical cannot deny Plaintiff's history of knne injuries. Its been documented since 1987 when Plaintiff first went through diagnostic center at cellhouse 5. And in 1993 at the Denver diagnostic Center, where plaintiff was given blue knee neoprene braces for both knees. Untill follow-up treatment was given. Its "NO" doubt that Plaintiff's disability in his knees substantially limits a major life activity. As of right now, Plaintiff is being subjected to discrimination by Officer Dowling. Who has constantly harass Plaintiff about forced sitting to lower floor in chowhall. And threatening him regarding his job. Where Plaintiff must climb three floors daily doing his job. If Plaintiff refused to work he is subject to disciplinary write-ups again. A new policy to force sitting has caused issued with ADA inmates, and those who are documented lower bunk or tier restriction. Officers have tendency to inflict corporal punishment., at will and claim its there duty to discipline inmates. Its well known corporal punishment is prohibited.

11.

As of April 14, 2008 I was informed by Dr. Aasen that I have diabetis. I brought this to the attention of Judge. R. Borchers at the May 12, 2008 Hearing. The Attorney General was up-set and moreless objected. Said, she wanted an independent opinion from another doctor. That is what I remember or close to it. Anyhow The Attorney General Deputy Willow Arnold didn't accept or believe the State's doctor. And affidavit was sent from Dr. Paula Frantz, Chief Medical Officer. She denied eveything I told the Special Master, Borchers.

According to the lab-test I have, I been diabetic for several years and not told about by medical. I believe this is another way of discrimination. Or withholding medical information. Dr. Frantz, claimed in her affidavit all the test were below sugar levels. And that lab-test confirm this. And that there were NO finger stick blood sugar test results.

I sent Judge, Borchers copies of lab-test from 1998, 2004 and 2005. These lab-test indicated high Hemoglobin AIC and glucose, serum. These lab-test disapprove Dr. Frantz affidavit sworn oath. Her test results are especially picked out of medical records to support her affidavit.

I recently got information from American Diabetis Association on the recommended diagnosis of impaired glucose tolerance, and fasting glucose test. I don't believe Dr. Frantz test results are accurately presented. Also, I hve received the Prisoner Diabetis Handbook, published by Southern Poverty Law Center for all prison accross the United States. Given me up-dated information on test results for diabetis. AVCF Medical withheld vital information from me for years regarding diabetis. This is tipical of there discriminative conduct to withhold information regarding prisoners health. And for proper treatment and care.
I have submitted new claims and have not received back any response. I can't prove this new claim was sent out, because the lady in the mailroom will not log mail to AIC office as legal mail. This is non-other then another form of discrimination of medical care from Colorado Department of Corrections.

None of the above information was really considered by Judge, Borchers. According to Settlement approved by the United States District Court as provided in or for the five categories for damage claims. Or whether the plaintiff's has proven any of his claims. There are just to many undisputed issues preventing dismissal of Plaintiff's claim of diabetis as well as mobility and vision claims. For the last three years at least I have suffered all the symtoms. And wondering why I felt so weak or shaky, blurry eye, feeling tired. I was given the drug "Levothyroxine " for being tired. That could be wrongfully prescribed.

## FINAL ARGUMENT

I feel the Montez et. al v. Bill Owens, class action has been a "Sham and made a mockery of Justice." The parties involve, and I mean both sides of Attorneys because of the greed for money. And the false representation that has been given. I don't care about the money and never have wanted one red cent. My only need was to get proper medical care, like most ADA inmates.

We are at least entitled adequate medical care. A Constitutional guarantee, because must rely on prison authorities to treat his/her medical needs. **Estelle v. Gamble,** 429 US 97, 103 (1976).

Also, I believe the Special Master's Office has failed to take into consider-

ation the facts I presented and made the right determination regarding those facts. And the three factors or standards of the ADA 42 USC 12102 sec 3 Definitions (2) Disability

> (A) a physical or mental impairment that substantially limits one or more of the majoe life activities of such individual.
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

Plaintiff history of knee injuries and eye problems are well document and family affidavits support Plaintiff's disabilitys. The most important proof will be when Plaintif gets State Compensation records are finally obtained.

