IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

─────────────────────────────────────────────

Claim Number 03-460
Category III
Claimant: David C. Owens, #2387
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

─────────────────────────────────────────────

## FINAL ORDER OF SPECIAL MASTER

─────────────────────────────────────────────

THIS MATTER came before the Special Master for hearing on December 29, 2008. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: David C. Owens (Claimant) and Christopher Alber, attorney for Defendants.

Claimant called himself as a witness. Defendants called Dr. Gagandeep Singh, M.D. as a witness. Defendants' Exhibits A through UU were offered and admitted into evidence. All documentation previously submitted by both sides was accepted.

After final closing arguments, the case was taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody in the mid-1970's. Claimant discharged his initial sentence on August 1, 1977. Claimant returned to DOC custody on November 20, 1980. Claimant was housed at a number of facilities before he was paroled on October 26, 1982. Parole failed, and Claimant returned to DOC custody on June 26, 1984. He was discharged from that sentence on November 17, 1984.

Claimant returned to DOC custody on a new sentence on June 2, 1993. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant then was transferred to the Arrowhead Correctional Facility (ACF) in Canon City, Colorado on August 11, 1993. Claimant was transferred into a prerelease program in February 1994. He discharged that sentence on April 24, 1994.

On November 11, 1995, Claimant returned on a new sentence to DRDC. He then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado in December 1995. In January 1995 he was housed at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was transferred to a prerelease program in May 1997. He was granted parole, but that

3

was not successful. Claimant returned to DOC custody in July 1998. He was placed back at FCF, and then he was discharged from his sentence on April 7, 1999.

On September 19, 2000, Claimant returned to DOC custody. He was placed initially at DRDC and then transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado in October 2000. Claimant was transferred back to FCF in June 2002 and then placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on June 17, 2002. Claimant remained at AVCF until he was moved to the Sterling Correctional Facility (SCF) in Sterling, Colorado on August 23, 2005. Claimant was granted parole on June 6, 2006. Parole failed, and Claimant came back into custody of DOC on January 18, 2008. He returned for evaluation to DRDC and then was transferred to FLCF On February 7, 2008.

In his claim form, Claimant checked the boxes for mobility impairment, vision impairment, and diabetes. Claimant stated, in part, as follows:

> 1) I have Type II diabetes, diagnosed in 1987. 2) I have mobility problems because of edema in my feet and legs caused by my diabetes. 3) I have neuropathy in my feet & legs caused by the diabetes. 4) I can't climb to an upper bunk because of muscle weakness caused by diabetes. 5) I have problems eating because my dentures cause sores that won't heal very well because of diabetes. I have had surgery on my eye caused by cataracts and for several years prior to the eye surgery I was legally blind. I was in prison in Colorado during that time.

In response to the question concerning discrimination, Claimant stated, in part, as follows:

> I have been charged medical co-pays for my diabetes, dental, and vision problems and all of these issues are chronic in nature. Virtually all of my medical needs are related to my diabetes. I would request reimbursement for all monies deducted from my inmate account for medical treatment of these diabetic related & visual related problems, additionally I was denied work, programs, & earned time (non-compliance) due to vision impairment, a result of being labeled non-program compliant.

Claimant went on to allege that he was unable to earn good time and that he had to serve longer than he should have.

At the hearing, Claimant testified that he was diagnosed as diabetic in 1987 by a physician in Mexico City. He started taking insulin but was later able to control his diabetes with medicine, diet, and exercise. He began having problems with his vision as the result of development of cataracts. His vision started to dim because of the cataracts, and Claimant testified that he had difficulty moving about and attending classes. He specifically noted that he requested a magnifying glass in order to keep up in class, but that was denied to him. He had cataract surgery on his eyes in 2001. He had lenses installed in his eyes and has been able to see reasonably well since the surgery.

Claimant testified further that vision problems led to mobility issues. He could not accurately gauge distances and would run into chairs, tables and other objects. He has attempted to exercise throughout the time he has been in DOC custody, as he wanted to control his blood sugar levels without having to use insulin.

