IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-452
Category: III
Claimant: Robert L. Lyons, #49333
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert L. Lyons, #49333. This hearing was held at SCF on December 18, 2008 before Richard C. Davidson, Special Master. Mr. Lyons appeared *pro se*. The Defendants were represented by Robert Huss, Esq. Claimant Robert Lyons and Thomas Fisher, M.D. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by

1

various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.    General inconvenience or nominal damages;
> II.   Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III.  Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV.   Damages due to severe physical injuries; and
> V.    Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III.  DEFINITIONS
>       A. COVERED DISABILITIES
>       The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>       B. QUALIFIED INMATE
>       Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>       C. PERMANENT DISABILITY/IMPAIRMENT
>       A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1.     Claimant Robert L. Lyons submitted a claim which was assigned claim number X-300 having been untimely filed. After review, the claim was accepted and assigned claim number 03-452. The claim is premised on alleged permanent mobility and vision disabilities.

2.     Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3.     Claimant Lyons first entered CDOC custody in 1981. Claimant has been housed at CCF, CTCF, LCF, FCF, AVCF and SCF.

4.     Claimant was injured in an automobile accident in 1968, where he suffered a severe injury to his right leg. Over time, his right tibia and fibula have fused together. When he came into custody in 1981, Claimant was able to walk, although with a limp, and was in pain when he did walk. Claimant's medical records indicate that he claims to have been beaten and injured in November 1983 at CTCF. He was injured again in 1990 when he fell off a roof while working at Shadow Mountain. He was further injured on June 30, 2004 when an auger caught his lower leg. As a result of his injuries, he now uses a cane and sometimes a walker to get around. He occasionally is forced to use a wheelchair when his condition gets bad. Claimant says that his knee "pops" and

3

that he has ankle problems. He testified that he can walk 100 to 150 feet before having to rest a short time. He is able to walk to the chow hall, which he estimates is 400 feet away, but says he has to rest once. Claimant also says he has pain in his low back and damaged nerves in the left leg. He also has cardiovascular problems which contribute to his lack of mobility. He has had cardiac bypass surgery. He sometimes gets cellulitis. The last time, his condition was ignored for a day until is became serious. He says that he had gangrene once.

5.    Claimant has been placed on restrictions including bottom bunk, bottom tier, no sitting or standing for long periods, and no heavy lifting. He says he cannot work. He testified that he worked as a plumbing supervisor at AVCF in 2005 but was terminated when the AIC said he couldn't work. He has tried to get other jobs but has been unsuccessful. He has been denied classes because of his condition. He has been denied yard privileges because of his medical condition. He testified that he has been disciplined for not standing for count even though he was unable to do so. He also says that he needs soft shoes for his swelling feet but that he has been issued heavy leather shoes instead.

6. Claimant also claims to have a vision disability. He says he is blind in the left eye and has poor vision in the right. Reading is difficult and is accomplished by using a second reading lens in addition to his glasses. He says he was issued the wrong glasses in the past. The vision records are confusing. It is stated by in a DOC vision screening on April 20, 2005, that Claimant is blind in the left eye. But the exam shows that Claimant's vision is corrected to 20/40 on the right and 20/200 on the left! The conclusion is that Claimant is indeed blind in the left eye.

### III.  CONCLUSIONS OF LAW

1.    The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2.    The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3.     The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4.     Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5.     It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6.     The Special Master finds and concludes that Claimant Robert Lyons is mobility impaired. He was injured prior to coming into custody in 1981 and was injured again twice before the August 27, 2003 *Montez* cut off. He was injured yet again after that time. CDOC has recognized his impairment and issued him a cane, a walker and when needed, a wheelchair to aid his mobility. He is now able to ambulate only short distances without the assistance of a cane and without having to stop and rest. However, the issue is whether his impairment, as it existed on or prior to August 27, 2003, constituted a substantial limitation on the major life activity of walking. An examination of the older medical records in evidence shows that as recently as 2005, Claimant was able to do plumbing work. There is no evidence that he was unable to walk or that he had any limitations that would rise to the level of a disability at that time. Thus, even though the combination of Claimant's impairments may constitute a mobility disability today, he was not disabled during the requisite time.

7.     The question of Claimant's vision disability is more difficult. The records contain several notations that Claimant has bad vision and has had bad vision for most of his life. He has been found to be legally blind in the left eye. However, he has corrected vision in the right eye of 20/40 or 20/50. Pursuant to the current *Montez* criteria, if

Claimant has corrected vision in one eye of better than 20/200, he is not disabled. Thus, the conclusion must be that Claimant is not vision disabled.

8.      Claimant has failed in his burden of proof to show that he was either mobility or vision disabled during the time covered by the *Montez* remedial plan. Consequently, it is not necessary to examine the remaining elements of his *Montez* claim.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 30, 2009** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 20th day of January, 2009

BY THE COURT:

_____

/s/ Richard C. Davidson,
Special Master

# CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 20th day of January, 2009 to the following:

Robert L. Lyons
#49333
SCF
P.O. Box 6000
Sterling, CO 80751

Robert Huss, Esq.
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
/s/ Susan L. Carter