IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-162
Category: III
Claimant: Robert Schwartz, #60801
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant Robert Schwartz, DOC # 60801. This hearing began at CTCF on April 21, 2008 before Richard C. Davidson, Special Master. Mr. Schwartz appeared *pro se*. The Defendants were represented by Ms. Willow Arnold, Esq. Claimant requested a continuance at that time because he had not received adequate discovery. Mr. Schwartz requested several documents which were then sent to him by Defendants. The testimony of Dr. Orville Neufeld was taken to preserve the testimony.

During the time before the second hearing, Claimant filed motions requesting the appointment of counsel and general discovery. These motions were denied by the Special Master.

The hearing was rescheduled and again was held at CTCF on July 25, 2008 before Richard C. Davidson, Special Master. Mr. Schwartz appeared *pro se*. Defendants were represented by Ms. Willow Arnold, Esq. Claimant again requested a continuance which was denied. Claimant raised other objections to going forward, including motions for appointment of counsel, motion for the Special Master to Recuse, motion for discovery, and a motion for continuance. The Special Master denied all these motions. Finally, the hearing began. Claimant and Paula Frantz, MD testified in person; Mary Carlson, Dave

1

Teigen, and Joan Thompson testified by telephone. At the end of the testimony, the hearing was recessed because of the lateness of the hour.

The hearing was reconvened on November 17, 2008 at CTCF. Mr. Schwartz again appeared *pro se* and Ms. Willow Arnold represented Defendants. Mr. Schwartz renewed his motions which were again denied. Claimant then undertook a rebuttal of Defendant's case and introduced numerous new exhibits which were received. After Claimant rested his case, closing arguments were presented.

The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

## I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and

2

> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

3

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Robert Schwartz submitted a claim which was assigned claim number 02-496. After review, the claim was elevated and assigned claim number 03-162. The claim is premised on alleged permanent mobility and diabetic disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Schwartz first entered CDOC custody in 1989. He was released in 1992 but was brought back into custody in 1994 after a new trial. Claimant has been housed at CTCF, CCF, BVCF, DRDC, CSP, HCCC, FCF, ACC, BCCF, and in the State of Oklahoma.

4. Claimant was injured in a car accident as a young adult in the 1960's. He had low back fusion surgery at that time, but is unable to recall the level or extent of the surgery. He says he suffers from constant and worsening pain in his back and legs. The leg pain began in his right leg but now is present in both legs and is worse on the left. The right leg has pain only occasionally. In addition, Claimant's left leg is shorter than his right. He says the difference in length is 1.2 inches when it was measured by Dr. Creany. He says he was issued special shoes with a built up sole while at BCCF in 2004. However, the shoes "broke." He turned them in and never got them back. He wears several insoles in his left boot to compensate for the leg discrepancy.

5. While at DRDC in 1994, Claimant was placed on restrictions of no heavy lifting, no vigorous exercise, no prolonged standing, no squatting, no bending, and no intensive labor. He was given bottom bunk bottom tier restrictions in 2001.

6. Claimant has been given non-steroidal anti-inflammatory medications for his back and leg pain while in custody. The particular medications have been changed several times and he now takes 1000 mg of Naprosyn daily. He has taken as much as 2400 mg of Ibuprophen a day in the past. He says he is unable to walk without the use of his pain medication.

7. Claimant says that while he was at BVCF he was charged with refusing to obey a direct order to work. He says he was unable to work at that time because of his physical condition. He says he was convicted of the charge and sent to CSP. However, the records from that time show that Claimant went on a hunger strike while at BVCF and was sent to CSP for that reason. Claimant denies that he went on a hunger strike but rather was unable to get to chow to eat. He claims he has lost earned time because he has been unable to work.

8. He was admitted to the SOTP program but testified that he was not able to keep up with the younger men because of his physical limitations. He was terminated from the program. He was readmitted into the program several years later in 2007. Again, he says he was unable to keep up and was terminated. The records, however, show a somewhat different pattern. In 2001, Claimant was terminated from the program because he refused to accept responsibility for his actions and diverted responsibility and focus from himself. This pattern was repeated in 2007 resulting in his termination.

