IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (Consolidated for all purposes with
Civil Action No. 96-N-343)

Jesse Montez , et al .
        Plaintiffs ,

-vs.-

Bill Owens , et al..
    Defendants .

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 20 2009

GREGORY C. LANGHAM
                    CLERK

Case Number : C-007
Category : C
Movant : Matthew Tazio Redmon
Address of Movant : CTCF , P.O. Box 1010 , Canon City , CO.
                                                          81215

MOTION FOR ENFORCEMENT OF EXISTING REMEDIAL PLAN AND FOR
ENFORCEMENT OF COURT ORDERED SANCTIONS FOR NONCOMPLIANCE

    COMES NOW , The Movant , Matthew Tazio Redmon , a CDOC
Montez Class Inmate , # 140637 , pursuant to Federal Rule of
Civil Procedure 70 (a)(e) and enters this Motion for Enforcement.
    In support of this Motion , the Movant would state the
following :

    The Movant is a party to the the Montez Class Action ,
and as such , is adversely affected by the Defendants' acts
of noncompliance . Therefore , the Movant is entitled , under
Federal Rule of Civil Procedure 65(d)(2)(A)(B)(C) , to address
the Court and to ask the Court to grant the Movant's Motion and
to grant the Relief the Movant prays for , as well as any other
Relief that the Court may deem proper and just .

    Even if the Movant could be deemed not to be a party to
the Montez Action , the Movant is still classified by the CDOC
as a Montez Class Inmate and is adversely affected by the acts
of the Defendants and the CDOC . As a third party adversely
affected by the actions of the Defendants and of the CDOC , the
under Federal Rule of Civil Procedure 71 , the Movant is still
entitled to seek enforcement of the Remedial Plan and of the
sanctions pursuant to Federal Rule of Civil Prcedure 70 and to
ask the Court to grant the Movant's Motion for Relief .

(1)

" A Federal Court has broad equitable Remedial Powers "
Swann v. Charlotte-Mecklinburg Bd. of Educ. 91 S.Ct. 1267,1275
(1971)

" The Remedy should begin with what is absolutely
necessary . If those measures later prove to be ineffective ,
more stringent ones should be considered ."
Ruiz , 679 F.2d 1145,1146

This Court has Jurisdiction and is empowered to provide
Relief and , under Federal Rule of Civil Procedure 70(e) to issue
Contempt Citations to the disobedient parties .

The Defendants and the CDOC , are in violation of not
only the Montez Remedial Plan but also , the Court ordered
sanctions for noncompliance as well . The Montez Remedial Plan
is dated August 27 , 2003 . The Defendants entered into the
Remedial Plan of their own volition . The Defendants were not
coerced , the Defendants entered into the Agreement voluntarily
and as the Agreement is an Order of this Court , the Agreement
fully qualifies as an injunction . A Judgment .

In Badgley v. Santacroce , 107 S.Ct. 955 (1987) , we see
that ," The respect due the Federal Judgment is not lessened
because the Judgment was entered by consent . When the Defendants
chose to consent to a Judgment , rather than have the District
Court Adjudicate the merits of the Plaintiff's claims , the
result was a fully enforcable Federal Judgment that Overrides any
conflicting State law or State court order . The strong policy
encouraging settlement of cases requires that the terms of a
consent Judgment .....be respected as fully as a Judgment entered
after a trial ."

In Spallone v. United States , 110 S.CT. 625,632 (1990) ,
we see that ," Federal Courts have an inherent Power to enforce
their lawful Orders through Contempt ."

" The Circuit Court's rule with regard to contempt has
long been whether the Defendants have performed ' all reasonable
steps within their power to ensure compliance ' with the Court's
Orders .
Sekaquaptewa v. MacDonald , 544 F.2d 396,404 (9th Cir. 1976)

In Hutto v. Finney , 98 S.Ct. 2565,2572 (1978) , we see
that substantial deference must be given to the District Court's
" years of experience with the problem at hand ."

This District Court now has almost 17 years of experience
with this particular " problem at hand " .

(2)

In addition to the Montez Remedial Plan , the Defendants and the CDOC are also in a state of noncompliance with the Court Ordered sanctions dated April 4th , 2008 , for the noncompliance with the Remedial Plan . These sanctions are the direct result of the Defendant's and the CDOC's noncompliance with the Remedial Plan after having almost 6 years in which to comply .Given the state of and the amount of noncompliance with not only the Remedial Plan , but the sanctions as well at this point , the Movant would state that the noncompliance must surely be a wholly voluntary action .

The Movant would now list the sections of the Montez Remedial Plan in which the Movant can personally testify that the Defendants and the CDOC are in violation of .

## SECTION IV
### DRDC : RECEPTION CENTER PROCESSING

When a Deaf or hard-of-hearing Inmate takes the T.A.B.E. test , or any of the other intelligence tests , there is no Sign Language Interpreter present to explain these tests . Hence ,the Deaf Inmate has no real understanding of the tests or of the implications of the tests. Not having a Sign Language Interpreter present at these tests is discrimination of the worst sort . This is akin to giving English speaking Inmates tests that are written in Russian . A Deaf Inmate taking written tests in English , or in any other Language , without an Interpreter , has no hope of establishing the exact level of intelligence that they might possess because Deaf people do not speak English , or any other written Language . The Deaf " speak " Sign Language .

## SECTION VII
### SUBSECTION - A.3.
### COLORADO TERRITORIAL CORRECTIONAL FACILITY

The pill dispensing area does not have an ADAAG compliant drinking fountain . The pill dispensing area has a stainless steel sink which the CDOC leaves the water running in for Inmates to fill Dixie cups with water .
The two toilet rooms in the C.T.C.F. kitchen area are not ADAAG compliant . There is not a 5 foot turning area for a wheelchair in either toilet area . The sinks are too high off the floor for a person in a wheelchair to use without great unease . In fact , only one of these toilet areas is available for Inmate use , and that area has few amenities for the Handicapped .

The following issues were grieved by the Movant in grievance #D-CT07/08-471 , also EXHIBIT A .

The CDOC maintains cells with strobe alarms for Deaf Inmates at C.T.C.F. , however , the officials at C.T.C.F. do not keep these strobe lighted cells accessible for the Deaf and/or hard-of-hearing Montez Inmates . When a Deaf and/or hard-of-hearing Inmate arrives at C.T.C.F. , the Inmate must wait in Cellhouse #5 , in a section known as A&O on 21± hours a day lockdown for a bed to open . A bed which will most assuredly have an Inmate in it that is not a Montez Inmate and is certainly not Deaf and/or hard-of-hearing Inmate . This might possibly be acceptable were it not for the fact that Cellhouse #5 contains not even a single cell which contains a strobe alarm .This means that when a Deaf and/or hard-of-hearing Montez Inmate is brought to C.T.C.F. , that Inmate must first wait for weeks or possibly months for a bed and until this Inmate receives a strobe lighted cell , they are housed in cells which are in direct violation of the Court Ordered sanctions .

The Movant has his own personal experience with being housed in Cellhouse #5 and in Cellhouse #3 in cells with no strobe alarm . On December 18th , 2008 , the Movant was placed in Cellhouse #3's punitive segregation section . The movant had not been charged with an infraction prior to this placement , nor did the Movant receive a disciplinary hearing prior to the placement . The movant was housed in a cell containing no strobe alarm for 8 days . The Movant was then relocated to Cellhouse #5 where he was housed for another 11 days in another cell with no strobe alarm . The Movant was eventually charged with a rule infraction and these charges were dropped .(see EXHIBIT B) This housing of the Movant is contrary to response the Movant had received in Grievance #D-CT08/09-22 . (see EXHIBIT C) The housing of the Movant is in violation of the sanctions . This housing was done in violation of the Movant's 14th Amendment right to Due Process .Possibly in violation of the Movant's 8th Amendment rights and the U.S. Supreme Court decision in the case of Wolff v. McDonnell , 94 S.Ct. 2963 (1974) . The Movant again reiterates that these violations were not done due to lack of available bedspace , they were done because the officials tasked with the housing assignments simply have no respect for the decisions of this Court .

The final paragraph of Section VII states that , " a determination will be made whether the structural accessibility to the maximum extent feasible is warranted , in view of budgetary and penological considerations ." ..." in view of "....  The Movant is reminded of Hamilton v. Love , 328 F.Supp. 1182 , E.D. Ark. (1971) which states , " inadequate resources are never an adequate justification for depriving any person of his Constitutional Rights ." The Movant is further reminded of Battle v. Anderson , 564 F.2d 399,400,401 (10th Cir. 1977) in relation to government finances .

## SECTION VIII
### SUBSECTION - \A.
### ADMINISTRATIVE/PUNITIVE SEGREGATION UNIT
### (ASU/PSU)

The Movant has previously touched on this subject . The Movant would reiterate the fact that C.T.C.F. officials routinely place Deaf Inmates in ASU/PSU cells that contain no strobe alarms . The Movant personally knows of at least 3 Deaf Inmates that have been housed in these cells since the Court ordered the sanctions against the Defendants on April 4th, 2008 . The ASU/PSU cells are located in Cellhouse #3 and the A&O cells which also have no strobe alarms are located in Cellhouse #5 .

## SECTION X
### REASONABLE ACCOMMODATIONS
#### A. - GENERAL

" Inmates who have disabilities as defined herein shall be provided reasonable accommodations....." Does the Movant understand correctly ? Are the Defendants and the CDOC allowed to pick and choose which ADA eligible Inmates they will accommodate ?

" Examples of reasonable accommodations include ....... qualified Sign Language Interpreters . " At C.T.C.F. , the Sign Language Interpreters are only available at the convenience of the CDOC . These interpreters are not available at the need of the Deaf and/or hard-of-hearing Montez Inmates , and , a Legal Interpreter may take , and has taken , months to actually get on site .

" An Inmate may submit a request for accommodation....... the Casemanager , in conjunction with the A.I.C. , will decide within 30 days whether to grant the request . "
A Casemanager has little or no influence in these decisions and the notion that the Office of the A.I.C. , or that A.I.C. personnel , will render any decision , on any subject , within 30 days is simply laughable . The Movant submitted his Request for Accommodation on March 19th , 2008 and recieved a back-dated Temporary Accommodation on April 1st , 2008 . (see EXHIBIT D) On , or about , September 17th , 2008 , the Movant received a Permanent Resolution which was back-dated August 15th, 2008 . (see EXHIBIT E) . This time span hardly qualifies as " 30 days " .

#### B. - EFFECTIVE COMMUNICATION
#### 1. - GENERAL

This subsection states , in part , " reasonable accommodations shall be provided Inmates with disabilities to ensure effective communication with Staff , and where applicable, other Inmates and the Public . "

(5)

The key words here are , " to ensure effective communication " ......." EFFECTIVE communication "

The Movant would ask the Court to please bear these words in mind throughout the remainder of this Motion .

The subsection further states that hearing aids will not be counted as personal property . Does the Movant understand correctly that Inmates will only need these items while he/she is incarcerated ? In EXHIBIT E (the Movant's own property list) , it can be seen that the CDOC has indeed listed the hearing aids and the vibrating watch given to the Movant as per the April 4th, 2008 sanctions . It can also be seen that CDOC has listed these items as " facility specific " items . This certainly seems to imply that these items will be taken from the Movant should he be moved from or released from the facility .

The subsection continues with , " Sign Language Interpreters will not be denied because of the cost of services . Interpreters will be contacted to assist Inmates when necessary . " Again , Sign Language Interpreters are only used at the convenience of CDOC , not at the need of the Inmates .

### B.4. - QUALIFIED INTERPRETERS

" DOC shall maintain a contract with Sign Language Network , or its equivalent , to ensure that interpreter services are provided as necessary . " ...." effective communication "... Since the CDOC security staff do not know , understand and use Sign Language , then is " when necessary " not all the time ?

### B.5. - EQUAL ACCESS

" Reasonable accommodations shall be made to ensure equal access for Inmates with disabilities ..... to all other programs, benefits and services at DOC . " The Movant can only assume that this would include the Law Library . The Movant has previously , in this Motion , described the Deaf and/or hearing impaired Inmate's struggle with the written English word . Can the Court please try to understand the massive confusion that the average Deaf and/or hearing impaired Inmate must experience when he/she attempts to try understand the terminology of the legal system ? If the CDOC takes months to get a Legal Interpreter for a disciplinary hearing , then can the Court imagine the wait that an Inmate must through to get a Legal Interpreter when the CDOC is not attempting to punish these Inmates ?

The majority of Deaf Inmates do not even understand their sentences , can the Court imagine attempting to tackle very complicated Appelate legislation without a Legal Interpreter ?

## SECTION XII

The section states , in part , " The Inmate may use the grievance process as follows : " ............

The Movant can personally testify that the grievance process is sub-par .

Grievance forms are not in a triplicate format . An Inmate has no way to prove that their grievance was actually filed . An Inmate has no way to prove that a grievance was actually submitted should a grievance become lost , destroyed or simply go unanswered . (see EXHIBIT G)

The person or department being grieved is the person or entity that decides if the grievance is a viable issue .

The very officials who are the driving resistance of compliance with the Remedial Plan are deciding that they do not wish to be grieved . These officials are making decisions about all grievances , not just ADA grievances .


## SECTION XV
### C. - TRAINING REGARDING HEARING IMPAIRMENT ISSUES

" During the compliance period of this Plan , and at regular intervals thereafter , Sign Language Network will provide training to the medical and non-medical staff at each of the designated facilities regarding communication with and the cultural awareness issues concerning Inmates with hearing impairments . "

Deaf Inmates communicate through Sign Language . They are incapable of communicating or conversing in a verbal language and a written Language such as English , is equally unacceptable . Therefore , it must go without hesitation that all CDOC Staff must learn to converse in a Language that a deaf Inmate is capable of utilizing ......Sign Language ......

" To ensure effective communication "

Not only does almost no CDOC employee or contract worker use or understand Sign Language , but they are certainly not being trained to know , use or understand the Language either . In fact , a plan has been hatched by CDOC officials in which hearing Inmates would act as " interpreters " between Deaf and/or hearing impaired Inmates and staff . These " interpreters " will be known as " town criers " or as " OCA's " and would handle all official and unofficial communication between staff and Deaf Montez Inmates . In this way CDOC officials hopes to avoid having to train staff in Sign Language . They hope to avoid having to flash the cellhouse lights as required in the Facility Handbook under the section " housing " . (see EXHIBIT H)

G. - TRAINING VERIFICATION

If the CDOC is not doing the training necessary to accommodate affected Inmates , and they are not , then how can there possibly be any " training verification " ?

SECTION XVI
C. - POSSESSION OF HEALTH CARE APPLIANCES

This subsection states , in part , " health care appliances shall be documented as the property of the Inmate or DOC and appropriately identified as such , .....; However , they shall not be included in the volume limit for personal property established . " The Movant has entered his own personal property list as EXHIBIT F .

The main issue with this section is : Whose property are the Movant's hearing aids ? Whose property is the Movant's vibrating watch ? Whose property are any of the health care appliances in any Inmate possession ?
Why does the Montez Remedial Plan contain such conflicting language ? .....Section X,B.,1. vs. Section XVI,C.

SECTION XVIII
A. - ORIENTATION AT PLACEMENT FACILITY

The subsection states that Montez class Inmates will receive an Orientation that will " provide relevant information regarding the accommodations.......available to the Inmate . " This is not Happening . The Movant will testify under oath that he has given an Orientation to no less than 2 Deaf Montez and/or hearing impaired Inmates . The Movant is employed in the C.T.C.F. kitchen as a cook and has nothing to do with the events that are supposed to occur at Intake . The Orientation is not provided by casemanagement . When it is provided , it is provided by staff at Intake in the form of EXHIBIT H and EXHIBIT I .

B. - NOTICES , ANNOUNCEMENTS , AND ALARMS
1. - WRITTEN AND/OR RECORDED MATERIALS

" Each Facility will adopt an Implementation/Adjustment (IA) or an Operational/Memorandum (OM) that identifies a position that will be responsible for providing assistance and equipment necessary to all Inmates with disabilities ...... " The IA is known as #750-4A , also as EXHIBIT H . However , there is no such position or person . The Movant has stated that the CDOC hopes to fill this position with an Inmate that hear and thereby avoid compliance again .

(8)

## 2. - VERBAL ANNOUNCEMENTS/ALARMS

" Each facility will adopt an Implementation/Adjustment (IA) or Operational/Memorandum (OM) that Identifies a position that will be responsible for ensuring that effective communication is made with Inmates with disabilities regarding public address announcements and reporting instructions , including those regarding visiting , yard release and recall , count , lock-up , unlock , etc. " Again , the (IA) for this is known as #750-4A , also as EXHIBIT H .

The Movant has explained that the CDOC will attempt to fill this position with an Inmate . This would mean that one Inmate would be responsible for passing on all of this information not only correctly , but in a timely fashion as well.

In effect , this would place the Inmate in the position to control the Deaf or hard-of-hearing Inmate .

In EXHIBIT I , it can be seen that this is contrary to clearly established policy , IA #850-1 .

### SECTION XIX

" custody staff for each housing unit to which Inmates disabilities are assigned will be made aware of the Inmate's disabilities and how to accommodate the special needs of those Inmates . "

At C.T.C.F. , there are Inmate Identification boards that display each Inmate's name and number . Some Montez class Inmates are identified on these boards and some are not .

It is the Movant's contention that all Montez class Inmates need to be clearly and easily identifiable at all times . The Movant further contends that Montez Inmates should be identified as such on their name badges and on their ID. cards . That Deaf and/or hard-of-hearing Inmates should be easily identifiable as such on all of the name boards , name badges and ID. cards .

### SECTION XXII
RESTRAINTS

" Inmates who have a disability that prevents the application of restraint equipment in the ordinarily prescribed manner shall be afforded reasonable accommodation........ mechanical restraints shall be applied so as to assure effective aplication while reasonably accommodating the Inmate's disability . "

The Movant has previously described the handcuffing procedures currently in use by the CDOC to the Special Masters , and to the Class Counsel , Paula Greisen . The Movant would now describe these procedures for this Court .

(9)

## HANDCUFFING

(1) - The Inmate is stripped naked , searched and made to wear a humiliating orange jumpsuit and boots without laces .

(2) - The Inmate's ankles are chained together , approximately 16 - 18 inches apart . This makes running or climbing steps a virtual impossibility .

(3) - The Inmate's hands are placed in traditional handcuffs which are then placed in a black box and secured in the box with a padlock . This box assembly prevents any and all wrist movement .

(4) - The handcuff/black box assembly is then secured to the Inmate's waist via a chain that wraps around the Inmate .

