IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-455
Category: III
Claimant: Kerry L. Cournoyer, #100304
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on the claim of Claimant Kerry L. Cournoyer. This Hearing was held at SCF on December 18, 2008, before Richard C. Davidson, Special Master. Mr. Cournoyer appeared *pro se.* Defendants were represented by Robert Huss, Esq. Claimant Kerry Cournoyer, Hector Cournoyer, Robin Singer and Thomas Fisher, M.D. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by

1

various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Kerry Cournoyer submitted a claim which was assigned claim number 03-455. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Cournoyer first entered CDOC custody in 1999. During his time in custody, Claimant was housed at DRDC, CSP, LCF, CCF, and SCF.

4. Claimant injured his ankle in 1992. He had surgery at that time. He wore orthotics in order to properly align the ankle until he came into custody in 1999.

5. When Claimant entered custody, he was able to ambulate without difficulty. He was allowed to have high top tennis shoes at DRDC because of his ankle injury. However, when he went to CSP in June, 1999, the shoes were taken and returned to his mother. His mother, Robin Singer, testified that she then sent some arch supports to him but they also were returned by CSP. Instead, Claimant was told to get arch supports from the canteen. This was impossible since the canteen only stocks arch supports to size 13, while Claimant wears a size 15.

3

6. Claimant was examined by an orthopedic specialist, Dr. Jacob Patterson, in September 2003. Dr. Patterson recommended "Accommodative shoe wear, arch supports, and tennis shoes to provide relief with weight bearing. Continue anti-inflammatories and follow up prn." Claimant says he has been in constant pain since before this time, but has not been given the recommended shoes. He has been able to obtain tennis shoes but has had them taken by CDOC. He has been given anti-inflammatories and pain medications.

7. Claimant primarily complains that the recommendations of the specialist have not been followed. He is critical of the type and quality of the medical care he has received. While there are times he chooses not to walk, he is still able to walk. In fact, the medical records contain several entries noting that Claimant is able to ambulate without difficulty. In 2004, he saw Dr. Gary Go for an orthopedic exam. Claimant told Dr. Go that he did not want to have an ankle fusion. Claimant says that his condition is deteriorating because of the poor care from CDOC.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes. This is important in this case because Claimant is very concerned with the quality of his medical care.

6. The Special Master finds and concludes that Claimant Kerry Cournoyer is not mobility disabled under the terms of the remedial plan. While he was injured prior to coming into custody in 1999 and while he does have "significant damage to his ankle", he is still able to walk without restriction. The Special Master concludes that Claimant's ankle impairment does not rise to the level of a disability because it does not constitute a substantial limitation on the major life activity of walking.

7. It should be noted that *Montez* requires that the determination of disability be made for the period of time prior to August 27, 2003. The Special Master has concluded that Claimant was not disabled at that time. However, the evidence shows that Claimant's condition is continuing to deteriorate over time. Whether Claimant is now disabled is beyond the scope of this matter.

8. Since Claimant was not mobility disabled under the terms of the Montez remedial plan, he cannot be a member of the *Montez* class. Thus, it is not necessary to consider the remaining elements of his claim for damages.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 30, 2009** with the Clerk of the United States District Court, 919 19th Street, Denver, CO 80294.

5

SIGNED this 27th day of January, 2009.

                               BY THE COURT:

                               */s/ Richard C. Davidson*
                               _____
                               Richard C. Davidson,
                               Special Master