IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL OWENS, et al.,

    Defendants.

---

Claim Number: 03-459
Category: III
Claimant: John A. Nasious, #98775
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the claim of Claimant John A. Nasious, #98775. This Hearing was held at SCF on December 18, 2008, before Richard C. Davidson, Special Master. Mr. Nasious appeared *pro se.* Defendants were represented by Robert Huss, Esq. Claimant John Nasious and Thomas Fisher, M.D. were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by

1

various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9*.

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant John A. Nasious submitted a claim which was assigned claim number 03-459. The claim is premised on alleged permanent mobility and hearing disabilities.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Nasious first entered CDOC custody in 1998. He was released on parole in 2001 but was brought back into custody in 2002. During his time in custody, Claimant was housed at DRDC, SCC, BCCF, CCCF, and SCF.

4. Claimant was injured in 1999 when he fell in a prison kitchen and injured his head, neck, and back. He began to have severe headaches and occasional seizures following the fall. Claimant was injured in an automobile accident in February 2001, while on parole. This accident aggravated his back problems from the 1999 fall. An MRI done in May 2001 showed "right foraminal stenosis at L4-5 level with degenerative changes and osteophytes, dehydration of the disc spaces from L2 to S1 is noted." In an exam on October 5, 2002, Dr. Kakkar noted that Claimant's pain did not radiate to the lower extremities but that he did have intermittent numbness in the lower extremities. Dr. Kakkar diagnosed "Chronic subjective lumbar pain." A subsequent nerve conduction test was normal.

5. A review of the medical records shows that Claimant has had degenerative disc disease and chronic low back pain for many years. An x-ray taken on July 8, 2008, shows "severe asymmetric disc space narrowing on the right at L4-5 with associated arthritic lipping." However, it does not seem to have interfered with his mobility. It was noted on May 31, 2007, that Claimant showing a "normal gait with no signs of distress." On September 17, 2008, a medical record note shows him walking with an "active normal gait."

6. Claimant testified that he is in constant pain and that the pain now radiates down both legs into his calves. Dr. Fisher testified that Claimant has diffuse degenerative joint disease in the low back.

7. Claimant testified that his hearing problems began in 2005. He says he has tinnitus and is losing his hearing. He needs to be examined for hearing loss.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant has an impairment to his low back. However, to prove disability, it is necessary for Claimant to prove that his impairment causes a substantial limitation on one or more major life activity. Claimant has failed to do this. The evidence shows that Claimant is in pain. The evidence does not show that Claimant is unable to walk or that his mobility is impaired. Consequently, the Special Master concludes that Claimant is not mobility disabled.

7. Claimant also claims to be hearing disabled. He testified that this began in 2005 and is progressively getting worse. However, *Montez* requires that Claimant show that he was disabled prior to August 27, 2003, the date of the remedial plan. Claimant's testimony shows that he had no hearing problems at that time. He was not hearing disabled.

8. Claimant has failed in his burden of proof to show that he was disabled prior to August 27, 2003. Because of this he cannot qualify as a member of the *Montez* class, it is not necessary to examine the remaining elements of his claim. Rather, his claim must be dismissed.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before March 30, 2009** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 27th day of January, 2009.

        BY THE COURT:

        */s/ Richard C. Davidson*
        _____
        Richard C. Davidson,
        Special Master