IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA (Consolidated for all purposes with Civil Action No. 96-CV-343)

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

───────────────────────────────────────────────

Claim Number 03-461
Category III
Claimant: Robert Balukas, #106479
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

───────────────────────────────────────────────

## FINAL ORDER OF SPECIAL MASTER

───────────────────────────────────────────────

THIS MATTER came before the Special Master for hearing on December 29, 2008. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Robert Balukas (Claimant) and Christopher Alber, attorney for Defendants.

Claimant called himself as a witness. Defendants requested time in which to submit an affidavit of a physician. That request was granted. That affidavit has been received and reviewed. Claimant has been given a chance to respond to the affidavit. All documentation previously submitted by both sides has been accepted.

This case has been taken under advisement. This order shall constitute the final action by the Special Master on this specific claim.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

      B. QUALIFIED INMATE
      Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
      C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on September 13, 2000. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). On November 30, 2000, he was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. On March 1, 2001, Claimant was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Claimant was placed on parole on July 23, 2003 and discharged his sentenced on November 26, 2005.

Claimant returned to DOC custody on January 2, 2007. Claimant was evaluated at DRDC and then transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Claimant was granted a community placement on October 24, 2007. That placement failed, and Claimant returned to DOC custody on April 30, 2008. Claimant was placed at the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. He remained there until September 30, 2008 when he was transferred to FLCF.

In his claim form, Claimant checked the box for hearing impairment. Claimant stated, in part, as follows:

> I am deaf in my left ear and I have a hard time hearing people talking to me. Have a really bad time hearing orders given to me by C.O.s and get in trouble for not doing what they tell me to do. And others think I am being a smart ass and threaten to beat me up for not listening to them.

In response to the question concerning discrimination, Claimant stated, in part, as follows:

> When I was in DOC back in 2000-2003 I needed help with my problem. I was always getting in trouble over not doing what I was told to do. I asked them to help me get a hearing aid and was told over and over that they don't do anything like that for people. I needed help and they told me no over & over again adding to my hardship of not being like others and doing the things others do.

Claimant went on to state in his form:

> Now I take mental health medication for depression, lack of will power to do and complete things low self-esteem, can't deal with many people around me so I became anti-social stay to myself.

At the hearing Claimant testified that he has always had a problem with hearing. He has had problems in not hearing orders from correctional officers and comments from other inmates. He has been threatened by other inmates.

Claimant stated that he has requested a hearing aid on many occasions, the earliest being in 2000. He has been advised that he cannot have a hearing aid. His lack of ability to hear has led to a concern that other inmates may be talking about him. He spends most of his time in his cell away from other inmates.

Claimant stated that he has been advised that his left ear is dead. He has to turn his head to hear with his right ear. When he has asked about a hearing aid, he has been told that DOC will not pay for one.

On cross-examination, Claimant stated that he had been able to hear at the hearing, as he was able to turn his head. He presently is attending educational classes. His teacher is working with him to accommodate his hearing problems. In response to a question, Claimant indicated that he does not watch television, as he cannot hear it.

Claimant has to use earbuds in order to hear anything on television or radio. He has continually worried about getting in trouble.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that

he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his hearing impairment on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The United States Court of Appeals for the Tenth Circuit in *Robertson v. Las Animas County Sheriff's Department*, 500 F.3d 1185 (10th Cir. 2007) dealt with a hearing impairment case. The court noted that hearing is a major life activity. The ADA required a determination of whether the plaintiff's impairment affected his major life activities. Substantially impaired means that an individual must show that he was unable to perform an activity that an average person in the general population could perform. *Id. at 1194*.

Claimant must establish that he was hearing impaired on or before his release on parole in July 2003. The evidence does not establish that a major life activity was affected. The Special Master will accept that Claimant has a loss of hearing in his left ear. That condition has existed for some time. Yet, Claimant was able to carry on all major life activities prior to August 2003. Claimant's documented major concerns all arise upon his return to DOC in 2007. There is no doubt that the loss of hearing in the left ear has been present for years. There simply is insufficient evidence that this hearing loss substantially impaired Claimant's ability to carry on major life activities on or before July 2003.[2]

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

---

[2] The Special Masters makes *no* findings as to Claimant's condition since his return to DOC custody on January 2, 2007. Claimant may pursue in a separate lawsuit any claim that he has for his present incarceration.

5

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant must prove that he was the victim of discrimination prohibited by the ADA on or before August 23, 2003. Claimant has not established that he was discriminated against by DOC and its staff on or before that date.

The evidence presented by Claimant does not establish that he brought to the attention of DOC staff that he was hearing impaired before August 27, 2003. Though Claimant has testified that he did, his testimony was extremely vague. Claimant has not pointed to any entries in his medical records concerning hearing problems on or before that date. Defendants had to know or be advised by Claimant that he had hearing problems. *Robertson v. Las Animas County Sheriff's Department, supra*. Nothing has been presented by either side that substantiates that such information was provided to DOC staff.

The Special Master would note that Claimant is not precluded from pursuing his own separate lawsuit concerning alleged discrimination that has occurred since his re-entry into DOC in 2007. Claimant may not amend his claim to include matters that arose after Claimant's return in 2007, because he has not proven that he was discriminated against because of a hearing impairment prior to August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #1 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Robert Balukas is denied and dismissed, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 11, 2009.**

SIGNED this 10th day of March, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master