IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA (Consolidated for all purposes with Civil Action No. 96-CV-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number: C-014 (combined with C-008)
Category C
Claimant: Ronald Cordova, #57350 (as well as the inmates who have signed on the letter)
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on the "Objection to March 31, 2008 Stipulation" filed on June 19, 2008 by Ronald Cordova (Claimant). Claimant also filed a further letter with the Court (Document #3483). The second letter also was signed by over twenty other inmates who are objecting to the March 31, 2008 stipulation. Both letters will be treated as a motion.

The Special Master issued an order directing class counsel and Defendants to respond to the motion of Claimant. Those responses have been received and reviewed. The Special Master has undertaken significant research concerning the issues raised by Claimant. Included in this research was a careful review of the entire court file up through the end of 2003. The issues raised are not frivolous and certainly have caused concern throughout the inmate population in the Colorado

Department of Corrections (DOC).[1]

## ISSUES RAISED IN THE OBJECTIONS

In late March 2008, class counsel and Defendants submitted a stipulation to Judge Kane for approval. That stipulation (Document #3326) was approved and made an order of the Court by Judge Kane on April 4, 2008.[2] This will be referred to as the "2008 stipulation."

Part of the 2008 stipulation contained additional provisions that were not included in the Remedial Plan. The 2008 stipulation reads, in part, as follows:

> The following remedies shall be implemented for the failure to achieve substantial compliance with the Remedial Plan by the required date of July 27, 2007:
>
> 1. Inmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses. Unless it is determined that the inmate intentionally broke his/her own glasses, CDOC will replace damaged or broken glasses free of charge on an as needed basis. If the preponderance of the evidence shows that the inmate intentionally broke his/her glasses in any particular year, he/she will be responsible for the replacement costs of the glasses.

The 2008 stipulation became effective on April 4, 2008 when signed by Judge Kane.

Claimant filed the first objection to the 2008 Stipulation with the office of the Special Masters on June 19, 2008. In his objection, Mr. Cordova argued that the 2008 stipulation provision dealing with eyeglasses directly conflicts with the Remedial Plan. Specifically, he alleges that Paragraph XVI dealing with Health Care Appliances provides greater protections for individuals

---

[1] A number of other objections were filed either with the Court or with the Special Masters. Those objections were held in abeyance pending completion of research and review of the responses from class counsel and Defendants. Each objection will be resolved by separate order.

[2] It should be noted that the 2008 stipulation was entered into in lieu of further formal hearings, as Defendants acknowledged that they were not in compliance with the requirements of the Remedial Plan. A previous stipulation was entered into in August 2006 and also was based upon non-compliance by DOC with the Remedial Plan.

2

with eyeglasses than does the 2008 stipulation. *Remedial Plan, p.20.* He argues further that he had no notice of the pending stipulation nor was any hearing held to allow objections.

The second objection was filed with the Clerk and signed by Mr. Cordova and the other inmates. The general thrust of the objection is that the Remedial Plan allowed inmates who were members of the class to continue to use personal eyeglasses, including those with wire rims and tinted lenses, as health care appliances. Claimant believes that the 2008 stipulation now allows DOC staff to direct inmates to give up their private eyewear in exchange for DOC issued glasses. He believes further that the Remedial Plan provided that private health appliances could be retained until they wore out.[3]

Upon receipt of the objection of Claimant, the Special Master issued an order to counsel for the class and counsel for Defendants requesting a response. Both filed responses to Claimant's pleadings.

Counsel for the class responded on October 14, 2008 (Document #3667) and stated, in part, as follows:

> 5. During the compliance review conducted by counsel for the Plaintiff Class, a major concern raised by inmates was DOC's non-compliance with §XVI(c) of the Remedial Plan. Class Members notified class counsel that their glasses had been taken away and had not been replaced in a timely manner in violation of the Remedial Plan.
> 6. In March of 2008, DOC admitted it was not in compliance with the Remedial Plan and the parties entered into negotiations regarding Stipulations to benefit Montez Class Members. During this process, counsel for the Plaintiff Class raised the issue of eyeglasses being taken away in violation of §XVI(c).
> 7. DOC presented information on the security and safety issues created by wire or metal framed glasses to support its practice of taking away such health care appliances.

---

[3] The private eyeglasses had not been seized previously by DOC officials for safety or security reasons.

3

8. DOC's non-compliance with §XVI(c) is not with respect to inappropriate removal of health care appliances, but rather in the replacement of the appliance and/or providing accommodations for inmate's needs in the absence of the removed health care appliance.

