In the United States District Court of Colorado.

# 92 N 870-CMA- C-002
OES

Jesse Montez

    Class Member Stephen Moore

  vs

Bill Owens

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 19 2009

GREGORY C. LANGHAM
CLERK

---

Pro Se. Brief that Federal Court has jurisdiction to review Pro Se Class Members motions, without Counsel submission.

---

Special Master refuses to rule on Pro Se motions Moore request the court to find that. The court should rule on Pro Se motions as class counsel cannot litigate the numerous claims.

Moore requested Special Masters to rule on denial of disability. By systemic denial of disability status D.O.C refuses and violates ALL A.D.A. protections.

In Support of:

① Disability and Duration of disability are questions of law, to judicial review. Doebele v Sprint 342 F3d 1177 10th 2004.

② Montez XXXVI Allows Judicial Review.

③ 42 USC 12117 Enforcement shall be the

(1)

POWERS, REMEDIES, PROCEEDINGS TO ANY PERSON ALLEGING DISCRIMINATION" SPECIFIC TO PERSONS NOT CLASS ACTION

(3) LAWS TO 42 USC 1983 SHOULD NOT APPLY TO ADA LAW, AS SEPERATE LAW + ENFORCEMENT PROCESS

(4) 42 USC 12188 (2) AUTHORITY OF COURT
   (A) MAY GRANT EQUITABLE RELIEF"
      (i) GRANTING PRELIMINARY + PERMANANT RELIEF
      (ii) PROVIDE AUXIALLIARY AID OR SERVICE

(5) THE COURT SHOULD CONSIDER D.O.C. IS IN CRONIC VIOLATION OF A.D.A. TO 12188 ENFORCEMENT
   (1) FUTILE GESTURES
   (2) INJUNCTIVE RELIEF.

(6) D.O.C. IS INVOLVED IS SYSTEMIC EVASION, BY PRETEXT, ADMINISTRATIVE METHODS '42 USC 1212 B-3 BY SYSTEMIC VIOLATION BY DENIAL OF DISABILITY BY CLAIM OF 'MEDICAL' IS EXCEPTED TO ADA DESPITE ADA CLEARLY APPLYS TO MEDICAL 42 USC. 12112 (D) MEDICAL EXAMINATION + INQUIRIES' + 12181 (7)(F) DUTY TO ACCOMIDATE DISABILITY BY PROVIDING MEDICAL CARE THAT CURED OR MITIGATED' McDaniel v Allied 896 F Supp. 1482. D.O.C. 750-04 B 4 "DO NOT INCLUDE CLINICAL CARE"

"Findings and the opinion of D.O.C. medical and mental health staff + definitions of the disability requirements are not debateable" to rigid intolerance, use of 'medical' to evade ADA law.

See Exhibit A. Motion to Review Disability. To 10 years denial of disability 20/60 3-95. 20 $\frac{450}{4.75}$ + injury controls vision to 1 to 6 hours painful bad vision a day.

Moore request the court allow review of pro se pleadings per systemic denial of ADA

Sworn true + correct 12 day of March, 2009

By /s/ Stephen Moore

Concurrent copies sent to
Colo Att. General
1525 Sherman St

Class Counsel

Stephen Moore 57381
Box 0777 D-6-12
Canon City Colo
81215

3

IN THE UNITED STATES DISTRICT COURT OF COLORADO

# 92 N 870    C-092

JESSE MONTEZ

STEPHEN MOORE   C-092
    CLASS DEFENDANT

VS

BILL OWENS

**TO SPECIAL MASTER**

REQUEST JUDICIAL REVIEW TO DENIAL OF VISION DISABILITY.

JURISDICTION. IV UNDER MONTEZ XXXVI Allows JUDICIAL REVIEW. QUESTION OF LAW DISABILITY, "DURATION" DOCBELE V SPRINT 342 F3d.1177 10th 04. PLAIN ERROR.

