FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 21 2009

GREGORY C. LANGHAM
CLERK

US DISTRICT COURT
901--19 th Street
Denver, Co  80294

JESSE MONTEZ ET AL
VS
BILL OWENS ET AL
CASE NO  92 N 870 and 96  n 343 and 92 cv 870 EWN-OES

---

NOTICE TO THE COURT THAT DENVER WOMEN'S CORRECTIONAL FACILITY AND THE COLORADO DEPARTMENT OF CORRECTIONS HAS NO INTENT OF OBEYING THE MONTEZ REMEDICAL PLAN BY SUPPLYING COMPUTERS IN THE LIBRARY AS ORDERED UNDER MONTEZ XVII  LIBRARY EQUIPMENT. "Non Compliant"

---

I am a member of the Mntez Remedial Plan and filed with this court a few weeks ago that DWCF was not in compliance with the montez Remedial Plan but have not received any notice that it was received or acted upon.

With the compliance period of May 1, 2009 I am afraid that this court will over look the part of the Mnntez Remedial Plan XVII Library Equipment. CDOC and DWCF is trying to get the court to state they are in compliance with the Mntez Remedial Plan when they do not intend to ever comply with the plan fully especially the Library Equipment part.

I offer as proof of my statement the letter dated 2-9-08 from ADA Inmate Coordinator, Cathie Holst (AIC) throught Megan R. Reed ,Legal Assistant both signed their initial in response to Grievance No. D-DW-07 08-22 .I call your attent to the number 3. and I quote.

Even if you had a qualifying upper extremeity disability, a personal computer and Dragon Program would not be an option for you or any other offender for that matter. When disabled offenders can not perform daily living tasks themselves, an offende aid is assigned to them.

The reason I asked for a personal computer is because I was told that CDOC would never provide computers in the library to be checked out by offenders. I found a company/program that assist inmates by providing computers to those of us who are vision impaired or who have hand mobility impairments that prevent them from writing or being able to see the printed page clearly enough to work or for personal use. Personal computers do not compromise security because they are not hooked up to DCIS systems or to each other. They ae just glorified tyepwriters that allow the disabled to perform as non disabled inamtes.

DWCFnor CDOC has any intention of providing computers for inmate use, even county jails have computer for inmate use. I have attached a list of what DWCF library provides for inmates.  I have a hand magnifier but can not use it because my hand must be in a turned upward position and that hurts my wrist and causes it to swell. I am enclosing latest medical stating I need speech recognizing program for typing instead of using my hands on keyboard. A typewriter does not have tha capacity and I am not supposed to type or write except to sign name.

Please do not grant compliance until CDOC provides computers in library to be check out or in the case they do not have the money that they allow organizations that help inmates to provide computers for personal use or work.

I have attached the notice that is posted for library use titled: Denver Complex General Library Material and Equipment for Offenders with Special Needs.
IT is incorrect.
(1) CD-ROM workstation: The CD Rom maching-computer- <u>has been bro</u>ken since 2007 and when I asked when it would be fixed I was told there was no money for fixing the machine.

(2) Talking book player- This seems impossible to qualify for. Medical sent my application to apply for this program since I am totally blind in the left eye (20/200) and only see out of the upper half of my right eye depending on where the floaters are I could have a maximum of 45% <u>of the upper</u> right eye. I can not read normal size print, it gives me a migraine when I attempt to read. When I try to use the magnifier my wrist swells and is very painful because you must hold the sheet at an odd angle to be able to see.

I have suggested that DWCF allow organizations that donate computers to impaired inmates but they say positively no. When I bring up the fact that under Montez Remedial Plan they are to let inmates check out computers they say "it will never happen."

With todays economy I would think it would benefit CDOC and DWCF to allow donations to individual inmates that have vision and hand mobility impairments. After all on page4 of the Montez Remedial Plan it states: V Placement, " Certain facilities will be designated for inmates with disabilities requiring special placement. Inamtes with diabetes, permanent mobility, hearing, or vision impairments and other disabilities <u>or compounding conditions severe</u> enough to require special houseing and programing will be assigned to placement in these designated facilities.

