US DISRTRICT COURT
901--19th street
Denver, Co 80294

JESSE MOTNEZ ET AL
V
BILL OWENS ET AL

CASE NUMBER  92 CV 870-EWN-OES

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 22 2009

GREGORY C. LANGHAM
CLERK

---

VIOLATION OF NON COMPLAINCE OF STIPULTATION AND ORDER REGARDING STATUS OF
COMPLIANCE BY DOC WITH REMEDICAL PLAN SIGNED  INTO EFFECT 7-11-06 AND 4-4-08
Montez Remedial Plan -(Refusal to Reinbusre for job discrimination)

Part without attorney
Jill Coit  86530
Claim No 03-129
P.O.Box 392005
Denver, Co 80239

    Comes Now, Jill Coit pro se part  of Montez Clas action under Mobility
Impairment and does hereby wish to notify this court that Defendants & DWCF
are in violation of the above referenced Stipulation under  section B,6.
which states, 'If an inmate believes he or she has been discriminated again
by being placed in an ADA job that paid less than comparable jobs for non-
ADA position or was given only a part time job because of a disability, he
shall notify the AIC in writing.'
    In Coit's Final Order by Special Masters page  page 4 number 15 Coit
listed that she was denied working in the dog program due to her mobility
disability. She tried to apply in 2003,/4/2005, 2006, 2007& 2008 but was
denied consideration of employment due to disabilities. She was finally
placed in lesser paying jobs that inmates with mobility impairments were
allowed.
    Final Order of special Masters ruled that  Coit was qualified to partic-
ipate in the programs, benefits and services offered by CDOC page  6 number
3.
    Coit presented letter to her case manager, Mr.Depriest after he told
her he  tried to get employment for her in the dog program but was told
'NO' they did not want her in 2008. HE told the dog program that he felt
Coit could perform the requirments needed for the dog program but was still
told  Coit could not be in program. At that time there  were no mobility
impaired inmates allowed in the program. For a brief time one mobility
inmate was allowed in program (Charity Leonard in wheel Chair) but only
a brief time considering how long dog program has been at DWCF.
    Now dog program is getting around not hiring mobility impaired inmates
by having an inmate that is mobility impaired ONLY IF  SHE GOES LONG DISTANCES
While this may get them covered under the letter of the law it certainly
does not cover the spirit of the law. They have had short term mobility
impaired inamtes for very brief times-just a few months-under 3 months total
time in dog  program.
    Coit is not currently elgible for dog program as of March 1, 2009 but
prior to this time she was elgible and willing and able to take part in
dog program offered to non disabled inamtes. Although since she is now
filing this under non compliance MOntez she will never be allowed into dog
program.

On May 1, 2008 Coit presented her letter notifying that she felt job discrimation by being denied dog program to her case manager, Mr. Dan DePriest for him to attach his statment that he tried to get her in the dog program but due to her disabilities-mobility impairments she was denied.

It is now April 18, 2009 almost one year and AIC director, Cathie Holst has still not responded to Coit's claim for reimpursement of job pay. *discriminati* With defendants now getting compliance under Montez, if Coit does not present her claim it will continue to be ignored and she will never get difference in pay for being placed in ADA or handicapped job.

In 2004 dog program inamtes were receiving about $97.00 per month while Coit has consistently been put in job that payed only $12 per month or .60 cents per day.

See attached letter to case manager requesting money under job discrimination. Coit was eventually placed in the following job positions that all payed only $12 per month. IEC Library clerk, para pro, Computer Adided Drafting and Desgin and Graphic Arts. According to CDOC Coit has never been medically unassigned. Coit has had trouble finding employment due to her disabilities but wishes work within her medical impairments/disabilities. Coit is a hard worker and has gotten excellent evaluations even though she is severely limited in mobility issues.

Coit asks that no retaliation be allowed for her notifying this court of discrimination. Coit will be elgible to participate in dog program in October 2009 and asks that she be considered with modifications that would be needed or that if CDOC does not want to pay for modifications that Coit be allowed to pay for them so she can participate in programs offered to non disabled inmates.

Wherefore Coit asks this court to Order CDOC to pay her the difference in salery that she lost from being discriminated against by not being allowed into the dog program when she was elgibible. From 2003 until February 28, 2009. Coit even had Sgt. Ortin trying to get coit into Dog Program because (2004) he stated that it would be good for Dog Program and for Coit since Coit was in a wheel chair and had many disabilities-impairments that those who received the dog would also probably have. (See stipulation of 4-4-2008 no 15) page 4,

Respectfully

*Jill Coit*

Jill Coit

4-20-09

RE. Attachments  -Final Order of Special Masters & letter to Mr. De Priest.

Dictated but not read

JC/th

available at CWCF, but Claimant asserts that since her arrival and DWCF she has not had the use of a special typewriter. Claimant requested a Tens Unit to assist in alleviating pain but it has not been provided.

