US DISTRICT COURT
901--19 ths street
Denver, Co 80294

JESSE MONTEZ ET AL
V
  BILL OWENS ET AL

CASE NUMBER 92 cv 870 EWN-OES

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 22 2009

GREGORY C. LANGHAM
                         CLERK

NON COMPLAINCE-FAILURE TO HOUSE MOBILITY IMPAIRED IN HOUSING THAT ACCOMODATES THEIR MEDICAL CONDITIONS/DISABILITIES BY PROVIDING HIGH TOILETS, STORAGE, AND DOORS THAT DO NOT CAUSE PAIN AND ENDANGER THEM FURTHER in Units 3,4,5 + 6.

DWCF Housing Facility

   Comes now, Jill Coit who is a member of the Montez Class action--her claim number is  03-120 under mobility imapirment " that substantially limits the major life activities of walking, working and perhaps performing manual tasks."
   Coit wishes to inform this court of Units 3, 4, 5 & 6 housing difficulties that the Orleans Report did not cover. Coit will not go so far as to say that DWCF intentionally did not show Orleans investigators the problems and impediments that mobility impaired inmates must overcome or suffer throught. In the structural design of the above mentioned units. Units 1 & 2 have accommodated mobility impaired inmates because they have high toilets for the wheel chair and mobility impaired inmates. (They lack other considerations listed below)
TOILETS                                              mobility
   Unit 3, 4, 5 & 6 handicapped cells all have low toilets which makes it difficult or next to impossible for those inmates who have knee or back problems to get off the toilets without injuring or falling. I have reported that I constantly fall when trying to get off the low toilets in these units. I have bad knees (torn menusis tear of left knee which swells and  hurts all the time when I try to walk  or get off low toilets.)
   The toilets are only _____ inches off the floor. The handicapped bars at right angles from the toilet are too high for me to use and to far from the toilet to be useful in raisng one off the toilet that is short in statute or not strong in upper body strength. I have torn rotator cuffs and it hurts me to raise my elbows above my shoulders which is required if you attempt to use the handicapped bars for the toilet.
   I do not know if this is making sense but you would probably need to see what i am talking about. I know the Orleans people did not look at this issue or there would not be low toilets in the handicapped cells of units 3,4,5 & 6. Units 1 and 2 have  three high toilets for the handicapped mobility impaired inamtes. So the need must be recognized or their would not be high toilets in those units. With my knee problems  I need a higher toilet.
   I have a walker that I use to get myself off the low toilet but it causes pain in my shoulders and knees. It seems only the mobility impaired inamtes that  have upper body or hand impairments suffer from having low toilets or those who have problems raising from low positions.

Solution; either have higher toilets or use toilet raised seats in handicapped cells for mobility impaired inmates. The raised toilet seats seems to be the most economical solution to this problem or do not house mobilty impaired inmates with upper body conditons in units 3, 4,5 & 6. or problems rising from low positions.

   Please send ORleans inspectors back in to address the issues I have raised before granting compliance for CDOC.

Units 3, 4, 5 & 6 all have black metal boxes for storage.
2. Only low storage (Black metal box sitting on floor) for personal property storage. This black metal box has a heavy lid that can cause brusing and could break a bone if hand or fingers get caught. The lid constant slams shut on you since it is sitting on floor and you are bending low to get access.

Only one inamte, Brandy Davis, has been accommodated by having a metal stand for the black storage box to sit on that raises it up high enough for wheel chair mobility impaired inmates to use. Having one inmate only accommodted does not seem to be in compliance. Under Morley Remedial Plan

I have asked for an accommodation like inmate Davis but told no despite my having back, spine, hip, hand and vision condition that prevents me from bending down to get into storage area provided for hanidcapped cells.

I have tried sitting on floor but still having black box sitting on floor is dangerous and causes me pain. The lid weights about 60 pounds. I have the old type that is heavy metal welded together. Very dangerous and heavy. see new lifting restriction #5 pounds.

It would also be helpful for me to have the raised black storage box when housed in units 1 & 2 because inmates in wheel chairs or who have bending problems can not get down low enough to see in the short storage closet / locker provided in handicapped cells.

3. Units 3,4,5 & 6 cell doors
There are no handles on the inside of the heavy metal cell door. The doors weight at least 300 pounds and must be slammed shut to close. There is only a 1-1/2 inch deep slot to use as door handle to shut the doors. (to high) You push a button to open door when on the inside of the cell, so that is up not a problem but closing the door is a big problem for those in wheel (too) chairs or the mobility impaired.

my left shoulder is burning and hurts all the time to the point that I wake up in the night with shoulder pain. I have torn rotator cuffs or tendonaidus, etc . The strenght required to close these heavy metal doors also causes back pain because there is no way to close them since your center of gravity is lower when your in a wheel chair. (Have Hand pain also)

The outside of the door handle is as high as my head so must reach up to grasp the door to open it enough to enter. Very painful for shoulder, hands and low back. Outside door handle is to high for wheel chair inmtes or at least for inmates who are not tall or very strong. I know wheel chair inmates who have as upper body iampairment and it hurts her also to open and close these heavy metal doors. Inmates in unit 1 & 2 have wooden doors that are light weight and easy to cloes open.

