In The United States District Court of Colorado

Civil 92-N-870     C-002

Jesse Montez

Class Member Stephen Moore

vs

Bill Owens.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 24 2009

GREGORY C. LANGHAM
CLERK

---

Judicial Review and Finding of Vision Disability. Systemic Violation of A.D.A. To 'Does not Intend to Comply' Requests are 'Futile' of 42 USC 12188 'Bad Faith'.

---

The Court has Jurisdiction to Review Disability + Duration as Questions of Law. Doebele v Sprint 342 F 3d 1117 10th 2004

Class Member Moore Request the Court to Review The Following Facts and Law, to Denial of Disability By the Defendant In Systemic Violation of Plain Language of A.D.A. Verizon 519 F Supp 2d 304

1. By 2-12-08 Finding of 'Vision Impairment' + 'A.D.A Alert' on Grievances, Moore Is "Regarded as Having a Disability and Entitled to Accomodation" 42 USC 12102(2)(C) 12111(8) Defendant Regulation 750-04-III(B)(3). See Exibit C

2. By Fact + Law, Moore on 7-31-02 Optometry Exam was Found 20-20-10 to Left Eye Orbital Injury Is 10% Impairment, By Physicians Desk Reference P.D.R For Opthamology Pg. 68 And Pg 398 'General Opthamology' 10% Impairment

(1)

can be added for cosmetic deformities of the Eye or orbits' See Exibit A, B. By Law 5% Impaired Disabled + Qualified Harding v Winn Dixie 907 F.Supp. 386

(3) Moore has 1 to 2 hours Reading vision daily and less than 6 hours total vision daily, with glasses. By pain, injury and base 20 $\frac{4.50}{4.25}$ vision. By 'Disability' in Blacks Law Dictionary "Pain by itself or in conjunction with other injuries may be the basis for disabilities per Social Security"

(4) Total maximum daily vision 6 hrs of 16 waking hours is 6/16 is 60% disabled to distance. 2 hours reading of 16 total daily is 84% disable

Reading 84% Disable     Laid up 10 hrs
Distance 60% Disabled   Daily by pain.

(5) By 'Vision Impairment' Regarded as Disabled Verizon 519 F.Supp.2d 304  ~~Winn~~ Harding 907 F.Supp. 386

10% per Left Eye Injury
~~84%~~ 84% 2/16 Daily Reading
60% 6/16 Daily Distance

Regarded as 42 USC 12102 (2)(C), 12111(8.)

(6) Moores 1 to 4 hours daily vision is duration limitation of pain Clearly Established Law "Duration" to

2.

"SEVERELY LIMITED" 42 USC 12102(2)(A)(2)

"(1) NATURE AND SEVERITY  20/4.50/4.75 + INJURY

(2) DURATION                 1 TO 4 HOURS DAILY

(3) PERMANANT OR LONG TERM IMPACT" (FROM 2000)

See Doebele v Sprint 342 F.3d.1117, 10Th 2004,
Sutton 130 F.3d. A900. "DURATION" Pg 27 General
Opthamology Text. Defendant Regulation AR. 750-09
III R.  "SIGNIFICANTLY RESTRICTED MANNER OR
DURATION" Seven v Henderson 381 F Supp 2d. 205

(7) The Defendant after failing on vision standard
of 20/200 Legal Blind now use 20/60 35% Disabled
See chart Exibit B. To the exclusion of all other
criteria. Injury 65%,  1 to 4 hours daily vision
Duration'  60% Distance vision,  54% Disabled per
Reading

(8) Moore on 3-24-1990 was found on optometry Exam
20 5/70, 20/60 10 years ago 20-50 12-08 Exam.
20/60.  35% Disabled, Exibit B. yet 25% Disabled
Excluded by arbitrary single standard of defendants

(9) The Defendants are systematically claiming a
"Medical" Exception to A.D.A. Guidelines.

3.

A.R 750-04 IV A 6 "Shall be provided accommodation determined by C.M.O - OR A.I.C" Excluding Interactive Process' 42 USC. 12112 B 5(A) "Denial of Interactive process is not good faith effort to assist" Kirkingburg 143 F3d. 41232.

"Both parties responsible for determining reasonable accommodation, party that obstructs or delays the interactive process is not acting in good faith" Taylor v Phoenix 184 F3d. 296.

A.A 750-04 IV B 4. Accomodations do not include clinical care' B-6 "Managed clinically" to Systemic Exclusion of Medical' Corrective Devices to Medical conditions of Vision, Hearing, Speech or Mobility.

B-6 "Not severe enough" managed clinically -- appropriate treatment' moore denied reading glasses for more than 10 years, Vision LT04 hours daily Bifocals severely aggravate injury

1-08 Memo By Holst A.I.C. " The A.D.A has nothing to do with medical care"

" ADA process will not supercede the Judgement of clinical services"

4.

