IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA

JESSE (JESUS) MONTEZ, et al.,

      Plaintiffs,

-vs.-

BILL OWENS, et al.,

      Defendants.

---

Claim Number: 03-446
Category: III
Claimant: Darren K. Chandler, #59346
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211-2017

---

## FINAL ORDER OF SPECIAL MASTER

---

      THIS MATTER comes before the Special Master on the claim of Claimant Darren K. Chandler. A hearing was held on this claim at the Buena Vista Correctional Facility (BVCF) on December 8, 2008 before Richard C. Davidson, Special Master. Mr. Chandler appeared pro se. Defendants were represented by Robert Huss, Esq. Claimant Darren Chandler and Dr. Gagandeep Singh were called, sworn and testified. The Special Master has reviewed the testimony and all documents filed by both sides. This Order shall constitute the final action of the Special Master on this specific claim.

### I. BACKGROUND

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (CDOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

      On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt-out provision for class members. The Remedial

Plan also created a mechanism for individual inmates, former inmates or their representatives to file claims seeking damages or other remedies available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
>
> I.  General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V.  Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

Section III of the Remedial Plan provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

On November 23, 2004, Judges Nottingham and Kane issued an Order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>       2. The Special Masters shall evaluate individual damage claims
> submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This Order controls the adjudication of all claims and must be followed by the Special Masters. A claimant must establish by a preponderance of the evidence each of the above four criteria.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following Findings of Fact:

1. Claimant Darren K. Chandler submitted a claim which was assigned claim number X-274. After review, the claim was elevated and assigned claim number 03-446. The claim is premised on an alleged permanent mobility disability.

2. Claimant's claim was assigned to Category III pursuant to the Remedial Plan as set forth above.

3. Claimant Chandler first entered CDOC custody in 2000. He was paroled in 2005 but was brought back into custody in 2007. During his time in custody, Claimant has been housed at DRDC, ACC, DCC, BVCF, BCCF, CTCF, SCC and KCCC.

4. Claimant was injured in August, 2000 while at ACC. He was hit on the head by a door opened by a guard. He testified that he suffered from nausea, pain in his head, dizziness and muscle spasms as a result of the injury. These problems have become worse over time. He was given an MRI in 2001 which showed T 7-8 degeneration. He now has muscle spasms in his back almost every day. He takes pain medications and muscle relaxants to treat the spasms. He said that NSAIDS cause him to have stomach problems.

5. Claimant says that because of the muscle spasms he is unable to sit for more than 15 to 20 minutes. He is able to walk around and can walk about a mile. He has tried to run but is unable to do so. He cannot lift heavy objects. He is able to attend and participate in classes. While at BCCC in 2005, he was receiving Toradol shots but these were discontinued. He was observed shooting baskets and because he was thought to be able to play basketball, he lost the Toradol. He

is on lower bunk lower tier restrictions.

6. In 2001 at DCC, he suffered an episode of very severe spasms. He stayed in bed over the weekend but went to work on Monday. Work made the spasms worse. He requested to go to medical and back to his cell and got into an altercation with the guards. As a result he was written up, put into segregation and his release to community corrections was delayed. He feels this was unfair.

7. Claimant is primarily complaining about poor medical care given to him. He has never been denied jobs because of his condition.

8. Dr. Singh testified that he reviewed the medical records of Claimant. The records show that Claimant suffers from mild degenerative joint disease in his back at T 7-8. As a result he does have chronic pain issues. The records show that Claimant has received various medications to treat his problem. Claimant also suffers from migraine headaches, kyphosis and flat feet. His treatment for these problems has been appropriate. Claimant does not meet the criteria to receive narcotic medications. Dr. Singh testified that Claimant is not disabled or impaired, based upon his medical review of the records and his opinion.

### III.  CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

3. The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within

six months. *Remedial Plan* ¶ III(C). As discussed in Section I above, the Remedial Plan further limits permanent mobility, hearing, vision, and diabetes disability/impairment to those that conform to the criteria of Section V, paragraph A of the Plan.

4. Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the CDOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment, as defined in the Remedial Plan, or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

5. It must be noted that neither the ADA nor the Rehabilitation Act are designed to remedy alleged deficiencies or omissions in medical treatment provided to prisoners by CDOC. Rather, the ADA and Rehabilitation Act are designed to insure that those who have permanent disabilities that prevent them from engaging in one or more major life activities are not discriminated against because of their disabilities. The Remedial Plan, which defines the scope of the Special Master's authority, limits the disabilities for which damage claims can be asserted to those relating to mobility, vision, hearing, and diabetes.

6. The Special Master finds and concludes that Claimant Darren K. Chandler is not a mobility disabled person pursuant to the Montez Remedial Plan. In order to prove disability, the Claimant must prove that he has a mobility impairment that substantially interferes with one or more of his major life activities. Claimant has shown that he has chronic pain in his back that sometimes becomes severe and can be disabling. However, Claimant has failed to prove that his mobility is impaired by his pain. By his own testimony, Claimant is able to walk a mile. He has even tried to run but has been unsuccessful. He was able to shoot baskets as recently as 2005. While Claimant does suffer from chronic back pain, the back pain does not substantially interfere with his mobility. As a result, Claimant cannot qualify as a member of the Montez class.

7. The medical records show that Claimant has had back pain for many years going back before the date of the Montez Remedial Plan approval. As a result, his claim is not untimely, despite his late filing. However, Claimant is still unable to recover in this action.

### IV. ORDER

IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment shall be entered in favor of Defendant and against Claimant dismissing his claims in this action.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before June 29, 2009** with the Clerk of the United States District Court at the following address:

          901 19th Street
          Denver, CO 80294.

SIGNED this 15th day of May, 2009.

          BY THE COURT:

          */s/ Richard C. Davidson*

          _____
          Richard C. Davidson,
          Special Master