IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - CMA (Consolidated for all purposes with Civil Action No. 96-CV-343)

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-463
Category III
Claimant: Dean Gates, #118740
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 19, 2009. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Dean Gates (Claimant) and Robb Huss, attorney for Defendants.

Claimant called himself as a witness. Defendants offered into evidence Exhibit A. Defendants requested additional time in which to submit an affidavit from a physician concerning Claimant's medical condition.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>   C. PERMANENT DISABILITY/IMPAIRMENT
>   A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>   2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on August 26, 2003 when he was placed at the Denver Reception and Diagnostic Center (DRDC). Claimant was placed temporarily at several facilities and then placed permanently at the San Carlos Correctional Facility (SCCF) in Pueblo, Colorado on November 3, 2003. He remained at SCCF until August 24, 2004 when he was transferred to FLCF. Claimant has remained at FLCF over the last almost five years, except for temporary placements at medical facilities.

In his claim form, Claimant checked the boxes for mobility, vision and hearing impairments. In his claim form, Claimant stated, in part, as follows:

>   I have been in a wheelchair for over 10 years. I lost the hearing in my left ear over 5 years ago. I have been legally blind for over 20 years. I was told I need back surgery over 30 years ago. My diabetic problem ended when I had double transplant of kidney and pancreas. However my pancreas was infected so bad that they cut me back open and move my pancreas to the other side where my bowels are. Because of the medication I was on I did not know my foot was being burned when the

> medical staff put me to bed my foot got pushed up against the heater which burned all the flesh off my foot clear to the bone. Thank God, Mr. Gates was no feeling from the mid-thigh down and he has been that way for over 20 years.

As to the issue of discrimination by DOC staff, Claimant stated:

> By not being responsible and providing me the safety proper medical care for my person which is why my foot got burned to the bone! Plus not assigning me a pusher like my accommodations call for! For people like me in a wheelchair we are stuck in our cell all day. We can't go to each other's cell and visit because there is no cell visiting. We can't talk in the halls because the officers will write us up. By not having a pusher I'm denied access to the "law library," the regular library, the game room, the gym, the yard and even picnic tables in front of a cell house 5. And the fact that I can't go to religious services without a pusher.

At the hearing, Claimant testified that he has had back problems for most of his adult life. He suffered six crushed disks prior to arriving into DOC custody which led to his present mobility problems. Claimant was in a wheelchair at the hearing. He testified that he has been in and out of a wheelchair for over nine years. He has no feeling in his legs from mid-thigh down to his feet.

Claimant testified that he suffered hearing loss as the result of being too close to cannon shot. He has not been tested at DOC for hearing loss and has not received a hearing aid. He had vision problems due to diabetes. Though his diabetes ended due to a pancreas transplant prior to DOC custody, he has continued to have vision problems. He had cataract surgery before coming into DOC custody and that helped to a certain degree.

Claimant testified that his biggest complaint arises from an incident on December 8, 2008 at FLCF. Claimant was placed in a room with an exposed heater. His bed was next to the heater. During the night, his left foot came in contact with the heater. Since he has no feeling in his lower legs, Claimant was unaware that the foot was touching the heater. The resulting burn led to a brief hospitalization and continuing medical problems. Claimant submitted copies of some of his medical records, and these reflect the severity of the burn to the left foot. He stated that his foot occasionally still bleeds due to the severity of the burn.

Claimant also testified that he has requested a pusher to help him move about the facility. He is in a wheelchair full-time at this point.

### III.

Defendants raised a jurisdictional issue at the conclusion of the hearing. Defendants argued that Claimant had failed to prove that he was the victim of discrimination on or before August 27, 2003. As a result, Defendants believe that there is no jurisdiction over anything that occurred after this date.

Article XXXII of the Remedial Plan provides the basis for the damage claim process. The Remedial Plan was approved on August 27, 2003. That has become the pivotal date for determination of whether an individual was disabled and the victim of discriminatory conduct by DOC. In other words, a claimant must prove that he was in custody of DOC on or before that date and disabled, as defined by the Remedial Plan. In addition, a claimant must show that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. Article XXXII also provides, in part:

> Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case.

Stated simply, a claimant must show the following things before an amendment may be made to a claim:

    1. That the claimant was in DOC custody on or before August 27, 2003.
    2. That the claimant was disabled as defined by the Remedial Plan.
    3. That the claimant was the victim of discrimination as prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

If each of these is established, then a claimant may amend his claim to include incidents that occurred after August 27, 2003. If one of the three is not established, then there is no jurisdiction over the claim by the Special Master.

In this case, Claimant came into DOC custody on August 26, 2003. For purposes of this order, the Special Master will determine that Claimant was mobility impaired on that date.[2] There was no evidence presented that Claimant was the victim of discriminatory conduct by DOC staff on either August 26 or August 27, 2003. The Special Master agrees with Defendants that there is no jurisdiction over the claim pursuant to Article XXXII of the Remedial Plan. The claim will be dismissed.

The Special Master would note that class counsel has argued to the assigned District Judge that jurisdiction exists for consideration of claims for discrimination after August 27, 2003. Defendants adamantly disagree with this argument. This issue is before Judge Arguello and will have to be resolved by her. Should Judge Arguello agree with class counsel then Claimant may be

---

[2] Insufficient evidence was presented to indicate that Claimant was hearing or vision impaired on August 27, 2003. No conclusion is being drawn as to Claimant's present status concerning his hearing and vision.

5

able re-open this claim. There is no jurisdiction at the present time to review what occurred after August 27, 2003 for the reasons noted.

It should also be noted that Claimant may commence his own separate lawsuit for anything that may have occurred after August 27, 2003. Under no circumstances would the Special Masters have jurisdiction over a claim brought pursuant to 42 U.S.C. §1983. The Special Masters are limited to review of claims under the ADA and Rehabilitation Act.

IT IS HEREBY ORDERED that the claim of Dean Gates is dismissed, as no evidence was presented that Claimant was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 1, 2009.**

SIGNED this 26th day of June, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master