IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - CMA

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

---

Claim Number 03-467
Category III
Claimant: Robert Blankenship, #52475
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 19, 2009. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Robert Blankenship (Claimant) and Robb Huss, attorney for Defendants.

Claimant called himself as a witness. Defendants offered into evidence Exhibits A thru E, and all were admitted. Defendants requested additional time in which to submit an affidavit from a physician concerning Claimant's medical condition.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>   A. COVERED DISABILITIES
>   The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>   B. QUALIFIED INMATE
>   Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

only the jurisdiction agreed upon by the parties.

                C. PERMANENT DISABILITY/IMPAIRMENT
          A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

      2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
          1. Is the claimant a disabled individual who is a member of the class?
          2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
          3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
          4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant initially came into DOC custody in December 1984. Claimant was placed at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant discharged his first sentence on August 13, 1986.

Claimant returned to DOC custody on March 25, 2002. He was placed at the Denver Reception and Diagnostic Center (DRDC) for testing. He then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado on March 13, 2002. He remained at CTCF until he was paroled on May 4, 2004. Parole failed, and Claimant returned to DOC custody on August 23, 2004. He was placed again at CTCF on August 31, 2004 and remained there until granted parole on November 13, 2004. Parole was revoked, and Claimant came back into DOC custody on May 23, 2005. This sentence was discharged on May 24, 2005.

Claimant returned to DOC on a new conviction on April 12, 2007. He was placed at DRDC and then transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on May 2, 2007. Parole was granted on June 27, 2007. Claimant returned to a DOC facility on March 13, 2008 when he was placed at the infirmary at DRDC. Claimant then was moved to the Sterling Correctional Facility (SCF) in Sterling, Colorado on May 8, 2008. He remained there until he was transferred to FLCF on December 18, 2008.

In his claim form, Claimant initially did not check any of the disability boxes. Claimant stated, in part, as follows:

> I have epilepsy and mental conditions that got DOC to put a note in my file that read no jobs or ½ way house cause consciousness is an issue. I was stopped from job after job and was not allowed to put in for the ½ house for some time.

As to the issue of discrimination by DOC staff, Claimant stated:

> I have epilepsy and people freak out when I fall out and I can hurt myself when that happens and my mental condition keeps me from being around people.

Claimant submitted a portion of his medical records. Claimant noted the entry that stated "no assignment where loss of consciousness would be hazardous." From the documents presented, the earliest entry with this notation is March 26, 2002.

At the hearing, Claimant testified that he was injured in an automobile accident when he was eight years old. He suffered a brain injury which has led to seizure activity up to the present date. Claimant testified he had epilepsy when he came into DOC custody for the first time. His problems arose after his return to DOC custody in 2002.

Claimant indicated that the entry in his medical records noted above has led to difficulty in finding jobs. He was not considered for the Tag Plant at CTCF because of his epilepsy. More importantly, Claimant believed that he had been the victim of discrimination due to the unwillingness of any half-way house to consider him for placement. Claimant acknowledged that he had been in and out of DOC custody, and that was the result of his actions. He testified that he just wants to be treated like every other inmate and given the opportunity to get a good job, as would have been the case if he had been hired in the Tag Plant.

On cross-examination, Claimant stated that he has been granted parole in the past. He further stated that he had been involved in programs, presently being enrolled in the GED class.

### III.

Defendants raised a jurisdictional issue at the conclusion of the hearing. Counsel for Defendants argued that Claimant is not mobility impaired and that epilepsy is not covered by the Remedial Plan.

Article XXXII of the Remedial Plan provides the basis for the damage claim process. The agreed upon categories of disabilities to be covered by the Remedial Plan are vision impairments, hearing impairments, mobility impairments, and diabetes. The Remedial Plan further provides that an inmate must have "a permanent disability/impairment which substantially limits his or her ability to perform a major life activity." This definition means that a claimant must show that a major life activity is permanently affected before the Remedial Plan will apply. The evidence in this case is

that Claimant has had epilepsy for most of his life and that seizure activity occurs on a periodic basis. Claimant does not know when a seizure will occur, and some are petite mal seizures that have limited affect on daily activities.

The Remedial Plan does not cover all conditions that may be protected under the ADA. Epilepsy can constitute an ADA disability. *Dark v. Curry County*, 451 F.3d 1078 (9th Cir. 2006); *EEOC v. Chevron Phillips Chemical Co., LP*, ___F.3d ___, 2009 WL 1564164 (5th Cir. 2009). Claimant has testified that he was denied entry into a half-way house due to his epilepsy. This allegation is unrebutted by the evidence presented and reflects discriminatory conduct toward Claimant. The problem is that the Remedial Plan does not cover epilepsy or any claim related to mental health conditions.

The Special Master has no jurisdiction over this claim, as it relates solely to Claimant's epilepsy. There is no evidence that a mobility impairment exists. The Special Masters cannot expand the coverage of the Remedial Plan and are limited to the four noted categories. Claimant is not precluded from filing a separate lawsuit under the ADA and Rehabilitation Act concerning his epilepsy and the disparate treatment that he has received concerning half-way house placements.

IT IS HEREBY ORDERED that the claim of Robert Blankenship is dismissed, as epilepsy is not a covered condition under the Remedial Plan and the Special Master lacks jurisdiction over the claim; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 1, 2009.**

SIGNED this 26th day of June, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master