IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL OWENS, et al.

      Defendants.

---

Claim Number 03-462
Category III
Claimant: Wiley A. Brown, #59211
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on July 17, 2009. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Wiley A. Brown (Claimant) and Rob Huss, attorney for Defendants.

Claimant called himself as a witness. Defendants called Dr. Gagandeep Singh, M.D. as an expert witness. Defendants offered into evidence Exhibits A-1 thru 26, B, C, and D, and all were admitted. At the conclusion of all testimony, the Special Master took the case under advisement.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

only the jurisdiction agreed upon by the parties.

                C. PERMANENT DISABILITY/IMPAIRMENT
                A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>     1. Is the claimant a disabled individual who is a member of the class?
>     2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>     3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>     4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant initially came into DOC custody on October 18, 1988. Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) in Ordway, Colorado. On November 3, 1989, Claimant was transferred to the Four Mile Correctional Center (FMCC) in Canon City, Colorado. Claimant was granted parole on July 31, 1990. Claimant remained on parole until his sentence was discharged on November 5, 1991.

On July 14, 1998, Claimant returned to DOC custody. He was evaluated at the Denver Reception and Diagnostic Center (DRDC). He was placed at the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado on September 30, 1998. Claimant then was transferred back to AVCF on October 19, 2000. On August 16, 2001, Claimant was granted parole. After parole was revoked, Claimant returned to DOC custody on April 16, 2002. Claimant then was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Claimant went back out on parole on May 12, 2003. Parole failed, and Claimant came back in to DOC on November 19, 2003 at DRDC. Claimant then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was granted parole and discharged his sentence on August 12, 2004.

Claimant received a new conviction and sentence in early spring 2007. On April 17, 2007, Claimant was placed back at DRDC. He then went to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He was granted parole on August 27, 2007. This sentence was discharged on

July 17, 2008.

On August 22, 2008, Claimant returned on a new conviction to DOC custody. He was seen and evaluated at DRDC. He then was transferred to CTCF on September 10, 2008. Claimant has remained at CTCF since that date.

In his claim form, Claimant checked the boxes for mobility impairment, vision impairment, and diabetes. Claimant stated, in part, as follows:

> Mobility - cannot walk well, can't walk over 50 feet. Struggles to get dressed. Needs cane. Vision - needs proper glasses. Diabetes - needs proper medication. Tires easily, bad feet & need special shoes. Needs special diet and snacks. Needs bottom bunk bottom tier restriction. Special medical shoes and knee surgery. Close to bathroom.

In the section requesting information concerning discrimination by DOC and its staff, Claimant stated as follows:

> Have been putting in kites for special medical shoes. The facility doctor has not seen me for my knees and feet. Do not give special diets for my diabetes.

> Pain in feet and knees. Sick and wobbly. Made to work in hazardous kitchen with a cane. Joints are getting worse.

At the hearing, Claimant testified that he has had health problems for some period of time. He now uses a cane for stability, as he can hardly walk. He was hurt originally while in the Job Corps when another person fell on his knee. He suffered ligament damage. He began to develop arthritis over the years.

While Claimant was at HCCC, his knees went out on him. He was taken to the medical department and then to a hospital. He had orthopedic surgery on the knees. He has had problems with the knees since the surgery. Claimant testified that his knees are "shot." Claimant is not able to walk stairs or stand for long periods of time. He was required to work in the kitchen at CTCF which has led to problems.

Claimant testified that he has had problems with his feet. This is the result of his diabetes. His condition is starting to affect his sciatic nerve. Claimant has requested special shoes, but with out any success. Claimant testified that he has trouble getting around. He stated that he was diagnosed as being diabetic while he was at FCF. He is taking insulin by shot to control his diabetes.

Claimant stated that his vision problems relate to slight glaucoma. He testified that he has trouble seeing anything.

On cross-examination, Claimant testified that he does have glasses now. He testified that he

does not have any vision programs available to him. On re-direct examination, Claimant testified that he believed that he had been diagnosed as a diabetic while outside of DOC custody, but he could not remember when.

