IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **92-cv-00870-JLK**

**JESSE MONTEZ, et al.**, as representatives of themselves and all others similarly situated,

    Plaintiffs,

v.

**BILL RITTER, et al.,**

    Defendants.

## ORDER

Kane, J.

    A **STATUS CONFERENCE/ORAL ARGUMENT** is set in this case on **September 1, 2009,** at 9:00 a.m., in A-802 of the Alfred A. Arraj U.S. District Courthouse. I have cleared my calendar for the day and suggest counsel do the same. Special Master Borchers will be in attendance.

    The matters to be addressed at this conference include: (1) The various pending Orders, Reports and Recommendations of Special Masters regarding the scope of the Masters' jurisdiction and handling of pro se damages claims (Docs. 3741, 4007); (2) the Orders of Judge Arguello (Docs. 3838, 3839) regarding the scope of the Masters' jurisdiction as well as the Tenth Circuit's remand; (3) my "Expansion Order" of April 15, 2008 (Doc. 3336); and (4) the Compliance Hearing currently set for October 2009. I also expect to address the docket, which currently shows upward of 45 motions fully briefed and pending as far back as December 2005. It is time for a close and hard look at the case as it stands in the wake of Judge Nottingham's resignation and its reassignment, in its entirety, from Judge Arguello to me.

My review of these matters has led me to reach several tentative conclusions.  I say tentative because I will be open to persuasion otherwise, but as you prepare for the September 1 conference, understand my predilections are as follows:

1.  Individual inmates' pro se damage claims and the attendant wrangling over jurisdictional and appeals issues are trees obscuring the forest, which is the class action itself and enforcement of, and the Department of Corrections' compliance with, the law regarding the treatment and care of disabled inmates.  At this stage of the proceedings, enforcing the Remediation Plan is the overarching matter with which I am concerned.  If compliance with the stipulated plan is impossible, then I will scuttle the plan and set the case for trial.  If it is not, then it must be accomplished and this case brought to conclusion.  What I will not do is allow the class action to continue weltering in the ether while inmates who were barely out of diapers at its inception file $500 damage claims based on our inaction.

2.  In this regard, my April 2008 "Expansion" Order was not intended to shift focus from compliance issues and achieving finality on the class action claims.  It was, instead, an effort to shift to the Special Masters the role of evaluating the multitude of letters, pro se motions and handwritten notes to determine which raised compliance issues properly forwardable to class counsel and which presented viable claims for damages within the scope of the remediation plan.  While class counsel's interpretation of that Order as expanding the class of eligible damage claimants to include individuals who suffer loss as long as DOC remains out of compliance is not inapt, it is unworkable and antithetical to the principles of Rule 23 and class certification generally.

While I do not believe my April 15 "Expansion Order" compels the interpretation offered by class counsel, if necessary, I will amend it to clarify the Special Masters' role.

Pro se filings raising compliance issues must be forwarded to class counsel and filings seeking damages for harms caused by noncompliance must be evaluated for jurisdiction. Damage claims brought by individuals who were not incarcerated at the time of the parties' stipulation and remediation Plan must be dismissed, without prejudice, and pursued in a separate action in accordance with the PRLA and the rules of this court. Damage claims brought by individuals who were incarcerated at the time the Plan was entered into but were arguably not disabled until afterwards may be entitled to slightly different consideration. We shall see.

     3. The Plan provides for an integrated and limited damage pro se damage claim process that did not contemplate further appeal, beyond the review to which the parties stipulated for abuse of discretion. Under Fed. R. Civ. P. 53(f)(3), Judge Nottingham, as the judge then assigned to this case, would have been required to decide "de novo all objections to findings of fact made or recommended by [the] master, *unless the parties, with the court's approval* [emphasis mine]," stipulated otherwise. The parties clearly stipulated otherwise.

     The parties agreed that Judge Nottingham would not review objections de novo under Rule 53(f)(3), but would ask me, subject to my approval, to review those objections under an abuse of discretion standard. I agreed, and until the class action itself was recently reassigned to me in its entirety (so that Judge Nottingham's original case management function as well as my limited and independent "appellate" functions are now merged), my role was simply that: to be the reviewer under Rule 53(f)(3) of objections to the determinations of the Special Masters. Further appeals of orders I issued in that capacity to the Tenth Circuit was not contemplated under the Plan and will not be countenanced now.

4.  <u>Compliance</u>.  As set forth at the outset of this Order, attention must and will turn to the issue of compliance under the Plan, and, if compliance under the Plan appears unattainable, to whether the Plan itself must be abandoned and the case tried on its merits to final orders which will then be enforced through the mechanism of contempt.  Counsel shall seriously consider this issue and confer, in good faith, regarding what can be done to move this case to resolution.

Dated:   August 6, 2009.

*s/John L. Kane*
SENIOR U.S. DISTRICT JUDGE