IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-JLK

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-442
Category III
Claimant: Cleotis A. Lewis, #85892
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062

_____

**FINAL ORDER OF SPECIAL MASTER**
_____

    THIS MATTER came before the Special Master for hearing on January 14, 2009. This hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Cleotis A. Lewis (Claimant) and Jennifer Huss, attorney for Defendants.

    Claimant called himself as a witness. Defendants called Dr. Thomas Fisher, M.D. as an expert witness. Defendants offered into evidence Exhibits A through C, and all were admitted. Claimant requested time to review his medical records and submit additional documents. That request was granted up to August 3, 2009. No additional documents have been received from Claimant.

**I.**

    This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

2

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> > 1. Is the claimant a disabled individual who is a member of the class?
> > 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> > 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> > 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

**II.**

Claimant initially came into DOC custody on March 17, 1995. He was evaluated at the Denver Reception and Diagnostic Center (DRDC). He was placed at the Delta Correctional Center (DCC) in Delta, Colorado. On August 20, 1996, Claimant was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant was placed on parole on September 14, 1996. That sentence was discharged on July 2, 1998.

Claimant returned to DOC custody on March 3, 1999. He was placed at DCC and then at the Rifle Correctional Center (RCC) in Rifle, Colorado. He was granted parole on March 25, 2000. Parole failed, and Claimant returned to DOC custody on July 25, 2000. He was placed at DRDC and then transferred to the Arkansas Valley Correctional Facility (AVCF) in August 2000. Claimant was granted a community placement, but that was not successful. He was placed at CCCF in October 2001. He discharged this sentence on April 4, 2003.

Claimant returned on a new conviction on January 17, 2006. Claimant returned to DRDC for evaluation. He then was transferred to the Kit Carson Correctional Center (KCCC) in Burlington, Colorado on January 30, 2006. He was placed at the Skyline Correctional Center (SCC) in Canon

City, Colorado on August 31, 2007. He was briefly transferred to the Four Mile Correctional Complex (FMCC) in Canon City, Colorado on January 25, 2008. On February 11, 2008, Claimant was transferred to CCCF.

In his claim form, Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

> I suffer from a bullet injury left foot an injury inflicted during military service in the year of 1986, and left knee injury sustained during military service.
> I have Plantar Faciitis in both feet which is compounded by a gun shot wound to the same area of the left foot which was obtained in 1986 while serving in the armed services.
> I have little or no mobility depending on weather and what my body wants to do. I am unable to participate in life's major activities finding myself bedridden, unable to walk short or long distances without experiencing severe pain on a scale of 1 to 10, my pain is at all times at eight (8) after fifteen (15) yards of walking, I'm experiencing pain at number ten (10), throwing me to the ground compounding the pain to where I almost black out...I'm in chronic pain at all times.
> I have to use a walking cane at all times or every day, and between my knee pain and foot pain I'm suffering in pain at level eight (8) while sleeping, often awakening in the middle of night crying in pain and discomfort almost every night.

In response to the question concerning discrimination, Claimant set forth the history of medical treatment he had received at KCCC and later. He described that treatment as experimental. In November 2006, Claimant received a recommendation for additional injections, but with the understanding that these might not improve his condition and that they could be damaging. According to Claimant, he received a recommendation for referral to a specialist. He also received a recommendation for medical shoes which he has never received.

In his supplemental form, Claimant reiterated that he had a gunshot wound to his left foot. He indicated that he was not able to participate in daily activities. He went on to state, in part:

> Can't wear normal boots or shoes and must have special medical ones for my particular injury. I am unable to stand or sleep without being in severe pain. Also my left knee is injured from the military injury to foot that has weakened it, and I have been denied competent evaluation of it wherein it has caused me to fall to the ground violently. I can't concentrate on anything for any length of time from the pain of the two injuries. Furthermore, I can't participate in any programs because of the pain which has not allowed me to progress through the system for earned time and early release.

He further states that he was denied certain accommodations based upon an erroneous assumption by staff that he was involved in martial arts training in the prison yard.

4

He went on to state that he had made requests for medical shoes, but without any success in being provided a pair of those shoes.

