IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES)(Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE MONTEZ, et al.
    Plaintiffs,

-vs.-

BILL OWENS, et al.
    Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP -8 2009

GREGORY C. LANGHAM
~~CLERK~~

Claim Number X-223
Category: Untimely Filed Claim
Claimant: Julius Caesar Herrera, Jr., #119727
Address of Claimant: CCCF, 6564 State Hwy 96, Olney Springs, CO 81062

**RESPONSE TO THE COURT'S 24MAR09 ORDER AS A
SUPPLEMENTAL/AMENDED MOTION TO CLAIM FOR DAMAGES
MOTION FOR OTHER CRUCIAL RELIEF AND
MOTION TO PROCEED IN FORMA PAUPERIS REQUESTING COPIES
OF RECORDS & LEGAL MATERIAL AT NO COST IN ORDER TO
FULLY & RIGHTFULLY LITIGATE THIS MATTER**

    **COMES NOW**, that I, Julius Caesar Herrera, Jr., Respectfully Responds to this Honorable Court's 24MAR09 Order by Respectfully Moving for an Order granting my supplemental/amended claims for damages and other requests for crucial relief, as well as grant my request for copies of pertinent records and other legal documents/material at no cost, so I may fully and rightfully litigate this matter, and as grounds for this Motion, state as follows:  (See Court file for prior filings)

    **1.** The Court asserts in its 24MAR09 Order that "Claimant's request for in forma pauperis must be predicated on outstanding case" and that "Claimant has no pending motions or claims in this case," and that these are the reasons for denying my previous Motions for in forma pauperis.
    However, the Court also asserts, "Claimant's pleadings will be **held in abeyance pending** resolution of the jurisdictional issue." Therefore, doesn't this specific Court action constitute what the Court requires, i.e., that I do have "**pending** motions or claims in this case" and that they are also "predicated on **outstanding** case"? Consequently, giving the Court basis upon which to grant, at the very least, in forma pauperis so I may fully prepare my Motions and their claims with the appropriately copied exhibits, in an effort to move forward and not tie these issues up for future proceedings.

    **2.** Nevertheless, there now is a question whether jurisdiction does exist, as a result of my conviction. Going back and looking at my Judgment of Conviction, I noticed that I was convicted **5** days before the Remedial Plan was adopted, i.e., on 22AUG03. The Remedial Plan was adopted on 27AUG03. Said Judgment also states, "It is the Judgment/Sentence of this Court that the defendant be sentenced to the custody of the Executive Director of the Department of Corrections...Credit for Time served 487 days," which retroactively put me in the DOC, possibly, even way before my 22AUG03 conviction.
    Further, although I was awaiting transfer to the DOC, while at the Moffat County Detention Facility, I was already being discriminated against because of my disabilities where such actions caused me harm. I'm sure the Court will agree that since Moffat County was holding me for the DOC, that DOC policy and Remedial Plan designed for the DOC applied while I was on hold, especially when formally entering the DOC - such discrimination and harm continued to occur. Therefore, it appears that this Court is required to make another jurisdiction determination based on this new information.

3. That the instruction for filing an initial claim for damages states that I am "a member of the Montez class action if (I) have a substantial and permanent mobility...disability...and (my) disability substantially limits (my) ability to perform a major life activity," such as "walking...or working," and that my "disability or impairment must be permanent, which is defined in the Settlement Agreement approved by the United States District Court for the District of Colorado as '[a] condition which is not expected to improve within six months.'"

I perfectly fit all the above before I came into the DOC, since it has been determined by the U.S. Armed Forces, VA, and Military contracted Physicians that I do have such disabilities pursuant to Federal Law. And as this Court is fully aware, Military & Veterans Laws which make these determinations, are also guided by and in compliance with Disabled Veterans Laws and the American with Disabilities & Rehabilitation Act. See my prior filings for this information.

Therefore, it is Respectfully Requested that this Court enter an Order finding me disabled for purposes of the Montez class action and its Remedial Plan, so it will provide guidance and stop DOC's discrimination against me because of my already determined disabilities, and stop and prevent any future harm.

