IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL RITTER, et al.

      Defendants.

_____

Claim Number 03-465
Category III
Claimant: Allen Fistell, #63253
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on June 19, 2009. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Allen Fistell (Claimant) and Robert Huss, attorney for Defendants.

Claimant called the following individuals as witnesses: David Bryan; Major Curtis Robinette; Sharon Grobe; Martin Fistell; Sergeant Christopher Newman; and Claimant. Defendants offered into evidence Exhibits A thru C, and all were admitted. Defendants requested additional time in which to submit an affidavit from a physician concerning Claimant's medical condition. Both sides were granted up to and including August 3, 2009 in which to submit additional exhibits. Further time was requested and granted. Defendants have submitted an affidavit from Dr. Gagandeep Singh, M.D. Claimant has filed a response to that affidavit. Further argument and documents will be waived.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant initially came into DOC custody on November 4, 1993. Claimant was evaluated at the Denver Reception and Diagnostic Center (DRDC). He was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant remained at BVCF until July 3, 1995 when he was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant was transferred to FLCF on December 18, 2008.

Claimant filed his damage claim form on April 21, 2009. He checked the box for mobility impairment. In response to the question requesting a description of the disability, Claimant stated, in part, as follows:

I have severe back problems which cause lower mobility problems with my legs. I have had four back surgeries, and now have a (SCS) Spinal Cord Stimulator implanted which helps control the pain in my right leg, but does nothing for the pain in my left leg. The SCS was implanted in 2001 or 2002, because of nerve damage (sciatica) caused by degenerative disk disease and bulging disks. I am being evaluated for another surgery on my back to help with the problems with my left leg,

3

which will allow the SCS to help the pain in my left leg. The SCS only helps to reduce the pain and does not cure my permanent disability, but allows me to walk with the use of a cane, most of the time. At times I need to also use a Williams Back Brace (ordered by Dr. Koons the neurosurgeon who did my back surgeries), Canadian crutches or a wheelchair. At all times I must use at least the SCS and my cane to walk.

In response to the question concerning discrimination by DOC and its staff, Claimant stated, in part, as follows:

> I was working at Office Equipment Repair and fired from my job because of the need to wear Tennis Shoes (due to my disability). The shop was out the back gate at FCF, however it was still within the two fence perimeter. There was a blanket policy written that didn't allow anyone out the back gate wearing tennis shoes, or orthopedic shoes regardless of their disabilities. I went through the full grievance process and was denied. Note: I had worked at OER for many years prior to this policy wearing Tennis Shoes with no problem. The discriminatory action was removing me from my employment at OER because of my need to wear tennis shoes due to my disability.
> In 2005 FCF removed the handrails from my cell (around the toilet)....
> In November of 2008 FCF removed the handrails from the showers.....
> The discrimination has now been taken new heights since being transferred to FLCF on an ADA move. I have now had important durable medical equipment taken from me which further impairs my ability to function even close to the level of other inmates. i.e: Williams Back Brace, Canadian Crutches, Wrist Brace, Heating Pad; Medical Mattress; and Wheelchair, etc.....

In response to filing of the claim, the Special Master issued an order directing further information be provided. In the additional information, Claimant stated that he became disabled in 1989 before coming into DOC custody. He further responded to the question concerning the dates of discriminatory conduct by DOC as follows:

> 2. 2003-2004 (Tennis Shoes) continued until I was moved from FCF in 2008. Removal of handrails around toilet in 2005, removal of handrails in showers 2007.

Claimant presented a number of witnesses at the hearing. David Bryan is in the custody of DOC and has known Claimant since 1995. Mr. Bryan has seen Claimant fall down on more than one occasion. Mr. Bryan was aware that Claimant had a job at the office equipment repair program but lost it because he wore tennis shoes. Mr. Bryan also wore tennis shoes and had a special permit for them. He was aware that Claimant could not receive a renewed permit for tennis shoes. Mr. Bryan testified that Claimant is an excellent electronics repairman.

