IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL RITTER, et al.

      Defendants.

___

Claim Number 03-468
Category III
Claimant: Gary Lynn Arellano, #69948
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

___

## FINAL ORDER OF SPECIAL MASTER
___

      THIS MATTER came before the Special Master for hearing on September 11, 2009. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Gary Lynn Arellano (Claimant) and Chris Alber, attorney for Defendants.

      Claimant called himself as a witness. Defendants called Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits E through G and BB, and all were admitted. The case was taken under advisement after closing arguments.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by

___

      [1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
>     B. QUALIFIED INMATE
>     Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

only the jurisdiction agreed upon by the parties.

       C. PERMANENT DISABILITY/IMPAIRMENT
      A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

  On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
      1. Is the claimant a disabled individual who is a member of the class?
      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

  Claimant initially came into DOC custody on January 28, 1993. He was placed into the Denver Reception and Diagnostic Center (DRDC). He was transferred to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado where he remained until August 24, 1993 when he was transferred to a community placement. That placement failed, and Claimant was returned to DOC custody and housed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. He returned to BCCF and then was granted parole. Parole failed, and Claimant returned to DOC custody and went to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He remained there until July, 1995 when he went back to BCCF. He discharged this sentence on November 24, 1995.

  Claimant returned to DOC custody on a new conviction on August 22, 1997. He was placed back at DRDC for evaluation and then was transferred to the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Claimant was transferred in March 1998 to FCF, where he remained until he was placed at AVCF on September 1999. Claimant was returned to ACC and then placed into a community setting. That placement failed, and Claimant was returned to BCCF. Claimant then went to the Limon Correctional Facility (LCF) in Limon, Colorado on June 25, 2002. He remained at LCF until he was granted parole on May 22, 2003. Parole failed, and Claimant was returned to DRDC. His sentence was discharged on October 21, 2004.

Claimant returned to DOC custody on June 27, 2008 as the result of a new conviction. Claimant was placed initially at DRDC and then transferred to SCF. The hearing on the claim was held at SCF.

Claimant filed a claim in May 2009. He checked the boxes for mobility impairment and diabetes. In his claim form, Claimant stated, in part, as follows:

> I'm paralyzed on my left side w/very little mobility. I can't tie my shoes, go up stairs, walk long, turn my head to my left or right & my walking is unstable with foot drop & spasms. I'm unable to write well & need to relearn personal skills to help me write. I'm not able to get proper ADA assistance or care at this facility. Dr. Frantz refuses to comply with the needs & my health worsens. 2nd Issue: Diabetes, P.A. Webster & SCF have stopped all diabetic medication, snacks & proper caloric intake. I'm told I'm borderline diabetic, but I shake, fall out & get dizzy all the time with extreme pain & trembling daily.

In response to the question concerning discrimination, Claimant stated as follows:

> Dr. Frantz, P.A. Webster & SCF refused to comply with my needs in a humane fashion. My grievances are denied. My medical appointments are a joke & they continue to be malicious and abusive in manner when I attempt to address my needs. I'm told to sue them (P.A. Webster). They are not going to respond to my every whim.

At the hearing, Claimant testified that he had been diagnosed as a diabetic when he was previously in the custody of DOC. He was treated with glucophage up to the time of his discharge in 2004. Claimant testified that he was perplexed that now he was being told that he is not diabetic. He does not receive medication at this time.

Claimant testified that he had a severe stroke in 2006 while on the streets. He was treated at Denver Health Medical Center. This stroke was the outgrowth of severe injuries that had been incurred by Claimant as the result of a high speed chase from law enforcement officers in 2006. Claimant was in a handicapped cell while in county jail custody, but has not received the same in DOC. Claimant indicated that he needed therapy to try to regain the use of his left arm, but that had not been provided by DOC. He continues to have problems with his legs and feet. He is using a cane at the present time. He requested help in obtaining a transfer to a different correctional facility.

Claimant testified that he did not believe that he had been the victim of discrimination in his prior incarceration which ended in 2004. He believed that he was receiving insufficient medical care at SCF for his paralysis.

Dr. Fisher testified that Claimant had received finger sticks and medicine for diabetes when he was in DOC in 2004 and before. Dr. Fisher described his condition as mild glucose intolerance. Dr. Fisher indicated that he thought that Claimant's lifestyle and diet had changed, thus ending the

need for medicine for glucose intolerance.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his mobility impairment on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Diabetes**: The evidence presented by both sides reflects that Claimant had been diagnosed as diabetic up through October 21, 2004. Claimant was a member of the class as diabetic on August 27, 2003.

**Mobility Impairment**: Claimant's mobility condition arose in 2006 after a major stroke. There is no evidence that Claimant was mobility impaired on or before August 27, 2003. He is not a member of the class as mobility impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant testified at the hearing that he had not been the victim of conduct prohibited by the ADA and Rehabilitation Act while in DOC custody through October 2004. This question was posed to him based upon the diagnosis of diabetes, and Claimant responded that he had not suffered any discrimination due to his diabetes.

      Claimant has requested relief due to his mobility issues that arose in 2006. There is a question as to whether any jurisdiction exists to consider any *pro se* motions that post-date August 27, 2003. Judge Kane has taken this issue under advisement. No action will be taken on any request for relief on the mobility claim until Judge Kane rules on the jurisdictional issue.

      **4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

      IT IS HEREBY ORDERED that the claim of Gary Lynn Arellano is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 and has failed to establish that he was disabled and the victim of discrimination under the ADA and Rehabilitation Act on or before August 27, 2003; and

      IT IS FURTHER ORDERED that Claimant's request for relief for mobility issues that arose after his return to DOC in 2008 will be held in abeyance; and

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 14, 2009.**

      SIGNED this 25th of September, 2009.

      BY THE COURT:

      */s/ Richard M. Borchers*

      Richard M. Borchers
      Special Master