IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL RITTER, et al.

      Defendants.

---

Claim Number 03-469
Category III
Claimant: Michael J. Haley, #105526
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER
---

THIS MATTER came before the Special Master for hearing on September 11, 2009. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Michael J. Haley (Claimant) and Chris Alber, attorney for Defendants.

Claimant called himself as a witness, as well as Dr. Paula Frantz, M.D. and Joanne Stock. Defendants called Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through OO, and all were admitted. The case was taken under advisement after closing arguments.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

only the jurisdiction agreed upon by the parties.

### C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on June 29, 2000. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). On July 13, 2000, Claimant was transferred to SCF. He has remained at SCF, except for brief periods when he has returned to DRDC.

Claimant filed a claim under Article XXXII of the Remedial Plan. Claimant checked the boxes for mobility impairment, hearing impairment, and vision impairment. In his form, Claimant stated, in part, as follows:

> I have had 2 strokes and one heart attack a mild one here. These attacks plus a bad left lung have put me on oxygen 2 bottles per day. The lung showed on x-rays that my lung was not going to be repaired. From this I acquired breathing problem permanently. From this problem I was given a wedge pillow to be able to breathe better by Dr. Sing because that props me up so concentrator which runs all night. These are used to keep me alive. I also have a sleep disorder where I appear dead while sleeping. I have been a awakened up a number of times by officers.

As to the claim of discrimination, Claimant stated, in part, as follows:

> I tried to put the wedge pillow on my property sheet in receiving. I was

ordered to have it by Dr. Singh who is still in DOC. He said I should have it due to my lungs...It was ordered taken away.

At the hearing, Claimant called Dr. Paula Frantz, M.D. as his witness. Dr. Frantz is the chief medical officer for DOC. She formerly was a physician at SCF and treated Claimant. Dr. Frantz indicated that Claimant had numerous medical problems, including coronary artery disease, emphysema, and chronic obstructive pulmonary disease. Dr. Frantz indicated that Claimant is on oxygen all the time and on various medications. Dr. Frantz indicated that Claimant had been seen by a cardiologist who had recommended that Claimant not undergo heart surgery. Dr. Frantz indicated that there have been concerns with Claimant not taking all of his medicines.

On cross-examination, Dr. Frantz testified that she had made the recent decision to remove all wedge pillows from inmates. She did not consider wedge pillows to be a treatment item, rather something for comfort. Dr. Frantz noted that Claimant has a cane and an oxygen canister. He also has received a clear plastic bag for his books and papers.

Claimant then called Joanne Stock as a witness. Ms. Stock is a physician's assistant at SCF. She has seen Claimant but has not provided much treatment to him. She is aware that he has chronic medical problems. She further noted that he has been referred to an ophthalmologist for examination for glaucoma.

Claimant testified that he has been in DOC custody since 2000. He has been at SCF for virtually all of his incarceration. He testified that he has a number of problems. He testified that he has had trouble with his right ear and has trouble hearing out of it. The hearing problems commenced about four years ago. He thought DOC was going to do surgery, but no surgery has taken place.

As to vision problems, Claimant testified that he wears glasses. He has been advised that he has cataracts. He was under the belief that surgery would be provided. He has worn glasses for years, with difficulty in reading small print. This has affected his work in the library.

Claimant testified that he has trouble with mobility. He uses a cane and has to pull his oxygen container. He has had a stroke and a heart attack while at SCF. He has trouble walking which must be done slowly. He was treated at SCF by Singh who authorized him to have a wedge pillow. That pillow has now been taken from him. He has been advised that he has osteoporosis which is weakening his bones. Claimant maintained that he had not been sent to see a specialist for his heart. Claimant also testified that his left lung is hardly functional. He also has the condition known as shingles. He has fallen on several occasions. He was recommended for a wheelchair before he came into DOC custody.

On cross-examination, he described his difficulty in walking. He explained why he needed a wedge pillow. He does not want to be in a wheelchair except as a last resort. He acknowledged that he wears glasses part time, especially when he has to read.

Defendants called Dr. Thomas Fisher as a witness. Dr. Fisher is a physician who is employed by DOC. He had reviewed the medical records of Claimant. Dr. Fisher testified that Claimant did not have a vision or hearing problem. He is mobility impaired, as he has degenerative joint disease. Accommodations have been provided to him. In his opinion, Claimant has received treatment and accommodations.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his mobility impairment on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Mobility Impairment**: Defendants conceded in closing argument that Claimant is mobility impaired. As of August 27, 2003, Claimant was a member of the class as mobility impaired.

**Vision Impairment**: Claimant testified that he has worn glasses for several years. His testimony was vague concerning specific problems that he faced due to vision issues. Claimant acknowledged that he only wears his glasses part-time. Claimant has not established that he was vision impaired on or before August 27, 2003. Claimant is not a member of the class as vision impaired.

**Hearing Impairment**: Claimant testified that he has been having problems with his right ear. The problems commenced about four years ago. The evidence presented by Claimant does not establish that he was hearing impaired on or before August 27, 2003. He is not a member of the class as hearing impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has failed to provide such proof.

Claimant has significant health issues facing him. Virtually all of his allegations of discrimination related to medical care that he did not believe was appropriate. As an example, Claimant believes that he should receive surgery for his heart and eyes (cataract removal). Dr. Frantz and Dr. Fisher believe that surgery is not appropriate, particularly concerning the heart.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The overwhelming number of concerns of Claimant relate to his medical care. The quality of that care must be examined in a different proceeding. It cannot be examined in a case brought under the ADA and Rehabilitation Act.

Claimant has failed to establish any discrimination occurred on or before August 27, 2003. The claim cannot be granted.

To the extent that Claimant believes that he was the victim of discrimination prohibited by the ADA after August 27, 2003, the claim will have to be placed in abeyance. Judge Kane has taken under advisement the issue of whether individual *pro se* inmates may file motions seeking relief for something that occurred recently. If Judge Kane rules that such a right does exist under the Settlement Agreement, then this claim may be re-opened by Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Michael J. Haley is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of

November 23, 2004 and has failed to establish that he was disabled and the victim of discrimination under the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant's request for relief for mobility issues that arose after his return to DOC in 2008 will be held in abeyance; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 14, 2009.**

SIGNED this 25th of September, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master