# ATTACHMENT 1

**Robert D. Jones, MD**
**2201 N. Central, 7A**
**Phoenix, AZ 85004**

19 December 2008


State of Colorado
Department of Law
Office of the Attorney General
1525 Sherman Street – 7th Floor
Denver, CO 80203

Attention:    Elizabeth McCann


   Re:    Jesse Montez, et al. v. Bill Ritter, et al.

**WRITTEN OPINION**

I have been requested to render opinions regarding the determination of hearing loss, when such loss becomes a disability and accommodations for that disability in a correctional setting.

In forming these opinions, I have reviewed the following records:

1.    Original Report of Darrel L. Teter, PhD.
2.    Letter from Darrel L Teter, Ph.D. of August 12, 2008
3.    Letter from Darrel L Teter, Ph.D. of September 12, 2008
4.    Guidelines for Hearing Aids and Services for Developing Countries
5.    Medical Examination Report for Commercial Driver Fitness Determination

I further based my opinions on my knowledge and training as a medical doctor, combined with extensive correctional health care experience in jails, prisons and juvenile correctional facilities. My experiences involve not only providing health services to inmates and detainees, but also in administration of correctional health care. My knowledge of national standards and surveying of jails and prisons on their compliance with those standards further supports my opinions. In addition, I have relied upon my knowledge of occupational medicine have worked as a Regional Medical Director for a large occupation medicine company and currently hold an appointment to the City of

Phoenix Disability Advisory Committee.    Additionally, I draw on my personal experience as a hearing impaired individual.

I currently serve as a member of both the Medical Committee and the Juvenile Committee for the American Correctional Association.   In addition, I am a Certified Correctional Healthcare Provider of the National Commission on Correctional Health Care (NCCHC) and a Past-President of the American Correctional Health Services Association.   I have assisted with the revisions and drafting of health care standards by both the NCCHC also those of the American Correctional Association (ACA.).   I have served as the medical and mental health director for Utah, Montana and Arizona prison systems.   I am currently the Medical Director of the Arizona Department of Juvenile Corrections.

After a review of the above documents, it is my opinion that Dr. Teter's dismissal of the World Health Organization's (WHO) recommendation is not indicated.   Dr. Teter is apparently unaware that a similar method of determining hearing impairment is utilized by the United States Department of Transportation (DOT) and is one of the criteria that must be met in order to grant a Commercial Driver's License in which public safety is the primary consideration of the medical examiner.    Further his opinions in his August 12, 2008 letter are also incorrect and similarly dismissive of the averaging process over multiple frequencies as being an ineffective way of determining the need for accommodation for hearing—a process which actually factors into the safety of interstate commerce.     In order to operate commercial vehicles on the nation's highway a commercial driver is required to able to hear a whispered voice at a distance of 5 feet or greater with or without a hearing aid or have an average hearing loss in the BETTER ear of less than or equal to 40 dB at 500 Hz, 1000 Hz and 2000 Hz.    This regulation by the DOT certainly supports the recommendation of the Colorado Department of Corrections recommendation of 40/4 in one ear or 50/4 in both ears.   Of note is that commercial drivers are only required to have that level (better than 40 dB in the better ear of an average of three frequencies) in one ear.

Normal human hearing can detect sound from 20 to 20,000 Hz or frequencies.    Human speech usually is within the range of 250 to 6,000 Hz and is a mixture of both high and low frequencies.    Vowels are usually lower frequencies and consonants are higher frequencies.    An individual with high frequency hearing loss will have difficulty in understanding what has been said and this is usually evaluated by a testing method referred to as speech discrimination.

In addition to frequency, the loudness or intensity of sounds are measured by utilizing decibels (dB).    The human ear is able to hear over a large range of loudness.    While Dr. Teter is correct that this is a log rhythmic scale, his dismissal again of the process of averaging values is logically and mathematically incorrect and  is used clinically and for standards of fitness as previously mentioned above.

Hearing at a 0 dB is the reference level of perception of sound that is found in most humans. A minus value indicates that an individual is able to hear "better" than normal. In order to understand the various levels of loud I suggest the following:

1. A whispered voice is approximately at 30 dB and is actually used to assess a commercial driver's fitness for clearance by the Department of Transportation. The sound of falling rain is at 50 dB and 70 dB is the average level of freeway traffic. On the other hand, a shot gun blast would be approximately 170 dB. Of note is that prolonged exposure to levels of sound above 85 dB has been found to be a risk for hearing loss. The intensity of sound diminishes quickly at increasing distances. This is the reason why people lean in closer in order to hear what was said or cup their hand by the ear in order to direct more of the sound force into the external ear canal. The major function of a hearing aid is to amplify or "multiply" the sound force reaching the ear drum. Unfortunately, there is not just one type of hearing loss.

