IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL RITTER, et al.

      Defendants.

_____

Claim Number 03-471
Category III
Claimant: Hobert G. Stephens, #86084
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

THIS MATTER came before the Special Master for hearing on October 16, 2009. This hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Hobert G. Stephens (Claimant) and Robert Huss, attorney for Defendants.

Claimant testified in his own behalf. Defendants called Dr. Tim Creany, M.D. as a witness. Defendants offered into evidence Exhibits A-1 through A-3, and B-1 through B-12, and all were admitted. The case was taken under advisement after closing arguments.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Remedial Plan, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Remedial Plan in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Remedial Plan. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially
limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Remedial Plan and adjudication of all claims
filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the
criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in
this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs
or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or
her disability? (e.g., were accommodations requested and denied because of the
disability?)
4. Did this conduct cause the claimant harm and if so, what is an
appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any
claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody initially on April 6, 2005. Claimant was placed at the
Denver Reception and Diagnostic Center (DRDC). On April 28, 1995, Claimant was transferred to
the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Claimant remained at ACC
until January 5, 1996 when he was transferred to a community placement in the Denver Mountain
Parks program. Claimant remained in a community placement or on parole until August 19, 1998
when he returned to DRDC. On September 9, 1998, Claimant discharged his initial sentence.

On January 9, 2009, Claimant returned to DOC custody as the result of a new conviction.
Claimant was placed at DRDC and then transferred on January 26, 2009 to CCCF.

Claimant filed a claim on April 22, 2009 under Article XXXII of the Remedial Plan.
Claimant checked the box for mobility impairment. Claimant stated, in part, as follows:

Sometimes I can't see because of my eye. Sometimes I cannot use my hands.
They are broken and sometimes my back is in pain and I cannot get up and down the
top bunk and I was in need of a bottom bunk. This TB and hepatitis is killing me. I

feel that I'm burning all over my body. And I need some mental health medication. I was seeing my own doctor before I came here and I told them. My whole right side of my body is disability. I was on SSI before I came here. My doctor was taking tests on me the day I was arrested and I had medications in my backpack that day. I have ask them for treatment for this TB and for the Hepatitis C, but I think they want my liver to die first before they give me treatment or medication. I feel that I will die, that is why I need mental health medication.

As to discrimination by DOC and its staff, Claimant stated, in part, as follows:

Because I am old and cannot see and cannot walk like everybody else they just laugh and will not help me with anything. I tell them of all of my disability and they just look and act like they cannot hear me or they don't understand what I'm talking about. They took me off all medication, all but my nitroglycerin for my heart and I am in pain every day. I'm in a depressed state of mind. I need all of my medication and my hands fixed. What does it take for an older man to let these young officers know?

The Special Master requested additional information from the Claimant. In response to that order, Claimant stated, in part:

They had stop movement in Arrowhead Correctional Facility in 1994, because of discrimination against me and now this facility is discrimination too. I have tried to ask DOC and ADA for help. And Americans with Disability Act have been trying to help now. I had my back injury at Arrowhead Correctional Facility in 1993. I had been trying to get some glasses here are Crowley County Correctional Facility ever since Jan. 2009 and I have been blinded for five months.

The reason I took so long is I didn't want to file this claim. Because I don't have help and I am fear of my life, because I can't get to my nitroglycerin all of the time. I have try to get into GED classes and have not been able to because of my age. And that is some kind of discrimination.

At the hearing, Claimant testified that he had difficulty using his right hand or leg due to injuries that occurred in 1979. Claimant stated that he has heart problems that require him to take nitroglycerin on occasion. Claimant also stated that he had been the victim of discrimination while at ACC. People accused him of bothering them, though he did not know why someone would say that.

Since returning to DOC custody in early 2009, Claimant has had continuing problems. He believes that he is almost blind without glasses. He has difficulty obtaining his nitroglycerin pills for his heart. Claimant said that he has mobility problems, as well as other health issues. He just recently received glasses which help his eyesight.

On cross-examination, Claimant testified that he used a cane before he came back to DOC

custody. He has tried to work out in the gym. He also is taking blood pressure medication. Concerned about his eyesight, Claimant had started to learn braille before returning to DOC.

Defendants called Dr. Tim Creany, M.D. as an expert witness. Dr. Creany had reviewed the medical records of Claimant. As to vision issue, Dr. Creany noted that Claimant has macular degeneration and cataracts. The ophthalmologist recommended supplements for Claimant. The macular degeneration is not reversible and will create problems for Claimant as time goes on. Dr. Creany testified that Claimant did not meet the criteria for mobility impairment.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003 and the victim of discrimination, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

In this case, Claimant came into DOC custody at DRDC on April 6, 1995. He remained in DOC custody until January 5, 1996. He then returned on August 19, 1998 and discharged that sentence on September 9, 1998. Claimant must establish that he was disabled during one or both of these periods of time. Claimant has not carried his burden of proof.

No evidence has been presented that Claimant was disabled, as defined by the ADA, in 1995. One document submitted by Defendants reflects that Claimant had been injured in an auto accident in 1980 and had several surgeries thereafter. The same document reflected that Claimant had listed few medical problems when he returned to DOC custody in August, 1998. No evidence was presented that Claimant was disabled in 1998 when he was at DRDC for less than one month.

Claimant has not proven that he was disabled, as defined by the ADA and Rehabilitation Act, during the periods of time in 1995 and 1998 when he was in DOC custody. There is no question that Claimant has significant medical issues at the present time, including vision problems that may continue to deteriorate.

The Remedial Plan requires that disability be proven on or before August 27, 2003. That has not been done in this case. Therefore, Claimant may not amend his claim to deal with issues arising in 2009.

To the extent that Claimant is alleging discrimination since his return to DOC this year, the claim will be held in abeyance. Judge Kane will determine what jurisdiction, if any, exists to allow the filing of *pro se* claims and motions for alleged discrimination that occurred after August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** In light of the negative answer to Question #1, this question does not need to be answered.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the negative answer to Question #1, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Hobert G. Stephens is denied, as Claimant did not establish that he was disabled while in DOC custody  on or before August 27, 2003; and

IT IS FURTHER ORDERED that, to the extent Claimant is alleging discrimination in 2009, the claim will be held in abeyance pending resolution by Judge Kane of the jurisdictional issue that is before the Court; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 28, 2009.**

SIGNED this 30th day of October, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

6