IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

      Plaintiffs,

-vs.-

BILL RITTER, et al.

      Defendants.

---

Claim Number 03-472
Category III
Claimant: Gilbert M. Casias, #90539
Address of Claimant: FLCF, P.O. Box 1000, Ft., Lyon, CO 81038-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

      THIS MATTER came before the Special Master for hearing on October 16, 2009. This hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Gilbert Casias (Claimant) and Robert Huss, attorney for Defendants.

      Claimant called himself as a witness. Defendants called Dr. Tim Creany, M.D. as a witness. Defendants offered into evidence Exhibits A-1 through A-3, and B-1 through B-26, and all were admitted. The case was taken under advisement after closing arguments.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]   Once the provisions and terms of the settlement were agreed upon by

---

[1] The Special Masters also were not involved in the negotiation of the Remedial Plan. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction

counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Remedial Plan, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Remedial Plan in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.

---

agreed upon by the parties.

2

### C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Remedial Plan and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 26, 1996. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred on August 14, 1996 to the Limon Correctional Facility (LCF) in Limon, Colorado. On August 26, 1997, Claimant was placed into a private prison facility in Minnesota. He remained there until December 11, 1998 when he was transferred to the Kit Carson Correctional Facility (KCCF) in Burlington, Colorado. On October 28, 1999, Claimant was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado.

Claimant remained at SCF until July 6, 2005 when he returned to KCCF. Claimant remained at that facility until October 4, 2007 when he was placed at FLCF. Other than brief medical trips to other prisons or medical facilities, Claimant has remained at FLCF.

On June 23, 2009, Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. Claimant checked the boxes for mobility impairment and diabetes. Claimant stated in his claim form, in part, as follows:

> After my first knee surgery, I was starting to walk again, after I was man handled I can no longer do so. This affects all of my ability of the things I was able to do.
> The diabetic part makes it so I have to be careful not to get hurt for fear of

infection.

As to allegations of discrimination, Claimant stated as follows:

> I was manhandled with no regard for my physical disabilities, knees and the fact I had just had gall bladder surgery I just had.
> I have had a total left knee replacement which now has to be redone. I also because of this physical assault on me now have a right arm and shoulder injury that I didn't have before. This causes further problems with my ability to do day by day chores.

The Special Master requested additional information from Claimant. That was provided in late July 2009. Claimant stated that he has been disabled since 2000. He testified that he had not filed a claim sooner because he had not been provided appropriate information on filing a claim.

At the hearing, Claimant testified that he had been in a wheelchair since 2006. He had previously had problems walking and finally started using the wheelchair. He indicated that he had been diagnosed as having diabetes upon his arrival at FLCF in October, 2007. Claimant stated that he had surgery on his knee which led to a total knee replacement. He later had gall bladder surgery.

Claimant described an incident when he was transported from the hospital back to FLCF. He was "manhandled" by correctional officers when they discovered Claimant was in a wheelchair. According to Claimant, the correctional officers were unaware that he was in a wheelchair and were upset about the extra time and trouble that caused. He fell and hurt his knee. He was in full restraints at the time. His leg was hurt during this incident. Claimant also indicated that he had trouble traveling and that he has had pain since that incident. He further was manhandled at the infirmary in the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado.

Claimant testified further that he has requested MRI's and other tests on both knees. His knees now allow him to walk only a short distance, and he has to use the wheelchair to get around the facility. He cannot climb stairs or use a top bunk. He has continued to request information about the replacement of his other knee. As to his diabetes, Claimant receives finger sticks and other treatment. He indicated that DOC medical personal had been helpful concerning his diabetes.

On cross-examination, Claimant stated that he had been diagnosed with diabetes for the first time when he arrived at FLCF in 2007. The incident in which he was manhandled and his leg was hurt occurred on April 13, 2009. Claimant stated that he has fallen in the shower due to his leg problems.

Defendants called Dr. Tim Creany, M.D. as an expert witness. He had reviewed the medical records of Claimant. As to diabetes, Claimant was diagnosed in 2007 at KCCF as having diabetes. He has been taking oral medication which has stabilized his blood sugar levels.

As to the claim of mobility impairment, Dr. Creany testified that Claimant did have a knee

replacement in December, 2008. Claimant had problems with adhesions that led to a manipulation under general anesthesia. Claimant has been recognized as being mobility impaired.

Documents submitted by Defendants reflect that Claimant had arthroscopic surgery on his right knee sometime in the late 1990's. During an examination in March, 2001, it was noted that Claimant had problems with his left knee, specifically a medial meniscus tear and chronic chondromalacia. He was experiencing difficulty in walking during that time period. Later x-rays reflected the same diagnosis and problems.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his mobility impairment and diabetes on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B).  The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(h)(2)(I).

**Mobility Impairment**: From all of the evidence presented, Claimant was experiencing significant mobility issues prior to August 27, 2003. The Special Master determines that Claimant was a class member as mobility impaired on August 27, 2003.

**Diabetes**: Claimant was first diagnosed as being diabetic in 2007 while at KCCC. Claimant was not diabetic on August 27, 2003. The claim of diabetes arose after August 27, 2003 and cannot be adjudicated pursuant to Article XXXII of the Remedial Plan.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has failed to provide such proof.

Claimant testified that he has received services for his diabetes. Even if he had been diabetic on or before August 27, 2003, there is no evidence that he was ever discriminated against due to his diabetes. This case is one brought under the ADA and Rehabilitation Act to prevent or redress discrimination based upon physical or other disability. Thus, Claimant must show that he was denied equal treatment due to diabetes. There is no evidence of any such discrimination.

The same is true concerning mobility impairment. Claimant spoke at length concerning the incident in April 2009 when he was "manhandled" by DOC officers who were upset that he was in a wheelchair. This incident cannot be adjudicated in this claim because it occurred after August 27, 2003, and there is no evidence of discrimination prior to that date based upon mobility impairment.

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Remedial Plan. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has failed to establish any discrimination occurred on or before August 27, 2003. The claim cannot be granted.

To the extent that Claimant believes that he was the victim of discrimination prohibited by the ADA after August 27, 2003, the claim will have to be placed in abeyance. Judge Kane has taken under advisement the issue of whether individual *pro se* inmates may file motions seeking relief for something that occurred recently. If Judge Kane rules that such a right does exist under the Remedial Plan, then this claim may be re-opened by Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Gilbert M. Casias is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 and has failed to establish that he was disabled and the victim of discrimination under the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that the claim of Gilbert Casias, to the extent that it raises issues concerning alleged discrimination after August 2003, is held in abeyance pending Judge Kane's resolution of the jurisdictional issue that exists concerning *pro se* motions filed in this case; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before December 28, 2009.**

SIGNED this 30th day of October, 2009.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master