IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-JLK

JESSE MONTEZ et al.,

Plaintiffs,

v.

BILL RITTER, et al.,

Defendants.

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO MEDICAL TREATMENT**

Defendants, through the Colorado Attorney General, respectfully submit their Motion In Limine to Exclude Evidence Relating to Medical Treatment.

**PRELIMINARY STATEMENT**

Plaintiffs are seeking to unnecessarily and exponentially expand these proceedings to encompass a class of inmates alleging denial of adequate medical care. Evidence relating to the quality or adequacy of medical care is not relevant to this case and should be excluded.

**PROCEDURAL HISTORY**

Plaintiffs brought this class action seeking damages and declaratory and injunctive relief against the Governor, the Colorado Department of Corrections ("CDOC"), the Executive Director of that department, and a long list of prison officials, all based on § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the ADA, 42 U.S.C. § § 12131 - 34. All individuals were sued in their individual as well as official capacities to obtain damages from the Defendants under 42

1

U.S.C. § 1983. Plaintiffs contended that Defendants violated the above statutes which prohibit discrimination based on one's disabilities.

After extensive briefing, the Court dismissed Plaintiffs' Rehabilitation Act, ADA and § 1983 claims against the individual Defendants in their individual capacities. The Court also dismissed Plaintiffs' § 1983 claims against the Defendants in their official capacities.[1] Finally, the individual Defendants in their individual capacities were entitled to qualified immunity with respect to the § 1983 claims based on the Rehabilitation Act and the ADA. These claims were also dismissed. The Order granting the Defendants Motion to Dismiss in part provides:

> Defendants' motion is GRANTED with respect to plaintiffs' Rehabilitation Act and Disability Act claims against the individual defendants in their individual capacities. Those claims are hereby dismissed.
>
> Defendants' motion is GRANTED with respect to plaintiffs' section 1983 claims against the individual defendants in their official capacities, insofar as plaintiffs seek compensatory monetary damages and prospective injunctive relief which would have an impact on the state treasury. Such claims are hereby dismissed.
>
> The individual defendants in their individual capacities are entitled to qualified immunity with respect to plaintiffs' section 1983 claims insofar as they are based on the Rehabilitation Act and the Disability Act.
>
> All section 1983 claims against the individual defendants in their individual capacities under the Rehabilitation Act and the Disability Act are hereby dismissed.

*Montez v. Romer,* 32 F.Supp.2d 1235, 1243 (D. Colo. 1999). The Court did not dismiss the Eighth Amendment claims against the individual defendants in

---

[1] The § 1983 claim was not asserted, nor could it have been against the state or the CDOC. Accordingly, the § 1983 claim was only asserted against the individuals named in the "Second Amended Complaint – Class Action."

their individual capacities.[2]

The parties settled the remaining claims by entering into the Remedial Plan on August 27, 2003.

## ARGUMENT

### I. This case does not involve a class of individuals asserting Eighth Amendment Claims.

Following settlement, neither the parties nor the Court intended for Eighth Amendment claims to remain.  Indeed, nowhere in the Remedial Plan is the Eighth Amendment or 42 U.S.C. §1983 even mentioned.  The Remedial Plan addresses specific issues to be resolved in order the "provide inmates with disabilities, with or without reasonable accommodations, access to its programs and services consistent with legitimate penological interests….All facilities designed to house inmates with disabilities will provide comparable programs, services and benefits available throughout comparable DOC facilities to ensure that inmates with disabilities are not discriminated against because of their disability."   (**Exhibit A**, Remedial Plan at Section I). This policy statement, contained in the very first section of the Remedial Plan, reflects that this case is an ADA - Rehabilitation Act case, not a case relating to the Eighth Amendment.

An agreement to settle a federal lawsuit is a contract, governed by the principles of contract law. *See Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.

