Case 1:92-cv-00870-EWN-OES   Document 2216   Filed 08/22/2006   Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 92–cv–870– EWN–MEH

JESSE (JESUS) MONTEZ, *et al.,*

    Plaintiffs,

v.

BILL OWENS, *et al.,* ,

    Defendants.

---

### ORDER CONCERNING DAMAGES AND ATTORNEY FEES

---

Two filings before the court require interpretation of the damages provisions of the Remedial Plan by which the parties settled this class action. The court must also decide whether class counsel is entitled to attorney fees incurred in advocating the position taken by the plaintiff class concerning those damages provisions and in otherwise monitoring compliance with the Remedial Plan and litigating discrete issues which have arisen under the Remedial Plan. Specifically, the court must rule on the following filings:

    (1)    Plaintiff Class Appeal Regarding the Availability of Damages for Denial of Medical Care (#1065);

    (2)    Plaintiff Class Appeal of Order of Special Masters Re: Category V Damages (Directed to Judge Nottingham) (#1149);

    (3)    Defendants' Objections to Special Master's [Robbie M. Barr's] Recommended Award of Attorney Fees and Costs (#1567).



All of these filings have been fully briefed. The court will consider the filings in the order listed.

**Plaintiff Class Appeal Regarding the Availability of Damages for Denial of Medical Care (#1065)**

Plaintiffs choose as the vehicles for presenting their contentions the damages claims of Joseph Lovato (Claim No. 03–085) and Joe Eubanks (Claim No. 03–002). According to the factual findings of the special master assigned to evaluate the Lovato claim (*see* doc. #1000), Mr. Lovato sought damages for a variety of problems: (1) vision impairment (correctable with glasses or contact lenses) and hearing problems that predated his incarceration; (2) a wrist injury which also predated his incarceration; and (3) "spina bifida, which affects his mobility and makes him prone to falling." Mr. Lovato complained that Defendants failed to treat his hearing loss properly, failed to provide proper medical treatment and physical therapy for his wrist, and replaced his contact lenses with glasses, which irritated his nose and caused nose bleeds. With respect to his mobility problems, he was assigned a wheelchair and a "pusher." He claimed that the pusher was occasionally unable or unwilling to help him. Finally, he asked Defendants to accommodate his mobility limitations in the wheelchair-accessible shower by installing handrails to assist him in ambulating between his wheelchair and the shower seat. Defendants refused, and Mr. Lovato later fell while attempting to use the shower.

The special master found that Mr. Lovato was a member of the plaintiff class due to his spina bifida and consequent mobility limitations. He further found (1) that Defendants had discriminated against Mr. Lovato by failing to accommodate his reasonable request for handrails in the shower and (2) that the discrimination was the proximate cause of pain and suffering which

-2-

occurred when Mr. Lovato fell and injured himself in the shower. The special master awarded $500 in damages. The special master rejected the remainder of Mr. Lovato's contentions for a variety of reasons. He concluded that the vision and hearing impairments did not constitute disabilities because they did not limit any of Mr. Lovato's major life activities and that the complaints of inadequate treatment of the wrist injuries were "outside the scope of the Remedial Plan." Finally, the special master noted:

> [M]any of Claimant's complaints relate to an alleged failure of the [Defendants] to provide reasonable medical care and treatment for his disability or to an alleged deliberative [sic] indifference of the [Defendants] to Claimant's medical needs. These claims are not cognizable under the Rehabilitation Act, the ADA, or the Remedial Plan. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

Plaintiffs allege that this line of reasoning has been used to limit not only Mr. Lovato's claim but also the claims of thirty other claimants. They further claim that the reasoning reflects fundamental errors of law which must be corrected by this court.

