Judge John L. Kane                    F I L E D          Jay Bailey   103284
Alfred A. Arraj U.S. Courthouse A838  UNITED STATES DISTRICT COURT  FLCF/5
Courtroom A802                        DENVER, COLORADO         Box 1000
901 19th Street                       DEC 28 2009               Ft. Lyon, CO   81038
Denver, CO  80294-3589
                                      GREGORY C. LANGHAM
RE:  **Mario Primaveri   #133502**    MONTEZ V Colorado
                                      CLERK
                                                     92-cv-00870-JLK

Your Honor,
     Mario Primaveri has brain damage. Because of this, he cannot
read or write and he is very forgetful.  He is also very meek when
it comes to asserting himself to inmates or staff.   Therefore, he
is ignored by staff much of the time and his requests go unnoticed
or unsatisfied, quite often.
     I have seen his Accommodation Resolution. It has been care-
fully worded by the upper echelon in the AIC Office.  Please re-
call the letter that I wrote to you last summer about Mr. Primaveri
in regards to the time when Visitation Staff refused to allow him
access to the bathroom for a bowel movement. The crippled old man
with Diabetes, a walker, braindamage,tried to make the 300 yard
walk and also having to wait for a staff member to come along to
key the elevator, had an undesired bowel movement in the hallway
before reaching the bathroom.
     Now his Accommodation Resolution reads: #4 under Diabetics:
"When possible, access to bathroom breaks during visitation & dur-
ing programs and/or alternative methods to accommodate such need;"
     Visitation Staff have told him that it was just for urinating
and not for bowel movements. "Bathroom breaks" is the key and staff
have deliberately misinterpreted  it to deny a crippled old man
the full time for his visit from his wife, who travels from Longmont.


Hearing:
     He has been given a vibrating watch which vibrates at the set
alarm time...This does no good because of the brain damage he has
suffered keeps him from reading and writting.  He cannot read the
time on his watch or read the instructions in order to even operate
the timepiece.
     Item #5 under hearing states that he will be notified by staff
or assigned helper as to what the Public Address System is broad-
casting (all day long they broad cast info not pertinent to this
cellhouse).  This has not been done...ever.

Sight:
     Mario has no eye problems other than his need for glasses.
However, he cannot read or write due to brain damage. His digital
vibrating watch works fine for setting of the alarm, but he cannot
read it. The first digit he can, but the other two digits mean
nothing to him. However, he can read an analog watch. His inability
to read is not sight but interpretation by his mind.
     Please refer to the memo,enclosed, referring to "Talking
Books." Upon reading it you can plainly see the problem.  DOC is
only concerned with his eyesight.


Mobility:
     Please refer to the medical records that are included.  You
will read that his whole side was smashed horribly along with a
fractured skull.

Upon reading his Accomodation Resolution, you will see that he has a Walker. They have also seen fit to include lower bunk, lower tier (not first tier), permission to use elevator, etc. These are all axioms considering that the walker not only helps with walking, but is also an encumberance requiring both hands to operate.  But there are other no-brainers that were not in-cluded because Mario did not have the where-with-all to ask for them.  These include 1) a locker-box stand (so he will not fall headlong into his box) and 2) he should not have to stand for "count"). Some staff members actually expect him to jump to his feet when they appear at the doorway with their clipboards. Rising too fast can make him dizzy, so he is yelled at when he is too slow.

Since DOC has been doing asbestos removal all summer and autumn, the inmates in cell house 5 have been shuffled about and jammed into rooms with smaller capacity.  Most of the hospital beds were taken from the crippled inmates and put into storage on the 4th floor where they remain.  The substitute was the stand-ard issue steel bed with the 3 inch thick mattress. Barely adequate for an able-bodied man, but falls short when a man who had many of his bones broken is expected to get a good nights *sleep* to help prevent any further damage to his already fragile condi-tion.

DOC has used the asbestos removal to set a precedence so as to deny anyone a bed,with a thicker mattress,that can be adjusted at the foot or the head to accommodate ease of breathing or to help with lower leg edema (swelling).

A couple years ago the Infirmary at CTCF obtained brand-new state-of-the-art hospital beds for their patients. Why are the patients at Ft. Lyon denied the same care??

Mario has fallen numerous times since he arrived at this facility (FLCF). They gave him a wheelchair long enough to get him back to his room.  For 2 days he could not go to chow and could barely make it to the toilet a few feet across the room. He does not need a wheelchair all the time, but Medical will not give him one for the few times that he does need one when he is having a bad day.

Medical also refuses to issue him a shower chair eventhough he has fallen in the shower. Reporting this to Medical has not produced any positive results.

On his Accommodations he has not been given "extra time to move about the facility." With a walker and a 10-15 minute wait for staff to key the elevator, it takes him longer to get any-where yet staff still expect him to arrive at a dead run as if he were able-bodied and could use the stairs. (There is no wait for the stairs).


It is painfully obvious that the Colorado Department of Cor-rections has no intention of complying with the Montez Remedial Plan or Federal Law. This buracracy has had chance after chance to comply.  They pretend to and put up a good show, but then they do things to out flank Court Order. e.g. Rewording Accommo-dation Resolutions in order to lessen their impact or even change the relief for the handicapped individual.  Maybe a couple hundred thousand dollars for each violation per inmate might get their attention, especially if it came out of their pay instead of the taxpayers pockets.

Mario had an assigned helper, but he was also assigned to some other inmates as well and has recently been moved down to the second floor, making it impossible to give him any real help.

Mario was moved into my room last Friday and since then I have been made aware of his plight and DOC's unacceptable help for his issues, so I will read and write for him.

Your Honor, there are many men in the SNMU (Special needs medical unit) that are living on borrowed time or are so incapacitated that they could not possibly pose a threat to society. Why are these men in prison?

It is at least ten times harder to cope with prison if you are handicapped than if you are ablebodied.  Except for the ones with the propensity for violence on a day to day basis, keeping them in prison is ridiculous.  They can be bed-bound, wheelchair-bound, or senial, somewhere else where they won't be mistreated. Somewhere else where they won't have to fight to posess a pair of sunglasses or a magnifying glass to read with. Or talking books, an extra deck of playing cards, a shower chair, ora back-brush. I could go on to the bottom of the page.

The point is that even the simple necessities are either denied or requires a series of hoops to jump through and red-tape to cut in order to attain it.  Then DOC staff is waiting in the wings for an excuse to take it from you.

Even getting out on parole has a catch.  Manditory Parole; where you can be brought back any time for the smallest infraction of the rules that are not even mistomeanors. Not answering the phone in the middle of the night, for example, so that the Parole Officer can determine if you have broken curfew.

DOC staff do not have a pro-active attitude towards helping any handicapped inmates. In fact it is just the opposite.  They firmly believe taht we are in prison **for** punishment instead of **as** punishment.  I am guilty of the same mindset as they for I had it also before I was incarcerated.

Please send copy of this to the Special Masters and to King & Griesen...Thank-you.


                    Sincerely,

                    Jay H. Bailey

                    Jay H. Bailey

*RCVD 12-21-09*

# STATE OF COLORADO



**COLORADO DEPARTMENT OF CORRECTIONS**

Division of Clinical Services
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone:  (719) 579-9580
Fax:    (719) 226-4755
Web:   www.doc.state.co.us

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

December 14, 2009

Mr. Mario Primavera, #133502
Fort Lyon Correctional Facility
P.O. Box 1000
Fort Lyon,  CO 81038

RE:   Talking Book Library application

Dear Mr. Primavera;

My office has received your Talking Book Library application.   The criteria for receiving Talking Book Library services are the inability to hold a book and turn the pages; visual disability including blindness and a learning disability.   I have reviewed your Accommodation Resolution dated October 19, 2009 and your medical information related to your vision.  It is my understanding that you wear eyeglasses which allow you to see well enough to read and that you do not have a vision disability listed on your Accommodation Resolution.  Therefore, because you do not meet the criteria for Talking Book Library services, I cannot forward your application to the State library.  Thank you for your interest in the Talking Library program!

Sincerely,

Anna Marie Campbell
Administrative Services Manager
Division of Clinical Services

Cc: J. Cordova, Case Manager
      W. Grover, ADA Coordinator

*REC'D 11/23/09*

## ACCOMMODATION RESOLUTION

OFFENDER NAME: PRIMAVERI, MARIO
DOC #: 133502

**You DO HAVE DIABETES and are therefore considered a class member of the *Montez v. Owens* lawsuit**

**ALL DIABETICS are entitled to the below listed accommodations, as needed:**
1.  Access to finger sticks upon request;
2.  Timing of meals with insulin;
3.  Where hypoglycemia or occurrence of a hypoglycemic event is documented, access to housing in a cell with a call button if the lock on the cell the offender is currently housed in is controlled by DOC staff;
4.  When possible, access to bathroom breaks during visitation & during programs and/or alternative methods to accommodate such need;
5.  No co-payments related to treatment for diabetes or diabetes-related conditions excluding the annual $5.00 charge assessed to all DOC offenders;
6.  Access to after-hour testing kits;
7.  Access to all benefits, services and programs offered at DOC, regardless of diabetes, including progression to lower level security facilities;
8.  Annual education on diabetes; and
9.  Prescription medication(s), IF NECESSARY, as determined by clinical services.

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan.

**You DO HAVE A HEARING DISABILITY**
Following a disability screening it has been determined that you do have a hearing disability and are therefore, entitled to the following accommodations:

1.  Two hearing aids
2.  Vibrating Watch
3.  Assignment to a designated facility
4.  Designated facilities shall have strobe and audio alarms in inmate areas where you have an independent means of egress. When you are housed at a designated facility where you do not have an independent means of egress, the strobes & alarms are not required. If you are housed at CTCF you shall be housed in a cell with a strobe alarm.
5.  Facility staff or assigned offender messenger are responsible to ensure that PA Announcements and Reporting Instructions are provided to you in a format you can understand
6.  Reasonable accommodations will be provided during searches. Refer to Section XXIII of the Remedial Plan
7.  Requires staff assistance during an emergency or evacuation
8.  Reasonable accommodations will be provided during searches. Refer to Section XXIII of the Remedial Plan
9.  Closed-caption feature on day hall television shall be turned on at all times
10. ASL Class

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

**You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or becomes inoperable for any reason.**

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list.   Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

If your condition worsens and you feel that you require additional accommodations, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

## You DO HAVE A MOBILITY DISABILITY

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Walker
2. Assignment to a designated facility
3. Lower Bunk
4. Lower Tier
5. Not required to use stairs and when housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator
6. Requires staff assistance when cuffed and/or shackled. Refer to Section XXII of the Remedial Plan
7. Requires staff assistance during transport when embarking and disembarking from the vehicle
8. Reasonable accommodations will be provided during searches. Refer to Section XXIII of the Remedial Plan
9. Requires staff assistance during an emergency or evacuation
10. Transportation in an accessible vehicle. Refer to Section XXIV of the Remedial Plan.
11. Assistance with carrying and disposing of food tray contents by your OCA II or offenders assigned as dining room workers.

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

**You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or becomes inoperable for any reason.**

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list.   Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

If your condition worsens and you feel that you require additional accommodations, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

You have 30 days from the date this document is served upon you to submit a Step 1 ADA Grievance, to the office of the AIC, on any matter addressed in this Resolution. Please refer to A.R. 850-04 for details regarding the grievance process. This accommodation resolution supersedes any other version, on any date, prior to the date on this document.

_Paula J. Frantz_ 10/9/09          _Kathleen Baxter_ 10/8/09
Chief Medical Officer         Date          AIC Acting AIC          Date

**E-Mailed to Facility Litigation Coordinator for printing on yellow paper & distribution to the following-**Warden, Case Manager (Working File), 2 copies to HSA for placement in Medical & Mental Health File, & to any other DOC or Contract employee with a need-to-know (work supervisor, teacher, etc…) & Print two full size copies on yellow paper & serve on offender



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Gregory C. Langham
*Clerk*

Phone: (303) 844-3433
Fax:     (303) 335-2714

This is the best quality copy of the following document.

Clerks Office
United States District Court

DC Form 78 (2/93)  / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

### COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | OFFENDER NO. | LIVING UNIT |
|---|---|---|---|
| | | | |

SUBJECTIVE:

DATE

TIME

PROBLEM  1  2  _____

PLAN / ORDERS

OBJECTIVE:    Temp. _____    Pulse _____    Resp. _____    B/P _____ / _____

SIGNATURE:
NURSE: _____

P.E.: _____

PHYSICIAN: _____
Rx NO.

ASSESSMENT:

---

| PRICARE CODE NO. | NAME | OFFENDER NO. | LIVING UNIT |
|---|---|---|---|
| | | | |

SUBJECTIVE:

DATE

TIME

PROBLEM  1  2  _____

PLAN / ORDERS

OBJECTIVE:    Temp. _____    Pulse _____    Resp. _____    B/P _____ / _____

SIGNATURE:
NURSE: _____

P.E.: _____

PHYSICIAN: _____
Rx NO.

ASSESSMENT:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201



**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Gregory C. Langham
*Clerk*

Phone: (303) 844-3433
Fax:     (303) 335-2714

This is the best quality copy of the following document.

Clerks Office
United States District Court

**COLORADO STATE DEPARTMENT OF CORRECTIONS**
AUTHORIZATION TO **RELEASE/REQUEST** MEDICAL INFORMATION

Sec. 5 HR/Req

I,_____DOB_____DOC #_____FACILITY_____

(Please Print)

SS#_____

Authorize the Department of Corrections to _____release _____request

medical/mental health records (to/from)_____

_____NAME OF PERSON OR ORGANIZATION.

Extent or nature of information, please include dates of service requested.

_____Copy of History and Physical, Dis. Summary and Procedure Note.
_____Copy of Ambulatory Health Record.
_____Copy of Medical/Mental Health Records--Records released for continuity.
_____OTHER _____of care when DOC receives info.

When Dept. of Corrections requests information mail to:

I understand that the information to be released may include HIV infections and Drug and Alcohol documentation.

I certify that this request has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time, except to the extent that action has already been taken to comply with it. This release will remain in effect for 90 days, unless specified in writing for a shorter time frame.

I make this consent upon the premise that all disclosure made pursuant to the authority granted by this consent shall be accomplished by a written notice which states as follows:

"This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Fed. Regulation (42 CFR, part 2) prohibits you from making any further disclosure of it without specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose."

I hereby release the health care provider from any liability which may result from furnishing the information requested as authorized in this release.

I have read the above and foregoing **PATIENT'S CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION** and I do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

Date _2/11/09_____ OFFENDER'S NAME _____

WITNESS _____

31215(R1/00)    Dist:    White-Med. Rec.    Canary-Offender Copy

**MESSAGE FROM MEDICAL**

Date: _11/16/07_                CH: _5_

_Primaveri_                        _133502_
Inmate Name                       DOC #

Just for your information,
we have received your
records from CMHIP. They
are now part of your
medical records.

_Miller, MRTI_
Signature

# DE...RTMENT OF CORRECTION...
## AMBULATORY HEALTH RECORD

| 133502 | PRIMAVERI, MARIO | Facility: | FL | LU: | FLCF/BLDG5 | C | 3 | 348 | 1B |
|---|---|---|---|---|---|---|---|---|---|

**SUBJECTIVE**

Active Medication(s): ALBUTEROL INHALER - 90 MCG - 2 PUFFS AS NEEDED TWICE DAILY; AMITRIPTYLINE - 50 MG - TWO TABLETS EVERY EVENING; ASA ENTERIC - 81 MG - TAKE ONE TABLET DAILY BY MOUTH; ATENOLOL (TENORMIN) - 25 MG - ONE TABLET DAILY; GEODON - 40 MG - ONE CAPSULE EVERY EVENING; GLUCOVANCE - 2.5/500 MG - ONE TABLET TWICE DAILY BY MOUTH; LEVOTHYROXINE - 75 MCG - ONE TABLET DAILY; LOPID - 600 MG - ONE TABLET TWICE DAILY; NITROSTAT SL - 0.4 MG - DISSOLVE 1 TABLET UNDER TONGUE, REPEAT EVERY 5 MIN AS NEEDED, UP TO 3 TIMES; PLAVIX - 75 MG - ONE TABLET DAILY; ZOLOFT - 100 MG - ONE TABLET EVERY EVENING; ZOLOFT - 50 MG - ONE TABLET EVERY EVENING

58 year old male who very recently showed a TCA blood level that was unsually high (over 400) though his EKG did not appear changed and he did not appear symptomatic or toxic. He was using regular and PRN elavil just for purposes of sleep and mood. His chief complaint other than sleep has to do with recurrent and periodically sevfere depression. His history suggests refractoriness develops with time with past use of Effexor and now with Zoloft. Increased SSRI use probably compounded his TCA metabolism and elevated the blood level and while I do not think he was actually toxic, further efforts to increase SSRI use make Elavil risky and I am discontinuing it altogether. I propose to increase the ZOloft dose to 175 mgs and to provide Depakote instead of Geodon as an augmenting agent because of its adjunct antidepressant potential benefit and soporific side effect. We discuss, he appears to understand and agrees.

Of concern is the history of TBI and memory difficulty somewhat evident today. He cannot tell me the month, but knows it is the "first month of 2009." He thinks today is 1/1/09 and cannot recall my name. Cannot name the President. Thinks it is "the black man" and cannot name Bush. He is not accurate in recalling past medication use and may be a risky patient with respect to self meds because of memory deficiency.

We discuss the treatment plan, the potential risks and the hoped for benefits.

Weight about 196 pounds.

**OBJECTIVE**

Moderately depressed but denying suicidal thinking albeit with a past suicide history - wanted to die when he jumped from the tier. Disappointed at first to learn that he had survived.

No psychotic signs or symptoms. Normal speech though he reports difficulty with speech at times, when fatigued. Cooperative. Hopeful now.

**ASSESSMENT**

V70.2 - OTH&UNSPEC GENERAL PSYC EXAMINATION

| Temperature: | | Pulse: | | Weight: | |
|---|---|---|---|---|---|
| Respiratory: | | BP: | / | | |

**PLANS / ORDERS**

Allergies: No Known Allergies

Return in 6 weeks for follow up.

D/C - Rx#: 2400226  Drug Brand Name: GEODON - 40 MG  Alternate Name: ZIPRASIDONE  Rx Date: 11/14/2008  Disc Date: 01/02/2009  Rx Instructions: ONE CAPSULE EVERY EVENING

D/C - Rx#: 2400227  Drug Brand Name: AMITRIPTYLINE - 50 MG  Alternate Name: AMITRIPTYLINE  Rx Date: 11/14/2008  Disc Date: 01/02/2009  Rx Instructions: TWO TABLETS EVERY EVENING

D/C - Rx#: 2400232  Drug Brand Name: ZOLOFT - 50 MG  Alternate Name: SERTRALINE  Rx Date: 11/14/2008  Disc Date: 01/02/2009  Rx Instructions: ONE TABLET EVERY EVENING

NEW - Rx#: 2417182  Drug Brand Name: ZOLOFT - 25 MG  Alternate Name: SERTRALINE  Rx Date: 01/02/2009  Disc Date: 03/14/2009  Rx Instructions: THREE TABLET(S) IN THE EVENING BY MOUTH (DOSE NOW IS 175 MG QD)

NEW - Rx#: 2417183  Drug Brand Name: DEPAKOTE DR - 250 MG  Alternate Name: DIVALPROEX  DR  Rx Date: 01/02/2009  Disc Date: 03/14/2009  Rx Instructions: THREE TABLET(S) IN THE EVENING BY MOUTH

| Datetime: | Providers: | MILLER, FREDERICK M |
|---|---|---|
| 01/02/2009 09:43 | | |
| | | |
| | | |

| PA/NP/RD | PHYSICIAN | NURSE |
|---|---|---|
| Datetime: 01/02/2009 09:43 | Provider: MILLER, FREDERICK M | DateTime |

FOLLOW-UP

# DEPARTMENT OF CORRECTION
# AMBULATORY HEALTH RECORD

Page 1 of 1

Printed by: HOLT, KATHY M
Printed at: 11/13/2008 11:08:58
Encounter#: 1810062 @ FL

| 133502 | PRIMAVERI, MARIO | Facility: | FL | LU: | FLCF/BLDG5 | C | 3 | 348 | 1B |
|--------|------------------|-----------|-----|-----|------------|---|---|-----|-----|

## SUBJECTIVE

Active Medication(s): ACTOS - 30 MG - ONE TABLET DAILY;
ALBUTEROL INHALER - 90 MCG - 2 PUFFS AS NEEDED
TWICE DAILY; AMITRIPTYLINE - 50 MG - TWO TABLETS
EVERY EVENING; AMITRIPTYLINE - 50 MG - ONE TABLET
EVERY EVENING AS NEEDED FOR INSOMNIA(MAX 3X
PER WEEK); ASA ENTERIC - 81 MG - TAKE ONE TABLET
DAILY BY MOUTH; COLACE - 100 MG - TAKE ONE CAP
TWICE A DAY; GEODON - 40 MG - ONE CAPSULE EVERY
EVENING; LEVOTHYROXINE - 75 MCG - ONE TABLET
DAILY; LOPID - 600 MG - ONE TABLET TWICE DAILY;
PLAVIX - 75 MG - ONE TABLET DAILY; TENORMIN - 25 MG
- ONE TABLET DAILY; ZOLOFT - 25 MG - ONE TABLET
EVERY EVENING FOR ONE WEEK THEN INCREASE TO
TWO EVERY EVENING FOR ONE WEEK THEN INCREASE
TO FOUR(OR ONE 100MG TAB) EVERY EVENING

## OBJECTIVE

He is here for restrictions , to review. Have agreed that no oc
related to asthma, but since in good control, have taken off
the 8000' restriction. Most others just renewed. He has had hx
of several falls in past so left most on for safety reasons.

## ASSESSMENT

434.11 - CEREBRAL EMBOLISM W/INFARCT
99213 - OFFICE/OUTPATIENT VISIT, EST

| Temperature: | 97.6 | Pulse: | 98 | Weight: | 198 |
|---|---|---|---|---|---|
| Respiratory: | 18 | BP: | 120 / 72 | | |

Vitals Taken: PULSE OXSYM=93.00;

### PLANS / ORDERS

Allergies: No Known Allergies

NEW - Rx#: 2399824  Drug Brand Name: NITROSTAT SL - 0.4 MG
Alternate Name: NITROGLYCERIN  Rx Date: 11/13/2008  Disc Date:
05/12/2009 Rx Instructions: DISSOLVE 1 TABLET UNDER TONGUE,
REPEAT EVERY 5 MIN AS NEEDED, UP TO 3 TIMES

Medical Housing Restrictions: Added: FIRST-TIER; LOWER BUNK;NO
OC/ISPR - related to asthma.;Removed: FIRST-TIER; 8,000 FT;LOWER
BUNK;NO OC/ISPR;

Medical Work Restrictions: Added: WRK-CONSIS - Needs a break from
work every 2 hrs related to dizzy spells; INTENSIVE - No more thatn 4 hrs a
day and breadks every 2 hrs;NOHVY-LIFT - no more than 20#;Removed:
INTENSIVE - Should not stand for more than 2 hrs at at time without
breaks;To work no more than 4 hrs a day.; NOHVY-LIFT - greater than 20
#;WRK-CONSIS - Hx of dizziness and ? cerebrbal infarct. Have set limits on

*[handwritten]* Schedule appt to discuss self meds —
within a month or so—

| Datetime: | Providers: | HOLT, KATHY |
|---|---|---|
| 11/13/2008 10:51 | | |

PA/NP/RD _____ *[signature]*

PHYSICIAN _____

Datetime: 11/13/2008 10:51

Provider: HOLT, KATHY

NURSE *[signature]*

DateTime  11-13-08  1340

**LabCorp** Laboratory Corporation of America   LabCorp Denver
6665 S Kenton Street Ste 210, Englewood, CO 80111-0000          Phone: 303-792-2600

| SPECIMEN 078-166-4933-0 | TYPE S | PRIMARY LAB DV | REPORT STATUS COMPLETE | Page #:   1 |
|---|---|---|---|---|

| ADDITIONAL INFORMATION |
|---|
| FASTING: N |
| DOB: 4/29/1950 |

| CLINICAL INFORMATION |
|---|
| CD- 54035102087 |

| PHYSICIAN ID. LAURENCE T | PATIENT ID. 133502 |
|---|---|

| PATIENT NAME | SEX | AGE(YR./MOS.) |
|---|---|---|
| PRIMAVERA,MARIO | M | 56 / 10 |

PT. ADD.:

ACCOUNT: CDC - A V C F
Arkansas Valley Correctional
12750 Hwy 96, Lane 13
Crowley          CO   81034-0000
ACCOUNT NUMBER:   04078364

| DATE OF COLLECTION | TIME | DATE RECEIVED | DATE REPORTED | TIME | |
|---|---|---|---|---|---|
| 3/19/2007 | 6:00 | 3/20/2007 | 3/21/2007 | 16:20 | 836 |

| TEST | RESULT | LIMITS | LAB |
|---|---|---|---|
| PE(Rfx IFE), Random Ur | | | |
| **> Protein,Total,Urine** | **17.5H** mg/dL | 0.0 - 15.0 | 01 |
| Albumin, U | 23.5 % | | 02 |
| Alpha-1-Globulin, U | 3.7 % | | 02 |
| Alpha-2-Globulin, U | 13.7 % | | 02 |
| Beta Globulin, U | 43.0 % | | 02 |
| Gamma Globulin, U | 16.1 % | | 02 |
| M-Spike, % | Not Observed % | Not Observed | 02 |
| Please note: | | | 02 |
| Protein electrophoresis scan will follow via mail or courier. | | | |
| Hepatitis Panel (4) | | | |
| Hep A Ab, IgM | Negative | Negative | 01 |
| HBsAg Screen | Negative | Negative | 01 |
| Hep B Core Ab, IgM | Negative | Negative | 01 |
| HCV Ab | 0.2 s/co ratio | 0.0 - 0.9 | 01 |
| Negative | | | |
| Not infected with HCV, unless recent infection is suspected or other evidence exists to indicate HCV infection. | | | |
| Microalb/Creat Ratio, Randm Ur | | | |
| Creatinine, Urine | 114.9 mg/dL | Not Estab. | 01 |
| Microalbum.,U,Random | <3.0 ug/mL | 0.0 - 17.0 | 01 |
| Microalb/Creat Ratio | <2.6 ug/mg creat | 0.0 - 30.0 | 01 |
| Microalbumin, Random Urine | | | |
| Microalbum.,U,Random | <3.0 ug/mL | 0.0 - 17.0 | 01 |
| TSH | 5.398 uIU/mL | 0.350 - 5.500 | 01 |

LAB: 01 DV   LabCorp Denver                    DIRECTOR: Jan Woods E MD
6665 S Kenton Street Ste 210, Englewood,  CO 80111-0000

LAB: 02 BN   LabCorp Burlington               DIRECTOR: Frank Hancock  MD
1447 York Court, Burlington,  NC 27215-2230

6/11/2007

Labs Reviewed
Nurse_____
Date_____ 3/23

| Pat Name:  PRIMAVERA,MARIO | Pat ID: 133502 | Spec #: 078-166-4933-0 | Seq #: 836 |
|---|---|---|---|

Results are Flagged in Accordance with Age Dependent Reference Ranges
Last Page of Report

Printed By: CLAUNCH, GLENNA M
Printed at: 12/29/2008 09:25:57

# DEPARTMENT OF CORRECTIONS
## AMBULATORY HEALTH RECORD

CHRONIC CARE CLINIC
Page 1 of 2

Encounter#: 1810864 @ FL

| 133502 | PRIMAVERI, MARIO | Facility: | FL | LU: | FLCF/BLDG5 | C | 3 | 348 | 1B |
|--------|------------------|-----------|----|----|-----------|---|---|-----|-----|

## SUBJECTIVE

Active Medication(s): ACTOS - 30 MG - ONE TABLET DAILY;
ALBUTEROL INHALER - 90 MCG - 2 PUFFS AS NEEDED
TWICE DAILY; AMITRIPTYLINE - 50 MG - TWO TABLETS
EVERY EVENING; AMITRIPTYLINE - 50 MG - ONE TABLET
EVERY EVENING AS NEEDED FOR INSOMNIA(MAX 3X
PER WEEK); ASA ENTERIC - 81 MG - TAKE ONE TABLET
DAILY BY MOUTH; COLACE - 100 MG - TAKE ONE CAP
TWICE A DAY; GEODON - 40 MG - ONE CAPSULE EVERY
EVENING; LEVOTHYROXINE - 75 MCG - ONE TABLET
DAILY; LOPID - 600 MG - ONE TABLET TWICE DAILY;
NITROSTAT SL - 0.4 MG - DISSOLVE 1 TABLET UNDER
TONGUE, REPEAT EVERY 5 MIN AS NEEDED, UP TO 3
TIMES; PLAVIX - 75 MG - ONE TABLET DAILY; TENORMIN
- 25 MG - ONE TABLET DAILY; ZOLOFT - 25 MG - ONE
TABLET EVERY EVENING FOR ONE WEEK THEN
INCREASE TO TWO EVERY EVENING FOR ONE WEEK
THEN INCREASE TO FOUR(OR ONE 100MG TAB) EVERY
EVENING

Problems with depression. Doesn't feel like the med is
enough. Can't sleep. Thinking about suicide. Don't plan on it
but once in awhile it gets in his mind. No SE's to meds.
Appetite OK. Gets along with people more or less.

## OBJECTIVE

NAD
coop
a/o/log
mood some dysthymic
No SI/HI
No AVH
No PS/FOI's

## ASSESSMENT

MDD, rec, sev
meth dep

V70.2 - OTH&UNSPEC GENERAL PSYC EXAMINATION

Temperature: ___  Pulse: ___  Weight: ___
Respiratory: ___  BP: ___ / ___

### PLANS / ORDERS

Allergies: No Known Allergies

Increase Zoloft. RTC 2 months.

Around 12/14/08 please check amitryptiline level in morning before morning
meds.

D/C - Rx#: 2380863 Drug Brand Name: AMITRIPTYLINE - 50 MG
Alternate Name: AMITRIPTYLINE  Rx Date: 09/26/2008  Disc Date:
11/14/2008  Rx Instructions: ONE TABLET EVERY EVENING AS NEEDED
FOR INSOMNIA(MAX 3X PER WEEK)

D/C - Rx#: 2380865 Drug Brand Name: AMITRIPTYLINE - 50 MG
Alternate Name: AMITRIPTYLINE  Rx Date: 09/26/2008  Disc Date:
11/14/2008  Rx Instructions: TWO TABLETS EVERY EVENING

D/C - Rx#: 2380867 Drug Brand Name: ZOLOFT - 25 MG  Alternate
Name: SERTRALINE  Rx Date: 09/26/2008  Disc Date: 11/14/2008  Rx
Instructions: ONE TABLET EVERY EVENING FOR ONE WEEK THEN
INCREASE TO TWO EVERY EVENING FOR ONE WEEK THEN
INCREASE TO FOUR(OR ONE 100MG TAB) EVERY EVENING

D/C - Rx#: 2380868 Drug Brand Name: GEODON - 40 MG  Alternate
Name: ZIPRASIDONE  Rx Date: 09/26/2008  Disc Date: 11/14/2008  Rx
Instructions: ONE CAPSULE EVERY EVENING

NEW - Rx#: 2400226 Drug Brand Name: GEODON - 40 MG  Alternate
Name: ZIPRASIDONE  Rx Date: 11/14/2008  Disc Date: 03/14/2009  Rx
Instructions: ONE CAPSULE EVERY EVENING

NEW - Rx#: 2400227 Drug Brand Name: AMITRIPTYLINE - 50 MG
Alternate Name: AMITRIPTYLINE  Rx Date: 11/14/2008  Disc Date:
03/14/2009  Rx Instructions: TWO TABLETS EVERY EVENING

NEW - Rx#: 2400228 Drug Brand Name: AMITRIPTYLINE - 50 MG
Alternate Name: AMITRIPTYLINE  Rx Date: 11/14/2008  Disc Date:
12/19/2008  Rx Instructions: ONE TABLET EVERY EVENING AS NEEDED
FOR INSOMNIA(MAX 3X PER WEEK)

| Datetime: | Providers: | WESTCOT, JOHN E ▼ |
|-----------|------------|-------------------|
| 11/14/2008 08:48 | | ▼ |
| | | ▼ |

PA/NP/RD _____  PHYSICIAN _____  NURSE _____
Datetime: 11/14/2008 08:48  Provider: WESTCOT, JOHN E  DateTime _____

BOULDER COMMUNITY HOSPITAL



Patient Name: **PRIMAVERI,MARIO 677**
Account Number: **H043316991**
Attending/ER Physician: RICHARD J FOX
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: SELF PAY
Adm Date/Source: 07/21/05    EMR

Date of Birth: 04/29/1950
Unit Number: X000701279
Patient Type: ADM IN
Location: ICU 122-1
Policy Number: 550842944
Group:
Discharge Date:

JOB# 482558

## NEUROSURGICAL CONSULTATION

DATE OF CONSULTATION: 07/21/05

REASON FOR CONSULTATION:  Closed head injury.

HISTORY Of PRESENT ILLNESS: Mario is a 55-year-old male who is under arrest for narcotic-related charges who has been in jail for the last 3 to 4 days. He apparently has a number of alleged crimes and bail was set at $500,000. He was on the second floor of the prison today when he climbed up on the railing and jumped off. He fell backwards and landed on his upper back on a concrete ground below. There is a video tape apparently of the accident. He had no seizure activity. No clear loss of consciousness but did hit his head very hard on the ground secondarily after his back hit. He was in severe pain. EMS was activated and he was brought to Boulder Community Hospital where he was awake and alert and was taken through the ER for primary review and then to the CT scanner.

PAST MEDICAL HISTORY:  Significant for hypertension, degenerative joint disease, arthritis, kidney stones, diabetes, prostate problems.

MEDICATIONS:   He apparently takes atenolol 50 mg PO q.h.s.; clonidine 0.1 mg p.r.n. anxiety; ibuprofen, Tylenol.

ALLERGIES: He has no known allergies.

PAST SURGICAL HISTORY:  He has had some previous surgery. The patient was unable to give his own history as he was rather confused, although he was awake and alert.

REVIEW OF SYSTEMS:  He was unable to give a review of systems.

FAMILY HISTORY: Unobtainable.

SOCIAL HISTORY: Unobtainable.

PHYSICAL EXAMINATION:  He is an older gentleman lying supine on the hospital stretcher.  The back board has been removed.  He remains in a cervical collar.  He has an incision in the right upper quadrant on his abdomen in a paramedian location.  An incision on his neck is well healed.  There is a bruise appreciated above the left iliac crest posteriorly.  The spine was palpated from the sacrum to the cervical collar.  There was no fracture or subluxation appreciated.  No bruising, ecchymosis, or step-off.  He moved all extremities with good strength, right lower extremity, left lower extremity, right arm, left arm.  Individual muscle groups cannot be tested.  He is complaining of pain in his chest and abdomen and severe pain in his back.  His eyes are open and pupils are reactive bilaterally.  His extraocular movements appear to be intact.  On motor exam, he follows commands in all 4 extremities.  Verbal: He responds to simple questions, yes, no, but is able to say his name, but principally he complains of severe pain and saying, "help me, help me, help me. Can I sit up, can I sit up?"

X-RAYS:  CT scan of the head is reviewed.  He has a large left subbasilar skull fracture, a large left-sided skull fracture going through the occipital bone down the foramen magnum up into the left parietal bone where there is depression of the skull fracture.  It is approximately a half cranial table thick depressed.  There is diffuse traumatic subarachnoid hemorrhage appreciated on the scan bilaterally.  There is no clear indication of acute subdural hematoma.  There is no

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: MR0721-0119

BOULDER COMMUNITY HOSPITAL

CT of the head:  Left basilar skull fracture with blood throughout. Fracture through mastoid sinus, pneumocephalus, bilateral temporal bone fractures with mild left-sided displacement, diffuse subarachnoid bleed without midline shift.
CT of the neck:  No acute fracture.
CT of the chest:  Left hemopneumothorax.  Multiple left-sided rib fractures.  Left scapular and clavicular fractures.  Subcutaneous emphysema.  Normal aortic arch and left pulmonary contusion.
CT of the abdomen and pelvis:  No acute findings.

IMPRESSION
1. Left hemotympanum, associated basilar skull fracture.
2. Left hemopneumothorax.
3. Left clavicular fracture.
4. Left scapular fracture.
5. Multiple left-sided rib fractures.
6. Left pulmonary contusion.

PLAN:  Intensive care unit observation, serial neurologic exams, repeat CT imaging of the head per Dr. Nelson, neurosurgery.  Left-sided chest tube and central line were placed in the emergency room. The patient will need aggressive pulmonary toilet.

<<Signature on File>>

_____               RICHARD J FOX MD

D: 07/21/05 1858  T: MMR.CAL2  07/21/05 1930
CC: FOX,RICHARD J; NELSON,E LEE

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: MR0721-0128

INPATIENT/EDR CONSULTATION
DRAFT UNTIL SIGNED    PAGE 2 of 2

BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO 677**
Account Number: **H043316991**
Attending/ER Physician: RICHARD J FOX
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 07/21/05   EMR

Date of Birth: 04/29/1950
Unit Number: **X000701279**
Patient Type: ADM IN
Location: 2W 245-1
Policy Number: 550842944
Group:
Discharge Date:

JOB# 482603

## CONSULTATION
## FULL TRAUMA ACTIVATION REPORT

DATE OF CONSULTATION: 07/21/05

REASON FOR EVALUATION: Fall.

HISTORY OF PRESENT ILLNESS: 55-year-old prisoner who sustained a fall from approximately 10 feet. He was noted to be unconscious. Initially in the field, he had a large amount of blood coming from his left ear. En route from the jail to the emergency room, his systolic blood pressure was in the 70s and he was alert and appropriate x1. On emergency room arrival, the patient is unable to provide any historical details. Rather he continues to perseverate, "Help me."

PAST MEDICAL HISTORY: Hypertension, arthritis, diabetes (diet-controlled), nephrolithiasis, degenerative disk disease.

PAST SURGICAL HISTORY: Anterior cervical diskectomy and fusion.

MEDICATIONS: Clonidine 0.1 mg PO q. 8h. p.r.n.; ibuprofen 600 mg q. 6h. p.r.n.; Tylenol p.r.n.; and atenolol 50 mg q.h.s.

ALLERGIES: No known drug allergies.

PHYSICAL EXAMINATION
VITAL SIGNS: Emergency department vitals: Blood pressure 107/56, heart rate 92, respirations 20, Glasgow Coma Scale score 14, saturation 90% on 100% face mask.
PRIMARY SURVEY: A, B, C intact.
SECONDARY SURVEY: HEENT: Obvious left hemotympanum with large extravasating blood. Right tympanic membrane clear. No obvious scalp deformity or laceration. Right pupil 5 mm, left pupil 4 mm, both equally round and reactive to light and accommodation.
NECK: Trachea midline without crepitus. Cervical collar is in place. Ecchymosis over lower left neck and clavicular head. Mild crepitus. No posterior spine or cervical tenderness.
HEART: Regular without murmurs.
LUNGS: Diminished left chest sounds. Multiple obvious rib fractures with deformity and subcutaneous emphysema. Obvious left clavicle fracture.
ABDOMEN: Soft, nontender.
PELVIC EXAM: Pelvis stable to rock.
GENITOURINARY: Normal external male genitalia. Clear yellow urine in Foley.
BACK: Tenderness over the left scapula.
EXTREMITIES: Bilateral knee abrasions without overlying tenderness. Palpable distal pulses.
NEUROLOGIC: The patient is confused and perseverating.

LABORATORY DATA: White count is 22, hemoglobin 13, platelets 212, sodium 141, potassium 3.2, chloride 108, CO2 is 23, BUN 22, creatinine is 1.1. Glucose is 135. Alcohol normal. INR is 1.0. Urinalysis is 1+ blood with 1 to 3 red blood cells.

X-RAYS: Chest x-ray: Left hemopneumothorax, left clavicular fracture, left scapular fracture, multiple left rib fractures.

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: MR0721-0128

BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO 677**
Account Number: **H043316991**
Attending/ER Physician: RICHARD J FOX
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 07/21/05   EMR

Date of Birth: 04/29/1950
Unit Number: X000701279
Patient Type: ADM IN
Location: ICU 102-1
Policy Number: 550842944
Group:
Discharge Date:

JOB# 488643

## OPERATIVE REPORT

DATE OF OPERATION: 08/01/05
SURGEON: E LEE NELSON MD
ANESTHESIA: GENERAL

PREOPERATIVE DIAGNOSIS: Left chronic subdural hematoma.

POSTOPERATIVE DIAGNOSIS: Left chronic subdural hematoma.

PROCEDURE: Left frontal bur hole, placement of subdural drain, and drainage of subdural hematoma.

ESTIMATED BLOOD LOSS: 10 ml.
COMPLICATIONS: None.

INDICATIONS FOR PROCEDURE: Mr. Primaveri is a 55-year-old male, status post attempted suicide in jail here in Boulder. He came into the hospital on July 21, 2005, with a severe closed head injury. It was nonoperative at that time. On subsequent CT scans of the brain, he has developed an increasingly large left chronic subdural hematoma with some mass effect and shift of the midline. Neurologically he has slowly improved since his admission, but he continues to be very confused. As a result of the increasing mass effect of the subdural hematoma, his wife was consented for placement of a subdural drain and bur hole drainage. She understood the risks of the procedure including infection, bleeding, stroke, paralysis, death, hemorrhage into the brain, and recurrent subdural hematoma, as well as the high probability of additional procedures in the future. She wished to proceed despite these risks.

PROCEDURE IN DETAIL: The patient was brought to the operating room and placed in the supine position. General anesthesia had already been started, as the patient had undergone an MRI of the cervical spine under general anesthesia to demonstrate that there was no cervical spine injury. This way his cervical collar could be removed. He was positioned on the hospital bed and the Mayfield horseshoe head holder was used. His head was then prepped using DuraPrep and local anesthesia was infiltrated into the skin.

A small linear incision was made just in front of and above the coronal suture to the left of the midline using a cold knife. The subcutaneous tissue was dissected using Bovie cautery. A self-retaining retractor was then placed. We then drilled a small bur hole exposing the dura. The dura was coagulated and opened in a cruciate fashion. A subdural was then drained through the bur hole and a subdural catheter was inserted into the subdural space. The fluid was dark yellow in color and appeared to be under some pressure. We then irrigated the wound with a large amount of antibiotic saline, and then plated the bur hole using a bur hole cover plate from the Synthes craniofacial plating set.

We then closed the galea with interrupted Vicryl sutures and put a running Prolene in the skin itself. The catheter was tunneled and sutured firmly in place. This concluded the procedure. A PICC line was then placed by interventional radiology at the conclusion of the procedure.

_____                    E LEE NELSON MD

D: 08/01/05 1521  T: MMR.MFM  08/02/05 0949

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: SGY0802-0005

OPERATIVE REPORT
DRAFT UNTIL SIGNED   PAGE 1 of 2

## BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO 677**
Account Number: **H043316991**
Attending/ER Physician: RICHARD J FOX
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 07/21/05    EMR

Date of Birth: 04/29/1950
Unit Number: X000701279
Patient Type: ADM IN
Location: 2W 245-1
Policy Number: 550842944
Group:
Discharge Date:

---

JOB# 482605

## PROCEDURE NOTE

DATE OF PROCEDURE: 07/21/05

PROCEDURE:  Left subclavian vein triple lumen catheter placement with fluoroscopy, left tube thoracostomy.

DESCRIPTION OF PROCEDURE:  The left chest was infiltrated with 1% lidocaine.  The subclavian vein was identified after multiple punctures.  This was difficult secondary to a coexisting clavicular fracture.  The vein was cannulated and the guidewire passed, however, preferentially going up the neck.  Using fluoroscopic guidance, the guidewire was eventually manipulated down to the right atrium.  The vein was dilated and the catheter secured at 20 cm.  There was good venous blood return out of all 3 lumens.  This was flushed with a saline solution and secured with a silk suture.

The left chest was infiltrated with 1% lidocaine.  A skin incision was made in the mid clavicular line lateral to the nipple. Numerous obvious rib fractures were encountered on entering the pleural space.  A 36-French chest tube was inserted. There was a moderate egress of air on entering the pleural cavity and moderate blood on hooking to Hemovac.  The tube was secured with a silk suture.  A portable chest x-ray showed satisfactory placement of both tubes.

<<Signature on File>>

_____

RICHARD J FOX MD

**D:** 07/21/05 1901 **T:** BMR.TAR  07/22/05 1245
CC: FOX,RICHARD J

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: SGY0722-0041

## BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO 677**
Account Number: H043316991
Attending/ER Physician: RICHARD J FOX
Primary Care Physician: NONE *PRIMARY CARE PHYS
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 07/21/05   EMR

Date of Birth: 04/29/1950
Unit Number: X000701279
Patient Type: ADM IN
ONLY* Location: 2W 245-1
Policy Number: 550842944
Group:
Discharge Date:

JOB# 497303

### ORTHOPEDICS CONSULTATION

DATE OF CONSULTATION: 08/15/05

REASON FOR CONSULTATION: Left shoulder injury.

HISTORY OF PRESENT ILLNESS: The patient is a 55-year-old prisoner who fell greater than 10 feet. He was unconscious in the field. He had a large amount of blood coming from his left ear. He had a low blood pressure on admission, but was alert and appropriate x1. The patient was seen in the emergency room and evaluated. He was subsequently admitted with the diagnoses of a left hemotympanum and associated basilar skull fracture, left hemopneumothorax, a left clavicle fracture, a left scapular fracture, left side multiple rib fractures, and pulmonary contusion. He was taken to the intensive care unit for serial neurologic exams. A left side chest tube and central line were placed on admission.

The patient's status precluded significant workup of his left shoulder for a period of time. He was uncooperative to perform appropriate imaging studies. I was consulted by Dr. Fox to evaluate this patient on 08/14/05. After looking at this chest films and noting the fractures in the clavicle and scapula, I felt thin cut CTs were warranted. These were performed with 3-dimensional reconstruction views. Evaluation on 08/15/05 was performed after the imaging studies were performed late the previous evening. His thin cut CT scans with 3D reconstruction show severely comminuted fracture of the left clavicle. There is intra-articular extension. The articular component of the fracture into the glenoid does not show significant displacement, and there is abundant callus forming around the glenoid segment as well as the scapular body segment to the fracture. The patient was also noted to have an overlapped, moderately shortened fracture of the left clavicle that also is healing with abundant fracture callus.

PHYSICAL EXAMINATION: Exam reveals 2+ radial and ulnar pulses. Sensation is intact to light and sharp touch. He is able to flex, extend, abduct, and adduct the fingers. He is able to flex, extend, pronate, and supinate the wrist with 5/5 strength. He is able to flex and extend the elbow with 5/5 strength. He is able to perform a moderate amount of range of motion of the shoulder, indicating that the deltoid and rotator cuff are functioning. He resists significant motion because of the shoulder discomfort. He has minimal tenderness over the clavicle fracture at this time. Moderate tenderness over the scapular body.

ASSESSMENT: Severely comminuted fracture of the clavicle through the body. There is less involvement of the head and neck area. There is less involvement of the glenoid and neck segment. The articular extension of this fracture does not show significant displacement and does show a reasonable amount of healing behind the glenoid, with abundant callus formation. For this reason I do not feel that open reduction, internal fixation is warranted of either the scapular body or articular segment of the fracture. There is also abundant callus forming around the clavicle that would make any further attempt at open reduction, internal fixation somewhat difficult. I feel that there is healing going on with a moderate amount of shortening, but that this is stable and appropriate at this time. Given the timing of this situation, nonoperative treatment is warranted. I will continue to follow. This patient should have further radiographs taken in my office in 3 weeks' time. For the present time he is to be placed into a Breg sling-pillow combination. He can remove the segment that attaches to the forearm periodically to work range of motion of the fingers, wrist, and elbow. He can initiate some very gentle pivotal motion of the scapular-humeral articulation.

MICHAEL P WERTZ MD

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: MR0815-0176

*Advance Directive Summary*

*(Refer to Policy #504)*

| NOTIFY THE PHYSICIAN OF ALL ADVANCE DIRECTIVE INFORMATION CHANGES SO THAT MD ORDERS CAN BE WRITTEN. |
| :-- |

1. ☒ The patient is underlined unable to have a discussion or give information **OR**
2. ☐ The patient expresses no interest in developing an Advance Directive AND has been offered an Advance Directive information pamphlet.
3. ☐ The patient expresses interest in developing an Advance Directive AND has been offered an Advance Directive information pamphlet AND/OR
   ☐ The patient wishes to speak to an Advance Directive Resource Person for more information and a referral has been made by calling 440-2205.
4. The patient has informed us that he/she: (check all that apply)
   ☐ has a Living Will.
   ☐ has a Medical Durable Power of Attorney.
   ☐ has a CPR Directive.
   ☐ has specific wishes regarding cardio-pulmonary resuscitation.
   If the patient has an Advance Directive:
   ☐ a copy of the Advance Directive(s) is in the patient's chart **OR**
   ☐ a copy of the Advance Directive(s) has been requested AND the patient has described the content of their Advance Directive(s) or their specific wishes, which are: _____
   _____ MF
   Pt NO COR _____

☐ The patient has been informed that they can clarify, modify or revoke their Advance Directive at any point and because of this the patient will be asked at each admission.

_____ RN   7/21/05
Signature of staff completing    Date

```
PRIMAVERI, MARIO 677 SEX: M
H043316991    REG ER   04/29/50
MR.NO: X000701279 INS: SELFPAY
ADMIT DATE: 07/21/05 AGE: 55
ROOM:
```

Patient/legal representative changes, revisions, revocations for this admission (include date and signature): _____

7/23  DNR per wife & DR Nelsa _____

_____

_____

M01125

STAT /NOW

PHYSICIAN'S ORDERS AND PROGRESS NOTES
Boulder Community Hospital
Boulder, Colorado

LEASE USE BALL POINT PEN

Do NOT use: U (for unit), IU (for International Unit) qd, Q.D., QD, qod, Q.O.D., QOD, MS, MSO4, MgSO4, cc, CC, TIW, µg
Trailing zero (X.Omg), lack of leading zero (.Xmg)

| DATE | ORDERS (must include medication indication) | PROGRESS NOTES |
|---|---|---|

Insertion Date 7/23/05 Time 1500

Gastric Mark 47 (cm)

Gastric Aspirate Description

Final Placement Mark at exit of nare **62** (cm)

Tip of SBF tube located in

Stylet removed after placement confirmation
according to hospital policy     (YES) NO

Nurse's Signature

****
Place this sticker on the Interdisciplinary Progress
Notes or where appropriate for your institution.
5554 02-03

7/23/05

PT is DNR

per pt. wife & Dr Nelson

T/o per DR Nelson /actor read back

TW 7/23/05 1830

7/24/05 Resp Care Note 7P-7A
A: O2 Assessment
N BB clear, Tx's withhold
per RN AGITATING PT AT This
time. No cough notes.

7/24/05 PT Note: waiting for
CS pure clearance, please
call PT when appropriate

Print MAR

FRIMAVERI, MARIO 677 SEX: M
H043316991     ADM IN    04/29/50
ATT: FOX, RICHARD J         122-1
MR.NO: X000701279 INS: SELFPAY
ADMIT DATE: 07/21/05 AGE: 55

Physician's  Orders and Progress Notes     M03930

BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO**
Account Number: **H046171815**
Attending/ER Physician: MELANIE S RYAN
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 09/15/06   EMR

Date of Birth: 04/29/1950
Unit Number: X000651068
Patient Type: DIS IN
Location: 3W 339-1
Policy Number: 550842944
Group:
Discharge Date: 09/19/06

JOB# 746519

### DISCHARGE SUMMARY

ADMISSION DIAGNOSES:  Chest pain, coronary artery disease.

COMORBID CONDITIONS:  Diabetes, hypertension, hyperlipidemia, chronic pain syndrome, chronic obstructive pulmonary disease, hypothyroidism.

DISCHARGE DIAGNOSES:  Chest pain, coronary artery disease, 80% mid left anterior descending occlusion.

CONSULTS:  Dr. Rogers of cardiology.

PROCEDURES
1. 2-D cardiac echo 9/15/06 which showed mild to moderate concentric left ventricular hypertrophy with Doppler evidence for diastolic dysfunction, otherwise unremarkable.
2. CT pulmonary angiogram 9/15/06 which showed no evidence of a pulmonary embolism.
3. Cardiolite stress test, the final results of which are pending but was reported as positive.
4. Cardiac catheterization with percutaneous transluminal coronary angioplasty of a mid LAD lesion performed 9/18/06.

HOSPITAL COURSE:  Please refer to the H&P dictated by Dr. Ryan at the time of admission. Mr. Primaveri is currently under arrest.  He came in complaining of chest pain, was found indeed to have an abnormal stress test and a mid LAD lesion which was angioplastied.  Today the patient states that he would feel more comfortable staying in the hospital than returning to jail and then goes on to complain of mild chest pain.  He is not acutely distressed and hemodynamics are stable.  The patient has been cleared for discharge by cardiology.  EKG today is without changes compared with 9/18/06 and prior EKGs.

CONDITION ON DISCHARGE:  Stable.  Discharged to the jail.

DISCHARGE ACTIVITY:  As tolerated.
DISCHARGE DIET:  Cardiac.

DISCHARGE MEDICATIONS:  Oxygen at 3 liters per minute; Nystatin powder to groin b.i.d.; Zocor 20 mg by mouth daily; Effexor 150 mg by mouth b.i.d.; Lopid 600 mg by mouth b.i.d.; Tenormin 50 mg by mouth daily; Seroquel 400 mg by mouth q.h.s.; Azmacort 2 puffs b.i.d.; Neurontin 600 mg by mouth b.i.d.; Carafate 1 gm by mouth t.i.d. before meals; Synthroid 25 mcg by mouth daily; Colace 100 mg by mouth b.i.d. p.r.n.; Senokot 1-2 tablets by mouth b.i.d. p.r.n.; erythromycin ophthalmic, apply to eyes for another day; aspirin 325 mg by mouth daily; Plavix 75 mg by mouth daily; Tylenol p.r.n.; Nitrostat p.r.n.

DISCHARGE FOLLOW UP:  With the physician at the jail in 2 weeks.

<<Signature on File>>

_____                    MARTIN A BLOCH MD

D: 09/19/06 1014  T: BMR.TAR  09/28/06 1631
CC: BLOCH,MARTIN A

*This was when you were in Boulder after you had been in Pueblo*

NAME: PRIMAVERI,MARIO
ACCT#: H046171815
UNIT#: X000651068
RPT#: MR0928-0096

DISCHARGE SUMMARY

## BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO**
Account Number: H046250510
Attending/ER Physician: ALEX M MASLANKA
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 09/25/06   EMR

Date of Birth: 04/29/1950
Unit Number: X000651068
Patient Type: DEP ER
Location: ED
Policy Number: 550842944
Group:
Discharge Date: 09/25/06

JOB# 750803

## EMERGENCY DEPARTMENT REPORT

DATE OF EVALUATION: 09/25/06

ADDENDUM TO T-CHART

Please see T-chart for history, physical examination and diagnostics.

EMERGENCY DEPARTMENT COURSE: The patient was stable throughout his stay in the emergency department

DISCUSSION: This is a 56-year-old gentleman who was hospitalized from the 15th through the 19th of this month having been discharged 6 days ago. He was hospitalized for chest pain and apparently had cardiac catheterization in that time span. While in the hospital, he started to develop an inguinal rash. It has gotten progressively worse while he has been in jail. He has been scratching it because of its pruritic nature, and he will at times bleed from the rash site. He presents now with that as his main complaint. Of note and interest, he is diabetic.

On physical examination, the rash looks very consistent with fungal rash and presentation. He has scratched certain areas to the point of bleeding, but I see no obvious source of heavy bleeding. The groin site itself where the patient had undergone catheterization looks fine. There is no bulging at this site. There is some ecchymosis, and his pulse is readily palpable.

I called and spoke with the nurse at the jail. They just began to put clotrimazole on the rash today, and it is essentially untreated at this point in time. I discussed need for the patient to keep the area dry and clean with both the nurse and with the patient himself. We started him on miconazole in the hopes that this will improve.

CLINICAL IMPRESSION: Tinea corporus.

PLAN: Discharged on miconazole. There is some question about whether or not the patient is sufficiently reliable for his self care. To that end, should his condition worsen, a course of oral ketoconazole might be considered.

<<Signature on File>>

ALEX M MASLANKA MD

D: 09/25/06 2353 T: MMR.CDM 09/26/06 0639
CC: MASLANKA,ALEX M

*This was also when you were in Boulder after you had been in Pueblo*

NAME: PRIMAVERI,MARIO
ACCT#: H046250510
UNIT#: X000651068
RPT#: MR0926-0011

## BOULDER COMMUNITY HOSPITAL

Patient Name: **PRIMAVERI,MARIO 677**
Account Number: H043316991
Attending/ER Physician: RICHARD J FOX
Primary Care Physician: NONE *PRIMARY CARE PHYS ONLY*
Patient Social Security Number: 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
Primary Carrier: BOULDER COUNTY JAIL INMATE
Adm Date/Source: 07/21/05   EMR

Date of Birth: 04/29/1950
Unit Number: X000701279
Patient Type: DIS IN
Location: 2W 245-1
Policy Number: 550842944
Group:
Discharge Date: 08/16/05

JOB# 515157

## DISCHARGE SUMMARY

REASON FOR ADMISSION:  Multiple trauma.

*From hospital when they found you incomptent to stand trial.*

ADMITTING DIAGNOSES
1.  Closed-head injury.
2.  Basilar skull fracture.
3.  Subdural hematoma.
4.  Left scapular fracture.
5.  Left clavicle fracture.
6.  Left hemopneumothorax.
7.  Left flail chest.
8.  Left pulmonary contusion.

SECONDARY DIAGNOSES
1.  Hypertension.
2.  Arthritis.
3.  Diet-controlled diabetes.
4.  Nephrolithiasis.
5.  Degenerative joint disease.

DISCHARGE MEDICATIONS:  Tenormin 50 mg daily; Tylenol 650 mg as needed.

INTERVENTIONS:  Left tube thoracostomy, left subclavian vein triple lumen catheter placement, left frontal bur hole with drain placement.

CONSULTANTS:  Dr. Richard Fox, trauma surgery; Dr. Lee Nelson, neurosurgery; Dr. Michael Wertz, orthopaedic surgery.

HOSPITAL COURSE:  The patient was admitted with the above diagnoses. He underwent chest tube placement and central line placement. On arrival to the emergency room, the patient was initially watched nonoperatively for subdural hematoma. This was evacuated on August 1. The patient's orthopaedic injuries were difficult to maintain secondary to the patient's agitation and uncooperativeness. He was discharged pending further jail disposition on August 16, 2005, in improved condition. He was to follow up with Dr. Wertz of orthopaedic surgery, Dr. Nelson for neurosurgical service, and Dr. Fox from trauma surgery service as instructed.

_____                              RICHARD J FOX MD

D: 09/13/05 1447  T: MMR.MEL  09/20/05 1042
CC: FOX,RICHARD J; NELSON,E LEE; WERTZ,MICHAEL P

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: MR0920-0073

DISCHARGE SUMMARY
DRAFT UNTIL SIGNED   PAGE 1 of 1



## Boulder Community Hospital

HIPAA AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

Patient's name _____   DOB _____

☒ Release from   ☐ Release to

☒ BOULDER COMMUNITY HOSPITAL, P.O. Box 9019, North Broadway & Balsam, Boulder, CO 80301-9019
☐ FOOTHILLS HOSPITAL, P.O. Box 9047, 4747 Arapahoe Avenue, Boulder, CO 80301
☐ MAPLETON CENTER, P.O. Box 9130, 311 Mapleton Avenue, Boulder, CO 80301-9130
☐ COMMUNITY MEDICAL CENTER, 1000 W. South Boulder Road, Lafayette, CO 80026
☐ OTHER _____
☐ Attn: Person or Program _____

☐ BOULDER COMMUNITY HOSPITAL
AT BOULDER MEDICAL CENTER,
2750 Broadway, Boulder, CO 80304

☐ Release from   ☒ Release to   _LINDA STRAUBE — MEGAN RING_

**GENERAL AUTHORIZATION:** I authorize the above-named health care provider to release the information specified below to the organization/agency/individual named on this request. Method of release shall be pertinent to the need and may include photocopies, fax copies, personal review, audio, video, electronic, or verbal communication by appropriate practitioner.

I understand that BCH may not refuse to provide treatment if I refuse to sign this authorization, unless this authorization is necessary to participate in a research study or if the purpose of the treatment is to provide information to the party listed in this authorization. I understand that except for drug and alcohol treatment records, information disclosed under this authorization may be redisclosed by the recipient and is no longer protected by privacy laws.

**SPECIFIC AUTHORIZATION:** I specifically authorize the release of information regarding the following conditions:

☐ Alcohol / Drug abuse information —   I understand that my chemical dependency records are protected under the federal regulations governing Confidentiality of Alcohol and Drug Abuse Patient Records, 42 CRF, Part 2, and cannot be disclosed without my written consent unless otherwise provided for in the regulations   (See reverse side for redisclosure prohibition)
☐ Psychosocial / Psychiatric information (excludes psychotherapy notes which require separate release)
☐ Other _____

**INFORMATION REQUESTED:**

☐ Complete copy of medical record
☐ History and physical exam
☐ Discharge summary
☐ Treatment plan
☐ Admitting Psychiatric Assessment
☐ Emergency Department record

☐ Operative reports, consults
☐ Laboratory reports
☐ Imaging reports
☐ EKG
☐ EEG
☐ Physician's orders & progress notes

☐ Nurses' notes
☐ Therapy notes & dictation
☐ Psychological eval. (excludes psychotherapy notes)
☐ Neuropsych / Psych. testing & evals (does not include raw data or psycho-therapy notes)

☒ Other: _Copy of DNR ORDER_

**CONDITIONS AND DATES OF CARE COVERED:**

☒ Regarding these treatment dates and/or for conditions: _MULTI — TRAUMA — fall_
☐ All admissions or care at this facility provided as of the date of my signature.

**PURPOSE(S) FOR WHICH INFORMATION IS TO BE USED:**

☐ Further eval / treatment   ☐ Insurance / reimbursement   ☐ Legal   ☑ Verify Treatment Status   ☐ Personal use
☐ Worker's Compensation   ☐ Other (specify) _____

**EXPIRATION OR REVOCATION OF AUTHORIZATION**

I understand that I may revoke this authorization at any time, except to the extent that action has already been taken to comply with it. Without my previous expressed revocation, this authorization will automatically expire 90 days from the date of my signature unless noted below.
☐ On _____   ☐ No longer than ____ days from the date of my signature or under the following conditions: _____
☐ Upon fulfilling the purpose or need for information as specified above, but no longer than _____ days from the date of my signature.

NOTE:   Federal regulations require consent to release alcohol or drug records last no longer than reasonably necessary to serve the purpose for which the release is given.

**SIGNATURE :**   A copy of this authorization (including a facsimile copy) may be used with the same effectiveness as the original.

Patient's signature _Linda Straube_   Date _7/26/05_

Authorized representative name (please print) _LINDA STRAUBE_   Relationship to patient _WIFE_

Authorized representative signature _____   Date _____

Witness _____   Date _7/26/05_

PRIMAVERI, MARIO 677 SEX: M
H043316991    ADM IN   04/29/50
ATT: FOX, RICHARD J         122-1
MR. NO: X000701279 INS: JAIL
ADMIT DATE: 07/21/05 AGE: 55

**HIPAA Release of Medical Information**   Med Rec. 6/90; NN4300
Rev. 11/92, . . . , 2/01, 6/03

BOULDER COMMUNITY HOSPITAL

mass effect, midline shift, or hydrocephalus. CT scan of the cervical spine was also reviewed. There is no evidence of fracture or subluxation. He has a previous cervical fusion and significant degenerative changes. CT reconstruction shows the remainder of the spine which was also obtained. There is no clear fracture or subluxation of his thoracic or lumbar spine. CT chest notably has a left hemopneumothorax. He has a left scapular fracture, multiple rib fractures, possible right scapular fracture.

ASSESSMENT/PLAN:  This is a 55-year-old male with severe closed head injury, left hemopneumothorax.  We will place him on seizure prophylaxis, repeat his CT head scan in the morning and place him on Pepcid 20 mg PO  q.12h. as well. He will be admitted to the intensive care unit where he will undergo neuro vital signs and vital signs q 1h.  Dr. Richard Fox is present and is placing a central line as well as a chest tube.  From a neurosurgical standpoint, it would be preferable to avoid sedating drugs and avoid intubation mechanical ventilation as this compromises our ability to perform a neuro exam and in such setting, a ventriculostomy intracranial pressure monitor would be necessary.

E LEE NELSON MD

**D:** 07/21/05 1719  **T:** MMR.CAL2  07/21/05 1816
CC: NELSON,E LEE

H & P UPDATE:
Patient reassessed on
□ No changes
□ List any changes

Signed

NAME: PRIMAVERI,MARIO 677
ACCT#: H043316991
UNIT#: X000701279
RPT#: MR0721-0119

INPATIENT/EDR CONSULTATION
DRAFT UNTIL SIGNED    PAGE 2 of 2