IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-JLK
(Consolidated for all purposes with Civil Action No. 96-cv-00343)

JESSE (JESUS) MONTEZ, *et. al.*

Plaintiffs,

v.

BILL OWENS, *et al.,*

Defendants.

───────────────────────────────────────────────────────────────────────

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO MEDICAL TREATMENT**
───────────────────────────────────────────────────────────────────────

Plaintiffs, by and through their counsel, Paula Greisen and Jennifer W. Riddle of KING & GREISEN, LLP, and Edward T. Ramey, Lara E. Marks and Blain D. Myhre of ISAACSON ROSENBAUM, PC, hereby file this Response To Defendants' Motion In Limine To Exclude Evidence Relating To Medical Treatment [Dkt. # 4227].

**SUMMARY**

In their Motion in Limine, Defendants are seeking to re-write the Remedial Plan and significantly change the contours of this case by excluding evidence in the upcoming compliance hearing regarding the medical care provided to diabetics. Since the entry of the Remedial Plan, the quality of medical care provided to inmates with diabetes has been an integral part of whether the Colorado Department of Corrections ("DOC" or "Defendants") is in compliance with the Remedial Plan that was entered by the court in August 2003. At every compliance hearing, testimony and/or expert reports have been provided on this issue. Throughout the course of the

compliance period, Plaintiffs' diabetic expert, Ms. Linda Edwards, has met with DOC medical personnel and reviewed quality of care issues and provided recommendations regarding the course of appropriate treatment.

In recent years, there has been the development of some case law holding that the adequacy of the care or treatment provided to individuals does not state a cause of action under the American with Disabilities Act ("ADA") – contrary to prior analysis that the failure to provide adequate treatment could be argued as the lack of an accommodation under the ADA. Seeking to take advantage of this developing law regarding liability under the ADA, Defendants now seek to re-litigate the liability portion of this case and assert, for the first time since the entry of the Remedial Plan, that this Court should not allow evidence regarding the adequacy (or rather inadequacy) of the treatment provided to inmates with diabetes because only ADA claims remain in this case. However, claims under 42 U.S.C. § 1983 are still very much a part of this case, and because the care and treatment provided to inmates with diabetes has always been a part of the Remedial Plan, this motion should be denied.

## BACKGROUND

From the inception of this case, the grossly inadequate care, treatment, and management of inmates with diabetes has been a critical issue. The Second Amended Complaint filed in 1996 [Dkt. #99] specifically asserted a claim under 42 U.S.C. §1983 for Eighth Amendment violations and that "inmates with diabetes have been subjected to . . . unreasonable conditions of confinement at DOC facilities because DOC personnel are not qualified to diagnose or care for persons with diabetes, and the facilities are lacking the necessary medications and treatment programs." *Id.* at ¶53. The extensive discovery on that claim focused on the care and treatment provided to inmates with diabetes and revealed a pattern of grossly inadequate medical care that

constituted deliberate indifference to the rights of these inmates. At that time and still to date, diabetes is one of the leading causes of death in the DOC. In every compliance hearing in this case, Plaintiffs have obtained and presented evidence that Defendants' protocol and procedures for the treatment and care of diabetes and diabetes-related conditions were deficient, and demonstrated Defendants' deliberate indifference to the serious medical needs of inmates with diabetes, in violation of the Eighth Amendment. To the same effect, Plaintiffs have also shown that due to these systemic deficiencies, Defendants failed to provide inmates with diabetes reasonable accommodations and have denied inmates with diabetes access to the programs and services offered by DOC, in violation of the ADA.

At all times during the compliance period of this case, Plaintiffs' expert on diabetic issues, Linda Edwards, has prepared expert reports and testified about the systemic problems with the care and treatment of, and the failure to provide appropriate accommodations to, inmates with diabetes. Ms. Edwards' reports are attached as exhibits to this response as Exhibit 1 and Exhibit 2.

At the first compliance hearing in 2006, Ms. Edwards submitted a report and testified about the lack of consistency of diabetic care between the facilities, the lack of proper medication, lack of access to care and medication issues, the lack of appropriate timing of insulin with the provision of meals, the failure to provide insulin and the appropriate insulin, the pervasiveness of extreme hypoglycemia, and the lack of evidence to suggest DOC was following the American Diabetic Association standards. *See* Exhibit 1.

For the second compliance hearing in 2008, Ms. Edwards again provided an expert report detailing the on-going and serious problems with the care, treatment, and management of individuals with diabetes and the failure to provide appropriate accommodations. *See* Exhibit 2.

That report specified problems such as: the lack of critical medical exams; lapses in refilling critical medicine such as insulin (often an inmate would be denied insulin because his prescription had "lapsed"); lack of knowledge by staff regarding the proper care of diabetes; lack of appropriate blood glucose monitoring; and inconsistent standards of care between facilities that resulted in harm to inmates when facility assignments are changed. Clearly, these issues are directly related to the quality of medical care. After that compliance hearing, Ms. Edwards met with DOC medical staff, including the current Chief Medical Officer, Dr. Paula Frantz, the Head of Clinical Services, Ms. Joanie Shoemaker, several DOC doctors, and the Quality Assurance Manager, to specifically discuss quality of medical care issues and the DOC's Quality Assurance Program. *See* Exhibit 3, Email correspondence from DOC to Linda Edwards dated June 24, 2008 regarding a meeting to discuss quality assurance reports. There would be no reason for that meeting if both parties did not implicitly agree that the quality of medical care provided to diabetics was an issue in this case.

For each prior compliance hearing, Plaintiffs have obtained massive discovery on the issue of the adequacy of the medical care provided to inmates with diabetes. Plaintiffs have done the same preparation for the up-coming compliance hearing. And, as previously done, Plaintiffs' expert has spent a considerable amount of time reviewing the adequacy of that treatment by reviewing hundreds of medical charts, as well as documents produced by DOC, such as the Diabetic Audits in the past year. These audits contain detailed information regarding the serious problems that still exist at the DOC with providing proper medical care to inmates with diabetes.

Although evidence related to the quality (or lack thereof) of medical care to inmates is not new to this case, Defendants now argue that Plaintiffs "seek to expand these proceedings to encompass a class of inmates alleging denial of adequate medical care." To the contrary, this

type of evidence has always been introduced in this case to show that DOC is still failing to adequately train its medical staff regarding proper care and treatment of inmates with diabetes.

## ARGUMENT

### I.  Plaintiffs did not waive their claims under the Eighth Amendment.

Despite Defendants' assertions to the contrary, Plaintiffs never waived their claims under the Eighth Amendment when the consent decree was entered in this case.  The reliance on some excerpts from the hearing before this Court on October 27, 2004 do not reflect an accurate picture of the Court's ruling that day.  The excerpts provided by the Defendants suggest that the Court explicitly ruled that all Eighth Amendment claims were extinguished by the Remedial Plan – but that is not the case.  On that day, the Court expressed the opinion that this case was not intended to represent every inmate in DOC who had an Eighth Amendment case – a point with which undersigned counsel readily agreed.  *See* Defendants' Exhibit B, p. 46.  It was Plaintiffs' position then and now that the only Eighth Amendment claims in this case were those that were directly related to a disability in this case.  The Court went on to opine that it did not make any difference whether the failure to provide adequate medical treatment was couched in terms of an Eighth Amendment violation or the failure to accommodate under the ADA – as the state of the law at the time allowed such claims to be pursued under either claim.  *See* Exhibit 4, Transcript of October 27, 2004 Hearing at 43: 2-25; 44:6-20; 46:24-47:3.  (Discussion that quality of the medical treatment issues could be argued either as a failure to accommodate under the ADA or as an Eighth Amendment claim.)  At that hearing, Judge Nottingham specifically acknowledged that there was a class of inmates with disabilities, and a subclass of those class members who have Eighth Amendment claims.  Exhibit 4, at 43:2-8.

Pursuant to that hearing, the Court entered an Order relating to the damage claim process, specifically allowing the recovery on Eighth Amendment claims if those claims were related to a disability covered in this case. Specifically, the Order in Response to Report and Recommendations of the Special Masters to Judge John L. Kane, attached as Exhibit 5, provides, in pertinent part:

> 5. *Unless they meet the criteria established in paragraph #1*, individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan. (Emphasis added).

*Id.* p. 2.

Paragraph 2.1. of that Order provides:

> Is the claimant a disabled individual who is a member of the class?

*Id.* p. 1.

Clearly, this Order means that if an individual is a class member, their claims under the Eighth Amendment were contemplated by the Remedial Plan – and that was the intent of the parties in drafting the Remedial Plan.

Moreover, the Remedial Plan itself preserves the Plaintiffs' Eighth Amendment claims by specifically addressing issues of the care and treatment provided to inmates with disabilities. Specifically, Section II., p. 1 of the Remedial Plan specifically provides that the AIC shall be responsible for "coordinating the placement and treatment decisions regarding inmates with disabilities with appropriate personnel throughout the DOC . . ." Clearly, this is referring to the medical treatment of the inmates.

Moreover, Section XV(B), p. 18 of the Remedial Plan provides that:

> Specific training shall also be provided to all staff who are involved in providing programs, benefits, and services to inmates regarding the need to be cognizant of the special requirements of diabetics, including their need for access to water and diabetic snacks, the need for meal timing, medication administration timing, as well as the symptoms related to diabetes-related complications such as acidkesotosis and hypo- or hyper-glycemia. Staff shall be trained regarding what emergency procedures need to be taken with respect to these symptoms, including the need for immediate intervention and medical attention. Inmates with diabetes complaining of dizziness, disorientation, and other symptoms related to acidkesotosis and hypo- or hyper-glycemia shall be provided immediate access to medical personnel. . . .
>
> Medical staff shall receive specific training regarding all aspects of the care and management of inmates with diabetes. This training shall occur during the compliance period and during regular intervals thereafter.
> . . .
>
> During the compliance period of this Plan, Linda Edwards, in cooperation with DOC staff, shall design a plan *and assist with the implementation* of the training of medical and non-medical staff, and the inmates, regarding diabetes.

*See* Remedial Plan, p. 18. (Emphasis added.)

The fact that the Remedial Plan specifically discusses training on the care and management of diabetes proves that Eighth Amendment claims were preserved by the parties. Under Defendants' own argument – that the adequacy of care and treatment of diabetes is not a proper basis for an ADA claim – the remedy of requiring specific training to non-medical and medical personnel on the care and treatment of diabetes also would not be covered by the ADA. Thus, under Defendants' theory, this requirement in the Remedial Plan could only have been provided under the Eighth Amendment – proving that the Eight Amendment claims were preserved in the Remedial Plan.

The fact is that at the time the Remedial Plan was drafted and entered by this Court, all parties believed that inadequate medical treatment, if it related to a disability covered by this case, could be argued as either an accommodation under the ADA or as an Eighth Amendment claim.  *See* Exhibit 4.  Defendants should not be entitled to argue that, *seven years* after the entry of the consent decree (and they have still not been found in substantial compliance), the law on liability is changing and that somehow changes the intent of the Remedial Plan.  This is simply an attempt to re-open the liability phase of this case and argue points of law that may have given them a defense to the medical treatment argument under the ADA prior to the entry of the consent decree.  However, defenses to the liability stage are not relevant at this point, where the only issue is the compliance with words and intent of the Remedial Plan.

**II. Evidence Regarding the Propriety of the Medical Treatment of Inmates is Directly Relevant to Whether DOC is in Compliance with the Appropriate Training Requirements and Whether that Training has Been Appropriately Implemented at DOC.**

The Remedial Plan clearly contemplates that the appropriateness of the medical care provided to inmates with disabilities will be monitored.  As discussed above, Section XV(B) of the Remedial Plan requires that Linda Edwards, Plaintiffs' diabetic expert, provide certain training, along with DOC, to its medical and non-medical staff, and that Ms. Edwards would assist with the *implementation* of that training.  In this case, the *only* way to judge whether the training that has been provided to DOC medical personnel has been adequately implemented is to review whether appropriate care and treatment of diabetes is being provided to the inmates

with diabetes.[1] The concept that the DOC could simply produce training rosters in this case to show compliance, without showing that the principles taught in that training have actually been adopted and implemented at DOC, flies in the face of the intent of the Remedial Plan.

At the 2006 compliance hearing, Ms. Edwards specifically testified that the training she developed for DOC medical and non-medical personnel was materially changed by DOC, and she did not perform the training as was agreed by the parties. *See* Exhibit 6, Transcript of Linda Edwards' Testimony at April 24, 2006 Compliance Hearing. She testified that the training she developed for DOC was materially changed by the DOC, *Id.* at 185:4-25, including the deletion in the training of important issues such as: the number of required physician visits per year, the goals of nutrition and appropriate policies and procedures on medical care, *Id.* at 186: 15-21, standards on interdisciplinary communication, *Id.* at 187:15-16, the need to confirming blood glucose emergencies and testing time requirements, and education issues, *Id.* at 188:3-6, training on the special needs of those with vision impairments, nerve damage and amputation issues, training on facility policies and procedures, accountability issues, and patient safety issues. *Id.* at 188:8-16.

She also testified about the specialized training curriculum that she provided for the medical staff and that the curriculum she designed was materially different from that actually used to train DOC medical staff. Specifically, she testified that she participated in developing a three-phase program in which she would provide one eight-hour training and then provide follow-up training. *Id.* at 189:10-24. Although she did the one eight-hour training, the follow-up training never happened, allegedly because DOC had not completed the initial training. *Id.* at 189:25 – 190:20. Since that time, Ms. Edwards has never been invited to participate in the

---

[1] Ms. Edwards has not been involved in any part of the process of implementing the training at DOC.

training of the medical staff on the care and treatment of diabetes.  A few days prior to the April 24, 2006 hearing, DOC's counsel produced evidence of a new training curriculum, not previously seen by Ms. Edwards or Plaintiffs' counsel, asserting that DOC had used this curriculum to train its staff.  This training differed significantly from the one developed by Ms. Edwards, and she had no input into its design.  *Id.* at 190:21-192:20.

Although Ms. Edwards has had contact with DOC medical personnel since that hearing to discuss standard of care issues, she has never been asked to actually assist in the development of any other training.  Thus, as she has not been allowed to meaningfully participate in the actual training, there is no way to determine whether appropriate training was actually implemented– other than by determining whether the care and treatment of diabetes is being appropriately managed by the DOC.  Thus, evidence on the care and treatment is essential to determine whether the Defendants are in compliance with the Remedial Plan.  As this type of evidence has been a part of every compliance hearing to date, it can hardly be said to be "expanding" the proceedings.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' Motion in Limine to Exclude Evidence Relating to Medical Treatment as it is directly related to whether there is substantial compliance with the Remedial Plan.

DATED: January 22, 2010

          Respectfully submitted,

          KING & GREISEN, LLP

          /s/ Paula Greisen
          Paula Greisen
          Jennifer W. Riddle
          1670 York Street

Denver, CO 80206
(303) 298-9878
(303) 298-9879 (fax)
greisen@kinggreisen.com
riddle@kinggreisen.com


Edward T. Ramey
Lara E. Marks
Blain D. Myhre
Isaacson Rosenbaum, PC
1001 17th St., Suite 1800
Denver, Co. 80202

Attorneys for Plaintiff Class


**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that on the 22nd day of January, 2010, I electronically filed the foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO MEDICAL TREATMENT with the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:


Elizabeth H. McCann
James X. Quinn
Colorado Attorney General's Office
1525 Sherman St.
Denver, Co. 80203
303-866-3261
Fax: 303-866-5443
beth.mccann@state.co.us
james.quinn@state.co.us

Attorneys for Defendants


/s/ Laurie Mool