IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-JLK

JESSE MONTEZ et al.,

Plaintiffs,

v.

BILL RITTER, et al.,

Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO MEDICAL TREATMENT**

Defendants, through the Colorado Attorney General, respectfully submit the following Reply in Support of Motion in Limine to Exclude Evidence Relating to Medical Treatment.

**PRELIMINARY STATEMENT**

The issue for the Compliance Hearing is whether the Defendants have complied with the express terms of the Remedial Plan. Evidence relating to the quality, adequacy, or scope of medical care is not encompassed within the Remedial Plan and not relevant to compliance with the terms of the Remedial Plan. Accordingly, this evidence should be excluded.

**ARGUMENT**

**I.    The scope of and quality of medical care provided to individual inmates is not contemplated in the Remedial Plan.**

Nowhere in the Remedial Plan is the Eighth Amendment or 42 U.S.C. §1983 mentioned. The Remedial Plan addresses specific issues to be resolved in order to "provide inmates with disabilities, with or without reasonable

1

accommodations, access to its programs and services consistent with legitimate penological interests….All facilities designed to house inmates with disabilities will provide comparable programs, services and benefits available throughout comparable DOC facilities to ensure that inmates with disabilities are not discriminated against because of their disability." (**Exhibit A**, Remedial Plan at Section I). This policy statement, contained in the very first section of the Remedial Plan, reflects that this case is an ADA - Rehabilitation Act case, not a case based on the Eighth Amendment.

      An agreement to settle a federal lawsuit is a contract, governed by the principles of contract law. *See Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1989). The goal of the Remedial Plan was to bring CDOC into compliance with the requirements of the ADA and Rehabilitation Act, and to allow class members to file individual damages claims for alleged disability discrimination. The Remedial Plan represents a full integration and resolution of the parties' dispute, and extinguishes the complaint, the answer, and other pleadings predating it. The Remedial Plan did not address and does not encompass quality of medical care issues. Despite this fact, Plaintiffs attempt to inject issues relating to the quality of medical care provided to individual inmates into the Compliance Hearing. The sole issue for the Compliance Hearing is whether the CDOC is in compliance with the express terms of the Remedial Plan. Because no provision of the Remedial plan guarantees any level or scope of medical care, evidence of medical care provided to individual inmates should be excluded.

### II. The Tenth Circuit has concluded that the Eighth Amendment is inapplicable to disability discrimination cases.

The Tenth Circuit has made clear that allegations of improper medical care cannot meet the requirements of an ADA or Rehabilitation Act claim. *Fitzgerald v. Corrections Corporation of America,* 403 F.3d 1134 (10th Cir. 2005). Plaintiffs attempt to characterize this as recently developing law. To the contrary, this was the law in this Circuit both prior to and after execution of the Remedial Plan. *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1493-95 (10th Cir. 1992) (Section 504 proscribes discrimination between the nonhandicapped and the "otherwise qualified" handicapped. It does not create any absolute substantive right to treatment.)   In *Johnson*, the Tenth Circuit concluded that medical malpractice claims can rarely, if ever, meet the requirements of the ADA and Rehabilitation Act. Put simply, "The ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

This Court has repeatedly noted there were no Eighth Amendment claims in this case after entry of the Remedial Plan. Even apart from the prison setting it would be extremely odd to suppose that a disabled person, whose disability is treated negligently, has a federal malpractice claim by virtue of the ADA or Rehabilitation Act, whereas a sick or injured but not disabled person must be content with the remedy that the state law of medical malpractice provides.

The Remedial Plan is to ensure that disabled individuals receive the same access to jobs, programs, services, and benefits as non-disabled individuals. Regarding prison medical treatment, an ADA or Rehabilitation Act violation only occurs if healthy, non-disabled inmates received access to medical care that

3

disabled inmates did not. "Without a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicapped, the [claimant] cannot assert that a violation of the [Rehabilitation Act] has occurred." *Johnson*, 971 F.2d at 1494. If a non-disabled inmate would not be entitled to a specific medical treatment or device, then the issue is beyond the scope of the ADA or Rehabilitation Act. Accordingly, the key issue is **access** to medical care, not the quality or type of care provided.

Plaintiffs argue, in conclusory fashion, that they demonstrated that the CDOC provided inadequate medical treatment to inmates with diabetes. Defendants disagree with this statement. Defendants assert that Plaintiffs have failed to demonstrate how any alleged deficient treatment deprived any inmate of access to CDOC programs and services.

### III. The only relevant issue is whether training was provided in accordance with the express terms of the Remedial Plan.

Plaintiffs seek to unnecessarily and exponentially expand these proceedings to encompass medical treatment issues. This type of evidence should not be admitted. The evidence is not relevant to the issue before this Court – CDOC's compliance with the express terms of the Remedial Plan.

Plaintiffs contend that because the CDOC conducted training and had meetings with a certified diabetic trainer, Ms. Edwards, the issue of alleged medical malpractice is now relevant to compliance with the express terms of the Remedial Plan. This is not the case. Pursuant to Section XV of the Remedial Plan, the CDOC agreed to provide specific training to its staff regarding diabetes. Plaintiffs attempt to convert CDOC's obligation under the Remedial

4

Plan to provide training into a guarantee that individual inmates will receive a specific level of medical care.  The CDOC has no such obligation under the express terms of the Remedial Plan.[1]  The compliance issue is what training was provided to whom and when.  Plaintiffs attempt to convert the CDOC's obligation to provide training into a guarantee of a specific level and scope of medical care to individual inmates.  This is not contained in or even contemplated by the Remedial Plan.  The Remedial Plan's requirement that staff receive "specific training" and that Linda Edwards design and assist with the implementation of the training programs relating to diabetics does not guarantee any level of care.  Rather, it guarantees exactly what it says, that staff will receive the training.  Plaintiffs' statement that because "the Remedial Plan specifically discusses training on the care and management of diabetes proves that Eighth amendment claims were preserved by the parties" in not correct.

The CDOC agreed in the Remedial Plan to provide specific training to its staff regarding diabetes, hearing impairment, vision impairment and accessibility (See **Exhibit A**, Remedial Plan at pp. 18-19). It also agreed to document specific training provided (**Exhibit A**, Remedial Plan at p. 19).  The Remedial Plan does not mandate or require that the CDOC provide a specific level of or scope of medical treatment relating to ears, eyes and diabetes.  Evidence relating to alleged medical malpractice is not relevant to whether the training was provided, or whether the CDOC is in compliance with the express terms of the Remedial Plan.  For example, the Remedial Plan requires the CDOC to

---

[1] It goes without saying that individual CDOC medical providers have an obligation under the Eighth Amendment to provide care that is not deliberately indifferent to an inmate's serious medical needs.

5

provide **inmates** with training regarding the care and management of diabetes (**Exhibit A**, Remedial Plan at p. 18, Section XV, B).  Providing the training to inmates to assist in understanding their responsibilities for diabetic care does not support Plaintiffs' argument that medical care is part of this case.

By entering into the Remedial Plan the CDOC did not guarantee that any inmate would receive a specific level or scope of medical treatment.  The CDOC agreed to provide training as delineated in the express terms of the Remedial Plan.  Plaintiffs' argument that the only way to prove training is to review individual inmate medical care issues is false.  Training materials, curricula, attendance rosters and related materials demonstrate compliance with the requirements to provide training as expressly stated in the Remedial Plan.

Plaintiffs finally argue that because they obtained discovery with respect to medical care issues, that the issue of the quality of care provided is relevant to this case.  Such argument is non sequitor.  The CDOC required signed medical releases for all medical files requested by Plaintiffs' counsel.  Accordingly, these medical files would be provided regardless of whether this litigation was pending.  Indeed, if this litigation encompassed quality of medical care issues, no releases would have been necessary, as the inmates would have put their medical condition at issue and waived any privilege.  *Rhoda v. Franklin Life Insurance Co.,* 689 F. Supp. 1034 (D. Colo. 1988).

WHEREFORE, Defendants ask that this Court limit the Compliance Hearing to the requirements of the Remedial Plan and not allow evidence of individual medical care to be admitted or discussed during the Compliance Hearing.

DATED this 5th day of January, 2010.

        JOHN W. SUTHERS
        Attorney General

        s/ James X. Quinn
        JAMES X. QUINN
        Assistant Attorney General
        Civil Litigation and Employment Law
          Section
        Attorneys for Defendants
        1525 Sherman Street, 5th Floor
        Denver, Colorado  80203
        Telephone: (303) 866-4307
        FAX: (303) 866-5443
        *Counsel of Record

## CERTIFICATE OF SERVICE

I certify that on January 5, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paula Greisen
Jennifer W. Riddle
greisen@kinggreisen.com
riddle@kinggreisen.com

Edward T. Ramey
Lara E. Marks
eramey@ir-law.com
lmarks@ir-law.com

        s/ James X. Quinn