09/03/2009 THU 11:18 FAX 3033072303 Case No. 1:92-cv-00870-CMA-MEH Document 4316-2 filed 02/17/10 USDC Colorado pg 1 of 8 ☒002/009

(9/3/2009) Gagandeep Singh - Fistell Affidavit - Mobility.doc Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-465
Category III
Claimant: Allen Fistell, #63253
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO, 81038-1000

---

### AFFIDAVIT OF DOCTOR GAGANDEEP SINGH

I, Dr. Gagandeep Singh, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1. This affidavit is based upon my personal knowledge, medical education and medical experience.

2. I am currently employed as a physician with the Colorado Department of Corrections ("CDOC") as a physician.

3. I currently hold an active medical license in Colorado.

4. I have substantial experience in reviewing medical records for purposes of evaluating standard of care issues and assessing whether specific treatment, care, or accommodations are needed.



EXHIBIT B

5. I have testified at numerous hearings regarding claims made in the *Montez* matter as they relate to disability, discrimination and accommodation.

6. At past *Montez* hearings, I have been qualified as an expert by the Special Master for purposes of testifying regarding medical chart review of offenders incarcerated in CDOC and providing medical opinions on the offender's *Montez* claim.

7. Any CDOC inmate with a disability may submit a request for accommodation regarding access to benefits, programs, or services. Such requests are to be sent to Cathie Holst, the ADA Inmate Coordinator ("AIC"). Before granting an accommodation, CDOC doctors screen the inmate to determine whether the inmate is disabled.

8. I have reviewed Allen Fistell's ("Mr. Fistell") medical records and am familiar with his care, treatment, and needs. Further, I am familiar with the claims he has asserted in his claims forms for the purposes of this case. Mr. Fistell claims to have a mobility disability.

9. A review of the Mr. Fistell's medical records reveals the following:

### Mobility Claim

a. Mr. Fistell has a history of back pain, for which a spinal stimulator was implanted in approximately 2000. **Exhibit A1** (*Ambulatory Health Record dated 10/28/04*). The spinal stimulator resolved approximately 80% of the pain. *Id.* At this time, it was determined that there was no clear need for a shower chair or strong need for handrails to accommodate any mobility condition. *Id.* However, he was allowed to use a shower chair for bathing purposes and had standing restrictions in November, 2004.

**Exhibit A2** (*Ambulatory Health Record date 11/30/04*).

  b. In June 2005, Mr. Fistell received the necessary paperwork to apply for accommodations under the Americans with Disabilities Act ("ADA"). **Exhibit A3** (*Ambulatory Health Record dated 6/16/05*). Mr. Fistell was re-screened for disability on February 24, 2006. **Exhibit A4** (*Ambulatory Health Record dated 2/24/06*). The decision in his earlier screening of June 2005 was unclear. *Id.* It was observed by the documenting physician that Mr. Fistell walked "about 100 feet upon exiting [the] clinic. He was then out of sight. Security then reports [Mr. Fistell] walked the rest of the way to CH3 (> 100 yards) [without] stopping." *Id.* It was noted that "per staff [patient] does not meet [*Montez*/ADA] criteria and appears to exaggerate his problems." *Id.*

  c. In July, 2006, it was noted that Mr. Fistell had been previously screened under the Montez process and it was determined that there was no qualifying disability. **Exhibit A5** (*Ambulatory Health Record dated 7/7/06*). Despite the absence of a qualifying disability, Mr. Fistell was issued a shower chair and permit. *Id.*

  d. On December 19, 2006, Mr. Fistell refused an appointment for a functional capacity examination. **Exhibits A6, A7** (*Ambulatory Health Record dated 12/19/06; Refusal of Treatment Form dated 12/19/06*). The examination was required in order to properly assess Mr. Fistell for accommodations under the *Montez* matter and the ADA. Mr. Fistell was noted as stating "*Montez* is a joke."

  e. On February 28, 2007, Mr. Fistell requested a permit for tennis shoes that would allow for facility movement in excess of the regulations of the Fremont Correctional Facility ("FCF"), where he was then housed. **Exhibit A8** (*Ambulatory*

3

09/03/2009 THU 11:19  FAX 3033072305   Case No. 1:92-cv-00870-CMA-MEH   Document 4316-2   filed 02/17/10   USDC Colorado   pg 4 of 8   ☒005/009

(9/3/2009) Gagandeep Singh - Fistell Affidavit - Mobility.doc                                                                  Page 4

*Health Record dated 2/28/07*). It was determined by chart review that there was no medical indication for such a permit. *Id.* Mr. Fistell requested a special tennis shoe permit again on March 14, 2007, which was denied as the physician had previously indicated that there was no medical indication for a permit in excess of facility rules and regulations. **Exhibits A9, A10** (*Ambulatory Health Records dated 3/14/07 and 3/23/07*).

      f.    Mr. Fistell again sought a permit for tennis shoes on March 30, 2007. **Exhibit A11** (*Ambulatory Health Record dated 3/30/07*). Mr. Fistell had received soft-soled boots from laundry in effort to alleviate the foot pain from which he purportedly suffered. *Id.* Mr. Fistell was given a ten-day permit for tennis shoes in order to allow for the physician to discuss such a comfort item with the health services administrator. *Id.*

      g.    It was the policy of FCF that offenders wear state boots in all locations with the exception of recreation and in the cellhouse. **Exhibit A12** (*Ambulatory Health Record dated 4/16/07*). Mr. Fistell was advised by medical that he did meet the requirements for an exception to the rule. Id. Mr. Fistell refused an offer to be refit with a softer soled state boot from laundry. *Id.* It was noted again on April 24, 2007 that Mr. Fistell did "not meet the criteria of foot deformity or non-healing diabetic foot ulcer to circumvent FCF administration rule of wearing state boots except in cellhouse and recreation." **Exhibit A13** (*Ambulatory Health Record dated 4/24/07*).

      h.    A May 9, 2007 examination indicated that while Mr. Fistell complained of heel pain, there were no fractures or dislocations and the impression was "Normal." **Exhibit A14** (*Radiological Group examination report dated 5/11/07*). Prior to this, Mr. Fistell had complained of an increase in heel pain as a result of the state boots. **Exhibit**

4

**A15** (*Ambulatory Health Record dated 5/2/07*). The record of the evaluation on that date indicates that the medical personnel felt that Mr. Fistell's "pain is out of proportion with expectations." *Id.* However, Mr. Fistell was approved to wear soft-soled footwear as allowed in non-secure areas. *Id.* On May 15, 2007, Mr. Fistell was issued a one-year permit to wear shoes in the facility. **Exhibit A16** (*Ambulatory Health Record dated 5/15/07*). The permit was issued after the criteria for a medical tennis shoe was modified to accommodate his specific case. *Id.* It was decided that the modification would be appropriate for Mr. Fistell's "unique situation (implanted spinal stimulator)" and a "deterioration of his condition." *Id.*

  i. On July 29, 2008, a Physician's Assistant assessed Mr. Fistell and saw that he was "able to toe & heel walk without difficulty." **Exhibit A17** (*Ambulatory Health Record dated 7/29/08*). Also noted was that Mr. Fistell "stood, walked and sat without difficulty." *Id.* Pursuant to observation by a corrections officer "he used the cane sometimes as a walking aid and other times more as a gentlemen's accessory." *Id.* Additionally, it was believed that Mr. Fistell was not in need of a wheelchair. *Id.*

  j. On November 26, 2008, Mr. Fistell was found to be mobility impaired by the examination of a CDOC physician. **Exhibit A18** (*Ambulatory Health Record dated 11/26/08*). It is my opinion that being mobility impaired is different and less severe than being mobility disabled. Additionally, it is my opinion that conditions of a patient may degrade over time.

  k. On January 22, 2009, an Accommodation Resolution was issued indicating that Mr. Fistell was determined to have a mobility disability following a

medical screening. **Exhibit A19** (*Accommodation Resolution dated 1/22/09*). Mr. Fistell received the following accommodations: 1) cane; 2) assignment to a designated facility; 3) allowed to use elevator if one is available at his assigned facility; 4) lower bunk; 5) lower tier; 6) special cuffing/shackling considerations; 7) staff assistance during an emergency or evacuation; 8) accessible bathroom facilities to include shower chair/bench and toilet of appropriate height; 9) stair restriction; 10) additional time for movement; 11) allowed to sit and rest 15 minutes out of every 60 minutes standing/walking; and 12) special transport considerations. *Id.*

  l. It is my opinion that these accommodations are appropriate and sufficient. Accommodations were not warranted in earlier Accommodation Resolutions as Mr. Fistell was not found to have a mobility impairment or disability on earlier dates. **Exhibit A20** (*Accommodation Resolution dated 7/22/05*).

  m. When Mr. Fistell was transferred from FCF to Fort Lyon Correctional Facility ("FLCF"), he arrived with numerous medical appliances and devices. **Exhibits A21, A22, A23** (*Ambulatory Health Records dated 3/10/09, 3/11/09 and 3/12/09*). The Health Services Administrator requested a review to determine the medical need for the various appliances. *Id.*

  n. A review of Mr. Fistell's medical file indicates he received numerous medical accommodations from CDOC including: 1) chair back brace on 2/28/96 for lower back pain; 2) a wedge pillow on 6/12/96 for shoulder pain; 3) a heating pad on 6/12/96 for his shoulder; 4) a thicker mattress or extra mattress although there is no indication of a medical need; 5) a wheelchair on a temporary basis on numerous

6

occasions to accommodate vertigo and lower back pain, although there does not appear to be an indication of medical need; 6) a left wrist brace on 12/1/99 for sprain or strain; and 7) ladder padding and fleece pants to accommodate results of psoriasis on his legs. *Id.* It was correctly determined that there was no ADA requirement or medical necessity for these accommodations and they were discontinued. *Id.* It is my opinion that the discontinuing of certain medical appliances was appropriate as there was no medical necessity for continued use. It is my opinion that Mr. Fistell has received the medical appliances and accommodations that are medically necessary.

    o.    Another medical examination of Mr. Fistell occurred on March 25, 2009. **Exhibit A24** (*Ambulatory Health Record dated 3/25/09*). It was noted that Mr. Fistell is ambulatory with a cane. *Id.* It was also noted that when Mr. Fistell is aware he is being observed, his cane use increases and his gait changes. *Id.* When unaware of being observed, he "walked at a good pace, minimal cane use, heel-toe strike normal." *Id.*

    p.    It is my opinion that in spite of there being no clear disability, Mr. Fistell received numerous accommodations. Offenders should only receive accommodations that are medically necessary for a particular condition. Mr. Fistell has received all accommodations medically necessary to assist him with his medical condition.

    10.    It is my medical opinion that Mr. Fistell received high quality medical care in treating his condition. Additionally, CDOC provided reasonable accommodations for his protection and recovery including appropriate medical appliances and accommodations when medically necessary

FURTHER AFFIANT SAITH NAUGHT.

7

*[signature]*

Dr. Gagandeep Singh

Subscribed and sworn before me in the County of __DENVER__, State of Colorado, this 3 day of ~~August~~ September, 2009.

My commission expires: __1-30-2011__.

*[signature]*
Notary Public

