IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES

JESSE (JESUS) MONTEZ, et al.,
    Plaintiffs,

V.

BILL OWENS, et al.,
    Defendants.

Claim Number 03-465
Category III
Claimant: Allen Fistell, #63253
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO, 81038-1000

---

CLAIMANT'S RESPONSE TO THE AFFIDAVIT OF DR. SINGH
AND REQUEST FOR LEAVE TO FILE THIS RESPONSE LATE.

---

    Comes Now, the Claimant in the above referenced claim requesting that this Court except his response to the Affidavit of Dr. Gagandeep Singh as a late filing and as grounds the Claimant states the following:

    1. The Claimant received the Affidavit of Dr. Singh on 9-8-09 (the date it was due in this Court) and as such could not respond in a timely manner.

    2. The Claimant has a right to respond in order to insure that these proceedings are fair.

    3. The Claimant will now respond to Dr. Singh's Affidavit. Claimant will respond to each issue by the same letter as in Dr. Singh's Affidavit:

    a. The Hand written notes on exhibit A1 were not done by Dr. Creany and in fact were done by N.P. Chestnut at FLCF in December of 2008 or the first part of 2009. (see exhibit A attached hereto.) It is true that at the time of the implantation of the SCS it relieved 80% of the pain in his right leg. See exhibit A18 of Dr. Singh's Affidavit, this shows Dr. Singh did not fully review the documents and his opinion is not based on a fully informed decision. Dr. Creany clearly states in his findings in exhibit A18 see "Objective" "Pt. walks w an awkward gait and a cane. He moves slowly and i have observed him ambulate on many occasions he has mild quad wasting in both legs...." This clearly show that Dr. Creany recognized my disability in his own words.

    b. Under "Objective", (exhibit A3 of Dr. Singhs Affidavit) "Pt entered appt as usual relying upon his cane for ambulatory and seating/standing support." The standards of the ADA are not what I can do with my assistive devices ie cane and Spinal Cord Stimulator (SCS), but what I can do without these devices. The fact is that most of the time I do get around fairly well with my cane and SCS, but without these



assistive devices I cannot get around at all. At times I need the added support of my back brace to get around in addition to my cane and SCS. I have been waiting to go back to Dr. Koons the Neuro Surgeon who did my three back surgeries and implanted my SCS, but this has been delayed by the DOC for months, I believe this was done to conceal his reports from this Court. Claimant believes the reports of Dr. Koons would prove his claims of being disabled and the needs for certain assistive devices that were taken from claimant by FLCF staff upon his ADA transfer to FLCF. The record also exhibit A4 does not state what staff say claimant does not meet these criteria.

    c. Dr. Singh's assessment is not correct. He states that, "Despite the absence of a qualifying disability Mr. Fistell was issued a shower chair and permit." The fact is Claimant has had his shower chair since the mid 90's, it was not issued to him on 7-7-2006 as he states. The shower chair is needed because Claimant cannot shower with his SCS running as the external Power Supply/Transmitter cannot get wet, and the Claimant cannot stand without it running or wearing his back brace. (see exhibit A4 attached to Dr. Singh's Affidavit, this explains that I cannot stand let alone walk without my SCS running and why I need a shower chair.)

    d. The Statement of Dr. Singh is partially true and partially untrue. Claimant agreed to the functional capacity examination and was taken on a day trip to get this testing, but the DOC took Claimant to the wrong Doctor, that is why exhibit A6 under objective "Called pt over to notify him of rescheduled functional capacity exam." The first time the DOC sent Claimant for this test, they made claimant wear boots, Shackled Claimants legs, cuffed Claimants hands and put a "Black Box" on which was chained to Claimants belly, and then made Claimant walk this way with his cane in between his legs. Claimant believed that this was unreasonable and that he should not have to be subjected to this again. Claimant also believed that his medical file clearly showed that he was disabled. The Claimants beliefs turned out to be true, as he has never had this "functional capacity exam" and is now found to be disabled.

    e. The fact is that on 5-15-07 there was a medical staffing held and it was decided that "the permit was issued after the criteria for a medical tennis shoes was modified to accommodate his specific case. Id. It was decided that the modification would be appropriate for Mr. Fistell's "unique situation (implanted spinal stimulator)" and a "deterioration of his condition." But the fact is that this should have been done in 2001 and in 2003, Claimants condition has not deteriorated it is the same as it was in 2001 and 2003. Now at FLCF the DOC still does not accommodate Claimant concerning being able to wear Tennis Shoes at all times. Claimant cannot get visits at FLCF wearing his tennis shoes even though FCF had relented in 2008 and allowed Claimant visits in his tennis shoes. Because of the additional pain caused Claimant by wearing boots, Claimants family does not and will not visit him at FLCF. This answers d., e., f., g., and h.

    i. It is true that on July 29, 2008 P.A. Walsh saw claimant concerning a request for use of a wheel chair and found at that time

there was no need for a wheel chair. But what is not listed here is that this was approximately 20 days after Claimant had submitted his kite and after spending some 15 days in bed Claimant was able to walk again. The fact is that claimant has periods where he is unable to walk any distance even with his cane and SCS and needs the use of a wheel chair or canadian crutches and other times when he can get around with just his cane and SCS. Nowhere in Dr. Singh's Affidavit does he speak on the fact that a pair of Canadian Crutches was purchased in 2007 by FCF for Claimants use during the times when he cannot get around on just his cane and SCS. The statement that "pursuant to observation by a corrections officer he used the cane sometimes as a walking aid and other times more as a gentleman's accessory." This statement is untrue and unfounded as there is no mention of what corrections officer stated this and even if an officer did state this it is a total fabrication.

    j. The statement by Dr. Singh that (It is my opinion being mobility impaired is different and less severe than being mobility disabled.") is ludicrous. If you look at the exhibits Claimant submitted with his Affidavit you will see in one of the exhibits S, T, U, V, or X, it states "Pt has a history of Debilitating...." (Claimant does not have a copy of these exhibits to give a complete quote or which exhibit it is in, but it is highlighted on the exhibit.) A person is either disabled or not there is no in between, I was determined to have a mobility disability in 2008 and should have been found to be so in 2004. Claimant has been disabled since coming to prison and has remained disabled the whole time he's been in prison. My condition has not degraded in a large degree in ten years.

    k. It is true that on January 22, 2009, an Accommodation Resolution was issued indicating that Claimant was determined to have a mobility disability following a medical screening. But Claimant was not granted all the accommodations requested and needed by Claimant. (see Claimants Affidavit and supporting documents). Per the Remedial Plan page 4, V. PLACEMENT, sub paragraph 4, "Inmates who are currently in the DOC and are moved to a designated facility because of a disability and pursuant to this agreement will have the same privileges and property rights as they posses in their current placement." The fact is that the medical assistive devices that I had at FCF prior to my ADA transfer to FLCF must be returned or replaced. There is much documentation in claimants medical records/files which clearly show the need for these items and or accommodations (Tennis Shoe Permits) etc.

    l. It is true that Claimant was found not to have a mobility disability on earlier dates, but this was not due to the Claimant not being disabled, but rather due to the DOC not properly evaluating the Claimant, stating that because Claimant has a cane he is no longer disabled. Claimant should have been found to have a mobility disability the first time Claimant applied and all his previous accommodations should still be accommodated. This answers i., m., n.

    O. Many of the statements in exhibits A22, A23 and A24 are untrue. Dr Wermers claiming "It was noted that Mr. Fistell is ambulating with a cane. id. It was also noted that when Mr. Fistell is ware he is being observed, his cane use increases and his gait changes Id. when

unaware of being observed, he walked at a good pace, minimal cane use, heel-toe strike normal." This is untrue, it is true that at times I walk better then others (that's normal for people who have back and leg problems such as mine), but what Dr. Wermers is saying is untrue. The fact is Dr. Wermers does not note in the file that he physically hurt Claimant during the first ADA Screening (by forcing Claimants legs to move further then Claimant can move them) or that Claimant thereafter fell during the balance part of the screening due to Dr. Wermers slapping his hand way when Claimant tried to steady himself by putting his hand on the armrest of the wheel chair he was using at the time. None of those things that actually happened are listed, but the falsehoods he wanted to list are. Video from the security cameras in medical on the day of the first screening by Dr. Wermers will prove this. (refer to the hearing tape, I requested that this video be held, see testimony of Major Robinette). This video was not held and instead was erased for the purpose of concealing the actions of Dr. Wermers during his ADA screening of Claimant. Dr. Wermers behavior was criminal in nature during these screenings of Claimant. Note: Claimant has filed a complaint with the Colorado Board of Medical Examiners on the physical abuse Claimant suffered at the hands of Dr. Wermers during said ADA screening.

  p. If the Court reviews the documents previously submitted by the Claimant the Court will see that there is a clear disability caused by Sciatica/nerve damage in Claimants back and legs. (see exhibits S, T, U, V, and X, attached to Claimant's Affidavit.)

  In closing the Claimant prays this Court will except this response and consider the information included therein before making the final decision in this claim, and rule in favor of the claimant ordering the CDOC to return or replace all his DME items and personal property, lost, confiscated/withheld and destroyed and any further relief this Court deems appropriate.

Respectfully Submitted,

*Allen Fistell*

Allen Fistell, #63253

4.