IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-JLK-OES

JESSE (JESUS) MONTEZ, *et al.*,

Plaintiffs,

v.

BILL RITTER, *et al.*,

Defendants.

**DEFENDANTS' RESPONSE TO THE COURT'S MINUTE ORDER RE SPECIAL MASTER'S DECEMBER 22, 2008 ORDER (DOC. 3856) AND RELATED OBJECTIONS AND FILINGS**

Defendants, through counsel, Elizabeth H. McCann, James X. Quinn, and Berina Ibrišagić, of the Colorado Attorney General's office, submit the following Response to the Court's Minute Order Regarding Special Master's December 22, 2008 Order (Doc. 3856) and Related Objections and Filings.

The parties in this case entered a Stipulation Regarding Status of Compliance between the Plaintiff class and the Colorado Department of Corrections on March 31, 2008 ("2008 Stipulation") [Doc. No. 3322], which this Court subsequently approved on April 4, 2008. [Doc. No. 3326].

On June 20, 2008, claimant Ronald Cordova filed an Objection to the 2008 Stipulation, [Doc. No. 3484] together with a Letter in support of that objection. [Doc. No. 3483]. In response to the objection and the letter, the Special Master ordered both parties to respond to Claimant Cordova's objections. Defendants filed their response directly with the Special Masters on October 14, 2008. (*See* **Exhibit A**). Plaintiffs filed their response on October 14, 2008. [Doc. No. 3667]. Special Master Borchers reviewed all the filings, researched the issue in

depth and issued an order on December 22, 2008, denying Claimant Cordova's motion and giving the parties until February 17, 2009 to file the objections to his order. [Doc. No. 3856].

On March 16, 2009, Claimant Cordova filed a late objection to Special Master's December 22, 2008 order, titled "Response to the Special Master's court order," dated December 22, 2008. [Doc. No. 3857]. Special Master Borchers then issued an Order on March 16, 2009, extending the objection deadline to his December 22, 2008 order until March 11, 2009. [Doc. No. 3879]. On March 25, 2009, Special Master Borchers issued an Amended Order correcting the extension deadline until May 11, 2009. [Doc. No. 3885]. On June 29, 2009, Special Master Borchers issued another Order stating that he was treating Mr. Cordova's March 16, 2009 letter as a Motion to Compel. Special Master Borchers denied that motion and gave the parties until August 24, 2009 to object. [Doc. No. 4026]. On July 10, 2009, Claimant Cordova filed his objection, titled "Motion for Response and Objection to Special Master Order, Dated June 29, 2009." [Doc. No. 4031].

On February 10, 2010, this Court issued a Minute Order, ordering Defendants to respond to Claimant Cordova's motions and objections, and Special Master's orders. [Doc. No. 4289]. In a separate order, [Doc. No. 4291] this Court affirmed the Special Master's Final Order [Doc. No. 3478] regarding Claimant Cordova's individual damage claim. Cordova was found to not have a vision or diabetic disability. Cordova was, however, determined to have a mobility disability.

Mr. Cordova, along with twenty-seven (27) other inmates who signed the June 20, 2008 letter in support to Mr. Cordova' Objection to the 2008 Stipulation, take an issue with Class Counsel entering into the stipulation with Defendants. They specifically object to the 2008 Stipulation with regards to the replacement of prescription eyeglasses, having Cathie Holst act as

the ADA Inmate Coordinator ("AIC"), arguing conflict of interest, and questioning whether or not the 2008 Stipulation expanded the scope of the vision disabled to include all inmates who wear glasses.

Section XXXII of the Remedial Plan only allows *pro se* inmates to file their individual damage claims with the Special Masters. Mr. Cordova filed his claim, he had a hearing before Special Master Borchers and his claim was denied. [Doc. No. 3478] This Court affirmed the Final Order of the Special Master. [Doc. No. 4291] Other than section XXXII, the Remedial Plan does not provide any basis upon which an individual inmate may pursue his own motion. Class counsel represents all members of the class. Before the 2008 Stipulation was in effect, Class Counsel met with the individual inmates on numerous occasions. It is unclear whether or not Mr. Cordova attended those meetings, but it is clear from his filings that he was aware of the meetings. He now argues that he had no notice of the pending stipulation and that he was not given an opportunity to object to it. Defendants are unable to address the issue of Class Counsels' communication with their own clients.

Mr. Cordova first objects to paragraph number 1 of the 2008 Stipulation, arguing that it diminishes protection of the individuals with prescription eyewear. That section reads as follows:

> Inmates will be permitted to retain possession of their personal glasses until CDOC issues a replacement pair of glasses. Unless it is determined that the inmate intentionally broke his/ her own glasses, CDOC will replace damaged or broken glasses free of charge on an as needed basis. If the preponderance of the evidence shows that the inmate intentionally broke his/ her glasses in any particular year, he/ she will be responsible for the replacement costs of those glasses.

Mr. Cordova argues that this section significantly changes the meaning of the Remedial Plan, Section XVI (c) – Health Care Appliances, which reads:

> DOC staff will evaluate any health care application brought into a facility by an inmate for safety and security reasons. No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entry into the DOC system or was properly obtained while in DOC custody, unless for documented safety or security reasons or the Chief Medical Officer determines that the appliance is no longer medically necessary or appropriate. If the healthcare appliance is taken away for safety or security reasons, the Chief Medical Officer or a licensed physician […] shall be consulted immediately to determine appropriate action to accommodate the inmate's needs.

The general thrust of Mr. Cordova's objection is that the Remedial Plan allowed inmates who came into DOC custody with their own glasses, including those with wire rims and tinted lenses, to keep them as health care appliances. He believes that the 2008 Stipulation allows the DOC to remove inmates' personal eyeglasses upon entering custody, in exchange for the state issued glasses. Claimant Cordova is mistaken in this belief.

The Remedial Plan, Section XVI, allowed the DOC to remove inmates' prescription eyeglasses, such as wire rimmed or tinted glasses, upon entry, because they were considered a known security and safety risk. The 2008 Stipulation changes the removal of wire rimmed or tinted glasses upon entry into the DOC. The inmates are allowed to keep those glasses, until they need replacement for whatever reason.

The 2008 Stipulation actually benefits inmates and would benefit Mr. Cordova also, if he were a newly incarcerated inmate by DOC. If he were to enter DOC today and he had tinted or wire rimed glasses, he would be allowed to keep them, until he needed replacement glasses. The 2008 Stipulation provides another benefit for the inmates currently incarcerated, by requiring

4

DOC to replace damaged or broken glasses free of charge on an as needed basis, rather than only replacing damaged or broken glasses in a three-year period of time.

Mr. Cordova seems to think that due to his transfer from one facility to another in 2009, he should now be allowed to have his own prescription eyewear from an outside source. He is again mistaken, as only incoming new inmates are allowed to keep their own glasses, until a replacement is needed. No inmate is allowed to purchase his or her prescription eyeglasses from an outside source. (*See* **Exhibit B**).

Next, Mr. Cordova questions whether or not the 2008 Stipulation was expanded to include all inmates who wear prescription glasses as vision disabled. That was not the intent of the 2008 Stipulation and the Stipulation did not expand the class of vision disabled offenders to include all offenders who wear glasses.[1] Therefore, if an inmate wears prescription glasses and his or her vision is correctable to 20/200 or better, he or she is not considered vision disabled. Even Special Master Borchers found in his Order that "Paragraph 1 of 2008 stipulation did not expand the class of those who are vision impaired. This is consistent with the language in class counsel's response that 'parties entered into negotiations regarding Stipulations to benefit Montez Class Members…'" [Doc. No. 3856] The 2008 Stipulation was entered into by both parties and it benefits the inmates, but it was not intended to expand the class.

Finally, Mr. Cordova objects to paragraph number 26 of the 2008 Stipulation, which states:

> In the case of a disagreement between the AIC and any other DOC employee, medical provider or contractor concerning the disability status of an inmate and/ or accommodations to be provided, the conclusion of the ADA Inmate Coordinator will be final.

---

[1] Indeed, even the recent amendments, which generally expanded the definition of disability, excluded individuals who merely wear glasses as being defined as disabled. *See* 42 U.S.C.A. § 12102 (4)(E)(ii).

5

He argues that "[t]here is a conflict of interest in the first place with Cathy [H]olst being appointed AIC[,]" although this language of the 2008 Stipulation follows Section II of the Remedial Plan, where both parties mutually agreed upon Ms. Holst being the AIC. In fact, this Court has expressed the importance of the authority vested in Ms. Holst to enforce compliance with the Remedial Plan, and the paragraph number 26 of the 2008 Stipulation confirms that. Furthermore, as this Court is aware, Ms. Holst retired in October 2009, and this issue is therefore moot.

Respectfully submitted this 23rd day of February, 2010.

        JOHN SUTHERS
        Attorney General

        s/ Berina Ibrišagić
        _____
        ELIZABETH H. MCCANN*
        Special Assistant Attorney General
        JAMES X. QUINN*
        Senior Assistant Attorney General
        BERINA IBRIŠAGIĆ*
        Assistant Attorney General
        Civil Litigation and Employment Law Section
        Attorneys for Defendants

        1525 Sherman Street, 7th Floor
        Denver, Colorado  80203

        *Counsel of Record

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 23rd day of February 2010, I electronically filed the foregoing DEFENDANTS' RESPONSE TO THE COURT'S MINUTE ORDER RE SPECIAL MASTER'S DECEMBER 22, 2008 ORDER (DOC. 3856) AND RELATED OBJECTIONS AND FILINGS with the Court using the MC/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Paula Greisen | Ed Ramey |
| Jennifer Riddle | Lara Marks |
| greisens@kinggreisen.com | Blain Myhre |
| riddle@kinggreisen.com | earamey@ir-law.com |
| | lmarks@ir-law.com |
| | bmyhre@ir-law.com |

s/ Darlene Hill
_____
Colorado Office of the Attorney General

7