IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL RITTER, et al.

    Defendants.

---

Claim Number 03-477
Category III
Claimant: Larry Dean Jones, #68661
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 26, 2010. This hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Larry Dean Jones (Claimant) and Berina Ibrisagic, attorney for Defendants.

Claimant called himself as a witness. Claimant also offered into evidence Exhibit #1 which was admitted. Defendants presented the following witnesses: Doug Roberts, Linda Lyons, Dr. Paula Frantz, M.D.; and Dr. Gagandeep Singh, M.D. Defendants offered into evidence Exhibits A through H, and all were admitted. The case was taken under advisement after closing arguments.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Masters also were not involved in the negotiation of the Settlement Agreement. The Special Masters are bound by the provisions of that agreement, as they have only the jurisdiction agreed upon by the parties.

> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

## II.

Claimant came into DOC custody on July 30, 1992. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred on October 30, 1992 to the Centennial Correctional Facility (CCF) in Canon City, Colorado. Claimant then was released on an appeal bond on April 30, 1993.

Claimant returned to DOC custody on June 9, 1994 when his conviction was affirmed. He was placed back at DRDC and then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado on July 18, 1994. On January 23, 2003, Claimant was transferred to the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Claimant remained at CCCF until his transfer to CTCF on July 8, 2009.

Claimant forwarded several documents to the Special Masters in August, 2009. Claimant was advised that a formal claim form had to be filed pursuant to Article XXXII of the Remedial Plan. Claimant did file a claim which was received on September 12, 2009.

In his claim form, Claimant alleged that he was disabled due to mobility impairment, hearing

impairment, and vision impairment. He also alleged that he is diabetic. In response to the question concerning the date that Claimant believed he became disabled, Claimant stated "stroke in 1991 and deterioration ever since." Claimant went on to state, in part, as follows:

> Barely walks from stroke. Left leg numb and can't control. Can't climb stairs, and two slipped discs in back. 75% of vision lost due to Diabetes. I have an excessive loss of hearing, and can't hear the P.A. system. I have to sleep in an elevated position due to Acid Reflux disease. My comprehension and understanding levels are very low, loss of memory and can't walk any distance due to shortness of breath. I have severe bad legs, and with muscle spasm, I am in a constant amount of pain. I have almost no vision, and my eyelids are pretty much closed. I am in need of ADL assistance due to my disorientation because of my numerous health situations.

Claimant stated further that he believed that the discrimination against him began on January 23, 2002 when "the facility disregarded my health concerns and requests." Claimant went on to state:

> I was neglected by not immediately being given a cane, or at least a walker. I should have been given proper medication, to include insulin, and could barely walk. I need assistance in all of my waking hours due to my numerous health situations that are considered humongous.

Claimant testified in support of his claim. Claimant testified that he had a major stroke in 1991 that affected his health. In response to specific questions from the Special Master, Claimant testified concerning each of his claimed disabilities. Claimant testified that he was diagnosed with diabetes in 2004. He has been receiving medication since that diagnosis. As to his vision loss, Claimant testified that this began with the stroke in 1991. He testified that he believed that he had 20/400 vision in both eyes. He stated further that he had always received prescriptions for sun glasses, as his vision could not handle bright light or sunlight.

Claimant testified further that his hearing loss began after the stroke. He had asked for hearing aids previously, but did not receive those until 2009. He believed that he should have had hearing aids years ago. He testified that the hearing aids are difficult to use because he has tinnitus. The hearing aids need a special program to mask the ringing from tinnitus, but DOC will not pay for the extra program, according to Claimant.

Claimant testified that his mobility issues arose after the stroke. He has had a cane and medical boots for an extended period of time. He needs new medical boots but DOC will not replace them. He has had a difficult time going up and down stairs.

Claimant stated that he should have been at a medical facility, rather than at CCCF which is a private prison. He also testified that he has major reactions to strobe lights which make him sick. He received a cell with a strobe light because of his hearing loss, but this led to other problems. He would prefer a cell without a strobe light.

On cross-examination, Claimant testified that he did not recall seeing any posters at CCCF concerning this case. He stated that he had a short-term memory loss, but could not state whether he had been at any meetings at CCCF when the case was discussed by anyone.

Claimant stated that he has worn prescription sunglasses for an extended period of time. He wears sunglasses all the time, including when he is inside a building. He stated further that he had received permits to wear sunglasses in the past. When asked about complaints he had made to DOC staff, he testified that he had complained about his vision and hearing as far back as 1992. In response to a question from defense counsel, Claimant stated he received a cane shortly after coming into DOC custody.

On redirect, Claimant testified that he filed a claim to seek certain items to make his last couple of years to be a bit more comfortable. He indicated that he had no complaints concerning the medicines that he has received. He would like some additional accommodations.

Defendants called several witnesses who testified by telephone. Doug Roberts is the DOC monitor of private prison facilities used by the department. He came to DOC in January, 2008. He was familiar with CCCF and was aware that posters had been placed at the facility concerning the *Montez* case. He believed that posters were up at all private facilities.

Linda Lyons is the librarian at CCCF. She testified that she has been in that position for eight years. She was familiar with the *Montez* case and indicated that CCCF issued memos and posters concerning the settlement of the case. She was aware that notice was given of the case on the in-house television system. She indicated that posters were put up at various places at the facility. Exhibit B was similar to the posters used at CCCF.

Dr. Paula Frantz, M.D. was called as a witness and testified that she is the chief medical officer for DOC. She was familiar with Dr. Saxerude, who is a contract optometrist with DOC. She was aware of the evaluation by the optometrist which reflected the potential of malingering by Claimant. She was asked about myopia and photophobia. Dr. Frantz indicated that strobe lights could trigger seizures, but none had been reported in Claimant's medical records.

Defendants presented Dr Gagandeep Singh, M.D. who is a physician with DOC. He had reviewed the medical records of Claimant. He noted that Claimant did not appear to be vision impaired under the criteria of the ADA. He noted that Claimant did have cataracts in his eyes, but that they were not mature as yet. Floaters in Claimant's eyes would note be considered a disabling condition.

## III.

Defendants moved for dismissal of the claim on the basis that it was filed too late. Defendants' argument was based upon the testimony of Mr. Roberts and Ms. Lyons. The argument, stated simply, is that Claimant was on notice of the *Montez* settlement and had a duty to file his claim much earlier.

The evidence presented at the hearing established that posters, like Exhibit B, were placed around the facility at CCCF. A careful review of the poster reflects no mention of the claim process under Article XXXII. The poster provides information on how to seek accommodations.

Before a claim will be dismissed for lack of timely filing, there must be some showing that the individual had information concerning the claim process or was offered such information. In this case, that burden has not been met. Claimant will be granted the benefit of the doubt and his claim will be adjudicated on its merits.

## IV.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Diabetes:** During direct examination, Claimant testified that he was diagnosed with diabetes in 2004. An oral motion was made by counsel for Defendants to dismiss this part of the claim, and that was granted.

Under Article XXXII, a claimant must prove that he had diabetes on or before August 27, 2003. Claimant acknowledges that he was not diagnosed until after that date. The diabetes portion of the claim is dismissed.

**Mobility Impairment**: The evidence submitted by Claimant reflects that he has had mobility problems for years. His testimony establishes that he had difficulty walking and has had a cane for well over ten years. Claimant was a member of the class as mobility impaired on or before August

27, 2003.

**Vision Impairment**: Claimant testified that he has worn glasses for years. His testimony was vague concerning specific problems that he faced due to vision issues. Claimant testified that he was able to undertake his activities of daily living prior to August 27, 2003. Claimant has not proven that he was vision impaired on or before August 27, 2003. Claimant is not a member of the class as vision impaired on or before that date.

**Hearing Impairment**: Claimant testified that he has been having problems with his hearing since 1991. The evidence presented by Claimant is so vague as to make it impossible to determine if he was hearing impaired on or before August 27, 2003. He has not established that he was a member of the class as hearing impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has failed to provide such proof.

Claimant testified that he has short-term memory loss. The Special Master will accept that testimony. Coupled with that is the fact that Claimant is not a good historian of what has transpired over the years that he has been in DOC. In order to prevail on a charge of discrimination, a claimant must prove that he was treated differently than someone without a disability. Claimant's testimony failed to provide any detail concerning specific acts of discrimination that may have occurred prior to August 27, 2003. The delay in filing a claim certainly did not help Claimant as he attempted to prove that DOC and its staff violated the ADA and Rehabilitation Act. Claimant's testimony was so vague as to make it impossible to enter a finding that discrimination did take place on or before that date.

As to issues of medical care, the United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Masters have no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has failed to provide sufficient specific evidence to establish any discrimination

occurred on or before August 27, 2003. Claimant may have been the victim of discrimination at some point prior to August 27, 2003. He has not proven that, and the claim cannot be granted.

To the extent that Claimant believes that he was the victim of discrimination prohibited by the ADA after August 27, 2003, the claim will have to be placed in abeyance. Judge Kane has taken under advisement the issue of whether individual *pro se* inmates may file motions seeking relief for something that occurred recently. If Judge Kane rules that such a right does exist under the Settlement Agreement, then this claim may be re-opened by Claimant.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Larry Dean Jones is denied, as he has failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 and has failed to establish that he was the victim of discrimination under the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant's claim concerning events after August 27, 2003 will be held in abeyance pending Judge Kane's ruling; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 24, 2010.**

SIGNED this 12th of March, 2010.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

8