IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

BILL RITTER, et al.,

       Defendants.

---

Claim Number: 03-465
Category III
Claimant: Allen Fistell, #63253
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

---

## ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on Claimant's motion for order of compliance, return of property and further damages. The Special Master has reviewed the motion and attachments, response from Defendants, and reply of Claimant. Further argument will be waived.

**I.**

Claimant came into DOC custody on November 4, 1992. He has been in DOC custody since that date, not having been paroled or placed into a community setting.

When Claimant came into DOC custody, he was evaluated at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. On July 3, 1995, he was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. On December 18, 2008, Claimant was transferred to the Ft.

Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

Claimant filed a claim pursuant to Article XXXII of the Remedial Plan on April 21, 2009. A hearing was held on the claim on June 19, 2009 at FLCF. Claimant presented testimony from several witness and from himself. Defendants did not present any witnesses at the hearing, but reserved the right to submit an affidavit from a physician. That affidavit was submitted after the hearing and was considered by the Special Master in adjudicating the claim.

The Special Master determined that Claimant had been mobility impaired for years, having been injured in automobile and motorcycle accidents before entering into DOC custody. From the evidence, the Special Master noted that Claimant had been considered mobility impaired by DOC staff in the mid-1990's. Throughout the time that Claimant has been in DOC custody, there have been periods of time when DOC staff considered him disabled and then not disabled.

From all the evidence, the Special Master found that Claimant was disabled under the ADA and Rehabilitation Act going back to the mid-1990's. The Special Master further found that two acts of discrimination had been proven by Claimant. The first dealt with the loss of his electronic technician's position at FCF. This occurred before August 27, 2003. The second time was when FCF staff removed handrails from the showers and Claimant's room at FCF. Pursuant to the Remedial Plan, FCF was to become a facility in which ADA-disabled inmates would not be housed.

The Special Master then considered the appropriate remedy for the discrimination. The Special Master stated, in part, as follows:

> 4. Did this conduct cause the Claimant harm and if so, what is the appropriate remedy? The loss of the electronics repair job cost Claimant money because the job paid better than other available work. The Special Master determines that Claimant is entitled to damages in the amount of $1,000.00.

The final order on the claim was issued on September 25, 2009. Defendants have filed an objection

to this final order.

On December 6, 2009, Claimant filed a "Motion for an Order of Compliance, Return of Property, and Further Damages." In his motion, Claimant made a number of allegations concerning what he perceived to be inappropriate conduct. He expressed concern about potentially losing his cane, shower chair and other accommodations. He further believed that a new Accommodation Resolution was inappropriate, as DOC staff found him not to be mobility impaired. Claimant alleged, in part, as follows:

> When Claimant went before this Court he requested that this Court order the Defendants to return all of his DME and personal property which was taken from him. Claimant did not specifically ask for monetary damages. Claimant now feels that in light of the Defendants further acts of discrimination in now taking away all of his accommodations that this Court should granted further monetary damages.

Attached to his motion is a copy of the new accommodation resolution in which on October 26, 2009 DOC medical staff opined that Claimant was no longer mobility impaired.

Defendants were directed to respond to the motion of Claimant. The response was submitted on February 16, 2010.[1] Defendants have argued that Claimant has no legal basis upon which to seek return of any durable medical equipment or other property. Defendants further argue that medical care providers have not abused their discretion in removing various items of durable medical equipment from Claimant. Finally, Defendants have argued that no provision of the final order of the Special Master directed Defendants to provide any item of durable medical equipment.

Claimant has filed a reply to the response of Defendants. He has argued that there is jurisdiction to decide his motion and that his medical equipment should be returned to him.

---

[1] On February 16, 2010, Defendants also filed an objection to the final order of the Special Master on the claim of Allen Fistell. That objection will be ruled upon by Judge Kane. That objection has limited bearing on the issues raised by Claimant.

## II.

Claimant's motion raises a jurisdictional issue that must be examined. Defendants have argued that their objection to the final order ought to be allowed to proceed to resolution with Judge Kane. The Special Master notes this argument has some merit, but the issues presented might as well be resolved at this point in time.

Class counsel and Defendants arrived at a settlement of outstanding issues in this case in mid-summer 2003. A fairness hearing was set before then-Judge Edward Nottingham. After review of objections filed by various individuals, Judge Nottingham approved the settlement. The Remedial Plan became the contract for settlement between the class and Defendants. The Remedial Plan thus has controlled everything that has occurred since August 27, 2003.

The Remedial Plan contemplated three major time considerations. First, Defendants would have two years in which "to come into substantial compliance with the terms of this Remedial Plan..." *Article XXXI*. This was referred to as the "compliance period." The Remedial Plan provided for extensions of the compliance period if substantial compliance had not been obtained. Judge Kane is scheduled to hold a hearing commencing on June 7, 2010 in which evidence will be presented concerning Defendants' compliance with the Remedial Plan.

Second, once Judge Kane has determined that substantial compliance has occurred, then the "monitoring period" will commence. *Article XXXI*. The Remedial Plan further provides, in part, as follows:

> Once the monitoring period is complete, this Plan is no longer in effect unless, prior to the completion of the monitoring period, there has been an objection filed alleging non-compliance.

The agreement between the parties, as approved by the Court, was to provide a finite period of time in which system and program changes would be made by DOC. Once the changes were completed,

then the case would be dismissed with prejudice. *Article XXXVI B*.

The damages provision is a separate article in the Remedial Plan. *Article XXXII*. This article provides the sole basis upon which damage claims are filed in the case. As part of the settlement, class counsel and Defendants agreed that individuals, such as Claimant, would have the right to file claims for damages for acts of discrimination that occurred during the time period leading up to the settlement. Article XXXII reads as follows:

> Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I.   General inconvenience or nominal damages;
> II.  Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotion injuries (such as fear of death);
> IV. Damages due to severe physical injuries; and
> V.  Damages due to death.
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

> Class members with damages allocated under categories 1 and 2 shall not be entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3, 4 & 5 shall be entitled to a hearing before the Special Master. Generally, these hearings should be no more than two hours in length. However, the Special Master may extend the time for a hearing when the issues require additional time. Class members that are entitled to a hearing on their respective damages are entitled to counsel during that hearing, to present witness, make argument, and to any remedy otherwise available in a court of law.

> After review of the evidence, the Special Master shall issue a written determination as to the damages awarded to each claimant. These awards may be appealed on an abuse of discretion review to the Honorable Judge Kane.

Class members, their representatives and counsel are entitled to discovery regarding their damage claims and shall be provided copies of the relevant DOC files upon request, including but not limited to medical information, as well as relevant internal quality assurance documents as allowed by the special master.

Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case. The Special Master may only extend the time limits for filing a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.

Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any individual with respect to their individual damage claim.

Article XXXII provides the only basis for jurisdiction over claims filed by class members. This article provides that claims may be filed for alleged discriminatory actions by DOC and its employees that occurred on or before August 27, 2003. This means a claimant must establish that he was disabled under one of the four categories while in DOC custody on or before that date and the victim of discrimination prohibited by the ADA and Rehabilitation Act.

Over the last six years, rulings have been issued by Judges Nottingham and Kane, as well as the Special Masters, that have become the law of the case. First, individuals who were never in DOC custody prior to August 27, 2003 cannot file a claim under Article XXXII. Second, individuals who were in custody prior to August 27, 2003 but were not disabled nor the victims of discriminatory conduct until after this date cannot pursue a claim under Article XXXII. Third, individuals who raise only issues related to the quality of medical care may not pursue a claim in light of *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Fourth, individuals may file only one claim under Article XXXII. Fifth, systemic issues cannot be

raised by individual claimants, as that is the duty and responsibility of class counsel.

The issue raised in Claimant's case concerns the jurisdiction, if any, under Article XXXII that extends past the adjudication of the claim. As discussed earlier, the Remedial Plan will come to an end at some point when substantial compliance is achieved and the monitoring period expires. At that point, this case will be dismissed with prejudice by the Court. Though not explicitly stated in the Remedial Plan, the dismissal of the case would also include any claims that then remain unadjudicated or any claims in which continuing jurisdiction is raised.

In this specific claim, the Special Master awarded monetary damages to Claimant for two actions of discrimination that occurred in the past. The Special Master did not make any finding of continuing discrimination. More importantly, the Special Master did not issue any order extending his jurisdiction into the future. Claimant filed his claim under Article XXXII, and it was adjudicated. He was awarded monetary damages. Defendants have exercised their right to appeal this award to Judge Kane.

Claimant had his opportunity to file his one claim, and he has done so. There is no basis under Article XXXII of the Remedial Plan to act on Claimant's motion. There was and is no provision under Article XXXII for the Special Masters to be involved in overseeing the daily decisions made by DOC staff concerning medical care and property provided to individual inmates. The motion will be denied for lack of jurisdiction under Article XXXII.

The Special Master notes that class counsel have argued that the failure of Defendants to come into substantial compliance should allow individuals the right to file additional claims. That issue is before Judge Kane and will be ruled on after the compliance hearing in June. If Judge Kane agrees with class counsel and believes that claims may be filed because of the lack of substantial compliance, then this motion would be treated as a new claim. Until Judge Kane rules on this issue,

7

no further action can be taken by the Special Master on the motion.

Claimant may seek the assistance of class counsel. *See, McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir 1991). Claimant also may file a separate law suit under the ADA and Rehabilitation Act, or such other statute as may be appropriate. Claimant also may wait to see how Judge Kane rules on the issue of continuing jurisdiction. Claimant also retains the right to file an appeal with Judge Kane concerning this order.

The Special Master specifically finds that no continuing jurisdiction exists under Article XXXII to adjudicate this motion. The motion will be denied without prejudice. The motion will be treated as a new claim and held in abeyance pending a ruling by Judge Kane on the issue of continuing jurisdiction.

IT IS HEREBY ORDERED that Claimant's motion for order of compliance, return of property and further damages is denied for lack of jurisdiction under Article XXXII; and

IT IS FURTHER ORDERED that the motion will be treated as a new claim and will be held in abeyance pending a ruling from Judge Kane; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 17, 2010.**

SIGNED this 5th day of March, 2010.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master