IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 16 2010

GREGORY C. LANGHAM
CLERK

JESSE MONTEZ, et al.

    Plaintiffs,

-vs-

BILL RITTER, et al.

    Defendants.

Claim Number 00-465
Catagory III
Claimant: Allen Fistell, #63253
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038-1000

## CLAIMANT'S RESPONSE TO DEFENDANTS' OBJECTIONS TO FINAL ORDER

Come now, Allen Fistell Claimant, pro se responding to Defendants' objections to Final Order.

1. The Defendants' claims that "Fistell did not provide the documents to the Defendants for sur-rebuttal or response." (pg. 2, Defendants' Objections) The above statement is untrue and the FLCF Legal Mail Log will prove that Claimant (Fistell) did in deed mail the Defendants a copy of "Claimants' Response to the Affidavit of Dr Singh and request for leave to file this response late." (see exhibit "D" Claimant's Response to the Affidavit of Dr. Singh....) The fact is that Claimant did not receive a copy of Dr. Singhs' Affidavit until 9-8-09 (the date all documents were due in to the Special Master) and as such could not respond in a timely manner. (see exhibit "D") Claimant mailed both the copy to the Special Master and the Attorney General the same day either 9-10-09 or 9-11-09.

The Defendants argument I. is untrue a copy of "Claimants' Response to the Affidavit of Dr. Signh...., was mailed to the Defendants on either 9-10-09 or 9-11-09 through the FLCF Legal Mail process.

As the Defendants were mailed a copy of the above referenced Response and therefore could have responded if they choose to do so, the Special Master did not abuse his discretion by making a finding in favor of the Claimant.

2. The Defendants argument II is incorrect for the following reasons: Defendants claim that terminations from Equipment Repair Vocational Program (here after OER) was on December 2, 2003. But Claimant produced a grievance on this issue that clearly show Claimant was not allowed to go to work at OER during and before the third month of 2003 (see exhibit "[M][a]") From this time forward (ie. the third month of 2003) Claimant was not allowed to go to work at OER. The Actual discrimination happened long before the termination date as exhibit "M (a)" shows.

3. The Defendants' argument in III is untrue for the following reasons: The Special Master has the jurisdiction to determine the disability classification of a class member. This is what the Special Master has done in this case. The Special Master determined that "He was a member of the class as mobility impaired in 1996 and remains so at the present time." This has to do with Claimants classification as a class member which is within the Special Masters discretion and jurisdiction.

The Special Master ruled: "The second area post-dates the approval of the Settlement Agreement. Conduct by DOC staff toward Claimant has been on-going since 1996. The Settlement Agreement provides that some facilities in DOC were to become ADA facilities. Inmates with Disabilities would be housed only at these facilities. Other correctional centers would not have any ADA-qualified inmates. FCF was a facility that would not have disabled inmates."

"Claimant remained at FCF despite having been considered for years

as mobility impaired. As time went on, Claimant lost the handrails in his cell at FCF, as well as handrails in the shower. Claimant testified that the loss of handrails placed him in danger of falling. The Special Master finds that the loss of handrails reflect the "on again, off again" nature of DOC's evaluation of Claimant. In light of extensive records with medical staff dating back to Claimant's entry into DOC, claimant should not have remained at FCF after the decision was made to not designate FCF as an ADA facility."

This ruling was on personal discrimination against the Claimant, not compliance issues as claimed by the Defendants. Issues of personal discrimination against the Claimant such as the removal of handrails from his cell and the shower are within the scope of the Special Masters jurisdiction.

As for the Defendants argument that "Accordingly, removal of the handrail was performed by CDOC in compliance with the Remedial Plan." This statement is untrue. The Remedial Plan states pg. 10 para. 1, "With respect to non-designated facilities and areas of DOC facilities that will not house inmates with disabilities, structural alterations will be reviewed at the project design phase for compliance with accessibility requirements. At that time, a determination will be made whether structural accessibility to the maximum extent feasible is warranted, in view of budgetary and penological considerations." This statement clearly states that the CDOC is to review any renovation plans to see if they can be brought into compliance with accessibility requirements, nowhere in the Remedial Plan does it say that structural accommodations such as handrails can be removed from non-designated facilities.

4. The Defendants statement on page 2, concerning Claimants not filing his claim until April 24, 2009. It is true Claimant did not file his claim until April 24, 2009, after Claimant had been told he could file a claim by the Special Master. Claimant after his hearing explained to the Special Master in a Motion and provided documents Exhibit A, B, C, showing that in June of 2005 when the handrails were removed from his cell that attorney David A. Lane had said he would take care of this

matter. (see also testimony of Martin Fistell during the hearing on June 19th, 2009, concerning phone conversation with David A. Lanes' Office.)

Wherefore, for the above reasons the Claimant prays this Court will uphold the Special Masters Final Order and direct the Defendants to comply with said Order.

Respectfully Submitted,

Allen Fistell, #63253

CERTIFICATE OF MAILING

I, Allen Fistell do hereby certify that this 12th day of March 2010, I have mailed a true and correct copy of the foregoing motion to the below individuals through the U.S. Mail First Class postage prepaid:

Office of the Attorney General
1525 Sherman ST., 7th Floor
Denver, CO 80203-1730

Exhibit "A"

# KILLMER, LANE & NEWMAN, LLP     ATTORNEYS AT LAW

1543 CHAMPA ST. • SUITE 400 • THE ODD FELLOWS HALL • DENVER, CO 80202
303.571.1000 • FAX: 303.571.1001 • www.killmerlane.com

DAROLD W. KILLMER
DAVID A. LANE
MARI NEWMAN
MARCEL KRZYSTEK

June 15, 2005

Fremont Correctional Facility
Attn: Warden – Gary Watkins
P.O. Box 999
Canyon City, CO 81215

Re: **Inmate: Allen Fistell #63253**

Dear Mr. Watkins:

    I have been contacted by Martin Fistell, the brother of Allen Fistell, whom is an inmate at Fremont Correctional Facility, regarding his medical condition.

    Mr. Fistell has informed me that Allen Fistell is disabled and needs hand rails to use the restroom. He has indicated that the facility has moved him into a cell that is not equipped with hand rails. I am urging you to carefully review his situation and, if his medical needs are being ignored, my office will take steps to see that his constitutional rights are being adequately protected.

    Please look into this matter and contact me by June 30, 2005 regarding what is being done to assist Mr. Fistell.

Sincerely,

David A. Lane

DL/plm

cc:     Martin Fistell

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

FREMONT CORRECTIONAL FACILITY
P. O. Box 999
Cañon City, Colorado 81215-0999
Phone (719) 269-5002
FAX (719) 269-5020



Bill Owens
Governor

Joe Ortiz
Executive Director

June 23, 2005


David A. Lane
1543 Champa St. - Ste. 400
The Odd Fellows Hall
Denver, CO 80202

Subject: Allen Fistell, DOC #63253

Dear Mr. Lane:

I have received your letter regarding inmate Allen Fistell, DOC #63253, and I do not appreciate one, being threatened and two, assuming we have done something wrong.

Inmate Fistell received a Code of Penal Discipline violation and as a result, lost the privilege to have a single bunked cell. Prior to his being moved from this cell, the FCF Medical Department confirmed that he does not need a cell equipped with hand rails.

Hopefully this answers your concerns.

Sincerely,

*[signature]*

Gary K. Watkins
FCF Warden

GKW/mw

pc:   Gloria Masterson, Associate Warden, Support Services
      Sandy Logsdon, Administrative Officer
      Glen Jones, Case Manager, Cellhouse 3
      FCF Medical

# KILLMER, LANE & NEWMAN, LLP     ATTORNEYS AT LAW

1543 CHAMPA ST. • SUITE 400 • THE ODD FELLOWS HALL • DENVER, CO 80202
303.571.1000 • FAX: 303.571.1001 • www.killmerlane.com

DAROLD W. KILLMER
DAVID A. LANE
MARI NEWMAN
MARCEL KRZYSTEK
JULIE SHEKER

July 12, 2005

Martin Fistell
4230 Xenon Street
Wheatridge, CO 80033

RE: *Allen Fistell*

Dear Mr. Fistell:

You will find attached a copy of the letter from Gary K. Watkins, Warden at the Colorado Department of Corrections.

As you know, David is looking into the matter and we will keep you informed when we receive updated information.

In the meantime, if you have any questions, please feel free to call.

Sincerely,

Patti L. McKim
Paralegal for David A. Lane

/plm

Enclosure

IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-EWN-OES

JESSE (JESUS) MONTEZ, et al.,
      Plaintiffs,

V.

BILL OWENS, et al.,
      Defendants.

Claim Number 03-465
Category III
Claimant: Allen Fistell, #63253
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO, 81038-1000

CLAIMANT'S RESPONSE TO THE AFFIDAVIT OF DR. SINGH
AND REQUEST FOR LEAVE TO FILE THIS RESPONSE LATE.

Comes Now, the Claimant in the above referenced claim requesting that this Court except his response to the Affidavit of Dr. Gagandeep Singh as a late filing and as grounds the Claimant states the following:

1. The Claimant received the Affidavit of Dr. Singh on 9-8-09 (the date it was due in this Court) and as such could not respond in a timely manner.

2. The Claimant has a right to respond in order to insure that these proceedings are fair.

3. The Claimant will now respond to Dr. Singh's Affidavit. Claimant will respond to each issue by the same letter as in Dr. Singh's Affidavit:

  a. The Hand written notes on exhibit A1 were not done by Dr. Creany and in fact were done by N.P. Chestnut at FLCF in December of 2008 or the first part of 2009. (see exhibit A attached hereto.) It is true that at the time of the implantation of the SCS it relieved 80% of the pain in his right leg. See exhibit A18 of Dr. Singh's Affidavit, this shows Dr. Singh did not fully review the documents and his opinion is not based on a fully informed decision. Dr. Creany clearly states in his findings in exhibit A18 see "Objective" "Pt. walks w an awkward gait and a cane. He moves slowly and i have observed him ambulate on many occasions he has mild quad wasting in both legs...." This clearly show that Dr. Creany recognized my disability in his own words.

  b. Under "Objective", (exhibit A3 of Dr. Singhs Affidavit) "Pt entered appt as usual relying upon his cane for ambulatory and seating/standing support." The standards of the ADA are not what I can do with my assistive devices ie cane and Spinal Cord Stimulator (SCS), but what I can do without these devices. The fact is that most of the time I do get around fairly well with my cane and SCS, but without these

assistive devices I cannot get around at all. At times I need the added support of my back brace to get around in addition to my cane and SCS. I have been waiting to go back to Dr. Koons the Neuro Surgeon who did my three back surgeries and implanted my SCS, but this has been delayed by the DOC for months, I believe this was done to conceal his reports from this Court. Claimant believes the reports of Dr. Koons would prove his claims of being disabled and the needs for certain assistive devices that were taken from claimant by FLCF staff upon his ADA transfer to FLCF. The record also exhibit A4 does not state what staff say claimant does not meet these criteria.

    c. Dr. Singh's assessment is not correct. He states that, "Despite the absence of a qualifying disability Mr. Fistell was issued a shower chair and permit." The fact is Claimant has had his shower chair since the mid 90's, it was not issued to him on 7-7-2006 as he states. The shower chair is needed because Claimant cannot shower with his SCS running as the external Power Supply/Transmitter cannot get wet, and the Claimant cannot stand without it running or wearing his back brace. (see exhibit A4 attached to Dr. Singh's Affidavit, this explains that I cannot stand let alone walk without my SCS running and why I need a shower chair.)

    d. The Statement of Dr. Singh is partially true and partially untrue. Claimant agreed to the functional capacity examination and was taken on a day trip to get this testing, but the DOC took Claimant to the wrong Doctor, that is why exhibit A6 under objective "Called pt over to notify him of rescheduled functional capacity exam." The first time the DOC sent Claimant for this test, they made claimant wear boots, Shackled Claimants legs, cuffed Claimants hands and put a "Black Box" on which was chained to Claimants belly, and then made Claimant walk this way with his cane in between his legs. Claimant believed that this was unreasonable and that he should not have to be subjected to this again. Claimant also believed that his medical file clearly showed that he was disabled. The Claimants beliefs turned out to be true, as he has never had this "functional capacity exam" and is now found to be disabled.

    e. The fact is that on 5-15-07 here was a medical staffing held and it was decided that "the permit was issued after the criteria for a medical tennis shoes was modified to accommodate his specific case. Id. It was decided that the modification would be appropriate for Mr. Fistell's "unique situation (implanted spinal stimulator)" and a "deterioration of his condition." But the fact is that this should have been done in 2001 and in 2003, Claimants condition has not deteriorated it is the same as it was in 2001 and 2003. Now at FLCF the DOC still do not accommodate Claimant concerning being able to wear Tennis Shoes at all times. Claimant cannot get visits at FLCF wearing his tennis shoes even though FCF had relented in 2008 and allowed Claimant visits in his tennis shoes. Because of the additional pain caused Claimant by wearing boots, Claimants family does not and will not visit him at FLCF. This answers d., e., f., g., and h.

    i. It is true that on July 29, 2008 P.P. Walsh saw claimant concerning a request for use of a wheel chair and found at that time

there was no need for a wheel chair. But what is not listed here is that this was approximately 20 days after Claimant had submitted his kite and after spending some 15 days in bed Claimant was able to walk again. The fact is that claimant has periods where he is unable to walk any distance even with his cane and SCS and needs the use of a wheel chair or canadian crutches and other times when he can get around with just his cane and SCS. Nowhere in Dr. Singh's Affidavit does he speak on the fact that a pair of Canadian Crutches was purchased in 2007 by FCF for Claimants use during the times when he cannot get around on just his cane and SCS. The statement that "pursuant to observation by a corrections officer he used the cane sometimes as a walking aid and other times more as a gentleman's accessory." This statement is untrue and unfounded as there is no mention of what corrections officer stated this and even if an officer did state this it is a total fabrication.

j. The statement by Dr. Singh that (It is my opinion being mobility impaired is different and less severe than being mobility disabled.") is ludicrous. If you look at the exhibits Claimant submitted with his Affidavit you will see in one of the exhibits S, T, U, V, or X, it states "Pt has a history of Debilitating...." (Claimant does not have a copy of these exhibits to give a complete quote or which exhibit it is in, but it is highlighted on the exhibit.) A person is either disabled or not there is no in between, I was determined to have a mobility disability in 2008 and should have been found to be so in 2004. Claimant has been disabled since coming to prison and has remained disabled the whole time he's been in prison. My condition has not degraded in a large degree in ten years.

k. It is true that on January 22, 2009, an Accommodation Resolution was issued indicating that Claimant was determined to have a mobility disability following a medical screening. But Claimant was not granted all the accommodations requested and needed by Claimant. (see Claimants Affidavit and supporting documents). Per the Remedial Plan page 4, V. PLACEMENT, sub paragraph 4, "Inmates who are currently in the DOC and are moved to a designated facility because of a disability and pursuant to this agreement will have the same privileges and property rights as they posses in their current placement." The fact is that the medical assistive devices that I had at FCF prior to my ADA transfer to FLCF must be returned or replaced. There is much documentation in claimants medical records/files which clearly show the need for these items and or accommodations (Tennis Shoe Permits) etc.

l. It is true that Claimant was found not to have a mobility disability on earlier dates, but this was not due to the Claimant not being disabled, but rather due to the DOC not properly evaluating the Claimant, stating that because Claimant has a cane he is no longer disabled. Claimant should have been found to have a mobility disability the first time Claimant applied and all his previous accommodations should still be accommodated. This answers i., m., n.

0. Many of the statements in exhibits A22, A23 and A24 are untrue. Dr Wermers claiming "It was noted that Mr. Fistell is ambulating with a cane. id. It was also noted that when Mr. Fistell is ware he is being observed, his cane use increases and his gait changes. Id. when

unaware of being observed, he walked at a good pace, minimal cane use, heel-toe strike normal." This is untrue, it is true that at times I walk better then others (that's normal for people who have back and leg problems such as mine), but what Dr. Wermers is saying is untrue. The fact is Dr. Wermers does not note in the file that he physically hurt Claimant during the first ADA Screening (by forcing Claimants legs to move further then Claimant can move them) or that Claimant thereafter fell during the balance part of the screening due to Dr. Wermers slapping his hand way when Claimant tried to steady himself by putting his hand on the armrest of the wheel chair he was using at the time. None of those things that actually happened are listed, but the falsehoods he wanted to list are. Video from the security cameras in medical on the day of the first screening by Dr. Wermers will prove this. (refer to the hearing tape, I requested that this video be held, see testimony of Major Robinette). This video was not held and instead was erased for the purpose of concealing the actions of Dr. Wermers during his ADA screening of Claimant. Dr. Wermers behavior was criminal in nature during these screenings of Claimant. Note: Claimant has filed a complaint with the Colorado Board of Medical Examiners on the physical abuse Claimant suffered at the hands of Dr. Wermers during said ADA screening.

 p. If the Court reviews the documents previously submitted by the Claimant the Court will see that there is a clear disability caused by Sciatica/nerve damage in Claimants back and legs. (see exhibits S, T, U, V, and X, attached to Claimant's Affidavit.)

 In closing the Claimant prays this Court will except this response and consider the information included therein before making the final decision in this claim, and rule in favor of the claimant ordering the CDOC to return or replace all his DME items and personal property, lost, confiscated/withheld and destroyed and any further relief this Court deems appropriate.

        Respectfully Submitted,


        Allen Fistell, #63253

DC FORM 850-4A (8/99)

# COLORADO DEPARTMENT OF CORRECTIONS
## OFFENDER GRIEVANCE FORM
### STEP 3

CFF03/04-24

Medical

| NAME Fistell, Allen | DOC NO. 63253 | FACILITY FCF |

Instructions:
1. Fill out identifying data legibly in space provided;
2. Clearly state basis for grievance or grievance appeal;
3. Describe the attempts made to resolve the problem;
4. State specifically what remedy you are requesting;
5. Attach copy of prior step in grievance process.

**REQUEST:**
The answer to my step two grievance is incorrect. My problem with foot drop (front of my feet dropping and tripping is documented in my medical file). I have been evaluated for this problem many times by Dr. AlJalil, Dr. Koons, and others. The fact is if I wear boots I trip and end up hurting myself. I am in a wheelchair when my legs get to hurting more and weaker, when I am forced to wear boots this happens more often. The A.D.A. provides for this by not allowing discrimination against handicapped people such as what is happening in this case. I have had a permit for more then eight years, and because the permit was not renewed I lost my job at Office Equipment Repair, which is in turn a violation of the A.D.A. settlement in the Montez Case. It's funny how the reason has changed for the denial to renew the tennis shoe permit, originally it was denied because " Mr. Fistell-we have not given out shoe permits in more then 2 years per security & AW/Wardens request" (C. Batson), but now I am told I do not have a need or meet the criteria for said permit. It sure is funny that I have always met the criteria in the past, and in fact still have the same medical need as I have had all these years. **Remedy Requested:** Renewal of the Tennis shoe permit.

DATE: 3-27-03    OFFENDER SIGNATURE: _Allen Fistell_

**RESPONSE:**




If you are dissatisfied with the response to this Step 1 or Step 2 grievance, you may obtain further review by submitting the next step to your Case Manager or the Grievance Officer.

DATE: _____  SIGNATURE: _____

**RECEIPT:** I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: _____

DATE: _____  SIGNATURE: _____

**RECEIPT:** I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

DATE: _____  SIGNATURE: _____

20035    DISTRIBUTION:    White-Department File    Canary-Working File    Pink-Administrative Head    Goldenrod-Offender

ATTACHMENT "A"
Page 1 of 1