IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **92-cv-00870-JLK**

**JESSE MONTEZ, et al.**

      Plaintiffs, as representatives of themselves and all others similarly situated,

v.

**BILL RITTER, et al,**

      Defendants.

## ORDER re CLAIMANT CORDOVA'S OBJECTION/APPEAL (Doc. 3857) OF 12/22/08 Order of Special Master (Doc. 3856)

Kane, J.

This matter is before me on Claimant Ronald Cordova's "Response" (Doc. 3857) and related filings (e.g., Doc. 4031) (construed collectively as an Objection/Appeal) to the Special Master's Order dated December 22, 2008 (Doc. 3856). The Special Master's Order related to a previous Objection (Doc. 3484) and follow-up letter (Doc. 3483) of Mr. Cordova's, in which Mr. Cordova took issue with the Stipulation entered into by the Department of Corrections (DOC) and Montez class counsel on March 31, 2008. Stipulation Regarding Status of Compliance by the Colorado Department of Corrections with the Montez Remedial Plan (Doc. 3322)(the "March 31, 2008 Stipulation"). Mr. Cordova complained the Stipulation negatively impacted the rights of vision-impaired inmates under the original Montez Remedial Plan by allowing DOC staff to confiscate and replace personal eyeglasses rather than allowing inmates to retain personal eyewear until

they wore out or needed replacing.  Mr. Cordova argued the March 31 Stipulation expanded the Montez subclass of vision impaired inmates to all DOC inmates who wear eyeglasses, and entitled him and others like him to retain their personal eyeglasses until replacements were needed.

The Special Master ordered responses from DOC and class counsel and after reviewing all of the filings, rejected Mr. Cordova's concerns.  The Special Master declined to read the March 31 Stipulation as having expanded the Montez subclass of vision impaired inmates to include all inmates who wore glasses, finding Mr. Cordova's contrary reading inconsistent with the purpose and language of the Stipulation.  *See* Dec. 22 Order (Doc. 3856) pp. 5-7.  The Special Master also rejected the notion that counsel could agree to expand the Montez class to include individuals who, like Mr. Cordova, have failed to meet ADA and Rehabilitation Act vision-disability criteria.  *See id.*  Finally, and because Mr. Cordova had previously been adjudicated *not* vision-impaired under the Remedial Plan, the Special Master ruled Cordova could not rely on the Remedial Plan for protection concerning the retention of his glasses and lacked standing to challenge the Stipulation or object to the actions of class counsel in agreeing to it.  *Id.* at 7-8.

After another round of briefing, in which the DOC and class counsel have weighed in on the December 22 Order and Mr. Cordova's "Response" to it, I ADOPT the Special Master's rulings as an ORDER of the Court, but SUPPLEMENT and CLARIFY his rulings as follows:

1. With respect to eyeglasses, the March 31 Stipulation simply dictates that *if* DOC

confiscates an inmate's prescription glasses, then it must have replacement glasses ready before doing so.  Arguments that this provision did or did not "expand" the Montez subclass of vision-impaired inmates to "all" inmates who wear glasses are, as class counsel aptly put it, "a bit of a red herring" and conflate compliance with systemic injunctive and other equitable relief secured on behalf of the Montez class as a whole with the limited individual rights of action counsel negotiated on behalf of the various specific Montez subclasses and reflected in § XXXII of the Remedial Plan.  The distinction is in the nature of classwide relief afforded under Fed. R. Civ. P. 23(b)(2) and (b)(3).  The former reaches situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive or corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.  The latter is a mechanism for affording individual relief across a class because that achieves economies of time, effort and expense, and promotes uniformity of decision as to persons similarly situated.  *See generally* Advisory Committee Notes, Fed. R. Civ. P. 23.  DOC's obligations under the Plan and March 31 Stipulation with regard to the protocol for confiscating personal eyeglasses and replacing them falls into the former category.  The right of individual Montez class members to proceed under Plan § XXXII falls into the latter.

The situations in which individual relief may be administered in a class action under Rule 23(b)(3) are more limited than those in which the defendant is ordered to act or refrain from acting towards members of the class as a whole.  This is true because of the time and effort it takes to evaluate the facts and circumstances of individual damage claims, and the

3

procedural safeguards that must be followed to ensure their fair prosecution and defense. As is abundantly clear to this judge, the discreet and limited right to proceed individually on pro se discrimination claims under § XXXII of the Montez Remedial Plan must be protected, but contained within the four corners of that document.  Accordingly, only inmates who can demonstrate they were within the four Montez subclasses of disabled inmates in August 2003 have the right, negotiated for them by class counsel in proceedings leading up to the Plan's execution, to file claims with the Special Master for individual relief under Plan § XXXII.  The subclasses of Montez class members entitled to file discreet and limited § XXXII claims under the plan do not "expand" when the DOC stipulates or commits to act or refrain from acting on compliance issues raised on behalf of the class as a whole.

As a practical matter, however, DOC's equitable or injunctive compliance obligations, whether created by agreement or by court order, will inure to the benefit of all disabled inmates regardless of Montez class membership.  In this way the March 2008 Stipulation can be viewed as a *de facto* "expansion" of the benefitted class, but the concept is not necessary to the result.  Inmates whose prescription eyeglasses are subject to seizure for safety or security reasons will be permitted to retain them until replacements are available, just as inmates with hearing aids will receive long-life batteries when their batteries need replacing.  I suppose one could view the March 31 Stipulation as having "expanded" the class of inmates entitled to benefit from these changes beyond those who were disabled as of August 2003, but the concept is not necessary to the effect.

It is compliance with these equitable and injunctive remedies, which were negotiated under the Plan and clarified/supplemented by Stipulation, that is of paramount importance at this stage of the proceedings. That certain eyeglass-wearing DOC inmates were not incarcerated in August 2003 when the Plan was negotiated does not mean that DOC may confiscate their glasses without regard to the commitments made to those inmates who were incarcerated then and have demonstrated membership in the Montez subclass of vision-impaired inmates. It does mean that those newcomers may not pursue damage claims under § XXXII of the Plan. I will have more to say on this later, when I address the Special Masters' Report and Recommendation dated December 16, 2008 (Doc. 3741). Until then, this clarification should communicate where we are headed.

The DOC made a commitment in the Plan, reiterated with a specific compliance protocol in the March 31 Stipulation, to refrain from confiscating inmates' personal prescription glasses until it could make replacement glasses immediately available. Mr. Cordova's insistence that the Stipulation precludes the DOC from confiscating inmate glasses until they wear out regardless of safety or security concerns is neither supported by the language of the Stipulation or Plan nor germane to the argument before me. The issue is the DOC's compliance with the class-wide injunctive or equitable obligations to which it has committed, and which have been ordered and have the force of law. In that regard, the fact an inmate with prescription glasses came into DOC after August 2003 or falls otherwise outside the Montez subclass entitled to pursue an individual claim under Plan § XXXII does not mean the DOC may ignore its court-ordered obligations under the Plan or

5

March 31 Stipulation and confiscate those glasses without having a replacement pair immediately available.

    2. Class counsel's argument that Mr. Cordova and other inmates should be recognized automatically as vision-impaired upon seizure of their prescription eyeglasses is hypertechnical and unpersuasive, as is the DOC's assertion that its obligations under the March 31 Stipulation with regard to allowing inmates to retain their personal prescription glasses until they wear out is limited to newly incarcerated inmates.  Just as the Montez subclass of vision-impaired inmates entitled to proceed under § XXXII does not automatically "expand" to include all inmates who may benefit from the equitable relief ordered for the class as a whole, the DOC cannot seriously contend an inmate like Mr. Cordova would have to do without replacement glasses because he was incarcerated before the Stipulation went into effect.  All that I ask is a soupçon of sense be brought to the process.  If DOC needs to confiscate Mr. Cordova's prescription eyeglasses for safety or security reasons it should comply with its commitment to replace those glasses without references to his incarceration date.  If, as it appears, Mr. Cordova's beef is simply that he doesn't want replacement glasses if they do not have the photo-gray lenses, then he will need to adjust.  I direct this piece of wisdom to Mr. Cordova, which it attributable, I am told, to some youngster named Jagger:  "You can't always get what you want."

    3. Mr. Cordova lacks standing to raise concerns on behalf of the class regarding the neutrality of DOC employee Cathie Holst or her replacement, Kathleen Baxter, with respect to DOC's obligations under the Remedial Plan, and those issues have been amply

addressed by class counsel on the class's behalf.

The Special Master's December 22, 2008 Order (Doc. 3856) is ADOPTED as an

ORDER of the Court, as SUPPLEMENTED herein.

Dated March 18, 2010.                    **s/John L. Kane**
                                         SENIOR U.S. DISTRICT JUDGE