IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 92-CV-00870-JLK

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 22 2010

GREGORY C. LANGHAM
CLERK

JESSE MONTEZ, et al.
Plaintiffs,

V.

BILL RITTER, et al.
Defendants

---

Claim Number: 03-445
Category: III
Claimant: Raymond D. Goodloe, #51437
Address of Claimant: FLCF, Po. Box 1000, Ft. Lyon, Co. 81038-1000

---

OBJECTION TO ORDER OF THE COURT DATED FEBRUARY 17, 2010

---

COMES NOW, the Claimant in the above listed claim, proceeding Pro-Se in his Objection to District Court Judge Kane's Order of February 17, 2010, and as Grounds therefore, states the following;

STATEMENT OF THE CASE

1). This claim was categorized as a level III by the Special Master and a hearing was held on December 29, 2008 at the BCCF facility. On March 6, 2009, the Special Master ruled in favor of the Claimant and Ordered CDOC to provide the Claimant with [Appropriate] soft soled shoes and ankle brace, as well as compensate the Claimant in the amount of $300.00.

2). On April 17, 2009, the Claimant received a pair of medical issue, velcro fasten footwear that have absolutely NO orthotic value whatsoever. The shoes are flat soled with no arch support, no ankle support and literally No padding in them that would aide in the management of the Claimants chronic medical issues with his right ankle.

This is the issue with the shoes provided by CDOC as there is NOTHING even remotely "Soft" about the footwear except the fact that the soles are made out of 1/8" rubber and have no padding or insoles. These are not appropriate shoes and are definately NOT Orthotic shoes that I need.

3). The Claimant filed a Motion with the Special Master and requested a second hearing in the matter which was Granted, and on October 16, 2009 the hearing was held at the FLCF facility where the Claimant presented as evidence the medical issue footwear issued to him by CDOC and the ankle brace issued by Dr. Oba at the BCCF facility.

4). The Defendants presented evidence in the form of photo's the shoes issued to the Claimant, and testimony from Dr. Tim Creany, a self described "Expert" at reading medical files. Obviously a "Specialized Field".

On October 30, 2009, the Special Master issued an Order directing CDOC to have the Claimant re-evaluated by a Podiatrist or Orthopedic Specialist to determine whether or not the shoes issued the Claimant by CDOC are, in fact, [Appropriate] to aide the Claimant in managing the Chronic effects of the injury he suffered to his right ankle in 1993. Specifically, the shoes recommended by SEVERAL Orthopedic Specialist's, "two of which were CDOC contract consultants", were to help alleviate the constant pain and severe discomfort the Claimant experiences on a daily basis when simply walking, and the problem has existed for some (17) years now.

5). The Defendants, "who continue to assert that there is nothing wrong with the Claimants ankle, despite all of the doctors reports to the contrary", Objected to the Order of the Special Master and on February 17, 2010, the Honorable Judge Kane issued an Order in which he [Sustained] the Defendants Objections, and Ordered the Claimant seen by a "Prison Doctor", who is a [General Practitioner] and not qualified to make any type of educated assessment of the condition of the Claimant ankle or injury.

On February 25, 2010, the Claimant was seen by a Dr. Wermer at FLCF and the Claimant couldn't be more frustrated or disgusted by the utter incompetence of the good doctor or of his total lack of professionalism. Upon entering the examination room, Dr. Wermer was less than ill-prepared, and it took him longer to log onto the computer than it did for him to examine the Claimants ankle.

6). Dr. Wermer asked the Claimant several questions during the (10) minute ordeal, however, when the Claimant tried answering the doctors questions, the Claimant was told to "hold on a sec", while the doctor typed something into the computer. The Claimant doubts if he was entering any information pertinant to the Claimants case, as the Claimant had yet to be allowed to furnish the doctor with any answers to any of the questions he had been asked.

This occurred with each and every question, and, in the end, not one single question was answered by the Claimant. Dr. Wermer just ignored that fact and proceeded to conduct a Very cursory, "shade tree mechanic" type of "exam" on the Claimants ankle, then stated he was ready to file his report with the Court. This, and the fact that the doctor is not a qualified Orthopedic doctor, is the reason the Claimant Very Strenuously objects to the Courts Order.

**STATEMENT OF FACT**

1). The Court should be aware that, while not sure of the role he was to play in the exam, Dr. Wermer classified his charade as an " A.D.A. Screening ", because " Judge Kane is a Judge in the Montez action ". This is yet another example of the type of things that go on day in and day out at this facility, and it totally undermines the remedial plan and makes getting [QUALITY] medical care from any CDOC facility impossible.

2). Even more disturbing was Dr. Wermer's reply when the Claimant asked if the doctor was going to review the CDOC Orthopedic Specialist/Consultant's reports and recommendations provided by doctors Patterson and Eskastrand? Dr. Wermer asked the Claimant, " why should I look at those, what are those reports going to tell me ?? "

3). The Claimant informed Dr. Wermer that the Orthopedic consultant reports, as well as the treating physician, Dr. Lugene Dorr of St. Anthony's Hospital in Denver, as well as the radiologists reports were contained in Vol. #2 of

the Claimants medical file and would explain EXACTLY how bad the injury effected the Claimants ankle, what exactly was wrong with the joint itself, what was needed or recommended at the time the injury occurred, and what is needed and/or recommended now.

4). The treating physician Dr. Dorr as well as the Orthopedic CDOC consultants, Dr. Patterson and Dr. Eskastrand all thoroughly examined the Claimants ankle, (4) times from June 9, 1993, (initial exam St. Anthonys), to July 23, 1997, and virtually **ALL** of these **Orthopedic Specialists** reports concur, and are exactly identical. They **ALL** recommend the use of soft soled shoes (Orthopedic Footwear), the use of an ankle brace and even state that eventually, the Claimant WILL REQUIRE SURGERY !!

5). In lieu of surgery, soft soled shoes and a brace to help disperse weight off the Claimants ankle while walking are recommended. Yet, even though CDOC asserts that there is nothing wrong with the Claimants ankle and having the Claimant seen by a Qualified, unbiased, Orthopedic doctor, AGAIN, could finally put this issue to rest, the Defendants Object to an Order that would Prove, or disprove what they have been saying all along. They simply do NOT want the Claimant to be seen by a qualified orthopedic doctor because that would just duplicate the previous doctors reports and recommendations, and CDOC does not want that to happen.

What is even more ludicrous, is that the Court [Sustained] the Defendants objection, and instead has the Claimant seen by a " Doctor " the Court has already received Numerous complaints on in the recent past. The Claimant has already spent (17) years fighting, limping, hurting and begging for the assistive devices he needs to help him ambulate and avoid surgery. And the Claimant wonders why the reports and recommendations from Dr. Patterson and Dr. Eskastrand are being ignored ?? They were, and as far as the Claimant knows, still are contracted with CDOC as consultants. Someone should look at the remedial plan under entry #22.

With one stroke of the pen, the Court, instead of allowing the Claimant to be seen by a qualified orthopedic specialist, gives CDOC and their medical department yet another opportunity to continue the "Vicious Cycle" of providing inmates the least amount of medical care possable when, after (17) Long years, the Claimant is all but crippled by this type of conduct, which leaves the Claimant wondering in frustration exactly What the Courts role in all of this really is ??

The Claimant respectfully Moves the Court for an Order directing the Colorado Department of Corrections to compensate the Claimant in the amount of $2,000.00 and to Specifically Order CDOC to allow the Claimant to Order [Appropriate] soft soled orthotic footwear and insoles from an authorized vendor such as " Hangers Orthopedics ". In this way, the Claimant would be able to purchase his own footwear and manage the effects of his chronic medical issues with his ankle until such a time as the Claimant is released from CDOC.

If the Court should decide NOT to Grant the Claimants Motion, the Claimant would Move the Court to issue its Order directing CDOC to have the Claimants ankle Re-Examined by a Qualified Orthopedic Specialist contracted with CDOC.

The Claimant Strenuously but Respectfully Objects to the Court ruling which had the Claimant examined by a " Prison Doctor ", who is not qualified to make an assessment on an injury that is outside his area of expertise. The Claimant has contacted class council for assistance in this matter but has not received any reply from them to date.

The Claimant would ask the Court to review the treating physician and radiologist's reports, as well as the reports and recommendations from the CDOC Orthopedic Specialist's Dr. Eskastrand and Dr. Patterson. (See Attached Exhibits)

Since the Claimant has, to date, been extremely unsuccessful in having these documents reviewed by Anyone

except the Special Master, the Claimant feel's that, because Dr. Eskastrand and Dr. Patterson were, and probably still are contracted through CDOC as Orthopedic Consultants, and have the knowledge and expertise to examine the Claimants ankle, the tomography x-rays and read fellow Orthopedic Specialists reports, the reports and recommendations submitted by both of these doctors should, by all rights and the remedial plan, be not only looked at, but followed.

## CONCLUSION

Shortly after the Claimants arrival at FLCF, the Claimant filed a complaint with the Special Master wondering what sense it made for the Claimant to be brought back to one of the same facilities that, for an entire Year (2006 to 2007) kept insisting that there was nothing wrong with the Claimants ankle, when virtually ALL of the paperwork from qualified phyicians say otherwise ??

That complaint went by the wayside, and I continue to be told that, despite all of the doctors I have seen, who all have made the exact same reports and recommendations, there is nothing wrong with my ankle. So, if that is the case, maybe I need to be examined by a **[Qualified]** mental health Specialist to determine if I might be some kind of a " Hypocondriac " or something ??

The reports cannot go un-seen and ignored, Your Honor, and they should be Valid, considering that they were submitted by Orthopedic Specialists contracted through CDOC as Consultants, otherwise, why have me examined by them in the first place ??

So, it is at this time that the Claimant Prays the Court Grant his Motion and directs the CDOC to compensate the Claimant in the amount of $2,000.00 and Specifically give the directive that the Claimant be allowed to purchase Orthopedic Footwear and insoles from an authorized vendor. In this way, the Claimant would finally receive the assistive devices that truely Are [Appropriate] and will aide the Claimant from the Chronic effects of his injury.

It Should be noted that, several times in the past, the Claimant has attempted to have appropriate footwear sent in at his or his relatives expense, to no avail.
So, should the Court deny the Claimants Motion and request for further compensation, the Claimant would then have to Move the Court for the previously outlined Order to be seen by a Qualified Orthopedic Specialist and re-evaluated, should the reports and recommendations from Dr. Eskastrand and Dr. Patterson be deemed in-valid and/or continue to be ignored.

The Claimant respectfully submits his Motion and Prays the Court Grant his request and Order Compensation in the amount of $2,000.00 with the Specified Directive giving the Claimant authorization to purchase Orthopedic footwear and insoles from an authorized vendor, such as " Hangers Orthopedics ".
The Claimant is aware of the hearing scheduled for July or August, however, the Claimant feels that because of the length of time that has already elapsed in this matter, and the condition of the Claimants ankle, an Immediate Ruling is more than warranted.

Dated this 18th day of March, 2010.

Respectfully Submitted,

Raymond D. Goodloe #51437

Raymond D. Goodloe #51437
FLCF Unit #8-122-B
Po. Box 1000
Fort Lyon, Co. 81038-1000



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**OFFICE OF THE CLERK**

GREGORY C. LANGHAM
CLERK OF COURT

Room A-105
Alfred A. Arraj United States
Courthouse
901 19th Street
Denver, Colorado 80294
Phone(303) 844-3433
www.cod.uscourts.gov

This is the best quality copy of the following document.

Clerks Office
United States District Court

Attachments

PROVENANT HEALTH PARTNERS

PATIENT NUMBER: 103692 L-2168
LAST NAME: GOODLOE RAYMOND D
M.
ADM DATE: V06/17/93 02:02F S
DATE OF BIRTH: 10/17/61
AGE: 31Y
PT TYPE: O
MS: D
SEX: M
ADDRESS: 326 CORONA ST
CITY: DENVER
STATE: CO
ZIP: 80206
AC/PHONE: 303-466-8306
LOCAL PHONE:
MAIDEN NAME: UNKNOWN
RELIGION: O PREFERE
PARISH:
NOK LAST NAME: GOODLOE, MARY
RELATIONSHIP: WIFE
HOME PHONE: 303-466-8306
WORK PHONE:
PREV ADMIT:
RESP. LAST NAME: GOODLOE RAYMOND D
RESP. ADDRESS: 1326 CORONA ST
CITY: DENVER
STATE: CO
ZIP: 80206
PHONE: 466-8306
INSURED EMPLOYER NAME:
INSURED OCCUPATION: NOT EMPL
EMPLOYER ADDRESS:
SECOND EMPLOYER NAME:
INSURED OCCUPATION: NOT EMPL
SECOND EMPLOYER ADDRESS:
GP 1 / SUBSCRIBER 1 / INSURED 1 / 1ST INSURANCE CO / EMP. / ID/SS
GP 2 / SUBSCRIBER 2 / INSURED 2 / 2ND INSURANCE CO. / EMP. / ID/SS

Copied
JUL 17 2008

NAME PRIMARY INSURANCE / ADDRESS PRIMARY INSURANCE / CITY / STATE / ZIP
ACC/DT / TIME / LOCATION OF ACCIDENT
CHIEF COMPLAINT/ADMITTING DIAGNOSIS: PAIN R FOOT
CONSULTING DOCTOR:
HOW ADMITTED/AMB. CO.: WALKED
REMARKS: AT **VERFIED**ORTHO
ATTENDING DOCTOR: DORR, LUGENE A.
PHONE: 8254111
TIME CALL RESPONSE:
ADMITTING DOCTOR:
PHONE:
TIME CALL RESPONSE:
REFERRING DOCTOR: DORR, LUGENE A.
PHONE: 8254111
TRAN. TO/AMB. CO.:
DISCHARGED: ☒ WALKED ☐ WHEEL CHAIR ☐ AMBULANCE ☐ CARRIED ☐ STRETCHER ☐ AIR SERVICE
DIS. DATE: 6-17-93
T/O: 1530
INT.:
RM/B:

V54

This man had an injury to the right ankle joint, @ 2 weeks ago. He was seen at that time and X-rays revealed a more serious injury to the ankle joint than was appreciated by the E.R. Physician. The radiologist agreed the joint looked a bit strange and recommended tomograms. Tomograms were obtained on 6/9/93 and showed [illegible] of a large part of the bearing surface of the talus with marked irregularity of the bearing surface. It appeared that even an ORIF would probably not be able to repair this satisfactorily. It then became a problem of getting back to the patient. H eventually called the office on 6/14/93 but the number he left was to an answering machine and we did not make contact with him on 6/16/93 at a motel where he is apparently staying. He was seen on 6/17/93 and shown his films. He was told he will probably need to have a tibio-talar fusion in the future because of the marked irregularity of the joint bearing surface. Placed in fiberglas SLC to get started on healing of the fx. See in @ 3 weeks. Sh. splint removed and skin problems noted, [illegible] taken & [illegible] applied. [illegible] D. Dorr, FG short leg cast & shoe applied. [illegible] [illegible] & [illegible] [illegible] [illegible] [illegible] Haussler O.T.

Sweeney Timothy #51437

January 31, 1994

To Whom It May Concern:

re: Ray Goodloe

This patient has been seen and treated by me. He has had an injury affecting his right ankle joint. This injury caused a problem with the bearing surface of the ankle joint.

The patient was initially seen on 6-3-93, and was scheduled for tomograms of the ankle joint. After these tomograms were seen it was recommended that the patient have surgery, but the patient did not return for the surgery or followup.

The patient recently called the office stating he was having problems. He was told it was much too late to do anything at this time and he would probably continue to have problems, and if they become great enough he would probably have to consider doing a fusion of the ankle joint. This was explained to the patient and to his sister.

Sincerely,

L.A.Dorr, MD

Copied
MAY 30 2008

SAINT ANTHONY HOSPITAL CENTRAL
RADIOLOGY REPORT

NAME: GOODLOE, Raymond

HOSPITAL NUMBER: 01036921 3160

BIRTHDATE: 10-17-61

X-RAY NUMBER: 759528

ROOM: OP

DATE OF EXAMINATION: 6-09-93

Copied
MAY 30 2008

ADMITTING PHYSICIAN:
ATTENDING PHYSICIAN:
ORDERING PHYSICIAN: LUGENE A DORR, M.D./14565
COPY TO:
COPY TO: /10000008
REQUISITION #: 3294817

PERTINENT HISTORY: Injury

AP TOMOGRAMS OF THE RIGHT ANKLE 1330 HOURS:

This study shows obvious involvement of the distal articulating surface of the [illegible] portion of the articulating surface on this AP projection. There is also a posterior tibial fragment delineated as well but I don't see any displacement of this.

LATERAL POLYTOMOGRAPHIC STUDIES OF THE ANKLE:

This examination shows a step-off of the articulating surface of the distal tibia in this projection with the majority of the [illegible] more inferiorly located. The dome of the talus appears intact with no fractures involving this area. I don't see any other findings of note.

DR/sa T:6-09-93 1600 15/3

DAVID A. RAETZ, M.D., RADIOLOGIST
I authorize my typed name to signify that I authenticated this report.

SWEENEY, TIMOTHY #51437 BVCF

**ORTHOPEDIC CLINIC (8-9-95):** DOB: 10-17-61
He is a 33 year old man who jumped out a window and injured his right ankle in 6/93. He suffered an intra-articular fracture, which was not fixed. Apparently it was a crush injury to the joint surface that did not require internal fixation but did leave him with degenerative arthritis. He now complains of pain with range of motion and with weightbearing. He has essentially given up most athletic activity.

**PAST MEDICAL HISTORY:** Remarkable for migraines and right shoulder discomfort.

**SURGERIES:** Jaw

**MEDICATIONS:** For hypertension

**EXAMINATION:** He has a tender, somewhat swollen ankle. It is not warm or red. Range of motion is -5-40. It is stable.

**X-RAYS:** Show advanced arthritic change in the joint.

**IMPRESSION:** Post-traumatic DJD of the ankle.

**RECOMMENDATIONS:** Ankle lacer for support. Progressive weightbearing, use of soft soled shoes. Ice and elevate for pain. Continued use of anti-inflammatories as tolerated. May eventually require arthrodesis. Follow up p.r.n.

noted

Jacob Patterson, M. D.
Orthopedic Consultant

T: 8-11-95/mg

Copied
MAY 30 2008






AUG 25 REC'D

SWEENEY, TIMOTHY #51437 CCF

ORTHOPAEDIC CLINIC (9-4-96): This gentleman has degenerative arthritis in his left ankle, after a fall many years ago with fracture. He has responded fairly well to steroid injection in the past.

EXAMINATION: He has marked restriction of range of motion and some chronic swelling, no redness or warmth.

X-RAYS: Show advanced post-traumatic DJD in the ankle.

PLAN: After sterile prep, I injected the ankle with 2 cc of Lidocaine and 2 cc of Celestone from an anteromedial approach. He should ice this for 24 hours and will see Dr. Carlson for his shoulder.

Jacob Patterson, M. D.
Orthopaedic Consultant

T: 9-5-96/mg

Copied

MAY 30 2008



Arnold L. Ahnfeldt, M.D
Orthopaedic Surgery &
Sports Medicine
(719)471-8855

Thomas Eskestrand, M.D.
Orthopaedic & Hand
Surgery
(719)471-1101

Barry A. Broughton, Ph.D., PA-C
1715 N. Weber Street, Suite 300
Colorado Springs, CO 80907

SWEENEY,TIMOTHY (alias Raymond Goodlow, his true name) PAGE 1
Inmate # 51437

23 JUL 97: We do not have a consult sheet here. According to my official list he is to be seen for his right shoulder, however, according to him, his right shoulder is not nearly the problem, as his right ankle. Because of both significant problems he is seen for both of those today. His right shoulder has been bothering him for appr 2 yrs. He has had injections with some benefit. He states that he is getting somewhat better. He was on the schedule for surgery, but he really feels very comfortable only with Dr. Carlson doing that. (He did not renew his contract as a physician, and so is not available for this). The pt wishes to wait until he is released before he is worked on.

The pt has another problem, which is his right ankle, which was fractured in 1993 with an intra-articular component into the tibiotalar joint. **He is in stiff-soled shoes, and this hurts him a fair amount. He rates the pain in his ankle at about 9/10. He is unable to run. He can walk appr one mile. Cannot stand for more than one hour and then has to rest. The ankle sometimes swells. He has start-up pain in the morning, gradually gets better and then gets worse toward the afternoon.** He denies any numbness or tingling. No other prior history of injury. He rates his shoulder pain at about 6/10. He would like to have front-buttoned shirts. He has difficulty reaching overhead and cannot lift more than 50 pounds.

X-RAYS in 1996 of the right shoulder show narrowing of the AC joint. Axillary views, WNL. **X-rays of the right ankle in Sep 96 show narrowing of the joint, spreading of the tibia as seen on the lateral.** The joint space appears to be reasonably well maintained. The **radiologist read a spur off the inferior acromion by his official report in Sep 96.**

**Pt has been on multiple anti-inflammatories, but this has not helped him at all, and so he just takes Elavil at night for the pain.** He has a history of IV drug use in the past.

ON PHYSICAL EXAM, the patient walks with a reasonable gait. His right shoulder forward-flexes 160 degrees, abducts 145, extends appr 60, internally rotates 45, externally rotates 70, adducts 20. He has pain through all ranges of motion, pos impingement sign, pos empty soda can sign, tenderness over the AC joint and subacromial space. Distally, radial, ulnar and median nerves are intact. **His right ankle is mildly swollen.** Neurovascular status is intact. He dorsiflexes to 0 degrees, plantarflexes 25 degrees, everts 0, inverts appr 10. **Tender over the anteromedial and anterolateral joint line.** No real tenderness over the lateral malleolus.

IMPRESSION: 1. Impingement syndrome, right shoulder. 2. **Post-traumatic arthritis, right ankle.**

RECEIVED JUL 30 1997

Copied
MAY 30 2008

Arnold L. Ahnfeldt, M.D
Orthopaedic Surgery &
Sports Medicine
(719)471-8855

Thomas Eskestrand, M.D.
Orthopaedic & Hand
Surgery
(719)471-1101

Barry A. Broughton, Ph.D., PA-C
1715 N. Weber Street, Suite 300
Colorado Springs, CO 80907

SWEENEY, TIMOTHY (alias Raymond Goodlow)



PLAN: Since pt does not wish to have surgery, none is reommended for his shoulder. With regard to his ankle, ~~I think that he rates the pain higher than it truly is functionally.~~ **[illegible] It does appear that he will need to have an ankle fusion, [illegible] within the next 5 yrs.**

TAE/ifn

8-4-97

RECEIVED
JUL 30 1997

Copied
MAY 30 2008