UNITED STATES DISTRICT COURT
901-19th Street
Denver, Co 80294

JESSE MONTEX, ET AL
VS
BILL OWENS, ET AL

CIVIL ACTION NO 92-cv 879 S70 OES and    96-N-343

party without counsel
Jill Coit #86530
Claim number 03-129
1401 West 17th Street (LVCF)
Pueblo, Co 81003

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 03 2010

GREGORY C. LANGHAM
CLERK

---

RAPE AND THE MONTEZ REMEDIAL PLAN INMATE

---

    Comes now, Jill Coit, pro se and member of the Montez Remedial Plan under mobility disability and impairment. I would not be a member of the Montez Class Action if CDOC (Colorado Department of Corrections) had not failed to protect me from one of its CWCF officers (Sgt. Joseph Smith) raping me repeadly for over a year and a half during which time he physically injured many parts of my body because I refused to cooperate with his devient sexual demands. I am in a wheel chair because CDOC and CWCF tried to cover up the rape and physical injuries. If my allegations of retaliation and harassment had been delt with along with treating the physical injuries I would not be disabled now.

    Rape by correctional staff members is CDOC dirty little secrete. Which is pathetic when you consider the fact that CDOC is a leader in all prisons throught the United States and the world. Rape victims and disabled inmates have one thing in common, CDOC refuse to give them even basic human accommodations when it would cost nothing or just pennies to accommodate their needs. Because I was raped and it took CDOC almost ten years to finally admit to the Appeals Court that they knew of the rape (see <u>exhibit 1</u> Appeals Court  case number  05-1045    ) I have fought to expose CDOC's officers raping female inmates. This has brought me nothing  but more retaliation, false write up (COPD violations), harassment and refusal of medical care that is given to non-rape or non disabled inmates. You see CDOC does not have to <u>fix</u> the bodily <u>injuries caused during the rape act or the excerbation of the injury caused by not treating the injury or the stress it causes. see exhibit 2,</u> titled Judge, Sexual abuse of inmates 'distressingly common' in state.

    How does this  apply to Montez Remedical Plan (MRP), it does because I reported and filed a 106 because a (found a) CWCF (officer) gave me a direct order <u>not</u> to carry my Montez/ADA Accommodation Resolution with me that it is a 'legal document' and she said I could not have any of my legal documents outside my living unit. This direct order is illegal and I sought help from Associate Warden, Kellie Wasko. Will go into the details later. (case number  District Court, Pueblo County, Colorado 10cv 577.)

also see filing titled "Notice to the Court that LVCF Medical is overriding all Prior CDOC Doctors Orders, & now staffing allowance and all Specialist Orders"

LVCF was faxed a copy of the pleadings this week. How does this make it a Montez Problem under Montez jurisdiction because retaliation. I arrived at LVCF in July/August 2009 and was told by security, Lt Knox that after observing me that I was to get a pass from my unit officer when I need to cross the facility to get to any building on the other side of the facility <u>ten minutes early</u> when ever there was a major movement, meaning at 7:20 and 12:50 , I get a pass for 7:10 amnd 12:40 .

This was done because LVCF has three inclines that I must go backwards to get over the incline. When I am the only inmate on this stretch of the walkway it is not a problem, however when all inmates are trying to get to class or programs my turning around and being slower present a problem. It is not a big 'accommodation' but a very important one for my safey as well as other inmates.

According to my Montez/ADA Accommodation Resolution number 13 "Additional time to arrive at destinations within the facility". My prior accommodations also had this accommodation. So LVCF allowing me to get a pass and go <u>early</u> was acceptable and met my disability wheel chair needs.

However on 4-28-10 I was informed by former CWCF officer Burk after her yelling my name in the yard several times and my not hearing her that,"I was no longer to get a pass and go earily to programs that I had to move with the rest of the inmates." I stated but I have to go backwards up the inclines, she laughed and told me that was not her problem, that Captain Yoe had made the rule.

I went back to my unit and was informed that I could not go earily any more and that they could not do anything to help me that they did not know who I made mad, but they had to enforce the rule, even if it was a stupid move.

The only proof that I have and it is not really good proof is a copy of the letter I sent to Major Waide when I was allowed to see him. A rare occurance at LVCF because getting to see higher up is almost inmpossible unless you are one of the 'favored'. I found Major Waide extremely professional and when given a problem he delt with it immediately. I needed to have a 'trunk stand' as part of my accommodation and he picked up the phone and ordered it immediately. I got it within the week.

I wrote a thank you letter to Major Waide dated 2-25-10 and later requested a copy of the letter for my records and used a mis-withdrawal slip see exhibit <u>4 letter to Waide and mis withdrawal slip where I was charged .25 cents and it was signed by Major Waide.</u>

The letter states, "I am to continue getting a pass when I leave the unit especially for the first movement of the morning and afternood when I need to go across the facility as Lt. Knox of security ordered me to do when he called me into his office. I have always obeyed this rule especially since it makes sence in light of the fact that I have to go backwards to get up some of the inclines to ge to the programs building. "

Next paragraph reads , "unfortunately when I tried to get to Jewish services last Friday night unit 2 was going to the dinning hall and inamtes were on the walk way. One actually fell into my lap since I am below the normal sight range. It really brought home the reason <u>he ordered me to get a pass ten minutes prior to movement when I must go across campus</u>.

What makes my NOW BEING DENIED TO MOVE 10 MINUTES PRIOR TO MOVEMENT is the fact that now I am always <u>late</u> to programs, classes and appointments. With my lack of vision it is very difficult to see with lots of people moving at once.

I have also enclosed a copy of the letter Major Waide sent to inmate Casperson (?) so you have the full picture. I pray I will not be sent to DWCF or further retaliated against for telling you. I was allowed to put my legal papers in my duffel bag & to purchase an extra lock so I could lock up my legal papers since I can never be in a two man cell. I am in a 5 man cell that meets all my disability needs. It is perfect for me and I appreciate being in this cell, another cell would not meet my needs so perfectly because this cell gets sun light on two sides and is at the end of the hall so it is quiet and still near the dinning hall and where I work.

I can not prove that I am being denied the privilege of geting to programs and activities on time because I filed the 106 on retaliation it just seems strange that LVCF would not allow me to get to programs early since I must find a space for my wheel chair and be out of other inmates way. I am attaching a copy of the Disposition of Charges to show you that the legal papers I had when Sgt. Laybe gave me the direct order was my ADA paper work (actually ADA Accommodation Resolution if you listen to my hearing tape.)

I am also inclosiong a copy of the baby-small copy of the Accommodation REsolution that disabled inmates were given to carry at all times. I put in several request to headquarters AIC asking for a copy of the paper work I signed in 2006 that stated I must carry my Accommodation resulution at all times but they refused to get me the copy, a month later I was told to get it from my case manager but I did that to begin with and he was to busy to look thruogh my file so my write-up stood. I lost the program-job I had been elgible for and accepted for-graphic designs, hobby craft items and got extra points added to my classification all because I obeyed the legal document I signed stated I must carry my Accommodation Resolution with me at all times.

Please know that LVCF is a wonderful facility probably the best in the state and pure heaven from a disabled inmates point of view. The staff approximately 95% are very professional and well trained in providing help when a disabled inmate asks. However there are at least 3 officers having sex with inmates. I know this because inmates have come to me and told me of the problem. They are afraid to come forward because despite what CDOC professes they punish inmates that report officer rape.

PREA was designed to manage and report inmats raping inmates and it does a good job. However it hurts and harms inmates that want to report being raped by an officer. The policy that I am trying to get changed is AR 100-40 pull it up and read it. CDOC claims they put reported rape victims in segregation (where they are deprived of all personal property, cold, hungry, no TV, legal books, books, tennis shoes, sweats and other even basic hygiene items for their protection.) I say BS. Why should the inmate who has sperm and wants the rape by a correctional officer get punished. That is where the problem really gets confusing. I have written CDOC Zavaras, and CDI Welton director to try to get this policy changed. Why does the rapist get to be free? Worse of all this policy moves the inmate to DWCF which is almost as bad as being raped.

Why would Montez Class Action be involved in rape issues because my disabilities are caused by the rape and excerbated by CDOC refusal to treat my physical disability accommodations all of which are allowed and acceptable under Montez. By constantly denying me the

basic accommodations to help me cope with my disabilites they cause stress and pain. I cannot even get my knee braces listed on my disability accommodations. It is a snow ball effect, if My knee braces are not listed on my Accommodation Resolution then LVCF does not have to allow me the extra pillow to elevate my swollen knee. I must then use the waste basket and get threatened with a CDOC violation of a write up for using the Waste paper basket in an 'improper way.' It is a vicious cycle where the disabled mobility impaired inmate is caught in the midde. I would not have the torn menusis tear of my left knee if not for the rape. So it is all tied together.

I do not believe I would have the loss of vision if not for the stress caused by me not getting medical care for my physical injuries and the constant harassment by CDOC guards for telling on rape and helping other inmates file on rape charges against correctional staff.

What I am trying to change is that rape victims and the disabled inmates that do not need constant medical care are placed at LVCF in unit 5 South side and allowed to participate in all programs and not be discriminated against. This sounds broad but until CDOC does change its policy in making the rape victim not be punished and her idenity known then Correctional officers will continue to rape inmates and physcially harm them to the point that they are disabled and impaired. Once a Correctional officer rapes and inmates they become a <u>serial rapist</u> because they never stop at one.

Please know that I tried to get help even from the courts, and I am to old and tired to fight CDOC any more. It hurts me to type and prepare these documents but I must or I will not get help. I have all sorts of medical documentation from CDOC doctors and Specialist stating I need to be able to use a computer due to hand disability-manual tasks. yet even the Director of CDOC , Mr. Zavaras refuse to acknowledge my need for a computer-yes, Montez allows for computers, see other filings Exhibit  9  Zavaras letter. The notation on sexual abuse/rape is interessting especailly since my friend, I assigned number 328 to her is willing to take a polygraph test, has sperm, I turned over sample to  investigations but she will not come forward till cDOC agrees not to punish her and to not send her to  DWCF. All she was asking for, no money (CDOC claims they only pay  $250,000 for rape case and the Denver Dectective-Valdez   claims DOC will pay nothing to compensate rape victims) she just does not want it known that she was raped. She is wiling  to wear a wire and do anyting else, just wants protection . I wrote out what she would like and sent it to Welton, see copy of contract she was willing to do and produce for protection  but CDOC policy of not dealing with inmates is firm. It does not matter that this dirty copy will rape more inmates , DOC does not care. I wrote this court, Judge Ebel  and asked for  help, the clerk of court will not even  acknowledge or give me a copy of the letter I sent to the judge exhibit  11 . At least  the Appeals court ms, Shoemaker had the decency to  apologize for not being able to help since nothing had been filed with the court, see exhibit  12 . Why must an inmate that has sperm and does not want to file a law suit have to be punished? The rapist has <u>threatened to harm her child and family</u> and he will because he  is a former cop and knows how to hurt and get information. CDOC thinks they can catch him but he is part of their inter-circle so he know where the cameras are and what is happening. Rape of inmates is never a secrets.

Ex 10 -

*I was told prison is a dangerous place so in case something happens to me you will know why, I feel safe at LVCF except for 1 guard, But I am sure more guards at DWCF hate me.*

When an inmate is raped/sexual misconduct by a correctional staff member she is listed as a RV5, all officers know this rating as well as inmates. I was told by an inmate that I was an RV5. Unreal. That means all former rape victims are in danger of further rapes because once an inmate has reported rape she is harassed and retaliated against by correctional staff that (she will never again report rape.) I was moved to LVCF from DWCF because in part I help report and produced the sperm when correctional officer Shackleton raped 5 inmtes, he did two at one time that was how they got the sperm to me. Pluss I was being harassed violated under AR 100-40 you fill in the blanks, i agreed not to file charges on what happened to me at DWCF if I would be transferred to LVCF and not harassed or lose my property that was on my property sheet. Needless to say I am being harassed and had medical items and personal proprert taken. unreal. But I do not feel I am strong enougth to fight a rape case with CDOC playing so many games. I was in the Supreme Court but did not get legal documents the Supreme Court mailed to me so I missed my deadline. The fact that they DWCF showed up in the Wardens Conference room months after my deadline was not enought to make me fight them. I do not want to have another stroke and lose what little eye sight I have. There are days when I am just hanging on by a threat, I can not get mental health appointments and when I do it rarely does any good because either they have no power, don't care or as I was told, "the inmate should come forward if she wants the rape to stop, she should be wiling to go to the hole." When I pointed out that when I was placed in the hole (segregation) I was raped everday because I could not get away from him. She said that probably would not happen here because they would be watching the officer. BS. Why should the victim get punished. She will eventually get physically hurt-disabled or injured when he damands more sex acts that she is not willing to perform-just look at Amanda Hall and torn rectum. CDOC medical is famous for not helping rape victims, look at me.

 A rape victim will never be safe at long as she is in a CDOC facility or if the receiving facility knows of the rape. It makes her a target. Do not think correctional staff do not rape old or disabled inmates, they do, they just know that they are safer doing this because those will be less likey to tell (or the ones that were formerly raped.)

 I need coverage under Montez or I have no hope of getting my disability needs met. One has only to look at what happend to me on trasportation for 4-15-10 where former CWCF officer Johnson refused to allow me my hand braces or refused to put me in belly chain (see my filing on this that would have enabled me not to suffer pain and swelling of hands and shoulders) This is the pefect example of dirty officers getting away with devient sexual behavior. When I was at CWCF officer Johnson would pick up sex nasty letters from inmate Dawn Amos in the law library. I told on him in 2001 but no one did anything to check out my story, I offered to take a polygraph test but it was ignored. Now 9 years later this officer gets to decide how I am trasported without my hand braces. I have been transported with my hand braces for the last 11 years. Even the month before, Johson was on a trasport trip where I was transported with my hand braces. Unreal, he sure got back at me for telling. I was in pain for days, was denied ice by medical so took my prepaid for ice cream bar and put it on my swollen hand. Medical refuses to give me ice of swollen hand, knee which is part of montez mobility and specialist as well as CDOC doctors have ordered it but NOT LVCF., I got magically well. Why is all this important because my injuries stem from the rape and I do not get accommodations or paljiative care which cost CDOC/LVCF anything to help with the disability.

What can you do and what am I asking, that all of my medical accommodations, be listed: ie: hand braces, knee braces, transported in wheel chair belly chains and large hand cuffs, allowed pallaitive care as recommended by specialist ordered, that CDOC follow specialist orders, allowed personal glasses and sunglasses as ordered by specialist since CDOC glasses or sunglasses are not adequate for my disability, allow vision disabiity since Ihave only part vision in right eye and no vision in left eye, allowed to take all programs offered to non - disabled inmates, not given fake, boggus write ups that others are allowed to do extra duty for, have someone I can go to for mental help in dealing with disability issues, make cDOC provide computer for my personal use as allowed under Montez REmedial Plan for vision and hand mobility issues.

At what point is rape disabled inmates accommodated ethically or morally by CDOC for the injuries caused by rape from Correctional Staff members.

Sorry to bring this to your attention and sorry it is so disjoined, I used to be bright but since my stroke I cannot seem to function as I should . I do not want to be retaliated against but rape by correctional staff must be stopped. CDOC has a "don't look, don't tell and punish the victim attitude." This must change. yes, I know some rape victims are willing participants but my friend is not one of them. She is afraid her child will be hurt and that if anyone finds out she will be treated as I am. No one deserves that type of retaliation and harassment.
Is part of the prison sentence to be raped by correctional staff and is part of the CDOC employment that they get the inmate of their choice to injure physically to the point of disability or rape at will? If so then this policy needs to stop. Defendants will say this is not true but it is. I am living proof of this. How long I will live is not certain, I can not stand the stress of always wondering what is next going to be taken from me. I am doing the best I can with my many disabilities. I am even denied my celebrex medication for my swollen joints, I got magically well on the bus trip here, had at DWCF.

Please know that LVCF is a good facility it only has a few bad apples and not near as many as DWCF. I love it here and want to stay here just need a few accommodations.

I do not want LVCF or any other facility to just arbitarily to be able to stop me from moving early just becasue they are angry at something I have file, why can't I get to programs, etc on time rather than late or having to dodge inmates on walk way when leaving early solves this problem with a pass .

Sincerely,

Jill Coit    2-29-10

Jill Coit #86530

I need a copy. Must meet deadline.

Exhibits 2, [illegible], 11 & 12 will Be mailed when LVCF low leBroy returns them to me. I had not planned on filing this But am so angry at ability to be on time taken from me, I decided to tell.

*Trainor*, 318 F.3d at 979 (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000)).

Here, the defendants' motion did not negate Ms. Coit's claim of deliberate indifference as found by the district court. The motion showed only that (1) Major Bohm took action to protect Ms. Coit, and (2) eventually Smith was caught and removed from the CWCF. Neither of these necessarily forecloses the possibility that defendants were deliberately indifferent to Ms. Coit's plight.[2]

While the defendants' motion did argue that "[n]o proof exists that any Defendant failed to act in response to a threat to Ms. Coit's safety," R., Doc. 386 at 20, the defendants must make more than a simple conclusory assertion that Ms. Coit does not have enough evidence to carry her burden of persuasion at trial, otherwise summary judgment "would be converted into a tool for harassment." *Windon Third Oil & Gas Drilling P'ship v. FDIC*, 805 F.2d 342, 345 n. 7 (10th Cir.1986) (quotation omitted). In short, the undisputed facts presented by defendants in their summary judgment motion did not show that they were entitled to judgment as a matter of law.

---

[2]  For example, Ms. Coit's alleges on appeal that she only worked as Major Bohm's clerk for a month until she was placed in segregation for thirty days for a disciplinary infraction. She alleges that Smith had access to her and continued to assault her while she was in segregation and while she worked in the prison library, where she was sent after segregation, and that the abuse continued for another year until the defendants were forced into action by the involvement of a prison guard. These allegations are not inconsistent with the uncontroverted facts relied upon by defendants' motion for summary judgment.

Consequently, we REVERSE the dismissal of Ms. Coit's claim that defendants Novak, Williams, Maiden and Zavaras were deliberately indifferent to her safety in regards to Smith's sexual assaults, and remand to the district court for further proceedings on this claim. We AFFIRM the remainder of the district court's judgment and orders of May 28, 2003, and December 13, 2004, for substantially the reasons set forth in those orders.

>                                 Entered for the Court
>
>                                 Monroe G. McKay
>                                 Circuit Judge

*[handwritten:]*
Case No
05-1045
(DC - No 98 F-2031 (oe))
D. Col

filed April 2006

# Judge: Sexual abuse of inmates "distressingly common" in state

By Felisa Cardona *The Denver Post*

A female inmate awarded $1.3 million because she was sexually assaulted by a prison guard was victimized during a period in which 197 reports of sexual misconduct were made against state prison staff.

Of the complaints logged between 2005 and 2007, 62 cases were substantiated and resulted in firings, Colorado Department of Corrections spokeswoman Katherine Sanguinetti said Thursday.

The DOC's inspector general turned over the complaints to local prosecutors.

One, the 2006 case involving former prison Sgt. Leshawn Terrell, was an example of "horrific violence" that moved U.S. Circuit Judge David Ebel to lambaste the way the department handles sexual assault by its employees in his decision to award $1.3 million to the inmate.

Ebel said the sexual abuse of inmates "remains distressingly common in Colorado prisons."

"Further, the court received evidence

PRISON » 4A

## PRISON: Case will be example in training of corrections staff

<< FROM 1A

that it is not uncommon for CDOC to have to dismiss prison staff at the Denver complex because of sexual misconduct," he wrote.

The prisoner said Terrell coerced her into performing sex acts for five months. When she finally refused him, she says, he raped her.

In addition to the money Terrell must pay the victim, the DOC settled its case with her with a $250,000 payment.

Corrections officials say they will use the lawsuit in employee training.

Employees who work with prisoners undergo extensive background checks, including an evaluation of their integrity and close relationships, Sanguinetti said. They also receive ongoing training.

"One of the things I guarantee will happen because of this case as we talk to our staff in our refresher trainings is that they can be liable personally if they step outside the lines of our policies and procedures," she said. "Quite frankly, we hope it does set an example for people in these positions, not just in Colorado but across the country."

As part of the settlement, the DOC installed cameras in the kitchen of the Denver Women's Correctional Facility, where the assaults occurred, said the woman's attorney, Mari Newman.

### Treated as "playthings"

"This is an extraordinarily important opinion which will have a major ripple effect on prisons Colorado and nationwide," Newman said. "This was a case in which a guard was essentially treating female inmates, including my client, as playthings for his own sexual gratification."

The Denver Post is withholding the prisoner's name because she is a victim of sexual assault. She is serving time on burglary, drug and escape charges and is eligible for parole in October, records show.

Terrell, 38, could not be reached for comment Thursday. He resigned from the Corrections Department in 2007 and did not respond to the lawsuit.

Court records say that on Mother's Day 2006, Terrell approached the inmate during her shift in the prison kitchen and told her that in exchange for sex, he would "take care of her."

After the first encounter, Terrell expected her to perform sex acts with him almost every shift, the documents say.

In October 2006, the woman refused him. Terrell got angry, raped the prisoner and left her bleeding on the floor of the bakery cooler, court records show.

"For nearly two years following the rape, (she) suffered pain and bleeding when she defecated," Ebel wrote in his decision, handed down Wednesday. "She repeatedly attempted to get help.... Rather than doing an examination, the (DOC) medical staff told (her) to use stool softeners, Milk of Magnesia, or hemorrhoid cream."

The inmate had surgery for her injuries after she filed her lawsuit.

### Victim didn't want to testify

Though the woman didn't initially report the rape when charges were brought against Terrell, in his ruling, Ebel also criticized Denver prosecutors.

"This court is appalled that despite CDOC's 'zero tolerance' and 'aggressive prosecution' policy — and despite the horrific violence of the Oct. 7, 2006, rape — the Denver District Attorney permitted Terrell to plead to a Class 1 misdemeanor offense that carried a 60-day term of imprisonment," Ebel wrote.

Denver DA's office spokeswoman Lynn Kimbrough said the victim accepted the plea agreement and did not want the case go to trial or to testify.

She said prosecutors are "100 percent" in support of a zero-tolerance policy on sexual misconduct, but they have to be able to prove the allegations beyond a reasonable doubt.

Proving the rape charge, which could have been a Class 4 felony sexual-assault charge, might have been difficult because of credibility issues with the victim, Kimbrough said.

Because of the guilty plea, Terrell is now under court supervision and registered as a sex offender.

"Having a guilty-plea agreement was a sure thing," Kimbrough said. "Going forward to trial in this case would not have been a sure thing."

*Felisa Cardona: 303-954-1219 or fcardona@denverpost.com*



## ACCOMMODATION RESOLUTION

Offender Name: COIT, JILL
DOC#: 86530

### You DO HAVE A MOBILITY DISABILITY

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Wheelchair
2. Raised Locker Box
3. Medically Necessary Shoes w/ lift
4. Backpack
5. Assignment to a designated facility
6. Assignment to an accessible cell
7. Access to accessible bathroom facilities to include a shower chair or bench and a toilet of appropriate height
8. Seating at an accessible table during meals
9. Lower Bunk
10. Lower Tier
11. Not required to use stairs and when housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator
12. May be seated in wheelchair and present ID for standing count.
13. Additional time to arrive at destinations within the facility
14. Additional time to complete activities of daily living
15. Requires staff assistance when cuffed and/or shackled. Refer to Section XXII of the Remedial Plan
16. Requires staff assistance during transport when embarking and disembarking from the vehicle
17. Reasonable accommodations will be provided during searches. Refer to Section XXIII of the Remedial Plan
18. Requires staff assistance during an emergency or evacuation
19. Transportation in an accessible vehicle. Refer to Section XXIV of the Remedial Plan.
20. Assistance with carrying and disposing of food tray contents by offenders assigned as dining room workers.

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

**You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or becomes inoperable for any reason.**

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

2-25-10

RE: Recap of meeting with Major Wade and inmate Jill Coit

Dear Major Wade,
    I just wanted to say thank you for meeting with me a few weeks ago and wanted to go over what was decided.

1. Thank you for calling medical and getting my scissors released. They returned them that day.

2. You ordered the stand for my trunk under Montez/ADA Accommodation, apparently someone forgot to order it. Received it 2-25-10 Thanks!

3. I am to continue getting a pass when I leave the unit especially for the first movement of the morning and afternoon when I need to go across the facility as Lt. Knox of security ordered me to do when he called me into his office. I have always obeyed this rule especially since it makes sence in light of the fact that I have to go backwards to get up some of the inclines to get to the program building.
    Unfortunately when I tried to get to Jewish services last Friday night, unit 2 was going to the dinning hall and inmates were on the walk way. One actually fell into my lap since I am below the normal sight range. It really brought home the reason he ordered me to get a pass ten minutes prior to movement when I must go across campus.

4. You gave me permission to put my 'legal box' in my duffel bag since inmates were getting into it and I am in a 5 man cell. I am to purchase a lock since LVCF does not furnish locks. I did so last canteen.
    I showed you my medical staffing sheet from CWCF that stated I needed help duffel bagging and you told me not to worry about duffel bagging that I would only need to duffel bag when I left the facility. I had the letter you wrote inmate Casperson telling her the black metal trunks were the same size as the duffel bag. I made the comment that I could just put all my property in the black box if I was ever questioned on weather I was duffel bag compliant.

5. I asked about getting permission to put my items in a container on my dresser due to my hand impairment. You told me to discuss that with Capt. Casias that he was in charge of housing. I sent a kite to him but have not gotten a response back.

    Most import I thank you for having Captain Yoe—that she had solved many of my handicapped/disability issues with ease. I really appreciate how kind and understanding she is in my attempts to be self-sufficient. I really like being housed at LVCF, it meets all my physical handiapped needs.
    Thanks again for meeting with me. Would you mind making a copy of this letter for me so I can have a copy for my records. I am enclosing a mis-witdrawal slip in case you need to charge me the qaurter for the copy. It is always a pleasure speaking with you, your a can do administrator that tackles problems with ease.

Sincerely Jill Coit

Jill Coit #86530

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

SAN CARLOS CORRECTIONAL FACILITY
1410 W. 13th Street, Pueblo, CO 81003
Phone: 719-544-4800    Fax: 719-583-5527

Bill Ritter, Jr.
Governor

LA VISTA CORRECTIONAL FACILITY
1401 W. 17th Street, Pueblo, CO 81003
Phone: 719-544-4800    Fax: 719-583-5909

Aristedes W. Zavaras
Executive Director

LARRY E. REID, WARDEN

---

Date: 1-21-10
To: Offender ███████████
Fr: Maj. L. Waide, Custody Control Manager
Re: Request to alter Property Storage requirements

LVCF requires that offenders store their property in a uniform and orderly manner. All canteen items are to be stored in the assigned foot locker. The foot locker will also be utilized for any property items that do not fit within the assigned clothing drawers.

While some offenders have appropriate life skills to maintain an orderly cell, others do not. In order to prepare offenders for reintegration, LVCF's policy teaches offenders cleanliness and organizational skills. Developing the habit of keeping a clean well organized environment will assist offenders after their release. In addition, LVCF's security is enhanced through the consistent storage of property that assists staff in identifying ownership of the property as well as identifying unauthorized items.

Offenders are not permitted to maintain more than three cubic feet in state and personal property accumulation in his/her cell. The Foot Locker is sized to hold 3 Cubic Feet. In many DOC facilities, the foot locker is the only device provided for property storage. All of your property must be packed into one duffle bag during a facility transfer. All canteen purchased items (hygiene and snack foods) are delivered in one canteen bag. There is nothing to support your assertion that storing canteen items in your foot locker will result in your food tasting like soap.

LVCF has the responsibility to effectively manage criminal offenders in controlled environments which are efficient, safe, humane, and appropriately secure, while also providing meaningful work and self-improvement opportunities to assist offenders with community re-entry through pro-social stabilization. Your request to alter LVCF's policy regarding the storage of property in offender cells is denied.



Exhibit 7

MAR - 5 2010

**DEPARTMENT OF CORRECTIONS**
**DISPOSITION OF CHARGE(S)**
**FACILITY LVCF**

DC FORM 150-01B
(Revised 02/15/06)

Informal Conference ☐   Formal Hearing ☒

| OFFENDER NAME: **COIT, JILL** | DOC NUMBER **86530** | CASE NO. **LV10-357** |
|---|---|---|

CURRENT HOUSING UNIT: **LU 5**     CURRENT CUSTODY LEVEL DESIGNATION: **MEDIUM**

Continuation of hearing: Yes ☐  No ☒     If yes, describe date/time continued from:
Disciplinary Officer name and position: **LT. S. HUGHBANKS**

**FINDINGS OF FACT:** (List **SPECIFIC** evidence relied upon to support finding(s) including the general substance of confidential information and/or evidence.)
Charge(s): **II-25**   Plea: Not Guilty ☒  Guilty ☐  Guilty w/ explanation ☐   Finding: Not Guilty ☐  Guilty ☒  Dismissed ☐
Charge(s): _____   Plea: Not Guilty ☐  Guilty ☐  Guilty w/ explanation ☐   Finding: Not Guilty ☐  Guilty ☐  Dismissed ☐

Offender Representative Requested: Yes ☐  No ☒     Offender Representative Allowed: Yes ☐  No ☐     Offender Representative Name: _____
Was Confidential Information Used: Yes ☐  No ☒     If yes, was information determined reliable by Hearing Officer: Yes ☐  No ☐  N/A ☐

Describe accused offender testimony: On February 2, 2010 Ms. Leyba searched me, I had my ADA paper work and my medical paperwork with me. She gave me a direct order not to have my legal documents out of cell, I don't think that is a reasonable order, I have to take that documentation to the law library and to attorney visits. On February 8, 2010 I went to eat, when I came back to my unit Ms. Clark gave me a legal document. I opened it and shook it out. I asked her for a pass and she said I did not need a pass because it was one minute to movement. I stuffed the letter into the back of my wheel chair and went to work. I had forgotten it was there when Ms. Leyba shook me down coming out of the library. I don't believe her order was reasonable on February 2, 2010. I did have the legal letter in the library. (When asked why she did not tell the officer she was on her way to work and that she would pick up the letter after work she said) I am an old fashion lady; I don't like to be late to work. When a staff member gives me something I take it at that time. Where is it written that you can't take a legal document to the library?

Describe staff testimony and evidence presented: **Written report by Sgt. Leyba.**

Identify all offender witnesses requested: **Ms. Wasko and C/O Clark.**

Briefly describe all called witness testimony, or justification for not allowing requested witnesses: **Request for Associate Warden Wasko to testify denied; her alleged testimony that Offender Coit will bring legal documents to her office was not deemed relevant to the case and carried no weight in the final decision. C/O Clark: Listed witness Clark not asked for in the hearing by Offender Coit and the fact that she gave the legal letter to Coit one minute before movement was not deemed relevant to the case and carried no weight in the final decision.**

Briefly describe **specific** evidence and testimony relied upon to reach finding: **1) Written report by Sgt. Leyba and testimony by Offender Coit indicating Offender Coit possessed a legal document of hers at her job site in the library. 2) Written report by Sgt. Leyba indicating she told Offender Coit not to have her legal documents outside of her assigned cell and the absence of any effort by Offender Coit to challenge the legality of the order prior to the hearing made it more probable that Offender Coit knowingly violated a reasonable order by staff.**

Briefly describe how offender behavior violated COPD: **Offender failed to follow a reasonable order by staff.**

Other comments (describe any offender rights waived, justification for non-allowance of representation, explanation of extended recess and any other pertinent information): **Administrative Regulation 600-1, Class I and Class II COPD Convictions require a Classification Review. This disposition serves as your 48 hour notice for the review. Offender waived her right to remain silent. Motion to dismiss the case on the grounds that the date of discovery would be the date of incident and would make the hearing outside of time frames in the COPD denied; time frames were met with the date of discovery being the date the initiating employee signed the Notice of Charge. Note: Offender brought into hearing a stack of legal paper work approximately 8 inches thick.**

------

**SUMMARY OF PENALTIES:**
Describe any aggravating or mitigating factors considered: **NONE**
Describe any stayed or probated sanctions: **5 DAYS PUNITIVE SEGREGATION, PROBATED 30 DAYS, FROM 03/02/10 TO 04/01/10. ANY COPD CONVICTION DURING THIS PERIOD WILL RESULT IN IMPOSITION OF THIS SANCTION.**
Description of Penalties Imposed: **NONE**
Date of sanction start and end; Explanation of Pre-Hearing segregation time credit: **NONE**
Explanation of monetary restitution imposed / Information relied upon to determine amount imposed: **NONE**

S/_____   _____
Chairperson: **LT. J. SCOLERI**       Date

| DATE OF HEARING | TIME OF HEARING | LOCATION OF HEARING |
|---|---|---|
| 03/02/10 | 09:07 AM | LVCF |

COMMITTEE MEMBERS PRESENT
**NONE**

WARDEN/DIRECTOR REVIEW: (Not required for informal)   ☒ AFFIRM    ☐ MODIFY    ☐ REVERSE
COMMENTS:
S/_____   _____
Administrative Head or Designee: **MAJOR K. THOMPSON**       Date

------

Offender Acknowledgment: I acknowledge receipt of a copy of this Disposition of Charge.

_____   _____   _____
Name                      Signature                 Date

## ACCOMMODATION RESOLUTION

You **DO HAVE A MOBILITY DISABILITY**

Offender Name: COIT, Jill
DOC#: 86530
Date of Resolution: June 2, 2008

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Cane
2. Knee Brace
3. Assignment to a designated facility
4. When you are housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator
5. Lower Bunk
6. Lower Tier
7. Special cuffing & shackling considerations
8. Staff assistance during an emergency or evacuation
9. Access to accessible bathroom facilities to include a shower chair
10. Not required to climb stairs
11. Medically necessary shoes w/ lift
12. Backpack
13. Special transport considerations
14. Assistance securing, carrying & disposing of food tray contents

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or damaged.

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

If you feel you require additional accommodations, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

You **DO NOT HAVE A VISION, HEARING, or UPPER EXTREMITY DISABILITY** or any other **MEDICAL CONDITION RISING TO THE LEVEL OF A DISABILITY**

Your **MENTAL HEALTH CONDITION DOES NOT RISE TO THE LEVEL OF A DISABILITY**

Page 1 of 2

---

Following a disability screening it has been determined that you do not have a disability pursuant to the Americans With Disabilities/Rehabilitation Acts (ADA), therefore, you are not entitled to accommodations.

If your condition worsens and you feel that it affects your ability to perform a major life activity, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

You have 30 days from the date this document is served upon you to submit a Step 1 ADA Grievance, to the office of the AIC, on any matter addressed in this resolution. You may not file future ADA grievances regarding your medical care. Please refer to A.R. 850-04 for details regarding the grievance process.
This accommodation resolution supersedes any other version, on any date, prior to the date on this document.

_____ 1/15/08    _____ 6-9-08
Chief Medical Officer  Date    AIC  Date

E-Mailed to Facility Litigation Coordinator for printing on yellow paper & distribution to the following Warden, Case Manager (Working File), 2 copies to HSA for placement in Medical & Mental Health File, Housing Supervisor, & to any other DOC or Contract employee with a need-to-know (work supervisor, teacher, etc...) &
Print 2 full size copies on yellow paper & serve on offender

Page 2 of 2

# STATE OF COLORADO

## COLORADO DEPARTMENT OF CORRECTIONS

Clinical Services
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone:   (719) 226-4541
Fax:     (719) 226-4565
Web:     www.doc.state.co.us

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

April 19, 2010

Jill Coit, #86530
LaVista Correctional Facility, Unit 5
P. O. Box 3
Pueblo, CO  81003

Dear Ms. Coit:

I have reviewed your letter dated March 16, 2010, in which you outline several concerns. According to the documentation you provided with your letter, the issues that you outline have been investigated by Clinical Services and it has already been determined that Clinical Services is operating within the confines of the Colorado Department of Corrections (CDOC) regulations and policies.

You have had disability evaluations, and it has already been determined that you do not have a vision disability according to the established disability criteria. You are not entitled to a computer and a computer will not be issued to you. You have also had a complete audiological evaluation to include a brain stem auditory evoked response which indicated that your hearing is intact. You do not qualify for a hearing disability and are not entitled to those provisions of the Montez remedial plan.

According to the current Administrative Regulation (AR) 700-05, you may keep one pair of personal eyeglasses that have clear lenses. You must surrender the prescription sunglasses that you have in your possession. AR 700-05 is clear that you may keep only one pair of personal glasses. You can obtain clip on sunglasses from Canteen to use with your personal glasses. It is important for you to understand that should you elect to keep your personal eyeglasses with clear lenses the department will not be liable for damage to those glasses. If they break, become damaged, or need repair, the department will only provide standard state issued glasses in replacement. AR 700-05 was recently revised to allow offenders to keep one pair of personal glasses.

Upon review, there is no evidence of retaliation. All staff members are required to enforce the administrative regulations and doing so does not constitute retaliation. It would appear that staff members are trying to bring your property into line with the current DOC regulations, and doing so does not constitute harassment or retaliation.

CDOC is serious in its attempts to address prison rape. If appropriate information is provided to the investigators, the case will be appropriately investigated.

Sincerely,

Aristedes W. Zavaras
Executive Director

Ex 9

cc:   Robert Cantwell, Director of Prisons
      Joan Shoemaker, Deputy Director of Prisons, Clinical Services

**DEPARTMENT OF CORRECTIONS**  DC 200-2C

**MISC. WITHDRAWAL TICKET**

DATE 2-28-10    AMOUNT .25

OFFENDER NO. D6530  FAC. LUCF  UNIT 5

OFFENDER NAME _(illegible signature)_

REASON FOR TRANSACTION Copy of Major W do Petit

I hereby authorize this amount to be deducted from my account.

Authorized by _(signature)_

Offender Signature _(signature)_

20003(R.5/01)

.25

*Contract for inmate #328-rose*

CONTRACT THAT IS LEGALLY BINDING ON COLORADO DEPARTMENT OF CORRECTION AND IS ENTERED INTO WITH DIRECTOR, A. ZAVARAS AND CID DIRECTOR, JAMES WELTON. IN EXCHANGE FOR INFORMATION REGARDING OFFICER MISCONDUCT/RAPE/ASSAULT BY LVCF CORRECTIONAL EMPLOYEE, INMATE WILL TELL ALL SHE KNOWS. ALL SHE ASKS IS FOR PROTECTION FOR NO ONE TO EVER KNOW OF THE RAPE/ASSAULT/SEXUAL MISCONDUCT.

This contract/agreement is to be in affect until inmate has completed her sentence, or is released on parole or released to community corrections program. In exchange for information regarding her being sexually assaulted/raped by correctional staff she will receive the following accommodations.

1. She will be transferred to out of state facility ( that houses minimum/medium female inmates) to state she last lived in or to Alaska (inmate will tell you the state she last lived in) which ever can accommodate her being transferred within 30- days of her signing this agreement. You will not tell anyone at CDOC or LVCF of her allegations. or new facility.

2. You will pay all transportation cost to fly her to said new facility along with all her property at no cost to her. She will not be duffeled bagged nor her property broken or destroyed. or Dog.

3. You will transport her with a black box not shackled or cuffed. You feed her at appropriate meal times, fast foods same as officers are eating. You will treat her with respect and not belittle her. Transportation officers will not know why she is being transferred except for transportation officer and CID investigator Mr. Collin Carson who will be the lead transportation officer, (this was added because inmate Coit knows this officer will be professional.)

4. You pay all related charges that transferring facility charges To house inmates, or charges for care or food or any other charge that the facility levys on inmate wages or money comming into facility. Inmate is not to be charged for TV or medical charges or any other charge that might be charged. IF such charges occure then inmate will send you her banking statement that shows inmate charges every two months. You will have 30 days to send said money/charges to inmate and then you will be charged 10% per day that money is not in inmate's account. IF you have not paid/reimbursed inmate within 60 days then penality goes to double amount owed each and every day. This is done so CDOC does not drag its feet in reimbursing inmate for charges transfering facility might levy on inmate. If no fees for housing or cost of living or working is charged then this paragraph does not apply. If any charge is given to inmate that is not listed here it is still covered, inmate has no idea what transferring prison will charge and does not feel she should be pentalized for not being housed in Colorado prison (LVCF) because CDOC/LVCF officer sexually raped/assaulted her. It was not her fault.

5. You will send empty inmate file and medial file to transferring facility, that way no 'error' can accidently be told to transfering facility regarding inmate being raped by officer. The files (both medical and inmate file) will be stored with MR. Welton at CID and be destroyed within two years. Transferring facility will be able to do medical intake file and have new file to work with. Only inmate can write director, Mr. Welton and get information from file. In the event inmate needs accommodation for job she desires, Mr. Welton will write letter of recommendation or do what ever is necessary so inmate can get job she desires. No cost to inmate for getting what ever needs done to get her the jobs.

Any correspondence on inmate given to new facility will be sent to her attorney (if she has one or so desires) so that at all times nothing of rape/assault or negative can influence new facility. NO LVCF or CDOC will have access to her file or medical records.

A severe penality will be assessed if any information reaches the media or her new facility. Penality will be $50,000. paid to her attorney immediately upon discovery of violation of this contract and any attorney fees incurred in dnforcing this contract.

(2)

Page two of contract between Zavaras, Welton and inmate willing to come forth and tell of sexual abuse/rape by correctional officer.

6. Inmate was raped/assaulted by LVCF correctional staff and if there is any physical damages -- done to her, she wants medical treatment to correct the problems whether medical condition were caused by rape or were excerbated by rape/assault. In the event she is not satisfied with prison medical attention/treatment she is allowed to request one visit per condition each year with specialist in that area and all recomendations by specialist will be honored immediately whether new medication, surgery or palliative care. Inmate does not know if any damage was done or if future damage will be assessed. In the event she needs mental health treatment for rape/assault/misconduct she will be allowed outside mental health care/treatment since she does not want anyone at transferring facility to know of rape/assault. This is not too big of a concession to make considering she is giving you officer that will obviously continue his sexual misconduct/rape/assault behavior and will will get other inmates. Maybe this clause is not necessary but at least it is in if needed.

7. You pay for 30 minutes of telephone to family members. Inmate will send you telephone bill and you will reimburse her for phone charges for 30 minutes. Why should she be penalized and pay long distance phone charges when she she could just call her family local rate. She should not be penalized for your officer's conduct.

8. You will once weekly send all of her mail to her, you will send all mail that has her name on it, it does not matter if her doc number is on the mail. This will be done until she is released, sent out to community or makes parole.

9. Upon release or parole or community you will pay for transportation home for her.

10. If you need her for trial, you will transport her no more than two days prior to her testifing and will return her no more than 2 days after she testifies or is not needed to testify. She will be allowed to pack a suitcase of at least 24 inches by 24 inches of items she wants to include hygeine, sweats, shorts, night ware, tennis shoes, make up, books, paper, pens, bible or other items that will fit. You will transport her in sweats and will provide street clothes for trial. at any time she is transferred to or from a facility she is to be transferred in sweats and put a black box on leg on, not, cuffs or shackles and is fed accordingly at meal time. She will not be packed out or lose her bed in facility. You will house her in motel for trail. Not put in county jail or facility segregation, etc when other inmates can see her,

11. If for any reason you decide to break or not honor this contract in its entirety, you will pay any and all attorney fees to her attorney for cost in enforing this contract at the normal daily rate of not less than $500 per hour even if she loses the suit. Damages will be accesses in the maximum range allowable under the law or $500,000 if you break confidentality and tell of rape/assault/misconduct by corectional officer to transfering facility, media, her family, violating officer or any CDOC employee or any person. The only reason inmate is agreeing to come forward is that she wants sexual acts to stop and wants total confidentality in this matter. You will not retaliate against inmate or Coit, any type errors in this agreement will be corrected and not used against inmate. This contract must be notarized for Zavaras and Weltons signatures. any attempt to get around this contract will bring maximum damages since it was not prepared by attorney- the spirit of the law will rule in inmates favor..

Zavaras _____        Welton. _____
notary

Inmate _____