① 

US DISTRICT COURT
901--19th Street
Denver, Co 90294

*21 page Motion
20 page exhibit
+ grievance 25 page*

JESSE MONTEZ, ET AL
VS
BILL OWENS, ET AL

CASE NUMBER 92 CV 870 (OES) and 96-N-343

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

Party Without Attorney
Jill Coit # 86530
LVCF unit 5
Claim number 03-129
1401 West 17th Street
Pueblo, Co 81003

MAY 06 2010

GREGORY C. LANGHAM
CLERK

------------------------------------------------------------

RESPONSE TO CIVIL ACTION NUMBER  92-cv-00870-JLK, JILL COIT'S MOTION
TO REQUEST CONSIDERATION UNDER MONTEZ CLASS ACTION REGARDING VISION
IMPAIRMENT
------------------------------------------------------------

Comes now plaintiff, Jill Coit pro se and does hereby wish to call
attention to the following fact since Coit has continued to be discrim—
inated against  and  her disabilities have gotten much worse since
her initial screening. With the CDOC not being in complaince with the
Stipulations and initial Montez Remedical Plan, Coit sumbits the
following:
1.  Claimant is a member of the Montez Class action under Motibility
impairment and her vision affects her  mobility claim. Per Final Order
of a special Master dated december 15, 2005 page five states, " The
Special  Master finds and concludes that Claimant is a disabled indiv-
idual who is a member of the class. Claimant has a permanent physical
mobility impairment that substantially limits the major life activities
of walking, working and perhaps performing manual tasks."
When Courts look at a disability claim they must consider not just
the disability inquestion but what other physical impairments/disabilies
affect how the claimant works and what jobs are they capable of doing,
how said impairments affect their daily activites of caring for them-
selves, how they can do programs and what leisure time activities they
can do.
This Court's job in this case is made much easier by looking at
the long term medical record diagnoses from Denver  Health Specialist
and other specialist the Colorado Department of Corrections sent Coit
to.  Inmates in CDOC are fortunate to have the opportunity to be seen
by Denver Health  Optomology Clinic and the Orthopedic Clinic which
are  known world wide for their specialist.
There is complete agreement between CDOC and claimant that Coit is
totally  blind in the left eye see exhibit 2 dated 8-03-07 stating
20/400 vision in left eye and that she has limited vision in the right
eye. If you take CDOC Dr. Martinez report dated 6-12-08 which states,
"eye filed        study -noted 35 to 40 percent vision field loss
right eye" (exhibit 9) you must come to the conclusion that Coit has
severe sight impairment since she is totally blind in the left eye and
has only partial vision in the good right eye. Defendants might try to
cloud the issues with the fact that the good right eye the part that she
does see out of has 20/40 vision but that does not take away from the
fact that she only has part vision in that eye not total vision .

page 2 vision

Having only partial sight in an eye influences how you see and what you see as well as how tired and extra limitation on how long you can use your eyes.

Actually if you look at the machine measured/computer field study exhibit 9 you will see that Coit has vision in 35 to 40 % of her eye, the black shaded area shows no sight and the top slightly shaded area shows limited sight  so in fact Coit is 65 to 60% blind in the right good eye. But she is willing to accept dr. MArtinez evaluation of only having 35 to 40% vision loss in her right good eye. That is severe enought to rate Montez and ADA vision impairment and accommodations. The fact that the Montez Remedial Plan already has in place and that CDOC accepted the Remedial Plain in 2003 there should  not be any arguement that Coit is qualified to the use of a computer as set forth on page 22, LVII Library Equipment, states, " Electronic equipment such as audio equipment, tape recorders, and computers will be available for use and when appropriate, to be checked out, in the general library and other areas where appropriate, for use by inmtes with disabilities."

It does not say what disabilities but one would assume vision and mobility disabilities (Coit has hand impairments that make writing and typing extremely difficult. There is less pressrue needed on a computer so typing is easier and CDOC has many programs with voice activated properties to assist inmates with mobility hand and vision impairments. The computer programs allow for enhanced and enlarged print so they are easy to read for vision impairments.)

Having vision impairment influences what jobs you can have and many CDOC doctors that have been taking care of Coit for years have written that she is to have permission to buy herself and use the enhanced computer screen (Exhibit 5, Dr. Fisher).Dr. Fisher wrote this because CDOC does not pay for inmates who are visually impaired to have personal computers. CDOC does not debate that it is necessary for inmates to maintain family ties and the most effective and  cheapest way to communicate is by letter.  Dr. Fisher also wrote on 10-29-08 exhibit 5 at bottom of page, "...She was allowed to remain with W/C due to the ongoing issues with hammer toes, new orthotics, ?tia;s ongoing, continued c/o pain in hip L, pain in knees , trougble with balance when standing, vision isues etc. This WC issues was discussed with j Harrelson who agrees."

Clearly Coit's mobility impairment has to do with not only her feet, hip and knees but also with her vision or rather lack of and the effects her vison  loss causes on her ability to be mobile.

Coit's hand mobility plays a major role in her mobility issues. There are years of medical records documenting her inability to use her right hand as non disabiled, with the right writs causing  pain when it  bends she is serverely limited in job placement and her ability to take care of hereself.Coit submits her grievance number D-LV09-10-128 as document-ation of her hand iampairment and how it affect her mobility issues. Coit has filed numerous documents regarding her hands impairment.

When  the court considers how most of Coit's disabilities and impair-ments came about (she was raped and severely injured by former CWCF guard when she did not comply with his sexually devient demands for sexual gratification) it is imperative that she be accommodated especially when it cost CDOC next to nothing to take care of her disability needs.

Please see attached record for evedens of 17 medical records dating from 3-8-01 to 2009 on Hand Mobility/impairment.

page 3

    IT is well documented in Coit's medical file prior to her being transferred to LVCF that she has deQuarians disease in her right hand-thumb joint which swells daily with use. Only Dr. Wermers of LVCF seems to have a problem with all of Coit's prior medical records and disability determination of doctors that have treated coit monthy for years. Dr.Wermers has  only seen Coit for ADA accommodations resoultions and has physically hurt coit to the point that she will go without medical care rather than  subject herself to his rought and painful treatment.

    Since Coit's medical conditions have been documented for years by CDOC doctors as well as Denver health Specialist and Specialist CDOC has sent Coit out to for care, there is not much use in making her go for more test. If this Court will just accept the Specialist diagnoses & opinions it  will satisfy Coit's medical concurns.

    Please see exhibits 1 thru 17 - dating from 3-8-01 through 2008. Coit could not have gotten well magically on the 100 mile Bus trip to LVCF from SWCF,

Coit also has a hearing problem when background Noise is present. Can not hear one head arousments on speech when in a large area without hearing aids,

Coit also needs her 2 hour work restriction due to eye strain and hand impairment. On days when Coit can work more than 2 hours she will depender on what she is doing. Coit can not use her wrist for twisting or turning.

    CDOC does not provide the type of glasses that enable coit to see out of with her vision impairments and problems. When CDOC refused to obey Denver Health Optometric Care Clinic, Coit had her outside Optometrist call Denver Health &  work with their eye specialist. Coit paid for and received the eye glasses she needed. They are tri focals which have the entire lower part devoted to her need to be able to read. CDOC Glasses don't fit her face and do not provide a wide area for her need to read. See exhibt AA for a drawing of coit's personal Glasses and the ones provided for by CDOC in 2010. You can readly see the difference and why Coit wants to continue purchasing her own glasses.

    CDOC allows certain inmates to continue purchasing their own personal glasses ie;Wanda Crawford who has almost a life sentence due to her age, she is also elderly like Coit is and has other disabilities like coit does. Coit is financially able to purchase her own glasses and is willing to do so,so that her vision is protected.

    Just yesterday Coit had to go to medical and the point that having not only shatter proof but glass that can stand high impact was brought home. The inmates were running sidewalk edgers and a clump of something either  rock or cement hit Coit in the chest. It left a red mark and coit was thankful she had on her personal glasses and that she was not hit in the eye. Coit as Denver health Optometry explained when she had her last TIA/ Stroke that her brain did not get the proper blood flow so she would never get her  sight back and that she must do all in her power  to protect what vision she had left. That is why Denver Health worked with coit outside optomotrist, Coit's vision is very important.

Exhibits are 1 through 26. Exhibit 26 is grievance on hand D&V - 9-10-128

Next this court needs to consider the fact that Denver Health documented that Coit needs to wear tinted sunglasses for her migrains and for the outside. Coit had pair of personal sunglass made for her vision impairment after she got written permission from the CDOC doctor that CDOC had do her evaluation for Disability of Montez and ADA in 2004. See exhibit 10 and 11. Which state, exhibit 10, "May wear own prescription sunglasses as needed for migraine headache." dr. Cabling (?).

Exhbit 11 which is Enter Medical infor track of 3-25-2004 states, " No lifting greater than 5 #; 2 hour work restriction; no stairs; handicapped cell; elevator use as needed; May wear own prescription sunglasses as needed for migraine headache"

So Coit's need for prescription sunglasses is well documented and in the range for qualifications under vision. Coit can not help it if CDOC decided to change the sunglasses rule. Coit is an elderly 65 year old woman, never been a gange member and as specialist at Denver Health Optomology stated that if you live in Colorado you should wear sunglasses every time you go outside. With Coit having the beginning of Cataracts it is very important that she wear sunglasses and since she needs prescription glasses it is imperative that she wear prescription sunglasses and not just some clip on sunglasses that do not cover her glass as was suggested no order by CDOC. Colorado is a very sunny state and there is no legitimate penologica reason to run the chance of damaging Coit's vision by forcing her to give up her percription sun glasses or by denying her to purchase new perscription sunglasses when she needs a new prescription especially when it cost cDOC nothing and it saves Coit's limited vision. Coit needs not just scratch proof as cDOC provides but "shatter proof" as she has and wishes to continue to purchase since she has vision in just one eye.

Coit personal glasses are frameless and shatterd proof and very expensive to get this type of glasses. They meet all of Coit vision needs because the prescription geared to her loss of sight and where she can see out of her right eye. This might sound silly to the court but when Coit tries to look down and read she needs a larger area than what CDOC glasses provide. If Coit only had a vision correction need CDOC glasses would be fine, but Coit has special needs created by her TIA's/Strokes. Coit alleges that CDOC has contributed to her TIA's/Strokes by causing undue and unnecessary stress. Stress by not having the proper accommodations that would enable her to write her family and the constant threats that she will be sent back to DWCF if she files greivaces. Denver health told coit to try to be stress free. That is a joke in prison especially if one is disabled.

LVCF is very good at meeting Coit's mobility needs and in fact it meets all of the physical requirments needed for board impairment. The sinks and toilets are the right height for someone short and the hall ways accommodate the wheel chair with ease so that other inmates can pass. Coit cell meets her needs, it has a dresser, a raised lock box, space for her wheel chair and a chair. But most important it has large windows that are at least 8 feet tall and very wide so that natural light comes in (Coit is in unit 5 cell 110 bed 5 which is a captains bed which totally meets her disability needs.) DWCF cells had small windows with very little natural sunlight. Coit needs windows that provide natural sunlight due to her vison impairment. Fluorescent lighting causes headaches and eye strain.

*[handwritten margin note: mobility wheel chair]*

*[handwritten note at bottom:]* If you need more proof read on But this should Be enough. pages 12 thrue 19 is how mostly Remelia Blos applies to Coit.

*[handwritten: Page 20 is Conclusion - Step P185]*
*[handwritten: this part of Coit has not vision impairment under Mtez]*

3. On January 9, 2006 Claimant was again rushed to Denver Health Optemetice for another TIA/Stroke which left her visually impaired.
      Impression/Recommendations:.. DDX. Visual field defect; optic Neuropathy (Spelling); TIA or central cause, etc"see exhibit _X_ 3

4. Then on 8-3-07 Coit was again rushed to Denver Health due to stroke that left her totally legally blind in the left eye with visually acuity of 20/400. Her right eye with visual field machine showing that she in her right good eye she does not have vision in the lower half of her eye and has no peripheral vision on either side. *[handwritten]*

5. To realize the severity fo her her vision lose one need only to place a blindfold over their eyes with a cut out of approximately 1/2 inch over the right upper half of the right eye. This is what Coit sees out of yet CDOC states she is not vision impaired or disabled.

6. Common sense would dictate that seeing with that limitation would have to severely limit ones ability to work, see and fuction in every day activites and programs.

7. One need only to look at CDOC's own doctors prior to her being transferred to La Vista Correctional Facility (LCV). The doctor (Dr. Wermers) for LVCF has magically made me well. All prior specialist and even CDOC doctors are void and she magically got well with the 150 mile bus trip.

8. Lets look at what Denven Women's Correctional Facility doctor, Dr Fisher wrote on 10-29-2008. And I quote ," 377.75-D/O VISL CORTXW/ CVORTICAL BLINDNESS-given notice to be able to buy herself and use the enhanced compter screen". *[handwritten]*
      Dr. Fisher was well aware of CDOC policy to not proved for the visual impaired and refusal to pay for any medical appliance therefore he wrote the order for me to buy myself the medical aids I would need in order to see and function in my job. Morally and ethically what does a CDOC doctor do when their oath tells them they must do what they feels is in best for their patient but CDOC refuses to pay for appliances needed. This puts the physician in a moral and ethical bind.
      Next Dr. Fisher wrote under asssssments,"99214-OFFICE/OUTPATIENT VILSITG, EST she was allowed to remain with W/C due to ongoing issues with the hammer toes, new orthotic, ?Tia's ongoing, continued c/o pain in hip L, pain in kees , trouble with balance when standing , vision issues etc. This WC issue was discussed with j. Harrelson who agrees."
      This is in agreement with Denver Health Optomerty Department and diagnosis with Tia's/Stroke disabilities. *[handwritten] Exhibit 5*

9. It is also interesting to note that LVCF Dr. Wermers discontinued almost all of Coit's medication: Celebrex that she had been onfor the last 10 years which was the only medication that she could take that would relieve pain and swelling in joints allowing her to function and sleep; Zomig for migraines which was documented by Denver health; Oyst-Cal-D for her bones she is 65 years old; The only thing he has allowed is ASA and Vagina cream. Unreal how a bus trip can make her well or not meet need medication.

*page 6*

10. Dr . Fisher who has treated Coit for years goes on to say on 10-29-2008 visit,'Inmate relates problem of pimple on fact x months. Also having feelings of lightheadedness and numbness in l leg and weakness and thinks is have ongoing ministrokes denies trouble speaking or vertigo. Says left leg and foot are weaker wants computer screen cause can't read popups wit right eye. Chart review nearly blind left eye and VF defect R lower field? re" diet,meds, footware.

11. Denver Health has repeadly ordered/recommended that coit be allowed to wear tinted glasses and when coit wrote specialist at Denver Health that their orders were not being followed they wrote her back with the following,
    "Please provide this patient with tintled glasses as ordered in physicians."Can't read name of doctor but CDOC disregared even this re-ordered instructions  (see above exhibit  from Denver Heatlh  7 )

12. According to CDOC Administrative Regualtion 700-05 Otometry Scope of Services, I. Policy It is the policy of the DOC to provide eye examinations (2-Co-4E-01) referrals, and corrective glasses to offenders."
A.  I was told that no where in the AR 700-05 does it say that the glasses provided by CDOC must fit or not fall off.
    See exhibit A A which is a drawing of state issued glasses CDOC tried to give Coit on  4-8-10 which show that the arm where the glasses meet the lense and then the ear is way to short to fit Coit.
    Notice Coit's personal glasses that fit her  and don't fall off and have the lense correction in the proper place.
    The state issued glasses have the reading section of the glasses in a narrow and incorrect placed,Coit's personal glasses have the reading  portion throught out the entire lower half of the glasses which is what she needs with her limited vision in her right eye.
B.  Under C. Services not provided there is a section that says, "except where medically indicated for specific eye conditions such as kerataconus, aphakia and prescription greater thtn 10 diopters in one or both eyes."
13.    Coit alleges that CDOC does not provide for elderly inmates needs or those who have had strokes or TIA's. As evidence she submits the following:
    Under B. Glasses 4. " An offender may not purchase persoanl glasses (e.g. prescriptive) from an outside source or have them sent in from the community. "
    What is an inmate to do when CDOC does not provide for the type glasses that they need to keep them safe and preserve what limited vision they have left?
14  Even as far back as 2004 after coit had the TIA/Stoke CWCF doctor wrote an order for Coit to be able to purchase personal sunglasses since CDOC refused to obey her specialist at Denver health that CDOC sent her to, why does CDOC send inmates to  specialist then refuse to obey the specialist orders. To send an inmate out to a specialist cost CDOC a minimum of $3,000. Yet they are under no obligation to obey to obey said specialist order or recommendations.

Attached please find a copy of the state issued glasses that LVCF/CDOC tried to give to me in April 2000. I have traced to the best of my ability both the state's glasses and my personal glasses. Both are the same prescription. However as you can see the fit and area for viewing are completely different.

There is not dispute between CDOC/LVCF and my-self regarding my lack of vision as documented by the Denver Health Optomology Department where DWCF (Denver Women's Correctional Facility ) sent me three times when I had strokes beginning in 2005 to 2007.  See exhbits 1 and 2- Right eye and Denver report dated _____ .

I am totally blind 20/400 in the left eye and only see out of the upper half of the right eyes as the vision field test proves -exhibit 2. Yet CDOC tells me I am not 'visually impaired/disabled' according to ADA and Montez. I ask you how can someone that is totally blind in one eye and sees out of only part of the other eye not be visually impaired/disabled? Common sence would dictate it does not  take a genius to figure this out.

According to how CDOC is reading the 'qualifications for visually impaired' the best eye vision must be below  20/40 in the best eye. That is fine but does that mean the entire eye? What is the judgment for vision that is only seen out of part of they eye.

I have been constantly threaten that LVCF medical is going to take way my personal glasses even  though the state glasses they want to provide to me to not fit and I can not see out of them like I can my personal glases. Lets look at the facts; Both glass (state and personal) are the same prescription.

(1. State  glasses-the arm (I do not know the proper term for it) does not fit. If you look at the tracing you will see that the state glasses arm where it meets the lense is not long enough and even if you could stretch it out it would not be long enough to go over my ear so that the glasses stayed  on and remained in place for me to see.

Inmates constantly complaint to no avail that state glasses do not fit and either fall off or are not aligned properly. This might be fine for someone who is geting out soon but I have life without parole.

(2.   Next lets consider the actual lense of the state glasses. The reading part which the doctor has so kindly  pointed out to me when I was forced to meet with him see doctors report (                    )
He made the reading part higher since I only have limited vision in my right eye so that reading would be easier. Now that was nice of him but the state glasses still don't work because 'reading part' which I have strred to reproduce is not big enough. My vision is further limited by floaters in my eye that move around so even though the test shows that I see out of the upper part depending on how many floaters I have and the position  of the floaters I might only have 60% of that vision field on any  given day.

Please know that I am thankful for any vision I have.When the specialist at Denver Health told me that when I had my last stroke he believes that the blood flow did not reach my brain therefore my vision was lost permanently I realzied how lucky I was. I could have been totally blind in both eyes rather than just one eye. He told me to reduce my stress level at all cost so that I  would not have another stroke. I have tried to do but when I am constantly harassed and threatened about removing my glasses it is hard not to get upset and depressed. Seeing is all I have left to make me independent and able to function without constant care and assist ance. Prison is a very dangerous place and my limited vision makes it more dangerous. That is why I love being at LVCF it meets my needs and I feel safer despite the harassment I receive from officers because I am disabled and they do not want disabled inmates at their facility.

Page 8

**Q.**A. La Vista Correctional Facility meets all of Coit's physical disbility needs as Coit filed in prior statement regarding Montez and ADA requirments.

LVCF meets her vision needs by allowing her to leave the unit when she has an appointment across the facility ten minutes prior to general movement. For example when 7:20 workers are called, Coit if she has a law library appointment (law library is across the facility) gets a pass for 7:10 am which allows her enought time to get there. When Coit tries to move at general movement she had had inmates run into her bump her and even fall into her lap. LVCF solved this problem by merely allowing Coit to move earily. This is also done at 12:20 movement. As simple and effective solution to a vision or wheel chair problem.

With Coit not having peripherial vision it is extremely important that she be allowed extra time to see where she is going and move freely with adequatly space to maneuver. The hall ways at DWCF are narrow in the living units (1 & 2) which are the only living units that have doors are managable with my hand and wheel chair and don't pose a severe dangerous risk of being closed upon and hurt. I have gotten caught several times in heavy metal door that could have done serious and life threating harm.

La Vista does not have this door problem and their living units all have very wide halls that accommodate my wheel chair without getting in another inmates way. These seem like small issues but they are not for the inmates with limited vision or vision impairments. LVCF is also smaller, less inmates and therefor safer.

B. The only problem I have with LVCF is their medical department mainly Dr. Wermer who seems to delight in causing me pain when he examines me. dr. Wermer also has openly stated he does not believe I need any accommodations or consideration that he would never ask for what I ask for. All I want is to be self sufficient for as long as possible. Dr. wermer has made that extremely difficult by denying me my Celebrex which allows me to function with limited swelling of my joints. I can not sleep due to pain in my hands and knees and hip.

IF I needed constant medical attention this place would not meet my medical needs but I don't. All of my medical problems and disabilities have been diagnosed years ago. I just need a few accommodations that will not cost CDOC Very much at all.

C. I hate to bring up employment because I love my job in the library but I am not able to do all that is requried of me. I do not want to get fired because this is the only job outside of going to school that I can handle. My bosses Ms. Lucas and Ms. Scott are wonderful and allow me to rest when I need a break. I can do the computer part (which is checking in inmates books & checking them out materials) Computer works is easy for me because it does not require me bending and walking. But my job in the library requires that I also shelf books and that causes my hands and left knee to swell and keep me awake at night.

I can not see the letters on the books that I need to shelve. I can see the numbers easier and shelf them with a degree of accuracy but when I try to shelf books with the letters I can not see well enough to be accurate and fear I will be fired If I tell.

I also have a shorter shift schedule and since I am telling I fear that the higher ups (like Shoemaker whom I do not get along with will insist I work more.) I had a 2 hour work restriction but Wermere took it away from me. I need this work restriction and my boss has me on it.

But I fear retaliation will come for me telling that CDOC does not accommodate my vision problems.

**15.** My personal glasses have the reading vision field over the entire lower half of my glasses. So it does not matter what part I look through it is my correct prescription rather than just one area as state glases are . This accommodates my 'special vision problem'.

**16.** The Optomologist or rather the head of Optomology at Denver Health spent a very long time explaning to me the importance of caring for and guarding what little vision I have left. He told me that if CDOC did not provide me with the glasses they recommended that I could have my optomologist call him and He would tell them what I needed. That was done and I got the glasses I needed by paying for them. Which is ok with me since CDOC makes up rules as they see fit and even their own Administrative Regulations allows for special conditions. CDOC says I do not meet 'their special conditions'. Which is malarky (B.S.)

   Denver Health ordered that I have tinted glasses. So I got prescription sun glasses (but CDOC says my prescrition sun glasses do not meet their requirments). They tell me to purchase non prescription sun glasses off canteen. They do not meet my prescription needs since they are not prescrition *and they are clip on & don't fit or cover entire lense*

**17.** I* am not asking that CDOC pay for prescription sun glasses even though the specialist said that anyone living in Colorado with the strong sunshine that Colorado gets should wear sun glasses when they go out of doors if they do not want eye damage.

   All I am asking is that I be allowed to purchase prescription sun glasses to protect my limited vision. I will pay for the glasses.

**18.** DOC Adminstrative regulations state that sun glasses may only be 20 percent darkness. yet they sell on canteen the sunglasses are totaly black. I get migrane headaches and must wear totally dark sunglasses which Ihave when i get an attack. This has been doucmented for years and the 'ADA doctor that saw me in 2004 documented that I was to be allowed to purchase and wear personal sun glasses. see exhibit *8*

   This is a reasonalbe accommodation and does not cost CDOC anything. Besides according to the Mission statement,

*Yet Now I am told I must turn over my prescruption sun glass. I am the only one - I counted over 35 inmates with prescription sun glasses. Yet only I must turn over mine.*

**19.** Having two pair of glasses makes logical common sense yet CDOC rules state inmates are allowed only one pair of glasses. It can take months to get a new pair or glasses or to get your glass fixed. I can not see todo my job or function without my glasses. Why are inmates with eye problems not allowed two pair of glasses.

   Exhibit _9_ inmates are allowed to purchase as many 'canteen' sold reading glasses as they want and they are not counted against their property. How is this not discriminatory against those of us who must wear glasses. I can see if CDOC wants to provide inmates with one pair but let inmates purchase the second pair from outside sources so they have a back up pair of glasses. *AR - 700 - 05 IV. B. 6.*

**20.** Sorry I have gotten off track. I was told by LVCF medical PA Judy Saiz the first month I got here that If I filed and grievances against medical or came to see medical for anything serious I would be sent back to DWCF. That is why I filed grievances only when the Accommodation Resolution was issued . I did not want retaliation or sent back to DWCF.

D. Because my vision is limited I get very tired when I have to strain and see. It has nothing to do with the strength of my glasses. When my glasses prescription is too strong I get a severe headache and dizzy and actually want to throw up. What I find difficult is not having things enlarged for me when I try to read. <u>Reading is the most difficult thing for me.</u> see exhibit 5

E.  When I have employment on the computer it is easy since I can enlarge the screen or have a screen enhancer.   There are school programs I would do well in for my job assignment but so far I have not been allowed back into class. I was scheduled to go to graphic design class in March but I got a write up for carrig my Accommodation Resolution (which is a legal  document). I guess I need to explain. When I first got my Accommodation Resolution in 2006 I signed a paper stating that it was a legal document and that I must carry it with me at all times.CDOC even provided me and other disabled offenders with a short version of the ADA Accommodations see exhibit  6 .

F.  I guess I need to go into history that Judge Pringle knew when he made my Final Order. I was raped by a CWCF guard (Sgt. Joseph Smith) this is documented in my medical file and the physical injuries he caused me. In fact most of my medical disabilities/limitateds were caused when he tried to get me to comply with his sexual demands and I refused. See exhibit  7   See medical report dated 3-4-08 which states, "pre existing conditon prior to incarceration: No s/P injury sexual assault while incar cerated."

14. I do not know to calculate what seeing out of only part of one eye would be but I can guess that if the whole eye would be 20/40 seeing out of only 45 % would  have to mean yhou <u>did not have 20/40</u>   vision since that would be for vision in the whole eye.

    I was told that If I had to go for a vision test I would lose my personal glasses which is the only way I have to see. LVCF Ms. Beeman was very clear if I have any vision  problems at all I lose my personal glasses. When I was told I had to give up my personal glasses and wear state glasses I wrote Mr. Zavaras, director of CDOC and appealed to him because only Jill Coit personal glasses were being taken away. That is no fair, there are at least 100 inmates  that have personal glasses that came into LVCF before me and at least 20 after me but medical  was going to take away just mine. Mr. Zavaras told them they could not do that but Ms. Beeman was very clear any trips to eye doctor and <u>I get my glasses taken.</u>

    So I can not get to outside eye doctor to tell the court what loss of 55% vision would  in an eye. actually I do not see out of 45 % of my right eye  since I have 'floaters' at any time so no way for me to measure.

*Seen Glasses issue.*

*5*. This refusal to obey specialist orders/and recommendations goes againt the CDOC Clinical Services Mission and Philosophy statement which reads,                                                                            5

1.   "It is the mission of the Colorado Department of Corrections' Clinical Services to deliver cost effective, quality health care, <u>comparable to that of the community and consistent with the ethical obligations of the medical</u>, dental, nursing and mental health professions." I ask this court how can denying Coit prescription sun glasses or personal glasses that fit serve any legitimate penological interest. It does not allow her <u>comparable eye care that is allowed in the community</u> and if she loses her vision totally it will cost the state extra to provide for her care. Does CDOC have an ethical obligation to provide eye care that the Denver Health  Optometric Department order?

C. This refusal to obey specialist orders/and recommendations goes agaisnt the CDOC Clinical Services Mission and Philosophy statement which reads,

Exhibit A 1.   "It is the mission of the Colorado Department of Corrections' Clinical Services to deliver cost effective, quality health care, comparable to that of the community and consistent with the ethical obligations of the medical, dental, nursing and mental health professions.'

I ask this court how can denying Coit prescription sun glasses or personal glasses  that fit serve any legitimate penological interest. It does not allow her comparable eye care that is allowed in the community and if she loses her vision totally it will cost the state extra to provide for her care. Does CDOC have an ethical obligation to provide eye care that the Denver Health  Optometric Department order?

2.  Mission Statment goes on to say, "WE believe that it is not only possibe , but imperative that all facets of health care meet community standards adn that the same  standards apply regardless of teh location of the correctional facility."

CDOC applies rules that suit their mood, for example inmate Wanda crawford is allowed to purchase personal glasses yet Coit is not. Crawford has been allowed to purchase her personal glasses for years since CDOC does not wish to pay for the type of glasses she needs.

Coit is just asking for this same accommodation. She has the financial means to purchase the glasses she needs that will allow her to see and not further deteriorate her vision impairment. Why should  she have to struggle to see with using the CDOC glasses that don't fit and aren't aligned so that she can see without great effort.

Vision is to important to mess with. The stress CDOC/LVCF is  putting Coit through is likely to cause her to have more strokes and other medical complication. It is not like she is going to be able to get out soon and get proper eye or medical care. Why would this court not take Specialist at Denver health over the local eye contractor that CDOC  hires to obey their standards and regulations. CDOC is on a limited budget and the excuse they use to not allow inmates to purchase personal glasses is they do not want inmates to have 'status' or gang  related activities.

Coit is 65 years old blind in one eye, in a wheel chair well past her beauty queen days and needs eye wear that accommodates her vision impirments/disabilities if she is to function and remain self caring. Never  belonged to a gang or gang affiliated.

11. According to AR  700-01 Responsibiity and Organization of Clinical Services , I. Policy, states,

B   "It is the policy of the Department  of Corrections  (DOC) to ensure  that offenders will be provided with health care services that maintain basic health and prevent other than normal physical and emotional deterioration."

Coit has been threatened by Clinical Services (LVCF)  Judgy Saiz when she entered LVCF that is Coit filed any grievances against  LVCF medical or needed any help  or helper she would be sent back to DWCF.

Coit has been to afraid to file file grievances except for Accommodations Resolutions becaues of fear of being sent back to DWCF. This fear causes her unnecessary stress and under Montez is illegal.

Coit does not know what this courts wants so she is just including all she can think of but is not an attorney so hopes this court will undersand if she does not use the proper words or makes important points. However the MRP is quite clear on the fact that all disabled inmates are allowed Equal Access page 13 states," Reasonable accommodations shall be made to ensure equal access for inmates with disabilities to t Courts, to legal representation, to health care, education , vocation and rehabilitation services and to all other programs, benefits and services at DOC.

Because of Coit vision problems and hand problems and not being able to read for any lenght of time she can not take part in the various programs offered by CDOC. However with a computer she could enlarge the reading material so that she does not get eye strain and headaches and would be able to do the homework (written that is required in all classes.) Coit is not supposed to write or type except for signing her name according to medical. She must type because no one can read her writing including herself if she tries to write more than a few lines due to her hand injury. Remember Judge Pringle mentioned in his Final Order of Special Master which states,"

Under XI Justification for Denial of Request for Reasonable Acco mmodation A. Legitimate Penological Interst, " A request for accommod ation may be denied when it would pose a seriousf risk to the safety or security of the institution, staff, or the public or when the request would adversely impact otehr legitimate penological interst, including deterring crime and maintaining inmate discipline. "

If CDOC objects to Coit using a computer please have them tell you why since a computer is not hooked up to anything what-so-ever. How can it be a security risk when other prisons in other states sell inmates computers and CDOC puts computers in cells for inmates to use to do educational GED classes and other programs.

Besides a computer requires that the material be printed out, there is no access to print directly and mail is inspected. Coit was allowed to purchase and use a special typewriter at CWCF in         but was not allowed to use or trasfer it to DWCF. She was allowed this accomm odation due to her hand impairment. She did not have as a severe vision problems at that time. However with technology changing and there being more tools availible for the sight impaired, computers are nothing new and are used for people  with even the slightest vision impairment.

Under B.  Undue Burden and fundamental Alteration Defense , " The DOC  need not take an action to provide accessiblilty to a service,program, or activity if it can prove that the action would impose an undue financial or administrative burden on the agency,  or would fundamentally alter the nature of the service , program, or activity.

It does not matter where Coit is housed she will still need a compter so she can be provided meaningful access to programs offered to non disabled-sight impaired inmates. She can not take for example 7 habits or other programs because they requre reading material and writing homework for evaluation and learning.

Coit asks that CDOC list what undue financial or administrative burden her having a computer would have on CDOC.

p.g 13

Since CDOC is not in compliance I am allowed to file under the MRP dated August 27,2003 page 29, third paragraph from the bottom, "However, if  a claim arrises during the compliance period, then the inamte may amend his/her claim to request compensation  for additional damages. CDOC was not in compliance when Coit was finally taken for her Strokes/TIA's to Denver Health Optomology department."

Coit's lack of vision substantially limits her ability to work, do daily living activities, read, perform manual task, walk, and take care of herself. Coit tries  to do the best she can with her other disabilies and limitations and just needs a little help which is offered through Montez Remedical Plan. This court does not need to do anything extra except make available what is already in place under this plan.

Due to Coit's lack of vision she runs into things, gets hurt and cannot afford to go to medical because they charge $3.00  per visit and if she declares it an emergency she is charged $10. Actually she can not be seen by medical whenshe falls because when the unit officer calls medical she is told to tell Coit to put in a kite. Since Coit has not broken any bones and only needs ice for the swollen injury which medical has  repeatedly refused to give her even though Coit has three specialist reports ordering she be given ice for swollen joints, it is useless for Coit to put in kite to medical. IT can take up to a week for medical to see her by that time the injury does not need ice.  When coit was taken on transport on 4-15-10 her hand was so swollen because medical took her hand brace away from her and put her in the black box with cuffs instead of the handicapped wheel chair cuffs and waist  chain security devices. Coit showed them her already swollen hand/thumb but was told tough that they were taking away her hand brace (velcro brace she has worn for the last 10 years due  to hand injury she received during sexual assult by correctional staff at CWCF. Coit has two torn rotator cuff shoulders per MRI and the black box causes severe pain and swelling.

LCF took coit to an outside medical just two months ago and she was allowed to wear her hand braces and was told at that time that LVCF should get appropriate wheel chair security chains. All facilities are suposed to transport wheel chair inmates with appropriate wheel chair chains.

Coit has more problems with knocking over items since her vision is limited and can not read normal size print for more than a few minutes. Due to her hand condition/impairment (de Quaraians Disease and arthritis due to above mention injury) Coit has severely limited hand use or did have this medical condition until she arrived at LVCF where Dr. Wermer now claims she has no disability. Medical reports for the last ten years and Speciatlist at Denver Health and outside consultants CDOC sent her to in the last year confirm her hand disability, so magical bus ride could not have cured her hand problem or vision disability/ impairment.

Under the Montez Remedical Plan page 22, XVII Library Equipment "Electronic equipment, such as audio equipment, tape records, and computers  will be available for use and when appropriate, to be checked out,in the general library and other areas where appropriate, for use by inmates with disabilities." So this court does not need to issue any orders or expect CDOC to do anything excpet obey when they agreed to do assist inmates with disabilities. NOtice it does not list which disabilities are allowed to use computers. It will not even cost CDOC any extra money or be a burden since they sell new computers they do not want at auction each month at Garfield.  They could use these computers for the disabled inmates. There is not a security risk because  the computers are not hooked up to DCIS or anything  ,they are just glorified typewritters that would allow inmates with vision and hand impairment/ disabilities to be able to read and take part in programs since most programs require homework and reading.

*See M R P that apply next Pages*

According to the Montez Remedial Plan- Colorado Department of Corrections signed August 27, 2003, Coit has standing due to the following: Coit is a member of the Montez Class Action under Mobility as determined by Judge Pringle. The following apply under Montez Remedial Plan :

1. Policy "... access to its programs and services consistent with legitimate penological interest."

III Definitions. A. Covered Disabilities-"The persons covered by this Plan are individuals with mobility,hearing, and vision impairments..."

B. Qualified Inmate-"Inmate with a permanent physical disability impairment which substantially limits his or her ability to perform a major life activity."
        The ability to see is a Major life activity. Coit's vision impairment is permanent since according to Denver Health Coit brain did not receive the proper blood flow thus causing her eyes to be damaged/loss of sight during her TIA'S/Strokes.
        Coit is totally blind in the left eye 20/400 and a 20/40 in the right eye but with only seeingout of approximately 60% of the right eye. Coit figured it was closer to seeing approximately 40% out of eye but will go with CDOC/DWCF sight of 60% of eye vision of right eye.

C. Permanent Disability/impairment
        A condition which is not expected to improve within six months.

Coit was taken to Denver Health Hospital in 2005, 2006 and 2007 for emergency TIA/STROKES and it was determined she had permanent vision loss. That is more than 6 months without sight or rather with sight impairment/disability.

Page 3 states," 3. The inmate health care or central file contains documentation of his or her disability."
        Coit's inmate medical file shows disability beginning in 2001 with severe headaches and vision problems. Coit just was not aware that she had been having mini Tia's/strokes for a long time. Did not have the proper terminology for the vision impairments.

        Page 3,"Inmates with Disabilities currently in DOC,...If an inmate claims to have a disability and clinical staff disagrees, the Chief Medical Officer or a licensed medical doctor who is designated by the Chief Medical Officer and who is qualified to treat the disability at issue will review the situation and make a determination.
        I do not think it should be debated that Denver Health Optometry has the most qualified doctors/specialist and their orders and evaluations should take precidence over CDOC physicians since Denver Health Optomologist are specialist in the area of vision.
        CDOC/LVCF dr. Wermer is not qualified to say that Coit is not vision or ADA qualified. The reports from Denver Health say otherwise & common sence would tell you that if a person is totally blind in one eye and sees out of only 60% of the other eye they are vision impaired no matter how hard they try, they are still limited in the time they can read, what they can see, how they can work and function daily. ADD in other disabilities such as mobility and hand, knee, back and shoulder limitations and this person would definately qualify for ADA and Montez placement/disability/impairments.

MRP page 2

V. Placement, page 4, second paragraph, "All inmates with mobility impairments will be placed in handicapped accessable cells unless the Chief Medical Officer determins that special placement is not required;" inmates with hearing and vision impairments will be housed in cells which accommodate their disability."

LVCF has placed Coit in a cell that is perfect for her disability (mobility and vision) impairment needs. It is located close to the dining hall, the library and schooling. Coit is placed in unit 5, cell 110 bed 5A, which is a captains bed with a 4 drawer dresser (she is allowed to place her medical appliances and aids in the two bottom drawers) her person items are places as non disabled inmates are allowed in the top two drawers. She also was issued a raised trunk stand for her personal propert which helps since bending is an issue. Coit was also given permission to have her legal box actually legal material in her duffel bag since she is in a five man cell so that other inmates do not have access. Other inmates are allowed to go to 2 man cells but because of Coit's medical applainces (wheel chair and trunk stand,etc) there is not enought space in a two man cell. Coit does not object to this placement because the current cell meets all her disability needs.

This cell is very important for her vision impairment/disability because it has three windows that get total sunlight all day long. Natural sunlight is what she needs because over head florescent lighting makes her head heart and the glare causes problems. This cell was picked out for her and meets all her current disability needs. It is at the end of the hall so less noise and there are no impingments to direct sun light. AT DWCF the handicapped cells got very little sun light since they were in the corners and were dark and next to day room which were very noisy. They did not meet her handicapped needs for vision impairment.

Unit 5 is perfect for her because the incline to get everywhere is mininal not like unit 7 at LVCF or unit 6 that is for the farm crew. Unit 5 is perfect for Coit's disability needs. The large tall windows are perfect for sight  impairment.

According to page 4 MRP third paragraph last three lines state: "and taking into accont any addition health care placement concerns as well as neceasary program and educational requirmens.

To me that means if you have additional health  problems/ impairments/disabilities, They will be considered.

A.1. Permanent Mobility Impairments
a) Permanent wheelchair: Inmates who use wheelchairs full or part time due to a permanent disbility.

It does not list what disabilities are needed to qualify you for this qualification. Coit has several limitations that require her to  use a wheelchair including her lack of  depth perception and no perpherifal vision, hammer toes which makes walking painful, torn menusis tear of the left knee, hip and back pain as well as not being able to walk up stairs without pain or long distances without falling.

LVCF has an portable elevator that allows her access to all down stairs programs (appliance repairs, beauty shop, etc, ) also beauty shop in den with no stairs. All programs are on the first floor at LVCF not like DWCF where most of the programs and library are on the second floor which would not be so bad if the elevator worked but it goes out all the  time and wheel chair inmates must climb down the steep stairs to get out of the building.

MRP page 3

Page 4, V,A, 1.

b) permanent Mobility Impairment (non-wheelchair) inmates who do not require a wheelchair but who have a permanent lower extrmeity mobixty impairment that substantially limits walking;Ie, an inmate who cannot walk 100 years on a level surface or climb a fligt of stairs wihout a pause. such impairments may require the use of a cane, prosthesis or walker or other assistive devices.


3. Permanent Vision  Impairment
Inamtes who are pemanent blind orß who have a vision impairment not correctable to central vision of 20/200 or better , even with corrective lenses.

Coit is totally blind in left eye, 20/400 and has limited in good  right  eye with a vision loss of between 40 and 60 percent depending upon which you choose to measure.  Coit can not see to read  normals size print for very long without getting a headached. HOWEVER with a computer enlarging the print she does not get a headache or have other problems reading. Coit has specail personal glasses that have the entire lower half  of the glasses the proper perscription so that no  matter what part of her eye looks down it can see propertly
The glasses issued by CDOC have limited are  for: the presecrip tion so very difficult  to see through . Also glasses do not fit face and the shank does not fit behind the ear so she must tilt the glasses up against her eye to even see out of them. see diagram of glasses exhibit_
How much of the eye has vision should play an important role in assessing vision and ability to see. Coit can not tell depth and falls if on an uneven surface or if something is on floor or in walk way.
She runs into things because she does not see it due to no vision in left eye. Actually coit does very well considering her lack of area of sight.She gets  severe headaches when she is tired and goes to bed earily as well as takes a nap over count during the day so she canrest her eyes.
coit's  lack of  vision limits all areas of her life and daily activities not just reading . Eating, doing chores such as making bed, cleaning cell,  getting dressed (constantly told to put on shirt properly she gets it on backwards because label is on left side and she does not have sight in left eye.) She gets neck straign from constantly moving her head to see things and function. Working opportunities are very limited due to sight and to being able to use hands  as non disabled persons. Coit has deQuarians disease due to being physically injured when she  refused to obey sexual demands of former CWCF guard. Using her thumb on right hand is extremely painful and swells daily. Bending either wrist causes pain and limits ability to hold, grasp, move and do everyday activities.
Coit is regarded as vision impaired to those who know her and very disabled and limited in what she can do physically. She continues to help inmates by using her brain as much as possible and is well thought of.
coit needs a computer to write letters and communicate effectively. She has hand and vision disability and would be able to learn and take part in  programs and groups if she had access to a computer which most clases and programs require that inmates do writing and home work.

pg 17

MRP   page 4

There are so many programs available for the sight impaired that require a computer and the Montez Remedical Plan allows for inmates to have computers. There is a group that helps inmates who are sight impaired or have other disabilities that limit an inmates abilities to perform or learn . They are willing to provide coit with a computer which would cost CDOC nothing and  would allow Coit to function as non disabled inmates are allowed and to take learning courses that would strength her brain and abilities.

Page 7  VII, LVCF meets all structural compliances and physical plant requriements for the disabled and for Coit's disabilities they are excellent.

Page 11 X. Reasonable Accommodations
A. General last line of first paragraph. "... or modifying work or program schedules." LVCF does this for Coit, she does not have to work as many shifts in the library due to her disbities. Coit is allowed rest when she gets tired or can't see.Her bosses Ms. Lucas and Ms. Scott do all they can do to accommodate her disabilities. They allow her to work behind the desk as much as possible and  try  give her shelfing that consist of numbers which are easier to shelf because they are more visible. They allow her to take breaks when she must bend down to get to the lower shelfs  when shelfing and always allow her when her knees are swollen to take it easy. Coit does as much as she can. Her knees swell daily and hand hurt but this is the only job she can do other than be in program for learning. Despite mental health report that states she should be allowed to be in programs and learning she has not been allowed to attend so far.
She was supposed to be put in Graphic Design class but when  she got a write up for disobeying a direct order for carrying her  ACCOMMODATION RESOLUTION she was not allowed to enter the program. See  report filed on this regarding retaliation for reporting sexual abuse/ rape by correctional guard.

B. Effective Communication
1. General, " Reasonable accommodation shall be provided to inmates with disabilities to ensure effective communication with staff, and where applicable, other inmates and the public. Auxiliary aids, which are reasonable, effective, and appropriate to the needs of the inmate shall be provided when simple written or oral communication is not effective and will not be conunted as personal property. Such aids may include but are not limited to, aids (inmates or staff) qualified interpreters, readers, sound amplification devices, hearing aids, captioned televisoiin/video text displays, telecommunication devices for the Deaf (TDD), audio taped texts, tape players/recorders, braille materials, large print materials, and signage .

Technology is so advanced today that a computer is nothing more that a glorified typewriter that can have every single stroke recorded. It is not a scurity threat since it must be printed out and all mail is inspected and read for content. There is no outside line or any way to hook up to CDOC access web sites.

MRP page 13 goes on to state under B, last 3 lines, "Even if the requested action would impose an undue burden or fundamentally alter a service, program or activity, the DOC MUST take any other action that would not result in an undue burden or fundamental alteration but would still ensue that disabled inmates receive the benefits of the service, program or activity."

The fact that Coit has located a prison organization or outside source that will pay for inmates that have vision or hand mobility disabilities/impairments to have a computer at no cost to CDOC is very important. IF CDOC refuses to use the computers it sells at auction to the public at a great financial loss to CDOC from the Garfield location then let outside sources provide the needed computer. Why should Coit be denied the full benefits, services and programs that non disabled inmates have access to just because she is disabled/impaired.

Coit's loss of vision is permanent and her condition will be excerbbated if she must continue to strain her eyes by attempting to read without the accommodation of having the material enlarged. Her glasses can only enlarge a certain amount for reading and by using a computer she can enlarge the reading and writing materials so that it does not cause eye strain and further or future damages. The fact that Coit has a hand mobility/disabilit/limitation that prevents from using a normal typewriter without pain and having her hand swell makes it even more important that she be allowed to have a computer. CDOC sells typewriters so allowing Coit a computer would not be security risk and would enable her to take part in all DOC offered classes and programs.

Coit has had a magnifying sheet which causes hand strain, swelling and pain due to her de Quarian disease and arthritis. She has had this magnifying sheet for the last 5 years but due to her deteriorating arthritis it is almost impossible for her to use this aid.

Coit also has a three sided ruler that allows her to line up words on a page, it is 3 sided so she can hold or move the ruler due to her hand condition. So CDOC is well aware of her hand and vision prolbems so they can not say they did not know of them or that they are new. Coit has had the 3 sided rule since 1999. She also has a pair of scissors that she uses to cut her food in her cell with since her hand problems prevents her from pealing an orange or preparing food without pain in her hand. I pray that I will not be retaliated against and have these very useful aids taken away from me. They are on my property sheet and are used and do not cost CDOC anything. Coit needs to remind this court that her medical records have a habit of disappearing from her medical file. NOT here at LVCF but has happened in the past.

Page 17 under XV Training A. General," During the compliance period of this plan...but is not limited to, disability cultural issues, special needs, assistive devices.... the unique vulnerability of inmates with disabilities to crime from other inmates and staff. "

LVCF needs training in this area since Coit is the only wheel chair inmate currently at LVCF she has had to endure comments such as ,"your not special, why do you need that, and outright refusal to assist."

LVCF has due to Captain Yoe and Major Waide of Security tried to assist Coit and has allowed her to take the shortest route back to her living unit (5) instead of going all the way around the Den/library building. LVCF is perfect for Coit's disabilities/impairments due to physical structure of the building and her special needs. They just need to train some of their staff on how to treat disabled inmates. Most of LVCF staff is very professional and assist in many ways that I appreciate it is only the 5% that makes it necessary to mention this. Remember disabled inmates are subject to retaliation when they ask for assistance.

Page 19 MRP D. Training Regarding Vision Impairment Issue states that , "During the complaince period of this plan,(which we know that DOC is still in in March 2010 due to newest stipulation) ...regarding the unique issues related to inmates with vision impairment ... training available for inmates who have newly developed  vision impairments, and available community resources for individuals with vision  impairments. "

I have not received any training and in fact must fight to get my vision impairment not only recognized but even acknowledge. I have filed numerous grievances on ADA accommodations not being given or allowed yet have gotten no help. I do not want to file a law suit, I cannot stand the strain which caused me to have strokes/TIA's in the first so I can not take the strain and retaliationthat comes from filing grievances or law suit. I was even told at DWCF that I could not have books on tape because DOC does not recognize my vision  impairment.

IF you look at the law on ADA vision impairment  just the loss of total vision in left eye and having only part vision in right eye would qualify me for being vision impaired. common sence would tell you that that much loss of sight would naturally affect how you do things, how long you could do things like reading or working before you got headaches, eye strain, or just wore out from the strain.  Being 65 does not help the situation but I can do nothing about my age or other  medical conditions that play a part in my being disabled.

Continuing through the MRP page 22, XVII Library equipment, there is no  doubt that computers are to be provided when appropriate. See where it was previously quoted. LVCF is very good about getting inter-library loan program books when requested. I work for the LVCF library and my bosses are fantastic at helping me  when my vision or knees prevent me from doing all my job requirments. They allow me to rest and sit down when I ask and never make me feel inferior or bad. I am so lucky to have them. Ican do some of the work but bending shelving books or reading the authors to shelf is painful and makes my eyes tired. I can do the computer work because it only involves scanning and sometimes typing in the DOC  number, so I can do this.

Page 22 XVIII Insitutional Procedures B. Notices,  Anouncements, & Alarms  B.Written and/or Recorded Materials.  Third line down, "Accommodations such as large print, computers assisted devices, audio tapes and Braille will be made available on a case by case basis."

I filed a grievance actually three of them and was told that no inmate in CDO would ever have access to a computer. see grievance number  #10-LV 09/10 - 131

" ... The Morley Remedial Plan does not allow for offenders to receive a computer for any disability". By Joan Shoemaker #2695 - 2-18-10 - Deputy Director of Prisons, clinical Services

A direct violation of Morley Remedial Plan page 22 XVII Library Services

Continue from page 20 MRP C. , last pearagraph fifth line down, "No inmate shall be deprived of a health care appliance that was in the inmates possession upon entry into CDOC custey or was properly obtained whilein DOC custody, unless for documented safety or security reasons or the Chief Medical Officer determned that the appliance is no longer medically necessary or appropriate. If the health care appliance is taken away for safety or security reasons, the Chief Medical Officer or a licensed physician designated by the Chief Medical Officer who is qualified to treat the disability in question shall be consulted immediately to determine appropriate action to accommodate the inmate's needs."

According to this rule, Coit should not have had her extra matress nor her egg shell matress taken from her. She obtained the egg shell matress from a DOC physician, it was ordered and paid for by DOC funds and was properly prescribed due to back, hip and spine condition that has been documented for the last 10 years.

CDOC has the policy that if the medical department at the facility they are housed at then the get the recommeded medcial appliance/aids. They (CDOC) even has a form see exhibit ____ Titled "Colorado Department of Corrections Durable Medical Equipment (DME) Contract.

However since LVCF Dr. Weremer has declared Coit magically curred from the bus ride down from DWCF to LVCF she was told that she can not have her egg crate matress (see where it was referenced in Final Order of Special Master page 3 , number 9 fifth line from bottom it reads, "with a dresser, a low table, an adjustable roller chair, egg shell matress and a night stand."

LVCF provides Coit with a dresser in her cell now. See exhbit ____ permit for egg crate matrees and pages 3,4 and 5.

When plaintiff filed multi grievance against Captain Arnold at DWCF she was given a boggus write up (COPD violation) and sent to segregtion for 5 days. During her time in Segregation her property was packed out by correctional staff and six of her appliances were broken, lost or destroyed. Plaintiff filed grievance and defendants admitted they "ACCIDENTLY BROKE her appliances" yea, right they refused to fix or replace some of the appliances --mainly the typewriter. Which she needs so she can have access to court due to hand disability.

Defendants also threw way her egg crate matress and cervical and wedge pillows -claiming they were not allowed. When in fact other non disabled inmates got them out of the trash and kept them.

Please remember that Coit had on her board as required her posted permits as well as they were liste on her property. Defendants had no right to destroy medially issued property just because they did not like Coit. This goes on all the time.

There was no legitimate penological reason to destroy and take Coits approved, purchased aids and appliaces. Coit has been fighting this battle for years and is probably why she has had numerous strokes/ TIA's and lost her vision and use of part of her body. DOC normally does not claim coit got magically well but will take away authorize medical appliances as soon as she notifies this court of violations. I wonder what will be taken away now since I have filed numerous pages vioaltions.

o

f

*Conclusion*

Wherefore with the medical documentation from Denver Health Optomology Department and Orthopedic Department on hand disability/impairment, Claimant believes that this Court will find that she is vision disabled under Montez and ADA and that her vision impairment limits her mobility and ability to substantially do the major life activites of walking, working and performing manual tasks. That Claimant qualifies under the Montez Remedial Plan and is entitled to all benefits under this plan including use of Computer, time to get  to programs with kite to go ahead of movement so that she has time to get a space for her wheel chair and is not hampered by inmate movement getting in way of wheel chair; that she be allowed to remain in her handicapped cell in unit 5 which is close to work and dining hall (cell 110 bed 5) which has adequate windows and sunglight for vision impairment and necessary furniture to accommodate her disability needs (dresser and chair and desk). That she not be penalized because she can not live in the incentive unit since it is to far away that she be given any accommodations that are not a security risk and that she be allowed to purshase her own glasses and sunglasses at no cost to CDOC when her prescription needs changing. That she be listed as Visually disabled/impaired permentally on her Accommodation Resolution. Coit is not asking for anything CDOC already allows or was not part of the Montez Remedial Plan she just needs it outlined clearly because then CDOC can not just changethe rules arbitrarily or retaliate. The Montez Remedial Plan is very limited in what it can do but Computers is clearly an accommodation resulution option.

Respectfully,

Jill Coit # 86530
1401 West 17 th street
Pueblo,Co 81003

5-2-10

May 2, 2010



SINGLE FIELD ANALYSIS

86112174
03/09/06   HSC: EYE
COIT, JILL
2090663   F   06/11/1944
GO8
1:   2:   RX:   IP:
PCP:
PHN: (303)307-2307   MRLO: DGOP

NAME: COIT, JILL

CENTRAL 24-2 THRESHOLD TEST

EYE: RIGHT

DOB: 06-11-1944

FIXATION MONITOR: GAZE/BLINDSPOT
FIXATION TARGET: CENTRAL
FIXATION LOSSES: 0/18
FALSE POS ERRORS: 1 %
FALSE NEG ERRORS: 15 %
TEST DURATION: 09:02

FOVEA: OFF

STIMULUS: III, WHITE
BACKGROUND: 31.5 ASB
STRATEGY: SITA-STANDARD

PUPIL DIAMETER: 4.5 MM
VISUAL ACUITY:
RX:   DS   DC X

DATE: 03-09-2006
TIME: 4:38 PM
AGE: 61

**part blind out of right eye**

TOTAL DEVIATION

PATTERN DEVIATION

GHT
OUTSIDE NORMAL LIMITS

MD   -10.95 DB   P < 0.5%
PSD   10.88 DB   P < 0.5%

:: < 5%
⊡ < 2%
▨ < 1%
■ < 0.5%

DENVER HEALTH MEDICAL CENTER
DEPARTMENT OF OPHTHALMOLOGY- EYE CLINIC
700 DELAWARE ST
DENVER, CO 80204

© 1994-2000 HUMPHREY SYSTEMS
HFA II 750-4618-12.5/12.5

OPA in Doc Wanting Area   91.20

**DENVER HEALTH**

## OUTPATIENT ENCOUNTER

### EYE CLINIC

101418655
08/03/07   HSC: EYG
COIT, JILL
2098863        F   06/11/1944
G08                      DVR: Y
1:   2:   RX:   IP:
PCP:
PHN: (719) 583-5840

Appt: 09.15   Feb
~~in DoC COC~~

☐ New patient        ☐ Established patient

Date: 8 / 13 / 07
MM   DD   YY

PRIMARY LANGUAGE: ☒ English  ☐ Spanish  ☐ Other _____  **AGE:** 65  OCCUPATION _____

DO YOU WISH TO HAVE AN INTERPRETER? ☐ Yes  ☐ No  ☐ N/A

INTERPRETER: _____ ☐ AT&T LANGUAGE LINE USED
(name)

☐ PATIENT REQUESTS TO HAVE SIGNIFICANT OTHER/FAMILY MEMBER OR FRIEND INTERPRET.

**HISTORY OF PRESENT ILLNESS/CHIEF COMPLAINT:** _____ (Initial)

H/o CVA - 12/05 c̄ w/o INF Vis Loss
A Jon                                        (B)
recent ↓ vision (L) 5/07 c̄ (L) surg
NF  I              weakness

**PAST MEDICAL HISTORY:** _____

**PAST OCULAR HISTORY:** Head injury 1983  W/o Strates / W/o Lupus
Visual field defect

Are you having pain? ☐ Yes  ☐ No (1-10 or Wong scale)

**ALLERGIES:** PCN   **MEDICATIONS (HERBS/SUPPLEMENTS)**
Morphine, Demerol   ASA, Amitriptylin
Darvicet, percocet  All 4   Chlor-trimeton, cipro
Premarin Vag
Technician Signature (if applicable): _____   fosamax
PAST MEDICAL/FAMILY/SOCIAL/REVIEW OF SYSTEMS (CLINIC COPY) REVIEWED  Zolmitriptan
**ATTENDING INITIALS:** _____

EXAMINATION (MD): _____
DISPOSITION: ORIENTED / APPROPRIATE AFFECT

**VISUAL ACUITY:**                  Auto-refracted
                                    Right EYE: -.75 +1.50 x 005
sc  Right EYE: 20/40+3  PH: _____  Left EYE: -.75 +1.75 x 165
                                    Right EYE: -.75 +1.25 x 006
cc  Left EYE: 400  PH: _____       Wearing glasses
                                    Left EYE: -1.25 +1.50 x 168
                                    +2.00

**REFRACTION:**
**MANIFEST**                        CYCLOPLEGIC:

Right EYE: -.75 +1.50 x 005 / 40+   Right EYE: _____   Evaluated
                            (L) 00
Left EYE: -.75 +1.75 x 165 → NI     Left EYE: _____
         +2.25  20/30+ ⟲@ (B)

**INTRAOCULAR PRESSURE:**

Right EYE: 14 mmHg   Left EYE: 14 mmHg   Time: 10:23      noted
                                                          08/06/08 (A)
(NCT)  Tonopen (at 5%)   Applanation

F00-008 (4/06) Page 1 of 4

[007/024]

## DENVER HEALTH

# OUTPATIENT ENCOUNTER
# EYE CLINIC

(2)

8401406
01/09/06  HSC: EYE
COIT JILL
2098863      F   06/11/1944
G08                DVR: Y
1:    2:   RX:   IP:
PCP:
PHN: (303)307-2307    MRLO: DGOP

LOYL          3688
(436)-
3554

**PERFORMED PROCEDURES:**
By: _____ Attending presence/participation or performance. _____
Initials

ANA l: 160 i→PSt
ESR (1.0)

**DIAGNOSTIC TESTS AND REPORTS:**

CBC wl.
INR 0.85
Chem 7 wl
UA 2 + heme 1 not clear

**DATA REVIEWED:**

**IMPRESSION/RECOMMENDATIONS:**

① Vision loss left eye s̄ evident anatomic
cause on ocular exam.
DDx:  — visual field defect.
      — optic neuropathy.
      — TIA or central cause
      — conversion or malingering or factitious dis
Rec: ① visual field (24-2) & Flu one 1 month
     ② Neurology consultation.
     ③ OK to wear dark glasses when outside for light
     ④ mild 

1147

# DENVER HEALTH MEDICAL CENTER
## OUTPATIENT ENCOUNTER
## EYE CLINIC – FOLLOW UP EXAM

Name,    #, Pat#, DOB

```
69045383
01/20/04   HSC: EYE
COIT, JILL
2 09 88 63    F   06/11/1944
G08                DVR: Y
1:   2:    RX:    IP:
PCP:
PHN: (303)307-2307    MRLO: DGOP
```

## SLIT LAMP (OR PENLIGHT) EXAMINATION:
(Indicate abnormalities)

| | |
|---|---|
| Eyelids/Lashes | ☑ normal OU |
| Conjunctiva | ☑ clear bulbar and palpebral OU |
| Cornea | ☑ clear epithelium, stroma, endothelium OU |
| Anterior Chamber | ☑ deep & quiet OU |
| Iris | ☑ normal OU |
| Lens | ☑ clear OU |

OD

OS

## DILATED EXAMINATION: (Agent: Ⓜ1  M½  C1  C½  CM  Ⓝ2.5)
Posterior Segments (retina and vessels)    Normal ☐

Optic Nerve Heads

OD        OS

.2        cup/disc
          .2

m/v/d/p   NL        Ø RD or tear

1/23/04 MAR

## DATA REVIEWED:

## IMPRESSION / RECOMMENDATIONS:    ① Ocular migraines
                                    cont migraine meds
                                    RTC as needed

## ATTENDING NOTE:
Review of Housestaff Note:
History:          - pt needs to be followed by primary
Exam:               physician for control of migraines
Assessment & Plan:  ✗ - tinted glasses
Patient Education:  - during episodes pt needs dark quiet room.
Counseling time/Total time:

_____
Resident Physician Signature

Date: 1 / 20 / 4
      MM   DD   YY

_____
Attending Physician Signature

Date: ___ / ___ / ___
       MM    DD    YY

256 (8/03) Page 2 of 2

when eat glasses -

State glasses

does not fit ear

to short

lense

lense stop ken on lens

fit AA.

My personal glasses fit my face + ears

9/MB/AA

frames

State glasses

readers

prescription part reading

whos place

no frame all lens

readers

large area

large area

My glasses

to seen forway

to seeis close up readin

Printed By: FISHER, THOMAS C
Printed at: 10/29/2008 17:07:53

**DEPARTMENT OF CORRECTION**
FOLLOW-UP
Page 1 of 1
**AMBULATORY HEALTH RECORD**
Encounter#: 1798692 @ DW

| 86530 | COIT, JILL | **Facility:** DW | **LU:** DW/UNIT2 | 1 | D | 126 | 1B |
|---|---|---|---|---|---|---|---|

**SUBJECTIVE**

Active Medication(s): ASA ENTERIC - 81 MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP:4/18/09 ***; DOXEPIN HCL - 25MG - ONE CAPSULE AT BEDTIME; FOSAMAX - 70 MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; OYST-CAL-D - 500 MG/200 IU - ONE TABLET TWICE DAILY DO NOT TAKE WITH FOSAMAX; PREMARIN VAG CREAM - 0.625 MG/GM - VAGINALLY  1/2 APP FULL 2 X WEEKLY FOR VAG ATROHPY.; VENLAFAXINE - 37.5 MG - DO NOT CRUSH & FLOAT
ONE TAB EACH MORNING; ZOCOR - 10 MG - ONE TABLET EVERY EVENING; ZOMIG  ZMT - 2.5 MG - 2.5MG AT ONSET, MAY REPEAT IN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MOiNMATE RELATES PROBLEM OF PIMPLE ON FACE X MONTHS. ALSO HAVING FEELING OF LITEHEADEDNESS AND NUMBNESS IN I LEG AND WEKANESS AND THINKS IS HAVOING MINISTROKES DENIES TROUBLE SPEAKING OR VERTIGO. SAYS LEFT LEG AND FOOT ARE WEAKER. wants computer screen cause can't read popupswith right eye.Chart review nearly blind left eye and VF defect R lower field. ? re: diet,meds,footware.

**OBJECTIVE**

She was given her orhtotic insert today. A 2mm hard pimple probaly a sebaceous nodule was excised fromjust under her R lower eyelid-1cm below after local disinfectant and topical anestetic creme applied using an 18G needle and only tiny drop of blood with immediate hemostasis and the wound dressed with bandaid. She is able to flex and extend the L ankle but claims inability to stand on it w/o assistance.

**ASSESSMENT**

No need for additional labs or xrays at this time She was cautioned to report any abnl bleeding or easy bruising regarding initiation of th eplavix again.
719.45 - PAIN IN JOINT PELVIC REGION&THIGH
724.3 - SCIATICA
727.00 - UNSPECIFIED SYNOVITIS&TENOSYNOVITIS
307.81 - TENSION HEADACHE
377.75 - D/O VISL CORTXW/CORTICAL BLINDNESS- given notice to be able to buy herself and use the enhanced compter screen.
735.4 - OTHER HAMMER TOE
272.2 - MIXED HYPERLIPIDEMIA- ? high TG last time and not before. Needs repeat in few months prior to reeval the rx.
99214 - OFFICE/OUTPATIENT VISIT, ESTShe wa sallowed to remain with W/C due the ongoing issues with the hammer toes,new orthotic,?tia's ongoing, continued c/o pain in hip L,pain in knees,trouble with balance when standing,vision issues etc.This WC issue was discussed with j Harrelson who agrees.

**Temperature:** 97.4   **Pulse:** 98   **Weight:**
**Respiratory:** 16   **BP:** 132 / 82
Vitals Taken: PULSE OXSYM=96.00;

**PLANS / ORDERS**

Allergies: PENICILLIN G

Appointment for chronic care clinic in 3-4 months.

NEW - Rx#: 2394202 Drug Brand Name: PLAVIX - 75 MG  Alternate Name: CLOPIDOGREL  Rx Date: 10/29/2008  Disc Date: 01/27/2009  Rx Instructions: ONE TABLET DAILY

Medical Housing Restrictions: Added: WHEELCHAIR - 6 MONTHS;

Medical Level: Changed from: 3 Qualifier: PERMANENT to 3 Qualifier: PERMANENT

| **Datetime:** | **Providers:** | FISHER, THOMAS C |
|---|---|---|
| 10/29/2008 16:02 | | |

**PA/NP/RD**
**Datetime:** 10/29/2008 16:02

**PHYSICIAN**
**Provider:** FISHER, THOMAS C

**NURSE**
DateTime:

## AFFIDAVIT

I Lou Ann Rael,  of Lawful age, upon oath states as followes.

that I was the cell mate of Jill Coit for several months in the La Vista Corrections Facility.

1. Ms. Coit had problems hearing unless you would get very close  up to her and make her aware that you were speaking to her or if you would get in front of her and wave your hand in front of her.

2. Ms. Coit had a hard time hearing when it was count time or when things were being announced on the over head speaker I always had to let her Know when they were doing count or when they would announce movements on the over head speaker. there are times when Ms. Coit would get so startled by me when she was lying down and I would let her Know when it was count time cause she had a terrible time hearing things

3. I never realized how Visually impared Ms. Coit was there were times that she would trip over things or bang her toes when there was stuff on floor there were lots of time that I needed to read normal sized print to her mostly legal research or out of legal books that she had.

4. Ms. Coit is a very brilliant  Woman and can usually remember things once she is told the first time even though she has imparements that make it difficult for her to do certain things.

Signed and Acknowledged

_Lou Ann Rael_  April, 16, 2010

STATE OF COLORADO)

COUNTY OF PUEBLO)

Subscribed & acknowledged before me this 15th day of April, 2010.

~~Given under my hand and seal~~
my commission expires 11-30-2010

_Valerie Elbe_
NOTARY PUBLIC

16

**ACCOMMODATION RESOLUTION**

You DO HAVE A MOBILITY DISABILITY

Offender Name: COIT, JILL
DOC#: 86530
Date of Screening: June 2, 2008

Following a disability screening it has been determined that you have a mobility disability and are therefore, entitled to the following accommodations:

1. Cane
2. Knee Brace
3. Assignment to a designated facility
4. When you are housed at a facility that maintains an elevator for offender use, you are allowed to use the elevator.
5. Lower Bunk
6. Lower Tier
7. Special cuffing & shackling considerations
8. Staff assistance during an emergency or evacuation
9. Access to accessible bathroom facilities to include a shower chair
10. Not required to climb stairs
11. Medically necessary shoes w/ lift
12. Backpack
13. Special transport considerations
14. Assistance securing, carrying & disposing of food tray contents

In addition to the above accommodations, you are entitled to the benefits enumerated in the Montez Remedial Plan

You are required to notify clinical services and the AIC immediately if your health care device(s) is broken, lost, stolen or damaged.

The health care device(s) listed above shall fall under the provisions of Administrative Regulation (AR) 850-6, "Offender Property" and shall be placed on your property list. Any misuse of the health care device(s) may result in disciplinary action and may be subject to the provisions of AR 300-06, "Searches & Contraband Control."

If you feel you require additional accommodations, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

You DO NOT HAVE A VISION, HEARING, or UPPER EXTREMITY DISABILITY or any other MEDICAL CONDITION RISING TO THE LEVEL OF A DISABILITY

Your MENTAL HEALTH CONDITION DOES NOT RISE TO THE LEVEL OF A DISABILITY

---

Following a disability screening it has been determined that you do not have a disability pursuant to the Americans With Disabilities Act (ADA), therefore, you are not entitled to accommodations.

If your condition worsens and you feel that it affects your ability to perform a major life activity, you may submit a new Request For Accommodation to the Office of the AIC. Be advised however, that a new screening will not routinely be performed within one year of a previous screening absent a significant, documented change in conditions and/or a showing of clear error in the prior screening. Please refer to AR 750-04 for detailed information regarding the disability screening process.

You have 30 days from the date this document is served upon you to submit a Step 3 ADA Grievance, to the office of the AIC, on any matter addressed in this resolution. You may not file future ADA grievances regarding your medical care.
Please refer to AR 850-04 for details regarding the grievance process.
This accommodation resolution supersedes any other written, on any date, prior to the date on this document.

_____   4/5/08
Chief Medical Officer   Date

_____   6-5-08
AIC   Date

R:Related to Facility Litigation Coordinator for printing on yellow paper & distribution to the following: Warden, Case Manager (Working File), 2 copies to HSA for placement in Medical & Mental Health File, Housing Supervisor, & to any other DOC or Contract employee with need-to-know (work supervisor, teacher, etc...) &
Print 2 full size copies on yellow paper & serve on offender

#5

## DENVER HEALTH
### OUTPATIENT ENCOUNTER
### EYE CLINIC

N , MR#, Pat#, DOB

86112174
03/09/06   HSC: EYE
COIT JILL
2098863      F   06/11/1944
G08                        DVR: Y
1:  2:   RX:   IP:
PCP:
PHN: (303)307-2307   MRLO: DGOP

**ATTENTING NOTE:**
Review of Housestaff Note:

EXHIBIT ___/7___

History:

#2 → light sensitivity - sun +
fluorescent lights.

Exam:

medically OK to wear tinted
glasses outdoors and in
fluorescent light.

Assessment and Plan:

Please provide this
patient with tinted
glasses as ordered
my physician.

Patient E                    ders

Jena Brown
Denver Health
Eye Clinic
426-8075

Exhibit 7

Technician Signature/Title/Date  (mm/dd/yy)  (Pager & Provider #)

Scott Oliver MD      46749.

Resident Physician Signature/Title/Date  (mm/dd/yy)  (Pager & Provider #)

3/9/6        11599

Attending Physician Signature/Title/Date  (mm/dd/yy)  (Pager & Provider #)

DC Form 78 (2/83) / Old. No. 2685
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO. | NAME: COIT | OFFENDER NO.: 86530 | LIVING UNIT: CWCF

SUBJECTIVE:

DATE: 3/25/04   TIME: 1100

PROBLEM 1/2
PLAN / ORDERS

OBJECTIVE:  Temp ___ Pulse ___ Resp ___ B/P /

✓ – May wear own prescription sunglasses as needed for migraine headache

✓ – walker brought to medical

SIGNATURE NURSE: Kevin Kamrocke RN 3-25-04  1330

ASSESSMENT:

P.E.:

PHYSICIAN:
Rx NO.

---

PRICARE CODE NO. | NAME: COIT  JILL | OFFENDER NO.: 86530 | LIVING UNIT: CWCF

SUBJECTIVE:

This patient 59 year old WF has physical disability due to DJD of the hips & knees - w/ s/p ® THA s/p ℗ knee arthroscopic surgery. w/ 1½ leg length discrepancy ℗ leg shorter than ®. + ANA w/o SLE. ® hand contracture.

Patient needs follow up by Ortho for L&R ℗ knee problem Rheumatology for + ANA.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

DATE: 3/25/04   TIME: 1100

PROBLEM 1 2
PLAN / ORDERS

✓ – M3 to M4
✓ – No lifting greater than 5 lbs
✓ – 2 Hour work restriction
✓ – NO STAIRS
✓ – Handicapped cell

SIGNATURE NURSE: Elevator use as Needed

P.E.:

PHYSICIAN: Kevin Kamrocke RN 3-25-04  1330
Rx NO.

31 261

DEPA  MENT  OF CORRECTIONS

Center 111: MARTINEZ-HOCHBERG, YVETTE M

Printed at: 06/12/2008 14:25:4

**AMBULATORY HEALTH RECORD**

Encounter#: 1694620 @ DW

| 86530 | COIT, JILL | | Facility: | DW | LU: | DW/UNIT2 | 1 | D | 126 | L |

**SUBJECTIVE**

Active Medication(s): ASPIRIN  CHEWABLE - 81MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP: 10/7/08***; CHLOR-TRIMETON - 4MG - ONE TABLET TWICE DAILY AS NEEDED; FOSAMAX - 70 MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; OYST-CAL-D - 500MG/200 IU - ONE TABLET DAILY EXCEPT DAYS WHEN TAKING FOSAMAX; PREMARIN VAG CR - .625MG/GM - VAGINALLY 1/2 APP FULL 2 X WEEKLY FOR VAG ATROHPY.; SINEQUAN - 25 MG - ONE CAPSULE AT BEDTIME; ZOCOR - 10MG - ONE TABLET DAILY; ZOMIG  ZMT - 2.5 MG - 2.5MG AT ONSET, MAY REPEAT IN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MO

pt seen per podiatry was given custom shoes twice and not given these
I have sent a note to Dr Frantz concerning this

pt also w/ three hammer toes instead of one?
pt has problems w/ visual; perception and fell three times
-over mop bucket and went out on her medical -was in leg chains and chain got caught on grill and pt fell onto officer.
right hip now hurts and radiates to back buttocks and left buttocks pain from Monday's fall

pt had iv clincymicin last week for SBE prevention /dental clinic now has burning when urinates and low back pain

meds for toes, burn and hurts
hammer toes rub up against the shoes and will bleed

right eye w/ visual loss-inferior quadrant s of right eye

**OBJECTIVE**

msk: right hip with tenderness on palpation w/ decreased external rotation and pain w/ adduction, abduction, palp spasm quadricep muscle
nt left hip w/ minimal rom to adduction and abduction
left foot w/ hammer toes 2,3,4 w/ tenderness on palpation

eye filed study-noted 35-40 percent visual field loss right eye
-offer reeval of eye and pt declines as it hurts her to go out in van and declines referral

**ASSESSMENT**

735.4 - OTHER HAMMER TOE
959.6 - 959.6 - INJURY OTHER&UNSPECIFIED HIP&THIGH - S/P FALL
377.75 - 377.75 - D/O VISL CORTXW/CORTICAL BLINDNESS - RIGHT LOWER VISUAL FIELD EYE LOSSS S/P CVA

| Temperature: | 97.7 | Pulse: | 82 | Weight: | 165 |
| Respiratory: | 16 | BP: | 108 | / | 77 |

Vitals Taken: PULSE OXSYM=95.00;

**PLANS / ORDERS**

Allergies: PENICILLIN G

copy to Mayanne of letter  from MONTEZ so shoes w/ lift may be ordered and ? foot solutions shoe

right hip x-ray 6/13/08

can cut tennis shoe until her orthopedic shoes are in-cut along toes-hamm toe areas

bacitracin packet 3 6-to use sparingly over toes if bleed w/ rubbing, clean area prior to placing ointment on.

UA w/ urine culture

diflucan 200 mg x 1 today

lipid profile 7/1/08

tet hose-knee high x/x 2

pt needs new knee brace left-note to mayanne

| Datetime: | Providers: | MARTINEZ-HOCHBE, YVET1 ▼ |
| 06/12/2008 13:41 | | |

PHYSICIAN _____

NURSE _____

Datetime: 06/12/2008 13:41

Provider: MARTINEZ-HOCHBE, YVETTE

DateTime _____

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.

NAME

OFFENDER NO. 86830

LIVING UNIT CMCF

SUBJECTIVE:

OBJECTIVE:   Temp.____ Pulse____ Resp.____ B/P____

EXH

ASSESSMENT:

DATE 3/25/04    TIME 1100

PROBLEM 1/2

PLAN / ORDERS

– May refer from pressup to
Dunglosko as needed
for Ingrani kercko

Regular

SIGNATURE: _____ 3-25-04  1330
NURSE:

P.E.:

PHYSICIAN:

Rx NO.            Williams

*U.S. District Court* —  *evidence*
*9 ?F 20 39*
*Coit v. Zavaras*
*et al.*

```
= MEDICAL ============ ENTER MEDICAL INFO TRACK ========= 03/25/2004 = Page  1
Doc No: 86530   Name: COIT, JILL                 CWCF/UNIT4 PRES FACIL
=================================================================================
Medical Level:      Qualifier Code:    Desc:              Date Assigned:
Dental Level:       Qualifier Code:    Desc:              Date Assigned:
      Chart Out Dtd:           Chart Location:              Comments
=================================================================================

      Medical Conditions                 Medical Procedures


Date Assgnd Date Rslvd Condition   Qu   Date Assgnd Date Rslvd Procedure   Qu
---------- ---------- ---------- --   ---------- ---------- ---------- --


=================================================================================
      Medical Housing Restrictions        Medical Assignment Restrictions

Date Assgnd Date Rslvd Condition   Qu   Date Assgnd Date Rslvd Procedure   Qu
---------- ---------- ---------- --   ---------- ---------- ---------- --
03/23/2004            LOWER BUNK        03/23/2004                    EXCERCISE
                                        03/23/2004                    INTENSIVE
                                        03/23/2004                    SITTING
                                        03/23/2004                    NOHVY-LIFT

Medical  NO LIFTING GREATER THAN 5#; 2 HOUR WORK RESTRICTION; NO STAIRS;
Comments HANDICAPPED CELL; ELEVATOR USE AS NEEDED; MAY WEAR OWN PRESCRIPT
         ION SUNGLASSES AS NEEDED FOR MIGRAINE HEADACHE

Chart
Comments
```

E- *Chlost* ) )

NAME: C.A Jill   DOC#: _____

DATE: 2-21-08   FACILITY: DWCP   DATE: _____   FACILITY: _____

CC: ☐ ↓dist  ☐ ↓near  ☑ glasses broken/lost      CC: ☐ ↓dist  ☐ ↓near  ☐ glasses broken/lost
☐ no prior Rx  ☐ no current Rx  ☑ has street glasses      ☐ no prior Rx  ☐ no current Rx  ☐ has street glasses

CPE 8/07
1st stroke 05' - lost VA OS thus on stat
2nd in 06' - lost visn field not on
3rd in (1)08' - lost full sight (lost partly) OS
as not very well follow

| | UNAIDED DIST. | UNAIDED NEAR | AIDED DIST. | AIDED NEAR |
|---|---|---|---|---|
| OD | 20/ | 20/ | 20/ | 20/ |
| OS | 20/ | 20/ | 20/ | 20/ |

does not wear - needs Tntd Glas.

**CURRENT PRESCRIPTION**

| | SPH | CYL | AXIS | PRISM | ADD |
|---|---|---|---|---|---|
| OD | Shows Dr Oliver for Rx for tinted lens | | | | |
| OS | | | | | |

**SUBJECTIVE REFRACTION**

| | SPH | CYL | AXIS | PRISM | ADD | ACUITY |
|---|---|---|---|---|---|---|
| OD | +.75 | -150 | 95 | | | 20/45 |
| OS | +100 | -105 | 35 | | +225 | 20/ (Part) |

C/D  /  /   ☐ Macula clear with reflex OU

A: extreme photophobia 2nd to stroke oph
nerve damage/neuropathy - PERL's
+ cataract OU
OK for tinted Rx lens inside and
outdoors for photophobia

P: ☑ order glasses   ☐ ophthalmology consult
New tinted 3+ grey SR9
Dr. orders OK

**FINAL RX / ORDER SUBJECTIVE**

| | SPH | CYL | AXIS | PRISM | ADD |
|---|---|---|---|---|---|
| OD | | - | | | |
| OS | | - | | | |

Size: 52/20/140   54/20/145   56/20/145
GREY  BROWN   PD DIST: ___   PD NEAR: ___   SEG HT: ___
Wear glasses for :   Distance   Near   Fulltime   As Needed

Received one pair of state issue prescription eyeglasses
Name: X Jill Got Not What doctor ordered   Date: ___
Staff Person: ___ 4/2/08

---

| | UNAIDED DIST. | UNAIDED NEAR | AIDED DIST. | AIDED NEAR |
|---|---|---|---|---|
| OD | 20/ | 20/ | 20/ | 20/ |
| OS | 20/ | 20/ | 20/ | 20/ |

**CURRENT PRESCRIPTION**

| | SPH | CYL | AXIS | PRISM | A |
|---|---|---|---|---|---|
| OD | - | | | | |
| OS | - | | | | |

**SUBJECTIVE REFRACTION**

| | SPH | CYL | AXIS | PRISM | ADD | AC |
|---|---|---|---|---|---|---|
| OD | - | | | | | 20/ |
| OS | - | | | | | 20/ |

C/D  /  /   ☐ Macula clear with reflex OU

want both tinted & reg when
migraine - I educate her that is
a security issue

A: ___

& HRX 18

P: ☐ order glasses   ☐ ophthalmology consult

**FINAL RX / ORDER SUBJECTIVE**

| | SPH | CYL | AXIS | PRISM | AD |
|---|---|---|---|---|---|
| OD | - | | | | |
| OS | - | | | | |

Size: 52/20/140   54/20/145   56/20/145
GREY  BROWN   PD DIST: ___   PD NEAR: ___   SEG HT: ___
Wear glasses for :   Distance   Near   Fulltime   As Needed

I Received one pair of state issue prescription eyeglasses
Name: - Not tinted or Dr order   Date: ___
Staff Person: ___

# Colorado Department of Corrections
## Consultation Report Form

Appt#: **97512**

Run Date: 03/04/2008 11:33
*REQUESTED*

| | | |
|---|---|---|
| DOC#: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 03/04/2008 |

Gender: FEMALE       Security: MINIMUM RESTRICTIVE       SSN: 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       DOB: 06/11/1944

Level: 1 MONTH       Tele-Med: NO       Provider: MARTINEZ-HOCHBE, YVETTE M,       SDD: 03/16/3004

Request: DME       Auth #: _____       Number of Visits: 1       PED: 03/26/3004

Location: ACTION POTENTIA       Appt Dt: _____       Specialist: _____       DH #: 2098863

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: RESUBMISSION OF PREVIOUS CONSULT FOR EVALUATION, FITTING AND PROVISION FOR SPICE/WRIST SPLINT-UNABLE TO MAKE SPLINTS OUT OF ORTHOCLASE HERE IN CLINIC
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: YES
3. URGENCY OF NEED V. REMAINING SENTENCE: LIFE W/O PAROLE
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: UNABLE TO HOLD CANE AND WALK WITH SPLINTS MADE FROM ORTHOCLASE--TOO THICK A MATERIAL
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: NO S/P INJURY SEXUAL ASSAULT WHILE INCARCERATED
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: ORTHOCLASE NOT SUCCESSFUL
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT: YES
8. PAIN COMPLAINTS/BEHAVIOR: PAIN
9. RISK AND/OR COST BENEFIT: CONTINUED CHRONIC PAIN TO THUMBS AND WRISTS-

| ICD | | CPT | |
|---|---|---|---|
| V68.89 | ENCOUNTERS OTH SPEC ADMIN PRPOS OTH | 88325 | COMPREHENSIVE REVIEW OF DATA |
| | | | |
| | | | |

| Provider Signature: | *Electronically Signed* | Date: 03/04/2008 11:33 |
|---|---|---|
| Provider Name: | MARTINEZ-HOCHBE, YVETTE M , MD | ymmartin |

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Physician Health Partners  Phone: (866) 362-1374   FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

| | | | | | | | |
|---|---|---|---|---|---|---|---|

**FOLLOW-UP**
**Page 1 of 3**

# DEPARTMENT OF CORRECTIONS
## AMBULATORY HEALTH RECORD

Printed By: HARRELSON, JAMIE L
Printed at: 12/12/2008 11:26:30
Encounter#: 1831398 @ DW

| 86530 | COIT, JILL | | Facility: | DW | LU: | DW/UNIT2 | 1 | D | 126 | 1B |
|---|---|---|---|---|---|---|---|---|---|---|

**SUBJECTIVE**

| | |
|---|---|
| Temperature: | Pulse: | Weight: |
| Respiratory: | BP: / |

Active Medication(s): ASA ENTERIC - 81 MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP:4/18/09 ***; FOSAMAX - 70 MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; OYST-CAL-D - 500 MG/200 IU - ONE TABLET TWICE DAILY DO NOT TAKE WITH FOSAMAX; PLAVIX - 75 MG - ONE TABLET DAILY; PREMARIN VAG CREAM - 0.625 MG/GM - VAGINALLY  1/2 APP FULL 2 X WEEKLY FOR VAG ATROPHY.; SINEQUAN - 25MG - ONE CAPSULE AT BEDTIME; ZOCOR - 10 MG - ONE TABLET EVERY EVENING; ZOMIG  ZMT -2.5 MG - 2.5MG AT ONSET, MAY REPEAT IN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MO

I saw the offender today with numerous requests for various accommodations. i.e. tinted glasses, hearing, Velcro shirts, wheelchair pusher, table to put her papers on, hand dexterity, and lower ext. mobility issues.  I advised her that she should put all of theses req. into ADA.

She also stated she refuses to see Dr. Singh again due to her previous encounter with him where he denied her everything, and that she will report him to the medical board and sue him if she has an appt. w/ him again.

She brought her hearing aids down today and showed me paperwork from previous hearing aid repairs in DOC in 2002 and 2003. Per her report she has been using them for the past 20 yrs.  I am unclear whether she came in with them or whether we got them.  However one of them has been broken since 2004 and the other broke a couple of mo. ago.  My plan is to do a new audiogram, I attempted to do the Eros can today but was unable to get the ear plugs to stay in her ears after trying 5 different sizes due to her ear canal abnormality (she has curved canals that are also small).
Additionally, I plan to put in a consult to have her hearing aides repaired after the audiogram.

She does have significant arthritis in her C-spine, L-spine, knee, hands,  L shoulder rotator cuff tear by MRI and THA. She reports vision loss due to a CVA had sig. vision loss 20/400 in the lt. eye. I will email Frantz MD to see if I can do temporary accommodations until her ADA screening can be done.

Offender Coit also req. a Bone Density scan.  States she has never had one and is on Fosamax and Oystershell for these.

**OBJECTIVE**

A&Ox3 in NAD

Lungs- CTA
CV- RRR no M/T/G
Abd- S/NT/ND active x 4 (hypoactive)
MSK- limited exam,  Gait w/ a limp due to severe lt. knee pain,  had sig. difficulty w/ standing,  Is wearing bilat hand braces (well documented weakness in hands previously), Lt. Knee brace on, removed,  Hypertrophic knee changes, large

### PLANS / ORDERS

Allergies: PENICILLIN G

F/U appt in 2mo. to check on appt. status for Bone Density and hearing test.

Pending labs due in Jan.                          14

Pt. does not want any Tyl 3 for pain due to lethergy SE, and reports not being able to tolerate-Elavil, or any NSAIDS due to stomach upset. Additonaly does not want cortisone injections into her knee because that is whas caused her hip to wear out .

Pt to come to clinic to sign Refusal for further F/U w/ urology for Hematuria, and For Colonoscopy.  States she would rather just die than to have to deal with the stress of knowing the diagnosis of cancer.

Please Make sure the offender is made aware that Dealth could occur if undiagnosed cancer occurs w/o the above consults.  (put on refusal)

D/C - Rx#:  2375115  Drug Brand Name: ASA ENTERIC - 81 MG  Alternate Name: ASPIRIN  Rx Date: 09/12/2008  Disc Date: 12/12/2008  Rx Instructions: ONE TABLET DAILY

D/C - Rx#:  2394202  Drug Brand Name: PLAVIX - 75 MG  Alternate Name: CLOPIDOGREL  Rx Date: 10/29/2008  Disc Date: 12/12/2008  Rx Instructions: ONE TABLET DAILY

NEW - Rx#:  2410579  Drug Brand Name: ASA ENTERIC - 81 MG  Alternate Name: ASPIRIN  Rx Date: 12/12/2008  Disc Date: 12/07/2009  Rx Instructions: ONE TABLET DAILY

NEW - Rx#:  2410580  Drug Brand Name: PLAVIX - 75 MG  Alternate Name: CLOPIDOGREL  Rx Date: 12/12/2008  Disc Date: 03/12/2009  Rx Instructions: ONE TABLET DAILY

| Datetime: 12/12/2008 10:59 | Providers: | HARRELSON, JAMIE |
|---|---|---|

| PA/NP/RD | PHYSICIAN | NURSE |
|---|---|---|
| Datetime: 12/12/2008 10:59 | Provider: HARRELSON, JAMIE | DateTime: 12/12/08 |

DC Form 850-04A (12/01/08)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

**OFFENDER MUST COMPLETE:** Is this grievance related to your disability/diabetes or other ADA matter? Yes ☑  No ☐

**CASE MANAGER MUST COMPLETE:** Does the offender have an ADA alert? Yes ✓ No ☐
Is the subject related to the offender's disability/diabetic condition or other ADA matter? Yes ✓ No ☐
Date received by case manager: 3-5-2010          Case Manager: Ray Berg

Grievance Number  D-LV 09-10-132          STEP (Circle One)   1   2   ③
                  D-LV 09/10-132

| NAME  Jill Coit | DOC NO.  86530 | FACILITY/UNIT/POD  lvcf |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Meaningful Remedy:

Want what I ased for in step 1 & 2. Apparently common sence does not apply, I am attaching my Denver Health Single Field analysis test done on a machine by Specialist-eye: it clearly shows I have no vision in the lower part of my eye and limited vision in the upper top and sides. HOw can any person with any amount of reasonable intelligence not see that this eye has limited vision ability and an inmapirment? Disability is clear. I am blind in the left eye so must depend on what I have in my right eye which is further limited by 'floaters', etc. I am tired of fighting, I do my best and try to keep active adn bring integrity in my life and meaning but with no help or constant stupidity being shown, it gets depressing. I don't meet the criteria, then the criteria  needs to be shcnged. It woud seem that you would need 20-40 in total eye not just part of the eye. Ihope the courts have more sence than CDOC- I am not asking fgor much just a computer so I can write and read without further dam agin my eyes, it is all I ahve, I will even pay for computer and what I need, I have a life sentence as need help,

| TO BE COMPLETED BY OFFENDER: | | |
|---|---|---|
| DATE: 3-2-10 | OFFENDER SIGNATURE  Jill Coit | ADA-Disability |

| TO BE COMPLETED BY GRIEVANCE COORDINATOR: | |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: | |
| DATE: 3/8/10 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID #  E. Bird /Elmir Bird # 9901 |

Date ADA grievance sent to AIC:

**RESPONSE**

15

| TO BE COMPLETED BY RESPONDER | | |
|---|---|---|
| DATE GRIEVANCE REC'D BY RESPONDER: | RESPONDER-DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE/PRINT NAME & ID # | RESPONSE DATE: |

| TO BE COMPLETED BY OFFENDER | |
|---|---|
| RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance. | |
| If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual. | |
| DATE: | OFFENDER SIGNATURE/PRINT NAME & DOC # |

Original: Department File/AIC          Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Attachment "A"
Page 1 of 1

MAR 08 2010

April 26, 2006


To: Randy Smith, H.S.A.

From: Nancy Nola, NP

Subject: Special requests from inmate Jill Coit (#86530)


I saw Jill Coit for an appointment this am and these are the items she is requesting:

1. She requested a pair of **tinted glasses** that were recommended by the opthamologist she saw at DHMC last November of 2005.  She claims the light bothers her eyes, especially the left eye affected by her stroke. She states she is willing to pay for the glasses.

2. She requests the **special orthotic shoes** that she had before—she claims she has trouble walking without them. (She still uses the wheelchair to get around). She states she will pay for these shoes or reimburse DOC for these shoes. She would also like **shower shoes** as she has had them in the past. She is complaining of foot pain related to the fibromas in her feet.


I informed this inmate that you are the one to approve or disapprove these items. She requested that I give you the supporting documents for these special requests.


*Nancy Nola NP*

17

Randy — Is it ok for Jill to have tinted glasses (she will purchase herself). She saw the Eye doctor + he recommended based on the Eye exam he performed on Jill's on [...]

Nancy
(8A)

**DENVER HEALTH**
Level One Care for ALL

NAME: Jill Coit

DISTANCE:
Right Eye -0.50 +1.25 x 7
Left Eye -0.75 + 2.00 x 165

READING:
Right Eye + 2.25
Left Eye

REMARKS: tinted lenses for light sensitivity

Rx No.

5/24/06   20

Ophthalmology Department

---

Nancy, I called HQ to confirm. She may Purchase Sunglasses at Canteen. The only way THE STATE will Pay for TINTED GLASSES would be if her pupils would NOT Dilate APPROPRIATELY. According to our AR which she has Access to she may have one Eye Exam Every 3 years and one Pair of State issued Glasses. She may NOT Purchase Personal Glasses from an outside source

Randy R Smith

18

Col___ c __epartment of Correctic__

## Consultation Report Form

Page 1 of 1

Run Date: 07/09/2008 15:53

*FAXED TO PHP*

**Appt#: 102326**

| | | | |
|---|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 06/24/2008 |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/11/1944 |
| Level: 1 MONTH | Tele-Med: NO | Provider: MARTINEZ-HOCHBE, YVETTE M , | SDD: 03/16/3004 |
| Request: OPHTHALMOLOGY | Auth #: | Number of Visits: 1 | PED: 03/26/3004 |
| Location: | Appt Dt: | Specialist: | DH #: 2098863 |

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: 63 y/o female s/p left cva with central deficit-needs special eyeware? as she cannot see lower field in that eye. Please eval for this-ADA accommodation
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: yes
3. URGENCY OF NEED V. REMAINING SENTENCE: 3004
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: yes
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: no
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE:no
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT:yes
8. PAIN COMPLAINTS/BEHAVIOR: difficult  moving around facility and stairs as she cannot see below her
9. RISK AND/OR COST BENEFIT: avoid falling

| ICD | | | | CPT | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | | |
|---|---|---|---|
| Provider Signature: | *Electronically Signed* | Date: 06/24/2008  13:15 |
| Provider Name: | MARTINEZ-HOCHBE, YVETTE M , MD | ymmartin |

**Please do not discuss dates of the follow-up appointments with the offender.**
Insurance:  Physician Health Partners  Phone: (866) 362-1374  FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

**Appt#: 70122**         **Consultation Report Form**         *эя цб*
                                                              **REQUESTED**

| | | | |
|---|---|---|---|
| DOC #: 86530   Name: COIT, JILL | | Facility: DW/UNIT2 | Date Initiated: 12/ |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/ |
| Level: 1-2 WEEKS | Tele-Med: NO | Provider: HARRELSON, JAMIE , NP | SDD: 03/ |
| Request: OPHTHALMOLOGY | Auth #: | Number of Visits:   1 | PED: 03/ |
| Location: DENVER HEALTH | Appt Dt: | Specialist: | DH #: 209- |

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: 62 Y/O FEMALE W/ CONT. DECREASED VISION IN HER LT. EYE SINCE EPISODE 12/15/05 FOR WHICH SHE WAS SEEN IN THE ED FOR LT. ARM WEAKNESS, LT. EYE VISON LOSS, AND DIFF TALKING. PER THE E.D. THE PT. NEEDS TO F/U W/ OPTH. IN 5 DAYS. SHE STATES SHE WAS SEEN BY OPT THE ED, BUT NO NOTE WAS RECIEVED.
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: Y
3. URGENCY OF NEED V. REMAINING SENTENCE: Y
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: Y
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: N
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: NA
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMEI
8. PAIN COMPLAINTS/BEHAVIOR: SEE ABOVE.
9. RISK AND/OR COST BENEFIT:

| ICD | | CPT | |
|---|---|---|---|
| 719.41 | PAIN IN JOINT, SHOULDER REGION | 99215 | OFC/OUTPT VISIT E&M ESTAB MOD-HI SEVRT |
| 346.90 | UNSPEC MIGRAINE WITHOUT MENTION INTRACT MIG | | |
| 722.6 | DEGENERATION INTERVERTEBRAL DISC SITE UNSPE | | |
| 716.59 | UNSPEC POLYARTHROPATHY/POLYARTHRIT MX SITE | | |

| | | |
|---|---|---|
| **Provider Signature:** | *Electronically Signed* | Date: 12/20/2005  17:4 |
| **Provider Name:** | HARRELSON, JAMIE , NP | J10710 |

2 0

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Physician Health Partners  Phone: (866) 362-1374  FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 2862 S Circle Dr, Colorado Springs, CO 80906
Or FAX to your Scheduler @ 719 226 4566

Cot Jill

2-26-08   FACILITY: DWCF

DOC#: _____

DATE: _____   FACILITY: _____

☐ ↓dist  ☐ ↓near  ☐ glasses broken/lost
☐ no prior Rx  ☐ no current Rx  ☐ has street glasses

CC: ☐ ↓dist  ☐ ↓near  ☐ glasses broken/lost
☐ no prior Rx  ☐ no current Rx  ☐ has street glasses

LEE 8/07
1st Stroke 05' - lost VA OS + Rred 03 VA
2nd in 06' - lost visual field not OU
3rd in (1)08' - lost full sight (both Partly) OS
eye not used before

| | UNAIDED DIST. | UNAIDED NEAR | AIDED DIST. | AIDED NEAR |
|---|---|---|---|---|
| OD | 20/ | 20/ | 20/ | 20/ |
| OS | 20/ | 20/ | 20/ | 20/ |

does not wear — needs that long.

| | UNAIDED DIST. | UNAIDED NEAR | AIDED DIST. | AIDED N |
|---|---|---|---|---|
| OD | 20/ | 20/ | 20/ | 20/ |
| OS | 20/ | 20/ | 20/ | 20/ |

### CURRENT PRESCRIPTION

| | SPH | CYL | AXIS | PRISM | ADD |
|---|---|---|---|---|---|
| OD | Shows Dr Oliver for Rx for tinted lens | | | | |
| OS | | | | | |

### CURRENT PRESCRIPTION

| | SPH | CYL | AXIS | PRISM | A |
|---|---|---|---|---|---|
| OD | | - | | | |
| OS | | - | | | |

### SUBJECTIVE REFRACTION

| | SPH | CYL | AXIS | PRISM | ADD | ACUITY |
|---|---|---|---|---|---|---|
| OD | +75 | -150 | 95 | | +225 | 20/40 |
| OS | +100 | -175 | 35 | | | 20/ Partly |

From 8/07 Rx

### SUBJECTIVE REFRACTION

| | SPH | CYL | AXIS | PRISM | ADD | AC |
|---|---|---|---|---|---|---|
| OD | | - | | | | 20/ |
| OS | | - | | | | 20/ |

C/D / / ☐ Macula clear with reflex OU

C/D / / ☐ Macula clear with reflex OU

A: Extra photophobic 2nd to stroke Optic
Nerve damage/neuropathy — TIA's
+ cataracts OU
OK for tinted Rx lenses inside and
outdoors for photophobia

A: was light sensitive especially when
migraine — I educated her that is
a security issue

P: ☑ order glasses  ☐ ophthalmology consult
New tinted 3+ grey SLv
Polycarbonate OU

P: ☐ order ___ sult

21

### FINAL RX — ORDER SUBJECTIVE

| | SPH | CYL | AXIS | PRISM | ADD |
|---|---|---|---|---|---|
| OD | | - | | | |
| OS | | - | | | |

Size: 52/20/140   54/20/145   56/20/145

GREY  BROWN  PD DIST: ___  PD NEAR: ___  SEG HT: ___

Wear glasses for :  Distance  Near  Fulltime  As Needed

### FINAL RX — ORDER SUBJECTIVE

| | SPH | CYL | AXIS | PRISM | AD |
|---|---|---|---|---|---|
| OD | | - | | | |
| OS | | - | | | |

Size: 52/20/140   54/20/145   56/20/145

GREY  BROWN  PD DIST: ___  PD NEAR: ___  SEG HT: ___

Wear glasses for :  Distance  Near  Fulltime  As Needed

Received one pair of state issue prescription eyeglasses
Name: X _____ Date: ___
Staff Person: _____ 4/3/08

I  Received one pair of state issue prescription eyeglasses
Name: _____ Date: ___
Staff Person: _____

avoiding pressure to the elbow. Corticosteroid injection into the bursa has been successful, but skin atrophy and secondary infections may occur, making it a less-than-optimal treatment. Surgical resection is even necessary.

Some 80% of all septic bursitis is due to *Staphylococcus aureus,* followed by *Streptococcus* organisms in 14% of cases. Rarely, gram-negative infection occurs, most often in debilitated or older patients. An oral antibiotic effective against *Staphylococcus* and *Streptococcus* organisms is the initial therapy for septic olecranon bursitis. When final cultures return, the antibiotic can be tailored.

Along with antibiotic therapy, serial needle aspiration of the olecranon bursa fluid is necessary daily until culture results are negative. Antibiotics can be discontinued 5 days after the negative culture. If cultures reveal persistence of the organism despite antibiotic therapy and aspiration, surgical resection of the bursa is necessary. More aggressive initial therapy with intravenous antibiotics may be indicated for patients who are febrile, immunocompromised, or chronically debilitated.

The differential diagnosis for swelling in the olecranon region includes traumatic, septic, gouty, and rheumatoid bursitis. In addition, superficial bursitis sometimes occurs in systemic sclerosis, systemic lupus erythematosus (SLE), and hypertrophic pulmonary osteoarthropathy.

*Lateral and medial epicondylitis.* Lateral epicondylitis (tennis elbow) results from trauma to the insertion of the common extensor tendon onto the lateral epicondyle. Some investigators report avulsion of the extensor radialis brevis at its insertion onto the lateral epicondyle. Patients typically describe an aching pain in the lateral aspect of the elbow that is aggravated by grasping or turning the wrist. Pain may be present at rest. Onset ranges from acute to subacute or chronic. Despite its name, tennis elbow develops with any occupation or activity that stresses the wrist extensors.

Medial epicondylitis is the counterpart to lateral epicondylitis but results from overuse of the flexor tendons of the wrist. The point of tenderness is located over the medial epicondyle. Although it is given the name *golfer's elbow,* this condition may occur with other sports and occupational activities.

Physical examination reveals focal tenderness in the lateral or medial epicondyle region. In addition, extension of the finger or wrist against resistance produces pain in the lateral epicondyle region, whereas flexion of the wrist against resistance produces pain in the medial epicondyle region.

Bilateral lateral epicondylitis is rare. When present, the physician should consider fibromyalgia. Entrapment neuropathies, particularly the deep branch of the radial nerve, may be confused with lateral epicondylitis, whereas compressive neuropathy of the ulnar nerve may be mistaken for medial epicondylitis. In addition, cervical radiculopathy and carpal tunnel syndrome sometimes manifest as elbow pain. Entrapment neuropathy of the deep branch of the radial nerve should be suspected in chronic refractory tennis elbow. The tenderness is anterior, on the radius, approximately 2 cm distal to the elbow crease.

Treatment of lateral and medial epicondylitis begins

with avoiding the aggravating condition and modifying it to prevent recurrent injury. This may require the assistance of a professional in sports medicine or an occupational therapist. Relative rest for 3 to 4 weeks, the use of a forearm compression band, and NSAIDs are the initial steps of therapy. Gentle exercises to stretch the extensor or flexor muscles should progress to strengthening exercises. The success rate of these combined conservative modalities is nearly 75%.

Local corticosteroid infiltration around the lateral and medial epicondyle has been a traditional alternative when conservative therapy fails. However, more recent studies reveal that, although corticosteroid injection is more effective than lidocaine alone for acute pain management, the outcome at 6 months is the same. Thus conservative therapy is recommended for 6 months. If pain persists after that period, surgical consultation is recommended.

### Wrist and hand

The wrist and hand are prone to traumatic injuries as well as to systemic inflammatory disease. Periarticular processes of the wrist include tenosynovitis, median and ulnar nerve entrapment, and ganglions. In the hand, tenosynovitis and Dupuytren contractures are common periarticular conditions.

Wrist flexion normally spans 80 to 90 degrees for flexion and 80 degrees for extension. Ulnar deviation is usually 40 to 45 degrees and radial deviation is 20 degrees. Palpation of the ulnar styloid and radiocarpal joints provides clues for synovitis. Muscle atrophy on examination of the hand may suggest neuropathy. Skin changes, such as tightening and rashes, and nail changes are helpful in diagnosing systemic inflammatory diseases. The range of motion of the fingers can be grossly assessed by the patient's ability to make a complete fist. If the patient cannot, the examination must focus on passive and active range of motion of the fingers to distinguish an articular process from a tendinous one. If the examiner can passively move the metacarpophalangeal (MCP), proximal interphalangeal (PIP), and distal interphalangeal (DIP) joints into full flexion, the pathology resides in the tendon mechanism. However, if passive motion of the joint is limited, articular pathology is present.

*Tenosynovitis.* Although tenosynovitis is more common in the inflammatory arthritides, such as RA and psoriatic arthritis, stenosing tenosynovitis of the thumb and fingers results more often from overuse or repetitive motion.

**De Quervain tenosynovitis.** Stenosing tenosynovitis of the abductor pollicis longus and extensor pollicis brevis tendons is also known as *de Quervain tenosynovitis.* It is secondary to the thickening of the fibrous sheath over the radial styloid, which impinges on the two tendons. Patients have pain over the radial aspect of the wrist, which is often exacerbated by thumb or wrist motion. Physical findings may include focal soft tissue swelling over the radial styloid region, pain on palpation of the region, or severe pain when the wrist is deviated toward the ulna while the thumb is folded within the fingers (Finkelstein's test) (Fig. 80-7). Differential diagnosis of pain in this region includes carpometacarpal disease from osteoarthritis, tendinitis of the extensors of the wrist, or tendinitis



**Fig. 80-7.** Finkelstein's test is positive in de Quervain's stenosing synovitis. Ulnar flexion of the wrist produces pain over the dorsal compartment containing the extensor pollicis brevis and abductor pollicis longus.

associated with systemic disease such as spondyloarthropathies or disseminated gonococcemia. Treatment includes immobilization with a long thumb spica or opponens splint fashioned by an occupational therapist, NSAIDs, and local corticosteroid injection into the tendon sheath. Activities that require repetitive motion of the thumb or wrist should be modified.

**Stenosing tenosynovitis.** Stenosing tenosynovitis of the finger, also known as *trigger finger,* develops secondary to excessive forces at the fibrous rings that affix the flexor tendon in place. As a result of these forces, fibrocartilaginous metaplasia develops and obstructs the normal gliding motion of the flexor tendon. Repetitive motion of the fingers and frequent clutching of the hand are associated with this entity. Patients classically complain of the inability to open a finger from flexion in the morning without active assistance from the other hand. Other patients describe a snapping of the finger from flexion to extension. Examination reveals swelling or nodularity, often tender to palpation, along the tendon sheath in the palmar surface of the hand. If the patient actively flexes and extends the finger, crepitation is palpable in the course of the tendon within the palm.

Differential diagnosis includes suppurative tenosynovitis (an acute syndrome with redness and pronounced tenderness), mycobacterial infections, systemic inflammatory diseases, Dupuytren contracture, and sarcoidosis. If multiple fingers are involved, diabetes mellitus, amyloidosis, and ochronosis should be excluded.

Local corticosteroid injection of the tendon sheath is extremely effective. Most published reports indicate a high percentage of success with local injections. Modification of job or recreational activities is necessary. Referral to a hand surgeon is recommended if symptoms recur.

*Median and ulnar nerve entrapment.* Entrapment of the median and ulnar nerves at the wrist results in carpal tunnel syndromes, which are described in Chapter 103.

*Dupuytren contracture.* Dupuytren contracture is a progressive fibrotic condition involving the palmar fascia that leads to fixed flexion deformities at the MCP joint. This entity is painless and does not cause significant disability until the fingers develop contractures that limit function. Pathologically, fibroblasts proliferate in the palmar fascia without an inflammatory component. The flexor tendons, however, are not involved. Taut bands of fibrosis form, typically involving the fourth, fifth, and occasionally the third fingers, but rarely the thumb or index finger. Similar findings may occur in the plantar region. Men are affected more often than women. Previous reports associating Dupuytren contracture with diabetes mellitus and alcoholism have not been consistently documented. Treatment consists of passive extension of the finger in early stages. Surgical intervention at later stages may be necessary, but recurrence is common.

*Ganglions.* Ganglions are cystic outpouchings of the joint capsule or tendon sheath. They often occur asymptomatically on the dorsum of the wrist and resolve or recur spontaneously. The ganglion is filled with a gelatinous fluid and transilluminates, differentiating it from solid tumors. Lipomas, neuromas, synovial cyst of RA, calcific deposits, giant cell tumor, and sarcomas may have a similar appearance. Management includes observation only, aspiration and injection with corticosteroids, or surgical removal.

## Anterior chest wall pain

Costochondritis or pain in the anterior chest wall along the costosternal junction may mimic acute cardiac or pleuritic pain. Patients describe intermittent pain that lasts for several days, radiates to the chest wall, and is exacerbated by deep breath. Tenderness to palpation of the costosternal junctions at one or more locations and even along the intercostal muscles are common findings. If bilateral tenderness in the costochondral regions is elicited, spondyloarthropathies and fibromyalgia should be considered in the differential diagnosis. In addition, referred pain from cardiac, pulmonary, esophageal, and vascular sources must be excluded.

Tietze's syndrome is a possible diagnosis if swelling is associated with pain in the costochondral regions. The etiology of Tietze's syndrome is unknown, but pathology reveals proliferation of cartilage and increased vascularity in the costochondral region. This syndrome may be acute or chronic. Differential diagnosis includes spondyloarthropathy, infection, and tumor of the bone.

Treatment of both syndromes includes eliminating the factors that may aggravate the pain, administering NSAIDs, instituting physical therapy with ultrasound, or administering local corticosteroid injections. Skin atrophy in the anterior chest wall region can occur secondary to local steroid injections. This complication may be particularly undesirable for some patients.

# COLORADO DEPARTMENT OF CORRECTIONS
## CLINICAL SERVICES  LAY IN SLIP

OFFENDER: _Jill Coit_

DOC#: _86530_     LIVING UNIT: _DW/2_

WORK ASSIGNMENT: _Graphic Arts_

Restricted Activities:

[   ]   Meals and meds only

[   ]   No yard or gym          [   ]   Feed in Cell

[   ]   Other:_____

Allowed activities (specify): _Enhanced Computer screen for vision impairment. Wheelchair X6 mos._

## RETURN TO NORMAL ACTIVITIES ON:

DATE: _6 months from today_

_Thomas C Fder_                    _90/29/08_
Clinical Services                           Date

Distribution:       Original Medical    Pink: Work Supervisor/L.U.    Yellow: Offender

31229(Rev.2/00)

# Application For Free Library Service

# Adult Account

## Colorado Talking Book Library

Colorado Department Of Education/Colorado State Library

180 Sheridan Blvd.
Denver, CO 80226

303-727-9277 (Metro Denver Area)
1-800-685-2136 (long distance)

**PLEASE COMPLETE ALL PAGES OF THE APPLICATION.**

**(*Required Information)**

*Name (please print) ____________________
First Middle Initial Last

*Address ____________________

*City ____________ *State CO *Zip ________ *County ________

*Phone ( ) ____________ *Birth Date __/__/__ Sex ❑ M ❑ F

Alternate Contact ____________________

Phone ( ) ____________ Relationship ____________

Patron Email ____________ Alternate Contact Email ____________

**READING LEVEL** ❑ Pre-school/K ❑ Grade School ❑ Teen ❑ Adult

**ELIGIBILITY REQUIREMENT**—Please check only one box.

| | |
|---|---|
| ❑ Blindness | Visual acuity of 20/200 or less with correction. |
| ❑ Visual Disability | Inability to read standard print with optical correction. |
| ❑ Physical Disability | Unable to hold book and or turn pages. |
| ❑ Deaf/Blind | Complete loss of vision and hearing (Braille). |
| ❑ Learning Disability | Organic dysfunction causing inability to read standard print. **M.D. or D.O. signature is required by Federal law.** |

**Required certification signatures must be original. No faxed, stamped or photocopied signatures will be accepted. Certifier cannot be a relative of applicant.**

In the cases of blindness, visual and/or physical disabilities, the following persons may certify: M.D., D.O., R.N., Ophthalmologist, Optometrist, Christian Science Practitioner, professional staff at hospitals, nursing facilities, schools, libraries, institutions, and public agencies.

**In the case of a learning disability, a M.D. or D.O. must certify this application.**

*Name (please print) ____________ *Profession ____________

*Address ____________ *City ____________ *State ____ *Zip ________

*Phone ( ) ____________ *Signature ____________

## MEDICAL RESTRICTIONS

Date _06/27/06_

Name _Coit, Jill_

DOC _86530_

EXHIBIT _____

### Physical Restrictions:

- No lifting greater than _____ lbs *Yes or No*

- No bending *Yes or No*

- No prolonged standing greater than _____ hours *Yes or No*

- No prolonged sitting greater than _____ hours *Yes or No*

- No weight bearing to (L) (R) Leg *Yes or No*

- Four hour work restriction *Yes or No*

- No intensive labor *Yes or No*

- No vigorous exercise *Yes or No*

- Medically unassigned *Yes or No*

- Work consistent with age and condition *Yes or No*

- No squatting *Yes or No*

- No work with heavy machinery *Yes or No*

- No assignment where loss of consciousness would be hazardo *Yes or No*

### Housing Restrictions:

- First Tier *Yes or No*

- Lower Bunk *Yes or No*

- No stairs *Yes or No*

- Oxygen required *Yes or No*

- May wear tennis shoes where allowed by Security *Yes or No*

- Needs_____ extra blankets *Yes or No*

- Needs_____ extra pillows *Yes or*

- Elevator pass *Yes or No*

- Single cell *Yes or No*

- Othe ___ 25 ___

① White (CROC) shower shoes, self purchase

② 4 Prongoo Bra Size extension - Self purchase

③ OK to use computer - Voice Activated Program due to HAND Deformity and Arthritis.

Expiration Date _06 27 2007_

Medical Officer _Nancy Nolan_

Print Name: _Nancy Nolan NP_

**BUSINESS MACHINES**
P.O. Box 8685
Calabasas, California 91302

# 39023

39023

(310) 278-2115  (818) 222-2152

| | DATE | ORDER NO. |
|---|---|---|
| | 8-28-00 | |
| | SHIP TO | |

TO

Jill Coit #86530
Colorado Womens Correctional Facility
Unit 7, Box 500

Cannon City, CO 81215

| | DATE SHIPPED | SHIPPED VIA | | | | | |
|---|---|---|---|---|---|---|---|
| | 8-29-00 | UPS | | | paid | | |

| QUANTITY | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| > | IBM Wheelwriter 1000 # 11TCC99 | | 478.00 |
| | Script printwheel | | 39.50 |
| | | | |
| | UPS | | 13.49 |
| | TOTAL | | 530.99 |
| 2ea. | ribbons & lift-off tapes | | 26.00 |
| | UPS letter | | 14.50 |
| | | | |
| | TOTAL | | $571.49 |

*Thank You!*

**NEBS** To Reorder Call
1-800-225-6380

DC Form 850-04A (12/01/08)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

**OFFENDER MUST COMPLETE:** Is this grievance related to your disability/diabetes or other ADA matter? Yes ☑ No ☐

**CASE MANAGER MUST COMPLETE:** Does the offender have an ADA alert? Yes ☑ No ☐
Is the subject related to the offender's disability/diabetic condition or other ADA matter? Yes ☑ No ☐
Date received by case manager: 3-5-2010   Case Manager: R-Bay

Grievance Number  D-LV 9-10-128   STEP (Circle One)  1  2  ③
D-LV09/10-128

| NAME Jill   Coit | DOC NO. 86530 | FACILITY/UNIT/POD  lvcf |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Meaningful Remedy: 16 d. dubts attached
What kind of BS is this response, I have deQuarian isease that was excerbated by rape from CWCF correctional officer where he re-eatedly caused injury to joints in hand, etc. I do not have carpal tunnel so why as that even brought upl as to work with my medical provider to provide over the ounter pain relief, you do not sell Celebrex and if you had read my medical file nd a prior grievance response you gave I am sensitive to many medicalitions, elebrex has been the only anti-inflamator that has worked, I have been on it for ears yet Wermer stated no indicatin in file, canhe read? Did you even bother to ead my step 1 and 2, want what I stated, you can not magiclaly cure me with a us ride, these grievances are a wasty of time, you do nothing, say nothing and do not espond to issues raised, but I will play your game and do as required by filing rievances, if you can't tell I have serious limiiting hand problmes then you hould not be in medical and definately not in your position. Lets see what the outs say, you feel no obligation to fix or accommodate damage your officer causd n rape and physial assault.

**TO BE COMPLETED BY OFFENDER:**
DATE: 3-2-10   OFFENDER SIGNATURE Jill Coit
**TO BE COMPLETED BY GRIEVANCE COORDINATOR:**   ADA-Disability
RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject:
DATE: 3/8/10   SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # E.Bird/Elmo Bird #9901
Date ADA grievance sent to AIC:

RESPONSE

RECEIVED

MAR 1 2 2010

Office of Correctional
Legal Services

| TO BE COMPLETED BY RESPONDER | | |
|---|---|---|
| DATE GRIEVANCE REC'D BY RESPONDER: | RESPONDER-DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE/PRINT NAME & ID # | RESPONSE DATE: |

**TO BE COMPLETED BY OFFENDER**
RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.
If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.
DATE:   OFFENDER SIGNATURE/PRINT NAME & DOC #

Original: Department File/AIC   Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)
Attachment "A"
Page 1 of 1

MAR 0 8 2010

## DENVER HEALTH
# OUTPATIENT ENCOUNTER RECORD

CLINIC SITE: Rheum. Clinic

DATE: 9/3/99 ____ FIN #: ____

CHART LOCATION / PCP: ____

CHART AVAILABLE: ☐ YES   ☐ NO  Adm. # ____

HT. ____ WT. ____ HC ____ AGE 55 LMP ____

TEMP. ____ B. P. ____ P. ____ RR ____

```
2 09 88 63                        F
COIT ,JILL
38855102              06/11/1944
A/O: 09/03/99
PCP:
ARR.MODE:
PT.PHONE : (   )    -
CHRT.LOC: DGOP
```

PREVENTIVE CARE/IMMUN. UP TO DATE: ☐ YES   ☐ NO   CURRENT PHONE #:

TOBACCO EXPOSURE: ☐ YES  ☐ NO

MED ALLERGIES: See Chart

MEDICATIONS:

SUBJECTIVE / OBJECTIVE

55 y.o. ♀ c̄ PMHx "Arthritis", Ⓡ hip prosthesis, c/o joint pains / MS pains chronic — sent by Correctional Care for further eval. Pt. mostly complains of Ⓑ hand/fing. pain, but also notes Ⓑ elb/shoulder/neck/low-back/hip L>R/knee L>R, ⊕ AM stiffness x 30m-1 hr, ⊕ gel, ⊕ fatigue; Hx c̄ js wearing Ⓑ braces, Hx of Ⓛ knee arthroscopy 2° meniscal tear, awg to many meds — currently on nothing for pain, Hx trauma

PE: HR @ 70 / NAD
WN/WH ♀; mmm
lungs CTA Ⓑ
cv regular
Ⓑ wrist braces / ∅ wrist swelling
fingers Ⓑ s̄ swelling/erythema
   tender @ Ⓡ CMC jt, ⊕ Finkelst.
   ⊖ Phalen Ⓑ/ ⊖ Tinel Ⓑ
neck c̄ ↓ROM/tense paraspinal
⊖ swelling shoulder/elb/knee/ankle
Ⓑ crep. c̄ knees ↑ from. Lⓑ
intact.
tender trap Ⓛ — otherwise ⊖
   tender points.

X-rays — L-spine c̄ loss of lordosis
   otherwise s̄ signif ev. DJD

ASSESSMENT / PLAN  1983 s/p MVA

① Chronic pain — most likely c̄ 1° relation to traumatic injury c̄ neck/hip Hx, no evid. FM, exam c/w DeQuervan's synovitis Ⓡ + 1st CMC DJD, no evidence carpal T.S., neck c̄ spasm by exam/X-rays.

Recommend:
① Celebrex 100 bid — ↑ to 200 PRN
② Capsasin 0.075% cream qid
③ Ice PM / Heat AM PRN
④ Ⓡ thumb spica splint — D/C current splints
⑤ OT evaluation
⑥ consider 1st CMC injection ∅ review of allg. records
⑦ Flexeril 10 mg — T-TT PO qhs

RETURN VISIT:

CAREGIVER: _____ Johnson   # 090779

ATTENDING: David H. Collins   # 042168

EXHIBIT ____

156

## ORTHOTIC PATIENT NOTES

**Patient Name:** Jill Coit                              **Date:** 6/12-08
**Orthotic Device:** (B) WHFO                            **Side:** Wrists
**Diagnosis:** Carpal tunnel syndrome
**Physician:** Dr. Martinez-Hochbe
**Occupation:**
**Hobbies/Interest:**
**Height:** 5'6"   **Weight:** 152 lbs   **Age:** 63 yo        **Language:** English

### SUBJECTIVE
Patient states the goal is " fitting and delivery of (B) WHFOs and ½" internal shoelift (L) leg.

### OBJECTIVE
1. Where was the patient seen: office
2. How did the patient arrive: with care
3. Who accompanied the patient: guards
4. Skin status:   Intact   (Compromised) (what and where)  (R) wrist swollen

5. ROM and muscle strength: —

6. Brief medical history including complicating factors in addition to diagnosis: —

7. Main purpose of this visit: Fitting and delivery of her (B) WHFOs. She received Thermal RX – D-ring WHFO size SMALL, (R) x lea and (L) x lea.
8. Extend of service provided during THIS visit: ½" internal shoelift installed in (L) shoe to compensate leg length descrepancy. The
9. List appropriate verbal or written instructions given to the patient / care giver: expected 1½" needed lift do not fit in her shoes. Pt in process to try to get orthopedic shoes that the 1½" lift could be installed.
10. Did the patient / care giver understand the instructions: YES   NO

### ASSESSMENT
Pt advised to wear her WHFOs as much as she needs to.
The patient assessment

I recommend that she continues heat packs to her wrists and would use speech recognizing program for typing instead of her hands on keyboard. This was documented

### PLAN   in her facility file.
1. Is follow-up appointment scheduled: YES  (NO)
2. Date for next appointment: as needed
3. Adjustment completed: (YES)  NO   The patient instructed to contact office if additional service is required.
4. Delivery completed: (YES)  NO   The patient instructed to contact office if additional service is required.


**Practitioner Signature** Caitn Baucur CP   **Date** 6/12-08


EXHIBIT ____4____

Page 1 of 1

## Colorado Department of Corrections
### Consultation Report Form

Appt#: 99906

Run Date: 04/25/2008 12:14

*REQUESTED*

| | | |
|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 04/25/2008 |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/11/1944 |
| Level: 1 MONTH | Tele-Med: NO | Provider: MARTINEZ-HOCHBE, YVETTE M , | SDD: 03/16/3004 |
| Request: DME | Auth #: | Number of Visits: 1 | PED: 03/26/3004 |
| Location: ACTION POTENTIA | Appt Dt: | Specialist: | DH #: 2098863 |

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: 61 y/o female with persistent thumb and wrist pain, x-rays, osteoarthritis , on examination motor 3/5 unable to grasp fully due to wrist and thumb pain, suspect chronic tendon sprain s/p injury-thumbs pulled back during an assault-works in graphic design in prison and affects her work. Hurts to write.
2. MILLIMAN CARE GUIDELINES - CRITERIA MET:yes
3. URGENCY OF NEED V. REMAINING SENTENCE: life w/o parole
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY:will improve mobility-pt uses a cane-tried the orthoclast braces her in clinic but were too bulky, she has older set of braces which she was given but no longer given through DOC due to security-metal plates removed
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION:no
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE:orthoclast braces were not feasible as offender uses cane -not a compliant material
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT:yes
8. PAIN COMPLAINTS/BEHAVIOR: pain in wrists and thumbs
9. RISK AND/OR COST BENEFIT: increase stability and decrease wrist pain with cane use-uses cane for chronic knee injur

| ICD | | CPT | |
|---|---|---|---|
| V68.01 | DISABILITY EXAMINATION | | |
| 702.19 | OTHER SEBORRHEIC KERATOSIS | | |
| 735.4 | OTHER HAMMER TOE | | |

| | | |
|---|---|---|
| Provider Signature: | *Electronically Signed* | Date: 04/25/2008  12:14 |
| Provider Name: | MARTINEZ-HOCHBE, YVETTE M , MD | ymmartin |

EXHIBIT _____

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Physician Health Partners  Phone: (866) 362-1374   FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

ADMINISTRATIVE
Page 1 of 2

Printed at: 06/27/2006 13:37:48
Encounter#: 1224860 @ DW

# AMBULATORY HEALTH RECORD

| 86530 | COIT, JILL | | Facility: DW   LU: DW/UNIT2 | 1 | D | 126 | L |

**SUBJECTIVE**

Active Medication(s): ASA ENTERIC - 325 MG; DIPROSONE CR-45GM - 0.05%; LIORESAL - 10 MG; MEVACOR - 20 MG; ZOMIG - 2.5 MG

Temperature: ____   Pulse: ____   Weight: ____

Respiratory: ____   BP: ____ / ____

**PLANS / ORDERS**

Allergies: PENICILLIN G

☐

☐ Please exchange state issue green shirt for new shirts due to wear and tear of old green shirt. (the old one has a significant rip in it).

**OBJECTIVE**

Jill was here for several items.
1. Had injured her back on Sunday--she slipped on floor. Has a bruise on her lower back and she is concerned that she broke a rib.
She has right shoulder pain and is unable to lift her right arm to perfomr her daily activities. She has provided me with her MRI report documenting the right shoulder injury. Will obtain an orthopedic consult.
Also concerned about her right hand (history of arthritis). Unable to wirtie with rht right hand. Today her right thumb joint is swollen and she complains of pain is present all the time.

☐ Ok given for shower shoes and bre extension.

☐ Self purchase for above items.

☐ Back X-RAY at DRDC (post fall)

☐ ok for her to use computer-voice activiated program due to hand deformity and arthriis.

**ASSESSMENT**

V68.89 - ENCOUNTERS OTHER SPEC ADMINISTRATIVE PURPOSE OTH
88325 - CONSLTJ COMPRE REVIEW REPRT REFERRED MATRL

☐ Dietary Consult done.

☐ D/C - Rx#:  2071423  Drug Brand Name: ASA ENTERIC - 325 MG   Alternate Name: ENTERIC COATED ASPIRIN  Rx Date: 06/16/2006  Disc Date: 06/27/2006 Rx Instructions: ONE TABLET DAILY

☐ NEW - Rx#:  2075148  Drug Brand Name: FOSAMAX - 70 MG   Alternate Name: ALENDRONATE  Rx Date: 06/27/2006  Disc Date: 09/25/2006  Rx Instructions: ONE TABLET WEEKLY--FOLLOW DIRECTIONS.

EXHIBIT _____

☐ NEW - Rx#:  2075152  Drug Brand Name: ASA ENTERIC - 325 MG  Alternate Name: ENTERIC COATED ASPIRIN  Rx Date: 06/27/2006  Disc Date: 09/25/2006  Rx Instructions: ONE TABLET DAILY

Datetime:
06/27/2006 13:07

Providers: NOLA, NANCY D

EXHIBIT _____

PA/NP/RD _____   PHYSICIAN _____   NURSE _____
Datetime: 06/27/2006 13:07        Provider: NOLA, NANCY D        DateTime _____

213

**Col    Department of Corrections**                                    Page 1 of 1

Appt#: 97511                      **Consultation Report Form**        Run Date: 03/04/2008 11:24
                                                                       **REQUESTED**

| | | |
|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 03/04/2008 |

Gender: FEMALE          Security: MINIMUM RESTRICTIVE       SSN: 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    DOB: 06/11/1944

Level: 1 MONTH          Tele-Med: NO          Provider: MARTINEZ-HOCHBE, YVETTE M ,    SDD: 03/16/3004

Request: DME            Auth #: _____        Number of Visits:  1       PED: 03/26/3004

Location: ACTION POTENTIA    Appt Dt: _____    Specialist: _____    DH #: 2098863

### Diagnosis and requested evaluation or care:

1. CLINICAL INFORMATION: pt in spica splints w/ wrist component/support-attempted to make spica splints similar to these w/ orthoclass and unable to do-interfer with ability to use cane
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: YES
3. URGENCY OF NEEDV. REMAINING SENTENCE: LIFE W/O PAROLE
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: UNABLE TO USE THUMBS AND WRIST DUE TO PAIN S/P SEXUAL ASSAULT
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: NO
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: NONE-UNABLE TO MAKE SPLINTS W// WHAT IS AVAILABLE IN CLINIC
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT:YES
8. PAIN COMPLAINTS/BEHAVIOR: SPLINTS-CANNOT USE CANE
9. RISKAND/OR COST BENEFIT: C/O OF WRIST PAIN AND THUMB PAIN

Subjective: Active Medication(s): ASPIRIN  CHEWABLE - 81MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP: 5/5/08***; CHLOR-TRIMETON - 4MG - ONE TABLET TWICE DAILY AS NEEDED; ELAVIL - 50 MG - ONE TABLET DAILY; FOSAMAX - 70 MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; OYST-CAL-D - 500MG/200 IU - ONE TABLET DAILY EXCEPT DAYS WHEN TAKING FOSAMAX; ZOCOR - 10MG - ONE TABLET DAILY; ZOMIG  ZMT - 2.5 MG - 2.5MG AT ONSET, MAY REPEATIN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MO (NO SELF MED)

pt in to have spica/wrist splints made from orthoclase-
c/o of uti w/ burning on urination, no frequency , no n/v/f/c
c/o of vaginal d/c reddish

Objective: spica splints constructed from orthoclase but unable to give support to wrists as well

patient unable to hold onto cane securely w/ splint as need to wrap orthoclase around thumb-thicker than previous splint material

ua positive for blood

Assessment:
729.5 - PAIN IN SOFT TISSUES OF LIMB
595.0 - ACUTE CYSTITIS

ICD ─────────────────────┬────── CPT ──────────────────

Patient measured and evaluated bilateral WHFO. (R) thumb area slight swelling and pain to touch. Once authorization received fitting and delivery will take place. Pt should ice her wrists and thumb once swelling occurs. If questions call Carith Bachman, CP OPS 303.716.0796

Pt fitted and delivered with her prefabricated WHFOs today. The wristbrace use is fine. Also the speech recognizing software program is more preferable for typing instead of using keyboard. If questions call Carth Bachman @ 303 716 0796.

Pt received 1/2" shoelift in her shoe today

Caite Bauer CP 5/27-08

Please do not discuss dates of the follow-up appointments with the offender.

Insurance:  Physician Health Partners  Phone: (866) 362-1374  FAX: (866) 362-1375

Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

Appt#: 63911

## Colorado Department of Corrections
## Consultation Report Form

Page 1 of
Run Date: 06/29/2005 06:

| | | |
|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW | Date Initiated: 06/29/200 |

DOC #: 86530    Name: COIT, JILL    Facility: DW    Date Initiated: 06/29/200

Gender: FEMALE    Security: MINIMUM RESTRICTIVE    SSN: 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    DOB: 06/11/194

Level: 1 MONTH    Tele-Med: NO    Provider: RAZZAGHI, MITRA A , MD    SDD: 03/26/300

Request: DME    Auth #:    Number of Visits:    1    PED: 03/26/300

Location: DEN-WOMENS    Appt Dt:    Specialist:    DH #: 2098863

### Diagnosis and requested evaluation or care:

1. CLINICAL INFORMATION:  This a request for replacement of worn out bilateral wrist braces ( for severe carpal tunnel syndrome and deformity due to severe DJD) as well as replacement of worn out shoe lift ( due to 1.5 inch leg length discrepancy), Both DMEs are more than 1 year old and have been approved multiple times before. thank you.

2. MILLIMAN CARE GUIDELINES - CRITERIA MET: yes
3. URGENCY OF NEED V. REMAINING SENTENCE: life time sentence
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: great morbidity and functional disability
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: n/a
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: most conservative way
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT: yes
8. PAIN COMPLAINTS/BEHAVIOR: none
9. RISK AND/OR COST BENEFIT: no risk

| Provider Signature: | *Electronically Signed* | Date: 06/29/2005 06:08 |
|---|---|---|
| Provider Name: | RAZZAGHI, MITRA A , MD | m11204 |

### Specialist's Subjective, Objective, Assessment Plan:

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Access Correctional Care   Phone: (888) 380-3726   FAX: (877) 232-5976
Please send all dictated reports to: Clinical Services - Dept of Corrections - 2862 S Circle Dr, Colorado Springs, CO 809xx
Or FAX to:

**Col⟨ ⟩ Department of Correctio⟨ ⟩**
**Consultation Report Form**

**Appt#: 102520**

*REQUESTED*

| | | | |
|---|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 06/27/2008 |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/11/1944 |
| Level: 1 MONTH | Tele-Med: NO | Provider: MARTINEZ-HOCHBE, YVETTE M , | SDD: 03/16/3004 |
| Request: ORTHOPEDIC | Auth #: | Number of Visits: 1 | PED: 03/26/3004 |
| Location: DENVER HEALTH | Appt Dt: | Specialist: | DH #: 2098863 |

**Diagnosis and requested evaluation or care:**
will look up  EMG from 2007

*EMG faxd 7/9/08 HV* (handwritten)

VICTOROFF, HILARY S ( hsvictor )  7/9/2008 15:51:28
=================================
1. CLINICAL INFORMATION: 64 y/o female with persistent dequervan's in spite of splinting, seeexamination below, needs ortho referral-pt declines injections-was injected in past w/o help? surgical repair needed ?
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: yes
3. URGENCY OF NEED V. REMAINING SENTENCE: 3004
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY:uses cane difficult to hold cane with splints and pt has right> left pain with right forearm atrophy
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION:no
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE:none
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT:yes
8. PAIN COMPLAINTS/BEHAVIOR: chronic thumb pain
9. RISK AND/OR COST BENEFIT: increase mobility

Subjective: Active Medication(s): ASPIRIN  CHEWABLE - 81MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP: 10/7/08***; CHLOR-TRIMETON - 4MG - ONE TABLET TWICE DAILY AS NEEDED; FOSAMAX - 70MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; LIORESAL - 10 MG - ONE TABLET TWICE DAILY PRN FOR HIP PAIN; OYST-CAL-D - 500MG/200 IU - ONE TABLET DAILY EXCEPT DAYS WHEN TAKING FOSAMAX; PREMARIN VAG CR - .625MG/GM - VAGINALLY  1/2 APP FULL 2 X WEEKLY FOR VAG ATROHPY.; SINEQUAN - 25 MG - ONE CAPSULE AT BEDTIME; ZOCOR - 10MG - ONE TABLET DAILY; ZOMIG  ZMT- 2.5 MG - 2.5MG AT ONSET, MAY REPEAT IN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MO

dme referral fro replacement of leg brace.
pt w/ referral to urology pending
pt w/ ophthalmology pending

back problem persists
ortho appt

seen by podiatry -wasseen interim by ortho and will see podiatry back

hands-needs separate ortho eval for this
pt declines injection-did in past w/o help- mid 1990's  wears bilateral spica splints and wrist hurt all the time, removes braces only when eats. but wears themall other times
right > left pain

Objective: msk base of right and left thumbs tender on palpation, base of right thumb with edema today, unable to dothumb to finger touch right > left, unable to close or make fist completely , flexion wrist 35degrees and extension 45 degrees, left 45 degrees flexion and extension, pulses 4/4, right forearm atrophy vs left, sensory intact

Assessment:
599.7 -HEMATURIA
377.75 - D/O VISL CORTXW/CORTICAL BLINDNESS
959.6 - INJURY OTHER&UNSPECIFIED HIP&THIGH
~~727.00 - 727.00 - UNSPECIFIED SYNOVITIS&TENOSYNOVITIS - U/C OF DEQUERVAN'S~~

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Physician Health Partners  Phone: (866) 362-1374  FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

STATE OF COLORADO
DEPARTMENT OF CORRECTIONS
CONSULTATION REPORT FORM

OFFENDER INFORMATION:                              Date: 07/17/2003

Name: COIT, JILL          DOC #: 86530      Facility: DEN-WOMENS

DOB: 06/11/1944     SSN: 434622141    Gender: FEMALE    PED: 03/26/3004

Insurance: COLORADO ACCESS FOR COLORADO DEPARTMENT OF CORRECTIONS

Authorization #:                      # Visits Authorized:        1

Appointment is to be scheduled with Tele-medicine?: NO

PROVIDER'S CONSULT TO SPECIALIST:

Hospital: ONSITE CLIN-NOR  Clinic: ABILITIES UNLIM. Specialist:

Hospital #: _____     Appt: _____    Priority: 4  TWO MONTHS

Diagnosis/Health Complaint:
    PT NEEDS R THUMB SPICA SPLINT DUE TO SEVERE DJD AND ~~DEFORMITY~~

Provider Signature: _____    Facility Physician: _~signature~_

SPECIALIST'S SUBJECTIVE, OBJECTIVE, ASSESSMENT, PLAN:

_____

_____

_____

_____

_____

_____

* PLEASE COPY CLINIC NOTES AND ATTACH TO THIS CONSULT.
* DO NOT DISCUSS DATES OF FOLLOW-UP APPOINTMENTS WITH THE OFFENDER.
* RETURN THIS COMPLETED FORM TO THE SECURITY OFFICER ESCORTING THE OFFENDER.
* PLEASE SEND ALL DICTATED REPORTS TO:

    CTCF Clinical Services   PO Box 1010   Canon City, CO  81212
        Ph: 719-269-4089    Fax: 719-269-4092

Specialist: _____    Name: _____   _____
              (Signature)                  (Print)              (Date)



# Message from Medical

NAME: _Coit, Gil_

DOC #: _86530_

UNIT: _7_

DATE: _3/8/01_

EXHIBIT _____

EXHIBIT ___11___

Gil —

① You may have Total Sm today for pain if you so desire.

② I will see you tomorrow to assess "fell again" issue + ℝ hand symptoms.

③ Any further OMT is inappropriate until you have on-going therapy for your unresolved emotional issues.

Thank you

Signed: _____

④ Wear wrist splint, ℝ + use your ℒ hand for activities requiring twists.

Dr S____

# Colorado Department of Corrections
## Consultation Report Form

REQUESTED

**Appt#:** 97512                                    **Facility:** DW/UNIT2          **Date Initiated:** 03/04/2008

**DOC #:** 86530    **Name:** COIT, JILL           **SSN:** 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    **DOB:** 06/11/1944

**Gender:** FEMALE      **Security:** MINIMUM RESTRICTIVE                   **SDD:** 03/16/3004

**Level:** 1 MONTH       **Tele-Med:** NO    **Provider:** MARTINEZ-HOCHBE, YVETTE M    **PED:** 03/26/3004

**Request:** DME       **Auth #:** ___    **Number of Visits:** 1          **DH #:** 2098863

**Location:** ACTION POTENTIA      **Appt Dt:** ___    **Specialist:** ___

### Diagnosis and requested evaluation or care:

1. CLINICAL INFORMATION: RESUBMISSION OF PREVIOUS CONSULT FOR EVALUATION, FITTING AND PROVISION FOR SPICE/WRIST SPLINT-UNABLE TO MAKE SPLINTS OUT OF ORTHOCLASE HERE IN CLINIC
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: YES
3. URGENCY OF NEED V. REMAINING SENTENCE: LIFE W/O PAROLE     FUNCTIONAL DISABILITY: UNABLE TO HOLD CANE
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: UNABLE TO HOLD CANE AND WALK WITH SPLINTS MADE FROM ORTHOCLASE--TOO THICK A MATERIAL
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: NO S/P INJURY SEXUAL ASSAULT WHILE INCARCERATED
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE: ORTHOCLASE NOT SUCCESSFUL
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT: YES
8. PAIN COMPLAINTS/BEHAVIOR: PAIN
9. RISK AND/OR COST BENEFIT: CONTINUED CHRONIC PAIN TO THUMBS AND WRISTS-

| ICD | | CPT | |
|-----|------|-------|------|
| V68.89 | ENCOUNTERS OTH SPEC ADMIN PRPOS OTH | 88325 | COMPREHENSIVE REVIEW OF DATA |
| | | | |
| | | | |
| | | | |

| | | **Date:** 03/04/2008  11:33 |
|---|---|---|
| **Provider Signature:** | *Electronically Signed* | ymmartin |
| **Provider Name:** | MARTINEZ-HOCHBE, YVETTE M , MD | |

Please do not discuss dates of the follow-up appointments with the offender.

Insurance:  Physician Health Partners  Phone: (866) 362-1374   FAX: (866) 362-1375

Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003

FAX to your Scheduler @ 719-583-5832

**Colorado Department of Correction**

## Consultation Report Form

**Appt#: 97811**

| | | | |
|---|---|---|---|
| DOC #: 86530 | Name: COIT, JILL | Facility: DW/UNIT2 | Date Initiated: 03/10/2008 |
| Gender: FEMALE | Security: MINIMUM RESTRICTIVE | SSN: 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 | DOB: 06/11/1944 |
| Level: UPTO 2 MNTHS | Tele-Med: NO | Provider: MARTINEZ-HOCHBE, YVETTE M , | SDD: 03/16/3004 |
| Request: ORTHOPEDIC | Auth #: | Number of Visits: 1 | PED: 03/26/3004 |
| Location: DENVER HEALTH | Appt Dt: | Specialist: | DH #: 2098863 |

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: request denied for ortho-I faxing mri result from 6/15/04. as well
2. MILLIMAN CARE GUIDELINES - CRITERIA MET: yes,Orthopedic surgeon for ANY ONE of the following: knee MRI showing mariscal tear or anterior collateral ligament tear

3. URGENCY OF NEED V. REMAINING SENTENCE: life
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY: using cane to get around, used to use wheelchair
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION: no s/o assault
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE:none
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT:yes
8. PAIN COMPLAINTS/BEHAVIOR: knee pain
9. RISK AND/OR COST BENEFIT: repair knee increase mobilization

Subjective: Active Medication(s): ASPIRIN  CHEWABLE - 81MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP: 5/5/08***; CHLOR-TRIMETON - 4MG - ONE TABLET TWICE DAILY AS NEEDED; ELAVIL - 50 MG - ONE TABLET DAILY; FOSAMAX - 70MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; MACRODANTIN - 100 MG - ONE TABLET TWICE DAILY X  3 DAYS; OYST-CAL-D - 500MG/200 IU - ONE TABLET DAILY EXCEPT DAYS WHEN TAKING FOSAMAX; ZOCOR - 10MG - ONE TABLET DAILY; ZOMIG  ZMT - 2.5 MG - 2.5MG AT ONSET, MAY REPEAT IN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MO (NO SELF MED)

Objective: ortho referral denied
will fax mri results of knee from 6/14/05
pt uses cane to get around after being in wheelchair


Assessment:
V68.89 - ENCOUNTERS OTH SPEC ADMIN PRPOS OTH
88325 - COMPREHENSIVE REVIEW OF DATA

| ICD | | CPT | |
|---|---|---|---|
| V68.89 | ENCOUNTERS OTH SPEC ADMIN PRPOS OTH | 88325 | COMPREHENSIVE REVIEW OF DATA |

| | | | |
|---|---|---|---|
| **Provider Signature:** | *Electronically Signed* | | **Date:** 03/10/2008  13:11 |
| **Provider Name:** | MARTINEZ-HOCHBE, YVETTE M , MD | | ymmartin |

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Physician Health Partners  Phone: (866) 362-1374   FAX: (866) 362-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54. Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO. | NAME: Coit, Jill | OFFENDER NO. 86530 | LIVING UNIT DWCF

SUBJECTIVE: ~~Stay (5 days~~) wants to D/C ~~mast splint~~ aim Benadryl. C/o dry mouth. Still wants prn dose.

DATE 12/6/1 | TIME

PROBLEM 1 2 ___
PLAN / ORDERS

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___ /

Frank L-S spine.
TTP ® dorsal midid mist H-dermatous

ASSESSMENT:
① ®UE radiculopty
② Chronic LBP
③ 2nd degree burn
④ Dry Mouth

SIGNATURE:
NURSE: [signature] 12/6/01 1615
P.E:
PHYSICIAN:
Rx NO.

---

PRICARE CODE NO. | NAME: Coit, Jill | OFFENDER NO. 86530 | LIVING UNIT DWCF

SUBJECTIVE: wants request for chai – says she already has. Also wants ®CTS wrist cock-up splints, long underwear, cervical pillow. Claims Rx'd by Dr. Smith, Ortho - NCS/EMG's pending.

Pt also requests special diet for diverticulitis, controlled hypoglycemia. Needs to eat q 4° ~~with water~~ and wants 2 fruit fruits, cereal, milk.

2mg burn to ® 3ml dressing, circumferential

ASSESSMENT: Chronic T-spine pain. ®UE radiculopathy. jumped from ladder 1995 - fall. Chronic LBP ē movement.

DATE 12/6/1 | TIME

PROBLEM 1 2 ___
PLAN / ORDERS

① D/C Benadryl 20'z BID
② Benadryl 25'z pr q HS prn x 3months
③ ~~Ultram 50'z BID prn x 3months~~

SIGNATURE:
NURSE: [signature] 12/6/01 1615
P.E:
PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

PLAINTIFF'S EXHIBIT 7A

84 9.

05/20/2008  10:27    3037160790              CARITA BACKMAN                              PAGE  02/07

## Colorado Department of Corrections
### Consultation Report Form

| | | | Page 1 of 1 |
|---|---|---|---|
| **Appt#:** 99906 | | | Run Date: 05/15/2008 13:28 |
| | | | *FAXED TO PHP* |

**DOC #:** 86530    **Name:** COIT, JILL    **Facility:** DW/UNIT2    **Date Initiated:** 04/25/2008

**Gender:** FEMALE    **Security:** MINIMUM RESTRICTIVE    **SSN:** 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    **DOB:** 06/11/1944

**Level:** 1 MONTH    **Tele-Med:** NO    **Provider:** MARTINEZ-HOCHBE, YVETTE M.    **SDD:** 03/16/3004

**Request:** DME    **Auth #:** 86530    **Number of Visits:** 1    **PED:** 03/26/3004

**Location:**    **Appt Dt:** 5/27/1115    **Specialist:**    **DH #:** 2098863

**Diagnosis and requested evaluation or care:**

1. CLINICAL INFORMATION: 61 y/o female with persistent thumb and wrist pain, x-rays, osteoarthritis , on examination motor 3/5 unable to grasp fully due to wrist and thumb pain, suspect chronic tendon sprain s/p injury-thumbs pulled back during an assault-works in graphic design in prison and affects her work, Hurts to write.
2. MILLIMAN CARE GUIDELINES ∗CRITERIA MET:yes
3. URGENCY OF NEED V. REMAINING SENTENCE: life w/o parole
4. MEDICAL NECESSITY: MORBIDITY, MORTALITY AND/OR FUNCTIONAL DISABILITY:will improve mobility-pt uses a cane-tried the orthoclast braces her in clinic but were too bulky, she has older set of braces which she was given but no longer given through DOC due to security-metal plates removed
5. PRE-EXISTING CONDITION PRIOR TO INCARCERATION:no
6. ALTERNATIVE THERAPY/PROCEDURE, WHICH MAY BE APPROPRIATE:orthoclast braces were not feasible as offender uses cane -not a compliant material
7. PATIENT'S DESIRE FOR THE PROCEDURE/LIKELIHOOD OF THE PATIENT'S COOPERATION IN TREATMENT:yes
8. PAIN COMPLAINTS/BEHAVIOR: pain in wrists and thumbs
9. RISK AND/OR COST BENEFIT: increase stability and decrease wrist pain with cane use-uses cane for chronic knee injury

| -ICD | | CPT | |
|---|---|---|---|
| 702.19 | OTHER SEBORRHEIC KERATOSIS | 99214 | OFFICE/OUTPATIENT VISIT, EST |
| 735.4 | OTHER HAMMER TOE | | |
| V68.01 | DISABILITY EXAMINATION | | |

| **Provider Signature:** | *Electronically Signed* | **Date:** 04/25/2008  12:14 |
|---|---|---|
| **Provider Name:** | MARTINEZ-HOCHBE, YVETTE M , MD | ymmartin |

DATE AUTHORIZED 4/30/08
DATE SPECIAL CONTACTED
1st 5/20/08  2nd            3rd
DATE APPT RCV'D 5/20/08

Please do not discuss dates of the follow-up appointments with the offender.
Insurance:  Physician Health Partners  Phone: (866) 382-1374  FAX: (866) 382-1375
Please send all dictated reports to: Clinical Services - Dept of Corrections - 1410 W. 13th Street, Building 54, Pueblo, CO 81003
Or FAX to your Scheduler @ 719-583-5832



# Physician Health Partners

Collaborate, Innovate, Make a Difference

## Claims Voucher Statement

**Accounting Cycle:** CDC 062608

**Vendor:** ORTHOTIC PROSTHETIC SOLUTIONS
1015 ROBERTSON STREET

FORT COLLINS CO 80524

**Provider:** ORTHOTIC PROSTHETIC SOLUTIONS,

**Provider ID:** 2700298880RTPRO

**Check(s) #:** 15576

**Appeals:** Physician Health Partners
Appeals
PO Box 1648
Denver, CO 80201-1648

**Claims:** Physician Health Partners
Appeals
PO Box 1738
Denver, CO 80201-1738

**Patient:** COIT, TIM
**Payer:** CDC

**Member ID:** 86530

**Benefit Contract:** DW
**Contract Type:** POPM

**Claim ID:** 061920008cd10004    **Invoice #:**    **Authorization #:**    **Patient Control #:** 0000017585

| Proc Code | Proc Code Description | Units | Date of Service | EOB Code | Charges | Contracted | Withhold | Mgmt Fee | Write off | COB | Patient Responsibility | | | Net Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Ded | Copay | Coins | |
| L3807: WHFO W/O INT PREFAB W/FIT&ADJS TYPE | | 2 | 6/12/2008 | | $555.44 | $424.93 | $0.00 | $0.00 | $130.51 | $0.00 | $0.00 | $0.00 | $0.00 | $424.93 |
| **Claim Total:** | | | | | $555.44 | $424.93 | $0.00 | $0.00 | $130.51 | $0.00 | $0.00 | $0.00 | $0.00 | $424.93 |

**Patient:**
**Payer:** CDC

**Member ID:**

**Benefit Contract:** DW
**Contract Type:** POPM

Printed On: 6/27/2008          Page: 1 of 2          Standard Report          Last Modified: 6/27/2008

Printed By: tpa_steinhoff

**FOLLOW-UP**

**DEPARTMENT OF CORRECTION** ed By: MARTINEZ-HOCHBERG, YVETTE M

**AMBULATORY HEALTH RECORD**

Page 1 of 1

Printed at: 06/27/2008 09:01:56

Encounter#: 1705181 @ DW

| 86530 | COIT, JILL | Facility: | DW | LU: | DW/UNIT2 | i | D | 126 | L |

## SUBJECTIVE

Active Medication(s): ASPIRIN CHEWABLE - 81MG - ONE TABLET DAILY; CELEBREX - 100 MG - TWO CAPSULES DAILY ***NON-FORM EXP: 10/7/08***; CHLOR-TRIMETON 4MG - ONE TABLET TWICE DAILY AS NEEDED; FOSAMAX - 70 MG - ONE TABLET WEEKY--FOLLOW DIRECTIONS; LIORESAL - 10 MG - ONE TABLET TWICE DAILY PRN FOR HIP PAIN; OYST-CAL-D - 500MG/200 IU - ONE TABLET DAILY EXCEPT DAYS WHEN TAKING FOSAMAX; PREMARIN VAG CR - .625MG/GM - VAGINALLY 1/2 APP FULL 2 X WEEKLY FOR VAG ATROHPY.; SINEQUAN - 25 MG - ONE CAPSULE AT BEDTIME; ZOCOR - 10MG - ONE TABLET DAILY; ZOMIG ZMT - 2.5 MG - 2.5MG AT ONSET, MAY REPEAT IN 2 HR IF NEEDED MAX DOSE 10MG/DAY-30MG/MO

dme referral fro replacement of leg brace.
pt w/ referral to urology pending
pt w/ ophthomolgy pending

back problem persists-awaiting medical shoes
ortho appt

seen by podiatry -was seen interim by ortho and will see podiatry back

hands-needs separate ortho eval for this
pt declines injection-did in past w/o help- mid 1990's wears bilateral spica splints and wrist hurt all the time, removes braces only when eats. but wears them all other times right > left pain

## OBJECTIVE

msk base of right and left thumbs tender on palpation, base of right thumb with edema today, unable to do thumb to finger touch right > left, unable to close or make fist completely , flexion wrist 35 degrees and extension 45 degrees, left 45 degrees flexion and extension, pulses 4/4, right forearm atrophy vs left, sensory intact

## ASSESSMENT

599.7 - HEMATURIA
377.75 - D/O VISL CORTXW/CORTICAL BLINDNESS
959.6 - INJURY OTHER&UNSPECIFIED HIP&THIGH
727.00 - 727.00 - UNSPECIFIED SYNOVITIS&TENOSYNOVITIS - H/O OF DEQUERVAN'S-feel condition is worsened due to prolonged immobility in splints
99214 - OFFICE/OUTPATIENT VISIT, EST

| Temperature: | 98.3 | Pulse: | 85 | Weight: | |

Respiratory: 20    BP: 110    60

Vitals Taken: PULSE OXSYM=96.00;

**PLANS / ORDERS**

Allergies: PENICILLIN G

ortho referral

bilateral hand, thumb x-ray 6/30/08

await urology appt

EXHIBIT

recommend rom exercises for hands under warm water bid to decrease problems due to chronic braces and decreased mobility issues of wrists

recommend no typing or writing

Outside Consultation#: 102520 - Level: 1 MONTH - Request: ORTHOPEDIC - Location: DENVER HEALTH

Medical Housing Restrictions: Added: OTHR EQUIP - pt should not type or write except for signing;

| Datetime: | Providers: | MARTINEZ-HOCHBE, YVET |
| 06/27/2008 08:27 | | |

PA/NP/RD _____   PHYSICIAN _____   NURSE _____

Printed by: HARRELSON, JAMIE
Printed at: 02/08/2006 09:10:16

FOLLOW-UP
Page 1 of 1

Encounter #: 1143849

| 86530 | COIT, JILL | Facility:  DW  LU: DW/UNIT2 | 1 | D | 126 | L |

**SUBJECTIVE**
Active Medication(s): ASA ENTERIC - 325 MG; BENADRYL - 50 MG; MIDRIN - 65/100/325; XYLOCAINE JELLY - 2%

Temperature:  97.7      Pulse:  94      Weight:  163

Respiratory:            BP:  110 / 84

Vitals Taken: PULSE OXSYM=95.00;

**PLANS / ORDERS**

Allergies: PENICILLIN G

advised the patient of her carotid doppler studies.

**OBJECTIVE**

Due to the patients physical limitations the patients needs to have her legal papers waist high and also needs assistance w/ bathing and other activities of daily activities.

**ASSESSMENT**

EXHIBIT _____

Datetime:                 Providers:  HARRELSON, JAMIE
02/08/2006 08:56

PA/NP/RD _____     PHYSICIAN _____     NURSE _____
Datetime: 02/08/2006 08:56         Provider: 5053          DateTime _____

DC Form 850-04A (12/01/08)

# COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

**OFFENDER MUST COMPLETE:** Is this grievance related to your disability/diabetes or other ADA matter? Yes ☒ No ☐

**CASE MANAGER MUST COMPLETE:** Does the offender have an ADA alert? Yes ☒ No ☐
Is the subject related to the offender's disability/diabetic condition or other ADA matter? Yes ☒ No ☐
Date received by case manager: 1·28·10 _____ Case Manager: R·Bay

Grievance Number D· ✓ 09/10 - 128 _____ STEP (Circle One) 1 ②  3
D-LV09/10 - 128

| NAME Jill Coit | DOC NO. 86530 | FACILITY/UNIT/POD 1vef |
|---|---|---|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Meaningful Remedy: I think Ms. Baxter needs to check medical records befor stated response no.1. All dr of CDOC have filed on me being disabled in right hand except Dr. Wermers. (2.) Hand disability falls under ADA & can be under Montez in certain circumstances. (3.) That is not an 'Offender Care Aide' job and there is no legitmate penological reason not to allow me computer use for writing due to hand impairment/disability-will OCA do legal work for me-no. (4.) See staffing of 4-5-01 unless magic bus ride changed my conditions and Specialist & CDOC former doctors were all wrong. (5.) DeOuervains is substantiated-check records. You keep throwing up doctors & specialist vistis were years ago but you control dr special-ist visits so, how can you throw that in my face. Older perople do not get magically well or cured because they do not get specialist visits. If you think the courts will think they do then lets go see. Why are you punishing me for trying to be self sufficient, are you trying to stress me out to have another stroke or just retaliating for me telling of sexual abuse in prions. Want what I stated instep 1 and to be left alone with my medical applince & aids-I have-changed when need repa

| TO BE COMPLETED BY OFFENDER: | | |
|---|---|---|
| DATE: 1-27-10 | OFFENDER SIGNATURE: Jill Coit | |

| TO BE COMPLETED BY GRIEVANCE COORDINATOR: | |
|---|---|
| RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: Disability | |
| DATE: 1/28 | SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # E. Bird /Elma Bird #9901 |

Date ADA grievance sent to AIC: Step 2 to HQ- Dir. of Prisons  1/28/10

**RESPONSE**

Please see attached response dated February 18, 2010.

| TO BE COMPLETED BY RESPONDER | | | |
|---|---|---|---|
| DATE GRIEVANCE REC'D BY RESPONDER: 1/28/2010 | RESPONDER-DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE/PRINT NAME & ID # Joan M Shoemaker  #2095 | | RESPONSE DATE: 2-18-10 |

| TO BE COMPLETED BY OFFENDER | |
|---|---|
| RECEIPT: I acknowledge receipt this date of response from the Department of Corrections, to this grievance. | |
| If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual. | |
| DATE: 2-26-10 | OFFENDER SIGNATURE/PRINT NAME & DOC # Jill Coit |

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

**RECEIVED**

Attachment "A"
Page 1 of 1

FEB 25 2010

FEB 04 2010
Office of Correctional
Legal Services

JAN 28 2010

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Division of Clinical Services
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone:   (719) 579-9580
Fax:     (719) 226-4755
Web:     www.doc.state.co.us



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

## MEMORANDUM

To:     Offender Coit,  #86530

From:   Joan M. Shoemaker
        Deputy Director of Prisons, Clinical Services

Date:   February 18, 2010

RE:     Step 2 grievances

On the following dates, you have filed Step 2 grievances concerning a meeting held at the La Vista Correctional Facility on November 17, 2009.   These eight grievances are related to this meeting and all eight were denied at Step 1.

| Grievance number | Date Step 2 Filed | Issue |
|---|---|---|
| D-LV-09/10-120 | 1-15-2010 | Objection to Step 1 grievance response |
| D-LV-09/10-139 | 1-25-2010 | Objection to Dr. Wermer's examination |
| D-LV-09/10-132 | 1-27-2010 | Objection to vision criteria and finding of no vision disability |
| D-LV-09/10-131 | 1-25-2010 | Denial of front closure shirts. |
| D-LV-09/10-130 | 1-27-2010 | Denial of computer under Montez Agreement |
| D-LV-09/10-129 | 1-27-2010 | Removal of hand braces |
| D-LV-09/10-127 | 1-27-2010 | Various issues regarding wheelchair, walking, toilet, etc. |
| D-LV-09/10-128 | 1-27-2010 | Hand disability and computer use |

Your Step 2 grievances are denied for the following reasons:

Grievance #120- The Step 1 response is correct.   This meeting was to discuss your need for certain durable medical equipment and did not discuss all details of your medical history and diagnosis.  The Department reviewed this information with both medical and security staff to ensure that your need for durable medical equipment was accommodated.  You signed a release when you first applied for disability status and this release allows for the ADA Inmate Coordinator to share information with those staff who have a need to know.  Thus, your Step 2 grievance is denied.

Grievance #139- This Step 2 grievance is denied as the medical records indicates that you  have cooperated fully in the examination process.  The records do not support any mistreatment by the facility physician and also indicate that you have been given all opportunities to have your medical concerns

Coit Response
February 19, 2010
Page 2 of 3

addressed. Therefore, this step 2 grievance is denied.

Grievance #132- You have been screened using the criteria to which the attorneys for the plaintiff class and the Department have agreed. The criteria for the screening is the following: " A vision disability is present if the visual acuity is less than 20/60 in the better eye or the visual field is less than 20 degrees in the better eye." The results of your eye exam indicate that you do not meet the criteria. Your eye exam results show that your vision, while wearing your eyeglasses, in your right eye is 20/40 and you have a visual field of 40. In your left eye, you have the ability to perceive light. While you have a vision impairment, your vision is 20/40 with eyeglasses, therefore, your Step 2 grievance is denied because you do not meet the vision disability criteria.

Grievance # 131- The Step 1 grievance response is correct.  First, the Remedial plan does not allow for accommodations for upper mobility disabilities. Second, your medical record indicates in 2007 you were seen by a specialist for your upper extremities. The results of the testing done at that time show that you did not have any abnormal findings.  Your step 2 grievance is denied.

Grievance #130- The Step 1 grievance is correct. The issues concerning your upper extremity disabilities have been addressed in grievance #131. The Montez Remedial Plan does not allow for offenders to receive a computer as an accommodation for any disability. You do not have a need for three pairs of wrist braces. You have been given two braces because your medical needs require two braces.  Medical providers have noted that you are able to move very quickly and rapidly in your wheelchair as well as  your ability to complete your activities of daily living, that is eating, brushing your hair and teeth, showering, etc. If your condition has changed dramatically that you need an Offender Care Aid, your request must first be made to the ADA Inmate Coordinator, thus your Step 2 grievance is denied.

Grievance  #129-  This Step 2 grievance is another lengthy diatribe regarding your overwhelming unhappiness with the ADA Inmate  Coordinator and the medical staff as evidenced by the inappropriate comments written by you . These issues have been a constant theme though the eight grievances being addressed in this memo and do not present any issues for which relief can be granted.  This Step 2 grievance is being denied on procedural grounds.

Grievance #127- The Step 1 grievance response is correct. If you require a wheelchair cushion, please kite the clinic and make an appointment for an evaluation for this cushion. The issues of the special flush toilet, the yellow exercise bands and walking in your unit without your wheelchair have been adequately addressed. The Step 2 grievance is denied.

Grievance 128- The Step 1 grievance response is correct. Your medical record suggests that you been seen in 2007 by a specialist after conducting an electroneurodiagnostic examination which found that you do not have carpal tunnel syndrome in your hands.  Osteoarthriits is a condition that occurs as men and women age.  It does affect the joints and it can be painful.  Your medical provider can work with you regarding hand exercises and other over-the counter pain relief measures. Your step 2 grievance is denied.

These eight grievances contain many of the same issues: your unhappiness with the ADA Inmate Coordinator; medical staff; denial of  disability status regarding vision and upper mobility as well as

Coit Response
February 19, 2010
Page 3 of 3

inappropriate comments regarding staff.  These   issues have been addressed repeatedly and as a result. Administrative Regulation 850-04  allows for the following restrictions   " Offenders who file multiple, frivolous grievances in a short period of time may be served a warning letter, (Attachment "C") by the administrative head, or designee. It will warn them that they are infringing on the rights of others to obtain timely grievance responses."   Your requests for accommodation for your qualified disabilities have been addressed and you have access to medical care, therefore, I will be requesting the administrative head for the facility to consider this request for restrictions on your filing multiple grievances over issues that have been repeatedly addressed.

Cc: L. Reid, Warden-SCCF/LVCF

DC Form 850-04A (12/01/08)

## COLORADO DEPARTMENT OF CORRECTIONS OFFENDER GRIEVANCE FORM

**OFFENDER MUST COMPLETE:** Is this grievance related to your disability/diabetes or other ADA matter? Yes ☒ No ☐

**CASE MANAGER MUST COMPLETE:** Does the offender have an ADA alert? Yes ☒ No ☐

Is the subject related to the offender's disability/diabetic condition or other ADA matter? Yes ☒ No ☐

Date received by case manager: 1-5-10        Case Manager: _Roy Bay_

Grievance Number D-LV09/10-128        STEP (Circle One) ① 2 3

| NAME | Jill Coit | DOC NO. | 86530 | FACILITY/UNIT/POD | LVCF |
|------|-----------|---------|-------|-------------------|------|

Instructions:
1. FILL OUT IDENTIFYING DATA LEGIBLY IN SPACE PROVIDED;
2. CLEARLY STATE BASIS FOR GRIEVANCE OR GRIEVANCE APPEAL;
3. STATE SPECIFICALLY WHAT REMEDY YOU ARE REQUESTING;
4. ATTACH A COPY OF PRIOR STEP(S) AND RESPONSES IN GRIEVANCE PROCESS.

Subject of Grievance and Requested Meaningful Remedy: Montez Accommodation Resolution not acceptable Coit has upper extremity disability as demonstrated by medical records for years due to de Quervain's disease, severe/arthritis in hands and even Montez Final Order of Special Master, page 5 ,".. and perhaps performing manual tasks.". See Coit's request for accommodations dated 3-15-06 for hand aids/accessories/appliances. Coit can not type or write without severe pain and swelling. This has been documented for the last 14 years of incarceration due to Coit being raped by Corrections staff at CVCF and her hand bent back, thumb broken and other physical injures done to her body when she refused to cooperate with his devient sexual demands. NO need for re-evaluation since records supports medical problems/pain/swelling with use. Dr. Wermers making her well on paper due to magical bus ride did not cure her or lessen the disability. Needs assitive mechanical devices. Other CDOC medical staff documented permission and orders for Coit to use computer. Montez allows for computer use but CDOC insist Coit does not meet requirments despite medical records shows otherwise, want computer and prior accommodation reque not enough room to list all problems for hand.

**TO BE COMPLETED BY OFFENDER:**

DATE: 1-3-10    OFFENDER SIGNATURE _J. Coit_

**TO BE COMPLETED BY GRIEVANCE COORDINATOR:**

RECEIPT: I acknowledge receipt this date of a complaint from the above offender in regard to the following subject: _Disability_

DATE: 1/5/10    SIGNATURE/PRINT NAME & DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER ID # _E. Bird / Elma Bird #9901_

Date ADA grievance sent to AIC: _1/06/10_

**RESPONSE**

_See Attached Response_
_Katie Baxter #2429_
_Acting AIC_
_1/14/10_

**TO BE COMPLETED BY RESPONDER**

DATE GRIEVANCE REC'D BY RESPONDER: 1/12/10    RESPONDER-DOC EMPLOYEE, CONTRACT WORKER, OR VOLUNTEER SIGNATURE/PRINT NAME & ID # _Kathleen Baxter / Kathleen Baxter #2429_    RESPONSE DATE: _1/14/_

**RECEIVED**

**TO BE COMPLETED BY OFFENDER**

RECEIPT: I acknowledge receipt this date of a response from the Department of Corrections, to this grievance.

If you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.

DATE: _____    OFFENDER SIGNATURE/PRINT NAME & DOC #

JAN 1 2 2010

Original: Department File/AIC    Copies: Working File, Administrative Head, Offender, Clinical Chart (clinical and ADA only)

Office of Correctional Legal Services

JAN 0 5 2010

Attachment "A"
Page 1 of 1

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Correctional Legal Services
2862 South Circle Drive, Suite 140
Colorado Springs, CO 80906-4195
Phone:   719.226.4245
Fax:      719.226.4249

Office of ADA Inmate Coordinator (AIC)

Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

Response to Step 1 ADA Grievance
From:   Katie Baxter, Designee *K. Baxter*
          Office of the AIC (ADA Inmate Coordinator)
Received Grievance:  January 12, 2010
Sent Response:  January /4, 2010
Offender Name:  COIT, JILL
DOC No:  #86530
Facility:  LVCF
Grievance No:  D-LV09/10-128, D-LV09/10-129, D-LV09/10-130,

**DISABILITY STATUS: Per Accommodation Resolution dated 11/17/09 you were determined NOT TO HAVE a qualifying hearing, vision, upper extremity or mental health disability.**
**Per Accommodation Resolution dated you were determined TO HAVE a qualifying lower extremity mobility disability.**

## In the grievances referenced above, you allege the following:

1.  The grievances referenced above are being combined for purposes of a response.  All three of the grievances contain similar complaints.

2.  You disagree with the finding contained on your current Accommodation Resolution that you do not have an upper extremity disability related to problems with your hands.

3.  In each of the grievances listed above you bring up a diagnosis of DeQuervains disease and arthritis.  And complain of severe pain and swelling in both hands.

## Requested Relief/Remedy:

1a. In S1 Grievance #D-LV09/10-128 you are requesting the disability determined be changed and the DOC recognize your hand problems as a disability.  You wish to be accommodated by being provided access to a computer.

2a. In S1 Grievance #D-LV09/10-129 you are once again requesting that your disability determination be changed and DOC recognize your hand problems as a disability.  You want to be accommodated by allowing you to keep both pairs of hand braces and once again be provided with access to a computer with a dragon program.

3a. In S1 Grievance #D-LV09/10-130 you complain about not being accommodated for the problems with your hands.  You have problems eating with a spork, opening medicine containers, cutting fingernails and toe nails, washing your hair and other hygiene items, you can't tie or twist, grasping is difficult.  You are once again asking for an accommodation of access to a computer and dragon program.  You want DOC to recognize your hand problems as a disability and list certain accommodations on your Accommodation Resolution.

**Following a thorough investigation into your allegations, I offer the following evidence that was considered in reaching a decision:**

1. You have been screened for an upper extremity disability on several occasions. Each time it has been determined that your hand problems do not rise to the level of a disability.
2. Please be advised that upper extremity issues do not fall under the Montez litigation.
3. If your hand problems worsen and are at any considered disabling you will not be provided access to a computer with a Dragon program. You will be provided with an Offender Care Aide to assist you with the activities of daily living you are claiming you cannot perform and to assist you with writing.
4. You do not have a medical need for two pairs of wrist braces. This was determined and agreed upon at the staffing held on 11/17/09. One pair is sufficient.
5. Your continued claim of a diagnosis of De Quervains is unsubstantiated. Per your medical records this was a possible diagnosis at one time per a visiting professor at Denver Health several years ago.
6. No one is claiming the 'bus ride' magically made you well. You will need to continue to work with Clinical Services at LVCF to address this issue.


**CONCLUSION:**


**GRIEVANCES DENIED.**


Cc: AIC File.

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Office of Step 3 Grievance Officer
2862 South Circle Drive, Suite 148
Colorado Springs, CO 80906-4195
Phone:  719.226.4238
Fax:     719.226.4249

Step 3 Grievance Officer



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

April 22, 2010

RE: Grievance #D-LV09/10-128, -130, -131, -132, -139, -133, -138, -120, -127, -129, and -137

Dear Ms. Jill Coit #86530:

I have chosen to respond all of the above noted grievances with this one response.  You were evaluated for hearing, vision, upper extremity, and mental disability and determined not to be disabled.  I cannot second guess the results of that evaluation as I am not a medical professional.  The results indicate that you do meet the criteria to be considered as disabled for any of the above noted disabilities.  You were however found to be mobility disabled and that issue is addressed below.

I have reviewed your Step 3 grievance that you filed with regard to mobility disability status.

In review of this matter it is my finding that in determining whether or not an offender is mobility impaired, each offender is evaluated using a standard criteria pertaining to his or her ability to perform certain tasks related to mobility.  You received such an evaluation by a medical health professional.  I cannot second guess the results of that evaluation as I am not a medical professional.  The results indicate that you do meet the criteria required to be categorized as mobility disabled and you were given an Accommodation Resolution ("AR") dated 11/23/09.  The accommodations provided to you are listed on that resolution. The Chief Medical Office together the Office of the AIC made the determination that the accommodations adequately address your needs.  Based upon the fact that you were evaluated and determined to be disabled and provided with the appropriate accommodations, I cannot recommend any relief in this matter.

It is your burden to prove the allegations stated in your Step 3 grievance. I have reviewed the facts of this case and determined that you did not meet this burden.  There was no corroborating evidence to provide proof of your allegations.

Your request for relief is denied.  This is the final administrative response in this matter and you have exhausted your administrative remedies.

Enclosed please find the following copies of all the materials you provided to me in support of the grievance that you filed: Step 1 Grievance, Step 2 Grievance, and Step 3 Grievance.

Sincerely,

Anthony A. DeCesaro
Grievance Officer

Cc: working file
     grievance file
     Tom Kolle, Offender Records