IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-JLK

JESSE MONTEZ et al.,

Plaintiffs,

v.

BILL RITTER, et al.,

Defendants.

**DEFENDANTS' HEARING BRIEF CONCERNING THE DETERMINATION OF SUBSTANTIAL COMPLIANCE**

Defendants, through the Colorado Attorney General's Office and Hall and Evans, PC, respectfully submit the following Hearing Brief concerning the basis for a determination of Substantial Compliance.

## I. BACKGROUND

On August 27, 2003, Judge Nottingham approved the Remedial Plan between the Colorado Department of Corrections ("DOC") and a certified class of disabled DOC inmates. The Remedial Plan addresses issues raised by certain categories of disabled inmates, namely inmates with mobility, hearing, and vision impairments, as well as inmates with diabetes. The essential purpose of the Remedial Plan is stated in the first Section "Policy": "It is the policy of the Colorado Department of Corrections [DOC] to provide inmates with disabilities, with or without reasonable accommodation, access to its programs and services consistent with legitimate penological interests." The Plan goes on to state: "no qualified inmate with a disability

1

. . . shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the DOC or be subjected to discrimination." The Remedial Plan further specifies that, "[a]ll facilities designed to house inmates with disabilities will provide comparable programs, services, and benefits available throughout comparable DOC facilities to ensure that inmates with disabilities are not discriminated against because of their disability." The Plan then describes specific areas in which DOC will work to comply with the Plan. Pursuant to the directives of this Court, a hearing concerning DOC compliance with the Remedial Plan and subsequent stipulations entered into by the parties to this proceeding is set for June 7, 2010.

During the seven year period subsequent to entry of the Remedial Plan, the DOC has devoted considerable time, energy, and expense to bringing itself into compliance with the Remedial Plan. The extent and result of such efforts will be demonstrated in detail at the upcoming hearing before the Court. This brief is offered to provide the Court applicable legal standards that may be considered to determine whether the DOC is in substantial compliance with the Remedial Plan and subsequent stipulations between the parties.

## II. GROUNDS FOR DETERMINING SUBSTANTIAL COMPLIANCE WITH THE REMEDIAL PLAN

The decisions of multiple courts, including the United States Court of Appeals for the Tenth Circuit, interpret the basis for a finding of "substantial compliance" within the context of a consent decree. While the Remedial Plan is not specifically a consent decree, it serves the same purpose, and it is instructive to refer to case law concerning consent decrees in the determination of substantial compliance with the Plan. Such decisions note that this determination is grounded in contract law and dependent on the underlying policy goals of the

2

particular decree at issue. Several such decisions also offer analytical guideposts to determining the presence of substantial compliance in a given context.

### A. Substantial Compliance is Determined Based on the Overall Essential Purpose of the Remedial Plan

In *Wolfe v. New Mexico Dept. of Human Services*, 69 F.3d 1081, 1085 (10th Cir. 1995), the Tenth Circuit Court considered the dissolution of a consent decree governing the New Mexico foster care system and whether the New Mexico Department of Human Services had substantially and continuously complied with the decree. The Court in *Wolfe* concluded that the "touchstone of the substantial compliance inquiry is whether Defendants frustrated the purpose of the consent decree--i.e. its essential requirements." *Wolfe* at 1086.

The Tenth Circuit in *Wolfe* further explained that the contract law doctrine of substantial compliance is "simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract. See John D. Calmari & Joseph M. Perillo, *The Law of Contracts § 11-15, a*t 454 (3d ed. 1987) ("If a party has substantially performed, it follows that any breach he may have committed is immaterial.")" *Wolfe*, 69 F.3d at 1085 (quoting *Peckham v. Gem State Mut.*, 964 F.2d 1043, 1052 (10th Cir. 1993)). The Court also quoted Judge Cardozo in *Jacob & Youngs Inc. v. Kent,* 230 N.Y. 239, 129 N.E. 889, 891 (1921) in stating that the inquiry was whether any deviation from the contract requirements  "in any real substantial measure. . . frustrates[s] the purpose of the contract." *Wolfe* at 1086.

In the present instance, the focus of the hearing is whether DOC is providing disabled inmates, with or without accommodations, the opportunity to participate in services and programs consistent with legitimate penological interests, rather than discriminating against

3

them because of their disabilities and whether actions of the DOC are frustrating the essential requirements of the Plan . Incidents of failures that pertain to specific inmates do not suffice to demonstrate a failure to achieve substantial compliance, particularly when any such incidents fail to demonstrate that the Defendants frustrated the purpose of the decree, *i.e.,* its essential requirements, in any real substantive measure.

### B. No Mathematical Formula Determines Substantial Compliance

Instead of reviewing every individual and isolated particular circumstance in an effort to determine the existence of substantial compliance, a court must look at the essential purposes of the consent decree, as well as the specific steps set forth in that decree by which the purposes may be satisfied. The Tenth Circuit in *Wolfe* noted that "The phrase 'substantial compliance' is not susceptible of a mathematically precise definition." *Wolfe* at 1085. Put another way, the Courts recognize substantial compliance as a concept that can be satisfied in the absence of proof that every applicable criteria was met in a perfect manner, but rather on the basis of a broader and more systemic approach.

With respect to the question of whether failure to comply with every specific provision of the consent decree bars a finding of substantial compliance, the Tenth Circuit in *Wolfe* held:

> To the extent that any stipulated criteria has not been met, the court must determine whether that failure is immaterial to the overall objectives or, on the other hand, whether it had a material adverse impact upon the overall processing and placement of children into permanent homes.

*Wolfe*, 69 F.3d at 1086.

Further, in a case considering the compensability of post-decree monitoring, the Tenth Circuit noted, " 'proper functioning' [of enforcement mechanisms] does not mean 'perfect' functioning. No system works perfectly. Mistakes are inevitable and, inevitably, some

4

individual cases of mistreatment will not be adequately redressed.  Occasional errors do not necessarily establish systemic failure or deprive the class of the fruits of the decree." *Johnson v. City of Tulsa*, 489 F.3d 1089, 1110 n.7 (10th Cir. 2007); *see also Wyatt v. Rogers*, 985 F. Supp. 1356, 1388 (M.D. Ala. 1997) (evidence that, over a period of time, there may have been isolated instances of patient abuse would not necessarily preclude a finding of good-faith full compliance with mental-illness standards from consent decree).

In *Wyatt v. Rogers*, 985 F. Supp. 1356, 1388 (M.D. Ala. 1997), the District Court observed that substantial compliance is something less than 100 percent compliance, stating "it would be impractical, and thus unreasonable, to expect 100% compliance 100% of the time" with respect to the complex requirements of a consent decree.  Instead, *Wyatt* recommended a case-specific analysis in examining whether the goal of substantial compliance was attained. *Id.*; *see also Johnson*, 489 F.3d at 1110 n.7.

The Eighth Circuit's rationale in *McDonald v. Carnahan,* 109 F.3d 1319, 1322-23 (8th Cir. 1997), is a further demonstration of judicial reluctance to interpret substantial compliance as requiring one hundred percent compliance.  In *McDonald,* the Eighth Circuit found the termination of a prisoner class action consent decree proper.  The *McDonald* court excused "shortfalls in the state's compliance with the decree's provisions" in affirming the termination of the decree, including access to medical services and scattering of legal materials, as these "shortfalls" were deemed not to be the result of defendants' bad faith, not retaliatory, and not an impediment to court access or a demonstration of deliberate indifference to medical claims. *See Id.*  The Court found that the state did substantially comply, despite some provisions of the decree not being completely fulfilled.

5

The focus of the determination of substantial compliance should be correction of systemic violations of law, not whether every problem was corrected. *See R.C. v. Walley*, 475 F. Supp. 2d 1118, 1144 (M.D. Ala. 2007) (considering system-wide compliance rather than isolated occurrences). This approach properly upholds the separation of powers, as "[i]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

Further, the Court should consider, with respect to any individual inmate difficulties that may be established, whether the inmate requested an ADA screening through the process established by DOC and whether he or she utilized the DOC's grievance system respecting matters involving ADA compliance. This system is designed to address problems at an administrative level and to reduce the need for judicial oversight of the DOC.

### C. Other Factors Considered In Determining Substantial Compliance

In examining substantial compliance on a case-by-case basis, courts often point to the duration of the consent decree as a significant guidepost. The "passage of time enables the district court to observe the good faith of the [local government] in complying with the decree." *Board of Education v. Dowell*, 498 U.S. 237, 249 (1991). Dissolving a decree "after local authorities have operated in compliance with it for a reasonable period of time properly recognizes that necessary concern for the important value of local control" of local agencies. *Id.* at 248. The termination of the decree following a period of compliance also fulfills the dictate that "a federal court's regulatory control of such [local agencies] not extend beyond the time required to remedy" violations of the law. *Id.*

In a Sixth Circuit case, inmates appealed a district court finding of substantial compliance by the Kentucky correctional department and alleged that some provisions of a consent decree were not met.  The appeals court quoted *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974) in noting that the complexities involved in administering prisons are peculiarly within the province of the legislative and executive branches of government, and the court stated "in the context of the instant case, this 'policy of minimum intrusion' demands that judicial supervision over the Kentucky prison system should be as limited as possible and terminated as quickly as possible once it is determined that the likelihood of future violations has ceased." *Smith v. Bland*, 856 F.2d 196 (6th Cir. 1988) (unpublished decision attached hereto).  See also *Battle v. Anderson*, 708 F.2d 1523 (10th Cir.1983); *Taylor v. Sterrett*, 600 F.2d 1135 (5th Cir.1979); *Campbell v. McGruder*, 580 F.2d 521 (D.C.Cir.1978).

In the instant case, it is important to remember that even after a finding of substantial compliance by the Court, the Remedial Plan provides for a two year monitoring period during which the Court will continue to exercise some degree of control over the DOC's actions with respect to disabled inmates. Plaintiffs will also have the ability during this time to bring deficiencies to the attention of the court even after the Court has found substantial compliance.

Another factor that Courts may consider with respect to consent decrees is a public policy-based recognition of the financial impacts of the decree.  In *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 393 (1992), the Supreme Court rejected the view that fiscal problems are "only marginally relevant" to modification or termination of a consent decree.  The Court explained, "[f]inancial constraints may not be used to justify the creation or perpetuation of constitutional violations, but they are a legitimate concern of government defendants in

7

institutional reform litigation and therefore are appropriately tailored in a consent decree modification." *Id.* at 392-93.  In the present case, over the seven-year time span of the consent decree, and indeed over the eighteen-year time span of this litigation, considerable financial resources, in addition to countless hours of staff time,  have been devoted to ensuring compliance with the Remedial Plan, as will be demonstrated at the compliance hearing.

## III.    CONCLUSION

Decisions of the Tenth Circuit and other jurisdictions establish that in determining substantial compliance with a consent decree, courts should focus on the underlying policy of the decree and whether the Defendants frustrated the purpose of the decree, *i.e.,* its essential requirements.  If any shortcomings exist, courts should examine the materiality of those areas in relation to the essential elements and underlying policy of the decree. This is not a mathematical inquiry but rather one that asks: did the defendants "satisfy the essential requirements of each of the basic goals of the decree?" *Wolfe* at 1087. Such issues as the duration of the consent decree, the financial impacts of the decree, and the public policies underlying court monitoring of state agency functioning may also be considered in the Court's analysis.

The DOC expects to demonstrate to the Court during the hearing that it is, indeed, in substantial compliance and even full compliance, with the essential requirements of the Remedial Plan and that its actions have not frustrated the purpose of the Plan.

DATED this 20th day of May 2010.

JOHN W. SUTHERS
Attorney General

*/s/ Elizabeth H McCann*

ELIZABETH H. MCCANN
JAMES X. QUINN
BERINA IBRIGASIC
Assistant Attorneys General
Civil Litigation and Employment Law Section
Attorneys for Defendants
1525 Sherman Street, 5th Floor
Denver, Colorado  80203
Telephone: (303) 866-4307
FAX: (303) 866-5443
Beth.mccann@state.co.us

THOMAS LYONS
GILLIAN DALE
Hall & Evans
Attorneys for Defendants
1125 17th St. #600
Denver, Colorado 80202
Telephone: 303-628-3300
Fax: 303-825-4987

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on the 20th day of May, 2010, I electronically filed the foregoing Defendants' Hearing Brief Concerning the Determination of Substantial Compliance with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paula Greisen
Jennifer Riddle
greisen@kinggreisen.com
riddle@kinggreisen.com
King and Greisen, LLP
1670 York St.
Denver, Co. 80206

Ed Ramey
Lara Marks
Blaine Myhre
eramey@ir-law.com
lmarks@ir-law.com
bmyhre@ir-law.com
Isaacson Rosenbaum PC
1001 17th St. #1800
Denver, Co. 80202

Thomas Lyons
Gillian Dale
lyonst@hallevans.com
daleg@hallevans.com
1125 17th St. #600
Denver, Co. 80202

                              s/ Elizabeth H. McCann_____