Westlaw.

Page 1

856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.)))**

**H**NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.
Robert SMITH, et al., Plaintiffs-Appellants,
v.
David BLAND, et al., Defendants-Appellees.
No. 87-5460.

Sept. 1, 1988.

W.D.Ky., 659 F.Supp. 1188.

AFFIRMED.

On Appeal from the United States District Court for the Western District of Kentucky.

Before BOYCE F. MARTIN Jr. and WELLFORD, Circuit Judges and JAMES H. JARVIS, District Judge.[FN*]

PER CURIAM.

**\*1** This is an appeal by *pro se* inmates from a district court order finding the Commonwealth of Kentucky in substantial compliance with a Consent Decree entered into between the Commonwealth and inmates of the Kentucky State Penitentiary and Kentucky State Reformatory. The decree in question concerns conditions of confinement at those institutions. The appeal raises issues concerning limitations on a federal court's continuing supervision of the conditions of confinement in a state prison system.

This action was originally initiated as a class action under 42 U.S.C. § 1983 in September, 1976 by various inmates of the Kentucky State Penitentiary (KSP) seeking relief from conditions of confinement in that institution allegedly violative of the Eighth Amendment's proscription against cruel and unusual punishment. Inmates of the Kentucky State Reformatory (KSR) were later joined as plaintiffs. In 1981, the Commonwealth and the plaintiffs, with the approval of the district court, entered into a Consent Decree intended to improve the conditions of confinement at the two institutions and resolve issues being litigated in the class action. *See Kendrick v. Bland,* 541 F.Supp. 21, 27-50 (W.D.Ky.1981). The Consent Decree contained timetables for the completion of certain plans, studies and improvements that would take place with regard to prison conditions. The decree contained no expiration date, but rather it was agreed that "The Court shall retain jurisdiction in this case until the plan submitted to the Court is fully implemented." *Id.* at 27. In the years following the entry of the Consent Decree, the district court monitored defendants' compliance with virtually every aspect of the decree. The plaintiffs do not dispute that following the entry of the Consent Decree defendants have made major improvement in the quality of life at both KSP and KSR.

On July 24, 1985, the district court scheduled a hearing for July, 1986 for a determination of defendants' "substantial compliance" with the goals of the Consent Decree. The compliance hearing was held on July 9-11, 14-16, and 21-23, 1986. The district court heard extensive testimony from inmates, prison officials and experts regarding defendants' compliance with the Consent Decree.

On March 13, 1987, the district court issued a Memorandum Opinion containing Findings of Fact and Conclusions of Law, finding that the defendants were in substantial compliance with the Consent Decree in all areas except the area of capital construction and renovation projects. *Kendrick v. Bland,* 659 F.Supp. 1188 (W.D.Ky.1987). With respect to the capital construction and renovation projects, the district court noted that under the timetable set by the Consent Decree complete compliance in that area will not be met until 1996. Based on these findings, the district court summarized its opinion as follows:

In summation, the Consent Decree is and will continue to be a contractual agreement between the parties. The court will cease to monitor all conditions other than the completion of construction. The case will be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.)))**

maintained on the court's inactive docket and the parties shall submit semi-annual reports on the progress of construction. In the event of major violations of the Consent Decree, the parties may apply to the court for reinstatement of the case on its active docket.

**\*2** *Id.* at 1201.[FN1]

Plaintiffs' counsel filed no appeal from the order finding substantial compliance, and these plaintiffs thereafter filed this appeal *pro se.*

The appellants contend that the district court's finding of substantial compliance was erroneous, particularly with regard to two issues. First, plaintiffs contend that the defendants' failure to provide a Black Studies Program violates Item # 18 of the Consent Decree.[FN2] Second, plaintiffs contend that the defendants have failed to comply with the due process requirements of Item # 6 of the Consent Decree with regard to hearings on disciplinary charges by the Adjustment Committee. *See id.* at 31-33. The issue regarding due process was presented to and considered by the district court. The issue regarding the Black Studies Program was not presented to the district court and was not addressed in its opinion.

In appellants' brief on appeal, they state the purpose of their appeal as follows:

This appeal is an attempt to keep the Consent Decree alive because of its substantial impact on the lives of prisoners housed at the Kentucky State Prison and the failure of the defendants to honor their contractual agreement. In particular, defendants' failure to maintain a Black Studies Program and to afford plaintiffs due process at Adjustment Committee hearings.

Further, it is to enlighten this Court of the ineffectiveness of the attorneys appointed by District Court to represent plaintiffs in *Kendrick v. Bland,* litigation.

Appellants' Brief, at p. 2.

In reviewing the district court's order, three primary considerations regulate our inquiry. First, the district court was in the best position to determine whether defendants have substantially complied with the Consent Decree. The factual findings of the district court cannot be set aside unless they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure. Due to the district court's extended involvement and intimate understanding of the facts and issues in this litigation, its factual findings are entitled to extreme deference. *See Kendrick v. Bland,* 740 F.2d 432 (6th Cir.1984). The district court's findings regarding substantial compliance constitute such factual findings.

Second, the district court was in the best position to determine the appropriate equitable relief to insure that the goals of the Consent Decree are met, and its decision regarding the propriety of continuing to exercise jurisdiction over this case should only be overturned if there has been an abuse of discretion. *See United States v. W.T. Grant Company,* 345 U.S. 629, 633 (1953). Regarding the retention of jurisdiction by a district court over a case under its general power to do equity, the Court in *Grant* observed:

Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. [citations omitted]. The purpose of an injunction is to prevent future violations, [citations omitted], and, of course, it can be utilized even without a showing of past wrongs. But the moving party must show the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

**\*3** *Id.* at 633. Thus, the district court's decision as to the appropriateness of discontinuing the exercise of its equitable powers in this case is also entitled to great deference.

Third, the United States Supreme Court has warned against unnecessary judicial interference with a state's regulation of conditions of its prison system. The Court has observed:

Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration. In part, this policy is the product of various limitations on the scope of federal review of condi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.)))**

tions in state penal institutions. More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.

*Procunier v. Martinez,* 416 U.S. 396, 404-05 (1974) (footnotes omitted). In the context of the instant case, this "policy of minimum intrusion" demands that judicial supervision over the Kentucky prison system should be as limited as possible and terminated as quickly as possible once it is determined that the likelihood of future violations has ceased. *See, e.g., Battle v. Anderson,* 708 F.2d 1523 (10th Cir.1983); *Taylor v. Sterrett,* 600 F.2d 1135 (5th Cir.1979); *Campbell v. McGruder,* 580 F.2d 521 (D.C.Cir.1978).

Based on a consideration of the above factors, we find that the decision of the district court finding the defendants to be in substantial compliance with virtually all of the terms of the Consent Decree must be affirmed. The district court conducted lengthy hearings and heard extensive testimony regarding defendants' compliance on all issues raised by the plaintiffs. There can be no doubt that significant improvements have been made in the conditions of confinement for inmates at KSP and KSR. The extent of the improvements is evident from the fact that that plaintiffs have only been able to point out two areas in which they believe that the defendants have failed to comply with the Consent Decree. One of those areas, the lack of a Black Studies Program, was not raised at the substantial compliance hearing. The other specific claim, that the plaintiffs did not receive due process at the Adjustment Committee hearings, was duly considered by the district court, *Kendrick,* 659 F.Supp. at 1194-95, and the determination of substantial compliance on this issue is fully supported by the evidence of record. Plaintiffs simply disagree with the resolution of this issue by the district court. The plaintiffs have failed to demonstrate that the district court's finding of substantial compliance is clearly erroneous with respect to any of the issues raised at the compliance hearing.

**\*4** The district court's order is a reasonable and efficient way to begin the process of ending 12 years of judicial supervision of the Kentucky prison system. It is noted that the order does not cut the plaintiffs off without a remedy. In the event of serious violations of the Consent Decree, plaintiffs may apply to the district court for reinstatement of the case on its active docket. Moreover, as we have previously noted, contempt proceedings are available should the defendants fail to comply with the district court's orders. *Kendrick,* 740 F.2d at 439. Finally, the district court has retained control over construction and renovation projects, the one area where it found that substantial compliance had not been met. Under these circumstances, it cannot be said that the plaintiffs have been prejudiced by the entry by the district court of the substantial compliance order.

With respect to appellants' claim that their counsel failed to adequately represent them when he filed no appeal from the substantial compliance order, we find nothing in the record to indicate that counsel's actions were unwarranted. The order entered by the district court adequately protects the interests of the plaintiffs. Plaintiffs have failed to demonstrate that counsel's conduct was outside the bounds of adequate representation.

Finally, we take this opportunity to commend the district court for its long and diligent efforts in regulating this lawsuit. Those efforts have contributed significantly to obvious and substantial improvements in the conditions under which inmates in the Kentucky prison system are housed. Hopefully, the district court's order signals the beginning of the end of judicial supervision of the Kentucky prison system.

Accordingly, the order of the district court is AF-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.)))**

FIRMED.

FN* The Honorable James H. Jarvis, U.S. District Judge for the Eastern District of Tennessee, sitting by designation.

FN1. The accompanying order entered by the district court provided as follows:

IT IS ORDERED:

1. The Consent Decree constitutes a binding and continuing obligation upon the parties.

2. The defendants are in compliance with the Consent Decree in all areas except construction and renovation.

3. The case is transferred to the inactive docket for receipt of semi-annual reports from the parties on the progress of construction and renovation as required by the Consent Decree.

4. In the event of major violations of the Consent Decree and the contractual obligations created and continuing thereunder, any party may apply to the court for reinstatement of the case on its active docket.

This is a final and appealable order and there is no just cause for delay.

Joint Appendix, at pp. 197-98.

FN2. Item # 18 of the Consent Decree provided as follows:

18. RACIAL DISCRIMINATION.

The defendants agree not to discriminate against any inmate on the basis of race, religion, or creed and to develop educational curricula addressing minority cultures which are designed to eliminate the effects of cultural disparities amongst prisoners and staff.

*Kendrick,* 541 F.Supp. at 39.

C.A.6 (Ky.),1988.
Smith v. Bland
856 F.2d 196, 1988 WL 90900 (C.A.6 (Ky.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.