IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-JLK

JESSE (JESUS) MONTEZ, *et al.*,

    Plaintiffs,

v.

BILL RITTER, *et al.*,

    Defendants.

---

**PLAINTIFFS' LIMITED RESPONSE
TO DEFENDANTS' MOTION TO STRIKE [Dkt. No. 4591]**

---

    Plaintiffs, through undersigned counsel, respectfully submit the following Limited Response to Defendants' Motion to Strike [Dkt. No. 4591]:

    1.    This Limited Response is directed to paragraphs 10 through 14 of Defendants' Motion to Strike, regarding Plaintiffs' expert Robert A. Bardwell. The balance of the Motion raises legitimate concerns with Plaintiffs' pre-hearing filings – concerns which the Plaintiffs are remedying as directed in the Court's Order re Motion to Strike [Dkt. No. 4593] and had in fact agreed to remedy prior to (and without) the filing of the Motion.

    2.    Plaintiffs do take exception, however, to Defendants' recitation of the circumstances surrounding Dr. Bardwell – circumstances which have taken another surprising turn as recently as 2:00 p.m. yesterday afternoon. Up to now, counsel have worked together well, indeed cordially and productively, in this case. Up to now, the spirit (as well as the letter) of D.C.COLO.LCivR 7.1(A) has been honored, tactical misrepresentations have been avoided,

and missteps have been accommodated and addressed with minimal rancor.  Notwithstanding inevitable pre-hearing tensions, Plaintiffs do not intend to let this Motion signal a change to that.

3. Dr. Bardwell was retained by the Plaintiffs, as stated in his expert report, to provide a statistical analysis of "the impact of disability on the inmate job and program enrollment and wages in the CDOC."  Defendants have retained an expert on this topic as well, Jeffrey F. Zax, whose report addresses "the employment and program status of disabled inmates in Colorado State Correctional facilities as of May 1, 2009."  The analyses of both Dr. Bardwell and Dr. Zax are centrally dependent upon data – regarding job and program assignments among inmates with and without disabilities as of the May 1, 2009, compliance deadline – maintained and produced by the Defendant Department of Corrections.

4. Dr. Zax's expert report was provided to Plaintiffs' counsel on May 4, 2010.  Dr. Zax had been identified to Plaintiffs' counsel six days earlier.  Thirteen days later, on May 17, 2010, Dr. Bardwell's expert report was provided to Defendants' counsel.  Neither report violated a formal, or informal, deadline.  Both reports were fully anticipated by recipient counsel.  The timing of Dr. Bardwell's report was, as explained below, driven by continuing revisions by the Department of Corrections to data which should have been accurate, up-to-date, and available a year earlier.  Plaintiffs reserve comment on the timing of Dr. Zax's report.

5. In June 2009 – in the wake of the May 1 extended compliance deadline – Plaintiffs, by request for production, asked the Defendants to provide a listing of all job and program assignments for inmates as of the compliance date, indicating which inmates had disabilities within the scope of the Remedial Plan.  In September 2009, Plaintiffs separately requested a listing of all inmates with disabilities within the AIC database, together with their

facility placements. Defendants responded to these production requests in July and October, 2009, respectively. Noting that the inmate population approached 20,000 with over 1,000 inmates formally classified as disabled, these productions were voluminous.

6. Utilizing the expertise of a technologically savvy attorney at Isaacson Rosenbaum P.C. – Britt Clayton – Plaintiffs' counsel performed an electronic count and preliminary comparison of the separate data sets produced by the Defendants. This was data which one would expect to be at least roughly consistent – *e.g.*, inmates with disabilities appearing in the AIC master list would also appear in the job/program assignment database (which included those inmates designated as "unassigned"). Consistency would particularly be expected as it is *this* data which is key to the Department's ability to monitor and evaluate its own compliance with the nondiscrimination requirements – and countless other requirements – of the Remedial Plan. To the surprise of the Plaintiffs, however, the data was massively discordant and incomplete, with literally hundreds of names in one set wholly and inexplicably unaccounted for in the other.

7. This circumstance precipitated a progression of revised data productions by the Department of Corrections. On February 10, 2010, Defendants' counsel advised Plaintiffs' counsel they would be providing an extensive revision of the October 2009 data production. The revision – dated and apparently finalized two days earlier – was not provided for another month. On March 5, 2010 – ten months after the compliance date and five and eight months after the initial productions – Defendants produced two extensive sets of "updated" data, both purportedly as of April 30, 2009. Neither "update" specified what or how many entries had been changed or why. Upon immediate inquiry – noting the obvious impact upon everything Plaintiffs' counsel and consultants had done to date to attempt to understand and analyze the Department's data –

Defendants' counsel responded on March 26 with a brief explanation of *why* the initial data was inaccurate but with no indication of *what* had changed or the magnitude of the corrections. This conversation continued through a meeting of counsel over a month later, on April 28, 2010, at which Defendants' counsel acknowledged that there were "over a hundred" discrepancies between the earlier and later data productions, followed by an email on May 2, 2010, identifying 391 specific internal revisions to one of the data sets. Two days later, Defendants served Plaintiffs with an expert report from Dr. Zax purporting to provide a full analysis based upon this data.

8. Plaintiffs retained the services of Dr. Bardwell in January 2010, initially as a consulting expert and with no idea or consensus among Plaintiffs' counsel whether he would be able to perform a meaningful statistical analysis of anything based upon the quality of the data provided by the Defendants. At about the same time, Plaintiffs learned that the Defendants had retained an "economist" – identity and designation as a testifying expert undisclosed. Dr. Bardwell commenced with an examination of the Department's original data, was required to begin again with the February data ultimately produced in March, and has been required to revisit the data as additional – albeit still incomplete – information has continued to dribble in from the Defendants through early May. And, as discussed in paragraph 9 below, he is now being required to revisit the data once again. And all of this with regard to data that, under the Remedial Plan, should have been accurate real-time a year earlier.

9. Per this Court's directive in its Order re Motion to Strike of May 18, 2010, counsel for the parties met in person to discuss Dr. Bardwell and other pre-hearing matters on the afternoon of May 24, 2010. At this meeting, Defendants' counsel announced – for the first time

and referencing a recent conversation with a representative of the Department – that one of the "updated" data sets produced to the Plaintiffs by the Defendants was in fact filled in substantial part with data about disabled inmates who were no longer in the system as of the compliance date, reaching back years. When that data was produced in March, Defendants' counsel represented the data to be "a complete list [from the AIC's office] of the confirmed diabetic/disabled offenders from the AIC database *as of 4/30/09* – a representation which Plaintiffs understood to mean, in part, that the inmates were in the system as of 4/30/09. Plaintiffs' counsel are confident Defendants' counsel had a similar understanding as (a) they acknowledged the recency of their clarification, (b) it is the nondiscriminatory treatment of inmates in the system *as of 4/30/09* that is relevant to compliance *as of 4/30/09*, and (c) it would make little sense to quibble about either the date of confirmation or the specific date of extraction of data from a database (absent the unasserted proposition that one or the other is being manipulated). At any rate, the data is virtually useless, nonresponsive to Plaintiffs' requests, and further disruptive – *as of yesterday afternoon* – to Plaintiffs' and Dr. Bardwell's efforts to conduct a meaningful analysis.

10. Finally, as to disclosure. As acknowledged by Defendants in paragraph 14 of their Motion, they identified Dr. Zax to Plaintiffs for the first time at the meeting of counsel on April 28. His name, that he would testify, and the fact that he was a professor at the University of Colorado was all that was said. Plaintiffs' counsel frankly do not recall if Dr. Bardwell was referenced by name at the same meeting, though his participation in the case and Plaintiffs' intention to call a statistical expert to testify regarding the Department's data was specifically discussed. Defendants' counsel note in paragraph 12 of their Motion that they were well aware

that the Plaintiffs had a "statistical expert" but "were informed" it was Isaacson attorney Britt Clayton.  Indeed, in an abundance of caution, Plaintiffs had informed Defendants of Mr. Clayton's role in the case.  As recited in discovery responses delivered to the Defendants' counsel on April 1, 2010, Mr. Clayton was listed as a "may call" witness "regarding the manner in which he assisted Plaintiff's [*sic*] legal team in the formatting and presentation of data produced by the DOC to make it amenable to analysis."  Mr. Clayton was also well known to Defendants' counsel and Defendants' information technology specialists through his attendance at meetings and direct participation in the collaborative efforts of the parties to address areas of noncompliance with the inmate tracking requirements of the Remedial Plan in 2007-08 – efforts that quite apparently have utterly failed.  It strains credulity – more than a bit – for counsel now to suggest they "were informed" that the admittedly multi-talented Mr. Clayton would also be tapped to testify as Plaintiffs' "statistical expert" by his own law partners in this case.

       11.     There is much in this case that could have been managed more efficiently by counsel on both sides, and by the Department itself, and Plaintiffs' counsel accept their share of responsibility for that.  But for Defendants to imply that they have been "sandbagged" in some fashion – an unjustified assertion that could as well be directed at them – is a sad and regrettable step.  The Court is respectfully requested to deny the portion of the Motion seeking to strike the testimony of Dr. Bardwell.

     Respectfully submitted this 25th day of May, 2010.

        Paula Greisen
        Jennifer Riddle
        King & Greisen, LLP
        1670 York Street
        Denver, CO 80206
        303.298.9878
        303-298.9879 (fax)
        Email:  greisen@kinggreisen.com;
        riddle@kinggreisen.com


        *s/ Edward T. Ramey*
        Edward T. Ramey
        Blain D. Myhre
        Lara E. Marks
        Isaacson Rosenbaum P.C.
        1001 17th Street, Suite 1800
        Denver, CO  80202
        Phone:  303.292.5656
        Fax:  303.292.3152
        E-mail:  eramey@ir-law.com; lmarks@ir-law.com;
        bmyhre@ir-law.com;

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on this 25th day of May, 2010, a true and correct copy of the foregoing was served on the following e-mail addresses via CM/ECF:

| | |
|---|---|
| Paula Dee Greisen | (beth.mccann@state.co.us) |
| greisen@kinggreisen.com | Elizabeth H. McCann, Deputy Attorney General |
| Jennifer Wardner Riddle | James X. Quinn |
| riddle@kinggreisen.com | James.Quinn@state.co.us |
| King and Greisen, LLP | Jennifer Susan Huss |
| 1670 York Street | jennifer.huss@state.co.us |
| Denver, CO  80206 | Robert Charles Huss |
| *Attorneys for Plaintiffs* | rob.huss@state.co.us |
| | Willow Ivana Arnold |
| | willow.arnold@state.co.us |
| | Berina Ibrisagic |
| | berina.ibrisagic@state.co.us |
| | 1525 Sherman Street, 5th Floor |
| | Denver, CO  80203 |
| | *Attorneys for Defendants* |
| Brice A. Tondre | Gillian Dale |
| briceatondrepc@msn.com | daleg@hallevans.com |
| Castelar M. Garcia | Thomas J. Lyons |
| slvlaw@gojade.org | lyonst@hallevans.com |
| H. Earl Moyer | |
| mbvlaw@mbv1.net | |
| Patricia S. Bellac | |
| psblawfirm@comcast.net | |

*s/ Edward T. Ramey*
Edward T. Ramey