IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-00870-JLK

JESSE (JESUS) MONTEZ, *et al.*,

      Plaintiffs,

v.

BILL OWENS, *et al.*,

      Defendants.

---

**REVISED AMENDED PRETRIAL ORDER RE CONTINUATION
OF COMPLIANCE HEARING**

---

## 1. DATE AND APPEARANCES

Date of Hearing: October 18, 2010

| | |
|---|---|
| Appearing for Plaintiffs: | Paula Greisen |
| | Jennifer Riddle |
| | King & Greisen LLP |
| | 1670 York St. |
| | Denver, CO 80206 |
| | |
| | Edward T. Ramey |
| | Blain D. Myhre |
| | Lara E. Marks |
| | Isaacson Rosenbaum P.C. |
| | 1001 17th Street, Suite 1800 |
| | Denver, CO 80202 |
| Appearing for Defendants: | Elizabeth H. McCann |
| | James X. Quinn |
| | Berina Ibrišagić |
| | Colorado Attorney General's Office |

1525 Sherman Street, 5th Floor
Denver, CO 80203

## 2.  JURISDICTION

Jurisdiction is proper in this case as Plaintiffs seek judicial review of compliance issues pursuant to 28 U.S.C. § 1331.  Jurisdiction is not challenged.

## 3.  CLAIMS AND DEFENSES

**Burden of Proof Issue:  Defendants' position:**  The Defendants request clarification of the burden of proof in this hearing. During the status/pretrial conference on Dec. 21st 2009, in discussing which party would proceed first in the compliance hearing, Plaintiffs' counsel noted that the Court had previously ruled that Plaintiffs have the burden of proving non-compliance with the Remedial Plan in this hearing, and the Court agreed. The Court stated that when "we go to trial, the plaintiffs have the burden of proof. They have to show there hasn't been compliance and you have to – you have to respond to that."(Transcript of conference pp. 11-13 attached hereto as **Exhibit B).** At the status conference on Sept. 16th 2010, the Court seemed to indicate that the Defendants have the burden of proof. The parties have presented the evidence thus far under the assumption that the Plaintiffs have the burden of proof.  Defendants respectfully request that the Court clarify its position in this regard.

**Plaintiffs' position**:   Plaintiffs contend that the burden of proof in these compliance hearings is appropriately placed on the Defendant.  This matter has never been fully briefed by the parties in this case.  It is apparent, however, from *Joseph A. ex rel Wolfe v. New Mexico Dept. of Human Resources*, 69 F.3d 1081 (10th Cir. 1995) that the burden of proving compliance

rests with the party who seeks to terminate the decree in question.  In *Wolfe*, the Court implicitly placed this burden on the defense when stated that "[i]n order to comply substantially with the decree, Defendants needed to satisfy the essential requirements of each of the basic goals of the decree . . .."  The Court went on to note that in that case, the Special Master "failed adequately to address whether Defendants satisfied [one of the] mandates of the decree."  In remanding the case, the Court again reiterated that it must first be determine "whether Defendants satisfied the essential purpose of the decree . . .."  *Id*. at 1089.

A review of cases concerning "substantial compliance" with a consent decree similar to the type at issue in this case, the burden has always been placed on the party seeking to terminate the decree to prove compliance.  See *Allen v. Alabama State Bd. of Educ.*, 164 F.3d 1347, 1350, n 14 (11th Cir. 1999) ("[The party seeking termination of the [consent] decree must show that the basic purposes of the decree have been fully achieved and that there is no significant likelihood of recurring violations of federal law once the decree has been lifted.") citing *Board of Educ. v. Dowell*, 498 U.S. 237, 246-250 (U.S. 1991)(The court must decide whether the School Board made a sufficient showing of compliance with a desegregation decree.);  *R.C. v. Walley*, 390 F.Supp.2d 1030, 1033 (M.D. Ala. 2005)("Defendant has not submitted evidence sufficient to sustain his burden of demonstrating that  [the defendant] 'is' and 'will remain' in substantial compliance with the terms of the Consent Decree and of the Implementation Plan as required for termination of said Decree.").  As the Defendants in this case admittedly did not achieve substantial compliance at either of the two previous compliance hearings, there should not be a presumption that the CDOC has done so for this compliance hearing.  Accordingly, Plaintiffs

submit that the burden of proof is appropriate on the Defendants.

The following are the statements of counsel regarding the remaining issues to be addressed in the continuation of the Compliance Hearing which is currently set to resume on October 18, 2010.

a.      Plaintiff(s)' statement:

In 2003, the "Remedial Plan" became an order of the Court by agreement of the Montez Class (Plaintiffs) and the Colorado Department of Corrections ("DOC" or "Defendants").  The Remedial Plan specifies the DOC's obligations to accommodate those inmates who are determined to have a qualifying disability under the Americans with Disabilities Act.  DOC has failed to achieve substantial compliance with the Remedial Plan and all subsequent stipulations thereto since its inception in 2003.

Pursuant to this Court's order, Plaintiffs submit that the "essential elements" of the Remedial Plan are as follows:

1)  Timely and Proper Identification of Inmates with Disabilities ("IWDs") with respect to newly arriving inmates and those already in CDOC custody;

2)  Timely and Proper identification of reasonable accommodations needed by IWDs to ensure access to the programs, benefits and services of the CDOC;

3)  Provision of accommodations, and the repair/replacement of necessary assistive devices, on a timely basis;

4)  Uniform procedures throughout all CDOC public and private facilities regarding, identification of IWDs and accommodation procedures, the timely provision of accommodations, and notification of IWDs to their rights under the Remedial Plan.

5)  Tracking of IWDs and their accommodations via centralized database for all inter-and intra-facility movement, and required accommodations during and after movement;

6)  Ensure IWDs are not denied access to programs, services and benefits of CDOC on the basis of disability, including but not limited to safe and accessible housing, access to properly trained medical and operational staff for the care and treatment of diabetes, access to a range of jobs and vocational/rehabilitational programs on a non-discriminatory basis, and allowed to progress to facilities at all security levels of the CDOC without regard to disability; and

Under *Joseph A. ex rel Wolfe v. New Mexico Dept. of Human Resources*, 69 F.3d 1081 (10th Cir. 1995), Plaintiffs have prepared a preliminary list of the material criteria of the Remedial Plan that must be met in order to satisfy the essential elements, listed below.  Plaintiffs reserve the right to supplement this list as it was compiled quickly to comply with the deadline for the revised pretrial order, and may not be exhaustive of the required criteria.

1)  The AIC must have responsibility and authority to implement the dictates of the Remedial Plan and be provided sufficient resources to perform the full responsibilities of the position on a timely basis;

2)  Effective and timely training of medical staff charged with performing screening to determine IWD status and accommodations such as assistive devices or health care appliances, to be provided to IWDs;

3)  Implementation of procedures to ensure that all inmates are timely and appropriately identified regarding disability status as required in Section IV of the Remedial Plan, and timely provided accommodations;

4)  Proper and safe housing of IWDs, while allowing qualified IWDs to progress through all security levels on a non-discriminatory basis, as required by Sections V and VI of the Remedial Plan;

5)  Development of consistent and verified database that identifies IWDs and allows all CDOC staff to access to verify status of IWD and accommodations, and to track IWD

movement on an intra and inter-facility wide basis, ensuring that receiving facilities and the AIC have notification prior to an IWDs movement, the provision of appropriate accommodations during movement, and awareness of the accommodations needed upon arrival at a new facility;

6) Standardized level of care at all facilities for the management and treatment of diabetes, including standardized and regular effective training of the medical staff on the standards of care for diabetic treatment and appropriate accommodations to be provided;

7) Provision of all standardized accommodations to diabetics (as listed in the 2008 Stipulation, #25), in addition to other necessary accommodations (including but not limited to appropriate footwear and call buttons), and ensuring proper and timely provision of diabetic-related medications while in CDOC custody, including community correctional facilities;

8) Integrated and coordinated communication between clinical services staff and the office of the AIC regarding disability determinations and the timely provision of accommodations;

9) Health care appliances shall be ordered within 7 working days of being deemed necessary, as required in Plan Section XVI. Repairs and/or replacement of assistive devices/auxiliary aides shall be completed within 60 days from the date the inmate reports the need for repair, as required by Plan Section XVI and the 2008 Stipulation #9.  Clinical Services shall establish a position to coordinate, administer and oversee the scheduling of all providing all such health care appliances, rather new, repaired or replaced, and will report the status of the provision of these appliances with the AIC, and will coordinate with the AIC to ensure that devices are timely provided and appropriate accommodations are provided in the interim, as required by 2008 Stipulation #28.

10) Effective and periodic training of all public and private facility staff on disability related issues, including appropriate disability culture sensitivity and awareness issues and procedures for implementing the Remedial Plan, as required by Plan Section XV;

2315153_1.doc

11) All specially designated facilities for IWDs shall offer a range of programming, jobs and vocational opportunities equivalent to that available at the non-designated facilities, as required by Plan Section XIII.  There shall be a variety of jobs in every pay scale available to qualified IWDs, comparable to those offered to other inmates, as required by Plan Section XIII.  No later than July 1, 2008, the CDOC shall implement a consistent, standardized procedure for inmates to obtain jobs within the CDOC, and that all inmates considered for a job opening and the decision-making process for the inmate selected for the job shall be document, as required by the 2008 Stipulation # 21.

12) The AIC shall work with the case managers assigned to the IWDs to ensure they are not denied access to programs, services, and benefits based solely on disability, including but not limited to job placement and vocational/rehabilitational programs.

13) CDOC shall provide IWDs who require assistance with everyday activities appropriate and effectively trained aides who are accountable for the performance of these services.  CDOC shall provide IWDs who require assistance with everyday activities appropriate and effectively trained aides who are accountable for the performance of these services. The AIC will track the assignments of all inmate aides assigned to any IWD and clinical services shall report to the AIC upon learning of any IWD in need of such assistance.

14)     CDOC shall implement an ADA Grievance procedure as detailed in Plan Section XII.

b.     Defendant(s)' statement:

The Policy statement contained in the Initial Section of the Remedial Plan states the essential requirements of the Plan. The Policy specifies that "[i]t is the policy of the Colorado Department of Corrections (DOC) to provide inmates with disabilities, with or without reasonable accommodation, access to its programs and services consistent with legitimate penological interests.  No qualified inmate with a disability, as defined in Title 42 of the United

2315153_1.doc

States Code, Section 12102 shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the DOC or be subjected to discrimination.  All facilities designated to house inmates with disabilities will provide comparable programs, services and benefits available throughout comparable CDOC facilities to ensure that inmates with disabilities are not discriminated against because of their disability." This policy statement states the goals and purpose of the agreement. The CDOC was in overall substantial compliance with this policy as of May 1, 2009 and submits that the two year monitoring period provided for in the Plan should begin as of that date. None of the actions of CDOC have frustrated the purpose of the consent decree, *i.e.*, its essential requirements.

In 2006, the parties stipulated, and the Court concluded, that the DOC was in substantial compliance with section VII of the Remedial Plan, "Structural Compliance/Physical Plant Changes."  Thus, all architectural issues contained in the Remedial Plan as well as the monitoring period with respect to architectural issues have been completed.

The Defendants inform the Court that CDOC cannot comply with Section XIV Everyday Living Assistance as it is written in the Remedial Plan because of impossibility. The Plan states that "inmates who have a history of violent behavior or a history of theft will not be designated as inmate aides." Cathie Holst testified that it is not possible for CDOC to comply with this section as written because of the backgrounds of so many of the inmates who apply for the job or who might otherwise be eligible. She also testified that she made a determination that it would be a more accurate reflection of an inmate's tendency to victimize to review the Code of Penal Discipline (COPD) violations of inmates once they are incarcerated. Thus, CDOC is now

allowing inmates to serve as aides if they have not had any Class 1 or 2 COPD convictions for a two year period. Once they are hired as aides, if they incur any Class 1 or 2 COPD convictions, they will lose the aide job. The Defendants will seek a ruling from the Court that this modification is permissible based on impossibility as discussed in *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367 (1992)

The Defendants submit that they are in compliance with the requirements of the 2006 and 2008 Stipulations.

c.      Other parties' statement:  n/a

## 4.  STIPULATIONS

a)  Plaintiffs agree that this Court has already determined that the CDOC is in substantial compliance with the architectural modifications required under the ADAAG standards to the designated facilities, and that the monitoring period for that issue has closed.

b)  Plaintiffs also stipulate that the CDOC has sufficiently met the requirements of the following sections of the Remedial Plan: VIII(A) Special Placement Housing; XVII Library Equipment; XXI Count;  XXII Restraints; XXIII Searches; XXVII Removal of Health Care Appliances in ASU/PSU; XXX Parole Field Operations.  Under *Jacobs & Young*, 129 N.E. 889 (N.Y. 1921), Plaintiffs contend that these sections are independent or collateral conditions to the essential purposes of the Remedial Plan and thus not dispositive to the issue of "substantial compliance" with the Remedial Plan.

c)  With respect to the Stipulations entered by this Court, Plaintiffs agree that the following

sections of the 2006 and 2008 Stipulations have been complied with by CDOC:

**2008 Stipulation**

5.  CDOC implemented American Sign Language classes as a program.

6.  Sign Language Interpreters were provided for non-routine medical visits.

7.  ADA grievance denied or denied as moot since July 1, 2006 were re-evaluated by the AIC.

10. Wheelchair clinics were conducted.

17. Inmates with hearing impairments at Colorado Territorial Correctional Facility are housed in cells with strobe alarms.

20. Copies of Accommodation Resolutions are provided at no cost to inmates.

22. CDOC bears the burden of costs for medical provider's or a specialists' recommendations for testing or assistive devices if PHP overrides the order.

23. CDOC implemented the recommendations made in the expert reports submitted by the experts.

27. CDOC remedied the problems and/or deficiencies noted in Peter Orleans' report and addendum on architectural compliance.

29. The office of clinical services maintains an accounting of every request for co-pay refunds and reports the requests to the AIC.

30.  Inmates are provided two (2) copies of ADA grievances when filed.

31. CDOC ceased taking monies from Montez Damage Claim settlements or payments other than those required for repayment to victim assistance fund – reimbursements.

32. CDOC posted a mutually agreeable notice through the duration of the compliance period in all facilities noting that the compliance period for the Montez case has been further extended.

33. CDOC distributed a letter from Plaintiff's class counsel to the inmates in the AIC database outlining the 2008 Stipulation.

34. The defendants reimbursed Plaintiff's counsel for attorney's fees and costs incurred up to the date that these sanctions are entered.

**2006  Stipulation**

1. Additional funding was provided to CDOC to meet the requirements of the Remedial Plan.

3. Inmates were given one copy of the Plan free of charge.

4. CDOC posted notice through the duration of the compliance period in all facilities that the compliance period for the Montez case has been extended and that outlines the agreements and remedies contained herein.

5. CDOC distributed of letter from class counsel letter to the inmates in the AIC database outlining the 2006 Stipulation.

6. CDOC eliminated any "ADA" or "handicapped" jobs that pay less than the regular inmate wage scale and handled the claim process.

8. CDOC refunded charges assessed to inmates for copies made for damage claim hearings.

9. The defendants reimbursed Plaintiffs' counsel for out-of-pocket costs incurred since August 2005 in preparation for the compliance hearing.

The Parties do not anticipate any objections associated with the authenticity of any exhibits.

## 5.  PENDING MOTIONS

a.       Defendants submitted a hearing brief prior to the beginning of the hearing.

Plaintiffs anticipate filing a response at the conclusion of the hearing which may be in the nature of proposed Findings of Fact and Conclusions of Law.

## 6.  WITNESSES REMAINING AND EXHIBITS EXPECTED TO BE SHOWN TO THEM

**NOTE:**  This order may change depending on individual witness schedules but this is the generally contemplated order of witnesses.

The description of testimony and exhibits of the two remaining expert witnesses, Dr. Zax

and Dr. Frantz, are included in this list in the order in which they are expected to be called.

1.   **Director of Clinical Services Joanie Shoemaker - anticipated time: redirect: 3 hours Plaintiffs' request 1-2 hours on recross if redirect examination is beyond the area of the direct; Defendants object to recross**

   - Already Covered: Compliance with Remedial Plan Sections: IV DRDC, V Placement, XIII Inmate Programs, Activities and Work Assignments, XIV Everyday Living Assistance, XV Training, XVI Health Care Appliances, XXV Visiting, XXVI Health Care Status Determination, 2008 Stipulations: Personal Glasses, Batteries for Hearing Aids, Bathroom Breaks, Diabetic Kit Training, Dog Program, SOTMP Phase II, Standardized Procedure for Jobs, Medical Co-Pays, Diabetic accommodations, 2006 Stipulations: Medical Co-Pays, Eliminate ADA Jobs that Pay less;

   - Completion of re-direct.

2.   **Executive Director Ari Zavaras**
     **anticipated time: cross: 3 hours, redirect: 1 hour**

   - Already covered: Compliance with Remedial Plan Sections: I Policy and II AIC as well as overall compliance with the Plan and the Stipulations;

   - Cross-examination and re-direct.

3.   **Physical Plant Director Richard Weems**
     **anticipated time: direct: 1 hour, cross: 1 hour**

   - Overall compliance with Remedial Plan Section VII – Structural Compliance, XV – Training in the Remedial Plan, XX Evacuation and Emergency Procedures; 2008 Stipulations: Cells with call buttons for inmates with history of hypoglycemia; Hearing impaired housed in cells with strobe alarms at CTCF;
   - Physical plant training and issues (if necessary);
   - Purchase orders and installation of strobe lights and call buttons and timing of orders and installation;
   - Administrative segregation cells;
   - Any issues about physical plant;
   - Fire procedures in correctional facilities and CDOC compliance with national fire safety regulations;

Exhibits:
- D-6 – Physical Plan training from 1/06 with rosters, 1/27/06
- B-8 – Purchase orders and change orders, along with other supporting documentation, for the diabetic call buttons and strobes

4. **Lou Tuccitto from Correctional Health Partners**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XVI of the Remedial Plan relating to Health Care Appliances; 2008 Stipulations relating to Repairs to Auxiliary Aids and Wheelchair repairs;
- CDOC's purchase and repairs of offender DME's from outside vendors;
- Identify records of these expenditures and other related issues;
- He will explain the role of Physician Health Partners (now called Correctional Health Partners) with CDOC.

Exhibits:
- K-6 – Hearing aid repairs
- P-6 – Wheelchair and accessories repair and purchase records
- Q-6 – PHP report for purchase of contacts lenses and glasses
- R-6 – Montez related equipment costs for DME
- S-6 – Records of DME expenses

5. **Former Supervisor at DRDC Jim Falk**
   **anticipated time: direct: 2 hours, cross: 2.5 hours**

- Compliance with Section IV of the Remedial Plan regarding Denver Reception and diagnostic center intake, disability identification and temporary accommodation, Section V Placement, and Section XVIII, Institution Procedures;
- Procedures at intake and housing at DRDC;
- The number of offenders processed through DRDC annually;
- Identification and assignment of disabled inmates at DRDC, and temporary accommodations provided;
- He will identify forms and policies used at the Denver Complex.

Exhibits:
- G – ADA cheat sheet
- H – Preliminary Alert check list
- I – Orientation Video at DRDC
- J – Sample Temporary ARs for mobility, vision, hearing, and diabetes
- K – Denver Complex Offender Orientation Handbook, updated

- L – Sample QT Profile and Sample of a QT Profile for a hearing impaired inmate Kerry Gallegos, #124604
- M – CCC offender orientation handbook, updated 3/01/09
- N – Sample memo from James Falk to a case manager re AR for an individual inmate, Mary Fernandez, dated 2/3/09
- O – Sample ADA Confirmation Form from Falk to case manager re an ADA offender
- P – IA 750-04 effective date 11/1/2008 for Denver Complex
- Q – IA 850-07, effective date 1/15/09 for Denver Complex
- Z – IA 850-06 – Property AR effective date 12/15/08 for Denver Complex
- P-3 – IA 300-23 for Denver Complex - Offender Work Program, 9/02/08

6. **Case Manager Deb Ahlin**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XIII of the Remedial Plan relating to inmate jobs and programs; 2008 Stipulations relating to jobs and job assignments
- Procedures of offender referrals to job boards and how disabled offenders are assigned to jobs and accommodations they can receive at DWCF;
- Familiarity with employment procedures for disabled offenders;
- Other related issues.

    Exhibits:
- C – AR 750-04 re ADA, effective date 9/1/08
- O-3 – AR 850-03 – Offender Assignment and Pay, effective date 4/20/09
- P-3 – IA 300-23 for Denver Complex - Offender Work Program, effective date 9/02/08

7. **Former Case Manager Dave Allen**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XIII of the Remedial Plan relating to inmate jobs and programs, and Section XVII Institution Procedures; 2008 Stipulations relating to jobs;
- Inmate job procedures at CTCF and how disabled inmates are accommodated;
- He will testify regarding how he became familiar with job procedures for disabled inmates;
- He may also discuss the tag plant assignments.

    Exhibits:
- O-3 – AR 850-03 – Offender Assignment and Pay, effective date 4/20/09
- Q-3 – IA 300-23 for CTCF – Offender Work Program, effective 11/12/08

- U-6 – Sample inmate orientation form for David Brumbley, #47004 and CTCF Montez Facility Orientation Handbook, dated 12/10/08, given inmates during orientation intake process at CTCF
- L-3 – Samples of Gym Time for disabled offenders at CTCF

**8. Case Manager Randy Malden**
**anticipated time: direct:  1 hour, cross: 1 hour**

- Compliance with Section XIII of the Remedial Plan relating to inmate jobs and programs, and Section XVII Institution Procedures; 2008 Stipulations relating to Standardized procedure for jobs and dog program at FLCF;
- Employment procedures at FLCF for inmates and how disabled inmates go through the process;
- He will explain how he learned of the process for disabled inmates;
- Possible accommodations for disabled offenders.

Exhibits:
- C – AR 750-04 re ADA, effective date 9/1/08
- O-3 – AR 850-03 – Offender Assignment and Pay, effective date 4/20/09
- V-3 – List of inmates at FLCF and Dog Program; List of Inmates at FLCF who requested Dog Program but were not admitted

**8. Case Manager Frank Ortiz**
**anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XIII of the Remedial Plan relating to inmate jobs and programs; 2008 Stipulations regarding jobs and job referrals;
- Employment of disabled inmates at the Colorado Minimum Centers;
- Accommodations for disabled inmates and communication about disabled inmates at minimum and minimum R facilities;
- Other related issues.

Exhibits:
- C – AR 750-04 re ADA, effective date 9/1/08
- O-3 – AR 850-03 – Offender Assignment and Pay, effective date 4/20/09

**9. Warden at CTCF Pam Ploughe**
**anticipated time: direct: 2 hours, cross: 1 hour**

- Compliance with Section XIII of the Remedial Plan relating to Inmate Programs, Activities, and Work Assignments, Section XVIII of the Remedial Plan relating to Institution Procedures, and Stipulation 2008 relating to TTY machines;
- She will testify about procedures at CTCF regarding disabled inmates;
- She will testify about placement of offenders at cell houses 1 and 5;
- Recreation times for disabled offenders;
- Telephone regulations for offenders;
- Will address how disabled offenders are oriented and accommodated at CTCF;
- She may also testify about CDOC's ACA accreditation.

Exhibits:
- L-3 – Samples of gym time for disabled offenders at CTCF
- Q-3 – IA 300-23 for CTCF – Offender work program
- U-6 – Sample orientation form; CTCF orientation handbook
- A-8 – IA 850-12 for CTCF – telephone regulations

**11. Tami Williams – employee who works with ACA accreditation anticipated time: direct: 1 hour, cross: .5 hours**

- Ms. Williams may testify about CDOC's ACA accreditation procedure and what portions of the ACA standards concern disabled offenders.

Exhibits:
- R-12 – ACA standards relating to disabled offenders.

**11. Financial employee Sheryl Sandefur anticipated time: direct: .5 hour, cross: .75 hour**

- Compliance with 2006 Stipulation relating to additional funding for CDOC;
- Additional funding CDOC requested and received in 2006 for the Montez compliance issues as well as how the money was spent.

Exhibits:
- V-8 – records of supplemental sought in 2006

**12. Director of Sex Offender Management program Peggy Heil anticipated time: direct: 2 hours, cross: 1 hour**

- Compliance with 2008 Stipulation relating to SOTMP Phase II at a designated facility; and Section XIII of the Remedial Plan relating to program availability;

- The sex offender treatment program at CDOC;
- Its accessibility to disabled offenders;
- How offenders are prioritized for entry into the various phases of the treatment.

Exhibits:
- D-8 – Clinical Standards for Sex Offender Treatment and Monitoring program
- E-8 – AR 700-19 re Sex Offender program
- F-8 – Memo re: Sex Offender program
- G-8 – List of eligible offenders for Sex Offender program
- H-8 – ADA offenders involved in sex offender program

**13. AIC employee Adrienne Jacobson**
   **anticipated time: direct: 1.5 hours, cross: 1 hour**

- Compliance with Section II AIC, possibly Section V placement, XVIII Inmate Programs, Activities and Work Assignments, possibly Section IX Tracking;
- The basis for the list of disabled offenders that she provided to Mr. Engstrom who used the data to run an offender assignment report which was then used by Dr. Jeffrey Zax in preparing his expert report;
- She will explain the difference between the original list that was provided to Mr. Engstrom and Plaintiffs counsel and the later list provided;
- She will explain and identify AIC data bases as necessary.

Exhibits:
- E-1 – AIC List of disabled inmates as of 4/30/09 and legend\
- Possibly 357A and B – Reports of inmates in jobs and programs
- Possibly 667 – Database report

**14. Computer analyst Paul Engstrom**
   **anticipated time: direct: 1 hour, cross: 1 hour.  Plaintiffs object to the recall of this witness as he has already testified and subjected to direct examination by the defense.**

- Compliance with Sections II AIC and Section XIII Inmate Programs, Activities, and Work Assignments, possibly Section IX Tracking;
- The creation of the database relied upon by Dr. Zax in his expert report;
- He will explain the difference between the original list and the subsequent list of disabled inmates;
- He will identify and explain the data bases at CDOC as necessary.

<u>Exhibits:</u>
- S-3 – List of Offender Assignments at each facility
- U-3 – Offender jobs and programs and services
- F-2 – Sample screen shots re daily movement
- H -2 – Daily ADA roster computer form by facility
- 357 A and 357 B – Reports of inmates in jobs and programs
- 667 – Database report

**15. Dr. Jeffrey Zax, economic expert**
   **anticipated time: direct: 2 hours, cross: 2 hours**

- Compliance with Section XIII Inmate Programs, activities, and Work Assignments;
- Dr. Zax is an expert economist and will testify regarding the matters covered in his report;
- He will address placement of ADA offenders in jobs and educational programs as of May 1, 2009 and the comparison of the distribution of disabled offenders in jobs and educational programs throughout CDOC by facility as well as type of job or program;
- He will also testify about the representation of disabled inmates in the tag/tab plant at CTCF.

   <u>Exhibits:</u>
- P-4 – Expert report
- R-12 – One page summary of tag plant research
- E-1 – AIC list of disabled inmates as of 4/30/09

**16. Transportation employee Matt Winden**
   **anticipated time: direct: .5 hours, cross: 1 hour**

- Compliance with Section XXIV of the Remedial Plan relating to Transportation;
- CDOC transportation procedures and policies regarding disabled offenders and other related issues.

   <u>Exhibits:</u>
- H-7 – AR 300-37RD re vehicle transportation of offenders
- I-7 – AR 300-45RD re Central Transportation of Offenders, effective date 9/15/08
- J-7 – Pictures of mass transport buses/ vans, as well as handicapped vans

**17. Former CDOC employee Sue Grisenti**
   **anticipated time: direct: 1.5 hours, cross: .5 hours**

- Compliance with Section X of the Remedial Plan relating to Reasonable Accommodations and Stipulation 2008 relating to TTY machines;
- The installation and use of the TTY machines at CDOC;
- Offender training on how to use the machines the policies and procedures in relation to offender communication and related issues.

  Exhibits:
- A-3 – AR 850-12 re telephone regulations
- B-3 – Lesson plan for training on TTY kiosk use
- C-3 – Emails re training of offenders on use of TTY kiosks
- D-3 – TTY kiosk photo
- E-3 – TTY kiosk schematic
- F-3 – CIPS kiosk installment report

**18. Former CDOC employee, trainer Susan Hay/ CDOC's trainer Linda Caudill anticipated time: direct: 1.5 hours, cross: 2 hours**

- Compliance with Section IV of the Remedial Plan relating to DRDC and Section XIII of the Remedial Plan relating to Inmate Programs, Activities, and Work Assignments;
- Training provided to nurses and providers regarding entering and updating data on disabled offenders;
- Training provided to various employees regarding Code 13;
- They will identify training materials and rosters.

  Exhibits:
- T – PCDC*S* ADA Medical Intake forms and screen shots
- U – PCDCIS ADA medical follow up encounter forms and screen shots
- V – PCDCIS ADA Medical ADA FRA forms and screen shots
- W – Training rosters
- Y-3 – Inmate scheduling master program
- A-4 - Email
- E-4 – MPS training
- F-4 – Training rosters
- G-4 – Email
- H-4 – Email
- I-4 – Email

**19. Trainer Amber Autobee anticipated time: direct: 2 hours, cross: 2 hours**

2315153_1.doc

- Compliance with Section XV of the Remedial Plan relating to training and 2008 Stipulations re: annual testing;
- Basic and annual refresher training concerning disabilities and disabled offenders;
- Diabetic kit training;
- Training for trainers for training in private facilities;
- Identify training materials, test results following the trainings, rosters of staff that were trained;
- Other training issues.

Exhibits:
- Y-4 – Basic Training Academy – Montez training – CUPD 05
- Z-4 – Annual refresher training – CART 08
- A-5 – Memo from Andrea Burrows to Joanie Shoemaker on 12/5/08 re Montez refresher course training
- B-5 – Team management of diabetes, dated 11/27/2007
- C-5 – Roster of people, who took team management of diabetes training, dated 11/27/2007 through current, 11/05/09 with Memo from Nancy Photos to Annamarie Campbell on 11/15/09 re team management diabetes
- D-5 – July 2008 diabetic kit training lesson plan done during roll call
- F-5 – CD with rosters of basic, refresher, diabetic, and diabetic kit training and test results
- Y-5 – Memo from Amber Autobee to Private Prisons, dated 08/27/08 re mandatory Montez training for privates

**20. Diabetic trainer Sherron Wallick**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XV of the Remedial Plan relating to training;
- Offender diabetic training and any issues related thereto;
- Identify training materials and posters for diabetic offenders.

Exhibits:
- G-5 – Job Descriptions for diabetic educator and Standards of Practice for RD (registered dieticians) in Diabetes Care for Sherri Wallick's position
- H-5 – Sharon Wallick's CV
- I-5 – Video re diabetic & healthy food choices, 03/07
- J-5 – Offender diabetic training 2009; Diabetes education materials
- K-5 – Offender diabetic training rosters – 5/1/08 through 4/30/09

**21. Private Monitoring unit employee Travis Brubaker**

      **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XV of the Remedial Plan relating to training at private facilities;
- Diabetic and case manager training provided at private facilities;
- Will identify training materials and rosters.

      <u>Exhibits:</u>
- Z-5 – Memo from Trevor Williams to all Private Prison Wardens re Mandatory Montez Training
- A-6 - Rosters for privates re refresher Montez training ("in service")
- B-6 – Rosters for all private facilities (CMRC, KCCC, CCCF, HCCF, BCCF)
- C-6 - After Hours Diabetic Emergency Procedure and Diabetic Kit Contents

**22. Quality Assurance employee Renae Jordan**
      **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XV of the Remedial Plan relating to training; 2008 Stipulations regarding diabetic treatment and accommodations;
- CDOC quality assurance program;
- The diabetic audits and related issues.

      <u>Exhibits:</u>
- N-5 – Audit of the CDOC Diabetes Patients, dated June 2008
- O- 5 – Audit of the CDOC Diabetes Patients, dated March 2009

**23. Chief Medical Officer Paula Frantz, M.D.**
      **anticipated time: direct: 1.5 days, cross: 1.5 days**

- Compliance with Section IV of the Remedial Plan relating to DRDC intake; Section VI Designated Facilities; Section XV Training; XVI Health Care Appliances; Stipulations regarding personal glasses; hearing aid batteries; screening and disability criteria; bathroom breaks; specific inmate medical care, treatment and prescriptions raised in Plaintiff's case;
- She will testify as an expert regarding criteria and clinical procedures for identification of disabled offenders in CDOC as well as treatment issues;
- She will address medical issues raised by Plaintiffs and offenders who testified in their case;
- She will testify regarding training of staff for treatment and identification of disabled offenders, diabetes, and diabetic issues;

- she will address clinical treatment of diabetics at CDOC;
- She will also address clinical services procedures for disability screenings, criteria used, training of providers, her review of provider recommendations and Accommodation Resolutions as well as the use of M Codes by CDOC;
- She will describe her activities immediately after mobility criteria were agreed upon;
- She will identify all Clinical standards and training materials as well as medical records;
- She will address medical issues raised by Plaintiffs counsel regarding specific offenders.

Exhibits:
- X – Boots
- D-2 – M-code clinical standard, 02/09
- B-5 – Team management of diabetes, dated 11/27/2007
- L-5 – Diabetic postings and calendar for 2008-2009
- M-5 – Patient info sheet re diabetic reaction
- N-5 – Audit of the CDOC Diabetes Patients, dated June 2008
- O-5 – Audit of the CDOC Diabetes Patients, dated March 2009
- P-5 – ADA provider training dated 02/09 (CD)
- Q-5 – Training with attachments (ADA mobility screening directions)
- R-5 – Training rosters for provider ADA training re new disability criteria 02/09 and 03/09
- S-5 – Test for medical providers re disabilities with answers for new criteria, Feb. 2009
- T-5 – Test results for provider training on 2/27/09
- U-5 – Email from Dr. Frantz re ADA rescreening on 3/3/09
- E-6 – Clinical Standard for DMEs, 06/08
- V-7 – Clinical Standards re Optometry/Ophthalmology Services, revision date, June 2008
- C-8 - E-mail from Adrienne Jacobson re hearing criteria, dated 12/21/09
- F-11 – Report of Dr. Frantz re diabetic care
- S-12  - Summary Rebuttal exhibit regarding individual inmate case issues raised by Plaintiffs
- Inmate medical records supporting rebuttal exhibit

**The following witnesses may be called:**

1. **CDOD Employee Anna Marie Campbell**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XVI of the Remedial Plan relating to Health Care Appliances; 2008 Stipulations relating to wheelchair clinics and repairs to DME;
- May testify about the establishment of the wheelchair clinics and procedures for repairs to wheelchairs;

- May testify about wheelchair clinics, repairs, and related issues;
- She may identify records of wheelchair clinics and repairs;
- She could testify about coordination of clinical issues regarding disabled inmates.

    Exhibits:
- L-6 – Samples of video announcements regarding wheelchair clinics
- M-6 – Calendar of wheelchair clinic inspections
- N-6 – Report of wheelchair clinics
- O-6 – Report about clinics with attachments

2. **Parole Division Tim Hand**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Sections XXVIII, XXIX, and XXX regarding Parole;
- May testify about parole field operations and accommodations for disabled offenders;
- He may testify about community corrections referrals and other issues related to offenders on parole.

    Exhibits:
- O-7 – AR 250-03 re adult parole, community corrections, and YOS, 5/15/08
- P-7 – Memo re offender Gary Washington

3. **DOC employee Chuck Hildebrand**
   **anticipated time: direct: . 5 hours, cross: .5 hours**

- Compliance with Sections XXII Restraints, and XXIII Searches.

    Exhibits:
- E-7 –AR 300-16RD re use of force options, effective date 8/15/08
- F-7 – AR 300-06 re facility security (searches), effective date 8/01/08
- G-7 – IA 300-06 for CTCF re searches and contraband control, effective date 9/11/08

4. **CDOC head librarian Diana Reese**
   **anticipated time: direct: .5 hours, cross: .5 hours**

- Compliance with Sections X Reasonable Accommodations, and XVII Library Equipment;
- May testify about library materials regarding this case and auxiliary aids available in the libraries for use by disabled offenders.

    Exhibits:

- K-2 – AR 500-02 re library services, effective date 12/15/08
- L-2 – List of auxiliary aids maintained in the libraries in each facility, updated 7/27/05 and March 2010 Inmate library orientations from YOS for 01/09 and CWCF for 01/09, Materials and Equipment for Offenders with Special Needs at CTCF, dated April 2009

**5. CDOC employee Brian Gomez**
   **anticipated time: direct: .5 hours, cross: .5 hours**

- Compliance with Section VI of the Remedial Plan relating to Designated Facilities and Section XIII relating to Inmate Programs;
- May testify about the pre-release programs at CDOC, their availability to disabled offenders, and any related issues.

   Exhibits:
- C-2 – Information regarding CDOC's pre-release programs

**6. CDOC employee Randy Smith**
   **anticipated time: direct: 1 hour, cross: .75 hours**
- Compliance with Section XIV of the Remedial Plan relating to Everyday Living Assistance;
- He may testify about training materials for offender care aides and rosters of the trainings.

   Exhibits:
- S-4 – Offender care aide I, II, and III job descriptions
- T-4 – OCA training manual
- U-4 – Tests with answers for OCA I and II
- V-4 – Sample OCA certificate
- W-4 – Training rosters
- X-4 – Summary of OCAs trained

**7. CDOC employee Brian Hoffman**
   **anticipated time: direct: .5 hours, cross: .5 hours**

- May testify about searches and counts of disabled offenders;
- May also testify about the original development of the Montez general training for employees;
- May identify training materials and rosters.

   Exhibits:

2315153_1.doc

- No specific Exhibit

**8.  Fire safety employee Danny Adams**
   **anticipated time: direct: 1 hour, cross: .5 hours**

- Compliance with Section XX – Evacuation/ Emergency Procedures;
- May testify about fire evacuation procedure, fire drills, and fire plans at LCF;
- May testify about general training on fire drills during basic training and other related issues.

   Exhibits:
- Z-6 – LCF's evacuation plan on the disabled offenders (an excerpt out of LCF's Fire Plan) LCF's Fire Plan
- A-7 – Memorandum from Danny Adams, Life Safety Coordinator at LCF to Terry Jaques, Physical Plant Manger re fire drills swing shift, dated 2/19/09 and sample reports
- B-7 – Letter from Jason Lacik, Assistant Fire Chief to Travis Trani, Warden at LCF re Limon Fire Department's approval  of LCF's Fire Plan, as written, dated 2/19/09
- AR 300-15 re Fire Safety.

**9.  Fire safety employee Phil DeFelice**
   **anticipated time: direct: 1 hour, cross: 1 hour**

- Compliance with Section XX of the Remedial Plan relating to Evacuation/ Emergency Procedures;
- May testify about the fire drills at FLCF in September of 2007 and evacuation procedures;
- Compliance with National Fire safety policies and other related issues.

   Exhibits:
- W-6 – FLCF evacuation DVDs
- X-6 – Memo regarding the evacuation at FLCF

**10. Any Witness or exhibit necessary for impeachment or rebuttal.**

   Defendants may need to inquire about additional exhibits with various witnesses

depending on cross examination or issues that are raised during the completion of the hearing.

**7.  EXHIBITS**

The exhibits anticipated to be introduced with each witness are identified above. An updated exhibit list is attached.  Plaintiffs reserve the right to introduce rebuttal exhibits dependent upon the testimony offered by the Defendants.  Plaintiffs also object to the admission of new exhibits by the Defendants which have not been previously disclosed to the Plaintiffs and which are not proper rebuttal evidence.  Plaintiffs disagree with the status of the admission of some of the exhibits listed by the Defendants in the attached list and will confer with their counsel about these matters.

## 8.  DISCOVERY

Discovery has been completed.

## 9.  SPECIAL ISSUES/10. SETTLEMENT

The attorneys for the parties met and discussed the matters raised by the Court in its order of Sept. 16, 2010. The Court asked that the parties explore modification of the Remedial Plan. Both parties are willing to discuss modifications to the plan to streamline its implementation and the Court's review of compliance with the Plan. However, there are some challenges associated with proceeding in this fashion now.

*Plaintiffs*:

The Plaintiffs agree that modification of the Remedial Plan (the "Plan") is appropriate to address specific problems that were not foreseen by the parties at the time of the entry of the consent decree, and to provide a coherent process for determining substantial compliance with the Plan.  Plaintiffs believe that the implementation of standardized reporting and compliance

2315153_1.doc

measures would significantly streamline the process of determining such compliance and such processes could be easily developed.  From the Plaintiffs' perspective, the difficulty with presenting evidence of compliance or non-compliance is the dearth of accurate data or reliable databases and reporting systems within CDOC by which to measure compliance system-wide. Plaintiffs believe such systems can be and should be developed and this problem can be resolved in a modified Plan.

At the meeting between counsel for the parties to discuss this issue, a "stumbling block" was the issue of what to do with the current requirement that the deadline for "substantial compliance" was May 1, 2009.  The defense has stated it will not stipulate to non-compliance as of that date, and the parties discussed how they could move forward without any determination of that issue.  Plaintiffs' counsel does not believe that the CDOC would have to stipulate to non-compliance in order to move forward with modification, as modification is appropriate where there are changed circumstances that undermine the essential purposes of a consent decree or when the original decree proves unworkable.  Plaintiffs' counsel believe that this Court could hold that it was not making a ruling on the question of substantial compliance at this time.  On the other hand, Plaintiffs' counsel believe that class members would be entitled to some interim relief if another future compliance deadline is set.  Plaintiffs' counsel suggest that such relief could be in the form of the Parties reaching immediate agreement on certain benefits to be immediately provided to class members.  Although Plaintiffs' counsel has not had the opportunity to explore what benefits would be requested, they could include, for example, such benefits as the immediate revision of the soft-soled shoe standard for inmates with diabetes.

Counsel for the defense indicated that the CDOC would not be amenable to such concessions.

Given the widely divergent opinions between the parties regarding the issue of compliance, Plaintiffs believe it would be useful for the Court to appoint a Special Master regarding the appropriate modifications to the Remedial Plan.  Plaintiffs believe that the person who would be in the best position to advise the parties and the Court on necessary modifications would be the former AIC, Ms. Cathie Holst.

*Defendants*:

The Defendants note that they have not yet introduced the majority of their case so the Court has not had the benefit of hearing from Defendants' witnesses regarding compliance with the Plan. The Defendants' position is that CDOC was in substantial compliance with the Plan as of May 1, 2009 and that the monitoring period began at that time. As an alternative, the Court might also find substantial compliance, but that the monitoring period should begin now, and that a modified plan would govern the next two years during which the activities of CDOC would be monitored.  Plaintiffs counsel has indicated that it will not stipulate to substantial compliance as of May 1 2009. Defendants believe that a modification of the Plan is appropriate after the hearing in order to simplify the processes, combine and create more uniform data bases, and develop a more simplified way to evaluate compliance during the monitoring period.

Given the interests of the parties, it is difficult to discuss modification of the Plan at this time. The parties are open to any guidance that the Court may provide.

## 11.  EFFECT OF PRETRIAL ORDER

Hereafter, this Pretrial Order will control the subsequent course of this action and the

trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  In the event of ambiguity in any provision of this Pretrial Order, reference may be made to the record of the Pretrial Conference to the extent reported by stenographic notes and to the pleadings.

## 12.  TRIAL AND ESTIMATED TRIAL TIME/FURTHER TRIAL PREPARATION PROCEEDINGS

a.      Trial to the Court.  The parties estimate three to four weeks to complete the hearing.

b.      Trial Date:  Oct. 18 – 28; Nov. 8-12 (the 11th is a holiday); Nov. 15-17, 2010

c.      Final Trial Preparation Conference Date:  May 26, 2010.

d.      Deadline for filing motions objecting to any testimony of an expert witness based on the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), and their progeny*: has passed.

Any such objections not identified in Section 9 of this Order and filed by motion by this date are deemed waived.

e.      Deadline for filing all other motions in limine, including objections to exhibits and designated deposition testimony has passed:

DATED this 27nd day of September, 2010.

2315153_1.doc

BY THE COURT:

_____
JOHN L. KANE, Senior Judge
United States District Court


**AMENDED PRETRIAL ORDER APPROVED:**


s/Paula Greisen                                    s/Elizabeth H. McCann
Paula Greisen                                      Elizabeth H. McCann
Jennifer Riddle                                    James X. Quinn
King & Greisen LLP                                 Berina Ibrišagić
1670 York St.                                      Colorado Attorney General's
Denver, CO 80206                                   Office 1525 Sherman Street, 5th Floor
303-298-9878                                       Denver, CO 80203


Edward T. Ramey
Blain D. Myhre
Lara E. Marks
Isaacson Rosenbaum P.C.
1001 17th Street, Suite 1800
Denver, CO 80202
303-292-5656


*Attorneys for Plaintiffs*                          *Attorneys for Defendants*

2315153_1.doc