IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE (JESUS) MONTEZ, et al.,

    Plaintiffs,

-vs.-

BILL RITTER, et al.,

    Defendants.

_____

Claim Number: 03-334
Category: III
Claimant: Marty Bueno, #50565
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

_____

**ORDER OF SPECIAL MASTER**
_____

    THIS MATTER came before the Special Master on September 7, 2010 at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Marty Bueno (Claimant); Deann Conroy, attorney for Defendants; and Dr. Timothy Creaney, M.D. Testimony was presented from Claimant and Dr. Creaney. Closing arguments were presented by Claimant and Ms. Conroy. The case then was taken under advisement.

**I.**

    On July 27, 2004, Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. Claimant alleged that he was mobility impaired. He further alleged that he had been the victim of discrimination in violation of the ADA and Rehabilitation Act. Claimant was incarcerated at the Centennial Correctional Facility (CCF) in Canon City, Colorado.

    A hearing on this claim was held before Special Master Richard C. Davidson on February 27, 2007 at the Limon Correctional Facility (LCF) in Limon, Colorado. Claimant had been transferred from CCF to LCF.

    Special Master Davidson determined that Claimant had been injured in an industrial accident. He suffered a badly fractured femur that required repair with a rod being placed into his leg. The result of the injury was a leg discrepancy that required specially built up footwear. DOC provided

boots with a built up sole. Claimant also was provided with an egg crate mattress and a wedge pillow. At some point, DOC provided Claimant with specially built up tennis shoes. These were taken at an undetermined point in time prior to August 27, 2003. The items were returned and then taken again at CTCF in February, 2005.

In his findings of fact, Special Master Davidson noted, in part, as follows:

> The Special Master finds and concludes that Claimant Bueno is a mobility disabled person under the terms of the remedial plan. It is apparent that DOC also considers him disabled since he was provided with special boots with built up soles in order to correct his leg discrepancy. Further his leg discrepancy and the rod in his femur limit his ability to sleep without the additional accommodations provided and then removed by DOC, the wedge pillow and the egg crate mattress. This is sufficient to demonstrate a substantial limitation on the major life activities of walking and sleeping.

Special Master Davidson found as a matter of law and fact that seizure by DOC officers of Claimant's wedge pillow, egg crate mattress, and medical boots constituted a violation of the ADA and Rehabilitation Act.

The final order of the Special Master was entered on November 19, 2007. The parties were granted up to and including February 15, 2008 in which to file an objection to the final order. Claimant did file an objection, requesting that he be awarded money damages. On September 22, 2008, Judge Kane overruled the objection. Judge Kane held as follows:

> This matter is before the court on claimant's Objection to Final Order of Special Master (doc. #3132). I have reviewed the Objection, along with Mr. Bueno's subsequent filings, and the Final Order and I rule as follows:
> The standard of review is abuse of discretion and no such abuse was found. The rulings of the Special Master are based on the evidence and the law was properly applied. The relief awarded in the Final Order is not monetary, but rather is the continuing requirement that Defendant provide boots with built up soles to compensate for the leg length discrepancy, a wedge pillow and an egg crate mattress. The Objection is OVERRULED. The Final Order of the Special Master (doc. #3037).

It should be noted that Judge Kane considered all pleadings filed by Claimant up through the date of September 11, 2008. As of that date, all outstanding issues presented by Claimant were adjudicated.

At the hearing on September 7, 2010, Claimant testified that he had been provided specially built boots and tennis shoes off and on while in DOC custody. After the final order of November 19, 2007 was issued, Claimant made a request for special boots and tennis shoes. He requested the tennis shoes in order to exercise and protect his health. Claimant stated that he cannot run in normal

tennis shoes or the boots provided by DOC. Claimant testified that he was fitted for boots and tennis shoes. He testified that it took an extended period of time to get the tennis shoes, but he receive both specially built tennis shoes and boots. Those tennis shoes then wore out and were not replaced. Claimant has been trying to get specially built tennis shoes, making use of the grievance procedures but to no avail.

At the September 7, 2010 hearing, Claimant testified that he had an eye infection that was not treated properly. He requested to amend his claim and to add a vision impairment claim. Claimant stated that he had lost most of his vision in one eye.

Defendants called Dr. Creaney as a witness. He had reviewed the medical records of Claimant. He noted that Dr. Darrow, then a physician with DOC, had indicated on October 23, 2008 that Claimant need a lift to equalize the leg discrepancy. Dr. Creaney did not know how much the discrepancy of Claimant's legs was and could not recall the DOC limits for shoes with lifts. In response to a question from the Special Master, Dr. Creaney testified that was not familiar with the type of tennis shoes that could be ordered from the canteen.

Claimant had filed post-award pleadings that were held in abeyance, as a jurisdictional issue had arisen concerning *pro se* claimant filings. Judge Kane issued an order on March 23, 2010 which clarified the authority of the Special Masters on post-award filings. Judge Kane held that individual inmates who had prevailed on their claims could seek post-award enforcement. Such motions would be resolved by the special masters. *Pro se* filings on systemic issues and general conditions would be dismissed and then referred to class counsel for such action as would be deemed appropriate.

## II.

A jurisdictional issue has been raised by Defendants on this and all other post-award motions filed by claimants. The question is whether the Special Master has any jurisdiction as to this claim to consider any post–award motion. If there is no jurisdiction, then the motion of Claimant must be denied and dismissed.

Special Master Davidson determined that Claimant had proven his case. The specific order of Special Master Davidson was as follows:

> IT IS SO ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Bueno and against Defendants ordering DOC to provide boots with built up soles to compensate for the leg length discrepancy, a wedge pillow and an egg crate mattress for Claimant.

No monetary damages were provided to Claimant in the final order of the Special Master.

The Special Masters have only the jurisdiction granted to them by the Remedial Plan. The Remedial Plan is the document reflecting the terms of the settlement between the class and

3

Defendants. The Remedial Plan is a contract reflecting what was agreed to by the parties and then approved by the Court.

Over the intervening seven years since the Remedial Plan was approved by the Court, several orders were issued by then-Judge Nottingham and Judge Kane. Claimants may file one claim pursuant to Article XXXII of the Remedial Plan. The four categories listed in the Remedial Plan (hearing, vision, mobility, and diabetes) are all inclusive. Other health issues, such as mental illness, are not covered by the Remedial Plan and must be dealt with by an inmate through a separate ADA action.

Judge Kane's March 23, 2010 order dealt with a number of issues concerning the damage claim process and the jurisdiction of the Special Masters. First, individual inmates may not file motions relating to systemic issues. Such motions are to be referred to class counsel pursuant to *McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991). Second, motions related to the enforcement of damage claim final orders may be filed *pro se* with the Special Masters. Third, individual claimants must establish that they were in DOC custody on or before August 27, 2003, were disabled on or before that date, and were the victims of discrimination on or before that date. Judge Kane specifically found that the class had not expanded after August 27, 2003.

Most importantly, Judge Kane provided that no further *pro se* filings or claims were to be accepted after April 16, 2010. The date was extended until April 30, 2010. Judge Kane noted that "it is the deadline for *pro se* claims under §XXXII of the Montez Remedial Plan as well as for any *pro se* compliance/enforcement claims for individual or class-wide injunctive or equitable relief under the Plan or Plan-related Stipulations." Judge Kane's later order provided that April 30, 2010 would be the last day for acceptance of any new *pro se* pleadings. His orders also established a process for closure of the Article XXXII claim process. Once the last claim or motion for enforcement of a final order is adjudicated, then the claim process will be at an end.

The Special Master has struggled with the issue of what, if any, continuing jurisdiction exists under Article XXXII. In light of the March 23, 2010 order of Judge Kane, there is no jurisdiction to adjudicate any further *pro se* motions for compliance. If Claimant were filing his motion for enforcement today, it would be dismissed and referred to class counsel for such action as might be deemed appropriate.

In this case, Claimant has received built up boots, a wedge pillow and an egg crate mattress. Though Claimant has issues with the mattress, pillow and boots, the Special Master finds that there has been adherence to the order of Special Master Davidson. The undersigned Special Master notes that boots have been replaced. More importantly, the final order imposes upon DOC a continuing duty to provide appropriate boots, as well as a wedge pillow and egg crate mattress.

The Special Master also finds that issuance of the final order by Special Master Davidson ended the period of time in which the claim could be amended. Claimant has the right to pursue a separate lawsuit under the ADA or Eighth Amendment for loss of the vision in his eye. Claimant

4

cannot at this juncture amend his claim to include a vision impairment allegation.

### III

The absurdity that exists within DOC and its dealing with ADA issues is clearly seen from this claim. Claimant has requested medical tennis shoes in order to exercise and improve his health. Having handled over two hundred hearings, the Special Master is at a loss why DOC would not encourage every inmate to exercise to the best of their physical abilities. Yet, a request for tennis shoes is turned down with no rationale, other than not complying with some standard that has never been detailed in the two hearings in this case.

All Claimant requested at the hearing on September 7, 2010 was built up tennis shoes. The response was no, because Special Master Davidson did not order tennis shoes and Claimant did not meet clinical guidelines, whatever they may be. *Response to Grievance, September 19, 2009.* The stock reply is that shoes can be purchased from the canteen. The money invested by Defendants in the fight to ensure that Claimant does not have appropriate tennis shoes could have paid for such shoes for the rest of Claimant's incarceration.

The final order does not include tennis shoes. Perhaps this was an oversight on the Special Master's part. Defendants are correct that the final order mentions only boots, an egg crate mattress and a wedge pillow.

The actions of DOC staff reflect a different interpretation of the Special Master's order. Claimant's medical records reflect that on March 27, 2008, DOC medical staff fitted Claimant with both specially built boots and tennis shoes. The medical records further indicate that the tennis shoes and lifts wore out. Claimant was seen for further fittings on September 4, 2008, December 4, 2008 (shoes had to be repaired), and August 10, 2009. It is clear that medical staff in 2008 treated the final order as requiring specially built boots and tennis shoes.

The actions of DOC medical staff reflect a decision to provide both specially built boots and tennis shoes. Defendants now are estopped from arguing that there is no medical need for properly built tennis shoes. DOC staff treated the Special Master's final order as requiring both special boots and tennis shoes. The final order will be amended to reflect what was, in fact, the implementation by DOC of the final order.

What Defendants have not figured out is the actions of their staff have violated the ADA. Claimant has a leg discrepancy. He must have built up shoes, a fact that has been recognized by DOC medical staff since the mid-1990's. No valid reason has been provided why Claimant received appropriate tennis shoes in 2008, but not at the present time.

There are references in Claimant's medical records that Claimant has been told to buy tennis shoes from the canteen. This has been a frequent fall back position raised by Defendants. The problem is that referral to the canteen would be appropriate only if special tennis shoes would be

available. Absolutely no evidence was presented that such tennis shoes would be available. This Special Master asked the Defendants' expert if such shoes were available, and he said that he did not know.

The simple fact is that referral to the canteen does not comply with the ADA, unless there is a showing that appropriate tennis shoe can be obtained. Claimant testified that he could not obtain appropriate tennis shoes through the canteen. That was not refuted at the hearing or otherwise. Claimant should be entitled to accommodations that allow him, at the very least, to be able exercise in tennis shoes that are appropriate. The evidence at the hearing reflects that DOC has acknowledged the need for appropriate tennis shoes over an extended period of time. The evidence reflects a lack of accommodation in making appropriate tennis shoes available for Claimant. Such tennis shoes are not available from the canteen. Right now, appropriate tennis shoes are not available to Claimant, and he cannot go into the community to search for such shoes.

DOC staff acknowledged in 2008 that Claimant was in need of specially built tennis shoes. Such shoes were provided for a time, but then not replaced when they wore out. The Special Master specifically finds that DOC staff initially interpreted the final order to include specially built tennis shoes. The interpretation is binding on Defendants. Claimant is to be provided appropriately fitted tennis shoes.

IT IS HEREBY ORDERED that the motion for enforcement of the final order of the Special Master filed by Marty Bueno is granted, and the final order of Special Master Davison is modified to include specially built tennis shoes; and

IT IS FURTHER ORDERED that Claimant's motion is denied concerning his alleged vision impairment, as there is no jurisdiction to amend the claim at this late date to include a claim of vision impairment; and

IT IS FURTHER ORDERED that a copy of the file maintained by the Special Masters will be provided to class counsel for such action as may be deemed appropriate; and

IT IS FURTHER ORDERED that Claimant, Defendants and class counsel are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 7, 2011.**

SIGNED this 22th day of October, 2010.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers - Special Master