IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

BILL OWENS, et al.

    Defendants.

_____

Claim Number 03-336
Category III
Claimant: Gerry D. Kelly, #59265
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

**ORDER OF SPECIAL MASTER**
_____

    THIS MATTER came before the Special Master for hearing on September 27, 2010 at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Gerry D. Kelly (Claimant); and Deann Conroy, attorney for Defendants.

    The hearing was set to adjudicate Claimant's allegations that the final order of the Special Master had not been followed by Defendants. At the hearing, Claimant was advised that a jurisdictional issue had been raised by Defendants and that issue would have to be resolved before further action was taken on his pending motions. Testimony was received from Claimant and Dr. Thomas Fisher. The case then was taken under advisement.

**I.**

    Claimant previously filed a claim pursuant to Article XXXII of the Remedial Plan. Claimant alleged that he was mobility impaired, vision impaired, and diabetic. Claimant further alleged that he had been the victim of discrimination in violation of the ADA and Rehabilitation Act.

    A hearing was held on the claim of Claimant on June 22, 2007 at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Claimant testified on his own behalf, and documentary evidence was admitted from both sides. The case was taken under advisement.

The final order of the Special Master was issued on July 9, 2007. The Special Master determined that Claimant had been diagnosed as diabetic before August 27, 2003. Claimant was found to be mobility impaired, but not vision impaired. The Special Master determined that Claimant had been the victim of discrimination in one area.

> Claimant received tennis shoes in the past to help him with his foot problems. These shoes also were provided to help with his diabetic neuropathy. At times, these shoes were taken away from him. In addition, he was told to purchase tennis shoes from the canteen. Claimant testified that he does not have the money to purchase tennis shoes and arch supports. The Special Master notes that tennis shoes were deemed important enough in 2001 to be authorized. Yet, the shoes have not been provided on a consistent basis. Claimant noted that his health is compromised due to his financial condition. Claimant faces health issues that a non-mobility impaired inmate does not. Claimant is entitled to shoes that protect his health.

*Final Order, p.7*.

The Special Master determined that Claimant had established damages under the ADA and Rehabilitation Act.

> Claimant has suffered the harm of not being able to afford soft sided shoes and not have those shoes provided by DOC. Claimant is entitled to compensation in order that he might purchase shoes and arch supports. He will be awarded $150.00 as damages.

*Final Order, p.7*. Defendants ultimately did pay $150.00 to Claimant.

After issuance of the final order, Claimant filed additional pleadings. These were held in abeyance, as a jurisdictional issue had arisen concerning the ability of the Special Masters to adjudicate post-award motions and additional claims. Judge Kane's order of March 23, 2010 clarified that issue, and the allegations that Defendants have failed to comply with the final order were set for hearing.

At the hearing, Claimant testified that he wishes to seek a modification of his claim to include a need for back and knee braces. He also requested physical therapy for his back. Claimant stated that he arrived at SCF in September, 2009. He previously had been provided boots and soft sided shoes with arch supports. Upon arriving at SCF, staff took Claimant's boots and had not returned them as of the date of the hearing.

On cross-examination, Claimant testified that he did not know that he was supposed to buy tennis shoes out of the money awarded to him by the Special Master. He responded to several questions by indicating that he had received special inserts for his shoes from DOC medical staff.

Dr. Thomas Fisher, M.D. was called as a witness for Defendants. He testified that Claimant is mobility impaired and has loss of feeling in his feet. Claimant has sensory problems with his feet and may have bunions. Dr. Fisher noted that Claimant has degenerative joint disease in his lower back and left knee. He stated further that Claimant will continue to have problems due to his long-term joint problems.

## II.

A jurisdictional issue has been raised by Defendants on this and all other post-award motions filed by claimants. The question is whether the Special Master has any jurisdiction as to this claim to consider any post–award motion. If there is no jurisdiction, then the motion of Claimant must be denied and dismissed.

The Special Master determined that Claimant was entitled to monetary damages in the amount of $150.00. That amount has been paid to Claimant. The Special Master did not issue any on-going order for medications, durable medical equipment or other accommodations.

The Special Masters have only the jurisdiction granted to them by the Remedial Plan. The Remedial Plan is the document reflecting the terms of the settlement between the class and Defendants. The Remedial Plan is a contract reflecting what was agreed to by the parties and then approved by the Court. Class counsel and Defendants agreed to the following in Article XXXII:

> Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim for damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
> Only one of the categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.
> Class members with damages allocated under categories 1 and 2 shall not be

entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3,4 & 5 shall be entitled to a hearing before the Special Master. Generally, these hearings should be no more than two hours in length. However, the Special Master may extend the time for the hearing when the issues require additional time. Class members that are entitled to a hearing on their respective damages are entitled to counsel during that hearing, to present witnesses, make argument, and to any remedy otherwise available in a court of law.

After review of the evidence, the Special Master shall issue a written determination as to the damages awarded to each claimant. These awards may be appealed on an abuse of discretion review to the Honorable Judge Kane.

Class members, their representatives and counsel are entitled to discovery regarding their damage claims and shall be provided copies of the relevant DOC files upon request, including but not limited to medical information, as well as relevant internal quality assurance documents as allowed by the special master.

Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case. The Special Master may only extend the time limits for filing a claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.

Article XXXII is the only section of the Remedial Plan that deals with the damage claim process. The remainder of the Remedial Plan deals with systemic issues that apply to all class members.

Over the intervening seven years since the Remedial Plan was approved by the Court, several orders were issued by then-Judge Nottingham and Judge Kane. Claimants may file one claim pursuant to Article XXXII of the Remedial Plan. The four categories listed in the Remedial Plan (hearing, vision, mobility, and diabetes) are all inclusive. Other health issues, such as mental illness, are not covered by the Remedial Plan and must be dealt with by an inmate through a separate ADA action.

Judge Kane's March 23, 2010 order dealt with a number of issues concerning the damage claim process and the jurisdiction of the Special Masters. First, individual inmates may not file motions relating to systemic issues. Such motions are to be referred to class counsel pursuant to *McNeil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991). Second, motions related to the enforcement of final orders may be filed *pro se* with the Special Masters. Third, individual claimants must establish that they were in DOC custody on or before August 27, 2003, were disabled on or before that date, and were the victims of discrimination on or before that date. Judge Kane specifically found that the class had not expanded after August 27, 2003.

Most importantly, Judge Kane provided that no further *pro se* filings or claims were to be accepted after April 16, 2010. This date was extended until April 30, 2010. Judge Kane noted that "it is the deadline for *pro se* claims under §XXXII of the Montez Remedial Plan as well as for any *pro se* compliance/enforcement claims for individual or class-wide injunctive or equitable relief under the Plan or Plan-related Stipulations." Judge Kane's later order provided that April 30, 2010 would be the last day for acceptance of any new *pro se* pleadings. His orders also established a process for closure of the Article XXXII claim process. Once the last claim or motion for enforcement of a final order is adjudicated, then the claim process will be at an end.

The Special Master has struggled with the issue of what, if any, continuing jurisdiction exists under Article XXXII. In light of the March 23, 2010 order of Judge Kane, there is no jurisdiction to adjudicate any further *pro se* motions, except for those motions previously filed alleging failure of Defendants to comply with the final order of the Special Masters. If Claimant were filing his motion for enforcement today, it would be dismissed and referred to class counsel for such action as might be deemed appropriate.

The tougher question is what jurisdiction exists after issuance of a final order. As the claim process has progressed, basically two types of final orders have been issued when a claimant has established his claim and is entitled to relief. The first type of order provides monetary damages for the damages that have been suffered by the claimant. In other words, DOC is ordered to pay an amount of money into the claimant's inmate account. Once the payment is made, then Defendants have complied with the order of the Special Master.

The second type of order provides that certain items are to be supplied to a claimant by DOC. These orders have included specially made boots, glucose tablets, wedge pillows, or the like. Whether continuing jurisdiction exists need not be reached in this case. In light of the March 23, 2010 order, no jurisdiction exists after April 30, 2010 to adjudicate any *pro se* pleading. The March 23, 2010 order provides no indication if class counsel could seek enforcement of a final order from the Special Master for something that occurs after April 30, 2010.

The Special Master has reviewed all aspects of this issue, as well as reviewing the Remedial Plan and orders issued over the last seven plus years. The Special Master finds that Article XXXII of the Remedial Plan allows for the filing of one claim and an adjudication of that claim. Once the final order is issued, the claim process is at an end, unless the final order requires Defendants to provide items or services to the claimant on a continuing basis.

In this case, Claimant was awarded money for damages for violations of the ADA and Rehabilitation Act. It is undisputed that Claimant has been paid and the final order has been complied with by Defendants. The Special Master finds that jurisdiction over this claim ended when Defendants paid to Claimant the monetary award contained in the final order. The Special Master has no jurisdiction to adjudicate the motion of Claimant. The motion and associated documents will be forwarded to class counsel.

# III

If the Special Master had on-going jurisdiction, he would rule in Claimant's favor. It is undisputed that Claimant arrived at SCF in September, 2009. At that time, he had his DOC-issued boots taken from him. He was allowed to keep his soft sided tennis shoes. His boots have never been returned to him.

Claimant testified, and it has not been refuted, that he cannot apply for certain jobs at SCF because he does not have his boots. As a result, he has been denied the opportunity to obtain better paying employment. In other words, staff at SCF have failed to provided accommodations for Claimant that would allow him to compete for work positions with inmates who are not disabled. In most cases, the problem has been that DOC has taken soft sided shoes and have not returned them. Here, it is the boots that are unavailable. No evidence was presented by Defendants to substantiate why the boots had not been returned to Claimant.

Claimant has established an on-going violation of the ADA at SCF. Claimant may seek the help of class counsel or may pursue a separate lawsuit. The claim process for Claimant ended when he was paid his monetary damages. The Special Master would like to right the wrong that has occurred at SCF, but there is no continuing jurisdiction to do so.

IT IS HEREBY ORDERED that the motion for enforcement of the final order of the Special Master of Gerry D. Kelly is dismissed for lack of jurisdiction; and

IT IS FURTHER ORDERED that a copy of the file maintained by the Special Masters will be provided to class counsel for such action as may be deemed appropriate; and

IT IS FURTHER ORDERED that Claimant, Defendants and class counsel are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before February 15, 2011.**

SIGNED this 22nd day of October, 2010.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master