IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 92-CV-00870-JLK

JESSE MONTEZ, et. al.,
                Plaintiffs,

V.

BILL RITTER, et. al.
                Defendants

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC - 8 2010

GREGORY C. LANGHAM
                    CLERK

Claimant: Raymond D. Goodloe, #51437
Claim No: 03-445
Category: III
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, Co. 81038

## MOTION FOR STATUS REVIEW HEARING AND ORDER OF THE COURT

COMES NOW, The Claimant Raymond D. Goodloe, #51437, proceeding Pro-Se in Case #03-445 on his Motion for Status Review and respectfully petitions the Court for its Order directing CDOC to compensate the Claimant in the amount of $3,000.00 and authorize the Claimant to purchase [Appropriate] soft soled footwear, inserts and an ankle brace from a CDOC authorized, approved vendor.
In support of his Motion, the Claimant states the following;

### STATEMENT OF THE CASE

1). On October 16, 2009, a hearing was held at F.L.C.F. after the Claimant filed a Motion to Compel with the Special Master Judge Borchers. At this hearing the Claimant presented evidence in the form of the footwear and ankle brace CDOC has provided to him, claiming them to be [Appropriate] for the Claimants medical needs. However, the shoes and ankle brace issued can not be worn by the Claimant as they only serve to exacerbate the already painful chronic issue with the Claimants right ankle.

2). On March 6, 2009, Judge Richard Borchers issued the Final Order of the Court, directing CDOC to provide the Claimant with soft soled shoes and an ankle brace appropriate to assist the Claimant with the chronic pain, swelling and bruising of his right ankle and help in the management of the chronic medical issues

which exist due to the effects of the injury on the ankle joint's [Bearing Surface]. The Claimant believes that Judge Borchers intended CDOC to provide him with assistive devices, such as soft soled shoes and an ankle brace, that are designed with the Claimants [Specific] medical needs in mind. The shoes and brace issued to the Claimant are common, everyday items that have no real orthopedic value, and are a long way off from being an " Assistive Device ", and in no way assist the Claimant in the management of the chronic pain, swelling or bruising of his ankle.

3). The assistive devices provided to the Claimant cause extreme and increasing pain, and as a result, the Claimants chronic medical issue is made worse by the use of the shoes and brace issued. The assistive devices can <u>Not</u> be worn by the Claimant, and therefore, they are <u>NOT</u> [Appropriate] and definately <u>NOT</u> what the Special Master intended the Claimant to be provided with.
Because of this Fact, the Defendants are <u>NOT IN COMPLIANCE</u> with the Special Masters Final Order of the Court, dated March 6, 2009.

4). As a result of the material evidence offered at the October 16, 2009 hearing in this matter, Judge Borchers Ordered that the Claimants ankle be re-evaluated by a Podiatrist or an Orthopedic Specialist. That the shoes and ankle brace also be evaluated by the same professional to determine if the assistive devices that were provided by CDOC are, in fact, [Appropriate] to aid in the management of the chronic effects of the injury, and serve to help alleviate the pain the Claimant experiences on a constant and daily basis. This Order was issued on October 30, 2009.

5). The Defendants filed their Objection to the October 30, 2009 Order of the Special Master, and on February 17, 2010, this Honorable Court [Sustained] that objection and Ordered the Claimant to be seen by a " Prison Doctor ", and vacated the October 30, 2009 Order of the Special Master.

The Claimant was seen by a " Prison Doctor " by the name of Dr. Joseph Wermers on February 25, 2010 and shortly thereafter the Claimant [Strenuously] Objected to the less than cursory exam conducted by Dr. Wermers as he has absolutely <u>NO QUALIFICATIONS</u>

(2)

to make an educated and valid assessment as to the effects of an injury to the Claimants ankle or the assistive devices provided to the Claimant for the management of the injury if he is not an Orthopedic physician. To ask Dr. Wermers to perform an exam that is not within his area of expertise is ludicrous, especially after the NUMEROUS complaints lodged against Dr. Wermers with the Court.

6). The Claimant [Strenuously] Objected to this Courts ruling of February 17, 2010 which offered the opinion that, ".. A Podiatrist or Orthopedic evaluation is [Not Required] ..", despite the recommendations of the (2) Orthopedic Consultants whose Professional Opinions were sought out by CDOC starting in 1995. Both of the reports from these consultants mirrored each other in that, they Both stated that [Surgery] is [Required] because of the effects the injury to the ankle had on the [Bearing Surface] of the ankle joint. Surely his Honor has not read the recommendations of the Orthopedic Consultants the Claimant attached to his last Motion.

## STATEMENT OF FACT

1). The Claimant has submitted copies of the reports and the recommendations submitted by no less than (3) Orthopedic Specialists, two of whom are CDOC Consultants, or at least were at the time the Claimant was examined and treated by them.

Dr. Lugene Dorr, Saint Anthonys Central Hospital, Denver, was the treating physician in 1993. Attached, you will find several documents that Dr. Dorr provided upon request by Dr. Jacob Patterson and Dr. Thomas Eskastrand. The documents and recommendations of Dr. Dorr are what facilitated the Claimant to be seen by Dr. Patterson and then by Dr. Eskastrand.

2). To date, the existance of these [Medical Records], " which are located in Volume #2 of the Claimants CDOC Working Medical File ", have yet to be acknowledged by the medical staff of CDOC. Aside from Judge Borchers citing the reports and the recommendations of the Orthopedic Specialists CDOC had the Claimant examined by, no one has so much as mentioned those Medical Reports, even though

(3)

Judge Borchers used those same reports and recommendations to base most, if not all of his rulings in this case on. It can not be said that these documents have never been submitted or discovered as the Claimant has attached ALL of the reports to each and every Grievance and Motion filed with the Court.

Yet, these documents continue to be literally [Ignored], not only by CDOC, but the Court as well. It leaves the Claimant wondering why CDOC had the Claimant examined by Dr. Patterson and Dr. Eskastrand in the first place, wasting taxpayer dollars, if all they were going to do was ignore the recommendations of the Specialists anyway ??

3). After filing his objections to the ruling of this Court Ordering the Claimant to be seen by a " Prison Doctor ", and, therein, objecting to the unqualified, unprofessional and unacceptable " Evaluation " conducted by Dr. Wermers, the Claimant filed a Motion with the Court requesting an Order directing CDOC to compensate him in the amount of $3,000.00.

The Claimant also petitioned the Court for an Order directing CDOC to authorize the Claimant to purchase appropriate shoes, inserts, and ankle brace from an approved vendor, such as " Hangers Orthopedics " so that he may provide himself with the assistive devices the Special Master intended the Claimant to have. This would also ensure that these devices are Exactly what is needed for the management of the chronic effects of the injury to the Claimants right ankle. The Claimant would remind the Court that, on Numerous past occasions, the Claimant attempted to provide himself with the needed assistive devices but was DENIED APPROVAL by CDOC, who cited [Security Concerns] which are, as yet, still undisclosed at this time.

## CONCLUSION

The Claimant received notice that the Motions he filed would be set aside by the Court until such a time as the Non-Compliance Trial/Hearings were concluded, allowing the Court time to make

a fair and educated ruling on the issue. However, the Claimant has not been notified as to the outcome of the trial and respectfully reminds the Court that, with each passing day, week and month, the condition of the Claimants ankle deteriorates, and the Claimant suffers constant and extreme pain while patiently waiting for a reply and/or ruling on his Motion requesting relief.

The condition of the Claimants ankle is due, in large part, to the fact that he does not have the appropriate assistive devices he needs to manage the effects of the injury to his ankle. The Special Master intended the Claimant to have [Soft] soled footwear that truely Is **Soft Soled,** and an ankle brace that is specifically for the Claimants medical needs. Not some random brace given to him off some shelf just because it just happened to be there. Assistive devices have been Denied the Claimant by CDOC for the past **(16) Years.**

Since the Claimant is at the Step III phase of the Grievance process and Still has not heard from the Court concerning his Objections to the Courts February 17, 2010 ruling, or his Motion for Order of the Court, the Claimant is compelled to request a Status Review Hearing, and to again petition the Court for an Order directing CDOC to Grant authorization to the Claimant to purchase shoes, inserts and an ankle brace from a CDOC approved vendor.

The Claimant would advise the Court as well as the Attorney General's office that, at this time, the Claimant is NOT Requesting that the [Surgery], recommended by no less than (3) Orthopedic Specialists, be provided.

The Claimant is only asking that he be provided with the assistive devices Judge Borchers intended, devices that are [Specific] to his medical needs, and not just items that are issued to every offender simply because the medical department of CDOC " Generalizes " the medical needs of all of its offenders who have the Great misfortune of having valid, medical needs. After all, its not like each offender is shopping for a " One size fits all " pair of mittens.

The Fact that the Orthopedic Specialists reports are in Volume #2 of the Claimants dormant file, and Not in the [Current] working file just might be a " Factor " in all of this. However, the Claimant has provided Copies of these reports to ALL pertinant parties.

The recommendations of Dr. Patterson and Dr. Eskastrand MUST be acknowledged by CDOC and the Court, at some point. CDOC absolutely REFUSES to admit that they exist in the Claimants medical files, even though the SPecial Master used those reports and recommendations to base his rulings and findings on.

The Claimant is simply requesting that he be provided [Appropriate] assistive devices designed with His [Specific] needs in mind, that will aid in the management of the chronic effects of the injury to his ankle, so as to avoid the need for the recommended surgery for as long as possible.
This is a Legitimate, Verifiable, chronic care medical need that requires [Specific] assistive devices that, to date, have been Denied the Claimant, for whatever reason, for the past (16) years by CDOC.

This conduct has caused the claimant [Years] of needless pain and suffering, and continues to exacerbate the condition of the Claimants ankle, causing detrimental and irreversable effects and damage that border on cruel and unusual treatment. This issue Must be rectified as soon as is possible or the Claimant will be forced to start petitioning the Court for an Order directing CDOC to provide the Claimant with the recommended surgery.

The Claimant respectfully Moves this Honorable Court to Grant the foregoing Motion and direct CDOC to compensate the Claimant in the amount of $3,000.00 and authorize him to purchase soft soled shoes, inserts and an ankle brace from an authorized and approved vendor. In lieu of this Motion, the Claimant requests that the COurt Order CDOC to have the Claimant seen by a qualified Orthopedic Specialist or Podiatrist for re-evaluation. In support of his request, the Claimant submits the reports and recommendations of Dr. Jacob Patterson and Dr. Thomas Eskastrand. (Attached)

Dated this 1st day of December, 2010.

Respectfully Submitted,

*Raymond D. Goodloe*
Raymond D. Goodloe, #51437
F.L.C.F.  Unit #8-122-B
P.O. Box 1000
Fort Lyon, Co.  81038-1000



**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Gregory C. Langham
*Clerk*

Phone: (303) 844-3433
Fax:     (303) 335-2714

This is the best quality copy of the following document.

Clerks Office
United States District Court

**PROVENANT HEALTH PARTNERS**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PATIENT NUMBER: 103691-3168 | LAST NAME: GOODLOE | FIRST: RAYMOND D | | M | ADM DATE: 06/17/93 02:02P | FC: S | DATE OF BIRTH: 10/17/61  AGE: 31Y  PT TYPE: O  INS: D  SEX: M |
| ADDRESS: 326 CORONA ST | CITY: DENVER | STATE: CO | ZIP: 80206 | AC/PHONE: 303-466-8306 | LOCAL PHONE: | MAIDEN NAME: UNKNOWN | |
| RELIGION: O PREFERS NONE | PARISH: | NOK LAST NAME: GOODLOE | FIRST: MARY | RELATIONSHIP: WIFE | HOME PHONE: 303-466-8306 | WORK PHONE: | PREV ADMIT: |
| RESP: GOODLOE | LAST NAME | FIRST: RAYMOND D | RESP ADDRESS: 1624 CORONA ST | CITY: DENVER | STATE: CO | ZIP: 80204 | AC/PHONE: 466-8306 |
| INSURED: | EMPLOYER NAME | INSURED OCCUPATION: NOT EMPL | EMPLOYER ADDRESS | CITY | STATE | ZIP | AC/PHONE |
| SECOND EMPLOYER NAME | | INSURED OCCUPATION: NOT EMPL | SECOND EMPLOYER ADDRESS | CITY | STATE | ZIP | EMP ID/SS |
| GP 1 | SUBSCRIBER 1 | | INSURED 1 | | 1ST INSURANCE CO | | EMP ID/SS |
| GP 2 | SUBSCRIBER 2 | | INSURED 2 | | 2ND INSURANCE CO | | |

**Copied JUL 17 2008**

CHIEF COMPLAINT/ADMITTING DIAGNOSIS: PAIN R FOOT

REMARKS: **VERIFIED**ORTHO

CONSULTING DOCTOR: | HOW ADMITTED/AMB CO: WALKED
ATTENDING DOCTOR: DORR, EUGENE A.  PHONE: 8254111
REFERRING DOCTOR: DORR, EUGENE A.  PHONE: 8254111

DISCHARGED: WALKED  DIS DATE: 6/17/93  T/O: 1530

---

This man had an injury to his right ankle joint @ 2 weeks ago. He was seen at that time and x-rays seemed to show a more serious injury to the ankle joint than was appreciated by the E.R. Physician. The radiologist agreed the joint looked a bit strange and recommended tomograms. Tomograms were obtained on 6/9/93 and showed destruction of a large part of the bearing surface of the tibia with marked irregularity of the bearing surface. It appeared that even an ORIF would probably not be able to repair this satisfactorily. It then became a problem of getting back to the patient. I eventually called the office on 6/14/93 but the number he left was to an answering machine and we did not make contact with him on 6/16/93 at a motel where he is apparently staying. He was seen on 6/17/93 and shown his films. He was told he will probably need to have a tibio-talar fusion in the future because of the marked irregularity of the joint bearing surface. Placed in fiberglas SLC to get started on healing 7th fx. See in @ 3 weeks. Splint removed and ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ Takon f mt per Dr Dorr, F/S short leg cast to knee applied. ___ ___ ___ ___ ___

## SAINT ANTHONY HOSPITAL CENTRAL
## RADIOLOGY REPORT

| | |
|---|---|
| NAME: | GOODLOE, Raymond |
| HOSPITAL NUMBER: | 01036921 3160 |
| BIRTHDATE: | 10-17-61 |
| X-RAY NUMBER: | 759528 |
| ROOM: | OP |
| DATE OF EXAMINATION: | 6-09-93 |
| ADMITTING PHYSICIAN: | |
| ATTENDING PHYSICIAN: | |
| ORDERING PHYSICIAN: | LUGENE A DORR, M.D./14565 |
| COPY TO: | |
| COPY TO: | /10000008 |
| REQUISITION #: | 3294817 |
| PERTINENT HISTORY: | Injury |

**Copied**

MAY 3 0 2008

AP TOMOGRAMS OF THE RIGHT ANKLE 1330 HOURS:

This study shows obvious involvement of the distal articulating surface of the tibia by the comminuted fracture seen on previous plain radiographs and there is a step-off seen of the medial fragment when compared with the lateral portion of the articulating surface on this AP projection. There is also a posterior tibial fragment delineated as well but I don't see any displacement of this.

LATERAL POLYTOMOGRAPHIC STUDIES OF THE ANKLE:

This examination shows a step-off of the articulating surface of the distal tibia in this projection with the majority of the articulating surface superiorly positioned and the anterior portion somewhat more inferiorly located. The dome of the talus appears intact with no fractures involving this area. I don't see any other findings of note.

DR/sa    T:6-09-93   1600   15/3

DAVID A. RAETZ, M.D., RADIOLOGIST
I authorize my typed name to signify that I authenticated this report.

## SAINT ANTHONY HOSPITAL CENTRAL
## RADIOLOGY REPORT

| | |
|---|---|
| NAME: | GOODLOE, Raymond |
| HOSPITAL NUMBER: | 01036921-3154 |
| BIRTHDATE: | 10-17-61 |
| X-RAY NUMBER: | 759528 |
| ROOM: | E.R. |
| DATE OF EXAMINATION: | 6-3-93 |
| ADMITTING PHYSICIAN: | |
| REQUESTING PHYSICIAN: | |
| ORDERING PHYSICIAN: | DR. ROBERT SCHMIDT/28967 |
| COPY TO: | |
| COPY TO: | /10000008 |
| REQUISITION# | 3271903 |
| PERTINENT HISTORY: | TRAUMA |

RIGHT TIBIA/FIBULA  1315

There is an oblique fracture through the distal tibia which appears to involve the articular surface.

RIGHT ANKLE

Again the distal tibial fracture is noted. There is really minimal displacement. The fracture is oriented vertically along the shaft of the tibia.

SB/lc   D:06-03-93   T:1600   lc6-7/48

S. BEALE M.D., RADIOLOGIST
I authorize my typed name to signify that I authenticated this report.

Copied
JUL 1 7 2008

**LUGENE A. DORR, M.D.**
2020 WADSWORTH BOULEVARD
SUITE 7A
DENVER, COLORADO 80215

TELEPHONE (303) 825-4111

January 13, 1994

To Whom It May Concern:

re:  Ray Goodloe

This patient has been seen and treated by me. He has had an injury affecting his right ankle joint. This injury caused a problem with the bearing surface of the ankle joint.

The patient was initially seen on 6-3-93, and was scheduled for tomograms of the ankle joint. After these tomograms were seen it was recommended that the patient have surgery, but the patient did not return for the surgery or followup.

The patient recently called the office stating he was having problems. He was told it was much too late to do anything at this time and he would probably continue to have problems, and if they become great enough he would probably have to consider doing a fusion of the ankle joint. This was explained to the patient and to his sister.

Sincerely,

*[signature]*

L.A. Dorr, MD

Copied

JUL 17 2008

BVCF

SWEENEY, TIMOTHY        #51437

**ORTHOPEDIC CLINIC (8-9-95):** DOB: 10-17-61
He is a 33 year old man who jumped out a window and injured his right ankle in 6/93. He suffered an intra-articular fracture, which was not fixed. Apparently it was a crush injury to the joint surface that did not require internal fixation but did leave him with degenerative arthritis. He now complains of pain with range of motion and with weightbearing. He has essentially given up most athletic activity.

**PAST MEDICAL HISTORY:** Remarkable for migraines and right shoulder discomfort.

**SURGERIES:** Jaw

**MEDICATIONS:** For hypertension

**EXAMINATION:** He has a tender, somewhat swollen ankle. It is not warm or red. Range of motion is -5-40. It is stable.

**X-RAYS:** Show advanced arthritic change in the joint.

**IMPRESSION:** Post-traumatic DJD of the ankle.

**RECOMMENDATIONS:** Ankle lacer for support. Progressive weightbearing, use of soft soled shoes. Ice and elevate for pain. Continued use of anti-inflammatories as tolerated. May eventually require arthrodesis. Follow up p.r.n.

noted gp

_____
Jacob Patterson, M. D.
Orthopedic Consultant

T: 8-11-95/mg

Copied
MAY 3 0 2008


AUG 18 1995

AUG 2 5 REC'D

8/16/96

SWEENEY, TIMOTHY                    #51437                              CCF

**ORTHOPAEDIC CLINIC (9-4-96):** This gentleman has degenerative arthritis in his left ankle, after a fall many years ago with fracture. He has responded fairly well to steroid injection in the past.

**EXAMINATION:** He has marked restriction of range of motion and some chronic swelling, no redness or warmth.

**X-RAYS:** Show advanced post-traumatic DJD in the ankle.

**PLAN:** After sterile prep, I injected the ankle with 2 cc of Lidocaine and 2 cc of Celestone from an anteromedial approach. He should ice this for 24 hours and will see Dr. Carlson for his shoulder.

Jacob Patterson, M. D.
Orthopaedic Consutlant

T:  9-5-96/mg



Copied
MAY 3 0 2008

RECEIVED SEP 09 1996

Arnold L. Ahnfeldt, M.D.
Orthopaedic Surgery &
Sports Medicine
(719)471-8855

Thomas Eskestrand, M.D.
Orthopaedic & Hand
Surgery
(719)471-1101

Barry A. Broughton, Ph.D., PA-C
1715 N. Weber Street, Suite 300
Colorado Springs, CO 80907

SWEENEY, TIMOTHY (alias Raymond Goodlow, his true name)            PAGE 1
Inmate # 51437

23 JUL 97: We do not have a consult sheet here. According to my official list he is to be seen for his right shoulder, however, according to him, his right shoulder is not nearly the problem, as his right ankle. Because of both significant problems he is seen for both of those today. His right shoulder has been bothering him for appr 2 yrs. He has had injections with some benefit. He states that he is getting somewhat better. He was on the schedule for surgery, but he really feels very comfortable only with Dr. Carlson doing that. (He did not renew his contract as a physician, and so is not available for this). The pt wishes to wait until he is released before he is worked on.

The pt has another problem, which is his right ankle, which was fractured in 1993 with an intra-articular component into the tibiotalar joint. He is in stiff-soled shoes, and this hurts him a fair amount. He rates the pain in his ankle at about 9/10. He is unable to run. He can walk appr one mile. Cannot stand for more than one hour and then has to rest. The ankle sometimes swells. He has start-up pain in the morning, gradually gets better and then gets worse toward the afternoon. He denies any numbness or tingling. No other prior history of injury. He rates his shoulder pain at about 6/10. He would like to have front-buttoned shirts. He has difficulty reaching overhead and cannot lift more than 50 pounds.

X-RAYS in 1996 of the right shoulder show narrowing of the AC joint. Axillary views, WNL. X-rays of the right ankle in Sep 96 show narrowing of the joint, spreading of the tibia as seen on the lateral. The joint space appears to be reasonably well maintained. The radiologist read a spur off the inferior acromion by his official report in Sep 96.

Pt has been on multiple anti-inflammatories, but this has not helped him at all, and so he just takes Elavil at night for the pain. He has a history of IV drug use in the past.

ON PHYSICAL EXAM, the patient walks with a reasonable gait. His right shoulder forward-flexes 160 degrees, abducts 145, extends appr 60, internally rotates 45, externally rotates 70, adducts 20. He has pain through all ranges of motion, pos impingement sign, pos empty soda can sign, tenderness over the AC joint and subacromial space. Distally, radial, ulnar and median nerves are intact. His right ankle is mildly swollen. Neurovascular status is intact. He dorsiflexes to 0 degrees, plantarflexes 25 degrees, everts 0, inverts appr 10. Tender over the anteromedial and anterolateral joint line. No real tenderness over the lateral malleolus.

IMPRESSION: 1. Impingement syndrome, right shoulder. 2. Post-traumatic arthritis, right ankle.

Copied

MAY 3 0 2008

Arnold L. Ahnfeldt, M.D.
Orthopaedic Surgery &
Sports Medicine
(719) 471-8855

Thomas Eskestrand, M.D.
Orthopaedic & Hand
Surgery
(719) 471-1101

Barry A. Broughton, Ph.D., PA-C
1715 N. Weber Street, Suite 300
Colorado Springs, CO 80907

SWEENEY, TIMOTHY (alias Raymond Goodlow)                    PAGE 2

PLAN: Since pt does not wish to have surgery, none is reommended for his shoulder. With regard to his ankle, I think that he rates the pain higher than it truly is functionally. The pt should have soft shoes. It does appear that he will need to have an ankle fusion, probably within the next 5 yrs.

TAE/ifn

RECEIVED JUL 30 1997

Copied
MAY 30 2008