IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

   -vs.-

BILL RITTER, et al.,

        Defendants.

---

Claim Number: 03-487
Category III
Claimant: Robert L. Bacca, #473
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034

---

**FINAL ORDER OF SPECIAL MASTER**

---

      THIS MATTER came before the Special Master for hearing on January 24, 2011. The hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Robert Bacca (Claimant) and Deann Conroy, attorney for Defendants.

      Claimant testified in support of his claim. He also offered into evidence Exhibit 1, which was admitted. Defendants presented Dr. Timothy Creany, M.D. as a witness. Defendants offered into evidence Exhibits A through K, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>>limits his or her ability to perform a major life activity.
>>C. PERMANENT DISABILITY/IMPAIRMENT
>>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on her claim.

## II.

Claimant initially came into DOC custody in 1989. He initially was placed at the Denver Reception and Diagnostic Center (DRDC) for a few weeks. He then was transferred to the Colorado Territorial Correctional Facility in Canon City, Colorado. He was at that facility for approximately three years.

Claimant was transferred next to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. He then was moved to the Limon Correctional Facility (LCF) in Limon, Colorado. He was at LCF for a couple of years and then transferred back to AVCF.

In 1995, Claimant was diagnosed as having diabetes. He was treated with insulin. Claimant

was provided special diets. The evidence is clear that he still has diabetes that is treated through the use of insulin.

Claimant filed his claim in late April, 2010. He alleged that he became disabled in 1994. Claimant checked the boxes for mobility and vision impaired, as well as the box for diabetes. Claimant alleged that his mobility had been affected by the loss of part of his right lung due to cancer.

> Mobility: affects my range and/or distances I can walk due to cancer surgery removal of right lung and diabetes. Vision: affects my daily life most times I'm unable to see clearly due to diabetes. My diabetes affects my life such as it is in every way. I am unable to get adequate diets, recreational time, proper foot care and access to medical facilities most times.

Claimant stated in his claim form that he arrived back at AVCF and asked about ADA jobs and was told that none were available. In response to the question concerning discrimination, Claimant alleged as follows:

> I was denied proper diets when I was first diagnosed as a diabetic which caused my condition to worsen and spiral out of control. I am still being denied proper foot care and/or footwear for re-appearing foot sores, and sores on my legs. I was denied medications to treat my diabetes when I was transferred from one facility to another for cancer surgery which worsened my diabetes.

At the hearing, Claimant testified that on a couple of occasions he was transferred and then did not receive insulin for a period of time. When asked about his vision issues, Claimant testified that his ability to see fluctuated with his blood sugar levels. He indicated that he had been diagnosed with high blood pressure and high cholesterol.

On cross-examination, Claimant acknowledged that he first sought an ADA accommodation in 2006. He testified that he was self-employed in the hobby shop and had been able to carry out his work, though there was little to do at the present time. He acknowledged further that there were no programs that he had not been denied due to his diabetes.

Defendants presented as their sole witness Dr. Creany. In his testimony, Dr. Creany stated that he had reviewed some, but not all, of Defendants' medical records. He testified that Claimant has been diagnosed as having diabetes since the mid-1990s. The treatment undertaken by DOC medical staff has been geared to getting blood sugar levels as normal as possible. Claimant had not watched his diet and had missed many specially prepared meals. Dr. Creany indicated further that Claimant may have kidney issues based upon test results.

Some of the exhibits submitted to the Special Master are important to this case. Exhibit G is an accommodation resolution finding Claimant to be diabetic but not being hearing or mobility impaired. Exhibit H reflects that Claimant was acknowledged to have diabetes and that he also was

diagnosed in 2002 as having a cancerous lung mass. The second page and thirteenth page of Exhibit H reflect that Claimant was placed on special diets and then did not eat them.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Diabetes:** There is no dispute of fact that Claimant was diagnosed as being diabetic in the mid-1990's. He has remained diabetic throughout the intervening years. Claimant has established that he was disabled as diabetic on or before August 27, 2003. He was and is a member of the class as a diabetic.

**Mobility Impairment**: Claimant alleged that he is mobility impaired due to the loss of part of his lung. Mobility impairment has been defined in the Settlement Agreement as being a lower extremity condition. There is no doubt that Claimant has been affected by the loss of part of his lung. Claimant does not qualify, though, as being mobility impaired as defined in this case.

**Vision Impairment:** Insufficient evidence was presented to establish any vision impairment on or before August 27, 2003.

**Hearing Impairment:** Claimant did not list hearing impairment on his claim. He did request accommodations for alleged hearing loss. The test results submitted by Defendants reflect that Claimant does not meet the criteria for hearing impairment. Exhibit K, p.4.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has failed to provide such proof, with one exception.

Claimant carries the burden of showing that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. Claimant must establish that such discrimination occurred *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going. Claimant left DOC custody in September, 2000.

Claimant has alleged insufficient or deficient medical care. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. Claimant has alleged substandard medical care throughout his time in DOC custody. That issue is beyond the jurisdiction of the Special Master as set forth in the Settlement Agreement. In addition, the Special Master has no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has testified that he was transferred in the past and that he did not receive his insulin for several days at the new facility. This may have been caused when his medical records did not accompany him. Whatever the reason, the lack of insulin for several days was not appropriate and discriminated against Claimant. Due to his incarcerated status, Claimant was not able to seek medication through any other source. This type of occurrence has been described by others, and it is not appropriate. The computerization of inmate medical records has helped alleviate this type of problem.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant is entitled to damages in the amount of $150.00 for the stress of going several days without his diabetes medication.

IT IS HEREBY ORDERED that the claim of Robert Bacca is granted, in part, as to his diabetes and the lack of medication being provided by DOC medical staff; and

IT IS FURTHER ORDERED that the remaining claims of Claimant are denied, as he has

failed to prove by a preponderance of the evidence each of the four criteria set forth in the Order of November 23, 2004 and has failed to establish that he was the victim of discrimination on the remaining claims under the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant is awarded damages in the amount of $150.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 2, 2011.**

SIGNED this 4th day of February, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master