IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

BILL RITTER, et al.,

       Defendants.

---

Claim Number: 03-484
Category III
Claimant: Ralph Mooney
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on January 31, 2011. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Ralph Mooney (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Gagandeep Singh, M.D. as a witness. Defendants offered into evidence Exhibits A through H, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29*. Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on her claim.

## II.

Claimant is a Swiss national who arrived in the United States in the late 1950's. He testified that he worked as a chef throughout most of his life.

Claimant came into DOC custody in 1999. He initially was placed at the Denver Reception and Diagnostic Center (DRDC) for ten days. He then was transferred to the Fremont Correctional Facility in Canon City, Colorado. He was at that facility for approximately eighteen months. Claimant was transferred next to the Huerfano County Correctional Facility in Walsenburg, Colorado. He remained at that facility for seven and one-half years. He was transferred to FLCF in 2007 and has remained at that facility since his transfer.

Claimant testified that he was diagnosed as having diabetes in 1995, before his incarceration

3

in DOC. His diabetes has been treated through use of medications, including glucophage. Prior to coming into DOC custody, Claimant had a left hip replacement.

Claimant filed a claim with the Special Master pursuant to Article XXXII of the Remedial Plan. Claimant checked the boxes for diabetes and mobility impairment. Claimant stated that he became disabled with diabetes in 1994 and mobility impaired in 2006. In response to the questions dealing with discrimination, Claimant alleged that he had become disabled while at FLCF.

At the hearing, the Special Master inquired concerning alleged discrimination. Claimant testified that he had received the wrong medication at one point while at FLCF. He also had issues with food. He began to experience problems with his right leg. He ultimately received a right hip replacement. He was in a wheelchair for a period of time both before and after the hip replacement.

On cross-examination, Claimant testified that he is much better now that he has had his right hip replacement. There is some residual pain in his hip. He stated that he had no problems while at FLCF with his diabetes and was trying to help take care of himself. He acknowledged that he had not been discriminated against due to his right hip.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Diabetes:** There is no dispute of fact that Claimant was diagnosed as being diabetic in the mid-1990's. He has remained diabetic throughout the intervening years. Claimant has established that

he was disabled as a diabetic on or before August 27, 2003. He was and is a member of the class as a diabetic.

**Mobility Impairment**: Claimant alleged that he is mobility impaired. Claimant did not establish that he had any lower extremity condition that rendered him disabled. Claimant does not qualify as being mobility impaired as defined in this case.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has failed to provide such proof.

Claimant carries the burden of showing that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. Claimant must establish that such discrimination occurred *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going. Claimant left DOC custody in September, 2000.

Claimant's own testimony reflects that he was not a victim of discrimination under the ADA and Rehabilitation Act. He may have had some questions about medical care, but he was not treated differently due to his diabetes.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #4, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Ralph Mooney is dismissed, as he has failed to prove all elements required by the Remedial Plan and the order of March 23, 2010 issued by Judge Kane; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 9, 2011.**

SIGNED this 11th day of February, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____

Richard M. Borchers
Special Master