IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

BILL RITTER, et al.,

       Defendants.

---

Claim Number: 03-485
Category III
Claimant: Keith A. Morris, #116947
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on January 31, 2011. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Keith A. Morris (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Gagandeep Singh, M.D. as a witness. Defendants offered into evidence Exhibits A through H, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>   1. Is the claimant a disabled individual who is a member of the class?
>   2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>   3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>   4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on March 21, 2003. He initially was placed at the Denver Reception and Diagnostic Center (DRDC) for two months. He then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was at that facility for approximately three years. He then was placed into the infirmary at the Colorado Territorial Correctional Facility in Canon City, Colorado for about ten days. He then returned to FCF and was transferred later to FLCF in 2004.

Prior to being committed to DOC custody, Claimant was in the custody of a county jail. During that period of time, Claimant developed a staph infection in his lower extremities. As a result, he lost both lower legs through amputations. Claimant arrived at DRDC in his own

wheelchair, which he used for a significant portion of time thereafter. Claimant could not walk and has not been fitted for any prostheses.

Claimant testified that at some point his wheelchair broke down. He could not remember the exact date when that occurred. Claimant is a large man, weighing over three hundred pounds. He was provided various wheelchairs, but none were able to provide proper support for him. He also requested and was denied a cushion to sit on. As a result, Claimant began to develop pressures sores. The sores developed infections, putting Claimant at risk for more potential problems.

Claimant noted that Randy Smith had taken over the wheelchair clinic at FLCF. About three years ago, Mr. Smith was able to secure the right-sized chair for Claimant. There have been no problems with pressure sores since Claimant received his present wheelchair.

On cross-examination, Claimant testified that he was able to use his own wheelchair when he came in DOC. When he switched to a DOC-issued wheelchair, problems began to arise. He would like to be fitted for prostheses.

Defendants called Dr. Singh as a witness. He testified that he had reviewed Claimant's medical records. Dr. Singh stated that Claimant had come into DOC custody after the double amputation of both lower legs. Claimant had been provided wheelchairs, and there had been multiple inspections of his wheelchairs since Claimant came into DOC custody. He noted that Claimant had rejected some wheelchairs. He also noted that DOC has a policy not to provide prostheses if an inmate can utilize a wheelchair. Dr. Singh noted that individuals with prostheses can develop sores on the stumps of their legs, causing additional infections.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as

compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

There was and is no dispute that Claimant was mobility impaired when he was committed to DOC custody. Claimant is a member of the class.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant must establish that such discrimination occurred *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

The controlling evidence is this. Claimant came into DOC custody as a double amputee. He was a member of the class on his first day in DOC custody. His first day was slightly over five months before the settlement of this case. Under Judge Kane's order of March 23, 2010, a claimant has to establish that he was the victim of discrimination *on or before August 27, 2010.* From the testimony of Claimant, it appears that his wheelchair lasted several months before it started to break down. In other words, the problems with his wheelchair did not arise prior to August 27, 2003. Thus, there is no jurisdiction to adjudicate this claim.

The evidence presented by both sides established to the satisfaction of the Special Master that Claimant had been denied appropriate accommodations. Certainly, the least that Claimant and others similarly situated in DOC can expect are wheelchairs that are properly fitted and maintained so they do not face the prospect of pressure sores and infections.

The Special Master issues this order with reluctance. There was no evidence of discrimination on or before August 27, 2003. Judge Kane's orders are clear that the Special Master cannot exercise any jurisdiction over this claim. Claimant retains the right to pursue his own lawsuit. A copy of this order will be provided to class counsel.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Keith Morris is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection

must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 9, 2011.**

SIGNED this 25th day of February, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master