IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-492
Category III
Claimant: Robert Riplie, Jr, #107521
Address of Claimant: FLCF, P.O. Box 1000, Ft. Lyon, CO 81038

---

## FINAL ORDER OF SPECIAL MASTER

      THIS MATTER came before the Special Master for hearing on January 31, 2011. The hearing was held at the Ft. Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado. Present were the following: Robert Riplie, Jr.(Claimant) and Deann Conroy, attorney for Defendants.

      Claimant testified in support of his claim. Defendants presented Dr. Gagandeep Singh, M.D. as a witness. Defendants offered into evidence Exhibits A through G, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

        limits his or her ability to perform a major life activity.
        C. PERMANENT DISABILITY/IMPAIRMENT
        A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
        1. Is the claimant a disabled individual who is a member of the class?
        2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
        3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
        4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody in December 2000. Claimant was placed into the Denver Reception and Diagnostic Center (DRDC) for two weeks. Claimant then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant remained at FCF until February 2004, when Claimant was transferred to FLCF.

On April 29, 2010, the office of the Special Master received the claim of Claimant. In the claim form, Claimant checked only the box for diabetes. Claimant responded to one question on the claim form by indicating that he had been given an M4 medical rating which limited the options for his placement and precluded him from obtaining decent paying employment. Claimant also alleged that he had been the victim of discrimination in that he had not received appropriate footwear. He

stated that he received blisters from the state issued boots. He alleged that he was able to purchase tennis shoes from the canteen that alleviated the blisters.

At the hearing, Claimant testified that he believed that he had been unable to obtain decent paying employment due to his M4 medical rating. He was unable to obtain employment at FCF outside of the fence. He believed that this was discriminatory. The better paying jobs went to individuals who were not diabetic.

Claimant testified further that he had been given jobs that fit his M4 medical profile. When asked what jobs he had been denied, Claimant stated that he wanted to work with the dogs. In response to a further question, Claimant testified that he is working at the present time as a pusher for a wheelchair bound inmate.

On cross-examination, Claimant was asked why he believed that he was denied certain employment and he responded that someone had told him that an M4 rating precluded certain work. He acknowledged that he had other medical issues besides diabetes. He was taking medication for high cholesterol and has been overweight. He testified that he walks every day in the yard, sometimes for two to three hours. He acknowledged that he has walked as much as eighteen miles in one day. He stated that he walks to help his mental health.

Defendants presented Dr. Singh as their sole witness. Dr. Singh described the medical coding system in DOC. The highest code is M5, which requires placement in a medical facility. According to Dr. Singh, the medical code of an inmate has no bearing on available jobs, with some exceptions. The medical coding is based on disabilities and health care needs.

Dr. Singh testified that he had reviewed Claimant's medical records. Claimant was diagnosed with diabetes in 2000. His records reflect other health issues and a reluctance to take prescribed medications in the past. Dr. Singh believed that Claimant walked too much and was hurting his health.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such

individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

There was and is no dispute that Claimant was diagnosed as diabetic at DRDC when he first entered into DOC custody. Claimant has remained diabetic. He is a member of the class as a diabetic.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

The medical coding issue has arisen in other claims. It was not disputed that Claimant has an M4 code. He thus must be at a facility that has full time available medical care. Claimant has not argued that FLCF is not an appropriate place for him, but he does argue that he is entitled to have better paying employment. As noted, he specifically would like to work in the dog program.

Under Article XXXII of the Remedial Plan, Claimant carries the burden to prove all aspects of his claim. Claimant has not done that in this case. Claimant did not establish that he was otherwise qualified for a job, but for his medical code, on or before August 27, 2003. Claimant talked in generalities and did not provide specific information concerning that time period.

Claimant's issues are not frivolous. He simply has not proven them as to the time period ending August 27, 2003. Claimant may wish to seek the assistance of class counsel for his present job complaint, as that is a systemic issue affecting others who are also M4. Claimant retains the right to pursue his own lawsuit for anything that has occurred since August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Robert Riplie, Jr. is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file

an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 9, 2011.**

SIGNED this 25th day of February, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master