IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-497
Category III
Claimant: Mike D. Schwirzinski, #103568
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 16, 2011. The hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Mike D. Schwirzinski (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Timothy Creany as a witness. Defendants offered into evidence Exhibits A through F, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody in January 2000. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC) for a few days. He then was transferred to the Limon Correctional Facility (LCF) where he remained for about four months. Claimant then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. In 2001, Claimant was transferred to AVCF. He has remained at this facility for ten years.

Claimant filed a claim with the Special Master that was received on May 1, 2010. The claim was signed by Claimant on April 29, 2010 and then placed into the prison mail system.

In his claim form, Claimant stated that he had become disabled in 1979, long before his

incarceration in DOC. He checked the boxes for mobility impairment and vision impairment. Claimant alleged that he had significant mobility problems that made it difficult to walk, sit or stand. His mobility issues began with spinal surgery in 1979. As to his vision impairment, Claimant wrote that he was having difficulty seeing and now requires glasses.

In response to a question concerning discrimination, Claimant stated:

> DOC was informed of my disability upon entrance to DOC and is well documented in my medical file which DOC personnel have refused to acknowledge.

When asked about the delay in filing his claim, Claimant wrote than he had been promised necessary medical care by DOC medical personnel.

At the hearing, Claimant testified that he has great difficulty reading. He obviously had assistance in completing his claim form. He stated that he has chronic pain resulting from lower spinal surgery in 1979. He had two additional surgeries, but it was not clear exactly what was done on his spine during those surgeries. Claimant acknowledged that he has many other medical issues, including depression. He takes multiple medicines each day. On cross-examination, Claimant stated that he had not been denied any job or program while in DOC as the result of vision impairment. He believed that he needed additional surgery in order to relieve the pain and numbness in his lower legs.

Claimant acknowledged that he had not requested any evaluation of his conditions pursuant to the Remedial Plan. Claimant stated that he did not know that he could request such an evaluation. Claimant was encouraged to request an evaluation through his case manager. Claimant stated that eye glasses made it possible for him to see. He has been provided with eye glasses.

Dr. Creany testified that he had reviewed some of Claimant's medical records. Claimant has many medical issues and is on a lot of medications. He noted that Claimant has a cane for support. His vision problems can be accommodated with the use of eye glasses.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or

mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

It is not clear that Claimant was mobility impaired on or before August 27, 2003. Claimant has never sought any accommodations for any disability up to the present. Claimant may well have been mobility impaired prior to August 27, 2003 but he has not proven that. What is clear is that Defendants' staff did not consider Claimant to be mobility impaired. That is still the case, and Claimant is encouraged to seek a *Montez* evaluation to see what accommodations he should have.

As to vision impairment, Claimant has not established that he met the criteria as vision impaired on August 27, 2003. Claimant is encourage to request an evaluation through his case manager to see if he presently meets the criteria.

Claimant has not proven that he was disabled on or before August 27, 2003. He may have been mobility impaired, but that has not been established. Claimant was not part of the class on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Under Article XXXII of the Remedial Plan, Claimant carries the burden to prove all aspects of his claim. Claimant's concerns are his chronic lower back pain and numbness and his vision. Claimant's concerns reflect the quality of medical care he has received. Medical malpractice or negligence cannot be litigated under the ADA and Rehabilitation Act. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005).

Claimant did not prove that he was the victim of discrimination due to his claimed mobility impairment and vision impairment on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**

In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Mike D. Schwirzinski is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 9, 2011.**

SIGNED this 4th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master