IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

    Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

    Defendants.

---

Claim Number: 03-490
Category III
Claimant: Robert W. Meyers, #46985
Address of Claimant: CCCF, 6465 State Highway 96, Olney Springs, CO 81062

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 16, 2011. The hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present were the following: Robert W. Meyers (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Claimant also called as a witness Dr. Luis Cabiling, M.D. Defendants also presented Dr. Cabiling as a witness. Defendants offered into evidence Exhibits A through D, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody in May 1999. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC) for approximately six weeks. Claimant then was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado. On May 21, 2008, Claimant was transferred to CCCF.

On April 14, 2010, Claimant wrote the Special Master requesting a claim form. That form was provided to Claimant. The letter requesting a form was treated as an initial claim.

Claimant completed the claim form and returned it to the Special Master. Claimant checked the boxes for hearing impairment and vision impairment. In response to the question concerning the

date on which he became disabled, Claimant stated "eyes 4/09 hearing 2/2000." Claimant stated as follows:

> My vision is so bad that I can't read, and I teach electronics. My hearing is going as well, I find it hard to hear people talk to me as well as other noises.

In response to the question concerning what discrimination has occurred while in DOC custody, Claimant wrote:

> DOC has refused to remove cataract from my left eye to date. DOC has refused to give me a test for hearing aid nor provided me with medical care despite numerous requests.

Finally, Claimant noted that "[d]ue to the lack of medical treatment both my eyes and hearing continue to deteriorate rapidly."

At the hearing, Claimant testified that he had hearing problems in the 1970's because of his service in the United States Air Force. He had surgery on his left ear, and that restored his hearing. He has had deterioration of his hearing over the last several years.

Claimant testified further that he has had eye problems most of his life. He had surgery on his right eye for removal of a cataract on April 12, 2005. *Exhibit B*. Claimant testified that he has a cataract on his left eye, and a recommendation for surgery on his left eye has been rejected by DOC. *Exhibit C*. He has objected to the refusal of DOC to authorize surgery on his left eye. Claimant stated that he had sought an audiology test for his hearing impairment. He had not seen an audiologist, but had been tested at FCF on a machine. Claimant did not remember the date of that test, but noted that he could not hear a thing. On cross-examination, Claimant testified that he requested assistance only once in 2008 from the AIC in Colorado Springs.

Dr. Cabiling was called as a witness for both sides. Dr. Cabiling is the staff physician at CCCF and first saw Claimant in July, 2008. Claimant has several medical conditions and he has been prescribed multiple medications. Dr. Cabiling noted that cataract surgery had been recommended by the ophthalmologist, but was denied by DOC as not meeting current criteria.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents

that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Vision impairment**: Claimant is concerned that the cataract in his left eye will continue to grow and impair his vision. DOC has denied the surgery based upon criteria established for such surgery. It is undisputed that Claimant had cataract surgery in 1995 and that corrected problems in his right eye.

By his own testimony, Claimant believes that he became vision impaired in 2009. Such impairment is after the cutoff of August 27, 2003. The Special Master has no jurisdiction over a claim that occurred after August 27, 2003, unless it was proven that such impairment existed on or before that date. That is not the case here. Claimant retains the right to file his own lawsuit for anything that may have occurred after that date.

**Hearing impairment**: Claimant had difficulty understanding what was happening during the court hearing. He attributed this to his hearing problems.

It is unclear from the evidence when Claimant believes he became disabled due to his hearing impairment. He has listed February, 2000 on his claim form, but there is no evidence that he requested a hearing evaluation. He purportedly had some type of screening at FCF, but there was no evidence as to when that occurred. There is no mention of a hearing impairment in any of the medical records offered into evidence at that hearing.

The Special Master notes that Claimant may well be hearing impaired at the present time. He retains the right to seek further evaluation of his hearing, but he has not established that he was hearing impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and

Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Under Article XXXII of the Remedial Plan, Claimant carries the burden to prove all aspects of his claim. Claimant's concerns reflect the quality of medical care he has received. He is particularly concerned, and with good reason, that the denial of cataract surgery will only lead to further vision issues. Medical malpractice or negligence cannot be litigated under the ADA and Rehabilitation Act. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Claimant retains the right to bring his own lawsuit for anything that has occurred since August 27, 2003. He just cannot pursue his *Montez* claim for the reasons noted.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Robert W. Meyers is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 23, 2011.**

SIGNED this 11th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master