IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-499
Category III
Claimant: Roger L. Dixon, #107093
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 28, 2011. The hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Roger L. Dixon (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through E, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

>> limits his or her ability to perform a major life activity.
>> C. PERMANENT DISABILITY/IMPAIRMENT
>> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant initially came into DOC custody on November 3, 2000. Claimant was placed at the Denver Reception and Diagnostic Center. He remained there until November 16, 2000 when he was transferred to FCF. Other than one or two day stays at the infirmary at the Colorado Territorial Correctional Facility, Claimant has remained at FCF.

Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. He only checked the box for hearing impairment. Claimant described his disability as follows:

> Only have 5% hearing in left ear and only 50% hearing in right ear. Can not hear alarms, announcements, warnings, etc.

In his claim form, Claimant described the discrimination he experienced as follows:

> Went to medical to get hearing aids, was refused hearing aid until August 2009, and only after filing a ADA Claim.
>
> Affected quality of life. Could not participate in conversations, or hear movement times, so was late to go to library, work, etc. Could not finish vocational training classes due to not being able to hear instructions or participate in class discussions.

At the hearing, Claimant testified that he began to experience hearing loss in 2001-02. He had difficulty hearing announcements and could not carry on normal conversations. He made several requests for a hearing aid. In late 2008, he had surgery that placed a bone anchor in his skull. He received a BAHA hearing aid, which is also called a hearing processor. That surgery was successful, but he needs additional surgery since the skin has grown over the implant. The hearing processor has allowed him to hear announcements. On cross-examination, Claimant testified that he was discriminated against and was "just trying to hear."

Defendants presented Dr. Thomas Fisher as a witness. Dr. Fisher had reviewed the medical records of Claimant. He noted that Claimant had suffered bilateral hearing loss over a period of time. Claimant had been tested over the years in DOC custody and had been denied a hearing aid. The implant was approved and helped Claimant hear better. The implant has become a medical issue, not an ADA issue. Claimant has been seen by a specialist and is scheduled again to see that specialist sometime in the future.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as

compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

It simply is not possible from the evidence presented to determine if Claimant was hearing impaired on or before August 27, 2003. There appears to have been loss of hearing prior to that date, but there is no way to know if Claimant met the criteria in DOC or elsewhere under the ADA to be determined to be hearing impaired. Claimant had surgery and received a hearing processor. That occurred in late 2008. That surgery was more than five years after approval of the Remedial Plan.

For better or worse, the burden is upon a claimant to establish his claim. There was insufficient evidence to establish that Claimant was hearing impaired, as defined by the ADA, on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant essentially has alleged insufficient or deficient medical care. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Roger L. Dixon is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 23, 2011.**

SIGNED this 11th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master