IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-501
Category III
Claimant: Steve D. Watson, #49526
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

       THIS MATTER came before the Special Master for hearing on February 22, 2011. The hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Steve D. Watson (Claimant) and Deann Conroy, attorney for Defendants.

       Claimant testified in support of his claim. Defendants presented Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through E, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

       This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody in 1982. He was placed initially at the diagnostic unit at CTCF. He then was transferred to the Centennial Correctional Facility (CCF) in Canon City where he remained for three years. He was placed next at the Fremont Correctional Facility (FCF) in Canon City for five years. He was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. In 1992, Claimant was placed at the Colorado State Penitentiary (CSP) in Canon City. He remained there for three years and then was transferred back to CTCF. He returned to CSP for four years and then came back to CTCF where he has remained to the present time.

Claimant sent a letter to the Special Master in mid-April, 2010. He requested a claim form, and that was provided to him. He completed the form and returned it to the Special Master. Claimant

checked the boxes for mobility impairment and vision impairment. Claimant further stated that he had been the victim of discrimination in violation of the ADA in 1995.

Claimant was diagnosed in 1995 as having myasthenia gravis (MG). This disease affects the muscular system of an individual. The muscles no longer work properly. The disease can also affect, as it has with Claimant, the eyes, as it becomes difficult or impossible to have the muscles control the eyes for focusing.

The testimony of Claimant is supported by his medical records. On April 7, 1995, Claimant was unable to control his muscles. The medical entry for that date reflects that there had been previous episodes of similar complaints. The lack of control over his muscles led to further problems. Staff at CSP made the assumption that Claimant was acting out and extracted him from his cell on April 12, 1995. Claimant testified that he was roughed up by correctional staff members who did not believe that he was ill. A further medical entry on April 13, 1995 reflected a concern that something truly was wrong with Claimant's physical condition. He was left on the floor overnight by correctional staff who again believed he was faking his symptoms. Claimant was diagnosed in May, 1995 with MG, and it was determined that he did not have full control over his muscles.

The medical records reflect further that Claimant was provided an eye patch to wear over one eye at a time. This patch was provided to him in 1996, and he has used a patch ever since that point. Claimant cannot control his eyes, and blocking the vision from one eye allows the other eye to focus. Claimant will switch his eye patch to the other eye every four hours.

In response to a question on cross-examination, Claimant stated that the incidents in April, 1995 constituted the discrimination against him under the ADA. He stated that he had been treated appropriately over the years. He testified further that he still hopes that some medical advancement will help alleviate his conditions.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment."

4

42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Mobility Impairment:** Claimant has been mobility impaired since April, 1995. He has used a wheelchair for most of the intervening period of time. He cannot control his muscles due to MG.

**Vision Impairment:** Claimant's visual problems relate to the MG and the inability of his muscular system to control both eyes to allow proper focusing. Claimant does not have a visual acuity problem as contemplated by the Remedial Plan. Claimant is able to see out of each eye, but not with both at the same time. Claimant is not vision impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

From the documents provided by both sides, it is clear that Claimant was experiencing physical problems caused by the MG prior to April 7, 1995. The symptoms he was experiencing were discounted. It was thought that his actions were the result of misbehavior. As a result, Claimant was forcibly removed from his cell and required to remain on the floor. He could not get back to his bed on his own. When tested for MG, it was determined that he was afflicted by the condition and was unable to move on his own at that time.

A healthy inmate could have walked from his cell on his own. Claimant was not physically able to do so, and he was forcibly removed from the cell. In the process he was hurt. It does not appear that anyone seriously tried to evaluate him at the time. Claimant was treated inappropriately at that time and subjected to conduct that violated the ADA.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** Claimant will be awarded $200.00 as damages for the treatment he received in April, 1995.

IT IS HEREBY ORDERED that the claim of Steve D. Watson is granted, in part, and he is awarded $200.00 as damages; and

5

      IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 16, 2011.**

      SIGNED this 11th day of March, 2011.

      BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master