IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

        Defendants.

---

Claim Number: 03-503
Category III
Claimant: Robert W. Baillie, #44103
Address of Claimant: FCF, P.O. Box 999, Canon City, CO 81215-0999

---

**FINAL ORDER OF SPECIAL MASTER**

---

THIS MATTER came before the Special Master for hearing on February 28, 2011. The hearing was held at the Fremont Correctional Facility (FCF) in Canon City, Colorado. Present were the following: Robert W. Baillie (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through F, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant initially came into DOC custody on April 29, 1977. Claimant was placed in various correctional facilities during the late 1970's and 1980's. On April 23, 1991, Claimant was transferred to the Limon Correctional Facility (LCF). He remained there until August 19, 1997 when he was transferred to a private prison in Appleton, Minnesota. He remained there until December 14, 1998 when he returned to Colorado and was incarcerated at the Kit Carson Correctional Facility (KCCF) at Burlington, Colorado.

On November 2, 1999, Claimant returned to LCF. On October 17, 2001, Claimant was moved to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. On January 22, 2003, Claimant was moved to the Arkansas Valley Correctional Facility (AVCF). He was

transferred to the Bent County Correctional Facility (BCCF) on June 10, 2008. He then was moved to FCF on July 30, 2009.

Claimant submitted a letter that was received by the Special Master on April 20, 2010. That letter was treated as a claim under Article XXXII of the Remedial Plan. Claimant was provided and did submit a claim form. On that claim form, Claimant checked only the boxes for mobility impairment and diabetes, but included the term hypoglycemia.

Claimant described his disabilities as follows:

> I, sometimes, have seizures in my sleep, and/or get (pass out) weak when my blood sugar falls (hypoglycemia). Jan. 2003, I had a seizure in my sleep and fell off the top bunk. From that time I've had back pain and nerve pain in my right leg. DOC has given me pills for the pain since that time. DOC has repeatedly denied my requests for a thicker mattress and lower bunk restriction. Note, I was not diagnosed with hypoglycemia until 2009. It has been a life long suffering for me that I did not know about. I have always been anxious and easily aggrieved a couple hours after eating. Now I know that this happens when the blood sugar in my brain falls. My not knowing this as a young man, when I felt the effects of the hypoglycemia, I would drink alcohol or use illegal drugs. If I had only known of this hypoglycemia 50 years ago, about proper diet, my life would have been so different.

I response to the question concerning discrimination by DOC, Claimant wrote:

> No MRI or other tests to find "WHY" the pain in my back and leg. No thicker mattress and lower bunk restriction. I'm now at the age, better shoes would be a help.

At the hearing, Claimant testified that he fell off a bunk in February, 2003 and injured his back and leg. This occurred during what Claimant believed was a seizure. Claimant requested and was denied lower bunk restriction and a thicker mattress. Claimant has written and talked with staff concerning a lower bunk restriction, but to no avail.

Claimant then was diagnosed as having hypoglycemia in 2009 while at BCCF. He began receiving night time snacks to keep his blood sugar levels under control.

On cross-examination, Claimant acknowledged that he has never had to use a wheelchair. He has constant back pain and cannot stand for long periods of time. He first applied for a screening under the Remedial Plan in 2009. Claimant testified that he would benefit from a thicker mattress and a lower bunk restriction.

Defendants called Dr. Thomas Fisher as a witness. Dr. Fisher testified that Claimant was diagnosed in October, 2008 as having hypoglycemia. Claimant is not diabetic, but is at risk to develop diabetes. Dr. Fisher noted that an x-ray was taken of Claimant's lower spine in 2003, and no abnormality was noted. Additional x-rays were taken of the chest and lumbar spine, and nothing

4

was noted.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Hypoglycemia**: Claimant's diagnosis of hypoglycemia came in late 2008. Even if hypoglycemia were covered under the Remedial Plan, the diagnosis came years after the cutoff date of August 27, 2003. Claimant may be at risk to develop diabetes, but he was not diabetic on or before August 27, 2003.

**Mobility Impairment**: The evidence reflects a fall from a top bunk in February, 2003. Medical testing did not find any broken bones, slipped disks, etc. Claimant has not established that he was mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant also has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

5

Claimant essentially has alleged insufficient or deficient medical care and testing. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Robert W. Baillie is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 23, 2011.**

SIGNED this 18th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master