IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

   -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-508
Category III
Claimant: Joseph Ortega, #45149
Address of Claimant: CTCF, P.O. Box 1010, Canon City, CO 81215-1010

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 22, 2011. The hearing was held at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Present were the following: Joseph Ortega (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Claimant also called the following witnesses: CO Kelli Segura; SGT Robert Shepard; Shane Aerts; and Brett Major. Defendants presented Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through H, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant initially came into DOC custody on February 13, 1979. Claimant served most of his sentence at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. He discharged that sentence on May 5, 1981. Claimant returned to DOC custody on November 13, 1984. He was placed into a community placement and then was granted parole. That sentence was discharged on September 22, 1986.

Claimant came back into DOC custody on March 15, 1989. He was placed back at BVCF and remained there until September 29, 1989 when he was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. That sentence was discharged on September 20, 1991.

3

On August 19, 1992, Claimant was placed back into DOC custody. He was evaluated at the Denver Reception and Diagnostic Center (DRDC) and then incarcerated at the Limon Correctional Facility (LCF). He was placed back at AVCF on August 31, 1998. He was transferred to the Colorado State Penitentiary (CSP) on August 16, 1999. On May 21, 2003, Claimant was moved to the Centennial Correctional Facility (CCF) in Canon City. He was transferred to CTCF on January 4, 2004 and has remained at that facility ever since.

Claimant submitted a letter to the Special Master which was placed into the prison mail system on April 29, 2010. The letter was treated as a claim under Article XXXII of the Remedial Plan. Claimant was provided and did submit a claim form. Claimant checked only the box for hearing impairment. Claimant stated that he had become disabled on December 30, 1996. In response to his disability, Claimant stated as follows:

> I have a constant ringing in my right ear which causes problems in hearing words correctly when spoken to. Announcements over the intercom are muffled. The ringing is starting to also begin in my left ear.

In response to the question that requests the date of discrimination, Claimant stated:

> DOC refused to give me any further ear testing in 1999-2003 when I was at CSP. They did not want to transport me to Pueblo for security reasons.

Claimant also wrote:

> When I got to this facility - CTCF they told me I do not qualify for any further testing because of a new protocol that says that both ears have to be deaf in order to get hearing aids. That was 2003.

Claimant also attached pages from his medical records.

At the hearing, Claimant testified that he was injured in 1996 while at LCF when a handball hit his right ear. He began having spells of dizziness and vertigo, plus ringing in the ear. He sought medical care at the time and has continued to seek care since the accident. Claimant has requested a hearing aid or something to help with the ringing. He noted that the last denial of a hearing aid came in 2009.

On cross-examination, Claimant testified that he had seen medical care providers since the accident in 1996. At one point, he requested permission to take a sign language course but that request was denied.

Claimant called four witnesses who noted that Claimant had difficulty hearing at times. None of the witnesses indicated that Claimant was totally unable to communicate.

Defendants called Dr. Thomas Fisher as a witness. Dr. Fisher had reviewed Claimant's

medical records. He noted that Claimant had suffered traumatic injury to the right ear. Subsequent audiograms noted significant hearing loss in the right ear. Testing reflected normal hearing in the left ear. Dr. Fisher testified that DOC criteria requires bilateral hearing loss before hearing aids will be provided. He testified that the loss of hearing in the left ear was within normal range caused by aging. On cross-examination, Dr. Fisher agreed that there was significant hearing loss in the right ear.

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The evidence presented by both sides reflects that Claimant suffered an injury to his right ear in 1996. That injury led to significant hearing loss in that ear. The evidence presented by both sides reflects that Claimant is able to ear through his left ear. The testing provided over the years has not reflected that Claimant is unable to hear. There has been a decrease in hearing over the years in the left ear due to aging.

Insufficient evidence has been presented to establish that Claimant was hearing impaired, as defined by the Remedial Plan and ADA, on or before August 27, 2003. The Special Master has required a showing of an inability to carry on daily activities due to hearing loss. In other words, a claimant must prove that he is basically deaf. Claimant did not establish that he cannot hear. He would like a hearing aid in order to hear better and, perhaps, stop the ringing in the ear. Claimant has not proven that he was part of the class on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant also has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

Claimant essentially has alleged insufficient or deficient medical care and testing. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Joseph Ortega is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 23, 2011.**

SIGNED this 18th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master