IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

      Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

      Defendants.

---

Claim Number: 03-488
Category III
Claimant: Lynn E. Scott, 60760
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211-2017

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on March 7, 2011. The hearing was held at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Present were the following: Lynn Scott (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants also presented Dr. Tim Creany as a witness. Defendants offered into evidence Exhibits A through E, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

> limits his or her ability to perform a major life activity.
> C. PERMANENT DISABILITY/IMPAIRMENT
> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody in August, 1988. Claimant was placed at the Arkansas Valley Correctional Facility (AVCF) and then was discharged in 1991.

Claimant returned to DOC custody in 1994. Claimant was placed first at the Denver Reception and Diagnostic Center (DRDC) and then was transferred to BVCF. He was placed on parole, but that was unsuccessful. He returned to BVCF and then discharged his sentence. Claimant then returned to DOC custody in the year 2000. After his initial placement at DRDC, Claimant was incarcerated at the Huerfano County Correctional Center (HCCC). After 6 months, he was placed at the Skyline Correctional Center in Canon City. He then was moved to the Arrowhead Correctional Center also in Canon City. He was transferred to the Crowley County Correctional Facility (CCCF)

in Olney Springs, Colorado. He then was moved to AVCF in 2003.

Claimant went to a community placement in late 2003 and then walked away from the facility. He was charged with escape and came back to DOC custody in late 2003 and was sent to the Limon Correctional Facility (LCF). In 2007, Claimant was granted parole and then escaped again. He was placed back in custody and transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado. In 2008, he returned to BVCF.

Claimant sent a letter to the Special Master that was received on April 19, 2010. That letter was treated as a claim pursuant to Article XXXII of the Remedial Plan. Claimant was provided a formal claim form, and he has filed that with the Special Master. Claimant checked only the box for vision impairment. As to discrimination, Claimant stated in his claim form, in part:

> By paying for coverage for my eyes extra - by not able to participate in Sporting Events eye no equipment, and diminish quality of life.

At the hearing, Claimant testified that his main concern was that he could never receive protective equipment for his eyeglasses. During the years he has been in DOC custody, Claimant has been involved in various sports, including softball and basketball. He has been wearing eyeglasses for over twenty years and has worried about those eyeglasses being broken or damaged. In 1989 at AVCF, he requested protective goggles and a safety strap to hold his glasses on while playing. He has never received anything to protect his eyeglasses. As a result, Claimant has had to limit some physical activities. Claimant believes that this is discriminatory.

On cross-examination, Claimant acknowledged that he had never made application for accommodations. He has not asked for a disability screening. He stated that he has been provided eyeglasses over the years he has been in DOC custody, as verified by his medical records. He has continually asked gym personnel for protective gear for his eyeglasses, but nothing has been provided. Claimant testified that he did not know until recently that he was disabled.

Dr. Tim Creany was called as a witness for Defendants. Dr. Creany testified that he reviewed Claimant's medical records. He noted that Claimant's eyes were not abnormal, and eyeglasses had been provided over the years to Claimant. Dr. Creany testified further that DOC medical has no role in providing sports equipment at DOC facilities.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes

that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

Over the last seven years on vision impairment claims, the Special Master has required evidence that an individual truly had difficulty seeing and carrying out major life activities. This has meant a showing of near blindness affecting reading, travel, etc. Claimant is able to carry on all life activities when using his eyeglasses. He would like to have protective equipment for his glasses when he plays sports, and that request is not outrageous. Claimant has not established that he was mobility impaired, as defined by the Remedial Plan, on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Claimant did not establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. No evidence was presented that indicated that Claimant was treated differently from anyone else who played sports. Though protective goggles or straps might make sense, failure to provide such equipment prior to August 27, 2003 was not discriminatory and not in violation of the ADA.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Lynn E. Scott is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

5

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 31, 2011.**

SIGNED this 25th day of March, 2011.

                                                                                  BY THE COURT:

                                                                                  */s/ Richard M. Borchers*

                                                                                   _____
                                                                                  Richard M. Borchers
                                                                                  Special Master