IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

      Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

      Defendants.

---

Claim Number: 03-498
Category III
Claimant: David L. Davis, #90980
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on February 16, 2011. The hearing was held at the Arkansas Valley Correctional Facility(AVCF) in Crowley, Colorado. Present were the following: David L. Davis (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants called as a witness Dr. Tim Creany, M.D. Defendants offered into evidence Exhibits A through U, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>> limits his or her ability to perform a major life activity.
>> C. PERMANENT DISABILITY/IMPAIRMENT
>> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on September 9, 1996. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. In October, 1996 Claimant was transferred to AVCF. He was moved to the Colorado State Penitentiary (CSP) in Canon City in September, 1999. He remained at CSP until December, 2001 when he returned to AVCF. He has remained at that facility ever since that date.

Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. Claimant checked only the box for mobility impairment. He believed he was disabled when he entered into DOC custody. In his claim form, Claimant stated, in part:

> I have had to have a total knee replacement in 1977 - it has caused me mobility problems since that time. Suffer lots of pain without any adequate pain control. I have a partial paralysis of my left arm and hand due to neck injuries. I have severe lumbar degeneration that causes me very bad pain when I do work or have to stand for more than 10 minutes or walk any distance in the shoes provided by DOC. I have fallen two times in the shower and it has increased my pain even more. I suffer from chronic osteoarthritis in almost all of my joints with the most severe being in my back and knees, followed by my hands and wrists.

In his claim form, Claimant alleged that he had been the victim of discrimination from 1997 to the present. Claimant alleged that the discrimination included being threatened with punishment, being unable to find suitable work, and refusal to provide medical restrictions.

At the hearing, Claimant testified that he had a right knee replacement in 1997 while in DOC custody. Both knees are having problems. Claimant believed that he had been denied various jobs over the years because of his physical condition. Claimant stated that he cannot walk any distance and has difficulty just moving his legs. He has difficulty sitting up and getting out of bed. Claimant testified that he had to opt out of the *Montez* case in 2008 to stop a transfer to the Sterling Correctional Facility (SCF).

Claimant testified further than he had received a cane from medical. Claimant stated that he had problems in 2009 when he was assaulted by another inmate and had to use his cane for defense. The cane was taken from him. His only support now is his knee brace.

On cross-examination, Claimant stated that he was provided a *Montez* screening in 2009 which he believed was unfair. He believed that he was discriminated against in employment opportunities because he cannot lift heavy objects. He also believed it was inappropriate and discriminatory that he must take a roundabout path to the chow hall.

Defendants called Dr. Tim Creany as a witness. Dr. Creany had reviewed Claimant's medical records. Dr. Creany testified that Claimant has several medical issues. The primary concerns were his knees and lower back. Dr. Creany noted that a cane had been provided to Claimant as a medical device for stability.

On cross-examination, Dr. Creany noted that Claimant had received a right knee replacement in 1997. Claimant has arthritic changes in his left knee. The arthritis can be painful. Dr. Creany admitted that Claimant's condition will not improve.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I)

Claimant had mobility issues when he came into DOC custody. He had a knee replacement in 1997. He has had difficulty moving over the years. The Special Master determines that Claimant was mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Claimant essentially has alleged insufficient or deficient medical care. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes.

Claimant made allegations of discrimination concerning employment, but did not prove that was the case prior to August 27, 2003. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of David L. Davis is dismissed, as Claimant failed

to prove that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 31, 2011.**

SIGNED this 25th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master