IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-506
Category III
Claimant: Thomas Maddock, #85746
Address of Claimant: BVCF, P.O. Box 2017, Buena Vista, CO 81211-2017

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on March 7, 2011. The hearing was held at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. Present were the following: Thomas Maddock (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants also presented Dr. Tim Creany as a witness. Defendants offered into evidence Exhibits A through I, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on April 28, 1995. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred to BVCF on June 13, 1995. He was transferred to the pre-release center on October 10, 1996. Claimant discharged his first sentence on December 12, 1996.

Claimant returned to DOC custody on July 11, 2000. He was placed at DRDC and then was moved to BVCF on July 27, 2000. Claimant was transferred to the Fremont Correctional Facility (FCF) on March 29, 2001. He remained there until he was placed at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado on July 11, 2002. Claimant then went to the Limon Correctional Facility (LCF) on February 18, 2003. On May 20, 2005, Claimant was

moved to the Kit Carson Correctional Facility (KCCF) in Burlington, Colorado. He was placed on parole on April 14, 2006.

Parole was not successful, and Claimant returned to DOC custody on January 18, 2007. He went to the Sterling Correctional Facility (SCF) in Sterling, Colorado. He went back to KCCF and then was paroled on September 25, 2007. He absconded from parole supervision and returned to DOC custody on January 4, 2008. He returned to SCF on January 17, 2008. He was transferred to BVCF on October 9, 2008.

Claimant sent a letter to the Special Master that was received on April 24, 2010. The letter was treated as a new claim. Claimant was provided a claim form, and that was completed and filed with the Special Master.

Claimant checked only the box for mobility impairment. Claimant stated, in part, as follows:

> Scoliosis and kyphosis curving the spine and misaligning hips causes right leg to be shorter during walking (1/4") creating pain in back and legs. (2) Motorcycle accident (1989) causing left knee injury and replacement.

Claimant alleged that he has been the victim of discrimination during his entire incarceration in DOC. Claimant stated on his claim:

> Medical accommodations require shoes with heel lift to even hip movement and lessen strain on spine. Medical in FCF (OO) was set to purchase and provide shoes & boots when ordered not to. 08' BVCF was told I needed lift and ADA denied claim stating no disability. Denied muscle relief cream.

At the hearing, Claimant testified that he was born with scoliosis. He has pain in his back and legs as a result of the condition. He has requested shoes with a medical lift to even out both legs. No heel lift has been provided. On cross-examination, Claimant testified that he had been evaluated for a disability and was told he did not qualify.

Defendants presented the testimony of Dr. Tim Creany who had reviewed the medical records of Claimant. Dr. Creany verified that Claimant does have scoliosis. There is a difference in leg length due to the scoliosis. A heel lift could be of help to Claimant. Dr. Creany indicated that Claimant's condition is a medical issue, not an ADA issue.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The testimony of Dr. Creany was direct. Claimant does not have an ADA issue because his activities of daily life have not been affected. Claimant is able to walk and work. There is no question that he has a leg length disparity, but Dr. Creany noted that is a medical issue. Claimant may be able to receive a heel lift through medical channels. He will not through the ADA, as he is not impaired to the point that his mobility is substantially affected.

Claimant has not established that he was mobility impaired, as defined by the Remedial Plan, on or before August 27, 2003. He does have a legitimate medical issue, and it would make sense to provide Claimant a heel lift so his condition does not worsen to the point that it becomes an ADA issue.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Claimant has a medical issue at the present time. Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Master as set forth in the Settlement Agreement. In addition, the Special

Master has no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

The *Fitzgerald* case binds the hands of the Special Master, as well as the Court. The quality of care cannot be considered in this case. On the other hand, the testimony of Claimant reflected that BVCF medical staff are making an attempt to treat the medical condition. Claimant may wish to see if that care ultimately provides some relief for him.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Thomas Maddock is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 31, 2011.**

SIGNED this 25th day of March, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master