IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-483
Category III
Claimant: Jose A. Fernandez, #55591
Address of Claimant: 1911 Capulin Drive, Colorado Springs, CO 80910

---

# FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on March 21, 2011. The hearing was held at the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Present were the following: Jose A. Fernandez (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Tim Creaney, M.D. as a witness. Defendants offered into evidence Exhibits A through I, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>> limits his or her ability to perform a major life activity.
>> C. PERMANENT DISABILITY/IMPAIRMENT
>> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on November 12, 1986. He was placed initially at the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. He was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado on November 25, 1986. He returned to BVCF on January 1, 1987.

DOC then placed Claimant at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on November 29, 1988. He was transferred to CCF on January 20, 1994. He was moved then to several facilities over a short span of time. He was placed at the Limon Correctional Facility (LCF) in Limon, Colorado on August 10, 2001. He returned to BVCF on April 16, 2009. He went back to AVCF on September 21, 2009. He was transferred to ACC in Canon City on September 27,

2010. Finally, he was placed at the Four Mile Correctional Complex (FMCC) in Canon City, Colorado on February 10, 2011. Claimant discharged his sentence on March 26, 2011 and relocated to Colorado Springs.

Claimant sent a letter to the Office of the Special Master that was received on April 16, 2010. That letter was treated as a new claim. Claimant was provided a revised claim form which was returned on April 28, 2010. In the claim form, Claimant checked only the box for hearing impairment, but made the notation that this included both ears. Claimant initially said that he was unsure when he became disabled.

In response to the question concerning his disability, Claimant stated, in part, as follows:

> I've been given warning violations asleep during count times. I have missed medical appointments and charged for no shows also because I am hearing impaired. I talk loud I've been told to lower voice or I could be charged a COPD violation for advocating. My hearing balance is off due to only one hearing aid when I was told I needed a left and right hearing aid. DOC case manager supervisor told me DOC inmate classifications won't allow me to progress from Level 3 medium custody to Level 2 or lower custody regardless if I fit the DOC criteria because I am ADA hearing impaired.

Claimant initially indicated that he was the victim of discrimination in 2008.

In a subsequent response to Defendants' objection, Claimant stated that his hearing problems arose while at AVCF. Claimant worked in the panel shop with saws that created loud sounds that Claimant believed affected his hearing.

At the hearing, Claimant testified that he worked at the garment factory at LCF from 2000 to 2008. He was experiencing hearing loss, particularly in that factory with various machines operating. Claimant was advised by a staff member that he should have two hearing aids. He also believed that he was improperly delayed in receiving a transfer to a minimum level facility. He acknowledged that he received one hearing aid. He indicated that he had filed several grievances, but to no avail. He also indicated that there was at one point a recommendation for two hearing aids, but that recommendation was rescinded.

On cross-examination, Claimant testified that he received the hearing aid on August, 2009. Claimant did not seek a disability screening until 2009. He also acknowledged receiving a vibrating watch.

Defendants presented Dr. Tim Creany as an expert witness. He testified that Claimant had not requested an evaluation until 2009 and then was found to have hearing loss. Dr. Creany stated that Claimant did not meet the DOC criteria for two hearing aids. Claimant was provided one hearing aid.

4

## III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

Claimant was found to be hearing impaired in 2009. Claimant may well have been hearing impaired prior to that time, but that was not established by the evidence presented by both sides. The Special Master must find that the evidence establishes that a disability existed on or before August 27, 2003. Only if that is established may a claimant then present evidence of continuing conduct toward him after that date.

It is highly likely that Claimant was hearing impaired on or before August 27, 2003. That fact has not been established by the evidence presented as to this claim.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Under Article XXXII of the Remedial Plan, Claimant carries the burden to prove all aspects of his claim. Claimant has not done that in this case. Claimant may well have been the victim of discrimination on or before August 27, 2003, but that has not been established.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Jose A. Fernandez is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 9, 2011.**

SIGNED this 15th day of April, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master