IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

        Defendants.

---

Claim Number: 03-507
Category III
Claimant: David Wayne Helton, #68322
Address of Claimant: CMC-ACC, P.O. Box 300, Canon City, CO 81215-0300

---

## FINAL ORDER OF SPECIAL MASTER

---

      THIS MATTER came before the Special Master for hearing on March 21, 2011. The hearing was held at the Arrowhead Correctional Complex (ACC) in Canon City, Colorado. Present were the following: David Wayne Helton (Claimant) and Deann Conroy, attorney for Defendants.

      Claimant testified in support of his claim. Defendants presented Dr. Tim Creaney, M.D. as a witness. Defendants offered into evidence Exhibits A through D, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on June 15, 1992. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He remained at DRDC until July 27, 1992 when he was transferred to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. He was at CTCF for a few days and then was moved to the Fremont Correctional Facility (FCF) in Canon City. He was incarcerated at the Arkansas Valley Correctional Facility (AVCF) on June 17, 1993. Claimant then was transferred to the pre-release unit on June 28, 1998. Claimant discharged his sentence on July 20, 1998.

Claimant returned to DOC custody on March 14, 2001. He again was placed at DRDC for evaluation and testing. He returned to FCF on April 19, 2001. With the exception of brief placements

at DRDC and the infirmary at CTCF, Claimant remained at FCF until his transfer to ACC on August 15, 2007. Claimant has remained essentially at ACC for the last four years.

Claimant submitted a letter to the Special Master that was received on April 30, 2010. It was denominated as a claim for damages. The document was treated as a claim under Article XXXII of the Remedial Plan. Claimant was provided a formal claim form. The formal claim form was received on June 17, 2010.

On his formal claim form, Claimant checked only the box for mobility impairment. When asked to describe his disability, Claimant stated as follows:

> July 1983, crushed C-4 & C-5, mechanical fusion C-3 through C-6. Constant headache, pain and numbness in arms and hands. Aug. 1984 fusion mass broken C-3 through C-5, also broke C-7 and 1st dorsal. Bone graph fusion C-4 & C-5. Increased headaches, pain, numbness. 1-29-02 Back injury, working FCF Laundry lifting, lower back pain, stiffness. Numbness at times unable to reach and tie my own shoes. 9-6-07 Back injury, slipped and fell working at ACC kitchen. Constant pain increased numbness and stiffness can only sleep in fetal position causing damage to hips, shoulders and collarbone (mattress).

In response to the question concerning discrimination by DOC staff, Claimant stated as follows:

> I have been denied ADA Classification, received substandard medical care (border-line malpractice). I have asked many times to be seen by Neuro Clinic. No appointment has been made in ten years, I have difficulty at times with walking, standing, sitting, lying, and sleeping.

Claimant has submitted several pages of medical records in support of his claim.

At the hearing, Claimant testified that he had suffered his initial back injury while in the United States Navy. He stated that he believed that DOC could have done more to help him and that several appointments with a neurosurgeon were canceled. In March 2001, Claimant requested a medical pillow and an egg crate mattress. He believed that he had received insufficient medical care during the years he was in DOC custody.

Claimant testified that he had been the victim of discrimination due to lack of medical care. He had been treated by Dr. Creaney while at FCF and that Dr. Creaney told him that he would need surgery in the future. Claimant fell in 2007 and aggravated his back. He began to experience numbness in his hands and some paralysis. He requested a double mattress and that request was denied. Trigger point injections were administered by medical staff. Claimant stated that some days he barely can get out of bed. He is in constant pain.

On cross-examination, Claimant testified that he first submitted a request for an ADA evaluation in December, 2009. He is experiencing significant pain. He believes that he should

receive proper medical treatment.

Dr. Creaney was called as an expert witness. He had reviewed all of Claimant's medical records. He noted that Claimant was not determined to be mobility disabled based upon the ADA screening. Dr. Creaney did not believe that a medical mattress was necessary, as that was normally reserved for individuals who experienced skin breakdown. Dr, Creaney did not believe that surgery was necessarily an option, as there would be no way to guarantee that pain would be reduced. He stated further that referral to a neurosurgeon would occur only if surgery were a viable option. Dr. Creaney indicated that Claimant has a medical condition, not a disability as defined by the ADA.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The damage claim process was agreed to by class counsel and Defendants in order to compensate inmates and former inmates who were disabled on or before August 27, 2003. The evidence presented by Claimant does not establish that he was disabled on or before that date. Mobility impairment has required a showing of a lower extremity disability that affected movement. The evidence presented reflects that Claimant has been able to walk and not use any assisting device, such as a cane, on or before August 27, 2003. As Dr. Creaney noted, Claimant has a medical condition, not necessarily a disability. The two are different, with only the latter covered by the Remedial Plan.

The Special Master believes that Claimant is in pain. He has suffered significant injuries to

his back over the last almost thirty years. His medical condition did not meet the criteria for mobility impairment on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Almost all of Claimant's concerns relate to the quality of medical care that he has received since entry into DOC custody. The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) is binding upon the Special Master. The ADA and Rehabilitation Act cannot be used to contest the *quality* of medical care received by an inmate in a prison or jail. The basis for attacking the quality of care requires use of the Eighth Amendment or state statutes. Claimant is precluded from using the claim process to attack the medical care he received while in DOC custody. The evidence is that Claimant received some care. The sufficiency of that care cannot be litigated in this case.

Claimant has not shown that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. *Fitzgerald* precludes consideration of the sufficiency of medical care provided to Claimant prior to August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of David Wayne Helton is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before May 9, 2011.**

SIGNED this 15th day of April, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master