IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

      Plaintiffs,

   -vs.-

JOHN HICKENLOOPER, et al.,

      Defendants.

_____

Claim Number: 03-486
Category III
Claimant: Anthony Sanchez, #97617
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

_____

## FINAL ORDER OF SPECIAL MASTER

_____

THIS MATTER came before the Special Master for hearing on January 24, 2011. The hearing was held at the Arkansas Valley Correctional Facility (AVCF), in Crowley, Colorado. Present were the following: Anthony Sanchez (Claimant) and Deann Conroy, attorney for Defendants.

Claimant testified in support of his claim. Defendants presented Dr. Tim Creaney, M.D. as an expert witness. Defendants offered into evidence Exhibits A through F, and all were admitted.

At the conclusion of the hearing, the Special Master allowed both sides time in which to submit addition documents. Claimant requested the opportunity to review his medical records, and he was given that opportunity. Claimant submitted additional documents for consideration, but Defendants did not. Further argument will be waived.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794.* During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
I. General inconvenience or nominal damages;
II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
IV. Damages due to severe physical injuries; and
V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS
A. COVERED DISABILITIES
The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

limits his or her ability to perform a major life activity.

C. PERMANENT DISABILITY/IMPAIRMENT

A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:

1. Is the claimant a disabled individual who is a member of the class?

2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?

3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)

4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody in 1997. He was placed initially at the Denver Reception and Diagnostic Center (DRDC) for testing. He was at DRDC for approximately three weeks. He then was moved to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado, where he remained for approximately one year. He was transferred to the Limon Correctional Facility (LCF) in Limon, Colorado. He remained at LCF for two years and then was placed at the Sterling Correctional Facility (SCF) in Sterling, Colorado where he remained for nine months. He then was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado.

After five months at FCF, Defendants then moved Claimant to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado where he remained for seven years. Claimant

3

was transferred to a private Oklahoma facility and then returned to Colorado with his placement at the Kit Carson Correctional Facility (KCCF) in Burlington, Colorado. On January 4, 2010, Claimant was transferred to AVCF where he remains.

Claimant filed his claim pursuant to Article XXXII of the Remedial Plan on April 29, 2010. Claimant checked the boxes for mobility impairment and hearing impairment. He alleged that he became disabled in 1994. In response to a question concerning his disabilities, Claimant stated, in part, as follows:

> I have rods in my right calf and arthritis in my knees and damage in my lower back & neck. I have a severed nerve in my lower neck. It causes me to lose feeling through out my body. I get in so much pain all the time. I can't even walk to chow hall to eat. Can't sleep at night. I have a hard time getting dressed because my hands don't function right. I can't sit for more than 5 minutes. Can't stand for too long. Plus I've lost some of my hearing. I've addressed these issues with DOC medical but tell me they can't help me in any way because they have no money. They won't even give me a hearing test.

Claimant states that he has been discriminated against since his entry into DOC custody. In response to the question concerning how he has been the victim of discrimination, Claimant states:

> They refuse to get me the appropriate medical attention I need. A better mattress, braces for my knees, cane and to have sufficient amount of time to get from one place to another like the chow hall. I live on the 3rd tier and they refuse to give me restriction to lower tier, lower bunk, better shoes, etc.

At the hearing, Claimant testified that he was evaluated while at CTCF. He discussed his medical issues, including a heart attack. From Claimant's perspective, his health has deteriorated since arriving in DOC custody in 1997. He noted that one leg is shorter than the other. He has started to lose feeling in his legs. He has fallen from a second bunk.

Claimant testified further that his hearing issues have also led to equilibrium problems. He cannot hear announcements over the address system. On cross-examination, Claimant stated that he had been in a body cast shortly before coming into DOC custody and his muscles were weak. He acknowledged that he had not filed a claim prior to 2010. He claims that he was advised by medical staff that he should have further surgery. He has received bottom bunk and bottom tier restrictions in the past, but those have been taken away from him.

Dr. Creaney was called by Defendants as an expert witness. He reviewed Claimant's medical records. Dr. Creaney testified that Claimant did not meet the criteria for either mobility impairment or hearing impairment. Dr. Creaney testified further that Claimant had been evaluated for numbness in his legs, and x-rays revealed mild arthritic changes in his spine. Over the years, various tests have been completed on Claimant. None of the tests reflect that Claimant meets the criteria for mobility impairment or hearing impairment.

In rebuttal, Claimant testified that he hurts and has mobility problems. He would like tennis shoes to be provided by DOC.

Claimant submitted several pages of his medical records. Those records go back to 1998. Included in his documents is a decision by the Social Security Administrative Law Judge finding that Claimant was disabled as of 1996. Claimant has detailed various medical issues that have arisen over the years he has been in DOC custody.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Hearing Impaired:** There is insufficient evidence from any source that would support a finding that Claimant was hearing impaired, as defined by the ADA, on or before August 27, 2003. Claimant is not a member of the class as hearing impaired.

**Mobility Impairment:** The orders of Judge Kane control the damage claim process. All claimants must show that they were disabled, as defined by the ADA, on or before August 27, 2003. The damage claim process was agreed upon between class counsel and Defendants to provide compensation to those individuals who were disabled and discriminated against by DOC staff on or before August 27, 2003. The claim process is part of the settlement of this case. The process has provided contractual rights to Claimant and others, and any constitutional claims would have to be resolved in a separate lawsuit.

There is no question that Claimant has had a myriad of medical issues over the years. He has degenerative disk disease, arthritis, heart and other problems. The problem facing Claimant is one that others face at this time. In order to prevail on his claim, Claimant must establish that he was disabled on or before August 27, 2003, as defined by the ADA. The determination of the Social Security Administration is not, in and of itself, the same as meeting the criteria under the ADA.

Claimant may well have been disabled under the ADA on or before August 27, 2003. Claimant has not proven that he was disabled under the ADA. The Special Master can appreciate the difficulty that Claimant and others experience in trying to go back eight or more years to historically establish an impairment. Claimant has many medical conditions that stretch back years. Claimant has not proven that he was mobility impaired on August 27, 2003, as defined by the ADA.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has detailed in his pleadings and in his testimony his concerns about the medical care he has received in DOC custody. The evidence presented by both sides reflects that Claimant did receive medical care during the time he was in DOC custody. He has degenerative disk disease, as well as arthritis. He has other medical problems that affect his daily living.

The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) is binding upon the Special Master. The ADA and Rehabilitation Act cannot be used to contest the *quality* of medical care received by an inmate in a prison or jail. The basis for attacking the quality of care requires use of the Eighth Amendment or state statutes. Claimant is precluded from using the claim process to attack the medical care he received while in DOC custody. The evidence is that Claimant received some care. The sufficiency of that care cannot be litigated in this case.

Claimant may file his own separate lawsuit under the Eighth Amendment against DOC concerning the sufficiency and quality of medical care he received. He has not proven that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Anthony Sanchez is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294

**on or before July 18, 2011.**

SIGNED this 22nd day of April, 2011.

BY THE COURT:

*/s/ Richard Borchers*

_____

Richard M. Borchers
Special Master