IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

      Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

      Defendants.

---

Claim Number: 03-491
Category III
Claimant: Wayne Brunsilius, #65458
Address of Claimant: P.O. Box 150923, Lakewood, CO 80215-0923

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on January 18, 2011. The hearing was held at the Denver office of Legal Resolution Center. Present were the following: Wayne Brunsilius(Claimant) and Deann Conroy, attorney for Defendants. Also present were Dr. Rebecca Painter, M.D. and Wes McKinley.

Claimant testified in support of his claim. Claimant also called as witnesses Dr. Painter and Mr. McKinley. Claimant also offered into evidence Exhibits 1 through 14, and all were admitted. Defendants presented Dr. Thomas Fisher, M.D. as an expert witness. Defendants offered into evidence Exhibits A through F, and all were admitted.

At the conclusion of the hearing, the Special Master allowed both sides time in which to submit addition documents. Claimant requested the opportunity to review his medical records, and he was given that opportunity. Claimant submitted additional documents for consideration, but Defendants did not. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>  1. Is the claimant a disabled individual who is a member of the class?
>  2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>  3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>  4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

The evidence presented by both sides establishes that Claimant was in the construction business prior to being sentenced to DOC custody. In his construction business, Claimant did work at the Rocky Flats nuclear weapons facility in Jefferson County. It was during this work that Claimant believes that he was exposed to radiation and was poisoned by mercury. Claimant has been attempting for years to establish the causal link between his health problems and his work at Rocky Flats.

The evidence also established that Claimant had thoracic and lumbar vertebrae scoliosis from

his youth. This long pre-dated Claimant's entry into DOC. Coupled in with the scoliosis was osteoporosis and a myriad of other health issues. Those medical issues continued after Claimant entered into DOC custody.

Claimant came into DOC custody in 1991. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant remained at FCF until 1997 when he was transferred to a private prison in Appleton, Minnesota.

Claimant was moved to the Kit Carson Correctional Facility (KCCF) in Burlington, Colorado in December, 1998. Claimant was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado in September,1999. Claimant remained at SCF until he was transferred back to KCCF in 2007. Claimant discharged his sentence in 2010 and is now living in the Denver metro area. As Claimant has discharged his sentence, he is no longer under any DOC control.

Claimant sent a letter to the Office of the Special Masters which was received on April 27, 2010. Claimant titled his letter as a "claim for damages." The letter was treated as a claim filed pursuant to Article XXXII of the Remedial Plan. A formal claim form was mailed to Claimant, and that was returned to the Special Master on May 13, 2010.

On the claim form, Claimant checked the boxes for mobility impairment and hearing impairment. Claimant alleged that he became disabled in 1983. In his claim form, Claimant alleged, in part, as follows:

> 1) On May 1983 while working at the rocky flats nuclear plant I was severely Mercury and heavy metal poisoned and radiation poisoned. I began to suffer many health problems, and hearing loss was among the medical conditions suffered, resulting from the severe mercury poisoning.
> 2) The mercury poisoning was so severe that I lost all nerve control in both legs and the mercury created severe calcium loss, called hypocalcemia, which condition caused my spine to collapse, and the loss of all nerves in both legs, in conjunction with the loss of calcium created the mobility problem.

In his claim form, Claimant has alleged that he "filed for and with the ADA in the 1990's and filed application with Paula Greisen before 2004 and until this date." He has alleged further that he has had no response from class counsel. He also alleged that "I've lost 6 inches in height while in prison and broke my right leg resulting in discrimination in medical to provide proper medical treatment."

In response to a question concerning discrimination, Claimant stated as follows:

> By the fact that I was not tested on a timely basis, the clinical services has denied petitioner hearing aid, or testing. While in Sterling Correctional, Medical sent me physical therapist who ordered a brace for damages to spine, and to assist in preventing damages, which was never provide (sic) this petitioner. I was given a cane

       to assist walking in 2010. The department of corrections never continued heavy metal detox as petitioner was in before prison.

In addition to his claim form, Claimant has submitted many pages of medical records, plus additional pleadings in support of his claim.

     At the hearing, Claimant presented Wes McKinley as a witness who was familiar with what transpired at the Rocky Flats facility. Mr. McKinley was the foreperson of the federal grand jury that investigated what happened at the nuclear weapons plant.

     Dr. Painter testified that she has provided treatment for Claimant since his discharge from DOC custody. In her professional opinion, Claimant was exposed to mercury, heavy metals and radiation while working at the Rocky Flats facility. She believes that most of Claimant's medical problems arose as the result of the poisoning. In her professional opinion, DOC medical staff could and should have conducted further testing.

     In his testimony, Claimant reiterated his belief concerning his poisoning at Rocky Flats. Virtually all of Claimant's claims of discrimination are related to the quality of medical care he received while in DOC custody.

     DOC called Dr. Fisher as an expert witness. Dr. Fisher testified concerning the medical care provided over the years to Claimant. Various lab tests were done and did not indicate any heavy metal poisoning. Hearing loss was subjective, as no audiogram was completed before Claimant's discharge from DOC custody.

### III.

     The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

     **1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

     Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as

5

compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Mobility Impairment:** Claimant has become fixated in his belief that he was poisoned while working at Rocky Flats. It is immaterial how Claimant came to be mobility impaired.

Claimant has had scoliosis for years. He also has had problems with his legs and nerves. The testimony of Claimant is credible as to his pain and loss of feeling in his legs. In addition, the Special Master has observed Claimant and it is evident that he has physical problems. The medical records support Claimant as to his physical problems. Claimant was mobility impaired on or before August 23, 2003. Claimant is a member of the class as mobility impaired.

**Hearing Impaired:** There is insufficient evidence from any source that would support a finding that Claimant was hearing impaired, as defined by the ADA, on or before August 27, 2003. Claimant is not a member of the class as hearing impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has detailed over the last few months in his pleadings concerns about the medical care he received in DOC custody. He believes that the type of testing was inappropriate to determine that the mercury and radiation poisoning were the cause of all of his resulting medical conditions.

The evidence presented by both sides reflects that Claimant did receive medical care during the time he was in DOC custody. He was sent to various specialists who examined him but could not categorically say that he had been poisoned.

The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) is binding upon the Special Master. The ADA and Rehabilitation Act cannot be used to contest the *quality* of medical care received by an inmate in a prison or jail. The basis for attacking the quality of care requires use of the Eighth Amendment or state statutes. Claimant is precluded from using the claim process to attack the medical care he received while in DOC custody. The evidence is that Claimant received some care. The sufficiency of that care cannot be litigated in this case.

Claimant may file his own separate lawsuit under the Eighth Amendment against DOC concerning the sufficiency and quality of medical care he received. He has not proven that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Wayne Brunsilius is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 18, 2011.**

SIGNED this 22nd day of April, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master