FILED
United States Court of Appeals
Tenth Circuit

May 10, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JESSE F. MONTEZ,

    Plaintiff,

  v.

JOHN HICKENLOOPER; FRANK GUNTER, Former Executive Director of the Colorado Department of Corrections; BEN JOHNSON, Former Warden of Colorado Territorial Correctional Facility; CHERYL SMITH, Medical Administrator at CTCF; ARI ZAVARAS, Executive Director of Colorado Department of Corrections; BOB FURLONG, Warden of Limon Correctional Facility; COLORADO DEPARTMENT OF CORRECTIONS; BILL PRICE, Warden of the Arkansas Valley Correctional Center; R. MARK McDUFF, Warden of the Arrowhead Correctional Center, the Four Mile Correctional Facility, the Skyline Correctional Center, and the Pre-Release Correctional Center; GARY NEET, Warden of the Buena Vista Correctional Facility; WARREN DIESSLIN, Former Warden of the Buena Vista Correctional Facility; FRANK MILLER, Warden of the Centennial Correctional Facility; DONICE NEAL, Warden of the Colorado State Penitentiary; MARK WILLIAMS, Warden of the Colorado

No. 08-1399

Women's Facility; MARK McKINNA, Warden of the Colorado Territorial Correctional Facility; J. FRANK RICE, Dr. Warden of the Denver Reception and Diagnostic Center; LARRY EMBRY, Warden of the Fremont Correctional Facility; TOM COOPER, Former Warden of the Fremont Correctional Facility; BILL BOGGS, Warden of the Rifle Correctional Facility; BILL BOKROS, Warden of the Pueblo Minimum Center; DAVID HOLT, Medical Administrator at the Arrowhead Correctional Facility, the Centennial Correctional Facility, the Colorado State Penitentiary, the Fremont Correctional Facility, and the Skyline Correctional Facility; JEAN MOLTZ, Medical Administrator at the Buena Vista Correctional Facility and the Rifle Correctional Facility; RON JOHNSON, Medical Administrator at the Denver Reception and Diagnostic Center; DON LAWSON, Clinical Administration Director at the Limon Correctional Facility and the Arkansas Valley Correctional Facility; BOB MOORE, who supervises the medical department at the Pueblo Minimum Center, and JOHN DOE(S), Current and former Wardens of any Correctional facility maintained, operated or controlled by the Colorado Department of Corrections, and JOHN ROE(S); RONALD G PIERCE; COLORADO TERRITORIAL CORRECTIONAL FACILITY; BRAD ROCKWILL; ANNETTE PORTER; DENVER RECEPTION &

2

DIAGNOSTIC CENTER; SGT. R. MURPHY; GLENNTTE [sic] SMITH; BECKY RHOMONA; JIM WEBER; NARD CLAAR; BILL REED; FREMONT CORRECTIONAL FACILITY,

     Defendants-Appellees.

LARRY GORDON,

     Claimant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 92-CV-00870-JLK-OES)**

---

Eric V. Hall of Rothgerber Johnson & Lyons LLP, Colorado Springs, Colorado, for Claimant–Appellant.

James X. Quinn, Assistant Attorney General (John W. Suthers, Attorney General; Berina Ibrisagic and Chris W. Alber, Assistant Attorneys General, with him on the briefs), Civil Litigation and Employment Law Section, Denver, Colorado, for Defendants–Appellees.[*]

---

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

  This case raises several issues relating to our appellate jurisdiction. In

---

[*] Current Colorado State Governor John Hickenlooper is substituted for former Governor Bill Owens. *See* Fed. R. App. P. 43(c)(2).

3

particular, we are called upon to decide whether we have jurisdiction over an appeal from the district court's review of a claim for damages filed by an individual claimant pursuant to the dispute-resolution mechanism established in a class action consent decree.

## BACKGROUND

In the early 1990s, Colorado state prisoners initiated a class action lawsuit alleging that state officials were committing ongoing violations of disabled prisoners' rights under the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983. In 2003, the parties entered into a consent decree, called a "Remedial Plan," setting forth the actions Defendants would take to bring the state prison system into compliance with the applicable statutes and establishing a procedure through which individual inmates could bring damage claims for injuries incurred. Specifically, the consent decree provided that the damage claims of individual class members would be determined by a special master, subject to abuse-of-discretion review by the district court. The consent decree was silent as to the possibility of further review by this court. Although class counsel's involvement was required for compliance issues relating to the prison system as a whole, the consent decree explained that "[c]lass counsel does not have an obligation to represent any individual with respect to their individual damage claim." (Appellant's App. to Supplemental Br. at 79.)

Pursuant to the dispute-resolution mechanism established in the consent

decree, Claimant Larry Gordon filed an individual claim for damages. After reviewing the evidence, the special master denied Mr. Gordon's claim, concluding that he did not suffer from a covered disability as defined by the consent decree and, moreover, that there was no evidence Mr. Gordon was discriminated against based upon his claimed disabilities. The district court affirmed this ruling and held that Mr. Gordon's complaints regarding the quality of his medical care needed to be "addressed through a separate individual action, and not as a part of the remedial plan in this case." (*Id.* at 130.)

Mr. Gordon then filed an appeal to this court. In response, Defendants filed a jurisdictional memorandum brief and motion to dismiss, arguing, inter alia, that the consent decree did not authorize the district court's rulings on individual damage claims to be appealed to this court. Because this issue had been raised and remanded in a related appeal brought by a different individual claimant in the underlying class action litigation, *see Montez v. Owens*, 307 F. App'x 160, 163-64 (10th Cir. 2009), the panel abated Mr. Gordon's appeal pending resolution of that remand order.

In the earlier appeal, the panel reasoned that remand was appropriate "in deference to the terms of the parties' own agreement." *Id.* at 163. Specifically, the panel noted that the consent decree provided a process under which a disagreement concerning the proper interpretation of the Remedial Plan would first be subjected to a good-faith attempt by the representatives of each party to resolve

5

the disagreement and, if unsuccessful, thereafter submitted to the district court for resolution. The panel reasoned that because the appeal authorization issue involved a disagreement concerning the proper interpretation of the Remedial Plan, the contractually agreed-upon process should be followed in the first instance before this court took up the matter. The panel also suggested, without deciding, the involvement of class counsel might be necessary in this process, "as 'individual prisoners lack standing to individually litigate matters relating to a class action.'" *Id.* at 164 (brackets omitted) (quoting *McNeil v. Guthrie*, 945 F.2d 1163, 1166 (10th Cir. 1991)).

On remand, the parties could not resolve their disagreement concerning the interpretation of the Remedial Plan, and the matter was submitted to the district court for consideration. The district court then ruled that its orders on appeal from the special master's decisions "were intended under the operative consent decree to be FINAL decisions [that] ARE NOT APPEALABLE to the Tenth Circuit Court of Appeals." (Appellant's App. at 299.) This court subsequently lifted the abatement of Mr. Gordon's appeal and appointed counsel to represent him on issues relating to appellate jurisdiction. Having received supplemental briefing and heard arguments from the parties, we are now prepared to rule on the matter.

## DISCUSSION

We first consider Defendants' argument that Mr. Gordon's appeal is unequivocally barred by the district court's ruling on appealability, which this

6

court cannot review as a matter of law because it was not appealed by class counsel. We are not persuaded by this argument. The consent decree makes clear that class counsel's involvement is not necessary with respect to individual claimants' damage claims. This contractual provision is in accordance with our precedent, which explains that "class members may bring individual actions when they seek money damages," *McNeil*, 945 F.2d at 1166 n.4, despite the rule that "individual prisoners lack standing to individually litigate matters relating to the class action," *id.* at 1166. Although we suggested in our earlier remand order that the involvement of class counsel might be necessary to resolve the dispute regarding the proper interpretation of the consent decree, we did not definitively decide this question. Moreover, even if class counsel's participation might be deemed necessary in the contractually agreed-upon process for resolving disputes in interpretation, it does not thereby follow that class counsel's involvement is necessary for us to determine whether we have appellate jurisdiction over an individual claimant's appeal from an order affecting only his own right to individual damages. Although as a matter of *stare decisis* our ruling on the matter may affect Defendants' ability to rely on the consent decree to argue against appellate jurisdiction in other individual claimants' appeals, this does not change the fact that Mr. Gordon is appealing only the resolution of his own individual claim for damages. Under these circumstances, we are not persuaded that class counsel's involvement is necessary for us to consider whether an appeal may be

had under the terms of the consent decree. Nor are we persuaded that Mr. Gordon was required to separately file an appeal from the district court's ruling on a legal issue that was remanded for consideration by the district court in the first instance while Mr. Gordon's appeal on the merits was properly filed and pending before this court.

Having held that we may properly consider the question of our appellate jurisdiction over the appeal, we now turn to the question of the appropriate standard of review for this question. Defendants argue the district court's ruling on appealability under the consent decree was premised on factual findings that we should review only for clear error. However, nothing in the district court's ruling suggests it was based on anything other than the court's interpretation of the language of the consent decree itself, and we review this interpretation de novo. *See Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 194 (10th Cir. 1993). We also review de novo the other questions Defendants raise relating to our jurisdiction over Mr. Gordon's appeal. *See United States v. Lot 85, County Ridge*, 100 F.3d 740, 742 (10th Cir. 1996).

Defendants maintain that because the consent decree did not expressly authorize appeals to this court, no appeals may be taken from the district court's review of the special master's resolution of individual damage claims. They argue that Tenth Circuit law requires a party to a consent decree to specifically reserve the right to appeal in order to raise any challenges relating to the decree. For

8

support, Defendants cite to *Mock v. T.G.&Y. Stores Co.*, 971 F.2d 522 (10th Cir. 1992), in which we repeated "the well-accepted rule" that "an appeal ordinarily may not be taken from a consent judgment" because "a party to a consent judgment is thereby deemed to waive any objections it has to matters within the scope of the judgment." *Id.* at 526.[1]

We are not persuaded the rule discussed in *Mock* is applicable to the instant case. *Mock* involved a consent decree in which the plaintiffs agreed to drop their claims against the defendants in return for the entry of judgment in their favor. *Id.* at 527. We thus held in *Mock* that the plaintiffs, having freely consented to the entry of judgment, could not later seek to undo that consent and litigate claims they had agreed to dismiss in the consent decree. *Id.* As we explained in *Mock*, the general rule regarding the non-appealability of consent decrees is based on principles of waiver—when "'the decree appealed from was assented to by the appellant, we cannot consider any errors that may be assigned which were in law waived by the consent.'" *Id.* at 526 n.5 (quoting 15 C. Miller, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3902, at 91-92 (1992) (in turn quoting *Pac. R.R. v. Ketchum*, 101 U.S. 289, 295 (1879))). Here, unlike in *Mock*, the class members did not waive their right to bring claims against the defendants. Instead,

---

[1] We note that the terms "consent judgment" and "consent decree" are generally used interchangeably. *See* Judith Resnik, *Judging Consent*, 1987 U. Chi. Legal F. 43, 45 (explaining that the former distinction between these terms has been blurred by the merger of equity and law).

the consent decree simply set up a mechanism through which class members could pursue their individual damage claims. Thus, unlike the plaintiffs in *Mock*, Mr. Gordon is not attempting to back out of the agreement or object to matters within the scope of his consent; rather, he is only seeking appellate review of the result of the agreed-upon mechanism for resolving his claim.

The Second Circuit faced a similar situation in *United States v. International Brotherhood of Teamsters*, 905 F.2d 610 (2d Cir. 1990). In that case, like the instant case, the consent decree did not itself resolve claims, but instead simply established a mechanism under which claims would be decided. Specifically, the parties agreed that an independent administrator would sit as a decisionmaker in disciplinary labor cases, with his decisions to be "final and binding, subject to the [district] Court's review as provided herein." *Id.* at 615. The consent decree further provided that the district court would "have exclusive jurisdiction to decide any and all issues relating to the Administrator's actions or authority" under the consent decree. *Id.* When certain individuals attempted to appeal the district court's affirmance of the administrator's disciplinary sanctions against them, the investigations officer and the federal government argued the Second Circuit lacked appellate jurisdiction to consider these appeals under the terms of the consent decree. However, the Second Circuit concluded the consent decree did not contain a clear and unmistakable expression of the intent to waive appellate rights, reasoning the statement that the district court had "exclusive

jurisdiction" did not unambiguously exclude appellate review, since it could be construed simply as a provision on venue. *Id.* The Second Circuit thus concluded it had jurisdiction to review the district court's decisions implementing the consent decree. *Id.*

Similarly, in the somewhat analogous situation of appeals from district court orders reviewing arbitration decisions, we have held that limitations on the right to appeal from the district court's judgment will be valid only if the intent to limit appellate rights is "clear and unequivocal." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 830 (10th Cir. 2005). Thus, even if the language of the arbitration agreement provides that the district court's review of an arbitration award will be "final," a further appeal may be had to this court, since "the very statute from which we derive our jurisdiction, 28 U.S.C. § 1291, grants the appellate courts jurisdiction from 'all final decisions of the district court.'" *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001). We have explained in these cases that, at least as it relates to the waiver of appellate review, there is "no reason to treat district court decisions concerning arbitration awards differently than any other kind of district court judgment." *MACTEC*, 427 F.3d at 830.

We similarly see no reason to treat the district court's decision regarding Mr. Gordon's legal claim differently simply because the district court reached this decision pursuant to a mechanism established in the consent decree between the parties. Following the Second Circuit's reasoning in *International Brotherhood*,

11

we hold that we have the authority to review claims decided pursuant to a dispute-resolution mechanism established in a consent decree, so long as that decree does not contain a clear and unequivocal waiver of appellate rights.  In so holding, we do not disturb our holding in *Mock* that the parties to a consent decree generally may not bring subsequent challenges to the consent decree or the claims resolved therein.  *See Mock*, 971 F.2d at 526.  We simply hold that, when a consent decree does not resolve claims itself but instead simply establishes a mechanism under which the district court will resolve claims, the parties may appeal the district court's final resolution of such claims to this court unless the consent decree contains a clear and unequivocal waiver of the right to appellate review.  Such an appeal, unlike an appeal that falls under the *Mock* rule, does not involve a "retroactive[] attempt to undo consent properly given" or a complaint of errors waived through entry of the consent decree, *id.* at 526 n.5, and thus it does not implicate the same waiver-of-error concerns.  Applying this ruling to the instant case, we conclude that the terms of the class action consent decree—containing not even a hint of the intent to waive appellate rights, much less the requisite clear and unequivocal expression of such intent—do not bar appellate review of the district court's resolution of individual claimants' damage claims pursuant to the mechanism established in the consent decree.

This conclusion does not end our jurisdictional inquiry.  This court typically only has jurisdiction over "final decisions" of the district court, which generally

means the district court's decision "must reflect 'the termination of all matters as to all parties and causes of action.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *D&H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443, 1444 (10th Cir. 1984) (en banc)). Litigation is still ongoing in the underlying class action, and thus the district court's decision as to Mr. Gordon's claim did not finally end all matters as to all parties. However, as even Defendants concede, the circumstances of this case warrant application of the collateral order doctrine. "To establish jurisdiction under the collateral order doctrine, [a party] must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1178 (10th Cir. 2005). This appeal squarely fits within these criteria, as (1) the district court's order conclusively determined the question of Mr. Gordon's entitlement to monetary damages, (2) this question is important as it relates to Mr. Gordon and is completely separate from the merits of the overarching class action, and (3) the court's order would be effectively unreviewable if Mr. Gordon had to wait until the entry of final judgment on the entire class action—ongoing for the past nineteen years and with no clear end date in sight—to appeal from the resolution of his discrete claim for damages. We thus conclude we have jurisdiction over this appeal under the collateral-order doctrine.

In their jurisdictional memorandum brief, Defendants also contend we lack jurisdiction over this appeal on the basis of untimeliness. Defendants acknowledge that Mr. Gordon placed his notice of appeal in the prison's legal mail system one day prior to the deadline for filing a timely notice of appeal. However, they argue we should not consider Mr. Gordon's notice of appeal to be timely because it did not include a declaration of the date of deposit and an attestation that postage was pre-paid as required by *Price v. Philpot*, 420 F.3d 1158, 1165-67 (10th Cir. 2005), for compliance with the provisions of the prisoner mailbox rule.

Defendants completely misunderstand our decision in *Price*. In that case we stated:

> [A]n inmate must establish timely filing under the mailbox rule by *either* (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available, *or* (2) *if a legal system is not available*, then by timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid.

*Id.* at 1166 (emphasis added). Because Mr. Gordon established timely filing through his use of the prison's legal mail system, he was not required to comply with the requirements of the second prong. We therefore reject this jurisdictional challenge to the appeal.

As for the merits of Mr. Gordon's claim for damages, none of his filings to this court convince us the special master erred in finding he did not suffer from a

covered disability as defined by the settlement agreement. We therefore affirm the dismissal of his claims for substantially the same reasons given by the special master and the district court.

## CONCLUSION

For the foregoing reasons, we **DENY** Defendants' motion to dismiss the appeal for lack of jurisdiction and **AFFIRM** the district court's dismissal of Mr. Gordon's claims. We previously granted Mr. Gordon's motion for leave to proceed *in forma pauperis* on appeal, and we again remind him of his obligation to continue making partial fee payments until the filing fee has been paid in full. We **DENY** Mr. Gordon's pending pro se motion regarding the issuance of subpoenas.

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | May 10, 2011 | Douglas E. Cressler<br>Chief Deputy Clerk |

Mr. Eric V. Hall
Rothgerber Johnson & Lyons LLP
90 South Cascade Avenue
Suite 1100
Colorado Springs, CO 80903-0000

**RE:   08-1399, Montez v. Owens, et al**
       Dist/Ag docket: 1:92-CV-00870-JLK-OES

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

REMOVE THE SECTION BELOW IF APPELLANT IS PRO SE.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 18 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

Case No. 1:92-cv-00870-CMA-MEH   Document 5059   filed 05/10/11   USDC Colorado   pg 17 of 17
Appellate Case: 08-1399   Document: 01018637331   Date Filed: 05/10/2011   Page: 2

2

cc:	Chris Alber
	Patricia Bellac
	Paula Dee Greisen
	Berina Ibrisagic
	Lara Elizabeth Marks
	James X. Quinn
	Edward T. Ramey
	Jennifer Wardner Riddle


EAS/jm