UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN

**JESSE MONTEZ, et al.,**

**Plaintiffs,**

**v.**

**BILL OWENS,  et al.,**

**Defendants.**

_____

**REPORTER'S TRANSCRIPT**
**(Compliance Hearing)**
_____

      Proceedings before the HONORABLE JOHN L. KANE, Senior Judge, United States District Court, for the District of Colorado, commencing at 9:10 a.m. on the 25th day of March, 2007, Alfred A. Arraj United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
PAULA D. GREISEN and JENNIFER W. RIDDLE, King & Greisen, LLP, 1670 York St., Denver, CO 80206
EDWARD T. RAMEY and LARA E. MARKS, Isaacson, Rosenbaum, P.C., 633 17th St., Suite 2200, Denver, CO 80202

**FOR THE DEFENDANT:**
ELIZABETH H. MCCANN, JESS A. DANCE, and JAMES X. QUINN, Colorado Attorney General's Office, 1525 Sherman St., 5th Floor, Denver, CO 80203

| | |
|---|---|
| 1 | **MARCH 25, 2008** |
| 2 | (Proceedings commence at 9:10 a.m.) |
| 3 | THE COURT:  Ready to proceed? |
| 4 | MS. MCCANN:  Yes, Your Honor.  On behalf of the |
| 5 | Department of Corrections, we are ready to proceed. |
| 6 | MS. GREISEN:  Paula Greisen appearing on behalf of |
| 7 | the class plaintiffs.  And we are also ready, Judge. |
| 8 | I don't know who you want to good first, but I am |
| 9 | happy to go first at this point to give the Court an |
| 10 | update. |
| 11 | THE COURT:  Go ahead.  We want to make sure you |
| 12 | have everything you have to say before you have to leave. |
| 13 | MS. GREISEN:  Well, that's a concern by quite a few |
| 14 | people. |
| 15 | MR. RAMEY:  That is why the three of us are here, |
| 16 | Your Honor, just in case. |
| 17 | MS. GREISEN:  Just to give the Court an update, as |
| 18 | the Court is aware, we had numerous weeks of hearings |
| 19 | scheduled for the compliance hearing in this case.  We -- |
| 20 | the class counsel has been around to almost every facility |
| 21 | to visit our clients, and we have conducted extensive |
| 22 | discovery, probably something like 4,000 files from the |
| 23 | Office of the Inmate, ADA Inmate Coordinator, as well as |
| 24 | hundreds and hundreds of binders of discovery in our |
| 25 | office that we reviewed, as well, about two weeks ago, we |

1    asking for the few, and I think, reasonable sanctions that

2    we are.

3            THE COURT:  Okay.  Thank you.  There are some

4    things that are troubling to me, and I'm going to talk

5    about them in rather general terms, and then some things

6    that are specific, which I will deal with.

7            One of the most troublesome thing, to me, at this

8    point, is that there is some kind of notion that

9    decisional processes are not -- not subject to this

10   Court's regulation.  That is, above all the things I am

11   most concerned about.  There is only one of two things

12   that an institution or the people there can do when they

13   have a recommendation or an order from the magistrate --

14   or, excuse me, from the special master.

15           They can file an objection and I will hear it, or

16   they can comply.  They cannot overrule, under any

17   circumstance, what a special master has said.  They are

18   either going to comply with it or they are going to face

19   contempt.

20           Now, since the individuals are not parties to the

21   action, the only way that contempt can be enforced is very

22   severe financial penalties.  And if somebody, an employee

23   decides that they don't think that the special master's

24   recommendation was valid, and they just want to ignore it,

25   they are going to have to justify to Mr. Zavaras, and

1   probably to the joint budget committee of the state

2   legislature, why they just cost the State of Colorado 10-

3   or $20,000 for failure to perform.

4          But it is not going to be a $5 sanction, it is

5   going to be severe.  That is the only way we can maintain

6   any kind of order is this way.  And if a special master

7   says something that a medical person thinks is medically

8   unsound, they don't have the choice to contradict it.

9   They have the choice to have the state file an objection

10  and have it heard on the merits.  They do not have the

11  authority, under any circumstance, to ignore that kind of

12  ruling.  And I want that to be very, very clear.

13         I'm not, by any means, a physician.  But I can

14  listen to physicians testify, and I can make findings of

15  fact on that basis.  And that is something that the legal

16  system absolutely requires.  If Ms. Holst says that

17  something is covered, it is covered.  They can take up the

18  disputes all they want.  But if she says it is covered, it

19  is covered, period.  No overruling of her except by her

20  superior, but no other department can do that.

21         I'm going to be perhaps imperious, I hope not, but

22  I just want you to know that that is what is going to

23  happen.  In a way, there is a -- it has been said here

24  that there is a lack of priority to this remedial plan,

25  and there can't be.  I think that the officials and the

1    defendants have visited every institution, and they put

2    this up on the front burner, and that is essential, and

3    I'm very glad that that's the case.  It has to, in a way,

4    filter down and around to other people.  But agency

5    department heads have to comply.

6         The next thing is the same thing.  I mean -- this

7    is with particular reference, I have already talked about

8    it, and I won't go further; the ignoring of disability

9    rulings by the special master cannot be gained.  That is

10   just prohibited.

11        As to diabetics, the decision as to whether

12   somebody with diabetes is disabled or not is not a medical

13   determination.  Ms. Holst determines, and that is because

14   it does come in most instances where she is going to say

15   that it comes within the Americans with Disabilities Act.

16   If there is impairment, there is a failure to provide

17   medication to keep the impairment from happening, that is

18   not purely a medical problem.

19        Now, the standard of what is a medical necessity is

20   not determined by any sort of national standards.  It is

21   determined by the law under the Americans with

22   Disabilities Act.  And the final analysis is the

23   determination of the special master, subject to review.

24        The next thing is, the plaintiffs are correct, with

25   regard to the PHP, the provider does not have a veto power

```
 1    We'll be in recess.
 2             (Proceedings conclude at 3:11 p.m.)
 3
 4             R E P O R T E R ' S   C E R T I F I C A T E
 5
 6             I, Darlene M. Martinez, Official Certified
 7    shorthand Reporter for the United States District Court,
 8    District of Colorado, do hereby certify that the foregoing
 9    is a true and accurate transcript of the proceedings had
10    as taken stenographically by me at the time and place
11    aforementioned.
12
13             Dated this 21st day of April, 2008.
14
15             _____
16             s/Darlene M. Martinez
17             RMR, CRR
18
19
20
21
22
23
24
25
```