IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-509
Category III
Claimant: Lloyd H. Laxson, #49969
Address of Claimant: Albany Apartments, 228 N. Tejon, #322, Colorado Springs, CO 80903

---

## FINAL ORDER OF SPECIAL MASTER

---

      THIS MATTER came before the Special Master for hearing on June 6, 2011. The hearing was held at the office of Legal Resolution Center, 2 North Cascade, Colorado Springs, Colorado. Present were the following: Lloyd H. Laxson (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

      Claimant testified in support of his claim. Claimant also called Dr. Thomas Fisher, M.D. as a witness. The Special Master also accepted Claimant's offers of proof of anticipated testimony from Ms. Gold and Ms. Farrell, both employees at the Buena Vista Correctional Facility (BVCF). Defendants presented Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through UU, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

### I.

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

    limits his or her ability to perform a major life activity.
    C. PERMANENT DISABILITY/IMPAIRMENT
    A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

  On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

    2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
      1. Is the claimant a disabled individual who is a member of the class?
      2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
      3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
      4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

  In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

  Claimant initially came into DOC custody on April 1,1983. He was placed at BVCF in Buena Vista, Colorado. He discharged his sentence on April 17, 1983.

  Claimant returned to DOC custody on July 29, 1997. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). He then was transferred to the Colorado Territorial Correctional Facility (CTCF) on August 8, 1997. Claimant was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on August 23, 1999. Later in 1999, Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado.

  Claimant was granted parole on January 8, 2001. Parole failed, and Claimant returned to

DOC custody. He was placed in several DOC facilities but returned to CTCF before his discharge on January 10, 2004.

Claimant returned to DOC on July 19, 2005. He was placed at DRDC and then transferred to CTCF. On May 15, 2007, Claimant was placed at the Limon Correctional Facility (LCF) in Limon, Colorado. He was transferred to BVCF on April 3, 2008. He remained at BVCF until January 26, 2011 when he was placed at AVCF. Claimant was released on parole on May 26, 2011.

Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. Claimant checked only the box for mobility impairment. He indicated that he became disabled on May 8, 1989 as the result of an ATV accident at the United States Air Force Academy. Concerning his disability, Claimant stated, in part, as follows:

> I have degenerative disc disease throughout my whole body. L4 L5 S1 S2 thats low back L spine upper neck C spine also have degenerative disc disease. I also have facet joint degenerative disease. I can't walk sometimes at all. Sometimes I can't move my neck at all. They will not give me nothing. I need lots of things. Before coming to Buena Vista I had a cane. I had egg crate mattress 2 special pillows. I had a TENS unit for my back. I also had RSD in my hands and feet. Also got right index finger is gone.....

At the hearing, Claimant testified that all of his problems arose when he was transferred to BVCF in April, 2008. Prior to the transfer in April, 2008, Claimant indicated that he had a cane, egg crate mattress and wedge pillow. All of those were taken from him by BVCF staff. He testified that he was provided a cane once he arrived at AVCF in January, 2011.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as

to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

For reasons that will be spelled out, the Special Master does not need to reach this issue. Claimant has had a myriad of medical problems over the last twenty years, including the injuries from his ATV accident. For purposes of this order, it will be accepted that Claimant was mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant also has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

Claimant was asked twice by the Special Master if he had been the victim of discrimination prohibited by the Americans with Disabilities Act during his second sentence. This sentence ran from July 29, 1997 to January 10, 2004. He response was that no such discrimination took place during that period of incarceration. He stated that his problems arose when he arrived at BVCF in April, 2008.

As Judge Kane has ruled, all claimants must prove that they were the victims of ADA prohibited discrimination on or before August 27, 2003. Claimant clearly stated that no such discrimination took place. Claimant cannot proceed with his claim, as the Special Master has no jurisdiction over what occurred in 2008 at BVCF. Claimant retains the right to pursue his own separate lawsuit under the ADA. The Special Master is not making any finding that Claimant was or was not disabled while in DOC custody. That determination will need to be reached in a separate action.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Lloyd H. Laxson is denied, as he was not the victim of discrimination prohibited by the ADA on or before August 27, 2003; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 19, 2011.**

SIGNED this 24th day of June, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master