IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-970-JLK

JESSE MONDTEX, et, al.,

                    Plantiff,

-vs.-

JOHN HICKENLOOPER, et al.,

                    Defendants,

---

Claim Number: 03-491
Category III
Claimant: Wayne Brunsilius, #65458
Address of Claimant: P.O. Box 150923, Lakewood, Colorado 80215-0923

---

OBJECTIONS TO ORDER OF APRIL 22, 2011
PURSUANT TO FEDERAL RULES of Civil Procedure 53(g) (2)

---

THIS MATTER comes from Order of April 22, 2011, by final Order of Special Master Richard M. Borchers at the Legal Resolution Center.

The Final Order of Special Master refused and failed to consider all of Claimant's Exhibits submitted pursuant Order of Special Master on January 19, 2011, for consideration and review which provided proof and factual basis of Discrimination. The Special Master granted until March 7, 2011 in which to submit additional documents. See Exhibit A enclosed.

1). Clamant filed approximately 130 pages of Exhibits with analysis on March 3, 2011. Claimant also called the office of Legal Resolution Center and confirmed that their office had received the filing with Exhibits. See attached copy of Exhibits and grounds for contempt of court, fraud, and discrimination by the State of Colorado. See Exhibit B.

2). The Special Masters by Order of January 19, 2011, ruled that they would keep the case open and allow Claimant to review DOC Medical records and submit additional documents for consideration in support of claim. Claimant went to the office of the Colorado Attorney General and picked up copies of medical files. Subject to Special Masters Order of February 2, 2011, and pursuant to established process by Article XXXII of the Remedial Plan, Claimants were entitled to receive copies of medical records at NO CHARGE. In the enclosed packet of Exhibit B, the State of Colorado charged this claimant $148.80 for records, which was in violation of February 2, 2011 Order of Special Master, and contempt of federal court Order. See Exhibit C of February 2, 2011 Order.

1

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 18 2011

GREGORY C. LANGHAM
CLERK

2). The February 2, 2011 Order of Special Master was in response to Claimant's writ, "Demand for Review of ALL Records held by the State of Colorado DOC. This court will notice that Special Masters stated that he was unclear what, if any, records may be claimed as missing that would have any impact on this claim".

Claimant presents as Exhibit D, a copy of January 29, 2011 writ for Demand For Review Of All Records held by DOC and attached exhibits presented with writ. Claimant only presented partially what records were missing. See Page 2, Item 6, 7, and 8 of testing completed by the State of Colorado DOC. In Item 6, the state completed urinalysis on July 28, 1993, collection Number 01100063537m Lab. Number 478542 of the Colorado Department of Health, Division of Laboratory's confirming heavy amount of mercury heavy metals was missing from medical records.

The second test missing was stated in Item 7, as Radioisotope exposure at Rocky Flats Nuclear Plant, and confirmed by doctor James McCoy's statement. The two examples of missing records provide the probable cause that the Colorado DOC and State concealed records. See attached in Exhibit D.

In the hearing of January 18, 2011, the attorney Deann Conroy, who represented the State Attorney General's office, presented a stack of DOC medical records on the table that exceeded the 4.5 inches of records, that clamant received from the Colorado Attorney General's Office. See copies of Affidavit of investigator William Anderson also present at this meeting of January 18, 2011, in Exhibit B. The State of Colorado willfully and purposefully concealed records.

3). By the Order of Special Master Order of January 19, 2011 granting claimant until March 7, 2011 to review and submit additional records provides this court with sufficient factual proof that this clamant was granted time to review records.

4). Preceding the January 18, 2011 hearing, the Special Masters never advised this Claimant that he could review or have copies of all medical records at no cost. It was in the Order of Special Masters of February 2, 2011 that this Claimant learned that all the medical records were at no cost.

5). The Special Master in Final Order confirmed extra time was granted to submit additional documents. See Page 1, attached copy of Final Order of Special Master, but no mention of March 3, 2011, 130 records submitted to the Special Masters office.

6). In review of Claimant previous filing and alleged actions by the State of Colorado DOC to sanitize the medical records, and commit fraud, was confirmed in the 130 records submitted proceeding March 7, 2011. The DOC blacked out medical records, and the notes of a doctor stated that "Wrong medicine given," can be clearly read.

7). The Special Master ignored the 130 Exhibits of medical records submitted for review of Final Order. The failure and refusal to state that they considered and reviewed these records violated the rights of due process. The 130 pages, copied one side of medical records submitted shows fraud, misrepresentation, and concealment of records, by sanitizing medical records to remove discrimination by the State of Colorado DOC because this claimant was mercury poisoned.

Where Special Master failed to inform this claimant preceding the January 18, 2011 hearing that the state medical records were available for review and copies were at no cost denied claimant's right to prepare for presentment in hearing of discrimination. Claimant had no way of challenging the State's contempt of court Order for charging for medical records.

Where the law firm of King and Greisen, LLP, 1670 York Street, Denver, Colorado 80206 was served each time by the Special Masters but never was part of the Hearing on January 18, 2011 or aided this claimant, or filed writ with Special Masters, or protected the rights of Claimant, or conducted investigation when the state charged this claimant in violation of federal court order. I am sure that this federal court will pay the legal firm of King and Greisen a fee for being named, as if they completed or provided some legal service which would be fraudulent.

Where the Special Master failed to inform claimant that the medical records held by the state were at no cost, and the State charged claimant after the hearing denied this claimant the right to chal-

lenge the states actions to charge in violation of the Masters Order, which was contempt of federal court Order by stated ruling. The deceptive action of the State of Colorado provides sufficient proof that they acted purposefully, and intentional to deceive and conceal the truth, and provides for this court the consideration to reverse the Final Order of Special Master.

Signed this 14th day of July, 2011

Wayne Brunsilius, Reg. 65458
P.O. Box 150923
Lakewood, Colorado 80215-0923

CERTIFICATION OF MAILING

I hereby certify that I have mailed a cop of the foregoing Objection to Final Order of Special Master this _14ᵗʰ_ day of July, 2011 to the following.

Mr. James Quinn
Office of the Attorney General
Fifth Floor
1525 Sherman
Denver, Colorado 80203

Wayne Grunsilius



Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

    -vs.-

BILL RITTER, et al.,

        Defendants.

---

Claim Number: 03-491
Category III
Claimant: Wayne Brunsilius, #65458
Address of Claimant: P.O. Box 150923, Lakewood, CO 80215-0923

---

## ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on his own motion. A hearing was held on January 18, 2011 on the claim of Wayne C. Brunsilius. During the hearing, Claimant made a comment that he had not been able to review his medical records. The Special Master offered to keep the case open in order for Claimant to review his DOC medical records and submit any additional documents he wishes considered in support of his claim. Claimant agreed with that procedure.

IT IS HEREBY ORDERED that Claimant shall be accorded the right to review his DOC medical records, but Claimant must coordinate such review with Defendants' counsel; and

IT IS FURTHER ORDERED that Claimant is granted up to and including **March 7, 2011** in which to submit any additional documents he wishes to have considered; and

IT IS FURTHER ORDERED that Defendants will be granted up to and including **March 21, 2011** to submit any additional or response documents in support of their position.

SIGNED this _19th_ day of January, 2011.

2/2/11

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

    -vs.-

BILL RITTER, et al.,

        Defendants.

---

Claim Number: 03-491
Category III
Claimant: Wayne Brunsilius, #65458
Address of Claimant: P.O. Box 150923, Lakewood, CO 80215-0923

---

## ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on Claimant's demand for review of all records held by State of Colorado. Claimant acknowledges that he was granted time to review his medical records by the Attorney General's office, but believes that he has not received all of the documents for review.

Under the claim process established by Article XXXII of the Remedial Plan, claimants were entitled to review their medical records. By stipulation between Defendants and class counsel, claimants were entitled to receive copies of medical records at no charge. Claimant has apparently received 993 sheets. Claimant did not state whether the copies were double sided. Claimant has received all or a significant portion of his medical records.

Claimant has premised his motion on a belief that there are additional records. This is based upon a visual observation made at the hearing. That is not sufficient to issue any further order. It is also unclear what, if any, records may be claimed as missing that would have any impact on this claim.

Further, the Special Master cannot compel Paula Greisen to do anything. Claimant will have to discuss any request with Ms. Greisen personally.

Claimant will need to make contact with counsel for Defendants. Further review of his records may take place at an appropriate office designated by counsel for Defendants. The Special

Master will not order the medical records transferred to Claimant.

IT IS HEREBY ORDERED that Claimant's motion is denied, but Claimant will be granted an additional review of his medical records on or before **February 28, 2011.**

SIGNED this 2nd day of February, 2011.

BY THE COURT:

Richard M. Borchers
Special Master

Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

        Plaintiffs.

-vs-

Bill RITTER, et al.

        Defendants,

---

Claim Number X-450
Category: III
Claimant: Wayne Brunsilius, # 65458
Address of Claimant: P.O. Box 150923, Lakewood, Colorado 80215-092

---

## DEMAND FOR REVIEW OF ALL RECORDS HELD BY THE STATE OF COLORADO

---

     This matter comes before the Special Master on Claimant's own motion. A hearing was held on January 18, 2011 on the claim of Wayne C. Brunsilius. The Special Masters offered to keep the case open in order for Claimant to review his DOC medical records and submit any additional documents he wishes considered in support of his claim.

     During the States cross- examination of Dr. Rebecca Painter, the question was asked what records Dr. Painter had reviewed. Dr. Painter held up a stack of medical and related papers (1) one inch to 1.5 inches in thickness. The state pointed to the records sitting before the Attorney General amounting to more than (1) foot in height.

     1). On January 20, 2011, Claimant called the office of the Colorado Attorney General's office and requested to review records and for a copy of records. On January 21, 2011, Clamant went to the Attorney General's office on the 7th Flr. and was given a sealed box of the records. See attached Receipt.

     2). Claimant took the records to an agent to open and certify. The box of records was 4.75 inches in height and 993 sheets were counted and recorded.

     3). Claimant ask agent how many sheet would have been in (1) foot of records? Agent stated that there are approximately 2500 sheets in 10 inches in height, and (1) one foot would be approximately 3000 sheets.

     4). Claimant has been denied review of the stack of records that sat before the Attorney General and has no way of controlling what would be copied if Clamant demanded review and copies of the records. Because of the security at the Colorado Attorney General's Office, the Claimant has limited space, time and opportunity to review the 4000 sheet stack of records presented in hearing on January 18, 2011.

1

5). The Court order of January 19, 2011 explicitly limits the review to record to medical which the Colorado Attorney General copied and presented in the 993 sheets. Claimant questions that records submitted were not the total records for review that was demonstrated and stated by the Attorney General in hearing of January 18, 2011. Claimant request this court to order and demand that the Colorado Attorney General's office, present the total records as stipulated and presented in hearing of January 18, 2011 for review as stated above.

6). Claimant Demands that the records for urinalysis testing of July 28, 1993, Collection Number 01100063537, Lab. Number 478542 of the Colorado Department of Health, Division of Laboratory, 4210 E. 11th Ave. Denver, Colorado 80220, held by Mike Rulo, Inspector General be make available for review and copy for Claimant.

7).Claimant demands medical records of evaluation for Radioisotope exposure at Rocky Flats as stated on April 13, 1996 by Dr. James McCoy, from the Colorado Attorney General's Office. See attached.

8). Claimant also demands that Attorney Paula Greisen, of King & Greisen, LLP, 1670 York Street, Denver, Colorado 80206, attorney for Class Action, state and present that she did not take application from Claimant in 1996 in Fremont Correctional Facility or in 2002 in Sterling Correctional Facility and state that she would personally follow through for and in Claimant behalf.

Because of the large number of 4000 sheets of records to review it is not feasible to review records subject to the security, time and space of the Colorado Attorney General Office. Claimant request that the Court order the Colorado Attorney General Office to lend all the records for review, or to have copied and that Claimant will return stated records the same day if presented before noon, or to provide this Claimant with a complete copy for review as shown and illustrated during the hearing of January 18, 2011.

Respectfully submitted,

Wayne C. Brunsilius, Reg. # 65458
P.O. Box 150923
Lakewood, Colorado 80215-0923

Dated 29 January 2011

CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Demand for All Records this 29 day of January, 2011 to the following:

Special Masters for the United States District
Court for the District of Colorado
Legal Resolution Center
7909 Zenobia Street
Westminster, Colorado 80030-4444

King & Greisen, LLP
1670 York Street
Denver, Colorado 80206

Mr. James Quinn
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, Colorado 80203

Wayne C. Brunsilius, Pro Se attorney of Record

WAYNE BRUNSILIUS                    #65458                        FCF

**DERMATOLOGY CLINIC (4-13-96):** The patient has an eczematoid plaque without elevated borders and with some scaling, but with much secondary excoriation on the left pretibial leg. He states that he has had this for five years, and it has come and gone. He tells me that it is a fungus. He saw an environmental medicine doctor previously who said he needed it biopsied. He is being evaluated for radioisotope exposure at Rocky Flats.

**IMPRESSION:** Clinical impression is pretibial eczema.

**RECOMMENDATION:** He is started on Temovate ointment bid. I told him it probably would need im and/or po steroids to clear; however, he said he did not want steroids as a doctor had once told him it would damage his kidneys. He is to return next clinic.

James McCoy, M.D.
Dermatology Consultant

Dict:   4-13-96
Recd:   4-17-96
Typd:   4-17-96/msb



RECEIVED
APR 09 1996

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

                    Plaintiffs,

        -vs.-

JOHN HICKENLOOPER, et al.,

                    Defendants.

_____

Claim Number: 03-491
Category III
Claimant: Wayne Brunsilius, #65458
Address of Claimant: P.O. Box 150923, Lakewood, CO 80215-0923

_____

**FINAL ORDER OF SPECIAL MASTER**

_____

        THIS MATTER came before the Special Master for hearing on January 18, 2011. The
hearing was held at the Denver office of Legal Resolution Center. Present were the following:
Wayne Brunsilius(Claimant) and Deann Conroy, attorney for Defendants. Also present were Dr.
Rebecca Painter, M.D. and Wes McKinley.

        Claimant testified in support of his claim. Claimant also called as witnesses Dr. Painter and
Mr. McKinley. Claimant also offered into evidence Exhibits 1 through 14, and all were admitted.
Defendants presented Dr. Thomas Fisher, M.D. as an expert witness. Defendants offered into
evidence Exhibits A through F, and all were admitted.

        At the conclusion of the hearing, the Special Master allowed both sides time in which to
submit addition documents. Claimant requested the opportunity to review his medical records, and
he was given that opportunity. Claimant submitted additional documents for consideration, but
Defendants did not. Further argument will be waived.

**I.**

        This litigation was commenced in 1992 against then-Governor Roy Romer and various
officials of the Colorado Department of Corrections (DOC). The case was brought under the
Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During
the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
    I. General inconvenience or nominal damages;
    II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
    III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
    IV. Damages due to severe physical injuries; and
    V. Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

III. DEFINITIONS
    A. COVERED DISABILITIES
    The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

The evidence presented by both sides establishes that Claimant was in the construction business prior to being sentenced to DOC custody. In his construction business, Claimant did work at the Rocky Flats nuclear weapons facility in Jefferson County. It was during this work that Claimant believes that he was exposed to radiation and was poisoned by mercury. Claimant has been attempting for years to establish the causal link between his health problems and his work at Rocky Flats.

The evidence also established that Claimant had thoracic and lumbar vertebrae scoliosis from

3

his youth. This long pre-dated Claimant's entry into DOC. Coupled in with the scoliosis was osteoporosis and a myriad of other health issues. Those medical issues continued after Claimant entered into DOC custody.

Claimant came into DOC custody in 1991. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant remained at FCF until 1997 when he was transferred to a private prison in Appleton, Minnesota.

Claimant was moved to the Kit Carson Correctional Facility (KCCF) in Burlington, Colorado in December, 1998. Claimant was transferred to the Sterling Correctional Facility (SCF) in Sterling, Colorado in September,1999. Claimant remained at SCF until he was transferred back to KCCF in 2007. Claimant discharged his sentence in 2010 and is now living in the Denver metro area. As Claimant has discharged his sentence, he is no longer under any DOC control.

Claimant sent a letter to the Office of the Special Masters which was received on April 27, 2010. Claimant titled his letter as a "claim for damages." The letter was treated as a claim filed pursuant to Article XXXII of the Remedial Plan. A formal claim form was mailed to Claimant, and that was returned to the Special Master on May 13, 2010.

On the claim form, Claimant checked the boxes for mobility impairment and hearing impairment. Claimant alleged that he became disabled in 1983. In his claim form, Claimant alleged, in part, as follows:

> 1) On May 1983 while working at the rocky flats nuclear plant I was severely Mercury and heavy metal poisoned and radiation poisoned. I began to suffer many health problems, and hearing loss was among the medical conditions suffered, resulting from the severe mercury poisoning.
> 2) The mercury poisoning was so severe that I lost all nerve control in both legs and the mercury created severe calcium loss, called hypocalcemia, which condition caused my spine to collapse, and the loss of all nerves in both legs, in conjunction with the loss of calcium created the mobility problem.

In his claim form, Claimant has alleged that he "filed for and with the ADA in the 1990's and filed application with Paula Greisen before 2004 and until this date." He has alleged further that he has had no response from class counsel. He also alleged that "I've lost 6 inches in height while in prison and broke my right leg resulting in discrimination in medical to provide proper medical treatment."

In response to a question concerning discrimination, Claimant stated as follows:

> By the fact that I was not tested on a timely basis, the clinical services has denied petitioner hearing aid, or testing. While in Sterling Correctional, Medical sent me physical therapist who ordered a brace for damages to spine, and to assist in preventing damages, which was never provide (sic) this petitioner. I was given a cane

4

to assist walking in 2010. The department of corrections never continued heavy metal detox as petitioner was in before prison.

In addition to his claim form, Claimant has submitted many pages of medical records, plus additional pleadings in support of his claim.

At the hearing, Claimant presented Wes McKinley as a witness who was familiar with what transpired at the Rocky Flats facility. Mr. McKinley was the foreperson of the federal grand jury that investigated what happened at the nuclear weapons plant.

Dr. Painter testified that she has provided treatment for Claimant since his discharge from DOC custody. In her professional opinion, Claimant was exposed to mercury, heavy metals and radiation while working at the Rocky Flats facility. She believes that most of Claimant's medical problems arose as the result of the poisoning. In her professional opinion, DOC medical staff could and should have conducted further testing.

In his testimony, Claimant reiterated his belief concerning his poisoning at Rocky Flats. Virtually all of Claimant's claims of discrimination are related to the quality of medical care he received while in DOC custody.

DOC called Dr. Fisher as an expert witness. Dr. Fisher testified concerning the medical care provided over the years to Claimant. Various lab tests were done and did not indicate any heavy metal poisoning. Hearing loss was subjective, as no audiogram was completed before Claimant's discharge from DOC custody.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as

compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Mobility Impairment:** Claimant has become fixated in his belief that he was poisoned while working at Rocky Flats. It is immaterial how Claimant came to be mobility impaired.

Claimant has had scoliosis for years. He also has had problems with his legs and nerves. The testimony of Claimant is credible as to his pain and loss of feeling in his legs. In addition, the Special Master has observed Claimant and it is evident that he has physical problems. The medical records support Claimant as to his physical problems. Claimant was mobility impaired on or before August 23, 2003. Claimant is a member of the class as mobility impaired.

**Hearing Impaired:** There is insufficient evidence from any source that would support a finding that Claimant was hearing impaired, as defined by the ADA, on or before August 27, 2003. Claimant is not a member of the class as hearing impaired.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has detailed over the last few months in his pleadings concerns about the medical care he received in DOC custody. He believes that the type of testing was inappropriate to determine that the mercury and radiation poisoning were the cause of all of his resulting medical conditions.

The evidence presented by both sides reflects that Claimant did receive medical care during the time he was in DOC custody. He was sent to various specialists who examined him but could not categorically say that he had been poisoned.

The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) is binding upon the Special Master. The ADA and Rehabilitation Act cannot be used to contest the *quality* of medical care received by an inmate in a prison or jail. The basis for attacking the quality of care requires use of the Eighth Amendment or state statutes. Claimant is precluded from using the claim process to attack the medical care he received while in DOC custody. The evidence is that Claimant received some care. The sufficiency of that care cannot be litigated in this case.

Claimant may file his own separate lawsuit under the Eighth Amendment against DOC concerning the sufficiency and quality of medical care he received. He has not proven that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Wayne Brunsilius is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before July 18, 2011.**

SIGNED this 22nd day of April, 2011.

BY THE COURT,

Richard M. Borchers
Special Master

7

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 22nd day of April, 2011 to the following:

Mr. Wayne Brunsilius
P.O. Box 150923
Lakewood, CO 80215-0923

King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mr. James Quinn
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, CO 80203

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

        Plaintiffs.

-vs-

Bill RITTER, et al.

        Defendants,

---

Claim Number X-450
Category: lll
Claimant: Wayne Brunsilius, # 65458
Address of Claimant: P.O. Box 150923, Lakewood, Colorado 80215-092

---

### Presentment of Exhibit

The Special Master ruled subject to the hearing held on January 18, 2011 that the case could remain open for the Claimant to review the State of Colorado medical records and submit copies to the court to support his claim on or before March 7, 2011. The court ruled on January 19, 2011 that the records presented before the eyes of the court and five witnesses on January 18, 2011 coordinate such review with Defendant's counsel.

    1). On January 21, 2011, claimant meet with Darlene Hill, paralegal for Deanne Conroy, of the Colorado Attorney General's office, 1525 Sherman St. 7th Floor, Denver, Colorado and was given a sealed box. The Colorado Attorney General's office charged claimant $148.80 dollars for copies. See attached receipt. Exhibit 15

    2). On January 21, 2011, claimant took the box of sealed records to an agent, who opened and certified the contents. Agent certified that records contained were in three divisions bound by rubber bands, marked respectfully as section 1,2, and 3. That the stack of medical records were 4.75 inches in height, and that records were copies only on one side, for a total of 993 pages. The duplicate copies were placed in a second box for shipment and sealed. See copy of Affidavit and Invoice from "Documents Solutions USA, Exhibit 16 and 17

    3). On January 29, 2011, claimant filed writ requesting all the records presented by Deanne Conroy of the Colorado Attorney General's Office, presented at the January 18, 2011 hearing. Claimant

1

alleges that he was denied review of all medical records held by the State of Colorado, which was presented before the eyes of this court on January 18, 2011. The recording of the court will confirm the cross examination by Deanne Conroy of Dr. Rebecca Painter, to compare what was before Ms. Conroy as compared with the 1.5 inches held by Dr. Painter. See attached Affidavit of Witness William Anderson that the stack of records presented by Deanne Conroy was 10 to 12 inches in height. Exhibit 18, (2pages)

4). Pursuant to Order of Special Master on February 2, 2011 the court held under the claim process established by article XXXII of the Remedial Plan, Claimants were entitled to review their medical records. By stipulation between Defendants and class counsel, claimants were entitled to receive copies of medical records at no charge. Claimant received 993 pages and the Colorado Attorney General's office charged claimant $148.80 dollars, which was in contempt of court. Claimant requests reimbursement for 993 copies for records from the Colorado Attorney General's Office that were copied only on one side as confirmed by Affidavit 15, 16 and 17.

5). Pursuant to Exhibit 14 presented to the court on January 18, 2011, see exhibit 19 confirming that attorney Paula Greisen requested medical file, all records on 3/12/96, and three medical files were presented to Paula Greisen. The request for medical records would suggest that an application for Montez had been completed and that attorney Greisen was representing the discrimination for hearing and mobility of this claimant.

6). Pursuant to Exhibit 14 and 19 on item 5, see letter of November 1, 2010 from Paula Greisen's office informing claimant that due to their obligation to Montez Class as a whole, "we are unable to represent individuals in the damage clam process. It would appear on the face of records presented that Paula Greisen's actions in securing medical records in March 12, 1996 were acting according to obligation to the Montez Class. The letter of November 1, 2010 could easily constitute and construe discrimination and raises the question before the court as to how many cases in the Montez Class action Paula Greisen has aided legally or represented as she did in March 12, 1996. Then return documents when claimant was in the middle of damages settlement, was an act of discrimination and violation of compliance of the class action as set forth by past actions of attorney Greisen. See exhibit 20 and 61 enclosed.

7). In review of the 993 pages of medical records the following analysis and evaluation are presented to the court.

A). Preceding incarceration claimant was diagnosed in 1986 and in treatment for mercury, cadmium, lead, manganese, arsenic, and heavy metal poisoning which included urinary infections, heart, chronic fatigue, as seen by exhibits 21, 22, 23 and 24.

SECTION I). The claimant was incarcerated on May 29, 1991 and sent to Fremont Correctional Facility from June of 1991 to April 15, 1997. During this period of time, the medical records will confirm extensive testing for Mercury and heavy metal poisoning and treatment for the same. Medical records will also confirm the treatment for chronic fungus infection as confirmed by the attached exhibits.

1). Exhibit 25, 6/10/91 medical history confirms mercury poisoning at DRDC,

2). Exhibit 26, 7/23/91, staffing notes by Dr. McGary –recognized treatment for heavy metals

3). Exhibit 27, 7/1/92, Dr. McGary convinced of worms, parasites and candida fungus infection in colon, vertigo, ENT hearing dysfunction.

4). Exhibit 28, 1/8/92, hearing dysfunction and pain in both ears.

2

5). Exhibit 29, 1/27/92, ear irrigation- both ears hearing otitis.

6). Exhibit 30, 12/4/92, discrimination grievance failure to comply with established practice of medicine, unfair treatment and denial of normal privileges to being mercury poisoned by medical program of Colorado DOC.

7). Exhibit 31, 11/29/94, staffing notes state candidiasis chronic

8). Exhibit 32, 1/13/95, staffing notes confirm chronic Tinea corpus for 4 years, provided antifungal drug nizoral, 12/15/94, candidiasis better continue for one month.

9). Exhibit 33, 2/10/95, Candidiasis, renew antifungal nizoral

10). Exhibit 34, 3/23/95, refer to Dr. McGary, chronic, Hypo-candidiasis, GI problems, gave pyridium for kidneys.

11). Exhibit 35, 5/22/95, and 5/16/92 Tinea Corpus, renew antifungal for 60 days

12). Exhibit 36, 6/13/95, and 5/30/95, staffing notes, chronic heavy metal poisoning, refer for heavy metal screening, doctor ask claimant if he knew what was wrong with him, stated heavy metal poisoning, conditions confirmed by Dr. AlaJalil

13). Exhibit 37, 7/25/95, Lab testing for manganese was high.

14). Exhibit 38, 8/8/95, Severe headaches, Dr. aware of complaints of HA will review culture

15). Exhibit 39, 8/15/95, TSH 6.3 high, thyroid function resulting from radiation, heavy metals, and fungus infection.

16). Exhibit 40, 10/5/95, medical clinic referral for damages from heavy metals from Rocky Flats Nuclear, evaluation shows blood in urine, suffering fungus infection from same, hearing and sight problems, and GI problems.

17). Exhibit 41, 3/12/96 Heavy metal screen, lead shows levels are low. Lab report

18). Exhibit 42, 6/6/96, Lab report, testing levels normal

19). Exhibits 43 and 44, 7/30/96, Dr. AlaJalil, continues to order testing for heavy metals resulting from health conditions of claimant.

20). Exhibit 45, 4/1/96, lab report shows TSH thyroid levels 6.49 high, See also 11/13/96 evaluation from southern color adoclinic,

21). Exhibit 46, 4/13/96, Dermatology Clinic notes that claimant is being evaluated for radioisotope exposure at Rocky Flats.

22). Exhibit 47 and 48, Exhibit 47 on 1/8/99 requested radioisotope testing from University Hospital, body count for evidence of environmental isotope exposure. Note medical release of 2/18/99 for stated isotope testing from University Hospital on 1/9/97 by Dr. McKinley. Doctor McKinley received these records, but a review of the 993 pages of medical records confirm that this testing was absence, removed, when it was noted and completed as recorded by two doctors.

23). Exhibit 49, 1/08/97, University Hospital medical report to Dr. Diane Aljalil, three pages, but no isotope testing was in file from the attorney general's office.

SECTION II). On or about April 15, 1997 claimant was transferred to Appleton, Minnesota, to the CCA Prairie Correctional Facility, See attached medical transfer report from Fremont Correctional Facility. Exhibit 1

1). Exhibit 2, 12/18/97, EMSA Correct. Care, Staffing notes confirm hearing, radiation poisoning, otitis bilat, fungus, osteoporosis,

2). Exhibit 3, 6 pages of medical logs, note that most are page 2, no page one, confirms pages are missing. Notice page 5, comment by doctor, wrong medicine, discrimination to provide established practice and unfair to treatment or denial of normal privileges to this claimant because he was mercury and radiation poisoned. Page 6, bleeding from ears, page 1, kidney pain, page 2, colon problems,

3). Exhibit 4, 6/14/98, two pictures, both blacked out, this is illegal in medical profession, easily constitute and construe discrimination and fraud, the purposeful act to deceive and mislead. Please notice Exhibit11, Section I, **from my medical records**, blacked out in the 993 pages from the Attorney gen-

3

eral's office. See Exhibit presented to the Court on January 18, 2011, enclosed. The pictures show that claimant's arm's was black, and security took the pictures and turned them over to the warden. Claimant was denied the established practice or privilege to medical by unfair to treatment or denial of normal privileges to this person because of being handicapped with mercury and radiation poisoning.

4). Exhibit 5. Enclosed 11 pages of medical cards all blacked out, which is illegal in medical profession, whose practice is to line out and initial the mistake. The blacked out medical care constitutes discrimination and the cover up of medical mistakes and discrimination to provide proper established medical practices by the medical program of the Colorado Department of Corrections by a person who is handicapped as stated in records.

**Section III.** On or around December 17, 1998 claimant was moved to the CCA, Kit Carson Correctional Facility at Burlington, Colorado. Claimant arrived at Burlington, Colorado on December 18, 1998. There was no medical transfer summary report as required by the State of Colorado.

1). Exhibit 1, 12/21/98, Clinic notes, esophageal candidiasis (fungus infection) due to radiation and pesticide poisoning, throat pain, osteoporosis due to mercury poisoning, recorded by Dr. James McKinley.

2). Exhibit 2, No date, Medical Alerts, Osteoporosis due to mercury poisoning, chronic Candidial infection.

3). Exhibit 3, 12/21/98, claimant should have bottom bunk for severe osteoporosis due to mercury poisoning.

4). Exhibit 4, 1/7/99, Emergency room, claimant was admitted to intensive care unit, removed from population.

5). Exhibit 5, 1/7/99, Kit Carson County Memorial Hospital, Sensitivity report requested by Dr. James McKinley, four pages, shows heavy growth, Dr. McKinley stated to claimant that if he did not respond to IV, they would have to fly claimant to Denver for oxygen therapy to save his life. Sepsis blood poisoning. Claimant stayed in ICU for some time due to discrimination inflicted on claimant by medical in Minnesota.

**Section IV.** On 9/9/99, claimant was moved to the Sterling Correctional Facility. See Colorado inter-correctional medical summary transfer report. Repost shows Candidiasis, (fungus infection), osteoporosis, heavy metal exposure with S/P chelation therapy, scoliosis. See Exhibit 1

1). Exhibit 2, 10/5/99, TSH thyroid 11.39, Parathyroid 92, extreme high, ambulatory health record.

2). Exhibit 3, LabCorp, 8/1/99 report, shows TSH 11.39, PTH 92, 2 pages.

3). Exhibit 4, 10/14/99, request for consultation Denver Health, hypothyroidism, high TSH, High PTH, due to radiation exposure, osteoporosis.

4). Exhibit 5, Out patient Denver Health, 12/8/98, subject to hypocalcemia from heavy metal poisoning, Rocky Flats 80's, conditions confirmed.

5). Exhibit 6, 10/14/99 right leg rash, conditions the same as suffered at Fremont when first incarcerated.

6). Exhibit 7, 12/14/99, hypoparathyroidism appears to be due to hypocalcemia stem from mercury poisoning.

7). Exhibit 8, 5/19/00, and 5/12/00, ear infection, some bleeding, discharge, signs of trauma

8). Exhibit 9, 1/18/01, clinical notes confirm hypocalcemia from mercury poisoning.

9). Exhibit 10, 6/18/2003, Jefferson County Health progress report, heavy metal poisoning, hypocalcemia, meningitis, ataxia due to heavy metal poisoning, provided extra blankets temperature 94.6

10). Exhibit 11, 9/30/03, medical summary transfer report, candidiasis, (fungus infection), hypothyroidism, heavy metal anti infective causing scoliosis, dermatitis.

11). Exhibit 12, 9/12/2003, recently treated for meningitis- recurrent, has had meningitis three times, diarrhea.

12). Exhibit 13, 7/19/03, adverse health conditions, can't swallow, stiff neck as had with meningitis.

13). Exhibit 14, 5/14/2000 centura rehabilitation, note conditions of radiation, heavy metal poisoning reality in osteoporosis, stated on sheet.

14). Exhibit 15, 10/18/04, Problem list, heavy metal poisoning, ataxia, radiation poisoning, hiypothyroidism,, hypocalcemia,( stated in Merck Manual as an insidious disease caused by mercury poisong), osteoporosis.

15). Exhibit 16, 7/20/04, Can't swallow, can't eat, side back throat swollen, meningitis

**Section V.** On or about 2007 claimant was moved back to the Kit Carson Correctional facility in Burlington Colorado. No medical summary transfer report was issued from Sterling Correctional Facility See exhibit 1.

1). Exhibit 2, 2/4/07, LabOne testing confirms high TSH again, three page.

2 ). Exhibit 3, 3/05/09, medical communication from Dr. Tiona states that the broken leg is not healing.

3). Exhibit 4, X-ray reports, four pages, 12/02/08, 12/26/08, 3/03/09, 4/29/09 confirms that broken leg will not heal due to adverse health conditions.

4). Exhibit 5, 5/12/2010, Active problem list, Dr. Tiona, Dysuria, flaturence eructation and gas pain, diarrhea, dizziness and giddiness, unspecified otalgia, closed fracture unspec part fibula, nonspecific abnormal finding in stool contents, scoliosis, idiopathic,

5). Exhibit 6, 5/25/2010, Stated health conditions confirmed as stated in exhibit 4.

6). Exhibit 7, 3/18/2010, Audiogram testing, see report both ears, stated on record that claimant had only one month which was a lie to stall and discriminate against this claimant to deny testing and claim for ADA. The CDOC has discriminated by stalled and denied proper medical for known conditions which created an unfair treatment or denial of normal privileges to this person. The fact that the broken leg failed to heal provides for this court the factual basis that major health problems were concealed by discrimination where the medical program, life the mental health program failed and refused and by denial of normal privileges resulted from discrimination by the state of Colorado to refuse to perform the proper testing for mercury and heavy metal poisoning, and the damages resulting from the radiation poisoning. Clinical notes from doctors knowledgeable in the field of medicine, who openly stated that this claimant was mercury poisoned, and radiation poisoned were ignored and the state discriminated against this claimant will be confirmed by the testing completed after discharge.

It should be noted that Dr. Tiona had placed claimant on antifungal, nizoral for three months preceding discharge for related fungus infection related to the radiation and heavy metal damages.

**Section VI.** Medical testing completed by Dr. Rebecca Painter

1). Exhibit 1, 1/7/2011, 24 hour urine toxic metals testing confirmed the high levels of lead, uranium, cadmium, and gadolinium. The mercury levels were low, and should be noted that the half-life of mercury is 25 years from acute exposure which date was 2008.

2). Exhibit 2, 1/7/2011, Hair elements shows cadmium, lead, uranium, titanium, aluminum, barium.

This claimant was incarcerated in 1991 with lead, manganese, cadmium, mercury, arsenic and uranium and discharged with lead, cadmium and uranium.

In Constitutional law, the effects of a statue or established practice which confers particular privilege on a class arbitrarily selected from a large number of persons, all of whom stand in the same relation to the privileges granted and between whom and those not favored distinction can be found. Unfair to treatment or denial of normal privileges to persons because of their race, age, sex, nationality

or religion. A failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored.

Federal statues prohibit discrimination in employment on basis of sex, age, race, nationality, religion, or being handicapped. See Title VII of 1964 Civil Rights act, Age Discrimination in Employment Act, Equal Pay Act, Age Discrimination in Employment Based on Pregnancy Act. Other federal acts, as supplements by court decisions, prohibit in voting rights, housing, extension of credit, public education, and access to public facilities.

See also Age Discrimination Act. Bias, Disparate treatment, Equal Protection clause; Equal protection of the law, invidious discrimination, Price discrimination; Protected class; redlining: Reverse discrimination. Redlining is a term used to refer to a pattern of discrimination in which financial institutions refuse to made mortgage loans, regardless of credit record of the applicant, or failure and refusal to provide property insurance on dwellings.

Claimant raised issues in support of his premised belief that additional records were missing. Claimant provided documentation from statement of April 23, 1996 by Dr. James McCoy that claimant was being evaluated for radioisotope exposure at Rocky Flats Nuclear Plant. Claimant provide records requesting radioisotope testing at the Kit Carson Correctional facility, but upon review of records, no radioisotope evaluation was found in the 993 pages of medical records furnished by the Attorney general's office.

Claimant raised the issue that the urinalysis testing of July 28, 1993, Collection Number 01100063537, Lab. Number 478542 of the Colorado Department of Health, Division of Laboratory, 4210 E. 11th Ave. Denver, Colorado 80220, held by Mike Rulo, Inspector General was not in the 993 pages of records. Claimant has been discriminated against, subject to unfair treatment or denial of normal privileges because he was mercury poisoned and radiation poisoned, was also apparent by the statement made my Dr. Frantz in staffing notes submitted stating that this claimant had not worked at the Rocky Flats Nuclear Plant, and that Claimant was never poisoned.

The testing used by the Colorado Department of Correction for heavy metals was the wrong testing as confirmed by the results presented from testing of 1/7/2011 by Dr. Painter. The testing completed by the Colorado Department of Correction for heavy metal poisoning, had a window of only two hours of discovery from acute exposure. The medical staffing knew from the initiation of their testing that no showing of heavy metals would be revealed. The State of Colorado medical program discriminated in providing proper testing and treatment, and denied disparate treatment by failing and refusing to perform the Porphyrin profile urinalysis of kidneys damages. That failure resulted from invidious discrimination by the State to conceal mercury poisoning.

Respectfully Submitted,                                          Dated, March 3, 2011

Wayne Brunsilius
P.O. Box 150923
Lakewood, Colorado 80215

CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Presentment of Exhibits this 3 day of March, 2011 to the following:

Special Masters for the United States District
Court for the District of Colorado
Legal Resolution Center
7909 Zenobia Street
Westminster, Colorado 80030-4444

Mr. James Quinn
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, Colorado 80203

Wayne C. Brunsilius, Pro Se attorney of Record

Exhibit 15

Received by
Attorney General's Office
1525 Sherman St. 7th Flr.
Denver, CO 80203

For _Wayne Brunsilius_

Description _Medical Records - Check in amount of $148.00_

From _Darlene Hill_

AFFIDAVIT CONCERNING MEDICAL RECORDS

State of Colorado              /
                               / SS
County of Jefferson            /

      That I, Douglas R. Dudgeon herein "Affiant", being duly sworn, deposed and say by my signature that the following facts are true, correct, and complete to the best of my knowledge and belief and not meant to mislead.

      That the affiant is one living breathing person, being of age and competent to testify, and having firsthand knowledge of the facts herein, state the whole truth, and nothing but the truth, upon affiant's unlimited commercial liability and his belief in the almighty God.

      "Indeed, no more than an affidavit is necessary to make the prima facie Case. United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981); Cert. denied, 50 .W. 2169, S. Ct March 22, 1982."

1). That affiant received from Wayne Brunsilius on January 21, 2011 one box sealed. That affiant acting as agent opened the box to find medical records from the Colorado attorney General's office. Affiant removed and inspected records, which were copied only on one side, and in three divisions bound by rubber bands. Each section was marked respectfully as section 1, or 2 or 3.

2). That affiant measured the stack of medical records, and the height was 4.75 inches. Affiant then placed each section, one at a time in copy machine to copy all documents as exact duplicate. The total number of copies were 993 pages, and were stamped duplicate, inserting duplicate copy in a second box and sealed for mailing.

3). That affiant works for Document Solutions, at 8025 W. Colfax, Ave. Lakewood, Colorado, 80214.

4). That affiant, Douglas R. Dudgeon being fully informed and competent was asked by Wayne Brunsilius how many copies would be contained in a stack of 20 # paper, 8.5 x11, if the stack were 10 inches in height. Affiant certifies that a stack of #20 paper, 8.5 x 11, 10 inches height would be approximately 2500 pages.

5). That affiant created Invoice No 52832, dated 1/21/2011, Account No. CC-7606374780, shipped to Wayne Brunsilius, P.O. Box 150923, Lakewood, CO. 80215. See enclosed.

Dated 2/22 2011

Notary Public in and for the State of Colorado
Douglas R. Dudgeon
8025 W. Colfax Ave.
Lakewood, Colorado 80214

My Commission expires: June 25, 2013

Douglas R. Dudgeon
NOTARY PUBLIC, STATE OF COLORADO
My Comm. Expires June 25, 2013

Exhibit 16

Exhibit 17

# Document Solutions USA

xerox  KYOCERA  Canon
8025 W. Colfax Ave Lakewood, CO 80214

# INVOICE

**Invoice No:** 52832
**Date:** 1/21/2011
**Account No:** CC-7606374780

| Bill To: | Wayne Brunsilius<br>Attn: Wayne Brunsilius<br>P.O. Box 150923<br>Lakewood, CO 80215 | Ship To: | Wayne Brunsilius<br>Attn: Wayne Brunsilius<br>P.O. Box 150923<br>Lakewood, CO 80215 |
|---|---|---|---|

| Sales Order No | P. O. Number | Ship Method | Payment Terms | Payment Due |
|---|---|---|---|---|
| 11032 | | Standard | Due on Receipt | 1/21/2011 |

| Remarks | Sales Person |
|---|---|
| Copied Medical Records Directly out of box - Exact Duplicate - I certify that I opened the boxes, copied 1/Sided documents exactly, copied all document 1/Sided - DRD | Doug Dudgeon |

| Item No | Description | Serial No | Order | Ship | BkO | UM | Price | Disc | Amount |
|---|---|---|---|---|---|---|---|---|---|
| CP-BW-Copies | Copy Medical Records | | 993.0 | 993.0 | 0.0 | EA | $0.03 | | $29.79 |
| CP-20#-11" | 20# White Bond - 8.5 X 11 | | 993.0 | 993.0 | 0.0 | EA | $0.005 | | $4.97 |
| CP-Misc. | Copied Medical Records Directly out of box - Exact Duplicate - DRD | | 1.0 | 1.0 | 0.0 | EA | $0.00 | | $0.00 |

I, Douglas R. Dudgeon
certify the statement
in the "Remarks"
is Accurate & Corr

2/21/11

DOCUMENT SOLUTIONS USA
8025 W COLFAX AVE
LAKEWOOD, CO 80214
303-369-8765
TID #009800113513 001
C O P Y
01/21/2011 17:31:19
Sale:
Transaction #    2
Card Type:    VISA
Acc: ************9819
Entry:    Swiped
Invoice #    184
Total:    37.40
Reference No.:  00000002
Auth.Code:    634189
Respon.    APPROVED

CUSTOMER COPY

**PAID**

| C.C.# | CHK # | TRADE | CASH |
|---|---|---|---|
| 9819 | | | |

THANK YOU FOR YOUR BUSINESS !
PLEASE PAY FROM THIS INVOICE AND INCLUDE INVOICE #
Remit To: DOCUMENT SOLUTIONS USA

| | |
|---|---|
| **Subtotal** | $34.76 |
| **Discount** | $0.00 |
| **Freight** | $0.00 |
| **Sales Tax** | $2.64 |
| **Invoice Total** | $37.40 |
| **Balance Due** | $0.00 |

8025 W. Colfax Ave. Lakewood, CO  80214    303-369-8765

Page 1 of 1

William Anderson
215 ½ N. 14th Street
Colorado Springs, Colorado 80904

### AFFIDAVIT CONCERNING MEDICAL RECORDS

State of Colorado          /
                          / SS
County of El Paso          /

      That I, William Anderson herein "Affiant", being duly sworn, deposed and say by my signature that the following facts are true, correct, and complete to the best of my knowledge and belief and not meant to mislead.

      That the affiant is one living breathing person, being of age and competent to testify, and having firsthand knowledge of the facts herein, state the whole truth, and nothing but the truth, upon affiant's unlimited commercial liability and his belief in the almighty God.

> "Indeed, no more than an affidavit is necessary to make the prima facie
> Case. United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981); Cert. denied,
> 50 .W. 2169, S. Ct March 22, 1982."

1). That affiant was present for the Plaintiff in Civil Action No. 92-CV-870-JLK, Jesse Montez, et al., vs Bill Ritter, et al., Claim Number: 03-491, Claimant: Wayne Brunsilius, #65458, P.O. Box 150923, Lakewood, Colorado 80215-0923 in hearing held on January 18, 2011, at the Legal Resolution Center, 600 17th Street, Suite 2800 South, Denver, Colorado 80202.

2). That affiant witnessed the cross examination of Dr. Rebecca Painter by the Attorney General office for the State of Colorado, concerning medical condition. The representative for the Colorado Attorney General ask what medical records Dr. Painter reviewed, and she responded and held up a stack 1.5 inches thick, noted by the court. The representative for the Colorado Attorney General pointed to the Stack of medical records before her, a stack 10 to 12 inches in height.

3). The Court noted the stack of 10 to 12 inches, and ask Claimant Wayne Brunsilius if he had reviewed those medical records? The Claimant stated he had not. The Court by Order of Special Master, signed on 19th day of January, 2011 granted up to and including March 7, 2011 the right to review his DOC medical records, and Coordinate such review with Defendants' counsel, and to submit any additional documents he wishes to have considered.

4). That affiant William Anderson confirmed with Claimant Wayne Brunsilius, a box of medical records, 4.75 inches in height as the total DOC medical records held by the State of Colorado. The total count of records received was 993 pages of medical records. The certified agent that opened the box of medical records stated that 10 inches of 8.5 inches by 11 would be 2500 sheet.

5). That affiant will state that the 4.75 inches of medical records received was only half or one third of the total medical records presented by the State of Colorado Attorney General. The medical records for review are incomplete as represented by the State of Colorado Attorney General Office, for the Colorado Department of Corrections.

*Exhibit 18*

Further, declarant saith naught,                              Dated _01 26 ~11_ 2011

William Anderson
215 ½ N. 14th Street
Colorado Springs, Colorado 80904

Subscribed to and sworn before me this 26th day of January, A.D. 2011, a Notary, that William

Anderson personally appeared and know to me to be the person whose name subscribed to within and

acknowledged to be the same.

Notary Public in and for the State of Colorado



My Commission expires: _07/11/2014_

*Exhibit 19*

## COLORADO STATE DEPARTMENT OF CORRECTIONS
### AUTHORIZATION TO RELEASE/REQUEST MEDICAL INFORMATION

I, _Wayne Brunsilius_   DOB _5-24-46_ DOC # _65458_ FACILITY _FCF_
(Please Print)                                                SS# _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_

Authorize the Department of Corrections to _✓_ release ____ request

medical/mental health records (to/from) _Paula Greisen_

_____NAME OF PERSON OR ORGANIZATION.

Extent or nature of information, please include dates of service requested.

____ Copy of History and Physical, Dis. Summary and Procedure Note.
_✓_ Copy of Ambulatory Health Record.
_✓_ Copy of Medical/Mental Health Record–Records released for continuity
_✓_ OTHER _All DOC records_ _____ of care when DOC receives info.

When Dept. of Corrections requests information mail to:

I understand that the information to be released may include HIV infections and Drug and Alcohol documentation.

I certify that this request has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time, except to the extent that action has already been taken to comply with it. This release will remain in effect for 90 days, unless specified in writing for a shorter time frame.

I make this consent upon the premise that all disclosure made pursuant to the authority granted by this consent shall be accomplished by a written notice which states as follows:

"This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Fed. Regulation (42 CFR, part 2) prohibits you from making any further disclosure of it without specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose."

I hereby release the health care provider from any liability which may result from furnishing the information requested as authorized in this release.

I have read the above and foregoing PATIENT'S CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION and I do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

Date _3/12/96_   INMATE'S NAME _Wayne Brunsilius_

WITNESS _Paula Green_

_copied 3 med files_
_copied 1 mh_

Sec. 5. HR/Req



Diane S. King
Paula Greisen
Laura E. Schwartz

KING ■ GREISEN ■ LLP

Jennifer W. Riddle
Joseph W. Galera
Ashley M. Kelliher
Monica C. Guardiola

November 1, 2010

**Via US Mail**
Wayne Brunsilius, #65458
~~KCCC~~
~~P.O. Box 2000~~          P.O. Box 150923
~~Burlington, Colorado 80807~~   Lakewood, CO 80215

Dear Mr. Brunsilius,

    We are in receipt of the documents you mailed to our office regarding the claim for damages you filed pursuant to the Montez Remedial Plan. Due to our obligation to the Montez Class as a whole, we are unable to represent individuals in the damage claim process.

    Because do not represent you in the damage claim process, we are returning your documents so that you have them in your possession for reference as you proceed through the damage claim process. We have retained copies of the documents that you sent to us and will review them for compliance issues that may affect the Montez Class in general. I apologize for the delay in returning these to you – we were in compliance hearings before Judge Kane the last two weeks in October.

    I wish you the best.

Sincerely,

Jennifer W. Riddle

Exhibit 20

# WILLιAM E. DOELL D.O. F.A.ʋ.C.T.
## Family & Nutritional Medicine

Chelation Therapy
Laser Surgery
Member American Society of General Laser Surgery

To Whom It May Concern:
Re: Wayne Brunsilius

Mr. Wayne Brunsilius has been a patient in our office since 8/22/86. During that time frame, we have treated him variously for chronic fatique syndrome, mercury toxicity-secondary to the mercury in his mercury-amalgam dental restorations, diastolic hypertension, infectious mononucleosis, systemic candida synd-rome, chronic prostatitis, and a bout of insecticide intox-ication.

As anyone can plainly see, Mr. Brunsilius has had his share of medical problems since his entry into our patient care program.

If I can be of further assistence, please feel free to call upon me.

Sincerely,

William E. Doell, D.O., PC.

# HAIR ANALYSIS MINERAL ASSAY
## ALL MINERALS REPORTED IN MG. %

*Exhibit 22*

**HEALTH OUTREACH**

P. O. BOX 2133
SCOTTSDALE, AZ. 85252
(602) 946-5515

C.L. LICENSE 02-1029

REPORT NU...
E-724
RECEIV...
08-27
REPORT...
08-27

DR. W. E. DOELL
4045 WADSWORTH
STE. # 207
WHEAT RIDGE, CO  80033

PATIENT NAME: WAYNE BRUNSILIUS
RACE:        HAIR COLOR (NATURAL): LT/BRN    SEX: M
HAIR LOCATION: NP/HD    SHAMPOO:
OCCUPATION: CONSTRUCTION    PRODUCT:
HEIGHT: 5'10"    WEIGHT: 170    AGE: 45
COMPLAINTS:

| SIGNIFICANT RATIOS | | |
|---|---|---|
| MINERALS | VALUE | IDEAL |
| CA/MG | 8.0 | 8.0 |
| CA/P | 1.3 | 3.0 |
| CA/MN | 72.7 | 380.0 |
| CA/ZN | 1.1 | 2.0 |
| NA/K | 0.5 | 2.0 |
| FE/CU | 4.8 | 1.5 |
| ZN/CU | 8.8 | 8.0 |
| ZN/MN | 68.2 | 150.0 |
| ZN/FE | 1.8 | 5.0 |
| ZN/CD | 55.6 | 2000.0 |

| MISCELLANEOUS | |
|---|---|
| MG/MN | 9.1 |
| K/MG | 18.5 |
| VANADIUM | .02 |

## ACCEPTABLE RANGES

| | | | |
|---|---|---|---|
| CA 25-60 | ZN 13-20 | AL .2-2.5 | V .02-.08 |
| MG 3-7.5 | CR .04-.07 | LI .005-.02 | |
| NA 12-35 | SE .04-.12 | NI .1-.45 | |
| K 6-23 | PB 0-1.1 | CO .1-.2 | |
| FE 1.5-5 | HG 0-.3 | P 9-15 | |
| CU 1.1-3.1 | CD 0-.11 | MO .01-.05 | |
| MN .05-.17 | AS .01-.2 | SN .1-.5 | |

| Ca | Mg | Na | K | Fe | Cu | Mn | Zn | Cr | Se | Pb | Hg | Cd | As | Al | Li | Ni | Co | P | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 16 CALCIUM | 17 SODIUM | 8.2 IRON | .22 MANGANESE | .06 CHROMIUM | 4 LEAD | .27 CADMIUM | 1.5 ALUMINUM | .1 NICKEL | 12 PHOSPHORUS |
|---|---|---|---|---|---|---|---|---|---|

| 2 MAGNESIUM | 37 POTASSIUM | 1.7 COPPER | 15 ZINC | .07 SELENIUM | .04 MERCURY | .01 ARSENIC | .003 LITHIUM | .16 COBALT | MOLYB... |
|---|---|---|---|---|---|---|---|---|---|

*(handwritten top)* 11-18-86 2⁰ pm   left message / will call for appt

## Davenport Analytical Laboratories, Inc.

Federally approved

1330 River Bend Park, Suite 110
Dallas, Texas 75247
(214) 634-1953

Jeffrey Bland, Ph.D.
Technical Advisor

Oscar Rasmussen, Ph.D.
Associate Technical Director

Charles Rudolph, Ph.D., D.O.
Associate Technical Director

William Whigham, Ph.D.
Laboratory Director

| | |
|---|---|
| PATIENT NAME | W BRUNSILIUS |
| CLIENT'S NAME | DR WM DOELL |
| CLIENT CODE | 2204 |
| LAB NO. | 40281 |
| DATE RECEIVED | 11/10/86 |
| DATE REPORTED | 11/11/86 |

### PATIENT DATA

| | | |
|---|---|---|
| AGE | 45 | SEX M |
| HEIGHT | 5 FT. 10 IN. | |
| WEIGHT | 170 LBS. | |

OCCUPATION: CONSTRUCTION
CITY: WHEAT RIDGE
STATE: COLORADO
FREQUENCY OF WASHING OR SHAMPOOING ___ PER WEEK

NATURAL HAIR COLOR: BROWN
SHAMPOO OR SOAP: NOT GIVEN
CONDITIONER (IF USED): NOT GIVEN
PATIENT SWIMS FREQUENTLY IN SWIMMING POOL ___ YES ___ NO

BLEACH (IF USED): DOES NOT USE
PERMANENT (IF USED): DOES NOT USE
DYE (IF USED): DOES NOT USE

CLINICALLY SIGNIFICANT CODES: DESIGNATION BASED ON DOCUMENTATION AVAILABLE IN THE LITERATURE.
C.S.: Clinically Significant
S.C.S.: Suggested Clinical Significance
V.C.S.: Clinical Significance not well documented

REFERENCE RANGES: BLUE & WHITE AREAS ON GRAPH REPRESENT 1 S.D. ABOUT THE MEAN. RED AREA REPRESENTS VALUES OUTSIDE 1 S.D. ABOUT THE MEAN.

THIS LABORATORY REPORT IS CONSISTANT WITH ALL PROTOCAL ESTABLISHED BY:

ASETL
AMERICAN SOCIETY OF ELEMENTAL TESTING LABORATORIES

REPRODUCTION:: REPRODUCTION WITHIN THE LABORATORY IS ± 7% OR ± ONE SIGNIFICANT DIGIT (WHICHEVER THE GREATER) ON SAMPLES WITH IDENTICAL HOMOGENIETY.

DETECTION LIMIT: THE DETECTION LIMIT FOR EACH ELEMENT REPORTED IS EQUAL TO THE LOWEST SIGNIFICANT DIGIT PRESENTED OR IMPLIED IN THE REFERENCE RANGE FOR THE ELEMENT.

### ESSENTIAL TRACE ELEMENTS

| Calcium C.S. | Magnesium C.S. | Sodium C.S. | Potassium C.S. | Copper C.S. | Zinc C.S. | Phosphorus V.C.S. | Iron V.C.S. | Manganese V.C.S. | Chromium C.S. | Nickel | Selenium S.C.S. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 1.2 | 3.2 | 1.3 | 1.2 | 10 | 12 | 1.5 | .03 | .02 | .1 | .04 |

### TOXICS

| Arsenic C.S. | Mercury C.S. | Cadmium C.S. | Lead C.S. | Aluminum V.C.S. |
|---|---|---|---|---|
| .01 | .05 | .04 | 1.5 | .7 |

ALL RESULTS IN mg%



| | SAMPLE SIZE WAS ADEQUATE FOR ROUTINE ANALYSES | X |
|---|---|---|
| | SAMPLE SIZE WAS INADEQUATE FOR ROUTINE ANALYSES, BUT ACCEPTABLE FOR SPECIAL HANDLING 1. | |
| | SAMPLE SIZE WAS INADEQUATE FOR LABORATORY ANALYSES 2. | ALL TESTS / TOXICS ONLY |

NOTE: NORMALS & INTERPRETATION HAVE BEEN BASED ON NAPE OF NECK SAMPLES. INTERPRETATION ON OTHER TYPES OF SAMPLES MAY BE SOMEWHAT LESS SIGNIFICANT.

TYPE OF HAIR SAMPLE: NAPE OF NECK ☒ PUBIC ___ AXILLARY ___ OTHER ___

DRINKING WATER CHARACTERISTICS IF KNOWN: 0   PH 0   TOTAL HARDNESS N/A   ELEVATED TRACE ELEMENTS

TYPE OF PLUMBING IN RESIDENCE, IF KNOWN: COPPER ___ GALVANIZED PIPE ___ OTHER N/A

WE RECOMMEND DAVENPORT ANALYTICAL LABORATORIES' "STANDARD WATER PROFILE" IF NOT ALREADY PERFORMED.

1. DETECTION LIMITS HAVE BEEN ELEVATED BY A FACTOR OF 2, WITH SIMILAR ALTERATIONS TO SENSITIVITY AND PRECISION. THIS DATA SHOULD NOT BE MIXED WITH ROUTINE DATA FOR THE CALCULATION OF S.D., C.V. ETC.

2. LESS THAN ½ THE ANALYTICAL REQUIREMENT WAS RECEIVED.

WAYNE BRUNSILIUS          10-1-85          *Exhibit 24*

**PHYSICAL EXAMINATION OF**

| T | P | B.P. | R | H 5'63/4" | W 181 |
|---|---|---|---|---|---|

10-1-85 Wayne Brunsilius examination:

**VITAL SIGNS:** Blood pressure 110/90, pulse 120 and irregularly.

**HEENT:** TMs normal, except for the one on the right is slightly erythematous. No bulging. Pupils are equal and reactive. Funduscopic negative. Mouth and throat negative.

**NECK:** No bruits over the carotids, thyroid not enlarged.

**LUNGS:** Clear to P&A.

**HEART:** Normal size, clinically. S1, S2 appear normal but there is an irregular irregular heart rate at a rapid count.

**ABDOMEN:** No organomegaly, pain or masses on deep palpation.

**BACK:** Severe kyphoscoliosis.

**GU:** Normal testicles. No hernia.

**RECTAL:** A few hemorrhoidal tags. Prostate is normal.

**EXTREMITIES:** No cyanosis, clubbing, edema. Peripheral pulses equal bilaterally and adequate in volume. Deep tendon reflexes physiologic.

**IMPRESSION:**
1. Fatigue, uncertain etiology.
2. Atrial fibrillation.
3. Kyphoscoliosis.

**RECOMMENDATIONS:** We will get the usual things and see him back in 10 days. Additionally, we put him on LANOXIN. We will see if that helps some of the symptoms as well as the heart rate. Additionally, I think he will probably need an orthopedic consult and, perhaps, Harrington rods for correction.

DOM/dm

T—    P—    BP—    Wg 186          OCT 10 1985

10-10-85

Wayne Brunsilius. He has converted to a regular sinus rhythm now. He stopped taking the medications, DIGOXIN because of the conversion back to normal. We asked him to take that on a daily basis. He will restart it. He is still having a lot of sinus symptoms, ear pain, sensitivity to hot-cold situation, producing some vertiginous behavior and activity. Therefore, we are going to treat him with ERYC 250 one four times a day for 10 days for questionable inner ear and sinus inflammation. We gave one renewal on that. We went over his blood studies. He has a low phosphorus. We are checking a 24 hour

CONTINUED

exhibit 25

STATE OF COLORADO—DEPARTMENT OF CORRECTIONS

MEDICAL HISTORY

Page 1

| INMATE NO. 65458 | NAME Bransilius, Wayne | Interview/Hx Date 6/10/91 | FACILITY DRDC |
|---|---|---|---|

| BIRTH DATE 5-24-41 | BIRTH PLACE Ks. | SEX M ☒ F ( ) | RACE BLACK ( ) HISPANIC ( ) WHITE ☒ OTHER ( ) | EYE COLOR BR | HAIR COLOR Grey | MARITAL STATUS M ( ) D ☒ S ( ) W ( ) | RELIGION |

| FAMILY HISTORY | | AGE (S) | HEALTH STATUS - CAUSE OF DEATH SIGNIFICANT HEREDITARY DISEASES |
|---|---|---|---|
| FATHER | ALIVE ( ) DEAD ☒ | 72 | Prostate ca |
| MOTHER | ALIVE ☒ DEAD ( ) | 72 | Kidney disease + nephritis ? |
| SIBLINGS TOTAL NO. 2 | No. Living No. Dead | 52, 45 | Both have heart problems, younger ? problems |

**PAST HISTORY**

ILLNESSES, INJURIES, SURGERY, HOSPITALIZATIONS, MENTAL ILLNESS - DATES & DETAILS BELOW:

| | YES | NO | DATE | | YES | NO | DATE | | WOMEN: | YES | NO | DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EPILEPSY | ( ) | ☒ | | GONORRHEA | ( ) | ☒ | | MENARCHE | | ( ) | ( ) | |
| DIABETES | ( ) | ☒ | | SYPHILLIS | ( ) | ☒ | | MENOPAUSE | | ( ) | ( ) | |
| HYPERTENSION | ( ) | ☒ | | ORTHOPEDIC | ( ) | ☒ | | PREGNANCIES | | | | |
| TUBERCULOSIS | ( ) | ☒ | | TRAUMA | ( ) | ☒ | | ABORT; MISC. | | | | ABORT |
| HEPATITUS | ( ) | ☒ | | SURGERY | ( ) | ☒ | | LIV. CHILD. | | | | |
| MENTAL | ( ) | ☒ | | | | | | | | | | |
| ASTHMA | ( ) | ☒ | | | | | | | | | | |

| IMMUNIZATIONS | | | | ALLERGIES | | | | DRUGS AND NARCOTICS PRIOR TO ADMISSION | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | YES | NO | DATE | | YES | NO | | | YES | NO | NEVER | DATE STOPPED | AMOUNT PER DAY |
| POLIO | ( ) | ( ) | | PENICILLIN | ☒ | ( ) | | TOBACCO | ☒ | ( ) | ( ) | | |
| TETANUS | ( ) | ( ) | Recent call | OTHER (LIST) ( ) | | ( ) | | ALCOHOL | ( ) | ☒ | ( ) | | |
| DIPHTHERIA | ( ) | ( ) | | 1. | | | | OTHER DRUGS (LIST) | ( ) | ☒ | | | |
| OTHER (LIST) | | | | 2. Most 3. 4. 5. abx's. | | | | | | | | |

| SERVICE IN ARMED FORCES | | TINE TEST DATE 6-11-91 |
|---|---|---|
| BRANCH _____ TYPE OF DISCHARGE _____ DATES _____ TO ____ | YES ___ NO ___ | RESULTS: POS. ___ NEG. ☒ FOLLOW-UP ____ |

**MEDICAL PROBLEMS**

Mercury, lead, cadmium poisoning — Since 1973 - chronic problems with kidney + heart, several infections such as fungus. Currently osteoporosis + scoliosis.

**CURRENT MEDICATIONS OR TREATMENTS LIST DRUGS AND DOSAGES**

On calcium + magnesium, B complex Reniton + Vit C.

| PREVIOUS NO. _____ RELEASE ___ DISCHARGE ___ LAST COLO. FACILITY _____ OTHER HEALTH RECORDS ( NAME, ADDRESS) | NEAREST RELATIVE (RELATIONSHIP, NAME, ADDRESS) Lorena Bernsilius — mother. 7779 West 4th Ave Lakewood Co 80226. |
|---|---|

26-41 Rev. 2-80

SIGNATURE _____ DATE 6-11-91.

WHITE — Inmate Health File / YELLOW — Health Services / PINK — Data Collection

€ 9/28/92

DC Form 78 (82) / Old No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

exhibit 21

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunsilius, Wayne | 65458 | FCF |

**SUBJECTIVE:**

**DATE** 7/23/91  **TIME**

PROBLEM 1 2

**PLAN / ORDERS**

1⊗ heavy metal exposure

Heavy metal urine & blood screen

RTO 2 mo — Sched off

Check c̄ me 3 wL

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P _____ / _____

checked for FH 7/29/91 c̄ physician according Sleep

**ASSESSMENT:**

SIGNATURE
NURSE:

P.E.:

PHYSICIAN: Mc Garry

Rx NO.

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | BRUNSILIUS, WAYNE | 65458 | FCF |

**SUBJECTIVE:** Colonoscopy ⊖   BE ⊕

c/o rhinorrhea, facial paresthesia; cracking neck. He relates these to heavy metal poisoning. Also c/o LLQ pain.

**DATE** 7-23-91  **TIME**

PROBLEM 1 2

**PLAN / ORDERS**

Rx Atu f.b.
Chronic fatigue
Severe scoliosis

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P _____ / _____

Calcium 500 mg tid
Magnesium 250 mg bid
Dimetapp SR bid

**ASSESSMENT:**

c/ Records reviewed
Seen by Loc. Recommendation
for myelogram – Severe scoliosis
Had testing & treatment
re heavy metals

SIGNATURE
NURSE: OK for self med

P.E.: Herrera

PHYSICIAN: Mc Garry

Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

Exhibit 27

DC Form 78 (82) / Old No. 2635
WHITE — Medical Record
CANARY — Pharmacy
PINK — Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunselius, W | 65458 | FCF |

SUBJECTIVE: Here c̄ ngroing cold
cough,

DATE 7-1-92   TIME 1400

PROBLEM 1 2
PLAN / ORDERS

① Keflex 250 mg Qid x 10 days

② Quel tabs ii PO, Qid x 7 days

③ Guietopp ___ tab ___ x 7 days

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___

Afebrile - Unret HE
Chest tender
Chst - Clear ___
Skin dim well

ASSESSMENT: Bronch t

SIGNATURE:
NURSE:
PHYSICIAN:
Rx NO.

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunselius, W | 65458 | FCF |

SUBJECTIVE: "Worms, Parasites + the candidus"
Convinced of above in colon because
of LLQ pain & gaseous distention.

DATE 5/19/92   TIME

PROBLEM 1 2
PLAN / ORDERS   See PL

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___

Vertigo & ENT sx have resolved
"Doing better"
O/ Legs c̄ red discrete lesions
some thickening

Triamcinalone ointment
Qid to rash

Provide a specimen cup
to collect worms which
should be sent to path.

SIGNATURE:
NURSE: Nystatin 500,000 units
P.E.   tid x 14 days
PHYSICIAN: Mc Garry
Rx NO.

ASSESSMENT:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

RTO 6 mo

DC Form 78 (82) / Old No. 2635
WHITE — Medical Record
CANARY — Pharmacy
PINK — Data Collection

Exhibit 28

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO. | NAME Brunsilius, Wayne | INMATE NO. 65458 | LIVING UNIT FCF

SUBJECTIVE:

Here f FO. no pai-
n eas but cannot hea

DATE 1-8-92     TIME 0900

PROBLEM  1  2 _____
PLAN / ORDERS

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P _____

ⓇR extend cAnol completely
occluded c hard - old -
⟶ Cerumen — clone (Debi
cAnol

① Debrox eardrops as
directed 1 Bottle for
Stock issued to pt
cotton (please resupply
bottle for replacement
② FO 1-13-92 for ea

SIGNATURE:
NURSE:

ASSESSMENT:  Cerumen occlusion
both ears.

P.E.:

PHYSICIAN:
Rx NO.

---

PRICARE CODE NO. | NAME Brunsilius, Wayne | INMATE NO. 65458 | LIVING UNIT FCF

SUBJECTIVE:

c/o Ⓡ ear ache x several
days now c complete hearing
loss. Ⓡ ear

DATE 12/24/91     TIME 1255

PROBLEM  1  2 _____
PLAN / ORDERS

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P _____

Ⓡ Amoxil 250 TID x 10 d

ⓇEAC c exudate, pain
tender, TM red & dull.
Ⓛ TM retracted
ENT otherwise normal —

ok for self
meds

Ⓡ Cortisporin otic iii gtts
x 5 d

Ⓡ ECASA i-ii QID x 30 d
RTC ii weeks

SIGNATURE:
NURSE:

P.E.:

ASSESSMENT:

R om & otitis externa
① serous otitis

PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

C 9/28/93

DC Form 78 (82) / Old No. 2635

WHITE — Medical Record
CANARY — Pharmacy
PINK — Data Collection

*Exhibit 29*

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunsilius, Wayne | 65458 | FCF |

SUBJECTIVE:

Rx renewal

DATE: 1-27-92

TIME:

PROBLEM 1 2 _____

PLAN / ORDERS

OBJECTIVE: Temp. _____ Pulse _____ Resp. _____ B/P ___/___

1) DECASA # QID × 90d

ASSESSMENT:

SIGNATURE:
NURSE:
P.E.: Gilbert A. Casner PA-C
PHYSICIAN:
Rx NO. AD 1/28/62

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunseillin, Wayne | 65458 | FCF |

SUBJECTIVE:

In for ear irrigation.

DATE: 1-17-92

TIME:

PROBLEM 1 2 _____

PLAN / ORDERS

OBJECTIVE: Temp. _____ Pulse _____ Resp. _____ B/P ___/___

Both ears irrigated c̄ ½ and ½
(N.S. + H₂O₂)
Both TM's visualized —
Ⓛ Otitis Externa
Ⓡ TM slightly bulging + immobile

RTC PRN

ASSESSMENT: 1) Ⓛ Otitis externa
2) Ⓡ oui

SIGNATURE:
NURSE: T. Mohigo RN
P.E.: Gilbert A. Casner PA-C
PHYSICIAN:
Rx NO. AD

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

C 9/28/93

Exhibit 36

#3

## COLORADO DEPARTMENT OF CORRECTIONS

### OFFENDER GRIEVANCE FORM

RECEIVED

DEC 0 4 1992

272

CLINICAL SERVICES
EAST CANON COMPLEX
BY: ___

#### STEP I

| NAME | DOC No. | FACILITY |
|------|---------|----------|
| Wayne Brunsilius | 65458 | FCF – LU-7 |

Instructions:  1)  Fill out identifying data legibly in space provided;
2)  Clearly state basis for grievance;
3)  Describe the attempts made to resolve the problem;
4)  State specifically what remedy you are requesting

REQUEST    See attached sheet

On Nov. 11,92 I received a new refill of magnesium and upon taking of two tablets I b
suffering adverse symptoms on 11-11-92. I returned to infirmary with the new prescription
magnesium and related to the nurse of the symptoms of severe headaches, eyes vision probl
and ears ringing,. I was directed to turn in a kite and did so on the 11-13-92, after det
mining that the symptoms were not just the flue. I requested ASAP appointment with Dr. Mo
and attached three kits. I received the kits back the next morning stating that they woul
to be done in triplicate, On11-16-92. I resubmitted kits( three of them) again on the 23rd
November stating the same thing. By this time my conditions were worse and I was bleeding
the rectrum. I received no answer on these kites. I have submitted kits on the 26th of NG
and again on 11-30-92 requesting an appointment with the doctor to determine what the med
was that I had been given. I have revieved this medicine for the last year and the magnes
was Nature made" and ~~not~~ it was changed to something that I have never used and was told
theycould not get it. The tablets were 27 MG of something, # 776045,the old magnesium was
764525. I have not had calcium or magnesium since 11-11-92. I have severe advanced scolis

DATE:  11-30-92                      OFFENDER SIGNATURE Wayne Brunsilius

RESPONSE

When a prescription is written, the pharmacist is authorized
to substitute the drug with another one that is the same
as the one ordered — only with a different name. If
your problem is not resolved by this date, please
submit another kite and send a copy to me at ACC.

Grievance Form   REport   11-30,

I still suffer from some of the symptoms in the eyes and the ears still ring a litt
I have requested 4 times since 11-11-92 to get calcium refill and have been denied. I
the health problems to nurses in between kits to no avail. I received a kite back date
-92 stated that they had order the special aspirn I have been receiving for the last ye
and to date have never received it. It would have been nice to have had some help on a
itarian level to aid me with the faulty medicine given me. I have photostatic copies of
the kits and will upon your request present copies of them. I require the calicum and
ium stated in medical reports given to infirmary and Doctor when I came in here. The re
of Dr. Donald O. McIntyre of the" Western Nephrology and Metabolic Bone Disease, Dr.Fo
" The Lakewood Orthopedic Clinc,(Scolissos, Advanced) and Dr Odom Jr. Of " The Colora
spine Center, I suffer from heavy metal poison as per Dr. Doell report; and the condit
reflected in that reprot.

The medical infirmary knew of these deficiency and have refused medical services.
needs and conditions that need the conscience assistance of a doctor that understands t
conditions. A copy of these medical reports are available upon request.
The prescription # are magnesium 776045 and 764525. I turn and old card in with the ne
                card of whatever it was, to show them that a mistake had been
        CAlcium prescription #'s--9/23/92 739221
                # -- 10/22/92121771234
                # -- 1/16/93  776044  The amount started out
tables 4 times a day and they dropped it to 1 tablet twice a day with out taking anothe
desitomitry test that was determined in letter of May 17,1991 by Dr. D. McIntyre
The trust in and with the medicine given by these people is ver limited now and I
quire calicum and magnesium to continue my improvement. Accountability is required,te
mine trust and responsibility.
I have been doing acceptable in the environment and location to this time, health w

Exhibit 31

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

**COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD**

---

PRICARE CODE NO. | NAME Brunslin, Wayne | INMATE NO. 65458 | LIVING UNIT FCF

SUBJECTIVE:
1- Cough
2- Candidiasis, chronic

DATE 11-29-94   TIME

PROBLEM 1 2 ___
PLAN / ORDERS

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___/___

Antibiotics refused because it "causes candidia flareup."

Robutussin T gi x 7 days
Nystatin 500,000 bid x 10 d
(cup/mod)

SIGNATURE: NURSE: 11/29/94 @ 1007

ASSESSMENT: Bronchitis

P.E.:
PHYSICIAN:
Rx NO.

---

PRICARE CODE NO. | NAME Brunsglius, Wayne | INMATE NO. 65458 | LIVING UNIT FCF

SUBJECTIVE:

DATE 8-30-94   TIME 2pm

PROBLEM 1 2 ___
PLAN / ORDERS

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___/___

up for Drsg ↓. c/o Antibiotic causing H.A., abd gas & cramps S. Quakenbush P.A. checks leg - Improving. see new orders

1) DC Keflex ✓
2) Cont Drsg ↓

V.O. S Quakenbush

SIGNATURE: NURSE:
P.E.:
PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

Exhibit 32

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME Brunsilius, Wayne | INMATE NO. 65458 | LIVING UNIT FCR |
|---|---|---|---|

SUBJECTIVE: Chronic Tinea @ ankle x 4 yrs
c Complt

DATE 1-13-95   TIME

PROBLEM 1 2 _____
PLAN / ORDERS

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ___/___

(remedy) Candidiasis?

- Nizoral 200 mg T daily
x 30 days
- RTC in 2 wks. – SWI...

ASSESSMENT: Rt

SIGNATURE:
NURSE: [signature]
P.E.:
PHYSICIAN: [signature]
Rx NO.

---

| PRICARE CODE NO. | NAME Brunsilius, Wayne | INMATE NO. 65458 | LIVING UNIT FCR |
|---|---|---|---|

SUBJECTIVE: Candidia better c Nystatin

DATE 12-15-94   TIME

PROBLEM 1 2 _____
PLAN / ORDERS

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ___/___

Continue Nystatin x 1 mo.

Nystatin 500,000 u T a day
x 30 days (Cell...
RTC in 1 month /Sive...

ASSESSMENT: Candidiasis

SIGNATURE:
NURSE: Rose Smith RN
P.E.: Macen
PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

Exhibit 33

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunsilius, Wayne | 65458 | FCF |

**SUBJECTIVE:** Conditions continue to improve

**DATE:** 2-10-95   **TIME:**

PROBLEM 1 2 _____
PLAN / ORDERS

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P _____ /

el cyratoid rash (l) ankle.

- Triamcinolone Oint BID To rash on ankle. x 30 Day
- Renew Nizoral 200 mgm daily x 30 Day
- RTC 3 wks / (signature)

**ASSESSMENT:** Conditions, generalized

SIGNATURE:
NURSE:
P.E.:
PHYSICIAN:
Rx NO.

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brunsilius, Wayne | 65458 | FCF |

**SUBJECTIVE:**

**DATE:** 1-27-95   **TIME:**

PROBLEM 1 2 _____
PLAN / ORDERS

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P _____ /

RTC in 2 wks. (signature)

SIGNATURE:
NURSE:
P.E.:
PHYSICIAN:
Rx NO.

Conditions

**'ING TO THE TOP OF THE SHEET.**

Dr. macklin.                    Exhibit 34

DC Form 78 (2/93)  / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME Bruninder, wayn | INMATE NO. 65458 | LIVING UNIT FCF |
|---|---|---|---|

SUBJECTIVE:

GU problem

DATE: 3-23-9[?]
TIME:

PROBLEM 1 2 _____
PLAN / ORDERS

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P ___/___

Refer To Dr. McGary, chronic
cou = need for GU consult

SIGNATURE:
NURSE: _____

ASSESSMENT:   Hypochondriasis.

P.E.: _____

PHYSICIAN: _____
Rx NO.

---

| PRICARE CODE NO. | NAME Bruninder Wayn | INMATE NO. 65455 | LIVING UNIT FCF |
|---|---|---|---|

SUBJECTIVE:   Dysuria = frequency.

DATE: 3-7-95
TIME:

PROBLEM 1 2 _____
PLAN / ORDERS

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P ___/___

Pyridium 100 mg po TX
= Tid X 10 days

- Dermatitis of ankle improving
- Advised to drink
  cranberry juice if available.

SIGNATURE:
NURSE: _____

ASSESSMENT:   ✓ Chronic uncomplicated

P.E.: _____

PHYSICIAN: _____
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

Exhibit 36.

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME Brunselius, Wayne | INMATE NO. 65458 | LIVING UNIT FcF |

**SUBJECTIVE:**
Working in kitchen – hit arm on desk about 30 min ago.

**DATE** 5-22-95  **TIME** 3:15 PM

PROBLEM 1 2 _____
PLAN / ORDERS

**OBJECTIVE:** Temp. ____ Pulse ____ Resp. ____ B/P ___/___

has ®arm – lg area swelling
±2" below elbow –

PT – PTT in AM
ice-elevate
Darvocet N 100 – ₸ po
q6hr Prn X 48 hr

**ASSESSMENT:** ~~hema~~ hemotoma (®)arm

SIGNATURE:
NURSE: CSeekn

P.E.:

PHYSICIAN:
Rx NO.: ____, MD

---

| PRICARE CODE NO. | NAME Brunselius, Wayn | INMATE NO. 65458 | LIVING UNIT FcF |

**SUBJECTIVE:**
TC ① shin
lower leg.

**DATE** 5-16-95  **TIME** ____

PROBLEM 1 2 _____
PLAN / ORDERS

**OBJECTIVE:** Temp. ____ Pulse ____ Resp. ____ B/P ___/___

Responded before To Nystatin.

Nystatin SW roll daily
X 60 days (SM)

EC ASA ₸ gil 1"
X 30 days (SM)

**ASSESSMENT:** Tinea corporis, leg

SIGNATURE:
NURSE: ____

P.E.:

PHYSICIAN:
Rx NO.:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

Exhibit 30

Exhibit 30

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brambino, Wayne | 65458 | F.C.F |

**SUBJECTIVE:**

DATE 6/13/95   TIME 9:45 am

Ref for w/o chronic heavy
metal poisoning. C/o palps
2 d ago

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P _____ /

PROBLEM 1 2 _____
PLAN / ORDERS

HEENT: PERRLA, EOMI, PERRLA,
iris - green gray c̄ obv deposits,
fundi benign, discs sharp
↑ M. pelor, OP clear, headline
neck ① node
cv: reg
Resp: CTA
Abd: soft
MS/ext: pronounced L scoliosis

**ASSESSMENT:**

H/o chronic heavy metal poisoning
(per pt)

① Heavy metal screen
CBC, SMA-22
② Please obtain
Dr. Woell, DO ph#
from pt P Mutter Torenc
(303) 237-5231

SIGNATURE NURSE: V___ 4-6wts

P.E.:

PHYSICIAN: Dr. Jalal, DO
Rx NO.

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Brambino, Wayne | 65458 | FCF |

**SUBJECTIVE:**

"Chronic heavy metal
poisoning"

DATE 5-30-95   TIME

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P _____ /

PROBLEM 1 2 _____
PLAN / ORDERS

- Schedule c̄ Dr. Jalal for
consult re heavy metals

- Triamterene cut bid
x 30 day

SIGNATURE NURSE:

P.E.:

PHYSICIAN:
Rx NO.

**ASSESSMENT:**

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

▶◀ **Laboratories®** INCORPORATED
"Quality Results Through Exceptional People"
FAX (3 ) 792-2232
TOLL FREE (800) 793-7
LOGIN TIME: 40 AM
LOCAL (303) 792-7246
TOLL FREE (800) 793-7246

**REPOR**
COPY A

| 31-JUL-95 | 25-JUL-95 | BRUNSILIUS, WAYNE | | 65458 | 54 |
| 07/24/95 | 10:30 AM | JALIL, AL | | L0774069-0 | 74B0441- |

COLO. DEPT. OF CORRECTIONS        08455-1011
F.C.F.                            31-003
P.O. BOX 1010
CANON CITY, CO 81215        DOB: 24-MAY-41

CULTURE, BLOOD, MANGANESE, SERA

FCF

| TEST NAME | RESULT | UNITS | REFERENCE RANGE |
|---|---|---|---|

SPECIMEN SOURCE: NOT INDICATED

MANGANESE, SER:
   MANGANESE, S                     4.8
    ASSAY PERFORMED AT: NATIONAL MEDICAL SERVICES, INC.        SEE COMMENT
                2300 STRATFORD AVENUE
                WILLOW GROVE, PA. 19090-0437

CULTURE, BLOOD:
ROUTINE CULT.PRELIM.
   NO GROWTH AFTER 72 HOURS
ROUTINE CULT.FINAL:
   NO GROWTH AFTER 7 DAYS

*Exhibit 37*

ovember 1993 National Health Laboratories Incorporated   KENNETH R. HOLLOMAN, M.D., MEDICAL DIRECTOR   CAP No. 21771-01   MEDICARE No. 06-8025   CLIA No. 06D0680595

PAGE 1 FINAL REPORT FOR        BRUNSILIUS, WAYNE        08455        31-JUL-95

(9-301-

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

Exhibit 38

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
|  | BrunSiLius Wayne | 65458 | FCF |

**SUBJECTIVE:**

I've had a Headache that feels like a "VICE"

DATE: 8/8/95    TIME: 1300

PROBLEM 1 2 _____
PLAN / ORDERS

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P ____/____

see flow sheet for current Vitor signs as ordered q day. Cont to wait for B.C. (repeat) done 8/1/95 results.

START: Percogesic
ĩ – ĩĩ Po q.i.d x 10 days
Continue current orders.

SIGNATURE:
NURSE: _____ 8/8/95

P.E.:

**ASSESSMENT:** Dr Al Jali's aware of complaints of HA + will review Blood Culture results when available.

PHYSICIAN:
Rx NO.

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
|  | Brunsilius, Wayne | 65458 | FCF |

**SUBJECTIVE:**

BB Series

DATE: 8/2/95    TIME: 1940

PROBLEM 1 2 _____
PLAN / ORDERS

**OBJECTIVE:** Temp. _____ Pulse _____ Resp. _____ B/P ____/____

Called inmate over for Castor Oil 2oz given - tol. well

SIGNATURE:
NURSE: P Esqueo

P.E.:

**ASSESSMENT:**

To CTCF x ray for B. E. 8-3-95

PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

**Laboratories** INCORPORATED
"Quality Results Through Exceptional People"

(303) / 600  (800) 795-3699
FAX (30 ) 792-2232

LOCAL (303) 792-7246   LOCAL (303) 792-7246
TOLL FREE (800) 793-7   TOLL FREE (800) 793-7246
LOGIN TIME: 2:25 AM

**REPORT**
COPY A

| 15-AUG-95 | 15-AUG-95 | BRUNSILIUS, WAYNE | | 65458 | 54 | M |

| 08/14/95 | 6:30 AM | SMYRL, MD | | L0788082-9 | 7509663-7 |

COLO. DEPT. OF CORRECTIONS      08455-1011      HYPOTHYROID PROFILE.
F.C.F.                          15-004
P.O. BOX 1010
CANON CITY, CO 81215      DOB: 24-MAY-41

DOB 5-24-41

| TEST NAME | RESULT | UNITS | REFERENCE RANGE |
|---|---|---|---|
| T4, T3U, T7: | | | |
| T3 UPTAKE | 27.1 | % | 25.0-35.0 |
| T4 (RIA) | 8.7 | MCG/DL | 4.5-12.5 |
| T-7 | 2.4 | | 1.2-4.2 |
| TSH(IRMA): | | | |
| TSH(IRMA) | 6.3 HIGH | mcIU/mL | 0.4-6.0 |

Exhibit 39

November 1993 National Health Laboratories Incorporated   KENNETH R. HOLLOMAN, M.D., MEDICAL DIRECTOR   CAP No. 21771-01   MEDICARE No. 06-8025   CLIA No. 06D0680596

PAGE 1 FINAL REPORT FOR      BRUNSILIUS, WAYNE      08455      15-AUG-95

Exhibit 40

**CONFIDENTIAL**

BRUNSILIUS, Wayne    CMHIP/112349    FCF/65458

**REQUEST FOR CONSULTATION**

| To: Med          Physician or Service | From: FCF          Physician or Service | Date: 10/5/95 |

Psychiatric Diagnosis: _____

Chief Complaint, Findings, Information Desired:

7/5/95 189# 5'7¾" Allergic PCN 98⁴ -76 -16   120/8 G

MEDICAL CLINIC 10/05/95: This is a 54 y/o Caucasian male who was referred to medical clinic with a history of having been exposed to heavy metals while working at (Rocky Flats) in the 1980's and severe kyphoscoliosis. His records indicate that he was in fact intoxicated with some metals at the time and underwent chelation therapy. He claims to have neurological and behavioral effects from same. He claims he was given a lot of antibiotics and suffered fungus infection from same and is still suffering from same. The patient is very verbal and stated about the mercury poisoning he did have and the numbness of his extremities at that time and that his memory was also effected, his hearing and his eye sight. He said he suffered headaches and had GI problems in conjunction with same.

O.   TPR of 98.4, 76, 16, B/P 120/80, height 5' 7 3/4", 189 pounds. Skin is dry, warm to touch, normal turgor and elasticity, presence of some excoriation on the lower legs, no discharge. HEENT: no significant findings. Neck is supple, no venous distention, no thyromegaly. Lungs are clear to percussion and ascultation. Heart: regular heart tones. No murmurs, rub or gallop. Abdomen is protuberant, obese, no areas of muscular guarding or tenderness. No hepatosplenomegaly. normal bowel sounds. Extremities: no edema, cyanosis or clubbing. DTR's equal and active. Plantar response flexor.

A.   1. History of exposure to heavy metals (in the 1980's with status post chelation therapy).
     2. Severe kyphoscoliosis.

P.   1. Heavy metal evaluation (blood in urine).
     2. Neurology referral. Patient states he's going to be sent to the University Hospital for further evaluation by the facility physician.
                                                        /ag
                                         Z. David, M.D.

Visit-99223
DX: HX of heavy metal exposure w/ S/P chelation therapy

Brunsilius, Wayne
65458.DOC

**LabCorp**
Laboratory Corporation of America

(303) 792-2      (800) 795-3699
FAX (303) 7      232
LOGIN TIME: 2:56 AM

(303) 792-7247      (800) 793-7246
TOLL FREE      CLIENT BILLING
(800) 793-7247      (800) 645-8802

REPORT
COPY A

| 14-MAR-96 | 12-MAR-96 | BRUNSILIUS, WAYNE FCF | 65458 | 54 |
|---|---|---|---|---|
| 03/11/96 | 6:00 AM | MARTINEZ, DR | F0912667-8 | 7806920 |

COLO. DEPT. OF CORRECTIONS      08455-1011
F.C.F.      14-001
P.O. BOX 1010
CANON CITY, CO 81215      DOB: 24-MAY-41

ACP,CBC,HDL,
HYPOTHYROID PROFILE,
FREE RBC PROTOPORPHYRIN,
HEAVY METALS SCREEN.

900      FCF

| TEST NAME | RESULT | UNITS | REFERENCE RANGE |
|---|---|---|---|
| HEAVY METALS SCREEN: (Continued).  Lead, Urine (Continued). | | | |
| Lead, Urine (24 Hr) | 1 | mcg/24 Hr | 0-80 |

PERFORMING LABS LEGEND :

BN   LABCORP
1447 YORK COURT
BURLINGTON, NC 27215

Exhibit 41

June 1996 Laboratory Corporation of America   KENNETH R. HOLLOMAN, M.D., MEDICAL DIRECTOR   CAP No. 21771-01   MEDICARE No. 06-8025   CLIA No. 06D0680595

PAGE 3 FINAL REPORT FOR   BRUNSILIUS, WAYNE FCF   00.55   14-MAR-96

**LabCorp**
Laboratory Corporation of America

ENGLEWOOD (303) 792-?
FAX (303) 32

GRADO SUITE (800) 795-3699

LOCAL (303) 792-7247
TOLL FREE (800) 793-7247

PATIENT BILLING (303) 793-7246
CLIENT BILLING (800) 645-8902

**REPORT**

COPY A

LOGIN TIME: 12:45 AM

| 11-JUN-96 | 06-JUN-96 | BRUNSILIUS, WAYNE | 65458 | 55 | M |
| 06/05/96 | 8:00 AM | QUAKENBUSH, DR | F0912761-3 | 7932734- |

REQUISITION NO

COLO. DEPT. OF CORRECTIONS
F.C.F.
P.O. BOX 1010
CANON CITY CO 81215

08455-014
11-049

DOB: 24-MAY-41

VITAMIN B-12, FOLATE, TSH,
RPR SEROLOGY, IMMUNOELEC I,
FERRITIN.

FCF

| TEST NAME | RESULT | UNITS | REFERENCE RANGE | |
|-----------|--------|-------|-----------------|---|
| VITAMIN B-12: | | | | |
| VITAMIN B-12 | >2000 HIGH | PG/ML | 250-1100 | |
| FOLIC ACID: | | | | |
| FOLATE | 11.6 | NG/ML | >2.8 DEFICIENT <2.8 | |
| TSH: | | | | |
| TSH | 4.62 | uIU/ml | 0.35-5.50 | |
| PLEASE NOTE THE NEW REFERENCE RANGE FOR TSH. (EFFECTIVE 3/6/96) | | | | |
| RPR SEROLOGY: | | | | |
| RPR | NR | | NON-REACTIVE | |
| IMMUNOELEC I: | | | | |
| Immunoglob. G, QN, S | 1004 | mg/dL | 540-1480 | BN |
| Immunoglob. A, QN, S | 136 | mg/dL | 65-380 | BN |
| Immunoglob. M, QN, S | 91 | mg/dL | 45-260 | BN |
| Protein, Total | 7.0 | g/dL | 6.0-8.5 | BN |
| Albumin | 3.9 | g/dL | 3.2-5.6 | BN |
| Alpha-1-Globulin | 0.3 | g/dL | 0.1-0.4 | BN |
| Alpha-2-Globulin | 0.8 | g/dL | 0.4-1.2 | BN |
| Beta Globulin | 0.7 | g/dL | 0.6-1.3 | BN |
| Gamma Globulin | 1.3 | g/dL | 0.5-1.6 | BN |
| M-Spike | | g/dL | | |
| Not Observed | | | Not Observed | BN |
| Globulin, Total | 3.1 | g/dL | 2.0-4.5 | BN |
| A/G Ratio | 1.2 | | 0.7-2.0 | |
| IEP Interpretation: | | | | BN |
| An apparent normal protein immuno- | | | | |
| electrophoresis. Kappa/lambda typing | | | | |
| is normal. | | | | |
| Note: | | | | |
| Protein electrophoresis scan | | | | BN |
| and IEP photograph will follow | | | | |
| via mail. | | | | |
| FERRITIN: | | | | |
| FERRITIN | 220 | ng/ml | 22-322 | |

Exhibit 42

June 1996 Laboratory Corporation of America    KENNETH R. HOLLOMAN, M.D., MEDICAL DIRECTOR    CAP No. 21771-01    MEDICARE No. 06-8026    CLIA No. 0600680595

PAGE 1 FINAL REPORT FOR BRUNSILIUS, WAYNE    CONTINUED



SEC. 4 CONSULT (Rev. 11/93)

*faxed to Suzanne 7/31/96 + copy to Linda*

**DC**

Aristedes W. Zavaras
Executive Director

Roy Romer
Governor

## STATE OF COLORADO
### DEPARTMENT OF CORRECTIONS
### CONSULTING PHYSICIAN'S REPORT FORM

RE:     INMATE NAME   Brunsilius, Wayne

DOC#:  65458

DOB:  5/24/41

DATE:  7/30/96                          *Exhibit 43*

Dear Dr:  PFT c̄ + s̄ bronchodilators

We are asking that you evaluate the inmate for the condition stated below and give us your opinion regarding further evaluation or care.

45 y/o c̄ reported #/o heavy metal exposure who relates #/o emphysema "2° cd exposure" in pt c̄ past #/o tobacco use

If the patient requires any further laboratory or radiologic testing, please contact us by telephone or by note on the reverse side for coordination as we have agreements with several different facilities for those services. If you feel the patient is in need of immediate hospitalization, please call and advise us.

We would appreciate your writing a legible brief note on the back of this letter regarding your evaluation, assessment and recommendations so it can be returned to our facility with the inmate and there is not a major delay in follow-up. Your detailed report, if applicable, may be sent later.

We recognize the doctor/patient relationship is very important : however, due to limitations we have regarding services that are provided by the DOC and also transportation issues, we ask that you not discuss withe the inmate specific types of care, recommendations of specific dates for follow-up . These can pose security problems for the system i.e., escape ,as well as set up expectations that may not be fulfilled. Please contact us directly to set up any follow-up appointments of you may contact us if you have any questions

PLEASE SEND THE FINAL REPORT TO:
### STATE OF COLORADO DEPARTMENT OF CORRECTIONS
### MEDICAL TRANSPORT SCHEDULER

Thank you very much for your assistance.

_____ MD        FCF          *next avail on site*
Department of Corrections Physician    Facility                    *C8-15-96*

Circle Scheduling Priority:    I    II    III    IV    V          *bw*

31218    Distr: White-Med. Rec.,    Canary-Consult. Phys.,    Pink-Trans. Sched.





SEC. 4 CONSULT (Rev. 11/95)

Roy Romer
Governor

Aristedes W. Zavaras
Executive Director

# STATE OF COLORADO
## DEPARTMENT OF CORRECTIONS
### CONSULTING PHYSICIAN'S REPORT FORM

RE:  INMATE NAME _Brunslins, Wayne_

DOC#: _65458_

Exhibit 44

DOB: _5/24/41_

DATE: _7/30/96_

Dear Dr: _Endo - Metabol - Bone Dz_

We are asking that you evaluate the inmate for the condition stated below and give us your opinion regarding further evaluation or care.

_45 y/o ♂ "/s heavy metal/hazardous material exposure 1980's_
_r review scoliosis c evoy T knee exposure (por st) knee_
_eval + osteoporosis_

If the patient requires any further laboratory or radiologic testing, please contact us by telephone or by note on the reverse side for coordination as we have agreements with several different facilities for those services. If you feel the patient is in need of immediate hospitalization, please call and advise us.

We would appreciate your writing a legible brief note on the back of this letter regarding your evaluation, assessment and recommendations so it can be returned to our facility with the inmate and there is not a major delay in follow-up. Your detailed report, if applicable, may be sent later.

We recognize the doctor/patient relationship is very important : however, due to limitations we have regarding services that are provided by the DOC and also transportation issues, we ask that you not discuss withe the inmate specific types of care, recommendations of specific dates for follow-up . These can pose security problems for the system i.e., escape ,as well as set up expectations that may not be fulfilled. Please contact us directly to set up any follow-up appointments of you may contact us if you have any questions

## PLEASE SEND THE FINAL REPORT TO:
### STATE OF COLORADO DEPARTMENT OF CORRECTIONS
### MEDICAL TRANSPORT SCHEDULER

Thank you very much for your assistance.



JUL 31 1996

_A. Salil_ MD
Department of Corrections Physician

_FCF_
Facility

Circle Scheduling Priority:   I       II       III       IV       Ⓥ

31218    Distr: White-Med. Rec.,   Canary-Conslt. Phys.,   Pink-Trans. Sched.

# LabCorp
Laboratory Corporation of America

ENGLEWOOD, COLORADO 80111
(303) 792-2600    (800) 795-3699
FAX (303) 792-2...
LOGIN TIME: 11:47 PM

(303) 792-7247
TOLL FREE
(800) 793-7247

(800) 793-7246
CLIENT BILLING
(800) 645-8902

**REPORT**
COPY A

| 02-APR-96 | 01-APR-96 | BRUNSILIUS, WAYNE | | 65458 | 54 | M |

| 04/01/96 | 6:20 AM | AL-JALIL, DR | | F0912482-0 | 7835772- |

COLO. DEPT. OF CORRECTIONS          08455-1011          HYPOTHYROID PROFILE.
F.C.F.                                              02-003
P.O. BOX 1010
CANON CITY, CO 81215          DOB: 24-MAY-41

| TEST NAME | RESULT | UNITS | REFERENCE RANGE |
|-----------|--------|-------|-----------------|
| T4,T3U,T7: | | | |
| T3 UPTAKE | 27.1 | % | 25.0-35.0 |
| T4 (RIA) | 8.6 | MCG/DL | 4.5-12.5 |
| T-7 | 2.3 | | 1.2-4.2 |
| TSH: | | | |
| TSH | 6.49 HIGH | uIU/ml | 0.35-5.50 |

PLEASE NOTE THE NEW REFERENCE RANGE FOR TSH. (EFFECTIVE 3/6/96)

Exhibit 45

June 1995 Laboratory Corporation of America    KENNETH R. HOLLOMAN, M.D., MEDICAL DIRECTOR    CAP No. 21771-01    MEDICARE No. 06-8025    CLIA No. 06D0660595

PAGE 1 FINAL REPORT FOR   BRUNSILIUS, WAYNE     08455   02-APR-96

 **southerncoloradoclinic**

Exhibit 35 A

November 13, 1996

**SOUTHSIDE CLINIC**
2002 Lake Ave.
Pueblo, Colorado 81004
560-7111

**NORTHSIDE CLINIC**
41 Montebello Rd.
Pueblo, Colorado 81001
584-7200

**ENDOSCOPY SURGERY CENTER**
2002 Lake Ave.
Pueblo, Colorado 81004
560-7130

**URGENT CARE CENTER**
41 Montebello Rd.
Pueblo, Colorado 81001
584-7222

**PHYSICAL THERAPY CENTER**
41 Montebello Rd.
Pueblo, Colorado 81001
584-7200

**HERRINGTON & SCHULTZ**
110 East Routt Ave.
Pueblo, Colorado 81004
544-2842

Al-Jaleel, M.D.
Fremont Correctional Facility
P.O. Box 999
Canon City, Colorado 81215

RE: Wayne Brunsilius
Dept. of Corrections #: 65458
BD: 05/24/41
Med. Rec. 18-56-85

Dear Dr. Al-Jaleel:

I wanted to let you know of results of laboratory studies drawn on Mr. Brunsilius as a result of his visit with me on November 4, 1996. His serum testosterone level was normal at 360.7 ng/dl (normals 241 to 827), but his TSH was again elevated at 6.02 (normals 5.1 or less).

Based on this and his past increase of TSH, I would suggest simply starting him on Synthroid 0.075 mg daily. I would recommend a recheck of thyroid studies on him in approximately two months. If there are questions, please feel free to contact me.

Sincerely,

Kenneth D. Dernovsek, M.D.
Endocrinology

KDD/scmt13

*Exhibit 46*

WAYNE BRUNSILIUS                    #65458                              FCF

**DERMATOLOGY CLINIC (4-13-96):** The patient has an eczematoid plaque without elevated borders and with some scaling, but with much secondary excoriation on the left pretibial leg. He states that he has had this for five years, and it has come and gone. He tells me that it is a fungus. He saw an environmental medicine doctor previously who said he needed it biopsied. He is being evaluated for radioisotope exposure at Rocky Flats.

**IMPRESSION:**  Clinical impression is pretibial eczema.

**RECOMMENDATION:**  He is started on Temovate ointment bid. I told him it probably would need im and/or po steroids to clear; however, he said he did not want steroids as a doctor had once told him it would damage his kidneys. He is to return next clinic.

James McCoy, M.D.
Dermatology Consultant

Dict: 4-13-96
Recd: 4-17-96
Typd: 4-17-96/msb

RECEIVED
APR 2 9 1996

DEPARTMENT OF CORRECTIONS
INTEGRATED PROGRESS NOTES

Sec. 4. Int/PN (12/

*Exhibit 49*

NAME _____

DOC # _____

| Date | Problem Number | |
|------|---------|---|
| 1-28-99 | | *Records for Brandlun are need all from:* |
| | | *Nuclear Medicine, Dept. Radiology* |
| | | *University Hosp* |
| | | *4200 E 9th av* |
| | | *Denver CO (80262)* → 80262 |
| | | *Ask for all records of X ray densitometry and any radionuclide scans or body scan counting (e.g. for evidence of environmental isotope exposure) done on _____* |
| | | *date gen T/m* |
| | | *1-8-99* |
| | | *TX gen* |

31238

 

EXhibit 48

## COLORADO STATE DEPARTMENT OF CORRECTION
### AUTHORIZATION TO RELEASE/REQUEST MEDICAL INFORMATION

Sec. 5 HR/Req

I, _BRUNSILIUS, WAYNE_ DOB _5/24/42_ DOC # _65458_ FACILITY _KCCC_
(Please Print)

SS# _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_

Authorize the Department of Corrections to __X__ release __X__ request

medical/mental health records (to/from) _University Hospital, Nuclear Medki_
_Dept. of Radiology, 4200 E 9th_ DENVER, CO. 80262 NAME OF PERSON OR ORGANIZATION.

Extent or nature of information, please include dates of service requested.

occurance date
1-8-97.

__X__ Copy of History and Physical, Dis. Summary and Procedure Note.
__X__ Copy of Ambulatory Health Record.
_____ Copy of Medical/Mental Health Record–Records released for continuity
__X__ OTHER _all records of X-Ray Readiton_ of care when DOC receives info.
_& any radio nuclide scans or Body scans according for_

see attach paper 1-28

When Dept. of Corrections requests information mail to: _environmental exposures_ _paper 1-28_

KCCC  49777 Road V / P.O. 309 Burlington, CO
~~MEDICAL DEPT~~ - % Wayne BRUNSILIUS     80807
DOC # 65458
Requested by Dr. McKinley

I understand that the information to be released may include HIV infections and Drug and Alcohol documentation.

I certify that this request has been made voluntarily and that the information given above is accurate to the best of my knowledge. I understand that I may revoke this authorization at any time, except to the extent that action has already been taken to comply with it. This release will remain in effect for 90 days, unless specified in writing for a shorter time frame.

I make this consent upon the premise that all disclosure made pursuant to the authority granted by this consent shall be accomplished by a written notice which states as follows:

"This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Fed. Regulation (42 CFR, part 2) prohibits you from making any further disclosure of it without specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose."

I hereby release the health care provider from any liability which may result from furnishing the information requested as authorized in this release.

I have read the above and foregoing PATIENT'S CONSENT FOR DISCLOSURE OF CONFIDENTIAL INFORMATION and I do hereby acknowledge that I am familiar with and fully understand the terms and conditions of this consent.

Date _2/18/99_  INMATE'S NAME _Wayne Brunsilius_

WITNESS _Rose Dohler, Medical Recv Clerk_

31215   Dist.   White-Med. Rec.   Canary-Inmate Copy

# UNIVERSITY HOSPITAL

*We practice what we teach*

Nuclear Medicine
Box A-034
4200 East Ninth Avenue
Denver, Colorado 80262

MRN: **1337994**
Name: **BRUNSILIUS, WAYNE**
Patient type: **O**
Acct: 0102563781
DOB: 05/24/41

**BONE DENSITY STUDY NM**
Exam Date & Time:     01/08/97 16:29

Service: OTHER OUTSIDE SERVICES
FC: H

DIANE ALJILIL
DEPT OF CORRECTIONS, PO BOX 1010
CANYON CITY, CO
81215-1010

*65458*
*FCP*

*Exhibit 49*

Referral Diagnosis: Osteoporosis.

Procedure: L-spine and right hip bone density measurements were obtained
using dual radiographic absorption technique.  Note: Fracture risk is
related to the comparison of the patient's bone mineral density with that of
young adults, not age matched controls.   Note that the request was for a
bone mineral density of the hip and forearm but that the equipment and
procedure available in the department measures bone mineral density of the
hip and lumbar spine.

Findings:  Due to the severe scoliosis of the lumbar vertebrae, the bone
mineral density value for the grouped lumbar vertebrae is felt to be
inaccurate.  For that reason we are using the bone mineral density of L3
because it is below the region of most severe curvature. The bone mineral
density of the L3 vertebra is 1.104g/cm2.  This is 89% of the mean value for
young adults (1.1 standard deviations below mean value) and 94% of the mean
value for age matched controls.

Right femoral neck bone mineral density is 0.82g/cm2.  This is 76% of the
mean value for young adults (2.1 standard deviations below mean value) and
82% of that for age matched controls.

Impression: Using World Health Organization definitions, these values
represent osteopenia (osteopenia is a bone mineral density between 1 and 2.5
standard deviations below mean values for young adults).

Req Phys: ALJILIL, DIANE  UN: ALJIDI
Resident: JEANNIE KINZIE, M.D.
Interpreted by: ROBERT A. QUAIFE, M.D. Date: 1/9/97
Electronically Signed By: ROBERT A. QUAIFE, M.D. 01/14/97
Trans:09419H 01/10/97
09419H 01/10/97 13:32
11955 01/10/97 19:36

Order: 193892
Result: 167977
Addendum: 0
UN: 776-02752
ICD9 Code(s):

CPT Code: 76075

RECEIVED
JAN 2 1 1997

VERIFIED

University of Colorado Health Sciences Center

1

# AP SPINE RESULTS
# LUNAR CORPORATION
### 313 W. BELTLINE HWY., MADISON, WI  53713

PATIENT ID: brunsilius
NAME: brunsilius, wayne

SCAN:      3.6    01/08/97
ANALYSIS:  3.6    01/08/97





ID: brunsilius, wayne   SCAN DATE: 01/08/97

### L2-L4 Comparison to Reference

| L2-L4 BMD (g/cm²)[1] | 1.308 ± 0.01 |
|---|---|
| L2-L4 % Young Adult[2] | 105 ± 3 |
| L2-L4 % Age Matched[3] | 111 ± 3 |
| L2-L4 Osteoporotic Centile | 0 |

**LUNAR®**   IMAGE NOT FOR DIAGNOSIS

NO PREVIOUS

| | | | | |
|---|---|---|---|---|
| Age (years).......... | 55 | Large Standard...... | 278.90 | Scan Mode............ | Medium |
| Sex................. | Male | Medium Standard..... | 207.30 | Scan Type........... | DPX |
| Weight (lb)........ | 185.0 | Small Standard..... | 147.94 | Collimation (mm).... | 1.68 |
| Height (in)........ | 67 | Low keV Air (cps)... | 759287 | Sample Size (mm).... | 1.2x 1:2 |
| Ethnic............. | White | High keV Air (cps).. | 470076 | Current (uA)........ | 750 |
| System............. | 6133 | Rvalue (%Fat)....... | 1.354(18.9) | | |

| REGION | BMD[1] g/cm² | Young Adult[2] % | Z | Age Matched[3] % | Z |
|---|---|---|---|---|---|
| L1 | 1.219 | 105 | 0.49 | 111 | 1.02 |
| L2 | 1.320 | 106 | 0.66 | 112 | 1.19 |
| L3 | 1.104 | 89 | -1.13 | 94 | -0.60 |
| L4 | 1.435 | 116 | 1.62 | 122 | 2.15 |
| L1-L2 | 1.273 | 106 | 0.60 | 112 | 1.13 |
| L1-L3 | 1.222 | 101 | 0.10 | 107 | 0.63 |
| L1-L4 | 1.288 | 106 | 0.56 | 111 | 1.09 |
| L2-L3 | 1.224 | 99 | -0.14 | 104 | 0.39 |
| L2-L4 | 1.308 | 105 | 0.56 | 111 | 1.09 |
| L3-L4 | 1.302 | 105 | 0.52 | 111 | 1.05 |

1 - See appendix E on precision and accuracy. Statistically 68% of repeat scans will fall within 1 SD.
2 - USA AP Spine Reference Population, Ages 20-40. See Appendices.

# FEMUR RESULTS
## LUNAR CORPORATION
### 313 W. BELTLINE HWY., MADISON, WI   53713

PATIENT ID: brunsilius
NAME: brunsilius, wayne

SCAN:        3.6      01/08/97
ANALYSIS:    3.6      01/08/97



ID: brunsilius, wayne   SCAN DATE: 01/08/97



NECK Comparison to Reference

BMD (g/cm²) — AGE (years)

| | |
|---|---|
| NECK BMD (g/cm²)[1] | 0.815 ± 0.02 |
| NECK % Young Adult[2] | 76 ± 3 |
| NECK % Age Matched[3] | 82 ± 3 |
| NECK Osteoporotic Centile | 14 |

**LUNAR®**   IMAGE NOT FOR DIAGNOSIS

VO PREVIOUS

| | | | | | |
|---|---|---|---|---|---|
| Age (years)........ 55 | Large Standard...... 278.90 | Scan Mode........... Medium |
| Sex................ Male | Medium Standard..... 207.30 | Scan Type........... DPX |
| Weight (lb)........ 185.0 | Small Standard...... 147.94 | Collimation (mm).... 1.68 |
| Height (in)........ 67 | Low keV Air (cps)... 759287 | Sample Size (mm).... 1.2x 1.2 |
| Ethnic............. White | High keV Air (cps).. 470076 | Region height (mm).. 60.0 |
| System............. 6133 | Rvalue (%Fat)....... 1.359(16.6) | Region width (mm)... 15.0 |
| Side............... Right | Current (uA)....... 750 | Region angle (deg)... 56 |

| | | | |
|---|---|---|---|
| NECK | : BMCˢ (grams) = 5.07 | AREAˢ (cm²) = | 6.23 |
| WARDS | : BMCˢ (grams) = 2.99 | AREAˢ (cm²) = | 4.31 |
| TROCH | : BMCˢ (grams) = 13.72 | AREAˢ (cm²) = | 17.74 |

| REGION | BMD[1] g/cm² | Young Adult[2] % | Z | Age Matched[3] % | Z |
|---|---|---|---|---|---|
| NECK | 0.815 | 76 | -2.13 | 82 | -1.45 |
| WARDS | 0.695 | 72 | -2.04 | 84 | -1.03 |
| TROCH | 0.773 | 83 | -1.43 | 85 | -1.25 |

1 – See appendix E on precision and accuracy. Statistically 68% of repeat scans will fall within 1 SD.
2 – USA Femur Reference Population, Ages 20-45. See Appendices.
3 – Matched for Age, Weight(males 50-100kg; females 35-80kg), Ethnic.

Exhibit 7

The Colorado Department of Corrections                    March 22, 2005
Cathie Holst
ATC Coordinator
2862 s. Circle Dr.
Colorado Springs, Colorado  80906

re:  ADA Medical conditions

Dear Cathie Holst,
      I was directed to write you in effort to seek assistance for the severe medical
conditions of radiation and heavy metal poisoning not being treated by medical, and
the resulting damages that has placed me under the ADA.
      The severe mercury poisoning has damaged and destroyed all the nerves in my legs
created kidney problems and damages, resulting from the fungus infection have created
thyroid problems and hypocalcemia, colitis, esophagitis, meningitis, peritonitis and
moniliasis, resulting from the failure to provide proper medical care at Sterling
Correctional facility and the appleton correctional Facility in Minnesota.
      Before my arrival at the Sterling correctional Facility, on 9/9/99, I had been
under medical care and therapy of Dr. McKinley at the CCA Kit Carson Correctional
FAcility in Burlington. Dr. MCKinley had placed me in Intensive care because of the
failure to provide proper medical care at the CCA, Appleton corr. facility in Minnesota
where I was allowed to progress into Sepsis, blood poisoning of bacterial spinal Men-
ingitis, including the inflammation form of meningitis, whch is bacterial spinal
meningitis.
      Upon arrival at the Sterling correctional Facility on 9/9/99 allseven prescript-
ions provided by DR. McKinley were taken and never returned, whtch include diflucan
200 mg's per day card of 30, and calcium and magnesium for the hypocalcemia. Diflucan
is used in treatment of meningitis, both the blood poisoning form and the inflammat-
ion form, which I had suffered. A medical grievance was filed and all three steps were
completed, to no avail. The medical at Medcal at stering knew that I would regress
backinto bacberlial spinal meningitis, as that is what the disease moniliasis does
when not properly treated. On June 2003 I was taken to court, and had a private doctor
examine me and was          suffering bacterial spinal meningitis, and contagious.
the medical transfer report also stated that I suffered from the conditions of heavy
metal poisonings and the disease of candidiasis, hypothroidism, and scolosis öf the
spine. Upon return I was given 7 days a month of nizoral for the meningitis, which
is not therecommended treatment of 20 per month, then off 10 day, then 20 days of
nizoral as stated by the PHsician desk reference.
      I have made repeated request for medical assistance and to have the elisa tests
compmleted by the doctors who   refuse to comply, even though these test were completed
at the fremont correctional facility and the proper treatment provided after 4 years
of suffering by a doctor whom the facility had brought in on part time.
      My health conditions has worsen and now the kidneys are began to fail again as
they did in appleton Minnesota, in the CCA Prairie correctional facility. As can be
seen, it is the doctor who provides the treatment, and these doctors, Dr. Frantz and
Singh refuse to provide the orthodox prescribed procedure, and by their deliberate
indifference, and malicious and sadistic intent, has breached of fiduciary duty, the
wanton disregard för life, and conspiracy to fraudulently induce cancer resulting from
their failure to provide proper therapy, has inflicted the physical and mental injury
or emotional distress causing physical injury, and physical damages with the intentiona
violatton of federal law.
      This infliction of assault on this person and the battery by abuse of discretion
and authority by both doctors, can be seen in the fraud implimented against this person
by precribing antiflammatory drugs, and not giving those drugs for the purpose of

Case No. 1:92-cv-00870-CMA-MEH   Document 5110   filed 07/18/11   USDC Colorado   pg 68 of 73

The Colorado department of Corrections                    March 22, 2005
Cathie HOlst

falsifying records, where the head of medical services Judy Bullard did tamper with
records, by stripping, shredding records and tests to cover up and suppress material
evidence. Where DR. Frantz did renew those drugs without this persons knowledge or
request, or having taken these drugs that were provided in fradulent and with the
purpose of denying all medical treatment to inflict damages and death. This attempt
of murder by medical practitioners was mal-practice, with the intent to inflict
bodily damages of death or cancer by their fraudulent and sadistice actions.

I have sent requests to the new medical director, Beverly Dowis, to serve
papers for this actions but no response has been provided for the grievance board of
the state colorado medical board.

My Case manager has been notified, Mr. Thomson and as I have only 2 points, and
my case is in the colorado appeals court, on appeal, I am in need of medical treatment
for the damages inflicted here by these who refuse to follow the oath to supply
medical care, and the federal law.

Sincerely,

Wayne Brunsilius REg. # 65458 Unit 31
P.O. BOx 6000
Sterling, Colorado 80751

## COLORADO INTER-CORRECTIONAL MEDICAL SUMMARY TRANSFER REPORT

NAME: *Brunsilius, Wayne 65458*   DATE OF BIRTH: *5-24-41*  DATE: _____

TRANSFERRED FROM: *FCF*   TO: *Minn*

DATE OF LAST EXAMINATIONS:
(1) NURSING _____
(2) PHYSICIAN *2-7-96*
(3) DENTAL *1-30-97*

HOSPITALIZATIONS:   YES ✓   NO _____  IF YES, DATE OF LAST: _____ ?

▬▬▬▬   YES ✓  NO _____  IF YES, EXPLAIN: ▬▬▬▬▬▬

SPECIAL DIET:   YES _____ NO ✓   IF YES, EXPLAIN: _____

CURRENT MEDICAL/PSYCHIATRIC PROBLEMS:   YES _____ NO _____ IF YES, EXPLAIN: _____

*Consider yearly Bone Density Eval to follow osteoporosis per Dr Greenslade*

CHRONIC MEDICAL/PSYCHIATRIC PROBLEMS:   YES _____ NO _____ IF YES, EXPLAIN: _____

*heavy metal Poisoning per Inmate 15 yrs ago*
*Angina   Hx Atrial Fib - Scoliosis   leg eczema*

CURRENT MEDICATION:   YES *X* NO _____ IF YES, COMPLETE THE FOLLOWING

| NAME OF DRUG | DOSAGE | FREQUENCY |
|---|---|---|
| *See Med. Sheet* | | |
| | | |
| | | |

GROSS TESTING (COMPLETE THE FOLLOWING): *NoRMAL immunoelectrophoresis PATTERN Kappa, lambda typing NoRMAL*

*Blood cultures - No GROWTH*

| TEST | DATE | RESULTS |
|---|---|---|
| V.D.R.L. | *6/96* | *N.R* |
| T.B. | *5-96* | ⊖ |
| TETANUS | ? | |
| OTHER | | |

COOPERATION WITH MEDICAL/PSYCHIATRIC CARE RATING:   POOR _____ GOOD *X* IF POOR, EXPLAIN: _____

_____

_____

_____

THIS FORM COMPLETED BY: *Ross Englund RN*
Signature
*FCF*
Facility

☐ SUICIDE RISK

Original / Transferring Facility
Copy / Receiving Facility

DC Form 80 (82) / Old No. 26-155 (82)

**EMSA CORRECTIONAL CARE**

SAM Revoked

**PROBLEM LIST** 12/18/97

INMATE NAME: Brunsilius, Wayne

I.D. NUMBER: 1702C

D.O.B.: 05-24-41

ALLERGIES: Smoke/PCN

Sept 11, Exhibit 2

| Date Identified | Problem No. | Chronic (Long Term) Problems | Date Resolved |
|---|---|---|---|
| | ① | ↓ Hearing | |
| 4-22-98 | 2 | Hx radiation poisoning | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### Temporary (Usually Self-Limiting) Problems

| Prob. No. | Problem | Date of Each Occurence | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Scoliosis | | | | | | | |
| | Osteoporosis | | | | | | | |
| | Hx Angina + Atr fib | | | | | | | |
| ① | Otitis media bilat | 3/24/98 | 3/30/98 | 4/3/98 | 4/11/98 | | | |
| ② | Fungus | 6/8/98 | | | | | | |
| ③ | bilat ear pain | 8/13/98 | | | | | | |
| ④ | neck grinding | 8/13/98 | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

CC 002

Exhibit 3

**PROGRESS NOTES**

Side 2

| Date/Time | Inmate Name: Brunsilius, Wayne    ID# 1702C    D.O.B: 5/24/1... |
|---|---|
| 4/26/97 | 120/90 64-24, 9² Kidney Pain |
| | cranberry tid   Cipro b.i.d 10 days , Pyridium T.i.d |
| 5-2-97 915 | Kidney pain    118/70, 9³-70-16 |
| | S: Sore throat, Prod. cough → ? phlegm, post nasal drip, nasal sinus drainage. Better today. Started 2days, no chills   % feeling like bladder inf. |
| | O: Lg. amt. brown cerumen tolet ears, Red throat, ears dry cl, 126/104 P-76, R-... 7-97- |
| | A: Sinus congestion. |
| | P: C.T.M. ī QID x 5 days, Hytuss ī QID x 5 days PRN. 800 |
| | Contact medical if further problems. UA- to be done Monday am |
| 8/28/97 2000 | S: My ⊕ chest hurts, has hurt since p dinner. Dull pain, pretty constant. 137/86, P-92, R-24. States B/P has gone up since this am. Thinks it is from not taking magnesium anymore. |
| | O: noted above. |
| | a: ? due to poisoning? |
| | P: Refer to Dr. Crum Re Tx/Eval. Phone call made. |
| | DO Magnesium level in am. Toradol 10mg. ī TID x 2 days. |
| 8/28/97 2030 | ↓P 138/88 P-98 -    Will rest ashort awhile & Rec |
| 2100 | ↓P 132/90 P-90. Aching in both arms. Right    a review hand he has experienced numbness. O-Numb... |
| 08/29/97 0630 | S. I've had heavy metal poisoning & here is a copy of the meds the specialists put me on. I haven't been getting the magnesium in since I've been here. |
| | O. Records in chart & d/c magnesium p on transfer sheet |
| | A.² poisoning related problems. |
| | P. Magnesium level drawn. Copy made of order & placed in chart. |

7704

Side 2

**PROGRESS NOTES**

Seatth, Exhibit 3
P32

| Date/Time | Inmate Name: Brunsilius, Wayne | ID # 1702 | D.O.B. 5 1241? |
|-----------|-------------------------------|-----------|----------------|

5-20-97    c/o Colon Problem   11/6=97: 54" 64.

[illegible handwritten clinical notes]

7/21/97  1415   M.D. visit, Hemorroids, diarrhea.
T-97.9   P-74   R-18   B.P. 1R/76

[illegible handwritten clinical notes]

**EMSA CORRECTIONAL CARE**

Sect II Exhibit 3

Pg 3

## PROGRESS NOTES

| Date/Time | Inmate Name: Brousilius, Wayne · ID 81702 · D.O.B.: 05/24/19.. |
|---|---|
| 9/29/97 1400 | M.D visit re: pain in ribs T 97.4 BP 122/78 P80 R18 |
| | [illegible] rib pain [illegible] |
| | [illegible] |
| | [illegible] BID x 30 days — also |
| | [illegible] |
| | x 30 days — — |
| | [illegible] |
| | [illegible] |
| | [illegible] |
| | [illegible] |
| | [illegible] = [illegible] 4.5 mg of |
| | Elemental Calcium — |
| 10-30-97 S = | [illegible] BID |
| | [illegible] |
| | [illegible] |
| | sore — |
| O = | [illegible] |
| | [illegible] |
| | [illegible] |
| O = | [illegible] |
| | [illegible] |

CC 003

Complete Both Sides Before Using Another Sheet