IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-502
Category III
Claimant: Joseph Perez, #55587
Address of Claimant: AVCF, P.O. Box 1000, Crowley, CO 81034-1000

---

## FINAL ORDER OF SPECIAL MASTER

---

      THIS MATTER came before the Special Master for hearing on June 13, 2011. The hearing was held at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. Present were the following: Joseph Perez (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

      Claimant testified in support of his claim. Defendants presented Dr. Thomas Fisher, M.D. as a witness. Defendants offered into evidence Exhibits A through JJ, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

>> limits his or her ability to perform a major life activity.
>> C. PERMANENT DISABILITY/IMPAIRMENT
>> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant initially came into DOC custody on October 24, 1986. Claimant was placed at various facilities and discharged his sentence on February 19, 1987. Claimant returned to DOC custody on August 6, 1987. Claimant was incarcerated at various DOC facilities until his sentence was discharged on June 28, 1992.

Claimant came back into DOC custody on November 21, 1995. He was placed at the Denver Reception and Diagnostic Center (DRDC). He then was moved to the Limon Correctional Facility (LCF) on December 28, 1995. On July 15, 1997, Claimant was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He was placed on parole on April 27, 2000. Parole failed, and Claimant returned to DOC custody on June 20, 2000. Claimant was placed at the

Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado on June 21, 2000. Claimant discharged this sentence on July 25, 2001.

Claimant came back into DOC custody on June 17, 2005 and was placed at DRDC. Claimant then went to the Crowley County Correctional Facility (CCCF) in Olney Springs on October 3, 2005. He was placed on parole on December 22, 2005. Parole failed, and Claimant returned to DOC custody on July 24, 2006. Claimant was placed at FCF and then re-paroled on October 25, 2006. Claimant discharged his sentence on June 8, 2007.

Claimant returned to DOC custody on March 3, 2009. He was placed at DRDC and then transferred to AVCF on April 13, 2009. He has remained at AVCF since that date.

The Special Master received a letter from Claimant on April 17, 2010 requesting damage claim forms. Claimant was provided damage claim forms. Claimant filed separate forms for each of the four conditions set forth in the Remedial Plan. Each of the claim forms will be examined separately.

**Diabetes:** In his claim form alleging diabetes, Claimant stated, in part, as follows:

> Although I was diagnosed as Diabetic 2001 I went untreated until 2009. Now because I went untreated as a diabetic since 2001 until 2009. I have developed glaucoma and there has been severe damage done to my retina eye's nerves. In 2009, when I was made aware of my diabetes.

In response to the question concerning discrimination prohibited by the ADA, Claimant stated as follows:

> Started on 4-06-2010. On 04-08-2010. And I am still being discriminated on to this very day. Nothing has changed.

Claimant indicated that he had become disabled in 2001.

**Vision Impairment:** In his claim form on vision impairment, Claimant stated, in part, as follows:

> Due to my prolonged un-treated diabetes, my vision has deteriorated a great deal. When my blood sugars are good and under control my vision is also better. I've seen the optometrist that comes to AVCF for eye exams. He has informed me that I have glaucoma.

Claimant indicated that the discrimination he was experiencing was the unwillingness to provide him an accommodation form concerning his vision. Claimant stated in the form that he became vision disabled in June, 2009.

**Hearing Impairment:** Claimant set forth in the separate form for hearing impairment that he had become disabled in March, 2009.

> On or about March 3, 2009, I was given a physical exam. Upon completion of this exam, my hearing test showed that I needed to be referred to an audiologist to be tested because I had a hearing impairment! I was made to wait for well over a whole year's time before I was sent to see an audiologist to be tested.....

He indicated that the discrimination that occurred was related to the failure to have him promptly see an audiologist.

**Mobility Impairment:** Claimant alleges that he became mobility impaired in 2003. He has alleged that he had multiple knee surgeries and has had difficulty walking. Claimant has alleged that he was the victim of discrimination in March, 2009. "I was denied medical treatment for injuries. Therefore not only is this a form of discrimination but also a form of medical neglect."

At the hearing, Claimant testified about his disabilities. He was tested for hearing loss in March, 2009. He was determined to be hearing impaired and was provided two hearing aids. Claimant maintained that he was diagnosed as being diabetic in 2001, but he claims not to have been advised until March 5, 2009.

In his testimony, Claimant stated that he was not advised until 2009 that he had glaucoma. He also testified that he made a request for mobility accommodation in February, 2010. He further stated that he had been diagnosed with degenerative disk disease (DJD).

On cross-examination, Claimant acknowledged that he has many restrictions and health issues. Claimant stated that a vast majority of issues arose in 2009. He has received a vibrating watch and two hearing aids. He has received new glasses from DOC. He admitted that he is able to walk to the chow hall and back from his cell. He has received a cane and on occasion has been provided crutches. He has had shots for his knees.

Dr. Fisher was called as an expert witness for Defendants. He had reviewed the medical records of Claimant. He found nothing in the records prior to 2009 suggesting that Claimant was diabetic. He noted that Dr. Assen, who provides medical care at AVCF, had evaluated Claimant and determined that he was not mobility impaired.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must

establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Diabetes:** The evidence presented by both sides reflects that Claimant was diagnosed as being diabetic in 2009. There is no evidence that diabetes was diagnosed on or before August 27, 2003. Claimant's assertion that he was diagnosed in 2001 and not told until later is not supported by any other evidence. The Special Master has no jurisdiction over this part of the case because Claimant was not determined to be diabetic until 2009.

**Hearing Impairment:** Claimant was not determined to have a hearing impairment until 2009. He was tested on March 9, 2009 and determined to have a significant hearing loss that warranted two hearing aids. Claimant has not proven that he was hearing impaired on or before August 27, 2003. The Special Master has no jurisdiction over this part of the claim.

**Vision Impairment:** Claimant was diagnosed with glaucoma in 2009. No evidence was presented that Claimant was vision impaired, as defined by the ADA, on or before August 27, 2003. Claimant has worn glasses most of his life. Corrected vision is not an impairment, and there was and is no evidence that the glaucoma existed on or before August 27, 2003.

**Mobility Impairment:** By his own testimony, Claimant first sought an accommodation for mobility problems in February, 2010. Claimant has had three knee surgeries. Claimant's medical records reflect on-going problems with his knees. Claimant had DJD in his knees and experienced pain over the years.

Claimant has failed to establish that he was mobility impaired, as defined by the ADA, on or before August 27, 2003. Claimant has established that he had a medical condition extending back twenty-five years. He did not establish that he was mobility impaired on or before August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant also has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act on or before August 27, 2003. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

Claimant essentially has alleged insufficient or deficient medical care and testing. The United States Court of Appeals for the Tenth Circuit has ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. Claimant has not proven that he was the victim of discrimination on or before August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, this question does not need to be answered.

IT IS HEREBY ORDERED that the claim of Joseph Perez is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 17, 2011.**

SIGNED this 15th day of July, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master