IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-493
Category III
Claimant: Vu D. Tran, #82071
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on June 20, 2011. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Vu D. Tran (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

Claimant called as witnesses CO Justin Tolentino and Sergeant Charles Kurshbaum. Claimant also testified in support of his claim. Defendants presented the following witnesses: Jeff Peterson, Julie Russell, and Dr. Gagandeep Singh, M.D. Defendants offered into evidence Exhibits A through S, and all were admitted. At the conclusion of the hearing, the Special Master took the case under advisement. Further argument will be waived.

**I.**

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

>> limits his or her ability to perform a major life activity.
>> C. PERMANENT DISABILITY/IMPAIRMENT
>> A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>> 1. Is the claimant a disabled individual who is a member of the class?
>> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on November 18, 1993. Claimant was placed initially at the Denver Reception and Diagnostic Center (DRDC). Claimant was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado on February 3, 1994.

Claimant was moved to the Kit Carson Correctional Center (KCCC) in Burlington, Colorado on December 20, 1998. Claimant was placed at the Fremont Correctional Facility (FCF) in Canon City, Colorado on March 7, 2000. He remained at FCF until August 17, 2000 when he was moved to the Buena Vista Correctional Facility (BVCF) in Buena Vista, Colorado. On April 3, 2002, Claimant was moved to the Huerfano County Correctional Center (HCCC) in Walsenburg, Colorado. Claimant was transferred to SCF on August 1, 2006.

On April 21, 2010, the Special Master received a letter from Claimant. In that letter, Claimant wrote, in part:

> I am writing concerning my discrimination claim against the Department of Corrections. I have been incarcerated since 1993 and I lost my hearing in my left ear in 1999 due to excessive water in my ear canal. This causes my equilibrium to be so far off that I have a hard time walking, picking things up, concentrating, and am just physically off balance. A specialist at Denver General Hospital declared me 100% deaf in my left ear in 1999 after numerous audio tests, MRI's, and CAT scans. The Department of Corrections has said there is nothing they can do for me and I do not qualify for hearing aids because I am not totally deaf.

The letter was treated as a formal claim under Article XXXII of the Remedial Plan. Claimant was provided with a formal claim form to complete and return to the Special Master.

The completed claim form was received by the Special Master on May 8, 2010. Only the box for hearing impairment was checked. Claimant described his disability as follows:

> 100% deaf in my left ear. It affects my life everyday. It affects my equilibrium mostly. On some occasions it causes me to have severe migraines.

In response to the question concerning discrimination, Claimant stated as follows:

> They act as though there is nothing wrong with me and will not give me the appropriate devices needed to function normally. They quoted all the time that I am not totally deaf and there is nothing they can do.

At the hearing, Claimant called two correctional officers in support of his position. CO Justin Tolentino testified that he was aware that Claimant had one "good ear" and Claimant had difficulty hearing at times. Sergeant Kurshbaum was aware that Claimant had difficulty hearing out of one ear.

Claimant testified that he suffered hearing loss in his left ear in 1998. He testified that he had sought medical care over the years. DOC medical staff told Claimant that there was nothing that could be done. Claimant testified that he had requested a hearing aid but had not received one.

On cross-examination, Claimant acknowledged that he can hear out of his right ear. He further stated that he had been tested over the years, including referrals to specialists. He stated that he had been tested most recently in 2010.

Defendants called Jeff Peterson as a witness. Mr. Peterson is the case manager for Claimant. Mr. Peterson testified that Claimant is able to carry on a conversation without the need for a hearing aid. Julie Russell, AIC for DOC, testified by telephone that Claimant does not meet the agreed upon criteria for hearing impairment. Finally, Defendants called Dr. Singh as an expert witness. Dr. Singh reviewed the medical history of Claimant's trouble with his left ear. Dr. Singh indicated that

4

Claimant had received an MRI of his brain, as well as other tests. No cause for the hearing loss in the left ear could be determined. Audiograms reflected loss of hearing in the left ear, but not the right ear. Dr. Singh testified that one hearing aid could be counterproductive to the vertigo that Claimant has. Dr. Singh did not believe that Claimant was disabled due to hearing loss on or before August 27, 2003.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

Claimant has not established that he was disabled under the ADA on or before August 27, 2003. Claimant has had diminished hearing in his left ear since 1998. He further has had vertigo which has been treated with limited success. Throughout the intervening period since 1998, Claimant has been able to hear through use of his right ear. Claimant has not established that he met the agreed upon hearing level for consideration as hearing impaired.

Claimant has established hearing loss in his left ear. He has not established that he was disabled through hearing impairment on or before August 27, 2003, as he was able to hear through his right ear.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

5

**3. Was the Claimant discriminated against by DOC because of his or her disability?**
Claimant's main complaint is that he has not received appropriate medical care. The record reflects that he has received medical over the years since 1998. Claimant's hearing has not improved.[2]

On April 11, 2005, the United States Court of Appeals for the Tenth Circuit ruled that the ADA and Rehabilitation Act are not available for claims of substandard medical treatment. *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1143 (10th Cir. 2005). Cases involving substandard care or medical negligence must be brought under the Eighth Amendment or pursuant to state statutes. The ADA and Rehabilitation Act are statutes that prevent discrimination that is premised upon a disability. A dispute about the scope and quality of medical care cannot be resolved under the ADA and Rehabilitation Act. To the extent that Claimant is questioning the care provided to him, that is beyond the jurisdiction of the Special Masters as set forth in the Settlement Agreement. In addition, the Special Master has no jurisdiction over Eighth Amendment claims of medical malpractice or medical negligence under state law. Claimant may pursue separately any rights that he may have concerning his medical care.

Claimant has failed to prove any discriminatory action on the part of DOC that occurred on or before August 27, 2003. Claimant's concerns about the *quality* of his medical care are beyond the jurisdiction of the Special Master.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Vu D. Tran is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before October 17, 2011.**

SIGNED this 15th day of July, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

---

[2] Claimant's medical records reflect that he was provided a hearing aid in 2002. On November 15, 2002, Claimant returned the hearing aid to DOC medical staff and indicated that he did not want it.