IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

_____

Claim Number: 03-138
Category III
Claimant: Kevin Mark Bretz, #46584
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

_____

## REPORT AND RECOMMENDATION OF SPECIAL MASTER
_____

       THIS MATTER came before the Special Master on June 20, 2011 for hearing at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Kevin Mark Bretz (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

       Claimant called the following witnesses at the hearing: Lt. Bernadette Scott; Kathleen Melloh; and Claimant. Defendants called Dr. Gagandeep Singh, M.D. by telephone. Defendants also offered into evidence Exhibits A through P, and all were admitted. The Special Master took the case under advisement after presentation of closing arguments.

       Since the hearing, Claimant has filed a pleading entitled "motion for order." In that motion, Claimant alleges that he has been the victim of retaliation. Specifically, he alleges that he had various items seized on July 27, 2011. He maintains that the actions of Defendants are in retaliation for his filing of a claim in this case. This motion will be included in this Report and Recommendation.

### I.

       This claim has a long and tortured history. Claimant initially came into DOC custody on May 6, 1985 and discharged his sentence on July 3, 1985. Claimant returned to DOC custody on July 19, 1990. Claimant was placed initially at the Colorado Territorial Correction Facility (CTCF) in Canon City, Colorado. Claimant was transferred to the Limon Correctional Facility (LCF) on June 7, 1991.

Claimant remained at LCF until June 21, 1993 when he was transferred to the Centennial Correctional Facility (CCF) in Canon City, Colorado. Claimant remained at CCF until September 20, 1993 when he was moved to the Colorado State Penitentiary (CSP) in Canon City. He then was placed at the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado. On October 22, 1996, Claimant was transferred back to CSP. He returned to CCF on October 2, 2000. He remained at CCF until transferred to SCF on April 24, 2008.

Pursuant to Article XXXII of the Remedial Plan, Claimant filed a damage claim in 2005. He alleged in his claim that he was mobility impaired, vision impaired, and hearing impaired. The claim was assigned to Category III and referred to Special Master Richard Davidson to set a hearing, as provided in Article XXXII of the Remedial Plan.[1]

A hearing was held in Canon City, Colorado on February 1, 2006. Claimant offered his own testimony, as well as that of five witnesses. Defendants called two witnesses. Exhibits were submitted by both sides. The claim was taken under advisement by Special Master Davidson.

On July 23, 2007, Special Master Davidson issued his final order concerning the claim of Claimant. Special Master Davidson found that there was insufficient evidence to establish that Claimant was vision or hearing impaired. Special Master Davidson found, in part, as follows:

> 9. Of course, the key issue is whether Claimant was discriminated against by DOC because of his mobility disability. Claimant Bretz has stated that the taking of his previously issued special boots, shoes, brace, and cane had a substantial impact on his ability to utilize the services provided by the facility and his ability to walk. Defendant has offered no explanation as to the reasons for taking the boots and other medical items and refusing to return them. Not only were these items taken, but the Claimant was not even given replacement footwear. Consequently, the Special Master concludes that Claimant has been discriminated against by being deprived of the special accommodations, restrictions, and medical equipment previously provided to him by CDOC and then having the accommodations, restrictions, and medical equipment taken away by CDOC. Claimant has suffered from CDOC discrimination by having his records altered, his surgery cancelled and his pain medications terminated when the medical records clearly show the existence of serious medical problems. Such conduct is outrageous and inexcusable. It appears that one reason for this may have been to send Claimant to CSP and remove him from SCF.

*Final Order of Special Master*, p. 6. Judge Davidson then ordered as follows:

> IT IS ORDERED that, based upon the foregoing Findings of Fact and Conclusions of Law, Judgment be entered in favor of Claimant Bretz and against Defendants ordering CDOC to provide proper medical care to Claimant. Because of the unique circumstances of this case, CDOC is ordered to send Mr. Bretz to outside

---

[1] Richard Davidson resigned in late 2010 as a Special Master in this case.

2

>orthopedic and neurosurgery specialists for examination and to promptly treat Mr. Bretz as the specialists direct. The examination shall include his back, leg and ankle conditions.
>
>IT IS FURTHER ORDERED that Claimant shall be awarded the sum of $1,500.00 as compensation for his maltreatment.
>
>IT IS FURTHER ORDERED that Claimant be moved to a facility where he can receive care and where his restrictions can be accommodated.

*Final Order of Special Master*, p.7. No objection to this order was filed by Defendants or Claimant.

On January 31, 2008, Claimant filed a motion to compel. That motion was referred to Special Master Davidson. Claimant filed a motion for relief on May 22, 2008. That motion also was referred to Special Master Davidson. Based upon a review of all documents submitted by both sides, Special Master Davidson issued an order on July 17, 2008 denying both motions. *Document #3468*.

Claimant filed additional documents with the Court and Special Masters. He again alleged that he was not receiving proper medical care and accommodations. He argued that the July, 2007 order by Special Master Davidson was being violated by Defendants. Special Master Davidson held a hearing at the Sterling Correctional Facility (SCF) on November 19, 2008. An order was issued on January 27, 2009. In that order, Special Master Davidson stated, in part, as follows:

>1. Claimant remains disabled and must be furnished with his needed assistive devices and restrictions. He shall be furnished with an ankle brace, high shoes or boots and a cane. When needed, these items are to be replaced or refitted. His restrictions shall not be removed.

*Order of January 27, 2009, p.2*. Special Master Davidson determined that Defendants had referred Claimant to outside specialists and had complied with the order of July 23, 2007. Special Master Davidson did order that "the Final Order of July 23, 2007 shall remain in full force and effect." *Order of January 27, 2009*, p. 3.

Claimant continued to submit letters to the Court and Special Masters. These were held in abeyance, as a jurisdictional issue existed concerning new claims being filed. Judge Kane's order of March 23, 2010 clarified the issue and held that new claims could not be filed for anything that occurred after August 27, 2003. Such claims were to be dismissed by the Special Master and referred to class counsel.

Claimant alleged continuing problems in his filings with the Court. The undersigned Special Master assumed supervision over this claim, as the other two Special Masters had resigned. The Special Master issued an order to class counsel and requested that an investigation be conducted. A report was issued by class counsel on March 29, 2010. Class counsel restated the previous position that the motions of Claimant were within the jurisdiction of the Special Master. Class counsel further argued that the Special Master should determine if the final order was still being followed by Defendants.

The undersigned Special Master set a hearing to consider all pending motions filed by Claimant. The hearing was held at SCF on September 27, 2010. Defendants renewed their motion to dismiss and presented argument in support of their position. Defendants noted that the hearing on September 27, 2010 was the third formal review of whether they were abiding by the final and subsequent orders of Special Master Davidson.

Claimant argued at the hearing that Defendants had not complied with the 2007 order of Special Master Davidson. Specifically, he testified that he has not received appropriate medical care and has been denied further examinations by the orthopedic specialist and neurosurgeon. He further argued that he needs new boots. He further testified that SCF is not an appropriate facility for him due to his medical issues. Claimant alleged further that he had slipped in the kitchen due to improper footwear and had suffered a broken wrist. Claimant alleged on cross-examination that he was not receiving appropriate pain medications and had not received an appropriate ankle brace. He further argued that he should be entitled to additional monetary damages.

The Special Master determined that issues presented in Defendants' motion to dismiss warranted issuance of a report and recommendation. *Doc. #4893*. On January 19, 2011, Judge Kane issued an order in response to the report and recommendation. Judge Kane ruled, in part, as follows:

> 2. However, given that category of individual Montez Class claims that the Special Master identifies as having been the subject of Final Orders favorable to an inmate but with which the inmate contends Defendants have not fully complied, I CLARIFY/MODIFY the March 23, 2010 Order to affirm that the Special Master retains jurisdiction to receive and consider motions seeking the enforcement of those Final Orders. *This jurisdiction is extremely limited.* It exists solely to the extent necessary for the Special Master, on his own motion, to recommend that Defendants be ordered to comply in some specific way with an existing Final Order of the Special Master *or to recommend the imposition of sanctions* for the failure to comply (Emphasis in original).

*Order of January 19, 2011, p.2. Doc. #4960.*

Based upon the order of January 19, 2011, a new hearing was scheduled on Claimant's motion. That hearing was held at SCF on June 20, 2011. Claimant testified that he had not received the right type of ankle brace. He believed that an AFO brace was never ordered by the specialists who saw him. Claimant testified further that the recommendations of Dr. Fenton, an orthopedic specialist in Sterling, had not been followed. Claimant alleged that he cannot put on his boots without assistance. He further described his issued boots as falling apart.[2] Claimant stated that he did not believe the final order had been complied with because he had not seen independent specialists, only physicians who were on contract with DOC.

---

[2] Claimant brought his boots to the hearing and showed them to the Special Master. A hole in the sole of the shoe was clearly visible.

4

On cross-examination, Claimant testified that he believed that Special Master Davidson had ordered a different type of brace. He acknowledged that he had been provided a cane and new boots, but that he could not wear the new boots. He stated that he did not go on a day trip to Hanger Orthotics. He had refused the AFO brace.

On redirect testimony, Claimant reiterated his position that there had not been compliance with the final order issued by Special Master Davidson in July 2007. He further argued that he did not have proper shoes. Claimant maintained that he is in pain and that he has not received proper care.

Claimant called Lt. Bernadette Scott as a witness. Lt. Scott is the ADA coordinator at SCF. She testified that Claimant had been provided ADA accommodations, including new boots which he has refused to wear. Claimant also called Kathleen Melloh who is a physician's assistant. She testified that she had treated Claimant and that the new boots issued to him were appropriate.

Defendants called as a witness Dr. Gagandeep Singh, M.D. who is a physician with DOC. Dr. Singh had reviewed Claimant's medical records but had not personally examined him. Dr. Singh testified that Claimant had received ADA accommodations, including a cane and AFO brace. Dr. Singh further testified that all medications appeared to be appropriate.

Defendants also offered into evidence several pages of Claimant's medical and prison records. Claimant had not cooperated with DOC staff in further ADA evaluations. *Exhibit E*. Claimant had refused to sign for or use the AFO brace that was provided to him. *Exhibit J*. Additional testing did not indicate major physical problems. *Exhibit N*. Claimant refused in writing to go on a day trip to Hanger Orthotics to receive a new brace. *Exhibit O*.

## II.

This claim has developed a life of its own. The status of the claim also raises issues that have not been resolved as yet in this case.

In his final order of July 23, 2007, Special Master Davidson ordered four things: (1) proper medical care for Claimant; (2) examination by outside orthopedic and neurosurgery specialists and prompt treatment as recommended by the specialists; (3) compensation in the amount of $1,500; and (4) placement at a facility where Claimant could receive proper care and where his restrictions could be accommodated. There is no dispute that Claimant received $1,500 as compensation. There is no dispute that Claimant is placed in an ADA-designated facility at SCF. Claimant had requested placement at the Ft. Lyon Correctional Facility, but that facility is closing in March 2012.

Since issuance of the final order on July 23, 2007, Claimant has argued that he has not received proper medical care. He points to Special Master Davidson's order of January 27, 2009 in which it is ordered that an ankle brace, high shoes or boots, and a cane be provided to Claimant. Claimant has testified that he did not receive an appropriate brace nor appropriate shoes. He further argues that the recommendations of the outside specialists were not followed.

5

Article XXXII was included in the Remedial Plan to provide a remedy for inmates and former inmates who had suffered discrimination in violation of the ADA. Subsequent rulings have made clear that such discrimination had to have occurred while in DOC custody on or before August 27, 2003. Only if such discrimination occurred on or before that date may a claimant move to amend his claim to include something that occurred afterward but was part of the pattern of discrimination. In this case, Claimant has argued that the pattern of conduct has continued and that is why the final order and order of January 27, 2009 have not been followed by Defendants.

Article XXXII of the Remedial Plan does not provide any guidance as to subsequent modifications of final orders on claims and who may have such power to so modify a final order. Specifically, does the undersigned Special Master have the authority to modify the final order and order of January 27, 2009, as a different Special Master issued the orders? If the remaining Special Master lacks the jurisdiction to modify these orders, does the assigned District Judge have such authority?

Four in-person hearings have been held on this claim. Three of the hearings have dealt with the allegations of non-compliance with the final order of the Special Master. Claimant has no funds to hire an expert witness to review the propriety of care provided to him by DOC.

Stated simply, the present Final Order of 2007and the order of January 27, 2009 provide a merry-go-round for both Claimant and Defendants. Claimant retains the right to file a motion to compel compliance with the final order, but has no way to prove that a violation has occurred if he is alleging inappropriate medical care. Defendants will present evidence that the medical care was appropriate, otherwise they would not have provided the care. In the meantime, hearings will have to be held on a routine basis extending well past the closure of the compliance portion of this case.[3]

In addition, the Final Order provision which mandates DOC "to provide proper medical care to Claimant" would appear to run afoul of the Tenth Circuit's ruling in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134 (10th Cir. 2005). Claimant has been receiving medical care, but he does believe such care has been appropriate. The *Fitzgerald* decision makes clear that the ADA is not a statutory basis for determining the quality of medical care.

To bring some finality to this claim, the undersigned Special Master would recommend the following:

1. Claimant be examined by an outside orthopedic specialist to determine what treatment should be provided for mobility issues. DOC would provide appropriate medical records for the specialist, but DOC medical staff would refrain from any contact with the specialist prior to Claimant's examination and the issuance of the specialist's report.

---

[3]Claimant's estimated parole eligibility date is November 13, 2051. The estimated date for discharge of Claimant's sentence is July 18, 2081. *Defendant's Exhibit A*.

2. The orthopedic specialist would be asked to provide recommendations for Claimant's care, including recommendations concerning the type of brace and type of shoes or boots to be provided to Claimant.

3. The recommendations of the orthopedic specialist would be adopted by DOC. If DOC had any specific objection to a recommendation, then that could be filed with the Court and referred to the Special Master. If appropriate, a hearing could be scheduled on the objection and the Special Master would make a determination if the objection is appropriate.

4. The jurisdiction of the Special Master to review any further motions to compel on the claim would end on June 30, 2012.

### III.

Claimant has alleged in his "motion for order" that several items were seized from him on July 27, 2011. He has alleged that this was in retaliation for his participation in this case and for filing a claim under Article XXXII of the Remedial Plan.

Judge Kane's order of January 19, 2011 provides the Special Master with limited jurisdictional authority over final orders on claims adjudicated pursuant to Article XXXII of the Remedial Plan. Judge Kane has provided no specific authority for examination of retaliation claims. Prior retaliation allegations in claims filed by other Montez claimants arose prior to adjudication of those claims. The retaliation allegations were examined in conjunction with the merits of those claims.

Judge Kane will be requested to examine Claimant's motion for order and to determine what action, if any, should be undertaken on the motion. A special reference to the Special Master may be appropriate.

IT IS HEREBY RECOMMENDED that the Court review this Report and Recommendation and provide guidance as to what, if any, further action should be taken on this claim; and

IT IS FURTHER RECOMMENDED that the Court review this Report and Recommendation and determine what action, if any, should be undertaken on Claimant's allegations of retaliation.

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Report and Recommendation pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before September 12, 2011.**

SIGNED this 5th day of August, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

8