IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

       Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

       Defendants.

---

Claim Number: 03-505
Category III
Claimant: Joseph J. Dreismeier, #115975
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

**FINAL ORDER OF SPECIAL MASTER**

---

      THIS MATTER came before the Special Master for hearing on March 21, 2011. The hearing was held at the Centennial Correctional Facility (ACC) in Canon City, Colorado. Present were the following: Joseph J. Dreismeier (Claimant) and Deann Conroy, attorney for Defendants.

      Claimant testified in support of his claim. Defendants presented Dr. Tim Creaney, M.D. as a witness. Defendants offered into evidence Exhibits A through N, and all were admitted. At the conclusion of the hearing, the Special Master granted additional time to both sides to submit any additional exhibits or argument that they would like to have considered. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

>limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on January 8, 2003. He was placed initially at the Denver Reception and Diagnostic Center (DRDC). On February 3, 2003, he was transferred to the Fremont Correctional Facility (FCF) in Canon City, Colorado. He remained at FCF until July 31, 2003 when he was transferred to the Arkansas Valley Correctional Facility (AVCF) in Crowley, Colorado.

Claimant was moved to the Colorado State Penitentiary (CSP) in Canon City, Colorado on November 25, 2003. On December 8, 2004, Claimant was transferred to CCF. On November 2, 2005, Claimant was moved to the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant was moved to the Sterling Correctional Facility (SCF) in Sterling, Colorado on May 2, 2006. Claimant was released on parole on March 21, 2007. Parole failed, and Claimant

returned to DOC custody on July 20, 2007. He was placed back at DRDC and then was moved to AVCF on August 13, 2007. Claimant was moved to SCF on March 21, 2008. He was placed back on parole on June 3, 2008. Parole failed, and Claimant returned to DOC custody on September 15, 2008. Claimant was placed at AVCF on October 15, 2008.

On February 17, 2009, Claimant was placed again on parole. That failed, and Claimant returned to DOC custody on July 29, 2009. He was placed at DRDC and then was incarcerated at SCF on August 11, 2009. Claimant was moved to the Limon Correctional Facility (LCF) in Limon, Colorado on May 5, 2010. He returned to CCF on December 29, 2010. Claimant has returned to SCF since his hearing was held.

Claimant sent a letter to the office of the Special Masters that was received on April 27, 2010. That letter was treated as a formal claim. Claimant was provided with a claim form and returned that to the Special Master on May 25, 2010. On the claim form, Claimant checked the boxes for mobility impairment, vision impairment, and diabetes. Claimant stated in his claim form, in part:

> Mobility, this makes it extremely difficult to work and exercise. This mobility issue also causes me extreme pain which they only give me MOTRIN, which isn't a very good pain killer. Vision, I'm considered legally blind without my glasses, at which as of 5/18/10 I'm still waiting without glasses in which the Colorado department of corrections has lost mine during transport to a new facility, thus being a risk to my safety and security as I'm now someone who cannot see to protect himself against other inmates and staff.

In response to the question as to the dates of discrimination, Claimant indicated that the earliest discriminatory act was December 12, 2009. Claimant later submitted a pleading which alleged that discrimination was present from the first day on in DOC custody.

At the hearing, Claimant testified that he needed glasses to be able to see. His eyeglasses had been lost by DOC during a transfer. He testified that he is diabetic and takes glucophage. His mobility problems relate to his feet and back. He has been advised that he has degenerative joint disease and arthritis, as well as bad feet.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

**Vision Impairment:** As previously noted, a claimant must establish that he was disabled on or before August 27, 2003. Claimant came into DOC custody on January 8, 2003. Claimant has to establish that he was vision impaired during the period of time ending on August 27, 2003.

Claimant has not established that he was vision impaired on or before August 27, 2003. What he has established is that he has a vision condition that can be corrected with eye glasses. Claimant was not vision impaired, as defined by the ADA, on or before August 27, 2003.

**Diabetes:** There is a dispute about the date on which Claimant was diagnosed as having diabetes. The evidence reflects that Claimant was diagnosed as having diabetes in September 2008. The evidence fails to establish that Claimant was diagnosed as diabetic on or before August 27, 2003.

**Mobility Impairment:** The evidence presented by Claimant establishes that he was mobility impaired on August 27, 2003.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Almost all of Claimant's concerns relate to the quality of medical care that he has received since entry into DOC custody. The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) is binding upon the Special Master. The ADA and Rehabilitation Act cannot be used to contest the *quality* of medical care received by an inmate in a prison or jail. The basis for attacking the quality of care requires use of the Eighth Amendment or state statutes. The evidence is that Claimant received medical care during the time period ending on

August 27, 2003. The sufficiency of that care cannot be litigated in this case.

No evidence has been presented that Claimant was the victim of discrimination prohibited by the ADA during the time period ending on August 27, 2003. Claimant retains the right to file his own civil law suit for any discrimination that may have occurred after August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Joseph J. Dreismeier is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before November 7, 2011.**

SIGNED this 5th day of August, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master

6