# APPENDIX 14

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-cv-870-EWN

JESSE MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

REPORTER'S TRANSCRIPT
(Compliance Hearing)

---

Proceedings before the HONORABLE JOHN L. KANE, Senior Judge, United States District Court, for the District of Colorado, commencing at 9:10 a.m. on the 25th day of March, 2007, Alfred A. Arraj United States Courthouse, Denver, Colorado.

A P P E A R A N C E S

**FOR THE PLAINTIFF:**
PAULA D. GREISEN and JENNIFER W. RIDDLE, King & Greisen, LLP, 1670 York St., Denver, CO 80206
EDWARD T. RAMEY and LARA E. MARKS, Isaacson, Rosenbaum, P.C., 633 17th St., Suite 2200, Denver, CO 80202

**FOR THE DEFENDANT:**
ELIZABETH H. MCCANN, JESS A. DANCE, and JAMES X. QUINN, Colorado Attorney General's Office, 1525 Sherman St., 5th Floor, Denver, CO 80203

*DARLENE M. MARTINEZ, RMR, CRR*
*United States District Court*
*For the District of Colorado*

1  two months.  Would you do something, Cathie?"  That should
2  be grievable through Cathie.  Under the strict reading of
3  how they are doing things, it is not because that is not
4  an ADA issue.
5      I don't want Cathie's office prescribing
6  medication; we accept that.  But if somebody has been
7  prescribed medication and they are going without insulin
8  or glucose or going without their medication, then, to me,
9  it does become an ADA issue where we want the ADA office
10 to step in and say, you have got to provide this.  This is
11 a part of the Montez remedial plan.
12     The bathroom breaks, I am going to say this with
13 the most respect to the Court; that representing our class
14 is about also representing people who, albeit are in
15 prison, but have a right to basic human dignity.  To say
16 to somebody, go ahead and pee in your diapers and sit in
17 your urine for an hour during visiting, to me, that is not
18 -- I can't stand up and represent my class members and say
19 that would be okay, even in the prison setting where,
20 dignity aside, you are still in an institutional setting
21 where there is all sorts of pecking orders, all sorts of
22 other things, and to tell a class member that that is the
23 accommodation that is going to be provided, I just can't,
24 in good faith, suggest that.
25     THE COURT:  I understand.  And I appreciate my

1    suggestion was somewhat off the cuff.  But the fact is
2    that it is only a partial aspect of it.  It is not the
3    entire thing.  And there is only so much that can be done,
4    and we have to balance a lot of those, and one of them is
5    the security and --
6         MS. GREISEN:  Absolutely.
7         THE COURT:  And what we are trying to do is enable
8    one of your clients to be able to exercise the full period
9    of time for visitation.  And that requires the sign in
10   front and go to the bathroom before you go into the
11   visitors' section.
12        MS. GREISEN:  Sure.
13        THE COURT:  It also means in some instances some
14   people are going to have to wear Pampers.  And I think it
15   is quite true that when transporting prisoners, it is the
16   same.  I am not -- I am not insensitive to what I am
17   saying.  I was too flippant when I said it last time.  But
18   I can tell you right now that there are people who I
19   personally care for and that wear these and they're there
20   at night for 8 hours, and they have those things on.
21        So it is more than an hour-and-a-half that they
22   have to be in their own urine.  That just happens.  And I
23   don't think that it is a nice thing.  But, on the other
24   hand, it is sometimes essential.
25        MS. GREISEN:  Absolutely.  When you are

1    incontinent, that is absolutely correct. But when you are
2    talking somebody that has the ability to control their
3    bowel movement, I am saying, Judge, I think it is a
4    different thing.
5        THE COURT: They have to make a choice.
6        MS. GREISEN: I guess what I would ask is that it
7    be tried before it be ruled out, because, again --
8        THE COURT: I am not going to rule. I think it is
9    something that should be tried, along with these other
10   things. I'm not suggesting by any means that I'm going to
11   issue an order that says that all of your clients have to
12   be issued Pampers before visitation. That is ridiculous.
13       But what I am saying is that in trying to
14   accommodate the needs for security and the limitations on
15   personnel that are there, I am going to have other things
16   to say about that, too. But the fact is that what you
17   have to do is to provide some additional factors. And one
18   of them is to have those available.
19       MS. GREISEN: I guess what I was hoping is before
20   we rule out the concept that security may, in fact, be
21   able to take people to the bathroom, which they do in some
22   facilities -- some facility do that.
23       THE COURT: When they can, they should. When they
24   can't, they do something else.
25       MS. GREISEN: That should be the first fall back

1  rather than to just say, we won't ever do it. It should
2  be the first thing. That is what we are asking for. When
3  they can, they should.
4      THE COURT: I think that is fine. I am saying this
5  should be part of the total package. Obviously, if they
6  have the personnel available and they have some
7  institutions they can do this, and do it without
8  sacrificing security, it should be done. It should be
9  done in such a way as to create a minimum of aggravation
10 and exacerbation for everyone. That is common sense.
11     MS. GREISEN: That is all we are asking.
12     THE COURT: I think that is fine. But I do think
13 that part of it can be that, certainly. If your clients
14 are going to complain too much, you know, then this is an
15 answer for some of them. We have had those. We have had
16 some of your clients who have refused to follow a regiment
17 under any circumstance. Well, there is only so far you
18 can go with that.
19     MS. GREISEN: Let me say the fact that somebody is
20 controlled or uncontrolled, may or may not be their own
21 personal fault. I don't want the Court to have an
22 impression that simply because somebody is uncontrolled is
23 because they're not compliant. It may be a reason, but
24 another reason is some people can try very hard and not be
25 controlled.

1      But I think we have addressed that enough and that
2 is what we are asking, is when possible, they do provide
3 that. And we understand that there will be
4 circumstances --
5      THE COURT: It is just a question, and I am going
6 to so suggest it be a matter of guidelines, and that we
7 can't eliminate individual judgment entirely from this
8 process.
9      MS. GREISEN: That's exactly right.
10     THE COURT: The guard who is there needs to know
11 that he has to use his head.
12     MS. GREISEN: I would agree. On the tennis shoe
13 issue, which is another big issue, let me say that tennis
14 shoes are available for purchase in the canteen. Lots of
15 inmates buy their own tennis shoes, that is just whether
16 you can afford it. Then there is another category of
17 inmates who get medically-prescribed shoes, and there has
18 been a difference in the policies as to whether or not
19 that is paid for or not, depending on which facility you
20 are at.
21     I understand they are trying to standardize it.
22 But the reason -- and there is no doubt -- we don't
23 dispute the fact that, number one, it has a more punitive
24 aspect. Very few of these do. And one of them is more
25 punitive in that sense. I actually think, Judge, it is

1    they shall be provided, and it would be a violation of the
2    order for compliance not to.  That decision is simply
3    another one that has to be made by someone and not be
4    overruled by somebody else.
5         So you always have the opportunity to object to the
6    special master and proceed with contempt for failure to
7    follow.
8         The next one, No. 4, I think this is of critical
9    importance, and that is that if you have agreed on this,
10   that you have agreed to look at it further, that CDOC will
11   conduct disability screening based upon mutual acceptable
12   criteria and will re-screen inmates as appropriate.  Such
13   criteria will be developed by the parties with the
14   parties' experts no later than June 1, 2008.
15        If the parties cannot agree on this criteria, the
16   matter will be sent to the Court for forthwith review.
17   Well, I will tell you what my review is going to consist
18   of in case you don't get an agreement.  I am going to
19   appoint an expert, and the expert is going to tell me what
20   to do.  So that just -- that is the way it will be.
21        The next that you were unable to agree on is 13,
22   and this was a staffing problem.  The plaintiffs have
23   proposed that CDOC shall allow class members with diabetes
24   to have bathroom breaks during visitation and other times
25   as needed, and I have indicated what I am looking for

1   there, and that is simply to establish varieties of ways
2   of handling it and require the security for correction
3   officers to use their head.
4           And if they have the time to let somebody go to the
5   bathroom, fine.  If at -- the lowest possible thing they
6   should be doing rather than the first is saying your
7   visitation is over and you are out of here.  They should
8   be -- it serves, in my understanding of corrections, it
9   serves the institution to have these visitations and the
10  morale that takes place in order to cut down on the other
11  problems that you have.  And I look upon this almost as a
12  redux; so the old Ramos v. Lamm experience that I had.
13          You have to look at it as an organic process.  And
14  if visitation is good, then lets 's do what we can to make
15  sure that it gets the maximum encouragement.  And if that
16  includes providing some Pampers to some people, it's okay.
17  I am not saying they have to have them.  They have a
18  choice.  But if they want to stay, and there isn't
19  anything else to do, that shouldn't be the first thing to
20  do, it shouldn't be the first choice, but it is certainly
21  something that can be considered and done without
22  violating the order.
23          Okay.  So glad you got 18 resolved while I was
24  late.
25          No. 20, the -- proposed by the plaintiffs, length