IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

---

Claim Number 03-138
Category III
Claimant: Kevin Mark Bretz, #46584
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

**DEFENDANTS' RESPONSE TO BRETZ'S "MOTION FOR ORDER" AND THE SPECIAL MASTER'S REPORT AND RECOMMENDATION DATED AUGUST 5, 2011 (#4175)**

---

Defendants, through the Colorado Attorney General, hereby file this Response to the "Motion for Order" filed by claimant Kevin Mark Bretz (*See* Motion for Order, filed 08/5/11) and referenced in the Report and Recommendation of the Special Master, dated August 5, 2011.

### PRELIMINARY STATEMENT

Defendants wish to note that they were never served with nor received a copy of this "Motion for Order" which alleged acts of retaliation until *after* the Report and Recommendation of the Special Master was issued. Defendants only became aware that any such document existed via its mention and incorporation into the Report and Recommendation of the Special Master. Undersigned Counsel contacted the Office of

Legal Resolution and obtained a copy of the "Motion for Order" from Ms. Sue Carter on Wednesday, August 10, 2011, approximately five days after the information contained in the "Motion for Order" was incorporated into the Report and Recommendation of the Special Master.

Bretz alleges that while incarcerated at SCF, he was retaliated against for his participation in the *Montez* action when contraband images of nude women and reading material pertaining to a known security threat group, were removed from his cell during a shakedown. [1] *See Motion for Order, filed July 30, 2011.* The alleged acts of discrimination complained of in the "Motion for Order" occurred *after* Bretz's hearing. The cell search of Bretz's cell occurred after his June 20, 2011, hearing. Because these alleged acts of discrimination occurred after Bretz's June 20, 2011, hearing, the Defendants were not able to address these allegations during the hearing.

It was an abuse of discretion for the Special Master to review such a filing and rule based upon mere allegation which arose after the hearing when the Defendants were not provided an opportunity to address those new allegations. It was an abuse of discretion for the Special Master to recommend that this honorable Court review the allegations without allowing Defendants opportunity to address the new allegations of which they had not even received notice or a copy. Accordingly, Defendants request an opportunity to respond to all allegations and evidence submitted by Bretz which arose after Bretz's hearing and hereby file this Response to Motion for Order. Defendants are

---

[1] "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care" because such claims are "easily fabricated" and "because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

confident that their evidence will show that the cell search of Bretz's cell and removal of contraband items were within the normal course of penological business and based on Bretz's own misconduct, not discrimination.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. CDOC has a classification system for identifying sex offenders in order to reduce recidivism and provide specialized sex offense specific treatment during the offender's period of incarceration. Ex. A-1, *Administrative Regulation ("AR") 700-19(I)*.[2]

2. CDOC defines a "Judicially Determined Sex Offender" as one who has received a judicial determination by conviction or adjudication. Ex. A-1, *AR 700-19(III)(D)*.

3. Judicially determined sex offenders have a "sexual violence needs code" of S-5 on a progressively increasing scale from S-1 to S-5. Ex. A-1, *AR 700-19(IV)(A)(1)*.

4. An offender is classified as an S-5 for "[a]ny judicial determination of sex offense." *Id.*[3]

5. An offender classified as an S-5 is considered a sex offender by CDOC for purposes of treatment and rehabilitation. Ex. A-1, *AR 700-19(III)(G)*.

6. On July 13, 1990, Bretz was sentenced for Sexual Assault in the First Degree under C.R.S. § 18-3-402(1)(e). Ex. A-2, *Mittimus* 89CR1470.

---

[2] A court may take judicial notice of agency rules and regulations. *Ray v. Aztec Well Serv. Co.,* 748 F.2d 888, 889 (10th Cir.1984).
[3] Classifications are as follows: S1 – No arrests or reports indicating sex offense behavior; S2 – Unadjudicated sex abuse allegations; S3 – Any institutional determination of sex offense behavior to include facility disciplinary convictions; S4 – Any administrative determination of sex offense to include prior sexual violence needs classification review. Ex. A-1, *AR 700-19(IV)(A)*.

7. Bretz has been classified by CDOC as an S-5 sex offender for purposes of treatment and rehabilitation due to his conviction for First Degree Sex Assault in case 89CR1470. Ex. A-1, *AR 700-19(IV)(A)(1)*; Ex. A-2; Ex. A-3, *Query Admission Summary*; Ex. A-4, *Progress Assessment Summary – 04/21/11, p. 1*.

8. Incarcerated sex offenders who are not eligible for participation in the Sex Offender Treatment and Monitoring Program (SOTMP) are classified as S-5D. Ex. A-1, *AR 700-19(IV)(B)(3)*.

9. CDOC enacted Administrative Regulation 300-26 for the purpose of providing guidelines governing offender access to publications. Ex. A-5, *AR 300-26(II)*.

10. The SOTMP staff or Mental Health may restrict the reading materials allowed for sex offenders in an effort to promote individualized rehabilitative goals and participation in the rehabilitation process. Ex. A-5, *AR 300-26(IV)(A)(1)*; Ex A-6, *Form 300-26E*.

11. For rehabilitation purposes, CDOC mental health or sex offender treatment program staff may set more stringent individualized reading material standards for an offender regardless of whether the offender is participating in the Sex Offender Treatment and Monitoring Program (SOTMP) or other mental health program. Ex. A-5, *AR 300-26(IV)(A)(1)*; Ex. A-6, *Form 300-26E*.

12. On May 28, 2009, while at SCF, Bretz received a form entitled "More Stringent Reading Material Restrictions for Above Named Sex Offender." Ex. A-7. The document was signed by an SOTMP or Mental Health staff member on June 5, 2009. *Id.* Bretz refused to sign this form. *Id.*

13. On July 12, 2010, while at SCF, Bretz received another form entitled "More Stringent Reading Material Restrictions for Above Named Sex Offender." Ex. A-8. The document was signed by an SOTMP or Mental Health staff member on July 12, 2010. *Id*. Bretz refused to sign this form. *Id*.

14. A Mental Health Individual Contact report on March 30, 2011, similarly notes updated reading restrictions which were presented to Bretz, which he again refused to sign. Ex. A-9.

15. Bretz is restricted from subscribing to or possessing "any sexually oriented magazines or periodicals, or other reading or viewing material deemed to be pornographic or contrary to… individualized rehabilitative interests and goals." Ex. A-8, p. 1. These restrictions included "pictures, depictions or narrative descriptions of unclothed genitals, buttocks, or female breasts" and "pictures or depictions of scantily clad females and children, or provocatively posed persons." Ex. A-8, p. 1.

16. A *Montez* Compliance Hearing was held at Sterling Correctional Facility ("SCF") on Monday, June 20, 2011. At that hearing, Bretz appeared in person to present his allegations of non-compliance with prior Orders of the Special Masters concerning his *Montez* damages claim.

17. Upon his arrival in the room designated for the hearing Bretz placed a yellow folder onto the table. This folder, ostentatiously, contained some sort of paperwork relevant to the proceeding. The folder had a number of provocative images of women taped to the outside of the folder. Ex. A-11, *Affidavit of Jacquelynn N. Rich Fredericks*. The folder and its graphic images were plainly visible at that time to

witnesses present for the hearing. *Id.* Bretz did not attempt to hide or in any manner cover the images. *Id.*

18. Bretz is a convicted sexual offender and is incarcerated in the Colorado Department of Corrections ("CDOC") for his past sexual crimes.

19. It is the legitimate penological policy of the CDOC that convicted sex offenders not be permitted to possess graphic sexual images and content as a part of their rehabilitation and treatment.

20. Post-hearing, undersigned Counsel spoke with her supervisor at the Office of the Attorney General regarding what she had witnessed and noted that it was her belief and understanding that Bretz was in fact a convicted sex offender in possession of contraband materials. Ex. A-11, *Affidavit of Jacquelynn N. Rich Fredericks*. The Sex Offender Treatment Coordinator was contacted at SCF regarding these concerns. *Id.*

21. Apparently, several weeks subsequent, a shakedown and/or cell search was done on Bretz's cell which revealed numerous contraband items including a range of prohibited sexually explicit images and gang-related materials. Ex. A-12, *Incident Report #477664*.[4]

22. Contraband is "any item that a DOC… offender is not specifically authorized to have in his/her possession." Ex. A-13, *AR 300-6(III)(C)*.

23. Searches are conducted to detect contraband and frequent, unannounced searches of housing units are conducted to ensure safety and security of the facility. Ex. A-13, *AR 300-06(IV)(A)(1)-(2)*.

---

[4] Defendants would note that other inmates were also subject to shakedown on the same date. Ex. A-14, *SCF Housing Shakedown Log*. In fact, a total of eleven shakedowns were recorded during July of 2011. *Id.*

24. All inmate cells "*will* be searched at least once per quarter." Ex. A-13, *AR 300-06(IV)(H)(5)* (emphasis added).

25. The contraband removed from Bretz's cell on or about July 27, 2011, included photographs and depictions of women posing wearing minimal clothing or in the nude. Ex. A-10, *Photographs from "Pacific Island Ladies," affixed to yellow folder, and drawings;*[5] Ex. A-12.

26. During the course of the shakedown, Bretz had several contraband items removed from his cell including pornographic images which he possessed in violation of legitimate CDOC policy which prohibits sex offenders such as Bretz from possessing such materials. Bretz's contraband materials were removed from his cell based upon routine CDOC policy and procedure, based solely upon Bretz's illegal possession of contraband materials and not as retaliation for his filing or pursuit of this or any other lawsuit.

27. For security reasons, sex offenders are not allowed to possess graphic materials such as those confiscated.

## SUMMARY OF THE ARGUMENT

The evidence fails to support that Defendants violated Bretz's rights or retaliated against him when restricting the reading materials available for his possession and viewing. Bretz was convicted of First Degree Sexual Assault. Accordingly, he is classified as a sex offender by CDOC for purposes of rehabilitation and treatment. Inmates classified as sex offenders may be restricted from possessing or viewing reading materials that are counter to their individualized rehabilitative goals and standards. First

---

[5] The documents related to exhibit A-10 are confidential and restricted from being viewed by Bretz. These documents should be viewed *in camera* by the judge and should not be disclosed to Bretz.

Amendment rights may be limited for a legitimate penological interest, such as the rehabilitation of offenders. Accordingly, it was within the discretion of the CDOC to restrict Bretz's reading materials in order to ensure rehabilitative goals and standards were met. Enforcing compliance with those goals and standards through normal and proper channels cannot be construed as retaliation.

Also, there is insufficient evidence to show that Defendants retaliated against Bretz for the filing or pursuit of this or any other lawsuit related to the restrictions of his reading material. Bretz makes nothing more than a conclusory allegation of retaliation based upon the temporal proximity between the most recent of his many compliance hearings and the shakedown of his cell. There is no evidence to support a claim that Bretz's access to the courts has been violated by Defendants as he has continued to litigate this present case and in fact, has had more compliance hearings and checks than any other member of the *Montez* class.

## ARGUMENT

I. **THE UNDISPUTED EVIDENCE SHOWS THAT DEFENDANTS' RESTRICTION OF BRETZ'S READING MATERIALS WAS NOT RETALIATORY IN NATURE.**

The claim is vague and conclusory. It does not indicate that Defendants retaliated against Plaintiff because he exercised some constitutionally-protected right. A failure to provide specific factual allegations detailing the basis for the claim renders the complaint vague and conclusory. *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986); *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1986). Vague or conclusory allegations are insufficient to state a claim for relief. *Swoboda v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993); *Ruark v. Solano*, 928 F.2d 947, 949 (10th Cir. 1991).

Conclusory allegations of constitutional violations, unsupported by allegations of fact, do not state a claim on which relief can be granted. *Wise v. Bravo*, 666 F.2d 1328, 1332-33 (10th Cir. 1981). Allegations that are vague and conclusory "may be disregarded and pleadings based thereon may be dismissed without a hearing." *Johnson v. Richards*, 617 F. Supp. 113, 114 (W.D. Okla. 1984) (citations omitted).

"[M]ere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, *allege specific facts* showing retaliation *because of the exercise of the prisoner's constitutional rights*." *Frazier v. DuBois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (emphasis added). The plaintiff must specifically allege the acts which he claims were retaliatory and the constitutional rights he exercised. *Cochran v. Morris*, 73 F.3d 1310, 1316-17 (4th Cir. 1996). Bretz's allegations of retaliation are wholly conclusory and seemingly based solely upon the somewhat close temporal proximity between his June 20, 2011, compliance hearing and the July 27, 2011, cell search. A close temporal proximity between the inmate's conduct and the alleged retaliation is insufficient by itself to demonstrate retaliation. *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 746 (10th Cir.1999).

A retaliation claim must specify the acts taken in retaliation, as well as the retaliatory motive. It cannot merely make conclusory claims that defendants retaliated against him. For example, a complaint in which the inmate alleged that officials filed "arbitrary and capricious documents against him" in retaliation for filing suits failed to state a claim because it failed to identify the documents, it failed to state their effect on him, and it failed to state facts which would demonstrate a retaliatory motive. *Brown v. McBride*, 929 F. Supp. 1132 (N.D. Ind. 1996). The inmate must have some evidence of

retaliation in order to state a claim for relief. He cannot merely note that he has previously filed suits or grievances and then conclude, without additional evidence that any subsequent action must have been in retaliation for those filings. *Ishaaq v. Compton*, 900 F. Supp. 935, 940 (W.D. Tenn. 1995).

The plaintiff must establish that the prison's action was in retaliation for the exercise of constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990). If he has no right to engage in the activity that allegedly caused the retaliatory action, he has no standing to assert the claim. *Id. See Cowans v. Warren*, 150 F.3d 910 (8th Cir. 1998) (holding that punishment for abusive language does not prove retaliation for exercise of one's First Amendment rights because an inmate does not have a right to use abusive language).

Bretz had no right to possess images of scantily clad women as they violated his rehabilitation plan and reading material restrictions. CDOC did not retaliate against him for his vigorous pursuit of his *Montez* damages claim. Whether the cell search occurred as a result of his display of the images taped to the yellow folder at his hearing or as a result of normal penological operations which include quarterly cell searches of every cell, the contraband flaunted by Bretz was confiscated from his possession. He was not entitled to it then. He is not entitled to it now. Its confiscation was appropriate and was not an impermissible act of retaliation.

If the inmate establishes that he was engaged in constitutionally protected activity, he must then prove that the defendant's actions caused him to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000), *cert. denied*, 533 U.S. 916 (2001).

      1. He was engaged in constitutionally protected activity;

      2. The defendant's actions caused him to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity;

      3. The defendant was substantially motivated by that constitutionally protected activity.

If the plaintiff establishes activity in a constitutionally protected activity as well as injury, he must then prove that the defendant was substantially motivated by that constitutionally protected activity. *Worrell v. Henry*, 219 F.3d at 1212. He must show that the intent behind the defendant's action was to retaliate for the exercise of the plaintiff's constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990). Additionally, even if a retaliatory motive is shown, the plaintiff must also demonstrate that the defendant's actions would not have occurred "but-for" that motive. *Peterson v. Shanks*, 149 F.3d 1140 (10th Cir. 1998).

Bretz may engage in litigation and has, as a member of the *Montez* suit. Defendants have not in any manner retaliated against him for his participation in *Montez* in the past several years, nor did they on July 27, 2011. Bretz gives no indication that he has in any manner been dissuaded from continuing to pursue his claim: in fact, his response to the shakedown of his cell was to keep right on doing what he's been doing at an uninterrupted rate for years, which was to file yet another document with this Court regarding his claim.

Defendants did not shake down his cell as a result of his participation in the *Montez* litigation. Bretz's participation in his most recent compliance hearing was not the "but for" cause of the cell search. Bretz's cell would have been searched at some point this quarter and it is likely the contraband would have been discovered and removed from

his possession at that time. Even if the shakedown of his cell did occur as a result of the observation by undersigned Counsel of his possession of contraband at his most recent hearing, it was an exercise of legitimate penological control and concern instigated not by Bretz's litigation, but by his possession of and free and obvious display of contraband materials in violation of his restricted reading materials which are in place due to his judicially determined sex offender status.

"[A] plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d at 1144 (emphasis in original); *see also Smith v. Maschner*, 899 F.2d at 949-50; *Goff v. Burton*, 7 F.3d 734 (8th Cir. 1993), *cert. denied*, 512 U.S. 1209 (1994) (An inmate must prove more than the fact that retaliation was "a" motivating factor in a prison action. He must prove the action would not have taken place "but for" the retaliatory motive); *Hazen v. Reagen*, 16 F.3d 921, 926 (8th Cir. 1994) (same). Accordingly, he must show that there was no legitimate penological reason for the prison's action. *Pratt v. Rowland*, 65 F.3d 802, 808-10 (9th Cir. 1995). Deference should be shown to prison officials in evaluating their proffered legitimate penological reasons for the action they took. *Id.* at 807-08. The prison need merely show a single constitutional reason for its action to defeat the inmate's retaliation claim. *Goff v. Burton*, 7 F.3d at 737.

"Conduct violations cannot be deemed retaliatory when they were issued for actual violations of prison rules. Therefore, a defendant may successfully defend a retaliatory discipline claim by showing "some evidence" that the inmate actually

committed a rule violation." *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) (Citations omitted). *See also Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006); *Earnest v. Courtney*, 64 F.3d 365 (8th Cir. 1995). Bretz actually violated CDOC rules by possessing the contraband materials.

Even if the cell search occurred as a direct result of the observations of undersigned Counsel, inmate Bretz would have received the same "punishment" in the form of removal of the contraband materials from his possession when they were discovered on quarterly cell search. Thus, even if the cell search were not improperly motivated, Bretz would still have lost possession of the contraband. *Graham v. Henderson*, 89 F.3d 75, 79-80 (2d Cir.1996). *See also Lopez v. Reynolds*, 998 F.Supp. 252, 258-59 (W.D.N.Y. 1997). Further, Retaliation is not shown if the prison had an explicit written policy for its action and the inmate did not allege that the policy was enforced only against him. *Peterson v. Shanks*, 149 F.3d 1140 (10th Cir. 1998). Ten other inmates had their cells searched at SCF in July of 2011.

The burden is on the inmate to show that there were no legitimate penological reasons for prison officials to take the action about which he complains. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Deference should be shown to prison officials in evaluating their proffered legitimate penological reasons for the action they took. *Id.* at 807-08. Since there were numerous legitimate reasons to search Bretz's cell and remove the contraband material in his possession, his retaliation allegation fails.

## CONCLUSION

Defendants respectfully file this Response to Motion for Order and the Report and Recommendation of the Special Master. Because the Report and Recommendation was

also based on incidents which occurred after Bretz's hearing and which Defendants were not given an opportunity to address, Defendants respectfully request that this Response be considered as to the allegations and evidence presented after the hearing by Bretz and that his Motion to Order and allegations regarding retaliation be dismissed.

Respectfully submitted this 12th day of September 2011.

JOHN W. SUTHERS
Attorney General

/s/ Jacquelynn N. Rich Fredericks
JACQUELYNN N. RICH FREDERICKS, #39932
Special Assistant Attorney General
Civil Litigation & Employment Law Section
Attorneys for Defendant
1525 Sherman Street, 7th Floor
Denver, Colorado 80203
Telephone: 303-866-5639

## CERTIFICATE OF SERVICE

I certify that on September 12, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and mailed copies of the foregoing via the United States mail, postage prepaid, at Denver, Colorado, addressed as follows:

Kevin Mark Bretz, #46584
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO 80751-6000

*Courtesy Copies To:*
Keith Nordell, CDOC
Shawna Roche, SCF

/s/ Mariah Cruz-Nanio