| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| | 300-26 | 1 OF 7 |
| | CHAPTER: Facility Security | |
| COLORADO DEPARTMENT OF CORRECTIONS | SUBJECT: Offender Reading Material | |
| RELATED STANDARDS: ACA Standards 2-CO-5E-01, 4-4490 and 4-4491 | EFFECTIVE DATE: October 15, 2010 | |
| | SUPERSESSION: 09/15/09 | |
| OPR: OLS    REVIEW MONTH: April | Aristedes W. Zavaras<br>Executive Director | |

I. **POLICY**

It is the policy of the Department of Corrections (DOC) to respect and respond to the reading needs and preferences of offenders, consistent with the security needs and good order of DOC's facilities and offices, public safety, and rehabilitative goals set for the offender.

II. **PURPOSE**

The purpose of this administrative regulation is to **provide guidelines governing offender access to publications [4-4490]** that ensure consistent selection and possession of reading material for offenders and establish criteria for allowing reading material within a correctional facility or office.

III. **DEFINITIONS**

A. Central Reading Committee: As established by the executive director, this committee shall consist of two wardens and one representative from each of the following areas: Office of Legal Services, Sex Offender Treatment and Monitoring Program (SOTMP), religious services and intelligence office. The executive director shall designate a committee chair.

B. Contract Worker: Any person employed under contractual arrangement to provide services to the DOC: any person employed by private or public sector agencies who is serving under DOC special assignment to provide services or support to DOC programs. The employee/employer relationship lies with the contractor. All Department agreements are for a specified period and are renewable.

C. Depicts: Represent in a picture, photograph, drawing, cartoon, etc.

D. Describes: Represent in words.

E. DOC Employee: Someone who occupies a classified, full or part-time position in the State Personnel System in which the Department has affect over pay, tenure, and status.

F. Facility Reading Material Committee: As established by the administrative head of each facility, this committee shall consist of at least one representative from each of the following areas: Mental Health, Custody/Control, the general library, intelligence office, and may include other persons deemed appropriate. The administrative head shall designate a committee chair.

G. Oral Sex: Includes mouth to vaginal, anal, or penile contact only.



EXHIBIT A-5
03-138

| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Facility Security | Offender Reading Material | 300-26 | EFFECTIVE 10/15/10 |

H. **Reading Material**: Any publication, book, pamphlet, correspondence, picture, photograph, personal writing, drawing, cartoon, or other similar document or material.

I. **Sexually Explicit Material**: Materials that clearly depict or describe bestiality, pedophilia, sadism, masochism, necrophilia, discharge of bodily fluids, oral, anal or vaginal penetration by animate or inanimate objects, or oral sex.

IV. PROCEDURES

   A. General Principles

      1. Reading material shall be permitted, subject to fire, health, safety, and property allowance restrictions, unless such material poses a threat to the security or good order of the facility or office, or is determined to be contrary to public safety or the individualized rehabilitative goals set forth in writing for a specific offender by the DOC.

      2. **Reading material processed via the mailroom, pursuant to AR 300-38, Offender Mail, either incoming or outgoing, may be opened and inspected for contraband [4-4491]** (restricted inspection mail must be opened, perused, and inspected for contraband, only in the presence of the offender, but shall not be read for content.). Incoming or outgoing non-restricted inspection mail may be read for content and forwarded to the facility reading committee pursuant to the review criteria set forth in AR 300-26, IV.B.2.a-f. **Notification of forwarding of reading material to the reading committee will be provided to the offender within ten calendar days of receipt of the publication by the facility mailroom. [4-4491]**

      3. Censorable reading material found in an offender's cell, possession, or property will be forwarded to the facility reading committee for review when it is being challenged based upon content.

        When reading materials are found in an offender's cell, possession, or property that are considered contraband for reasons other than content, they may be automatically disposed of in accordance with AR 300-06, *Searches and Contraband Control*. Examples are reading materials that do not belong to the offender, are being used in a bartering situation, or altered materials that do not contain the required DOC label or stamp, etc.

      4. Reading materials considered to be "criminal evidence" will be handled pursuant to AR 1150-07, *Crime Scene Management and Criminal Evidence Handling*. This includes incoming/outgoing mail and materials found in the offender's cell, possession, or property.

      5. For rehabilitation purposes, Mental Health or Sex Offender Treatment Program DOC employees/contract workers may set more stringent individualized standards, in writing for a specific offender, regardless of the offender's participation in the Sex Offender Treatment and Monitoring Program (SOTMP), or other mental health program. (See Attachment "E.")

      6. The following materials are approved for open display or posting in offender cells:

         a. Cell permits, diplomas, certificates, calendars, athletic awards, and photographs which do not display total or partially uncovered genitalia, breasts or buttocks.

         b. Bulletin boards or painted posting areas will be of consistent size and dimensions for offender cells such as 24 inches x 24 inches.

      7. Offenders are required to keep copies of completed and signed "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Parts 1 and 2) for permitted materials for as long as they maintain the material.

| CHAPTER | SUBJECT | AR # | Page 3 |
|---|---|---|---|
| Facility Security | Offender Reading Material | 300-26 | EFFECTIVE 10/15/10 |

    8. Reading materials that **describe** sexually explicit behavior, received or sent by non sex offenders, shall not be routinely reviewed or censored; however, if DOC employees, contract workers, or volunteers become aware than an offender receives or has possession of reading materials that describe illegal sexual behavior or sexual behaviors that pose a public safety concern, the materials will be submitted to the facility reading committee for review. Only reading materials that depict sexually explicit behavior are subject to routine review and censorship.

    9. Reading materials that depict and/or describe sexually explicit behavior, received or sent by sex offenders, shall be subject to routine review and censorship.

B. Review Criteria

    1. Upon assessing reading material, the review committee shall determine whether the material or publication is detrimental to security, good order, public safety, or individualized rehabilitative goals. (See Attachment "F.") **Reading material may not be rejected solely because its content is religious, [2-CO-5E-01]** philosophical, political, social, or sexual or because of its religious, philosophical, political, or social views, its sexual content, or because its content is unpopular, repugnant, or critical of the Department or other government authority.

    2. As a guide, the following materials are among those that shall be censored:

        a. Reading materials that depict or describe the design or manufacture of firearms, explosives, or other weapons or destructive devices, or controlled substances or intoxicants, or which provide detailed instructions regarding the illegal use of such items.

        b. Reading materials that by depiction or description, advocate violence, hatred, or vengeance against any individual or group based upon his/her race, religion, nationality, sex, or ethnicity, or that appear more likely than not to provoke or to precipitate a violent confrontation between the recipient and any other person.

        c. Reading materials that by depiction or description support the illegal activities of a security threat group, contrary to the security interests of the facility or the individual rehabilitative goals of the recipient. Sign language or style of dress alone, in the absence of other material that supports, incites, promotes, encourages, or advocates any type of illegal gang activity will not be the cause of rejection.

        d. Sexually explicit material. (See definition in Section III, "Definitions.")

        e. Reading materials which pose a potential threat to the safety and security of the offender population or DOC employees, contract workers, and volunteers by advocating facility disruption or noncompliance with prison rules or regulations.

        f. Wardens shall ensure that facility contraband lists are consistent with the above mandates. Facilities are not allowed to adopt an IA or OM that contains different criteria and/or procedures for censorship than those articulated in this AR.

C. Review Procedures

    1. Reading Committee Review:

        a. The Facility Reading Material Committee will meet as needed, but not less than every two weeks (14 calendar days), to review reading material referred to the committee by mailroom DOC employees or other DOC employees, contract workers, or volunteers. The committee will evaluate and render decisions on all materials provided to it since the prior meeting, and will complete the "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Part 1) with respect to all such materials.

| CHAPTER | SUBJECT | AR # | Page 4 |
|---|---|---|---|
| Facility Security | Offender Reading Material | 300-26 | EFFECTIVE 10/15/10 |

    b. The Facility Reading Material Committee chairperson shall forward the "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Part 1) and the original objectionable material to the administrative head within five working days of the review. The recommendation to censor reading material shall indicate which of the criteria are violated by the material and describe specifically how the material violates the criteria.

    c. If four or fewer pages contain censored material, the item may be allowed with the censored pages removed. If five or more pages contain censored reading material, the item will be excluded in its entirety. (A page is considered one side.) Refer to IV.G. of this administrative regulation.

    d. If the facility reading committee has received multiples appeals on the same issue or editions of a publication, send only the appeals and one magazine to the Central Reading Committee. For example, the January issue of Playboy. If subsequent issues are received by the facility reading committee, they should contact the Central Reading Committee Chairperson regarding the disposition of such material.

2. Administrative Head Review:

    a. Following evaluation of reading material under the standards set forth in the procedures, the administrative head, or immediate subordinate, shall determine whether to permit or censor the reading material in full or in part, and indicate the decision in the space provided on the "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Part 1).

    b. The administrative head shall ensure that the decision is served on the offender within 12 working days of receipt of the reading material and recommendation from the facility reading committee.

    c. The administrative head shall simultaneously notify publishers of censored reading material utilizing the "Notice to Publisher" form, (Attachment "C"), along with a copy of the "Offender Reading Material Evaluation and Appeal Form," (Attachment "A," Part 1). If the notification to the publisher is returned to the facility as undeliverable, it shall be documented in the offender reading material database and maintained as a part of the administrative heads record.

    d. The administrative head/designee shall ensure that signed and completed copies of the "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Part 1) are forwarded to the offender working file and department file.

    e. The administrative head/designee shall keep the original reading material until the offender or publisher appeal process or time limits have been exhausted. (See IV.G.)

D. Appeal Procedures

1. An offender may appeal a decision to censor reading material by submitting a properly completed "Offender Reading Material Evaluation and Appeal Form." (Attachment "A," Part 2) to the administrative head, or designee, within ten calendar days of the date of service of the "Offender Reading Material Evaluation and Appeal Form." (Attachment "A," Part 1). This is the only administrative remedy available to the offender. Offender reading committee decisions may not be grieved under the provisions of AR 850-04, *Grievance Procedure*.

    a. Offenders shall not be allowed to view nor receive copies of material to prepare an appeal.

    b. Appeal forms shall be provided to the offender with the offender reading material evaluation form. The "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Parts 1 and 2) is a two-page form which includes the evaluation and the appeal.

| CHAPTER | SUBJECT | AR # | Page 5 |
|---|---|---|---|
| Facility Security | Offender Reading Material | 300-26 | EFFECTIVE 10/15/10 |

    c.  If the offender appeals the decision, the administrative head, or designee, will forward the original "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Parts 1 and 2) and original censored reading material to the Central Reading Committee within seven working days of receipt of the appeal. Each administrative head, or designee, will log the appeals that have been submitted to the Central Reading Committee in the offender reading committee database.

2. A publisher may appeal the decision to the Central Reading Committee within 30 calendar days of the date the notice is mailed to the publisher.

    a.  When a publisher appeal is received by the Central Reading Committee, the chairperson will contact the appropriate administrative head within three working days to request the original censored material, and the original "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Parts 1 and 2).

    b.  The administrative head, or designee, will forward the requested documentation within three working days of the request.

E. Central Reading Committee

1. The Central Reading Committee will meet a minimum of once each month to review appeals and make decisions, and will make a decision with respect to all appeals filed since the prior meeting.

2. After a decision has been reached by the Central Reading Committee, the chairperson will mail:

    a.  With respect to publisher appeals, a completed copy of Attachment "A," Part 2, within 30 calendar days of receipt of the appeal by the Central Reading Committee;

    b.  With respect to offender appeals, the original censored reading material and "Offender Reading Material Evaluation and Appeal Form" (Attachment "A," Part 2) to the administrative head for service on the offender within 30 calendar days of receipt of the appeal by the Central Reading Committee. The decision shall clearly indicate that all administrative remedies have been exhausted. The administrative head will insure that a signed copy is forwarded to the working and department file. The administrative head shall retain all originals of Attachment "A," Parts 1 and 2, attached to the required copies of the censored material.

    c.  Retain a copy of the written decision of the Central Reading Committee. (Attachment "A," Part 2.)

F. Censored library materials shall be handled in accordance with procedures established in administrative regulation 500-02, *Library Services*.

G. Disposition of Material: Once all appeal processes or time limits for appeal have been exhausted for both the offender and publisher, the censored material will be considered contraband for the purposes of disposition. The administrative head/designee shall notify the offender that he/she now has ten calendar days in which to designate disposition of the material, in accordance with AR 300-06, *Searches and Contraband Control*. At this time the offender may choose to accept reading material with four or fewer pages removed. DOC employees shall affix a label to the front of the reading material (Attachment "D").

If an offender removes the label, the reading material shall be considered contraband and it shall be confiscated and disposed of pursuant to AR 300-06, *Searches and Contraband Control* and the offender shall be charged with a COPD infraction (possession of unauthorized material).

H. Record Keeping

1. The administrative head will retain copies of the censored material (e.g., the material which forms the basis of the censorship decision), a copy of the cover page of the publication (if applicable), the original "Offender Reading

Material Evaluation and Appeal form (Attachment "A," Parts 1 and 2) and the original Central Reading Committees decision for the current fiscal year and the previous four years.

2. All facilities shall utilize the offender reading material database available on DOCnet to log all required information (see Attachment "B"). Facilities shall have all monthly information entered in the Department database by the fifth working day of the following month.

3. The Central Reading Committee chairperson shall maintain all original publisher appeal documents and a copy of the decision for the current fiscal year and the previous four years.

I. Censorship Compliance Process

1. The information will be accessed and reviewed on a monthly basis by the director of Prisons, or designee.

2. The review will be conducted monthly to monitor the overall censorship process both procedurally and substantively to insure general compliance with the terms of the New Times Settlement Agreement.

3. When discrepancies are found to exist, the director of Prisons, or designee, will personally examine all such material(s) and make a determination as to whether specific reading material(s) should be censored.

4. When the director of Prisons, or designee, establishes that a particular facility is consistently withholding a type of reading material that does not violate the guidelines of AR 300-26 and the decision of the administrative head to censor reading material is not objectively reasonable with respect to specific circumstances at the facility, the director of Prisons, or designee, will prepare a written directive to the appropriate administrative head communicating the rationale for the decision and instructions on the correct application of AR 300-26.

5. The administrative head shall be responsible for disseminating the decision as well as the instructions to the facility reading committee members.

6. The director of Prisons, or designee, shall prepare a censorship report on a quarterly basis to be provided to plaintiff's counsel.

V. RESPONSIBILITY

A. The administrative head shall establish a facility reading material committee to review and make decisions regarding the evaluation of reading material.

B. The administrative head shall maintain all required records pursuant to this AR.

C. The executive director shall establish a Central Reading Committee to respond to all offender and publisher appeals. The Central Reading Committee shall maintain required information in the database and send all offender reading material evaluation and appeal forms (Attachment "A," Parts 1 and 2) to the administrative head for keeping. All original publisher appeal documents and a copy of the decision shall be maintained by the Central Reading Committee chairperson.

VI. AUTHORITY

A. CRS 17-40-102. Program established.

B. CRS 18-7-101(2). Definitions.

| CHAPTER | SUBJECT | AR # | Page 7 |
|---|---|---|---|
| Facility Security | Offender Reading Material | 300-26 | EFFECTIVE 10/15/10 |

    C. Carpenter v. South Dakota 536 F2d 759 (8th Cir 1976) [upholding prison review board's decision to ban sexually explicit material as detrimental to rehabilitation].

    D. Hodges v. Commonwealth of VA. 871 F Supp 873 (1994).

    E. McCorkle v. Johnson 881 F2d 993 (11th Cir 1989) [Satanic Bible and Satanic ritual book barred as threat to facility security and contrary to rehabilitative goals].

    F. Superintendent v. Hill 472 US 445 (1985).

    G. Thornburg v. Abbott 490 US 401 (1989).

    H. Turner v. Safely 482 US 78 (1987) [regulation is valid if reasonably related to valid penological objective].

    I. Wolff v. McDonnell 418 US 539 (1974).

    J. O'Lone v. Estate of Shabazz 107 S.Ct. 2400 (1987).

    K. New Times Settlement Agreement. Dated: January 17, 2005.

VII. HISTORY

    August 15, 2008
    August 15, 2007
    May 1, 2007
    February 1, 2007
    February 1, 2006
    August 15, 2005
    October 6, 2004
    May 1, 2004
    May 1, 2003

ATTACHMENTS:
    A. AR Form 300-26A, Offender Reading Material Evaluation and Appeal Form

    B. AR Form 300-26B, Offender Reading Material Review Database Form

    C. AR Form 300-26C, Notice to Publisher Form

    D. AR Form 300-26D, Label

    E. AR Form 300-26E, More Stringent Reading Material Restriction for Above Named Sex Offender.

    F. AR Form 300-26F, General Reading Material Restrictions for Individual Offenders (Non Sex Offenders)

    G. AR Form 300-26G, Facility Reading Committee Comment Form

    H. AR Form 300-26H, Central Reading Committee Comment Form

    I. AR Form 100-01A, Administrative Regulation Implementation/Adjustments