IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

---

Claim Number 03-138
Category III
Claimant: Kevin Mark Bretz, #46584
Address of Claimant:  SCF, P.O. Box 6000, Sterling, CO 80751-6000

---

**DEFENDANTS' OBJECTION TO THE SPECIAL MASTER'S REPORT AND
RECOMMENDATION DATED AUGUST 5, 2011 (#5132)**

---

Defendants, through the Colorado Attorney General, respectfully object to the
"Report and Recommendation of the Special Master" regarding claimant Kevin Mark
Bretz. *Doc. 5132, filed August 5, 2011.*

1.      Under the Remedial Plan, a Final Order by the Special Master "may be
appealed on an abuse of discretion review to the Honorable Judge Kane." *Remedial
Plan, § XXXII.*

2.      "A court has abused its discretion when it based its decision on an
erroneous conclusion of law or where there is no rational basis in evidence for the
ruling." *Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995).  "A district court by
definition abuses its discretion when it makes an error of law." *Koon v. United States,*

518 U.S. 81, 100 (1996). In addition, an abuse of discretion occurs when the Special Master's decision is "arbitrary, capricious, or whimsical" or results in a "manifestly unreasonable judgment." *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994) (quotation omitted).

3.      A *Montez* hearing on the claim of Kevin Mark Bretz took place on February 1, 2006, in Canon City, Colorado. *Doc. 2793, filed August 8, 2007*. In the Order, dated July 23, 2007, the Special Master determined that Bretz was mobility impaired before the August 27, 2003, cut-off date and that his mobility impairment remained. *Id*. The Special Master determined Bretz to be disabled as a result of the mobility impairment. *Id*.

4.      The Special Master determined that Bretz was to be compensated in the amount of $1,500.00, ordered "CDOC to provide proper medical care to Claimant," and that "CDOC is ordered to send Mr. Bretz to outside orthopedic and neurosurgery specialists for examination and to promptly treat Mr. Bretz as the specialists direct." The Special Master also ordered Bretz be moved to a different facility. *Id*.

5.      On January 31, 2008, Bretz filed a Motion to Compel. *Doc. 3193, filed February 6, 2008*. On May 22, 2008, Bretz filed a Motion for Relief. *Doc. 3229, filed February 14, 2008; Doc. 3426, filed May 22, 2008*. On June 17, 2008, Special Master Davidson issued an Order denying both motions. *Doc. 3468, filed June 17, 2008*.

6.      Bretz filed numerous additional documents alleging non-compliance and a hearing was held at Sterling Correctional Facility (SCF) on November 19, 2008. *Doc. 3549, filed August 19, 2008; Doc. 3582, filed September 9, 2008*. On January 27, 2009, Special Master Davidson issued an Order which added to the previous Order, that Bretz,

"shall be furnished with an ankle brace, high shoes or boots, and a cane." These items were to be replaced as needed. *Doc. 3792, filed January 27, 2009.* The Special Master also found Defendants had complied with the prior Order of July 23, 2007. *Id.*

7.      Bretz continued to file documents with the Court and the Special Masters. A jurisdictional question arose. Class Counsel issued a Report on March 29, 2010.

8.      Special Master Borchers set another hearing to review the multiple pending motions filed by Bretz. That *third* formal review of Bretz's claim occurred September 27, 2010, at SCF. Bretz argued his facility placement was improper and that he required new durable medical equipment as replacement for that ordered in the January 27, 2009, Order. Bretz also raised issues related to the appropriateness of his ongoing medical care. Further, Bretz raised completely new and novel issues and alleged injuries and requested additional monetary compensation.

9.      Judge Kane's January 19, 2011, Order provided for *limited* jurisdiction to continue before the Special Master. *Doc. 4960, filed January 19, 2011* (emphasis in original).

10.     The Special Master did not issue an Order regarding the hearing of September 27, 2010. Instead, the Special Master set yet another hearing. This hearing was held at SCF on June 20, 2011. Bretz continued to refute the appropriateness of the custom fitted ankle brace which had been provided to him. Bretz raised issues regarding whether or not the orders of the specialists CDOC sent him to see upon prior Orders had been followed, despite the intervening Order dated January 27, 2009, issued by Special Master Davidson, which found CDOC in compliance. *Doc. 3792, filed January 27, 2009.* Defendants objected during the hearing to these previously reviewed issues as

inappropriate subject matter for the present hearing and beyond the jurisdiction of the Court.

11.      Bretz testified that his old shoes were falling apart and chose to wear to his hearing a pair of several year old shoes which he prefers to wear. This was the pair of shoes which had a hole in the bottom noted by the Special Master in his Report and Recommendation. Bretz's brand new, unworn, CDOC provided shoes sat on the table throughout the hearing. Defendants also presented photos of all *four* pairs of shoes in the possession of Inmate Bretz. Dr. Singh actually fitted these same brand new shoes onto the foot of Bretz during the hearing and determined them to be satisfactory and appropriate. Bretz acknowledged that he has refused the custom fitted ankle brace and his boots on multiple occasions. Further, Bretz testified that he refused a medical trip to Hanger Orthotics to check the fit of both the brace and shoes for any adjustments. Bretz continued to complain regarding the *appropriateness of his continuing medical care*.[1]

12.      On August 5, 2011, the Special Master issued his Report and Recommendation which recommended Bretz be examined by an outside specialist regarding his continuing care, and the appropriateness of the brace and shoes and that CDOC adopt any such recommendations.[2] *Doc. 5132, filed on August 5, 2011.* The Report and Recommendation further noted that an *additional* hearing could be set to

---

[1] Many of Bretz's complaints relate to the quality of medical care he has received. The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) found the ADA and Rehabilitation Act cannot be used to contest the quality of medical care received by an inmate in a prison or jail. The basis for attacking quality of care requires the use of State statutes or the Eighth Amendment. The Special Masters have previously recognized that sufficiency of care cannot be here litigated.
[2] This inmate has been previously seen by specialists. Further, post-*Goodloe*, this honorable Court held it is inappropriate and beyond the jurisdiction of the Special Masters to Order visits to outside specialists.

review any such objections at a future date and requested continuing jurisdiction over this individual claim through June 30, 2012. *Id.* [3]

13.     The August 5, 2011, Report and Recommendation further makes reference to alleged retaliation suffered by Bretz at the hands of CDOC revealed to the Special Master by a "Motion for Order" presumptively filed by the Inmate with the Court. *Id.* [4]

14.     The Report and Recommendation stated Defendants may object in accordance with Federal Rule of Civil Procedure 53(g)(2). Defendants now raise that objection through this filing. *Id.*

15.     Testimony and documents indicate that Bretz was seen by a neurologist and orthopedist. As a result of these consultations, Bretz was provided with an ankle brace, special shoes, a cane, and pain medication for a specific duration of time. Special Master Davidson found the CDOC in compliance with the Final Order. *Doc. 3468, filed on June 17, 2008; and see Doc. 3792, filed January 27, 2009.*

16.     The first brace provided to Bretz did not fit him due to his large size. A custom made brace was casted and provided to Bretz. He has refused to accept this custom fitted brace numerous times. Testimony was heard in the November 2010, hearing that Bretz once shoved the brace in a threatening manner at a provider during a staffing which attempt to resolve his myriad complaints.

17.     Bretz testified in the June 20, 2011, hearing and it was confirmed by documents, that he has refused continued efforts to evaluate him for additional needs and/or to update this same brace. *Doc. 5132, filed on August 5, 2011.*

---

[3] Defendants would respectfully note for the Court that this individual inmate has already had more formal reviews and hearings regarding his claim than any other individual class member.
[4] No copy of any such motion was received by the Defendants or the Office of the Attorney General. This will be addressed in a separate Response by the Defendants.

18.     Bretz has been provided with special shoes.  Those shoes have been replaced.  Bretz presently refuses to accept the special shoes most recently provided to him and instead opts to wear an older, worn pair.  He wore this older pair to the hearing and attempted to pass them off as the only shoes he has been provided.  The brand new, nearly unworn pair, sat on the table throughout the hearing.

19.     Bretz was given pain medication as proscribed, for a limited period of time, by one of the specialists.

20.     Neither specialist requested any follow up.  Further, one of the specialists has refused any further contact with Bretz due to his threatening actions and behaviors toward that specialist.

21.     Bretz has been provided a cane which has been serviced and re-tipped. This is not a continuing point of contention.

22.     Bretz received the $1,500.00 award originally ordered as damages in 2007.  This is also undisputed.

23.     Neither the Special Master nor Bretz is qualified to determine what is medically necessary for Bretz's mobility impairment and whether the soft soled shoes and ankle brace provided are appropriate to alleviate his pain.[5]  Numerous medical personnel have evaluated the shoes and brace provided and determined them to be medically appropriate.

24.     The Special Master stated that it is within his jurisdiction to order that Bretz be evaluated *again* by an orthopedic specialist and for the medical professionals of

---

[5] It should also be noted that allegations of pain fail to support an argument that one is substantially limited in performing a major life activity.  *Bones v. Honeywell Intern, Inc.*, 223 F.Supp.2d 1203, 1219-20 (D.Kan.2002).

the Department of Corrections to follow the recommendations of the outside specialists.
*Doc. 5132, filed August 5, 2011, p. 6-7.*  There is no provision in the Remedial Plan or in this Court's Order of November 23, 2004, that affords the Special Master the authority or jurisdiction to make such an order. [6]  Accordingly, the Special Master abused his discretion by making an order for which no authority exists under the Remedial Plan or the Court's Order of November 23, 2004.

     25.     Furthermore, post-*Goodloe*, this Court has determined that it is beyond the authority of the Special Master to order an inmate evaluated by an outside specialist.
*Doc. 4318, filed February 2, 2010.*

     26.     Bretz's assertion that the shoes and brace provided to him are not adequate or appropriate is a treatment issue outside the scope of the *Montez* litigation.  Such medical malpractice claims fall under the Eighth Amendment and not the Americans with Disabilities Act or Rehabilitation Act.  A plaintiff cannot state a claim for improper medical care under the ADA or Rehabilitation Act.  *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005)(stating "it is well settled that the ADA does not provide a private right of action for substandard medical treatment"); *Johnson by Johnson v. Thompson*, 971 F.2d 1487 (10th Cir. 1992).  Decisions of medical professionals that are purely medical in nature do not fall within the scope of the ADA or the Rehabilitation Act.  *Fitzgerald*, 403 F.3d at 1144.

     27.     The Special Master abused his discretion in making a ruling on an issue related to medical treatment.  Such issues are outside the scope of the *Montez* litigation as allegations related to the Eighth Amendment.  The Special Master's Report and

---

[6] Paragraph six (6) of the November 23, 2004, Order provides that the Special Master "could order that . . . an inmate be provided a hearing aid or cane."  However, the Order does not authorize the Special Master to order that a claimant be sent to an outside specialist.

Recommendation of August 5, 2011, is in direct conflict with the position of the federal courts that treatment issues are not addressed by the ADA or Rehabilitation Act.

28.     Even if treatment issues were addressed by the *Montez* litigation, the Special Master does not have the authority to order that Bretz be sent to an outside specialist and that the medical professionals of the Department of Corrections follow the recommendations of the specialist.  Such decisions are to be made by medical professionals within their medical judgment.

29.     An inmate holds no Constitutional right to be seen by an outside specialist. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)("Plaintiff's . . . contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation").  "Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing…." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir.), *cert. denied*, 127 S.Ct. 131 (2006).  The Eighth Amendment does not permit a court to act as a medical review board and question every decision regarding a prisoner's medical treatment.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "A prison doctor remains free to exercise his or her independent professional judgment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).

30.     In the alternative, there is an avenue available to Bretz, if he wishes to been seen by additional outside specialists, not affiliated with CDOC as an outside contractor.  Administrative Regulation 700-21 provides an avenue "to allow an offender access to private health care provider[s]…" *See AR 700-21(I)*.

31.     There is no evidence that Bretz has ever attempted to access this procedure.  Bretz retains the right to pursue an audience with an outside specialist should

he chose to pursue the procedures outlines in AR 700-21.  Any orders of care which

stemmed from such an inmate-funded consultation with a private health care provider

would be viewed as recommendations contingent upon approval by the chief of service.

*AR 700-21(IV)(A)(5)*.  Bretz has not exhausted his administrative remedy in pursuing

such a consultation with a private health care provider as he has never even attempted to

begin the process to seek approval.

        WHEREFORE, Defendants respectfully object to the Report and

Recommendation of the Special Master ordering that the Department of Corrections send

Bretz to an outside specialist and subsequently follow the recommendations of the

outside specialists.

        Respectfully submitted this 12th day of September 2011.

        JOHN W. SUTHERS
        Attorney General

        /s/ Jacquelynn N. Rich Fredericks
        JACQUELYNN N. RICH FREDERICKS,
         #39932
        Special Assistant Attorney General
        Civil Litigation & Employment Law Section
        Attorneys for Defendant
        1525 Sherman Street, 7th Floor
        Denver, Colorado 80203
        Telephone:  303-866-5639

## CERTIFICATE OF SERVICE

I certify that on September 12, 2011, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system and mailed copies of the foregoing via the

United States mail, postage prepaid, at Denver, Colorado, addressed as follows:

Kevin Mark Bretz, #46584
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO 80751-6000

*Courtesy Copies To:*
Keith Nordell, CDOC
Shawna Roche, SCF

/s/ Mariah Cruz Nanio