IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-00870-JLK

JESSE (JESUS) MONTEZ, *et. al.*

Plaintiffs,

v.

JOHN HICKENLOOPER, *et al.,*

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO THE FINAL ORDER OF THE SPECIAL MASTER REGARDING ROBERT RIPLIE, #107521**

---

Defendants through the Colorado Attorney General, hereby submit the following Response to Plaintiffs' Objection to the Final Order of the Special Master Regarding Robert Riplie. *Doc. 4988, filed February 25, 2011, and Doc. 5165, filed September 19, 2011.*

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Robert Riplie is an incarcerated individual presently housed at the Denver Reception and Diagnostic Center (DRDC).

2. Riplie has been diagnosed as having Diabetes.

3. The Colorado Department of Corrections (CDOC) has a classification system to identify and meet the medical needs of incarcerated individuals.[1] *See Clinical Standards and Procedures.*

---

[1] Class Counsel's Objection asserted that all people with Diabetes have an M-Code of 4, however, per their Exhibit D-2, contained in Attachment 2, persons with Diabetes may have an M-Code of 2, 3, or 4, dependent upon control-related factors.

4. Under this system, Riplie is presently coded an M-3.[2]  *See Exhibit A, Progress Assessment Summary, dated 7/6/11*.[3]

5. CDOC also has a classification system for identifying sexual offenders in order to reduce recidivism and provide specialized sex offense specific treatment during the offender's period of incarceration.  *See Administrative Regulation ("AR") 700-19(I)*.[4]

6. CDOC defines a "Judicially Determined Sex Offender" as one who has received a judicial determination by conviction or adjudication.  *See AR 700-19(III)(D)*.

7. Judicially determined sex offenders have a "sexual violence needs code" of S-5 on a progressively increasing scale from S-1 to S-5.  *See AR 700-19(IV)(A)(1)*.

8. Under this system, Riplie has been coded an S-5D.  *See Exhibit A-1, Progress Assessment Summary, dated 7/6/11*.

9. An offender is classified as an S-5 for "[a]ny judicial determination of sex offense."  *See AR 700-19(IV)(A)(1)*.[5]

10. An offender classified as an S-5 is considered a sexual offender by CDOC for purposes of treatment and rehabilitation.  *See AR 700-19(III)(G)*.

11. Incarcerated sexual offenders who do not meet eligibility criteria for participation in the Sex Offender Treatment and Monitoring Program (SOTMP) or are non-compliant are classified as S-5D.  *See AR 700-19(IV)(B)(3)*.

---

[2] Class Counsel's Objection operated under the belief that Riplie was coded M-4, but their Attachment 1, Ambulatory health Record, dated 5/4/10, confirms Riplie has been coded an M-3.

[3] This Exhibit is submitted only to rebut assertions raised by Class Counsel's Objection.

[4] A court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Serv. Co.,* 748 F.2d 888, 889 (10th Cir.1984).

[5] Classifications are as follows: S1 – No arrests or reports indicating sex offense behavior; S2 – Unadjudicated sex abuse allegations; S3 – Any institutional determination of sex offense behavior to include facility disciplinary convictions; S4 – Any administrative determination of sex offense to include prior sexual violence needs classification review.  *See AR 700-19(IV)(A)*.

12. Riplie does not meet eligibility criteria for sexual offender treatment and is non-compliant, and as such, is classified as S-5D. *See Exhibit A-1, Progress Assessment Summary, dated 7/6/11*.

13. Riplie presently has a minimum custody rating.

14. The CDOC has an Administrative Regulation which governs offender classification. *See AR 600-01*. That regulation states in relevant part:

> Facility Transfer: Offenders *may* be eligible for assignment to a facility based on their scored custody level and specific criteria outlined below.
> 1.      Facility Assignment Criteria: Assignment to a particular custody designation *does not grant the right* to be assigned to, or remain at, a particular facility.

AR 600-01(IV)(K)(1) (emphasis added).

15. In addition to the minimum custody rating noted by Class Counsel, in order to be considered eligible for placement at a Level I of II Facility, offenders *cannot have been identified as a sexual offender* recommended for offense specific treatment. *See AR 600-01(IV)(K)(6)(a)(1-3) and (b)*.[6]

16. There is an exception for Level II placements for sexual offenders with the "L" qualifier which is used for sexual offenders with low priority. *Id*. at (IV)(6)(b)(7).[7] There is also an exception for placement in a Level II Facility for those actually in Phase II treatment.

17. Riplie has completed the CORE Program, a precursor to sexual offender treatment Phase I but is not presently non-compliant and thus ineligible for SOTMP Phase I.

---

[6] Offenders whose S-Code is 3, 4, or 5 and have a qualifier of "L" may be eligible for Level I placement. *See AR 600-01(IV)(K)(6)(a)(3)*. However, Riplie is coded S-5D. Thus, he is ineligible under this exception.

[7] Riplie has a "D" qualifier, and thus, the narrow exception for "L" qualifiers does not apply to him.

18. Riplie has boots and shoes. *See Defendants' previously submitted Exhibit E,*

   *Ambulatory Health Record, dated 3/17/10.*

19. Riplie walks several miles daily, up to between 16 and 18 miles.

20. Riplie has participated in numerous programs and jobs during his incarceration.

## STANDARD OF REVIEW

The Remedial plan, section XXXII, states that the standard of review by this Court, of a Special Master's decision, is an abuse of discretion standard.

## ARGUMENT

### I. Riplie's claims are beyond the jurisdiction of the Special Masters.

The Remedial Plan was signed by Class Counsel and Defendants' Counsel on August 27, 2003. Judge Kane issued an Order March 23, 2010, which clarified the claim process. That Order established limitations on the process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in CDOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. This honorable Court has thus firmly established the boundary of individual damages claims under *Montez* which can be considered by the Special Master. Class Counsel cannot now hope to change the existing parameters of the individual damages claims process which have been long established. Thus, incidents of alleged discrimination raised by Riplie and Class Counsel which post-date August 27, 2003, are outside the jurisdiction of this Court afforded by the Remedial Plan and Judge Kane's Order of March 23, 2010. Special Master Borchers recognized this when he issued his Order denying Riplie's claim. For

the foregoing reasons, the determination of the Special Master that alleged incidences of discrimination raised by Riplie which arose after August of 2003, were beyond his jurisdiction to consider, was correct and should be affirmed.  Class Counsel has raised several specific arguments regarding Offender Riplie's situation.  These will be addressed below although the Court need not consider them for the foregoing reasons.

## II.     Riplie has not been discriminated against as a result of his M-Code.

Class Counsel makes the argument that Riplie has not been allowed to progress to a Level I or II Facility because of his M-Code rating.  Riplie is presently classified as S-5D.  Riplie is an untreated sexual offender.  It is as a result of *this* classification status that Riplie is unable to progress through the system to placement at lower level facilities, and not as a result of his M-Code.  Therefore, the issue of whether or not Riplie's M-Code is prohibitive of progression to a lower level facility is not ripe for review as it has not impacted upon his classification, progression, and facility assignment in the manner complained of by Class Counsel.  Riplie cannot progress because of his status as an S-5D sexual offender.[8]  Therefore, Riplie is not otherwise qualified to progress to a lower level facility, due to his S-5D status in accordance with AR 600-01, as defined above.[9]  He is ineligible for progression to either a Level I or Level II Facility placement because of his sexual offender qualifier code of "D."  Riplie is not eligible for placement below a Level III Facility due to his classification as a sexual offender (S-5D) and the fact that he is not currently participating in treatment.

---

[8] Class Counsel's Attachment 4, noted Riplie was unable to progress due to "treatment needs."  The treatment needs referenced pertain to Riplie's S-5D, sexual offender and mental health needs.  An updated copy of this document which reflects the same information is attached.  *See Exhibit A-2, Inmate Classification Custody Rating, dated 9/10/11 (submitted only to rebut information submitted by Class Counsel in their Objection).*
[9] *See AR 600-01(IV)(K)(6)(a)(3) and (6)(b)(7), attached hereto as Exhibit A-4*.

The issue of Riplie's medical code rating (M-Code) is not ripe for review before this Court because it's his M-Code that is keeping him from progressing to a Level I or II facility. Ripeness is a jurisdictional question. *Texas v. United States*, 118 S. Ct. 1257 (1998). A claim is not ripe if it rests on a contingent future action that may not occur as anticipated or may not occur at all. *Id.; Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109, 1120 (10th Cir. 2003). A less than remote possibility of imminent future injury is necessary. *See Roe No. 2 v. Ogden*, 253 F.3d 1225, 1231-32 (10th Cir. 2001) (ripeness found). Because ripeness is a jurisdictional issue, it can be raised at any time, even for the first time on appeal. *State of Utah v. United States Dep't. of The Interior*, 210 F.3d 1193, 1196 n.1 (10th Cir. 2000). It can also be raised *sua sponte* by the trial court or by an appellate court. *Id.*

### III. Riplie has not been denied prison employment because of his disability.

Despite not possessing a right to a particular or *any* job in prison, Riplie has been employed while incarcerated. Riplie has no right to prison employment. *Templeman v. Gunter*, 16 F.3d 367 (10th Cir. 1994); *see also Ingram v. Papalia*, 804 F.2d 595 (10th Cir. 1986); *Rather v. Conte*, 849 P.2d 884, 886 (Colo. App. 1992), *cert. denied* (same). Riplie has washed windows, rolled flatware, and been a Pusher, and an OCA I, II, and III. *See Defendants' previously submitted Exhibit C, Functional Ability Questionnaire, dated 3/15/10.* Riplie is presently employed at DRDC as an OCA III. *See Exhibit A-3, Query Offender Programs, dated 9/26/11.*[10] This is in contradiction to Class Counsel's assertion that there are no jobs available at DRDC. Riplie's M-Code and facility placement have not deprived him of the opportunity to seek prison employment.

---

[10] This Exhibit is submitted only to rebut assertions raised by Class Counsel's Objection.

Arguments which extend beyond Riplie to encompass the *Montez* class as a whole are inappropriate in this forum. Riplie's individual damages hearing is limited in scope to Riplie and his alleged disability and alleged discrimination claims. This is not the appropriate venue for Class Counsel to raise objections on behalf of the entire class. Rather, as this Court is aware, both Defendants and Class Counsel have had ample opportunity to argue such class-wide considerations before this Court, and have subsequently submitted voluminous findings of fact and conclusions of law, presently pending before this Court. That is the appropriate place for systemic issues to be raised. Any objections to the Final Order of the Special Master on behalf of Riplie should pertain only and exclusively to Riplie and his claims below.

The plaintiff carries the burden of proof on a claim that he has been discriminated against on the basis of his disability. *Tyler v. City of Manhattan*, 857 F.Supp. 800, 817 (D. Kan. 1994), *aff'd* 118 F.3d 1400 (10th Cir. 1997). Thus, Riplie must show that he, as an allegedly disabled individual, was denied access to something accessible to non-disabled inmates. Riplie's records show that Riplie has had access to all jobs, programs, services, and benefits for which he is otherwise qualified.

**IV.   Riplie was not denied medical shoes in violation of the Remedial Plan.**

Riplie has been provided appropriate footwear. *See Defendants' previously submitted Exhibit E, Ambulatory Health Record, dated 3/17/10*. Further, the appropriateness of footwear or any medical device provided for medical purposes is properly the purview of medical professionals. Class Counsel and Defendants agreed in the August 27, 2003, Remedial Plan that, "Health care appliances shall be prescribed and approved for eligible inmates by licensed DOC health care providers, subject to medical

necessity, safety, and security…" *See Remedial Plan XVI(B)*.  Class Counsel cannot now argue that the determination regarding the provision of durable medical equipment should not be made by medical professionals subject to medical necessity.  Further, Riplie did not request state issued "medical" shoes until 2010.  *See Defendants' previously submitted Exhibit C, Request for Accommodation, dated 3/8/10.*  Riplie did not request "medical shoes" and medical providers did not deem them medically necessary, therefore, it was not discrimination for CDOC to fail to provide them.  Riplie was seen frequently for chronic care appointments and at foot clinics by numerous medical professionals throughout his incarceration.  *See Defendants' previously submitted Exhibits D, E, and F*.  None of these medical professionals felt that "medical shoes" were clinically indicated.  *Id*.  Thus, there was no discrimination based upon a disability prior to August 27, 2003.

In addition, the appropriateness of medical care and services is beyond the scope of the *Montez* Remedial Plan and is properly considered under the Eighth Amendment, not the ADA or Rehabilitation Act.  A plaintiff cannot state a claim for improper medical care under the ADA or Rehabilitation Act. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *Johnson by Johnson v. Thompson*, 971 F.2d 1487 (10th Cir. 1992).  Furthermore, "[u]nless they meet the [four] criteria established in paragraph #[2], individual Eighth Amendment medical malpractice claims are not contemplated by the Remedial Plan." (November 23, 2004 Order, ¶ 5).

Assuming *arguendo* that Eighth Amendment issues were properly before this Court, not every ache and pain or discomfort can support an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997).  Similarly, a layman's fear that

he has a problem or that he needs medical treatment is insufficient.  Mere conjecture is insufficient to state a claim for relief.  *Smith v. Colorado Department of Corrections*, 23 F.3d at 341.  "A medical need is serious if it is one that has been *diagnosed by a physician as mandating treatment* or one *that is so obvious* that even a lay person would easily recognize the necessity for a doctor's attention."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (emphasis added).  The 2004 foot blister was treated by a medical professional who determined no further, lasting treatment was neither necessary nor medically prudent.

Riplie did not have neuropathy or blisters prior to August 27, 2003.  In fact, in February of 2003, Riplie denied he suffered from *any* foot problems.  *See Defendants' previously submitted Exhibit E, Ambulatory Health Record, dated 2/18/03*.  The single blister which was discovered on Riplie's foot in 2004, and referenced by Class Counsel in their Objection, was a result of Riplie's walking between 16 and 18 miles daily and is the type of injury any person might suffer who subjects their body and feet to such rigorous over-exercise within any pair of shoes.  *See Defendants' previously submitted Exhibit E, Ambulatory Health Record, dated 2/26/08; and see Defendants' previously submitted Exhibit F, Ambulatory Health Record(s), dated 1/6/10 and 12/1/09, and Staff Observation Form, dated 4/27/10*.  This lone blister occurred post-August 27, 2003, and thus, is outside the jurisdiction of the Special Masters in this case.

It was not until 2009, that Riplie began to show some evidence of developing neuropathy and occasional blistering to his feet.  *See Defendants' previously submitted Exhibit F, ADA Disability Evaluation, dated 5/18/10 at p. 11; and see Ambulatory Health Record(s), dated 2/3/10 and 12/17/09.*  Riplie received treatment and care for this

developing condition which was appropriate as determined by medically trained professionals. Further, it is misleading to imply that Riplie's feet are presently in disrepair. To the contrary, several recent foot examinations have determined just the opposite: Riplie's feet remain in good condition and there is no evidence of any neuropathy. Riplie had no lesions on his feet and his monofilament fiber sensation was in-tact bilaterally. *See Defendants' previously submitted Exhibit E, Ambulatory Health Record, dated 2/26/08.* Riplie's feet are in good condition and he voiced no complaints. *See Defendants' previously submitted Exhibit E, Ambulatory Health Record, dated 4/19/10.* At a foot care clinic in 2010, Riplie voiced no complaints and no issues were observed by the provider. *See Defendants' previously submitted Exhibit E, Ambulatory Health Record, dated 9/13/10.* Riplie's feet have no evidence of neuropathy. *See Defendants' previously submitted Exhibit D, Ambulatory Health Record, dated 7/22/10.* Despite some recent developing, occasional issues with his feet, Riplie maintained his regimen of walking for several hours each day, in contradiction to Class Counsel's assertion that Riplie was somehow hobbled by this condition and unable to engage in his activities of daily living.[11]

Further, Class Counsel should not be allowed to refer to additional records and medical evidence beyond that presented below by Riplie. This Court's review is limited to the record as preserved from below. The Court of Appeals will not address an issue raised for the first time on appeal. *Wade v. Bradford*, 39 F. 3d 1126 (10th Cir. 1994); *Harris v. Champion*, 51 F.3d 901, 907 (10th Cir. 1995); The United States Court of Appeals will not address arguments that were not presented to the trial court. *Crow v.*

---

[11] Defendants would also note that the ability to walk 16-18 miles per day negates the assertion that having Diabetes somehow renders Riplie or any person automatically disabled.

*Shalala*, 40 F.3d 323 (10th Cir. 1994); *Treff v. Galetka*, 74 F.3d 191, 193 (10th Cir. 1996). In the present case, the damages hearing before the Special Master was the "trial court" and this Court sits as an appellate court to that proceeding.

Class Counsel notes, correctly, that Riplie represented himself *pro se* in the individual damages hearing before the Special Master. Class Counsel was neither present nor did they desire to be.[12] Therefore, in Class Counsel's absence at the proceeding below, they are beholden to the record as established and are not able to furnish additional exhibits for this Court's review, which were not contemplated by the Special Master in making his determination. An appellate court cannot consider evidence which was not presented below. *In Re Petition of Edilson*, 637 P.2d 362, 364-65 (Colo. 1981). Issues not decided by the lower court will not be addressed for the first time on appeal. *Colby v. Progressive Casualty Ins. Co*., 928 P.2d 1298, 1301 (Colo. 1996). In addition, these documents cannot be considered here because they were not entered into evidence below and are not part of the record. *See New Haven Inclusion Cases*, 399 U.S. 392, 450 n.6 (1970). An appellate court is not the appropriate forum for initial consideration of such evidence. "This court cannot consider exhibits… that were not submitted to the district court." *White v. State of Colo.*, 82 F.3d 364, 366 n.3 (10th Cir. 1996). As such, additional materials, records, and documentation submitted by Class Counsel in their Objection to the Final Order of the Special Master Regarding Robert Riplie, should be disregarded.

## CONCLUSION

---

[12] The court should not assume the role of advocate for the *pro se* litigant. *Id.* While a court must construe a *pro se* complaint liberally, it will not "fill in the blanks" for him, nor will it allow him to alter the tenor of his complaint or the issues raised in the complaint through "creative appellate advocacy." *Hamlin v. Vaudenberg*, 95 F.3d 580, 583-4 (7th Cir. 1996).

Defendants respectfully file this Response to Class Counsel's Objection to the Final Order of the Special Master Regarding Robert Riplie. After a full hearing, the Special Master determined that the claims presented by Offender Riplie were beyond the jurisdiction of the Special Master as determined by this Court. Pursuant to the Remedial Plan, the Special Master's determination can only be reversed by this Court on a finding of abuse of discretion. There was no abuse of discretion by the Special Master. Alleged incidences of discrimination based on disability which arose after August 27, 2003, are inappropriate for review and beyond the scope of the Remedial Plan. The issue of Riplie's M-Code is not ripe for review. If it were, Riplie's M-Code has not negatively impacted his progression and access to programs and jobs. Riplie is not entitled to "medical" shoes absent evidence of medical need. Riplie did not request nor require medical shoes at any time prior to 2009, let alone prior to August of 2003. Claims regarding Eighth Amendment issues, are not within the jurisdiction of this Court as they do not relate to the ADA or Rehabilitation Plan. New exhibits and evidence submitted by Class Counsel are not appropriate for this Court's review. The plaintiff carries the burden of proof on a claim that he has been discriminated against on the basis of his disability. *Tyler v. City of Manhattan*, 857 F.Supp. 800, 817 (D. Kan. 1994), *aff'd* 118 F.3d 1400 (10th Cir. 1997). There was no evidence that Riplie was discriminated against because of his disability. Finally, Riplie's objection is limited to review of Riplie's claims. Class-wide and systemic issues are being addressed in the larger class action compliance proceedings. There is absolutely no evidence that Riplie was discriminated against because of his disability by CDOC in any manner whatsoever. For these reasons

and those stated above, Defendants respectfully request that this Court affirm the Final Order of the Special Master regarding Riplie.

WHEREFORE, Defendants' respectfully request that Class Counsel's Objection to the Final Order of the Special Master Regarding Robert Riplie be overruled and that this Court affirm the Final Order of the Special Master regarding Offender Riplie.

Respectfully submitted this 4th day of October 2011,

JOHN W. SUTHERS
Attorney General

/s/ Jacquelynn N. Rich Fredericks
JACQUELYNN N. RICH FREDERICKS,
 #39932
Special Assistant Attorney General
Civil Litigation & Employment Law Section
Attorneys for Defendant
1525 Sherman Street, 7th Floor
Denver, Colorado 80203
Telephone:  303-866-5639

**CERTIFICATE OF SERVICE**

  I certify that on October 4, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and mailed copies of the foregoing via the United States mail, postage prepaid, at Denver, Colorado, addressed as follows:

| | |
|---|---|
| Robert Riplie, #107521<br>Denver Reception & Diagnostic Center<br>P.O. Box 392004<br>Denver, CO 80239 | *Courtesy Copies To:*<br>Keith Nordell, CDOC<br>Shawna Roche, SCF |

                /s/ Mariah Cruz-Nanio_____