| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| | 600-01 | 1 OF 16 |
| | **CHAPTER:** Offender Classification | |
| COLORADO DEPARTMENT OF CORRECTIONS | **SUBJECT:** Offender Classification | |
| RELATED STANDARDS: ACA Standards 2-CO-4B-01 through 2-CO-4B-03, 4-4133, 4-4250, 4-4251, 4-4254, 4-4281-2, 4-4295 through 4-4302, 4-4305, 4-4399, 4-4400, and 4-4502 | **EFFECTIVE DATE:** December 1, 2010 | |
| | **SUPERSESSION:** 10/15/09 | |
| OPR: OOS | REVIEW MONTH: June | Aristedes W. Zavaras Executive Director |

## I. POLICY

A. ***The Department of Corrections (DOC) shall provide for a written offender classification plan. [4-4502] The plan specifies the objectives of the classification system and methods for achieving them and it provides a monitoring and evaluation mechanism to determine whether the objectives are being met. The plan will be reviewed annually and updated, as needed. [4-4295]***

B. ***The DOC shall ensure that all offenders are classified into the most appropriate custody level. This policy includes the DOC classification plans, classification status reviews, and the identification of special needs. [2-CO-4B-01]***

## II. PURPOSE

The purpose of this administrative regulation (AR) is to:

A. ***Provide objective risk assessment guidelines/criteria for facility security level and offender custody level assignments for all offenders. [4-4281-2]***

B. Provide monitoring and tracking of each offender's custody and program accomplishments during confinement.

C. ***Provide criteria for central classification officers and assigned case managers for objective risk management assessment. [4-4281-2]***

D. Describe the process for offender participation in the classification system.

## III. DEFINITIONS

A. <u>Administrative Segregation</u>: The most restrictive custody level imposed upon an offender. This custody level will be utilized only after a specific classification hearing has determined this custody level is required.

B. <u>Case Manager</u>: An individual employed by, or under contract with the DOC or DCJ, responsible for direct involvement with offenders and ensuring an ongoing process of case monitoring, case recording, counseling, and guidance. Direct involvement shall also include field community parole officers working in liaison with community corrections centers.

C. <u>Central Classification Committee</u>: A group of classification specialists at the level of case manager I or II who comprise the operational Central Classification Unit of the Office of Offender Services. These central classification officers will serve as liaisons to and for their assigned facilities in the areas of classification and case management. The chairperson will be the chief of classification, or designee.

**EXHIBIT**

A-4

PENGAD 800-631-6989

| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

D. Classification: A process whereby an offender is reviewed to determine appropriate custody and facility assignment. The assignment may be made based upon an objective or discretionary determination.

E. Classification Committee: A committee within each respective facility chaired by the administrative head/designee, at or above the level of correctional officer III, which is responsible for all classification proceedings within the facility. the classification committee should include a case manager supervisor, the custody/control manager/designee, the intelligence officer, and the case manager for assignments that are security sensitive to the facility and public. In facilities where a classification committee is not feasible, a classification officer will, with the approval of the administrative head, act as the classification committee.

F. Classification Officer: Any DOC employee, at or above the level of correctional officer III, or any person under contract who is assigned responsibilities as a classification officer for classification within a facility or the Central Office.

G. Classification Task Force: A task force of DOC employees to include the chief of classification (or designee), at least one representative from each correctional facility, two representatives from Adult Parole, Community Corrections, and Youthful Offender System, one representative from Correctional Industries, one representative from Clinical Services, and one representative from the Central Classification Committee.

H. Custody Level: The degree of supervision required for each offender. Custody level utilizes the terms of minimum, minimum-restricted, medium, close, and administrative segregation.

I. Diagnostic Programmer: A DOC employee at or above the level of a correctional officer III, who is responsible for the initial classification and the related diagnostic assessment of the offender upon his/her arrival into the department, and compiles the information that makes up the offender record.

J. DOC Employee: Someone who occupies a classified, full or part-time position in the State Personnel System in which the Department has affect over pay, tenure, and status.

K. Executive Assignment Order (EAO): An electronic form that authorizes an offender's movement from one permanent facility to another permanent facility on behalf of the executive director, or designee.

L. Interstate/Intrastate Contract or Jurisdiction Cases: Offenders placed in a state with which Colorado has specific contracts for bed space.

M. Management Control Unit (MCU): Temporary holding cells where offenders are housed for a specified period of time, pending removal to a higher security level facility for administrative action.

N. Maximum/New Arrival: The custody designation given to an offender that is received at the Denver Complex from the jail backlog, pending initial classification determination.

O. Punitive Segregation: A disciplinary sanction that may be imposed only after a specific disciplinary hearing has taken place, in accordance with administrative regulation 150-01, *Code of Penal Discipline*.

P. ***Removal from Population (RFP): A status reserved for offenders who, for security/safety reasons, must be removed from general population. [4-4251]***

Q. Security Level: The physical features and operational requirements of a facility. Security levels are referred to in terms of Level I, Level II, Level III, Level IV, and Level V.

R. Special Needs Offenders: Offenders whose mental and/or physical condition requires special accommodation by DOC employees, contract workers, or volunteers. Special needs offenders may include, but are not limited to, drug or alcohol addicts or abusers, the emotionally disturbed, mentally retarded, suspected mentally ill, physically handicapped, chronically ill, the disabled or infirm, those with documented custody issues and those with limited academic ability or learning disability.

| CHAPTER | SUBJECT | AR # | Page 3 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

S. Technical Parole Violator (TPV): An offender whose parole has been revoked by the Parole Board for one or more violations of parole conditions, other than a new felony conviction, or an offender who requests revocation and has no new felony convictions.

IV. PROCEDURES

A. Classification Rating Process: The DOC utilizes an objective rating process to balance the assignment of offenders at the lowest custody level consistent with an objective assessment of public risk, the safety of DOC employees/contract workers and other offenders, the security needs of the offender, and the programmatic needs of the offender.

B. Facility Security Levels: Each facility operated by, or under contract to, the DOC shall have a designated security level. Designation of security levels shall be as follows:

**FACILITY SECURITY LEVELS**

**OFFENDER CUSTODY LEVEL**

Level V Facilities

Mixed – (Includes administrative segregation and below)

Colorado State Penitentiary (CSP)
Denver Women's Correctional Facility (DWCF) (females)
Denver Reception and Diagnostic Center (DRDC)
San Carlos Correctional Facility (SCCF)
Sterling Correctional Facility (SCF)

Level IV Facilities

Mixed – Close and below

Centennial Correctional Facility (CCF)
Limon Correctional Facility (LCF)

Level III Facilities

Mixed – Close and below

Arkansas Valley Correctional Facility (AVCF)
Buena Vista Correctional Complex (BVCC)
Colorado Territorial Correctional Facility (CTCF)
Fremont Correctional Facility (FCF)
Fort Lyon Correctional Facility (FLCF)
La Vista Correctional Facility (LVCF) (females)
YOS Adult Males–(Southern Transfer Unit-STU)
Bent County Correctional Facility (BCCF) ** (males)
Crowley County Correctional Facility (CCCF) ** (males)
Kit Carson Correctional Facility (KCCF) ** (males)
Cheyenne Mountain Re-Entry Center–(CMRC) ** (males)
**Private Contract Prisons

**Mixed- Medium and below

Level II Facilities

Minimum Restricted and Below

Arrowhead Correctional Center (ACC)
Buena Vista Minimum Center (BVMC)
Four Mile Correctional Center (FMCC)
Trinidad Correctional Facility (TCF)

| CHAPTER | SUBJECT | AR # | Page 4 |
|---------|---------|------|--------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

Level I Facilities           Minimum

Colorado Correctional Center (CCC)
Delta Correctional Center (DCC)
Rifle Correctional Center (RCC)
Skyline Correctional Center (SCC)
***Contract Community Correction Centers [4-4502]***

(See Attachment "B," security levels, for a comparison of security levels, custody levels, and services within the DOC.)

C. Offender Custody Designations: Identified custody levels constitute the standards of supervision within each facility operated by, or under contract to, the DOC.

   1. Each offender under custody of the executive director shall be assigned a ***level of custody and provided with a regular review of their classification. [4-4296]***

   2. Relationship to administrative regulations 600-02, *Administrative Segregation,* and 250-03, *Community Corrections Referral and Placement Process:* The review procedures outlined herein do not apply to cases that are assigned or under consideration for assignment to administrative segregation or community assignment. For offenders assigned to Community Corrections, the classification process is suspended unless:

      a. Offender receives a Code of Penal Discipline conviction.

      b. Offender is recommended for removal from Community Corrections for return to a correctional facility.

   3. ***Offenders will be reviewed at least every six months to ensure that they are assigned to the lowest custody and housed at the lowest security level facility balancing the needs of the offender and the department with the safety of the general public, DOC employees, contract workers, volunteers, and other offenders. [4-4300]***

D. Initial Offender Classification: The administrative head of the Denver Complex shall be responsible for the scoring process of the "Offender Initial Custody Rating" instrument for all offenders committed to the custody of the executive director on a new incarceration. All parole violators, regardless of status, will be scored according to the provisions found in Section IV.G.1.d. of this AR.

   1. ***At initial classification, each offender is assigned to a diagnostic programmer to ensure supervision and personal contact. [4-4299]*** The diagnostic programmer shall review all relevant casework materials. ***The DOC solicits and uses pre-institutional assessment information regarding the offender's progress and adjustment [4-4298]*** including, but not limited to, mittimus, Pre-Sentence Investigation Report (PSIR), and any prior commitment records available at the time of programming.

   2. The diagnostic programmer shall complete the initial custody rating instrument. This instrument can be found in the appropriate "Offender Classification System Scoring Manual."

      a. The scored custody level shall constitute the assigned custody level unless an override has been requested in accordance with provisions contained herein.

      b. An override may be requested by either the diagnostic programmer or the facility Classification Committee of the Denver Complex.

      c. The Classification and Assessment Unit shall forward all completed offender records to the Office of Offender Services on a daily basis.

| CHAPTER | SUBJECT | AR # | Page 5 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

    d. The Central Classification Committee shall determine the assigned facility through a process of review and evaluation of all pertinent information collected at the Denver Complex.

        1) This includes at a minimum:

            a) mental and mental health stability;
            b) escape history;
            c) assaultive behavior;
            d) medical status;
            e) age;
            f) separation issues.

        2) If an override is recommended by the diagnostic programmer, the facility Classification Committee shall review the recommendation(s) and either agree or disagree with the override request. If the facility Classification Committee disagrees with the request, they shall recommend the scored custody and provide a statement of justification on the initial custody rating instrument, and document the justification in the record.

        3) Regardless of whether or not the facility Classification Committee agrees with the recommendation of the diagnostic programmer or case manager, the initial custody rating instrument, with all supporting documentation, will be forwarded to the Central Classification Committee in Offender Services. (See appropriate scoring manual for process changes.)

        4) The Central Classification Committee, in the Office of Offender Services, may agree or disagree with the facility recommendation and shall:

            a) Resolve each classification action through authorizing, denying, or modifying the instrument.

            b) Document justification for any action taken in the record, as well as on the initial custody rating instrument.

            c) Execute an executive assignment order authorizing the offender's facility assignment.

    e. All unclassified offenders at the Denver Complex will be managed as **MAXIMUM** custody, until initial classification has taken place. Permanent party offenders assigned to the Denver Complex for medical reasons shall be supervised in accordance with their assigned custody levels.

    f. All offenders received with a death penalty sentence will be reviewed for administrative segregation, in accordance with administrative regulation 600-02, *Administrative Segregation*. All male offenders will be assigned to the Colorado State Penitentiary (CSP) and all female offenders will be assigned to the Denver Women's Correctional Facility (DWCF).

E. Mandatory and Discretionary Scoring with the Initial Instrument

    1. A mandatory classification review shall be completed using the initial custody rating instrument, if the offender's first six month review date for reclassification has not been reached, or whenever new or additional information has been received by the DOC which would alter any of the factor scores.

    2. Discretionary classification reviews shall be completed by the diagnostic programmer, or facility case manager, using the initial custody rating instrument if the offender's custody level was scored with an initial instrument and the offender's first review date for reclassification has not been reached. The Classification Committee must agree with any decision to rescore the offender. Reasons for discretionary reviews are as follows:

| CHAPTER | SUBJECT | AR # | Page 6 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

    a.  Medical or mental health need.

    b.  Custody (offender separation) issues/needs.

    c.  Facility security and or safety.

    d.  Program/services need change.

    e.  Bed capacity of the DOC changes.

    f.  Any other reason deemed sufficient by the case manager, and/or Classification Committee, and **ALL** reasons will be documented in the record as well as on the classification instrument.

3.  When an offender receives a formal conviction of the *Code of Penal Discipline* (administrative regulation 150-01), a mandatory classification review shall be conducted using the reclassification custody rating instrument, even if the offender's current custody level was scored using the initial custody rating instrument and the offender's first six month review date for reclassification has not been reached. The instrument can be found in the appropriate "Offender Classification System Scoring Manual."

F.  Offender Reclassification: ***The classification plan provides for maximum involvement of representatives of relevant institutional programs and the offender concern in classification reviews. [4-4297]***

1.  Case managers will actively engage offenders in the classification planning process through personal interviews. ***Unless precluded for security or other substantial reasons, all offenders are allowed to appear at their classification review and are given 48 hours notice, prior to their review. Such notice may be waived by the offender, in writing [4-4302]*** (See the Case Management Manual). Offender participation will be documented by the assigned case manager. In addition to those contacts required pursuant to administrative regulation 550-01, *Case Management System,* the case manager shall, at a minimum, ensure that the offender is aware of the classification process.

2.  The case manager shall ensure that each offender is interviewed and a reclassification is completed, no less than once every six months, except as outlined in section IV.I. of this AR. The instrument can be found in the appropriate "Offender Classification System Scoring Manual."

3.  The first reclassification is due six months from the arrival date at the Denver Complex.

4.  Upon considering any reclassification, the case manager shall review all relevant casework materials and request input from relevant programs, if none currently exists in the file.

G.  Mandatory and Discretionary Scoring Using the Reclassification Custody Rating Instrument

1.  Mandatory Reviews: If the offender's current custody level was scored using the reclassification custody rating instrument, the following will require mandatory classification review:

    a.  A new criminal conviction is received or a criminal conviction is altered.

    b.  Disciplinary conviction reversal and/or expunging of conviction for Class I or II COPD violations.

    c.  Receipt or cancellation of an active detainer.

| CHAPTER | SUBJECT | AR # | Page 7 |
|---------|---------|------|--------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

    d. **Any** offender identified as a parole violator, regardless of status that include revocations resulting in a new conviction, arriving at the Denver Complex will be scored on the reclassification custody rating instrument. (See the appropriate Offender Classification Scoring Manual for procedures.)

    e. Any offender identified as a parole violator qualifying for a Community Return to Custody Facility (CRCF) under the provisions of HB 252 must be scored on the reclassification custody rating instrument in order to change status from parole to offender.

  2. Discretionary Reviews: If the offender's current custody level was scored using the reclassification custody rating instrument, the following could be considered as cause to conduct a discretionary review:

    a. Medical or mental health need.

    b. Custody (offender separation) issues/needs.

    c. Facility security and or safety.

    d. Program/services needs level change.

    e. Bed capacity of the DOC changes.

    f. Any other reason deemed sufficient by the case manager, and/or Classification Committee, and approved by the Central Classification Committee in Offender Services. **ALL** reasons will be documented in the record as well as on the classification instrument.

H. Override from the Scored Custody Designations: An override from the scored custody level must be submitted by the case manager/diagnostic programmer to the facility Classification Committee.

  1. The facility Classification Committee may agree, disagree, or recommend modification to cases presented by the offender's assigned case manager/diagnostic programmer for an override. The facility Classification Committee will review all discretionary scoring with or without the presence of an override recommendation.

    a. In such cases, the facility Classification Committee shall review all documentation. If the offender disagrees with the recommendation, the committee may take the offender's statement, prior to making a decision to agree, disagree, or modify the case manager's/diagnostic programmer's override request, if such request has been made. Exceptions to offender participation may be made by the facility Classification Committee for security reasons or good cause, and the justification must be documented in the record. Refer to section IV.J.1. for a description of reasons for appeal.

    b. In the event that the facility Classification Committee disagrees with the override recommendation, the administrative head will be notified and provided justification for the decision. The classification instrument will reflect the decision, and copies will be distributed.

    c. In the event that the facility Classification Committee agrees with an override recommendation, the override recommendation and appropriate supporting documentation shall be forwarded to the Central Classification Committee, in the Office of Offender Services for final custody level determination.

  2. The Central Classification Committee may agree or disagree with any override request, and will resolve each classification action through authorizing, denying, or modifying of the instrument. The Central Classification Committee will justify any decision by documenting it on the classification instrument and in the central offender record (department file).

| CHAPTER | SUBJECT | AR # | Page 8 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

The Offender Services associate director and the chief of Classification, or designees, may initiate an override from the scored custody level of an offender, if such action is warranted to meet policy established for the classification and offender management systems. Any such override shall be documented in the record as well as on the appropriate classification custody rating instrument. Denial or modification of requested overrides will be discussed with the facility classification chairperson, or designee. If the facility classification committee and the Central Classification Committee do not agree, the case will be staffed with the Offender Services associate director. If an agreeable resolution cannot be reached with the Offender Services associate director and the facility warden/designee, the case will be staffed with the director of Prisons for final resolution.

3. ***The DOC shall provide for identification of special needs offenders. [2-CO-4B-01] [4-4305] An override for special needs may be invoked only if accompanied by a recommendation from an institutional physician, psychiatrist, psychologist, or another health services professional approved by the DOC. It is to be used when the medical or psychological condition, or the intellectual functioning, of an offender requires a different level of supervision than called for by the document score, e.g., serious or contagious diseases, psychotic or suicidal behavior, and/or severe intellectual deficiencies. [4-4399]*** Offenders with academic special needs may progress to lower security levels as academic programs are available at all lower levels (consistent with custody designation).

I. Exceptions to Six Month Reclassification Reviews: Case managers are not required to perform routine six month reviews on the following offenders (with the exception of any items meeting section IV.G.1. criteria):

1. Offenders participating and assigned to the community corrections program or the Intensive Supervision Program (non-parolee).

2. Offenders on escape status.

3. Offenders assigned to administrative segregation.

J. Offender Appeal: ***The DOC offender classification plan specifies criteria and procedures for determining and changing an offender's classification status; the plan includes at least one level of appeal. [4-4301] [2-CO-4B-03]***

1. When the offender disagrees with the recommendation of the case manager, he/she may appear before the facility Classification Committee and make a statement. An offender's appearance may be precluded for security or other substantial reasons and must be documented in the record.

   a. The following are criteria to be used to determine what constitutes disagreeing with and/or appealing the recommendation by the case manager:

      1) A dispute regarding the accuracy of the scoring of any factor.
      2) A dispute regarding movement resulting from inaccurate scoring.
      3) If an override requiring movement would impact the offender's current program assignment.

   b. The following are examples of what would not constitute an appeal of the custody rating instrument, recommendations, or decisions:

      1) Code of Penal Discipline conviction resulting in facility re-assignment.
      2) Program termination resulting in facility re-assignment.

2. For the purposes of this section, facility Classification Committee is defined in Section III. E. The decision of the facility Classification Committee will be documented in the record as well as on the reclassification custody rating instrument.

| CHAPTER | SUBJECT | AR # | Page 9 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

3. If the offender disagrees with the facility Classification Committee's decision and wishes to appeal, the offender must submit a DOC Offender Appeal Form (DC Form 150-01D) to the facility committee chairperson. The administrative head, or designee, will review the committee decision and their decision will serve as the final appeal level by the offender. The final decision will be in writing and documented in the record.

K. Facility Transfer: *Offenders may be eligible for assignment to a facility based on their scored custody level and specific criteria outlined below. [4-4281-2]*

1. Facility Assignment Criteria: Assignment to a particular custody designation does not grant the right to be assigned to, or remain at, a particular facility.

2. Temporary transfers for medical purposes shall not be considered facility transfers within the scope of this AR.

3. Lateral facility transfers regarding offender management issues, which impact or serve the interests of the Department of Corrections, that are outside of the normal classification process, may be made at any time. Such transfers must be approved by the chief of Classification and the Offender Services associate director, or designees.

4. Offenders who are required to attend, or are recommended to attend, specialized programs (Sex Offender Treatment Program, therapeutic communities) will be screened for referral to the appropriate program. In the event that an offender fails to comply with the specific program requirements, their facility assignment will not be lower than a **Level III facility**, regardless of scored custody level. If their facility assignment for the specialized program was Level II, the offender will be assigned to a Level III facility.

5. Offenders with more than ten years until their institutional discharge or mandatory release date (MRD) may not progress below a Level II correctional facility, except as outlined in IV.K.6.a.2).

6. An offender shall be eligible to be considered for transfer to an appropriate level facility in the event that the following criteria are met:

   a. Level I Facility Assignment: An offender is eligible **to be considered** for assignment to a Level I facility if all of the following criteria are met:

      1) Current custody level is minimum and assignment does not create a significant security risk.

      2) For CCC/DCC/RCC, less than 36 months remain to parole eligibility date (PED)/parole mandatory date (PMD), and less than ten years to institutional discharge/mandatory release date (MRD).

      **For placement at SCC, the offender must have less than 60 months remaining to PED/PMD and no restriction on the institutional discharge/mandatory release date (MRD).**

      3) Has not been identified as a sex offender recommended for offense specific treatment while in prison based on past or current conviction, factual basis, or police reports of charges filed indicating verifiable behavior.

      Offenders with an S code of 3, 4, or 5 with a qualifier code of "L" are eligible for Level I placement (see "Clinical Needs and Time Placement Matrix" AR 700-02, Attachment "A").

      4) If serving sentence(s) for a violent crime(s), pursuant to administrative regulation 550-04, *Identification of Violent Offenders,* the offender must serve at least six months in a Level III, or higher, facility.

      5) Not eligible for placement in RCC/DCC/SCC or Community Corrections centers if the offender has an active Immigration and Customs Enforcement (ICE) detainer. These offenders are eligible to be housed at CCC.

| CHAPTER | SUBJECT | AR # | Page 10 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

6) Must meet clinical needs placement matrix (see the appropriate Classification Manual). Must have a waiver from Clinical Services for any allowable variance as indicated on the matrix.

7) Offenders who have felony detainers, pending charges, or warrants may be considered for placement at level I facility if:

   a) It is has been verified as non-extraditable.
   b) The detainer, pending charge, or warrant is for a non-violent case at or below a Class 5 felony.
   c) It is staffed with Central Classification and is approved by the facility warden or designee.
   d) Placement is **NOT** for a Community Corrections assignment.

8) Community Assignment: An assignment must be approved by the Community Corrections Board if the offender meets timeframes and criteria for referral according to CRS 18-1.3-301 and AR 250-03, *Community Corrections Referral and Placement Process.*

b. Level II Facility Assignment: An offender is eligible **to be considered** for assignment to a Level II facility if all the following criteria are met:

   1) Current custody level is minimum restricted, or below, and assignment would not create a significant security risk.

   2) Less than 60 months remain to PED/PMD.

   3) If serving sentence(s) for a violent crime(s), pursuant to administrative regulation 550-04, *Identification of Violent Offenders,* the offender must serve at least six months in a Level III or higher facility.

   4) Must meet Clinical Needs Placement Matrix (see appropriate Classification Manual). Must have a waiver from Clinical Services for any allowable variance as indicated on the matrix.

   5) Meets stipulations for identified treatment needs as identified in section IV.K.4.

   6) Offenders serving a life sentence, with the possibility of parole, must have their case staffed by Central Classification, prior to any progressive movement below Level III. The facility case manager will be responsible to notify the central classification officer that the offender is being considered for progressive movement. The central classification officer will submit their recommendation to the chief of classification and the associate director of Offender Services for review. If further review is necessary, it will be taken to the director of Prisons for a final decision. The central classification officer will be responsible to then notify the case manager of the decision.

   7) Has not been identified as a sex offender recommended for offense specific treatment while in prison due to past or current conviction, factual basis, or police reports of charges filed indicating verifiable behavior. Exceptions may be made for placement in a Sex Offender Treatment Program.

   Offenders with an S code of 3, 4, or 5 with a qualifier code of "L" are eligible for Level II placement (see "Clinical Needs and Time Placement Matrix" AR 700-02, Attachment "A").

   8) Offenders who have felony detainers, pending charges, or warrants may be considered for placement at level II facility if:

   a) It is has been verified as non-extraditable or,
   b) The detainer, pending charge, or warrant is for a non-violent case at or below a Class 4 felony.
   c) It is staffed with Central Classification and is approved by the facility warden, or designee.

| CHAPTER | SUBJECT | AR # | Page 11 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

    c.  Level III Facility Assignment: An offender is eligible **to be considered** for assignment to a Level III facility if all the following criteria are met:

       1)  Current custody level is mixed, (Close and below).

       2)  Must meet Clinical Needs Placement Matrix (see the appropriate Classification Manual). Must have a waiver from Clinical Services for any allowable variance as indicated on the matrix.

    d.  Level IV Facility Assignment: An offender is eligible **to be considered** for assignment to a Level IV facility if all the following criteria are met:

       1)  Current custody level is mixed, (Close and below).

       2)  Must meet Clinical Needs Placement Matrix (see the appropriate Classification Manual). Must have a waiver from Clinical Services for any allowable variance as indicated on the matrix.

    e.  Level V Facility Assignment: An offender is eligible **to be considered** for assignment to a Level V facility if any of the following criteria are met:

       1)  Current custody level mixed, close, and below and includes administrative segregation.
       2)  Active death sentence (CSP or DWCF assignment only).
       3)  Offenders who are assigned to a specialized program and/or facility.

L.  Supervision of Offenders Prior to Transfer

    1.  In the event that an offender is on a waiting list for transfer to a facility with a higher designated security level, the offender shall be supervised at the higher assigned custody level to the extent practicable within the resources available at their present facility.

    2.  In the event that an offender is on a waiting list for transfer to a facility with a lower designated security level, the offender shall be supervised at the custody level equivalent to the security level of the current facility.

    3.  If continued housing of an offender at their presently assigned facility would pose significant risk of injury to the offender, another offender(s), or constitute an extreme risk or threat to the security of the facility or risk to the general public, the offender shall be reviewed for temporary assignment to a more appropriate facility on an emergency basis. Such movement shall be approved by the Offender Services associate director, or designee, within one working day and must be followed by appropriate classification documents within ten working days.

M.  Removal from General Population (RFP): *If housing of an offender within the general population would be inconsistent with the safety of the offender*, DOC employees, contract workers, volunteers, visitors, or the security of the facility, the *shift commander may order the temporary removal of the offender. The offender may be reassigned to a separate living area when no other alternative is available, [4-4133] [4-4251]* within the current facility or another facility. In such cases, the following procedures shall be followed:

    1.  Procedures for using the RFP Form DC Form 600-01A:

       a.  The shift commander shall complete DC Form 600-01A, "Removal from Population," (Attachment "A") and forward to the facility administrative head, or designee, no later than one working day after such action has been taken. *Clinical Services will be informed immediately when an offender is transferred to segregation so a screening (anatomical) may be performed. [4-4400]*

       b.  The administrative head shall review the removal of an offender from general population within one working day after such action has been taken.

| CHAPTER | SUBJECT | AR # | Page 12 |
|---------|---------|------|---------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

    c. ***The facility Classification Committee and/or classification officer will review the RFP within three working days of the administrative head review. [4-4250]***

    d. ***The offender shall be returned to the general population within ten working days after removal, unless reclassification, disciplinary, or administrative segregation procedures have been initiated. The return to general population will be reviewed and approved by the appropriate authority, as designated by facility policy. In the event that any one of these procedures has been initiated, the time limits and review/approval of the applicable policy shall be followed. [4-4254]***

2. Exceptions to using the RFP form would be for placement into segregation as the direct result of sanctions on an offense where the offender was not removed from population prior to the hearing. In this case, the DC Form 600-01A would not be used.

N. <u>Utilization of Management Control Units (MCU)</u>: As placement in management control units is a temporary assignment, offenders will be moved at the next available scheduled transport to a higher level security facility.

O. <u>Interstate and Intrastate Contract Cases</u>: Offenders placed in a state or facility in which Colorado has executed specific contracts for bed space will be managed through the Private Prison Monitoring Unit after approval of the executive director, or designee.

1. The Classification Committee at each facility will review the criteria identified by the Office of Offender Services and the Private Prisons Monitoring Unit to determine those offenders who may be referred for contract housing.

2. The Office of Offender Services and the Private Prisons Monitoring Unit shall have final approval of all cases identified for contract housing.

3. Offenders placed in a contracting state will be monitored by the Private Prisons Monitoring Unit. In selected instances, specific facilities may be asked to monitor caseloads. This service may require coordination with the Private Prisons Monitoring Unit.

P. <u>Interstate Corrections Compact Exchange Cases</u>: ***Transfer of offender supervision to and from out-of-state jurisdictions shall be in accordance with interstate corrections compacts and other interstate agreements and interstate contracts. [2-CO-4B-02]***The Interstate Corrections Compact Office, within the Office of Offender Services, will manage all interstate corrections caseloads. Offenders requesting transfer out-of-state shall make their request to their assigned case manager who shall refer the request to the facility Classification Committee for review. (See the Case Management Manual.)

1. If the Classification Committee approves the case for referral to the administrative head, the "Interstate Corrections Compact Services Application," will be completed.

2. If the administrative head approves the case, a release of records form and other supporting documents to include: diagnostic summary, pre-sentence investigation, mittimus (1), current performance assessment summary, classification rating, and other relevant case materials are forwarded, along with the "Interstate Corrections Compact Services Application," to the Office of Offender Services. Offender Services shall review and process to states under the Interstate Compact Agreement. If the requested state is not under compact with Colorado, the request may be denied.

3. Offenders will observe the receiving state's policies, rules, and procedures related to, but not limited to, classification, case management, and discipline code.

4. Offenders requesting out-of-state transfer shall be responsible for all costs associated with the transfer to the respective compact state.

| CHAPTER | SUBJECT | AR # | Page 13 |
|---------|---------|------|---------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

Q. Classification Task Force

1. For the purpose of this section, the Classification Task Force is defined in Section III.G.

2. Suggestions for modifications to this AR shall be routed through the chairperson of the Classification Task Force.

3. Executive DOC employees, the associate director of Offender Services, chief of Classification, or the Classification Task Force may call for evaluations of the classification system. This may be called for as needed, but the **classification plan shall be reviewed at least annually, and updated, as needed. [4-4295]** Specific monitoring activities may be completed as necessary.

R. Procedural Irregularities and Variances

1. Any inadvertent procedural irregularity shall not constitute grounds for setting aside, vacating, or modifying a classification decision, except upon a clear showing of prejudice to the offender.

2. Any variance of this administrative regulation shall be referred, in writing, with recommendations and documentation, to the executive director.

S. Declaration of Emergency: In the event the executive director, or appropriate director, has declared an emergency, due to a significant facility or center disturbance or emergency, the provisions of this AR may be suspended.

V. RESPONSIBILITY

A. Each administrative head will be responsible to:

1. Establish a case management section within their facility and identify a specific supervisor or manager for the case management responsibilities.

2. Disseminate this administrative regulation to all appropriate DOC employees and contract workers that are responsible for adhering to this AR.

3. Ensure that classification policies and procedures are in compliance with this administrative regulation.

4. Review and give final approval of override recommendations; prepare, transmit, and track case materials to appropriate governmental or non-governmental agencies, to ensure coordinated placement of appropriate offenders in community facilities; will ensure and determine the appropriate custody levels for all offenders assigned to their respective facilities, offices, or divisions. The facility case manager may make special recommendations for offenders based upon identifiable needs and detailed written justification.

B. The director of Prisons is responsible to ensure compliance with this administrative regulation.

C. The associate director of Offender Services will be responsible for:

1. Overall implementation, compliance, and review of this administrative regulation.

2. Override or modify decisions relative to classification actions completed at the facility level, according to this policy, with a show of good cause, and document such decisions on the classification custody rating instrument and in the central offender record (department file).

3. Direct the calling for, and the implementation of, the Classification Task Force.

| CHAPTER | SUBJECT | AR # | Page 14 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

D.  The chief of Classification will be responsible to:

1.  Coordinate the Classification Task Force meeting.

2.  Act as the Central Classification Committee chairperson.

3.  Develop training, in coordination with the training coordinator, for classification and case management.

4.  Oversee implementation and compliance of this administrative regulation, at the direction of the associate director of Offender Services.

5.  Override or modify decisions relative to classification actions completed at the facility level, according to this policy, with a show of good cause, and document such decisions on the classification custody rating instrument and in the central offender record (department file).

E.  The Central Classification Committee will be responsible to:

1.  Review each classification action and related documentation in order to make decisions regarding initial facility assignment, progressive, regressive, or lateral assignments.

2.  Resolve with the facility Classification Committee chairperson, or designee, all cases recommended by the facility regarding a classification action, and or offender movement, when a disagreement exists.

3.  Transmitting EAOs (executive assignment orders) to the appropriate facility.

4.  Override or modify decisions relative to classification action completed at the facility level, according to this policy, with a show of good cause, and document such decisions on the classification instrument and in the central offender record (department file).

5.  Serve as classification/case management liaisons for/to their assigned facilities, utilizing existing data systems to monitor the areas of offender management systems. Work with the case management supervisors, facility managers, and wardens to resolve issues pertaining to these areas.

F.  The facility Classification Committee shall be responsible for:

1.  Agreement, disagreement, or recommending modification to cases presented by the offender's assigned case manager for an override, and or offender movement.

2.  Reviewing all discretionary scoring, with or without the presence of an override recommendation (as defined in section IV.H.1.a,b,c.).

3.  Reviewing of offender program and job assignments.

4.  Reviewing all documentation and possibly taking the offender's statement, prior to making a final decision on job or program assignment.

5.  Monitoring overall facility program and job assignments.

6.  Monitoring implementation of this administrative regulation within the facility.

G.  Case Management supervisors shall be responsible for:

| CHAPTER | SUBJECT | AR # | Page 15 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

1. Coordination and supervision of all case managers and case management activities to include classification for the facility/center. Serve as facility Classification Committee chairperson if so designated by the administrative head.

2. Ensuring that activities and functions of the case management process, between the case manager and offenders assigned, are adequately monitored and defined.

H. Case managers shall be responsible to:

1. Review all relevant casework materials including, but not limited to, mittimus(i), violation(s) of the *Code of Penal Discipline* (AR 150-01), pre-sentence investigation report, time computation information, prior criminal history, escape history, detainer(s), and the Denver Complex's initial summary and evaluation.

2. Maintain time computation records and advise offenders of critical changes which may impact their custody level.

3. Distribute copies of the initial or reclassification custody rating instruments, as outlined in the appropriate Classification Manual.

5. Advise offenders assigned to caseload of facility Classification Committee and Central Classification Committee decisions as soon as possible.

6. Present all classification cases to the Classification Committee when:

   a. The offender's scored custody level is inconsistent with his/her presently assigned facility or assignment.

   b. An override request has been made by the assigned case manager. The offender may make a statement to the facility Classification Committee when the offender disagrees with the case manager's recommendation.

   c. A program change is recommended by the case manager. The offender may make a statement to the facility Classification Committee when the committee is considering assignment to or changes in the offender's job and/or program assignment(s) if the offender disagrees with the case manager's recommendation.

   d. The offender's scored custody level is higher than the current facility assignment. The facility Classification Committee must review such cases even if an override is not being recommended.

   e. Any discretionary scoring by a case manager must be reviewed by the facility Classification Committee even when an override is not recommended.

7. Ensure that all offender custody designations and facility assignments are chronologically documented for inclusion into the offender's case files.

VI. AUTHORITY

A. CRS 16-11-308. Custody of department of corrections - procedure.
B. CRS 17-1-103. Duties of the executive director.
C. CRS 17-25-103. Placement limitations.
D. CRS 17-40-101 through 107 as amended. Colorado Diagnostic Program.
E. CRS 18-1.3-301. Authority to place offenders in community corrections programs.
F. CRS 18-1.3-406. Mandatory sentences for violent crimes.
G. CRS 24-60-801. Western Interstate Corrections Compact.
H. CRS 24-60-1601. Interstate Corrections Compact.

| CHAPTER | SUBJECT | AR # | Page 16 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 12/01/10 |

VII. <u>HISTORY</u>

    October 15, 2008
    October 15, 2007
    December 1, 2006
    December 1, 2005
    June 1, 2005
    June 1, 2004
    June 1, 2003

ATTACHMENTS:   A.  DC Form 600-01A, Removal from Population
                 B.  AR Form 600-01B, Security Levels (comparison)
                 C.  AR Form 100-01A, Administrative Regulation Implementation/Adjustments

DC Form 600-01A (10/15/08)

## DEPARTMENT OF CORRECTIONS
## REMOVAL FROM POPULATION
### FACILITY

| | |
|---|---|
| OFFENDER NAME: | DOC NUMBER: |
| CURRENT CUSTODY DESIGNATION | CURRENT PMD/PED |

REMOVAL FROM POPULATION: THE OFFENDER IS BEING REMOVED FROM THE POPULATION AND IS BEING SEGREGATED, OR MOVED TO A MORE SECURE FACILITY, PENDING AN ONGOING INVESTIGATION WHICH MAY LEAD TO EITHER DISCIPLINARY CHARGES OR ADMINISTRATIVE SEGREGATION.

REASON:
[] Offender's conduct poses serious threat to security of facility
[] To prevent imminent injury to an offender(s) or to a DOC employee/contract worker(s)
[] To contain or prevent or quell a riot
[] To prevent escape
[] Other, specify_____

JUSTIFICATION:
_____
_____
_____

SHIFT COMMANDER/DUTY OFFICER: _____

DATE: _____     TIME: _____

CLINICAL SERVICES NOTIFIED - DATE: _____TIME: _____   NAME: _____

[] AGREE          [] DISAGREE-RETURN TO GENERAL POPULATION

COMMENTS: _____
_____
_____

WARDEN/ADMINISTRATIVE HEAD/DESIGNEE _____

DATE: _____     TIME: _____

CLASSIFICATION COMMITTEE/CLASSIFICATION OFFICER

[] AGREE          [] DISAGREE-RETURN TO GENERAL POPULATION
DATE: _____     TIME: _____

SIGNED: _____
*NOTE: THIS REVIEW MUST BE COMPLETED WITHIN 3 WORKING DAYS OF THE WARDEN'S REVIEW

DISTRIBUTION:   White-Department File      Canary-Working File

THIS DOCUMENT IS A COMPUTERIZED FACSIMILE FOR ADMINISTRATIVE REGULATION AND IS NOT INTENDED TO REPLACE THE ORIGINAL DC FORM 600-01A.

Attachment "A"
Page 1 of 1

AR Form 600-01B (12/01/05)

# COLORADO DEPARTMENT OF CORRECTIONS
## SECURITY LEVELS

|  | LEVEL V | LEVEL IV | LEVEL III | LEVEL II | LEVEL I |
|---|---|---|---|---|---|
| **EXTERNAL SECURITY** | Double fence; razor wire; detector devices; towers with 24 hour coverage; sally-ports. | Double fence and/or razor wire; detector devices; towers; sally-ports; 24 hour perimeter patrol. | Wall and/or double fence; razor wire; detector devices; patrol; towers. | Designated boundaries; single or double fence; periodic patrol. | Designated boundaries. |
| **CELL DOORS** | Remote controlled sliding and lockable doors. | Remote controlled hinged or sliding lockable doors. | Units or cells; hinged, lockable doors. | Units or cells; hinged doors; lockable exterior doors. | Non-security doors; lockable exterior doors. |
| **HOUSING** | Outside cells; bars on all openings. Sallyport doors to outside operated by a control center. | Outside cells; bars on all openings; outside doors lockable from control area. | Cells, rooms, or dormitories with bars on window openings. | Modular units, cells, or dormitories. | Individual rooms or dormitories. |

Attachment "B"
Page 1 of 3

AR Form 600-01B (12/01/05)

# MINIMUM STANDARDS FOR CUSTODY LEVELS

|  | ADMINISTRATIVE SEGREGATION (See AR 600-2) | CLOSE | MEDIUM | MINIMUM RESTRICTED | MINIMUM |
|---|---|---|---|---|---|
| **OBSERVATION** | Constant supervision from behind barrier when out of cell. | Constant supervision when out of cell. | Frequent and direct. | Within compound, direct. Outside of fence/on property, frequent direct supervision. | Within compound, direct. Off property frequent as approved by Administrative Head. |
| **DAY MOVEMENT\*** | Outside movement only with restraints. Up to 23 hour lockup. Daytime only out of cell. | Movement limited to structured times or cleared by Shift Commander. | Inside compound unrestricted. | Inside compound unrestricted. Outside compound by clearance. | Inside compound unrestricted. Outside fences on and off property by clearance. |
| **NIGHT MOVEMENT\*** | Only in restraints and by order of Administrative Head. Emergency only. | Only by order of Administrative Head or Shift Commander. | Only by order of Administrative Head or Shift Commander. | Only by order of Administrative Head or Shift Commander. | Only by order of Administrative Head or Shift Commander. |
| **EVENING MOVEMENT\*** | Only in restraints and by order of Administrative Head. Emergency only. | Only by order of Administrative Head or Shift Commander. | Unrestricted inside compound. | Unrestricted inside of compound. Outside fence with clearance. | Unrestricted inside of compound. Outside of fence/off property with clearance. |
| **ACCESS TO JOBS** |  | Limited to facility. | Limited to facility. | All jobs on property inside or outside perimeter unless authorized by Administrative Head. | All jobs on property and off property with approval by Administrative Head. |
| **ACCESS TO PROGRAMS** | Select treatment programs approved by facility Warden. | Select programs with approval of facility Administrative Head. | All programs inside perimeter. | All programs inside perimeter. Selected programs outside perimeter (on property). | All programs inside perimeter. Selected programs outside perimeter (on/off property). |
| **VISITS** | Non-contact. Contact by Administrative Head approval. Approved list. | Non-contact/contact. Indoor only. Approved list. | Contact, supervised indoor and outdoor. Approved list. | Contact, periodic supervision indoor and outdoor. Approved list. | Contact, periodic supervision indoor and outdoor. Approved list. |

\*Can be operationally defined and implemented by facility procedures.

Attachment "B"
Page 2 of 3

AR Form 600-01B (12/01/05)

# MINIMUM STANDARDS FOR CUSTODY LEVELS

| | ADMINISTRATIVE SEGREGATION (See AR 600-2) | CLOSE | MEDIUM | MINIMUM RESTRICTED | MINIMUM |
|---|---|---|---|---|---|
| **LEAVE THE INSTITUTION** | 2 Transporting Officers requires; full restraints. Court or medical only. Armed escort. | 2 Transporting Officers requires; full restraints. Court or medical only unless Administrative Head clears. | Escorted, full restraints. | Escorted, restraints optional. | Escorted, restraints optional. |
| **ACCESS TO EXERCISE** | On unit only. Includes unit yard, if available. | Inside of compound. Includes unit yard. | Inside of compound. | Inside of compound. | Inside of compound. Supervised out of facility. |

Attachment "B"
Page 3 of 3

## ADMINISTRATIVE REGULATION
## IMPLEMENTATION/ADJUSTMENTS

AR Form 100-01A (04/15/08)

| CHAPTER | SUBJECT | AR # | EFFECTIVE |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | 12/01/10 |

(FACILITY/WORK UNIT NAME) _____
WILL ACCEPT AND IMPLEMENT THE PROVISIONS OF THE ABOVE ADMINISTRATIVE REGULATION:

[ ] AS WRITTEN  [ ] NOT APPLICABLE  [ ] WITH THE FOLLOWING PROCEDURES TO ACCOMPLISH THE INTENT OF THE AR

(SIGNED) _____ (DATE) _____
                    Administrative Head

Attachment "C"
Page 1 of 1