IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

    -vs.-

JOHN HICKENLOOPER, et al.,

        Defendants.

---

Claim Number: 03-504
Category III
Claimant: Richard Trujillo, Jr., #66461
Address of Claimant: CCCF, 6564 State Highway 96, Olney Springs, CO 81062-8700

---

## FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on August 29, 2011. The hearing was held at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. Present for the hearing were the following: Richard Trujillo, Jr. (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

Claimant called the following witnesses at the hearing: Judy Bryendine, R.N. and Dr. Louis Cabiling, M.D. Claimant also testified on his own behalf. Defendants presented the following witnesses by telephone: Meghan Reed and Dr. Gagandeep Singh, M.D. Defendants also offered into evidence exhibits A through O, and all were admitted. At the conclusion of testimony, Claimant requested additional time to submit further documents to be considered in this case. That request was granted, but no additional exhibits were submitted by Claimant.

## I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the

settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.
> B. QUALIFIED INMATE
> Inmate with a permanent disability/impairment which substantially

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

> 2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
> 1. Is the claimant a disabled individual who is a member of the class?
> 2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
> 3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
> 4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on that process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody on November 7, 1991. He was evaluated at the Denver Reception and Diagnostic Center (DRDC). He was transferred to the Buena Vista Correctional Facility (BVCF) and was released from custody on December 31, 1991.

Claimant returned to DOC custody on February 1, 2001. He was again evaluated at DRDC. Claimant was transferred to the Four Mile Correctional Complex (FMCC) in Canon City, Colorado on April 3, 2001. Claimant remained at FMCC until January 24, 2002 when he was moved to the Bent County Correctional Facility (BCCF) in Las Animas, Colorado. On April 3, 2003, Claimant was transferred to the Fort Lyon Correctional Facility (FLCF) in Ft. Lyon, Colorado.

Claimant then was transferred to the Delta Correctional Complex (DCC) in Delta, Colorado on July 27, 2006. Claimant was placed into a community placement on January 10, 2007. That placement failed, and Claimant was returned to DOC at the Sterling Correctional Facility (SCF) on May 29, 2008. Claimant remained at SCF until October 10, 2010 when he was placed into another community facility. That placement failed, and Claimant was charged with escape. Claimant was returned to full DOC custody and placed at CCCF on March 8, 2011.

While incarcerated at SCF, Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. Claimant checked all four boxes and alleged that he was hearing impaired, vision impaired, mobility impaired and diabetic. In response to the question requesting information about claimed disabilities, Claimant stated in part, as follows:

Diabetic DKA on October 29th 2009, sent to Sterling Hospital, and Denver Health and Hospitals as well as the DOC Infirmary, from October the 29th to December the 17th, 2009. Was and still diagnosed with diabetic complications, liver, heart, eyes, kidney, and nerve damages to the feet as well. Diagnosed in 1990 at the DOC diagnostic center as a Hyper/Hypo gloesemic and or diabetic will no further test to be done and none until the incident which occurred on October 29th, 2009 date.

Eyesight, vision is now impaired from the DKA, as well as the kidneys, the heart, and my lower extremities, feet legs toes, heart valves are being treat with medications and liver, and kidneys also, prior to the stated above problems the Department of Corrections Sterling Facility was notified with kites to medical and case managers, as well as the security C.O.s in the yard and medical nursing staff in medline for six weeks prior to the October 28th 2009 DKA hospitalization, that there was and is a problem. To no avail.

In response to the question in the claim form about discrimination, Claimant stated:

Because of my diabetic nature that was ignored until emergency hospitalization, and programs are denied because of my diabetic nature I can not attend the Colorado drug and alcohol program at Cheyenne Mountain Colorado Springs or be placed into a DOC lower level facility unless I waive my ADA accommodations which will cause me to lose my ADA status and all medical treatments for the diabetics, then I will be allowed to attend this much needed program(s), as well as certain housing placements have been set which limit advancement to progress out of DOC.

Claimant further has alleged that he was denied placements due to his medical rating and was requested to waive his accommodations and ADA status.

**III.**

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

Claimant did not establish that he was disabled, as defined by the Remedial Plan, on or before August 27, 2003. Claimant focused in on recent events, including a severe episode with diabetes in 2009 that included hospitalization. There is no question that Claimant is diabetic at this time. There is no evidence to establish that he was diabetic in 2003.

Claimant's medical concerns all arose after August 27, 2003. Though Claimant has legitimate concerns about his health and medical care, what has occurred subsequent to August 2003 is beyond the jurisdiction of the Special Master. The Remedial Plan allows for amendment of a claim, but only if a claimant was disabled and the victim of discrimination prior to August 27, 2003. Claimant does not fall into that category.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** No evidence was presented that Claimant was otherwise unqualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master

5

may consider evidence after that date if the discrimination was on-going.

Almost all of Claimant's concerns relate to the quality of medical care that he has received since entry into DOC custody. The Tenth Circuit's opinion in *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1143 (10th Cir. 2005) is binding upon the Special Master. The ADA and Rehabilitation Act cannot be used to contest the *quality* of medical care received by an inmate in a prison or jail. The basis for attacking the quality of care requires use of the Eighth Amendment or state statutes. Claimant is precluded from using the claim process to attack the medical care he received while in DOC custody. The evidence is that Claimant received some care. The sufficiency of that care cannot be litigated in this case.

Claimant has not shown that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act. *Fitzgerald* precludes consideration of the sufficiency of medical care provided to Claimant prior to August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Richard R. Trujillo, Jr. is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before January 23, 2012.**

SIGNED this 13th day of October, 2011.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master