IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.

    Plaintiffs,

-vs.-

JOHN HICKENLOOPER, et al.

    Defendants.

_____

Claim Number 01-092
Category: I
Claimant: James Rudnick, #68432
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

## ORDER OF SPECIAL MASTER
_____

THIS MATTER came before the Special Master for a hearing on February 6, 2012. This hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: James Rudnick (Claimant); and Jacquelyn Rich Fredericks, attorney for Defendants.

Claimant testified in his case in chief. Claimant also called Ms. Adrienne Jacobson who is now a policy analyst for the Colorado Department of Corrections (DOC). A representative of the Hanger Orthopedic Group (Hanger) testified by telephone at the request of the Special Master. After presentation of closing arguments, the case was taken under advisement. Further argument will be waived.

The hearing on February 6, 2012 was to determine whether Defendants had complied with and/or were complying with the final order of the Special Master. The sole subissue dealt with

footwear provided to Claimant.

Claimant was convicted in the Denver District Court in case 91CR2236. Claimant was sentenced on June 16, 1992 to a life sentence with the possibility of parole. According to the DOC Inmate Locator, Claimant is eligible for parole on April 10, 2036. Absent a commutation or similar action by the Governor, Claimant can never discharge his sentence. Claimant is 51 years old, having been born on May 18, 1960.

After Claimant was sentenced, he was placed into the custody of DOC. On August 17, 1992, Claimant was incarcerated at the Limon Correctional Facility (LCF). Claimant remained at LCF until he was moved to SCF on July 29, 2010.

The *Montez* case commenced in 1992 as a *pro se* civil rights action. Counsel became involved in the case in 1994, and the matter was certified ultimately as a class action under the Americans with Disability Act and Rehabilitation Act. A settlement of the case was proposed to then-Judge Nottingham in 2003, and a fairness hearing was held in late August 2003. On August 27, 2003, the Remedial Plan was approved by the Court.

The Remedial Plan contains the settlement provisions agreed to by class counsel and Defendants. The Remedial Plan made significant changes in systemic programs. Judge Kane has before him the issue of whether there has been compliance with the Remedial Plan by Defendants. Systemic issues are not relevant to the matters before the Court dealing with the motion of Claimant.

The second major provision of the Remedial Plan is the claim process contained in Article XXXII. This article reads as follows:

> XXXII. Damages
> Damages of individual class members shall be determined by a special master designated as Richard Borchers and/or Bruce Pringle. After approval of this

Remedial Plan, class members will be provided a Damage Claim Form to fill out concerning their individual damage claims. Class members may attach any relevant information to this form, including proof of injury or the denial of services or benefits, affidavits, medical information, or any other information desired to be submitted that is relevant to his/her claim of damages. Inmates who have ongoing claims for damages may submit claims for future damages. Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.   General inconvenience or nominal damages;

    II.  Damages due to loss of good time/earned time/access to programs or services that have not resulted in physical injury;

    III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as fear of death);

    IV. Damages due to severe physical injuries;

    V.  Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

Class members with damages allocated under categories 1 and 2 shall not be entitled to a hearing before the special master. Class members (or their representatives) with damages under categories 3, 4 & 5 shall be entitled to a hearing before the Special Master. Generally, these hearings should be no more than two hours in length. However, the Special Master may extend the time for the hearing when the issues require additional time. Class members that are entitled to a hearing on their respective damages are entitled to counsel during that hearing, to present witnesses, make argument, and to any remedy otherwise available in a court of law.

After review of the evidence, the Special Master shall issue a written determination as to the damages awarded to each claimant. These awards may be appealed on an abuse of discretion review to the Honorable Judge Kane.

Class members, their representatives and counsel are entitled to discovery regarding their damage claims and shall be provided copies of the relevant DOC files upon request, including but not limited to medical information, as well as relevant internal quality assurance documents as allowed by the special master.

Damage claims must be filed within 90 days of receipt by the inmate of the Damage Claims Form. However, if a claim arises during the compliance period, then the inmate may amend his/her claim to request compensation for additional damages. No additional claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may

> bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court in this case. The Special Master may only extend the time limited for filing a damage claim upon a showing that the class member was prevented from, or incapable of filing within the specified time period.
>
> Plaintiffs' Class Counsel may or may not represent individual class members with respect to their individual damage claims. Class counsel does not have an obligation to represent any individual with respect to their individual damage claim.

This is the only section in the Remedial Plan that deals with the damage claim process. Over the intervening eight plus years, orders from the Court have interpreted this section, including the preclusion of the Federal Rules of Civil Procedure to discovery and a determination that the Special Masters have no power to issue subpoenas for hearings.

Claimant filed a claim pursuant to Article XXXII of the Remedial Plan. His claim was assigned to Category I. Claimant was allowed to submit documentation in support of his claims. Defendants were granted the opportunity to respond to the claim. No hearing was held on the underlying claim, as Category I claims were to be resolved without a hearing.

The Special Master issued his final order on September 27, 2005. *Doc.1133*. The Special Master determined that Claimant was not vision impaired, but had a mobility impairment. The Special Master further determined that Claimant had been the victim of discrimination prohibited by the ADA and Rehabilitation Act. The Special Master ruled, in part, as follows:

> Defendants' conduct harmed the Claimant. The Special Master finds that the appropriate remedy is to provide Claimant with medical assistive devices recommended by DOC to address Claimant's permanent lower mobility impairment.

Based upon the finding that discrimination had occurred, the Special Master directed DOC to provide various items to Claimant.

>        IT IS FURTHER ORDERED that the claim of James Rudnick is granted as to permanent extremity mobility impairment and within the next thirty days DOC is to provide Mr. Rudnick with the following: a medical mattress; a heating pad; boots that fit his feet; custom made orthotics, not the orthotics or insoles that can be purchased in the canteen; and a chair and an adjustable stool that accommodates his height and weight and adequately supports his back and lower extremities.

No monetary compensation was awarded to Claimant. Defendants filed an objection to the order, but Judge Kane affirmed the order of the Special Master on December 16, 2005. *Doc.#1243.*

On November 24, 2010, the Special Master received a letter from Claimant which alleged that he was having trouble getting replacement boots. He alleged further that his employment in the kitchen led to his boots being soaked with water. An order was issued on December 1, 2010 requesting responses from Defendants and class counsel concerning what jurisdiction, if any, existed over Claimant's request for Court intervention.

Judge Kane issued an order on January 19, 2011 in which he held that limited jurisdiction exists for the Special Master to determine if the final order on a claim has been complied with by Defendants. The Special Master has been directed to issue a report and recommendation if Defendants have not complied with the substance of the final order.

Based upon Judge Kane's order, a hearing was set on Claimant's letter that was treated as a motion. That hearing was held on June 20, 2011 at SCF. Claimant testified concerning what had transpired since September 27, 2005. Claimant testified that he eventually received everything that had been ordered. He did not have a medical mattress at that time, as he was living in the honor pod which had special mattresses. He had a heating pad, custom orthotics, and a stool. He had been provided a new chair but chose not to use it as it was too big for his cell.

Claimant's main issue concerned his boots. He testified that he has worked in the kitchen at

SCF and at LCF. As a result, his boots get soaking wet. The shoes then deteriorate and fall apart, requiring a replacement pair of boots. He testified that in March 2010 he had made a request for replacement boots that fit his feet. It took until August 2010 before DOC headquarters approved the request and acknowledged that there was a duty to replace the boots if they were worn out. Claimant stated that he received his new boots on April 12, 2011.

After the hearing, the Special Master issued an order on July 8, 2011 which reads, in part, as follows:

> The Special Master finds that a delay in obtaining replacement boots for Claimant of thirteen plus months is unacceptable. Anything in excess of sixty days would be presumptively unacceptable. The Special Master finds further that no evidence has been presented that would warrant a recommendation to Judge Kane for issuance of a citation to Defendants to show cause why they should not be held in contempt of court. Defendants are on notice that any further delays in obtaining replacement shoes will be viewed differently.
>
> Finally, the Special Master determines that he does not have the jurisdiction to order Defendants to provide a second set of boots or soft-soled shoes. These were not part of the order of September 27, 2005. Asking an individual to work in a water-soaked environment and providing only one pair of boots or shoes does not make much sense. Claimant should be accommodated so that he does not prematurely wear out his footwear.

The net result was that Claimant's letter, being treated as a motion, was denied.

Claimant continued to send to the Special Master and Court pleadings that alleged non-compliance with the final order. On September 26, 2011, Claimant filed a "status report" which alleged further problems in obtaining boots or shoes that fit. An order was issued directing Defendants to respond, which they did. A further hearing was set in order to take testimony concerning the footwear provided to Claimant. Both sides were advised that the sole issue would be footwear and whether Defendants were continuing to comply with the final order.

The evidence presented at the hearing set forth a picture that was different than that set forth in written pleadings. First, Claimant does have an unusual sized foot. He can wear a 12 ½ E or a 13D or E. Second, Defendants have a contract with Hanger to provide odd sized footwear to inmates at SCF. Third, the shoes secured from Hanger are specially made by a manufacturer that is separate from Hanger. Fourth, each pair of custom-made boots costs DOC the sum of $280.00. Fifth, Claimant had comfortable and appropriate footwear from 2005 until 2010. That footwear consisted of boots that were secured "off the shelf" at the laundry at LCF. Sixth, Claimant is not demanding specially made boots, only boots that are comfortable. Seventh, efforts have been made by DOC staff to secure footwear that fits Claimant.

Eighth, a new pair of boots should be provided to Claimant by the end of February 2012. These boots are being manufactured by a company that Hanger utilizes. Claimant's feet were measured by the Hanger representative in late 2011, and the measurements are being used to make the third pair of boots secured so far from Hanger. Ninth, Claimant has worked over the past thirty-six months in the prison kitchens or as a porter, and his feet have become soaked in water.

From the evidence, it is difficult to find that DOC has failed to comply with the letter and spirit of the final order from 2005. It would be preferable for DOC to provide rubber boots to protect the specially made boots from the water in the kitchen. The Special Master cannot order those rubber boots, as they were not part of the final order on Claimant's damage claim. The issue of whether a claimant or Defendants may seek modification of a final order on a damage claim has not been presented clearly and concisely. Of the claimants who prevailed on their claims, the vast majority received monetary compensation. DOC was ordered to provide something, such as shoes, etc., in less than fifty claims. The issue of modification will have to wait for a different time and claim. Article

XXXII is silent concerning modification of final orders. More importantly, the footwear issue should be resolved between Claimant and staff at SCF. It is not an issue that should require court supervision.

Finally, there is every reason to believe that the footwear issue will become moot when the third pair of specially made boots are delivered to Claimant. The Special Master notes that Claimant had boots that fit for several years. There is no reason to believe that the new pair will be uncomfortable.

IT IS HEREBY ORDERED that Claimant's letter, being treated as a motion to compel, is denied for the reasons noted; and

IT IS FURTHER ORDERED that Claimant, Defendants and class counsel are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before April 2, 2012.**

SIGNED this 13th day of February, 2012.

BY THE COURT:

*/s/ Richard M. Borchers*

_____
Richard M. Borchers
Special Master