IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

      Plaintiffs,

  -vs.-

JOHN HICKENLOOPER, et al.,

      Defendants.

---

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

      THIS MATTER came before the Special Master for hearing on January 30, 2012. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Eldridge Griffin (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

      Claimant testified in support of his claim. Claimant also presented the testimony of Mr. Aubrey Bell, his case manager while incarcerated at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant offered into evidence Exhibits 1 through 7, and all were admitted.

      Defendants called as witnesses Dr. Timothy Creany, M.D., Martina Ring, and Amy Cosner. Defendants offered into evidence Exhibits A through O, and all were admitted.

      Claimant requested time to submit additional exhibits. Both sides were granted up to April 30, 2012 in which to submit supplemental exhibits. Further argument will be waived.

**I.**

      This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1] Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.
>
> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp.28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
> A. COVERED DISABILITIES
> The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1] The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

2

>B. QUALIFIED INMATE
>Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
>C. PERMANENT DISABILITY/IMPAIRMENT
>A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

>2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
>>1. Is the claimant a disabled individual who is a member of the class?
>>2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
>>3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
>>4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on the process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody initially on May 3, 1995. He was placed into the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. He remained at DRDC for a week and then was placed at CTCF. He was transferred on July 17, 1995 to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant was then placed into a private facility in Appleton, Minnesota where he remained until being placed at the Centennial Correctional Facility (CCF) in Canon City, Colorado on December 8, 1998.

On March 10, 1999, Claimant was placed into the Colorado State Penitentiary (CSP) in

3

Canon City, Colorado. He remained in that facility until April 18, 2000 when he was placed at the Limon Correctional Facility (LCF) in Limon, Colorado. Claimant returned to CTCF on May 30, 2000. Claimant discharged his first sentence on June 30, 2001.

On April 25, 2008, Claimant returned to DOC custody on a new conviction. He was placed back at DRDC for testing. He then was incarcerated on May 27, 2008 at SCF. He was transferred to CTCF on September 3, 2008. Claimant was placed on parole on December 2, 2009 and went to live in Colorado Springs. Parole failed, and Claimant returned to DOC custody on May 14, 2010. Claimant returned briefly to FCF but then was placed at CTCF on June 25, 2010.

Claimant was granted parole again on August 23, 2010. He returned to the Colorado Springs area. Parole again failed, and Claimant received a new conviction on charges that arose after being placed on parole. Claimant returned to DOC custody on November 20, 2011 at DRDC. He then was transferred to FCF. Subsequently, he was transferred to SCF where he remains.

The evidence presented by both sides reflects that Claimant has struggled with reading and education his entire life. Claimant related to DOC staff during his first incarceration that he was often in a class of one when he was growing up. He dropped out of school while in eleventh grade. Claimant also related to DOC staff that he had suffered two head injuries while growing up which he believes may have affected his ability to read and write.

Claimant's medical records reflect that DOC staff were cognizant of Claimant's problems reading and writing. An entry in his medical records from July 22, 1999 reflects that Claimant was believed to have Scotopic Sensitivity Syndrome (SSS). This condition was described as a "visual processing learning disability." Claimant received additional testing, and colored overlays were provided to him. Claimant testified that he had received these overlays during his first prison sentence.

The testimony presented by both sides further reflects that Claimant's learning disabilities were still present when he returned to DOC custody in April, 2008. Claimant maintained that he was afflicted with SSS and that he needed additional help. Since 2008, Claimant has received special glasses and colored overlays. Based upon testing, it appears doubtful that Claimant will ever secure a GED or dramatically increase his reading level.

Defendants spent time at the hearing attacking SSS as having no scientific basis. Specifically, they argued that SSS is a learning disability, not a vision disability. Defendants do not believe that SSS is covered by the vision disability section of the Remedial Plan.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

4

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The Special Master has had one previous vision claim based upon SSS. *Claim #03-430*. The Special Master found in that claim that SSS was a covered vision disability. The Special Master finds as to this claim that SSS is a vision disability covered by the Remedial Plan.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Claimant was otherwise qualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Claimant must establish that he was the victim of discrimination prohibited by the ADA during his first incarceration. The time period is May 3, 1995 to June 30, 2001. Absent proof of discrimination during this time period, Claimant may not raise issues that have arisen since his return to DOC custody on April 25, 2008.

The exhibits submitted by Claimant indicate that DOC staff diagnosed SSS in 1999. Claimant's own testimony acknowledges that colored overlays were provided to him. In addition, extensive testing was undertaken in hopes of finding something that would allow Claimant to improve his reading and writing. There is no evidence that Claimant was the victim of discrimination based upon a vision disability during his first incarceration. There is no evidence that Claimant was improperly denied an accommodation during his first incarceration.

Claimant has struggled all of his life with reading and writing. The testimony of Ms. Ring, special education coordinator at SCF, was not optimistic. Despite Claimant's best efforts, he has

5

made little progress in reading and writing. The *Montez* case was brought under the ADA and Rehabilitation Act, both discrimination statutes. Claimant has not proven that discrimination took place in violation of these acts during his first period of incarceration.

Claimant does have the right to file a separate lawsuit for whatever may have occurred after August 27, 2003. Claimant cannot pursue this claim as he has failed to prove that any discrimination toward him in violation of the ADA occurred prior to August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?**
In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Eldridge Griffin is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 6, 2012.**

SIGNED this 7th day of May, 2012.

BY THE COURT:

*/s/ Richard M. Borchers*
_____
Richard M. Borchers
Special Master