**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 92 - CV - 870 JLK

JESSE MONTEZ, et al

Plaintiffs,

V.

BILL RITTER, et al.,

JOHN HICKENLOOPER, et al.,

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 30 2012

GREGORY C. LANGHAM
CLERK

---

CLAIMANT'S OBJECTION TO FINAL ORDER OF SPECIAL
MASTER'S ISSUED ON MAY 7, 2012 PURSUANT TO
FRCP 53 (3) (2)

---

Claimant Eldridge Griffin # 85791 through Self-Representation as pro-se' Litigant, Respectfully submit the following objections in responce to final order of the Special Master issued on May 7, 2012.

Whereby, Pursuant to Federal Rule of Civil Procedure Rule 53 (3)(2) where on, such objection must be filed with the Clerk of the United States District Court on or before August 6, 2012. as specified in the Special Masters order.

Your Claimant, however, subsequently filed a Motion for extension of time received by the Court on June 28, 2012., where upon such claimant sought an extension of time ...

for the purpose of filing his Supplement Complaint, as of which were ment to be the objection, the Claimant misunderstood and Confused; the objection motion with the term Supplement Complaint and Supplement evidence, due to the fact that, Claimant had sent his Copy of the Court order of the Special Master As An Exhibit to His Amended Complaint.

The Special Master did grant the Claimants Motion for extension of time in which to file an objection to the Special masters Order, is granted up to and including September 17, 2012. Therefor, Claimant's objection is timely filed with the Clerk of the United States District Court, and here in after Claimant States as a ground in objection to May 7 2012 order of Special Master is as followed:

OBJECTION TO SPECIAL MASTER'S ORDER DISMISSING Mr. ELDRIDGE GRIFFIN'S CLAIM 03-479, AND, OBJECTION TO DEFENDANT'S OBSTRUCTION OF JUSTICE AND INTERFERENCE WITH GRIFFIN, ELDRIDGE'S CIVIL RIGHTS

The Claimant in this matter before the United States District Court; in objection to the Special Masters finding and ruling in part.

-2-

Where in here after, shall be explain as to why... your Claimant were hindered by the defendants et al, by either directly or indirectly the Act(s) or Actions, that, Lead to the obstruction of Justice by denial of access to the Courts during an Critical Stage in due process. specifically subsequently after hearing held by special Master and the orders issued thereof.

In the Matter, that, Came before the special master on January 30, 2012 where such hearing were held at Sterling Correctional Facility. (SCF) in Sterling, Colorado. Present were the following: Eldridge Griffin (claimant) and Jacquelynn Rich Fredricks, attorney for defendants.

Your Claimant during hearing, did request the time to submit additional exhibits. In addition, it were established that Claimant may submit his closing argument in support of his claim. Thereafter, both sides were granted up to April 30, 2012 in which to submit Supplemental exhibits.

Moreover, after said hearing while your Claimant were attempting to provide the supplemental exhibits, and the preparation of the Closing argument for submition. The Claimant suffer under the Loss of the ability to properly place before the special Master, the documents and supplemental exhibits; Thus was largely due to the Defendant's direct obstruction of Justice and interference with Claimant's constitutional Rights, Civil Rights, statutory Rights, and administration Regulations extended Rights; the Combined overall sub-stantive due process Mr. Griffin's Substantial Right; to include his 14th Amendment Right now violated by the Defendant(s) et al.

Your Claimant among his objections, additionally show cause, as to why he was unable to provide the Critical stage evidence the supplemental exhibits necessary to prove.— He was indeed a disabled individual who is a member of the Class. Furthermore, were disable by his imparment on or before August 27, 2003.

In this matter of objection before this Court, Your Claimant has the burden of proof that;

he was disabled on or before August 27, 2003, moreover, if Claimant so establishes that, he was disabled, then he may amend his Claim and raise incidents that have occurred since that date to the present.

## CLAIMANTS SUBMISSION OF SUPPLEMENTAL EXHIBITS AS PROOF OF DISABILITY PRIOR TO AUGUST 27, 2003

Your Claimant with no other option, Herein Present the documentation, that, of which does establish his disability existed before August 27, 2003. Furthermore, such documents in addition, clearly establish that, the Department of Corrections knew of Claimant's disabilities, However, failed to accommodate as such under any principal of Law, Specifically any enactment either federal or State, as established to provide a benefit under such.

See attached documentation reflective of the vision disability, and Social Security administration (SSA) Form SSA-827 Submitted by the Department of Correction for records request. Purpose determination of eligibility for benefits from 1995-2003.

Furthermore, the documents will establish specific communication within said documentation, to which establish that, the ambulatory health record and psychiatric individual contact has positive diagnosis and prognosis, that, Claimant's condition exist, he has an vision disability, he is illiterate and can not read or write, and has an mental illness.

The defendants Denies that Claimant had a Right under the Americans with Disability Act after Positive diagnosis and prognosis, defendants between the years of 1995 to 2003 Denies that, they had an obligation to accommondate Claimant once His disabilities were determined for benefits.

As evidence there has been no ADA accommondation for vision disability entered into the record that, Shows any attempt by the defendants et al., to accommondate Mr. Eldridge Griffin's disabilities pursuant to any Principal of Law.

Claimant further Seeks remedy under objection for the opportunity to Submit documents as Supplemental exhibits in Support of Claim.

## DEFENDANT'S RETALIATION AND OBSTRUCTION OF JUSTICE

The defendant(s) et al., through an administ-rative scheme, did place the claimant under continual harassment by staff members as of whom with deliberate intent, denied and refused to allow claimant to pursue his right under the American with Disability Act. Where under such, claimant sought an benefit, and various accommondation, and information regarding such benefits, that, include evaluation and testing.

Your claimant under went serious violation of his Constitutional Rights, Civil Rights as protected under 42 U.S.C.A Sec 1985, 18 USC Sec 241 such right were violated by defendant(s) et al. through deliberate aggressive retaliation against Mr. Eldridge Griffin, for the sole reason that, Mr Griffin were seeking his ADA benefits to be accommondated for His impairments of vision disability, illiteracy, and mental illness.

Moreover, Claimant seeks the benefits given him the ability under ADA to Learn and perhaps get a GED.

-7-

Unfortunately, the defendants and their various staff members, denies that Claimant has an right to pursue his claim under Montez. Fact: The defendants, et al., have caused Claimant to miss his Court imposed dead lines, and have caused Claimant to fail in his efforts to provide the Supplemental evidence as exhibits, to include his Closing argument to be submitted on or before April 30, 2012.

The Claimant in objection to the defendant's actions, where upon, such Act or actions have denied claimant access to the Court during a Critical Stage in Civil due process, your claimant offer for proof; the following evidence of such Act(s) or Actions.

HISTORY OF DEFENDANT'S CONTEMPT OF COURT, AND; THE DEFENDANTS HISTORY OF ASSAULT UPON CLAIMANT'S RIGHT UNDER AN COURT ORDER, TO INCLUDE THE DEFENDANTS et al., DISORDERLY CONDUCT CALCULATED TO INTERRUPT AND INTERFERE WITH THE ADMINISTRATION OF JUSTICE.

FACT: The defendants et al., have by the conduct in an continuous regulatory Scheme,

Thereat, the defendants have went beyond their official Capacity, when staff members fabricated Several C.O.P.D. write ups in retaliation with deliberate intent and discriminat against Claimant as a Class.

On January 10, 2012 your Claimant were forced to file an affidavit and incident report with the Special Master apprising him of the Misconduct of the defendants.

On January 12, 2012 your Claimant again were forced to file an Second affidavit and incident report with the Special Master apprising him of the Continual Misconduct and retaliation.

Thereafter, the defendants Continue to harass, and retaliate against your Claimant, where on February 11, 2012., the defendants Charged Claimant with threats, and placed Claimant into Segregation.

On April 12, 2012 The defendant Charged Claimant with advocating or Creating Facility disruption.

-9-

On June 14, 2012 the defendants yet again brought another write up Charge for abuse of medication.

Bringing us now the the main issue, while your Claimant were in segregation, he had requested his Legal papers, so that, he may manage his Civil Action. However, he were denied during the pending dead line date April 30. 2012. Therefore, the defendants by such Conduct under this Regulatory Scheme Have assalted Claimants Rights to present his case under the Court order granting opportunity tofile appropriate Supplemental exhibits and closing argument.

Therefor, Claimant for Cause Shown in objection to the finding, where at, Claimant was kept from the opportunity under the special Masters order. The opportunity of presenting his Supplemental exhibits and Closing argument supporting that Claimant was disabled by his impairments on or before August 27, 2003.

## DENIED ACCESS TO THE COURT

Unfortunatly, your Claimant were denied access to his work product, Legal Files, Letters and notes, as Done by defendants. The Claimant were denied access to the Court.
<u>See the Attached request for Legal Service.</u>

Whereas, Claimant requested multiple times, for his Legal work, and other Legal Assistance, However, were denied such. Specifically, access to his documents stored on the Legal Library Computers. Claimant had prepared his Closing argument; the defendants denied the printing of this document.
<u>See Attached responce dated April 30, 2012 - May 8 2012.</u>

## FOR CAUSE SHOWN

Your Claimant, for Cause Shown in this matter before the United States District Court. Pursuant to F.R.C.P. Rule 53(g)(2), the Claimant Submits his objection to special masters final order. Where upon, such order the claimant were denied access to the Court during an Critical Stage. Access were denied

through a regulatory scheme and conduct done by the defendants, whereat, the defendants have directly removed Claimant's opportunity from which to comply with the standing order issued by the Special Master.

The Claimant hereby claim that, the defendants Acted with deliberate intent, to remove from Claimant his ability to establish each of the criteria as set forth in Judge Kane's order of March 23, 2010.

It is belived that, under a regulatory scheme the defendants have discriminated against the Claimant, in an continual manner in which the defendants are in control and in custody of Mr. Eldridge Griffin.

Where at, the defendants have Manipulated the system of administration regulations (AR's) for the sole purpose of hindering the Claimant and other inmates, as of who have an Ligitimate claim and injuries or disability, sustained while defendants are operating a correctional facility.

Moreover, under this circumstance and controversies. There upon the (4) Questions considered by the Special Master. Whereon, your Claimant in an attempt to Provide evidence to which would meet the criterion as established. Here in after Mr. Griffin declare that, he can meet the Article ~~XXXII~~ requirement as an individual under such.

Your Claimant under objection, in part, to the finding that Mr. Eldridge Griffin's Claim is dismissed as A Consequence Because, the defendants have caused obstruction of his evidence necessary, (need) to support his Claim.

Claimant, implore this Court for an order giving him an opportunity to submit such evidence unhindered by the defendants. Claimant seeks such order allowing, him to comply with the ▮▮▮▮ May 7, 2012 order. Moreover, in light of the continual harassment and retaliatory scheme. The Claimant's Prayer for relief under objection is for his Claim, to be allowed to be amended and go forth as an remedy.

Whereby, the Conduct or rather the on-going conduct of the defendants etal., clearly establish some form of violate and direct cause of injury.

Therefor, as an evidence of discrimination; The mear fact that, an Claim based upon SSS is an covered vision disability clearly becomes a discrimination in form, if Mr. Eldridge Griffin's claim is excluded. Such is the case by the Current order to dismiss, where when Claim # 03-430 establish that SSS is a disability under Montez.

Furthermore, for Cause Shown where it is a fact that, on July 22, 1999 Mr. Eldridge Griffin were diagnosed with Scotopic Sensitivity Syndrome (SSS). However, de-scribed as a "visual processing Learning disability" based upon the records, Claimant was treated for this disorder IN-PART.

First of all; the overlays only provide a reading accommondation, and not the writing. The defendants failed to provide a compleat Treatment as prescribed. --

Secondly, in order for the accommon-dation to be compleat under proper treatment for the writing claimant must receive a pair of specialized glasses, with such ADA complete accommondation, Then in 1999 claimant would have been fully accommondated. thus, giving Mr. Griffin the ability to see the words and constructively write what he sees. reiterating that, Peach colored <u>overlay</u> only provid partial accommondation in <u>reading</u>.

However, makes it impossible to write after reading them. only throush the prescribed eye glasses can both parts of the process be completed. Therefor, the defendants failed to property accom--mondate claimant in <u>1999</u>, as of which was before ▓▓▓▓▓▓ August 27, 2003 while Mr. Eldridge Griffin were in Costody as the special master findings clearly establish in his order Sec II that, claimant were on March 10, 1999 placed into the Colorado State Penitentiary in Canon City, Colorado, and claimant remained in that facility until April 19, 2000.

## CONCLUSION

In conclusion of all the facts combined, the information presented in this objection motion, and the attached documents as evidence. Your Claimant humbly object to the dismissal of his Claim, whereupon, the records do reflect him as being diagnosed with an impairment called Scotopic Sensitivity Syndrome (SSS).

The defendants denied Claimant the Critically needed Glasses in 1999 to 2000, in effect, Claimant was Latter discriminated against by DOC because of his disability, As A Proof your Claimant was discriminated against when DOC refused to accommondate Claimant with the glasses, so that he may get an Basic Adult Education as provisioned under statutory mandate pursuant to Article 32 CRS. the Correctional Education Program.

Griffin were not allowed to participate against his will, and Because of his disability Mr. Griffin does not Have an GED as proof of Such discrimination, When other inmates are allowed to get Theirs.

Under the Rehabilitation Act and the ADA, the defendants while having custody of Mr. Eldridge Griffin # 85791 between the years of 1999-2000; the Executive Director of the Department of Correction were under obligation to accommondate Mr Eldridge Griffin # 85791 vision disability under ADA.

Furthermore, were obligated under the Rehabilitation Act, and under the Correction Education Program Act of 1990, an State Act.

Under the current scheme of the defendants, denial of specific responsability, Has in effect, been an Continual Discrimination against Mr. Eldridge Griffin # 85791.__Where upon the defendants deliberate continual Avoidance either by EXCUSE or explanation under an regulatory Scheme as the defendants shirk Their Duty and responsability under federal and State Law.

WHEREFORE, Claimant humbly implore this Court the United States District Court for relief and remedy.

Done this 26 day of July, 2012

Eldridge Griffin

-17-

# CERTIFICATE OF MAILING

I hereby Certify that I have mailed a copy of the foregoing Claimants objection to Final order of Special Master issued on may 7 2012 pursuant to FRCP 53(g)(z) to the following on this 26 day of July 2012,

United States District Court
901 19th street
Denver, CO 80294

Judge Richard M. Borchers
Special Master for the United States
District Court for the District of
Colorado Legal Resolution Center
7828 Vance Drive, Suite 108
Arvada, Colorado 80003

Ms Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredricks
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO 80203

King + Greisen, LLP
1670 York Street
Denver, CO 80206

Eldridge Griffin

(EXHIBIT)



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.,

        Plaintiffs,

   -vs.-

JOHN HICKENLOOPER, et al.,

        Defendants.

---

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## ORDER OF SPECIAL MASTER

---

THIS MATTER comes before the Special Master on Claimant's Motion for Extension of Time. Claimant is asking for another extension of time, having asked for several over the last three years.

As noted in a separately issued order, Claimant has not established that he was the victim of discrimination prohibited by the ADA on or before June 30, 2001, the day his sentence was discharged. Absent proof of such discrimination during Claimant's first incarceration, the Remedial Plan prohibits discussion of any acts against Claimant after August 27, 2003. What Claimant has established is that he was diagnosed with SSS in the late 1990's and accommodations were provided to him. Claimant's remedy is to commence a new lawsuit dealing with what has occurred since 2008 when he returned to DOC custody.

IT IS HEREBY ORDERED that Claimant's Motion for Extension of Time is denied.

SIGNED this 7th day of May, 2012.

BY THE COURT:

Richard M. Borchers
Special Master

---

(8)

( *EXHIBIT* )

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this ____ day of May, 2012 to the following:

Mr. Eldridge Griffin
#85791
SCF
P.O. 6000
Sterling, CO 80751

King & Greisen, LLP
1670 York Street
Denver, CO 80206

Ms. Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredericks
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, CO 80203

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870 - JLK

JESSE MONTEZ, et al.,

Plaintiffs,

-vs.-

JOHN HICKENLOOPER, et al.,

Defendants.

---

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## FINAL ORDER OF SPECIAL MASTER

THIS MATTER came before the Special Master for hearing on January 30, 2012. The hearing was held at the Sterling Correctional Facility (SCF) in Sterling, Colorado. Present were the following: Eldridge Griffin (Claimant) and Jacquelynn Rich Fredericks, attorney for Defendants.

Claimant testified in support of his claim. Claimant also presented the testimony of Mr. Aubrey Bell, his case manager while incarcerated at the Colorado Territorial Correctional Facility (CTCF) in Canon City, Colorado. Claimant offered into evidence Exhibits 1 through 7, and all were admitted.

Defendants called as witnesses Dr. Timothy Creany, M.D., Martina Ring, and Amy Cosner. Defendants offered into evidence Exhibits A through O, and all were admitted.

Claimant requested time to submit additional exhibits. Both sides were granted up to April 30, 2012 in which to submit supplemental exhibits. Further argument will be waived.

### I.

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying to reach a settlement of all issues. The

*(EXHIBIT)*

Remedial Plan was the end result of negotiations between counsel for the Class and counsel for Defendants. Then-Judge Nottingham was not involved in the negotiation of the provisions of the settlement document.[1]  Once the provisions and terms of the settlement were agreed upon by counsel for the Class and counsel for Defendants, the Court was notified that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Settlement Agreement should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Settlement Agreement also set up a mechanism for individual inmates, former inmates, or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Settlement Agreement provides the basis for the filing of claims for damages and/or for other relief. This section states, in part, as follows:

> Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:
> I. General inconvenience or nominal damages;
> II. Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
> III. Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
> IV. Damages due to severe physical injuries; and
> V. Damages due to death.

> Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as a Category 3.

*Settlement Agreement, pp. 28-29.* Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages or relief.

The Settlement Agreement in Section III provides the following definitions:

> III. DEFINITIONS
>     A. COVERED DISABILITIES
>     The persons covered by this Plan are individuals with mobility, hearing, and vision impairments and inmates with diabetes.

---

[1]The Special Master also was not involved in the negotiation of the Settlement Agreement. The Special Master is bound by the provisions of that agreement, as he has only the jurisdiction agreed upon by the parties.

(EXHIBIT)

B. QUALIFIED INMATE
Inmate with a permanent disability/impairment which substantially limits his or her ability to perform a major life activity.
C. PERMANENT DISABILITY/IMPAIRMENT
A condition which is not expected to improve within six months.

These definitions control as to implementation of the Settlement Agreement and adjudication of all claims filed by individuals.

On November 23, 2004, Judges Nottingham and Kane issued an order that set forth the criteria that must be utilized in adjudicating a claim. They stated, in part, as follows:

2. The Special Masters shall evaluate individual damage claims submitted in this case by considering the following questions:
1. Is the claimant a disabled individual who is a member of the class?
2. Was the claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?
3. Was the claimant discriminated against by DOC because of his or her disability? (e.g., were accommodations requested and denied because of the disability?)
4. Did this conduct cause the claimant harm and if so, what is an appropriate remedy?

This order controls the adjudication of all claims and must be followed by the Special Masters. Any claimant must establish by a preponderance of evidence each of the four criteria.

In addition, Judge Kane issued an order on March 23, 2010 which further clarified the claim process. That order established some limitations on the process established by Article XXXII of the Remedial Plan. Judge Kane limited claims to the following individuals: (1) inmates who were in DOC custody on or before August 27, 2003; (2) inmates who were disabled, as defined by the Remedial Plan, on or before August 27, 2003; and (3) inmates who were the victims of discrimination on or before August 27, 2003. Unless each of these three requirements is established, a claimant cannot prevail on his claim.

## II.

Claimant came into DOC custody initially on May 3, 1995. He was placed into the Denver Reception and Diagnostic Center (DRDC) for testing and evaluation. He remained at DRDC for a week and then was placed at CTCF. He was transferred on July 17, 1995 to the Fremont Correctional Facility (FCF) in Canon City, Colorado. Claimant was then placed into a private facility in Appleton, Minnesota where he remained until being placed at the Centennial Correctional Facility (CCF) in Canon City, Colorado on December 8, 1998.

On March 10, 1999, Claimant was placed into the Colorado State Penitentiary (CSP) in

Canon City, Colorado. He remained in that facility until April 18, 2000 when he was placed at the Limon Correctional Facility (LCF) in Limon, Colorado. Claimant returned to CTCF on May 30, 2000. Claimant discharged his first sentence on June 30, 2001.

On April 25, 2008, Claimant returned to DOC custody on a new conviction. He was placed back at DRDC for testing. He then was incarcerated on May 27, 2008 at SCF. He was transferred to CTCF on September 3, 2008. Claimant was placed on parole on December 2, 2009 and went to live in Colorado Springs. Parole failed, and Claimant returned to DOC custody on May 14, 2010. Claimant returned briefly to FCF but then was placed at CTCF on June 25, 2010.

Claimant was granted parole again on August 23, 2010. He returned to the Colorado Springs area. Parole again failed, and Claimant received a new conviction on charges that arose after being placed on parole. Claimant returned to DOC custody on November 20, 2011 at DRDC. He then was transferred to FCF. Subsequently, he was transferred to SCF where he remains.

The evidence presented by both sides reflects that Claimant has struggled with reading and education his entire life. Claimant related to DOC staff during his first incarceration that he was often in a class of one when he was growing up. He dropped out of school while in eleventh grade. Claimant also related to DOC staff that he had suffered two head injuries while growing up which he believes may have affected his ability to read and write.

Claimant's medical records reflect that DOC staff were cognizant of Claimant's problems reading and writing. An entry in his medical records from July 22, 1999 reflects that Claimant was believed to have Scotopic Sensitivity Syndrome (SSS). This condition was described as a "visual processing learning disability." Claimant received additional testing, and colored overlays were provided to him. Claimant testified that he had received these overlays during his first prison sentence.

The testimony presented by both sides further reflects that Claimant's learning disabilities were still present when he returned to DOC custody in April, 2008. Claimant maintained that he was afflicted with SSS and that he needed additional help. Since 2008, Claimant has received special glasses and colored overlays. Based upon testing, it appears doubtful that Claimant will ever secure a GED or dramatically increase his reading level.

Defendants spent time at the hearing attacking SSS as having no scientific basis. Specifically, they argued that SSS is a learning disability, not a vision disability. Defendants do not believe that SSS is covered by the vision disability section of the Remedial Plan.

### III.

The Special Master must examine the evidence in light of the four questions set forth by Judges Nottingham and Kane in their order of November 23, 2004. A claimant must establish that he was disabled, as set forth in the Remedial Plan, on or before August 27, 2003. In addition, a claimant must establish that he was the victim of discrimination on or before that date.

4

**1. Is the Claimant a disabled individual who is a member of the class?** Claimant must establish that he was disabled by his impairments on or before August 27, 2003. If he so establishes that he was disabled on or before August 27, 2003, then he may amend his claim and raise incidents that have occurred since that date to the present.

Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(I).

The Special Master has had one previous vision claim based upon SSS. *Claim #03-430*. The Special Master found in that claim that SSS was a covered vision disability. The Special Master finds as to this claim that SSS is a vision disability covered by the Remedial Plan.

**2. Was the Claimant otherwise qualified to participate in the programs or receive the benefits or services offered by DOC?** Claimant was otherwise qualified to participate in DOC programs or to receive DOC services.

**3. Was the Claimant discriminated against by DOC because of his or her disability?** Claimant has to establish that he was the victim of discrimination prohibited by the ADA and Rehabilitation Act *on or before* August 27, 2003. If such a showing is made, then the Special Master may consider evidence after that date if the discrimination was on-going.

Claimant must establish that he was the victim of discrimination prohibited by the ADA during his first incarceration. The time period is May 3, 1995 to June 30, 2001. Absent proof of discrimination during this time period, Claimant may not raise issues that have arisen since his return to DOC custody on April 25, 2008.

The exhibits submitted by Claimant indicate that DOC staff diagnosed SSS in 1999. Claimant's own testimony acknowledges that colored overlays were provided to him. In addition, extensive testing was undertaken in hopes of finding something that would allow Claimant to improve his reading and writing. There is no evidence that Claimant was the victim of discrimination based upon a vision disability during his first incarceration. There is no evidence that Claimant was improperly denied an accommodation during his first incarceration.

Claimant has struggled all of his life with reading and writing. The testimony of Ms. Ring, special education coordinator at SCF, was not optimistic. Despite Claimant's best efforts, he has

*( EXHIBIT )*

made little progress in reading and writing. The *Montez* case was brought under the ADA and Rehabilitation Act, both discrimination statutes. Claimant has not proven that discrimination took place in violation of these acts during his first period of incarceration.

Claimant does have the right to file a separate lawsuit for whatever may have occurred after August 27, 2003. Claimant cannot pursue this claim as he has failed to prove that any discrimination toward him in violation of the ADA occurred prior to August 27, 2003.

**4. Did this conduct cause the Claimant harm and if so, what is an appropriate remedy?** In light of the answer to Question #3, there is no need to answer this question.

IT IS HEREBY ORDERED that the claim of Eldridge Griffin is dismissed, as he has failed to establish each of the criteria set forth in Judge Kane's order of March 23, 2010; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Order pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed with the Clerk of the United States District Court, 901 19th Street, Denver, CO 80294 **on or before August 6, 2012.**

SIGNED this 7th day of May, 2012.

BY THE COURT:

_____

Richard M. Borchers
Special Master

6

(EXHIBIT)

# CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this _7th_ day of May, 2012 to the following:

Mr. Eldridge Griffin
#85791
SCF
P.O. Box 6000
Sterling, CO  80751


King & Greisen, LLP
1670 York Street
Denver, CO  80206

Ms. Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredericks
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO  80203

(EXHIBIT)



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.,

Plaintiffs,

-vs.-

JOHN HICKENLOOPER, et al.,

Defendants.

_____

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

_____

### ORDER OF SPECIAL MASTER

_____

THIS MATTER comes before the Special Master on Claimant's Motion for Extension of Time. Claimant is asking for additional time in which to file an objection to the Special Master's final order which was issued on May 7, 2012.

The Special Master is aware that Claimant has filed a separate lawsuit. He has been given time to file an amended complaint in that separate case. **Claimant is advised that this order pertains only to his claim in the Montez matter. Any request for an extension of time in the separate lawsuit must be presented to Magistrate Judge Boland.**

IT IS HEREBY ORDERED that Claimant's Motion for Extension of Time in which to file an objection to the Special Master's order is granted up to and including **September 17, 2012.**

SIGNED this 2nd day of July, 2012.

BY THE COURT:

Richard M. Borchers
Special Master

### CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this
2nd day of July, 2012 to the following:

Mr. Eldridge Griffin
#85791
SCF
P.O. Box 6000
Sterling, CO 80751

King & Greisen, LLP
1670 York Street
Denver, CO 80206

Ms. Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredericks
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, CO 80203

Susan L. Carter

(EXHIBIT)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**©COPY**

Civil Action No: 92-CV-870 JLK

JESSE MONTEZ, et al.,
        Plaintiffs,

        —vs.—



RECEIVED
JUN 28 2012
By

BILL RITTER, et al.,
        Defendants.

---

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Claimant Address: P.O. Box 6000 Sterling, CO 80751

---

MOTION FOR EXTENSION OF TIME

---

Plaintiff-Claimant, Eldridge L. Griffin Pro-Se Litigant in this matter before the Special Master. Pursuant to F.R.C.P. Rule 6 (b) extending time, Plaintiff-Claim-ant seek an extension of Time from whic to file an Supplement Complaint.

In an order of the Special Master, it were in its language an indication that, Plaintiff could file an Supplement Complaint within a prescribed time.

(EXHIBIT)

Plaintiff-Claimant now seeks an 45 day extension of time for the reasons that, there are many facility lock downs and scheduling of legal library time is very hard to accommodate during lock downs.

WHEREFORE, Plaintiff-Claimant humbly ask for such extension of time, so he may properly file his Supplement Complaint.

Done this 22 day of June 2012

Eldridge L. Griffin
P.O. Box 6000
Sterling, CO 80751

(EXHIBIT)

CERTIFICATE OF SERVICE

I hereby Certify that I have Mailed a True Copy of the foregoing Motion for Extension of time on this __25th__ day of June 2012 to the following:

United States District Court
Special Master
Legal Resolution Center
7828 Vance Drive., Suite 108
Arvada, Colorado 80003

Eldridge Griffin
Eldridge Griffin
P.O. Box 6000
Sterling, CO 80751

*(EXHIBIT)*

# STATE OF COLORADO

DEPARTMENT OF CORRECTIONS

Sterling Correctional Facility
P. O. Box 6000
Sterling, CO 80751-6000
Phone: (970) 521-5010
Fax: (970) 521-8225

John Hickenlooper
Governor

Tom Clements
Executive Director

**Legal Access Program**
**West Law Library**

# LEGAL ACCESS RESPONSE

**April 30, 2012**

**TO:   Mr. Griffin**

          **DOC #: 85791              HOUSING UNIT:**

In response to the attached request, the following is provided:

Your request to make copies has been denied because the work on the computer is not complete. According to our policies only completed work may be printed.

It is suggested that you hand write a motion to the courts and ask for an extension of time on your case.

Hallie Beard
Legal Assistant I

cc: File

Beg 147190
End 147192

(*EXHIBIT*)

DC Form 750-01B (12/01/08)

## COLORADO DEPARTMENT OF CORRECTIONS
## LEGAL ACCESS PROGRAM
# PHOTOCOPY REQUEST FORM

LAST NAME: _Griffin_    FIRST INITIAL: _E_    DOC #: _85791_

FACILITY: _S.C.F._    UNIT/TIER/CELL: _Seg-D-3-04_    DATE SUBMITTED: _04-28-2012_

LIST THE DATE OF ANY **COURT IMPOSED DEADLINE**:

A signed and completed miscellaneous withdrawal slip must accompany this request.

Please list each document to be copied on separate lines and include description, number of pages you are submitting, and number of copies you are requesting. Incomplete forms will be returned or denied.

| DESCRIPTION OF DOCUMENTS SUBMITTED | # PAGES SUBMITTED | # COPIES REQUESTED | # COPIES APPROVED |
|---|---|---|---|
| 1 Petitioner Colsering Rogument | 4 | 3 | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

OFFENDER SIGNATURE (**REQUIRED**) _Eldridge Griffin_

### DO NOT WRITE BELOW THIS LINE – OFFICIAL USE ONLY

CHARGE TO ACCOUNT: $ _____

DATE RECEIVED AT SENDING FACILITY: _____    NUMBER OF PAGES RECEIVED: _____

DATE RECEIVED IN PROCESSING LAW LIBRARY: _____

NUMBER OF PAGES RECEIVED IN PROCESSING LAW LIBRARY

DATE COMPLETED: _____

DOC EMPLOYEE/CLERK PHOTOCOPIER INITIALS: ____

    METER END: _____

MINUS   METER BEGIN: _____

    TOTAL COPIES: _____

MINUS   ADMINISTRATIVE COPIES: _____

    TOTAL COPIES TO OFFENDER: _____

Your request has been **DENIED** _____ in whole _____ i~~

_____ Your request form was not properly completed (Missing req~~

_____ The material you have submitted does not meet program defi~~

_____ Your photocopy request exceeds the page limit established b~~

_____ Regardless of your ability to pay, you will be supplied only t~~ is in excess of those requirements (see attached). Also see pc~~

_____ You have not submitted the documents to be copied.

_____ You must submit a completed miscellaneous withdrawal tick~~

_____ Attachments/exhibits to a document must be submitted with~~

_____ Your account is in arrears for at least $500. See AR 750-01 f~~

_____ The legal access program will not copy ARs, IAs, OMs, or m~~

_____ The legal access program will not copy transcripts, incomple~~

_____ The legal access program will not copy non-original docume~~ (account statements, mittimus, etc.), grievances, COPD appe~~ court or attached to a letter to a judge or attorney of record. Y~~ order for them to be copied.

_____ You may bring your request into compliance and resubmit.

Other_____

Atta~~

Pa~~

---

**State of Colorado**
Department of Corrections

DC Form 20-22
(Revised 10/90)

### REQUEST FOR INTERVIEW

Date _04-28-12_

Name _Eldridge Griffin_

Reg. No. _85751_

C.H. _Seg_    Tier _3_    Cell _04_

Audience With: _Legal Access program_

Give Reason: _This, is in the ~~kees~~ Computer Motion_
_saved under mr. Griffins, name_

_Thank You_

(EXHIBIT)

# STATE OF COLORADO

**DEPARTMENT OF CORRECTIONS**

Sterling Correctional Facility
P. O. Box 6000
Sterling, CO 80751-6000
Phone: (970) 521-5010
Fax: (970) 521-8225



John Hickenlooper
Governor

**Legal Access Program**
**West Law Library**

Tom Clements
Executive Director

# LEGAL ACCESS RESPONSE

May 8, 2012

TO:   Mr. Griffin

DOC #: 85791          HOUSING UNIT:

In response to the attached request, the following is provided:

Request for motion forms must be submitted on form 750-1C (Pink form).  You may request your envelopes on the yellow form 750-1E. You must show that you have a motion to mail to the court, and give the address so we may pre-address the envelope.

Hallie Beard
Legal Assistant I

cc:  File



Beg 147869
End 147870

( EXHIBIT )

COLORADO DEPARTMENT OF CORRECTIONS
LEGAL ACCESS PROGRAM          DC Form 750-01A (11/15/07)
## REQUEST FOR LEGAL ASSISTANCE

D 5304

**INCOMPLETE FORMS WILL BE DENIED.**

TODAY'S DATE: **05-05-2012**

LAST NAME: *Griffin*          FIRST INITIAL: *E*          DOC #: *85791*

FACILITY and HOUSING **UNIT**/TIER/CELL: **Seg-D-2-4**  WORK/PROGRAM ASSIGNMENT INCLUDING TIME: *N/A*

SESSION TIME REQUESTED* _____ AM SESSION          _____ PM SESSION
*Preferences will be taken into consideration for scheduling purposes; however, there is absolutely no guarantee that an offender will be scheduled as requested.*

THE DATE OF ANY COURT IMPOSED DEADLINE: **MAY 30 2012**
**ANSWER THE FOLLOWING. INCOMPLETE FORMS WILL BE DENIED.**

NATURE OF MATTER: _____ Habeas Corpus          _____ Conditions of Confinement  ✓ Post Conviction Relief
Other: _____

ARE YOU CURRENTLY REPRESENTED BY AN ATTORNEY:          YES _____ NO ✓

HAS THIS MATTER IN WHICH YOU NEED ASSISTANCE BEEN FILED?          YES ✓ NO _____
    IF YES, PROVIDE THE FOLLOWING: CASE # AND COURT *LOGAN COUNTY COMBINED (DISTRICT) COURT # 12CV47*

STATE THE TYPE OF ASSISTANCE YOU REQUIRE:          **(PLEASE WRITE LEGIBLY)**

*Mr. Griffin, needs legal papies Singed in fnot of a NOTARY PUBLIC. The case Manager of Seg, told Him to have this request form sent to you to get this done. Mr. Griffin, would ask if you would come to do this as soon as you can.*

*Thank You*

DATE RECEIVED: **MAY 0 7 2012**

*Edwith Griffin*
OFFENDER SIGNATURE
DATE ACCESS PROVIDED: **MAY 0 8 2012**

Your request has been DENIED for the following reasons:          DATE DENIED: _____
_____ Your request form was not properly completed (missing required signature, full cell location, facility, unit, tier, cell, assignment, DOC #, date, etc.)

_____ You have failed to submit the proper form. Please resubmit: _____

_____ The Legal Access Program does not provide the forms you have requested.

_____ The Legal Access Program only provides addresses for courts and attorneys. You must request an address for a specific court or attorney.

_____ You may bring your request into compliance and **resubmit a new form**. A photocopy of this denied form will not be accepted.

_____ The legal access program cannot assist you with your request. It falls outside our program parameters.

_____ Other *Will Speak with Mr Griffin 5/8/12*

METER END: *147860* MINUS (-) METER BEGIN: *147859* EQUALS (=) TOTAL ADMIN COPIES: _____

(EXHIBIT)

COLORADO DEPARTMENT OF CORRECTIONS
LEGAL ACCESS PROGRAM          DC Form 750-01A (11/15/07)

# REQUEST FOR LEGAL ASSISTANCE

**INCOMPLETE FORMS WILL BE DENIED.**

TODAY'S DATE: _____

LAST NAME: _Griffin_____ FIRST INITIAL: _E____ DOC #: _85791____

FACILITY and HOUSING UNIT/TIER/CELL: _S.C.F.___ WORK/PROGRAM ASSIGNMENT INCLUDING TIME: _N/A_

SESSION TIME REQUESTED* _____ AM SESSION _____ PM SESSION
*Preferences will be taken into consideration for scheduling purposes; however, there is absolutely no guarantee that an offender will be scheduled as requested.

THE DATE OF ANY COURT IMPOSED DEADLINE: _Apil - 30th_____
**ANSWER THE FOLLOWING. INCOMPLETE FORMS WILL BE DENIED.**

NATURE OF MATTER: _____ Habeas Corpus _____ Conditions of Confinement _✓_ Post Conviction Relief
Other:_____

ARE YOU CURRENTLY REPRESENTED BY AN ATTORNEY: YES _____ NO _✓_

HAS THIS MATTER IN WHICH YOU NEED ASSISTANCE BEEN FILED? YES _✓_ NO _____
IF YES, PROVIDE THE FOLLOWING: CASE # AND COURT _92-CV-870-SEC_

STATE THE TYPE OF ASSISTANCE YOU REQUIRE: **(PLEASE WRITE LEGIBLY)**
Mr. Griffin, is in "S.E.G, he needs all of
the legal work, papers, all letters from the US District Court, there are
3- ~~wallew~~ forders in his propty. Can you please bring all of his legal things
to him in "seg", A.S.A.P, -plase, ~~~~ Deadline Apil-30th, but ~~a~~ he has
until may-2, to mail every thing out to the cort.
ThankYou

_____
_____
_____

DATE RECEIVED: **APR 3 0 2012**

OFFENDER SIGNATURE _Ediudm Giffin_
DATE ACCESS PROVIDED: **MAY 0 1 2012**

Your request has been DENIED for the following reasons: DATE DENIED: _____
_____ Your request form was not properly completed (missing required signature, full cell location, facility, unit, tier, cell, assignment, DOC #, date, etc.)

_____ You have failed to submit the proper form. Please resubmit:_____

_____ The Legal Access Program does not provide the forms you have requested.

_____ The Legal Access Program only provides addresses for courts and attorneys. You must request an address for a specific court or attorney.

_____ You may bring your request into compliance and **resubmit a new form**. A photocopy of this denied form will not be accepted.

_____ The legal access program cannot assist you with your request. It falls outside our program parameters.

_____ Other _Will Retrieve 5/1/12_____

_____

METER END: _147188_ MINUS (-) METER BEGIN: _147186_ EQUALS (=) TOTAL ADMIN COPIES: _____

(EXHIBIT)

RECEIVED

MAY 2 3 2008

AR 750-04A (11/01/07)
Office of Correctional
Legal Services

## REQUEST FOR ACCOMMODATION

**I.   OFFENDER INFORMATION:**  *(Please print)*

| Name: Eldridge Griffin | | 85791 | |
|---|---|---|---|
| Facility: DRDC | | | |

**II.   CLAIMED DISABILITY:**  *(Check all that apply)*

Mobility _____      Hearing _____      Other  X  short term memory loss.
Vision  X             Diabetes _____          sensitivity to light.
                                                cronic migranes

**III. ACCOMMODATION REQUESTED:**

In accordance with the provisions of the Americans with Disabilities/Rehabilitation Acts (ADA), no qualified individual with a disability shall, on the basis of disability, be excluded from participation or be denied the benefits of the services, activities, or programs of the Department of Corrections or be subjected to discrimination. You may use this form to request specific reasonable modifications or accommodations which, if granted, would enable you to participate in a service, activity, or program offered by the DOC in which you are otherwise qualified or eligible to participate. **Submit this completed form, the ADA Medical Release, and Functional Ability Questionnaire to the ADA inmate coordinator (AIC) at the address at the bottom of this form.**

*Answer all questions below. Be specific and brief. You may attach one additional page for explanation, if necessary.*

1. Describe your disability: Words and letters shift focus, unable to retain information and concentrate on information being given (short term memory), sensativity to light and cronic migranes.

2. What information do you have to verify your disability? While in DOC In previouse incarcerations All of this has been Identified (FCF, CTCF) Should be in Mental Health/medical Files, was on SSDI for these issues.

3. What major life activity is limited by your disability (e.g., walking, eating, seeing, hearing, breathing, dressing, etc.)? seeing/focusing, Balance, unable to read, write

4. Have you been denied the ability to participate in a DOC job, program, or service due to a disability? (Yes) No. If yes, name the job, program, or service and provide a brief description of how you were denied: CTCF - Didnt have the staff to give low intention, was discharged from GeD -told I was at highest level obtainable, unable to work on Janitorial due to not being Able to read -

5. Identify the modification or accommodation you need in order to participate in that job, program, or service or to perform major life activities: Tape player, Bible on tape and access to books on tape, Hooked on phonics on tape, Aide to help with reading letters, writing letters, legal mail etc. medical sunglasses for sensitivity to light.

Eldridge Griffin
Signature of Offender

*Return completed forms to:* AIC, 2862 S. Circle Drive, Colorado Springs, CO 80906
**Please note:** DOC AR 300-38 allows you to mail materials to the AIC office via inter-facility mail, free of cost.

Attachment "A"
Page 1 of 1

(EXHIBIT)

Form Approved
OMB No. 0960-0623

**WHOSE Records to be Disclosed**

First   Middle   Last

NAME Eldridge   Lee   Griffin

SSN 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   Birthday (mm/dd/yy) 03/20/70

SSA USE ONLY

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

**PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW**

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):

**OF WHAT**   *All my medical records*; also education records and other information related to my ability to perform tasks. This includes specific permission to release:

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) *including*, and not limited to:
   -- Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   -- Drug abuse, alcoholism, or other substance abuse
   -- Sickle cell anemia
   -- Human immunodeficiency virus (HIV) infection (including acquired immunodeficiency syndrome (AIDS) or tests for HIV) or sexually transmitted diseases
   -- Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**
- All medical sources (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers
- Others who may know about my condition (family, neighbors, friends, public officials)

**THIS BOX TO BE COMPLETED BY SSA/DDS (as needed)** Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

FREEMONT Correctional Facility
Med Records

1995-2003

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services"), including contract copy services, and doctors or other professionals consulted during the process. (Also, for international claims, to the U.S. Department of State Foreign Service Post.)

**PURPOSE**   Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.

[ ] Determining whether I am capable of managing benefits ONLY (check only if applies)

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed below (see my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and any sources to cancel this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask. I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- I have read both pages of this form and agree to the disclosures above from the types of sources listed.

**INDIVIDUAL** authorizing disclosure

SIGN

Date Signed 1/17/06

Street Address 203 N. Ext. Rd. Apt. P1

Phone Number (with area code) 215-253-1969x283   City Willow Grove   State PA   ZIP 19090

**WITNESS**   I know the person signing this form or am satisfied of this person's identity:

SIGN

Form SSA-827 (7-2003)   EF (07-2003)   Prior 3-2003 Edition Usable   Page 1 of 2

(EXHIBIT)




DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

Exhibit 2

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO. | NAME Griffin, E | INMATE NO. 85791 | LIVING UNIT FCF

SUBJECTIVE:

DATE 3-30-96   TIME 2:00 pm

PROBLEM
PLAN / ORDERS

OBJECTIVE: Temp. ___ Pulse ___ Resp. ___ B/P ___/___

NO SHOW
S/C
T. Deleon

SIGNATURE:
NURSE: Eleen

P.E.:

ASSESSMENT:

PHYSICIAN:
Rx NO.

---

PRICARE CODE NO. | NAME Griffin, Eldridge | INMATE NO. 85791 | LIVING UNIT FCF/

SUBJECTIVE: "c̄ headache ē N/v"

DATE 3/26/96   TIME 1756

PROBLEM  1  2
PLAN / ORDERS

OBJECTIVE: Temp. ___ Pulse 58 Resp. 20 (B/P 160/108)
skin w/o - light sensitive to eye - c̄ frontal
headache - vomited on floor - covers
eyes in presence of bright light -
Injection for headache given + po
med given c̄ instruction went to pick up
med card in med line

Nubain 10 mg given 1820 PDGN
Phenergan 25 mg given -
Midrin ii qid PRN
x 30 day -
MD - F/u on 4-3

SIGNATURE:
NURSE: Esquival

ASSESSMENT: 1800 ACareron PA called - report
given + orders received C̄ Esquival

P.E.: T.O. S Cameron PA/ Esquival
noted by Esquival

PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

( EXHIBIT)

## PSYCHOLOGIST SUMMARY

## 30-DAY REVIEWS

Inmate Name: Griffin Eldridge # 2451

Time: 2020        DATE: 9-1-98

S: Claims that he cannot read or write so cannot read or respond to his mail w/o help.

O: Cell dark, laying on bed, quiet Got up to talk - acted appropriate

A: Calm, quiet, spoke reasonably

P: Will check w/case manager Stone about help in reading his mail. Appears appropriate to remain in seg.

_J. Johnson, MS.LP_
J. Johnson, MS.LP

_Warden Signature_
Warden Signature

cc: Mental Health
    Warden
    Case Management
    Segregation

9-2-98- Checked w/Stone She said he has another inmate who reads his mail; inmate rep reads legal mail. Problem seems to be solved. JJ

(EXHIBIT)

C2-12



### DEPARTMENT OF CORRECTIONS
### PSYCHIATRIC INDIVIDUAL CONTACT

Sec. 2. Psy. IC (Rev. 5/95)

h/o migraine, HTN; DOC since 1995, rel. to CSP for assault on an inmate

**SUBJECTIVE**

29 yr. old African-American man c̄ no psychiatric record. Of tx evaluation, in medical chart. Pt reports hx of Ritalin in childhood; of SA's dating back to 1995; of drug or EtOH

"I have neurological disability from 2 head injuries, ages 7 & 10. I can't read. I can't spell." (M) died 1½ yr. ago. Pt voices anger "at situation" and rails against having been cited for assault on an unknown inmate... I haven't slept.... know what I'm saying?" Pt dwells on theme of system not helping him. Sleep issue (being awake for 24 hr at a time) has improved. Pt estimates avg sleep total

**OBJECTIVE**

is 3-4 hr / 24 hr. Pt reports hx of 15-16 hr sleep/day prior to (M)'s death.

Alert, organized, resentful, c̄ good eye contact, raging at system, petulant in attitude. Pt is focused on inadequate

**ASSESSMENT**

attention, no productive "b/c I can't read." Emphatic speech, animated, goal-directed, coherent, no complaint, and no evidence of psychosis, good range of affect. Gs makes later in contact.

No evidence of depression. Insomnia; Personality d/o, NOS

PHYSICIAN  Torrey MD
NURSE  Noted 8/4/99 M. Dahlmann RN 1654

**PLAN/ORDERS**

1. BENADRYL 50 mg.
2. p.o. QHS # 6mo
3.
4.
5.
6.
7.
8.
9.

**Inmate Name (Last, First, MI)**
Griffin, Eldridge

**DOC#**
2 5 7 9 1

**FACILITY**
C S

**Clinician**
1 7 8

**Other Clinicians**
3 5 0

**Date**
0 8 0 4 9 9

**Type of Contact**
2 13

**Length of Contact**
4 3

**Participation Level**
7 3

**Goal Attainment Scale**
3 3

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 263
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

**COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD**

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Griffin Eldridge | 85791 | CSP DT-17 |

SUBJECTIVE:

Fiorinal tabs "ii" Expired 10/20/99
Asked for Headache meds Last Night

DATE 10-27-99    TIME 12³⁰

PROBLEM 1 2

OBJECTIVE:   Temp. ____ Pulse ____ Resp. ____ B/P ____

Only took the medication
when He Had A Headache. Called
to medical whenever He Needed
medication.

PLAN / ORDERS

✓ Fiorinal tabs "ii"
Po Bid PRN Headaches
X 30 / Asp

SIGNATURE
NURSE: _____

P.E. _____

ASSESSMENT:   Need for Headache Medication
Renewal. Will Refer to Pot for Renewal
of Fiorinal

PHYSICIAN: Dr Gul
Rx NO.

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Griffin, E. | 85971 | CSP C2-12 |

SUBJECTIVE:

CSU re CC HTN + HA's   BP's 116/
c/o chron daily frontal HA's ⊕ fronto, AM, A.9.
pt not sure if verapamil helps or
not. Numerous drug tried in past

DATE 9-20-99    TIME AM

PROBLEM 1 2

OBJECTIVE:   Temp. ____ Pulse ____ Resp. ____ B/P ____

including staff, midrin → ⊕ help,
will Δ to Fiorinal (v.v) - continue
if significant help.
Taggamet → break thru dyspepsia will
Δ to Zantac.
Pt to "Rites" prn - NOTE pt
is illiterate + Dr. N. can't spell

ASSESSMENT:   HA's - doubt migraine type

PLAN / ORDERS

⑤ Next CC = CSU ≈ 6 mos.
Pt states, "I cannot read or
write" - ladd chart
appropriately + inform
pod staff to assist ā
"Rites" prn.
① Fiorinal ii bid X 30 d
SIGNATURE
NURSE: ② DC midrin when Fiorinal in
P.E. ④ Inform pt "No fiorinal" in
cell ⑤ Zantac 150 bid
PHYSICIAN:
Rx NO.   X 3 mos ⑥ DC Taggamet
when Zantac in ⑦ Rites prn - refer to Dr N
prn

Noted J Lawson
9/20/99
13¹⁵

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93) / Old. no. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO. | NAME: Griffin, Eldridge | INMATE NO. 85791 | LIVING UNIT: FCF

SUBJECTIVE: H/A since 1200, last cafergot at 4:30 p.m.

DATE 9-11-97  TIME 1815

OBJECTIVE: Temp. 97.4 Pulse 56 Resp. 20 B/P 154/110
emesis x2, c/o's throbbing H/A behind eyes, photosensitivity
Appears uncomfortable, does not appear to be right-o

B/P 138/100, Catapress given at 1900
B/P 134/86 @1925, still c/o H/A
B/P 134/94 @2000, ↑ table rating states he

ASSESSMENT: felt much better.
2025 - returned to CH in NAD

PROBLEM
PLAN/ORDERS
1) Catapress .2 mg PO
   now error per R.H.
1) Compazine 10mg IM now
2) then check B/P 10-15 then
3) Catapress .1 mg PO if
   B/P elevated

SIGNATURE:
NURSE: T.O. Roy Havens PA-C
   L. Gardunex
PHYSICIAN: Linda Gardunex  9-11-97 2030
Rx NO.

---

PRICARE CODE NO. | NAME: Griffin Eldridge | INMATE NO. 85791 | LIVING UNIT: FCF

SUBJECTIVE: In for followup of "Migraines" -
3 HA last week - may have
PIA on arising ac nausea -
I help c Cafergot - Motrin no help

DATE 9/9/97  TIME 0940

OBJECTIVE: Temp. 97 Pulse 88 Resp. 20 B/P 140/90
WT 246 - NKA - Rx Catapres SR 1x Cafergot
pm states hx of head injury x
2 as child
on discussion - no aura c HA, no
head visited deep c HA
Exam R TM cloudy
   R TM WNL
   Fundi WNL, PERLA EOM intact
ASSESSMENT: no criteria for CT scan @ this time
Migraine's by Hx

PROBLEM 2
PLAN/ORDERS
1) Continue Cafergot
   as directed
2) RTC 1 mo for
   FM - may
   consider Beta Block
@ that time

SIGNATURE:
NURSE: Cleen
P.E.: M. Dilibeck NP
PHYSICIAN:
Rx NO.

DC Form 78 (2/93) / Old. No. 2

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME Griffin, Eldridge | INMATE NO. 85791 | LIVING UNIT CSP C8-12 |
|---|---|---|---|

SUBJECTIVE:

DATE 8/30/99   TIME 1930

Mr. Griffin gave me a piece of his lens from his glasses on ML. He stated the lens fell out into the floor & broke. He had a sm. piece missing from the bottom of @ lens. Rad staff was informed of this. He also gave me a kite to this effect. Will refer to RN Renkoff. —MDR/N

OBJECTIVE: Temp.___ Pulse___ Resp.___ B/P___

Error. Wrong I/M M.Dahlman R/N

PROBLEM 1
PLAN / ORDERS

SIGNATURE
NURSE: M.Dahlman R/N

ASSESSMENT:

P.E.:

PHYSICIAN:
Rx NO.

---

| PRICARE CODE NO. | NAME Griffin Eldridge | INMATE NO. 85791 | LIVING UNIT CSP C8-12 |
|---|---|---|---|

SUBJECTIVE:

DATE 8/30/99   TIME 1220

I/m asked this nurse to fill out kite requesting new mds for headaches. I/m states headaches "come on and last all day. The motrin I'm taking just doesn't work." Kite submitted. I/m claims to be illiterate.

OBJECTIVE: Temp.___ Pulse___ Resp.___ B/P___

PROBLEM 1 2
PLAN / ORDERS

SIGNATURE
NURSE: J Cain LPN

ASSESSMENT:

P.E.:

PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

( EXHIBIT )

DC Form 78 (2/93) / Old. No. 2

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME Griffin Eldridge | INMATE NO. 85791 | LIVING UNIT CSPC812 |

**SUBJECTIVE:** inmate Griffin asked if a would let mental health (he says he is illiterate) know that the benadryl he is taking is not helping him sleep, in fact he stated that it makes him "jittery," and keeps him awake. Will refer to mental health. See entry 8-16-99.

**OBJECTIVE:** Temp. ___ Pulse ___ Resp. ___ B/P ___

**ASSESSMENT:** R. Martinez RN referred this issue to mental health.

**DATE** 8/23/99  **TIME** 1900

**PROBLEM** 2

**PLAN / ORDERS:** Yellow Copy to mental health

**SIGNATURE NURSE:** M. Saundsaan RN 8/2/99  1900

P.E.:

**PHYSICIAN:**
Rx NO.:

---

| PRICARE CODE NO. | NAME Griffin, Eldridge | INMATE NO. 85791 | LIVING UNIT C812 |

**SUBJECTIVE:** Inmate Griffin requested I complete a kite for him to mental health ( he is illiterate) States med that Benadryl for sleep is not working. Has been compliant since ordered by mental health. Copies of ambulatory to mental health along with kite.

**OBJECTIVE:** Temp. ___ Pulse ___ Resp. ___ B/P ___

**ASSESSMENT:**

**DATE** 08/16/99  **TIME** 0905

**PROBLEM** 2

**PLAN / ORDERS:** Copy of ambu. to mental health

**SIGNATURE NURSE:** R. Martinez RN 08/16/99 0905

P.E.:

**PHYSICIAN:**
Rx NO.:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93)  / Old. No. 2
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|

SUBJECTIVE:

DATE

TIME

PROBLEM  1  2
PLAN / ORDERS

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P ____/____

SIGNATURE:
NURSE:

P.E.:

PHYSICIAN:
Rx NO.

ASSESSMENT:

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Griffin E | 85791 | CSP |

SUBJECTIVE:   per previous entry –
I spoke with Case manager
T. Robby – He is aware of inmates
needs regarding reading + writing
Case manager supervisor is
working with this – also inmate
has been referred to educational
services to determine educational
needs.

DATE   7/29/99

TIME   10³⁰

PROBLEM  1  2
PLAN / ORDERS

Informational

OBJECTIVE:   Temp. _____   Pulse _____   Resp. _____   B/P ____/____

SIGNATURE:
NURSE:   Oncken

P.E.:

PHYSICIAN:
Rx NO.

ASSESSMENT:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 2

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| CSV | Griffin, Eldridge | 85991 | CSP C8-12 |

**SUBJECTIVE:** I wrote letters to the attention of warden attempt. I and wonder Foolee stating he has a neurological disability and is unable to read the letters that are being sent to him.

**DATE:** 7-23-99   **TIME:** 1300

**OBJECTIVE:** Temp. ___ Pulse ___ Resp ___ B/P ___

I'm informing him that I was reading him 1st grade or below. All letters are written to him to read one of the Io. read him to read one of the letters to me + he was unable to do so.

I saw a letter from Geoffry D. Stay, Special Regulation Coordinator that that IN male has Scotopic sensitivity syndrome which is a perceptual and visual processing learning disability.

**ASSESSMENT:**

**PROBLEM**

**PLAN / ORDERS**

Copy to Lynn Erickson

**SIGNATURE/NURSE:**

**P.E.:**

**PHYSICIAN/Rx NO.:**

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Griffin, Eldridge | 85991 | CSP C8-12 |

**SUBJECTIVE:** Mr. Griffin told me while on rec that he had not seen MH yet. CR shows entry by RN on 7/11/99 referral to MH. Said he was

**DATE:** 7/22/99   **TIME:** 1900

**OBJECTIVE:** Temp. ___ Pulse ___ Resp ___ B/P ___

having trouble dealing & some issues going on ie. death in family & stress here @ CSP. Says he has trouble reading & writing & that is why he has not put in kite. Advised a note would be left for MH. ——

**ASSESSMENT:**

**PROBLEM** 1  2

**PLAN / ORDERS**

Refer to MH. Yellow copy to Dr. Stees.

**SIGNATURE/NURSE:** M Dohlman RN

**P.E.:**

**PHYSICIAN/Rx NO.:**

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

# SELF ADMINISTRATION MEDICATION AGREEMENT

**NAME:** _Griffin, Eldridge_                    **#:** _2451_

will be allowed, on a trial basis, to keep certain identified medications that have been prescribed/issued for him on his person or in his cell for SELF ADMINISTRATION.

At this time the inmate's condition is stable, and he has been explained the rules and regulations of this procedure.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I have been instructed and understand:

A.    I must take my medication as ordered.
B.    I may not distribute my medication to any other inmate or person.
C.    I must adhere to any follow-up procedures or medication review as requested by the medical department.
D.    I must return all medication to the Medical Department upon expiration (date will be on card/envelope).
E.    I must place a Sick Call Request (Form # G-100K) in at least seven days prior to (1) supply running out OR (2) evaluation for renew SPECIFY WHICH ONE, to assure continuity. When doing so, please include the following information:
    a.    Name and PCF number
    b.    Name of medication
    c.    Rx number on card
    d.    Number of pills remaining
    e.    Date that medication is to be discontinued (information on card)
    f.    Reason that you wish to continue the medication
F.    Medication must remain in original untampered package until taken as directed.
G.    A medication supply that is outdated will be considered contraband.
H.    Any medication  that is not taken for several consecutive days will be considered non-compliance and the medication will be discontinued, therefore, supply must be returned.
I.    Any misuse or abuse of any drug in the SELF ADMINISTRATION MEDICATION AGREEMENT will result in loss of all privileges, and disciplinary action will be taken against ALL inmates involved.

**I UNDERSTAND THE ABOVE RULES AND REGULATIONS AND WISH TO HAVE THESE PRIVILEGES WHILE INCARCERATED AT PCF.**

**INMATE SIGNATURE** X _Eldridge Griffen_          **DATE:** X _10-31-97_

**WITNESS:** _D Sarott RN_                    **DATE:** _10/31/97_

Original - Medical File
Copy    - Inmate

_Read to inmate as uses coverlays to read_
_RT dyslexic._



# CorrectionalHealthPartners

November 24, 2009

Colorado Territorial Correctional Facility

RE:    Eldridge L. Griffin
ID#:   85791
Requested service:    Office visit

*noted 11/30/09*

Dear:  Colorado Territorial Correctional Facility

This letter is to inform you that the PHP Medical Director reviewed your request for an office visit to the ophthalmologist. The service(s) requested were determined not medically necessary/covered for the following reason:

The services can be delayed safely until release date of 12-05-2009.

A copy of the clinical review criteria or treatment guidelines may be obtained by contacting Correctional Health Partners.  Please refer to the enclosed information regarding the appeal process if you do not agree with this decision.

Should you have additional questions or concerns, please contact Correctional Health Partners Care Management Department at 1- 866-362-1374.

Sincerely,

Stephen R. Krebs, MD
Medical Director
Care Management Department

cc:   Paula Franz, MD (CDOC)

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

## COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Griffin Eldridge | 85791 | C 8-12 CSP |

**SUBJECTIVE:**

I Have a Bump on the Back of my Neck at my Hair Line

DATE 5/6/99    TIME 830

PROBLEM 1 2

**OBJECTIVE:** Temp. ___ Pulse ___ Resp. ___ B/P ___

Unable to Write to turn in Kite. Officers Do Not Relay Info on Kites well

**PLAN / ORDERS**

Informational to Referr Bump on Neck to Be Seen By PA-

**ASSESSMENT:** Does Have a Bump on Neck on Left Near Hair Line will Refer to PA-

SIGNATURE: NURSE: _____

P.E.: _____

PHYSICIAN: Rx No. _____

---

| PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT |
|---|---|---|---|
| | Griffin Eldridge | 85791 | CSP C 8-12 |

**SUBJECTIVE:**

Concerned about his Kidneys. Mother just fee loot with Her Kidneys Now his Auntie has a problem. He is Concerned Because He is Having Pains

DATE 4-20-99    TIME 800pm

PROBLEM 1 2

**OBJECTIVE:** Temp. ___ Pulse ___ Resp. ___ B/P ___

Has officers write Kites for him So written his Back Pains Allways. Not As Concerned about Back Pain As Something Being wrong with His Kidneys

**PLAN / ORDERS**

Informational

**ASSESSMENT:** Has Motrin For Pains that He Has Been taking Just Concerned about Kidneys K J

SIGNATURE: NURSE: _____

P.E.: _____

PHYSICIAN: Rx No. _____

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT-H)

# STATE OF COLORADO

COLORADO DEPARTMENT OF CORRECTIONS

COLORADO TERRITORIAL CORRECTIONAL FACILITY
P. O. Box 1010
Cañon City, Colorado 81215--1010
Phone (719) 275-4181
FAX (719) 269-4115



Bill Owens
Governor

John W. Suthers
Executive Director

## M E M O R A N D U M

DATE:      August 3, 2000

TO:        Case Manager Rick LaLonde
           Cell House Seven

FROM:      Elizabeth Nichols, M.A., Lead Teacher   x3162
           Colorado Territorial Correctional Facility Academic Center
           Box 1010
           Cañon City, CO 81215-1010

SUBJECT:    Inmate Eldridge Griffin # 85791

**I have evaluated out Mr. Griffin from Adult Basic Education per our conversation on the phone today. He has reached an educational and emotional plateau in school at this time. He has a handicapping condition which makes learning difficult for him.**

Mr. Griffin came to us from CSP and Limon with information about his several specific learning disabilities. At a previous facility he was given colored gel to help him read written work and we were able to get the gel (peach over purple) to use here. He struggled with his lessons but never stopped trying to improve in class.

In DRDC he was not tested due to his disabilities. At CTCF he tested 2.7 reading, 4.3 total math, 0.0 language and 1.7 spelling. on the TABE test. While in ABE he worked on spelling, reading, and language and found that he could read comfortably on the computer with some modification. Dark screens with light writing were easier for him to work on.

He was identified as needing the SRA Decoding Program and was slated to start the B-1 group at lesson one when that group restarted. He worked in Target Spelling, Reading Power and Language Exercises for Adults level B using colored gel and was seated in an area of least distraction. He initiated his own program of spelling using the words he missed on the Invest computer lessons to try and improve his writing. He was becoming frustrated when his efforts were not resulting in the improvements he had hoped.

**At CSP he earned level one and two janitorial certificates and plans to work in that field with his wife's family upon release.** He is detail oriented and enjoys physical labor. We were able to get him a job at this facility which will utilize these skills when he reached a plateau in his academic work.

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**
Correctional Education Programs
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone: (719)226-4417
Fax: (719)226-4424



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

TO:   Dr. Paula Frantz, Chief Medical Officer

FROM:   Richard Bailey, Director of Special Education

SUBJECT:   Offender Eldridge Griffin #85791

DATE:   10/19/2009

NUMBER OF PAGES:   1

FAX NUMBER:   719-226-4424

RECEIVED

NOV 0 9 2009

Office of Correctional
Legal Services

Dr. Frantz,

In reviewing the learning disability assessment done on offender Griffin #85791 by Valorie Young, Licensed School Psychologist, he does not qualify for a learning disability. However, upon completion of the assessment, it was verified that Mr. Griffin received assistance from a Developmental Disabilities Services agency in the past, indicating a previous diagnosis of mental retardation. With that diagnosis, offender Griffin does qualify for services under the Americans with Disabilities Act (ADA) and will need identified support.

Accommodations for a diagnosis of mental retardation include modified instruction, individual assistance from a para-pro, more examples and demonstrations, extended time to complete tasks, and repetitive instruction and practice.

Offender Griffin's diagnosis warrants the need for ADA services and those services should begin as soon as possible.

Richard Bailey
Director of Special Education



# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Division of Clinical Services
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone:  (719) 579-9580
Fax:     (719) 226-4755
Web:   www.doc.state.co.us



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

## MEMORANDUM

**To:**   Offender Griffin, #85791

**From:**  Joan M. Shoemaker
Deputy Director of Prisons, Clinical Services

**Date:**  December 31, 2009

**RE:**   Step 2 grievance D-CT-09/10-191-2 and D-CT-09/10-192-2

On October 12, 2009, you filed two Step 1 grievances in which you requested an accommodation for your vision disability.  On November 20, 2009, both your Step 1 grievances were denied and you filed this Step 2 grievance in which you requested again an accommodation for your vision disability.

Your Step 2 grievance is denied for the following reasons:

You claim that you suffer from a vision disability that was confirmed by doctors outside the correctional health care system.  On July 10, 2008, you were screened for a vision disability and the results of that exam indicate that you have 20/20 vision which is normal acuity.   This level of acuity does not qualify for an accommodation for the visually disabled.  Therefore, your Step 2 grievance is denied.

EXHIBIT
G
03-479
PENGAD 800-631-6989

( *EXHIBIT* )



THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et. al.

Plaintiff,

v.

BILL RITTER, et. al.

Defendant.

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P. O. Box 6000, Sterling CO 80751-0600

---

### PLAINTIFF / CLAIMANT'S CLOSING ARGUMENT

---

**THIS MATTER** comes before the Special Masters on Claimant's own motion asking the Special Master to accept this motion and all attachments and exhibits as his closing arguments. The Claimant asks the Honorable Special Master for the following:

1)      In 1995, the Claimant arrived in the Colorado Departmentof Corrections (C.D.O.C.) at the Denver Receiving and Diagnostic Center (D.R.D.C). Once the Claimant was diagnostically tested as to educational level, it was acknowledged that the Claimant is illiterate; cannot read, write, or spell English. Claimant was then processed and sent to the Fremont Correctional Facility where he was then placed into Adult Basic Education (A. B. E.). There, the teacher found it nearly impossible to teach or educate the Claimant as a consequence of his substantial disability. The Claimant imputed to the teacher that he could not see the letters/numbers/figures which she was attempting to show him. Claimant also made known that he had been in Special Education Classes during the course of his entire school-aged life. And at said Special Ed. classes/schooling, Claimant tested positive for a neurological visual disability known as Erlen Syndrome, also known as Scotopic Sensitivity Syndrome.

(EXHIBIT)

2)      Between approximately 1996 and 1999, the C.D.O.C. allowed qualified diagnostic practitioners to come into Dept. of Corrections and test the Claimant and other inmates for Scotopic Sensitivity Syndrome. At the conclusion of said testing, the Claimant was once again proven to have Scotopic Sensitivity Syndrome and was given peach and purple-colored overlay transparencies for the aid of said condition. Said transparent overlays allow the Claimant to see written letters, numbers, and figures on paper by placing the overlay on top of the page to aid in visual contrast and filtration of light so he can better discern its contents. Use of said overlays seemed to work well for the Claimant, enabling better sight onto the page, which subsequently lends profoundly better for becoming literate.

3)      Although the overlays work well for seeing the page, they are of no consequence when the need for writing onto the page is needed, because the overlay must be removed in order to write upon the page. Once the overlay is removed, the Claimant can no longer see the page properly in order to write upon it.

4)      Once the above mentioned A.B.E. teacher discovered the issue mentioned above in paragraph 3, s/he attempted to get the Claimant approved for eyeglasses that were available for Scotopic Sensitivity Syndrome, but was then denied said request by the C.D.O.C. headquarters. And was simply released from education stating that the Claimant had reached his highest potential of learning. This determination was made without giving the Claimant the glasses that were available for Scotopic Sensitivity Syndrome and making this uneducated decision was a major contributor to the Claimant being released from the C.D.O.C. and not being successful because C.D.O.C. failed to give the Claimant an education before he was discharged, which is, a violation of their C.R.S. and C.D.O.C. AR mandate that inmates without GEDs will get GEDs before moving onto other assignments. As of, March 29, 2012, the Claimant still has not been placed in educational program and he has been back in the C.D.O.C. since November 2011. And the Claimant has repeatedly begged, requested and demanded to be placed in education so that he could try and better educate himself before being released in the 4th month of 2013 which he has been denied. He asked the special needs teacher for Sterling Correctional Facility, Ms. Ring, and she said that the C.D.O.C. corporate office denied Ms. Ring from putting the Claimant into education.

5)      In 2008, the Claimant returned to D.R.D.C. where the Claimant had made it known that he suffered from a visual disability that had permitted him from learning to read and write and that he could not see letters and numbers. Due to the Claimant being denied his chronic care blood pressure medication, due to the position being overloaded with offenders to be assessed, it caused the Claimant to go several days without his blood pressure medication. Everyday the Claimant was pushing the medical alert button in the cell alerting staff that his blood pressure was high and that he needed to see medical staff and was denied being told he has to wait until his name came up to see the physician. Because of this the Claimant passed out in his cell due to his blood pressure being severely high. Once the staff did a room count of the unit they realized that the Claimant was on the floor of his cell in dyer distress, they then called a First Responders

Eldridge Griffin #85791- DOCLL

Alert and transported the Claimant to medical by wheelchair. Once the Claimant was in medical his blood pressure was finally checked and the medical staff then realized that the Claimant's blood pressure was at dangerously high levels; approx.170/160. By the Claimants blood pressure being so high due to being denied his medication, he was now suffering from a severe migraine-headache that was inducing his blood pressure to go higher due to the pain he was experiencing. In order to try and lower the Claimant's blood pressure, medical staff attempted to stop the migraine by giving the Claimant a pill called Cafergot and numerous shots of a liquid that supposed to stop migraine-headaches. They were giving the Claimant a Cafergot pill every 20 minutes and a shot every 20 minutes and overdosed the Claimant on these medications. In result made the Claimant's heart beat drop all the way down to 39 b.p.m. which put the Claimant's life at risk. This was also made known to the Claimant that his life was at risk because they told him that they had to send him by ambulance to Denver General Hospital Emergency Room.

6)      In 2008, the Claimant returned to the C.D.O.C. and was sent to Fremont Correctional Facility which the powers that be at that facility decided they could not accommodate the Claimants A.D.A. alert and transferred the Claimant to Territorial Correctional Facility. Once at Territorial Correctional Facility, the Claimant was given an O.C.A. To assist him which general KITEs, any personal letters, but was instructed not to read or write any of the Claimants legal mail and was told that he could not go to the law library to assist the Claimant. So the Claimant went to his case manager, Ari Bell, and the Claimant told his case manager that he was unable to utilize the law library because of his reading and writing disability. The Claimant explained to his case manager that he had civil matters that he was trying to pursue and that without an accommodation being given for the Claimant in the law library would be a violation of the Claimants due process rights and without the accommodation for the reading and writing in the law library would be the same as denying the Claimant access to the courts.

7)      December 2, 2009 the Claimant was released from the Department of Corrections onto mandatory parole of three years. Now according to D.O.C. Policy any accommodation awarded to an offender in the D.O.C. Shall follow him out on parole, this did not happen. When the Claimant reached parole he was not given any of the accommodations for his disability even though the parole supervisors were made aware of the disability the Claimant struggles with and was told that he would need assistance with any reading or writing, etc. Because these accommodations were not given was a direct fault of the Claimant not being successful on parole. He was demanded to find a job even though they knew he could not or fill out the application for himself. The Claimant asks his parole officer, Allison Sweeney Hoover, if she would assist the Claimant in filing out applications and would show him how to find his way around she told the Claimant that this was not her job and that she would have to find someone to help him the same way they tell the Claimant in the D.O.C. That he has to find someone to help him with his legal work even though the Claimant has an A.D.A. Order that reads he is to receive an appropriate accommodation with all reading and writing. This responsibility falls on the Defendants, rather it is the Defendants for the D.O.C. or the Defendants that are responsible for the D.O.C. Offenders that are on parole for these two have different titles, but are still one whole entity.

*(EXHIBIT)*

Eldridge Griffin #85791- DOCLL

8)      February of 2010 the Claimant was sent back to the D.O.C. for violating a stipulation of his parole by signing into a contract without the authorization of his parole officer. The contract the Claimant signed was a marriage contract, this was a stipulation that the parole officer never read to the Claimant. The Claimant did not know this stipulation because his parole officer did not read the stipulations and rules in detail to the Claimant. The parole officer would give the shorthand version of what the contract read by saying "this part of the contract basically says..." And then she would say "sign here." When the Claimant told his parole officer he could not read this for himself and asked if she would read it in detail to him she said no and that the Claimant had to find someone to read it to him, so when the Claimant violated this part of his parole he had no idea that this was even a stipulation of his parole.

9)      Once back in the D.O.C. the Claimant again tried to get the glasses that are available for Scotopic Sensitivity Syndrome so he could attend education classes and once again he was denied the glasses and was denied education and was sent to work in the kitchen and was given a light duty porter job. These rejections from the D.O.C. A.I.C. office set the Claimant up for failure anytime he was released onto parole. He came in 1995 to the D.O.C. Uneducated, unable to read and write and they allowed the Claimant to do a total of 6 years of an 8 year sentence without giving the Claimant any education. Anytime the Claimant returned to the D.O.C. they always deny him education.

10)     September 9, 2010 the Claimant was arrested for a violation of parole for moving without authorization because he was unable to live on his own like the parole officer ordered him to so he moved home with his wife. While in El Paso County jail, the D.O.C. was contacted by the county jail asking them about any accommodations that they needed to provide for the Claimant because the Claimant was still a client of the D.O.C. Even though he was on parole and now was being held in the county jail on a parole hold. They were told to allow someone to read and write for the Claimant, but not to let anyone help him with the reading and writing of his legal work. Now on August 9, 2011 the Claimant received glasses for Scotopic Sensitivity Syndrome from Amy Cosner at the C.D.O.C. Legal Services Office of A.I.C. These were the same glasses that the Claimant tried to get the D.O.C. to award him in 1999 when he was put out of education and was told that he had reached his highest potential, he also tried to receive these glasses in 2008, 2009, and 2010.

11)     The Claimant feels that for the D.O.C. to award him these glasses for Scotopic Sensitivity Syndrome and to grant the Claimant on O.C.A. II to assist the Claimant with reading and writing and to implement a verbal reading program into the law library computers so the computers will read case law to the Claimant, should show the court that the Defendants are admitting that these accommodations are necessary is an admittance from the Defendants that these are the accommodations that should have been given to the Claimant in 1995 through 2002 and then again in 2008 through 2011, this time would be even including parole. And this should also show the court that the Defendants were aware of this disability that the Claimant suffers from and by the Defendants not awarding these accomodations in 1995 denied the Claimant his due proccess rights when the Claimant was attemping to pursue an inafective assistance of council, a plea

(EXHIBIT)

Eldridge Griffin #85791- DOCLL

withdraw and reconsideration.

WHEREFORE, Petitioner Prays that this Court Grant Relief to which Petitioner may be entitled in this Proceeding.

Date_____

ELDRIDGE LEE, GRIFFIN
DOC NO. 85791
STERLING CORRECTIONAL FACILITY
P.O. BOX 6000
STERLING, CO 80751

Eldridge Griffin #85791- DOCLL

( EXHIBIT )



Appendix E
**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.,

     Plaintiff,

v.

JOHN HICKENLOOPER, et al.,

     Defendant.

---

Claim Number: 03-479
Category III
Claimant: Elridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

## CLAIMANT'S RESPONSE TO
## SPECIAL MASTER'S ORDER

---

THIS MATTER, comes before the Special Masters on Claimants own Motion in response to Special Masters Motion of Orders. The Claimant respectfully asks this honorable court to grant this Response Motion for the following reasons.

The Special Masters made an Order on the 16th day of March, 2012 granting the Claimant permission to seek assistance from other inmates, except for his O.C.A., in reviewing his documents and records, as well as, the preparation of additional legal pleadings.

The Claimant had submitted a Motion out to the Special Masters from S.C.F., asking the Special Masters to not allow the Defendants to put the responsibility of the accommodation for the Claimant solely the responsibility of another inmate. Since the Special Masters has already made this Order and in his order that the Defendants have no objection to the Claimant seeking assistance from other inmates than the Claimant ask that the Special Masters make an Order ordering that the Defendants move the Claimant to a facility that is not a level 5 facility and that better fits his classification. The Claimant asks this of the Special Masters for the following:

1. The Claimant is now being housed at a level 5 facility when his classification says he qualifies to be at a medium facility.

2. At S.C.F., the ratio between offenders with life-sentences and offenders with sentences in the doubles-digits, being the same as life-sentences, together is at 90 percent. Which makes the current Order from the Special Masters nearly impossible because of the high

( EXHIBIT )

percentage of life-offenders that the Claimant is now being housed with the majority of the offenders here at S.C.F. are not willing to help the Claimant without the reward of some type of payment for helping. The mindset of offenders with life-sentences is what is in it for them; when the Claimant was housed at C.T.C.F. he did not have this problem because this is a Canyon City complex, and a great deal of the offenders there are from Colorado Springs. This was the same for Fremont Correctional Facility and the Claimant has a greater chance of finding someone that he may know that would be willing to help him.

3. Here at S.C.F. in the last 30 days there has been around 15 lock-downs of the facility which is a very high ratio, maybe not for maximum security facility, such as this, but the Claimant believes the ratio of lock-downs of a facility would not be this high if he was being housed in a medium security facility which fits his classification. The Claimant wants to make the Special Master aware that when these lock-downs of the facility occur, the Claimant has no access to other inmates to seek help from, or to the law library. Granted, the Claimant understands that lock-downs of a facility may take place at anytime, but in all of the 11 years history the Claimant has in the Department of Corrections, he has never been housed at a facility that has had 15 mandatory lock-downs in a 30-day time frame. Each one of these lock-downs of the facility lasts from 2-3 days each time. This is a great hindrance on the Claimant, but a benefit to the Defendants because if the Claimant is on lock-down he cannot read and write Motions for himself to submit to the Special Masters which would make the Claimant sure to miss the upcoming deadline of April 30, 2012.

4. The Defendants denied the Claimant this kind of assistance from other offenders in 1996 through 2001, and 2007 through 2009, by denying the Claimant an O.C.A. and by denying the Claimant any assistance from other inmates in the law library. Their reasons were, as they stated in one of their previous Objection Motions, that this kind of assistance is a safety and security risk of the facility. The Claimant believes that where he is currently being housed this risk increases nearly ten-fold because the minute one of the maximum-security offenders is here becomes angry, because the Claimant is unwilling to pay a fee for their assistance, his safety immediately becomes in danger, especially because offenders with life-sentences have nothing else to lose by causing harm to the Claimant.

5. The Claimant believes if the Defendants are not willing to change the Claimants current housing facility to a facility that more matches his classification, like C.T.C.F. or F.C.F. Or Orway, Crowley Correctional Facility within enough time for the Claimant to seek the help he needs to meet the April 30, 2012 deadline to get his closing arguments and final documents into the Special Masters then the Claimant asks that the Special Masters order that the Defendants immediately upgrade the reading program in the law library computers, to not only read, but search, spell and write by verbal command. This program is currently available; one is called Speak and Spell, and another is titled DragonStar. This program being downloaded into the law library computer program, will solve the whole problem of the Claimant needing someone to read and write his legal documents because the computer will read and write for the Claimant, and anytime the Claimant is to receive legal mail from the court he can bring it to the law library to be scanned then pasted to this program and the program will read his legal mail to him.

IN CLOSING,
The Claimant wants to once again express to the Special Masters that the responsibility of the Claimant receiving a reading and writing accommodation in the law library as his ADA accommodation approval order states, this responsibility is not of another offender, it is not the responsibility of the Claimant to find another offender to read and write for him. As the ADA accommodation reads, the Claimant is to receive an appropriate accommodation with reading and writing per the facility ADA coordinator. This puts the responsibility for an accommodation directly on the Defendants. The Claimant respectfully asks that the Special Masters grant all asked above and asks that the Order state that the Defendants are to immediately act on the Order. Furthermore, the Claimant asks that the Special Masters order that the Claimant be transferred to a facility that fits his classification the Claimant has 19 points which makes him a medium-classification. He has ever had any type of violence or escapes that would justify the Defendants keeping the Claimant housed at a level 5 facility with a kill device. If the Claimant is to pursue assistance from other inmates as a solution then the Claimant needs to be in an environment where asking for help from other offenders is not so much of a danger to him. If the Defendants are not willing to grant this request then the Claimant asks the Special Masters to order the Defendants to implement a program in their law library program that not only will read for the Claimant, but will spell and write any verbal words spoken to the computer from the Claimant. As mentioned before, 2 of these available programs are DragonStar and Speak and Spell. To have either one of these programs implemented into the law programs computer systems programs will solve the issue of the Claimant needing any assistance with his reading and writing of his legal documents while he is in the D.O.C. law library program. The Claimant asks that whichever order the Special Masters sees fit to order the Claimant asks the order the Defendants to act immediately so the Claimant will have enough time to submit all the documents in any closing arguments left to be submitted in this claim before the scheduled deadline date of April 30, 2012. The Claimant respectfully asks that this Motion and all addressed be granted and awarded to the Claimant as a solution to the complicated issue not

(EXHIBIT)

Eldridge Griffin #85791- DOCLL

before the court.



RESPECTFULLY SUBMITTED, this 29th Day of March, 2012.


Elridge Griffin, 85791
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO 80751



(Rev. 04/15/02)

( EXHIBIT )

Eldridge Griffin #85791- DOCLL

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing Motion of the Claimant, this 29th Day of March, 2012 to the following:

Judge Richard M. Borchers
Special Master for the United States District Court for the district of Colorado
Legal Resolution Center
7828 Vance Dr., Ste. 108
Arvada, CO 80003

King & Greisen, LLP
1670 York St.
Denver, CO 80206

Ms. Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredericks
Office of the Attorney General
Fifth Floor
1525 Sherman St.
Denver, CO 80203

Elridge Griffin, 85791
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO 80751