COPY
FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
August 7, 2012
GREGORY C. LANGHAM, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO




Civil Action No 92-CV-870 JLK

JESSE MONTEZ, et al

Plaintiffs,

v.

BILL RITTER, et al.,

JOHN HICKENLOOPER, et al.,

Defendants.

---

CLAIMANT'S OBJECTION TO FINAL ORDER OF SPECIAL MASTER'S ISSUED ON MAY 7, 2012 PURSUANT TO FRCP 53 (a) (2)

---

Claimant Eldridge Griffin # 85791 through Self-Representation as pro-se' Litigant, Respectfully submit the following objections in responce to final order of the special Master issued on May 7, 2012.

Whereby, Pursuant to Federal Rule of Civil Procedure Rule 53 (a) (2) where on, such objection must be filed with the Clerk of the United States District Court on or before August 6, 2012. as specified in the Special Masters order.

Your Claimant, however, Subsequently filed a Motion for extension of time received by the court on June 28, 2012., where upon such claimant sought an extension of time ...

for the purpose of filing his Supplement Complaint, as of which were ment to be the objection, the Claimant misunderstood and Confused; the objection motion with the term Supplement Complaint and Supplement evidence, due to the fact that, Claimant had sent his copy of the court order of the Special Master AS AN Exhibit to His Amended Complaint.

The Special Master did grant the Claimants Motion for extension of time in which to file an objection to the Special masters order, is granted up to and including September 17, 2012. Therefor, Claimant's objection is timely filed with the Clerk of the United States District Court, and here in after Claimant states as a ground in objection to May 7 2012 order of Special Master is as followed:

OBJECTION TO SPECIAL MASTER'S ORDER DISMISSING Mr. ELDRIDGE GRIFFIN'S CLAIM 03-479, AND, OBJECTION TO DEFENDANT'S OBSTRUCTION OF JUSTICE AND INTERFERENCE WITH GRIFFIN, ELDRIDGE'S CIVIL RIGHTS

The Claimant in this matter before the United States District Court; in objection to the Special Masters finding and ruling in part.

Where in here after, shall be explain as to why... your Claimant were hindered by the defendants et al. by either directly or indiretly the Act(s) or Actions, that, Lead to the obstruction of Justice by denial of access to the Courts during an Critical Stage in due process. specifically subsequently aftr hearins held by special Master and the orders issued thereof.

In the Matter, that, came before the special master on January 30, 2012 where such hearing were held at Sterling Correctional Facility, (SCF) in Sterling, Colorado. Present were the following: Eldridge Griffin (claimant) and Jacquelynn Rich Fredricks, attorney for defendants.

Your Claimant during hearing, did request the time to submit additional exhibits. In addition, it were established that claimant may submit his closing argument in support of this claim- Thereafter, both sides were granted up to April 30, 2012 in which to submit supplemental exhibits.

Moreover, after said hearing while your claimant were attempting to provide the supplemental exhibits, and the preparation of the Closing argument for submition. The Claimant suffer under the Loss of the ability to properly place before the Special Master, the documents and supplemental exhibits; This was Largely due to the Defendant's direct obstruction of Justice and interference with claimant's constitutional Rights, Civil Rights, Statutory Rights, and administration Regulation extended Rights; the Combined overall sub-stantive due process Mr. Griffin's Substantial Right; to include his 14th Amendment Right now violated by the Defendant(s) et al.

Your Claimant among his objections, additionally show cause, as to why he was unable to provide the Critical stage evidence the sup-plemental exhibits necessary to prove -- He was indeed a disabled individual who is a member of the Class. Furthermore, were disable by his imparment on or before August 27, 2003.

In this matter of objection before this Court, your Claimant has the burden of proof that,

he was disabled on or before August 27, 2003, moreover, if claimant so establishes that, he was disabled, then he may amend his claim and raise incidents that have ocurred since that date to the present.

CLAIMANTS SUBMISSION OF SUPPLEMENTAL EXHIBITS AS PROOF OF DISABILITY PRIOR TO AUGUST 27, 2003

Your Claimant with no other option, Herein Present the documentation, that, of which does establish his disability existed before August 27, 2003. Furthermore, such docoments in addition, clearly establish that, the Department of Corrections knew of Claimant's disabilities, However, failed to accommondate as such under any principal of Law, Specifically any enactment either federal or State, as established to provide a benefit under such.

See attached documentation reflective of the vision disabilty, and Social Security administration (SSA) Form SSA-827 Submitted by the Department of Correction for records request. Purpose determination of eligibility for benefits from 1995-2003.

Furthermore, the documents will establish specific Communication within said documentation, to which establish that, the ambulatory health record and psychiatric individual Contact has positive diagnosis and prognosis, that, Claimant's Condition exist, he has an vision disability, he is illiterate and can not read or write, and has an mental illness.

The defendants Denies that Claimant had A Right under the Americans with Disability Act after Positive diagnosis and prognosis, defendants between the years of 1995 to 2003 Denies that, thay had AN obligation to accommondate Claimant once His disabilities were determined for benefits.

as evidence there has been no ADA accommondation for vision disability entered into the record that, Shows any attempt by the defendants et al., to accommondate Mr. Eldridge Griffin's disabilities pursuant to any Principal of Law.

Claimant further seeks remedy under objection for the opportunity to submit documents as Supplemental exhibits in Suppot of Claim.

## DEFENDANT'S RETALIATION AND OBSTRUCTION OF JUSTICE

The defendant(s) et al., through an administ-rative scheme, did place the claimant under continual harassment by staff members as of whom with deliberate intent, denied and refused to allow claimant to pursue his right under the American with Disability Act. Where under such, claimant sought an benefit, and various accommonodation, and information regarding such benefits, that, include evaluation and testing.

Your claimant underwent serious violation of his constitutional Rights, civil Rights as protected under 42 U.S.C.A Sec 1983, 18 USC Sec 241 such right were violated by defendant(s) et al. through deliberate aggressive retaliation against Mr. Eldridge Griffin, for the sole reason that, Mr Griffin were seeking his ADA benefits to be accommondated for his impairments of vision disability, illiteracy, and mental illness.

Moreover, claimant seeks the benefits given him the ability under ADA to learn and perhaps get a GED.

Unfortunately, the defendants and their various Staff members, denies that Claimant has an right to pursue his claim under Montez. Fact: The defendants, et al., have caused Claimant to miss his court imposed dead lines, and have caused Claimant to fail in his efforts to provide the Supplemental evidence as exhibits, to include his closing argument to be submitted on or before April 30, 2012.

The Claimant in objection to the defendant's actions, where upon, such Act or actions have denied claimant access to the Court during a critical stage in Civil due process, your claimant offer for proof; the following evidence of such Act(s) or Actions.

HISTORY OF DEFENDANT'S CONTEMPT OF COURT, AND; THE DEFENDANTS HISTORY OF ASSAULT UPON CLAIMANT'S RIGHT UNDER AN COURT ORDER, TO INCLUDE THE DEFENDANT'S, et al., DISORDERLY CONDUCT CALCULATED TO INTERRUPT AND INTERFERE WITH THE ADMINISTRATION OF JUSTICE.

FACT: The defendants et al., have by the conduct in an continuous regulatory scheme,

Thereat, the defendants have went beyond their official capacity, when staff members fabricated several C.O.P.D. write ups in retaliation with deliberate intent did discriminat against Claimant as a class.

On January 10, 2012 your Claimant were forced to file an affidavit and incident report with the Special Master apprising him of the Misconduct of the defendants.

On January 12, 2012 your Claimant again were forced to file an second affidavit and incident report with the Special Master apprising him of the Continual Misconduct and retaliation.

Thereafter, the defendants continue to harass, and retaliate against your Claimant, where on February 11, 2012., the defendants Charged Claimant with threats, and placed claimant into segregation.

On April 12, 2012 The defendant Charged claimant with advocating or Creating Facility disruption.

On June 14, 2012 the defendants yet again brought another write up charge for abuse of medication.

Bringing us now the the main issue, while your Claimant were in segregation, he had requested his Legal papers, so that, he may manage his Civil Action. However, he were denied during the pending dead Line date April 30, 2012. Therefore, the defendants by such Conduct under this Regulatory Scheme Have assalted Claimants Rights to present his case under the Court order granting opportunity to file appropriate Supplemental exhibits and closing argument.

Therefor, Claimant for Cause shown in objection to the finding, whereat, Claimant was kept from the opportunity under the Special Masters order. The opportunity of presenting his Supplemental exhibits and Closing argument supporting that Claimant was disabled by his impairments on or before August 27, 2003.

DENIED ACCESS TO THE COURT

Unfortonatly, your claimant were denied access to his work product, Legal Files, Letters and notes, as Done by defendants. The Claimant were denied access to the Court.
See the Attached request for Legal Service.

Whereas, Claimant requested multiple times, for his Legal work, and other Legal Assistance, However, were denied such. specifically, access to his documents Stored on the Legal Library Computers. Claimant had prepared his closing argument; the defendants denied the printing of this document.
See Attached responce dated April 30, 2012 - May 8 2012.

FOR CAUSE SHOWN

Your Claimant, for cause shown in this matter before the United States District Court. Pursuant to F.R.C.P. Rule 53(a)(2)., the Claimant submits his objection to special masters final order. Whereupon, such order the claimant were denied access to the Coort during an critical Stage. Access were denied

through a regulatory Scheme and conduct done by the defendants, whereat, the defendants have directly removed Claimant's opportunity from which to Comply with the Standing order issued by the Special Master.

The Claimant hereby Claim that, the defendants Acted with deliberate intent, to remove from Claimant his ability to establish each of the Criteria as Set forth in Judge Kane's order of March 23, 2010.

It is belived that, under a regulatory Scheme the defendants have discriminated against the Claimant, in an Continual manner in which the defendants are in Control and in Custody of Mr. Eldridge Griffin.

Where at, the defendants have Manipulated the System of administation regulations (AR's) for the Sole purpose of hindering the Claimant and other inmates, as of who have an Ligitimate claim and injuries or disability, sustained While defendants are operating a Correctional facility.

Moreover, under this Circumstance and Controversies. Thereupon the (4) Questions Considered by the Special Master. Whereon, your Claimant in an attempt to Provide evidence to which would meet the Criterion as established. Here in after Mr. Griffin declare that, he can meet the Article XXXII requirement as an individual under such.

Your Claimant under objection, in part, To the finding that Mr. Eldridge Griffin's Claim is dismissed as A Consequence Because, the defendants have caused obstruction of his evidence necessary, (need) to Support his Claim.

Claimant implore this Court for an order giving him an opportunity to Submit Such evidence unhindered by the defendants. Claimant seeks such order allowing, him to Comply with the [redacted] May 7, 2012 order. Moreover, in Light of the Continual harassment and retaliatory scheme. The Claimant's Prayer for relief under objection is for His Claim, to be allowed to be amended and so forth as an remedy.

Whereby, the conduct or rather the on--going conduct of the defendant(s) et al., clearly establish some form of violate and direct cause of injury.

Therefor, as an evidence of discrimination; The mear fact that, an claim based upon SSS is an covered vision disability clearly becomes a discrimination in form, if Mr. Eldridge Griffin's claim is excluded. Such is the case by the current order to dismiss, where when Claim # 03-430 establish that SSS is a disability under Montez.

Furthermore, for cause shown where it is a fact that, on July 22, 1999 Mr. Eldridge Griffin were diagnosed with Scotopic Sensitivity Syndrome (SSS). However, de--scribed as a "visual processing Learning disability" based upon the records, Claimant was treated for this disorder IN-PART.

First of all; the overlays only provide a reading accommondation, and not the writing. The defendants failed to provide a compleat Treatment as presceibed...

Secondly, in order for the accommondation to be compleat under proper Treatment for the writing Claimant must receive A pair of specialited glasses, with such ADA CompletE accommondation, Then in 1999 Claimant would have been fully accommondated. thus, giving Mr. Griffin the ability to see the words and constructively write what he sees. reiterating that, Peach Colored overlay anly provid partial accommondation in reading.

However, makes it impossible to write after reading them. only through the prescribed eye glasses can both parts of the process be completed. Therefor, the defendants failed to properly accom--mondate Claimant in 1999, as of which was before [redacted] August 27, 2003 while Mr. Eldridge Griffin were in Costody as the Special Master findings Clearly establish in his order Sec II that, Claimant were on March 10, 1999 Placed into the Colorado State penitentiary in Canon City, Colorado, and Claimant remained in that facility until april 19, 2000.

## CONCLUSION

In conclusion of all the facts combined, the information presented in this objection motion, and the attached documents as evidence. Your Claimant humbly object to the dismissal of his Clam, whereupon, the records do reflect him as being diagnosed with an impairment called Scotopic Sensitivity Syndrome (SSS).

The defendants denied Claimant the Critically needed Glasses in 1999 to 2000, in effect, Claimant was Latter discriminated against by DOC because of his disability. As A Proof your claimant was discriminated against when DOC refused to accomomondate Claimant' with the glasses, so that he may get an Basic Adult Education as provisioned under statutory mandate pursuant to Article 32 CRS. the Correctional Education Program.

Griffin were not allowed to participate against his will, and Because of his disability Mr. Griffin does not Have an GED as proof of such discrimination, when other inmates are allowed to get Their's.

under the Rehabilitation Act and the ADA, the defendants while having custody of Mr. Eldridge Griffin # 85791 between the years of 1999-2000; the Executive Director of the Department of Correction were under obligation to accommondate Mr Eldridge Griffin # 85791 vision disability under ADA.

Furthermore, were oblisated under the Rehabilitation Act, and under the Correction Education Program Act of 1990, an State Act.

Under the Current Scheme of the defendants, denial of specific responsability, Has in effect, been an Continual Discrimination against Mr. Eldridge Griffin # 85791__where upon the defendants deliberate continual Avoidance either by excuse or explanation under an regulatory scheme as the defendants shirk Their Duty and responsability under federal and State law.

WHEREFORE, Claimant humbly implore this court the United States District Court for relief and remedy.

Done this 26 day of July, 2012

[signature]

Eldridge Griffin

# CERTIFICATE OF MAILING

I hereby Certify that I have mailed a copy of the foregoing Claimants objection to Final order of special master issued on may 7 2012 pursuant to FRCP 53(g)(2) to the following on this 26 day of July 2012:

United States District Court
901 19th Street
Denver, CO 80294

Judge Richard M. Borchers
Special Master for the United States District court for the District of Colorado Legal Resolution Center
7828 Vance Drive, Suite 108
Arvada, Colorado 80003

Ms Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Freancks
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO 80203

King + Greisen, LLP
1670 York Street
Denver, CO 80206

Eldridge lee Griffin
Eldridge Griffin

(EXHIBIT)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.,

Plaintiffs,

-vs.-

JOHN HICKENLOOPER, et al.,

Defendants.

---

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

**ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on Claimant's Motion for Extension of Time. Claimant is asking for additional time in which to file an objection to the Special Master's final order which was issued on May 7, 2012.

The Special Master is aware that Claimant has filed a separate lawsuit. He has been given time to file an amended complaint in that separate case. **Claimant is advised that this order pertains only to his claim in the Montez matter. Any request for an extension of time in the separate lawsuit must be presented to Magistrate Judge Boland.**

IT IS HEREBY ORDERED that Claimant's Motion for Extension of Time in which to file an objection to the Special Master's order is granted up to and including **September 17, 2012.**

SIGNED this 2nd day of July, 2012.

BY THE COURT:

Richard M. Borchers
Special Master

(EXHIBIT)

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 2nd day of July, 2012 to the following:

Mr. Eldridge Griffin
#85791
SCF
P.O. Box 6000
Sterling, CO 80751

King & Greisen, LLP
1670 York Street
Denver, CO 80206

Ms. Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredericks
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, CO 80203

Susan L. Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-JLK

JESSE MONTEZ, et al.,

Plaintiffs,

-vs.-

JOHN HICKENLOOPER, et al.,

Defendants.

---

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P.O. Box 6000, Sterling, CO 80751

---

**ORDER OF SPECIAL MASTER**

---

THIS MATTER comes before the Special Master on Claimant's Motion for Extension of Time. Claimant is asking for another extension of time, having asked for several over the last three years.

As noted in a separately issued order, Claimant has not established that he was the victim of discrimination prohibited by the ADA on or before June 30, 2001, the day his sentence was discharged. Absent proof of such discrimination during Claimant's first incarceration, the Remedial Plan prohibits discussion of any acts against Claimant after August 27, 2003. What Claimant has established is that he was diagnosed with SSS in the late 1990's and accommodations were provided to him. Claimant's remedy is to commence a new lawsuit dealing with what has occurred since 2008 when he returned to DOC custody.

IT IS HEREBY ORDERED that Claimant's Motion for Extension of Time is denied.

SIGNED this 7th day of May, 2012.

BY THE COURT:

Richard M. Borchers
Special Master

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed a copy of the foregoing Order of Special Master this 7th day of May, 2012 to the following:

Mr. Eldridge Griffin
#85791
SCF
P.O. 6000
Sterling, CO 80751

King & Greisen, LLP
1670 York Street
Denver, CO 80206

Ms. Beth McCann
Mr. James Quinn
Ms. Jacquelynn Rich Fredericks
Office of the Attorney General
Fifth Floor
1525 Sherman Street
Denver, CO 80203

Susan L. Carter

(EXHIBIT)

# STATE OF COLORADO



DEPARTMENT OF CORRECTIONS

Sterling Correctional Facility
P. O. Box 6000
Sterling, CO 80751-6000
Phone: (970) 521-5010
Fax: (970) 521-8225

John Hickenlooper
Governor

Tom Clements
Executive Director

**Legal Access Program**
**West Law Library**

# LEGAL ACCESS RESPONSE

April 30, 2012

TO: Mr. Griffin

DOC #: 85791 HOUSING UNIT:

In response to the attached request, the following is provided:

Your request to make copies has been denied because the work on the computer is not complete. According to our policies only completed work may be printed.

It is suggested that you hand write a motion to the courts and ask for an extension of time on your case.

Hallie Beard
Legal Assistant I

cc: File

Beg 147190
End 147192

(EXHIBIT)

# STATE OF COLORADO

DEPARTMENT OF CORRECTIONS

Sterling Correctional Facility
P. O. Box 6000
Sterling, CO 80751-6000
Phone: (970) 521-5010
Fax: (970) 521-8225




John Hickenlooper
Governor

Tom Clements
Executive Director

**Legal Access Program**
**West Law Library**

## LEGAL ACCESS RESPONSE

May 8, 2012

TO: Mr. Griffin

DOC #: 85791 HOUSING UNIT:

In response to the attached request, the following is provided:

Request for motion forms must be submitted on form 750-1C (Pink form). You may request your envelopes on the yellow form 750-1E. You must show that you have a motion to mail to the court, and give the address so we may pre-address the envelope.

Hallie Beard
Legal Assistant I

cc: File



State of Colorado
Department of Corrections
REQUEST FOR INTERVIEW

DC Form 20-22
(Revised 10/90)

MAY 07 2012

Date 05-05-2012
Name Eldridge Griffin
Reg No 85791
CH Seg D Tier 3 Cell 4
Audience With Legal Access Program
Give Reason Mr Griffin needs this Manila envelope so that he can send 2 motions [redacted] one is a motion called (motion to file without PAYMENT OF FEES) The other one is a motion called (MOTION REQUESTING SERVICE OF PROCESS BY THE COURT) And these motions have 7 pages to them and they have 7 pegs of (EXHIBITS) to Mr Griffin can show the motions to you when you come the Address that everything is going to is -> LOGAN COUNTY COMBINED (DISTRICT) COURT 110 N Riverview Road, Room 205 Sterling Colorado 80751

20047

Beg 147869
End 147870

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 2
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.
NAME: Griffin, Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP C8-12
DATE: 8/30/99
TIME: 1930

SUBJECTIVE:
Mr. Griffin gave me a piece of his lens from his glasses on ML. He states the lens fell out onto the floor & broke. He had a sm. piece missing from the bottom of @ lens. Pod staff was informed of this. He also gave me a kite to this effect. Will refer to RN Penkoff. MDRN

Error. Wrong I/M MDahlmann RN

OBJECTIVE: Temp. Pulse Resp. B/P

PROBLEM 1 2
PLAN / ORDERS
Informational

ASSESSMENT:

SIGNATURE: NURSE: MDahlmann RN
P.E.:
PHYSICIAN:
Rx NO.

PRICARE CODE NO.
NAME: Griffin, Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP C8-12
DATE: 8/30/99
TIME: 1220

SUBJECTIVE:
I/m asked this nurse to fill out kite requesting new meds for headaches. I/m states headaches "come on and last all day. The motrin I'm taking just doesn't work." Kite submitted. I/m claims to be illiterate.

OBJECTIVE: Temp. Pulse Resp. B/P

PROBLEM 1 2
PLAN / ORDERS

ASSESSMENT:

SIGNATURE: NURSE: J Cain LPN
P.E.:
PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 2
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.:
NAME: Griffin Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP C812
DATE: 8/23/99
TIME: 1900

SUBJECTIVE: Inmate Griffin asked if I would let mental health (he says he is illiterate) know

OBJECTIVE: Temp. Pulse Resp. B/P
that the benadryl he is taking is not helping him sleep, in fact he states that it makes him "jittery" and keeps him awake. Will refer to mental health. See entry 8-16-99

ASSESSMENT:
R. Martinez RN referred this issue to mental health.

PROBLEM 1 2
PLAN / ORDERS
Yellow Copy to mental health

SIGNATURE NURSE: M. Sandoval 1900 8/23/99
P.E.:
PHYSICIAN:
Rx NO.:

---

PRICARE CODE NO.:
NAME: Griffin, Eldridge
INMATE NO.: 85791
LIVING UNIT: C812
DATE: 08/16/99
TIME: 0905

SUBJECTIVE:
Inmate Griffin requested I complete a kite for him to mental health (He is illiterate)

OBJECTIVE: Temp. Pulse Resp. B/P
States med that Benadryl for sleep is not working. Has been compliant since ordered by mental health. Copy of ambulatory to mental health along

ASSESSMENT:
with kite.

PROBLEM 1 2
PLAN / ORDERS
Copy of ambulatory to mental health

SIGNATURE NURSE: R. Martinez RN 08/16/99 0905
P.E.:
PHYSICIAN:
Rx NO.:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)





DC Form 78 (2/93) / Old. No. 2

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO. | NAME | INMATE NO. | LIVING UNIT

SUBJECTIVE: | DATE | TIME

PROBLEM 1 2

PLAN / ORDERS

OBJECTIVE: Temp. ______ Pulse ______ Resp. ______ B/P ___/___

SIGNATURE:
NURSE:
P.E.:
PHYSICIAN:
Rx NO.

ASSESSMENT:

---

PRICARE CODE NO. | NAME: Griffin E | INMATE NO.: 85791 | LIVING UNIT: CSP

DATE: 7/29/99 | TIME: 10:30

SUBJECTIVE: See previous entry – I spoke with case manager T. Robley – He is aware of inmate's needs regarding reading + writing. Case manager supervision is working with this – Also inmate has been referred to educational services to determine educational needs.

PROBLEM 1 2

PLAN / ORDERS: Informational

OBJECTIVE: Temp. ______ Pulse ______ Resp. ______ B/P ___/___

SIGNATURE:
NURSE: [signature]
P.E.:
PHYSICIAN:
Rx NO.

ASSESSMENT:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)



DC Form 78 (2/93) / Old. No. 2
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.: CSV
NAME: Griffin, Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP C8-12
DATE: 7-23-99
TIME: 1300

SUBJECTIVE: Sends kites to the attention of warden attempt and warden Soares stating he has a neurological disability and is unable to read the letters that are being sent to him.

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ____
I'm informed ... reading ... all kites are ... written by one of the CO's ... to me + he was unable to do so.
I saw a letter from Jeffrey D. Hay, Special Population Coordinator that that IN male has Scotopic Sensitivity Syndrome

ASSESSMENT: which is a perpetual and visual processing learning disability.

PROBLEM
PLAN / ORDERS: Copy to Lynn Erickson

SIGNATURE:
NURSE: Note 7/23/99 1330 Eddie ...
P.E.:
PHYSICIAN:
Rx NO.

---

PRICARE CODE NO.:
NAME: Griffin, Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP C8-12
DATE: 7/22/99
TIME: 1900

SUBJECTIVE: CR
Mr. Griffin told me while on ... that he had not seen MH yet. CR shows entry by RN on 7/11/99 referral to MH. Said he was

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ____
having trouble dealing c some issues going on i.e. death in family & stress ... CSP. Says he has trouble reading & writing & that is why he has not put in kite. Advised a note would be left for MH. ——

ASSESSMENT:

PROBLEM 1 2
PLAN / ORDERS: Refer to MH. Yellow copy to Dr. Stoner.

SIGNATURE:
NURSE: M Dobelman RN
P.E.:
PHYSICIAN:
Rx NO.

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 2635
WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.:
NAME: Griffin Eldridge
INMATE NO.: 85791
LIVING UNIT: C8-12 CSP
DATE: 5/6/99
TIME: 830

SUBJECTIVE: I Have a Bump on the Back of my Neck at my Hair Line

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ____
Unable to Write to turn in Kite. Officers Do Not Relay Info on Kites well

ASSESSMENT: Does Have a Bump on Neck on Left Near Hair Line will Refer to PA-

PROBLEM 1 2
PLAN / ORDERS: Informational to Refer Bump on Neck to Be Seen By PA-

SIGNATURE: NURSE: [signature]
P.E.:
PHYSICIAN: [signature]
Rx NO.:

PRICARE CODE NO.:
NAME: Griffin Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP C8-12
DATE: 4-20-99
TIME: 800pm

SUBJECTIVE: Concerned about his Kidneys. "Mother just fell out with Her Kidneys Now his Auntie has A Problem" He is Concerned Because He is Having Pains

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ____
Has officers write Kites for him So Written As Back Pains Kidneys. Not As Concerned about Back Pain As Something Being wrong with His Kidneys

ASSESSMENT: Has Motrin For Pains that He Has Been taking, Just Concerned about Kidneys

PROBLEM 1 2
PLAN / ORDERS: Informational

SIGNATURE: NURSE: [signature]
P.E.:
PHYSICIAN: [signature]
Rx NO.:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 263

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.: 
NAME: Griffin Eldridge
INMATE NO.: 85791
LIVING UNIT: CSP D7-17
DATE: 10-27-99
TIME: 12³⁰

SUBJECTIVE:
Fiorinal tabs ii Expired 10/20/99
Asked for Headache meds Last Night

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ____ / ____
Only took the medication when He Had A Headache. Called to medical whenever He Needed medication.

ASSESSMENT: Need for Heache Medication Renewal Will Referr to PA for Renewal of Fiorinal

PROBLEM 1 2 ____
PLAN / ORDERS
✓ Fiorinal tabs ii
Po Bid PRN Headaches
X 30 days

SIGNATURE:
NURSE: [signature]
P.E.: [signature]
PHYSICIAN: Dr. Gul[illegible]
Rx NO.

PRICARE CODE NO.: 
NAME: Griffin, E.
INMATE NO.: 85971
LIVING UNIT: CSP C8-12
DATE: 9-20-99
TIME: Am

SUBJECTIVE:
CSV re CC HTN & HA's. BP's 136/63
c/o chronic daily frontal HA's. ⊕ Fam Hx. Avg 4.
pt not sure if verapamil helps or not. Numerous drugs tried in past

OBJECTIVE: Temp. ____ Pulse ____ Resp. ____ B/P ____
including: shots, midrin → ∅ help.
will Δ to Fiorinal trial – continue if significant help.
Tagamet → break thru dyspepsia – will Δ to Zantac.
Pt to "kites" prn – NOTE pt is illiterate & Dr. N. can't spell

ASSESSMENT:
HA's – doubt migraine [illegible]

PROBLEM 1 2 ____
PLAN / ORDERS
⑧ Next cc = CSV ≈ 6 mos.
⑨ Pt states "I cannot read or write" – label chart appropriately & inform Pod staff to assist c̄ "kites" prn.
① Fiorinal ii bid x 30 d
③ DC midrin when Fiorinal in
④ Inform pt "No fiorinal" in cell
⑤ Zantac 150 bid x 3 mos
⑥ DC Tagamet when Zantac in.
⑦ Kites prn – refer to DrN prn.

SIGNATURE:
NURSE:
P.E.:
PHYSICIAN: [signature]
Rx NO.

Noted D. Cain [illegible] 9/20/99 1315

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

31201

(EXHIBIT)

DC Form 78 (2/93) / Old. No. 2635

WHITE – Medical Record
CANARY – Pharmacy
PINK – Data Collection

COLORADO DEPARTMENT OF CORRECTIONS / AMBULATORY HEALTH RECORD

PRICARE CODE NO.: 
NAME: Griffin, Eldridge
INMATE NO.: 85791
LIVING UNIT: FCF
DATE: 9-11-97
TIME: 1815

SUBJECTIVE: H/A since 1200, last cafergot at 4:30 p.m.

OBJECTIVE: Temp. 97.4 Pulse 56 Resp. 20 B/P 154/110
emesis x2, c/o's throbbing H/A behind eyes, photosensitivity
Appears uncomfortable, does not appear ~~to be right~~ ---
B/P 138/100, Catapress given at 1900
B/P 134/86 @ 1925, still c/o's H/A
B/P 134/94 @ 2000, ↑ table eating states he

ASSESSMENT: feels much better,

2025 – returned to CH in NAD

PROBLEM: 1 2

PLAN / ORDERS:
1) ~~Catapress .2mg PO now~~ error per R.H.
1) Compazine 10mg IM now
2) then check B/P 10-15 min then
3) Catapress .1mg PO if B/P elevated

SIGNATURE: T.O. Roy Havens PA-C/
NURSE: L. Gardner
P.E.:
PHYSICIAN: Linda Gardner 9-11-97 2030
Rx NO.:
[signature]

---

PRICARE CODE NO.: 
NAME: Griffin Eldridge
INMATE NO.: 85791
LIVING UNIT: FCF
DATE: 9/9/97
TIME: 0940

SUBJECTIVE: In for followup of "Migraines" – 3 HA last week – may have HA on arising or nausea – I help c Cafergot – Midrin no help

OBJECTIVE: Temp. 97.3 Pulse 88 Resp. 20 B/P 144/96
WT 246 – NKA – Rx Catapres SR 180mg, Cafergot
1 m relates hx of head injury x 2 as child
On discussion – no other c HA, no real visual change c HA
Exam (L) TM cloudy
(R) TM WNL
Fundi WNL, PERRLA, EOM intact

ASSESSMENT: No criteria for CT scan @ this time
Migraine's by hx

PROBLEM: 1 2

PLAN / ORDERS:
1) Continue Cafergot as directed ✓
2) RTC 1 mo for F/U – may consider Beta Blocker @ that time

SIGNATURE: [signature]
NURSE: [signature] NP
P.E.:
PHYSICIAN: [signature]
Rx NO.:

ALWAYS BEGIN AT BOTTOM WORKING TO THE TOP OF THE SHEET.

(EXHIBIT-H)

# STATE OF COLORADO

COLORADO DEPARTMENT OF CORRECTIONS

COLORADO TERRITORIAL CORRECTIONAL FACILITY
P. O. Box 1010
Cañon City, Colorado 81215-1010
Phone (719) 275-4181
FAX (719) 269-4115



Bill Owens
Governor

John W. Suthers
Executive Director

**MEMORANDUM**

DATE: August 3, 2000

TO: Case Manager Rick LaLonde
Cell House Seven

FROM: Elizabeth Nichols, M.A., Lead Teacher x3162
Colorado Territorial Correctional Facility Academic Center
Box 1010
Cañon City, CO 81215-1010

SUBJECT: Inmate Eldridge Griffin # 85791

**I have evaluated out Mr. Griffin from Adult Basic Education per our conversation on the phone today. He has reached an educational and emotional plateau in school at this time. He has a handicapping condition which makes learning difficult for him.**

Mr. Griffin came to us from CSP and Limon with information about his several specific learning disabilities. At a previous facility he was given colored gel to help him read written work and we were able to get the gel (peach over purple) to use here. He struggled with his lessons but never stopped trying to improve in class.

In DRDC he was not tested due to his disabilities. At CTCF he tested 2.7 reading, 4.3 total math, 0.0 language and 1.7 spelling. on the TABE test. While in ABE he worked on spelling, reading, and language and found that he could read comfortably on the computer with some modification. Dark screens with light writing were easier for him to work on.

He was identified as needing the SRA Decoding Program and was slated to start the B-1 group at lesson one when that group restarted. He worked in Target Spelling, Reading Power and Language Exercises for Adults level B using colored gel and was seated in an area of least distraction. He initiated his own program of spelling using the words he missed on the Invest computer lessons to try and improve his writing. He was becoming frustrated when his efforts were not resulting in the improvements he had hoped.

**At CSP he earned level one and two janitorial certificates and plans to work in that field with his wife's family upon release.** He is detail oriented and enjoys physical labor. We were able to get him a job at this facility which will utilize these skills when he reached a plateau in his academic work.

# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**

Division of Clinical Services
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone: (719) 579-9580
Fax: (719) 226-4755
Web: www.doc.state.co.us



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

MEMORANDUM

To: Offender Griffin, #85791

From: Joan M. Shoemaker
Deputy Director of Prisons, Clinical Services

Date: December 31, 2009

RE: Step 2 grievance D-CT-09/10-191-2 and D-CT-09/10-192-2

On October 12, 2009, you filed two Step 1 grievances in which you requested an accommodation for your vision disability. On November 20, 2009, both your Step 1 grievances were denied and you filed this Step 2 grievance in which you requested again an accommodation for your vision disability.

Your Step 2 grievance is denied for the following reasons:

You claim that you suffer from a vision disability that was confirmed by doctors outside the correctional health care system. On July 10, 2008, you were screened for a vision disability and the results of that exam indicate that you have 20/20 vision which is normal acuity. This level of acuity does not qualify for an accommodation for the visually disabled. Therefore, your Step 2 grievance is denied.

EXHIBIT
G
03-479

PENGAD 800-631-6989



# STATE OF COLORADO

**COLORADO DEPARTMENT OF CORRECTIONS**
Correctional Education Programs
2862 South Circle Drive
Colorado Springs, CO 80906-4195
Phone: (719)226-4417
Fax: (719)226-4424



Bill Ritter, Jr.
Governor

Aristedes W. Zavaras
Executive Director

TO: Dr. Paula Frantz, Chief Medical Officer

FROM: Richard Bailey, Director of Special Education

SUBJECT: Offender Eldridge Griffin #85791

DATE: 10/19/2009

NUMBER OF PAGES: 1

FAX NUMBER: 719-226-4424

RECEIVED
NOV 09 2009
Office of Correctional Legal Services

Dr. Frantz,

In reviewing the learning disability assessment done on offender Griffin #85791 by Valorie Young, Licensed School Psychologist, he does not qualify for a learning disability. However, upon completion of the assessment, it was verified that Mr. Griffin received assistance from a Developmental Disabilities Services agency in the past, indicating a previous diagnosis of mental retardation. With that diagnosis, offender Griffin does qualify for services under the Americans with Disabilities Act (ADA) and will need identified support.

Accommodations for a diagnosis of mental retardation include modified instruction, individual assistance from a para-pro, more examples and demonstrations, extended time to complete tasks, and repetitive instruction and practice.

Offender Griffin's diagnosis warrants the need for ADA services and those services should begin as soon as possible.

Richard Bailey
Director of Special Education





THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870- JLK

JESSE MONTEZ, et. al.

Plaintiff,

v.

BILL RITTER, et. al.

Defendant.

Claim Number: 03-479
Category III
Claimant: Eldridge Griffin, #85791
Address of Claimant: SCF, P. O. Box 6000, Sterling CO 80751-0600

**PLAINTIFF / CLAIMANT'S CLOSING ARGUMENT**

**THIS MATTER** comes before the Special Masters on Claimant's own motion asking the Special Master to accept this motion and all attachments and exhibits as his closing arguments. The Claimant asks the Honorable Special Master for the following:

1) In 1995, the Claimant arrived in the Colorado Departmentof Corrections (C.D.O.C.) at the Denver Receiving and Diagnostic Center (D.R.D.C). Once the Claimant was diagnostically tested as to educational level, it was acknowledged that the Claimant is illiterate; cannot read, write, or spell English. Claimant was then processed and sent to the Fremont Correctional Facility where he was then placed into Adult Basic Education (A. B. E.). There, the teacher found it nearly impossible to teach or educate the Claimant as a consequence of his substantial disability. The Claimant imputed to the teacher that he could not see the letters/numbers/figures which she was attempting to show him. Claimant also made known that he had been in Special Education Classes during the course of his entire school-aged life. And at said Special Ed. classes/schooling, Claimant tested positive for a neurological visual disability known as Erlen Syndrome, also known as Scotopic Sensitivity Syndrome.

2) Between approximately 1996 and 1999, the C.D.O.C. allowed qualified diagnostic practitioners to come into Dept. of Corrections and test the Claimant and other inmates for Scotopic Sensitivity Syndrome. At the conclusion of said testing, the Claimant was once again proven to have Scotopic Sensitivity Syndrome and was given peach and purple-colored overlay transparencies for the aid of said condition. Said transparent overlays allow the Claimant to see written letters, numbers, and figures on paper by placing the overlay on top of the page to aid in visual contrast and filtration of light so he can better discern its contents. Use of said overlays seemed to work well for the Claimant, enabling better sight onto the page, which subsequently lends profoundly better for becoming literate.

3) Although the overlays work well for seeing the page, they are of no consequence when the need for writing onto the page is needed, because the overlay must be removed in order to write upon the page. Once the overlay is removed, the Claimant can no longer see the page properly in order to write upon it.

4) Once the above mentioned A.B.E. teacher discovered the issue mentioned above in paragraph 3, s/he attempted to get the Claimant approved for eyeglasses that were available for Scotopic Sensitivity Syndrome, but was then denied said request by the C.D.O.C. headquarters. And was simply released from education stating that the Claimant had reached his highest potential of learning. This determination was made without giving the Claimant the glasses that were available for Scotopic Sensitivity Syndrome and making this uneducated decision was a major contributor to the Claimant being released from the C.D.O.C. and not being successful because C.D.O.C. failed to give the Claimant an education before he was discharged, which is, a violation of their C.R.S. and C.D.O.C. AR mandate that inmates without GEDs will get GEDs before moving onto other assignments. As of, March 29, 2012, the Claimant still has not been placed in educational program and he has been back in the C.D.O.C. since November 2011. And the Claimant has repeatedly begged, requested and demanded to be placed in education so that he could try and better educate himself before being released in the 4th month of 2013 which he has been denied. He asked the special needs teacher for Sterling Correctional Facility, Ms. Ring, and she said that the C.D.O.C. corporate office denied Ms. Ring from putting the Claimant into education.

5) In 2008, the Claimant returned to D.R.D.C. where the Claimant had made it known that he suffered from a visual disability that had permitted him from learning to read and write and that he could not see letters and numbers. Due to the Claimant being denied his chronic care blood pressure medication, due to the position being overloaded with offenders to be assessed, it caused the Claimant to go several days without his blood pressure medication. Everyday the Claimant was pushing the medical alert button in the cell alerting staff that his blood pressure was high and that he needed to see medical staff and was denied being told he has to wait until his name came up to see the physician. Because of this the Claimant passed out in his cell due to his blood pressure being severely high. Once the staff did a room count of the unit they realized that the Claimant was on the floor of his cell in dyer distress, they then called a First Responders

Alert and transported the Claimant to medical by wheelchair. Once the Claimant was in medical his blood pressure was finally checked and the medical staff then realized that the Claimant's blood pressure was at dangerously high levels; approx.170/160. By the Claimants blood pressure being so high due to being denied his medication, he was now suffering from a severe migraine-headache that was inducing his blood pressure to go higher due to the pain he was experiencing. In order to try and lower the Claimant's blood pressure, medical staff attempted to stop the migraine by giving the Claimant a pill called Cafergot and numerous shots of a liquid that supposed to stop migraine-headaches. They were giving the Claimant a Cafergot pill every 20 minutes and a shot every 20 minutes and overdosed the Claimant on these medications. In result made the Claimant's heart beat drop all the way down to 39 b.p.m. which put the Claimant's life at risk. This was also made known to the Claimant that his life was at risk because they told him that they had to send him by ambulance to Denver General Hospital Emergency Room.

6) In 2008, the Claimant returned to the C.D.O.C. and was sent to Fremont Correctional Facility which the powers that be at that facility decided they could not accommodate the Claimants A.D.A. alert and transferred the Claimant to Territorial Correctional Facility. Once at Territorial Correctional Facility, the Claimant was given an O.C.A. To assist him which general KITEs, any personal letters, but was instructed not to read or write any of the Claimants legal mail and was told that he could not go to the law library to assist the Claimant. So the Claimant went to his case manager, Ari Bell, and the Claimant told his case manager that he was unable to utilize the law library because of his reading and writing disability. The Claimant explained to his case manager that he had civil matters that he was trying to pursue and that without an accommodation being given for the Claimant in the law library would be a violation of the Claimants due process rights and without the accommodation for the reading and writing in the law library would be the same as denying the Claimant access to the courts.

7) December 2, 2009 the Claimant was released from the Department of Corrections onto mandatory parole of three years. Now according to D.O.C. Policy any accommodation awarded to an offender in the D.O.C. Shall follow him out on parole, this did not happen. When the Claimant reached parole he was not given any of the accommodations for his disability even though the parole supervisors were made aware of the disability the Claimant struggles with and was told that he would need assistance with any reading or writing, etc. Because these accommodations were not given was a direct fault of the Claimant not being successful on parole. He was demanded to find a job even though they knew he could not or fill out the application for himself. The Claimant asks his parole officer, Allison Sweeney Hoover, if she would assist the Claimant in filing out applications and would show him how to find his way around she told the Claimant that this was not her job and that she would have to find someone to help him the same way they tell the Claimant in the D.O.C. That he has to find someone to help him with his legal work even though the Claimant has an A.D.A. Order that reads he is to receive an appropriate accommodation with all reading and writing. This responsibility falls on the Defendants, rather it is the Defendants for the D.O.C. or the Defendants that are responsible for the D.O.C. Offenders that are on parole for these two have different titles, but are still one whole entity.

8) February of 2010 the Claimant was sent back to the D.O.C. for violating a stipulation of his parole by signing into a contract without the authorization of his parole officer. The contract the Claimant signed was a marriage contract, this was a stipulation that the parole officer never read to the Claimant. The Claimant did not know this stipulation because his parole officer did not read the stipulations and rules in detail to the Claimant. The parole officer would give the shorthand version of what the contract read by saying "this part of the contract basically says..." And then she would say "sign here." When the Claimant told his parole officer he could not read this for himself and asked if she would read it in detail to him she said no and that the Claimant had to find someone to read it to him, so when the Claimant violated this part of his parole he had no idea that this was even a stipulation of his parole.

9) Once back in the D.O.C. the Claimant again tried to get the glasses that are available for Scotopic Sensitivity Syndrome so he could attend education classes and once again he was denied the glasses and was denied education and was sent to work in the kitchen and was given a light duty porter job. These rejections from the D.O.C. A.I.C. office set the Claimant up for failure anytime he was released onto parole. He came in 1995 to the D.O.C. Uneducated, unable to read and write and they allowed the Claimant to do a total of 6 years of an 8 year sentence without giving the Claimant any education. Anytime the Claimant returned to the D.O.C. they always deny him education.

10) September 9, 2010 the Claimant was arrested for a violation of parole for moving without authorization because he was unable to live on his own like the parole officer ordered him to so he moved home with his wife. While in El Paso County jail, the D.O.C. was contacted by the county jail asking them about any accommodations that they needed to provide for the Claimant because the Claimant was still a client of the D.O.C. Even though he was on parole and now was being held in the county jail on a parole hold. They were told to allow someone to read and write for the Claimant, but not to let anyone help him with the reading and writing of his legal work. Now on August 9, 2011 the Claimant received glasses for Scotopic Sensitivity Syndrome from Amy Cosner at the C.D.O.C. Legal Services Office of A.I.C. These were the same glasses that the Claimant tried to get the D.O.C. to award him in 1999 when he was put out of education and was told that he had reached his highest potential, he also tried to receive these glasses in 2008, 2009, and 2010.

11) The Claimant feels that for the D.O.C. to award him these glasses for Scotopic Sensitivity Syndrome and to grant the Claimant on O.C.A. II to assist the Claimant with reading and writing and to implement a verbal reading program into the law library computers so the computers will read case law to the Claimant, should show the court that the Defendants are admitting that these accommodations are necessary is an admittance from the Defendants that these are the accommodations that should have been given to the Claimant in 1995 through 2002 and then again in 2008 through 2011, this time would be even including parole. And this should also show the court that the Defendants were aware of this disability that the Claimant suffers from and by the Defendants not awarding these accomodations in 1995 denied the Claimant his due proccess rights when the Claimant was attemping to pursue an inafective assistance of council, a plea

withdraw and reconsideration.

WHEREFORE, Petitioner Prays that this Court Grant Relief to which Petitioner may be entitled in this Proceeding.

Date____________

ELDRIDGE LEE, GRIFFIN
DOC NO. 85791
STERLING CORRECTIONAL FACILITY
P.O. BOX 6000
STERLING, CO 80751