**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 92-cv-00870-CMA-OES

JESSE (JESUS) MONTEZ, *et al.,*

Plaintiffs,

v.

JOHN HICKENLOOPER*, et al.,*

Defendants.

---

**PLAINTIFFS' POSITION STATEMENT REGARDING CONTINUING
JURISDICTION OF THE SPECIAL MASTER AND RESPONSE TO DEFENDANTS'
POSITION STATEMENT**

---

Attorneys for the Plaintiff Class, Paula Greisen and Jennifer Weiser Bezoza of

KING & GREISEN, LLP; Edward T. Ramey of HEIZER PAUL GRUESKIN, LLP; Lara E.

Marks of FOSTER GRAHAM MILSTEIN & CALISHER, LLP; and Blain D. Myhre, hereby

submit this Position Statement Regarding Continuing Jurisdiction of the Special

Master and Response to Defendants' Position Statement.

## I.    INTRODUCTION

No less than *twenty* years after disabled inmates brought suit against the

Colorado Department of Corrections ("DOC") for the denial of access to DOC

programs, services, and benefits on the basis of disability, the Court found DOC to be

in "substantial compliance" with the requirements of a consent decree entered into in

the case in 2003.  Under the consent decree, known as the Remedial Plan, DOC was originally required to come into substantial compliance within two years.  Instead, it took the DOC nine years.

The Court's September 11, 2012 finding of substantial compliance did not end this case.  Rather, it commenced the next stage of the litigation concerning the systemic issues addressed in the Remedial Plan, known as the monitoring period. [Doc. # 441, § XXXI].  Although the Court continues to have jurisdiction over this case until the conclusion of the two-year monitoring period, DOC is now arguing that the Court – and by extension the Special Masters, who were appointed pursuant to the terms of the Remedial Plan to assist the Court with individual damages claims – no longer has jurisdiction to enforce the Special Masters' Final Orders.

The Court has indicated on multiple occasions that the jurisdiction of the Special Masters to enforce their Final Orders continues *at least* through the end of the monitoring period, which is just beginning.  The fact that the Court has subsequently found substantial compliance with respect to systemic issues is irrelevant to the jurisdiction of the Special Masters over individual damages claims. For the reasons previously articulated by the Court, and the additional reasons set forth below, the Special Masters have jurisdiction to adjudicate the few remaining claims regarding enforcement of the Special Masters' Final Orders, as well as the few remaining claims for which objections to a Final Order are still pending before the Court.

## PROCEDURAL HISTORY

A.    Complaint

This case was originally filed by Jesse Montez on April 27, 1992.  [Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, Doc # 1].  An amended class action complaint was filed on behalf of Mr. Montez and all other similarly situated Colorado state prisoners with disabilities on July 15, 1994, alleging that state officials were denying them access to the programs, services and benefits of the Colorado Department of Corrections, including necessary medical care, solely on the basis of disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), and Section 1983, 42 U.S.C. § 1983.  [Amended Class Action Complaint, Doc. # 40].  The case was later certified as a class action covering inmates with four types of disabilities:  mobility, hearing, vision, and diabetes.  [1/15/96 Order, Doc. # 66].

B.    Remedial Plan

After over a decade of hard fought litigation, the parties entered into a consent decree, known as the Remedial Plan [Doc. # 441], which was ordered by the Court after a fairness hearing in August 2003 [Doc. # 528].  The Remedial Plan provided that the DOC shall have no more than two years within which to come into substantial compliance with its terms.  After substantial compliance is achieved, then a two-year monitoring period would commence to ensure that compliance was maintained. [Doc. # 441, § XXXI].

The thirty-one (31) page Remedial Plan set out a comprehensive scheme to remedy systemic problems at the DOC to ensure that inmates with disabilities are not denied access to DOC programs, services, and benefits on the basis of disability.  In particular, it set forth approximately thirty (30) areas in which the DOC would take action to bring the state prison system into compliance with the applicable statutes. The action items included requirements for the designation of specific facilities in which inmates with disabilities would be housed [*id.*, §§ V-VI, VIII]; for structural/physical changes to bring those facilities into ADA compliance [*id.*, § 7]; for the provision of reasonable accommodations [*id.,* § X]; for access to educational, vocational, and work programs and work assignments comparable to those available to non-disabled inmates [*id.*, § XIII]; for the establishment of an ADA grievance procedure [*id.*, § XII]; for staff training on ADA and Remedial Plan compliance issues [*id.*, § XV]; for the availability of prescribed health care appliances (e.g., wheelchairs, hearing aids, etc…) [*id.*, § XVI]; and for special requirements for inmates with disabilities related to safety, such as evacuation plans, notices and alarms, count, searches, and restraints [*id.*, §§ XVIII-XXIII].

The Remedial Plan also provided inmates with a *pro se* damages claim process.  [*Id.*, § XXXII].  After approval of the Remedial Plan, class members were provided a Damage Claim Form to fill out concerning their individual damages claims. Those forms were sent to a Special Master who, after review of the evidence and a hearing in some cases, would issue a written determination as to the damages

awarded to each claimant.  These awards could then be appealed on an abuse of discretion review to The Honorable Judge Kane.  [*Id.* at p. 29].

The Remedial Plan further provided that if a damages claim arose during the compliance period, then the inmate could amend his/her claim to request compensation for additional damages.  However, no new claims for damages would be allowed during the monitoring period.  If a new claim for damages arose during the monitoring period, the inmate would have to bring the claim in another court of competent jurisdiction even though the Court would still have continuing jurisdiction in this case.  [*Id.*].

Class counsel was not obligated to represent Montez claimants on their individual damages claims or for individual damages sustained as a result of the DOC's continued noncompliance with the Remedial Plan.  [*Id.*].

C.     Substantial Compliance

1.     *Stipulations*

In August 2005, Plaintiffs filed a Notice of Noncompliance [Doc # 1028] alleging that the DOC had not achieved substantial compliance with the terms of the Remedial Plan within the required two years.[1]  After two days of hearings in August 2006, DOC stipulated to non-compliance and sanctions were agreed to by the parties and approved by the Court.  [2006 Amended Stipulation and Order Regarding Status of Compliance by DOC with Remedial Plan ("2006 Stipulation"), Doc # 2228].

---

[1] Plaintiffs did agree there was substantial compliance with the architectural-physical plant provisions of the Remedial Plan.

Pursuant to the 2006 Stipulation, the compliance period was extended for all aspects of the Remedial Plan except the architectural requirements (for which the monitoring period would commence) until July 2007.

In July 2007, Plaintiffs again asserted that the DOC was not in substantial compliance with the Remedial Plan.  After one day of hearings, the DOC again stipulated that it had not achieved substantial compliance with the Remedial Plan, except the architectural plan provisions.  Thereafter, on April 4, 2009, the Court entered additional sanctions against the DOC.  [2008 Stipulation Regarding Status of Compliance by the Colorado Department of Correction with the Montez Remedial Plan ("2008 Stipulation"), Doc # 3326].  Many of the imposed sanctions were designed to assist the DOC with achieving substantial compliance.  For example, the 2008 Stipulation required, among other things, immediate adherence to the orders of the Special Masters.  [*Id.* at ¶ 4].  The 2008 Stipulation also provided that the compliance period would be extended until May 1, 2009.  [*Id.* at C].

2. *Compliance Hearing*

On September 11, 2012, after thirty-two (32) days of hearing on the DOC's compliance with the Remedial Plan, the Court concluded that the DOC had met its burden of demonstrating compliance with the terms of the Remedial Plan for purposes of  Section XXXVI, notwithstanding Plaintiffs' evidence that "compliance has and continues to fail individual inmates in certain areas on certain occasions, and notwithstanding the fact that Inmate Coordinator Cathie Holst was never, in [his] view, given adequate authority or resources to perform her duties under the Plan to

maximal effect." [Findings of Fact and Conclusions of Law re Phase I of Class Action Settlement ("Findings of Fact"), Doc # 5314, at pp. 3-4]. The Court further held that the two-year monitoring period triggered by a finding of "substantial compliance" would commence on October 1, 2012, and that the case would be returned to The Honorable Judge Arguello.

D.      Damages Claims

Because of the DOC's failure to timely reach substantial compliance, there were over one thousand six hundred claims for damages filed with the Special Masters over the course of seven years. Many of the claimants were awarded monetary damages by the Special Masters. Some of the claimants were also awarded non-monetary relief from the Special Masters, such as specially made boots, glucose tablets, and wedge pillows, in addition to or instead of monetary compensation. [Addendum to Report and Recommendation of Special Master, Doc # 4893 (listing *some* of the non-monetary items awarded)]. According to records maintained by Special Master Borchers, there are at least sixteen (16) claimants who received accommodations in addition to or in lieu of monetary damages that are still in DOC custody or under DOC supervision. [2/11/13 Order of Special Master, Doc # 5362, at p. 4].

1.      *Orders Expanding Special Masters' Jurisdiction*

Over the years, many inmates wrote to the Court about a variety of issues, including harm that the inmates suffered as a result of the DOC's noncompliance with the Remedial Order. Undoubtedly besieged by these letters, the Court determined

that the Special Masters were in a unique position to adjudicate these matters because of their "expertise and familiarity" with the issues in the case.  [Order Expanding the Duties of the Special Masters ("Expansion Order"), Doc # 3336, at p. 1].  The Court therefore issued an Order on April 15, 2008, expanding the jurisdiction of the Special Masters to include work outside of the claim process set forth in Section XXXII of the Remedial Plan.  [*Id.*].  The Expansion Order states, in pertinent part:

> [T]he jurisdiction of the Special Masters Richard M. Borchers, Bruce D. Pringle, and Richard C. Davidson is expanded pursuant to Fed.R.Civ.P. 53 to include referral of *pro se* pleadings and correspondence filed by individual claimants, and the Special Masters shall review the pleadings and correspondence and issue appropriate rulings on these documents.

[*Id.* at pp. 1-2].

On March 23, 2010, the Court clarified the Expansion Order, in response to a request by the Special Masters [12/16/08 Report and Recommendation of Special Masters, Doc. # 3741] for guidance on the jurisdiction of the Special Masters to adjudicate *pro se* motions for personal relief for violation of individual rights under the Remedial Plan [Order re Report and Recommendation of Special Master and Related Filings ("March 23, 2010 Order"), Doc. # 4381].  The Court distinguished between the two categories of claims in this case.  The first category is individual damages claims for monetary or other remedies for disability discrimination under Section XXXII of the Remedial Plan.  The second category is claims or motions seeking compliance with or enforcement of court-ordered class-wide benefits negotiated in the original

Remedial Plan or subsequent stipulations.  [*Id.* at 4].  The Court made clear that the Special Masters can continue to process claims that fall into the first category *provided* the claimants were members of the Montez class in 2003, and should refer claims/motions in the second category to class counsel.  [*Id.* at ¶ 1, pp. 4-5].  The Court set a deadline of April 16, 2010 (later extended to April 30, 2010) for all *pro se* filings in both of these two categories.  [*Id.* at ¶¶ 1,2, pp. 4-5].

On January 19, 2011, the Court modified its March 23, 2010 Order, in response to the Special Master's motion [10/22/10 Report and Recommendation of Special Master, Doc. # 4893] seeking clarification as to how that Order applies to motions by individual class members alleging Defendants have failed to comply with Final Orders of the Special Master awarding them damages or other discreet relief under Section XXXII of the Remedial Plan.  Specifically, Special Master Borchers asked some of the very questions now before the Court:

> 1. What continuing jurisdiction exists for the Special Master to accept *pro se* motions from claimants who are alleging that the Final Order has not been followed by Defendants? . . .

> 3. For what period of time does the Final Order of a Special Master continue?  Do final orders of Special Masters have any vitality after completion of the compliance and/or monitoring periods for the Remedial Plan?

[*Id.* at 2].  In response, the Court held:

> the time for receiving and considering *new*, amended, or otherwise revised *pro se* claims for relief under § XXXII of the Montez Remedial Plan is over.  Class members alleging "*new* instances of disability discrimination or deliberate indifference to serious medical needs must

proceed . . . in a separate and independent pro se action
in accordance with *McNeil v. Guthrie,* 945 F.2d 1163 (10th
Cir. 1991).

[Doc. # 4960, at pp. 1-2 (emphasis added)].  The Court then went on to state:

However, given that category of individual Montez Class
claims that the Special Master identifies as having been
the subject of Final Orders favorable to an inmate but with
which the inmate contends Defendants have not fully
complied, I clarify/modify the March 23, 2010 Order to
affirm that *the Special Master retains jurisdiction to
receive and consider motions seeking the enforcement of
those Final Orders.*

[*Id.* at 2 (emphasis added)].

2.     *Special Master's Current Jurisdiction*

Since 2011, the damages claims process has slowed down substantially.

However, it is not the case that all claims have been resolved, as the Special Master

anticipated.  [Doc # 4893, at p. 1].  There are still a few claims pending before Special

Master Borchers.  These claims involve only the isolated issue of enforcement of the

injunctive relief provided in the Special Masters' Final Orders.  Any new claims filed

during the Monitoring Period have been properly dismissed by the Special Master.

For example, the Special Master issued a Final Order on January 27, 2009,

providing that inmate Kevin Mark Bretz must be "furnished with an ankle brace, high

shoes or boots and a cane."  [Order of January 27, 2009, Doc. # 3792, at pp. 2-3].

Mr. Bretz has filed a motion with the Special Master seeking enforcement of this prior

order.

Inmate Ben Padilla also has a claim pending before the Special Master.  On March 17, 2008, the Special Master issued a Final Order determining that Mr. Padilla is visually impaired and disabled, awarding Mr. Padilla $1500 in damages, and ordering Defendants to provide Mr. Padilla with instruction in Braille [Doc. # 3296]. On December 7, 2012, Claimant filed a motion concerning the adequacy of the Braille instruction being provided to him by the DOC pursuant to that Order, which has not yet been resolved.

Defendants made identical arguments in response to the motions of Mr. Bretz and Mr. Padilla.  They claimed that the Special Master lacks continuing jurisdiction over all Montez individual damages claims because the Court has found Defendants to be in substantial compliance with the Remedial Plan.  [Defendants' Response to Padilla's Motion, dated 1/29/2013, at pp. 4-5; Defendants' Response to Bretz's Motions, dated 1/29/2013, at pp. 6-7].

On February 11, 2013, Special Master Borchers raised the issue of his continuing jurisdiction to address compliance with Special Masters' Final Orders on his own motion, recognizing that the jurisdictional issue raised by Defendants applies to "all claimants who were awarded medical appliances or other items, other than purely monetary damages."  [Order of Special Master, Doc. # 5362, at p. 3]. Special Master Borchers additionally recognized that pending objections filed by class counsel may be affected by the argument that there is a lack of jurisdiction over any claims filed pursuant to Article XXXII of the Remedial Plan.  [*Id.*].  He therefore ruled that no further action will be taken on the pending inmate claims until the jurisdictional

-11-

issue is resolved and ordered Defendants and Class Counsel to brief the jurisdictional issue.  Defendants filed their position statement regarding continuing jurisdiction of the Special Master on April 11, 2013, reciting the same arguments made with respect to claimants Bretz and Padilla.

   3. *Additional Claims Pending in the District Court*

  There is another category of damages claims for which no resolution has been reached because objections to the Final Orders of the Special Masters are still pending before the district court.  This is the case with respect to at least two claimants – Keith Morris and Robert Riplie.

  Inmate Keith Morris is a double, below-knee amputee.  He claimed, at a damages hearing on January 31, 2011, that he was denied a cushion for his wheelchair, resulting in pressure sores and infections, and denied the opportunity to be fitted for prostheses.  The Special Master found, in February 2011, that he had no jurisdiction to adjudicate Mr. Morris's claim because the problems with Mr. Morris's wheelchair started after August 27, 2003 [Final Order of Special Master, Doc. # 4987, at p. 5].  Class counsel objected to the Final Order of the Special Master regarding Keith Morris because DOC's blanket policy of not providing the reasonable accommodation of prosthetic devices to someone in a wheelchair is discriminatory and was instituted before August 2003.  [Plaintiffs' Objection to the Final Order of the Special Master Regarding Keith A. Morris # 116947, Doc. # 5194].  Defendants responded on November 9, 2011.  [Defendants' Response to Class Counsel's

Objection to the Final Order of the Special Master Regarding Keith A. Morris #

116947].  The district court has not yet ruled on the pending objections.

There are also objections currently pending with respect to the damages

claims of inmate Robert Riplie.  Mr. Riplie has diabetes and claimed, at a hearing on

January 31, 2011, that he was improperly denied medical shoes and that his medical

rating precluded him from obtaining decent paying employment.  In a Final Order

dated February 25, 2011, Special Master Borchers dismissed Mr. Riplie's claim for

failure to establish all of the criteria set forth in Judge Kane's March 23, 2010 Order,

but suggested that class counsel address the systemic issue of the job opportunities

available to inmates with an M4 code.  [Final Order of Special Master, Doc. # 4988, at

p. 5].  Class counsel did in fact file objections to the Final Order raising two systemic

issues – the job opportunities available at higher-level designated facilities and the

denial of medical shoes as a reasonable accommodation, to which Defendants

responded.  [Plaintiffs' Objections to the Final Order of the Special Master Regarding

Robert Riplie, # 107521, Doc. # 5165; Defendants' Response to Plaintiffs' Objections

to the Final Order of the Special Master Regarding Robert Riplie, # 107521, Doc. #

5181].  No decision has been issued yet by the district court on these objections.

## II.  ARGUMENT

### A.    The Special Master Retains Limited Jurisdiction to Enforce His Final
Orders Until the End of the Monitoring Period

Class counsel agree with Defendants that the Special Master currently has no

jurisdiction to address new damages claims in this case.  However, the pending

claims at issue do not involve *new* acts of discrimination precluded from being raised in this case during the monitoring period.  Instead, they involve claims that the DOC has failed to provide the relief ordered by the Special Masters in their Final Orders. That is, claimants are asking the Special Masters to enforce Final Orders that have been ignored by the DOC.  Thus, the narrow question at issue here is whether the Court's finding of substantial compliance in 2012 ended the Special Master's limited jurisdiction to enforce their Final Orders on damages claims.

On numerous occasions, the Court has referred to the Remedial Plan as a contract and applied traditional contract principles to resolve disputes about the terms of the agreement.  [*See, e.g.,* Findings of Fact, Doc # 5314, at p. 5 (applying the contract law doctrine of substantial performance to determine if there has been compliance with the terms of the Remedial Plan)].  Clearly, the plain language of the Remedial Plan precludes *only* the filing of new damages claims during the monitoring period.  [Doc. # 528, § XXXII, p. 29 ("No *additional* claims for damages will be allowed during the monitoring period, but any individual who has a claim for damages which arises after the compliance period may bring their claim in any court of competent jurisdiction regardless of the on-going jurisdiction exercised by the federal court on this case.") (emphasis added)].  The contract does *not* preclude the Special Masters from enforcing their Final Orders during the monitoring period.  While Defendants may wish that the damages claim process is completely over, they cannot now rewrite the contract to include a provision they never bargained for.

This issue is not new.  Since the Remedial Plan does not address enforcement of Final Orders, the Special Masters have been asking for years for guidance on how long they retain jurisdiction over individual damages claims.  [*See, e.g.,* 10/22/10 Report and Recommendation of Special Master, Doc. # 4893].  In the October 22, 2010 Special Master's Report and Recommendation, Special Master Borchers asked precisely how long the Special Master has continuing jurisdiction to adjudicate *pro se* motions from claimants alleging that Special Masters' Final Orders have not been followed by Defendants.  While the Court's January 19, 2011 clarification order did not assign a cut-off date for the Special Master's jurisdiction, it did make clear that, during the period when new claims for relief cannot be filed (ie., the monitoring period), "the Special Master retains jurisdiction to receive and consider motions seeking enforcement of those Final Orders."  [Doc. # 4893 at 2].  If the Court had meant that enforcement of Final Orders ends with compliance, just like new claims for relief under Section XXXII of the Remedial Plan, it would not have distinguished between the two.  [*Id.,* at pp. 1-2].

In fact, the Court's order with respect to the duration of the Special Masters' jurisdiction was expressed clearly on the record more than one year before the January 19, 2011 Order.  At a September 1, 2009 hearing, during a discussion of what the Remedial Plan says about the scope of the Special Master's jurisdiction in

the compliance and monitoring periods, the Court stated, "When the monitoring period is over, that's the end . . . of the special master."[2]

The Court's subsequent finding of substantial compliance with the terms of the Remedial Plan does not change its order with respect to the duration of the Special Master's jurisdiction over the enforcement of Final Orders regarding damages claims. It merely marks the formal conclusion of the compliance period regarding the required systemic changes and the beginning of the monitoring period.  In fact, the class-wide issue of substantial compliance has always been treated distinctly from the issue of individual damages claims.  As explained above, and in the Court's March 23, 2010 Order, the consent decree established a different process for adjudicating damages claims under Article XXXII than for determining substantial compliance with distinct standards and time frames.  Just as the many stipulations of non-compliance through the years have not impacted the damages claims process, which continued to proceed as it had, so too a finding of substantial compliance should not impact the enforceability of the multiple court orders clarifying the scope and duration of the Special Master's jurisdiction over individual damages claims.  There is no basis for Defendants' argument that the two processes should now be conflated.  Had the Court intended a finding of substantial compliance to impact the duration of the Special Master's jurisdiction, it would have stated so in its 2012 Findings of Fact and Conclusions of Law or one of its many orders on this issue.

---

[2] The Court mistakenly also stated that the monitoring – rather than the compliance -- period marks the end of new damages claims, which Plaintiffs' counsel corrected.  Contrary to Defendants' suggestion, Plaintiffs' counsel did not say anything at that hearing about the conclusion of the Special Master's jurisdiction over enforcement of Final Orders.  [9/1/09 Hearing Transcript, at pp. 20-21].

Moreover, there is no question that the Court's jurisdiction in this case continues through the monitoring period.  Thus, assuming arguendo that the Special Master's jurisdiction to enforce Final Orders were to end with the Court's finding of substantial compliance, which Class Counsel emphatically disputes, the Court would still retain jurisdiction to enforce these Orders, over which it already has appellate jurisdiction, at least through the end of the monitoring period.  That is, claimants would not lose their right to enforcement of their remedy if the Court decides a Special Master is no longer needed to assist with lingering damages claims.  They would have a right to bring these enforcement issues directly before the Court.

The Court decided a long time ago that the Special Masters are in a better position to determine individual damages issues – particularly, the enforcement of their own Final Orders on damages -- than the Court because of their expertise and knowledge of these issues [Expansion Order, Doc. # 3336].  Surely, that is still the case given the Special Masters have been addressing these issues for a decade and this Court has only recently become involved with this long and complicated case.  Thus, it would be significantly more efficient for the Special Masters to continue to exercise jurisdiction over the few remaining claims regarding enforcement of their Final Orders for the balance of the two-year monitoring period than to have this Court assume this responsibility.

Class counsel do not contend that the Special Masters jurisdiction over compliance with Final Orders continues indefinitely, but rather at least until the end of the monitoring period.  The Special Masters have extensive experience concerning

-17-

the particularized issues presented during the damages claim process.  To deny the remaining sixteen (16) or so claimants the opportunity to seek assistance from the Special Masters to ensure compliance with their Final Orders for the next eighteen months would be unjust and judicially inefficient.

B.     **The Special Masters Also Retain Jurisdiction with Respect to Claims for Which Objections Are Pending in the District Court**

The Remedial Plan provides for appellate review of the Special Masters' Final Orders by the district court.  [Remedial Plan, Doc. # 441, § XXXII, p. 29].  Over the years, many inmates have exercised their right to appellate review.  There are still some inmates in the process of exercising that right.  Due to no fault of their own, they are still awaiting a decision on pending objections to the Special Masters' Final Orders with respect to their damages claims.  Surely, they are entitled to a decision on their timely filed damages claim before the expiration of the Court and the Special Masters' jurisdiction.  It would be unjust for the Court to end its jurisdiction in this case before deciding all of the matters properly before the Court.  Thus, even if the Special Masters' jurisdiction were to conclude with the finding of substantial compliance, which Class Counsel dispute for the reasons set forth above, the Court still has jurisdiction to decide the damages claims currently pending before it.

## IV.  CONCLUSION

For the reasons set forth above, the Special Masters retain jurisdiction to adjudicate the few remaining claims regarding enforcement of the Special Masters'

Final Orders, as well as the few remaining claims for which objections to a Final

Order are still pending before the Court.

RESPECTFULLY SUBMITTED this 17th day of May, 2013.

KING & GREISEN, LLP

*s/ Jennifer Weiser Bezoza*
Paula Greisen
Jennifer Weiser Bezoza
1670 York Street
Denver, CO  80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
greisen@kinggreisen.com
bezoza@kinggreisen.com

Edward T. Ramey
Heizer Paul Grueskin, LLP
2401 15th Street, Suite 300
Denver, CO 80202
(303) 595-4747 telephone
(303) 595-4750 facsimile
eramey@hpgfirm.com

Lara E. Marks
Foster Graham Milstein & Calisher, LLP
360 S. Garfield Street, 6th Floor
Denver, CO  80209
(303) 333-9810 telephone
(303) 333-9786 facsimile
lmarks@fostergraham.com

Blain D. Myhre
P.O. Box 3600
Englewood, CO  80155
(303) 250-3932 telephone
blainmyhre@gmail.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2013, the foregoing **PLAINTIFFS' POSITION STATEMENT REGARDING CONTINUING JURISDICTION OF THE SPECIAL MASTER AND RESPONSE TO DEFENDANTS' POSITION STATEMENT** was emailed to the following:

Jacquelynn N. Rich Fredericks
Colorado Department of Law
jacquelynn.fredericks@state.co.us
*Attorneys for Defendants*


_s/ Laurie A. Mool_


**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2013, the foregoing **PLAINTIFFS' POSITION STATEMENT REGARDING CONTINUING JURISDICTION OF THE SPECIAL MASTER AND RESPONSE TO DEFENDANTS' POSITION STATEMENT** was placed in the United States Mail, addressed to the following:

Mr. Paul Inman, #89591
FCF
P.O. Box 999
Canon City, CO 81215-0999

Mr. James Rudnick, #68432
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. Robert Jones, #63565
LCF
49030 State Highway 71
Limon, CO 80826

Mr. Fernando Ramirez, #99458
No last known address provided - Parole

-21-

Mr. Ben Padilla, #82114
LCF
49030 State Highway 71
Limon, CO 80826

Mr. Steven Walker, #114350
No last known address provided - Parole Southeast Region

Mr. Verlyn Bald Eagle, #98784
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. Byron Cortez, #45627
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. Kevin Mark Bretz, #46584
CSP
P.O. Box 777
Canon City, CO 81215-0777

Mr. Gerald Sensabaugh, #100656
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. Marty Bueno, #50565
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. Keith Schwinaman, #105240
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. Lee Filipiak, #109936
CTCF
P.O. Box 1010
Canon City, CO 81215-1010

Mr. Donald Revere, #69342
No last known address provided - P2 Parole-Denver West Metro Region

Mr. James Wylie, #114060
SCF
P.O. Box 6000
Sterling, CO 80751

Mr. Raymond Goodloe, #51437
No last known address provided - Parole -Southeast Region

_s/ Laurie A. Mool_
Paralegal, King & Greisen, LLP