IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

---

**DEFENDANTS' REPLY TO RESPONSE TO POSITION STATEMENT REGARDING CONTINUING JURSIDICTION OF THE SPECIAL MASTER**

---

Defendants, through the Colorado Attorney General, respectfully submit their Reply to Response to the position that the Special Master lacks continuing jurisdiction in the present matter.

1.      Defendants maintain that the jurisdiction of the Special Master should terminate.  To be sure, some may wish that the individual damage claim process, would continue in perpetuity.  However, that is not a provision which Plaintiffs' Counsel bargained for or which is reflected by the plain language of the Remedial Plan.  Indeed, Article XXXII does **not** provide a cut-off date for the jurisdiction of the Special Master but it does state in unambiguous language that **no additional claims** will be allowed during the monitoring period.  That means no claims by new parties as well as no further supplementary claims by class claimants.

**A.  The Special Master has fulfilled his purpose.**

2.      Once the Special Master has fulfilled the purpose for which he was retained, his jurisdiction is terminated.  *See Roberts v. County of Mahoning*, 495 F.Supp. 2d 784 (ND Ohio 2007).

3.      Class Counsel's present position that the Special Master's jurisdiction should continue during the Monitoring Period is disingenuous.  Previously Class Counsel stated on the record during a hearing before Judge Kane that the Jurisdiction of the Special Master was **not** intended to continue during this period.  *See* Doc. 4131, pp. 21, 24-15; 22, 2-4; 21, 8-9 and 15-21 (copy of the relevant pages attached hereto).

4.      Contrary to Class Counsel's suggestion, Judge Kane **inquired** as to whether the Special Master's jurisdiction and the filing of claims would end at the cessation of the monitoring period and Class Counsel responded in no uncertain terms, "I think it's even sooner than what the Court is saying."  Doc. 4131, p. 21-22.

5.      Here, the Special Master has fulfilled the purpose for which he was appointed, to adjudicate the individual damage claim process to its natural conclusion. There is no provision in the Remedial Plan for his jurisdiction to persist past the hearing and issuing of his "written determination" with respect to individual damage claims. Accordingly, like in *Roberts*, the Special Master's jurisdiction should be terminated.

**B.  The time for new filings has passed.**

6.      Since April of 2010, no additional filings for *pro se* claims were to have been accepted.  Doc. 4381.  Due to the cessation of the claim filing process, the duties of the Special Master to sort (Doc. 4072, p. 2,2) and respond to continuing

correspondence and novel filings by non-parties contemplated by the Expansion Order (Doc. 3336) are no longer required.

7.      The "*extremely limited*" authority during the remainder of the compliance period was for the narrow purpose of permitting offenders awarded specific medical equipment to seek enforcement of their prevailing *Final Order*.  Doc. 4960, pp. 2, 2.  No further jurisdiction was provided.  Accordingly, where a Final Order provided for a one-time provision of a non-monetary item, and such was provided to the prevailing claimant, there is no further jurisdiction to order new or continuing non-monetary items.

8.      Once it has been established that the Defendants complied with a Final Order, there is no need for further hearings on what is tantamount to the subsequent provision of continuing medical care.  Without a doubt, where Defendants, as here, have complied with the Special Master's Final Orders, it is appropriate to terminate his jurisdiction.  *See L.H., et al. v. Brown*, 2013 U.S. Dist. LEXIS 47068 (E.D. Cal. Decided March 29, 2013).

9.      In each of the approximately sixteen Final Orders at issue, there is **no dispute** that each of the offenders was provided with the non-monetary item initially ordered by the Special Master.  The provision of those non-monetary items was a discrete event.  Therefore, the Special Master's jurisdiction may securely terminate where the prior unconstitutional violations have been eliminated "root and branch" by the provision of the non-monetary items to fulfill the claimant's need.  *See Green v. County School Board*, 391 U.S. 430, 438 (1986).

   **C. The current motions pertain to continuing and novel relief not ordered by the Special Master.**

10.     The current claims pertain to the provision of new or replacement durable medical equipment.  However, the Special Master did **not** order continual provision of equipment or replacement equipment.  Rather, each Final Order provided for the singular provision of a non-monetary item.[1]  Accordingly, the new claims which seek new equipment are not properly construed as simple requests for enforcement, but are fresh claims.

11.     In the singular case where such an order was intended, the Special Master made his intention clear.  *See* Final Order as to Steven Walker,[2] Claim #02-204 ("Defendants are to assume **maintenance**…") at p. 7 (Emphasis added).  Thus, in the absence of a continuing maintenance order as to any of the other approximately fifteen non-monetary awards, such is not required nor within the jurisdiction of the Special Master as it does not pertain to whether or not Defendants complied specifically with a Final Order.

12.     Claimants cannot utilize the now-concluded damage claim process to obtain new or replacement durable medical equipment not contemplated by their Final Order.  For example, neither party is likely to dispute that where the Special Master ordered Defendants to pay a claimant $500.00 and that claimant was paid the sum ordered, that such claimant would **not** subsequently be entitled to seek another $500.00 because he consumed the first $500.00.  Likewise, those offenders who were ordered a

---

[1] Despite this, Defendants **regularly** provide replacement equipment for offenders in the form of replacement accommodations when a court-ordered item wears out.  Thus, "there is no reasonable expectation that unconstitutional practices will recur."  *See Battle v. Anderson*, 708 F.2d 1523, 538 (10th Cir. 1983).
[2] Mr. Walker is no longer incarcerated in CDOC.

non-monetary item are **not** entitled to seek the replacement of those non-monetary items through the damage claim process just because the original award is worn.

13.     Compliance with the provision of a tangible item is a one-time event.  This is supported by the broad proposition that relief should make a claimant whole.  *See Johnson v. Brock*, 258 App. D.C. 100 (D.C. Cir. 1987).  Here, claimants were made whole either via monetary compensation or the initial provision of a non-monetary item. The provision of further items extends beyond "making claimant whole."  Thus, once the complying provision of the item is accomplished, there is simply nothing more to review.

14.     To the extent one of the sixteen claimants awarded non-monetary items seeks novel accommodations, they, like every offender, are free to access to ample resources which have been put in place as evidenced by the finding of substantial compliance.  Nothing in the initial referral or the subsequent amendments expanded the scope of the Special Master's duty to include the ability to review fresh allegations of the denial of durable medical equipment such as shoes, canes, and braces.

15.     As the Special Master's jurisdiction lingers, some of these claimants, such as Mr. Bretz and Mr. Rudnick, have begun to rely almost exclusively upon court centered intervention instead of working with medical providers and the AIC, as they now seek fourth and fifth compliance hearings notwithstanding prior findings that their Final Orders have been complied with.  It is time for these claimants to work **with** the facility and the plethora of system-wide assets which resulted from this litigation and the mutual hard work of the parties.  Furthermore, whether a claimant needs new, different, or replacement medical equipment is properly a decision for medical providers.

16.     Where the new claims for current accommodation or challenges to on-going medical care[3] are not properly before the Special Master, any decision entered risks the potential of being unenforceable.  A district court's adoption of a recommendation by a special master with respect to claims which are not properly before the master may be reversible error.  *See Shafer, et al. v. Army & Air Force Exch. Serv.*, 376 F.3d 386 (5th Cir. 2004) (reversing the district court for adopting recommendation of a special master as to a discrimination claim which was not properly before the master).

**D.  The damage claim process is far afield of its negotiated purpose.**

17.     In further support of their position that the time for the cessation of the jurisdiction of the Special Master is upon us, Defendants would point to the following examples of pending "compliance" issues raised by claimants:

18.     Mr. Bretz has asked the Special Master to consider the removal of pornographic materials from his cell. However, Mr. Bretz was never ordered to receive pornography as a remedy in his Final Order.  Moreover, there is clearly established law that no incarcerated person has a right to possess pornography in prison.  *Jones v. Salt Lake County,* 503 F.3d 1147 (10th Cir. 2007).

19.     Mr. Rudnick was determined to be a Category I claimant.  Pursuant to the plain language of the Remedial Plan, "Class members with damages allocated under categories 1 and 2 **shall not** be entitled to a hearing before the Special Master." (Emphasis added).  Despite this, Mr. Rudnick has now had no less than **four** hearings. Three of those hearings have occurred in the past two years alone (June 20, 2011;

---

[3] The provision of medical care is not an available claim in his ADA case.  *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005).

February 6, 2012; and June 25, 2012) *subsequent* to the deadline to file claims.  All of this, even though Mr. Rudnick was never entitled to a single hearing and an intervening finding of compliance with his Final Order.

20.     Both of these examples are beyond the scope of the duties imbued within the Special Master and the issues contemplated by the damage claim process as codified in the Remedial Plan.  The further propagation of these claims has no other effect than to protract a long-concluded process and increase the expenses of litigation.

21.     The Court must be "sensitive to the extraordinary nature - and cost - of [maintaining] the mastership.  *See Palmigiano v. Garrahy, et al.*, 1977 U.S. Dist. LEXIS 14552 (R.I Dist. decided August 10, 1977).  Although the Special Master was certainly a great resource during the hey-day of the individual damages claims process, to the extent that the Special Master's continuing jurisdiction is retained another 15-months merely to serve sixteen individual claimants (some of whom are no longer even incarcerated), such would not be an efficient or cost-effective use of resources.

**E. The Special Master's jurisdiction ends when he issues his recommendation.**

22.     The jurisdiction of a special master ends consistent with the scope of the order appointing him or her.  The Remedial Plan states that, "Damages of individual class members shall be determined by a special master…"  Doc. 441 at p. 28.

23.     At no point does the Remedial Plan contemplate that offenders will have multiple hearings or that offenders may seek judicial oversight from the Special Master in the form of continual monitoring.  Rather, the final action contemplated by the Special Master directs that he "shall issue a written determination…"  *Id.* at p. 29.

24.     Accordingly, once the Special Master has issued his written decision (with which Defendants have complied) there is nothing further for him to do and he is divested of jurisdiction over the claim.  *See* Fed. R. Civ. P. 53; C.R.C.P. 43(e)(1).

**F.  Defendants' position that the Special Master's jurisdiction concludes with the transition into the monitoring period is consistent with the PLRA.**

25.     The relevant provision states that "[t]he court shall appoint a special master under this subsection during the *remedial phase* of the action…"  *See* 18 USCS § 3626(f)(1)(B).  Here, the remedial phase has concluded as all individual damage claims have been adjudicated and the systemic issues found in substantial compliance.

26.     Furthermore, regular review of the appointment of a special master should occur every six months to determine whether their services should continue.  *See* 18 USCS § 3626(f)(5).  No such six month review has yet been conducted in this matter.

27.     Moreover, "[i]n no event shall the appointment of a special master extend beyond the termination of the relief."  *Id.*  Where all claimants have already received the relief ordered in their Final Order(s), there is no necessity to maintain the continuing jurisdiction of the Special Master.

**G.  The District Court retains jurisdiction over pending objections.**

28.     The District Court judge is more than capable or either adopting, rejecting, or modifying a report and recommendation pursuant to Fed. R. Civ. P 53.  Accordingly, any concern regarding a potential inchoate inundation of remanded decisions for which there has been no resolution is both speculative and unfounded.

29.     At **no** point have Defendants proposed that pending objections should not be dispensed with by Judge Arguello.  Rather, it is Defendants' position that no further

claims should be **filed** to include no new claims for replacement non-monetary items. Rather, as it has already proved capable of doing, the District Court can issue orders adopting or rejecting recommendations and sustaining or overruling pending objections.

30.     To the extent that Class Counsel alleges that there are pending systemic issues within their Objection to the Final Order of Mr. Riplie, class-wide concerns are exclusively the jurisdiction of the District Court judge not the Special Master who was appointed to deal with individual damages claims.  Furthermore, any systemic allegations, raised[4] in an Objection to an individual's Final Order, were mooted by the Court's finding of substantial compliance on systemic issues.

31.     This matter is distinguishable from the circumstances present in *Vessels v. Secretary of Dept. of Health & Human Services*, 65 Fed. CL 563 (Fed. Cl., June 1, 2005).  In *Vessels*, pursuant to the express terms of the Vaccine Act, provision was made for remanded jurisdiction to vest in the Special Master.  Here, the Remedial Plan only provides for appeal pursuant to Fed. R. Civ. P 53(e)(2) to the District Court Judge to **resolve** the matter, rather than to remand the same for further consideration.  *See* Remedial Plan at p. 29.  As all matters have been objected to or appealed to Judge Arguello for resolution, there is no need to continue the jurisdiction of the Special Master.

32.     There is simply nothing further for the Special Master to accomplish relevant to his designated duties.  Fed. R. Civ. P. 53(a)(1)(C) states that in a "post-trial"

---

[4] Class Counsel appears to conflate the two processes and allege that simply because the system-wide compliance is being monitored that so too concluded damage claims should continue to be rehashed.  Furthermore, to the extent that Class Counsel concedes that the two processes should not be so conflated; their *systemic* objection to Mr. Riplie's *individual* Final Order is without a basis.  *See* Plaintiff's Position Statement at p. 16.

state, such as exists here where all damages claims have been adjudicated, a special master is appropriate only to address "matters that cannot be effectively and timely addressed by an available district judge…"  In the instant case, the District Court is capable of issuing the few remaining orders as to pending objections by individual claimants.  Accordingly, there is no matter which cannot be dealt with effectively and timely by the Court which requires the continual jurisdiction of the Special Master.

33.    This position is consistent with the action of the court in *Paone v. Microsoft Corp.*, 771 F. Supp. 2d 224 (E.D.N.Y. 2011).  In *Paone* the court adopted, modified, and rejected in-part the recommendations of a special master.  Then, that court dismissed the special master and wrote, "The Court graciously thanks Special Master Peterson for his outstanding service, and respectfully directs the Clerk of the Court to terminate the Special Master's appearance in this case."

34.    Here, it is also time to graciously thank our own Special Master for his enduring and exemplary service but to respectfully terminate his appointment as the purpose for which he was appointed has been dutifully fulfilled.

35.    Furthermore, although **highly** unlikely, should it become necessary in the future, the District Court could always reinstate the Special Master.  *See Palmigiano v. Garrahy, et al.*, 1977 U.S. Dist. LEXIS 14552 (R.I Dist. decided August 10, 1977).  However, there is presently no need or good cause to preserve unending jurisdiction of the Special Master at the expense of the taxpayers on behalf of sixteen individual claimants who have all previously had hearings in which judgment was entered in their favor and subsequently received the non-monetary items ordered by the Special Master.

## CONCLUSION

**WHEREFORE**, for all of the reasons listed above and those explicated in their initial position statement, Defendants respectfully request that the Special Master's jurisdiction in this matter terminate.

Alternatively, to the extent such jurisdiction is continued, Defendants respectfully request that the Special Master's jurisdiction with respect to the sixteen claimants who received non-monetary items be revaluated at regular six-month intervals throughout the duration of the remaining 15-month Monitoring Period.

Respectfully submitted this 7th day of June 2013.

JOHN W. SUTHERS
Attorney General

/s/ Jacquelynn N. Rich Fredericks
JACQUELYNN N. RICH FREDERICKS,
#39932
Assistant Attorney General
Civil Litigation & Employment Law
Section
Attorneys for Defendant
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone:  (720) 508-6603

## CERTIFICATE OF SERVICE

I certify that on June 7, 2013, I filed the foregoing and mailed copies via the United States mail, postage prepaid, at Denver, Colorado, addressed as follows:

King & Greisen, LLP
1670 York Street
Denver, CO 80206

Paul Inman, #89591
FCF
P.O. Box 999
Canon City, CO 81215

James Rudnick, #68432
SCF
P.O. Box 6000
Sterling, CO 80751

Robert Jones, # 63565
LCF
49030 State Highway 71
Limon, CO 80826

Ben Padilla, #82114
LCF
49030 State Highway 71
Limon, CO 80826

Verlyn Bald Eagle, #98784
SCF
P.O. Box 6000
Sterling, CO 80751

Byron Cortez, # 45627
LCF
49030 State Highway 71
Limon, CO 80826

Kevin Mark Bretz, #46584
CSP
P.O. Box 777
Canon City, CO 81215

Gerald Sensabaugh, #100656
DRDC
P.O. Box 392004

Denver, CO 80239

Marty Bueno, #50565
CTCF
P.O. Box 1010
Canon City, CO 81215

Keith Swinaman, #105240
CTCF
P.O. Box 1010
Canon City, CO 81215

Lee Filipiak, #109936
CTCF
P.O. Box 1010
Canon City, 81215

Donald Revere, #69342
DRDC
P.O. Box 392004
Denver, CO 80239

James Wylie, #114060
SCF
P.O. Box 6000
Sterling, CO 80751

Raymond Goodloe, #51437 – No last known address provided – Paroled
Steven Walker, #114350 – No last known address provided – Paroled
Fernando Ramirez, #99458 – No last known address provided - Paroled


s/ Mariah Cruz-Nanio