THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge: Christina M. Arguello

Civil Action No: 92-CV-00870-JLK

JESSE MONTEZ, et. al.,
Plaintiffs,

v.

JOHN HICKENLOOPER, et. al.,
Defendants.

CLAIMANT'S JUDICIAL NOTICE AND REQUEST FOR
STATUS ON CLAIMANT'S MOTION FOR ORDER
TO COMPEL

Claim No: 01-092   Category: I
Claimant: James Rudnick
    Colorado D.O.C. reg #: 68432
Address:   S.C.F. 4A Box 6000, Sterling, CO 80751

Claimant Rudnick, a class member of the above action, submits
this JUDICIAL NOTICE (an information update), And, REQUEST
FOR STATUS RE ORDER TO COMPEL [filed 3-7-13] because this
Claimant is suffering injurious harm due to Defendants'
inactivity — failing or refusing to provide ongoing Medical
Accommodations — ORDERED in the original 2005 RULING
of Special Master Borchers (Affirmed by Judge Kane).

This matter is NOT resolved after (2) separate Compliancy
Hearings on [ MOBILITY Chair for Boots & Orthotics] that were
held before Special Master Borchers at this Sterling Facility.

There are issues of "Staff Conduct" in the S.C.F. Clinical Services
(AIC) Department, "Systemic issues" of procedure, issues
of "Medical Equipment" (Supplier for C.D.O.C.) and of "competency"
of the Medical Equipment Representative/specialist —
All issues are in conflict with the Special Master's Ruling
on the Compliancy Hearings — Claimant's OBJECTION's
to these Rulings have not been answered.

1.

Claimants feet are being deformed as a result of the Defendants failure or refusal to properly accommodate his Medical need.

see: [as described here from the Original Court Order] =

    1) Boots that fit his feet

    2) Custom Orthotics

The Defendants "delay and/or denial" to provide proper examination, sizing, and product offerings, fails a "Medical care" and fails the Court Order. [to provide Boots that "fit his feet"]

Defendants — by and through C.D.O.C. staff (Lt. Bernadette Scott) — held a "staffing" with Claimant and 3 witnesses: (Case Manager R. Phipps, SCF Medical N. Wilson, & RN VanMeter) [on May 10th 2013] where Ms. Scott (the A.D.A. Inmate Coordinator) chose to ignore this complaint of size, fit and worn-out current Boot & Orthotics Accommodation after demonstrating Boot & Orthotic wear pattern and fit issues — and how the Narrow Boot was deforming and blistering his toes — and, how the Orthotics & Boots were mal-shaped and worn causing painful walking and instability.

SCF staff Lt. Scott (AIC) has repeatedly interjected her own opinion and belief that there is no problem — And nothing is accomplished at the staffings but added frustration and a contumacious indifference at both the Claimant and the Court's Order.

    Claimant requested a camera be used to photograph the size and fit and wear issues that are visually obvious — demonstrating the boot and insoles —— orthotics to be too narrow (by over ½ inch at the toes) — demonstrating the damage to Claimants toes..

    Lt. Scott refused to photograph this and instead took photos of the top and outside of one boot (placed on a table) and would not even look at the worn boot bottoms.

2.

Note: • As stated in Claimants previous filings with this case, originally, Claimant was put into a Hobson's choice situation where he needed new boots to replace the previous Accommodation that was worn-out.

• At the time, LT. Scott complained that the boots "didn't look worn-out on the outside" — that "they were only a year old" — and that: "Claimant must have been purposely putting water on his shoes" [The boot "inside" were torn-up due to water damage working in the Kitchen]

• After the 2nd Compliancy Hearing - New boots were offered — but didn't fit — Too Narrow in the toe Area.

• LT. Scott sent them back to have them STRETCHED -

• Hobson's Choice occurred when Claimant is forced to choose between Accepting New boots (still too narrow) or to go back to the worn-out old boots.

• Claimant was told: "Take the new boots for a TRIAL BASIS" "if they don't work - we'll keep the old Boots in storage"

• Claimant was also told that they would bring back the Accommodation (Boot supplier from Hanger Prosthetics) Specialist or their representative to re-check the SIZE and RE-STRETCH the boots.

• This has Not occurred after a year of complaining

Note: • SCF (through Hanger Prosthetics) also offered Tennis Shoes to comply with a previous C.D.O.C. Medical Order.

• These were also too small [size 11-(B)width]
   • Claimants foot Size is : 13 (4)E width

• On the same "TRIAL BASIS" the shoes were tried, rejected, and then given-back to SCF staff.

• SCF staff (LT Scott) states that "they will never again offer or provide Tennis shoes" to this Claimant
   • The "C.D.O.C. Medical Order" will be ignored.

In both circumstances above — AJC LT. Scott attacks this Claimant for 'Accepting' shoes that don't fit despite their "TRIAL BASIS" offer, and, when goaded into taking them under a threat of "Refusing an Accommodation" means having to go without.

~~Also Claimant was tracked for retaliating every money and for retaliatory stuff~~

3

3 of 2.

Also. Claimant was Mocked for Not having any money, and for filing law suits, [by LT. Scott]   Then told — "IF you don't like what we offer you . then you can get your own doctor to get it for you   under AR 700·21 "  [ at full cost to prisoner ]

Further — LT Scott stated that; "they don't have to accept what an outside Doctor gets or prescribes for you  because It is 'only a recommendation' — We have the final say".

~~~ Whether true or not — These Defendants are obligated to carry out the Court's Order and they are failing or refusing to do so.   That Claimant has no other means to get these Medical Accommodations that he needs for his MOBILITY-Claim that serve during his entire custody.

As stated in the previous Motion to Compel , the Defendants had NOT YET SUPPLIED any boots or orthotics at the last Compliance Hearing [ to replace the "worn-out" accommodations ]   But ONLY an "OFFER" to get boots.

Special Master Borchers made his 2nd Compliance ORDER without Boots or Orthotics provided Rudnick, on the bogus rationale that the Defendants "were complying within the SPIRIT and INTENT of the MONTEZ - Stipulation Agreement".

Claimant Objected to this Ruling because this "spirit & intent" fails to provide an actual physical accommodation that properly complies to maintain the original Order (for this Claimant) and has allowed Defendants to behave contumaciously by offer of defective accommodations products with indifference as to whether they fit or not.

A "bad offer " is Not within the "Spirit & Intent" of MONTEZ and is Not compliance.

This presents a 'systemic problem' that Judge Kane's Ruling does not touch, and, which failed to consider the specific problems [ presented at Both Rudnick - Compliance Hearings And, in all of the filings Claimant Rudnick has made including his UnAnswered Objections to Borcher's Orders ]

4

Because these (2) Compliancy Hearing Order - "Objections" and Claimant's Motion for Order to Compel remain unanswered And, the fact that his replacement accommodations do not fit (and are now worn-out), And, the Claimant's recent experience with SCF-CDOC staff (stated above), this Mobility Accommodation Order for boots and orthotics stands UNRESOLVED and injury is resulting.

1 - Boot interior liner has broken apart, pads come loose, and the orthotics are flattened and coming apart. Also the tread on the boot has worn smooth causing a 'slippage' danger.

2 - Toes on both feet have blistered and are deformed due to being crushed-inward by the narrow boot

3 - Walking instability now causing knee damage due to orthotics being out of shape and toe pain.

Numerous "Kites" have been sent to the SCF Medical Department (And A.D.A. Coordinator) seeking New-proper fitted-replacement Boots and Orthotics.

- NEW -

On or Around May 2nd 2013 the S.C.F. Medical Department called Claimant Rudnick "IN" to try-on some New boots -- A tennis shoe/ boot "combination shoe".

These boots were again too small — too tight in the toe area — too narrow  [ size 12½ ( XW) ]

The HANGER Prosthetics representative/expert was Not there, so the boots were sent back. SEE NOTE:

NOTE: SCF staff wrote: "RETURNED for repair - too tight in toe Area"

These boots were too narrow - No amount of "repair" would fix this, and Claimant did Not ask for "REPAIR".

No solution was provided nor any expectancy of when another "trial fit" or "sizing with HANGER" might occur, or whether Larger boots might be offered.

5.

5 of 24

This was one of the issues brought before Borchers at the Compliancy Hearing, where Defendant's "Efforts and offerings" FAIL to serve to provide a "correct accommodation"

The HANGER - expert has seen Claimant Rudnick before, and made physical "first impression" molds — but, this "time" between visits and actual offer of accommodation is so long that mistakes are demonstrated with each product.

Also, the fact that the products offered are not tried-on in front of this expert — the crucial information he needs to make on "corrections" or "product changes" does not get sent out to him or their supplier.

- Claimant does not get direct line communication with Hanger during these prison facility "offerings".

- Multiple visits do not equate to "adequate care" or to even a "proper sizing" for the Boots and orthotics as this case demonstrates..

- Claimant is suffering harm due to the "limited offerings" and incompetent actions of these Defendants (@ SCF and through their expert @ HANGER)

- The "delays" and "lack of communication" is unreasonable.

Without COURT ENFORCEMENT to compel compliance, this matter, and the negligent practices occurring here, will not change, leaving this Claimant in a perpetual struggle to contend with these systemic and staff issues. His Medical Accom-modations may never get accurately fitted as needed for his medical Conditions [for his entire time in their custody]

At present, there is apparently no accountability or oversight to make this process more efficient, and, to stop the delay, or, to stop the wrong people's interference [those with no specialized Medical training - making Medical decisions] or, to "open up options" when staff and their supplier can't handle this Court Ordered Accommodation.

6.

▫ What happened to this Class Counsel - (Claimant representative)?

▫ Ms. Paula Greisen has NOT replied to any correspondence or phone call attempts made by this Claimant - Rudnick

▫ Does she represent Class Members or NOT?

▫ Is Mr. Rudnick entitled to Class Counsel Assistance?

Claimant Rudnick has requested <u>Court Appointed Counsel</u> at each Compliancy Hearing and for Assistance in his efforts to resolve these Accommodation "system" issues.

Each request was denied and this Claimant has had to Represent himself and his Claims before this Special Master.

This Claimant is in this perpetual struggle with these Defendants where it has now evolved into blocking and Derision as previously described, and, No New effort or attempts by this Defendants are being made to provide anything.

That Defendants (AIC & Scott) claim they are told to tell this Claimant:

   You're not getting special lens glasses (1) (separate Court issue
   You're not getting contact lenses (2)
   You're not getting new boots (3)
   You're not getting New orthotics (4)
   You're not getting special surgery (5) and,
   You're not going to get this <u>Special Needs Parole</u> Form (6)
   AR-550-13 completed as described §17-22.5-403.5

(1) Claimant has extreme myopia with astigmatism and the standard STATE ISSUE EYEGLASS LENSES made for him result in THICK lens
GLASSES    edges measuring over ½" — Special (alternative) lenses are offered all inmates [listed as HI-INDEX] but are DENIED here

• Lt. Scott complained that it "costs too much" and that "they had to pay for it out of their own budget". "This will Never happen again!".

7-of

- Ms. Scott further claimed that [Rudnick] would have to pay for it [New Eyeglasses] and. see his own Eye Doctor if he don't like what he gets here. [ See Attachment 1 & 2 ]
- Lt Scott then blamed his vision issues on "being difficult" and insinuated that no doctor wants to see him [claimant] that the Doctor (specialist) is the same Doctor she uses in town.     [ patient / Doctor breach ? ]

Because this issue was also part of an Order from Judge Kano, it was raised in the MOTION TO COMPEL re: defective Lenses :- (double-vision, blurry image, eye strain, headaches)

- That it may be a manufacturing problem
- That Claimant should not have to SETTLE with defective lenses
- That Prisoners should not have to PAY to get a PROPER prescription when the C.D.O.C. fails to provide a USEABLE product
- That Defendants ( C.D.O.C.) have demonstrated a malicious indifference to a [Claimant] Medical Need.
- That Defendants ( CDOC Staff @ SCF) have forced Rudnick to use these defective lenses — delaying NEW EYE EXAM for over 2 years despite Grievances and numerous requests for New Exam

-NEW-  On May 17th, 2013, SCF Rudnick was seen for NEW EYE EXAM and on June 11th, 2013. NEW THICK LENS eyeglasses were provided and are now being used.

A new issue has been grieved over the Denial of HI-INDEX (thinner lens) option provided other prisoners and the lack of Altered Prescription 'Lens' correction values - see below.

(2)  The Defendants Admin. Reg. 700 does "qualify" Rudnick for
CONTACTS   contact lenses [with -10.00 diopters or higher] :
- The Denial here was based on the claim that the CDOC Chief Medical Officer (CMO) told (SCF Medical Staff) them that "they don't have to provide contacts and NOT to allow Rudnick to ASK the Eye Doctor about contacts"; "tell him [Rudnick] he's not getting contacts"   [CMO = Dr Creany]

8.                                    8 of 24

- Mr Rudnick's previous "prescription values" were ~10.75 to ~11.00 or higher — somehow they have recently been changed to ~8.00 — An unlikely drop in correction and appears purposed to dis-qualify eligibility for AR-700 Contact lens Criteria. No Response on Grievance

  [Medical Record Review requests have repeatedly been]
  [delayed, and appointments cancelled]

- Claimant Rudnick was told at the SCF Medical Staffing (5-10-2013) that AR 700.21 allows you to PAY for your own "outside doctor" to get glasses & contacts .— but then mocked that they [SCF] don't have to let them in.

NOTE:   Claimant had private property OUTSIDE SPECIALIST provided eyeglasses and contact lenses when he arrived at the SCF prison. INTAKE staff confiscated them and later sent SCF SECURITY to TAKE the glasses — no use using — from him out of his cell (as Contraband)

see Attached (✱)   This CDOC SCF and Defendants are playing a game
[ATTACHMENT 1 & 2]   to see how much they can 'get-away-with' and exercising this practice at all levels to the detriment of most, or all, of those in their custody

Without this Court's help or Continuous Litigation there will be No Accountability or Consequences to Change these Contumacious behaviors & practices.

(3)   The ADA Inmate Coordinator (AIC) at SCF Lt. B. Scott was
BOOTS   asked to EXAMINE their current boots and orthotic insoles after explaining their wear and problems with fit – she refused [SCF staffing 5-10-13]

- Claimant physically showed how his toes overhang the insole pads and orthotics by one-half inch or more and then wear pattern in the pads as well as the injury to his toes

- Claimant showed the inside boot padding which was falling out and internal pads coming apart and that the boot treads were worn smooth and stated that they provide no traction on wet, icy, or smooth floors.

- Lt. Scott stated that she did not see this as a problem but maybe they could be "re-stretched".

- Claimant then asked to have photos taken of these boot issues (explained above – Lt Scott photographed only top & side)

- Lt Scott concluded that there is nothing wrong with the fit, that the photos and what was shown her does not prove anything. And that she knows – because she has kids – that when her kids shoes don't fit; the sides would be worn-out or worn smooth on the outside.

- Lt Scott then claimed – "you just don't like what we offer" – and repeated the AR 700-21 policy

- Ms. Scott asked – "Do you think we should have to take you in-down to a regular boot store to get you shoes — Is that what you expect – Is that reasonable?" then – Stated = "that's not rational, that's not going to happen".

[Then CDOC has, to my knowledge, done this for other Inmates]

(4)
Orthotics

The custom orthotics are worn-out - the material is delaminating and overall fit is inaccurate —

- The orthotics were cut-down to FIT inside the Narrow toe area of the boots – [Toes overlap the outside edge]

- The orthotic "step-angle" was never adjusted (as explained by the Hanger Representative Ben Strusenberg) to reduce the push of the toes to the outside [where the boot is too narrow]

Additional issues discussed are not directly related to this MONTEZ - claim but are included to show pattern of systemic problems and Defendant's handling of Medical issues

(5)
Special Surgery

Claimant suffered a shoulder injury in 2010 that he is still trying to get repair treatment because the damage is causing significant pain and continues to reduce range of motion in his Arm - affecting most "life activities" [re arm & shoulder use].

- The SCF Specialist has concluded as "old age and arthritis" Contrary to the findings reported in M.R.I. test.

10.

w. f26

- Despite Medical staff acknowledgement of this worsening Arm/shoulder situation, no action is being taken.

(6)
Special Needs Parole

Claimant filed for <u>Special Needs Parole</u> under CDOC AR-550-13 and §17-22.5-403.5 CRS due to this ongoing struggle and frustration attempting to get proper Medical care and treatment — and being pushed to CDOC AR-700-21 (to obtain outside doctor care & treatment at prisoner's expense) <u>THEN</u> held hostage to the whims of facility security, medical and other obscure and changing standards — which actually determines what prisoners can be provided, or will <u>not</u> be allowed ——

- This <u>Non</u>-Medical determination, this Medical staff practices, this indifference, this delays, and denials, this wrong-fit items, the refusal to promptly do what is reasonable to diagnose and cure these medical matters and systemic quagmires

- This Medical staff blame-shifting — that it's the prisoner's fault — he's being difficult — he just doesn't like what we offer. — and so forth (described above)

- This Defendants' (and CDOC staff's) excuses for delays denials given as: Prisoner population use them over-worked and unable to keep-up scheduling and appointments; Urgency based on "housing staff ref-ferrals; Too many Prisoner's Medical needs, means that some prisoner's Medical care issues are justified to be passed-over; CDOC and/or SCF Medical Department are under staffed; or unqualified; and/or ill-equipped to handle prisoner treatment needs; and do not have adequate accommodation supplies;

- Prisoner care is based upon Budget constraints and staff are driven to cut costs; avoid costly treatments and accommodations; Limit patient care to set limits that are arbitrarily established;

11.

- Further prisoner Medical Care and Accommodations are hindered or denied due to staff claims that the Insurance Provider won't cover it; the budget is used up; the Care & Accommodations Cost too much; the CDOC budget already spent too much on you;

- Additionally, CDOC staff are inadequately trained; and being misled by "Headquarters Direction" unable to properly handle sometimes simple Accommodation matters due to improper Character Screening process before hiring and being assigned these positions

- Currently such delays & denials are not only based on all of the information previously described — but now on belief that MONTEZ Accommodations are only (1) TIME provisions — Not perpetual or for continuous replacement — That if Accommodation need continues (even for this already established chronic Medical need) prisoner will have to FILE NEW COMPLAINT under §1983. —

     [ and belief that under PLRA — Court Orders only provide for (2) years worth of Injunctive Relief ]

All of this above has been personally witnessed and now part of this Claimants experiences with Defendants' "System Problems" causing delays & denials, of proper Medical Accommodations on Doctor recognized needs (that are also obvious to the common person) which ultimately does cause Harm and suffering without relief.

The Defendants involve themselves in this matter due to SCF Staff consulting with the Attorney General's office in making their Medical Treatment decisions for this Claimant's Accommodation Needs, Then by direct or indirect associations lead staff to FAIL to complete their duties — [ in this case — failed procedures of §17-22.5-403,5

And CDOC AR-550-13 ]

This AR-550.13 Special Needs Parole form was Not completed.
This Form was Not passed-on to each of the parties
involved in this decision making process, And,
This SCF-doctor gave conclusory remarks without
factual evidence or consultation with this Claimant.

- Despite SCF Case Manager [R. Phipps] listed First for
  completion on this FORM — she stated that
  "this form has to be completed by Medical First"
- Once "Medical" made its conclusion —
  · this case manager stated that this process
  is done - This FORM will not be passed-on
  to anyone else, because Medical says =
  "you don't qualify for chronic care needs"

All of the above reveals a serious Failing of this System;
A push to deny Medical treatment for cost reasons;
A push to make the prisoner [Claimant] pay for his
own Medical Care and Treatment — then still face
likelyhood of specialized Medical Accommodation Denial
upon entery of a CDOC prison facility; and reveals
the Nature of these Defendants — holding Claimant's
Medical Accommodation Needs hostage to his ability to
PAY or to file successful —and—repititious New §1983
Complaints (every 2 years) PLRA—while knowing of his Medical
Need and the Pain & Suffering that is occurring as
a direct result of their FAILURE to supply these items
Then Defendants derisive attitude is exposed when
this Claimant is Mocked for "Not having any money,
being in substantial debt (for "their" Attorney FEES)
when he sued (in Small Claims) for the wrongful taking
of his property, when he was "facility transfered" for
the convience of the C.D.O.C. and NOT by any fault of
this Claimant.

## CONCLUSION

- Claimant Rennick has chronic Medical care needs that are <u>not</u> being properly treated or accommodated.

- His Current Medical care includes recognized need for specific accommodations and those items ruled necessary by specialists and other Medical professionals, and, by this Court (on the Original 2005 Order for this Claimant)

- The <u>MONTEZ</u> Remedial Plan Section §§ <u>X</u> <u>XIII</u> <u>XVII</u> is to provide inmates "Reasonable Accommodations and access to benefits compatible to the non-disabled"; ¶ <u>XII</u> calls for "staff training on A.D.A. and compliance issues"; and, ¶ <u>XV</u> is supposed to provide "Availability of prescribed health care appliances"

- Judge Kane's Last Ruling concluded that the CDOC has met its burden of demonstrating substantial compliance with the terms of the Remedial Plan for purposes of § XXXVI <u>THEN</u> he acknowledges Plaintiff evidence that <u>compliance</u> continues to <u>fail</u> individual inmates in certain areas on certain occasions

Judge also stated, regarding any disputes, that <u>If agreement could not be reached on a particular issue</u>, Judge Kane was to assist. — [This cannot occur with Judge Kane <u>no longer</u> on case]

This Claimant <s>does</s> <u>Not</u> need another Compliance Hearing

There is a Court Order already establishing the Defendants duty to supply these above mentioned specific Accommodations Claimant shouldn't be <u>put into a position</u> where he is compelled

- to have to <u>legally challenge</u> these Defendants EVERY TIME he has an obvious Need for REPLACEMENT of a Medical Accommo- -dation — [one that is clearly stated in a Court Order];

- to have to prove (all over again) why he needs it — Facts already established to be a chronic, [Lifetime] Accommodation

- to have to challenge these Defendants delays and denials based on far fetched justifications — just to KEEP what the Court has Ordered [that the Court should be enforcing]

- to have to represent his own claims — by himself, when Class Counsel is PAID for representing this Class which includes this Claimant.

- to have to fight against some obtuse New Defense strategy 'intended to LIMIT "Accommodations" to a ONE-TIME-ONLY interpretation.

- to have to FILE a NEW LAW SUIT (<u>every 2 years</u> [ because of PLRA.]) over this same chronic care Medical Condition and Accommodation needs already RECOGNIZED for this current Court Order.

- to be forced to go 'pro se' because of his imprisonment, his lack of funds, and lack of available Attorneys willing to take on such a case.

- to have to face <u>NEW</u> <u>Defense</u> argument, NEW <u>Defense</u> theory and strategies and experts determined to close loop holes, change or limit medical treatment plans, or block specific medical items Claimant needs (in a NEW LAW SUIT)

The very essence of a Judicial Order is to provide a reason-able permanence to a solution or Relief type remedy <u>without</u> need of repetitious or perpetual argument in successive legal filings.

The Defendants express concern over "Judicial TIME and COSTS" spent on individual Claimant pro se filings, YET, <u>who benefits</u> from a Defendants <u>delay</u> or <u>failure</u> to provide these simple recommodations, or from their subversion tactics and practices, that harm Claimants, show contempt for the Court, and, violate public trust in the legal system?

Claimant was separated from society as punishment, <u>not</u> to be punished by Denial of his Medical Care, or retaliated against for having need of special accommodations [that others are provide

In this case matter, because this Claimant has no other alternative for obtaining proper fit boots or other needed medical items (with or without Court Order) he must rely on the Defendants to ACT to provide the appropriate Medical Care and accommodations [ie. boots that fit his foot and items that are 'proper fit and usable'] including providing REPLACEMENT ITEMS when these accommodations get worn, lost, taken, or no longer work.

This matter has not been resolved and continues to cause Claimant RUDNICK pain and suffering.

The issues described here in are cumulative and it is tantamount to; failure, unwillingness, or inability, to provide proper (or even Court Ordered) Medical Care.

The Defendants behavior shocks the conscience and appears intended to cause cruel and unusual punishment.

Claimant has served over 22 years on this criminal case of Self Defense. He was Not sentenced to be tormented and tortured, or denied Medical Care on his chronic conditions or treated worse than other prisoners in this system.

Claimant Rudnick is a firm believer that this Law and this Court Ruling for his accommodations should be upheld and enforced — that this is a Christian Nation of people who are able to demonstrate mercy and fairness which should prevail over this current trading of perpetual condemnation.

☐ Therefore, this Claimant upon this Judicial Notice and all previous related filings Makes his Request for Status on the MOTION TO COMPEL and his any other Relief or Action that he is elgible for, including sanctions.

· RESPECTFULLY SUBMITTED this date: __7·16·13__

James Rudnick

16.

ATTACHMENT   1

✗ - NOTE:

• The CDOC has to "approve" any item that enters a prison facility — This prison has already DENIED what "specialists" have prescribed, provided, & recommended for Mr. Rudnick [@ INTAKE in 2010]

• Ms. Scott states (this Above) "is only a recommendation", "and the C.D.O.C. does Not have to Allow or Provide items prescribed, recommended or provided by specialists from the outside.

• The CDOC's OWN eye specialist has Recommended contact lenses for Rudnick and Medical Department fails or refuses to recognize this Necessary vision item Now — despite the fact that Mr Rudnick does qualify for Contacts in their own AR 700-1

• This issue Medical Dept. @ SCF already supplies Contact Lenses to other prisoners in the facility that are of the identical "type" and "Manufacturer" Mr Rudnick had when he arrived here.

• Mr Rudnick had worn these [hard type] Contact Lenses since 1974 and used them continuously throughout his custody in the C.D.O.C. until the Mail Room stopped allowing (replacements) to come-in. And the Last Pairs of Contacts & supplies were TAKEN by SCF staff @ INTAKE (August 2010)

Regarding both Contact Lenses and eye glasses, It is unreasonable to Claim that a prisoner CAN obtain outside Medical Accommodations when these Defendants have proven in this case, such effort is futile and costly. Further, it is Malicious to suggest Mr Rudnick pursue

✳ ! ✳

17 of 24

this process when :

(A) It was their glasses that are defective

(B) they know the process is so cost prohibiting and that Mr. Rudnick has NO money, and it is then, Ms. Scott mocks* Mr Rudnick on his continuing legal efforts (to get these items)

(*)Ms Scott exposed a perverse contempt against Mr Rudnick's civil Action where, in his Attempt to get back his property, the County Court gave a directed verdict for the Defendants (without completion of the trial process, And Awarded the Attorney Generals with Attorney fees making Rudnick financially destitute .

[The C.D.O.C. collects 100% of all monthly income]

(C) these women (at the hearing) ridicule and willfully insult Rudnick with Self-opinionated bogus claims; purposed or intended to shift blame and to justify their failed offerings somehow as the fault of his own doing.

(D) these Defendants provide NO GUARANTEE that Mr. Rudnick would be Allowed to KEEP such special glasses or contacts in this facility –

(E) these Defendants should have knowledge of their signed agreement [Form AR1A50-1B] CERTIFICATE OF REVIEW and COMPLIANCE with EXECUTIVE ORDER on ETHICS and POLICY — And not purposely expose a prisoner to cruel & unusual punishment.

(F) It is punitive to "blame" the prisoner for their failure and tantamount to torture to ignore this vision accommodation need.

* 2 *

18 of 2?

EXHIBIT 1

<u>AR 1850-01</u>   Colorado Department of Corrections Policy

It is the policy of this D.O.C. that D.O.C. employees, contract workers, and volunteers are to have honesty, integrity, and respect for the self-worth and individuality of human beings as well as a strong commitment to professional and ethical correctional services. D.O.C. employees, contract workers and volunteers must constantly strive to live up to the highest possible standards of their profession and to incorporate and adhere to the "January 15th 1999 Executive Order - "Executive Department Code of Ethics" as its ethical performance standard      2-CO-1C-04      A-4069

<u>Colorado Department of Corrections MISSION STATEMENT</u>

The mission of this CDOC is to protect the general public through active management of offenders in controlled environments which are efficient, safe, humane, and appropriately secure, while also providing meaningful work and self improvement opportunities to assist offenders with community reintegration.

<u>CDOC   Clinical Services   Mission Statement</u>

To be an innovative leader in the provision of Correctional health care, and in the rehabilitation of offenders, enhancing the public health and safety by successfully reintegrating offenders back into society and delivering clinical quality, while being both respectful of the patient-provider relationship and being highly cost effective.

<u>CRS 18-1-102.5</u>   Purpose of code with respect to sentencing

Colorado Sentencing Goals are: (a) to punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of the offense. (b) to assure the fair and consistent treatment of all convicted offenders (c) to prevent crime and promote respect for the law by providing effective deterrent to others likely to commit similar offenses (d) to promote rehabilitation ....through corrections programs.

<u>CRS 24-1-122   Standards of Ethics = Oath = Professional Code</u>

Department of Regulatory Agencies   (DORA)
Part (3) (M) (I)   Colorado State Board of Medical Examiners


"A state agency Must comply with its own rules, even if they are more stringent than Due Process might otherwise require."
<u>Department of Health v Donahue</u>   690 P2d 243 (Colo '84)

see also: <u>Wolff v MacDonnell</u>  94 SCt 2963 ('74)
        <u>Hovatos v Robinson</u>   1 F3d 1068   N.4 (10th '93)

19 of 2

Medical Care

"Circumstances are clearly sufficient to indicate the need for Medical Attention for injury or illness. The denial of such aid constitutes deprivation of Constitutional Due Process"   Fitzke v Shappell   468 F2d 1072 (6" '72)

Constitutional Right to reasonable medical care – that is adequate under the circumstances   Mills v Oliver   367 F Supp 77 (D. VA '73)

3 months without medical provision [eyeglasses] -- broken - no exam - to treat permanent impairment ... Not §1983 but TORT claim   DiFebo v Kene   395 F Supp 1350 (D. Del '75)

Denial of medical care to inmate is actionable under §1983 only if the complaint alleges (1) intent to harm inmate (2) an injury obviously requiring medical attention -- mere negligence, unless it shocks the conscience, is not sufficient   Page v Sharpe   487 F2d 567 (1st '73)

[re delay by added process . unreasonable delay by scheduling, indifferen or distance or Court order despite inmate's medical need ]

It is sufficient to show that he actually experienced the need for Medical treatment, and that he was not addressed within a reasonable time frame.   Where a Plaintiff claims arise from an injury, or illness, [or condition] so obvious that even a layperson would easily recog-nize the necessity for a doctor's attention [and treatment ] -- the Plaintiff need not present verifying medical evidence to show that even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated.

Lack of verifying Medical evidence does not negate a serious Medical need an the facts issue of deliberate Indifference.   Blackmore v Kalamazoo County   390 F3d 890 (6" '04)

Evidence viewed in the light most favorable to the Appellant showed that various prison officials had disregarded claims of Appellants urgent medical needs. Such indifference, even if it did not cause additional injury, unnecessarily prolonged Appellants pain and suffering.   Sealock v Colo   218 F3d 1205   Delay in medical care constitutes violation of U.S. Const. Amend. VIII where Plaintiff can show that the delay resulted in substantial harm. The VIII amendment forbids the unnecessary and wanton infliction of pain.

20 d.

*EXHIBIT 3*

# Auxiliary Copy Sheet

Revised 8/17/12

| ✓ All copies on this sheet REQUIRES A POSITIVE BALANCE in the offender's CDOC bank account | | |
|---|---|---|
| Civil Court Pleadings | 20 Pages | 1-Court, 1-each Defendant<br>1-Offender Copy |
| Domestic Court Motions:<br>    Dissolution of Marriage<br>    Child Support Issues<br>    Child Care/Custody Issues | 20 Pages<br>or Court<br>Forms | 1-Respondent copy, 1-Offender Copy |
| Limited Power of Attorney (*1) | 1 Page | 1-Offender Copy |
| Attorney Regulation Counsel | 10 Pages | 1-Offender Copy |
| Judicial Discipline Commission | 10 Pages | 1-Offender Copy |
| Correspondence to Administrative Agencies:<br>    Social Services<br>    Custodial Agencies<br>    Social Security/Retirement Issues<br>    Child Support Issues<br>    Governor<br>    County Sherriffs<br>    Chairman of the Parole Board<br>    DOC Executive Director (*2)<br>    CDOC Warden<br>    Attorneys / Legal Representation Organizations<br>    CDOC   Time Computation<br>    AIC | 10 Pages | 1-Offender Copy |

Notes:
*1 - Only powers of attorney **not** giving authority over financial matters or referencing real estate powers; **Limited powers of attorney only.**
*2 - In State offenders: CDOC Executive Director;  Interstate Compact offenders: their respective state's **DOC Executive Director**

The Legal Access Program **WILL NOT COPY** the following documents even as attachments to the Required Photocopy Sheet items or the above Auxiliary copy items:

    Personal Letters
    Open Records Requests
    Justice Records
    Strawman, UCC Documents, Sovereign Citizen
    State or Federal Tax documents
    Executive Directives
    ARs, IAs, or Oms
    Powers of Attorney which grant financial powers or relate to real estate
    Clemency Letters (see case manager for details)
    Wills and Living Wills

AND ALL OTHER ISSUES NOT LISTED IN THE BOXES ABOVE THIS BOX

21 of 24

COPY   EXHIBIT 4

DC Form 750-01B (12/01/08)

COLORADO DEPARTMENT OF CORRECTIONS
LEGAL ACCESS PROGRAM
## PHOTOCOPY REQUEST FORM

LAST NAME: Rudnick   FIRST INITIAL: J   DOC #: 68432

FACILITY: SCF   UNIT/TIER/CELL: 4 A 1-11   DATE SUBMITTED: 6-27-13

LIST THE DATE OF ANY **COURT IMPOSED DEADLINE**: Fed. Ct. & ADA Filing

A signed and completed miscellaneous withdrawal slip must accompany this request.
Please list each document to be copied on separate lines and include description, number of pages you are submitting, and number of copies you are requesting. Incomplete forms will be returned or denied.

| | DESCRIPTION OF DOCUMENTS SUBMITTED | # PAGES SUBMITTED | # COPIES REQUESTED | # COPIES APPROVED |
|---|---|---|---|---|
| 1 | Ltr to AIC   CDOC | 2 | 1 | 0 |
| 2 | Ltr to Judge | 8 | 1 | 8 X 1 = 8 |
| 3 | 2 pg Attachment (Ltr) | 2 | 1 | 2 X 1 = 2 |
| 4 | | | | 10 |
| 5 | | | | .25 |
| | | | | 2.50 |

OFFENDER SIGNATURE **(REQUIRED)**

### DO NOT WRITE BELOW THIS LINE – OFFICIAL USE ONLY

CHARGE TO ACCOUNT: $ 2.50
DATE RECEIVED AT SENDING FACILITY: _____   NUMBER OF PAGES RECEIVED: 12
DATE RECEIVED IN PROCESSING LAW LIBRARY: 6-27
NUMBER OF PAGES RECEIVED IN PROCESSING LAW LIBRARY: _____
DATE COMPLETED: 6-27-13
DOC EMPLOYEE/CLERK PHOTOCOPIER INITIALS: Jan
   METER END: 205
MINUS   METER BEGIN: 22194
   TOTAL COPIES: 11
MINUS   ADMINISTRATIVE COPIES: 1
   TOTAL COPIES TO OFFENDER: 10   DATE DENIED: _____

Your request has been **DENIED** _____ in whole __XX__ in part for the following reasons:

_____ Your request form was not properly completed (Missing required signature, full cell location, facility, unit, tier, cell, DOC #, date, etc.)
_____ The material you have submitted does not meet program definitions of legal material, as described in AR 750-01.
_____ Your photocopy request exceeds the page limit established by the legal access program (see attached). Also see posted photocopy policies.
_____ Regardless of your ability to pay, you will be supplied only the required number of copies as dictated by court rule or statute. Your request is in excess of those requirements (see attached). Also see posted photocopy policies.
_____ You have not submitted the documents to be copied.
_____ You must submit a completed miscellaneous withdrawal ticket with your request, regardless of indigence status.
_____ Attachments/exhibits to a document must be submitted with the original document, even if the original is not being copied.
_____ Your account is in arrears for at least $500. See AR 750-01 for additional information.
_____ The legal access program will not copy ARs, IAs, OMs, or material contained in the law library, even as attachments/exhibits.
_____ The legal access program will not copy transcripts, incomplete documents, unsigned documents, altered documents, and/or blank forms.
_____ The legal access program will not copy non-original documents, previously-copied documents, incoming correspondence, or documents (account statements, mittimus, etc.), grievances, COPD appeals; *except* as exhibits attached to an original pleading being filed with the court or attached to a letter to a judge or attorney of record. Your pleading **must** include a statement referring to the attached exhibits in order for them to be copied.
__XX__ Other This is an administrative letter. Mr. Rudnick has a negative balance of -1890.47 He must have a positive balance for it to be copied per Legal Access Copy guidelines. He may hand write a second copy to the AIC.

22 of 24

**EXHIBIT 5**

**A1-11**

## COLORADO DEPARTMENT OF CORRECTIONS
### Colorado Springs, Colorado

**\*\*Statement of Account Activity\*\***
Period: 06/01/2013 - 07/10/2013
Printed: 07/10/2013

**Name:** RUDNICK, JAMES
**Number:** 68432
**Location:** STERLING - SCF/UNIT04

| Date:Time | Description | Tran Amt | Balance | Available Before W/H | Type | Encumbrances Amount | Total | Available Balance | FC |
|---|---|---|---|---|---|---|---|---|---|
| 06/01/13 00:00 | Beginning Balance | | -1,896.18 | 0.00 | | | 0.00 | 0.00 | |
| 06/03/13 14:25 | PAYROLL-CREDIT | 0.60 | -1,895.58 | 0.30 | | | 0.00 | 0.30 | SF |
| 06/03/13 15:46 | 1 CUSTODIAN | 9.30 | -1,886.28 | 4.95 | MANDATORY | 3.72 | 3.72 | 1.23 | SF |
| 06/05/13 16:46 | HYGIENE ITEMS DEBIT | -0.44 | -1,886.72 | 4.51 | | | 3.72 | 0.79 | SF |
| 06/27/13 10:01 | XEROX-DEBIT | -3.75 | -1,890.47 | 0.76 | | | 3.72 | 0.00 | SF |
| 06/28/13 00:25 | FILING FEES-11CV116 | -1.86 | -1,892.33 | 0.00 | | | 0.00 | 0.00 | SF |
| 06/28/13 00:25 | FILING FEES-11S16 | -1.86 | -1,894.19 | 0.00 | | | 0.00 | 0.00 | SF |
| 07/01/13 23:24 | DENTAL APPOINT | -3.00 | -1,897.19 | 0.00 | | | 0.00 | 0.00 | SF |
| 07/02/13 11:52 | XEROX-DEBIT | -2.50 | -1,899.69 | 0.00 | | | 0.00 | 0.00 | SF |
| 07/08/13 16:31 | 1 CUSTODIAN | 9.00 | -1,890.69 | 4.50 | MANDATORY | 3.60 | 3.60 | 0.90 | SF |
| 07/10/13 23:58 | Ending Balance | | -1,890.69 | 4.50 | | | 3.60 | 0.90 | |

**Total Deposits:** 18.90
**Total Withdrawals:** 13.41

| Account Information as of  07/10/2013  3:32PM | | | |
|---|---|---|---|
| **Status:** ACTIVE | | **Total Money In Hold:** | $0.00 |
| | **Current Balance:** -1,890.69 | | |
| | **Total Reserved/Encumbered:** | **Available Balance** | $0.90 |
| | $3.60 | | |

---

### Statement Information

**Date:Time** reflects the transaction date and time of deposits and withdrawals to the account during the statement period.

**Description**  is a brief memorandum describing the transaction.

**Tran Amt**  is the amount of the transaction; deposits are shown as a positive number, withdrawals are shown as a negative number.

**Balance**  is the actual balance of the account. All deposits and withdrawals are added and subtracted from the 'Balance'. If an account has a negative balance an 'Available Balance' will be derived according to AR 200-2.

**Available Before W/H**  is the derived available balance where 50% of deposits are made available when the actual account balance prior to deposit is a negative amount (Ref: AR 200-2). This amount is derived prior to mandatory withholding.

**Encumbrances**  are amounts placed on hold pending further processing by the banking system, such as when a canteen order is posted or a deposit is subject to mandatory garnishment rules. The amount, type of hold, and a total (as of the Date:Time) is reported.

**Available Balance**  show monies available for withdrawal at the end of the transaction. The time precision for all transactions is to the minute; encumbrance total may duplicate for multiple transactions if the transaction date and time are identical.

**FC** (Facility Code) is the offender's facility assignment at the date and time the transaction was posted to the account, not the originating source of the transaction.

**NOTICE: This statement may not include most recent Withdrawals or Deposits.**

**23 of 24**

CERTIFICATE OF MAILING

I certify that a true and correct copy of the attached CLAIMANT'S JUDICIAL NOTICE AND REQUEST FOR STATUS ON CLAIMANT'S MOTION FOR ORDER TO COMPEL, was inspected and logged-in to the "prisoner legal mail log-book" in the Sterling Correctional Facility Housing Office (Logan County) for deposit into the United States Mail, with the postage prepaid and sent out to the parties (as listed below) on this date:- ~~7-25-13~~   ~~7-25-13~~   Mailed on 7-25-13

Legal Resolution Center
Special Master Judge Borchers
7828 Vance Dr.   Suite 108
Arvada, CO   80003

Federal District Court - Clerk
Judge Arguello
901 19th St   Rm A-105
Denver, CO. 80294

Colorado Department of Law
Attorney General's Office
Ralph L Carr Colorado Judicial Center
1300 Broadway   10th floor
Denver, CO. 80203

James Rudnick
C.D.O.C. Register # 68432
S.C.F. 4-A  Box 6000
Sterling, CO. 80751