**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 92-cv-00870-CMA

JESSE MONTEZ, et al.

    Plaintiffs,
v.

JOHN HICKENLOOPER, et al.

    Defendants.

---

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS DURING THE MONITORING PERIOD**

---

Attorneys for the Plaintiff Class, Paula Greisen and Jennifer Weiser Bezoza of KING & GREISEN, LLP; Edward T. Ramey of HEIZER PAUL GRUESKIN, LLP; Lara E. Baker of FOSTER GRAHAM MILSTEIN & CALISHER, LLP; and Blain D. Myhre of BLAIN D. MYHRE, P.C., hereby submit their Motion to Compel Defendants' Responses to Plaintiff's First Set of Discovery Requests during the monitoring period pursuant to § XXXVI(A) of the Remedial Plan [Doc. 441] and Fed.R.Civ.P. 37(a), and in support thereof state as follows:

## I.    INTRODUCTION

This civil rights class action lawsuit arising out of institution-wide disability discrimination against disabled inmates housed in Colorado Department of Corrections ("DOC") facilities is presently in the two-year monitoring period following Judge Kane's finding that Defendants had achieved "substantial compliance" with the Remedial Plan.

*Findings of Fact and Conclusions of Law re Phase I of Class Action Settlement*, p. 4 [Doc. 5314] (hereinafter "*Findings*").

Pursuant to § XXXI of the Remedial Plan, during the monitoring phase, counsel for the Plaintiff class are responsible for evaluating Defendants' continued compliance with the Plan, and, to the extent evidence of non-compliance is discovered, for filing an objection alleging non-compliance with this Court prior to the completion of the monitoring period. To effectively discharge these responsibilities, class counsel require reasonable access to their clients, DOC facilities, and information maintained by DOC pertaining to each of the twenty-eight broad areas counsel are charged with monitoring. *See Remedial Plan* §§ II, IV-XXX, XXXVI(C) [Doc. 441] (hereinafter "*Remedial Plan*").

Although Defendants have permitted Plaintiffs' counsel to visit DOC facilities to meet with class members,[1] Defendants have been unresponsive to Plaintiffs' counsel's repeated requests – both informal and formal – for relevant documents and information necessary to effectively monitor DOC's compliance for the past eight months. Despite Plaintiffs' counsel's extensive efforts to obtain information, Defendants have not provided information that class counsel have been informally requesting since January 2013, nor have they responded to a <u>single one</u> of Plaintiffs' May 8, 2013 formal

---

[1]After two months of Plaintiffs' counsel's repeated requests, defense counsel eventually coordinated the provision of "rosters" identifying disabled inmates at each particular facility to Plaintiffs' counsel for purposes of coordinating facility visits. *Exs. 1-2, Exhibit 3, E-mail from Greisen to Quinn, et al., Feb. 5, 2013* (hereinafter "*Ex. 3*"), *Exhibit 4, E-mails from Greisen to Quinn, et al., Feb. 19, 2013, Mar. 5, 2013, and Mar. 12, 2013* (hereinafter "*Ex. 4*").

discovery requests, asserting that Plaintiffs are not entitled to *any* discovery at this stage of the proceedings.

Now almost one full year into the two-year monitoring period, Plaintiffs' counsel have yet to receive *any* information regarding the status of Defendants' compliance with the Remedial Plan other than some class members' anecdotal information. Accordingly, Plaintiffs move this Court for an order, pursuant to its authority under § XXXVI(A) of the Remedial Plan and Fed.R.Civ.P. 37(a), directing that: (1) Plaintiffs are entitled to discovery of information during the monitoring period relevant to whether Defendants continue to be in "substantial compliance" with the Remedial Plan; (2) compelling Defendants' responses to Plaintiffs' first set of discovery requests during the monitoring period; (3) extending the date on which the monitoring period is presently scheduled to expire by an amount of time equal to the number of days between the date that Defendants' responses to Plaintiffs' first set of discovery during the monitoring period were due (June 10, 2013) and, if the Court grants this Motion, the date of that Order; and (4) for such further relief as this Court deems just and proper.

## II.     CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(A)

Paula Greisen, counsel for the Plaintiff class, certifies that she and her co-counsel have in good-faith conferred with counsel for Defendants in an effort to secure the information sought in Plaintiffs' First Set of Discovery Requests during the monitoring period without court action.

Specifically, on January 22, 2013, Ms. Greisen requested a meeting with defense counsel to discuss a process for information-gathering during the monitoring period. *Exhibit 1, E-mail from Greisen to Quinn & McCann, Jan. 22, 2013* (hereinafter "*Ex. 1*"). Counsel for Defendants, First Assistant Attorney General James Quinn, responded on February 7, 2013, that defense counsel did not believe a meeting was necessary. *Exhibit 2, E-mail from Quinn to Greisen, Feb. 7, 2013* (hereinafter "*Ex. 2*").

Accordingly, Ms. Greisen informally requested that Defendants provide an updated "Do Not Qualify" ("DNQ") list so that class counsel could evaluate whether DOC is complying with the screening procedures specified in the Remedial Plan. Having received no response, on April 16, 2013, co-counsel for the Plaintiff class, Mr. Edward Ramey, telephoned Mr. Quinn regarding Ms. Greisen's request for an updated DNQ list, and was advised by Mr. Quinn that DOC no longer maintains a list of DNQs.

Given defense counsel's unwillingness to meet to discuss processes for the exchange of information during the monitoring period, and after three months of unsuccessful attempts to obtain even the most basic data regarding DOC records of inmate screenings, Plaintiffs' counsel propounded limited formal discovery on Defendants on May 8, 2013.  *Exhibit 5, Plaintiffs' First Set of "Monitoring Period" Discovery Requests, May 8, 2013* (hereinafter "*Ex. 5*").  The requests consisted of only four interrogatories and two requests for production of documents.  The intent of these limited requests was to discover what information is currently being maintained by Defendants to allow Plaintiffs' counsel to propound subsequent discovery tailored toward eliciting relevant information.

4

Defendants did not respond by the June 10, 2013 deadline. In her June 11, 2013 letter to Ms. Greisen, co-counsel for Defendants, Assistant Attorney General Jacquelynn N. Rich Fredericks, stated that Defendants were "unable to provide the information and documentation sought, at this time," asserting their position that Plaintiffs are not entitled to *any* discovery, written or otherwise, beyond touring the designated facilities. *Exhibit 6*, *Letter from Fredericks to Greisen*, *June 11, 2013* (hereinafter "*Ex. 6*"). Nevertheless, in her letter, Ms. Fredericks proposed that Defendants would be willing to engage in "some voluntary disclosure." *Id.*

On June 14, 2013, Mr. Ramey telephoned Ms. Fredericks to discuss Defendants' refusal to respond to Plaintiffs' discovery requests and Defendants' suggestion that it would instead be amenable to providing some information more informally. *Exhibit 7*, *E-mail from Ramey to Fredericks memorializing conversation*, *June 14, 2013* (hereinafter "*Ex. 7*"). At the conclusion of their phone conversation, Ms. Fredericks agreed to contact Keith Nordell, Director of Legal Affairs for DOC, during the week of June 17, 2013, regarding DOC's willingness to provide Plaintiffs' counsel with the requested information, and to contact Mr. Ramey immediately thereafter. *Id.*

Having heard nothing from Ms. Fredericks by June 26, 2013, Mr. Ramey contacted her by e-mail, again requesting that she follow up with him regarding her commitment to speak to Mr. Nordell. *Exhibit 8*, *E-mail from Ramey to Fredericks*, *June 26, 2013* (hereinafter "*Ex. 8*"). Ms. Fredericks telephoned Mr. Ramey the following week, on July 1, 2013, and advised Mr. Ramey that she had spoken to Mr. Nordell and DOC was willing to provide *some* of the requested information, but could not specify

5

exactly what would be provided.  However, Ms. Fredericks requested until the week of July 15, 2013, to provide the promised documents to Plaintiffs' counsel.  Mr. Ramey agreed to provide defense counsel with additional time.

Defendants did not provide the promised information by the week of July 15, 2013, as agreed.  Accordingly, on July 23 and 25, 2013, Mr. Ramey again contacted defense counsel to inquire about the status of Defendants' production.  During those conversations, defense counsel stated that a CD containing responsive information would be delivered to Plaintiffs' counsel on July 26, 2013.  The CD never arrived.

On July 29, 2013, Mr. Ramey again contacted defense counsel regarding the non-production of the promised CD.  During that conversation, Mr. Ramey was advised that Defendants had apparently been unable to properly format the CD and save the data onto it, and that once the information technology personnel were able to resolve the issue in a "day or two," the CD would be delivered.  Once again, the CD never arrived.

On August 9 and 19, 2013, Mr. Ramey again contacted Ms. Fredericks regarding the status of the delay.  Ms. Fredericks responded on August 19, 2013, that she was "sorry," but that she thought "IT [had] lost [her] initial request."  *Exhibit 9*, *E-mail from Fredericks to Ramey*, *Aug. 19, 2013* (hereinafter "*Ex. 9*").  She indicated that she would re-submit her request and, in the meantime, would provide information that she did have on August 20, 2013.  *Id*.  The promised information did not arrive on August 20, 2013.  Ms. Fredericks telephoned Mr. Ramey that afternoon and explained that there had been some additional technical issue but promised to deliver the information on the morning

6

of August 21, 2013. As of the date of this filing, the promised information has still not arrived, and Defendants have not provided any explanation for the continued delay, nor have Defendants provided any details regarding what information they will provide to class counsel. On August 30, 2013, Mr. Ramey e-mailed Ms. Fredericks to inform her that Plaintiffs' counsel's is filing the present Motion. *Exhibit 10, E-mail from Ramey to Fredericks, Aug. 30, 2013* (hereinafter "*Ex. 10*").

As the record demonstrates, Plaintiffs have attempted to no avail to work in good faith with defense counsel for eight months to secure responses to their first set of limited discovery requests without court intervention.

### III.     DISCOVERY SOUGHT

By this Motion, Plaintiffs seek an order compelling Defendants' Responses to Plaintiffs' First Set of "Monitoring Period" Discovery Requests, attached in their entirety at *Ex. 3*. In general, Plaintiffs seek the following limited information and documents:

1. Identification of the records and/or databases presently maintained by the ADA Inmate Coordinator ("AIC") regarding inmates with disabilities;

2. Identification of the records and/or databases presently maintained by DOC regarding inmates with disabilities (other than those maintained by the AIC);

3. Identification of the records and/or databases presently maintained by DOC regarding: (a) inmates who have contacted the AIC; (b) inmates who have requested or been referred for a disability classification or accommodation but who were determined not to qualify; and (c) inmates whose requests or referrals regarding disability status are pending;

4. A current list of all inmates designated as having a disability which identifies each such inmate's disability classification and the facility where the inmate is housed; and

5. A current list of all inmates who have been screened for and/or who have requested or been referred for screening for a disability since December 1, 2008, which identifies each such inmate's disability classification and the facility where the inmate is housed.

Further, Plaintiffs' counsel anticipate that additional discovery will be necessary as their monitoring efforts continue. Plaintiffs' limited first set of discovery requests were designed merely to learn what information is currently being collected and maintained by DOC to enable class counsel to appropriately tailor later discovery requests to elicit further relevant information. At this stage of the proceedings, relevant information includes that which demonstrates the extent to which Defendants are providing disabled inmates with "'access to programs and services'; protection from 'exclusion' or the 'denial' of benefits on the basis of disability; and the provision of comparable programs, services and benefits throughout comparable DOC facilities. *Findings,* p. 7.

Thus, because Defendants' have asserted the position that Plaintiffs' are not entitled to *any* discovery at this stage of the proceedings, and have failed to respond at all to Plaintiffs' May 8, 2013 discovery requests, by this Motion Plaintiffs' counsel also seek this Court's order directing that Plaintiffs are entitled to further discovery relevant to class counsel's evaluation of whether Defendants continue to be in "substantial

compliance" with the Remedial Plan, and for an order extending the expiration of the monitoring period in this case by an amount of time equal to the number of days between June 10, 2013 – the date that Defendants' responses to Plaintiffs' first set of discovery requests were due – and, if the Court grants this Motion, the date of such Order.

## IV.   ARGUMENT

Defendants' assertion that Plaintiffs are not entitled to *any* discovery during the monitoring period in this case is without merit. *See Ex. 6*. Discovery is routinely permitted during the monitoring phase of institutional reform litigation such as this, and the Remedial Plan contemplates counsel's access to information that is reasonably necessary to effectively monitor Defendants' continued compliance efforts.

### A. DISCOVERY IS ROUTINELY PERMITTED DURING THE MONITORING PHASE OF INSTITUTIONAL REFORM LITIGATION.

In complex institutional reform litigation such as this, courts are justifiably concerned that remedial plans may prove ineffective to remedy violations of class members' rights absent some means to monitor compliance with their terms. *Berry v. Sch. Dist.*, 184 F.R.D. 93, 102 (W.D. Mich. 1998) (internal citations omitted). Accordingly, courts place "great weight" on the parties' agreement to a monitoring period as part of a remedial plan, finding such monitoring "essential" to its successful implementation.[2]  *Id.*

---

[2] In fact, oversight by class counsel during the compliance and monitoring periods was a factor before the Court in this case during the August 2003 Rule 23(e) Fairness Hearing, following which Judge Nottingham approved the parties' Remedial Plan. *Submission of the Plaintiff Class in Support of Proposed Class Action Settlement Agreement*, p. 6 [Doc. 518].

9

It is axiomatic, then, that a monitoring period *necessitates* discovery of information permitting a meaningful evaluation of the status of compliance efforts. Indeed, courts in this circuit and elsewhere *routinely* permit discovery during the monitoring period in prisoner class action litigation, recognizing the necessity of such discovery to effective monitoring. For example, in a class action lawsuit by plaintiff-inmates against correctional officials for Eighth Amendment violations, plaintiff-inmates were granted leave to engage in formal discovery, *without limitation on the number of interrogatories to be posed*, "in order to fully understand and monitor the [d]efendants' compliance with the Remedial Plan." *Skinner v. Uphoff*, 410 F. Supp. 2d 1104, 1111 (D. Wyo. 2006). The court reasoned that the plaintiff inmates "must be allowed the opportunity for discovery" to enable them to present evidence of the "existence or non-existence of ongoing violations" to assist the court in ruling on the correctional defendants' motion for termination of the Remedial Plan at the conclusion of the monitoring period. *Id.* at 1111-12. *See also Ginest v. Bd. of Cnty. Comm'rs*, 295 F. Supp. 2d 1274, 1276 (D. Wyo. 2004) (party opposing termination must be given opportunity to discover evidence of current and ongoing violations); *Regan v. Cnty. of Salt Lake*, No. 2:80-CV-131, 2006 U.S. Dist. LEXIS 89472, at *11-12 (D. Utah Dec. 11, 2006) (plaintiffs were afforded ample opportunity to discover and present evidence of current and ongoing violations of their federal rights); *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1342 (11th Cir.), *cert. denied*, 528 U.S. 1061 (1999) (failure to provide party opposing termination with opportunity to present evidence warranted reversal of court's termination order); *Benjamin v. Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999) (district

court must allow plaintiffs opportunity to show current and ongoing violations of their federal rights prior to termination of consent decree).

Likewise, expansive discovery is consistently permitted during the monitoring phase of other types of institutional reform litigation. For instance, during the monitoring period in a housing desegregation class action, the court directed that the monitor have "*complete and unrestricted access to the [defendants'] records*… including statistical data, contracts, reports, correspondence, plans, advertisements, notices, compliance reviews, and other relevant documents…" and further vested the monitor with "*plenary authority to interview*…[defendants'] employees and staff…" *Young v. Pierce*, 640 F. Supp. 1476, 1477-78 (E.D. Tex. 1986), *vacated on other grounds*, 822 F.2d 1368 (5th Cir. 1987) (emphasis added). *See also R.C. v. Walley*, 270 Fed. Appx. 989, 991 (11th Cir. 2008) (approving re-opening of discovery during monitoring phase, including allowing plaintiffs to take depositions and to propound discovery requests eliciting more than 50,000 documents); *Access Now, Inc. v. AMH CGH, Inc.*, No. 98-30004-CIV, 2001 U.S. Dist. LEXIS 12876, at *2, *41-52 (S.D. Fla. May 8, 2001) (approving consent decree permitting formal discovery during monitoring period to determine status of compliance with ADA). Like the monitoring parties in these cases have been, class counsel are entitled to discovery during the monitoring period here so that they can effectively monitor DOC's compliance with the Remedial Plan.

### B. THE REMEDIAL PLAN CONTEMPLATES PLAINTIFFS' ENTITLEMENT TO DISCOVERY DURING THE MONITORING PERIOD.

Moreover, Defendants' contention that the "plain language" of the Remedial Plan permits class counsel's "entry onto premises two times annually per designated facility" for monitoring purposes, *and nothing more*, is disingenuous. *See Ex. 6.* The court-approved monitoring period of the Remedial Plan is not so hollow. Rather, the Plan provision contemplates access to information well beyond class counsel's mere "entry onto premises." Specifically, it provides, in pertinent part:

> Once it has been determined that DOC is in substantial compliance with this Remedial Plan, then a two year "Monitoring Period" commences *during which class counsel will monitor the designated facilities to ensure compliance is maintained* during this period. During the Monitoring Period, class counsel may tour each designated facility up to two times a year to ensure compliance. **In addition**, *class counsel may spend the time and resources* **reasonably necessary to monitor compliance** during the Compliance period.

*Remedial Plan* § XXXI (emphasis added).

The broad language permitting class counsel to spend the "time and resources reasonably necessary to monitor compliance" during this phase of the proceedings, *in addition to* conducting bi-annual tours of each designated facility plainly demonstrates the parties' intent that the Monitoring Period would entail more than merely facility visits, and affords class counsel the discretion to undertake "reasonably necessary" means to discharge their monitoring responsibilities. Defendants' incredibly narrow reading constricting class counsel's monitoring activity to mere "entry onto premises" undermines the value of the monitoring period and frustrates the purposes of the parties' agreement.

Moreover, despite any express language providing for discovery during the "Compliance Period" of the Plan, during which class counsel were charged with evaluating Defendants' substantial compliance with the Remedial Plan, class counsel were permitted to, and did, engage in considerable discovery to evaluate Defendants' compliance.[3]  Further, in their 2006 and 2008 Stipulations, the parties expressly agreed "to establish discovery procedures to provide counsel for the Plaintiff class discovery on all facilities and all aspects of the Defendants' compliance with the Remedial Plan." *Amended Stipulation and Order Regarding Status of Compliance by DOC with Remedial Plan* § (A)(3) [Doc. 2228]; *Stipulation Regarding Status of Compliance by the Colorado Department of Corrections with the Montez Remedial Plan* § D [Doc. 3326]. Consequently, Plaintiffs' counsel propounded at least four sets of formal discovery on Defendants during the Compliance Period and received over 55,000 responsive documents.  In light of the parties' expansive interpretation of the discovery permitted during the Compliance Period in this case, Defendants cannot now argue that the language appearing in the very next paragraph and the very same section of the agreement was intended to be given the narrowest conceivable construction to prevent Plaintiffs from conducting *any* "written or other discovery."  *See Ex. 6.*

Finally, to the extent that Defendants are not complying with the Plan during this phase of the proceedings, class counsel are obligated to file an objection alleging non-compliance prior to the expiration of the Monitoring Period on October 1, 2014.

---

[3] The Plan provides broadly that "a review will be made by counsel for the parties and their experts…to determine if substantial compliance has been achieved."  *Remedial Plan* § XXXI.

*Remedial Plan* § XXXI.  Without discovery, counsel will be unable to present an objection alleging systemic non-compliance based on anything other than the anecdotal stories of some members of the Plaintiff-class.  This Court may find such anecdotal evidence, without more, insufficient to demonstrate non-compliance and order the continuation of the Remedial Plan, much as Judge Kane found that similar anecdotal evidence, without more, was insufficient to establish Defendants' failure to achieve "substantial compliance."  *See Findings,* pp. 9, 13 ("anecdotes and incidents collected and catalogued by Plaintiffs" and "laundry list of specific noncompliance issues" based on "individualized problems" insufficient to demonstrate non-compliance).

Accordingly, precluding class counsel from discovering relevant information and records from Defendants during the Monitoring Period would be highly prejudicial to the plaintiff-class members' rights under the Plan.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs move this Court for an order directing that Plaintiffs are entitled to discovery of information during the monitoring period relevant to whether Defendants continue to be in "substantial compliance" with the Remedial Plan.  Further, Plaintiffs' respectfully request that this Court enter an order compelling Defendants' responses to Plaintiffs' first set of discovery requests during the monitoring period.  Plaintiffs' also request that this Court extend the monitoring period in this case by an amount of time equal to the number of days between June 10, 2013 and, if this Motion is granted, the date of such Order, and for such further relief as this Court deems just and proper.

Respectfully submitted this 30th day of August 2013.

          KING & GREISEN, LLP

          *s/ Paula Greisen*
          Paula Greisen
          Jennifer Weiser Bezoza
          1670 York Street
          Denver, CO  80206
          (303) 298-9878 telephone
          (303) 298-9879 facsimile
          greisen@kinggreisen.com
          bezoza@kinggreisen.com

          Edward T. Ramey
          Heizer Paul Grueskin, LLP
          2401 15th Street, Suite 300
          Denver, CO 80202
          (303) 595-4747 telephone
          (303) 595-4750 facsimile
          eramey@hpgfirm.com

          Lara E. Baker
          Foster Graham Milstein & Calisher, LLP
          360 S. Garfield Street, 6th Floor
          Denver, CO  80209
          (303) 333-9810 telephone
          (303) 333-9786 facsimile
          lmarks@fostergraham.com

          Blain D. Myhre
          Blain D. Myhre, P.C.
          P.O. Box 3600
          Englewood, CO  80155
          (303) 250-3932 telephone
          blainmyhre@gmail.com

          *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 30, 2013, the foregoing **PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS DURING THE MONITORING PERIOD,** was filed electronically using the U.S. Court's CM/ECF, which caused a copy of the same to be served electronically to the following:

James X. Quinn, Esq.
First Assistant Attorney General
Colorado Department of Law
(james.quinn@state.co.us)

Jacquelynn N. Rich Fredericks
Colorado Department of Law
(jacquelynn.fredericks@state.co.us)

*Attorneys for Defendants*

                                          *s/ Laurie A. Mool*