IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

## RESPONSE TO CLASS COUNSELS' MOTION TO COMPEL DISCOVERY (DOC. 5407)

Defendants, through the Colorado Attorney General, respectfully submit this Response to Class Counsels' Motion to Compel Discovery (Doc. 5407).

## BACKGROUND

1. On August 30, 2013, Class Counsel filed their Motion to Compel Discovery. Doc. 5407. Since that time, Defendants filed a series of Motion(s) for Extension of Time to file their Response to Class Counsels' Motion to Compel Discovery. In those Motion(s), Defendants indicated that the parties were endeavoring to work together in order to obviate the need for further briefing or Court intervention. *Id.* The parties continue to work together to resolve their disagreement with respect to the place of discovery during the Monitoring Period. However, as the parties have not reached a full and final agreement as to the issues raised in Doc. 5407, Defendants also hereby respectfully respond to the pending Motion filed by Class Counsel.

1

## ARGUMENT

**I.     Class Counsel failed to confer in good faith prior to filing their motion.**

2.     As an initial matter, Class Counsel failed to properly confer with respect to their present motion prior to its filing. Indeed, despite the certification pursuant to D.C. Colo. LCivR. 7.1(A), to the contrary, neither Ms. Greisen nor her co-counsel actually made any effort to reasonably confer with undersigned Defense Counsel *prior* to filing their Motion to Compel. Indeed, Ms. Greisen herself *never* spoke to undersigned prior to filing the motion.

3.     Rather, mere minutes before filing the motion, Class Counsel sent undersigned an email at her office. In the time it took undersigned to print the correspondence and walk across the hall to meet with her co-counsel, Mr. Quinn, Class Counsel had already filed their motion. This completely divested Defendants of *any* realistic opportunity to respond. Had undersigned been out to court, she would not have even received the correspondence until well after Plaintiffs' motion had been filed.

4.     Such a slapdash "conferral" hardly seems to comply with either the spirit or letter of D.C. Colo. LCivR. 7.1(A), which states, "The court will not consider any motion… unless counsel for the moving party… made *reasonable, good-faith efforts* to confer with opposing counsel… to resolve the disputed matter." (emphasis added).

5.     Upon returning to her own office and discovering Class Counsel had already filed their motion, undersigned corresponded with Plaintiffs' Counsel and expressed these very concerns, informed counsel they were able to pick up the

2

previously prepared disks of voluntary disclosures at their convenience,[1] and requested that Plaintiffs withdraw their hastily filed motion.

6. Despite further similar requests from undersigned, an in-person meeting between the parties, and the provision of further information, Class Counsel has declined to do so. Indeed, during the October 25, 2013, in-person meeting, Class Counsel articulated its continued belief that it is entitled to expansive formalized discovery and access to myriad systems and databases presently kept by CDOC, then, further reiterated its desire to "let the Court decide."

## II. The Motion to Compel is Moot.

7. Class Counsels' Motion to Compel Discovery is moot. Indeed, although Class Counsel sought to obtain formal, written discovery, and although Defendants deny vehemently that Plaintiffs are entitled to any such process, Defendants gathered, and produced, a large quantity of relevant information.[2]

8. Furthermore, in an effort to speed the voluntary disclosure and exchange of information amongst the parties, Defendants reviewed the improper discovery requests and provided the **underlying documents, resources, and AIC *Montez* Database** as opposed to engaging in protracted back and forth of compiling lists and then separately producing listed items.

---

[1] Despite making these disks readily available, days passed before Class Counsel picked up the voluntary disclosures from Defendants. Accordingly, it does not appear they were particularly eager to receive relevant and responsive documentation when provided.

[2] Class Counsel fails to take into account that the Office of the Attorney General underwent a large move the week of Ms. Greisen's requested January 2013 meeting. Similarly, counsel appears to disregard that CDOC's Executive Director, Mr. Clements, was murdered around the precise time when they complain they "received no response" to a particular request for information. *See* Doc. 5407, p. 4. These extenuating circumstances are **not** evidence of "defense counsel's unwillingness to meet." *Id.*

9. This proactive approach obviated the need for unnecessary steps comprised of list-making which would only have been followed by further requests predicated upon the contents of the lists.

10. Certainly, the gathering of such an expanse of information took a number of weeks[3] in order to accomplish. But, this comprehensive approach also provided a more whole and complete portraiture of the processes and procedures CDOC established, implemented, and presently maintains on behalf of their offender population in order to ensure continued compliance with the ADA and the Remedial Plan.

11. All propounded "discovery" requests have already been addressed:

- On October 25, 2013, the parties met in-person and undersigned explained the databases and records presently maintained by the AIC regarding inmate's with disabilities as specifically requested in Plaintiff's "discovery" requests. *See* Doc. 5407, pp. 7, 1-3 (requests 1-3).

- That same information (Doc. 5407, pp. 7, 3(a)-(c) (request 3)) was available to Class Counsel and searchable within the previously disclosed AIC *Montez* Database.

---

[3] Undersigned counsel was out of the office very ill due to unavoidable and severe pregnancy related hyperemesis gravidarum on a number of occasions in July and August of 2013. Despite this, counsel attempted to maintain communication with Mr. Ramey regarding the status of Defendants voluntary disclosures. *See* **Exhibit A-10**, Correspondence(s) between E. Ramey and J. Rich Fredericks. In addition, as her pregnancy was still in a very early stage, undersigned counsel attempted to tactfully convey her situation and explain her resultant absence impacted her ability to review the large quantity of information Defendants intended to disclose. Furthermore, once information was received by the OAG, the information technology department struggled to format the AIC *Montez* Database to disk for disclosure to Plaintiffs which created some additional delay.

- In addition, "[a] current list of all inmates designated as having a disability which identifies each such inmate's disability classification and the facility where the inmate is housed" (Doc. 5407, pp. 8, 4 (request 4) is provided to Class Counsel prior to *every* one of their facility visits.  See **Exhibit A-4**, Example Daily Roster.

- A list of inmates who requested screening (Doc. 5407, pp. 8, 5 (request 5) is similarly contained within the previously disclosed AIC *Montez* Database.[4]

12.  As Plaintiffs have previously received the information sought, their Motion to Compel Discovery is moot.

### III.  Plaintiffs are *not* entitled to formal discovery.

13.  Throughout this litigation, Class Counsel has insisted, and this Court has consistently concluded, that the Remedial Plan should be interpreted as a contract. Accordingly, both parties are held strictly to the negotiated and codified provisions of the Remedial Plan.

14.  Pursuant to the plain language of the Remedial Plan Class Counsels' oversight during the Monitoring Phase shall consist of the following:

> … class counsel will monitor the designated facilities to ensure compliance is maintained during this period.  During the Monitoring Period, class counsel may tour each designated facility up to two times a year to ensure compliance.[5]

---

[4] It is of note that Plaintiffs seek irrelevant and overly broad information dating back to 2008 although their Monitoring Period duties pertain *solely* to the time period between October 1, 2012, and October 1, 2014.  Despite this overly broad request, the AIC *Montez* Database covers the entire time period requested by Class Counsel.

[5] Class Counsel's mistaken reliance upon the subsequent sentence which mentions "spend[ing] the time and resources reasonably necessary to monitor compliance **during the Compliance Period**" specifically relates to the Compliance Period, **NOT** the Monitoring Period.  See Remedial Plan, § XXXI (emphasis added).  Presently, the Parties are in the Monitoring Period ***not*** the Compliance Period.

5

Remedial Plan, p. 28, ¶ XXXI.  Pursuant to that limited and clear contractual language, Class Counsel can, and has been permitted to visit their clients at designated facilities. If Plaintiffs desired further, more formal discovery, they should have bargained for such during the negotiation of the Remedial Plan which governs this litigation .

15. Here, there is absolutely **no** provision for formalized discovery during the Monitoring Period.[6]  Furthermore, "[a]t some point … discovery must come to an end." *Silverstein v. Federal Bureau of Prisons*, 2011 WL 588717, *3 (D.Colo. Feb. 10, 2011). It would seem that point is reached, where, as here, this case has been administratively closed since September of 2003, and intensive and expansive discovery was undertaken prior to the 2010 32 day compliance hearing.  See *Brown v. Plata*, 131 S. Ct. 1910 (U.S. 2011) (Cutting off discovery and excluding evidence not pertinent is appropriate and within the court's sound discretion. Orderly trial management may require clean distinction between "litigation of the merits and the remedy.")

16. In light of the Court's September 11, 2012, Order finding substantial compliance, the present "discovery requests" may be analogized to a request for post-judgment discovery.  Fed. R. Civ. P. 69(a)(2) provides that a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."  Courts have interpreted the scope of post-judgment discovery broadly to include the discovery of assets upon which execution can be made.  See *Hartford Fire Ins. Co. v. P & H Cattle Co.*, 2009 U.S. Dist. LEXIS 82667, 2009 WL 2951120, at *7 (D. Kan. 2009) (citing *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995)).  But, Class Counsel

---

[6] Plaintiffs attempt to find shelter within the 2006 and 2008 Stipulations which similarly were tailored to the initial *establishment* of compliance – which this Court has already ruled upon (*See* Doc. 5314) – not Monitoring.

provides no authority that Rule 69 can be used outside the situation of a judgment creditor using discovery tools in the enforcement of a monetary judgment.

17. "Due process does not require that parties be allowed to present any evidence that they want to, at any time, regarding any subject matter…" *Miller v. Cudahy Co.*, 656 F. Supp. 316, 334 (D. Kan. 1987). Similarly, Plaintiffs should not be entitled to obtain unlimited materials during this Monitoring Period, simply because they desire them. Although Plaintiffs try to minimize the formal discovery propounded (and theoretically sought moving forward) as "limited" and "only four interrogatories and two requests for production of documents" (Doc. 5407, p. 4) these "limited" requests were couched in the broadest possible terms and further sought to delve into matters not calculated to lead to anything pertinent but would require great time and expense on the part of Defendants (they also contained *numerous* sub-parts, not delineated in Plaintiffs' present motion). In addition, the overly broad requests would operate to unnecessarily increase the costs of this present litigation. Moreover, where the Remedial Plan does not provide for **any** formal discovery during the Monitoring Period, the numerosity of the propounded requests is inapposite. In addition, where no discovery is permitted or provided for there is no "deadline" (Doc. 5407, p. 5) by which Defendants were obliged to respond.[7]

---

[7] It is of note that none of the case law cited by Plaintiffs for the proposition that they are "entitled" to discovery comes from the District of Colorado or Tenth Circuit. In addition, pursuant to the Remedial Plan, the Monitoring Period will *automatically* terminate on October 1, 2014. This is distinguishable from *Skinner v. Uphoff*, 410 F. Supp. 2d 1104 (D. Wyo. 2006), wherein Defendants' motion to terminate was under evaluation by that court. Furthermore, in that case, the record was deemed inadequate. Here, the parties already agreed that "the Plan was to expire by its own terms." *See* Doc. 5314, p. 3. In addition, Defendants have provided a wealth of information to Plaintiffs to-date and there is no evidence they will fail to continue to voluntarily provide pertinent information to Plaintiffs. *See Regan v. County of Salt Lake*, 2006 U.S. Dist. LEXIS 89472 (D. Utah Dec. 11, 2006) (terminating consent decree without permitting

7

18.     Regardless of the lack of formalized discovery provided for within the Remedial Plan, Defendants have undertaken a general policy of cooperation and transparency in an effort to aid Class Counsel in the good faith discharge of their monitoring duties.  Accordingly, Plaintiffs are being afforded ample opportunity to obtain "sufficient" relevant evidence.  *See Regan v. County of Salt Lake*, 2006 U.S. Dist. LEXIS 89472 (D. Utah Dec. 11, 2006).  Thus, no more formalized process is required.  *See Cagle v Hutto*, 177 F3d 253 (4th Cir. Va. 1999) (Hearing regarding existence of present violations of federal law not mandatory prerequisite to termination of consent decree pursuant to 18 USCS § 3626(b)(2)).

19.     Plaintiffs' argument that they received "more" during the Compliance Period is unavailing.  Indeed, the *purpose* of the Compliance Period was markedly different than that of the Monitoring Period.  The goal has shifted from "determin[ing] if substantial compliance has been achieved."  *See* Remedial Plan § XXXI.  At present, the inherent purpose is to *monitor maintenance* of substantial compliance as determined by Judge Kane.  *See* Doc. 5314.

20.     The prior period was markedly broader and thus, Class Counsel was afforded greater opportunity to receive larger quantities of information.  Certainly, Plaintiffs are not entitled to sweeping formal discovery to the tune of "55,000 responsive documents" (Doc 5407, p. 13).  Meanwhile, the goal of the present period is significantly *narrower* and accordingly, the range of access and information should be appropriately tailored to fit the aim presently at hand.

---

submission of additional evidence and declining to follow the court in *Ginest v. Bd. Of Cnty. Comm'rs*, 295 F. Supp. 2d 1274 (D. Wyo. 2004) (where discovery granted because of specific allegations of current, on-going violations)).

8

### IV. Class Counsel has been afforded access to the class.

21. It is disingenuous to allege that Defendants have been unresponsive to Class Counsel's efforts to discharge their duties diligently during the Monitoring Period.

22. Although the plain language of the Remedial Plan only contemplates *two* visits per facility by Class Counsel, CDOC has diplomatically invited Class Counsel to visit as often as necessary in order to accomplish their monitoring functions and meet with their class members. *See* **Exhibit A-1**, Letter, dated June 10, 2013.

23. Indeed, Class Counsel has made nearly a dozen such visits in the past three months. *See* **Exhibit A-2**, Visit Chart.

24. During these visits, offenders are notified in advance of the opportunity to meet with counsel. Furthermore, the class members are excused from their jobs and/or programming during the meetings in order to facilitate full and fair access. Moreover, staff is excluded from these meetings in order to foster open and honest communication between class members and Class Counsel(s). *Id.*

### V. Defendants provided Class Counsel adequate, extensive voluntary disclosures.

25. Defendants have provided and continue to provide voluntary disclosures of relevant on-point information related to their continued compliance with the Remedial Plan and each of its subcategories.

26. In the instant matter, Defendants' policy of open exchange of information speaks to a desire to amicably navigate the Monitoring Period and work together with Class Counsel. Furthermore, the informal efforts undertaken and encouraged by Defendants operate to reduce the expense to both parties. Meanwhile, the broad, formalized approach sought by Class Counsel is both unnecessary, bears in mind no

9

cognizable limitations in scope or number, and operates to exponentially drive up the costs to all parties.[8]

27.     Defendants have proactively provided "Quarterly Reports" to Class Counsel.  Each such report is comprised of a number of categories of information which speak directly to the systemic monitoring goals of this time period including:

- Request(s) for Accommodation (broken down by month);
- Request(s) for Class Member Screening (broken down by month);
- Offender Correspondence received by the AIC (broken down by month);
- Step I and Step II ADA Grievances (broken down by month)

*See* **Exhibit A-3**, Example Quarterly Report.

28.     Prior to each of their facility visits, Class Counsel is further provided with a "Daily Roster" of all offenders housed at that facility (and every facility) which also includes information with respect to those individual class members' disability designations amongst the four categories.  *See* **Exhibit A-4**, Example Daily Roster.

29.     Defendants provided Class Counsel *several thousand pages* of information as voluntary disclosers in a good faith effort to help Plaintiffs' counsel discharge their duties during the Monitoring Period.  This information was further organized by section and subsection of the Remedial Plan in order to facilitate ease of access and readability.  Information and items disclosed included, but were not limited to, the following:

- copies of current policies;

---

[8] Indeed, it appears Plaintiffs presently seek the very same anecdotal, one-off exceptions to continued compliance which this Court already found insufficient with novel requests to review the individual file(s) of *every* class member.  *See* **Exhibit A-12**, E. Ramey correspondence 11/2/13.

- metrics regarding responsibilities for evaluation of class members;
- reports articulating recent grievance activity and trends;
- examples of intake forms for each of the four categories;
- offender orientation materials;
- staff training materials;
- transcripts utilized by intake officers at DRDC when screening incoming offenders in both English and Spanish;
- an Excel spreadsheet with *over* 15,000 entries between July of 2008 and August of 2013, detailing the type of activity taken (new screening, revision, etc.), by whom (AIC, CMO, etc.) and type of disability which is further searchable by offender surname or CDOC inmate number;
- information relevant to the process in place for tracking ADA offenders prior to movement between facilities;
- Copies of recent ADA related audits;
- A list of offenders who had made requests for/or received compensation for delays in provision of DME in the past quarter;
- A comprehensive breakdown of all class members by facility placement further identified by each of the four disability categories (with over 2,300 entries) for three different months;
- Examples of current ADA Litigation Resolution forms provided to offenders;
- Copies of provider forms used during screenings of each of the four categories;
- Photographs of assistive devices/products;

- Copies of purchase requisitions and invoices for sign language classes and interpreters;
- A list of all available accommodations;
- A copy of the ATS (accommodation tracking system) User Guide which describes that system's capabilities and process(es);
- Information regarding library services for disabled offenders;
- Dozens of offender job descriptions;
- Documentation regarding diabetic education training provided to offenders;
- Awareness training materials and examples of Power Point Presentations given to staff, including audio and video clips;
- Examples of receipts from wheelchair clinics;
- Examples of how housing restrictions are documented;
- Example requests for outside medical professional consultation;
- An Excel spreadsheet documenting refunds for co-pay clinic visits for offenders for the past quarter;

Still, despite the provision of these wide-ranging sources and documents, Plaintiffs maintain that their initial requests for "lists" have not been met.

30. Most availing, Defendants provided Class Counsel with their own copy of the AIC *Montez* Database. This database is an Access-based environment with over fifteen thousand recorded entries which contains current, relevant information regarding class members. *See* **Exhibit A-5**, Letter to Class Counsel, dated 11/8/13, p. 2. The AIC *Montez* Database tracks offenders' initial contacts, DRDC/intake temporary accommodations, class member/screening and AR status. Again, despite your

12

averments to the contrary, the database contains information much more recent than for 2008-2009. *Id.* The AIC uses this very database on a daily basis. *Id.*

32. Defendants have further undertaken to carefully explain how to navigate this database in order to readily view the most current entries. *See* **Exhibit A-6**, Email to Class Counsel, dated 10/25/13.

32. In addition, on October 25, 2013, undersigned counsel met in-person for approximately 2.5 hours with several of Plaintiffs' counsel. Prior to this meeting, undersigned made numerous written and oral requests to Class Counsel for a list of any and all questions regarding current programming and systems related to the provision of accommodations and resources for ADA class members. *See* **Exhibit A-7**, Email(s) from J. Rich Fredericks.

33. Despite these numerous requests, no formal list of questions was submitted in advance of the meeting. Instead, shortly before the meeting, Ms. Greisen sent an email with a handful of broad questions. *See* **Exhibit A-8**, Email from P. Greisen. Accordingly, undersigned met with her clients to prepare answers to be provided at the meeting.

34. Class Counsel arrived at the meeting and disclosed that while they had a typed four-page list of questions in-hand, that they would not provide a copy to undersigned. Unfortunately, it is very difficult to answer un-posed questions.

35. Subsequently, another short list of questions was remitted to undersigned. *See* **Exhibit A-9**, Email from P. Greisen. As a result, Defendants prepared a through response and included additional documentation as requested. *See* **Exhibit A-5**, Letter to Class Counsel, dated 11/8/13. Indeed, Defendants maintain their articulated

13

commitment to voluntarily engage in informal disclosures with Class Counsel with the caveat that they are not willing to provide broad, unfettered access to irrelevant systems and databases pursuant to broad fishing expeditions which are unrelated to the narrowly tailored purpose of monitoring systemic compliance during the Monitoring Period. *Id*. at p. 5. Like the defendants in *Regan v. County of Salt Lake*, 2006 U.S. Dist. LEXIS 89472 (D. Utah Dec. 11, 2006), CDOC Defendants are cooperating with Plaintiffs, providing voluntary responsive information, and there is no evidence Defendants have attempted to impede Class Counsel in meeting with their clients as provided by the Remedial Plan.

36. Federal Rule of Civil Procedure 26(c) authorizes district courts to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." *See* F.R.C.P. 26(c). Such discretion should be exercised here in order to avoid the oppressive overbroad stricture of unlimited formal discovery sought by Plaintiffs, alleviate undue burden upon Defendants, and expense upon all parties. *See* Harvey v Schoen, 245 F3d 718 (8th Cir. Minn. 2001) (denial of discovery re potential on-going violations not an abuse of discretion).

37. The Federal Rules of Civil Procedure give the Court considerable discretion to manage the discovery process in a way that promotes the "just, speedy, and inexpensive determination of every action." *Greeley Publ'g Co. v. Hergert*, 233 F.R.D. 607, 612 (D. Colo. 2006) (*citing* Fed.R.Civ.P. 1). This includes "considerable discretion over the timing of discovery." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Coors*, 357 F. Supp. 2d 1277, 1280 (D. Colo. 2004). Again, it is Defendants' position that pursuant to the plain language of the Remedial Plan – which governs the instant

14

litigation – **no formal discovery** is provided for during the Monitoring Period. To the extent this Court is inclined to provide some limited formal discovery, Defendants would respectfully request that such discovery be limited and narrowly tailored in scope.

### VI. The Monitoring Period should not be extended.

38. This case should not persist into perpetuity. In the words of Judge Kane, "The two-year Monitoring-Period triggered by a finding of "Substantial Compliance" shall commence on October 1, 2012, after which the Plan will *go quietly into its good night and the case dismissed.*" Doc. 5314, p. 4 (emphasis added). It is undeniable: this more than two decade old piece of litigation is winding down. What is more, this case *should* wind down.

39. The Court's prior finding of substantial compliance was made notwithstanding the absence of systemic perfection. *See* Doc. 5314, p. 3.

40. A present desire on behalf of Class Counsel to re-litigate the matter, delve into minutia, or otherwise engage in an unstructured fishing expedition into immaterial materials, should not be entertained by this Court. Moreover, to the extent Class Counsel persists in seeking "discovery" in furtherance of such goals, Defendants decision not to entertain such is not grounds to extend the contractually agreed upon **two year** Monitoring Period.

**WHEREFORE**, for all of the reasons listed above, Defendants respectfully request that the Motion to Compel Discovery (Doc. 5407) be denied.

Respectfully submitted this 8th day of November 2013.

JOHN W. SUTHERS
Attorney General

/s/ Jacquelynn N. Rich Fredericks
JACQUELYNN N. RICH FREDERICKS, #39932
Assistant Attorney General
Civil Litigation & Employment Law Section
Attorneys for Defendant
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone:  (720) 508-6603

## CERTIFICATE OF SERVICE

I certify that on November 8, 2013, I filed the foregoing via ECF which will serve electronic copies addressed as follows:

KING & GREISEN, LLP
Paula Greisen
Jennifer Weiser Bezoza
1670 York Street
Denver, CO 80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
greisen@kinggreisen.com
bezoza@kinggreisen.com

Edward T. Ramey
Heizer Paul Grueskin, LLP
2401 15th Street, Suite 300
Denver, CO 80202
(303) 595-4747 telephone
(303) 595-4750 facsimile
eramey@hpgfirm.com

Lara E. Baker
Foster Graham Milstein & Calisher, LLP
360 S. Garfield Street, 6th Floor
Denver, CO 80209
(303) 333-9810 telephone
(303) 333-9786 facsimile
lmarks@fostergraham.com

Blain D. Myhre
Blain D. Myhre, P.C.
P.O. Box 3600
Englewood, CO 80155
(303) 250-3932 telephone
blainmyhre@gmail.com
*Attorneys for Plaintiffs*

s/ Jacquelynn N. Rich Fredericks