

**JOHN W. SUTHERS**
Attorney General

**CYNTHIA H. COFFMAN**
Chief Deputy Attorney General

**DANIEL D. DOMENICO**
Solicitor General

STATE OF COLORADO
DEPARTMENT OF LAW

OFFICE OF THE ATTORNEY
GENERAL

November 8, 2013

RALPH L. CARR COLORADO
JUDICIAL CENTER
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

Ms. Paula Greisen
KING & GREISEN, LLP
1670 York Street
Denver, CO 80206

    RE:   *Montez v. Hickenlooper, et al.* 92-CV00870-CMA

Dear Ms. Greisen,

    I am in receipt of your emailed correspondence from October 29, 2013. I would like to take a few moments to address each of your points in turn.

    Initially, it appears we may have had a misunderstanding regarding the structure of our recent meeting. Indeed, although the purpose was for Defendants to provide Plaintiffs answers to some of their questions, AIC Defendants did **not** agree to personally attend the meeting. Rather, Defense Counsel agreed to meet with Class Counsel in order to address pre-submitted questions, which I would have posed to my clients in advance in order to provide responses during our meeting.

    Despite my multiple written and verbal requests to Class Counsel for a list of intended questions or areas of concern, no such list was submitted. Moreover, during the meeting, Defense Counsel repeatedly requested that such a list be provided so that a more comprehensive response to Class Counsel's queries might be compiled and provided. Indeed, it is very difficult to provide answer to questions which have not been posed.

    Although Class Counsel reiterated during our meeting that they had an approximately four page typewritten list of questions with them, you declined to provide a copy to Defendants in order to permit them an opportunity to provide answer. Instead, Class Counsel reiterated a desire to let the Court determine to what Plaintiffs' are entitled to. Subsequently, you wrote to my attention on October 29, 2013, with a very short handful of questions.

Defendants previously provided Plaintiffs a number of documents and other voluntary disclosures. The AIC Montez Database was one of these items. That database contains over fifteen thousand recorded entries. Contrary to the assertion contained within your email correspondence, that database **does** contain current, relevant information regarding class members. Indeed, that database was designed to, and does house up-to date information. It tracks offenders' initial contacts, DRDC/intake temporary accommodations, class member/screening and AR status. Again, despite your averments to the contrary, the database contains information much more recent than for 2008-2009. The AIC uses this very database on a **daily** basis. You have recently requested a copy of DNQ offenders: you may self-produce such a list by using the sorting function within the AIC Montez database.

On October 25, 2013, subsequent to our meeting, I personally provided further written instructions to you regarding how to view the most current information in the database. I also spoke with Mr. Ramey via the telephone to explain precisely the same instructions. To the extent that you are experiencing some sort of technological difficulty working within the database, I would be happy to walk you through how to use it. However, the fact that you have been unable to discern how to work in the Access-based environment does **not** render the information contained therein less current or irrelevant. You may easily copy and paste into an Excel spreadsheet if preferred.

The AIC has maintained electronic files for offenders since November of 2010. Our in-person meeting was far from the first time such information has been shared. This information is **not** novel and was previously disclosed. On October 4, 2013, I reiterated in an email to Ms. Greisen and Mr. Ramey that individual offenders' files are stored electronically as opposed to in a "hard" or paper format. Your correspondence indicates that you were not informed what is stored in an individual offender's file. But, during our meeting I emphasized that the **same** information which was previously contained in a "hard" file is now simply maintained in an electronic format. The categories of information in an inmate's individual file have remained consistent since 2005/2006. Accordingly, I am unsure where the confusion lies regarding what is within an individual's file.

As to your specific questions, submitted the evening of October 29, 2013:

1.    Will DOC give us access to all of the information in the ATS database regarding the *Montez* class members as it exists at a particular point in time?

*Through ATS, CDOC has the capability to provide names of class members who have been approved for ADA accommodation(s) (not health care appliances or restrictions) relevant to one or more of the four disability classes. Because ATS was implemented in 2012 long after the beginning of the class action, the caveat is that*

2

*not all class member accommodations have been transferred into ATS. Again, the AIC Montez Database you were previously provided is the database which houses Montez-specific information.*

    2.    Are individual inmates' electronic files part of the ATS database or are they considered separate files? What goes into the AIC's electronic files on every inmate? For instance, are grievances and responses, correspondence and responses, kites, and medical screenings scanned into this file?

*Individual offender electronic files and ATS are not programmatically connected. However, the electronic files (which were formerly the individual AIC paper files) include offender paper requests, information which is also entered into ATS. For example, a paper "request for class member status" form completed by the offender is scanned and saved in the offender's electronic file, and into the ADA/Montez Program, and a request/entry is made in ATS to address any accommodation requests on that form. Subsequently the ATS form containing the response may be saved into the electronic file in some cases. However, ATS was not designed with a scan/save feature to archive paper records.*

*All documents received regarding ADA/litigation matters are saved in the class member's individual electronic file, typically in word or PDF format. Sections of the AIC/ADA litigation file includes: Screening & AR, Other Correspondence, Offender Correspondence, Grievances (Pre-July 2011 only-after that date, they are contained in GTS), Email, Assignment Accommodation, and contains a Microsoft Word record entitled the "Accommodation Worksheet" for notations of records in the file and activity with regard to the offender. Any paper files pre-November 2010 were scanned and saved as an electronic file folder within the electronic file which is entitled "hard file." All relevant class member records are saved in any one of the above referenced sections, including requests, correspondence/responses, and kites.*

*Medical screening documents are saved in the electronic file and/or the ADA/Montez screening system in PCDCIS. These records including intake screenings, functional ability testing, CMO review, observations, and the screening provider, CMO and AIC findings.*

*Grievances and responses are no longer saved into the individual's electronic file as a matter of practice, since GTS was implemented in July 2011 and includes a scan/save feature to archive paper records. The process regarding the journey/tracking of the electronic grievance was further explained during the recent meeting.*

    3.    Who is responsible for updating the AIC database (e.g., ADA accommodation tracking), how often is it updated, and does this database link or connect with any other database?

3

*Only Legal Services-AIC staff have access to and update the AIC Montez database. It is a Microsoft Access database and is not programmatically connected with any other system/program and is updated by hand every time action is taken with regard to an offender's disability screening/ADA Litigation Resolution as reflected by the database instructions/key. A copy of this key is attached hereto. This is the same key which undersigned counsel offered during the recent in-person meeting. As the AIC DB key indicates, sections "ENTER MONTEZ SCREENING INFORMATION" and "ENTER COPAY/DME REFUND INFORMATION" are updated. This is done daily as needed. The other database sections are historical/archived information only.*

4. Is the AIC database exclusive to the AIC's office or do the ADA coordinators at the facilities have the ability to enter information into the database? If the ADA coordinators at the facilities cannot enter information into the AIC database, do they have access to the information contained in the database?

*Please see response to #3, above.*

5. Where do the paper copies of kites go after the information is entered into a database? Do they go to the AIC?

*Please see response to #2, above.*

6. When a request is made by an inmate for an accommodation and scanned by the ADA coordinator at the facility, does the scanned document become part of the individual inmate's electronic file maintained by the AIC or does it remain only with the facility? Does the ADA facility coordinator enter the request for accommodation into the computer? Does the ADA coordinator at the facility make a determination about the accommodation and, if so, is it reviewed by anyone?

*Yes, the request is scanned and saved into the offender's electronic file, and if it contains a request for ADA accommodation, AIC-Legal Services staff enters (types) that information into ATS, including any written/corresponding information the offender submitted. Currently, Facility ADA coordinators have read-only access to ATS and do not make determinations regarding accommodations. Facility ADA Coordinators forward all ADA requests to the AIC and are not required to maintain offender ADA files at the facility level.*

7. Does the new version of the Accommodation Resolution forms (Litigation ARs), contain a list of the accommodations an inmate was granted? If not, is the inmate given any documentation of the accommodations he/she has been granted? What is that document called?

4

*The ADA Litigation Resolution (formally known as the Accommodation Resolution) does not contain ADA accommodations, only health care appliances and restrictions as ordered by Clinical Services in relation to the offender's class member disability, as well as the 8 diabetic stipulations as agreed to. All ADA accommodations are now reflected on documents entitled the "Approve/Deny Report" and/or "Offender Accommodations" which an offender may receive a copy of.*

*It is important to note that clinical and medical devices are separated from ADA accommodations. These items were previously merged.*

Other matters:

- Defendants respectfully decline to provide Plaintiffs' Counsel with unfettered access to GTS. As explained in detail during our meeting this is a system-wide program which tracks all grievances by all offenders throughout CDOC. Accordingly, comprehensive access is irrelevant and beyond the scope of the present matter. Once more, this period relates to the "big-picture" as opposed to minutia relevant to individual offenders experiences. Judge Kane reiterated in finding substantial compliance that minor exceptions are not at issue. Furthermore, you are currently being provided with Quarterly Reports. Those reports already include information regarding ADA grievance "trends." Thus, it is unclear why you would require access to GTS. If you would like to make some sort of narrowly tailored request, specific to the limited scope of the monitoring period which pertains to systemic compliance, Defendants would consider such an on-point request.
- Similarly, Defendants respectfully decline the invitation to provide Plaintiffs' Counsel with unrestrained access to ATS. The AIC *Montez* Database you have already been provided was designed to address class members. On the other hand, as explained during our recent meeting, ATS is a system-wide program which pertains to issues and individuals beyond the scope of the *Montez* class. In addition, you have previously been provided a copy of the ATS User Guide, and should thus, be aware of the program's reporting capability. Again, if you would like to make some sort of narrowly tailored request, specific to the limited scope of the monitoring period which pertains to systemic compliance, Defendants would consider such an on-point request.
- Defendants respectfully decline to provide copies of all offenders' individual electronic files for the reasons stated above regarding the purpose and scope of **systemic** monitoring. If you would like to request a set number of specific individuals' files in order to review a more systemic concern regarding the content and structure of these types of files, Defendants would consider such a narrowly tailed, on-point request. Otherwise, such an overly broad request appears designed, or at least operates, to simply unnecessarily drive up the costs of monitoring and does not pertain to the purpose of monitoring **systemic compliance**.

5

- A list of class members sorted by disability is available by utilizing the sort feature of the AIC *Montez* Database which you were previously provided. Similar information is available and may be sorted through the Daily Rosters (Excel format) you are provided prior to each of your monitoring facility visits. You last requested and received a Daily Roster for all facilities on November 6, 2013.
- Pursuant to your oral request during our recent meeting, a copy of OCAs approved since January of 2012 is attached.

Defendants want very much to work cooperatively with Plaintiffs' Counsel during the remaining months of the Monitoring Period. Defendants hope the parties can avoid unduly burdening the Court during this time. Furthermore, Defendants anticipate that the parties can work together in order to minimize the costs incurred to facilitate the monitoring of compliance. To that end, please feel free to submit any additional questions to my attention. Defendants eagerly anticipate working amicably moving forward. Again, if there are **any** further ways by which I may help to facilitate monitoring of the **systemic compliance** during the Monitoring Period, please feel free to contact me at my office.

Sincerely,

FOR THE ATTORNEY GENERAL

s/Jacquelynn N. Rich Fredericks
JACQUELYNN N. RICH FREDERICKS
Assistant Attorney General
Corrections Unit
Civil Litigation and Employment Law Section
(720) 508-6603
(720) 508-6032 (FAX)