IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 92-cv-00870-CMA

JESSE MONTEZ, et al.

    Plaintiffs,

v.

JOHN HICKENLOOPER, et al.

    Defendants.

## ORDER ON DISCOVERY DURING MONITORING PERIOD

This matter is before the Court on class counsel's Motion to Compel Defendants' Responses to Plaintiffs' First Set of Discovery Requests During the Monitoring Period (Doc. # 5407) and Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' Second Set of "Monitoring Period" Discovery Requests and Plaintiffs' Request for Expedited Hearing (Doc. # 5462).  Both motions are ripe for the Court's review.

### I. BACKGROUND

More than twenty-two years ago, Colorado state prisoners initiated this class action lawsuit, alleging that state officials violated disabled prisoners' rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983. In 2003, the parties agreed to settle the case by entering into a Remedial Plan (the "Plan"), which required that Colorado Department of Corrections ("DOC") improve the

facilities and resources for disabled inmates.  (Doc. ## 441 (the Plan)[1], 528 (Order approving settlement)).  On September 11, 2012, after spending 32 days hearing evidence and reviewing reams of post-hearing briefing, Judge Kane concluded that the DOC was in substantial compliance with the Plan.  (Doc. # 5314.)  The Plan provided that, following a finding of substantial compliance, a two-year Monitoring Period would begin, during which class counsel would monitor the designated facilities to ensure DOC maintained compliance with the Plan.  Judge Kane further indicated in his Order that "[t]he two-year Monitoring Period triggered by a finding of 'Substantial Compliance' shall commence on October 1, 2012."  (*Id.* at 4.)

> With respect to the Monitoring Period, the Plan provides:
>
> Once it has been determined that DOC is in substantial compliance with this Remedial Plan, the a two year "Monitoring Period" commences during which class counsel will monitor the designated facilities to ensure compliance is maintained during this period. During the Monitoring Period, class counsel may tour each designated facility up to two times a year to ensure compliance. In addition, class counsel may spend the time and resources reasonably necessary to monitor compliance during the Compliance Period. Once the Monitoring Period is complete, this Plan is no longer in effect unless, prior to the completion of the Monitoring Period, there has been an objection filed alleging non-compliance. If such objection is filed, the Monitoring Period will be extended until there has been a final determination with respect to the merits of the objections.

(Plan § XXXI.)  Thus, the Monitoring Period is scheduled to expire and the case will be dismissed on October 1, 2014, absent either the filing of an objection alleging non-compliance or an order of this Court.

---

[1] Hereinafter, citations to the Plan, which is found at Doc. # 441, will be to "Plan" followed by the relevant section.

## II. DISCUSSION

Arguing that they cannot adequately perform their duty to monitor continued compliance with the Plan unless they are provided certain discovery, class counsel asks this Court to compel Defendants' response to various discovery requests. Defendants respond that, although they are willing to engage in some informal discovery, the plan does not permit formal discovery.

This Court employs principles of contract construction when construing the Plan. *See United States v. ITT Continental Banking Co.*, 420 U.S. 223, 237 (1975)  ("since consent decrees . . . have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . .")  The plain language of the Plan does not provide for formal discovery.  Class counsel attempts to circumvent this failure by arguing that the Plan's declaration that "class counsel may spend the time and resources reasonably necessary to monitor compliance during the Compliance Period" permits discovery, as a reasonable necessity for discharging their duties.  However, that provision appears to relate to class counsel's ability to receive payment for the time and costs they incur during the Monitoring Period.[2]  If class counsel believed that formal discovery was imperative to their monitoring duties, they should have negotiated an explicit provision to that effect.  That being said, Defendants have agreed to provide to class counsel, on an informal basis, limited discovery.  The Court agrees that some discovery to enable

---

[2] Defendants argue that this sentence refers to the "Compliance Period" rather than the Monitoring Period.   However, the location of this sentence in the paragraph relating specifically to the Monitoring Period implies that it relates to the Monitoring Period.  This reading is underscored by Section XXXIII, which provides a specific procedure for resolving a dispute as to attorney fees and costs incurred during the Compliance and Monitoring Periods.

class counsel to determine whether compliance with the Plan has been maintained during the Monitoring Period is appropriate.

The Court has carefully reviewed class counsel's requests and finds them to be overbroad. Class counsel appears to be approaching discovery as if this case were still in the midst of hard fought litigation. This is not the case. This case was settled more than 10 years ago. Any discovery allowed by this Court will be narrowly tailored and limited to information that will allow class counsel to determine whether the DOC has maintained compliance during the Monitoring Period. As the Court reads class counsel's first and second discovery requests, they seek, essentially, all information regarding inmates who requested screening for disabilities, who were screened, who were identified as having disabilities, the reasonable accommodations given and denied, and the substantive reasons for all disability determinations, including reasonable accommodations. This would include information about the DOC's grievance procedures and the substantive explanations for any denials under those procedures. The time frame for many of these requests is from November 1, 2010, until the present and, therefore, includes information prior to Judge Kane's finding of substantial compliance. In addition, class counsel seeks access to all databases with relevant information and training materials, policies, and procedures relating to the Plan, its implementation, and its ongoing viability. While these requests may have been reasonable during the pendency of litigation and up until Judge Kane found that the DOC was in substantial compliance with the Plan, in light of the current phase of this case, they are now overbroad. The Court agrees with Defendants that class counsel's

requests must be limited in time—they may seek information relevant to the Monitoring Period, which began on September 11, 2012, when Judge Kane issued his order finding substantial compliance.[3]  Class counsel's requests should also be limited to inmates seeking services relating to the four disabilities covered by the Plan: mobility, hearing, and vision impairments, and diabetes.  (Plan § III.)

Within 30 days of the date of this Order, Defendants shall provide to class counsel the following limited discovery:

1. A random sample totaling 10 percent[4] of the following:

    a. ADA Inmate Coordinator ("AIC") electronic data files, including the AIC worksheets, of inmates that have requested class member status from September 11, 2012 to present.[5]

---

[3] Class counsel's request for information prior to this time frame is overbroad.  To the extent they request that information to compare current systems with prior systems, previous discovery during the Compliance Period and testimony and evidence given during the compliance hearings should sufficiently apprise class counsel of the systems in place as of the date that Judge Kane determined the DOC was in substantial compliance.

[4] Another court in this district noted, "[T]here is scant authority regarding the appropriate size of any sample of the claim and legal files in the class action discovery context, except for implicit approval of the methodology."  *Seabron v. American Family Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1154 (D. Colo. 2012) (citing Manual for Complex Litigation, Fourth, § 21.14 (2009)).  Although *Seabron* was in the liability stage of litigation and dealt with the appropriate sample size of discovery for class certification purposes, this Court finds the analysis relevant here, where disclosure of all files would be unduly burdensome, yet some discovery appropriate.  In *Seabron*, Magistrate Judge Tafoya ordered Defendants disclose 50 out of 233 files.  *Id.*  She also discussed *Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tex. 1991), in which the court allowed the defendants to serve interrogatories on 50 class members, which was a sample size of less than one percent of the over 6,000 member class.  Because the total class member size in the instant case is large—approximately 5,000 inmates—the Court finds 10 percent a sufficient sample for class counsel to make an initial determination regarding whether the DOC maintains compliance with the Plan.  *See Tagatz v. Marquette University,* 861 F.2d 1040, 1045 (7th Cir. 1988) (a larger sample is more reliable than a smaller one); *Chichilnisky v. Trustees of Columbia University,* No. 91 Civ. 4617(MJL), 1994 WL 88247, *2 (S.D.N.Y. 1994) (same).  This is particularly so where the Court will consider a request for a larger sampling if the initial random sample shows a statistically significant number of inmates being denied accommodations, services, programs, or activities under the Plan.

5

    b. Grievances filed by class members from September 11, 2012 to present, including those contained in the Grievance Tracking System database or other pertinent database, if applicable.

    c. Accommodation Tracking System files regarding class members' requests for accommodations relating to the four types of disabilities covered by the Plan from September 11, 2012 to present.

    d. Inmate requests for disability status relating to the four types of disabilities covered by the Plan from September 11, 2012 to present and DOC's determination relating thereto, including documents related to screening, screening results, and final disability determinations.

2. To the extent that this information has not already been provided, Defendants shall also provide to class counsel:

    a. All orientation handbooks and videos from each of the public and private facilities.[6]

    b. All ADA-related policies, procedures, rules, regulations, and any related Implementation/Adjustments or Operations Manuals that have been enacted or implemented since September 11, 2012.

    c. All training materials used to apprise DOC staff of ADA, Montez, diabetes, grievance process, and evacuation procedures.

Within 30 days of the date of this Order, Class counsel may also request, in writing, information and documentation relating to specific individual inmates, whom counsel has reason to believe were denied accommodations, services, programs, or activities under the Plan. This shall include written communications between those specific class members and the Office of the AIC. Defendant shall provide the requested materials within 30 days of the date of the request.

---

[5] Defendants indicate that information relating to ADA kites submitted by class members and responses to those kites are included in the AIC files. Therefore, the Court construes this as providing sufficient information to comply with Request for Production 5.

[6] Defendants aver that they provided "representative samples" of orientation materials from two intake facilities. However, they must, in addition, provide any other orientation materials from other facilities.

The Court has thoroughly reviewed the discovery requests and responses, including supporting documents provided by Defendants. Class counsel asserts that Defendants' have failed to answer interrogatories and requests for production. The Court finds that Defendants have adequately responded to the vast majority of class counsel's requests.[7]

The Court also notes that in many responses, Defendants instruct that class counsel could obtain the requested information by comparing lists and other information previously provided. At this stage in the case, interrogatories should be used to clarify questions class counsel has about the discovery disclosures that cannot be gleaned from analyzing the data. Interrogatories should not be used as a mechanism to induce Defendants to analyze the information on class counsel's behalf.

To the extent Defendants provided random samplings of various categories of information, the Court finds this sufficient so long as the sampling is equivalent to 10 percent of the total. Should class counsel determine that the random sampling provided by Defendants demonstrates a statistically significant indication of noncompliance, class counsel may file an objection as set forth in the Plan.

Both parties are reminded of their professional duty and contractual obligation under the Plan to "confer and attempt expeditiously and in good faith to resolve their disagreement." (Plan § XXXVI.)

---

[7] The Court finds Defendants' response to Interrogatory # 7, which seeks information relating to the use of strobe lights in cells, sufficient.

Finally, the Court recognizes that class counsel is not in the position to file any objections at this time and, therefore, will extend the Monitoring Period by 4 months, until April 1, 2015.

### III. CONCLUSION

Accordingly, it is ORDERED that

1. Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Set of Discovery Requests During the Monitoring Period (Doc. # 5407) is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

2. Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' Second Set of "Monitoring Period" Discovery Requests and Plaintiffs' Request for Expedited Hearing (Doc. # 5462) is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

3. Defendants' Unopposed Motion for Extension of Time to File Response/Reply as to 5462 Motion to Compel (Doc. # 5466) is DENIED AS MOOT.

4. Plaintiffs' Unopposed Motion for Extension of Time to File Response/Reply as to 5462 Motion to Compel (Doc. # 5483) is DENIED AS MOOT.

5. Defendants shall produce, if they have not already, discovery consistent with this Order **on or before October 8, 2014.**

6. The parties shall meet and confer and submit a joint motion by **September 19, 2014 at 5:00 PM** explaining whether Plaintiff's pending Motion to Stay Proceedings is rendered moot by this Order.

DATED:  September 8, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge