IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number: 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

### FINAL ORDER OF SPECIAL MASTER

---

THIS MATTER came before the Special Master for hearing on October 17, 2005, on October 31, 2005 and on November 8, 2005. Present were the following: Jill Coit, Claimant; Adam Wiens from the Office of the Attorney General, for Defendants. On November 8, 2005, Aaron Atkinson from the Office of the Attorney General also appeared for Defendants.

Testimony was received from the following witnesses: Claimant; Dr. Mitra Razzaghi; Linda Fischer; Rae Rice; Cary Shames, D.O., CDOC Chief Medical Officer; Cathie Holst; Brenda Traxler; and Cindy Phillips. Exhibits A through JJJ were offered into evidence. Attached as part of this order is a comprehensive Appendix of Exhibits listing each exhibit admitted into evidence and each exhibit not admitted into evidence. At the conclusion of the hearing, the claim was taken under advisement. This Order shall constitute the final action by the Special Master on this specific claim.

### I. BACKGROUND

This litigation was commenced in 1992 against then-Governor Roy Romer and various officials of the Colorado Department of Corrections (DOC). The case was brought under the Americans with Disabilities Act, *42 U.S.C. §12101*, and Rehabilitation Act, *29 U.S.C. §794*. During the summer of 2003, the parties began the process of trying

1

EXHIBIT 1

to reach a settlement of all issues. The Court was advised that a settlement had been reached between members of the class and Defendants. Judge Nottingham set the case for a fairness hearing.

On August 27, 2003, the Remedial Plan (a.k.a. Settlement Agreement) was presented to Judge Nottingham. After consideration of objections that had been filed by various individuals, Judge Nottingham determined that the Remedial Plan should be approved. That approval established the class and did not provide for an opt out provision for any individual. The Remedial Plan also created a mechanism for individual inmates, former inmates or their representatives to file a claim seeking damages or some other remedy available in court.

Section XXXII of the Remedial Plan provided the following basis for the filing of claims for damages and/or for other relief. This section states, in part as follows:

Claim forms will then be sent to the Special Master. The Special Master shall then determine which of the following five categories of damages shall apply to each class member:

    I.    General inconvenience or nominal damages;
    II.    Damages due to loss of good time, earned time, access to programs or services that have not resulted in physical injury;
    III.    Damages due to actual non-severe physical injuries or non-nominal emotional injuries (such as the fear of death);
    IV.    Damages due to severe physical injuries; and
    V.    Damages due to death.

Only one of the above categories may be applied to each class member. For instance, a class member with both inconvenience damages and non-severe physical injuries will be designated as Category III. *Remedial Plan, pp. 28-9.*

Pursuant to this provision, Claimant filed his claim and requested that the Special Master award appropriate damages for relief.

## II. FINDINGS OF FACT

Being duly advised, the Special Master makes the following findings of fact:

1. Claimant submitted a claim which was originally assigned claim number 02-661 and placed into category II pursuant to the Remedial Plan as set forth above. The claim is premised on alleged mobility, vision and hearing disabilities.

2. In response to Claimant's Request to be placed into a higher class, on April 19, 2005, Special Master Borchers reassigned Claimant's claim to Category III pursuant to the Remedial Plan as set forth above. The claim was reassigned claim number 03-129.

3. Proper notice of the hearing was given and Claimant along with Defendants appeared.

4. Claimant is currently under the jurisdiction of the Colorado Department of Corrections (CDOC). She entered CDOC custody in 1995. From 1995 to October of 2001, Claimant was housed at the Colorado Women's Correctional Facility (CWCF). Since October of 2001, she has been housed at the Denver Women's Correctional Facility (DWCF), except for a brief 10-day period, from March 19, 2004 to March 29, 2004, when she was transferred to CWCF.

5. Claimant has suffered from a variety of medical problems that are the basis for her alleged mobility disability. When she came under the jurisdiction of the CDOC in 1995, she suffered from low back pain and degenerative joint disease. She had an artificial hip that prevented her from bending or twisting. Claimant also had a leg length discrepancy. Claimant testified that from 1995 to the present, she has been unable to walk more than 50 to 60 feet and cannot walk up or down stairs. This testimony was disputed by a CDOC witness and, according to Dr. Shames, by Claimant's medical records. Claimant has had a stair restriction of 6 to 8 stairs a day since 1998.

6. In 1995, Claimant suffered a partial meniscus tear. Surgery was performed in 1997 or 1998, but it was not completely successful in repairing the meniscus tear. Claimant also developed plantar fibroma, a growth on the bottom of her foot. This was removed in 1998 but reoccurred shortly thereafter.

7. Claimant also suffers from carpel tunnel syndrome and sustained injuries to her hand and shoulder which made it difficult for her to utilize handrails while attempting to walk.

8. Claimant has been classified as totally disabled by Social Security.

9. Claimant produced extensive testimony of documentary evidence in support of her contention that DWCF has willfully refused to provide her with a plethora of medical devices and treatment that was prescribed or recommended by various health care professionals. For example, Claimant had a back brace while she was incarcerated at CWCF. The brace was taken away in October of 2001 and has not been given back to her. Claimant did not receive orthopedic shoes until 2003, although her doctors requested them on numerous occasions. She has not been given acceptable shoes or orthotics, and clothing that is consistent with various allergies that she has to fabric. Claimant has been denied a heating pad. In 2001, Claimant's hand braces were taken away, and were were not returned until 2003. While at CWCF, Claimant was provided with a dresser, a low table, an adjustable roller chair, egg shell mattress and a night stand. None of these were provided to her at DWCF. Cervical pillows and ice packs which were provided to Claimant at CWCF have not been made available at DWCF. Claimant was given Celebrex, an anti-inflammatory from 1998 to 2001 but this prescription medication has been denied to her since arriving at DWCF. A special typewriter was

available at CWCF, but Claimant asserts that since her arrival and DWCF she has not had the use of a special typewriter. Claimant requested a Tens Unit to assist in alleviating pain but it has not been provided.

10. Claimant testified that she has difficulty hearing, particularly when there is background noise. She used hearing aids in 1995 but, since 1995, she has not been provided with hearing aids. Claimant was cleared for hearing aids in 2001 and in 2002 or 2003 she was allowed to have her own hearing aids sent to her. Claimant asserts that in 2004 she received discipline that resulted directly from her inability to hear.

11. Claimant contends that she has difficulty with her distance vision. It is undisputed, however, that she does not fall below the 20/200 vision acuity standard in the Montez Remedial Plan.

12. Claimant has also testified to several threats and acts of retaliation for filing grievances and pursuing her *Montez* claims.

13. Claimant testified that she fell in the shower causing swelling and pain; and that she fell from the low toilet in her handicapped cell prior to 2003. She indicated that the falls were due to the fact that she could not grasp the hand bars firmly because of her hand and shoulder problem.

14. Claimant testified that she has fallen due to the lack of proper shoes and shoe inserts.

15. Claimant was unable to use the carpentry shop at DWCF because of lifting and hand use restrictions. She wanted to participate in a dog training program but was unable to do so because she could not bend down to remove the dog excrement. DWCF refused to provide her with a shovel that she might have been able to utilize to accomplish this task. There were limited jobs for handicapped inmates. Claimant testified that she did computer aided drafting and design for a while but could not sit or use her hands. Claimant did have jobs in the law library.

16. From 1995 to 2001, Claimant wanted to work as a teacher in the CWCF GED program. She was not able to do so because she would have had to negotiate approximately 14 stairs to get to the area where the classes were held. She requested an accommodation of being allowed to go through the yard and a gate in order to get from the building where she was housed to the building where the classes were held but this request was rejected.

17. Claimant could not take part in the hobby program because of a medical problem with her thumb that prevented her from utilizing the rotator scissors. She was also prevented from knitting because of the thumb condition.

18. Claimant requested that she be moved out of her handicapped cell at DWCF because it did not have sufficient light. She was moved to a non-handicapped cell that provided more light.

### III. CONCLUSIONS OF LAW

1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation Act, 29 U.S.C. § 794, *et seq.;* and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

2. The first issue before the Special Master is whether Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 U.S.C. 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). The term "substantially limits" refers to disabilities that make an individual unable to perform a major life activity that the average person in the general population can perform; or that significantly restricts an individual as to the condition, manner or duration under which he or she can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i).

The Remedial Plan limits the class of persons who might otherwise have a disability under the Rehabilitation Act and the ADA to those with mobility, hearing, vision disabilities, and those with disabilities due to diabetes. *Remedial Plan* ¶ III(A). Additionally, the Remedial Plan limits participation to inmates with permanent physical disabilities/impairments. *Remedial Plan* ¶ III(B). A permanent disability/impairment is a condition which is not expected to improve within six months. *Remedial Plan* ¶ III(C).

Based on the criteria established by the Rehabilitation Act, the ADA, and the Remedial Plan, a claimant is a disabled individual who is a member of the class if, while an inmate in a facility under the control of the DOC, he or she (a) had a permanent physical mobility, hearing, or vision impairment or was a diabetic; and (b) this condition substantially limited one or more of his or her major life activities.

The Special Master finds and concludes that Claimant is a disabled individual who is a member of the class. Claimant has a permanent physical mobility impairment that substantially limits the major life activities of walking, working and perhaps performing manual tasks.

The Special Master finds and concludes that Claimant has not sustained her claim that she has a vision disability within the meaning of the ADA and/or the Remedial Plan.

5

No testimony or documentary evidence was presented regarding Claimant's vision acuity[1]. *Remedial Plan* ¶ V(A)(3).

The Special Master finds and concludes that Claimant has not sustained her claim that she has a hearing disability within the meaning of the ADA and/or the Remedial Plan. It is uncontroverted that Claimant is not "permanently deaf" and does not have "a permanent hearing impairment so severe that [she] must rely on written communication, lip reading, or signing because [her] residual hearing, with aids, does not enable [her] either to communicate effectively or hear an emergency warning." *Remedial Plan* ¶ V(A)(2).

Claimant has also presented testimony regarding shoulder, arm and hand problems and allergies to clothing. The Special Master need not consider whether these conditions might constitute a disability under the ADA because they are not disabilities covered by the Remedial Plan. Consequently, the Special Master finds and concludes that the *Montez* Remedial Plan claim procedures to not apply to Claimant's shoulder, arm, hand and allergy conditions. Further, any allegations of failure to accommodate these conditions so that Coit could participate in various programs also do not fall within the ambit of the Remedial Plan.

Finally, Claimant asserts damage claims based upon threats and retaliation. Again, regardless of whether or not these claims might be viable under the ADA and/or Rehabilitation Act, they do not fall within the scope of the Special Master's responsibilities under the Remedial Plan. *See* Order In Response to Report and Recommendation of the Special Masters to Judge John L. Kane, Nov. 23, 2004 at ¶¶ 2 and 3.

3.   The next question which must be answered is whether Claimant was qualified to participate in the programs or to receive the benefits or services offered by the CDOC. A prisoner may not be "qualified" under the ADA to participate in various services, programs or activities because of disciplinary reasons, health reasons or other valid penal justifications. *Miller v. King*, 384 F.3d 1248, 1266 (11th Cir. 2004). It appears to be undisputed that Claimant was qualified to participate in the programs, benefits and services offered by the CDOC.

4.   The key issue is whether Claimant was discriminated against because of her disability during the time covered by the Remedial Plan. The Remedial Plan was signed on August 27, 2003. Although the Remedial Plan fails expressly to address the issue of damage claims that might arise after its execution date, there is nothing in the Remedial Plan that would suggest that paragraph XXXII thereof, authorizing the recovery of damages and establishing claims procedures was intended to apply to claims for damages that had not yet arisen. The Special Master finds and concludes that the damages that may be awarded under the Remedial Plan are limited to those resulting from violations of the ADA cognizable under the Remedial Plan and occurring prior to

---

[1] Claimant, by her own admission, agreed that her vision was corrected within the meaning of the Remedial Plan and that she cold not overcome the burden.

August 27, 2003. Claimant has presented considerable testimony regarding alleged discrimination and failures to accommodate that occurred after August 27, 2003. The Special Master finds and concludes that these allegations cannot be entertained under the *Montez* Remedial Plan.

As noted in Finding of Fact number 9 above, the overwhelming majority of Claimant's allegations, testimony and exhibits relate to medical treatment, medications and medical devices that were ordered or recommended by her doctors but were not provided by defendants. With the exception of her fall discussed in Finding of Fact number 14 above, there is no evidence tying these failures to provide treatment, medications or medical devices to any inability on the part of Claimant to utilize the institution's facilities or to take part in the institution's programs and services. Without such evidence, claims of failure to provide proper medical treatment, medications and/or medical devices may be cognizable under the Eighth Amendment but they do not trigger the protections of Title II of the ADA or the Rehabilitation Act. *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005); *United States v. University Hospital*, 729 F.2d 144 (2nd Cir. 1984). As a result, with the exception of Claimant's fall allegedly resulting from her failure to have been provided with proper shoes and shoe inserts, the Special Master finds and concludes that all of her claims relating to the CDOC's failure or refusal to provide medical treatment, medications and medical devices must fail.

What remains are Claimant's damage claims premised on (a) her fall because she was not provided with proper shoes and shoe inserts; and (b) her inability to teach in the CWCF GED program because she could not negotiate the stairs to get to the classroom. The Special Master finds and concludes that there is sufficient evidence in the record to sustain Claimant's claim that the fall and her inability to teach were the result of her permanent mobility impairment; that her fall was proximately caused by defendants' failure to provide a requested accommodation in the form of proper shoe inserts; and that her inability to teach was the result of the defendants' failure to provide a requested accommodation of allowing her to take an alternative route to the classroom. No evidence was presented by defendants to establish that either of the requested accommodations was unreasonable or inappropriate. Consequently, the Special Master finds and concludes that Claimant has sustained a claim of disability discrimination under the ADA, the Rehabilitation Act and the Remedial Plan.

Claimant presented no evidence regarding any injuries sustained or medical treatment necessitated by her fall. As a result, only an award of minimal damages is permissible. Likewise, no evidence was presented by claimant as to the extent of damages resulting from her inability to teach the GED class. In light of the dearth of damages evidence, the Special Master finds and concludes that the sum of $350.00 is an appropriate amount of damages for these two violations of the ADA, the Rehabilitation Act and the Remedial Plan.

### IV. ORDER

IT IS HEREBY ORDERED that based upon the foregoing Findings of Fact and Conclusions of Law, judgment should be entered in favor of the Claimant and against Defendants in the amount of $350.00; and

IT IS FURTHER ORDERED that Claimant and Defendants are advised that they may file an objection to this Final Order of Special Master pursuant to Federal Rule of Civil Procedure 53(g)(2), but said objection must be filed **on or before January 29, 2006** with the Clerk of the United States District Court at the following address:

> 901 19th Street
> Denver, CO 80294.

SIGNED this 15th day of December, 2005.

_____
Bruce D. Pringle,
Special Master

## CERTIFICATE OF MAILING

I hereby certify that I have mailed a copy of the foregoing FINAL ORDER OF SPECIAL MASTER this _15th_ day of December, 2005 to the following:

Ms. Jill Coit, #86530
DWCF
P.O. Box 392005
Denver, CO 80239

Mr. Adam Wiens
Mr. James X. Quinn
Mr. Jess A. Dance
Office of the Attorney General
Litigation Section
1525 Sherman Street, 5th Floor
Denver, CO 80203

_____
Margie Dykstra

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-N-870 (OES) (Consolidated for all purposes with Civil Action No. 96-N-343)

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

BILL OWENS, et al.,

Defendants.

---

Claim Number 03-129
Category III
Claimant: Jill Coit, #86530
Address of Claimant: DWCF, P.O. Box 392005, Denver, CO 80239

---

## APPENDIX OF EXHIBITS

The following is a list of Exhibits introduced by Claimant and ADMITTED into evidence in the above referenced claim:

| | | |
|---|---|---|
| EXHIBIT A: | 1 page | Access Correctional Care Authorization for Jill Coit, dated March 3, 2004. |
| EXHIBIT B: | 1 page | Access Correctional Care Denial for Jill Coit, dated August 29, 2005. |
| EXHIBIT D: | 1 page | Query Medical Information for Jill Coit, dated 06/08/2005. |
| EXHIBIT E: | ½ page | Bottom half of Medical Information for cotton clothing for Jill Coit, dated 9/17/04. |
| EXHIBIT F: | 2 pages | Denver Health Medical Center Radiology Consultation Report for Jill Coit, dated 12/27/2004. |
| EXHIBIT G: | 1 page | Colorado Department of Corrections Clinical Services Intrasystem Transfer Health Screening Form for Jill Coit, dated 3-19-2004. |

| | | |
|---|---|---|
| EXHIBIT H: | 1 page | State of Colorado Department of Corrections Consultation Report Form for Jill Coit, dated 009/28/2004. |
| EXHIBIT I: | 1 bag | One pair worn Reebok tennis shoes from Jill Coit. |
| EXHIBIT J: | 2 pages | Memorandum from Cathie Holst to Jill Coit, dated May 12, 2004, RE: Correspondence dated 5/5/04. |
| EXHIBIT K: | 10 pages | Memorandum from Cathie Holst to Jill Coit, dated October 20, 2005 with supporting documents, letters, Accommodation Resolutions and Queries. |
| EXHIBIT M: | 1 page | Colorado Department of Corrections Offender Consent for Disclosure of Confidential Information for Jill Coit, dated 2-2-05[1]. |
| EXHIBIT N: | 1 page | Offender Track Offender Profile, 03/24/2004, page 1. |
| EXHIBIT O: | 1 page | Query Admission Summary, 08/24/2005, page 1. |
| EXHIBIT P: | 1 page | Query Medical Information, 12/20/2000, page 1. |
| EXHIBIT Q: | 1 page | Memorandum to Beverly Thompson from Rhonda Corretti, RE Jill Coit Informal Grievance, dated November 24, 2003. |
| EXHIBIT R: | 1 page | Denver Women's Correctional Facility Segregation Allowable Property List. |
| EXHIBIT U: | 1 page | D.W.C.F. Unit Two Case Management Kite for Jill Coit dated 11-22-04. |
| EXHIBIT W: | 1 page | Correspondence form Charles Smith to Linda Fischer, 3/31/2005. |
| EXHIBIT X: | 1 page | Department of Corrections Psychiatric Individual Contact[2]. |
| EXHIBIT Z: | 1 page | Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 8/5/04. |
| EXHIBIT AA: | 1 page | Colorado Department of Corrections Cañon City, Colorado Territorial Correctional Facility Podiatry Clinic for patient Jill Coit, dated 1-27-99. |

---

[1] Two identical copies of the same Exhibit M are marked and in the record.
[2] Two identical copies of the same Exhibit X are in the record.

| | |
|---|---|
| EXHIBIT BB: 1 page | Podiatry Clinic 8/4/99 sheet for Jill Coit. |
| EXHIBIT CC: ½ page | Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 1-13-04[3]. |
| EXHIBIT DD: 1 page | Copy of picture of shoes and lower half of record for Jill Coit dated 7-14-00. |
| EXHIBIT EE: 1 page | State of Colorado Department of Corrections Consultation Report Form dated 11/04/2003. |
| EXHIBIT FF: 1 page | Access Correctional Care Authorization dated March 3, 2004. |
| EXHIBIT GG: 1 page | Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 11/11/99. |
| EXHIBIT HH: 1 page | Message for Medical to Jill Coit, dated 10/15/02. |
| EXHIBIT II: 1 page | Colorado Department of Corrections Request for Exception to Standard of Care dated 10-21-96. |
| EXHIBIT JJ: 1 page | Colorado Department of Corrections / Ambulatory Health Record for Coit dated 10/22/01. |
| EXHIBIT KK: 1 page | Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 12/21/1. |
| EXHIBIT LL: 1 bag | A pair of used hand splints. |
| EXHIBIT MM: 1 page | Page of Offender Health Services rules, effective 07/15/02. |
| EXHIBIT NN: 1 page | Denver Women's Correctional Facility Segregation Allowable Canteen Catalogue Items. |
| EXHIBIT OO[4]: 55 pages | "OO"1: Printout for Jill Coit, dated 5-15-01.<br>"OO"2: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 4/13/01.<br>"OO"3: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 1-12-01. |

---

[3] Defendants raised an objection on the grounds of relevance. The document was admitted subject to Claimant "tying it up."

[4] Per the Special Master, Claimant was allowed to introduce these documents into evidence at once and all are to be marked sequentially as exhibit "OO" starting with "OO"1. Quotation marks have been placed around the letters so as not to confuse the letters with zeroes.

"OO"4: CDOC Consultation Report Form for Jill Coit date 6/21/99.

"OO"5: Denver Health Outpatient Encounter Record Surgical-Specialty Clinics for Jill Coit dated 02/17/00.

"OO"6: State of Colorado Department of Corrections Consultation Report Form for Jill Coit dated 04/01/2005.

"OO"7: Letter to Anthony A. DeCesaro from the Aleph Institute dated March 31, 2004.

"OO"8: April 8, 2004 Letter to Jill Coit from Anthony DeCesaro.

"OO"9: September 9, 2003 letter to Mrs. Billiot from Patricia Valenzuela.

"OO"10: Message from Medical to Jill Coit dated 9-15-03.

"OO"11 (2 pages): Denver Health Medical Center / University Hospital Telemedicine Encounter Form for Jill Coit dated 3/9/00.

"OO"12: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 2-24-03 (top) and 1-31-03 (bottom).

"OO"13: Letter to Jill Coit from Anthony A. DeCesaro dated March 4, 2004.

"OO"14: CDOC Consultation Report Form for Jill Coit dated 9-10-01.

"OO"15: Notice about towels and microwaves.

"OO"16: Statement from Rebecca Davis without a date.

"OO"17: CDOC Consultation Report Form for Jill Coit dated 7/9/02.

"OO"18: Denver Health Outpatient Encounter Record for Jill Coit dated 9/3/99.

"OO"19: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 7/27/04.

"OO"20 (1/2 page): Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 9/14/00.

"OO"21: Message from Medical for Ms. Jill Coit dated 2/20/03.

"OO"22: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 10/21/01 (top), 10/11/01 (bottom).

"OO"23: Colorado Department of Corrections Consultation Report Form for Jill Coit, dated 08/08/2005.

"OO"24: Colorado Department of Corrections Offender Grievance Form Step I, for Jill Coit dated 12-24-03.

"OO"25: Request for interview 6-6-04 with lots of notes.

"OO"26: Colorado Department of Corrections Informal Resolution Attempt for Jil Coit (sic) dated 9-9-03.

"OO"27: Part of a record of Jill Coit dated 1-16-03

"OO"28: Colorado Department of Corrections Informal Resolution Attempt for Jill Coit dated 8/15/03

"OO"29: Colorado Department of Corrections Informal Resolution Attempt for Jill Coit dated 12-24-03.

"OO"30: (2 pages) Affidavit of Michelle Baker for Law Suit 98-D-2031 Coit.

"OO"31: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 8/18/03 (top) 8/11/03 (bottom).

"OO"32: A checklist for Jill Coit dated 1-14-99.

"OO"33: Copy of a sheet of writing with a typed not to Ms. Glassman dated 12/15/00.

"OO"34: Denver Women's Correctional Facility Request for Laundry Service for Jill Coit dated 3/15/05.

"OO"35: On-site clinic letter from Hernan Morales, M.D. to Jill Coit concerning large bra fitting.

"OO"36: Denver Health Outpatient Encounter Record Surgical-Specialty Clinics for Jill Coit dated 03/27/00.

"OO"37: Colorado Department of Corrections X-Ray Request/Report, taken of Jill Coit on 4-2-01.

"OO"38: (1/2 page) Information for Jill Coit dated 10/15/01.

"OO"39: Invoice from Batchelor Business Machines to Jill Coit dated 8-28-00.

"OO"40: CDOC Consultation Report Form for Jill Coit dated 7/9/02.

"OO"41: Medical Query Medical Information, Jill Coit, 06/21/2001.

"OO"42: Colorado Department of Corrections / Ambulatory Health Record for Jill Coit dated 12/6/1.

"OO"43: Access Correctional Care Denial dated August 29, 2005 to Jill Coit.

"OO"44: Colorado Department of Corrections / Ambulatory Health Record for Coit dated 7/22/03 (top) 07/18/03 (bottom).

"OO"45: Orthopaedic (sic) Clinic 12-15-99 letter to Jill Coit from Jacob Patterson, M.D.

"OO"46: Picture of shoes with bottom half of document for Jill Coit dated 7-14-00.

"OO"47: Message from Medical to Jill Coit dated 1-8-02.

"OO"48: Pre-Operative Diagnosis of Plantar Fibroma on the left foot dated 12-8-98 by James P Gremillion for Jill Coit.

"OO"49: Orthopedic Clinic 7-26-95 report on Jill Coit from Jacob Patterson, M.D.

|  |  |
|---|---|
|  | "OO"50: Letter to CDOC RE Jill Coit from Walter G. Briney, MD dated September 25, 2000.<br>"OO"51: Achieve new balance tennis shoes ad.<br>"OO"52: CDOC Consultation Report Form for Jill Coit dated 4/10/01.<br>"OO"53: Medical Query Medical Information for Jill Coit dated 06/08/2005. |
| EXHIBIT PP: 5 pages | Colorado Department of Corrections Offender Consent for Disclosure of Confidential Information for Jill Coit dated 2-29-04. |
| EXHIBIT QQ:1 page | Offender Heal Services Responsibility and Organization of Clinical Services, AR #700-01, Effective 07/15/02. |
| EXHIBIT RR: 1 page | Personal Property Inventory page signed by Claimant 5-15-01. |
| EXHIBIT SS: 1 page | Bottom of medical write-up dated 7-14-00 with photo of shoes photocopied on the top half. |
| EXHIBIT TT: 1page | Diagnosis write-up from Japes P. Gremillion, DFM/jr, dated 12-8-98. |
| EXHIBIT UU:1 page | Orthopedic Clinic Consultation write-up from Jacob Patterson, M.D., 7-28-95. |
| EXHIBIT VV:1 page | Orthopaedic (sic) Clinic 12-15-99 write-up from Jacob Patterson, M.D. |
| EXHIBIT WW:1 page | Colorado Department of Corrections Cañon City, Colorado Territorial Correctional Facilty Podiatry Clinic write-up from F. James Gremillion, D.P.M., dated 1-27-99. |
| EXHIBIT XX:1 page | Podiatry Clinic 8/4/99 observations of James Gremillion, DPM. |
| EXHIBIT YY:1 page | Page 2, Jill Coit, September 9, 2000 Impression and Plan from R. Lindsay Lilly, Jr., M.D./mc. |
| EXHIBIT ZZ: 1 page | 7/29/98 Diagnosis and write-up of Internal Derangement, Left Knee, by J. Patterson, M.D./jr. |
| EXHIBIT AAA:1 page | Colorado Department of Corrections / Ambulatory Health Record 1-21-01 write-up on Jill Coit. |

| | |
|---|---|
| EXHIBIT BBB:1 page | March 4, 2004 Grievance response from Anthony A. DeCesaro, Step III Grievance Officer, concerning Grievance #C-DW03/04-0032. |
| EXHIBIT CCC:1 page | Colorado Department of Corrections / Ambulatory Health Record for Jill Coit, dated 05/21/04. |
| EXHIBIT DDD:1 page | Department of Corrections Ambulatory Health Record page 1 of 2 for Jill Coit, printed 01/25/2005. |
| EXHIBIT EEE:1 page | Colorado Department of Corrections Consultation Report Form, for Jill Coit, dated 06/29/2005. |
| EXHIBIT FFF[5]:1 page | First page of a Letter from B"H Rabbi Shmuel Spritzer Lubavitch Youth Organization, dated May 6, 2004/15 Iyar 5764. |
| EXHIBIT GGG[6]:1 page | A computer printed Social Security Query (TPQY) Dated 5/31/01 for SSN: 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. |
| EXHIBIT HHH:2 pages | Denver Health Medical Center / University Hospital Telemedicine Encounter Form for Jill Coit dated 3/9/00. |
| EXHIBIT III: 1 page | Query Waitlist for Jill Coit listing Parole Eligibility Date 03/26/3004. |
| EXHIBIT JJJ: 1 page | Query Waitlist for Jill Coit Listing Parole Eligibility Date 03/26/3004. |

The following is a list of Exhibits introduced by Claimant and NOT ADMITTED into evidence in the above referenced claim due to objection:

| | |
|---|---|
| EXHIBIT C: | State Farm medical insurance from 1983. Document withdrawn and not made part of the record. |
| EXHIBIT T: 1 page | 2 pictures of Claimant. Objection sustained based upon Fischer testimony about document and lack of knowledge of picture and relevance. |
| EXHIBIT V: | Document not in file. Objected to on basis of witness inability to establish document. |
| EXHIBIT Y: 1 page | Colorado Department of Corrections / Ambulatory Health |

---

[5] Admitted over Defendants' Objection based on Relevance.
[6] Admitted over Defendants' Objection based on Relevance.

Record dated 9-27-05.

The following is a list of Exhibits introduced by Defendants and ADMITTED into evidence in the above referenced claim:

EXHIBIT L: 1 page    Response to Step 1 ADA Grievance prepared by Cathie Holst for Jill Coit, dated sent 2/11/05.

EXHIBIT S: 15 pages   Memorandum to Dr. Mitra Razzaghi from Mary Manchester, subject offender Jill Coit, dated March 31, 2004.