IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 92-CV-870-CMA

JESSE (JESUS) MONTEZ, et al.,

Plaintiffs,

v.

JOHN HICKENLOOPER, et al.,

Defendants.

---

**RESPONSE TO PLAINTIFFS' CLASS COUNSELS'
MOTION FOR SIXTY DAY EXTENSION OF THE MONITORING PERIOD (DOC. 5498)**

---

Defendants, through the Colorado Attorney General, respectfully submit this Response to Plaintiffs' Class Counsels' Motion for Sixty Day Extension of the Monitoring Period (Doc. 5498).

## BACKGROUND

1. On September 11, 2012, the Honorable Judge Kane entered his Order finding Defendants' in substantial compliance with the Monitoring Period. *See* Doc. 5314. This triggered the contractually agreed upon two-year Monitoring Period October 1, 2012. *Id.* at p. 4; *and see* Remedial Plan.

2. Per the Remedial Plan, Class Counsel could visit each designated facility twice during the Monitoring Period. *See* Remedial Plan, § XXXI (p. 28). CDOC invited Counsel(s) to visit more. Doc. 5448.

3. From November 2010 to May 2013 (roughly 2.5 years), no visits were scheduled nor information sought. Between the September 2012 substantial compliance

1

finding and May 2013 (roughly eight months), Plaintiffs failed to initiate a single visit. Nevertheless, Plaintiffs now seek to impose an extended period of monitoring upon Defendants predicated upon their own failure to avail themselves fully of their contractually agreed upon twenty-four (24) months.

4. This Honorable Court previously found that *no formal discovery* was negotiated for by the Parties during the Monitoring Period. *See* Doc. 5484.

5. Defendants previously provided *several thousand pages* of voluntary disclosures to Plaintiffs and access to the AIC Montez Database in addition to Quarterly Reports specifically designed to aid Class Counsel in the discharge of their monitoring duties. *See* Doc. 5474.

6. In addition, this Honorable Court ordered Defendants to provide a 10% sampling of information across a number of specific categories on or before October 8, 2014. Doc. 5484, p. 5-6; pp. 8, 5. Defendants provided the information as ordered.

7. Class Counsel was permitted to request, in writing, additional "information and documentation relating to specific individual inmates, whom counsel has reason to believe were denied accommodations, services, programs, or activities under the Plan…" *See* Doc. 5484, p. 6.

8. Plaintiffs' Counsel(s) subsequently requested information and documentation pertaining to an *additional* 400+ offenders, which arguably, exceeded both the scope and depth of that provided for in this Honorable Court's Order (Doc. 5484).

9.  In a continued effort to be as cooperative as possible during the waning days of this 20+ year litigation, Defendants provided almost *each and every* document and piece of information as requested.

10.  Defendants have produced more than 50,000 pages of documentation to Plaintiffs' Counsel(s) during the Monitoring Period. *See* Doc. 5498, p. 3(c).

11.  This is nearly identical to the volume of paper produced prior to the Compliance Hearing, despite this Honorable Court's finding that *Plaintiffs had not bargained for **any** discovery* pursuant to the Remedial Plan. *See* Doc. 5484.

## ARGUMENT

12.  Plaintiffs tender three reasons for which they require additional monitoring time: (1) the absence of a key member of their attorney team; (2) the loss of two members of their attorney team; and (3) the volume of documentation they sought and received. *See* Doc. 5498, p. 3.

13.  Plaintiffs have been afforded sufficient time and information and none of these three reasons individually or in aggregate is sufficient good cause to extend the Monitoring Period in this twenty-three (23) years old litigation. As a result, the February 1, 2015, termination of the Monitoring Period should not be further extended.

**Class Counsel(s) staffing and availability:**

14.  There are four (4) accomplished attorneys representing Plaintiffs, who have been involved in this case for several years each. Up through December of 2014, Plaintiffs were represented by *five* (5) experienced, senior attorneys.

15.  Presently, Plaintiffs are represented by *four* (4) *veteran* attorneys: Ms. Greisen (Doc. 220, entered 03/06/00), Mr. Ramey (Doc. 2639, entered 05/07/07), Ms.

Marks (qua Baker) (Doc. 2988, entered 11/13/07), and Mr. Myhre (Doc. 4087, entered 08/31/09).

16. Each of these seasoned litigators' involvement in this matter predates the 2010, Compliance Hearing and the 2012, finding of substantial compliance, and thus, have the institutional knowledge base necessary to review the tendered information and documentation and prepare and file any objection.

17. On the other hand, Defendants are only represented by two (2) attorneys: Mr. Quinn and Ms. Rich Fredericks.

18. Although Mr. Quinn is a seasoned and capable attorney who has been a part of this case for several years, Ms. Rich Fredericks, the only other Defendants' attorney, is a virtual neophyte who has only been licensed to practice law since 2008, employed as a civil litigator since 2011, and a part of the class-wide component of this matter subsequent to the finding of substantial compliance in late 2012.

19. Thus, in terms of experience, knowledge, learned litigation skills, and familiarity with this litigation and its unique intricacies in particular, Plaintiffs have a significant comparative advantage and ostentatious ability, even in the unfortunate absence of one of their team members, to parse through the *limited* issues at hand in the *monitoring* and maintenance of substantial compliance.

20. Furthermore, Plaintiffs admit that at least one of their veteran attorneys was working on review of monitoring related information "virtually full time" over the past several weeks. *See* Doc. 5498, pp. 3(b).

21. As a result of this *very* thorough approach to analysis and review of information, Plaintiffs should be largely familiar with what – if any – alleged deficiencies

are at play. Indeed, although Ms. Bezoza recently relocated, it is highly unlikely that she failed to codify whatever knowledge was gleaned from her apparently exclusive work on the *Montez* case over the past several months.

22. Yet, to-date, Plaintiffs have *still* failed to share with Defendants even a single alleged instance of a class member being denied access to accommodations or programming.

23. Indeed, although the Court permitted Plaintiffs to "request, in writing, information and documentation relating to specific individual inmates, whom counsel has reason to believe were denied accommodations, services, programs, or activities under the Plan…" (Doc. 5484, pp. 6(c)), and Plaintiffs certainly availed themselves of the opportunity to seek the complete AIC ADA files of more than 400 individuals (and excerpts from working files and medical files for several, as well), Class Counsel(s) have still *never* indicated that *any* individual has been denied anything.

24. Meanwhile, the requests were meant to have been predicated upon a "reason to believe" there was *something* which had not been provided.

25. Thus, if this latest inquiry were so informed, it is unclear why Plaintiffs have been unable to either confirm or deny the purported denial(s) over the past several weeks, during which, Ms. Bezoza and Ms. Menzel were diligently working on this matter "virtually full time." For example: If John Doe alleged during a facility visit that he was denied medical shoes on June 2, 2013, and Plaintiffs sought and received Mr. Doe's AIC ADA file, it would have taken only a few minutes time to ascertain (a) whether Doe ever requested shoes; (2) when he was evaluated for shoes; and (3) when such shoes, if deemed necessary, were then provided.

26. Moreover, to the extent Mr. Doe alleged he was denied shoes; it remains unclear *why* Class Counsel(s) have not been more diligent and timely in investigating such an alleged denial and promptly informing Defendants so that, to the extent Doe actually needs medical shoes (or whatever the case may be), Defendants can properly evaluate that need and promptly provide the allegedly missing shoes.

27. In addition, Plaintiffs' Counsel(s)' semi-regularly submit their billing on this matter to Defendants for payment. Defendants have been provided such billing entries for four firms from October of 2013, up through mid-October of 2014.

28. Over a twelve (12) month period immediately preceding the invoices, Plaintiffs expounded, and seek reimbursement from Defendants for, a total of **$129,683.00 of billable time** on a case which has been administratively closed for nearly a decade.

29. This further reflects that the four (4) Plaintiffs' firms have each billed the following hours to this matter over the preceding twelve (12) months:

| | | |
|---|---|---|
| a. | King & Greisen LLP | 54.9 hours |
| b. | Heizer Paul LLP | 57.3 hours |
| c. | Foster Graham Milstein & Calisher, LLP | 27.75 hours |
| d. | Blain Myhre LLC | 75.8 hours |
| | **Total:** | **215.75** |

30. Thus, over *only* twelve (12) of the to-date, twenty-seven (27) month Monitoring Period, Plaintiffs expounded a total of 215.75 hours of time "monitoring" Defendants' compliance.

6

31.     It is of note, that this comprises less than *half* of the Monitoring Period and thus does not reflect the sum total of all such time expanded before and after this specific set of billing.

32.     Furthermore, this total does not include the "virtually full time" billing of Ms. Bezoza from October up to her December of 2014, departure.

33.     Despite this robust expenditure of resources by Plaintiffs, at cost to Defendants, and even at this late date, Plaintiffs have failed to provide Defendants or this Honorable Court even a *hint* regarding what, if anything, they allege may have fallen below the established benchmark of "substantial compliance."

34.     As evidenced by the foregoing, Plaintiffs have been afforded ample time and attorney power, by which to conduct their monitoring duties. Thus, although a member of their team has been necessarily (and quite understandably) unable to participate fully,[1] and two other members have withdrawn from the case, the remaining experienced and quite capable counsel(s) have already invested the time and resources necessary and no further extension of the Monitoring Period is required.

**Volume of information to be reviewed:**

35.     Class Counsel(s) have already been afforded both ample information and abundant time in which to discharge their monitoring duties in this case.

36.     Throughout the past 2.5 years, Plaintiffs have consistently sought *more* and *further* paperwork, documentation, information, and access to databases, etc. and

---

[1] Although sympathetic and supportive to the member of Plaintiffs' team who has been allegedly unable to work in recent months, for the reasons discussed in the closed round-table discussion with the Court, Defendants' Counsel would respectfully note that there is simply no guarantee that any specified future date will bring about the full and unfettered return of this individual (although Defendants and their Counsel(s) hope that person is up to speed far sooner rather than later). As a result, it is tenuous, at best, to select an arbitrary date in the future upon which to hinge the closure of this 23 years old case predicated upon that inchoate return.

maintained the position that they lacked sufficient information in order to discharge their monitoring duties. *See* Doc. 5407 *and see* 5462.

37. Thus, it is ironic that Plaintiffs allege they are now swamped with *too much* information. *See* Doc. 5498, pp. 3(c). Indeed, this is a problem of their making as this Honorable Court recognized that Plaintiffs requests were overly broad and have generally approached the Monitoring Period as if still entrenched in "hard fought litigation." *See* Doc. 5484, p. 4.

38. The Parties negotiated and agreed that the Monitoring Period would last for a fixed term of two (2) years. *See* Remedial Plan. If Plaintiffs required further time in order to discharge their monitoring duties they should have negotiated for that – but failed to do so.

39. This Honorable Court *already* extended the Monitoring Period for an additional four (4) months. *See* Doc. 5484, p. 8; *and see* Doc. 5488. The Monitoring Period is presently set to expire February 1, 2015. *Id.*

40. Now, Class Counsel(s) seek to extend the Monitoring Period an *additional* sixty (60) days, through April 2, 2015. *See* Doc. 5498. This means that the Monitoring Period would endure for a term of 2 years and 203 days subsequent to the September 11, 2012, finding of substantial compliance. This was not the Parties' express intent as codified in the Remedial Plan.

41. To-date, Plaintiffs have already received (27 months of monitoring) more (by 3 months) than the benefit of what they bargained for (24 months of monitoring).

42. At the February 1, 2015, closure of this case, and cessation of monitoring, Plaintiffs will realize the benefit of a total of a 29 month monitoring period (Sept. 11, 2012 – Feb. 1, 2015).

43. This case should *not* persist into perpetuity. In the words of Judge Kane, "The two-year Monitoring-Period triggered by a finding of 'Substantial Compliance' shall commence on October 1, 2012, after which the Plan will go quietly into its good night and the case dismissed." Doc. 5314, p. 4 (emphasis added).

44. That "good night" is nigh and it is undeniable: this more than two decade old piece of litigation is winding down. What is more, this case *should* end. As a result, the February 1, 2015, end-date for the Monitoring Period should not be extended.

**WHEREFORE**, for all of the reasons discussed above, Defendants respectfully request that the Motion to Extend the Monitoring Period (Doc. 5498) be denied.

Respectfully submitted this 15th day of January 2015.

        CYNTHIA H. COFFMAN
        Attorney General

        /s/ Jacquelynn N. Rich Fredericks
        JACQUELYNN N. RICH FREDERICKS, #39932
        Assistant Attorney General
        Civil Litigation & Employment Law Section
        Attorneys for Defendant
        1300 Broadway, 10th Floor
        Denver, CO 80203
        Telephone: (720) 508-6603

**CERTIFICATE OF SERVICE**

  I certify that on January 15, 2015, I filed the foregoing via ECF which will serve electronic copies addressed as follows:

| | |
|---|---|
| KING & GREISEN, LLP<br>Paula Greisen<br>1670 York Street<br>Denver, CO 80206<br>(303) 298-9878 telephone<br>(303) 298-9879 facsimile<br>greisen@kinggreisen.com | Lara E. Baker<br>Foster Graham Milstein & Calisher, LLP<br>360 S. Garfield Street, 6th Floor<br>Denver, CO 80209<br>(303) 333-9810 telephone<br>(303) 333-9786 facsimile<br>lmarks@fostergraham.com |
| Edward T. Ramey<br>Heizer Paul Grueskin, LLP<br>2401 15th Street, Suite 300<br>Denver, CO 80202<br>(303) 595-4747 telephone<br>(303) 595-4750 facsimile<br>eramey@hpgfirm.com | Blain D. Myhre<br>Blain D. Myhre, P.C.<br>P.O. Box 3600<br>Englewood, CO 80155<br>(303) 250-3932 telephone<br>blainmyhre@gmail.com<br>*Attorneys for Plaintiffs* |

                s/ Jacquelynn N. Rich Fredericks

10