| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| COLORADO DEPARTMENT OF CORRECTIONS | 600-01 | 1 OF 19 |
| | CHAPTER: Offender Classification | |
| | SUBJECT: Offender Classification | |

| RELATED STANDARDS: ACA Standards 2-CO-4B-01 through 2-CO-4B-03, 4-4133, 4-4250, 4-4251, 4-4254, 4-4281-2, 4-4295 through 4-4302, 4-4305, 4-4399, 4-4400, and 4-4502 | EFFECTIVE DATE: January 1, 2015 |
|---|---|
| | SUPERSESSION: 03/15/14 |
| OPR: OOS    REVIEW MONTH: October | Rick Raemisch<br>Executive Director |

## I. POLICY

A. *The Department of Corrections (DOC) shall provide for a written offender classification plan. [4-4502] The plan specifies the objectives of the classification system and methods for achieving them and it provides a monitoring and evaluation mechanism to determine whether the objectives are being met. The plan will be reviewed annually and updated, as needed. [4-4295]*

B. *The DOC shall ensure that all offenders are classified into at the most appropriate custody level. This policy includes the DOC classification plans, classification status reviews, and the identification of special needs. [2-CO-4B-01]*

C. As a resource to lower recidivism rates the Department will give emphasis to program completion in the offender classification process.

## II. PURPOSE

The purpose of this administrative regulation (AR) is to:

A. *Provide objective risk assessment guidelines/criteria for facility security level and offender custody level assignments for all offenders. [4-4281-2]*

B. Provide monitoring and tracking of each offender's custody and program accomplishments during confinement.

C. *Provide criteria for central classification officers and assigned case managers for objective risk management assessment. [4-4281-2]*

D. Describe the process for offender participation in the external classification system.

E. Ensure that offender programming needs and completion options are reviewed and taken into consideration as a major component of the offender (re)classification process.

EXHIBIT 6

| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

## III. DEFINITIONS

A. <u>Assessment and Classification Unit</u>: Operational unit in the Denver Complex responsible for the completion of the assessment, classification and offender record creation for offenders sentenced to the Department of Corrections.

B. <u>Case Manager (CM)</u>: An individual employed by, or under contract with the DOC or Department of Criminal Justice (DCJ), responsible for direct involvement with offenders and ensuring an ongoing process of case monitoring, case recording, counseling, and guidance. Direct involvement shall also include field community parole officers (CPO) and team leaders working in liaison with community corrections centers.

C. <u>Central Classification Committee</u>: A group of classification specialists at the level of case manager I or II who comprise the operational Central Classification Unit of the Office of Offender Services. These central classification officers will serve as liaisons to and for their assigned facilities in the areas of classification and case management. The chairperson will be the chief of classification, or designee.

D. <u>Classification</u>: A process whereby an offender is reviewed to determine appropriate custody and facility assignment. The assignment may be made based upon an objective or discretionary determination. (External Classification system)

E. <u>Classification Officer</u>: Any DOC employee, at or above the level of correctional officer III, or any person under contract who is assigned responsibilities as a classification officer for classification within a facility or the Central Office.

F. <u>Classification Task Force</u>: A task force of DOC employees to include the associate director of Offender Services(or designee), at least one representative from each correctional facility, two representatives from Adult Parole, Community Corrections, and Youthful Offender System, one representative from Correctional Industries, one representative from Clinical Services, and one representative from the Central Classification Committee.

G. <u>Custody Issues</u>:  When an offender reports that his/her safety may be compromised from a civilian or another offender, may include but limited to: testimony provided in a court of law, information provided to law enforcement related to criminal activity, by the nature of their crime, rival gang issues, extended family of the victim, debts incurred, offender's extended family, or victim proneness.  It will be the responsibility of the offender to provide information that can be confirmed and validated.

H. <u>Custody Level</u>: The degree of supervision required for each offender. Custody level utilizes the terms of minimum, minimum-restricted, medium, and close.

I. <u>Diagnostic Programmer</u>: A DOC employee at or above the level of a correctional officer III, who is responsible for the initial classification and the related diagnostic assessment of the offender upon his/her arrival into the department, and compiles the information that makes up the offender record.

J. <u>DOC Employee</u>: Someone who occupies a classified, full or part-time position in the State Personnel System (including management and at will positions) in which the Department has affect over pay, tenure, and status.

K. <u>Executive Assignment Order (EAO)</u>: An electronic form that authorizes an offender's movement from one permanent facility to another permanent facility on behalf of the executive director, or designee.

L. <u>External Classification</u>: The process of determining an offender's custody level through the use of objective scoring instruments to be used to assess risk associated with the offender in a facility and used in conjunction with other information to determine facility assignment.

| CHAPTER | SUBJECT | AR # | Page 3 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

M. <u>Facility Classification Committee Chairperson</u>: Designated individual employed by, or under contract with the DOC or Department of Criminal Justice (DCJ) at the level of CMIII or designee, who is responsible for all external classification proceedings within the facility/division, This may include Community Parole Supervisors/designee.

N. <u>Internal Classification</u>: The process used within the individual facilities to determine assignment of offenders to housing, programs, and work assignments based upon offender behavior, needs and risk assessed in conjunction with the external classification custody level.

O. <u>Internal Classification Committee</u>: A multidisciplinary committee within each respective facility chaired by the Administrative Head/designee, at or above the level of Correctional Officer IV which is responsible for all facility internal classification and status proceedings, housing/cell assignments, work and program assignments, Code of Penal Discipline outcome management and other relevant internal offender management systems.

P. <u>Interstate/Intrastate Contract or Jurisdiction Cases</u>: Offenders placed in a state with which Colorado has specific contracts for bed space.

Q. <u>Intake and Special Management Units</u>: Temporary holding cells where offenders are held for a specified period of time, pending removal to a higher security level facility for administrative action.

R. <u>Maximum/New Arrival</u>: The status designation given to an offender that is received at the Denver Complex from the jail backlog, pending initial classification determination.

S. <u>Override</u>: An action taken on the external classification instrument to increase or decrease the final custody of an offender from the scored custody level, based on mandatory or discretionary criteria, in order to match the final custody with the security level of the facility.

T. <u>Punitive Segregation</u>: A disciplinary sanction that may be imposed only after a specific disciplinary hearing has taken place, in accordance with administrative regulation 150-01, *Code of Penal Discipline.*

U. ***<u>Removal from Population (RFP)</u>: A status reserved for offenders who, for security/safety reasons, must be removed from general population. [4-4251]***

V. <u>Restrictive Housing Maximum Security Status</u>: The most restrictive offender management status for those offenders who have demonstrated through their behavior that they pose a significant risk to the safety and security of staff and other offenders, as well as to the safe and orderly operation of general population. Maximum Security status is primarily used for offenders who have demonstrated through their behavior that they pose a risk to the safe and orderly operation of a general population correctional facility.

W. <u>Security Level</u>: The physical features and operational requirements of a facility. Security levels are referred to in terms of Level I, Level II, Level III, Level IV, and Level V.

X. <u>Special Needs Offenders</u>: Offenders whose mental and/or physical condition requires special accommodation by DOC employees, contract workers, or volunteers. Special needs offenders may include, but are not limited to, drug or alcohol addicts or abusers, the emotionally disturbed, mentally retarded, suspected mentally ill, physically handicapped, chronically ill, the disabled or infirm, those with documented custody issues and those with limited academic ability or learning disability.

Y. <u>Status</u>: A housing and management assignment other than General Population.

Z. <u>Technical Parole Violator (TPV)</u>: An offender whose parole has been revoked by the Parole Board for one or more violations of parole conditions, other than a new felony conviction, or an offender who requests revocation and has no new felony convictions.

| CHAPTER | SUBJECT | AR # | Page 4 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

## IV. PROCEDURES

A. <u>Classification Rating Process</u>: The DOC utilizes an objective rating process to balance the assignment of offenders at the lowest custody level consistent with an objective assessment of public risk, the safety of DOC employees/contract workers and other offenders, the security needs of the offender, and the programmatic needs of the offender.

B. <u>Facility Security Levels</u>: Each facility operated by, or under contract to, the DOC shall have a designated security level. Designation of security levels shall be as follows:

### FACILITY SECURITY LEVELS
### CUSTODY LEVEL

<u>Level V Facilities</u>

Colorado State Penitentiary (CSP)
Denver Women's Correctional Facility (DWCF) (females)
Denver Reception and Diagnostic Center (DRDC)
San Carlos Correctional Facility (SCCF)
Sterling Correctional Facility (SCF) (*)

<u>Level IV Facilities</u>

Centennial Correctional Facility (CCF)
Limon Correctional Facility (LCF) (*)

<u>Level III Facilities</u>

Arkansas Valley Correctional Facility (AVCF)
Buena Vista Correctional Complex (BVCC) (*)
Colorado Territorial Correctional Facility (CTCF)
Fremont Correctional Facility (FCF) (*)
La Vista Correctional Facility (LVCF) (females)
La Vista Correctional Facility (LVCF) (males- special medical)
Youthful Offenders System (YOS)
YOS Adult Males–(Southern Transfer Unit-STU)
Bent County Correctional Facility (BCCF) ** (males)
Crowley County Correctional Facility (CCCF) ** (males)
Kit Carson Correctional Facility (KCCF) ** (males)
Cheyenne Mountain Re-Entry Center–(CMRC) ** (males)
**Private Contract Prisons

<u>Level II Facilities</u>

Arrowhead Correctional Center (ACC)
Buena Vista Minimum Center (BVMC)
Four Mile Correctional Center (FMCC)
Trinidad Correctional Facility (TCF)
Sterling Correctional Facility (SCF EAST Yards)

<u>Level I Facilities</u>

**OFFENDER**

<u>Mixed</u> - (May include Close and below as well as offenders assigned a certain designation and status)

<u>Mixed Close / Medium and below (*) denotes designated Close Units</u>

<u>Mixed - Close and below (*) denotes designated Close Units</u>

**Mixed- <u>Minimum Restricted and Below</u>

<u>Minimum Custody</u>

| CHAPTER | SUBJECT | AR # | Page  5 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

Colorado Correctional Center (CCC)
Delta Correctional Center (DCC)
Rifle Correctional Center (RCC)
Skyline Correctional Center (SCC)
*Contract Community Correction Centers [4-4502]*

C.  Offender Custody Designations: Identified custody levels constitute the standards of supervision within each facility operated by, or under contract to, the DOC.

    1.  Each offender under custody of the executive director shall be assigned a *level of custody and provided with a regular review of their classification. [4-4296]*

    2.  Relationship to administrative regulations 250-03, *Community Corrections Referral and Placement Process:* The review procedures outlined herein do not apply to cases that are assigned to a community corrections center or to the Inmate Intensive Supervision Program. For offenders assigned to Community Corrections (COM) or the Inmate Intensive Supervision Program (ISPI) STATUS, the classification process is suspended unless the offender is recommended for removal from Community Corrections for return to a correctional facility.

    3.  *Offenders will be reviewed at least every twelve months to ensure that they are assigned to the lowest custody and housed at the lowest security level facility balancing the needs of the offender and the department with the safety of the general public, DOC employees, contract workers, volunteers, and other offenders. [4-4300]*

D.  Initial Offender Classification: The administrative head of the Denver Complex shall be responsible for the scoring process of the "Offender Initial Custody Rating" instrument for all offenders committed to the custody of the executive director on a new incarceration. All parole violators, regardless of status, will be scored according to the provisions found in Section IV.G.1.d. of this AR.

    1.  *At initial classification, each offender is assigned to a diagnostic programmer to ensure supervision and personal contact. [4-4299]* The diagnostic programmer shall review all relevant casework materials. *The DOC solicits and uses pre-institutional assessment information regarding the offender's progress and adjustment [4-4298]* including, but not limited to, mittimus, Pre-Sentence Investigation Report (PSIR), and any prior commitment records available at the time of programming.

    2.  The diagnostic programmer shall complete the "Offender Initial Custody Rating" instrument. *(See attachments 600-1B and 600-1D)*

        a.  The scored custody level shall constitute the assigned custody level unless an override has been requested in accordance with provisions contained herein.

        b.  An override may be requested by either the diagnostic programmer or the facility classification committee chairperson of the Denver Complex.

            1)  If an override is recommended, the DRDC facility classification committee chairperson shall review the recommendation(s) and either agree or disagree with the override request. If the facility classification committee disagrees with the request, they shall recommend the scored custody and provide a statement of justification on the initial custody rating instrument, and document the justification in the record.

            2)  Regardless of whether or not the DRDC facility classification committee chairperson agrees with the recommendation for override, the initial custody rating instrument, with all supporting documentation, will be forwarded electronically to the Central Classification Committee in Offender Services.

| CHAPTER | SUBJECT | AR # | Page 6 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

3) The Assessment and Classification Unit shall forward all completed offender records electronically to the Central Classification Unit in the Office of Offender Services each business day.

4) The Central Classification Committee shall determine the assigned facility through a process of review and evaluation of all pertinent information collected at the Denver Complex.
This includes at a minimum:

   a) Mental and mental health stability;
   b) Escape history;
   c) Assaultive behavior;
   d) Medical status;
   e) Age;
   f) Custody issues.

5) The Central Classification Committee in the Office of Offender Services may agree or disagree with the facility recommendation and shall:

   a) Resolve each classification action through authorizing, denying, or modifying the instrument.
   b) Document justification for any action taken in the record, as well as in the initial custody rating instrument program.
   c) Execute an executive assignment order authorizing the offender's facility assignment.

6) All offenders assigned to the Denver Complex for the purpose of assessment and classification, are considered diagnostic program offenders for housing purposes in accordance with Colorado Revised Statute 17-40-106. Offenders are no longer considered in the diagnostic program once the assessment and classification has been completed and the offender is transferred to a permanent facility or transitional unit.

   a) All unclassified offenders at the Denver Complex will be managed as **MAXIMUM** custody, until initial classification has taken place. Offenders assigned to the Denver Complex for medical reasons or as permanently assigned offenders shall be supervised in accordance with their assigned custody levels.
   b) All offenders received with a death penalty sentence will be reviewed for Close Custody Management Control Units, in accordance with administrative regulation 600-09. All male offenders will initially be assigned to the Sterling Correctional Facility (SCF) or the Colorado State Penitentiary (CSP) and all female offenders will initially be assigned to the Denver Women's Correctional Facility (DWCF).

E. Mandatory and Discretionary Scoring Using the "Offender Initial Custody Rating" Instrument

1. A mandatory classification scoring shall be completed using the "Offender Initial Custody Rating" instrument, if the offender's first six month review date for reclassification has not been reached, and new or additional information has been received by the DOC which would alter any of the factor scores.

2. Discretionary classification scoring shall be completed using the "Offender Initial Custody Rating" instrument if the offender's custody level was scored with an initial instrument and the offender's first six month review date for reclassification has not been reached. The facility classification committee chairperson must agree with any decision to rescore the offender. Reasons for discretionary scoring are as follows:

   a. Medical or mental health need.

   b. Separation (custody) issues/needs.

| CHAPTER | SUBJECT | AR # | Page 7 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

    c.  Facility security and or safety.

    d.  Program/services need change.

    e.  Bed capacity of the DOC changes.

    f.  Any other reason deemed sufficient by the case manager, and/or facility classification committee chairperson, and **ALL** reasons will be documented in the offender record as well as in the classification instrument program.

    g.  When an offender receives a formal conviction of the *Code of Penal Discipline* (administrative regulation 150-01), a mandatory classification review shall be conducted using the "Offender Reclassification Custody Rating" instrument, even if the offender's current custody level was scored using the "Offender Initial Custody Rating" instrument and the offender's first six month review date for reclassification has not been reached. (See attachments 600-1C and 600-1E)

3.  **Any** offender received at the Denver Complex identified as a parole violator, regardless of revocation status that include revocations resulting in a new conviction, will be scored on the "Offender Reclassification Custody Rating" instrument.

4.  Offenders at high risk for sexual victimization or an offender who is alleged to have suffered sexual abuse or sexual assault shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an assessment immediately, the facility may hold the offender in involuntary segregated housing for less than 24 hours while completing the assessment **(115.43(a), 115.68).**

    a.  Offenders placed in segregated housing for this purpose shall have access to programs, privileges, education and work opportunities to the extent possible. If the facility restricts access to program, privileges, education or work opportunities, the facility shall document the opportunities limited, the reason for such limitations, and the duration of the limitation **(115.43(b)).**

    b.  The facility shall assign such offenders to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.

    c.  If an involuntary segregated housing assignment is made for this purpose the facility shall clearly document the basis for the facility's concern for the offender's safety; and the reason why no alternative means of separation can be arranged.

    d.  If an involuntary segregated housing assignment is made for this purpose every 30 days, the facility shall afford each such offender a review to determine whether there is a continuing need for separation from the general population.

F.  <u>Offender Reclassification</u>: *The classification plan provides for maximum involvement of representatives of relevant institutional programs and the offender concern in classification reviews. [4-4297]*

    1.  The first reclassification is due six months from the scoring date of the initial classification. All subsequent reclassifications will be completed no less than every 12 months.

    2.  Diagnostic programmers (DP)/Case managers (CM)/Community Parole Officers (CPO) will actively engage offenders in the classification planning process through personal interviews. *Unless precluded for security or other substantial reasons, all offenders are allowed to appear at their classification review and are given 48*

| CHAPTER | SUBJECT | AR # | Page 8 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

*hours notice, prior to their review. Such notice may be waived by the offender, in writing [4-4302]* (See the Case Management Manual). Offender participation will be documented by the assigned CM/CPO. In addition to those contacts required pursuant to administrative regulation 550-01, *Case Management System,* the CM/CPO shall, at a minimum, ensure that the offender is aware of the classification process.

3. The CM/CPO shall ensure that each offender is interviewed and a reclassification is completed using the "Offender Reclassification Custody Rating" instrument, no less than once every twelve months, except as outlined in section G below and in section IV. I. of this AR. *(See attachments 600-1C and 600-1E)*

4. Upon considering any reclassification, the CM/CPO shall review all relevant casework materials and request input from relevant programs, if none currently exists in the file.

5. Offenders participating in programming shall not be move prior to completion unless significant safety, security or services needs arise and cannot be adequately addressed at the current facility assignment. Any such movement shall be documented in the record.

G. Mandatory and Discretionary Scoring Using the "Offender Reclassification Custody Rating" Instrument

1. Mandatory Reviews: If the offender's current custody level was scored using the "Offender Reclassification Custody Rating" instrument, the following will require a mandatory classification scoring:

   a. A new criminal conviction is received or a criminal conviction is altered.

   b. Disciplinary conviction, reversal of conviction and/or expunging of conviction for Class I or II COPD violations.
      1. A reclassification will be completed under these circumstances **only if:**
         a) The scored custody would be higher than the offenders present custody level
         b) The resulting reclassification would require facility re-assignment

   c. **Any** offender identified as a parole violator, regardless of revocation status that include revocations resulting in a new conviction, arriving at the Denver Complex will be scored on the "Offender Reclassification Custody Rating" instrument.

   d. Any offender identified as a parole violator qualifying for a Community Return to Custody Facility (CRCF) under the provisions of HB 252 must be scored on the "Offender Reclassification Custody Rating" instrument in order to change status from parolee to offender.

2. Discretionary Scoring: If the offender's current custody level was scored using the "Offender Reclassification Custody Rating" instrument, the following may be considered as cause to conduct a discretionary review for the purpose of offender re-assignment:

   a. Medical or mental health need.

   b. Separation/Custody issues.

   c. Facility security and or safety.

   d. Program/services needs level change.

   e. Bed capacity of the DOC changes.

| CHAPTER | SUBJECT | AR # | Page 9 |
|---------|---------|------|--------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

    f.   Any other reason deemed sufficient by the CM/CPO, and/or facility classification committee chairperson, and approved by the Central Classification Committee in Offender Services. ALL reasons will be documented in the offender record as well as in the classification instrument program.

H.  <u>Override from the Scored Custody Level</u>: An override from the scored custody level must be submitted to the facility classification committee chairperson.

Overrides will consist of the following types:

1)  Mandatory **(non-discretionary)** overrides- Overrides that are required under policy to restrict offenders from progressing below a level III facility or a level II facility.  Mandatory overrides consist of the following:

    a.   Time Restriction- PED/MRD/SDD
    b.   Sex Offender restriction
    c.   Mental Health/Medical Code restriction (based on Clinical Time/Needs Matrix (AR 700-2)
    d.   Felony Detainer- restriction for level II or level I
    e.   ICE Detainer- I note exceptions K. 6.a.7.
    f.   Prior Escape (Secure Facility)

2)  Discretionary Overrides- Overrides that are used for assigning a higher custody or a lower custody contrary to the scored custody of the offender.

    a.    Higher custody overrides relate to the following:
       1)  Recent Assaultive Behavior
       2)  STG/Gang affiliation/activities
       3)  Crime More Severe Than Scale Indicates
       4)  Prior Record More Severe than indicated
       5)  Recent Disruptive Behavior
       6)  Notoriety of Offense
       7)  Pending Moderate and Above Charges
       8)  Close (MAX)
       9)  Transition from Close (MAX)
      10)  RTP Assignment
      11)  Retain for Programs
      12)  Program Noncompliance

    b.    Lower custody overrides relate to the following:
       1)  Positive Adjustment
       2)  Crime Less Severe Than Scored
       3)  Clinical, Education and Re-Entry Programming Needs and Completion Options
       4)  Prior Record Less Severe Than Scored
       5)  Facility Retention override
       6)  Facility Community Placement
       7)  Heroic behavior
       8)  Manageable at Level I
       9)  Manageable at level II
      10)  Manageable at Level III
      11)  ICE Detainer Level I
      12)  ICE Detainer Level II
      13)  Program – SOTMP
      14)  TC D/A

| CHAPTER | SUBJECT | AR # | Page 10 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

1.  The facility classification committee chairperson may agree, disagree, or recommend modification to cases presented for an override. The facility classification committee chairperson will review all discretionary scoring with or without the presence of an override recommendation.

    a.  In such cases, the facility classification committee chairperson shall review all documentation. If the offender disagrees with the recommendation, the committee may take the offender's statement, prior to making a decision to agree, disagree, or modify the override request, if such request has been made. Exceptions to offender participation may be made by the facility classification committee chairperson for security reasons or good cause, and the justification must be documented in the record. Refer to section IV.J.1. for a description of reasons for appeal.

    b.  In the event that the facility classification committee chairperson disagrees with the override recommendation, the administrative head will be notified and provided justification for the decision. The classification instrument will reflect the decision.

    c.  In the event that the facility classification committee chairperson agrees with an override recommendation, the override recommendation and appropriate supporting documentation shall be forwarded to the Central Classification Committee, in the Office of Offender Services for final custody level determination.

2.  The Central Classification Committee may agree or disagree with any override request, and will resolve each classification action through authorizing, denying, or modifying of the instrument. The Central Classification Committee will justify any decision by documenting it in the offender record as well as in the classification instrument program.

3.  The Central Classification Committee may initiate an override from the scored custody level of an offender, if such action is warranted to meet policy established for the classification and offender management systems. Any such override shall be documented in the offender record as well as on the appropriate classification custody rating instrument. Denial or modification of requested overrides will be discussed with the facility classification committee chairperson, or designee. If the facility classification committee chairperson and the Central Classification Committee do not agree, the case will be staffed with the Offender Services associate director. If an agreeable resolution cannot be reached with the Offender Services associate director and the facility administrative head/designee, the case will be staffed with the director of Prisons for final resolution. The final decision will be documented in the offender record as well as in the classification instrument program.

4.  *The DOC shall provide for identification of special needs offenders. [2-CO-4B-01] [4-4305] An override for special needs may be invoked only if accompanied by a recommendation from an institutional physician, psychiatrist, psychologist, or another health services professional approved by the DOC. It is to be used when the medical or psychological condition, or the intellectual functioning, of an offender requires a different level of supervision than called for by the document score, e.g., serious or contagious diseases, psychotic or suicidal behavior, and/or severe intellectual deficiencies. [4-4399]* Offenders with academic special needs may progress to lower security levels as academic programs are available at all lower levels (consistent with custody designation).

I.  Exceptions to Twelve Month Reclassification Reviews: CMs/CPOs are not required to perform routine twelve month reviews on the following offenders (with the exception of any items meeting section IV.G.1. criteria):

    1.  Offenders participating and assigned to Community Corrections (COM status) or the Inmate Intensive Supervision Program (ISPI status).

    2.  Offenders on escape status.

| CHAPTER | SUBJECT | AR # | Page 11 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

J. Offender Appeal: *The DOC offender classification plan specifies criteria and procedures for determining and changing an offender's classification status; the plan includes at least one level of appeal. [4-4301] [2-CO-4B-03]*

   1. When the offender disagrees with the recommendation of the diagnostic programmer/CM/CPO, the offender may appear before the facility classification committee chairperson and make a statement. An offender's appearance may be precluded for security or other substantial reasons and must be documented in the record.

      a. The following are criteria to be used to determine what constitutes disagreeing with and/or appealing the recommendation by the diagnostic programmer/CM/CPO:

         1) A dispute regarding the accuracy of the scoring of any factor.
         2) A dispute regarding movement resulting from inaccurate scoring.
         3) If an override requiring movement would impact the offender's current program assignment.

      b. The following are examples of what would not constitute an appeal of the custody rating instrument, recommendations, or decisions:

         1) Code of Penal Discipline conviction resulting in facility re-assignment.
         2) Program termination resulting in facility re-assignment.

   2. For the purposes of this section, facility classification committee chairperson is defined in Section III. E. The decision of the facility classification committee chairperson will be documented in the record as well as on the reclassification custody rating instrument.

   3. If the offender disagrees with the facility classification committee chairperson's decision and wishes to appeal, the offender must submit a DOC Offender Appeal Form (DC Form 150-01D) to the facility classification committee chairperson. The administrative head, or designee, will review the committee chairperson's decision and their decision will serve as the final appeal level by the offender. The final decision will be in writing and documented in the record.

K. Facility Assignments: *Offenders may be eligible for assignment to a facility based on their scored custody level and specific criteria outlined below. [4-4281-2]*

   1. Facility Assignment Criteria: Assignment to a particular custody designation does not grant the right to be assigned to, or remain at, a particular facility.

   2. Temporary assignment for medical purposes shall not be considered facility transfers within the scope of this AR.

   3. Lateral facility assignment regarding offender management issues, which impact or serve the interests of the Department of Corrections, that are outside of the normal classification process, may be made at any time. Such assignment must be approved by associate director of Offender Services, or designees.

   4. Offenders who are required to attend, or are recommended to attend, specialized programs (Sex Offender Treatment Program, therapeutic communities) will be screened for referral to the appropriate program. In the event that an offender fails to comply with the specific program requirements, their facility assignment will not be lower than a **Level III facility**, and their final custody will not be less than Medium.

   5. Any request for a variance to the established criteria for placement of an offender at any security level will be forwarded to the Assistant Director of Prisons in Offender Services for initial review. If the request is warranted, a staffing will occur with the appropriate Deputy Director of Prisons and appropriate facility administrative head for final determination. *(ED "02-11")*

| CHAPTER | SUBJECT | AR # | Page 12 |
|---------|---------|------|---------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

6. An offender shall be eligible to be considered for assignment to an appropriate level facility in the event that the following criteria are met. It is the intent of the Department to ensure that offenders who are enrolled in identified programs are afforded the opportunity to complete the program prior to consideration for lateral or progressive movement:

   a. Level I Facility Assignment: An offender is eligible **to be considered** for assignment to a Level I facility if all of the following criteria are met:

      1) Current custody level is minimum and assignment does not create a significant security risk.

      2) For CCC/DCC/RCC, less than 36 months remain to parole eligibility date (PED), and less than ten years to a mandatory release date (MRD)/institutional discharge date (SDD). Changed based on ED "11-13"

         For placement at SCC, the offender must have less than 60 months remaining to parole eligibility date (PED) and less than ten years remaining to a mandatory release date (MRD)/institutional discharge date (SDD)

      3) Has not been identified as a sex offender recommended for offense specific treatment while in prison based on past or current conviction, factual basis, or police reports of charges filed indicating verifiable behavior.

         Offenders with an S code of 3, 4, or 5 with a qualifier code of "L" are eligible for Level I placement (see "Clinical Needs and Time Placement Matrix" AR 700-02, Attachment "A").

      4) If serving sentence(s) for a violent crime(s), pursuant to administrative regulation 550-04, *Identification of Violent Offenders*, the offender must serve at least six months in a Level III, or higher, facility.

      5) Must meet clinical needs placement matrix (see AR 700-02, Attachment "A").

      6) Offenders who have felony detainers, pending charges, or warrants may be considered for placement at level I facility if:

         a) It is has been verified as non-extraditable.
         b) The detainer, pending charge, or warrant is for a non-violent case at or below a Class 5 felony.
         c) It is staffed with Central Classification and is approved by the administrative head or designee.
         d) Placement is **NOT** for a Community Corrections assignment.

      7) Offenders with Immigration and Customs Enforcement (ICE) detainers may be eligible for placement at DCC/RCC/CCC. Offenders with ICE detainers are not eligible for placement at SCC or at community corrections centers.

      8) Community Assignment: An assignment must be approved by the Community Corrections Board if the offender meets timeframes and criteria for referral according to CRS 18-1.3-301 and AR 250-03, *Community Corrections Referral and Placement Process.*

      9) Offenders who have identified escape history may be considered for placement at a security level I facility if:

         a) The escape/attempted escape was from a community based placement or was an absconder from

| CHAPTER | SUBJECT | AR # | Page 13 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

supervised parole/probation.

b) The escape/attempted escape was without violence, from a security level II facility or below, and not in the last seven years.

c) The escape/attempted escape was without violence, from a security level III facility or above, and not in the last 15 years.

d) If the escape/attempted escape involved violence either during the escape or while on escape status, regardless of security level of facility, the offender is **NOT** eligible for level I assignment.

b. Level II Facility Assignment: An offender is eligible **to be considered** for assignment to a Level II facility if all the following criteria are met:

1) Current custody level is minimum restricted, or below, and assignment would not create a significant security risk.

2) Less than 60 months remain to parole eligibility date(PED) and no restriction on Mandatory Release Date (MRD)/ Institutional/Statutory Discharge Date (SDD)

3) If serving sentence(s) for a violent crime(s), pursuant to administrative regulation 550-04, *Identification of Violent Offenders*, the offender must serve at least six months in a Level III or higher facility.

4) Must meet clinical needs placement matrix (see AR 700-02, Attachment "A").

5) Meets stipulations for identified treatment needs as identified in section IV.K.4 of this AR.

6) Offenders serving a life sentence, **with the possibility of parole**, must have their case staffed by Central Classification, prior to any progressive movement below Level III. The facility case manager will be responsible to notify the central classification officer that the offender is being considered for progressive movement. The central classification officer will submit their recommendation to the associate director of Offender Services for review. Any decision made to progress such an offender will be done in accordance to a variance request as outlined in section IV.K.5. of this AR.

7) Offenders serving a life sentence without the possibility of parole are not eligible for level II placement.

8) Has not been identified as a sex offender recommended for offense specific treatment while in prison due to past or current conviction, factual basis, or police reports of charges filed indicating verifiable behavior. Exceptions may be made for placement in a Sex Offender Treatment Program.

Offenders with an S code of 3, 4, or 5 with a qualifier code of "L" are eligible for Level II placement (see "Clinical Needs and Time Placement Matrix" AR 700-02, Attachment "A").

9) Offenders who have felony detainers, pending charges, or warrants may be considered for placement at level II facility if:

a) It is has been verified as non-extraditable or,
b) The detainer, pending charge, or warrant is for a non-violent case at or below a Class 4 felony.
c) It is staffed with Central Classification and is approved by the facility warden, or designee.

10) Offenders who have identified escape history may be considered for placement at a security level II

| CHAPTER | SUBJECT | AR # | Page 14 |
|---------|---------|------|---------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

facility if:

   a) The escape/attempted escape was from a community based placement or an abscond from supervised parole/probation.

   b) The escape/attempted escape was without violence, from a security level II facility or below, and not in the last seven years.

   c) The escape/attempted escape was without violence, from a security level III facility or above, and not in the last ten years.

   d) If the escape/attempted escape involved violence either during the escape or while on escape status, regardless of security level of facility, the offender is **NOT** eligible for security Level II assignment.

11) Offenders may be assigned to the Sterling Correctional Facility (SCF) East yards with the following time criteria:

   a) May have up to 8 years to Parole Eligibility Date (PED)

   b) no restriction on Mandatory Release Date (MRD) or Institutional/Statutory Discharge Date (SDD)

12. Offenders determined to benefit from accessible housing may be considered for placement at lower custody level accessible facilities in exception to existing placement criteria.

   a) These cases will be staffed by a multi-disciplinary team. The team should consist of a member from central classification, clinical services staff at the receiving facility, the management team at the receiving facility and the regional health services administrator.

   b) Once a decision on the appropriateness of the placement is made, central classification will initiate a variance request for approval from the Director of Prisons as listed in IV.K.5. of this AR.

c. Level III Facility Assignment: An offender is eligible **to be considered** for assignment to a Level III facility if all the following criteria are met:

   1) Current custody level is mixed, (close or medium).
     a) Offenders with a final custody less than medium may be housed at level III but only for specific work assignments as dictated by the needs of the facility, and approved by the appropriate Deputy Director of Prisons.
     b) Offenders with a final custody of Close will be housed in specifically identified units and managed according to *AR 600-9 Management of Close Custody Offenders.*

   2) Must meet clinical needs placement matrix (see AR 700-02, Attachment "A").

d. Level IV Facility Assignment: An offender is eligible **to be considered** for assignment to a Level IV facility if all the following criteria are met:

   1) Current custody level is mixed, (close or medium ). Offenders with a final custody less than medium may be housed at level IV but only for specific work assignments as dictated by the needs of the facility and approved by the appropriate Deputy Director of Prisons.  Offenders will be managed in designated units based upon their final custody and or STATUS which includes Protective Custody (P).

| CHAPTER | SUBJECT | AR # | Page 15 |
|---------|---------|------|---------|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

    2)  Must meet clinical needs placement matrix (see AR 700-02, Attachment "A").

  e.  Level V Facility Assignment: An offender is eligible **to be considered** for assignment to a Level V facility if any of the following criteria are met:

    1)  Current custody level mixed, close, and below and includes Restrictive Housing Maximum Security Status (MAX), Close Management Control Unit (MCU), Close Custody Management Control Unit / High Risk (MCH), Close Custody Management Control Unit / Protective Custody (P), Close Custody Transition Unit (T), or Residential Treatment Program (RTP).

    2)  Active death sentence (CSP, SCF or DWCF assignment only). ED "02-11"

    3)  Offenders who are assigned to a specialized program, STATUS and/or facility, such as but not limited to DRDC/DWCF/SCCF/SCF/CCF/CSP. As much as possible offenders will be managed in designated units based upon their final custody and or STATUS.

L.  Supervision of Offenders Prior to Assignment

  1.  In the event that an offender is on a waiting list for assignment to a facility with a higher designated security level, the offender shall be supervised at the higher assigned custody level to the extent practicable within the resources available at their present facility.

  2.  In the event that an offender is on a waiting list for assignment to a facility with a lower designated security level, the offender shall be supervised at the custody level equivalent to the security level of the current facility.

  3.  If continued housing of an offender at their presently assigned facility would pose significant risk of injury to the offender, another offender(s), or constitute an extreme risk or threat to the security of the facility or risk to the general public, the offender shall be reviewed for temporary assignment to a more appropriate facility on an emergency basis. Such movement shall be approved by the Offender Services associate director, or designee, within one working day and must be followed by appropriate classification documents within ten working days.

M.  Removal from General Population (RFP): *If housing of an offender within the general population would be inconsistent with the safety of the offender, DOC employees, contract workers, volunteers, visitors, or the security of the facility, the shift commander may order the temporary removal of the offender. The offender may be reassigned to a separate living area when no other alternative is available, [4-4133] [4-4251] within the current facility or another facility. In such cases, the following procedures shall be followed:*

  1.  Procedures for using the RFP Form DC Form 600-01A:

    a.  The shift commander shall complete DC Form 600-01A, "Removal from Population," (Attachment "A") and forward to the facility administrative head, or designee, no later than one working day after such action has been taken. *Clinical Services will be informed immediately when an offender is transferred to segregation so a screening (anatomical) may be performed. [4-4400]*

    b.  The administrative head/designee shall review the removal of an offender from general population within one working day after such action has been taken.

    c.  *The facility Classification Committee chairperson and/or classification officer will review the RFP within three working days of the administrative head review. [4-4250]*

    d.  *The offender shall be returned to the general population within ten working days after removal, unless reclassification, disciplinary, or restrictive housing maximum status review procedures have been initiated. The return to general population will be reviewed and approved by the appropriate authority,*

| CHAPTER | SUBJECT | AR # | Page 16 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

*as designated by facility policy. In the event that any one of these procedures has been initiated, the time limits and review/approval of the applicable policy shall be followed. [4-4254]*

2.  Exceptions to using the RFP form would be for placement into segregation as the direct result of sanctions on an offense where the offender was not removed from population prior to the hearing. In this case, the DC Form 600-01A would not be used.

N.  Utilization of Intake and Special Management Units: As placement in temporary segregation units (level I/II segregation units) is a temporary assignment, offenders will be moved at the next available scheduled transport to a higher level security facility.

O.  Interstate and Intrastate Contract Cases: Offenders placed in a state or facility in which Colorado has executed specific contracts for bed space will be managed through the Private Prison Monitoring Unit after approval of the executive director, or designee.

1.  The facility classification committee chairperson at each facility will review the criteria identified by the Office of Offender Services and the Private Prisons Monitoring Unit to determine those offenders who may be referred for contract housing.

2.  The Office of Offender Services and the Private Prisons Monitoring Unit shall have final approval of all cases identified for contract housing.

3.  Offenders placed in a contracting state will be monitored by the Private Prisons Monitoring Unit. In selected instances, specific facilities may be asked to monitor caseloads. This service may require coordination with the Private Prisons Monitoring Unit.

P.  Interstate Corrections Compact Exchange Cases: *Transfer of offender supervision to and from out-of-state jurisdictions shall be in accordance with interstate corrections compacts and other interstate agreements and interstate contracts. [2-CO-4B-02]* The Interstate Corrections Compact Office, within the Office of Offender Services, will manage all interstate corrections caseloads. Offenders requesting transfer out-of-state shall make their request to their assigned case manager who shall refer the request to the facility Classification Committee chairperson for review. (See the Case Management Manual.)

1.  If the facility classification committee chairperson approves the case for referral to the administrative head, the "Interstate Corrections Compact Services Application," will be completed.

2.  If the administrative head approves the case, a release of records form and other supporting documents to include: diagnostic summary, pre-sentence investigation, mittimus(s), current performance assessment summary, classification rating, and other relevant case materials are forwarded, along with the "Interstate Corrections Compact Services Application," to the Office of Offender Services. Offender Services shall review and process to states under the Interstate Compact Agreement. If the requested state is not under compact with Colorado, the request may be denied.

3.  Offenders will observe the receiving state's policies, rules, and procedures related to, but not limited to, classification, case management, and discipline code.

4.  Offenders requesting out-of-state transfer shall be responsible for all costs associated with the transfer to the respective compact state.

Q.  Classification Task Force

1.  Suggestions for modifications to this AR shall be routed through the chairperson of the Classification Task Force.

| CHAPTER | SUBJECT | AR # | Page 17 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

2. Executive DOC employees, the associate director of Offender Services, or the Classification Task Force may call for evaluations of the classification system. This may be called for as needed, but the *classification plan shall be reviewed at least annually, and updated, as needed. [4-4295]* Specific monitoring processes will be established.

R. Procedural Irregularities and Variances

1. Any inadvertent procedural irregularity shall not constitute grounds for setting aside, vacating, or modifying a classification decision, except upon a clear showing of prejudice to the offender.

2. Any variance of this administrative regulation shall be referred, in writing, with recommendations and documentation, to the executive director.

S. Declaration of Emergency: In the event the executive director, or appropriate director, has declared an emergency, due to a significant facility or center disturbance or emergency, the provisions of this AR may be suspended.

## V. RESPONSIBILITY

A. Each administrative head will be responsible to:

1. Establish a case management section within their facility and identify a specific supervisor or manager for the case management responsibilities.

2. Disseminate this administrative regulation to all appropriate DOC employees and contract workers that are responsible for adhering to this AR.

3. Ensure that classification policies and procedures are in compliance with this administrative regulation.

4. Review and give final approval of override recommendations; prepare, transmit, and track case materials to appropriate governmental or non-governmental agencies, to ensure coordinated placement of appropriate offenders in community facilities; will ensure and determine the appropriate custody levels for all offenders assigned to their respective facilities, offices, or divisions. The facility case manager may make special recommendations for offenders based upon identifiable needs and detailed written justification.

B. The assistant director of Prisons is responsible to ensure compliance with this administrative regulation.

C. The associate director of Offender Services will be responsible for:

1. Overall implementation, compliance, and review of this administrative regulation.

2. Override or modify decisions relative to classification actions completed at the facility level, according to this policy, with a show of good cause, and document such decisions on the classification custody rating instrument and in the central offender record (department file).

3. Direct the calling for, and the implementation of, the Classification Task Force.

4. Coordinate the Classification Task Force meeting.

5. Act as the Central Classification Committee chairperson.

6. Develop training, in coordination with the training coordinator, for classification and case management.

| CHAPTER | SUBJECT | AR # | Page 18 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

D.   The Central Classification Committee will be responsible to:

1.   Review each classification action and related documentation in order to make decisions regarding initial facility assignment, progressive, regressive, or lateral assignments.

2.   Resolve with the facility Classification Committee chairperson, or designee, all cases recommended by the facility regarding a classification action, and or offender movement, when a disagreement exists.

3.   Transmitting EAOs (executive assignment orders) to the appropriate facility.

4.   Override or modify decisions relative to classification action completed at the facility level, according to this policy, with a show of good cause, and document such decisions on the classification instrument and in the central offender record (department file).

5.   Serve as classification/case management liaisons for/to their assigned facilities, utilizing existing data systems to monitor the areas of offender management systems. Work with the case management supervisors, facility managers, and administrative heads to resolve issues pertaining to these areas.

E.   The facility classification committee chairperson/case management supervisor shall be responsible for:

1.   Agreement, disagreement, or recommending modification to cases presented by the offender's assigned case manager for an override, and or offender movement.

2.   Reviewing all discretionary scoring, with or without the presence of an override recommendation (as defined in section IV.H.1.a,b,c.).

3.   Coordination and supervision of all case managers and case management activities to include classification for the facility/center. Serve as facility classification committee chairperson if so designated by the administrative head.

4.   Ensuring that activities and functions of the case management process, between the case manager and offenders assigned, are adequately monitored and defined.

5.   Monitoring implementation of this administrative regulation within the facility.

F.   Diagnostic Programmer/Case managers/Community Parole Officers shall be responsible to:

1.   Review all relevant casework materials including, but not limited to, mittimus(s), violation(s) of the *Code of Penal Discipline* (AR 150-01), pre-sentence investigation report, time computation information, prior criminal history, escape history, detainer(s), and the Denver Complex's initial summary and evaluation.

2.   Maintain time computation records and advise offenders of critical changes which may impact their custody level.

3.   Advise offenders assigned to caseload of facility classification committee chairperson and Central Classification Committee decisions as soon as possible.

4.   Present all classification cases to the facility classification committee chairperson when:

a.   The offender's scored custody level is inconsistent with his/her presently assigned facility or assignment.

| CHAPTER | SUBJECT | AR # | Page 19 |
|---|---|---|---|
| Offender Classification | Offender Classification | 600-01 | EFFECTIVE 01/01/15 |

    b.  An override request has been made. The offender may make a statement to the facility classification committee chairperson when the offender disagrees with the recommendation.

    c.  The offender's scored custody level is higher than the current facility assignment. The facility classification committee chairperson must review such cases even if an override is not being recommended.

    d.  Any discretionary scoring must be reviewed by the facility classification committee chairperson even when an override is not recommended.

5.  Ensure that all offender custody designations and facility assignments are chronologically documented for inclusion into the offender's case files.

## VI. AUTHORITY

A. CRS 16-11-308. Custody of department of corrections - procedure.
B. CRS 17-1-103. Duties of the executive director.
C. CRS 17-25-103. Placement limitations.
D. CRS 17-40-101 through 107 as amended. Colorado Diagnostic Program.
E. CRS 18-1.3-301. Authority to place offenders in community corrections programs.
F. CRS 18-1.3-406. Mandatory sentences for violent crimes.
G. CRS 24-60-801. Western Interstate Corrections Compact.
H. CRS 24-60-1601. Interstate Corrections Compact.

## VII. HISTORY

March 15, 2014
February 1, 2013
February 1, 2012
December 1, 2010
October 15, 2009
October 15, 2008
October 15, 2007
December 1, 2006
December 1, 2005
June 1, 2005

ATTACHMENTS:

A. DC Form 600-01A, Removal from Population
B. DC Form 600-01B, Offender Initial Custody Rating
C. DC Form 600-01C, Offender Reclassification Custody Rating
D. AR Form 600-01D, Female Initial Custody Rating
E. AR Form 600-01E, Female Reclassification Custody Rating
F. AR Form 100-01A, Administrative Regulation Implementation/Adjustments

DC Form 600-01A (01/01/15)

## DEPARTMENT OF CORRECTIONS
## REMOVAL FROM POPULATION
### FACILITY_____

| | |
|---|---|
| OFFENDER NAME: | DOC NUMBER: |
| CURRENT CUSTODY DESIGNATION | CURRENT PMD/PED |

REMOVAL FROM POPULATION: THE OFFENDER IS BEING REMOVED FROM THE POPULATION AND IS BEING SEGREGATED, OR MOVED TO A MORE SECURE FACILITY, PENDING AN ONGOING INVESTIGATION WHICH MAY LEAD TO EITHER CRIMINAL OR DISCIPLINARY CHARGES, AND FACILITY REASSIGNMENT.

REASON:
[] Offender's conduct poses serious threat to security of facility
[] To prevent imminent injury to an offender(s) or to a DOC employee/contract worker(s)
[] To contain or prevent or quell a riot
[] To prevent escape
[] Other, specify_____

JUSTIFICATION:
_____
_____
_____

SHIFT COMMANDER/DUTY OFFICER: _____ _____ _____

      DATE: _____   TIME: _____

CLINICAL SERVICES NOTIFIED - DATE: _____TIME: _____   NAME: _____

    [] AGREE      [] DISAGREE-RETURN TO GENERAL POPULATION

COMMENTS: _____
_____
_____

ADMINISTRATIVE HEAD/DESIGNEE _____

      DATE: _____   TIME: _____

CLASSIFICATION COMMITTEE CHAIRPERSON/CLASSIFICATION OFFICER

      [] AGREE      [] DISAGREE-RETURN TO GENERAL POPULATION
      DATE: _____   TIME: _____

SIGNED: _____
*NOTE: THIS REVIEW MUST BE COMPLETED WITHIN 3 WORKING DAYS OF THE ADMINISTRATIVE HEAD'S REVIEW

DISTRIBUTION:   White-Department File       Canary-Working File

THIS DOCUMENT IS A COMPUTERIZED FACSIMILE FOR ADMINISTRATIVE REGULATION AND IS NOT INTENDED TO REPLACE THE ORIGINAL DC FORM 600-01A.

Attachment "A"
Page 1 of 1

DC Form 600-1B (02/01/13)

**DEPARTMENT OF CORRECTIONS - OFFENDER INITIAL CUSTODY RATING**
**FACILITY:** _____

| Offender Name _____ | DOC # _____ | PMD/PED_____ |
| Case Manager _____ | Last Custody Level _____ | Scoring Date_____ |

1. **HISTORY OF INSTITUTIONAL VIOLENCE** (Review individual's entire background of incarceration for seven (7) years prior to admission date.)
   None................................................................... 0
   Assault and Battery not involving weapon; no serious injury (exclude fighting)............... 3
   Assault and Battery involving use of weapon or serious injury.................................... 10
   Assault against staff or visitors................................................................. 10          _____

2. **SEVERITY OF CURRENT CONVICTION** (Score most serious conviction)
   Low..................................... 1          Low Moderate .................................. 2
   Moderate............................... 3          High............................................... 5
   Highest.................................. 7                                                             _____

3. **SEVERITY OF PRIOR CONVICTION** (Score most serious in adult history)
   None, Low, or Low Moderate................................................. 0
   Moderate.................................................................................... 2
   High........................................................................................... 4          Highest.............................................................................
   6                                                                                              _____

4. **ESCAPE HISTORY** (Rate last three (3) years of incarceration.)
   An escape/attempted escape/abscond resulting in administrative action............................................. 3
   An escape/attempted escape from Level II facility or below (no violence)...................................... 4
   An escape/attempted escape from Level III facility or above (no violence)...................................... 6
   An escape/attempted escape from any facility with violence........................................................ 10     _____

**SCORE PART A: (Add items 1 through 4)       PART A SCORE:**

_____

5. **PRIOR FELONY CONVICTIONS**
   None................ ............. 0    One............................................. 1
   Two.............................. 2    Three or More.................................. 3          _____

6. **CURRENT AGE**
   27 yrs or younger................ 2          28 – 37 yrs.…………………………........ 1
   38-60 yrs...........................0   61 yrs  & older..................................-1          _____

7. **EDUCATION  LEVEL AT ADMISSION**
   High School diploma or GED received............. -1          Otherwise............ 0          _____

8. **EMPLOYMENT STATUS AT ADMISSION**
   Employed/attending school (full/part-time) for 6 months or more at time of arrest. .....-1  Other....0   _____

*Determine Scored Custody Level Indicated by Scale Below*

**TOTAL CUSTODY SCORE (items 1 – 8)**

14 or more points= Close   10 to 13 points= Medium   5 to 9 points= Min-R   4 or fewer points= Minimum

Attachment "B"
Page 1 of 2

DC Form 600-1B (02/01/13)

# OVER-RIDE REVIEW

Check (✓) All Factors that Apply to this Offender for Purpose of Over-Riding Scored Custody Level

## Non-Discretionary – Minimum Custody Restrictions

_____ Time Restriction
_____ Sex Offender
_____ Felony Detainer
_____ Prior Escape Secure Facility

## Discretionary Over-Ride – Higher Custody

_____ Recent Assaultive Behavior
_____ Gang affiliation/activities
_____ Crime More Severe Than Scale Indicates
_____ Prior Record More Severe than indicated
_____ Recent Disruptive Behavior
_____ Notoriety of Offense
_____ Pending Moderate and Above Charges

## Discretionary Over-Ride – Lower Custody

_____ Positive  Adjustment
_____ Crime Less Severe Than Scored
_____ Re-Entry Programming Needs
_____ Prior Record Less Severe Than Scored

### CUSTODY DESIGNATION

**CASE MANAGER**
Instrument scored custody level: _____   Next scheduled review date:
Override requests: _____ Yes _____ No  [Code # _____ ] Recommend custody level:
Justification/Comments:

Offender Signature: _____ Case Manager/Programmer: _____ Date:
Approval: _____ Yes _____ No _____ Modified   Justification

**COMMITTEE**

Custody Designation: _____ Cass. Chairman: _____ Date:

Override _____ Authorized _____ Denied _____ Modified Custody Designation:
Comment/Stipulations:

**OFFENDER SERVICES**

Authorized Signature: _____ Date:

## Distribution:  White - Department; Canary - Working; Green - Offender

Attachment "B"
Page 2 of 2

DC Form 600-1C (02/01/13)

## DEPARTMENT OF CORRECTIONS
## OFFENDER RECLASSIFICATION CUSTODY RATING

**FACILITY:** _____

| | | | |
|---|---|---|---|
| Offender Name _____ | DOC # _____ | PMD/PED _____ | |
| Case Manager _____ | Last Custody Level _____ | Scoring Date _____ | |

1. HISTORY OF INSTITUTIONAL VIOLENCE (Review individual's entire background of incarceration for 7 years prior to admission date.)
None............................................................................................ 0
Assault and Battery not involving weapon; no serious injury (exclude fighting)...................................... 3
Assault and Battery involving use of weapon or serious injury........................................................ 10
Assault against staff or visitors.............................................................. 10        ____

2. SEVERITY OF CURRENT CONVICTION (Score most serious conviction)
Low................................1          Low Moderate ....................2          Moderate............................3
High..............................5          Highest............................7                                              ____

3. SEVERITY OF PRIOR CONVICTION (Score most serious in adult history)
None, Low, or Low Moderate........................................0   Moderate................................ 1
High............................................................3          Highest................................ 4        ____

4. ESCAPE HISTORY (Rate last three (3) years of incarceration.)
An escape/attempted escape/abscond resulting in administrative action.......................................... 3
An escape/attempted escape from Level II facility or below (no violence)..................... ............... 4
An escape/attempted escape from Level III facility or above (no violence)...................................... 6
An escape/attempted escape from any facility with violence......................................................... 10        ____

## SCORE PART A: (Add items 1 through 4)          PART A SCORE:

____

5. TYPE OF MOST SERIOUS DISCIPLINARY REPORT – PAST 12 MONTHS
None...........................................-1   Class II b>.................................................. 3
Class II a…......…..................……......5   Class I (past 18 months) ………………………….7        ____

6. FREQUENCY OF DISCIPLINARY REPORTS (CLASS I AND II ONLY) – PAST 12 MONTHS
None............................................-1   1...........................................0
2.................................................1   3........................................…... 3
4 or more ……………………………….5                                              ____

7. PROGRAM PARTICIPATION (Over the past six (6) months, including GED/ABE)
Noncompliance with recommended programs…..0 On waitlist or participation for recommended program…..-1.
No recommended programs or Completion of recommended programs…………………………………………..-2   ____

8. WORK EVALUATIONS (Over the last six (6) months)
Maintained satisfactory employment .................................................................................... -2
Medically unassigned or actively seeking employment ...............................................................0
Unsatisfactory termination, refusal to work, or not actively seeking employment ...............................2   ____

9. CURRENT AGE
27 yrs or younger........ 2    28 – 37 yrs........... 0   38-60 yrs..............-1   61 yrs  & older..........-2   ____

## Determine Scored Custody Level Indicated by Scale Below
TOTAL CUSTODY SCORE (items 1 –9)
15 or more points = Close____   13 to 14= Medium____3 to 12 points = Minimum R____   2 or fewer points = Minimum____
Attachment "C"
Page 1 of 2

## OVER-RIDE REVIEW
Check (✓) All Factors that Apply to this Offender for Purpose of Over-Riding Scored Custody Level

| Non-Discretionary – Minimum Custody Restrictions | Discretionary Over-Ride – Higher Custody | Discretionary Over-Ride – Lower Custody |
|---|---|---|
| _____ Time Restriction | _____ Recent Assaultive Behavior | _____ Positive Adjustment |
| _____ Sex Offender | _____ Gang affiliation/activities | _____ Crime Less Severe Than Scored |
| _____ Felony Detainer | _____ Crime More Severe Than Scale Indicates | _____ Re-Entry Programming Needs |
| _____ Prior Escape Secure Facility | _____ Prior Record More Severe than indicated | _____ Prior Record Less Severe Than Scored |
| | _____ Recent Disruptive Behavior | |
| | _____ Notoriety of Offense | |
| | _____ Pending Moderate and Above Charges | |

**CUSTODY DESIGNATION**

Instrument scored custody level: _____   Next scheduled review date: _____

Override requests: _____ Yes _____ No  [Code # _____ ] Recommend custody level: _____

CASE MANAGER: Justification/Comments:


Offender Signature: _____  Case Manager: _____  Date:


COMMITTEE: Approval: _____ Yes _____ No       Facility retention override: _____ Yes _____ No


Custody Designation: _____  Class. Chairman: _____  Date: _____

Distribution:  White - Department; Canary - Working; Green - Offender

## IF ACTION REQUIRES FACILITY REASSIGNMENT, SEND FORM INTACT

Attachment "C"
Page 2 of 2

AR Form 600-01D (02/01/13)

STATE OF COLORADO DEPARTMENT OF CORRECTIONS
FEMALE  INITIAL CUSTODY RATING

**FACILITY:**_____
Offender Name_____   **DOC #** _____   **MRD/PED** _____

Case Manager _____   **Scoring Date**_____

**1. HISTORY OF INSTITUTIONAL VIOLENCE** (Review individual's entire background of incarceration for three years prior to admission date.)
None.................................................................................0
Assault and Battery, not involving a weapon or injury (exclude fighting)...............3
Assault and Battery, against staff or visitors....................................5
Assault and Battery involving use of weapon or serious injury......................10

**2. SEVERITY OF CURRENT CONVICTION** (Score most serious offense of current conviction; score community escape as low)
Low............1          Low Moderate........2          Moderate.....3
High ......5          Highest.........7
If multiple convictions are for High or Highest, add 2 points.................2
If offense resulted in death, add 2 points......................................2
If score is > 3 and the offense was a one time only result of sustained victimization of the offender subtract 3 pts.

**3. SEVERITY OF PRIOR CONVICTIONS** (Score most serious in adult history.)
None, low, or low moderate.............0          Moderate........................2
High....................................4          Highest .......................6

**4. ESCAPE HISTORY** (Rate for the last 3 years of incarceration).
No escapes...............................................................0
An escape/attempted escape/abscond resulting in administrative action................1
     (Not to include walkaways with a voluntary return within 24 hours)
An escape/attempted escape from Level II or below (no violence)..................2
An escape/attempted escape from Level III or above (no violence)..................6
An escape/attempted escape from any facility involving violence....................8

**5. PRIOR FELONY CONVICTIONS**
None..............0 One...........1 Two or more.........2

**6. LSI ALCOHOL/DRUGS**
0-1 On LSI Drugs/Alcohol Component....................................0
2-7 On LSI Drugs/Alcohol Component...................................1
8-9 On LSI Drugs/Alcohol Component...................................2

**7. CURRENT AGE**
Less than 33.................................................................2
33 and above ...............................................................0

**8. MENTAL HEALTH**
P1 or P2........................................................................0
P3 or above....................................................................2

**9. EMPLOYMENT**
Employed/In School/Full Time Parenting 6 Months Prior to Arrests.................0
Not Employed..................................................................1

**10. NEEDS ASSESSMENT**
22 or Above on Needs Scale....................................................1
21 or Below on Needs Scale....................................................0

**11. PAROLE ELIGIBILITY DATE**
Over 5 years....................................................................3
5 years or less.................................................................0

Total Score.............

<center>Attachment "D"<br>Page 1 of 2</center>

AR Form 600-01D (02/01/13)
Close Custody....................................................19 and above
Medium Custody....................................................13 - 18
Minimum Restricted...............................................7 - 12

Minimum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 or less

**CUSTODY DESIGNATION**

**CASE MANAGER/PROGRAMMER**

Instrument scored custody level:_____ Next scheduled review date:_____

Override requests:_____ Yes _____ No [Code # _____] Recommended custody level:_____

Justification/Comments:_____

Offender Signature:_____ Case Manager/Programmer:_____ Date:_____

**CLASSIFICATION COMMITTEE**

Approval:_____ Yes _____ No_____ Modified _____ Justification:_____

Custody Designation:_____ Classification Chairman:_____ Date:_____

**OFFENDER SERVICES**

Override _____ Authorized _____ Denied _____ Modified _____ Custody Designation:_____

Authorized Signature:_____ Date:_____

Attachment "D"
Page 2 of 2

AR Form 600-01E (02/01/13)

**STATE OF COLORADO DEPARTMENT OF CORRECTIONS**
**FEMALE RECLASSIFICATION CUSTODY RATING**

**FACILITY:**_____

**Offender Name**_____**D.O.C.#**_____**MRD/PED**_____

**Case Manager**_____ **Last Custody Level**_____ **Scoring Date**_____

1.    **HISTORY OF INSTITUTIONAL VIOLENCE (For last three (3) years of incarceration prior to this reclassification date.)**
None ........................................................................................................................................................................0
Assault/Battery, not involving a weapon or injury (exclude fighting) ........................................................................3
Assault/Battery, on staff with intent ..........................................................................................................................5
Assault/Battery involving use of weapon or serious injury.................................................................................. 10    _____

2.    **DID ABOVE ASSAULT OCCUR WITHIN LAST TWELVE MONTHS?**    Yes.........3      No ........ 0    _____

3.    **SEVERITY OF CURRENT CONVICTION (Most serious of current convictions; score escape as low.)**

     Low    1      Low Moderate    2      Moderate   3
High..........................................5    Highest ...............................7    _____
If multiple convictions are for High or Highest, add 2 points ........................................................................ .......2    _____
If offense resulted in death, add 2 points ...................................................................................................................2    _____
If score is >3, and the offense was a one time only result of sustained victimizations of the offender, subtract 3 points ............... •3    _____

4.    **SEVERITY OF PRIOR CONVICTIONS (Score most serious in adult history.)**
None, Low, or Low Moderate.....................................0    Moderate ............................................................1
High ...........................................................................2    Highest .............................................................3    _____

5.    **ESCAPE HISTORY (Rate for last three (3) years of incarceration.)**
No escape history........................................................................................................................................................0
Escape/attempted escape/abscond resulting in an administrative action ......................................................................1
Escape/attempted escape from Level II or below (no violence)...................................................................................2
Escape/attempted escape from Level III or above (no violence)..................................................................................6
Escape/attempted escape from any facility involving violence....................................................................................8    _____

6.    **DISCIPLINARY CONVICTIONS RECEIVED (Cumulative)**
Last 24 months      Number of Class I      _____   X   5 =    _____
Last 12 months      Number of Class IIa      _____   X   3 =    _____
                       Number of Class II b      _____   X   1 =    _____

7.    **HISTORY OF DISCIPLINARY INFRACTIONS (Do not include Class III's unless three or more this review period.)**
None in last 25+ months ........................................................................................................................................... -7
None in last 19-24 months ......................................................................................................................................... -5
None in last 13-18 months ......................................................................................................................................... -3
None in last 7-12 months ........................................................................................................................................... -2
None in last 6 months ............................................................................................................................................... •1    _____

8.    **CURRENT AGE**
Less than 33.... .....................................................................2    33 and above .....................................................0    _____

9.    **PROGRAM PARTICIPATION**
Participation in recommended programs (over past six (6) months, including GED/ABE) ........................................ -2
Completion of recommended programs (over this incarceration status) ...................................................................... -3    _____

10.    **WORK EVALUATIONS (Over the last six (6) months)**
Maintained satisfactory employment.... ..................................................................................................................... •2
Medically unassigned or actively seeking employment ............................................................................................... 0
Unsatisfactory termination, refusal to work, or not actively seeking employment.......................................................2    _____

11.    **PAROLE ELIGIBILITY DATE**
Over 5 years    3      5 years or less      0    _____

**TOTAL SCORE**.......................................................................................................................... _____

<div align="center">

Attachment "E"
Page 1 of 2

</div>

AR Form 600-01E (02/01/13)
Close........................ ...    11 and above
Medium....................      7 to 10
Minimum Restrictive.....    1 to 6
Minimum........ .........    0 and below

<div align="center">

**CUSTODY DESIGNATION**

**CASE MANAGER/PROGRAMMER**

</div>

Instrument scored custody level:_____    Next scheduled review date:_____
Override requests:_____ Yes _____ No [Code # _____ ] Recommended custody _____

Justification/Comments:_____

_____

Offender Signature:_____ Case Manager/Programmer:_____ Date:_____

### CLASSIFICATION COMMITTEE

Approval: _____ Yes _____ No_____ Modified        Justification:_____ _____

_____

Custody Designation:_____ Classification Chairman:_____Date:_____

### OFFENDER SERVICES

Override _____ Authorized _____ Denied _____ Modified        Custody Designation:_____ _____

_____

_____

Authorized Signature:_____        Date:_____

Attachment "E"
Page 2 of 2

## ADMINISTRATIVE REGULATION
## IMPLEMENTATION/ADJUSTMENTS

AR Form 100-01A (04/15/08)

| CHAPTER | SUBJECT | AR # | EFFECTIVE |
|---------|---------|------|-----------|
| Offender Classification | Offender Classification | 600-01 | 01/01/15 |

(FACILITY/WORK/UNITNAME)

______________________________________________

WILL ACCEPT AND IMPLEMENT THE PROVISIONS OF THE ABOVE ADMINISTRATIVE REGULATION:

[ ] AS WRITTEN [ ] NOT APPLICABLE [ ] WITH THE FOLLOWING PROCEDURES TO ACCOMPLISH THE INTENT OF THE AR

(SIGNED) ______________________________ (DATE) ______________________
Administrative Head

Attachment "F"
Page 1 of 1