UNITED STATES DISTRICT COURT
FOR COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR - 6 2015

JEFFREY P. COLWELL
CLERK

**MONTEZ**

v   CASE NO 92-CV-870

CMA

**HICKENLOOPER**

---

*Cont denied ADA-AND- MONTEZ-REMEDIAL-PLAN -AND* ~~NOTICE TO THE COURT OF~~ PLACEMENT INTO PROTECTIVE MANAGEMENT UNDER FLORIDA STATUTE 33 F.A.C. 33-602.221 DUE TO HER REPORTING THREATS REGARDING HER SPEAKING TO INVESTIGATOR ALLEN OF ATTORNEY GENERAL'S OFFICE AND EXERCISING HER FIRST AMENDMENT RIGHT TO FILE GRIEVANCES AND *Coit was placed on administrative confinement when she was physically assaulted by Guard on 2-21-15*

---

(1) **COMES NOW** Jill Coit, pro se Member of the Montez Class Action (#3-029) does hereby Notify this Court that Lowell Correctional Institution – (LCI) has notified Coit that LCI does <u>not have to obey Florida Statute 33 FAC 33-602.221, Protective Management.</u> *Per grievance no 15-0356 - By McGuire "There are no facilities for females in this status class, therefore you wouldn't have been placed in Protective Management."*
Per 33-602-221 page 1 states *16414(j) Protective Management where used herein refers to special management status for the protection of inmates from other inmates in an environment as representative of that of the general population as is safely possible.

(2) Coit alleges she does not have issues nor does she <u>need protection from</u> <u>inmates, she needs protection from Guards/Officers</u> – who threatened her, not inmates

(3) Coit alleges that threats she alleges come from her defending her right to speak with chief investigator David Allen of the Attorney General Office *2-9-15*

(4) Ms. Bea Hickey emailed Tallahassee of Coit's reporting officers smoking throughout the compound especially during transporting to breakfast and outside the dining hall. This email caused investigator Allen to come to LCI –Annex to speak with Coit

1

(5) Coit told investigator Allen all the issues she has with LCI to _date_

(A) Inappropriate sexual contact with male nurse Tom Robertson – case no I.D. 15-146 Reported to LCI investigator Munnerlyn who refuses to provide copy of said report so Coit can submit to this court.

(B) ADA accommodations not being responded to in accordance with rules. AW Lumpkin one sentence response to 26 pages of medical documentation with 13 ADA requested accommodations. Lumpkin refuses to follow rules and guidelines or ever return copy of Coit's request for accommodations.

(C) That 4 inmates want to file PREA – 1983 claims but have no one to help them _Diaz_, _Ingerson_, _Brown_ and _Coit_.

(d) Medical deliberate indifference to serious medical needs. LCI – Dr. Rodriguez refuses to comply with MRI's and Denver Health Specialist reports and that Coit had filed grievances not to see Dr. Rodriguez but was being force to see him later that very day (2-9-15) after meeting with Investigator Allen.

(e) There are no programs for lifers or rehabilitation in F.D.O.C. for lifers and long term inmates at LCI. Handicapped inmates are only assigned as housemen even though they are qualified for other jobs.

(f) No handicapped inmates employed in P.R.I.D.E. violation of ADA, Title 11. See Rehabilitation Act.

(g) That LCI – should be a smoke free facility. - Second hand smoke harmful to her health and cause severe migraines.

(h) Denial of 1st Amendment right to religious services on Friday (Candle Lighting) which is a required tenet of Orthodox Judaism. Sabbath Services are listed on chapel schedule but Chaplain Liburd is not there to open the chapel and security is "too busy".

(i) There are not enough wheelchairs accessible tables in dining hall to accommodate number of wheelchairs at LCI – Annex. Only 6 tables per each dining hall and there are over 60 wheelchairs at LCI-annex.

(j) Handicapped cells do not have raised toilet seats - I need my raised toilet seat chair to slide over toilet - (denied in confinement)

(k) Confinement Sierra cells do not have handicapped showers or handicapped cell. Pod's 2 & 3.

2

(1) Excessive profanity and verbal abuse directed at inmates

(6) Coit got into ~~arguments~~ discussion with medical _employee - K. Brumer_ ~~and~~ _for Coit_ ~~trying to defend her right to speak with Investigator Allen and~~ was told "Nothing is going to change. It does no good to ~~snitch~~ "talk" to investigations they can't do anything. Nothing will change. You know what happens to snitches they get the shit kicked out of them." ~~and It said~~ _Coit asked what was a threat? Prior to these statements by Brumer, Coit asked Brumer if she was one that_ (stripped) _took medical papers and reports out of her file. Brumer_ " (Investigator said not to talk about) ~~just smiled~~ _smiled._

(7) Coit telephoned her brother and told him of the threats in case something happened to her.

(8A)
(8) There is no legitimate penalogical reason for ~~it~~ _K. Brumer_ ~~and~~ _____ to threaten Coit for speaking to investigations. Investigator Allen came back to speak with Coit on 2-25-15 and Coit told her of assault while in Sierra confinement. Actually Coit did not call it an assault. Investigator Allen called it assault. Coit just called it retaliation. Officer _(don't have name-)_ had no right to put her hands on Coit. _Coit was handcuffed behind her Back in her wheel chair when officer yanked her hair clip out of her wet hair pulling it out at the roots. Coit was on her way Back from the shower and did not have her glasses on therefore she does not know the officer's name._

(8) (8) Coit has been informed that LCI does not have to obey Florida Statute 33-602.221 Protective Management according to ~~Capt~~ _Lt. Cooper_.
   Supposedly Tallahassee allows LCI to not obey and allows Protective Management inmates to be considered "Administrative Confinement" inmate. This is a direct violation of 33-602.221 page 2-(2)(a) Protective Management is not disciplinary in nature and inmates in protective management are not being punished and are not in confinement. The _treatment_ of an inmate in protective management shall be as _near_ that of the general population ~~are~~ _as_ the individual inmate's safely and security concern _permit_.

(9) ~~Coit is considered Administrative Confinement even though she did nothing wrong! She reported the threat and when investigator Allen spoke with medical and _____ they both said they said that but did not consider it a threat, they were just joking about kicking the shit out of her and~~ _Coit is considered Administrative Confinement even though she did nothing wrong. She reported a threat and was locked in confinement on 2-20-15. She was assaulted By confinement guard on 2-21-15._

(10) Coit did not ask for protective management. She merely ~~cornered my ass~~ *notifying the court in* ~~reserving her~~ in case she is beaten or get the shit kicked out of her by an officer or dies.

(11) Coit had her legal box taken from her even though she has written permission to have it in her cell since she is pro se and in _middle_ part of civil rights case. ~~with her attorney Ed Ramey~~ (Pro se in ~~Ramey~~ Case.

Coit has written permission to receive her red & white legal Box of files from AW Hopkins head of Security for her active case (1983 Civil Rights (12-cv-000609)

"I am submitting these 3 exhibits — The only copies I have. Mr. Dalson refused to make copies —

Grievance No 15-0356 - "there are no facilities for females in this status class therefore you wouldn't have been placed in PM status."

Coit alleges almost everyone aller told her she was in PM.

LCF is violating statute 602.22.1 — Protective Management — dated 3-13-15

15-0461 — 3-16-15 — Mr. McDew — Coit never stated at any time she was in fear of inmates. only staff/guards

15--6642 — Inmates will not be placed in ad downs as it is not required.

Coit alleges LCF annex houses wheelchair and disabled inmates in ad seg downs.

4

Facts:

(12) On 2-9-15 Coit was called from medical to administration where chief investigator David Allen was waiting due to an email to Tallahassee from Bea Hickey.

(13) Ms. Bea Hickey apparently is an unofficial inmate representative who contacted tallahassee alleging that LCI – Annex officers/staff were smoking while escorting inmates to breakfast in dining hall area; while walk throughout the compound instead of only smoking at designated area in front of Sierra dorm captain's office.

(14) Coit told investigator Allen all her issues/complaints regarding "conditions of confinement" in LCI Annex and throughout the female institutions where she has been housed. On 2-9-15 - Allen recorded only some of her statements.

(15) Coit alleges that cigarettes can be purchased from F.D.O.C./employees for ^LCI-Annex $200 per pack which comes to $10 per cigarette. (A $10 cigarette can be broken down in 3 cigarettes and sold for $10 each).

(16) F.D.O.C. employees are allowed to bring in 2 packs per day. That is 40 cigarettes per shift. That means in an 8 hour shift one can smoke every 12 minutes, or they can sell their cigarettes to inmate for $400 (2packs-$200 per day) That's a nice supplemental income to an F.D.O.C. salary. Coit alleges no other employment allows you this fringe benefit (That's $2000 per week) (at $400 per day times 5 days)

(17) Per government regulation-no tobacco is allowed on State of Federal property yet F.D.O.C. allows it employees to smoke on State property. (F.D.O.C. facilities)

(18) Coit alleges that policy of allowing F.D.O.C. employees to bring in cigarettes facilitates the sexual abuse of female inmates having sex with guards (PREA) as well as allowing inmates to get the employees discarded cigarette butts to make cigarettes to sell to other inmates. Upholding the ban on all cigarettes (tobacco) in F.D.O.C. facilities would eliminate 99% of the inmate smoking problem and eliminate second hand smoking medical problems.

    CDC health officials warn that when it comes to <u>second hand smoke</u> – which is linked with several health risk, including asthma, respiratory infections, and heart and lung disease – <u>there is no safe level exposure</u>. Coit alleges smoke exacerbates her migraines and she has migraines and she has had a heart attack.

5

(19) Coit also told Allen about her report alleged illegal sexual contact with medical employee Tom Robertson (nurse) case no 15-146 and X 367140051 Coit is afraid of needles therefore she keeps her eyes shut while blood is drawn. Robertson placed Coit (in her wheel chair) between his spread wide open legs put tourniquet on and told Coit to open and close her hand. When she opened her hand she felt flesh and cloth. Her brain did not at first register what was happening. Robertson was moving her hand on his penis. She finally caught on and jerked her hand away. Had words with Robertson + left.

(20) Coit alleges that since she reported and/or attempted to report said sexual abuse/inappropriate contact she has had multiple retaliation acts/reprisal from medical and now from LCI staff regarding her attempts to get cigarettes banned from facilities. All Coit's medical passes (white copies) which were in her medical file for Dr. Burgess and Dr. Colon have been removed along with the medical reports of the passes and her visit. 90% of her medical passes have been cancelled by Dr. Rodriguez.

(21) On 2-20-15 Coit was placed by Tallahassee and investigator David Allen in "Protective Management" (Custody) due to her being threatened as a snitch — for talking to investigator Allen. Coit attempted to defend investigator Allen and her right to bring forth conditions of confinement that were in direct violation of her 8th and 1st Amendment rights. And inmates stated, "you know what happens to snitches," "they get the shit kicked out of them." Coit said is that a threat?

(22) Coit alleges that nothing will change unless someone brings to light what really happens at LCI and other female institutions.

(23) LCI guards should not be allowed to put their hands on inmates unless a necessary use of force is demonstrated. (Not allowed to pull hair out by the roots).

(24) On 2-21-15 Saturday night Sierra officer white, brown hair, slim don't know name ripped Coit's hair clip out of her wet hair pulling the roots out with the hair clip. Coit was handcuffed and in her wheelchair at the time. All the officer had to do was wait 10 seconds till Coit was placed back in her confinement cell and told to give up the hair clip. This unnecessary use of force was captured on camera. Coit was returning from shower.

(25) What makes this unnecessary assault so plain is the fact that on the way to the showers just 5 minutes prior to this officer unknown due to fact Coit did not have her glasses on.

told officer (Blond - heavyset) ___ "I dare you to dump her". The officers were complaining about having to push Coit to the shower despite the fact Coit pushes herself using her legs and did not need pushing even though she was handcuffed in wheelchair. Due to Coit's hand impairment she only uses her legs for getting around in her wheelchair. Orthopedic Specialist at Denver Health told Coit she needed to use her legs for getting around wheelchair so her legs did not atrophy, just don't put weight on hip, needs to have left hip replacement, already had right hip replacement and also needs left knee surgery due to torn meniscus. Walking or standing is extremely painful.

(26) There was no legitimate penalogical goal or reason for confinement officer Sierra Pod 3 _____ to assault Coit. This same officer earlier took away Coit's wheelchair from her cell even though Coit has medical pass for wheelchair and was court ordered a wheelchair. Coit had her wheelchair in her handicapped cell in Sierra 1101 prior to being placed in protective management in Sierra 3106

(27) Coit had 2 hairclips clipped onto her wheelchair and 8 hair ties when officer ~~officer who assaulted Coit~~ took it from Sierra confinement cell. No legitimate penalogical reason to take Coit's wheelchair. None was given to Coit.

(28) Coit was supposed to be placed in Protective Management (Custody) on 2-20-15 and per *16412 Rule 33-602.221 FAC *16413 West's Florida Administrative Code Title 33 Department of Corrections Chapter 33 Security Operations – page 2 "(2) Protective Management is not disciplinary in nature and inmates in protective management are not being punished and are not in confinement. The treatment of inmates in protective management shall be as near that of general population as the individual inmate's safety security concerns permit. By administrator allen.

(29) Coit is not a security risk and has had no institutional violence in the 20 year she has been down. Has received no D.R. and does not even get CC's. Coit does not have problems with inmates, her only threats have come from officer/staff – not inmates.

(30) When Coit entered P.C. ~~Protective Management~~ (2-20-15) she was not placed in a handicapped cell (S-3106). There is not even a handicapped shower in Sierra Pod 3 confinement. Coit remained in Sierra 3106 for one week before moving her (2-27-15) to Tango 1102 handicapped cell where she is still denied her wheelchair and even denied raised toilet seat for low toilet in cell. Coit has torn meniscus (left knee)

(31) Coit notifies this court that there are no cameras in Tango (Pod 1) since Coit's report of assault was captured on camera as well as Coit's cellmate testified But they can be turned off.

7

to Investigator Allen on 3-26-15 that she, Nicole ~~Garrio~~ 13 I 01304 was present and officer _____ ~~and~~ _____ state, "I dare you to dump her" and then stated "wouldn't it be funny if we chained her Bunkie to her wheelchair and made her push her." Blond or Brunette Guard [paid this.]

Now if officer's abuse/attack/assault Coit there will be no camera to capture the acts.

(32) Will Coit be the next LCI Annex inmate to be beaten to death or die from officers physically beating her like inmate Ellington in Tango was in October 2014? Not having <ins>call buttons</ins> ~~cameras~~ in confinement is just an invitation for officer abusing inmates. When officers "put an inmate on camera" they determine when to shut the camera off and when to turn it back on. They capture <u>only what they want</u> seen.

(33) On 2-27-15 in the confinement cell above Coit an inmate was screaming for help because her Bunkie was beating her. It took over 5 minutes to get help because there were no officers present and there is no panic buttons or intercom in the F.D.O.C. cells to call for help if being attacked or for medical emergencies. Most nights in Sierra confinement the officer was not in Pod 3 but in the office of in the control lounge. Neither of which can be heard if problems arise in confinement cells.

"When Coit grieved this she was told that you can't grieve things that don't apply to you." Buy it happens


(Broward C.I.)

(34) While at BCI a male black officer stepped on her leg chains and pushed her backwards while she was black boxed behind the back she still has tenderness on the spine area where the black metal box hit 1-26-11 to 2-10-11. She fell app. 5 feet. See grievance no. 1905-055 / Homestead filed / logged 5-31-11

(35) LCI – Annex did not follow their own ADA accommodation request forms and refuse to answer repeated attempts to get ADA accommodations despite the fact that they were authorized by medical and she had at other facilities.

(36) While housed at HCI she had weeks of several backups in toilet and shower in Gulf dorm – unsanitary (Homestead C.I.) 2-5-2013 to 11-15-13 – Oct & Nov 2013 – total sewer problems

(37) At LCI – Annex when housed in Papa dorm the outside walls were not properly sealed and rain water seeped into the dorm and caused flooding. and slimy walls.

(38) Unsanitary living conditions at LCI – Annex (Papa dorm) and HCI – Gulf dorm and BCI – Delta dorm is unacceptable and a health hazard. water seeps through concrete block walls – walls are not sealed properly see moisture man.

(39) Every time she reported sex misconduct by officers with inmates or requested ADA accommodations she was transferred back and forth between facilities BCI, HCI, BCI, LCI Annex, LCI – Main, HCI, FWRC, LCI Annex 8 times in 48 months.

(40) She is alleging 1st Amendment violations failure to protect, cruel and unusual punishment and conditions, threats, 8th Amendment violations deliberate indifference and violation of interstate corrections compact. along with assault on 2-21-15; PREA 2014 - Musa Tom Robertson; and threats "shit kicked out of them" Called Capt. Smith for speaking to investigator Robertson Allen

9

(41) Per 33 FAC 33-602-221 Protective Management * 16412 Rule 33-602.221 FAC and *16413

Protective Management

(1) Definitions (a) Administrative Confinement refers to the temporary removal of inmates from the general population in order to provide for security and safety until such time as a more permanent inmate management decision can be concluded such as disciplinary confinement, close management, <u>protective management</u>, or transfer.

(42) Coit alleges she was placed in Protective Management on 2-20-15 per chief Investigator Allen and Tallahassee and as such she is entitled to the benefits and rules of protective management set forth in Chapter 33-602.221. But I ct states she is in Administrative Confinement.

(43) Coit alleges she has been informed that Lowell Correctional Institution – Annex <u>does not have to obey Chapter 33-602.221 per Warden Mazorra and with Tallahassee's permission</u> Coit remains in administrative Confinement.

(44) Coit alleges she has a Constitution and State right to expect the Florida Department of Corrections (F.D.O.C.) to obey said Statute and if the F.D.O.C. refuses to obey Statute 33-602.221 that she be compensated at $100 per day that F.D.O.C. refuses to obey 33-602.221 in its entirety.

(45) Coit alleges that F.D.O.C./Lowell Correctional Institution does not get to select which Florida Chapter 33 Statutes it wants to obey nor does it get to select which acts it complies with. F.D.O.C./LCI is in violation of its own rules and Florida Statutes. in keeping Coit in administrative confinement. Coit is not under investigation, nor has she broken any rules.

(46) Page 2 of 33-602.221(2) Procedure for Placement in Protective Management
    (a)    Protective Management is not disciplinary in nature and inmates in protective management <u>are not being punished and are not in</u> confinement. The treatment of inmates in protective management shall be as near that of general population as the individual inmate's safety and security concerns permit.
    Protective Management allows for:
(1)    physical barrier shall _____ the cross association of those in protective management with those of other status.
(2)    conditions and privileges

    (c)    personal property inmates shall be allowed to retain the same personal safety as is permitted general population inmates unless there is an indication of a security problem.
    Coit alleges there is no security problems she is a non-violent inmate and never been in trouble at 7 DOC.

47) Email to Tallahassee from Ms. Bea Hickey
On Coit's "reporting officers smoking" brought the lead investigator from Tallahassee David Allen on 2-9-15. I was sitting in medical when I was called to Administration for Allen. I told him all!

Medical Facts

48) I saw Dr. Rodriguez later that day and was told it was too soon to renew my passes – they expire 3-21-15 to put in sick call the week before and he would renew. I reminded him (Dr. Rodriguez that I was not supposed to see him per grievance no 1501-314-169 stated "you will be seen by another provider." Rodriguez did not remember the grievance response and did not care what it said. I told him my right eye hurt and also asked for bone density test. He gave me eye wash for eye said if still hurting to put in sick call slip and laughed at request for bone density test from 2008 that said I "would probably benefit for follow up in 3 years." It was 2008 – 7 years later – No bone density test ordered even though Colorado pays for my medical treatment\

49) There were no medical passes in my medical chart for Dr. Colone or Dr. Jerry Burgess – all white copies were gone, only old medical passes were there

50) On 2-13-15 at approximately 4PM I was called to medical and LCI Medical employee K. Grimes told me to turn over all passes. I had 8 passes – 3 from Dr. Colone and 3 from Jerry Burgess and 2 from other LCI doctors.

51) K. Grimes took them to Dr. Rodriguez and I was told they would be canceled. I asked for them back since they were current valid passes – 3 expired 3-21-15 and _____ other, don't remember dates on these passes.
   I told Grimes how can you take my passes and canceled them, they were issued by F.D.O.C. licensed by state doctors and Dr. Rodriguez does not even have a valid Florida state license…Besides you can't just cancel my passes without the doctor (Rodriguez ever speaking with me to find out why there were written) on checking medical records for need

52) Grimes stated "they can do anything they want, their medical passes." She refused to give them back to me. I told her I needed them back that they were evidence in an upcoming law suit. She refused to give them back.
   I said ok – you won't give them back then give me a shake down slip for each one stating what was on them.
   K. Grimes called for Lt Weiss who yelled at me and threatened to lock me. I held my position and wanted shake down slip. After more yelling at me he said I could have them back.

53) I reminded Lt. Weiss and K. Grimes that I was not supposed to see Dr. Rodriguez per grievance response and that my passes were _good_ till 3-21-15

12

and Dr. Rodriguez told me it was to early for renewed to put in medical request 1 week before passes expire.  Grimes told me to leave.  I had my medical passes.

(54)  On 2-17-15 I was scheduled for medical appointment I did not request. at approximately 9:00AM Grimes called me into her office and area - off waiting room - I asked her if she was the one that stripped my file of all my current medical passes from Dr. Colone and Dr. Rodriguez.  She just smiled and said they were gone!  I said don't be so sure their gone.

(55)  Grimes Basically told me it did no good to talk to investigator, they have no power, that nothing will change here, that you know what happens to snitches, they "get the shit kicked out of them"

I said "is that a threat" I was on scales while this conversation took place

(56)  went to Grimes office.  I rolled over to the blood pressure machine, Grimes called for "Munnerlyn" (the medical guard who checks you in appointments.  Nurse Miller was the sick call nurse out sick in the hall so she came in the room.  Grimes took my blood pressure and temperature.

(57)  Munnerlyn came to the door to see what Grimes wanted.  I said to "baby sit me but it's too late."

(58)  Dr. Rodriguez saw me about 4:40PM and I had my grievance response with me, he stated he did not care what he wrote he was done.  Rodriquez stated security did not like my passes.  Due to my hand impairment (De Quarion's disease and arthritis) I have been issue a pass to wear my ID on a string around my neck.  It hurts me to put my ID on and off multiple times per day .  (little metal clasp that is hard for me to operate)

I also wear my watch on the shoe string since it will not go over my hand Spica braces and a plastic pouch for my medical passes and facility passes, that we are required to carry

(59)  Inmates are allowed to have thick 22 inch metal chains around their neck to hold religious symbols (up to 2inches).  Chains are much stronger than my string.

(60)  I stated, so now security decides medical issues – Rodriquez did not respond.

(61)  Rodriquez issued passes only for what he deemed necessary

He did not include my orthopedic shoes, legally blind, hearing impaired, I guess just seeing him made my foot problem (hammer toes, plantar fibroma and bone spurs magically disappear even though MRI shows these medical problems – I also have 1 ½ inch leg length discrepancy) Per ADA accommodations I am to have orthopedic shoes.  He also removed my work restrictions, which Dr. Burgess and Dr. Colone authorized re: No hours work, no repetitive motion, work 2 hours after afternoon only, no push or pull, twisting, bending ( I have torn meniscus of

left knee) – Knees swell if I walk very far or stand for any length of time (also have hand impairment – wear Spica hand braces on both hands so no-repetitive motion needs to be on pass).

(62) I am legally blind only have vision in center part of left eye – eyes get tired so can only see clearly of morning. That is why I request computer law library access AM because my right eye gets tired and I get severe headaches when I try to read enlarged computer screen in afternoon.

(63) I have been authorized by grievance by AW Lumpkin and others to use law library for 3 days. I go on Monday PM, Wednesday and Friday all day. I filed for ADA accommodations for AM law library use since that is when I see best. – denied

(64) Dr. Rodriquez took all my passes and refused to give them back despite the fact I told him I needed them for legal action. There were no white medical _____ passes in my file. There was only the Xerox copy I had my attorney make which I submitted on may 2015 visit of Dr. Caton's passes.

(65) Dr. Rodriquez said he came from a family of lawyers and just because you file does not mean you win. I stated without my copies I can't submit the restrictions you took away. Rodriquez stated – common sense tells you if your in a wheelchair you cannot do all the restrictions listed on your passes. I said, "Well obviously DOC employees don't have common sense because I was made to get on floor and clean boardwalks. I hurt for days afterward. If its not listed I will be forced to do it. Rodriquez just shook his head.

(66) I stated – so you made my sight come back. I am no longer legally blind. Rodriquez stated – I only list what physical impairments I can see.

(67) I stated "no wonder inmates are dying – you can't see a heart attack."
(Jort inmate Brueggers died of heart attack 2 weeks later.)

Notice to the Court – Court is in fear of her life. In October 2014 – officer @ Beat inmate Ellington to death here at LCF. Arrived in Tango Confinement where Court is now confined for telling on guard to attorney general investigator Allen. Court alleges she has watched officer/guard assault inmates here at LCI – Arrived without any repercussions. Court has been physically assaulted 3 times already. In Feb 2014, in 2014 – sexual misconduct – assault – Nurse Robertson once in confinement 2-21-15 – Court has reason to be afraid.

(68) On 2-25-15 I again saw investigator Allen and told him all that happened including threats by _Bruise (medical)_ and _Confinement officer (Sierra)_ on 2-21-15 yanking hair out by the roots. (assault)

(69) He issued orders that my personal property be returned to me. Not all of it was. I will address that issue when I see him ~~next week~~. I had been denied my personal property - not ever given personal property master list.

(70) I was asked on 3-2-15 if I wanted to be released from Protective Management and I said no. (Bonochello)

(71) I will stay until I file the necessary paper work that forces LCI to recognize Florida Statutes 33-602.221, protective management inmate's rights and privileges. That LCI does not get to choose which Florida Statutes to obey. I don't want the next protective management inmate to suffer what I have endured. It might be horrible for me but the next inmate will have rights. I don't care if I am here for years. LCI will obey Florida Statutes. It is the ___law___. I did not ask for protective management – I was threatened ~~with death if I continued filing~~ ~~grievances. The fact that officers said it was a joke did not make it a joke~~ ~~considering how many inmates die here at LCI and throughout F.D.O.C.~~ with getting the "shit kicked out of me", considering how many inmates die here at LCI - threats are not to be made or taken lightly. The 2-21-15 assault was caught on camera. That is what is important. If officer will do that on camera while in confinement just imagine what they will do to me off camera.

(72) At LCI law library Ms. Dickson refused to copy all exhibits that prove these allegations. Ms. Dickson also refused to let typist type my contents submitted for typing. Dickson used purple ink and wrote "Do not type. D. Dickson" on pages submitted for typing to US District Court. Per FDOC statutes, law librarian is not allowed to read legal documents submitted to court or for typing.

15

Wherefore Coit prays this Honorable Court will order her release from F.D.O.C. due to her being sexually assaulted by Robertson; assault in Sierra confinement; continued taking of her legal documents; F.D.O.C. refused to obey Montez and ADA standards, her being denied her wheelchair for 11 months resulting in permanent eye damage of right eye – the only eye she has sight in; F.D.O.C. refused to treat and recognize MRI, X-ray and Colorado Medical Specialist in Orthopedic; F.D.O.C. issue of 2 right ear hearing BTE hearing aids instead of one right, left ear hearing aid; refused to issue ITE hearing and instead of BTE hearing aid which causes bleeding; medical indifference; no rehabilitation or programs; refused to obey F.D.O.C. doctor orders/passes Coit requests to return to Colorado.

_____         3-30-15
Jill Coit                              Date

Certificate of mailing

I hereby swear under the penalty of perjury that the above statements are true and correct to the best of my ability and that I handed LCI-employee in charge of mail in Tango confinement, postage pre paid, first class mail the above document for mailing to the US District Court on 3-30-15.

_____         3-30-15

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

15-0356 A/Class

Mail Number: _____
Team Number: _____
Institution: 105

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☒ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name: Jill Cox | DC Number: 163836 | Quarters: T7102 | Job Assignment: H/S | Date: 3-4-15 |
|---|---|---|---|---|---|

**REQUEST** — Check here if this is an informal grievance ☒

I am grieving Ms. McGuire head of classification for not putting me in protective management as Inspector Allen said in her e-mail on 2-20-15. I am supposed to be protective management not A.C. I should be under FAC 33-602.221 But McGuire put me 602.220 - Administrative Confinement status - Wired retaliation for me grieving. Remedy: Per Investigator Allen I am Protective Management - Put me on Protective Management.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Jill Cox 163836

**DO NOT WRITE BELOW THIS LINE**

DATE RECEIVED: MAR 0 5 2015

RECEIVED MAR 0 5 2015 ASSISTANT WARDEN PROGRAMS OFFICE

**RESPONSE**

Your informal grievance has been received, reviewed and evaluated with the following response provided to you: Your current status of administrative confinement is appropriate as required in F.A.C., Chapter 33-602.221(1)(a). Any email correspondence between Inspector Allen and I wouldn't be provided to you or any inmate, therefore, you wouldn't be privy to the details of your requested status. An inmate isn't placed in Protective Management status until approved by the SCO, and there are no facilities for females in this status class; therefore, you wouldn't have been placed in PM status. Your current status is correct.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is **Denied**. (Returned, **Denied**, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): AW McHaire    Date: 3-13-15

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.

# INMATE REQUEST

DEPARTMENT OF CORRECTIONS

Mail Number: _____
Team Number: _____
Institution: 15

15-0461 A/class

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☒ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |

| FROM: | Inmate Name: Jill Cort | DC Number: 163336 | Quarters: T/102 | Job Assignment: 715 | Date: 3-11-15 |

## REQUEST

Check here if this is an informal grievance ☒

To Ms McBurn director of Classification I was locked on 2-20-15 that is over 20 days. To date I do not know nor have I seen any paper work as to why I am in Administrative Confinement. I broke no rules that I am aware of.
Remedy: Provide reason for me Being locked in Administrative Confinement. I do not meet the qualification I have done Nothing wrong nor have Broken any rules.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Jill Cort      DC#: 163336

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

DATE RECEIVED: MAR 16 2015

Your informal grievance has been received, reviewed and evaluated with the following response being provided to you: Do to this informal grievance being improperly submitted per chapter 33.103.005(2)(b)1. it is being treated as an inmate request without the ability to be used for filing to the formal level as having satisfied the informal criteria. You were placed in administrative confinement after advisement to staff you had a fear of other inmates and staff. This is required procedure for your safety so your concerns may be investigated. On 3-11-15 you informed the ICT you had no issues to address regarding any inmates and only wished to speak with the Inspector's office, therefore, your protection issue was closed regarding inmates.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is __Returned__ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Print Name): S.T. McGuire    Official (Signature): S.T. McGuire    Date: 3-16-15

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

6-15

15-0642 Aldass

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: 109

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other _____ |

FROM:
Inmate Name: Quill Cot
DC Number: 163536
Quarters: S-210C
Job Assignment: 48
Date: 2-27-15

**REQUEST**   Check here if this is an informal grievance ☒

Ms. McGuire who is in charge of ICT - housed me in a pod - dorm that does not have a handicapped shower - I am disabled and in a wheel chair - There are No Handicapped showers in confinement - I am PC / Margaret Protective Management. The facility is supposed to be Handicapped Accessible, yet it is not. Remedy:
① Put handicapped shower in all Building Pods ② Move me to Pod that has Handicapped Showers ③ Transfer me Back to Colorado Services To help meet my ADA needs. Jill Coit

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

MAR 06 2015

**RESPONSE**   DATE RECEIVED: MAR 02 2015

RECEIVED  ASSISTANT WARDEN PROGRAMS OFFICE

Your informal grievance has been received, reviewed and evaluated with the following response provided to you: This issue was resolved on the same date this issue was grieved, as you were moved to a dorm to accommodate your ADA needs.

Showers will not be placed in all dorms as it's not required, the institution has Handicap / equipped the facility with the required and mandated number.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is **Denied**. (Returned, **Denied**, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): [signed] McGuire   Date: 3-12-15

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)