Plaintiff does not believe a case by case determination was made:

**Sutton v. United Air Lines inc.** 130 F3d 893 (10th Cir. 1997) held:

> "the statutory requirement that a disability determinations be made with respect to individual; contemplates an individualized, and case by case determination of whether agiven impairment substantially limits a major life activity of the individual. id at 897 citing Runnebaum v. Nat. Bank of Md., NA 123 F3d 166 (4th cir 1997).
>
> If the underlying disorder or condition makes worse or diminishes in a material respect any of the enumerated body system of the individual, then it should be considered an **"impairment,** regardless of whether the individual compensates for the worsening or diminishment by corrective measures. citing **Roth v. Lutheran, Gen. Hosp.,** 57 F3d 1446, 1454 (7th Cir 1995).

Determination of whether individuals impairment substantially limits major life activity under ADA should take into consideration mitigating or corrective measures utilized by individual. American Disability Act of 1990, § 3(2)(A), 42 USCA § 12102 (2) (A) id at. 899 and 902 **Sutton, supra.**

The ADA does not define either "subsatntially limits of Major life activity," id at.899 Sutton, supra. See also **Bragdon v. Abbott,** 524 US 624, 118 SCt 2196 (1998). "Pursuant to specific provisions of ADA, the Supreme Court is required to construe the ADA to grant at least as much protection as provided by regulations implementing the Rehabilitation Act. Americans with Disability Act of 1990 § 500 et seq., USC 1988 ed) § 790 et seq.

It is also: Prohibited to strike fear into prisoners.

" To establish a prima facie case of retaliation under the ADA Act of 1990, §503 (b), 42 USCA § 12203 (b). The ADA provides that "it shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of any right granted or protected by this chapter." 42 USC § 12203 (b). See **Southeastern Comm. Coll. v. Davis,** 99 SCt. 2361, and Selnke v. Med. Imaging of Col., 248 F3d 1249 (10th Cir. 2001).

This is exactly what has happen to me since I had prescribed knee braces taken by retaliatory officer during shakedowns. My knee braces were taken when I asked

13.

to put on my knee braces before being removed to gym. I was denied and when I was allowed to return to cell. My knee braces were confiscated. And never returned. I was threaten by Maj. Jaramillo, that I would be transfered for filing grievances regarding knee braces. And I am constantly harassed by Sgt Dowling for having a disability in my knees. He forces me to sit down stairs, knowing I have a disability. There is a policy where by guards can now tell prisoners where to sit. This is non-other then a form of corporal punishment or abuse under the guise of discipline. I am threaten of being fired from my job because I am a Montez et. al member. And if I can climb stairs during my job, I can sit where they want me to. Its a type of catch 22, damm if I do, and damm if I don't. I was told by sgt Dowling I no-longer have lower bunk or tier restriction from medical. Inmates are constantly harassed at med-line becuase of there diabetis. Officer force them to get finger sticks first before eating ever if they are having symtoms of low sugar.

Other facts the Plaintiff contends the Special Master has failed to consider. Is whether the Plaintiff has limitations regarding his knees and the fact he had knee braces to support his disability. But does not have then anymore because they have been taken away. Mitigating measures such as medicines, or assistance of or prosthetic devices. Knee braces can be considered a prosthetic device if it helps or support the individual. See Roth v. Lutheran Gen. Hosp. 57 F3d 1446 at 1454. Other consideration, three factors should be considered (1) the nature and severity of the impairment; (2) the duration, and (3) the permanent long term impact of or resulting from the impairment. 29 CFR § 1630 2(j) (2), **McDonald**, 94 F3d at 1444 (quoting 29 CFR § 1630 (2) (J)(2); Lowe, 87 F3d at 1173, Bolton, 36 F3d at 943. **Doyal v. Okl. Heart, Inc.**, 213 F3d 492 (10th Cir 2000).

In **Sutton v. United Air. Lines**, 527 US 471, 119 SCt. 2139 (1999) Justice O'Conner held that: (1) Corrective and mitigating measures should be considered in determining whether individual is disabled under ADA; ...

This means my use of knee braces and corrective presription eye glasses should be considered under corrective and mitigation measures. And that a case by case determination based on the factors presented. Miller v. King, 384 F3d 1248 (11th Cir 2004). Runnebaum v. Nat Bank of Md. 123 F3d at 166 (4th Cir 1997)

> In judging whether an individual possesses a "disability" within meaning of ADA, mitigating measures must be taken into account, including both measures undertaken with artificial aids, like medications and devices... with body's own system. **Albertsons, Inc v. Kirkingburg**, 119 SCt. 2162.

plaintiff's condition with not improve within six months, neither his mobile or eye conditions. As matter of fact his condition gets worse each day.

There remains to many genuine issues of material fact that prevents a dismissal or judgment in favor of Defendants. Summary judgment is appropriate [only] if there are no genuine disputed issues of any material and viewing the record in light most favorable to the non-moving party. Fed Rl Civ. Proc. Rule 56 (c) **boling v. Romer**, 101 F3d 1336 (10th cir 1996. **See also, Barney v. Pulsipher**, 143 F3d 1299 (10th Cir. 1998) citing **Celotex Corp. v. Catrett**, 477 US 317,325, 106 SCt. 2548 (1986).

14.

On November 23, 2004, Judge Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim.

Plaintiff, contends the Special master has failed to make the proper determinations regarding all of Plaintiff's facts/affidavits. Plaintiff also contends he meets all the criteria of that November 23, 2004 Order.

1. Plaintiff is a disabled individual, and a member of the class. 2. Plaintiff is qualified to participate in the prgrams and receive the benefits of services offered by DOC, this includes medical care. 3. was the claimant discriminated against by DOC because of his disability. **Yes,** for well over 16 years he was denied follow-up treatment, he was told he would get at his permanent Facility. He was denied recommended surgery by Dr. Jacob Patterson., by Dr. C. Shames. denied replacement glasses according to Montez et al. Stipulation of April 4, 2008. 4. Did this conduct cause the claimant harm. **Yes,** Plaintiff has suffered irreparable harm regarding his mobility claim and for his eyes. His condition will never improve in six months. And has suffered adverse working conditions.

If Plaintiff does not meet the November 23, 2004 criteria, then there are genuine issues of disputed material facts.that prevent dismissal of his complaint. Summary judgment is warranted only when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed. R. Civ. Proc. Rule 56 (c).

WHEREFORE, the Plaintiff, Ronald Cordova, pro se, respectfully request this honorable court review all the above pleadings, facts. Plaintiff, also prays this court allows plaintiff to proceed with one copy of this Objection. Because he can't afford to purchase all the copies, dur to the increase of photocopy fee of .25 per page. Plaintiff, only makes $12. 00 a month. Plaintiff will send copies to other parties as soon as he gets back copies from outside source.

date December /7, 2008

Respectfully

*Ronald Cordova*
Ronald Cordova, pro se
#57350
AVCF     Unit 4
P.O.Box 1000
Crowley, Co 81034

# GENERAL AFFIDAVIT

STATE OF COLORADO       )
                        ) ss.
CROWLEY COUNTY          )

I, Ronald Cordova, #57350 being duly sworn, deposes and says:

Today November 18, 2008, I had a medical appointment in AVCF Medical Department. At 1:20 P.M. For an injury to right knee last Wednesday 11-12-08 my knee pop-out again and the pain was so bad I blacked out. I submitted a kite for medical care. And was called today. I seen P.A. Ted laurence, he asked what I needed. And I said is this for my knee or a blood pressure check-up. I could see it was for my knee. But AVCF Medical Staff like to play games and act dumb. P.A. Ted Laurence had my medical kite in his hand, all he had to do was look at the kite. Which he most like did already.

I explain when my knee pop-out, last Wednesday. When I was walking. My knees are very weak and I have had this problem before. I told him of the sever pain I have had since Wednesday and unable to sleep from the pain of trying to walk. He left the medical room for a few minuts and came back asked about how long I have had this problem. And said he was not going to see me because of present Law suite. And that he wouldn't blame me and I couldn't blame him. He said I would be seen by someone else tommorrow. A P.A. Singh.

I asked him, your not going to see me because of my law suit and ADA complaint. He said, He don't see patients that have suited him or have pending suites.

I said I would have to file a grievance, for my own records and that you don't want to treat me. But He seemed to change his mind. And asked to look at my knee. And said he would give me crutches to help me walk and a shot for the pain. And Ordered some other medicine for inflamation of the right knee.

I am making this Affidavit because I felt, P.A. Ted Laurence at first refused to treat me because I am a member of Montez et al. law suit against Colorado DOC medical. And that P.A. Ted Laurence attitude was of hostility when I told him or refreshed his momory of my disability to my knees and that he was well aware. Because it was not long ago I had a hearing with the Federal Special Master at this Facility. In which P.A. Ted Laurence was called to testify regarding my disabilitys.

Date November 21, 2008                              _Ronald Cordova_
                                                         Affiant

Subcribed and acknowledged before me this day, November 21, 2008
My Commission expires _____

Notary Public


TIFFANI HOLUBEK
NOTARY PUBLIC-COLORADO

## GENERAL AFFIDAVIT

STATE OF COLORADO      )
                       ) ss.
CROWLEY COUNTY         )

I, Ronald L. Cordova, being duly sworn, deposes and says:

On June 3, 2008 I was called to medical at the Arkansas Valley Correctional Facility for an ADA eye examination. I was seen by Michael Saxerud who was contracted with Department of Corrections to give eye examination according to AVCF Medical procedure and rules. Michael Saxerud also has an private eye business outside of the D.O.C. I explained my eye problems and pass examination and treatments. He said he was examining for diabetic eye exam and could not or would not jeopardize his job with D.O.C. of prescribed nothing other then standard eye glasses. He said my chance of getting photogray lens was very slim to nothing.

I then asked if I was on the outside would you prescribed and agree with dark-lens as treatment for macular degeneration or photophobia. He said he would. But he could not for prisoners that is what he was or has been told. And then said he didn't want to answere any more of my question. He also ask me who said I had last treated me for macular degeneration of photophobia. I told him, I had been seen by a eye doctor in Minnesota where I was transferred to. And then he said there is nothing in my record. He made it very clear that he was not to provide us with any kind of photogray or transistional lens. And that was from D.O.C. Medical's providers. He didn't mention any name.

He dialated several inmates eyes and would not give dialation glasses for any temporary protestion and said D.O.C. does not provide temporary glesses when eye are dialated. I said you should supply them, don't you give your private Patients them. He would not answer.

He Michael Saxerud then told me my eye were in very good shape and that there was a small change to my eye prescription. I then, said, if my eye are in such good shape., why is it that my family doctor who is an "Ophthalmologist" has prescribed and treated me for the conditions I am telling him about. And that other eye doctors from Denver county have treated and prescribed photogray lens. and have diagnosed these conditions. He had nothing to say. It was obvious he had been pre-trained not to recommend or prescribe anything other then what D.O.C. Medical's Supervisor had told him. He was bias only for D.O.C.'s treatment and care. And there would be NO acceptions. That is what all medical P.A.' and doctors do that are contracted with Colorado D.O.C.

June 6, 2008                              _Ronald Cordova_
                                          affiant

The foregoing instrument was acknowledged to before me this __6__ day of June 2008

__[signature]__
Notary

__3/21/2011__
My Commission expires

TIFFANI HOLUBEK
NOTARY PUBLIC-COLORADO

GENERAL AFFIDAVIT

STATE OF COLORADO      )
                       ) ss.
CROWLEY COUNTY         )

I, Ronald L. Cordova, being duly sworn, deposes and says:
On about April 14 or 15, 2008. I was called to medical by posting of sick-call memo. I was seen by Dr. M. Aasen, he informed me of lab-test results taken on 3/31/2008. (Exhibit M-1 and M-2). Dr. Aasen told me I had diabetis according to test result. He asked if I had certain symtoms, feeling tired-blurred vision, increase passing of urine, constant thirst and sudden weight loss. I had all of the symtoms except weight loss. And I had these symtoms for at least last ten years. Dr. Aasen told me he would order a vision test and that I would be getting diabetic education or training as follow up care. And that I would be called back after a month to review finger stick testing. So far I have not been called back or received any kind of training or diabetic education or follow-up care.

According to lab-test from 3/31/2008 my hemoglobin A1c is 7.0H and the limits are from 4.8 -5.9 I am over by two (2) points. See exhibit M-1 and M-2. Exhibit M-3 is Dr. Aasen's medical orders for treatment. Also, I have not been placed on a diabetic diet, nor have I been contacted by anyone regarding a diet for diabetis.

Affiant Ronald Cordova, has been at high risk since 9-10-1998 of developing long term complications such as retinopathy, nephropathy, neuropathy, cardiopathy, ETC. And some danger of Hypoglycemic reaction in type I diabetics. See Exhibit M-4. This information has been withheld since 1998 by Dr. Joseph Wermer and Dr. Beecroft, P.A. Ted Laurence, and P.A. Tejinder Singh. All lab test have indicated or confirm diabetis according to lab results.

I have been sick since 1998 with every symtom except weightloss, and have suffered because I have never been treated or informed until April 14 or 15, 2008 by Dr. Michael Aasen of the high risk and danger associated with diabetis.

June 3, 2008

_Ronald Cordova_
affiant

The foregoing instrument was acknowledged to before me this 3 day of June 2008.

Notary
3/21/2011
My Commission expires

TYRAN HOLUBEK
NOTARY PUBLIC-COLORADO

CORDOVA, RONALD

57350

AVCF

**ORTHOPAEDIC CLINIC (11-14-01)  DOB: 4-8-92**

Age 59, serving life. He complains of instability in the left knee and lesser problems with the right knee. He says it gives out and he "blacks out" when it does. He falls This dates back many years.

**PAST MEDICAL HISTORY:** Remarkable for what he calls occasional hypertension  He has some benign prostate hypertrophy and peptic ulcer disease problems.

**SURGICAL HISTORY:** Not available.

**ALLERGIES:** IVP dye.

**MEDICATIONS:** Seldine.

**REVIEW OF SYSTEMS:** Negative.

**FAMILY HISTORY:** Noncontributory.

FILED IN COMBINED COURT
CROWLEY COUNTY, COLO.
DEC 26 2006
Dawn Stallsworth
Clerk of Court

**EXAMINATION:** He is a small muscular man, alert and oriented. He has a stable right knee with mild patellofemoral crepitus. On the left he has a positive Lachman and positive pivot shift and medial joint line tenderness, otherwise, clinically stable. Good pulses, normal sensation, normal motor function, no effusion.

X-rays from 1997 unremarkable.

**IMPRESSION:** Longstanding ACL deficient left knee. I suspect he has some cartilage damage as well.

**RECOMMENDATION:** Arthroscopy. Would not proceed to reconstruction because of age. I have explained that in detail to him. He does need an off-the-shelf hinged brace to manage his instability on the long-term on the left knee which will be permanent.

Jacob Patterson, M.D.
Orthopaedic Consultant

T: 11-15-01/mp

RECEIVED
DATE 12-10-01

Exhibit A