On cross-examination, Claimant acknowledged that he had spent many years in DOC custody. He had delayed filing a claim because he was not able to grasp the concept of the case. He also testified that the claim process had been downplayed by DOC staff.

He indicated that he walked up to one and three-quarter hours 3 or 4 days per week for exercise. He has employment as a porter and has to clean and buff floors as part of his job. He acknowledged that he comes from a family that has a genetic predisposition for diabetes. He stated that his vision is good now that the cataracts have been removed.

Defendants called Dr. Gagandeep Singh, M.D., who is a physician for DOC. Dr. Singh had reviewed the medical records of Claimant and was qualified as a medical expert. He testified that Claimant has been diagnosed as having diabetes from 1996 on. Dr. Singh stated that Claimant's blood sugar levels have been up and down over the years, without good control. Claimant has missed many meals and may be facing renal failure.

Dr. Singh stated that Claimant had cataracts that were removed in 2001. It was necessary to allow the cataracts to grow and mature. Only then could they be removed. Claimant did have vision problems before the surgery, but those problems were corrected with glasses. Review of Claimant's medical records indicated no evidence of diabetic neuropathy or edema. There was no evidence that Claimant had mobility issues that rendered him mobility disabled.

Dr. Singh testified further that Claimant is fifty-eight years old and needs to take better care of his diabetes. He needs to take finger sticks on a regular basis, but Claimant has been reluctant to do so.

Defendants also submitted several pages of Claimant's medical records. Those were reviewed after the hearing was completed.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his mobility and vision impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Diabetes:** There is no dispute that Claimant has been diabetic for years. The evidence reflects that his DOC medical records confirmed a diagnosis of diabetes as early as 1996. Claimant is a member of the class as a diabetic.

**Vision Impairment**: The evidence presented by both sides reflects that Claimant had vision problems related to the cataracts. His poor vision was reported in his medical records as early as 1995. *Defendants' Exhibit B*. Once the cataracts were removed and lenses placed into his eyes, Claimant ceased to have major vision problems. The Special Master finds that Claimant was vision impaired up through the date of his cataract surgery. He is not vision impaired at this time, as defined by the ADA and Rehabilitation Act.

**Mobility Impairment**: The evidence presented by both sides does not substantiate that Claimant has been mobility impaired as defined by the ADA and Rehabilitation Act. Claimant was not and is not a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**

Claimant carries the burden of establishing that he was the victim of discrimination on or before August 27, 2003 that was prohibited by the ADA and Rehabilitation Act. Absent such proof, Claimant cannot prevail on his claim.

Many of Claimant's concerns over the years have related to medical care that he has received while in DOC custody. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination

that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act.

Claimant has not proven that he was the victim of discrimination prohibited by the ADA, with one exception. Claimant testified that he was taking classes in the late 1990's and into 2000. His cataracts were growing but could not be removed until they matured. Claimant requested that he be provided a magnifying glass in order to complete class work. That was denied, even though his medical records reflected vision problems. As a result, Claimant was not able to complete those classes in a satisfactory fashion. Claimant has alleged that this led to an increase in the number of days that he had to serve. The Special Master does not find that has been established. Claimant has established that he was not able to complete classes due to his cataracts and was not accommodated through use of a magnifying glass. Claimant has established his claim as to this point. He has not established any discrimination beyond that period of time.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant was not able to complete classes due to his vision problems. He could have been accommodated but was not. Claimant is entitled to $200.00 for damages caused by the discrimination that he suffered in the late 1990's and in 2000 due to his vision problems caused by the cataracts.

IT IS HEREBY ORDERED that the claim of David C. Owens has been established concerning vision issues prior to his cataract surgery, and Claimant is awarded $200.00 as damages; and

IT IS FURTHER ORDERED that the remainder of the claim of David C. Owens is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before March 9, 2009.**

SIGNED this 9th day of January, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

---
Richard M. Borchers
Special Master