9. The testimony of Dr. Frantz and the medical records admitted show that Claimant is less disabled than he claims to be. Claimant testified that he can only walk 50 feet without resting because of his pain. Then, five seconds to one minute later, he can walk again. He can walk to chow but says he has to rest on the way. But, he admits he is able to do his activities of daily living without difficulty. The medical records show that although he has been diagnosed with degenerative disc disease, he is able to exercise and walk without difficulty. The records contain notes where Claimant has told the medical provider that he walks a mile or so three times a week (2003), that he walks an hour twice a week (2006), and that he walks usually one mile a day (2006 and 2007). He was to be transferred to a lower tier pod in 1997 but he refused to move. Back exercises have been recommended but he refuses to do them. In 2002, he was found to have no limitations. In 2007, he was given an ADA evaluation and was found to have no impairment.

10. Claimant also claims to be disabled because of having diabetes. He has been prescribed Glucophage for treatment. However, he was not diagnosed with diabetes until 2008, well past the cut off date for raising a claim in this action. Evidently, the Glucophage was prescribed as a preventative medication. The testing to determine whether Claimant had diabetes prior to August, 2003 was consistently negative. His A1C levels were at non-diabetic levels. While he had isolated higher blood sugar levels, those were not consistent enough to result in a diagnosis of diabetes. He was unable to show that he suffers from any inability or restriction because of his claimed diabetes prior to 2008.

11. Claimant has also raised issues that he suffers from a cardiac condition that could cause his death at any time, and that he has bladder cancer, both of which could impact his mobility. However, the evidence fails to show that he has either of these two conditions. No impact on his mobility can be shown.

12. At the hearing on November 17, 2008, Claimant attempted to assert a claim for hearing loss saying that his hearing is getting bad. This claim was denied as untimely raised.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

5

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Robert Schwartz has failed to prove that he is mobility disabled. While it is true that Claimant has a bad back and is often in pain, he has failed to prove that this condition substantially limits his mobility. In fact, the statements made by Claimant to medical caregivers prove that he is

6

capable of walking. Claimant does not use a cane or wheelchair to get around. He walks where he needs to go. The Special Master concludes that Claimant is <u>not</u> mobility <u>impaired</u>, the first requirement for relief. Neither does the Special Master conclude that Claimant's back pain, nor any other condition he has, substantially limits any of his major life activities. Claimant admitted that he is able to perform his activities of daily living without limitation. He walks where he needs to go and walks for exercise. Claimant has failed to prove that he is mobility disabled.

7. Claimant also claimed that he has diabetes and is disabled because of that. However, Claimant has failed to prove that he had diabetes prior to August 23, 2003. The diagnosis of diabetes is a threshold for proving disability caused by diabetes. Without this, Claimant cannot prove a disability arising from diabetes. The Special Master is forced to conclude that Claimant has no disability from diabetes.

8. Because of Claimant's lack of proof of any qualifying disability, it is not necessary to discuss the other elements of the claim. However, the Special Master will do so. The next element which must be discussed is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs, or activities because of disciplinary reasons, health reasons, or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits, and services offered by CDOC subject, however, to limitations because of his confinement at CSP or for other penological reasons such as the failure to complete the SOTP program.

8. The key element is whether Claimant was discriminated against by CDOC because of any disability. Mr. Schwartz complains that good time and earned time was taken from him because he was physically unable to work or to complete the SOTP program. The evidence, however, fails to support this claim. Claimant was not transferred to CSP because of his physical inability to work, but because of problems he was causing by his behavior. Neither was Claimant terminated from the SOTP program because of any physical failings but because of his own refusal to cooperate with the program. The Special Master concludes that Claimant has failed to prove any discrimination against him by CDOC. Claimant is, therefore, unable to recover in this matter.

## IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 30, 2009** with the Clerk of the United States District Court at the following address:

901 19th Street
Denver, CO 80294.

SIGNED this 20th day of January, 2009

BY THE COURT:

_____
/s/ Richard C. Davidson
Special Master

# CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this 26th day of January, 2009 to the following:

Robert Schwartz
#60801
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. James X. Quinn
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

/s/ Susan L. Carter