(5) - The Inmate is then placed in the transportation vehicle behind a plexiglass shield which separates the Inmate from the security staff and located to the rear of the security staff . Out of sight , out of mind .

Obviously , a Deaf and/or hearing impaired Inmate is not going to be doing any kind of " effective communication " with anyone under these conditions
The Deaf inmate is effectively bound and gagged hand and foot .
This is an unbelievably egregious violation of not only the Montez Remedial Plan , but also of common decency .

The Inmates , the Deaf and and/or hard-of-hearing , " speak " using Sign Language . They cannot "speak" to anyone under these conditions . Not to the CDOC staff , not to the medical staff ,not to a qualified Interpreter . There is no qualified Interpreter in attendence , but if there were , the Inmates would not be able to have any type of communication with them .

Let alone " effective communication " .

In Battle v. Anderson , 564 F.2d at 403 (10th Cir. 1977) , the Court states , " we believe that an Inmate .....is entitled to be confined in an environment which does not result in his degeneration or which threatens his mental and physical well-being . "

The Movant would point to the CDOC's handcuffing .

In grievance #D-CT08/09-23 , also EXHIBIT J , the Movant attempted to grieve these issues .

(10)

Again , these handcuffing procedures are not only a violation of the Montez Remedial Plan and an affront to human decency , but may in fact be a violation of the 8th Amendment to the U.S. Constitution as well .

If the binding and gagging of Deaf and/or hard-of-hearing Inmates is allowed and becomes the norm , then how much longer until the binding and gagging of all prisoners , both convicted and pre-trial detainees , becomes common practice in America ?

### SECTION XXIV
### TRANSPORTATION

" the special needs of Inmates with disabilities shall be accommodated during transport . "
This Motion has described the CDOC's handcuffing procedures .
This Motion has described how the CDOC staff are required to know , use and understand Sign Language , but do not .
This Motion has described how there are routinely no qualified Interpreters present for Deaf and/or hard-of-hearing Inmates to converse through to achieve effective communication .
These deficiencies are even more of an issue during the transport of these Inmates .

The transportation staff is in the front of the vehicle .

The bound and gagged Inmate is in the back of the vehicle .

What does the Inmate do in the case of a medical emergency during transport ?

Out of sight , out of mind .

### SECTION XXIX
### COMMUNITY CORRECTIONS

" Inmates with disabilities will not be excluded from referral to the Community Corrections Program (CC) based solely on their disability . "

It is the Movant's understanding from conversations with CDOC staff , that the Agencies who are responsible for accepting Inmates with disabilities into the (CC) programs routinely deny these Inmates as " too labor intensive " .

Especially the Deaf and/or hearing impaired Inmates .

Community Corrections facilities are not equipped to handle Deaf and/or hearing impaired Inmates and so , these Inmates are discriminated against based on other reasons so that these facilities do not have to make themselves available to the Inmates .

The Movant would now address specific issues from Document #3326 , the sanctions Order dated April 4th , 2008 .

In section B. , the Document states , in part , " the remedies outlined below shall be implemented ...... these remedies are not a checklist for compliance , but are sanctions for CDOC's noncompliance . "
The Document further states , " The following remedies shall be implemented for the failure to achieve substantial compliance with the Remedial Plan by the required date of July 27 , 2007 . "

In grievance #D-CT07/08-472 , the Movant grieved every single item , numbers 1-36 , as not being done . This grievance was filed past any date specified by the Document as a time frame for compliance with the sanctions . ( see EXHIBIT K )

In EXHIBIT L , The Court will see that the Movant wrote a series of letters to the Office of the A.I.C. .....The Court will find that EXHIBIT L is a response to the Movant fron the A.I.C. in relation to these letters .

DOCUMENT #3326

#2. - " CDOC will provide long-lasting batteries for hearing aids . " In EXHIBIT L , the A.I.C. believes that this has been done . It has not . The Movant would testify that the batteries being distributed have a working life of 3 to 4 days maximum . This hardly qualifies as long-lasting .

#5. - " CDOC will add American Sign Language classes as a program offered by CDOC to Inmates identified as hearing impaired or disabled . " The Movant has already contacted Counsel for the Class , Paula Greisen , and provided her with the form that the CDOC is issuing describing all the restrictions that have been placed on Inmates in order to qualify for the classes .
The CDOC is attempting to only give the classes on a sporadic basis , not as a full time program .
The sanctions restricts the classes to Deaf and/or hearing impaired Inmates . Yet , the Remedial Plan , in Section X B.1. , states , that accommodations shall be made to ensure effective communication with other Inmates . If only the Deaf and/or hearing impaired Inmates are allowed to participate in these classes , then how will the other Inmates ever learn any Sign Language ? These classes need to be made available to all Inmates . Anything less is discrimination and a violation of the Montez remedial Plan .

#17. - "All hearing impaired Inmates who are housed at Colorado Territorial Correctional Facility shall be housed in cells with strobe alarms and CDOC will provide the same proportional number of single cells with strobe alarms as is available to Inmates without hearing impairments . Any hearing impaired Inmate who is currently housed in a single cell without a strobe alarm shall have his/her cell immediately furnished with a strobe alarm . "

In this Motion , the Movant has already touched on the issues raised in #17. of the Document . However , the Movant would further expound the subject momentarily .

The CDOC has no single cells available for Deaf and/or hard-of-hearing Inmate unless these Inmates are confined to a wheelchair . The CDOC refuses to provide any Inmate who is not wheelchair restricted with a single cell , except in very rare cases .

#18. - " CDOC shall immediately provide vibrating watches to all Inmates with hearing impairments or disabilities . "

On this Issue , the Movant requests clarification . A hearing impairment and a hearing disability are the same affliction . Does the Court intend that all disabled Inmates receive a vibrating watch ?

#19. . _ " Within 90 days of the date of this Order , CDOC shall offer SOTMP Phase II at a designated facility that is comparable to the program currently available at Arrowhead Correctional Facility . "

Not only has this not been done within the 90 day period , it has not been done at all in a way that would allow the Deaf and/or hearing impaired Inmates who have an SOTMP requirement as part of their sentence to participate in these programs .

CDOC staff has assured the Movant that C.T.C.F. is the flagship facility for Deaf and/or hearing impaired Inmates and yet , CDOC has not instituted this Phase II program at C.T.C.F. so that these Montez Inmates can participate and complete the court-ordered requirements of their sentences .

#32. - " CDOC will post ....a notice through the duration of the compliance period ......posting willbe placed in common areas and dayrooms.......within 45 days after entering this Order ........information contained in this notice will be made in accessible formats to accommodate Inmates with vision impairments . "

The notices are not posted in the dayroom areas at C.T.C.F. , they are in the stairwell areas .

The notices were not posted within the 45 day time period . See EXHIBIT L , wherein the A.I.C. states that the notices were not even available until early July , 2008 .

The notices aren't in an accessible format for Inmates with vision disabilities . The font size is somewhat less than desirable for the vision impaired and the notices are not printed in Braille to accommodate the Blind .

The Movant would point out to the Court as well that all Montez Inmates do not speak and read the English Language . How are these Inmates to be accommodated with the sanction information when they cannot read it for themselves ?

#34. - " The terms of this Stipulation do not preclude the Plaintiff Class from seeking other remedies associated with an assertion of noncompliance with the Remedial Plan by the CDOC at any future hearing by the Court . "

The Movant believes that he has presented this Court with more than ample reason to include the Movant as a member of the Plaintiff Class , in this Motion , as well as in the Objection to the Order of the Special Master , dated September 1st , 2008 , which the Movant submitted to this Court and which the Court has yet to render a decision on .

Having submitted all of the above evidence and having shown that he's indeed entitled to seek remedy , the Movant would now ask the Court to grant relief in the nature of further sanctions against the Defendants and the CDOC officials who are responsible for achieving compliance with the Remedial Plan .

The Movant would request the Court Order that CDOC policy in the form of IA #750-4A , also EXHIBIT H , be entered as a permanent sanction . The Movant has grieved issues contained in EXHIBIT H as grievance #D-CT08/09-264 , see EXHIBIT M .

The Movant would ask that the Court note that in Section V.A.2. of the Remedial Plan , the Plan states that Inmates who have a hearing loss so severe that they must rely on written communication , lip reading or signing are eligible . Deaf Inmates need to not be required to use written communication as a means of communication and , 90% of the Deaf in America do not read lips .

In section XII of the Remedial Plan , the Plan details the grievance procedure for an ADA grievance . The Movant would submit grievance #D-CT08/09-157 , also EXHIBIT N , as proof that the CDOC does not answer these grievances within the time frame specified .

The Movant would ask that the preceeding paragraphs of this Motion and all paragraphs from this point on in the Motion be considered as the Relief and Remedy that the Movant seeks .

The Movant requests that the words " substantial compliance " be stricken from the Plan and sanctions, past and future , and that the words " complete compliance " be the standard for compliance from this date forward .

The Movant would ask that all previous sanctions be enforced as a condition of complete compliance , as well as all of the sections of the Remedial Plan .

The Movant would now request that the Court consider the following as further sanctions against the Defendants and the CDOC .

(1) - That all Montez class Inmates receive a vibrating watch , regardless of the Inmate's actual disability . That all these Montez Inmates receive the watches within 60 days of the Order from this Court and that these watches be given to these Inmates under the same conditions that the vibrating watches were given to the Deaf and/or hearing impaired Inmates .

(2) - That the CDOC provide Sign Language classes year round to all CDOC Inmates , Montez class or not , and that the CDOC provide these classes without conditions or restrictions to any Inmate .

(3) - That CDOC will provide office space immediately for qualified Sign Language Interpreters on site at all designated facilities , so that these Interpreters will be available as needed by the Inmates when necessary .

(4) - That the CDOC enroll all CDOC staff and contract workers that are now or may ever in the future , come into contact with Deaf and/or hearing impaired Inmates , in Sign Language classes within 90 days of the Order from this Court . And that all of the personnel enrolled in such classes be required to take and pass the Sign Language Proficiency Communication Interview , and receive extra pay for this ability . - source: Texas DOC

(5) - That all Sign Language Interpreters be rated as no less than a Level III Interpreter . - source: Texas DOC

(6) - That the CDOC submit for approval to the Court in 90 days, plans for new toilet facilities in the C.T.C.F. kitchen and begin construction on these new toilet facilities within 180 days of the Order from this Court .

(7) - That the CDOC immediately begin mandatory screening of all Inmates for Montez class qualifications at the Denver facility known as D.R.D.C. and submit the appropriate Documents requesting approval or denial to the Office of the A.I.C.. forthwith .

(8) - That the CDOC immediately begin recognizing every Inmate's disability that qualifies an ADA disability and immediately include these ADA qualifying Inmates in the Montez class Inmate classification . The Movant has personally encountered numerous CDOC Inmates who are ADA qualified that the CDOC refuses to recognize as a disabled Inmate because the afflictions these unrecognized Inmates suffer from are not specifically named in the Montez Remedial Plan . The Movant questions how CDOC officials can possible conceive of themselves as being exempt from legislation enacted by the U.S. Congress .

(9) - The movant has previously , in this Motion , cited
Battle v. Anderson , 564 F.2d at 403 (10th Cir.1977) , in which
the Court stated , " we believe that an Inmate ...is entitled to
be confined in an environment which does not result in his
degeneration or which threatens his mental and physical
well-being . "
The CDOC has made extensive use of the word " offender " when
addressing or referring to Inmates . This word " offender " is
not only derogatory , but conjures up images of resurgent
ignominy on the part of Inmates . This Court must surely be able
to empathize with the plight of Disabled Inmates under these
conditions .
These Inmates are , and have been , for most of their lives , the
object of derision in the eyes of others . The perfunctory use of
words , such as " offender " , is scurrilous given the fragile
mind-set of most Disabled Inmates . The Movant would state that
such turpitude in relation to the mental well-being of these
Montez class Inmates must end immediately .
" Inmate " is the preferred term and the Movant would ask this
Court to Order the CDOC to cease the use of the word " offender "
when referring to Inmates , and return to the use of the word
" inmate " when addressing or referring to such .

(10) - The Movant would ask that this Court Order that the CDOC
never again house Deaf and/or hearing impaired Inmates in any
cell , in any area , for any amount of time or reason unless
the cell or area has a functioning strobe alarm ..
And that the Court command the Defendants and the CDOC to
immediately install such strobe alarms in every cell and area ,
in every facility in which the CDOC may attempt to house Deaf
and/or hearing impaired Inmates .

(11) - That the CDOC immediately acknowledge its bounden duty
to Inmates with SOTMP requirements in their sentences and
adhere at once to Court ordered sanctions requiring the CDOC to
offer SOTMP program at a designated facility . The Movant would
ask that the " designated facility " be the facility known as
C.T.C.F. , so that Deaf and/or hearing impaired Inmates can
have equal opportunity to access this program , and that this
Court issue an Order to the CDOC to implement this SOTMP Phase II
program at C.T.C.F. within 30 days of the Order .

(12) - That the CDOC recognize that all Montez class Inmates are
indeed Members of the Plaintiff Class and treat these Inmates
accordingly .

(13) - That to prevent any further perfidy on the part of the
Defendants and the CDOC , all Montez Inmates , whether in the
custody of the CDOC prior to August 27 2003 , or not , be
permitted to file Claims for Damages in this Court against the
Defendants and/or the CDOC officials responsible for compliance
and for the transgressions of the same against the Inmates .

(14) - That the CDOC implement formal Orientation Classes at every CDOC facility immediately and that these Orientation Classes include the use of Sign Language Interpreters to accommodate Deaf and/or hearing impaired Inmates .

(15) That The CDOC immediately permanently attach Braille identification plaques to every applicable door in every CDOC facility or contract facility that the CDOC may ever use .

The Movant would again point to the length of time that the Defendants and the CDOC have sought to evade responsibility for their actions and to the amount of effort that they have expended on their own behalf to avoid the admittance of their culpability when they could have easily acceded .

These self-serving officials of the State of Colorado have elevated themselves to a level of self-importance that is almost beyond comprehension .

Under the guise of carrying out the wishes of the People of the State of Colorado , these officials have cost this same population untold amounts of revenue that could have been used to truly benefit the same and that these officials would have certainly curtailed the use of toward court costs by the act of compliance .

If these officials would utilize their many talents toward compliance and not let their personal tendentious desires intrude on their professional responsibilties to this Court and to the People they claim to serve , compliance could be achieved momentarily .

The CDOC has become an overblown , overrepresented Bureaucracy consisting of self-proclaimed overworked and underpaid Bureaucrats producing little or no identifiable work-product , that is long overdue for an overhaul and the officials propagating this attrocity have failed not only the Public they claim to be serving , but the inmates that these same officials have been tasked with the care and supervision of .

For these reasons and actions alone , the Defendants and CDOC officials , from Lieutenants to the Director of the CDOC , should be held in contempt .

Had these officials been in charge of a corporation and acted thus , the attorneys fees would have been an amassed fortune . Instead , these officials have had the benefit of the services of the State Attorney General , at even further unknown costs to the People of the State of Colorado .

The Movant prays that this Court will not allow the Defendants in this Action to prolong the Action for the amount time the Defendants did in Morales Feliciano v. Hernandez Colon , 704 F.Supp. 16 (D.P.R.)

The Movant would daresay that compliance would appear undeniably less costly than the mountainous attorneys fees that the Defendants and the CDOC must now be experiencing after nearly 17 years of legislation .

The Defendants and the CDOC would seek to divert the Court's attention from the majority of the Remedial Plan that they have not complied with by pointing to the miniscule that they have .

The modus operandi of the CDOC , for all intents and purposes , is evidently none other than the status quo with a strong longing for the prior status quo .

For these reasons , and for the reasons outlined in the following Caselaw , the Movant would now discuss Contempt in the nature of Citations and daily fines equal to the Defendants' and CDOC officials daily salaries .

In Newman v. State of Alabama , 683 F.2d 1312 , it may be seen that , " at oral argument , counsel for the State suggested that an adjudication of contempt would never be an appropriate remedy because the State had made a good faith effort . The Supreme Court long ago disposed of this contention,"

In McComb v. Jacksonville Paper Co. , 69 S.Ct. 497,499 (1949) , " The absence of wilfulness does not relieve from Civil contempt . Civil contempt is a sanction for noncompliance with the Orders of the Court and is used to compensate for losses or damages sustained by reason of noncompliance ...... since the purpose is remedial , it matters not with what intent the defendant did the prohibitted act . "
   "An act does not cease to be a violation merely because it may have been done innocently . "
   " The measure of the Court's power in Civil contempt proceedings is determined by the requirements of full remedial relief . "
   " Whatever the Court must do to enforce compliance is allowed . "

In Hutto v. Finney , 98 S.Ct. , 2565,2573 (1978) , it can be seen that , " while a Federal Court is always reluctant to incarcerate a State official , if that official is in contempt there can be no doubt of the Court's authority to do so , as state officials are not above the law . "
   " Civil contempt may ..... be punished by a remedial fine , which compensates the party who won the injunction for the effects of his opponent's noncompliance .... if a State official refuses to adhere to a court order , a financial penalty may be the most effective means of insuring compliance."

(18)

In the EXHIBITS contained in this Motion and from the Motion itself , the Movant can only pray that this Court will acknowledge that the Plaintiff Class has been , and will continue to be irreparably injured by the actions of the CDOC officials responsible for compliance and by the actions of the Defendants unless this Court grants the Relief sought by the Movant and ends the conduct of these Defendants and individual officials .

RESPECTFULLY SUBMITTED ,

Matthew Tazio Redmon , #140637
CDOC
C.T.C.F.
P.O. Box 1010 - CH7
Canon City , CO.  81215 - 1010


I declare under penalty perjury that the foregoing is true and correct on this day of execution .

Executed this 11th day of January , 2009 , at Canon City , Colorado .

EXHIBIT " A "

DC Form 850-04A (07/01/07)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CTCF/08-471**     STEP (Circle One) **1** 2 3     ADA? Yes ✓ No ☐

NAME **MATTHEW REDMON**   DOC NO. **140637**   FACILITY **C. T. C. F.**

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

THIS IS ON CELL ACCOMMODATION. DEAF INMATES, MYSELF INCLUDED, MAYBE I SHOULD SAY - DEAF AND/OR HARD OF HEARING... THESE INMATES ARE TOTALLY RESTRICTED TO RESIDENCE IN CELLHOUSE #7. CELLHOUSE #1 HAS STROBE LIGHTED CELLS, BUT ADMINISTRATION REFUSES TO MOVE US TO THEM. THEY HAVE HEARING INMATES IN STROBE LIGHTED CELLS, THEY HAVE DEAF INMATES IN CELLHOUSE #5 WHILE HEARING INMATES HAVE THE BEDS FOR THOSE DEAF INMATES. THIS IS SIMPLY UNACCEPTABLE.

DATE: 6/09/08   OFFENDER SIGNATURE Matthew Redmon   #140637

DATE RECEIVED: 6/19/08   RESPONDING DOC EMPLOYEE, CONTRACT WORKER OR VOLUNTEER SIGNATURE & ID
RESPONSE

**SEE ATTACHED RESPONSE**

**Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722**

7-21-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.
DATE: 7/8/08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER OR VOLUNTEER ID #
RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:
DATE: 6/12/08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER OR VOLUNTEER ID # Connie Higgs 6165 Disability
RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.
DATE: 7/28/08   OFFENDER SIGNATURE/PRINT NAME & DOC # #140637

RECEIVED JUN 16 2008
Office of Correctional Legal Services

AB 6-9-08

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)
Attachment "A"
Page 1 of 1

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:     719.226.4249



Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Response to Step 1 ADA Grievance
From:  Adrienne Jacobson, Legal Assistant, Designee
       Office of the AIC (ADA Inmate Coordinator)
Received Grievance: June 16, 2008
Sent Response: July 21 , 2008
Offender Name: REDMON
DOC No: 140637
Facility: CTCF
Grievance No: D-CT0708-471

Aristedes W. Zavaras
Executive Director

---

**YOUR DISABILITY DETERMINATION IS STILL PENDING.**
**In the grievance referenced above, you allege the following:**
5.  That CTCF is not in compliance with Stipulation #17 in the April 4, 2008 Stipulation order.

**Requested Relief/Remedy:**
1a. you do not list any relief or remedy.

## FOLLOWING A THOROUGH INVESTIGATION INTO YOUR ALLEGATIONS, I OFFER THE FOLLOWING EVIDENCE THAT WAS CONSIDERED IN REACHING A DECISION:

1.  Stipulation #17 states, in part, "All hearing impaired inmates at CTCF shall be housed in cells with strobe alarms", it is my understanding that this issue has been resolved and that you are currently housed in a cell with a strobe alarm.

9.  Your disability determination is still pending, according to AR 850-04, in order to be classified as an ADA grievance, the subject matter must be based on 1) a denial that an offender has a qualifying disability, 2) the failure to accommodate a qualifying disability, 3) failure to provide an accommodation enumerated on an accommodation resolution or 4) other matters that directly relate to an offender's disability. Additionally, according to AR 850-04, "if the (ADA) screening process is incomplete and the *offender has not received an accommodation resolution* from the AIC, the grievance may be denied on procedural grounds without prejudice.

2.  Our office is still awaiting the final determination of your disability status based on the screening conducted on March 19, 2008 and subsequent audiologist report on May 19, 2008. You were screened for a hearing disability. As soon as our office receives confirmation of your disability status from the Chief Medical Officer, an accommodation resolution informing you of the result of your screening and what, if any, accommodations you require will be forwarded to you.

**CONCLUSION:**
I have fully investigated this matter and found that in addition to having been filed prematurely under AR 850-04, your allegation of non-compliance has been remedied at this time rendering the matter moot and leaving no further redress to be offered. As such, this grievance is denied on procedural grounds without prejudice.

**GRIEVANCE DENIED.**

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CTO7/08-471     STEP (Circle One)   1 (2) 3     ADA?   Yes X   No ☐

| NAME Matthew Redmon | DOC NO. 140637 | FACILITY C.T.C.F. |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

THE RESPONSE TO MY STEP 1 OF THIS GRIEVANCE DOES NOT EVEN BEGIN TO ADDRESS THE ISSUE I DESCRIBED. MY RESOLUTION MUST BE APPROVED, I HAVE RECEIVED MY HEARING AIDS. SO THAT EXCUSE IS MOOT. NOW !!! I HAVE GRIEVED THE FACT THAT THE AUTHORITIES AT C.T.C.F. HAVE ADA BEDS WITHOUT ADA INMATES IN THEM. THEY REFUSE TO ACCOMMODATE INMATES WITH ADA ISSUES BY SAYING THEY HAVE NO BEDS WHEN THEY DO HAVE BEDS, THEY JUST HAVE NON-ADA INMATES IN THE BEDS. I CAN GUARANTEE YOU THAT NO INMATE HAS BEEN IN A STROBE ALARM CELL SINCE 7/02/08 BECAUSE CDOC HAS ACTUALLY DISABLED THE ENTIRE STROBE ALARM SYSTEM !! I WANT THESE STROBE ALARM CELLS RETURNED TO ADA INMATES.

| DATE: 7/28/08 | OFFENDER SIGNATURE _____ | #140637 |
|---|---|---|
| DATE RECEIVED: 8/8/08 | RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & DOC # | |

**RESPONSE**

*Please see attached response.*

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 9/10/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # _____ #1550 |
|---|---|

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

| DATE: 8/5/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER OR VOLUNTEER ID # Cheree Connatigg 6163 Disability |
|---|---|

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections to this grievance.

| DATE: 9/19/08 | OFFENDER SIGNATURE/PRINT NAME & DOC # 140637 |
|---|---|

Original: Department File/AIC     Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

AB 730-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:  719.226.4249

Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

| | |
|---|---|
| Response to: | Step 2 ADA Grievance |
| From: | Gary Golder, Director of Prisons |
| Through: | Anna Cooper, Designee |
| Received Grievance: | 8/8/2008 |
| Sent Response: | 9/10/2008 |
| Offender Name: | REDMON, Matthew |
| DOC No: | #140637 |
| Facility: | CTCF |
| Case No. | D-CT07/08-471 |

Offender Redmon:

Your ADA Step 2 grievance was received on August 8, 2008.  In accordance with AR 850-04 Grievance Procedure, you were entitled to proceed to Step 3 as of September 2, 2008, without having received a response to this Step 2.   I apologize for the delay in responding to your grievance within the required time frames.

I received your ADA Step 2 grievance stating that you believe CTCF has ADA beds without ADA inmates in them; that they refuse to accommodate inmates with ADA issues by stating they have no beds.  The remedy you requested is that strobe alarm cells be returned to ADA inmates.

The response to your Step 1 grievance dated July 21, 2008, stated that:
- You are currently housed in a cell with a strobe alarm
- Your disability determination was still pending therefore, your grievance was filed prematurely
- As soon as the disability status was confirmed by the Chief Medical Officer, an accommodation resolution would be prepared and distributed enumerating any accommodations you were entitled to
- Grievance was denied

Your accommodation resolution has been signed by the Chief Medical Officer and it has been determined that you do have a hearing disability and are entitled to accommodations; however, you do not have a mobility disability.  All enumerated accommodations have been provided, as was explained in your Step 1 response, and in compliance with the Remedial Plan and stipulations.

Administrative Regulation 850-04, Offender Grievances, states that you may file grievances that affect you personally; however, you may not file grievances on behalf of other offenders.   Therefore, only those issues directly affecting you will be addressed in this response.

Your Step 2 ADA Grievance #D-CT0708-471 is resolved.


amc
xc:  AIC File
        Working File
        Department File
        Elec. file

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CTO7/08-471      STEP (Circle One)  1  2 ③      ADA?  Yes ✗  No ☐

NAME MATTHEW REDMON      DOC NO. 140637      FACILITY C.T.C.F.

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

1.) MY GRIEVANCE IS NOT RESOLVED.

2.) ALL ENUMERATED ACCOMMODATIONS HAVE NOT BEEN PROVIDED.

3.) CDOC IS NOT IN COMPLIANCE WITH THE REMEDIAL PLAN OR THE STIPULATIONS.

4.) I HAVE BEEN PERSONALLY AFFECTED, IN MY GRIEVANCE #D-CTO8/09-022, I EXPLAINED HOW I HAVE BEEN AFFECTED. THAT GRIEVANCE WAS NEVER ANSWERED. AS A MEMBER OF THE CLASS, I MAY GRIEVE ANY ISSUE AFFECTING THE CLASS... ADA INMATES NEED THESE BEDS.

DATE: 9/20/08      OFFENDER SIGNATURE

DATE RECEIVED:      RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

RESPONSE

RECEIVED

SEP 2 9 2008

Office of Correctional Legal Services

RECEIVED

SEP 2 5 2008

Office of Correctional Legal Services

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE:      SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID #

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

DATE: 9/23/08      SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Huggs 6165  Disability

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE:      OFFENDER SIGNATURE/PRINT NAME & DOC #

Original: Department File/AIC      Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

AB 9-22-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Step 3 Grievance Officer
2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:     719.226.4249

Step 3 Grievance Officer

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

November 13, 2008

RE: Grievance #D-CT07/08-471

Dear Mr. Mathew Redmon #140637:

I have reviewed your Step 3 grievance that you filed with regard to ADA cell accommodations.

In review of this matter it is my finding that at the time you initially filed this ADA grievance you had not yet received your Accommodation Resolution ("AR"); therefore as an ADA grievance this grievance was filed prematurely.  However, I do note that you did receive your AR dated August 15, 2008, which determined that you are hearing disabled, but not mobility disabled.  The accommodations articulated in your AR are being provided.  I checked with your case manager and you are housed in a strobe alarmed cell in accordance with your AR.  Based upon the foregoing I cannot any relief in this matter.

Your request for relief is denied.  This is the final administrative response in this matter and you have exhausted your administrative remedies.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance which you have filed: Step 1 Grievance, Step 2 Grievance, and Step 3 Grievance.

Sincerely,

Anthony A. DeCesaro
Grievance Officer

Cc: working file
     grievance file
     Tom Kolle, Offender records

EXHIBIT " B "

STATE OF COLORADO
DEPARTMENT OF CORRECTIONS
NOTICE OF CHARGE(S)

DC Form 150-1A
(Revised 10/95)

FACILITY: CTCF                    CASE NO. ___090581___

| 1. INMATE NAME | REDMON, MATTHEW | DOC NUMBER | 140637 |
|---|---|---|---|
| CURRENT HOUSING UNIT | Segregation N/O | CURRENT SECURITY DESIGNATION | Medium |

**2. ALLEGED CHARGES**   Date **12/18/2008**   Approx. Time **9:00 AM**   Location **food service**

| Class | Rule | Specific Charge (Code of Penal Discipline) Use extra sheets if necessary |
|---|---|---|
| II | 25 | DISOBEYING A LAWFUL ORDER |

**3. SUMMARY** (Factual Reporting, including who, what, when, where, why and how:)

On Thursday, 12-18-08, at approximately 09:00 hours, I, Sgt. Coaxum, walked out of the tool room when I saw offender Redmon, Matthew #140637 and offender Costalez, Erik #109398 arguing while Redmon was grilling fish for lunch. I ordered both offenders to stop immediately and get away from each other. Costalez stepped back and got into a threatening position, and Redmon reacted by throwing the fish he had in his hand back on the grill. Redmon and Costalez did not respond to my verbal commands. I called for assistance, and all available staff arrived. Redmon and Costalez were ordered to handcuff up, and both offenders complied without further resistance. They were escorted to the Shift Commander's office for interview.

**4. CONTRABAND:**

**5. NAMES OF WITNESSES TO VIOLATION:** (Including employees)

I certify that aforementioned charges and summary are true and correct to my knowledge. The date of my signature reflects the discovery date of the violation.

S/ _____  12-29-08
Initiating Employee,   SGT. BETTINA COAXUM    Date

S/ _____  12-29-08
Reviewing Supervisor   ROBERT FAZZINO    Date

**6. INVESTIGATIONS/PHARMACY REPORT** (when required)   Date _____

Signature _____    Comment(s) _____

**7. Hearing Schedule:** This case is scheduled for: __1-6-09__  at  __14:00, CH5 A10__

                                        Date                              Time

Formal Hearing   x    Informal Conference   ☐

**8. SERVING EMPLOYEE:** You are hereby served with a copy of alleged charges this __29__ day of __December__ 20__08__ at 7 _____ (am) (pm). If you desire witnesses, in accordance with the Code of Penal Discipline, please notify the Reviewing Supervisor as soon as possible, but no later than 24 hours prior to scheduled hearing, to avoid a continuance.

Signature _____ 15331    Date __12-29-08__

**9. I do ☐  do not ☒**  desire an inmate representative. Name of representative: _____

INMATE ACKNOWLEDGMENT: I acknowledge receipt of a copy of the Notice of Charge.

Signature _____    Date __12/29/08__

| 20046 | Distribution: | WHITE-Department File | CANARY-Working File | PINK-Superintendent/Director | GOLD-Inmate |

**STATE OF COLORADO**
**DEPARTMENT OF CORRECTIONS**
**NOTICE OF CHARGE(S)**

DC Form 150-1A
(Revised 10/95)

FACILITY: CTCF                                    CASE NO. _____ **090580**

| 1. INMATE NAME | **REDMON, MATTHEW** | DOC NUMBER | **140637** |
|---|---|---|---|
| CURRENT HOUSING UNIT | **Segregation** | CURRENT SECURITY DESIGNATION | **Medium** |

**2. ALLEGED CHARGES**   Date **12/18/2008**   Approx. Time **12:45 PM**   Location **CH-7**

| Class | Rule | Specific Charge (Code of Penal Discipline) Use extra sheets if necessary |
|---|---|---|
| II | 19 | UNAUTHORIZED POSSESSION |

**3. SUMMARY** (Factual Reporting, including who, what, when, where, why and how:)

At 12:45 hours on 12/18/2008, while doing a pack out of offender Redmon, Matthew #140637, I, Sergeant Benavidez, confiscated the following items not on Redmon's property list: one pair of New Balance tennis shoes size 12 and one combination lock. Both items were placed into contraband.

**4. CONTRABAND:** AS STATED ABOVE.

**5. NAMES OF WITNESSES TO VIOLATION:** (Including employees)

I certify that aforementioned charges and summary are true and correct to my knowledge. The date of my signature reflects the discovery date of the violation.

S/ _Sgt Michael Benavidez 12/29/08_
Initiating Employee   SGT MICHAEL BENAVIDEZ   Date

S/ _Lt. Robert Fazzino 12-29-08_
Reviewing Supervisor   LT. ROBERT FAZZINO   Date

**6. INVESTIGATIONS/PHARMACY REPORT** (when required)   Date _____

Signature _____   Comment(s) _____

**7. Hearing Schedule:** This case is scheduled for: _1-6-09_   at _13:40, CH5 A40_
Date                              Time

Formal Hearing   x    Informal Conference   □

**8. SERVING EMPLOYEE:** You are hereby served with a copy of alleged charges this _27_ day of _December_ 20 _08_ at _____ (am) (pm) If you desire witnesses, in accordance with the Code of Penal Discipline, please notify the Reviewing Supervisor as soon as possible, but no later than 24 hours prior to scheduled hearing, to avoid a continuance.

Signature _____ 1533I   Date _12-27-08_

**9. I do** □ **do not** ☑ desire an inmate representative. Name of representative: _____

INMATE ACKNOWLEDGMENT - I acknowledge receipt of a copy of the Notice of Charge.
Signature _____   Date _12/29/08_

20046     Distribution:     WHITE-Department File          CANARY-Working File          PINK-Superintendent/Director          GOLD-Inmate

EXHIBIT " C "

BEI
7/7/2008

DC FORM 850-4A (10/04)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CT08/09-022**    STEP (Circle One) (1) 2 3    ADA?    Yes X   No ☐

| NAME | **REDMON, MATTHEW T** | DOC NO. | **140637** | FACILITY C.T.C.F. |
|------|------------------------|---------|------------|-------------------|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

ON WEDNESDAY, 07/02/08, I WAS MOVED TO A CELL THAT DID NOT HAVE AN OPERATIONAL STROBE ALARM. IT WAS KNOWN BY SECURITY STAFF BEFORE THEY MOVED ME THAT THE ALARM DID NOT WORK. THIS ALARM WAS NEVER OPERATIONAL AND IS STILL NOT. IT IS PART OF A NEW SECTION OF ALARM THAT IS NOT EVEN COMPLETELY INSTALLED. WHEN I ATTEMPTED TO TELL LT. LUCIANO THAT HE AND HIS CAPTAIN HAD MADE A GRAVE ERROR AND TO FIX IT IMMEDIATELY, HE THREATENED TO WRITE ME UP. I WILL NOW ALSO CONTACT THE SPECIAL MASTERS.
#140637

DATE: 07/08/08    OFFENDER SIGNATURE

DATE RECEIVED: 7/22/08    RESPONDING STAFF SIGNATURE & ID    1429

RESPONSE

**SEE ATTACHED RESPONSE**

**Cathie Holst, Manager**
**Office of Correctional Legal Services**
**AIC-ADA Inmate Coordinator**
**#1722**

Cathie Holst
9-9-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 9/03/08 | SIGNATURE/PRINT NAME & STAFF ID # | 1429 |
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | | |
| DATE: 7/18/08 | SIGNATURE/PRINT NAME & STAFF ID # Connie Higgs 6163  Disability | |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections to this grievance | | |
| DATE: 9/29/08 | OFFENDER SIGNATURE/PRINT NAME & DOC # 140637 | RECEIVED |

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

7-9-08
G+

Attachment "A"
Page 1of 1

JUL 2 2 2008

Office of Correctional
Legal Services

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:    719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Response to Step 1 ADA Grievance
From:   Adrienne Jacobson, Designee
        Office of the AIC (ADA Inmate Coordinator)
Received Grievance: July 22, 2008
Sent Response:  September  10  , 2008
Offender Name:  REDMON, MATTHEW
DOC No:  140637
Facility:  CTCF
Grievance No: D-CT0809-022

---

**DISABILITY STATUS: Per screening dated 3/20/08 and Accommodation Resolution dated 8/15/08:
You have a HEARING DISABILITY.**

**In the grievance referenced above, you allege the following:**
1.  That you were moved to a cell that does not have an operational strobe alarm and that correctional staff informed you that the strobe alarm in your cell did not work prior to moving you into the cell.

**Requested Relief/Remedy:**
1a. No remedy requested.

**Following a thorough investigation into your allegations, I offer the following evidence that was considered in reaching a decision:**
1.  You checked "ADA" at the top of the grievance form therefore it was routed to this office for a response. Your disability status is referenced above: you have a hearing disability.

2.  Under the Montez Stipulation Agreement dated April of 2008, all offenders housed at Colorado Territorial Correctional Facility (CTCF) who have a confirmed hearing disability shall be housed in a cell equipped with a strobe alarm. Cells at CTCF have been modified to include strobe alarms and at the time of your move were in the processing of being tested. There were some issues with these initial tests resulting in the need to disconnect them from the panel for a brief period. This issue has been resolved and to the best of my knowledge, the in-cell strobe alarms at CTCF are now fully operational.

**CONCLUSION:**

Though you did not request a specific remedy, I find that this grievance is **granted** since the presumed remedy is to be housed in a cell with a *functioning* strobe alarm. All of the in-cell strobe alarms at CTCF are functioning at this time to the best of my knowledge.

**GRIEVANCE GRANTED**

DC Form 850-04A (07/01/07)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CTO8/09-022**   STEP (Circle One)   1 (2) 3   ADA?   Yes **X** No ☐

| NAME MATTHEW REDMON | DOC NO. 140637 | FACILITY C.T.C.F. |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

ON, OR ABOUT 07/06/08, I SUBMITTED THE STEP 1 PART OF THIS GRIEVANCE. I HAVE NEVER RECEIVED AN ANSWER. IT IS LONG PAST THE 30 DAY PERIOD. I WANT TO KNOW WHAT THE AIC THINKS ABOUT LT. LICANO, AND HIS CAPTAIN, MOVING ME FROM A CELL WITH A WORKING STROBE ALARM TO A CELL WITH NO STROBE ALARM. ABOUT 5 DAYS AFTER THE LT. AND HIS CAPTAIN MADE THIS DECISION, THIS DECISION WAS DISCOVERED BY OTHER DOC STAFF. UPON THE REALIZATION OF JUST WHAT HAD BEEN DONE TO ME, I WAS IMMEDIATELY MOVED BACK TO CELLS THAT I WAS ORIGINALLY IN. I WANT AN ANSWER TO MY GRIEVANCE. THANK YOU

| DATE: 9/20/08 | OFFENDER SIGNATURE |
|---|---|
| DATE RECEIVED: 10/3/08 | RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID |

**RESPONSE**

## SEE ATTACHED RESPONSE

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 10/28/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Anna (Cooper) #3550 Anna Cooper |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | |
| DATE: 9/30/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Heggs Connie Heggs 6163   Disability |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance | RECEIVED |
| DATE: 11/18/08 | OFFENDER SIGNATURE/PRINT NAME & DOC # 140637 |

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

OCT 0 2 2008   AB 9-22-08

Office of Correctional
Legal Services

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:   719.226.4238
Fax:      719.226.4249

Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Response to:            Step 2 ADA Grievance
From:                   Gary Golder, Director of Prisons
Through:                Anna Cooper, Designee
Received Grievance:     10/3/2008
Sent Response:          10/28/2008
Offender Name:          REDMON, Matthew
DOC No:                 #140637
Facility:               CTCF
Case No.                D-CT08/09-022

Offender Redmon:

I received your ADA Step 2 grievance stating that you were moved from a cell at CTCF that had a working strobe alarm to a cell with no strobe alarm. Five days later, you were moved back to the cell you were in previously, that had a working strobe alarm.   The remedy you requested was an answer to your grievance.

In review of this matter, you were provided with a response to your Step 1 grievance dated September 8, 2008.  In that response, it was noted that you did not request a specific remedy in the Step 1, however, your grievance was granted since the presumed remedy was to be housed in a cell with a functioning strobe alarm.  All of the in-cell strobe alarms at CTCF were functioning at the time the response was provided.

I find that the response you received to your Step 1 of this grievance is accurate and appropriate.   Testing of the strobe alarms was being conducted at CTCF and it was necessary to temporarily disconnect them for repairs.  Your cell assignment move was required to accomplish these repairs.  You have been placed back into your cell with a functioning strobe alarm, therefore, this matter has been resolved.

Your requested remedy was to receive a response to the Step 1 grievance, which has occurred, therefore, this Step 2 grievance is resolved.

amc
xc: AIC File
        Working File
        Department File
        Elec. file

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CT08/09-22**   STEP (Circle One)   1   2   (3)   ADA?   Yes ☒   No ☐

NAME MATTHEW FELDMAN   DOC NO. 140637   FACILITY C.T.C.F.

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

I HAVE RECEIVED AN APOLOGY FOR DELAY FROM CATHIE HOLST. ACKNOWLEDGEMENT OF ONE'S WRONGS IS A BEAUTIFUL THING. HOWEVER, GARY GOLDER IS ATTEMPTING TO DROWN MY GRIEVANCE IN "BUREAUCRATESE". IN THE 3RD PARAGRAPH OF HIS ANSWER (STEP 2), HE ATTEMPTS TO PUT FORTH THE NOTION THAT THE ALARMS WERE TURNED OFF FOR TESTING. NOT TRUE!! THE ALARMS WERE TURNED OFF FOR MORE THAN A MONTH... MOVING ME TO AN UNACCOMMODATING CELL HAD NOTHING TO DO WITH THE DISMANTLING OF THE ALARM. I WAS RETURNED TO MY CELL UPON THE REALIZATION OF A GRIEVOUS ERROR.

DATE: 11/12/08   OFFENDER SIGNATURE

DATE RECEIVED:   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

**RESPONSE**

RECEIVED

NOV 2 0 2008

Office of Correctional
Legal Services

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | |
| DATE: 11/18/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Nulph   Connie Higgs 6163 |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | |
| DATE: | OFFENDER SIGNATURE/PRINT NAME & DOC # |

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

AB 11-13-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Step 3 Grievance Officer
2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:   719.226.4238
Fax:      719.226.4249

Step 3 Grievance Officer

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

December 24, 2008

RE: Grievance #D-CT08/09-22

Dear Mr. Mathew Redmon #140637:

I have reviewed your Step 3 grievance that you filed with regard to strobe alarm cell.

In review of this matter it is my finding you were placed in a cell with a strobe alarm.  There were some difficulties during the initial installation however those problems have since been resolved.  When you were placed in a cell without an operational strobe alarm you were shortly moved back to a cell with an operational strobe.  You do not ask for a remedy in this grievance; this matter appears resolved.

This is the final administrative response in this matter and you have exhausted your administrative remedies.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance which you have filed: Step 1 Grievance, Step 2 Grievance, and Step 3 Grievance.

Sincerely,

Anthony A. DeCesaro
Grievance Officer

Cc: working file
      grievance file
      Tom Kolle, Offender records

EXHIBIT " D "

# STATE OF COLORADO

**DEPARTMENT OF CORRECTIONS**

COLORADO TERRITORIAL CORRECTIONAL FACILITY
P. O. Box 1010
Cañon City, CO 81215-1010
Phone (719) 269-4002
FAX (719) 269-4115



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

**TO:**       Case Manager Bell
            Health Services Administrator and Clinical File (2 - Harris)
            Mental Health Coordinators (2 - Martin & Yuncker)
            Shift Commander (Day)
            Cellhouse 1, 3, 5, and 7 and Infirmary Supervisors (2 each)
            Housing Supervisor (Wilson)

**FROM:**     Virginia Smith, Acting Litigation Coordinator   VS

**DATE:**     April 1, 2008

**SUBJECT:**  Temporary Offender Accommodation – MATTHEW REDMON, DOC. 140637


Enclosed is a TEMPORARY Offender Accommodation for MATTHEW REDMON, DOC NO. 140637, dated March 19, 2008. It has been determined that the inmate does have a hearing-related disability that requires accommodations under ADA/Montez.

Shift Commander: Ensure the temporary accommodation form is available to all security staff.

Cellhouse Supervisors: Ensure the temporary accommodation form is available to all living unit staff. File the temporary AR form in the three-ring binder made available to you to ensure availability to all unit staff.

If you have any questions, call me at Ext. 4005.

:vs
xc:     Litigation Coordinator

DNC Form 300-104C

# TEMPORARY OFFENDER ACCOMODATIONS

**CLINICAL SERVICES – NURSE SCREENING**

| OFFENDER NAME:<br><br>**REDMON, MATTHEW T** | DOC #:<br><br>**140637** | CURRENT FACILITY:<br><br>**DRDC** | DATE OF BIRTH<br><br>**1/3/1967** | DATE ARRIVED AT DRDC:<br><br>**03/19/2008** |
|---|---|---|---|---|

**REASON FOR ACCOMODATION:**

   □ Mobility

   **X** Hearing

   □ Vision

   □ Diabetes

   □ Other

**The offender is to be provided with the following temporary accommodations (including Housing Restrictions):**

    **HEARING AIDE(S), YOU MAY REQUEST THE USE OF THE TTY PHONE**

   * denotes offender owned accommodation

| Nurse:<br>**ROJDAH SHEPHARD** | Date:<br>**3/19/2008** |
|---|---|
| **Remarks:**<br><br><br><br> | |
| Provider: | Date: |

Distribution:
Original:   AIC File
CC:      Medical File
        Working File
        High Profile Packet

EXHIBIT " E "

## ACCOMMODATION RESOLUTION

**You DO HAVE A HEARING DISABILITY**
**You DO NOT HAVE A MOBILITY DISABILITY**

**Offender Name:** REDMON, MATTHEW
**DOC#:** 140637
**Date of Resolution:** August 15, 2008

Following a disability screening it has been determined that you do have a hearing disability and are therefore, entitled to the following accommodations:

1) Two hearing aids
2) Vibrating Watch
3) Assignment to a designated facility
4) Designated facilities shall have strobe and audio alarms in inmate areas where **you have** an independent means of egress. When you are housed at a designated facility where you **do not have** an independent means of egress, the strobes & alarms are not required. **If you are housed at CTCF you shall be housed in a cell with a strobe alarm.**
5) Facility staff are responsible to ensure that PA Announcements & Reporting Instructions are provided to you in a format you can understand
6) Staff assistance during an emergency or evacuation
7) Use of a TTY Phone
8) Closed-caption feature on day hall television shall be turned on

## WORK/PROGRAM ACCOMMODATIONS:

You are currently employed as a Porter.
You are not currently participating in a program

You require the following Accommodations:
1. You do not require any accommodations other than those listed above in order to perform the essential functions of your job.

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

**You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or becomes inoperable for any reason.**

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

You shall notify your case manager if you need additional interpreter services. Keep in mind an interpreter is not available on short notice and may not be provided in every instance. The case manager/litigation coordinator shall contact the AIC to arrange all interpreter services.

If your condition worsens and you feel that you require additional accommodations, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

Following a disability screening it has been determined that you do not have a mobility disability pursuant to the Americans With Disabilities/Rehabilitation Acts (ADA), therefore, you are not entitled to accommodations.

If your condition worsens and you feel that it affects your ability to perform a major life activity, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

**You have 30 days from the date this document is served upon you to submit a Step I ADA Grievance, to the office of the AIC, on any matter addressed in this resolution. Please refer to A.R. 850-04 for details regarding the grievance process. This accommodation resolution supersedes any other version, on any date, prior to the date on this document.**

| | | | |
|---|---|---|---|
| _Paulaj Frank MD_ | _1/3/08_ | _Cathie Holst_ | _8-25-08_ |
| **Chief Medical Officer** | **Date** | **AIC** | **Date** |

**E-Mailed to Facility Litigation Coordinator for printing on yellow paper & distribution to the following** Warden, Case Manager (Working File), 2 copies to HSA for placement in Medical & Mental Health File, & to any other DOC or Contract employee with a need-to-know (work supervisor, teacher, etc...) &
Print 2 full size copies on yellow paper & serve on offender

EXHIBIT " F "

COLORADO DEPARTMENT OF CORRECTIONS
Offender Personal Inventory Quantity and Liability Limits

Offender Name: REDMON, MATTHEW T                    DOC #: 140637
Facility: COLORADO TERRITORIAL CORRECTIONAL FACILITY   Date: 09/26/2008

STATE ISSUE ITEMS
-----------------
```
    1 ID CARD(1)                    1 JACKET(1)
    1 KNIT CAP(1)                   3 SHIRTS(3)
    1 SHOES(1)                      5 SOCKS(5)
    5 T-SHIRTS(5)                   3 TROUSERS/SLACKS(3)
    5 UNDERWEAR(5)
```

PERSONAL ITEMS
--------------
    4 BOOKS (INCLUDING FAITH AND LEGAL)(15)   1 MAGAZINE/NEWSPAPERS(6)


    Books, magazines and newspapers cannot exceed 3 cubic feet when
    combined with other property.

| CANTEEN ITEMS | Description | Serial # |
|---|---|---|
| 1 ALARM CLOCK RADIO COMBINATION(1) | CLOCK/RADIO/(GPX) | 0712032681 TG/122168 |
| 1 FAN(1) | FAN/CLEAR/YELLOW LOCKS | TG/125759 |
| 2 GYM SHORTS(2) | | (2)SIZE 3XL |
| 1 LAMP(1) | DESK/LAMP | TG/125758 |
| 1 MOUSTACHE SCISSORS(1) | | |
| 2 SOCKS(3) | | |
| 1 SWEATPANTS(2) | | (1)SIZE 3XL |

FACILITY SPECIFIC ITEMS
-----------------------
    1 HEARING AID(2)
    1 MONTEZ,AIC VIBRA WATCH(1)                    #V73
    1 TV CABLES(3)

MEDICAL APPLIANCES
------------------
    1 KNEE WRAPS/BRACES(4)          1 PRESCRIPTION EYE GLASSES/CONTACTS(1)


Inventory Staff_____
                    (print name)              (signature)

Inventory Staff_____
                    (print name)              (signature)




Page 1



COLORADO DEPARTMENT OF CORRECTIONS
Offender Personal Inventory Quantity and Liability Limits

EXHIBIT " G "

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CTO8/09-157**        STEP (Circle One) **1** 2 3        ADA? Yes ☒ No ☐

NAME **MATTHEW PEDMON**    DOC NO. **140637**    FACILITY **C.T.C.F.**

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

I WOULD LIKE TO KNOW WHY MY GRIEVANCES ARE NOT BEING ANSWERED IN THE TIME FRAME SPECIFIED BY CDOC POLICY. I AM GRIEVING THE FACT THAT MY TIMELY SUBMITTED GRIEVANCES ARE NOT ANSWERED. IN GRIEVANCE # D-CTO7/08-471 ; #D-CTO7/08-472 ; # D-CTO8/09-023 ; D-CTO8/09-022, I DID NOT RECEIVE A REPLY UNTIL LONG PAST 30 DAYS AFTER SUBMITTED. I WANT TO HAVE MY GRIEVANCES ANSWERED ON TIME AS ACCORDING TO CDOC POLICY.

DATE: **9/20/08**    OFFENDER SIGNATURE

DATE RECEIVED: **10/2/08**    RESPONDING DOC EMPLOYEE, CONTRACT WORKER OR VOLUNTEER SIGNATURE & ID    _Connie Jacobson 14299_

RESPONSE

**SEE ATTACHED RESPONSE**

Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

_Cathie Holst_
10-28-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: **10/22/08**    SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID#    _Connie Jacobson 14299_

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject.

DATE: **9/29/08**    SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID#    _Connie Higgs_ Connie Higgs 6165 Disability

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: **11/12/08**    OFFENDER SIGNATURE/PRINT NAME & DOC #    **140637**

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (Medical/Mental Health Issue Only)

Attachment "A"
Page 1 of 1

RECEIVED
AB 9-22-08
OCT 0 2 2008
Office of Correctional Legal Services

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:      719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Response to Step 1 ADA Grievance
From:   Adrienne Jacobson, Legal Assistant, Designee
            Office of the AIC (ADA Inmate Coordinator)
Received Grievance: October 2, 2008
Sent Response: October ___, 2008
Offender Name: REDMON, MATTHEW
DOC No: 140637
Facility: CTCF
Grievance No: D-CT0809-157

Aristedes W. Zavaras
Executive Director

---

**DISABILITY STATUS:**
YOU DO HAVE A HEARING DISABILITY per screening dated March 19, 2008 &
Accommodation Resolution dated August 25, 2008.

---

**In the grievance referenced above, you allege the following:**

1.  That the responses to the following grievances were not received in a timely manner: D-CT0708-471;
D-CT0708-472; D-CT0809-023 and D-CT0809-022.

**Requested Relief/Remedy:**

1a. to have your grievances responded to in a timely manner.

**FOLLOWING A THOROUGH INVESTIGATION INTO YOUR ALLEGATIONS, I OFFER
THE FOLLOWING EVIDENCE THAT WAS CONSIDERED IN REACHING A DECISION:**

1. AR 850-05 governs grievance response time and states in part, "The offender shall receive a written
response to each Step 1 and Step 2 grievance *within 25 calendar days of its receipt by the responding
DOC employee, contract worker, or volunteer.*"

2. I signed for **receipt** of grievances D-CT0708-471 and D-CT0708-472 on June 16, 2008.  I prepared
the responses to these grievances on July 18, 2008. After response, grievances are reviewed by the AIC
prior to mailing. These grievances were sent to you from the AIC's office on June 21, 2008. The total
elapsed response time from my receipt of the grievance to my response was 32 days. I apologize for the
delayed response. Prior to receiving these two grievances, I received notice from the Attorney General's
office that you had sent them correspondence incorporating the same complaints as were contained in
grievances 471 and 472. I researched and responded to the Attorney General's request for information
and then utilized these results in answering your grievances. Due to the level of detail required for these
responses and the additional requirement of response to the Attorney General's office for the same
information, I exceeded the 25 day response time by 7 days and I apologize for this delay.

3. I signed for **receipt** of grievances D-CT0809-022 and D-CT0809-023 on July 22, 2008. These grievances had a response due date of August 16, 2008. I began my investigation of your strobe alarm allegations on July 23rd. I requested additional information regarding your complaints regarding the strobe alarm and your ability to participate in the ASL class on July 28th. While I did not prepare an official response to D-CT0809-023, I had you admitted to the ASL class and you began the class on July 30, 2008.  Our office began an extensive project in August and in order to focus on completion of that project, we had to postpone further action on pending items. After completion of this project and other reporting issues, I completed my investigation of your complaints and drafted my response on September 3, 2008. I received signature on these responses on September 8th and they were sent to you on that day. I exceeded the 25 day response time by 18 days which is inexcusable and for which I apologize.

4. The workload in this office is tremendous and while we strive to complete all of our investigations within the 25 days allotted, it is sometimes difficult to obtain all of the necessary information and prepare response within that time frame. The issues which caused the extensive delay of grievances 022 and 023 have been resolved and I do not anticipate any further delay in grievance response times.

**CONCLUSION:**

You have received grievance responses outside of the 25 day allotted response time. I sincerely apologize for the delay and will insure that your grievances are responded to within 25 days of ***my receipt*** of the grievance as required by 850-04.

**GRIEVANCE GRANTED.**

EXHIBIT " H "

IA 750-4A

# CTCF

# ADA/MONTEZ

# FACILITY

# ORIENTATION

# HANDBOOK



**James E. Abbott, CTCF Warden**

**Date**

RECEIVED FROM CASE MANAGER A. BELL
12/10/08

# FORWARD

Inmates who have disabilities shall be provided reasonable accommodations to ensure that they have access to comparable programs, services and benefits provided to non-disabled inmates at CTCF. This handbook is intended to provide inmates with disabilities the information needed to successfully and safely function in a correctional setting and is supplemental to the complete facility New Arrival Inmate Orientation Handbook.

An inmate with a disability may submit a request for accommodation available from any DOC employee for access to benefits, programs, or services directly to the ADA Inmate Coordinator (AIC) at DOC central office via inter-facility mail and may attach one additional page if necessary. Inmates may request assistance from their case manager to complete the Request for Accommodation, Medical Release Form, and Functional Ability Questionnaire.

## COMMUNICATION FOR SIGHT AND HEARING IMPAIRED

CTCF provides reasonable accommodations to inmates with disabilities to ensure effective communication with staff, other inmates, and the public. Auxiliary aids available at CTCF to the hearing and sight impaired include qualified interpreters on a scheduled basis, hearing aids, closed captioned television and videos, talking book library access and other material available in the general library.

## TELETYPEWRITERS (TTY)

TTY's are available for use in Cellhouses 3, 5, 7, and the infirmary. Inmates will sign up on the TTY Sign-Up Log Sheet available from cellhouse staff to arrange a time and location for their calls to be placed. Calls placed after normal business hours should indicate a general time frame for staff to assist the inmate in placing the call. Non-legal TTY printouts will be monitored in accordance with the procedures regarding telephone regulations for inmates.

## INTERPRETERS

A qualified interpreter will be available to assist inmates on a scheduled basis to include weekly information sharing meetings with various departments, disciplinary hearings, in the delivery of health care services, mental health groups, AA meetings, religious services, parole board hearings, and administrative reviews. Arrangements can be made through the case manager to obtain these services as well as additional services as necessary.

## HOUSING

**Cells**: CTCF contains several mobility impaired cells in Cellhouse 3 and 7 and infirmary; and cell placement will be determined based on individual need. A limited number of strobe equipped cells are also available for the hearing impaired.

**Counts**: Cellhouse staff will ensure hearing impaired inmates will be notified of counts, meal times, and controlled movement by flashing of cell lights. Notification of formal counts will be five minutes prior to count as well as when count clears. Physically challenged inmates who are unable to stand for stand-up formal counts may remain in their wheelchairs or sitting in an upright position on the edge of the bed. Inmates who have other disabilities preventing them from standing during count shall be reasonably accommodated.

**Mail, Laundry, Canteen Procedures**:  A list of inmates who have mail will be posted on the windows in both the upper and lower control centers. As inmates are assigned to the cellhouses, they will receive orientation which is specific to laundry times and Canteen procedures in their living unit.These are scheduled, routine procedures which do not vary and it is the inmates responsibility to be aware of the date and time.

**Verbal Announcements/Alarms**:  Inmates with disabilities will receive special assistance from staff regarding notifications, PA announcements, alarms, etc.

**Emergency Evacuation Procedures**:  In emergencies, the evacuation of inmates with disabilities will be the primary responsibility of designated correctional staff. If there is insufficient correctional staff to accompany inmates with disabilities during an emergency, additional facility staff will respond. At no time will the evacuation of inmates with disabilities be designated to other inmates.

## WORK/PROGRAM ASSIGNMENTS AND ACCESS

CTCF offers a wide variety of programs and work assignments for inmates with disabilities including academic, vocational, mental health groups, support groups, religious and recreational activities, food service, Tab Plant, and library assignments.

The facility offers physically challenged accessibility to all areas of the facility including the infirmary and clinic, big yard, mental health, food service, visiting, hobby shop, Tag/Tab Plant, library/law library, academic school, and gymnasium. An elevator is available for use in the infirmary/clinic as well as an exterior unit and ramp to access visiting, property, and the hobby shop areas. Inmates with significant mobility impairments must utilize the outside elevator to access the hobby shop, property, and visiting program by notifying the movement control officer of their needs. The elevator can only be operated by staff.

## RECREATION

The recreation department provides a variety of opportunities for participation throughout the year including special games during holiday events, weightlifting contests, and exercises. The gymnasium is reserved from 1500 to 1600 hours daily for those with mobility, sight, and hearing impairments, as well as those inmates aged 60 and over.

## LIBRARY SERVICES

The CTCF library provides materials for inmates with special needs in a handicapped accessible environment. Available for use are large print books, talking book library, catalogs, and audio cassettes, closed captioned videos, foreign language tapes and videos, tape recorder, Braille reader, a variety of Braille publications, magnifying sheets, personal reader for low vision, and Text for Windows for low vision and screen reading. Also available are tutors for learning needs, sign language books and tapes, learn to read programs on cassette and video, easy reading material and workbooks, Spanish classes, and COPD on cassette. The library also provides jobs for the physically challenged.  Mental health groups are given an overview of the library and provided one-on-one assistance. The library provides fitness videos, the "New Mobility" Magazine, as well as books and videos for those with limited mobility.

## ASSISTED DAILY LIVING ASSISTANTS

Assisted Daily Living (ADL) assistants are available and will be assigned to those with mobility and sight limitations. ADL's will assist inmates with hygiene needs; movement to appointments in the infirmary/clinic as needed and/or to required programs; to recreational activities; to and from food service; with laundry and linen exchange; and perform other duties as assigned by the supervisor.

## FOOD SERVICE

The first three rows of tables in the north dining room as well as some first row seats in the south dining room are reserved for physically challenged inmates. Seating in this area is restricted those individuals who are unable to obtain trays, beverages, etc. without assistance.  The ADL or a food service worker will assist physically challenged inmates as needed with trays, etc.

## DIABETIC ACCOMMODATIONS

Inmates with diabetes will be provided training on a regular basis including written information that complies with the current American Diabetes Association guidelines, regarding the care and management of diabetes. Medical care appropriate to the individual will be available from health care providers. Any questions specific to medical care should be directed to clinical services staff.  Finger-sticks and insulin med lines are held twice a day in accordance with the CTCF Operations Schedule (300-108A). Inmates are permitted to take up to six Glucose tablets outside their cell to their work assignment, recreational activity, religious services, etc.

## HEALTH CARE APPLIANCES

Health care appliances are assistive devices or medical support equipment, which have been prescribed and approved by clinical services.  Health care appliances include, but are not limited to, orthopedic prostheses, orthopedic braces or shoes, crutches, canes, walkers, wheelchairs, hearing aids, prescription eyeglasses, artificial eyes, dental prostheses, breathing devices, and gloves for wheelchair use only.  Appliances must be documented on the property inventory. It is the joint responsibility of the DOC and the inmate to maintain all health care appliances in good repair and operation.  Whenever an appliance, exclusive of wheelchairs, is in need of repair or replacement, the inmate shall utilize approved procedures for notifying clinical services staff of their needs. Inmates are financially responsible for damage to appliances attributable to negligence.

All state-issued wheelchairs in need of repair will be exchanged clinical services. When a personal wheelchair is in need of repair, a loaner will be made available for the duration of any repairs. Inmates are financially responsible for damage or repairs to wheelchairs attributable to negligence.

## ADA GRIEVANCE PROCEDURE

When an inmate with a disability has been unable to resolve an issue related to their disability, including, but not limited to issues of placement, requested accommodation, or job placement, the inmate may utilize the ADA grievance process in accordance with the procedures outlined in Administrative Regulation 750-04, American's With Disabilities/Rehab Act Offenders With Disabilities and Request for Accommodation.  Case managers may assist inmates with disabilities regarding preparation of grievances and may waive any copying charges.

EXHIBIT " I "

# INMATE ORIENTATION HANDBOOK

| SECTION | TITLE | PAGE |
|---|---|---|
| I | ORGANIZED MOVEMENT | 4 |
| II | INMATE PROPERTY | 4 |
| III | CONTRABAND | 5 |
| IV | LAUNDRY AND CLOTHING | 5 |
| V | VISITING | 6 |
| VI | SECURITY ISSUES | 7 |
| VII | MAIL AND PACKAGES | 7 |
| VIII | MONEY MATTERS | 8 |
| IX | HOUSING | 10 |
| X | CASE MANAGEMENT | 11 |
| XI | INMATE GRIEVANCE PROCEDURE | 12 |
| XII | MEDICAL SERVICES | 13 |
| XIII | MENTAL HEALTH SERVICES | 14 |
| XIV | FOOD SERVICES | 14 |
| XV | GENERAL LIBRARY | 15 |
| XVI | LAW LIBRARY | 15 |
| XVII | ACADEMIC AND VOCATIONAL PROGRAMS | 16 |
| XIII | RECREATIONAL SERVICES AND BARBER SHOP | 16 |
| XIX | RELIGIOUS SERVICES | 16 |
| XX | HOBBY WORK | 17 |
| XXI | INMATE AUTHORITY OVER OTHER INMATES | 17 |
| XXII | INMATE NON-DISCRIMINATION | 17 |
| XXXIII | PRISON RAPE ELMINATION PROCEDURE | 18 |
| XXIV | INMATES WITH DISABILITIES | 18 |
| XXV | CTCF OPERATIONAL SCHEDULE | 19 |

## MISSION

The mission of the Colorado Territorial Correctional Facility (CTCF) is to:

Protect the general public by confining inmates within the standards of Levels III, IV, and V security status by meeting and maintaining the highest correctional standards possible within available resources.

Provide Community Standard Medical and Mental Health care for inmates assigned to CTCF and support the needs of all other Department of Corrections facilities by providing on-site medical and mental health services at CTCF.

Provide temporary housing, release, and intake functions for the entire Department of Corrections as well as private correctional facilities.

Provide meaningful, needs-specific academic, vocational and cognitive based life skills, educational programs and volunteer programs to facilitate inmates' reintegration into less secure facilities and/or society.

Provide centralized support functions (i.e., Business Offices, Purchasing, Time Release, Payroll, Clinical Services, and Business Technologies/Communications) that benefit the entire Department of Corrections.

Develop, support and empower professional correctional staff to manage the diverse inmate population; manage the various support functions provided by CTCF; and become members of an effective team in achieving the missions of CTCF and CWCF.

## FOREWORD

This handbook is intended to orient inmates with the programs and operations of CTCF. A variety of information, rules, and guidance can be found throughout this handbook which will prove useful to inmates during their period of incarceration at CTCF. It is each inmate's responsibility to read and become familiar with the contents of this publication. The information contained inside will assist in understanding what will be expected of each inmate and is designed to provide an orderly and safe environment for inmates, staff, and visitors of this facility.

It is impossible to cover every aspect of the facility in this handbook. Therefore, inmates are encouraged to ask any staff member for more specific information not covered in it. Substantial modifications to existing regulations and procedures; announcements of new regulations and procedures; or operational and schedule changes may be posted on the cable TV system (Channel 14).

Inmates are responsible to read this handbook as well as the Code of Penal Discipline Handbook (COPD). Inmates are further advised to be aware of and comply with posted operational rules governing specific conduct and behavior for specific areas of Colorado Territorial Correctional Facility and for becoming familiar with the non-restricted DOC ARs and facility IA/OMs which are available for inmate review in the General Library.

*Written policy and procedure governing the control of personal property (AR/IA 850-6) and funds belonging to inmates (AR/IA 200-2) are reviewed annually and updated as needed and are available for review in the General Library [4-4292].*

## I.  ORGANIZED MOVEMENT

CTCF regulates inmate movement under the written guidelines of CTCF OM 300-108.

**Open Movement:** Scheduled movement time during which inmates can move to an authorized destination with no required appointment slip, pass or escort.  These movement periods are on a fixed schedule that does not vary from day to day, are generally ten minutes long, and occur at ten minutes before the hour, although there are exceptions.

**Mass Movement:** Movement of large groups of inmates at either scheduled or non-scheduled times to a designated area.  Mass movement is used to call inmates to meals and to and from worklines with no required pass or escort.  Open movement is also included in some of the mass movements.  Mass movements are usually on a fixed schedule but may be called at anytime by the shift commander.

**Restricted Movement:** Inmate movement requiring an appointment slip, pass, or an escort that occurs at other than open or mass movement times to or from a location that is not otherwise authorized.

**Passes:** A form to meet specific needs that authorizes an inmate to be in a certain place at a certain time where he would not otherwise be authorized.

## GENERAL PROCEDURES:

Passes will be color coded laminated passes for barber shop (OM 300-108 D).  These passes will be issued by the cellhouses and will be numbered and logged when they are issued.  They will fit in the breast pocket of the shirt where the inmate will be required to carry it and will stick out of the pocket about four inches.

Certain inmate workers will have CTCF color coded picture ID cards (OM 300-108 E) that will function as passes.  Maintenance workers will have CTCF color coded picture ID cards (OM 300-108 E) and a Maximo Work Order (OM 300-108 G) that serves as a pass.

A Clinical Services Treatment Pass/Mental Health Group Pass (OM 300-108 C) will be issued by clinic medical/mental health staff to inmates who require chronic care; i.e., when the inmate has an appointment at the same time on the same day for a period of time.  The inmate will keep this pass in his possession until he no longer needs the appointment, at which time medical staff will retrieve the pass.

All passes and picture ID passes will be defined as security devices and any alteration of a pass, possession of a blank or pass issued to another inmate, or failure to return a pass after it has been used may result in COPD charges.

Unauthorized inmate gatherings will not be permitted and may subject involved inmates to possible COPD charges.

Master control center will be the control point for organized movement.  Mass movements will not occur until they have been approved by the shift commander AND announced by master control.

Master control center will announce open movements as well.  Master control center staff will announce a two-minute warning over the radio and facility P.A. system prior to the beginning of movement.  Master control center will announce: "Open movement begins" at the times listed on the operations schedule (OM 300-108 A).  Two minutes prior to the end of open movement, master control will announce: "Open movement will end in two minutes."  At the scheduled time, master control center will announce: "Open movement has ended".  All announcements will be repeated at every location where there are inmates by whatever local means are available (i.e., unit public address systems or verbal announcements).

All movement will begin and end based on master control center's announcements, unless otherwise approved/ordered by the shift commander.

## II.  INMATE PROPERTY

Property Inventory.  Upon arrival at CTCF, all inmate property will be searched and inventoried by the CTCF property officer.  The inmate will be given the pink copy or last copy of the property inventory sheet.  It is the responsibility of inmates to ensure all items acquired after arrival are added to their property inventory, form 850-6A.  It is important to know that if it isn't on the form 850-6A it is not allowed.  All medical equipment must also be on the inmate's property inventory.  It is the responsibility of all inmates to keep all

**Special Clothing.** Some job assignments within the facility require the issue of special clothing. These items are tagged by the laundry and must be returned to the work supervisor upon a job change. A permit will be issued for any special clothing allowed in the inmate's possession and must be posted in the cell. Possession of non-authorized clothing is prohibited and may result in disciplinary charges.

**Name and Number Labels.** All outer garments must have the inmate's name and number label applied by the laundry. Homemade or hand printed labels are prohibited on state and personal clothing items.

**Dress Code and Grooming.** CTCF Implementation/adjustment 850-5 addresses this subject in detail and is available for viewing in the general library. Prior to leaving the cellhouse, inmates are required to wear notched footwear, state- issue green pants, and state-issue green shirt. Gym clothing with proper labels attached is allowed only when going to and from the recreational yard and gym.

**Reference:** CTCF IA 850-5, 850-11

## V. VISITING

Visiting applications must be completed by the intended visitor, returned to CTCF, and approved by the visiting room sergeant.

The following information should be shared with those individuals placed on your cumulative visiting list. It is recommended that you read DOC Administrative Regulation 300-1 and CTCF Implementation/Adjustment 300-1 for further information.

| Facility Address/Phone Number: | Taxi Cab and Other Services: |
|---|---|
| Colorado Territorial Correctional Facility P.O. Box 1010 Canon City, Colorado 81215-1010 (719)269-4002 Located on Hwy. 50 West, at the far west end of Canon City | Fremont County Cab Service 784-2222 |

Days/Times for Visiting:
Friday from 1200 to 1600 hours; gates open at 1130. Saturday and Sunday from 0930 to 1600 for general population; gates open at 0930. Inmates on removal from population, punitive or administrative segregation will visit by special request only in accordance with CTCF OM 650-101. Cellhouse 5/CTU, A & O, and infirmary visits are on Friday morning only from 0845 to 1045; gates open for processing at 0830. CTU and A & O inmates will only be permitted to visit after assignment to the unit for seven days; inmates in the infirmary will only be permitted to visit after assignment to the infirmary for thirty days. Individuals who visit on either Friday or Saturday will not be permitted to visit on Sunday. Visitors will not be processed after 1530. Maximum of three (3) adult and four (4) children visitors at one time, space permitting. Inmates on Loss of Privileges status will not be allowed visits.

Identification/Dress Code/Allowable Items for Visitors:
Visitors to the facility are expected to present a valid picture ID upon their arrival, and must be dressed in appropriate, conservative clothing. No camouflage, orange or solid green clothing; no gray sweat clothing; no gang-related or obscene designs or messages; no provocative, suggestive or revealing clothing; no hats except for religious hats or headgear will be permitted. Visitors may bring the following items into the visiting room: one plastic, one-piece comb (no rat-tail); one debit card per adult visitor; wedding ring; religious medal; medical alert tag; photo identification card; and car keys/opener. Prescription medication needed by visitors will be checked at the visiting entrance and placed in the visitor locker. No items are to be exchanged between visitors and inmates other than vending machine items.

**Children:**
Visitors must supervise and maintain control over their minor children. No physical discipline is permitted on DOC property. Minor children must be listed on the cumulative visitors record, but will not be counted toward the eleven approved visitors.

**Special Visits:**
Special visits (for example, family emergencies) are arranged through the case manager at least ten days prior to the visit by completing a Special Visit Request form to be approved by the Custody Control Manager.
Visitors will be excluded from the visiting list with authorization from the Administrative Head if they:

determined that the mail is not legal in nature and contains other extraneous material, the inmate may be charged with a disciplinary violation. Outgoing mail to the courts must be taken to movement control for logging the time and date of mailing.

**Reference:** IA 300-38, 750-1

## VIII. MONEY MATTERS

**Inmate Accounts.** All money transactions are recorded within two business days in the inmate accounts office located at CTCF. Any inquiries concerning an inmate's account must be made through the inmate's case manager, who will inform the inmate as to the proper procedure for checking into the matter. Each month the cellhouse distributes a computer printout showing all transactions on each inmate's account for that month. Inmates are encouraged to use this printout to maintain a running balance of their account.

**Reference:** CTCF IA 200-2

**Inmate Pay.** It is the policy of CTCF to provide work, vocational, and academic assignments to all inmates in order to improve job skills and develop good work habits. All inmates are paid on a monthly basis. Those inmates assigned jobs or paid programs will be paid for the days they worked or participated in assigned programs for the month. Those inmates unassigned to either jobs or programs will be paid 23 cents per day. All inmate pay is input and processed on the last day of each month, but will not be posted and available for use for up to eight (8) days.

**Reference:** IA 850-3

**Indigent Inmates.** Definition: An unemployed inmate declaring indigence in accordance with DOC AR 850-14, whose available account balance in the preceding thirty (30) days has been reduced below the following, qualifying, designated dollar amount or has not reached the specified amount:

1. For basic hygiene items, $4.60;

2. For personal letters (social correspondence to family and friends) $4.60, one personal letter per week with postage not to exceed $2.00 per month.

**Reference:** IA 850-14

**Indigence Assistance.**

1. Hygiene Items. Basic hygiene items shall be issued to the indigent inmate once per month.

2. Personal Mail. When funds are available, an inmate may be allowed to mail out one (1) personal letter per week with postage paid by CTCF.

3. Legal Photocopies. Through the CTCF law library, an indigent inmate shall be allowed a reasonable number of copies of legal documents related to his own active legal case as outlined in DOC Administrative Regulation 750-1, "Legal Access."

4. Privileged Mail. CTCF will pay the postage for mail addressed to a court, state licensed attorney or the authorized paralegal of a licensed attorney, or a state/federal government official in order to ensure timely mailing. However, the postage will be charged against the inmate's DOC account. An indigent inmate shall be responsible to clearly mark the envelope as privileged mail, and it will be appropriately processed.

5. Secondary Medical Care. All inmates, regardless of indigence status, have access to secondary medical care as described herein. A $3 fee will be charged against the inmate's account for this care.

**Secondary Medical Care.** Definition: Physician care requested and received by an inmate beyond the advice of DOC medical staff which statutorily (CRS 17-1-113) requires the assessment of a $3 medical charge to the inmate.

An inmate declaring indigence must request indigence status in writing to his case manager by including self-declaration of financial status and identifying the specific assistance requested.

must be placed by the 17th of each month and will begin on the first of the following month. Subscriptions must be to daily newspaper publications; no weekend-only newspaper subscriptions will be allowed.

**Reference:** IA 300-26, 300-38

**Savings Accounts.** Inmates are permitted to start and/or maintain a bank savings account. Procedures can be obtained through the inmate's case manager. Checking accounts are not authorized.

**Credit Cards and Loans.** Inmates may not make purchases which allow payment over a period of time. This type of transaction is considered entering into a contract and violates the COPD.

## IX. HOUSING

**Cell Assignments.** Cell assignments will be made by the cellhouse staff. All CTCF cellhouses have double and single bunked cells. CTCF has a facility single cell seniority list. The criteria for a single cell may be based on date of arrival at CTCF, date of last Code of Penal Discipline (COPD) conviction or work assignment. Single cell status will be forfeited upon a COPD conviction or failure to participate in an assignment designated by the classification committee. Cell assignment changes will only be made with the approval of the cellhouse staff.

**Reference:** CTCF OM 650-102

**Conduct.** Inmate conduct in the cellhouse is governed by the posted operational rules. The posted operational rules are posted in every cellhouse. It is the responsibility of each inmate to read and adhere to the posted operational rules.

Borrowing, loaning, selling, gambling, or giving anything of value to another inmate for any reason is prohibited.

If problems occur with other inmates, it is the inmate's responsibility to make staff aware of the problems.

**Reference:** CTCF OM 850-100

**Cell Keys.** Inmates assigned to cellhouses requiring cell keys to be issued will be responsible for the key. Any lost or stolen keys must be reported to the cellhouse staff immediately. The inmate is financially responsible for any lost or intentionally damaged key/locks. Key replacement costs are single cell - $40.00; double cell - $42.50; broken keys - $2.50 to replace.

**Telephones.** Inmate telephones and telephone areas are governed by the posted operational rules and AR/IA 850-12. Any telephone damage or tampering may result in the removal of the telephone from the respective cellhouse. Telephone calls may be made during times when day room privileges are allowed. Inmate use of the telephone is a privilege that will be revoked for misuse. A telephone for the hearing impaired is available. Inmate telephones are accessed through the Colorado Inmate Phone System (CIPS). CIPS forms may be obtained from the cellhouse staff. Once completed, they must be turned in to the inmate's case manager. Inmates will be issued a personal identification number (PIN) after their CIPS form has been submitted and approved. Approved numbers will be given a preferred two-digit speed-dial number. Inmates are allowed a maximum number of 15 approved numbers on their CIPS list. The CIPS form will also be used to make changes to the current approved CIPS list. Money may be placed on an inmate's account by weekly purchases from the canteen. To place a call on the CIPS system, the inmate must have the appropriate amount in his account to pay for at least a three-minute phone call. The maximum duration of phone calls is twenty minutes.

To place a call on the CIPS system, a 10-digit access code (0 + DOC No. + PIN No.) is dialed, followed by the assigned speed-dial number; and a recording requests either "1" for debit or "2" for collect be pressed. If an inmate wishes to use the collect system, family members and/or friends must contact the vendor, VAC Customer Service at 1-800-913-6097. All telephones used by inmates for other than attorney calls are subject to recording and/or monitoring by staff.

**Reference:** CTCF IA 850-12

**Medical Lay-in.** An inmate on a medical lay-in shall remain in his assigned cell for the duration of the lay-in except for scheduled medical, dental, and mental health appointments. Unless the medical lay-in specifically prescribes meals be sent to the cellhouse, the inmate will also be allowed out of cell for meals.

manager is responsible for counseling and advising the inmate during their assignment at CTCF. Case managers are responsible for earned time awards, classification, and parole board presentations.

**Classification and Custody.** CTCF is a medium security facility which houses medium, close, minimum restrictive and minimum custody inmates. Classification can be changed when circumstances indicate the need. Inmates working outside the main compound must have a minimum restricted or minimum custody classification. Inmates whose points are increased due to disciplinary reports, detainer, or newly gained information may be reclassified to a higher security or administrative segregation classification.

All classification actions are initiated by the case manager and reviewed by the case management supervisor for approval by the appropriate authority. Inmates refusing to participate in required programs will not be eligible for a job requiring minimum or minimum restricted classification.

**Work/Program Assignment.** Initial job/program referrals, including referral to a mental health program, will be made by the case manager through master program scheduling (MPS). Information concerning job referrals is available from the cellhouse staff or the prospective work/program supervisor.

**Parole Board.** The parole board usually meets at CTCF during the first week of each month. When an inmate's parole eligibility date (PED) approaches, the case manager will assist in developing a parole plan. The case manager will also advise the inmate what the parole board expects of them. The inmate's institutional record, cellhouse ratings, job ratings, disciplinary record, programs participation, and criminal recidivism will have a significant bearing on the parole board's decision.

**Family or Personal Emergencies.** Should the facility be notified of a family emergency, the volunteer chaplain or inmate's case manager will be notified and will in turn notify the inmate. Should the inmate become aware of a family emergency, the inmate may consult the appropriate case manager, who will attempt to assist upon verifying the emergency. It is imperative the inmate keeps his case manager apprised of any emergency. Should an inmate have a problem within the facility, it is the inmate's responsibility to notify any staff member of the problem immediately. Emergency escorted leave is explained in DOC Administrative Regulation 300-17.

**Earned Time.** Definition: Earned Time (ET). Time that may be deducted from the inmate's sentence provided certain conditions are met; not to exceed ten (10) days per calendar month. Any conviction of COPD violation will result in no consideration for ET for the following time frames: Class I: The month of the conviction and the following two months; Class II: The month of the conviction and the following month; Class III: The month of the conviction.

An inmate's behavior within the cellhouse along with cell cleanliness will be rated by the case manager. The maximum award is two days per month.

Employment/academic/vocational supervisor will ensure work evaluations are completed monthly via Master Program Scheduling (MPS). The evaluation scale is rated from "1" to "5" with "5" being the lowest. The maximum award is two days per month.

The case manager will evaluate the overall compliance of the inmate with his diagnostic program and/or needs assessment, his program participation, his participation in self help groups and recommend zero to one day for MGT or zero to five days for ET. The case manager will also award one day (ET only) for not contacting or harassing a witness or a victim. The case manager will review with the inmate the MGT/ET awards and explain their denial of any MGT/ET withheld. Earned time awarded for participation in the academic/vocational program will be awarded by the academic/vocational program in accordance with C.R.S. 17-22.5-302.

**Reference:** CTCF IA 300-17, 500-1, 550-1, 850-3

## XI. INMATE GRIEVANCE PROCEDURE

**General.** The purpose of the inmate grievance procedure is to provide inmates a legitimate method of settlement or request for accommodation under ADA when an inmate has been unable to resolve issues related to his disability.

A grievance is a formal complaint concerning an incident or condition. Inmates with disabilities requiring inmate assistance in completing the grievance form may make arrangements with their housing supervisor. Inmates may file an emergency grievance based upon a denial that he has a qualifying disability pursuant to ADA or failure to accommodate a qualifying disability

## XIII. MENTAL HEALTH SERVICES

If an inmate feels he would benefit from participation in any of the various mental health groups, he may apply for consultation with his case manager or one of the mental health staff who will determine which therapy would best serve his needs.

The Mental Health Department is located in the central building providing treatment evaluations and group therapy. The groups available are: Stress management, Life Management, Core Curriculum, Sex Offender Treatment, Life Skills, and Support Groups for Inmates With Learning Problems. Other services available are psychiatric care, crisis intervention, transition to community for special needs inmates and facility job coaching for special needs inmates.

In order to receive these services an inmate must obtain a Request For Interview Slip from the officer in the control center, fill it out and place it in the mailbox located in the cellhouse or have his case manager send a referral. In an emergency, the inmate must inform the cellhouse staff of the situation and they will assist the inmate.

**Sex Offender Treatment Program (SOTP).** This program is required for all sex offenders; who will be automatically referred. After completion of the basic mental health program, all sex offenders will be screened by the mental health sex offender team. The screening will determine the inmate's qualification for treatment. Although inmates cannot be forced to attend, failure to attend a prescribed program will result in withholding of earned time and will preclude any progression through the correctional system. If such a program has been prescribed for an inmate, the inmate should take the necessary steps to attend. This can be accomplished through his case manager.

**Drug and Alcohol Education Group.** This group is designed to provide assistance to inmates with substance abuse problems. The group will help an inmate understand addiction problems and how to deal with them.

**Drug and Alcohol Support Group.** Support is provided through this group for inmates who have completed the drug and alcohol education group and want to take steps to ensure that they do not fall back into an addictive mode.

**Addiction Recovery Group.** Inmates may attend this voluntary group part time or in conjunction with their regular job assignment. Successful completion of this program will have a significant bearing on future progressive transfers, minimum classifications, and parole. The inmate's case manager may recommend an inmate for this program.

**Individualized Therapy.** Therapy is available for those inmates who, in the opinion of mental health specialists, would benefit from one-on-one sessions. Due to staff limitations, this approach is utilized only for the most serious cases.

**Transition Groups:** Treatment focuses on special needs inmates who are preparing for transition back into society by assisting with job applications, obtaining SSI funds, and conducting mock job interviews.

**Anger Management Group:** This group is designed to help inmates adjust to the stress of incarceration in an acceptable manner.

**Developmentally Disabled Groups:** Treatment focuses on assisting inmates with developmental disabilities to obtain needed social skills.

Reference: CTCF IA's 700-1, 700-2, 700-3

## XIV. FOOD SERVICES

Three meals are served each day. Times are posted in CTCF Operational Schedule, OM 300-108 A.

There are two dining rooms, the Hardrock Café to the South and the Sandstone Café to the North. The serving windows in each dining room are open for 30 minutes each meal.

The first three rows of tables in the Sandstone Café (North dining room) as well as some first row seats in the Hardrock Café (South dining room) are reserved for physically challenged inmates and their assisted daily living assistants and seating in this area is restricted.                                                     ADL's or food service workers will assist physically challenged inmates as needed with trays, etc. Seating is on a row by row basis for the remainder of the population as directed by staff. Inmates will have approximately 20 minutes to complete their meal and must leave the dining hall and return to their cellhouse when they finish their meal.

## XVII. ACADEMIC AND VOCATIONAL PROGRAMS

Academic School.  A student is referred to educational programs, which are paid work assignments, by his case manager. Students must enroll in either one full day program or two half day programs to complete a full day work assignment.  Those wishing to work on GED skills independently may check out study materials from the library.  GED qualification testing is conducted by the school on alternating months with the Official GED test.

Classes available are:  Adult Basic Education (ABE).
General Education Development (GED).
Healthy Living
Social Services

Vocational Programs: Basic Janitorial
Advanced Janitorial
Culinary Arts
Basic Computer Operations

**Reference:** CTCF IA's 500-1, 1050-1

## XVIII. RECREATIONAL SERVICES AND THE INMATE BARBERSHOP

**Recreation Yard and Gym.**  There is a wide variety of recreational activity provided by the gym staff.  The gym itself is open from September through March.  Activities in the gym are: volleyball, weights by permit only, handball, racquetball, and basketball.   March through August recreational activities occurring in the big yard are: outside weight area, activities court, basketball court, volleyball, football, and softball.  There also is a track for running or walking.  There are special events for major holidays with prizes awarded of ice cream and ribbons.  Leisure-time activities provided in the gymnasium include video games and foosball.

Sunday through Saturday afternoon in the gym there are activities for the physically challenged inmates.

**Music Program:**  A music program is offered by permit only.  Current days and hours of operation are posted and are subject to change.

**Inmate Barbershop:** The inmate barbershop provides limited hair cutting services and is located in the midway building.  Inmates are allowed one haircut and one beard clipper cut per moth.  No razor cuts, hair coloring, shaving, or shampoos are allowed.  Inmates requesting haircuts will obtain a pass from cellhouse staff, sign in with the midway officer and return the pass after receiving the haircut.

**Reference:** CTCF IA's 850-11, 1000-1, and CTCF OM 1000-100

## XIX. RELIGIOUS SERVICES

CTCF has volunteer led weekly programs for the following faith groups:

Protestant - Prison Fellowship, Turning Points Bible Study, Grace Fellowship, Chapel Services
Catholic - Renewal Bible Study, Monthly Catholic Mass (when possible)
Jehovah Witness - Saturday Service, Wednesday Book Study
Latter Day Saints - Sunday Service

There are also weekly services for Native Americans, Muslims, Orthodox Jews, and Messianic Jews.  Other volunteer programs that are offered on a more limited basis include; Promise Keepers, Kairos, Shekinah Ministries,  Heritage Christian Center, various seminars, and special programs.
A full-time volunteer chaplain  has his office in the chapel.  There is a library including books and video/audio tapes in the chapel. Many periodicals, tracts and other materials are also available for free distribution.

Information on service times and chaplain's hours are posted in the chapel window.

EXHIBIT " J "

BELL
7/3/2008

DC FORM 850-4A (10/04)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CT08/09-023**    STEP (Circle One)  ①  2  3    ADA?   Yes ☒   No ☐

| NAME | **REDMON, MATTHEW T** | DOC NO. | **140637** | FACILITY C.T.C.F. |
|---|---|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

YESTERDAY, 07/07/08, I WAS TAKEN TO PUEBLO TO RECEIVE MY HEARING AIDS. WHEN I WAS TAKEN, MY HANDS WERE SHACKLED IN SUCH A WAY AS TO MAKE THE USE OF SIGN LANGUAGE IMPOSSIBLE. I NEEDED TO CONVERSE WITH OTHER INMATES, FOR STAFF, AND COULD NOT DO THIS. HAD I BEEN COMPLETELY DEAF, LIKE OTHER INMATES I WOULD HAVE BEEN UP THE CREEK JUST LIKE OTHER INMATES ARE, WHEN TRANSPORTED THIS WAY. 5 HOURS LIKE THAT!

| DATE: 07/08/08 | OFFENDER SIGNATURE | #140637 |
|---|---|---|
| DATE RECEIVED: 7/22/08  RESPONSE | RESPONDING STAFF SIGNATURE & ID  Adrienne Jacobson, #4299 | |

**SEE ATTACHED RESPONSE**

**Cathie Holst, Manager**
**Office of Correctional Legal Services**
**AIC-ADA Inmate Coordinator**
**#1722**

Cathie Holst
9-5-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 9/02/08 | SIGNATURE/PRINT NAME & STAFF ID # Adrienne Jacobson 14299 |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | |
| DATE: 7/18/08 | SIGNATURE/PRINT NAME & STAFF ID # Connie Higgs 6163 Disability |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | RECEIVED |
| DATE: 9/15/08 | OFFENDER SIGNATURE/PRINT NAME & DOC # 140637 |

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

7-9-08
C*

Attachment "A"
Page 1 of 1

JUL 2 2 2008

Office of Correctional
Legal Services

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CTOF/09-C33**       STEP (Circle One)   1  (2)  3        ADA?   Yes ☒   No ☐

NAME **MATTHEW REDMON**   DOC NO. **140637**   FACILITY **C.T.C.F.**

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

MS. JACOBSON IS SEVERELY MISINFORMED ABOUT THE EXTENT OF MY KNOWLEDGE OF, AND USE OF, SIGN LANGUAGE. AT THE DATE OF THIS GRIEVANCE, I WAS QUITE PROFICIENT. SINCE CDOC REFUSES TO PROVIDE INTERPRETERS AS NEEDED, I WAS THE INTERPRETER. I COULD NOT DO THIS WITH MY HANDS IMMOBILIZED AND CHAINED TO MY WAIST. CDOC HANDCUFFING PROCEDURES ARE A SERIOUS VIOLATION OF THE MONTEZ REMEDIAL PLAN AND OF GOOD COMMON SENSE. I AM STATING THAT THERE ARE OTHER PROCEDURES, WHICH ARE ACCOMMODATING, AND NOT BEING USED BY CDOC.

DATE: **9/15/08**   OFFENDER SIGNATURE _____

DATE RECEIVED: **9/20/08**   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

**RESPONSE**

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: **10/14/08**   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID# _Anna Cooper #1350  Anna Cooper_

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

DATE: **9/18/08**   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID# _Connie H. aka Connie Higgs 6163  Disability_

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: **10/17/08**   OFFENDER SIGNATURE/PRINT NAME & DOC # _140637_

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

AB 9-15-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:    719.226.4249

Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

| | |
|---|---|
| Response to: | Step 2 ADA Grievance |
| From: | Gary Golder, Director of Prisons |
| Through: | Anna Cooper, Designee |
| Received Grievance: | 9/20/2008 |
| Sent Response: | 10/14/2008 |
| Offender Name: | REDMON, Matthew |
| DOC No: | #140637 |
| Facility: | CTCF |
| Case No. | D-CT08/09-023 |

Offender Redmon:

I received your ADA Step 2 grievance stating that Ms. Jacobson is severely misinformed about the extent of your knowledge of and use of, sign language.   CDOC's handcuffing procedures are a serious violation of the Montez Remedial Plan.  You stated no specific remedy in this Step 3 grievance.

The response you received to your Step 1 grievance dated 9/8/08, stated:
- You do have a qualifying hearing disability; however you do not utilize sign language as your sole means of communication.
- You began ASL classes to begin learning sign language on 7/30/2008, however, did not know sign language at the time of the transport on 7/7/08.
- You were advised that you cannot grieve on behalf of other offenders.
- Your grievance was denied.

In review of this matter, I find the following:
1. Records indicate you were screened and determined to have a qualifying hearing disability.
2. You were moved from DRDC to CTCF on 3/28/2008 and placed on the list to enroll in the American Sign Language class.
3. The class began on approximately 7/30/2008.
4. An audiogram was conducted on 5/19/2008 and it was noted that you did not know or use American Sign Language or hand gestures to communicate.  Rather, you did read lips and could hear raised voices.
5. The transport in question occurred on 7/7/2008, nearly 4 weeks prior to your beginning the ASL class.

6.  Your claim that the method used by CDOC to handcuff offenders during a transport is a violation of the Montez Remedial Plans since you were unable to use your hands to communicate, and served as the offender and staff interpreter during the transport on 7/7/2008.

I find that the response you received to your Step 1 of this grievance is accurate and appropriate.  It is documented that you did not know or use ASL prior to beginning the class on 7/30/08, therefore would not have used your hands to communicate during the transport on 7/7/08.  The handcuffing restraints used during the transport were appropriate.

As you requested no remedy in this Step 3 grievance, none can be granted.

amc
xc:  AIC File
        Working File
        Department File
        Elec. file

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **S-CTCF/09-033**   STEP (Circle One)   1   2   ③   ADA?   Yes ☒   No ☐

NAME **MATTHEW REDMON**   DOC NO. **140637**   FACILITY **C.S.C.F.**

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

THIS GRIEVANCE IS NOT ABOUT MY USE OF, OR KNOWLEDGE OF SIGN LANGUAGE. IT IS ABOUT CDOC'S ILLEGAL HANDCUFFING PROCEDURE. I DEMAND THAT CDOC NOT CHAIN MY HANDS TO MY WAIST. THE CURRENT HANDCUFFING PROCEDURE IS A VIOLATION OF THE MONTEZ REMEDIAL PLAN. I NEED TO BE ABLE TO USE MY HANDS TO COMMUNICATE WITH OTHER DEAF INMATES. MS. COOPER AND MS. JACOBSON ARE SEVERELY MISTAKEN IF THEY BELIEVE THAT CDOC'S ASL CLASS IS THE ONLY PLACE I MIGHT HAVE LEARNED SIGN LANGUAGE. I AM HOUSED WITH THE DEAF, AND ON 5/22/08, I RECEIVED MY SIGN LANGUAGE BOOKS FROM CSCF MAILROOM.

DATE: **10/17/08**   OFFENDER SIGNATURE _____

DATE RECEIVED:   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

**RESPONSE**

RECEIVED

OCT 24 2008

Office of Correctional
Legal Services

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE:   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID #

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

DATE: **10/22/08**   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # **Connie Higgs Connie Higgs 6163**

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE:   OFFENDER SIGNATURE/PRINT NAME & DOC #

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

**AB 10-17-08**

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Step 3 Grievance Officer
2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:    719.226.4249

Step 3 Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

November 20, 2008

RE: Grievance #D-CT08/09-023

Dear Mr. Mathew Redmon #140637:

I have reviewed your Step 3 grievance that you filed with regard to cuffing procedures.

I could not determine from your step 3 grievance or any other step, what relief you are asking for.  When drafting a grievance you must include what remedy you are seeking.  I cannot make a determination of the facts if no solution or restitution is plead.  There is no way I can determine what it is that would satisfy your grievance.

Additionally, I did not receive a copy of your Step 1 response of the staff member to your previous submission.

It is the offender's responsibility to provide copies of all previous steps and responses.  Administrative Regulation 850-04 IV. B. 4. a. requires that these procedures must be followed.  Without these prior steps, I have no way of determining what your initial complaint was and how staff responded to that complaint.

You failed to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies.

The time constraints outlined in AR # 850-04 are now expired regarding these events, so there will be no further review of this matter.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance that you filed: Step 1 Grievance, Step 2 Grievance and Step 3 Grievance.

Sincerely,

Anthony A. DeCesaro
Grievance Officer

cc: working file
    grievance file
    Tom Kolle, Offender Records

EXHIBIT "K "

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CT07/08-472      STEP (Circle One) (1)  2  3      ADA?  Yes ☐  No ☒

NAME MATTHEW REDMON   DOC NO. 140637      FACILITY Co. S., C. F.

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

THIS IS ON THE NON COMPLIANCE WITH DOCUMENT #3326, FILED ON 04/04/08 IN U.S. DISTRICT COURT CASE No. 1:92-CV-00870-EWN-OES... A.K.A. - MONTEZ VS. OWENS... THE DOCUMENT STIPULATES SANCTIONS AGAINST THE DEFENDANT FOR FAILURE TO COMPLY... THEY ARE LISTED AS NUMBERS 1-36... I AM GRIEVING THE DEFENDANTS FAILURE TO IMPLEMENT THE REQUIRED SANCTIONS IN THE REQUIRED TIME FRAMES. ALL OF 1-36....

DATE: 6/09/08   OFFENDER SIGNATURE [signature]   #140637

DATE RECEIVED: 6/16/08   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

RESPONSE

**SEE ATTACHED RESPONSE**

Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

[signature] #1799

[signature] Cathie Holst
7-21-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: 7/18/08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # [signature] #1799

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

DATE: 6/12/08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Higgs   Connie Higgs 66603 Disability

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.   RECEIVED

DATE: 7/28/08   OFFENDER SIGNATURE/PRINT NAME & DOC # [signature] #140637

Original: Department File/AIC      Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

JUN 16 2008

Office of Correctional
Legal Services

AB 6-9-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:      719.226.4249



Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Response to Step 1 ADA Grievance
From:  Adrienne Jacobson, Legal Assistant, Designee
    Office of the AIC (ADA Inmate Coordinator)
Received Grievance: June 16, 2008
Sent Response: July 2*_* , 2008
Offender Name: REDMON
DOC No: 140637
Facility: CTCF
Grievance No: D-CT0708-472

Aristedes W. Zavaras
Executive Director

## YOUR DISABILITY DETERMINATION IS STILL PENDING.
**In the grievance referenced above, you allege the following:**

1.  That CTCF is not in compliance with Stipulation #2 in the April 4, 2008 Stipulation order.

2.  That CTCF is not in compliance with Stipulation #5 in the April 4, 2008 Stipulation order.

3.  That CTCF is not in compliance with Stipulation #11 in the April 4, 2008 Stipulation order.

4.  That CTCF is not in compliance with Stipulation #16 in the April 4, 2008 Stipulation order.

5.  That CTCF is not in compliance with Stipulation #17 in the April 4, 2008 Stipulation order.

6.  That CTCF is not in compliance with Stipulation #29 in the April 4, 2008 Stipulation order.

7.  That CTCF is not in compliance with Stipulation #30 in the April 4, 2008 Stipulation order.

8.  That CTCF is not in compliance with Stipulation #32 in the April 4, 2008 Stipulation order.

**Requested Relief/Remedy:**

1a. you do not list any relief or remedy.
2a. Same as #1a above.
3a. Same as #1a above.
4a. Same as #1a above.
5a. Same as #1a above.
6a. Same as #1a above.
7a. Same as #1a above.
8a. Same as #1a above.

**FOLLOWING A THOROUGH INVESTIGATION INTO YOUR ALLEGATIONS, I OFFER THE FOLLOWING EVIDENCE THAT WAS CONSIDERED IN REACHING A DECISION:**

1. Stipulation #2 states, in part, "CDOC will provide long-lasting batteries for hearing aids," based on the information I have received, long-life hearing aid batteries were sent to the facilities for distribution to offenders on June 27, 2008.

2. Stipulation #5 states, in part, "CDOC will add ASL classes", ASL classes are being added to the list of available classes for offenders and your name has been added to the list of possible attendees.

3. Stipulation #11 states, in part, "TTY Machines will be made available to inmates in the same manner the CIPS telephones are available", based on the information I have received, TTY ~~machine phone booths~~ KIOSKS were installed at CTCF in ~~early~~ July for offender use. & Should soon be operational.

4. Stipulation #16 states, in part, "CDOC shall provide two hearing aids to those who meet agreed upon criteria", as stated above, your ADA Screening indicated a need for bilateral hearing aids and based on the information I been able to obtain, you have already been fitted for bilateral hearing aids.

5. Stipulation #17 states, in part, "All hearing impaired inmates at CTCF shall be housed in cells with strobe alarms", it is my understanding that this issue has been resolved and that you are currently housed in a cell with a strobe alarm.

6. Stipulation #29 states, in part that, "Co-payment refunds may be requested via kites directly to clinical services who will then report them to the AIC." This is an issue that must be resolved by contacting clinical services in order to determine the process for requesting your co-payment refunds where applicable.

7. Stipulation #30 states in part, "Inmates will be provided 2 copies of their ADA grievances when filed." A memo has gone out to the facilities regarding this matter and it is my understanding that this should be occurring at this time.

8. Stipulation #32 states that "CDOC will post a mutually agreeable notice that the Montez case has been further extended in all facilities." These postings were sent to the facilities for posting beginning in early July.

9. Your disability determination is still pending, according to AR 850-04, in order to be classified as an ADA grievance, the subject matter must be based on 1) a denial that an offender has a qualifying disability, 2) the failure to accommodate a qualifying disability, 3) failure to provide an accommodation enumerated on an accommodation resolution or 4) other matters that directly relate to an offender's disability. Additionally, according to AR 850-04, "if the (ADA) screening process is incomplete and the *offender has not received an accommodation resolution* from the AIC, the grievance may be denied on procedural grounds without prejudice.

2. Our office is still awaiting the final determination of your disability status based on the screening conducted on March 19, 2008 and subsequent audiologist report on May 19, 2008. You were screened for a hearing disability. As soon as our office receives confirmation of your disability status from the Chief Medical Officer, an accommodation resolution informing you of the result of your screening and what, if any, accommodations you require will be forwarded to you.

**CONCLUSION:**
I have fully investigated this matter and found that in addition to having been filed prematurely under AR 850-04, your allegations of non-compliance have been remedied at this time rendering the matters moot and leaving no further redress to be offered. As such, this grievance is denied on procedural grounds without prejudice.

**GRIEVANCE DENIED.**

DC Form 850-04A (07/01/07)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number **D-CTO7/08-472**      STEP (Circle One)   1  ②  3      ADA?  Yes ✗   No ☐

NAME **MATTHEW REDMON**   DOC NO. **140637**   FACILITY **C.S.C.F.**

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

THE ANSWER THAT I RECEIVED TO STEP #1 OF THIS GRIEVANCE HAS NO REAL RELATION TO THE WORDS THAT I WROTE ON THE GRIEVANCE. MY RESOLUTION MUST HAVE BEEN APPROVED, I HAVE GOTTEN MY HEARING AIDS. SO, THAT EXCUSE IS MOOT. NOW! I GRIEVED PARAGRAPH'S 1-36 IN DOCUMENT #3326. THE FACT IS, THAT AT THE TIME I WROTE THE STEP 1, AND STILL, RIGHT NOW, THE CDOC IS NOT IN COMPLIANCE WITH THE REMEDIAL PLAN OR DOCUMENT #3326, WHICH IS THE SANCTIONS FOR NON-COMPLIANCE. WHAT IS MY REMEDY? THE REMEDY IS BEFORE DOC's EYES, DOCUMENT #3326 IS THE REMEDY. CDOC NEEDS TO FOLLOW THE DOCUMENT

DATE: **7/28/08**   OFFENDER SIGNATURE _____  #**140637**

DATE RECEIVED: **8/8/08**   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID #**1550**

**RESPONSE**

*Please see attached response.*

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: **9-10-08**   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # _____ (Perez?) #1550

RECEIPT: I acknowledge receipt this date of a response from the above offender in regard to the following subject:

DATE: **8/5/09**   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # _____ Commodities 6/6'5 Disability

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: **9/19/08**   OFFENDER SIGNATURE/PRINT NAME & DOC # _____ **140637**

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

**AB 7-30-08**

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:   719.226.4238
Fax:     719.226.4249

Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

| | |
|---|---|
| Response to: | Step 2 ADA Grievance |
| From: | Gary Golder, Director of Prisons |
| Through: | Anna Cooper, Designee |
| Received Grievance: | 8/8/2008 |
| Sent Response: | 9/10/2008 |
| Offender Name: | REDMON, Matthew |
| DOC No: | #140637 |
| Facility: | CTCF |
| Case No. | D-CT07/08-472 |

Offender Redmon:

Your ADA Step 2 grievance was received on August 8, 2008.  In accordance with AR 850-04 Grievance Procedure, you were entitled to proceed to Step 3 as of September 2, 2008, without having received a response to this Step 2.   I apologize for the delay in responding to your grievance within the required time frames.

I received your ADA Step 2 grievance stating that you believe the CDOC is not in compliance with the Remedial Plan or document #3326.  The remedy you requested is that Document #3326 is the remedy, and CDOC needs to follow the documents.

The response to your Step 1 grievance dated July 21, 2008, stated that:
- CDOC was in compliance with Stipulation #2
- CDOC was in compliance with Stipulation #5
- CDOC was in compliance with Stipulation #11
- CDOC was in compliance with Stipulation #16
- CDOC was in compliance with Stipulation #17
- CDOC was in compliance with Stipulation #29
- CDOC was in compliance with Stipulation #30
- CDOC was in compliance with Stipulation #32
- Your disability determination was still pending therefore, your grievance was filed prematurely

- As soon as the disability status was confirmed by the Chief Medical Officer, an accommodation resolution would be prepared and distributed enumerating any accommodations you were entitled to
- Grievance was denied

Your accommodation resolution has been signed by the Chief Medical Officer and it has been determined that you do have a hearing disability and are entitled to accommodations; however, you do not have a mobility disability. All enumerated accommodations have been provided, as was explained in your Step 1 response, and in compliance with the Remedial Plan and stipulations.

Your Step 2 ADA Grievance is resolved.


amc
xc:  AIC File
         Working File
         Department File
         Elec. file

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number: D-CF07/08-472       STEP (Circle One)   1   2   ③       ADA?   Yes ☒   No ☐

NAME: MATTHEW REDMON       DOC NO. 140637       FACILITY C.T.C.F.

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

MY GRIEVANCE IS NOT RESOLVED !! THERE CAN BE NO RESOLUTION TO MY GRIEVANCE UNTIL CDOC COMPLIES WITH DOCUMENT #3326 AND THE MONTEZ REMEDIAL PLAN. IT IS MY UNDERSTANDING THAT THE OFFICE OF THE AIC IS SUPPOSED TO ADVOCATE FOR INMATES, NOT FOR CDOC !! WHERE IS THE ADVOCATION? WHEN WILL IT START? I WANT THE AIC TO ADVOCATE.

DATE: 9/20/08       OFFENDER SIGNATURE [signature]

DATE RECEIVED:       RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

RESPONSE

RECEIVED

RECEIVED

SEP 2 9 2008

Office of Correctional
Legal Services

SEP 2 5 2008

Office of Correctional
Legal Services

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

| DATE: 9/23/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Neagot  Connie Higgs (illeg) |
|---|---|

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

| DATE: | OFFENDER SIGNATURE/PRINT NAME & DOC # |
|---|---|

Original: Department File/AIC       Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

AB 9-22-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Step 3 Grievance Officer
2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:      719.226.4249

Step 3 Grievance Officer

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

November 13, 2008

RE: Grievance #D-CT07/08-472

Dear Mr. Mathew Redmon #140637:

I have reviewed your Step 3 grievance that you filed with regard to ADA issues.

In review of this matter it is my finding you initially filed this ADA grievance prior to receiving your accommodation resolution ("AR"). Since that time you have received your AR dated 9/15/08. Per that AR, you were found to have hearing disability and not to have a mobility disability. Each of the issues, which you raise regarding the adherence to the stipulation, have been addressed and specifics have been articulated in the Step 1 response to this grievance. From that response all of your concerns have been appropriately addressed regarding each stipulation issue you raised. Additionally, you raised these issues prematurely, because at the time you had not yet received your disability determination or your AR. I find that the compliance period is on-going and that process is being monitored by the court and counsel for both sides. Based upon the foregoing I cannot recommend any relief in this matter.

Your request for relief is denied. This is the final administrative response in this matter and you have exhausted your administrative remedies.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance which you have filed: Step 1 Grievance, Step 2 Grievance, and Step 3 Grievance.

Sincerely,

Anthony A. DeCesaro
Grievance Officer

Cc: working file
    grievance file
    Tom Kolle, Offender records

EXHIBIT " L "

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4236
Fax:    719.226.4249

Office of ADA Inmate Coordinator (AIC)



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

## MEMORANDUM

TO:       Offender REDMON, MATTEW #140637
          CTCF

FROM:     Adrienne Jacobson, Designee
          Office of the AIC (ADA Inmate Coordinator)

RE:       Your correspondence received on 7/7/08, 6/17/08 and 6/11/08

DATE:     July 18, 2008

Offender Redmon:

In your series of letters sent to this office, you make several allegations of DOC's non-compliance with the Montez Stipulation order of April 4, 2008. I have investigated each of these claims and a complete summary follows.

You entered the Colorado Department of Corrections through the Denver Reception and Diagnostic Center (DRDC) on 3-19-08.  You received an initial intake evaluation on 3-19-08. The result of that screening indicated that you may have some hearing loss and it was noted that you appeared to use lip reading and to require staff to speak in a raised voice in order to communicate effectively.  At that time, temporary accommodations were recommended and our office was contacted to request that you receive an official ADA screening for hearing disability.

After your ADA screening at DRDC, a consult for an audiogram was made in order to determine the extent of your hearing loss. You received an audiologist exam on 5-19-08 and it was recommended that you receive hearing aides. The Chief Medical Officer (CMO) confirmed the recommendation of the outside provider and, according to your DOC record; you had an appointment for hearing aid fitting on 7-7-08. Your hearing aides should be forthcoming and an accommodation resolution indicating your need for hearing aides and any additional accommodations is being drafted.

In your letter dated 6/14/08 you state that you were not included on the list of offenders to be offered American Sign Language classes. I apologize for the delay in adding you to that list. Since your hearing screen was still pending when we submitted the original list, your name was not included. I have added your name

to the list and <u>you should have</u> already <u>received</u> the paperwork that was sent to your Case Manager for you to complete.

In your letter dated 7/07/08 you indicate that you have not yet received a vibrating watch. Again, at the time that the original watch lists were generated, your screening was still pending so you were not included. I have requested that a <u>vibrating watch</u> be sent to your facility <u>and it should arrive shortly.</u>

Finally, in your letter dated 6/11/08 you make several allegations which I will address in turn.

You allege that CTCF is not in compliance with Stipulation #2 in the April 4, 2008 Stipulation order. Stipulation #2 states, in part, "CDOC will provide long-lasting batteries for hearing aids," based on the information I have received, long-life hearing aid batteries were sent to the facilities for distribution to offenders on <u>June 27, 2008.</u>

You allege that CTCF is not in compliance with Stipulation #5 in the April 4, 2008 Stipulation order. Stipulation #5 states, in part, "CDOC will add ASL classes", ASL classes are being added to the list of available classes for offenders and your name has been added to the list of possible attendees.

You allege that CTCF is not in compliance with Stipulation #11 in the April 4, 2008 Stipulation order. Stipulation #11 states, in part, "TTY Machines will be made available to inmates in the same manner the CIPS telephones are available", based on the information I have received, TTY kiosks were installed at CTCF in July and should be operational soon.

You allege that CTCF is not in compliance with Stipulation #16 in the April 4, 2008 Stipulation order. Stipulation #16 states, in part, "CDOC shall provide two hearing aids to those who meet agreed upon criteria", as stated above, your ADA Screening indicated a need for bilateral hearing aids and based on the information I have been able to obtain, you have already been fitted for bilateral hearing aids.

You allege that CTCF is not in compliance with Stipulation #17 in the April 4, 2008 Stipulation order. Stipulation #17 states, in part, "All hearing impaired inmates at CTCF shall be housed in cells with strobe alarms", it is my understanding that this issue has been resolved and that you are currently housed in a cell with a strobe alarm.

You allege that CTCF is not in compliance with Stipulation #29 in the April 4, 2008 Stipulation order. Stipulation #29 states, in part that, "Co-payment refunds may be requested via kites directly to clinical services who will then report them to the AIC." This is an issue that must be resolved by contacting clinical services in order to determine the process for requesting your co-payment refunds where applicable.

You allege that CTCF is not in compliance with Stipulation #30 in the April 4, 2008 Stipulation order. Stipulation #30 states in part, "Inmates will be provided 2 copies of their ADA grievances when filed." A memo has gone out to the facilities regarding this matter and it is my understanding that this should be

occurring at this time.

You allege that CTCF is not in compliance with Stipulation #32 in the April 4, 2008 Stipulation order. Stipulation #32 states that "CDOC will post a mutually agreeable notice that the Montez case has been further extended in all facilities." These postings were sent to the facilities for posting beginning in early July.

*not in 45 days*

*only english*

Finally, you are requesting a copy of the Montez Remedial Plan. I have researched our files and you have not yet received your one (1) free copy of the Plan. I have included your copy with this correspondence.

I hope I have answered all of your questions and adequately addressed your complaints.

Thank you for contacting the AIC.

cc: AIC file.

EXHIBIT " M "

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CTC08/09-264     STEP (Circle One) ①  2  3     ADA? Yes X  No ☐

NAME MATTHEW REDMON     DOC NO. 140637     FACILITY C.T.C.F.

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

I AM GRIEVING CELLHOUSE #7 STAFF. BOTH DAYSHIFTS' AND THE NIGHTSHIFT. ALL STAFF, FROM OFFICERS TO CAPTAIN WILSON. THE STAFF HAS REPEATEDLY FAILED TO ADHERE TO THE DICTATES OF IA 750-4A. IN THE SECTION ENTITLED "HOUSING" THE IA STATES THAT, "THE CELLHOUSE STAFF WILL ENSURE HEARING IMPAIRED INMATES WILL BE NOTIFIED OF COUNTS, MEAL TIMES, AND CONTROLLED MOVEMENT BY FLASHING CELL LIGHTS." THIS IS NOT BEING DONE!! THE SECTION STATES IN "VERBAL ANNOUNCEMENTS" THAT, "INMATES WITH DISABILITIES WILL RECEIVE SPECIAL ASSISTANCE FROM STAFF REGARDING PA ANNOUNCEMENTS." THIS IS NOT BEING DONE!! I CANNOT HEAR THE P.A. SYSTEM. THE LIGHT ISSUE WAS PREVIOUSLY GRIEVED IN GRIEVANCE D-CTC07/08-366, NOTHING HAS CHANGED. THE ISSUE STILL REMAINS. THE NIGHT SHIFT ATTEMPTS TO WAKE ME FOR WORK BY TALKING... WHERE IS THE SIGN THEY USE? I WANT THESE ISSUES RESOLVED...

DATE: 11/11/08     OFFENDER SIGNATURE [signature]

DATE RECEIVED: 11/14/08     RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

RESPONSE

**SEE ATTACHED RESPONSE**
Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

[signature] Correctional Officer 14299

[signature] Cathie Holst
12-10-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: 12/3/08     SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # [signature] Correctional Officer 14299

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

DATE: 11/12/08     SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Nugen Connie Nugg 56163 Disability

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: 12/17/08     OFFENDER SIGNATURE/PRINT NAME & DOC # [signature] 140637   RECEIVED

Original: Department File/AIC     Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

NOV 1 4 2008     AB 11-12-08

Office of Correctional Legal Services

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:    719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Response to Step 1 ADA Grievance
From:   Adrienne Jacobson, Designee
        Office of the AIC (ADA Inmate Coordinator)
Received Grievance: November 14, 2008
Sent Response: December _10_, 2008
Offender Name:  REDMON, MATTHEW
DOC No: 140637
Facility: CTCF
Grievance No: D-CT0809-264

**DISABILITY STATUS: Per screening dated March 19, 2008 and Accommodation Resolution dated August 25, 2008, you were determined TO HAVE a qualifying hearing disability.**

In the grievance referenced above, you allege the following:

1.  That cell house #7 staff are not flashing the cell lights to indicate count, meal times and controlled movement and are also not informing hearing disabled offenders of P.A. announcements.

**Requested Relief/Remedy:**
1a. To have these issues resolved.

**Following a thorough investigation into your allegations, I offer the following evidence that was considered in reaching a decision:**

1.  I have spoken to the ADA Coordinator at your facility and have been assured that there has been no policy change regarding flashing of cell lights and notification of P.A. announcements.
2.  I have been told that the cell house staff are flashing lights as required and notifying offenders of P.A. announcements when needed.

**CONCLUSION:**
This grievance is **GRANTED.** I am unable to find any substantive evidence indicating that cell house 7 staff are neglecting their duty to flash cell lights to notify offenders of count, meal times and controlled movement, nor am I able to substantiate your claim that hearing disabled offenders are not being informed of P.A. announcements when needed. However, I have asked the ADA coordinator at your facility to remind cell house staff of their duties based on this complaint and if you continue to experience these issues, please relay your concerns to this office for resolution.

**Be advised that you have been adequately informed in this grievance response as to the role of the Office of the AIC in responding to ADA grievances. You are required to read and be informed of the information regarding the grievance procedure and what issues you may or may not raise in an ADA grievance, refer to AR 850-14 and AR 750-04. Both are available to you in the general library. If you are in segregation, you may request them on loan from the law library. If you have questions, you may contact your case manager for further information or clarification.**

**GRIEVANCE GRANTED.**

DC FORM 850-4A (10/04)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CTO1\08-366    STEP (Circle One) ①  2   3    ADA? Yes ☐ No ☒

| NAME Wayne M Castro | DOC NO. 123233 | | FACILITY CTCF |
|---|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED.
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL.
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING.
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy: IN a meeting at the Beginning part of Feb 08 that takes Place every thursday for The Deaf community to address Any Facility Issues it was mentioned to Panel members ( casemanger Bell L.T Zander of Cell House seven along with Two state Interpreners ), As Stated in the colorado Territorial correctional Facility. ADA/montez Facility orientation Hand Book Page 2 Paragraph seven where it states counts! The following Says — cell House staff will ensure hearing Impaired inmates will be notifed of counts, meal times, and controlled Movement by flashing of cell lights, most of the time lights are flashing for lunch, and Dinner very Rarely for Breakfest, almost never for controlled movement, The Panel stated this will be looked into. a month later it was mationed to Lt Zander the Issue was not being addressed, information abtain from other Deaf inmates this Issue was Brought up time and time again it was Igroed. Montez case was Resolved in 07 wetee DOC Had more then enough time to t a handle on the operation of this accomidation, myself along with the Rest of the Deaf community would like to see as Stated in the ADA/montez Facility orentation HandBook nored and treated fairly and equal as The Hearing community, But with our Deaf-ss we must be accomodated       Thank you

| DATE: 3/27/08 | OFFENDER SIGNATURE (signature) |
|---|---|
| DATE RECEIVED: 4/3/08 | RESPONDING STAFF SIGNATURE & ID (signature) |

RESPONSE

## SEE ATTACHED RESPONSE

Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

(signature) Cathie Holst
4-9-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: | SIGNATURE/PRINT NAME & STAFF ID # |
|---|---|

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

| DATE: 4/2/08 | SIGNATURE/PRINT NAME & STAFF ID # Connie Higgs   Connie Higgs 6163   Disability |
|---|---|

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

| DATE: 4/7/08 | OFFENDER SIGNATURE/PRINT NAME & DOC # Wayne m Castro #123233 |
|---|---|

RECEIVED

original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

APR 03 2008

Attachment "A"
Page 1 of 1

AB Office of Correctional Legal Services

all the same issues

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:      719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
**Governor**

Aristedes W. Zavaras
**Executive Director**

Response to Step 1 ADA Grievance
From:  Office of the ADA Inmate Coordinator, Cathie Holst (AIC)
         through Meghan A. Reed, Legal Assistant
Received Grievance:  April 3, 2008
Sent Response:  April  14  , 2008
Offender Name:  CASTRO, W.
DOC No:  123233
Facility:  CTCF
Grievance No:  D-CT07/08-366

---

### In the grievance referenced above, you allege the following:

*1. According to the facility orientation handbook staff in Cell House 7 are suppose to be flashing the day hall lights to notify hearing impaired offenders at all meal times and controlled movement times. This is not being done. Staff are good about flashing lights for lunch and dinner, they rarely flash the lights for breakfast and almost never for controlled movement.*

**Requested Relief/Remedy:**
*1a. You want facility staff to follow the policies written in the facility orientation handbook.*

## FOLLOWING A THOROUGH INVESTIGATION INTO YOUR ALLEGATIONS, I OFFER THE FOLLOWING EVIDENCE THAT WAS CONSIDERED IN REACHING A DECISION:

1. I contacted Lt. Zander at CTCF and was advised the policy regarding flashing the day hall lights is posted in both control centers in Cell House 7 as a reminder.
2. CTCF has new staff helping in the unit; that are not familiar with the cell house operations.

**CONCLUSION:**  In investigating your grievance I contacted Lt. Zander from Cell House 7 at CTCF and was advised this policy is contained in the orientation handbook and is suppose to be followed by cell house staff.  A memo outlining this policy is posted in the upper and lower control centers in Cell House 7 and staff should be following.  According to Lt. Zander they are trying to stay on top of this situation and staff are making every effort to make sure this happens.  They have recently had new staff helping in the unit that are not familiar with the specific cell house operations.  Your issue will be addressed.

**GRIEVANCE GRANTED.  Cell House 7 staff are to follow the policy regarding the flashing of the day hall lights at the times specified in the offender orientation handbook.**

EXHIBIT " N "

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CT08/09-157     STEP (Circle One) 1 2 3     ADA? Yes X No ☐

| NAME MATTHEW FELDMAN | DOC NO. 140637 | FACILITY C.T.C.F. |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy:

I WOULD LIKE TO KNOW WHY MY GRIEVANCES ARE NOT BEING ANSWERED IN THE TIME FRAME SPECIFIED BY CDOC POLICY.
I AM GRIEVING THE FACT THAT MY TIMELY SUBMITTED GRIEVANCES ARE NOT ANSWERED. IN GRIEVANCE #D-CT07/08-471; #D-CT07/08-472; #D-CT08/09-023; D-CT08/09-022 I DID NOT RECEIVE A REPLY UNTIL LONG PAST 30 DAYS AFTER SUBMITTED. I WANT TO HAVE MY GRIEVANCES ANSWERED ON TIME AS ACCORDING TO CDOC POLICY.

| DATE: 9/20/08 | OFFENDER SIGNATURE | |
|---|---|---|
| DATE RECEIVED: 10/2/08 | RESPONDING DOC EMPLOYEE, CONTRACT WORKER OR VOLUNTEER SIGNATURE & ID | Adrianna Jacobson 14299 |

**RESPONSE**

**SEE ATTACHED RESPONSE**

Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

Cathie Holst
10-28-08

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 10/22/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Adrianna Jacobson 14299 |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | |
| DATE: 9/29/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Connie Hicks Connie Hicks CLLS Disability |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | |
| DATE: 11/12/08 | OFFENDER SIGNATURE/PRINT NAME & DOC #  140637 |

Original: Department File/AIC     Copies: Working File, Administrative Head, Offender, Clinical Chart (Medical only)

Attachment "A"
Page 1 of 1

RECEIVED
OCT 0 2 2008
Office of Correctional
Legal Services

AB 9-22-08

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:      719.226.4249



Bill Ritter, Jr.
Governor

Office of ADA Inmate Coordinator (AIC)

Response to Step 1 ADA Grievance
From:   Adrienne Jacobson, Legal Assistant, Designee
            Office of the AIC (ADA Inmate Coordinator)
Received Grievance: October 2, 2008
Sent Response: October _29_ , 2008
Offender Name: REDMON, MATTHEW
DOC No: 140637
Facility: CTCF
Grievance No: D-CT0809-157

Aristedes W. Zavaras
Executive Director

**DISABILITY STATUS:**
YOU DO HAVE A HEARING DISABILITY per screening dated March 19, 2008 &
Accommodation Resolution dated August 25, 2008.

**In the grievance referenced above, you allege the following:**

1.  That the responses to the following grievances were not received in a timely manner: D-CT0708-471;
D-CT0708-472; D-CT0809-023 and D-CT0809-022.

**Requested Relief/Remedy:**

1a. to have your grievances responded to in a timely manner.

**FOLLOWING A THOROUGH INVESTIGATION INTO YOUR ALLEGATIONS, I OFFER
THE FOLLOWING EVIDENCE THAT WAS CONSIDERED IN REACHING A DECISION:**

1. AR 850-05 governs grievance response time and states in part, "The offender shall receive a written
response to each Step 1 and Step 2 grievance *within 25 calendar days of its receipt by the responding
DOC employee, contract worker, or volunteer.*"

2. I signed for **receipt** of grievances D-CT0708-471 and D-CT0708-472 on June 16, 2008.  I prepared
the responses to these grievances on July 18, 2008. After response, grievances are reviewed by the AIC
prior to mailing. These grievances were sent to you from the AIC's office on June 21, 2008. The total
elapsed response time from my receipt of the grievance to my response was 32 days. I apologize for the
delayed response. Prior to receiving these two grievances, I received notice from the Attorney General's
office that you had sent them correspondence incorporating the same complaints as were contained in
grievances 471 and 472. I researched and responded to the Attorney General's request for information
and then utilized these results in answering your grievances. Due to the level of detail required for these
responses and the additional requirement of response to the Attorney General's office for the same
information, I exceeded the 25 day response time by 7 days and I apologize for this delay.

3. I signed for **receipt** of grievances D-CT0809-022 and D-CT0809-023 on July 22, 2008. These grievances had a response due date of August 16, 2008. I began my investigation of your strobe alarm allegations on July 23rd. I requested additional information regarding your complaints regarding the strobe alarm and your ability to participate in the ASL class on July 28th. While I did not prepare an official response to D-CT0809-023, I had you admitted to the ASL class and you began the class on July 30, 2008.  Our office began an extensive project in August and in order to focus on completion of that project, we had to postpone further action on pending items. After completion of this project and other reporting issues, I completed my investigation of your complaints and drafted my response on September 3, 2008. I received signature on these responses on September 8th and they were sent to you on that day. I exceeded the 25 day response time by 18 days which is inexcusable and for which I apologize.

4. The workload in this office is tremendous and while we strive to complete all of our investigations within the 25 days allotted, it is sometimes difficult to obtain all of the necessary information and prepare response within that time frame. The issues which caused the extensive delay of grievances 022 and 023 have been resolved and I do not anticipate any further delay in grievance response times.

**CONCLUSION:**

You have received grievance responses outside of the 25 day allotted response time. I sincerely apologize for the delay and will insure that your grievances are responded to within 25 days of ***my receipt*** of the grievance as required by 850-04.

**GRIEVANCE GRANTED.**

CERTIFICATE OF SERVICE

        This is to certify that I , Matthew Tazio Redmon ,
have duly served copies of the foregoing Motion for
Enforcement upon each of the following parties by depositing
copies of same in the United States mail , postage paid by the
Movant , at C.T.C.F. , Canon City , Colorado on this

_____15th_____ day of January , 2009 .

            Addressed as follows :

State of Colorado
Office of the Attorney General
1525 Sherman Street – 7th Floor
Denver ,CO.  80203 – 1760


Paula Greisen , Atty Reg. #19784
Attorney for the Plaintiff
King and Greisen , LLP
1670 York Street
Denver , CO.  80206



U.S. District Court
901 19th Street
Room A105
Denver , CO.  80294 – 3589



Special Masters Borchers , Davidson and Pringle
Legal Resolution Center
7907 Zenobia Street
Westminster , CO.  80030



        Signed this _11th_ day of January , 2009.

                                              #140637

            Matthew Tazio Redmon , #140637
            Movant