9. Accordingly, the Stipulation requires DOC to allow inmates to retain possession of their personal eyeglasses until DOC issues a replacement pair of glasses rather than the former practice of taking glasses away for security reasons without providing a replacement pair at the same time. Furthermore, the Stipulation benefits Class Members by requiring DOC to replace damaged or broken glasses free of charge on an as needed basis rather than only replacing damaged or broken glasses in a three-year period of time.

*Document #3667, p.3.*

Counsel for Defendants filed a response directly with the Special Masters. In the response, Defendants argued that Mr. Cordova's real complaint was with the actions of counsel for the class. Defendants further argued that Mr. Cordova and the other inmates filing objections may not seek private relief through *pro se* pleadings. Defendants rely upon *McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991) as supporting their position, and they further argue that the inmates have not shown that they contacted class counsel with their concerns about eyeglass replacement or the provision in the 2008 stipulation.

## DISCUSSION OF THE ISSUES

The Special Master will attempt to cover each issue separately.

**Expansion of the Class**: One of the issues raised in the objections is whether the class has been expanded by the 2008 stipulation. The language in paragraph 1 of the 2008 stipulation reads, in part, that "[i]nmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses." A reasonable reading of that section would seem to indicate that all inmates in DOC are covered, not just those with a vision impairment. Assuming that interpretation, then the class was expanded by the approval of Judge Kane on April 4, 2008.

4

Claimant filed a damage claim pursuant to Paragraph XXXII of the Remedial Plan. The claim was assigned to Category III (03-377). A hearing was held on January 24, 2008 at the Arkansas Valley Correctional Facility in Crowley, Colorado. The hearing was adjourned and concluded on May 12, 2008. A written final order was issued on June 27, 2008. As to his claimed vision impairment, the Special Master determined as follows:

> Vision Impairment: Claimant has argued that he is vision impaired because he needs photo-gray glasses. The evidence reflects that Claimant has been able to carry on his activities of daily living. Claimant is not a member of the class as vision impaired.

Claimant was found to be mobility impaired, but did not have a disability due to vision impairment or diabetes.

Nothing has been presented by Claimant in his motion or otherwise to indicate that he has been determined to be vision impaired pursuant to the ADA screening process. Claimant wears glasses and requests to keep the eyeglasses that he privately purchased. He can carry on his activities of daily life with his eyeglasses.

The Special Master specifically finds that Paragraph 1 of the 2008 stipulation did not expand the class of those who are vision impaired. This is consistent with the language in class counsel's response that "parties entered into negotiations regarding Stipulations to benefit Montez Class Members..." Reviewing the 2008 stipulation as a whole, there was and is no indication that it was the intent of class counsel and Defendants to include all inmates with glasses in the vision impaired subclass.

The Remedial Plan established four categories of impairments: vision impairment; hearing impairment; mobility impairment; and diabetes. An inmate may be a member of one subclass, such as hearing impaired, and not be a member of another subclass. The Special Master determined

through the damage claim process that Claimant was mobility impaired. As such, he was a member of the mobility impairment subclass. He specifically was determined not to be vision impaired.

The policy statement on the first page of the Remedial Plan states as follows:

> It is the policy of the Colorado Department of Corrections (DOC) to provide inmates with disabilities, with or without reasonable accommodation, access to its programs and services consistent with legitimate penological interests. No qualified inmate with a disability, as defined in Title 42 of the United States Code, Section 12102 shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the DOC or be subjected to discrimination. All facilities designated to house inmates with disabilities will provide comparable programs, services and benefits available throughout comparable DOC facilities to ensure that inmates with disabilities are not discriminated against because of their disability.

The Remedial Plan provides in Paragraph III the following definitions:

> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent physical disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

The Remedial Plan thus incorporates the definition of the ADA concerning disability, specifically referring to *42 U.S.C. §12101*. This statute reads, in part, as follows:

> (2) Disability
> The term "disability" means, with respect to an individual–
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

The parties agreed that damage claims were to be based upon the criteria of the ADA, with the impact on one or more major life activities. That agreement also covers other aspects of the

Remedial Plan.

This case is jurisdictionally based on the ADA and Rehabilitation Act. Absent a specific jurisdictional basis, a case cannot be maintained in a federal court. As an example, adjudication of violations of DOC regulations would be jurisdictionally impossible, unless the regulations violated a constitutional provision or federal law. The United States Supreme Court has ruled that corrective and mitigating measures must be taken into account when evaluating whether a permanent disability exists. *Sutton v. United Air Lines,* 527 U.S. 471(1999). As a result, the wearing of glasses is not, in and of itself, sufficient to find a permanent disability. If the wearing of eyeglasses corrects a vision problem, then there is no permanent disability under *42 U.S.C. §12101.*

Class counsel and Defendants cannot agree to expand the class to include individuals who do not meet the criteria of the ADA and Rehabilitation Act. Paragraph 1 of the 2008 stipulation does not apply to Claimant, as he is not a member of the subclass of vision impaired. Claimant may not claim benefits from the Remedial Plan or the 2008 stipulation as a member of the subclass of vision impaired, because he is not vision impaired.

**Class Membership**: Claimant is not a member of the subclass of vision impairment. No information has been presented from the any of the other signers of the one letter that they are members of the subclass as vision impaired. For purposes of this order, the Special Master will assume that all wear glasses.

Individuals who are not members of a class or subclass may not seek relief available to class members. *Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989). The Special Master has determined that the class has not been expanded to include all inmates who wear glasses, as noted previously. Claimant may not rely on the Remedial Plan for protection concerning eyeglasses, as he is not a

member of the vision impaired subclass.

Finally, non-members of a class or subclass have no standing to object to the actions of class counsel. Claimant's concerns about the loss of his private eyeglasses are legitimate, but he has no standing to question the decision of class counsel as it pertains to a subclass to which he does not belong.

Members of the class or a subclass are bound by the Remedial Plan. *McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991). Non-members are not bound and may commence their own separate lawsuits to litigate any issues surrounding the taking of privately purchased eyeglasses.

**Jurisdiction over Issue**: The issues raised concerning private eyeglasses do not rise to the level of a constitutional violation. DOC could require everyone to exchange glasses upon entry or re-entry into its system. Class counsel correctly notes that failure to provide replacement glasses would create a different issue, but that is not before the Court.

The ADA and Rehabilitation Act prohibit discrimination based upon a physical or mental disability. DOC's regulation on eyeglasses mirrors the provisions of Paragraph 1 of the 2008 stipulation ("Offenders entering the DOC through intake may retain possession of their personal glasses until the DOC issues a replacement pair of glasses"). *AR #700-05(IV)(B)(7)*. The DOC regulation appears neutral on its face. The arguments that DOC issues glasses that are inferior in quality may well be true. The problem is that any inmate wearing glasses issued by DOC must show that such glasses do not correct the vision impairment sufficiently to allow activities of daily living to be carried out. That evidentiary burden requires much more than simply personal testimony concerning DOC glasses. If the DOC eyeglasses were determined to be deficient for all who receive them, then class counsel could raise that issue. So far, class counsel has not done so.

The Court cannot oversee the daily operation of DOC and its facilities. The jurisdiction upon which the Remedial Plan relies is the ADA and Rehabilitation Act. The settlement through the Remedial Plan limits further what jurisdiction may be exercised by the Court. Since Claimant and others have not been shown to be members of the subclass, their remedy is to commence separate litigation. They are not bound by the Remedial Plan as it pertains to vision impairment.

**Conflict of Interest:** Claimant has made a general objection to Cathy Holst being appointed as the AIC. Claimant believes that a conflict of interest exists, but has not detailed much about the perceived conflict. Defendants correctly note that Ms. Holst was appointed through the approval of the Remedial Plan. She has been in that position for over five years. Class counsel has not requested Ms. Holst's removal. Claimant's concerns will need to be referred to class counsel for action.

IT IS HEREBY ORDERED that the Special Master specifically determines that Claimant and others who have signed the second letter of Claimant have not been shown to be members of the subclass of vision impaired and are not bound by the provisions of the Remedial Plan concerning vision impairment; and

IT IS FURTHER ORDERED that the stipulation approved by the Court on April 4, 2008 did not expand the vision impaired subclass to include every inmate who wears eyeglasses; and

IT IS FURTHER ORDERED that Claimant's motion for relief for any and all issues related to his eyeglasses is denied for lack of jurisdiction; and

IT IS FURTHER ORDERED that Claimant, Class Counsel, and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 17, 2009.**

SIGNED this 22nd day of December, 2008.

BY THE COURT:

_____
/s/ Richard M. Borchers
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 22nd day of December, 2008 to the following:

Mr. Ronald Cordova
#57350
AVCF
P.O. Box 1000
Crowley, CO  81034-1000

King & Greisen, LLP
1670 York Street
Denver, CO  80206

Mr. James Quinn
Mr. Jess Dance
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO  80203

_____
/s/ Susan L. Carter