(1) SINGLE STATUS CRITERIA FOR DISABILITY VERIFICATION. PREVIOUSLY 20/200 LEGAL BLIND, NOW 20-60 DRIVERS LICENSE STANDARD VIOLATES ADA. PROVISIONS, THAT DISABILITY IS SPECIFIC TO "INDIVIDUALS". EXCLUDES "DURATION" LIMITS

(2) MOORE WITH 20. 4.75 VISION LEFT EYE INJURY HAS "DURATION" TOTAL 1 TO 2 hours READING VISION A DAY TOTAL 6 hours VISION Daily. BY CRONIC EYE STRAIN, PAIN, BLURRED VISION. ON EYE FATIGUE. BASICALLY — WEAK EYES 20-4.75+INJURY / STRONG PRESCRIPTION. —

(3) MOORE FIRST REQUESTED ADA ACCOMODATION IN 1998, EXIBIT A AN ADMINISTRATOR SAID `BIFOCALS WERE ACCOMODATION. 3-24-1998 EXAM STATED MOORES VISION WITH CORRECTION WAS 20 50/70  20-60 Disabled By CURRENT STANDARD.

⓵

A

Moore had reading glasses only, no distance. 10 years later staff adamantly deny disability status, refuse optometry exams, except by repeated grievances and court motions.

(4.) Total daily vision 2 to 6 hours with correction is disabled by "Duration or Expected Duration" 42 USC. 12102 2(A)(2) citing.

    (1) Nature and severity 20-475 + injury
    (2) Duration or expected duration   2 to 6 hours
    (3) Permanant or long term impact

By CFR. 1630 2J(1)ii "significantly restricted as to condition, manner or duration" See Doebele v Sprint 342 F 3d 1117 10th 04 Sutton 130 F3d A pg 900. "Duration" Pg 27 General Opthamology, text cited in Sutton

### DEFENDANTS OWN REGULATION 750-04

III K "Substantial Limitation -- Significantly Restricts Manner or Duration"

(5) Moores ADA requests, grievances and motions filed clearly state 'duration' 2 to 6 hours. The DEFENDANTS ARE IN KNOWN INTENTIONAL VIOLATION OF ADA.

(6) Defendants admitt 'vision impairment'

2

ADMITS DISABILITY Colo. CRS. 24-34-801 1-3
VISION IMPAIRED ENTITLED FULL AND EQUAL ACCOMODATION"
29 CFR. 1630 2(h)(2) "PHYSICAL OR MENTAL IMPAIRMENT"
42 USC. 12102 2(A)(i) NATURE AND SEVERITY OF IMPAIRMENT"

☒ 42 USC 12102(1) AIDS B "VISUALLY IMPAIRED"
42 USC. 12102 (2)(A) DEFINITION "A PHYSICAL OR MENTAL IMPAIRMENT" & B,C "IMPAIRMENT"
BRAGDON V ABBOTT 118 SCT 2196 "PHYSICAL IMPAIRMENT ANY PHYSIOLOGICAL DISORDER OR CONDITION VISUAL, EMOTIONAL ILLNESS -- DISORDER WITH AN IMMEDIATE CONSTANT AND DETRIMENTAL EFFECT" AT. 2202

(7) DEFENDANT ADMIT "VISION IMPAIRMENT" ADMITS DISABILITY By FRANZ CMP, 11-5-08 HOLST 10-30-08 PREPARED FEB. 25. 08 REVISED OCT 23-08 ON 1-27-09 Holst HOLST STATE "TODAY YOU WOULD NOT BE FOUND TO HAVE A VISION DISABILITY" IMPAIRMENT CATEGORY HAS BEEN ELIMINATED"

(8) DENIAL OF 1 TO 6 HRS TOTAL VISION, DEFENDANTS SYSTEMATICALLY EXCLUDE 'SELF REPORTING' SELF REPORTING IS OFTEN THE ONLY INDICATOR OF PHYSICAL IMPAIRMENT DISABILITY COOPER V CASY 97 F3d 914 916-17 GREENE V DALY 414 F3d 645 7th 2005. "EXTENT OF LIMITATION BY OWN PERSONAL EXPERIENCE" GRILLASCI V DICTY

3.

233 F. Supp. 2d 258. Disability solely by plaintiffs own testimony Colwell v Suffolk PA. 967 F. Supp 1419, 158 F.3d 635 "Nothing requires medical testimony"

"Medical diagnosis insufficient by varying degrees of symtoms" Barnes v N.W Health 238. F. Supp 2d 1053.

(9) By law and physical fact of injury "Illness itself is not impairment only symtom + ramifications" Rodriguez v Loctite 967 F Supp 653. It isn't 20-4.75 vision/injury, legal blindness or 20-60 drivers blind, but result. Moores vision is 1 to 2 hours reading 1 to 6 hours total vision daily with correction and cronic pain, eye fatigue, blurred vision

(10). Plain Error. Hoist on 1-20-09 grievance response Grv. # 0519 states 1-29-08 Eye Exam "20-200 vision". Moores vision is 20 4.75 / 5.00  7-07 20-4.75

Twice as bad as reported

20-50 vision with bifocals. Able to read 11 point font. Yet denys limitation 2 to 6 hours. That grievance again points out 20/50 low vision P.D.R. opth

Plain error is denying duration limitation. Meticher v Buck 953 F Supp 266 "Duration Impact" Neoder v Rivier 944 F Supp 111. Significantly

RESTRICTED BY MANNER DURATION Doebele 342 F2d 1117. Burrell 324 F.Supp.2d. 1000 Santiago 213 F3d 215.

(11) PLAIN ERROR. By ADMISSION OF "VISION IMPAIRMENT" AND 20-200 VISION TO 20-4.75 VISION. BY LAW AND STIPULATION. SHOULD BE JUDGED WITH OR WITHOUT ACCOMODATION / CORRECTION. TO AVOID CRONIC EVASION SUCH AS DEFENDANTS USE. BY REGULATION AR 750-04 A.D.A. I VERIFICATION "WITH OR WITHOUT ACCOMODATION" 42 USC 12102 (3)(2)(A) "WITHOUT MITIGATING MEASURES" 42 USC. 12131(2) "WITH OR WITHOUT REASONABLE ACCOMODATION" 42 USC. 12111 8 INDIVIDUAL "WHO WITH OR WITHOUT REASONABLE ACCOMODATION CAN PERFORM"

(12) DISCRIMINATION IS ESTABLISHED BY 10 YEAR DENIAL OF DISABILITY, CRONIC OBSTRUCTION TO A.D.A. KNOWLEDGE AND AQUISCENCE IS SHOWN BY REQUEST, GRIEVANCES AND MOTIONS FILED. "DISCRIMINATION IS NOT MAKING REASONABLE ACCOMODATION" 42 USC 12111 (9) B, 12112 (b)(A) DISCRIMINATION CERTAINLY INCLUDES DENIAL OF DISABILITY.

(13) PLAIN ERROR IS CLAIMED 'MEDICAL' IS EXEMPT FROM A.D.A. A.R 750-04. IV B-4. "ACCOMODATIONS DO NOT INCLUDE CLINICAL CARE" HOIST MEMO "ADA HAS NOTHING TO DO WITH MEDICAL CARE"
42 USC 12112 D "MEDICAL EXAMS SHALL BE INCLUDED"

5.

42 USC 12181 (8) (7) F- Mayberry 843 F.Supp 1160 to Health Care Provider

(14) Single Standard Criteria 20-60, Excluding Duration Should Consider 20-4.75 vision ~~injury~~ injury and 1 to 6 hours daily vision total with corrections by General Opthamology Text cited Sutton

✱ "Visual Function IS NOT A Particulerly Sensitive Measure of Function" pg 329

"Visual Function Is Not Always Measured Accurately By Reading An Eye Chart" pg 329

✱ "Abnormalities of the Intercranial Visual Pathways Usually Disturbs The Vision Field More Than Central Acuity" pg 27 General Opth. Injury Controls Moores Vision more than Acuity

Good Vision Results From Combination ~~Comination~~ of
"Intact Neurological Pathways" Injury Presses Nerves
"Intact Health Eye Structure" Left Eye Orbital ~~Injury~~
"Proper Focus of Eye" Eye Acuity 20-4.75
Pg 27 General Opthamology. "Frequently Visual Disturbances Because of Destruction or Pressure upon

6

A

SOME PORTION OF THE OPTIC PATHWAY" Pg 244.
GENERAL OPTH. TO "OPTIC NERVE" SPECIALIST
SAID DISPLACEMENT INJURY PRESSED NERVES

(15) LOW VISION, BY DEFENDANTS SINGLE STANDARD
CRITERIA 20-60 CORRECTED. IS REFUTED BY
EXPERT INFORMATION. 20-50 P.DR OPTHAMOLOGY
      20-60 UNCORRECTED IS USED FOR
LOW VISION BY AMERICAN ACADEMY OF OPTHAMOLOGY
 See EXBIT C "WITHOUT IMPROVEMENT" EX C.

VISION DISABILITY "UNABLE TO PERFORM CERTAIN
TASKS" MOORE COULD HANDLE AC & HR REGULAR
JOBY By DURATION, MANNER & CONDITION OF VISION

    LOW VISION 'SEVERELY REDUCED VISUAL ACUITY"
          LIGHTHOUSE INTERNATIONAL EX C.
20-50 TO 20-200 Physician DESK REFENCE OF OPTHAMOLOGY
(16) DISABILITY By PHYsiciAN DESK REFERENCE FOR
OPTHAmology 26 ED. 1988
★ "PATIENT Whose VISION IS REDUCED OR
INADEQUATE FOR Their VISUAL TASKS" Pg 58
   20-50 TO 20-200 FREQUENTLY AIDED
By SAME TECHNIQUES And DEVICES FOR Legally Blind'
   Pg 58.
(17) MOORES VISION SHOULD BE JUDGED NOT BY
    SINGLE STANDARD CRITERIA "20-60 Corrected"

                7c                                    A

But by combination, 2 to 6 hours total daily vision with correction, injury 20-4.75 vision.

Illness itself not disability, (Thus 20-60 not applicable) only symtoms + ramifications." Rodriguez v Loctite 967 F.Supp. 653. Subject to <u>Duration, Severity + Long Term Impact</u>" of 2-to 4 hrs daily vision. Santiago 7 F.Supp 2d 1114 213 F3d 215 29 CFR 1630.2(J)(1) ii 42 U.S.C. 12102 2 A Substantially Limited (1) Severity + Nature (2) Duration.

Doebele v Sprint 342 F3d 1117 10th 04 "Significantly Restricted as to Condition Manner or Duration" <u>With or Without Correction</u>

(18) Defendants claim of correction by Bifocals should also be disregarded, as policy directed medical "Dogged persistence in ineffective treatment" Greeno 414 F3d 645 as by Defendants own policy 750-04 IV H-(1) c <u>"When Device is not Adequate"</u> "Corrective Device Does Not Relieve Disability" Sutton 119 SCT A.2149. Exhibit D.

Moore prays that the Court review denial of disability and all consequent-A.D.A

8.

A

PROTECTIONS AS SINGLE STANDARD CRITERIA OF DEFENDANTS. PAST 20-200 LEGALLY BLIND NOW 20-60 CORRECTED, FAILS TO CONSIDER DURATION LIMITATIONS FORECLOSES SELF REPORTING AND ONLY ALLOWS WHAT THE DEFENDANTS DEEM RELEVANT SEE EXIBIT A MOORE 20-60, BY 20$\frac{50}{70}$ IN 3-24-90 PRESCRIBED 2 PR GLASSES, TO HAVE REPEATED PRESCRIBED CARE OF; BASIC TO VISION DISFUNCTION READING GLASSES REPEATEDLY DENIED. ON L-29-08 EXAM PRESCRIBED READING + DISTANCE GLASSES. EXAMS + MEDICAL RECORD DESTROYED. THUS 20-60 STANDARD CAN BE USED TO DENY DISABILITY, BY DESTRUCTION OF MEDICAL RECORDS.

DEFENDANTS, ARE IN PLAIN ERROR, BY EXCLUDING 1 TO 6 HR TOTAL DAILY VISION, CLAIMING 20-200 STEAD OF ACUATE 20-4-75 VISION. BY ONLY USING CORRECTED, NOT 'WITH OR WITHOUT' THAT EXCLUDES PETTY CRONIC EVASION. BY LAW + FACT FIND VISION DISABLED. By /s/ Stephen Moore

SWORN TRUE + CORRECT 8TH DAY OF FEBUARY 2009

STEPHEN MOORE 57381
BOX 0777 D-612
CANON CITY COLO
81215

COPY SENT TO
COLO ATT. GENERAL
1525 SHERMAN ST.
DN COLO.

CLASS COUNSEL
PAULA GRIESEN

9

A

DOC # 57381   NAME Moore, St.   DOB 1-19-54

| | | | |
|---|---|---|---|
| DATE 3/24/98 FACILITY CSP PED | | DATE 5-18-98 FACILITY CSP PED | |

| WITHOUT CORRECTION | EXISTING RX | NEW RX | WITHOUT CORRECTION | EXISTING RX | NEW RX |
|---|---|---|---|---|---|
| OD 20/200 | OD PH 20/50 | OD | OD | OD | OD |
| OS 20/200 | OS PH 20/70 | OS | OS | OS | OS |

| | SPHERE | CYLINDER | AXIS | PRISM | BASE | | SPHERE | CYLINDER | AXIS | PRISM | BASE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DISTANT OD | | | | | | DISTANT OD | | | | | |
| OS | | | | | | OS | | | | | |
| ADD OD | | | | | | ADD OD | | | | | |
| OS | | | | | | OS | | | | | |
| READING OD | | | | | | READING OD | | | | | |
| OS | | | | | | OS | | | | | |

| | SIZE | TEMPLE | P.D. | COLOR | | SIZE | TEMPLE | P.D. | COLOR |
|---|---|---|---|---|---|---|---|---|---|
| FRAME | | | 66 | | FRAME | | | | |
| BIFOCAL | | | | | BIFOCAL | | | | |

NOTES: c: constant HA's, ↓DV, ↑NV. 44 y/o   Gr 4 me BF!

NOTES: See Ambulatory

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. OPHTHALMOSCOPE | OD | | 1. OPHTHALMOSCOPE | OD | | |
| | OS | | | OS | | |
| 2. OPHTALMOMETER | OD | | 2. OPHTALMOMETER | OD | | |
| | OS | | | OS 8-17-98 See Amb. | | |
| 3. HABITUAL PHORIA | OD | | 3. HABITUAL PHORIA | OD | | |
| 4. STATIC SKIASCOPE | OS | | 4. STATIC SKIASCOPE | OS | | |
| 5. DYNAMIC SKIASCOPE (20") | OD | | 5. DYNAMIC SKIASCOPE (20") | OD J. Moody OD | | |
| | OD | | | | | |
| 6. DYNAMIC SKIASCOPE (40") | OD | | 6. DYNAMIC SKIASCOPE (40") | OD | | |
| | OS | | | OS | | |
| 7. SUBJECTIVE | OD -3.50-1.00 x 82  20/20 | | 7. SUBJECTIVE | OD | | |
| | OS -4.00-1.75 x 15  20/20 | | | OS | | |
| 8. INDUCED PHORIA | ESO | EXO | 8. INDUCED PHORIA | ESO | EXO |
| 9. TRUE ADDUCTION (W/O ACC) | A ① RE / P | | 9. TRUE ADDUCTION (W/O ACC) | | |
| 10. CONVERGENCE (AAA & ADD) | ② refuses BF | | 10. CONVERGENCE (AAA & ADD) | | |
| 11. ABDUCTION | P - issue DVO | | 11. ABDUCTION | — | |
| 12. VERTICAL PHORIA | R. Con use L. | | 12. VERTICAL PHORIA | R. | L. |
| 13. INDUCED PHORIA (NEW RX) | ESO other EXO | | 13. INDUCED PHORIA (NEW RX) | ESO | EXO |
| 14. CROSS CYL. (Dissociated) | OD reading glasses to | | 14. CROSS CYL. (Dissociated) | OD | |
| | OS read. | | | OS | |
| 15. INDUCED PHORIA | ESO EXO | | 15. INDUCED PHORIA | ESO | EXO |
| 16. ADD. TOLERANCE | 16.A 16.B | | 16. ADD. TOLERANCE | 16.A | 16.B |
| 17. ADD. NEG. TOLERANCE | 17.A ordered 17.B | | 17. ADD. NEG. TOLERANCE | 17.A | 17.B |
| 18. VERTICAL PHORIA | R. new DIST lenses L. | | 18. VERTICAL PHORIA | R. | L. |
| 19. AMP. OF ACC. | ($6.00 charge) | | 19. AMP. OF ACC. | | |
| 20. TOL OF ACC STIMULATION | frame is in desk | | 20. TOL OF ACC STIMULATION | | |
| 21. TOL OF ACC INHIBITION | | | 21. TOL OF ACC INHIBITION | | |

I RECEIVED ONE PAIR OF STATE ISSUE PRESCRIPTION GLASSES

NAME _____ DATE _____

I RECEIVED ONE PAIR OF STATE ISSUE PRESCRIPTION GLASSES

NAME _____ DATE _____

*Kept File*

## MEMORANDUM

TO: Mr. Stephen Moore
DOC # 57381, CSP

FROM: David D. Holt, Ph.D.  *David D. Holt*
Clinical Administrator
CSP and CWCF

DATE: September 25, 1998

RE: Frivolous Grievances and Request for Sick Call slips

Mr. Moore, five (5) Grievances and seven (7) Request for Sick Call slips were forward to my Office regarding your eye care and your request for glasses. All of your complaints relate to the same issue, you want to get an extra pair of reading glasses in place of the bifocals, which was recommended by the Optometrist, due to reported vision problems. As the Health Authority for this Clinical Unit, I gave you a warning on August 24, 1998 that if you continued to submit *repetitive grievances* dealing with the same alleged problem that you would be limited to one (1) grievance per month according to AR# 850-04, item IV, B. 1. f. Your complaints about your vision problems have already been addressed several times in the past by the Nurse IV, the primary care physician and me. I consider your barrage of grievances and Request for Sick Call (kites) an abuse of the Grievance Procedure and frankly misuse of State supplies. As such, you will be limited to one (1) Grievance per month, beginning October 1, 1998. I will advise your case manager of this decision.

One of your Grievances did allude to ADA issues. The Optometrist did provide a *reasonable accommodation* for you when he recommended the bifocals. You have no basis for this argument.

cc: D. Neal, Superintendent
G. Bridges, Case Manager, B1-4
C. Peterson, DOC HQ
Medical Record

**EXHIBIT A-8**

DOC-MOORE 1581

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-CS08/09-0519     STEP (Circle One) 1 2 3     ADA? Yes ☒ No ☐

NAME: STEPHEN MOORE     DOC NO. 57381     FACILITY CSP D-6-12

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy: Reverse denial of disability status to vision. Staff admits Moore is vision impaired, yet denys disability + all A.D.A protection. By ADA law, Montez agreement + stipulation, disability shall be judged with or without accommodation glasses. Moore's vision is 20-450, with left eye injury he has 2 to 6 hours vision daily with correction, has cronic pain + blurred vision. This is disability, staff deliberately obstructs ADA by pretext + excuses, medical pretext to deny systematically ADA protection. Recent revisions aim to exclude 1000 holes to arbitrary denial by debates of "corrected." This continues futile attempt to gain simple effective accommodation. Moore with or without glasses is disabled, law states by duration 2 to 6 hours vision, just be able to perform job, thus not total disabled. Remedy find 2 to 6 hours vision daily 20-450 vision + injury is disabled stop false denial.

DATE: 11-25-08     OFFENDER SIGNATURE: Stephen Moore

DATE RECEIVED: 12/4/08     RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID: Arienne Jacobsen 14299

RESPONSE:
**SEE ATTACHED RESPONSE**
Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

Cathie Holst 1-20-09

STP II 2-6-09

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: 12/23/08     SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # 14299     Arienne Jacobsen
RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: VISION DISABILITY

DATE: 11/26/2008     SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID #
RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: 2-5-09     OFFENDER SIGNATURE/PRINT NAME & DOC # Stephen Moore 57381     CH/Holst

Original: Department File/AIC     Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

DEC 04 2008
Office of Correctional Legal Services

RECEIVED NOV 26 2008

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:  719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Response to Step 1 ADA Grievance
From:  Adrienne Jacobson, Legal Assistant, Designee
    Office of the AIC (ADA Inmate Coordinator)
Received Grievance: December 4, 2008
Sent Response: January  27 , 2009
Offender Name: MOORE, STEPHEN
DOC No: 57381
Facility: CSP
Grievance No: D-CS0809-0519

---

**DISABILITY STATUS:** Per screening dated 2/12/2008 and Accommodation Resolution dated 10/30/08 you were determined TO HAVE a qualifying vision *impairment*. Per screening dated 6/23/2008 and Accommodation Resolution dated 10/30/08 you were determined NOT TO HAVE a qualifying mental health disability.

---

**In the grievance referenced above, you allege the following:**
1. That you disagree with the findings made by the provider and CMO regarding your vision issues.

**Requested Relief/Remedy:**
1a. To have your disability determination revised to vision disabled.

**Following a thorough investigation into your allegations, I offer the following evidence that was considered in reaching a decision:**
1. You received an eye exam on 1/29/2008. You were found to have 20/200 vision uncorrected and 20/50 vision with your bi-focals. It was also noted that with your bi-focals you were able to read a document printed in 11 point font without difficulty.
2. Your previous ADA screening was conducted using, now outdated, criteria. If you were to be re-screened for a vision disability today, you would be found not to have a vision disability. The vision impairment category has been eliminated and the threshold for vision disability requires an offender's corrected vision to be *worse* than 20/60 in order to qualify. You do not qualify for a vision disability.

*[handwritten: 20-60 without improvement' American Academy of Opthamology]*

**CONCLUSION:**
This grievance is DENIED based on the information above.
Be advised that you have been adequately informed in this grievance response as to the role of the Office of the AIC in responding to ADA grievances. You are required to read and be informed of the information regarding the grievance procedure and what issues you may or may not raise in an ADA grievance, refer to AR 850-14 and AR 750-04. Both are available to you in the general library. If you are in segregation, you may request them on loan from the law library. If you have questions, you may contact your case manager for further information or clarification. In the future, you will be expected to mark your grievances appropriately and will not be granted the privilege of having the time tolled so that you have the opportunity to file them with the appropriate party.

**GRIEVANCE DENIED.**

*[handwritten: e-002 B]*

# Visual Impairment, Visual Disability and Legal Blindness

Over three million people in the United States do not have normal vision even with eyeglasses or corrective lenses. These people are considered visually impaired. Visual impairment may be caused by a number of eye diseases, including age-related macular degeneration, diabetic retinopathy, glaucoma and cataracts.

Although many eye diseases can be diagnosed and treated by your ophthalmologist, some may result in unavoidable loss of central (reading) vision, peripheral (side) vision, or both. Accidents or inherited ocular disorders may also produce vision loss which cannot be medically corrected.

Visual impairment can range from mild to severe. Federal regulations define a certain level of visual impairment as "legal blindness," not to be confused with total blindness. Most of the approximately one million Americans defined as "legally blind" retain some useful vision.

## How is sight measured?

Central or reading vision is customarily measured using an eye chart. The results are recorded as a pair of numbers called "visual acuity." The first number is the testing distance measured in feet, the second number is the distance from which a normal eye should see the letter clearly. People with a visual acuity of 20/20 can see certain sized letters at a distance of 20 feet. An individual with a visual acuity of 20/60 can only see at 20 feet letters which a healthy eye can identify at 60 feet. The larger the second number, the lower your visual acuity.

Side vision — which can be even more important than central or reading vision for many daily activities — can also be measured by an ophthalmologist. Normal eyes can recognize objects over an area measuring at least 140 degrees (almost half a circle). A person with a much narrower range of side vision may have trouble walking or recognizing people in a large room, even when his or her central vision is excellent.

Ophthalmologists can measure other aspects of visual function. Tests may include eye movement, color and contrast vision, stereoscopic (three-dimensional) vision, and adjustment to light and dark. These tests allow your ophthalmologist to identify specific visual conditions and describe their severity.

## What is legal blindness?

When your best corrected central visual acuity is 20/200 or worse in your better eye, or your side vision is narrowed to 20 degrees or less in your *better* eye, you are considered legally blind, even though you may still have some useful vision. You may qualify for certain government benefits and receive assistance from public and private organizations.

## What is visual impairment?

If neither of your eyes can see better than 20/60 without improvement from eyeglasses or corrective lenses, you may be defined as visually impaired. Limitation of side vision, abnormal color vision, double vision, poor night vision and loss

(OVER)

# Visual Impairment, Visual Disability and Legal Blindness

of vision in one eye may also determine visual impairment.

## What is a visual disability?

People who are unable to perform certain tasks because of their visual impairment are usually "visually disabled." An exact rating or quantification of the disability is necessary for a person to receive workman's compensation, insurance disability benefits, legal claims, or certain forms of government assistance.

Visual disability is expressed in percentages, which are used by insurers, the courts and government agencies to determine how much the whole person is disabled by his or her visual handicap. For example, total loss of vision in both eyes is a 100% disability of the visual system and an 85% disability of the whole person.

## What can you do about your visual impairment?

1. Have your ophthalmologist help you understand its cause and learn whether the impairment is temporary, stable, or likely to progress.

2. Make use of rehabilitation programs, devices, and supportive services. These include counseling, large print and audio publications, optical and electronic magnifiers, mobility training, and non-optical aids such as improved lighting devices, large-face clocks and special kitchen tools.

3. Join a local support group and a national association for people with eye problems similar to yours.

4. Ask your ophthalmologist to refer you to the appropriate state and local agencies for the visually disabled. These agencies can help you obtain a handicapped parking designation, low-vision services, and possibly Social Security and Department of Veterans Affairs benefits. Federal and state income taxes can be reduced through an extra exemption allowed to "legally blind" individuals. Some communities may offer a reduction in property taxes as well.

5. Continue seeing your ophthalmologist for regular checkups. Your eye disorder may change, so its treatment may also need to be changed. Because eyes can be affected by more than one disease, it is especially important that any new problems be detected and treated promptly in order to preserve your remaining sight.

6. Request the American Academy of Ophthalmology brochure on low vision, and resource list of referral services, large print and recorded reading materials, devices, and support groups.

Compliments of Your Ophthalmologist

American Academy of Ophthalmology
P.O. Box 7424
San Francisco, CA 94120-7424

Copyright © 1990 American Academy of Ophthalmology®

Printed 6/98

## Signs of Low Vision

- Difficulty recognizing a familiar face
- Difficulty reading — print appears broken or distorted
- Difficulty seeing objects and potential obstacles such as steps, curbs, walls and furniture

## Vision is a Continuum

Vision is a complex sense, encompassing the ability to perceive detail (acuity), color and contrast, and to distinguish objects. These capacities can diminish naturally with age. While most visual changes can be corrected by glasses, medicine or surgery, visual changes caused by eye disease, poor health or injury can cause permanent vision loss. If the loss is total, the result is blindness. If it is partial, the result is a vision impairment known as "low vision." A person with low vision has severely reduced visual acuity or a significantly obstructed field of vision — or both.

## Low Vision = Usable Vision

People with low vision retain some usable vision. Ophthalmologists and optometrists specializing in low vision care can evaluate patients and prescribe optical devices to maximize remaining vision.



**A person's visual function is not always measured accurately by reading an eye chart. A more thorough functional vision assessment by a low vision specialist is an important first step in the vision rehabilitation process.**

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number: CCF 07/08-62     STEP (Circle One) 1  2  (3)     ADA? Yes ☐ No ☒  Both ADA + medical   CCF C-11

| NAME: Stephen Moore | DOC NO. 57381 | FACILITY: CCFC:1-11 |

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy: Denial of prescribed care, alteration + destruction of medical records. On 1-29-08 optometry exam, optometrist Keith prescribed 2 pr glasses, 1 pr each for reading + distance. Nurse Edwards came to Moore's cell insisting Moore choose bifocals, reading or distance glasses. Nurse Taylor later said "we ordered you bifocals!" Moore then received the records of this exam. Nurses had thrown out, omitted + destroyed Dr. Keith's ambulatory written + prescribed 2 pair of glasses on forms.

Soon after this exam Nurse Practitioner Martin did a A.D.A. review, then there was no record on exam of Moore's 2 to 6 hours vision a day, pain killer '87 to 2007. Bifocals severely exacerbates left eye injury controlling vision. ADA exam 2-12-08. This violates several D.O.C. regulations, state statutory med law + established court law. To medical treatment. By facts, using bifoc. Moore's vision 1996 till 2007 went from 20-2.75 to 20-5.00. Scripts show the prevalence of injury. By always weaker in injured eye 12-96 20-25, 3-98 20-50, 8-94 20-3..., ...07 20-30, 9-06 20-30 20-40. By fact injury controls vision, to 2-6 hours a day, constant pain. See ADA grievance D-CS 07-08-365 to debilitation of injury (attached). To other pages. See Step I + II. 2 attached pages, + 3 exhibits.

| DATE: 3-20-08 | OFFENDER SIGNATURE: Stephen Moore |
| DATE RECEIVED: | RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID |
| RESPONSE: Med. Decoraro | |

RECEIVED
APR 01 2008
Office of Correctional Legal Services

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # |
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: J. Holcomb 3770 |
| DATE: 3-20-08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # 3770 |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | |
| DATE: | OFFENDER SIGNATURE/PRINT NAME & DOC # |

ginal: Department File/AIC     Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

RECEIVED MAR 2 5 2008