It says <u>Compound conditions</u> that is where I fall since I did not have a vision impairment at the time of my hearing and Judge Pringle's Final Order. However Judge Pringle did list that <u>perhaps performing manual tasks.</u>
Manual tasks are performed with hands and I have a permanent hand impairment according to DWCF doctors and have had it since I was injured in 1995 and 1996 by CWCF former staff member Sgt. Joseph Smith whenI refused to submit to his sexual demands and he broke my thumb and bend my wrists back. I now have severe arthritis and De Quarians disease in my right hand and basically it is useless to perform work or use. I suffer when it swells daily.

What accommodations has CDOC and DWCF made for housing the visually impaired. According to the Colorado Blind Association I qualify for being blind under ADA but CDOC/DWCF Holst and Frantz refuse to give me aid for my vision impairment <u>or</u> even <u>recognize</u> that I am sight impaired.
I am not allowed to type or write except for signing my name according to DWCF medical Dr. Martinez however, that could change any day on paper since CDOC/DWCF medical does not obey specialist·

Please do not allow any retaliation for me telling this Court of DWCF and CDOC non compliance with Montez Remedial Plan and Stipulations.

Respectfully,  *Jill Coit*   4-15-09
Jill Coit

*abstated has not read.*

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone: 719.226.4245
Fax:     719.226.4249

Office of ADA Inmate Coordinator (AIC)



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Response to Step 1 ADA Grievance
From: Office of the ADA Inmate Coordinator, Cathie Holst (AIC)
       Through Meghan A. Reed, Legal Assistant
Received Grievance: 1/23/08
Sent Response: 2/19/08
Offender Name: **COIT, J.**
DOC No: 86530
Facility: DWCF
Grievance No: D-DW-07/08-22

---

**In the grievance referenced above, you allege the following:**
1. You have "hand and visual disabilities/handicapped/problems/issues" and are unable to write with your dominant (right) hand.

**Requested Relief/Remedy:**
1a. To be allowed to purchase and have a personal computer with the Dragon Program, a voice-activated word processing program, all for which you are willing to pay for.

**Following a thorough investigation into your allegations, I offer the following evidence that was considered in reaching a decision:**
1. Your current Accommodation Resolution reflects the following: you have a mobility impairment correctable with the use of medical shoes or inserts and a cane. You do not have a qualifying hearing, vision, or other disability. Your wrists and hands were x-rayed, evaluated, and observed and although you do have a medical concern, it does not rise to the level of a disability. According to the screening, it appears that you are able to care for yourself.

2. Because the Chief Medical Officer has determined that you do not have a qualifying upper extremity or vision disability, your issues are medical concerns that should be directed to Clinical Services for treatment and pain management. You have valid concerns, however the AIC is not a medical professional and cannot make disability determinations or give medical treatment or advice.

3. Even if you had a qualifying upper extremity disability, a personal computer and Dragon Program would not be an option for you or any other offender for that matter. When disabled offenders cannot perform daily living tasks themselves, an offender aide is assigned to them.

**CONCLUSION:** This grievance is denied based on the facts above. Please contact Clinical Services for treatment of your wrist and hand issues.

**GRIEVANCE DENIED.**

Cc: AIC File.

*Specialist report*

## ORTHOTIC PATIENT NOTES

**Patient Name:** Jill Coit  
**Orthotic Device:** (B) WHFO  
**Diagnosis:** Carpal tunnel syndrome  
**Physician:** Dr. Martinez-Hochbe  
**Occupation:** —  
**Hobbies/Interest:** —  
**Height:** 5'6"   **Weight:** 152 lbs   **Age:** 63 yo  
**Date:** 6/12-08  
**Side:** Wrists  
**Language:** English

**SUBJECTIVE**  
Patient states the goal is: fitting and delivery of (B) WHFOs and 1/2" internal shoelift (L) leg.

**OBJECTIVE**
1. Where was the patient seen: office
2. How did the patient arrive: with cane
3. Who accompanied the patient: guards
4. Skin status: Intact (Compromised) (what and where) (R) wrist swollen
5. ROM and muscle strength: —
6. Brief medical history including complicating factors in addition to diagnosis: —
7. Main purpose of this visit: Fitting and delivery of her (B) WHFOs. She received Thermal RX - D-ring WHFO size SMALL, (R) x1 ea and (L) x1 ea.
8. Extend of service provided during THIS visit: 1/2" internal shoelift installed in (L) shoe to compensate leg length discrepancy. The
9. List appropriate verbal or written instructions given to the patient/care giver: expected 1½" needed lift do not fit in her shoes. Pt in process to try to get orthopedic shoes that the 1½" lift could be installed.
10. Did the patient/care giver understand the instructions: YES   NO

**ASSESSMENT**  
The patient assessment: Pt advised to wear her WHFOs as much as she needs to. I recommend that she continues heat packs to her wrists and would use speech recognizing program for typing instead of her hands on keyboard. This was documented in her facility file.

**PLAN**
1. Is follow-up appointment scheduled: YES  (NO)
2. Date for next appointment: as needed
3. Adjustment completed: (YES)   NO   The patient instructed to contact office if additional service is required.
4. Delivery completed: (YES)   NO   The patient instructed to contact office if additional service is required.

**Practitioner Signature** Caitn Bauuw CP   **Date** 6/12-08

EXHIBIT _____

92 - 9P(203)  - Coit . V. Zavaras

```
= RECEPTION/DIAG ====== QUERY ADMISSION SUMMARY ==========  07/01/2008 =
                                                        DW/UNIT2   PRES FACIL
Doc No: 86530          COIT, JILL
==============================================================================
Medical Level: 3  Qual Code: P    Desc: PERMANENT    Dtd Assigned: 02/27/2008
Dental Level: 2   Qual Code:      Desc:              Dtd Assigned: 05/10/1999
       Allergy: YES          Medical Hold: NO
 + Medical Housing Restrictions              Medical Assignment Restrictions
Date Assgnd   Restriction   Qualifier     Date Assgnd  Restriction   Qualifier
-----------   -----------   ---------     -----------  -----------   ---------
 06/12/2008   OTHER MEDS    TEMPORARY      03/15/2007   NO BENDING   TEMPORARY
 06/19/2008   OTHER MEDS    TEMPORARY      03/15/2007   NOHVY-LIFT   TEMPORARY
 06/27/2008   OTHR EQUIP    TEMPORARY      03/15/2007   NOHVY-MACH   TEMPORARY
Restriction    pt should not type or write except for signing
Comments


Med Lvl       Medical does not authorize extra pillows, blankets, or
Comments      mattresses, HANDICAPPED CELL

Diagnostic    According to the Colorado Department of Corrections
Narrative     Clinical
Press ESC key to Return to Housing Restriction Field
```

## Colorado Department of Corrections
## Consultation Report Form

Page 1 of 1
Run Date: 03/03/2008 10:25
*REQUESTED*

Appt#: 97430

| | | | |
|---|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 03/03/2008 |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/11/1944 |
| Level: 1 MONTH | Tele-Med: NO | Provider: MARTINEZ-HOCHBE, YVETTE M, | SDD: 03/16/3004 |
| Request: ORTHOPEDIC | Auth #: | Number of Visits: 1 | PED: 03/26/3004 |
| Location: DENVER HEALTH | Appt Dt: | Specialist: | DH #: 2098863 |

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: 63 Y/O W POSTERIOR MEDIAL MENISCUS TEAR AND COLLATERAL LIGAMENT TEAR, LAST MRI 2007 CONFIRMING THIS-NEEDS ORTHO REFERRAL TO DETERMINE NEED FOR ARTHROSCOPY AND OR KNEE REPLACEMENT OR REPAIR-PROBLEM-USES CANE FOR MOBILIZATION, PAINW/ ROMI -KNEE OTHERWISE STABLE AT THIS TIME
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: YES,Orthopedic surgeon for ANY ONE of the following:Orthopedic surgeon for ANY ONE of the following:
Significant joint laxity with recurrent episodes of locking, buckling, effusion, and pain

Knee MRI showing meniscal tear or anterior collateral ligament tear

URGENCY OF NEED V. REMAINING SENTENCE:LIFE W/O PAROLE
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY:USES CANE WHICH IRRITATES WRIST PAIN AND SHOULDER PAIN
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION:NO -SUBSEQUENT DUE TO SEXUAL ASSAULT DURING INCARCERATION
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: NONE
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT: YES
8. PAIN COMPLAINTS/BEHAVIOR: AS ABOVE, CHRONIC PAIN
9. RISK AND/OR COST BENEFIT: REPAIR KNEE AND PT WILL BECOME MORE MOBILE

| ICD | | CPT | |
|---|---|---|---|
| V68.89 | ENCOUNTERS OTH SPEC ADMIN PRPOS OTH | 88325 | COMPREHENSIVE REVIEW OF DATA |
| | | | |
| | | | |

| Provider Signature: | *Electronically Signed* | Date: 03/03/2008 10:25 |
|---|---|---|
| Provider Name: | MARTINEZ-HOCHBE, YVETTE M , MD | ymmartin |

EXHIBIT _____

Please do not discuss dates of the follow-up appointments with the offender.
Insurance: Physician Health Partners  Phone: (866) 362-1374  FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

| 86530 | COIT, JILL | | Facility: DW  LU: DW/UNIT2 | 1 | D | 126 | L |

Encounter#: 1224860 @ DW

## SUBJECTIVE

Active Medication(s): ASA ENTERIC - 325 MG; DIPROSONE CR-45GM - 0.05%; LIORESAL - 10 MG; MEVACOR - 20 MG; ZOMIG - 2.5 MG

Temperature:    Pulse:    Weight:
Respiratory:    BP:

## PLANS / ORDERS

Allergies: PENICILLIN G

Please exchange state issue green shirt for new shirts due to wear and tear of old green shirt. (the old one has a significant rip in it).

## OBJECTIVE

Jill was here for several items.
1. Had injured her back on Sundsy--she slipped on floor. Has a bruise on her lower back and she is concerned that she broke a rib.
She has right shoulder pain and is unable to lift her right arm to perfomr her daily activities. She has provided me with her MRI report documenting the right shoulder injury. Will obtain an orthopedic consult.
Also concerned about her right hand (history of arthritis). Unable to wirtie with rht right hand. Today her right thumb joint is swollen and she complains of pain is present all the time.

Ok given for shower shoes and bre extension.

Self purchase for above items.

Back X-RAY at DRDC (post fall)

ok for her to use computer-voice activiated program due to hand deformity and arthriis.

## ASSESSMENT

V68.89 - ENCOUNTERS OTHER SPEC ADMINISTRATIVE PURPOSE OTH
88325 - CONSLTJ COMPRE REVIEW REPRT REFERRED MATRL

Dietary Consult done.

D/C - Rx#: 2071423 Drug Brand Name: ASA ENTERIC - 325 MG Alternal Name: ENTERIC COATED ASPIRIN Rx Date: 06/16/2006 Disc Date: 06/27/2006 Rx Instructions: ONE TABLET DAILY

NEW - Rx#: 2075148 Drug Brand Name: FOSAMAX - 70 MG Alternate Name: ALENDRONATE Rx Date: 06/27/2006 Disc Date: 09/25/2006 Rx Instructions: ONE TABLET WEEKLY--FOLLOW DIRECTIONS.

NEW - Rx#: 2075152 Drug Brand Name: ASA ENTERIC - 325 MG Alternate Name: ENTERIC COATED ASPIRIN Rx Date: 06/27/2006 Disc Date: 09/25/2006 Rx Instructions: ONE TABLET DAILY

Datetime: 06/27/2006 13:07    Providers: NOLA, NANCY D

PA/NP/RD _____  PHYSICIAN _____  NURSE _____
Datetime: 06/27/2006 13:07    Provider: NOLA, NANCY D    DateTime _____

ADA Screen

DC Form 78 (2/93) / Old. No. 2835
WHITE - Medical Record
CANARY - Pharmacy
PINK - Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

**PRICARE CODE NO.**: 
**NAME**: COIT
**OFFENDER NO.**: 86530
**LIVING UNIT**: CWCF
**DATE**: 3/25/04
**TIME**: 1100

**SUBJECTIVE**:

**OBJECTIVE**: Temp ___ Pulse ___ Resp ___ B/P ___

2/ ≥ 3

**PROBLEM 1/2**
**PLAN / ORDERS**:
- May wear own prescription sunglasses as needed for migraine headache
- Walker brought to medical

**SIGNATURE NURSE**: Kevin Kamorka VN 3-25-04 1330

**ASSESSMENT**:

**P.E.**:
**PHYSICIAN**:
**Rx NO.**:

---

**PRICARE CODE NO.**: 
**NAME**: COIT, Jill
**OFFENDER NO.**: 86530
**LIVING UNIT**: CWCF
**DATE**: 3/25/04
**TIME**: 1100

**SUBJECTIVE**: This patient 59 year old WF has physical disability due to DJD

**OBJECTIVE**: of the hips & knees - w/ S/P (R) THA, S/P (L) knee arthroscopic surgery. w/ 1½ leg length discrepancy (L) leg shorter than (R). +ANA w/o SLE. (R) hand contracture.

**ASSESSMENT**: Patient needs follow up by Ortho for L/R (L) knee problem, Rheumatology for +ANA

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET. (Rheum appt. had x 2)
NO SLE

**PROBLEM 1 2**
**PLAN / ORDERS**:
- M3 to M4
- No lifting greater than 5 lbs
- 2 Hour work restriction
- No stairs
- Handicapped cell
- Elevator use as needed

**SIGNATURE NURSE**: Kevin Kamorka VN 3-25-04 1330

31.201

# Denver Complex General Library
## Material and Equipment for Offenders with Special Needs
### 8/08/07

## Materials

The Denver Complex General Library collection contains materials for offenders with special needs, including large print books, recorded books, and closed-captioned videos. The Library also has the COPD on audiotape, the Montez Agreement on audiotape and in large print, and medical reference materials that contain information useful to insulin dependent diabetics. All items are available upon request for in-library use and some are available for checkout. The Denver Complex Library can obtain additional materials through interlibrary loan, from Colorado Talking Book Library Service, and from the Captioned Media Program. Ask library staff for assistance locating the material you seek.

## Equipment

The Denver Complex General Library has the following equipment for offenders with special needs:

Tape recorder – Please take the case for the recorded books, which are on display in the fiction and nonfiction areas of the library, to the Circulation Desk and the clerk will assist you with headphones, adapter, and tape recorder operation in exchange for your DOC ID card. Reservations are not required nor are there weekly limitations for using the tape recorder for special needs offenders. You may use the recorder for the full hour during your library time.

Talking book player - Applications forms to apply for Colorado Talking Book Library (CTBL) services, materials, and catalogs are available from library staff during your library hour per the posted General Library schedule. The Denver Complex mailroom will facilitate the receipt and return of the CTBL player and audio materials. Provided you qualify for the service, the player is included in your allowed property irrespective of your facility assignment while you are in Colorado DOC and while you continue to meet the qualifications for its use.

Sheet magnifier – Please exchange your Offender ID card for a sheet magnifier from staff in the Library Office. The sheet magnifier is available for use anytime for a full hour during your library time with no reservation needed nor limit on frequency of request. There are two sheet magnifiers available at all times.

Closed caption TV with VHS/DVD: During your library time, select videos with closed captioning by using the library's online catalog. Library clerks will assist you in loading the media and activating the Closed Captioning option. There is no requirement to

reserve a viewing station and closed caption videos are available anytime they are requested by special needs offenders with no restrictions for frequency of viewing, but you must present your DOC ID in order to receive and view videos/DVDs.

<u>CD-ROM workstation</u>:  the library's east CD-ROM workstation is available for special needs offenders with neither use restrictions nor a reservation required during any offender's library hour.   Request a CD-ROM from the library clerks by presenting your DOC ID card to receive headphones, if necessary, and to have the media inserted.

<u>Cassette/CD player</u>:  By presenting your DOC ID card, library clerks can assist a special needs offender with inserting music and adjusting headphones and volume during an offender's library hour.  Music listening is generally on a first come first served basis, but if special needs warrant, a special reservation can be arranged with library staff for use by the offender for the full hour during any time the offender is eligible to come to the library.

## It's All @ Your Library

18.  Claimant requested that she be moved out of her handicapped cell at DWCF because it did not have sufficient light. She was moved to a non-handicapped cell that provided more light. *Then moved Back to handicapped cell with no light Call 15-16*

## III. CONCLUSIONS OF LAW

1.  The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*; and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*.

2.  The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.



The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class. Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks.

The Special Master finds and concludes that Claimant has not sustained her claim that she has a vision disability within the meaning of the ADA and/or the Remedial Plan.

5