10.     Claimant testified that she has difficulty hearing, particularly when there is background noise. She used hearing aids in 1995 but, since 1995, she has not been provided with hearing aids. Claimant was cleared for hearing aids in 2001 and in 2002 or 2003 she was allowed to have her own hearing aids sent to her. Claimant asserts that in 2004 she received discipline that resulted directly from her inability to hear.

11.     Claimant contends that she has difficulty with her distance vision. It is undisputed, however, that she does not fall below the 20/200 vision acuity standard in the Montez Remedial Plan.

12.     Claimant has also testified to several threats and acts of retaliation for filing grievances and pursuing her *Montez* claims.

13.     Claimant testified that she fell in the shower causing swelling and pain; and that she fell from the low toilet in her handicapped cell prior to 2003. She indicated that the falls were due to the fact that she could not grasp the hand bars firmly because of her hand and shoulder problem.

14.     Claimant testified that she has fallen due to the lack of proper shoes and shoe inserts.

15.     Claimant was unable to use the carpentry shop at DWCF because of lifting and hand use restrictions. She wanted to participate in a dog training program but was unable to do so because she could not bend down to remove the dog excrement. DWCF refused to provide her with a shovel that she might have been able to utilize to accomplish this task. There were limited jobs for handicapped inmates. Claimant testified that she did computer aided drafting and design for a while but could not sit or use her hands. Claimant did have jobs in the law library.

16.     From 1995 to 2001, Claimant wanted to work as a teacher in the CWCF GED program. She was not able to do so because she would have had to negotiate approximately 14 stairs to get to the area where the classes were held. She requested an accommodation of being allowed to go through the yard and a gate in order to get from the building where she was housed to the building where the classes were held but this request was rejected.

17.     Claimant could not take part in the hobby program because of a medical problem with her thumb that prevented her from utilizing the rotator scissors. She was also prevented from knitting because of the thumb condition.

May  1,2008

RE Denied employment in Dog Program despite being qualified to
   participate due to wheel chair and other medical conditions
   that would not stop me from position with very minor adjustments
   such as allowing 'pooper scooper-shovel'.

Dear Mr. De Priest,
    I received the 'Stipulation Regarding Status of Compliance by
The Colorado Department of Corrections With the Montez Remedial Plan'
and on page 4 it states.15. CDOC shall make all necessary modifica-
tions or changes (including architectural changes) to allow all
inmates with disabilities who are otherwise qualified to participate
in the dog programs offered by CDOC.'
    When you spoke to the dog program  supervisor,I think her
name was Ms.Larkin,she told you that she would not accept me
even though you told her I could do the program with my restrictions.
With this court manadate I am going to apply for back  or lost
wages because this is discrimation for my being in a wheel chair
and having medical conditions that would not prevent me from
being sucessful in the dog program.
    In the July 11, 2006 'Montez Order entitled Stipulation And Order
Regarding Status of Complinace by DOC with Remedial Plan' number
6 states  'If an inmate believes he or she has been discriminated
against by being placed in an ADA job that paid less than comparable
jobs because of a disability,he or she shall notify the AIC in writing.'
    This is my letter to notify the AID please attach your statment
that you spoke to the Dog Program and they refused to let me even
submit an application even though I am qualified for program.
    I would send it directly but need your affidavit or they will
not believe me that you contacted the dog program and I was not
allowed access. The Dog program pays between $60 and $120 per month
yet i have been put in positions that only pay $12 per month.
    This is a violation of my rights to hold a job I am qualified
to participate. Please let me know what AID says. I have never been
medially unassigned according to medical.
    You might want to include the fact that Ms. Fischer my former
case manager also tried to get me into the program and I was not
allowed because I was in a wheel chair. Yet at some point they let
inmate Charity Leonard into the program and she is in a wheel chair.
Do you remember Sgt. ORtin well he tried to get me into the dog
program when it first began and they would not let a wheel chair
inmate into the program at that time.
    I listed the fact that I was deneid the dog program in my Montez
hearing of October 2005 and it is documented in my Final  Order of
Special Master page 4 dated  December 15, 2005.It also states that
on page 6,' It appears to be undisputed that Claimant was qualified
to participate in the programs, benefits and services offered by CDOC.'
    My being in a wheel chair should be an asset since their clients
are sometimes wheel chair bound. My hand impariment would not stop me
from using my left hand,right hand is not good so can't use it, my
loss of vision would not stop me because dogs are bigger than print
and  that is where I am severely hampered. These conditions would not
prevent me from being in program.
    Please have them pay me from January 1, 2006 to present. If they
complain then  put in claim for 2003 also. 2004, 2005.
Sincerely,

Jill Coit    86530

*July 11, 2006*
*Stipulation agreed*

6. Without eliminating any job opportunities for inmates with disabilities, CDOC agrees to eliminate any "ADA" or "handicapped" jobs that pay less than the regular inmate wage scale. If an inmate believes he or she has been discriminated against by being placed in an ADA job that paid less than comparable jobs for non-ADA positions, or was given only a part-time job because of a disability, he or she shall notify the AIC in writing. The AIC shall notify class counsel of all such claims. The AIC shall investigate these claims individually and if the AIC determines that a inmate who was qualified for a regular paying job received less pay, or was given an "ADA" job and was paid less for this job than for other non-ADA jobs, or was given a part-time job solely because of his or her disability status, the inmate will be paid the difference between the wages of the non-ADA job or the full-time job from what he or she was actually paid, retroactively from August 27, 2003.

7. Judge Kane will make an expedited ruling regarding the following issues: 1) the criteria used by CDOC in implementing the Remedial Plan and the criteria to be used by the Special Masters in the damages claim process to determine whether an inmate is disabled, 2) whether Eighth Amendment claims may be asserted in the damages claim process, and 3) whether the *Fitzgerald* opinion applies to the implementation of the Remedial Plan or to limit damages under the damage claim process. The parties will file briefs on these matters if they have not been previously briefed. Once the Court issues its rulings, the Special Masters shall review all prior damage claim determinations (whether they have been appealed or not) and issue amended rulings on all claims that have relied on incorrect criteria or legal analysis. Thereafter, the parties shall have the right to appeal the amended orders of the Special Masters in compliance with the procedures in the damage claim process. The parties will ask the Special Masters to grant an immediate stay on all damages claims hearings, briefing and rulings until such time as the Court rules on the issues of the disability criteria, the applicability of the Eighth Amendment, and the *Fitzgerald* issue.

8. If an inmate reasonably claims that when making a claim for damages he or she was charged for the first ten pages of CDOC records, or was charged in excess of $.25 per page thereafter, and if such claim is supported by the records of the CDOC, he or she will be reimbursed for such costs. Any inmate who believes he or she is entitled to such reimbursement may write to the AIC to obtain the reimbursement. Any inmate who believes he or she have been wrongfully denied reimbursement may file an ADA grievance.

9. The defendants agree that Plaintiffs' counsel will be reimbursed for out-of-pocket costs incurred since August 2005 in preparation for the compliance hearing. Defendants shall pay the agreed upon costs within 30 days of this stipulation. If counsel for the parties cannot agree on the amount of these costs within 10 days of this stipulation, Judge Kane shall hold an expedited hearing and award costs within 30 days of the date of this agreement. This stipulation does not preclude class counsel from requesting the payment of any costs or fees not paid by the Defendants at any future fee award application.

10. The parties shall brief the issue of the copays charged to inmates and the issue of

August 27, 2003. Claimant has presented considerable testimony regarding alleged discrimination and failures to accommodate that occurred after August 27, 2003. The Special Master finds and concludes that these allegations cannot be entertained under the *Montez* Remedial Plan.

As noted in Finding of Fact number 9 above, the overwhelming majority of Claimant's allegations, testimony and exhibits relate to medical treatment, medications and medical devices that were ordered or recommended by her doctors but were not provided by defendants. With the exception of her fall discussed in Finding of Fact number 14 above, there is no evidence tying these failures to provide treatment, medications or medical devices to any inability on the part of Claimant to utilize the institution's facilities or to take part in the institution's programs and services. Without such evidence, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). As a result, with the exception of Claimant's fall allegedly resulting from her failure to have been provided with proper shoes and shoe inserts, the Special Master finds and concludes that all of her claims relating to the CDOC's failure or refusal to provide medical treatment, medications and medical devices must fail.

What remains are Claimant's damage claims premised on (a) her fall because she was not provided with proper shoes and shoe inserts; and (b) her inability to teach in the CWCF GED program because she could not negotiate the stairs to get to the classroom. The Special Master finds and concludes that there is sufficient evidence in the record to sustain Claimant's claim that the fall and her inability to teach were the result of her permanent mobility impairment; that her fall was proximately caused by defendants' failure to provide a requested accommodation in the form of proper shoe inserts; and that her inability to teach was the result of the defendants' failure to provide a requested accommodation of allowing her to take an alternative route to the classroom. No evidence was presented by defendants to establish that either of the requested accommodations was unreasonable or inappropriate. Consequently, the Special Master finds and concludes that Claimant has sustained a claim of disability discrimination under the ADA, the Rehabilitation Act and the Remedial Plan.

Claimant presented no evidence regarding any injuries sustained or medical treatment necessitated by her fall. As a result, only an award of minimal damages is permissible. Likewise, no evidence was presented by claimant as to the extent of damages resulting from her inability to teach the GED class. In light of the dearth of damages evidence, the Special Master finds and concludes that the sum of $350.00 is an appropriate amount of damages for these two violations of the ADA, the Rehabilitation Act and the Remedial Plan.

## IV. ORDER