I already addressed the problem of entering the pods with getting caught in the automatice doors and the danger involved in the door closing on you and the injuries that could result.
Solution: Do not house mobility impaired wheel chair inmates that have conditions that cause hand or upper body strength to be impaired. It would not be many inmates since most do not have upper body impairments or disabilities that would prevent them from using their hands or shoulders without pain.

Please send Orleans investigators out to speak with me.
No retaliation please

4-19-09
Respectfully submitted
Jill Coit - D.W.C.F.
# f6530   P.O Box 392005, Denver W P 0239

Dictated but not read

available at CWCF, but Claimant asserts that since her arrival and DWCF she has not had the use of a special typewriter. Claimant requested a Tens Unit to assist in alleviating pain but it has not been provided.

10. Claimant testified that she has difficulty hearing, particularly when there is background noise. She used hearing aids in 1995 but, since 1995, she has not been provided with hearing aids. Claimant was cleared for hearing aids in 2001 and in 2002 or 2003 she was allowed to have her own hearing aids sent to her. Claimant asserts that in 2004 she received discipline that resulted directly from her inability to hear.

11. Claimant contends that she has difficulty with her distance vision. It is undisputed, however, that she does not fall below the 20/200 vision acuity standard in the Montez Remedial Plan.

12. Claimant has also testified to several threats and acts of retaliation for filing grievances and pursuing her *Montez* claims.



13. Claimant testified that she fell in the shower causing swelling and pain; and that she fell from the low toilet in her handicapped cell prior to 2003. She indicated that the falls were due to the fact that she could not grasp the hand bars firmly because of her hand and shoulder problem.

14. Claimant testified that she has fallen due to the lack of proper shoes and shoe inserts.

15. Claimant was unable to use the carpentry shop at DWCF because of lifting and hand use restrictions. She wanted to participate in a dog training program but was unable to do so because she could not bend down to remove the dog excrement. DWCF refused to provide her with a shovel that she might have been able to utilize to accomplish this task. There were limited jobs for handicapped inmates. Claimant testified that she did computer aided drafting and design for a while but could not sit or use her hands. Claimant did have jobs in the law library.

16. From 1995 to 2001, Claimant wanted to work as a teacher in the CWCF GED program. She was not able to do so because she would have had to negotiate approximately 14 stairs to get to the area where the classes were held. She requested an accommodation of being allowed to go through the yard and a gate in order to get from the building where she was housed to the building where the classes were held but this request was rejected.

17. Claimant could not take part in the hobby program because of a medical problem with her thumb that prevented her from utilizing the rotator scissors. She was also prevented from knitting because of the thumb condition.

August 27, 2003. Claimant has presented considerable testimony regarding alleged discrimination and failures to accommodate that occurred after August 27, 2003. The Special Master finds and concludes that these allegations cannot be entertained under the *Montez* Remedial Plan.

As noted in Finding of Fact number 9 above, the overwhelming majority of Claimant's allegations, testimony and exhibits relate to medical treatment, medications and medical devices that were ordered or recommended by her doctors but were not provided by defendants. With the exception of her fall discussed in Finding of Fact number 14 above, there is no evidence tying these failures to provide treatment, medications or medical devices to any inability on the part of Claimant to utilize the institution's facilities or to take part in the institution's programs and services. Without such evidence, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). As a result, with the exception of Claimant's fall allegedly resulting from her failure to have been provided with proper shoes and shoe inserts, the Special Master finds and concludes that all of her claims relating to the CDOC's failure or refusal to provide medical treatment, medications and medical devices must fail.

What remains are Claimant's damage claims premised on (a) her fall because she was not provided with proper shoes and shoe inserts; and (b) her inability to teach in the CWCF GED program because she could not negotiate the stairs to get to the classroom. The Special Master finds and concludes that there is sufficient evidence in the record to sustain Claimant's claim that the fall and her inability to teach were the result of her permanent mobility impairment; that her fall was proximately caused by defendants' failure to provide a requested accommodation in the form of proper shoe inserts; and that her inability to teach was the result of the defendants' failure to provide a requested accommodation of allowing her to take an alternative route to the classroom. No evidence was presented by defendants to establish that either of the requested accommodations was unreasonable or inappropriate. Consequently, the Special Master finds and concludes that Claimant has sustained a claim of disability discrimination under the ADA, the Rehabilitation Act and the Remedial Plan.

Claimant presented no evidence regarding any injuries sustained or medical treatment necessitated by her fall. As a result, only an award of minimal damages is permissible. Likewise, no evidence was presented by claimant as to the extent of damages resulting from her inability to teach the GED class. In light of the dearth of damages evidence, the Special Master finds and concludes that the sum of $350.00 is an appropriate amount of damages for these two violations of the ADA, the Rehabilitation Act and the Remedial Plan.

### IV. ORDER