Grievance # A CS 0809 09-0519 "The Findings and The Oppinions of A.O.C. Medical and Mental Health Staff and The Definitions of The Disability Requirements in The Remedial Plan are not Debateable"

10.) By Law A.D.A Applys to Medical By Clearly Established Plain Law 42 USC 12112 D, 12181 (7)(F) "Duty to provide medical care that cured or mitigated Disability" McDaniel v Allied 896 F.Supp. 1482. A.DA Applys to Medical Proccedure Mayberry v Van Valtier 843 F.Supp. 1160 - Moore Denied Disability Accomodation of Reading glasses + Distance glasses. To Debilitation.

11) The Defendants would make a Medical Exception to A.D.A Coverage. Then Systematically Deny A.D.A By Medical Useing Standards of 42 usc 1983 That Allow Deference to Prison Medical Decisions

Medical care to Moore Has Included Stating 20-400 Vision to Go Without Glasses Moore v Marr 149 F3d 1191. 10Th, 1998. See Bench v Peck 20-400 Without Glasses Functions in legally Blind Range. 825 F. Supp. 1411. 93.

They Held Moore 21 months no Glasses Moore v Owens 00 ES 2320. Dismissed as Moore wasn't 'Legally Blind' With Glasses. Not Provided 21 months

5.

(12) By clearly established law merely submitting medical diagnosis is insufficent, Toyota 122 SCT. 681, Evidence of limitation, nature and severity, duration and permanant impact are requsite. Robertson v Las Animas 500 F 3d. 1185 10th.

Defendants claim single standard of 20-60 is sufficent to deny disability, when it is the functional result of vision, that created disability, Do moores constant pain, 1 to 4 hours daily with glasses. See Exibit. B 20/60 is 35% disability. Grievance 0+0519 Exibit C, D

(13) The Defendants have systematically excluded duration limitation of moores vision, disabilitation of corrective care or bifocals. Denied disability to person with less than 6 hrs daily vision then claim "medical" as excuse and pretext to A.DA. violation. See

(14) After 16 years of litigation, prisoners have to fight tooth + nail for even the slightest of disability protection.

6

By Law "Discrimination is not making Reasonable Accomodation" 42 USC 12112 B 5 A, 12182(2) ii

(15) Defendants Systematically Deny Disability, on Finding "Vision Impaired" Regarded as Disabled 42 USC. 12111(8) Verizon 519 F. Supp 2d 304, Denied Accomodation of Reading Glasses By Administrative methods, over Restrictive Policy, A.R. 700-05 IV B 6 "2 Pair glasses will not be provided"

Clearly violating "Interactive Process" 42 USC. 12112 B 5 A, Deny "Integrated Setting" 42 USC 12182 IV B, Exibit E, per Policy, Not giving 2 Pair of Glasses, To The Point of Destroying Medical Record To Prevent Record of 6 hrs And less Vision And Prescribed Reading + Distant Glasses. Exibit E

(16) Defendant Falsely Claim "Vision Corrected" to willingness to Falsify And Exclude, Evidence That Refutes, A Inadequate Corrective Device.

(17) By Law - Limitation is Personal Grillasci 233 Fsupp. 2d. 258. Medical Diagnosis is Insufficent By Varying Degrees of Symtoms" Barnes 238.

7.

F. Supp 2d 653 "NOTHING REQUIRES MEDICAL TESTIMONY" CALWELL 158 F 3d. 635.

"ILLNESS ITSELF NOT IMPAIRMENT ONLY SYMPTOMS AND RAMIFICATIONS" RODRIGUEZ 967 F Supp. 653.

(18) SYSTEMIC EVASION OF ADA BY
<u>DENIAL OF DISABILITY AND ACCOMODATION</u>
TO 20-4.50 VISION WITH INJURY, 1 TO 4 HRS DAILY VISION

— Finding 'VISION IMPAIRED' "REGARDED AS IMPAIRED ENTITLED TO ACCOMODATION HARDING 907 F. Supp. 356. WITH 5% IMPAIRMENT PER DISABLED, MORE BY INJURY 60% IMPAIRED. VERIZON 519 F Supp. 2d. 304.

— By Excluding Those less than 20/60 35% IMPAIRED FROM ADA COVERAGE

— DENIAL OF DURATION 1 TO 4 HOURS VISION
 MAXIMUM 6 HRS DAILY VISION OF 16 WAKING HOURS 60% IMPAIRMENT

 MAXIMUM 2 HR READING OF 16 WAKING HOURS
 84% DISABLED

— MAKING MEDICAL EXCEPTION TO ADA, THAT MEDICAL DENIAL OF DISABILITY PRECLUDES ADA PROTECTION "MEDICAL DIAGNOSES INSUFFICIENT ALONE" TOYOTA 122 F S.CT. 681. ROBERTSON 500 F 3d. 1185.

8

_____ Systemic Denive of Interactive and Integrated Settings Taylor 184 F3d 296 Kirkingburg 143 F3d A 1232.

Systemic Barriers, Policy, Administrative means of Discrimination.

The Defendant have gone to extensive levths to avoid ADA compliance. To create exceptions to A.D.A. law that is plain language of law. " Verizon 519 F.Supp2d 304 That includes, Rote systemic denive of all A.D.A Grievances. Arbitrary standards of disability law. 20-200, legal blind, now 20/60 35% impairment, to exclude wide range of 'substantial limitation'.

Farther systemic A.D.A violation is done by defendants reliance on Montez agreement + stipulations, or their own perverse interpretation of, to near total exclusion of A-DA. Law 42 USC 12101 to 12188. Exemplary 20-200 legal blind to 'placement' thwarted to standards of vision disability. Mucci Montez V A(3)

Sworn True and Correct 30 Day of Mag mag 2009

By /s/ Stephen Meade

Concurrent copy
To
Colo Att. Ceton General
1525 Sherman
Dn Colo
80203

Class Counsel
1670 York st
Dn Colo
9. d?? 80203

Stephen Meere 57351
Box 0777 D-6-72
Canon City Colo
81215

⑨

*Example 2:*
In the patient described above, the eye with the greater motility loss has a 25% motility impairment.

*Right Eye*
Impairment of central vision and visual field . . . 70%
Loss of ocular motility . . . . . . . . . . . . . . . . . . . 25%
70% *combined* with 25%
 (Combined Values Chart) . . . . . . . . . . . . . 78%

The examiner may *combine* as much as a 10% impairment for an ocular abnormality or dysfunction that he or she believes is not adequately reflected in the visual acuity, visual fields, or diplopia testing (Combined Values Chart). In the above example, an impairment of 78% combined with a 10% impairment would result in a visual impairment of the right eye of 80%.

*Step 4:* After determining the level of impairment of each eye, use **Table 7** to determine visual system impairment. In the above example, consider- ing impairments of 80% and 63%, impairment of the visual system is seen from **Table 7** to be 67%.

*Step 5:* Consult **Table 6** to ascertain the impairment of the whole person that is contributed by impairment of the visual system. A 67% impairment of the patient's visual system, as shown in the example above, is equivalent to a 63% impairment of the whole person (**Table 6**).

### Procedure with Binocular Esterman Field Test

If the percentage loss of visual fields is determined for both eyes together by means of the Esterman binocular grid, consult **Table 7** to ascertain the impairment of the visual system due to loss of central vision.

*Example 3:*

*Right Eye*
Loss of central vision for both near and
 distance is . . . . . . . . . . . . . . . . . . . . . . . 56%

*Left Eye*
Loss of central vision for both near and
 distance is . . . . . . . . . . . . . . . . . . . . . . . 46%
From **Table 7** it is seen that impairment due to
 the loss of central vision of both eyes is . . 49%

Using the Combined Values Chart, *combine* the impairment due to loss of central vision with the impairment due to binocular visual field loss.

Binocular visual field testing is not recommended when loss of ocular motility is present.

*With the patient in example 3:*
Impairment due to loss of central vision of
 both eyes is . . . . . . . . . . . . . . . . . . . . . . 49%
Impairment due to binocular visual field loss
 is determined to be . . . . . . . . . . . . . . . . . 20%
*Combine* the central vision and visual field losses
 (Combined Values Chart); the impairment
 of the visual system is . . . . . . . . . . . . . . . 59%

Consult **Table 6** to ascertain the impairment of the whole person that is contributed by the visual system. In example 3, the 59% visual system impairment is equivalent to a 56% whole-person impairment (**Table 6**).

### OTHER CONDITIONS

Up to an additional 10% impairment may be *combined* with the whole-person impairment related to the visual system for such conditions as permanent deformities of the orbit, scars, and other cosmetic deformities that do not otherwise alter ocular function. *Combine* the estimates by means of the Combined Values Chart.

*Example:*
Impairment due to loss of central vision
 of both eyes . . . . . . . . . . . . . . . . . . . . . . 49%
Impairment due to binocular visual field loss . . . 20%
Impairment of visual system
 (Combined Values Chart) . . . . . . . . . . . . 59%
Impairment of whole person related to visual
 system (**Table 6**) . . . . . . . . . . . . . . . . . . 56%
10% impairment for orbital scar and
 deformity . . . . . . . . . . . . . . . . . . . . . . . . 10%
Whole-person impairment
 (Combined Values Chart) . . . . . . . . . . . . 60%

**REFERENCES**
1. Sloan LL. New test charts for the measurement of visual acuity. *Am J Ophthalmol.* 1959;48:808-813.
2. Report of Working Group 39, Committee on Vision, National Academy of Sciences. Recommended standard procedures for the clinical measurement and specification of visual acuity. *Adv Ophthalmol.* 1980;41:103-143.
3. Esterman B. Grid for scoring visual field, II perimeter. *Arch Ophthalmol.* 1968;79:400-406.
4. Keeney AH, Duerson HL Jr. Collated near-vision test card. *Am J Ophthalmol.* 1958;46:592-594.
5. Keeney AH. *Ocular Examination: Basis and Technique.* 2nd ed. St Louis, Mo: CV Mosby Co; 1976.
6. Newell FW. *Ophthalmology: Principles and Concepts.* 7th ed. St Louis, Mo: CV Mosby Co; 1992.
7. Esterman B. Functional scoring of the binocular visual field. *Ophthalmology.* 1982;89:1226-1234.
8. Esterman B, Blance E, Wallach M, Bonelli A. Computerized scoring of the functional field: preliminary report. *Doc Ophthalmol Proc Ser.* 1985;42:333-339.
9. Anderson DR. *Perimetry: With and Without Automation.* 2nd ed. St Louis, Mo: CV Mosby Co; 1987.
10. American Academy of Ophthalmology. Contrast sensitivity and glare testing in the evaluation of anterior segment disease. *Ophthalmology.* 1990;97:1233-1237.
11. Frisen L. *Clinical Tests of Vision.* New York, NY: Raven Press; 1990.



# REQUEST FOR ACCOMMODATION

## I. OFFENDER INFORMATION: *(Please print)*

| Offender Name: | STePHen Moore | DOC #: | 57381 |
|---|---|---|---|
| Current Facility: | CSP   B-4-12 | Date: | 5-23-07 |

## II. CLAIMED DISABILITY: *(Check all that apply)*

Mobility _____       Hearing _____       Other _____
Vision __X__       Diabetes _____

## III. ACCOMMODATION REQUESTED:

In accordance with the provisions of the Americans with Disabilities/Rehabilitation Acts (ADA), no qualified individual with a disability shall, on the basis of disability, be excluded from participation or be denied the benefits of the services, activities, or programs of the Department of Corrections or be subjected to discrimination. You may use this form to request specific reasonable modifications or accommodations which, if granted, would enable you to participate in a service, activity, or program offered by the DOC in which you are otherwise qualified or eligible to participate. **Submit this completed form and ADA Medical Release to the ADA Inmate Coordinator (AIC) at the address at the bottom of this form.**

*Answer all questions below. Be specific and brief. You may attach one additional page for explanation, if necessary.*

1. Describe your disability: Vision, 20-450 vision + left eye injury, vision is now 6 hours a day. movies, programs, reading papers, use of library impaired

2. What information do you have to verify your disability? 99 +2001 specialist visits cumulative medical record to vision pain, Rx Equiv for vision pain, cumulative vision grievances + medical records 20-200 legally blind 20-60 Fails Drivers

3. What major life activity is limited by your disability (e.g., moving, eating, seeing, hearing, License Test breathing, dressing)? Seeing.

4. Have you been denied the ability to participate in a DOC job, program, or service due to a disability? Yes/ No. If yes, name the job, program, or service and provide a brief description of how you were denied: Limited to use of Library,

5. Identify the modification or accommodation you need in order to participate in that job, program, or service or to perform major life activities: Request 1 pair of glasses for reading 1 pair for distance prescribed until 1996 entry to CSP

_____Stephen Moore_____ 57381
Signature of Offender

*Return completed forms to: AIC, 2862 S. Circle Drive, Colorado Springs, CO 80906*
**Please note: DOC AR 300-38 IV-B-8-h. allows you to mail materials to the AIC office via inter-facility mail, free of cost.**

A

Revised 5/06

# Appendix I: Visual Standards

*Eleanor E. Faye, MD, FACS*

Standards for evaluating visual impairment have been provided for many years by the American Medical Association (AMA) in its *Guides to the Evaluation of Permanent Impairment*, also reproduced in the *Physicians' Desk Reference for Ophthalmology*. Standards are also set forth in the *International Classification of Diseases*, in sections relating to blindness and low vision.

## ASSESSMENT OF VISUAL IMPAIRMENT

Three equally important criteria are used to assess visual impairment: visual acuity, visual field, and ocular motility. The percentage impairments of the three criteria are summed to produce an overall assessment of impairment of the visual system. This can then be converted to a percentage of whole-person impairment, to which 10% impairment can be added for cosmetic deformities of the eyes or orbits.

### Visual Acuity

In line with improvements in test optotype design, the most acceptable charts for testing visual acuity for distance, such as the ETDRS chart (Figure 22–1), utilize the ten equally difficult block letters (D, K, R, H, V, C, N, Z, S, and O) developed by Louise L. Sloan. Also acceptable are Snellen test charts with block (sans serif) letters or numbers, illiterate E charts, or Landolt ring charts. Acceptable near vision charts have print similar to the Sloan optotypes, Revised Jaeger Standard print, or American point-type notation. Test distance is 35 cm (14 inches). Both distance and near acuity should be tested with best spectacle correction, or with contact lenses if the subject wishes.

The AMA Standards assign to acuities a percentage loss (Table 1). The percentage losses for distance and near vision are averaged to determine the overall loss of visual acuity. Allowance is also made for monocular pseudophakia or aphakia.

### Visual Field

The traditional standard method of assessing visual field impairment uses kinetic perimetry, with the III4e stimulus of the Goldmann perimeter, to determine the full extent of the visual field of each eye. For each of eight principal meridians, the amount in degrees by which the visual field is reduced compared with a standard normal field is then calculated and an overall percentage loss is derived for each eye. The cumulative total of the maximum allowed extent of the standard normal visual field along the eight principal meridians is 500 degrees (Figure 1). Thus, the percentage visual field loss equals the total difference between the test and normal fields divided by 5. If the boundary of the visual field coincides with a principal meridian, the mean of the values of the ends of the boundary along the meridian is used. Furthermore, the extent of any scotoma lying across a meridian is deducted. Owing to the greater functional importance of inferior compared with superior field loss, the percentage field loss is further increased by 5% for inferior quadrantanopic and 10% for inferior hemianopic loss.

**Table 1.** AMA method of estimation of percentage loss of visual acuity.

| Distance Visual Acuity | Percentage Loss | Revised Jaeger Near Visual Acuity |
|---|---|---|
| 20/15, 20/20 | 0 | 1, 2 |
| 20/25 | 5 | 3 |
|  | 7 | 4 |
| 20/30 | 10 | 5 |
| 20/40 | 15 |  |
| 20/50 | 25 |  |
| 20/60 | 35 |  |
| 20/80 | 45 |  |
| 20/100 | 50 | 6 |
|  | 55 | 7 |
| 20/125 | 60 | 8 |
| 20/150 | 70 |  |
| 20/200 | 80 | 9 |
| 20/300 | 85 | 10 |
| 20/400 | 90 | 12 |

398

DC Form 850-04A (12/01/08)

S3/13 KM
R/H
# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

**OFFENDER MUST COMPLETE:** Is this grievance related to your disability/diabetes or other ADA matter? Yes ☐ No ☐   No Mark

**CASE MANAGER MUST COMPLETE:** Does the offender have an ADA alert? Yes ☑ No ☐
Is the subject related to the offender's disability/diabetic condition or other ADA matter? Yes ☑ No ☐
Date received by case manager: 2/9/09   Case Manager: [signature]

Grievance Number D-CS 0809-0519   STEP (Circle One) 1 (2) 3   #2

| NAME STEPHEN MOORE | DOC NO. 57381 | FACILITY/UNIT/POD CSP DC-12 |

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
GRV ON/AFTER 2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;  REQUESTS This used over, prior to
11-21-08 Receipt 3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;  Response This Specific to error
OF ADA Segregat. 4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Meaningful Remedy: DENIAL OF DISABILITY STATUS. PLAIN ERROR IS REFUSAL TO DISREGARD OF SIGNIFICANT RESTRICTS MANNER OR DURATION 750-04 II K. MOORES DAILY VISION WITH CORRECTION HAS NEVER BEEN MORE THAN 6 hours with glasses 20-60 year plus TOTAL Daily, NOW MORE HAS 1 TO 2 hours READING Daily. DURATION RESTRICTION BY LAW 42 USC. 12102(2)(A). PLAIN ERROR IS MOORES VISION 20-4.75 7-07 EXAM 5.00 20-4.75 NOT 20-200 Excludes INJURY CONTROLLING VISION AND 21 TO 4 hours TOTAL Daily VISION WITH GLASSES. DOC  GOS FROM LEGAL BLINDNESS TO 20-60 (DRIVERS LICENSE STANDARD) YET TYPICALLY Excludes 20-4.75 VISION INJURY + DURATION OF 1 TO 6 hrs. DAILY. DISABILITY BY NATURE, SEVERITY, DURATION + IMPACT METIGAR 958 F.SUPP 266 DISABILITY IS TO AFFECTS OF CAUSATION, NOT 20-60 LEGALLY BLIND, BUT DURATION + SEVEREBILITY RIVER 944 F.SUPP.III CITING DURATION, 42 USC 12102 2 A-(2)= DURATION 29 CFR 1639.2 J(1); DOEBELE 342 F 3d.1117 10Th. SINGLE REFERENCE CRITERIA AS 20/60 IGNORE WIDE RANGE OF DISABILITY CAUSATION, TO NARROW RANGE. ALSO SHOULD BE JUDGED BY YOUR REGULATIONS WITH OR WITHOUT CORRECTION 20-4.75 IS DISABLED 750-04 I   42 USC 12118 (2)    Find Disability

| TO BE COMPLETED BY OFFENDER: |
| DATE: 2-8-09  OFFENDER SIGNATURE  Stephen Moore |
| TO BE COMPLETED BY GRIEVANCE COORDINATOR: |
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: Disability |
| DATE: FEB 18 2009  SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID #  Charmaine Ediger  Charmaine Ediger 8095 |
| Date ADA grievance sent to AIC: |

RESPONSE

## SEE ATTACHED RESPONSE

| TO BE COMPLETED BY RESPONDER |
| DATE GRIEVANCE REC'D BY RESPONDER: 2/18/09 | RESPONDER-DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE/PRINT NAME & ID # Anna Cooper #1550  Anna Cooper | RESPONSE DATE: 3/9/09 |
| TO BE COMPLETED BY OFFENDER |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. RECEIVED
If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual. |
| DATE 3-19-09 | OFFENDER SIGNATURE/PRINT NAME & DOC # Stephen Moore |

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)  FEB 18 2009   3/10 A.Cooper
Attachment "A"

Office of Correctional
Legal Services

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:      719.226.4249

Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

| | |
|---|---|
| Response to: | Step 2 ADA Grievance |
| From: | Gary Golder, Director of Prisons |
| Through: | Anna Cooper, Designee |
| Received Grievance: | 2/16/2009 |
| Sent Response: | 3/9/2009 |
| Offender Name: | MOORE, Stephen |
| DOC No: | #57381 |
| Facility: | CSP |
| Case No. | D-CS08/09-0519 |

Offender Moore:

I received your ADA Step 2 grievance stating that your vision is far from corrected. The remedy you requested was that you be found to have a vision disability.

In review of this matter I find that you have been screened and the Chief Medical Officer determined you have a **VISION IMPAIRMENT** that is correctable by the use of **prescription corrective lenses.** Following a disability screening it has been determined that you do not have a disability pursuant to the Americans With Disabilities/Rehabilitation Acts (ADA), therefore, you are not entitled to accommodations.

It appears that the vision screening, conducted by competent medical staff, was appropriate. You do not meet the criteria for a qualifying vision disability and are not entitled to ADA accommodations. ADA Accommodations involve access to programs, benefits and services, not to specifics of corrective lenses. The findings and the opinion of DOC Medical and Mental Health staff, and the definitions of the disability requirements in the Remedial Plan, are not debatable.

In Accordance with AR 850-04 Grievance Procedure, which states, "Grievances which are **duplicative or repetitive** of the offender's prior grievances shall be denied." And "the grievance officer may deny the grievance on procedural grounds without addressing the substantive issues, if the grievance is incomplete, inconsistent with a former step, incomprehensible, illegible, requests relief that is not available, **fails to request relief**, or in any other way fails to comply with the provisions of this regulation. It is noted that you have grieved the subject of your disability determination in previous grievances,

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number D-C508/09-0519   STEP (Circle One) 1 2 3   ADA? Yes ☒ No ☐

NAME: STEPHEN MOORE   DOC NO. 57381   FACILITY CSP D-6-12

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

**Subject of Grievance and Requested Remedy:** Reverse denial of disability status to vision. Staff admits Moore is vision impaired, yet denys disability + all A.D.A. protection. By ADA law, Montez agreement + stipulation, disability shall be judged with or without accomodation glasses. Moore's vision is 20-450, with left eye injury he has 2 to 6 hours vision daily with correction, has cronic pain + ADA by pretext + excuses, medical pretext to deny systemically ADA protection. Recent revisions aim to exclude loop holes to arbitrary denial by debates of "correcteds" this continues futile attempt to gain simple effective accomodation. Moore with or without glasses is disabled. Law states by duration 2 to 6 hours vision, can't be able to perform job, this is not total injury. Disabled. Remedy find 2 to 6 hours vision daily 20-450 vision + injury is disabled stop false denial.

DATE: 11-25-08   OFFENDER SIGNATURE: Stephen Moore

DATE RECEIVED: 12/4/08   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

Adrienne Jacobsen 14299

**RESPONSE**

SEE ATTACHED RESPONSE
Cathie Holst, Manager
Office of Correctional Legal Services
AIC-ADA Inmate Coordinator
#1722

Cathie Holst
1-20-09

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

| DATE: 12/23/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # Adrienne Jacobsen 14299 |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: DISABILITY | |
| DATE: 11/24/08 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # CAMES 4357 |
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | |
| DATE: 2-5-09 | OFFENDER SIGNATURE/PRINT NAME & DOC # Stephen Moore 57381 |

RECEIVED DEC 0 4 2008
RECEIVED NOV 2 8 2008

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

Office of Correctional Legal Services

2 cc ofndr 12/2/08 CE

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:  719.226.4245
Fax:      719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

**Response to Step 1 ADA Grievance**
From: Adrienne Jacobson, Legal Assistant, Designee
           Office of the AIC (ADA Inmate Coordinator)
Received Grievance: December 4, 2008
Sent Response: January _27_, 2009
Offender Name: MOORE, STEPHEN
DOC No: 57381
Facility: CSP
Grievance No: D-CS0809-0519

---

**DISABILITY STATUS:** Per screening dated 2/12/2008 and Accommodation Resolution dated 10/30/08 you were determined **TO HAVE** a qualifying vision *impairment*. Per screening dated 6/23/2008 and Accommodation Resolution dated 10/30/08 you were determined **NOT TO HAVE** a qualifying mental health disability.

---

**In the grievance referenced above, you allege the following:**
1. That you disagree with the findings made by the provider and CMO regarding your vision issues.

**Requested Relief/Remedy:**
1a. To have your disability determination revised to vision disabled.

**Following a thorough investigation into your allegations, I offer the following evidence that was considered in reaching a decision:**
1. You received an eye exam on 1/29/2008. You were found to have 20/200 vision uncorrected and 20/50 vision with your bi-focals. It was also noted that with your bi-focals you were able to read a document printed in 11 point font without difficulty. *For 1 to 2 hours Duration Limitation*
2. Your previous ADA screening was conducted using, now outdated, criteria. If you were to be re-screened for a vision disability today, you would be found not to have a vision disability. The vision impairment category has been eliminated and the threshold for vision disability requires an offender's corrected vision to be *worse* than 20/60 in order to qualify. You do not qualify for a vision disability.

**CONCLUSION:** *Single Standard Criteria, Excludes Wide Range of Vision Disabilitie, Causation - Vision 20.4.75 By 1-07 Exam*
This grievance is DENIED based on the information above.
Be advised that you have been adequately informed in this grievance response as to the role of the Office of the AIC in responding to ADA grievances. You are required to read and be informed of the information regarding the grievance procedure and what issues you may or may not raise in an ADA grievance, refer to AR 850-14 and AR 750-04. Both are available to you in the general library. If you are in segregation, you may request them on loan from the law library. If you have questions, you may contact your case manager for further information or clarification. In the future, you will be expected to mark your grievances appropriately and will not be granted the privilege of having the time tolled so that you have the opportunity to file them with the appropriate party.

**GRIEVANCE DENIED.**

P

DC Form 850-04A (07/01/07)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number: CCF 0708-62   STEP (Circle One) 1 ②  3   ADA?  Yes ☐  No ☐

NAME: Stephen Moore   DOC NO. Stephen Moore   FACILITY: CCF CI-11 C-1-

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

SEE STEP 1

Subject of Grievance and Requested Remedy: DENIAL OF PRESCRIBED MEDICAL CARE, ALTERATION OF PRESCRIBED CARE AND FALSIFICATION OF RECORDS BY NURSES TAYLOR + EDWARDS, TO VIOLATION OF POLICY. ON 1-29-08 OPTOMETRY EXAM DR. KEITH PRESCRIBED 2 PR OF GLASSES PR Severe problem with bifocal use PAIN 1997 TILL PRESENT, DEBILITATION OF 2-6 hours vision a day, Inability to do meaningful legal WORK with bifocals + severely exacerbates injury. Nurses EDWARDS + TAYLOR then altered THE PRESCRIPTION TO BIFOCALS + DESTROYED DR KEITHS Ambulatory Record. Moore Has DR PROVIDER AMBULATORY. DR KEITH DID EXTENSIVE WRITING, Moore personally observed him WRITE 2 Prescriptions on forms. Nurses EDWARD + TAYLOR ADMITTED + STATED TO Moore THAT THEY ORDERED BIFOCALS. THIS VIOLATES STANDARD OF CARE Nurses RX· Medical, Altered prescribed care + Altered Ambulatory. This is "Dogged persistence in course of treatment known to be INEFFECTIVE" Greeno 414 F3d 645. By Destruction of records to cover up, Denys PROPER MEDICAL Records keeping, FALSIFYING + ALTERING OR OMMISSION of med. Records ONLY HEALTH CARE Professionals make determinations AR 700-02 IV 12C Decisions not subject to ALTERATION + SHALL BE POLICY TO IMPLEMENT ALL MED. ORDERS -- BY CONTRACT PROVIDER AR 700-02 IV F-1 RECORD ALTERATION FALSIFICATION VIOLATES CRS 12-36-117(1)-CC McKROSKEY, 940 P2d 1044 DENYING PREVENTIVE, MAINTENANCE CARE, CRS 12-38-111.6 Nurses knowingly FALSIFIED Record By Ommitting Kieth AMBULATORY + RX VIOLATING NURSES CODE CRS 12-38 117-H To FALSIFYING RECORDS. THIS DENY moore Record OF EFFECTIVE CARE, PAIN, DEBILITATION, + Deny Different Elective Treatment. Remedy Allow RX, CARE, RESTORE ORIGINAL AMBULATORY, STOP NURSES Altered Records, Allow RX 2 PR Glasses By Policy

DATE: 2-22-08   OFFENDER SIGNATURE
DATE RECEIVED:
RESPONSE Med - Erickson   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

Mr. Moore: You did have another eye exam on 1/29/08. The optometrist ordered you two pairs of glasses in error. The optometrist ordered one pair for reading and one pair for distance. As you are well aware, offenders are not, per policy, given two pairs of glasses. Your glasses were returned and bifocals will be sent. When the glasses are received in Medical, they will be brought to you. Grievance partially resolved.

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: 3/6/08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # 3453 Lynn Erickson   Medical
RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:
DATE: 2-25-08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # 3770
RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.
DATE: 3-13-08   OFFENDER SIGNATURE/PRINT NAME & DOC # Stephen Moore 57351

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

RECEIVED FEB 2 8 2008

E

+H
1-28-08

DC Form 850-04A (07/01/07)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

Grievance Number: CCF-01/08-102   STEP (Circle One) 1  2  3   ADA? Yes ☐ No ☒
                                                                  MEDICAL + ADA

NAME: Stephen Moore   DOC NO. 57381   FACILITY: CCF C-1-11

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Remedy: INCOMPETENT, DEBILITATING MEDICAL OPTOMETRY CARE TO MALPRACTICE, on 1-30-08 Moore saw optometrist Keith. Moore stated severe problems with bifocal use, pain + debilitating care, with documentation. ID 1996 to present. Vision 20-2.75 1996 Rx 2.0-5.00 2007. Normal Range vision 1994, 2-6 hours painful vision 2007, pain killers per chronic debilitating injury pain 97 to 2007. Dr prescribed 2 pr glasses, 1 for reading 1 for distance, on return to cell Nurse Edwards immediately came to Moores cell cancelling prs prescription stating "in this facility 1 pair of glasses" you only went to Dr to choose Bifocals, Reading or Distance. This is incompetent + medical malpractice. Care by unqualified nurses, prohibited by Ramos. 639 F2D559. Prevention from recommended med treatment/ care by unqualified 485 F2d 122. Violating state medical laws "Denial of treatment requiring health maintenance or routine preventive care CRS 12-38 1116. + Use of methods that are codified + do not allow the use of professional judgement or variation according to the needs of the patient" CRS 12 38-1116. Violating ADA by administrative methods of discrimination, 42 USC 12102(1) Denial interactive process 42 USC 12112(B)(5)(9) Patient knows what works + doesn't. Would be contrary to basic medical ophthalmological treatment + diagnosis Duration p 27. One should determine what therapeutic measures has been tried + to what extent they have helped -- circumstances that trigger or worsen symptom' Pg 27 General optimology. Bifocals debilitate to all effect stop legal, most readings, readings or distance alone obviously debilitates, Moore by use of duo + nuo. Knows limits pain, injury, problem, debilitation. Allow Rx 2 Pr by Dr Kieth on 1-30-08 (Moore knows Nurses with Ante-Commit records to deny)

DATE: 1-30-08   OFFENDER SIGNATURE: Stephen Moore

DATE RECEIVED:   RESPONDING DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE & ID

RESPONSE: Med-Lousberg
Your medical chart + care as it pertains to the above have been reviewed in response to this Step 1. Per clinical standards + procedures for optometry, an offender may receive one (1) pair of state-issued glasses every three years if clinically indicated. "Bifocal lenses will be provided as needed. Two (2) pairs of glasses will not be provided instead of bifocals." Your care has been adequate + appropriate. Grievance is denied.

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: 2/8/08   SIGNATURE/PRINT NAME & DOC EMPLOYEE/CONTRACT WORKER, OR VOLUNTEER ID #   J. Holcomb 3770
RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:

DATE: 2-5-08   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID #   3770
RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: 2-7-08   OFFENDER SIGNATURE/PRINT NAME & DOC #   Stephen Moore 57381

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

RECEIVED FEB 0 7 2008

Attachment "A"
Page 1 of 1