On re-cross examination, Claimant testified that he had no money to buy any shoes off the canteen list. He also mentioned that he has been the victim of mental illness.

Dr. Gagandeep Singh, M.D. testified for Defendants in their case in chief. Dr. Singh testified that Claimant's medical records reflect that Claimant has some problems with his knees. Claimant is scheduled to have one knee replacement next month. Claimant's medical records reflect that he was diagnosed with diabetes in 2004. Claimant has been on oral medications and insulin. Claimant has not taken care of himself and has put on weight. He also eats canteen food which is not compatible with his diabetes.

Dr. Singh testified that Claimant has no vision impairment. He wears glasses. There is no diagnosis of glaucoma at the present time. On cross-examination, Dr. Singh acknowledged that deformity of feet could require special shoes.

On rebuttal, Claimant testified that he has problems with his feet, particularly with his toe nails. He has been advising DOC medical staff of the constant pain that he has been experiencing. His knees are in such a condition that it is almost impossible to exercise.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to prevail on his damage claim filed pursuant to Article XXXII of the Remedial Plan, Claimant must establish that he was disabled on or before August 27, 2003. Claimant was granted parole on May 12, 2003. This was the last day in DOC custody prior to August 27, 2003.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Vision Impairment:** The major problem in evaluating the testimony and evidence presented is that Claimant does not recall specific dates. In fairness, this case is almost six years down the road from the settlement. The problem is that Claimant carries the burden of proof to show that he was disabled on or before August 27, 2003. As to vision impairment, Claimant has not carried this burden.

The evidence reflects that Claimant has worn glasses off and on for years. No evidence was presented that Claimant had a major life activity affected by his vision problems prior to August 27, 2003. Issues concerning possible glaucoma and other problems related to his diabetes are all present day issues. Claimant has not carried his burden to show that he had a vision impairment on or before August 27, 2003.

**Diabetes:** Claimant is a member of the class as a diabetic. *Exhibit A8*. This was the result of the stipulation entered into by Defendants and class counsel on April 4, 2008.

The evidence reflects that DOC diagnosed Claimant as having diabetes in 2004. Though Claimant alleges that he was diagnosed earlier than this date, there is insufficient evidence to establish such a medical finding. Article XXXII requires a showing that a disability was present on or before August 27, 2003. As to diabetes, no evidence so establishes that fact. The Special Master specifically finds that Claimant was diagnosed as diabetic in 2004. He cannot pursue his claim under Article XXXII for diabetes.[2]

**Mobility Impairment:** The evidence presented by Claimant reflects long-term problems with his knees. Most of the evidence presented, including testimony, reflects recent occurrences with Claimant's mobility. There was not much presented concerning the years prior to August 2003.

Claimant offers one point which is compelling. He is scheduled to receive a knee replacement within the next few weeks. Clearly, his knees are such that a significant operation has been authorized. Claimant described his knees as shot, and that is bolstered by the medical determination that his knee should be replaced.

The Special Master determines that the circumstantial evidence reflects that Claimant has had long-term problems with his knees stretching back three decades. Claimant's testimony supports a determination that he was mobility impaired before August 27, 2003. Claimant may pursue his claim under Article XXXII as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise

---

[2] A pending issue before Judge Kane is whether inmates may bring claims for incidents after August 27, 2003. That issue has not been resolved by Judge Kane as yet.

unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
The overwhelming concerns that Claimant expressed about his mobility impairment relates to his medical care that he has received while in DOC custody. There is no question that he has received medical care, but he has questioned whether such care was appropriate.

The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant believes that he was the victim of discrimination as the result of the medical care provided to him, there is no jurisdiction over such claim due to the *Fitzgerald* decision.

Claimant has not established that he was treated differently than a non-impaired inmate. Claimant has not established that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. His concerns about his medical care are not frivolous, but are beyond the jurisdiction of the Special Master in light of the *Fitzgerald* decision.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Wiley A. Brown is denied and dismissed, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 19, 2009.**

SIGNED this 28th day of July, 2009.

BY THE COURT:

/s/ Richard M. Borchers
_____
Richard M. Borchers
Special Master