At the hearing, Claimant testified that he had an impairment caused by chronic pain. In November 2006, he had explained to medical staff that he had plantar fasciitis. He requested medical shoes and insoles but did not receive those. He was advised that he did not meet the criteria for medical shoes, but was not advised why that was the case. He asked about the possibility of receiving ultrasound surgery on his feet. He detailed the treatment he had received for his feet from 2006 on, including injections of medications into his feet. Those injections did not provide any long-term relief. He believed that the termination of his job at the gym was the result of his being unable to walk a lot.

Claimant testified that the medical shots and other treatment had not worked. He stated that his general medical condition had deteriorated. He was not given appropriate shoes and was not able to do his prison work because of chronic pain. Claimant has complained about his feet for years. He was given a cane to help with walking, but then his cane was taken from him. He testified that he was upset with the medical care and treatment at CCCF. Additional requests for medical shoes were ignored.

On cross-examination, Claimant stated that he was in pain all the time. Claimant had not sought an accommodation evaluation from DOC. He stated that the shots were helpful only for a short time.

Claimant testified that he needed appropriate accommodations, but those were removed in May 2008. He stated that most of his complaints came as the result of his feet. Most of those complaints have come because of treatment he has received since coming back into DOC custody. He stated that he had received medical appliances at KCCC, but those then were taken from him. He has no money to buy new shoes or other things from the canteen.

Dr. Fisher was called as an expert witness for Defendants. Dr. Fisher had not examined Claimant, but had reviewed his medical records. He acknowledged that Claimant has plantar fasciitis. In essence, Claimant has flat feet. He acknowledged that sometime soft soled shoes would help. Surgery would not be an option for his condition.

Dr. Fisher stated that Claimant has had the foot condition since first arriving in DOC custody in 1995. A recommendation had been made for heel cups in 1997, along with soft shoes. He did have restrictions in the past, including an extra blanket and bottom bunk. The restrictions appeared to be more for comfort than medical necessity. He stated that Claimant's medical records did not reflect that the foot condition had seriously impeded his ability to walk. He acknowledged that Claimant had been provided a cane, but that had been taken away. The cane would have relieved some pain in his feet on a short-term basis.

In May 2008, certain items were taken from Claimant according to the medical records. These items included a back brace and knee brace. Dr. Fisher stated that Claimant had not made an

5

application for a disability evaluation.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** In order to prevail on a damage claim filed pursuant to Article XXXII of the Remedial Plan, all claimants must establish that they were disabled on or before August 27, 2003. In this case, Claimant discharged his second sentence on April 4, 2003. Claimant must establish that he was mobility impaired on or before that date.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

Claimant testified at length concerning incidents that occurred upon his return to DOC custody on January 17, 2006. He has had concerns regarding the medical treatment that he has received at various facilities.

The evidence concerning what transpired before April 4, 2003 is not clear. Two pages of medical records were submitted relating to 1999 and 2000. Both reflected self-reported medical problems, which included "foot problems bad arches." *Exhibit A-1*. No mention is made of foot problems in 2000. *Exhibit A-2*. The next medical record is the self-reported medical history taken on January 17, 2006. *Exhibit A-3*.

The totality of the evidence presented by both sides reflects that Claimant suffered an injury to his left foot while in active duty with the U.S. Navy. This occurred in the mid-1980's prior to Claimant's incarceration in DOC. This condition was known to DOC staff in 1995. There is no evidence that prior to April 2003 that Claimant's ability to walk was substantially limited, as required by the ADA. The evidence presented by Claimant reflects that his physical condition has deteriorated. The evidence submitted by Claimant does not establish that he was mobility impaired on or before April 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant's testimony dealt almost exclusively with his return to DOC custody in January 2006. He has expressed grave concern about the medical care that he has received.

Claimant's concerns relate to his medical care that he has received while in DOC custody. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant believes that he was the victim of discrimination as the result of the medical care provided to him, there is no jurisdiction over such claim due to the *Fitzgerald* decision.

Claimant has not proven by a preponderance of the evidence that he was the victim of discrimination prohibited by the ADA on or before April 4, 2003. Pursuant to Article XXXII of the Remedial Plan, the Special Master cannot consider allegations of discrimination after August 27, 2003. Claimant may bring his own lawsuit for what occurred after January 2006 or wait to see if the assigned District Judge will allow additional claims to be filed for actions that occurred after August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Since the answer to Question #3 is in the negative, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Cleotis A. Lewis is denied and dismissed, as Claimant has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 19, 2009.**

SIGNED this 21st day of August, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master