4. The Settlement Agreement approved by the Court provides for five categories of damage claims that may be filed by claimants. I'm now filing 4 as follows, but not limited to:

I. General inconvenience or nominal damages;
II. Damages due to access to programs and services that (have) and have not resulted in physical (and mental) injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as fear of death);
IV. Damages due to severe physical injuries; and
V. Any other damage claim the Court will allow of which I reserve my right to address during the course of these proceedings, as it relates to damages for conduct by DOC, or its employees or agents, where such harmful conduct related to my disabilities and resulted in injury to me.

5. That said instruction also shows other examples of the types of claims for damages I'm allowed to claim damages for, of which mine are as follows, but are not limited to:

"emotional (and) physical pain;...the denial of jobs (and) participation in other programs; denial of access to recreational activities (and) other programs such as chapel, visiting areas (and other) activities; non-physical injuries such as fear of bodily harm because of the lack of accommodations; severe physical injuries, including **worsening** physical condition caused by the lack of proper medical treatment for (my disabilites, other than diabetes, which deserve equal protection pursuant to our Colorado & U.S. Constitutions)...."

And, I also "request compensation for damages in the form of money, as well as other appropriate relief (below)".

6. Therefore, it is Respectfully Requested that the Court allow me to provide additional information about my claim and allow me an opportunity to submit any and all evidence that I have which supports my claim, to include evidence that DOC discriminated against me because of my disability and how such actions have and continue to cause me harm (which includes my Medical & Mental Health Records (DOC); recent Notices to the DOC; VA Medical & Mental Health Records (consisting of Military Records); legal administrative correspondences, and so forth).

In addition, it is also Respectfully Requested that the Court grant my request for such copies of pertinent records and other legal documents/material at no cost, so I may fully and rightfully litigate this matter. Please note that from the time of my original filing of my initial claim form, I have gathered more evidence and there's other evidence that must be gathered (which I'm unable to pay for), and all such evidence (over 200 pages) must be copied for this Court in order for me to prove my claims. Further, it's not my fault that the DOC decided to disobey and disrespect this Court's Orders-resulting in such requests, and I should not have to pay for their misconduct. They should.

(2)

7. On 28JUL09, a Montez class action meeting concerning mobility disabilities was conducted here at CCCF by Mr. Ed Ramsey - Montez class counsel through King & Greisen. I conferred with him 2 crucial issues I have and asked him what he believes I should do about them. He advised that I should file requests with this Court for relief to remedy those issues.

8. Therefore, as for my first request, I Respectfully Move this Court to enter an Order allowing me to Opt Out of placement at any of the Remedial Plan's designated facilities if the DOC decides to finally determine that I do have a mobility disability, as well as Order that I be allowed to stay at the Private Facility where I'm currently being housed, i.e., here at Crowley County Correctional Facility (CCCF). As grounds for these requests, I state as follows:

(a) That Paragraph VI(C) of the Remedial Plan allows for an inmate to Opt Out of placement at a designated facility. Although I have directed a letter to the DOC making this request, I have not received a letter of response. Therefore, in order to ensure that my request is granted in an effort to resolve my crucial issues below, I've come to the Court for an Order.

(b) That I'm receiving much better Medical Health Care & Treatment (accommodations) from the Private Facility (CCA-CCCF) where I'm currently being housed (as I've also received from CCA-KCCC), than I've ever received from any DOC facility. In fact, if the Court recalls, I've expressed how DOC's CICF retaliated against me with "malicious, sadistic, and evil intents" as they "discontinu(ed)" all "Medical & Mental Health Care & Treatment Services" and "ruthlessly t(ook) me completely off of all PRESCRIBED & ORDERED said accommodations," of which CCA-KCCC Physicians and other Health Care Professionals were providing me with, in an effort to meet the generally accepted standards of Medical & Psychiatric Practices, which help determine what accommodations are warranted. See my prior filings.

(c) Of course, CICF was not the only DOC facility that inflicted such cruelty and discrimination against me because of my disabilities. This also occurred at the Denver Reception and Diagnostic Center, Sterling Correctional Facility, and Fremont Correctional Facility. Some of the various forms of retaliation and reprisals inflicted (some assaults), have taken a severe toll on my Medical & Mental Health, by also impairing and slowly disintegrating my overall health further.

(d) However, the Private Facility (CCA-CCCF) where I've been housed for the last 1 year and 5 months, has not conducted itself with said misconduct towards me. In fact, of the requested accommodations in my "Request For Accommodations", dated 20APR07, and other requests made, CCA-CCCF has provided 11 of them, to include:

> toilet paper, lower-bunk restriction, extra thick mattress, medical cell, cane, Naproxen, Prilosec, Zantac, Phenergan, Imodium, and have identified me as a person who is physically unable to perform labor, "unable bodied", thus restricting me from any and all work activity in an effort to avoid injury to myself.

Even CCA-CCCF non-medical staff and COs have shown a courteous and considerate approach to both my Medical & Mental Health, while also exhibiting themselves with Professionalism. Something you almost never see in a DOC facility. Also note that CCA-CCCF recently won an award for best Medical Dept.

(e) Upon inquiring into all other so called Medical Facilities, between other inmates and Montez class counsel, information has been consistent that I would most likely receive the same type of egregious treatment that I've already received by the CDOC facilities I've been housed at. As the DOC is now allowed to move me at their discretion, this brings me great fear, since this leaves the door opened for the DOC to retaliate against me in the same manner as before and, consequently, allows them to create those same circumstance that will negatively effect my overall Health to a much more severer state.

Moreover, these so called Medical Facilities designed especially to accommodate inmates with specific disabilities, are not Medical Facilities by far. They are more what one could easily call, "DOC's Way Of Inflicting Cruel & Unusual Punishment For Having A Disability."

The question is how can I come up with such an extremely harsh and profound conclusion and picture of a particular group of people or system? The answer is simple. I was a Hosptial Corpsman in the U.S. Navy with extensive education, training, and experience in the Medical Field who also specialized in Emergency - Field Medicine. And in all my years, I have never seen nor experienced these sorts of sinful acts by any Institution in the United States, as those performed by the DOC.

Of course, that's unless you go into other Countries (especially poor ones) where statutory and constitutional rights do not exist. Even Terrorist being held as prisoners receive better Medical & Mental Health Care & Treatment than inmates do in the DOC. Believe me, I know.

**(f)** Therefore, shouldn't the Court use the treatment that CCA-CCCF has provided to myself, as an example of how the Montez Remedial Plan can work for all DOC facilities, as well as for inmates at CCA-CCCF or any other Private Facility who may not be receiving the appropriate accommodations? Although my medical and legal knowledge did lend a very helpful hand to my approach of pursing my accommodations, the fact remains that it does work; especially, when the appropriate Medical & Mental Health Care & Treatment is geared towards determining the various sorts of accommodations required on an individual case-by-case basis.

I believe that this is something of great interest to the Court, since it will help solve many of the repeated issues before it, possibly create a procedure or system that does work for everybody, result in the DOC complying with the Remedial Plan, and end this Case once and for all with new rules of constitutional law mandated for the DOC to follow for future purposes.

**(g)** Nevertheless, another concern is the Heart problems I'm having, most likely as a result of the poor to no treatment and accommodations by the DOC. Right now, CCA-CCCF is in the middle of taking various appropriate measures in an effort to determine why I'm having Atrial Fibrillation attacks - when the Atria (top portion of the heart) malfunctions and causes heart arrhythmias, which can lead to other medical conditions. I'm sure the Court will agree that we should not disturb such measures being taken-geared towards appropriate treatment. This will be discussed further below.

**(h)** I recently successfully completed the "School of Christ Program", which took 1 year, and was recently given the Honorable position of Character Coach in the "School of Christ Program" with the responsibility of coaching and guiding other inmates in this program, and do not wish to loose the spritual well-being that goes along with helping others while exercising my freedom of religion rights. This, of course, is also consistent with my having only 3 points - a minimum custody/security level and not being a trouble maker.

Additionally, even the Warden has written me a letter asserting, "...It is refreshing to see that you have and are maintaining an attitude of optimism and looking for the positive in all situations. I compliment you on your outlook and attitude...." I'm told that the Warden never writes these sorts of letters to inmates.

**9.** As for my second request, I Respectfully Move this Court to Order the DOC to continue my treatment with Klonopin (Clonazepam), and as grounds for this request, I state as follows:

**(a)** Dr. P. Mayerson, Staff Psychiatrist for CCA-KCCC (Kit Carson Correctional Center) determined that Klonopin would, indeed, be the best course of Medical & Psychiatric Health Care & Treatment and prescribed Klonopin to me, despite it being a non-formulary. Further, Dr. Mayerson even expressed deep concerns and argued on my behalf with CCA Headquarters in an effort to also keep me on Klonopin, of which they approved.   I was on Klonopin for approximately 2 years while in the DOC.

**(b)** Dr. Mayerson's reasons for prescribing me with Klonopin were for the positive effects it has on my physical conditions/disabilities, as well as Psychiatric disorders, which are:

> reduces my severe GERD, nausea, and vomiting, thus the healing of erosive esophagitis while increasing my lowered appetite; decreases my severe IBS/Spastic Colon Attacks, associated diarrhea, and digestive and abdominal pain and spasms; reduces my severe and persistent mechanical lower and upper back, cervical, and leg pain and spasms, and Sciatica with limping; reduces

(4)

my associated severe Headaches, Migraines, and Tinnitus; lowers my pain and spasm induced High Blood Pressure; increases my ability to function and think clearly; and no seizures; to include the treatment of my severe cases of Posttraumatic Stress Disorder (PTSD) & Panic Attack Disorder; consequently, allowing me to HEAL both Physically & Mentally.

If the Court recalls, I was shot in the abdomen and lower spine while serving in the U.S. Navy which resulted in a colectomy; deep penetrating and massive muscle damage; right leg sympathectomy; left and now right sciatica; fracture of my lumbar spine vertebrae with several herniated and bulging intravertrabral disc; and septicemia induced seizures with spiking fevers of up to 107 which severely damaged my abdomen/internal organs, small and large intestines, various muscle groups, and other systemic functions. On a separate incident, I received a cervical spine fracture. Consequently, I now receive VA disability compensation benefits for the above. See prior filings for this information.

**(c)** The question is, how are most of the above physical conditions and psychiatric disorders relevant to my mobility disability and the Montez class action? - and by what authority can the Court go by to Order the DOC to continue prescribing Klonopin, and, what other pursuasive reasons are there for the Court to consider? Please let me explain as follows:

**(I)** From the time DOC ruthlessly took me off of Klonopin, my GERD with nausea and erosive esophagitis has become much more severer - causing me to vomit more frequenlty which consequently repeatedly re-injures my whole spine; my IBS/Spastic Colon Attacks have worsened with severer digestive and abdominal pain and spasms, going up and down with constipation, thus re-injuring my spine during bowel movements; my mechanical and lower and upper back, cervical, and leg pain and spasms, and sciatica with limping, have all exacerbated to such a severe state, that now both my hips and right leg have been traumatized to the point of injury; that such lower back, hip, and leg pain and spasms, join forces with my upper back and cervical spine pain and spasms - resulting in more frequent headaches, migraines, and tinnitus; the above and below have caused my blood pressure to increase while each attack each other and, consequently, take a serious toll on my mobility - disintegrating it from all directions, little by little, with **severer recent** pain, spasms, and neuropathy to lower extremities.

**(II)** That the Military, VA, and Civilian Medical Professionals, to include DOC's, have characterized that my Psychiatric conditions are fighting and attacking my Physical conditions, and vice versa (fighting and attacking each other), thus making it important to consider the relationship between my Mental Health conditions versus my Physical conditions. Moreover, it is now also crucial to consider the toll all this has taken on my Heart (Atrial Fibrillation attacks) and how treatment should now be aimed at prevention, from both Mental & Physical Health standpoints, together and contemporaneously, and determine what accommodations are required, along with prescribing Klonopin.

Recent 2008 and 2009 studies have determined that moderate to severe cases of anxiety (including depression) are contributing factors to Heart Disease. As I've suffered from severe PTSD & Panic Disorder for such a lengthy period of time, since 1993, it's certainly understandable how these disorders have increased in severity as a result of the added fear and anxiety that goes along with my Heart situation; with the evil, cruelty & mistreatment that DOC has subjected me to; with the anticipation and worries of having no Court Orders to protect me from future DOC inflictions and taking my accommodations away again; with the psychological and emotional repercussions created by my overall impaired state of mobility - such physical disabilities which exacerbate these mental health disorders and vice versa; and the list goes on with a pattern of consistent deterioration.

The above are just some of the many reasons Dr. Mayerson prescribed Klonopin. Although Klonopin is primarily used for the treatment of PTSD & Panic Disorder, Klonopin also treats many of my mobility impairments and complications, as well as other physical conditions which exacerbate my mobility disability, consequently an overall treatment for just about all my disabilities/conditions.

**(III)** The United States Constitution specifically enforces that I shall not be deprived nor denied equal protection of the laws. That said, this Court has Ordered in its Remedial Plan many areas and forms of medical treatment for Diabetics, and it's only fair that I receive the equal protection of the laws of this Court, meaning, that I, too, be provided with an Order for medical treatment with

Klonopin. In paragraph XV of the Remedial Plan, the Court Orders:

> "Specific training shall be provided to all staff who are involved in providing...services to inmates regarding the need to be cognizant of the special requirements of diabetics, including their need for access to...medication administration timing, as well as the symptoms related to diabetes-related complications....Staff shall be trained regarding what emergency procedures need to be taken with respect to these symptoms, including the need for immediate intervention and medical attention. Inmates with diabetes complaining of dizziness, disorientation, and other symptoms...shall be provided immediate access to medical personnel....Medical staff shall receive specific training regarding all aspects of the care and management of inmates with diabetes.... Linda Edwards, in cooperation with DOC medical staff, shall design a plan and assist with the implementation of the training of medical and non-medical staff, and the inmates, regarding diabetes issues."

    Indeed, such Court Orders of having to be cognizant of the special requirements of diabetics; medication administration; training regarding emergency procedures, immediate intervention and medical attention; immediate access to medical personnel; and specific training for Medical staff in the care and management of diabetics, which would all include the administering of prescribed insulin and/or diabetic medication, is clearly Ordering the actual treatment with insulin and/or diabetic medication, for without such treatment, we'd consequently end up with either dead inmates or inmates suffering as I do-(when I'm without Klonopin).

    **(IV)** Even the Psychiatrist here at <u>CCA-CCCF</u> was seriously considering prescribing Klonopin to me. However, because DOC Health Professionals entered misstatements inadvertently and/or fraudulent entries (forged written instruments) into my Medical & Mental Health Records-because I had filed several Greivances against them, said entries became inconsistencies which negatively affected and undermined his original decision of 12DEC08 to prescribe Klonopin to me. A serious consequence of the various times DOC retaliated against me.

    **(V)** Nevertheless, if you recall a letter of support with my diagnoses, dated 12FEB99, from the VA's Dr. Ralph J. Koek, MD, Staff Psychiatrist, he asserted, "Even with several years of intensive specialized treatment, the patient has not been able to completely recover from the emotional effects of the trauma," that "Mr. Herrera remains disabled from any form of gainful employment due to the combination of PTSD and his physical injuries," and that "this is true despite some improvements in his symptoms with medication." Said medication was either Xanax or Klonopin, both are benzodiazepines, of which one was always prescribed to me for treatment. See my prior filings for this information.
    Throughout those expressed "several years of intensive specialized treatment", numerous and different types of medication were used and tested in a process of elimination, so we could determine which medication actually treats both my Psychiatric disorders and Physical conditions best. However, that was not good enough for me-because I was sick and tired of taking so many other medications; therefore, my main objective was to get off of the narcotics/pain killers and anything else I could get off of, so I could then take the least amount of different types of medication and at minimal doses.
    Throughout that process and those years, Physicians always found themselves going back to pre-scribing a benzodiazepine for the treatment of my PTSD & Panic Disorder, as well as for treating my various Physical disabilities/conditions. Dr. Koek, as other Physicians, determined that prescribing a benzodiazempine, together with an anti-inflammatory/analgesic such as Motrin or Naproxen as needed, a High Protein High Fiber Diet, and limited exercise, would be the best and appropriate course of Medical & Mental Health Care & Treatment, for the most part. This then allowed the elimination of about 6-7 different types of medication and dramatically decreased, if not eliminating completely, the usage of medications like Imodium, Zantac, Prilosec, Pepto-Bismol, Tylenol, Aspirin, Valium (or any other muscle relaxers), diuretics, high blood pressure medication, beta-blockers, anti-depressants, strong pain kiilers, and so forth. Thus, my objective completed. (also Dr. Mayerson's reasons)
    The medications I'm taking now consists of the above and more, which Physicians have described will take a toll on my vital organs, which is starting to occur, such as my liver, kidneys, and heart.

**(VI)** Another reason for CCA-CCCF refusing to prescribe Klononpin (even though CCA has approved it before), is because Klonopin is a DOC Non-Formulary Drug which does not allow them to provide benzodiazepines to inmates. Understandably, this is because of the abuses, misconduct, drug additions, and so forth by inmates, and pretty much the stereotyping that goes along with it all, which messes it up for those of us who really do need these types of medications, thus discriminating against me as a result. As an alternative, I've been prescribed psychotropics that create some harsh adverse effects, as well as deteriorate vital organs and one which contributed to my Atrial Fibrillation attacks, as they do not improve mobility, but do impair it by affecting me with extreme vertigo.

However, not only does Klonopin treat the conditions which impair my mobility - consequently allowing me to walk and move around much better and more easily with less pain, spasms, and stiffness, to include improving my other physical conditions, but it also diminishes the Atrial Fibrillation attacks I've been having (on a regular basis) and does not have those horrible adverse side effects nor does it deteriorate my vital organs. And let's not forget, Klonopin is actually serving as an accommodation, since it helps improve my mobility and allows me to be more functionable, as does my cane and other items to brace myself with; consequently, allowing me to participate in and enjoy the benefits of services, programs, and other activities which does not discriminate against me because of my disabilities.

**10.** The alteranative courses of treatment and unlawful policies of the DOC, do not only negatively effect accommodation determinations, but such courses and policies also result in alternative and unlawful accommodations in violation of our Colorado & Federal Laws & Constitutions. For example:

In <u>Ciarpaglini v. Saini</u>, 352 F.3d 328 (7th Cir. 2003), the plaintiff alleges that his "medication for...panic disorder was improperly terminated. His allegations that his resumed panic attacks cause him to suffer heart palpitations, chest pains, labored breathing, choking sensations, and **paralysis** in his legs and back sufficiently alleges 'imminent danger of serious physical injury' under 28 U.S.C. § 1915(g) and allows him to proceed **in forma pauperis**," which is exactly the same situation I'm undergoing with the DOC and, consequently, taking a toll on my mobility (notice "paralysis in his legs and back" - defined as neuropathy, just like me).

In <u>Mckenna v. Wright</u>, 386 F.3d 432 (2nd Cir. 2004), the plaintiff alleges "unlawful policies" (as those of the DOC) which "resulted in the denial of treatment"; therefore, "when allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program (which I made very clear), his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of alleged unlawful policies within his supervisory responsibility." Yet, the same unlawful policies concerning Non-Formulary Drugs; consequently, discriminating against me and being responsible for my worsened state of mobility.

Further, in <u>Brown v. Johnson</u>, 387 F.3d 1344 (11th Cir. 2004), the Court held that when the plaintiff's "medication stopped that will cause many conditions," that it then falls within the "imminent danger of serious physical injury"; therefore, it is "liberally construed, (plaintiff) alleges a total withdrawal of treatment for serious diseases, as a result of which he suffers from severe **ongoing complications**, is more **susceptible** to various illnesses, and his condition will rapidly **deteriorate**," which is exactly what I've explained to the DOC; yet, they continue to withdraw treatment with Klonopin - consequently inflicting more suffering & detorioration which impairs my mobility even further.

Furthermore, in <u>Rosado v. Alameida</u>, 349 F.Supp.2d 1340 (S.D. Cal. 2004), the Court held, "In order to prevail on a claim involving choices between 'alternative' courses of treatment, a prisoner must show that the course of treatment the doctor chose was **medically unacceptable in light of the circumstances** and that they chose this course in **conscious disregard** of an excessive risk to plaintiff's health," which I've clearly shown and proven to the DOC, but still alternative courses to no course at all with the same negative consequences.

Lastly, "Prison officials may not **'block'** access to treatment for reasons of prison 'management' and is in violation for prison to **'discourage'** certain prescriptions," such as benzodiazepines prescribed for the appropriate course of treatment of various physical and psychiatric conditions - which leads to improved mobility, thus access to services, programs, and other activities which, again, does not discriminate against me because of my disabilities.

(7)

I know how these Case Laws are from other Circuits, but I'm sure the Court is familiar with 10th Circuit Case Law that correlates with them and, therefore, request that they be incorporated in this Motion.

11. That the DOC directed to me an Accommodation Resolution, dated 16SEP09, by the DOC-Chief Medial Officer which states, "A DOC medical provider and the Chief Medical Officer have determined that you do not have a qualifying ...mobility, or mental health disability pursuant to the mandates of the Americans With Disability/Rehabilitation Acts (ADA), therefore you are not entitled to accommodations." Please note that the "medical provider" was a Nurse Practitioner and not a Physician. Plus, the evaluation did not meet the generally accepted standards of Medical & Psychiatric Practices.

What shocks me even worse, is that the DOC is fully aware that the Military & VA have already determined me to be disabled. Nevertheless, let me provide some persuasive Case Law showing I do fall under the ADA, and show them as follows:

In Colwell v. Suffolk County Police Dept., E.D.N.Y. 1997, 967 F.Supp. 1419, new trial denied 1997 WL442190, reversed 158 F.3d 635 certiorari denied 119 S.Ct. 1253, 526 U.S. 1018, 143 L.Ed.2d 350, "Testimony from doctor and police officer was sufficient to support jury's finding in ADA case that officer's lower back injuries had rendered him 'disabled' within the meaning of ADA at time he had been denied promotion: doctor characterized officer's condition as 'chronic' lower back syndrome with left leg sciatica with increasing symptomatology, and officer testified that excruciating pain in lower back which traveled down his left leg impaired his ability to sit, stand, and walk."

Moreover in Colwell, "Evidence supported jury's finding that police officer who suffered from chronic degenerative disc disease was 'disabled' within meaning of ADA, though ADA standard of substantially limiting a major life activity' was not mentioned during testimony of either doctor or officer; doctor testified that officer was incapable of performing majority of his police duties, and officers injury had made it more difficult for him to drive and rendered him unable to do heavy lifting, to bend over for long periods or to sit or stand for extended periods of time."

I could not say enough how the Colwell Case fits mine like a perfect glove. The only difference is that my condition is a lot worse, that I have left and right leg sciatica where excruciating pain goes done both my legs with also neuropathy, and I cannot bend over. Otherwise, everything else is about the same with respect to injury, conditions, symptoms, and how it impairs my ability to sit, stand, and walk.

In addition, in E.E.O.C. v. Yellow Freight System, Inc., S.D.N.Y. 2002 WL 31011859, Unreported, "Truck driver, whose back condition was permanent, and permanently symptomatic, was disabled within meaning of American with Disability Act (ADA) since he was substantially limited in major life activities of sitting; driver could sit for, at most, 45 minutes at a time without experiencing pain that required him to stand up and stretch, and even when he did get up and move around, the pain in his back would only diminish, and not recede entirely."

Again, my case is so much more worse. The question now is, why did the DOC-Chief Medical Officer put herself in such a position of making such an inaccurate determination? In light of all the information and evidence I've previously submitted to this Court, did this action come from some sort of a inadvertent misstatement based on misunderstanding or misconception? Or, is it simply fraud? If neither, then what is it, Your Honor?

On 12 & 26MAR09, another MONTEZ/ADA (mobility) Evaluation was conducted by Dr. Cabling. Since then, I've requested a copy of said evaluation from the AIC because it was not in my Medical Record pursuant to Law. I'm curious to find out what the DOC-Chief Medical Officer will determine this time; if the pattern of errors, violations, or misconduct has stopped; and if this new method of conducting disability screenings will actually work this time. I will keep the Court informed.

12. In concluding for now, during said meeting with Mr. Ramsey, on 28JUL09, I also asked him why the Court has not considered charging the DOC with criminal charges, since some of their unlawful actions warrant probable cause findings for actual criminal offenses? He said that one thing the Court could do, is charge the DOC with contempt of Court for their repeated non-compliance, which I believe is a start.

However, this brings about more question, e.g., since the Montez class action has taken so long as a result of the DOC's non-compliance and violations against the Court's Orders, as well as various forms of misconduct towards inmates which constitutes the commission of various sorts of criminal offenses, but despite the Court imposing some very light sanctions on the DOC for such conduct, the DOC just never seems to ever learn their lesson, then, shouldn't the Court consider some harsher sanctions so that DOC takes the Court more seriously and, consequently, forces them to comply?

It's like a child who continues to disobey his parent, but the parent let's him continuously slide, and because the child still gets to eat his candy too, and never gets punished for any of his disobedience, well then, the child is simply never going to ever learn anything. Similar to a criminal who constantly gets away with murder. It gets so easy for him that he's just going to murder again, and again, and again, if you let him.

13. I Respectfully Make this Response & Motions pursuant to the Federal Americans with Disability & Rehabilitations Acts, as well as pursuant to Due Process, Equal Protection, Right to Effective Assistance of Counsel, Right to Appeal, Cruel & Unusual Punishment, and Trial by Jury clauses of the Federal & Colorado Constitutions, and any Articles to the Colorado Constitutions or Amendments to the U.S. Constitution, or any Statutes, Codes, Laws, Rules, Case Law, and so forth which would apply and should be asserted;

-AND-

pursuant to Title 18 U.S.C. Ch. 96 - Federal RICO Act, Title 18 U.S.C. Ch. 73 - Federal Obstruction of Justice Act - Congressional Findings & Declaration of Purposes and Federal Guidelines for Treatment of Crime Victims & Witnesses in the Criminal Justice System, Title 10 U.S.C. Ch. 47 - U.S. Armed Forces - Uniform Code of Military Justice (U.C.M.J.), Veterans Laws, and whatever else a licensed attorney or this Court would deem necessary for this pleading.

WHEREFORE, I Respectfully Pray that this Honorable Court enter its Orders: (1) granting my supplemental/amended claims for damages; (2) granting in forma pauperis that specifically allows me copies of pertinent health records and other legal documents/material at no cost to me so I may fully and rightfully litigate this matter; (3) making another jurisdictional determination based on my newly asserted information; (4) finding me disabled for purposes of the Montez class action and its Remedial Plan; (5) allowing me to Opt Out of placement at any of the Remedial Plan's designated facilities and allowing me to stay at Crowley County Correctional Facility; (6) compelling the DOC to continue my treatment with Klonopin; (7) considering the imposition of harsher sanctions on the DOC for contempt of Court and other forms of violations and misconduct; and (8) on whatever other issues this Court deems necessary.

RESPECTFULLY SUBMITTED this 29th day of August, 2009.

*Julius Caesar Herrera, Jr.* #119727
CCCF, Unit 1C-3313
6564 State Hwy 96
Olney Springs, CO 81062

(9)