Mr. Bryan testified further that Claimant had a cane that he used for mobility. Claimant always used his cane for support. Mr. Bryan did not believe that Claimant could walk without his

cane. He was aware that Claimant had a spinal cord stimulator. On occasion, Claimant has had to use a wheelchair. Claimant also tries to get by without pain medications. Mr. Bryan was aware that Claimant lost some property when he arrived at FLCF. Some items were returned, but others were not. Mr. Bryan was aware that Claimant had missed religious services at FCF due to the lack of a wheelchair for transport. On cross-examination, Mr. Bryan was aware that Claimant was in chronic pain. Mr. Bryan also was aware that tennis shoes were prohibited as a policy at FCF.

Claimant called Major Curtis Robinette as a witness. Major Robinette is the programs manager at FLCF. Major Robinette did not remember a conversation with Claimant in March 2009.

Ms. Sharon Gobles testified that she lives in Arvada and is the sister of Claimant. She was aware that Claimant was disabled before entering into DOC custody. She was aware that Claimant needed to use a cane. She also recalled talking with her brother concerning the removal of hand rails at FCF. On behalf of her brother, she had called many individuals concerning the hand rails. She also was contacted by Claimant after the property was taken from him.

Martin Fistell is the brother of Claimant. He testified that Claimant was disabled prior to going into DOC custody. He called a number of DOC officials in 2005 when the handrails were removed at FCF. He was aware that Claimant had fallen in the shower at FCF. Mr. Fistell also testified that Claimant had discussed with him the taking of his property on arrival at FLCF. Mr. Fistell did not believe that Claimant could walk without his spinal cord stimulator and case.

Sergeant Christopher Newman is assigned to FLCF and supervises property of inmates. Sergeant Newman was not aware of any ADA restrictions when Claimant arrived at the facility. Some property was taken from Claimant and not returned. A large back brace was not returned to Claimant. A number of items were reviewed by security and medical. The back brace was taken because it contained metal that could be used as a weapon. Sergeant Newman was aware of permits for some items from other facilities, but each facility has to do its own evaluation. The back brace was destroyed and not returned. On cross-examination, Sergeant Newman testified that no ADA accommodation resolution was in effect in early December 2008.

Claimant testified that he arrived into DOC custody in September 1993. Prior to his conviction, Claimant had been involved in motorcycle and car accidents in the late 1980's and early 1990's. As a result of the accidents, he suffered spinal damage and was in a wheelchair for a period of time. He has had chronic pain since the accidents.

In 1996-97, Claimant had surgery on his back for a herniated disk. Due to his spinal injuries, Claimant was experiencing weakness in his legs. Other test were performed and it was determined that there was probable nerve damage to his right leg. The spinal cord stimulator was installed to help block the pain. Claimant believes that he may need surgery for both legs in the future.

Claimant testified that he was given a permit for tennis shoes in 1995-96. He had permission to wear tennis shoes until 2002. The rule changed in 2002 at FCF and individuals were not allowed to wear tennis shoes and travel beyond the first fence. This led to Claimant being laid off from his

5

job in the office equipment repair program. It also cost Claimant loss of income, as that position had paid more than most other positions at FCF. Claimant did try wearing DOC boots but it did not work. Claimant was relegated to a job as a porter in the cell house. He described the job as meaningless.

In 2007, FCF banned tennis shoes entirely except when inmates went to the yard for recreation. Claimant had difficulties with his feet when he had to wear DOC boots. Claimant also testified concerning the loss of the handrails in his cell and in the shower. Claimant testified that he made a request for accommodations in 2005. He was reluctant to take a shower at FCF after the hand rails were removed. Claimant believes that he has been disabled during the entire time he has been in DOC custody.

Claimant testified that he had a permit for his back brace and had used it for thirteen years at FCF. The brace was taken from him when he arrived at FLCF. He was told that it would be evaluated by the medical department and then returned. It never was returned and was destroyed. He received Canadian crutches in the fall of 2007 but those were taken after thirty days. Claimant testified further that no inmates at FLCF have Canadian crutches. Claimant also indicated that he had a heating pad and medical mattress at FCF. The medical mattress was taken from him on arrival at FLCF.

On cross-examination, Claimant testified that he had not filed his claim earlier because he was fearful of losing some of his property and rights. Claimant had been at FCF for several years and had a cell with handrails. Those were removed from his cell and later the shower. Claimant was fearful that he might be moved and lose his religious community, as he is Jewish and there were several Jewish inmates at FCF.

Defendants have submitted an affidavit from Dr. Gagandeep Singh, M.D. In that affidavit, Dr. Singh details the medical history of Claimant since he came to DOC custody. He notes that Claimant has had various accommodations over the years. These accommodations have included back braces, heating pads and tennis shoes. Over the years that Claimant has been in custody, the accommodations have changed or have been taken away. Dr. Singh noted further that DOC staff have determined that Claimant has been mobility impaired at some points in time and then determined not to be disabled at other points in time. Dr. Singh noted that policy at FCF had changed concerning soft soled shoes.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his mobility impairment on or before August 27, 2003. If he so

establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

This case reflects what has improperly evolved over the years in violation of the ADA and Rehabilitation Act. Claimant has suffered significant injuries prior to coming into DOC custody. He was granted several accommodations in 1996. The record is clear that DOC staff considered Claimant to be mobility impaired in the mid-1990's. This was not unreasonable in light of the surgery that he had and the need that existed for a spinal cord stimulator.

The evidence reflects that nothing has changed in Claimant's physical condition. What has changed is the view of Claimant as being mobility impaired. As Dr. Singh's affidavit reflects, Claimant has been determined to be impaired on several occasions by DOC medical staff and then determined not to be disabled by others. Claimant, as well as others similarly situated, has the right to some uniformity of treatment. Changing facilities or housing units should not affect the status of Claimant or others. The criteria for evaluation is supposed to be uniform. It is not, as shown by this case.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

Claimant was determined to be mobility impaired in 1996. From the evidence presented, nothing has changed since 1996. Claimant has mobility issues and is mobility impaired. He has difficulty walking and standing. He was a member of the class as mobility impaired in 1996 and remains so at the present time.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Two areas of discrimination have occurred in this case. First, Claimant was employed as an electronics technician at FCF for several years. The evidence presented reflects that he has expertise in this area and worked on radios, televisions, and other items. This job was one that provided more than minimum payment. Claimant lost that job because FCF changed its rules concerning wearing of soft soled shoes to the work area. This was alluded to as a security issue, but no evidence was

presented to justify such an assertion.

Claimant had a choice. Either he could wear issued boots that created problems for his feet or he could lose his job. Claimant ended up losing his job because he could not wear state issued boots. No evidence was presented by Defendants as to why an accommodation could not have been made to allow Claimant to continue to work in the electronics field. The Hobson's choice facing Claimant is exactly what the ADA prohibits.

The second area post-dates the approval of the Settlement Agreement. Conduct by DOC staff toward Claimant has been on-going since 1996. The Settlement Agreement provides that some facilities in DOC were to become ADA facilities. Inmates with disabilities would be housed only at these facilities. Other correctional centers would not have any ADA-qualified inmates. FCF was a facility that would not have disabled inmates.

Claimant remained at FCF despite having been considered for years as mobility impaired. As time went on, Claimant lost the handrails in his cell at FCF, as well as handrails in the shower. Claimant testified that the loss of handrails placed him in danger of falling. The Special Master finds that the loss of handrails reflected the "on again, off again" nature of DOC's evaluation of Claimant. In light of extensive records with medical staff dating back to Claimant's entry into DOC, Claimant should not have remained at FCF after the decision was made to not designate FCF as an ADA facility.

The treatment of Claimant has been inconsistent over the years. He has argued that other acts of discrimination may have occurred. He may be correct, but the two noted areas of discrimination have been proven by a preponderance of the evidence.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** The loss of the electronics repair job cost Claimant money because the job paid better than other available work. The Special Master determines that Claimant is entitled to damages in the amount of $1,000.00.

IT IS HEREBY ORDERED that the claim of Allen Fistell has been proven as detailed in this order, and Claimant is awarded damages in the amount of $1,000.00; and

IT IS FURTHER ORDERED that the remainder of the claim of Allen Fistell has not been proven by a preponderance of the evidence and is dismissed; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 14, 2009.**

SIGNED this 25th day of September, 2009.

8

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master