A common from of hearing loss is called conductive, which is how readily sounds are mechanically transmitted to the middle ear. The small bones of the middle ear have joints that stiffen with age can cause a hearing loss. This type of hearing loss is usually the benefited the most by the used of a hearing aid. An additional type of hearing loss is called neurosensory and in this type, the inner ear has lost the ability to perceive or hear the frequency regardless of the loudness of the sounds and is usually irreversible. This type of hearing loss makes speech discrimination difficult due to the difficulty in understanding the consonants in the words that are being spoken and is often not helped or only minimally improved by utilizing a hearing aid, a situation of which I am personally acquainted. There are other types of hearing loss that can occur and an example would be "central" where there is damage or impairment to the nerves or nuclei of the central nervous system removing the ability of the brain to "hear" the sound and can be brought on by infection or a stroke.

I do agree with Dr. Teter in that the perception of speech is impacted by the background sounds and is why individuals with hearing loss like to look at the person who is speaking in a noisy restaurant in order to utilize visual cues to assist with understanding. Where a person sits in such an environment can impact the communication process due to acoustics of the environment. Some of the newer hearing aids attempt to "select" for sounds by analyzing sounds and selectively amplifying sounds coming from in front of the hearing impaired individual.

Based on a reasonable degree of medical probability and my experience in military, correctional and occupational health care, the process of decibel averaging is a medically sound and bureaucratically recognized method of screening for hearing impairment. In my opinion, this is not only appropriate but already utilized and accepted as an appropriate screening tool

Hearing loss does not always impact a major activity of daily living and is suggested by the statistic that only 1 in 5 individuals who have impaired hearing that might benefit from the use of a hearing aid actually have and utilize hearing aids to improve communication. Often, it is people who are annoyed by having to repeat

themselves, who demand that the person have heir hearing checked that causes the individual to initially seek evaluation.   Even when there is moderate to severe hearing loss in one ear, it is not considered disabling.   From personal experience, the Veteran's Administration found a 0% disability for me, even though with the significant loss of hearing in one ear, I could no longer tell the direction of sounds.    It did require some modification of how I responded to sirens and elevators, but did not impact any major activities of daily living.

Dr. Teter does not indicate an understanding in the documents I have reviewed of the constitutional right to health care of those who are incarcerated and that this right entitles the individual to medically necessary care but not elective care.   While two hearing aids are often recommended by audiologist, not every person is benefited by having two hearing aids and it is really not necessary to have binaural hearing to conduct the major activities of daily living.    Some foreign studies have not found statistically significant need for providing two hearing aids.

Of note is that the ability to tell the direction of a sound may not be improved by use of two hearing aids—especially in neurosensory types of hearing loss.   The process requires the brain to receive signs that it then analyzes or selects from the background noise and without the function of the inner ear; this process cannot be accomplished by amplification.   While having two aids may be nice, it really is not "medically necessary." Additionally, a person, without signing a medical waiver, cannot be fitted by audiologists with hearing aids without a recommendation from a licensed medical provider.

It is my opinion based on my experience in occupational medicine, that an individual would need to be able to document a major activity that cannot be performed with only one hearing aid.   Additionally, the Americans with  Disabilities Act requires an accommodation  be made, but Dr. Teter  does not mention  that there are many types of accommodation that can be made for the hearing impaired that are in addition to or instead of the use of hearing aids to amplify sounds.   These are already provided in correctional facilities for those who are totally deaf.

I find that arriving early to allow me to sit in a seat that will assist me in hearing better because of the room acoustics. This improvement for me has as much impact as my hearing aid does.  Many people take them off, put them in a drawer and do not use them again, an expensive proposition despite who is paying the bill.   The Food & Drug Agency recommends purchasing hearing aids only with a 30-day return policy.   Many people do not like the rattle, clicks and snaps which are distracting that are produced by hearing aids and find life better to do without.

Facing the person who is speaking, written communication, strobe warning lights, willingness to repeat instruction on the part of the speaker or making certain to be in the same room are all other accommodations.

My final recommendation is that the court accept the screening process of averaging across frequency and require a level of 40dB or great in the BETTER ear in

order for an individual to be consider for screening for accommodation and that initially, amplification is recommended, that the major activities of daily living be reassess. If this is the standard that maintains the safety of interstate commerce in certifying commercial drivers, it will certainly accommodate the needs of those incarcerated. If an inmate is found to have a continuing inability to accomplish a major function of daily living, then and only then should a second hearing aid be considered. Not only is this reasonable accommodation it is also all that is medically necessary.

In compliance with Rule 26 of Federal Rules of Civil Procedure, I hereby disclose that I charge $ 250.00 per hour to review records and attend depositions. I charge $ 2,500.00 per day for court appearances. I have recently published as a co-author: CDC Recommendations for Treatment of Schistosomiasis and Strongyloidiasis in Refugees, 2005 and in 2006 an article on screening for HIV disease in a public health STD clinic.

I have been deposed six times in the past four years:

>  Lucido V. Correctional Medical Services, et al
>  Ramon Camarillo Gavira vs. County of Los Angeles
>  Ramond Silva Lopez v Joe McGrath, et. al.
>  Blumhagen v. Coyle et al
>  Robert Anaya Rios v. City of Los Angeles, County of Los Angeles
>  Aguilar v. Yuma County and Sheriff Ralph Ogden, et al.

>  Signed,

>  _s/Robert D. Jones,_ _____
>  Robert D. Jones, MD