---

[2] The Remedial Plan is a document designed to provide for injunctive type relief for the entire CDOC prison system.  The only remaining Eighth Amendment claim was asserted against individual capacity defendants.  Thus, there is essentially no Eighth Amendment claim remaining in this case as it relates to the CDOC's compliance with the Remedial Plan.  *See Smith v. Plati,* 56 F.Supp.2d 1195, 1203 (D.Colo.1999) (dismissing claims against state official in his individual capacity because the relief plaintiff requested could only be obtained against the defendant in his official capacity).

1989).  The goal of the Remedial Plan was to bring CDOC into compliance with the requirements of the ADA and Rehabilitation Act, and to allow class members to file individual damages claims for alleged disability discrimination.  While a narrow § 1983 claim may have remained prior to settlement, the Remedial Plan represents a full integration and resolution of the parties' dispute, and extinguishes the complaint, the answer, and other pleadings predating it.  The Remedial Plan did not address quality of medical care issues and did not preserve any Eighth Amendment claims.  Simply put, the claims and defenses asserted in the pleadings are exchanged for the legal rights detailed in the agreement.  *Jeff D.*, 899 F.2d at 759.  Plaintiffs forfeited any Eighth Amendment claim by settling and not preserving that claim in the Remedial Plan.

This Court has repeatedly indicated that this case is no longer an Eighth Amendment case.  During the October 27, 2004 status conference, the Court clarified that it never intended to certify the class as to an Eighth Amendment claim.

> Judge Nottingham: . . . **I don't think there are any Eighth Amendment claims in here**.  There are claims under the – **this has been – the class was a class of disabled people; it was not a class of people that had Eighth Amendment claims**. . . . **But I don't think this is an Eighth Amendment case, the way you've structured it**.  Now, you say at the time it was certified, it was an Eighth Amendment case.  And I agree with that; it was.  There – you know, very little had been decided substantively when the case was certified.  **But the way the settlement was structured, it – you know, every prisoner has an Eighth Amendment case.  I've got cases independent of this one where they're presenting Eighth Amendment claims.  If they could all come into the class, we'd have a great mess here.**

4

(**Exhibit B**, Transcript of 10/27/04 Status Conference, p. 41, line 13 – p. 42, line 6) (emphasis added).  During the same hearing, Judge Nottingham noted that

> "when this class was certified, the representatives were disabled persons.  And I think [class counsel] purported to represent a class of disabled persons . . . You did not purport to represent all persons in the penal system who had an Eighth Amendment claim."

(**Exhibit B**, Transcript, p. 46, lines 4-11).  This case is only a class action as to the ADA and Rehabilitation Act claims, not the Eighth Amendment claim.  As further noted by this Court, "[t]he centerpiece of this case — certainly since the class was certified on January 15, 1996, and the Second Amended Complaint was filed on January 25, 1996 — has been an allegation that the Colorado prison system systemically discriminated against prisoners because of their disability.  The class certified consisted of 'persons with disabilities who are, have been or will be confined at the Colorado Department of Corrections . . . and who have been, are or will be **discriminated against solely on the basis of their disabilities** in receiving the rights and privileges accorded other inmates.'" (Emphasis in original) (**Exhibit C**, Doc. # 2216 – August 22, 2006 Court Order at pp. 5-6 *quoting* Plaintiff's Second Amended Complaint].

> The case at all times remained essentially a claim of disability discrimination, not a claim that Defendants were deliberately indifferent to the varying medical needs of class members. The gravamen of the Remedial Plan, consistent with the Second Amended Complaint, is resolution of the class claims of disability discrimination based on the ADA and the Rehabilitation Act.  The bulk of the Remedial Plan — twenty nine out of thirty one pages — prospectively details the changes which Defendants promised to make to resolve the claims for injunctive and declaratory relief.

5

[Doc. # 2216, Court's Order at p. 6]. This was again confirmed in this Court's November 23, 2004 Order dealing with individual damage claims which states: "Individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." (**Exhibit D**, November 23, 2004 Order at ¶ 5).

Accordingly, because there is no longer an Eighth Amendment component to this case, evidence relating to the quality of medical care provided is irrelevant to the issue in this case – compliance with the remedial Plan.

## II.     The Tenth Circuit has concluded that Eighth Amendment is inapplicable to disability discrimination cases.

The Tenth Circuit has made clear that allegations of improper medical care cannot meet the requirements of an ADA or Rehabilitation Act claim. In *Fitzgerald v. Corrections Corporation of America,* 403 F.3d 1134 (10th Cir. 2005), the Tenth Circuit explained that Fitzgerald would not have been 'otherwise qualified' for such treatment in the absence of his alleged disability—his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or Rehabilitation Act. *Id.* at 1144. In *Johnson*, 971 F.2d at 1493-94, the Tenth Circuit concluded that medical malpractice claims can rarely, if ever, meet the requirements of the ADA and Rehabilitation Act. Put simply, "The ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Even apart from the prison setting it would be extremely odd to suppose that disabled persons, whose disability is treated negligently, have a federal malpractice claim by virtue of the ADA or Rehabilitation Act, whereas a sick or injured but not

6

disabled person must be content with the remedy that the state law of medical malpractice provides.

The goal of the ADA, Rehabilitation Act and the Remedial Plan is to ensure that disabled individuals receive the same access to jobs, programs, services, and benefits as non-disabled individuals. Regarding prison medical treatment, an ADA or Rehabilitation Act violation only occurs if healthy, non-disabled inmates received access to medical care that disabled inmates did not. "Without a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicap, the [claimant] cannot assert that a violation of the [Rehabilitation Act] has occurred." *Johnson*, 971 F.2d at 1494. If a non-disabled inmate would not be entitled to a specific medical treatment or device, then the issue is beyond the scope of the ADA or Rehabilitation Act. Accordingly, the key issue is **access** to medical care, not the quality or type of case provided.

This Court also concluded that *Fitzgerald* is fully consistent with the way it has interpreted and applied the Remedial Plan, even if Fitzgerald had not been decided. "Indeed, the decision [*Fitzgerald*] aptly underscored the fallacy in Plaintiffs' apparent position that, once a claimant proves himself disabled, he is entitled under the Remedial Plan to damages for every condition or injury, even if the damage or injury has nothing whatsoever to do with his disability…." (**Exhibit C**, Doc. # 2216, August Order 22, 2006 Order at p. 9). As noted in *Fitzgerald*:

> Under either the ADA or the Rehabilitation Act, Fitzgerald is obligated to show that he was "otherwise qualified" for the benefits he sought and that he was denied those "solely by

7

> reason of disability." [Citation omitted.] Further, we have held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.' " *Johnson [by Johnson v. Thompson],* 971 F.2d 1487, . . . 149394 (10th Cir. 1992). As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say ... that a particular decision was 'discriminatory.'" *United States v. University Hospital,* 729 F.2d 144, 157 (2nd Cir.1984) (Rehabilitation Act).
> . . . .
> Fitzgerald would not have been "otherwise qualified" for such treatment in the absence of his alleged disability — his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.

*Fitzgerald,* 403 F3d at 1144.

### III. Evidence of alleged insufficient medical treatment is not relevant to the CDOC's compliance with the Remedial Plan.

Federal Rule of Evidence 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

As stated above, Plaintiffs are seeking to unnecessarily and exponentially expand these proceedings to encompass a class of inmates alleging denial of adequate medical care. This type of evidence should not be admitted. The evidence is not relevant to the issue before this Court – CDOC's compliance with the Remedial Plan.

DATED this 17th day of December, 2009.

JOHN W. SUTHERS
Attorney General

s/ James X. Quinn
JAMES X. QUINN
Assistant Attorney General
Civil Litigation and Employment Law
  Section
Attorneys for Defendants
1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone: (303) 866-4307
FAX: (303) 866-5443
*Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on December 17, 2009, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following e-mail addresses:

Paula Greisen
Jennifer W. Riddle
greisen@kinggreisen.com
riddle@kinggreisen.com

Edward T. Ramey
Lara E. Marks
eramey@ir-law.com
lmarks@ir-law.com

s/ James X. Quinn