With respect to Joe Eubanks, the other claimant chosen by the plaintiff class to be a vehicle for presentation of this appeal, the assigned special master found that he suffered from a painful foot condition called plantar fasciitis. After making extensive findings concerning the surgeries undertaken to deal with the condition, the limitations imposed by the condition, and Mr. Eubanks' activities, the special master concluded that Mr. Eubanks was not disabled because his condition did not impose a limitation on a major life activity. Although Mr. Eubanks, individually and *pro se*, has appealed this finding to Judge Kane, pursuant to the Remedial Plan, the plaintiff

class does not challenge the finding here. Instead, the class takes issue with the following observation of the special master, similar to the language used in dealing with the Lovato claim:

> Claimant has received medical care for PF since 1999. In his closing argument, he stated that he believed that some of the care had been negligently provided. On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statute. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. All Eighth Amendment claims were dismissed by Judge Nottingham prior to the approval of the Settlement Agreement. To the extent that Claimant is questioning the care provided to him by CDOC medical staff or others, that is beyond the jurisdiction of the Special Masters.

Plaintiffs advance two arguments to support their contention that the special masters are committing fundamental legal error in interpreting the Remedial Plan. The first argument is that the special masters are wrong in thinking that all eighth amendment claims were dismissed by the court before the Remedial Plan was approved in August of 2003. They contend that the eighth amendment claims remained in the case as of August 2003, and that those claims somehow provide a vehicle for awarding damages because of allegedly inadequate medical care. Defendants acquiesce in the premise that eighth amendment claims remained in the case, explaining that a "narrow category" of eighth amendment claims against the individual defendants in their individual capacities were not dismissed.

-4-

The court agrees that not all of the eighth amendment claims had been dismissed as of August 2003. *See Montez v. Romer*, 32 F. Supp. 2d 1235 (D. Colo. 1999). The court dismissed all eighth amendment claims against the individual defendants *in their official capacities*, pursued under 42 U.S.C. § 1983, on the ground that claims of this variety amounted to suits against the state itself and were thus prohibited by the Eleventh Amendment. *Montez*, 32 F. Supp. 2d at 1242. As for the individual defendants *in their individual capacities*, the court concluded that individual defendants, in their individual capacities, were not subject to suit under the Rehabilitation Act or the Americans With Disabilities Act ("ADA"). *Id.* at 1241. With respect to the section 1983 eighth amendment claims against the individual defendants in their individual capacities, the court ruled that the applicability of the Rehabilitation Act and the ADA to state prisons was not "clearly established" and that the individual defendants were thus entitled to the protection of qualified immunity "insofar as plaintiffs' section 1983 claims rest on the Rehabilitation Act and the Disability Act." *Id.* at 1243. The court did not dismiss the eighth amendment section 1983 claims against the individual defendants in their individual capacities, insofar as those section 1983 claims rested on the Eighth Amendment.

Even though the eighth amendment claims against the individual defendants in their individual capacities had not been dismissed as of the time the court approved the Remedial Plan, it does not follow, as Plaintiffs seem to suggest, that those claims provide a vehicle for awarding damages with no causal or other connection to discrimination based on a class member's disability. The centerpiece of this case — certainly since the class was certified on January 15, 1996, and the Second Amended Complaint was filed on January 25, 1996 — has been an

allegation that the Colorado prison system systemically discriminated against prisoners because of their disability. The class certified consisted of "persons with disabilities who are, have been or will be confined at the Colorado Department of Corrections . . . and who have been, are or will be *discriminated against solely on the basis of their disabilities* in receiving the rights and privileges accorded other inmates." (Emphasis supplied.)

Although more than seven years passed before the court approved the Remedial Plan, the Second Amended Complaint remained the operative embodiment of Plaintiffs' claims and thus supplies the background against which the Remedial Plan must be interpreted. The case at all times remained essentially a claim of disability discrimination, not a claim that Defendants were deliberately indifferent to the varying medical needs of class members. The gravamen of the Remedial Plan, consistent with the Second Amended Complaint, is resolution of the class claims of disability discrimination based on the ADA and the Rehabilitation Act. The bulk of the Remedial Plan — twenty-nine out of thirty-one pages — prospectively details the changes which Defendants promised to make to resolve the claims for injunctive and declaratory relief. As for compensatory damages, to which scarcely more than a page was devoted, those damages were to be determined by special masters.

Although the Remedial Plan required categorization of damages for purposes of determining whether a class member was entitled to a hearing before a special master, it provided little additional guidance concerning the issues to be considered by the special masters in awarding damages. Disputes arose almost immediately, and the special masters sought guidance from the court. In response, the court outlined the issues to be considered in awarding damages:

-6-

    1.    Is the claimant a disabled individual who is a member of the class?

    2.    *Was the claimant otherwise qualified* to participate in the programs or receive the benefits and services offered by DOC?

    3.    *Was the claimant discriminated against* by DOC *because of* his or her disability? (*E.g.*, were accommodations requested and denied because of the disability?

    4.    *Did this conduct cause the claimant harm* and if so, what is an appropriate remedy?

(Emphasis supplied.) This ruling clarifies that it is not enough for a claimant to prove that he is disabled and a member of the class. He must be "otherwise qualified" for the remedy he seeks; he must have been denied the remedy *because of* his disability; and the harm he suffered must be tied causally to Defendant's denial of the remedy sought. The court went on to declare that "individual [e]ighth [a]mendment medical malpractice claims are not contemplated by the Remedial Plan" unless they meet the four specified criteria.

Notwithstanding any expressed misunderstanding of the special masters as to the tangential issue of whether *all* eighth amendment claims had been dismissed before implementation of the Remedial Plan, the record before the court on this appeal demonstrates that the special masters are faithfully considering the issues which the court directed them to consider. The special master in Lovato reviewed the four criteria and awarded damages for injuries which fit the criteria. Apparently alluding primarily to Mr. Lovato's allegation that Defendants were inadequately treating his wrist injuries, the special master concluded that complaints concerning the adequacy or reasonableness of treatment were not cognizable under the plan. This conclusion was correct, because such complaints meet none of the four criteria for an award of damages.

Similarly, the special master in Eubanks noted that claims of negligent medical care were medical malpractice claims which met none of the four criteria and were thus not covered by the Remedial Plan. Any misunderstanding as to whether *all* eighth amendment claims had been dismissed before implementation of the Remedial Plan does not rise to the level of legal error which undermines the special masters' orders.

The second argument advanced by Plaintiffs in support of their contention that the special masters are committing fundamental legal error in interpreting the Remedial Plan is that the special masters are improperly relying on a case decided after execution and approval of the Remedial Plan, *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005), for the proposition that claims concerning reasonableness or adequacy of medical care are not cognizable under the ADA or the Rehabilitation Act. The court rejects the argument, for two reasons.

First, the court disagrees with Plaintiffs' broad assertion that a court decision issued after execution of a settlement agreement can never be used to interpret that agreement. The two cases Plaintiffs cite for the proposition — *Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1990), and *Moses–Ecco Co. v. Roscoe–Ajax Corp.*, 320 F.2d 685 (D.C. Cir. 1963) — are so palpably irrelevant that detailed discussion of the cases would be a waste of time. Plaintiffs have simply lifted language out of context without regard to the facts. Here, the Remedial Plan requires the special masters to resolve a number of open questions. The special masters must decide, *inter alia*, who is a member of the class and what damages should be awarded. This court's prior orders have confirmed the questions which the special masters should be asking with respect to

each claim. The answers require reference to the Rehabilitation Act and the ADA, because the Remedial Agreement was executed with reference to those bodies of law. If a court decision clarifies or answers a legal question which (1) was unclear or unanswered when the Remedial Agreement was executed and (2) was not resolved in the Remedial Plan itself, the clarification is relevant to interpreting the terms of the Remedial Plan. Thus, this court perceives no legal error in the special masters' citation of *Fitzgerald*.

The court's second reason for rejecting Plaintiffs' argument concerning *Fitzgerald* is that *Fitzgerald* is fully consistent with the way this court would have interpreted the Remedial Plan, even if *Fitzgerald* had never been decided. Indeed, the decision aptly underscored the fallacy in Plaintiffs' apparent position that, once a claimant proves himself disabled, he is entitled under the Remedial Plan to damages for every condition or injury, even if the damage or injury has nothing whatsoever to do with his disability:

> Under either the ADA or the Rehabilitation Act, Fitzgerald is obligated to show that he was "otherwise qualified" for the benefits he sought and that he was denied those "solely by reason of disability." [Citation omitted.] Further, we have held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.' " *Johnson [by Johnson v. Thompson]*, 971 F.2d 1487, . . . 1493-94 [10th Cir. 1992]. As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say ... that a particular decision was 'discriminatory.' " *United States v. University Hospital,* 729 F.2d 144, 157 (2nd Cir.1984) (Rehabilitation Act).
>
> . . . .

> Fitzgerald would not have been "otherwise qualified" for such treatment in the absence of his alleged disability — his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment. These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.

*Fitzgerald,* 403 F3d at 1144. Because *Fitzgerald* reflects this court's interpretation of the Remedial Plan, it is not error for the special masters to rely on it.

### Plaintiff Class Appeal of Order of Special Masters Re: Category V Damages (Directed to Judge Nottingham) (#1149)

The Remedial Plan groups damage claims into five categories and requires the special masters to assign each claim to one of the five. The category at issue here is "V. Damages due to death." The special masters issued a ruling (#1083) with respect to the types of damages which a category V claimant may not recover. The ruling says that such claimants "may not seek damages for pain and suffering, nor lost earnings after the date of death of the inmate." They "may not seek punitive damages." Finally, they may not "pursue claims under 42 U.S.C. § 1983, as those claims were dismissed by Judge Nottingham." Apparently, as Plaintiffs contend, the special masters are allowing damages for loss of earnings and expenses sustained by a claimant before the claimant died.

Plaintiffs advance several arguments in support of their claim to the types of damages disallowed by the special masters. Some are identical to arguments which this court has already addressed. Specifically, according to Plaintiffs, the fact that the court had not dismissed a narrow category of section 1983 claims before the execution of the Remedial Plan somehow operates to mandate the award of damages which would be available under section 1983. Plaintiffs also

repeat their contentions regarding the special masters' reliance on *Fitzgerald*. There is no need to repeat what has already been said.

Plaintiffs also make two new arguments. First, they contend that the special masters' application of the Colorado survivor statute, Colo. Rev. Stat. § 13–20–101(1) was error. The court disagrees. The court is persuaded by the reasoning of *Rosenblum v. Colorado Department of Health,* 878 F. Supp. 1404. 1408–09 (D. Colo. 1994):

> The ADA does not address the issue of survival of causes of action. Thus, pursuant to 42 U.S.C. § 1988, the court must look to state law, provided that it is "not inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 588-89, 98 S.Ct. 1991, 1994-95, 56 L.Ed.2d 554 (1978); *see Slade ex rel. Slade v. United States Postal Serv.*, 952 F.2d 357, 360 (10th Cir.1991) (looking to state law to determine the survival of a Title VII action). Colorado law provides:
>
>> All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor or against whom such action has accrued. . . and, in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death.
>
> Colo.Rev.Stat. § 13-20-101(1). This provision is not inconsistent with the ADA, which does not address the availability of damages after the plaintiff's death. Further, it is not necessarily inconsistent with the policies underlying the ADA — namely, deterrence and victim compensation. *Cf. Robertson*, 436 U.S. at 590-91, 98 S.Ct. at 1995 (holding that nothing in the broad sweep of § 1983, or its underlying policies of victim compensation and deterrence,

>       indicates "that a state law causing abatement . . . should invariably
>       be ignored in favor of a rule of absolute survivorship").

Plaintiffs' attempt to distinguish *Rosenblum* is unpersuasive.

Plaintiffs' second argument is that the special masters' rulings concerning category V damages would mean that there would be no damage awards for this category, rendering the entire provision nugatory. The argument lacks force. The special masters propose to award damages permitted by the ADA and Rehabilitation Act, as limited by section 13–20–101(1). They are just not the entire array of damages sought by Plaintiffs.

**Defendants' Objections to Special Master's [Robbie M. Barr's] Recommended Award of Attorney Fees and Costs (#1567).**

Defendants make two points in objecting to the special master's award of fees and costs. First, they argue that a large part of the fees and costs were incurred in seeking damages on behalf of individual claimants and are thus not compensable under the Remedial Plan. Second, they contend that such fees and costs are section 1983 claims for eighth amendment violations and are thus subject to the hourly maximum fee provisions of the Prisoner Litigation Reform Act. Plaintiffs respond, in part, that the claims are not timely. Because Defendants' arguments are without merit, the court will assume their timeliness and simply admonish Defendants for this, their second tardy objection to an order of this special master.

Defendants entertain a fundamental misconception about the basis for awarding attorney fees under the Remedial Plan and thus make a meaningless distinction between fees incurred for monitoring compliance with the Remedial Plan and fees incurred with respect to litigation about

-12-

the damages provisions of the Remedial Plan. There is no such distinction. All fees at issue in the special master's ruling are allowed under the Remedial Plan.

Section XXXI of the Remedial Plan provides for a compliance and monitoring period. It permits class counsel to "spend the time and resources reasonably necessary to monitor compliance." The Remedial Plan's provisions concerning attorney fees and costs (section XXXIII) allow class counsel to submit their fees and costs petitions on an annual basis. Nothing in the Remedial Plan limits counsel's efforts except the provision that the efforts be "reasonably necessary." Thus, this court interprets the Remedial Plan to allow for inclusion of attorney fees and costs reasonably incurred in making sure that Defendants comply with the damages provisions in section XXXIII.

The court's examination of the fee petition and the special master's award discloses that the fees and costs sought and awarded all arise from global litigation concerning arguments which affect the entire class of claimants, not just individual claims — including those which the court has resolved in this order. In addition, since execution of the Remedial Plan, Defendants have persistently raised various obstacles to damage claims which, if accepted, would defeat the claims of every class member. Litigating these class-wide damage issues is a proper and reasonable aspect of monitoring Defendants' compliance with the Remedial Plan.

Defendants' second argument — that the fees at issue are subject to the limits of the Prison Litigation Reform Act — is as disingenuous as the first. The provision which is the basis for this argument appears in a paragraph concerning the procedures and guidelines to be followed in litigation concerning fees and costs incurred *before* execution of the Remedial Plan, not fees

and costs incurred in monitoring post-execution compliance. The fees and costs at issue here were incurred in litigating the interpretation of an uncertain part of the Remedial Plan. This court's suggestion herein that many of the damages sought would be compensable in a separate lawsuit for eighth amendment violations does not somehow transform reasonable efforts at monitoring compliance into an eighth amendment claim.

Almost as an afterthought, Defendants nitpick the special master's ruling by repeating a variety of objections which, collectively, probably do not amount to the fees and costs expended by Defendants' attorneys in making the attack. Even Defendants concede that "perhaps she [the special master] took those into consideration." It is sufficient to observe here that Defendants have fallen far short of demonstrating to this court that the findings of the special master amount to "clear error." *See* Fed. R. Civ. P. 53(g)(3)(A).

In accordance with the foregoing findings and conclusions, it is

**ORDERED** as follows:

1.  On Plaintiff Class Appeal Regarding the Availability of Damages for Denial of Medical Care (#1065), the rulings of the special masters are all AFFIRMED;

2.  On Plaintiff Class Appeal of Order of Special Masters Re: Category V Damages (Directed to Judge Nottingham) (#1149), the ruling of the special masters is AFFIRMED;

3. Defendants' Objections to Special Master's [Robbie M. Barr's] Recommended Award of Attorney Fees and Costs (#1567) are all overruled, and the award of the special master is AFFIRMED.

4. Plaintiffs' motion for an expedited hearing (#1853) is DENIED as moot.

Dated this 22nd day of August, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge